## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| LULAC TEXAS; VOTO LATINO; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, in his official capacity as the Texas Deputy Secretary of State; KEN PAXTON, in his official capacity as Texas Attorney General; JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; DANA DeBEAUVOIR, in her official capacity as the Travis County Clerk; ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator; YVONNE RAMÓN, in her official capacity as the Hidalgo County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator; LISA WISE, in her official capacity as the El Paso County Elections Administrator, <br><br> *Defendants,* <br><br> PUBLIC INTEREST LEGAL FOUNDATION, <br><br> *Proposed Intervenor-Defendant.* | Case No. 1:21-cv-00786, *consolidated with* 5:21-CV-0844-XR |

## (PROPOSED) INTERVENOR-DEFENDANT
## PUBLIC INTEREST LEGAL FOUNDATION'S (PROPOSED) ANSWER

Proposed Defendant-Intervenor the Public Interest Legal Foundation ("Foundation"), by and through counsel, and without waiving any motions or defenses, hereby answers Plaintiffs' Complaint. (Doc. 1.)

Many of the paragraphs in the Complaint state conclusions of law, to which no response is required. Many others make factual allegations that are outside the scope of the Foundation's knowledge; as a result, they can neither be admitted nor denied by the Foundation and thus are deemed denied. Any other allegations not admitted are denied.

1.      The Foundation denies Plaintiffs' characterization of the turnout rating for the State of Texas. Plaintiffs fail to identify any alleged information upon which they rely to substantiate this characterization and fail to allege whether their allegations relate to a percentage of citizen voting age population or overall Texas voting age population.

2.      The Foundation denies the allegations and the Plaintiffs' characterizations, which are also contradicted by their allegations contained in paragraph 3, claiming that the 2020 election saw the highest turnout numbers for the State in the past 30 years.

3.       The Foundation denies that there were extraordinary obstacles imposed on voters and election workers, long lines to vote, restrictive election administration procedures, and that the increased turnout was made possible due to local election official's innovations. The Foundation admits that there was historic turnout during the 2020 election among all Texans.

4.      To the extent that this paragraph states factual allegations, Foundation lacks knowledge or information sufficient to form a basis as to the truth in these allegations. To the extent that this paragraph states a legal conclusion, no response is required. Other than as admitted the allegations contained in paragraph 4 are denied.

5.      The Foundation admits that Texas law allows "curbside" voting in certain
circumstances, *see* Attorney General of Texas "Elections Guidance Letter on Drive-Thru
Voting," *available at* https://www.texasattorneygeneral.gov/news/releases/elections-guidance-
letter-drive-thru-voting, but denies that Harris County election officials followed the
Texas Election Code in conducting "drive-thru voting." To the extent that this
paragraph contains any factual allegations at all, the Foundation lacks knowledge or information
sufficient to form a basis as to the truth of these allegations. Other than as admitted the
allegations contained in paragraph 5 are denied.

6.      To the extent that this paragraph states factual allegations, the Foundation lacks
knowledge or information sufficient to form a basis as to the truth of these allegations.
Therefore, the allegations contained in paragraph 6 are denied.

7.      Denied. The allegations contained in paragraph 7 are limited to Plaintiffs'
characterizations and do not contain factual allegations.

8.      Denied to the Plaintiffs' characterization of Senate Bill 7 which again contain no
factual allegations. Admit that Senate Bill 7 did not pass before the conclusion of the 2021
regular session.

9.      The Foundation again denies Plaintiffs' characterization of Senate Bill 1 and the
legislative process.  Governor Abbot most certainly did not announce "a special session with the
expressed goal of passing voter suppression legislation."  Governor Abbot did not use the words
"voter suppression legislation," in part because no such term exists in any federal statute.  It is an
invented term designed and used by Plaintiffs and others to smear political opponents and blend
legal election practices with illegal practices. To the extent that this paragraph contains any

factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of the allegations and therefore the allegations contained in Paragraph 9 are denied.

10.     The Foundation admits that Senate Bill 1 was enacted during a special session of the Texas Legislature and denies most strenuously contests Plaintiffs' characterization of the special session or alleged purpose of the Texas Legislature or effects of the provisions of Senate Bill 1. Plaintiffs mischaracterize and exaggerate the challenged legislation, going so far as to state that election observers are authorized by the legislation to "employ voter intimidation tactics," a bald-faced exaggeration of the actual legislation.  Other than as admitted each of the allegations contained in paragraph 10 and 10(a-f) are denied. Senate Bill 1 speaks for itself.

11.     Denied. Plaintiffs' allegations are unsupported by any factual allegations and are conclusory in nature and are irrelevant to Plaintiffs' claims.

12.     Denied. The provisions of the legislation mitigate the effects of election administration failures by various election officials around the state of Texas to comply with federal laws related to list maintenance and the effective implementation of a statewide database.

13.     To the extent this paragraph states a legal conclusion, no response is required. Other than as admitted, the allegations contained in paragraph 13 are denied.

14.     To the extent this paragraph states a legal conclusion, no response is required. Other than as admitted, the allegations contained in paragraph 14 are denied.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     The allegations contained in paragraph 19 are denied, in particular Plaintiff LULAC Texas, while characterizing itself as the oldest and largest Latino civil rights organization in the United States, relentlessly engages in ideological, if not outright partisan, behavior that is devoid of guiding principles apart from opposition to Republicans and conservatives who support limiting government power.

20.     To the extent that this paragraph states factual allegations regarding a plaintiff, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph attempts to characterize Senate Bill 1, the Foundation denies Plaintiffs' characterizations. The bill speaks for itself. Other than as admitted the allegations contained in paragraph 20 are denied.

21.     To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 21 are denied.

22.     To the extent that this paragraph states factual allegations regarding a plaintiff, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph attempts to characterize Senate Bill 1, the Foundation denies Plaintiffs' characterizations. The bill speaks for itself. Other than as admitted the allegations contained in paragraph 22 are denied.

23.     To the extent that this paragraph states factual allegations regarding a plaintiff, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph attempts to characterize Senate Bill 1, the Foundation denies Plaintiffs' characterizations. The bill speaks for itself. Other than as admitted the allegations contained in paragraph 23 are denied.

24.     To the extent that this paragraph states factual allegations regarding a plaintiff, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph attempts to characterize Senate Bill 1, the Foundation denies Plaintiffs' characterizations. The bill speaks for itself. Other than as admitted the allegations contained in paragraph 24 are denied.

25.     To the extent that this paragraph states factual allegations regarding a plaintiff, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. To the extent this paragraph attempts to characterize Senate Bill 1, the Foundation denies Plaintiffs' characterizations. The bill speaks for itself. Other than as admitted the allegations contained in paragraph 25 are denied.

26.     Admit that Defendant Jose Esparza is the Texas Deputy Secretary of State and acting Secretary of State. To the extent this paragraph seeks to characterize Texas law, the law speaks for itself.

27.     Admit that Ken Paxton is the Texas Attorney General. To the extent this paragraph seeks to characterize Texas law, the law speaks for itself.

28.     Admit that Jacquelyn Callanen is the Bexar County Elections Administrator. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 28 are denied.

29.     Admit that Dana DeBeauvoir is the Travis County Clerk. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 29 are denied.

6

30.     Admit that Isabel Longoria is the Harris County Elections Administrator. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 30 are denied.

31.     Admit that Yvonne Ramon is the current Hidalgo County Elections Administrator. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 31 are denied.

32.     Admit that Michael Scarpello is currently the Dallas County Administrator. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 32 are denied.

33.     Admit that Lisa Wise is the current El Paso County Elections Administrator. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge or information sufficient to form a basis as to the truth of these allegations. Therefore, the allegations contained in paragraph 33 are denied.

34.     Denied. Plaintiffs' allegations are conclusory and unsupported by any factual allegations.  Texas has some of the highest non-citizen resident rates in the United States. Using total voting age population to gauge rate of voter turnout, as Plaintiffs may do here, deflates turnout rates. Upon information and belief, Plaintiffs do not control for non-citizens in assessing turnout rates in Texas.

35.     Denied. Plaintiffs' allegations contain factually unsupported characterizations.

36.     Denied.

37.    The Plaintiffs do not cite any supporting evidence for this paragraph. The Foundation submits that if Plaintiffs' allegations are true, the increase in voter turnout occurred without the use of ballot drop boxes.

38. The Foundation submits that if Plaintiffs' allegations are true that there was an increase in minority turnout in 2018, that turnout increased despite the lack of any ballot drop boxes.

39.    Admitted that Republican Senator Ted Cruz was re-elected to the U. S. Senate in 2018.  Senator Cruz is a Hispanic.  He received support of Hispanic voters to a significant degree.

40.    The comparison of winning percentage in two adjacent elections has no relevance to a Voting Right Act challenge.  To the extent it has any relevance, it is exculpatory for Defendants in so far as it explains a partisan motivation for any legislative enactment.

41.    The Foundation admits that there was an increase in voter turnout not only in Texas but throughout the United States in the 2020 federal election. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of the allegations and denies the allegations contained in paragraph 41.

42.    The Plaintiffs do not cite any supporting evidence for this paragraph. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of the allegations and therefore denies the allegations contained in paragraph 42.

43.    Plaintiffs here mischaracterize the scope of turnout increases in the 2020 election. Turnout increased across all racial and political demographics. The allegation that only urban Democratic turnout increased is false.

44.     Denied both as an allegation and as relevant evidence for a violation of Section 2 of the Voting Rights Act.

45.     Denied both as an allegation and as relevant evidence for a violation of Section 2 of the Voting Rights Act.

46.     Denied both as an allegation and as relevant evidence for a violation of Section 2 of the Voting Rights Act.  The mere fact that voters utilized early voting has no relevance.

47.      Denied both as an allegation and as relevant evidence for a violation of Section 2 of the Voting Rights Act.  The mere fact that voters utilized early voting has no relevance.

48.      Denied. Plaintiffs fail to allege which of the counties within the entire state of Texas operated during the hours alleged and the days these hours were offered for early voting, again requiring the Foundation to deny the allegations contained in paragraph 48.

49.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 49.

50.      The Plaintiffs do not cite any supporting evidence for this paragraph. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 50.

51.     Admitted, to the extent that indeed Harris County violated Texas Election Code by operating drive thru voting locations. An election practice which is conducted in violation of state law cannot be used either as a baseline, benchmark or aspirational standard.  Denied as to the remaining allegations contained in paragraph 51.

52.     Again, an election practice which is conducted in violation of state law cannot be used either as a baseline, benchmark or aspirational standard.  Plaintiffs fail to allege the factual

basis for these allegations concerning minority populations in Harris County and the Foundation lacks knowledge sufficient to form a basis as to the truth of the allegations and denies the allegations contained in paragraph 52.

53.    Plaintiffs have failed to supply the factual basis for the alleged reporting by election officials. The Foundation submits that Plaintiffs consistently fail to provide the factual basis for allegations contained in its Complaint. The Foundation lacks knowledge sufficient to form a basis as to the truth of the allegations and denies the allegations contained in paragraph 53.

54.    The Foundation admits that the State of Texas provides for the use of absentee voting through its election code. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 54.

55.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 55.

56.    The Foundation admits that during the 2020 Federal election, one drop box per county were *temporarily* utilized in the State of Texas but deny Plaintiffs' characterization of the basis for use of these drop boxes by voters. More importantly, evidence about the use of temporary COVID-related emergency procedures has no relevance in a Voting Rights Act case challenging these procedures in this circumstance.

57.    Denied. Plaintiffs fail to provide the factual basis for these allegations and the Foundation lacks knowledge to form a basis as to the truth of the allegations contained in paragraph 57. The Foundation submits that the unique circumstances present during the COVID-

19 pandemic lead to a temporary increase in the use of absentee voting in states that provided for absentee voting.

58.    Plaintiffs allege facts helpful to the Defendants in this paragraph. These facts are relevant to explain the motivation to the challenged legislation, namely that permissible motivations of partisanship animated the Legislature, not race.

59.    Plaintiffs fail to cite the actual "exit polls" upon which they base the allegations contained in this paragraph. Again, Plaintiffs allege facts helpful to the Defendants in this paragraph. These facts are relevant to explain the motivation to the challenged legislation, namely that permissible motivations of partisanship animated the Legislature, not race.

60.    Denied. The Plaintiffs do not cite any supporting evidence for this paragraph. Moreover, it is entirely irrelevant in a Voting Rights Act claim.

61.    Denied. The allegation is entirely irrelevant in a Voting Rights Act claim. To the extent that extra-legal procedures were used in Harris County, such as drive through voting, admitted.

62.    Denied. The allegation is entirely irrelevant in a Voting Rights Act claim.

63.    The Foundation admits that due to the COVID-19 pandemic, the State of Texas permitted the use of one ballot drop box per county during the 2020 federal election cycle, even though the procedures were not to be found in the Texas Election Code. The Foundation also notes that the Texas Supreme Court declined to block the Governor's October proclamation. *See Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 923 (Tex. 2020) ("The Governor's October Proclamation provides Texas voters more ways to vote in the November 3 election than does the Election Code. It does not disenfranchise anyone."). *See also Tex. League of United Latin Am. Citizens v. Hughes*, 978 F.3d 136, 150 (5th Cir. 2020) ("The

October 1 Proclamation abridges no one's right to vote.") Other than as admitted the Foundation denies the remaining allegations contained in paragraph 63.

64.     The Foundation again denies the characterizations contained in this paragraph regarding the action of election officials. The Foundation admits that each county in Texas temporarily utilized a single drop box for the collection of absentee ballots, even though the procedure was not found in Texas Election Code. The Foundation also notes that the Texas Supreme Court declined to block the Governor's October proclamation. *See Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 923 (Tex. 2020) ("The Governor's October Proclamation provides Texas voters more ways to vote in the November 3 election than does the Election Code. It does not disenfranchise anyone."). *See also Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 150 (5th Cir. 2020) ("The October 1 Proclamation abridges no one's right to vote.") Other than as admitted the Foundation denies the remaining allegations contained in paragraph 64.

65.     The Foundation admits that litigation was filed alleging that Harris County election officials were unlawfully utilizing "drive-thru" voting sites. The Foundation alleges that the lawsuits speak for themselves.

66.     The Foundation alleges that the lawsuits speak for themselves. Other than as admitted the Foundation denies the remaining allegations contained in paragraph 66.

67.     The Foundation alleges that the lawsuits speak for themselves. Other than as admitted the Foundation denies the remaining allegations contained in paragraph 67.

68.     To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 68.

69.     Denied. The Foundation notes that the U.S. Supreme Court just recently reaffirmed that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347 (2021). Further, according to the Supreme Court, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Id*. at 2348. More importantly, parties may certainly initiate litigation to challenge extra-legal procedures to conduct an election outside the regular methods articulated in Texas Election Code.

70.     Denied. The allegations contained in this paragraph are political rhetoric, and irrelevant to a claim brought under the Voting Rights Act.

71-75.    Denied. Plaintiffs' allegations contained in paragraphs 71 through 75 which claim that there was a lack of fraud in the 2020 election cycle are irrelevant to its intentional Section 2 claim against the Texas Legislature consistent with Supreme Court precedent. According to the Supreme Court, "one strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. at 2340. Further, according to the Supreme Court, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Id*. at 2348. **Defendants have an absolute affirmative defense based on the Constitutional delegation of power to the states to manage the election of Presidential Electors and state officials.** Prophylactic measures to prevent fraud are entitled to the most extraordinary judicial deference based on *Brnovich* absent

13

*direct – not circumstantial – evidence* of a racially discriminatory purpose.  To do otherwise pushes the Voting Rights Act into unconstitutional territory.

76 -86.   The allegations contained in paragraphs 76-86 are extraordinarily irrelevant to Plaintiffs' claims. Cataloging Rep. Briscoe Cain's travel out of state for matters wholly unrelated to the challenged statutes here wastes the judicial resources of the court, the resources of the parties and the time of anyone who reads paragraphs 77 and 78 of the Complaint.  The same is true for scores of other paragraphs in the Compliant that lob political rhetoric devoid of any factual allegations that courts have found relevant to a claim under the Voting Rights Act.  To the extent Plaintiffs catalog any litigation brought by United States Representative Louie Gohmert in Paragraph 83, it has no relevance apart from smearing a long-serving and popular reelected Congressmen whom the Plaintiffs wish was not as long-serving and as popular.  To the extent that the Plaintiffs utilize any manufactured complaint about Texas Attorney General Ken Paxton in Paragraph 86, it has no relevance apart from a time tested tactic preferred by LULAC to both manufacture attacks on those with whom they disagree and thereafter cite the manufactured attack as somehow relevant to the issues of the day, or here, in a Voting Rights Act case.  To the extent that these paragraphs states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in these paragraphs.

87.    Denied. To the extent that Defendants targeted anyone the motivation was partisan, not racial.

88.    This paragraph contains Plaintiffs' characterization of their failed efforts to stop legislation supported by the majority of democratically elected members of the Texas Legislature. More to the point, the characterization is irrelevant to a claim under the Voting

Rights Act. To the extent that a response is required, the Foundation denies the allegations in paragraph 88.

89.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 89. The Foundation denies Plaintiffs' allegations and use of legal conclusions such as "anti-voting" and "voter suppression."

90.    Admit that there was opposition to SB 7 by Democratic members.  They lost. Their loss for lack of a majority has no relevance in a claim brought under the Voting Rights Act.

91.    Plaintiff's cite unnamed "legal experts." Such "legal experts," are a familiar sort and regular signatories to organized opposition to any manner of conservative or Republican policy initiatives.  To the extent that Plaintiffs would rely on the reactionary gripes from the faculty lounge, they are wholly irrelevant to a Voting Rights Act claim and are entitled to no consideration.   The allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act.

92.    Opinions by legislative witnesses against legislation are no more relevant than the opinions of those who supported the legislation. Their opinions are strictly barred in both instances from providing any relevant evidence and may not be used to infer discriminatory motives to members of the Defendants. The United States Supreme Court has found such evidence to be irrelevant in a Section 2 claim. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 92.

93.     That one Harris County bureaucrat made a ridiculous statement characterizing the challenged election provisions here as the same thing as laws that prohibited minority citizens from being out at night demonstrates the absurdist foundation upon which this case is built.  The United States Supreme Court has found such evidence to be irrelevant in a Section 2 claim. The allegations relate to matters wholly irrelevant to a Section 2 claim under the Voting Rights Act. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 93.

94.     The Foundation admits that Senate Bill 7 was passed by the Senate. The Foundation denies Plaintiffs' characterizations of the testimony before the Senate as "powerful."

95.     Denied. These allegations are both wrong, preposterous and wholly irrelevant to a claim brought under the Voting Rights Act. The allegation is rank hyperbole designed to smear Rep. Briscoe Cain.

96.     Denied. The allegation is both wrong, preposterous and wholly irrelevant to a claim brought under the Voting Rights Act.

97.     Admitted, and what of it? The allegation has no relevance to a claim brought under the Voting Rights Act.

98.     To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 98.

99.     To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations

contained in paragraph 99.  Even if true, the allegation has no relevance to a claim brought under the Voting Rights Act.

100.     The Foundation admits that the Texas House Elections Committee considered HB. 6 and heard public testimony. The Foundation denies the Plaintiffs' remaining characterizations and allegations.

101.     The Foundation admits that there was public testimony regarding the House Elections Committee's consideration of HB 6.  Mere opposition by individuals to legislation which eventually becomes law has no relevance in a claim brought under the Voting Rights Act. The Foundation denies the remaining allegations and characterizations and conclusions of law included in paragraph 101.

102.     Hyperbole and exaggeration by legislative witnesses is not relevant evidence in a Voting Rights Act claim.  Moreover, views by outside individuals are not relevant and may not be used to infer discriminatory motives to members of the Defendants. Further, Plaintiffs have failed to provide the name of the individual alleged to have made these statements alleged in this paragraph and the Foundation lacks knowledge to form a basis as to the truth of the allegations contained in paragraph 102.

103.     Hyperbole and exaggeration by legislative witnesses is not relevant evidence in a Voting Rights Act claim.  Views by outside individuals are not relevant and may not be used to infer discriminatory motives to members of the Defendants. Further, Plaintiffs have failed to provide the name of the individual alleged to have made these statements alleged in this paragraph and the Foundation lacks knowledge to form a basis as to the truth of the allegations contained in paragraph 103.

104.    Hyperbole and exaggeration by legislative witnesses is not relevant evidence in a

Voting Rights Act claim.  Views by outside individuals are not relevant and may not be used to

infer discriminatory motives to members of the Defendants. Further, Plaintiffs' baseless,

nonfactual allegations of intimidation to poll workers are irrelevant to Plaintiffs' claims of

intentional voting discrimination. To the extent that this paragraph states factual allegations, the

Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and

denies the allegations contained in paragraph 104.

105.    The Foundation denies Plaintiffs' characterization and conclusions of law alleged

in paragraph 105.  Plaintiffs' allegations against Representative Cain are irrelevant as to the

intent of other members of the Texas legislature. Furthermore, the Supreme Court has

recognized, "[t]he 'cat's paw' theory has no application to legislative bodies." *Brnovich v.

Democratic Nat'l Comm.*, 141 S. Ct. at 2350. A "cat's paw" is a "dupe" who is "used by another

to accomplish his purposes." Webster's New International Dictionary 425 (2d ed. 1934). A

plaintiff in a "cat's paw" case typically seeks to hold the plaintiff 's employer liable for "the

animus of a supervisor who was not charged with making the ultimate [adverse] employment

decision." *Staub v. Proctor Hospital,* 562 U.S. 411, 415 (2011). According to the Supreme

Court, "the legislators who vote to adopt a bill are not the agents of the bill's sponsor or

proponents. Under our form of government, legislators have a duty to exercise their judgment

and to represent their constituents. It is insulting to suggest that they are mere dupes or tools."

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. at 2350.

106.    Denied. The Foundation submits that objections to aspects of the legislative

process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*,

830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in

developing legislation,' such as increasing the number of votes a law requires for passage, may not demonstrate an invidious intent, standing alone.")

107.    Denied. The Foundation submits that objections to aspects of the legislative process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*, 830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in developing legislation,' such as increasing the number of votes a law requires for passage, may not demonstrate an invidious intent, standing alone.")

108.    The Foundation admits that SB 7 did pass out of the House Election Committee. The Foundation denies Plaintiffs' characterization of the parliamentary process and exculpatory evidence supporting a defense of partisan motivation for SB 7.

109.    Acts by outside individuals are not relevant and may not be used to infer discriminatory motives to members of the Defendants. The Foundation lacks knowledge to form a basis as to the truth of the allegations contained in paragraph 109.

110.     The Foundation submits that objections to aspects of the legislative process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*, 830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in developing legislation,' such as increasing the number of votes a law requires for passage, may not demonstrate an invidious intent, standing alone.")

111.    Denied and "racist roots" mischaracterizes the necessary elements of an intent claim under the Voting Rights Act.  Plaintiffs allege facts not relevant to a Voting Rights Act claim in an effort to shock and inflame. "Racist roots" are not relevant in a claim of this sort. Racial motivations, even if free from animus, are relevant, not "racist roots."

112.    Citing Article 6 Section 4 of the Texas Constitution cannot be used as evidence to infer racially motivated intent under the Voting Rights Act and to allow such evidence to be relevant would push the Voting Rights Act beyond constitutional limits.

113.    Denied. Furthermore, Plaintiffs' allegations are foreclosed by Supreme Court precedent. *Brnovich v Democratic Nat'l Comm.*, 141 S. Ct. at 2348 ("it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders.")

114.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 114.

115.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 115.

116.    Plaintiffs' generalization of alleged conversations without dates time and places, denies the Foundation knowledge sufficient to determine the truthfulness of the allegations contained in paragraph 116 much less its relevance. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 116.

117.    Plaintiffs allege that a Catch-22 was presented to Rep. Cain.  Had Rep. Cain replied that he did not consider whatsoever any discriminatory effects, his statement would be used against him to demonstrate he did not sufficiently worry about discriminatory effects. Had Rep, Cain, in contrast, replied that he actually did consider discriminatory effects, his statement would be used against him to establish both foreknowledge of harmful effects and his headlong

20

desire to proceed anyway with the bill. Hence, the allegation presents a trap laid by Rep. Rafael

Anchia which now manifests as Paragraph 117.  It is thus irrelevant in a Voting Rights Act

claim.

118.    This paragraph, to the extent it may be understood, contains opinion and nothing

of any probative value in a Voting Rights Act claim. To the extent that a response is required, the

Foundation denies the allegations in paragraph 118.

119.    Denied. The Foundation submits that objections to aspects of the legislative

process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*,

830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in

developing legislation,' such as increasing the number of votes a law requires for passage, may

not demonstrate an invidious intent, standing alone.")  Merely describing the procedural history

of a piece of legislation from the viewpoint of the side that had the fewer number of votes and

lost has no probative value in a Voting Rights Act claim.

120.    Denied. Plaintiffs' allegations concerning the exaggerations of the Harris County

Election administrator regarding conclusions of law are irrelevant.

121.    Denied. The Foundation submits that objections to aspects of the legislative

process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*,

830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in

developing legislation,' such as increasing the number of votes a law requires for passage, may

not demonstrate an invidious intent, standing alone.")

122.    Denied. The Foundation submits that objections to aspects of the legislative

process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*,

830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in

developing legislation,' such as increasing the number of votes a law requires for passage, may not demonstrate an invidious intent, standing alone.")

123.    Denied. The Foundation submits that objections to aspects of the legislative process in developing legislation may not demonstrate an invidious intent. *See Veasey v. Abbott*, 830 F.3d 216, 237 (5th Cir. 2016) ("'objection[s] to typical aspects of the legislative process in developing legislation,' such as increasing the number of votes a law requires for passage, may not demonstrate an invidious intent, standing alone.")

124.    Admit that the Texas Senate passed SB 7 but deny any characterizations by Plaintiffs except to the extent they provide the Defendant exculpatory evidence of a partisan rather than racial motivation.

125.    Admit that Democratic lawmakers absented themselves from the House and their duties as representatives, resulting in a loss of a quorum, facts which have no relevance in a Voting Rights Act claim.  Deny the remaining allegations contained in paragraph 125.

126.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 126.

127.    Denied particularly to the extent it misrepresents the statements of Lt. Gov. Dan Patrick.

128.    Admit that the election officials in Harris County ignored and violated provisions of the Texas Election Code in conducting the 2020 federal election. Deny the Plaintiffs' characterization of legal challenges pursued against Harris County election officials.

129.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 129.

130.    Admit that Gov. Abbott responded to Texas Democratic lawmakers who absconded their duties as legislators. Deny Plaintiffs' characterizations of the Governor's actions. Moreover, the allegation has utterly no relevance to a Voting Rights Act claim.

131.    Admit that Gov. Abbott vetoed Article X of the State Budget and called a special session of the Texas Legislature in response to Texas Democratic lawmakers abandoning their responsibilities. Moreover, the allegation has utterly no relevance to a Voting Rights Act claim.

132.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 132.

133.    The failed efforts to mobilize opposition to SB1 has no relevance to a Voting Rights Act claim. To the extent a response is required to Paragraph 133, denied.

134-135.  The Foundation denies the Plaintiffs' characterization of any statements, which would speak for themselves. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in these paragraphs.

136.    The Foundation submits that lack of awareness of a disparate impact on a protected group is not enough, and that a successful claim of intentional discrimination under Section 2, require that Plaintiffs prove that racial discrimination was a substantial or motivating factor behind the enactment of a bill. See *Veasey v Abbott,* 830 F. 3d. 216 (2016). To the extent

that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 136.

137.    Denied. The Defendants enjoy an absolute constitutional power to enact prophylactic legislation to deter and discourage voter fraud absent direct evidence of a racially motivated intent. The Foundation notes that the U.S. Supreme Court just recently reaffirmed that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347 (2021). Further, according to the Supreme Court, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Id*. at 2348.

138.    Denied. Knowledge of fraud evidence by the Secretary of the Elections Division is not relevant to Plaintiffs' claims nor is fraud a precondition to a State's passage of election integrity procedures. *See Brnovich*, 141 S. Ct. at 2347.

139.    If true, the allegations that a particular county elections office has demonstrated a disregard for the election code that is designed to protect the integrity of the election provides a relevant basis for the Legislature to notice election officials that such action is improper as illustrated in SB 1. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 139.

140.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 140.

141.    The Foundation submits that lack of awareness of a disparate impact on a protected group is not enough, and that for a claim of intentional discrimination under Section 2,

Plaintiffs must prove that racial discrimination was a substantial or motivating factor behind the enactment of a bill. See *Veasey v Abbott,* 830 F. 3d. 216 (2016). To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 141.

142.    The Foundation admits that Democrat members of the Texas House left the State of Texas for the District of Columbia, on a private airplane with a case of beer, and abrogated the duties of their elected offices. The Foundation denies the Plaintiffs' characterization of the legislative process and the position of House Democrats.

143.    Admit that House Democrat Joe Moody was removed as speaker pro temp. Deny the Plaintiffs' characterization of the abrogation of the duty of House members to appear for legislative sessions as required.

144.    Admit that, due to House Democrats' abrogation of their official duties in leaving the State, the legislative session ended as their intentional absence denied the legislature a quorum. The Foundation denies the Plaintiffs' characterization of the legislative process and the actions of the Governor.

145.    Admit that in a second special session SB 1 was reintroduced. Deny the remaining allegations contained in paragraph 145.

146.    Admit that Sen. Alvarado attempted to filibuster the bill. Deny the remaining allegations and Plaintiffs' conclusions of law contained in paragraph 146. The Foundation submits that the Supreme Court has consistently cautioned in the context of statutory construction against placing too much emphasis on the contemporaneous views of a bill's opponents. Such statements are entitled to little weight. Speculations and accusations of a few

opponents simply do not support an inference of the kind of racial animus. *Veasey v Abbott*, 830 F. 3d. 216, 237 (2016).

147.  Admit.

148.  Admit that absent legislators returned to the House. Deny Plaintiffs' characterizations of their return.

149.    Admit that SB 1 was passed out of Committee in the 2nd special session and scheduled for a vote. Deny Plaintiffs' characterization of the process.

150.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 150.

151    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 151.

152.    Admit that SB 1 did pass the House. Deny the remaining allegations contained in paragraph 152.

153.    Admit.

154.    Admit that SB 1 is a comprehensive election related bill. Deny that any of the provisions contained in SB 1 are "suppressive" as characterized by Plaintiffs. Deny that any provision of SB1 makes it harder for any eligible Texas resident to participate in the state's elections. The law speaks for itself.

155.    Denied.

156.    Admit that SB 1 prevents and provides some criminal penalties for any unsolicited mailing of applications for an absentee ballot and for the use of public funds to

facilitate a third party from the same distribution. Deny Plaintiffs' characterization of the targeted provisions of SB 1. The law speaks for itself.

157.    Admit that SB 1 contains common-sense voter identification requirements for absentee voting. The Foundation notes that Texas law has required in-person voters to possess an ID to vote. Denied as to Plaintiffs' characterizations of SB 1. The law speaks for itself.

158.    Deny Plaintiffs' characterizations of SB 1 and their legal conclusion that the law "burdens" voters. The Foundation states that the use of "ballot drop boxes" was temporary due to concerns regarding COVID-19 during the 2020 federal election cycle.

159.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 159.  Plaintiffs fail to note that the use of "ballot drop boxes" was temporary due to concerns regarding COVID-19 during the 2020 federal election cycle and, instead, now claim that their use was due to postal delays. Plaintiffs also fail to provide any factual basis for the allegation that Harris County's use of ballot drop boxes was any more substantial than any other county that used these drop boxes. The Foundation also notes that one plaintiff sought a preliminary injunction against a proclamation by Governor Abbott during the 2020 federal elections that limited one ballot drop box for each county in Texas. The claim was that the proclamation was a violation of the First and Fourteenth Amendment just as Plaintiffs allege here. The claim was unsuccessful. "Indeed, one strains to see how (the limitation of one ballot drop box per county) burdens voting at all." *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 144 (5th Cir. 2020) The Court went on to say "to 'abridg[e] the right to vote means to place a barrier or pre-requisite to voting, or otherwise make it more difficult to vote.'" *Id*. at 145. Texans have many voting opportunities.

"Texans can (1) vote early in-person for an expanded period…(2) hand-deliver a marked mail ballot … or (3) drop an absentee ballot in the mail. In light of those options, the October 1 Proclamation's partial refinement of one avenue for absentee voting does not amount to a 'severe restriction' on the right to vote." *Id*. at 145. Yet, counsel now argues that the elimination of that one drop box used in only one election cycle burdens minority voters.

160.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 160.

161.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 161.

162.    Plaintiffs do not list the "other jurisdictions" that participated in "drive-thru" voting in 2020.  The Foundation admits that Harris County election officials were unlawfully utilizing "drive-thru" voting sites. The Foundation denies the Plaintiffs' characterization of such voting.

163.    The Foundation admits that Harris County election officials were unlawfully utilizing "drive-thru" voting sites. The Foundation denies the Plaintiffs' characterization of such voting.

164.    Denied. The Foundation notes that the U.S. Supreme Court just recently reaffirmed that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm*., 141 S. Ct. 2321, 2347 (2021). Further, according to the Supreme Court, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Id*.

at 2348. The Foundation denies Plaintiffs' unsupported characterization of SB 1's proponents' conclusions.

165.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 165.

166.     Admit that Tex. Elec. Code § 64.031 provides that voters in specific circumstances may request assistance in voting. Deny that SB 1 adds any further requirement upon the *voter* who utilizes assistance when voting. Admit that SB 1 requires that the *"assistor"* not the voter provide information regarding name, address and whether the assistor is receiving compensation. SB 1 does not limit who may provide assistance to the voter or the number of times someone can provide assistance. Plaintiffs' allegations that this requirement places any additional burden on the voter is without merit.

167.     Admit that SB 1 requires an assister to swear that they will confine their assistance to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot." Deny Plaintiffs' assumption that this provision does not allow the assister to answer a question by a voter concerning this process.

168. This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 168.

169.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 169. Denied as to

Plaintiffs' characterization of SB 1's prohibition on "vote harvesting." According to the Supreme Court,

> Limiting the classes of persons who may handle early ballots to those less likely to have ulterior motives deters potential fraud and improves voter confidence. That was the view of the bipartisan Commission on Federal Election Reform chaired by former President Jimmy Carter and former Secretary of State James Baker. The Carter-Baker Commission noted that "[a]bsentee balloting is vulnerable to abuse in several ways: . . . Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to intimidation." Report of the Comm'n on Fed. Election Reform, Building Confidence in U. S. Elections 46 (Sept. 2005).

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347 (2021)

170.   This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 170.

171.   This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 171.

172.   Admit that SB 1 prohibits counties from operating early voting hours before 6:00 am and after 10:00 pm. and provides for early in person voting hours on Sundays. Denied as to Plaintiffs' characterization of these provisions.

173.   This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 173.

174.   This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 174.

175.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 175.

176.    Denied. Plaintiffs provide no factual basis for this claim and the Foundation is without knowledge to form a basis as to the truth of the allegations and assumptions concerning voters participation in Harris County contained in paragraph 176.

177.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 177.

178.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 178.

179.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 179. The Foundation submit that Plaintiffs have not cited the section of SB 1 that allows poll watchers to intimidate and disempower voters or intimidate and harass election officials, because it does not do any such thing.

180.    Admit that Texas Election Code already provides that candidates and political parties may send watchers to polling places to "observe the conduct of the election" Tex. Elec. Code §33.001. Admit that SB 1 confirms that election officials must comply with this section of the Code, give the watchers free movement within the polling place so that they may be permitted to observe *the conduct of the election* and criminalizes election officials from denying

such access. Admit that this access does not allow the watcher to observe the voter's completion of a ballot at a voting station. Except as admitted, denied.

181.     Admit.

182.      Admit that SB 1 directs Partisan Watchers to bring attention to an election officer any observed or suspected irregularity or violation of the law. Deny Plaintiffs' allegations characterizing these requirements.

183.     Denied. Plaintiffs' allegations concerning what Partisan Watchers "are likely to" do are without any factual basis.

184.     Denied.

185.     Denied. Plaintiffs' allegations regarding voter intimidation are not supported by any factual basis in this paragraph or by reference to Parts IV-V.

186.     Denied. Plaintiffs provide no factual basis for these allegations or identification of the alleged harassment or the victimized voters who "escaped" from the alleged harassment.

187.     Denied. Plaintiffs' allegations are nothing more than pure non-factual conjecture

188.     Denied. Plaintiffs' allegations are nothing more than pure non-factual conjecture.

189.     Denied. Plaintiffs' allegations are nothing more than pure non-factual conjecture.

190.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 190.

191.   Denied. The Foundation notes that the U.S. Supreme Court just recently reaffirmed that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347 (2021). Further, according

to the Supreme Court, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Id*. at 2348.

192.     Denied. Plaintiffs' allegations against "political actors" are irrelevant.

193.     Denied. The Attorney General has publicly stated that he has hundreds of election fraud cases pending in Texas courts. *See*, *e.g.*, Bethany Blankley, *AG Paxton: More than 500 election fraud cases pending in Texas courts*, June 28, 2021, *available at* https://tylerpaper.com/news/texas/ag-paxton-more-than-500-election-fraud-cases-pending-in-texas-courts/article_ab2afc6e-9531-5540-a0a1-14c775c38e93.html. One key case involves the arrest of a woman charged with unlawfully assisting people voting by mail. *See* Press Release, AG Paxton: San Antonio Election Fraudster Arrested for Widespread Vote Harvesting and Fraud (Jan. 13, 2021), *available at* https://www.texasattorneygeneral.gov/news/releases/ag-paxton-san-antonio-election-fraudster-arrested-widespread-vote-harvesting-and-fraud. Additionally, the Heritage Foundation maintains a database of Election Fraud, including those specific to Texas. Election Fraud Cases, https://www.heritage.org/voterfraud/search?state=TX.

194.     To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 194.

195.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 195.

196.     This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 196.

197.    Plaintiffs' lack of a factual basis for this allegation prevents the Foundation from determining the truth of the allegation. The Foundation submits that if spoken as alleged, Representative Cain's alleged statement is consistent with Supreme Court precedent. Further, the Attorney General has publicly stated that he has hundreds of election fraud cases pending in Texas courts. *See*, *e.g.*, Bethany Blankley, *AG Paxton: More than 500 election fraud cases pending in Texas courts*, June 28, 2021, *available at* https://tylerpaper.com/news/texas/ag-paxton-more-than-500-election-fraud-cases-pending-in-texas-courts/article_ab2afc6e-9531-5540-a0a1-14c775c38e93.html.

198.    Plaintiffs' lack of a factual basis for this allegation prevents the Foundation from determining the truth of the allegation. The Foundation submits that if spoken as alleged, Senator Hughes' alleged statement is consistent with Supreme Court precedent. Further, the Attorney General has publicly stated that he has hundreds of election fraud cases pending in Texas courts. *See*, *e.g.*, Bethany Blankley, *AG Paxton: More than 500 election fraud cases pending in Texas courts*, June 28, 2021, *available at* https://tylerpaper.com/news/texas/ag-paxton-more-than-500-election-fraud-cases-pending-in-texas-courts/article_ab2afc6e-9531-5540-a0a1-14c775c38e93.html.

199.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 199.

200.    Denied.

201-206.  Denied. The allegations contained in paragraphs 201 through 206 allege instances of previous discrimination in Texas beginning in 1866 through 1975. The Supreme Court has cautioned that "unless historical evidence is reasonably contemporaneous with the

challenged decision, it is of little probative value" *McCleskey v Kemp,* 481 U.S. 279, 298 (1987) (resolving those laws in force just after the Civil War were not probative of the legislature's intent many years later). More recently the Court in *Shelby County* also counseled against undue reliance on noncontemporary evidence of discrimination in the voting rights context. 133 S. Ct. at 2618-19 (2013). Considering these cases, the most relevant "historical" evidence is relatively recent history, not long past history. *Veasey v Abbott,* 830 F.3d 216, 232 (2016).

207.    Any allegation of official discrimination must relate to voting. Disparities in income alone are not relevant to allegations of discriminatory intent under Section 2. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 207.

208.    Any allegation of official discrimination must relate to voting. Disparities in income and employment alone are not relevant to allegations of discriminatory intent under Section 2. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 208.

209.    Any allegation of official discrimination must relate to voting, and Plaintiffs' reliance on a study by the Economic Policy Institute regarding employment is not entitled to validity or acceptance. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 209.

210.    Denied.

211.    To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 211.

212.    Denied. Plaintiffs' allegations misrepresent the basis for the holding in *League of Latin Am. Citizens v Perry*, 548 U.S. 399 (2006). In *Veasey*, the Fifth Circuit reversed a district court's reliance on *LULAC v Perry* as evidence of discriminatory intent by the Texas Legislature, correcting that the court did not base its decision on any conclusion that the legislature intentionally discriminated based upon ethnicity. The Court held that this case does not support a finding of "relatively recent" discrimination. *Veasey*, 830 F.3d at 233.

213.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 213.

214.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 214.

215.    Plaintiffs fail to allege the factual basis for this allegation. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 215.

216.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 216.

217.    Denied. Plaintiffs allege that Secretary of State Whitley undertook efforts to intimidate minority voters. Not true. In support of that allegation, Plaintiffs quote one sentence

36

from the *Whitley* case. However, the Court did not find any intent on the part of Secretary Whitley to intimidate minority voters. Rather, the Court found that

> The Secretary of State through his dedicated employees, beginning in February 2018, made a good faith effort to transition from a passive process of finding ineligible voters through the jury selection system in each county to a proactive process using tens of thousands of Department of Public Safety driver license records matched with voter registration records. *Notwithstanding good intentions*, the road to a solution was inherently paved with flawed results…

*Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-074-FB, 2019 U.S. Dist. LEXIS 227243, at *7-8 (W.D. Tex. Feb. 27, 2019) (emphasis added.) The Court continued the "Secretary of State Whitley has accepted responsibility and apologized for the failure to seek confirmation of the accuracy, appropriateness, competency and due diligence of the process before the rollout." *Texas League of United Latin American Citizens v. Whitley*, 2019 U.S. Dist. LEXIS 227243, *8-9.

218.    Plaintiffs fail to allege the factual basis for this allegation. To the extent that this paragraph states factual allegations, the Foundation lacks knowledge sufficient to form a basis as to the truth of these allegations and denies the allegations contained in paragraph 218.

219.    Again, Plaintiffs fail to provide a factual basis for the allegations against an "unidentified poll worker" and the Foundation has no knowledge to form a basis as to the truth of the allegations and therefore denies the allegations contained in paragraph 219. The Foundation submits that actions of an unidentified poll worker is irrelevant to Plaintiffs' claims.

220.    Denied. Plaintiffs' allegations provide no facts, no dates, no identification of the individuals alleged to be involved. The allegations regarding an unknown "older white man" are irrelevant to Plaintiffs' claims nor is there any allegation of action by a state actor.

221.    Denied. Plaintiffs' allegations provide no facts, no dates, no identification of the individuals alleged to be involved or any state actor involvement.

222.     Denied. Plaintiffs' allegations provide no facts, no dates, no identification of the individuals alleged to be involved and a total lack of acts of intimidation. Nor is there any allegation of action by a state actor.

223.     Denied. Plaintiffs' allegations provide no facts, no dates, no identification of the individuals alleged to be involved and a total lack of acts of intimidation. Nor is there any allegation of action by a state actor.

224.     Denied. Plaintiffs' allegations provide no facts, no dates, no identification of the individuals alleged to be involved and a total lack of acts of intimidation. Nor is there any allegation of action by a state actor.

225.     Denied. Plaintiffs' allegation that "[m]inority voter intimidation is likely to get worse" assumes that minority voter intimidation has already been alleged. Plaintiffs have failed to allege one factual based incident of minority voter intimidation. The remaining allegations fail to provide any factual basis to support the allegations and lack any allegation that intimidating behavior occurred.

226.     Admit that Senator Cruz successfully campaigned for re-election in 2018. Deny all remaining allegations and submit that they are not relevant to an inquiry of an intentional discrimination claim under Section 2.

227-234          Denied. The allegations in paragraphs 227 through 234 are denied. Plaintiffs' allegations contained in these paragraphs allege that political campaigns in Texas include racial appeals. The Foundation submits that these allegations are not relevant to Plaintiffs' claims of intentional discrimination under Section 2. The allegations contained in paragraphs 227 through 234 may be relevant in a vote dilution case brought under Section 2's *effects* clause. In determining whether a particular law has a discriminatory effect in a vote

dilution effects case courts look to a non-exhaustive list of factors that have come to be known as the "Senate factors." *Thornburg v. Gingles,* 478 U.S. 30 (1986). Whether political campaigns in a jurisdiction resort to racial appeals is included as a consideration under the "Senate factors" However, "it is important to keep in mind that the *Gingles* or 'Senate' factors grew out of and were designed for use in vote-dilution cases." *Brnovich v. Democratic Nat'l. Comm.* 141 S. Ct. 2321, 2340 (2021). As the Plaintiffs are not alleging an effects claim under Section 2 or a claim of vote dilution, the allegations contained in these paragraphs are simply not relevant. Plaintiffs' claim involves the application of Section 2 to a generally applicable time, place and manner of voting statute and is alleging intentional discrimination. Claims of intentional discrimination must be guided by the approach developed in *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266-268 (1977); *see also*, *Brnovich* at 2349.

235-236.        Denied. Plaintiffs' allegations contained in paragraphs 235-236 are denied. Plaintiffs' allegations contained in these paragraphs allege that in Texas voting is racially polarized. The Foundation submits that these allegations are irrelevant to Plaintiffs' claims of intentional discrimination by the Texas State Legislature. Plaintiffs' allegations contained in paragraphs 235 through 236 may be relevant in a vote dilution case brought under Section 2's *effects* clause. In determining whether a particular law has a discriminatory effect in a vote dilution effects case courts look to a non-exhaustive list of factors that have come to be known as the "Senate factors." *Thornburg v. Gingles,* 478 U.S. 30 (1986). The degree to which racially polarized voting exists in a jurisdiction is listed as one of the "Senate factors" However, "it is important to keep in mind that the *Gingles* or 'Senate' factors grew out of and were designed for use in vote-dilution cases." *Brnovich v. Democratic Nat'l. Comm.* 141 S. Ct. 2321, 2340 (2021). As the Plaintiffs are not alleging either a Section 2 effects or vote dilution claim the allegations

39

contained in these paragraphs are simply not relevant. Plaintiffs' claim of intentional discrimination must be guided by the approach developed in *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266-268 (1977); *see also*, *Brnovich* at 2349.

237.    Denied. Plaintiffs provide no factual basis for the allegations and the Foundation lacks knowledge to form a basis as to the truth of the allegations contained in paragraph 237 and also submit that the allegations are irrelevant to any of Plaintiffs' claims.

238.    Denied. Plaintiffs' reliance on a Cooperative Congressional Study is not entitled to any weight or authority.

239-241.    Denied. Plaintiffs allege that there are disparities in minority political participation and that Black and Hispanics are underrepresented in the State's elected offices, local level and within the Texas Judiciary. Plaintiffs' allegations may be relevant in a vote dilution case brought under Section 2's *effects* clause. In determining whether a particular law has a discriminatory effect in a vote dilution effects case courts look to a non-exhaustive list of factors that have come to be known as the "Senate factors." *Thornburg v. Gingles,* 478 U.S. 30 (1986). The degree to which minority candidates have won elections in a jurisdiction is listed as one of the "Senate factors" However, such are "it is important to keep in mind that the *Gingles* or 'Senate' factors grew out of and were designed for use in vote-dilution cases." *Brnovich v. Democratic Nat'l. Comm.* 141 S. Ct. 2321, 2340 (2021). As Plaintiffs are not alleging either a Section 2 effects or vote dilution claim the allegations contained in these paragraphs are simply not relevant. Plaintiffs' claim of intentional discrimination must be guided by the approach developed in *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266-268 (1977); *see also*, *Brnovich* at 2349.

243.    The Foundation incorporates by references all prior paragraphs of this Answer and all paragraphs to come as though fully set forth herein.

244.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 244.

245.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 245.

246.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 246.

247.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 247.

248.    Denied.

249.    The Foundation incorporates by references all prior paragraphs of this Answer and all paragraphs to come as though fully set forth herein.

250.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 250.

251.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 251.

252.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 252.

253.(a)        This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 253(a). Plaintiffs fail to note that the use of "ballot drop boxes" was temporary due to concerns regarding COVID-19 during the 2020 federal election cycle and, instead, now claim that their use was due to postal delays. Plaintiffs also fail to provide any factual basis for the allegation that Harris County's use of ballot drop boxes was any more substantial than any other county that used these drop boxes. The Foundation also notes that one plaintiff sought a preliminary injunction against a proclamation by Governor Abbott during the 2020 federal elections that limited one ballot drop box for each county in Texas. The claim was that the proclamation was a violation of the First and Fourteenth Amendment just as Plaintiffs allege here. The claim was unsuccessful. "Indeed, one strains to see how (the limitation of one ballot drop box per county) burdens voting at all." *Tex. League of United Latin Am. Citizens v. Hughes*, 978 F.3d 136, 144 (5th Cir. 2020) The Court went on to say "to 'abridg[e] the right to vote means to place a barrier or pre-requisite to voting, or otherwise make it more difficult to vote.'" *Id*. at 145. Texans have many voting opportunities. "Texans can (1) vote early in-person for an expanded period…(2) hand-deliver a marked mail ballot … or (3) drop an absentee ballot in the mail. In light of those options, the October 1 Proclamation's partial refinement of one avenue for absentee voting does not amount to a 'severe restriction' on the right to vote." *Id*. at 145. Yet, counsel now argues that the elimination of that one drop box used in only one election cycle burdens minority voters.

42

253 (b)  This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 253(b). Senate Bill 1 does not create any obstacle for voters to receive assistance at the polls. SB 1 does not require anything additional from a voter or limit in any manner who the voter may choose to assist them in voting.

253(c). This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 253(c). There is no provision contained in SB 1 that empowers a poll watcher to harass voters and encourage voter intimidation tactics.

254.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 254.

255.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 255. Texans have many voting opportunities.  "Texans can (1) vote early in-person for an expanded period…(2) hand-deliver a marked mail ballot … or (3) drop an absentee ballot in the mail. In light of those options, the October 1 Proclamation's partial refinement of one avenue for absentee voting does not amount to a 'severe restriction' on the right to vote." *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 145.

256.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 256.

257.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 257.

258.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 258.

259.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 259. Moreover, Plaintiffs' claim alleging an undue burden on Democrat voters are not protected by Section 2 of the VRA. The VRA protects racial minorities not political parties. See *Bartlett v Strickland*, 556 U.S. 1 (2209) See *Gil v Whitford,* 138 S. Ct. 1916 (2018).

260.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 260. Moreover, Plaintiffs' claim alleging an undue burden on Democrat voters is not protected by Section 2 of the VRA.  The VRA protects racial minorities not political parties. See *Bartlett v Strickland*, 556 U.S. 1 (2209) *See Gil v Whitford,* 138 S. Ct. 1916 (2018).

261.    This paragraph contains Plaintiffs' characterization of their action, the laws at issue, legal arguments, or conclusions of law, to which no response is required. To the extent that a response is required, the Foundation denies the allegations in paragraph 261.

262.    Denied.

263.    The Foundation incorporates by references all prior paragraphs of this Answer and all paragraphs to come as though fully set forth herein.

264-275.    Admit that the First Amendment protects against an abridgement of freedom of speech. Like most rights, the rights protected by the First Amendment are subject to reasonable restrictions. *See Virginia v. Black*, 538 U.S. 343, 358 (2003) ("The protections afforded by the First Amendment … are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution.").

Under the federalist structure of the United States, the states are responsible for regulating the conduct of their elections. It is well recognized that state regulations will invariably affect "the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, (1983). *Voting for Am., Inc. v. Steen,* 732 F.3d 382, 387 (5th Cir. 2013). Plaintiffs' position that such statutes are reviewed through a "strict Scrutiny" lens tis incorrect. Rather they are reviewed utilizing the *Anderson/Burdick* balancing test, requiring the court "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789.  Second, the court "must identify and evaluate the precise interest put forward by the State as justifications for the burden imposed by its rule." *Voting for Am., Inc*. at 387-388.  A statute may reasonably restrict the time, place, and manner of protected speech or expressive activity in a public forum so long as "the restrictions 'are justified without

45

reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Thus, the test in deciding the constitutionality of  SB 1, a content-neutral statute at issue is whether prohibiting any in-person interaction with a voter within the "physical presence of an official ballot or a ballot voted by mail," with the intent to deliver votes for a specific candidate or measure,  and if the individual is conducting the activity in exchange for compensation or benefit is (1) is "justified without reference to the content of the regulated speech," (2) is "narrowly tailored to serve a significant governmental interest," and (3) leaves open ample alternative channels for communication of the information." *Id*. (citation and internal quotation marks omitted).  In re Atty General's "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Groups," 200 N.J. 283, 304 (2009).

> Like most rights, the rights protected by the First Amendment are subject to reasonable restrictions. *See Virginia v. Black*, 538 U.S. 343, 358 (2003) ("The protections afforded by the First Amendment … are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution.").

> A statute may reasonably restrict the time, place, and manner of protected speech or expressive activity in a public forum so long as "the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (*quoting Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Thus, the test in deciding the constitutionality of the content-neutral statutes at issue is whether proscribing all expressive activity within 100 feet of a polling site on Election Day (1) is "justified without reference to the content of the regulated speech," (2) is "narrowly tailored to serve a significant governmental interest," and (3) leaves[] open ample alternative channels for communication of the information." *Ibid*. (citation and internal quotation marks omitted).

*In re Atty General's "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps.*,"
200 N.J. 283, 304, 981 A.2d 64, 76-77 (2009).

SB 1's prohibition is "narrowly tailored to serve a significant governmental interest."
*Ward,* 491 U.S. at 789. That governmental interest is to promote the constitutional right to vote
and ensure the reliability and integrity of the electoral process by shielding voters from the
influences of coercion or intimidation. The Supreme Court has recognized the compelling nature
of this interest in *Brnovich* in upholding Arizona's ban on "ballot harvesting."

> But prevention of fraud is not the only legitimate interest served by restrictions on
> ballot collection. As the Carter-Baker Commission recognized, third-party ballot
> collection can lead to pressure and intimidation. And it should go without saying
> that a State may take action to prevent election fraud without waiting for it to occur
> and be detected within its own borders. Section 2's command that the political
> processes remain equally open surely does not demand that "a State's political
> system sustain some level of damage before the legislature [can] take corrective
> action." *Munro v. Socialist Workers Party*, 479 U. S. 189, 195 (1986). Fraud is a
> real risk that accompanies mail-in voting even if Arizona had the good fortune to
> avoid it. Election fraud has had serious consequences in other States. For example,
> the North Carolina Board of Elections invalidated the results of a 2018 race for a
> seat in the House of Representatives for evidence of fraudulent mail-in ballots. The
> Arizona Legislature was not obligated to wait for something similar to happen
> closer to home.

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2348 (2021).

Moreover, this statute merely regulates the conduct of other actors near a voter in voting
a ballot, and those collecting and delivering completed voter ballots. The act of interfering with a
voter's ability to cast a ballot in private and without undue influence furthers the state's
substantial interest in protecting the integrity of its election. See *Brnovich.*  Moreover, the
prohibitions on the collection and delivering of another voter's ballot is non-expressive activity,
that is not protected by the First Amendment. *See League of Women Voters of Fla. v. Browning*,
575 F. Supp. 2d 1298, 1319 (S.D. Fla. 2008) ("[T]he collection and handling of voter registration
applications is not inherently expressive activity"); *Garman v. U.S. Postal Service*, 509 F.Supp.

507, 510 (N.D. Ind. 1981) (noting that the ministerial task of processing draft registration forms

has no speech component that would implicate First Amendment rights. "[I]f actually registering

citizens to vote is necessary to 'express' the canvasser's belief in the importance of voting, then

Appellees essentially seek a 'First Amendment right not just to speak out or engage in

"expressive conduct" but also to succeed in their ultimate goal regardless of any other

considerations." *Voting for Am., Inc*., 732 F.3d at 391.). The same can be said concerning the

bill's prohibition on collecting and delivering voter ballots. The protected speech is the *voter's*

completion of the ballot, not the conduct of its collection and delivery by another.

276.     The Foundation incorporates by references all prior paragraphs of this Answer

and all paragraphs to come as though fully set forth herein.

277.     Admit.

278.     Admit.

279.     Admit.

280.     Admit.

281-283.     These paragraphs contain Plaintiffs' characterization of their action, the

laws at issue, legal arguments, or conclusions of law, to which no response is required. To the

extent that a response is required, the Foundation denies the allegations in these paragraphs.

## AFFIRMATIVE DEFENSES

Defendant-Intervenor asserts three affirmative defenses:

### First Affirmative Defense: Section 2 is Unconstitutional
### if Applied to Invalidate a State Law in this Circumstance

To the extent that Plaintiffs' Complaint alleges that Texas's election law violates the

Voting Rights Act, the Act is unconstitutional as applied to these facts and circumstances

because they are inconsistent with the purpose of the Fifteenth Amendment and exceed

Congress's authority to enforce the right to vote regardless of race as found in the Fifteenth Amendment.

## Second Affirmative Defense: Partisanship, Not Race

Plaintiffs here actually seeks to vindicate partisan interests, not racial ones. Plaintiffs' arguments are aimed at helping Democrats win, not protecting racial minorities. Otherwise, Plaintiffs would have confined the factual allegations in the complaint to well pled facts with a long-established jurisprudence to support their relevance. In a Voting Rights Act case brought under Section 2, a defendant may establish as a defense that the defendant acted with partisan interests, not racial ones. Here, the legislature may have done so in addition to acting with the intent to secure the integrity of the ballot. If indeed the legislature acted with a partisan interest, Plaintiffs have returned the favor and brought an action designed, in whole or in part, to attack any partisan gain made or partisan purpose of the Texas legislature. Because the issues surrounding voting and election process are so intertwined with partisan issues, this case is ultimately an effort to assert partisan interests. Plaintiffs are not above such a motive. Indeed, the issue of election integrity, voting rights and Section 2 have become interwoven with partisan disputes. To the extent the Texas legislature acted with any intent besides the intent to secure Texas elections, it was a partisan intent, not a racial one.

## Third Affirmative Defense: Absolute Constitutional Power to Enact Prophylactic Legislation

Defendants make repeated allegations that Defendants had no evidence, inadequate evidence, or insufficiently tailored evidence of voter fraud to justify enactment of the challenged legislation.  Defendants enjoy an absolute constitutional prerogative to enact prophylactic legislation to strengthen election administration procedures to deter and prevent fraud even if no examples of fraud or administrative breakdown are in the legislative record.  This is an absolute

delegation of power under the Constitution to the states to set the rules for electing Presidential electors, state and local officials and members of Congress if no federal law directly mandates the articulation of particular examples of fraud or breakdown as opposed to prophylactic justifications. Absent direct evidence of racially motivated intent – as opposed to circumstantial evidence – Defendants do not bear any burden to provide evidence of voter fraud as opposed to prophylactic motivation in this case. Any effort to burden a defendant in a Voting Rights Act claim with such a burden infringes on powers expressly delegated to the state under the Constitution and renders such burden shifting in a Voting Rights Act claim to be unconstitutional as applied.

## **Inadequate Facts Alleged**

Federal Rule of Civil Procedure requires a showing of entitlement to relief. Such a showing cannot be made by mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint is riddled with factual allegations that, even if true, do not entitle Plaintiffs to relief under Section 2 of the Voting Rights Act. Many of these allegations bear no relevance to a claim under Section 2 of the Voting Rights Act properly applied, while others are simply conclusory, and lack any evidentiary allegation showing present official discrimination in voting. Plaintiffs have failed to state a plausible claim that the Defendants have violated Section 2.

Dated: October 7, 2021                    Respectfully Submitted,

                                          /s/ Andy Taylor
                                          Andy Taylor SBN: 19727600
                                          Andy Taylor & Associates, P.C.
                                          2628 Hwy 36 South #288
                                          Brenham, Texas 77833
                                          Tel: 713-222-1817

Fax: 713-222-1855
andy@andytaylorlaw.com

Maureen Riordan*
Kaylan L. Phillips*
Public Interest Legal Foundation
32 E. Washington St., Suite 1675
Indianapolis, Indiana 46204
Tel: 317-203-5599
Fax: 888-815-5641
mriordan@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Counsel for Proposed Defendant-Intervenor
Public Interest Legal Foundation*

*Application for admission *pro hac vice* forthcoming