**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> JOSE A. ESPARZA, *et al,*. <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-0920-XR |

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE THE COMPLAINT OF**
**LA UNIÓN DEL PUEBLO ENTERO ET AL.**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................ ii

Introduction ................................................................................................................................... 1

Argument ........................................................................................................................................ 2

    I.   Plaintiffs Cannot Satisfy *Ex parte Young* ............................................................... 2

        A.  Plaintiffs Cannot Sue the Governor ........................................................... 2

        B.  Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy
            Secretary ......................................................................................................... 3

        C.  The Attorney General Is Also Immune ....................................................... 5

        D.  Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity ................ 7

    II.  Plaintiffs Lack Standing ................................................................................................ 8

        A.  Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis
            ........................................................................................................................... 8

        B.  Plaintiffs Have Not Plausibly Alleged Traceability or Redressability ............ 9

        C.  No Plaintiff Has Associational Standing ..................................................... 9

        D.  None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury ............ 12

        E.  The Entity Plaintiffs Violate the Bar on Third-Party Standing ..................... 16

        F.  The Individual Plaintiffs Also Are Not Injured ........................................... 17

    III. Plaintiffs' Claims Fail as a Matter of Law .............................................................. 18

        A.  Plaintiffs Failed to State a Claim under the ADA ...................................... 18

            1.   Plaintiffs Do Not Allege a Qualifying Disability ......................... 18

            2.   Defendants Do Not Administer Elections ..................................... 20

            3.   Texas Law Does Not Discriminate Against Disabled Voters ............ 21

            4.   Texas Already Provides Reasonable Accommodations .................... 22

        B.  Plaintiffs' First Amendment Claims Fail as a Matter of Law ..................... 23

        C.  Plaintiffs Lack a Private Cause of Action for Their VRA Claims ............... 24

            1.   Section 208 Does Not Create a Private Cause of Action for These
                Plaintiffs ...................................................................................... 25

            2.   Section 2 Also Does Not Create a Private Cause of Action ............. 27

        D.  Count X Is Redundant ................................................................................ 29

Conclusion ................................................................................................................................... 29

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott,*
   956 F.3d 696 (5th Cir. 2020)............................................................................................3, 6

*ACORN v. Fowler,*
   178 F.3d 350 (5th Cir. 1999)........................................................................... 12, 14, 16

*Ala. State Conference of the NAACP v. Alabama,*
   949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting)......................................... 8

*Alexander v. Choate,*
   469 U.S. 287 (1985)..........................................................................................................23

*Alexander v. Sandoval,*
   532 U.S. 275 (2001).................................................................................................*passim*

*Allen v. State Bd. of Elections*....................................................................................... 28, 29

*Arkansas United v. Thurston,*
   517 F. Supp. 3d 777 (W.D. Ark. 2021) ...................................................................27

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015)..........................................................................................................29

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.,*
   19 F.3d 241 (5th Cir. 1994)...........................................................................................10

*Ass'n of Am. Physicians & Surgeons, Inc. v. HHS,*
   224 F. Supp. 2d 1115 (S.D. Tex. 2002), *aff'd,* 67 F. App'x 253 (5th Cir. 2003) (per curiam)...........................................................................................................................18

*Baaske v. City of Rolling Meadows,*
   191 F. Supp. 2d 1009 (N.D. Ill. 2002).....................................................................19

*Barker v. Halliburton Co.,*
   645 F.3d 297 (5th Cir. 2011).........................................................................................17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..........................................................................................................19

*Block v. Tex. Bd. of Law Examiners,*
   952 F.3d 613 (5th Cir. 2020)..........................................................................................7

*Brnovich v. Democratic Nat'l Comm.*,
    141 S. Ct. 2321 (2021) (Gorsuch, J., concurring) .............................................................27

*Cadena v. El Paso Cnty.*,
    946 F.3d 717 (5th Cir. 2020) .............................................................................................23

*California v. Sierra Club*,
    451 U.S. 287 (1981) .............................................................................................................25

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ........................................................................................*passim*

*City of El Cenizo v. Texas*,
    890 F.3d 164 (5th Cir. 2018) .............................................................................................24

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .....................................................................................................*passim*

*Conservation Force v. Delta Air Lines, Inc.*,
    190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per
    curiam) .................................................................................................................................28

*Coon v. Ledbetter*,
    780 F.2d 1158 (5th Cir. 1986) ...........................................................................................17

*Cornerstone Christian Sch. v. UIL*,
    563 F.3d 127 (5th Cir. 2009) .............................................................................................11

*Ctr. for Biological Diversity v. EPA*,
    937 F.3d 533 (5th Cir. 2019) .....................................................................................8, 9, 11

*Danos v. Jones*,
    652 F.3d 577 (5th Cir. 2011) .............................................................................................17

*Davis v. United States*,
    597 F.3d 646 (5th Cir. 2009) ...............................................................................................2

*Def. Distributed v. U.S. Dep't of State*,
    No. 1:15-cv-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018) .................................13

*Delancey v. City of Austin*,
    570 F.3d 590 (5th Cir. 2009) .............................................................................................28

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) .............................................................................................10

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2017) (Souter, J.) ...............................................................................10

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*,
    469 F. App'x 364 (5th Cir. 2012) (per curiam) ...................................................11

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
    11 F.4th 68 (2d Cir. 2021) ...................................................................................11

*Fair Elections Ohio v. Husted*,
    770 F.3d 456 (6th Cir. 2014) ................................................................. 12, 14, 15

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) .............................................................................................8

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
    17 F. Supp. 3d 599 (S.D. Tex. 2014) (Costa, J.) ...............................................12

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...........................................................................................24

*Garcia v. City of San Antonio*,
    No. SA-06-CA-315-FB, 2006 WL 8434186 (W.D. Tex. Oct. 17, 2006) .........29

*Garrett v. Thaler*,
    560 F. App'x 375 (5th Cir. 2014) (per curiam) ................................................11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ...........................................................................................25

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) (per curiam) ........................................................9

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ......................................................................................14

*Guan v. Mayorkas*,
    No. 1:19-cv-6570, 2021 WL 1210295 (E.D.N.Y. Mar. 30, 2021) ...................18

*Hale v. Harrison Cnty. Bd. of Supervisors*,
    8 F.4th 399 ................................................................................................... 18, 19

*Hale v. King*,
    642 F.3d 492 (5th Cir. 2011) (per curiam) ..................................................18, 20

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
    487 F. App'x 189 (5th Cir. 2012) .....................................................................11

*Hartman v. Moore*,
    547 U.S. 250 (2006) .............................................................................................6

*Houston v. DTN Operating Co.*,
No. 4:17-cv-35, 2017 WL 4653246 (E.D. Tex. Oct. 17, 2017) .................................................. 19

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................................................................ 9, 10

*Ivy v. Williams*,
781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414
(2016) ........................................................................................................................................ 20

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ................................................................................................................ 25

*Jacobson v. Fla. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) .............................................................................................. 14

*Jett v. Dallas Independent School District*,
491 U.S. 701, 731 (1989) ........................................................................................................ 26

*Kerrigan v. Phila. Bd. of Election*,
No. 2:07-cv-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008) .............................................. 22

*La. ACORN Fair Hous. v. LeBlanc*,
211 F.3d 298 (5th Cir. 2000) .................................................................................................. 14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ..................................................................................... 13, 15, 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................................................................ 17

*Lightbourn v. Cnty. of El Paso*,
118 F.3d 421 (5th Cir. 1997) ............................................................................................. 20, 21

*Logan v. U.S. Bank Nat'l Ass'n*,
722 F.3d 1163 (9th Cir. 2013) ................................................................................................ 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................................................... 8, 9, 17

*Mass. Mut. Life Ins. v. Russell*,
473 U.S. 134 (1985) ................................................................................................................ 25

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) .................................................................................................... 2

*Morris v. Livingston*,
739 F.3d 740 (5th Cir. 2014) .................................................................................................... 3

*Munie v. Stag Brewery, Div. of G. Heileman Brewing Co.,*
    131 F.R.D. 559 (S.D. Ill. 1989) ........................................................................................29

*N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice,*
    *PLLC,*
    887 F. Supp. 2d 78 (D.D.C. 2012) (Lamberth, J.) ........................................................29

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) .......................................................................................8, 13

*Nat'l Taxpayers Union, Inc. v. United States,*
    68 F.3d 1428 (D.C. Cir. 1995) ...............................................................................13, 14, 15

*Nat'l Treasury Emps. Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) .............................................................................12, 14, 15

*Ne. Ohio Coal. for Homeless v. Blackwell,*
    467 F.3d 999 (6th Cir. 2006) .........................................................................................10

*Neely v. PSEG Tex., LP,*
    735 F.3d 242 (5th Cir. 2013) .........................................................................................11

*Nixon v. City of Houston,*
    511 F.3d 494 (5th Cir. 2007) .........................................................................................24

*OCA-Greater Houston v. Texas,*
    867 F.3d 604 (5th Cir. 2017) ...................................................................................7, 8, 27

*Olivarez v. T-Mobile USA, Inc.,*
    997 F.3d 595 (5th Cir. 2021) .........................................................................................22

*Pa. Dep't of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ......................................................................................................20

*Payne v. Midcrown Pavilion Apartments,*
    No. SA-19-cv-407-FB, 2021 WL 3813378 (W.D. Tex. Aug. 26, 2021) ..........................19

*Perez v. Abbott,*
    390 F. Supp. 3d 803 (W.D. Tex. 2019) (Rodriguez, J.) ................................................27

*Physician Hosps. of Am. v. Sebelius,*
    691 F.3d 649 (5th Cir. 2012) ..........................................................................................2

*Planned Parenthood Center for Choice v. Abbott,*
    141 S. Ct. 1261 (2021) ....................................................................................................3

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009) ......................................................................................................24

*Prison Justice League v. Bailey,*
    697 F. App'x 362 (5th Cir. 2017) (per curiam) .................................................................12

*Pub. Citizen, Inc. v. Bomer,*
    274 F.3d 212 (5th Cir. 2001)..............................................................................................17

*Raj v. LSU,*
    714 F.3d 322 (5th Cir. 2013)...............................................................................................7

*Ray v. Texas,*
    No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ......................................11

*Sims v. Tex. Dep't of Hous. & Cmty. Affs.,*
    No. 4:05-cv-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.)...........19

*Sixth St. Bus. Partners LLC v. Abbott,*
    No. 1:20-cv-706-RP, 2020 WL 4274589 (W.D. Tex. July 24, 2020) ..................................3

*Smith v. Harris Cnty.,*
    956 F.3d 311 (5th Cir. 2020)........................................................................................ 21, 22

*Spokeo, Inc. v. Robbins,*
    578 U.S. 330 (2016) ...........................................................................................................8

*State v. Hollins,*
    620 S.W.3d 400 (Tex. 2020) (per curiam)...........................................................................7

*Stokes v. Sw. Airlines,*
    887 F.3d 199 (5th Cir. 2018)..............................................................................................25

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)........................................................................................................9, 10

*T.O. v. Fort Bend Indep. Sch. Dist.,*
    2 F.4th 407 (5th Cir. 2021)................................................................................................22

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020)............................................................................................3, 5

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020)....................................................................................... 2, 4, 7

*Tex. Democratic Party v. Hughs,*
    --- F. App'x ---, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam)............................ 2, 3, 4, 5

*Texas Indigenous Council v. Simpkins,*
    No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.)...............10

*Thomas v. Reeves,*
   961 F.3d 800 (5th Cir. 2020) (Oldham, J., concurring) ...................................................27

*United States v. Armstrong,*
   517 U.S. 456 (1996) .........................................................................................................6

*United States v. Georgia,*
   546 U.S. 151 (2006) .........................................................................................................7

*Walker v. Tex. Div., Sons of Confederate Veterans,*
   576 U.S. 200 (2015) .......................................................................................................24

*Webster v. Fall,*
   266 U.S. 507 (1925) .......................................................................................................27

*Wilkerson v. Butler,*
   229 F.R.D. 166 (E.D. Cal. 2005) ..................................................................................29

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) .........................................................................................................26

*Ysleta Del Sur Pueblo v. Laney* ..........................................................................................26

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ........................................................................................24, 25, 29

*Zimmerman v. City of Austin,*
   881 F.3d 378 (5th Cir. 2018) ...........................................................................13, 15, 16, 17

## Constitutional Provisions

U.S. Const. art. III, § 2 .........................................................................................................9

Tex. Const. art. IV, § 1 .........................................................................................................3

## Legislative Materials

An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess.
   (2021) ..................................................................................................................*passim*

## Statutes and Rules

42 U.S.C.
   § 1983 ...............................................................................................................7, 16, 17
   § 12132 ....................................................................................................................21

52 U.S.C.
    § 10301(a) ........................................................................................ 28
    § 10302 ........................................................................................... 27
    § 10302(c) ........................................................................................ 27
    § 10308(d) ............................................................................ 26, 27, 28
    § 10504 ........................................................................................... 26
    § 10508 ...................................................................................... 25, 26
    § 20104(c) ........................................................................................ 25
    § 20105(a) ................................................................................... 25, 26
    § 20105(b)–(c) .................................................................................. 25

Americans with Disabilities Act ....................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ......................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................................... 2

Fed. R. Civ. P. 12(b)(6), (f) ................................................................. 29

Fed. R. Civ. P. Rule 12(f) ..................................................................... 29

Tex. Elec. Code
    § 1.022 ...................................................................................... 22, 23
    § 15.028 ............................................................................................ 5
    § 15.083 ............................................................................................ 5
    § 16.032 ............................................................................................ 5
    § 18.061 ............................................................................................ 5
    § 18.065(f) ........................................................................................ 5
    § 31.001(a) ........................................................................................ 3
    §§ 31.003–.004 ................................................................................. 3
    § 41.001 .......................................................................................... 22
    § 43.034 .......................................................................................... 23
    § 61.012 .......................................................................................... 23
    § 64.009 ...................................................................................... 22, 23
    § 64.009(g) ........................................................................................ 6
    § 81.001 .......................................................................................... 22
    § 82.002(a) ...................................................................................... 22
    § 86.001 .......................................................................................... 20
    § 86.002 .......................................................................................... 20
    § 86.006 .......................................................................................... 20
    § 86.007(b) ...................................................................................... 20
    § 86.011 .......................................................................................... 20
    § 87.027(i) ....................................................................................... 20
    § 87.061 .......................................................................................... 20
    § 276.016(a)(1) ........................................................................... 17, 23

**Other Authorities**

28 C.F.R. § 35.150.................................................................................................................................22

## INTRODUCTION

In La Unión del Puebla Entero's complaint alone—1 out of 5 in the consolidated cases—12 plaintiffs brought 11 claims against 4 defendants to challenge an unspecified number of provisions in Senate Bill 1 ("SB1"). Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). That alone would complicate matters, but this complaint makes it impossible for the Court to assure itself of its own jurisdiction. Rather than address sovereign immunity and standing claim by claim and provision by provision, as Fifth Circuit precedent requires, the Plaintiffs seem to be throwing everything at the wall and seeing what sticks.

Parsing the Plaintiffs' various claims reveals numerous jurisdictional defects. Consider, for example, that the Plaintiffs have sued Governor Abbott, even though he does not enforce SB1. The Plaintiffs do not allege otherwise. They have simply sued him without any explanation in the complaint as to why. Similarly, the Plaintiffs have sued the Deputy Secretary of State and the Attorney General to challenge provisions under which they merely receive information. Receiving information is not the sort of compulsion or constraint that could constitute enforcement under Fifth Circuit precedent.

The Court should not reward the Plaintiffs' tactics. The State Defendants (the Governor, the Deputy Secretary, and the Attorney General) respectfully request that the Court dismiss the claims against them, albeit leaving the Plaintiffs free to file a more focused complaint if appropriate. *See* Fed. R. Civ. P. 12(b)(1).

The Plaintiffs' claims fail on the merits as well. The Plaintiffs cannot assert an Americans with Disabilities Act ("ADA") claim without identifying particular voters with identified disabilities. Plaintiff Longoria, a local official, cannot bring a First Amendment challenge to a provision that governs her official, on-the-job speech. The Plaintiffs' Voting Rights Act ("VRA") claims fail because they, as non-voters, do not have implied causes of action. So if the Court reaches the merits, it should

dismiss Counts IV-VIII and Count X for the reasons explained below. *See* Fed. R. Civ. P. 12(b)(6).[1]

**ARGUMENT**

## I.      Plaintiffs Cannot Satisfy *Ex parte Young*

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, --- F. App'x ---, 2021 WL 2310010, at *2 (5th Cir. June 4, 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). The plaintiffs here have failed to allege facts sufficient to invoke the *Ex parte Young* exception as to the State Defendants.

### A.      Plaintiffs Cannot Sue the Governor

Sovereign immunity bars Plaintiffs' claims against the Governor because their complaint fails

---

[1] Of course, the State Defendants believe Plaintiffs' other claims are meritless as well. But for the sake of judicial efficiency, the State Defendants will address those claims and other issues in subsequent motions, if necessary. *See* ECF 31, Order to Consolidate, *A Union Del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR (W.D. Tex. Sept. 30, 2021).

to allege that the Governor plays any role in enforcing SB1's challenged provisions. Plaintiffs' only allegation plausibly relating to the Governor's authority is that he "is the chief executive officer of the State of Texas." ECF 1 ¶ 22 (citing Tex. Const. art. IV, § 1).[2] But "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

Plaintiffs do not allege facts supporting the "provision-by-provision analysis" that "is required." *Tex. Democratic Party*, 2021 WL 2310010, at *2. No provision of SB1 gives the Governor enforcement responsibilities. "If the official sued is not 'statutorily tasked with enforcing the challenged law,' the requisite connection is absent and '[the] *Young* analysis ends.'" *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 998), *vacated as moot*, *Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *accord Tex. Democratic Party*, 961 F.3d at 401; *Sixth St. Bus. Partners LLC v. Abbott*, No. 1:20-cv-706-RP, 2020 WL 4274589, at *3–4 (W.D. Tex. July 24, 2020).

## B.   Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy Secretary

Sovereign immunity also precludes Plaintiffs' claims against the Deputy Secretary of State because he does not have a sufficient connection with enforcement of SB1's challenged provisions.[3] Plaintiffs allege that the Secretary is "responsible for administering and implementing the election laws in Texas, including SB1," ECF 1 ¶ 24, but that conclusory assertion overstates the Secretary's role.

Plaintiffs cite Texas Election Code § 31.001(a), which provides: "The secretary of state is the chief election officer of the state." Plaintiffs separately allege that the Secretary has certain election-oversight authority pursuant to Texas Election Code §§ 31.003–.004. *See* ECF 1 ¶ 25. Citing those general statutes does not suffice. "[I]n the particular context of Texas elections, . . . the Secretary's role

---

[2] Citations to "ECF 1" refer to the complaint that the LUPE Plaintiffs filed in No. 5:21-cv-844 (W.D. Tex. Sept. 3, 2021) before the Court consolidated these cases.

[3] At the time of this Motion's filing, the Deputy Secretary is performing the Secretary's duties due to a vacancy.

varies, so" Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue. *Tex. Democratic Party*, 2021 WL 2310010, at *2 (citing *Tex. Democratic Party*, 978 F.3d at 179–80).

Plaintiffs challenge numerous provisions of SB1, but they only include allegations regarding the Secretary's duties in connection with four—Sections 2.04, 2.06, 2.07, and 2.10. ECF 1 ¶¶ 113–17. Thus, as an initial matter, Plaintiffs' claims against the Deputy Secretary regarding every other provision of SB1 should be dismissed. Without a "provision-by-provision analysis," Plaintiffs cannot carry their burden. *Tex. Democratic Party*, 2021 WL 2310010, at *2.

Even for the remaining claims, though, Plaintiffs have not established the requisite connection to enforcement. Plaintiffs allege that Sections 2.04 and 2.10 require registrars and county clerks to provide information to the Secretary and others, and that this "will have a chilling effect on voter registration" and "facilitate investigation and prosecution of perfectly legal activity by voters." ECF 1 ¶¶ 113–15. As a mere recipient of information, though, the Deputy Secretary does not enforce these provisions. Neither provision authorizes the Deputy Secretary to undertake an investigation or prosecution allegedly feared by Plaintiffs. *Cf.* SB1 § 2.10 (referring to "an investigation" by "the county or district attorney"). An injunction against the Deputy Secretary could not prevent any allegedly injurious enforcement of Sections 2.04 or 2.10. Indeed, it is difficult to imagine how the Deputy Secretary could be enjoined from receiving information.

With respect to Section 2.07, Plaintiffs concede that the Secretary does not "purge[]" voters from the rolls. ECF 1 ¶ 116. They acknowledge that whether any voter is removed from the voter rolls depends on the "matching criteria" applied by "the voter registrar," not the Secretary. *Id.* That the Secretary shares information with registrars is irrelevant because that is not enforcement. It does not involve "compulsion or constraint," as Fifth Circuit precedent requires. *City of Austin*, 943 F.3d at 1000. Nor do Plaintiffs allege that the Secretary's information-sharing role under Section 2.07 is

injurious. *See* ECF 1 ¶ 116 (asserting injury depends on "[i]f the voter registrar" takes certain action).[4]

For Section 2.06, Plaintiffs claim that "career officials will have to shift resources" to comply with their obligations under the Election Code to maintain the list of registered voters. *Id.* ¶ 117. Those obligations are attributable to pre-existing state law, *see* Tex. Elec. Code §§ 15.083, 16.032, 18.061, not any alleged enforcement role for the Deputy Secretary under SB1. Plaintiffs do not contend otherwise. To the extent Plaintiffs contend that local officials would not comply with the Election Code absent the threat of penalties under SB 1, the Deputy Secretary does not impose those penalties. *See* SB 1 § 2.06 (codifying Tex. Elec. Code § 18.065(f)).

### C.    The Attorney General Is Also Immune

Sovereign immunity also bars Plaintiffs' claims against the Attorney General. Again, allegations that the Attorney General has a general duty to enforce state laws, ECF 1 ¶¶ 23, 27–28, are not enough to satisfy *Ex parte Young*. *See Tex. Democratic Party*, 961 F.3d at 401–02. A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each challenged provision. *Tex. Democratic Party*, 2021 WL 2310010, at *2. Though they challenge numerous SB1 provisions, the plaintiffs only discuss the Attorney General in relation to two—Sections 2.04 and 6.01. ECF 1 ¶¶ 78, 113. For this reason, Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant for challenges to any other provision.

Plaintiffs' allegations are also insufficient even for Sections 2.04 and 6.01. Plaintiffs complain that Section 2.04 "will have a chilling effect on voter registration" due to the "added threat of criminal prosecution." ECF ¶ 113. But the Attorney General does not enforce Section 2.04. Under that provision, he merely receives information. *See* SB1 § 2.04 (codifying Tex. Elec. Code § 15.028). As

---

[4] The complaint appears to contain a typographical error, but to avoid any confusion, Defendants clarify that Section 2.07 addresses whether the Secretary sends notice "to the voter registrar," SB1 § 2.07, not "to the subject voter," ECF 1 ¶ 116.

explained above, enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but Section 2.04 does not empower the Attorney General to compel or constrain anyone. Because "the requisite connection is absent," the *Ex parte Young* analysis ends there. *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 998).

Plaintiffs allege that Section 6.01 "will deter individuals from giving" rides to the polls to seven or more voters—even though doing so "is not illegal" under SB1—because such drivers "must complete and sign a form." ECF 1 ¶ 78. The Attorney General has no role in that process, except that the form is "available to the attorney general for inspection upon request." SB1 § 6.01 (codifying Tex. Elec. Code § 64.009(g)). That is not "compulsion or constraint." *City of Austin*, 943 F.3d at 1000.

Because Plaintiffs have not alleged, on a provision-by-provision basis, "that the Attorney General *has* the authority to enforce" the particular provisions at issue, *Id.* at 1001, there is no need to proceed to the next step in the analysis. Their claims fail out of the gate.

But if the Court reaches the second step, it must consider whether Plaintiffs have plausibly alleged "that [the Attorney General] is likely to" enforce the particular provisions at issue in the way Plaintiffs claim. *Id.* at 1002. On this score, Plaintiffs allege only that the Attorney General sued a local official for violating an election law other than SB1 and that he "stated that prosecution of election-related offenses is one of his priorities." ECF 1 ¶¶ 27–28. No doubt, the Attorney General is committed to satisfying his constitutional and statutory obligations, including enforcing election laws where he has that power and where appropriate. Still, "that he has chosen to" enforce "*different* statutes under *different* circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that violate federal law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006). Of course, the

Attorney General's past success in election cases underscores the lawfulness of his enforcement actions, and it undermines Plaintiffs' unfounded assertion that the Attorney General will start enforcing SB1 in an unlawful manner. *See* ECF 1 ¶ 26; *State v. Hollins*, 620 S.W.3d 400, 403 (Tex. 2020) (per curiam) (Texas Supreme Court held for Texas Attorney General, directing district court to enjoin the Harris County Clerk from sending unsolicited mail-in ballots).

### D.   Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity

Sovereign immunity bars Plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the reasons above, and Plaintiffs have not pleaded waiver or abrogation by Congress that would permit their claims to proceed. And if they had tried, they would have been wrong.

For Counts I–III and VII–XI, "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). With respect to Plaintiffs' ADA claim in Count VI, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. As explained below, the plaintiffs have not alleged conduct violating Title II, *see infra* Part III.A, so the State Defendants are entitled to sovereign immunity on Count VI.

As to Counts IV and V, although *OCA-Greater Houston* holds that the Voting Rights Act

abrogates sovereign immunity, that case was wrongly decided. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nevertheless, to the extent this Court is bound by *OCA-Greater Houston*, that decision does not relieve Plaintiffs of their burden to show Article III standing. As explained below, because the State Defendants do not enforce the challenged provisions, Plaintiffs cannot show traceability or redressability.

## II.    Plaintiffs Lack Standing

### A.    Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing

these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue. *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

**B.      Plaintiffs Have Not Plausibly Alleged Traceability or Redressability**

As an initial matter, Plaintiffs lack standing because their alleged harms are not traceable to or redressable by the State Defendants. By and large, Plaintiffs challenge SB1 as an undifferentiated whole, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have a broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

**C.      No Plaintiff Has Associational Standing**

The complaint does not plausibly allege facts establishing associational standing. A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. The plaintiff must therefore make two threshold showings: (1) that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (requiring "indicia of membership"), and (2) that identified members have "suffered the requisite harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Plaintiffs here have done neither.

First, Plaintiffs have not alleged facts establishing that they have "members" under the *Hunt* test. Plaintiffs SVREP and WCVI do not describe themselves as having members. SVREP instead

9

characterizes itself as a "nonprofit and nonpartisan organization," while WCVI describes itself as "public policy analysis organization." ECF 1 ¶¶ 12, 17. To be sure, both organizations claim to work on behalf of various Texas communities, *id.*, but the beneficiaries of a plaintiff's services do not qualify as members for purposes of associational standing. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[T]he Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization."). The lack of members is fatal to associational standing.

The remaining Entity Plaintiffs assert that they have members, at least in the colloquial sense, but they fail to allege that their purported members "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.). Plaintiffs allege no such facts. *See* ECF 1 ¶¶ 9–11, 13–16, 18.

Second, even assuming the Entity Plaintiffs have members, they have failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. Plaintiffs do not allege that the only individuals identified in the Complaint, Isabel Longoria and James Lewin, are members of the Entity Plaintiffs. *See* ECF 1 ¶¶ 19–21.

This defect, on its own, is sufficient to support dismissal. *See, e.g.*, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth*

*Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[5]

Finally, even if Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claims: Count V under Section 208 of the VRA and Count VI under the ADA. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, Plaintiffs' disability claims require the participation of individual members, both because they have individualized elements and because of the relief requested. For example, "to prevail on a claim of disability discrimination under the ADA, a party must prove that he has a disability," *Neely v. PSEG Tex., LP*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted), and that the disability "substantially limits an individual in a major life activity," *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (per curiam); *see also Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (as to § 208, considering the specific effect of Texas early voting law on group of elderly plaintiffs). This requires "a case-by-case analysis" of specific facts and circumstances, with respect to each particular plaintiff. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364,

---

[5] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if Plaintiffs did not have to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021). The content of those factual allegations would vary depending on the claim raised, but they should at minimum describe the activity in which the member wishes to perform, the member's eligibility to participate in the activity if relevant, and the specific burden the challenged provision imposes on the member.

369 (5th Cir. 2012) (per curiam). Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of disability claims.

### D.   None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury

The Entity Plaintiffs have not plausibly alleged that they, as organizations, will suffer injuries in fact. They therefore lack organizational standing.

*WCVI*: Plaintiff WCVI argues that SB1 will affect third parties and that "[l]ess voting by Latino registered voters hurts the overall mission of WCVI." ECF 1 ¶ 173. "[T]hat an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *ACORN v. Fowler*, 178 F.3d 350, 362 n.7 (5th Cir. 1999). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). In the election context, an organization's "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014).

Here, WCVI does not plausibly allege that any particular provision of SB1, much less all of the challenged provisions, will "impair the organization's activities." *Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 613 (S.D. Tex. 2014) (Costa, J.). No one contends that SB1 prevents WCVI from "conduct[ing] research" or sharing that research with "community leaders." ECF 1 ¶ 173.

*ADL*: Plaintiff ADL claims standing on two grounds, but neither suffices. First, ADL alleges that it "is concerned that" its future activities "would place" it "at risk of prosecution." ECF 1 ¶ 137. But "subjective fear . . . does not give rise to standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418

(2013). ADL does not even assert that it is likely to be prosecuted, much less plausibly allege that the risk of prosecution is more than "speculative." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018).

Second, ADL claims it "will be required to divert and expend resources on designing its voter education to properly inform Texas voters about SB1[]." ECF 1 ¶ 138. As an initial matter, an organization's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). If standing were so broad, law professors would always have standing to challenge any new law.

In any event, although the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman*, 881 F.3d at 390. A diversion of resources is thus cognizable only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Here, ADL does not allege an underlying injury that its alleged diversion was needed to counteract. Nor does it "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238).

*MABA-TX*: Plaintiff MABA-TX alleges that SB1 will have "negative effects" on third parties and "communities," supposedly requiring MABA-TX "to divert resources to prepare new educational materials" as well as "educate" third parties "about SB1[]." ECF 1 ¶¶ 157, 159. That does not confer standing for the reasons explained above. A plaintiff's opposition to a law's effects is not a cognizable

injury, *see Fowler*, 178 F.3d at 362 n.7; *Nat'l Treasury Emps. Union*, 101 F.3d at 1429, nor is the expense of educating others about SB1, *see Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. Moreover, MABA-TX has not alleged "any specific projects" it will have "to put on hold" due to its alleged diversion of resources. *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). Finally, MABA-TX's concern that SB1 could affect who wins elections, *see* ECF 1 ¶ 160, does not suffice because "[a]n organization's general interest in its preferred candidates winning as many elections as possible is . . . a 'generalized partisan preference[]' that federal courts are 'not responsible for vindicating.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1263 (11th Cir. 2020) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018)).

*Texas HOPE*: Plaintiff Texas HOPE offers three proposed injuries, but none succeeds. First, Texas HOPE argues that it "will be forced to divert resources to educate its membership about SB1[]," ECF 1 ¶ 164, but again, educating members is not a cognizable injury in fact. *See Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. Second, Texas HOPE contends that SB1 will "depress Latino turnout," ECF 1 ¶ 165, but an "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio*, 770 F.3d at 461; *see Gill*, 138 S. Ct. at 1933. Third, "Texas HOPE *believes* it will have difficulty recruiting election workers because" potential volunteers suffer from "confusion" and "fear" about SB1, ECF 1 ¶ 166 (emphasis added). A plaintiff's speculative belief about the reactions of third parties to a challenged law cannot support standing, both because it is based on "conjecture" and because it is "based on third parties' subjective fear." *Clapper*, 568 U.S. at 417 n.7.

*LUPE*: Plaintiff LUPE alleges three theories of standing, but each fails. First, it claims "SB1 will frustrate [its] mission" by "reducing voter turnout." ECF 1 ¶ 129. That is not an injury in fact. *See Fair Elections Ohio*, 770 F.3d at 461. Second, LUPE alleges that it will "divert its resources . . . to counteract the negative effects" on voter turnout. ECF 1 ¶ 127. Because the alleged underlying effect

on voter turnout is not a cognizable injury, neither is a diversion of resources meant to prevent that non-injury. *See Zimmerman*, 881 F.3d at 390; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Third, LUPE alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 1 ¶ 130, but LUPE does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. Even if that were an injury in fact, it would not give LUPE standing to challenge any of the other provisions at issue.

*Friendship-West*: Plaintiff Friendship-West lacks standing for many of the reasons discussed above. First, Friendship-West alleges that "SB1 will frustrate [its] mission," ECF 1 ¶ 131, but "[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union*, 101 F.3d at 1429. Second, Friendship-West alleges that it "will be required to divert and expend resources . . . to ensure that its congregants and community members comply with SB1's new, often confusing, and vague restrictions," ECF 1 ¶ 134, but educating others about the law is not an injury in fact. *Nat'l Taxpayers Union*, 68 F.3d at 1434. Third, Friendship-West alleges that it "believes" and "fears" that third parties will react to SB1 in ways it does not like, ECF 1 ¶ 135, but again, supposed injuries based on "conjecture" and "third parties' subjective fear" are doubly insufficient. *Clapper*, 568 U.S. at 417 n.7.

*SVREP*: Plaintiff SVREP alleges that SB1 will have "negative effects" on voter turnout and that it must "divert its resources . . . to counteract" those "negative effects." ECF 1 ¶ 140; *see id.* ¶ 145. That does not establish standing because SVREP's "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio*, 770 F.3d at 461. Like LUPE, SVREP also alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 1 ¶ 142, but SVREP does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. But even if SVREP were

injured, its standing would be limited to challenging provisions that increase the costs of assisting voters.

*Texas Impact*: Plaintiff Texas Impact allegedly foresees "difficulty recruiting election workers" due to "confusion about SB1's new rules for partisan poll watchers and fear among volunteers of criminal prosecution for conduct that could 'obstruct the view of a watcher.'" ECF 1 ¶ 148. But again, standing cannot be "based on third parties' subjective fear." *Clapper*, 568 U.S. at 417 n.7. Next, Texas Impact claims it "will be required to divert and expend resources to ensure that its members comply with SB1[]," ECF 1 ¶ 150, but Texas Impact does not allege what "reasonably certain injury imposed by" SB1 this alleged diversion is a "response to." *Zimmerman*, 881 F.3d at 390; *see La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Nor does Texas Impact allege which provisions of SB1 allegedly impose these compliance costs.

*Jolt Action*: Plaintiff Jolt Action alleges that "SB1 will frustrate [its] mission" and that it wants "to counteract the negative effects of SB1," ECF 1 ¶¶ 167, 171, but even a "direct conflict" between an "organization's mission" and a challenged law does not suffice "to confer standing on the organization." *Fowler*, 178 F.3d at 362 n.7. Like LUPE and SVREP, Jolt Action, alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 1 ¶ 172, but Jolt Action does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. But even Jolt Action were injured, its standing would be limited to challenging provisions that increase the costs of assisting voters.

*Fiel*: Plaintiff Fiel alleges the same injuries as Jolt Action, *see* ECF 1 ¶¶ 174, 176, 178, and they fail for the same reasons.

### E.    The Entity Plaintiffs Violate the Bar on Third-Party Standing

Finally, the Entity Plaintiffs lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights"

at issue. 42 U.S.C. § 1983. The same is true for Plaintiffs' other causes of action. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the Entity Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right not to be discriminated against based on a disability). Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

### F.    The Individual Plaintiffs Also Are Not Injured

Neither individual Plaintiff has alleged a cognizable injury. Plaintiff Longoria claims standing to challenge only one provision, Section 7.04—despite the fact that she joined every count in the complaint. *See* ECF 1 ¶ 185. Her alleged injury is a purported "chilling effect" caused by her "concern[] that she will face criminal prosecution." *Id.* ¶ 187. Longoria does not plausibly allege that she faces a "*certainly impending*" prosecution, *Clapper*, 568 U.S. at 409, from "encourag[ing] voters . . . to request an application." ECF 1 ¶ 184. Section 7.04 prohibits "solicit[ing] the submission of an application to vote by mail from a person who did not request an application." SB1 § 7.04 (codifying Tex. Elec. Code § 276.016(a)(1)). According to its plain text, that provision does not prohibit encouraging a voter "to request an application." ECF 1 ¶ 184. Longoria therefore has not plausibly alleged "a serious intention to engage in conduct proscribed by" Section 7.04, much less a serious threat of prosecution. *Zimmerman*, 881 F.3d at 389.

Plaintiff Lewin claims that he "*may* hesitate to volunteer" because of certain SB1 provisions regarding poll watchers. ECF 1 ¶ 188 (emphasis added). That is not an "actual or imminent" injury. *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (citing *Lujan*, 504 U.S. at 560); *see also*

*Clapper*, 568 U.S. at 401 (distinguishing between a certainly impending injury and one built on subjective fear). A plaintiff who is himself unsure whether he will be chilled has "failed to sufficiently plead the actual chilling of [his] First Amendment rights so as to constitute an injury for standing purposes." *Guan v. Mayorkas*, No. 1:19-cv-6570, 2021 WL 1210295, at *13 (E.D.N.Y. Mar. 30, 2021); *see Ass'n of Am. Physicians & Surgeons, Inc. v. HHS*, 224 F. Supp. 2d 1115, 1125 (S.D. Tex. 2002), *aff'd*, 67 F. App'x 253 (5th Cir. 2003) (per curiam) (dismissing for lack of standing due no "actual chill").

## III.   Plaintiffs' Claims Fail as a Matter of Law

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims that fail as a matter of law.

### A.   Plaintiffs Failed to State a Claim under the ADA

The Court should dismiss Count VI because Plaintiffs have not stated an ADA claim. The ADA requires a plaintiff to plausibly allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (per curiam) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)). In this case, Plaintiffs did not plausibly allege that they are disabled, that State Defendants provide the relevant service, that SB1 will prevent them from receiving assistance, or that reasonable accommodations are unavailable.

#### 1.   Plaintiffs Do Not Allege a Qualifying Disability

As an initial matter, Plaintiffs do not have qualifying disabilities. Most of the plaintiffs in this case are artificial entities that could not be disabled. *See* ECF 1 ¶¶ 9–18. The two individual Plaintiffs do not allege that they are disabled. *See id.* ¶¶ 19–21.

Two of the entity Plaintiffs—LUPE and Fiel —claim to have disabled members, *see* ECF 1 ¶¶ 118–19, 179–80, but that does not help them here. Plaintiffs attempt to litigate the ADA rights of

third parties despite "[t]he prohibition on third-party standing." *Sims v. Tex. Dep't of Hous. & Cmty. Affs.*, No. 4:05-cv-2842, 2005 WL 3132184, at *4 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) (dismissing ADA and Rehabilitation Act claims); *see also Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016–17 (N.D. Ill. 2002) (dismissing an ADA claim for lack of third-party standing). Claims to third-party standing are even weaker where, as here, the plaintiff's allegations do not tie the claim to "any identifiable individual" with a disability. *Sims*, 2005 WL 3132184, at *5.

Even if LUPE and Fiel could litigate the ADA rights of identified members, they have not plausibly alleged facts establishing a qualifying disability for those members. Their conclusory assertions that their "members include voters who are disabled" do not suffice. ECF 1 ¶¶ 119, 180. Even at the pleading stage, "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleading a qualifying disability requires alleging "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale*, 642 F.3d at 499–500. Because no Plaintiff has "alleged any facts displaying what her disability is or how her disability substantially limits one of her major life activities," the Court should dismiss Count VI. *Houston v. DTN Operating Co.*, No. 4:17-cv-35, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017); *see also Payne v. Midcrown Pavilion Apartments*, No. SA-19-cv-407-FB, 2021 WL 3813378, at * 12 (W.D. Tex. Aug. 26, 2021) (recommending dismissal because the complaint alleged "no medical facts" showing "that Mr. Payne is disabled under . . . the ADA").

Even if the Court finds LUPE's and Fiel's allegations sufficient (it should not), State Defendants respectfully request that the Court at least dismiss Count VI as to the ten Plaintiffs who do not claim to be disabled or have disabled members: Friendship-West Baptist Church, ADL, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Associations of Texas, Texas Hispanics Organized for Political Education, Jolt Action, William C. Velasquez

Institute, Longoria, and Lewin.

### 2.   Defendants Do Not Administer Elections

Plaintiffs' ADA claim also fails for an independent reason: They have not plausibly alleged a "service[], program[], or activit[y] for which the public entity is responsible." *Hale*, 642 F.3d at 499. Plaintiffs allege that "[v]oting" is the relevant "activity," ECF 1 ¶ 219, but they do not allege that the Governor, the Deputy Secretary, or the Attorney General are responsible for voting. Plaintiffs' claim fails as a matter of law because it does not allege that voting is "provided by" State Defendants. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

The Fifth Circuit's opinion in *Ivy v. Williams* illuminates the "provided by" standard. 781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). There, the Fifth Circuit held that plaintiffs could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." *Id.* at 258. TEA did not teach driver education. *Id.* at 255. That TEA "provides the licensure and regulation of driving education schools" did not mean it also provides "driver education itself." *Id.* "[H]eavy regulation" and the provision of "sample course materials and blank certificates" to schools were not enough to say that TEA itself provided the educational service provided by the schools.

The same logic applies here. In general, local election officials administer Texas elections. They receive and review ballot applications, Tex. Elec. Code § 86.001, mail carrier and ballot envelopes to voters, *id.* § 86.002, receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011, verify voter signatures, *id.* § 87.027(i), and count the results, *id.* § 87.061. State Defendants do not share those responsibilities.

In substance, Plaintiffs would impose supervisory liability on the State Defendants. But the Fifth Circuit rejected that tactic in *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421 (5th Cir. 1997). There, blind and mobility-impaired plaintiffs sued the Secretary of State because the voting equipment at

their polling places did not allow them to vote with complete secrecy. *Id.* at 423–24. The district court had held that the Secretary had a positive obligation to ensure that local election authorities complied with the ADA—one that the Secretary had violated, it concluded, by failing to encourage the development and adoption of new voting systems. Reversing the district court, the Fifth Circuit held that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (holding that the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA").

In reaching that decision, the Fifth Circuit analyzed the Secretary's legal obligations. First, many provisions in the Election Code "give discretion to the Secretary to take some action," but "[p]rovisions merely authorizing the Secretary to take some action do not confer a legal duty on [her] to take the contemplated action." *Id.* at 429. Second, although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance with the ADA. *Id.* Much less could the Governor or Attorney General be responsible for local election officials' compliance with the ADA.

### 3.   Texas Law Does Not Discriminate Against Disabled Voters

The ADA does not apply unless the relevant exclusion, denial, or discrimination is "by reason of [the plaintiff's] disability." 42 U.S.C. § 12132. Here, Plaintiffs have not identified any provision of SB1 that discriminates against voters with disabilities. Plaintiffs are not "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020).

In fact, state law expressly prohibits elections officials from interpreting any provision of the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law."

Tex. Elec. Code § 1.022.

Texans with disabilities have multiple options to vote: (1) voting in a polling place during early voting, (2) curbside voting during early voting, (3) voting in a polling place on Election Day, (4) curbside voting on Election Day, and (5) voting by mail. *See* Tex. Elec. Code §§ 41.001, 64.009, 81.001. These are the same options offered to other voters, except that voters without disabilities may not be eligible for curbside voting or voting by mail. *See id.* §§ 64.009, 82.002(a).

Texas's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [relevant jurisdiction], as well as its alternative and absentee ballot programs." *Kerrigan v. Phila. Bd. of Election*, No. 2:07-cv-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (explaining that "service, program, or activity, when viewed in its entirety" must be accessible but that a public entity does not necessarily need to "make each of its existing facilities accessible") (emphases added).

Plaintiffs suggest that SB1 will "mak[e] it harder for [disabled voters] to get necessary assistance," ECF 1 ¶ 220, but they do not allege getting appropriate assistance will be impossible. Nor do they allege that any particular voter will be unable to vote.

"[T]here are no allegations that permit the inference that [any] decision" under SB1 "was made because of [a Plaintiff's] disability status." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417–18 (5th Cir. 2021). "[A] conclusory allegation that" Defendants "discriminated against [Plaintiffs] based on [a] disability" does not satisfy "the Rule 8 pleading standard." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600–01 (5th Cir. 2021).

### 4.    Texas Already Provides Reasonable Accommodations

To the extent Plaintiffs raise a failure-to-accommodate theory, it fails because Plaintiffs have not plausibly alleged that Texas has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law provides numerous accommodations for disabled voters. Texas law guarantees

that they can request a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that they are entitled to request under federal or state law. Tex. Elec. Code § 1.022.

Moreover, Texas law also ensures accommodations will be made for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *Id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

Plaintiffs do not allege any problems with these accommodation, but even if they do not match Plaintiffs' preferences perfectly, they still offer disabled voters meaningful opportunities to vote. That is enough under federal law. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that a reasonable accommodation must give qualified individuals "meaningful access"); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) (stating that qualified individuals have a right to "meaningful access").

### B.    Plaintiffs' First Amendment Claims Fail as a Matter of Law

The Court should dismiss Counts VII and VIII because they challenge a provision not subject to First Amendment scrutiny. Plaintiffs challenge Section 7.04 insofar as it prohibits "[a] public official or election official," "while acting in an official capacity," from "solicit[ing] the submission of an application to vote by mail from a person who did not request an application." SB1 § 7.04 (codifying Tex. Elec. Code § 276.016(a)(1)). Plaintiffs concede that the provision is "explicitly limited to public officials or election officials." ECF 1 ¶ 228.

To the extent Section 7.04 regulates speech at all, it regulates only "government speech." That raises no constitutional issues. "The Free Speech Clause restricts government regulation of private

speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). The distinction "reflects the fact that it is the democratic electoral process that first and foremost provides a check on government speech." *Walker v. Tex. Div., Sons of Confederate Veterans*, 576 U.S. 200, 207 (2015).

Because the State can regulate its own speech, it can also regulate the speech of its officials when they speak in their official capacities. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The First Amendment does not "insulate non-elected officials and employees, who may well be obliged to follow the dictates of [state law] as government speech." *City of El Cenizo v. Texas*, 890 F.3d 164, 184 (5th Cir. 2018); *see also Nixon v. City of Houston*, 511 F.3d 494, 498–99 (5th Cir. 2007) (allowing City of Houston to regulate police officer's speech made in his official capacity).

### C.      Plaintiffs Lack a Private Cause of Action for Their VRA Claims

Plaintiffs have not identified any private cause of action allowing them to sue under the VRA. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

To be sure, federal courts have not always followed that strict approach. There was a time when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting

*J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). That time has passed. Since jettisoning the "*ancien regime*," *id.* at 1855, the Supreme Court has "not returned to it," *Sandoval*, 532 U.S. at 287; *see also Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (rejecting reliance "on pre-*Sandoval* reasoning").

1. **Section 208 Does Not Create a Private Cause of Action for These Plaintiffs**

In Count V, Plaintiffs rely on Section 208 of the Voting Rights Act, *see* ECF 1 ¶ 214, but that statute does not create a private cause of action. Plaintiffs do not have an express cause of action, and they do not contend otherwise. Plaintiffs presumably rely on an implied cause of action, but that does not work either.

First, Section 208 does not confer any private rights on Plaintiffs. Assuming *arguendo* that the statute creates any rights at all, it does so for certain "voter[s] who require[] assistance." 52 U.S.C. § 10508. The statute does not create any rights in non-voting entities like Plaintiffs. As explained above, the Court should not expand "the scope of [an] implied right" from one type of plaintiff to another. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

Second, Section 208 does not create a private remedy. Where such a remedy is absent, federal courts must not imply one: "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

Section 208 is enforced through other mechanisms. For example, the VRA requires "[t]he chief election officer of each State" to "provide public notice . . . of the availability of . . . assistance under section [208]," 52 U.S.C. § 20104(c), and failure to do so is remediable through a public or private cause of action. The statute expressly authorizes "the United States Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104 to "bring an action for declaratory or injunctive relief." *Id.* § 20105(a). Congress limited such causes of action by requiring pre-suit notice and forbidding fee-shifting. *See id.* § 20105(b)–(c). The congressional scheme ensures

that voters are aware of their options under Section 208, which enables them to assert any alleged rights when voting and rely on such alleged rights as defenses to any actions brought against them. The existence of this enforcement scheme "suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Inferring a private remedy would be especially inappropriate in light of the detailed enforcement provisions that Congress provided elsewhere in the VRA, none of which authorize this suit. *See, e.g.*, 52 U.S.C. §§ 10308(d), 10504, 20105(a). Considering "the statute Congress has passed," there is no evidence of legislative intent to create a private right of action to enforce Section 208. *Sandoval*, 532 U.S. at 286. Accordingly, the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Finally, even if Section 208 created a private cause of action for these Plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. Section 208 focuses on the operation of a polling place, a function performed by local officials, not state officials. *See* 52 U.S.C. § 10508. Thus, any private cause of action should be limited to local defendants, not state defendants. Courts inferring a cause of action against one type of defendant do not necessarily extend that cause of action to other types of defendants. In *Jett v. Dallas Independent School District*, a pre-*Sandoval* case that acknowledged an implied cause of action against private defendants, the Supreme Court refused to apply that cause of action "in the context of . . . 'state action.'" 491 U.S. 701, 731 (1989). Similarly, in *Ysleta Del Sur Pueblo v. Laney*, the Fifth Circuit declined to apply an implied cause of action against state officials when "[t]he statute could easily be determined to provide . . . an implied private cause of action against any party other than a state." 199 F.3d 281, 287 (5th Cir. 2000) (criticizing the plaintiff's "fatal logical leap"). Here, there is no indication, much less a "clear statement," that Congress created a private cause of action against the State or its officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

The only case State Defendants have found expressly recognizing a private cause of action to enforce Section 208 is not persuasive. The Western District of Arkansas recently concluded that Section 3 of the Voting Rights Act "explicitly creates a private right of action" to enforce Section 208. *Arkansas United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021) (citing 52 U.S.C. § 10302). But Section 3 does not create a cause of action at all. It merely establishes procedural options applicable "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(c); *cf. id.* § 10308(d) (creating a cause of action for the Attorney General but not for violations of Section 208).[6]

Even if Section 3 did create a cause of action, it would not apply here. Count V does not allege a violation "of the fourteenth or fifteenth amendment." *Id.* It alleges a violation of Section 208 of the Voting Rights Act, which goes well beyond constitutional requirements. *See* ECF 1 ¶¶ 213–16. As this Court has previously held, "§ 3(c) requires . . . violations of the Fourteenth or Fifteenth Amendments." *Perez v. Abbott*, 390 F. Supp. 3d 803, 813 (W.D. Tex. 2019) (three-judge district court) (Rodriguez, J.); *cf. Thomas v. Reeves*, 961 F.3d 800, 828 n.1 (5th Cir. 2020) (Oldham, J., concurring) (explaining that plaintiffs bringing a VRA suit cannot recover fees under a VRA fees provision that "applies only in an 'action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment'" because they "forswore any relief under the Constitution").

### 2.    Section 2 Also Does Not Create a Private Cause of Action

Under *Sandoval*, Plaintiffs do not have an implied cause of action for Count IV either. Whether "the Voting Rights Act furnishes an implied cause of action under § 2" is "an open question," *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring), but it should be

---

[6] Some cases have ruled on a Section 208 claim without considering whether the plaintiffs had a private cause of action. *See, e.g., OCA-Greater Hous.*, 867 F.3d at 607. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

answered in the negative. Even if an implied cause of action exists, however, it does not extend to non-voters, like Plaintiffs here.

First, Section 2 contains no indication that Congress intended to create a private right for non-voters. The statute's text is focused on the governmental officials it regulates: "No voting qualification or prerequisite to voting or standard, practice, or procedure s*hall be imposed or applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a) (emphasis added). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). Section 2 "is framed in terms of the obligations imposed on the regulated party" (government officials) while voters are "referenced only as an object of that obligation." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam). Non-voters like the Entity Plaintiffs are not mentioned at all. Section 2 therefore does not confer rights on Plaintiffs "in clear and unambiguous terms." *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009)(quotation omitted).

Second, Section 2 does not create private remedies for non-voters. Instead, Congress authorized civil and criminal enforcement actions by the federal government. *See* 52 U.S.C. § 10308(d). "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Even pre-*Sandoval* precedent does not help Plaintiffs. In *Allen v. State Bd. of Elections*, the Supreme Court held that Section 5 of the Voting Rights Act created a private cause of action, but that decision did not analyze Section 2 or non-voters. *See* 393 U.S. 544, 557 (1969). The Court relied on the fact that Section 5 was "passed to protect a class of citizens," that is, voters. *Id.* Of course, *Sandoval*

abandoned that loose, legislative-history-based approach. *See Sandoval*, 532 U.S. at 287. Indeed, the Supreme Court itself recognized as much when it listed *Allen* as an example of the now-abandoned "*ancien regime.*" *Abbasi*, 137 S. Ct. at 1855. But even under *Allen*'s approach, there is no reason to think Congress "passed [Section 2] to protect" non-voters.

### D.    Count X Is Redundant

The Court should dismiss, or in the alternative strike, Count X as redundant of Count V. *See* Fed. R. Civ. P. 12(b)(6), (f). In Count X, Plaintiffs assert that SB1 violates the Supremacy Clause because it violates Section 208 of the VRA. *See* No. 5:21-cv-844, ECF 1 ¶¶ 247–49. In Count V, Plaintiffs separately assert that SB1 violates Section 208. *See id.* ¶¶ 213–16. Count X adds nothing. "It is . . . apparent that the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (cleaned up). When a claim is "duplicative," it "must be dismissed." *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 83 (D.D.C. 2012) (Lamberth, J.); *see also Garcia v. City of San Antonio*, No. SA-06-CA-315-FB, 2006 WL 8434186, at *5 (W.D. Tex. Oct. 17, 2006) (dismissing claims as "legally redundant"). In the alternative, the Court should strike Count X as "redundant" under Rule 12(f) because it "offers nothing new" in light of Count V. *Wilkerson v. Butler*, 229 F.R.D. 166, 171 (E.D. Cal. 2005); *see also Munie v. Stag Brewery, Div. of G. Heileman Brewing Co.*, 131 F.R.D. 559, 560 (S.D. Ill. 1989).

### CONCLUSION

Defendants respectfully request that the Court dismiss or, in the alternative, strike the claims against them.

Date: October 24, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General


OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
**Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 24, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN