# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> JOSE A. ESPARZA, *et al,.* <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al.,* <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *et al.,* <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-0920-XR |

# MOTION TO DISMISS THE COMPLAINT OF THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL.

# TABLE OF CONTENTS

Table of Contents ...................................................................................................................ii

Table of Authorities..............................................................**Error! Bookmark not defined.**

Introduction..........................................................................................................................1

Argument ..............................................................................................................................2

    I.   Plaintiffs Cannot Satisfy *Ex parte Young*.............................................................2

        A.  Plaintiffs Have Not Alleged that the Secretary of State Enforces SB1 ........................3

        B.  Plaintiffs Have Not Alleged that the Attorney General Enforces SB1 ........................6

        C.  Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity .................8

    II.  Plaintiffs Lack Standing..........................................................................................8

        A.  Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis
            .................................................................................................................8

        B.  Plaintiffs Have Not Plausibly Alleged Traceability or Redressability ..........................9

        C.  No Plaintiff Has Associational Standing.........................................................10

        D.  None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury .............................13

        E.  The Entity Plaintiffs Violate the Bar on Third-Party Standing.....................................16

    III. Plaintiffs' Claims Fail as a Matter of Law ...............................................................16

        A.  There is No Private Right of Action under Section 208 of the Voting Rights
            Act.........................................................................................................17

        B.  There is No Private Right of Action under Section 2 of the Voting Rights Act
            .................................................................................................................20

Conclusion .........................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abbott,*
  956 F.3d at 709 .................................................................................................................... 7

*Ala. State Conference of the NAACP v. Alabama,*
  949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting) .................................................... 8

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ........................................................................................ 17, 18, 20, 21

*Allen v. State Bd. of Elections* .............................................................................................. 21

*Arkansas United v. Thurston,*
  517 F. Supp. 3d 777 (W.D. Ark. 2021) ........................................................................... 19

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.,*
  19 F.3d 241 (5th Cir. 1994) ............................................................................................. 11

*Ass'n of Cmty. Organizations for Reform Now v. Fowler,*
  178 F.3d 350 (5th Cir. 1999) ........................................................................................... 14

*Barker v. Halliburton Co.,*
  645 F.3d 297 (5th Cir. 2011) ........................................................................................... 16

*Becker v. FEC,*
  230 F.3d 381 (1st Cir. 2000) ............................................................................................ 16

*Berg v. Obama,*
  586 F.3d 234 (3d Cir. 2009) ............................................................................................ 16

*Brnovich v. Democratic National Committee,*
  141 S. Ct. 2321 (2021) .................................................................................................. 2, 20

*California v. Sierra Club,*
  451 U.S. 287 (1981) ......................................................................................................... 18

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ................................................................................... *passim*

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ......................................................................................................... 13

*Conservation Force v. Delta Air Lines, Inc.*,
190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per
curiam) ......................................................................................................................20

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) .......................................................................................16

*Cornerstone Christian Sch. v. Univ. Interscholastic League*,
563 F.3d 127 (5th Cir. 2009)..........................................................................................12

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019)................................................................................ 9, 10, 12

*Ctr. for Law & Educ. v. Dep't of Educ.*,
396 F.3d 1152 (D.C. Cir. 2005) .....................................................................................14

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011)..........................................................................................16

*Davis v. United States*,
597 F.3d 646 (5th Cir. 2009)............................................................................................2

*Def. Distributed v. U.S. Dep't of State*,
No. 1:15-CV-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018).........................15

*Delancey v. City of Austin*,
570 F.3d 590, 593 (5th Cir. 2009) ..................................................................................20

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008)..........................................................................................11

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2017) (Souter, J.)...........................................................................11

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*,
469 F. App'x 364 (5th Cir. 2012) (per curiam) ..............................................................12

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
11 F.4th 68 (2d Cir. 2021)..............................................................................................12

*Fair Elections Ohio v. Husted*,
770 F.3d 456 (6th Cir. 2014).....................................................................................14, 15

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990) .........................................................................................................8

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
17 F. Supp. 3d 599 (S.D. Tex. 2014) (Costa, J.)...........................................................14

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) ................................................................................................17

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) (per curiam) .........................................................9, 13

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ......................................................................................14, 16

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
   487 F. App'x 189 (5th Cir. 2012) ........................................................................12

*Hartman v. Moore*,
   547 U.S. 250 (2006) ..............................................................................................7

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................................14

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ......................................................................................10, 11

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ............................................................................................17

*Jacobson v. Fla. Sec'y of State*,
   957 F.3d 1193 (11th Cir. 2020) ..........................................................................16

*Jett v. Dallas Independent School District*,
   491 U.S. 701 (1989) ............................................................................................19

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ............................................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................16

*Logan v. U.S. Bank Nat'l Ass'n*,
   722 F.3d 1163 (9th Cir. 2013) ............................................................................20

*Louisiana ACORN Fair Hous. v. LeBlanc*,
   211 F.3d 298 (5th Cir. 2000) ..............................................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................9, 13

*Mass. Mut. Life Ins. v. Russell*,
   473 U.S. 134 (1985) ............................................................................................18

v

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ........................................................................................2, 4

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014) ................................................................................................3

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ..........................................................................9, 11, 13, 15

*Nat'l Taxpayers Union v. United States*,
   68 F.3d 1428 (D.C. Cir. 1995) ...........................................................................................15

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423, 1429 (D.C. Cir. 1996) ......................................................................14, 15

*Ne. Ohio Coal. for Homeless v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ..............................................................................................11

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (2017) .........................................................................................................8, 19

*Perez v. Abbott*,
   390 F. Supp. 3d 803 (W.D. Tex. 2019) (Rodriguez, J.) ..............................................20

*Physician Hosps. of Am. v. Sebelius*,
   691 F.3d 649 (5th Cir. 2012) ................................................................................................2

*Prison Justice League v. Bailey*,
   697 F. App'x 362 (5th Cir. 2017) (per curiam) .............................................................13

*Raj v. LSU*,
   714 F.3d 322 (5th Cir. 2013) ................................................................................................8

*Ray v. Texas*,
   No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ...............................12

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016) ................................................................................................................9

*State v. Hollins*,
   620 S.W.3d 400 (Tex. 2020) (per curiam) (Texas Supreme Court held in favor of
   the Attorney General, directing district court to enjoin the Harris County Clerk
   from sending unsolicited mail-in voting applications) ................................................8

*Stokes v. Sw. Airlines*,
   887 F.3d 199 (5th Cir. 2018) ..............................................................................................17

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................................10, 11

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ................................................................................... 3

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ............................................................................. 2, 3, 8

*Tex. Democratic Party v. Hughs,*
    ---F. App'x ---, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam) .............. 2, 3, 4, 6

*Texas Indigenous Council v. Simpkins,*
    No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.) .............. 11

*Thomas v. Reeves,*
    961 F.3d 800 (5th Cir. 2020) (Oldham, J., concurring) ........................................... 20

*United States v. Armstrong,*
    517 U.S. 456 (1996) ............................................................................................. 7

*Webster v. Fall,*
    266 U.S. 507 (1925) ........................................................................................... 19

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ............................................................................................. 19

*Ysleta Del Sur Pueblo v. Laney,*
    199 F. 3d 281 (5th Cir. 2000) ............................................................................. 19

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) .................................................................................. 17, 21

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018) ............................................................................... 13

## Constitutional Provisions

U.S. Const. art. III, § 2 ......................................................................................... 10

## Legislative Materials

An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess.
    (2021) ..................................................................................................... *passim*

## Statutes and Rules

42 U.S.C. § 1983 .............................................................................................. 8, 16

52 U.S.C.

§ 10301(a) ..................................................................................................... 20
§ 10302 ........................................................................................................... 19
§ 10302(c) ....................................................................................................... 19
§ 10308(d) ............................................................................................ 18, 19, 21
§ 10504 ........................................................................................................... 18
§ 10508 ............................................................................................... 12, 17, 18
§ 20104(c) ....................................................................................................... 18
§ 20105(a) ....................................................................................................... 18
§ 20105(b)–(c) ................................................................................................. 18

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2

Tex. Elec. Code

§ 15.028 ............................................................................................................ 6
§ 31.003 ............................................................................................................ 3
§ 31.005 ............................................................................................................ 3
§ 31.006 ............................................................................................................ 7
§ 31.006(b) ....................................................................................................... 7
§ 31.006(b)(2) .................................................................................................. 7
§§ 32.075 .......................................................................................................... 5
§ 33.001(a) ....................................................................................................... 3
§ 33.008 ............................................................................................................ 4
§ 33.008(1) ....................................................................................................... 4
§ 33.008(2) ....................................................................................................... 4
§ 33.0015 .......................................................................................................... 5
§§ 43.002–43.004 ............................................................................................. 5
§ 64.034 ............................................................................................................ 5
§64.0322 ........................................................................................................... 5
§ 64.0322(a) ..................................................................................................... 5
§ 64.0322(b) ..................................................................................................... 5
§§ 83.001–83.0012 ........................................................................................... 5
§ 86.001(c) ....................................................................................................... 6
§ 86.002(g)–(i) ................................................................................................. 6
§ 87.041 ............................................................................................................ 6
§ 87.0271 .......................................................................................................... 6
§ 87.0411 .......................................................................................................... 6

## INTRODUCTION

The League of United Latin American Citizens and their co-plaintiffs filed a complaint that contains multiple deficiencies. It is long on factual exposition and rhetoric. But it is short on attention to several important legal details. First, rather than address sovereign immunity claim by claim and provision by provision, as Fifth Circuit precedent requires, the Plaintiffs seem to take it for granted that the Deputy Secretary of State and the Attorney General (here, the "State Defendants") enforce all of Senate Bill 1 ("SB1"). Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). In that regard, they appear to have sued the State Defendants just because they are the State's top election and enforcement officials. Plaintiffs fail to identify specific provisions of SB1 that these defendants enforce, and how that enforcement causes their alleged injuries.

The same is true with respect to standing. Fifth Circuit precedent instructs plaintiffs to plead standing claim by claim, and provision by provision. But the Plaintiffs do not attempt to comply with this pleading requirement. Moreover, Plaintiffs disregard well-established Fifth Circuit standards on associational and organizational standing. As to associational standing, Plaintiffs provide only cursory information on their members and membership structure, making it impossible to tell if their members have actually been injured, and (even if they have) if Plaintiffs have standing based on those injuries. And as to organizational standing, Plaintiffs fail to identify concrete interests that, if injured, would support Article III standing. Instead, they point to general social interests like increasing voter turnout or educating the public on SB1. But Fifth Circuit law clearly rejects standing based on such interests.

The Court should not reward the Plaintiffs' tactics. The State Defendants respectfully request that the Court dismiss the claims against them, albeit leaving the Plaintiffs free to file a more focused complaint if appropriate. *See* Fed. R. Civ. P. 12(b)(1).

Plaintiffs' claims fail on the merits too. With respect to Counts I and IV, Plaintiffs assume that Sections 2 and 208 of the Voting Rights Act ("VRA") provide a private cause of action. But they do

not. When the issue is squarely presented, the evidence demonstrates that a private right of action is inconsistent with the statutes Congress has passed. Indeed, this issue was noted in the Supreme Court's recent decision in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2350 (2021). These claims should be dismissed. See Fed. R. Civ. P. 12(b)(6).[1]

**ARGUMENT**

## I.    Plaintiffs Cannot Satisfy *Ex parte Young*

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, ---F. App'x ---, 2021 WL 2310010, at *2 (5th Cir. June 4, 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). The plaintiffs here have failed to allege facts sufficient invoke the *Ex parte Young* exception as to the State Defendants.

---

[1] Of course, the State Defendants believe Plaintiffs' other claims are meritless as well. But for the sake of judicial efficiency, the State Defendants will address those claims and other issues in subsequent motions, if necessary.

### A.      Plaintiffs Have Not Alleged that the Secretary of State Enforces SB1

Sovereign immunity precludes Plaintiffs' claims against the Deputy Secretary of State because he does not have a sufficient connection with enforcement of SB1's challenged provisions.[2] Plaintiffs are required to identify which SB1 provisions they challenge, and explain how the Secretary enforces those provisions. But they do no such thing.

As a preliminary matter, Plaintiffs appear to cite the Secretary's status as the State's top election official as a reason why he is a proper defendant. They reference the Secretary's general authority under Texas Election Code §§ 33.001(a) and 31.003, alleging: "The Secretary is the State's chief elections officer and must 'obtain and maintain uniformity in the application, operation, and interpretation' of the State's election laws." ECF 1 ¶ 26. They further note the Secretary's authority under Tex. Elec. Code § 31.005: "The Secretary has authority to 'take appropriate action to protect the voting rights' of Texans, including by ordering officials to correct offending conduct that 'impedes the free exercise of a citizen's voting rights.'" *Id.*

These allegations do not satisfy *Ex parte Young* because they do not "identify the Secretary's specific duties within the particular statutory provision" being challenged. *Hughs*, 2021 WL 2310010, at *2 (citing *Tex. Democratic Party*, 978 F.3d at 179–80). "[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01(5th Cir. 2020) (citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). But a *general* duty is all that the Plaintiffs allege. These provisions contain no specific enforcement obligation, let alone a specific obligation related to SB1. *See Tex. Democratic Party*, 2021 WL 2310010, at *2 ("[I]n the particular context of Texas elections, . . . the Secretary's role varies, so" Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue) (citing *Tex. Democratic*

---

[2] At the time of this Motion's filing, the Deputy Secretary is performing the Secretary's duties due to a vacancy.

*Party*, 978 F.3d at 179–80). Citing those general statutes does not suffice.

Plaintiffs' other allegations fare no better. They challenge numerous provisions of SB1, but only include allegations regarding the Secretary's duties in connection with two—Sections 4.04 and 6.03. ECF 1 ¶ 26. Indeed, Plaintiffs make no mention at all of the Secretary's alleged role in enforcing SB1 except in their paragraph introducing that party. Thus, as an initial matter, Plaintiffs' claims against the Deputy Secretary regarding every other provision of SB1 should be dismissed. Without a "provision-by-provision analysis," Plaintiffs cannot carry their burden. *Tex. Democratic Party*, 2021 WL 2310010, at *2.

Nor do Plaintiffs' remaining claims establish the requisite connection to enforcement because they do not explain how these new duties result in the harms they allege. The Deputy Secretary is not a proper defendant unless the Plaintiffs can show that directing him not to enforce the challenged provision would afford them relief from the alleged harm. *See Mi Familia Vota*, 977 F.3d at 465 (explaining that the Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek").

The Secretary's role under SB1 § 4.04 is not related to Plaintiffs' alleged injuries. That provision simply requires the Secretary to establish a training program for poll watchers, Texas Election Code § 33.008, requires that the training be publicly available, *id.* § 33.008(1), and requires that the system provide people who complete the training with a certificate, *id.* § 33.008(2). Under this section, the Secretary does nothing to affirmatively enforce poll-watching requirements. Rather, he establishes a training program for poll watchers, and then *local election officers* enforce the pertinent requirements. *See Tex. Democratic Party*, 2021 WL 2310010, at *3 (Secretary of State did not enforce voter registration law because the "county registrars are the ones who review voter registration applications").

Nor is the Secretary's role under SB1 § 6.03 related to Plaintiffs' alleged injuries. That provision requires a person who assists a voter to submit a form certifying the assistor's name, relationship to

the voter, and whether he or she received compensation from a political entity for assisting the voter. Tex. Elec. Code § 64.0322(a). The Secretary is responsible only for designing the form. *Id.* § 64.0322(b). SB1 does not delegate authority to the Secretary to enforce compliance should an individual fail to provide the information or oath required by these provisions. *See id.* §§ 64.0322, 64.034. Indeed, the forms are not even submitted to the Secretary. They are submitted at the polling place to the election officers, who are responsible for ensuring assistors comply with the rules.

Even if Plaintiffs had tried to connect the other SB1 provisions they challenge to the Deputy Secretary, they would have failed. They assert Counts I and IV against the Secretary. ECF 1 at 49, 55. In Count I, the plaintiffs challenge S.B. 1 §§ 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.02, 4.06, 4.09, 4.12, 5.01–5.03, 5.07, 5.08, 6.03, 6.04, and 7.04. *Id.* ¶ 246. But the plaintiffs fail to allege the Secretary's connection to enforcement of these provisions. The Secretary in fact does not enforce them.

For example, SB1 §§ 3.09, 3.10 and 3.12 amend Texas Elections Code §§ 85.005, 85.006(b) and (e), and 85.061(a), respectively, and the early voting clerk enforces those provisions. *See* Tex. Elec. Code §§ 83.001–83.0012 (identifying whom is the early voting clerk and specifying that "[t]he early voting clerk shall conduct the early voting in each election") and 85.005, 85.006(b), 85.006(e), 85.0061(a) (specifying how the early voting clerk shall conduct early voting in certain elections). SB1 §§ 3.04 and 3.13 include amendments relating to the location of polling places, but the Secretary does not designate polling locations. Tex. Elec. Code §§ 43.002–43.004 (assigning responsibility for designating polling locations to local officials).

The Secretary also does not enforce the challenged provisions relating to watchers, that is, SB1 §§ 4.01, 4.02, 4.06, 4.09, and 4.12. Section 4.02 creates no legal requirements. Tex. Elec. Code § 33.0015. The others specify no enforcement role for the Secretary. *See id.* §§ 32.075 (amended by § 4.01); 33.051 (amended by § 4.06); 33.061 (amended by § 4.09); 86.006 (amended by § 4.12). As to §§ 5.01–5.03, and 5.07, the early voting clerk, not the Secretary, enforces the ballot-application

requirements. Tex. Elec. Code § 86.001(c). SB1 § 5.08 requires that the carrier envelope include spaces for voters to include information, *id.* § 86.002(g)–(i), but the signature verification committee and early voting ballot board are responsible for verifying that individuals provide the required information. *See id.* §§ 87.0271, 87.041, 87.0411.

The final provision of SB1 challenged in Count I, which is also the only provision challenged in Count IV, is § 7.04. *Id.* ¶ 169, 246, 267. SB1 § 7.04 adds §§ 276.015–.019 to the Election Code. These provisions assign no enforcement role to the Secretary, and the plaintiffs have not alleged that he enforces them.

### B.   Plaintiffs Have Not Alleged that the Attorney General Enforces SB1

Sovereign immunity also bars Plaintiffs' claims against the Attorney General. Again, allegations that the Attorney General has a general duty to enforce state laws, ECF 1 ¶ 27, are not enough to satisfy *Ex parte Young*. *See Tex. Democratic Party*, 961 F.3d at 401–02. A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each challenged provision. *Tex. Democratic Party*, 2021 WL 2310010, at *2. Though they challenge numerous SB1 provisions, the plaintiffs only discuss the Attorney General in relation to two—Sections 2.04 and 2.08. ECF 1 ¶ 27. For this reason, Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant for challenges to any other provision.

Plaintiffs' allegations are also insufficient even for Sections 2.04 and 2.08. Plaintiffs observe that Section 2.04 "requires the Attorney General to be informed of all instances of unlawful voting or registration," and contend that it "empowers the Attorney General to use that information to prosecute such crimes. ECF 1 ¶ 27. But the Attorney General does not *enforce* § 2.04. Under that provision, he merely receives information. *See* SB1 § 2.04 (amending Tex. Elec. Code § 15.028). As explained above, enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but Section 2.04 does not empower the Attorney General to compel or constrain anyone.

6

Because "the requisite connection is absent," the *Ex parte Young* analysis ends there. *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 998).

Nor does the Attorney General enforce § 2.08. Under that provision, just like under § 2.04, the Attorney General receives information indicating that a criminal violation of the State's election laws may have occurred. In fact, the provision's primary effect is to establish that such information is not public information until after the investigation is completed. Tex. Elec. Code § 31.006(b). Nothing in Texas Election Code § 31.006 compels the Attorney General to take an enforcement action. Indeed, it expressly contemplates that he has discretion to determine that "the information referred does not warrant an investigation." *Id.* § 31.006(b)(2).

Because Plaintiffs have not alleged, on a provision-by-provision basis, "that the Attorney General *has* the authority to enforce" the particular provisions at issue, *City of Austin*, 943 F.3d at 1001, there is no need to proceed to the next step in the analysis. Their claims fail out of the gate.

But if the Court reaches the second step, it must consider whether Plaintiffs have plausibly alleged "that [the Attorney General] is likely to" enforce the particular provisions at issue in the way Plaintiffs claim. *Id.* at 1002. On this score, Plaintiffs allege only that the Attorney General sued a local official for violating an election law other than SB1 and that he "stated that prosecution of election-related offenses is one of his priorities." ECF 1 ¶¶ 27–28. No doubt, the Attorney General is committed to exercising his constitutional and statutory obligations, including enforcing election laws where he has that power and where appropriate. Still, "that he has chosen to" enforce "*different* statutes under *different* circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that violate federal law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006). Of course, the

Attorney General's past success in election cases underscores the lawfulness of his enforcement actions, and it undermines Plaintiffs' unfounded assertion that the Attorney General will start enforcing SB1 in an unlawful manner. *See* ECF 1 ¶ 26; *State v. Hollins*, 620 S.W.3d 400, 403 (Tex. 2020) (per curiam) (Texas Supreme Court held in favor of the Attorney General, directing district court to enjoin the Harris County Clerk from sending unsolicited mail-in voting applications).

### C.      Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity

Sovereign immunity bars the plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the reasons above, and plaintiffs have not plead waiver or abrogation by Congress that would permit their claims to proceed. And if they had tried, they would have been wrong.

For Counts II and III, "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). As to Counts I and IV, although *OCA-Greater Houston v. Texas* holds, without analysis, that the Voting Rights Act abrogates sovereign immunity, 867 F.3d 604, 614 (2017), that case was wrongly decided. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nevertheless, to the extent this Court is bound by *OCA-Greater Houston*, that decision does not relieve the plaintiffs of their burden to show Article III standing. As explained below, because the State Defendants do not enforce the challenged provisions, plaintiffs cannot show traceability or redressability.

## II.      Plaintiffs Lack Standing

### A.    Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, Plaintiffs must

"clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities like the Plaintiffs here have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements" *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue. *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed, "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

### B.      Plaintiffs Have Not Plausibly Alleged Traceability or Redressability

As an initial matter, Plaintiffs lack standing because their alleged harms are not traceable to or redressable by the State Defendants. By and large, Plaintiffs challenge SB1 as an undifferentiated whole, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have a broad power to enforce

all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2. Plaintiffs fail to address these requirements. Their claims against the State Defendants cannot proceed because they do not connect their alleged injuries to the Deputy Secretary or the Attorney General's actions, or explain how enjoining them will redress those injuries.

### C.  No Plaintiff Has Associational Standing

The complaint does not plausibly allege facts establishing facts establishing associational standing. As an initial matter, Voto Latino never asserts what the purpose of the organization is. Vaguely describing some of the organization's activities does not establish the organization's purpose under *Hunt*. *See* ECF 1 ¶ 21. The organization therefore failed to allege that "the interests it seeks to protect are germane to [its] purpose," as is required for associational standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

In addition, a plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. For this to occur, the plaintiff must establish two threshold facts. First, the plaintiff must establish that it has "members" within the meaning of the associational standing test from *Hunt*. 432 U.S. at 344 (requiring "indicia of membership"). Second, the plaintiff must identify specific members who have "suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Plaintiffs fail both tests.

Plaintiffs have failed to establish they have "members" within the meaning of the *Hunt* test. Voto Latino does not even describe itself as having members. Indeed, the most recent financial disclosure form on its website told the IRS that it did not "have members," much less "members . . . who had the power to elect or appoint one or more members of the governing body." *See* Ex. B

(answering "No" to questions 6 and 7a in Part VI.A of IRS Form 990). Voto Latino instead claims to act on behalf of various Texas communities, *id.*, but the beneficiaries of a plaintiff's services do not qualify as members for purposes of associational standing. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[T]he Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization."). Not having members is fatal to associational standing.

The remaining Plaintiffs claim to have members in the colloquial sense, but they fail to allege that each of those individuals "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.). Plaintiffs asserted no facts to this end.

Second, even assuming Plaintiffs have members, they fail to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. This requires, among other things, allegations of a "specific member" and specific facts establishing how that member will suffer an injury in fact. *City of Kyle*, 626 F.3d at 237. This defect is independently sufficient to warrant dismissal of Plaintiffs' claims. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member

who was affected by the disability policy).[3]

Finally, even if Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claim: Count IV under Section 208 of the VRA. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, Plaintiffs' disability claim requires the participation of individual members, both because they have individualized elements and because of the relief requested. First, a plaintiff must identify which aspect of Section 208 has been violated. That statute applies to several different categories of impairments: "blindness, disability, or inability to read or write." 52 U.S.C. § 10508. And as with all impairments, these vary in degree and effect. For these reasons, a voter's entitlement to assistance under § 208 is based on a specific voter's disability, and the assistance necessary to accommodate that voter. *See, e.g.*, *Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (considering the specific effect of Texas early voting law on group of elderly plaintiffs). This requires a "case-by-case analysis" of plaintiff-specific facts and circumstances. *Duncan v. Univ. of Tex.*

---

[3] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if Plaintiffs did not have to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 76 (2d Cir. 2021). The content of those factual allegations would vary depending on the claim raised, but they should at minimum describe the activity in which the member wishes to perform, the member's eligibility to participate in the activity if relevant, and the specific burden the challenged provision imposes on the member.

*Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 369 (5th Cir. 2012) (per curiam). Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of a disability claim.

### D.   None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury

Plaintiffs do not have organizational standing because they have not plausibly alleged that they, as organizations, will suffer injuries in-fact. Plaintiffs do not claim to be "the object of the government action or inaction [they] challenge[]," so standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (quotation omitted). Instead, all four Plaintiffs claim that SB1's effects on third parties force them to divert resources from other programs and activities. ECF 1 ¶¶ 20, 22, 24–25. As an initial matter, Plaintiffs' allegations are insufficient because they treat SB1 as an undifferentiated whole rather than address "each provision of law at issue." *In re Gee*, 941 F.3d at 161–62. This Court must "decide [standing] on a provision-by-provision basis." *Id.* at 165.

In any event, although the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. First, an organization's decision to divert resources cannot itself be speculative. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). Rather, the organization must act in response to an impending injury. That is, a diversion of resources is cognizable only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest*

*v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

The alleged underlying injury must also be concrete. "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). Allegations of impaired "issue-advocacy" do not suffice. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 (D.C. Cir. 2005). Thus, "a showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999).

In this case, none of the Plaintiffs identify a cognizable injury they would suffer if they did not divert their resources. LULAC claims that it "must divert resources . . . to address the adverse impacts of SB1." ECF 1 ¶ 20. LULAC does not claim that these "adverse impacts" affect *its* activities. Instead, it casts its objection as a concern over the burden SB1 allegedly imposes on LULAC's members. *Id.* The most it implies is a relationship between SB1 and voter turnout among Latino communities, which, it contends, is "critical" to its mission. But the "abstract social interest in maximizing voter turnout . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). And an interest in increasing turnout for particular groups is akin to a "generalized partisan preference[ ]," which the Supreme Court held insufficient to establish Article III standing. *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018). Regardless, "a stated interest in an issue is not enough unless there is a concrete showing of how the allegedly discriminatory [] practice is going to impair the organization's activities." *Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 613 (S.D. Tex. 2014) (Costa, J.). That is missing here.

The harms alleged by Voto Latino fall flat for similar reasons. Again, Voto Latino never specifies its mission, making it impossible to tell whether that mission has been "perceptibly impaired." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). It instead characterizes the diversion of

resources as being directed towards "combat[ing] SB1's effects on its core constituency" rather than SB1's impact on its own activities. ECF 1 ¶ 22. Thus, Voto Latino claims that SB 1 frustrates its "objectives" regarding voter turnout, but does not allege that SB 1 makes its "*activities* more difficult." *Nat'l Treasury Emps. Union*, 101 F.3d at 1429–30. Plaintiffs' complaint might be construed as noting that Voto Latino's purpose is to maximize Hispanic voter turnout.  ECF 1 ¶ 21 ("Voto Latino considers eligible Latinx voters in Texas to be the core of its constituency."). But again, maximizing voter turnout is not a concrete interest. *Fair Elections Ohio*, 770 F.3d at 461.

TARA and Texas AFT, meanwhile, argue that the diversion of resources is necessary to educate members on the new law, but educating voters, on its own, is not an injury in-fact. *See Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 134 (D.C. Cir. 1995) (holding that a "self-serving observation that [plaintiff] has expended resources to educate its members" about the challenged law does not present an injury in fact). In addition, to establish standing, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities.'" *Def. Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238). And it must "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Id.* (quoting *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)). TARA and Texas AFT allege none of this.

Finally, both TARA and Texas AFT contend that SB1 "threaten[s] the electoral prospects" of their "endorsed candidates," ECF 1 ¶ 23, impairing their ability "to help [their] membership select leaders" who support their memberships' interests. *Id.* ¶ 25. The argument fails, however, because not only have Plaintiffs not alleged that SB1 disproportionately affects the candidates TARA and Texas AFT prefer, but "[a]n organization's general interest in its preferred candidates winning as many elections as possible is still a 'generalized partisan preference[]' that federal courts are 'not responsible

for vindicating.'" *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1206 (11th Cir. 2020) (quoting *Gill*, 138 S. Ct. at 1933). Thus, even though TARA claims that SB1 frustrates its mission, ECF 1 ¶ 23, none of the consequences that Plaintiff attribute to SB1 constitute a legal harm. *See Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) (explaining that a plaintiff's "wish that . . . voters had chosen a different presidential candidate" is not "a legal harm"); *see also Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000). TARA also appears to assert an interest in general voter turnout. ECF 1 ¶ 24 (alleging that TARA "spends resources on voter registration, phone banking, and GOTV [get-out-the-vote] activities"). But as explained above, that interest does not support Article III standing.

### E.      The Entity Plaintiffs Violate the Bar on Third-Party Standing

Finally, the Entity Plaintiffs lack standing for another reason: the bar on third-party standing. Plaintiffs' Count 1 is based on Section 1983, but that statute provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. The same is true for Plaintiffs' other causes of action. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the Entity Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right to assistance with voting if you have a disability). Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

## III.    Plaintiffs' Claims Fail as a Matter of Law

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims that fail as a matter of law. Plaintiffs' claims under the VRA should be dismissed because there is no

private cause of action to enforce Section 2 (Count I) or Section 208 (Count IV).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

To be sure, federal courts have not always followed that strict approach. There was a time when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). That time has passed. Since jettisoning the "*ancien regime*," *id.* at 1855, the Supreme Court has "not returned to it." *Sandoval*, 532 U.S. at 287; *see also Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (rejecting reliance "on pre-*Sandoval* reasoning").

A.      **There is No Private Right of Action under Section 208 of the Voting Rights Act**

In Count IV, Plaintiffs rely on Section 208 of the Voting Rights Act, but that statute does not create a private cause of action. Plaintiffs do not have an express cause of action, nor do they contend otherwise. Plaintiffs presumably rely on an implied cause of action, but that does not work either.

First, Section 208 does not confer any private rights on Plaintiffs. Assuming *arguendo* that the statute creates any rights at all, it does so for certain "voter[s] who require[] assistance." 52 U.S.C. § 10508. The statute does not create any rights in non-voting entities like Plaintiffs. As explained above, the Court should not expand "the scope of [an] implied right" from one type of plaintiff to another. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

Second, Section 208 does not create a private remedy. Where such a remedy is absent, federal courts must not imply one: "The federal judiciary will not engraft a remedy on a statute, no matter

how salutary, that Congress did not intend to provide." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

Section 208 is enforced through other mechanisms. For example, the VRA requires "[t]he chief election officer of each State" to "provide public notice . . . of the availability of . . . assistance under section [208]," 52 U.S.C. § 20104(c), and failure to do so is remediable through a public or private cause of action. The statute expressly authorizes "the United States Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104 to "bring an action for declaratory or injunctive relief." *Id.* § 20105(a). Congress limited such causes of action by requiring pre-suit notice and forbidding fee-shifting. *See id.* § 20105(b)–(c). The congressional scheme ensures that voters are aware of their options under Section 208, which enables them to assert any alleged rights when voting and rely on such alleged rights as defenses to any actions brought against them. The existence of this enforcement scheme "suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Inferring a private remedy would be especially inappropriate in light of the detailed enforcement provisions that Congress provided elsewhere in the VRA, none of which authorize this suit. *See, e.g.*, 52 U.S.C. §§ 10308(d), 10504, 20105(a). Considering "the statute Congress has passed," there is no evidence of legislative intent to create a private right of action to enforce Section 208. *Sandoval*, 532 U.S. at 286. Accordingly, the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Finally, even if Section 208 created a private cause of action for these Plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. Section 208 focuses on the operation of a polling place, a function performed by local officials, not state officials. *See* 52 U.S.C. § 10508. Thus, any private cause of action should be limited to local defendants, not state defendants. Courts inferring a cause of action against one type of defendant do not

necessarily extent that cause of action to other types of defendants. In *Jett v. Dallas Independent School District*, a pre-*Sandoval* case that acknowledged an implied cause of action against private defendants, the Supreme Court refused to apply that cause of action "in the context of . . . 'state action.'" 491 U.S. 701, 731 (1989). Similarly, in *Ysleta Del Sur Pueblo v. Laney*, the Fifth Circuit declined to apply an implied cause of action against state officials when "[t]he statute could easily be determined to provide . . . an implied private cause of action against any party other than a state." 199 F. 3d 281, 287 (5th Cir. 2000) (criticizing the plaintiff's "fatal logical leap"). Here, there is no indication, much less a "clear statement," that Congress created a private cause of action against the State or its officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

The only case State Defendants have found expressly recognizing a private cause of action to enforce Section 208 is not persuasive. The Western District of Arkansas recently concluded that Section 3 of the Voting Rights Act "explicitly creates a private right of action" to enforce Section 208. *Arkansas United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021) (citing 52 U.S.C. § 10302). But Section 3 does not create a cause of action at all. It merely establishes procedural options applicable "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(c); *cf. id.* § 10308(d) (creating a cause of action for the Attorney General but not for violations of Section 208).[4]

Even if Section 3 did create a cause of action, it would not apply here. Count IV does not allege a violation "of the fourteenth or fifteenth amendment." *Id.* It alleges a violation of Section 208 of the Voting Rights Act, which goes well beyond constitutional requirements. *See* ECF 1 ¶¶ 213–16. As this Court has previously held, "§ 3(c) requires . . . violations of the Fourteenth or Fifteenth

---

[4] Some cases have ruled on a Section 208 claim without considering whether the plaintiffs had a private cause of action. *See, e.g.*, *OCA-Greater Hous.*, 867 F.3d at 607. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

Amendments." *Perez v. Abbott*, 390 F. Supp. 3d 803, 813 (W.D. Tex. 2019) (three-judge district court) (Rodriguez, J.); *cf. Thomas v. Reeves*, 961 F.3d 800, 828 n.1 (5th Cir. 2020) (Oldham, J., concurring) (explaining that plaintiffs bringing a VRA suit cannot recover fees under a VRA fees provision that "applies only in an 'action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment'" because they "forswore any relief under the Constitution").

### B.    There is No Private Right of Action under Section 2 of the Voting Rights Act

Under *Sandoval*, Plaintiffs do not have an implied cause of action for Count I either. Whether "the Voting Rights Act furnishes an implied cause of action under § 2" is "an open question," *Brnovich*, 141 S. Ct. at 2350 (2021) (Gorsuch, J., concurring), but it should be answered in the negative. Even if an implied cause of action exists, however, it does not extend to non-voters, like Plaintiffs here.

First, Section 2 contains no indication that Congress intended to create a private right for non-voters. The statute's text is focused on the governmental officials it regulates: "No voting qualification or prerequisite to voting or standard, practice, or procedure s*hall be imposed or applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a) (emphasis added). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). Section 2 "is framed in terms of the obligations imposed on the regulated party" (government officials) while voters are "referenced only as an object of that obligation." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam). Non-voters like the Entity Plaintiffs are not mentioned at all. Section 2 therefore does not confer rights on Plaintiffs "in clear and unambiguous terms." *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009) (quotation omitted).

Second, Section 2 does not create private remedies for non-voters. Instead, Congress authorized civil and criminal enforcement actions by the federal government. *See* 52 U.S.C. § 10308(d). "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Even pre-*Sandoval* precedent does not help Plaintiffs. In *Allen v. State Bd. of Elections*, the Supreme Court held that Section 5 of the Voting Rights Act created a private cause of action, but that decision did not analyze Section 2 or non-voters. *See* 393 U.S. 544, 557 (1969). The Court relied on the fact that Section 5 was "passed to protect a class of citizens," that is, voters. *Id.* Of course, *Sandoval* abandoned that loose, legislative-history-based approach. *See Sandoval*, 532 U.S. at 287. Indeed, the Supreme Court itself recognized as much when it listed *Allen* as an example of the now-abandoned "*ancien regime.*" *Abbasi*, 137 S. Ct. at 1855. But even under *Allen*'s approach, there is no reason to think Congress "passed [Section 2] to protect" non-voters.

## CONCLUSION

Defendants respectfully request that the Court dismiss the claims against them.

Date: October 25, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

BRENT WEBSTER
First Assistant Attorney General

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 25, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN