# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREGORY W. ABBOTT, *et al.*, | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| OCA-GREATER HOUSTON, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:21-cv-780-XR |
| | § | |
| JOSE A. ESPARZA, *et al,*. | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| HOUSTON JUSTICE, *et al.,* | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 5:21-cv-848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, *et al.*, | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| LULAC TEXAS, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:21-cv-0786-XR |
| | § | |
| JOSE ESPARZA, *et al.*, | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| MI FAMILIA VOTA, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 5:21-cv-0920-XR |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| *Defendants.* | § | |

## MOTION TO DISMISS THE COMPLAINT OF OCA-GREATER HOUSTON, ET AL.

TABLE OF CONTENTS

Table of Authorities..........................................................................................................iii

Introduction......................................................................................................................1

Argument ...........................................................................................................................1

    I.      Plaintiffs Cannot Satisfy *Ex parte Young* ....................................................1

          A.    Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy Secretary..................................................2

          B.    The Attorney General Is Also Immune.................................................5

          C.    Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity........................................................6

    II.     Plaintiffs Lack Standing ...................................................................................8

          A.    Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis............................................8

          B.    Plaintiffs Have Not Plausibly Alleged Traceability of Redressability............................................9

          C.    Plaintiffs Do Not Have Associational Standing.................................9

          D.    Plaintiffs Do Not Plausibly Allege a Cognizable Injury...................12

          E.    Plaintiffs Violate the Prohibition on Third-Party Standing .......................................................................16

    III.   Plaintiffs' Claims Fail as a Matter of Law ...................................................16

          A.    Plaintiffs Lack a Private Cause of Action for Counts 1 and 4 ......................................................16

               1.    The Materiality Provision Does Not Imply a Private Cause of Action for These Plaintiffs ................................17

               2.    Section 208 Does Not Create a Private Cause of Action for These Plaintiffs......................20

           B.    Plaintiffs Failed to State a Claim under the ADA or the Rehabilitation Act ......................................22

Conclusion ......................................................................................................................26

TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*In re Abbott,*
  956 F.3d 696 (5th Cir. 2020)............................................................................1

*ACORN v. Fowler,*
  178 F.3d 350 (5th Cir. 1999)........................................................12, 13, 14, 15

*Ala. State Conference of the NAACP v. Alabama,*
  949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting)........................................7

*Alexander v. Choate,*
  469 U.S. 287 (1985)........................................................................................26

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)..................................................................................*passim*

*Allen v. Cooper,*
  140 S. Ct. 994 (2020)........................................................................................7

*Alsbrook v. City of Maumelle,*
  184 F.3d 999 (8th Cir. 1999) (en banc) ...........................................................20

*Ark. United v. Thurston,*
  517 F. Supp. 3d 777 (W.D. Ark. 2021) ...........................................................21

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.,*
  19 F.3d 241 (5th Cir. 1994)...............................................................................9

*Barker v. Halliburton Co.,*
  645 F.3d 297 (5th Cir. 2011)...........................................................................16

*Block v. Tex. Bd. of Law Examiners,*
  952 F.3d 613 (5th Cir. 2020)............................................................................7

*Cadena v. El Paso Cnty.,*
  946 F.3d 717 (5th Cir. 2020).....................................................................23, 26

*California v. Sierra Club,*
  451 U.S. 287 (1981)........................................................................................20

*Cartagena v. Crew,*
  No. 1:96-cv-3399, 1996 WL 524394 (E.D.N.Y. Sept. 5, 1996)..........................17

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019)....................................................................*passim*

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..................................................................................15

*Conservation Force v. Delta Air Lines, Inc.,*
    190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd,* 682 F. App'x 310 (5th Cir. 2017) (per
    curiam) ...................................................................................................18

*Coon v. Ledbetter,*
    780 F.2d 1158 (5th Cir. 1986) ....................................................................16

*Cornerstone Christian Sch. v. UIL,*
    563 F.3d 127 (5th Cir. 2009) ......................................................................11

*Ctr. for Biological Diversity v. EPA,*
    937 F.3d 533 (5th Cir. 2019) ............................................................... 8, 9, 11

*Danos v. Jones,*
    652 F.3d 577 (5th Cir. 2011) ......................................................................16

*Davis v. United States,*
    597 F.3d 646 (5th Cir. 2009) ........................................................................2

*Def. Distributed v. U.S. Dep't of State,*
    No. 1:15-cv-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018) ......... 13, 14

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors,*
    522 F.3d 796 (7th Cir. 2008) ......................................................................10

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2017) (Souter, J.) .........................................................10

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.,*
    469 F. App'x 364 (5th Cir. 2012) (per curiam) ............................................11

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.,*
    11 F.4th 68 (2d Cir. 2021) ..........................................................................10

*Fair Elections Ohio v. Husted,*
    770 F.3d 456 (6th Cir. 2014) ................................................................ 12, 15

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ....................................................................................8

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.,*
    17 F. Supp. 3d 599 (S.D. Tex. 2014) (Costa, J.) ..........................................12

*Garrett v. Thaler,*
    560 F. App'x 375 (5th Cir. 2014) (per curiam) ............................................11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ................................................................................ 18, 20

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) (per curiam) ................................................ 8

*Gilmore v. Amityville Union Free Sch. Dist.*,
    305 F. Supp. 2d 271 (E.D.N.Y. 2004) ...................................................... 17

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ................................................................................ 18, 19

*Good v. Roy*,
    459 F. Supp. 403 (D. Kan. 1978) ............................................................ 17

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
    487 F. App'x 189 (5th Cir. 2012) ............................................................ 10

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ..................................................................... 3

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ..................................................................... 26

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ................................................................................... 9

*Ivy v. Williams*,
    781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom., Ivy v. Morath*, 137 S. Ct. 414
    (2016) ....................................................................................................... 23

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ................................................................................. 17

*Jett v. Dall. Indep. Sch. Dist.*,
    491 U.S. 701 (1989) ................................................................................. 19

*Kerrigan v. Phila. Bd. of Election*,
    No. 2:07-cv-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008) ................ 25

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ........................................................ 13, 14, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................. 16

*Lightbourn v. Cnty. of El Paso*,
    118 F.3d 421 (5th Cir. 1997) ........................................................... 7, 23, 24

*Logan v. U.S. Bank Nat'l Ass'n,*
    722 F.3d 1163 (9th Cir. 2013) ...................................................................................18

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..............................................................................................8, 12

*Mass. Mut. Life Ins. v. Russell,*
    473 U.S. 134 (1985) ...................................................................................................20

*McDonald v. Bd. of Election Comm'rs of Chi.,*
    394 U.S. 802 (1969) ...................................................................................................25

*McKay v. Altobello,*
    No. 2:96-cv-3458, 1996 WL 635987 (E.D. La. Oct. 31, 1996) .................................17

*McKay v. Thompson,*
    226 F.3d 752 (6th Cir. 2000) .....................................................................................17

*Melton v. Dall. Area Rapid Transit,*
    391 F.3d 669 (5th Cir. 2004) .....................................................................................22

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ................................................................................1, 3, 4

*Mixon v. Ohio,*
    193 F.3d 389 (6th Cir. 1999) .....................................................................................17

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014) ...................................................................................3, 5

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) ...........................................................................8, 10, 13

*Nat'l Taxpayers Union, Inc. v. United States,*
    68 F.3d 1428 (D.C. Cir. 1995) .......................................................................13, 14, 15

*Nat'l Treasury Emps. Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) .............................................................12, 13, 14, 15

*Neely v. PSEG Tex., LP,*
    735 F.3d 242 (5th Cir. 2013) .....................................................................................11

*OCA-Greater Hous. v. Texas,*
    867 F.3d 604 (2007) .....................................................................................................7

*Pa. Dep't of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ...................................................................................................23

*Perez v. Abbott*,
  390 F. Supp. 3d 803 (W.D. Tex. 2019) (Rodriguez, J.) .................................................22

*Physician Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) ...........................................................................................2

*Prison Justice League v. Bailey*,
  697 F. App'x 362 (5th Cir. 2017) (per curiam) ..............................................................11

*Raj v. LSU*,
  714 F.3d 322 (5th Cir. 2013) ............................................................................................6

*Ray v. Texas*,
  No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ...................................11

*Rodriguez v. Popular Democratic Party*,
  457 U.S. 1 (1982) ...........................................................................................................18

*Smith v. Harris Cnty.*,
  956 F.3d 311 (5th Cir. 2020) ...............................................................................22, 25, 26

*Spivey v. Ohio*,
  999 F. Supp. 987 (N.D. Ohio 1998) ...............................................................................17

*Spokeo, Inc. v. Robbins*,
  578 U.S. 330 (2016) ..........................................................................................................8

*Stokes v. Sw. Airlines*,
  887 F.3d 199 (5th Cir. 2018) ..........................................................................................17

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .....................................................................................................9, 10

*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) ............................................................................................3

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .................................................................................2, 3, 5, 6

*Tex. Democratic Party v. Hughs*,
  No. 20-50667, 2021 WL 2310010 (5th Cir. June 4, 2021) ....................................*passim*

*Tex. Indigenous Council v. Simpkins*,
  No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.) .............10

*Thomas v. Reeves*,
  961 F.3d 800 (5th Cir. 2020) (Oldham, J., concurring) ..................................................22

*United States v. Georgia,*
    546 U.S. 151 (2006)............................................................................................7

*Webster v. Fall,*
    266 U.S. 507 (1925)..........................................................................................22

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)............................................................................................19

*Willing v. Lake Orion Cmty. Sch. Bd. of Trs.,*
    924 F. Supp. 815 (E.D. Mich. 1996)................................................................17

*Ysleta Del Sur Pueblo v. Laney,*
    199 F.3d 281 (5th Cir. 2000)......................................................................19, 21

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017).....................................................................................17

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018)..............................................................13, 14, 15

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. amend. XV................................................................................................18

U.S. Const. art. III, § 2..................................................................................................9

U.S. Const. art. VI........................................................................................................6

42 U.S.C. § 1983.........................................................................................................16

52 U.S.C.
    § 10101..............................................................................................................17
    § 10101(a)(2)....................................................................................................17
    § 10101(a)(2)(A)–(C)......................................................................................19
    § 10101(a)(2)(B)..............................................................................................18
    § 10101(c)....................................................................................................17, 19
    § 10101(c)–(g).................................................................................................19
    § 10101(g)........................................................................................................19
    § 10302............................................................................................................21
    § 10302(c)........................................................................................................21
    § 10308(d)........................................................................................................21
    § 10308(d)...................................................................................................21, 22
    § 10504............................................................................................................21
    § 10508.......................................................................................................20, 21
    § 20104(c)........................................................................................................20
    § 20105(a)...................................................................................................20, 21
    § 20105(b)–(c)................................................................................................20

Tex. Elec. Code

§ 1.022 ..................................................................................................... 25, 26
§ 31.002 ......................................................................................................... 2
§ 31.002 ......................................................................................................... 3
§ 31.005 ......................................................................................................... 2
§ 41.001 ....................................................................................................... 25
§ 43.034 ....................................................................................................... 26
§ 61.012 ....................................................................................................... 26
§ 64.009 ....................................................................................................... 26
§ 64.009 ....................................................................................................... 25
§ 64.0322 ....................................................................................................... 4
§ 64.0322 ....................................................................................................... 6
§ 81.001 ....................................................................................................... 25
§ 82.002(a) ................................................................................................... 25
§ 84.035 ......................................................................................................... 4
§ 86.001 .................................................................................................... 4, 24
§ 86.002 ....................................................................................................... 24
§ 86.006 ....................................................................................................... 24
§ 86.007(b) ................................................................................................... 24
§ 86.011 ....................................................................................................... 24
§ 86.0105 ....................................................................................................... 4
§ 87.027(i) ................................................................................................... 24
§ 87.041(b)(2) ............................................................................................... 24
§ 87.061 ....................................................................................................... 24
§ 87.0271(b)–(d) ............................................................................................ 4
§ 273.021(a) ................................................................................................... 5

Tex. Gov't Code § 405.004(a)(1) ............................................................................. 2

28 C.F.R. § 35.150 ................................................................................................ 25

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 22

**Other Authorities**

ECF 31, Order to Consolidate, *Unión Del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-
    XR (W.D. Tex. Sept. 30, 2021) ..................................................................... 1

H.R. Rep. No. 88-914, 1964 U.S.C.C.A.N. 2391 (1963) ............................................. 19

Tex. Leg., An Act Relating to Election Integrity and Security, SB1, 87th Leg., 2d
    Spec. Sess. (2021) ("SB1") ........................................................................... 1

**INTRODUCTION**

Plaintiffs bring statutory and constitutional claims to enjoin multiple provisions of Senate Bill 1 ("SB1"). Tex. Leg., An Act Relating to Election Integrity and Security, SB1, 87th Leg., 2d Spec. Sess. (2021). But those challenges are either jurisdictionally barred or fail on the merits. Plaintiffs have sued the Deputy Secretary of State and the Attorney General (collectively, the "State Defendants"), but neither official enforces the provisions of SB1 that plaintiffs challenge. And plaintiffs have not demonstrated a cognizable injury sufficient to confer associational or organizational standing. On the merits, plaintiffs lack a private cause of action to bring claims under Section 101 of the Civil Rights Act or Section 208 of the Voting Rights Act (Counts 1 and 4). And they have failed to allege how the provisions of SB1 violate the Americans with Disabilities Act ("ADA") or the Rehabilitation Act (Counts 2-3, 5-6). [1]

For these reasons and those discussed below, the Court should dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

**ARGUMENT**

### I.    Plaintiffs Cannot Satisfy *Ex parte Young*

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). However, "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity, provided the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (footnote omitted) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)).

---

[1] Of course, the State Defendants believe Plaintiffs' other claims are meritless as well. But for the sake of judicial efficiency, the State Defendants will address those claims and other issues in subsequent motions, if necessary. *See* ECF 31, Order to Consolidate, *Unión Del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR (W.D. Tex. Sept. 30, 2021).

1

Fifth Circuit "precedents distill three rules" relevant here: (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughes*, No. 20-50667, 2021 WL 2310010, at *2 (5th Cir. June 4, 2021) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). The plaintiffs here have failed to allege facts sufficient to invoke the *Ex parte Young* exception as to the State Defendants.

### A. Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy Secretary

Sovereign immunity precludes plaintiffs' claims against the Deputy Secretary of State because he does not have a sufficient connection with enforcement of the challenged SB1 provisions.[2] The only allegations specific to the Deputy Secretary are in paragraph 31 of the plaintiffs' complaint. There, the plaintiffs note that Texas Election Code § 31.001(a) provides that the Secretary is Texas's chief election officer. ECF 1 ¶ 31. The plaintiffs also allege that the Secretary "has explicit duties to enforce" the challenged SB1 provisions, but they do not cite where this authority is granted. *Id.* The plaintiffs further allege that the Secretary "routinely issues guidance," designs election forms, and may order election authorities to correct their conduct. *Id.* (citing Tex. Elec. Code §§ 31.002, 31.005).

Plaintiffs' general and conclusory allegations do not suffice. Plaintiffs must "identify the

---

[2] At the time of this filing, the Deputy Secretary is performing the Secretary's duties due to a vacancy. *See* Tex. Gov't Code § 405.004(a)(1).

Secretary's specific duties within the particular statutory provision" being challenged. *Tex. Democratic Party*, 2021 WL 2310010, at *2 (citing *Tex. Democratic Party*, 978 F.3d at 179–80). "[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

Plaintiffs allege that the Secretary "routinely issues guidance to" local officials "on various elections procedures," ECF 1 ¶ 31, but they do not allege how any guidance from the Secretary relates to the particular provisions of SB1 they challenge. Nor do they explain how issuing "guidance" to local officials could be considered enforcement against plaintiffs under *Ex parte Young*. Enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but plaintiffs do not allege that the Secretary's guidance compels or constrains anyone, much less compels or constrains them.

Plaintiffs further allege that the Secretary is "responsible for the design and content of all forms necessary for administration of the Texas Election Code," ECF 1 ¶ 31 (citing Texas Election Code § 31.002), but they do not allege how the Secretary's guidance or his alleged authority relates to the particular provisions of SB1 that they challenge and the harms they allege to result from enforcement of those provisions. The Secretary is not a proper defendant unless the plaintiffs can show that directing the Secretary not to enforce the challenged provisions would afford them relief from the alleged harm. *See Mi Familia Vota*, 977 F.3d at 465 (explaining that the Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek").

While the plaintiffs allege that the Secretary "has explicit duties found within SB 1 and the rest of the Texas Election Code to enforce the provisions challenged by Plaintiffs in this lawsuit," ECF 1 ¶ 31, this is nothing more than a conclusory allegation. *See, e.g.*, *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (explaining that conclusory allegations, unwarranted factual inferences, and legal

conclusions are not accepted as true). The plaintiffs fail to do as Fifth Circuit precedent requires—show how the Secretary has the requisite connection to enforcement "provision-by-provision." *Tex. Democratic Party*, 2021 WL 2310010, at *2.

The plaintiffs assert Counts 1–6 against the Secretary. In these counts, they challenge SB1 §§ 5.02, 5.03, 5.06, 5.10, 5.12, 6.03, 6.06, and 7.04. *See* ECF 1 ¶¶ 79, 82, 94, 110, 114, 130–54, 157, 162–63, 174, 182. But the plaintiffs fail to allege the Secretary's connection to enforcement of these provisions. The Secretary in fact does not enforce them. For example, the early voting clerk, not the Secretary, enforces the ballot-application provisions in SB1 §§ 5.02 and 5.03. *See* Tex. Elec. Code § 86.001. The amendment to Tex. Elec. Code § 84.035 made by SB1 § 5.06 is enforced by an election judge, not the Secretary. The remainder of Tex. Elec. Code § 84.035 is enforced by the early voting clerk. And the amendment made by SB1 to § 5.12 is enforced by the signature verification committee. *See* Tex. Elec. Code § 87.0271(b)–(d) (reciting steps the committee performs).

SB1 § 5.10 amends Tex. Elec. Code § 86.015(c) to require that the Secretary update an online tool to "allow a voter to add or correct information" required to be included on an early voting ballot application and on the carrier envelope. Plaintiffs fail to allege how adding features to an online ballot-tracking tool, which will "allow a voter to add or correct information," results in the alleged harm. The Secretary is not a proper defendant unless the plaintiffs can show that directing the Secretary not to enforce the challenged provision would afford them relief from the alleged harm. *See Mi Familia Vota*, 977 F.3d at 465.

SB1 § 6.03 requires completion of a form by "[a] person, other than an election officer, who assists a voter," Tex. Elec. Code § 64.0322, and SB1 § 6.06 modifies the offense in Texas Election Code § 86.0105. SB1 does not delegate authority to the Secretary to enforce compliance should an individual fail to provide the information required by SB1 § 6.03. *See id.* And the Secretary is not authorized to prosecute the offense modified by SB1 § 6.06. *See id.* § 86.0105. SB1 § 7.04 adds

4

§§ 276.015–.019 to the Election Code, and these provisions also assign no enforcement role to the Secretary.

In sum, plaintiffs have not identified a sufficient connection between SB1 and the Secretary sufficient to overcome the Secretary's immunity.

### B.   The Attorney General Is Also Immune

Sovereign immunity also bars the plaintiffs' claims against the Attorney General. In the counts asserted again the Attorney General, plaintiffs challenge Sections 6.03, 6.06, and 7.04. ECF 1 ¶¶ 157, 195, 206. Plaintiffs allege that the Attorney General is "the chief law enforcement officer of the State of Texas" and "empowered to enforce Texas laws, including criminal and civil provisions in the Texas Election Code at issue in this case." ECF 1 ¶ 32. While the Attorney General is generally empowered to prosecute criminal offenses prescribed by Texas's elections laws, *see* Texas Election Code § 273.021(a), that is not enough to satisfy the *Ex parte Young* exception. "[T]he mere fact that the Attorney General *has* the authority to enforce" a challenged law is insufficient. *City of Austin*, 943 F.3d at 1001. Plaintiffs must allege he "he is likely to" injure them by enforcing the challenged statute "here." *Id.* at 1002. Plaintiffs must provide a "provision-by-provision analysis," *Tex. Democratic Party*, 2021 WL 2310010, at *2, showing that the Attorney General has not only "the particular duty to enforce the statute in question" but also "a demonstrated willingness to exercise that duty." *Morris*, 739 F.3d at 746.

Instead of identifying a duty, plaintiffs point to the Attorney General's "authority." ECF 1 ¶ 32. To the extent a defendant has discretionary enforcement authority, it is that much harder for a plaintiff to allege that "formal enforcement" of each challenged provision is "on the horizon." *Tex. Democratic Party*, 978 F.3d at 181. Plaintiffs apparently fear that the Attorney General will seek to exercise his authority in an unlawful manner, but they do not allege any "demonstrated willingness" to do so. *Morris*, 739 F.3d at 746. The Attorney General is "bound by Oath . . . to support [the federal]

Constitution," including the Supremacy Clause. U.S. Const. art. VI. Plaintiffs point to the Attorney General's past enforcement of other laws, *see* ECF 1 ¶ 32, but even then, they do not allege that the Attorney General's past enforcement efforts implicated any of the federal rights that plaintiffs claim here.

The Fifth Circuit has held that the Attorney General's enforcement of "*different* statutes under *different* circumstances does not show that he is likely to do the same here." *City of Austin*, 943 F.3d at 1002. *A fortiori*, the Attorney General's *lawful* enforcement of different statutes in different circumstances does not show that he is likely to *unlawfully* enforce SB1 in these circumstances.

Plaintiffs' failure to allege a connection to enforcement on a provision-by-provision basis is prejudicial to State Defendants. For example, plaintiffs assert Count 4 against "all Defendants," including the Attorney General, but they do not even mention the Attorney General in that section. ECF 1 ¶¶ 155–60. And Section 6.03, which is mentioned in Count 4, does not identify the Attorney General either. *See* SB1 § 6.03 (codifying Tex. Elec. Code § 64.0322).

Thus, plaintiffs' claims against the Attorney General also fail to meet the *Ex parte Young* exception to sovereign immunity and should be dismissed.

### C.     Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity

Sovereign immunity bars the plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the reasons above, and plaintiffs have not pleaded a waiver or abrogation by Congress that would permit their claims to proceed. Nor could they.

For Counts 7 and 8, "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). "Also, Congress has not abrogated sovereign immunity for Civil Rights Act claims," such as that in Count 1. *Tex. Democratic Party*, 2021 WL 2310010, at \*2

n.3 (citing *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020)).

With respect to the plaintiffs' ADA claims in Counts 2 and 5, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. As explained below, the plaintiffs have not alleged conduct violating Title II, so the Secretary is entitled to sovereign immunity on Counts 2 and 5. Counts 3 and 6 assert claims under the Rehabilitation Act. Although a defendant can "waive[] sovereign immunity under § 504 of the Rehabilitation Act," plaintiffs plead no plausible facts to show such waiver. *Block*, 952 F.3d at 619.

In any event, plaintiffs complain about local noncompliance with the ADA and the Rehabilitation Act, neither of which are election laws. Recognizing this distinction, the Fifth Circuit has already held "that the ADA is not an election law" that could trigger the Secretary's limited powers. *Lightbourn v. Cnty. of El Paso,* 118 F.3d 421, 430 (5th Cir. 1997).

As to Count 4, although *OCA-Greater Houston v. Texas* holds that the Voting Rights Act abrogates sovereign immunity, 867 F.3d 604, 614 (2007), that case was wrongly decided. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nevertheless, to the extent this Court is bound by *OCA-Greater Houston*, that decision does not relieve plaintiffs of their burden to show Article III standing. As explained below, because the

State Defendants do not enforce the challenged provisions, plaintiffs cannot show traceability or redressability.

## II.     Plaintiffs Lack Standing

### A.     Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue. *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed, "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

8

**B.      Plaintiffs Have Not Plausibly Alleged Traceability of Redressability**

As an initial matter, plaintiffs lack standing because their alleged harms are not traceable to or redressable by the State Defendants. By and large, plaintiffs broadly challenge the entirety of SB1, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have a broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

**C.      Plaintiffs Do Not Have Associational Standing**

The complaint does not plausibly allege facts establishing associational standing. A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. The plaintiff must therefore make two threshold showings: (1) that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (requiring "indicia of membership"), and (2) that identified members who have "suffered the requisite harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Plaintiffs here have done neither.

First, plaintiffs claim to have members in the colloquial sense, but they fail to allege that each of those individuals "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's

9

leadership, and finance the organization's activities, including the case's litigation costs." *Tex. Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.). Plaintiffs assert no such facts. *See* ECF No. 1 ¶¶ 14–30.

Second, even assuming that plaintiffs have members, the organizations have failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. This requires, among other things, allegations of a "specific member" and specific facts establishing how that member will suffer an injury in fact. *City of Kyle*, 626 F.3d at 237.

Plaintiffs fail to meet this pleading requirement. They instead only address their members generally, alleging that "each of the Plaintiffs named below has members who are qualified individuals with disabilities" under the ADA and RA or "who are entitled to assistance in voting" under § 208 of the Voting Rights Act. ECF No. 1 ¶¶ 9–13. And none of the plaintiffs discuss particular members or particular injuries they supposedly have. *Id.* ¶¶ 14–30. That is not enough.[3]

This defect is independently sufficient to warrant dismissal of plaintiffs' claims. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[4]

---

[3] Nor do two stray examples save plaintiffs' complaint. At ¶ 85, plaintiffs anonymously point to one of REVUP's members, alleging that he has Cerebral Palsy and is therefore eligible to vote by mail. They also note that the League of Women Voters "determined that hundreds of its voters chose to vote by mail due to age or disability." But these are the only remotely specific facts present in plaintiffs' complaint. They do not by themselves cure the fact that plaintiffs fail to plead specific facts on their members.

[4] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if plaintiffs did not have to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021). The content of those factual allegations would vary depending on the claim raised, but they should at minimum describe the activity in which the member

Finally, even if Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claims: Counts 2 and 5 under the ADA, Counts 3 and 6 under the Rehabilitation Act, and Count 4 under Section 208 of the VRA. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, Plaintiffs' disability claims require the participation of individual members, both because they have individualized elements and because of the relief requested. For example, "to prevail on a claim of disability discrimination under the ADA, a party must prove that he has a disability," *Neely v. PSEG Tex., LP*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted), and that the disability "substantially limits an individual in a major life activity," *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (per curiam); *see also Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (as to § 208 of the VRA, considering the specific effect of Texas early-voting law on group of elderly plaintiffs). This requires a case-by-case analysis" of plaintiff-specific facts and circumstances. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 369 (5th Cir. 2012) (per curiam). Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual

---

wishes to perform, the member's eligibility to participate in the activity if relevant, and the specific burden the challenged provision imposes on the member.

participation is crucial for understanding the merits of disability claims.

  **D. Plaintiffs Do Not Plausibly Allege a Cognizable Injury**

  Plaintiffs do not have organizational standing because they have not plausibly alleged that they, as organizations, will suffer injuries in fact. None of the Plaintiffs here claim to be "the object of the government action or inaction [they] challenge[]," so standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (quotation omitted). They therefore lack organizational standing.

  *League of Women Voters of Texas.* The League of Women Voters alleges that SB1 will frustrate its "mission of expanding voter registration," "increasing voter turnout," empowering voters," and "defending democracy." ECF 1 ¶¶ 19–20. As a preliminary matter, "that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *ACORN v. Fowler*, 178 F.3d 350, 362 n.7 (5th Cir. 1999). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). And more specifically, in the election context, an organization's "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). For these reasons, the League of Women Voters's interest in voter registration, voter turnout, empowering voters, and defending democracy cannot confer organizational standing.

  In addition, the League of Women Voters does not plausibly allege that any particular provision of SB1, much less all of the challenged provisions, will "impair the organization's activities." *Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 613 (S.D. Tex. 2014) (Costa, J.). No one contends that SB1 prevents the League from registering voters or otherwise conducting its ordinary business.

  Lastly, the League alleges it "will need to divert resources in order to educate" third parties

about SB1, ECF 1 ¶ 100, but that does not suffice either. Although a diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). A diversion of resources is thus cognizable only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

Here, the League of Women Voters does not allege an underlying injury that its alleged diversion was needed to counteract. Nor does it "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238). In any event, an organization's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995).

*REVUP-Texas.* REVUP lacks standing for the same reasons. It alleges that SB1 will frustrate its "mission to increase voter turnout in the disability community, to recruit and train individuals willing to serve as assistants, and, accordingly, its ability to connect voters with disabilities with needed assistance." ECF 1 ¶ 23. But those are abstract social interests that do not support organizational standing. *See Fowler*, 178 F.3d at 362 n.7; *Nat'l Treasury Emps. Union*, 101 F.3d at 1429. Like the League of Women Voters, REVUP alleges it will "will need to divert resources in order to educate" third parties about SB1, ECF 1 ¶ 102, but because REVUP does not identify a cognizable underlying injury, its diversion of resources cannot be a cognizable injury. *See Zimmerman*, 881 F.3d at 390; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Nor does REVUP "identify 'specific projects that [it]

had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed*, 2018 WL 3614221, at *4.

*Texas Organizing Project*. TOP alleges that SB1 will "frustrate TOP's mission of expanding voter participation in low-income communities." ECF 1 ¶ 27. It further alleges that it "expends significant resources to educate Texans about voting and civic participation" and that it "will be forced to forego some of these activities due to the provisions at issue in this case, and to spend additional resources to reeducate voters and members regarding the new requirements imposed by these provisions." *Id.*; *see also id.* ¶ 103 (SB1 "will prevent it from using staffing, time and money on its other programmatic priorities such as engaging in-person voters at that [sic] doors and spending time with mail-ballot voters advocating for other policy goals").

As before, expanding voter turnout is not an interest that supports organizational standing. *See Fowler*, 178 F.3d at 362 n.7; *Nat'l Treasury Emps. Union*, 101 F.3d at 1429. Further, an organization's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union*, 68 F.3d at 1434. And diverting resources from "advocating for other policy goals" is likewise insufficient to confer standing because any effect on that underlying interest is not a cognizable injury. *See Zimmerman*, 881 F.3d at 390; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088.

*Workers Defense Action Fund*. WDAF alleges that SB1 will frustrate its "mission of expanding voter registration and increasing voter turnout." ECF 1 ¶ 30. It further says that because of the need to respond to SB1, it will be forced to "curtail the types of interactions it has with voters during its in-person canvassing, and to spend resources retraining employees and volunteers." *Id.*; *see also id.* ¶ 105 (SB1 "will prevent it from using staffing, time and money on its other project priorities and policy goals, such as using that same time to canvas voters that do not vote by mail").

Again, expanding voter registration and voter turnout are "abstract social interest[s]" that do

not "confer Article III standing." *Fair Elections Ohio*, 770 F.3d at 461. Nor can WDAF rely on the allegation that it will have to divert funds away from "other policy goals," because such the underlying injury—"frustration of an organization's objectives"—is not concrete. *Nat'l Treasury Emps. Union*, 101 F.3d at 1429; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. And WDAF's fear that it will need to "curtail" its interactions with voters is just that: a fear. It fails to allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Even if that were an injury in fact, it would not give WDAF standing to challenge any of the other provisions at issue.

*OCA-Greater Houston.* OCA alleges that SB1 will frustrate its "mission of promoting civic participation among the AAPI community, including expanding voter registration and increasing voter turnout among AAPI voters." ECF No. 1 ¶ 17. It says it will be unable to "expend[] resources to educate its members and community about voter registration, voting, and providing assistance with mail-in or in-person ballots to those eligible to have assistance" *Id.*; *see also id.* ¶¶ 98–99 ("The diversion of resources required . . . will decrease the amount of time and resources that Plaintiffs can spend conducting educational outreach" and "will take away from OCA-GH's resources to engage with voters.").

OCA fails to establish standing for the reasons explained above. Its missions of "promoting civic participation," "expanding voter registration," and "increasing voter turnout" are abstract social concerns that do not support Article III standing. *See Fowler*, 178 F.3d at 362 n.7; *Nat'l Treasury Emps. Union*, 101 F.3d at 1429. Nor can it rely on the need to educate voters on SB1. *See Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. And its diversion-of-funds argument fails because its underlying injury— the inability to "conduct educational outreach" and "engage with voters"—is not cognizable. *Zimmerman*, 881 F.3d at 390; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088.

15

### E.      Plaintiffs Violate the Prohibition on Third-Party Standing

Finally, Plaintiffs lack standing for another reason: the bar on third-party standing. Section

1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue.

42 U.S.C. § 1983. The same is true for Plaintiffs' other causes of action. A "third party may not assert

a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*,

645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)).

Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing,

regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th

Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014).

Here, Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*,

the right to vote, the right not to be discriminated against based on a disability). Plaintiffs have not

alleged any exception to the general prohibition on third-party standing.

## III.   Plaintiffs' Claims Fail as a Matter of Law

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims

that fail as a matter of law.

### A.      Plaintiffs Lack a Private Cause of Action for Counts 1 and 4

Plaintiffs have not identified any private cause of action allowing them to sue under Section

101 of the Civil Rights Act or Section 208 of the VRA. "[P]rivate rights of action to enforce federal

law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task

is to interpret the statute Congress has passed to determine whether it displays an intent to create not

just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of

action does not exist and courts may not create one, no matter how desirable that might be as a policy

matter, or how compatible with the statute." *Id.* at 286–87.

To be sure, federal courts have not always followed that strict approach. There was a time

when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). That time has passed. Since jettisoning the "*ancient regime*," *id.* at 1855, the Supreme Court has "not returned to it." *Sandoval*, 532 U.S. at 287; *see also Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (rejecting reliance "on pre-*Sandoval* reasoning").

### 1.    The Materiality Provision Does Not Imply a Private Cause of Action for These Plaintiffs

In Count 1, plaintiffs rely on the Materiality Provision in Section 101 of the Civil Rights Act of 1964, but that provision does not create a private cause of action. *See* 52 U.S.C. § 10101.[5]

In Section 101, Congress authorized "the Attorney General," not private plaintiffs, to "institute . . . a civil action or other proper proceeding for preventive relief." 52 U.S.C. § 10101(c). Thus, "Section 1971 is enforceable by the Attorney General, not by private citizens." *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000).

Section 101 does not create an implied cause of action, as many courts recognize. *See, e.g., Mixon v. Ohio*, 193 F.3d 389, 406 n.12 (6th Cir. 1999); *Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004); *Spivey v. Ohio*, 999 F. Supp. 987, 996 (N.D. Ohio 1998); *McKay v. Altobello*, No. 2:96-cv-3458, 1996 WL 635987, at *2 (E.D. La. Oct. 31, 1996); *Cartagena v. Crew*, No. 1:96-cv-3399, 1996 WL 524394, at *3 n.8 (E.D.N.Y. Sept. 5, 1996); W*illing v. Lake Orion Cmty. Sch. Bd. of Trs.*, 924 F. Supp. 815, 820 (E.D. Mich. 1996); *Good v. Roy*, 459 F. Supp. 403, 405–06 (D. Kan. 1978).

The Materiality Provision contains no indication of an intent to create a private right, much less a private remedy. The statute's text is focused on the local official it regulates—"[n]o person acting under color of law shall . . . ."—not individual voters. 52 U.S.C. § 10101(a)(2). "Statutes that focus on

---

[5] The Complaint refers to the Materiality Provision as "Section 1971 of the Civil Right[s] Act of 1964," ECF 1 ¶ 107, presumably because the provision was formerly codified at 42 U.S.C. § 1971(a)(2)(B). The Materiality Provision was enacted as part of Section 101 of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (July 2, 1964), and is now codified at 52 U.S.C. § 10101(a)(2)(B).

the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). The Materiality Provision does not create any private rights because it "is framed in terms of the obligations imposed on the regulated party" (the local official) while voters are "referenced only as an object of that obligation." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam).

Although the Materiality Provision refers to "the right of any individual to vote in any election," 52 U.S.C. § 10101(a)(2)(B), it does not contain any "'rights-creating' language." *Sandoval*, 532 U.S. at 288. The right to vote to which the Materiality Provision refers is based on state law. *See Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982) ("[T]his Court has often noted that the Constitution does not confer the right of suffrage upon any one and that the right to vote, *per se*, is not a constitutionally protected right.") (quotations and citation omitted)). Even if the Materiality Provision referred to federal rights created elsewhere, *see, e.g.*, U.S. Const. amend. XV, such a reference would not transform the Materiality Provision itself into a rights-creating provision.

In the alternative, assuming *arguendo* that Section 101 did create rights, those rights belong only to voters, not non-voting entities like Plaintiffs here. Even pre-*Sandoval* precedent recognized that "the scope of [an] implied right" could not necessarily be stretched from one plaintiff in one situation to another plaintiff in another situation. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998). Thus, these Plaintiffs still would not be able to bring suit.

In sum, the Materiality Provision does not create a federal right for these Plaintiffs "in clear and unambiguous terms." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). As a result, Plaintiffs cannot bring a private cause of action.

Moreover, Section 101 also does not create a private remedy. Instead, it authorizes the

Attorney General to bring suit. *See* 52 U.S.C. § 10101(c). Again, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. That is especially true here because Section 101 establishes detailed procedures and remedies for suits brought by the Attorney General. *See* 52 U.S.C. § 10101(c)–(g). Congress even protected defendants by requiring a three-judge district court with a right of appeal directly to the U.S. Supreme Court. *See id.* § 10101(g). The Court should not render Congress's choices in Section 101 meaningless by authorizing private causes of action unaffected by those provisions.

Finally, even if Section 101 created a private cause of action for these plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. When enacting the Materiality Provision, Congress was concerned with the unequal application of state law by local officials, not the content of state law itself. *See, e.g.*, H.R. Rep. No. 88-914, 1964 U.S.C.C.A.N. 2391, 2394, 2490 (1963); *see also* 52 U.S.C. 10101(a)(2)(A)–(C). Courts inferring a cause of action against one type of defendant do not necessarily extend that cause of action to other types of defendants. In *Jett v. Dallas Independent School District*, a pre-*Sandoval* case that acknowledged an implied cause of action against private defendants, the Supreme Court refused to apply that cause of action "in the context of . . . 'state action.'" 491 U.S. 701, 731 (1989). Similarly, in *Ysleta Del Sur Pueblo v. Laney*, the Fifth Circuit declined to apply an implied cause of action against state officials when "[t]he statute could easily be determined to provide . . . an implied private cause of action against any party other than a state." 199 F.3d 281, 287 (5th Cir. 2000) (criticizing the plaintiff's "fatal logical leap"). Here, there is no indication, much less a "clear statement," that Congress created a private cause of action against the State or its officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).[6]

---

[6] To the extent plaintiffs rely on Section 1983, it also would not allow a private plaintiff to enforce the Materiality Provision. As explained above, the Materiality Provision does not create a federal right, *see Gonzaga Univ.*, 536 U.S. at 290, and it provides a detailed remedial scheme inconsistent with Section 1983 suits. *See, e.g.*, 52 U.S.C.

2.    **Section 208 Does Not Create a Private Cause of Action for These Plaintiffs**

In Count 4, plaintiffs rely on Section 208 of the Voting Rights Act, *see* ECF 1 ¶¶ 155–60, but that statute does not create a private cause of action. Plaintiffs do not have an express cause of action, and they do not contend otherwise. Plaintiffs presumably rely on an implied cause of action, but that does not work either.

First, Section 208 does not confer any private rights on plaintiffs. Assuming *arguendo* that the statute creates any rights at all, it does so for certain "voter[s] who require[] assistance," or perhaps "a person" who "give[s] assistance." 52 U.S.C. § 10508. The statute does not create any rights in non-voting, non-assisting entities like Plaintiffs. As explained above, the Court should not expand "the scope of [an] implied right" from one type of plaintiff to another. *Gebser*, 524 U.S. at 284.

Second, Section 10508 does not create a private remedy. Where such a remedy is absent, federal courts must not imply one: "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

Section 208 is enforced through other mechanisms. For example, the Voting Rights Act requires "[t]he chief election officer of each State" to "provide public notice . . . of the availability of . . . assistance under section 10508," 52 U.S.C. § 20104(c), and failure to do so is remediable through a public or private cause of action.  The statute expressly authorizes "the United States Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104 to "bring an action for declaratory or injunctive relief." *Id.* § 20105(a). Congress limited such causes of action by requiring pre-suit notice and forbidding fee-shifting. *See id.* § 20105(b)–(c). The congressional scheme

---

§ 10101(g).  "Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc).

ensures that voters are aware of their options under Section 208, which enables them to assert any alleged rights when voting and rely on such alleged rights as defenses to any actions brought against them. The existence of this enforcement scheme "suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Inferring a private remedy would be especially inappropriate in light of the detailed enforcement provisions that Congress provided elsewhere in the Voting Rights Act, none of which authorize this suit. *See, e.g.*, 52 U.S.C. §§ 10308(d), 10504, 20105(a). Considering "the statute Congress has passed," there is no evidence of legislative intent to create a private right of action to enforce Section 208. *Sandoval*, 532 U.S. at 286. Accordingly, the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Finally, as explained above, even if Section 208 created a private cause of action for these plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. Section 208 focuses on the operation of a polling place, a function performed by local officials, not state officials. *See* 52 U.S.C. § 10508. Thus, any private cause of action should be limited to local defendants, not state defendants. *See Ysleta Del Sur Pueblo*, 199 F.3d at 287; *supra* Part III.A.1.

The only case State Defendants have found expressly recognizing a private cause of action to enforce Section 208 is not persuasive. The Western District of Arkansas recently concluded that Section 3 of the Voting Rights Act "explicitly creates a private right of action" to enforce Section 208. *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021) (citing 52 U.S.C. § 10302). But Section 3 does not create a cause of action at all. It merely establishes procedural options applicable "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(c); *cf. id.*

§ 10308(d) (creating a cause of action for the Attorney General but not for violations of Section 208).[7]

Even if Section 3 did create a cause of action, it would not apply here. Count 4 does not allege a violation "of the fourteenth or fifteenth amendment." *Id.* It alleges a violation of Section 208 of the Voting Rights Act, which goes well beyond constitutional requirements. *See* ECF 1 ¶¶ 155–60. As this Court has previously held, "§ 3(c) requires . . . violations of the Fourteenth or Fifteenth Amendments." *Perez v. Abbott*, 390 F. Supp. 3d 803, 813 (W.D. Tex. 2019) (three-judge district court) (Rodriguez, J.); *cf. Thomas v. Reeves*, 961 F.3d 800, 828 n.1 (5th Cir. 2020) (Oldham, J., concurring) (explaining that plaintiffs bringing a VRA suit cannot recover fees under a VRA fees provision that "applies only in an 'action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment'" because they "forswore any relief under the Constitution").

### B.      Plaintiffs Failed to State a Claim under the ADA or the Rehabilitation Act

Four of plaintiffs' eight counts assert disability discrimination claims against the Secretary (but not the Attorney General). *See* ECF 1 ¶¶ 112–21 (Count 2), ¶¶ 122–29 (Count 3); ¶¶ 161–66 (Count 5), ¶¶ 167–73 (Count 6). But plaintiffs fail to plead facts plausibly alleging that the Secretary has violated either the ADA or the Rehabilitation Act. *See* Fed. R. Civ. P. 12(b)(6).

To state "a prima facie case of discrimination under the ADA," a plaintiff must plausibly allege three elements: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669,

---

[7] Some cases have ruled on a Section 208 claim without considering whether the plaintiffs had a private cause of action. *See, e.g., OCA-Greater Hous.*, 867 F.3d at 614–15. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

671-72 (5th Cir. 2004)); *see also Lighbourn*, 118 F.3d at 428.

The Rehabilitation Act has the same requirements, except it is stricter in two respects. First, the causation requirement is more demanding. The exclusion, denial, or discrimination must be "solely by reason" of plaintiff's disability." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 n.1 (5th Cir. 2020). Second, the Rehabilitation Act requires "that the specific program or activity with which [the plaintiff is] involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427.

At the outset, plaintiffs' claims fail because the Secretary does not "provide" the benefits plaintiffs contend their members should receive. [8] *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see Ivy v. Williams*, 781 F.3d 250, 255 (5th Cir. 2015), *vacated as moot sub nom., Ivy v. Morath*, 137 S. Ct. 414 (2016) (plaintiffs must plausibly allege a service, program, or activity they are being denied and that it is "provided by" the public entity being sued).

The Fifth Circuit's opinion in *Ivy v. Williams* illuminates the "provided by" standard. 781 F.3d 250 (5th Cir. 2015). There, the Fifth Circuit held that plaintiffs could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." *Id.* at 258. TEA did not teach driver education. *Id.* at 255. It merely regulated and supervised the schools that did. The agency therefore did not "provide[]" the service for purposes of the ADA and the Rehabilitation Act. TEA's pervasive regulation and supervision of driver education schools did not transform the driver-education service offered by the schools into one for which the agency was responsible. *Id.* at 257. Support from the agency, such as providing sample course materials, did not bring the schools' programs or services under the agency's control for purpose of the ADA. *Id.* at 258.

---

[8] For the same reason, plaintiffs cannot demonstrate that the Secretary discriminated against them based upon disability. Thus, plaintiffs cannot make a *prima facie* showing of the third factor necessary to state a claim under the ADA or Rehabilitation Act.

The same logic applies here. Local election officials administer Texas elections in general. They receive and review ballot applications, Tex. Elec. Code § 86.001, mail carrier and ballot envelopes to voters, *id.* § 86.002, receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011, verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2), and count the results, *id.* § 87.061. The Secretary does not share those responsibilities.

In substance, plaintiffs would impose supervisory liability on the Secretary. But the Fifth Circuit rejected that tactic in *Lightbourn*. There, a group of plaintiffs who were blind and mobility impaired sued the Secretary because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Lightbourn*, 118 F.3d 423–24. The district court had held that the Secretary had a positive obligation to ensure that local election authorities complied with the ADA— one that the Secretary had violated, it concluded, by failing to encourage the development and adoption of new voting systems. Reversing the district court, the Fifth Circuit concluded that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (holding that the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA"). The court dismissed the case for failure to state a claim against the Secretary.

In reaching this decision, the Fifth Circuit analyzed the Secretary's legal obligations. First, many provisions in the Election Code "give discretion to the Secretary to take some action," but [p]rovisions merely authorizing the Secretary to take some action do not confer a legal duty on [her] to take the contemplated action." *Lightbourn*, 118 F.3d at 429. Second, although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance with the ADA. *Id.* Those duties relate to local enforcement of "election laws," but "the ADA is not an election law." *Id.* at 429–30.

The same is true here for the voter assistance provisions and signature match requirements

that the plaintiffs cite as violating federal law. Local elections officials, not the Secretary, provide the benefits of the services that plaintiffs contend they have been denied. Therefore, plaintiffs cannot plausibly allege that the Secretary has denied any benefit to their disabled members.

Moreover, plaintiffs have not identified any provision of SB1 that discriminates against voters with disabilities. Plaintiffs are not "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith*, 956 F.3d at 317. In fact, state law expressly prohibits elections officials from interpreting any provision of the Texas Elections Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

Texas citizens have multiple options to vote: (1) voting in a polling place during early voting, (2) curbside voting during early voting, (3) voting in a polling place on Election Day, (4) curbside voting on Election Day, and (5) voting by mail. *See* Tex. Elec. Code §§ 41.001, 64.009, 81.001, 82.002(a). These are the same options offered to other voters, except that voters who are not disabled may not be eligible for curbside voting or voting by mail. *See id.* §§ 64.009, 82.002(a).

Texas's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [relevant jurisdiction], as well as its alternative and absentee ballot programs." *Kerrigan v. Phila. Bd. of Election*, No. 2:07-cv-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (explaining that "service, program, or activity, *when viewed in its entirety*" must be accessible but that a public entity does not necessarily need to "make *each* of its existing facilities accessible") (emphases added). That makes sense, especially in the voting context. No one has a right to vote by a specific method. The law protects plaintiffs' "right to vote," not "a claimed right to receive absentee ballots." *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969).

Plaintiffs have also not plausibly alleged that Texas has "failed to make reasonable

accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law provides numerous accommodations for voters who are disabled. Texas law guarantees that disabled voters can request a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that they are entitled to request under federal or state law. Tex. Elec. Code § 1.022.

Moreover, Texas law also ensures accommodations will be made for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *Id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

These accommodations may not match plaintiffs' preferences perfectly, but they offer meaningful opportunities to vote. That is enough under federal law. The ADA and Rehabilitation Act impose a duty to make reasonable accommodations, but not every difference in a person's ability to access a public program or service is actionable. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (holding that neither the ADA nor the Rehabilitation requires equal access or equal results for individuals with disabilities). Rather, the statutes require only that access be meaningful. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that a reasonable accommodation must give qualified individuals "meaningful access"); *Cadena*, 946 F.3d at 725 (stating that qualified individuals have a right to "meaningful access").

## CONCLUSION

State Defendants respectfully request that the Court dismiss the claims asserted against them.

Date: October 25, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*\*Application for Admission Forthcoming*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 25, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN