# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>GREGORY W. ABBOTT, *et al.*,<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>JOSE A. ESPARZA, *et al,*.<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al.,*<br>　　　*Plaintiffs*,<br><br>v.<br><br>GREGORY WAYNE ABBOTT, *et al.*,<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>JOSE ESPARZA, *et al.*,<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-0920-XR |

## MOTION TO DISMISS THE COMPLAINT OF HOUSTON JUSTICE, ET AL.

TABLE OF CONTENTS

Table of Contents ......................................................................................................... ii

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 2

    I.   Plaintiffs Cannot Satisfy *Ex parte Young* ............................................................ 2

        A.  Plaintiffs Cannot Sue the Governor ...................................................... 3

        B.  Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy Secretary ............................................................................................ 4

        C.  The Attorney General Is Also Immune ................................................. 6

        D.  Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity ............... 8

    II.  Plaintiffs Lack Standing ......................................................................................... 9

        A.  Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis ..................................................................................... 9

        B.  Plaintiffs Have Not Plausibly Alleged Traceability or Redressability ........................ 10

        C.  No Plaintiff Has Associational Standing ............................................... 10

        D.  None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury ............................. 13

        E.  The Entity Plaintiffs Violate the Bar on Third-Party Standing ....................................... 17

        F.  The Individual Plaintiff Is Also Not Injured ......................................... 18

    III. Plaintiffs' Claims Fail as a Matter of Law ........................................................... 19

        A.  Plaintiffs Failed to State a Claim under the ADA and Rehabilitation Act .................... 19

            1.   Plaintiffs Do Not Allege a Qualifying Disability ........................ 19

            2.   Defendants Do Not Administer Elections ................................... 21

            3.   Texas Law Does Not Discriminate Against Disabled Voters ........................... 22

            4.   Texas Already Provides Reasonable Accommodations ......................... 23

        B.  Plaintiffs Lack a Private Cause of Action for Their VRA Claims ............................. 24

            1.   Section 208 Does Not Create a Private Cause of Action for These Plaintiffs ............... 25

            2.   Section 2 Also Does Not Create a Private Cause of Action ......................... 28

Conclusion .................................................................................................................... 29

TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Abbott,*
   956 F.3d 696 (5th Cir. 2020)...................................................................................................3

*ACORN v. Fowler,*
   178 F.3d 350 (5th Cir. 1999)..................................................................................................17

*Ala. State Conference of the NAACP v. Alabama,*
   949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting).........................................................9

*Alexander v. Choate,*
   469 U.S. 287 (1985)...............................................................................................................24

*Alexander v. Sandoval,*
   532 U.S. 275 (2001).........................................................................................................*passim*

*Allen v. State Bd. of Elections*........................................................................................................29

*Arkansas United v. Thurston,*
   517 F. Supp. 3d 777 (W.D. Ark. 2021) ...............................................................................27

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of
   Trs.,*
   19 F.3d 241 (5th Cir. 1994)...................................................................................................11

*Baaske v. City of Rolling Meadows,*
   191 F. Supp. 2d 1009 (N.D. Ill. 2002)..................................................................................20

*Barker v. Halliburton Co.,*
   645 F.3d 297 (5th Cir. 2011).................................................................................................17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...............................................................................................................20

*Block v. Tex. Bd. of Law Examiners,*
   952 F.3d 613 (5th Cir. 2020)...............................................................................................8, 9

*Brnovich v. Democratic Nat'l Comm.,*
   141 S. Ct. 2321 (2021) (Gorsuch, J., concurring) ...............................................................28

*Cadena v. El Paso County,*
   946 F.3d 717 (5th Cir. 2020).......................................................................................... 19, 24

*California v. Sierra Club,*
    451 U.S. 287 (1981).................................................................................25

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019)............................................................*passim*

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)........................................................................*passim*

*Conservation Force v. Delta Air Lines, Inc.,*
    190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd,* 682 F. App'x 310 (5th Cir. 2017) (per curiam).................................................................................................28

*Coon v. Ledbetter,*
    780 F.2d 1158 (5th Cir. 1986) ........................................................18

*Cornerstone Christian Sch. v. UIL*
    563 F.3d 127 (5th Cir. 2009)................................................... 12, 13

*Ctr. for Biological Diversity v. EPA,*
    937 F.3d 533 (5th Cir. 2019).............................................10, 11, 12

*Danos v. Jones,*
    652 F.3d 577 (5th Cir. 2011).........................................................18

*Davis v. United States,*
    597 F.3d 646 (5th Cir. 2009)...........................................................3

*Def. Distributed v. U.S. Dep't of State,*
    No. 1:15-CV-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018)..................14, 16, 17

*Delancey v. City of Austin,*
    570 F.3d 590 (5th Cir. 2009)......................................................4, 28

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors,*
    522 F.3d 796 (7th Cir. 2008).........................................................12

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2017) (Souter, J.).........................................12

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.,*
    469 F. App'x 364 (5th Cir. 2012) (per curiam) .........................13

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.,*
    11 F.4th 68 (2d Cir. 2021)..............................................................12

*Fair Elections Ohio v. Husted,*
    770 F.3d 456 (6th Cir. 2014).........................................................15

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)........................................................................................9

*Garrett v. Thaler,*
   560 F. App'x 375 (5th Cir. 2014) (per curiam) ...............................................13

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998)......................................................................................25

*In re Gee,*
   941 F.3d 153 (5th Cir. 2019) (per curiam).............................................10, 14, 18

*Hale v. Harrison Cnty. Bd. of Supervisors,*
   8 F.4th 399 (5th Cir. 2021) (per curiam)......................................................19, 20

*Hale v. King,*
   642 F.3d 492 (5th Cir. 2011) (per curiam).....................................................19, 21

*Hancock Cty. Bd. of Supervisors v. Ruhr,*
   487 F. App'x 189 (5th Cir. 2012) .................................................................12

*Hartman v. Moore,*
   547 U.S. 250 (2006).......................................................................................7

*Houston v. DTN Operating Co., LLC,*
   No. 4:17-cv-35, 2017 WL 4653246 (E.D. Tex. Oct. 17, 2017) ........................20

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ..................................................................................11, 12

*Ivy v. Williams*.............................................................................................21

*J.I. Case Co. v. Borak,*
   377 U.S. 426 (1964)......................................................................................25

*Jett v. Dallas Indep Sch. Dist.,*
   419 U.S. 701 (1989).....................................................................................26

*Kerrigan v. Phila. Bd. of Election,*
   No. 2:07-cv-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008) .......................23

*La Unión Del Pueblo Entero v. Abbott,*
   No. 5:21-CV-0844-XR (W.D. Tex. Sept. 30, 2021) ...........................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014).......................................................................................18

*Lightbourn v. County of El Paso,*
   118 F.3d 421 (5th Cir. 1997)..........................................................9, 19, 21, 22

*Logan v. U.S. Bank Nat'l Ass'n,*
    722 F.3d 1163 (9th Cir. 2013) ........................................................................28

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................9, 10, 14, 18

*Machete Productions, LLC v. Page,*
    809 F.3d 281 (5th Cir. 2015)..................................................................... 14, 15

*Mass. Mut. Life Ins. v. Russell,*
    473 U.S. 134 (1985).......................................................................................25

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020)..........................................................................2, 6

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014) ..................................................................... 3, 4, 7

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010)....................................................................*passim*

*Nat'l Taxpayers Union, Inc. v. United States,*
    68 F.3d 1428 (D.C. Cir. 1995) ..........................................................15, 16, 17

*Nat'l Treasury Emps. Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) ..........................................................14, 15, 17

*Ne. Ohio Coal. for Homeless v. Blackwell,*
    467 F.3d 999 (6th Cir. 2006)..........................................................................11

*Neely v. PSEG Tex., LP,*
    735 F.3d 242 (5th Cir. 2013)..........................................................................13

*OCA-Greater Houston v. Texas,*
    867 F.3d 604 (5th Cir. 2017)........................................................................9, 27

*Olivarez v. T-Mobile USA, Inc.,*
    No. 20-20463, 2021 WL 1945680 (5th Cir. May 14, 2021)............................23

*Pa. Dep't of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ......................................................................................21

*Payne v. Midcrown Pavilion Apartments,*
    No. SA-19-cv-407-FB, 2021 WL 3813378 (W.D. Tex. Aug. 26, 2021) ...........20

*Perez v. Abbott,*
    390 F. Supp. 3d 803 (W.D. Tex. 2019) (Rodriguez, J.).....................................27

*Physician Hosps. of Am. v. Sebelius*,
    691 F.3d 649 (5th Cir. 2012) ............................................................................. 3

*Planned Parenthood Center for Choice v. Abbott*,
    141 S. Ct. 1261 (2021) ..................................................................................... 3

*Prison Justice League v. Bailey*,
    697 F. App'x 362 (5th Cir. 2017) (per curiam) ............................................ 13

*Pub. Citizen, Inc. v. Bomer*,
    274 F.3d 212 (5th Cir. 2001) ........................................................................ 14

*Raj v. LSU*,
    714 F.3d 322 (5th Cir. 2013) .......................................................................... 8

*Ray v. Texas*,
    No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ................ 13

*Sims v. Tex. Dep't of Hous. & Cmty. Affairs*,
    No. 4:05-cv-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) ............ 20

*Sixth St. Bus. Partners LLC v. Abbott*,
    No. 1:20-cv-706-RP, 2020 WL 4274589 (W.D. Tex. July 24, 2020) ............ 3

*Smith v. Harris County*,
    956 F.3d 311 (5th Cir. 2020) ................................................................. 22, 24

*Spokeo, Inc. v. Robbins*,
    578 U.S. 330 (2016) ....................................................................................... 9

*In re Stewart*,
    647 F.3d 553 (5th Cir. 2011) ........................................................................ 14

*Stokes v. Sw. Airlines*,
    887 F.3d 199 (5th Cir. 2018) ........................................................................ 25

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ................................................................. 16, 17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................... 11, 12

*T.O. v. Fort Bend Indep. Sch. Dist.*,
    2 F.4th 407 (5th Cir. 2021) .......................................................................... 23

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ................................................................. 3, 5, 7

*Tex. Democratic Party v. Abbott,*
 978 F.3d 168 (5th Cir. 2020)................................................................................*passim*

*Tex. Democratic Party v. Hughs,*
 997 F.3d 288 (5th Cir. May 7, 2021)..................................................................5

*Tex. Democratic Party v. Hughs,*
 No. 20-50667, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam).....................*passim*

*Texas Indigenous Council v. Simpkins,*
 No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.)..............11

*Thomas v. Reeves,*
 961 F.3d 800 (5th Cir. 2020) (Oldham, J., concurring) ....................................27

*United States v. Armstrong,*
 517 U.S. 456 (1996)..........................................................................7

*United States v. Georgia,*
 546 U.S. 151 (2006)..........................................................................8

*Webster v. Fall,*
 266 U.S. 507 (1925)..........................................................................27

*Will v. Mich. Dep't of State Police,*
 491 U.S. 58 (1989)...........................................................................27

*Ysleta Del Sur Pueblo v. Laney,*
 199 F.3d 281 (5th Cir. 2000)............................................................. 26, 27

*Ziglar v. Abbasi,*
 137 S. Ct. 1843 (2017) ................................................................. 25, 29

*Zimmerman v. City of Austin,*
 881 F.3d 378 (5th Cir. 2018)................................................................14

**Statutes**

42 U.S.C.
 § 1983....................................................................................8, 17
 § 12132.....................................................................................22

52 U.S.C. 10508...............................................................................26

52 U.S.C.
    § 10301(a) ............................................................................................................ 28
    § 10302 ................................................................................................................ 27
    § 10302(c) ............................................................................................................ 27
    § 10308(d) ................................................................................................ 26, 27, 28
    § 10504 ................................................................................................................ 26
    § 10508 ................................................................................................................ 25
    § 20104(c) ............................................................................................................ 25
    § 20105(a) ............................................................................................................ 26

Americans with Disabilities Act.......................................................................................... 2

Tex. Elec. Code
    § 1.022 ............................................................................................................ 23, 24
    § 31.001(a) .............................................................................................................. 4
    § 31.003 .................................................................................................................. 4
    § 33.001(a) .............................................................................................................. 4
    § 41.001 ................................................................................................................ 23
    §§ 43.002–43.004 .................................................................................................... 5
    § 52.002 .................................................................................................................. 6
    § 64.009 ............................................................................................................ 23, 24
    § 81.001 ................................................................................................................ 23
    § 82.002(a) ............................................................................................................ 23
    §§ 83.001–83.0012 .................................................................................................. 5
    § 85.005 .................................................................................................................. 5
    § 85.006(b) .............................................................................................................. 5
    § 85.006(e) .............................................................................................................. 5
    § 85.061(a) .............................................................................................................. 5
    § 86.001 ................................................................................................................ 21
    § 86.001(c) ........................................................................................................... 6, 7
    § 86.007(b) ............................................................................................................ 21
    § 86.011 ................................................................................................................ 21

**Other Authorities**

28 C.F.R. § 35.150 ............................................................................................................ 23

An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess.
    (2021) .................................................................................................................... 1

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 2

Tex. Const. art. IV, § 1 ...................................................................................................... 3

U.S. Const. art. III, § 2 .................................................................................................... 10

## INTRODUCTION

Houston Justice and their co-plaintiffs seek to set aside Texas's new voter integrity law. In their rush to get their Complaint out the door, however, Plaintiffs omitted key facts and details necessary to state a viable claim. First and foremost, instead of addressing sovereign immunity claim-by-claim and provision-by-provision, as Fifth Circuit precedent requires, Plaintiffs seem to take it for granted that the Governor, the Deputy Secretary of State, and the Attorney General (here, the "State Defendants") enforce all of Senate Bill 1 ("SB1").[1] In that regard, they appear to have sued the State Defendants just because they are the State's top officials rather than because the State Defendants have the requisite connection to the new law. Plaintiffs fail to identify specific provisions of SB1 that these defendants enforce, and how that enforcement causes their alleged injuries. Nor have they alleged facts showing that the State Defendants have taken some step to enforce the new rules.

The same is true with respect to standing. Fifth Circuit precedent instructs plaintiffs to plead standing claim-by-claim, and provision-by-provision. But the Plaintiffs do not attempt to comply with this requirement. Moreover, the Plaintiffs disregard well-established Fifth Circuit standards on associational and organizational standing. As to associational standing, the Entity Plaintiffs provide only cursory information on their members and membership structure, making it impossible to tell if they have members, much less if their members suffered a cognizable injury. And as to organizational standing, Plaintiffs fail to identify concrete interests that, if injured, would support Article III standing. Instead, they point to general social interests like increasing voter turnout or educating the public on SB1. But Fifth Circuit law rejects standing based on such abstract concerns. The Individual Plaintiff's alleged injury, meanwhile, is based on conjecture and subjective fear, which does not confer standing.

The defects in Plaintiffs' Complaint do not stop there. Their claims fail on the merits as well.

---

[1] Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021).

The plaintiffs cannot assert an Americans with Disabilities Act ("ADA") claim and a Rehabilitation Act claim without identifying particular voters with identified disabilities or establishing that a reasonable accommodation is unavailable, among other requirements (Counts 7 and 8). Additionally, the Plaintiffs' Voting Rights Act ("VRA") claims fail because they, as non-voters, do not have implied causes of action (Counts 1 and 6). Hence, the State Defendants respectfully request that the Court dismiss the claims against them, albeit leaving the plaintiffs free to file a more focused complaint if appropriate. *See* Fed. R. Civ. P. 12(b)(1). Or, if this Court reaches the merits, the Court should dismiss Counts 1 and 6–8 for the reasons explained below. *See* Fed. R. Civ. P. 12(b)(6).[2]

**ARGUMENT**

## I.    Plaintiffs Cannot Satisfy *Ex parte Young*

"[S]overeign immunity also prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, No. 20-50667, 2021 WL 2310010, at *2 (5th Cir. June 4, 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d

---

[2] Of course, the State Defendants believe Plaintiffs' other claims are meritless as well. But for the sake of judicial efficiency, the State Defendants will address those claims and other issues in subsequent motions, if necessary. *See* ECF 31, Order to Consolidate, *La Unión Del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR (W.D. Tex. Sept. 30, 2021).

2

168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). The plaintiffs here have failed to allege facts sufficient to invoke the *Ex parte Young* exception as to the State Defendants.[3]

### A.     Plaintiffs Cannot Sue the Governor

Sovereign immunity bars Plaintiffs' claims against the Governor because their Complaint fails to allege that the Governor plays any role in enforcing SB1's challenged provisions. Plaintiffs' only allegation plausibly relating to the Governor's authority is that he "is the chief executive officer of the State of Texas." ECF 1 ¶ 53 (citing Tex. Const. art. IV, § 1).[4] But "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

Plaintiffs cannot provide the "provision-by-provision analysis" that "is required." *Tex. Democratic Party*, 2021 WL 2310010, at *2. No provision of SB1 gives the Governor enforcement responsibilities. "If the official sued is not 'statutorily tasked with enforcing the challenged law,' the requisite connection is absent and '[the] *Young* analysis ends.'" *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 998), *vacated as moot*, *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *accord Tex. Democratic Party*, 961 F.3d at 401; *Sixth St. Bus. Partners LLC v. Abbott*, No. 1:20-cv-706-RP, 2020 WL 4274589, at *3–4 (W.D. Tex. July 24, 2020).

---

[3] The Complaint states that Counts 7 and 8 are "Against All Defendants" but is otherwise unclear about which State Defendants are parties to which claims.

[4] Citations to "ECF 1" refer to the complaint that the Houston Justice Plaintiffs filed in No. 5:21-cv-848 (W.D. Tex. Sept. 7, 2021) before the Court consolidated these cases.

### B.    Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Deputy Secretary

Sovereign immunity also precludes Plaintiffs' claims against the Deputy Secretary of State because he does not have a sufficient connection with enforcement of SB1's challenged provisions.[5] Plaintiffs are required to identify which SB1 provisions they challenge and explain how the Secretary enforces those provisions. But they do no such thing.

As a preliminary matter, Plaintiffs appear to cite the Deputy Secretary's status as the State's top election official as a reason why he is a proper defendant. They reference the Secretary's general authority under Texas Election Code §§ 33.001(a) and 31.003, alleging that the Secretary is "responsible for the administration and implementation of election laws in Texas, including 'ensuring the uniform application and interpretation of election laws throughout Texas.'"[6] ECF 1 ¶ 54. They also allude to the Secretary's responsibilities under § 31.004, which provides that the Secretary "shall assist and advise all election authorities with regard to the application, operation, and interpretation of this code." As Plaintiffs observe, that assistance often takes the form of "guidance" issued by the Secretary "on various election statutes and procedures." ECF 1 ¶ 54.

These allegations do not satisfy *Ex parte Young* because they do not "identify the Secretary's specific duties within the particular statutory provision" being challenged. *Hughs*, 2021 WL 2310010, at *2 (citing *Tex. Democratic Party*, 978 F.3d at 179–80). "[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party*, 961 F.3d at 400–01 (citing *Morris*, 739 F.3d at 746). The official must have "the authority to enforce" the law as well as the willingness to enforce the law in a way that would "constrain" the plaintiff. *City of Austin*, 943 F.3d

---

[5] At the time of filing this motion, the Deputy Secretary is performing the Secretary's duties due to a vacancy.

[6] The plaintiffs are correct that Texas Election Code § 31.001(a) designates the Secretary as "the chief election officer of the state," but it does not recite that he is tasked with "ensuring the uniform application and interpretation of elections laws throughout Texas" as indicated by the quotation in the plaintiffs' complaint. *See* ECF 1 ¶ 54.

at 1001–02. Yet a *general* duty is all that the Plaintiffs allege. These provisions contain no specific enforcement obligation, let alone a specific obligation related to SB1. *See Tex. Democratic Party*, 2021 WL 2310010, at *2 ("[I]n the particular context of Texas elections, . . . the Secretary's role varies, so" Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue) (citing *Tex. Democratic Party*, 978 F.3d at 179–80). Citing those general statutes does not suffice.

Thus, applying *Ex parte Young* principles here, Plaintiffs' claims against the Deputy Secretary should be dismissed. Plaintiffs challenge numerous provisions of SB1, but Plaintiffs do not include in their Complaint any allegations connecting the Secretary's duties to the provisions' enforcement, much less any allegations that the Secretary has "taken some step to enforce" the new rules. *Tex. Democratic Party*, 961 F.3d at 401. Indeed, Plaintiffs make no mention of the Secretary's alleged role in enforcing SB1 at all except in their paragraph introducing that party, which only references the Secretary's general powers. And without a "provision-by-provision analysis," Plaintiffs cannot carry their burden. *Tex. Democratic Party*, 2021 WL 2310010, at *2.

However, even if Plaintiffs had tried to connect the SB1 provisions they challenge to the Deputy Secretary, they would have failed. For example, §§ 3.09, 3.10 and 3.12 in SB 1 amend Texas Election Code §§ 85.005, 85.006(b) and (e), and 85.061(a), respectively, and the early voting clerk enforces those provisions. *See* Tex. Elec. Code §§ 83.001–83.0012 (identifying whom is the early voting clerk and specifying that "[t]he early voting clerk shall conduct the early voting in each election") and 85.005, 85.006(b), 85.006(e), 85.061(a) (specifying how the early voting clerk shall conduct early voting in certain elections). Sections 3.04 and 3.13 in SB1 include amendments relating to the location of polling places, but the Secretary does not designate polling locations. *See Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291(5th Cir. 2021) (finding that "[t]he Secretary plays no role"); *see also* Tex. Elec. Code §§ 43.002–43.004 (assigning responsibility for designating polling locations to local officials). Section 3.15, meanwhile, makes changes to how voting system ballots are arranged, but ballots are not

prepared by the Secretary. Tex. Elec. Code § 52.002 (assigning ballot-preparation responsibility to local officials).

The Secretary also does not enforce the challenged provisions relating to watchers, that is, §§ 4.01–4.04, 4.06, 4.07, 4.09, 4.12. Two of these provisions, §§ 4.02 and 4.03, create no legal requirements. The others specify no enforcement role for the Secretary. Section 4.04 requires that the Secretary "develop and maintain a training program for watchers," but Plaintiffs have not explained how providing online training and a certification of completion to watchers has any relation to the harm they allege. *See Mi Familia Vota*, 977 F.3d at 465 (explaining that the Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek").

Finally, the Secretary's alleged role in enforcing the remaining challenged provisions in a way that results in the alleged harm is unclear and not found anywhere in Plaintiffs' Complaint. Plaintiffs' challenge provisions relating to requirements for early voting ballot applications (§ 5.02), completion of certain forms (§§ 6.01, 6.03, 6.05), and taking an oath (§ 6.04). ECF 1 ¶¶ 9–10, 172–74, 240, 251. The early voting clerk, not the Secretary enforces the ballot application requirements of § 5.02. Tex. Elec. Code § 86.001(c). An election officer enforces § 6.01 by providing the required form. *Id.* § 64.009(f). SB1 does not delegate authority to the Secretary to enforce compliance should an individual fail to provide the information or oath required by the other challenged provisions. *See id.* § 64.0322, 64.034, 86.010, 86.013, 276.015–.019.

In sum, Plaintiffs have not identified a sufficient connection between SB1 and the Secretary sufficient to overcome the Secretary's immunity. Plaintiffs' claims against the Deputy Secretary fail.

## C.    The Attorney General Is Also Immune

Sovereign immunity also bars Plaintiffs' claims against the Attorney General. Though Plaintiffs challenge numerous SB1 provisions, Plaintiffs do not allege the Attorney General's role in enforcing

any of them. Instead, Plaintiffs point to the Attorney General's "authority to investigate and prosecute election offenses statewide." ECF 1 ¶ 55. Again, allegations that the Attorney General has a general duty to enforce state laws, *id.*, is not enough to satisfy *Ex parte Young. See Tex. Democratic Party*, 961 F.3d at 401–02. A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each challenged provision. *Tex. Democratic Party*, 2021 WL 2310010, at *2. For this reason, Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant for challenges to any other provision. Their claims fail out of the gate, and there is no need to proceed to the next step in the analysis.

But if the Court reaches the second step, "the mere fact that the Attorney General *has* the authority to enforce" a challenged law is not enough. *City of Austin*, 943 F.3d at 1001. Plaintiffs must allege that "he is likely to" injure them by enforcing the challenged statute "here." *Id.* at 1002. In other words, they must show that the Attorney General has not only "the particular duty to enforce the statute in question" but also "a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). According to the Fifth Circuit, this can be accomplished if a state official has "taken some step to enforce" the new rules. *Tex. Democratic Party*, 961 F.3d at 401. But in this case, Plaintiffs' only allegation is that the Attorney General has prosecuted a few instances of voter fraud under a separate statute.

No doubt, the Attorney General is committed to satisfying his constitutional and statutory obligations, including enforcing election laws where he has that power and where appropriate. Still, "that he has chosen to" enforce "*different* statutes under *different* circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. Hence, Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that violate federal law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*,

547 U.S. 250, 263 (2006).

Besides, most of the provisions challenged in Plaintiffs' Complaint are enforced by local officials, not the Attorney General. Sovereign immunity bars the plaintiffs' claims against the Attorney General based on those provisions as well. *See In re Abbott*, 956 F.3d at 709

### D.      Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity

Sovereign immunity bars Plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the reasons above, and Plaintiffs have not pleaded waiver or abrogation by Congress that would permit their claims to proceed. And if they had tried, they would have been wrong.

For Counts 2–5, "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). With respect to Plaintiffs' ADA claim in Count 7, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. Plaintiffs have not alleged conduct violating Title II, *see infra* Part III.A, so State Defendants are entitled to sovereign immunity on Count 7. Count 8 asserts assert claims under the Rehabilitation Act. Although a defendant can "waive[] sovereign immunity under § 504 of the Rehabilitation Act," plaintiffs plead no plausible facts

to show such waiver.[7] *Block*, 952 F.3d at 619.

As to Counts 1 and 6, although *OCA-Greater Houston* holds that the Voting Rights Act abrogates sovereign immunity, that case was wrongly decided. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nevertheless, to the extent this Court is bound by *OCA-Greater Houston*, that decision does not relieve Plaintiffs of their burden to show Article III standing. As explained below, because the State Defendants do not enforce the challenged provisions, plaintiffs cannot show traceability or redressability.

## II.    Plaintiffs Lack Standing

Neither the Entity Plaintiffs nor the Individual Plaintiff have alleged sufficient facts to demonstrate standing.

### A.    Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing

---

[7] In regards to Counts 7 and 8, Plaintiffs complain about local noncompliance with the ADA and the Rehabilitation Act, neither of which are election laws. Recognizing this distinction, the Fifth Circuit has already held "that the ADA is not an election law" that could trigger the Secretary's limited powers. *Lighthourn v. County of El Paso,* 118 F.3d 421, 430 (5th Cir. 1997).

and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue. *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

### B.       Plaintiffs Have Not Plausibly Alleged Traceability or Redressability

As an initial matter, Plaintiffs lack standing because their alleged harms are not traceable to or redressable by the State Defendants. By and large, Plaintiffs broadly challenge the entirety of SB1, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have a broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

### C.       No Plaintiff Has Associational Standing

The Complaint does not plausibly allege facts establishing associational standing. A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III

standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. The plaintiff must therefore make two threshold showings: (1) that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (requiring "indicia of membership"), and (2) that it has identified members who have "suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Plaintiffs here have done neither.

First, Plaintiffs have not alleged facts establishing that they have "members" under the *Hunt* test. Plaintiff Houston Justice does not describe itself as having members. It instead describes itself as a nonpartisan, nonprofit organization that engages in advocacy. ECF 1 ¶ 29. Plaintiff HAUL, meanwhile, mentions "community members," ECF 1 ¶¶ 33–35, but the term appears to refer to HAUL's constituents and clients.  To be sure, both entities claim to work on behalf of various Texas communities, *id.*, but the beneficiaries of a plaintiff's services do not qualify as members for purposes of associational standing. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[T]he Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization."). The lack of members is fatal to associational standing.

The remaining Entity Plaintiffs plainly assert that they have members, at least in the colloquial sense, but they fail to allege that their purported members "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D.

Tex. Jan. 22, 2014) (Rodriguez, J.). Of the Entity Plaintiffs, only The Arc of Texas states that members "inform the organization's policies," but it fails to plead any of the other factors. ECF 1 ¶ 43. The other Entity Plaintiffs allege no facts pertaining to the *Hunt* test whatsoever.

Second, even assuming the Entity Plaintiffs have members, they have failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. Plaintiffs do not allege that the only individual identified in the Complaint, Jeffrey Lamar Clemmons, is a member of the Entity Plaintiffs, even as the Complaint identifies other organizations of which he is a part. *See* ECF 1 ¶ 52. This defect, on its own, is sufficient to support dismissal. *See, e.g., Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[8]

Finally, even if Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claims: Count 6 under Section 208 of the VRA, Count 7 under the ADA, and Count 8 under Rehabilitation Act. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. UIL* 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized

---

[8] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that. In any event, if Plaintiffs did not have to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021). The content of those factual allegations would vary depending on the claim raised, but they should at minimum describe the activity in which the member wishes to perform, the member's eligibility to participate in the activity if relevant, and the specific burden the challenged provision imposes on the member.

element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, Plaintiffs' disability claims require the participation of individual members, both because they have individualized elements and because of the relief requested. For example, "to prevail on a claim of disability discrimination under the ADA, a party must prove that he has a disability," *Neely v. PSEG Tex., LP*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted), and that the disability "substantially limits an individual in a major life activity." *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (per curiam); *see also Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (As to § 208, considering the specific effect of Texas early voting law on group of elderly plaintiffs). This requires "a case-by-case analysis" of plaintiff-specific facts and circumstances. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 369 (5th Cir. 2012) (per curiam). Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of disability claims.

### D.    None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury

The Entity Plaintiffs have not plausibly alleged that they, as organizations, will suffer injuries in fact. They therefore lack organizational standing.

*Houston Justice:* In the Complaint, Plaintiff Houston Justice only identifies a single injury that it will supposedly suffer as a result of SB1. Specifically, it claims that by prohibiting public officials from authorizing funds to facilitate third-party distribution of applications to vote by mail, SB1 will frustrate Houston Justice's work with the Harris County Jail and force Houston Justice to divert time, money and resources from its other activities. ECF 1 ¶ 31. As an initial matter, even if this claim qualified as an injury in-fact—it does not—Houston Justice would only have standing to challenge the provision

in § 7.04 that barred the use of public funds. *See In re Gee*, 941 F.3d at 165 (requiring "provision-by-provision" analysis). Houston Justice, however, failed to allege that it currently receives, or likely would have received but for SB1, public funds for the purpose of distributing mail-in ballot applications. Hence, based on the facts asserted, it is entirely speculative that SB1 caused Houston Justice harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (requiring that a future injury be "certainly-impending").

In addition, though the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). In other words, the challenged conduct must make the entity's "activities more difficult" and constitute "a direct conflict" with its mission. *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). Here, Houston Justice states that § 7.04 will impair its work delivering applications to eligible voters in the Harris County Jail, but it fails to state any facts establishing "a real and immediate threat" that such an impediment will actually occur. *Machete Productions, LLC v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011)). Nor has Houston Justice "explained how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities.'" *Def. Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238). Any alleged harm therefore remains "conjectural or hypothetical" rather than "actual or imminent." *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (citing *Lujan*, 504 U.S. at 560).

*HAUL*: Plaintiff HAUL does not claim to be "the object of the government action or inaction [it] challenges," making it "substantially more difficult to establish" an injury in-fact. *Lujan*, 504 U.S. at 562 (quotation omitted). Instead, HAUL alleges harm under a diversion-of-resources theory, but it

too fails to identify an imminent and cognizable injury the expenditure was designed to combat. *See City of Kyle*, 626 F.3d at 238–39. First, HAUL claims that SB1 hinders its "ability to enable its Black and Latino membership base . . . to vote." ECF 1 ¶ 35. But HAUL does not specify how SB1 makes *its* activities more difficult. *Nat'l Treasury Emps. Union*, 101 F.3d at 1430. In any event, an organization's "abstract social interest in maximizing voter turnout . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). Second, HAUL clams it will need "to retrain and educate their large constituencies" on the new procedures and requirements. ECF 1 ¶ 35. But a "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Third, HAUL states it will need to provide assistance to its constituents to ensure that they avoid civil and criminal penalties. However, even assuming *arguendo* that the regulation of third-parties could confer on HAUL standing, HAUL has not established through its pleadings "a real and immediate threat" that HAUL's constituents will face prosecution, *Machete Productions*, 809 F.3d at 288, or alleged any "imminent" and "certainly impending" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. HAUL's assertion that it will have to increase its Get Out The Vote work is a reiteration of its diversion of resources claim and falls short of being an injury in-fact for the same reason.

*Delta Sigma Theta*: Plaintiff Delta Sigma Theta claims that SB1 "makes it substantially more difficult for the Deltas to engage in their civic engagement mission." ECF 1 ¶ 42. However, of the provisions Delta Sigma Theta alludes to, only the handful dealing with voter assistance could conceivably regulate the organization's activities. The rest concern SB1's potential effect on third-parties not before this Court. A plaintiff's speculative belief about the reactions of third parties to a challenged law cannot support standing, both because it is based on "conjecture" and because it is "based on third parties' subjective fear." *Clapper*, 568 U.S. at 417 n.7. Hence, Delta Sigma Theta cannot

invoke the jurisdiction of this Court with respect to these provisions. Furthermore, even if some other civic group has standing to challenge the voter assistance provisions, Delta Sigma Theta does not. This is because Plaintiffs' complaint fails to establish that Delta Sigma Theta will engage in such activities going forward. "[E]vidence that a plaintiff has taken an action in the past does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future; there must be some evidence that the plaintiff intends to take the action again." *See Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019).

The only other harm Delta Sigma Theta claims that it will suffer is a diversion of resources, but like the other Entity Plaintiffs, Delta Sigma Theta has yet to identify an imminent and cognizable injury the expenditure was designed to prevent. The first reason Delta Sigma Theta gives falls flat because teaching third parties about the law is not, on its own, an injury in-fact. *See Nat'l Taxpayers Union*, 68 F.3d at 1434. The second reason—responding to how these changes "will affect [its] members' ability to engage in voter registration and voter assistance"—fails because, again, Delta Sigma Theta does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. Also, Delta Sigma Theta has not identified 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed*, 2018 WL 3614221, at *4 (quoting *City of Kyle*, 626 F.3d at 238). That omission represents an independent reason why Delta Sigma Theta's claims should be dismissed.

*The Arc of Texas*: The Complaint does not state whether Plaintiff The Arc of Texas engages in conduct that makes it a direct object of SB1. Not all forms of voter assistance are covered by the statute, and The Arc of Texas only makes a general assertion that its local affiliates in the past have helped people with disabilities register to vote and travel to the polls. ECF 1 ¶ 45. Relatedly, The Arc of Texas does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters in an upcoming election. *Clapper*, 568 U.S. at 409. To support prospective relief,

"there must be some evidence that the plaintiff intends to take the action again." *See Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). The Arc of Texas, however, only references in vague terms its past election work.

The Arc of Texas claims that it will have to "expend more time, money, and resources on its efforts to educate and assist voters as describe above." ECF 1 ¶ 51. But, as previously explained, expenditure spent towards education does not constitute an injury in-fact. *See Nat'l Taxpayers Union*, 68 F.3d at 1434. And The Arc of Texas does not explain how SB1 will make *its* activities more difficult or which of the provisions will do so. *See Nat'l Treasury Emps. Union*, 101 F.3d at 1430. According to the Complaint, "[v]oter education is included in every training The Arc of Texas does, regardless of topic." ECF 1 ¶ 49. It is therefore not clear "how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities.'" *Def. Distributed*, 2018 WL 3614221, at *4 (quoting *City of Kyle*, 626 F.3d at 238).

Finally, The Arc of Texas claims SB1 will deny or interfere with its members' right to vote, but SB1's impact on members relates to associational standing. It does not confer on The Arc of Texas standing in its own right. This is true even if SB1's effects are at odds with The Arc of Texas's mission. "[T]hat an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *ACORN v. Fowler*, 178 F.3d 350, 362 n.7 (5th Cir. 1999). A plaintiff must also allege facts showing that the contested law restricts the plaintiff's own activities. The Arc of Texas has not done so here. Its claims should be dismissed.

### E.   The Entity Plaintiffs Violate the Bar on Third-Party Standing

Finally, the Entity Plaintiffs lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. The same is true for Plaintiffs' other causes of action. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v.*

*Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the Entity Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right not to be discriminated against based on a disability). Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

### F.    The Individual Plaintiff Is Also Not Injured

The Individual Plaintiff, Jeffery Lamar Clemmons, does not assert in the Complaint an intention to vote in an upcoming election. Indeed, he does not claim to be injured at all in his capacity as a voter. Clemmons instead characterizes his injury as "having grave concerns about continuing to serve as an election judge" because "he *could* face criminal penalties," ECF 1 ¶ 52 (emphasis added). He "fears" that SB1 "*could expose* [him] to criminal liability" and that he "*may be* subjected to arbitrary enforcement." *Id.* ¶ 236. To the extent Clemmons has alleged an injury in-fact, standing would be limited to the specific provisions that expose Clemmons to criminal liability. *See In re Gee*, 941 F.3d at 165 (requiring "provision-by-provision" analysis). He has no basis to challenge any other section of the law.

Clemmons, however, has not pleaded a cognizable injury. The Supreme Court has "repeatedly reiterated that a 'threatened injury must be *certainly impending* to constitute injury in fact,'"— "'[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2). To obtain standing, Clemmons would have to allege specific facts showing that he: (1) intends to volunteer as election judge in an upcoming contest; (2) that Clemmons would be placed in a position where he felt obligated to obstruct a poll watcher; and (3) that Clemmons would act in violation of the law should those circumstances arise. Clemmons has made no such allegations.

"Subjective fear . . . does not give rise to standing." *Clapper*, 568 U.S. at 418.

### III.   Plaintiffs' Claims Fail as a Matter of Law

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims that fail as a matter of law.

### A.   Plaintiffs Failed to State a Claim under the ADA and Rehabilitation Act

The Court should dismiss Count 7 and 8 because Plaintiffs have not stated an ADA claim or a Rehabilitation Act claim. The ADA requires a plaintiff to plausibly allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (per curiam) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)). The Rehabilitation Act has the same requirements, except it is stricter in two respects. First, the causation requirement is more demanding. The exclusion, denial, or discrimination must be "solely by reason" of plaintiff's disability." *Cadena v. El Paso County*, 946 F.3d 717, 723 n. 1 (5th Cir. 2020). Second, the Rehabilitation Act requires "that the specific program or activity with which [the plaintiff is] involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427.

In this case, Plaintiffs did not plausibly allege that they are disabled, that State Defendants provide the relevant service, that SB1 will prevent them from receiving assistance, that reasonable accommodations are unavailable, or that State Defendants receive federal assistance.

### 1.   Plaintiffs Do Not Allege a Qualifying Disability

As an initial matter, Plaintiffs do not have qualifying disabilities. Most of the Plaintiffs in this case are artificial entities that could not be disabled. *See* ECF 1 ¶¶ 29–51. The only individual Plaintiff does not allege that he intends to vote or is disabled and has asserted no injury in his capacity as a voter. *See id.* ¶ 52.

Two of the Entity Plaintiffs—HAUL and The Arc of Texas—claim to have disabled members and/or constituents, *see* ECF 1 ¶¶ 32–35, 43–51, but that does not help them here. Plaintiffs attempt to litigate the ADA rights of third parties despite "[t]he prohibition on third-party standing." *Sims v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 4:05-cv-2842, 2005 WL 3132184, at *4 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) (dismissing ADA and Rehabilitation Act claims); *see also Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016–17 (N.D. Ill. 2002) (dismissing an ADA claim for lack of third-party standing). Claims to third-party standing are even weaker where, as here, the plaintiff's allegations do not tie the claim to "any identifiable individual" with a disability. *Sims*, 2005 WL 3132184, at *5.

Even if HAUL and The Arc of Texas could litigate the ADA rights of identified members, they have not plausibly alleged facts establishing a qualifying disability for those members. Their conclusory assertions that their members include "individuals with disabilities within the meaning of the ADA" do not suffice. ECF 1 ¶ 246. Even at the pleading stage, "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleading a qualifying disability requires alleging "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale*, 642 F.3d at 499–500. Because no Plaintiff has "alleged any facts displaying what her disability is or how her disability substantially limits one of her major life activities," the Court should dismiss Counts 7 and 8. *Houston v. DTN Operating Co., LLC*, No. 4:17-cv-35, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017); *see also Payne v. Midcrown Pavilion Apartments*, No. SA-19-cv-407-FB, 2021 WL 3813378, at *12 (W.D. Tex. Aug. 26, 2021) (recommending dismissal because the complaint alleged "no medical facts" showing "that Mr. Payne is disabled under . . . the ADA").

Even if the Court finds HAUL and The Arc of Texas allegations sufficient (it should not), State Defendants respectfully request that the Court at least dismiss Counts 7 and 8 a as to the three

Plaintiffs who do not claim to be disabled or have disabled members: Houston Justice, Delta Sigma Theta, and Clemmons.

### 2. Defendants Do Not Administer Elections

Plaintiffs' ADA and Rehabilitation claims also fail for an independent reason: They have not plausibly alleged a "service[], program[], or activit[y] for which the public entity is responsible." *Hale*, 642 F.3d at 499. Plaintiffs allege that "[v]oting" is the relevant "activity," ECF 1 ¶ 47, but they do not allege that the Governor, the Deputy Secretary, or the Attorney General are responsible for voting. Plaintiffs' claim fails as a matter of law because it does not allege that voting is "provided by" State Defendants. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

The Fifth Circuit's opinion in *Ivy v. Williams* illuminates the "provided by" standard. 781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). There, the Fifth Circuit held that plaintiffs could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." *Id.* at 258. TEA did not teach driver education. *Id.* at 255. That TEA "provides the licensure and regulation of driving education schools" did not mean it also provides "driver education itself." *Id.* "[H]eavy regulation" and the provision of "sample course materials and blank certificates" to schools were not enough to say that TEA itself provided the educational service provided by the schools.

The same logic applies here. In general, local election officials administer Texas elections. They receive and review ballot applications, Tex. Elec. Code § 86.001, mail carrier and ballot envelopes to voters, *id.* § 86.002, receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011, verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2), and count the results, *id.* § 87.061. State Defendants do not share those responsibilities. *See Lightbourn*, 118 F.3d at 428 n.7 (noting that the "state's 3,000 or so political subdivisions run general and special elections").

In substance, Plaintiffs would impose supervisory liability on the State Defendants. But the

Fifth Circuit rejected that tactic in *Lightbourn,* 118 F.3d 421.. There, blind and mobility-impaired plaintiffs sued the Secretary of State because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Id.* at 423–24. The district court had held that the Secretary had a positive obligation to ensure that local election authorities complied with the ADA—one that the Secretary had violated, it concluded, by failing to encourage the development and adoption of new voting systems. Reversing the district court, the Fifth Circuit held that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (holding that the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA").

In reaching that decision, the Fifth Circuit analyzed the Secretary's legal obligations. First, many provisions in the Election Code "give discretion to the Secretary to take some action," but "[p]rovisions merely authorizing the Secretary to take some action do not confer a legal duty on [her] to take the contemplated action." *Id.* at 429. Second, although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance with the ADA. *Id.* Much less could the Governor or Attorney General be responsible for local election officials' compliance with the ADA.

### 3.     Texas Law Does Not Discriminate Against Disabled Voters

The ADA does not apply unless the relevant exclusion, denial, or discrimination is "by reason of [the plaintiff's] disability." 42 U.S.C. § 12132. Here, Plaintiffs have not identified any provision of SB1 that discriminates against voters with disabilities. Plaintiffs are not "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020).

In fact, state law expressly prohibits elections officials from interpreting any provision of the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from

requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

Texans with disabilities have multiple options to vote: (1) voting in a polling place during early voting, (2) curbside voting during early voting, (3) voting in a polling place on Election Day, (4) curbside voting on Election Day, and (5) voting by mail. *See* Tex. Elec. Code §§ 41.001, 64.009, 81.001, 82.002(a). These are the same options offered to other voters, except that voters without disabilities may not be eligible for curbside voting or voting by mail. *See id.* §§ 64.009, 82.002(a).

Texas's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [relevant jurisdiction], as well as its alternative and absentee ballot programs." *Kerrigan v. Phila. Bd. of Election*, No. 2:07-cv-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (explaining that "service, program, or activity, when viewed in its entirety" must be accessible but that a public entity does not necessarily need to "make each of its existing facilities accessible") (emphases added).

Plaintiffs suggest that SB1 will make it harder for disabled voters to get necessary assistance and access the early application process, ECF 1 ¶ 172–73 , but they do not allege getting appropriate assistance will be impossible. Nor do they allege that any particular voter will be unable to vote.

"[T]here are no allegations that permit the inference that [any] decision" under SB1 "was made because of [a Plaintiff's] disability status." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417–18 (5th Cir. 2021). "[A] conclusory allegation that" Defendants "discriminated against [Plaintiffs] based on [a] disability" does not satisfy "the Rule 8 pleading standard." *Olivarez v. T-Mobile USA, Inc.*, No. 20-20463, 2021 WL 1945680 (5th Cir. May 14, 2021).

### 4.    Texas Already Provides Reasonable Accommodations

To the extent Plaintiffs raise a failure-to-accommodate theory, it fails because Plaintiffs have

not plausibly alleged that Texas has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law provides numerous accommodations for disabled voters. Texas law guarantees that they can request a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that they are entitled to request under federal or state law. Tex. Elec. Code § 1.022.

Moreover, Texas law also ensures accommodations will be made for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *Id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

Plaintiffs do not allege any problems with these accommodations, but even if they do not match Plaintiffs' preferences perfectly, they still offer disabled voters meaningful opportunities to vote. That is enough under federal law. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that a reasonable accommodation must give qualified individuals "meaningful access"); *Cadena*, 946 F.3d at 725 (stating that qualified individuals have a right to "meaningful access").

### B.  Plaintiffs Lack a Private Cause of Action for Their VRA Claims

Plaintiffs have not identified any private cause of action allowing them to sue under the VRA. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–

87.

To be sure, federal courts have not always followed that strict approach. There was a time when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). That time has passed. Since jettisoning the "*ancien regime*," *id.* at 1855, the Supreme Court has "not returned to it." *Sandoval*, 532 U.S. at 287; *see also Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (rejecting reliance "on pre-*Sandoval* reasoning").

1.    **Section 208 Does Not Create a Private Cause of Action for These Plaintiffs**

In Count 6, Plaintiffs rely on Section 208 of the Voting Rights Act, *see* ECF 1 ¶¶ 238–40, but that statute does not create a private cause of action. Plaintiffs do not have an express cause of action, and they do not contend otherwise. Plaintiffs presumably rely on an implied cause of action, but that does not work either.

First, Section 208 does not confer any private rights on Plaintiffs. Assuming *arguendo* that the statute creates any rights at all, it does so for certain "voter[s] who require[] assistance." 52 U.S.C. § 10508. The statute does not create any rights in non-voting entities like Plaintiffs. As explained above, the Court should not expand "the scope of [an] implied right" from one type of plaintiff to another. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

Second, Section 208 does not create a private remedy. Where such a remedy is absent, federal courts must not imply one: "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

Section 208 is enforced through other mechanisms. For example, the VRA requires "[t]he chief election officer of each State" to "provide public notice . . . of the availability of . . . assistance under section [208]," 52 U.S.C. § 20104(c), and failure to do so is remediable through a public or

private cause of action. The statute expressly authorizes "the United States Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104 to "bring an action for declaratory or injunctive relief." *Id.* § 20105(a). Congress limited such causes of action by requiring pre-suit notice and forbidding fee-shifting. *See id.* § 20105(b)–(c). The congressional scheme ensures that voters are aware of their options under Section 208, which enables them to assert any alleged rights when voting and rely on such alleged rights as defenses to any actions brought against them. The existence of this enforcement scheme "suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Inferring a private remedy would be especially inappropriate in light of the detailed enforcement provisions that Congress provided elsewhere in the VRA, none of which authorize this suit. *See, e.g.*, 52 U.S.C. §§ 10308(d), 10504, 20105(a). Considering "the statute Congress has passed," there is no evidence of legislative intent to create a private right of action to enforce Section 208. *Sandoval*, 532 U.S. at 286. Accordingly, the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Finally, even if Section 208 created a private cause of action for these Plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. Section 208 focuses on the operation of a polling place, a function performed by local officials, not state officials. *See* 52 U.S.C. 10508. Thus, any private cause of action should be limited to local defendants, not state defendants. Courts inferring a cause of action against one type of defendant do not necessarily extend that cause of action to other types of defendants. In *Jett v. Dallas Indep Sch. Dist.*, a pre-*Sandoval* case that acknowledged an implied cause of action against private defendants, the Supreme Court refused to apply that cause of action "in the context of . . . 'state action.'" 491 U.S. 701, 731 (1989). Similarly, in *Ysleta Del Sur Pueblo v. Laney*, the Fifth Circuit declined to apply an implied cause of action against state officials when "[t]he statute could easily be determined to provide . . . an

implied private cause of action against any party other than a state." 199 F.3d 281, 287 (5th Cir. 2000) (criticizing the plaintiff's "fatal logical leap"). Here, there is no indication, much less a "clear statement," that Congress created a private cause of action against the State or its officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

The only case State Defendants have found expressly recognizing a private cause of action to enforce Section 208 is not persuasive. The Western District of Arkansas recently concluded that Section 3 of the Voting Rights Act "explicitly creates a private right of action" to enforce Section 208. *Arkansas United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021) (citing 52 U.S.C. § 10302). But Section 3 does not create a cause of action at all. It merely establishes procedural options applicable "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(c); *cf. id.* § 10308(d) (creating a cause of action for the Attorney General but not for violations of Section 208).[9]

Even if Section 3 did create a cause of action, it would not apply here. Count 6 does not allege a violation "of the fourteenth or fifteenth amendment." *Id.* It alleges a violation of Section 208 of the Voting Rights Act, which goes well beyond constitutional requirements. *See* ECF 1 ¶¶ 213–16. As this Court has previously held, "§ 3(c) requires . . . violations of the Fourteenth or Fifteenth Amendments." *Perez v. Abbott*, 390 F. Supp. 3d 803, 813 (W.D. Tex. 2019) (three-judge district court) (Rodriguez, J.); *cf. Thomas v. Reeves*, 961 F.3d 800, 828 n.1 (5th Cir. 2020) (Oldham, J., concurring) (explaining that plaintiffs bringing a VRA suit cannot recover fees under a VRA fees provision that "applies only in an 'action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment'" because they "forswore any relief under the Constitution").

---

[9] Some cases have ruled on a Section 208 claim without considering whether the plaintiffs had a private cause of action. *See, e.g.*, *OCA-Greater Hous.*, 867 F.3d at 607. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

### 2.   Section 2 Also Does Not Create a Private Cause of Action

Under *Sandoval*, Plaintiffs do not have an implied cause of action for Count 1 either. Whether "the Voting Rights Act furnishes an implied cause of action under § 2" is "an open question" *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring), but it should be answered in the negative. Even if an implied cause of action exists, however, it does not extend to non-voters, like Plaintiffs here.

First, Section 2 contains no indication that Congress intended to create a private right for non-voters. The statute's text is focused on the governmental officials it regulates: "No voting qualification or prerequisite to voting or standard, practice, or procedure s*hall be imposed or applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a) (emphasis added). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). Section 2 "is framed in terms of the obligations imposed on the regulated party" (government officials) while voters are "referenced only as an object of that obligation." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam). Non-voters like the Entity Plaintiffs are not mentioned at all. Section 2 therefore does not confer rights on Plaintiffs "in clear and unambiguous terms." *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009) (quotation omitted).

Second, Section 2 does not create private remedies for non-voters. Instead, Congress authorized civil and criminal enforcement actions by the federal government. *See* 52 U.S.C. § 10308(d). "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Even pre-*Sandoval* precedent does not help Plaintiffs. In *Allen v. State Bd. of Elections*, the Supreme Court held that Section 5 of the Voting Rights Act created a private cause of action, but that decision did not analyze Section 2 or non-voters. *See* 393 U.S. 544, 557 (1969). The Court relied on the fact that Section 5 was "passed to protect a class of citizens," that is, voters. *Id.* Of course, *Sandoval* abandoned that loose, legislative-history-based approach. *See Sandoval*, 532 U.S. at 287. Indeed, the Supreme Court itself recognized as much when it listed *Allen* as an example of the now-abandoned "*ancien regime.*" *Abbasi*, 137 S. Ct. at 1855. But even under *Allen*'s approach, there is no reason to think Congress "passed [Section 2] to protect" non-voters.

## CONCLUSION

Defendants respectfully request that the Court dismiss the claims against them.

Date: October 25, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*\*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 25, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN