# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> JOSE A. ESPARZA, *et al,*. <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al.,* <br>     *Plaintiffs*, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *et al.*, <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, *et al.*, <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-0920-XR |

## MOTION TO DISMISS THE COMPLAINT OF MI FAMILIA VOTA ET AL.

TABLE OF CONTENTS

Table of Contents ..........................................................................................................................ii

Introduction ...................................................................................................................................1

Argument .......................................................................................................................................2

    I.    Plaintiffs cannot satisfy *Ex parte Young.* .......................................................................2

        A.    Plaintiffs cannot sue the Governor. .......................................................................3

        B.    Plaintiffs have not plausibly alleged an enforcement role for the Deputy Secretary. .........3

        C.    The Attorney General is also immune. ..................................................................5

        D.    Plaintiffs do not plead an alternative exception to sovereign immunity.............................6

    II.    Plaintiffs Lack Standing............................................................................................7

        A.    Plaintiffs have not plausibly alleged traceability or redressability. ........................8

        B.    MFV lacks associational standing. .........................................................................8

        C.    MFV lacks organizational standing. .......................................................................9

        D.    MFV lacks statutory standing.................................................................................10

        E.    The Individual Plaintiffs lack standing..................................................................11

    III.    Plaintiffs' Claims Fail as a Matter of Law ............................................................12

        A.    The First Amendment does not apply to Plaintiffs' claims. ...............................12

        B.    Senate Bill 1 does not intentionally discriminate based upon race. ...................15

        C.    Plaintiffs lack a private cause of action for their VRA claims. ...........................16

            1.    Section 2 does not create a private cause of action for non-voters................................17

            2.    Section 208 does not create a private cause of action for these plaintiffs.....................18

Conclusion ...................................................................................................................................21

**Table of Authorities**

**Page(s)**

**Cases**

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020)................................................................................3, 5

*Ala. State Conference of the NAACP v. Alabama*,
    949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting).........................................7

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)................................................................16, 17, 18, 19

*Allen v. State Bd. of Elections*................................................................................18

*Arkansas United v. Thurston*,
    517 F. Supp. 3d 777 (W.D. Ark. 2021) ...............................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................16

*Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Mental Retardation Ctr.
    Bd. of Trs.*,
    19 F.3d 241 (5th Cir. 1994)....................................................................9

*Ass'n of Am. Physicians & Surgeons, Inc. v. HHS*,
    224 F. Supp. 2d 1115 (S.D. Tex. 2002), *aff'd*, 67 F. App'x 253 (5th Cir. 2003) (per
    curiam) .......................................................................................11

*Barker v. Halliburton Co.*,
    645 F.3d 297 (5th Cir. 2011)....................................................................10

*Brnovich v. Democratic Nat'l Comm.*,
    141 S. Ct. 2321 (2021) (Gorsuch, J., concurring) ...............................................17

*California v. Sierra Club*,
    451 U.S. 287, 297 (1981) ......................................................................18

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019)..............................................................*passim*

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..........................................................................10, 11

*Clark v. Cmty. for Creative Non-Violence*,
    468 U.S. 288 (1984)..........................................................................12, 13

*Conservation Force v. Delta Air Lines, Inc.*,
190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam) ..............................................................................................................................17

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) ..........................................................................................10

*Ctr. for Biological Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019)...............................................................................................8

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011)..............................................................................................10

*Davis v. United States*,
597 F.3d 646 (5th Cir. 2009)................................................................................................2

*Def. Distributed v. U.S. Dep't of State*,
No. 1:15-cv-372, 2018 WL 3614221 (W.D. Tex. July 27, 2018) .......................................10

*Delancey v. City of Austin*,
570 F.3d 590 (5th Cir. 2009)..............................................................................................17

*Democratic Nat'l Comm. v. Reagan*,
329 F. Supp. 3d 824 (D. Ariz. 2018), *aff'd*, 904 F.3d 686 (9th Cir. 2018), *rev'd and remanded on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc) ......................................................................................................14

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008)................................................................................................9

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2016) (Souter, J.)................................................................................9

*Fair Elections Ohio v. Husted*,
770 F.3d 456 (6th Cir. 2014)..............................................................................................10

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990)..............................................................................................................7

*Ga. Republican Party v. SEC*,
888 F.3d 1198 (11th Cir. 2018) ...........................................................................................9

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998)............................................................................................................18

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) (per curiam) .....................................................................8, 11

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ................................................................................................ 10

*Guan v. Mayorkas*,
   No. 1:19-cv-6570, 2021 WL 1210295 (E.D.N.Y. Mar. 30, 2021) .................................. 11

*Hartman v. Moore*,
   547 U.S. 250 (2006) ..................................................................................................... 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................. 8, 9

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ................................................................................................... 16

*Jett v. Dallas Independent School District* ...................................................................... 19, 20

*Knox v. Brnovich*,
   907 F.3d 1167 (9th Cir. 2018) .......................................................................... 13, 14, 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ..................................................................................... 10

*League of Women Voters of Fla. v. Browning*,
   575 F. Supp. 2d 1298 (S.D. Fla. 2008) ......................................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .............................................................................................. 10, 11

*Logan v. U.S. Bank Nat'l Ass'n*,
   722 F.3d 1163 (9th Cir. 2013) ..................................................................................... 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................... 7, 8, 11

*Mass. Mut. Life Ins. v. Russell*,
   473 U.S. 134 (1985) ................................................................................................... 18

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) .................................................................................... 2, 4

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014) ........................................................................................ 3

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) .............................................................................. 7, 8, 9, 10

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ................................................................................... 7, 20

*Perez v. Abbott,*
   390 F. Supp. 3d 803 (W.D. Tex. 2019) (Rodriguez, J.)................................................................20

*Physician Hosps. of Am. v. Sebelius,*
   691 F.3d 649 (5th Cir. 2012)..........................................................................................................2

*Planned Parenthood Center for Choice v. Abbott,*
   141 S. Ct. 1261 (2021) ...................................................................................................................3

*Pub. Citizen, Inc. v. Bomer,*
   274 F.3d 212 (5th Cir. 2001)........................................................................................................11

*Raj v. LSU,*
   714 F.3d 322 (5th Cir. 2013)..........................................................................................................7

*Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.,*
   547 U.S. 47 (2006)..................................................................................................12, 13, 14, 15

*Sierra Club v. Morton,*
   405 U.S. 727 (1972).......................................................................................................................9

*Sixth Street Business Partners v. Abbott,*
   2020 WL 4274589 (W.D Tex. July 24, 2020) ...............................................................................3

*Spokeo, Inc. v. Robbins,*
   578 U.S. 330 (2016).......................................................................................................................7

*State v. Hollins,*
   620 S.W.3d 400 (Tex. 2020) (per curiam) ....................................................................................6

*Stokes v. Sw. Airlines,*
   887 F.3d 199 (5th Cir. 2018)........................................................................................................17

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009).......................................................................................................................8

*Tex. Democratic Party v. Abbott,*
   961 F.3d 389 (5th Cir. 2020)................................................................................................. 3, 4, 5

*Tex. Democratic Party v. Abbott,*
   978 F.3d 168 (5th Cir. 2020)................................................................................................. 2, 4, 6

*Tex. Democratic Party v. Hughs,*
   ---F. App'x ---, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam) ................................... 2, 4, 5

*Tex. Indigenous Council v. Simpkins,*
   No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) .....................................................9

*Texas v. Johnson,*
   491 U.S. 397 (1989) ...................................................................................12

*Thomas v. Reeves,*
   961 F.3d 800 (5th Cir. 2020) (Oldham, J., concurring) ...............................21

*United States v. Armstrong,*
   517 U.S. 456 (1996) .....................................................................................6

*United States v. O'Brien,*
   391 U.S. 367 (1968) .........................................................................13, 14, 15

*Voting for Am., Inc. v. Steen,*
   732 F.3d 382 (5th Cir. 2013) .......................................................12, 13, 14, 15

*Washington v. Davis,*
   426 U.S. 229 (1976) .....................................................................................15

*Webster v. Fall,*
   266 U.S. 507 (1925) .....................................................................................20

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) .......................................................................................20

*Ysleta Del Sur Pueblo v. Laney* ...........................................................................20

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) .......................................................................16, 17, 18

*Zimmerman v. City of Austin,*
   881 F.3d 378 (5th Cir. 2018) .........................................................................9

**Statutes**

42 U.S.C. § 1983 ...............................................................................................7, 10

52 U.S.C.
   § 10301(a) .....................................................................................................17
   § 10302 ..........................................................................................................20
   § 10302(c) .....................................................................................................20
   § 10308(d) ..........................................................................................17, 19, 20
   § 10504 ..........................................................................................................19
   § 10508 .....................................................................................................18, 19
   § 20104(c) .....................................................................................................19
   § 20105(a) .....................................................................................................19
   § 20105(b)–(c) ..............................................................................................19

Tex. Elec. Code

    § 15.028.........................................................................................................................5

    § 16.0332.......................................................................................................................4

    § 64.009(g)...................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................................2

Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d
    Spec. Sess. (2021) ............................................................................................*passim*

U.S. Const. art. III, § 2....................................................................................................8

## INTRODUCTION

Plaintiffs Mi Familia Vota (MFV), a non-profit interest group, along with Marla and Marlon Lopez and Paul Rutledge (*collectively* Plaintiffs), three voters hailing from the greater Houston area, filed this suit to challenge various provisions of the Texas Election Code that have been amended by Senate Bill 1.[1] According to the Plaintiffs, Senate Bill 1 violates their First Amendment Rights, violates the Equal Protection clause, and violates Sections 2 and 208 of the Voting Rights Act. Not so.

As an initial matter, Plaintiffs have sued the wrong people. The Eleventh Amendment to the United States Constitution and the *Ex parte Young* exception to the same, as interpreted by the Fifth Circuit, require the Plaintiffs—and the Court—to evaluate whether the parties that have been sued are the same parties that *actually enforce* a law that is being challenged. Plaintiffs ignored that precedent, and elected to sue the Governor, the Secretary of State, and the Texas Attorney General, rather than suing the parties that have enforcement authority under the Texas Election Code. What's more, even if any of the three named defendants enforced any challenged provision, the Plaintiffs have not articulated facts sufficient to support standing under Article III. The State Defendants (the Governor, the Deputy Secretary of State, and the Attorney General) respectfully request that the Court dismiss the claims against them, albeit leaving the Plaintiffs free to file a more focused complaint against the proper parties if appropriate. *See* Fed. R. Civ. P. 12(b)(1).

But that's not all. Even if Plaintiffs had sued the right parties *and* had standing to bring their claims, the challenges they have filed do not state a claim for relief. Take Plaintiffs' First Amendment claim: Plaintiffs have not alleged any expressive conduct that is prohibited by any portion of Senate Bill 1 ("SB1"). Tex. Leg., S.B. 1, 87th Leg., 2d C.S. (2021). Plaintiffs also allege intentional

---

[1] Senate Bill 1 identifies a package of election law amendments passed during a special legislative session called in 2021. The amendments touch on numerous provisions of the Texas Election Code. For purposes of this motion, Defendants generally refer to the challenged provisions using the umbrella term of Senate Bill 1. To the extent that provisions are identified below, the specific provisions identified refer to amendments included in Senate Bill 1.

discrimination in violation of the Fourteenth and Fifteenth Amendments and violations of the Voting Rights Act under §§ 2 and 208, but Plaintiffs have not alleged any intentional discrimination based upon the facially neutral provisions of Senate Bill 1, and neither provision of the Voting Rights Act relied upon by the Plaintiffs creates a private cause of action. The Court should not reach the Rule 12(b)(6) issues considering the fatal jurisdictional defects, if it does, the Court should dismiss the claims against the State Defendants for the reasons explained below. *See* Fed. R. Civ. P. 12(b)(6).

ARGUMENT

## I.    Plaintiffs cannot satisfy *Ex parte Young*.

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, ---F. App'x ---, 2021 WL 2310010, at *2 (5th Cir. June 4, 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). The plaintiffs here have failed to allege facts sufficient invoke the *Ex parte Young* exception as to the State Defendants.

### A.    Plaintiffs cannot sue the Governor.

Sovereign immunity bars Plaintiffs' claims against the Governor because their complaint fails to allege that the Governor plays any role in enforcing SB1's challenged provisions. Plaintiffs' only allegation relating to the Governor is that he is named as a defendant. ECF 1 ¶ 25.[2] To establish standing to sue a state official, the Fifth Circuit requires a plaintiff to show more than "that the official [has] a '*general* duty to see that the laws of the state are implemented." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Here, Plaintiffs rightly do not allege that the Governor has *any* duty. That's because no provision of SB1 gives the Governor enforcement responsibilities. "If the official sued is not 'statutorily tasked with enforcing the challenged law,' the requisite connection is absent and '[the] *Young* analysis ends.'" *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 998), *vacated as moot*, *Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *accord Tex. Democratic Party*, 961 F.3d at 401; *see also Sixth Street Business Partners v. Abbott*, 2020 WL 4274589, at *5 (W.D Tex. July 24, 2020).

### B.    Plaintiffs have not plausibly alleged an enforcement role for the Deputy Secretary.

Sovereign immunity precludes Plaintiffs' claims against the Deputy Secretary of State because he does not have a sufficient connection with enforcement of SB1's challenged provisions.[3] Plaintiffs are required to identify which SB1 provisions they challenge, and explain how the Secretary enforces those provisions. But they do no such thing.

Fairly read Plaintiffs appear to cite the Secretary's status as the State's top election official as a reason why he is a proper defendant. ECF 1 at ¶ 26. That allegation does not satisfy *Ex parte Young* because it does not "identify the Secretary's specific duties within the particular statutory provision"

---

[2] Citations to "ECF 1" refer to the complaint that the MFV Plaintiffs filed in No. 5:21-cv-00920 (W.D. Tex. Sept. 27, 2021) before the Court consolidated these cases.
[3] At the time of this Motion's filing, the Deputy Secretary is performing the Secretary's duties due to a vacancy.

being challenged. *Hughs*, 2021 WL 2310010, at *2 (citing *Tex. Democratic Party*, 978 F.3d at 179–80).

"[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party,* 961 F.3d 389 at 400–01. (citing *Morris,* 739 F.3d at 746). But a *general* duty is all that the Plaintiffs allege. These provisions contain no specific enforcement obligation, let alone a specific obligation related to SB1. *See Tex. Democratic Party*, 2021 WL 2310010, at *2 ("[I]n the particular context of Texas elections, . . . the Secretary's role varies, so" Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue) (citing *Tex. Democratic Party*, 978 F.3d at 179–80). Citing general obligations does not suffice.

Plaintiffs alleges that the Secretary has a role in enforcing Texas Election Code § 16.0332 as amended by Senate Bill 1, but they do not identify or allege a role in enforcing any other provision of Senate Bill 1. Thus, as an initial matter, Plaintiffs' claims against the Deputy Secretary regarding every provision other than the provision cited in ¶ 45 of the Complaint should be dismissed. Without a "provision-by-provision analysis," Plaintiffs cannot carry their burden. *Tex. Democratic Party*, 2021 WL 2310010, at *2.

Even though Plaintiffs allege a connection against the Secretary in ¶ 45, they still failed to establish standing. The Deputy Secretary is not a proper defendant unless the Plaintiffs can show that directing him not to enforce the challenged provision would afford them relief from the alleged harm. *See Mi Familia Vota*, 977 F.3d at 465 (explaining that the Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek"). Because the allegations in ¶ 45 center on the removal of voters from the voting rolls based on a lack of citizenship, none of the plaintiffs have pled sufficient facts to overcome sovereign immunity.

4

### C.     The Attorney General is also immune.

Sovereign immunity also bars Plaintiffs' claims against the Attorney General. Again, allegations that the Attorney General has a general duty to enforce state laws, ECF 1 ¶ 27, are not enough to satisfy *Ex parte Young*. *See Tex. Democratic Party*, 961 F.3d at 401–02. A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each challenged provision. *Tex. Democratic Party*, 2021 WL 2310010, at *2. Though they challenge numerous SB1 provisions, the plaintiffs do not discuss the Attorney General in relation to any specific provision. For this reason, Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant for challenges to any other provision.

Plaintiffs' allegations are also insufficient even for Sections 2.04 and 6.01. Plaintiffs complain that Section 2.04 "will have a chilling effect on voter registration" due to the "added threat of criminal prosecution." ECF ¶ 113. But the Attorney General does not enforce Section 2.04. Under that provision, he merely receives information. *See* SB1 § 2.04 (codifying Tex. Elec. Code § 15.028). As explained above, enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but Section 2.04 does not empower the Attorney General to compel or constrain anyone. Because "the requisite connection is absent," the *Ex parte Young* analysis ends there. *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 998).

Plaintiffs allege that Section 6.01 "will deter individuals from giving" rides to the polls to seven or more voters—even though doing so "is not illegal" under SB1—because such drivers "must complete and sign a form." ECF 1 ¶ 78. The Attorney General has no role in that process, except that the form is "available to the attorney general for inspection upon request." SB1 § 6.01 (codifying Tex. Elec. Code § 64.009(g)). That is not "compulsion or constraint." *City of Austin*, 943 F.3d at 1000.

Because Plaintiffs have not alleged, on a provision-by-provision basis, "that the Attorney General *has* the authority to enforce" the particular provisions at issue, *Id.* at 1001, there is no need to proceed to the next step in the analysis. Their claims fail out of the gate.

But if the Court reaches the second step, it must consider whether Plaintiffs have plausibly alleged "that [the Attorney General] is likely to" enforce the particular provisions at issue in the way Plaintiffs claim. *Id.* at 1002. On this score, Plaintiffs allege only that the Attorney General sued a local official for violating an election law other than SB1 and that he "stated that prosecution of election-related offenses is one of his priorities." ECF 1 ¶¶ 27–28. No doubt, the Attorney General is committed to satisfying his constitutional and statutory obligations, including enforcing election laws where he has that power and where appropriate. Still, "that he has chosen to" enforce "*different* statutes under *different* circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that violate federal law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006). Of course, the Attorney General's past success in election cases underscores the lawfulness of his enforcement actions, and it undermines Plaintiffs' unfounded assertion that the Attorney General will start enforcing SB1 in an unlawful manner. *See* ECF 1 ¶ 26; *State v. Hollins*, 620 S.W.3d 400, 403 (Tex. 2020) (per curiam) (Texas Supreme Court held for Texas Attorney General, directing district court to enjoin the Harris County Clerk from sending unsolicited mail-in ballots).

## D.    Plaintiffs do not plead an alternative exception to sovereign immunity.

Sovereign immunity bars Plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the

reasons above, and Plaintiffs have not pleaded waiver or abrogation by Congress that would permit their claims to proceed. And if they had tried, they would have been wrong.

For Counts I–II, "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). As to Counts III and IV, although *OCA-Greater Houston* holds that the Voting Rights Act abrogates sovereign immunity, that case was wrongly decided. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nevertheless, to the extent this Court is bound by *OCA-Greater Houston*, that decision does not relieve Plaintiffs of their burden to show Article III standing. As explained below, because the State Defendants do not enforce the challenged provisions, Plaintiffs cannot show traceability or redressability.

## II.    Plaintiffs Lack Standing.

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show (1) that its members would independently have standing; (2) that the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members.

*Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue. *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

A.    **Plaintiffs have not plausibly alleged traceability or redressability.**

As an initial matter, Plaintiffs lack standing because their alleged harms are not traceable to or redressable by the State Defendants. By and large, Plaintiffs challenge SB1 as an undifferentiated whole, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have a broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

B.    **MFV lacks associational standing.**

MFV failed to plead associational standing. A plaintiff cannot have associational standing unless one of its members would have standing to sue individually. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Thus, demonstrating standing would require the MFV to "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Indeed, the Fifth Circuit has applied this rule to advocacy groups under similar facts. *See NAACP v.*

*City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (requiring evidence of "a specific member"). But MFV did not do so. *See* ECF 1 at ¶¶ 16-20.

Because MFV has not alleged the existence of specific members, let alone specific members with individual standing, their claims should be dismissed. *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.); *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008).

The only individuals identified in the Complaint are Marla and Marlon Lopez and Paul Rutledge. ECF 1 at ¶¶ 21-23. But the Complaint does not allege that any of them are members of MFV. *Id.* Even if they were members, however, they could not support associational standing because they lack individual standing for the reasons explained below.[4]

### C.    MFV lacks organizational standing.

An organization has direct organizational standing only if it satisfies the same Article III requirements applicable to individuals: injury-in-fact, causation, and redressability. *City of Kyle*, 626 F.3d at 237. That an organization has an "interest in a problem . . . is not sufficient" for standing, "no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

MFV grounds its standing on an alleged "diversion of resources," ECF 1 at ¶ 18, but such a diversion can support standing only if "the change in plans [is] in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears

---

[4] The complaint refers to "people who Mi Familia Vota serves" ECF 1 at ¶ 20, but it does not plausibly allege facts satisfying the "indicia of membership" requirements from *Hunt*, 432 U.S. at 344. That requires members who "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Tex. Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014). MFV has not alleged facts showing it has such members. It never alleges that its purported members and constituents "participate in and guide the organization's efforts," *Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994), much less that they "alone finance [MFV's] activities, including the costs of this lawsuit," *Hunt*, 432 U.S. at 344.

of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013); *see also La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ("[A plaintiff] must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem.").

Here, MFVs alleged diversion of resources relates to education, but this does not qualify as a cognizable injury it would suffer for purposes of organizational standing. MFV has "not identified any specific projects that [it] had to put on hold or otherwise curtail in order to respond to the" laws it challenges. *City of Kyle*, 626 F.3d at 238. Instead, MFV "only conjectured that the resources" it diverted "could have been spent on other unspecified [MFV] activities." *Id.* at 239. That is not enough. *See Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018).

MFV alleges that their missions includes encouraging voting. *See* ECF 1 ¶ 16-17. But the "abstract social interest in maximizing voter turnout . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). To the extent Plaintiffs claim an interest in the political consequences of which potential voters cast ballots, they lack standing because federal courts do not hear "case[s] about group political interests." *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018).

### D.    MFV lacks statutory standing.

Finally, MFV lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the Entity Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right not to be discriminated against based on a disability). Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

      **E.**      **The Individual Plaintiffs lack standing.**

Each of the individual plaintiffs "intends to vote in the next election." ECF 1 at ¶¶ 21-23. Each also complains that they work at times that conflict with voting hours, resulting in unspecified "impact" on their voting preferences. *Id.* But "plaintiffs must establish standing *for each and every provision they challenge.*" *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (emphasis added). Here, none of the individual plaintiffs identify anything that may dissuade them from voting and, in fact, they all "[intend] to vote in the next election" despite the passage of Senate Bill 1. ECF 1 at ¶¶ 21-23.

What's more, none identify any statute that directly injures them or their ability to vote. Plaintiff Marla Lopez claims that "the prospect of increased voter intimidation" from poll watchers "makes her more hesitant to vote in the future." ECF 1 ¶ 21. That is not an "actual or imminent" injury. *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (citing *Lujan*, 504 U.S. at 560); *see also Clapper*, 568 U.S. at 401 (distinguishing between a certainly impending injury and one built on subjective fear). A plaintiff who is unsure whether she will be chilled has "failed to sufficiently plead the actual chilling of [his] First Amendment rights so as to constitute an injury for standing purposes." *Guan v. Mayorkas*, No. 1:19-cv-6570, 2021 WL 1210295, at *13 (E.D.N.Y. Mar. 30, 2021); *see Ass'n of Am. Physicians & Surgeons, Inc. v. HHS*, 224 F. Supp. 2d 1115, 1125 (S.D. Tex. 2002), *aff'd*, 67 F. App'x 253 (5th Cir. 2003) (per curiam) (dismissing for lack of standing due to no "actual chill").

  Because the individual plaintiffs failed to identify standing for each provision of Senate Bill 1 they challenge, plaintiffs should be dismissed from this suit.

11

III.    **Plaintiffs' Claims Fail as a Matter of Law**

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims that fail as a matter of law.

A.    **The First Amendment does not apply to Plaintiffs' claims.**

"As the party invoking the First Amendment's protection, [Plaintiffs] have the burden to prove that it applies." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984)). In other words, "not every procedural limit on election-related conduct automatically runs afoul of the First Amendment." *Id.* at 392. Rather, "[t]he challenged law must restrict political discussion or burden the exchange of ideas," not merely regulate conduct. *Id.* (emphasis omitted).

Indeed, the Supreme Court repeatedly has held that the First Amendment does not protect all conduct, but only conduct which is "inherently expressive." *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006); *see also Texas v. Johnson*, 491 U.S. 397, 404 (1989). To determine whether conduct possesses sufficient "communicative elements" to warrant First Amendment protection, courts examine whether the conduct shows an intent "to convey a particular[] message" and whether "the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (internal quotation marks and citation omitted). Thus, "[c]onduct does not become speech for First Amendment purposes merely because the person engaging in the conduct intends to express an idea." *Voting for Am.*, 732 F.3d 382, 388; *see also Rumsfeld*, 547 U.S. at 66.

The Fifth Circuit's decision in *Voting for America* is instructive. The plaintiffs in that case challenged a series of Texas laws that limited who could serve as "volunteer deputy registrars ('VDRs'), individuals trained and empowered to receive and deliver completed voter registration applications." 732 F.3d at 385. Among other challenges, the plaintiffs claimed that rules requiring VDRs to be Texas residents and to be registered in the county where they received and delivered completed voter

registration applications violated their free speech rights to participate in the get-out-the vote activity of "voter registration drives." *Id.* at 388.

The Fifth Circuit acknowledged that the many get-out-the-vote activities undertaken as part of a voter registration drive—such as "'urging' citizens to register," "'distributing' voter registration forms," and "'asking' for information to verify that registrations were processed successfully"—are "constitutionally protected speech." *Id.* at 388. It nonetheless held that plaintiffs' free speech challenges to the residency and registration rules failed. *See id.* at 388-92. After all, "non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech." *Id.* at 389 (citing *Clark*, 468 U.S. at 297-98; *Rumsfeld*, 547 U.S. 66; *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). Instead, a court must "analyze" each "discrete step[]" of a get-out-the-vote activity to determine whether it qualifies for free speech protections. *Id.* at 388.

Applying that "hard judgment[]," the Fifth Circuit concluded that the residency and registration requirements "do not in any way restrict or regulate who can advocate pro-voter registration messages, the manner in which they may do so, or any communicative conduct." *Id.* at 389, 391. Rather, those rules "merely regulate the receipt and delivery of completed voter-registration applications, two non-expressive activities." *Id.* at 391. Accordingly, those rules did not violate any free speech rights, and the plaintiffs' claim failed. *See id.*

Applying these authorities, the Ninth Circuit recently held in *Knox v. Brnovich* that collecting voters' ballots is not entitled to First Amendment protection. The plaintiff in that case was a local official of the Democratic Party who engaged in "door-to-door canvassing of prospective voters to educate, register, and encourage them to vote." 907 F.3d 1167, 1172 (9th Cir. 2018). As part of that effort, the plaintiff had accepted and delivered at least one voter's ballot. *See id.* The plaintiff sued challenging a new Arizona ballot harvesting ban that prohibited individuals from collecting another voter's ballot, subject to exceptions that did not apply to the plaintiff's get-out-the-vote activities. *See*

13

*id.* In support of her First Amendment claim, the plaintiff contended that her collection of ballots was intended to "communicate the message" that "voting is the most fundamental right in a democratic society and that [she is] committed to helping qualified electors exercise their right to vote." *Id.*

The Ninth Circuit rejected the plaintiffs' claims, including her First Amendment claim. *See id.* at 1180-82. The Ninth Circuit pointed out that the U.S. Supreme Court already has "rejected the concept that 'an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express a message.'" *Id.* at 1181 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). The Ninth Circuit further held that—even though the plaintiff's ballot collection activities took place as part of an effort to get other people to vote—she failed to carry her burden to prove that "the conduct of collecting ballots would reasonably be understood by viewers as conveying any of [her] messages or of conveying a symbolic message of any sort." *Id.* It therefore held that the First Amendment did not protect those activities. *See id.*

Another court in the Ninth Circuit has also followed the Fifth Circuit's reasoning to conclude that "there is nothing inherently expressive or communicative about collecting a voter's completed early ballot and delivering it to the proper place." *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 851 (D. Ariz. 2018), *aff'd*, 904 F.3d 686 (9th Cir. 2018), *rev'd and remanded on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc). And prior to that, at least one other court similarly concluded that "the collection and handling of voter registration applications is not inherently expressive activity." *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1319 (S.D. Fla. 2008) (citing *Rumsfeld*, 547 U.S. at 66).

Here as well, the activities regulated by Senate Bill 1 are "non-expressive activities." *Voting for Am., Inc.*, 732 F.3d at 391. Plaintiffs complain that on the bill limits distributing mail-in ballot materials, ECF 1 at ¶ 93, and requires that people aiding voters provide an oath concerning their assistance, ECF 1 at ¶ 98. But these rules concern the "receipt and delivery of completed [ballots]." *Id.*; *Knox*, 907 F.3d

at 1181. There is no basis to conclude "that the conduct of collecting ballots would reasonably be understood by viewers as . . . conveying a symbolic message of any sort." *Knox*, 907 F.3d at 1181. The rules regulating assistance and the requirements of people providing the same regulates the circumstances under which a person may act as a scrivener to mark another person's ballot as directed or provide translation services to a person marking their own ballot. Because neither of those activities involves speech or expression by the assisting person, Plaintiffs' free speech claims fail. *See id.*

That Plaintiffs attempt to combine assistance or poll watching with protected speech as part of their get-out-the-vote efforts does not trigger First Amendment protection of those activities. As explained, "non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech." *Voting for Am., Inc.*, 732 F.3d at 389; *see also Knox*, 907 F.3d at 1181. After all, "[i]f combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Rumsfeld*, 547 U.S. at 66; *see also O'Brien*, 391 U.S. at 376.

**B.**     **Senate Bill 1 does not intentionally discriminate based upon race.**

Senate Bill 1 does not violate the Fourteenth or Fifteenth Amendments.  Plaintiffs have not plausibly alleged any invidious discrimination, and Senate Bill 1 is supported by numerous rational bases.

The various provisions of Senate Bill 1 apply equally to everyone.  By itself, Senate Bill 1 cannot provide any unequal advantage or disadvantage to anyone.  And Plaintiffs do not allege that anyone will enforce this facially neutral statute in a discriminatory way.  *Cf. Washington v. Davis*, 426 U.S. 229, 241 (1976) ("A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of race.").

Had Plaintiffs plausibly alleged a disparate impact, that would not be sufficient.  Disparate racial impacts, standing alone, do not violate the Constitution.  *See Washington*, 426 U.S. at 242 ("[W]e

have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.").  It follows that disparate impacts on "voters who live near now-defunct temporary voting sites" and "young voters" do not either.

Plaintiffs have not plausibly alleged discriminatory purpose.  Plaintiffs included conclusory assertions that "[Senate Bill 1] violates the Fourteenth and Fifteenth Amendments because it was adopted for the purpose of denying non-Anglo voters . . . full and equal access to the political process". ECF 1 at ¶ 109.  But "[t]hese bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that petitioners adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group.  As such, the allegations are conclusory and not entitled to be assumed true."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quotations and citations omitted)).

### C.  Plaintiffs lack a private cause of action for their VRA claims.

Plaintiffs have not identified any private cause of action allowing them to sue under the VRA. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Unless Congress expresses that intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

To be sure, federal courts have not always followed that strict approach. There was a time when federal courts "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). That time has passed. Since jettisoning the "*ancient*

*regime,*" *id.* at 1855, the Supreme Court has "not returned to it," *Sandoval*, 532 U.S. at 287; *see also Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (rejecting reliance "on pre-*Sandoval* reasoning").

           1.       **Section 2 does not create a private cause of action for non-voters.**

Under *Sandoval*, Plaintiffs do not have an implied cause of action for Count III in Plaintiffs' Complaint. *See* ECF 1 at ¶¶ 113-119. Whether "the Voting Rights Act furnishes an implied cause of action under § 2" is "an open question," *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring), but it should be answered in the negative. Even if an implied cause of action exists, however, it does not extend to non-voters, like Plaintiffs here.

First, Section 2 contains no indication that Congress intended to create a private right for non-voters. The statute's text is focused on the governmental officials it regulates: "No voting qualification or prerequisite to voting or standard, practice, or procedure s*hall be imposed or applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a) (emphasis added). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (quotation omitted). Section 2 "is framed in terms of the obligations imposed on the regulated party" (government officials) while voters are "referenced only as an object of that obligation." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310 (5th Cir. 2017) (per curiam). Non-voters like MFV are not mentioned at all. Section 2 therefore does not confer rights on MFV "in clear and unambiguous terms." *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009) (quotation omitted).

Second, Section 2 does not create private remedies for non-voters. Instead, Congress authorized civil and criminal enforcement actions by the federal government. *See* 52 U.S.C. § 10308(d).

"The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Even pre-*Sandoval* precedent does not help Plaintiffs. In *Allen v. State Bd. of Elections*, the Supreme Court held that Section 5 of the Voting Rights Act created a private cause of action, but that decision did not analyze Section 2 or non-voters. *See* 393 U.S. 544, 557 (1969). The Court relied on the fact that Section 5 was "passed to protect a class of citizens," that is, voters. *Id.* Of course, *Sandoval* abandoned that loose, legislative-history-based approach. *See Sandoval*, 532 U.S. at 287. Indeed, the Supreme Court itself recognized as much when it listed *Allen* as an example of the now-abandoned "*ancien regime*." *Abbasi*, 137 S. Ct. at 1855. But even under *Allen*'s approach, there is no reason to think Congress "passed [Section 2] to protect" non-voters.

>              2.      **Section 208 does not create a private cause of action for these plaintiffs.**

In Count IV, Plaintiffs rely on Section 208 of the Voting Rights Act, *see* ECF 1 ¶¶ 120-123, but that statute does not create a private cause of action. Plaintiffs do not have an express cause of action, and they do not contend otherwise. Plaintiffs presumably rely on an implied cause of action, but that does not work either.

First, Section 208 does not confer any private rights on these plaintiffs. Assuming *arguendo* that the statute creates any rights at all, it does so for certain "voter[s] who require[] assistance." 52 U.S.C. § 10508. The statute does not create any rights in non-voting entities like MFV. As explained above, the Court should not expand "the scope of [an] implied right" from one type of plaintiff to another. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

Second, Section 208 does not create a private remedy. Where such a remedy is absent, federal courts must not imply one: "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

Section 208 is enforced through other mechanisms. For example, the VRA requires "[t]he chief election officer of each State" to "provide public notice . . . of the availability of . . . assistance under section [208]," 52 U.S.C. § 20104(c), and failure to do so is remediable through a public or private cause of action. The statute expressly authorizes "the United States Attorney General or a person who is personally aggrieved" by noncompliance with Section 20104 to "bring an action for declaratory or injunctive relief." *Id.* § 20105(a). Congress limited such causes of action by requiring pre-suit notice and forbidding fee-shifting. *See id.* § 20105(b)–(c). The congressional scheme ensures that voters are aware of their options under Section 208, which enables them to assert any alleged rights when voting and rely on such alleged rights as defenses to any actions brought against them. The existence of this enforcement scheme "suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Inferring a private remedy would be especially inappropriate considering the detailed enforcement provisions that Congress provided elsewhere in the VRA, none of which authorize this suit. *See, e.g.*, 52 U.S.C. §§ 10308(d), 10504, 20105(a). Considering "the statute Congress has passed," there is no evidence of legislative intent to create a private right of action to enforce Section 208. *Sandoval*, 532 U.S. at 286. Accordingly, the Court "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Finally, even if Section 208 created a private cause of action for these plaintiffs, there is no indication that such a cause of action would apply to state officials rather than local officials. Section 208 focuses on the operation of a polling place, a function performed by local officials, not state officials. *See* 52 U.S.C. § 10508. Thus, any private cause of action should be limited to local defendants, not state defendants.

Courts inferring a cause of action against one type of defendant do not necessarily extend that cause of action to other types of defendants. In *Jett v. Dallas Independent School District*, a pre-*Sandoval*

case that acknowledged an implied cause of action against private defendants, the Supreme Court refused to apply that cause of action "in the context of . . . 'state action.'" 491 U.S. 701, 731 (1989). Similarly, in *Ysleta Del Sur Pueblo v. Laney*, the Fifth Circuit declined to apply an implied cause of action against state officials when "[t]he statute could easily be determined to provide . . . an implied private cause of action against any party other than a state." 199 F.3d 281, 287 (5th Cir. 2000) (criticizing the plaintiff's "fatal logical leap"). Here, there is no indication, much less a "clear statement," that Congress created a private cause of action against the State or its officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

The only case State Defendants have found expressly recognizing a private cause of action to enforce Section 208 is not persuasive. The Western District of Arkansas recently concluded that Section 3 of the Voting Rights Act "explicitly creates a private right of action" to enforce Section 208. *Arkansas United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021) (citing 52 U.S.C. § 10302). But Section 3 does not create a cause of action at all. It merely establishes procedural options applicable "in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(c); *cf. id.* § 10308(d) (creating a cause of action for the Attorney General but not for violations of Section 208).[5]

Even if Section 3 did create a cause of action, it would not apply here. Count IV does not allege a violation "of the fourteenth or fifteenth amendment." *Id.* It alleges a violation of Section 208 of the Voting Rights Act, which goes well beyond constitutional requirements. *See* ECF 1 ¶¶ 120-123. As this Court has previously held, "§ 3(c) requires . . . violations of the Fourteenth or Fifteenth Amendments." *Perez v. Abbott*, 390 F. Supp. 3d 803, 813 (W.D. Tex. 2019) (three-judge district court)

---

[5] Some cases have ruled on a Section 208 claim without considering whether the plaintiffs had a private cause of action. *See, e.g., OCA-Greater Hous.*, 867 F.3d at 607. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

(Rodriguez, J.); *cf. Thomas v. Reeves*, 961 F.3d 800, 828 n.1 (5th Cir. 2020) (Oldham, J., concurring) (explaining that plaintiffs bringing a VRA suit cannot recover fees under a VRA fees provision that "applies only in an 'action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment'" because they "forswore any relief under the Constitution").

## CONCLUSION

Defendants respectfully request that the Court grant this motion and dismiss the claims against them.

Date: October 25, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

BRENT WEBSTER
First Assistant Attorney General

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

22

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 25, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN