**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | Civil No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |
| | | |
| OCA-GREATER HOUSTON, et al., | § | |
| *Plaintiffs,* | § | |
| | § | Civil No. 1:21-cv-0780-XR |
| v. | § | |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
| *Defendants.* | § | |
| | | |
| HOUSTON JUSTICE, et al., | § | |
| *Plaintiffs,* | § | |
| | § | Civil No. 5:21-cv-0848-XR |
| v. | § | |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
| *Defendants.* | § | |
| | | |
| TEXAS LULAC, et al., | § | |
| *Plaintiffs,* | § | |
| | § | Civil No. 1:21-cv-0786-XR |
| v. | § | |
| | § | |
| JOSE ESPARZA, et al., | § | |
| *Defendants.* | § | |
| | | |
| MI FAMILIA VOTA, et al., | § | |
| *Plaintiffs,* | § | |
| | § | Civil No. 5:21-cv-0920-XR |
| v. | § | |
| | § | |
| GREGORY ABBOTT, et al., | § | |
| *Defendants.* | § | |

**DEFENDANT LUPE C. TORRES, IN HIS OFFICIAL CAPACITY AS**
**MEDINA COUNTY ELECTION ADMINISTRATOR'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

STATEMENT OF FACTS .................................................................................................1

AUTHORITIES AND ARGUMENT .................................................................................2

I.     Standard for Motion to Dismiss ................................................................................2

II.    No Plaintiff has alleged that they have injuries traceable to Mr. Torres as Medina
Elections Administrator ............................................................................................2

III.   Count I – Plaintiffs' Count I is three independent claims, and none are sufficient
under the First Amendment ......................................................................................3

     A.   SB1's prohibition on vote harvesting does not violate the First Amendment ...........4

     B.   SB1's voter assistance provisions do not violate the First Amendment ....................5

     C.   SB1's provisions on third-party compensation of voter assistants does not
violate the First Amendment ......................................................................................6

IV.   Counts II and III – No evidence of discriminatory intent as required by the 14th
and 15th Amendment .................................................................................................6

     A.   Plaintiffs' allegation of discriminatory impact lacks factual support ..........................8

     B.   Plaintiffs analyze the historical background of the decision under the wrong
standard .......................................................................................................................8

     C.   Plaintiffs do not present any facts on the sequence of events leading up to
the challenged action that establish discriminatory intent ..........................................9

     D.   Plaintiffs do not allege any substantive or procedural departure from the
normal decision-making process .................................................................................9

     E.   Plaintiffs' allegations that the viewpoints expressed by the decision-makers
show evidence of discriminatory intent is unsupported by the evidence .................10

V.    Count IV – Claim IV does not present enough information to elicit a response .............11

VI.   Count V – SB1 does not prevent an eligible voter from choosing the assistant of
their choice .................................................................................................................11

VII.    Count VI – Plaintiffs' have not established that they have standing to bring a
        claim under the ADA, and otherwise do not state a claim upon which relief can
        be granted ..........................................................................................................14

        A.    Plaintiffs have not alleged a sufficient injury to confer standing .............................14

        B.    Plaintiffs' ADA claim falls outside the ADA's constitutionally permitted
              use, therefore plaintiffs fail to state a claim .............................................................16

VIII.   Count VII – SB1's anti-solicitation provision is Constitutional because it only
        applies to the speech of public officials in their official capacities ...................................17

IX.     Count VIII – SB1's vote harvesting provision is not vague and does not implicate
        the First Amendment..........................................................................................................18

        A.    SB1's vote harvesting provision is clear to an ordinary person................................20

        B.    The fact that some of the terms have room for interpretation does not make
              them unconstitutionally vague ..................................................................................21

        C.    Plaintiffs cannot show that the provisions are vague in all their applications..........22

        D.    The rule of lenity applies ..........................................................................................23

        E.    Any further claim under the First Amendment is duplicative of Count I.................23

X.      Count IX – Plaintiffs' vagueness challenge fails because they do not read the poll
        watcher provisions in context ...........................................................................................24

XI.     Count X – Fails to state a claim upon which relief can be granted because the
        Supremacy Clause does not provide a private cause of action ...........................................26

XII.    Count XI – Count XI is a duplicate of Count I and should be dismissed for the
        same reasons .......................................................................................................................28

CONCLUSION..............................................................................................................................28

CERTIFICATE OF SERVICE .......................................................................................................29

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE(S):**

*Abbott v. Perez*, 138 S.Ct. 2305 (2018) ................................................................8, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................2, 8, 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................2

*Brnovich v. Democratic Nat'l Comm.*, 141 S.Ct. 2321 (2021) ...........................5,11

*Buckley v. Valeo*, 424 U.S. 1 (1976) ...................................................................23

*Burson v. Freeman*, 504 U.S. 191 (1992) ...........................................................5

*Cameron v. Johnson*, 390 U.S. 611 (1968) ........................................................28

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) .............................12

*Fusilier v. Landry*, 963 F.3d 447 (5th Cir. 2020) ............................................8, 9

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ..............................................19, 20, 21

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)...........................................22

*Griener v. United States*, 900 F.3d 700 (5th Cir. 2018)......................................2

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982)....................24, 25

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .................................22

*Liparota v. United States*, 471 U.S. 419 (1985) ...............................................26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................................3

*Mills v. Alabama*, 384 U.S. 214 (1966) ...........................................................5

*Minn. Voters All. v. Mansky*, 138 S.Ct. 1876 (2018) .......................................6

*Mobile v. Bolden*, 446 U.S. 55 (1980) ...........................................................8, 10

*Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017) ...............................................21

*N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir.2010) ...............................16, 17

*Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)............................................................26

*Neitzke v. Williams*, 490 U.S. 319 (1989) ...........................................................................................2

*OCA-Greater Houston v. Texas,* 867 F.3d 604 (5th Cir. 2017)......................................................13

*Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502 (1990).........................................................26

*Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ..................................................................................16

*Priorities USA v. Nessel,* 487 F.Supp.3d 599 (E.D. Mich. 2020)..................................................13

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ...................................................................2

*Ray v. Texas*, 2008 US Dist. LEXIS 59852 (E.D. Tex. Aug. 7, 2008) ..........................................13

*Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016) ...................................................................................3

*Tennessee v. Lane*, 541 U.S. 509 (2004)............................................................................................18

*Thole v. U. S. Bank N.A.*, 140 S.Ct. 1615 (2020).............................................................................16

*Twombly*, 550 U.S. at 570 ....................................................................................................................8

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)...................................3

*United States v. Bass*, 404 U.S. 336 (1971) .....................................................................................26

*United States v. Davis*, 139 S.Ct. 2319 (2019) ................................................................................21

*United States v. Lanier*, 520 U.S. 259 (1997) ..................................................................................22

*Univ. of Alabama v. Garrett*, 531 U.S. 509 (2001)..........................................................................18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ................................8

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ..................22

*Voting for America, Inc. v. Andrade*, 488 F. App'x 890 (5th Cir. 2012).......................................26

**RULES:**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................... 4

Fed. R. Civ. P. 8(a)(2)......................................................................................................................... 4

**CONSTITUTIONAL PROVISIONS:**

S.B. 1, 2021 87th Leg., 2d Spec. Sess. (Tex. 2021)..........................................................................3

TO THE HONORABLE XAVIER RODRIGUEZ:

Lupe Torres, in his official capacity as the Elections Administrator for Medina County Texas, respectfully seeks dismissal of the claims against him in Plaintiff's Complaint (ECF No. 1, hereinafter, "Compl."). For the reasons discussed below, Plaintiffs either lack standing to raise their claims or Plaintiffs claims fail on the merits.

Mr. Torres also adopts the arguments and authorities made by the other Defendants in their Motions to Dismiss (Dkt. 53 and Dkt. 54).

## STATEMENT OF FACTS

Plaintiffs' challenge SB1[1] under a variety of theories none of which can get past the pleading stage. Plaintiffs' complaint is long on hyperbole but short on facts. The complaint describes many boogey men, but like typical childhood fantasies, these frightening possibilities are the creation of Plaintiffs' imagination. As one example, Plaintiffs imagine that the voter assistance provisions will make it harder for the disabled to obtain assistance but do not come forward with a single disabled individual who cannot receive assistance, nor do they come forward with a single person who would serve as an assistant prior to SB1 but not after. Plaintiffs' imagination does not create causes of action.

SB1 was passed by both chambers of the Texas Legislature on August 31, 2021, and signed by Governor Abbott on September 1, 2021. Compl. ¶ 65. SB1 does not go into effect until December 2, 2021. Given that the law is not yet in force, all of Plaintiffs' challenges are facial challenges.

---

[1]     SB1 refers to S.B. 1, 2021 87th Leg., 2d Spec. Sess. (Tex. 2021).

## AUTHORITIES AND ARGUMENT

### I.     Standard for Motions to Dismiss

Depending on the claim, Defendant Torres seeks dismissal under Rule 12(b)(1) for lack of jurisidiction or under Rule 12(b)(6) for failure to state a claim. "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (citations omitted). The burden of proving jurisdiction falls on the party seeking relief. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's "failure to state a claim upon which relief can be granted[.]" *See* Fed. R. Civ. P. 12(b)(6). Thus, claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

### II.    No Plaintiff has alleged that they have injuries traceable to Mr. Torres as Medina Elections Administrator.

At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Here, no Plaintiff has an injury that is traceable to an action of Mr. Torres. There are two types of Plaintiffs in this action. Individual Plaintiffs (Ms. Longoria and Mr. Lewin) and organizational Plaintiffs (the remaining Plaintiffs). Neither of the two individual Plaintiffs live, work, vote, or have any contact with Medina County. They allege no action taken by Medina County that has any effect on either of them. There is no injury that is traceable to Medina County.

Apart from Southwest Voter Registration Education Project ("SVREP"), none of the organizational Plaintiffs, none allege any activities in Medina County. None allege a member in Medina County and none allege an injury traceable to the Medina County Elections Administrator.

SVREP is the sole Plaintiff alleging activities in Medina County. SVEP alleges that it "conducts voter registration and organizes non-partisan get-out-the-vote drives to remind voters of election dates and to inform them about requirements for voting." Compl. ¶ 7. Paragraphs 139-146 describes many of SVREP's alleged activities and alleged injuries, but it does not describe how or if these injuries occur in Medina County and how these alleged injuries are the result of conduct by Mr. Torres.

No Plaintiff has demonstrated that it has injuries traceable to Mr. Torres and the Complaint should be dismissed in its entirety on that basis.

III.     **Count I – Plaintiffs' Count I is three independent claims, and none are sufficient under the First Amendment.**

Plaintiffs' Count I is really three independent claims under the First and Fourteenth Amendments, none of which have merit. Plaintiffs challenge SB1's (1) vote harvesting prohibitions, Compl. ¶ 193; (2) voter assistance provisions, Compl. ¶ 194; and (3) provisions of on compensation of assistants, Compl. ¶ 195.

### A.  SB1's prohibition on vote harvesting does not violate the First Amendment.

SB1 prohibits engaging in paid "vote harvesting services" which is defined as "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure."[2]

It has long been recognized that the State has the "power to regulate conduct in and around the polls in order to maintain peace, order and decorum there." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). *Burson* is instructive. There the Supreme Court upheld restrictions on speech not only inside the polling place but also up to 100 feet from the entrances. *Burson v. Freeman*, 504 U.S. 191 (1992). "Accordingly, this Court has held that the government may regulate the time, place, and manner of the expressive activity, so long as such restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." *Id.* at 197.

Here, SB1's ban on content that is "intended to deliver votes for a specific candidate or measure"[3] is not content-neutral. However, the restriction is similar to the Tennessee code at issue in *Burson* which banned "distribution of campaign materials, and solicitation of votes for or against any person or political party or position on a question" near a polling place. 504 U.S. at 193-94. Even though that regulation was not "facially content-neutral" the Court nevertheless upheld its

---

[2]     SB1 at § 7.04 to be codified at Tex. Elec. Code § 276.015.
[3]     SB1 at § 7.04 to be codified at Tex. Elec. Code § 276.015.

validity under exacting scrutiny finding that the state had a compelling state interest and that the law was narrowly drawn to achieve that end. *Id.* at 197.

Plaintiffs concede that SB1 was enacted to combat voter fraud. *See, e.g.*, Compl. ¶ 3. SB1 itself describes its purposes, *inter alia*, to promote free and fair elections, reduce fraud in elections, and increase public confidence in elections. SB1 at ¶ 1.03. These are compelling governmental interests. *See Burson*, 504 U.S. at 199 (noting that Tennessee's interests in protecting the right of its citizens to vote freely and in conducting an election with integrity and reliability were compelling interests); *Brnovich v. Democratic Nat'l Comm.*, 141 S.Ct. 2321, 2340 (2021) ("One strong and entirely legitimate state interest is the prevention of fraud."); *Minn. Voters All. v. Mansky*, 138 S.Ct. 1876, 1885 (2018) ("Accordingly, our decisions have long recognized that the government may impose some content-based restrictions on speech in nonpublic forums, including restrictions that exclude political advocates and forms of political advocacy.")

SB1's vote harvesting provisions are narrowly tailored to serve the interests identified above. When mail ballots are utilized, polling places proliferate. Wherever the ballot resides becomes a mini-polling place. *Burson* addressed speech in or within 100 feet of the polling place. Section 7.04 of SB1 is arguably narrower, prohibiting only electioneering tactics "in the physical presence of an official ballot or a ballot voted by mail[.]" This is narrowly tailored to re-create the conditions of the voting booth and prevent undue influence or outright fraud. This complies with the First Amendment and Plaintiffs' claim should be dismissed.

**B. SB1's voter assistance provisions do not violate the First Amendment.**

Plaintiffs challenge to the voter assistance provisions of SB1 under the First Amendment are without merit. Compl. ¶ 194. Plaintiffs discuss their view of the voter assistance provisions in paragraphs 67-79 of the Complaint. Nowhere in those paragraphs do Plaintiffs claim a restriction

on speech. They claim a voter's right to claim the assistant of their choice. Paragraph 194, which describes their claim, likewise has no allegation of speech restriction. Again, Plaintiffs' claim rests on an allegation that the assistance provisions may limit "the number of people available to assist them in voting in person or by mail, for fear of criminal prosecution." Compl. ¶ 194. That is not expressive conduct and does not allege First Amendment claim. It should be dismissed.

### C. SB1's provisions on third-party compensation of voter assistants does not violate the First Amendment.

Similar to their voter assistance claims, Plaintiffs claim that SB1's prohibition on compensated voter assistance violates the First Amendment. Compl. ¶ 195. But again, Plaintiffs do not plead a First Amendment claim because they do not allege any restriction on their speech. Plaintiffs complain of the ban on compensated assistance on behalf of voters. But the restriction is on the assistant's ability to be compensated, not the voter. Nothing in the compensation provisions affect the voter's right to speech. *See* SB1 § 6.03. This is not a First Amendment claim and it should be dismissed.

## IV.    Counts II and III - No evidence of discriminatory intent as required by the 14th and 15th Amendment.

Plaintiffs have failed to plead a plausible claim for relief under both the Fourteenth and Fifteenth Amendments (*see* Compl. Counts II and III). The basis for each claim is Plaintiffs' allegation that SB1 was enacted with "racially discriminatory intent." *See* Compl. ¶¶ 201, 207. Plaintiffs have only asserted conclusions and have not plead facts sufficient to support a finding of racially discriminatory intent.

Plaintiffs' challenges under the Fourteenth and Fifteenth Amendments are essentially identical and outlined in their Complaint:

> "Texas's long history and ongoing record of racial discrimination in the context of voting, the known and reasonably foreseeable discriminatory impact of SB1, the sequence of events and substantive departures from the normal legislative process which resulted in the enactment of SB1, and the tenuousness of the stated

justifications for SB1 raise a strong inference of a discriminatory purpose in violation of the Fourteenth [Fifteenth] Amendment."

Compl. ¶¶ 202, 208.

Under Federal Rule of Civil Procedure 12(b)(6) the issue is whether the Plaintiffs allege "enough facts to state a claim to relief that is plausible on its face," assuming that the allegations are true. *Twombly*, 550 U.S. at 570. However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Claims of voting rights violations under both the Fourteenth and Fifteenth Amendments require proof of racially discriminatory intent or purpose. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Mobile v. Bolden*, 446 U.S. 55, 62 (1980) ("Our decisions, moreover, have made clear that action by a State that is racially neutral on its face violates the Fifteenth Amendment only if motivated by a discriminatory purpose.") The burden of proof is on the challenger to prove a law was enacted with discriminatory intent. *Abbott v. Perez*, 138 S.Ct. 2305, 2324 (2018) ("Whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the State.")

Courts in the Fifth Circuit look to five non-exhaustive factors to determine whether a decision was made with discriminatory intent. *See Fusilier v. Landry*, 963 F.3d 447, 463 (5th Cir. 2020). These factors are, "(1) the discriminatory impact of the official action; (2) the historical background of the decision; (3) the specific sequence of events leading up to the challenged action; (4) substantive and procedural departures from the normal-decision making process; and (5) contemporaneous viewpoints expressed by the decision-makers. *Id.*

**A.  Plaintiffs' allegation of discriminatory impact lacks factual support.**

Plaintiffs allege SB1 has a "known and reasonably foreseeable discriminatory impact" but do not come forward with any facts to support this assertion. Compl. ¶¶ 202, 208. They do not point to any provision that is discriminatory on its face and do not provide any facts to show that SB1 has or will have racially discriminatory impact. Bare assertions are insufficient.  Plaintiffs must present facts. Plaintiffs have not presented any facts and this factor does not support that SB1 was passed with discriminatory intent.

**B.  Plaintiffs analyze the historical background of the decision under the wrong standard.**

Plaintiffs attempt to use the second factor, the historical background of the decision, as an inquiry into other, past decisions made by previous iterations of the Texas Legislature. But this is the wrong inquiry. The historical background factor considers the historical facts underpinning the decision to enact *the law at issue*. *See Fusilier*, 963 F.3d at 463-66 (reviewing the decisions of the legislature to consider and reject multiple changes to the electoral method for a Louisiana Judicial District Court). Plaintiffs have converted the factor into a review of the intent of past Texas legislatures on other, unrelated types of voting legislation.

Plaintiffs trace Texas' history of voting rights back to 1845. Compl. ¶¶ 31-38. While this recitation is an interesting read, it says nothing about the correct inquiry: whether the 2021 Texas Legislature had any discriminatory intent. The intent of the legislature in enacting laws in 1845, 1902, 2003, and 2012 is irrelevant. There is no allegation that the legislature considered bills like SB1 in any of those prior sessions. The intent of the 2021 legislature in passing SB1 is in question. *See Abbott*, 138 S.Ct. at 2324-25. Whether or not Texas had a poll tax in 1966, for example, has no probative value determining the motivations of legislators in 2021. "The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past

discrimination. '[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful.'" *Id.* (citing *Mobile*, 446 U. S. at 74). The conduct of the Texas legislature years before most of the current legislators were born has no bearing on whether the Texas legislature had discriminatory intent in passing SB1. Again, Plaintiffs do not present facts to support this factor, and it does not support that SB1 was passed with discriminatory intent.

**C.   Plaintiffs do not present any facts on the sequence of events leading up to the challenged action that establish discriminatory intent.**

Plaintiffs' allegations regarding the sequence of events, even if taken as true, would not suggest discriminatory intent. In paragraphs 42 – 46, Plaintiffs provide statistics that voter registrations and turnout in Texas are rising. Minority turnout is also rising. But nowhere do Plaintiffs allege any *reason* why the Legislature would seek to reverse those gains through SB1. To the contrary, they rightfully mention that Gov. Abbott made moves during the 2020 election to make it easier to vote by extending the early voting period. Compl. ¶ 49. Additionally, Plaintiffs do not present any facts that suggest that SB1 would reverse those gains (because it will not). They only posit speculation.

Plaintiffs also do not allege that there was no voter fraud in the 2020 election, which triggered the changes in SB1. Compl. ¶ 57. They simply conclude that voter fraud was not widespread in their view. *Id.* at ¶ 58. Obviously, the legislature felt differently. That is not sufficient to establish discriminatory intent.

**D.   Plaintiffs do not allege any substantive or procedural departure from the normal decision-making process.**

Plaintiffs support their argument that the legislature deviated from the normal legislative process with paragraphs 59-65 of the Complaint. They outline some of the steps in the legislative process that led to the passage of SB1. Those paragraphs, however, describe a legislative process that starts with the introduction of a bill, continues with committee hearings with witnesses and

floor action with amendments, leads to passage in both chambers, a conference committee, and concludes with a conference committee report that was passed by both chambers. Compl. ¶¶ 59-65. There is no evidence that this is outside the normal legislative process. Indeed, there is no detail of what Plaintiffs consider the normal legislative to be or how the passage of SB1 deviated from that process. Plaintiffs merely recite the process and conclude that it is outside the normal process. This is insufficient and does not support a finding that SB1 was passed with discriminatory intent.

### E. Plaintiffs' allegations that the viewpoints expressed by the decision-makers show evidence of discriminatory intent is unsupported by the evidence.

Finally, Plaintiffs allege that the stated justifications for SB1 are tenuous, and therefore show discriminatory intent. But Plaintiffs concede that the justification for SB1 is to prevent fraud in elections. *See, e.g.*, Compl. ¶3. And Plaintiffs also concede that fraud occurs in Texas. *See id.* ¶¶ 3, 57. In other words, Plaintiffs concede that SB1 is directly related to a real-world problem it is trying to solve. Plaintiffs' objection is therefore not one of tenuousness, but one of policy. Plaintiffs believe that, as a matter of sound policy, the documented fraud detected and prosecuted in Texas is *not widespread enough* to merit intervention by the legislature. *See id.* ¶ 58. But that sort of cost-benefit analysis is a decision for the legislature.

Preventing fraud is an important state interest. *Brnovich v. Democratic Nat'l Comm.*, 141 S.Ct. 2321, 2340 (2021) ("One strong and entirely legitimate state interest is the prevention of fraud."); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) ("While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear.") And SB1 addresses fraud directly—a fact that Plaintiffs do not deny. Plaintiffs simply think that a little fraud is tolerable. The legislature, however, is free to disagree and pass legislation to address an important state interest. That the legislature has a different cost-benefit analysis than Plaintiffs about the value of combatting voter fraud is not evidence of discrimination.

The complaint does not cite to any comments by legislators, nor any testimony taken during committee meetings that show any racial intent. Plaintiffs' Counts II and III are based on wholly unsupported conclusions and are nothing more than judicial fishing exercises. This is exactly the conduct that *Iqbal* and *Twombly* along with Rule 8 are meant to prevent. Both claims should be dismissed for failure to state a claim because there is <u>no</u> evidence alleged by Plaintiffs or otherwise that SB1 was enacted with discriminatory intent.

**V.      Count IV – Claim IV does not present enough information to elicit a response.**

Count IV is a bare bones count that does not present enough information to allow Defendants to reasonably respond. Plaintiffs do not allege any sections of SB1 that it believes violate section 2 of the VRA. Defendants are left to guess which sections of SB1 are at issue.

Plaintiffs' summary of Count IV is found in paragraph 211: "The aforementioned burdens and restrictions of SB1 place on voters individually—and even more so collectively—abridge the opportunity of minority voters to participate in the political process and exercise their right to vote." But Plaintiffs do not explain which burdens and restrictions are at issue. Defendants are entitled to know what is at stake in this case and what it needs to respond to. This Count does not provide any information for Defendants to make that determination. Count IV should be dismissed or in the alternative the Plaintiff should be ordered to provide a more definitive statement under Rule 12(e) so that Defendants will be apprised of which sections of SB1 plaintiff believes violates the VRA.

**VI.     Count V – SB1 does not prevent an eligible voter from choosing the assistant of their choice.**

Plaintiffs allege that SB1's provisions on voter assistance conflict with Section 208 of the Voting Rights Act ("VRA") by barring voters from choosing the assistant of their choice. But Plaintiffs have not established that any of the assistance provisions bar any voter from choosing

the assistant of their choice. Plaintiffs have not even alleged that. Instead, they have alleged – without any evidence – that some people may not desire to serve as assistants due to SB1. This is not sufficient to create a conflict with section 208.

Section 208 of the VRA establishes a federal statutory right: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." *See OCA-Greater Houston v. Texas,* 867 F.3d 604, 607 (5th Cir. 2017) (reciting section 208). "The language of section 208 allows the voter to choose a person who will assist the voter, but it does not grant the voter the right to make that choice without limitation." *Ray v. Texas*, 2008 US Dist. LEXIS 59852, *19 (E.D. Tex. Aug. 7, 2008). Other courts agree, "Section 208 does not say that a voter is entitled to assistance from *the* person of his or her choice or *any* person of his or her choice." *Priorities USA v. Nessel,* 487 F.Supp.3d 599, 619 (E.D. Mich. 2020) (emphasis in original). The question here is whether the provisions of SB1 conflict with the federal statutory right for the voter to be given the assistant of their choice. Nothing in SB1 prevents the voter from choosing a particular assistant.

Plaintiffs concede that "Texas election law provides voters who need assistance with the right to receive such assistance from a person of their choice" but allege that "SB1's new restrictions gut that provision by impeding the voter's practical ability to get assistance." Compl. ¶ 215.[4] Plaintiffs identify "four new restrictions on assistance for voters" that conflict with Section 208. *See* Compl. ¶ 71. Plaintiffs further describe these restrictions as (1) the requirements of an oath from the assistor in section 6.04 of SB1 (Compl. ¶ 72-75), (2) the requirements that the

---

[4]     Compl. ¶ 216 appears to be a duplicate of ¶ 215 except with the omission of a "thus." It does not appear that ¶ 216 adds any additional theories of liability.

assistant provide information demonstrating the assistant's relationship to the voter and whether the assistant was compensated under section 6.03 and 6.05 of SB1 (Compl. ¶ 75-76); (3) the prohibition on third-party payments to assistants in section 6.06 of SB1 (Compl. ¶ 77); and (4) the requirement for an assistant that transports more than seven voters to the polls to identify themselves in section 6.01 of SB1 (Compl. ¶ 78). None of these provisions prevent a voter from using the assistant of their choice. Plaintiffs only theory is speculation that an assistant might be deterred from assisting. In other words, a voter may ask someone to assist but the assistant might decline. But they have not identified any assistant deterred by these provisions. They also have not identified a voter that could not locate an eligible assistant. This speculation (even if correct) is not enough to violate section 208 of the VRA.

Plaintiffs do not allege that SB1 prevents the voter from choosing whomever they want. The voter can choose the assistant, but the assistant must be willing and able to agree to the identification provisions and swear to an oath that they complied with the law. Obviously, the assistant must comply with many other provisions of law beyond those just in the oath to serve as an assistant. Examples include Tex. Elec. Code § 61.003 which bars electioneering in a polling place and Tex. Penal Code § 46.03(a)(2) which bars possession of a firearm in a polling place. Under Plaintiffs' view, the prohibition on carrying a firearm would deter armed Texans from serving as assistants, limit the available pool of available assistants, and would, therefore, conflict with section 208. And they would only have to allege that someone would be deterred without identifying anyone. This is obviously not the case. *Ray*, 2008 US Dist. LEXIS 59852 at *18 (noting and rejecting the view that the State would be forced to honor a voter's choice to have an incarcerated person serve as an assistant to comply with section 208). The voter is entitled to the

assistant of their choice, but the assistant must be willing to serve and abide by the law. The provisions in section 6 of SB1 do not conflict with section 208 of the VRA.

**VII.    Count VI – Plaintiffs' have not established that they have standing to bring a claim under the ADA, and otherwise do not state a claim upon which relief can be granted.**

Claim VI alleges that SB1's provisions on voter assistance violate the ADA. No Plaintiff has standing to bring this claim. Additionally, Plaintiffs' claim cannot prevail because Texas has provided an accommodation to aid the disabled in voting. Plaintiffs have not set forth any facts to show that this accommodation is not reasonable.

**A.  Plaintiffs have not alleged a sufficient injury to confer standing**

Claim VI should be dismissed because no Plaintiff has standing to bring a claim under the ADA. Neither of the individual Plaintiffs are themselves disabled and none of the organizational Plaintiffs have pled facts sufficient to show an injury.

In order to establish standing, "A plaintiff must show: (1) an injury in fact to the plaintiff that is concrete, particularized, and actual or imminent; (2) the injury was caused by the defendant; and (3) the injury would likely be redressed by the requested judicial relief." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020) (citing *Thole v. U. S. Bank N.A.*, 140 S.Ct. 1615, 1618 (2020)).

Neither of the individual Plaintiffs[5] have alleged an injury to the assistance provisions of SB1. Neither allege that they are disabled. Individual Plaintiffs lack standing to raise Court VI.

Although they attempt to concoct an injury, the organizational Plaintiffs[6] also do not allege an injury. In the Fifth Circuit, "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct . . ." *N.A.A.C.P. v. City of Kyle,*

---

[5]    The individual Plaintiffs are Mr. Lewin and Ms. Longoria.
[6]    The organizational plaintiffs are the remaining defendants.

*Tex.*, 626 F.3d 233, 238 (5th Cir.2010). There is an injury if, "the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its activities—with the consequent drain on the organization's resources . . ." *Id.* (citation and internal quotation marks omitted).

Plaintiff LUPE's allegations are illustrative of organizational Plaintiffs' alleged injury: "SB1 will frustrate the mission of LUPE by reducing the number of people available to assist voters and reducing voter turnout of voters who rely on assistance, including Latinos with limited English proficiency, limited literacy rates and low rates of turnout." Compl. ¶ 129. This reduction of available assistants is alleged to force LUPE to expend funds to recruit new assistants. But this potential expenditure of funds rests on LUPE's proposition that SB1 will "reduc[e] the number of people available to assist voters." Compl. ¶ 129. Plaintiffs present no facts to support this proposition. They have not disclosed a single person who would have been willing to serve as an assistant before SB1 and would not be willing to serve as an assistant after SB1. There is no evidence – beyond highly attenuated speculation – that any organizational plaintiff has or will have to expend these funds because there is no evidence that the assistant candidate pool will be limited in any way by SB1. There is simply no injury to any Plaintiff as an organization that flows from the assistance provisions of SB1. This same analysis applies to all of the organizational Plaintiffs.

With respect to associational standing, the organizational Plaintiffs fair no better. Organizational Plaintiffs can establish standing if, *inter alia,* one of their members would have standing on its own. *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). Only two Plaintiffs alleged that they have any disabled members: LUPE and Fiel (Compl. ¶¶ 119, 179). Neither of these Plaintiffs, however, identified how the unidentified member has been harmed. Again, there is no allegation anywhere in the complaint that a member of LUPE or Fiel (or any

Plaintiff) is unable to receive assistance because of the edicts of SB1. Organizational Plaintiffs do not associational standing to assert that the assistance provisions of SB1 violate the ADA.

In sum, the individual Plaintiffs lack standing because neither is disabled and has suffered no injury. Similarly, the organizational Plaintiffs have not established that they must divert funds to combat the effects of SB1 so they, likewise, have no injury. Finally, the organizational Plaintiffs have not established associational standing because they have not established that a member has standing. Since no Plaintiff has standing to bring this claim, it must be dismissed.

### B. Plaintiffs' ADA claim falls outside the ADA's constitutionally permitted use, therefore plaintiffs fail to state a claim.

Title II of the ADA has been used, through the Due Process Clause of the Fourteenth Amendment, to combat *exclusion* from government programs and services on the basis of disability. In *Tennessee v. Lane*, 541 U.S. 509 (2004), two disabled plaintiffs sued the state under Title II when they were altogether precluded from exercising their due process rights for lack of access to the upper floors of the state courthouse. *Id*. 513. Here, however, disabled persons in need of voting assistance are guaranteed such assistance under SB 1. Unlike the plaintiffs in *Lane* who were wholly unable to exercise their due process rights, plaintiffs here merely allege that they will not get the degree of assistance they desire.

Furthermore, the Equal Protection Clause of the Fourteenth Amendment places constitutional limits on Title II's ability to remedy alleged discrimination. In *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 509 (2001), two plaintiffs sued the state under Title II, one after a cancer diagnosis required her to take time off from work and she was fired, and the other after a lack of workplace accommodation for his asthma damaged his work performance. They alleged discrimination rather than a lack of due process, and thereby invoked the ADA's constitutionality under the Equal Protection Clause. The Supreme Court rejected both claims

because the Equal Protection Clause required "a pattern of discrimination by the State[]" against disabled persons, which was not present there. Likewise, there is no evidence that Congress identified a pattern of discrimination by the State of Texas against the disabled in the realm of voting.

Because plaintiffs' ADA claim lacks constitutional grounding, both under the Due Process Clause and the Equal Protection Clause, plaintiffs fail to plausibly state a claim upon which relief can be granted under *Twombly*. Count VI should therefore be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

**VIII.   Count VII – SB1's anti-solicitation provision is Constitutional because it only applies to the speech of public officials in their official capacities.**

Plaintiff Longoria challenges section 7.04 of SB1 that bars "a public official or election official…while acting in an official capacity" from soliciting "the submission of an application to vote by mail from a person who did not request an application" as a violation of her First Amendment rights. Ms. Longoria's claim is barred, however, because section 7.04 only bars her from soliciting applications while acting in her official capacity. When acting in her official capacity and performing her official duties, Ms. Longoria is not speaking as a citizen under the First Amendment and the Constitution gives the State the ability to put limits on her speech.

The speech of a public official while operating in his or her official capacity does not receive the same level of protection under the First Amendment as that of a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). In fact, it receives no protection. *Garcetti*, is unambiguous. "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Court noted that the key policy reason was, "Employers have heightened interests in controlling

speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity." *Id.* at 422.  It is clear, however, that Ms. Longoria retains First Amendment rights outside of her work but does not give her the right to say and do whatever she wants as an Elections Administrator. *Id.* ("The employees retain the prospect of constitutional protection for their contributions to the civic discourse. This prospect of protection, however, does not invest them with a right to perform their jobs however they see fit.") Under *Garcetti,* Texas is allowed to dictate her conduct and set parameters for disciple if she does not follow those parameters.

By its express terms, the anti-solicitation provisions are limited to a "public official or election official…while acting in an official capacity."[7] Ms. Longoria is an Elections Administrator tasked with implementing the policies and provisions of the Texas Election Code. The Texas Legislature is responsible for setting this policy and the provisions. The Legislature decided that it did not want election officials, in the course of their duties, to solicit the submission of an application to vote by mail from a person who did not request an application. Since section 7.04 is confined to public officials while acting in their official capacity, this policy preference in does not implicate the First Amendment and Count VII should be dismissed.

IX.   **Count VIII – SB1's vote harvesting provision is not vague and does not implicate the First Amendment.**

SB1's vote harvesting provision in section 7.04 is narrowly tailored to prevent the fraudulent practices it bans. Namely, it prevents compensated operatives from influencing voters when they vote in a place other than a polling place (where election officials can monitor the situation).  In other words, it applies traditional electioneering and ballot secrecy standards to vote

---

[7]    SB1 § 7.04 to be codified at Tex. Elec. Code § 276.016(a).

by mail done outside a typical polling place. Plaintiffs make a vagueness challenge to SB1's vote harvesting provisions.

Plaintiffs contend that SB1's vote harvesting restrictions "fail[] to provide adequate notice of what is (or is not) prohibited." Pl.'s Compl. ¶ 235. They complain that the law "does not define 'in-person interaction,' potentially reaching a wide and varying range of possibilities," that the "requirement that an interaction be 'in the physical presence of' a ballot or mail ballot is also unclear and does not adequately define the possible kinds of interactions that could come within the statute's prohibitions," and that the "intent requirement (that the interaction be 'intended to deliver votes') is also cryptic." *Id.* at ¶ 235. They further argue that the requirement that a person receive "compensation or other benefit" is "wide and unpredictable to a reasonable person attempting to understand what conduct the law prohibits." *Id.* at ¶ 236. They argue that as a result, the law "invites arbitrary and discriminatory enforcement… A campaign worker could open herself to the possibility of criminal prosecution virtually any time she speaks about her work to another voter in the presence of a ballot, absentee ballot, or application for absentee ballot." *Id.* at ¶ 237. Lastly, in their facial challenge, they note that speech is "*a* form" of in-person interaction. *Id.* at ¶ 238 (emphasis added).

The due process guarantees of the Fourteenth Amendment include constitutional protections against "vague" criminal laws. "A statute is unconstitutionally vague only if 'it fails to give ordinary people fair notice of the conduct it punishes,' or is 'so standardless that it invites arbitrary enforcement.'" *United States v. Davis*, 139 S.Ct. 2319, 2342 (2019). *See also Moore v. Brown*, 868 F.3d 398, 406 (5th Cir. 2017). To avoid facial vagueness, a law need not be patently clear as to every conceivable hypothetical application. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 493 (1982) (holding that a statute is facially vague in violation

of due process only when the law is impermissibly vague in all its applications). When reading for vagueness, courts also inspect a provision's context for its meaning. *See Grayned v. City of Rockford*, 408 U.S. 104 (1972). Furthermore, the longstanding "rule of lenity[] ensures fair warning by so resolving ambiguity in a criminal statute as to apply it *only* to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (emphasis added). "We have said that when a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.' 'But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (internal citations omitted). A statute that in context can give fair notice to the ordinary citizen will therefore not succumb to a vagueness challenge even if hypothetically could have been clearer.

### A. SB1's vote harvesting provision is clear to an ordinary person.

Plaintiffs cannot seriously argue that they do not know what is prohibited in section 7.04 of SB1. It bars a political operative (one who intends and desires to encourage voting for a candidate or issue) from interacting with a voter while the ballot is present. It is a simple law designed to protect voters from undue influence while they are in possession of a ballot.

The terms in SB1's prohibition on vote harvesting are clear. None of "in-person interaction," "in the physical presence of," "compensation and other benefit," "inten[t] to deliver votes" are unconstitutionally vague. These are ordinary terms that an ordinary person understands. Indeed, these are not unique terms in the law. Many of them are used in the Federal Code. For example, "in-person interaction" is used in 42 U.S.C. 3030s to define how a caregiver assessment must be done. Likewise, the Federal Code is replete with uses of "in the physical presence of" using the term at least eight times. In the Criminal Code, for example, 18 U.S.C. 3509(b)(2)(B)(i)

defines the procedure for allowing a child to be excused from testifying *in the physical presence of* the defendant. "Benefit" is defined by SB1 and it is "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person."[8] This language is clear in that it is meant to prevent schemes that involve the trade of favors rather than simply monetary compensations. Plaintiffs seem to believe that the term is broad, but that does not make it vague. Lastly plaintiffs themselves indicate "intended to deliver votes" has a plausible meaning. They argue it means "nothing more than a political motivation." Pl.'s Compl. ¶ 235. This plausible meaning, which plaintiffs admit, negates facial vagueness because it is at least one application that is constitutional. *See Buckley v. Valeo*, 424 U.S. 1, 25–26 (1976) ("the prevention of… the appearance of corruption" is a "constitutionally sufficient justification").

The provisions of SB1's vote harvesting section gives ordinary citizens fair notice of the conduct it punishes and is not unconstitutionally vague.

### B. The fact that some of the terms have room for interpretation does not make them unconstitutionally vague.

In *Holder*, plaintiffs asserted that "training," "expert advice or assistance," "service," and "personnel," were unconstitutionally vague.  Holder, 561 U.S. at 14. Like in *Holder*, plaintiffs here challenge terms that have a plain meaning to the ordinary person. The terms plaintiffs challenge in this case, are similar to the terms in *Holder*, in that they describe physical people, behavior and proximity. This is true even if there is some room for interpretation, as with "expert" for example, which in itself does not constitute vagueness. SB1's terms, as well as the terms in *Holder*, are dissimilar to terms that have traditionally been held vague, like "annoy" and "indecent," which are

---

[8]        To be codified at Tex. Elec. Code § 276.015(a)(1).

necessarily subjective. Furthermore, the Court in *Holder* gave those terms their clear meaning and refused to strike them down as vague simply because plaintiffs could theorize undesirable results that as a technical linguistic matter might also fall within their scope. *Holder*, 561 U.S. at 22. Likewise, here, there are patently clear meanings available for the challenged terms. Absurd hypotheticals, even if theoretically grounds for an as-applied challenge, cannot negate those clear meanings to hold the provision facially unconstitutional.

### C.  Plaintiffs cannot show that the provisions are vague in all of their applications.

Plaintiffs strain to invent hypotheticals over which the language of the statute might be technically and tortuously stretched, but such a method does not support a facial vagueness challenge.

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982), involved a challenge to a local ordinance which required licensure for the sale of items that were "designed or marketed for use with illegal cannabis or drugs," and contained an exemplary list. *Id.* at 493. Even though there were potential applications of the law that could implicate protected speech, the Supreme Court nevertheless held that the ordinance was not vague because it was not impermissibly vague in all its applications. *Id.* at 497, 505. The ordinance's language "designed… for use" was not facially vague because it was sufficiently clear that the standard encompassed at least an item principally used for illegal activity. *Id.* at 505. The plaintiff necessarily had ample warning of the prohibited conduct. *Id.* at 499. Additionally, the language was sufficiently clear to avoid arbitrary enforcement, and could not render it void in a pre-enforcement challenge. *Id.* at 504.

Like in *Hoffman Estates*, SB1's anti-solicitation provision is not vague in all its applications, and therefore survives a facial vagueness challenge. As in *Hoffman Estates*, the terms "in-person interaction," "in the physical presence of," "compensation" and "inten[t] to deliver

votes" each encompass a meaning, or many meanings, that are not constitutionally protected. Simply because the Plaintiffs can dream up situations where the statute might run afoul of the constitution does not make the statute facially vague. As in *Hoffman Estates* where the existence of at least one constitutional interpretation saved the statute from a facial vagueness challenge, here, these terms' ample constitutional meanings must save the provision. Because there is ample clear and constitutional meaning in the challenged terms, it must survive plaintiffs' facial challenge.

### D.  The rule of lenity applies.

The "rule of lenity" cements the notion that courts, when faced with either striking down an entire law as facially vague or simply refusing to enforce an absurd conclusion construed from any shortcoming in the law's clarity, will choose the latter. *See, e.g.*, *Liparota v. United States*, 471 U.S. 419, 427 (1985)*; United States v. Bass*, 404 U.S. 336, 347–48 (1971). "Our task as a federal court is, to the extent possible, to construe the provisions to avoid a constitutional conflict." (*Voting for America, Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012) (citing *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 514 (1990)). The determination of whether a democratically enacted statute is constitutional on its face requires that "every reasonable construction… be resorted to [] in order to save a statute from unconstitutionality." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 563 (2012). Because even plaintiffs themselves have pointed out plausible constitutional meanings to the challenged terms of SB1's vote-harvesting provision, the statute cannot be facially vague.

### E.  Any further claim under the First Amendment is duplicative of Count I.

It appears that within Count VIII, Plaintiffs re-urge the same claim that they urge in Count I. Namely that section 7.04's vote harvesting provisions violate the First Amendment. These

arguments were addressed in Section III.A, *supra.* To the extent Plaintiff is raising a non-vagueness First Amendment challenge in Count VIII, it should be dismissed for the same reasons as Count I.  If Plaintiff is raising a different First Amendment challenge, it should be dismissed under *Iqbal* and *Twombly* for failing to plead with particularity.

X.     **Count IX – Plaintiffs' vagueness challenge fails because they do not read the poll watcher provisions in context.**

Like Count VIII, in Count IX Plaintiffs present a facial vagueness challenge to a provision of SB1. Here, Plaintiffs allege that the poll watcher obstruction provisions in section 4.09 are unconstitutionally vague. Specifically, Plaintiffs' challenge "any action" and "in a manner that would make observation not reasonably effective." Compl. ¶ 243. But Plaintiffs do not read the entire provision and ignore the context of the provision. Plaintiffs' vagueness challenge fails.

Section 4.09 of SB1[9] reads in totality as follows:

 "A person commits an offense if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective."

Plaintiffs ignore the obvious plain reading of the statute and instead attempt to create ambiguities. The crime is defined as "a person…knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe." *Id.* The statute clarifies that the prohibited acts include "taking any action to obstruct the view of a watcher[.]" *Id.* Read in context the size or type of action is not important. What matters is that the action prevents the poll watcher from observing the activities and procedures that the watcher is entitled to observe. This is clear to an ordinary person.

---

[9]     To be codified at Tex. Election Code § 33.061(a).

Plaintiffs further complain that "not reasonably effective" is not defined in the Elections Code. Compl. ¶90. Every term in a statute must have a meaning but every term need not be defined. *See Grayned*, 408 U.S. at 112 (finding a statute that lacked precise definitions was nevertheless not vague because it had meaning within its context).

Other provisions of the Election Code also provide guidance as to what the poll watcher must be able to observe. And what observation is reasonably effective depends on what is being observed. For example, in section 4.07 of SB1, section 33.056(a) of the Election Code is amended to clarify that, "A watcher is entitled to sit or stand near enough to see and hear the election officers conducting the observed activity" and section (f) was amended to further clarify that "In this code, a watcher who is entitled to 'observe' an election activity is entitled to sit or stand near enough to see and hear the activity."

It is clear in the context of the provision what reasonably effective means: the poll watcher must be in an unobstructed position to observe the activities that the poll watcher is entitled to observe. Since there are many things that the poll watcher is entitled to observe, the not reasonably effective standards provide elections officials with the ability to be flexible.

In *Cameron v. Johnson*, 390 U.S. 611 (1968), a group of protestors walked each weekday for a number of months along a "march route" set off by barricades by the sheriff so as to facilitate access to the courthouse. *Id.* at 614. The state legislature during this time enacted a prohibition on "picketing… in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any county… courthouses." *Id.* at 616. Plaintiffs challenged the law as vague and thereby as impinging on their First Amendment rights of free expression. *Id.* at 612-613. The Supreme Court found the law was not vague but rather, clear and precise and not overly broad

25

because it did not prohibit picketing unless it obstructed or reasonably interfered with ingress and egress to or from the courthouse. *Id*. at 615.

Like in *Cameron*, where the limitation on the picketing prohibition was the term "unreasonably interfere with free ingress or egress," 390 U.S. at 616, here the limitation on SB1's prohibition of obstructing poll watchers' views is that which would make the poll watcher's view not "reasonably effective."[10] As "reasonably interfere with free ingress or egress" was not vague, neither is the notion of poll watching that is not "reasonably effective."  *See Cameron*, 390 U.S. at 616.  "Reasonable" is a longstanding and often-used legal term of art with a clear meaning that is hardly ever unconstitutionally vague, despite its more subjective use in colloquial language. The law is replete with reasonable person standards, for example. Therefore, striking down a law as unconstitutionally vague for having its limiting principle involve the term "reasonable," as plaintiffs desire, would be a departure from legal tradition.

The plain meaning of Count IX's challenged terms is clear and obvious to the ordinary person. Even assuming specific, absurd hypotheticals could be reached under the technical language of the SB1's poll-watching provision, this does not support the challenge that the law is facially vague. Because courts will not strike down a law as facially vague when there are constitutional meanings within its basic scope, Count IX fails to state a plausible claim for relief under *Twombly*. Because its claims are also therefore conclusory under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Count IX should be dismissed pursuant to Fed. R. Civ. Pro. 12 (b)(6) for failure to state a claim upon which relief can be granted.

XI.    **Count X - fails to state a claim upon which relief can be granted because the Supremacy Clause does not provide a private cause of action.**

---

[10]      To be codified at Tex. Election Code § 33.061(a).

The Supremacy Clause does not provide an independent private cause of action. *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989); *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613 (1979). It does not allow courts to draw upon their independent equity powers where Congress has crafted its own deliberate regulatory scheme. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015). Although federal courts have a limited power to enjoin named state officials from unconstitutional action, this is a "judge-made remedy, and [the Court has] never held or even suggested that, in its application to state officers, it rests upon an implied right of action contained in the Supremacy Clause." *Id.* at 327. Instead, the Supremacy Clause only instructs courts how to parse out a clash between state and federal laws. *Id.* at 324. Therefore, where Congress has provided a mechanism to vindicate statutory or constitutional rights against a state, it is that mechanism alone upon which relief can be granted, not upon the Supremacy Clause.

Here, plaintiffs contend that "SB1 violates the Supremacy Clause of the U.S. Constitution by denying eligible voters the right to choose their assistors[.]" Pl.'s Compl. ¶ 248. They further allege that numerous sections "violate the Supremacy Clause… because they conflict and interfere with the implementation and enforcement of federal law, namely Section 208 of the Voting Rights Act." *Id.* ¶ 249. This language, as well as the very fact of reserving an entirely unique count in their complaint for the Supremacy Clause, indicates that plaintiffs attempt to use the Clause as a stand-alone basis for another claim against SB1. They are misguided, however, as the Supremacy Clause cannot be used in this manner. "[The Supremacy Clause] is not a source of any federal rights." *Golden State*, 493 U.S. at 107. But the VRA has its own independent statutory cause of action, therefore the Supremacy Clause does not apply. *See Armstong,* 575 U.S. at 327-328. Count

X therefore fails to state a plausible claim for relief and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**XII.   Count XI – Count XI is a duplicate of Count I and should be dismissed for the same reasons.**

Count XI asserts that SB1 violates the First and Fourteenth Amendments to the Constitution. Count I asserts the same. Paragraph 251 of Count XI is an almost verbatim copy of paragraph 194 of Count I. Both counts challenge "SB1's enhanced information requirements, expanded oath, exposure to a potential perjury charge, and accompanying enhanced criminal penalties for persons assisting voters." Count XI should be dismissed as duplicative of Count I as a matter of course and for the same reasons as Count I as a matter of substance.

## CONCLUSION

Defendant Torres respectfully requests that the Court dismiss the claims asserted against him.

Respectfully submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHAD ENNIS
Texas Bar No. 24045834
cennis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:      (512) 472-2728

*Attorneys for Lupe C. Torres*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically on October 25, 2021, with the Clerk of the Court for the U.S. Western District of Texas by using the CM/ECF system, causing electronic service upon all counsel of record.

*/s/Robert Henneke*
ROBERT HENNEKE