## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| LULAC TEXAS; VOTO LATINO; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, in his official capacity as the Texas Deputy Secretary of State; KEN PAXTON, in his official capacity as Texas Attorney General; JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; DANA DeBEAUVOIR, in her official capacity as the Travis County Clerk; ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator; YVONNE RAMÓN, in her official capacity as the Hidalgo County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator; LISA WISE, in her official capacity as the El Paso County Elections Administrator, <br><br> *Defendants*, <br><br> PUBLIC INTEREST LEGAL FOUNDATION, <br><br> *Proposed Intervenor-Defendant.* | Case No. 1:21-cv-00786, *consolidated with* 5:21-CV-0844-XR |

## PUBLIC INTEREST LEGAL FOUNDATION'S REPLY TO THE RESPONSE TO ITS MOTION TO INTERVENE

The Public Interest Legal Foundation ("Foundation"), by and through undersigned counsel,

respectfully files this reply to the oppositions filed by the *LULAC Texas* plaintiffs (Doc. 46), the

1

*Houston Justice* plaintiffs (Doc. 49),[1] the *LUPE* plaintiffs (Doc. 50), and the County Defendants (Doc. 52). The State Defendants did not oppose the Foundation's Motion. Because the plaintiffs and county defendants put forth substantially similar arguments in their multiple filings, the Foundation files this one reply to all responses.

## ARGUMENT

The Foundation satisfies the requirements for both permissive intervention and intervention as of right under the federal rules. Because the bulk of the parties' objections concern intervention as of right and because the Foundation's Motion may be decided on permissive intervention grounds alone, the Foundation begins there.

As a preliminary matter, it should be noted that plaintiffs' oppositions contain plain factual mischaracterizations. For example, the *LULAC* plaintiffs claim that the Foundation's motion to intervene in *League of Women Voters of the United States v. Newby* was "unopposed." (Doc. 46 at 8). The Foundation's motion was not unopposed. *See* Motion to Intervene (Doc. 24) at 1-2, *League of Women Voters v. Newby*, No. 1:16-cv-00236 (D.D.C. Feb. 20, 2016) ("Plaintiff League of Women Voters does not consent to the motion. The other Plaintiffs have not yet responded.")

### A.    The Court Should Permit Intervention.

It is undisputed that permissive intervention is "wholly discretionary," (*see* Doc. 50 at 9). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained," *Texas v. U.S.*, 805 F. 3d 653, 657 (5th Cir. 2015) (citations omitted). Intervention of public advocacy groups can offer to the Court "experience, views, and expertise…[that] will help to clarify, rather than clutter the issues in the action, which will in turn assist the Court in reaching

---

[1]  Notice of joinders regarding the *Houston Justice* plaintiffs' opposition were filed by the *Mi Familia Vota* plaintiffs (Doc. 48) and the *OCA-Greater Houston* plaintiffs (Doc. 51).

its decision." *Kobach v. United States Election Assistance Comm'n*, No. 13-cv-4095-EFM-DJW, 2013 U.S. Dist. LEXIS 173872, at *14 (D. Kan. Dec. 12, 2013).

Here, the primary argument against permissive intervention across the responses appears to be that the "complication" of intervention will impair the resolution of this matter. To the contrary, permitting intervention will serve to assist in the resolution of this matter. The Foundation's expertise in election integrity issues and experience litigating such cases will aid in judicial economy.

Concerns regarding the Foundation needlessly complicating this matter are misplaced. The *LUPE* plaintiffs state that "[w]hile PILF's defense and the main action have overlapping questions of law, its addition will only interject added complexity and delay into an already large, consolidated case." (Doc. 50 at 9). The *LULAC* plaintiffs raise concerns about the Foundation making the litigation "more complex, expensive, and time consuming at every step." (Doc. 46 at 12). The County Defendants claim that the Foundation's "intervention would needlessly complicate the efficient adjudication of an already complex consolidated matter with no corresponding benefit." (Doc. 52 at 8). Yet none of the responses explain how an organization committed to fair elections would complicate a case about a law to promote fair elections. The benefit of adding the Foundation, a single intervenor that is committed to ensuring a full defense of Texas's law while avoiding all unnecessary delays and disruptions (*see* Doc. 43 at 4), outweighs any hypothetical complication experienced by the over 80 attorneys representing those opposing the Foundation's Motion, all of whom are, in the words of the *LUPE* plaintiffs, "competent, sophisticated counsel." (Doc. 50 at 4.)

The *LULAC* plaintiffs argue that the Foundation's affirmative defenses are "an apparent attempt to derail these proceedings and divert the resources of counsel and the Court." (Doc. 46 at

13). To be sure, the Foundation agrees that it is likely to raise defenses that the existing Defendants will not, but that is a reason to *permit* intervention. The Court should hear *all* defenses to ensure a full and thorough understanding of the issues implicated by this case. A fulsome defense of Texas's law does not "derail these proceedings," rather, it is ensuring a full resolution of this matter at the district court stage, preserving judicial economy, and preventing a protracted and more complicated appellate review. In fact, in evaluating the Foundation's motion to intervene in the District of Nevada, the magistrate judge determined that the Foundation's constitutional defenses would not cause delay but rather would expedite the matter. *Luna v. Cegavske*, No. 2:17-cv-02666-JCM-GWF, 2017 U.S. Dist. LEXIS 209485, at *21-22 (D. Nev. Dec. 20, 2017). *See also Luna v. Cegavske*, No. 2:17-CV-2666 JCM (GWF), 2018 U.S. Dist. LEXIS 131557 (D. Nev. Aug. 6, 2018) (adopting magistrate's recommendations).

Further, the *LULAC* plaintiffs misconstrue the Foundation's affirmative defenses as a "vehicle to challenge the constitutionality of Section 2 of the Voting Rights Act." (Doc. 46 at 12-13.) Not so. The Foundation asserts that the evidence and allegations relied on by the plaintiffs here cannot support a constitutionally sound application of the Voting Rights Act. In other words, the plaintiffs are seeking to push legal arguments and facts well outside the confines of the Voting Rights Act. The Foundation's particular area of expertise—separating germane and insufficient allegations under Section 2—will therefore assist the Court by actually simplifying this case and conserving judicial resources.

Finally, plaintiffs ignore the fact that the Foundation has a similar interest in this case as some of the plaintiffs themselves. For example, Plaintiff William C. Velasquez Institute ("WCVI") is an "organization that conducts research aimed at improving the level of political and economic participation in Latino and other underrepresented communities." (Doc. 1 at 8, Case No. 1:21-cv-

00844). Similarly, the Foundation conducts research aimed at improving the integrity of elections. The Foundation's mission includes ensuring the enforcement of voter qualification laws and election administration procedures and aiding states that seek to exercise their constitutional powers to determine the rules and laws pertaining to their own state elections. Surely if WCVI is permitted to continue as a plaintiff, the Foundation should be allowed to proceed as a defendant. Both entities have interests in the outcome of the case. The plaintiffs' preference for which entities may or may not participate in this case cannot carry the day.

The Foundation has been allowed to intervene in other comparable cases, *see e.g.*, *Luna v. Cegavske*, No. 2:17-CV-2666 JCM (GWF), 2018 U.S. Dist. LEXIS 131557, at *1-2 (D. Nev. Aug. 6, 2018). For the reasons explained herein, and in its Motion to Intervene (Doc. 43), the Foundation should be permitted to intervene here as well.

**B.     The Court Should Grant Intervention As of Right.**

The Foundation also has a right to intervene. The timeliness of the Foundation's Motion is uncontested. Instead, the objections to the Foundation's intervention are primarily based on the Foundation's interest in the litigation and the adequacy of the state's representation of the Foundation's interests. The Foundation will address each concern in turn.

**1.     The Foundation's Strong Interests in Defending State Election Laws Will Be Impaired if Plaintiffs Prevail.**

As stated earlier, the Foundation is a nonprofit organization dedicated to election integrity. It exists to assist states and others to aid the cause of election integrity and fight against lawlessness in American elections. Contrary to the plaintiffs' assertions, the Foundation's interest is not a mere "generalized desire to ensure a certain outcome," (*see* Dkt. 46 at 4), but is the mission of the organization. If plaintiffs prevail—and election integrity reforms are undone—the Foundation's work will become more difficult and costly. Plaintiffs seek to fundamentally change the way

elections are run in Texas. The Foundation will need to devote additional resources to its work to make up for the loss of state authority in Texas and wherever else litigation is brought or merely threatened. In other words, the Foundation seeks to protect its mission from the misapplications of federal law that will directly affect the Foundation's activities both in Texas and across the country. Its interest here is sufficient to support intervention. *See Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015) ("[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.").

      **2. Existing Parties Will Not Adequately Protect the Foundation's Interests.**

The Fifth Circuit has stated that the burden of showing inadequate representation is "minimal." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (citations omitted). The Foundation explained why its interests are not adequately represented in its Motion. (Doc. 43 at 8-9). State Defendants' recent filings confirm the Foundation's suspicion that the Defendants would not raise the issues the Foundation intends to raise. (Dkt. 64 and 67). The Foundation's interests are thus not adequately represented.

## CONCLUSION

For these reasons and those in the Foundation's Motion to Intervene, the Court should grant the Foundation's Motion to Intervene.


Dated: October 28, 2021                    Respectfully Submitted,

/s/ Andy Taylor
Andy Taylor SBN: 19727600
Andy Taylor & Associates, P.C.
2628 Hwy 36 South #288
Brenham, Texas 77833
Tel: 713-222-1817
Fax: 713-222-1855
ataylor@andytaylorlaw.com


Maureen Riordan*
Kaylan L. Phillips*
Public Interest Legal Foundation
32 E. Washington St., Suite 1675
Indianapolis, Indiana 46204
Tel: 317-203-5599
Fax: 888-815-5641
mriordan@publicinterestlegal.org
kphillips@publicinterestlegal.org

*Counsel for Proposed Defendant-Intervenor
Public Interest Legal Foundation*

*Application for admission *pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I certify that on October 28, 2021, I caused the foregoing to be filed with the United States District Court for the Western District of Texas via the Court's CM/ECF system, which will serve all registered users.

 /s/ Andy Taylor
Andy Taylor SBN: 19727600
Andy Taylor & Associates, P.C.
2628 Hwy 36 South #288
Brenham, Texas 77833
Tel: 713-222-1817
Fax: 713-222-1855
ataylor@andytaylorlaw.com