**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., <br><br> Plaintiff, <br><br> v. <br><br> GREGORY W. ABBOTT, et al., <br><br> Defendants. | Case No: 5:21-cv-00844-XR <br><br> **Consolidated Cases:** *OCA-Greater Houston, et al. v. Jose A. Esparza, et al.*, No. 1:21-cv-780-XR; *Houston Justice, et al., v. Gregory Wayne Abbott, et al.*, No. 5:21-cv-848-XR; *LULAC Texas, et al., v. Jose Esparza, et al.*, No. 1:21-cv-0786-XR; *Mi Familia Vota, et al., v. Greg Abbott, et al.*, No. 5:21-cv-0920-XR. |

**BRIEF OF THE FOUNDATION FOR GOVERNMENT ACCOUNTABILITY
AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS**

*This brief is filed unopposed by all parties with the exception of
the Mi Familia Vota Plaintiffs, who oppose.*

Donna Garcia Davidson, TX Bar #00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
donna@dgdlawfirm.com

Chase Martin, ME Bar #005358
Stewart L. Whitson, MN Bar #0391405
Foundation for Government Accountability
15275 Collier Blvd., Suite 201
Naples, FL  34119
Telephone: 239-244-8808
Chase@TheFGA.org
Stewart@TheFGA.org
*pro hac vice admission pending*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….…………………iv-v

STATEMENT OF INTEREST…………………………………………………………………..1-2

INTRODUCTION AND SUMMARY OF ARGUMENT…………………………………….2-5

ARGUMENT……………………………………………………………………………………5-20

    I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER §2 OF THE VOTING RIGHTS ACT (VRA) BECAUSE THEY CANNOT SUFFICIENTLY PLEAD A DISCRIMINATORY PURPOSE BEHIND SB 1 AND VOTING REMAINS "EQUALLY OPEN" TO ALL TEXANS……………...……………………………………………………………………5-11

        A.  Plaintiffs Have Failed To Sufficiently Plead A Discriminatory Purpose Behind SB 1 Because No Such Purpose Exists……………………………………...………..……..5-7

        B.  Plaintiffs' Claim That SB 1 Fails The "Results Test" of the VRA §2 Is Implausible Because The Voting Process Remains "Equally Open" To All Texans……………7-11

            *1.  The Disparate Impact Alleged By Plaintiffs Is Legally Insufficient*..…………..8-10

            *2.  The Challenged Provisions Impose Only The Usual Burdens of Voting*..……........10

            *3.  Strong State Interests Support SB 1*………………………………………….........10

            *4.  The Totality of the Circumstances Establishes That Voting Remains Equally Open Under SB 1*…………………………………………………………………........11

    II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FIRST AND FOURTEENTH AMENDMENTS BECAUSE PLAINTIFFS ALLEGE ONLY MINIMAL IDIOSYNCRATIC BURDENS AND THE PROVISIONS CHALLENGED UNDER THE FREE SPEECH CLAUSE REGULATE ONLY NON-EXPRESSIVE CONDUCT…………………………………………………………………………...11-18

        A.  The Challenged Provisions Of SB 1 Do Not Implicate *Anderson-Burdick* Because They Do Not Burden The Right To Vote For All Voters………………………...…12-14

        B.  The Challenged Provisions Of SB 1 Do Not Implicate The Free Speech Clause Because They Regulate Conduct, Not Speech…………………………………...15-18

            *1.  Regulations Governing The Behavior Of Those Providing Voting Assistance Do Not Invoke First Amendment Free Speech Protection For Those Providing The Assistance………………………………………………………………15-16*

       *2.*   Regulations Governing The Behavior Of Poll Watchers Do Not Invoke The First Amendment…………………………………………………………..16

       *3.*   Ballot Harvesting Is Not Protected Speech………………………………16-18

III.    SB 1'S REASONABLE ACCOMODATION PROVISION RENDERS PLAINTIFFS' CLAIMS UNDER §208 OF THE VRA AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA) IMPLAUSIBLE ON THEIR FACE………..…………18-20

CONCLUSION………………………………………………………………..……………..20

CERTIFICATE OF SERVICE…………………………………………………………………21

CERTIFICATE OF COMPLIANCE………………………………………………………...22

# TABLE OF AUTHORITIES

## *Cases*

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)……………………………………………...12,14,18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………..*passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………………..*passim*

*Brnovich v. DNC*, 141 S. Ct. 2321 (2021)……………………………………..……………*passim*

*Burdick v. Takushi*, 504 U.S. 428 (1992)……………………………………………………12, 14, 18

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)……………...………………….. *passim*

*Frame v. City of Arlington*, 657 F.3d 215, 222 (5th Cir. 2011)…………………………………….5, 19

*Knox v. Brnovich*, 907 F.3d 1167, 1180-1182 (9th Cir. 2018)……………………………………16

*Mobile v. Bolden*, 446 U.S. 55 (1980)……………………………………………………………...7

*Purcell v. Gonzalez*, 549 U.S. 1 (2006)…………………………………………………………...17

*Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235-236 (5th Cir. 2020)……………………4, 13, 14

*Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006)……………………………………………………4, 15

*Spence v. Washington*, 418 U.S. 405, 410-411 (1974)………………………………………………15

*Texas v. Johnson*, 491 U.S. 397, 404 (1989)……………………………………………………...15

*Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 898 (5th Cir. 2012)……………………………16

*Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013)………………………………….4, 15

*Washington v. Davis*, 426 U.S. 229, 248 (1976)……………………………………………………12

## *Statutes and Regulations*

SB 1……………………………………………………...…………………………………..*passim*

52 U.S.C. §10301…………………………………………………………………………………...8

52 U.S.C. §10508…………………………………………………………………………………18

## *Other Authorities*

Alexa Ura, *Texas House passes new voting restrictions as Democratic hopes of killing the legislation wane,* TEXAS TRIBUNE (Aug. 26, 2021), available at
https://www.texastribune.org/2021/08/26/texas-house-voting-restrictions-bill/……..........................6

Boyd & Markman, *The 1982 Amendments to the Voting Rights Act: A Legislative History*, 40 WASH. & LEE L. REV. 1347, 1352-1353 (1983)……………………………………………………… ……...7

Building Confidence in U. S. Elections §2.5 (Sept. 2005), App. 136-137 ("Carter-Baker Report")………………………………………………………………………………………2, 17

*Houston Justice, et al.* Complaint ("Houston Justice Compl."), Case No. 5:21-cv-848-XR (Sep. 7, 2021)…………………………………..…………………………………………………..…..8, 13

*La Union Del Pueblo Entero, et al.* Complaint ("La Union Compl."), Case No. 5:21-cv-844-XR (Sep. 3, 2021) …………………………………………………………………..14, 18, 19

*LULAC Texas, et al.* Complaint ("LULAC Compl."), Case 1:21-cv-00786, (Sep. 7, 2021) ………………………………………………………………………..3, 5, 8, 11, 13, 14, 18, 19

*Mi Familia Vota, et al.* Complaint ("Mi Familia Vota Compl."), Case No. 5:21-cv-0920-XR (Sep. 27, 2021)…………………………………………………………………………15, 16, 18, 19

*OCA-Greater Houston, et al.* Complaint ("OCA Compl."), Case No. 1:21-cv-780-XR (Sep. 3, 2021) ……………………………………………………………………………………..16

**STATEMENT OF INTEREST**

The Foundation for Government Accountability ("FGA") is a nonpartisan, nonprofit organization that seeks to improve the lives of all Americans by improving welfare, workforce, healthcare, and election integrity policy at the state and federal levels. Launched in 2011, FGA promotes policy reforms that seek to free individuals from government dependence, restore dignity and self-sufficiency, and empower individuals to take control of their futures, including through free, fair elections that inspire confidence and encourage participation.

Since its founding, FGA has helped achieve more than 500 reforms impacting policies in 42 states and 20 federal regulatory reforms in policy areas related to welfare, healthcare, workforce, and election integrity. FGA supports its mission by conducting innovative research, deploying outreach and education initiatives, and equipping policymakers with the information they need to achieve meaningful reforms. FGA recently filed an *amicus* brief with the United States Supreme Court in *Gresham v. Azar*, another before the Missouri Supreme Court in *Doyle v. Tidball*, and another before the Federal Court in the Northern District of Georgia in *U.S. v. Georgia* in defense of Georgia's election integrity law.

In this case, the State of Texas has passed election reforms that strike a lawful and proper balance between making it easy to vote, but hard to cheat. Now groups that oppose all laws designed to prevent election fraud and inspire voter confidence have stepped forward in opposition. This case directly implicates FGA's core mission relating to election integrity reforms. Accordingly, FGA files this *amicus curiae* brief in support of Defendants and SB 1, Texas's election integrity law.

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

All citizens, regardless of political party, benefit from and should demand election integrity. While this principle has historically been bipartisan,[1] recent years have seen commonsense election laws face a slew of attacks that have nothing to do with election integrity or voter access and everything to do with political posturing.

The baseless attacks launched upon Texas legislators as they sought to engage in a bipartisan process to pass SB 1, a commonsense election integrity law, provide a clear example of this ugly politicization. The efforts in Texas through SB 1 to expand access to voting while making Texas's elections more secure and efficient has been misbranded by the mainstream media and certain politicians—many of whom have never even set foot in Texas (or read the text of SB 1 for that matter)—as an effort to suppress the vote of minorities and the disabled and to deny the free speech rights of others. As the plain language of SB 1 makes abundantly clear, however, these claims are entirely specious. The provisions of SB 1 work together to *expand* access to voting for all Texans while simultaneously inspiring confidence in the electoral system, protecting the secrecy of the ballot, and ensuring that all legally cast ballots are counted.

Enacting election reforms is not just about preventing voter fraud; it is also about inspiring public confidence in the electoral system: "Fraud can [not only] affect the outcome of a close election, … [but also] undermine public confidence in the fairness of elections and the perceived legitimacy of

---

[1] For example, in 2005, a bipartisan Commission on Federal Election Reform chaired by former President Jimmy Carter and former Secretary of State James A. Baker III, recognized the importance of election integrity: "There is no evidence of extensive fraud in U.S. elections or of multiple voting, *but both occur*, and it could affect the outcome of a close election. The electoral system *cannot inspire public confidence if no safeguards exist* to *deter or detect fraud* or to confirm the identity of voters." *See* Building Confidence in U.S. Elections §2.5 (Sept. 2005), App. 136-137 ("Carter-Baker Report") (emphasis added).

2

the announced outcome." *Brnovich v. DNC*, 141 S. Ct. 2321, 2340 (2021). "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (Op. of Stevens, J.). Confidence in the integrity of the election draws people to the polls, much more so than even the ease and convenience of voting (which SB 1 also enhances in many material ways).

Inspiring voter confidence in secure elections is what SB 1 was designed to do and is precisely what it does. It was specifically crafted to "prevent fraud," "ensure that all legally cast ballots are counted," inspire public confidence in the legitimacy of electoral outcomes, create rules that are "uniform and consistent" throughout the state, "protect the secrecy of the ballot," and to "promote voter access." SB 1, §§1.03 & 1.0015. As the Supreme Court has made clear, these are all legitimate state interests that justify reasonable, non-discriminatory burdens on voters. *Crawford*, 553 U.S. at 191-197 (Op. of Stevens, J.).

In their lawsuits, however, Plaintiffs claim that several of SB 1's provisions violate §2 of the Voting Rights Act (VRA) because "a racially discriminatory purpose was a motivating factor in the passage of SB 1." [*see, e.g.*, LULAC Compl. ¶246]. This wholly conclusory allegation not only lacks factual support, but it is also contradicted by the plain language and provisions of SB 1 itself.

Plaintiffs attempt to support their discriminatory intent allegations by alleging that the Texas legislature "surgically" targeted election practices employed disproportionately by the State's Black and Hispanic populations in "diverse jurisdictions." *Id.* at ¶247. This unsupported, conclusory, and false allegation is highly implausible on its face and is not entitled to any presumption of truth or deference under the federal pleading standards from the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Regardless,

3

because SB 1 makes clear by its plain text that the voting process in Texas remains "equally open" to all Texans regardless of race or language, this theory fails as a matter of law under the "results test" of §2 of the VRA.

In short, the Plaintiffs have wholly failed to allege any facts (because such facts simply do not exist) from which this Court could possibly discern even speculative, much less plausible, liability under the VRA. Under the Rule 8 and *Iqbal/Twombly* standards, Plaintiffs have failed to meet their burden. *Id.*; Fed. R. Civ. P. 8.

Plaintiffs have also alleged insufficient facts to plausibly support their claims under the First and Fourteenth Amendments. Plaintiffs have failed to plausibly allege discriminatory intent, and even the facts Plaintiffs have pled show that the challenged provisions are neutral, generally applicable laws. To trigger constitutional review, a voting regulation must impose "a severe and unjustified *overall* burden upon the right to vote," or be "intended to disadvantage a particular class." *Crawford*, 553 U.S. at 208 (Scalia, J., concurring) (emphasis added). A mere allegation of idiosyncratic burdens imposed on *some* voters is not enough to support these claims. *Id.*; *see also*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235-236 (5th Cir. 2020).

Plaintiffs' claims under the Free Speech Clause of the First Amendment also fail, as such protection applies only to speech and "inherently expressive" conduct and does not extend to non-expressive conduct. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (quoting *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006)). This is so even where non-expressive conduct is closely associated with activity that is protected under the First Amendment. *Voting for Am.*, 732 F.3d at 389. Since the provisions of SB 1 that Plaintiffs challenge under the Free Speech Clause exclusively regulate non-expressive conduct, rather than speech, they are not entitled to the First Amendment protection Plaintiffs seek. These claims too should be dismissed.

Lastly, with SB 1's reasonable accommodation and modification provision, the Texas legislature made clear that not only are reasonable accommodations allowed for voters with disabilities; they are required. SB 1, §1.022. In light of this section, and for other reasons outlined in Defendant's Motions to Dismiss, it is impossible for a court to draw a reasonable inference that the defendant is liable under either the ADA or VRA §208. These claims too are implausible and should be dismissed. *See, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 222 (5th Cir. 2011) (citing *Iqbal*, 556 U.S at 662 and *Twombly*, 550 U.S. at 570).

SB 1 is the Texas Legislature's entirely constitutional and lawful effort to improve voting laws in Texas to ensure free and fair elections. It expands access and ease of voting, creates uniformity and order, and the minimal burdens it imposes are reasonable and applied equitably to all Texan voters. The Plaintiffs' complaints do not state a claim upon which relief may be granted. Plaintiffs' lawsuits should be dismissed.

## ARGUMENT

I. **PLAINTIFFS FAIL TO STATE A CLAIM UNDER §2 OF THE VRA BECAUSE THEY CANNOT SUFFICIENTLY PLEAD A DISCRIMINATORY PURPOSE BEHIND SB 1 AND VOTING REMAINS "EQUALLY OPEN" TO ALL TEXANS.**

   A. **Plaintiffs Have Failed To Sufficiently Plead A Discriminatory Purpose Behind SB 1 Because No Such Purpose Exists.**

Plaintiffs have failed to plausibly allege that "a racially discriminatory purpose was a motivating factor in the passage of SB 1" in violation of VRA §2. [*see e.g.*, LULAC Compl. at ¶246]. This conclusory allegation is insufficient to survive a motion to dismiss, for several reasons.

The key question under the VRA is whether "the legislature as a whole" acted with discriminatory intent. *Brnovich*, 141 S. Ct. at 2348-50. Discriminatory motives do not include "partisan motives" or "sincere" (even if mistaken) beliefs about the existence of fraud or the wisdom

of election reforms. *Id.* Here, the Plaintiffs must allege sufficient facts that would demonstrate that it is at least plausible that the legislature, *as a whole*, acted with such intent. This they cannot do, because the Texas legislature followed the normal legislative process in enacting SB 1, the legislative history disproves any discriminatory motive, and the law does not affect voters on the basis of race or language. *See, e.g.*, *Brnovich*, 141 S. Ct. at 2348-50 (court should examine historical background and sequence of events leading to law's enactment, looking for departures from the normal legislative process while considering relevant legislative history and ultimately weighing the law's impact on different protected groups).

The facts Plaintiffs themselves assert in their complaints demonstrate that the Texas legislature followed the normal legislative process in passing SB 1, even in the face of highly partisan efforts by the Democrats to derail the legislative process through organized walkouts and cross-country trips aboard private aircraft.[2] Those excursions to Washington, D.C. aimed at stalling the legislative process while Democrat legislators lobbied Congress to pass federal legislation that would override any law passed by the duly-elected Texas legislature. *Id.* In their pursuit of a strategy to circumvent the Texas legislative process, Texas Democrats delayed passage of the law for months, but in the end, the law (and the will of the Texas majority) prevailed. *Id.* Following the normal legislative process, which included lengthy debates and hours of testimony, the Texas legislature passed SB 1, and the governor signed the bill into law.

A careful review of Plaintiffs' complaints reveals not a single fact to plausibly support a claim that "the legislature *as a whole* was imbued with racial motives" when it passed SB 1, as required

---

[2] Alexa Ura, *Texas House passes new voting restrictions as Democratic hopes of killing the legislation wane,* TEXAS TRIBUNE (Aug. 26, 2021), available at https://www.texastribune.org/2021/08/26/texas-house-voting-restrictions-bill/.

under the law. *Brnovich*, 141 S. Ct. at 2350 (emphasis added). A review of the legislative history makes clear why. In more than 30 hours of combined debate and dialogue which occurred during the first and second special sessions alone and which included testimony from more than a hundred witnesses, not a single comment is made nor is a fact revealed that would plausibly suggest that even a single legislator voted for SB 1 with racist intent, let alone that "the legislature as a whole" did. *Brnovich*, 141 S. Ct. at 2350.

On the contrary, in the opening pages of SB 1 itself, the legislature expressly articulated its entirely neutral, legitimate, and non-discriminatory state interests in enacting SB 1: to "prevent fraud in the electoral process"; "ensure that all legally cast ballots are counted"; ensure "public confidence in the legitimacy of public officers chosen by election"; ensure uniformity and consistency in the conduct of elections throughout the state; "protect the secrecy of the ballot"; and "promote voter access." SB 1, §§1.03; 1.04. None of plaintiffs' alleged facts even remotely support the premise that these legitimate state interests are pretexts for discrimination or that the "legislature as a whole" acted with discriminatory intent, and Plaintiffs' conclusory allegations to the contrary are implausible and legally insufficient.

### B. Plaintiffs' Claim That SB 1 Fails The "Results Test" of the VRA §2 Is Implausible Because The Voting Process Remains "Equally Open" To All Texans.

Following the Supreme Court's decision in *Mobile v. Bolden*, 446 U.S. 55 (1980), Congress amended §2 of the VRA to its current statutory language.[3] In its current form, VRA §2 prohibits voting practices or procedures from being "imposed or applied by any State or political subdivision in a

---

[3] Boyd & Markman, *The 1982 Amendments to the Voting Rights Act:  A Legislative History*, 40 WASH. & LEE L. REV. 1347, 1352-1353 (1983).

manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or [membership in a language minority group]." 52 U.S.C. §10301(a).

In §2(b), Congress outlined what specifically must be shown to prove a violation: a violation occurs only where "based on the *totality of circumstances*, it is shown that the political processes leading to nomination or election in the State or political subdivision are not *equally open* to participation [to certain individuals based on their race, color, or language minority group] … in that its members have less *opportunity* than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. §10301(b) (emphasis added). For Plaintiffs to survive a motion to dismiss, they must plead plausible facts that establish beyond a speculative level that, based on the totality of the circumstances, Texans of a certain race or language group have less opportunity than other Texan voters such that voting in Texas is not "equally open" to all. This they cannot do.

1. *The Disparate Impact Alleged By Plaintiffs Is Legally Insufficient.*

Unable to satisfy the minimum threshold to justify a claim of discriminatory intent, Plaintiffs attempt to plead an effect/result claim, alleging in conclusory fashion that the legislature *must* have acted with a discriminatory intent "[b]y surgically targeting election practices employed in Texas's largest and most diverse jurisdictions—methods on which the State's Black and Hispanic populations disproportionately rely …." [LULAC Compl. at ¶247; *see also* Houston Justice Compl. ¶¶179-184]. This conclusory allegation is simply insufficient under *Iqbal/Twombly*.

In *Brnovich*, decided in June of this year, the Supreme Court considered for the first time how §2 applies to general time, place, or manner voting rules, such as those at issue here. 141 S. Ct. at 2330. The Court examined two Arizona voting rules alleged to violate §2 of the VRA. The first rule requires voters in some counties voting in person on election day to vote in their own precincts to have

their ballots counted. The second rule criminalized ballot harvesting by prohibiting anyone other than a postal worker, elections official, or a voter's family member, household member, or caregiver to knowingly collect an early ballot—either before or after it has been completed. *Id.* at 2334.

Ultimately, the *Brnovich* Court reversed the Ninth Circuit's decision that had struck down the laws under §2 of the VRA. In so doing, the Court held that neither Arizona statute violated the VRA because neither measure was based on a discriminatory purpose, neither measure exceeded the "usual burdens of voting" based on the totality of the circumstances, both measures applied equally to all voters, and both furthered strong and legitimate state interests, including the prevention of election fraud. *Id.* at 2343-48.[4]

Applying the *Brnovich* §2 analysis to this case, Plaintiffs have not, and cannot, plead sufficient plausible, non-conclusory facts to survive the State's motion to dismiss. By its plain terms, SB 1 applies equally to all voters. It also establishes a minimum number of required voting hours during the early voting period, ensures that voters standing in line when their polling place closes will still be entitled to vote, and adds an extra hour of voting on the last Sunday of the early voting period. SB 1, §3.09; 3.10.

In essence, Plaintiffs base their claims on a simple alleged disparate impact, but the *Brnovich* Court rejected this theory: "[T]he mere fact there is some disparity in impact does not necessarily mean that a system is not equally open or that it does not give everyone an equal opportunity to vote." 141 S. Ct. at 2339. The size of any purported disparity is also relevant: "[t]he size of any disparity

---

[4] The *Brnovich* Court emphasized that even when a voting regulation has a disparate impact on a racial group, that is insufficient to invalidate a law under §2 of the VRA: "Differences in employment, wealth, and education may make it virtually impossible for a State to devise rules that do not have some disparate impact … §2 does not deprive the States of their authority to establish non-discriminatory voting rules." *Id.* at 2343.

matters … very small differences should not be artificially magnified." *Id.* Here, that is exactly what Plaintiffs seek to do—to artificially magnify theoretical disparities based on mere predictions of the effect SB 1 may have on future voter turnout and, assuming a disparate impact, interpose a non-existent racial motive onto these discrepancies. Under any application of Rule 8 and *Iqbal/Twombly* framework, Plaintiffs' conclusory, unsupportable, and speculative allegations are insufficient.

2.   *The Challenged Provisions Impose Only The Usual Burdens of Voting.*

 "[B]ecause voting necessarily requires some effort and compliance with some rules, the concept of a voting system that is 'equally open' and that furnishes an equal 'opportunity' to cast a ballot must tolerate the 'usual burdens of voting.' Mere inconvenience cannot be enough to demonstrate a violation of §2." *Id.* at 2338 (quoting *Crawford*, 553 U.S. at 198).

Here, the provisions that Plaintiffs challenge impose nothing more than the usual burdens of voting and, at most, may cause some minor inconvenience to *all* Texan voters. This is insufficient to meet the threshold requirement under *Iqbal/Twombly*.

3.   *Strong State Interests Support SB 1.*

In addition to assessing a voting rule in the context of the state's entire voting system, *Brnovich* also requires courts to examine the state interests underlying the election reforms. Election "[r]ules that are supported by strong state interests are less likely to violate §2 [and] [o]ne strong and entirely legitimate state interest is the prevention of fraud." *Brnovich*, 141 S. Ct. at 2340.

In §§1.03 and 1.04 of SB 1, the Texas Legislature went to great lengths to articulate the important state interests that SB 1 addresses. Those interests, outlined *supra*, are all legitimate state interests that justify reasonable, non-discriminatory burdens on voters, *Brnovich*, 141 S. Ct. at 2321; *Crawford*, 553 U.S. at 191-197. There is, therefore, a strong presumption of their legality that Plaintiffs' conclusory complaints have failed to overcome. *Brnovich*, 141 S. Ct. at 2339-40.

   4.   *The Totality of the Circumstances Establishes That Voting Remains Equally Open Under SB 1.*

The VRA §2 analysis also "requires consideration of 'the totality of circumstances.' Any circumstance that has a logical bearing on whether voting is 'equally open' and affords equal 'opportunity' may be considered." *Brnovich*, 141 S. Ct. at 2338. Plaintiffs' approach, which carves out for scrutiny only a handful of SB 1's measures and then alleges that those provisions, viewed in isolation, have discriminatory impact, is a misapplication of the law. Instead, the proper analysis would view Texas's "entire system of voting when assessing the burden imposed by a challenged provision[s]." *Id.* at 2339.

An examination of SB 1 in its entirety demonstrates conclusively that the burden imposed upon Texan voters is minimal, with many of the reforms *reducing* burdens that existed in past elections, as outlined *supra*.

Clearly, these reasonable reforms of SB 1 are designed to increase efficiency of elections and increase voter participation for all citizens. Plaintiffs have not and cannot plausibly allege that the *totality of the circumstances* arising from SB 1 has or will result in the Texas voting system not being equally open to all citizens. Its complaint, therefore, fails to state a claim and should be dismissed.

II.   **PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FIRST AND FOURTEENTH AMENDMENTS BECAUSE PLAINTIFFS ALLEGE ONLY MINIMAL IDIOSYNCRATIC BURDENS AND THE PROVISIONS CHALLENGED UNDER THE FREE SPEECH CLAUSE REGULATE NON-EXPRESSIVE CONDUCT.**

Plaintiffs claim, without specifics or the support of any facts, that several of the provisions found in SB 1 "unduly burden the right to vote" in violation of the First and Fourteenth Amendments. *See, e.g.*, LULAC Compl. at ¶250. Relatedly, Plaintiffs also claim that SB 1's ban on ballot harvesting and its regulations governing the behavior of voting assistants and poll watchers

violates the free speech rights of partisan ballot harvesters and others. *Id.* at ¶267. These claims should be dismissed.

> ### A. The Challenged Provisions of SB 1 Do Not Implicate *Anderson-Burdick* Because They Do Not Burden The Right To Vote For All Voters.

Before a court applies the two-track approach of the *Anderson-Burdick* test to evaluate a law respecting the right to vote, it should first determine whether constitutional review has even been triggered. *Crawford*, 553 U.S. at 204 (Scalia, J., concurring); *see also Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). Where there is no proof of discriminatory intent, "a generally applicable law with disparate impact is not unconstitutional … even when [its] burdens purportedly fall disproportionately on a protected class." *Crawford*, 553 U.S. at 207 (Scalia, J., concurring) (citing *Washington v. Davis*, 426 U.S. 229, 248 (1976)). In other words, where there is no discriminatory intent behind an election law, nor an "overall burden upon the right to vote," constitutional review under the Due Process Clause of the Fourteenth Amendment is not even triggered. *Id.* at 207-208.

Here, Plaintiffs have alleged insufficient facts to plausibly demonstrate discriminatory intent, as outlined *supra*, and even the facts Plaintiffs have pled show that the challenged provisions are neutral, generally applicable laws. Plaintiffs' allegation of burdens that "purportedly fall disproportionately on a protected class," are irrelevant under the law where there is no showing of discriminatory purpose. *Crawford*, 553 U.S. at 207 (Scalia, J., concurring) (citing *Washington*, 426 U.S. at 248). Here, constitutional review under the First and Fourteenth Amendments has not even been triggered because the supposed burdens Plaintiffs highlight are merely "different *impacts* of the single burden that the law uniformly imposes on all voters." *Crawford*, 553 U.S. at 205 (Scalia, J., concurring). To trigger constitutional review, a voting regulation must impose "a severe and

unjustified *overall* burden upon the right to vote," or be "intended to disadvantage a particular class." *Crawford*, 553 U.S. at 208 (Scalia, J., concurring) (emphasis added). A mere allegation of idiosyncratic burdens imposed on some voters is not enough to support these claims. *Id.*

For instance, Plaintiffs claim that §4.12's requirement that a vote-by-mail ballot must be delivered to the voting clerk either through the mail, through common or contract carrier, or given directly to an election official, is an unreasonable burden upon the right to vote for Texas voters because it effectively eliminates the use of ballot boxes. SB 1, §4.12. Plaintiffs complain that eliminating ballot boxes imposes a disparate impact upon those wishing to use a ballot box. LULAC Compl. ¶253; Houston Justice Compl. ¶218. That is true. But such a disparate impact is not one borne by all Texas voters, even though the law applies to all voters equally. In other words, this provision does not burden the overall right to vote. Those wishing to vote-by-mail can still vote by mail, and those who wish to fill out a vote-by-mail ballot and then place it in a box can still do so by placing it in any mailbox they choose. They simply cannot place it in a centrally located ballot box used only for collecting ballots that the Texas legislature has determined is potentially vulnerable to tampering.

Here, there is no legally cognizable burden at all presented to this small subgroup of voters (those who wish to vote-by-mail but then physically carry the ballot to the polling location and place it in an unguarded box filled with other ballots outside the voting location, rather than placing it in a mailbox of their choice). Yet even if the Court here recognized this as a burden (albeit a trivial one), the fact that the law applies equally to all Texas voters, and negatively impacts only a few such voters, means constitutional review under the Fourteenth Amendment should not even be triggered. *Crawford*, 553 U.S. at 208 (Scalia, J., concurring); *Richardson*, 978 F.3d at 235-236.

Other challenged provisions include SB 1's requirements for those providing voter assistance to fill out paperwork providing their name and address, relationship to the voter, and whether they

13

received compensation to assist, as well as the provision providing for the appointment of poll watchers. SB 1, §§4.01-4.02; 4.06-4.07; 4.09; 6.03-6.04. LULAC Compl. ¶253; La Union Compl. ¶¶194-196. But these two provisions, like the provision that essentially bans ballot boxes, does not burden the overall right to vote. Since plaintiffs allege no plausible facts to show that these two provisions were passed with a discriminatory intent, constitutional review under the Fourteenth Amendment is not triggered for the same reasons outlined *supra*.

As Justice Scalia noted in his concurrence opinion in *Crawford*, "[i]t is for state legislatures to weigh the costs and benefits of possible changes to their election codes, and their judgment must prevail unless it imposes a severe and unjustified overall burden upon the right to vote, or is intended to disadvantage a particular class." *Crawford*, 553 U.S. at 208 (Scalia, J., concurring). Since Plaintiffs have shown neither a discriminatory intent behind SB 1, nor an "overall" burden upon the right to vote, Plaintiffs have failed to state a plausible claim under the First and Fourteenth Amendments.

Regardless, even were the Court here to find the existence of a burden widespread enough to invoke examination under *Anderson-Burdick*, the Court should still dismiss these claims since, based on facts alleged by Plaintiffs, the challenged provisions are not severe and are clearly justified by the State's compelling interests. *See, e.g.*, *Richardson*, 978 F.3d at 235-236. Those interests, identified explicitly in SB 1, are all legitimate interests that justify reasonable, non-discriminatory burdens on voters. *Brnovich*, 141 S. Ct. at 2321; *Crawford*, 553 U.S. at 191-197. There is thus a strong presumption of their legality that Plaintiffs' conclusory complaints have failed to overcome. *Brnovich*, 141 S. Ct. at 2339-40.

14

**B. The Challenged Provisions of SB 1 Do Not Implicate The Free Speech Clause Because They Regulate Conduct, Not Speech.**

If Plaintiffs wish to invoke the Free Speech Clause of the First Amendment to challenge provisions of SB 1, they must first demonstrate that such protection applies to those provisions. *Voting for Am.*, 732 F.3d at 388. While the First Amendment does protect speech and "inherently expressive" conduct, it does not extend that protection to non-expressive conduct. *Id.* (quoting *FAIR*, 547 U.S. at 66). This is so even where non-expressive conduct is closely associated with activity that is protected under the First Amendment. *Voting for Am.*, 732 F.3d at 389.

To determine whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, courts should look to whether "'[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 410-411 (1974)).

Even a cursory review of the provisions of SB 1 that Plaintiffs challenge under the Free Speech Clause reveals that they all regulate non-expressive conduct, rather than speech. Thus, they are not entitled to the First Amendment protection Plaintiffs seek. These claims should be dismissed.

1. *Regulations Governing The Behavior Of Those Providing Voting Assistance Do Not Invoke First Amendment Free Speech Protection For Those Providing The Assistance.*

For instance, Plaintiffs have pled a First Amendment Free Speech challenge to §§6.01 and 64.0322 of SB 1 which require those who provide voter assistance, in most instances but not all, to fill out and sign a form indicating their relationship to the person(s) they are assisting and indicate whether or not they are being paid by a candidate, campaign, or political committee to provide that assistance. Mi Familia Vota Compl. ¶97. Assisting someone as they perform their sacred right to

15

vote is not a Free Speech right of the individual providing the assistance, rather, it is non-expressive conduct designed to enable others to exercise their right to vote. This claim fails as a matter of law.

Likewise, requiring those providing assistance to voters to take an oath that they will simply assist the voter in voting the way that voter wishes, rather than trying to sway them to vote for a certain candidate, impacts only non-expressive conduct that is not entitled to First Amendment protection. Mi Familia Vota Compl. ¶98; SB 1, §64.034. This claim too should be dismissed.

    *2. Regulations Governing The Behavior Of Poll Watchers Do Not Invoke the First Amendment.*

And clearly, providing poll watchers, who are strictly forbidden by SB 1 from interfering "in the orderly conduct of an election," access to voting locations so that they may "observe and report on irregularities in the conduct of any election," does not infringe on First Amendment rights as Plaintiffs claim. Mi Familia Vota Compl. ¶100; SB 1, §33.0015. Based on the plain language of SB 1, it is impossible for a poll watcher to interfere with a voter while following the law as prescribed by SB 1. This claim too is implausible and should be dismissed.

    *3. Ballot Harvesting Is Not Protected Speech.*

Lastly, Plaintiffs allege that SB 1's ban on ballot harvesting violates the free speech rights of ballot harvesters. OCA Compl. ¶195; SB 1 §7.04. But Ballot harvesting is not protected speech because there is nothing "inherently expressive" about collecting a person's completed ballot and then transporting that ballot to the proper place. *Knox v. Brnovich*, 907 F.3d 1167, 1180-1182 (9th Cir. 2018) (citing *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 898 (5th Cir. 2012) (denying First Amendment protection to those engaged in the harvesting of voter registration applications, an activity that is identical, for First Amendment Free Speech analysis purposes, to ballot harvesting)).

Moreover, courts have made clear that bans on ballot harvesting like that which is found in SB 1 comfortably comport with the VRA. In *Brnovich*, the Supreme Court upheld a ban on ballot harvesting, noting that "'[a] State indisputably has a compelling interest in preserving the integrity of its election process.'" *Brnovich*, 141 S. Ct. at 2347 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). The Court added, "[l]imiting the classes of persons who may handle early ballots to those less likely to have ulterior motives deters potential fraud and improves voter confidence." *Id.*

This stance on ballot harvesting and its dangers to election integrity is neither new nor novel. Courts have long recognized the inherent risk of fraud associated with ballot harvesting, as have election integrity proponents from both sides of the aisle. In fact, as noted *supra*, in 2005, a bipartisan commission chaired by former President Jimmy Carter and former Secretary of State James Baker, known as the "Carter-Baker Commission" warned of this danger.

In its final report, the commission noted that, "[a]bsentee balloting is vulnerable to abuse in several ways: … Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to intimidation."[5] The Commission further warned that, "[v]ote buying schemes are far more difficult to detect when citizens vote by mail," and it recommended that "States therefore should reduce the risks of fraud and abuse in absentee voting by prohibiting 'third-party' organizations, candidates, and political party activists from handling absentee ballots." *Id.* The Commission ultimately recommended that states limit the classes of persons who may handle absentee ballots to "the voter, an acknowledged family member, the U. S. Postal Service or other legitimate shipper, or election officials." *Id.* at 47.

---

[5] Carter-Baker Report, (Sept. 2005).

Clearly, ballot harvesting is not protected speech under the First Amendment, and neither are the other challenged provisions outlined above. Moreover, none of the provisions Plaintiffs challenge under the Due Process Clause of the Fourteenth Amendment trigger constitutional review under *Anderson-Burdick* as they impose only minimal idiosyncratic burdens that are justified by the State's use of neutral, generally applicable rules that advance compelling State interests. These claims too should be dismissed.

### III. SB 1'S REASONABLE ACCOMODATION PROVISION RENDERS PLAINTIFFS' CLAIMS UNDER §208 OF THE VRA AND TITLE II OF THE ADA IMPLAUSIBLE ON THEIR FACE.

As explained *supra*, SB 1 §7.04 prohibits ballot harvesting which the statute defines as "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure … in exchange for compensation or other benefit." SB 1 §7.04. Plaintiffs argue that this provision violates both §208 of the VRA as well as Title II of the ADA by prohibiting voters with disabilities from receiving assistance required under federal law. LULAC Compl. at ¶277; La Union Compl. at ¶215; Mi Familia Vota Compl. at ¶122. This claim is entirely unsupported by the text of the statute and should be dismissed under *Twombly/Iqbal*.

Under §208 of the VRA, "any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person *of the voter's choice*, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. §10508 (emphasis added). Plaintiffs claim that SB 1 §7.04, on its face, violates §208 of the VRA by prohibiting "voters with disabilities and voters with limited language proficiency the right

18

to assistance by a person of the voter's choice." LULAC Compl. at ¶277; *see also* La Union Compl. at ¶215; Mi Familia Vota Compl. at ¶122.

Meanwhile, Title II of the ADA states, "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Plaintiffs claim that SB 1, §7.04, on its face, violates Title II of the ADA by creating unjustified burdens for voters with disabilities to receive the assistance they are entitled to under federal law. La Union Compl. at ¶¶220-22.

To survive a motion to dismiss, a complaint alleging a violation of the ADA or §208 of the VRA, must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See, e.g.*, *Frame*, 657 F.3d at 222 (citing *Iqbal*, 556 U.S. 662 and *Twombly*, 550 U.S. at 570). Here, Plaintiffs have failed to meet this threshold, conveniently leaving any mention at all of SB 1's reasonable accommodation section completely out of their pleadings.

To justify a swift dismissal of these claims made under the ADA and VRA §208 the Court here need only look to §1.022 of SB 1, titled, "Reasonable Accommodation or Modification." The section reads,

> "[a] provision of this code may not be interpreted to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law."

SB 1, §1.022.

With this provision, the Texas legislature made clear that not only are reasonable accommodations allowed for voters with disabilities; they are required. In light of this section, it is

impossible for a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Through the plain language of SB 1, which includes the reasonable accommodation section, voters with disabilities are guaranteed the rights entitled to them under the ADA and VRA §208. These claims too are implausible and should be dismissed.

## CONCLUSION

For the foregoing reasons, FGA respectfully urges the Court to dismiss Plaintiffs' lawsuits.

Respectfully submitted,

FOUNDATION FOR GOVERNMENT ACCOUNTABILITY

*/s/ Donna Garcia Davidson*
Donna Garcia Davidson, Texas Bar No. 00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
Email:  donna@dgdlawfirm

*/s/ Chase Martin*
Chase Martin, ME Bar #005358
Foundation for Government Accountability (FGA)
15275 Collier Blvd., Suite 201
Naples, FL 34119
(239) 244-8808
Chase@TheFGA.org

*pro hac vice pending*

*/s/ Stewart L. Whitson*
Stewart L. Whitson, MN Bar #0391405
Foundation for Government Accountability (FGA)
15275 Collier Blvd., Suite 201
Naples, FL 34119
(239) 244-8808
Stewart@TheFGA.org

*pro hac vice pending*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of October, 2021, I electronically filed a true and correct copy of the foregoing BRIEF OF THE FOUNDATION FOR GOVERNMENT ACCOUNTABILITY AS AMICUS CURIAE with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. Respectfully submitted this 29th day of October, 2021.

<div style="margin-left: 40%;">

*/s/ Donna Garcia Davidson*

Donna Garcia Davidson, Texas Bar No. 00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
Email:  donna@dgdlawfirm

</div>

### <u>CERTIFICATE OF COMPLIANCE</u>

I verify that the foregoing brief has been prepared in Times New Roman, 12-point font,

double-spaced and otherwise in compliance with Local Rules including CV-7 and CV-10.

*/s/ Donna Garcia Davidson*
Donna Garcia Davidson, Texas Bar No. 00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
Email:  donna@dgdlawfirm

22

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., <br><br> Plaintiff, <br><br> v. <br><br> GREGORY W. ABBOTT, et al., <br><br> Defendants. | Case No: 5:21-cv-00844-XR <br><br> **Consolidated Cases:** *OCA-Greater Houston, et al. v. Jose A. Esparza, et al.*, No. 1:21-cv-780-XR; *Houston Justice, et al., v. Gregory Wayne Abbott, et al.*, No. 5:21-cv-848-XR; *LULAC Texas, et al., v. Jose Esparza, et al.*, No. 1:21-cv-0786-XR; *Mi Familia Vota, et al., v. Greg Abbott, et al.*, No. 5:21-cv-0920-XR. |

**CERTIFICATE OF INTERESTED PERSONS AND
COPORATE DISCLOSURE STATEMENT**

Donna Garcia Davidson, TX Bar #00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
donna@dgdlawfirm.com

Chase Martin, ME Bar #005358
Stewart L. Whitson, MN Bar #0391405
Foundation for Government Accountability
15275 Collier Blvd., Suite 201
Naples, FL  34119
Telephone: 239-244-8808
Chase@TheFGA.org
Stewart@TheFGA.org
*pro hac vice admission pending*

*Counsel for Foundation for Government Accountability*

## CERTIFICATE OF INTERESTED PERSONS AND
## COPORATE DISCLOSURE STATEMENT

(1) The Foundation for Government Accountability ("FGA") is a nonprofit, nonpartisan organization that has no parent corporation and issues no stock. The following is a complete list of the parties in this case:

| | |
|---|---|
| i. | Delta Sigma Theta Sorority Inc. |
| ii. | Fiel Houston, Inc. |
| iii. | Friendship-West Baptist Church |
| iv. | Gregory W. Abbott |
| v. | Houston Area Urban League |
| vi. | Houston Justice |
| vii. | Isabel Longoria |
| viii. | James Lewin |
| ix. | Jeffrey Lamar Clemmons |
| x. | JOLT Action |
| xi. | Jose A. Esparza |
| xii. | La Union Del Pueblo Entero |
| xiii. | League of Women Voters of Texas |
| xiv. | Lisa Wise |
| xv. | LULAC Texas |
| xvi. | Lupe C. Torres |
| xvii. | Mexican American Bar Association of Texas |
| xviii. | Michael Scarpello |

xix.        Mi Familia Vota

xx.         OCA-Greater Houston

xxi.        Paul Rutledge

xxii.       Public Interest Legal Foundation

xxiii.      Marla Lopez

xxiv.       Marlon Lopez

xxv.        REVUP-Texas

xxvi.       Southwest Voter Registration Education Project

xxvii.      Texas AFT

xxviii.     Texas Hispanics Organized for Political Education

xxix.       Texas Alliance for Retired Americans

xxx.        Texas Impact

xxxi.       Texas Organizing Project

xxxii.      The Anti-Defamation League Austin, Southwest, and Texoma

xxxiii.     The Arc of Texas

xxxiv.      Vote Latino

xxxv.       Warren K. Paxton

xxxvi.      William C. Velasquez Institute

xxxvii.     Workers Defense Action Fund

(2) The undersigned is unaware of any other persons, associations, firms, partnerships, or corporations having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case.

(3) The undersigned further certifies that the following is a full and complete list of all persons

    serving as attorneys in this matter:

       i.        Jessica Ring Amunson

       ii.       Orion Armon

       iii.      Christopher H. Bell

       iv.      Matthew Berde

       v.       Patrick A. Berry

       vi.      Sameer Singh Birring

       vii.     John Bonifaz

       viii.    Kenneth E. Broughton, Jr.

       ix.      Adriel Cepeda-Derieux

       x.       Jessica M. Choi

       xi.      Ben Clements

       xii.     Alexander P. Cohen

       xiii.    Ryan V. Cox

       xiv.    Sarah M. Cummings

       xv.     Donna G. Davidson

       xvi.    J. Keely Dulaney

       xvii.   Marc Erik Elias

       xviii.   Chad Ennis

       xix.    Ronald A. Fein

       xx.     Jonathan Gabriel

xxi.        Chaim Fombonne

xxii.       Andrew B. Garber

xxiii.      Domingo A. Garcia

xxiv.       Paul R. Genender

xxv.        Zack Goldberg

xxvi.       Germaine Habell

xxvii.      John Russell Hardin

xxviii.     Kathleen Hartnett

xxix.       Jonathan Patrick Hawley

xxx.        Robert E Henneke

xxxi.       Jennifer A. Holmes

xxxii.      Courtney M. Hostetler

xxxiii.     Michael C. Keats

xxxiv.      Savannah Kumar

xxxv.       Sophia Lin Lakin

xxxvi.      Angelica Lien Leo

xxxvii.     Julia Renee Longoria

xxxviii.    Susana Lorenzo-Giguere

xxxix.      Sean Michael Lyons

xl.         Chase Martin

xli.        Rebecca L. Martin

xlii.       Beatriz Mejia

xliii.      Christian Dashaun Menefee

xliv.       Meaghan E. Mixon

xlv.        Sean Morales-Doyle

xlvi.       Ranjana Natarajan

xlvii.      Earl S. Nesbitt

xlviii.     Barbara S. Nicholas

xlix.       Uzoma N. Nkwonta

l.          Wendy J. Olson

li.         Samantha Osaki

lii.        Nina Perales

liii.       Joseph N. Posimato

liv.        Marc T. Rasich

lv.         Laura E. Rosenbaum

lvi.        Elizabeth Yvonne Ryan

lvii.       Kathryn Sadasivan

lviii.      Jasleen K. Singh

lix.        Sharon Song

lx.         Kelsey Spector

lxi.        Lora Spencer

lxii.       Ben L Stool

lxiii.      Christine Sun

lxiv.       Patrick K. Sweeten

lxv.        Eliza Sweren-Becker

lxvi.       Andy Taylor

lxvii.      Jerry Vattamala

lxviii.     Shira Wakschlag

lxix.       Elijah M. Watkins

lxx.        Jeffrey Michael White

lxxi.       Stewart Whitson

lxxii.      Georgina Yeomans

lxxiii.     Kathryn E. Yukevich


Respectfully submitted this 29th day of October, 2021.


/s/ Donna G. Davidson
Donna Garcia Davidson, TX Bar #00783931
Attorney and Counselor at Law
Capitol Station, P.O. Box 12131
Austin, TX 78711
Telephone: 512-775-7625
Fax: 877-200-6001
donna@dgdlawfirm.com


/s/ Chase Martin
Chase Martin, ME Bar #005358
Foundation for Government Accountability
15275 Collier Blvd., Suite 201
Naples, FL  34119
Telephone: 239-244-8808
Chase@TheFGA.org
*pro hac vice admission pending

*/s/ Stewart L. Whitson*

Stewart L. Whitson, MN Bar #0391405
Foundation for Government Accountability
15275 Collier Blvd., Suite 201
Naples, FL  34119
Telephone: 239-244-8808
Stewart@TheFGA.org
**pro hac vice admission pending*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2021, I electronically fileda true and correct copy of the foregoing CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

RESPECTFULLY SUBMITTED, this 29th day of October, 2021

*/s/Donna Garcia Davidson*
TX State Bar #00783931