## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| LULAC TEXAS; VOTO LATINO; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT, <br><br> Plaintiffs, <br><br> v. <br><br> JOSE ESPARZA, in his official capacity as the Deputy Secretary of State and acting Secretary of State, KEN PAXTON, in his official capacity as the Texas Attorney General; JACQUELYN CALLANEN, in her official capacity as the Travis County Clerk; ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator; YVONNE RAMON, in her official capacity as the Hidalgo County elections administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator; LISA WISE, in her official capacity as the El Paso County Elections Administrator, <br><br> Defendants. | Civil Action <br><br><br> Case No. 1:21-CV-00786, *consolidated with* 5:21-CV-0844-XR <br><br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE OF HARRIS COUNTY REPUBLICAN PARTY, DALLAS COUNTY REPUBLICAN PARTY, NATIONAL REPUBLICAN SENATORIAL COMMITTEE, AND NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 4

LEGAL STANDARD.................................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

    I.    Republican Committees are not entitled to intervene as of right. ....................................... 6

          A.   Republican Committees have failed to identify an adequate interest that could be impaired by this proceeding to justify intervention as of right.................................... 6

          B.   Republican Committees' interests are adequately represented by the Republican elected officials who are presently defendants in this matter. ................................... 10

    II.   Republican Committees should not be granted permissive intervention. ......................... 15

CONCLUSION............................................................................................................................ 17

TO THE HONORABLE XAVIER RODRIGUEZ:

Plaintiffs LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT (collectively, the "LULAC Plaintiffs"), by and through their undersigned counsel, file this response to the Motion to Intervene filed by the Harris County Republican Party, Dallas County Republican Party, National Republican Senatorial Committee ("NRSC"), and National Republican Congressional Committee ("NRCC") (collectively "Republican Committees") under Federal Rule of Civil Procedure 24.

## INTRODUCTION

Republican Committees seek intervention as of right on the assumption that none of the 39 unique parties to the consolidated actions can adequately represent their stated interest in upholding the challenged election laws or ensuring free and fair elections. That would be news to the Secretary of State's Office, the Attorney General's Office, and even the Governor, all of whom have re-affirmed their commitment to vigorously defending Senate Bill 1 ("SB 1"). *See, e.g.,* Defendant Abbott, et al.'s Motion to Dismiss, or, in the Alternative, Strike the Complaint of La Union Del Pueblo Entero, et al., ECF No. 53; Defendant Abbott, et al.'s Motion to Dismiss the Complaint of League of United Latin American Citizens, et al., ECF No. 54; Defendant Abbott, et al.'s Motion to Dismiss the Complaint of Houston Justice, et al., ECF No. 64; Defendant Abbott, et al.'s Motion to Dismiss the Complaint of Mi Familia, et al., ECF No. 67. Indeed, the Fifth Circuit has recognized that intervention as of right is usually improper in these circumstances: when the defendants are state officials or share the same objective as proposed intervenors, adequacy of representation is presumed. This presumption is further cemented by the fact that Republican Committees stake out the same legal position as the State Defendants, seek to uphold the

constitutionality of SB 1 just as the State Defendants do, and make no meaningful effort to rebut these presumptions.

Perhaps recognizing the near-perfect symmetry between their desire to enforce SB 1 and the State Defendants' support of the law, Republican Committees make several vague references to their interests in "winning elections" and the "competitive environment" but never get around to explaining just how SB 1—or a court order enjoining its enforcement—would adversely impact the electoral prospects of Republican candidates. The parties are left to wonder whether Republican Committees believe that fraud was rampant in Texas before SB 1—despite Keith Ingram, director of the Texas Secretary of State's elections division, stating, "I don't think we have evidence of actual fraud" in Texas elections, Compl. ¶ 138, ECF No. 1, *LULAC Texas v. Esparza*, No. 1:21-cv-00786 (W.D. Tex. Sept. 7, 2021), and the Department of Homeland Security finding that the 2020 elections were the most secure ever held in the United States—or why Republican Committees believe that the voting restrictions introduced in SB 1 specifically enhance their chances of "winning elections." Partially Opposed Motion to Intervene of Harris County Republican Party, Dallas County Republican Party, National Republican Senatorial Committee, and National Republican Congressional Committee, ECF No. 57 ("Mot.") at 9.[1] The motion to intervene merely glosses over these logical gaps.

Unable to articulate any legally protectable interest connected to the consolidated cases— let alone one that might be impaired—Republican Committees pivot to the sweeping proposition that political parties always have "an interest in defending against requests for judicial changes to election laws." Mot. at 2. Unsurprisingly, not one of the thirty cases they cite endorsed that

---

[1] Eric Tucker and Frank Bajak, *Repudiating Trump, officials say election 'most secure'*, AP News (Nov. 13, 2020), https://apnews.com/article/top-officials-elections-most-secure-66f9361084ccbc461e3bbf42861057a5.

statement. All but a handful granted only permissive intervention for reasons not applicable here,[2] and the remainder—all unpublished—do not provide a reasoned explanation for the order and do not state whether the order grants permissive intervention or intervention as of right.[3]

Finally, permissive intervention by Republican Committees under Rule 24(b) would be counterproductive, at best. There are nearly 40 unique litigants in this consolidated litigation and the Republican Committees add little to the case beyond additional procedural complexity in an

---

[2] *Mississippi State Democratic Party v. Barbour*, No. 4:6-cv-29-p-b, 2007 WL 2071800, at *6 (N.D. Miss. July 17, 2007) (granting permissive intervention); *Sewell v. St. Tammany Par. Police Jury*, 338 F. Supp. 252, 254 (E.D. La. 1971) (order entirely unrelated to motion to intervene); *Nielsen v. DeSantis*, No. 20-cv-236 (N.D. Fla. May 28, 2020), ECF No. 101 (granting permissive intervention); *Arizona Democratic Party v. Hobbs*, No. 20-cv-1143 (D. Ariz. June 26, 2020), ECF No. 60  (granting permissive intervention and severely limiting the movants' participation in the matter); *Swenson v. Bostelmann*, No. 20-cv-459 at *4 (W.D. Wis. June 23, 2020), ECF No. 38 (granting permissive intervention); *Edwards v. Vos*, No. 20-cv-340 (W.D. Wis. June 23, 2020), ECF No. 27 (granting permissive intervention where neither plaintiffs nor defendants opposed the intervention); *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504 at *4 (E.D. Mich. May 22, 2020) (granting permissive intervention but noting that the "competitive interests" of the state Republican Party and the Republican National Committee were "not as salient" as those of the state legislature); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (denying intervention of right but granting permissive intervention solely because the state Republican Party and Republican National Committee "are uniquely qualified to represent the 'mirror-image' interests of the plaintiffs, as direct counterparts to" the Democratic National Committee and state Democratic Party).

[3] *See Stringer v. Hughs*, No. 20-cv-46 (W.D. Tex. Jan. 21, 2020), ECF No. 27  (unpublished order, unavailable on Westlaw, unaccompanied by memorandum of law); *Harris Cnty. Dep't of Educ. v. Harris Cnty.*, No. CIV.A. H-12-2190, 2012 WL 3886427 (S.D. Tex. Sept. 6, 2012) (unpublished order without analysis of the Rule 24 factors); *Perez v. Perry*, No. 11-cv-00360 (W.D. Tex. July 13, 2011), ECF No. 31 (unpublished order, unavailable on Westlaw, unaccompanied by memorandum of law); *Democratic Exec. Comm. of Fla. v. Detzner*, No. 18-cv-520 (N.D. Fla. Nov. 9, 2018) (same); *League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 20-cv-24 (W.D. Va. Apr. 29, 2020), ECF No. 57 (same); *League of Women Voters of Minn. Educ. Fund v. Simon*, No. 20-cv-1205 (D. Minn. June 23, 2020), ECF No. 52 (same); *Mi Familia Vota v. Hobbs*, No. 20-cv-1903 (D. Ariz. June 26, 2020), ECF No. 25; *Wood v. Raffensperger*, No. 20-cv-5155 (N.D. Ga. Dec. 22, 2020) (same). In two instances, Republican Committees cite orders from *state* courts granting motions to intervene; they include no memorandum explaining the reasoning and do not even specify whether the intervention is of right or permissive. Order Granting Mot. to Intervene, *Corona v. Cegavske*, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020); *All. for Retired Am.'s v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020).

already complex matter. Their interests are already represented by multiple parties, and their proposed defenses of and policy justifications for the challenged law are virtually identical to those advanced by several of the current defendants. Far from assisting in this litigation, Republican Committees' participation in the instant case would needlessly burden the Court and the litigants and undermine the public's interest in the efficient resolution of voting rights claims. The Court should deny the motion.

## BACKGROUND

At issue in this lawsuit is Texas's omnibus voter suppression bill, SB 1, which targets with surgical precision the very measures that minority voters disproportionately relied on to increase turnout in 2020 and other recent elections. Following an election in which Texas saw its highest voter turnout in nearly 30 years, the Legislature enacted a series of sweeping voting restrictions that create barriers to virtually every method of voting, from eliminating ballot drop boxes and drive-thru voting to criminalizing efforts by public officials to encourage citizens to submit absentee ballot applications. Compl. ¶¶ 7–10.

On September 7, 2021, LULAC Plaintiffs brought this challenge to SB 1 against Attorney General Ken Paxton, Deputy Secretary of State Jose Esparza, and county election officials. The LULAC Plaintiffs allege that SB 1 violates Section 2 of the Voting Rights Act (Count I); places an undue burden on the right to vote in violation of the First and Fourteenth Amendments (Count II); restricts free speech and expression in violation of the First Amendment (Count III); and violates Section 208 of the Voting Rights Act (Count IV). *Id.* ¶¶ 243–83. This Court subsequently consolidated the case with four other lawsuits challenging SB 1: *OCA-Greater Hous. v. Esparza*, No. 1:21-cv-780 (W.D. Tex.); *Hous. Just. v. Abbott*, No. 5:21-cv-848 (W.D. Tex.); *La Union del*

*Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex.); and *Mi Familia Vota v. Abbott*, No. 5:21-cv-920. *See* Order Granting Defs.' Mot. to Consolidate 2, ECF No. 31.

Republican Committees moved to intervene on October 25, 2021. They allege that this litigation will impact their interests in, among other things, "winning elections," Mot. at 9, but provide no further details as to how SB 1 will enhance their political prospects—or how the pre-existing laws would impair their chances of winning elections if SB 1 is enjoined—and they advance no legal theory or policy argument not already represented by an existing party.

## LEGAL STANDARD

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is permitted only when (1) the motion is timely; (2) the putative intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case; (3) the disposition of the case will impair the putative intervenor's ability to protect that interest; and (4) the existing parties do not adequately protect that interest. *See Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). "Failure to satisfy any one requirement precludes intervention as of right." *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007).

Permissive intervention under Rule 24(b) is allowed at the Court's discretion "when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *LULAC, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). "Permissive intervention is at the discretion of the court even if the potential intervenor satisfies the requirements of Rule 24(b)." *Walker v. Alta Colls, Inc.*, No. A-09-CA-894-LY, 2011 WL 13269547, at *2 (W.D. Tex. Aug. 10, 2011).

## ARGUMENT

**I.    Republican Committees are not entitled to intervene as of right.**

> **A.    Republican Committees have failed to identify an adequate interest that could be impaired by this proceeding to justify intervention as of right.**

Rule 24(a) requires prospective intervenors to demonstrate that they have a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Hous.*, 78 F.3d 983, 1004 (5th Cir. 1996) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) ("*NOPSI*")). It further requires movants to show that they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest." *NOPSI*, 732 F.2d at 463. It is not enough for the movant to identify a "legally protectable interest"; the movant must explain how that interest "relate[s] to the property or transaction which is the subject of the action." *Edwards*, 78 F.3d at 999.

Republican Committees assert different purported interests at various points: (1) those of Republican candidates or voters in Texas in "preventing changes to the 'competitive environment,'" Mot. at 8, (2) their concern that overturning SB 1 might "chang[e] the results of elections" in Texas, *id.*, and (3) their interest in "winning elections" in Texas. *Id.* at 9. These might very well be "direct, substantial, legally protectable interests," but Republican Committees have failed to show how any of those interests are connected to *these proceedings*, as required, and it is not the role of this Court to do that work for them. *See Edwards*, 78 F.3d at 1004 (requiring "direct, substantial, legally protectable interest *in the proceedings*" (emphasis added)); *see also Great Am. Life Ins. Co. v. Tanner*, No. 3:16-CV-70-DMB-JMV, 2017 WL 3585703, at *3 (N.D. Miss. Aug. 18, 2017) (explaining that in considering a motion to intervene "a court need not accept conclusory allegations as true").

For example, Republican Committees vaguely assert concern over "changes to the 'competitive environment'" but make little effort to explain what that phrase means or show how SB 1 (or an injunction of the law) would substantively impact their candidates. So even assuming objections to "changes to the 'competitive environment'" are a legally protectable interest, Republican Committees still have not demonstrated that the outcome of this litigation might impact that interest.

Republican Committees' second claimed interest, preventing a "chang[e] [in] the results of elections," is also insufficient. Mot. at 6-8. To be sure, Republican Committees repeatedly insist— despite all evidence to the contrary, *see, e.g.*, Compl. ¶ 138—that "voter fraud 'could affect the outcome of a close election,'" Harris County Republican Party, Dallas County Republican Party, National Republican Senatorial Committee, and National Republican Congressional Committee's [Proposed] Answer, ECF No. 57-2 ("GOP Ans.") ¶ 70, but nowhere do they so much as claim, let alone show, that the supposed fraud exists, or that it harms them, or helps their opponents. *See*, *e.g.*, Kelly Mena, *Texas Lt. Gov. Dan Patrick pays out $25,000 to Democrat who reported Republican voter fraud*, CNN.com (Oct. 22, 2021), https://www.cnn.com/2021/10/22/politics/texas-voter-fraud-award/index.html; Amy B. Wang, *Nevada Republican who claimed someone stole dead wife's ballot is charged with voter fraud*, Washington Post (Oct. 22, 2021), https://www.washingtonpost.com/politics/2021/10/22/nevada-republican-who-claimed-someone-voted-his-dead-wife-is-charged-with-voter-fraud/; Corky Siemaszko, *Republican official in Ohio faces charge for voting twice in November election*, NBC News (Jun. 22, 2021), https://www.nbcnews.com/news/us-news/republican-official-ohio-faces-charge-voting-twice-november-election-n1271985. To the extent Republican Committees meant to claim instead an interest in ensuring *reliable* election results, *see* Mot. at 3-4 (claiming an

interest in "ensuring that Texas carries out free and fair elections"), that interest is also insufficient because it is generalized and shared with just about any person residing in the state of Texas, including the parties to this litigation. *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 253 (D.N.M. 2008) ("[A]n interest in fair elections and the prevention of voter registration fraud . . . [is] too general an interest to form the basis of a rule 24(a) [sic] motion."); *cf. Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015) (explaining that the interest must be "specific to the person possessing the right"). And the purported interest is deficient because Republican Committees have not identified how the LULAC Plaintiffs prevailing here would impair anyone's ability to ensure the reliability of election results.

Republican Committees' putative interests are inadequately developed in part because they are far "too contingent, speculative, or remote from the subject of the case." *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012). "The fact that the outcome of a lawsuit may, after intervening steps," adversely impact a movant "does not create a right to intervene." *Russell v. Harris Cnty.*, No. CV H-19-226, 2020 WL 6784238, at *2 (S.D. Tex. Nov. 18, 2020). For example, Republican Committees' unspecified claim that "Plaintiffs succeeding on their claims could 'chang[e] the results of elections,'" Mot. at 8, or change Republican Committees' electoral fortunes, could come to fruition only if many others undertook actions to bring about that result. Millions of citizens vote in Texas elections; because Republican Committees deny that SB 1 would make voting more difficult, the only way they could imagine the election outcome might change would be through widespread fraud. For this to happen, a sufficiently large bloc of voters would need to make the choice to violate federal and state law by casting fraudulent votes in a manner prohibited by SB 1; those voters would need to disproportionately cast their fraudulent votes for Democrats; and election officials would need to fail to detect the fraud. Republican

Committees have not established any of those things are reasonably likely to occur. Not only is any interest that relies on such an absurd and lengthy chain of events too "contingent, speculative, or remote" from this action to form the basis of intervention, the possibility of such a chain of events occurring is entirely without basis in reality. *See, e.g.* Compl. ¶¶ 74, 138.

This explains the motion's lack of detail in describing the lawsuit's impact on Republican Committees' purported interests; any serious attempt to connect those dots would have revealed significant logical flaws. SB 1, for instance, limits early voting to the hours of 6:00 a.m. and 10:00 p.m., Compl. ¶¶ 10, 172, but there is no credible claim that someone is more likely to vote fraudulently before 6:00 a.m. or after 10:00 p.m. Similarly, SB 1 restricts drive-through voting— but, again, it is simply implausible that someone is more likely to engage in voting fraud from their car than outside of their car. Compl. ¶¶ 10, 139, 162. Republican Committees do not even allege that they might have to divert resources as a result of the outcome of this litigation, such as by having to spend additional funds, or otherwise alter their behavior. *Cf. Issa v. Newsom*, No. 220CV01044MCECKD, 2020 WL 3074351 *3 (E.D. Cal. June 10, 2020). They simply suggest that Plaintiffs prevailing here could result in "a 'broader range of competitive tactics' from their opponents than Texas law 'would otherwise allow.'" Mot. at 9. Of course, those same "tactics" would be equally available to Republican Committees, and they have not explained how providing opportunities to vote would harm their asserted interests in winning elections. *Cf. Great Am. Life Ins. Co.*, 2017 WL 3585703, at *3 (explaining that in considering a motion to intervene "a court need not accept conclusory allegations as true").

Taken to its logical conclusion, Republican Committees' position would confer a right of intervention on *any* political entity in cases involving elections or election laws. They cite no authority in support of this sweeping position, and Plaintiffs' counsel has been unable to find any

such precedent, presumably because none exists. In lieu of pertinent precedent, Republican Committees trot out a raft of inapposite case law. For instance, they cite *Issa v. Newsom* to argue that courts "'routinely' find that political parties have interests supporting intervention in election-law litigation," but that was not the basis of the court's ruling in *Issa*. Mot. at 7. Rather, the court found that the specific interests articulated by the intervenors—including "the rights of their members to vote safely without risking their health" during the pandemic—were "routinely" sufficient to satisfy intervention, not the mere fact that they were a political entity. *Issa*, 2020 WL 3074351 at *3. In contrast to *Issa*, Republican Committees have not sufficiently explained how enjoining SB 1, and restoring the pre-existing laws, would impair their electoral prospects or any other protectable interest. *Cf. id*. [4]

In sum, interests alone, enunciated largely without elaboration or explanation as to their connection to the litigation, are insufficient to justify intervention of right. Republican Committees have failed to show how their interests "relat[e] to the property or transaction which is the subject of the action," *NOPSI*, 732 F.2d at 463, therefore their motion should be denied.

### B.     Republican Committees' interests are adequately represented by the Republican elected officials who are presently defendants in this matter.

Republican Committees have also failed to establish that their interests are inadequately represented by any of the many parties to this consolidated action, many of whom were elected as

---

[4] Republican Committees similarly misrepresent many other cases. *See, e.g.*, *Citizens United v. Gessler*, No. 14-cv-2266, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014) (cited for the proposition that "[n]o one disputes" that political parties generally "meet the impaired-interest requirement for intervention of right" but the court was merely reciting the fact that none of the parties to *that particular case* disputed that *the particular intervenors* in that case met the impaired-interest requirement);    *Thomas v. Andino*, 335 F.R.D. 364, 370 (D.S.C. 2020) (granting intervention of right based on the specific interest invoked by the state party movant: that it was "tasked with 'handling protest hearings stemming from [primary] election contests [at issue] and deciding [those] cases.'"); *Paher v. Cegavske*, No. 20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) (granting intervention of right where movant identified specific interests implicated and provided 166 pages of exhibits in support of motion).

Republican candidates. Though Republican Committees make general assertions that their interests "may not align precisely" with those of the parties, Mot. at 10, their suppositions do not satisfy the requirements of Rule 24(a). *See Edwards*, 78 F.3d at 1005 ("The burden of establishing inadequate representation is on the applicant for intervention."). Nor can they overcome the two widely recognized presumptions of adequate representation that apply here: (1) state defendants adequately "represent the interests of all of [the state's] citizens," *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994), and (2) parties with "the same ultimate objective" as the movant will adequately represent the movant's interests. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014).

The first presumption applies because the defendants are governmental officers. *Cf. Edwards*, 78 F.3d at 1005 (holding state-defendant presumption applies "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]"). The Harris County Republican Party and the Dallas County Republican Party are Texas-based organizations whose interests the State Defendants are therefore presumed to adequately represent. *See Hopwood*, 21 F.3d at 605. The NRSC and NRCC, meanwhile, are national organizations whose proffered interests supporting intervention revolve entirely around candidates running in Texas and voters who are Texas citizens. Mot. at 3-4 (detailing involvement in Texas elections); *id*. at 7 (asserting interest based on possible impact on "candidates who are running as Republicans [in Texas] and voters who are members of the Texas Republican Party" (cleaned up)), *id*. at 8 (asserting that litigation could "change the results of elections" and "affect[ ] the Republican Committees and their candidates and voters" in Texas). Accordingly, though they are not "citizens" of the state of Texas, they assert interests which the state defendants are "charged by law with representing." *Edwards*, 78 F.3d at 1005.

Because the state-defendant presumption applies, Republican Committees must "demonstrate that [their] interest is *in fact* different from that of the state and . . . *will not* be represented by the state." *Hopwood*, 21 F.3d at 605 (emphasis added). They cannot satisfy this requirement by simply arguing "at a high level of generality that 'the State's interests are broader' than those of the intervenor because 'the State must balance competing goals while [the intervenors] are sharply focused on [upholding the policy in question]." *Texas*, 805 F.3d at 663 (quoting *Hopwood*, 21 F.3d at 605); *see also Bostelmann*, 2020 WL 1505640, at *4 ("[D]ifferent political considerations held by the proposed intervenors and defendants are not sufficient by themselves to show inadequate representation."). Yet that is precisely the argument they advance here: that "[t]he Defendants' generalized interest in enforcing the law is distinct from the Republican Committees' private interests." Mot. at 10. These claims, made without warrant, are a far cry from the divergence of interest identified in *Hopwood* as sufficient to overcome the state-defendant presumption of adequacy—*i.e.*, where the movants show that the State "will not strongly defend its [policy]" or where the would-be intervenors "have a separate defense of the [policy] that the State has failed to assert." 21 F.3d at 606. Republican Committees have shown neither.

Even if the state-defendant presumption did not apply, Defendants are also presumed to adequately represent Republican Committees' interests because they share "the same ultimate objective": upholding the constitutionality of SB 1. *See Brumfield*, 749 F.3d at 345. Republican Committees assert that this presumption does not apply because their interests "may not align precisely," Mot. at 10 (quoting *Brumfield*, 749 F.3d at 345), but offer up only hypothetical future conflicts. The relevant inquiry for this presumption is not whether some conflict might exist but rather whether the movants and a party have the same position on the constitutionality of the challenged government action. *Louisiana v. Biden*, 338 F.R.D. 219, 224 (W.D. La. 2021) (holding

movant-intervenors shared "same ultimate objective" with defendants where they both held same position on "whether the Government Defendants had the constitutional and/or statutory authority" to take challenged action); *cf. Kneeland v. NCAA*, 806 F.2d 1285, 1288 (5th Cir. 1987) (observing that, in case seeking disclosure of documents, movants and parties shared "same ultimate objective" because they all sought "to prevent disclosure of the documents"). This principle was explained with clarity in *Democratic Nat'l Comm. v. Bostelmann*, one of the cases Republican Committees cite: "[T]he default liberal standard is plainly inapplicable" where "Defendants and proposed intervenors currently share the same goal: to uphold the constitutionality of the challenged laws." No. 20-CV-249-WMC, 2020 WL 1505640 at *2 (W.D. Wis. Mar. 28, 2020). Such is the case here.

Republican Committees' selective quotation from *Brumfield v. Dodd*, furthermore, does not refute this presumption. 749 F.3d 339 (5th Cir. 2014). They imply that *Brumfield* allows them to demonstrate inadequate representation simply by pointing to the mere possibility that their interests might not align. *See* Mot. at 10 (quoting *Brumfield*, 749 F.3d at 345). But *Brumfield* itself undermines Republican Committees' reasoning. There, the court clarified that the presumption did not apply because the movants were "staking out a position *significantly* different from that of the state," *Brumfield*, 749 F.3d at 346 (emphasis added). Here, that is not the case. *Compare* GOP Ans. at 43 (asserting defenses of lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, lack of standing, statutes of limitations, equitable doctrines, and failure to join indispensable parties) *with, e.g.*, Original Answer of Defendant Michael Scarpello, at 47-48, ECF No. 59 (asserting, in relevant part, defenses of failure to state a claim upon which relief may be granted and lack of standing), Defendant Abbott et al.'s Motion to Dismiss the Complaint of the League of United Latin American Citizens, et al., at 2-8, ECF No. 54 (arguing lack of subject matter jurisdiction as a result of sovereign immunity), *id.* at 8-16 (arguing that

Plaintiffs lack standing), *and id*. at 16-21 (arguing that Plaintiffs failed to state a claim upon which relief could be granted). Furthermore, reading *Brumfield* as Republican Committees urge would eviscerate the presumption and, with it, the "teeth" of the adequate representation requirement with which the *Brumfield* court was so concerned. *See Brumfield*, 749 F.3d at 345 (noting that the presumptions exist because "[t]his requirement . . . must have some teeth . . . .") (citing *Edwards*, 78 F.3d at 1005). To overcome the presumption, Republican Committees need to "show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Texas*, 805 F.3d at 662. They have not. And their hypothesized potential, but unexplained, difference in interests is insufficient.

Finally, even if neither presumption applied, the motion should still be denied given Republican Committees' threadbare recitation of imaginary conflicts. After all, the intervenor's burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Cajun Elec. Power Co-op, Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991). In *Brumfield*, for example, the movants prevailed on this prong by "staking out a position significantly different from that of the state," and explaining that difference with specificity. *Brumfield*, 749 F.3d at 346. Similarly, in *Edwards*, a movant prevailed because it identified specific, relevant policy differences with the defendant city. 78 F.3d at 1005 (noting defendant city believed it needed to "change the existing promotional policies and procedures" of police department but movants did not). Republican Committees have provided no such detail here.

Because "the same positions and defenses will be presented in this suit, whether or not intervention is allowed . . . . this case more is more closely aligned with those cases in which courts have determined that the burden of showing inadequacy of representation has not been met." *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984). "[T]his is not a case in which we can say that

[Republican Committees] are 'without a friend in this litigation.'" *Id*. at 358 (quoting *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967)). As a result, the motion for intervention of right should be denied.

## II.   Republican Committees should not be granted permissive intervention.

Republican Committees' request for permissive intervention under Rule 24(b) should likewise be denied because their participation would unnecessarily complicate this matter, a consolidated action from four suits and already involving dozens of parties.

Permissive intervention may be granted only where "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019) (quoting *Frazier v. Wireline Sols., LLC*, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010)). In determining whether to grant permissive intervention, "the district court may consider, among other factors, whether the intervenors' interests are adequately represented by other parties, and whether intervention will unduly delay the proceedings or prejudice existing parties." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Moreover, a court may deny permissive intervention "even if the potential intervenor satisfies the requirements of Rule 24(b)." *Walker v. Alta Colls., Inc.*, No. A-09-CA-894-LY, 2011 WL 13269547, at *2 (W.D. Tex. Aug. 10, 2011) (citing *Kneeland*, 806 F.2d at 1289).

As discussed above, Republican Committees' putative interests in defending the state's election laws are more than adequately represented by Defendants, who include the Governor, the Attorney General, and the Secretary of State. This is especially so because a presumption of adequacy of representation applies for two reasons—first, because the defendants in this action are

state officials; second, because Republican Committees share the same ultimate objective as the defendants, *i.e.*, defending SB 1. Republican Committees have made only a perfunctory effort to show either that the presumption does not apply or that they can overcome it.

Moreover, Republican Committees' participation would unnecessarily prejudice the existing parties. With the crowding of additional participants in this coordinated proceeding, litigation becomes more complex, expensive, and time consuming at every step. Briefing schedules become more complicated, the number of pages that the parties and the Court must contend with in filings become multiplied, discovery becomes more burdensome, scheduling becomes more difficult, and negotiating even basic stipulations becomes more cumbersome. *See, e.g.*, *Walker*, 2011 WL 13269547, at *2. These concerns are amplified in a consolidated action like this one that already spans nearly 40 unique parties across five different actions. *Bush*, 740 F.2d at 359 ("Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943))

Nor would Republican Committees add any worthwhile perspective to the litigation. *See id.* ("Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention."). They do not stake out any unique legal position. And whatever interest Republican Committees might have in upholding SB 1 is shared, if not held to a far greater degree, by the state officials who are already defendants in this matter. Many were elected as Republicans, and many will soon be running for re-election as Republicans. Accordingly, the Court should deny the motion for permissive intervention.

## CONCLUSION

For these reasons, the Court should deny Republican Committees' motion to intervene.

Dated: November 8, 2021.

Respectfully submitted,

/s/  Uzoma N. Nkwonta
Marc E. Elias*
Uzoma N. Nkwonta*
Kathryn E. Yukevich*
Joseph N. Posimato*
Meaghan E. Mixon*
Graham W. White*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
melias@elias.law
unkwonta@elias.law
kyukevich@elias.law
jposimato@elias.law
mmixon@elias.law
gwhite@elias.law

Jonathan P. Hawley*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0179
jhawley@elias.law

John R. Hardin
Texas State Bar No. 24012784
**PERKINS COIE LLP**
500 North Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
johnhardin@perkinscoie.com

*Counsel for Plaintiffs*

Domingo Garcia*
Texas State Bar No. 07631950
**LAW OFFICE OF DOMINGO GARCIA PC**
1111 West Mockingbird Lane, Suite 1200
Dallas, Texas 75247-5012
Telephone: (214) 941-8300
dgarcia@lulac.org

Luis Roberto Vera, Jr.
Texas State Bar No. 29546740
**ATTORNEY AND COUNSELOR AT LAW**
407 West Ware Boulevard
San Antonio, Texas 78221
Telephone: (210) 225-3300
lrvlaw@sbcglobal.net

*Counsel for Plaintiff LULAC Texas*

*Admitted Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule CV-7(D)(3), counsel for Plaintiffs certify that this opposition brief does not exceed 20 pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

*/s/  Uzoma N. Nkwonta*

Uzoma N. Nkwonta