# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., *Plaintiffs,* v. GREGORY W. ABBOTT, et al., *Defendants.* | Consolidated Civil Action No.: 5:21-CV-00844-XR |

**REPLY IN SUPPORT OF REPUBLICAN COMMITTEES' MOTION TO INTERVENE**

Plaintiffs' oppositions to the Republican Committees' motion to intervene provide no basis to depart from the Fifth Circuit's "broad policy favoring intervention," *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016), or from the long line of cases "routinely" granting political parties intervention in suits challenging election laws, *see* Intervenor-Defs.' Mot. To Intervene (ECF 57) 2 n.3 ("Mot."). Plaintiffs fail to defeat the Republican Committees' showing that they have a substantial and particularized interest in the election laws under which their voters vote; their candidates run for office; and the Republican Committees expend their resources mobilizing and educating voters, candidates, election observers, and volunteers. *See id.* at 3–8. Plaintiffs, moreover, do not seriously dispute that this interest could be impaired if the Court enjoins any provision of SB 1 now or in the future: after all, changes in the competitive environment for elections invariably affect the interests of political parties and their allocation of resources. *See id.* at 8–9. Finally, the Republican Committees have demonstrated that no existing party shares—let alone adequately represents—their interest, a burden Plaintiffs agree is "minimal," ECF 87 at 14 ("LULAC Opp."); ECF 88 at 7 ("Houston Justice Opp."); ECF 91 at 6 ("LUPE Opp."). The Court thus should grant the Republican Committees intervention of right or, in the alternative, permissive intervention.

## ARGUMENT

**I.    THE REPUBLICAN COMMITTEES HAVE A RIGHT TO INTERVENE UNDER RULE 24(a).**

The Republican Committees satisfy Rule 24(a)'s requirements for intervention of right: (1) their motion is timely; (2) they have interests relating to the property or transaction that is the subject of the action; (3) their ability to protect these interests will be impaired without intervention; and (4) the existing parties may not adequately represent their interests. Fed. R. Civ.

1

P. 24(a); Mot. 5. Plaintiffs do not dispute that the motion is timely; instead, they argue that the Republican Committees cannot satisfy the other three prongs. Their arguments fail on all fronts.

### A. The Republican Committees Have A Legally Protectable Interest In These Cases That Could Be Impaired If They Are Not Permitted To Intervene.

The Republican Committees' interest in the subject of this action is obvious. The Republican Committees and their members, supported candidates, and voters actively participate in Texas elections. Mot. 7–8. The Republican Committees expend resources on "educating, mobilizing, assisting, and turning out voters" and providing "direct and indirect financial contributions and support" for "voter registration, voter education, and voter turnout drives." *Id.* at 3–4. Because "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the [Texas] Republican Party," there can be "no dispute" that the Republican Committees have an interest in this action. *Ohio Democratic Party v. Blackwell*, No. 04-cv-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

Moreover, the disposition of this action "may" impair the Republican Committees' interest. *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Any order enjoining enforcement of SB 1 threatens to change the electoral environment designed by the Legislature; threatens to change how the Republican Committees expend their resources; and would subject the Republican Committees and their members, candidates, and voters to a broader range of competitive tactics than state law otherwise would allow. *See* Mot. 9.

Plaintiffs nonetheless offer several arguments in an attempt to defeat the Republican Committees' showing of an interest that could be impaired by the disposition in this case—all of which fail. *First*, Plaintiffs mischaracterize the Republican Committees' interest in these cases, arguing that the Republican Committees' mere "generalized" interests are shared by "all Texans." Houston Justice Opp. 5; LULAC Opp. 8; LUPE Opp. 5. But not "all Texans" share an interest in

electing Republicans, and Plaintiffs do not dispute that the Republican Committees have a specific and particularized interest in preventing changes to the "competitive environment" in which their candidates compete and in which they expend resources. *See* LULAC Opp. 6; Mot. 7–8 (quoting *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005)).

*Second*, Plaintiffs argue that the Republican Committees' interest in these cases is "vague[]" or "speculative." LULAC Opp. 7–9; Houston Justice Opp. 5–6. But no speculation, "intervening steps," or "series of hypotheticals" are necessary to conclude that enjoining the challenged provisions of SB 1 would necessarily change the competitive environment in which the Republican Committees and their members, candidates, and voters participate and expend resources. *Russell v. Harris Cnty.*, No. 4:19-cv-226, 2020 WL 6784238, at *2–3 (S.D. Tex. Nov. 18, 2020); *see also* Mot. 8. No doubt, an adverse decision would subject the Republican Committees to a "broader range of competitive tactics" than the law would otherwise allow, Mot. 9, including turning out voters during extended early-voting hours, LULAC Opp. 9, and vote-harvesting operations, Houston Justice Opp. 6. That "those same 'tactics'" might also be available to the Republican Committees proves the point that the Republican Committees would have to account for them in their efforts to elect Republicans to office. LULAC Opp. 9.

Plaintiffs fixate on the Republican Committees' statement that alterations to election rules could "chang[e] the results of elections," and assert that the Republican Committees must prove the presence of widespread fraud to support this assertion. *Id.* at 7–9 (quoting Mot. 8). But the Republican Committees never suggested that fraud is the only factor that could change the results of elections. The rules governing elections, and judicially-ordered changes to them, can certainly affect election results and candidates' electoral prospects. Indeed, some of the Plaintiffs rely on that very same premise in asserting their standing to challenge SB 1. *See* LULAC Compl. ¶ 23

(alleging that SB 1 "threaten[s] the electoral prospects of the Alliance's endorsed candidates"); *see also Issa v. Newsom*, No. 20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (allowing the Democratic Party to intervene to defend mail-voting law because the law could "advanc[e] their overall electoral prospects").

*Third*, Plaintiffs characterize the Republican Committees' argument that an adverse decision will "threaten to confuse voters" and "undermine confidence in the electoral process" as "speculative" and unrelated to their asserted interest justifying intervention. Houston Justice Opp. 6 (quoting Mot. 9). Neither assertion is true. An order enjoining SB 1 could come shortly before the 2022 election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Voters, candidates, campaigns, and election officials will be diligently studying and implementing SB 1 while this case is litigated and appealed. *See Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S.Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). A "conflicting" court order, particularly as the 2022 election "draws closer," could only "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. And the resulting loss of confidence may make it less likely that Republican Committees' voters will vote and that their candidates will win. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

*Fourth*, Plaintiffs argue that the Republican Committees' position would allow "any political entity in cases involving elections or election laws" to intervene. But any putative intervenor of right must independently satisfy Rule 24(a)'s requirements of timeliness, interest, impairment, and lack of adequacy of representation. *See* Fed. R. Civ. P. 24(a)(2). Moreover, a generic "political entity" will not necessarily have the same interests as a political party in maintaining the "competitive environment" in which the party's candidates compete or the party expends resources to mobilize voters, candidates, and election observers. *See* Mot. 8–9.

*Finally*, Plaintiffs criticize the Republican Committees for citing a "raft" of supposedly "inapposite case law." LULAC Opp. 10. But it is Plaintiffs who rest on inapposite case law, such as cases involving putative intervenors with only speculative, purely economic interests.[1] Moreover, Plaintiffs concede that courts have permitted political parties to intervene in dozens of recent election-law cases. *See id.* at 3 & nn.2–3; Mot. 2 n.3. This lopsided weight of authority underscores the unique interest that political parties have in election-law cases, and why the Court should grant the Republican Committees' motion in this election-law case.

### B. The Existing Parties Do Not Adequately Represent The Republican Committees' Interest.

As the Republican Committees have explained, no existing party to this litigation shares, let alone adequately represents, their unique interest in the election of Republican candidates and expenditure of resources to educate and mobilize Republican voters, candidates, election observers, and volunteers. *See* Mot. 9–11. Plaintiffs agree that the Republican Committees' burden on this prong is "minimal," LULAC Opp. 14; Houston Justice Opp. 7; LUPE Opp. 6, and do not argue that any existing party is "a representative" of the Republican Committees "by law," *Brumfield*, 749 F.3d at 345. Rather, they ask the Court to "presume" that Defendants adequately represent the Republican Committees' interest because, at this juncture, Defendants and the Republican Committees "share the same ultimate objective" of upholding SB 1. *See, e.g.*, LULAC Opp. 11; LUPE Opp. 6; Houston Justice Opp. 7. This argument fails for several reasons.

*First*, as the Fifth Circuit has made clear, a putative intervenor satisfies its "minimal" burden on this prong simply by showing that state officer-defendants have "more extensive

---

[1] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (LULAC Opp. 6); *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012) (LULAC Opp. 8); *Russell*, 2020 WL 6784238, at *2 (LULAC Opp. 8).

interests" than they do, even if the putative intervenor and defendants share a common objective. *Brumfield*, 749 F.3d at 346.  In *Brumfield*, both the state officer-defendants and the intervenor-defendant parents "oppose[d] dismantling the [school] voucher program" that the plaintiffs challenged. *Id.* at 345.  Even so, the Fifth Circuit held that intervention was proper because the defendants' and the parents' interests "may not align precisely." *Id.*  After all, the state had "many interests in th[e] case" that were not shared by the parents. *Id.* at 346.  Thus, although the parents could not show these "more extensive" interests would "*in fact* result in inadequate representation," the possibility that "they might" was enough to warrant intervention of right. *Id.* (emphasis in original).

*Second*, Plaintiffs likewise contradict the governing law when they assert that Defendants are adequate representatives because Defendants and the Republican Committees have taken similar legal positions to date.  See LULAC Opp. 13–15; LUPE Opp. 6–9; Houston Justice Opp. 7–9.  After all, "[b]ecause intervention necessarily occurs before the litigation has been resolved," or even before the parties' positons have been fully established, an intervenor need only show that representation by existing parties "*may* be inadequate" at some point in the case, not that a conflict in legal positions has already surfaced. *Wal-Mart Stores*, 834 F.3d at 569 (citation omitted).  Thus, while *Brumfield* mentioned a difference in legal position between the defendants and the putative intervenors, it did not *require* such a difference.  See *Brumfield*, 749 F.3d at 346.

The Republican Committees have identified numerous reasons why their interest in these cases "may not align precisely" with Defendants' interests.  Mot. 10–11.  These reasons are not "hypothetical" or "imaginary," LULAC Opp. 12, 14, but examples of the ways in which the Defendants have "more extensive interests" to consider that "might" result in inadequate representation. *Brumfield*, 749 F.3d at 346.  Those examples alone are sufficient to warrant

intervention. *Id.* at 345–46.

*Third*, Plaintiffs' premise that Defendants' and the Republican Committees' positions in this litigation are identical, *see* LULAC Opp. 13–15; LUPE Opp. 6–9; Houston Justice Opp. 7–9, is incorrect. In the first place, Defendants' "silence on any intent to defend [the Republican Committees'] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because the Defendants "nowhere argue[] . . . that [they] will adequately protect [the Republican Committees'] interests," the Republican Committees "have raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, No. 16-5202, 2017 WL 3271445, at *2 (D.C. Cir. Aug 1, 2017).

Moreover, Defendants' filings to date raise unique arguments unavailable to the Republican Committees—and demonstrate that a future inadequacy of representation is neither "hypothetical" nor "imaginary." LULAC Opp. 12, 14. In these consolidated cases, Plaintiffs have sued Texas officials—including the Governor, Attorney General, and Secretary of State (collectively, the "State Defendants")—as well as various local elections officials ("Local Defendants"). The State Defendants have filed motions to dismiss each of the complaints on the grounds that the State Defendants either do not have enforcement authority over the challenged provisions of SB 1 or that Plaintiffs have not adequately alleged such authority. *See* ECF 53 at 2–8; ECF 54 at 2–8; ECF 55 at 1–8; ECF 64 at 2–9; ECF 67 at 2–7. If the State Defendants prevail on that defense, there would be *no* party in the case to represent the interests of Texas voters and citizens statewide or in the localities outside the Local Defendants' jurisdiction. And it is precisely such statewide interests of Republican voters, candidates, and volunteers that the Republican Committees seek to represent by intervening. *See* Mot. 10–11.

Furthermore, it cannot seriously be disputed that the Local Defendants are inadequate representatives of the Republican Committees' interests. In fact, the Harris County Elections Administrator is both a Defendant *and a Plaintiff* in these cases. *See* ECF 1 (Plaintiff); ECF 24-1, 24-2, 24-3 (Defendant). She filed answers purporting to admit that provisions of SB 1 are unlawful. *See* ECF 58, 65, 66. And all but one Local Defendant declined to file motions to dismiss, *see* ECF 68, indicating that they may not be committed to a vigorous defense of SB 1. Yet, even if some of the Local Defendants intend to defend against the Plaintiffs' claims, they still have other interests to consider, *see* Mot. 10, and their more limited resources and restricted jurisdictions make it doubtful that they will be able to vigorously defend a statewide law.

*Finally*, the LULAC Plaintiffs argue that Defendants must be adequate representatives because they are Texas government officials and the Republican Committees seek to uphold the interests of "Texas voters" and "citizens." LULAC Opp. 11. But *Brumfield* does not recognize a presumption of adequacy of representation by a state-officer defendant and held that intervention was warranted in a case with such defendants. *See Brumfield*, 749 F.3d at 346. In all events, the LULAC Plaintiffs ask the Court to turn an alleged *presumption* that elected officials are adequate representatives into a *prohibition* on members of the public intervening in cases where their elected officials are named as defendants. *See* LULAC Opp. 11. Such a prohibition, of course, cannot survive either the long line of cases granting intervention to political parties in cases challenging election laws, *see* Mot. 2 n.3, or the Fifth Circuit's binding holding in *Brumfield*. Likewise, Plaintiffs' citation of stray out-of-circuit cases holding that government defendants adequately represented political entities' interests, *See* LULAC Opp. 13; LUPE Opp. 8–9; Houston Justice Opp. 8, are inapposite because none of those courts was bound by *Brumfield*. The Court should grant intervention of right under Rule 24(a).

8

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(b).

If the Court declines to grant intervention of right, it should grant permissive intervention. *See* Fed. R. Civ. P 24(b); *see* Mot. 11–12. Plaintiffs do not dispute that the Republican Committees' motion is timely and that they raise defenses that share common questions with this action. Indeed, some Plaintiffs expressly concede that fact. LUPE Opp. 10. Plaintiffs instead rehash their argument that existing parties adequately represent the Republican Committees' interests. LULAC Opp. 15–16; LUPE Opp. 10–11; Houston Justice Opp. 10. This argument fails, not only for the reasons described above, but also because Rule 24(b) does not require the intervenor to have an "interest" at all, let alone an interest that the parties inadequately represent. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996); *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019). Instead, courts grant permissive intervention even when the intervenor is "completely and adequately represented," will merely "enhance[]" the government's defense, or will provide a "secondary voice in the action." *Ohio Democratic Party*, 2005 WL 8162665, at *2; *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 286 (D.D.C. 2014); *Alabama v. U.S. Dep't of Commerce*, No. 18-cv-772, 2018 WL 6570879, at *3 (N.D. Ala. Dec. 13, 2018).

Plaintiffs also argue that allowing the Republican Committees to intervene will delay and complicate the case. But Rule 24(b) asks about "*undu*[*e*] delay or prejudice." "'Undue' means not normal or appropriate." *Appleton v. Comm'r of Internal Revenue,* 430 F. App'x 135, 138 (3d Cir. 2011). Though "any introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay,'" that kind of prejudice or delay is irrelevant under Rule 24(b). *Id.* The entire point of intervention, after all, is to add parties to a case.

9

But the Republican Committees' intervention will not cause any delay or prejudice, undue or otherwise. This case is still in its infancy, and the Republican Committees will "comply with the schedule that would be followed in their absence." *Nielsen v. DeSantis*, No. 20-cv-236, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020); *see also* Mot. 12. Nor could the Republican Committees' arguments "materially increase[] either delay or prejudice" because, as Plaintiffs concede, the Republican Committees could still raise them as amici. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).[2] Notably, Plaintiffs point to no delay or prejudice in the many cases where the Republican Party intervened during the 2020 election, which were litigated on an expedited basis (unlike this one). Plaintiffs should be able to do so, had any prejudice occurred, since Plaintiffs or their attorneys were involved in many of those cases.

Moreover, Plaintiffs' ostensible concerns about delay and complication are recent developments. Most of the Plaintiffs did not oppose the consolidation of these cases, *see* ECF 24 at 1, and no Plaintiff filed an opposition to the State Defendants' motion to consolidate. In other words, while Plaintiffs did not oppose consolidating more than two dozen plaintiffs and numerous claims into a single action on the grounds of delay or complication, they oppose the addition of the Republican Committees, despite the Republican Committees' firm pledge to avoid any duplication and to abide by any schedule the court sets. Mot. 12. Plaintiffs' pretextual concerns about delay or prejudice provide no basis to deny intervention.

## CONCLUSION

The Court should grant the Republican Committees' motion to intervene.

---

[2] Plaintiffs suggest limiting the Republican Committees to amicus status, but "the right to file a brief as *amicus curiae* is no substitute for the right to" participate as a party. *Utahns for Better Transp.*, 295 F.3d at 1115 (citation omitted).

10

November 15, 2021                                       Respectfully submitted,

                                                          */s/ John M. Gore*
                                                          John M. Gore
                                                          E. Stewart Crosland\*
                                                          Stephen J. Kenny\*
                                                          JONES DAY
                                                          51 Louisiana Avenue, N.W.
                                                          Washington, D.C. 20001
                                                          Phone: (202) 879-3939
                                                          Fax: (202) 626-1700
                                                          jmgore@jonesday.com
                                                          scrosland@jonesday.com
                                                          skenny@jonesday.com

                                                          *Counsel for Proposed Intervenor-Defendants*

                                                          \**Pro hac vice* applications pending

## CERTIFICATE OF SERVICE

    I hereby certify that on November 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

    */s/ John M. Gore*
    *Counsel for Proposed Intervenor-Defendants*