**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | Consolidated Case No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREGORY W. ABBOTT, *et al.*, | § | |
| *Defendants*. | § | |

**Documents Produced with State Defendants' Initial Disclosures**
**November 5, 2021**

**Copy Filed with the Court November 15, 2021 (ECF 112)**

**Senate Bill 7**
**Legislative Session: 87(R)**

Date: November 15, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 15, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

**Texas Legislature Online**
**History**

---

| | |
|---|---|
| **Bill:** SB 7 | **Legislative Session:** 87(R) | **Council Document:** 87R 10764 ADM-F |

**Last Action:** *05/30/2021 H Point of order overruled*

**Caption Version:** House Committee Report

**Caption Text:** Relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses.

**Author:** Hughes | Bettencourt | Birdwell | Buckingham | Campbell | Creighton | Hall | Kolkhorst | Nelson | Paxton | Perry | Schwertner | Springer

**Coauthor:** Taylor

**Sponsor:** Cain | Schofield | Jetton | Klick | Oliverson

**Cosponsor:** Allison | Anderson | Ashby | Bell, Cecil | Bell, Keith | Biedermann | Bonnen | Buckley | Burns | Burrows | Button | Capriglione | Cason | Cook | Cyrier | Dean | Ellzey | Frank | Frullo | Goldman | Harless | Harris | Hefner | Holland | Hull | Kacal | King, Phil | Krause | Kuempel | Lambert | Landgraf | Leach | Leman | Lozano | Metcalf | Meyer | Middleton | Morrison | Murphy | Murr | Noble | Paddie | Parker | Patterson | Paul | Price | Rogers | Sanford | Schaefer | Shaheen | Shine | Slaton | Slawson | Smith | Smithee | Spiller | Stephenson | Stucky | Swanson | Thompson, Ed | Tinderholt | Toth | VanDeaver | Vasut | White | Wilson

**Subjects:** Courts--Appellate (I0125)
Courts--County & Statutory (I0115)
Courts--District (I0120)
Crimes--Miscellaneous (I0200)
Criminal Procedure--General (I0208)
Elections--Administration (I0277)
Elections--Early Voting (I0260)
Elections--Election Officers (I0305)
Elections--General (I0310)
Elections--Registration & Suffrage (I0265)
Elections--Voting Systems (I0270)
Electronic Information Systems (I0311)
ELECTION INTEGRITY PROTECTION ACT OF 2021 (PA6QF)
FRAUD (S0166)
INTERNET (S0130)
VIDEO CAMERAS (S0786)
ATTORNEY GENERAL (V2811)
SECRETARY OF STATE (V0042)
SUPREME COURT (V0311)

**Companion:** HB 6 by Cain, Similar

**Senate Committee:** State Affairs
**Status:** Out of committee
**Vote:** Ayes=5   Nays=2   Present Not Voting=0   Absent=2

**House Committee:** Elections
**Status:** Out of committee
**Vote:** Ayes=5   Nays=4   Present Not Voting=0   Absent=0

**Senate Conferees:** Appointed (05/17/2021) Hughes (Chair) | Bettencourt | Buckingham | Kolkhorst | Powell

**House Conferees:**   Appointed (05/19/2021) Cain (Chair) | Canales | Clardy | Collier | Jetton

**Actions**: (descending date order)

Viewing Votes: Most Recent House Vote | Most Recent Senate Vote

| | Description | Comment | Date▼ | Time | Journal Page |
|---|---|---|---|---|---|
| H | Point of order overruled | Rule 13, Section 9(a)(2) | 05/30/2021 | | 5466 |
| H | House adopts resolution to go outside bounds | HR 2007 | 05/30/2021 | | 5464 |
| H | Senate adopts conf. comm. report-reported | | 05/30/2021 | | 5470 |
| S | Record vote | | 05/30/2021 | | 2914 |
| S | Senate adopts conference committee report | | 05/30/2021 | | 2914 |
| S | Remarks ordered printed | | 05/30/2021 | | 1 |
| S | Senate adopts resolution to go outside bounds | SR 547 | 05/29/2021 | | 2913 |
| S | Record vote | | 05/29/2021 | | 2885 |
| S | Rules suspended | | 05/29/2021 | | 2885 |
| H | Conf. Comm. Report distributed | | 05/29/2021 | 04:41 PM | |
| S | Corrected Conference committee report filed | | 05/29/2021 | | 2989 |
| S | Conference committee report filed | | 05/29/2021 | | 2989 |
| S | House appoints conferees-reported | | 05/19/2021 | | 1605 |
| S | House grants request for conf comm-reported | | 05/19/2021 | | 1605 |
| H | House appoints conferees | | 05/19/2021 | | 3431 |
| H | House grants request for conference committee | | 05/19/2021 | | 3431 |
| S | Senate appoints conferees-reported | | 05/18/2021 | | 3327 |
| H | Senate requests conference committee-reported | | 05/18/2021 | | 3327 |
| H | Senate refuses to concur-reported | | 05/18/2021 | | 3327 |
| S | Senate appoints conferees | | 05/17/2021 | | 1523 |
| S | Senate requests conference committee | | 05/17/2021 | | 1523 |
| S | Senate refuses to concur | | 05/17/2021 | | 1523 |
| S | Read | | 05/17/2021 | | 1523 |
| S | House amendment(s) laid before the Senate | | 05/17/2021 | | 1494 |
| S | House passage as amended reported | | 05/14/2021 | | 1450 |
| H | Statement(s) of vote recorded in Journal | | 05/07/2021 | | 2512 |
| H | Record vote | RV#848 | 05/07/2021 | | 2511 |
| H | Passed | | 05/07/2021 | | 2511 |
| H | Read 3rd time | | 05/07/2021 | | 2510 |
| H | Statement(s) of vote recorded in Journal | | 05/07/2021 | | 2496 |
| H | Record vote | RV#841 | 05/07/2021 | | 2496 |
| H | Passed to 3rd reading as amended | | 05/07/2021 | | 2496 |
| H | Amended | 20-Beckley | 05/07/2021 | | 2495 |
| H | Amended | 19-Clardy | 05/07/2021 | | 2494 |
| H | Amended | 18-Dutton | 05/07/2021 | | 2492 |
| H | Amended | 17-J. Turner | 05/07/2021 | | 2492 |
| H | Amended | 16-Vo | 05/07/2021 | | 2491 |
| H | Amended | 15-Gervin-Hawkins | 05/07/2021 | | 2487 |
| H | Amended | 14-Klick | 05/07/2021 | | 2485 |
| H | Amended | 13-Howard | 05/07/2021 | | 2484 |
| H | Amended | 12-Bucy | 05/07/2021 | | 2483 |
| H | Amended | 11-Bucy | 05/07/2021 | | 2483 |
| H | Amended | 10-Minjarez | 05/07/2021 | | 2482 |
| H | Amended | 9-Bucy | 05/07/2021 | | 2480 |
| H | Amendment withdrawn | 8-Davis | 05/07/2021 | | 2480 |
| H | Amended | 7-Bucy | 05/07/2021 | | 2479 |
| H | Amended | 6-Murr | 05/07/2021 | | 2476 |
| H | Amended | 5-Cain and Schofield | 05/07/2021 | | 2476 |
| H | Amended | 4-Cain and Schofield | 05/07/2021 | | 2475 |

| | | | | | |
|---|---|---|---|---|---|
| H | Amended | 3-Cain | 05/07/2021 | | 2475 |
| H | Amended | 2-J.D. Johnson and Cain | 05/07/2021 | | 2475 |
| H | Laid out as postponed business | | 05/07/2021 | | 2475 |
| H | Postponed | 5/6/21 11:30 PM | 05/06/2021 | | 2423 |
| H | Point of order withdrawn | Rule 4, Section 32(c) | 05/06/2021 | | 2423 |
| H | Amendment(s) offered | 2-J.D. Johnson and Cain | 05/06/2021 | | 2423 |
| H | Statement(s) of vote recorded in Journal | | 05/06/2021 | | 2423 |
| H | Record vote | RV#838 | 05/06/2021 | | 2422 |
| H | Amendment fails of adoption | 1-J. González | 05/06/2021 | | 2422 |
| H | Read 2nd time | | 05/06/2021 | | 2421 |
| H | Laid out in lieu of companion | CSHB 6 | 05/06/2021 | | 2421 |
| H | Committee report sent to Calendars | | 05/04/2021 | | |
| H | Committee report distributed | | 05/04/2021 | 04:48 PM | |
| H | Comte report filed with Committee Coordinator | | 05/04/2021 | | 2351 |
| H | Reported favorably as substituted | | 04/29/2021 | | |
| H | Amendment(s) considered in committee | | 04/29/2021 | | |
| H | Committee substitute considered in committee | | 04/29/2021 | | |
| H | Considered in public hearing | | 04/29/2021 | | |
| H | Referred to Elections | | 04/12/2021 | 03:08 PM | 973 |
| H | Read first time | | 04/12/2021 | | 973 |
| H | Received from the Senate | | 04/06/2021 | | 857 |
| S | Reported engrossed | | 04/01/2021 | | 586 |
| S | Remarks ordered printed | | 04/01/2021 | | 552 |
| S | Record vote | | 04/01/2021 | | 552 |
| S | Passed | | 04/01/2021 | | 552 |
| S | Read 3rd time | | 04/01/2021 | | 552 |
| S | Record vote | | 04/01/2021 | | 552 |
| S | Rules suspended-Regular order of business | | 04/01/2021 | | 552 |
| S | Record vote | | 04/01/2021 | | 546 |
| S | Passed to engrossment as amended | | 04/01/2021 | | 546 |
| S | Record vote | | 04/01/2021 | | 546 |
| S | Amendment adopted as amended | FA22 Hall | 04/01/2021 | | 546 |
| S | Record vote | | 04/01/2021 | | 546 |
| S | Amendment amended | | 04/01/2021 | | 546 |
| S | Amendment to amendment offered | FA31 Hall | 04/01/2021 | | 546 |
| S | Amendment(s) offered | FA22 Hall | 04/01/2021 | | 546 |
| S | Vote recorded in Journal | | 04/01/2021 | | 545 |
| S | Amendment adopted as amended | FA18 West | 04/01/2021 | | 545 |
| S | Vote recorded in Journal | | 04/01/2021 | | 545 |
| S | Amendment amended | | 04/01/2021 | | 545 |
| S | Amendment to amendment offered | FA30 West | 04/01/2021 | | 545 |
| S | Amendment(s) offered | FA18 West | 04/01/2021 | | 545 |
| S | Vote recorded in Journal | | 04/01/2021 | | 545 |
| S | Amendment adopted as amended | FA17 Hall | 04/01/2021 | | 545 |
| S | Vote recorded in Journal | | 04/01/2021 | | 544 |
| S | Amendment amended | | 04/01/2021 | | 544 |
| S | Amendment to amendment offered | FA29 Hall | 04/01/2021 | | 544 |
| S | Amendment(s) offered | FA17 Hall | 04/01/2021 | | 544 |
| S | Record vote | | 04/01/2021 | | 544 |
| S | Amendment fails of adoption | | 04/01/2021 | | 544 |
| S | Amendment(s) offered | FA28 Alvarado | 04/01/2021 | | 543 |
| S | Amendment withdrawn | | 04/01/2021 | | 543 |
| S | Amendment(s) offered | FA27 Hall | 04/01/2021 | | 543 |
| S | Record vote | | 04/01/2021 | | 543 |

| S | Amendment fails of adoption | | 04/01/2021 | 543 |
|---|---|---|---|---|
| S | Amendment(s) offered | FA26 Eckhardt | 04/01/2021 | 538 |
| S | Record vote | | 04/01/2021 | 537 |
| S | Amended | | 04/01/2021 | 537 |
| S | Amendment(s) offered | FA25 Buckingham | 04/01/2021 | 536 |
| S | Amendment withdrawn | | 04/01/2021 | 536 |
| S | Amendment(s) offered | FA24 Hall | 04/01/2021 | 535 |
| S | Vote recorded in Journal | | 04/01/2021 | 535 |
| S | Amended | | 04/01/2021 | 535 |
| S | Amendment(s) offered | FA23 Hall | 04/01/2021 | 535 |
| S | Amendment withdrawn | | 04/01/2021 | 535 |
| S | Amendment(s) offered | FA22 Hall | 04/01/2021 | 535 |
| S | Vote recorded in Journal | | 04/01/2021 | 534 |
| S | Amended | | 04/01/2021 | 534 |
| S | Amendment(s) offered | FA21 Hall | 04/01/2021 | 534 |
| S | Record vote | | 04/01/2021 | 534 |
| S | Amended | | 04/01/2021 | 534 |
| S | Amendment(s) offered | FA20 Hall | 04/01/2021 | 534 |
| S | Record vote | | 04/01/2021 | 534 |
| S | Amendment fails of adoption | | 04/01/2021 | 534 |
| S | Amendment(s) offered | FA19 Eckhardt | 04/01/2021 | 532 |
| S | Amendment withdrawn | | 04/01/2021 | 532 |
| S | Amendment(s) offered | FA18 West | 04/01/2021 | 532 |
| S | Amendment withdrawn | | 04/01/2021 | 531 |
| S | Amendment(s) offered | FA17 Hall | 04/01/2021 | 531 |
| S | Record vote | | 04/01/2021 | 531 |
| S | Amendment fails of adoption | | 04/01/2021 | 531 |
| S | Amendment(s) offered | FA16 Zaffirini | 04/01/2021 | 531 |
| S | Record vote | | 04/01/2021 | 531 |
| S | Amendment fails of adoption | | 04/01/2021 | 531 |
| S | Amendment(s) offered | FA15 Zaffirini | 04/01/2021 | 530 |
| S | Record vote | | 04/01/2021 | 530 |
| S | Amendment fails of adoption | | 04/01/2021 | 530 |
| S | Amendment(s) offered | FA14 West | 04/01/2021 | 530 |
| S | Record vote | | 04/01/2021 | 529 |
| S | Amendment fails of adoption | | 04/01/2021 | 529 |
| S | Amendment(s) offered | FA13 Zaffirini | 04/01/2021 | 529 |
| S | Record vote | | 04/01/2021 | 529 |
| S | Amendment fails of adoption | | 04/01/2021 | 529 |
| S | Amendment(s) offered | FA12 Zaffirini | 04/01/2021 | 528 |
| S | Record vote | | 04/01/2021 | 528 |
| S | Amendment fails of adoption | | 04/01/2021 | 528 |
| S | Amendment(s) offered | FA11 Hinojosa | 04/01/2021 | 527 |
| S | Record vote | | 04/01/2021 | 527 |
| S | Amendment fails of adoption | | 04/01/2021 | 527 |
| S | Amendment(s) offered | FA10 Powell | 04/01/2021 | 527 |
| S | Record vote | | 04/01/2021 | 527 |
| S | Amendment fails of adoption | | 04/01/2021 | 527 |
| S | Amendment(s) offered | FA9 Hinojosa | 04/01/2021 | 526 |
| S | Record vote | | 04/01/2021 | 526 |
| S | Amendment fails of adoption | | 04/01/2021 | 526 |
| S | Amendment(s) offered | FA8 Hinojosa | 04/01/2021 | 525 |
| S | Vote recorded in Journal | | 04/01/2021 | 525 |
| S | Amended | | 04/01/2021 | 525 |

| S | Amendment(s) offered | FA7 Taylor | 04/01/2021 | | 524 |
|---|---|---|---|---|---|
| S | Vote recorded in Journal | | 04/01/2021 | | 524 |
| S | Amended | | 04/01/2021 | | 524 |
| S | Amendment(s) offered | FA6 Zaffirini | 04/01/2021 | | 524 |
| S | Record vote | | 04/01/2021 | | 524 |
| S | Amendment fails of adoption | | 04/01/2021 | | 524 |
| S | Amendment(s) offered | FA5 Hinojosa | 04/01/2021 | | 523 |
| S | Record vote | | 04/01/2021 | | 523 |
| S | Amendment fails of adoption | | 04/01/2021 | | 523 |
| S | Amendment(s) offered | FA4 Hinojosa | 04/01/2021 | | 523 |
| S | Record vote | FA2 Hughes | 04/01/2021 | | 523 |
| S | Amended | FA2 Hughes | 04/01/2021 | | 523 |
| S | Record vote | | 04/01/2021 | | 523 |
| S | Amendment to amendment fails of adoption | | 04/01/2021 | | 523 |
| S | Co-author authorized | | 04/01/2021 | | 547 |
| S | Amendment to amendment offered | FA3 West | 03/31/2021 | | 522 |
| S | Amendment(s) offered | FA2 Hughes | 03/31/2021 | | 520 |
| S | Vote recorded in Journal | | 03/31/2021 | | 520 |
| S | Amended | | 03/31/2021 | | 520 |
| S | Amendment(s) offered | FA1 Menéndez | 03/31/2021 | | 520 |
| S | Read 2nd time | | 03/31/2021 | | 520 |
| S | Record vote | | 03/31/2021 | | 520 |
| S | Rules suspended-Regular order of business | | 03/31/2021 | | 519 |
| S | Placed on intent calendar | | 03/30/2021 | | |
| S | Committee report printed and distributed | | 03/29/2021 | 11:57 AM | |
| S | Reported favorably as substituted | | 03/29/2021 | | 480 |
| S | Testimony taken in committee | | 03/26/2021 | | |
| S | Considered in public hearing | | 03/26/2021 | | |
| S | Scheduled for public hearing on . . . | | 03/26/2021 | | |
| S | Tagged | | 03/22/2021 | | |
| S | Scheduled for public hearing on . . . | | 03/22/2021 | | |
| S | Referred to State Affairs | | 03/11/2021 | | 212 |
| S | Read first time | | 03/11/2021 | | 212 |
| S | Filed | | 03/11/2021 | | |
| S | Received by the Secretary of the Senate | | 03/11/2021 | | |

# BILL ANALYSIS

Senate Research Center                                                  S.B. 7
87R10764 ADM-F                                                By: Hughes et al.
                                                       State Affairs
                                                           3/19/2021
                                                                   As Filed

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

As efforts to identify and prosecute election crimes have intensified, we have gained a better understanding of the ways certain bad actors take advantage of holes in the electoral process to alter the balance of elections, especially at the local level.

At the same time, advances in technology have increased the threat of electronic interference with elections, but also the tools available to prevent that interference.

S.B. 7 seeks to address these issues by strengthening poll watcher protection, bringing about transparency by utilizing technology throughout the electoral process, requiring a voter verifiable paper trail, limiting the most common fraudulent practices and opportunities for fraudulent practices, and providing better and more timely evidence in investigations into alleged voter fraud.

S.B. 7 amends current law relating to election integrity, creates a criminal offense, and creates civil penalties.

As proposed, S.B. 7 amends current law relating to elections, including election integrity and security, creates a criminal offense, and provides civil penalties.

## RULEMAKING AUTHORITY

Rulemaking authority is expressly granted to the secretary of state in SECTION 2.06 (Section 86.015, Election Code) of this bill.

## SECTION BY SECTION ANALYSIS

### ARTICLE 1. VOTER REGISTRATION

SECTION 1.01. Amends Chapter 42, Code of Criminal Procedure, by adding Article 42.0194, as follows:

> Art. 42.0194. FINDING REGARDING FELONY CONVICTION. Requires the court, in the trial of a felony offense, if the defendant is 18 years of age or older and is adjudged guilty of the offense, to make an affirmative finding that the person has been found guilty of a felony and enter the affirmative finding in the judgment of the case, and to instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in this state.

SECTION 1.02. Amends Section 13.002, Election Code, by adding Subsection (c-1), to require that a voter registration application require the applicant to affirmatively indicate all information provided on the application.

SECTION 1.03. Amends Section 15.028, Election Code, as follows:

> Sec. 15.028. New heading: NOTICE OF UNLAWFUL VOTING OR REGISTRATION. Requires the voter registrar (registrar), if the registrar determines that a person who is not eligible to vote may have registered to vote or voted in an election, rather than a person

who is not a registered voter voted in an election, to execute and deliver to the attorney general, the secretary of state, and the county or district attorney having jurisdiction in the territory covered by the election an affidavit stating the relevant facts. Makes a nonsubstantive change. Deletes existing text requiring the registrar, if the election covers territory in more than one county, to also deliver an affidavit to the attorney general.

SECTION 1.04. Amends Section 16.0332(a), Election Code, as follows:

(a) Requires the registrar, after the registrar receives a list under Section 18.068 (Comparison of Information Regarding Ineligibility) of this code or Section 62.113 (Compilation of List of Noncitizens), Government Code, of persons excused or disqualified from jury service or otherwise determined to be ineligible to vote, rather than persons excused or disqualified from jury service, because of citizenship status, to deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar certain proof of United States citizenship.

SECTION 1.05. Amends Section 18.065, Election Code, by amending Subsection (a) and adding Subsections (e), (f), and (g), as follows:

(a) Requires the secretary of state to monitor each registrar for substantial compliance with certain sections, including Section 16.0332 (Cancellation Because of Citizenship Status), and with rules implementing the statewide computerized voter registration list.

(e) Requires the secretary of state, if a registrar fails to correct a violation within 30 days of a notice under Subsection (b) (relating to the requirement that the secretary of state deliver a notice of noncompliance to the registrar), to correct the violation on behalf of the registrar.

(f) Provides that a registrar is liable to this state for a civil penalty of $100 for each violation corrected by the secretary of state under Subsection (e). Authorizes the attorney general to bring an action to recover a civil penalty imposed under Section 18.065 (Secretary of State to Monitor Registrar's Compliance).

(g) Requires that a civil penalty collected by the attorney general under this section be deposited in the state treasury to the credit of the general revenue fund.

SECTION 1.06. Makes application of this article, as amended by this Act, prospective.

ARTICLE 2. VOTING BY MAIL

SECTION 2.01. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0011, as follows:

Sec. 84.0011. SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED. Prohibits the early voting clerk from making any attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party.

SECTION 2.02. Amends Section 84.002, Election Code, by adding Subsection (c), as follows:

(c) Requires that an application for a ballot to be voted by mail on the ground of disability require the applicant to affirmatively indicate that the applicant agrees with the statement "I am physically unable to enter a polling place without needing personal assistance or injuring my health," as prescribed by Section 82.002(a) (relating to the provision that a qualified voter is eligible for early voting by mail if the voter has certain health conditions).

SECTION 2.03. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0111, as follows:

Sec. 84.0111. PROHIBITION ON DISTRIBUTION OF APPLICATION FORM. (a) Prohibits an officer or employee of this state or of a political subdivision of this state, unless authorized by this code, from distributing an application form for an early voting ballot to a person who did not request an application under Section 84.001 (Application Required).

(b) Prohibits an officer or employee of this state or of a political subdivision of this state from using public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 2.04. Amends Section 84.035, Election Code, as follows:

Sec. 84.035. BALLOT SENT TO APPLICANT. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 (Request for Cancellation) but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section to only vote a provisional ballot under Section 63.011 (Provisional Voting).

SECTION 2.05. Amends Section 86.0015, Election Code, by adding Subsection (b-3), as follows:

(b-3) Requires that an application for a ballot to be voted by mail on the ground of disability under Section 86.0015 (Annual Ballots by Mail) include or be accompanied by:

(1) written documentation from the United States Social Security Administration or the United States Department of Veterans Affairs evidencing that the applicant has been determined to have a disability; or

(2) a certificate of a licensed physician or chiropractor or accredited Christian Science practitioner in substantially a certain form.

SECTION 2.06. Amends Chapter 86, Election Code, by adding Section 86.015, as follows:

Sec. 86.015. ELECTRONIC TRACKING OF APPLICATION FOR BALLOT VOTED BY MAIL OR BALLOT VOTED BY MAIL. (a) Requires the secretary of state to develop or otherwise provide an online tool to each early voting clerk that enables a person who submits an application for a ballot to be voted by mail to track the location and status of the person's application and ballot on the secretary's Internet website and on the county's Internet website if the early voting clerk is the county clerk of a county that maintains an Internet website.

(b) Requires that the online tool developed or provided under Subsection (a) require the voter to provide certain personal information before permitting the voter to access information described by that subsection.

(c) Requires that an online tool used under this section update the applicable Internet website as soon as practicable after certain events occur.

(d) Requires the secretary of state to adopt rules and prescribe procedures as necessary to implement this section.

SECTION 2.07. Amends Section 87.027(i), Election Code, as follows:

(i) Authorizes the signature verification committee to also compare the signature on each carrier envelope certificate and the signature on the voter's ballot application with any

known signature of the voter, rather than with any two or more signatures of the voter made within the preceding six years, on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 2.08. Amends Section 87.041(e), Election Code, to make conforming changes.

SECTION 2.09. Amends Sections 87.062(a) and (c), Election Code, as follows:

(a) Requires the early voting ballot board, on the direction of the presiding judge, in accordance with Section 85.032(b) (relating to the required security procedures for early voting ballot boxes), to open the containers, rather than the container, for the early voting ballots that are to be counted by the board, remove the contents from each container, and remove any ballots enclosed in ballot envelopes from their envelopes. Makes a nonsubstantive change.

(c) Requires that ballots voted by mail be tabulated separately from the ballots voted by personal appearance and be separately reported on the returns. Deletes existing text requiring that the results of all early voting ballots counted by the early voting ballot board under Subchapter D (Processing Manually Counted Ballots) be included in the same return.

SECTION 2.10. Amends Section 87.103, Election Code, as follows:

Sec. 87.103. COUNTING BALLOTS AND PREPARING RETURNS. (a) Requires that the early voting electronic system ballots counted at a central counting station, the ballots cast at precinct polling places, and the ballots voted by mail be tabulated separately, rather than tabulated separately from the ballots cast at precinct polling places, and be separately reported on the returns.

(b) Requires that the early voting returns prepared at the central counting station include any early voting results obtained by the early voting ballot board under Subchapter D, rather than under Subchapters D and E.

SECTION 2.11. Amends Section 87.126, Election Code, by adding Subsection (a-1), as follows:

(a-1) Requires that electronic records made under Section 87.126 (Electronic Recording of Ballot Materials and Applications) record both sides of any application, envelope, or ballot recorded, and that all such records be provided to the early voting ballot board, the signature verification committee, or both.

SECTION 2.12. Makes application of this article, as amended by this Act, prospective.

ARTICLE 3. ELECTION SECURITY

SECTION 3.01. Amends Section 33.006(b), Election Code, as follows:

(b) Deletes existing text requiring that a certificate of appointment of a watcher contain an affidavit executed by the appointee stating that the appointee will not have possession of a device capable of recording images or sound or that the appointee will disable or deactivate the device while serving as a watcher. Makes nonsubstantive changes.

SECTION 3.02. Amends Section 33.051(c), Election Code, as follows:

(c) Authorizes the presiding judge to inquire whether a watcher has possession of a recording device, rather than any prohibited recording device, before accepting the watcher for service. Deletes existing text prohibiting a watcher from being accepted for service if the watcher has possession of a device capable of recording images or sound unless the watcher agrees to disable or deactivate the device.

SECTION 3.03. Amends Section 33.056, Election Code, by amending Subsection (a) and adding Subsection (e), as follows:

(a) Entitles a watcher to sit or stand near enough to see and hear, rather than conveniently near, the election officers conducting the observed activity, except as otherwise prohibited by Chapter 33 (Watchers).

(e) Prohibits a watcher from being denied free movement within the location at which the watcher is serving, except as provided by Section 33.057(b) (relating to the prohibition of a watcher from being present at the voting station when a voter is preparing the voter's ballot or is being assisted by a person of the voter's choice).

SECTION 3.04. Amends Section 33.061, Election Code, by adding Subsection (c), as follows:

(c) Provides that an offense under Subsection (a) (relating to the provision that preventing an authorized watcher from observing an activity the watcher is entitled to observe is an offense) includes an action taken to distance or obstruct the view of a watcher in a way that makes observation reasonably ineffective.

SECTION 3.05. Amends Section 43.007, Election Code, by adding Subsection (q), to require that each countywide polling place in a county have approximately the same number of voting machines as each other countywide polling place in the county.

SECTION 3.06. Amends Section 43.031(b), Election Code, as follows:

(b) Prohibits a polling place from being located in a tent or other temporary moveable structure or in a facility primarily designed for motor vehicles. Prohibits any voter from casting a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009 (Voter Unable to Enter Polling Place).

SECTION 3.07. Amends Section 61.014, Election Code, by amending Subsections (a) and (b) and adding Subsection (b-1), as follows:

(a) Prohibits a person, other than a watcher using the device solely to record image or sound as permitted under Subsection (b), rather than prohibiting a person from using a wireless communication device within 100 feet of a voting station.

(b) Prohibits a person, other than a watcher, from using a mechanical or electronic device to record images or sound that captures the activity of a voter at a voting station, rather than prohibiting a person from using any mechanical or electronic means of recording images or sound within 100 feet of a voting station, unless the voter is receiving assistance the watcher reasonably believes to be unlawful.

(b-1) Prohibits a recording made by a watcher under Subsection (b) from capturing or recording any information on a voter's ballot.

SECTION 3.08. Amends Section 64.007(c), Election Code, to require an election officer to maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit.

SECTION 3.09. Amends Section 64.009, Election Code, by amending Subsection (b) and adding Subsections (b-1), (e), (f), and (g), as follows:

(b) Creates an exception under Subchapter B (Assisting Voter), and makes no further changes to this subsection.

(b-1) Provides that a person other than the voter is only permitted to be inside the motor vehicle while the voter votes if the person would be entitled to accompany the voter to the voting station under other law.

(e) Entitles a poll watcher to observe any activity conducted under this section, except as provided by Section 33.057 (Observing Preparation of Voter's Ballot).

(f) Requires a person who assists a voter voting under this section by providing the voter with transportation to the polling place to complete and sign a form that contains certain information.

(g) Requires the secretary of state to prescribe the form described by Subsection (f).

SECTION 3.10. Amends Subchapter B, Chapter 64, Election Code, by adding Section 64.0322, as follows:

Sec. 64.0322. SUBMISSION OF FORM BY ASSISTANT. (a) Requires a person, other than an election officer, who assists a voter in accordance with Chapter 64 (Voting Procedures) to complete a form stating certain information.

(b) Requires the secretary of state to prescribe the form required by this section. Requires that the form be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010 (Unlawfully Assisting Voter Voting Ballot by Mail), or be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 3.11. Amends Section 66.052, Election Code, as follows:

Sec. 66.052. New heading: DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) Creates this subsection from existing text and makes no further changes.

(b) Requires the presiding judge or an election clerk designated by the presiding judge under this section to keep records of each person that has custody of a precinct election record until the records are delivered.

SECTION 3.12. Amends Sections 66.058(b) and (g), Election Code, as follows:

(b) Requires that the voted ballots be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records for a period of at least 60 days after the date of the election, or until any election contest is resolved, whichever is longer, rather than a period of at least 60 days after the date of the election. Makes a conforming change.

(g) Prohibits electronic records from being deleted or overwritten during the preservation period.

SECTION 3.13. Amends Section 85.005, Election Code, as follows:

Sec. 85.005. REGULAR DAYS AND HOURS FOR VOTING. (a) Requires that early voting by personal appearance at the main early voting polling place be conducted according to certain criteria, except that voting is prohibited from being conducted earlier than 7 a.m. or later than 7 p.m.

(b) Makes a conforming change.

(c) Requires that the voting in a primary election or the general election for state and county officers, in a county with a population of 100,000 or more, be conducted at the main early voting polling place for 12 hours, rather than for at least 12 hours, on each weekday of the last week of the early voting period, and requires that the voting in a special election ordered by the governor be conducted at the main early voting polling place for 12 hours on each of the last two days of the early voting period. Makes a conforming change.

(d) Makes a conforming change.

SECTION 3.14. Amends Sections 85.006(c) and (e), Election Code, to make conforming changes.

SECTION 3.15. Amends Section 85.010(c), Election Code, to make conforming and nonsubstantive changes.

SECTION 3.16. Amends Section 85.061(a), Election Code, as follows:

(a) Requires that an early voting polling place, in a countywide election in which the county clerk is the early voting clerk under Section 83.002 (County Clerk as Early Voting Clerk), be located inside, rather than at, each branch office that is regularly maintained for conducting general clerical functions of the county clerk, except as provided by Subsection (b) (relating to the prohibition of certain county clerk's regularly maintained branch clerical offices from being branch early voting polling places). Authorizes the polling place, if a suitable room is unavailable inside the branch office, to be located in another room inside the same building as the branch office. Prohibits the polling place from being located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles.

SECTION 3.17. Amends Section 85.062(b), Election Code, as follows:

(b) Authorizes a polling place established under Section 85.062 (Temporary Branch Polling Place) to be located, subject to Subsection (d) (relating to the authorization of certain commissioners courts to establish early voting polling places subject to certain criteria), at any place in the territory served by the early voting clerk and to be located inside any building, rather than in any stationary structure, as directed by the authority establishing the branch office. Prohibits the polling place from being located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles in the general election for state and county officers, general primary election, or runoff primary election.

SECTION 3.18. Amends Section 85.064, Election Code, by adding Subsection (c), to prohibit early voting by personal appearance at a temporary branch polling place from being conducted earlier than 7 a.m. or later than 7 p.m.

SECTION 3.19. Amends Section 124.002, Election Code, by adding Subsection (c) to prohibit voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

SECTION 3.20. Amends Subchapter A, Chapter 125, Election Code, by adding Section 125.0071, as follows:

Sec. 125.0071. VOTER ALLOWED TO CAST BALLOT AT ANY TIME. Requires that a voting machine or ballot marking device allow a voter the option to cast or complete the voter's ballot without voting on all races or measures if the voter affirmatively chooses to do so.

SECTION 3.21. Amends Subchapter A, Chapter 127, Election Code, by adding Section 127.008, as follows:

Sec. 127.008. ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. (a) Requires a counting station manager and the presiding judge of the counting station to develop a protocol under which any electronic device inside a central counting station, including the equipment necessary to count votes, is equipped with software that tracks all input and activity on the electronic device.

(b) Requires that the software described by Subsection (a) provide for the input and activity on the electronic device to be automatically delivered to the secretary of state.

SECTION 3.22. Amends Section 127.1232, Election Code, as follows:

Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) Creates this subsection from existing text. Requires the general custodian of election records to post a licensed peace officer, rather than a guard, to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.

(b) Authorizes the general custodian of election records to implement a video surveillance system that retains a record of all areas containing voted ballots from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns. Authorizes the video to be made available to the public by a livestream.

(c) Provides that the video recorded is an election record under Section 1.012 (Public Inspection of Election Records) and is required to be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later.

SECTION 3.23. Amends Subchapter A, Chapter 129, Election Code, by adding Section 129.003, as follows:

Sec. 129.003. PAPER AUDIT TRAIL REQUIRED. (a) Defines "auditable voting system."

(b) Prohibits a voting system that consists of direct recording electronic voting machines from being used in an election unless the system is an auditable voting system, except as provided by Subsection (e).

(c) Provides that, except for a recount under Title 13 (Recounts), the electronic vote is the official record of the ballot. Provides that, for a recount of ballots cast on a system involving direct recording electronic voting machines, the paper record or receipt copy is the official record of the vote cast.

(d) Authorizes an authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, to use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:

(1) if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8, 2022, the authority is eligible to have 100 percent of the cost of retrofitting reimbursed under this section; and

(2) if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this section.

(e) Provides that Subsections (a)-(c) do not apply to an election held before September 1, 2026.

SECTION 3.24. Amends Section 129.023, Election Code, by adding Subsection (c-1), as follows:

(c-1) Requires that a test conducted under Section 129.023 (Public Test of Logic and Accuracy) also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

SECTION 3.25. Amends Section 216.001, Election Code, as follows:

Sec. 216.001. APPLICABILITY OF CHAPTER. (a) Creates this subsection from existing text. Creates an exception under Subsection (b) and makes a nonsubstantive change.

(b) Requires the authority designated under Section 212.026 (Authority to Whom Petition Submitted), if the results of an election show that the number of votes cast in an election precinct exceeds the number of registered voters in the precinct, to initiate an automatic recount for that precinct in accordance with Chapter 216 (Automatic Recount).

SECTION 3.26. Amends Section 81.032, Local Government Code, as follows:

Sec. 81.032. ACCEPTANCE OF DONATIONS AND BEQUESTS. (a) Creates this subsection from existing text and makes no further changes.

(b) Prohibits the commissioners court from accepting a donation described in Subsection (a) of over $1,000 for use in administering elections without the written consent of the secretary of state.

SECTION 3.27. Makes application of this article, as amended by this Act, prospective.

## ARTICLE 4. ENFORCEMENT

SECTION 4.01. Amends Subchapter E, Chapter 31, Election Code, by adding Sections 31.126 and 31.127, as follows:

Sec. 31.126. RESTRICTION ON ELIGIBILITY. (a) Defines "election official."

(b) Prohibits a person from serving as an election official if the person has been finally convicted of an offense under Section 33.061 (Unlawfully Obstructing Watcher).

Sec. 31.127. CIVIL PENALTY. (a) Defines "election official."

(b) Provides that an election official may be liable to this state for a civil penalty if the official is employed by or is an officer of this state or a political subdivision of this state, and violates a provision of this code.

(c) Authorizes a civil penalty imposed under this section to include termination of the person's employment and loss of the person's employment benefits.

SECTION 4.02. Amends Section 33.051, Election Code, by adding Subsection (g), as follows:

(g) Provides that an election officer commits an offense if the officer knowingly refuses to accept a watcher for service whose acceptance is required by this code. Provides that an offense under Section 33.051 (Acceptance of Watcher) is a Class A misdemeanor.

SECTION 4.03. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.062, as follows:

Sec. 33.062. INJUNCTIVE RELIEF. Entitles a watcher, or the appointing authority for a watcher, to injunctive relief under Section 273.081 (Injunction) to enforce this chapter, including issuance of temporary orders.

SECTION 4.04. Amends Section 87.0431(b), Election Code, as follows:

(b) Requires the early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because of certain reasons, including that any form of voter fraud was committed.

SECTION 4.05. Amends Section 232.006(a), Election Code, as follows:

(a) Provides that the venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election. Provides that, for purposes of Section 232.006 (Venue), a contestee's residence is determined under Section 411.0257 (Residence), Government Code.

SECTION 4.06. Amends Chapter 232, Election Code, by adding Subchapter C, as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061. PETITION ALLEGING FRAUD. Provides that this subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge committed election fraud under certain sections of this code.

Sec. 232.062. EVIDENTIARY STANDARD. Requires a contestant to prove an allegation described by Section 232.061 by a preponderance of the evidence.

Sec. 232.063. CIVIL PENALTY. (a) Provides that, if the court in its judgment finds that the contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to this state for a civil penalty of $1,000 for each violation.

(b) Requires that a penalty collected under this section by the attorney general be deposited in the state treasury to the credit of the general revenue fund.

Sec. 232.064. ATTORNEY'S FEES. Authorizes the court, in an election contest to which this subchapter applies, to award reasonable attorney's fees to the prevailing party.

SECTION 4.07. (a) Provides that the changes in law made by this article apply only to an election contest for which the associated election occurred after the effective date of this Act.

(b) Makes application of this article, as amended by this Act, prospective.

ARTICLE 5. EFFECTIVE DATE

SECTION 5.01. Effective date: September 1, 2021.

## BILL ANALYSIS

C.S.S.B. 7
By: Hughes
Elections
Committee Report (Substituted)

## BACKGROUND AND PURPOSE

Full, free, and fair elections are the very foundations of a stable constitutional democracy. Concerns are ongoing regarding the potential for election fraud to threaten the stability of democracy in Texas and to undermine public confidence in the legitimacy of elections across the state. Reforms and clarity are needed in a variety of state election laws to preserve the integrity of the electoral process and to strengthen the safeguards surrounding the electoral process in Texas.

C.S.S.B. 7 seeks to prevent fraud in the conduct of elections in Texas by enacting the Election Integrity Protection Act of 2021 in recognition of the legislature's authority under Section 4, Article VI, of the Texas Constitution, to make all laws necessary to detect and punish fraud and preserve the purity of the ballot box.

## CRIMINAL JUSTICE IMPACT

It is the committee's opinion that this bill expressly does one or more of the following: creates a criminal offense, increases the punishment for an existing criminal offense or category of offenses, or changes the eligibility of a person for community supervision, parole, or mandatory supervision.

## RULEMAKING AUTHORITY

It is the committee's opinion that this bill does not expressly grant any additional rulemaking authority to a state officer, department, agency, or institution.

## ANALYSIS

C.S.S.B. 7 amends the Election Code to revise the conduct of elections in Texas with regard to election officers and observers, voter assistance, and election fraud and other unlawful practices and to provide for the prioritization of certain election-related proceedings in the Texas Supreme Court, the courts of appeals, and the trial courts. The bill requires a public official to construe the provisions of the Election Code strictly to effect the intent of the legislature that the application of those provisions and the conduct of elections be uniform and consistent throughout Texas to reduce the likelihood of fraud in the conduct of elections.

C.S.S.B. 7 sets out certain legislative findings and defines "public official" for purposes of the Election Code to mean any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of the state, a government agency, a political subdivision, or any other public body established by state law.

**Decedents' Voter Registrations**

C.S.S.B. 7, with respect to the filing deadlines for the following requisite abstracts filed with the applicable voter registrar and the secretary of state for purposes of canceling a voter registration, changes those deadlines to require the local registrar of deaths and the court clerk, as applicable, to file the respective abstracts as soon as possible but not later than the seventh day after the

abstract is prepared instead of filing the abstract not later than the 10th day of the month following the month in which the abstract is prepared:
- the abstract prepared by the local registrar of deaths for each death certificate issued; and
- the abstract prepared by the clerk of each court having probate jurisdiction for each small estate affidavit and for each application for probate of a will, administration of a decedent's estate, or determination of heirship.

**Spoiled Ballot Register**

C.S.S.B. 7 requires an election officer to maintain at the polling place a register of spoiled ballots from a direct recording electronic voting unit.

**Watchers and Their Purpose, Entitlements, Observations, and Duties**

C.S.S.B. 7 establishes that the purpose of provisions governing appointed watchers is to preserve the integrity of the ballot box in accordance with the Texas Constitution by providing for the appointment of watchers to observe the conduct of an election and call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of the election.

C.S.S.B. 7 clarifies that being entitled to observe an election activity or procedure means that the watcher is entitled to sit or stand near enough to see and hear the activity or procedure.

C.S.S.B. 7 authorizes a watcher serving at a polling place in an election to observe the sealing and transfer of a memory card, flash drive, hard drive, data storage device, or other medium now existing or later developed used by voting system equipment.

C.S.S.B. 7 entitles a poll watcher to observe the in-person delivery of a marked ballot to be voted early by mail. The poll watcher must be able to determine how the ballots are being delivered and how election officials are making decisions about the delivery of ballots, if applicable. The bill prohibits the poll watcher from disrupting the process of delivering ballots.

**Exceptions to the Exclusion of Bystanders From Certain Locations**

C.S.S.B. 7 provides additional exceptions to the prohibition against bystanders, during certain periods, being in a polling place or in the meeting place of an early voting ballot board and also imposes a prohibition, with prescribed exceptions, against bystanders being in the central counting station during certain periods. Accordingly, the bill specifies and clarifies that, under the Election Code, the following persons may be lawfully present in those applicable locations during the respective periods:
- in a polling place from the time the presiding judge arrives there on election day to make the preliminary arrangements until the precinct returns have been certified and the election records have been assembled for distribution following the election:
  - an election judge or clerk;
  - a watcher;
  - the secretary of state;
  - a staff member of the Elections Division of the Office of the Secretary of State performing an official duty in accordance with the Election Code;
  - an election official, a sheriff, or a staff member of an election official or sheriff delivering election supplies;
  - a state inspector;
  - a person admitted to vote;
  - a child under 18 years of age who is accompanying a parent who has been admitted to vote;
  - a person providing assistance to a voter as an interpreter or on a voter's request for assistance in marking the ballot;
  - a person accompanying a voter who has a disability;

- o a special peace officer appointed by the presiding judge;
- o the county chair of a political party conducting a primary election, as authorized by state law;
- o a voting system technician, as authorized by state law;
- o the applicable county election officer, as necessary to perform tasks related to the administration of the election; and
- o a person whose presence has been authorized by the presiding judge and alternate presiding judge in accordance with the Election Code;
- in the meeting place of an early voting ballot board during the time of the board's operations:
  - o a presiding judge or member of the board;
  - o a watcher;
  - o a voting system technician, as authorized by state law;
  - o the applicable county election officer, as necessary to perform tasks related to the administration of the election; and
  - o a person whose presence has been authorized by the presiding judge in accordance with the Election Code; and
- in a central counting station while ballots are being counted:
  - o a counting station manager, tabulation supervisor, assistant to the tabulation supervisor, presiding judge, or clerk;
  - o a watcher;
  - o a voting system technician, as authorized by state law;
  - o the applicable county election officer, as necessary to perform tasks related to the administration of the election; and
  - o a person whose presence has been authorized by the presiding judge of the central counting station in accordance with the Election Code.

**Removal of Watcher From Polling Place**

C.S.S.B. 7 prohibits a presiding judge from requiring an appointed watcher to leave a polling place and from having an appointed watcher removed from a polling place. However, a presiding judge may remove a watcher from a polling place only if the watcher engages in activity that would constitute an offense related to the conduct of the election, including the following conduct, as specified by the bill, that constitutes certain Election Code offenses unamended by the bill, the offense of election fraud as amended by the bill, and the offenses added to the Election Code by the bill:

- with respect to the Election Code offenses unamended by the bill, conduct involving:
  - o retaliating against a voter;
  - o unlawfully removing or attempting to remove voted ballots from a ballot box;
  - o unlawfully prohibiting an employee from voting;
  - o unlawfully buying, offering to buy, selling, or offering to sell balloting materials; or
  - o engaging in organized election fraud activity by committing or conspiring to commit one or more Election Code offenses under certain specified titles of the code with the intent to establish, maintain, or participate in a vote harvesting organization;
- with respect to the offense of election fraud as amended by the bill, engaging in conduct whereby the person knowingly or intentionally makes any effort to do the following:
  - o influence the independent exercise of the vote of another in the presence of the ballot or during the voting process, including by altering the ballot of another or by otherwise causing a ballot to not reflect the intent of the voter;
  - o cause a voter to become registered, a ballot to be obtained, or a vote to be cast under false pretenses;
  - o count invalid votes or alter a report to include invalid votes;
  - o fail to count valid votes or alter a report to exclude valid votes; or
  - o cause any intentionally misleading statement, representation, or information to be provided to an election official or on an application for ballot by mail, carrier envelope, or any other official election-related form or document; and
- with respect to the Election Code offenses as added by the bill, conduct involving:

- o   paid vote harvesting;
- o   the unlawful solicitation and distribution of an application to vote by mail;
- o   the unlawful distribution of early voting ballots and balloting materials by an election official;
- o   perjury in connection with certain election procedures; and
- o   the unlawful altering of election procedures by a public official.

**Offenses Regarding Watchers**

C.S.S.B. 7 modifies the conduct constituting the offense for unlawfully obstructing a watcher as follows:

- to include knowingly preventing a watcher from observing a procedure the watcher is entitled to observe; and
- to expressly include knowingly preventing such observation of an activity or procedure by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.

C.S.S.B. 7 creates a Class B misdemeanor offense for an election officer who intentionally or knowingly refuses to accept for service a watcher when all requirements for acceptance are met.

**Assistance to a Voter**

C.S.S.B. 7 includes in the oath required of a person selected to provide assistance to a voter a statement swearing or affirming that the person did not pressure, encourage, coerce, or intimidate the voter into choosing the person to provide assistance. The bill includes a specification in the oath language that the person is swearing or affirming the oath under penalty of perjury.

C.S.S.B. 7 requires a person other than an election officer who lawfully assists a voter to complete a form stating the following:

- the name and address of the person assisting the voter;
- the manner in which the person is assisting the voter;
- the reason the assistance is necessary; and
- the relationship of the assistant to the voter.

The bill requires the secretary of state to prescribe the form and sets out additional requirements for the form as follows:

- the form must be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance; or
- the form must be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or, if the voter is unable to enter the polling place, is voting at the polling place entrance or curb.

With regard to the offense of unlawfully assisting a voter voting a ballot by mail, C.S.S.B. 7 requires a person who lawfully assists a voter in preparing a ballot to be voted by mail, in addition to the statutorily required entry of the person's signature, printed name, and residence address on the official carrier envelope of the voter, to also enter the following information on the envelope:

- the manner of any assistance provided to the voter by the person;
- the relationship of the person providing the assistance to the voter; and
- whether the person received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee in exchange for providing assistance.

With regard to the conduct that, in part, constitutes the offense of unlawfully assisting a voter voting a ballot by mail for failing to enter required information on the official carrier envelope of an early voting ballot by mail, C.S.S.B. 7:

- narrows the exemption from the application of the offense to apply only to a person who assists a voter and is related to the voter within the second degree by affinity or the third degree by consanguinity and to no longer apply to a person who was physically living in the same dwelling as the voter at the time of the offense; and
- enhances the penalty for the offense from a state jail felony to a third degree felony if it is shown on the trial of the offense that the person committed an offense for providing unlawful assistance, under Election Code provisions generally applicable to procedures for assisting voters, to the same voter in connection with the same ballot.

C.S.S.B. 7 requires an official carrier envelope for an early voting ballot to contain spaces on the reverse side of the envelope for indicating the following:
- the manner of any assistance provided by a person assisting the voter; and
- the relationship of that person to the voter.

**Unlawful Compensation for Assisting Voters**

C.S.S.B. 7 changes the offense for unlawful compensation for assisting voters and the punishment for that offense as follows:
- by removing the following as conduct constituting the offense:
  - compensating another person for assisting voters, as part of any performance-based compensation scheme based on the number of voters assisted or in which another person is presented with a quota of voters to be assisted;
  - engaging in another practice that causes another person's compensation from or employment status with the person to be dependent on the number of voters assisted; and
  - accepting compensation for either of those activities with knowledge that accepting compensation for such activity is illegal;
- by providing that the following conduct instead constitutes the offense:
  - compensating or offering to compensate another person for unlawfully assisting voters; or
  - soliciting, receiving, or accepting compensation for either activity;
- by repealing the misdemeanor punishment for the offense and removing the penalty enhancement for two or more previous convictions of the offense;
- by making the penalty for the revised offense a state jail felony without regard to the number of previous convictions; and
- by including political favors and beneficial or favorable discretionary official acts among the forms of payment considered compensation for purposes of the revised offense.

C.S.S.B. 7 eliminates the misdemeanor punishment for the offense for the unlawful compensation for a carrier envelope action by repealing the provision establishing that punishment and by making the offense instead a state jail felony punishment for a defendant previously convicted two or more times of the offense.

**Election Fraud and Other Unlawful Practices**

Verifying False Information in an Affidavit

C.S.S.B. 7 creates a state jail felony offense for an election judge who knowingly provides a voter with a form for an affidavit to verify the voter's identity for the purpose of being accepted for voting if the form contains false information that was entered on the form by the judge.

Paid Vote Harvesting

C.S.S.B. 7 creates the third degree felony offense of paid vote harvesting for a person who does the following:
- directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit;

- directly or through a third party, knowingly provides or offers to provide compensation or other benefit to a person in exchange for vote harvesting services; or
- knowingly collects or possesses a ballot voted by mail or official carrier envelope from a voter in connection with vote harvesting services.

C.S.S.B. 7 exempts from the application of the offense political speech or other acts merely promoting a candidate or measure that do not involve direct interaction with the following:
- an application for ballot by mail, in the presence of the voter; or
- a voter's official ballot, ballot voted by mail, or carrier envelope.

C.S.S.B. 7 defines "benefit" and "vote harvesting services" for purposes of the offense and specifies the following:
- for purposes of the offense, compensation or other benefit in exchange for vote harvesting services is inferred if a person who performed the vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than the vote harvesting services provided; and
- if conduct constituting the offense also constitutes another offense, the actor may be prosecuted for either offense or both offenses.

<u>Unlawful Solicitation and Distribution of Application to Vote by Mail</u>

C.S.S.B. 7 creates a state jail felony offense for a public official who knowingly, while acting in an official capacity, does the following:
- solicits the submission of an application to vote by mail from a person who did not request an application;
- distributes an application to vote by mail to a person who did not request the application unless the distribution is otherwise expressly authorized by the Election Code or access was provided to an application to vote by mail from a publicly accessible website;
- authorizes or approves the expenditure of public funds to facilitate third-party distribution of an application to vote by mail to a person who did not request the application; or
- completes any portion of an application to vote by mail and distributes the application to an applicant unless the public official engaged in the conduct while lawfully assisting the applicant.

<u>Unlawful Distribution of Early Voting Ballots and Balloting Materials</u>

C.S.S.B. 7 creates a state jail felony offense for an early voting clerk or other election official who knowingly mails or otherwise provides an early voting ballot by mail or other early voting by mail ballot materials to a person who did not submit an application for the ballot.

<u>Perjury in Connection With Certain Election Procedures</u>

C.S.S.B. 7 creates a state jail felony offense for a person who makes a false statement, or swears to the truth of a false statement previously made, while making the oath required of a person selected to provide assistance to a voter.

<u>Unlawful Altering of Election Procedures</u>

C.S.S.B. 7 prohibits a public official from altering, waiving, or suspending an election standard, practice, or procedure mandated by law or rule unless the alteration, waiver, or suspension is expressly authorized by the Election Code.

<u>Illegal Voting and Election Fraud</u>

C.S.S.B. 7 expands the conduct constituting illegal voting to include knowingly voting or attempting to vote in an election in Texas after voting in another state in an election in which a

federal office appears on the ballot and the election day for both states is the same day. If conduct constituting the offense of illegal voting, as expanded by the bill, also constitutes another offense under any other law, the actor may be prosecuted for either offense or both offenses.

C.S.S.B. 7 does the following with respect to the offense of election fraud:
- revises the constituent conduct of an offense of election fraud involving any knowing or intentional effort to influence the independent exercise of the vote of another in the presence of the ballot or during the voting process to include as such constituent conduct altering the ballot of another or otherwise causing a ballot to not reflect the intent of the voter;
- expands the conduct constituting the offense of election fraud to include knowingly or intentionally making any effort to do the following:
  - count invalid votes or alter a report to include invalid votes; or
  - fail to count valid votes or alter a report to exclude valid votes; and
- increases the penalty for election fraud from a Class A misdemeanor to a state jail felony.

## Enforcement and Certain Court Proceedings

<u>Prioritizing Certain Election Proceedings</u>

C.S.S.B. 7 amends the Government Code to require the Texas Supreme Court, a court of appeals, and a trial court to prioritize over any other proceeding pending or filed in the applicable court a proceeding for injunctive relief that is, as follows:
- pending or filed in the applicable court on or after the 60th day before a general or special election; and
- pending or filed under Election Code provisions governing criminal investigations and other enforcement proceedings based on the alleged conduct, as previously described, that constitutes certain Election Code offenses unamended by the bill, the offense of election fraud as amended by the bill, and the applicable offenses added to the Election Code by the bill.

C.S.S.B. 7 provides the following with respect to such prioritization by the respective courts:
- the supreme court or the court of appeals, whichever has jurisdiction over the proceeding, on the request of any party to the proceeding, must grant the party the opportunity to present an oral argument and must begin hearing the argument as soon as practicable but not later than 24 hours after the time the last brief for the proceeding is due to be filed with the applicable court;
- a trial court on written request of any party to a case randomly assigned under the bill's provisions with respect to the priority assignment of certain election proceedings must hold a hearing on the proceeding that must begin as soon as practicable but not later than 24 hours after the court receives the hearing request;
- oral argument for the supreme court or the court of appeals proceeding may be given in person or through electronic means; and
- the trial court hearing may be held in person or through electronic means.

<u>Assignment and Docketing of Prioritized Election Proceedings; Related Criminal Offenses</u>

C.S.S.B. 7 sets out provisions, including related criminal offenses, regarding the following:
- the random assignment and subsequent docketing by an applicable trial court clerk of prioritized election proceedings; and
- appellate panels sitting for docketed and assigned prioritized election proceedings.

C.S.S.B. 7, with respect to the trial court provisions and the creation of the related criminal offense, provides the following:
- the clerk of a district court in which such a proceeding is filed and the clerk of a county court or statutory county court in which such a proceeding is filed must, respectively, docket the proceeding and, if more than one applicable court in the county has

jurisdiction over the proceeding, randomly assign the proceeding to an applicable court using an automated assignment system; and
- a person, including a public official as defined by reference to the Election Code definition of that term provided by the bill, commits a state jail felony offense if the person communicates with a county or district clerk with the intention of influencing or attempting to influence the court or judge assigned to a proceeding under these bill provisions.

C.S.S.B. 7, with respect to the appellate court provisions and the creation of the related criminal offense, provides the following:
- an appellate court election proceeding entitled to priority under the bill's provisions must be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system; and
- a person, including a public official as defined by reference to the Election Code definition of that term provided by the bill, commits a state jail felony offense if the person communicates with a court clerk with the intention of influencing or attempting to influence the composition of the three-justice panel assigned a specific proceeding under these bill provisions.

**Repealed Provisions**

C.S.S.B. 7 repeals the following provisions of the Election Code:
- Section 86.0052(b); and
- Section 86.0105(b).

**Severability**

C.S.S.B. 7 provides for the severability of its provisions and application to any person or circumstance.

## EFFECTIVE DATE

September 1, 2021.

## COMPARISON OF SENATE ENGROSSED AND SUBSTITUTE

While C.S.S.B. 7 may differ from the engrossed in minor or nonsubstantive ways, the following summarizes the substantial differences between the engrossed and committee substitute versions of the bill.

The substitute does not include the following provisions regarding voter registration, which were present in the engrossed:
- a requirement for a court, after a defendant 18 years of age or older is adjudged guilty of a felony offense, to make an affirmative finding that the person has been found guilty, enter the finding in the judgment of the case, and instruct the defendant how the felony conviction will impact the defendant's right to vote in Texas;
- a requirement for a voter registration application to require the applicant to affirmatively indicate all information provided on the application;
- a provision revising the procedures for providing notice of unlawful voting to a prosecutor by requiring a voter registrar who determines that a person who is not eligible to vote may have registered to vote or voted in an election to notify the attorney general, the secretary of state, and the county or district attorney having jurisdiction in the territory covered by the election;
- a provision adding a registered voter who is otherwise determined to be ineligible to vote because of citizenship status as an additional recipient of the notice that a voter registrar is currently required to deliver only to each registered voter who is excused or

disqualified from jury service because of citizenship status and that requires the voter to submit to the registrar proof of U.S. citizenship; and

- a provision that:
  - o requires the secretary of state to monitor each voter registrar for substantial compliance with provisions, as revised by the engrossed, regarding the cancellation of a voter registration because of citizenship status;
  - o requires the secretary of state to correct a violation on behalf of the voter registrar if the registrar fails to correct a violation within 30 days of receiving applicable notice; and
  - o imposes a civil penalty on a voter registrar of $100 for each violation corrected by the secretary of state.

With regard to the unlawful solicitation and distribution of an application to vote by mail, the substitute does not include provisions in the engrossed prohibiting an early voting clerk from making any attempt to solicit a person to complete an application for an early voting ballot, whether directly or through a third party. The substitute does not include provisions in the engrossed prohibiting an officer or employee of the state or of a political subdivision of the state from distributing, unless otherwise authorized by the Election Code, an application form for an early voting ballot to a person who did not request the application. The substitute does not include a related prohibition in the engrossed against the use of public funds by an officer or employee of the state or of a political subdivision of the state with respect to the distribution of an early voting ballot that was not requested. However, the substitute includes a provision absent from the engrossed creating a state jail felony offense of unlawful solicitation and distribution of an application to vote by mail by a public official and provides certain exceptions to the application of that offense. The substitute also includes a provision absent from the engrossed creating a state jail felony offense of unlawful distribution of early voting ballots and balloting materials for an early voting clerk or other election official.

The substitute does not include the following provisions regarding voting by mail, which were all present in the engrossed:

- a requirement for an application for a ballot to be voted by mail on the grounds of disability to require the applicant to affirmatively indicate the applicant's agreement with a statement specified by the bill regarding the applicant's sickness or physical condition indicating disability;
- a provision revising the statement on an officially prescribed application form for an early voting ballot to specify that giving false information on the application is a state jail felony;
- a requirement for a person to vote a provisional ballot if the person canceled their application for an early voting ballot, has been sent an early voting ballot, and fails to return the ballot to the applicable official;
- a prohibition against the following ballots from being counted:
  - o a marked ballot voted by mail that was delivered in person but not received by a person at the time of delivery; and
  - o a ballot delivered in a carrier envelope collected and stored at another location for subsequent delivery to an early voting clerk;
- a requirement for certain ballots voted by mail that were not timely returned to be retained in a locked container during the preservation period;
- provisions regarding the electronic tracking of an application for an early voting ballot by mail and resulting ballot through an online tool developed by the secretary of state, including a provision conditioning the implementation of this provision on a legislative appropriation made specifically for that purpose;
- provisions changing from two or more signatures of the voter made within the preceding six years on file with county clerk or voter registrar to any known signature on file with such officials the signatures that may be compared by a signature verification committee or early voting ballot board;
- a requirement for ballots voted early by mail to be tabulated separately from the ballots voted early by personal appearance and to be separately reported on the returns; and

- a requirement for electronic records made of early voting ballot materials and applications to record both sides of the records for provision to the early voting ballot board, the signature verification committee, or both.

With respect to watchers:
- whereas the engrossed created a Class A misdemeanor offense for an election officer who knowingly refuses to accept a watcher for service whose acceptance is required by the Election Code, the substitute instead creates a Class B misdemeanor offense for an election officer who intentionally or knowingly refuses to accept a watcher for service whose acceptance is required under provisions governing the acceptance of a watcher;
- whereas both versions contain similar provisions modifying the elements of the offense of unlawfully obstructing a watcher to include taking action to distance or obstruct the view of a watcher, the substitute includes a specification absent from the engrossed that the prohibited conduct applies also to a procedure the watcher is entitled to observe;
- the substitute does not include the following provisions regarding watchers, which were all present in the engrossed:
  - the requirement for an election officer to require a watcher to take a specified oath before accepting the watcher; and
  - a prohibition against a watcher being denied free movement within the location at which the watcher is serving; and
- the substitute does not include provisions relating to an authorization in the engrossed for a watcher to electronically deliver to the secretary of state a photo, video, or audio recording that the watcher reasonably believes contains evidence of unlawful activity, including:
  - a requirement that the means of transmission of such a recording be approved by the secretary of state;
  - a requirement that such a recording be made available to the attorney general on request;
  - a prohibition against a watcher sharing such a recording or allowing such a recording to be shared; and
  - a requirement for the secretary of state to adopt related rules.

The substitute does not include the following provisions contained in the election security article of the engrossed:
- provisions removing language relating to the prohibited possession by a watcher of a device capable of recording images or sound, unless the device is disabled or deactivated;
- a provision relating to the authorized use of a device solely to record image or sound by a watcher;
- a provision, applicable to a county with a population of one million or more, revising the calculation of polling places needed under the countywide polling place program and a provision regarding the allocation of election officials and voting equipment, materials, and supplies under the countywide polling place program;
- provisions authorizing an alternative location of a polling place inside the same building as a branch office of a permanent polling place but prohibiting a polling place from being located in a tent or other temporary moveable structure or in a parking garage, parking lot, or similar facility primarily designed for motor vehicles;
- a requirement for the commissioners court of a county to employ the same methodology used to determine the location of countywide polling places to determine the location of temporary branch polling places;
- a prohibition against a voter from casting a vote inside a motor vehicle unless the voter is unable to enter the polling place;
- additional requirements and restrictions relating to a voter who is physically unable to enter a polling place, including who may accompany such a voter, the documentation required of a person assisting three or more such voters with transportation, and the delivery of that documentation to, and the retention of the documentation by, the secretary of state;

- a prohibition against the use of vote counting equipment capable of being connected to the Internet or any other computer network beginning January 1, 2024;
- a provision establishing procedures for the recorded chain of custody of precinct election records;
- a requirement for the preservation of voted ballots until any election contest is resolved;
- a prohibition against an electronic device used to store records from being altered in any manner as to delete or overwrite the records during the preservation period;
- a provision removing the requirement for early voting by personal appearance at the main early voting polling place in an election ordered by a city to be conducted for at least 12 hours on certain weekdays depending on the length of the early voting period;
- a provision revising the regular days and hours for early voting by personal appearance for an election in which a county clerk is the early voting clerk, including lowering the county population threshold from 100,000 to 30,000 for application of certain of those provisions;
- provisions entitling a voter to vote after the polls close if the voter is inside or waiting to enter the polling place at closing time, including provisions relating to procedures for voters who are waiting to enter the polling place at closing time, required distribution of numbered identification cards to waiting voters for entry, and precautions to prevent voting after closing by persons not entitled to do so;
- a prohibition against the removal of a voting machine used for early voting from the polling place before the polls close on election day, unless the machine is defective or in need of repair;
- a provision establishing the public availability of communications between a public official and a voting systems vendor;
- a prohibition against voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture;
- a requirement for a voting machine or ballot marking device to allow a voter the option to cast or complete the voter's ballot without voting on all races or measures if the voter affirmatively chooses to do so;
- a provision establishing a protocol under which any electronic device inside a central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device;
- a provision establishing additional security measures for ballot boxes containing voted ballots throughout the tabulation at the central counting station as follows:
  - the required posting of a licensed peace officer;
  - the implementation of a video surveillance system and the availability for livestream viewing of the resulting video, required for a county with a population of 100,000 or more and discretionary for a county with a population of less than 100,000, including; and
  - retention requirements for the video;
- a prohibition against an authority operating a central counting station from purchasing or using after January 1, 2024, a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified;
- a requirement for voting systems consisting of direct recording electronic voting machines to use and produce a paper audit trail, including circumstances under which the electronic vote and the paper record constitute the official record of the vote cast, use by an election authority of federal or state funding to retrofit voting systems purchased during a specified period, eligibility for reimbursement for retrofitting undertaken by an election authority, the reset of any public counter on an applicable voting machine, the printing of tape to show the number of votes cast, and signing of the tape by each election judge present;
- notification requirements for certain pre-election testing of voting systems;
- a requirement for such testing to ensure that the source code of certain equipment has not been altered;

- a provision establishing the automatic recount of an election in which the number of votes cast in an election precinct exceeds the number of registered voters in the precinct; and
- a provision capping the donations that may be accepted by a commissioners court for use in administering elections without the written consent of the secretary of state at $1,000 and making the secretary of state's written consent contingent on consulting with, and the unanimous agreement of, the governor, lieutenant governor, and speaker of the house of representatives.

The substitute does not include the following provisions which were present in the engrossed:

- a provision restricting the eligibility to serve as an election official on the basis of a conviction for unlawfully obstructing a watcher and a provision making an election official liable to the state for a civil penalty for a violation of any provision of the Election Code which may include termination and loss of employment benefits;
- a provision entitling a watcher, or the appointing authority for a watcher, to injunctive relief to enforce statutory provisions governing watchers, including issuance of temporary orders;
- a requirement for an early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because any form of voter fraud was committed;
- an authorization for the venue of an election contest to take place in any county where a contestee resided at the time of the election; and
- provisions establishing procedures governing an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge committed election fraud consisting of certain violations of the Election Code, including:
  - a requirement for a contestant in such a contest to prove the allegation by a preponderance of the evidence;
  - a provision imposing a civil penalty on a finding relating to one or more reported violations of those specified Election Code provisions; and
  - a provision authorizing the award of attorney's fees to the prevailing party.

The substitute does not include the repeal of provisions by the engrossed that:

- provide for the establishment of a temporary branch polling place that is located in a movable structure; and
- authorize the secretary of state at any time to waive or reinstate for a particular subdivision the requirements for a partial count of electronic voting system ballots by the general custodian of election records.

While the engrossed and substitute both similarly expand the conduct constituting election fraud, the substitute includes as conduct for that offense altering the ballot of another voter or otherwise causing a ballot to not reflect the intent of the voter. The substitute includes a provision absent from the engrossed increasing the penalty for an election fraud offense from a Class A misdemeanor to a state jail felony.

While both the engrossed and substitute create a third degree felony offense for paid vote harvesting, which consists of knowingly providing or offering to provide vote harvesting services in exchange for compensation or other benefit, or knowingly providing or offering to provide compensation or other benefit in exchange for vote harvesting services, the engrossed includes among that conduct a party whose welfare is of interest to the actor. The substitute includes an exemption from applicability of the offense for political speech and a definition for "benefit" in relation to the offense, both of which were absent from the engrossed.

The substitute does not include the civil liability provisions for vote harvesting present in the engrossed making a person who is shown by a preponderance of the evidence to have committed

a paid vote harvesting offense liable to any candidate harmed by the vote harvesting services for certain damages and penalties as follows:
- establishing the circumstances that demonstrate a person is harmed by vote harvesting services;
- the damages a person who prevails in an applicable action is entitled to recover, including a $25,000 penalty and reasonable attorney's fees, court costs, witness fees, and deposition fees;
- the punitive damages a person who prevails in an applicable action is entitled to recover on a showing that the number of voters contacted by the vote harvesting services exceeds the number of votes by which the litigant lost the election; and
- joint liability of defendants.

The substitute does not include the following provisions related to those civil liability provisions from the engrossed:
- a provision establishing that cause of action under the bill is cumulative to any other remedy provided by common law or statute;
- a provision establishing that the expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to such an action;
- a provision establishing that Chapter 27, Civil Practice and Remedies Code, does not apply to such a cause of action; and
- a provision authorizing such a cause of action to be brought in the county where any part of the vote harvesting services occurred.

The substitute includes provisions absent from the engrossed that change deadlines for certain abstracts filed with the applicable voter registrar and the secretary of state for purposes of canceling a voter registration.

The substitute includes the following provisions regarding watchers and their purpose, entitlements, observations, and duties, which were absent from the engrossed:
- a provision establishing that the purpose of provisions governing appointed watchers is to preserve the integrity of the ballot box in accordance with the Texas Constitution;
- an authorization for a watcher serving at a polling place in an election to observe the sealing and transfer of certain storage media now existing or later developed used by voting system equipment; and
- a provision entitling a poll watcher to observe the in-person delivery of a marked ballot to be voted early by mail.

The substitute includes provisions absent from the engrossed specifying the people authorized to be lawfully present in a polling place or in the meeting place of an early voting ballot board during certain periods and entitling a poll watcher to observe the delivery of marked ballots, without disruption to that process, and to be able to determine how those ballots are being delivered and how election officials are making decisions about that delivery.

The substitute includes provisions absent from the engrossed specifying the people authorized to be lawfully present in a central counting station while ballots are being counted.

The substitute includes a prohibition against a presiding judge requiring an appointed watcher to leave a polling place and having an appointed watcher removed from a polling place. The substitute also provides that a presiding judge may remove a watcher from a polling place only if the watcher engages in activity that would constitute an offense related to the conduct of the election. Neither the prohibition nor the latter provision were present in the engrossed.

The substitute includes the following provisions regarding assistance provided to a voter, which were all absent from the engrossed:
- a provision revising the oath required of a person selected to provide assistance to a voter and including a specification in the oath language that the person is swearing or affirming the oath under penalty of perjury; and

- a requirement for an official carrier envelope for an early voting ballot to contain spaces on the reverse side of the envelope for indicating the manner of any assistance provided by a person assisting the voter and the relationship of that person to the voter.

With regard to the offense of unlawfully assisting a voter voting a ballot to be voted by mail, the substitute includes the following provisions, which were all absent from the engrossed:
- a requirement for a person who lawfully assists a voter in preparing the ballot to enter additional information on the envelope regarding the assistance provided;
- a provision narrowing the exemption from the violation of that requirement to apply only to a person who assists a voter and is related to the voter and to no longer apply to a person who was physically living in the same dwelling as the voter at the time of the offense; and
- a penalty enhancement for the offense from a state jail felony to a third degree felony if it is shown on the trial of the offense that the person committed an offense for providing unlawful assistance to the same voter in connection with the same ballot.

The substitute includes provisions, absent from the engrossed, revising the offense for unlawful compensation for assisting voters and the punishment for that offense, including by repealing the misdemeanor punishment for the offense. The substitute eliminates the misdemeanor punishment for the offense for the unlawful compensation for a carrier envelope action by repealing the provision establishing that punishment and by making the offense a state jail felony punishment regardless of whether a defendant was previously convicted two or more times of the offense. The engrossed includes neither the repeal nor the penalty revision.

The substitute includes provisions, which are all absent from the engrossed, that create the following offenses:
- a judge knowingly providing a voter with a form for an affidavit that contains false information entered on the form by the judge;
- perjury in connection with certain election procedures; and
- unlawful altering of election procedures.

The substitute includes a provision, which is absent from the engrossed, that:
- expands the conduct constituting illegal voting to include knowingly voting or attempting to vote in an election in Texas after voting in another state in an election in which a federal office appears on the ballot and the election day for both states is the same day; and
- provides that if conduct constituting the offense of illegal voting, as expanded by the substitute, also constitutes another offense under any other law, the actor may be prosecuted for either offense or both offenses.

The substitute includes provisions regarding the offense of election fraud, which were absent from the engrossed that:
- expand the conduct constituting election fraud to include knowingly or intentionally making any effort to influence the independent exercise of the vote of another in the presence of the ballot or during the voting process by altering the ballot of another or by otherwise causing a ballot to not reflect the intent of the voter; and
- increase the penalty for the offense, as amended by the substitute, from a Class A misdemeanor to a state jail felony.

The substitute includes the following provisions regarding the prioritization of certain election proceedings, which were all absent from the engrossed:
- a requirement for the Texas Supreme Court, a court of appeals, and a trial court to prioritize over any other proceeding pending or filed in the applicable court a proceeding for injunctive relief that is pending or filed in the applicable court on or after the 60th day before a general or special election and that is pending or filed under Election Code provisions governing criminal investigations and other enforcement proceedings based on certain conduct;

- a requirement for the supreme court or the court of appeals, whichever has jurisdiction over the proceeding, on the request of any party to the proceeding, to grant the party the opportunity to present an oral argument, the hearing of which must as soon as practicable but not later than 24 hours after the time the last brief for the proceeding is due to be filed with the applicable court;
- a requirement for a trial court on written request of any party to a case randomly assigned under the substitute's provisions with respect to the priority assignment of certain election proceedings to hold a hearing on the proceeding that must begin as soon as practicable but not later than 24 hours after the court receives the hearing request;
- an authorization for oral argument for the supreme court or the court of appeals proceeding to be given in person or through electronic means; and
- an authorization for the trial court hearing to be held in person or through electronic means.

The substitute includes the following provisions, which were all absent from the engrossed, regarding the assignment and docketing of prioritized election procedures and related criminal offenses:

- provisions establishing the docketing and subsequent random assignment by an applicable trial court clerk of prioritized election proceedings and a related criminal offense;
- provisions establishing appellate panels sitting for docketed and assigned prioritized election proceedings;
- a requirement for the clerk of a district court in which such a proceeding is filed and the clerk of a county court or statutory county court in which such a proceeding is filed to, respectively, docket the proceeding and, if more than one applicable court in the county has jurisdiction over the proceeding, randomly assign the proceeding to an applicable court using an automated assignment system;
- a provision creating a state jail felony offense for a person, including a public official, who communicates with a county or district clerk with the intention of influencing or attempting to influence the court or judge assigned to a proceeding under these bill provisions;
- a requirement for an appellate court election proceeding entitled to priority under the bill's provisions to be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system; and
- a provision creating a state jail felony offense for a person, including a public official, who communicates with a court clerk with the intention of influencing or attempting to influence the composition of the three-justice panel assigned a specific proceeding under these bill provisions.

The substitute includes the following provisions which were absent from the engrossed:

- a provision establishing the bill's short title as the Election Integrity Protection Act of 2021;
- a provision setting out the bill's purpose with respect to the exercise by the legislature of its constitutional authority under the Texas Constitution to make all laws necessary to detect and punish fraud and preserve the purity of the ballot box;
- a provision setting out legislative findings relating to the importance of full, free, and fair elections, the threat posed by fraud in elections to a constitutional democracy, the need for related reforms, the applicable constitutional authority of the legislature, and the intent of the bill with respect to the right of free suffrage guaranteed to the people of Texas;
- a provision amended statute to establish the legislature's intent with regard to the uniform and consistent application of the Election Code in Texas and a provision requiring a public official to construe the provisions of the Election Code strictly to effect that specific intent; and
- a provision defining "public official" for purposes of the Election Code.

The substitute includes a severability clause absent from the engrossed.

**BILL ANALYSIS**

Senate Research Center                                                                                      C.S.S.B. 7
87R16702 ADM-F                                                                                      By: Hughes et al.
                                                                                                          State Affairs
                                                                                                             3/26/2021
                                                                                     Committee Report (Substituted)

**AUTHOR'S / SPONSOR'S STATEMENT OF INTENT**

As efforts to identify and prosecute election crimes have intensified, we have gained a better understanding of the ways certain bad actors take advantage of holes in the electoral process to alter the balance of elections, especially at the local level.

At the same time, advances in technology have increased the threat of electronic interference with elections, but also the tools available to prevent that interference.

S.B. 7 seeks to address these issues by strengthening poll watcher protection, bringing about transparency by utilizing technology throughout the electoral process, requiring a voter verifiable paper trail, limiting the most common fraudulent practices and opportunities for fraudulent practices, and providing better and more timely evidence in investigations into alleged voter fraud.

S.B. 7 amends current law relating to election integrity, creates a criminal offense, and creates civil penalties.

(Original Author's / Sponsor's Statement of Intent)

C.S.S.B. 7 amends current law relating to elections, including election integrity and security, creates a criminal offense, and provides civil penalties.

**RULEMAKING AUTHORITY**

Rulemaking authority is expressly granted to the secretary of state in SECTION 2.09 (Section 86.015, Election Code) of this bill.

**SECTION BY SECTION ANALYSIS**

ARTICLE 1. VOTER REGISTRATION

SECTION 1.01. Amends Chapter 42, Code of Criminal Procedure, by adding Article 42.0194, as follows:

> Art. 42.0194. FINDING REGARDING FELONY CONVICTION. Requires the court, in the trial of a felony offense, if the defendant is 18 years of age or older and is adjudged guilty of the offense, to make an affirmative finding that the person has been found guilty of a felony and enter the affirmative finding in the judgment of the case, and to instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in this state.

SECTION 1.02. Amends Section 13.002, Election Code, by adding Subsection (c-1), to require that a voter registration application require the applicant to affirmatively indicate all information provided on the application.

SECTION 1.03. Amends Section 15.028, Election Code, as follows:

Sec. 15.028. New heading: NOTICE OF UNLAWFUL VOTING OR REGISTRATION. Requires the voter registrar (registrar), if the registrar determines that a person who is not eligible to vote may have registered to vote or voted in an election, rather than a person who is not a registered voter voted in an election, to execute and deliver to the attorney general, the secretary of state (SOS), and the county or district attorney having jurisdiction in the territory covered by the election an affidavit stating the relevant facts. Deletes existing text requiring the registrar, if the election covers territory in more than one county, to also deliver an affidavit to the attorney general. Makes a nonsubstantive change.

SECTION 1.04. Amends Section 16.0332(a), Election Code, as follows:

(a) Requires the registrar, after the registrar receives a list under Section 18.068 (Comparison of Information Regarding Ineligibility) of this code or Section 62.113 (Compilation of List of Noncitizens), Government Code, of persons excused or disqualified from jury service or otherwise determined to be ineligible to vote, rather than persons excused or disqualified from jury service, because of citizenship status, to deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar certain proof of United States citizenship.

SECTION 1.05. Amends Section 18.065, Election Code, by amending Subsection (a) and adding Subsections (e), (f), and (g), as follows:

(a) Requires SOS to monitor each registrar for substantial compliance with certain sections, including Section 16.0332 (Cancellation Because of Citizenship Status), and with rules implementing the statewide computerized voter registration list.

(e) Requires SOS, if a registrar fails to correct a violation within 30 days of a notice under Subsection (b) (relating to the requirement that SOS deliver a notice of noncompliance to the registrar), to correct the violation on behalf of the registrar.

(f) Provides that a registrar is liable to this state for a civil penalty of $100 for each violation corrected by SOS under Subsection (e). Authorizes the attorney general to bring an action to recover a civil penalty imposed under Section 18.065 (Secretary of State to Monitor Registrar's Compliance).

(g) Requires that a civil penalty collected by the attorney general under this section be deposited in the state treasury to the credit of the general revenue fund.

SECTION 1.06. Makes application of this article prospective.

## ARTICLE 2. VOTING BY MAIL

SECTION 2.01. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0011, as follows:

Sec. 84.0011. SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED. Prohibits the early voting clerk from making any attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party.

SECTION 2.02. Amends Section 84.002, Election Code, by adding Subsection (c), as follows:

(c) Requires that an application for a ballot to be voted by mail on the ground of disability require the applicant to affirmatively indicate that the applicant agrees with the statement "I have a sickness or physical condition that prevents me from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring my health," as prescribed by Section 82.002(a) (relating to the provision that a qualified voter is eligible for early voting by mail if the voter has certain health conditions).

SECTION 2.03 Amends Section 84.011(a), Election Code, as follows:

(a) Requires that the officially prescribed application form for an early voting ballot include certain information, including immediately preceding the signature space the statement: "I certify that the information given in this application is true, and I understand that giving false information in this application is a state jail felony," rather than "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SECTION 2.04. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0111, as follows:

Sec. 84.0111. PROHIBITION ON DISTRIBUTION OF APPLICATION FORM. (a) Prohibits an officer or employee of this state or of a political subdivision of this state, unless authorized by this code, from distributing an application form for an early voting ballot to a person who did not request an application under Section 84.001 (Application Required).

(b) Prohibits an officer or employee of this state or of a political subdivision of this state from using public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 2.05. Amends Section 84.035, Election Code, as follows:

Sec. 84.035. BALLOT SENT TO APPLICANT. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 (Request for Cancellation) but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section to only vote a provisional ballot under Section 63.011 (Provisional Voting).

SECTION 2.06. Amends Section 86.0015, Election Code, by adding Subsection (b-3), as follows:

(b-3) Requires that an application for a ballot to be voted by mail on the ground of disability under Section 86.0015 (Annual Ballots by Mail) include or be accompanied by:

(1) written documentation from the United States Social Security Administration or the United States Department of Veterans Affairs evidencing that the applicant has been determined to have a disability; or

(2) a certificate of a licensed physician or chiropractor or accredited Christian Science practitioner in substantially a certain form.

SECTION 2.07. Amends Section 86.006, Election Code, by amending Subsections (a) and (e) and adding Subsection (a-2), as follows:

(a) Authorizes the official carrier envelope to be delivered in another envelope and requires that it be transported and delivered only by certain persons, including, subject to Subsections (a-1) (relating to authorizing a voter, with acceptable identification, to deliver a marked ballot in person to the early voting clerk's office only while the polls are open on election day) and (a-2), rather than Subsection (a-1), in-person delivery by the voter who voted the ballot.

(a-2) Requires that an in-person delivery of a marked ballot voted under Chapter 86 (Conduct of Voting by Mail) be received at the time of delivery by a person. Prohibits a ballot delivered in violation of this subsection from being counted.

(e) Prohibits a ballot delivered in violation of this subsection (relating to prohibiting carrier envelopes from being collected and stored for subsequent delivery to the early voting clerk) from being counted.

SECTION 2.08. Amends Section 86.011(c), Election Code, to require the early voting clerk, if the return of a voter's official carrier envelope for a ballot voted by mail is not timely, to enter the time of receipt on the carrier envelope and retain it in a locked container, rather than retain it, for the period for preserving the precinct election records.

SECTION 2.09. Amends Chapter 86, Election Code, by adding Section 86.015, as follows:

Sec. 86.015. ELECTRONIC TRACKING OF APPLICATION FOR BALLOT VOTED BY MAIL OR BALLOT VOTED BY MAIL. (a) Requires SOS to develop or otherwise provide an online tool to each early voting clerk that enables a person who submits an application for a ballot to be voted by mail to track the location and status of the person's application and ballot on SOS's Internet website and on the county's Internet website if the early voting clerk is the county clerk of a county that maintains an Internet website.

(b) Requires that the online tool developed or provided under Subsection (a) require the voter to provide certain personal information before permitting the voter to access information described by that subsection.

(c) Requires that an online tool used under this section update the applicable Internet website as soon as practicable after certain events occur.

(d) Requires SOS to adopt rules and prescribe procedures as necessary to implement this section.

SECTION 2.10. Amends Section 87.027(i), Election Code, as follows:

(i) Authorizes the signature verification committee to also compare the signature on each carrier envelope certificate and the signature on the voter's ballot application with any known signature of the voter, rather than with any two or more signatures of the voter made within the preceding six years, on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 2.11. Amends Section 87.041(e), Election Code, to make conforming changes.

SECTION 2.12. Amends Sections 87.062(a) and (c), Election Code, as follows:

(a) Requires the early voting ballot board, on the direction of the presiding judge, in accordance with Section 85.032(b) (relating to the required security procedures for early voting ballot boxes), to open the containers, rather than the container, for the early voting ballots that are to be counted by the board, remove the contents from each container, and remove any ballots enclosed in ballot envelopes from their envelopes. Makes a nonsubstantive change.

(c) Requires that ballots voted by mail be tabulated separately from the ballots voted by personal appearance and be separately reported on the returns. Deletes existing text requiring that the results of all early voting ballots counted by the early voting ballot board under Subchapter D (Processing Manually Counted Ballots) be included in the same return.

SECTION 2.13. Amends Section 87.103, Election Code, as follows:

Sec. 87.103. COUNTING BALLOTS AND PREPARING RETURNS. (a) Requires that the early voting electronic system ballots counted at a central counting station, the ballots cast at precinct polling places, and the ballots voted by mail be tabulated separately, rather than requiring that early voting electronic system ballots counted at a central counting station be tabulated separately from the ballots cast at precinct polling places, and be separately reported on the returns.

(b) Requires that the early voting returns prepared at the central counting station include any early voting results obtained by the early voting ballot board under Subchapter D, rather than under Subchapters D and E.

SECTION 2.14. Amends Section 87.126, Election Code, by adding Subsection (a-1), as follows:

(a-1) Requires that electronic records made under Section 87.126 (Electronic Recording of Ballot Materials and Applications) record both sides of any application, envelope, or ballot recorded, and that all such records be provided to the early voting ballot board, the signature verification committee, or both.

SECTION 2.15. Makes application of this article prospective.

## ARTICLE 3. ELECTION SECURITY

SECTION 3.01. Amends Section 33.006(b), Election Code, as follows:

(b) Deletes existing text requiring that a certificate of appointment of a watcher contain an affidavit executed by the appointee stating that the appointee will not have possession of a device capable of recording images or sound or that the appointee will disable or deactivate the device while serving as a watcher. Makes nonsubstantive changes.

SECTION 3.02. Amends Section 33.051(c), Election Code, as follows:

(c) Authorizes the presiding judge to inquire whether a watcher has possession of a recording device, rather than possession of any prohibited recording device, before accepting the watcher for service. Deletes existing text prohibiting a watcher from being accepted for service if the watcher has possession of a device capable of recording images or sound unless the watcher agrees to disable or deactivate the device.

SECTION 3.03. Amends Section 33.056, Election Code, by amending Subsection (a) and adding Subsections (e) and (f), as follows:

(a) Entitles a watcher to sit or stand near enough to see and hear, rather than conveniently near, the election officers conducting the observed activity, except as otherwise prohibited by Chapter 33 (Watchers).

(e) Prohibits a watcher from being denied free movement within the location at which the watcher is serving, except as provided by Section 33.057(b) (relating to prohibiting a watcher from being present at the voting station when a voter is preparing the voter's ballot or is being assisted by a person of the voter's choice).

(f) Provides that, in this code, a watcher who is entitled to "observe" an activity is entitled to sit or stand near enough to see and hear the activity.

SECTION 3.04. Amends Section 33.061, Election Code, by adding Subsection (c), as follows:

(c) Provides that an offense under Subsection (a) (relating to the provision that preventing an authorized watcher from observing an activity the watcher is entitled to observe is an offense) includes an action taken to distance or obstruct the view of a watcher in a way that makes observation reasonably ineffective.

SECTION 3.05. Amends Section 43.007, Election Code, by amending Subsection (m) and adding Subsections (m-1), (m-2), and (q), as follows:

(m) Requires that the county, in adopting a methodology under Subsection (f) (relating to the requirement that a county adopt a methodology for determining where each countywide polling place will be located), ensure that:

(1) in a county with a population of less than one million:

(A) creates this paragraph from existing text and makes no further changes; and

(B) the deviation in the percentage of the total number of countywide polling places located in a commissioners precinct does not vary by more than one percentage point in a precinct; and

(2) in a county with a population of one million or more, the number of polling places located in each state representative district included in the territory of the county is calculated by dividing the number of voters residing in that district by the total number of voters residing in the county and using the number generated as a percentage to allocate the same percentage of polling place locations, rounding up to the nearest whole number, if necessary.

Deletes existing text requiring that the county, in adopting a methodology under Subsection (f), ensure that the total number of permanent branch and temporary branch polling places open for voting in a county commissioners precinct does not exceed more than twice the number of permanent branch and temporary branch polling places in another county commissioners precinct.

(m-1) Requires that voter data from the most recent election be used in making a calculation under Subsection (m).

(m-2) Requires election officials and voting equipment, materials, and supplies to be allocated to each polling place based on the same percentage as polling place locations are determined under Subsection (m) with no greater than a five percent deviation in the allocation between polling place locations. Requires that each polling place location be able to accommodate 100 percent of the equipment allocated to be operational at the same time.

(q) Requires that each countywide polling place in a county have approximately the same number of voting machines as each other countywide polling place in the county.

SECTION 3.06. Amends Section 43.031(b), Election Code, as follows:

(b) Prohibits a polling place from being located in a tent or other temporary moveable structure or in a facility primarily designed for motor vehicles. Prohibits any voter from casting a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009 (Voter Unable to Enter Polling Place).

SECTION 3.07. Amends Section 61.014, Election Code, by amending Subsections (a) and (b) and adding Subsection (b-1), as follows:

(a) Prohibits a person, other than a watcher using the device solely to record image or sound as permitted under Subsection (b), rather than a person, from using a wireless communication device within 100 feet of a voting station.

(b) Prohibits a person, other than a watcher, from using a mechanical or electronic device to record images or sound at a polling place. Authorizes a watcher to use such a device to record images or sound at a polling place, except that a watcher is authorized to record activity of a voter at a voter station only if the voter is receiving assistance the watcher

reasonably believes to be unlawful. Deletes existing text prohibiting a person from using any mechanical or electronic means of recording images or sound within 100 feet of a voting station.

(b-1) Prohibits a recording made by a watcher under Subsection (b) from capturing or recording any information on a voter's ballot.

SECTION 3.08. Amends Section 64.007(c), Election Code, to require an election officer to maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit.

SECTION 3.09. Amends Section 64.009, Election Code, by amending Subsection (b) and adding Subsections (b-1), (e), (f), (g), and (h), as follows:

(b) Creates an exception under Subchapter B (Assisting Voter), and makes no further changes to this subsection.

(b-1) Provides that a person other than the voter is only permitted to be inside the motor vehicle while the voter votes if the person would be entitled to accompany the voter to the voting station under other law.

(e) Entitles a poll watcher to observe any activity conducted under this section, except as provided by Section 33.057 (Observing Preparation of Voter's Ballot).

(f) Requires a person who assists three or more voters voting under this section by providing the voters with transportation to the polling place to complete and sign a form that contains the person's name and address and whether the person is providing assistance solely under this section or under both this section and Subchapter B.

(g) Requires that a form completed under Subsection (f) be delivered to SOS as soon as practicable. Requires SOS to retain a form delivered under this section for the period for preserving the precinct election records and to make the form available to the attorney general for inspection upon request.

(h) Requires SOS to prescribe the form described by Subsection (f).

SECTION 3.10. Amends Subchapter B, Chapter 64, Election Code, by adding Section 64.0322, as follows:

Sec. 64.0322. SUBMISSION OF FORM BY ASSISTANT. (a) Requires a person, other than an election officer, who assists a voter in accordance with Chapter 64 (Voting Procedures) to complete a form stating certain information.

(b) Requires SOS to prescribe the form required by this section. Requires that the form be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010 (Unlawfully Assisting Voter Voting Ballot by Mail), or be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 3.11. Amends Section 66.052, Election Code, as follows:

Sec. 66.052. New heading: DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) Creates this subsection from existing text and makes no further changes.

(b) Requires the presiding judge or an election clerk designated by the presiding judge under this section to keep records of each person that has custody of a precinct election record until the records are delivered.

SECTION 3.12. Amends Sections 66.058(b) and (g), Election Code, as follows:

(b) Requires that the voted ballots be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records for a period of at least 60 days after the date of the election, or until any election contest is resolved, whichever is longer, rather than for a period of at least 60 days after the date of the election. Makes a conforming change.

(g) Prohibits an electronic device used to store records from being altered in any manner as to delete or overwrite the records during the preservation period.

SECTION 3.13. Amends Section 85.005, Election Code, as follows:

Sec. 85.005. REGULAR DAYS AND HOURS FOR VOTING. (a) Provides that, except as provided by Subsection (c), in an election in which a county clerk is the early voting clerk under Section 83.002 (County Clerk as Early Voting Clerk), rather than in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005 (Clerk for City Elections), early voting by personal appearance at the main early voting polling place is required to be conducted on each weekday of the early voting period that is not a legal state holiday and for a period of at least nine hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m.

Deletes existing text requiring that early voting by personal appearance at the main early voting polling place be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business.

(b) Requires that, in an election to which Subsection (a) does not apply, early voting by personal appearance at the main early voting polling place be conducted at least nine, rather than eight, hours each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters. Requires that, in that case, the voting be conducted at least four, rather than three, hours each day.

(c) Requires that, in a county with a population of 30,000 or more, rather than 100,000 or more, the voting in a primary election or the general election for state and county officers be conducted at the main early voting polling place for 12 hours, rather than at least 12 hours, on each weekday of the last week of the early voting period, and the voting in a special election ordered by the governor be conducted at the main early voting polling place for 12 hours on each of the last two days of the early voting period. Prohibits voting under this subsection from being conducted earlier than 6 am. or later than 9 p.m. Makes conforming changes.

Deletes existing text requiring that, in an election ordered by a city, early voting by personal appearance at the main early voting polling place be conducted for at least 12 hours on one weekday, if the early voting period consists of less than six weekdays, or on two weekdays, if the early voting period consists of six or more weekdays.

SECTION 3.14. Amends Section 85.006(b), Election Code, to make conforming changes.

SECTION 3.15. Amends Section 85.010(a-1), Election Code, to redefine "eligible county polling place" for purposes of Section 85.010 (Early Voting Polling Place for Certain Elections Held by Political Subdivisions).

SECTION 3.16. Amends Section 85.061(a), Election Code, as follows:

(a) Requires that an early voting polling place, in a countywide election in which the county clerk is the early voting clerk under Section 83.002, be located inside, rather than at, each branch office that is regularly maintained for conducting general clerical functions of the county clerk, except as provided by Subsection (b) (relating to the

prohibition of certain county clerks' regularly maintained branch clerical offices from being branch early voting polling places). Authorizes the polling place, if a suitable room is unavailable inside the branch office, to be located in another room inside the same building as the branch office. Prohibits the polling place from being located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles.

SECTION 3.17. Amends Section 85.062(b), Election Code, as follows:

(b) Authorizes a polling place established under Section 85.062 (Temporary Branch Polling Place) to be located, subject to Subsection (d) (relating to authorizing certain commissioners courts to establish early voting polling places subject to certain criteria), at any place in the territory served by the early voting clerk and to be located inside any building, rather than in any stationary structure, as directed by the authority establishing the branch office. Prohibits the polling place from being located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles in the general election for state and county officers, general primary election, or runoff primary election.

SECTION 3.18. Amends Section 124.002, Election Code, by adding Subsection (c) to prohibit voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

SECTION 3.19. Amends Subchapter A, Chapter 125, Election Code, by adding Section 125.0071, as follows:

Sec. 125.0071. VOTER ALLOWED TO CAST BALLOT AT ANY TIME. Requires that a voting machine or ballot marking device allow a voter the option to cast or complete the voter's ballot without voting on all races or measures if the voter affirmatively chooses to do so.

SECTION 3.20. Amends Subchapter A, Chapter 127, Election Code, by adding Section 127.008, as follows:

Sec. 127.008. ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. (a) Requires a counting station manager and the presiding judge of the counting station to develop a protocol under which any electronic device inside a central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device.

(b) Requires the counting station manager and the presiding judge of the counting station to ensure that the input and activity tracked by the software is printed and delivered to SOS not later than the fifth day after vote counting is complete.

SECTION 3.21. Amends Section 127.1232, Election Code, as follows:

Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) Creates this subsection from existing text. Requires the general custodian of election records to post a licensed peace officer, rather than a guard, to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.

(b) Authorizes the general custodian of election records to implement a video surveillance system that retains a record of all areas containing voted ballots from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns. Authorizes the video to be made available to the public by a livestream.

(c) Provides that the video recorded is an election record under Section 1.012 (Public Inspection of Election Records) and is required to be retained by the general custodian of election records until the end of the calendar year in which

an election is held or until an election contest filed in the county has been resolved, whichever is later.

SECTION 3.22. Amends Subchapter A, Chapter 129, Election Code, by adding Section 129.003, as follows:

Sec. 129.003. PAPER AUDIT TRAIL REQUIRED. (a) Defines "auditable voting system."

(b) Prohibits a voting system that consists of direct recording electronic voting machines from being used in an election unless the system is an auditable voting system, except as provided by Subsection (e).

(c) Provides that, except for a recount under Title 13 (Recounts), the electronic vote is the official record of the ballot. Provides that, for a recount of ballots cast on a system involving direct recording electronic voting machines, the paper record is the official record of the vote cast.

(d) Authorizes an authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, to use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:

(1) if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8, 2022, the authority is eligible to have 100 percent of the cost of retrofitting reimbursed under this section; and

(2) if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this section.

(e) Provides that Subsections (a)-(c) do not apply to an election held before September 1, 2026.

SECTION 3.23. Amends Section 129.023, Election Code, by adding Subsections (b-2) and (c-1), as follows:

(b-2) Requires the general custodian of election records, if a test conducted under Section 129.023 (Public Test of Logic and Accuracy) is being conducted for an election in which a county election board has been established under Section 51.002 (County Election Board), to notify each member of the board of the test at least 48 hours before the date of the test. Requires each member, if the county election board chooses to witness the test, to sign the statement required by Subsection (e)(1) (relating to the requirement that the testing board and the general custodian of election records sign a written statement containing certain information).

(c-1) Requires that a test conducted under Section 129.023 also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

SECTION 3.24. Amends Section 216.001, Election Code, as follows:

Sec. 216.001. APPLICABILITY OF CHAPTER. (a) Creates this subsection from existing text. Creates an exception under Subsection (b) and makes a nonsubstantive change.

(b) Requires the authority designated under Section 212.026 (Authority to Whom Petition Submitted), if the results of an election show that the number of votes cast in an election precinct exceeds the number of registered voters in the precinct, to initiate an automatic recount for that precinct in accordance with Chapter 216 (Automatic Recount).

SECTION 3.25. Amends Section 81.032, Local Government Code, as follows:

Sec. 81.032. ACCEPTANCE OF DONATIONS AND BEQUESTS. (a) Creates this subsection from existing text and makes no further changes.

(b) Prohibits the commissioners court from accepting a donation described in Subsection (a) (relating to the authority of a commissioners court to accept certain donations for the purpose of performing a function conferred by law on the county or a county officer) of over $1,000 for use in administering elections without the written consent of SOS.

(c) Authorizes SOS to grant consent under Subsection (b) only if:

(1) SOS consults with the governor, the lieutenant governor, and the speaker of the Texas House of Representatives (house) on the proposed donation; and

(2) the governor, the lieutenant governor, and the speaker of the house unanimously agree to SOS's grant of consent.

SECTION 3.26. Makes application of this article prospective.

ARTICLE 4. ENFORCEMENT

SECTION 4.01. Amends Subchapter E, Chapter 31, Election Code, by adding Sections 31.126 and 31.127, as follows:

Sec. 31.126. RESTRICTION ON ELIGIBILITY. (a) Defines "election official."

(b) Prohibits a person from serving as an election official if the person has been finally convicted of an offense under Section 33.061 (Unlawfully Obstructing Watcher).

Sec. 31.127. CIVIL PENALTY. (a) Defines "election official."

(b) Provides that an election official may be liable to this state for a civil penalty if the official is employed by or is an officer of this state or a political subdivision of this state, and violates a provision of this code.

(c) Authorizes a civil penalty imposed under this section to include termination of the person's employment and loss of the person's employment benefits.

SECTION 4.02. Amends Section 33.051, Election Code, by adding Subsection (g), as follows:

(g) Provides that an election officer commits an offense if the officer knowingly refuses to accept a watcher for service whose acceptance is required by this code. Provides that an offense under Section 33.051 (Acceptance of Watcher) is a Class A misdemeanor.

SECTION 4.03. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.062, as follows:

Sec. 33.062. INJUNCTIVE RELIEF. Entitles a watcher, or the appointing authority for a watcher, to injunctive relief under Section 273.081 (Injunction) to enforce this chapter, including issuance of temporary orders.

SECTION 4.04. Amends Section 87.0431(b), Election Code, as follows:

(b) Requires the early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because of certain reasons, including that any form of voter fraud was committed. Makes nonsubstantive changes.

SECTION 4.05. Amends Section 232.006(a), Election Code, as follows:

(a) Provides that the venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election. Provides that, for purposes of Section 232.006 (Venue), a contestee's residence is determined under Section 411.0257 (Residence), Government Code.

SECTION 4.06. Amends Chapter 232, Election Code, by adding Subchapter C, as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061. PETITION ALLEGING FRAUD. Provides that this subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge committed election fraud under certain sections of this code.

Sec. 232.062. EVIDENTIARY STANDARD. Requires a contestant to prove an allegation described by Section 232.061 by a preponderance of the evidence.

Sec. 232.063. CIVIL PENALTY. (a) Provides that, if the court in its judgment finds that the contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to this state for a civil penalty of $1,000 for each violation.

(b) Requires that a penalty collected under this section by the attorney general be deposited in the state treasury to the credit of the general revenue fund.

Sec. 232.064. ATTORNEY'S FEES. Authorizes the court, in an election contest to which this subchapter applies, to award reasonable attorney's fees to the prevailing party.

SECTION 4.07. (a) Provides that the changes in law made by this article apply only to an election contest for which the associated election occurred after the effective date of this Act.

(b) Makes application of this article prospective.

ARTICLE 5. REPEALER AND EFFECTIVE DATE

SECTION 5.01. Repealer: Section 85.062(e) (relating to authorizing a county clerk to establish a temporary branch polling place located in a movable structure during certain elections), Election Code.

SECTION 5.02. Requires SOS to implement Section 86.015, Election Code, as added by this Act, only if the legislature appropriates money specifically for that purpose. Provides that if the legislature does not appropriate money specifically for that purpose, SOS is authorized, but not required, to implement Section 86.015, Election Code, using other appropriations available for that purpose.

SECTION 5.03. Effective date, subject to Section 5.02 of this Act: September 1, 2021.

# CONFERENCE COMMITTEE REPORT FORM

Austin, Texas

*May 29, 2021*
Date

Honorable Dan Patrick
President of the Senate

Honorable Dade Phelan
Speaker of the House of Representatives

Sirs:

We, Your Conference Committee, appointed to adjust the differences between the Senate and the House of Representatives on _____ *Senate Bill 7* _____ have had the same under consideration, and beg to report it back with the recommendation that it do pass in the form and text hereto attached.

*Bryan Hughes*
Bryan Hughes, Chair

*Lois W. Kolkhorst*
Lois W. Kolkhorst

*Paul Bettencourt*
Paul Bettencourt

*Dawn Buckingham*
Dawn Buckingham

*B Cain*
Briscoe Cain, Chair

*Jacey Jetton*
Jacey Jetton

Terry Canales

*Travis Clardy*
Travis Clardy

_____ _____
On the part of the Senate
*Beverly Powell*

_____ _____
On the part of the House
*Nicole Collier*

**Note to Conference Committee Clerk:**

Please type the names of the members of the Conference Committee under the lines provided for signature. Those members desiring to sign the report should sign each of the six copies. Attach a copy of the Conference Committee Report and a Section by Section side by side comparison to each of the six reporting forms. The original and two copies are filed in house of origin of the bill, and three copies in the other house.

*Received 9:02 AM, May 29, 2021*

CONFERENCE COMMITTEE REPORT

BILL TEXT

S.B. No. 7

A BILL TO BE ENTITLED

1                              AN ACT

2 relating to election integrity and security, including by

3 preventing fraud in the conduct of elections in this state;

4 increasing criminal penalties; creating criminal offenses;

5 providing civil penalties.

6       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

7                  ARTICLE 1. GENERAL PROVISIONS

8       SECTION 1.01.  SHORT TITLE.  This Act may be cited as the

9 Election Integrity Protection Act of 2021.

10      SECTION 1.02.  PURPOSE.  The purpose of this Act is to

11 exercise the legislature's constitutional authority under Section

12 4, Article VI, Texas Constitution, to make all laws necessary to

13 detect and punish fraud.

14      SECTION 1.03.  FINDINGS. The legislature finds that:

15            (1) full, free, and fair elections are the

16 underpinnings of a stable constitutional democracy;

17            (2) fraud in elections threatens the stability of a

18 constitutional democracy by undermining public confidence in the

19 legitimacy of public officers chosen by election;

20            (3) reforms are needed to the election laws of this

21 state to ensure that fraud does not undermine the public confidence

22 in the electoral process;

23            (4) the reforms to the election laws of this state made

24 by this Act are not intended to impair the right of free suffrage

S.B. No. 7

1  guaranteed to the people of Texas by the United States and Texas
2  Constitutions, but are enacted solely to prevent fraud in the
3  electoral process and ensure that all legally cast ballots are
4  counted. Integral to the right to vote is the assurance of voter
5  access and the right for all votes legally cast to be counted;

6         (5) additionally, preventing a valid vote from being
7  counted violates the basic constitutional rights guaranteed to each
8  citizen by the United States Constitution; and

9         (6) providing for voter access and increasing the
10 stability of a constitutional democracy ensures public confidence
11 in the legitimacy of public officers chosen by election.

12       SECTION 1.04.  Chapter 1, Election Code, is amended by
13 adding Section 1.0015 to read as follows:

14       Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the
15 legislature that the application of this code and the conduct of
16 elections be uniform and consistent throughout this state to reduce
17 the likelihood of fraud in the conduct of elections, protect the
18 secrecy of the ballot, promote voter access, and ensure that all
19 legally cast ballots are counted.

20       SECTION 1.05.  Section 1.003, Election Code, is amended by
21 adding Subsection (a-1) to read as follows:

22       (a-1)  Election officials and other public officials shall
23 strictly construe the provisions of this code to effect the intent
24 of the legislature under Section 1.0015.

25       SECTION 1.06.  Section 1.018, Election Code, is amended to
26 read as follows:

27       Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to

S.B. No. 7

1  Section 1.03, Penal Code, and to other titles of the Penal Code that
2  may apply to this code, Titles 2 and [Title] 4, Penal Code, apply
3  [applies] to offenses prescribed by this code.

4                    ARTICLE 2. REGISTRATION OF VOTERS

5        SECTION 2.01.  Section 13.002, Election Code, is amended by
6  adding Subsection (c-1) to read as follows:

7        (c-1)  The information required under Subsection (c) must be
8  supplied by the person desiring to register to vote.

9        SECTION 2.02.  Section 15.021, Election Code, is amended by
10 amending Subsections (b) and (d) and adding Subsections (d-1) and
11 (d-2) to read as follows:

12       (b)  Except as provided by Subsection (d), the [The] voter
13 shall  use  the  registration  certificate  or  a  registration
14 application form as the notice, indicating the correct information
15 in the appropriate space on the certificate or application form
16 unless the voter does not have possession of the certificate or an
17 application form at the time of giving the notice.

18       (d)  A voter [who continues to reside in the county in which
19 the voter is registered] may correct information under this section
20 by  digital  transmission  of  the  information  under  a  program
21 administered by the secretary of state and the Department of
22 Information Resources.

23       (d-1)  If the notice indicates that a voter no longer resides
24 in the county in which the voter is registered, the registrar shall
25 forward  the  notice  and  the  voter's  original  application  for
26 registration to the registrar of the county in which the voter
27 resides.   The  registrars  shall  coordinate  to  ensure  that  the

S.B. No. 7

1  voter's existing registration is canceled immediately after the
2  voter is registered in the county in which the voter resides in
3  accordance with Subsection (d-2).
4      (d-2)  A  registrar  who  receives  a  voter's  notice  and
5  application from another registrar under Subsection (d-1) shall
6  treat it as an original application for registration under Section
7  13.002, and shall register the voter if the voter resides in the
8  county and is otherwise eligible under Section 13.001.
9      SECTION 2.03.  Section 15.028, Election Code, is amended to
10  read as follows:
11      Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO
12  PROSECUTOR].  [(a)]  If the registrar determines that a person who
13  is not eligible to vote registered to vote or [a registered voter]
14  voted in an election, the registrar shall execute and deliver to the
15  attorney  general,  the  secretary  of  state,  and  the  county  or
16  district attorney having jurisdiction in the territory covered by
17  the election an affidavit stating the relevant facts.
18      [(b)  If  the  election  covers  territory  in  more  than  one
19  county,  the  registrar  shall  also  deliver  an  affidavit  to  the
20  attorney general.]
21      SECTION 2.04.  Section 31.006, Election Code, is amended to
22  read as follows:
23      Sec. 31.006.  REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.
24  (a)  If, after receiving or discovering information indicating that
25  [a complaint alleging] criminal  conduct  in  connection  with  an
26  election has occurred, the secretary of state determines that there
27  is reasonable cause to suspect that [the alleged] criminal conduct

S.B. No. 7

1  occurred, the secretary shall promptly refer the <u>information</u>

2  [~~complaint~~] to the attorney general. The secretary shall deliver to

3  the attorney general all pertinent documents <u>and information</u> in the

4  secretary's possession.

5      (b)  The  documents  <u>and  information</u>  submitted  under

6  Subsection (a) are not considered public information until:

7          (1)  the secretary of state makes a determination that

8  the  <u>information</u>  [~~complaint~~]  received  does  not  warrant  an

9  investigation; or

10          (2)  if referred to the attorney general, the attorney

11  general has completed the investigation or has made a determination

12  that  the  <u>information</u>  [~~complaint~~]  referred  does  not  warrant  an

13  investigation.

14      SECTION 2.05.  Subchapter A, Chapter 31, Election Code, is

15  amended by adding Section 31.019 to read as follows:

16      <u>Sec. 31.019.  ENFORCEMENT  OF  VOTER  ROLL  MAINTENANCE</u>

17  <u>PROVISIONS.   (a)  In order  to  ensure  compliance  with  voter  roll</u>

18  <u>maintenance provisions, the secretary of state shall monitor each</u>

19  <u>county's list of registered voters to ensure that no county has a</u>

20  <u>number of registered voters in the county equal to or greater than</u>

21  <u>the number of people eligible to register to vote in the county.</u>

22      <u>(b)  If the secretary of state determines that a county has a</u>

23  <u>number of registered voters equal to or greater than the number of</u>

24  <u>people eligible to register to vote in the county, the secretary of</u>

25  <u>state shall notify the appropriate registrar in writing.</u>

26      <u>(c)  Not later than 30 days after receiving notice under</u>

27  <u>Subsection (b), a registrar must:</u>

S.B. No. 7

1  (1)  refute, in writing, that the number of registered
2  voters is equal to or greater than the number of people eligible to
3  register to vote in the county and the failure to comply alleged by
4  the notice; or
5  (2)  develop a remediation plan to address failures to
6  comply with voter roll maintenance provisions and send a copy of the
7  plan to the secretary of state.
8  (d)  If a voter registrar fails to respond to a notice under
9  Subsection (c), refutes an allegation under Subsection (c)(1), or
10 fails to comply with a provision of the remediation plan developed
11 by the registrar under Subsection (c)(2), the secretary of state
12 shall:
13 (1)  require the registrar to attend a training course
14 developed under Subsection (h);
15 (2)  publish notice that the county is undergoing an
16 audit under this subsection on the secretary of state's Internet
17 website;
18 (3)  audit the voter registration list for the county
19 in which the registrar serves; and
20 (4)  identify voter roll maintenance provisions with
21 which the registrar is failing to comply and provide a list to the
22 registrar.
23 (e)  If the secretary of state determines that a voter
24 registrar has not performed any overt actions in pursuance of
25 compliance with the provisions identified under Subsection (d)(4)
26 within 14 days of receiving the list under Subsection (d)(4), the
27 secretary of state shall:

87R30396 TSS/ADM-D                6

S.B. No. 7

1        (1)  withhold distribution of state funds for financing

2  voter registration to the county until the registrar takes action

3  in pursuance of compliance; and

4        (2)  inform the attorney general that the county which

5  the registrar serves may be subject to a civil penalty under

6  Subsection (f).

7      (f)  A county is liable to this state for a civil penalty of

8  $1,000 for each day after the 14th day following the receipt of a

9  list under Subsection (d)(4) that the county's voter registrar

10  fails to take overt action to comply with provisions identified

11  under that subsection. The attorney general may bring an action to

12  recover a civil penalty imposed under this section.

13      (g)  A civil penalty collected by the attorney general under

14  this section shall be deposited in the state treasury to the credit

15  of the general revenue fund.

16      (h)  The secretary of state shall develop and implement a

17  three-hour training course for county clerks and registrars on the

18  maintenance of voter rolls required and permitted by law.

19      (i)  The secretary of state shall adopt rules and prescribe

20  procedures for the implementation of this section.

21        ARTICLE 3. CONDUCT AND SECURITY OF ELECTIONS

22        SECTION 3.01.  Section 2.053(a), Election Code, is amended

23  to read as follows:

24      (a)  On receipt of the certification, the governing body of

25  the political subdivision by order or ordinance shall [may] declare

26  each unopposed candidate elected to the office. If no election is to

27  be held on election day by the political subdivision, a copy of the

S.B. No. 7

1  order or ordinance shall be posted on election day at each polling

2  place used or that would have been used in the election.

3      SECTION 3.02.  Section 2.056(c), Election Code, is amended

4  to read as follows:

5      (c)  A certifying authority shall [may] declare a candidate

6  elected to an office of the state or county government if, were the

7  election held, only the votes cast for that candidate in the

8  election for that office may be counted.

9      SECTION 3.03.  Section 43.031(b), Election Code, is amended

10  to read as follows:

11      (b)  Each polling place shall be located inside a building.

12  A polling place may not be located in a tent or similar temporary

13  moveable structure or in a facility primarily designed for motor

14  vehicles.  No voter may cast a vote from inside a motor vehicle

15  unless the voter meets the requirements of Section 64.009.

16      SECTION 3.04.  Section 52.092(a), Election Code, is amended

17  to read as follows:

18      (a)  Except as provided by Section 2.053(c) or 2.056(e), for

19  [For] an election at which offices regularly filled at the general

20  election for state and county officers are to appear on the ballot,

21  the offices shall be listed in the following order:

22          (1)  offices of the federal government;

23          (2)  offices of the state government:

24              (A)  statewide offices;

25              (B)  district offices;

26          (3)  offices of the county government:

27              (A)  county offices;

S.B. No. 7

1        (B) precinct offices.

2    SECTION 3.05.  Section 64.007(c), Election Code, is amended

3 to read as follows:

4        (c)  An election officer shall maintain a register of spoiled

5 ballots at the polling place, including spoiled ballots from a

6 direct recording electronic voting unit.  An election officer shall

7 enter on the register the name of each voter who returns a spoiled

8 ballot and the spoiled ballot's number.  The secretary of state

9 shall create and promulgate a form to be used for this purpose.

10    SECTION 3.06.  Subchapter A, Chapter 65, Election Code, is

11 amended by adding Section 65.016 to read as follows:

12    Sec. 65.016.  VOTE TABULATING EQUIPMENT.  Beginning January

13 1, 2024, equipment to tabulate votes may not be used if any wireless

14 connectivity capability of the equipment has not been disabled or

15 removed.

16    SECTION 3.07.  Subchapter A, Chapter 66, Election Code, is

17 amended by adding Section 66.004 to read as follows:

18    Sec. 66.004.  CLOSING POLLING PLACE.  The secretary of state

19 shall adopt rules and create a checklist or similar guidelines to

20 assist the presiding judge of a polling place in processing forms

21 and conducting procedures required by this code at the closing of

22 the polling place.

23    SECTION 3.08.  Section 66.052, Election Code, is amended to

24 read as follows:

25    Sec. 66.052.  DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY.

26 (a)  A delivery of election records or supplies that is to be

27 performed by the presiding judge may be performed by an election

S.B. No. 7

1  clerk designated by the presiding judge.

2      (b)  If the presiding judge of a polling place designates a

3  clerk to deliver election supplies, the presiding judge shall

4  attest to the designation, and the clerk shall attest to the clerk's

5  acceptance of the responsibility.  The secretary of state shall

6  create and promulgate a form to facilitate compliance with this

7  section.

8      SECTION 3.09.  Section 85.005, Election Code, is amended to

9  read as follows:

10     Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING. (a) Except

11  as provided by Subsection (c), in an election in which a county

12  clerk [or city secretary] is the early voting clerk under Section

13  83.002 [or 83.005], early voting by personal appearance at the main

14  early voting polling place shall be conducted on each weekday of

15  [the weekdays of] the early voting period that is not a legal state

16  holiday and for a period of at least nine hours, except that voting

17  may not be conducted earlier than 6 a.m. or later than 9 p.m.

18  [during the hours that the county clerk's or city secretary's main

19  business office is regularly open for business.]

20     (b)  In an election to which Subsection (a) does not apply,

21  early voting by personal appearance at the main early voting

22  polling place shall be conducted at least nine [eight] hours each

23  weekday of the early voting period that is not a legal state holiday

24  unless the territory covered by the election has fewer than 1,000

25  registered voters.  In that case, the voting shall be conducted at

26  least four [three] hours each day.  The authority ordering the

27  election, or the county clerk if that person is the early voting

S.B. No. 7

1  clerk, shall determine which hours the voting is to be conducted.

2      (c)  In a county with a population of 30,000 [100,000] or

3  more, the voting in a primary election or the general election for

4  state and county officers shall be conducted at the main early

5  voting polling place for at least 12 hours on each weekday of the

6  last week of the early voting period, and the voting in a special

7  election ordered by the governor shall be conducted at the main

8  early voting polling place for at least 12 hours on each of the last

9  two days of the early voting period.  Voting under this subsection

10  may not be conducted earlier than 6 a.m. or later than 9 p.m. Voting

11  shall be conducted in accordance with this subsection in those

12  elections in a county with a population under 30,000 [100,000] on

13  receipt by the early voting clerk of a written request for the

14  extended hours submitted by at least 15 registered voters of the

15  county.  The request must be submitted in time to enable compliance

16  with Section 85.067.

17      (d)  A voter who has not voted before the scheduled time for

18  closing a polling place is entitled to vote after that time if the

19  voter is in line at the polling place by closing time. The secretary

20  of state shall promulgate any materials and provide any training to

21  presiding judges necessary to properly process voters under this

22  subsection [In an election ordered by a city, early voting by

23  personal appearance at the main early voting polling place shall be

24  conducted for at least 12 hours:

25          [(1)  on one weekday, if the early voting period

26  consists of less than six weekdays; or

27          [(2)  on two weekdays, if the early voting period

87R30396 TSS/ADM-D          11

S.B. No. 7

1  ~~consists of six or more weekdays~~].

2      SECTION 3.10.  Sections 85.006(b) and (e), Election Code,

3  are amended to read as follows:

4      (b)  In an election in which a county clerk [~~or city~~

5  ~~secretary~~] is the early voting clerk under Section 83.002 [~~or~~

6  ~~83.005~~], only the early voting clerk may order voting on a Saturday

7  or Sunday. The clerk must do so by written order.

8      (e)  In a primary election or the general election for state

9  and county officers in a county with a population of <u>30,000</u>

10 [~~100,000~~] or more, the early voting clerk shall order <u>voting by</u>

11 <u>personal appearance</u> [~~voting~~] at the main early voting polling place

12 to be conducted <u>on the last Saturday of the early voting period</u> for

13 at least 12 hours<u>, except that voting may not be conducted earlier</u>

14 <u>than 6 a.m. or later than 9 p.m.,</u> [~~on the last Saturday~~] and <u>on the</u>

15 <u>last Sunday of the early voting period</u> for at least <u>six</u> [~~five~~]

16 hours<u>, except that voting may not be conducted earlier than 1 p.m.</u>

17 <u>or later than 9 p.m</u> [~~on the last Sunday of the early voting period~~].

18 The early voting clerk shall order voting to be conducted at those

19 times in those elections in a county with a population under <u>30,000</u>

20 [~~100,000~~] on receipt of a written request for those hours submitted

21 by at least 15 registered voters of the county. The request must be

22 submitted in time to enable compliance with Section 85.007. This

23 subsection supersedes any provision of this subchapter to the

24 extent of any conflict.

25      SECTION 3.11.  Section 85.010(a-1), Election Code, is

26 amended to read as follows:

27      (a-1)  In this section, "eligible county polling place"

S.B. No. 7

1  means an early voting polling place[~~, other than a polling place~~
2  ~~established under Section 85.062(e),~~] established by a county.

3      SECTION 3.12.  Section 85.061(a), Election Code, is amended
4  to read as follows:

5      (a)  In a countywide election in which the county clerk is
6  the early voting clerk under Section 83.002, an early voting
7  polling place shall be located <u>inside</u> [~~at~~] each branch office that
8  is regularly maintained for conducting general clerical functions
9  of the county clerk, except as provided by Subsection (b).  <u>If a</u>
10 <u>suitable room is unavailable inside the branch office, the polling</u>
11 <u>place may be located in another room inside the same building as the</u>
12 <u>branch office.  The polling place may not be located in a tent or</u>
13 <u>similar temporary movable structure or a parking garage, parking</u>
14 <u>lot, or similar facility designed primarily for motor vehicles.</u>

15     SECTION 3.13.  Section 85.062, Election Code, is amended by
16 amending Subsection (b) and adding Subsection (f-1) to read as
17 follows:

18     (b)  A polling place established under this section may be
19 located, subject to Subsection (d), at any place in the territory
20 served by the early voting clerk and may be located <u>inside</u> [~~in~~] any
21 <u>building</u> [~~stationary structure~~] as directed by the authority
22 establishing the branch office.  The polling place may <u>not</u> be
23 located in a <u>tent or similar temporary</u> movable structure <u>or a</u>
24 <u>parking garage, parking lot, or similar facility designed primarily</u>
25 <u>for motor vehicles</u> in the general election for state and county
26 officers, general primary election, or runoff primary election.
27 Ropes or other suitable objects may be used at the polling place to

S.B. No. 7

1  ensure  compliance  with  Section  62.004.    Persons  who  are  not

2  expressly  permitted  by  law  to  be  in  a  polling  place  shall  be

3  excluded from the polling place to the extent practicable.

4      (f-1)  Notwithstanding  any  other  provision  of  this  section

5  concerning the location of temporary branch polling places, in an

6  election  in  which  countywide  polling  places  are  used,  the

7  commissioners court of a county shall employ the same methodology

8  it uses to determine the location of countywide polling places to

9  determine the location of temporary branch polling places.

10     SECTION 3.14.  Section 124.002, Election Code, is amended by

11  adding Subsection (c) to read as follows:

12     (c)  Voting system ballots may not be arranged in a manner

13  that allows a political party's candidates to be selected in one

14  motion or gesture.

15     SECTION 3.15.  Section 127.1232, Election Code, is amended

16  to read as follows:

17     Sec. 127.1232.  SECURITY OF VOTED BALLOTS.  (a)  The general

18  custodian of election records shall post a licensed peace officer

19  [guard] to ensure the security of ballot boxes containing voted

20  ballots throughout the period of tabulation at the central counting

21  station.

22     (b)  The general custodian of election records in a county

23  with  a  population  of  less  than  100,000  may,  and  the  general

24  custodian  of  election  records  in  a  county  with  a  population  of

25  100,000 or more shall, implement a video surveillance system that

26  retains a record of all areas containing voted ballots:

27         (1)  from the time the voted ballots are delivered to

87R30396 TSS/ADM-D          14

S.B. No. 7

1   the central counting station until the canvass of precinct election

2   returns; and

3           (2)  from the time the voted ballots are delivered to

4   the signature verification committee or early voting ballot board

5   until the canvass of precinct election returns.

6      (c)  A video from a system implemented under Subsection (b)

7   may be made available to the public by a livestream in a county with

8   a population of less than 100,000, and shall be made available to

9   the public by a livestream in a county with a population of 100,000

10   or more.

11      (d)  The video recorded is an election record under Section

12   1.012 and shall be retained by the general custodian of election

13   records until the end of the calendar year in which an election is

14   held or until an election contest filed in the county has been

15   resolved, whichever is later.

16           ARTICLE 4. ELECTION OFFICERS AND OBSERVERS

17      SECTION 4.01.  Subchapter A, Chapter 33, Election Code, is

18   amended by adding Section 33.0015 to read as follows:

19      Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.  The

20   purpose of this chapter is to preserve the integrity of elections in

21   accordance with Section 4, Article VI, Texas Constitution, by

22   providing for the appointment of watchers. To effect that purpose,

23   a watcher appointed under this chapter shall observe without

24   obstructing the conduct of an election and call to the attention of

25   an election officer any observed or suspected irregularity or

26   violation of law in the conduct of the election.

27      SECTION 4.02.  Section 33.051, Election Code, is amended by

S.B. No. 7

1  adding Subsections (g) and (h) to read as follows:

2      (g)  An election officer commits an offense if the officer

3  intentionally or knowingly refuses to accept a watcher for service

4  when acceptance of the watcher is required by this section.   An

5  offense under this subsection is a Class B misdemeanor.

6      (h)  Before accepting a watcher, the officer presented with a

7  watcher's certificate of appointment shall require the watcher to

8  take the following oath, administered by the officer: "I swear (or

9  affirm) that I will not disrupt the voting process or harass voters

10 in the discharge of my duties."

11     SECTION 4.03.  Section 33.056, Election Code, is amended by

12 amending Subsection (a) and adding Subsections (e) and (f) to read

13 as follows:

14     (a)  Except as provided by Section 33.057, a watcher is

15 entitled to observe any activity conducted at the location at which

16 the watcher is serving.  A watcher is entitled to sit or stand

17 [conveniently] near enough to see and hear the election officers

18 conducting the observed activity, except as otherwise prohibited by

19 this chapter.

20     (e)  Except as provided by Section 33.057(b), a watcher may

21 not be denied free movement where election activity is occurring

22 within the location at which the watcher is serving.

23     (f)  In this code, a watcher who is entitled to "observe" an

24 election activity is entitled to sit or stand near enough to see and

25 hear the activity.

26     SECTION 4.04.  Subchapter C, Chapter 33, Election Code, is

27 amended by adding Section 33.0605 to read as follows:

1      Sec. 33.0605.  OBSERVING DATA STORAGE SEALING AND TRANSFER.

2  (a) A watcher appointed to serve at a polling place in an election

3  who is available at the time of the action may observe all election

4  activities relating to closing the polling place, including the

5  sealing and transfer of a memory card, flash drive, hard drive, data

6  storage device, or other medium now existing or later developed

7  used by the voting system equipment.

8      (b)  Notwithstanding any other provision of this code, a

9  watcher duly accepted for service at a polling location is entitled

10  to follow the transfer of election materials from the polling place

11  at which the watcher was accepted to a regional tabulating center,

12  the central counting station, or any other location designated to

13  process  election  materials.  The  authority  responsible  for

14  administering a regional tabulating center or another location

15  where election materials are processed must accept duly appointed

16  watchers for service in the same manner a watcher is accepted for

17  service under Section 33.051 and must accept the same number of

18  watchers that may serve under Section 33.007(a).

19      SECTION 4.05.  Section 33.061(a), Election Code, is amended

20  to read as follows:

21      (a)  A person commits an offense if the person serves in an

22  official capacity at a location at which the presence of watchers is

23  authorized  and  knowingly  prevents  a  watcher  from  observing  an

24  activity or procedure the person knows the watcher is entitled to

25  observe, including by taking any action to obstruct the view of a

26  watcher or distance the watcher from the activity or procedure to be

27  observed  in  a  manner  that  would  make  observation  not  reasonably

S.B. No. 7

1  effective.

2        SECTION 4.06.  Subchapter C, Chapter 33, Election Code, is

3  amended by adding Section 33.063 to read as follows:

4        Sec. 33.063.  RELIEF.  (a)  A watcher, or the appointing

5  authority for a watcher, who believes that the watcher was

6  unlawfully prevented or obstructed from the performance of the

7  watcher's duties may seek:

8              (1)  injunctive  relief  under  Section  273.081,

9  including issuance of temporary orders;

10             (2)  a  writ  of  mandamus  under  Section  161.009  or

11  273.061; and

12             (3)  any other remedy available under law.

13       (b)  The relief provided by this section is available to a

14  state inspector appointed under Chapter 34 or any other election

15  inspector authorized by law.

16       SECTION 4.07.  Section 61.001, Election Code, is amended by

17  amending Subsection (a) and adding Subsection (a-1) to read as

18  follows:

19       (a)  Except as permitted by this code and as described by

20  Subsection (a-1), a person may not be in the polling place from the

21  time the presiding judge arrives there on election day to make the

22  preliminary arrangements until the precinct returns have been

23  certified and the election records have been assembled for

24  distribution following the election.

25       (a-1)  Under this code, a person may be lawfully present in a

26  polling place during the time described by Subsection (a) if the

27  person is:

S.B. No. 7

1          (1)   an election judge or clerk;

2          (2)   a watcher;

3          (3)   the secretary of state;

4          (4)   a staff member of the Elections Division of the

5     Office of the Secretary of State performing an official duty in

6     accordance with this code;

7          (5)   an election official, a sheriff, or a staff member

8     of an election official or sheriff delivering election supplies;

9          (6)   a state inspector;

10         (7)   a person admitted to vote;

11         (8)   a child under 18 years of age who is accompanying a

12    parent who has been admitted to vote;

13         (9)   a person providing assistance to a voter under

14    Section 61.032 or 64.032;

15         (10)   a person accompanying a voter who has a

16    disability;

17         (11)   a special peace officer appointed by the

18    presiding judge under Section 32.075;

19         (12)   the county chair of a political party conducting

20    a primary election, as authorized by Section 172.1113;

21         (13)   a voting system technician, as authorized by

22    Section 125.010;

23         (14)   the county election officer, as defined by

24    Section 31.091, as necessary to perform tasks related to the

25    administration of the election; or

26         (15)   a person whose presence has been authorized by

27    the presiding judge and alternate presiding judge in accordance

S.B. No. 7

1  with this code.

2      SECTION 4.08.  Section 86.006, Election Code, is amended by

3  amending Subsection (a) and adding Subsection (a-2) to read as

4  follows:

5      (a)  A marked ballot voted under this chapter must be

6  returned to the early voting clerk in the official carrier

7  envelope.  The carrier envelope may be delivered in another

8  envelope and must be transported and delivered only by:

9          (1)  mail;

10         (2)  common or contract carrier; or

11         (3)  subject to Subsections [Subsection] (a-1) and

12  (a-2), in-person delivery by the voter who voted the ballot.

13     (a-2)  An in-person delivery of a marked ballot voted under

14  this chapter must be received by an election official at the time of

15  delivery.  The receiving official shall record the voter's name,

16  signature, and type of identification provided under Section

17  63.0101 on a roster prescribed by the secretary of state.  The

18  receiving official shall attest on the roster that the delivery

19  complies with this section.

20     SECTION 4.09.  Section 87.026, Election Code, is amended to

21  read as follows:

22     Sec. 87.026.  BYSTANDERS EXCLUDED. (a) Except as permitted

23  by this code and as described by Subsection (b), a person may not be

24  in the meeting place of an early voting ballot board during the time

25  of the board's operations.

26     (b)  Under this code, a person may be lawfully present in the

27  meeting place of an early voting ballot board during the time of the

S.B. No. 7

1   board's operations if the person is:

2              (1)   a presiding judge or member of the board;

3              (2)   a watcher;

4              (3)   a voting system technician, as authorized by

5   Section 125.010;

6              (4)   the county election officer, as defined by Section

7   31.091, as necessary to perform tasks related to the administration

8   of the election;

9              (5)   the county chair of a political party conducting a

10  primary election or runoff primary election;

11             (6)   an inspector, as provided for by law; or

12             (7)   a person whose presence has been authorized by the

13  presiding judge in accordance with this code.

14        SECTION 4.10.   Subchapter A, Chapter 127, Election Code, is

15  amended by adding Section 127.008 to read as follows:

16        Sec. 127.008.   BYSTANDERS EXCLUDED.  (a) Except as permitted

17  by this code and as described by Subsection (b), a person may not be

18  in a central counting station while ballots are being counted.

19        (b)   Under this code, a person may be lawfully present in the

20  central counting station while ballots are being counted if the

21  person is:

22             (1)   a   counting   station   manager,   tabulation

23  supervisor,  assistant  to  the  tabulation  supervisor,  presiding

24  judge, or clerk;

25             (2)   a watcher;

26             (3)   a voting system technician, as authorized by

27  Section 125.010;

S.B. No. 7

1    (4)  the county election officer, as defined by Section
2  31.091, as necessary to perform tasks related to the administration
3  of the election;

4    (5)  an inspector, as provided for by law; or

5    (6)  a person whose presence has been authorized by the
6  presiding judge of the central counting station in accordance with
7  this code.

8    SECTION 4.11.  Chapter 121, Election Code, is amended by
9  adding Section 121.004 to read as follows:

10   Sec. 121.004.  COMMUNICATIONS  WITH  VOTING  SYSTEMS  VENDOR
11  PUBLIC INFORMATION.  (a)  Except as provided by Subsection (b) and
12  notwithstanding any other law, including Chapter 552, Government
13  Code, a written letter, e-mail, or other communication, including a
14  communication made confidential by other law, between a public
15  official and a voting systems vendor:

16   (1)  is not confidential;

17   (2)  is public information for purposes of Chapter 552,
18  Government Code; and

19   (3)  is not subject to an exception to disclosure
20  provided by Chapter 552, Government Code.

21   (b)  Subsection (a) does not apply to a written letter,
22  e-mail, or other communication related to the bidding process.

23   SECTION 4.12.  Subchapter A, Chapter 127, Election Code, is
24  amended by adding Section 127.009 to read as follows:

25   Sec. 127.009.  ELECTRONIC  DEVICES  IN  CENTRAL  COUNTING
26  STATION.  (a)  A counting station manager and the presiding judge of
27  the counting station shall develop a protocol under which any

S.B. No. 7

1  electronic device inside a central counting station that is
2  necessary to count votes is equipped with software that tracks all
3  input and activity on the electronic device.

4          (b)  The counting station manager and the presiding judge of
5  the counting station shall ensure that the input and activity
6  tracked by the software is printed and delivered to the secretary of
7  state not later than the fifth day after vote counting is complete.

8          (c)  This section applies only to a central counting station
9  located in a county with a population of 250,000 or more.

10         SECTION 4.13.  Section 127.1301, Election Code, is amended
11  to read as follows:

12         Sec. 127.1301.  [~~TALLYING, TABULATING, AND REPORTING~~]
13  CENTRALLY COUNTED OPTICAL SCAN BALLOTS [~~BALLOT UNDERVOTES AND~~
14  ~~OVERVOTES~~].  (a)  In an election using centrally counted optical
15  scan ballots, the undervotes and overvotes on those ballots shall
16  be tallied, tabulated, and reported by race and by election
17  precinct in the form and manner prescribed by the secretary of
18  state.

19         (b)  After January 1, 2024, an authority operating a central
20  counting station under this chapter may not purchase or use a
21  centrally counted optical ballot scan system that uses a data
22  storage disc on which information, once written, is capable of
23  being modified.

24         SECTION 4.14.  Subchapter A, Chapter 129, Election Code, is
25  amended by adding Section 129.003 to read as follows:

26         Sec. 129.003.  PAPER AUDIT TRAIL REQUIRED.  (a)  In this
27  section, "auditable voting system" means a voting system that:

S.B. No. 7

1        (1)  uses a paper record; or

2        (2)  produces a paper record by which a voter can verify

3 that the voter's ballot will be counted accurately.

4    (b)  Except as provided by Subsection (e), a voting system

5 that consists of direct recording electronic voting machines may

6 not be used in an election unless the system is an auditable voting

7 system.

8    (c)  Except for a recount under Title 13 or an election

9 contest under Title 14, the electronic vote is the official record

10 of the ballot.  For a recount of ballots cast on a system involving

11 direct recording electronic voting machines, or in an election

12 contest, the person requesting the recount may request a recount of

13 the electronic vote or the paper record.

14    (d)  An authority that purchased a voting system other than

15 an auditable voting system after September 1, 2016, and before

16 September 1, 2021, may use available federal funding and, if

17 federal funding is not available, available state funding to

18 retrofit the purchased voting system as an auditable voting system

19 in accordance with the following schedule:

20        (1)  if the voting system was retrofitted as an

21 auditable voting system not later than the election taking place

22 November 8, 2022, the authority is eligible to have 100 percent of

23 the cost of retrofitting reimbursed under this section; and

24        (2)  if the authority is not eligible for a 100 percent

25 reimbursement of cost under Subdivision (1) and the voting system

26 was retrofitted as an auditable voting system not later than the

27 election taking place November 3, 2026, the authority is eligible

S.B. No. 7

1  to have 50 percent of the cost of retrofitting reimbursed under this

2  section.

3      (e)  Subsections (a)-(c) do not apply to an election held

4  before September 1, 2026.

5      (f)  Before opening the polls for voting, the presiding

6  election judge shall confirm that each voting machine has any

7  public counter reset to zero and shall print the tape that shows the

8  counter was set to zero.  After closing the polls for voting, the

9  presiding election judge shall print the tape that shows the number

10  of votes cast.  Each election judge present shall sign a tape

11  printed under this subsection.

12      SECTION 4.15.  Section 129.023, Election Code, is amended by

13  adding Subsections (b-2) and (c-1) to read as follows:

14      (b-2)  If the test is being conducted for an election in

15  which a county election board has been established under Section

16  51.002, the general custodian of election records shall notify each

17  member of the board of the test at least 48 hours before the date of

18  the test.  If the county election board chooses to witness the test,

19  each member shall sign the statement required by Subsection (e)(1).

20      (c-1)  A test conducted under this section must also require

21  the general custodian of election records to demonstrate, using a

22  representative sample of voting system equipment, that the source

23  code of the equipment has not been altered.

24      SECTION 4.16.  Section 127.131, Election Code, is amended by

25  adding Subsection (f) to read as follows:

26      (f)  The presiding judge of the central counting station

27  shall provide and attest to a written reconciliation of votes and

S.B. No. 7

1  voters at the close of tabulation for election day and again after

2  the central counting station meets for the last time to process

3  late-arriving ballots by mail and provisional ballots. The

4  secretary of state shall create and promulgate rules and a form to

5  facilitate compliance with this subsection.  The form shall be

6  posted on a website maintained by the county along with election

7  returns and results.

8              ARTICLE 5. VOTING BY MAIL

9      SECTION 5.01.  Section 82.002, Election Code, is amended to

10 read as follows:

11     Sec. 82.002.  DISABILITY. (a) A qualified voter is eligible

12 for early voting by mail if the voter is not capable of [has a

13 sickness or physical condition that prevents the voter from]

14 appearing at the polling place on election day without [a

15 likelihood of] needing personal assistance or [of] injuring the

16 voter's health due to the voter's:

17           (1)  illness;

18           (2)  injury;

19           (3)  medical confinement ordered by a health care

20 professional; or

21           (4)  mental or physical disability.

22     (b)  The following do not constitute [Expected or likely

23 confinement for childbirth on election day is] sufficient cause to

24 entitle a voter to vote under Subsection (a):

25           (1)  a lack of transportation;

26           (2)  an illness, injury, or disability that does not

27 prevent the voter from appearing at the polling place on election

S.B. No. 7

1  day without a likelihood of needing personal assistance or of

2  injuring the voter's health; or

3        (3)  a requirement to appear at the voter's place of

4  employment on election day.

5        (c)  An application for a ballot to be voted by mail on the

6  ground of disability must require the applicant to specifically

7  select the grounds on which the voter is eligible under Subsection

8  (a).

9        SECTION 5.02.  Section 84.001(b), Election Code, is amended

10  to read as follows:

11        (b)  An application must be submitted in writing and signed

12  by the applicant using ink on paper. An electronic signature or

13  photocopied signature is not permitted.

14        SECTION 5.03.  Section 84.002, Election Code, is amended by

15  amending Subsection (a) and adding Subsection (c) to read as

16  follows:

17        (a)  An early voting ballot application must include:

18              (1)  the applicant's name and the address at which the

19  applicant is registered to vote;

20              (1-a)  the following information:

21                    (A)  the number of the applicant's driver's

22  license or personal identification card issued by the Department of

23  Public Safety;

24                    (B)  if the applicant has not been issued a number

25  described by Paragraph (A), the last four digits of the applicant's

26  social security number; or

27                    (C)  a statement by the applicant that the

S.B. No. 7

1   applicant has not been issued a number described by Paragraph (A) or

2   (B);

3          (2)  for an application for a ballot to be voted by mail

4   on the ground of absence from the county of residence, the address

5   outside the applicant's county of residence to which the ballot is

6   to be mailed;

7          (3)  for an application for a ballot to be voted by mail

8   on the ground of age or disability:

9              (A)  [,] the address of the hospital, nursing home

10  or other long-term care facility, or retirement center, or of a

11  person related to the applicant within the second degree by

12  affinity or the third degree by consanguinity, as determined under

13  Chapter 573, Government Code, if the applicant is living at that

14  address and that address is different from the address at which the

15  applicant is registered to vote; and

16             (B)  if applicable, the selected specific grounds

17  on which the voter is eligible for a ballot to be voted by mail on

18  the ground of disability, as required by Section 82.002(c);

19         (4)  for an application for a ballot to be voted by mail

20  on the ground of confinement in jail, the address of the jail or of a

21  person related to the applicant within the degree described by

22  Subdivision (3);

23         (5)  for an application for a ballot to be voted by mail

24  on any ground, an indication of each election for which the

25  applicant is applying for a ballot; and

26         (6)  an indication of the ground of eligibility for

27  early voting.

1   (c)  A person may use the number of a driver's license or

2   personal identification card that has expired for the purpose of

3   fulfilling the requirement under Subsection (a)(1-a) if the license

4   or identification is otherwise valid.

5        SECTION 5.04.  Section 84.011(a), Election Code, is amended

6   to read as follows:

7        (a)  The officially prescribed application form for an early

8   voting ballot must include:

9             (1)  immediately  preceding  the  signature  space  the

10   statement:  "I   certify   that   the   information   given   in   this

11   application is true, and I understand that giving false information

12   in this application is a crime.";

13            (2)  a   statement   informing   the   applicant   of   the

14   offenses prescribed by Sections 84.003 and 84.004;

15            (3)  spaces   for   entering   an   applicant's   voter

16   registration number and county election precinct of registration,

17   with a statement informing the applicant that failure to furnish

18   that information does not invalidate the application;

19            (3-a)  a space for entering the information required

20   under Section 84.002(a)(1-a); and

21            (4)  on an application for a ballot to be voted by mail:

22            (A)  a  space  for  an  applicant  applying  on  the

23   ground of absence from the county of residence to indicate the date

24   on or after which the applicant can receive mail at the address

25   outside the county;

26            (B)  a  space  for  indicating  the  fact  that  an

27   applicant whose application is signed by a witness cannot make the

S.B. No. 7

1  applicant's mark and a space for indicating the relationship or

2  lack of relationship of the witness to the applicant;

3             (C)  a space for entering an applicant's telephone

4  number, with a statement informing the applicant that failure to

5  furnish that information does not invalidate the application;

6             (D)  a space or box for an applicant applying on

7  the ground of age or disability to indicate that the address to

8  which the ballot is to be mailed is the address of a facility or

9  relative described by Section 84.002(a)(3), if applicable;

10            (E)  a space or box for an applicant applying on

11  the ground of confinement in jail to indicate that the address to

12  which the ballot is to be mailed is the address of a relative

13  described by Section 84.002(a)(4), if applicable;

14            (F)  a space for an applicant applying on the

15  ground of age or disability to indicate if the application is an

16  application under Section 86.0015;

17            (G)  spaces for entering the signature, printed

18  name, and residence address of any person assisting the applicant;

19            (H)  a statement informing the applicant of the

20  condition prescribed by Section 81.005; and

21            (I)  a statement informing the applicant of the

22  requirement prescribed by Section 86.003(c).

23     SECTION 5.05.  Section 84.035, Election Code, is amended to

24  read as follows:

25     Sec. 84.035.  BALLOT SENT TO APPLICANT.  (a)  If the early

26  voting clerk cancels an application by an applicant to whom an early

27  voting ballot has been sent, the clerk shall:

S.B. No. 7

1          (1)  remove the applicant's name from the early voting

2  roster; and

3          (2)  make any other entries in the records and take any

4  other action necessary to prevent the ballot from being counted if

5  returned.

6      (b)  An election judge may permit a person to whom an early

7  voting ballot has been sent who cancels the person's application

8  for a ballot to be voted by mail in accordance with Section 84.032

9  but fails to return the ballot to be voted by mail to the early

10  voting clerk, deputy early voting clerk, or presiding judge as

11  provided by that section to vote only a provisional ballot under

12  Section 63.011.

13      SECTION 5.06.  Section 86.001, Election Code, is amended by

14  adding Subsection (f) to read as follows:

15      (f)  If   the   information   required   under   Section

16  84.002(a)(1-a)  included  on  the  application  does  not  match  the

17  information on the applicant's application for voter registration

18  under Section 13.002(c)(8), the clerk shall reject the application.

19      SECTION 5.07.  Section 86.002, Election Code, is amended by

20  adding Subsections (g), (h), and (i) to read as follows:

21      (g)  The carrier envelope must include a space that is hidden

22  from view when the envelope is sealed for the voter to enter the

23  following information:

24          (1)  the  number  of  the  voter's  driver's  license  or

25  personal identification card issued by the Department of Public

26  Safety;

27          (2)  if the voter has not been issued a number described

S.B. No. 7

1   by Subdivision (1), the last four digits of the voter's social

2   security number; or

3           (3)  a statement by the applicant that the applicant

4   has not been issued a number described by Subdivision (1) or (2).

5       (h)  A person may use the number of a driver's license or

6   personal identification card that has expired for purposes of

7   Subsection (g) if the license or identification is otherwise valid.

8       (i)  No record associating an individual voter with a ballot

9   may be created.

10      SECTION 5.08.  Section 86.011(c), Election Code, is amended

11  to read as follows:

12      (c)  If the return is not timely, the clerk shall enter the

13  time of receipt on the carrier envelope and retain it in a locked

14  container for the period for preserving the precinct election

15  records.  The clerk shall destroy the unopened envelope and its

16  contents after the preservation period.

17      SECTION 5.09.  Section 87.027(i), Election Code, is amended

18  to read as follows:

19      (i)  The signature verification committee shall compare the

20  signature on each carrier envelope certificate, except those signed

21  for a voter by a witness, with the signature on the voter's ballot

22  application to determine whether the signatures are those of the

23  voter.  The committee may also compare the signatures with any

24  known signature [two or more signatures] of the voter [made within

25  the preceding six years and] on file with the county clerk or voter

26  registrar to determine whether the signatures are those of the

27  voter.  Except as provided by Subsection (1), a determination under

S.B. No. 7

1   this subsection that the signatures are not those of the voter must

2   be made by a majority vote of the committee's membership.   The

3   committee shall place the jacket envelopes, carrier envelopes, and

4   applications of voters whose signatures are not those of the voter

5   in separate containers from those of voters whose signatures are

6   those of the voter.   The committee chair shall deliver the sorted

7   materials to the early voting ballot board at the time specified by

8   the board's presiding judge.

9        SECTION 5.10.   Section 87.041, Election Code, is amended by

10  amending Subsections (b) and (e) and adding Subsection (d-1) to

11  read as follows:

12        (b)   A ballot may be accepted only if:

13             (1)   the carrier   envelope   certificate   is   properly

14  executed;

15             (2)   neither   the   voter's   signature   on   the   ballot

16  application nor the signature on the carrier envelope certificate

17  is determined to have been executed by a person other than the

18  voter, unless signed by a witness;

19             (3)   the   voter's   ballot   application   states   a   legal

20  ground for early voting by mail;

21             (4)   the voter is registered to vote, if registration

22  is required by law;

23             (5)   the address to which the ballot was mailed to the

24  voter, as indicated by the application, was outside the voter's

25  county of residence, if the ground for early voting is absence from

26  the county of residence;

27             (6)   for a voter to whom a statement of residence form

S.B. No. 7

1 was required to be sent under Section 86.002(a), the statement of

2 residence is returned in the carrier envelope and indicates that

3 the voter satisfies the residence requirements prescribed by

4 Section 63.0011; [and]

5        (7)  the address to which the ballot was mailed to the

6 voter is an address that is otherwise required by Sections 84.002

7 and 86.003; and

8        (8)  the information required under Section 86.002(g)

9 provided by the voter matches the information on the voter's

10 application for voter registration under Section 13.002(c)(8).

11     (d-1)  If a voter provides the information required under

12 Section 86.002(g) and it matches the information on the voter's

13 application for voter registration under Section 13.002(c)(8), the

14 signature on the ballot application and on the carrier envelope

15 certificate  shall be rebuttably presumed to be the signatures of

16 the voter.

17     (e)  In making the determination under Subsection (b)(2), to

18 determine whether the signatures are those of the voter, the board:

19        (1)  shall request from the Department of Public Safety

20 any signature of the voter's on file with that department and

21 compare the signatures of the voter on the ballot application and

22 the carrier envelope certificate with any signature provided; and

23        (2)  may also compare the signatures with any known

24 signature [two or more signatures] of the voter [made within the

25 preceding six years and] on file with the county clerk or voter

26 registrar [to determine whether the signatures are those of the

27 voter].

S.B. No. 7

1        SECTION 5.11.   Section 87.0431(b), Election Code, is amended

2   to read as follows:

3        (b)  The early voting clerk shall, not later than the 30th

4   day after election day, deliver notice to the attorney general,

5   including   certified   copies   of   the   carrier   envelope   and

6   corresponding ballot application, of any ballot rejected because:

7              (1)  the voter was deceased;

8              (2)  the voter already voted in person in the same

9   election;

10             (3)  the signatures on the carrier envelope and ballot

11  application were not executed by the same person;

12             (4)  the carrier envelope certificate lacked a witness

13  signature; [or]

14             (5)  the carrier envelope certificate was improperly

15  executed by an assistant; or

16             (6)  the early voting ballot board or the signature

17  verification committee determined that another violation of the

18  Election Code occurred.

19       SECTION 5.12.   Sections 87.062(a) and (c), Election Code,

20  are amended to read as follows:

21       (a)  On the direction of the presiding judge, the early

22  voting ballot board, in accordance with Section 85.032(b), shall

23  open the containers [container] for the early voting ballots that

24  are to be counted by the board, remove the contents from each [the]

25  container, and remove any ballots enclosed in ballot envelopes from

26  their envelopes.

27       (c)  Ballots voted by mail shall be tabulated and stored

87R30396 TSS/ADM-D            35

S.B. No. 7

1    separately from the ballots voted by personal appearance and shall
2    be separately reported on the returns [The results of all early
3    voting ballots counted by the board under this subchapter shall be
4    included in the same return].

5         SECTION 5.13.   Section 87.103, Election Code, is amended to
6    read as follows:

7         Sec. 87.103.   COUNTING BALLOTS AND PREPARING RETURNS.   (a)
8    The early voting electronic system ballots counted at a central
9    counting station, the ballots cast at precinct polling places, and
10   the ballots voted by mail shall be tabulated separately [from the
11   ballots cast at precinct polling places] and shall be separately
12   reported on the returns.

13        (b)   The  early  voting  returns  prepared  at  the  central
14   counting station must include any early voting results obtained by
15   the early voting ballot board under Subchapter [Subchapters] D [and
16   E].

17        SECTION 5.14.   Section 87.126, Election Code, is amended by
18   adding Subsection (a-1) to read as follows:

19        (a-1)  Electronic  records  made  under  this  section  shall
20   record both sides of any application, envelope, or ballot recorded,
21   and all such records shall be provided to the early voting ballot
22   board, the signature verification committee, or both.

23        SECTION 5.15.   Subchapter G, Chapter 87, Election Code, is
24   amended by adding Section 87.128 to read as follows:

25        Sec. 87.128.   NOTES.   Each member of an early voting ballot
26   board  and  each  member  of  a  signature  verification  committee   is
27   entitled to take and keep any notes reasonably necessary to perform

87R30396 TSS/ADM-D              36

S.B. No. 7

1  the member's duties under this chapter.

2                  ARTICLE 6.  ASSISTANCE OF VOTERS

3       SECTION 6.01.  Section 64.009, Election Code, is amended by

4  amending Subsection (b) and adding Subsections (b-1), (e), (f),

5  (f-1), (g), and (h) to read as follows:

6       (b)  The  regular  voting  procedures, except  those  in

7  Subchapter B, may be modified by the election officer to the extent

8  necessary to conduct voting under this section.

9       (b-1)  A person other than a voter is only permitted to be

10  inside a motor vehicle while a voter votes from the motor vehicle if

11  the person would be entitled to accompany the voter to the voting

12  station under other law.

13       (e)  Except as provided by Section 33.057, a poll watcher is

14  entitled to observe any activity conducted under this section.

15       (f)  A person who simultaneously assists three or more voters

16  voting  under  this  section  by  providing  the  voters  with

17  transportation to the polling place must complete and sign a form,

18  provided by an election officer, that contains the person's name

19  and address and whether the person is providing assistance solely

20  under this section or under both this section and Subchapter B.

21       (f-1)  Subsection (f) does not apply if the person is related

22  to each voter within the second degree by affinity or the third

23  degree by consanguinity, as determined under Subchapter B, Chapter

24  573, Government Code.

25       (g)  A form completed under Subsection (f) shall be delivered

26  to the secretary of state as soon as practicable.  The secretary

27  shall retain a form delivered under this section for the period for

S.B. No. 7

1  preserving the precinct election records and shall make the form
2  available to the attorney general for inspection upon request.

3       (h)  The  secretary  of  state  shall  prescribe  the  form
4  described by Subsection (f).

5       SECTION 6.02.  Section 64.031, Election Code, is amended to
6  read as follows:

7       Sec. 64.031.  ELIGIBILITY  FOR  ASSISTANCE.   A  voter  is
8  eligible to receive assistance in marking or reading the ballot, as
9  provided by this subchapter, if the voter cannot prepare or read the
10 ballot because of:

11            (1)  a  physical  disability  that  renders  the  voter
12 unable to write or see; or

13            (2)  an  inability  to  read  the  language  in  which  the
14 ballot is written.

15      SECTION 6.03.  Subchapter B, Chapter 64, Election Code, is
16 amended by adding Section 64.0322 to read as follows:

17      Sec. 64.0322.  SUBMISSION  OF  FORM  BY  ASSISTANT.   (a)  A
18 person, other than an election officer, who assists a voter in
19 accordance  with  this  chapter  is  required  to  complete  a  form
20 stating:

21            (1)  the name and address of the person assisting the
22 voter;

23            (2)  the  relationship  to  the  voter  of  the  person
24 assisting the voter; and

25            (3)  whether the person assisting the voter received or
26 accepted  any  form  of  compensation  or  other  benefit  from  a
27 candidate, campaign, or political committee.

87R30396 TSS/ADM-D            38

S.B. No. 7

1        (b)   The secretary of state shall prescribe the form required

2   by this section. The form must be incorporated into the official

3   carrier envelope if the voter is voting an early voting ballot by

4   mail and receives assistance under Section 86.010, or must be

5   submitted to an election officer at the time the voter casts a

6   ballot if the voter is voting at a polling place or under Section

7   64.009.

8        SECTION 6.04.   Section 64.034, Election Code, is amended to

9   read as follows:

10       Sec. 64.034.   OATH.    A  person, other than an election

11  officer, selected to provide assistance to a voter must take the

12  following oath, administered by an election officer at the polling

13  place, before providing assistance:

14       "I swear (or affirm) under penalty of perjury that the voter I

15  am assisting represented to me they are eligible to receive

16  assistance because of a physical disability that renders the voter

17  unable to write or see or an inability to read the language in which

18  the ballot is written; I will not suggest, by word, sign, or

19  gesture, how the voter should vote; I will confine my assistance to

20  reading the ballot to the voter, directing the voter to read the

21  ballot, marking the voter's ballot, or directing the voter to mark

22  the ballot; [answering the voter's questions, to stating

23  propositions on the ballot, and to naming candidates and, if

24  listed, their political parties,] I will prepare the voter's ballot

25  as the voter directs; I did not encourage, pressure, or coerce the

26  voter into choosing me to provide assistance; [and] I am not the

27  voter's employer, an agent of the voter's employer, or an officer or

87R30396 TSS/ADM-D              39

S.B. No. 7

1   agent of a labor union to which the voter belongs; I will not

2   communicate information about how the voter has voted to another

3   person; and I understand that if assistance is provided to a voter

4   who is not eligible for assistance, the voter's ballot may not be

5   counted."

6       SECTION 6.05.   Sections 86.010(e), (h), and (i), Election

7   Code, are amended to read as follows:

8       (e)   A person who assists a voter to prepare a ballot to be

9   voted by mail shall enter on the official carrier envelope of the

10  voter:

11      (1)   the person's signature, printed name, and

12  residence address;

13      (2)   the relationship of the person providing the

14  assistance to the voter; and

15      (3)   whether the person received or accepted any form

16  of compensation or other benefit from a candidate, campaign, or

17  political committee in exchange for providing assistance [on the

18  official carrier envelope of the voter].

19      (h)   Subsection (f) does not apply to:

20      (1)   a violation of Subsection (c), if the person is

21  related to the voter within the second degree by affinity or the

22  third degree by consanguinity, as determined under Subchapter B,

23  Chapter 573, Government Code, or was physically living in the same

24  dwelling as the voter at the time of the event; or

25      (2)   a violation of Subsection (e), if the person is

26  related to the voter within the second degree by affinity or the

27  third degree by consanguinity, as determined under Subchapter B,

S.B. No. 7

1 Chapter 573, Government Code.

2   (i) An offense under this section for a violation of

3 Subsection (c) is increased to the next higher category of offense

4 if it is shown on the trial of an offense under this section that:

5     (1) the defendant was previously convicted of an

6 offense under this code;

7     (2) the offense involved a voter 65 years of age or

8 older; or

9     (3) the defendant committed another offense under this

10 section in the same election.

11   SECTION 6.06. Sections 86.0105(a), (c), and (e), Election

12 Code, are amended to read as follows:

13   (a) A person commits an offense if the person:

14     (1) compensates or offers to compensate another person

15 for assisting voters as provided by Section 86.010[, as part of any

16 performance-based compensation scheme based on the number of voters

17 assisted or in which another person is presented with a quota of

18 voters to be assisted as provided by Section 86.010]; or

19     (2) solicits, receives, or [engages in another

20 practice that causes another person's compensation from or

21 employment status with the person to be dependent on the number of

22 voters assisted as provided by Section 86.010; or

23     [(3)  with knowledge that accepting compensation for

24 such activity is illegal,] accepts compensation for an activity

25 described by Subdivision (1) [or (2)].

26   (c) An offense under this section is a state jail felony [if

27 it is shown on the trial of an offense under this section that the

S.B. No. 7

1  ~~defendant was previously convicted two or more times under this~~

2  ~~section~~].

3       (e)  For purposes of this section, compensation means <u>an</u>

4  <u>economic benefit as defined by Section 38.01, Penal Code</u> [~~any form~~

5  ~~of monetary payment, goods, services, benefits, or promises or~~

6  ~~offers of employment, or any other form of consideration offered to~~

7  ~~another person in exchange for assisting voters~~].

8       SECTION 6.07.  Section 86.013(b), Election Code, is amended

9  to read as follows:

10      (b)  Spaces must appear on the reverse side of the official

11 carrier envelope for:

12           (1)  indicating the identity and date of the election;

13 [~~and~~]

14           (2)  entering  the  signature,  printed  name,  and

15 residence address of a person other than the voter who deposits the

16 carrier envelope in the mail or with a common or contract carrier<u>;</u>

17 <u>and</u>

18           <u>(3)  indicating the relationship of that person to the</u>

19 <u>voter</u>.

20           ARTICLE 7. FRAUD AND OTHER UNLAWFUL PRACTICES

21      SECTION 7.01.  Chapter  63,  Election  Code,  is  amended  by

22 adding Section 63.0111 to read as follows:

23      <u>Sec. 63.0111.  OFFENSES RELATED TO PROVISIONAL VOTING.  (a)</u>

24 <u>An  election  judge  commits  an  offense  if  the  judge  knowingly</u>

25 <u>provides a voter with a form for an affidavit required by Section</u>

26 <u>63.001 if the form contains information that the judge entered on</u>

27 <u>the form knowing it was false.</u>

S.B. No. 7

1      (b)  An offense under this section is a state jail felony.

2      SECTION 7.02.  Sections 276.004(a) and (b), Election Code,
3 are amended to read as follows:

4      (a)  A person commits an offense if, with respect to another
5 person  over  whom  the  person  has  authority  in  the  scope  of
6 employment, the person knowingly:

7           (1)  refuses to permit the other person to be absent
8 from work on election day or while early voting is in progress for
9 the purpose of attending the polls to vote; or

10          (2)  subjects or threatens to subject the other person
11 to a penalty for attending the polls on election day or while early
12 voting is in progress to vote.

13     (b)  It is an exception to the application of this section
14 that the person's conduct occurs in connection with an election in
15 which the polls are open on election day or while early voting is in
16 progress  for  voting  for  two  consecutive  hours  outside  of  the
17 voter's working hours.

18     SECTION 7.03.  Sections 276.013(a) and (b), Election Code,
19 are amended to read as follows:

20     (a)  A person commits an offense if the person knowingly or
21 intentionally makes any effort to:

22          (1)  influence the independent exercise of the vote of
23 another in the presence of the ballot or during the voting process,
24 including by altering the ballot of another or by otherwise causing
25 a ballot to not reflect the intent of the voter;

26          (2)  cause a voter to become registered, a ballot to be
27 obtained, or a vote to be cast under false pretenses; [or]

S.B. No. 7

1          (3)  count votes that are invalid, or should otherwise

2  not be counted, fail to count votes that were lawfully cast, or

3  alter a report to include invalid votes;

4          (4)  fail to count valid votes or alter a report to

5  exclude valid votes;

6          (5)  [(3)]  cause    any    intentionally    misleading

7  statement, representation, or information to be provided:

8                    (A)  to an election official; or

9                    (B)  on an application for ballot by mail, carrier

10  envelope, or any other official election-related form or document;

11          (6)  prevent a voter from casting a legal ballot in an

12  election in which the voter is eligible to vote; or

13          (7)  provide false information to a voter with the

14  intent of preventing the voter from voting in an election in which

15  the voter is eligible to vote.

16      (b)  An offense under this section is a Class A misdemeanor,

17  except that an offense under this section is a state jail felony if

18  the person committed the offense while acting in the person's

19  official capacity as an election officer.

20      SECTION 7.04.  Chapter 276, Election Code, is amended by

21  adding Sections 276.014, 276.015; 276.016, 276.017, 276.018, and

22  276.019 to read as follows:

23      Sec. 276.014.  VOTE HARVESTING.  (a)  In this section and in

24  Section 276.015:

25          (1)  "Benefit" means anything reasonably regarded as a

26  gain or advantage, including a promise or offer of employment, a

27  political favor, or an official act of discretion, whether to a

S.B. No. 7

1   person or another party whose welfare is of interest to the person.

2          (2)   "Vote   harvesting   services"   means   in-person

3   interaction with one or more voters, involving an official ballot,

4   a ballot voted by mail, or an application for ballot by mail,

5   intended to deliver votes for a specific candidate or measure.

6          (b)   A person commits an offense if the person, directly or

7   through a third party, knowingly provides or offers to provide vote

8   harvesting services in exchange for compensation or other benefit.

9          (c)   A person commits an offense if the person, directly or

10  through a third party, knowingly provides or offers to provide

11  compensation or other benefit to another person in exchange for

12  vote harvesting services.

13         (d)   A person commits an offense if the person knowingly

14  collects or possesses a mail ballot or official carrier envelope in

15  connection with vote harvesting services.

16         (e)   This section does not apply to:

17         (1)   an   activity   not   performed   in   exchange   for

18  compensation or a benefit;

19         (2)   interactions   that   do   not   directly   involve   an

20  official ballot, ballot by mail, or an application for ballot by

21  mail;

22         (3)   interactions that are not conducted in-person with

23  a voter; or

24         (4)   activity that is not designed to deliver votes for

25  or against a specific candidate or measure.

26         (f)   In this section, compensation in exchange for vote

27  harvesting services is inferred if a person who performed vote

S.B. No. 7

1  harvesting services for a candidate or campaign solicits, receives,
2  or is offered compensation from the candidate or campaign, directly
3  or through a third party, for services other than vote harvesting
4  services provided.
5       (g)  An offense under this section is a felony of the third
6  degree.
7       (h)  If  conduct  that  constitutes  an  offense  under  this
8  section also constitutes an offense under any other law, the actor
9  may be prosecuted under this section, the other law, or both.
10      (i)  Records necessary to investigate an offense under this
11 section or any other section of this code shall be provided by an
12 election officer in an unredacted form to a law enforcement officer
13 upon  request.  Records  obtained  under  this  subsection  are  not
14 subject to public disclosure.
15      Sec. 276.015.  CIVIL LIABILITY FOR VOTE HARVESTING.  (a)  A
16 person who is shown by a preponderance of the evidence to have
17 violated Section 276.014 is civilly liable to any candidate or
18 political party who suffers harm from the vote harvesting services
19 for damages and penalties that may be awarded under Subsection (c).
20      (b)  A person is harmed by the vote harvesting services if
21 the person can demonstrate that:
22           (1)  the person has standing to seek relief; and
23           (2)  the liable party violated Section 276.014.
24      (b-1)  To establish standing under this section, a person is
25 not  required  to  demonstrate  that  the  vote  harvesting  services
26 successfully delivered votes for a specific candidate or measure,
27 but must demonstrate that:

S.B. No. 7

1             (1)  the vote harvesting services were intended to
2  deliver votes for a specific candidate or measure; and
3             (2)  the person opposed the candidate or measure in the
4  person's capacity as a candidate or political party.
5        (c)  A party who prevails in an action under this section may
6  recover damages in an amount including any or all of:
7             (1)  the amount of compensation paid to or received by a
8  party in exchange for vote harvesting services;
9             (2)  the fair market value of any benefit given or
10  received in exchange for vote harvesting services;
11            (3)  a penalty in the amount of $35,000; or
12            (4)  reasonable and necessary attorney's fees, court
13  costs, witness fees, and discovery costs.
14       (d)  A party who is a candidate for office who prevails in an
15  action under this section and shows that the number of voters
16  contacted by the vote harvesting activity exceeds the number of
17  votes by which the party lost the election shall recover damages in
18  an amount including any or all of:
19            (1)  the party's campaign expenditures properly filed
20  on a campaign finance report in connection with the election; or
21            (2)  any fees and expenses incurred by the party in
22  filing and securing a place on the ballot.
23       (e)  A person who commits an offense under Section 276.014
24  and is found civilly liable, including by vicarious liability,
25  under this chapter or other law for any amount of damages arising
26  from the vote harvesting services is jointly liable with any other
27  defendant for the entire amount of damages arising from the vote

87R30396 TSS/ADM-D              47

S.B. No. 7

1  harvesting services.

2      (f)  The  cause  of  action  created  by  this  section  is

3  cumulative of any other remedy provided by common law or statute.

4      (g)  Rules applicable to a party's access to election records

5  under  Chapter  231  or  232  apply  to  a  cause  of  action  under  this

6  section.

7      (h)  A  party  to  an  action  under  this  section  may  compel  a

8  voter  to  reveal  the  voter's  vote  in  the  same  manner  established

9  under Section 221.009 to compel a voter to reveal the voter's vote

10  in an election contest.

11      (i)  The expedited actions process created by Rule 169, Texas

12  Rules  of  Civil  Procedure,  does  not  apply  to  an  action  under  this

13  section.

14      (j)  Chapter 27, Civil Practice and Remedies Code, does not

15  apply to a cause of action under this section.

16      (k)  A cause of action under this section may be brought in

17  the county where any element of a violation under Section 276.014

18  occurred,  or  where  any  part  of  the  vote  harvesting  services

19  occurred.

20      (l)  This section shall be liberally construed and applied to

21  promote its underlying purpose to protect candidates and the voting

22  public from unlawful vote harvesting and provide an efficient and

23  economical remedy to secure that protection.

24      Sec. 276.016.  UNLAWFUL  SOLICITATION  AND  DISTRIBUTION  OF

25  APPLICATION TO VOTE BY MAIL.  (a)  A public official commits an

26  offense  if  the  official,  while  acting  in  an  official  capacity,

27  knowingly:

S.B. No. 7

1        (1)  solicits the submission of an application to vote

2  by mail from a person who did not request an application;

3        (2)  distributes an application to vote by mail to a

4  person who did not request the application unless the distribution

5  is expressly authorized by another provision of this code;

6        (3)  authorizes or approves the expenditure of public

7  funds to facilitate third-party distribution of an application to

8  vote by mail to a person who did not request the application; or

9        (4)  completes any portion of an application to vote by

10  mail and distributes the application to an applicant.

11       (b)  An offense under this section is a state jail felony.

12       (c)  Subsection (a)(2) does not apply if the public official

13  engaged in the conduct described by Subsection (a)(2) by providing

14  access to an application to vote by mail from a publicly accessible

15  Internet website.

16       (d)  Subsection (a)(4) does not apply if the public official

17  engaged  in  the  conduct  described  by  Subsection  (a)(4)  while

18  lawfully assisting the applicant under Section 84.003.

19       (e)  Subsection (a) does not apply if the public official

20  provided general information about voting by mail, the vote by mail

21  process, or the timelines associated with voting to a person or the

22  public.

23       (f)  The remedy provided under this chapter is cumulative,

24  and does not restrict any other remedies provided by this code or by

25  law. A violation of this section is subject to injunctive relief or

26  mandamus as provided by this code.

27       Sec. 276.017.  UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS

S.B. No. 7

1   AND BALLOTING MATERIALS.    (a)    The early voting clerk or other

2   election official commits an offense if the clerk or official

3   knowingly mails or otherwise provides an early voting ballot by

4   mail or other early voting by mail ballot materials to a person who

5   did not submit an application for a ballot to be voted by mail under

6   Section 84.001.

7        (b)   An offense under this section is a Class A misdemeanor.

8        Sec. 276.018.    PERJURY IN CONNECTION WITH CERTAIN ELECTION

9   PROCEDURES.   (a)   A person commits an offense if the person makes a

10  false  statement  or  swears  to  the  truth  of  a  false  statement

11  previously made while making the oath described by Section 64.034.

12       (b)   An offense under this section is a state jail felony.

13       Sec. 276.019.   UNLAWFUL ALTERING OF ELECTION PROCEDURES.   A

14  public official may not create, alter, modify, waive, or suspend

15  any election standard, practice, or procedure mandated by law or

16  rule in a manner not expressly authorized by this code.

17                      ARTICLE 8. ENFORCEMENT

18       SECTION 8.01.   Section 18.065, Election Code, is amended by

19  amending Subsection (a) and adding Subsections (e), (f), and (g) to

20  read as follows:

21       (a)   The secretary of state shall monitor each registrar for

22  substantial compliance with Sections 15.083, 16.032, 16.0332, and

23  18.061 and with rules implementing the statewide computerized voter

24  registration list.

25       (e)   A registrar shall correct a violation within 30 days of

26  a notice under Subsection (b).  If a registrar fails to correct the

27  violation within 30 days of a notice under Subsection (b), the

S.B. No. 7

1  secretary of state shall:

2           (1)  correct the violation on behalf of the registrar;

3  and

4           (2)  notify the attorney general that the registrar

5  failed to correct a violation under this subsection.

6       (f)  A county served by a registrar who fails to correct a

7  violation under Subsection (e) is liable to this state for a civil

8  penalty of $1,000 for each violation corrected by the secretary of

9  state under that subsection.   The attorney general may bring an

10  action to recover a civil penalty imposed under this section.

11      (g)  A civil penalty collected by the attorney general under

12  this section shall be deposited in the state treasury to the credit

13  of the general revenue fund.

14      SECTION 8.02.   Subchapter E, Chapter 31, Election Code, is

15  amended by adding Section 31.126 to read as follows:

16      Sec. 31.126.   RESTRICTION ON ELIGIBILITY.   (a)   In this

17  section, "election official" means:

18           (1)  a county clerk;

19           (2)  a permanent or temporary deputy county clerk;

20           (3)  an elections administrator;

21           (4)  a permanent or temporary employee of an elections

22  administrator;

23           (5)  an election judge;

24           (6)  an alternate election judge;

25           (7)  an early voting clerk;

26           (8)  a deputy early voting clerk;

27           (9)  an election clerk;

S.B. No. 7

1      (10)  the presiding judge of an early voting ballot

2  board;

3      (11)  the alternate presiding judge of an early voting

4  ballot board;

5      (12)  a member of an early voting ballot board;

6      (13)  the chair of a signature verification committee;

7      (14)  the vice  chair  of  a  signature  verification

8  committee;

9      (15)  a member of a signature verification committee;

10     (16)  the  presiding  judge  of  a  central  counting

11 station;

12     (17)  the  alternate  presiding  judge  of  a  central

13 counting station;

14     (18)  a central counting station manager;

15     (19)  a central counting station clerk;

16     (20)  a tabulation supervisor; and

17     (21)  an assistant to a tabulation supervisor.

18     (b)  A person may not serve as an election official if the

19 person has been finally convicted of an offense under this code.

20     SECTION 8.03.  Section 232.006(a), Election Code, is amended

21 to read as follows:

22     (a)  The venue of an election contest for a statewide office

23 is in Travis County or any county where a contestee resided at the

24 time of the election.  For purposes of this section, a contestee's

25 residence is determined under Section 411.0257, Government Code.

26     SECTION 8.04.  Sections 232.008(b), (c), and (d), Election

27 Code, are amended to read as follows:

87R30396 TSS/ADM-D          52

S.B. No. 7

1       (b)  Except as provided by Subsection (c), a contestant must

2  file the petition not later than the later of the 45th [30th] day

3  after the date the election records are publicly available under

4  Section 1.012 or the official result of the contested election is

5  determined.

6       (c)  A contestant must file the petition not later than the

7  later of the 15th [10th] day after the date the election records are

8  publicly available under Section 1.012 or the official result is

9  determined in a contest of:

10            (1)  a primary or runoff primary election; or

11            (2)  a general or special election for which a runoff is

12  necessary according to the official result or will be necessary if

13  the contestant prevails.

14       (d)  A contestant must deliver, electronically or otherwise,

15  a copy of the petition to the secretary of state by the same

16  deadline prescribed for the filing of the petition.

17       SECTION 8.05.  Chapter 232, Election Code, is amended by

18  adding Subchapter C to read as follows:

19            SUBCHAPTER C.  CONTEST INVOLVING ALLEGED FRAUD

20       Sec. 232.061.  PETITION ALLEGING FRAUD.  This subchapter

21  applies to an election contest in which the contestant alleges in

22  the petition that an opposing candidate, an agent of the opposing

23  candidate, or a person acting on behalf of the opposing candidate

24  with the candidate's knowledge violated any of the following

25  sections of this code:

26            (1)  Section 13.007;

27            (2)  Section 64.012;

S.B. No. 7

1              (3)  Section 64.036;

2              (4)  Section 84.003;

3              (5)  Section 84.0041;

4              (6)  Section 86.0051;

5              (7)  Section 86.006;

6              (8)  Section 86.010; or

7              (9)  Section 276.013.

8        Sec. 232.062.  EVIDENTIARY STANDARD.   A contestant must

9   prove an allegation described by Section 232.061 by a preponderance

10  of the evidence.

11       Sec. 232.063.  OVERTURNING ELECTION.  If the number of votes

12  illegally cast in the election is equal to or greater than the

13  number of votes necessary to change the outcome of an election, the

14  court may declare the election void without attempting to determine

15  how individual voters voted.

16       Sec. 232.064.  DAMAGES.  (a)  If a contestee, an agent of the

17  contestee, or a person acting on behalf of the contestee with the

18  contestee's knowledge committed one or more violations of a section

19  described by Section 232.061, the contestee is liable to the

20  contestant for damages in an amount of $1,000 for each violation.

21       (b)  Notwithstanding Section 41.004(a), Civil Practice and

22  Remedies Code, a court shall award damages under Subsection (a) to

23  the contestant irrespective of whether the contestant is awarded

24  actual damages.

25       Sec. 232.065.  ATTORNEY'S FEES.  In an election contest to

26  which this subchapter applies, the court may award reasonable

27  attorney's fees to the prevailing party.

S.B. No. 7

1        SECTION 8.06.  Section 273.061, Election Code, is amended to

2   read as follows:

3        Sec. 273.061.  JURISDICTION.  (a)  The supreme court or a

4   court of appeals may issue a writ of mandamus to compel the

5   performance of any duty imposed by law in connection with the

6   holding of an election or a political party convention, regardless

7   of whether the person responsible for performing the duty is a

8   public officer.

9        (b)  The court of criminal appeals may issue a writ of

10  mandamus to compel the performance of any duty imposed by law in

11  connection  with  the  provision,  sequestration,  transfer,  or

12  impoundment of evidence in or records relating to a criminal

13  investigation conducted under this code or conducted in connection

14  with the conduct of an election or political party convention.  If a

15  writ of mandamus is issued under this subsection, it shall include

16  an  order  requiring  the  provision,  sequestration,  transfer,  or

17  impoundment of the evidence or record.

18       SECTION 8.07.  Subchapter D, Chapter 22, Government Code, is

19  amended by adding Sections 22.304 and 22.305 to read as follows:

20       Sec. 22.304.  COURT SITTING IN PANELS FOR CERTAIN ELECTION

21  PROCEEDINGS; CRIMINAL OFFENSE.  (a)  Notwithstanding any other law

22  or rule, a court proceeding entitled to priority under Section

23  22.305  and  filed  in  the  supreme  court,  the  court  of  criminal

24  appeals, or a court of appeals shall be docketed by the clerk of the

25  court and assigned to a panel of three justices determined using an

26  automated assignment system.

27       (b)  A  person,  including  a  public  official,  commits  an

S.B. No. 7

1  offense if the person communicates with a court clerk with the

2  intention of influencing or attempting to influence the composition

3  of a three-justice panel assigned a specific proceeding under this

4  section.

5      (c)  An offense under this section is a state jail felony.

6      (d)  If a court clerk does not comply with this section, a

7  person may seek from the supreme court, the court of criminal

8  appeals, or a court of appeals a writ of mandamus as provided by

9  Section 273.061, Election Code, to compel compliance with this

10 section.

11     Sec. 22.305.  PRIORITY OF CERTAIN ELECTION PROCEEDINGS.  (a)

12 The supreme court, the court of criminal appeals, or a court of

13 appeals shall prioritize over any other proceeding pending or filed

14 in the court a proceeding for injunctive relief or for a writ of

15 mandamus under Chapter 273, Election Code, pending or filed in the

16 court on or after the 120th day before a general or special

17 election.

18     (b)  If granted, oral argument for a proceeding described by

19 Subsection (a) may be given in person or through electronic means.

20     SECTION 8.08.  Section 23.101, Government Code, is amended

21 by amending Subsection (a) and adding Subsections (b-1) and (b-2)

22 to read as follows:

23     (a)  Except as provided by Subsection (b-1), the [The] trial

24 courts of this state shall regularly and frequently set hearings

25 and trials of pending matters, giving preference to hearings and

26 trials of the following:

27         (1)  temporary injunctions;

87R30396 TSS/ADM-D                    56

S.B. No. 7

1          (2)  criminal actions, with the following actions given
2    preference over other criminal actions:

3                    (A)  criminal actions against defendants who are
4    detained in jail pending trial;

5                    (B)  criminal actions involving a charge that a
6    person committed an act of family violence, as defined by Section
7    71.004, Family Code;

8                    (C)  an offense under:

9                         (i)  Section 21.02 or 21.11, Penal Code;

10                        (ii)  Chapter 22, Penal Code, if the victim
11   of the alleged offense is younger than 17 years of age;

12                        (iii)  Section 25.02, Penal Code, if the
13   victim of the alleged offense is younger than 17 years of age;

14                        (iv)  Section 25.06, Penal Code;

15                        (v)  Section 43.25, Penal Code; or

16                        (vi)  Section 20A.02(a)(7), 20A.02(a)(8),
17   or 20A.03, Penal Code;

18                    (D)  an offense described by Article 62.001(6)(C)
19   or (D), Code of Criminal Procedure; and

20                    (E)  criminal actions against persons who are
21   detained as provided by Section 51.12, Family Code, after transfer
22   for prosecution in criminal court under Section 54.02, Family Code;

23          (3)  election contests and suits under the Election
24   Code;

25          (4)  orders for the protection of the family under
26   Subtitle B, Title 4, Family Code;

27          (5)  appeals of final rulings and decisions of the

87R30396 TSS/ADM-D          57

S.B. No. 7

1  division of workers' compensation of the Texas Department of
2  Insurance regarding workers' compensation claims and claims under
3  the Federal Employers' Liability Act and the Jones Act;

4         (6)  appeals of final orders of the commissioner of the
5  General Land Office under Section 51.3021, Natural Resources Code;

6         (7)  actions in which the claimant has been diagnosed
7  with malignant mesothelioma, other malignant asbestos-related
8  cancer, malignant silica-related cancer, or acute silicosis; and

9         (8)  appeals brought under Section 42.01 or 42.015, Tax
10  Code, of orders of appraisal review boards of appraisal districts
11  established for counties with a population of less than 175,000.

12      (b-1)  Except for a criminal case in which the death penalty
13  has been or may be assessed or when it would otherwise interfere
14  with a constitutional right, the trial courts of this state shall
15  prioritize over any other proceeding pending or filed in the court a
16  proceeding for injunctive relief under Chapter 273, Election Code,
17  pending or filed in the court on or after the 120th day before a
18  general or special election.

19      (b-2)  A hearing in a proceeding described by Subsection
20  (b-1) may be held in person or through electronic means.

21      SECTION 8.09.  Chapter 23, Government Code, is amended by
22  adding Subchapter D to read as follows:

23              SUBCHAPTER D.  GENERAL PROVISIONS
24      Sec. 23.301.  ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS;
25  CRIMINAL OFFENSE.  (a)  Notwithstanding any other law or rule, the
26  clerk of a district court in which a proceeding entitled to priority
27  under Section 23.101(b-1) is filed shall docket the proceeding and,

S.B. No. 7

1  if more than one district court in the county has jurisdiction over

2  the proceeding, randomly assign the proceeding to a district court

3  using an automated assignment system.

4      (b)  Notwithstanding any other law or rule, the clerk of a

5  county court or statutory county court in which a proceeding

6  entitled to priority under Section 23.101(b-1) is filed shall

7  docket the proceeding and, if more than one court in the county has

8  jurisdiction over the proceeding, randomly assign the proceeding to

9  a court using an automated assignment system.

10     (c)  Notwithstanding any other law or rule, a proceeding

11 entitled to priority under Section 23.101(b-1) relating to a

12 temporary injunction shall have a court assigned under Subsection

13 (b) not later than 24 hours after the proceeding is filed and, if a

14 temporary injunction is granted, the injunction may not remain in

15 effect for longer than four days.

16     (d)  A person, including a public official, commits an

17 offense if the person communicates with a county or district clerk

18 with the intention of influencing or attempting to influence the

19 court or judge assigned to a proceeding under this section.

20     (e)  An offense under this section is a Class A misdemeanor,

21 except that the offense is a state jail felony if it is shown on the

22 trial of the offense that the person committed the offense while

23 acting in the person's official capacity as an election official.

24     (f)  If a district or county clerk does not comply with this

25 section, a person may seek from the supreme court, the court of

26 criminal appeals, or a court of appeals a writ of mandamus as

27 provided by Section 273.061, Election Code, to compel compliance

S.B. No. 7

1  with this section.

2       Sec. 23.302.   DEADLINES  IN  CERTAIN  ELECTION  PROCEEDINGS.

3  (a)  Not later than 24 hours after the proceeding is filed, a judge

4  to whom a case is assigned under Section 23.301(b) who wishes to be

5  recused from the proceeding must, before recusal:

6            (1)  hear an application for any emergency temporary

7  relief sought;

8            (2)  grant  or  deny  any  emergency  temporary  relief

9  sought; and

10           (3)  set a scheduling order that provides:

11                (A)  a date for a hearing on any injunction sought

12  not later than five days after the date on which the proceeding was

13  filed; and

14                (B)  discovery  and  deposition  deadlines  before

15  the expiration of any emergency relief order entered.

16      (b)  The presiding judge of an administrative region shall

17  assign a new judge to a proceeding assigned under Section 23.301(b)

18  not later than 12 hours after the original judge assigned to the

19  proceeding is recused under Subsection (a).

20      (c)  A final order  in  a proceeding  filed under  Section

21  273.081, Election  Code,  shall  be  submitted  in  writing  to  the

22  parties  not  later  than 24  hours  after  the  judge  makes  a  final

23  determination in the proceeding.

24      (d)  If a district judge does not comply with this section, a

25  person  may  seek  from  the  supreme  court,  the  court  of  criminal

26  appeals, or a court of appeals a writ of mandamus as provided by

27  Section 273.061, Election  Code,  to  compel  compliance  with  this

S.B. No. 7

1  section.

2      (e)  Notwithstanding  Section  23.101(b-1),  a  proceeding

3  relating to a permanent injunction being sought in connection to a

4  challenge under Section 141.034, Election Code, may be heard after

5  the primary election has been canvassed.

6          ARTICLE 9.  INELIGIBLE VOTERS AND RELATED REFORMS

7          SECTION 9.01.  Chapter 42, Code of Criminal Procedure, is

8  amended by adding Article 42.0194 to read as follows:

9          Art. 42.0194.  FINDING REGARDING FELONY CONVICTION.  In the

10  trial of a felony offense, if the defendant is 18 years of age or

11  older and is adjudged guilty of the offense, the court shall:

12          (1)  make an affirmative finding that the person has

13  been found guilty of a felony and enter the affirmative finding in

14  the judgment of the case; and

15          (2)  instruct the defendant regarding how the felony

16  conviction will impact the defendant's right to vote in this state.

17          SECTION 9.02.  Article 42.01, Code of Criminal Procedure, is

18  amended by amending Section 4 and adding Section 16 to read as

19  follows:

20          Sec. 4.  The  Court of Criminal Appeals [Office of Court

21  Administration of the Texas Judicial System] shall promulgate a

22  standardized felony judgment form that conforms to the requirements

23  of Section 1 of this article.  A court entering a felony judgment

24  [judgement] shall use the form promulgated under this section.

25          Sec. 16.  In  addition  to  the  information  described  by

26  Section 1, the judgment should reflect the affirmative finding and

27  instruction entered pursuant to Article 42.0194.

S.B. No. 7

1     SECTION 9.03.   Section 64.012, Election Code, is amended by
2  amending Subsection (a) and adding Subsections (c) and (d) to read
3  as follows:

4     (a)   A person commits an offense if the person:

5          (1)   votes or attempts to vote in an election in which
6  the person knows the person is not eligible to vote;

7          (2)   knowingly votes or attempts to vote more than once
8  in an election;

9          (3)   knowingly votes or attempts to vote a ballot
10  belonging to another person, or by impersonating another person;
11  [or]

12          (4)   knowingly marks or attempts to mark any portion of
13  another person's ballot without the consent of that person, or
14  without specific direction from that person how to mark the ballot;
15  or

16          (5)   knowingly votes or attempts to vote in an election
17  in this state after voting in another state in an election in which
18  a federal office appears on the ballot and the election day for both
19  states is the same day.

20     (c)   A person may not be convicted solely upon the fact that
21  the person signed a provisional ballot affidavit under Section
22  63.011 unless corroborated by other evidence that the person
23  knowingly committed the offense.

24     (d)   If conduct that constitutes an offense under this
25  section also constitutes an offense under any other law, the actor
26  may be prosecuted under this section, the other law, or both.

27     SECTION 9.04.   The change in law made by this article in

87R30396 TSS/ADM-D           62

S.B. No. 7

1   adding Section 64.012(c), Election Code, applies to an offense

2   committed before, on, or after the effective date of this Act,

3   except that a final conviction for an offense under that section

4   that exists on the effective date of this Act remains unaffected by

5   this article.

6                    ARTICLE 10.  INTERNET POSTING AND DATABASE

7        SECTION 10.01.  Chapter 4, Election Code, is amended by

8   adding Section 4.009 to read as follows:

9        Sec. 4.009.  INTERNET POSTING.  (a)  Not later than the 21st

10  day before election day, a county that holds or provides election

11  services for an election and maintains an Internet website shall

12  post on its public Internet website for an election administered by

13  the county:

14               (1)  the date of the election;

15               (2)  the location of each polling place;

16               (3)  each candidate for an elected office on the

17  ballot; and

18               (4)  each measure on the ballot.

19       (b)  Not later than the 21st day before election day, a city

20  or independent school district that holds an election and maintains

21  an Internet website shall post on the public Internet website for

22  the city or independent school district, as applicable:

23               (1)  the date of the next election;

24               (2)  the location of each polling place;

25               (3)  each candidate for an elected office on the

26  ballot; and

27               (4)  each measure on the ballot.

87R30396 TSS/ADM-D            63

S.B. No. 7

1          SECTION 10.02.  Subchapter A, Chapter 31, Election Code, is

2   amended by adding Sections 31.017 and 31.018 to read as follows:

3          Sec. 31.017.  INTERNET  DATABASE  OF  ELECTION  INFORMATION.

4   (a)  The secretary of state shall post on the secretary of state's

5   public Internet website a database containing information provided

6   by each authority responsible for giving notice of an election in

7   this state.  The database must include the following information:

8                (1)  the name of the authority;

9                (2)  each office to be filled at the election;

10               (3)  whether  the  office  is  elected  at  large  or  by

11  district; and

12               (4)  the dates of the preceding and next election for

13  the office.

14          (b)  The secretary of state shall adopt rules as necessary to

15  implement this section.

16          Sec. 31.018.  INTERNET  DATABASE  FOR  INCUMBENTS  AND

17  CANDIDATES.  (a)  The secretary of state shall post on the secretary

18  of state's Internet website a database containing information about

19  each holder of and candidate for any elected office in this state.

20          (b)  The  database  must  include  the  following  information

21  about a holder of an elected office:

22               (1)  name;

23               (2)  office title, including any district, place, or

24  position;

25               (3)  if the office is elected at large or by district;

26               (4)  date  of  the  previous  and  next  election  for  the

27  office; and

87R30396 TSS/ADM-D                  64

S.B. No. 7

1          (5)  public mailing address.

2      (c)  The database must include the following information

3  about a candidate for an elected office:

4          (1)  name;

5          (2)  office sought, including any district, place, or

6  position;

7          (3)  if the office is elected at large or by district;

8          (4)  date of the election;

9          (5)  public mailing address;

10         (6)  public telephone number, if available;

11         (7)  name of the incumbent; and

12         (8)  if the candidate has filed as a write-in

13  candidate.

14     (d)  The authority with whom a declaration of candidacy is

15  filed, a state chair of a political party, or the presiding officer

16  of a political party's convention shall provide information about a

17  candidate or officeholder to the secretary of state.

18     (e)  The secretary of state shall adopt rules as necessary to

19  implement this section.

20     SECTION 10.03.  Section 141.032, Election Code, is amended

21  by adding Subsection (h) to read as follows:

22     (h)  The authority with whom the application is filed shall

23  provide the secretary of state with the candidate's information

24  required for the secretary of state's Internet website under

25  Section 31.018.  The secretary of state shall adopt rules as

26  necessary to implement this subsection.

S.B. No. 7

1    ARTICLE 11.  REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

2         SECTION 11.01.  The following provisions of the Election

3    Code are repealed:

4              (1)  Section 85.062(e);

5              (2)  Section 86.0052(b);

6              (3)  Section 86.0105(b); and

7              (4)  Section 127.201(f).

8         SECTION 11.02.  If any provision of this Act or its

9    application to any person or circumstance is held invalid, the

10   invalidity does not affect other provisions or applications of this

11   Act that can be given effect without the invalid provision or

12   application, and to this end the provisions of this Act are declared

13   to be severable.

14        SECTION 11.03.  (a)  Except as otherwise provided by this

15   Act, the changes in law made by this Act apply only to an offense

16   committed on or after the effective date of this Act.  An offense

17   committed before the effective date of this Act is governed by the

18   law in effect when the offense was committed, and the former law is

19   continued in effect for that purpose.  For purposes of this section,

20   an offense was committed before the effective date of this Act if

21   any element of the offense occurred before that date.

22        (b)  The changes in law made by this Act apply only to an

23   election ordered on or after the effective date of this Act.  An

24   election ordered before the effective date of this Act is governed

25   by the law in effect when the election was ordered, and the former

26   law is continued in effect for that purpose.

27        (c)  The changes in law made by this Act apply only to an

S.B. No. 7

1 election contest for which the associated election occurred after
2 the effective date of this Act.

3      (d)  The changes in law made by this Act apply only to an
4 application to vote an early voting ballot by mail submitted on or
5 after the effective date of this Act.  An application to vote an
6 early voting ballot by mail submitted before the effective date of
7 this Act is governed by the law in effect when the application was
8 submitted, and the former law is continued in effect for that
9 purpose.

10      (e)  The changes in law made by this Act apply only to an
11 application for voter registration submitted on or after the
12 effective date of this Act.

13      SECTION 11.04.  Not later than January 1, 2022, the
14 secretary of state shall develop the training course required by
15 Section 31.019, Election Code, as added by this Act.

16      SECTION 11.05.  To the extent of any conflict, this Act
17 prevails over another Act of the 87th Legislature, Regular Session,
18 2021, relating to nonsubstantive additions to and corrections in
19 enacted codes.

20      SECTION 11.06.  This Act takes effect immediately if it
21 receives a vote of two-thirds of all the members elected to each
22 house, as provided by Section 39, Article III, Texas Constitution.
23 If this Act does not receive the vote necessary for immediate
24 effect, this Act takes effect September 1, 2021.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| ARTICLE 1. VOTER REGISTRATION | ARTICLE 1. **GENERAL PROVISIONS** | ARTICLE 1. **GENERAL PROVISIONS** |
| *No equivalent provision.* | SECTION 1.01.  SHORT TITLE.  This Act may be cited as the Election Integrity Protection Act of 2021. | SECTION 1.01.  Same as House version. |
| *No equivalent provision.* | Same as Senate version. | ARTICLE 9.   INELIGIBLE VOTERS AND RELATED REFORMS |
| SECTION 1.01.  Chapter 42, Code of Criminal Procedure, is amended by adding Article 42.0194 to read as follows:  <u>Art. 42.0194.   FINDING REGARDING FELONY CONVICTION.  In the trial of a felony offense, if the defendant is 18 years of age or older and is adjudged guilty of the offense, the court shall:  (1)  make an affirmative finding that the person has been found guilty of a felony and enter the affirmative finding in the judgment of the case; and  (2)  instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in this state.</u> | Same as Senate version. SECTION __. [FA7(2)] | SECTION 9.01. Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | SECTION 9.02.  Article 42.01, Code of Criminal Procedure, is amended by amending Section 4 and adding Section 16 to read as follows:  Sec. 4. The <u>Court of Criminal Appeals</u> [~~Office of Court Administration of the Texas Judicial System~~] shall promulgate a standardized felony judgment form that conforms to the requirements of Section 1 of this article. A |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | court entering a felony judgment [judgement] shall use the form promulgated under this section. Sec. 16.  In addition to the information described by Section 1, the judgment should reflect the affirmative finding and instruction entered pursuant to Article 42.0194. |
| *No equivalent provision.* | SECTION 1.02.  PURPOSE.  The purpose of this Act is to exercise the legislature's constitutional authority under Section 4, Article VI, Texas Constitution, to make all laws necessary to detect and punish fraud.  [FA2] | SECTION 1.02.  Same as House version. |
| *No equivalent provision.* | SECTION 1.03.  FINDINGS.  The legislature finds that: (1)  full, free, and fair elections are the underpinnings of a stable constitutional democracy; *(2) minimizing the potential for fraud in elections and enhancing the opportunities to vote strengthen our constitutional democracy and provide for wide-scale confidence in elections;*  [FA4(1)] | SECTION 1.03.  FINDINGS.  The legislature finds that: (1)  full, free, and fair elections are the underpinnings of a stable constitutional democracy; |
| | | *(2) fraud in elections threatens the stability of a constitutional democracy by undermining public confidence in the legitimacy of public officers chosen by election;* |
| | (3)  reforms are needed to the election laws of this state to ensure that fraud does not undermine the public confidence in the electoral process; *(4) Section 4, Article VI, Texas Constitution, entrusts the enactment of laws to make voting more accessible or to* | (3)  reforms are needed to the election laws of this state to ensure that fraud does not undermine the public confidence in the electoral process; |

2

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | *combat fraud in the electoral process to the sound discretion of the legislature;* [FA4(2);FA6(1)] | |
| | (5) the reforms to the election laws of this state made by this Act are not intended to impair the right of free suffrage guaranteed to the people of Texas by the United States and Texas Constitutions, but are enacted solely to prevent fraud in the electoral process and ensure that all legally cast ballots are counted. Integral to the right to vote is the assurance of voter access and the right for all votes legally cast to be counted; [FA6(2)] | (4) the reforms to the election laws of this state made by this Act are not intended to impair the right of free suffrage guaranteed to the people of Texas by the United States and Texas Constitutions, but are enacted solely to prevent fraud in the electoral process and ensure that all legally cast ballots are counted. Integral to the right to vote is the assurance of voter access and the right for all votes legally cast to be counted; |
| | (6) additionally, preventing a valid vote from being counted violates the basic constitutional rights guaranteed to each citizen by the United States Constitution *and the law of the land*; and | (5) additionally, preventing a valid vote from being counted violates the basic constitutional rights guaranteed to each citizen by the United States Constitution; and |
| | (7) providing for voter access and increasing the stability of a constitutional democracy ensures public confidence in the legitimacy of public officers chosen by election. [FA6(3)] | (6) providing for voter access and increasing the stability of a constitutional democracy ensures public confidence in the legitimacy of public officers chosen by election. |
| *No equivalent provision.* | SECTION 1.04. Chapter 1, Election Code, is amended by adding Section 1.0015 to read as follows: <u>Sec. 1.0015. LEGISLATIVE INTENT. It is the intent of the legislature that the application of this code and the conduct of elections shall be uniform and consistent throughout this state to *increase voter access* and reduce the likelihood of fraud in the conduct of elections, promote voter access, and ensure that all *lawfully* cast votes are counted.</u> [FA4(3);FA6(4)] | SECTION 1.04. Chapter 1, Election Code, is amended by adding Section 1.0015 to read as follows: <u>Sec. 1.0015. LEGISLATIVE INTENT. It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, *protect the secrecy of the ballot*, promote voter access, and ensure that all *legally* cast ballots are counted.</u> |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | SECTION 1.05.  Section 1.003, Election Code, is amended by adding Subsection (a-1) to read as follows: <u>(a-1)  A public official shall construe the provisions of this code strictly to effect the intent of the legislature under Section 1.0015.</u> | SECTION 1.05.  Section 1.003, Election Code, is amended by adding Subsection (a-1) to read as follows: <u>(a-1)  *Election officials and other*  public officials  shall strictly  construe  the  provisions  of  this  code  to  effect  the intent of the legislature under Section 1.0015.</u> |
| No equivalent provision. | Same  as  Senate  version.  SECTION  1.06.    [Deleted  by FA6(5)] | Same as Senate version. |
| *No equivalent provision.* | SECTION __.Section 1.018, Election Code, is amended to read as follows: Sec.  1.018.  APPLICABILITY  OF  PENAL  CODE.  In addition to Section 1.03, Penal Code, and to other titles of the Penal Code that may apply to this code, <u>Titles 2 and</u> [Title] 4, Penal Code, <u>apply</u> [applies] to offenses prescribed by this code.  [FA6(6)] | SECTION 1.06.  Same as House version. |
| *(See ARTICLE 1, VOTER REGISTRATION, above.)* | *(See ARTICLE  2,  REGISTRATION  OF  VOTERS  AND CONDUCT OF ELECTIONS, below.)* | ARTICLE 2. REGISTRATION OF VOTERS |
| SECTION 1.02.  Section 13.002, Election Code, is amended by adding Subsection (c-1) to read as follows: <u>*(c-1)  A registration application must require the applicant to  affirmatively  indicate  all  information  provided  on  the application.*</u> | *No equivalent provision.* | SECTION 2.01.  Section 13.002, Election Code, is amended by adding Subsection (c-1) to read as follows: <u>*(c-1)  The information required under Subsection (c) must be supplied by the person desiring to register to vote.*</u> |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| SECTION 1.03. Section 15.028, Election Code, is amended to read as follows:<br>Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO PROSECUTOR].  [(a)]  If the registrar determines that a person who is not <u>eligible to vote may have</u> registered to vote or [a registered voter] voted in an election, the registrar shall execute and deliver to the <u>attorney general, the secretary of state, and the</u> county or district attorney having jurisdiction in the territory covered by the election an affidavit stating the relevant facts.<br>[(b)  If the election covers territory in more than one county, the registrar shall also deliver an affidavit to the attorney general.] | *No equivalent provision.* | SECTION 2.03. Section 15.028, Election Code, is amended to read as follows:<br>Sec. 15.028. NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO PROSECUTOR].  [(a)]  If the registrar determines that a person who is not <u>eligible to vote</u> registered to vote or [a registered voter] voted in an election, the registrar shall execute and deliver to the <u>attorney general, the secretary of state, and the</u> county or district attorney having jurisdiction in the territory covered by the election an affidavit stating the relevant facts.<br>[(b)  If the election covers territory in more than one county, the registrar shall also deliver an affidavit to the attorney general.] |
| *No equivalent provision.* | Same as Senate version. | SECTION 2.04. Section 31.006, Election Code, is amended to read as follows:<br>Sec. 31.006. REFERRAL  [OF  COMPLAINT]  TO ATTORNEY  GENERAL.  (a)  If, after receiving <u>or discovering information indicating that</u> [a complaint alleging] criminal conduct in connection with an election <u>has occurred</u>, the secretary of state determines that there is reasonable cause to suspect that [the alleged] criminal conduct occurred, the secretary shall promptly refer the <u>information</u> [complaint] to the attorney general. The secretary shall deliver to the attorney general all pertinent documents <u>and information</u> in the secretary's possession.<br>(b) The documents <u>and information</u> submitted under Subsection (a) are not considered public information until: |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | (1) the secretary of state makes a determination that the information [complaint] received does not warrant an investigation; or |
| | | (2) if referred to the attorney general, the attorney general has completed the investigation or has made a determination that information [complaint] referred does not warrant an investigation. |
| *No equivalent provision.* | Same as Senate version. | SECTION 2.05. Subchapter A, Chapter 31, Election Code, is amended by adding Section 31.019 to read as follows: |
| | | Sec. 31.019. ENFORCEMENT OF VOTER ROLL MAINTENANCE PROVISIONS. (a) In order to ensure compliance with voter roll maintenance provisions, the secretary of state shall monitor each county's list of registered voters to ensure that no county has a number of registered voters in the county equal to or greater than the number of people eligible to register to vote in the county. |
| | | (b) If the secretary of state determines that a county has a number of registered voters equal to or greater than the number of people eligible to register to vote in the county, the secretary of state shall notify the appropriate registrar in writing. |
| | | (c) Not later than 30 days after receiving notice under Subsection (b), a registrar must: |
| | | (1) refute, in writing, that the number of registered voters is equal to or greater than the number of people eligible to register to vote in the county and the failure to comply alleged by the notice; or |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

<table>
<tr><td></td><td></td><td>(2)  develop a remediation plan to address failures to comply with voter roll maintenance provisions and send a copy of the plan to the secretary of state.</td></tr>
<tr><td></td><td></td><td>(d)  If a voter registrar fails to respond to a notice under Subsection (c), refutes an allegation under Subsection (c)(1), or fails to comply with a provision of the remediation plan developed by the registrar under Subsection (c)(2), the secretary of state shall:</td></tr>
<tr><td></td><td></td><td>(1)  require the registrar to attend a training course developed under Subsection (h);</td></tr>
<tr><td></td><td></td><td>(2)  publish notice that the county is undergoing an audit under this subsection on the secretary of state's Internet website;</td></tr>
<tr><td></td><td></td><td>(3)  audit the voter registration list for the county in which the registrar serves; and</td></tr>
<tr><td></td><td></td><td>(4)  identify voter roll maintenance provisions with which the registrar is failing to comply and provide a list to the registrar.</td></tr>
<tr><td></td><td></td><td>(e)  If the secretary of state determines that a voter registrar has not performed any overt actions in pursuance of compliance with the provisions identified under Subsection (d)(4) within 14 days of receiving the list under Subsection (d)(4), the secretary of state shall:</td></tr>
<tr><td></td><td></td><td>(1)  withhold distribution of state funds for financing voter registration to the county until the registrar takes action in pursuance of compliance; and</td></tr>
</table>

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | (2) inform the attorney general that the county which the registrar serves may be subject to a civil penalty under Subsection (f). |
| | | (f)  A county is liable to this state for a civil penalty of $1,000 for each day after the 14th day following the receipt of a list under Subsection (d)(4) that the county's voter registrar fails to take overt action to comply with provisions identified under that subsection. The attorney general may bring an action to recover a civil penalty imposed under this section. |
| | | (g)  A civil penalty collected by the attorney general under this section shall be deposited in the state treasury to the credit of the general revenue fund. |
| | | (h)  The secretary of state shall develop and implement a three-hour training course for county clerks and registrars on the maintenance of voter rolls required and permitted by law. |
| | | (i)  The secretary of state shall adopt rules and prescribe procedures for the implementation of this section. |
| SECTION 1.04.   Section 16.0332(a), Election Code, is amended to read as follows:<br><br>(a)  After the registrar receives a list under Section 18.068 of this code or Section 62.113, Government Code, of persons excused or disqualified from jury service or otherwise determined to be ineligible to vote because of citizenship status, the registrar shall deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar proof of United States citizenship in the form of a certified copy of the voter's birth | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

certificate, United States passport, or certificate of naturalization or any other form prescribed by the secretary of state. The notice shall be delivered by forwardable mail to the mailing address on the voter's registration application and to any new address of the voter known to the registrar.

*(See ARTICLE 4, ENFORCEMENT, below.)*

SECTION 1.05. Section 18.065, Election Code, is amended by amending Subsection (a) and adding Subsections (e), (f), and (g) to read as follows:
(a) The secretary of state shall monitor each registrar for substantial compliance with Sections 15.083, 16.032, 16.0332, and 18.061 and with rules implementing the statewide computerized voter registration list.

(e) If a registrar fails to correct *a* violation within 30 days of a notice under Subsection (b), the secretary of state shall correct the violation on behalf of the registrar.

(f) A *registrar* is liable to this state for a civil penalty of *$100* for each violation corrected by the secretary of state under Subsection (e). The attorney general may bring an action to recover a civil penalty imposed under this section.

---

*(See ARTICLE 6, ENFORCEMENT, below.)*

*No equivalent provision.*

---

ARTICLE 8. ENFORCEMENT

SECTION 8.01. Section 18.065, Election Code, is amended by amending Subsection (a) and adding Subsections (e), (f), and (g) to read as follows:
(a) The secretary of state shall monitor each registrar for substantial compliance with Sections 15.083, 16.032, 16.0332, and 18.061 and with rules implementing the statewide computerized voter registration list.

(e) *A registrar shall correct a violation within 30 days of a notice under Subsection (b).* If a registrar fails to correct *the* violation within 30 days of a notice under Subsection (b), the secretary of state shall:
(1) correct the violation on behalf of the registrar*; and*
(2) *notify the attorney general that the registrar failed to correct a violation under this subsection.*

(f) A *county served by a registrar who fails to correct a violation under Subsection (e)* is liable to this state for a civil penalty of *$1,000* for each violation corrected by the secretary of state under that subsection. The attorney general

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | may bring an action to recover a civil penalty imposed under this section. |
| (g)  A civil penalty collected by the attorney general under this section shall be deposited in the state treasury to the credit of the general revenue fund. | | (g)  A civil penalty collected by the attorney general under this section shall be deposited in the state treasury to the credit of the general revenue fund. |
| SECTION 1.06.  The changes in law made by this *article* apply only to an application for voter registration submitted on or after the effective date of this Act. | *No equivalent provision.* | SECTION 11.03 *(part)* (e) The changes in law made by this *Act* apply only to an application for voter registration submitted on or after the effective date of this Act. |
| ARTICLE 2.  VOTING BY MAIL | *No equivalent provision.* | ARTICLE 5. VOTING BY MAIL |
| *No equivalent provision.* | Same as Senate version. | SECTION 5.01.  Section 82.002, Election Code, is amended to read as follows: Sec. 82.002.  DISABILITY.  (a) A qualified voter is eligible for early voting by mail if the voter is not capable of [has a sickness or physical condition that prevents the voter from] appearing at the polling place on election day without [a likelihood of] needing personal assistance or [of] injuring the voter's health due to the voter's: (1)  illness; (2)  injury; (3)  medical confinement ordered by a health care professional; or (4)  mental or physical disability. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | (b) The following do not constitute [Expected or likely confinement for childbirth on election day is] sufficient cause to entitle a voter to vote under Subsection (a): (1) a lack of transportation; (2) an illness, injury, or disability that does not prevent the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health; or (3) a requirement to appear at the voter's place of employment on election day. (c) An application for a ballot to be voted by mail on the ground of disability must require the applicant to specifically select the grounds on which the voter is eligible under Subsection (a). |
| *No equivalent provision.* | Same as Senate version. | SECTION 5.02. Section 84.001(b), Election Code, is amended to read as follows: (b) An application must be submitted in writing and signed by the applicant using ink on paper. An electronic signature or photocopied signature is not permitted. |
| SECTION 2.01.  Subchapter A, Chapter 84, Election Code, is amended by adding Section 84.0011 to read as follows: Sec. 84.0011.  SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED.  The early voting clerk may make no attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party. | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| SECTION 2.02. Section 84.002, Election Code, is amended by adding Subsection (c) to read as follows: | *No equivalent provision.* | SECTION 5.03. Section 84.002, Election Code, is amended by amending Subsection (a) and adding Subsection (c) to read as follows: |
| *No equivalent provision.* | Same as Senate version. | (a) An early voting ballot application must include: (1) the applicant's name and the address at which the applicant is registered to vote; (1-a) the following information: (A) the number of the applicant's driver's license or personal identification card issued by the Department of Public Safety; (B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or (C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B); (2) for an application for a ballot to be voted by mail on the ground of absence from the county of residence, the address outside the applicant's county of residence to which the ballot is to be mailed; (3) for an application for a ballot to be voted by mail on the ground of age or disability: (A) [,] the address of the hospital, nursing home or other long-term care facility, or retirement center, or of a person related to the applicant within the second degree by affinity or the third degree by consanguinity, as determined under Chapter 573, Government Code, if the applicant is living at |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | that address and that address is different from the address at which the applicant is registered to vote; <u>and</u> <u>(B)  if applicable, the selected specific grounds on which the voter is eligible for a ballot to be voted by mail on the ground of disability, as required by Section 82.002(c);</u> (4)  for an application for a ballot to be voted by mail on the ground of confinement in jail, the address of the jail or of a person related to the applicant within the degree described by Subdivision (3); (5)  for an application for a ballot to be voted by mail on any ground, an indication of each election for which the applicant is applying for a ballot; and (6)  an indication of the ground of eligibility for early voting. |
| <u>(c)  An application for a ballot to be voted by mail on the ground of disability must require the applicant to affirmatively indicate that the applicant agrees with the statement "I have a sickness or physical condition that prevents me from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring my health," as prescribed by Section 82.002(a).</u> | *No equivalent provision.* | Same as House version. |
| *No equivalent provision.* | Same as Senate version. | <u>(c)  A person may use the number of a driver's license or personal identification card that has expired for the purpose of fulfilling the requirement under Subsection (a)(1-a) if the license or identification is otherwise valid.</u> |

Associated CCR Draft: 87R30396

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| SECTION 2.03.   Section 84.011(a), Election Code, is amended to read as follows: | *No equivalent provision.* | SECTION 5.04. Section  84.011(a),  Election  Code,  is amended to read as follows: |
| (a)  The officially prescribed application form for an early voting ballot must include: | | (a)  The officially prescribed application form for an early voting ballot must include: |
| (1) immediately preceding the signature space the statement: "I certify that the information given in this application is true, and  I  understand  that  giving  false  information  in  this application is a *state jail felony [~~crime~~]*."; | | (1) immediately  preceding  the  signature  space  the statement: "I certify that the information given in this application is true, and  I  understand  that  giving  false information in this application is a *crime*."; |
| (2)  a statement informing the applicant of the offenses prescribed by Sections 84.003 and 84.004; | | (2)  a statement informing the applicant of the offenses prescribed by Sections 84.003 and 84.004; |
| (3)  spaces for entering an applicant's voter registration number and county election precinct of registration, with a statement informing the applicant that failure to furnish that information does not invalidate the application; and | | (3)  spaces for entering an applicant's voter registration number and county election precinct of registration, with a statement informing the applicant that failure to furnish that information does not invalidate the application; |
| | | *(3-a)  a space for entering the information required under Section 84.002(a)(1-a);* and |
| (4)  on an application for a ballot to be voted by mail: | | (4)  on an application for a ballot to be voted by mail: |
| (A)  a space for an applicant applying on the ground of absence from the county of residence to indicate the date on or after which the applicant can receive mail at the address outside the county; | | (A)  a space for an applicant applying on the ground of absence from the county of residence to indicate the date on or after which the applicant can receive mail at the address outside the county; |
| (B)  a space for indicating the fact that an applicant whose application  is  signed  by  a  witness  cannot  make  the applicant's mark and a space for indicating the relationship or lack of relationship of the witness to the applicant; | | (B)  a space for indicating the fact that an applicant whose application  is  signed  by  a  witness  cannot  make  the applicant's mark and a space for indicating the relationship or lack of relationship of the witness to the applicant; |
| (C)  a space for entering an applicant's telephone number, with  a  statement  informing  the  applicant  that  failure  to furnish that information does not invalidate the application; | | (C)  a space for entering an applicant's telephone number, with  a  statement  informing  the  applicant  that  failure  to furnish that information does not invalidate the application; |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (D)  a space or box for an applicant applying on the ground of age or disability to indicate that the address to which the ballot is to be mailed is the address of a facility or relative described by Section 84.002(a)(3), if applicable; | | (D)  a space or box for an applicant applying on the ground of age or disability to indicate that the address to which the ballot is to be mailed is the address of a facility or relative described by Section 84.002(a)(3), if applicable; |
| (E)  a space or box for an applicant applying on the ground of confinement in jail to indicate that the address to which the ballot is to be mailed is the address of a relative described by Section 84.002(a)(4), if applicable; | | (E)  a space or box for an applicant applying on the ground of confinement in jail to indicate that the address to which the ballot is to be mailed is the address of a relative described by Section 84.002(a)(4), if applicable; |
| (F)  a space for an applicant applying on the ground of age or disability to indicate if the application is an application under Section 86.0015; | | (F)  a space for an applicant applying on the ground of age or disability to indicate if the application is an application under Section 86.0015; |
| (G)   spaces for entering the signature, printed name, and residence address of any person assisting the applicant; | | (G)  spaces for entering the signature, printed name, and residence address of any person assisting the applicant; |
| (H)  a statement informing the applicant of the condition prescribed by Section 81.005; and | | (H)  a statement informing the applicant of the condition prescribed by Section 81.005; and |
| (I)  a statement informing the applicant of the requirement prescribed by Section 86.003(c). | | (I)  a statement informing the applicant of the requirement prescribed by Section 86.003(c). |
| SECTION 2.04. Subchapter A, Chapter 84, Election Code, is amended by adding Section 84.0111 to read as follows: Sec. 84.0111.  PROHIBITION ON DISTRIBUTION OF APPLICATION FORM. (a) Unless authorized by this code, an officer or employee of this state or of a political subdivision of this state may not distribute an application form for an early voting ballot to a person who did not request an application under Section 84.001. (b)  An officer or employee of this state or of a political subdivision of this state may not use public funds to facilitate | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

<table>
<tr>
<td>the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.</td>
<td></td>
<td></td>
</tr>
<tr>
<td>SECTION 2.05.  Section 84.035, Election Code, is amended to read as follows:<br>Sec. 84.035.  BALLOT SENT TO APPLICANT.  <u>(a)</u> If the early voting clerk cancels an application by an applicant to whom an early voting ballot has been sent, the clerk shall:<br>(1) remove the applicant's name from the early voting roster; and<br>(2)  make any other entries in the records and take any other action necessary to prevent the ballot from being counted if returned.<br><u>(b)  A person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section <i>may</i> only vote a provisional ballot under Section 63.011.</u></td>
<td><i>No equivalent provision.</i></td>
<td>SECTION 5.05.  Section 84.035, Election Code, is amended to read as follows:<br>Sec. 84.035.  BALLOT SENT TO APPLICANT.  <u>(a)</u> If the early voting clerk cancels an application by an applicant to whom an early voting ballot has been sent, the clerk shall:<br>(1) remove the applicant's name from the early voting roster; and<br>(2)  make any other entries in the records and take any other action necessary to prevent the ballot from being counted if returned.<br><u>(b)  <i>An election judge may permit</i> a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section <i>to</i> vote only a provisional ballot under Section 63.011.</u></td>
</tr>
<tr>
<td><i>No equivalent provision.</i></td>
<td>Same as Senate version.</td>
<td>SECTION 5.06.  Section 86.001, Election Code, is amended by adding Subsection (f) to read as follows:<br><u>(f)  If the information required under Section 84.002(a)(1-a) included on the application does not match the information on the applicant's application for voter registration under Section 13.002(c)(8), the clerk shall reject the application.</u></td>
</tr>
</table>

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Same as Senate version. | SECTION 5.07.  Section 86.002, Election Code, is amended by adding Subsections (g), (h), and (i) to read as follows: (g)  The carrier envelope must include a space that is hidden from view when the envelope is sealed for the voter to enter the following information: (1)  the number of the voter's driver's license or personal identification card issued by the Department of Public Safety; (2)  if the voter has not been issued a number described by Subdivision (1), the last four digits of the voter's social security number; or (3)  a statement by the applicant that the applicant has not been issued a number described by Subdivision (1) or (2). (h)  A person may use the number of a driver's license or personal identification card that has expired for purposes of Subsection (g) if the license or identification is otherwise valid. (i)  No record associating an individual voter with a ballot may be created. |
| SECTION 2.06.  Section 86.006, Election Code, is amended by amending Subsections *(a) and (e)* and adding Subsection *(a-2)* to read as follows: | SECTION 3.09.   Section 86.006*(a-1)*, Election Code, is amended to read as follows: | SECTION 4.08.  Section 86.006, Election Code, is amended by amending Subsection *(a)* and adding Subsection *(a-2)* to read as follows: |
| (a)  A marked ballot voted under this chapter must be returned to the early voting clerk in the official carrier envelope.  The carrier envelope may be delivered in another envelope and must be transported and delivered only by: | *No equivalent provision.* | (a) Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (1) mail;<br>(2) common or contract carrier; or<br>(3) subject to <u>Subsections</u> [Subsection] (a-1) <u>and (a-2)</u>, in-person delivery by the voter who voted the ballot. | | |
| *No equivalent provision.* | (a-1) The voter may deliver a marked ballot in person to the early voting clerk's office only while the polls are open on election day. A voter who delivers a marked ballot in person must present an acceptable form of identification described by Section 63.0101. <u>If a poll watcher duly accepted for service is available at the time of the delivery of ballots under this subsection, the watcher is entitled to observe the delivery. The poll watcher must be able to determine how the ballots are being delivered and how election officials are making decisions about the delivery of ballots, if applicable. The poll watcher may not disrupt the process of delivering ballots.</u>  [FA4(8);FA6(17)-(18)] | Same as Senate version. |
| <u>(a-2)  An in-person delivery of a marked ballot voted under this chapter must be received by *a person* at the time of delivery. *A ballot delivered in violation of this subsection may not be counted.*</u> | *No equivalent provision.* | <u>(a-2)  An in-person delivery of a marked ballot voted under this chapter must be received by *an election official* at the time of delivery. *The receiving official shall record the voter's name, signature, and type of identification provided under Section 63.0101 on a roster prescribed by the secretary of state. The receiving official shall attest on the roster that the delivery complies with this section.*</u> |
| (e)  Carrier envelopes may not be collected and stored at another location for subsequent delivery to the early voting | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (1E) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| clerk.  The secretary of state shall prescribe appropriate procedures to implement this subsection and to provide accountability for the delivery of the carrier envelopes from the voting place to the early voting clerk.  <u>A ballot delivered in violation of this subsection may not be counted.</u> | | |
| SECTION 2.07.   Section 86.011(c), Election Code, is amended to read as follows:<br>(c)  If the return is not timely, the clerk shall enter the time of receipt on the carrier envelope and retain it <u>in a locked container</u> for the period for preserving the precinct election records.  The clerk shall destroy the unopened envelope and its contents after the preservation period. | *No equivalent provision.* | SECTION 5.08.  Same as Senate version. |
| *(See ARTICLE 3, ELECTION SECURITY, below.)* | ARTICLE 2.  REGISTRATION OF VOTERS AND CONDUCT OF ELECTIONS | ARTICLE 3.   CONDUCT   AND   SECURITY   OF ELECTIONS. |
| *No equivalent provision.* | SECTION 2.___.  Section 2.053(a), Election Code, is amended to read as follows:<br>(a) On receipt of the certification, the governing body of the political subdivision by order or ordinance <u>shall</u> [may] declare each unopposed candidate elected to the office. If no election is to be held on election day by the political subdivision, a copy of the order or ordinance shall be posted on election day at each polling place used or that would have been used in the election.  [FA10] | SECTION 3.01.  Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | SECTION 2.___. Section 2.056(c), Election Code, is amended to read as follows:<br>(c) A certifying authority shall [may] declare a candidate elected to an office of the state or county government if, were the election held, only the votes cast for that candidate in the election for that office may be counted. [FA10] | SECTION 3.02. Same as House version. |
| *No equivalent provision.* | SECTION 2.___. Section 13.046(h), Election Code, is amended to read as follows:<br>(h) The secretary of state shall:<br>(1) consult with the Texas Education Agency regarding the number of registration application forms to provide to each high school;<br>(2) provide to each high school registration application forms once each fall and spring semester in the number determined from the consultation under Subdivision (1); and<br>(3) prescribe any additional procedures necessary to implement this section. [FA13] | Same as Senate version. |
| *No equivalent provision.* | SECTION 2.01. Sections 16.001(a) and (b), Election Code, are amended to read as follows:<br>(a) Each month the local registrar of deaths shall prepare an abstract of each death certificate issued in the month for a decedent 18 years of age or older who was a resident of the state at the time of death. The local registrar of deaths shall file each abstract with the voter registrar of the decedent's county of residence and the secretary of state as soon as possible, but not later than the 7th [10th] day after [of the | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | month following the month in which] the abstract is prepared.<br>(b)  Each month the clerk of each court having probate jurisdiction shall prepare an abstract of each application for probate of a will, administration of a decedent's estate, or determination of heirship, and each affidavit under Chapter 205, Estates Code, that is filed in the month with a court served by the clerk.  The clerk shall file each abstract with the voter registrar and the secretary of state as soon as possible, but not later than the 7th [10th] day after [of the month following the month in which] the abstract is prepared. | |
| *No equivalent provision.* | SECTION 2.___.  Section 52.092(a), Election Code, is amended to read as follows:<br>(a) Except as provided by Section 2.053(c) or 2.056(e), for [For] an election at which offices regularly filled at the general election for state and county officers are to appear on the ballot, the offices shall be listed in the following order:<br>(1) offices of the federal government:<br>(2) offices of the state government:<br>(A) statewide offices;<br>(B) district offices;<br>(3) offices of the county government:<br>(A) county offices;<br>(B) precinct offices.  [FA10] | SECTION 3.04. Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]*

SECTION 2.08.  Chapter 86, Election Code, is amended by adding Section 86.015 to read as follows:

Substantially same as Senate version. [FA14]

*No equivalent provision.*

Sec. 86.015.   ELECTRONIC   TRACKING   OF APPLICATION FOR BALLOT VOTED BY MAIL OR BALLOT VOTED BY MAIL.  (a)  The secretary of state shall develop or otherwise provide an online tool to each early voting clerk that enables a person who submits an application for a ballot to be voted by mail to track the location and status of the person's application and ballot on the secretary's Internet website and on the county's Internet website if the early voting clerk is the county clerk of a county that maintains an Internet website.

(b)  The online tool developed or provided under Subsection (a) must require the voter to provide, before permitting the voter to access information described by that subsection:

(1)  the voter's name and registration address and the last four digits of the voter's social security number; and

(2)  the voter's:

(A)  driver's license number; or

(B)   personal identification card number issued by the Department of Public Safety.

(c)  An online tool used under this section must update the applicable Internet website as soon as practicable after each of the following events occurs:

(1)   receipt by the early voting clerk of the person's application for a ballot to be voted by mail;

(2)  acceptance or rejection by the early voting clerk of the person's application for a ballot to be voted by mail;

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

<table>
<tr><td>

(3)  placement in the mail by the early voting clerk of the person's official ballot;
(4)  receipt by the early voting clerk of the person's marked ballot; and
(5)  acceptance or rejection by the early voting ballot board of a person's marked ballot.
(c-1)  The information contained in Subsection (c) is not public information for the purposes of Chapter 552, Government Code, until after Election Day.
(d)  The secretary of state shall adopt rules and prescribe procedures as necessary to implement this section.

SECTION 2.09.   Section 87.027(i), Election Code, is amended to read as follows:
(i)  The signature verification committee shall compare the signature on each carrier envelope certificate, except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter.  The committee may also compare the signatures with any *known signature* [*two or more signatures*] of the voter [*made within the preceding six years and*] on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.  Except as provided by Subsection (l), a determination under this subsection that the signatures are not those of the voter must be made by a majority vote of the committee's membership.   The committee shall place the jacket envelopes, carrier envelopes, and applications of voters

</td><td>

SECTION ___.Section 87.027(i), Election Code, is amended to read as follows:
(i) The signature verification committee shall compare the signature on each carrier envelope certificate, except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter. The committee may also compare the signatures with any *two or more signatures* of the voter *made within the preceding six years and* on file with the county clerk or voter registrar to determine whether the signatures are those of the voter. Except as provided by Subsection (l), a determination under this subsection that the signatures are not those of the voter must be made by a majority vote of the committee's membership. The committee shall place the jacket envelopes, carrier envelopes, and applications of voters whose signatures are

</td><td>

SECTION 5.09.  Same as Senate version.

</td></tr>
</table>

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| whose signatures are not those of the voter in separate containers from those of voters whose signatures are those of the voter. | not those of the voter in separate containers from those of voters whose signatures are those of the voter. *As soon as practicable, but in no event more than one business day, after the committee discovers that a voter did not sign the carrier envelope certificate or determines that the signature on the voter's ballot application or certificate is not that of the voter, the committee chair shall deliver the jacket envelope, carrier envelope, and application of the voter to the early voting ballot board.* | |
| The committee chair shall deliver the ***sorted materials*** to the early voting ballot board at the time specified by the board's presiding judge. | The committee chair shall deliver the ***jacket envelopes, carrier envelopes, and applications of voters whose signatures are those of the voter*** *[sorted materials]* to the early voting ballot board at the time specified by the board's presiding judge.  [FA15] | |
| SECTION 2.10.   Section 87.041*(e)*, Election Code, is amended to read as follows: | SECTION __.  Sections 87.041*(b) and (d)*, Election Code, are amended to read as follows: | SECTION 5.10.  Section 87.041, Election Code, is amended by amending Subsections (b) and (e) and adding Subsection (d-1) to read as follows: |
| *No equivalent provision.* | (b) *Except as provided by Section 87.0411(h), a [A]* ballot may be accepted only if:<br>(1) the carrier envelope certificate is properly executed;<br>(2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness; | (b) *A* ballot may be accepted only if:<br><br>(1)  the carrier envelope certificate is properly executed;<br>(2)  neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness; |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (3) the voter's ballot application states a legal ground for early voting by mail; | (3) the voter's ballot application states a legal ground for early voting by mail; |
| | (4) the voter is registered to vote, if registration is required by law; | (4) the voter is registered to vote, if registration is required by law; |
| | (5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence; | (5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence; |
| | (6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; *and* | (6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; *[and]* |
| | (7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003. [FA15] | (7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003*; and* |
| | | *(8) the information required under Section 86.002(g) provided by the voter matches the information on the voter's application for voter registration under Section 13.002(c)(8)*. |
| *No equivalent provision.* | (d) Except as provided by Section 87.0411(h), a [A] ballot shall be rejected if any requirement prescribed by Subsection (b) is not satisfied. In that case, the board shall indicate the rejection by entering "rejected" on the carrier envelope and on the corresponding jacket envelope. [FA15] | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Same as Senate version. | (d-1) If a voter provides the information required under Section 86.002(g) and it matches the information on the voter's application for voter registration under Section 13.002(c)(8), the signature on the ballot application and on the carrier envelope certificate shall be rebuttably presumed to be the signatures of the voter. |
| (e)  In making the determination under Subsection (b)(2), the board may also compare the signatures with any known signature [two or more signatures] of the voter [made within the preceding six years and] on file with the county clerk or voter registrar *to determine whether the signatures are those of the voter*. | *No equivalent provision.* | (e)  In making the determination under Subsection (b)(2), *to determine whether the signatures are those of the voter*, the board*: (1) shall request from the Department of Public Safety any signature of the voter's on file with that department and compare the signatures of the voter on the ballot application and the carrier envelope certificate with any signature provided; and (2)* may also compare the signatures with any known signature [two or more signatures] of the voter [made within the preceding six years and] on file with the county clerk or voter registrar *[to  determine  whether  the  signatures  are those of the voter]*. |
| SECTION 2.11.  Sections 87.062(a) and (c), Election Code, are amended to read as follows: | *No equivalent provision.* | SECTION 5.12.  Sections 87.062(a) and (c), Election Code, are amended to read as follows: |
| (a)  On the direction of the presiding judge, the early voting ballot board, in accordance with Section 85.032(b), shall open the containers [container] for the early voting ballots that are to be counted by the board, remove the contents from | *No equivalent provision.* | (a)  Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| each [the] container, and remove any ballots enclosed in ballot envelopes from their envelopes. | | |
| (c)  Ballots voted by mail shall be tabulated separately from the ballots voted by personal appearance and shall be separately reported on the returns [The results of all early voting ballots counted by the board under this subchapter shall be included in the same return]. | *No equivalent provision.* | (c)  Same as Senate version, except requires ballots voted by mail to be *stored separately from the ballots voted by personal appearance*. |
| SECTION 2.12.  Section 87.103, Election Code, is amended to read as follows:<br>Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS.  (a)  The early voting electronic system ballots counted at a central counting station, the ballots cast at precinct polling places, and the ballots voted by mail shall be tabulated separately [from the ballots cast at precinct polling places] and shall be separately reported on the returns.<br>(b)  The early voting returns prepared at the central counting station must include any early voting results obtained by the early voting ballot board under Subchapter [Subchapters] D [and E]. | *No equivalent provision.* | SECTION 5.13. Same as Senate version. |
| SECTION 2.13.  Section 87.126, Election Code, is amended by adding Subsection (a-1) to read as follows:<br>(a-1)  Electronic records made under this section shall record both sides of any application, envelope, or ballot recorded, and all such records shall be provided to the early voting ballot board, the signature verification committee, or both. | *No equivalent provision.* | SECTION 5.14. Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Same as Senate version. | SECTION 5.15. Subchapter G, Chapter 87, Education Code, is amended by adding Section 87.128 to read as follows: Sec. 87.128. NOTES. Each member of an early voting ballot board and each member of a signature verification committee is entitled to take and keep any notes reasonably necessary to perform the member's duties under this chapter. |
| SECTION 2.14.  The changes in law made by this article apply only to an application for an early voting ballot to be voted by mail that is submitted on or after the effective date of this Act. | *No equivalent provision.* | Same as House version. |
| ARTICLE 3. ELECTION SECURITY | *No equivalent provision.* | (*See ARTICLE 3, CONDUCT AND SECURITY OF ELECTIONS, above.*) |
| SECTION 3.01.   Section 33.006(b), Election Code, is amended to read as follows: (b) A certificate of appointment must: (1) be in writing and signed by the appointing authority or, for an appointment for a write-in candidate under Section 33.004, by each of the voters making the appointment; (2) indicate the capacity in which the appointing authority is acting; (3) state the name, residence address, and voter registration number of the appointee and be signed by the appointee; (4) identify the election and the precinct polling place or other location at which the appointee is to serve; and | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

(5) in an election on a measure, identify the measure if more than one is to be voted on and state which side of the measure the appointee represents[; and

[(6) contain an affidavit executed by the appointee stating that the appointee will not have possession of a device capable of recording images or sound or that the appointee will disable or deactivate the device while serving as a watcher].

SECTION 3.02.    Section 33.051(c), Election Code, is amended to read as follows:

(c) [A watcher may not be accepted for service if the watcher has possession of a device capable of recording images or sound unless the watcher agrees to disable or deactivate the device.] The presiding judge may inquire whether a watcher has possession of a [any prohibited] recording device before accepting the watcher for service.

SECTION 3.03.  Section 33.056, Election Code, is amended by amending Subsection (a) and adding Subsections (e) and (f) to read as follows:

(a)   Except as provided by Section 33.057, a watcher is entitled to observe any activity conducted at the location at which the watcher is serving.  A watcher is entitled to sit or stand [conveniently] near enough to see and hear the election officers conducting the observed activity, except as otherwise prohibited by this chapter.

---

*No equivalent provision.*

SECTION 3.04.  Section 33.056, Election Code, is amended by adding Subsections (e) and (f) to read as follows: [FA6(10)]

*No equivalent provision.*

---

Same as House version.

SECTION 4.03.  Section 33.056, Election Code, is amended by amending Subsection (a) and adding Subsections (e) and (f) to read as follows:

(a)  Same as Senate version.

---

Associated CCR Draft: 87R30396

21.149.734

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (e)  Except as provided by Section 33.057(b), a watcher may not be denied free movement within the location at which the watcher is serving. | *No equivalent provision.* | (e)  Except as provided by Section 33.057(b), a watcher may not be denied free movement *where election activity is occurring* within the location at which the watcher is serving. |
| (f)  In this code, a watcher who is entitled to "observe" an activity is entitled to sit or stand near enough to see and hear the activity. | (e)  In this code, a watcher who is entitled to "observe" an activity or procedure is entitled to sit or stand near enough to see and hear the activity *or procedure in accordance with Section 33.057.*  [FA6(11)] | (f)  In this code, a watcher who is entitled to "observe" an *election* activity is entitled to sit or stand near enough to see and hear the activity. |
| *(See SECTION 4.03 below, adding Sec. 33.062.)* | | |
| | (f) A watcher *who believes that the watcher was unlawfully obstructed from the performance of the watcher's duties may seek* injunctive relief under Section 273.081, a writ of mandamus under Section 161.009 or 273.061, and any other remedy available under law.  [FA6(12)] | SECTION 4.06. Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.063 to read as follows: Sec. 33.063.  RELIEF.  (a)  A watcher, *or the appointing authority for a watcher, who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties may seek*: (1)  injunctive  relief  under  Section  273.081, *including issuance of temporary orders;* (2)  a writ of mandamus under Sections 161.009 or 273.061; and (3)  any other remedy available under law. *(b)  The relief provided by this section is available to a state inspector appointed under Chapter 34 or any other election inspector authorized by law.* |
| SECTION 3.04. Section 33.061, Election Code, is amended by adding Subsection *(c)* to read as follows: | SECTION 3.06.   Section  33.061*(a)*, Election Code, is amended to read as follows: | SECTION 4.05. Section  33.061*(a)*,  Election  Code,  is amended to read as follows: |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (a)  A person commits an offense if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity <u>or procedure</u> the watcher is entitled to observe | (a)  A person commits an offense if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity <u>or procedure</u> the ***person knows the*** watcher is entitled to observe |
| <u>***(c)  An offense under Subsection (a) includes*** an action taken to distance or obstruct the view of a watcher in a way that makes observation reasonably ineffective.</u> | <u>, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.</u> | <u>, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.</u> |
| SECTION 3.05.  Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.063 to read as follows:<br><u>Sec. 33.063.  DELIVERY OF CERTAIN EVIDENCE TO SECRETARY OF STATE.  (a)  A watcher may electronically transmit a photo, video, or audio recording made by the watcher during the watcher's service directly to the secretary of state if the watcher reasonably believes the photo, video, or recording contains evidence of unlawful activity.  The means of transmission must be approved by the secretary of state.</u><br><u>(b)  The secretary of state shall make a photo, video, or audio recording submitted under this section available to the attorney general upon request.</u><br><u>(c)  Except as expressly provided by this section, a watcher may not share or transmit a photo, video, or audio recording, or allow a photo, video, or audio recording to be shared or transmitted, if the photo, video, or recording was created by the watcher during the watcher's service.</u> | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (d)  The secretary of state shall adopt rules to administer this section. | | |
| *No equivalent provision.* | SECTION 2.____.   Sections 43.007(c) and (d), Election Code, are amended to read as follows: [FA20] | Same as Senate version. |
| | (c)  In conducting the program, the secretary of state shall provide for an audit of the voting system equipment [direct recording electronic voting units] before and after the election, and during the election to the extent such an audit is practicable. [FA20] | |
| | (d)  The secretary of state shall select to participate in the program each county that: | |
| | (1)  has held a public hearing under Subsection (b); | |
| | (2)  has submitted documentation listing the steps taken to solicit input on participating in the program by organizations or persons who represent the interests of voters; | |
| | (3)  has implemented a computerized voter registration list that allows an election officer at the polling place to verify that a voter has not previously voted in the election; | |
| | (4)  uses direct recording electronic voting machines, ballot marking devices, or hand-marked scannable paper ballots that are printed and scanned at the polling place or any other type of voting system equipment that the secretary of state determines is capable of processing votes for each type of ballot to be voted in the county; and | |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | (5)   is determined by the secretary of state to have the appropriate technological capabilities.  [FA20] | |
| SECTION 3.06.  Section 43.007, Election Code, is amended by amending Subsection *(m)* and adding Subsection *(m-1)* to read as follows: | *No equivalent provision.* | Same as House version. |

SECTION 3.06.  Section 43.007, Election Code, is amended by amending Subsection *(m)* and adding Subsection *(m-1)* to read as follows:

(m)  In adopting a methodology under Subsection (f), the county must ensure that:

(1)  in a county with a population of less than one million:

(A)  each county commissioners precinct contains at least one countywide polling place; and

(B)  [(2)]   the total number of permanent branch and temporary branch polling places open for voting in a county commissioners precinct does not exceed more than twice the number of permanent branch and temporary branch polling places in another county commissioners precinct; and

(2)  in a county with a population of one million or more, the number of polling places located in each state representative district included in the territory of the county is calculated by dividing the number of eligible voters residing in that district by the total number of eligible voters residing in the county and using the number generated as a percentage to allocate the same percentage of polling place locations, rounding up to the nearest whole number, if necessary.

(m-1)  Election officials and voting equipment, materials, and supplies must be allocated to each polling place based

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]*

on the same percentage as polling place locations are determined under Subsection (m) with no greater than a five percent deviation in the allocation between state representative districts. Each polling place location must be able to accommodate 100 percent of the equipment allocated to be operational at the same time.

SECTION 3.07.   Section 43.031(b), Election Code, is amended to read as follows:
(b)  Each polling place shall be located inside a building. A polling place may not be located in a tent or *other* temporary moveable structure or in a facility primarily designed for motor vehicles. No voter may cast a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009.

*No equivalent provision.*

SECTION 3.03. Section 43.031(b), Election Code, is amended to read as follows:
(b)  Each polling place shall be located inside a building. A polling place may not be located in a tent or *similar* temporary moveable structure or in a facility primarily designed for motor vehicles. No voter may cast a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009.

SECTION 3.08. Section 61.014, Election Code, is amended by amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:
(a)  A person, other than a watcher using the device solely to record image or sound as permitted under Subsection (b), may not use a wireless communication device within 100 feet of a voting station.
(b)  A person, other than a watcher, may not use a [any] mechanical or electronic device to record [means of recording] images or sound at a polling place. A watcher may use such a device to record images or sound at a polling place, except that a watcher may record activity [within 100

*No equivalent provision.*

Same as House version.

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| feet] of a voter at a voting station only if the voter is receiving assistance the watcher reasonably believes to be unlawful. (b-1) A recording made by a watcher under Subsection (b) may not capture or record any information on a voter's ballot. | | |
| SECTION 3.09. Section 64.007(c), Election Code, is amended to read as follows: (c) An election officer shall maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit. An election officer shall enter on the register the name of each voter who returns a spoiled ballot and the spoiled ballot's number. | SECTION 2.02. Same as Senate version. | SECTION 3.05. Section 64.007(c), Election Code, is amended to read as follows: (c) An election officer shall maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit. An election officer shall enter on the register the name of each voter who returns a spoiled ballot and the spoiled ballot's number. *The secretary of state shall create and promulgate a form to be used for this purpose.* |
| | | ARTICLE 6. ASSISTANCE OF VOTERS |
| SECTION 3.10. Section 64.009, Election Code, is amended by amending Subsection (b) and adding Subsections (b-1), (e), (f), (f-1), (g), and (h) to read as follows: | *No equivalent provision.* | SECTION 6.01. Section 64.009, Election Code, is amended by amending Subsection (b) and adding Subsections (b-1), (e), (f), (f-1), (g), and (h) to read as follows: |
| (b)  The regular voting procedures, except those in Subchapter B, may be modified by the election officer to the extent necessary to conduct voting under this section. | *No equivalent provision.* | (b) Same as Senate version. |
| (b-1) A person other than *the* voter is only permitted to be inside *the* motor vehicle while *the* voter votes if the person | *No equivalent provision.* | (b-1) A person other than *a* voter is only permitted to be inside *a* motor vehicle while *a* voter votes *from the motor* |

Associated CCR Draft: 87R30396

35

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| would be entitled to accompany the voter to the voting station under other law. | | ***vehicle*** if the person would be entitled to accompany the voter to the voting station under other law. |
| (e)  Except as provided by Section 33.057, a poll watcher is entitled to observe any activity conducted under this section. (f)  A person who simultaneously assists three or more voters voting under this section by providing the voters with transportation to the polling place must complete and sign a form, provided by an election officer, that contains the person's name and address and whether the person is providing assistance solely under this section or under both this section and Subchapter B. (f-1)  Subsection (f) does not apply if the person is related to each voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code. | *No equivalent provision.* | (e), (f), (f-1) Same as Senate version. |
| (g)  A form completed under Subsection (f) shall be delivered to the secretary of state as soon as practicable.  The secretary shall retain a form delivered under this section for the period for preserving the precinct election records and shall make the form available to the attorney general for inspection if the attorney general has received a complaint to which the information may be responsive. | *No equivalent provision.* | (g) Same as Senate version, except requires secretary of state to make the form available to the attorney general for inspection *upon request.* |
| (h)  The secretary of state shall prescribe the form described by Subsection (f). | *No equivalent provision.* | (h) Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]*

*No equivalent provision.*

SECTION 2.___.   Section 87.121, Election Code, as amended by Chapters 1083 (H.B. 1850) and 1215 (S.B. 902), Acts of the 86th Legislature, Regular Session, 2019, is reenacted and amended to read as follows:

Sec. 87.121. EARLY VOTING ROSTERS. (a) The early voting clerk shall maintain for each election a roster listing each person who votes an early voting ballot by personal appearance and a roster listing each person to whom an early voting ballot to be voted by mail is sent.

(b)  For each person listed, the applicable roster must include:

(1)  the person's name, address, and voter registration number;

(2)  an identification of the person's county election precinct of registration; and

(3)  the date of voting or the date the ballot was mailed to the person, as applicable.

(c)  Each roster shall be updated daily.

(d)  Each roster may be maintained in any form approved by the secretary of state.

(e)  The clerk shall preserve each roster after the election for the period for preserving the precinct election records.

(f)  Information on the roster for a person to whom an early voting mail ballot has been sent is not available for public inspection, except to the voter seeking to verify that the

Same as Senate version.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | information pertaining to the voter is accurate, until the first business day after election day. | |
| | (g)  Information on the roster for a person who votes an early voting ballot by personal appearance shall be made available for public inspection as provided by Subsection (i) not later than 11 a.m. on the day after the date the information is entered on the roster under Subsection (c). | |
| | (h)  Information on the roster for a person who votes an early voting ballot by mail shall be made available for public inspection as provided by Subsection (i) not later than 11 a.m. on the day following the day the early voting clerk receives any [a] ballot voted by mail. | |
| | (i)  The information under Subsections (g) and (h) must be made available: | |
| | (1)  for an election in which the county clerk is the early voting clerk: | |
| | (A)  on the publicly accessible Internet website of the county; or | |
| | (B)  if the county does not maintain a website, on the bulletin board used for posting notice of meetings of the commissioners court; or | |
| | (2)  for an election not described by Subdivision (1): | |
| | (A)   on the publicly accessible Internet website of the authority ordering the election; or | |
| | (B)  if the authority ordering the election does not maintain a website, on the bulletin board used for posting notice of meetings of the governing body of the authority. | |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

(j) [(i)]  The early voting clerk for a primary election or the general election for state and county officers shall submit to the secretary of state for posting on the secretary of state's Internet website the information described by:

(1)  Subsection (g) not later than 11 a.m. on the day after the date the information is entered on the roster under Subsection (c); and

(2)  Subsection (h) not later than 11 a.m. on the day following the day the early voting clerk receives any [a] ballot voted by mail.

(k)  The early voting clerk for a primary election or the general election for state and county officers shall submit to the secretary of state for posting on the secretary of state's Internet website the election day information described by Subsections (g) and (h) not later than 11 a.m. on the day after the election.

(l)  The early voting clerk for a primary election or the general election for state and county officers shall submit to the secretary of state for posting on the secretary of state's Internet website the final rosters containing information described by Subsections (g) and (h) not later than the 20th day after the date of the local canvass.

(m) [(j)]  The secretary of state shall [make any early voting roster created under this section available to the public on the secretary's Internet website.

[(j)   The secretary of state shall] post the information described by Subsection (j) [(i)] on the secretary of state's Internet website in a downloadable format not later than 11

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | a.m. on the day following the day of receipt of the information. (n) [(l)] The secretary of state shall create a system for an early voting clerk for a primary election or the general election for state and county officers to provide the information to the secretary of state for posting on the secretary of state's Internet website under Subsection (j) [(i)]. [FA14] | |
| *No equivalent provision.* | Same as Senate version. | SECTION 11.04. Not later than January 1, 2022, the secretary of state shall develop the training course required by Section 31.019, Election Code, as added by this Act. |
| *No equivalent provision.* | SECTION 2.___.To the extent of any conflict, this Act prevails over another Act of the 87th Legislature, Regular Session, 2021, relating to nonsubstantive additions to and corrections in enacted codes. [FA14] | SECTION 11.05. Same as House version. |
| *No equivalent provision.* | ARTICLE 3. ELECTION OFFICERS AND OBSERVERS | ARTICLE 4. ELECTION OFFICERS AND OBSERVERS |
| *No equivalent provision.* | SECTION 3.01. Section 32.075, Election Code, is amended by adding Subsections (g) and (h) to read as follows: [FA4(4)] (g) A presiding judge may not have a watcher duly accepted for service under Subchapter A, Chapter 33, removed from the polling place for violating a provision of this code, the Penal Code, or any other provision of law relating to the conduct of elections, unless the violation was observed by an | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | election judge or clerk after the watcher was previously warned that the watcher's conduct violated the law. [FA6(7)]<br>(h) Notwithstanding subsection (g), a presiding judge may call a law enforcement officer to request that a poll watcher be removed if the poll watcher commits a breach of the peace or a violation of this chapter.  [FA4(5)] | |
| *No equivalent provision.* | SECTION 3.02. Subchapter A, Chapter 33, Election Code, is amended by adding Section 33.0015 to read as follows: Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.  The purpose of this chapter is to preserve the integrity of *the ballot box* in accordance with Section 4, Article VI, Texas Constitution, by providing for the appointment of watchers. *It is the intent of the legislature that watchers duly accepted for service under this chapter be allowed to observe and report on irregularities in the conduct of any election, but may not interfere in the orderly conduct of an election.* To effect that purpose, a watcher appointed under this chapter shall observe without obstructing the conduct of an election and call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of the election. *A watcher may not photograph:*  [FA4(6);FA6(8)-(9)]<br>*(1) private information;*<br>*(2) the actual ballot; or*<br>*(3) the marking of a ballot.*  [FA4(6)] | SECTION 4.01. Subchapter A, Chapter 33, Election Code, is amended by adding Section 33.0015 to read as follows: Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.  The purpose of this chapter is to preserve the integrity of *elections* in accordance with Section 4, Article VI, Texas Constitution, by providing for the appointment of watchers.<br><br>To effect that purpose, a watcher appointed under this chapter shall observe without obstructing the conduct of an election and call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of the election. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| *No equivalent provision.* | SECTION 3.05.  Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.0605 to read as follows: <u>Sec. 33.0605. OBSERVING DATA STORAGE SEALING AND TRANSFER.</u> | SECTION 4.04.  Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.0605 to read as follows: <u>Sec. 33.0605.  OBSERVING DATA STORAGE SEALING AND TRANSFER.</u> |
| *No equivalent provision.* | Same as Senate version | <u>(a) A watcher appointed to serve at a polling place in an election who is available at the time of the action may observe all election activities relating to closing the polling place, including the sealing and transfer of a memory card, flash drive, hard drive, data storage device, or other medium now existing or later developed used by the voting system equipment.</u> |
| *No equivalent provision.* | <u>Notwithstanding any other provision of this code, a watcher duly accepted for service at a polling location is entitled to follow the transfer of election materials from the polling place at which the watcher was accepted to a regional tabulating center, the central counting station, or any other location designated to process election materials.  The authority responsible for administering a regional tabulating center or another location where election materials are processed must accept duly appointed watchers for service in the same manner a watcher is accepted for service under Section 33.051 and must accept the same number of watchers that may serve under Section 33.007(a).</u>  [FA4(7); FA6(13)] | <u>(b)</u> Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Same as Senate version. SECTION 3.07. [Deleted by FA6(14)] | Same as Senate version. |
| *No equivalent provision.* | SECTION 3.08. Section 61.001, Election Code, is amended by amending Subsection (a) and adding Subsection (a-1) to read as follows: <br> (a)  Except as permitted by this code <u>and as described by Subsection (a-1)</u>, a person may not be in the polling place from the time the presiding judge arrives there on election day to make the preliminary arrangements until the precinct returns have been certified and the election records have been assembled for distribution following the election. <br> <u>(a-1)  Under this code, a person may be lawfully present in a polling place during the time described by Subsection (a) if the person is:</u> <br> <u>(1)  an election judge or clerk;</u> <br> <u>(2)  a watcher;</u> <br> <u>(3)  the secretary of state;</u> <br> <u>(4)  a staff member of the Elections Division of the Office of the Secretary of State performing an official duty in accordance with this code;</u> <br> <u>(5)  an election official, a sheriff, or a staff member of an election official or sheriff delivering election supplies;</u> <br> <u>(6)</u> ***an inspector designated by law;*** [FA6(15)-(16)] <br> <u>(7)  a person admitted to vote;</u> <br> <u>(8)  a child under 18 years of age who is accompanying a parent who has been admitted to vote;</u> | SECTION 4.07.  Section 61.001, Election Code, is amended by amending Subsection (a) and adding Subsection (a-1) to read as follows: <br> (a)  Except as permitted by this code <u>and as described by Subsection (a-1)</u>, a person may not be in the polling place from the time the presiding judge arrives there on election day to make the preliminary arrangements until the precinct returns have been certified and the election records have been assembled for distribution following the election. <br> <u>(a-1)  Under this code, a person may be lawfully present in a polling place during the time described by Subsection (a) if the person is:</u> <br> <u>(1)  an election judge or clerk;</u> <br> <u>(2)  a watcher;</u> <br> <u>(3)  the secretary of state;</u> <br> <u>(4)  a staff member of the Elections Division of the Office of the Secretary of State performing an official duty in accordance with this code;</u> <br> <u>(5)  an election official, a sheriff, or a staff member of an election official or sheriff delivering election supplies;</u> <br> <u>(6)</u> *a state inspector;* <br> <u>(7)  a person admitted to vote;</u> <br> <u>(8)  a child under 18 years of age who is accompanying a parent who has been admitted to vote;</u> |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (9) a person providing assistance to a voter under Section 61.032 or 64.032; | (9) a person providing assistance to a voter under Section 61.032 or 64.032; |
| | (10) a person accompanying a voter who has a disability; | (10) a person accompanying a voter who has a disability; |
| | (11) a special peace officer appointed by the presiding judge under Section 32.075; | (11) a special peace officer appointed by the presiding judge under Section 32.075; |
| | (12) the county chair of a political party conducting a primary election, as authorized by Section 172.1113; | (12) the county chair of a political party conducting a primary election, as authorized by Section 172.1113; |
| | (13) a voting system technician, as authorized by Section 125.010; | (13) a voting system technician, as authorized by Section 125.010; |
| | (14) the county election officer, as defined by Section 31.091, as necessary to perform tasks related to the administration of the election; or | (14) the county election officer, as defined by Section 31.091, as necessary to perform tasks related to the administration of the election; or |
| | (15) a person whose presence has been authorized by the presiding judge and alternate presiding judge in accordance with this code. | (15) a person whose presence has been authorized by the presiding judge and alternate presiding judge in accordance with this code. |
| *No equivalent provision.* | SECTION 3.10. Section 87.026, Election Code, is amended to read as follows:<br>Sec. 87.026. BYSTANDERS EXCLUDED. (a) Except as permitted by this code and as described by Subsection (b), a person may not be in the meeting place of an early voting ballot board during the time of the board's operations.<br>(b) Under this code, a person may be lawfully present in the meeting place of an early voting ballot board during the time of the board's operations if the person is:<br>(1) a presiding judge or member of the board;<br>(2) a watcher; | SECTION 4.09. Same as House version, except also includes *an inspector, as provided for by law,* among those who may be present in the meeting place of an early voting ballot board during the specified period. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | (3)  a voting system technician, as authorized by Section 125.010; | |
| | (4) the county election officer, as defined by Section 31.091, as necessary to perform tasks related to the administration of the election;  [FA6(19)] | |
| | (5) the county chair of a political party conducting a primary election or runoff primary election; or  [FA6(20)] | |
| | (6)  a person whose presence has been authorized by the presiding judge in accordance with this code.  [FA6(21)] | |
| *No equivalent provision.* | ARTICLE 4.  ASSISTANCE OF VOTERS | *(See ARTICLE 6, ASSISTANCE OF VOTERS, above.)* |
| SECTION 3.11.  Subchapter B, Chapter 64, Election Code, is amended by adding Section 64.0322 to read as follows: | SECTION 4.01.  Subchapter B, Chapter 64, Election Code, is amended by adding Section 64.0322 to read as follows: | SECTION 6.03.  Subchapter B, Chapter 64, Election Code, is amended by adding Section 64.0322 to read as follows: |
| Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT. | Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT. | Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT. |
| (a)  A person, other than an election officer, who assists a voter in accordance with this chapter is required to complete a form stating: | (a) Same as Senate. | (a) Same as Senate. |
| (1)  the name and address of the person assisting the voter; | (1) Same as Senate. | (1) Same as Senate. |
| (2)  the manner in which the person *assisted* the voter; | (2)  the manner in which the person *is assisting* the voter *under Section 64.031*; [Deleted by FA5(1) and then amended by FA19(1)] | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (3)  the reason the assistance *was* necessary; and | (3)  the reason the assistance *is* necessary *under Section 64.031*; [Deleted by FA5(1) and then amended by FA19(2)] | Same as House version. |
| (4)  the relationship of the *assistant* to the voter. | (4)  the relationship of the *person assisting the voter* to the voter; and  [FA19(3), (4)] | (2) Substantially the same as House version. |
| *No equivalent provision.* | (5)  whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee *in exchange for providing assistance.*  [FA19(4)] | (3)  whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee. |
| (b)  The secretary of state shall prescribe the form required by this section.  The form must be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010, or must be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009. | (b)  Same as Senate version. | (b) Same as Senate version. |
| SECTION 3.12.  Subchapter A, Chapter 65, Election Code, is amended by adding Section 65.016 to read as follows:  Sec.  65.016.    VOTE  *COUNTING*  EQUIPMENT.  Beginning January 1, 2024, *no* equipment to *count* votes *shall* be used *that is capable of being connected to the Internet or any other computer network.* | *No equivalent provisions.* | SECTION 3.06.  Subchapter A, Chapter 65, Election Code, is amended by adding Section 65.016 to read as follows:  Sec. 65.016.  VOTE  *TABULATING*  EQUIPMENT.  Beginning January 1, 2024, equipment to *tabulate* votes *may not* be used *if any wireless connectivity capability of the equipment has not been disabled or removed.* |
| *No equivalent provision.* | Same as Senate version. | SECTION 3.07.  Subchapter A, Chapter 66, Election Code, is amended by adding Section 66.004 to read as follows: |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | Sec. 66.004.  CLOSING POLLING PLACE.  The secretary of state shall adopt rules and create a checklist or similar guidelines to assist the presiding judge of a polling place in processing forms and conducting procedures required by this code at the closing of the polling place. |
| SECTION 3.13.  Section 66.052, Election Code, is amended to read as follows:<br>Sec. 66.052. DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. | *No equivalent provision.* | SECTION 3.08.  Section 66.052, Election Code, is amended to read as follows:<br>Sec. 66.052. DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. |
| (a)  A delivery of election records or supplies that is to be performed by the presiding judge may be performed by an election clerk designated by the presiding judge. | *No equivalent provision.* | (a)  Same as Senate version. |
| (b)  The presiding judge or an election clerk designated by the presiding judge under this section must keep records of each person that has custody of a precinct election record until the records are delivered. | *No equivalent provision.* | Same as House version. |
| *No equivalent provision.* | Same as Senate version. | (b)  If the presiding judge of a polling place designates a clerk to deliver election supplies, the presiding judge shall attest to the designation, and the clerk shall attest to the clerk's acceptance of the responsibility.  The secretary of state shall create and promulgate a form to facilitate compliance with this section. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| SECTION 3.14. Sections 66.058(b) and (g), Election Code, are amended to read as follows:<br>(b)  For a period of at least 60 days after the date of the election, <u>or until any election contest is resolved, whichever is longer,</u> the voted ballots shall be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records.  On the 61st day after election day, <u>or the day an election contest is resolved, whichever is later,</u> the general custodian of election records may:<br>(1)  require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and<br>(2)  unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period.<br>(g)  Electronic records created under Chapter 129 shall be preserved in a secure container.  <u>An electronic device used to store records may not be altered in any manner as to delete or overwrite the records during the preservation period.</u> | *No equivalent provision.* | Same as House version. |
| SECTION 3.15. Section 85.005, Election Code, is amended to read as follows:<br>Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING. | *No equivalent provision.* | SECTION 3.09.  Section 85.005, Election Code, is amended to read as follows:<br>Sec. 85.005.  REGULAR  DAYS  AND  HOURS  FOR VOTING. |
| (a)  Except as provided by Subsection (c), in an election in which a county clerk [or city secretary] is the early voting | *No equivalent provision.* | (a)  Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

clerk under Section 83.002 [or 83.005], early voting by personal appearance at the main early voting polling place shall be conducted on each weekday of [the weekdays of] the early voting period that is not a legal state holiday and for a period of at least nine hours, except that voting may not be conducted earlier than 6 a.m. or later than 9 p.m. [during the hours that the county clerk's or city secretary's main business office is regularly open for business.]

(b)  In an election to which Subsection (a) does not apply, early voting by personal appearance at the main early voting polling place shall be conducted at least nine [eight] hours each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters.  In that case, the voting shall be conducted at least four [three] hours each day.  The authority ordering the election, or the county clerk if that person is the early voting clerk, shall determine which hours the voting is to be conducted.

*No equivalent provision.*

(b) Same as Senate version.

(c)  In a county with a population of 30,000 [100,000] or more, the voting in a primary election or the general election for state and county officers shall be conducted at the main early voting polling place for *[at least]* 12 hours on each weekday of the last week of the early voting period, and the voting in a special election ordered by the governor shall be conducted at the main early voting polling place for *[at least]* 12 hours on each of the last two days of the early voting

*No equivalent provision.*

(c)  In a county with a population of 30,000 [100,000] or more, the voting in a primary election or the general election for state and county officers shall be conducted at the main early voting polling place for *at least* 12 hours on each weekday of the last week of the early voting period, and the voting in a special election ordered by the governor shall be conducted at the main early voting polling place for *at least* 12 hours on each of the last two days of the early voting

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| period.  <u>Voting under this subsection may not be conducted earlier than 6 a.m. or later than 9 p.m.</u>  Voting shall be conducted in accordance with this subsection in those elections in a county with a population under <u>30,000</u> [~~100,000~~] on receipt by the early voting clerk of a written request for the extended hours submitted by at least 15 registered voters of the county.  The request must be submitted in time to enable compliance with Section 85.067. | | period.  <u>Voting under this subsection may not be conducted earlier than 6 a.m. or later than 9 p.m.</u>  Voting shall be conducted in accordance with this subsection in those elections in a county with a population under <u>30,000</u> [~~100,000~~] on receipt by the early voting clerk of a written request for the extended hours submitted by at least 15 registered voters of the county.  The request must be submitted in time to enable compliance with Section 85.067. |
| [~~(d)  In an election ordered by a city, early voting by personal appearance at the main early voting polling place shall be conducted for at least 12 hours:~~<br>~~[(1)  on one weekday, if the early voting period consists of less than six weekdays; or~~<br>~~[(2)  on two weekdays, if the early voting period consists of six or more weekdays.]~~ | *No equivalent provision.* | <u>*(d)  A voter who has not voted before the scheduled time for closing a polling place is entitled to vote after that time if the voter is in line at the polling place by closing time. The secretary of state shall promulgate any materials and provide any training to presiding judges necessary to properly process voters under this subsection*</u> [~~In an election ordered by a city, early voting by personal appearance at the main early voting polling place shall be conducted for at least 12 hours:~~<br>~~[(1)  on one weekday, if the early voting period consists of less than six weekdays; or~~<br>~~[(2)  on two weekdays, if the early voting period consists of six or more weekdays]~~. |
| SECTION 3.16.  Subchapter A, Chapter 85, Election Code, is amended by adding Section 85.0055 to read as follows:<br><u>Sec. 85.0055.  VOTING AFTER POLLS CLOSE.  (a)  A voter who has not voted before the time for closing an early voting polling place is entitled to vote after that time if the</u> | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

| | | |
|---|---|---|
| voter is inside or waiting to enter the polling place at closing time. (b) If voters are waiting to enter the polling place at closing time, the presiding judge shall direct them to enter the polling place and shall close it to others. However, if that procedure is impracticable, at closing time the presiding judge shall distribute numbered identification cards to the waiting voters and permit entry into the polling place for voting after closing time only by those possessing a card. (c) The presiding judge shall take the precautions necessary to prevent voting after closing time by persons who are not entitled to do so. | | |
| SECTION 3.17.   Section 85.006(b), Election Code, is amended to read as follows: | *No equivalent provision.* | SECTION 3.10.  Sections 85.006(b) and (e), Election Code, are amended to read as follows: |
| (b)  In an election in which a county clerk [~~or city secretary~~] is the early voting clerk under Section 83.002 [~~or 83.005~~], only the early voting clerk may order voting on a Saturday or Sunday.  The clerk must do so by written order. | *No equivalent provision.* | (b)  Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | (e)  In a primary election or the general election for state and county officers in a county with a population of 30,000 [~~100,000~~] or more, the early voting clerk shall order voting by personal appearance [~~voting~~] at the main early voting polling place to be conducted on the last Saturday of the early voting period for at least 12 hours, except that voting may not be conducted earlier than 6 a.m. or later than 9 p.m., [~~on~~ |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | ~~the last Saturday~~] and on the last Sunday of the early voting period for at least five hours, except that voting may not be conducted earlier than 1 p.m. or later than 9 p.m [~~on the last Sunday of the early voting period~~]. The early voting clerk shall order voting to be conducted at those times in those elections in a county with a population under 30,000 [~~100,000~~] on receipt of a written request for those hours submitted by at least 15 registered voters of the county. The request must be submitted in time to enable compliance with Section 85.007. This subsection supersedes any provision of this subchapter to the extent of any conflict. |
| SECTION 3.18.  Section 85.010(a-1), Election Code, is amended to read as follows:<br>(a-1)  In this section, "eligible county polling place" means an early voting polling place[~~, other than a polling place established under Section 85.062(e),~~] established by a county. | *No equivalent provision.* | SECTION 3.11. Same as Senate version. |
| SECTION 3.19.  Section 85.033, Election Code, is amended to read as follows:<br>Sec. 85.033.  SECURITY OF VOTING MACHINE.  (a) At the close of early voting each day, the early voting clerk shall secure each voting machine used for early voting in the manner prescribed by the secretary of state so that its unauthorized operation is prevented.   The clerk shall unsecure the machine before the beginning of early voting the following day. | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

(b)  A voting machine used for early voting may not be removed from the polling place until the polls close on election day.  A defective, or in need of repair, machine may be removed from service and replaced.

SECTION 3.20.   Section 85.061(a), Election Code, is amended to read as follows:
(a)  In a countywide election in which the county clerk is the early voting clerk under Section 83.002, an early voting polling place shall be located inside [at] each branch office that is regularly maintained for conducting general clerical functions of the county clerk, except as provided by Subsection (b).  If a suitable room is unavailable inside the branch office, the polling place may be located in another room inside the same building as the branch office.  The polling place may not be located in a tent or *other* temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles.

*No equivalent provision.*

SECTION 3.12. Section  85.061(a),  Election  Code,  is amended to read as follows:
(a)  In a countywide election in which the county clerk is the early voting clerk under Section 83.002, an early voting polling place shall be located inside [at] each branch office that is regularly maintained for conducting general clerical functions of the county clerk, except as provided by Subsection (b).  If a suitable room is unavailable inside the branch office, the polling place may be located in another room inside the same building as the branch office.  The polling place may not be located in a tent or *similar* temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles.

SECTION 3.21.  Section 85.062, Election Code, is amended by amending Subsection (b) and adding Subsection (f-1) to read as follows:
(b)  A polling place established under this section may be located, subject to Subsection (d), at any place in the territory served by the early voting clerk and may be located inside [in] any building [stationary-structure] as directed by the authority establishing the branch office.  The polling place may not be located in a tent or *other* temporary movable

*No equivalent provision.*

SECTION 3.13.  Section 85.062, Election Code, is amended by amending Subsection (b) and adding Subsection (f-1) to read as follows:
(b)  A polling place established under this section may be located, subject to Subsection (d), at any place in the territory served by the early voting clerk and may be located inside [in] any building [stationary-structure] as directed by the authority establishing the branch office.  The polling place may not be located in a tent or *similar* temporary movable

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| structure <u>or a parking garage, parking lot, or similar facility designed primarily for motor vehicles</u> in the general election for state and county officers, general primary election, or runoff primary election. Ropes or other suitable objects may be used at the polling place to ensure compliance with Section 62.004. Persons who are not expressly permitted by law to be in a polling place shall be excluded from the polling place to the extent practicable. <br><br> <u>(f-1)  Notwithstanding any other provision of this section concerning the location of temporary branch polling places, in an election in which countywide polling places are used *under Section 43.007*, the commissioners court of a county shall employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.</u> | | structure <u>or a parking garage, parking lot, or similar facility designed primarily for motor vehicles</u> in the general election for state and county officers, general primary election, or runoff primary election. Ropes or other suitable objects may be used at the polling place to ensure compliance with Section 62.004. Persons who are not expressly permitted by law to be in a polling place shall be excluded from the polling place to the extent practicable. <br><br> <u>(f-1) Notwithstanding any other provision of this section concerning the location of temporary branch polling places, in an election in which countywide polling places are used, the commissioners court of a county shall employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.</u> |
| SECTION 3.22. Chapter 121, Election Code, is amended by adding Section 121.004 to read as follows: <br> <u>Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR PUBLIC INFORMATION. Notwithstanding any other law, including Chapter 552, Government Code, a written letter, e-mail, or other communication, including a communication made confidential by other law, between a public official and a voting systems vendor:</u> <br> <u>(1)  is not confidential;</u> <br> <u>(2)  is public information for purposes of Chapter 552, Government Code; and</u> | *No equivalent provision.* | SECTION 4.11.  Chapter 121, Election Code, is amended by adding Section 121.004 to read as follows: <br> <u>Sec. 121.004. COMMUNICATIONS WITH VOTING SYSTEMS VENDOR PUBLIC INFORMATION.  *(a) Except as provided by Subsection (b) and* notwithstanding any other law, including Chapter 552, Government Code, a written letter, e-mail, or other communication, including a communication made confidential by other law, between a public official and a voting systems vendor:</u> <br> <u>(1)  is not confidential;</u> <br> <u>(2) is public information for purposes of Chapter 552, Government Code; and</u> |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| (3) is not subject to an exception to disclosure provided by Chapter 552, Government Code. | | (3) is not subject to an exception to disclosure provided by Chapter 552, Government Code. *(b) Subsection (a) does not apply to a written letter, e-mail, or other communication related to the bidding process.* |
| SECTION 3.23.   Section 124.002, Election Code, is amended by adding Subsection (c) to read as follows: (c)  Voting system ballots may not be arranged in a manner that allows a political party's candidates to be selected in one motion or gesture. | *No equivalent provision.* | SECTION 3.14. Same as Senate version. |
| SECTION 3.24. Subchapter A, Chapter 125, Election Code, is amended by adding Section 125.0071 to read as follows: Sec. 125.0071.  VOTER ALLOWED TO CAST BALLOT AT ANY TIME. A voting machine or ballot marking device must allow a voter the option to cast or complete the voter's ballot without voting on all races or measures if the voter affirmatively chooses to do so. | *No equivalent provision.* | Same as House version. |
| SECTION 3.25. Subchapter A, Chapter 127, Election Code, is amended by adding Section 127.008 to read as follows: | *No equivalent provision.* | SECTION 4.12.  Subchapter A, Chapter 127, Election Code, is amended by adding Section 127.008 to read as follows: |
| Sec. 127.008.  ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. | *No equivalent provision.* | Sec. 127.008.  ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. |
| (a)  A counting station manager and the presiding judge of the counting station shall develop a protocol under which any electronic device inside a central counting station that is | *No equivalent provision.* | (a)-(b) Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| necessary to count votes is equipped with software that tracks all input and activity on the electronic device. (b) The counting station manager and the presiding judge of the counting station shall ensure that the input and activity tracked by the software is printed and delivered to the secretary of state not later than the fifth day after vote counting is complete. | | |
| *No equivalent provision.* | Same as Senate version. | (c) This section applies only to a central counting station located in a county with a population of 250,000 or more. |
| *No equivalent provision.* | SECTION 3.11. Subchapter A, Chapter 127, Election Code, is amended by adding Section 127.008 to read as follows: Sec. 127.008. BYSTANDERS EXCLUDED. (a) Except as permitted by this code and as described by Subsection (b), a person may not be in a central counting station while ballots are being counted. (b) Under this code, a person may be lawfully present in the central counting station while ballots are being counted if the person is: (1) a counting station manager, tabulation supervisor, assistant to the tabulation supervisor, presiding judge, or clerk; (2) a watcher; (3) a voting system technician, as authorized by Section 125.010; | SECTION 4.10. Same as House version except also includes *an inspector, as provided for by law,* among those who may be present in the central counting station during the specified period. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | (4) the county election officer, as defined by Section 31.091, as necessary to perform tasks related to the administration of the election; or | |
| | (5) a person whose presence has been authorized by the presiding judge of the central counting station in accordance with this code. | |
| SECTION 3.26. Section 127.1232, Election Code, is amended to read as follows:<br>Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) The general custodian of election records shall post a licensed peace officer [guard] to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.<br>(b) The general custodian of election records in a county with a population of less than 100,000 may, and the general custodian of election records in a county with a population of 100,000 or more shall, implement a video surveillance system that retains a record of all areas containing voted ballots from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns. | Same as Senate version. | SECTION 3.15. Section 127.1232, Election Code, is amended to read as follows:<br>Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) The general custodian of election records shall post a licensed peace officer [guard] to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.<br>(b) The general custodian of election records in a county with a population of less than 100,000 may, and the general custodian of election records in a county with a population of 100,000 or more shall, implement a video surveillance system that retains a record of all areas containing voted ballots:<br>(1) from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns; *and*<br>*(2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns.*<br>(c) A video from a system implemented under Subsection (b) may be made available to the public by a livestream in a |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| The video may be made available to the public by a livestream in a county with a population of less than 100,000, and shall be made available to the public by a livestream in a county with a population of 100,000 or more. | | county with a population of less than 100,000, and shall be made available to the public by a livestream in a county with a population of 100,000 or more. |
| (c)  The video recorded is an election record under Section 1.012 and shall be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later. | | (d)  The video recorded is an election record under Section 1.012 and shall be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later. |
| SECTION 3.27.   Section 127.1301, Election Code, is amended to read as follows:<br>Sec. 127.1301.   [~~TALLYING, TABULATING, AND REPORTING~~] CENTRALLY COUNTED OPTICAL SCAN BALLOTS [~~BALLOT UNDERVOTES AND OVERVOTES~~]. (a)  In an election using centrally counted optical scan ballots, the undervotes and overvotes on those ballots shall be tallied, tabulated, and reported by race and by election precinct in the form and manner prescribed by the secretary of state.<br>(b)  After January 1, 2024, an authority operating a central counting station under this chapter may not purchase or use a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified. | *No equivalent provision.* | SECTION 4.13. Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*No equivalent provision.*

[*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*]

**SENATE VERSION**

SECTION 3.28. Subchapter A, Chapter 129, Election Code, is amended by adding Section 129.003 to read as follows:

Sec. 129.003. PAPER AUDIT TRAIL REQUIRED. (a) In this section, "auditable voting system" means a voting system that:

(1) uses a paper record; or

(2) produces a paper record by which a voter can verify that the voter's ballot will be counted accurately.

(b) Except as provided by Subsection (e), a voting system that consists of direct recording electronic voting machines may not be used in an election unless the system is an auditable voting system.

(c) Except for a recount under Title 13 or an election contest under Title 14, the electronic vote is the official record of the ballot. For a recount of ballots cast on a system involving direct recording electronic voting machines, or in an election contest, the *paper record is* the *official record* of the vote *cast.*

(d) An authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, may use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:

(1) if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8,

**CONFERENCE**

SECTION 4.14. Subchapter A, Chapter 129, Election Code, is amended by adding Section 129.003 to read as follows:

Sec. 129.003. PAPER AUDIT TRAIL REQUIRED. (a) In this section, "auditable voting system" means a voting system that:

(1) uses a paper record; or

(2) produces a paper record by which a voter can verify that the voter's ballot will be counted accurately.

(b) Except as provided by Subsection (e), a voting system that consists of direct recording electronic voting machines may not be used in an election unless the system is an auditable voting system.

(c) Except for a recount under Title 13 or an election contest under Title 14, the electronic vote is the official record of the ballot. For a recount of ballots cast on a system involving direct recording electronic voting machines, or in an election contest, the *person requesting* the *recount may request a recount* of the *electronic* vote *or the paper record.*

(d) An authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, may use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:

(1) if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8, 2022, the authority is eligible to have 100

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

<table>
<tr>
<td>

2022, the authority is eligible to have 100 percent of the cost of retrofitting reimbursed under this section; and

(2) if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this section.

(e) Subsections (a)-(c) do not apply to an election held before September 1, 2026.

(f) Before opening the polls for voting, the presiding election judge shall confirm that each voting machine has any public counter reset to zero and shall print the tape that shows the counter was set to zero. After closing the polls for voting, the presiding election judge shall print the tape that shows the number of votes cast. Each election judge present shall sign a tape printed under this subsection.

SECTION 3.29. Section 129.023, Election Code, is amended by adding Subsections (b-2) and (c-1) to read as follows:

(b-2) If the test is being conducted for an election in which a county election board has been established under Section 51.002, the general custodian of election records shall notify each member of the board of the test at least 48 hours before the date of the test. If the county election board chooses to

</td>
<td>

*No equivalent provision.*

</td>
<td>

percent of the cost of retrofitting reimbursed under this section; and

(2) if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this section.

(e) Subsections (a)-(c) do not apply to an election held before September 1, 2026.

(f) Before opening the polls for voting, the presiding election judge shall confirm that each voting machine has any public counter reset to zero and shall print the tape that shows the counter was set to zero. After closing the polls for voting, the presiding election judge shall print the tape that shows the number of votes cast. Each election judge present shall sign a tape printed under this subsection.

SECTION 4.15. Same as Senate version.

</td>
</tr>
</table>

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| witness the test, each member shall sign the statement required by Subsection (e)(1). <br> (c-1) A test conducted under this section must also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered. | | |
| *No equivalent provision.* | Same as Senate version. | SECTION 4.16. Section 127.131, Election Code, is amended by adding Subsection (f) to read as follows: <br> (f) The presiding judge of the central counting station shall provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. The secretary of state shall create and promulgate rules and a form to facilitate compliance with this subsection. The form shall be posted on a website maintained by the county along with election returns and results. |
| SECTION 3.30.  Section 216.001, Election Code, is amended to read as follows: <br> Sec. 216.001.  APPLICABILITY OF CHAPTER.  (a) Except as provided by Subsection (b), this [This] chapter applies only to an election that results in a tie vote as provided by Sections 2.002(i), 2.023(b) and (c), and 2.028. <br> (b) If the results of an election show that the number of votes cast in an election precinct exceeds the number of registered voters in the precinct, the authority designated under Section | *No equivalent provision.* | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

212.026 shall initiate an automatic recount for that precinct in accordance with this chapter.

SECTION 3.31.  Section 81.032, Local Government Code, is amended to read as follows:
Sec. 81.032.   ACCEPTANCE OF DONATIONS AND BEQUESTS.  (a)  The commissioners court may accept a donation of labor or services, gift, grant, donation, bequest, or devise of money or other property on behalf of the county, including a donation under Chapter 38, Government Code, for the purpose of performing a function conferred by law on the county or a county officer.
(b)   The commissioners court may not accept a donation described in Subsection (a) of over $1,000 for use in administering elections without the written consent of the secretary of state.
(c)   The secretary of state may grant consent under Subsection (b) only if:
(1)  the secretary consults with the governor, the lieutenant governor, and the speaker of the house of representatives on the proposed donation; and
(2) the governor, the lieutenant governor, and the speaker of the house of representatives unanimously agree to the secretary's grant of consent.

*No equivalent provision.*

Same as House version.

SECTION 3.32.  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of

*No equivalent provision.*

Same as House version.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose. | | |
| *No equivalent provision.* | SECTION 4.02.  Section 64.034, Election Code, is amended to read as follows:<br>Sec. 64.034.  OATH.  A person selected to provide assistance to a voter must take the following oath, administered by an election officer at the polling place, before providing assistance:<br>"I swear (or affirm) <u>under penalty of perjury</u> that <u>the voter I am assisting *is* eligible to receive assistance because of a physical disability that renders the voter unable to write or see or to read the language in which the ballot is written;</u> I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to <u>reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot;</u> [answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; *I will prepare the voter's ballot as the voter directs;*] <u>I did not pressure, encourage, coerce, *or intimidate* the voter into choosing me to provide assistance;</u> I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs<u>; I will not communicate information about how the voter has voted to another person; and I understand that if assistance is</u> | SECTION 6.04.  Section 64.034, Election Code, is amended to read as follows:<br>Sec. 64.034.  OATH.   A person<u>, *other than an election officer,*</u> selected to provide assistance to a voter must take the following oath, administered by an election officer at the polling place, before providing assistance:<br>"I swear (or affirm) <u>under penalty of perjury</u> that <u>the voter I am assisting *represented to me they are* eligible to receive assistance because of a physical disability that renders the voter unable to write or see or *an inability* to read the language in which the ballot is written;</u> I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to <u>reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot;</u> [answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties;] *I will prepare the voter's ballot as the voter directs;* <u>I did not encourage, pressure, *or* coerce the voter into choosing me to provide assistance; [and]</u> I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs<u>; I will not communicate information about how the voter has voted to another person; and I understand that if assistance is</u> |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | provided to a voter who is not eligible for assistance, the voter's ballot may not be counted." [FA19(5)-(8)] | provided to a voter who is not eligible for assistance, the voter's ballot may not be counted." |
| *No equivalent provision.* | SECTION 4.03. Sections 86.010(e), (h), and (i) are amended to read as follows: [FA6(22)] | SECTION 6.05. Sections 86.010(e), (h), and (i), Election Code, are amended to read as follows: |
| | (e)  A person who assists a voter to prepare a ballot to be voted by mail shall enter on the official carrier envelope of the voter: | (e) Same as House version, except as follows: |
| | (1)   the person's signature, printed name, and residence address; | (1) Same as House version. |
| | (2) the manner of any assistance provided to the voter by the person under Section 64.031  [Deleted by FA5(2) and then amended by FA19(9)] | Same as Senate version. |
| | (3)  the relationship of the person providing the assistance to the voter *under Section 64.031*; and  [FA19(10)] | (2)  the relationship of the person providing the assistance to the voter; and |
| | (4)   whether the person received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee in exchange for providing assistance [on the official carrier envelope of the voter]. | (3) Same as House version. |
| *No equivalent provision.* | (h)  Subsection (f) does not apply to: | (h)  Subsection (f) does not apply to: |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | (1)  a violation of Subsection (c), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code, or was physically living in the same dwelling as the voter at the time of the event; [FA5(3)] | (1)  a violation of Subsection (c), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code, or was physically living in the same dwelling as the voter at the time of the event; *or* |
| | (2)  a violation of Subsection (e), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code. | (2) a violation of Subsection (e), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code. |
| | *(3) the voter is a person with a disability whose assistor is a previously known attendant, caregiver, or friend, whether paid or unpaid.*  [FA5(4)] | |
| | (i)   An offense under this section for a violation of Subsection (c) is increased to the next higher category of offense if it is shown on the trial of an offense under this section that: | (i) Same as House version. |
| | (1)  the defendant was previously convicted of an offense under this code; | |
| | (2)  the offense involved a voter 65 years of age or older; or | |
| | (3)   the defendant committed another offense under this section in the same election. | |
| *No equivalent provision.* | (i-1)  [Deleted by FA6(23)] | *No equivalent provision.* |
| *No equivalent provision.* | SECTION 4.04.  Sections 86.0105(a), (c), and (e), Election Code, are amended to read as follows: | SECTION 6.06. Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*CONFERENCE*

[*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*]

**HOUSE VERSION (IE)**

(a)  A person commits an offense if the person:

(1)  compensates or offers to compensate another person for assisting voters as provided by Section 86.010[, as part of any performance-based compensation scheme based on the number of voters assisted or in which another person is presented with a quota of voters to be assisted as provided by Section 86.010]; or

(2)   solicits, receives, or [engages in another practice that causes another person's compensation from or employment status with the person to be dependent on the number of voters assisted as provided by Section 86.010; or

[(3)  with knowledge that accepting compensation for such activity is illegal,] accepts compensation for an activity described by Subdivision (1) [or (2)].

(c)  An offense under this section is a state jail felony [if it is shown on the trial of an offense under this section that the defendant was previously convicted two or more times under this section].

(e)  For purposes of this section, compensation means an economic benefit as defined by Section 38.01, Penal Code [any form of monetary payment, goods, services, benefits, or promises or offers of employment, or any other form of consideration offered to another person in exchange for assisting voters].  [FA6(24)]

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | SECTION 4.05. Section 86.013(b), Election Code, is amended to read as follows:<br>(b) Spaces must appear on the reverse side of the official carrier envelope for:<br>(1) indicating the identity and date of the election; [and]<br>(2) entering the signature, printed name, and residence address of a person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier; and<br>(3) indicating the relationship of that person to the voter. [FA5(5)] | SECTION 6.07. Same as House version. |
| *No equivalent provision.* | ARTICLE 5. FRAUD AND OTHER UNLAWFUL PRACTICES | ARTICLE 7. FRAUD AND OTHER UNLAWFUL PRACTICES |
| *No equivalent provision.* | SECTION 5.01. Chapter 63, Election Code, is amended by adding Section 63.0111 to read as follows:<br>Sec. 63.0111. OFFENSES RELATED TO PROVISIONAL VOTING. (a) An election judge commits an offense if the judge knowingly provides a voter with a form for an affidavit required by Section 63.001 if the form contains information that the judge entered on the form knowing it was false. [FA11]<br>(b) An offense under this section is a state jail felony. | SECTION 7.01 Same as House version. |
| *No equivalent provision.* | SECTION 5.02. Section 64.012, Election Code, is amended by amending Subsection (a) and adding Subsection (c) to read as follows: | SECTION 9.03. Section 64.012, Election Code, is amended by amending Subsection (a) and adding Subsections (c) and (d) to read as follows: |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | (a) A person commits an offense if the person: (1) votes or attempts to vote in an election *if* [in which] the person knows: *(A) of particular circumstances that make the person ineligible [is not eligible] to vote in the election; and (B) that those circumstances make the person ineligible to vote in the election*; [FA7(1)] (2) knowingly votes or attempts to vote more than once in an election; (3) knowingly votes or attempts to vote a ballot belonging to another person, or by impersonating another person; [or] (4) knowingly marks or attempts to mark any portion of another person's ballot without the consent of that person, or without specific direction from that person how to mark the ballot; or (5) knowingly votes or attempts to vote in an election in this state after voting in another state in an election in which a federal office appears on the ballot and the election day for both states is the same day. | (a) A person commits an offense if the person: (1) votes or attempts to vote in an election *in which* the person knows *the person is not eligible to vote*; (2) knowingly votes or attempts to vote more than once in an election; (3) knowingly votes or attempts to vote a ballot belonging to another person, or by impersonating another person; [or] (4) knowingly marks or attempts to mark any portion of another person's ballot without the consent of that person, or without specific direction from that person how to mark the ballot; or (5) knowingly votes or attempts to vote in an election in this state after voting in another state in an election in which a federal office appears on the ballot and the election day for both states is the same day. |
| *No equivalent provision.* | Same as Senate version. | (c) A person may not be convicted solely upon the fact that the person signed a provisional ballot affidavit under Section 63.011 unless corroborated by other evidence that the person knowingly committed the offense. |
| *No equivalent provision.* | (c) If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both. | (d) Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | SECTION __.The change in law made by this *Act* applies to an offense *under Section 64.012(a)(1), Election Code, regardless of whether the offense was* committed before, on, or after the effective date of this Act.  [FA7(2)] | SECTION 9.04.  The change in law made by this *article in adding Section 64.012(c), Election Code,* applies to an offense committed before, on, or after the effective date of this Act*, except that a final conviction for an offense under that section that exists on the effective date of this Act remains unaffected by this article*. |
| ARTICLE 4.  ENFORCEMENT | *(See ARTICLE 6, ENFORCEMENT, below.)* | *(See ARTICLE 8, ENFORCEMENT, above.)* |
| SECTION 4.01.  Subchapter E, Chapter 31, Election Code, is amended by adding Sections 31.126 and 31.127 to read as follows:<br>Sec. 31.126.  RESTRICTION ON ELIGIBILITY.  (a)  In this section, "election official" means:<br>(1)  a county clerk;<br>(2)  a permanent or temporary deputy county clerk;<br>(3)  an elections administrator;<br>(4)  a permanent or temporary employee of an elections administrator;<br>(5)  an election judge;<br>(6)  an alternate election judge;<br>(7)  an early voting clerk;<br>(8)  a deputy early voting clerk;<br>(9)  an election clerk;<br>(10)  the presiding judge of an early voting ballot board;<br>(11)  the alternate presiding judge of an early voting ballot board;<br>(12)  a member of an early voting ballot board; | *No equivalent provision.* | SECTION 8.02.  Same as Senate version, except makes prohibition applicable to the respective person on *final conviction of any Election Code offense* and also *eliminates the civil penalty provision.* |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

(13) the chair of a signature verification committee;
(14) the vice chair of a signature verification committee;
(15) a member of a signature verification committee;
(16) the presiding judge of a central counting station;
(17) the alternate presiding judge of a central counting station;
(18) a central counting station manager;
(19) a central counting station clerk;
(20) a tabulation supervisor; and
(21) an assistant to a tabulation supervisor.
(b) A person may not serve as an election official if the person *has been finally convicted of an offense under Section 33.061.*

*Sec. 31.127. CIVIL PENALTY. (a) In this section, "election official" has the meaning assigned by Section 31.126.*
*(b) An election official may be liable to this state for a civil penalty if the official:*
*(1) is employed by or is an officer of this state or a political subdivision of this state; and*
*(2) violates a provision of this code.*
*(c) A civil penalty imposed under this section may include termination of the person's employment and loss of the person's employment benefits.*

SECTION 4.02. Section 33.051, Election Code, is amended by adding Subsections (g) and (h) to read as follows:

SECTION 3.03. Section 33.051, Election Code, is amended by adding Subsections (g) and (h) to read as follows:

SECTION 4.02. Section 33.051, Election Code, is amended by adding Subsections (g) and (h) to read as follows:

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (g)  An election officer commits an offense if the officer knowingly refuses to accept a watcher for service whose acceptance is required *by this code.* | (g)  An election officer commits an offense if the officer *intentionally or* knowingly refuses to accept a watcher for service when acceptance of the watcher is required *by this section.* | (g) Same as House version. |
| An offense under *this section* is a *Class A misdemeanor.* | (h)  An offense under *Subsection (g)* is a *Class B misdemeanor.* | Substantially the same as House version. |
| (h)  Before accepting a watcher, the officer presented with a watcher's certificate of appointment shall require the watcher to take the following oath, administered by the officer: "I swear (or affirm) that I will not disrupt the voting process or harass voters in the discharge of my duties." | *No equivalent provision.* | (h) Same as Senate version. |
| SECTION 4.03.  Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.062 to read as follows: Sec. 33.062.  *INJUNCTIVE* RELIEF.  A watcher, *or the appointing authority for a watcher,* is entitled to injunctive relief under Section 273.081 *to enforce this chapter, including issuance of temporary orders.* | *(See SECTION 3.04 above adding Sec. 33.056(f).)* | *(See SECTION 4.06 above adding Sec. 33.063.)* |
| SECTION 4.04.  Section 87.0431(b), Election Code, is amended to read as follows: (b) The early voting clerk shall, not later than the 30th day after election day, deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because: | *No equivalent provision.* | SECTION 5.11. Section 87.0431(b), Election Code, is amended to read as follows: (b) The early voting clerk shall, not later than the 30th day after election day, deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because: |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (1) the voter was deceased;<br>(2) the voter already voted in person in the same election;<br>(3) the signatures on the carrier envelope and ballot application were not executed by the same person;<br>(4) the carrier envelope certificate lacked a witness signature; [or]<br>(5) the carrier envelope certificate was improperly executed by an assistant; or<br>(6) *any form of voter fraud was committed*. | | (1) the voter was deceased;<br>(2) the voter already voted in person in the same election;<br>(3) the signatures on the carrier envelope and ballot application were not executed by the same person;<br>(4) the carrier envelope certificate lacked a witness signature; [or]<br>(5) the carrier envelope certificate was improperly executed by an assistant; or<br>(6) *the early voting ballot board or the signature verification committee determined that another violation of the Election Code occurred*. |
| SECTION 4.05.   Section 232.006(a), Election Code, is amended to read as follows:<br>(a) The venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election. For purposes of this section, a contestee's residence is determined under Section 411.0257, Government Code. | *No equivalent provision.* | SECTION 8.03. Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | SECTION 8.04.  Sections 232.008 (b), (c), and (d), Election Code, are amended to read as follows:<br>(b) Except as provided by Subsection (c), a contestant must file the petition not later than the later of the 45th [30th] day after the date the election records are publicly available under Section 1.012 or the official result of the contested election is determined. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

CONFERENCE

[*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*]

(c)  A contestant must file the petition not later than the later of the 15th [10th] day after the date the election records are publicly available under Section 1.012 or the official result is determined in a contest of:

(1)  a primary or runoff primary election; or

(2)  a general or special election for which a runoff is necessary according to the official result or will be necessary if the contestant prevails.

(d)  A contestant must deliver, electronically or otherwise, a copy of the petition to the secretary of state by the same deadline prescribed for the filing of the petition.

SENATE VERSION

SECTION 4.06.  Chapter 232, Election Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C.  CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061.  PETITION ALLEGING FRAUD.  This subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge *committed election fraud under* any of the following sections of this code:

(1)  Section 13.007;

(2)  Section 64.012;

(3)  Section 64.036;

(4)  Section 84.003;

HOUSE VERSION (IE)

*No equivalent provision.*

CONFERENCE

SECTION 8.05.  Chapter 232, Election Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C.  CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061. PETITION ALLEGING FRAUD.   This subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge *violated* any of the following sections of this code:

(1)  Section 13.007;

(2)  Section 64.012;

(3)  Section 64.036;

(4)  Section 84.003;

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (5) Section 84.0041;<br>(6) Section 86.0051;<br>(7) Section 86.006;<br>(8) Section 86.010; or<br>(9) Section 276.013. | | (5) Section 84.0041;<br>(6) Section 86.0051;<br>(7) Section 86.006;<br>(8) Section 86.010; or<br>(9) Section 276.013. |
| Sec. 232.062. EVIDENTIARY STANDARD. A contestant must prove an allegation described by Section 232.061 by a preponderance of the evidence. | *No equivalent provision.* | Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | Sec. 232.063. OVERTURNING ELECTION.   If the number of votes illegally cast in the election is equal to or greater than the number of votes necessary to change the outcome of an election, the court may declare the election void without attempting to determine how individual voters voted. |
| Sec. 232.063. *CIVIL PENALTY.* (a) If *the court in its judgment finds that the* contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to *this state* for a *civil penalty* of $1,000 for each violation. | *No equivalent provision.* | Sec. 232.064. *DAMAGES.* (a) If *a* contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to *the contestant* for *damages in an amount* of $1,000 for each violation. |
| (b) A penalty collected under this section by the attorney general shall be deposited in the state treasury to the credit of the general revenue fund. | *No equivalent provision.* | *No equivalent provision.* |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Same as Senate version. | (b) Notwithstanding Section 41.004(a), Civil Practice and Remedies Code, a court shall award damages under Subsection (a) to the contestant irrespective of whether the contestant is awarded actual damages. |
| Sec. 232.064.  ATTORNEY'S FEES.  In an election contest to which this subchapter applies, the court may award reasonable attorney's fees to the prevailing party. | *No equivalent provision.* | Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | SECTION 8.06. Section 273.061, Election Code is amended to read as follows Sec. 273.061. JURISDICTION.  (a)  The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer. (b) The court of criminal appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the provision, sequestration, transfer, or impoundment of evidence in or records relating to a criminal investigation conducted under this code or conducted in connection with the conduct of an election or political party convention.  If a writ of mandamus is issued under this subsection, it shall include an order requiring the provision, sequestration, transfer, or impoundment of the evidence or record. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| SECTION 4.07.  Section 276.013(a), Election Code, is amended to read as follows: | SECTION 5.03. Sections 276.013(a) and (b), Election Code, are amended to read as follows: | SECTION 7.03. Sections 276.013(a) and (b), Election Code, are amended to read as follows: |
| (a) A person commits an offense if the person knowingly or intentionally makes any effort to: | (a) A person commits an offense if the person knowingly or intentionally makes any effort to: | (a) A person commits an offense if the person knowingly or intentionally makes any effort to: |
| (1) influence the independent exercise of the vote of another in the presence of the ballot or during the voting process; | (1) influence the independent exercise of the vote of another in the presence of the ballot or during the voting process, *including by altering the ballot of another or by otherwise causing a ballot to not reflect the intent of the voter*; | (1) Same as House version. |
| (2) cause a voter to become registered, a ballot to be obtained, or a vote to be cast under false pretenses; [or] | (2) Same as Senate version. | (2) Same as Senate version. |
| (3) count votes *or alter a report to include votes the person knows are* invalid; | (3) count votes *that are invalid or should otherwise not be counted under law, fail to count votes that were lawfully cast, or alter a report to include* invalid *votes*;  [FA6(25)] | (3) count votes *that are invalid, or should otherwise not be counted, fail to count votes that were lawfully cast, or alter a report to include* invalid *votes*; |
| (4) *refuse* to count valid votes or alter a report to exclude valid votes; or | (4) *fail* to count valid votes or alter a report to exclude valid votes;  [FA6(26)] | (4) Same as House version. |
| (5) [(3)] cause any intentionally misleading statement, representation, or information to be provided:<br>(A) to an election official; or<br>(B) on an application for ballot by mail, carrier envelope, or any other official election-related form or document. | (5) Substantially the same as Senate version. | (5) Substantially the same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | (6) prevent a voter from casting a legal ballot in an election in which the voter is eligible to vote; or  [FA6(28)] | (6) Same as House version. |
| *No equivalent provision.* | (7) provide false information to a voter with the intent of preventing the voter from voting in an election in which the voter is eligible to vote.  [FA6(28)] | (7) Same as House version. |
| *No equivalent provision.* | (b)  An offense under this section is a *state jail felony [Class A misdemeanor]*. | (b)  An offense under this section is a *Class A misdemeanor, except that an offense under this section is a state jail felony if the person committed the offense while acting in the person's official capacity as an election officer*. |
| SECTION 4.08.  Chapter 276, Election Code, is amended by adding Sections 276.014 and 276.015 to read as follows: | SECTION 5.04.  Chapter 276, Election Code, is amended by adding Sections 276.014, 276.016, 276.017, 276.018, and 276.019 to read as follows: | SECTION 7.04.  Chapter 276, Election Code, is amended by adding Sections 276.014, 276.015, 276.016, 276.017, 276.018, and 276.019 to read as follows: |
| Sec. 276.014.  *PAID* VOTE HARVESTING. | Sec. 276.014.  *PAID* VOTE HARVESTING. | Sec. 276.014.  VOTE HARVESTING. |
| | (a)  In this section: | (a)  In this section *and in Section 276.015*: |
| | *(1)  "Benefit" means anything reasonably regarded as a gain or advantage, including:* <br> *(A)  a promise or offer of employment, a political favor, or a favorable discretionary official act; and* <br> *(B)  a benefit to any other person in whose welfare the beneficiary has an interest.* | *(1)  "Benefit" means anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person.* |

77

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (a)  In this section *and Section 276.015*, "vote harvesting services" means *direct* interaction with one or more voters *in connection with* an official ballot, a ballot voted by mail, or an application for ballot by mail, intended to deliver votes for a specific candidate or measure. | (2)  "Vote harvesting services" means *direct* interaction with one or more voters *in connection with* an official ballot, a ballot voted by mail, or an application for ballot by mail, intended to deliver votes for a specific candidate or measure. | (2)  "Vote harvesting services" means *in-person* interaction with one or more voters, *involving* an official ballot, a ballot voted by mail, or an application for ballot by mail, intended to deliver votes for a specific candidate or measure. |
| (b)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide the vote harvesting services in exchange for compensation or other benefit, *including benefits to a party whose welfare is of interest to the person.* | (b)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit. | (b)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit. |
| (c)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to a person, *or to another party whose welfare is of interest to the person,* in exchange for the vote harvesting services. | (c)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to a person in exchange for vote harvesting services. | (c)  A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to a another person in exchange for vote harvesting services. |
| (d)  A person commits an offense if the person knowingly collects or possesses a *ballot voted by mail* or official carrier envelope *from a voter* in connection with the vote harvesting services. | (d)  A person commits an offense if the person knowingly collects or possesses a *ballot voted by mail* or official carrier envelope *from a voter* in connection with vote harvesting services. | (d)  A person commits an offense if the person knowingly collects or possesses a *mail ballot* or official carrier envelope in connection with vote harvesting services. |
| (e)  This section does not apply to *acts promoting a candidate or measure that do not involve direct interaction with:*<br>*(1)  an application for ballot by mail, in the presence of the voter; or* | (e)  This section does not apply to *political speech or other acts merely promoting a candidate or measure that do not involve direct interaction with:*<br>*(1)  an application for ballot by mail, in the presence of the voter; or* | (e)  This section does not apply to:<br>*(1)  an activity not performed in exchange for compensation or a benefit;*<br>*(2)  interactions that do not directly involve an official ballot, ballot by mail, or an application for ballot by mail;* |

Associated CCR Draft: 87R30396

78

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (2)  a voter's official ballot, ballot voted by mail, or carrier envelope. | (2)  a voter's official ballot, ballot voted by mail, or carrier envelope. | (3)  interactions that are not conducted in-person with a voter; or <br> (4)  activity that is not designed to deliver votes for or against a specific candidate or measure. |
| (f)  In this section, compensation in exchange for the vote harvesting services is inferred if a person who performed the vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than the vote harvesting services provided. | (f)  In this section, compensation *or other benefit* in exchange for vote harvesting services is inferred if a person who performed the vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than the vote harvesting services provided. | (f)  In this section, compensation in exchange for vote harvesting services is inferred if a person who performed vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than vote harvesting services provided. |
| (g)  An offense under this section is a *felony of the third degree.* | (g)  An offense under this section is a *state jail felony.* [FA4(9); FA6(29)] | (g) Same as Senate version. |
| (h)  If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both. | (h) Same as Senate version. | (h) Same as Senate version. |
| *No equivalent provision.* | Same as Senate version. | (i)  Records necessary to investigate an offense under this section or any other section of this code shall be provided by an election officer in an unredacted form to a law enforcement officer upon request. Records obtained under this subsection are not subject to public disclosure. |
| Sec. 276.015.   CIVIL LIABILITY FOR UNLAWFUL VOTE HARVESTING. | *No equivalent provision.* | Sec. 276.015. CIVIL      LIABILITY      FOR      VOTE HARVESTING. |

Associated CCR Draft: 87R30396

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (a)  A person who is shown by a preponderance of the evidence to have violated Section 276.014 is liable to any candidate *harmed by* the vote harvesting services for damages and penalties that may be awarded under Subsection (c). | *No equivalent provision.* | (a)  A person who is shown by a preponderance of the evidence to have violated Section 276.014 is *civilly* liable to any candidate *or political party who suffers harm from* the vote harvesting services for damages and penalties that may be awarded under Subsection (c). |
| (b)  A person is harmed by the vote harvesting services if the person can demonstrate that:<br>(1)  the person *was a candidate for office;*<br>(2)  the liable party *committed an offense* under Section 276.014; and<br>(3)  *another candidate seeking the same office as the person received a vote attributable to the offense, regardless of whether the other candidate knowingly participated in the vote harvesting services.* | *No equivalent provision.* | (b)  A person is harmed by the vote harvesting services if the person can demonstrate that:<br>(1)  the person *has standing to seek relief; and*<br>(2)  the liable party *violated* Section 276.014. |
| *No equivalent provision.* | Same as Senate version. | (b-1)  To establish standing under this section, a person is not required to demonstrate that the vote harvesting services successfully delivered votes for a specific candidate or measure, but must demonstrate that:<br>(1)  the vote harvesting services were intended to deliver votes for a specific candidate or measure; and<br>(2)  the person opposed the candidate or measure in the person's capacity as a candidate or political party. |
| (c)  A *litigant* who prevails in an action under *Subsection (b) shall* recover *from any person who committed the unlawful vote harvesting services damages* in an amount including: | *No equivalent provision.* | (c)  A *party* who prevails in an action under *this section may* recover damages in an amount including *any or all of*: |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (1)  the amount of any compensation paid to or received by *the person* in exchange for the vote harvesting services; (2)  the fair market value of any benefit given or received in exchange for the vote harvesting services; (3)  a penalty in the amount of *$25,000; and* (4)  reasonable attorney's fees, court costs, witness fees, and *deposition fees*. | | (1)  the amount of compensation paid to or received by *a party* in exchange for vote harvesting services; (2)  the fair market value of any benefit given or received in exchange for vote harvesting services; (3)  a penalty in the amount of *$35,000;  or* (4)  reasonable *and necessary* attorney's fees, court costs, witness fees, and *discovery costs*. |
| (d)  A *litigant* who prevails in an action under *Subsection (b)* and shows that the number of voters contacted by the vote harvesting services exceeds the number of votes by which the *litigant* lost the election shall recover *from the person liable for the unlawful vote harvesting services punitive* damages in an amount including: (1)  *any of* the *litigant's* campaign expenditures properly filed on a campaign finance report in connection with the election; *and* (2)  any fees and expenses incurred by the *litigant* in filing and securing a place on the ballot. | *No equivalent provision.* | (d)  A *party who is a candidate for office* who prevails in an action under *this section* and shows that the number of voters contacted by the vote harvesting activity exceeds the number of votes by which the *party* lost the election shall recover damages in an amount including *any or all of*: (1)  the *party's* campaign expenditures properly filed on a campaign finance report in connection with the election; *or* (2)  any fees and expenses incurred by the *party* in filing and securing a place on the ballot. |
| (e)  A person who commits an offense under Section 276.014 and is found liable under this chapter or other law for any amount of damages arising from the vote harvesting services is jointly liable with any other defendant for the entire amount of damages arising from the vote harvesting services. | *No equivalent provision.* | (e)  A person who commits an offense under Section 276.014 and is found *civilly* liable, *including by vicarious liability,* under this chapter or other law for any amount of damages arising from the vote harvesting services is jointly liable with any other defendant for the entire amount of damages arising from the vote harvesting services. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| (f) The cause of action created by this section is cumulative *to* any other remedy provided by common law or statute. | *No equivalent provision.* | (f) The cause of action created by this section is cumulative *of* any other remedy provided by common law or statute. |
| *No equivalent provision.* | Same as Senate version. | (g) rules applicable to a party's access to election records under Chapter 231 or 232 apply to a cause of action under this section. |
| *No equivalent provision.* | Same as Senate version. | (h) A party to an action under this section may compel a voter to reveal the voter's vote in the same manner established under Section 221.009 to compel a voter to reveal the voter's vote in an election contest. |
| (g) The expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to an action under this section. | *No equivalent provision.* | (i) The expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to an action under this section. |
| (h) Chapter 27, Civil Practice and Remedies Code, does not apply to a cause of action under this section. | *No equivalent provision.* | (j) Chapter 27, Civil Practice and Remedies Code, does not apply to a cause of action under this section. |
| (i) A cause of action under this section may be brought in the county where any *part* of the vote harvesting services occurred. | *No equivalent provision.* | (k) A cause of action under this section may be brought in the county where any *element of a violation under Section 276.014 occurred, or where any part of* the vote harvesting services occurred. |
| *No equivalent provision.* | Same as Senate version. | (l) This section shall be liberally construed and applied to promote its underlying purpose to protect candidates and the voting public from unlawful vote harvesting and provide an efficient and economical remedy to secure that protection. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | Sec. 276.016.  UNLAWFUL SOLICITATION AND DISTRIBUTION OF APPLICATION TO VOTE BY MAIL. | Sec. 276.016. UNLAWFUL SOLICITATION AND DISTRIBUTION OF APPLICATION TO VOTE BY MAIL. |
| | (a)  *An early voting clerk* commits an offense if the *clerk*, while acting in an official capacity, knowingly: [FA6(30), (31)]<br>(1)  solicits the submission of an application to vote by mail from a person who did not request an application;<br>(2)  distributes an application to vote by mail to a person who did not request the application unless the distribution is expressly authorized by another provision of this code;<br>(3)  authorizes or approves the expenditure of public funds to facilitate third-party distribution of an application to vote by mail to a person who did not request the application; or<br>(4)  completes any portion of an application to vote by mail and distributes the application to an applicant. | (a)  *A public official* commits an offense if the *official*, while acting in an official capacity, knowingly:<br>(1)  solicits the submission of an application to vote by mail from a person who did not request an application;<br>(2)  distributes an application to vote by mail to a person who did not request the application unless the distribution is expressly authorized by another provision of this code;<br>(3)  authorizes or approves the expenditure of public funds to facilitate third-party distribution of an application to vote by mail to a person who did not request the application; or<br>(4)  completes any portion of an application to vote by mail and distributes the application to an applicant. |
| | (b)  An offense under this section is a state jail felony. | (b) Same as House version. |
| | (c)  *It is an exception to the application of* Subsection (a)(2) *that the* early voting clerk engaged in the conduct described by Subsection (a)(2) by providing access to an application to vote by mail from a publicly accessible Internet website. [FA6(32)] | (c) Subsection (a)(2) *does not apply if* the *public official* engaged in the conduct described by Subsection (a)(2) by providing access to an application to vote by mail from a publicly accessible Internet website. |

83

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (d)  *It is an exception to the application of* Subsection (a)(4) *that* the early voting clerk engaged in the conduct described by Subsection (a)(4) while lawfully assisting the applicant under Section 84.003.  [FA6(33)] | (d)  Subsection (a)(4) *does not apply if* the public official engaged in the conduct described by Subsection (a)(4) while lawfully assisting the applicant under Section 84.003. |
| | (e)  *It is an exception to the application of* Subsection (a) *that* the public official provided general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public.  [FA5(6)] | (e)  Subsection (a) *does not apply if* the public official provided general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public. |
| | *No equivalent provision.* | (f)  The remedy provided under this chapter is cumulative, and does not restrict any other remedies provided by this code or by law. A violation of this section is subject to injunctive relief or mandamus as provided by this code. |
| *No equivalent provision.* | Sec. 276.017.  UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS AND BALLOTING MATERIALS. (a)  The early voting clerk or other election official commits an offense if the clerk or official knowingly mails or otherwise provides an early voting ballot by mail or other early voting by mail ballot materials to a person who did not submit an application for a ballot to be voted by mail under Section 84.001. (b)  An offense under this section is a Class A misdemeanor. [FA6(34)] | Same as House version. |
| *No equivalent provision.* | Sec. 276.018.   PERJURY  IN  CONNECTION  WITH CERTAIN ELECTION PROCEDURES. | Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (a)  A person commits an offense if the person makes a false statement or swears to the truth of a false statement previously made while making the oath described by Section 64.034.<br>(b)  An offense under this section is a state jail felony. | |
| *No equivalent provision.* | Sec. 276.019.  UNLAWFUL ALTERING OF ELECTION PROCEDURES.  A public official may not *knowingly* alter, waive, or suspend *an* election standard, practice, or procedure mandated by law or rule *unless the alteration, waiver, or suspension is* expressly authorized by this code.  [FA4(10)] | Sec. 276.019.  UNLAWFUL ALTERING OF ELECTION PROCEDURES.  A public official may not *create,* alter, *modify,* waive, or suspend *any* election standard, practice, or procedure mandated by law or rule *in a manner not* expressly authorized by this code. |
| SECTION 4.09.  (a)  The changes in law made by this *article* apply only to an election contest for which the associated election occurred after the effective date of this Act.<br>*(b)  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act. An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.* | *No equivalent provision.* | SECTION 11.03 *(part)*<br>(c)  The changes in law made by this *Act* apply only to an election contest for which the associated election occurred after the effective date of this Act. |
| *No equivalent provision.* | SECTION __.  The change in law made by this Act applies only to an application for a ballot to be voted by mail submitted on or after the effective date of this Act.  An application for a ballot to be voted by mail submitted before the effective date of this Act is governed by the law in effect | SECTION 11.03 *(part)*<br>(d)  The changes in law made by this Act apply only to an application to vote an early voting ballot by mail submitted on or after the effective date of this Act.  An application to vote an early voting ballot by mail submitted before the |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | when the application was submitted, and the former law is continued in effect for that purpose.  [FA18] | effective date of this Act is governed by the law in effect when the application was submitted, and the former law is continued in effect for that purpose. |
| *(See ARTICLE 4, ENFORCEMENT, above.)* | ARTICLE 6. ENFORCEMENT | *(See ARTICLE 8, ENFORCEMENT, above.)* |
| *No equivalent provision.* | SECTION 6.01.  Subchapter C, Chapter 22, Government Code, is amended by adding Section 22.2235 to read as follows:<br>Sec. 22.2235.  COURT SITTING IN PANELS FOR CERTAIN ELECTION PROCEEDINGS; CRIMINAL OFFENSE. | SECTION 8.07.  Subchapter D, Chapter 22, Government Code, is amended by adding Sections 22.304 and 22.305 to read as follows:<br>Sec. 22.304. COURT SITTING IN PANELS FOR CERTAIN ELECTION PROCEEDINGS; CRIMINAL OFFENSE. |
| | (a)  In this section, "public official" means any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of this state, a government agency, a political subdivision, or any other public body established by state law.  [FA6(35)] | *No equivalent provision.* |
| | (b)  Notwithstanding any other law or rule, a court proceeding entitled to priority under Section 22.304 and filed in a court of appeals shall be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system. | (a)  Notwithstanding any other law or rule, a court proceeding entitled to priority under Section 22.305 and filed in *the supreme court, the court of criminal appeals, or a* court of appeals shall be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system. |
| | (c)  A person, including a public official, commits an offense if the person communicates with a court clerk with the | Same as House version. |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | intention of influencing or attempting to influence the composition of a three-justice panel assigned a specific proceeding under this section. | |
| | (d)  An offense under this section is a ***Class A misdemeanor.*** [FA6(36)] | (c)  An offense under this section is a ***state jail felony.*** |
| | *No equivalent provision.* | (d)  If a court clerk does not comply with this section, a person may seek from the supreme court, the court of criminal appeals, or a court of appeals a writ of mandamus as provided by Section 273.061, Election Code, to compel compliance with this section. |
| *No equivalent provision.* | SECTION 6.02.  Subchapter D, Chapter 22, Government Code, is amended by adding Section 22.304 to read as follows: Sec. 22.304.   PRIORITY OF CERTAIN ELECTION PROCEEDINGS. | *SECTION 8.07, continued* Sec. 22.305.  PRIORITY OF CERTAIN ELECTION PROCEEDINGS. |
| | (a)  The supreme court or a court of appeals shall prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief under Chapter 273, Election Code, pending or filed in the court on or after the ***70th day*** before a general or special election.  [FA6(37)-(38)] | (a)  The supreme court, ***the court of criminal appeals,*** or a court of appeals shall prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief ***or for a writ of mandamus*** under Chapter 273, Election Code, pending or filed in the court on or after the ***120th day*** before a general or special election. |
| | (b)  The court with jurisdiction over a proceeding described by Subsection (a), on request of any party to the proceeding, | *No equivalent provision.* |

87

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | shall grant the party the opportunity to present an oral argument and begin hearing the argument as soon as practicable but not later than 48 hours after the time the last brief for the proceeding is due to be filed with the court. [FA6(39)] | |
| | (c) Oral argument for a proceeding described by Subsection (a) may be given in person or through electronic means. | (b) *If granted,* oral argument for a proceeding described by Subsection (a) may be given in person or through electronic means. |
| *No equivalent provision.* | SECTION 6.03.   Section 23.101, Government Code, is amended by amending Subsection (a) and adding Subsections (b-1) and (b-2) to read as follows: | SECTION 8.08. Section 23.101, Government Code, is amended by amending Subsection (a) and adding Subsections (b-1) and (b-2) to read as follows: |
| | (a)  Except as provided by Subsection (b-1), the [The] trial courts of this state shall regularly and frequently set hearings and trials of pending matters, giving preference to hearings and trials of the following:<br>(1)  temporary injunctions;<br>(2)   criminal actions, with the following actions given preference over other criminal actions:<br>(A)  criminal actions against defendants who are detained in jail pending trial;<br>(B)   criminal actions involving a charge that a person committed an act of family violence, as defined by Section 71.004, Family Code;<br>(C)  an offense under:<br>(i)  Section 21.02 or 21.11, Penal Code; | (a)  Same as House version. |

Senate Bill 7
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

HOUSE VERSION (IE):

(ii)  Chapter 22, Penal Code, if the victim of the alleged offense is younger than 17 years of age;

(iii)  Section 25.02, Penal Code, if the victim of the alleged offense is younger than 17 years of age;

(iv)  Section 25.06, Penal Code;

(v)  Section 43.25, Penal Code; or

(vi)  Section 20A.02(a)(7), 20A.02(a)(8), or 20A.03, Penal Code;

(D)  an offense described by Article 62.001(6)(C) or (D), Code of Criminal Procedure; and

(E)  criminal actions against persons who are detained as provided by Section 51.12, Family Code, after transfer for prosecution in criminal court under Section 54.02, Family Code;

(3)  election contests and suits under the Election Code;

(4)  orders for the protection of the family under Subtitle B, Title 4, Family Code;

(5)  appeals of final rulings and decisions of the division of workers' compensation of the Texas Department of Insurance regarding workers' compensation claims and claims under the Federal Employers' Liability Act and the Jones Act;

(6)  appeals of final orders of the commissioner of the General Land Office under Section 51.3021, Natural Resources Code;

(7)  actions in which the claimant has been diagnosed with malignant mesothelioma, other malignant asbestos-related

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | cancer, malignant silica-related cancer, or acute silicosis; and | |
| | (8)  appeals brought under Section 42.01 or 42.015, Tax Code, of orders of appraisal review boards of appraisal districts established for counties with a population of less than 175,000. | |
| | (b-1)  The trial courts of this state shall prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief under Chapter 273, Election Code, pending or filed in the court on or after the *70th day* before a general or special election.  [FA6(40)-(41)] | (b-1)  *Except for a criminal case in which the death penalty has been or may be assessed or when it would otherwise interfere with a constitutional right,* the trial courts of this state shall prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief under Chapter 273, Election Code, pending or filed in the court on or after the *120th* day before a general or special election. |
| | (b-2)  *The court on written request of any party to a case set under Section 23.301 shall hold a hearing on a proceeding described by Subsection (b-1). A hearing under this subsection shall begin as soon as practicable but not later than 48 hours after the court receives the hearing request.* | (b-2) |
| | *The* hearing may be held in person or through electronic means.  [FA6(42)] | *A* hearing *in a proceeding described by Subsection (b-1)* may be held in person or through electronic means. |
| *No equivalent provision.* | SECTION 6.04.  Chapter 23, Government Code, is amended by adding Subchapter D to read as follows: SUBCHAPTER D.  GENERAL PROVISIONS | SECTION 8.09.  Chapter 23, Government Code, is amended by adding Subchapter D to read as follows: SUBCHAPTER D.  GENERAL PROVISIONS |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | Sec. 23.301. ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS. | Sec. 23.301. ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS*; CRIMINAL OFFENSE.* |
| | (a) Notwithstanding any other law or rule, the clerk of a district court in which a proceeding entitled to priority under Section 23.101(b-1) is filed shall docket the proceeding and, if more than one district court in the county has jurisdiction over the proceeding, randomly assign the proceeding to a district court using an automated assignment system. | (a) Same as House version. |
| | (b) Notwithstanding any other law or rule, the clerk of a county court or statutory county court in which a proceeding entitled to priority under Section 23.101(b-1) is filed shall docket the proceeding and, if more than one court in the county has jurisdiction over the proceeding, randomly assign the proceeding to a court using an automated assignment system. | (b) Same as House version. |
| | *No equivalent provision.* | (c) Notwithstanding any other law or rule, a proceeding entitled to priority under Section 23.101(b-1) relating to a temporary injunction shall have a court assigned under Subsection (b) not later than 24 hours after the proceeding is filed and, if a temporary injunction is granted, the injunction may not remain in effect for longer than four days. |
| | *No equivalent provision.* | (d) A person, including a public official, commits an offense if the person communicates with a county or district clerk with the intention of influencing or attempting to influence |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | the court or judge assigned to a proceeding under this section. |
| | *No equivalent provision.* | (e) An offense under this section is a Class A misdemeanor, except that the offense is a state jail felony if it is shown on the trial of the offense that the person committed the offense while acting in the person's official capacity as an election official. |
| | (c) If a district or county clerk does not comply with this section, a person may seek from the supreme court or a court of appeals a writ of mandamus as provided by Section 273.061 to compel compliance with this section.  [FA6(43)] | (f) If a district or county clerk does not comply with this section, a person may seek from the supreme court, *the court of criminal appeals,* or a court of appeals a writ of mandamus as provided by Section 273.061, *Election Code,* to compel compliance with this section. |
| | *No equivalent provision.* | Sec. 23.302. DEADLINES IN CERTAIN ELECTION PROCEEDINGS.  (a)  Not later than 24 hours after the proceeding is filed, a judge to whom a case is assigned under Section 23.301(b) who wishes to be recused from the proceeding must, before recusal:<br>(1) hear an application for any emergency temporary relief sought;<br>(2) grant or deny any emergency temporary relief sought; and<br>(3) set a scheduling order that provides:<br>(A) a date for a hearing on any injunction sought not later than five days after the date on which the proceeding was filed; and |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | (B) discovery and deposition deadlines before the expiration of any emergency relief order entered. |
| | | (b) The presiding judge of an administrative region shall assign a new judge to a proceeding assigned under Section 23.301(b) not later than 12 hours after the original judge assigned to the proceeding is recused under Subsection (a). |
| | | (c) A final order in a proceeding filed under Section 273.081, Election Code, shall be submitted in writing to the parties not later than 24 hours after the judge makes a final determination in the proceeding. |
| | | (d) If a district judge does not comply with this section, a person may seek from the supreme court, the court of criminal appeals, or a court of appeals a writ of mandamus as provided by Section 273.061, Election Code, to compel compliance with this section. |
| | | (e) Notwithstanding Section 23.101(b-1), a proceeding relating to a permanent injunction being sought in connection to a challenge under Section 141.034, Election Code, may be heard after the primary election has been canvassed. |
| ARTICLE 5.  REPEALER AND EFFECTIVE DATE | ARTICLE 7.  REPEALER;  *SEVERABILITY; TRANSITION;* EFFECTIVE DATE | ARTICLE 11.  REPEALER;  *SEVERABILITY; TRANSITION;* EFFECTIVE DATE |
| SECTION 5.01.  The following provisions of the Election Code are repealed: | SECTION 7.01.  The following provisions of the Election Code are repealed: | SECTION 11.01.  The following provisions of the Election Code are repealed: |
| *(1)  Section 85.062(e); and* | *(1)  Section 86.0052(b); and* | (1)  Section 85.062(e); |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *(2)  Section 127.201(f).* | *(2)  Section 86.0105(b).* | (2)  Section 86.0052(b);<br>(3)  Section 86.0105(b); and<br>(4)  Section 127.201(f). |
| SECTION 5.02.   The secretary of state is required to implement Section 86.015, Election Code, as added by this Act, only if the legislature appropriates money specifically for that purpose.  If the legislature does not appropriate money specifically for that purpose, the secretary of state may, but is not required to, implement Section 86.015, Election Code, using other appropriations available for that purpose. | *No equivalent provision.* | Same as House version. |
| *No equivalent provision.* | SECTION 7.02.   If any provision of this Act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of this Act that can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable. | SECTION 11.02. Same as House version. |
| *No equivalent provision.* | SECTION 7.03.  The changes in law made by this Act apply only to an offense committed on or after the effective date of this Act.  An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.  For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date. | SECTION 11.03. *(part) (a) Except as otherwise provided by this Act,* the changes in law made by this Act apply only to an offense committed on or after the effective date of this Act.  An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.   For purposes of this section, an offense was |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | | committed before the effective date of this Act if any element of the offense occurred before that date. |
| SECTION 5.03. *Subject to Section 5.02 of this Act,* this Act takes effect September 1, 2021. | SECTION 7.04. This Act takes effect September 1, 2021. | SECTION 11.06. This Act *takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act* takes effect September 1, 2021. |
| *No equivalent provision.* | ARTICLE __. INTERNET POSTING [FA9] | ARTICLE 10. INTERNET POSTING *AND DATABASE* |
| *No equivalent provision.* | SECTION __.01.  Chapter 4, Election Code, is amended by adding Section 4.009 to read as follows:<br>Sec. 4.009.  INTERNET POSTING.  (a)  Not later than the 21st day before election day, a county that holds or provides election services for an election and maintains an Internet website shall post on its public Internet website for an election administered by the county:<br>(1)  the date of the election;<br>(2)  the location of each polling place;<br>(3)  each candidate for an elected office on the ballot; and<br>(4)  each measure on the ballot.<br>(b)  Not later than the 21st day before election day, a city or independent school district that holds an election and maintains an Internet website shall post on the public Internet | SECTION 10.01. Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | website for the city or independent school district, as applicable: (1) the date of the next election; (2) the location of each polling place; (3) each candidate for an elected office on the ballot; and (4) each measure on the ballot. [FA9] | |
| *No equivalent provision.* | SECTION __.02. Subchapter A, Chapter 65, Election Code, is amended by adding Section 65.016 to read as follows: Sec. 65.016. INTERNET POSTING OF ELECTION RESULTS. (a) A county that holds or provides election services for an election and maintains an Internet website shall post on its public Internet website for an election administered by the county: (1) the results of each election; (2) the total number of votes cast; (3) the total number of votes cast for each candidate or for or against each measure; (4) the total number of votes cast by personal appearance on election day; (5) the total number of votes cast by personal appearance or mail during the early voting period; and (6) the total number of counted and uncounted provisional ballots cast. (b) A city or independent school district that holds an election and maintains an Internet website shall post on the public Internet website for the city or independent school district, as applicable: | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

HOUSE VERSION (IE):

(1)  the results of each election;

(2)  the total number of votes cast;

(3)  the total number of votes cast for each candidate or for or against each measure;

(4)  the total number of votes cast by personal appearance on election day;

(5)  the total number of votes cast by personal appearance or mail during the early voting period; and

(6)  the total number of counted and uncounted provisional ballots cast.

(c)  The information described by Subsections (a) and (b) must be:

(1)  clearly labeled in plain language;

(2)  provided as soon as practicable after the election;

(3)  accessible without having to make more than two selections or view more than two network locations after accessing the Internet website home page of the county, city, or district, as applicable, for the most recent election; and

(4)  accessible without having to make more than four selections or view more than four network locations after accessing the Internet website home page of the county, city, or district, as applicable, for a previous election.  [FA9]

SENATE VERSION:

*No equivalent provision.*

HOUSE VERSION (IE):

SECTION __.03.
The changes in law made in this *article* apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered,

CONFERENCE:

SECTION 11.03 *(part)*
(b) The changes in law made by this *Act* apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | and the former law is continued in effect for that purpose. [FA9] | governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose |
| *No equivalent provision.* | ARTICLE __. CORRECTING MAIL BALLOT DEFECTS [FA15] | Same as Senate version. |
| *No equivalent provision.* | SECTION __.Section 84.032(c) and (d), Election Code, is amended to read as follows: (c) An applicant may submit a request after the close of early voting by personal appearance by appearing in person and: (1) returning the ballot to be voted by mail to the early voting clerk; or (2) executing an affidavit that the applicant: (A) has not received the ballot to be voted by mail; [or] (B) never requested a ballot to be voted by mail; or (C) received a notice of defect under Section 87.0411(b). (d) An applicant may also submit a request by appearing in person and returning the ballot to be voted by mail or presenting a notice received under Section 86.006(h) or 87.0411(b) to: (1) the early voting clerk or deputy early voting clerk at any polling place that is open for early voting by personal appearance; or (2) the presiding election judge on election day at the applicant's precinct polling place. [FA15] | Same as Senate version. |
| *No equivalent provision.* | SECTION __. Section 87.022, Election Code, is amended to read as follows: | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | Sec. 87.022. TIME OF DELIVERY: GENERAL RULE. Except as provided by Section 87.0221,[87.0222,] 87.023, or 87.024, the materials shall be delivered to the early voting ballot board under this subchapter during the time the polls are open on election day, or as soon after the polls close as practicable, at the time or times specified by the presiding judge of the board. [FA15] | |
| *No equivalent provision.* | SECTION ___. Section 87.0221(a), Election Code, is amended to read as follows: (a) In an election in which regular paper ballots are used for early voting by personal appearance or by mail, the materials may be delivered to the board beginning on the ninth day before the last day of [between the end of] the period for early voting by personal appearance. The early voting clerk shall deliver all early voting ballots voted by mail to the board that have been returned to the clerk by the end of the third day before the last day of the period for early voting by personal appearance, and shall deliver all early voting ballots voted by mail received thereafter to the board at least once per day [and the closing of the polls on election day, or as soon after closing as practicable, at the time or times specified by the presiding judge of the board]. [FA15] | Same as Senate version. |
| *No equivalent provision.* | SECTION ___. Section 87.024(a), Election Code, is amended to read as follows: (a) In an election in which early voting votes by personal appearance are cast on voting machines, the jacket envelopes | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | containing the early voting ballots voted by mail may be delivered to the board <u>beginning on the ninth day before the last day of</u> [between the end of] the period for early voting by personal appearance. <u>The early voting clerk shall deliver all early voting ballots voted by mail to the board that have been returned to the clerk by the end of the third day before the last day of the period for early voting by personal appearance, and shall deliver all early voting ballots voted by mail received thereafter to the board at least once per day</u> [and the closing of the polls on election day, or as soon after closing as practicable, at a time specified by the presiding judge of the board]. [FA15] | |
| *No equivalent provision.* | SECTION ___. Section 87.0241(a), Election Code, is amended to read as follows:<br>(a) The early voting ballot board may determine whether to accept early voting ballots voted by mail in accordance with Section 87.041 at any time after the ballots are delivered to the board <u>except that the board shall determine whether to accept any early voting ballots voted by mail delivered to the board by the end of the third day before the last day of the period for early voting by personal appearance by the end of the last day of the period for early voting by personal appearance.</u> [FA15] | Same as Senate version. |
| *No equivalent provision.* | SECTION ___. Subchapter C, Chapter 87, Election Code, is amended by adding Section 87.0411 to read as follows: | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |

**HOUSE VERSION (IE)**

Sec. 87.0411. OPPORTUNITY TO CORRECT DEFECT: EARLY VOTING BALLOT BOARD. (a) This section applies to an early voting ballot voted by mail:

(1) for which the voter did not sign the carrier envelope certificate;

(2) for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter; or

(3) that does not contain a statement of residence form if required pursuant to Section 86.002(a).

(b) Before deciding whether to accept or reject a ballot under Section 87.041, the early voting ballot board shall notify a voter within one business day of the discovery of a defect under Subsection (a) to advise the voter of the defect and provide the voter an opportunity to correct the defect by providing:

(1) if the defect involves the voter's signature:

(A) the following identification:

(i) the identification number from an unexpired driver's license, election identification certificate, or personal identification card issued to the voter by the Department of Public Safety;

(ii) the last four digits of the voter's Social Security number; or

(iii) if the voter does not possess any identification described by Subdivisions (i) or (ii), a form of identification described by Section 63.0101; and

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

HOUSE VERSION (IE):

(B) a signed cure attestation in a form prescribed by the secretary of state stating that the ballot at issue is that of the voter; or

(2) if the defect involves a required statement of residence form, a signed and completed statement of residence form.

(c)  Subsection (b) does not apply if the early voting ballot board determines that it would be impossible to correct the defect before the ninth day after the date of the election.

(d) A voter may submit materials listed under Subsection (b) to the early voting clerk by:

(1) personal delivery;

(2) mail;

(3) e-mail; or

(4) telephonic facsimile machine, if a machine is available in the clerk's office.

(e) The notice under Subsection (b) must:

(1) inform the voter that the voter's vote will not be counted unless the voter submits the materials listed under Subsection (b) not later than the ninth day after the date of the election;

(2) instruct the voter on the methods of returning the materials listed under Subsection (b);

(3) include a copy of the cure attestation or statement of residence in the form prescribed by the secretary of state; and

(4) direct the voter to the location of the cure attestation or statement of residence form on the secretary of state's Internet website.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |

HOUSE VERSION (IE):

(f) The early voting ballot board shall provide notice to the voter under Subsection (b) by mail and any other method reasonably calculated to provide sufficient time for the voter to submit the required materials before the deadline prescribed by this section.

(g) The early voting ballot board is not required to provide notice under Subsection (b) if the board makes a determination under Section 87.027(i) that the signature on the carrier envelope certificate and ballot application are those of the voter.

(h) If the early voting ballot board does not provide notice to the voter under Subsection (b) and the ballot meets the requirements of Sections 87.041(b)(1),(3),(4),(5),(6), and (7), the board shall accept the ballot in the manner provided by Section 87.042.

(i) The secretary of state shall:

(1) prominently display and maintain on the main page of the secretary's Internet website a link to blank versions of the statement of residence form and the cure attestation described by Subsection(b); and

(2) adopt rules and prescribe forms as necessary to implement this section.

(j) A statement of residence form or a cure attestation prescribed under this section must include clear instructions for completion and notice of the penalties associated with election fraud and voting more than once in an election. The cure attestation and statement of residence may not require the voter to have the form notarized or signed by a witness.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | (k) The signature provided by the voter on a cure attestation or a statement of residence form shall be placed on file with the county clerk or voter registrar to allow its use for future signature comparison as provided by Section 87.027(i) and Section 87.041(e). [FA15] | |
| *No equivalent provision.* | SECTION __. Section 87.0222, Election Code, is repealed. [FA15] | Same as Senate version. |
| *No equivalent provision.* | ARTICLE __. DATABASE [FA12] | Same as Senate version. |
| *No equivalent provision.* | SECTION __.01.   Section 4.003(e), Election Code, is amended to read as follows:<br>(e)   The authority responsible for giving notice of the election shall deliver to the secretary of state:<br>(1)   a copy of the notice of a consolidated precinct required by Subsection (b) not later than the date of the election; and<br>(2)   information for the secretary of state's database of election information under Section 31.017 in an electronic format required by the secretary of state.  [FA12] | Same as Senate version. |
| *No equivalent provision.* | SECTION __.02. Subchapter A, Chapter 31, Election Code, is amended by adding Sections 31.017 and 31.018 to read as follows:<br>Sec. 31.017.   INTERNET DATABASE OF ELECTION INFORMATION.  (a)  The secretary of state shall post on the secretary of state's public Internet website a database | SECTION 10.02. Same as House version, except does not include a requirement for the incumbent and candidate database to include *a public telephone number and public email address, if available,* of a holder of an elective office nor does it include the requirement for the database to |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | *[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]* |
| | containing information provided by each authority responsible for giving notice of an election in this state. The database must include the following information: | include *an applicable public email address, if available,* of a candidate for an elective office. |
| | (1) the name of the authority; | |
| | (2) each office to be filled at the election; | |
| | (3) whether the office is elected at large or by district; and | |
| | (4) the dates of the preceding and next election for the office. | |
| | (b) The secretary of state shall adopt rules as necessary to implement this section. | |
| | Sec. 31.018. INTERNET DATABASE FOR INCUMBENTS AND CANDIDATES. (a) The secretary of state shall post on the secretary of state's Internet website a database containing information about each holder of and candidate for any elected office in this state. | |
| | (b) The database must include the following information about a holder of an elected office: | |
| | (1) name; | |
| | (2) office title, including any district, place, or position; | |
| | (3) if the office is elected at large or by district; | |
| | (4) date of the previous and next election for the office; | |
| | (5) public mailing address; | |
| | *(6) public telephone number, if available; and* | |
| | *(7) public e-mail address, if available.* | |
| | (c) The database must include the following information about a candidate for an elected office: | |
| | (1) name; | |
| | (2) office sought, including any district, place, or position; | |
| | (3) if the office is elected at large or by district; | |

Associated CCR Draft: 87R30396

21.149.734

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | (4) date of the election; | |
| | (5) public mailing address; | |
| | (6) public telephone number, if available; | |
| | *(7) public e-mail address, if available;* | |
| | (8) name of the incumbent; and | |
| | (9) if the candidate has filed as a write-in candidate. | |
| | (d) The authority with whom a declaration of candidacy is filed, a state chair of a political party, or the presiding officer of a political party's convention shall provide information about a candidate or officeholder to the secretary of state. | |
| | (e) The secretary of state shall adopt rules as necessary to implement this section. [FA12] | |
| *No equivalent provision.* | SECTION __.03. Section 141.032, Election Code, is amended by adding Subsection (h) to read as follows: (h) The authority with whom the application is filed shall provide the secretary of state with the candidate's information required for the secretary of state's Internet website under Section 31.018. [FA12] | SECTION 10.03. Same as House version, except also requires *the secretary of state to adopt rules as necessary to implement the provision.* |
| *No equivalent provision.* | ARTICLE __. MISCELLANEOUS PROVISIONS [FA3, FA16, FA17, FA18] | |
| *No equivalent provision.* | SECTION __. Section 64.031, Election Code, is amended to read as follows: Sec. 64.031. ELIGIBILITY FOR ASSISTANCE. A voter is eligible to receive assistance in marking or reading the | SECTION 6.02. Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | ballot, as provided by this subchapter, if the voter cannot prepare <u>or read</u> the ballot because of:<br>(1) a physical disability that renders the voter unable to write or see; or<br>(2) an inability to read the language in which the ballot is written. [FA3] | |
| *No equivalent provision.* | SECTION __. Section 64.032, Election Code, is amended by adding Subsection (e) to read as follows:<br><u>(e) A person may only provide assistance to a voter who is eligible to receive assistance under section 64.031.</u> [FA3] | Same as Senate version. |
| *No equivalent provision.* | SECTION __. Sections 276.004(a) and (b), Election Code, are amended to read as follows:<br>(a) A person commits an offense if, with respect to another person over whom the person has authority in the scope of employment, the person knowingly:<br>(1) refuses to permit the other person to be absent from work on election day <u>or while early voting is in progress</u> for the purpose of attending the polls to vote; or<br>(2) subjects or threatens to subject the other person to a penalty for attending the polls on election day <u>or while early voting is in progress</u> to vote.<br>(b) It is an exception to the application of this section that the person's conduct occurs in connection with an election in which the polls are open on election day <u>or while early voting is in progress</u> for voting for two consecutive hours outside of the voter's working hours. [FA16] | SECTION 7.02. Same as House version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

*No equivalent provision.*

SECTION __. Section 15.021, Election Code, is amended by amending Subsections (b) and (d) and adding Subsections (d-1) and (d-2) to read as follows:

(b)  Except as provided by Subsection (d), the [The] voter shall use the registration certificate or a registration application form as the notice, indicating the correct information in the appropriate space on the certificate or application form unless the voter does not have possession of the certificate or an application form at the time of giving the notice.

(d) A voter [who continues to reside in the county in which the voter is registered] may correct information under this section by digital transmission of the information under a program administered by the secretary of state and the Department of Information Resources.

(d-1)  If the notice indicates that a voter no longer resides in the county in which the voter is registered, the registrar shall forward the notice and the voter's original application for registration to the registrar of the county in which the voter resides.  The registrars shall coordinate to ensure that the voter's existing registration is canceled immediately after the voter is registered in the county in which the voter resides in accordance with Subsection (d-2).

(d-2)  A registrar who receives a voter's notice and application from another registrar under Subsection (d-1) shall treat it as an original application for registration under Section 13.002, and shall register the voter if the voter

*[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]*

SECTION 2.02. Same as House version.

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| | resides in the county and is otherwise eligible under Section 13.001. [FA17] | |
| *No equivalent provision.* | SECTION __. Sections 52.031(b) and (c), Election Code, are amended to read as follows:<br>(b) In combination with the surname, a candidate may use one or more of the following:<br>(1) a given name;<br>(2) a contraction or familiar form of a given name by which the candidate is known; [or]<br>(3) an initial of a given name; or<br>(4) a name under which the candidate is known, if the candidate has supplied the required affidavits under Section 141.031(e).<br>(c) A nickname of one unhyphenated word of not more than 10 letters by which the candidate has been commonly known for at least three years preceding the election may be used in combination with a candidate's name. A nickname that constitutes a slogan or otherwise indicates a political, economic, social, or religious view or affiliation may not be used. A nickname may not be used unless the candidate has complied with the requirements of Section 141.031(e) [executes and files with the application for a place on the ballot an affidavit indicating that the nickname complies with this subsection]. [FA18] | Same as Senate version. |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|
| | | [*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*] |
| *No equivalent provision.* | SECTION __. Section 141.031, Election Code, is amended by amending Subsection (a) and adding Subsections (e) and (f) to read as follows: | Same as Senate version. |
| | (a) A candidate's application for a place on the ballot that is required by this code must: | |
| | (1) be in writing; | |
| | (2) be signed and sworn to before a person authorized to administer oaths in this state by the candidate and indicate the date that the candidate swears to the application; | |
| | (3) be timely filed with the appropriate authority; and | |
| | (4) include: | |
| | (A) the candidate's name, and if the candidate is seeking to run under a name other than the candidate's surname acquired by law or marriage and given name, or a contraction or familiar form of a given name by which the candidate is known or an initial of a given name, the affidavits required by Subsection (e); | |
| | (B) the candidate's occupation; | |
| | (C) the office sought, including any place number or other distinguishing number; | |
| | (D) an indication of whether the office sought is to be filled for a full or unexpired term if the office sought and another office to be voted on have the same title but do not have place numbers or other distinguishing numbers; | |
| | (E) a statement that the candidate is a United States citizen; | |
| | (F) a statement that the candidate has not been determined by a final judgment of a court exercising probate jurisdiction to be: | |

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

CONFERENCE

*[The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.]*

HOUSE VERSION (IE)

(i)  totally mentally incapacitated; or
(ii)  partially mentally incapacitated without the right to vote;
(G)  a statement that the candidate has not been finally convicted of a felony from which the candidate has not been pardoned or otherwise released from the resulting disabilities;
(H)  the candidate's date of birth;
(I)  the candidate's residence address or, if the residence has no address, the address at which the candidate receives mail and a concise description of the location of the candidate's residence;
(J)  the candidate's length of continuous residence in the state and in the territory from which the office sought is elected as of the date the candidate swears to the application;
(K)  the statement: "I, _____, of _____ County, Texas, being a candidate for the office of _____, swear that I will support and defend the constitution and laws of the United States and of the State of Texas";
(L)  a statement that the candidate is aware of the nepotism law, Chapter 573, Government Code; and
(M)  a public mailing address at which the candidate receives correspondence relating to the candidate's campaign, if available, and an electronic mail address at which the candidate receives correspondence relating to the candidate's campaign, if available.
(e)  A candidate seeking to have placed on the ballot a name other than the candidate's surname acquired by law or marriage and given name, or a contraction or familiar form

**Senate Bill 7**
Conference Committee Report
Section-by-Section Analysis

| SENATE VERSION | HOUSE VERSION (IE) | CONFERENCE |
|---|---|---|

CONFERENCE

[*The conference committee may have exceeded the limitations imposed on its jurisdiction, but only the presiding officer can make the final determination on this issue.*]

HOUSE VERSION (IE)

of a given name by which the candidate is known or an initial of a given name, must include with the application 50 affidavits, each:

(1) signed by a person eligible to vote in the election for which the candidate is applying; and

(2) stating that the candidate is known to the person signing the affidavit by the name under which the candidate is seeking to run.

(f) A person who gives false information in order to acquire the affidavits required by Subsection (e) or who induces a person to sign a false affidavit submitted under Subsection (e) is liable to the state for a civil penalty in an amount not to exceed $10,000. A suit brought under this subsection shall be advanced for trial and determined as expeditiously as possible. No postponement or continuance shall be granted except for reasons considered imperative by the court. [FA18]

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election. Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election. Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

Page 1 of 4

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

TO: Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

FROM: Jerry McGinty, Director, Legislative Budget Board

IN RE: SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

Page 1 of 4

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

TO: Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

FROM: Jerry McGinty, Director, Legislative Budget Board

IN RE: SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22.536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

TO: Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

FROM: Jerry McGinty, Director, Legislative Budget Board

IN RE: SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election. Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system. The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs. There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Conference Committee Report : a negative impact of ($35,896,476) through the biennium ending August 31, 2023.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

---

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to General Revenue Related Funds |
|---|---|
| 2022 | ($35,211,159) |
| 2023 | ($685,317) |
| 2024 | ($685,745) |
| 2025 | ($686,181) |
| 2026 | ($686,626) |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from General Revenue Fund 1 | Change in Number of State Employees from FY 2021 |
|---|---|---|
| 2022 | ($35,211,159) | 9.0 |
| 2023 | ($685,317) | 9.0 |
| 2024 | ($685,745) | 9.0 |
| 2025 | ($686,181) | 9.0 |
| 2026 | ($686,626) | 9.0 |

**Fiscal Analysis**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the

Page 1 of 4

specific circumstances of the offense.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

This bill would require the Secretary of State (SOS) to maintain a publicly accessible database containing certain specified election information. Local election authorities would be required to provide the required information to the SOS in an electronic format prescribed by the agency. The bill would also require the SOS to maintain a database containing certain specified information about each office holder of, and candidate for, any elected office in the State.

The bill would require the SOS to audit voter roll maintenance activities conducted at the county level and would direct the agency to correct identified violations.

The bill would provide for civil penalties for certain election violations.

**Methodology**

*Provisions of the Bill Related to Voting Machine Reimbursement*
The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

*Provisions of the Bill Related to an Election Information Database and Auditing Voter Rolls*
The bill would require the SOS to collect information from approximately 1,400 school districts, over 1,200 cities, and more than 5,000 water districts as well as an unknown number of library districts, hospital districts, special utility districts, and various other special purpose districts. The SOS does not currently have an inventory of these districts nor a way of monitoring them to maintain a list of current entities.

The SOS anticipates that it would require six additional Program Specialist I FTEs in the Elections Division to assist local election officials with submitting the specified information, supplying technical assistance, and providing training about the new reporting process.

The SOS estimates it would require 3 additional Program Specialist II FTEs to monitor county voter registration numbers on a continual basis as well as to establish and to implement a training program for counties in need of remediation.

The SOS estimates that the total salaries for these nine new positions would be $405,000 per fiscal year with an additional $137,781 in related benefits.

*Other Provisions of the Bill*
According to the Office of the Attorney General, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add new felony-level offenses, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

**Technology**

The SOS estimates that complying with the requirements of the bill would require 1,894 hours for configuration, implementation and testing of changes in Texas Elections Administration Management (TEAM) system.  The agency assumes a contractor cost of $132 per hour and estimates the total cost of these modifications would be $250,000. The SOS also indicates there would be an increase in bandwidth and storage costs of $10,000 per month for the new database and this would also represent an increase in operational costs for the TEAM system in subsequent years.

Additional technology costs associated with the total additional 9 FTEs would be required to support hardware and software costs.  There would be an initial cost of $40,878 in fiscal year 2022 with an recurring cost of $22,536 beginning in fiscal year 2023 that would increase with inflation.

Increased processing costs for reimbursements related to voting machines would be $10,000.

**Local Government Impact**

The fiscal impact on local jurisdictions of provisions of the legislation related to changes in voting procedures cannot be estimated at this time.

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

The bill creates or expands a Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

Page 3 of 4

The bill creates or expands a Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 356 Texas Ethics Commission, 403 Veterans Commission

**LBB Staff:** JMc, CMA, GP, LBO, LCO, SLE, LM, MP, AF, SMAT

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the
conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing
civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend
various codes as they relate to election integrity and security, including by preventing fraud in the conduct of
elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses
would be created and would be punishable at the felony and misdemeanor level with the level and degree based
on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the
correctional resources of counties or of the State due to an increase in the number of individuals placed under
supervision in the community or sentenced to a term of confinement within state correctional institutions. In
fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten
in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a
state correctional institution for election-related offenses. This analysis assumes implementing the provisions
of the bill addressing felony sanctions would not result in a significant impact on state correctional populations
or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** **SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source
Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

**LEGISLATIVE BUDGET BOARD**

Austin, Texas

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
Revision 1

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (relating to election integrity and security. including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis.  The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions.  In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses. fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source
Agencies:**

**LBB Staff:** JMc. CMA, LM, LBO, DGI. SLE, MP

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**CRIMINAL JUSTICE IMPACT STATEMENT**

**87TH LEGISLATIVE REGULAR SESSION**
**Revision 1**

**May 29, 2021**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate
Honorable Dade Phelan, Speaker of the House, House of Representatives

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** SB7 by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses; providing civil penalties.), **Conference Committee Report**

The provisions of the bill addressing felony sanctions are the subject of this analysis. The bill would amend various codes as they relate to election integrity and security, including by preventing fraud in the conduct of elections in this state. Under the provisions of the bill, several new election fraud-related criminal offenses would be created and would be punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

Creating an offense for which a criminal penalty is applied is expected to result in additional demands upon the correctional resources of counties or of the State due to an increase in the number of individuals placed under supervision in the community or sentenced to a term of confinement within state correctional institutions. In fiscal years 2018 through 2020 there were a total of 45 arrests for the election-related offenses, fewer than ten in each fiscal year placed onto community supervision, and fewer than ten in each fiscal year admitted into a state correctional institution for election-related offenses. This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on state correctional populations or on the demand for state correctional resources.

**Source**
**Agencies:**
**LBB Staff:** JMc, CMA, LM, LBO, DGI, SLE, MP

By: Hughes, et al.                                        S.B. No. 7

A BILL TO BE ENTITLED
AN ACT

relating to elections, including election integrity and security;
creating criminal offenses; providing civil penalties.
     BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
                 ARTICLE 1. VOTER REGISTRATION
     SECTION 1.01. Chapter 42, Code of Criminal Procedure, is
amended by adding Article 42.0194 to read as follows:
     Art. 42.0194. FINDING REGARDING FELONY CONVICTION. In the
trial of a felony offense, if the defendant is 18 years of age or
older and is adjudged guilty of the offense, the court shall:
         (1) make an affirmative finding that the person has
been found guilty of a felony and enter the affirmative finding in
the judgment of the case; and
         (2) instruct the defendant regarding how the felony
conviction will impact the defendant's right to vote in this state.
     SECTION 1.02. Section 13.002, Election Code, is amended by
adding Subsection (c-1) to read as follows:
     (c-1) A registration application must require the applicant
to affirmatively indicate all information provided on the
application.
     SECTION 1.03. Section 15.028, Election Code, is amended to
read as follows:
     Sec. 15.028. NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO
PROSECUTOR]. [(a)] If the registrar determines that a person who
is not eligible to vote may have registered to vote or [a registered
voter] voted in an election, the registrar shall execute and
deliver to the attorney general, the secretary of state, and the
county or district attorney having jurisdiction in the territory
covered by the election an affidavit stating the relevant facts.
     [(b) If the election covers territory in more than one
county, the registrar shall also deliver an affidavit to the
attorney general.]
     SECTION 1.04. Section 16.0332(a), Election Code, is amended
to read as follows:
     (a) After the registrar receives a list under Section 18.068
of this code or Section 62.113, Government Code, of persons excused
or disqualified from jury service or otherwise determined to be
ineligible to vote because of citizenship status, the registrar
shall deliver to each registered voter whose name appears on the
list a written notice requiring the voter to submit to the registrar
proof of United States citizenship in the form of a certified copy
of the voter's birth certificate, United States passport, or
certificate of naturalization or any other form prescribed by the
secretary of state. The notice shall be delivered by forwardable
mail to the mailing address on the voter's registration application
and to any new address of the voter known to the registrar.
     SECTION 1.05. Section 18.065, Election Code, is amended by
amending Subsection (a) and adding Subsections (e), (f), and (g) to
read as follows:
     (a) The secretary of state shall monitor each registrar for
substantial compliance with Sections 15.083, 16.032, 16.0332, and
18.061 and with rules implementing the statewide computerized voter
registration list.
     (e) If a registrar fails to correct a violation within 30
days of a notice under Subsection (b), the secretary of state shall
correct the violation on behalf of the registrar.
     (f) A registrar is liable to this state for a civil penalty
of $100 for each violation corrected by the secretary of state under
Subsection (e). The attorney general may bring an action to recover

a civil penalty imposed under this section.

        (g)   A civil penalty collected by the attorney general under
this section shall be deposited in the state treasury to the credit
of the general revenue fund.

        SECTION 1.06.   The changes in law made by this article apply
only to an application for voter registration submitted on or after
the effective date of this Act.

                        ARTICLE 2. VOTING BY MAIL

        SECTION 2.01.   Subchapter A, Chapter 84, Election Code, is
amended by adding Section 84.0011 to read as follows:

        Sec. 84.0011.   SOLICITATION OF BALLOT BY MAIL APPLICATIONS
PROHIBITED. The early voting clerk may make no attempt to solicit a
person to complete an application for an early voting ballot by
mail, whether directly or through a third party.

        SECTION 2.02.   Section 84.002, Election Code, is amended by
adding Subsection (c) to read as follows:

        (c)   An application for a ballot to be voted by mail on the
ground of disability must require the applicant to affirmatively
indicate that the applicant agrees with the statement "I have a
sickness or physical condition that prevents me from appearing at
the polling place on election day without a likelihood of needing
personal assistance or injuring my health," as prescribed by
Section 82.002(a).

        SECTION 2.03.   Section 84.011(a), Election Code, is amended
to read as follows:

        (a)   The officially prescribed application form for an early
voting ballot must include:

            (1)   immediately preceding the signature space the
statement: "I certify that the information given in this
application is true, and I understand that giving false information
in this application is a state jail felony [crime].";

            (2)   a statement informing the applicant of the
offenses prescribed by Sections 84.003 and 84.004;

            (3)   spaces for entering an applicant's voter
registration number and county election precinct of registration,
with a statement informing the applicant that failure to furnish
that information does not invalidate the application;

            (4)   on an application for a ballot to be voted by mail:

                (A)   a space for an applicant applying on the
ground of absence from the county of residence to indicate the date
on or after which the applicant can receive mail at the address
outside the county;

                (B)   a space for indicating the fact that an
applicant whose application is signed by a witness cannot make the
applicant's mark and a space for indicating the relationship or
lack of relationship of the witness to the applicant;

                (C)   a space for entering an applicant's telephone
number, with a statement informing the applicant that failure to
furnish that information does not invalidate the application;

                (D)   a space or box for an applicant applying on
the ground of age or disability to indicate that the address to
which the ballot is to be mailed is the address of a facility or
relative described by Section 84.002(a)(3), if applicable;

                (E)   a space or box for an applicant applying on
the ground of confinement in jail to indicate that the address to
which the ballot is to be mailed is the address of a relative
described by Section 84.002(a)(4), if applicable;

                (F)   a space for an applicant applying on the
ground of age or disability to indicate if the application is an
application under Section 86.0015;

                (G)   spaces for entering the signature, printed
name, and residence address of any person assisting the applicant;

                (H)   a statement informing the applicant of the
condition prescribed by Section 81.005; and

                (I)   a statement informing the applicant of the

requirement prescribed by Section 86.003(c).

SECTION 2.04.  Subchapter A, Chapter 84, Election Code, is amended by adding Section 84.0111 to read as follows:

Sec. 84.0111.  PROHIBITION ON DISTRIBUTION OF APPLICATION FORM. (a) Unless authorized by this code, an officer or employee of this state or of a political subdivision of this state may not distribute an application form for an early voting ballot to a person who did not request an application under Section 84.001.

(b)  An officer or employee of this state or of a political subdivision of this state may not use public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 2.05.  Section 84.035, Election Code, is amended to read as follows:

Sec. 84.035.  BALLOT SENT TO APPLICANT. (a) If the early voting clerk cancels an application by an applicant to whom an early voting ballot has been sent, the clerk shall:

(1)  remove the applicant's name from the early voting roster; and

(2)  make any other entries in the records and take any other action necessary to prevent the ballot from being counted if returned.

(b)  A person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section may only vote a provisional ballot under Section 63.011.

SECTION 2.06.  Section 86.006, Election Code, is amended by amending Subsections (a) and (e) and adding Subsection (a-2) to read as follows:

(a)  A marked ballot voted under this chapter must be returned to the early voting clerk in the official carrier envelope. The carrier envelope may be delivered in another envelope and must be transported and delivered only by:

(1)  mail;

(2)  common or contract carrier; or

(3)  subject to Subsections [Subsection] (a-1) and (a-2), in-person delivery by the voter who voted the ballot.

(a-2)  An in-person delivery of a marked ballot voted under this chapter must be received by a person at the time of delivery. A ballot delivered in violation of this subsection may not be counted.

(e)  Carrier envelopes may not be collected and stored at another location for subsequent delivery to the early voting clerk. The secretary of state shall prescribe appropriate procedures to implement this subsection and to provide accountability for the delivery of the carrier envelopes from the voting place to the early voting clerk. A ballot delivered in violation of this subsection may not be counted.

SECTION 2.07.  Section 86.011(c), Election Code, is amended to read as follows:

(c)  If the return is not timely, the clerk shall enter the time of receipt on the carrier envelope and retain it in a locked container for the period for preserving the precinct election records. The clerk shall destroy the unopened envelope and its contents after the preservation period.

SECTION 2.08.  Chapter 86, Election Code, is amended by adding Section 86.015 to read as follows:

Sec. 86.015.  ELECTRONIC TRACKING OF APPLICATION FOR BALLOT VOTED BY MAIL OR BALLOT VOTED BY MAIL. (a)  The secretary of state shall develop or otherwise provide an online tool to each early voting clerk that enables a person who submits an application for a ballot to be voted by mail to track the location and status of the

person's application and ballot on the secretary's Internet website
and on the county's Internet website if the early voting clerk is
the county clerk of a county that maintains an Internet website.
        (b)  The online tool developed or provided under Subsection
(a) must require the voter to provide, before permitting the voter
to access information described by that subsection:
                (1)  the voter's name and registration address and the
last four digits of the voter's social security number; and
                (2)  the voter's:
                        (A)  driver's license number; or
                        (B)  personal identification card number issued
by the Department of Public Safety.
        (c)  An online tool used under this section must update the
applicable Internet website as soon as practicable after each of
the following events occurs:
                (1)  receipt by the early voting clerk of the person's
application for a ballot to be voted by mail;
                (2)  acceptance or rejection by the early voting clerk
of the person's application for a ballot to be voted by mail;
                (3)  placement in the mail by the early voting clerk of
the person's official ballot;
                (4)  receipt by the early voting clerk of the person's
marked ballot; and
                (5)  acceptance or rejection by the early voting ballot
board of a person's marked ballot.
        (c-1)  The information contained in Subsection (c) is not
public information for the purposes of Chapter 552, Government
Code, until after Election Day.
        (d)  The secretary of state shall adopt rules and prescribe
procedures as necessary to implement this section.
        SECTION 2.09.  Section 87.027(i), Election Code, is amended
to read as follows:
        (i)  The signature verification committee shall compare the
signature on each carrier envelope certificate, except those signed
for a voter by a witness, with the signature on the voter's ballot
application to determine whether the signatures are those of the
voter.  The committee may also compare the signatures with any
known signature [two or more signatures] of the voter [made within
the preceding six years and] on file with the county clerk or voter
registrar to determine whether the signatures are those of the
voter.  Except as provided by Subsection (l), a determination under
this subsection that the signatures are not those of the voter must
be made by a majority vote of the committee's membership.  The
committee shall place the jacket envelopes, carrier envelopes, and
applications of voters whose signatures are not those of the voter
in separate containers from those of voters whose signatures are
those of the voter.  The committee chair shall deliver the sorted
materials to the early voting ballot board at the time specified by
the board's presiding judge.
        SECTION 2.10.  Section 87.041(e), Election Code, is amended
to read as follows:
        (e)  In making the determination under Subsection (b)(2),
the board may also compare the signatures with any known signature
[two or more signatures] of the voter [made within the preceding six
years and] on file with the county clerk or voter registrar to
determine whether the signatures are those of the voter.
        SECTION 2.11.  Sections 87.062(a) and (c), Election Code,
are amended to read as follows:
        (a)  On the direction of the presiding judge, the early
voting ballot board, in accordance with Section 85.032(b), shall
open the containers [container] for the early voting ballots that
are to be counted by the board, remove the contents from each [the]
container, and remove any ballots enclosed in ballot envelopes from
their envelopes.
        (c)  Ballots voted by mail shall be tabulated separately from

the ballots voted by personal appearance and shall be separately
reported on the returns [~~The results of all early voting ballots
counted by the board under this subchapter shall be included in the
same return~~].
          SECTION 2.12.   Section 87.103, Election Code, is amended to
read as follows:
          Sec. 87.103.   COUNTING BALLOTS AND PREPARING RETURNS. (a)
The early voting electronic system ballots counted at a central
counting station, the ballots cast at precinct polling places, and
the ballots voted by mail shall be tabulated separately [~~from the
ballots cast at precinct polling places~~] and shall be separately
reported on the returns.
          (b)   The early voting returns prepared at the central
counting station must include any early voting results obtained by
the early voting ballot board under Subchapter [~~Subchapters~~] D [~~and
E~~].
          SECTION 2.13.   Section 87.126, Election Code, is amended by
adding Subsection (a-1) to read as follows:
          (a-1)   Electronic records made under this section shall
record both sides of any application, envelope, or ballot recorded,
and all such records shall be provided to the early voting ballot
board, the signature verification committee, or both.
          SECTION 2.14.   The changes in law made by this article apply
only to an application for an early voting ballot to be voted by
mail that is submitted on or after the effective date of this Act.
                    ARTICLE 3. ELECTION SECURITY
          SECTION 3.01.   Section 33.006(b), Election Code, is amended
to read as follows:
          (b)   A certificate of appointment must:
               (1)   be in writing and signed by the appointing
authority or, for an appointment for a write-in candidate under
Section 33.004, by each of the voters making the appointment;
               (2)   indicate the capacity in which the appointing
authority is acting;
               (3)   state the name, residence address, and voter
registration number of the appointee and be signed by the
appointee;
               (4)   identify the election and the precinct polling
place or other location at which the appointee is to serve; and
               (5)   in an election on a measure, identify the measure
if more than one is to be voted on and state which side of the
measure the appointee represents[~~; and~~
               ~~[(6)   contain an affidavit executed by the appointee
stating that the appointee will not have possession of a device
capable of recording images or sound or that the appointee will
disable or deactivate the device while serving as a watcher~~].
          SECTION 3.02.   Section 33.051(c), Election Code, is amended
to read as follows:
          (c)   [~~A watcher may not be accepted for service if the
watcher has possession of a device capable of recording images or
sound unless the watcher agrees to disable or deactivate the
device.~~] The presiding judge may inquire whether a watcher has
possession of a [~~any prohibited~~] recording device before accepting
the watcher for service.
          SECTION 3.03.   Section 33.056, Election Code, is amended by
amending Subsection (a) and adding Subsections (e) and (f) to read
as follows:
          (a)   Except as provided by Section 33.057, a watcher is
entitled to observe any activity conducted at the location at which
the watcher is serving. A watcher is entitled to sit or stand
[~~conveniently~~] near enough to see and hear the election officers
conducting the observed activity, except as otherwise prohibited by
this chapter.
          (e)   Except as provided by Section 33.057(b), a watcher may
not be denied free movement within the location at which the

is serving.
        (f)   In this code, a watcher who is entitled to "observe" an
activity is entitled to sit or stand near enough to see and hear the
activity.
        SECTION 3.04.   Section 33.061, Election Code, is amended by
adding Subsection (c) to read as follows:
        (c)   An offense under Subsection (a) includes an action taken
to distance or obstruct the view of a watcher in a way that makes
observation reasonably ineffective.
        SECTION 3.05.   Subchapter C, Chapter 33, Election Code, is
amended by adding Section 33.063 to read as follows:
        Sec. 33.063.   DELIVERY OF CERTAIN EVIDENCE TO SECRETARY OF
STATE. (a) A watcher may electronically transmit a photo, video,
or audio recording made by the watcher during the watcher's service
directly to the secretary of state if the watcher reasonably
believes the photo, video, or recording contains evidence of
unlawful activity. The means of transmission must be approved by
the secretary of state.
        (b)   The secretary of state shall make a photo, video, or
audio recording submitted under this section available to the
attorney general upon request.
        (c)   Except as expressly provided by this section, a watcher
may not share or transmit a photo, video, or audio recording, or
allow a photo, video, or audio recording to be shared or
transmitted, if the photo, video, or recording was created by the
watcher during the watcher's service.
        (d)   The secretary of state shall adopt rules to administer
this section.
        SECTION 3.06.   Section 43.007, Election Code, is amended by
amending Subsection (m) and adding Subsection (m-1) to read as
follows:
        (m)   In adopting a methodology under Subsection (f), the
county must ensure that:
              (1)   in a county with a population of less than one
million:
                    (A)   each county commissioners precinct contains
at least one countywide polling place; and
                    (B)   [(2)]   the total number of permanent branch
and temporary branch polling places open for voting in a county
commissioners precinct does not exceed more than twice the number
of permanent branch and temporary branch polling places in another
county commissioners precinct; and
              (2)   in a county with a population of one million or
more, the number of polling places located in each state
representative district included in the territory of the county is
calculated by dividing the number of eligible voters residing in
that district by the total number of eligible voters residing in the
county and using the number generated as a percentage to allocate
the same percentage of polling place locations, rounding up to the
nearest whole number, if necessary.
        (m-1)   Election officials and voting equipment, materials,
and supplies must be allocated to each polling place based on the
same percentage as polling place locations are determined under
Subsection (m) with no greater than a five percent deviation in the
allocation between state representative districts.  Each polling
place location must be able to accommodate 100 percent of the
equipment allocated to be operational at the same time.
        SECTION 3.07.   Section 43.031(b), Election Code, is amended
to read as follows:
        (b)   Each polling place shall be located inside a building.
A polling place may not be located in a tent or other temporary
moveable structure or in a facility primarily designed for motor
vehicles. No voter may cast a vote from inside a motor vehicle
unless the voter meets the requirements of Section 64.009.
        SECTION 3.08.   Section 61.014, Election Code, is amended by

amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:

(a)   A person, other than a watcher using the device solely to record image or sound as permitted under Subsection (b), may not use a wireless communication device within 100 feet of a voting station.

(b)   A person, other than a watcher, may not use a [any] mechanical or electronic device to record [means of recording] images or sound at a polling place. A watcher may use such a device to record images or sound at a polling place, except that a watcher may record activity [within 100 feet] of a voter at a voting station only if the voter is receiving assistance the watcher reasonably believes to be unlawful.

(b-1)   A recording made by a watcher under Subsection (b) may not capture or record any information on a voter's ballot.

SECTION 3.09.   Section 64.007(c), Election Code, is amended to read as follows:

(c)   An election officer shall maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit. An election officer shall enter on the register the name of each voter who returns a spoiled ballot and the spoiled ballot's number.

SECTION 3.10.   Section 64.009, Election Code, is amended by amending Subsection (b) and adding Subsections (b-1), (e), (f), (f-1), (g), and (h) to read as follows:

(b)   The regular voting procedures, except those in Subchapter B, may be modified by the election officer to the extent necessary to conduct voting under this section.

(b-1)   A person other than the voter is only permitted to be inside the motor vehicle while the voter votes if the person would be entitled to accompany the voter to the voting station under other law.

(e)   Except as provided by Section 33.057, a poll watcher is entitled to observe any activity conducted under this section.

(f)   A person who simultaneously assists three or more voters voting under this section by providing the voters with transportation to the polling place must complete and sign a form, provided by an election officer, that contains the person's name and address and whether the person is providing assistance solely under this section or under both this section and Subchapter B.

(f-1)   Subsection (f) does not apply if the person is related to each voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code.

(g)   A form completed under Subsection (f) shall be delivered to the secretary of state as soon as practicable. The secretary shall retain a form delivered under this section for the period for preserving the precinct election records and shall make the form available to the attorney general for inspection if the attorney general has received a complaint to which the information may be responsive.

(h)   The secretary of state shall prescribe the form described by Subsection (f).

SECTION 3.11.   Subchapter B, Chapter 64, Election Code, is amended by adding Section 64.0322 to read as follows:

Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT. (a) A person, other than an election officer, who assists a voter in accordance with this chapter is required to complete a form stating:

(1)   the name and address of the person assisting the voter;

(2)   the manner in which the person assisted the voter;

(3)   the reason the assistance was necessary; and

(4)   the relationship of the assistant to the voter.

(b)   The secretary of state shall prescribe the form required

by this section. The form must be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010, or must be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 3.12.　Subchapter A, Chapter 65, Election Code, is amended by adding Section 65.016 to read as follows:

Sec. 65.016.　VOTE COUNTING EQUIPMENT. Beginning January 1, 2024, no equipment to count votes shall be used that is capable of being connected to the Internet or any other computer network.

SECTION 3.13.　Section 66.052, Election Code, is amended to read as follows:

Sec. 66.052.　DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) A delivery of election records or supplies that is to be performed by the presiding judge may be performed by an election clerk designated by the presiding judge.

(b)　The presiding judge or an election clerk designated by the presiding judge under this section must keep records of each person that has custody of a precinct election record until the records are delivered.

SECTION 3.14.　Sections 66.058(b) and (g), Election Code, are amended to read as follows:

(b)　For a period of at least 60 days after the date of the election, or until any election contest is resolved, whichever is longer, the voted ballots shall be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records. On the 61st day after election day, or the day an election contest is resolved, whichever is later, the general custodian of election records may:

(1)　require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and

(2)　unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period.

(g)　Electronic records created under Chapter 129 shall be preserved in a secure container. An electronic device used to store records may not be altered in any manner as to delete or overwrite the records during the preservation period.

SECTION 3.15.　Section 85.005, Election Code, is amended to read as follows:

Sec. 85.005.　REGULAR DAYS AND HOURS FOR VOTING. (a)　Except as provided by Subsection (c), in an election in which a county clerk [or city secretary] is the early voting clerk under Section 83.002 [or 83.005], early voting by personal appearance at the main early voting polling place shall be conducted on each weekday of [the weekdays of] the early voting period that is not a legal state holiday and for a period of at least nine hours, except that voting may not be conducted earlier than 6 a.m. or later than 9 p.m. [during the hours that the county clerk's or city secretary's main business office is regularly open for business.]

(b)　In an election to which Subsection (a) does not apply, early voting by personal appearance at the main early voting polling place shall be conducted at least nine [eight] hours each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters. In that case, the voting shall be conducted at least four [three] hours each day. The authority ordering the election, or the county clerk if that person is the early voting clerk, shall determine which hours the voting is to be conducted.

(c)　In a county with a population of 30,000 [100,000] or more, the voting in a primary election or the general election for state and county officers shall be conducted at the main early voting polling place for [at least] 12 hours on each weekday of the

last week of the early voting period, and the voting in a special election ordered by the governor shall be conducted at the main early voting polling place for [at least] 12 hours on each of the last two days of the early voting period. <u>Voting under this subsection may not be conducted earlier than 6 a.m. or later than 9 p.m.</u> Voting shall be conducted in accordance with this subsection in those elections in a county with a population under <u>30,000</u> [100,000] on receipt by the early voting clerk of a written request for the extended hours submitted by at least 15 registered voters of the county. The request must be submitted in time to enable compliance with Section 85.067.

    [(d)  In an election ordered by a city, early voting by personal appearance at the main early voting polling place shall be conducted for at least 12 hours:

        [(1)  on one weekday, if the early voting period consists of less than six weekdays; or

        [(2)  on two weekdays, if the early voting period consists of six or more weekdays.]

    SECTION 3.16.  Subchapter A, Chapter 85, Election Code, is amended by adding Section 85.0055 to read as follows:

    <u>Sec. 85.0055.  VOTING AFTER POLLS CLOSE. (a) A voter who has not voted before the time for closing an early voting polling place is entitled to vote after that time if the voter is inside or waiting to enter the polling place at closing time.</u>

    <u>(b)  If voters are waiting to enter the polling place at closing time, the presiding judge shall direct them to enter the polling place and shall close it to others. However, if that procedure is impracticable, at closing time the presiding judge shall distribute numbered identification cards to the waiting voters and permit entry into the polling place for voting after closing time only by those possessing a card.</u>

    <u>(c)  The presiding judge shall take the precautions necessary to prevent voting after closing time by persons who are not entitled to do so.</u>

    SECTION 3.17.  Section 85.006(b), Election Code, is amended to read as follows:

    (b)  In an election in which a county clerk [or city secretary] is the early voting clerk under Section 83.002 [or 83.005], only the early voting clerk may order voting on a Saturday or Sunday.  The clerk must do so by written order.

    SECTION 3.18.  Section 85.010(a-1), Election Code, is amended to read as follows:

    (a-1)  In this section, "eligible county polling place" means an early voting polling place[, other than a polling place established under Section 85.062(e),] established by a county.

    SECTION 3.19.  Section 85.033, Election Code, is amended to read as follows:

    Sec. 85.033.  SECURITY OF VOTING MACHINE.  <u>(a)</u> At the close of early voting each day, the early voting clerk shall secure each voting machine used for early voting in the manner prescribed by the secretary of state so that its unauthorized operation is prevented. The clerk shall unsecure the machine before the beginning of early voting the following day.

    <u>(b)  A voting machine used for early voting may not be removed from the polling place until the polls close on election day.  A defective, or in need of repair, machine may be removed from service and replaced.</u>

    SECTION 3.20.  Section 85.061(a), Election Code, is amended to read as follows:

    (a)  In a countywide election in which the county clerk is the early voting clerk under Section 83.002, an early voting polling place shall be located <u>inside</u> [at] each branch office that is regularly maintained for conducting general clerical functions of the county clerk, except as provided by Subsection (b). <u>If a suitable room is unavailable inside the branch office, the polling</u>

place may be located in another room inside the same building as the branch office. The polling place may not be located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles.

SECTION 3.21.  Section 85.062, Election Code, is amended by amending Subsection (b) and adding Subsection (f-1) to read as follows:

(b)  A polling place established under this section may be located, subject to Subsection (d), at any place in the territory served by the early voting clerk and may be located inside [~~in~~] any building [~~stationary structure~~] as directed by the authority establishing the branch office. The polling place may not be located in a tent or other temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles in the general election for state and county officers, general primary election, or runoff primary election. Ropes or other suitable objects may be used at the polling place to ensure compliance with Section 62.004. Persons who are not expressly permitted by law to be in a polling place shall be excluded from the polling place to the extent practicable.

(f-1)  Notwithstanding any other provision of this section concerning the location of temporary branch polling places, in an election in which countywide polling places are used under Section 43.007, the commissioners court of a county shall employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.

SECTION 3.22.  Chapter 121, Election Code, is amended by adding Section 121.004 to read as follows:

Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR PUBLIC INFORMATION. Notwithstanding any other law, including Chapter 552, Government Code, a written letter, e-mail, or other communication, including a communication made confidential by other law, between a public official and a voting systems vendor:

(1)  is not confidential;

(2)  is public information for purposes of Chapter 552, Government Code; and

(3)  is not subject to an exception to disclosure provided by Chapter 552, Government Code.

SECTION 3.23.  Section 124.002, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  Voting system ballots may not be arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

SECTION 3.24.  Subchapter A, Chapter 125, Election Code, is amended by adding Section 125.0071 to read as follows:

Sec. 125.0071.  VOTER ALLOWED TO CAST BALLOT AT ANY TIME. A voting machine or ballot marking device must allow a voter the option to cast or complete the voter's ballot without voting on all races or measures if the voter affirmatively chooses to do so.

SECTION 3.25.  Subchapter A, Chapter 127, Election Code, is amended by adding Section 127.008 to read as follows:

Sec. 127.008.  ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. (a) A counting station manager and the presiding judge of the counting station shall develop a protocol under which any electronic device inside a central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device.

(b)  The counting station manager and the presiding judge of the counting station shall ensure that the input and activity tracked by the software is printed and delivered to the secretary of state not later than the fifth day after vote counting is complete.

SECTION 3.26.  Section 127.1232, Election Code, is amended to read as follows:

Sec. 127.1232.  SECURITY OF VOTED BALLOTS. (a) The general

custodian of election records shall post a <u>licensed peace officer</u> [~~guard~~] to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.

<u>(b)   The general custodian of election records in a county with a population of less than 100,000 may, and the general custodian of election records in a county with a population of 100,000 or more shall, implement a video surveillance system that retains a record of all areas containing voted ballots from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns. The video may be made available to the public by a livestream in a county with a population of less than 100,000, and shall be made available to the public by a livestream in a county with a population of 100,000 or more.</u>

<u>(c)   The video recorded is an election record under Section 1.012 and shall be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later.</u>

SECTION 3.27.   Section 127.1301, Election Code, is amended to read as follows:

Sec. 127.1301.   [~~TALLYING, TABULATING, AND REPORTING~~] CENTRALLY COUNTED OPTICAL SCAN <u>BALLOTS</u> [~~BALLOT UNDERVOTES AND OVERVOTES~~]. <u>(a)</u> In an election using centrally counted optical scan ballots, the undervotes and overvotes on those ballots shall be tallied, tabulated, and reported by race and by election precinct in the form and manner prescribed by the secretary of state.

<u>(b)   After January 1, 2024, an authority operating a central counting station under this chapter may not purchase or use a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified.</u>

SECTION 3.28.   Subchapter A, Chapter 129, Election Code, is amended by adding Section 129.003 to read as follows:

<u>Sec. 129.003.   PAPER AUDIT TRAIL REQUIRED. (a)  In this section, "auditable voting system" means a voting system that:</u>

<u>(1)   uses a paper record; or</u>

<u>(2)   produces a paper record by which a voter can verify that the voter's ballot will be counted accurately.</u>

<u>(b)   Except as provided by Subsection (e), a voting system that consists of direct recording electronic voting machines may not be used in an election unless the system is an auditable voting system.</u>

<u>(c)   Except for a recount under Title 13 or an election contest under Title 14, the electronic vote is the official record of the ballot. For a recount of ballots cast on a system involving direct recording electronic voting machines, or in an election contest, the paper record is the official record of the vote cast.</u>

<u>(d)   An authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, may use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:</u>

<u>(1)   if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8, 2022, the authority is eligible to have 100 percent of the cost of retrofitting reimbursed under this section; and</u>

<u>(2)   if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this</u>

section.

(e)  Subsections (a)-(c) do not apply to an election held before September 1, 2026.

(f)  Before opening the polls for voting, the presiding election judge shall confirm that each voting machine has any public counter reset to zero and shall print the tape that shows the counter was set to zero.  After closing the polls for voting, the presiding election judge shall print the tape that shows the number of votes cast.  Each election judge present shall sign a tape printed under this subsection.

SECTION 3.29.  Section 129.023, Election Code, is amended by adding Subsections (b-2) and (c-1) to read as follows:

(b-2)  If the test is being conducted for an election in which a county election board has been established under Section 51.002, the general custodian of election records shall notify each member of the board of the test at least 48 hours before the date of the test. If the county election board chooses to witness the test, each member shall sign the statement required by Subsection (e)(1).

(c-1)  A test conducted under this section must also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

SECTION 3.30.  Section 216.001, Election Code, is amended to read as follows:

Sec. 216.001.  APPLICABILITY OF CHAPTER. (a) Except as provided by Subsection (b), this [This] chapter applies only to an election that results in a tie vote as provided by Sections 2.002(i), 2.023(b) and (c), and 2.028.

(b)  If the results of an election show that the number of votes cast in an election precinct exceeds the number of registered voters in the precinct, the authority designated under Section 212.026 shall initiate an automatic recount for that precinct in accordance with this chapter.

SECTION 3.31.  Section 81.032, Local Government Code, is amended to read as follows:

Sec. 81.032.  ACCEPTANCE OF DONATIONS AND BEQUESTS. (a) The commissioners court may accept a donation of labor or services, gift, grant, donation, bequest, or devise of money or other property on behalf of the county, including a donation under Chapter 38, Government Code, for the purpose of performing a function conferred by law on the county or a county officer.

(b)  The commissioners court may not accept a donation described in Subsection (a) of over $1,000 for use in administering elections without the written consent of the secretary of state.

(c)  The secretary of state may grant consent under Subsection (b) only if:

(1)  the secretary consults with the governor, the lieutenant governor, and the speaker of the house of representatives on the proposed donation; and

(2)  the governor, the lieutenant governor, and the speaker of the house of representatives unanimously agree to the secretary's grant of consent.

SECTION 3.32.  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

ARTICLE 4. ENFORCEMENT

SECTION 4.01.  Subchapter E, Chapter 31, Election Code, is amended by adding Sections 31.126 and 31.127 to read as follows:

Sec. 31.126.  RESTRICTION ON ELIGIBILITY. (a) In this section, "election official" means:

(1)  a county clerk;

(2)  a permanent or temporary deputy county clerk;

(3)  an elections administrator;

        (4)   a permanent or temporary employee of an elections administrator;

        (5)   an election judge;

        (6)   an alternate election judge;

        (7)   an early voting clerk;

        (8)   a deputy early voting clerk;

        (9)   an election clerk;

        (10)   the presiding judge of an early voting ballot board;

        (11)   the alternate presiding judge of an early voting ballot board;

        (12)   a member of an early voting ballot board;

        (13)   the chair of a signature verification committee;

        (14)   the vice chair of a signature verification committee;

        (15)   a member of a signature verification committee;

        (16)   the presiding judge of a central counting station;

        (17)   the alternate presiding judge of a central counting station;

        (18)   a central counting station manager;

        (19)   a central counting station clerk;

        (20)   a tabulation supervisor; and

        (21)   an assistant to a tabulation supervisor.

    (b)   A person may not serve as an election official if the person has been finally convicted of an offense under Section 33.061.

    Sec. 31.127. CIVIL PENALTY. (a) In this section, "election official" has the meaning assigned by Section 31.126.

    (b)   An election official may be liable to this state for a civil penalty if the official:

        (1)   is employed by or is an officer of this state or a political subdivision of this state; and

        (2)   violates a provision of this code.

    (c)   A civil penalty imposed under this section may include termination of the person's employment and loss of the person's employment benefits.

    SECTION 4.02.   Section 33.051, Election Code, is amended by adding Subsections (g) and (h) to read as follows:

    (g)   An election officer commits an offense if the officer knowingly refuses to accept a watcher for service whose acceptance is required by this code. An offense under this section is a Class A misdemeanor.

    (h)   Before accepting a watcher, the officer presented with a watcher's certificate of appointment shall require the watcher to take the following oath, administered by the officer: "I swear (or affirm) that I will not disrupt the voting process or harass voters in the discharge of my duties."

    SECTION 4.03.   Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.062 to read as follows:

    Sec. 33.062.   INJUNCTIVE RELIEF. A watcher, or the appointing authority for a watcher, is entitled to injunctive relief under Section 273.081 to enforce this chapter, including issuance of temporary orders.

    SECTION 4.04.   Section 87.0431(b), Election Code, is amended to read as follows:

    (b)   The early voting clerk shall, not later than the 30th day after election day, deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because:

        (1)   the voter was deceased;

        (2)   the voter already voted in person in the same election;

        (3)   the signatures on the carrier envelope and ballot application were not executed by the same person;

(4) the carrier envelope certificate lacked a witness signature; [or]

(5) the carrier envelope certificate was improperly executed by an assistant; or

(6) any form of voter fraud was committed.

SECTION 4.05.  Section 232.006(a), Election Code, is amended to read as follows:

(a) The venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election. For purposes of this section, a contestee's residence is determined under Section 411.0257, Government Code.

SECTION 4.06.  Chapter 232, Election Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061.  PETITION ALLEGING FRAUD. This subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge committed election fraud under any of the following sections of this code:

(1) Section 13.007;

(2) Section 64.012;

(3) Section 64.036;

(4) Section 84.003;

(5) Section 84.0041;

(6) Section 86.0051;

(7) Section 86.006;

(8) Section 86.010; or

(9) Section 276.013.

Sec. 232.062.  EVIDENTIARY STANDARD. A contestant must prove an allegation described by Section 232.061 by a preponderance of the evidence.

Sec. 232.063.  CIVIL PENALTY. (a) If the court in its judgment finds that the contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to this state for a civil penalty of $1,000 for each violation.

(b) A penalty collected under this section by the attorney general shall be deposited in the state treasury to the credit of the general revenue fund.

Sec. 232.064.  ATTORNEY'S FEES. In an election contest to which this subchapter applies, the court may award reasonable attorney's fees to the prevailing party.

SECTION 4.07.  Section 276.013(a), Election Code, is amended to read as follows:

(a) A person commits an offense if the person knowingly or intentionally makes any effort to:

(1) influence the independent exercise of the vote of another in the presence of the ballot or during the voting process;

(2) cause a voter to become registered, a ballot to be obtained, or a vote to be cast under false pretenses; [or]

(3) count votes or alter a report to include votes the person knows are invalid;

(4) refuse to count valid votes or alter a report to exclude valid votes; or

(5) [(3)] cause any intentionally misleading statement, representation, or information to be provided:

(A) to an election official; or

(B) on an application for ballot by mail, carrier envelope, or any other official election-related form or document.

SECTION 4.08.  Chapter 276, Election Code, is amended by adding Sections 276.014 and 276.015 to read as follows:

Sec. 276.014.  PAID VOTE HARVESTING. (a) In this section and Section 276.015, "vote harvesting services" means direct

interaction with one or more voters in connection with an official
ballot, a ballot voted by mail, or an application for ballot by
mail, intended to deliver votes for a specific candidate or
measure.

    (b)  A person commits an offense if the person, directly or
through a third party, knowingly provides or offers to provide the
vote harvesting services in exchange for compensation or other
benefit, including benefits to a party whose welfare is of interest
to the person.

    (c)  A person commits an offense if the person, directly or
through a third party, knowingly provides or offers to provide
compensation or other benefit to a person, or to another party whose
welfare is of interest to the person, in exchange for the vote
harvesting services.

    (d)  A person commits an offense if the person knowingly
collects or possesses a ballot voted by mail or official carrier
envelope from a voter in connection with the vote harvesting
services.

    (e)  This section does not apply to acts promoting a
candidate or measure that do not involve direct interaction with:

        (1)  an application for ballot by mail, in the presence
of the voter; or

        (2)  a voter's official ballot, ballot voted by mail, or
carrier envelope.

    (f)  In this section, compensation in exchange for the vote
harvesting services is inferred if a person who performed the vote
harvesting services for a candidate or campaign solicits, receives,
or is offered compensation from the candidate or campaign, directly
or through a third party, for services other than the vote
harvesting services provided.

    (g)  An offense under this section is a felony of the third
degree.

    (h)  If conduct that constitutes an offense under this
section also constitutes an offense under any other law, the actor
may be prosecuted under this section, the other law, or both.

    Sec. 276.015.  CIVIL LIABILITY FOR UNLAWFUL VOTE HARVESTING.
(a) A person who is shown by a preponderance of the evidence to have
violated Section 276.014 is liable to any candidate harmed by the
vote harvesting services for damages and penalties that may be
awarded under Subsection (c).

    (b)  A person is harmed by the vote harvesting services if
the person can demonstrate that:

        (1)  the person was a candidate for office;

        (2)  the liable party committed an offense under
Section 276.014; and

        (3)  another candidate seeking the same office as the
person received a vote attributable to the offense, regardless of
whether the other candidate knowingly participated in the vote
harvesting services.

    (c)  A litigant who prevails in an action under Subsection
(b) shall recover from any person who committed the unlawful vote
harvesting services damages in an amount including:

        (1)  the amount of any compensation paid to or received
by the person in exchange for the vote harvesting services;

        (2)  the fair market value of any benefit given or
received in exchange for the vote harvesting services;

        (3)  a penalty in the amount of $25,000; and

        (4)  reasonable attorney's fees, court costs, witness
fees, and deposition fees.

    (d)  A litigant who prevails in an action under Subsection
(b) and shows that the number of voters contacted by the vote
harvesting services exceeds the number of votes by which the
litigant lost the election shall recover from the person liable for
the unlawful vote harvesting services punitive damages in an amount
including:

      (1)  any of the litigant's campaign expenditures properly filed on a campaign finance report in connection with the election; and

      (2)  any fees and expenses incurred by the litigant in filing and securing a place on the ballot.

    (e)  A person who commits an offense under Section 276.014 and is found liable under this chapter or other law for any amount of damages arising from the vote harvesting services is jointly liable with any other defendant for the entire amount of damages arising from the vote harvesting services.

    (f)  The cause of action created by this section is cumulative to any other remedy provided by common law or statute.

    (g)  The expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to an action under this section.

    (h)  Chapter 27, Civil Practice and Remedies Code, does not apply to a cause of action under this section.

    (i)  A cause of action under this section may be brought in the county where any part of the vote harvesting services occurred.

    SECTION 4.09.  (a) The changes in law made by this article apply only to an election contest for which the associated election occurred after the effective date of this Act.

    (b)  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

      ARTICLE 5. REPEALER AND EFFECTIVE DATE

    SECTION 5.01.  The following provisions of the Election Code are repealed:

      (1)  Section 85.062(e); and

      (2)  Section 127.201(f).

    SECTION 5.02.  The secretary of state is required to implement Section 86.015, Election Code, as added by this Act, only if the legislature appropriates money specifically for that purpose. If the legislature does not appropriate money specifically for that purpose, the secretary of state may, but is not required to, implement Section 86.015, Election Code, using other appropriations available for that purpose.

    SECTION 5.03.  Subject to Section 5.02 of this Act, this Act takes effect September 1, 2021.

**LEGISLATIVE BUDGET BOARD**

**Austin, Texas**

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**

**March 21, 2021**

**TO:** Honorable Bryan Hughes, Chair, Senate Committee on State Affairs

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** **SB7** by Hughes (Relating to elections, including election integrity and security; creating a criminal offense; providing civil penalties.), **As Introduced**

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, As Introduced : a negative impact of ($34,299,740) through the biennium ending August 31, 2023. The fiscal impact to the state related to the creation of civil penalties cannot be estimated at this time.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.

**General Revenue-Related Funds, Five- Year Impact:**

| Fiscal Year | Probable Net Positive/(Negative) Impact to *General Revenue Related Funds* |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

**All Funds, Five-Year Impact:**

| Fiscal Year | Probable (Cost) from *General Revenue Fund 1* |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

This bill would amend the Election Code to require a voter registrar to provide notice of unlawful voting or registration to the Office of the Attorney General (OAG) and the Secretary of State (SOS), in addition to the county or district attorney.  The bill would require the SOS to monitor compliance and impose civil penalties for violations.

The bill would modify certain existing regulations related to mail ballots and would require the SOS to develop and implement a system allowing for tracking of the mail ballot system.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

The bill would prohibit a commissioners court from accepting certain donations of over $1,000 for use in administering elections without the written consent of the SOS.

The bill would provide for civil penalties and additional criminal offenses for election violations.

## Fiscal Analysis

According to the SOS, the provisions of the bill that would require the agency to develop a mail ballot tracking system would require moderate programming modifications to the statewide voter registration system. In addition, according to the SOS, the provisions of the bill that would provide a reimbursement of 100 percent to certain counties that purchased non-auditable voting system equipment would have a significant fiscal impact to the state.

According to the Veterans Commission, no significant fiscal impact to the agency is anticipated.

According to the OAG, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, any increased case volume driven by the bill would likely be absorbed by existing resources and no significant fiscal impact to the state court system is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

The offense created by this bill would be a Class A misdemeanor.

## Methodology

The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

## Technology

According to the SOS, it would require 320 hours to implement the mail ballot requirements of the bill. The agency assumes a contractor cost of $132 per hour for this service and a total cost of $42,240. The agency also assumes additional IT costs related to increased volume of services would be approximately $10,000.

## Local Government Impact

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would

be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines.  Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines.  Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail.  The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be approximately $6.2 million.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

A Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 403 Veterans Commission

**LBB Staff:** JMc, SMAT, LCO, GP

## LEGISLATIVE BUDGET BOARD
### Austin, Texas

### FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION

### March 29, 2021

**TO:** Honorable Bryan Hughes, Chair, Senate Committee on State Affairs

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** **SB7** by Hughes (relating to elections, including election integrity and security; creating a criminal offense; providing civil penalties.), **Committee Report 1st House, Substituted**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, Committee Report 1st House, Substituted : a negative impact of ($34,299,740) through the biennium ending August 31, 2023. The fiscal impact to the state related to the creation of civil penalties cannot be estimated at this time.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill.  The Secretary of State is required to implement a provision of this Act only if the legislature appropriates money specifically for that purpose.  If the legislature does not appropriate money specifically for that purpose, the Secretary of State may, but is not required to, implement a provision of this Act using other appropriations available for that purpose.

---

**General Revenue-Related Funds, Five- Year Impact:**

| *Fiscal Year* | **Probable Net Positive/(Negative) Impact to** *General Revenue Related Funds* |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

**All Funds, Five-Year Impact:**

| *Fiscal Year* | **Probable (Cost) from** *General Revenue Fund 1* |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

This bill would amend the Election Code to require a voter registrar to provide notice of unlawful voting or registration to the Office of the Attorney General (OAG) and the Secretary of State (SOS), in addition to the county or district attorney.  The bill would require the SOS to monitor compliance and impose civil penalties for violations.

The bill would modify certain existing regulations related to mail ballots and would require the SOS to develop and implement a system allowing for tracking of the mail ballot system.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

The bill would prohibit a commissioners court from accepting certain donations of over $1,000 for use in administering elections without the written consent of the SOS.

The bill would provide for civil penalties and additional criminal offenses for certain election violations.

## Fiscal Analysis

According to the SOS, the provisions of the bill that would require the agency to develop a mail ballot tracking system would require moderate programming modifications to the statewide voter registration system. In addition, according to the SOS, the provisions of the bill that would provide a reimbursement of 100 percent to certain counties that purchased non-auditable voting system equipment would have a significant fiscal impact to the state.

According to the Veterans Commission, no significant fiscal impact to the agency is anticipated.

According to the OAG, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, any increased case volume driven by the bill would likely be absorbed by existing resources and no significant fiscal impact to the state court system is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

The offenses created or expanded by the bill would be Class A misdemeanors.

## Methodology

The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

## Technology

According to the SOS, it would require 320 hours to implement the mail ballot requirements of the bill. The agency assumes a contractor cost of $132 per hour for this service and a total cost of $42,240. The agency also assumes additional IT costs related to increased volume of services would be approximately $10,000.

## Local Government Impact

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines.  Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines.  Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail.  The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

A Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 403 Veterans Commission

**LBB Staff:** JMc, SMAT, LCO, GP

**LEGISLATIVE BUDGET BOARD**

**Austin, Texas**

**FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION**

**April 29, 2021**

**TO:** Honorable Briscoe Cain, Chair, House Committee on Elections

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE: SB7** by Hughes (Relating to elections, including election integrity and security; creating criminal offenses; providing civil penalties.), **As Engrossed**

---

**Estimated Two-year Net Impact to General Revenue Related Funds** for SB7, As Engrossed : a negative impact of ($34,299,740) through the biennium ending August 31, 2023. The fiscal impact to the state related to the creation of civil penalties cannot be estimated at this time.

The bill would make no appropriation but could provide the legal basis for an appropriation of funds to implement the provisions of the bill. The Secretary of State is required to implement a provision of this Act only if the legislature appropriates money specifically for that purpose. If the legislature does not appropriate money specifically for that purpose, the Secretary of State may, but is not required to, implement a provision of this Act using other appropriations available for that purpose.

---

**General Revenue-Related Funds, Five- Year Impact:**

| *Fiscal Year* | **Probable Net Positive/(Negative) Impact to** *General Revenue Related Funds* |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

**All Funds, Five-Year Impact:**

| *Fiscal Year* | **Probable (Cost) from** *General Revenue Fund* 1 |
|---|---|
| 2022 | ($34,299,740) |
| 2023 | $0 |
| 2024 | $0 |
| 2025 | $0 |
| 2026 | $0 |

**Fiscal Analysis**

This bill would amend the Election Code to require a voter registrar to provide notice of unlawful voting or registration to the Office of the Attorney General (OAG) and the Secretary of State (SOS), in addition to the

Page 1 of 3

county or district attorney. The bill would require the SOS to monitor compliance and impose civil penalties for violations.

The bill would modify certain existing regulations related to mail ballots and would require the SOS to develop and implement a system allowing for tracking of the mail ballot system.

The bill would impose certain limits on polling place procedures and prohibit the use of direct recording electronic machines unless the system contains an auditable voting system. The bill would allow certain entities to seek reimbursement of the costs of retrofitting or replacing non-auditable voting systems.

The bill would prohibit a commissioners court from accepting certain donations of over $1,000 for use in administering elections without the written consent of the SOS.

The bill would provide for civil penalties and additional criminal offenses for certain election violations.

The bill would add a new felony offense for knowingly providing vote harvesting services, as defined in the bill, in exchange for compensation or other benefit.

## Methodology

According to the SOS, the provisions of the bill that would require the agency to develop a mail ballot tracking system would require moderate programming modifications to the statewide voter registration system. In addition, according to the SOS, the provisions of the bill that would provide a reimbursement of 100 percent to certain counties that purchased non-auditable voting system equipment would have a significant fiscal impact to the state.

The SOS assumes that 47 counties that have purchased direct-recording electronic voting systems would be subject to reimbursement under the provisions of the bill. In counties using these systems, 9,492 voting machines would have to be retrofitted at a total cost of $21,635,000. Another 628 machines would have to be replaced at a total cost of $2,584,100. The total cost for replacement or retrofitting of these machines would be $24,219,100.

In addition to upgrading or replacing voting machines, counties would also be able to seek reimbursement for tabulation machines compliant with the upgraded systems. At least one scanning device would be required for each polling place. The SOS assumes that there would be one polling place for each of 1,425 precincts. In addition, scanners would also be required for an estimated 220 early voting locations. At a list cost of approximately $6,100 per scanner, the SOS estimates these reimbursements would result in an additional potential reimbursement to counties of $10,028,400.

According to the Veterans Commission, no significant fiscal impact to the agency is anticipated.

According to the OAG, the bill could result in an increase in cases; however, the agency assumes that any legal work resulting from the passage of this bill could be reasonably absorbed with current resources.

According to the Office of Court Administration, although the bill would add a new felony-level offense related to vote harvesting practices, any additional case volume driven by the bill should be absorbed by existing resources and no significant fiscal impact is anticipated.

According to the Comptroller of Public Accounts, the fiscal impact on the state cannot be estimated.

This analysis assumes implementing the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

## Technology

According to the SOS, it would require 320 hours to implement the mail ballot requirements of the bill. The agency assumes a contractor cost of $132 per hour for this service and a total cost of $42,240. The agency also

assumes additional IT costs related to increased volume of services would be approximately $10,000.

## Local Government Impact

According to the SOS, in addition to reimbursable equipment costs, counties would also have to secure additional software updates, perform acceptance testing of new equipment, and receive training from the vendor on the new equipment. The agency estimates the average cost to the counties for the additional training would be approximately $4,000 for a week of on-site training.

According to Hidalgo County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $4.0 million for 1,419 conversions and 250 scanning machines. Of this amount, $48,515 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Brazos County, the cost for upgrading its existing voting system to meet the requirements of the bill would be $1.7 million for 480 conversions and 60 scanning machines. Of this amount, $15,728 would either not be eligible for reimbursement or would represent an ongoing operational expense.

According to Randall County, it would cost the county $750,000 to retrofit the current system to a system that could provide a paper audit trail. The county also adds that the current system was purchased in 2017.

According to Brazoria County, the cost to retrofit the current system would be $2.6 million.

According to El Paso County, the county anticipates the fiscal impact of the bill would be between $400,000 to $600,000 per election.

According to Chambers County, the county anticipates the fiscal impact of the bill would be approximately $1.1 million.

According to Fort Bend County, the cost to the county would range from $246,000 to $350,000 per year.

A Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 302 Office of the Attorney General, 304 Comptroller of Public Accounts, 307 Secretary of State, 403 Veterans Commission

**LBB Staff:** JMc, LCO, GP, CMA, SMAT

## LEGISLATIVE BUDGET BOARD
### Austin, Texas

### FISCAL NOTE, 87TH LEGISLATIVE REGULAR SESSION

### April 30, 2021

**TO:** Honorable Briscoe Cain, Chair, House Committee on Elections

**FROM:** Jerry McGinty, Director, Legislative Budget Board

**IN RE:** **SB7** by Hughes (relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses.), **Committee Report 2nd House, Substituted**

> **No significant fiscal implication to the State is anticipated.**

The bill would amend various codes as they relate to election integrity and the prevention of fraud in the conduct of an election.  Under the provisions of the bill, several new election fraud-related criminal offenses would be created punishable at the felony and misdemeanor level with the level and degree based on the specific circumstances of the offense.

The Texas Ethics Commission and the Secretary of State indicate the modifications outlined in the bill's provisions would not result in a significant fiscal impact.  This analysis assumes implementing the provisions of the bill addressing felony sanctions would not result in a significant impact on the demand for state correctional resources.

According to the Office of Court Administration,  no significant fiscal impact to the state court system is anticipated.

### Local Government Impact

The Texas Association of Counties does not anticipate a significant fiscal impact to counties.

The bill creates a Class B misdemeanor. A Class B misdemeanor is punishable by a fine of not more than $2,000, confinement in jail for a term not to exceed 180 days, or both. Costs associated with enforcement, prosecution and confinement could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

The bill creates and repeals a Class A misdemeanor. A Class A misdemeanor is punishable by a fine of not more than $4,000, confinement in jail for a term not to exceed one year, or both. The creation and repeal of the Class A misdemeanors will offset any fiscal implication.

**Source Agencies:** 212 Office of Court Admin, 307 Secretary of State, 356 Texas Ethics Commission
**LBB Staff:** JMc, SLE, GP, LM, MP, AF

87R10764 ADM-F

By: Hughes, et al.                                                      S.B. No. 7

A BILL TO BE ENTITLED
AN ACT
relating to elections, including election integrity and security;
creating a criminal offense; providing civil penalties.
        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
                   ARTICLE 1. VOTER REGISTRATION
        SECTION 1.01.   Chapter 42, Code of Criminal Procedure, is
amended by adding Article 42.0194 to read as follows:
        Art. 42.0194.   FINDING REGARDING FELONY CONVICTION. In the
trial of a felony offense, if the defendant is 18 years of age or
older and is adjudged guilty of the offense, the court shall:
                (1)   make an affirmative finding that the person has
been found guilty of a felony and enter the affirmative finding in
the judgment of the case; and
                (2)   instruct the defendant regarding how the felony
conviction will impact the defendant's right to vote in this state.
        SECTION 1.02.   Section 13.002, Election Code, is amended by
adding Subsection (c-1) to read as follows:
        (c-1)   A registration application must require the applicant
to affirmatively indicate all information provided on the
application.
        SECTION 1.03.   Section 15.028, Election Code, is amended to
read as follows:
        Sec. 15.028.   NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO
PROSECUTOR].   [(a)] If the registrar determines that a person who
is not eligible to vote may have registered to vote or [a registered
voter] voted in an election, the registrar shall execute and
deliver to the attorney general, the secretary of state, and the
county or district attorney having jurisdiction in the territory
covered by the election an affidavit stating the relevant facts.
        [(b)   If the election covers territory in more than one
county, the registrar shall also deliver an affidavit to the
attorney general.]
        SECTION 1.04.   Section 16.0332(a), Election Code, is amended
to read as follows:
        (a)   After the registrar receives a list under Section 18.068
of this code or Section 62.113, Government Code, of persons excused
or disqualified from jury service or otherwise determined to be
ineligible to vote because of citizenship status, the registrar
shall deliver to each registered voter whose name appears on the
list a written notice requiring the voter to submit to the registrar
proof of United States citizenship in the form of a certified copy
of the voter's birth certificate, United States passport, or
certificate of naturalization or any other form prescribed by the
secretary of state.   The notice shall be delivered by forwardable
mail to the mailing address on the voter's registration application
and to any new address of the voter known to the registrar.
        SECTION 1.05.   Section 18.065, Election Code, is amended by
amending Subsection (a) and adding Subsections (e), (f), and (g) to
read as follows:
        (a)   The secretary of state shall monitor each registrar for
substantial compliance with Sections 15.083, 16.032, 16.0332,
18.061 and with rules implementing the statewide computerized voter
registration list.
        (e)   If a registrar fails to correct a violation within 30
days of a notice under Subsection (b), the secretary of state shall
correct the violation on behalf of the registrar.
        (f)   A registrar is liable to this state for a civil penalty
of $100 for each violation corrected by the secretary of state under

Subsection (e). The attorney general may bring an action to recover a civil penalty imposed under this section.

(g)  A civil penalty collected by the attorney general under this section shall be deposited in the state treasury to the credit of the general revenue fund.

SECTION 1.06.  The changes in law made by this article apply only to an application for voter registration submitted on or after the effective date of this Act.

ARTICLE 2. VOTING BY MAIL

SECTION 2.01.  Subchapter A, Chapter 84, Election Code, is amended by adding Section 84.0011 to read as follows:

Sec. 84.0011.  SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED. The early voting clerk may make no attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party.

SECTION 2.02.  Section 84.002, Election Code, is amended by adding Subsection (c) to read as follows:

(c)  An application for a ballot to be voted by mail on the ground of disability must require the applicant to affirmatively indicate that the applicant agrees with the statement "I am physically unable to enter a polling place without needing personal assistance or injuring my health," as prescribed by Section 82.002(a).

SECTION 2.03.  Subchapter A, Chapter 84, Election Code, is amended by adding Section 84.0111 to read as follows:

Sec. 84.0111.  PROHIBITION ON DISTRIBUTION OF APPLICATION FORM. (a) Unless authorized by this code, an officer or employee of this state or of a political subdivision of this state may not distribute an application form for an early voting ballot to a person who did not request an application under Section 84.001.

(b)  An officer or employee of this state or of a political subdivision of this state may not use public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 2.04.  Section 84.035, Election Code, is amended to read as follows:

Sec. 84.035.  BALLOT SENT TO APPLICANT. (a) If the early voting clerk cancels an application by an applicant to whom an early voting ballot has been sent, the clerk shall:

(1)  remove the applicant's name from the early voting roster; and

(2)  make any other entries in the records and take any other action necessary to prevent the ballot from being counted if returned.

(b)  A person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section may only vote a provisional ballot under Section 63.011.

SECTION 2.05.  Section 86.0015, Election Code, is amended by adding Subsection (b-3) to read as follows:

(b-3)  An application for a ballot to be voted by mail on the ground of disability under this section must include or be accompanied by:

(1)  written documentation from the United States Social Security Administration or the United States Department of Veterans Affairs evidencing that the applicant has been determined to have a disability; or

(2)  a certificate of a licensed physician or chiropractor or accredited Christian Science practitioner in substantially the following form:

"This is to certify that I personally know that _____ has a sickness or physical condition that will prevent him or her

from appearing at a polling place without a likelihood of needing
personal assistance or of injuring his or her health.
           "Witness my hand at _____, Texas, this _____ day of
_____, 20___.

                                         _____
                                         (signature of physician,
                                         chiropractor, or practitioner)

                                         _____
                                         (printed name of physician,
                                         chiropractor, or practitioner)"

           SECTION 2.06.  Chapter 86, Election Code, is amended by
adding Section 86.015 to read as follows:
           Sec. 86.015.  ELECTRONIC TRACKING OF APPLICATION FOR BALLOT
VOTED BY MAIL OR BALLOT VOTED BY MAIL. (a)  The secretary of state
shall develop or otherwise provide an online tool to each early
voting clerk that enables a person who submits an application for a
ballot to be voted by mail to track the location and status of the
person's application and ballot on the secretary's Internet website
and on the county's Internet website if the early voting clerk is
the county clerk of a county that maintains an Internet website.
           (b)  The online tool developed or provided under Subsection
(a) must require the voter to provide, before permitting the voter
to access information described by that subsection:
                 (1)  the voter's name and voter registration number or
registration address; and
                 (2)  the voter's:
                       (A)  driver's license number;
                       (B)  personal identification card number issued
by the Department of Public Safety; or
                       (C)  social security number.
           (c)  An online tool used under this section must update the
applicable Internet website as soon as practicable after each of
the following events occurs:
                 (1)  receipt by the early voting clerk of the person's
application for a ballot to be voted by mail;
                 (2)  acceptance or rejection by the early voting clerk
of the person's application for a ballot to be voted by mail;
                 (3)  placement in the mail by the early voting clerk of
the person's official ballot;
                 (4)  receipt by the early voting clerk of the person's
marked ballot; and
                 (5)  acceptance or rejection by the early voting ballot
board of a person's marked ballot.
           (d)  The secretary of state shall adopt rules and prescribe
procedures as necessary to implement this section.
           SECTION 2.07.  Section 87.027(i), Election Code, is amended
to read as follows:
           (i)  The signature verification committee shall compare the
signature on each carrier envelope certificate, except those signed
for a voter by a witness, with the signature on the voter's ballot
application to determine whether the signatures are those of the
voter.  The committee may also compare the signatures with any
known signature [two or more signatures] of the voter [made within
the preceding six years and] on file with the county clerk or voter
registrar to determine whether the signatures are those of the
voter.  Except as provided by Subsection (l), a determination under
this subsection that the signatures are not those of the voter must
be made by a majority vote of the committee's membership.  The
committee shall place the jacket envelopes, carrier envelopes, and
applications of voters whose signatures are not those of the voter
in separate containers from those of voters whose signatures are
those of the voter.  The committee chair shall deliver the sorted
materials to the early voting ballot board at the time specified by
the board's presiding judge.
           SECTION 2.08.  Section 87.041(e), Election Code, is amended

to read as follows:

(e)  In making the determination under Subsection (b)(2), the board may also compare the signatures with any underlined(known signature) [~~two or more signatures~~] of the voter [~~made within the preceding six years and~~] on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 2.09.  Sections 87.062(a) and (c), Election Code, are amended to read as follows:

(a)  On the direction of the presiding judge, the early voting ballot board, in accordance with Section 85.032(b), shall open the underlined(containers) [~~container~~] for the early voting ballots that are to be counted by the board, remove the contents from underlined(each) [~~the~~] container, and remove any ballots enclosed in ballot envelopes from their envelopes.

(c)  underlined(Ballots voted by mail shall be tabulated separately from the ballots voted by personal appearance and shall be separately reported on the returns) [~~The results of all early voting ballots counted by the board under this subchapter shall be included in the same return~~].

SECTION 2.10.  Section 87.103, Election Code, is amended to read as follows:

Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS. (a) The early voting electronic system ballots counted at a central counting station, underlined(the ballots cast at precinct polling places, and the ballots voted by mail) shall be tabulated separately [~~from the ballots cast at precinct polling places~~] and shall be separately reported on the returns.

(b)  The early voting returns prepared at the central counting station must include any early voting results obtained by the early voting ballot board under underlined(Subchapter) [~~Subchapters~~] D [~~and E~~].

SECTION 2.11.  Section 87.126, Election Code, is amended by adding Subsection (a-1) to read as follows:

underlined((a-1)  Electronic records made under this section shall record both sides of any application, envelope, or ballot recorded, and all such records shall be provided to the early voting ballot board, the signature verification committee, or both.)

SECTION 2.12.  The changes in law made by this article apply only to an application for an early voting ballot to be voted by mail that is submitted on or after the effective date of this Act.

ARTICLE 3. ELECTION SECURITY

SECTION 3.01.  Section 33.006(b), Election Code, is amended to read as follows:

(b)  A certificate of appointment must:

(1)  be in writing and signed by the appointing authority or, for an appointment for a write-in candidate under Section 33.004, by each of the voters making the appointment;

(2)  indicate the capacity in which the appointing authority is acting;

(3)  state the name, residence address, and voter registration number of the appointee and be signed by the appointee;

(4)  identify the election and the precinct polling place or other location at which the appointee is to serve; underlined(and)

(5)  in an election on a measure, identify the measure if more than one is to be voted on and state which side of the measure the appointee represents[~~; and~~]

[~~(6)  contain an affidavit executed by the appointee stating that the appointee will not have possession of a device capable of recording images or sound or that the appointee will disable or deactivate the device while serving as a watcher~~].

SECTION 3.02.  Section 33.051(c), Election Code, is amended to read as follows:

(c)  [~~A watcher may not be accepted for service if the watcher has possession of a device capable of recording images or~~]

~~sound unless the watcher agrees to disable or deactivate the device.~~] The presiding judge may inquire whether a watcher has possession of a [~~any prohibited~~] recording device before accepting the watcher for service.

SECTION 3.03.  Section 33.056, Election Code, is amended by amending Subsection (a) and adding Subsection (e) to read as follows:

(a)  Except as provided by Section 33.057, a watcher is entitled to observe any activity conducted at the location at which the watcher is serving. A watcher is entitled to sit or stand [~~conveniently~~] near <u>enough to see and hear</u> the election officers conducting the observed activity, <u>except as otherwise prohibited by this chapter</u>.

<u>(e)  Except as provided by Section 33.057(b), a watcher may not be denied free movement within the location at which the watcher is serving.</u>

SECTION 3.04.  Section 33.061, Election Code, is amended by adding Subsection (c) to read as follows:

<u>(c)  An offense under Subsection (a) includes an action taken to distance or obstruct the view of a watcher in a way that makes observation reasonably ineffective.</u>

SECTION 3.05.  Section 43.007, Election Code, is amended by adding Subsection (q) to read as follows:

<u>(q)  Each countywide polling place in a county must have approximately the same number of voting machines as each other countywide polling place in the county.</u>

SECTION 3.06.  Section 43.031(b), Election Code, is amended to read as follows:

(b)  Each polling place shall be located inside a building. <u>A polling place may not be located in a tent or other temporary moveable structure or in a facility primarily designed for motor vehicles. No voter may cast a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009.</u>

SECTION 3.07.  Section 61.014, Election Code, is amended by amending Subsections (a) and (b) and adding Subsection (b-1) to read as follows:

(a)  A person<u>, other than a watcher using the device solely to record image or sound as permitted under Subsection (b),</u> may not use a wireless communication device within 100 feet of a voting station.

(b)  A person<u>, other than a watcher,</u> may not use a [~~any~~] mechanical or electronic <u>device to record</u> [~~means of recording~~] images or sound <u>that captures the activity</u> [~~within 100 feet~~] of a <u>voter at a</u> voting station<u>, unless the voter is receiving assistance the watcher reasonably believes to be unlawful</u>.

<u>(b-1)  A recording made by a watcher under Subsection (b) may not capture or record any information on a voter's ballot.</u>

SECTION 3.08.  Section 64.007(c), Election Code, is amended to read as follows:

(c)  An election officer shall maintain a register of spoiled ballots at the polling place<u>, including spoiled ballots from a direct recording electronic voting unit</u>. An election officer shall enter on the register the name of each voter who returns a spoiled ballot and the spoiled ballot's number.

SECTION 3.09.  Section 64.009, Election Code, is amended by amending Subsection (b) and adding Subsections (b-1), (e), (f), and (g) to read as follows:

(b)  The regular voting procedures<u>, except those in Subchapter B,</u> may be modified by the election officer to the extent necessary to conduct voting under this section.

<u>(b-1)  A person other than the voter is only permitted to be inside the motor vehicle while the voter votes if the person would be entitled to accompany the voter to the voting station under other law.</u>

<u>(e)  Except as provided by Section 33.057, a poll watcher is</u>

entitled to observe any activity conducted under this section.

(f)  A person who assists a voter voting under this section by providing the voter with transportation to the polling place must complete and sign a form that:

(1)  requires the person to affirm that the voter is physically unable to enter the polling place without personal assistance or likelihood of injuring the voter's health; and

(2)  contains the following information:

(A)  the person's name and address; and

(B)  whether the person is providing assistance solely under this section or under both this section and Subchapter B.

(g)  The secretary of state shall prescribe the form described by Subsection (f).

SECTION 3.10.  Subchapter B, Chapter 64, Election Code, is amended by adding Section 64.0322 to read as follows:

Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT. (a) A person, other than an election officer, who assists a voter in accordance with this chapter is required to complete a form stating:

(1)  the name and address of the person assisting the voter;

(2)  the manner in which the person assisted the voter;

(3)  the reason the assistance was necessary; and

(4)  the relationship of the assistant to the voter.

(b)  The secretary of state shall prescribe the form required by this section. The form must be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010, or must be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 3.11.  Section 66.052, Election Code, is amended to read as follows:

Sec. 66.052.  DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) A delivery of election records or supplies that is to be performed by the presiding judge may be performed by an election clerk designated by the presiding judge.

(b)  The presiding judge or an election clerk designated by the presiding judge under this section must keep records of each person that has custody of a precinct election record until the records are delivered.

SECTION 3.12.  Sections 66.058(b) and (g), Election Code, are amended to read as follows:

(b)  For a period of at least 60 days after the date of the election, or until any election contest is resolved, whichever is longer, the voted ballots shall be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records. On the 61st day after election day, or the day an election contest is resolved, whichever is later, the general custodian of election records may:

(1)  require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and

(2)  unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period.

(g)  Electronic records created under Chapter 129 shall be preserved in a secure container. Electronic records may not be deleted or overwritten during the preservation period.

SECTION 3.13.  Section 85.005, Election Code, is amended to read as follows:

Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING. (a) Except as provided by Subsection (c), in an election in which a county clerk or city secretary is the early voting clerk under Section

83.002 or 83.005, early voting by personal appearance at the main early voting polling place shall be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business, except that voting may not be conducted earlier than 7 a.m. or later than 7 p.m.[.]

(b)  In an election to which Subsection (a) does not apply, early voting by personal appearance at the main early voting polling place shall be conducted at least eight hours each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters. In that case, the voting shall be conducted at least three hours each day. The authority ordering the election, or the county clerk if that person is the early voting clerk, shall determine which hours the voting is to be conducted except that voting may not be conducted earlier than 7 a.m. or later than 7 p.m.[.]

(c)  In a county with a population of 100,000 or more, the voting in a primary election or the general election for state and county officers shall be conducted at the main early voting polling place for [at least] 12 hours on each weekday of the last week of the early voting period, and the voting in a special election ordered by the governor shall be conducted at the main early voting polling place for [at least] 12 hours on each of the last two days of the early voting period. Voting shall be conducted in accordance with this subsection in those elections in a county with a population under 100,000 on receipt by the early voting clerk of a written request for the extended hours submitted by at least 15 registered voters of the county. The request must be submitted in time to enable compliance with Section 85.067.

(d)  In an election ordered by a city, early voting by personal appearance at the main early voting polling place shall be conducted for [at least] 12 hours:

(1)  on one weekday, if the early voting period consists of less than six weekdays; or

(2)  on two weekdays, if the early voting period consists of six or more weekdays.

SECTION 3.14.  Sections 85.006(c) and (e), Election Code, are amended to read as follows:

(c)  The authority ordering voting on a Saturday or Sunday shall determine the hours during which voting is to be conducted except that voting may not be conducted earlier than 7 a.m. or later than 7 p.m.[.]

(e)  In a primary election or the general election for state and county officers in a county with a population of 100,000 or more, the early voting clerk shall order personal appearance voting at the main early voting polling place to be conducted for [at least] 12 hours on the last Saturday and for at least five hours on the last Sunday of the early voting period. The early voting clerk shall order voting to be conducted at those times in those elections in a county with a population under 100,000 on receipt of a written request for those hours submitted by at least 15 registered voters of the county. The request must be submitted in time to enable compliance with Section 85.007. This subsection supersedes any provision of this subchapter to the extent of any conflict.

SECTION 3.15.  Section 85.010(c), Election Code, is amended to read as follows:

(c)  A shared polling place established under Subsection (b) that is designated as a main early voting polling place by any political subdivision:

(1)  must be open for voting for all political subdivisions the polling place serves for at least the days and hours required of a main early voting polling place under Section 85.002 for the political subdivision making the designation; and

(2)  may not be open for voting earlier than 7 a.m. or

later than 7 p.m.[.]
     SECTION 3.16.  Section 85.061(a), Election Code, is amended
to read as follows:
     (a)  In a countywide election in which the county clerk is
the early voting clerk under Section 83.002, an early voting
polling place shall be located <u>inside</u> [<s>at</s>] each branch office that
is regularly maintained for conducting general clerical functions
of the county clerk, except as provided by Subsection (b). <u>If a</u>
<u>suitable room is unavailable inside the branch office, the polling</u>
<u>place may be located in another room inside the same building as the</u>
<u>branch office. The polling place may not be located in a tent or</u>
<u>other temporary movable structure or a parking garage, parking lot,</u>
<u>or similar facility designed primarily for motor vehicles.</u>
     SECTION 3.17.  Section 85.062(b), Election Code, is amended
to read as follows:
     (b)  A polling place established under this section may be
located, subject to Subsection (d), at any place in the territory
served by the early voting clerk and may be located <u>inside</u> [<s>in</s>] any
<u>building</u> [<s>stationary structure</s>] as directed by the authority
establishing the branch office. The polling place may <u>not</u> be
located in a <u>tent or other temporary</u> movable structure <u>or a parking</u>
<u>garage, parking lot, or similar facility designed primarily for</u>
<u>motor vehicles</u> in the general election for state and county
officers, general primary election, or runoff primary election.
Ropes or other suitable objects may be used at the polling place to
ensure compliance with Section 62.004. Persons who are not
expressly permitted by law to be in a polling place shall be
excluded from the polling place to the extent practicable.
     SECTION 3.18.  Section 85.064, Election Code, is amended by
adding Subsection (c) to read as follows:
     <u>(c)  Early voting by personal appearance at a temporary</u>
<u>branch polling place may not be conducted earlier than 7 a.m. or</u>
<u>later than 7 p.m.</u>
     SECTION 3.19.  Section 124.002, Election Code, is amended by
adding Subsection (c) to read as follows:
     <u>(c)  Voting system ballots may not be arranged in a manner</u>
<u>that allows a political party's candidates to be selected in one</u>
<u>motion or gesture.</u>
     SECTION 3.20.  Subchapter A, Chapter 125, Election Code, is
amended by adding Section 125.0071 to read as follows:
     <u>Sec. 125.0071.  VOTER ALLOWED TO CAST BALLOT AT ANY TIME. A</u>
<u>voting machine or ballot marking device must allow a voter the</u>
<u>option to cast or complete the voter's ballot without voting on all</u>
<u>races or measures if the voter affirmatively chooses to do so.</u>
     SECTION 3.21.  Subchapter A, Chapter 127, Election Code, is
amended by adding Section 127.008 to read as follows:
     <u>Sec. 127.008.  ELECTRONIC DEVICES IN CENTRAL COUNTING</u>
<u>STATION. (a) A counting station manager and the presiding judge of</u>
<u>the counting station shall develop a protocol under which any</u>
<u>electronic device inside a central counting station, including the</u>
<u>equipment necessary to count votes, is equipped with software that</u>
<u>tracks all input and activity on the electronic device.</u>
     <u>(b)  The software described by Subsection (a) must provide</u>
<u>for the input and activity on the electronic device to be</u>
<u>automatically delivered to the secretary of state.</u>
     SECTION 3.22.  Section 127.1232, Election Code, is amended
to read as follows:
     Sec. 127.1232.  SECURITY OF VOTED BALLOTS. <u>(a)</u> The general
custodian of election records shall post a <u>licensed peace officer</u>
[<s>guard</s>] to ensure the security of ballot boxes containing voted
ballots throughout the period of tabulation at the central counting
station.
     <u>(b)  The general custodian of election records may implement</u>
<u>a video surveillance system that retains a record of all areas</u>
<u>containing voted ballots from the time the voted ballots are</u>

delivered to the central counting station until the canvass of precinct election returns. The video may be made available to the public by a livestream.

(c) The video recorded is an election record under Section 1.012 and shall be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later.

SECTION 3.23. Subchapter A, Chapter 129, Election Code, is amended by adding Section 129.003 to read as follows:

Sec. 129.003. PAPER AUDIT TRAIL REQUIRED. (a) In this section, "auditable voting system" means a voting system that:

(1) uses a paper record; or

(2) produces a paper receipt by which a voter can verify that the voter's ballot will be counted accurately.

(b) Except as provided by Subsection (e), a voting system that consists of direct recording electronic voting machines may not be used in an election unless the system is an auditable voting system.

(c) Except for a recount under Title 13, the electronic vote is the official record of the ballot. For a recount of ballots cast on a system involving direct recording electronic voting machines, the paper record or receipt copy is the official record of the vote cast.

(d) An authority that purchased a voting system other than an auditable voting system after September 1, 2016, and before September 1, 2021, may use available federal funding and, if federal funding is not available, available state funding to retrofit the purchased voting system as an auditable voting system in accordance with the following schedule:

(1) if the voting system was retrofitted as an auditable voting system not later than the election taking place November 8, 2022, the authority is eligible to have 100 percent of the cost of retrofitting reimbursed under this section; and

(2) if the authority is not eligible for a 100 percent reimbursement of cost under Subdivision (1) and the voting system was retrofitted as an auditable voting system not later than the election taking place November 3, 2026, the authority is eligible to have 50 percent of the cost of retrofitting reimbursed under this section.

(e) Subsections (a)-(c) do not apply to an election held before September 1, 2026.

SECTION 3.24. Section 129.023, Election Code, is amended by adding Subsection (c-1) to read as follows:

(c-1) A test conducted under this section must also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

SECTION 3.25. Section 216.001, Election Code, is amended to read as follows:

Sec. 216.001. APPLICABILITY OF CHAPTER. (a) Except as provided by Subsection (b), this [This] chapter applies only to an election that results in a tie vote as provided by Sections 2.002(i), 2.023(b) and (c), and 2.028.

(b) If the results of an election show that the number of votes cast in an election precinct exceeds the number of registered voters in the precinct, the authority designated under Section 212.026 shall initiate an automatic recount for that precinct in accordance with this chapter.

SECTION 3.26. Section 81.032, Local Government Code, is amended to read as follows:

Sec. 81.032. ACCEPTANCE OF DONATIONS AND BEQUESTS. (a) The commissioners court may accept a donation of labor or services, gift, grant, donation, bequest, or devise of money or other property on behalf of the county, including a donation under

Chapter 38, Government Code, for the purpose of performing a function conferred by law on the county or a county officer.

    (b)  The commissioners court may not accept a donation described in Subsection (a) of over $1,000 for use in administering elections without the written consent of the secretary of state.

    SECTION 3.27.  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

    ARTICLE 4. ENFORCEMENT

    SECTION 4.01.  Subchapter E, Chapter 31, Election Code, is amended by adding Sections 31.126 and 31.127 to read as follows:

    Sec. 31.126.  RESTRICTION ON ELIGIBILITY. (a)  In this section, "election official" means:

        (1)  a county clerk;

        (2)  a permanent or temporary deputy county clerk;

        (3)  an elections administrator;

        (4)  a permanent or temporary employee of an elections administrator;

        (5)  an election judge;

        (6)  an alternate election judge;

        (7)  an early voting clerk;

        (8)  a deputy early voting clerk;

        (9)  an election clerk;

        (10)  the presiding judge of an early voting ballot board;

        (11)  the alternate presiding judge of an early voting ballot board;

        (12)  a member of an early voting ballot board;

        (13)  the chair of a signature verification committee;

        (14)  the vice chair of a signature verification committee;

        (15)  a member of a signature verification committee;

        (16)  the presiding judge of a central counting station;

        (17)  the alternate presiding judge of a central counting station;

        (18)  a central counting station manager; and

        (19)  a central counting station clerk.

    (b)  A person may not serve as an election official if the person has been finally convicted of an offense under Section 33.061.

    Sec. 31.127.  CIVIL PENALTY. (a)  In this section, "election official" has the meaning assigned by Section 31.126.

    (b)  An election official may be liable to this state for a civil penalty if the official:

        (1)  is employed by or is an officer of this state or a political subdivision of this state; and

        (2)  violates a provision of this code.

    (c)  A civil penalty imposed under this section may include termination of the person's employment and loss of the person's employment benefits.

    SECTION 4.02.  Section 33.051, Election Code, is amended by adding Subsection (g) to read as follows:

    (g)  An election officer commits an offense if the officer knowingly refuses to accept a watcher for service whose acceptance is required by this code. An offense under this section is a Class A misdemeanor.

    SECTION 4.03.  Subchapter C, Chapter 33, Election Code, is amended by adding Section 33.062 to read as follows:

    Sec. 33.062.  INJUNCTIVE RELIEF. A watcher, or the appointing authority for a watcher, is entitled to injunctive relief under Section 273.081 to enforce this chapter, including issuance of temporary orders.

SECTION 4.04.  Section 87.0431(b), Election Code, is amended to read as follows:

(b)  The early voting clerk shall, not later than the 30th day after election day, deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because:

(1)  the voter was deceased;

(2)  the voter already voted in person in the same election;

(3)  the signatures on the carrier envelope and ballot application were not executed by the same person;

(4)  the carrier envelope certificate lacked a witness signature; [or]

(5)  the carrier envelope certificate was improperly executed by an assistant; or

(6)  any form of voter fraud was committed.

SECTION 4.05.  Section 232.006(a), Election Code, is amended to read as follows:

(a)  The venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election. For purposes of this section, a contestee's residence is determined under Section 411.0257, Government Code.

SECTION 4.06.  Chapter 232, Election Code, is amended by adding Subchapter C to read as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061.  PETITION ALLEGING FRAUD. This subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge committed election fraud under any of the following sections of this code:

(1)  Section 13.007;

(2)  Section 64.012;

(3)  Section 64.036;

(4)  Section 84.003;

(5)  Section 84.0041;

(6)  Section 86.0051;

(7)  Section 86.006;

(8)  Section 86.010; or

(9)  Section 276.013.

Sec. 232.062.  EVIDENTIARY STANDARD. A contestant must prove an allegation described by Section 232.061 by a preponderance of the evidence.

Sec. 232.063.  CIVIL PENALTY. (a) If the court in its judgment finds that the contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to this state for a civil penalty of $1,000 for each violation.

(b)  A penalty collected under this section by the attorney general shall be deposited in the state treasury to the credit of the general revenue fund.

Sec. 232.064.  ATTORNEY'S FEES. In an election contest to which this subchapter applies, the court may award reasonable attorney's fees to the prevailing party.

SECTION 4.07.  (a) The changes in law made by this article apply only to an election contest for which the associated election occurred after the effective date of this Act.

(b)  The changes in law made by this article apply only to an election ordered on or after the effective date of this Act.  An election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

ARTICLE 5. EFFECTIVE DATE

SECTION 5.01.  This Act takes effect September 1, 2021.

SUMMARY OF COMMITTEE ACTION

<u>SB 7</u>

<u>April 29, 2021      8:00 AM</u>
Considered in public hearing
Committee substitute considered in committee
Amendment(s) considered in committee
Reported favorably as substituted

<u>WITNESS LIST</u>

SB 7
Senate Committee Report
State Affairs

<u>March 26, 2021 - 9:00 AM</u>

     FOR:

          Chambless, Dee      (Self; Smith county republican women), Bullard, TX

          De La Torre, Christopher    Cos   (Self; Convention of States), Leander, TX

          DeVore, Chuck    VP   (also providing written testimony)   (Texas Public Policy Foundation), Austin, TX

          DeVore, Chuck    Vice President    (also providing written testimony)   (Texas Public Policy Foundation), Austin, TX

          Fry, Pat      (Self) , Rd mtn, TX

          Garner, Donald    Executive Director   (also providing written testimony)   (Texas Faith & Freedom Coalition), Austin, TX

          Openshaw, Michael      (Self) , Plano, TX

          Opiela, Eric      (Self) , Austin, TX

          Perry, James      (Self; COS), Sherman, TX

          Sargent, Bill    Former Election Admin Galveston GOP   (also providing written testimony) (Self) , Galveston, TX

          Seelig, Bonnie      (Self) , Spicewood, TX

          Sunderland, Bryan      (Opportunity Solutions Project), Louisville, KY

          Turner, Kathy      (Self) , McGregor, TX

          Van Compernolle, John      (Self; Self), Mineola, TX

          Vera, Alan    Chairman   (also providing written testimony)   (HCRP Ballot Security Committee), Houston TX, TX

          Welty Jr, Gerald    Mr.   (Self; Convention of. States), Cibolo, TX

     AGAINST:

          Albert, David    Dr.   (Self) , Austin, TX

          Albert, David    Dr.   (Self) , Austin, TX

          Alonso, Ofelia      (Self; Texas Rising Action), Brownsville, TX

          Avila, Abigail      (Self; Texas Rising), Alamo, TX

          Bearden, Chase    Deputy Executive Director   (Self; Coalition of Texans with Disabilities), Austin, TX

          Bledsoe, Gary    President   (Self; Texas NAACP), Austin, TX

          Bonner, Charlie      (Self) , Austin, TX

          Borel, Dennis      (Coalition of Texans with Disabilities), Austin, TX

          Carranza, Susana      (Self) , Austin, TX

          Cattanach, Joanna      (Self; Dallas County Democraric Party), Dallas, TX

          Chimene, Grace      (also providing written testimony)   (Self; League of Women Voters of Texas), Austin, TX

          Clemmons, Jeffrey      (Self; Huston-Tillotson NAACP,Texas Rising, Austin College Student Commission), Austin, TX

          Clouston, Rosemarie    Voter Protection Director   (Self; Texas Democratic Party), Austin, TX

1

WITNESS LIST

SB 7
Senate Committee Report
State Affairs

Collins, Karen      (Self) , Austin, TX

Colon Uvalles, Jose      (Self) , Brownsville, TX

Compton, Dorothy ann      (Self) , Austin, TX

DeLoretto-Chudy, Sophia      (Self) , Austin, TX

DeLoretto-Chudy, Sophia      (Self) , Austin, TX

Eby, Emily      (also providing written testimony)   (Texas Civil Rights Project), Houston, TX

Espinoza, Salvador   Mr.   (Self) , Austin, TX

Fero, Mary      (also providing written testimony)   (Self) , Austin, TX

Fierro-Perez, Rocio     Community Activist   (Self) , El Paso, TX

Ford, Rachel Baker      (also providing written testimony)   (Self; Garland   Area Democratic Club), Garlaod, TX

Gomez, Stephanie      (also providing written testimony)   (Common Cause Texas), Houston, TX

Griggs, David      (Self; Sierra Club, Lone Star Texas Chapter), Farmers Branch, TX

Gupta, Parth      (Self) , Temple, TX

Houston, Joshua     Advocacy Director   (Texas Impact), Austin, TX

Huff, Harold      (Self) , Terlingua, TX

Jomes, Sharon      (Self; Delta Sigma Theta, Incorporated), Houston, TX

Joseph, Zenobia   Ms.   (Self) , Austin, TX

King, Bill      (Self) , Austin, TX

Leal, Gloria     Attorney   (also providing written testimony)   (Self; League of United Latin American Citizens LULAC), Austin, TX

Litzinger, Linda      (also providing written testimony)   (Self; Texas parent to Parent), Austin, TX

Longoria, Isabel     Harris County Elections Administrator   (Harris County Office of Elections Administrator), Houston, TX

Maxey, Glen      (Texas Democratic Party), Austin, TX

McGovern, Katherine      (Self; Voter Protection, Dallas County Democratic Party), Dallas, TX

Miller, Jeff     Policy Specialist   (also providing written testimony)   (Self; Disability Rights Texas), Austin, TX

Mills, Amber      (also providing written testimony)   (MOVE Texas Action Fund), Austin, TX

O'Rourke, Beto      (Self) , El Paso, TX

Palacios, Denisce      (Self; Texas rising), La feria, TX

Price, Steven     Veterans Advocate   (Self; The VOICES of Our Veterans & The Texas Democratic Veterans Caucus), San Antonio, TX

Rice, Judah      (Self) , Austin, TX

Rogers, Corisha     Regional Coordinator   (Self) , Houston, TX

Schneider, Joseph      (Self) , Austin, TX

Slattery, James     Senior Staff Attorney   (also providing written testimony)   (Texas Civil Rights Project), Austin, TX

WITNESS LIST

SB 7
Senate Committee Report
State Affairs

Smith, Derick      (Self) , Katy, TX

Stern, Maggie     Youth Civic Education & Engagement Coordinator   (also providing written testimony)   (Self; Children's Defense Fund - Texas), Austin, TX

Stout, David     Commissioner, Precinct 2   (El Paso County), El Paso, TX

Stout, David     Commissioner, Precinct 2   (El Paso County), El Paso, TX

Tamayo, Elisa    Director of Policy and Governmental Affairs   (also providing written testimony)   (Self; Emergence Health Network), El Paso, TX

Tuo, Ruei      (Self) , Katy, TX

Weinberg, David     Voting Rights Advisor   (also providing written testimony)   (Brennan Center for Justice), Austin, TX

Wetterauer, Carol      (Self) , Katy, TX

Williams, Kenneth    Pres. 820dac   (Self; Www.820.cda.gov), Ft.worth, TX

Williamson, Michael      (Self) , Dallas, TX

Zavala, Patricia     (also providing written testimony)   (Self; Jolt), Austin, TX

ON:

Davis, Chris    Elections Administrator   (Texas Assoc. of Elections Administrators), Georgetown, TX

Ingram, Keith    Director, Elections Division   (Texas Secretary of State), Austin, TX

McKenzie, Richard      (Self) , Austin, TX

Registering, but not testifying:

FOR:

Ball, Maureen      (Self) , Montgomery, TX

Brannon, Sam      (Self) , San Marcos, TX

Foster, Lynn    Self   (Self) , Austin, TX

Gille, Jo-Ann      (Self) , Boerne, TX

Hodges, Bradley      (Self) , Austin, TX

Holman, Frank    Citizen   (Self) , Austin, TX

Hormuth, Jeannette      (Self; Joshua Council), Fredericksburg, TX

Jaster, Cathy      (Self) , Georgetown, TX

Jaster, Cathy      (Self) , Georgetown, TX

Lennon, Robin      (Self; Kingwood TEA Party, Inc.), Cleveland, TX, TX

Nilsson, Lisa      (Self; Joshua Council, Bexar County Republican Party election integrity committee), Boerne, TX

Nodolf, Laura    Midland County District Attorney   (Self; Midland County District Attorneys Office), Midland, TX

Pressley, Laura      (Self; True Texas Elections Joshua Council), Copperas Cove, TX

Pressley, Laura      (Self) , Copperas cove, TX

Rightmyer, Kathryn      (Self) , Austin, TX

Saenz, Jonathan      (Self; Texas Values), Austin, TX

Stephens, Mark      (Self) , Tomball, TX

Strickler, Marcia      Concerned citizen   (Self; Wilco We Thee People), Austin, TX

WITNESS LIST


SB 7
Senate Committee Report
State Affairs

Strickler, Marcia    Texas GOP Delegate   (Self; Wilco We Thee People), Austin, TX

Swirsky, Alexie    (Self) , Houston, TX

Thoreson, Bill    (Self) , Dallas, TX

White, Molly    Former State Representative   (Conservative Republicans of Texas), Temple, TX

Wilbanks, Darcie    (Self) , Houston, TX

Williams, Amber    (Self) , Austin, TX

AGAINST:

Aguilera, Dylan    Student   (Self; Powered by People), Leander, TX

Barsalou, Denee    (Self) , Pflugerville, TX

Bhat, Aarti    (Self) , Leander, TX

Bhat, Prerna    (Self) , Leander, TX

Callahan, Christy    (Self) , Galveston, TX

Carmona, Gordy    Mx   (Self) , Plano, TX

Chang, Samantha    (Self) , Austin, TX

Collins, Daniel    Governmental Affairs Manager   (El Paso County), El Paso, TX

Collins, Daniel    Governmental Affairs Manager   (El Paso County), El Paso, TX

Crawford, Victoria    Reading Interventionist   (Self) , Katy, TX

Cuevas, Jo Cassandra    Consultant   (WiseUp Texas), Austin, TX

Das, Saurabh    (Self) , Round Rock, TX

Evans, Richard    (Emgage Action), Austin, TX

Flores, Lisa    (Self) , Austin, TX

Flores, Lisa    Advocacy specialist   (Easterseals Central Texas), Austin, TX

Galiger, Elizabeth    (Self) , Austin, TX

GATEJ, JOHN    (Self) , AUSTIN, TX

Gezana, Susan    (Self) , Austin, TX

Gonzales, Rachel    (Self) , Dallas, TX

Griffith, Idona    (Self) , Austin, TX

Guidangen, Jason    (Self) , Kingsville, TX

Hall, Ash    (Self) , Austin, TX

Hill, Rachel    (Self) , Richardson, TX

Hiner, Harrison    Legislative Coordinator   (Communications Workers of America), Austin, TX

Jaimes, Nasario Zenen    (MOVE Texas Action Fund), Edinburg, TX

Johnson, Remington    Reverend   (Self) , Austin, TX

Kerr, Lonzo    State Staff Texas NAACP   (Self; Texas NAACP), Austin, Texas, TX

Kundawala, Ishrat    (Self) , Austin, TX

Lackey, Holt    (Self) , Austin, TX

Lara, Rene    Legislative Dir.   (Self; Texas AFL-CIO), Austin, TX

Le, Ivy    Mom   (Self; PTA), Austin, TX

WITNESS LIST

SB 7
Senate Committee Report
State Affairs

          Levin, Nathaniel    (Self; Texas Democratic Party), Austin, TX

          Lira, John    (Self) , San Antonio, TX

          Lopez, Carisa   Political Director  (Texas Freedom Network), Austin, TX

          Lopez, Roberto   Community outreach  (Self) , McAllen, TX

          Mcafee, Vanessa   (Self; Texas Democratic Women of Galveston County), Texas City, TX

          Mejia, Jessica   (Self) , Austin, TX

          Mohr Boleware, Alison   Government Relations Director  (National Association of Social Workers - Texas Chapter), Austin, TX

          Nolan, Leah   (Self) , Austin, TX

          Nolan, Leah   (Self) , Austin, TX

          Palomo, Krissia   (Self) , Austin, TX

          Pritchett, William   (Self) , Houston, TX

          Pumfrey, William   (Self) , Austin, TX

          Quinzi, Patty   Legislative Counsel, TX American Fed. Of Teachers  (Self; TX-American Federation of Teachers), Austin, TX

          Reed, Ender   Director, Intergovernmental Affairs  (Harris County Commissioners Court), Houston, TX

          Rodriguez, Lauren   (Self) , Uhland, TX

          Schelling, Emmett   (Self; Transgender education network of texas), Houston, TX

          Segovia, Andrea   (Self) , Houston, TX

          Shannon, Melissa   Director of Governmental Affairs  (Bexar County Commissioners Court), San Antonio, TX

          Simpson, Matt   (ACLU of Texas), Austin, TX

          Sutton, Martina   (Self) , Cedar Park, TX

          Villescaz, Angela "Tia Angie"   (Self) , Kyle, TX

          Yañez, Claudia   (Self) , Pflugerville, TX

ON:

          Davidson, Donna   (Opportunity Solutions Project), Austin, TX

          McKenzie, Richard   (Self) , Austin, TX

          Parkinson, Thomas   (Self) , San Antonio, TX

          Roberts, Cary   (County & District Clerks' Association of Texas), Austin, TX

          White, Jonathan   Election Fraud Section Chief  (Office of the Attorney General), Austin, TX

Providing written testimony:

FOR:

          Durnin, Linda   (Self) , Austin, TX

          Fulton, Alexander   On behalf of LTC Allen B. West  (Republican party of texas; LTC Allen B. West), Austin, TX

          Green, Robert L.   (Self; Travis County Republican Party Elections Integrity Committee), TX, TX

          Jaster, Cathy   (Self) , Georgetown, TX

<u>WITNESS LIST</u>

SB 7
Senate Committee Report
State Affairs

      Matson, Stacie    (Self; Bexar County Election Integrity Committee; Joshua Council and self), Boerne, TX

      Pressley, Laura    (Self; True Texas Elections), Copperas cove, TX

      Strickler, Marcia    (Self; Wilco We The People), Austin, TX

      Williams, Amber    (Self) , Austin, TX

      Winter, Allison    (Self) , The Woodlands, TX

AGAINST:

      Bennett, Joey    (Secure Democracy), Austin, TX

      Bhat, Aarti    (Self) , Leander, TX

      Bhat, Prerna    (Self) , Leander, TX

      Branch, Devin    (Self; Texas Organizing Project), Houston, TX

      Coleman, Michael    Public Citizen Comms Director    (Self; Public Citizen Texas), Austin, TX

      Keysor, Georgia    (Self) , Austin, TX

      Maldonado, Linda    Self    (Self) , San Antonio, TX

      Mariappuram, Rosann    Executive Director    (Self; Jane's Due Process), Austin, TX

      Mayeaux, Ginger    Director of Policy and Advocacy    (Self; The Arc of Texas), Austn, TX

      Perales, Nina    Vice President of Litigation - MALDEF    (Mexican American Legal Defense and Educational Fund, Inc.), San Antonio, TX

      Richards, Joanne    Dr    (Self) , Austin, TX

      Sadasivan, Kathryn    Redistricting Counsel    (NAACP Legal Defense and Educational Fund, Inc), New York, TX

      Story, Wesley    (Self; Progress Texas), Austin, TX

      Willoughby, Vickie    Mrs.    (Self) , San Antonio, TX

      Yoli, Claudia    (Self; Deeds Not Words), Austin, TX

ON:

      Gerken, Lauren    (Texas Council for Developmental Disabilities), Austin, TX