**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al*., | § | |
| *Plaintiffs*, | § | |
| | § | Consolidated Case No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREGORY W. ABBOTT, *et al*., | § | |
| *Defendants*. | § | |

**Documents Produced with State Defendants' Initial Disclosures**
**November 5, 2021**

**Copy Filed with the Court November 15, 2021 (ECF 112)**

**Senate Bill 1**
**Legislative Session: 87**
**Second Special Session**

**Part I**

Date: November 15, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General


OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 15, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

**Texas Legislature Online**
**History**

---

| | | |
|---|---|---|
| **Bill:** SB 1 | **Legislative Session:** 87(2) | **Council Document:** 87S2 30 TSS-D |

**Last Action:**          *09/07/2021 E Effective on . . . . . . . . . . . . . .*

**Caption Version:**     Enrolled

**Caption Text:**         Relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increasing criminal penalties; creating criminal offenses.

**Author:**              Hughes

**Coauthor:**            Bettencourt | Birdwell | Buckingham | Campbell | Creighton | Hall | Huffman | Kolkhorst | Nelson | Nichols | Paxton | Perry | Schwertner | Springer | Taylor

**Sponsor:**             Murr | Lozano | Clardy | White | Jetton

**Cosponsor:**           Allison | Anderson | Ashby | Bailes | Bell, Cecil | Bell, Keith | Biedermann | Bonnen | Buckley | Burns | Burrows | Cain | Capriglione | Cason | Cook | Darby | Dean | Goldman | Harless | Harris | Hefner | Holland | Huberty | Kacal | King, Phil | Klick | Kuempel | Leach | Leman | Metcalf | Meyer | Middleton | Morrison | Murphy | Noble | Oliverson | Paddie | Parker | Patterson | Paul | Price | Raney | Rogers | Sanford | Shaheen | Shine | Slaton | Slawson | Spiller | Stucky | Swanson | Thompson, Ed | Tinderholt | Toth | VanDeaver | Vasut | Wilson

**Subjects:**            Courts--Appellate (I0125)
                         Courts--County & Statutory (I0115)
                         Courts--District (I0120)
                         Crimes--Miscellaneous (I0200)
                         Elections--Administration (I0277)
                         Elections--Early Voting (I0260)
                         Elections--Election Officers (I0305)
                         Elections--General (I0310)
                         Elections--Registration & Suffrage (I0265)
                         Elections--Voting Systems (I0270)
                         Electronic Information Systems (I0311)
                         ELECTION INTEGRITY PROTECTION ACT OF 2021 (PA6QF)
                         ATTORNEY'S FEES (S0202)
                         FRAUD (S0166)
                         RESIDENCY REQUIREMENTS (S0266)
                         VIDEO CAMERAS (S0786)
                         ATTORNEY GENERAL (V2811)
                         PUBLIC SAFETY, DEPARTMENT OF (V0251)
                         SECRETARY OF STATE (V0042)
                         SUPREME COURT (V0311)

**Companion:**           HB 3 by Murr, Similar

**Senate Committee:** State Affairs
**Status:**              Out of committee
**Vote:**                Ayes=6   Nays=3   Present Not Voting=0   Absent=0

**House Committee:**  Constitutional Rights & Remedies, Select
**Status:**              Out of committee
**Vote:**                Ayes=9   Nays=5   Present Not Voting=0   Absent=1

**Senate Conferees:**    Appointed (08/27/2021) Hughes (Chair) | Bettencourt | Buckingham | Creighton | Lucio

**House Conferees:**   Appointed (08/27/2021) Murr (Chair) | Burrows | Coleman | Lozano | Turner, John

**Actions**: (descending date order)
Viewing Votes: Most Recent House Vote | Most Recent Senate Vote

| | Description | Comment | Date ▼ | Time | Journal Page |
|---|---|---|---|---|---|
| E | Effective on . . . . . . . . . . . . . . | December 2, 2021 | 09/07/2021 | | |
| E | Signed by the Governor | | 09/07/2021 | | |
| S | Co-author authorized | | 09/02/2021 | | 266 |
| E | Sent to the Governor | | 09/01/2021 | | 246 |
| H | Signed in the House | | 09/01/2021 | | 338 |
| H | Senate adopts conf. comm. report-reported | | 09/01/2021 | | 339 |
| S | Signed in the Senate | | 08/31/2021 | | 218 |
| S | Reported enrolled | | 08/31/2021 | | 225 |
| S | Statement(s) submitted | | 08/31/2021 | | 188 |
| S | Statement(s) submitted | | 08/31/2021 | | 139 |
| S | Statement(s) submitted | | 08/31/2021 | | 85 |
| S | Statement(s) submitted | | 08/31/2021 | | 84 |
| S | Record vote | | 08/31/2021 | | 188 |
| S | Senate adopts conference committee report | | 08/31/2021 | | 188 |
| S | House adopts conf. comm. report-reported | | 08/31/2021 | | 188 |
| H | Statement(s) of vote recorded in Journal | | 08/31/2021 | | 304 |
| H | Record vote | RV#118 | 08/31/2021 | | 303 |
| H | House adopts conference committee report | | 08/31/2021 | | 300 |
| S | Co-author authorized | | 08/31/2021 | | 223 |
| H | Conf. Comm. Report distributed | | 08/30/2021 | 12:16 PM | |
| S | Conference committee report filed | | 08/30/2021 | | 182 |
| H | House appoints conferees w/inst-reported | | 08/29/2021 | | 142 |
| S | House grants request for conf comm-reported | | 08/29/2021 | | 142 |
| H | House appoints conferees | | 08/27/2021 | | 256 |
| H | Motion prevails | | 08/27/2021 | | 256 |
| H | Motion to instruct conferees | | 08/27/2021 | | 256 |
| H | House grants request for conference committee | | 08/27/2021 | | 256 |
| H | Senate appoints conferees-reported | | 08/27/2021 | | 260 |
| H | Senate requests conference committee-reported | | 08/27/2021 | | 260 |
| H | Senate refuses to concur-reported | | 08/27/2021 | | 260 |
| S | Senate appoints conferees | | 08/27/2021 | | 139 |
| S | Senate requests conference committee | | 08/27/2021 | | 139 |
| S | Senate refuses to concur | | 08/27/2021 | | 139 |
| S | Read | | 08/27/2021 | | 139 |
| S | House amendment(s) laid before the Senate | | 08/27/2021 | | 96 |
| S | House passage as amended reported | | 08/27/2021 | | 95 |
| H | Reason for vote recorded in Journal | | 08/27/2021 | | 182 |
| H | Statement(s) of vote recorded in Journal | | 08/27/2021 | | 181 |
| H | Record vote | RV#61 | 08/27/2021 | | 181 |
| H | Passed | | 08/27/2021 | | 181 |
| H | Read 3rd time | | 08/27/2021 | | 181 |
| H | Reason for vote recorded in Journal | | 08/26/2021 | | 163 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | | 162 |
| H | Record vote | RV#57 | 08/26/2021 | | 162 |

| H | Passed to 3rd reading as amended | | 08/26/2021 | 162 |
|---|---|---|---|---|
| H | Nonrecord vote recorded in Journal | | 08/26/2021 | 162 |
| H | Amended | 63-Clardy and Middleton | 08/26/2021 | 161 |
| H | Amendment withdrawn | 62-Krause | 08/26/2021 | 161 |
| H | Point of order withdrawn (amendment) | Rule 11, Section 2 | 08/26/2021 | 161 |
| H | Amendment(s) offered | 62-Krause | 08/26/2021 | 160 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 160 |
| H | Record vote | RV#56 | 08/26/2021 | 160 |
| H | Amendment fails of adoption | 61-Neave | 08/26/2021 | 159 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 159 |
| H | Record vote | RV#55 | 08/26/2021 | 158 |
| H | Amendment fails of adoption | 60-Rose | 08/26/2021 | 158 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 158 |
| H | Record vote | RV#54 | 08/26/2021 | 157 |
| H | Amendment fails of adoption | 59-Zwiener | 08/26/2021 | 157 |
| H | Amended | 58-Cain and Burrows | 08/26/2021 | 156 |
| H | Amendment withdrawn | 57-Schofield | 08/26/2021 | 156 |
| H | Point of order withdrawn (amendment) | Rule 11, Section 2 | 08/26/2021 | 156 |
| H | Amendment(s) offered | 57-Schofield | 08/26/2021 | 147 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 146 |
| H | Record vote | RV#53 | 08/26/2021 | 146 |
| H | Amendment adopted as amended | 55-Jetton | 08/26/2021 | 146 |
| H | Nonrecord vote recorded in Journal | | 08/26/2021 | 146 |
| H | Amendment amended | 56-Jetton | 08/26/2021 | 146 |
| H | Amendment(s) offered | 55-Jetton | 08/26/2021 | 139 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 139 |
| H | Record vote | RV#52 | 08/26/2021 | 138 |
| H | Amendment fails of adoption | 54-Rose | 08/26/2021 | 138 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 137 |
| H | Record vote | RV#51 | 08/26/2021 | 137 |
| H | Amendment fails of adoption | 53-Walle | 08/26/2021 | 137 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 136 |
| H | Record vote | RV#50 | 08/26/2021 | 136 |
| H | Amendment fails of adoption | 52-S. Thompson | 08/26/2021 | 136 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 135 |
| H | Record vote | RV#49 | 08/26/2021 | 135 |
| H | Amendment adopted as amended | 50-Allison | 08/26/2021 | 135 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 134 |
| H | Record vote | RV#48 | 08/26/2021 | 134 |
| H | Amendment amended | 51-Cain | 08/26/2021 | 134 |
| H | Amendment(s) offered | 50-Allison | 08/26/2021 | 132 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 132 |
| H | Record vote | RV#47 | 08/26/2021 | 131 |
| H | Amendment fails of adoption | 49-J. Turner | 08/26/2021 | 131 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 131 |
| H | Record vote | RV#46 | 08/26/2021 | 130 |
| H | Amendment fails of adoption | 48-Dominguez | 08/26/2021 | 130 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 130 |
| H | Record vote | RV#45 | 08/26/2021 | 129 |
| H | Amendment fails of adoption | 47-Neave | 08/26/2021 | 129 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 128 |
| H | Record vote | RV#44 | 08/26/2021 | 128 |
| H | Amendment fails of adoption | 46-M. González | 08/26/2021 | 128 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 128 |

| H | Record vote | RV#43 | 08/26/2021 | 127 |
|---|---|---|---|---|
| H | Amendment fails of adoption | 45-Moody | 08/26/2021 | 127 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 127 |
| H | Record vote | RV#42 | 08/26/2021 | 126 |
| H | Amendment fails of adoption | 44-M. González | 08/26/2021 | 126 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 126 |
| H | Record vote | RV#41 | 08/26/2021 | 125 |
| H | Amendment fails of adoption | 43-M. González | 08/26/2021 | 125 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 124 |
| H | Record vote | RV#40 | 08/26/2021 | 124 |
| H | Amendment fails of adoption | 42-Zwiener | 08/26/2021 | 124 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 123 |
| H | Record vote | RV#39 | 08/26/2021 | 123 |
| H | Amendment fails of adoption | 41-Zwiener | 08/26/2021 | 121 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 121 |
| H | Record vote | RV#38 | 08/26/2021 | 121 |
| H | Amendment fails of adoption | 40-Ortega | 08/26/2021 | 116 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 115 |
| H | Record vote | RV#37 | 08/26/2021 | 115 |
| H | Amended | 39-Clardy | 08/26/2021 | 114 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 114 |
| H | Record vote | RV#36 | 08/26/2021 | 113 |
| H | Amendment fails of adoption | 38-Zwiener | 08/26/2021 | 113 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 113 |
| H | Record vote | RV#35 | 08/26/2021 | 112 |
| H | Amendment fails of adoption | 37-J. Turner | 08/26/2021 | 112 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 112 |
| H | Record vote | RV#34 | 08/26/2021 | 111 |
| H | Amendment fails of adoption | 36-Rosenthal | 08/26/2021 | 111 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 111 |
| H | Record vote | RV#33 | 08/26/2021 | 110 |
| H | Amendment fails of adoption | 35-Dominguez | 08/26/2021 | 110 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 110 |
| H | Record vote | RV#32 | 08/26/2021 | 109 |
| H | Amendment fails of adoption | 34-Anchia | 08/26/2021 | 109 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 109 |
| H | Record vote | RV#31 | 08/26/2021 | 108 |
| H | Amendment fails of adoption | 33-Dutton | 08/26/2021 | 108 |
| H | Amended | 32-Klick and S. Thompson | 08/26/2021 | 107 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 107 |
| H | Record vote | RV#30 | 08/26/2021 | 106 |
| H | Amended | 31-Schofield | 08/26/2021 | 103 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 102 |
| H | Record vote | RV#29 | 08/26/2021 | 102 |
| H | Amended | 30-Slaton | 08/26/2021 | 101 |
| H | Nonrecord vote recorded in Journal | | 08/26/2021 | 101 |
| H | Amended | 29-Klick | 08/26/2021 | 101 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 100 |
| H | Record vote | RV#28 | 08/26/2021 | 100 |
| H | Amendment fails of adoption | 28-Neave | 08/26/2021 | 99 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 99 |
| H | Record vote | RV#27 | 08/26/2021 | 99 |
| H | Amendment fails of adoption | 27-Bucy | 08/26/2021 | 98 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 98 |

| | | | | |
|---|---|---|---|---|
| H | Record vote | RV#26 | 08/26/2021 | 97 |
| H | Amendment fails of adoption | 26-Zwiener | 08/26/2021 | 96 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 96 |
| H | Record vote | RV#25 | 08/26/2021 | 96 |
| H | Amendment fails of adoption | 25-Dutton | 08/26/2021 | 95 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 95 |
| H | Record vote | RV#24 | 08/26/2021 | 95 |
| H | Amendment fails of adoption | 24-Dutton | 08/26/2021 | 94 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 94 |
| H | Record vote | RV#23 | 08/26/2021 | 93 |
| H | Amendment fails of adoption | 23-Perez | 08/26/2021 | 93 |
| H | Amendment withdrawn | 22-Swanson | 08/26/2021 | 93 |
| H | Amendment withdrawn | 21-Middleton | 08/26/2021 | 92 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 92 |
| H | Record vote | RV#22 | 08/26/2021 | 91 |
| H | Amended | 20-Slaton | 08/26/2021 | 91 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 91 |
| H | Record vote | RV#21 | 08/26/2021 | 91 |
| H | Amendment fails of adoption | 19-Goodwin | 08/26/2021 | 89 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 89 |
| H | Record vote | RV#20 | 08/26/2021 | 89 |
| H | Amendment fails of adoption | 18-Howard | 08/26/2021 | 88 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 88 |
| H | Record vote | RV#19 | 08/26/2021 | 88 |
| H | Amendment fails of adoption | 17-Bucy | 08/26/2021 | 86 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 86 |
| H | Record vote | RV#18 | 08/26/2021 | 86 |
| H | Amendment fails of adoption | 16-E. Morales | 08/26/2021 | 84 |
| H | Amendment withdrawn | 15-Cain | 08/26/2021 | 84 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 83 |
| H | Record vote | RV#17 | 08/26/2021 | 83 |
| H | Amendment fails of adoption | 14-E. Morales | 08/26/2021 | 82 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 82 |
| H | Record vote | RV#16 | 08/26/2021 | 81 |
| H | Amendment fails of adoption | 13-Rose | 08/26/2021 | 81 |
| H | Amendment withdrawn | 12-Slaton | 08/26/2021 | 81 |
| H | Point of order withdrawn (amendment) | Rule 11, Section 2, and Rule 11, Section 3 | 08/26/2021 | 80 |
| H | Amendment(s) offered | 12-Slaton | 08/26/2021 | 80 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 79 |
| H | Record vote | RV#15 | 08/26/2021 | 78 |
| H | Amended | 11-Bucy | 08/26/2021 | 78 |
| H | Amendment withdrawn | 10-White | 08/26/2021 | 78 |
| H | Point of order withdrawn (amendment) | Rule 11, Section 2, | 08/26/2021 | 78 |
| H | Amendment(s) offered | 10-White | 08/26/2021 | 78 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 77 |
| H | Record vote | RV#14 | 08/26/2021 | 77 |
| H | Amendment fails of adoption | 9-Cole | 08/26/2021 | 77 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 76 |
| H | Record vote | RV#13 | 08/26/2021 | 76 |
| H | Amendment fails of adoption | 8-Dutton | 08/26/2021 | 76 |
| H | Nonrecord vote recorded in Journal | | 08/26/2021 | 76 |
| H | Amendment adopted as amended | 2-Murr | 08/26/2021 | 76 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 75 |

| | | | | |
|---|---|---|---|---|
| H | Record vote | RV#12 | 08/26/2021 | 75 |
| H | Amendment to amendment fails of adoption | 7-S. Thompson | 08/26/2021 | 75 |
| H | Amendment amended | 6-Cook, Parker, Noble, and Capriglione | 08/26/2021 | 74 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 74 |
| H | Record vote | RV#11 | 08/26/2021 | 73 |
| H | Amendment to amendment fails of adoption | 5-Cole | 08/26/2021 | 73 |
| H | Amendment amended | 4-Cain | 08/26/2021 | 72 |
| H | Amendment amended | 3-Murr | 08/26/2021 | 72 |
| H | Amendment(s) offered | 2-Murr | 08/26/2021 | 68 |
| H | Statement(s) of vote recorded in Journal | | 08/26/2021 | 67 |
| H | Record vote | RV#10 | 08/26/2021 | 67 |
| H | Amendment fails of adoption | 1-Anchia | 08/26/2021 | 67 |
| H | Read 2nd time | | 08/26/2021 | 66 |
| H | Placed on General State Calendar | | 08/26/2021 | |
| H | Considered in Calendars | | 08/25/2021 | |
| H | Committee report sent to Calendars | | 08/25/2021 | |
| H | Committee report distributed | | 08/24/2021 07:03 PM | |
| H | Comte report filed with Committee Coordinator | | 08/24/2021 | 177 |
| H | Reported favorably as substituted | | 08/23/2021 | |
| H | Testimony taken/registration(s) recorded in committee | | 08/23/2021 | |
| H | Committee substitute considered in committee | | 08/23/2021 | |
| H | Considered in public hearing | | 08/23/2021 | |
| H | Scheduled for public hearing on . . . | | 08/23/2021 | |
| H | Withdrawn from schedule | | 08/21/2021 | |
| H | Scheduled for public hearing on . . . | | 08/21/2021 | |
| H | Referred to Constitutional Rights & Remedies | | 08/19/2021 06:18 PM | 41 |
| H | Read first time | | 08/19/2021 | 41 |
| H | Received from the Senate | | 08/19/2021 | 42 |
| S | Reported engrossed | | 08/12/2021 | 86 |
| S | Record vote | | 08/12/2021 | 84 |
| S | Passed | | 08/12/2021 | 84 |
| S | Read 3rd time | | 08/12/2021 | 84 |
| S | Record vote | | 08/12/2021 | 84 |
| S | Rules suspended-Regular order of business | | 08/12/2021 | 83 |
| S | Remarks ordered printed | | 08/11/2021 | 46 |
| S | Record vote | | 08/11/2021 | 74 |
| S | Passed to engrossment as amended | | 08/11/2021 | 74 |
| S | Record vote | | 08/11/2021 | 74 |
| S | Amendment fails of adoption | | 08/11/2021 | 74 |
| S | Amendment(s) offered | FA12 West | 08/11/2021 | 73 |
| S | Record vote | | 08/11/2021 | 73 |
| S | Amendment fails of adoption | | 08/11/2021 | 73 |
| S | Amendment(s) offered | FA11 West | 08/11/2021 | 55 |
| S | Record vote | | 08/11/2021 | 55 |
| S | Amendment fails of adoption | | 08/11/2021 | 55 |
| S | Amendment(s) offered | FA10 Hinojosa | 08/11/2021 | 54 |
| S | Vote recorded in Journal | | 08/11/2021 | 54 |
| S | Amended | | 08/11/2021 | 54 |
| S | Amendment(s) offered | FA9 West | 08/11/2021 | 54 |

| | | | | |
|---|---|---|---|---|
| S | Record vote | | 08/11/2021 | 54 |
| S | Amendment fails of adoption | | 08/11/2021 | 54 |
| S | Amendment(s) offered | FA8 Hinojosa | 08/11/2021 | 54 |
| S | Vote recorded in Journal | | 08/11/2021 | 53 |
| S | Amended | | 08/11/2021 | 53 |
| S | Amendment(s) offered | FA7 Zaffirini | 08/11/2021 | 53 |
| S | Vote recorded in Journal | | 08/11/2021 | 53 |
| S | Amended | | 08/11/2021 | 53 |
| S | Amendment(s) offered | FA6 Bettencourt | 08/11/2021 | 52 |
| S | Vote recorded in Journal | | 08/11/2021 | 52 |
| S | Amended | | 08/11/2021 | 52 |
| S | Amendment(s) offered | FA5 Zaffirini | 08/11/2021 | 52 |
| S | Vote recorded in Journal | | 08/11/2021 | 52 |
| S | Amended | | 08/11/2021 | 52 |
| S | Amendment(s) offered | FA4 Bettencourt | 08/11/2021 | 50 |
| S | Record vote | | 08/11/2021 | 50 |
| S | Amendment fails of adoption | | 08/11/2021 | 50 |
| S | Amendment(s) offered | FA3 Johnson | 08/11/2021 | 49 |
| S | Vote recorded in Journal | | 08/11/2021 | 49 |
| S | Amended | | 08/11/2021 | 49 |
| S | Amendment(s) offered | FA2 Hughes | 08/11/2021 | 47 |
| S | Record vote | | 08/11/2021 | 47 |
| S | Amended | | 08/11/2021 | 47 |
| S | Amendment(s) offered | FA1 Hughes | 08/11/2021 | 47 |
| S | Read 2nd time | | 08/11/2021 | 46 |
| S | Record vote | | 08/11/2021 | 46 |
| S | Rules suspended-Regular order of business | | 08/11/2021 | 46 |
| S | Co-author authorized | | 08/11/2021 | 76 |
| S | Committee report printed and distributed | | 08/09/2021   07:31 PM | |
| S | Reported favorably as substituted | | 08/09/2021 | 30 |
| S | Testimony taken in committee | | 08/09/2021 | |
| S | Considered in public hearing | | 08/09/2021 | |
| S | Scheduled for public hearing on . . . | | 08/09/2021 | |
| S | Co-author authorized | | 08/09/2021 | 28 |
| S | Record vote | | 08/07/2021 | 7 |
| S | Rules suspended | | 08/07/2021 | 7 |
| S | Referred to State Affairs | | 08/07/2021 | 4 |
| S | Read first time | | 08/07/2021 | 4 |
| S | Co-author authorized | | 08/07/2021 | 18 |
| S | Filed | | 08/06/2021 | |
| S | Received by the Secretary of the Senate | | 08/06/2021 | |

**BILL ANALYSIS**

Senate Research Center                                                                              S.B. 1
87S20030 TSS-D                                                                                  By: Hughes
                                                                                              State Affairs
                                                                                                 8/8/2021
                                                                                                 As Filed

**AUTHOR'S / SPONSOR'S STATEMENT OF INTENT**

As efforts to identify and prosecute election crimes have intensified, we have gained a better understanding of the ways certain bad actors take advantage of holes in the electoral process to alter the balance of elections, especially at the local level. At the same time, advances in technology have increased the threat of electronic interference with elections, but also the tools available to prevent that interference.

S.B. 1 seeks to address these issues by strengthening poll watcher protection, bringing about transparency by utilizing technology throughout the electoral process, limiting the most common fraudulent practices and opportunities for fraudulent practices, and providing better and more timely evidence in investigations into alleged voter fraud.

As proposed, S.B. 1 amends current law relating to election integrity and security, including by preventing fraud in the conduct of elections in this state, increases criminal penalties, creates criminal offenses, and provides civil penalties.

**RULEMAKING AUTHORITY**

Rulemaking authority is expressly granted to the secretary of state in SECTION 1.04 (Section 16.0332, Election Code), SECTION 2.05 (Section 66.004, Election Code), and SECTION 3.11 (Section 127.131, Election Code) of this bill.

**SECTION BY SECTION ANALYSIS**

ARTICLE 1. REGISTRATION OF VOTERS

SECTION 1.01. Amends Section 13.002, Election Code, by adding Subsection (c-1), as follows:

> (c-1) Requires that the information required under Subsections (c)(3) (relating to a statement that the applicant is a United States citizen), (4) (relating to a statement that the applicant is a resident of the county), (5) (relating to a statement that the applicant has not been determined by a court's final judgment to be mentally incapacitated in a certain manner), (6) (relating to a statement that the applicant has not been finally convicted of a felony or is a felon eligible for voter registration), and (8) (relating to certain information identifying the applicant) be supplied by the person desiring to register to vote.

SECTION 1.02. Amends Section 15.021, Election Code, by amending Subsections (b) and (d) and adding Subsections (d-1) and (d-2), as follows:

> (b) Creates an exception under Subsection (d) to the requirement that the voter use the registration certificate or a registration application form as the notice, indicating the correct information in the appropriate space on the certificate or application form unless the voter does not have possession of the certificate or an application form at the time of giving the notice. Makes a nonsubstantive change.

> (d) Authorizes a voter, rather than a voter who continues to reside in the county in which the voter is registered, to correct information under Section 15.021 (Notice of Change in Registration Information by Voter) by digital transmission of the information under a

program administered by the secretary of state (SOS) and the Department of Information Resources.

(d-1) Requires the voter registrar, if the notice indicates that a voter no longer resides in the county in which the voter is registered, to forward the notice and the voter's original application for registration to the registrar of the county in which the voter resides. Requires the registrars to coordinate to ensure that the voter's existing registration is canceled immediately after the voter is registered in the county in which the voter resides in accordance with Subsection (d-2).

(d-2) Requires a voter registrar who receives a voter's notice and application from another registrar under Subsection (d-1) to treat it as an original application for registration under Section 13.002 (Application Required), and to register the voter if the voter resides in the county and is otherwise eligible under Section 13.001 (Eligibility for Registration).

SECTION 1.03. Amends Section 15.028, Election Code, as follows:

Sec. 15.028. New heading: NOTICE OF UNLAWFUL VOTING OR REGISTRATION. Requires the voter registrar, if the registrar determines that a person who is not eligible to vote registered to vote or voted in an election, rather than determines that a person who is not a registered voter voted in an election, to execute and deliver an affidavit stating the relevant facts to certain entities, including the attorney general and SOS. Deletes existing text requiring the registrar, if the election covers territory in more than one county, to also deliver an affidavit to the attorney general. Makes nonsubstantive changes.

SECTION 1.04. Amends Section 16.0332, Election Code, by amending Subsection (a) and adding Subsections (a-1), (d), and (e), as follows:

(a) Requires the voter registrar, after the registrar receives notification under Subsection (a-1) of Section 16.0332 (Cancellation Because of Citizenship Status), Section 18.068 (Comparison of Information Regarding Ineligibility) of this code, or Section 62.113 (Compilation of List of Noncitizens), Government Code, of persons excused or disqualified from jury service because of citizenship status or notification of persons who indicate a lack of citizenship status in connection with a motor vehicle or Department of Public Safety of the State of Texas (DPS) record as provided by Subsection (a-1), rather than after the registrar receives a list under Section 18.068 of this code or Section 62.113, Government Code, of persons excused or disqualified from jury service because of citizenship status, to deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar certain information.

(a-1) Requires SOS to enter into an agreement with DPS under which information in the existing statewide computerized voter registration list is compared against information in the database of DPS on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications. Requires SOS, in comparing information under this subsection, to consider only a voter's information in the DPS database that was derived from documents presented by the voter to DPS after the person's current voter registration became effective, and prohibits SOS from considering information derived from documents presented by the voter to the department before the person's current voter registration became effective.

(d) Requires SOS to prescribe rules for the administration of this section.

(e) Requires SOS, not later than December 31 of each year, to provide a report to the legislature of the number of voter registrations canceled under this section during the calendar year.

SECTION 1.05. Amends Section 18.068, Election Code, by amending Subsection (a) and adding Subsection (a-1), as follows:

(a) Requires SOS to quarterly compare the information received under certain sections, including under Section 62.114 (Compilation of List of Nonresidents), Government Code, to the statewide computerized voter registration list. Requires SOS, if SOS determines that a voter on the registration list meets certain criteria, including if a voter has been excused or disqualified from jury service because the voter is not a resident of the county in which the voter is registered to vote, to send notice of the determination to:

(1) creates this subdivision from existing text and makes a nonsubstantive change; and

(2) the attorney general, who is required to quarterly review the information to investigate whether a person has committed an offense under Section 13.007 (False Statement on Application) or other law.

Makes a nonsubstantive change.

(a-1) Provides that SOS is not required to send notice under Subsection (a) for a voter who is subject to an exemption from jury service under Section 62.106 (Exemption From Jury Service), Government Code, if that exemption is the only reason the voter is excused from jury service.

SECTION 1.06. Amends Section 31.006, Election Code, as follows:

Sec. 31.006. New heading: REFERRAL TO ATTORNEY GENERAL. (a) Requires SOS, if, after receiving or discovering information indicating that criminal conduct in connection with an election has occurred, SOS determines that there is reasonable cause to suspect that criminal conduct occurred, to promptly refer the information to the attorney general. Requires SOS to deliver to the attorney general all pertinent documents and information, rather than all pertinent documents, in SOS's possession. Deletes existing text requiring SOS, if, after receiving a complaint alleging criminal conduct in connection with an election, SOS determines that there is reasonable cause to suspect that the alleged criminal conduct occurred, to promptly refer the complaint to the attorney general.

(b) Makes conforming changes to this subsection.

SECTION 1.07. Amends Section 62.113(b), Government Code, as follows:

(b) Requires a clerk of the court, on the third business day of each month, to send a copy of the list of persons excused or disqualified because of citizenship in the previous month to certain persons, including to the attorney general for an investigation of whether the person committed an offense under Section 13.007, Election Code, or other law. Makes a nonsubstantive change.

SECTION 1.08. Amends Sections 62.114(b) and (c), Government Code, as follows:

(b) Requires a clerk of the court, on the third business day of each month, to send a copy of the list of persons excused or disqualified in the previous month because the persons do not reside in the county to the voter registrar of the county, SOS, and the attorney general and the county or district attorney for an investigation of whether the person committed an offense under Section 13.007, Election Code, or other law. Makes a nonsubstantive change.

(c) Prohibits a list compiled under this section from being used for a purpose other than a purpose described by certain sections, including Section 18.068 (Comparison of Information Regarding Ineligibility), Election Code.

ARTICLE 2. CONDUCT AND SECURITY OF ELECTIONS

SECTION 2.01. Amends Section 43.031, Election Code, by amending Subsection (b) and adding Subsections (b-1) and (b-2), as follows:

(b) Prohibits a polling place, except as provided by Subsection (b-1), from being located in a tent or similar temporary moveable structure or in a facility primarily designed for motor vehicles. Prohibits any voter from casting a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009 (Voter Unable to Enter Polling Place).

(b-1) Authorizes a polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for a polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(b-2) Provides that if the county commissioners court makes a determination described by Subsection (b-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to SOS as soon as practicable.

SECTION 2.02. Amends Section 61.002, Election Code, as follows:

Sec. 61.002. New heading: OPENING AND CLOSING POLLING PLACE FOR VOTING. (a) Requires the presiding election judge or alternate election judge, immediately before opening the polls for voting on the first day of early voting and on election day, to confirm that each voting machine has any public counter reset to zero and to print the tape that shows the counter was set to zero for each candidate or measure on the ballot.

(b) Creates this subsection from existing text and makes no further changes.

(c) Requires the presiding election judge or alternate election judge, immediately after closing the polls for voting on election day, to print the tape to show the number of votes cast for each candidate or ballot measure for each voting machine.

(d) Requires each election judge or alternate election judge to sign a tape printed under this section.

SECTION 2.03. Amends Section 64.007(c), Election Code, as follows:

(c) Requires an election officer to maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit. Requires SOS to create and promulgate a form to be used for this purpose.

SECTION 2.04. Amends Subchapter A, Chapter 65, Election Code, by adding Section 65.017, as follows:

Sec. 65.017. VOTE TABULATING EQUIPMENT. Prohibits equipment to tabulate votes, beginning January 1, 2024, from being used if any wireless connectivity capability of the equipment has not been disabled or removed.

SECTION 2.05. Amends Subchapter A, Chapter 66, Election Code, by adding Section 66.004, as follows:

Sec. 66.004. CLOSING POLLING PLACE. Requires SOS to adopt rules and create a checklist or similar guidelines to assist the presiding judge of a polling place in processing forms and conducting procedures required by this code at the closing of the polling place.

SECTION 2.06. Amends Section 66.052, Election Code, as follows:

Sec. 66.052. New heading: DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) Creates this subsection from existing text and makes no further changes.

(b) Requires the presiding judge of a polling place, if the presiding judge designates a clerk to deliver election supplies, to attest to the designation, and requires the clerk to attest to the clerk's acceptance of the responsibility. Requires SOS to create and promulgate a form to facilitate compliance with this section.

SECTION 2.07. Amends Section 85.005, Election Code, as follows:

Sec. 85.005. REGULAR DAYS AND HOURS FOR VOTING. (a) Provides that, except as provided by Subsection (c), in an election in which a county clerk is the early voting clerk under Section 83.002 (County Clerk as Early Voting Clerk), early voting by personal appearance at the main early voting polling place is required to be conducted on each weekday of the early voting period that is not a legal state holiday and for a period of at least nine hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m.

Deletes existing text providing that, except as provided by Subsection (c), in an election in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005 (Clerk for City Elections), early voting by personal appearance at the main early voting polling place is required to be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business.

(b) Requires that early voting by personal appearance at the main early voting polling place, in an election to which Subsection (a) does not apply, be conducted at least nine hours, rather than eight hours, each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters. Requires that the voting in that case be conducted at least four hours, rather than three hours, each day.

(c) Requires that the voting in a primary election or the general election for state and county officers, in a county with a population of 30,000 or more, rather than a population of 100,000 or more, be conducted at the main early voting polling place for at least 12 hours on each weekday of the last week of the early voting period, and requires that the voting in a special election ordered by the governor be conducted at the main early voting polling place for at least 12 hours on each of the last two days of the early voting period. Prohibits voting under this subsection from being conducted earlier than 6 a.m. or later than 9 p.m. Makes a conforming change.

(d) Provides that a voter who has not voted before the scheduled time for closing a polling place is entitled to vote after that time if the voter is in line at the polling place by closing time. Requires SOS to promulgate any materials and provide any training to presiding judges necessary to properly process voters under this subsection.

Deletes existing text requiring that early voting by personal appearance at the main early voting polling place, in an election ordered by a city, be conducted for at least 12 hours on one weekday, if the early voting period consists of less than six weekdays, or on two weekdays, if the early voting period consists of six or more weekdays.

SECTION 2.08. Amends Sections 85.006(b) and (e), Election Code, as follows:

(b) Authorizes only the early voting clerk to order voting on a Saturday or Sunday in an election in which a county clerk is the early voting clerk under Section 83.002, rather than in an election in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005.

(e) Requires the early voting clerk, in a primary election or the general election for state and county officers in a county with a population of 30,000 or more, to order voting by personal appearance at the main early voting polling place to be conducted on the last Saturday of the early voting period for at least 12 hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m., and on the last Sunday of the early voting period for at least six hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m.

Deletes existing text requiring the early voting clerk, in a primary election or the general election for state and county officers in a county with a population of 100,000 or more, to order personal appearance voting at the main early voting polling place to be conducted for at least 12 hours on the last Saturday and for at least five hours on the last Sunday of the early voting period. Makes a conforming change.

SECTION 2.09. Amends Section 85.010(a-1), Election Code, to redefine "eligible county polling place" for Section 85.010 (Early Voting Polling Place for Certain Elections Held by Political Subdivisions).

SECTION 2.10. Amends Section 85.061, Election Code, by amending Subsection (a) and adding Subsections (a-1) and (a-2), as follows:

(a) Authorizes a polling place, if a suitable room is unavailable inside the branch office, to be located in another room inside the same building as the branch office. Prohibits the polling place, except as provided by Subsection (a-1), from being located in a tent or similar temporary moveable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles. Makes a nonsubstantive change.

(a-1) Authorizes an early voting polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for an early voting polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(a-2) Provides that if the county commissioners court makes a determination described by Subsection (a-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to the secretary of state as soon as practicable.

SECTION 2.11. Amends Section 85.062, Election Code, by amending Subsection (b) and adding Subsections (b-1), (b-2), and (f-1), as follows:

(b) Authorizes an early voting polling place established under Section 85.062 (Temporary Branch Polling Place) to be located, subject to Subsection (d) (relating to requiring the commissioners courts of counties with certain populations to establish a certain number of early voting polling places), at any place in the territory served by the early voting clerk and to be located inside any building, rather than in any stationary structure, as directed by the authority establishing the branch office. Prohibits the polling place, except as provided by Subsection (b-1), from being located in a tent or similar temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles in the general election for state and county officers, general primary election, or runoff primary election. Makes nonsubstantive changes.

(b-1) Authorizes a temporary branch polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for a temporary branch polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(b-2) Provides that if the county commissioners court makes a determination described by Subsection (b-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to the secretary of state as soon as practicable.

(f-1) Requires the commissioners court of a county, notwithstanding any other provision of this section concerning the location of temporary branch polling places, in an election in which countywide polling places are used, to employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.

SECTION 2.12. Amends Section 124.002, Election Code, by adding Subsection (c), to prohibit voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

SECTION 2.13. Amends Section 127.1232, Election Code, as follows:

Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) Creates this subsection from existing text. Requires the general custodian of election records to post a licensed peace officer, rather than a guard, to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.

(b) Provides that the general custodian of election records in a county with a population of less than 100,000 is authorized, and the general custodian of election records in a county with a population of 100,000 or more is required, to implement a video surveillance system that retains a record of all areas containing voted ballots:

(1) from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns; and

(2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns.

(c) Provides that a video from a system implemented under Subsection (b) is authorized to be made available to the public by a livestream in a county with a population of less than 100,000, and is required to be made available to the public by a livestream in a county with a population of 100,000 or more.

(d) Provides that the video recorded is an election record under Section 1.012 (Public Inspection of Election Records) and is required to be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later.

ARTICLE 3. ELECTION OFFICERS AND OBSERVERS

SECTION 3.01. Amends Subchapter A, Chapter 33, Election Code, by adding Section 33.008, as follows:

Sec. 33.008. TRAINING MANUAL. (a) Requires SOS to publish and maintain a training manual for watchers and to make the manual available on SOS's Internet website.

(b) Requires an appointing authority to provide each watcher appointed by the authority with a copy of the training manual maintained under this section.

SECTION 3.02. Amends Section 33.051, Election Code, by adding Subsections (g) and (h), as follows:

(g) Provides that an election officer commits an offense if the officer intentionally or knowingly refuses to accept a watcher for service when acceptance of the watcher is required by Section 33.051 (Acceptance of Watcher). Provides that an offense under this subsection is a Class A misdemeanor.

(h) Requires the officer presented with a watcher's certificate of appointment, before accepting a watcher, to require the watcher to take a certain oath, administered by the officer.

SECTION 3.03. Amends Section 33.056, Election Code, by amending Subsection (a) and adding Subsections (e) and (f), as follows:

(a) Entitles a watcher to sit or stand near enough to see and hear the election officers conducting the observed activity, except as otherwise prohibited by Chapter 33 (Watchers), rather than entitles a watcher to sit or stand conveniently near the election officers conducting the observed activity.

(e) Prohibits a watcher, except as provided by Section 33.057(b) (relating to prohibiting a watcher from being present at the voting station when a voter is preparing the voter's ballot or is being assisted by a person of the voter's choice), from being denied free movement where election activity is occurring within the location at which the watcher is serving.

(f) Provides that in this code, a watcher who is entitled to "observe" an election activity is entitled to sit or stand near enough to see and hear the activity.

SECTION 3.04. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.0605, as follows:

Sec. 33.0605. OBSERVING DATA STORAGE SEALING AND TRANSFER. (a) Authorizes a watcher appointed to serve at a polling place in an election who is available

at the time of the action to observe all election activities relating to closing the polling place, including the sealing and transfer of a memory card, flash drive, hard drive, data storage device, or other medium now existing or later developed used by the voting system equipment.

(b) Provides that, notwithstanding any other provision of this code, a watcher duly accepted for service at a polling location is entitled to follow the transfer of election materials from the polling place at which the watcher was accepted to a regional tabulating center, the central counting station, or any other location designated to process election materials. Requires the authority responsible for administering a regional tabulating center or another location where election materials are processed to accept duly appointed watchers for service in the same manner a watcher is accepted for service under Section 33.051 and to accept the same number of watchers that are authorized to serve under Section 33.007(a) (relating to authorizing each appointing authority to appoint not more than two watchers for each precinct polling place, meeting place for an early voting ballot board, or central counting station involved in the election).

SECTION 3.05. Amends Section 33.061(a), Election Code, as follows:

(a) Provides that a person commits an offense of unlawfully obstructing a watcher if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.

SECTION 3.06. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.063, as follows:

Sec. 33.063. RELIEF. (a) Authorizes a watcher, or the appointing authority for a watcher, who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties to seek injunctive relief under Section 273.081 (Injunction), including issuance of temporary orders; a writ of mandamus under Section 161.009 (Party Officer Subject to Mandamus) or 273.061 (Jurisdiction); and any other remedy available under law.

(b) Provides that the relief provided by this section is available to a state inspector appointed under Chapter 34 (State Inspectors) or any other election inspector authorized by law.

SECTION 3.07. Amends Section 86.006, Election Code, by amending Subsection (a) and adding Subsection (a-2), as follows:

(a) Authorizes the carrier envelope for a marked ballot voted under Chapter 86 (Conduct of Voting by Mail) to be delivered in another envelope and requires that it be transported and delivered only by certain methods, including, subject to Subsections (a-1) (relating to authorizing a voter to deliver a marked ballot in person to the early voting clerk's office only while the polls are open on election day) and (a-2), rather than subject to Subsection (a-1), in-person delivery by the voter who voted the ballot.

(a-2) Requires that an in-person delivery of a marked ballot voted under this chapter be received by an election official at the time of delivery. Requires the receiving official to record the voter's name, signature, and type of identification provided under Section 63.0101 (Documentation of Proof of Identification) on a roster prescribed by SOS. Requires the receiving official to attest on the roster that the delivery complies with Section 86.006 (Method of Returning Marked Ballot).

SECTION 3.08. Amends Chapter 121, Election Code, by adding Section 121.004, as follows:

Sec. 121.004. COMMUNICATIONS WITH VOTING SYSTEMS VENDOR PUBLIC INFORMATION. Provides that, except as provided by Sections 552.110 (Exception: Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information) and 552.1101 (Exception: Confidentiality of Proprietary Information), Government Code, a written letter, e-mail, or other communication, including a communication made confidential by other law, between a public official and a voting systems vendor is not confidential, is public information for purposes of Chapter 552 (Public Information), Government Code, and is not subject to an exception to disclosure provided by Chapter 552, Government Code.

SECTION 3.09. Amends Subchapter A, Chapter 127, Election Code, by adding Section 127.009, as follows:

Sec. 127.009. ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. (a) Requires a counting station manager and the presiding judge of the counting station to develop a protocol under which any electronic device inside a central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device.

(b) Requires the counting station manager and the presiding judge of the counting station to ensure that the input and activity tracked by the software is printed and delivered to SOS not later than the fifth day after vote counting is complete.

(c) Provides that this section applies only to a central counting station located in a county with a population of 250,000 or more.

SECTION 3.10. Amends Section 127.1301, Election Code, as follows:

Sec. 127.1301. New heading: CENTRALLY COUNTED OPTICAL SCAN BALLOTS. (a) Creates this subsection from existing text and makes no further changes.

(b) Prohibits an authority operating a central counting station under Chapter 127 (Processing Electronic Voting System Results), after January 1, 2024, from purchasing or using a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified.

SECTION 3.11. Amends Section 127.131, Election Code, by adding Subsection (f), as follows:

(f) Requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. Requires SOS to create and promulgate rules and a form to facilitate compliance with this subsection. Requires that the form be posted on a website maintained by the county along with election returns and results.

SECTION 3.12. Amends Section 129.023, Election Code, by adding Subsections (b-2) and (c-1), as follows:

(b-2) Requires the general custodian of election records, if the test is being conducted for an election in which a county election board has been established under Section 51.002 (County Election Board), to notify each member of the board of the test at least 48 hours before the date of the test. Requires each member of the county election board, if the board chooses to witness the test, to sign the statement required by Subsection (e)(1) (relating to requiring the testing board and general custodian of election records to sign a written statement attesting to certain information to provide a full and accurate account of each voting machine's condition).

(c-1) Requires that a test conducted under Section 129.023 (Public Test of Logic and Accuracy) also require the general custodian of election records to demonstrate, using a

representative sample of voting system equipment, that the source code of the equipment has not been altered.

ARTICLE 4. VOTING BY MAIL

SECTION 4.01. Amends Section 84.001(b), Election Code, as follows:

(b) Requires that an application for an early voting ballot to be voted by mail be submitted in writing and signed by the applicant using ink on paper. Provides that an electronic signature or photocopied signature is not permitted.

SECTION 4.02. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0011, as follows:

Sec. 84.0011. SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED. Prohibits the early voting clerk from making any attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party.

SECTION 4.03. Amends Section 84.002, Election Code, as effective September 1, 2021, by amending Subsection (a) and adding Subsection (b-1), as follows:

(a) Requires that an early voting ballot application include:

(1) makes no changes to this subdivision;

(1-a) the following information:

(A) the number of the applicant's driver's license, election identification certificate, or personal identification card issued by DPS;

(B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or

(C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B);

(2)-(7) makes no changes to these subdivisions.

(b-1) Authorizes a person to use the number of a driver's license, election identification certificate, or personal identification card that has expired for the purpose of fulfilling the requirement under Subsection (a)(1- a) if the license or identification is otherwise valid.

SECTION 4.04. Amends Section 84.011(a), Election Code, as effective September 1, 2021, as follows:

(a) Requires that the officially prescribed application form for an early voting ballot include certain criteria, including a space for entering the information required under Section 84.002(a)(1-a).

SECTION 4.05. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0111, as follows:

Sec. 84.0111. DISTRIBUTION OF APPLICATION FORM. (a) Prohibits an officer or employee of this state or of a political subdivision of this state, except as provided by Subsection (c) or as otherwise authorized by this code, from distributing an application form for an early voting ballot to a person who did not request an application under Section 84.001 (Application Required).

(b) Prohibits an officer or employee of this state or of a political subdivision of this state from using public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

(c) Authorizes a political party or a candidate for office to distribute an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 4.06. Amends Section 84.032(c), Election Code, as follows:

(c) Authorizes an applicant for a ballot to be voted by mail to submit a request after the close of early voting by personal appearance by appearing in person and:

(1) makes no changes to this subdivision; or

(2) executing an affidavit that the applicant:

(A) and (B) makes nonsubstantive changes to these paragraphs; or

(C) received notice of a defect under Section 87.0271(b) or 87.0411(b).

SECTION 4.07. Amends Section 84.035, Election Code, as follows:

Sec. 84.035. BALLOT SENT TO APPLICANT. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes an election judge to permit a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 (Request for Cancellation) but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section to vote only a provisional ballot under Section 63.011 (Provisional Voting).

SECTION 4.08. Amends Section 86.001, Election Code, by adding Subsection (f), as follows:

(f) Requires the early voting clerk to reject the application for a ballot to be voted by mail if the information required under Section 84.002(a)(1-a) included on the application does not match the information on the applicant's application for voter registration under Section 13.002(c)(8) (relating to requiring that a voter registration application provide the applicant's driver's license or personal identification number, the applicant's social security number, or a certain statement).

SECTION 4.09. Amends Section 86.002, Election Code, by adding Subsections (g), (h), and (i), as follows:

(g) Requires that the carrier envelope provided with each ballot to be voted by mail include a space that is hidden from view when the envelope is sealed for the voter to enter the following information:

(1) the number of the voter's driver's license, election identification certificate, or personal identification card issued by DPS;

(2) if the voter has not been issued a number described by Subdivision (1), the last four digits of the voter's social security number; or

(3) a statement by the applicant that the applicant has not been issued a number described by Subdivision (1) or (2).

(h) Authorizes a person to use the number of a driver's license, election identification certificate, or personal identification card that has expired for purposes of Subsection (g) if the license or identification is otherwise valid.

(i) Prohibits any record associating an individual voter with a ballot from being created.

SECTION 4.10. Amends Section 86.011(c), Election Code, as follows:

(c) Requires the early voting clerk, if the return is not timely, to enter the time of receipt on the carrier envelope and retain it in a locked container for the period for preserving the precinct election records.

SECTION 4.11. Amends Section 87.027(i), Election Code, as follows:

(i) Authorizes the signature verification committee to also compare the signatures on the carrier envelope certificates with any known signature of the voter, rather than with any two or more signatures of the voter made within the preceding six years, on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 4.12. Amends Subchapter B, Chapter 87, Election Code, by adding Section 87.0271, as follows:

Sec. 87.0271. OPPORTUNITY TO CORRECT DEFECT: SIGNATURE VERIFICATION COMMITTEE. (a) Provides that this section applies to an early voting ballot voted by mail for which the voter did not sign the carrier envelope certificate, for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter, that is missing any required statement of residence, or that contains incomplete information with respect to a witness.

(b) Authorizes the signature verification committee, before deciding whether to accept or reject a timely delivered ballot under Section 87.027 (Signature Verification Committee), to:

(1) return the carrier envelope to the voter by mail, if the signature verification committee determines that it would be possible to correct the defect and return the carrier envelope before the time the polls are required to close on election day; or

(2) notify the voter of the defect by telephone or e-mail and inform the voter that the voter is authorized to come to the early voting clerk's office in person to correct the defect or to request to have the voter's application to vote by mail canceled under Section 84.032.

(c) Requires the signature verification committee, if the committee takes an action described by Subsection (b), to take either action described by that subsection with respect to each ballot in the election to which this section applies.

(d) Entitles a poll watcher to observe an action taken under Subsection (b).

(e) Authorizes SOS to prescribe any procedures necessary to implement this section.

SECTION 4.13. Amends Section 87.041, Election Code, by amending Subsections (b) and (e) and adding Subsection (d-1), as follows:

(b) Authorizes an early voting ballot to be accepted only if certain criteria are met, including if the information required under Section 86.002(g) provided by the voter identifies the same voter identified on the voter's application for voter registration under Section 13.002(c)(8). Makes nonsubstantive changes.

(d-1) Requires that the signature on the early voting ballot application and on the carrier envelope certificate be rebuttably presumed to be the signatures of the voter if a voter

provides the information required under Section 86.002(g) and it identifies the same voter identified on the voter's application for voter registration under Section 13.002(c)(8).

(e) Authorizes the early voting ballot board, in making the determination under Subsection (b)(2) (relating to authorizing an early voting ballot to be accepted if neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness), to determine whether the signatures are those of the voter, to also compare the signatures with any known signature of the voter on file with the county clerk or voter registrar. Deletes existing text authorizing the board, in making the determination under Subsection (b)(2), to also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 4.14. Amends Subchapter C, Chapter 87, Election Code, by adding Section 87.0411, as follows:

Sec. 87.0411. OPPORTUNITY TO CORRECT DEFECT: EARLY VOTING BALLOT BOARD. (a) Provides that this section applies to an early voting ballot voted by mail for which the voter did not sign the carrier envelope certificate, for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter, that is missing any required statement of residence, or to a ballot containing incomplete information with respect to a witness.

(b) Authorizes the early voting ballot board, before deciding whether to accept or reject a timely delivered ballot under Section 87.041 (Accepting Voter), to:

(1) return the carrier envelope to the voter by mail, if the early voting ballot board determines that it would be possible to correct the defect and return the carrier envelope before the time the polls are required to close on election day; or

(2) notify the voter of the defect by telephone or e-mail and inform the voter that the voter is authorized to come to the early voting clerk's office in person to correct the defect or to request to have the voter's application to vote by mail canceled under Section 84.032.

(c) Requires the early voting ballot board, if the board takes an action described by Subsection (b), to take either action described by that subsection with respect to each ballot in the election to which this section applies.

(d) Entitles a poll watcher to observe an action taken under Subsection (b).

(e) Authorizes SOS to prescribe any procedures necessary to implement this section.

SECTION 4.15. Amends Section 87.0431(b), Election Code, as follows:

(b) Requires the early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected for certain reasons, including because the early voting ballot board or the signature verification committee determined that another violation of the Election Code occurred. Makes nonsubstantive changes.

SECTION 4.16. Amends Sections 87.062(a) and (c), Election Code, as follows:

(a) Makes nonsubstantive changes to this subsection.

(c) Requires that ballots voted by mail be tabulated and stored separately from the ballots voted by personal appearance and be separately reported on the returns. Deletes existing

text requiring that the results of all early voting ballots counted by the early voting ballot board under Subchapter D (Processing Manually Counted Ballots) be included in the same return.

SECTION 4.17. Amends Section 87.103, Election Code, as follows:

Sec. 87.103. COUNTING BALLOTS AND PREPARING RETURNS. (a) Requires that the early voting electronic system ballots counted at a central counting station, the ballots cast at precinct polling places, and the ballots voted by mail be tabulated separately and be separately reported on the returns. Makes a nonsubstantive change.

(b) Requires that the early voting returns prepared at the central counting station include any early voting results obtained by the early voting ballot board under Subchapter D, rather than under Subchapters D and E.

SECTION 4.18. Amends Section 87.126, Election Code, by adding Subsection (a-1), as follows:

(a-1) Requires that electronic records made under Section 87.126 (Electronic Recording of Ballot Materials and Applications) record both sides of any application, envelope, or ballot recorded, and that all such records be provided to the early voting ballot board, the signature verification committee, or both.

SECTION 4.19. Amends Subchapter G, Chapter 87, Election Code, by adding Section 87.128, as follows:

Sec. 87.128. NOTES. Entitles each member of an early voting ballot board and each member of a signature verification committee to take and keep any notes reasonably necessary to perform the member's duties under Chapter 87 (Processing Early Voting Results).

## ARTICLE 5. ASSISTANCE OF VOTERS

SECTION 5.01. Amends Section 64.009, Election Code, by amending Subsection (b) and adding Subsections (e), (f), (f-1), (g), and (h), as follows:

(b) Authorizes the regular voting procedures, except those in Subchapter B (Assisting Voter), to be modified by the election officer to the extent necessary to conduct voting under this section.

(e) Provides that except as provided by Section 33.057, a poll watcher is entitled to observe any activity conducted under this section.

(f) Requires a person who simultaneously assists three or more voters voting under this section by providing the voters with transportation to the polling place to complete and sign a form, provided by an election officer, that contains the person's name and address and whether the person is providing assistance solely under this section or under both this section and Subchapter B.

(f-1) Provides that Subsection (f) does not apply if the person is related to each voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B (Relationships by Consanguinity or by Affinity), Chapter 573 (Degrees of Relationship; Nepotism Prohibitions), Government Code.

(g) Requires that a form completed under Subsection (f) be delivered to SOS as soon as practicable. Requires SOS to retain a form delivered under this section for the period for preserving the precinct election records and to make the form available to the attorney general for inspection upon request.

(h) Requires SOS to prescribe the form described by Subsection (f).

SECTION 5.02. Amends Section 64.031, Election Code, as follows:

Sec. 64.031. ELIGIBILITY FOR ASSISTANCE. Provides that a voter is eligible to receive assistance in marking or reading the ballot, rather than assistance in marking the ballot, as provided by Subchapter B, if the voter cannot prepare or read the ballot, rather than prepare the ballot, because of a physical disability that renders the voter unable to write or see or an inability to read the language in which the ballot is written.

SECTION 5.03. Amends Subchapter B, Chapter 64, Election Code, by adding Section 64.0322, as follows:

Sec. 64.0322. SUBMISSION OF FORM BY ASSISTANT. (a) Requires a person, other than an election officer, who assists a voter in accordance with Chapter 64 (Voting Procedures) to complete a form stating:

(1) the name and address of the person assisting the voter;

(2) the relationship to the voter of the person assisting the voter; and

(3) whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee.

(b) Requires SOS to prescribe the form required by this section. Requires that the form be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010 (Unlawfully Assisting Voter Voting Ballot by Mail), or be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 5.04. Amends Section 64.034, Election Code, as follows:

Sec. 64.034. OATH. Requires a person, other than an election officer, selected to provide assistance to a voter to take a certain oath, administered by an election officer at the polling place, before providing assistance. Sets forth the required language of the oath.

SECTION 5.05. Amends Sections 86.010(e), (h), and (i), Election Code, as follows:

(e) Requires a person who assists a voter to prepare a ballot to be voted by mail to enter on the official carrier envelope of the voter:

(1) creates this subdivision from existing text and makes a nonsubstantive change;

(2) the relationship of the person providing the assistance to the voter; and

(3) whether the person received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee in exchange for providing assistance.

Deletes existing text requiring a person who assists a voter to prepare a ballot to be voted by mail to enter certain information on the official carrier envelope of the voter.

(h) Provides that Subsection (f) (relating to providing that a person who assists a voter commits an offense if the person knowingly fails to comply with certain requirements) does not apply to:

(1) a violation of Subsection (c) (relating to requiring a person assisting a voter to sign a certain written oath that is part of the certificate on the official carrier envelope), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter

573, Government Code, or was physically living in the same dwelling as the voter at the time of the event; or

(2) a violation of Subsection (e), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code.

Makes nonsubstantive changes.

(i) Provides that an offense under this section for a violation of Subsection (c), rather than an offense under this section, is increased to the next higher category of offense if it is shown on the trial of an offense under this section that the defendant was previously convicted of an offense under this code, the offense involved a voter 65 years of age or older, or the defendant committed another offense under this section in the same election.

SECTION 5.06. Amends Section 86.013(b), Election Code, as follows:

(b) Requires that spaces appear on the reverse side of the official carrier envelope for providing certain information, including for indicating the relationship of a certain person to the voter. Makes nonsubstantive changes.

ARTICLE 6. FRAUD AND OTHER UNLAWFUL PRACTICES

SECTION 6.01. Amends Chapter 63, Election Code, by adding Section 63.0111, as follows:

Sec. 63.0111. OFFENSES RELATED TO PROVISIONAL VOTING. (a) Provides that an election judge commits an offense if the judge knowingly provides a voter with a form for an affidavit required by Section 63.001 (Regular Procedure for Accepting Voter) if the form contains information that the judge entered on the form knowing it was false.

(b) Provides that an offense under this section is a state jail felony.

SECTION 6.02. Amends Sections 276.004(a) and (b), Election Code, as follows:

(a) Provides that a person commits an offense of unlawfully prohibiting an employee from voting if, with respect to another person over whom the person has authority in the scope of employment, the person knowingly:

(1) refuses to permit the other person to be absent from work on election day or while early voting is in progress for the purpose of attending the polls to vote; or

(2) subjects or threatens to subject the other person to a penalty for attending the polls on election day or while early voting is in progress to vote.

(b) Makes a conforming change to this subsection.

SECTION 6.03. Amends Chapter 276, Election Code, by adding Sections 276.015, 276.016, and 276.017, as follows:

Sec. 276.015. VOTE HARVESTING. (a) Defines "benefit" and "vote harvesting services."

(b) Provides that a person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit.

(c) Provides that a person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services.

(d) Provides that a person commits an offense if the person knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services.

(e) Provides that this section does not apply to:

(1) an activity not performed in exchange for compensation or a benefit;

(2) interactions that do not directly involve an official ballot, ballot by mail, or an application for ballot by mail;

(3) interactions that are not conducted in-person with a voter; or

(4) activity that is not designed to deliver votes for or against a specific candidate or measure.

(f) Provides that in this section, compensation in exchange for vote harvesting services is inferred if a person who performed vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than vote harvesting services provided.

(g) Provides that an offense under this section is a felony of the third degree.

(h) Authorizes the actor, if conduct that constitutes an offense under this section also constitutes an offense under any other law, to be prosecuted under this section, the other law, or both.

(i) Requires that records necessary to investigate an offense under this section or any other section of this code be provided by an election officer in an unredacted form to a law enforcement officer upon request. Provides that records obtained under this subsection are not subject to public disclosure.

Sec. 276.016. CIVIL LIABILITY FOR VOTE HARVESTING. (a) Provides that a person who is shown by a preponderance of the evidence to have violated Section 276.015 is civilly liable to any candidate or political party who suffers harm from the vote harvesting services for damages and penalties that are authorized to be awarded under Subsection (c).

(b) Provides that a person is harmed by the vote harvesting services if the person can demonstrate that the person has standing to seek relief and the liable party violated Section 276.015.

(b-1) Provides that, to establish standing under this section, a person is not required to demonstrate that the vote harvesting services successfully delivered votes for a specific candidate or measure, but is required to demonstrate that:

(1) the vote harvesting services were intended to deliver votes for a specific candidate or measure; and

(2) the person opposed the candidate or measure in the person's capacity as a candidate or political party.

(c) Authorizes a party who prevails in an action under this section to recover damages in an amount including any or all of:

(1) the amount of compensation paid to or received by a party in exchange for vote harvesting services;

(2) the fair market value of any benefit given or received in exchange for vote harvesting services;

(3) a penalty in the amount of $35,000; or

(4) reasonable and necessary attorney's fees, court costs, witness fees, and discovery costs.

(d) Requires that a party who is a candidate for office who prevails in an action under this section and shows that the number of voters contacted by the vote harvesting activity exceeds the number of votes by which the party lost the election recover damages in an amount including any or all of:

(1) the party's campaign expenditures properly filed on a campaign finance report in connection with the election; or

(2) any fees and expenses incurred by the party in filing and securing a place on the ballot.

(e) Provides that a person who commits an offense under Section 276.015 and is found civilly liable, including by vicarious liability, under Chapter 276 (Miscellaneous Offenses and Other Provisions) or other law for any amount of damages arising from the vote harvesting services is jointly liable with any other defendant for the entire amount of damages arising from the vote harvesting services.

(f) Provides that the cause of action created by this section is cumulative of any other remedy provided by common law or statute.

(g) Provides that rules applicable to a party's access to election records under Chapter 231 (Contest in District Court Generally) or 232 (Contests for Office) apply to a cause of action under this section.

(h) Provides that the expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to an action under this section.

(i) Provides that Chapter 27 (Actions Involving the Exercise of Certain Constitutional Rights), Civil Practice and Remedies Code, does not apply to a cause of action under this section.

(j) Authorizes a cause of action under this section to be brought in the county where any element of a violation under Section 276.015 occurred, or where any part of the vote harvesting services occurred.

(k) Requires that this section be liberally construed and applied to promote its underlying purpose to protect candidates and the voting public from unlawful vote harvesting and provide an efficient and economical remedy to secure that protection.

Sec. 276.017. UNLAWFUL ALTERING OF ELECTION PROCEDURES. Prohibits a public official from creating, altering, modifying, waiving, or suspending any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code.

## ARTICLE 7. ENFORCEMENT

SECTION 7.01. Amends Section 18.065, Election Code, by amending Subsection (a) and adding Subsections (e), (f), and (g), as follows:

(a) Requires SOS to monitor each voter registrar for substantial compliance with certain sections, including with Section 16.0332, and with rules implementing the statewide computerized voter registration list.

(e) Requires a voter registrar to correct a violation within 30 days of a notice under Subsection (b) (relating to requiring SOS to deliver written notice of noncompliance to the registrar). Requires SOS, if a registrar fails to correct the violation within 30 days of a notice under Subsection (b), to correct the violation on behalf of the registrar and to notify the attorney general that the registrar failed to correct a violation under this subsection.

(f) Provides that a county served by a voter registrar who fails to correct a violation under Subsection (e) is liable to this state for a civil penalty of $1,000 for each violation corrected by SOS under that subsection. Authorizes the attorney general to bring an action to recover a civil penalty imposed under Section 18.065 (Secretary of State to Monitor Registrar's Compliance).

(g) Requires that a civil penalty collected by the attorney general under this section be deposited in the state treasury to the credit of the general revenue fund.

SECTION 7.02. Amends Subchapter E, Chapter 31, Election Code, by adding Sections 31.128 and 31.129, as follows:

Sec. 31.128. RESTRICTION ON ELIGIBILITY. (a) Defines "election official."

(b) Prohibits a person from serving as an election official if the person has been finally convicted of an offense under this code.

Sec. 31.129. CIVIL PENALTY. (a) Defines "election official."

(b) Provides that an election official may be liable to this state for a civil penalty if the official is employed by or is an officer of this state or a political subdivision of this state and violates a provision of this code.

(c) Authorizes a civil penalty imposed under this section to include termination of the person's employment and loss of the person's employment benefits.

SECTION 7.03. Amends Section 232.006(a), Election Code, as follows:

(a) Provides that the venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election, rather than in Travis County. Provides that, for purposes of Section 232.006 (Venue), a contestee's residence is determined under Section 411.0257 (Residence), Government Code.

SECTION 7.04. Amends Sections 232.008(b), (c), and (d), Election Code, as follows:

(b) Requires a contestant, except as provided by Subsection (c), to file the petition not later than the later of the 45th day, rather than the 30th day, after the date the election records are publicly available under Section 1.012 or the official result of the contested election is determined.

(c) Requires a contestant to file the petition not later than the later of the 15th day, rather than the 10th day, after the date the election records are publicly available under Section 1.012 or the official result is determined in a contest of certain elections.

(d) Requires a contestant to deliver, electronically or otherwise, a copy of the petition to SOS by the same deadline prescribed for the filing of the petition.

SECTION 7.05. Amends Chapter 232, Election Code, by adding Subchapter C, as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061. PETITION ALLEGING FRAUD. Provides that this subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge violated any of certain sections of this code.

Sec. 232.062. DAMAGES. (a) Provides that if it is shown by a preponderance of the evidence that a contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to the contestant for damages in an amount of $1,000 for each violation.

(b) Requires a court, notwithstanding Section 41.004(a) (relating to authorizing exemplary damages to be awarded only if damages other than nominal damages are awarded), Civil Practice and Remedies Code, to award damages under Subsection (a) to the contestant irrespective of whether the contestant is awarded actual damages.

Sec. 232.063. ATTORNEY'S FEES. Authorizes the court, in an election contest to which this subchapter applies, to award reasonable attorney's fees to the prevailing party.

SECTION 7.06. Amends Section 273.061, Election Code, as follows:

Sec. 273.061. JURISDICTION. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes the court of criminal appeals to issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the provision, sequestration, transfer, or impoundment of evidence in or records relating to a criminal investigation conducted under this code or conducted in connection with the conduct of an election or political party convention. Requires that, if a writ of mandamus is issued under this subsection, it include an order requiring the provision, sequestration, transfer, or impoundment of the evidence or record.

SECTION 7.07. Amends Subchapter D, Chapter 22, Government Code, by adding Section 22.304, as follows:

Sec. 22.304. PRIORITY OF CERTAIN ELECTION PROCEEDINGS. (a) Requires the Supreme Court of Texas, the Texas Court of Criminal Appeals, or a court of appeals to prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief or for a writ of mandamus under Chapter 273 (Criminal Investigation and Other Enforcement Proceedings), Election Code, pending or filed in the court on or after the 120th day before a general or special election.

(b) Authorizes oral argument for a proceeding described by Subsection (a), if granted, to be given in person or through electronic means.

SECTION 7.08. Amends Section 23.101, Government Code, by amending Subsection (a) and adding Subsection (b-1), as follows:

(a) Creates an exception under Subsection (b-1) to the requirement that the trial courts of this state regularly and frequently set hearings and trials of pending matters, giving preference to hearings and trials of certain matters. Makes a nonsubstantive change.

(b-1) Requires the trial courts of this state, except for a criminal case in which the death penalty has been or may be assessed or when it would otherwise interfere with a constitutional right, to prioritize over any other proceeding pending or filed in the court a

proceeding for injunctive relief under Chapter 273, Election Code, pending or filed in the court on or after the 120th day before a general or special election.

### ARTICLE 8. INELIGIBLE VOTERS AND RELATED REFORMS

SECTION 8.01. Amends Chapter 42, Code of Criminal Procedure, by adding Article 42.0194, as follows:

Art. 42.0194. FINDING REGARDING FELONY CONVICTION. Requires the court, in the trial of a felony offense, if the defendant is 18 years of age or older and is adjudged guilty of the offense, to:

(1) make an affirmative finding that the person has been found guilty of a felony and enter the affirmative finding in the judgment of the case; and

(2) instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in this state.

SECTION 8.02. Amends Article 42.01, Code of Criminal Procedure, as effective September 1, 2021, by adding Section 16, as follows:

Sec. 16. Provides that in addition to the information described by Section 1 (relating to the content of a judgment showing the conviction or acquittal of a defendant), the judgment should reflect the affirmative finding and instruction entered pursuant to Article 42.0194.

### ARTICLE 9. REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

SECTION 9.01. Repealer: Section 85.062(e) (relating to authorizing a temporary branch polling place that is located in a movable structure to be established only with the approval of the county clerk and the polling place's implementation), Election Code.

Repealer: Section 127.201(f) (relating to authorizing SOS at any time to waive or reinstate the requirements of a partial count of electronic voting system ballots by the general custodian for a particular political subdivision), Election Code.

SECTION 9.02. Severability clause.

SECTION 9.03. (a) Provides that except as otherwise provided by this Act, the changes in law made by this Act apply only to an offense committed on or after the effective date of this Act. Provides that an offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. Provides that for purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

(b) Provides that the changes in law made by this Act apply only to an election ordered on or after the effective date of this Act. Provides that an election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

(c) Provides that the changes in law made by this Act apply only to an election contest for which the associated election occurred after the effective date of this Act.

(d) Provides that the changes in law made by this Act apply only to an application to vote an early voting ballot by mail submitted on or after the effective date of this Act. Provides that an application to vote an early voting ballot by mail submitted before the effective date of this Act is governed by the law in effect when the application was submitted, and the former law is continued in effect for that purpose.

(e) Provides that the changes in law made by this Act apply only to an application for voter registration submitted on or after the effective date of this Act.

SECTION 9.04. Effective date: upon passage or the 91st day after the last day of the legislative session.

# BILL ANALYSIS

C.S.S.B. 1
By: Hughes
Constitutional Rights & Remedies, Select
Committee Report (Substituted)

## BACKGROUND AND PURPOSE

Full, free, and fair elections are the very foundation of a stable constitutional democracy and Texas voters must have faith and confidence in the ability to exercise their right to vote in the state's elections. To fulfill that fundamental promise of democracy, it is in the interest of the state for elections to be conducted consistently and securely, protected from fraud or abuse, with the assurance that every lawful vote is counted.

C.S.S.B. 1, the Election Integrity Protection Act of 2021, seeks to provide for the uniform application of the state's election laws in a variety of ways, among them eliminating the potential for counties to create inconsistent ad hoc voting procedures, improving mail-in ballot security, providing for appropriate voting assistance to elderly and disabled voters, banning "vote harvesting," and ensuring poll watchers are allowed to observe election activities in polling places and ballot counting areas.

## CRIMINAL JUSTICE IMPACT

It is the committee's opinion that this bill expressly does one or more of the following: creates a criminal offense, increases the punishment for an existing criminal offense or category of offenses, or changes the eligibility of a person for community supervision, parole, or mandatory supervision.

## RULEMAKING AUTHORITY

It is the committee's opinion that rulemaking authority is expressly granted to the secretary of state in SECTION 3.07 of this bill.

## ANALYSIS

### General Provisions

C.S.S.B. 1 amends the Election Code to revise the conduct of elections in Texas, including with regard to election officers and observers, voting by mail, assistance of voters, fraud and other unlawful practices, and ineligible voters and related reforms and amends the Government Code to provide for the prioritization of certain election proceedings in the Texas Supreme Court, the courts of appeals, and the trial courts. The bill requires election officials and other public officials to strictly construe the provisions of the Election Code to effect the intent of the legislature that the application of those provisions and the conduct of elections be uniform and consistent throughout Texas to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted. The bill makes general principles of criminal responsibility under the Penal Code applicable to offenses prescribed by the Election Code. The bill sets out certain legislative findings and provides for the severability of its provisions.

### Registration of Voters

C.S.S.B. 1 requires the contents of a voter registration application to be supplied by the person desiring to register to vote. The bill revises the procedures for providing notice of unlawful voting by a person who is not registered to vote to a prosecutor, and in some cases to the attorney general, by requiring a voter registrar who determines that a person who is not eligible to vote either registered to vote or voted in an election to execute and deliver to the attorney general, the secretary of state, and the county or district attorney having jurisdiction in the territory covered by the election an affidavit stating the relevant facts.

C.S.S.B. 1, with respect to the notice of change in registration information by a voter, extends to any voter, rather than only a voter who continues to reside in the county of registration, the authorization to correct information on the voter's registration certificate by digital transmission of information under a program administered by the secretary of state and the Department of Information Resources. The bill provides the following:
- if the signed notice of the incorrect information and corresponding correction indicates that a voter no longer resides in the county in which the voter is registered, the voter registrar must forward the notice and the voter's original application for registration to the registrar of the county in which the voter resides;
- the registrars must coordinate to ensure that the voter's existing registration is canceled immediately after the voter is registered in the voter's county of residence; and
- a registrar who receives a voter's notice and application from another registrar must treat it as an original application for voter registration and must register the voter if the voter resides in the county and is otherwise eligible for registration.

**Conduct and Security of Elections**

<u>Election of Unopposed Candidate</u>

C.S.S.B. 1 requires, rather than authorizes, the governing body of a political subdivision, on receipt of certification that a candidate is unopposed for election to an office, to declare by order or ordinance the unopposed candidate elected to the office. The bill requires, rather than authorizes, a certifying authority to declare an unopposed candidate elected to an office of the state or county government if, were the election held, only the votes cast for that candidate may be counted.

<u>Countywide Polling Place Program</u>

C.S.S.B. 1 expands the eligibility criteria for participation in the countywide polling place program to include counties that, in addition to meeting the other eligibility criteria, use ballot marking devices, hand-marked scannable paper ballots that are printed and scanned at the polling place, or any other voting system equipment the secretary of state determines is capable of processing votes for each type of ballot to be voted in the county.

<u>Prohibition on Voting From Inside a Motor Vehicle</u>

C.S.S.B. 1 prohibits a voter from casting a vote from inside a motor vehicle unless the voter meets the requirements for a voter unable to enter a polling place.

<u>Spoiled Ballot Register</u>

C.S.S.B. 1 requires the secretary of state to create and promulgate a form to be used for the register of spoiled ballots at a polling place.

<u>Closing Polling Place</u>

C.S.S.B. 1 requires the secretary of state to adopt rules and create a checklist or similar guidelines to assist the presiding judge of a polling place in processing forms and conducting procedures required by the Election Code at the closing of the polling place.

<u>Regular Days and Hours for Voting</u>

For an election in which the county clerk is the early voting clerk, C.S.S.B. 1 does the following:

- changes the regular hours for early voting by personal appearance at the main early voting polling place on a weekday by providing that, instead of being conducted on the weekdays of the early voting period during the hours that the county clerk's main business office is regularly open for business, such voting must be conducted on each weekday of the early voting period that is not a legal state holiday for a period of at least nine hours, except that voting may not be conducted earlier than 6 a.m. or later than 10 p.m.;
- changes the regular hours for early voting by personal appearance at the main early voting polling place on a Saturday or Sunday by providing that, instead of being conducted for at least 12 hours on the last Saturday of the early voting period and for at least five hours on the last Sunday of that period, such voting must be conducted on the last Saturday of that period for at least 12 hours, except that voting may not be conducted earlier than 6 a.m. or later than 10 p.m., and on the last Sunday of that period for at least six hours, except that voting may not be conducted earlier than 9 a.m. or later than 10 p.m.; and
- lowers from 100,000 to 55,000 the minimum county population threshold that triggers the requirement for a county to conduct voting during the early voting period with extended hours in a primary election and the general election for state and county officers or in a special election ordered by the governor, as applicable.

For an election in which the county clerk is not the early voting clerk, C.S.S.B. 1 does the following:

- changes from at least eight hours each weekday to at least nine hours each weekday the number of hours that voting by personal appearance at the main early voting polling place must occur in a territory covered by the election that has 1,000 or more registered voters; and
- changes from at least three hours each weekday to at least four hours each weekday the number of hours that voting by personal appearance at the main early voting polling place must occur in a territory covered by the election that has fewer than 1,000 registered voters.

For an election in which a city secretary is the early voting clerk, C.S.S.B. 1 changes the regular hours for early voting by personal appearance at the main early voting polling place by providing that, instead of being conducted on the weekdays of the early voting period during the hours that the city secretary's main business office is regularly open for business, such voting must be conducted at least nine hours each weekday of that period unless the territory covered by the election has fewer than 1,000 registered voters, in which case such voting must be conducted at least four hours each day.

C.S.S.B. 1 removes the requirement for early voting by personal appearance at the main early voting polling place in an election ordered by a city to be conducted for at least 12 hours on certain weekdays depending on the length of the early voting period.

C.S.S.B. 1 entitles a voter who has not voted before the scheduled time for closing a polling place to vote after that time if the voter is in line at the polling place by closing time. The bill requires the secretary of state to promulgate any materials and provide any training to presiding judges necessary to properly process voters under this provision.

<u>Temporary Branch and Permanent Branch Polling Places</u>

C.S.S.B. 1 removes the authorization for the establishment of a temporary branch polling place that is located in a movable structure with the approval of the county clerk in a primary election, the general election for state and county officers, or a special election to fill a vacancy in the legislature or in congress.

C.S.S.B. 1 provides the following:
- an early voting polling place must be located inside, instead of at, a branch office, except that an early voting polling place may be located in another room inside the same building as the branch office regularly maintained for conducting general clerical functions of the county clerk if a suitable room is unavailable inside the branch office;
- a temporary polling place may be located inside any building, instead of in any stationary structure, and may not be located in a movable structure in the general election for state and county officers, general primary election, or runoff primary election; and
- the commissioners court of a county, in an election in which countywide polling places are used, must employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.

Arrangement of Voting System Ballots

C.S.S.B. 1 prohibits voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

**Election Officers and Observers**

Watchers and Their Purpose, Entitlements, Observations, and Duties

C.S.S.B. 1 prohibits a presiding judge from having a watcher duly accepted for service removed from the polling place for violating any provision of law relating to the conduct of elections, unless the violation was observed by an election judge or clerk after the watcher was previously warned that the watcher's conduct violated the law. However, a presiding judge may call a law enforcement officer to request that a poll watcher be removed if the poll watcher commits a breach of the peace or a violation of law.

C.S.S.B. 1 establishes that the purpose of provisions governing appointed watchers is to preserve the integrity of the ballot box in accordance with the Texas Constitution by providing for the appointment of watchers. The bill provides the following:
- it is the intent of the legislature that watchers duly accepted for service under those governing provisions be allowed to observe and report on irregularities in the conduct of any election;
- watchers may not interfere in the orderly conduct of an election; and
- to effect the applicable purpose, a watcher must:
  - observe without obstructing the conduct of an election; and
  - call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of the election.

C.S.S.B. 1 creates a Class B misdemeanor offense for an election officer who intentionally or knowingly refuses to accept a watcher for service when acceptance of the watcher is required by law. Before accepting a watcher, an election officer presented with a watcher's certificate of appointment must require the watcher to take an oath administered by the officer that the watcher swears or affirms that the watcher will not disrupt the voting process or harass voters in the discharge of the watcher's duties.

C.S.S.B. 1 prohibits a watcher from being denied free movement where election activity is occurring within the location at which the watcher is serving, but the bill explicitly excludes from that prohibition the observation at a voting station when a voter is preparing the voter's

ballot or is being assisted by a person of the voter's choice. The bill sets out a provision establishing that, in the Election Code, a watcher who is entitled to "observe" an election activity is entitled to sit or stand near enough to see and hear the activity.

C.S.S.B. 1 authorizes a watcher appointed to serve at a polling place in an election who is available at the time of the action to observe all election activities relating to closing the polling place, including the sealing and transfer of a memory card, flash drive, hard drive, data storage device, or other medium now existing or later developed used by the voting system equipment. The bill provides the following:
- a watcher duly accepted for service at a polling location is entitled to follow the transfer of election materials from the polling place at which the watcher was accepted to a regional tabulating center, the central counting station, or any other location designated to process election materials; and
- the authority responsible for administering a regional tabulating center or another location where election materials are processed must do the following:
  - o accept duly appointed watchers for service in the same manner a watcher is accepted for service; and
  - o accept a maximum of two watchers for each precinct polling place, meeting place for an early voting ballot board, or central counting station involved in the election.

C.S.S.B. 1 revises the conduct constituting the offense for unlawfully obstructing a watcher as follows:
- to include knowingly preventing a watcher from observing an activity the person knows the watcher is entitled to observe;
- to include knowingly preventing a watcher from observing a procedure the person knows the watcher is entitled to observe; and
- to include knowingly preventing such observation of an activity or procedure by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.

Relief, Writs, and Remedy

C.S.S.B. 1 authorizes the appointing authority for a watcher who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties and authorizes the secretary of state, if the secretary of state believes that a state inspector was unlawfully prevented or obstructed from the performance of the inspector's duties, to seek the following:
- injunctive relief under the Election Code, including the issuance of temporary orders;
- an applicable writ of mandamus under the Election Code; and
- any other remedy available under law.

Receipt of a Marked Early Voting Mail-In Ballot Delivered In Person

C.S.S.B. 1 requires an in-person delivery of a marked early voting mail-in ballot to be received by an election official at the time of delivery. The receiving official must do the following:
- record on a roster prescribed by the secretary of state the voter's name, signature, and type of identification provided for acceptance to vote; and
- attest on the roster that the delivery complies with the method for returning a marked ballot.

Public Test of Logic and Accuracy

C.S.S.B. 1 requires the general custodian of election records, if a public test of logic and accuracy of a voting system is being conducted for an election in which a county election board has been established, to notify each member of the board of the test at least 48 hours before the

87S2 1054                                                                                          21.236.233
Substitute Document Number: 87S2 0907

date of the test. If the county election board chooses to witness the test, each member of the board must sign the requisite statement providing a full and accurate account of the condition of a given voting machine. In addition, a public test of logic and accuracy of a voting system must also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

## Voting by Mail

### Contents of Early Voting Ballot by Mail Application and Carrier Envelope

C.S.S.B. 1 requires an applicant's signature on an application for an early voting ballot by mail to be submitted in writing using ink on paper, prohibits the use of a photocopied signature, and clarifies that the signing of the application is subject to signing by a witness on the grounds of disability or illiteracy. The bill includes the following information among the required contents of the application for a ballot voted early by mail and the carrier envelope of the ballot:
- the voter's or applicant's driver's license number or the number of a personal identification card issued by the Department of Public Safety (DPS);
- if the voter or applicant has not been issued either number, the last four digits of the voter's or applicant's social security number; or
- a statement by the voter or applicant that the voter or applicant has not been issued any of the specified numbers.

In addition, the bill provides the following:
- a person may use the number of a driver's license or personal identification card that has expired for these purposes if the license or identification is otherwise valid; and
- no record associating an individual voter with a ballot may be created.

C.S.S.B. 1 provides for the respective spaces for entering the newly required information on the officially prescribed application form for the ballot voted early by mail and on the carrier envelope and requires the space on the carrier envelope to be hidden from view when the envelope is sealed. The bill requires the early voting clerk to reject the application if the newly required information on the application does not match the information on the applicable voter registration application. The bill provides that a ballot may be accepted only if, among other requirements for acceptance, the applicable information matches the information on the voter's application for voter registration, in which case the signature on the ballot application and on the carrier envelope are rebuttably presumed to be the signatures of the voter.

### Certain Ballots Retained

C.S.S.B. 1 requires early voting mail-in ballots that were not timely returned to be retained in a locked container for the period for preserving the precinct election records.

### Comparison of Voter's Signatures

C.S.S.B. 1 revises the provisions that currently authorize a signature verification committee and early voting ballot board, respectively, to compare two or more signatures of a voter made within the preceding six years that are on file with a county clerk or voter registrar for purposes of ballot acceptance. The bill authorizes the committee and board to compare the signatures instead with any known signature of the voter on file with such officials. The bill also requires an early voting ballot board, in order to determine whether the signatures on a ballot application and the carrier envelope certificate are those of the voter, to request from DPS any signature of the voter's on file with DPS and compare the signatures of the voter on the ballot application and the carrier envelope certificate with any signature provided.

### Opportunity to Correct Defect of Early Voting Ballot by Mail

C.S.S.B. 1 requires a signature verification committee and early voting ballot board, not later than the second business day after discovering an applicable defect with an early voting ballot voted by mail and before deciding whether to accept or reject a timely delivered ballot, to do the following:

- return the carrier envelope to the voter by mail, if the committee or board determines that it would be possible to correct the defect and return the carrier envelope before the time the polls are required to close on election day; or
- notify the voter of the defect by telephone or email and inform the voter that the voter may do the following:
  - request to have the voter's application to vote by mail canceled; or
  - come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect.

The bill establishes that the committee or board, if the respective entity takes either such action, must take the action with respect to each ballot in the election to which the opportunity to correct the defect applies. A poll watcher is entitled to observe such an action and the secretary of state may prescribe any procedures necessary to implement the correction process. The bill prohibits a ballot from being finally rejected for certain reasons regarding the carrier envelope certificate, voter signature on the certificate and ballot application, or statement of residence, before the seventh day after election day. These bill provisions regarding the opportunity to correct a defect apply only to an early voting ballot voted by mail:

- for which the voter did not sign the carrier envelope certificate;
- for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter;
- missing any required statement of residence; or
- containing incomplete information with respect to a witness.

Notice of Rejected Ballot

C.S.S.B. 1 requires the early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because the signature verification committee or the early voting ballot board determined that any Election Code violation occurred.

Counting Ballots and Preparing Returns

C.S.S.B. 1 requires ballots voted early by mail to be tabulated and stored separately from the ballots voted early by personal appearance and to be separately reported on the returns.

C.S.S.B. 1 requires electronic records made of early voting ballot materials and applications to record both sides of the records for provision to the early voting ballot board, the signature verification committee, or both.

Notes

C.S.S.B. 1 entitles each member of an early voting ballot board and each member of a signature verification committee to take and keep any notes reasonably necessary to perform the member's duties regarding the processing of early voting results.

**Assistance of Voters**

Eligibility for Assistance

C.S.S.B. 1 makes a voter eligible to receive assistance in reading a ballot if the voter cannot read the ballot because of a physical disability that renders the voter unable to write or see or because of an inability to read the language in which the ballot is written.

Submission of Form by Assistant

C.S.S.B. 1 requires a person, other than an election officer, who lawfully assists a voter to complete a form stating the following:
- the name and address of the person assisting the voter;
- the relationship to the voter of the person assisting the voter; and
- whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee.

The secretary of state must prescribe the form. The bill provides the following additional requirements for the form:
- the form must be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance; or
- the form must be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or, if the voter is unable to enter the polling place, is voting at the polling place entrance or curb.

Oath Required Before Providing Assistance

C.S.S.B. 1 revises the oath required to be taken by a person selected to provide assistance to a voter by including a specification in the oath language that the person is swearing or affirming the oath under penalty of perjury and by doing the following:
- clarifying that the person required to take the oath before providing the assistance is a person other than an election officer;
- requiring the person taking the oath to swear or affirm that the voter being assisted represented that the voter is eligible to receive assistance because of a physical disability that renders the voter unable to write or see or an inability to read the language in which the ballot is written;
- requiring the person taking the oath to swear or affirm that the person will confine the assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot;
- removing the requirement for the person taking the oath to swear or affirm that the person will confine the assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties;
- requiring the person taking the oath to swear or affirm that the person did not pressure or coerce the voter into choosing the person to provide assistance;
- requiring the person taking the oath to swear or affirm that the person will not communicate information about how the voter has voted to another person; and
- requiring the person taking the oath to swear or affirm that the person understands that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted.

Unlawfully Assisting Voter Voting Ballot by Mail

C.S.S.B. 1, with regard to the offense of unlawfully assisting a voter voting a ballot by mail, requires a person who lawfully assists a voter in preparing a ballot to be voted by mail, in addition to the statutorily required entry of the person's signature, printed name, and residence address on the official carrier envelope of the voter, to also enter the following information on the envelope:
- the relationship of the person providing the assistance to the voter; and
- whether the person received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee in exchange for providing assistance.

Under current law, it is a state jail felony offense, with a penalty enhancement in certain circumstances, for a person who assists a voter in preparing a ballot to be voted by mail to knowingly:

- fail to sign the required written oath that is part of the certificate of the official carrier envelope of the ballot; or
- fail to enter the required information on the official carrier envelope.

Current law provides an exemption from the application of both elements of this offense if the person providing the assistance is related to the voter within the second degree by affinity or the third degree by consanguinity or was physically living in the same dwelling as the voter at the time of the event.

C.S.S.B. 1 provides a new exemption from the application of both elements of this offense if the voter is a person with a disability being assisted by a previously known attendant or caregiver.

With regard to the element of the offense of knowingly failing to enter the required information on the official carrier envelope, C.S.S.B. 1 eliminates:
- the current exemption from applicability of this offense for such a person who was physically living in the same dwelling as the voter at the time of the event; and
- the current penalty enhancement, in certain circumstances, for this conduct.

Unlawful Compensation for Assisting Voters

C.S.S.B. 1 changes the offense for unlawful compensation for assisting voters and the punishment for that offense by doing the following:
- removing the following as conduct constituting the offense:
  - compensating another person for assisting voters, as part of any performance-based compensation scheme based on the number of voters assisted or in which another person is presented with a quota of voters to be assisted;
  - engaging in another practice that causes another person's compensation from or employment status with the person to be dependent on the number of voters assisted; and
  - accepting compensation for either of those activities with knowledge that accepting compensation for such activity is illegal;
- providing that the following conduct instead constitutes the offense:
  - compensating or offering to compensate another person for unlawfully assisting voters; or
  - soliciting, receiving, or accepting compensation for unlawfully assisting voters;
- repealing the misdemeanor punishment for the offense and removing the penalty enhancement for two or more previous convictions of the offense;
- making the penalty for the revised offense a state jail felony without regard to the number of previous convictions; and
- revising the definition of compensation for purposes of the offense to provide that the term means an economic benefit as defined by a specified Penal Code provision.

The bill exempts from application of the offense a person assisting a voter who is an attendant or caregiver previously known to the voter.

Official Carrier Envelope for Early Voting Ballot

C.S.S.B. 1 requires an official carrier envelope for an early voting ballot to contain spaces on the reverse side of the envelope for indicating the relationship to the voter of a person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier.

**Fraud and Other Unlawful Practices**

Verifying False Information in an Affidavit

C.S.S.B. 1 creates a state jail felony offense for an election judge who knowingly provides a voter with a form for an affidavit to verify the voter's identity for the purpose of being accepted

for voting if the form contains false information the judge entered on the form knowing it was false.

<u>Unlawfully Prohibiting an Employee From Voting</u>

C.S.S.B. 1 expands the conduct that constitutes the offense of unlawfully prohibiting an employee from voting to include the following:
- knowingly refusing to permit an employee to be absent from work to vote early in person; and
- knowingly subjecting or threatening to subject the employee to a penalty for such an absence.

The bill exempts from application of the offense a person whose conduct occurs in connection with an election in which the polls are open while early voting is in progress for voting for two consecutive hours outside of the voter's working hours.

<u>Election Fraud</u>

C.S.S.B. 1 does the following with respect to the offense of election fraud:
- revises the constituent conduct of an offense of election fraud involving any knowing or intentional effort to influence the independent exercise of the vote of another in the presence of the ballot or during the voting process to include the following as such constituent conduct:
  - altering the ballot of another; or
  - otherwise causing a ballot to not reflect the intent of the voter;
- expands the conduct constituting the offense of election fraud to include knowingly or intentionally making any effort to do the following:
  - prevent a voter from casting a legal ballot in an election in which the voter is eligible to vote; or
  - provide false information to a voter with the intent of preventing the voter from voting in an election in which the voter is eligible to vote; and
- enhances the penalty for the offense from a Class A misdemeanor to a state jail felony if the person committed the offense while acting in the person's official capacity as an election officer.

<u>Vote Harvesting</u>

C.S.S.B. 1 creates the third degree felony offense of vote harvesting for a person who does the following:
- directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit;
- directly or through a third party, knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services; or
- knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services.

The bill exempts from application of the offense the following:
- an activity not performed in exchange for compensation or a benefit;
- interactions that do not occur in the presence of the ballot or during the voting process;
- interactions that are not conducted in-person with a voter; or
- activity that is not designed to deliver votes for or against a specific candidate or measure.

For purposes of the offense, the bill defines "benefit" by reference to the Penal Code to mean anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested and defines "vote harvesting services" to mean in-person interaction with one or more voters, in the presence of the ballot or during the voting process, intended to deliver votes for a specific candidate or measure. The bill further specifies the following:

- if conduct constituting the offense also constitutes another offense, the actor may be prosecuted for either offense or both offenses; and
- records necessary to investigate the offense or any other Election Code offense must be provided by an election officer in an unredacted form to a law enforcement officer upon request and are not subject to public disclosure.

<u>Unlawful Solicitation and Distribution of Application to Vote by Mail</u>

C.S.S.B. 1 creates a state jail felony offense for a public official who knowingly, while acting in an official capacity, does the following:

- solicits the submission of an application to vote by mail from a person who did not request an application;
- distributes an application to vote by mail to a person who did not request the application, unless the distribution is expressly authorized by the Election Code or access was provided to an application to vote by mail from a publicly accessible website;
- authorizes or approves the expenditure of public funds to facilitate third-party distribution of an application to vote by mail to a person who did not request the application; or
- completes any portion of an application to vote by mail and distributes the application to an applicant unless the public official engaged in the conduct while lawfully assisting the applicant.

The bill exempts from application of the offense a public official who provided general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public or who engaged in the applicable conduct while acting in the official's capacity as a candidate for a public office. The bill also establishes the following:

- a remedy provided under the Election Code with regard to provisions establishing certain miscellaneous offenses is cumulative and does not restrict any other remedies provided by the Election Code or by law; and
- a violation for the unlawful solicitation and distribution of an application to vote by mail is subject to injunctive relief or mandamus as provided by the Election Code.

<u>Unlawful Distribution of Early Voting Ballots and Balloting Materials</u>

C.S.S.B. 1 creates a Class A misdemeanor offense for an early voting clerk or other election official who knowingly mails or otherwise provides an early voting ballot by mail or other early voting by mail ballot materials to a person who the clerk or official knows did not submit an application for the ballot.

<u>Perjury in Connection with Certain Election Procedures</u>

C.S.S.B. 1 creates a state jail felony offense for a person who makes a false statement or swears to the truth of a false statement previously made while making the oath required of a person selected to provide assistance to a voter.

<u>Unlawful Altering of Election Procedures</u>

C.S.S.B. 1 prohibits a public official from creating, altering, modifying, waiving, or suspending any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by the Election Code.

**Enforcement**

<u>Prioritizing Certain Election Proceedings</u>

C.S.S.B. 1 amends the Government Code to establish procedures regarding the prioritization of certain election proceedings. The bill requires the Texas Supreme Court or a court of appeals to

prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief or for a writ of mandamus under Election Code provisions governing criminal investigations and other enforcement proceedings pending or filed in the court on or after the 70th day before a general or special election. The bill requires a trial court to make the same prioritization, except for a criminal case in which the death penalty has been or may be assessed or when it would otherwise interfere with a constitutional right. The bill provides for hearings and oral arguments in prioritized elections proceedings to be held or given in person or through electronic means.

<u>Assignment and Docketing of Prioritized Election Proceedings; Related Criminal Offenses</u>

C.S.S.B. 1 requires a prioritized election proceeding filed in a court of appeals to be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system. The bill creates a Class A misdemeanor for a person, including a public official as defined by the bill for purposes of this provision, who communicates with a court clerk with the intention of influencing or attempting to influence the composition of a three-justice panel.

C.S.S.B. 1 requires the clerk of a district court in which a prioritized election proceeding is filed and the clerk of a county court or statutory county court in which such a proceeding is filed to respectively docket the proceeding and, if more than one applicable court in the county has jurisdiction over the proceeding, randomly assign the proceeding to an applicable court using an automated assignment system.

C.S.S.B. 1 creates a Class A misdemeanor for a person, including a public official, who communicates with a county or district clerk with the intention of influencing or attempting to influence the court or judge assigned to such a proceeding. The bill enhances the penalty to a state jail felony if it is shown on the trial of the offense that the person committed the offense while acting in the person's official capacity as an election official. A person may seek from the Texas Supreme Court or a court of appeals a writ of mandamus to compel compliance if a district or county clerk does not comply with these provisions requiring the assignment of such a proceeding.

<u>Deadlines in Prioritized Election Proceedings</u>

C.S.S.B. 1 requires a judge of a county court or statutory county court to whom a prioritized election proceeding is assigned who wishes to be recused from the proceeding to do the following not later than 24 hours after the proceeding is filed:
- hear an application for any emergency temporary relief sought;
- grant or deny any emergency temporary relief sought; and
- set a scheduling order that provides the following:
  - a date for a hearing on any injunction sought not later than five days after the date on which the proceeding was filed; and
  - discovery and deposition deadlines before the expiration of any emergency relief order entered.

The bill requires the presiding judge of an administrative region to assign a new judge to the proceeding not later than 12 hours after the original judge is recused. The bill requires a final order in an injunction proceeding to be submitted in writing to the parties not later than 24 hours after the judge makes a final determination in the proceeding. A person may seek from the Texas Supreme Court, the court of criminal appeals, or a court of appeals a writ of mandamus to compel compliance if a district judge does not comply with these provisions setting deadlines in certain election proceedings. In addition, a proceeding relating to a permanent injunction being sought in connection to a challenge of an application for a place on the ballot may be heard after the primary election has been canvassed.

**Ineligible Voters and Related Reforms**

C.S.S.B. 1 amends the Code of Criminal Procedure to require a court, after a defendant is adjudged guilty of a felony offense, to make an affirmative finding that the person has been found guilty, enter the finding in the judgment of the case, and instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in Texas. The bill requires an applicable judgment to reflect that affirmative finding and instruction.

C.S.S.B. 1 amends the Election Code to expand the conduct constituting the offense of illegal voting to include knowingly voting or attempting to vote in an election in Texas after voting in another state in an election in which a federal office appears on the ballot and the election day for both states is the same day. The bill provides the following:

- a person may not be convicted of illegal voting solely upon the fact that the person signed a provisional ballot affidavit unless corroborated by other evidence that the person knowingly committed the offense;
- this prohibition applies to an illegal voting offense committed before, on, or after the bill's effective date, except that a final conviction for the offense that exists on the bill's effective date remains unaffected; and
- if conduct constituting the offense of illegal voting, as expanded by the bill, also constitutes another offense under any other law, the actor may be prosecuted for either offense or both offenses.

**Repealed Provisions**

C.S.S.B. 1 repeals the following provisions of the Election Code:

- Section 85.062(e); and
- Section 86.0105(b).

**Transition Provisions**

C.S.S.B. 1 does the following with respect to the changes to the law made by its provisions:

- except as otherwise provided by the bill, limits the application of its changes only to an offense committed on or after the bill's effective date. The bill provides that an offense committed before the bill's effective date is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. The bill provides that an offense was committed before the bill's effective date if any element of the offense occurred before that date;
- limits the application of its changes only to an election ordered on or after the bill's effective date. The bill provides that an election ordered before the bill's effective date is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose;
- limits the application of its changes only to an application to vote an early voting ballot by mail submitted on or after the bill's effective date. The bill provides that an application to vote an early voting ballot by mail submitted before the bill's effective date is governed by the law in effect when the application was submitted, and the former law is continued in effect for that purpose; and
- limits the application of its changes only to an application for voter registration submitted on or after the bill's effective date.

## EFFECTIVE DATE

91st day after the last day of the legislative session.

## COMPARISON OF SENATE ENGROSSED AND SUBSTITUTE

While C.S.S.B. 1 may differ from the engrossed in minor or nonsubstantive ways, the following summarizes the substantial differences between the engrossed and committee substitute versions of the bill.

**Caption**

The substitute changes the bill's caption to remove a reference to civil penalties.

**General Provisions**

The substitute includes the following provisions, which were not present in the engrossed:
- a short title;
- a provision establishing the bill's purpose;
- a provision setting out legislative findings;
- a provision establishing legislative intent and a requirement for election officials and other public officials to strictly construe the provisions of the Election Code to effect that intent; and
- a provision making general principles of criminal responsibility under the Penal Code applicable to offenses prescribed by the Election Code.

**Voter Registration**

While both the engrossed and substitute require contents of a voter registration application to be supplied by the person desiring to register to vote, the substitute requires all the contents to be supplied by the person whereas the engrossed required only the following contents to be supplied by the person:
- a statement that the applicant is a U.S. citizen;
- a statement that the applicant is a resident of the applicable county;
- a statement that the applicant has not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or to be partially mentally incapacitated without the right to vote;
- a statement that the applicant has not been finally convicted of a felony or that the applicant is a felon eligible for registration as a voter; and
- the following information:
  - the applicant's Texas driver's license number or the number of a personal identification card issued by the Department of Public Safety (DPS);
  - if the applicant has not been issued either number described, the last four digits of the applicant's social security number; or
  - a statement by the applicant that the applicant has not been issued any of the specified numbers.

Whereas the engrossed requires a county registrar to forward notice of a change in registration information by a voter that indicates the voter no longer resides in the county in which the voter is registered to the registrar in the county in which the voter resides along with the voter's application for registration, the substitute requires the registrar forward the voter's original application for registration.

The substitute does not include the following provisions regarding voter registration, which were present in the engrossed:
- with respect to cancellation of voter registration because of citizenship status, a requirement for the secretary of state to enter into an agreement with DPS under which information in the statewide computerized voter registration list is compared against information in the DPS database on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications;
- with respect to the preceding requirement, the following provisions:

- o   a provision restricting the comparison to a voter's information in the DPS database that was derived from documents presented by the voter to DPS after the person's current voter registration became effective; and
- o   a prohibition against the consideration of information derived from documents presented before the person's current voter registration became effective;
- a requirement for the secretary of state to prescribe rules for the administration of voter registration cancellation procedures because of citizenship status;
- a requirement for the secretary of state, not later than December 31 of each year, to provide a report to the legislature of the number of voter registrations canceled due to voter registration cancellation procedures during the calendar year;
- a requirement for the voter registrar, after receiving notification of persons who have indicated a lack of citizenship status in connection with a motor vehicle or DPS record, to deliver to the applicable voter a written notice requiring the voter to submit to the voter registrar proof of U.S. citizenship in the form of a certified copy of the voter's birth certificate, U.S. passport, certificate of naturalization, or any other form prescribed by the secretary of state;
- a requirement for the secretary of state to compare quarterly with the statewide computerized voter registration list the information received under provisions relating to the compilation of a list containing the name and address of each person who is excused or disqualified from jury service because the person is not a resident of the county;
- a requirement for the secretary of state to send to the following a notice of a determination that a voter on the compiled list of nonresidents has been excused or disqualified from jury service because the voter is not a resident of the county in which the voter is registered to vote:
  - o   the voter registrar of the counties considered appropriate by the secretary; and
  - o   the attorney general;
- a requirement for the secretary of state to send a notice of a determination that a voter on the statewide computerized voter registration list is deceased or has been excused or disqualified from jury service because the voter is not a citizen to the attorney general, in addition to the voter registrar of the counties considered appropriate by the secretary as required under current law;
- a requirement for the attorney general to quarterly review the information sent by the secretary of state after the applicable notifications to investigate whether a person has committed an offense of making a false statement on a voter registration application or under other law;
- a provision establishing that the secretary of state is not required to send notice of the applicable determination that a voter on the registration list has been excused or disqualified from jury service for a voter who is subject to an exemption from jury service if that exemption is the only reason the voter is excused from jury service;
- a provision that includes the attorney general among the monthly recipients of the list of persons excused or disqualified because of citizenship in the previous month that is provided for purposes of an investigation of whether the person committed an offense of making a false statement on a voter application or under other law; and
- a provision containing the following, with respect to a comparison of information regarding ineligibility:
  - o   a requirement for a court clerk on the third business day of each month to send a copy of the list of persons excused or disqualified in the previous month because the persons do not reside in the county to the secretary of state and the attorney general and to either the county or district attorney for an investigation of whether the person committed an offense of making a false statement on a voter application or under other law; and
  - o   a prohibition against the use of a list compiled under provisions regarding such a comparison for a purpose other than the comparison of information regarding ineligibility, in addition to the prohibitions described in current law against using the information for purposes other than compiling a list of nonresidents or maintaining a suspense list.

The substitute does not include the provision, which was included in the engrossed, that revises current law with respect to the required prompt referral of a complaint to the attorney general by the secretary of state after the secretary receives a complaint alleging criminal conduct in connection with an election and determines that there is reasonable cause to suspect that the alleged criminal conduct occurred. That excluded provision revises the referral requirement as follows:

- rather than requiring prompt referral after receiving a complaint, as current law provides, the excluded provision instead requires prompt referral after the secretary receives or discovers information indicating that criminal conduct in connection with an election has occurred;
- rather than requiring only the delivery by the secretary to the attorney general of all pertinent documents in the secretary's possession, as current law provides, the excluded provision also requires the delivery of all pertinent information in the secretary's possession; and
- the revised requirement in the excluded provision specifies that, in addition to documents applicably submitted under current law, information so submitted is also not considered public information until the following occur:
  - the secretary of state makes a determination that the information received does not warrant an investigation; or
  - if referred to the attorney general, the attorney general has completed the investigation or has made a determination that the information referred does not warrant an investigation.

**Conduct and Security of Elections**

The substitute includes the following provisions regarding the conduct and security of elections, including related conforming provisions, which were absent from the engrossed:

- a provision requiring, rather than authorizing as provided by current law, the governing body of a political subdivision, on receipt of certification that a candidate is unopposed for election to an office, to declare by order or ordinance the unopposed candidate elected to the office;
- a provision requiring, rather than authorizing as provided by current law, a certifying authority to declare an unopposed candidate elected to an office of the state or county government if, were the election held, only the votes cast for that candidate may be counted; and
- a provision expanding the eligibility criteria for participation in the countywide polling place program to include counties that, in addition to meeting the other eligibility criteria in current law, use ballot marking devices, hand-marked scannable paper ballots that are printed and scanned at the polling place, or any other voting system equipment the secretary of state determines is capable of processing votes for each type of ballot to be voted in the county.

While both the engrossed and substitute change the regular hours for early voting by personal appearance at the main early voting polling place for an election in which the county clerk is the early voting clerk, the engrossed prohibited such early voting from being conducted later than 9 p.m. whereas the substitute prohibits early voting from being conducted later than 10 p.m. The engrossed also prohibited early voting from being conducted earlier than 6 a.m. or later than 9 p.m. on the last Sunday of the early voting period, whereas the substitute prohibits early voting from being conducted earlier than 9 a.m. or later than 10 p.m. on the last Sunday of the early voting period.

While both the engrossed and substitute lower the minimum county population threshold that triggers the requirement for a county to conduct voting during the early voting period with extended hours in certain elections, the engrossed lowered the population threshold to 30,000 whereas the substitute lowers the population threshold to 55,000.

While both the engrossed and substitute prohibit a temporary branch polling place, with respect to early voting, from being located in a movable structure in the general election for state and county officers, general primary election, or runoff primary election, the engrossed included the following provisions, which are absent in the substitute:

- a prohibition against a polling place established in those elections being located in a tent or similar temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles;
- an exception to that prohibition based on whether a building selected for such a polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use; and
- provisions establishing that the determination is valid only for the next scheduled election and requiring the county commissioners court to send a record of that determination to the secretary of state.

The substitute does not include the following provisions with respect to a polling place inside a public building, which were present in the engrossed:

- a prohibition against a polling place being located in a tent or similar temporary moveable structure or in a facility primarily designed for motor vehicles;
- a prohibition against an early voting permanent branch polling place being located in a tent or similar temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles;
- exceptions to those prohibitions based on whether a building selected for such a polling place is later determined by the commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use, whether a suitable substitute building is available, and whether the tent or similar temporary movable structure is adjacent to the selected building; and
- provisions establishing that the determination is valid only for the next scheduled election and requiring the county commissioners court to send a record of that determination to the secretary of state.

The substitute does not include the following provisions with respect to the opening and closing of a polling place, which were present in the engrossed:

- a requirement for a presiding election judge or alternate election judge, immediately before opening the polls for voting on the first day of early voting and on election day, to confirm that each voting machine has any public counter reset to zero and to print the tape that shows the counter was set to zero for each candidate or measure on the ballot;
- a requirement for either judge, immediately after closing the polls for voting on election day, to print the tape to show the number of votes cast for each candidate or ballot measure for each voting machine; and
- a requirement for each election judge or alternate election judge present to sign any printed tape.

The substitute does not include a specification that the register of spoiled ballots required to be maintained by an election officer at the polling place must include spoiled ballots from a direct recording electronic voting unit, whereas the engrossed did.

Whereas the engrossed required the secretary of state to adopt rules and create a checklist or similar guidelines to assist the presiding judge of a polling place in processing forms and conducting procedures at the opening and closing of the polling place, the substitute limits the applicability of these procedures to only the closing of a polling place.

The substitute does not include the following provisions, with respect to the delivery by an election clerk of records or supplies and certain chain of custody procedures, which were included in the engrossed:

- a requirement for a presiding judge of a polling place, if the presiding judge designates a clerk to deliver election supplies, to attest to the designation;
- a requirement that the clerk attest to the clerk's acceptance of the responsibility; and
- a requirement for the secretary of state to create and promulgate a form to facilitate compliance with those requirements of the presiding judge and clerk.

The substitute does not include the following provisions, with respect to the security of voted ballots, which were included in the engrossed:
- a provision requiring a licensed peace officer, rather than a guard as specified by current law, to be posted by the general custodian of election records at a central counting station for purposes of ensuring the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station;
- a provision requiring the general custodian of election records in a county to implement a video surveillance system that retains a record of all areas containing voted ballots as follows:
  o from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns; and
  o from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns;
- a provision requiring such a video to be made available to the public by a livestream; and
- a provision classifying such video as an election record under the Election Code and setting the required retention period of the video.

**Election Officers and Observers**

The substitute does not include a provision included in the engrossed providing that a reference to an early voting ballot board includes a signature verification committee in statutory provisions of Chapter 33, Election Code, governing watchers.

The substitute does not include the following provisions regarding election officers and observers, which were present in the engrossed:
- requirements for the secretary of state to publish and maintain a training manual for watchers and to make the manual available on the secretary of state's website;
- a requirement for an appointing authority to provide each watcher appointed by the authority with a copy of the training manual;
- a provision that makes communications between a public official and a voting systems vendor public information, including a communication made confidential by other law, with certain exceptions for trade secrets, certain commercial or financial information, and certain proprietary information;
- a requirement for the manager of a central counting station located in a county with a population of 250,000 or more and the presiding judge of such a counting station to do the following:
  o develop a protocol under which any electronic device inside the central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device; and
  o ensure that the input and activity tracked by the software is printed and delivered to the secretary of state not later than the fifth day after vote counting is complete;
- a prohibition against the purchase or use after January 1, 2024, by an authority operating a central counting station of a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified;
- a requirement for the presiding judge of a central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots; and

- a requirement for the secretary of state to create and promulgate rules and a form to facilitate compliance with the foregoing requirement, which must be posted on a website maintained by the county along with election returns and results.

The substitute omits provisions from the engrossed regarding the composition of, and appointment of members to, a county's early voting ballot board that did the following:

- established the position of alternate presiding judge as one of the mandatory board members;
- required the names submitted by each applicable county political party chair of persons eligible to serve on the board to be in order of the chair's preference; and
- required the appointment of persons as board members to be made in order of preference indicated on each list, with the person appointed as the presiding judge being the highest-ranked person on the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election and the person appointed as the alternate presiding judge being the highest-ranked person on the list provided by the political party whose nominee for governor received the second most votes in the county in the most recent gubernatorial general election.

Accordingly, the substitute also omits provisions of the engrossed giving alternate presiding judges the authority to appoint clerks to serve at the county's central counting station.

The substitute omits provisions from the engrossed regarding the composition of, and appointment of members to, a signature verification committee that did the following:

- established the position of vice chair of the committee;
- required the names submitted by each applicable county political party chair of persons eligible to serve on the committee in be in order of the chair's preference;
- required the appointment of persons as committee members to be made in order of preference indicated on each list, with the person appointed as committee chair being the highest-ranked person on the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election and the person appointed as vice chair being the highest-ranked person on the list provided by the political party whose nominee for governor received the second most votes in the county; and
- required a person to be eligible under state law for service as a presiding election judge to be eligible to serve on the committee.

While both the engrossed and the substitute create a misdemeanor offense for an election officer who intentionally or knowingly refuses to accept a watcher for service when acceptance of the watcher is required by law, the engrossed made it a Class A misdemeanor but the substitute makes it a Class B misdemeanor.

While both the engrossed and the substitute authorize the appointing authority for a watcher who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties to seek certain injunctive relief, certain writs of mandamus, and any other remedy available under law, the substitute does not include the following provisions, which were present in the engrossed:

- an authorization for the watcher to seek the same injunctive relief, writs of mandamus, and any other remedy available under law; and
- a provision establishing that the same injunctive relief, writs of mandamus, and any other remedy available under law are available to a state inspector appointed by the secretary of state for an election and to any other election inspector authorized by law.

However, the substitute includes an authorization, which was absent from the engrossed, for the secretary of state to seek the same injunctive relief, writs of mandamus, and any other remedy available under law if the secretary believes that a state inspector was unlawfully prevented or obstructed from the performance of the inspector's duties.

87S2 1054                                                                                           21.236.233
Substitute Document Number: 87S2 0907

The substitute includes the following provisions regarding election officers and observers, which were absent from the engrossed:

- a provision prohibiting a presiding judge from having a watcher duly accepted for service removed from the polling place for violating a provision of the Election Code, the Penal Code, or any other provision of law relating to the conduct of elections, unless the violation was observed by an election judge or clerk after the watcher was previously warned that the watcher's conduct violated the law;
- an authorization for a presiding judge to call a law enforcement officer to request that a poll watcher be removed if the poll watcher commits a breach of the peace or a violation of law;
- a provision setting out the purpose of provisions governing appointed watchers and establishing as the intent of the legislature that watchers duly accepted for service under such provisions:
  - o be allowed to observe and report on irregularities in the conduct of any election; and
  - o may not interfere in the orderly conduct of an election; and
- a requirement for watchers, in order to effect the purpose of the applicable provisions, to observe without obstructing the conduct of an election and to call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of the election.

**Voting by Mail**

While both the engrossed and substitute require an applicant's signature on an application for an early voting ballot by mail to be submitted in writing using ink on paper and while both also prohibit the use of a photocopied signature, the substitute includes a clarification absent from the engrossed that the signing of the application is subject to signing by a witness on the grounds of disability or illiteracy.

The substitute does not include the following provisions regarding voting by mail, which were present in the engrossed:

- a provision prohibiting the early voting clerk from making an attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party;
- a provision prohibiting an officer or employee of the state or of a political subdivision of the state from doing the following:
  - o distributing an application form for an early voting ballot to a person who did not request an application, unless authorized by the Election Code; or
  - o using public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application;
- an authorization for a political party or a candidate for office to distribute an application form for an early voting ballot to a person who did not request an application;
- an authorization for an election judge to permit a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with applicable law but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge to vote only a provisional ballot; and
- a provision requiring the tool used for the electronic tracking of an application for a ballot to be voted by mail or the ballot itself to allow a voter to add or correct certain required personally identifying information.

While both the engrossed and substitute expand the required contents of an application for an early voting ballot by mail and the carrier envelope of the ballot:

- the substitute does not include the number of an election identification certificate among the contents nor does it provide for the use of the number of an expired election

identification certificate, whereas the engrossed provided for the use of the numbers of both an election identification certificate and an expired certificate; and

- the substitute requires the early voting clerk to reject the application if the expanded application contents required by the substitute do not match the information on the applicant's application for voter registration, whereas the engrossed required the early voting clerk to reject the application if the expanded application contents required by the engrossed do not identify the same voter identified on the applicant's application for voter registration.

With regard to the provisions that are contained in both the engrossed and the substitute regarding the opportunity to correct an applicable defect with an early voting ballot voted by mail:

- the engrossed included among the defects that may be corrected certain personally identifying information newly required by the engrossed that is missing from or provided incorrectly on the ballot;
- the engrossed made it optional for a signature verification committee or early voting ballot board to provide the opportunity to correct a defect by returning the ballot to the voter by mail or by notifying the voter of the defect before deciding whether to accept or reject the ballot, whereas the substitute requires both entities to provide the opportunity to correct the defect and take those actions;
- with respect to that requirement, the substitute sets a deadline not included in the engrossed to require those actions to be taken not later than the second business day after discovering the described defect before making the decision;
- whereas the engrossed authorized the committee or board to inform the voter that the voter may come in person to the early voting clerk's office to correct the defect or request to have the voter's application to vote by mail canceled, the substitute instead requires the voter be notified that the voter may request the cancellation under existing statutory provisions or come to the early voting clerk's office in person to correct the defect;
- the substitute includes a six-day time frame after election day, which is absent from the engrossed, during which the voter may correct the defect in person; and
- the substitute includes provisions, which were absent from the engrossed, prohibiting the committee or board from finally rejecting an early voting ballot voted by mail before the seventh day after election day for the following statutory provisions for accepting such a ballot:
  - the carrier envelope certificate is properly executed;
  - neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness; or
  - for a voter to whom a statement of residence form was required to be sent, the statement of residence is returned in the carrier envelope and indicates that the voter satisfies prescribed residence requirements.

The engrossed provided that a ballot may be accepted only if, among other requirements for acceptance, the applicable information provided by the voter identifies the same voter identified on the voter's application for voter registration, in which case the signature on the ballot application and on the carrier envelope must be rebuttably presumed to be the signatures of the voter. However, the substitute provides that a ballot may be accepted only if, among other requirements for acceptance, the applicable information matches the information on the voter's application for voter registration and also provides for the rebuttable presumption.

Both the engrossed and the substitute make the same revisions to current law whereby the early voting ballot board, in determining whether to accept a ballot, may compare any known signature of the voter on file with the county clerk or voter registrar. However, the substitute also includes in that revision to current law a requirement, which is absent from the engrossed, for an early voting ballot board, in order to determine whether the signatures on a ballot application and the carrier envelope certificate are those of the voter, to request from DPS any

signature of the voter's on file with DPS and to compare the signatures of the voter on the ballot application and the carrier envelope certificate with any signature provided.

**Assistance of Voters**

The substitute does not include the following provisions, which were present in the engrossed, regarding the assistance of voters who are unable to enter a polling place without personal assistance or likelihood of injuring the voter's health:

- a provision excluding the voting procedures for assisting a voter unable to enter a polling place from the regular voting procedures that an election officer may modify to the extent necessary to conduct voting under provisions relating to a voter unable to enter a polling place;
- a provision entitling a poll watcher to observe any activity conducted in the assistance of a voter unable to enter a polling place, except while the voter is preparing the voter's ballot or is being assisted by a person of the voter's choice;
- a requirement for a person who simultaneously assists three or more voters voting as a voter unable to enter a polling place by providing the voters with transportation to the polling place to complete and sign a form provided by an election officer that contains the person's name and address and whether the person is providing certain types of assistance;
- a requirement that the secretary of state prescribe the aforementioned form;
- a provision excepting a person providing the transportation from the requirement to complete and sign the form if the person is related to each voter within the second degree by affinity or the third degree by consanguinity; and
- provisions setting out the following requirements with respect to the form:
  - a completed form must be delivered to the secretary of state as soon as practicable;
  - the secretary must retain a form so delivered for the period for preserving the precinct election records; and
  - the secretary must make the form available to the attorney general for inspection upon request.

While both the engrossed and substitute revise the required oath for a person selected to provide assistance to a voter, the substitute includes the following specification and requirement in the oath that were absent from the engrossed:

- with respect to the requirement in both the engrossed and substitute that the person taking the oath swear or affirm that the voter being assisted represented to the person that the voter is eligible to receive assistance, a specification that such eligibility is because of a physical disability that renders the voter unable to write or see or an inability to read the language in which the ballot is written; and
- a requirement for the person taking the oath to swear or affirm that the person will confine the person's applicable assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot.

The substitute does not include the requirement present in the engrossed for the person taking the oath to swear or affirm that the person did not encourage the voter into choosing the person to provide assistance.

While both the engrossed and the substitute revise the offense of unlawfully assisting a voter casting a ballot by mail, the substitute also includes in that revision an exemption from the application of both elements of the offense, as revised by the engrossed and the substitute, if the voter is a person with a disability being assisted by a previously known attendant or caregiver.

The substitute, in provisions absent from the engrossed, changes the conduct constituting the offense of unlawful compensation for assisting voters, repeals the misdemeanor punishment for the offense, changes the punishment for that revised offense to make it a state jail felony without

regard to the number of previous convictions, and exempts from the application of the offense a person assisting a voter who is an attendant or caregiver previously known to the voter.

The substitute omits provisions of the engrossed requiring the conduct of a study by the secretary of state regarding the implementation of educational programs, including the production and publication on the secretary's website of instructional videos, to help voters with disabilities understand how to use voting systems used in Texas.

**Fraud and Other Unlawful Practices**

The substitute includes the following provisions regarding fraud and other unlawful practices, all of which were absent from the engrossed:
- a provision revising and expanding certain conduct constituting the offense of election fraud and enhancing the penalty for the offense from a Class A misdemeanor to a state jail felony if the person committed the offense while acting in the person's official capacity as an election officer; and
- provisions creating the following offenses and their related penalties:
  - unlawful solicitation and distribution of application to vote by mail, which is a state jail felony;
  - unlawful distribution of early voting ballots and balloting materials, which is a Class A misdemeanor; and
  - perjury in connection with certain election procedures, which is a state jail felony.

Both the engrossed and the substitute create the third degree felony offense of vote harvesting with the same constituent conduct and set out the same provisions regarding prosecution of the offense and certain records necessary for an applicable investigation. However, the engrossed and the substitute differ with respect to vote harvesting provisions as follows:
- the substitute does not include the following, which were present in the engrossed:
  - the civil liability for vote harvesting; and
  - a provision establishing the circumstances under which compensation in exchange for vote harvesting services is inferred for purposes of the offense;
- with respect to differences in the exemptions from application of the offense:
  - the engrossed exempted interactions that do not directly involve an official ballot, ballot by mail, or an application for ballot by mail; and
  - the substitute exempts interactions that do not occur in the presence of the ballot or during the voting process; and
- with respect to the differences in the definitions of "benefit" and "vote harvesting services," which are in both the engrossed and the substitute and are applicable to the offense:
  - the engrossed defined "benefit" as anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person;
  - the substitute defines "benefit" by reference to the Penal Code as anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested;
  - the engrossed defined "vote harvesting services" as in-person interaction with one or more voters, in the physical presence of an official ballot, a ballot voted by mail, or an application for ballot by mail, intended to deliver votes for a specific candidate or measure; and
  - the substitute defines "vote harvesting services" as in-person interaction with one or more voters, in the presence of the ballot or during the voting process, intended to deliver votes for a specific candidate or measure.

**Enforcement**

The substitute does not include the following enforcement provisions, which were present in the engrossed and which relate to the secretary of state's duty under current law to monitor each voter registrar for substantial compliance with requirements regarding the statewide voter registration list:

- the provision requiring the secretary of state to monitor each voter registrar for substantial compliance with provisions, as revised by the engrossed, regarding the cancellation of a voter registration because of citizenship status;
- the provision requiring a voter registrar to correct a violation within 30 days of receiving applicable notice;
- the provision requiring the secretary of state to correct the violation on behalf of the registrar and to notify the attorney general that the registrar failed to correct the violation if a registrar fails to correct such a violation;
- a provision making a county served by a registrar who fails to correct such a violation liable to the state for a civil penalty of $1,000 for each violation corrected by the secretary of state;
- a provision authorizing the attorney general to bring an action to recover such a civil penalty; and
- a requirement for each such civil penalty collected by the attorney general to be deposited in the state treasury to the credit of the general revenue fund.

The substitute does not include the following provisions, which were present in the engrossed, and which establish restrictions on the eligibility to serve as an election official and provide a related civil penalty:

- a provision prohibiting a person from serving as an election official, as defined by the engrossed, if the person has been finally convicted of an Election Code offense; and
- a provision establishing that such an election official may be liable to the state for a civil penalty, which may include termination of the official's employment and loss of the official's employment benefits, if the official is employed by or is an officer of the state or a political subdivision of the state and violates an Election Code provision.

The substitute omits the provision of the engrossed establishing that an action, including an action for a writ of mandamus, alleging that an election officer violated a provision of the Election Code while acting in their official capacity may only be brought against the officer in their official capacity.

The substitute does not include the following provisions, which were present in the engrossed, with respect to election contests:

- an authorization for the venue of an election contest for a statewide office to take place, rather than only in Travis County, in any county where a contestee resided at the time of the election, as determined by statutory provisions governing the public integrity unit established and supported by the Texas Rangers division of DPS;
- provisions changing the filing deadlines for a petition in certain election contests and clarifying that a contestant must timely deliver a copy of the applicable petition to the secretary of state electronically or otherwise;
- provisions regarding lawsuits alleging improper election activities, including provisions relating to the venue for filing the petition for the action and the filing deadline, liability to the plaintiff for damages, and the award of attorney's fees to the prevailing party;
- an authorization for the court of criminal appeals to issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the provision, sequestration, transfer, or impoundment of evidence in or records relating to a criminal investigation conducted under the Election Code or conducted in connection with the conduct of an election or political party convention; and
- a requirement for such a writ to include an order requiring the provision, sequestration, transfer, or impoundment of the evidence or record.

Whereas the engrossed required the supreme court, the court of criminal appeals, or a court of appeals to prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief or for a writ of mandamus under Election Code provisions governing criminal investigations and other enforcement proceedings pending or filed in the court on or after the 120th day before a general or special election, the substitute requires only the supreme court or a court of appeals to prioritize those proceedings in such a manner, but only those filed in the court on or after the 70th day before a general or special election.

The substitute includes the following provisions regarding the docketing and prioritization of and deadlines in certain election proceedings, which were absent from the engrossed:

- a definition of "public official";
- a requirement for a prioritized election proceeding filed in a court of appeals to be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system;
- a provision creating a Class A misdemeanor offense for a person, including a public official, who communicates with a court clerk with the intention of influencing or attempting to influence the composition of a three-justice panel;
- a requirement for the clerk of a district court in which a prioritized election proceeding is filed and the clerk of a county court or statutory county court in which such a proceeding is filed to respectively docket the proceeding and, if more than one applicable court in the county has jurisdiction over the proceeding, randomly assign the proceeding to an applicable court using an automated assignment system;
- a provision creating a Class A misdemeanor for a person, including a public official, who communicates with a county or district clerk with the intention of influencing or attempting to influence the court or judge assigned to such a proceeding;
- a penalty enhancement for the foregoing offense;
- an authorization for a person to seek from the supreme court or a court of appeals a writ of mandamus to compel compliance if a district or county clerk does not comply with the required docketing of the prioritized election proceedings; and
- provisions regarding deadlines in prioritized election proceedings.

The substitute includes an authorization, which was absent from the engrossed, for a hearing in a prioritized election proceeding to be held in person or through electronic means, as determined by the court.

**Ineligible Voters and Related Reforms**

The engrossed required a court, after a defendant who is 18 years of age or older is adjudged guilty of a felony offense, to make an affirmative finding that the person has been found guilty, enter the finding in the judgment of the case, and instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in Texas. The substitute does not condition these actions on the age of the defendant but instead requires these actions of the court after any defendant is adjudged guilty of a felony offense.

The substitute includes a provision, which was absent from the engrossed, expanding the conduct constituting the offense of illegal voting to include knowingly voting or attempting to vote in an election in Texas after voting in another state in an election in which a federal office appears on the ballot and the election day for both states is the same day and providing the following:

- a provision prohibiting a person from being convicted of illegal voting, as expanded by the substitute, solely upon the fact that the person signed a provisional ballot affidavit unless corroborated by other evidence that the person knowingly committed the offense;
- that prohibition applies to an illegal voting offense committed before, on, or after the bill's effective date, except that a final conviction for the offense that exists on the bill's effective date remains unaffected; and

87S2 1054                                                                           21.236.233
Substitute Document Number: 87S2 0907

- if conduct constituting the offense of illegal voting, as expanded by the substitute, also constitutes another offense under any other law, the actor may be prosecuted for either offense or both offenses.

**Repealer and Transition Provisions**

The substitute does not include the following provisions, which were present in the engrossed:
- a repeal of the authorization for the secretary of state to waive or reinstate at any time for a particular political subdivision requirements regarding the partial count of electronic voting system ballots by the general custodian of elections; and
- a transition provision, which was present in the engrossed, limiting the application of its changes only to an election contest for which the associated election occurred after the bill's effective date.

## BILL ANALYSIS

| | |
|---|---|
| Senate Research Center | C.S.S.B. 1 |
| | By: Hughes |
| | State Affairs |
| | 8/9/2021 |
| | Committee Report (Substituted) |

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

As efforts to identify and prosecute election crimes have intensified, we have gained a better understanding of the ways certain bad actors take advantage of holes in the electoral process to alter the balance of elections, especially at the local level. At the same time, advances in technology have increased the threat of electronic interference with elections, but also the tools available to prevent that interference.

S.B. 1 seeks to address these issues by strengthening poll watcher protection, bringing about transparency by utilizing technology throughout the electoral process, limiting the most common fraudulent practices and opportunities for fraudulent practices, and providing better and more timely evidence in investigations into alleged voter fraud.

(Original Author's / Sponsor's Statement of Intent)

C.S.S.B. 1 amends current law relating to election integrity and security, including by preventing fraud in the conduct of elections in this state; increases criminal penalties; creates criminal offenses; and provides civil penalties.

## RULEMAKING AUTHORITY

Rulemaking authority is expressly granted to the secretary of state in SECTION 1.04 (Section 16.0332, Election Code), SECTION 2.05 (Section 66.004, Election Code), and SECTION 3.11 (Section 127.131, Election Code) of this bill.

## SECTION BY SECTION ANALYSIS

ARTICLE 1. REGISTRATION OF VOTERS

SECTION 1.01. Amends Section 13.002, Election Code, by adding Subsection (c-1), as follows:

(c-1) Requires that the information required under Subsections (c)(3) (relating to a statement that the applicant is a United States citizen), (4) (relating to a statement that the applicant is a resident of the county), (5) (relating to a statement that the applicant has not been determined by a court's final judgment to be mentally incapacitated in a certain manner), (6) (relating to a statement that the applicant has not been finally convicted of a felony or is a felon eligible for voter registration), and (8) (relating to certain information identifying the applicant) be supplied by the person desiring to register to vote.

SECTION 1.02. Amends Section 15.021, Election Code, by amending Subsections (b) and (d) and adding Subsections (d-1) and (d-2), as follows:

(b) Creates an exception under Subsection (d) to the requirement that the voter use the registration certificate or a registration application form as the notice, indicating the correct information in the appropriate space on the certificate or application form unless the voter does not have possession of the certificate or an application form at the time of giving the notice. Makes a nonsubstantive change.

(d) Authorizes a voter, rather than a voter who continues to reside in the county in which the voter is registered, to correct information under Section 15.021 (Notice of Change in Registration Information by Voter) by digital transmission of the information under a program administered by the secretary of state (SOS) and the Department of Information Resources.

(d-1) Requires the voter registrar, if the notice indicates that a voter no longer resides in the county in which the voter is registered, to forward the notice and the voter's application for registration to the registrar of the county in which the voter resides. Requires the registrars to coordinate to ensure that the voter's existing registration is canceled immediately after the voter is registered in the county in which the voter resides in accordance with Subsection (d-2).

(d-2) Requires a voter registrar who receives a voter's notice and application from another registrar under Subsection (d-1) to treat it as an original application for registration under Section 13.002 (Application Required), and to register the voter if the voter resides in the county and is otherwise eligible under Section 13.001 (Eligibility for Registration).

SECTION 1.03. Amends Section 15.028, Election Code, as follows:

Sec. 15.028. New heading: NOTICE OF UNLAWFUL VOTING OR REGISTRATION. Requires the voter registrar, if the registrar determines that a person who is not eligible to vote registered to vote or voted in an election, rather than determines that a person who is not a registered voter voted in an election, to execute and deliver an affidavit stating the relevant facts to certain entities, including the attorney general and SOS. Deletes existing text requiring the registrar, if the election covers territory in more than one county, to also deliver an affidavit to the attorney general. Makes nonsubstantive changes.

SECTION 1.04. Amends Section 16.0332, Election Code, by amending Subsection (a) and adding Subsections (a-1), (d), and (e), as follows:

(a) Requires the voter registrar, after the registrar receives notification under Subsection (a-1) of Section 16.0332 (Cancellation Because of Citizenship Status), Section 18.068 (Comparison of Information Regarding Ineligibility) of this code, or Section 62.113 (Compilation of List of Noncitizens), Government Code, of persons excused or disqualified from jury service because of citizenship status or notification of persons who indicate a lack of citizenship status in connection with a motor vehicle or Department of Public Safety of the State of Texas (DPS) record as provided by Subsection (a-1), rather than after the registrar receives a list under Section 18.068 of this code or Section 62.113, Government Code, of persons excused or disqualified from jury service because of citizenship status, to deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar certain information.

(a-1) Requires SOS to enter into an agreement with DPS under which information in the existing statewide computerized voter registration list is compared against information in the database of DPS on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications. Requires SOS, in comparing information under this subsection, to consider only a voter's information in the DPS database that was derived from documents presented by the voter to DPS after the person's current voter registration became effective, and prohibits SOS from considering information derived from documents presented by the voter to the department before the person's current voter registration became effective.

(d) Requires SOS to prescribe rules for the administration of this section.

(e) Requires SOS, not later than December 31 of each year, to provide a report to the legislature of the number of voter registrations canceled under this section during the calendar year.

SECTION 1.05. Amends Section 18.068, Election Code, by amending Subsection (a) and adding Subsection (a-1), as follows:

(a) Requires SOS to quarterly compare the information received under certain sections, including under Section 62.114 (Compilation of List of Nonresidents), Government Code, to the statewide computerized voter registration list. Requires SOS, if SOS determines that a voter on the registration list meets certain criteria, including if a voter has been excused or disqualified from jury service because the voter is not a resident of the county in which the voter is registered to vote, to send notice of the determination to:

(1) creates this subdivision from existing text and makes a nonsubstantive change; and

(2) the attorney general, who is required to quarterly review the information to investigate whether a person has committed an offense under Section 13.007 (False Statement on Application) or other law.

Makes a nonsubstantive change.

(a-1) Provides that SOS is not required to send notice under Subsection (a) for a voter who is subject to an exemption from jury service under Section 62.106 (Exemption From Jury Service), Government Code, if that exemption is the only reason the voter is excused from jury service.

SECTION 1.06. Amends Section 31.006, Election Code, as follows:

Sec. 31.006. New heading: REFERRAL TO ATTORNEY GENERAL. (a) Requires SOS, if, after receiving or discovering information indicating that criminal conduct in connection with an election has occurred, SOS determines that there is reasonable cause to suspect that criminal conduct occurred, to promptly refer the information to the attorney general. Requires SOS to deliver to the attorney general all pertinent documents and information, rather than all pertinent documents, in SOS's possession. Deletes existing text requiring SOS, if, after receiving a complaint alleging criminal conduct in connection with an election, SOS determines that there is reasonable cause to suspect that the alleged criminal conduct occurred, to promptly refer the complaint to the attorney general.

(b) Makes conforming changes to this subsection.

SECTION 1.07. Amends Section 62.113(b), Government Code, as follows:

(b) Requires a clerk of the court, on the third business day of each month, to send a copy of the list of persons excused or disqualified because of citizenship in the previous month to certain persons, including to the attorney general for an investigation of whether the person committed an offense under Section 13.007, Election Code, or other law. Makes a nonsubstantive change.

SECTION 1.08. Amends Sections 62.114(b) and (c), Government Code, as follows:

(b) Requires a clerk of the court, on the third business day of each month, to send a copy of the list of persons excused or disqualified in the previous month because the persons do not reside in the county to the voter registrar of the county, SOS, and the attorney general and the county or district attorney for an investigation of whether the person committed an offense under Section 13.007, Election Code, or other law. Makes a nonsubstantive change.

(c) Prohibits a list compiled under this section from being used for a purpose other than a purpose described by certain sections, including Section 18.068 (Comparison of Information Regarding Ineligibility), Election Code.

ARTICLE 2. CONDUCT AND SECURITY OF ELECTIONS

SECTION 2.01. Amends Section 43.031, Election Code, by amending Subsection (b) and adding Subsections (b-1) and (b-2), as follows:

(b) Prohibits a polling place, except as provided by Subsection (b-1), from being located in a tent or similar temporary moveable structure or in a facility primarily designed for motor vehicles. Prohibits any voter from casting a vote from inside a motor vehicle unless the voter meets the requirements of Section 64.009 (Voter Unable to Enter Polling Place).

(b-1) Authorizes a polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for a polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(b-2) Provides that if the county commissioners court makes a determination described by Subsection (b-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to SOS as soon as practicable.

SECTION 2.02. Amends Section 61.002, Election Code, as follows:

Sec. 61.002. New heading: OPENING AND CLOSING POLLING PLACE FOR VOTING. (a) Requires the presiding election judge or alternate election judge, immediately before opening the polls for voting on the first day of early voting and on election day, to confirm that each voting machine has any public counter reset to zero and to print the tape that shows the counter was set to zero for each candidate or measure on the ballot.

(b) Creates this subsection from existing text and makes no further changes.

(c) Requires the presiding election judge or alternate election judge, immediately after closing the polls for voting on election day, to print the tape to show the number of votes cast for each candidate or ballot measure for each voting machine.

(d) Requires each election judge or alternate election judge to sign a tape printed under this section.

SECTION 2.03. Amends Section 64.007(c), Election Code, as follows:

(c) Requires an election officer to maintain a register of spoiled ballots at the polling place, including spoiled ballots from a direct recording electronic voting unit. Requires SOS to create and promulgate a form to be used for this purpose.

SECTION 2.04. Amends Subchapter A, Chapter 65, Election Code, by adding Section 65.017, as follows:

Sec. 65.017. VOTE TABULATING EQUIPMENT. Prohibits equipment to tabulate votes, beginning January 1, 2024, from being used if any wireless connectivity capability of the equipment has not been disabled or removed.

SECTION 2.05. Amends Subchapter A, Chapter 66, Election Code, by adding Section 66.004, as follows:

Sec. 66.004. POLLING PLACE CHECKLISTS. Requires SOS to adopt rules and create a checklist or similar guidelines to assist the presiding judge of a polling place in processing forms and conducting procedures required by this code at the opening and closing of the polling place.

SECTION 2.06. Amends Section 66.052, Election Code, as follows:

Sec. 66.052. New heading: DELIVERY BY ELECTION CLERK; CHAIN OF CUSTODY. (a) Creates this subsection from existing text and makes no further changes.

(b) Requires the presiding judge of a polling place, if the presiding judge designates a clerk to deliver election supplies, to attest to the designation, and requires the clerk to attest to the clerk's acceptance of the responsibility. Requires SOS to create and promulgate a form to facilitate compliance with this section.

SECTION 2.07. Amends Section 85.005, Election Code, as follows:

Sec. 85.005. REGULAR DAYS AND HOURS FOR VOTING. (a) Provides that, except as provided by Subsection (c), in an election in which a county clerk is the early voting clerk under Section 83.002 (County Clerk as Early Voting Clerk), early voting by personal appearance at the main early voting polling place is required to be conducted on each weekday of the early voting period that is not a legal state holiday and for a period of at least nine hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m.

Deletes existing text providing that, except as provided by Subsection (c), in an election in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005 (Clerk for City Elections), early voting by personal appearance at the main early voting polling place is required to be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business.

(b) Requires that early voting by personal appearance at the main early voting polling place, in an election to which Subsection (a) does not apply, be conducted at least nine hours, rather than eight hours, each weekday of the early voting period that is not a legal state holiday unless the territory covered by the election has fewer than 1,000 registered voters. Requires that the voting in that case be conducted at least four hours, rather than three hours, each day.

(c) Requires that the voting in a primary election or the general election for state and county officers, in a county with a population of 30,000 or more, rather than a population of 100,000 or more, be conducted at the main early voting polling place for at least 12 hours on each weekday of the last week of the early voting period, and requires that the voting in a special election ordered by the governor be conducted at the main early voting polling place for at least 12 hours on each of the last two days of the early voting period. Prohibits voting under this subsection from being conducted earlier than 6 a.m. or later than 9 p.m. Makes a conforming change.

(d) Provides that a voter who has not voted before the scheduled time for closing a polling place is entitled to vote after that time if the voter is in line at the polling place by closing time. Requires SOS to promulgate any materials and provide any

training to presiding judges necessary to properly process voters under this subsection.

Deletes existing text requiring that early voting by personal appearance at the main early voting polling place, in an election ordered by a city, be conducted for at least 12 hours on one weekday, if the early voting period consists of less than six weekdays, or on two weekdays, if the early voting period consists of six or more weekdays.

SECTION 2.08. Amends Sections 85.006(b) and (e), Election Code, as follows:

(b) Authorizes only the early voting clerk to order voting on a Saturday or Sunday in an election in which a county clerk is the early voting clerk under Section 83.002, rather than in an election in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005.

(e) Requires the early voting clerk, in a primary election or the general election for state and county officers in a county with a population of 30,000 or more, to order voting by personal appearance at the main early voting polling place to be conducted on the last Saturday of the early voting period for at least 12 hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m., and on the last Sunday of the early voting period for at least six hours, except that voting is prohibited from being conducted earlier than 6 a.m. or later than 9 p.m.

Deletes existing text requiring the early voting clerk, in a primary election or the general election for state and county officers in a county with a population of 100,000 or more, to order personal appearance voting at the main early voting polling place to be conducted for at least 12 hours on the last Saturday and for at least five hours on the last Sunday of the early voting period. Makes a conforming change.

SECTION 2.09. Amends Section 85.010(a-1), Election Code, to redefine "eligible county polling place" for Section 85.010 (Early Voting Polling Place for Certain Elections Held by Political Subdivisions).

SECTION 2.10. Amends Section 85.061, Election Code, by amending Subsection (a) and adding Subsections (a-1) and (a-2), as follows:

(a) Authorizes a polling place, if a suitable room is unavailable inside the branch office, to be located in another room inside the same building as the branch office. Prohibits the polling place, except as provided by Subsection (a-1), from being located in a tent or similar temporary moveable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles. Makes a nonsubstantive change.

(a-1) Authorizes an early voting polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for an early voting polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(a-2) Provides that if the county commissioners court makes a determination described by Subsection (a-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to the secretary of state as soon as practicable.

SECTION 2.11. Amends Section 85.062, Election Code, by amending Subsection (b) and adding Subsections (b-1), (b-2), and (f-1), as follows:

(b) Authorizes an early voting polling place established under Section 85.062 (Temporary Branch Polling Place) to be located, subject to Subsection (d) (relating to requiring the commissioners courts of counties with certain populations to establish a certain number of early voting polling places), at any place in the territory served by the early voting clerk and to be located inside any building, rather than in any stationary structure, as directed by the authority establishing the branch office. Prohibits the polling place, except as provided by Subsection (b-1), from being located in a tent or similar temporary movable structure or a parking garage, parking lot, or similar facility designed primarily for motor vehicles in the general election for state and county officers, general primary election, or runoff primary election. Makes nonsubstantive changes.

(b-1) Authorizes a temporary branch polling place to be located in a tent or similar temporary moveable structure if:

(1) a building selected for a temporary branch polling place is later determined by the county commissioners court to be not reasonably accessible due to fire, flood, or other natural disaster rendering the building unsafe for public use;

(2) a suitable substitute building is not available; and

(3) the tent or similar temporary moveable structure is adjacent to the building described by Subdivision (1).

(b-2) Provides that if the county commissioners court makes a determination described by Subsection (b-1)(1):

(1) the determination is valid only for the next scheduled election; and

(2) the court is required to send a record of that determination to the secretary of state as soon as practicable.

(f-1) Requires the commissioners court of a county, notwithstanding any other provision of this section concerning the location of temporary branch polling places, in an election in which countywide polling places are used, to employ the same methodology it uses to determine the location of countywide polling places to determine the location of temporary branch polling places.

SECTION 2.12. Amends Section 124.002, Election Code, by adding Subsection (c), to prohibit voting system ballots from being arranged in a manner that allows a political party's candidates to be selected in one motion or gesture.

SECTION 2.13. Amends Section 127.1232, Election Code, as follows:

Sec. 127.1232. SECURITY OF VOTED BALLOTS. (a) Creates this subsection from existing text. Requires the general custodian of election records to post a licensed peace officer, rather than a guard, to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station.

(b) Provides that the general custodian of election records in a county with a population of less than 100,000 is authorized, and the general custodian of election records in a county with a population of 100,000 or more is required, to implement a video surveillance system that retains a record of all areas containing voted ballots:

(1) from the time the voted ballots are delivered to the central counting station until the canvass of precinct election returns; and

(2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns.

(c) Provides that a video from a system implemented under Subsection (b) is authorized to be made available to the public by a livestream in a county with a population of less than 100,000, and is required to be made available to the public by a livestream in a county with a population of 100,000 or more.

(d) Provides that the video recorded is an election record under Section 1.012 (Public Inspection of Election Records) and is required to be retained by the general custodian of election records until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later.

ARTICLE 3. ELECTION OFFICERS AND OBSERVERS

SECTION 3.01. Amends Subchapter A, Chapter 33, Election Code, by adding Section 33.008, as follows:

Sec. 33.008. TRAINING MANUAL. (a) Requires SOS to publish and maintain a training manual for watchers and to make the manual available on SOS's Internet website.

(b) Requires an appointing authority to provide each watcher appointed by the authority with a copy of the training manual maintained under this section.

SECTION 3.02. Amends Section 33.051, Election Code, by adding Subsections (g) and (h), as follows:

(g) Provides that an election officer commits an offense if the officer intentionally or knowingly refuses to accept a watcher for service when acceptance of the watcher is required by Section 33.051 (Acceptance of Watcher). Provides that an offense under this subsection is a Class A misdemeanor.

(h) Requires the officer presented with a watcher's certificate of appointment, before accepting a watcher, to require the watcher to take a certain oath, administered by the officer.

SECTION 3.03. Amends Section 33.056, Election Code, by amending Subsection (a) and adding Subsections (e) and (f), as follows:

(a) Entitles a watcher to sit or stand near enough to see and hear the election officers conducting the observed activity, except as otherwise prohibited by Chapter 33 (Watchers), rather than entitles a watcher to sit or stand conveniently near the election officers conducting the observed activity.

(e) Prohibits a watcher, except as provided by Section 33.057(b) (relating to prohibiting a watcher from being present at the voting station when a voter is preparing the voter's ballot or is being assisted by a person of the voter's choice), from being denied free movement where election activity is occurring within the location at which the watcher is serving.

(f) Provides that in this code, a watcher who is entitled to "observe" an election activity is entitled to sit or stand near enough to see and hear the activity.

SECTION 3.04. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.0605, as follows:

Sec. 33.0605. OBSERVING DATA STORAGE SEALING AND TRANSFER. (a) Authorizes a watcher appointed to serve at a polling place in an election who is available at the time of the action to observe all election activities relating to closing the polling place, including the sealing and transfer of a memory card, flash drive, hard drive, data storage device, or other medium now existing or later developed used by the voting system equipment.

(b) Provides that, notwithstanding any other provision of this code, a watcher duly accepted for service at a polling location is entitled to follow the transfer of election materials from the polling place at which the watcher was accepted to a regional tabulating center, the central counting station, or any other location designated to process election materials. Requires the authority responsible for administering a regional tabulating center or another location where election materials are processed to accept duly appointed watchers for service in the same manner a watcher is accepted for service under Section 33.051 and to accept the same number of watchers that are authorized to serve under Section 33.007(a) (relating to authorizing each appointing authority to appoint not more than two watchers for each precinct polling place, meeting place for an early voting ballot board, or central counting station involved in the election).

SECTION 3.05. Amends Section 33.061(a), Election Code, as follows:

(a) Provides that a person commits an offense of unlawfully obstructing a watcher if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.

SECTION 3.06. Amends Subchapter C, Chapter 33, Election Code, by adding Section 33.063, as follows:

Sec. 33.063. RELIEF. (a) Authorizes a watcher, or the appointing authority for a watcher, who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties to seek injunctive relief under Section 273.081 (Injunction), including issuance of temporary orders; a writ of mandamus under Section 161.009 (Party Officer Subject to Mandamus) or 273.061 (Jurisdiction); and any other remedy available under law.

(b) Provides that the relief provided by this section is available to a state inspector appointed under Chapter 34 (State Inspectors) or any other election inspector authorized by law.

SECTION 3.07. Amends Section 86.006, Election Code, by amending Subsection (a) and adding Subsection (a-2), as follows:

(a) Authorizes the carrier envelope for a marked ballot voted under Chapter 86 (Conduct of Voting by Mail) to be delivered in another envelope and requires that it be transported and delivered only by certain methods, including, subject to Subsections (a-1) (relating to authorizing a voter to deliver a marked ballot in person to the early voting clerk's office only while the polls are open on election day) and (a-2), rather than subject to Subsection (a-1), in-person delivery by the voter who voted the ballot.

(a-2) Requires that an in-person delivery of a marked ballot voted under this chapter be received by an election official at the time of delivery. Requires the receiving official to record the voter's name, signature, and type of identification provided under Section 63.0101 (Documentation of Proof of Identification) on a roster prescribed by SOS. Requires the receiving official to attest on the roster that the delivery complies with Section 86.006 (Method of Returning Marked Ballot).

SECTION 3.08. Amends Chapter 121, Election Code, by adding Section 121.004, as follows:

> Sec. 121.004. COMMUNICATIONS WITH VOTING SYSTEMS VENDOR PUBLIC INFORMATION. Provides that, except as provided by Sections 552.110 (Exception: Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information) and 552.1101 (Exception: Confidentiality of Proprietary Information), Government Code, a written letter, e-mail, or other communication, including a communication made confidential by other law, between a public official and a voting systems vendor is not confidential, is public information for purposes of Chapter 552 (Public Information), Government Code, and is not subject to an exception to disclosure provided by Chapter 552, Government Code.

SECTION 3.09. Amends Subchapter A, Chapter 127, Election Code, by adding Section 127.009, as follows:

> Sec. 127.009. ELECTRONIC DEVICES IN CENTRAL COUNTING STATION. (a) Requires a counting station manager and the presiding judge of the counting station to develop a protocol under which any electronic device inside a central counting station that is necessary to count votes is equipped with software that tracks all input and activity on the electronic device.

> (b) Requires the counting station manager and the presiding judge of the counting station to ensure that the input and activity tracked by the software is printed and delivered to SOS not later than the fifth day after vote counting is complete.

> (c) Provides that this section applies only to a central counting station located in a county with a population of 250,000 or more.

SECTION 3.10. Amends Section 127.1301, Election Code, as follows:

> Sec. 127.1301. New heading: CENTRALLY COUNTED OPTICAL SCAN BALLOTS. (a) Creates this subsection from existing text and makes no further changes.

> (b) Prohibits an authority operating a central counting station under Chapter 127 (Processing Electronic Voting System Results), after January 1, 2024, from purchasing or using a centrally counted optical ballot scan system that uses a data storage disc on which information, once written, is capable of being modified.

SECTION 3.11. Amends Section 127.131, Election Code, by adding Subsection (f), as follows:

> (f) Requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. Requires SOS to create and promulgate rules and a form to facilitate compliance with this subsection. Requires that the form be posted on a website maintained by the county along with election returns and results.

SECTION 3.12. Amends Section 129.023, Election Code, by adding Subsections (b-2) and (c-1), as follows:

> (b-2) Requires the general custodian of election records, if the test is being conducted for an election in which a county election board has been established under Section 51.002 (County Election Board), to notify each member of the board of the test at least 48 hours before the date of the test. Requires each member of the county election board, if the board chooses to witness the test, to sign the statement required by Subsection (e)(1) (relating to requiring the testing board and general custodian of election records to sign a written statement attesting to certain information to provide a full and accurate account of each voting machine's condition).

(c-1) Requires that a test conducted under Section 129.023 (Public Test of Logic and Accuracy) also require the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.

## ARTICLE 4. VOTING BY MAIL

SECTION 4.01. Amends Section 84.001(b), Election Code, as follows:

(b) Requires that an application for an early voting ballot to be voted by mail be submitted in writing and signed by the applicant using ink on paper. Provides that an electronic signature or photocopied signature is not permitted.

SECTION 4.02. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0011, as follows:

Sec. 84.0011. SOLICITATION OF BALLOT BY MAIL APPLICATIONS PROHIBITED. Prohibits the early voting clerk from making any attempt to solicit a person to complete an application for an early voting ballot by mail, whether directly or through a third party.

SECTION 4.03. Amends Section 84.002, Election Code, as effective September 1, 2021, by amending Subsection (a) and adding Subsection (b-1), as follows:

(a) Requires that an early voting ballot application include:

(1) makes no changes to this subdivision;

(1-a) the following information:

(A) the number of the applicant's driver's license, election identification certificate, or personal identification card issued by DPS;

(B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or

(C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B);

(2)-(7) makes no changes to these subdivisions.

(b-1) Authorizes a person to use the number of a driver's license, election identification certificate, or personal identification card that has expired for the purpose of fulfilling the requirement under Subsection (a)(1- a) if the license or identification is otherwise valid.

SECTION 4.04. Amends Section 84.011(a), Election Code, as effective September 1, 2021, as follows:

(a) Requires that the officially prescribed application form for an early voting ballot include certain criteria, including a space for entering the information required under Section 84.002(a)(1-a).

SECTION 4.05. Amends Subchapter A, Chapter 84, Election Code, by adding Section 84.0111, as follows:

Sec. 84.0111. DISTRIBUTION OF APPLICATION FORM. (a) Prohibits an officer or employee of this state or of a political subdivision of this state, except as provided by Subsection (c) or as otherwise authorized by this code, from distributing an application form for an early voting ballot to a person who did not request an application under Section 84.001 (Application Required).

(b) Prohibits an officer or employee of this state or of a political subdivision of this state from using public funds to facilitate the distribution by another person of an application form for an early voting ballot to a person who did not request an application under Section 84.001.

(c) Authorizes a political party or a candidate for office to distribute an application form for an early voting ballot to a person who did not request an application under Section 84.001.

SECTION 4.06. Amends Section 84.032(c), Election Code, as follows:

(c) Authorizes an applicant for a ballot to be voted by mail to submit a request after the close of early voting by personal appearance by appearing in person and:

(1) makes no changes to this subdivision; or

(2) executing an affidavit that the applicant:

(A) and (B) makes nonsubstantive changes to these paragraphs; or

(C) received notice of a defect under Section 87.0271(b) or 87.0411(b).

SECTION 4.07. Amends Section 84.035, Election Code, as follows:

Sec. 84.035. BALLOT SENT TO APPLICANT. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes an election judge to permit a person to whom an early voting ballot has been sent who cancels the person's application for a ballot to be voted by mail in accordance with Section 84.032 (Request for Cancellation) but fails to return the ballot to be voted by mail to the early voting clerk, deputy early voting clerk, or presiding judge as provided by that section to vote only a provisional ballot under Section 63.011 (Provisional Voting).

SECTION 4.08. Amends Section 86.001, Election Code, by adding Subsection (f), as follows:

(f) Requires the early voting clerk to reject the application for a ballot to be voted by mail if the information required under Section 84.002(a)(1-a) included on the application does not identify the same voter identified on the applicant's application for voter registration under Section 13.002(c)(8) (relating to requiring that a voter registration application provide the applicant's driver's license or personal identification number, the applicant's social security number, or a certain statement).

SECTION 4.09. Amends Section 86.002, Election Code, by adding Subsections (g), (h), and (i), as follows:

(g) Requires that the carrier envelope provided with each ballot to be voted by mail include a space that is hidden from view when the envelope is sealed for the voter to enter the following information:

(1) the number of the voter's driver's license, election identification certificate, or personal identification card issued by DPS;

(2) if the voter has not been issued a number described by Subdivision (1), the last four digits of the voter's social security number; or

(3) a statement by the applicant that the applicant has not been issued a number described by Subdivision (1) or (2).

(h) Authorizes a person to use the number of a driver's license, election identification certificate, or personal identification card that has expired for purposes of Subsection (g) if the license or identification is otherwise valid.

(i) Prohibits any record associating an individual voter with a ballot from being created.

SECTION 4.10. Amends Section 86.011(c), Election Code, as follows:

(c) Requires the early voting clerk, if the return is not timely, to enter the time of receipt on the carrier envelope and retain it in a locked container for the period for preserving the precinct election records.

SECTION 4.11. Amends Section 87.027(i), Election Code, as follows:

(i) Authorizes the signature verification committee to also compare the signatures on the carrier envelope certificates with any known signature of the voter, rather than with any two or more signatures of the voter made within the preceding six years, on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 4.12. Amends Subchapter B, Chapter 87, Election Code, by adding Section 87.0271, as follows:

Sec. 87.0271. OPPORTUNITY TO CORRECT DEFECT: SIGNATURE VERIFICATION COMMITTEE. (a) Provides that this section applies to an early voting ballot voted by mail for which the voter did not sign the carrier envelope certificate, for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter, that is missing any required statement of residence, or that contains incomplete information with respect to a witness.

(b) Authorizes the signature verification committee, before deciding whether to accept or reject a timely delivered ballot under Section 87.027 (Signature Verification Committee), to:

(1) return the carrier envelope to the voter by mail, if the signature verification committee determines that it would be possible to correct the defect and return the carrier envelope before the time the polls are required to close on election day; or

(2) notify the voter of the defect by telephone or e-mail and inform the voter that the voter is authorized to come to the early voting clerk's office in person to correct the defect or to request to have the voter's application to vote by mail canceled under Section 84.032.

(c) Requires the signature verification committee, if the committee takes an action described by Subsection (b), to take either action described by that subsection with respect to each ballot in the election to which this section applies.

(d) Entitles a poll watcher to observe an action taken under Subsection (b).

(e) Authorizes SOS to prescribe any procedures necessary to implement this section.

SECTION 4.13. Amends Section 87.041, Election Code, by amending Subsections (b) and (e) and adding Subsection (d-1), as follows:

(b) Authorizes an early voting ballot to be accepted only if certain criteria are met, including if the information required under Section 86.002(g) provided by the voter identifies the same voter identified on the voter's application for voter registration under Section 13.002(c)(8). Makes nonsubstantive changes.

(d-1) Requires that the signature on the early voting ballot application and on the carrier envelope certificate be rebuttably presumed to be the signatures of the voter if a voter provides the information required under Section 86.002(g) and it identifies the same voter identified on the voter's application for voter registration under Section 13.002(c)(8).

(e) Authorizes the early voting ballot board, in making the determination under Subsection (b)(2) (relating to authorizing an early voting ballot to be accepted if neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness), to determine whether the signatures are those of the voter, to also compare the signatures with any known signature of the voter on file with the county clerk or voter registrar. Deletes existing text authorizing the board, in making the determination under Subsection (b)(2), to also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

SECTION 4.14. Amends Subchapter C, Chapter 87, Election Code, by adding Section 87.0411, as follows:

Sec. 87.0411. OPPORTUNITY TO CORRECT DEFECT: EARLY VOTING BALLOT BOARD. (a) Provides that this section applies to an early voting ballot voted by mail for which the voter did not sign the carrier envelope certificate, for which it cannot immediately be determined whether the signature on the carrier envelope certificate is that of the voter, that is missing any required statement of residence, or to a ballot containing incomplete information with respect to a witness.

(b) Authorizes the early voting ballot board, before deciding whether to accept or reject a timely delivered ballot under Section 87.041 (Accepting Voter), to:

(1) return the carrier envelope to the voter by mail, if the early voting ballot board determines that it would be possible to correct the defect and return the carrier envelope before the time the polls are required to close on election day; or

(2) notify the voter of the defect by telephone or e-mail and inform the voter that the voter is authorized to come to the early voting clerk's office in person to correct the defect or to request to have the voter's application to vote by mail canceled under Section 84.032.

(c) Requires the early voting ballot board, if the board takes an action described by Subsection (b), to take either action described by that subsection with respect to each ballot in the election to which this section applies.

(d) Entitles a poll watcher to observe an action taken under Subsection (b).

(e) Authorizes SOS to prescribe any procedures necessary to implement this section.

SECTION 4.15. Amends Section 87.0431(b), Election Code, as follows:

(b) Requires the early voting clerk, not later than the 30th day after election day, to deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected for certain reasons, including because the early voting ballot board or the signature verification committee determined that another violation of the Election Code occurred. Makes nonsubstantive changes.

SECTION 4.16. Amends Sections 87.062(a) and (c), Election Code, as follows:

(a) Makes nonsubstantive changes to this subsection.

(c) Requires that ballots voted by mail be tabulated and stored separately from the ballots voted by personal appearance and be separately reported on the returns. Deletes existing text requiring that the results of all early voting ballots counted by the early voting ballot board under Subchapter D (Processing Manually Counted Ballots) be included in the same return.

SECTION 4.17. Amends Section 87.103, Election Code, as follows:

Sec. 87.103. COUNTING BALLOTS AND PREPARING RETURNS. (a) Requires that the early voting electronic system ballots counted at a central counting station, the ballots cast at precinct polling places, and the ballots voted by mail be tabulated separately and be separately reported on the returns. Makes a nonsubstantive change.

(b) Requires that the early voting returns prepared at the central counting station include any early voting results obtained by the early voting ballot board under Subchapter D, rather than under Subchapters D and E.

SECTION 4.18. Amends Section 87.126, Election Code, by adding Subsection (a-1), as follows:

(a-1) Requires that electronic records made under Section 87.126 (Electronic Recording of Ballot Materials and Applications) record both sides of any application, envelope, or ballot recorded, and that all such records be provided to the early voting ballot board, the signature verification committee, or both.

SECTION 4.19. Amends Subchapter G, Chapter 87, Election Code, by adding Section 87.128, as follows:

Sec. 87.128. NOTES. Entitles each member of an early voting ballot board and each member of a signature verification committee to take and keep any notes reasonably necessary to perform the member's duties under Chapter 87 (Processing Early Voting Results).

ARTICLE 5. ASSISTANCE OF VOTERS

SECTION 5.01. Amends Section 64.009, Election Code, by amending Subsection (b) and adding Subsections (e), (f), (f-1), (g), and (h), as follows:

(b) Authorizes the regular voting procedures, except those in Subchapter B (Assisting Voter), to be modified by the election officer to the extent necessary to conduct voting under this section.

(e) Provides that except as provided by Section 33.057, a poll watcher is entitled to observe any activity conducted under this section.

(f) Requires a person who simultaneously assists three or more voters voting under this section by providing the voters with transportation to the polling place to complete and sign a form, provided by an election officer, that contains the person's name and address and whether the person is providing assistance solely under this section or under both this section and Subchapter B.

(f-1) Provides that Subsection (f) does not apply if the person is related to each voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B (Relationships by Consanguinity or by Affinity), Chapter 573 (Degrees of Relationship; Nepotism Prohibitions), Government Code.

(g) Requires that a form completed under Subsection (f) be delivered to SOS as soon as practicable. Requires SOS to retain a form delivered under this section for the period for preserving the precinct election records and to make the form available to the attorney general for inspection upon request.

(h) Requires SOS to prescribe the form described by Subsection (f).

SECTION 5.02. Amends Section 64.031, Election Code, as follows:

Sec. 64.031. ELIGIBILITY FOR ASSISTANCE. Provides that a voter is eligible to receive assistance in marking or reading the ballot, rather than assistance in marking the ballot, as provided by Subchapter B, if the voter cannot prepare or read the ballot, rather than prepare the ballot, because of a physical disability that renders the voter unable to write or see or an inability to read the language in which the ballot is written.

SECTION 5.03. Amends Subchapter B, Chapter 64, Election Code, by adding Section 64.0322, as follows:

Sec. 64.0322. SUBMISSION OF FORM BY ASSISTANT. (a) Requires a person, other than an election officer, who assists a voter in accordance with Chapter 64 (Voting Procedures) to complete a form stating:

(1) the name and address of the person assisting the voter;

(2) the relationship to the voter of the person assisting the voter; and

(3) whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee.

(b) Requires SOS to prescribe the form required by this section. Requires that the form be incorporated into the official carrier envelope if the voter is voting an early voting ballot by mail and receives assistance under Section 86.010 (Unlawfully Assisting Voter Voting Ballot by Mail), or be submitted to an election officer at the time the voter casts a ballot if the voter is voting at a polling place or under Section 64.009.

SECTION 5.04. Amends Section 64.034, Election Code, as follows:

Sec. 64.034. OATH. Requires a person, other than an election officer, selected to provide assistance to a voter to take a certain oath, administered by an election officer at the polling place, before providing assistance. Sets forth the required language of the oath.

SECTION 5.05. Amends Sections 86.010(e), (h), and (i), Election Code, as follows:

(e) Requires a person who assists a voter to prepare a ballot to be voted by mail to enter on the official carrier envelope of the voter:

(1) creates this subdivision from existing text and makes a nonsubstantive change;

(2) the relationship of the person providing the assistance to the voter; and

(3) whether the person received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee in exchange for providing assistance.

Deletes existing text requiring a person who assists a voter to prepare a ballot to be voted by mail to enter certain information on the official carrier envelope of the voter.

(h) Provides that Subsection (f) (relating to providing that a person who assists a voter commits an offense if the person knowingly fails to comply with certain requirements) does not apply to:

(1) a violation of Subsection (c) (relating to requiring a person assisting a voter to sign a certain written oath that is part of the certificate on the official carrier

envelope), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code, or was physically living in the same dwelling as the voter at the time of the event; or

(2) a violation of Subsection (e), if the person is related to the voter within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code.

Makes nonsubstantive changes.

(i) Provides that an offense under this section for a violation of Subsection (c), rather than an offense under this section, is increased to the next higher category of offense if it is shown on the trial of an offense under this section that the defendant was previously convicted of an offense under this code, the offense involved a voter 65 years of age or older, or the defendant committed another offense under this section in the same election.

SECTION 5.06. Amends Section 86.013(b), Election Code, as follows:

(b) Requires that spaces appear on the reverse side of the official carrier envelope for providing certain information, including for indicating the relationship of a certain person to the voter. Makes nonsubstantive changes.

ARTICLE 6. FRAUD AND OTHER UNLAWFUL PRACTICES

SECTION 6.01. Amends Chapter 63, Election Code, by adding Section 63.0111, as follows:

Sec. 63.0111. OFFENSES RELATED TO PROVISIONAL VOTING. (a) Provides that an election judge commits an offense if the judge knowingly provides a voter with a form for an affidavit required by Section 63.001 (Regular Procedure for Accepting Voter) if the form contains information that the judge entered on the form knowing it was false.

(b) Provides that an offense under this section is a state jail felony.

SECTION 6.02. Amends Sections 276.004(a) and (b), Election Code, as follows:

(a) Provides that a person commits an offense of unlawfully prohibiting an employee from voting if, with respect to another person over whom the person has authority in the scope of employment, the person knowingly:

(1) refuses to permit the other person to be absent from work on election day or while early voting is in progress for the purpose of attending the polls to vote; or

(2) subjects or threatens to subject the other person to a penalty for attending the polls on election day or while early voting is in progress to vote.

(b) Makes a conforming change to this subsection.

SECTION 6.03. Amends Chapter 276, Election Code, by adding Sections 276.015, 276.016, and 276.017, as follows:

Sec. 276.015. VOTE HARVESTING. (a) Defines "benefit" and "vote harvesting services."

(b) Provides that a person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit.

(c) Provides that a person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services.

(d) Provides that a person commits an offense if the person knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services.

(e) Provides that this section does not apply to:

> (1) an activity not performed in exchange for compensation or a benefit;
>
> (2) interactions that do not directly involve an official ballot, ballot by mail, or an application for ballot by mail;
>
> (3) interactions that are not conducted in-person with a voter; or
>
> (4) activity that is not designed to deliver votes for or against a specific candidate or measure.

(f) Provides that in this section, compensation in exchange for vote harvesting services is inferred if a person who performed vote harvesting services for a candidate or campaign solicits, receives, or is offered compensation from the candidate or campaign, directly or through a third party, for services other than vote harvesting services provided.

(g) Provides that an offense under this section is a felony of the third degree.

(h) Authorizes the actor, if conduct that constitutes an offense under this section also constitutes an offense under any other law, to be prosecuted under this section, the other law, or both.

(i) Requires that records necessary to investigate an offense under this section or any other section of this code be provided by an election officer in an unredacted form to a law enforcement officer upon request. Provides that records obtained under this subsection are not subject to public disclosure.

Sec. 276.016. CIVIL LIABILITY FOR VOTE HARVESTING. (a) Provides that a person who is shown by a preponderance of the evidence to have violated Section 276.015 is civilly liable to any candidate or political party who suffers harm from the vote harvesting services for damages and penalties that are authorized to be awarded under Subsection (c).

(b) Provides that a person is harmed by the vote harvesting services if the person can demonstrate that the person has standing to seek relief and the liable party violated Section 276.015.

(b-1) Provides that, to establish standing under this section, a person is not required to demonstrate that the vote harvesting services successfully delivered votes for a specific candidate or measure, but is required to demonstrate that:

> (1) the vote harvesting services were intended to deliver votes for a specific candidate or measure; and
>
> (2) the person opposed the candidate or measure in the person's capacity as a candidate or political party.

(c) Authorizes a party who prevails in an action under this section to recover damages in an amount including any or all of:

(1) the amount of compensation paid to or received by a party in exchange for vote harvesting services;

(2) the fair market value of any benefit given or received in exchange for vote harvesting services;

(3) a penalty in the amount of $35,000; or

(4) reasonable and necessary attorney's fees, court costs, witness fees, and discovery costs.

(d) Requires that a party who is a candidate for office who prevails in an action under this section and shows that the number of voters contacted by the vote harvesting activity exceeds the number of votes by which the party lost the election recover damages in an amount including any or all of:

(1) the party's campaign expenditures properly filed on a campaign finance report in connection with the election; or

(2) any fees and expenses incurred by the party in filing and securing a place on the ballot.

(e) Provides that a person who commits an offense under Section 276.015 and is found civilly liable, including by vicarious liability, under Chapter 276 (Miscellaneous Offenses and Other Provisions) or other law for any amount of damages arising from the vote harvesting services is jointly liable with any other defendant for the entire amount of damages arising from the vote harvesting services.

(f) Provides that the cause of action created by this section is cumulative of any other remedy provided by common law or statute.

(g) Provides that rules applicable to a party's access to election records under Chapter 231 (Contest in District Court Generally) or 232 (Contests for Office) apply to a cause of action under this section.

(h) Provides that the expedited actions process created by Rule 169, Texas Rules of Civil Procedure, does not apply to an action under this section.

(i) Provides that Chapter 27 (Actions Involving the Exercise of Certain Constitutional Rights), Civil Practice and Remedies Code, does not apply to a cause of action under this section.

(j) Authorizes a cause of action under this section to be brought in the county where any element of a violation under Section 276.015 occurred, or where any part of the vote harvesting services occurred.

(k) Requires that this section be liberally construed and applied to promote its underlying purpose to protect candidates and the voting public from unlawful vote harvesting and provide an efficient and economical remedy to secure that protection.

Sec. 276.017. UNLAWFUL ALTERING OF ELECTION PROCEDURES. Prohibits a public official from creating, altering, modifying, waiving, or suspending any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code.

ARTICLE 7. ENFORCEMENT

SECTION 7.01. Amends Section 18.065, Election Code, by amending Subsection (a) and adding Subsections (e), (f), and (g), as follows:

(a) Requires SOS to monitor each voter registrar for substantial compliance with certain sections, including with Section 16.0332, and with rules implementing the statewide computerized voter registration list.

(e) Requires a voter registrar to correct a violation within 30 days of a notice under Subsection (b) (relating to requiring SOS to deliver written notice of noncompliance to the registrar). Requires SOS, if a registrar fails to correct the violation within 30 days of a notice under Subsection (b), to correct the violation on behalf of the registrar and to notify the attorney general that the registrar failed to correct a violation under this subsection.

(f) Provides that a county served by a voter registrar who fails to correct a violation under Subsection (e) is liable to this state for a civil penalty of $1,000 for each violation corrected by SOS under that subsection. Authorizes the attorney general to bring an action to recover a civil penalty imposed under Section 18.065 (Secretary of State to Monitor Registrar's Compliance).

(g) Requires that a civil penalty collected by the attorney general under this section be deposited in the state treasury to the credit of the general revenue fund.

SECTION 7.02. Amends Subchapter E, Chapter 31, Election Code, by adding Sections 31.128 and 31.129, as follows:

Sec. 31.128. RESTRICTION ON ELIGIBILITY. (a) Defines "election official."

(b) Prohibits a person from serving as an election official if the person has been finally convicted of an offense under this code.

Sec. 31.129. CIVIL PENALTY. (a) Defines "election official."

(b) Provides that an election official may be liable to this state for a civil penalty if the official is employed by or is an officer of this state or a political subdivision of this state and violates a provision of this code.

(c) Authorizes a civil penalty imposed under this section to include termination of the person's employment and loss of the person's employment benefits.

SECTION 7.03. Amends Section 232.006(a), Election Code, as follows:

(a) Provides that the venue of an election contest for a statewide office is in Travis County or any county where a contestee resided at the time of the election, rather than in Travis County. Provides that, for purposes of Section 232.006 (Venue), a contestee's residence is determined under Section 411.0257 (Residence), Government Code.

SECTION 7.04. Amends Sections 232.008(b), (c), and (d), Election Code, as follows:

(b) Requires a contestant, except as provided by Subsection (c), to file the petition not later than the later of the 45th day, rather than the 30th day, after the date the election records are publicly available under Section 1.012 or the official result of the contested election is determined.

(c) Requires a contestant to file the petition not later than the later of the 15th day, rather than the 10th day, after the date the election records are publicly available under Section 1.012 or the official result is determined in a contest of certain elections.

(d) Requires a contestant to deliver, electronically or otherwise, a copy of the petition to SOS by the same deadline prescribed for the filing of the petition.

SECTION 7.05. Amends Chapter 232, Election Code, by adding Subchapter C, as follows:

SUBCHAPTER C. CONTEST INVOLVING ALLEGED FRAUD

Sec. 232.061. PETITION ALLEGING FRAUD. Provides that this subchapter applies to an election contest in which the contestant alleges in the petition that an opposing candidate, an agent of the opposing candidate, or a person acting on behalf of the opposing candidate with the candidate's knowledge violated any of certain sections of this code.

Sec. 232.062. DAMAGES. (a) Provides that if it is shown by a preponderance of the evidence that a contestee, an agent of the contestee, or a person acting on behalf of the contestee with the contestee's knowledge committed one or more violations of a section described by Section 232.061, the contestee is liable to the contestant for damages in an amount of $1,000 for each violation.

(b) Requires a court, notwithstanding Section 41.004(a) (relating to authorizing exemplary damages to be awarded only if damages other than nominal damages are awarded), Civil Practice and Remedies Code, to award damages under Subsection (a) to the contestant irrespective of whether the contestant is awarded actual damages.

Sec. 232.063. ATTORNEY'S FEES. Authorizes the court, in an election contest to which this subchapter applies, to award reasonable attorney's fees to the prevailing party.

SECTION 7.06. Amends Section 273.061, Election Code, as follows:

Sec. 273.061. JURISDICTION. (a) Creates this subsection from existing text and makes no further changes.

(b) Authorizes the court of criminal appeals to issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the provision, sequestration, transfer, or impoundment of evidence in or records relating to a criminal investigation conducted under this code or conducted in connection with the conduct of an election or political party convention. Requires that, if a writ of mandamus is issued under this subsection, it include an order requiring the provision, sequestration, transfer, or impoundment of the evidence or record.

SECTION 7.07. Amends Subchapter D, Chapter 22, Government Code, by adding Section 22.304, as follows:

Sec. 22.304. PRIORITY OF CERTAIN ELECTION PROCEEDINGS. (a) Requires the Supreme Court of Texas, the Texas Court of Criminal Appeals, or a court of appeals to prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief or for a writ of mandamus under Chapter 273 (Criminal Investigation and Other Enforcement Proceedings), Election Code, pending or filed in the court on or after the 120th day before a general or special election.

(b) Authorizes oral argument for a proceeding described by Subsection (a), if granted, to be given in person or through electronic means.

SECTION 7.08. Amends Section 23.101, Government Code, by amending Subsection (a) and adding Subsection (b-1), as follows:

(a) Creates an exception under Subsection (b-1) to the requirement that the trial courts of this state regularly and frequently set hearings and trials of pending matters, giving preference to hearings and trials of certain matters. Makes a nonsubstantive change.

(b-1) Requires the trial courts of this state, except for a criminal case in which the death penalty has been or may be assessed or when it would otherwise interfere with a constitutional right, to prioritize over any other proceeding pending or filed in the court a proceeding for injunctive relief under Chapter 273, Election Code, pending or filed in the court on or after the 120th day before a general or special election.

## ARTICLE 8. INELIGIBLE VOTERS AND RELATED REFORMS

SECTION 8.01. Amends Chapter 42, Code of Criminal Procedure, by adding Article 42.0194, as follows:

Art. 42.0194. FINDING REGARDING FELONY CONVICTION. Requires the court, in the trial of a felony offense, if the defendant is 18 years of age or older and is adjudged guilty of the offense, to:

(1) make an affirmative finding that the person has been found guilty of a felony and enter the affirmative finding in the judgment of the case; and

(2) instruct the defendant regarding how the felony conviction will impact the defendant's right to vote in this state.

SECTION 8.02. Amends Article 42.01, Code of Criminal Procedure, as effective September 1, 2021, by adding Section 16, as follows:

Sec. 16. Provides that in addition to the information described by Section 1 (relating to the content of a judgment showing the conviction or acquittal of a defendant), the judgment should reflect the affirmative finding and instruction entered pursuant to Article 42.0194.

## ARTICLE 9. REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

SECTION 9.01. Repealer: Section 85.062(e) (relating to authorizing a temporary branch polling place that is located in a movable structure to be established only with the approval of the county clerk and the polling place's implementation), Election Code.

Repealer: Section 127.201(f) (relating to authorizing SOS at any time to waive or reinstate the requirements of a partial count of electronic voting system ballots by the general custodian for a particular political subdivision), Election Code.

SECTION 9.02. Severability clause.

SECTION 9.03. (a) Provides that except as otherwise provided by this Act, the changes in law made by this Act apply only to an offense committed on or after the effective date of this Act. Provides that an offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. Provides that for purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

(b) Provides that the changes in law made by this Act apply only to an election ordered on or after the effective date of this Act. Provides that an election ordered before the effective date of this Act is governed by the law in effect when the election was ordered, and the former law is continued in effect for that purpose.

(c) Provides that the changes in law made by this Act apply only to an election contest for which the associated election occurred after the effective date of this Act.

(d) Provides that the changes in law made by this Act apply only to an application to vote an early voting ballot by mail submitted on or after the effective date of this Act. Provides that an application to vote an early voting ballot by mail submitted before the

effective date of this Act is governed by the law in effect when the application was submitted, and the former law is continued in effect for that purpose.

(e) Provides that the changes in law made by this Act apply only to an application for voter registration submitted on or after the effective date of this Act.

SECTION 9.04. Effective date: the 91st day after the last day of the legislative session.

# CONFERENCE COMMITTEE REPORT FORM

Austin, Texas

_8/30/21_
_____
Date

Honorable Dan Patrick
President of the Senate

Honorable Dade Phelan
Speaker of the House of Representatives

Sirs:

We, Your Conference Committee, appointed to adjust the differences between the Senate and the House of Representatives on _____ SB 1 _____ have had the same under consideration, and beg to report it back with the recommendation that it do pass in the form and text hereto attached.

_____        _____
HUGHES                                   MURR

_____        _____
CREIGHTON                                BURROWS

_____        _____
BETTENCOURT                              LOZANO

_____        _____
BUCKINGHAM

_____        _____
On the part of the Senate                On the part of the House

**Note to Conference Committee Clerk:**

**Please type the names of the members of the Conference Committee under the lines provided for signature. Those members desiring to sign the report should sign each of the six copies. Attach a copy of the Conference Committee Report and a Section by Section side by side comparison to each of the six reporting forms. The original and two copies are filed in house of origin of the bill, and three copies in the other house.**

87S2148Z

# CONFERENCE
# COMMITTEE REPORT

### 3rd Printing

S.B. No. 1

A BILL TO BE ENTITLED

1                              AN ACT

2  relating to election integrity and security, including by

3  preventing fraud in the conduct of elections in this state;

4  increasing criminal penalties; creating criminal offenses.

5          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6                   ARTICLE 1.  GENERAL PROVISIONS

7          SECTION 1.01.  SHORT TITLE.  This Act may be cited as the

8  Election Integrity Protection Act of 2021.

9          SECTION 1.02.  PURPOSE.  The purpose of this Act is to

10  exercise the legislature's constitutional authority under Section

11  4, Article VI, Texas Constitution, to make all laws necessary to

12  detect and punish fraud.

13          SECTION 1.03.  FINDINGS. The legislature finds that:

14              (1)  full, free, and fair elections are the

15  underpinnings of a stable constitutional democracy;

16              (2)  fraud in elections threatens the stability of a

17  constitutional democracy by undermining public confidence in the

18  legitimacy of public officers chosen by election;

19              (3)  reforms are needed to the election laws of this

20  state to ensure that fraud does not undermine the public confidence

21  in the electoral process;

22              (4)  the reforms to the election laws of this state made

23  by this Act are not intended to impair the right of free suffrage

24  guaranteed to the people of Texas by the United States and Texas

S.B. No. 1

1  Constitutions, but are enacted solely to prevent fraud in the
2  electoral process and ensure that all legally cast ballots are
3  counted.  Integral to the right to vote is the assurance of voter
4  access and the right for all votes legally cast to be counted;

5          (5)  additionally, preventing a valid vote from being
6  counted violates the basic constitutional rights guaranteed to each
7  citizen by the United States Constitution; and

8          (6)  providing for voter access and increasing the
9  stability of a constitutional democracy ensures public confidence
10  in the legitimacy of public officers chosen by election.

11      SECTION 1.04.  Chapter 1, Election Code, is amended by
12  adding Section 1.0015 to read as follows:

13      Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the
14  legislature that the application of this code and the conduct of
15  elections be uniform and consistent throughout this state to reduce
16  the likelihood of fraud in the conduct of elections, protect the
17  secrecy of the ballot, promote voter access, and ensure that all
18  legally cast ballots are counted.

19      SECTION 1.05.  Section 1.003, Election Code, is amended by
20  adding Subsection (a-1) to read as follows:

21      (a-1)  Election officials and other public officials shall
22  strictly construe the provisions of this code to effect the intent
23  of the legislature under Section 1.0015.

24      SECTION 1.06.  Section 1.005, Election Code, is amended by
25  amending Subdivision (4-a) and adding Subdivision (4-b) to read as
26  follows:

27          (4-a)  "Election official" means:

1                    (A)  a county clerk;

2                    (B)  a permanent or temporary deputy county clerk;

3                    (C)  an elections administrator;

4                    (D)  a permanent or temporary employee of an
5  elections administrator;

6                    (E)  an election judge;

7                    (F)  an alternate election judge;

8                    (G)  an early voting clerk;

9                    (H)  a deputy early voting clerk;

10                   (I)  an election clerk;

11                   (J)  the presiding judge of an early voting ballot
12 board;

13                   (K)  the alternate presiding judge of an early
14 voting ballot board;

15                   (L)  a member of an early voting ballot board;

16                   (M)  the chair of a signature verification
17 committee;

18                   (N)  the vice chair of a signature verification
19 committee;

20                   (O)  a member of a signature verification
21 committee;

22                   (P)  the presiding judge of a central counting
23 station;

24                   (Q)  the alternate presiding judge of a central
25 counting station;

26                   (R)  a central counting station manager;

27                   (S)  a central counting station clerk;

S.B. No. 1

1            (T)  a tabulation supervisor;

2            (U)  an assistant to a tabulation supervisor; and

3            (V)  a chair of a county political party holding a

4 primary election or a runoff primary election.

5         (4-b)  "Federal judge" means:

6            (A)  a judge, former judge, or retired judge of a

7 United States court of appeals;

8            (B)  a judge, former judge, or retired judge of a

9 United States district court;

10            (C)  a judge, former judge, or retired judge of a

11 United States bankruptcy court; or

12            (D)  a magistrate judge, former magistrate judge,

13 or retired magistrate judge of a United States district court.

14       SECTION 1.07.  Section 1.018, Election Code, is amended to

15 read as follows:

16       Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to

17 Section 1.03, Penal Code, and to other titles of the Penal Code that

18 may apply to this code, Titles 2 and [Title] 4, Penal Code, apply

19 [applies] to offenses prescribed by this code.

20       SECTION 1.08.  Chapter 1, Election Code, is amended by

21 adding Section 1.022 to read as follows:

22       Sec. 1.022.  REASONABLE ACCOMMODATION OR MODIFICATION.  A

23 provision of this code may not be interpreted to prohibit or limit

24 the right of a qualified individual with a disability from

25 requesting a reasonable accommodation or modification to any

26 election standard, practice, or procedure mandated by law or rule

27 that the individual is entitled to request under federal or state

S.B. No. 1

1   law.

2                    ARTICLE 2.  REGISTRATION OF VOTERS

3        SECTION 2.01.  Section 13.002, Election Code, is amended by

4   adding Subsection (c-1) to read as follows:

5        (c-1)  The information required under Subsections (c)(3),

6   (4), (5), (6), and (8) must be supplied by the person desiring to

7   register to vote.

8        SECTION 2.02.  Section 13.007, Election Code, is amended to

9   read as follows:

10       Sec. 13.007.  FALSE STATEMENT ON APPLICATION.  (a)  A person

11  commits an offense if the person knowingly or intentionally:

12            (1)  makes a false statement; or

13            (2)  requests, commands, coerces, or attempts to induce

14  another  person  to  make  a  false  statement  on  a  registration

15  application.

16       (b)  An  offense  under  this  section  is  a  Class  A  [B]

17  misdemeanor, except that an offense under this section is a state

18  jail felony if the person:

19            (1)  directly  or  through  a  third  party  offers  or

20  provides  compensation  or  other  benefit  to  a  person  for  activity

21  described by Subsection (a); or

22            (2)  solicits,  receives,  or  accepts  compensation  or

23  other benefit for an activity described by Subsection (a).

24       (c)  If  conduct  that  constitutes  an  offense  under  this

25  section  also  constitutes  an  offense  under  another  law,  the  actor

26  may be prosecuted under this section, the other law, or both. [For

27  purposes of this code, an offense under this section is considered

S.B. No. 1

1  to be perjury, but may be prosecuted only under this section.]

2       SECTION 2.03.  Section 15.021, Election Code, is amended by

3  amending Subsections (b) and (d) and adding Subsections (d-1) and

4  (d-2) to read as follows:

5       (b)  Except as provided by Subsection (d), the [The] voter

6  shall  use  the  registration  certificate  or  a  registration

7  application form as the notice, indicating the correct information

8  in the appropriate space on the certificate or application form

9  unless the voter does not have possession of the certificate or an

10  application form at the time of giving the notice.

11      (d)  A voter [who continues to reside in the county in which

12  the voter is registered] may correct information under this section

13  by  digital  transmission  of  the  information  under  a  program

14  administered  by  the  secretary  of  state  and  the  Department  of

15  Information Resources.

16      (d-1)  If the notice indicates that a voter no longer resides

17  in the county in which the voter is registered, the registrar shall

18  forward the notice and the voter's application for registration to

19  the  registrar  of  the  county  in  which  the  voter  resides.   The

20  registrars  shall  coordinate  to  ensure  that  the  voter's  existing

21  registration is canceled immediately after the voter is registered

22  in  the  county  in  which  the  voter  resides  in  accordance  with

23  Subsection (d-2).

24      (d-2)  A  registrar  who  receives  a  voter's  notice  and

25  application  from  another  registrar  under  Subsection  (d-1)  shall

26  treat it as an original application for registration under Section

27  13.002, and shall register the voter if the voter resides in the

S.B. No. 1

1  county and is otherwise eligible under Section 13.001.

2       SECTION 2.04.  Section 15.028, Election Code, is amended to

3  read as follows:

4       Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO

5  PROSECUTOR].  [(a)]  If the registrar determines that a person who

6  is not eligible to vote registered to vote or [a registered voter]

7  voted in an election, the registrar shall, within 72 hours not

8  including weekends after making the determination, execute and

9  deliver to the attorney general, the secretary of state, and the

10 county or district attorney having jurisdiction in the territory

11 covered by the election an affidavit stating the relevant facts.

12      [(b)  If the election covers territory in more than one

13 county, the registrar shall also deliver an affidavit to the

14 attorney general.]

15      SECTION  2.05.  Section 16.0332, Election Code, is amended

16 by amending Subsection (a) and adding Subsections (a-1), (d), and

17 (e) to read as follows:

18      (a)  After  the  registrar  receives  notification [a  list]

19 under  Subsection (a-1) of this section,  Section 18.068 of  this

20 code, or Section 62.113, Government Code, of persons excused or

21 disqualified from jury service because of citizenship status or

22 notification of persons who indicate a lack of citizenship status

23 in connection with a motor vehicle or Department of Public Safety

24 record as provided by Subsection (a-1), the registrar shall deliver

25 to each registered voter whose name appears on the list a written

26 notice requiring the voter to submit to the registrar proof of

27 United States citizenship in the form of a certified copy of the

S.B. No. 1

1  voter's birth certificate, United States passport, or certificate
2  of naturalization or any other form prescribed by the secretary of
3  state.  The notice shall be delivered by forwardable mail to the
4  mailing address on the voter's registration application and to any
5  new address of the voter known to the registrar.
6       (a-1)  The secretary of state shall enter into an agreement
7  with the Department of Public Safety under which information in the
8  existing   statewide   computerized   voter   registration   list   is
9  compared against information in the database of the Department of
10 Public  Safety  on  a  monthly  basis  to  verify  the  accuracy  of
11 citizenship   status   information   previously   provided   on   voter
12 registration  applications.   In  comparing  information  under  this
13 subsection, the secretary of state shall consider only a voter's
14 information in the database of the Department of Public Safety that
15 was derived from documents presented by the voter to the department
16 after the person's current voter registration became effective, and
17 may not consider information derived from documents presented by
18 the  voter  to  the  department  before  the  person's  current  voter
19 registration became effective.
20      (d)  The secretary of state shall prescribe rules for the
21 administration of this section.
22      (e)  Not later than December 31 of each year, the secretary
23 of state shall provide a report to the legislature of the number of
24 voter registrations canceled under this section during the calendar
25 year.
26      SECTION 2.06.  Section 18.065, Election Code, is amended by
27 adding Subsections (e), (f), (g), (h), and (i) to read as follows:

87S21482                           8

S.B. No. 1

1  (e) If the secretary of state determines that a voter

2  registrar is not in substantial compliance with a requirement

3  imposed on the registrar by a provision or rule described in

4  Subsection (a), the secretary of state shall:

5  (1) for the first violation, require the registrar to

6  attend a training course under Subsection (h);

7  (2) for the second violation, audit the voter

8  registration list for the county in which the registrar serves to

9  determine the actions needed to achieve substantial compliance

10 under Subsection (a) and provide the results of the audit to the

11 registrar; or

12 (3) for a third or subsequent violation, if the

13 secretary of state determines that the registrar has not performed

14 any overt actions in pursuance of compliance with the actions

15 identified under Subdivision (2) as necessary for the registrar to

16 achieve substantial compliance under Subsection (a) within 14 days

17 of receiving the results of the audit conducted under that

18 subsection, inform the attorney general that the county which the

19 registrar serves may be subject to a civil penalty under Subsection

20 (f).

21 (f) A county is liable to this state for a civil penalty of

22 $1,000 for each day after the 14th day following the receipt of the

23 results of the audit conducted under Subsection (e)(2) that the

24 county's voter registrar fails to take overt action to comply with

25 the actions identified under that subsection as necessary for the

26 registrar to achieve substantial compliance under Subsection (a).

27 The attorney general may bring an action to recover a civil penalty

S.B. No. 1

1  imposed under this section.

2      (g)  A civil penalty collected by the attorney general under

3  this section shall be deposited in the state treasury to the credit

4  of the general revenue fund.

5      (h)  The secretary of state shall develop and implement a

6  training course for registrars on substantial compliance with

7  Sections 15.083, 16.032, and 18.061 and with rules implementing the

8  statewide computerized voter registration list.

9      (i)  The secretary of state shall adopt rules and prescribe

10  procedures for the implementation of this section.

11      SECTION 2.07.  Section 18.068, Election Code, is amended by

12  amending Subsection (a) and adding Subsection (a-1) to read as

13  follows:

14      (a)  The secretary of state shall quarterly compare the

15  information received under Section 16.001 of this code and Sections

16  [Section] 62.113 and 62.114, Government Code, to the statewide

17  computerized voter registration list.  If the secretary determines

18  that a voter on the registration list is deceased or has been

19  excused or disqualified from jury service because the voter is not a

20  citizen or a resident of the county in which the voter is registered

21  to vote, the secretary shall send notice of the determination

22  to the voter registrar of the counties considered appropriate by

23  the secretary.

24      (a-1)  The secretary of state is not required to send notice

25  under Subsection (a) for a voter who is subject to an exemption from

26  jury service under Section 62.106, Government Code, if that

27  exemption is the only reason the voter is excused from jury service.

87S21482                          10

S.B. No. 1

1    SECTION 2.08.   Section 31.006, Election Code, is amended to
2  read as follows:
3    Sec. 31.006.   REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.
4  (a)  If, after receiving or discovering information indicating that
5  [a complaint alleging] criminal conduct in connection with an
6  election has occurred, the secretary of state determines that there
7  is reasonable cause to suspect that [the alleged] criminal conduct
8  occurred,  the  secretary  shall  promptly  refer  the  information
9  [complaint] to the attorney general.  The secretary shall deliver
10  to the attorney general all pertinent documents and information in
11  the secretary's possession.
12    (b)  The   documents   and   information   submitted   under
13  Subsection (a) are not considered public information until:
14       (1)  the secretary of state makes a determination that
15  the  information  [complaint]  received  does  not  warrant  an
16  investigation; or
17       (2)  if referred to the attorney general, the attorney
18  general has completed the investigation or has made a determination
19  that the  information  [complaint]  referred  does  not  warrant  an
20  investigation.
21    SECTION 2.09.   Subchapter B, Chapter 87, Election Code, is
22  amended by adding Section 87.028 to read as follows:
23    Sec. 87.028.   ACCESS TO INFORMATION.   (a)  On request, a
24  county  election  official  shall  provide  to  a  member  of  an  early
25  voting  ballot  board  all  available  information  necessary  to
26  fulfilling the functions of the board, including any information
27  from  the  statewide  computerized  voter  registration  list  under

S.B. No. 1

1    Section 18.061.

2          (b)  On request, a county election official shall provide to

3    a  member  of  a  signature  verification  committee  all  available

4    information necessary to fulfilling the functions of the committee,

5    including  any  information  from  the  statewide  computerized  voter

6    registration list under Section 18.061.

7          (c)  The secretary of state shall adopt rules as necessary to

8    prevent  a  member  of  an  early  voting  ballot  board  or  signature

9    verification   committee   from   retaining   or   sharing   personally

10   identifiable  information  from  the  statewide  computerized  voter

11   registration list under Section 18.061 obtained under this section

12   for any reason unrelated to the official's official duties.

13         SECTION 2.10.  Section  62.113(b),  Government  Code,  is

14   amended to read as follows:

15         (b)  On the third business day of each month, the clerk shall

16   send a copy of the list of persons excused or disqualified because

17   of citizenship in the previous month to:

18               (1)  the voter registrar of the county;

19               (2)  the secretary of state; and

20               (3)  the county or district attorney[, as applicable,]

21   for an investigation of whether the person committed an offense

22   under Section 13.007, Election Code, or other law.

23         SECTION 2.11.  Sections 62.114(b) and (c), Government Code,

24   are amended to read as follows:

25         (b)  On the third business day of each month, the clerk shall

26   send [to the voter registrar of the county] a copy of the list of

27   persons excused or disqualified in the previous month because the

87S21482                          12

S.B. No. 1

1  persons do not reside in the county <u>to:</u>

2          <u>(1)   the voter registrar of the county; and</u>

3          <u>(2)   the secretary of state</u>.

4      (c)   A list compiled under this section may not be used for a

5  purpose other than a purpose described by Subsection (b) or Section

6  15.081 <u>or 18.068</u>, Election Code.

7          ARTICLE 3.   CONDUCT AND SECURITY OF ELECTIONS

8      SECTION 3.01.   Section 2.053(a), Election Code, is amended

9  to read as follows:

10     (a)   On receipt of the certification, the governing body of

11 the political subdivision by order or ordinance <u>shall</u> [may] declare

12 each unopposed candidate elected to the office.   If no election is

13 to be held on election day by the political subdivision, a copy of

14 the order or ordinance shall be posted on election day at each

15 polling place used or that would have been used in the election.

16     SECTION 3.02.   Section 2.056(c), Election Code, is amended

17 to read as follows:

18     (c)   A certifying authority <u>shall</u> [may] declare a candidate

19 elected to an office of the state or county government if, were the

20 election held, only the votes cast for that candidate in the

21 election for that office may be counted.

22     SECTION 3.03.   Sections 43.007(c) and (d), Election Code,

23 are amended to read as follows:

24     (c)   In conducting the program, the secretary of state shall

25 provide for an audit of the <u>voting system equipment</u> [~~direct~~

26 ~~recording electronic voting units~~] before and after the election,

27 and during the election to the extent such an audit is practicable.

S.B. No. 1

1      (d)  The secretary of state shall select to participate in

2  the program each county that:

3          (1)  has held a public hearing under Subsection (b);

4          (2)  has  submitted  documentation  listing  the  steps

5  taken  to  solicit  input  on  participating  in  the  program  by

6  organizations or persons who represent the interests of voters;

7          (3)  has implemented a computerized voter registration

8  list that allows an election officer at the polling place to verify

9  that a voter has not previously voted in the election;

10         (4)  uses direct recording electronic voting machines,

11  ballot marking devices, or hand-marked scannable paper ballots that

12  are printed and scanned at the polling place or any other type of

13  voting system equipment that the secretary of state determines is

14  capable of processing votes for each type of ballot to be voted in

15  the county; and

16         (5)  is determined by the secretary of state to have the

17  appropriate technological capabilities.

18      SECTION 3.04.  Section 43.031(b), Election Code, is amended

19  to read as follows:

20      (b)  Each polling place shall be located inside a building.

21  No voter may cast a vote from inside a motor vehicle unless the

22  voter meets the requirements of Section 64.009.

23      SECTION 3.05.  Section 52.092(a), Election Code, is amended

24  to read as follows:

25      (a)  Except as provided by Section 2.053(c) or 2.056(e), for

26  [For] an election at which offices regularly filled at the general

27  election for state and county officers are to appear on the ballot,

87S21482            14

S.B. No. 1

1  the offices shall be listed in the following order:

2              (1)   offices of the federal government;

3              (2)   offices of the state government:

4                    (A)   statewide offices;

5                    (B)   district offices;

6              (3)   offices of the county government:

7                    (A)   county offices;

8                    (B)   precinct offices.

9        SECTION 3.06.   Section 61.002, Election Code, is amended to

10  read as follows:

11       Sec. 61.002.   OPENING AND CLOSING POLLING PLACE FOR VOTING.

12  (a)  Immediately before opening the polls for voting on the first

13  day of early voting and on election day, the presiding election

14  judge or alternate election judge shall confirm that each voting

15  machine has any public counter reset to zero and shall print the

16  tape that shows the counter was set to zero for each candidate or

17  measure on the ballot.

18       (b)  At the official time for opening the polls for voting,

19  an election officer shall open the polling place entrance and admit

20  the voters.

21       (c)  Immediately  after  closing  the  polls  for  voting  on

22  election day, the presiding election judge or alternate election

23  judge shall print the tape to show the number of votes cast for each

24  candidate or ballot measure for each voting machine.

25       (d)  Each election judge or alternate election judge present

26  shall sign a tape printed under this section.

27       SECTION 3.07.   Section 64.007(c), Election Code, is amended

S.B. No. 1

1  to read as follows:

2       (c)  An election officer shall maintain a register of spoiled

3  ballots at the polling place.  An election officer shall enter on

4  the register the name of each voter who returns a spoiled ballot and

5  the spoiled ballot's number.  <u>The secretary of state shall create</u>

6  <u>and promulgate a form to be used for this purpose.</u>

7       SECTION 3.08.  Subchapter A, Chapter 66, Election Code, is

8  amended by adding Section 66.004 to read as follows:

9       <u>Sec. 66.004.  POLLING PLACE CHECKLISTS.  The secretary of</u>

10 <u>state   shall   adopt   rules   and   create   a   checklist   or   similar</u>

11 <u>guidelines to assist the presiding judge of a polling place in</u>

12 <u>processing forms and conducting procedures required by this code at</u>

13 <u>the opening and closing of the polling place.</u>

14      SECTION 3.09.  Section 85.005, Election Code, is amended to

15 read as follows:

16      Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING.  (a) Except

17 as provided by Subsection (c), in an election in which a county

18 clerk [or city secretary] is the early voting clerk under Section

19 83.002 [or 83.005], early voting by personal appearance at the main

20 early voting polling place shall be conducted on <u>each weekday of</u>

21 [the weekdays of] the early voting period <u>that is not a legal state</u>

22 <u>holiday</u> and <u>for a period of at least nine hours, except that voting</u>

23 <u>may not be conducted earlier than 6 a.m. or later than 10 p.m.</u>

24 [during the hours that the county clerk's or city secretary's main

25 business office is regularly open for business.]

26      (b)  In an election to which Subsection (a) does not apply,

27 early voting by personal appearance at the main early voting

S.B. No. 1

1  polling place shall be conducted at least <u>nine</u> [~~eight~~] hours each
2  weekday of the early voting period that is not a legal state holiday
3  unless the territory covered by the election has fewer than 1,000
4  registered voters.  In that case, the voting shall be conducted at
5  least <u>four</u> [~~three~~] hours each day.  The authority ordering the
6  election, or the county clerk if that person is the early voting
7  clerk, shall determine which hours the voting is to be conducted.

8        (c)  In a county with a population of <u>55,000</u> [~~100,000~~] or
9  more, the voting in a primary election or the general election for
10  state and county officers shall be conducted at the main early
11  voting polling place for at least 12 hours on each weekday of the
12  last week of the early voting period, and the voting in a special
13  election ordered by the governor shall be conducted at the main
14  early voting polling place for at least 12 hours on each of the last
15  two days of the early voting period.  <u>Voting under this subsection</u>
16  <u>may not be conducted earlier than 6 a.m. or later than 10 p.m.</u>
17  Voting shall be conducted in accordance with this subsection in
18  those elections in a county with a population under <u>55,000</u>
19  [~~100,000~~] on receipt by the early voting clerk of a written request
20  for the extended hours submitted by at least 15 registered voters of
21  the county.  The request must be submitted in time to enable
22  compliance with Section 85.067.

23        (d)  <u>A voter who has not voted before the scheduled time for</u>
24  <u>closing a polling place is entitled to vote after that time if the</u>
25  <u>voter is in line at the polling place by closing time.  The</u>
26  <u>secretary of state shall promulgate any materials and provide any</u>
27  <u>training to presiding judges necessary to properly process voters</u>

S.B. No. 1

1   under this subsection [~~In an election ordered by a city, early~~

2   ~~voting by personal appearance at the main early voting polling~~

3   ~~place shall be conducted for at least 12 hours:~~

4           [~~(1) on one weekday, if the early voting period~~

5   ~~consists of less than six weekdays; or~~

6           [~~(2) on two weekdays, if the early voting period~~

7   ~~consists of six or more weekdays~~].

8           SECTION 3.10.  Sections 85.006(b) and (e), Election Code,

9   are amended to read as follows:

10          (b)  In an election in which a county clerk [~~or city~~

11  ~~secretary~~] is the early voting clerk under Section 83.002 [~~or~~

12  ~~83.005~~], only the early voting clerk may order voting on a Saturday

13  or Sunday.  The clerk must do so by written order.

14          (e)  In a primary election or the general election for state

15  and county officers in a county with a population of 55,000

16  [~~100,000~~] or more, the early voting clerk shall order voting by

17  personal appearance [~~voting~~] at the main early voting polling place

18  to be conducted on the last Saturday of the early voting period for

19  at least 12 hours, except that voting may not be conducted earlier

20  than 6 a.m. or later than 10 p.m., [~~on the last Saturday~~] and on the

21  last Sunday of the early voting period for at least six [~~five~~]

22  hours, except that voting may not be conducted earlier than 9 a.m.

23  or later than 10 p.m [~~on the last Sunday of the early voting~~

24  ~~period~~].  The early voting clerk shall order voting to be conducted

25  at those times in those elections in a county with a population

26  under 55,000 [~~100,000~~] on receipt of a written request for those

27  hours submitted by at least 15 registered voters of the county.  The

S.B. No. 1

1  request must be submitted in time to enable compliance with Section
2  85.007.    This  subsection  supersedes  any  provision  of  this
3  subchapter to the extent of any conflict.

4      SECTION 3.11.  Section  85.010(a-1),  Election  Code,  is
5  amended to read as follows:

6      (a-1)  In  this  section,  "eligible  county  polling  place"
7  means an early voting polling place[, other than a polling place
8  established under Section 85.062(e),] established by a county.

9      SECTION 3.12.  Section 85.061(a), Election Code, is amended
10 to read as follows:

11     (a)  In a countywide election in which the county clerk is
12 the  early  voting  clerk  under  Section  83.002,  an  early  voting
13 polling place shall be located <u>inside</u> [at] each branch office that
14 is regularly maintained for conducting general clerical functions
15 of the county clerk, except as provided by Subsection (b).  <u>If a</u>
16 <u>suitable room is unavailable inside the branch office, the polling</u>
17 <u>place may be located in another room inside the same building as the</u>
18 <u>branch office.</u>

19     SECTION 3.13.  Section 85.062, Election Code, is amended by
20 amending Subsection (b) and adding Subsection (f-1) to read as
21 follows:

22     (b)  A polling place established under this section may be
23 located, subject to Subsection (d), at any place in the territory
24 served by the early voting clerk and may be located <u>inside</u> [in] any
25 <u>building</u> [stationary structure] as directed by the authority
26 establishing  the  branch  office.   The  polling  place  may  <u>not</u>  be
27 located in a movable structure in the general election for state and

87S21482                    19