IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 5:21-cv-844 (XR) <br> (Consolidated Cases) |

## UNITED STATES' AMENDED COMPLAINT

The United States of America, plaintiff herein, alleges:

1. In August 2021, Texas enacted Senate Bill 1 ("SB 1"), omnibus legislation that restricts eligible voters' ability to cast a ballot and have that ballot counted in several respects. *See* Election Integrity Protection Act of 2021, S.B. 1, 87th Legis., 2d Spec. Sess. (Tex. 2021).

2. In this action, the United States challenges provisions of SB 1 that deny eligible voters meaningful assistance in the voting booth and require rejection of mail ballot materials for immaterial errors or omissions. These provisions violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101.

3. The challenged provisions will disenfranchise eligible Texas citizens who seek to exercise their right to vote, including voters with limited English proficiency, voters with disabilities, elderly voters, members of the military deployed away from home, and American citizens residing outside of the country. These vulnerable voters already confront barriers to the ballot box, and SB 1 will exacerbate the challenges they face in exercising their fundamental right to vote.

4. Before SB 1, the State of Texas already imposed some of the strictest limitations in the nation on the right of certain citizens to voting assistance. SB 1 further, and impermissibly, restricts the core right to meaningful assistance in the voting booth. Prohibiting assistors from answering voters' questions, responding to requests to clarify ballot translations, and confirming that voters with visual impairments have marked a ballot as intended will curtail fundamental voting rights without advancing any legitimate state interest.

5. Before SB 1, the State of Texas already limited mail voting to a small subset of the electorate, even in the midst of a global pandemic. SB 1 will disenfranchise some eligible mail voters based on paperwork errors or omissions immaterial to their qualifications to vote. Conditioning the right to cast a mail ballot on a voter's ability to recall and recite the identification number provided on an application for voter registration months or years before will curtail fundamental voting rights without advancing any legitimate state interest.

6. The Attorney General files this action pursuant to Sections 11(a), 12(d), and 208 of the Voting Rights Act of 1965, as amended, 52 U.S.C. §§ 10307(a), 10308(d), 10508; Section 101 of the Civil Rights Act of 1964, as amended, 52 U.S.C. § 10101(a)(2)(B); and Section 131 of the Civil Rights Act of 1957, as amended, 52 U.S.C. § 10101(c), to enforce voting rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution.

7. Section 208 of the Voting Rights Act guarantees that voters who require assistance to vote by reason of blindness, disability, or inability to read or write may receive assistance by a person of the voter's choice.

8. Section 101 of the Civil Rights Act of 1964 ensures that voters will not be deprived of the right to vote because of an error or omission on a paper or record that is not material to the voter's qualifications under State law to vote in an election.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a) and 52 U.S.C. §§ 10101(d) and 10308(f).

10. Venue is proper in this Court under 28 U.S.C. §§ 124(d)(4) and 1391(b).

**PARTIES**

11. The Voting Rights Act authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 208 of the Act, 52 U.S.C. §§ 10307(a), 10308(d), and the Civil Rights Act of 1957 authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(c).

12. Defendant the State of Texas is one of the states of the United States of America.

13. Defendant John Scott is the Texas Secretary of State. The Texas Secretary of State is the State's chief election officer. *See* Tex. Elec. Code § 31.001(a). The Office of the Texas Secretary of State is responsible for coordinating implementation of SB 1 and maintaining uniform application, operation, and interpretation of all state election laws across the State. *See* Tex. Elec. Code § 31.003. Secretary Scott's relevant duties include, but are not limited to, "prepar[ing] detailed and comprehensive written directives and instructions" and "distribut[ing] these materials to the appropriate state and local authorities having duties in the administration of [state election] laws." *Id.* Secretary Scott is also empowered to "order a person performing official functions in the administration of any part of the electoral processes" to correct any conduct that "impedes the free exercise of a citizen's voting rights." Tex. Elec. Code § 31.005(b). Secretary Scott is sued in his official capacity.

## ALLEGATIONS

**The State of Texas**

14. The State of Texas's history of official voting-related discrimination against its disfavored citizens is longstanding and well-documented. *See, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 439-40 (2006); *Bush v. Vera*, 517 U.S. 952, 981-82 (1996) (plurality opinion); *White v. Regester*, 412 U.S. 755, 767-70 (1973). Federal intervention has been necessary to eliminate numerous devices intentionally used to restrict minority voting in Texas. *See, e.g.*, *White*, 412 U.S. at 768 (poll tax); *Terry v. Adams*, 345 U.S. 461 (1953) (private primary); *Smith v. Allwright*, 321 U.S. 649 (1944) (white primary); *Nixon v. Herndon*, 273 U.S. 536 (1927) (exclusion of minorities). In recent years, courts have found Texas's redistricting plans and voter identification requirements to discriminate against minority voters. *See Abbott v. Perez*, 138 S. Ct. 2305, 2316-17, 2334-35 (2018); *Veasey v. Abbott*, 830 F.3d 216, 243-65 (5th Cir. 2016) (en banc).

15. There is a history of discrimination against voters with disabilities in Texas. *See Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 424 (5th Cir. 1997); Office of the Texas Secretary of State, *Election Law Opinion DAD-27* (1982) (describing arbitrary application of prohibition against "idiots and lunatics" exercising the right to vote); *see also* 42 U.S.C. § 12101(a)(2)-(3).

16. According to the 2020 Census, Texas has a total population of 29,145,505, with a Hispanic/Latino population of 11,441,717 (39.3%), a non-Hispanic Black/African American population of 3,629,872 (12.5%), and a non-Hispanic Asian American population of 1,717,386 (5.9%).

17. According to the 2020 Census, Texas has a voting-age population (VAP) of 21,866,700, with a Hispanic/Latino VAP of 7,907,319 (36.2%), a non-Hispanic Black/African

4

American VAP of 2,661,244 (12.2%), and a non-Hispanic Asian American VAP of 1,289,444 (5.9%).

18. The 2015-2019 American Community Survey (ACS) estimated that the citizen voting age population (CVAP) of Texas was 18,181,330, with a Hispanic/Latino CVAP of 5,429,160 (29.9%), a non-Hispanic Black/African American CVAP of 2,383,950 (13.1%), and a non-Hispanic Asian American CVAP of 674,830 (3.7%).

19. Between 2010 and 2020, the population of Texas increased by 3,999,944, according to U.S. Census data. The Hispanic/Latino population increased by 1,980,796, accounting for 49.5% of overall growth; the non-Hispanic Black/African American population increased by 654,133, accounting for 16.4% of overall growth; and the non-Hispanic Asian American population increased by 689,430, accounting for 17.2% of overall growth. By contrast, the non-Hispanic White population increased by 187,252, accounting for only 4.7% of overall growth.

20. As of November 2020, 24.0% of registered voters in Texas had Spanish surnames.

21. The 2015-2019 ACS estimated that among Texans age 5 or older, 3,049,758 persons speak Spanish at home and also speak English less than very well (11.6%), and that another 557,497 persons speak another language at home and also speak English less than very well (2.1%). This includes nearly 125,000 Vietnamese speakers, over 90,000 speakers of eight Indic languages, over 80,000 Mandarin or Cantonese speakers, over 30,000 Arabic speakers, nearly 30,000 Korean speakers, over 22,000 Tagalog speakers, over 17,000 French or Cajun speakers, nearly 13,000 speakers of Persian languages, over 10,000 Khmer speakers, and nearly 700 speakers of Native American languages.

22. In Texas, nearly all counties provide ballots only in English and Spanish, with Spanish ballots required by federal and state laws, including Section 203 of the Voting Rights Act, 52 U.S.C. § 10503. Two counties in Texas are covered by Section 203 for the Chinese or Vietnamese languages and two counties are covered for American Indian languages. Even where ballots are translated, many minority language voters still need assistance in the voting booth to understand the ballot and effectively exercise their right to vote. This is all the more true of voters whose principal language is not subject to federal or state requirements to provide language minority ballots in a particular jurisdiction.

23. The 2019 CDC Behavioral Risk Factor Surveillance System survey estimated that 28% of adults in Texas have a disability. According to the CDC survey, approximately 14% of adults in Texas experience mobility disabilities, 11% experience cognition disabilities, and 6% experience vision disabilities.

24. In 2016, the Texas Workforce Investment Council used 2014 survey data to estimate that 3,101,039 Texas residents have self-reported disabilities. According to the Texas report, among Texas residents age 16 and older, an estimated 1,735,723 have self-reported ambulatory difficulty, 1,045,447 have self-reported cognitive difficulty, and 649,589 have self-reported vision difficulty.

**Senate Bill 1**

25. Following the November 2020 election, Texas Elections Director Keith Ingram declared that, "in spite of all the circumstances, Texas had an election that was smooth and secure." Ingram also noted that "Texans can be justifiably proud of the hard work and creativity shown by local county election officials." David Martin Davies, *Texas Matters: The Future Is the Past When Voting in Texas*, Tex. Pub. Radio, Mar. 6, 2021.

26. In 2020, voter turnout in Texas surged to 67% of registered voters, the highest turnout rate since 1992. But despite this progress, Texas remains 43rd among the 50 states in voter turnout as a share of voting-age citizens.

27. Between 2015 and April 2021, the Office of the Texas Attorney General convicted only 16 defendants for election-related offenses, even after increases in funding to a dedicated Election Integrity Division.

28. Between 2015 and April 2021, Texas voters cast 40,257,541 ballots in federal elections alone.

29. Despite the "smooth and secure" 2020 election, *see supra* ¶ 25, and the few successful prosecutions for election crimes in recent years, on February 9, 2021, Texas Governor Greg Abbott declared "election integrity" to be an emergency item for the regular session of the Eighty-Seventh Texas Legislature.

30. In March 2021, Texas legislators introduced Senate Bill 7 and House Bill 6, both omnibus election bills. These two bills eventually merged into a negotiated version of Senate Bill 7. However, members of the Texas House prevented passage of Senate Bill 7 by leaving the floor and precluding a quorum until the close of the regular legislative session.

31. On July 7, 2021, Governor Abbott called a special session of the Texas Legislature to address "Legislation strengthening the integrity of elections in Texas," among other subjects. Members of the Texas House left the state prior to the opening of legislative business, and the Texas House did not achieve a quorum during this session.

32. On August 5, 2021, Governor Abbott called a second special session of the Texas Legislature, again to address "Legislation strengthening the integrity of elections in Texas," among other subjects. Following the return of several legislators midway through the session,

the Texas House reached a quorum.

33. On August 31, 2021, the Texas House and Texas Senate passed the final version of SB 1. Across ten articles, SB 1 addresses diverse subjects including voter registration, polling place procedures, poll watchers, voting by mail, voter assistance, and election crimes.

34. Governor Abbott signed SB 1 into law on September 7, 2021.

35. SB 1 will go into effect on December 2, 2021.

**Voter Assistance in Texas Prior to SB 1**

36. Texas law divides voter assistance into two categories, which the Election Code labels "interpretation" and "assistance." Interpreters facilitate communication between a voter and a poll worker when the poll worker "does not understand the language used by a voter." Tex. Elec. Code § 61.032. Assistors aid "in marking the ballot . . . if the voter cannot prepare the ballot because of a physical disability that renders the voter unable to write or see or an inability to read the language in which the ballot is written." Tex. Elec. Code § 64.031. Thus, for voters with limited English proficiency, assistance may include ballot translation. *See* Tex. Elec. Code § 61.034.

37. Before SB 1 was enacted, Texas law provided that assistance "include[d]," but was not expressly limited to, "reading the ballot to the voter; directing the voter to read the ballot; marking the voter's ballot; or directing the voter to mark the ballot." Tex. Elec. Code § 64.0321.

38. Before SB 1 was enacted, Texas law required individuals who provide voter assistance to take the following oath:

> I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not

8

the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs.

Texas Election Code § 64.034.

39. Before SB 1 was enacted, guidance for election administrators in Texas directed assistors to be "be prepared to read or explain all ballot choices or questions in a language the voter understands." Disability Rights Texas, *Texas Election Administrators Guide to Working with Voters with Disabilities* 16 (Mar. 2013). Texas distributed this guidance on the Secretary of State's website from October 2014 until May 2021. *See, e.g.*, Tex. Sec'y of State, *Annual Seminar Presentation Files* (May 19, 2021), https://web.archive.org/web/20210519114519/https://www.sos.state.tx.us/elections/laws/seminars/speakers/index.shtml.

40. Before SB 1 was enacted, Texas poll worker training materials directed election officials to "[r]ely on the voter as the 'expert'" and to "ask them what you can do to best assist them." Disability Rights Texas, *Voters with Disabilities: Poll Worker Training* 10 (Oct. 2013); *see also* Tex. Sec'y of State, *Training Your Workers* 18 (Aug. 2021) (directing local officials to train poll workers to contact Disability Rights Texas for assistance regarding voters with disabilities).

**Voter Assistance Requirements of SB 1**

41. SB 1 revises and expands the required oath for individuals who provide voter assistance. In full, the revised oath states:

> I swear (or affirm) under penalty of perjury that the voter I am assisting represented to me they are eligible to receive assistance; I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot; I will prepare the voter's ballot as the voter directs; I did not pressure or coerce the voter into choosing me to provide assistance; I am not the voter's employer, an agent of the voter's employer, or an

9

officer or agent of a labor union to which the voter belongs; I will not communicate information about how the voter has voted to another person; and I understand that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted.

SB 1 § 6.04 (to be codified at Tex. Elec. Code § 64.034).

42. Thus, SB 1 incorporates six new or revised requirements in the assistor's oath.

- Assistors must acknowledge that their oath is under penalty of perjury;

- Assistors must state that a voter has affirmatively represented to the assistor that the voter is eligible to receive assistance;

- Assistors must not answer a voter's questions;

- Assistors must not pressure or coerce a voter into choosing the assistor to provide assistance;

- Assistors must not communicate information about how a voter has voted to another person; and

- Assistors must acknowledge that the ballot of a voter who receives assistance may not be counted if the voter was not in fact eligible for assistance.

43. The Office of the Texas Secretary of State has not issued guidance concerning implementation of the revised oath for individuals who provide voter assistance.

44. By requiring individuals who provide voter assistance to take the revised oath, SB 1 constrains assistance to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot."

45. By requiring individuals who provide voter assistance to take the revised oath, SB 1 prohibits assistors from answering a voter's questions, explaining the voting process, paraphrasing complex language, and providing other forms of voting assistance that some qualified voters require to cast an informed and effective vote. Witnesses testifying against SB 1

10

and predecessor bills stressed the need for such assistance, including at the August 9, 2021, hearing of the Texas Senate Hearing on State Affairs and the August 23, 2021, hearing of the Texas House Select Committee on Constitutional Rights and Remedies.

**Mail Voting in Texas Prior to SB 1**

46. Under Texas law, a "qualified voter" is an individual who is 18 years of age or older, is a United States citizen, is a resident of the state, has not been adjudged mentally incompetent, has not been convicted of a felony (unless they have completed their term of sentence or received a pardon), and is registered to vote. Tex. Elec. Code § 11.002.

47. Texas law authorizes six categories of qualified voters to cast ballots by mail: those who expect to be absent during the entire voting period (including the period for in-person early voting), those with a disability, those who will be 65 or older on Election Day, those confined in jail, those who are involuntarily committed, and certified participants in Texas's address confidentiality program. Tex. Elec. Code §§ 82.001-.004, .007-.008.

48. Under current law, unchanged by SB 1, a Texas voter may request a mail ballot by submitting an application that is "in writing and signed by the applicant." Tex. Elec. Code § 84.001.

49. Under current law, unchanged by SB 1, if an application does not "fully comply with the applicable requirements," the early voting clerk must mail the applicant a new application form as well as a written notice identifying the defect and explaining how it can be corrected. Tex. Elec. Code § 86.008.

50. Before SB 1 was enacted, Texas law provided that an application for a mail ballot had to include only "the applicant's name and the address at which the applicant is registered to vote," information demonstrating eligibility for a mail ballot, an indication of the election for

which the voter requests a mail ballot, and a mailing address (if different from the address of registration). Tex. Elec. Code § 84.002.

51. Before SB 1 was enacted, Texas law provided that the mail ballot application contained elements sufficient to identify a registered voter and establish that the voter is qualified to cast a mail ballot under Texas law. *See* Tex. Sec'y of State, *Application for Ballot by Mail* (Dec. 2017), https://web.archive.org/web/20210731234716/https://webservices.sos.state.tx.us/forms/5-15f.pdf. Thus, Texas did not require an identification document number or partial social security number to establish qualifications to vote in an election or to cast a mail ballot.

52. Under current law, unchanged by SB 1, if a voter provides a different last name on a mail ballot application from the last name on the voter's application for voter registration, election officials must still process the application and provide mail ballot materials, so long as officials can confirm that the applicant is a registered voter in the jurisdiction. *See* Tex. Sec'y of State, *Early Voting by Mail* 31 (2021).

53. Under current law, unchanged by SB 1, if a voter provides a residence address on a mail ballot application that differs from the address at which the voter is registered, election officials must still process the application and provide mail ballot materials, along with a statement of residence that the voter may use to confirm their residential address, so long as the new address is within the jurisdiction of the same voter registrar. *See* Tex. Sec'y of State, *Early Voting by Mail* 30 (2021).

54. Before SB 1 was enacted, Texas law provided that errors, omissions, and discrepancies concerning additional requested information did not result in rejection of a mail ballot application. Thus, under current law, unchanged by SB 1, if a mail ballot application

"does not include the applicant's correct voter registration number or county election precinct of residence," the early voting clerk must "enter the appropriate information on the application before providing a ballot to the applicant." Tex. Elec. Code § 86.001; *see also* Tex. Elec. Code § 84.014 (addressing inconsistencies between "information maintained by the voter registrar" and "a date of birth, driver's license number, or social security number" on a mail ballot application).

55. Under current law, unchanged by SB 1, upon completing a mail ballot, a Texas "voter must place it in the official ballot envelope and then seal the ballot envelope, place the ballot envelope in the official carrier envelope and then seal the carrier envelope, and sign the certificate on the carrier envelope." Tex. Elec. Code § 86.005.

56. Under current law, unchanged by SB 1, if an early voting clerk finds that the carrier envelope does not comply with legal requirements, the clerk may either return the carrier envelope to the voter so that the voter can correct the defect before the ballot receipt deadline or advise the voter that they may appear in person to correct the defect or cancel their application, allowing the voter to vote on Election Day. Tex. Elec. Code § 86.011.

57. Under current law, unchanged by SB 1, a timely mail ballot submitted by a registered voter may be rejected if (1) the carrier envelope was not properly executed, (2) the voter's signature on their application or carrier envelope was determined to have been executed by a person other than the voter or a witness, or (3) the voter failed to meet the requirements to vote by mail. Tex. Elec. Code §§ 87.027, 87.041(b). Thus, Texas law already establishes security measures for mail ballots.

**Mail Voting Requirements of SB 1**

58. SB 1 establishes new identification number requirements for both mail ballot

applications and mail ballot carrier envelopes.

59. Under SB 1, a voter must provide "the number of the applicant's [Texas] driver's license, election identification certificate, or a personal identification card issued by the Department of Public Safety" on both the mail ballot application and the ballot carrier envelope, even if the underlying identification is no longer valid. SB 1 § 5.02 (to be codified at Tex. Elec. Code § 84.002); SB 1 § 5.08 (to be codified at Tex. Elec. Code § 86.002). If a voter has never been issued such a number, the voter must either provide the last four digits of their social security number or state that they have never been issued a Texas identification document number or social security number. SB 1 § 5.02 (to be codified at Tex. Elec. Code § 84.002); SB 1 § 5.08 (to be codified at Tex. Elec. Code § 86.002).

60. Under SB 1, early voting clerks "shall reject" a mail ballot application that includes an identification document number or social security number that "does not identify the same voter identified on the applicant's application for voter registration." SB 1 § 5.07 (to be codified at Tex. Elec. Code § 86.001).

61. Under SB 1, a mail ballot "may be accepted only if" the identification document number or social security number provided on the carrier envelope "identifies the same voter identified on the voter's application for voter registration." SB 1 § 5.13 (to be codified at Tex. Elec. Code § 87.041).

62. Under SB 1, upon identification of a defect arising from the identification number provided on a ballot carrier envelope, election officials must either return the carrier envelope to the voter (if enough time remains to correct the error) or provide the voter with alternative cure instructions. SB 1 § 5.10 (to be codified at Tex. Elec. Code § 86.015); SB 1 § 5.12 (to be codified at Tex. Elec. Code § 87.0271); SB 1 § 5.14 (to be codified at Tex. Elec. Code

§ 87.0411).

63. By requiring rejection of mail ballot materials that do not contain identification numbers that identify the same voter identified on the voter's application for voter registration, SB 1 mandates rejection of written materials requisite to voting based on errors or omissions that are not material to determining a voter's qualification to vote or vote by mail. In turn, the rejection of ballot applications and ballot carrier envelopes based on these immaterial errors or omissions will disenfranchise eligible voters.

64. Some qualified Texas voters will not be able to provide the identification number required by SB 1. For example, voters who have lost a driver's license or disposed of an expired identification card nonetheless have been issued a Texas identification document number for purposes of SB 1. But they may not have available records of that number. Moreover, such voters cannot provide a partial social security number in lieu of their unknown identification document number.

65. Some qualified voters who attempt to comply with SB 1 will provide an identification document number that is not in the Texas Election Administration Management (TEAM) database. This includes some voters who obtained their current form of Texas identification only after registering to vote and some voters who registered to vote before January 1, 2004, when Texas first allowed registrants to provide an identification document number. Tex. H.B. 1549, 78th Legis. § 1 (2003); *see also* Tex. Elec. Code § 13.002(c)(8)(A). Because these voters' identification document numbers will not identify the same voter identified on the voter's application for voter registration, SB 1 appears to require rejection of their mail ballot materials.

**FIRST CAUSE OF ACTION**

66. The United States realleges and incorporates by reference the allegations set forth above.

67. Section 208 of the Voting Rights Act establishes that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

68. Section 6.04 of SB 1 prohibits a voter's assistor of choice from providing federally protected assistance by limiting permissible actions to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot."

69. Section 6.04 of SB 1 violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, by prohibiting eligible voters' assistors of choice from providing necessary and effective forms of assistance.

70. Unless enjoined by order of this Court, Defendants will continue to violate Section 208 by implementing and enforcing Section 6.04 of SB 1, including through issuance of written or verbal directives, orders, and instructions to local election officials, and other actions to obtain and maintain uniformity in the application, operation, and interpretation of Section 6.04 of SB 1.

**SECOND CAUSE OF ACTION**

71. The United States realleges and incorporates by reference the allegations set forth above.

72. Section 101 of the Civil Rights Act of 1964 prohibits any person "acting under color of law" from "deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. § 10101(a)(2)(B).

73. Section 5.07 and Section 5.13 of SB 1 require election officials to reject mail ballot materials if a voter fails to include a driver's license number, election identification certificate number, personal identification certificate number, or partial social security number that identifies the same voter identified on the voter's application for voter registration, unless the voter has certified that he or she has not been issued such a number.

74. Driver's license numbers, election identification certificate numbers, personal identification certificate numbers, and partial social security numbers are not material to determining whether a voter meets State law qualifications to vote or to cast a mail ballot. *See* Tex. Elec. Code §§ 11.001(a), 82.001-.004, 82.007-.008.

75. Section 5.07 and Section 5.13 of SB 1 violate Section 101 by requiring rejection of mail ballot materials—thereby denying the right to vote—because of errors or omissions not material in determining whether such individuals are qualified to vote.

76. Unless enjoined by order of this Court, Defendants will continue to violate Section 101 by implementing and enforcing Section 5.07 and Section 5.13 of SB 1, including through issuance of written or verbal directives, orders, and instructions to local election officials, and other actions to obtain and maintain uniformity in the application, operation, and interpretation of Sections 5.07 and 5.13 of SB 1.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order:

(1) Declaring that Section 6.04 of Senate Bill 1 violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508;

(2) Declaring that Sections 5.07 and 5.13 of Senate Bill 1 violate Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

(3) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Section 6.04 of Senate Bill 1 that violate Section 208 of the Voting Rights Act;

(4) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Sections 5.07 and 5.13 of Senate Bill 1 that violate Section 101 of the Civil Rights Act of 1964;

(5) Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's order by state and local authorities administering the State's electoral processes;

(6) Granting such additional relief as the interests of justice may require.

Date: November 30, 2021

        KRISTEN CLARKE
        Assistant Attorney General
        Civil Rights Division

        PAMELA S. KARLAN
        Principal Deputy Assistant Attorney General
        Civil Rights Division

        */s/ Daniel J. Freeman*
        T. CHRISTIAN HERREN, JR.
        RICHARD A. DELLHEIM
        DANIEL J. FREEMAN
        DANA PAIKOWSKY
        MICHAEL E. STEWART
        JENNIFER YUN
        Attorneys, Voting Section
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue NW
        Washington, DC 20530

## CERTIFICATE OF SERVICE

  I hereby certify that on November 30, 2021, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

               */s/ Daniel J. Freeman*
               Daniel J. Freeman
               Civil Rights Division
               U.S. Department of Justice
               950 Pennsylvania Ave, NW
               Washington, DC 20530
               (202) 305-4355
               daniel.freeman@usdoj.gov