**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| *Defendants*. | § | |
| OCA-GREATER HOUSTON, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 1:21-cv-780-XR |
| | § | |
| JOHN SCOTT, *et al*,. | § | |
| *Defendants*. | § | |

**STATE DEFENDANTS' MOTION TO DISMISS THE**
**OCA-GREATER HOUSTON PLAINTIFFS' AMENDED COMPLAINT**

### TABLE OF CONTENTS

Table of Contents ..........................................................................................................................i

Table of Authorities.....................................................................................................................ii

Introduction..................................................................................................................................1

Background...................................................................................................................................2

    I.  SB1 Article 5: Mail Voting ...............................................................................................2

    II.  SB1 Article 6: Voter Assistance.......................................................................................3

    III. SBI Article 7: Election Offenses......................................................................................4

Argument .....................................................................................................................................4

    I.  The Court Lacks Jurisdiction Over Plaintiffs' Claims ......................................................4

        A.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Secretary of State 6

        B.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Attorney General 9

        C.  Plaintiffs Fail to Demonstrate an Alternative Exception to Sovereign Immunity ...........11

        D.  Plaintiffs Fali to Plausibly Allege Traceability or Redressability...........................................12

    II.  Plaintiffs Fail to State a Claim Under the ADA, Rehabilitation Act, or Section 208...............13

        A.  Plaintiffs Fail to Allege Qualifying Disabilities ...................................................................13

        B.  Plaintiffs Cannot Assert Disability Claims as Third Parties................................................14

        C.  Plaintiffs' Alleged Injuries are Not Traceable to the State Defendants.............................15

        D.  Plaintiffs' Claims Fail on the Merits .....................................................................................17

    III. The OCA Plaintiffs Lack Private Causes of Action Under the VRA and CRA......................19

Conclusion ..................................................................................................................................19

TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abbott*,
  956 F.3d 696 (5th Cir. 2020)............................................................................... 5, 10, 11

*Air Evac EMS, Inc. v. Tex. Dept. of Ins.*,
  851 F.3d 507 (5th Cir. 2017)......................................................................................... 5

*Ala. State Conference of the NAACP v. Alabama*,
  949 F.3d 647 (11th Cir. 2020) .................................................................................... 12

*Alexander v. Choate*,
  469 U.S. 287 (1985)..................................................................................................... 18

*Arnold v. Cockrell*,
  306 F.3d 277 (5th Cir. 2002) (per curiam) ................................................................ 10

*Baaske v. City of Rolling Meadows*,
  191 F. Supp. 2d 1009 (N.D. Ill. 2002)........................................................................ 14

*Block v. Tex. Bd. of Law Examiners*,
  952 F.3d 613 (5th Cir. 2020)....................................................................................... 12

*Brecht v. Abrahamson*,
  507 U.S. 619 (1993)....................................................................................................... 8

*Bullock v. Calvert*,
  480 S.W.2d 367 (Tex. 1972).......................................................................................... 8

*Cadena v. El Paso County*,
  946 F.3d 717 (5th Cir 2020)........................................................................................ 18

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019)................................................................................*passim*

*Comcast Corp. v. Natl. Assoc. of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020) ................................................................................................ 13

*Cornerstone Christian Sch. v. Univ. Interscholastic League*,
  563 F.3d 127 (5th Cir. 2009)....................................................................................... 14

*Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*,
  937 F.3d 533 (5th Cir. 2019)....................................................................................... 14

*Danos v. Jones*,
  652 F.3d 577 (5th Cir. 2011)....................................................................................... 14

*Davis v. United States,*
    597 F.3d 646 (5th Cir. 2009)..........................................................................................6

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors,*
    522 F.3d 796 (7th Cir. 2008)........................................................................................13

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2017).............................................................................................13

*Friends for Am. Free Enter. Assn. v. Wal-Mart Stores, Inc.,*
    284 F.3d 575 (5th Cir. 2002)........................................................................................15

*Henrietta D. v. Bloomberg,*
    331 F.3d 261 (2d Cir. 2003).........................................................................................18

*In re Hotze,*
    627 S.W.3d 642 (Tex. 2020)...........................................................................................8

*Ivy v. Morath,*
    137 S. Ct. 414 (2016)...................................................................................................16

*Ivy v. Williams,*
    781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom.* ...........................................16

*K.P. v. LeBlanc,*
    627 F.3d 115 (5th Cir. 2010).......................................................................................7, 9

*Lexmark Intl., Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014).....................................................................................................14

*Lightbourn v. El Paso County,*
    118 F.3d 421 (5th Cir. 1997)........................................................................................16

*McDonald v. Bd. of Election Commrs.,*
    394 U.S. 802 (1969).....................................................................................................18

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020)...................................................................................5, 6, 7

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014)..........................................................................................7

*NiGen Biotech, LLC v. Paxton,*
    804 F.3d 389 (5th Cir. 2015)........................................................................................11

*OCA-Greater Houston v. Hughs,*
    867 F.3d 604 (5th Cir. 2017)................................................................................7, 8, 12

*Pa. Dept. of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ............................................................................................16

*Physician Hosps. of Am. v. Sebelius,*
    691 F.3d 649 (5th Cir. 2012) ................................................................................6

*Prison Justice League v. Bailey,*
    697 F. App'x 362 (5th Cir. 2017) (per curiam) ..................................................15

*Raj v. La. State Univ.,*
    714 F.3d 322 (5th Cir. 2013) ..............................................................................12

*Ray v. Texas,*
    No. 2:06-cv-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ..........................15

*Sims v. Tex. Dept. of Hous. & Cmty. Affairs,*
    No. 4:05-cv-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005) ......................14

*Smith v. Harris County*
    956 F.3d 311 (5th Cir. 2020) ......................................................................... 17, 18

*State v. Stephens,*
    No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ...................1, 10

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................................13

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389, 400–01 (5th Cir. 2020) ..................................................................9

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ..............................................................5, 7, 8, 11

*Tex. Democratic Party v. Hughs,*
    860 F. App'x 874 (5th Cir. 2021) (per curiam) ..............................................5, 11

*Tex. Democratic Party v. Hughs,*
    974 F.3d 570 (5th Cir. 2020) (per curiam) ..........................................................8

*Toyota Motor Mfg., Ky., Inc. v. Williams,*
    534 U.S. 184 (2002) ............................................................................................14

*United States v. Georgia,*
    546 U.S. 151 (2006) ............................................................................................12

*United States v. Mississippi,*
    380 U.S. 128 (1965) ............................................................................................12

*West Virginia v. United States*,
 479 U.S. 305 (1987)..........................................................................................12

*Wilson v. City of Southlake*,
 936 F.3d 326 (5th Cir. 2019)..........................................................................15

*Wilson v. Taylor*,
 658 F.2d 1021 (5th Cir. 1981) ..........................................................................8

*Windham v. Harris County*,
 875 F.3d 229 (5th Cir. 2017).....................................................................14, 15

**Statutes**

52 U.S.C.
 § 10308(d)........................................................................................................12
 § 10508............................................................................................................15

Tex. Elec. Code
 § 1.022........................................................................................................17, 18
 § 27.0271(c)........................................................................................................3
 § 31.002(a)..........................................................................................................8
 § 31.005..............................................................................................................9
 § 41.001............................................................................................................17
 § 43.034............................................................................................................18
 § 61.012............................................................................................................18
 § 64.009......................................................................................................17, 18
 § 64.031..............................................................................................................3
 § 64.034..............................................................................................................4
 § 64.0322(a)........................................................................................................4
 § 64.0322(b)........................................................................................................4
 § 81.001............................................................................................................17
 § 82.001-004....................................................................................................17
 § 82.002(a)........................................................................................................17
 § 82.005............................................................................................................17
 § 82.007-008....................................................................................................17
 § 84.001(f)..........................................................................................................9
 § 84.002(a)(1-a)..................................................................................................2
 § 84.011(a)(3-a)..................................................................................................2
 § 84.035..............................................................................................................2
 § 84.035(b)..........................................................................................................2

Tex. Elec. Code (Continued)

§ 86.001 ................................................................................................................. 16
§ 86.001(a) .............................................................................................................. 2
§ 86.001(c) .............................................................................................................. 9
§ 86.001(f) ............................................................................................................... 2
§ 86.001(f-1), (f-2) .................................................................................................. 2
§ 86.002 ................................................................................................................. 16
§ 86.006 ................................................................................................................. 16
§ 86.007(b) ............................................................................................................ 16
§ 86.008 ................................................................................................................... 9
§ 86.010(e) .............................................................................................................. 4
§86.011 .................................................................................................................. 16
§ 86.015 ............................................................................................................... 2, 3
§ 86.015(a) .......................................................................................................... 3, 6
§ 86.015(c)(4) ......................................................................................................... 3
§ 86.0105(a) ............................................................................................................ 4
§ 86.0105(c) ............................................................................................................ 4
§ 86.0105(e) ............................................................................................................ 4
§ 87.027 ................................................................................................................... 3
§ 87.027(i) .............................................................................................................. 16
§ 87.041(b)(2) ....................................................................................................... 16
§ 87.061 ................................................................................................................. 16
§ 87.0271 ................................................................................................................ 3
§ 87.0271(a) ............................................................................................................ 3
§ 87.0271(b) ............................................................................................................ 3
§ 87.0271(f) ............................................................................................................. 3
§ 267.017 ................................................................................................................. 4
§ 273.021 .......................................................................................................... 10, 11
§ 276.015 ................................................................................................................. 4
§ 276.016 ................................................................................................................. 4
§ 276.018 ................................................................................................................. 4
§ 276.019 ................................................................................................................. 4

Tex. Penal Code § 38.01 ......................................................................................... 4

## Other Authorities

U.S. Const. art. III, § 2 .......................................................................................... 13

28 C.F.R. § 35.150 ................................................................................................. 18

Fed. R. Civ. P. 12(b)(1), (6) ................................................................................. 13

## INTRODUCTION

Plaintiffs moved to dismiss the OCA Plaintiffs' original complaint. *See* ECF 55. At hearing on November 16, the Court warned Plaintiffs to "file an amended complaint to cure the[] deficiencies" identified by the State Defendants." Ex. A at 12. Plaintiffs since filed an amended complaint, *see* ECF 137, but it contains many of the same deficiencies as before.

*First*, Plaintiffs' claims asserted against the Secretary of State and Attorney General are barred by sovereign immunity because Plaintiffs fail to establish a sufficient enforcement connection between those officers and the challenged provisions of Senate Bill 1 (SB1). The majority of the provisions at issue are enforced by local election officials, like the early-voting clerk or an election judge. Insofar as the Secretary is involved at all, his actions do not harm Plaintiffs. Neither have Plaintiffs established that prosecution by the Attorney General is "forthcoming," particularly in light of the recent ruling by the Texas Court of Criminal Appeals that Texas law prohibits such prosecutions. *See State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021).[1] This means that Plaintiffs cannot assert the *Ex parte Young* exception to sovereign immunity—and it also means that Plaintiffs' alleged injuries are neither caused by the State Defendants nor redressable by injunctive relief directed at the Secretary or the Attorney General for purpose of Article III standing.

*Second*, with respect to Plaintiffs' claims under the Americans with Disabilities Act (ADA) Rehabilitation Act, and Section 208 of the Voting Rights Act (VRA), they fail to state a claim on several bases. Plaintiffs fail to identify specific members with qualifying disabilities as to each of the relevant entity plaintiffs. Moreover, Plaintiffs lack standing to assert their disability claims, fail to demonstrate that the State Defendants are proper defendants, and fail to plead legally sufficient claims.

Plaintiffs had the opportunity to cure these deficiencies when they amended their complaint, but they failed to do so. The State Defendants respectfully request that their claims be dismissed.[2]

---

[1]   The State of Texas and the Attorney General believe that *Stephens* was wrongly decided. The State has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision.

[2]   Plaintiffs' claims also fail for reasons not addressed in this Motion. To conserve judicial economy, the State Defendants assert only the arguments raised in this Motion, but reserve the right to raise additional arguments at a later juncture.

**BACKGROUND**

This is one of several lawsuits attacking SB1, which amends the Texas Election Code. The OCA Plaintiffs' suit targets portions of Article 5 and Article 6 of that law.

## I.      SB1 Article 5: Mail Voting

Article 5 of SB1 generally concerns voting by mail, including among other things ballot-application requirements and procedures for accepting or rejecting applications and ballots. The sections the OCA Plaintiffs challenge are addressed below.

*Sections 5.02 and 5.03* pertain to the requirements of applications for mail-in ballots and the prescribed form of the application itself. Section 5.02 requires that applications include the applicant's driver's license number, other form of identification, or a statement that the applicant has not been issued one of those forms of identification. Tex. Elec. Code § 84.002(a)(1-a). Section 5.03 amends the prescribed application form to include a space for this information. *Id.* § 84.011(a)(3-a). The requirements themselves are enforced by the early-voting clerk, not the Secretary. *See id.* § 86.001(a) (early-voting clerk "shall review each application for a ballot to be voted by mail" for compliance with statutory requirements).

*Section 5.06* concerns the actions the early-voting clerk must take if rejecting an application for a mail-in ballot. *See* Tex. Elec. Code § 84.035. SB1 amends the Election Code to authorize the election judge to allow the applicant to submit a provisional ballot in certain circumstances. *See id.* § 84.035(b). This section imposes no duties on, and is not enforced by, the Secretary.

*Section 5.07* directs the early-voting clerk to reject applications for mail-in ballots that do not contain the information required by Sections 5.02 and 5.03. *See* Tex. Elec. Code § 86.001(f). It also requires that the clerk notify the applicant of the rejection and give the applicant an opportunity to cure the application's defects. *See id.* § 86.001(f-1), (f-2). Section 5.07, like Sections 5.02 and 5.03, is enforced by the early-voting clerk, not the Secretary.

*Section 5.10* concerns electronic tracking of the status of applications for mail-in ballots and voted ballots. SB1 amends the requirements for that online mail ballot tracker to make it easier for voters to furnish required information; the tool now must allow voters to add or correct the

2

identification information required by SB1 Section 5.02. *Id.* § 86.015(c)(4). While the Secretary of State is responsible for developing the tool, *id.* § 86.015(a), the early-voting clerk is responsible for supplying relevant information for the system. If the Secretary were enjoined from ensuring the online tool functioned as required, that would make voting more difficult.

*Section 5.12* creates a method by which mail-in voters can correct defects in submitted mail ballots. Tex. Elec. Code § 87.0271. If a ballot contains one of several listed defects, and the voter can correct the defect and return the ballot before election day, the signature verification committee (a local body of review constituted by the early voting clerk) must provide the voter the opportunity to do so. *See id.* §§ 87.027, 87.0271(a), (b). The committee may do so by returning the ballot and a notification of the defect to the voter by mail, if there is sufficient time for the voter to return the ballot by mail. *Id.* § 87.0271(b)(2). If not, the committee may tell the voter by phone or e-mail of (i) the defect in the ballot and (ii) the two ways to remedy the defect: cancelling the mail-in ballot and voting in person or correcting the defect in person within the sixth day after Election Day. *Id.* § 87.0271(c). The Secretary of State "may prescribe any procedures necessary to implement this section," *id.* § 87.0271(f), but the statute itself is enforced by the local election officials.

## II.     SB1 Article 6: Voter Assistance

Article 6 of SB1 generally concerns voter assistance, eligibility requirements for giving or receiving assistance, and related procedures. Plaintiffs challenge the following specific sections.

*Sections 6.03, 6.04, and 6.05* establish procedures for voting assistants. Texas law, like federal law, entitles certain voters to assistance in marking or reading the ballot if they have an applicable physical disability or are unable to read the language in which the ballot is written. Tex. Elec. Code § 64.031. Following SB1, a person other than an election officer who assists a voter must take an oath, administered by the local election officer, swearing that the voter is eligible to receive assistance and that the assistant will assist the voter within the confines of the law. *See* Tex. Elec. Code § 64.034. The assistant must also complete a form identifying the assistant's name and address, the voter's name and address, and stating whether the assistant received any compensation or benefit from a candidate,

campaign, or political committee. *Id.* § 64.0322(a). While the Secretary of State is responsible for prescribing the form, the completed forms are submitted with the ballot and reviewed by local election officials, who are then responsible for accepting or rejecting the ballot. *Id.* § 64.0322(b); *see also id.* § 86.010(e) (form must be incorporated into the official carrier envelope of the mail-in ballot).

*Section 6.06* concerns penalties for violating voter-assistance laws. It amends the Election Code to make persons who compensate someone; offer to compensate someone; or solicit, receive, or accept compensation for assisting voters liable for a state jail felony offense. *Id.* § 86.0105(a), (c). It defines "compensation" by referring to the Penal Code's definition of "economic benefit" and exempts from its coverage "an attendant or caregiver previously known to the voter." *Id.* § 86.0105(e) (citing Tex. Penal Code § 38.01), (f).

## III.   SBI Article 7: Election Offenses

*Section 7.04* concerns election fraud, misconduct, and other unlawful practices. It implements several new election offenses, including vote harvesting for benefit, *see* Tex. Elec. Code § 276.015; unlawful solicitation and distribution of application to vote by mail, *id.* § 276.016; unlawful distribution of early voting ballots and balloting materials, *id.* § 267.017; perjury in connection with election procedures, *id.* § 276.018; and unlawfully altering election procedures, *id.* § 276.019.

ARGUMENT

## I.   The Court Lacks Jurisdiction Over Plaintiffs' Claims

At bottom, the Court lacks subject-matter jurisdiction over Plaintiffs' claims with respect to the State Defendants because the Secretary of State and Attorney General either (i) do not enforce the SB1 sections Plaintiffs challenge, or (ii) do not harm Plaintiffs with the actions they take to implement a particular provision and could not redress any injuries by changing their behavior. The former means that Plaintiffs' claims are barred by sovereign immunity, and the latter means that Plaintiffs lack standing to assert their claims. This interrelation is common because the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dept. of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017).

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *Id.* "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity, but only if the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)). Fifth Circuit "precedents distill three rules" relevant to the enforcement-connection inquiry:

> (1) "[I]t is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit";
>
> (2) "[W]here a statute is being challenged, . . . a provision-by-provision analysis is required"; and
>
> (3) "[I]n the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision."

*Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

In addition, a state official "is not a proper defendant" if enjoining the official from performing the applicable statutory duty would not "afford the Plaintiffs the relief they seek." *Mi Familia Vota*, 977 F.3d at 467. In that situation, even assuming the plaintiffs sustained an injury-in-fact, the state defendants did not *cause* those injuries, and thus enjoining those officials will not *redress* their injuries. *See City of Austin*, 943 F.3d at 1002 (plaintiffs lack standing unless there is "a significant possibility that [the state official] will act to harm a plaintiff."). Put simply, a plaintiff lacks standing to seek injunctive relief from a defendant whose official actions do not harm him.

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). Because the OCA Plaintiffs fail to do so—they do not allege facts sufficient to invoke the *Ex parte Young* exception or establish standing as to the State Defendants—their claims against the State Defendants must be dismissed.

A.      **Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Secretary of State**

With respect to the Secretary of State, Plaintiffs purport to challenge SB1 Sections 5.02, 5.03, 5.06, 5.07, 5.10, 5.12, 6.03, 6.04, 6.05, and 6.06. *See* ECF 137 ¶¶ 35–39. Even as repleaded, they do not allege a sufficient enforcement connection between the Secretary and those sections to establish jurisdiction.

1.      **The Secretary of State Lacks a Sufficient Enforcement Connection to the Challenged Provisions**

The Secretary does not enforce the challenged sections of SB1 for purposes of *Ex parte Young* and Article III standing. The Secretary either has no connection to them or has a connection that does not create enforcement responsibility, which falls on local officials.

First, enforcement of many of the requirements are specifically committed to other officials, like the early-voting clerk, election judge, or signature verification committee. *Cf. Mi Familia Vota*, 977 F.3d at 468 (Secretary has no enforcement connection with respect to ballot-printing restrictions: "The Secretary is not responsible for printing or distributing ballots. That responsibility falls on local officials."). Indeed several sections—Sections 5.02, 5.06, 5.07, and 6.06—neither mention nor involve the Secretary of State at all. *See* Background § I–II.

Second, the connection between the Secretary and the challenged sections does not create authority of the type that would permit jurisdiction under *Ex parte Young*. For instance, the Secretary must create the tool by which voters can update their personal information for mail-ballot applications. *See* Tex. Elec. Code § 86.015(a). The Secretary must create and promulgate the forms required by Section 5.03 and Sections 6.02–6.04, and he may prescribe procedures to implement Section 5.12's ballot-cure requirements. But these duties do not establish sufficient enforcement connections. For one, creating forms and developing an online ballot tracker do not harm Plaintiffs. *See Mi Familia Vota*, 977 F.3d at 468 ("Directing the Secretary not to enforce the electronic-voting-devices-only provision in [Texas Election Code] section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State is not a proper defendant.") (quotation omitted). For two, while the

Secretary's duties are mandatory, they are also ministerial—that is, they compel action by nobody but the Secretary himself. "Enforcement," on the other hand, is defined by "compulsion or constraint." *City of Austin*, 943 F.3d at 1000 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). Plaintiffs do not allege how creating a form or an online tool compels or constrains them.

### 2.    Plaintiffs' Allegations to the Contrary do Not Establish Otherwise

Plaintiffs offer several theories of why the Secretary enforces these SB1 sections. None has merit.

*First*, they contend that the Secretary has a sufficient enforcement connection because he is the "Chief Election Officer" of Texas. ECF 137 ¶ 35. In that capacity, Plaintiffs argue, he "routinely issues guidance to the county registrars," as well as "oversee[s] counties' administration of elections." *Id.* ¶¶ 35–36; *see also id.* ¶ 37 ("administering the Texas Election Code"). But the Fifth Circuit has rejected the idea that general legal administration creates an enforcement connection: "A general duty to enforce the law is insufficient for *Ex parte Young*." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) ("The required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question. . . .). The fact that the Secretary is the State's chief election officer says nothing about whether he enforces the specific sections Plaintiffs challenge.

To be sure, the Fifth Circuit previously—and wrongly—found standing satisfied in an earlier suit against the Secretary of State because the Secretary "serves as the 'chief election officer of the state.'" *OCA-Greater Houston v. Hughes*, 867 F.3d 604, 613 (5th Cir. 2017). But *OCA* "involved a *facial* challenge under the Voting Rights Act," not "an as-applied challenge to a law enforced by local officials." *Tex. Democratic Party v. Hughes*, 974 F.3d 570, 571 (5th Cir. 2020) (per curiam) (distinguishing *OCA*). Its reasoning is limited, at least, to cases considering "[t]he facial validity of a Texas election statute." *OCA*, 867 F.3d at 613.

In any event, *OCA* is inconsistent with Texas authorities, which control on the underlying question of Texas law: Does being the "chief election officer" empower the Secretary to enforce

Section 6.04? No, because the "Secretary's title chief election officer is not a delegation of authority to care for any breakdown in the election process." *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (Blacklock, J., concurring) (describing *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972)) (quotation marks omitted). *OCA* did not consider these precedents, or any other opinions from Texas courts. Justice Blacklock's *In re Hotze* concurrence post-dated *OCA*, so the *OCA* court did not have a chance to consider that opinion. And the *OCA* court appears to have been unaware of *Calvert*, which was not cited in the parties' briefs. Because *OCA* did not "squarely address[]" Texas cases interpreting the Secretary's role as chief election officer, it is not binding "by way of stare decisis." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see Wilson v. Taylor*, 658 F.2d 1021, 1034–35 (5th Cir. 1981) (refusing to follow a Fifth Circuit opinion that conflicted with a previous Supreme Court opinion that "was not called to the attention of the [first Fifth Circuit] panel").

*Second*, Plaintiffs insist that the Secretary's designing of the forms used for mail-ballot applications and voter assistance means that he "enforces" the substance of the laws they challenge. ECF 137 ¶ 37. Not so. Plaintiffs oppose the personal-identification requirement for mail-in voting and the oath to refrain from accepting compensation for voter assistance, but the Secretary has nothing to do with *enforcing* those requirements. He merely designs the forms that address those requirements. *See* Tex. Elec. Code § 31.002(a). The responsibility for enforcing those requirements—for determining whether the substantive law, rather than the design of the form, has been met—is committed to the early-voting clerk and other local election officials.

The Secretary's role in designing a form, *see* ECF 137 ¶ 37, might be sufficient in a case where the plaintiff's supposed injury is tied to discrimination that allegedly occurs on the form itself. *E.g.*, *Tex. Democratic Party v. Abbott*, 978 F.3d at 180. But that reasoning does not apply here. The OCA Plaintiffs complain not about the design of the form but that SB1 "requir[es] an application for ballot by mail or a mail-in ballot to be automatically rejected" in certain circumstances. ECF 137 ¶ 120. Those rejections are issued by local election officials, and they would occur regardless of the Secretary's actions in designing the form. For example, if "the early voting clerk" determines than an "application does not fully comply with the applicable requirements prescribed by [Title 7 of the

Election Code]," then the application is considered "defective" and the local officials send a "notice" explaining the "defect" rather than a mail-in ballot. Tex. Elec. Code § 86.008. Indeed, the Election Code separately requires local officials to "reject" an application "if the applicant is not entitled to vote by mail," *id.* § 86.001(c), and anyone "who has not made an application as provided by [Title 7 of the Election Code] is not entitled to receive an early voting ballot to be voted by mail." *Id.* § 84.001(f).

*Third*, Plaintiffs point to Texas Election Code Section 31.005, which authorizes the Secretary to "take appropriate action to protect the voting rights" of Texas citizens. *See* ECF 137 ¶ 38. But they fail to connect this statute to SB1. Nor could they; Section 31.005 has nothing to do with SB1. Plaintiffs' argument goes to the Secretary's general administration of elections, not any enforcement connection specific to SB1. *See Tex. Democratic Party*, 961 F.3d at 400–01.

*Fourth*, and last, Plaintiffs argue the Secretary "routinely collaborates with the Texas Attorney General to enforce election laws." ECF 137 ¶ 39. They claim this connection extends to the referring of election complaints to the Attorney General. *See id.* This does not suffice both because referring an election complaint for potential enforcement by another official is not "compulsion or constraint," *City of Austin*, 943 F.3d at 1000 (quoting *K.P.*, 627 F.3d at 124), and because, as explained below, the OCA Plaintiffs have not plausibly alleged that the Attorney General has a sufficient enforcement role. *See* Argument § I.B.

*     *     *

Plaintiffs fail to demonstrate the Secretary of State has a sufficient enforcement connection to the provisions of SB1 they challenge. Sovereign immunity thus bars the claims asserted against him.

**B.     Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Attorney General**

Neither do Plaintiffs establish a sufficient enforcement connection with the Attorney General. As to him, Plaintiffs purport to challenge SB1 Sections 6.04, 6.05, 6.06, and 7.04. They argue that the Attorney General is sufficiently connected to the enforcement of these provisions because he "is the chief law enforcement office of the State of Texas and is empowered to enforce Texas law." ECF 137

9

¶ 40. They allege that he is authorized to prosecute election laws, *see id.*, has lawfully prosecuted election offenses in past cases, *id.* ¶ 41, may initiate enforcement proceedings based on the new offenses, *id.* ¶ 42, posts on Twitter about his commitment to enforcing election laws generally, *id.* ¶ 43, and "maintains" election-specific divisions within the Attorney General's Office, *id.* ¶ 44. But Plaintiffs fail to grapple with binding precedent from the Texas Court of Criminal Appeals and the Fifth Circuit.

In *State v. Stephens*, the Court of Criminal Appeals held that Texas Election Code § 273.021—which states that "[t]he attorney general may prosecute a criminal offense prescribed by the election laws of this state"—"is unconstitutional" and the Attorney General "cannot initiate prosecution [of election cases] unilaterally." No. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). Accordingly, "the authority of the Attorney General is limited to assisting the district or county attorney upon request." *Id.* at *9. This Court must "take the word of the highest court on criminal matters of Texas as to the interpretation of its law." *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (per curiam). "Speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing" SB1 "is inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 1000). Accordingly, these and other allegations relating the Attorney General's authority to prosecute violations of Texas's elections law are also insufficient to establish the Attorney General as a proper defendant.

Even if the OCA Plaintiffs could overcome *Stephens*, they cannot overcome the Fifth Circuit's holding in *City of Austin*: "the mere fact that the Attorney General *has* the authority" to enforce a challenged law is insufficient to establish the requisite enforcement connection for purposes of *Ex parte Young*. 943 F.3d at 1001. Here, prosecution by the Attorney General—assuming it were allowed—would be discretionary, *see* Tex. Elec. Code § 273.021 ("The attorney general *may* prosecute a criminal offense prescribed by the election laws of the state.") (emphasis added). It is the plaintiffs' burden to show that "enforcement [is] forthcoming." *Tex. Democratic Party*, 978 F.3d at 181. "[A]n official's public statement" is insufficient to demonstrate a "likelihood" of enforcement. *Id.* (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *vacated as moot*, *Planned Parenthood for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (per curiam)). So are letters, if they make no "specific threat or indicate that enforcement [is]

forthcoming." *Id.* And the same is true of previous enforcement actions. *See City of Austin*, 943 F.3d at 1002 (enforcement of "different statutes under different circumstances does not show that he is likely to do the same here."). Instead, Plaintiffs must set forth specific facts demonstrating that "formal enforcement [is] on the horizon." *Tex. Democratic Party*, 978 F.3d at 181 (quoting *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)).

Simply put, nothing in Plaintiffs' complaint supports the conclusion that formal enforcement is on the horizon. At best, Plaintiffs allege that they think the Attorney General has the authority to prosecute violations of the SB1 sections listed above and has previously prosecuted election offenses. That is not sufficient. Plaintiffs are required to plead specific facts showing that the Attorney General is likely to enforce sections of *SB1* such that *they* would be injured.  They do not.

### C.      Plaintiffs Fail to Demonstrate an Alternative Exception to Sovereign Immunity

As explained above, the *Ex parte Young* exception to sovereign immunity does not apply. The Court therefore lacks jurisdiction over the claims the OCA Plaintiffs assert against the State Defendants unless they demonstrate an alternative exception to sovereign immunity. *See Tex. Democratic Party*, 978 F.3d at 179 (sovereign immunity applies unless it has been "waived by the state, abrogated by Congress, or an exception applies."). They fail to do so.

*Count 1 (Section 101, Civil Rights Act of 1964).* "Congress has not abrogated sovereign immunity for Civil Rights Act claims." *Tex. Democratic Party*, 860 F. App'x at 877 n.3.

*Counts 2 and 5 (Title II, ADA).* As explained in Defendants' first Motion to Dismiss, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. As explained below, Plaintiffs have not alleged the Secretary of State has engaged in conduct violating Title II, so he is entitled to sovereign immunity on Counts 2 and 5.

     *Counts 3 and 6 (Rehabilitation Act)*. Plaintiffs assert claims under the Rehabilitation Act. Although a defendant can "waive[] sovereign immunity under § 504 of the Rehabilitation Act," Plaintiffs plead no plausible facts to show such waiver. *Block*, 952 F.3d at 619.

     *Count 4 (Section 208, VRA)*. Although *OCA-Greater Houston v. Texas* holds that the VRA abrogates sovereign immunity, 867 F.3d 604, 614 (2007), that case was wrongly decided. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nor did it do so in Section 208. When the VRA authorizes relief against States, it does so through suits brought by the Attorney General, *see, e.g.*, 52 U.S.C. § 10308(d), which the Supreme Court has held are not subject to sovereign immunity. *See West Virginia v. United States*, 479 U.S. 305, 312 n.4 (1987); *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Although this Court is bound by *OCA-Greater Houston*, the State Defendants preserve this argument for appeal.

     *Counts 7 and 8 (Section 1983)*. "Congress has not abrogated state sovereign immunity . . . under § 1983," *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).

    **D.**    **Plaintiffs Fali to Plausibly Allege Traceability or Redressability**

     As explained above, sovereign immunity bars the OCA Plaintiffs' claims asserted against the State Defendants because the latter do not have a sufficient enforcement connection to the challenged provisions. But even if the OCA Plaintiffs could overcome sovereign immunity, they would still lack standing to bring their claims because any role the State Defendants have in implementing SB1 does not actually impose the injuries they have alleged sustained. To reiterate, the *Ex parte Young* analysis "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at

1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

## II.   Plaintiffs Fail to State a Claim Under the ADA, Rehabilitation Act, or Section 208

With respect to the Secretary and Attorney General, Plaintiffs assert two forms of disability-discrimination claims: (i) under the ADA and the Rehabilitation Act, *see* ECF 137 ¶¶ 124–170, 177–189, and (ii) under Section 208 of the VRA, *id.* ¶¶ 171–176. None of their allegations state a claim upon which relief can be granted. Plaintiffs do not have qualifying disabilities, and they may not bring claims on behalf of persons who actually do. Further, they do not allege a sufficient connection between either the Secretary of State or the Attorney General and the enforcement of the challenged sections of SB1. The claims must therefore be dismissed. *See* Fed. R. Civ. P. 12(b)(1), (6).

### A.   Plaintiffs Fail to Allege Qualifying Disabilities

None of the Plaintiffs has a qualifying disability. Indeed, none of them *could* have a qualifying disability; each of them is an artificial entity that is incapable of being disabled. ECF 137 ¶¶ 14, 19, 23, 28, 32. For that reason alone, their claims must be dismissed.

Associational standing does not rescue Plaintiffs. Although Plaintiffs allege they have disabled members, *id.* ¶¶ 9–12, only REVUP identifies those members. *See id.* ¶¶ 11, 165–167. The other Plaintiffs' failure to identify members who would themselves have standing to bring their claims means that they have failed to state valid claims. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing for lack of standing claim of entity plaintiff that identified no member was affected by challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing for lack of standing claims of entity plaintiff that identified no member affected by disability policy); *see also Comcast Corp. v. Natl. Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("[T]he essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change.").

### B.     Plaintiffs Cannot Assert Disability Claims as Third Parties

Even if each Plaintiff had identified particular members, their amended claims would still fail because Plaintiffs purport to bring individual claims on behalf of third parties. *See Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (plaintiff lacks statutory standing where "alleged rights at issue" belong to a third party); *see also Lexmark Intl., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014); *accord, e.g.*, *Sims v. Tex. Dept. of Hous. & Cmty. Affairs*, No. 4:05-cv-2842, 2005 WL 3132184, at *4 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) (dismissing ADA and Rehabilitation Act claims); *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016–17 (N.D. Ill. 2002) (dismissing ADA claim for lack of third-party standing).

The third element of the associational-standing test demands that "neither the claim asserted nor the relief requested requires participation of individual members," *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019), which in turn depends on "the claim's substance." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim at issue has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Plaintiffs' claims require individual participation, so they cannot be asserted by third-party entities. Disability claims, in particular, must be determined in a "case-by-case manner." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). For example, in a failure-to-accommodate case, it is a plaintiff's burden "to specifically identify the disability and resulting limitations and to request an accommodation in direct and specific terms." *Windham v. Harris County*, 875 F.3d 229, 236 (5th Cir. 2017). The plaintiff must show that a provider of public services understood the limitations resulting from a particular disability; "[o]therwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances." *Id.*; *see also Wilson v. City of Southlake*, 936 F.3d 326, 329–30 (5th Cir. 2019) (only material difference between standards for ADA and Rehabilitation Act claims is causation requirements); *Friends for Am. Free Enter. Assn. v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (the "nature of the claims asserted" demonstrates that individual participation is necessary). The case-

14

by-case nature of a disability claim applies with equal force to challenges made under § 208. *E.g.*, *Ray v. Texas*, No. 2:06-cv-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (considering specific effect of voting law on particular elderly plaintiffs under § 208).

Nothing in the amended complaint suggests that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of disability claims. Indeed, Plaintiffs cannot even claim to be protecting the entire class of those covered by the law; none of the persons identified in the amended complaint claims an entitlement to assistance on the basis of blindness or inability to read or write, two of the categories of persons covered by Section 208. 52 U.S.C. § 10508.

In fact, overlap between this amended complaint and the Houston Justice Plaintiffs' amended complaint highlights the error in allowing a plaintiff to make a broad assertion of associational standing without identifying specific members. Here, REVUP identifies three of the exact same members as does The Arc of Texas—a Houston Justice plaintiff. *Compare* ECF 137 ¶¶ 9–11, 165–167 *with* ECF 139 ¶¶ 58–61. Far from identifying persons with unique interests that would entitle them to sue as a representatives, these plaintiff groups cannot even identify *different people*.

Disability claims require individual participation. Their purpose is to ensure that a particular plaintiff, with a particular disability, can vindicate his particular rights. Plaintiffs here attempt to bring claims under the ADA, Rehabilitation Act, and Section 208 as an undifferentiated whole. That is not how disability claims work.

### C.     Plaintiffs' Alleged Injuries are Not Traceable to the State Defendants

Stating a claim for disability discrimination, whether under the ADA or the Rehabilitation Act, requires a plausible allegation that a service, program, or activity that is being denied is "provided by" the public entity being sued. *Ivy v. Williams*, 781 F.3d 250, 255 (5th Cir. 2015) (citing *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Plaintiffs' claims fail because the State Defendants do not provide the benefits Plaintiffs say they should receive.

15

In *Ivy*, the Fifth Circuit explained that plaintiffs there could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." 781 F.3d at 258. TEA merely regulated and supervised the schools that provided driver education, rather than providing that service itself. The agency therefore did not "provide[]" the service for purposes of the ADA and Rehabilitation Act. *Id.*

So too here. As explained above, local election officials, not the Secretary or Attorney General, administer Texas elections. Among other things, they receive and review ballot applications, *see* Texas Election Code § 86.001; mail carrier and ballot envelopes to voters, *id.* § 86.002; receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011; verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2); and count the results, *id.* § 87.061. The State Defendants do not share those duties.

In substance, the logic of Plaintiffs' claims would impose supervisory liability on the State Defendants. But the Fifth Circuit rejected that logic in *Lightbourn v. El Paso County*, 118 F.3d 421 (5th Cir. 1997). There, a group of plaintiffs who were blind and mobility-impaired sued the Secretary of State because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Id.* at 423–24. The district court held the ADA required the development and adoption of new voting systems—and that the Secretary had violated it because he failed to ensure the local election authorities complied with that mandate. The Fifth Circuit reversed, explaining that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA"); *see also id.* at 429 (although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance).

The same is true here for the voter-assistance and signature-match language that Plaintiffs challenge. Local elections officials, not the State Defendants, provide the benefits of the services that Plaintiffs contend they have been denied. Plaintiffs cannot plausibly allege that the State Defendants, who do not enforce the portions of SB1 challenged by the disability claims, have excluded anyone from a program or denied to anyone a benefit.

### D.   Plaintiffs' Claims Fail on the Merits

Finally, Plaintiffs have not plausibly alleged that SB1 actually discriminates against voters with disabilities—that they are "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith*, 956 F.3d at 317. In fact, Texas law expressly prohibits election officials from interpreting the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

Disabled Texans have multiple options to vote in every election. Among others, they may vote:

- in a polling place during early voting, *see id.* § 41.001, 82.005;

- at the curbside during early voting, *see id.* § 64.009;

- in a polling place on Election Day, *see id.* § 81.001;

- at the curbside on Election Day, *see id.* § 64.009; or

- by mail, *id.* at 82.002(a)

These are the same options offered to other voters, except that non-disabled voters are generally not eligible for curbside voting and may vote by mail only if they are elderly or satisfy other special conditions. *See id.* §§ 64.009, 82. 001–004, 82.007–008.

Plaintiffs have not plausibly alleged how SB1 has so curtailed the availability of voting through any one of these five methods that it constitutes an exclusion from participating in, or denial of the benefits of, the election process. *See also* 28 C.F.R. § 35.150 ("service, program, or activity, *when viewed in its entirety*" must be accessible, but public entity does not necessarily need to "make *each* of its existing facilities accessible") (emphases added). After all, Plaintiffs have a right to vote, not a right to vote by their preferred method. *See McDonald v. Bd. of Election Commrs.*, 394 U.S. 802, 807 (1969) (plaintiffs had "right to vote," not "a claimed right to receive absentee ballots").

17

Nor have Plaintiffs plausibly alleged that the operation of SB1 has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law allows for numerous accommodations for disabled voters. It guarantees to disabled voters the right to request a reasonable accommodation for or modification of any mandatory election standard, practice, or procedure if the voter is entitled to such a request under federal or state law. Tex. Elec. Code § 1.022. Texas law also requires particular accommodations for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *See id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

At bottom, the law requires *reasonable* accommodations, not preferred accommodations. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (neither ADA nor Rehabilitation Act requires equal access or equal results for individuals with disabilities). Texas's accommodations may not match Plaintiffs' preferences perfectly, but they are not required to do so. Texas is required to offer its disabled voters meaningful access to the opportunity to vote. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (reasonable accommodation must give qualified individuals "meaningful access"); *Cadena*, 946 F.3d at 725 (qualified individuals have a right to "meaningful access"). That is what Texas does—and Plaintiffs do not allege otherwise.

\*     \*     \*

With respect to their claims under the ADA, Rehabilitation Act, and Section 208 of the VRA, Plaintiffs fail to state a claim from which relief can be granted. They fail to identify specific members, cannot assert these highly individualized claims as a third party, fail to demonstrate that the State Defendants deny them the access they seek, and fail to show that SB1 violates the ADA and RA as a matter of substance. These claims must be dismissed.

**III.     The OCA Plaintiffs Lack Private Causes of Action Under the VRA and CRA**

Finally, the OCA Plaintiffs' claims under §§ 2 and 208 of the Voting Rights Act and Section 101 of the Civil Rights Act must be dismissed because those statutes do not create a private cause of action. State Defendants will not burden the Court with further briefing on these issues that they raised in their previous Motion to Dismiss, ECF 54 at 16–21, because of the Court's denial of these arguments during the November 16, 2021 status conference. State Defendants respectfully disagree with that ruling and raise these arguments to preserve them for further review.

CONCLUSION

The State Defendants respectfully request that the Court dismiss the claims asserted by the OCA-Greater Houston plaintiffs.

Date: January 5, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 5, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN