## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| HOUSTON JUSTICE, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 5:21-cv-848-XR |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| *Defendants*. | § | |

## STATE DEFENDANTS' MOTION TO DISMISS THE
## HOUSTON JUSTICE PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 2

    I.   The Court Lacks Jurisdiction Over Plaintiffs' Claims ........................................ 2

        A.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Governor ............. 3

        B.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Secretary of State 4

        C.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Attorney General.. ............................................................................................................................ 14

        D.  Plaintiffs Fail to Demonstrate an Alternative Exception to Sovereign Immunity ............ 17

        E.  Plaintiffs Fail to Plausibly Allege Traceability or Redressability ............................ 18

    II.  Plaintiffs Fail to State a Claim under the ADA, Rehabilitation Act, or Section 208 ............... 18

        A.  Plaintiffs Fail to Plausibly Allege Qualifying Disabilities ................................. 18

        B.  Plaintiffs Cannot Assert Disability Claims as Third Parties ............................. 19

        C.  Plaintiffs' Alleged Injuries are Not Traceable to the State Defendants ........................ 21

        D.  Plaintiffs' Claims Fail on the Merits ........................................................ 22

    III. The Houston Justice Plaintiffs Lack Private Causes of Action Under the VRA .................... 24

Conclusion .................................................................................................................... 25

i

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
    851 F.3d 507 (5th Cir. 2017) ............................................................................................. 2

*Ala. State Conference of the NAACP v. Alabama*,
    949 F.3d 647 (11th Cir. 2020) ..........................................................................................17

*Alexander v. Choate*,
    469 U.S. 287 (1985) ..........................................................................................................23

*Arnold v. Cockrell*,
    306 F.3d 277 (5th Cir. 2002) (per curiam) .......................................................................15

*Baaske v. City of Rolling Meadows*,
    191 F. Supp. 2d 1009 (N.D. Ill. 2002) ..............................................................................19

*Block v. Tex. Bd. of Law Examiners*,
    952 F.3d 613 (5th Cir. 2020) ............................................................................................17

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) ........................................................................................................... 5

*Bullock v. Calvert*,
    480 S.W.2d 367 (Tex. 1972) .............................................................................................. 5

*Cadena v. El Paso County*,
    946 F.3d 717 (5th Cir. 2020) ............................................................................................23

*Ctr. for Biological Diversity v. U.S. EPA*,
    937 F.3d 533 (5th Cir. 2019) ............................................................................................19

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ...............................................................................2, 3, 10, 15

*Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ......................................................................................................18

*Cornerstone Christian Sch. v. Univ. Interscholastic League*,
    563 F.3d 127 (5th Cir. 2009) ............................................................................................19

*Danos v. Jones*,
    652 F.3d 577 (5th Cir. 2011) ............................................................................................18

*Davis v. United States*,
    597 F.3d 646 (5th Cir. 2009) ............................................................................................. 3

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) ................................................................................................18

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2017) ....................................................................................................18

*Friends for Am. Free Enter. Assn. v. Wal-Mart Stores, Inc.*,
    284 F.3d 575 (5th Cir. 2002) ..............................................................................................19

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ...............................................................................................23

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020), *vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141
    S. Ct. 1261 (2021) .......................................................................................................2, 3, 15

*In re Hotze*,
    627 S.W.3d 642 (Tex. 2020) ................................................................................................ 5

*Ivy v. Williams*,
    781 F.3d 250 (5th Cir. 2015) ..............................................................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...........................................................................................................18

*Lightbourn v. El Paso County*,
    118 F.3d 421 (5th Cir. 1997) ..............................................................................................21

*McDonald v. Bd. of Election Comm'rs*,
    394 U.S. 802 (1969) ...........................................................................................................23

*Mi Familia Vota v. Abbott*,
    977 F.3d 461 (5th Cir. 2020) ................................................................................ 2, 3, 6, 11

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ....................................................................................... 3, 4, 9

*NiGen Biotech, LLC v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ..............................................................................................16

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (2007) ..................................................................................................... 5, 16

*Pa. Dept. of Corr. v. Yeskey*,
    524 U.S. 206 (1998)), *vacated as moot sub nom., Ivy v. Morath*, 137 S. Ct. 414 (2016) ...........................21

*Physician Hosps. of Am. v. Sebelius*,
    691 F.3d 649 (5th Cir. 2012) ............................................................................................... 3

*Prison Justice League v. Bailey,*
    697 F. App'x 362 (5th Cir. 2017) (per curiam) ...................................................................19

*Ray v. Texas,*
    No. 2:06-cv-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ..........................................19

*Sims v. Tex. Dept. of Hous. & Cmty. Affairs,*
    No. 4:05-cv-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005).........................................18

*Sixth Street Business Partners v. Abbott,*
    No. 1:20-cv-706, 2020 WL 4274589 (W.D Tex. July 24, 2020) ............................................3

*Smith v. Harris County,*
    956 F.3d 311 (5th Cir. 2020) ........................................................................................22, 23

*State v. Stephens,*
    No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) .............................15

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .........................................................................................................18

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ...........................................................................................4, 9

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ...........................................................................2, 3, 15, 16

*Tex. Democratic Party v. Hughs,*
    860 F. App'x 874 (5th Cir. 2021) (per curiam) ...............................................................2, 4

*Tex. Democratic Party v. Hughs,*
    974 F.3d 570 (5th Cir. 2020) (per curiam) ........................................................................5

*Toyota Motor Mfg., Ky., Inc. v. Williams,*
    534 U.S. 184 (2002) .........................................................................................................19

*United States v. Georgia,*
    546 U.S. 151 (2006) .........................................................................................................17

*United States v. Mississippi,*
    380 U.S. 128 (1965) .........................................................................................................17

*West Virginia v. United States,*
    479 U.S. 305 (1987) .........................................................................................................17

*Wilson v. City of Southlake,*
    936 F.3d 326 (5th Cir. 2019) ............................................................................................19

*Wilson v. Taylor*,
   658 F.2d 1021 (5th Cir. 1981) ......................................................................................... 5

*Windham v. Harris County*,
   875 F.3d 229 (5th Cir. 2017) ........................................................................................ 19

**Statutes**

Tex. Elec. Code

  § 1.022 ................................................................................................................. 22, 23
  § 15.028 ....................................................................................................................... 14
  § 16.0332(a) .................................................................................................................. 6
  § 16.0332(a-1) .............................................................................................................. 6
  § 18.065(e)(1) ............................................................................................................... 6
  § 18.065(e)(3) ............................................................................................................. 14
  § 18.065(f) .................................................................................................................... 6
  § 18.068(a) ................................................................................................................... 6
  § 31.001 ........................................................................................................................ 4
  § 31.001(a) .................................................................................................................... 4
  § 31.003 ........................................................................................................................ 4
  § 31.129(b) .................................................................................................................. 14
  § 32.075(g) ................................................................................................................... 8
  § 32.075(h) ................................................................................................................... 8
  § 33.008 ........................................................................................................................ 8
  § 33.051(b) .................................................................................................................... 8
  § 33.056(a) .................................................................................................................... 8
  § 33.051(a) .................................................................................................................... 8
  § 33.051(g) ................................................................................................................ 8, 14
  § 33.056(e) .................................................................................................................... 8
  § 33.056(f) .................................................................................................................... 8
  § 33.061 ........................................................................................................................ 8
  § 34.005(a) .................................................................................................................. 14
  § 34.005(b) .................................................................................................................... 9
  § 41.001 ...................................................................................................................... 22
  § 43.031(b) .................................................................................................................... 7
  § 43.034 ...................................................................................................................... 23
  § 61.012 ...................................................................................................................... 23
  § 64.009 ................................................................................................................7, 22, 23
  § 64.009(e) .................................................................................................................. 12
  § 64.009(f) .................................................................................................................. 12
  § 64.009(f-1) ............................................................................................................... 12
  § 64.009(g) .................................................................................................................. 12
  § 64.031 ...................................................................................................................... 12
  § 64.0322(a) ................................................................................................................ 13
  § 64.0322(b) ................................................................................................................ 13
  § 64.034 ...................................................................................................................... 13
  § 65.009(h) .................................................................................................................. 12

Tex. Elec. Code (Continued)

§ 66.004 ........................................................................................................................ 7
§ 81.001 ...................................................................................................................... 22
§ 82.002(a) ................................................................................................................... 22
§ 82.005 ...................................................................................................................... 22
§ 83.002 ........................................................................................................................ 7
§ 84.001(b) .................................................................................................................. 11
§ 84.002(a)(1-a)(A) ..................................................................................................... 11
§ 84.011(a)(3-a) .......................................................................................................... 11
§ 84.0111(a) ................................................................................................................ 11
§ 85.005(a) .................................................................................................................... 7
§ 85.005(d) .................................................................................................................... 7
§ 85.006(e) .................................................................................................................... 7
§ 85.062(b) .................................................................................................................... 7
§ 86.001 ...................................................................................................................... 21
§ 86.001(a) .................................................................................................................. 11
§ 86.001(f) ................................................................................................................... 11
§ 86.001(f-1) ................................................................................................................ 11
§ 86.001(f-2) ................................................................................................................ 11
§ 86.002 ...................................................................................................................... 21
§ 86.002(g) .................................................................................................................. 11
§ 86.006 ...................................................................................................................... 21
§ 86.006(a-2) ............................................................................................................... 10
§ 86.007(b) .................................................................................................................. 21
§ 86.010(e) .................................................................................................................. 13
§ 86.011 ...................................................................................................................... 21
§ 87.027 ...................................................................................................................... 11
§ 87.027(i) ................................................................................................................... 21
§ 87.0271 .................................................................................................................... 11
§ 87.0271(a) ................................................................................................................ 11
§ 87.0271(b) ................................................................................................................ 11
§ 87.0271(b)(2) ........................................................................................................... 12
§ 87.0271(c) ................................................................................................................ 12
§ 87.0271(f) ................................................................................................................. 12
§ 87.041(b)(2) ............................................................................................................. 14
§ 87.041(b)(2) ............................................................................................................. 21
§ 87.041(b)(8) ............................................................................................................. 12
§ 87.041(d-1) ............................................................................................................... 12
§ 87.0411 .............................................................................................................. 11, 12
§ 87.0411(b)(2) ........................................................................................................... 12
§ 87.0411(c) ................................................................................................................ 12
§ 87.0411(f) ................................................................................................................. 12
§ 87.061 ...................................................................................................................... 21
§ 124.002(c) .................................................................................................................. 7
§ 267.017 .................................................................................................................... 14
§ 276.015 .................................................................................................................... 14
§ 276.016 .................................................................................................................... 14
§ 276.018 .................................................................................................................... 14

Tex. Elec. Code (Continued)
    § 276.019 ..............................................................................................................14

52 U.S.C. § 10308(d) ...................................................................................17, 20

## Regulations

28 C.F.R. § 35.150 ...................................................................................................22

# INTRODUCTION

In the State Defendants' previous motions to dismiss, they explained that sovereign immunity and standing operate provision-by-provision and claim-by claim. Those prior motions noted that the Houston Justice Plaintiffs and Mi Familia Vota Plaintiffs, now joined together in one complaint,  failed to show how Governor Greg Abbott, Secretary of State John Scott, and Attorney General Ken Paxton affirmatively enforced the provisions of Senate Bill 1 ("SB1") such that they cause the injuries Plaintiffs purport to have suffered. The Houston Justice Plaintiffs have not cured that deficiency.

Instead, they have compounded it. Plaintiffs broadly challenge *twenty-eight* portions of SB1 over the course of 128 pages, but nowhere in their amended complaint do they plausibly allege that the State Defendants have an enforcement role for purposes of *Ex parte Young* and Article III standing. By and large, the challenged portions of SB1 are enforced by local election officials, like the early-voting clerk, presiding election judge, or signature verification committee. And where one of the State Defendants does have some role—like how the Secretary of State designs the tool that allows voters to update their personal identification information—that role aids voters instead of injuring them. Plaintiffs' claims as to the State Defendants should be dismissed for lack of subject-matter jurisdiction.

In addition, The Houston Justice Plaintiffs have failed to cure the deficiencies in their claims asserted under the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and Section 208 of the Voting Rights Act ("VRA"). Plaintiffs fail to plausibly allege that their members have qualifying disabilities, but even if they had done so, they would be unable to assert those individual claims as third parties. In addition, Plaintiffs fail to demonstrate that the accommodations they seek are denied by the State Defendants, as opposed to local election officials. Nor are Plaintiffs' claims sufficiently pleaded as a matter of law. They should be dismissed.[1]

---

[1] Plaintiffs' claims also fail for reasons not addressed in this Motion. To conserve judicial economy, the State Defendants assert only the arguments raised in this Motion, but reserve the right to raise additional arguments at a later juncture.

ARGUMENT

**I.    The Court Lacks Jurisdiction Over Plaintiffs' Claims**

At bottom, the Court lacks subject-matter jurisdiction over Plaintiffs' claims with respect to the State Defendants because the Governor, Secretary of State, and Attorney General either (i) do not enforce the SB1 provisions Plaintiffs challenge, or (ii) do not harm Plaintiffs with the actions they take to implement a particular provision. The former means that Plaintiffs' claims are barred by sovereign immunity, and the latter means that Plaintiffs lack standing to assert their claims. This interrelation is common because the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)).

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *Id.* But "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity, provided the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020), *vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021)). Fifth Circuit "precedents distill three rules" relevant to the enforcement-connection inquiry:

> (1) "[I]t is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit";
>
> (2) "[W]here a statute is being challenged, . . . a provision-by-provision analysis is required"; and
>
> (3) "[I]n the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision."

*Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

In addition, a state official "is not a proper defendant" if enjoining him or her from performing the applicable statutory duty would not "afford the Plaintiffs the relief they seek." *Mi Familia Vota*,

2

977 F.3d at 467. In that situation, even assuming the plaintiffs sustained an injury in fact, the state defendants did not *cause* those injuries, and thus enjoining those officials will not *redress* their injuries. *See City of Austin*, 943 F.3d at 1002 (plaintiffs lack standing unless there is "a significant possibility that [the state official] will act to harm a plaintiff."). Put simply, a plaintiff lacks standing to seek injunctive relief from a defendant whose official actions do not harm him.

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). Plaintiffs fail to allege facts sufficient to invoke the *Ex parte Young* exception or establish standing as to the State Defendants.

### A. Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Governor

The State Defendants previously explained that Plaintiffs cannot sue the Governor because he plays no role in enforcing SB1's challenged provisions. *See* ECF 64 at 3. Despite the Court's observation that, when "look[ing] at the Governor's role in enforcement on a specific provision by provision basis, . . . I don't see it," Ex. A at 13:23–14:4, Plaintiffs' amended complaint includes but a single allegation regarding the Governor. Specifically, Plaintiffs state: "Defendant GREG ABBOTT is the Governor of Texas and is sued in his official capacity. Pursuant to Article IV, Section I of the Texas Constitution, is the chief executive officer of the State of Texas." ECF 139 ¶ 71. As before, this allegation fails to establish anything more than a "general duty to see that the laws of the state are implemented." *Tex. Democratic Party*, 961 F.3d at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). The Governor should be dismissed from this lawsuit because he is not responsible for enforcing SB1. *See In re Abbott*, 956 F.3d at 709 ("If the official sued is not 'statutorily tasked with enforcing the challenged law,' the requisite connection is absent and '[the] *Young* analysis ends.'") (quoting *City of Austin*, 943 F.3d at 998; *accord Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020); *see also Sixth Street Business Partners v. Abbott*, No. 1:20-cv-706, 2020 WL 4274589, at *5 (W.D Tex. July 24, 2020).

### B.   Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Secretary of State

With respect to the Secretary of State, Plaintiffs purport to challenge SB1 §§ 2.05, 2.06, 2.07, 3.04, 3.08, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.04, 4.06, 4.07, 4.09, 4.11, 4.12, 5.01, 5.02, 5.03, 5.04, 5.07, 5.08, 5.12, 5.13, 3.14, 6.01, and 6.03. *See* ECF 139 ¶¶ 72–76. Their amended complaint is their second chance to "address these challenges" regarding the State Defendants' enforcement authority rather than "wasting everybody's time," Ex. A at 15:17–16:16, but even now, they fail to allege facts showing the Secretary has a sufficient enforcement connection to be subject to suit.

### 1.   The Secretary's "General Duties" Do Not Create a Sufficient Enforcement Connection

Plaintiffs' primary argument on why the Secretary is subject to this suit is that "[a]s 'chief election officer of the state,'" he "maintains a significant role in enforcing SB 1[.]"ECF 139 ¶ 73 (citing Tex. Elec. Code §§ 31.001, 31.003). They repeat this refrain several times, *e.g.* ¶ 213, 222, 229, but those statutes do not create the specific enforcement authority required. Section 31.001(a) identifies the Secretary as the "chief election officer of the state." Similarly, Section 31.003 charges the Secretary with the responsibility for "maintain[ing] uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." The Fifth Circuit has rejected the idea that an enforcement connection can be established by general legal administration. "[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party*, 961 F.3d at 400–01 (quoting *Morris*, 739 F.3d at 746). That is why Plaintiffs "must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party*, 860 F. App'x at 877. The fact that the Secretary is the chief election officer, and that he generally is responsible for ensuring the uniform application of election laws says nothing about whether he *enforces* the specific provisions Plaintiffs challenge. Plaintiffs cannot rely on broad and nonspecific statutory duties to establish the requisite enforcement connection.

To be sure, the Fifth Circuit previously—and wrongly—found standing satisfied in an earlier suit against the Secretary of State because the Secretary "serves as the 'chief election officer of the

state.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017). But *OCA* "involved a *facial* challenge under the Voting Rights Act," not "an as-applied challenge to a law enforced by local officials." *Tex. Democratic Party v. Hughs*, 974 F.3d 570, 571 (5th Cir. 2020) (per curiam) (distinguishing *OCA*). Its reasoning is limited, at least, to cases considering "[t]he facial validity of a Texas election statute." *OCA*, 867 F.3d at 613.

In any event, *OCA* is inconsistent with Texas authorities, which control on the underlying question of Texas law: Does being the "chief election officer" empower the Secretary to enforce Section 6.04? No, because the "Secretary's title chief election officer is not a delegation of authority to care for any breakdown in the election process." *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (Blacklock, J., concurring) (describing *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972)) (quotation marks omitted). *OCA* did not consider these precedents, or any other opinions from Texas courts. Justice Blacklock's *In re Hotze* concurrence post-dated *OCA*, so the *OCA* court did not have a chance to consider that opinion. And the *OCA* court appears to have been unaware of *Calvert*, which was not cited in the parties' briefs. Because *OCA* did not "squarely address[]" Texas cases interpreting the Secretary's role as chief election officer, it is not binding "by way of stare decisis." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see Wilson v. Taylor*, 658 F.2d 1021, 1034–35 (5th Cir. 1981) (refusing to follow a Fifth Circuit opinion that conflicted with a previous Supreme Court opinion that "was not called to the attention of the [first Fifth Circuit] panel").

### 2. Plaintiffs' Section-Specific Allegations Do Not Demonstrate a Sufficient Enforcement Connection

The State Defendants address in turn each section that Plaintiffs challenge, organized by the SB1 articles. For some articles (2, 3, and 4), the provisions are explained first, followed by argument explaining why the Secretary lacks a sufficient enforcement connection with that series of provisions. Those sections are set of with three asterisks (* * *). For other SB1 articles (5 and 6), those that require more specific explanation, the State Defendants address each provision independently.

### i.   SB1 Article 2: Voter Rolls

Article 2 of SB1 generally pertains to the registration of voters, eligibility for registration, and the maintenance of voter rolls.

*Section 2.05* concerns the maintenance of voter rolls by local registrars. It directs the registrar to remove a person from the voter rolls if the registrar receives notice that the voter's citizenship status is inaccurate. *See* Tex. Elec. Code § 16.0332(a). In addition, it instructs the Secretary of State and Department of Public Safety to enter into an agreement to compare their data to verify voters' citizenship status, which is then provided to the registrars. *See id.* § 16.0332(a-1).

*Section 2.06* relates to the Secretary of State's role in ensuring voter registrars comply with SB1 Section 2.05. It establishes penalties for noncompliance, which increase in severity with each violation, *see* Tex. Elec. Code § 18.065(e)(1) to (e)(3), including potential civil enforcement by the Attorney General, *id.* § 18.065(f). The Secretary is also directed to develop a training course for registrars with a view for compliance with Section 2.05.

*Section 2.07* directs the Secretary of State to give the voter registrar notice if he determines that a voter on the registration list no longer lives in the county where that person is registered to vote. *See* Tex. Elec. Code § 18.068(a).

*       *       *

To the extent these requirements are enforced against a particular voter, they are enforced by the voter registrar—the one who maintains voter rolls and removes ineligible voters. None of the actions the Secretary is required to take under these sections injures the Houston Justice Plaintiffs. *See Mi Familia Vota*, 977 F.3d at 465 (Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek"). Plaintiffs cannot contend that they are injured by the Secretary's role in administering laws that ensure that all voters are citizens and reside in the county in which they are registered to vote. Their only complaint appears to be that being made to substantiate one's citizenship will involve financial expense. *See* ECF 139 ¶¶ 193–94. But not only do Plaintiffs fail to identify specific individuals who would be injured by that requirement, it is the voter registrar—not the Secretary of State—who is

6

charged with requiring that information from the voter. The Secretary only provides information to the registrars, and Plaintiffs do not allege they are injured by those actions, much less that providing the information violates federal law.

### ii. SB1 Article 3: Election Conduct

Article 3 of SB1 generally refers to the conduct and security of elections.

*Section 3.04* prohibits voting "from inside a motor vehicle," Tex. Elec. Code § 43.031(b), or "drive-through voting," unless the voter is unable to enter the polling place. *See* Tex. Elec. Code § 64.009.

*Sections 3.08, 3.09, and 3.10* relate to early voting. Section 3.09 increases the mandatory early-voting hours to at least nine hours per day during weekdays, although early voting may not be conducted earlier than 6:00 am or later than 10:00 pm. *See* Tex. Elec. Code § 85.005(a). It also requires that voters who are in line at the scheduled closing time but have not voted be allowed to vote. *See id.* § 85.005(d). SB1 Section 3.10 likewise extends early-voting hours for weekends and decreases the county-population threshold for counties eligible to participate in extended early voting from 100,000 to 55,000. *See id.* § 85.006(e). Section 3.08 requires the Secretary to create a checklist to assist the presiding election judge in opening and closing polling places for the day. *See id.* § 66.004.

*Sections 3.12 and 3.13* concern eligible polling places. Generally, they amend the Election Code to require that polling places be located inside physical buildings and prohibit polling places from being located in "movable structure[s]." Tex. Elec. Code §§ 83.002, 85.062(b).

*Section 3.15* prohibits voting system ballots from being "arranged in a manner that allows a political party's candidates to be selected in one motion or gesture." Tex. Elec. Code § 124.002(c). Put simply, SB1 Section 3.15 prohibits single-choice straight-ticket voting.

*     *     *

Plaintiffs repeatedly cite these sections, *see, e.g.,* ECF 139 ¶¶ 26, 38, 42, 75, 197, 295, 310, but they allege no facts concerning the Secretary's role in enforcing them—because they cannot. Actions concerning early voting, polling places, and ballot design are taken by local government officials, like

the commissioners courts and early-voting clerks. Plaintiffs' only assertion regarding enforcement is that the Secretary "implement[s] these provisions of SB 1." ECF 139 ¶ 198. But as explained above, a general duty is insufficient to establish the requisite enforcement connection, especially when it is supported by only a conclusory assertion.

### iii.  SB1 Article 4: Conduct of Election Officers and Poll Watchers

Article 4 of SB1 relates to the conduct of election officers and poll watchers.

### A.  Conduct at Polling Places

*Section 4.01* prohibits a presiding election judge from removing a poll watcher for an election-law violation unless the violation was observed by an election judge or clerk, *see* Tex. Elec. Code § 32.075(g), although a poll watcher may be removed by a law enforcement officer for a breach of the peace. *Id.* § 32.075(h).

*Section 4.04* instructs the Secretary of State to develop a training program for poll watchers. *See* Tex. Elec. Code § 33.008.

*Section 4.06* involves the acceptance of poll watchers by the early-voting clerk or presiding election judge. It requires poll watchers to present their certificates of appointment and of completion of the applicable training program to the clerk or judge upon arrival to the polling place. *See* Tex. Elec. Code § 33.051(a). The clerk or judge must then verify the authenticity of the poll watcher's documents and, if they are authentic, must accept the watcher for service. *See id.* § 33.051(b). If accepted, the poll watcher must swear an oath—administered by the clerk or judge—that he or she will discharge the applicable duties and not disrupt the voting process. *See id.* § 33.051(h). Finally, Section 4.06 also establishes a Class A misdemeanor offense for the wrongful refusal to accept a poll watcher for service. *See id.* § 33.051(g).

*Section 4.07 and Section 4.09* concern poll watchers' entitlement to view voting activities. Section 4.07 clarifies that poll watchers must be allowed free movement generally and must be allowed to sit or stand "near enough to see and hear" relevant voting activity particularly. Tex. Elec Code § 33.056(a),

(e), (f). Section 4.09 creates the Class A misdemeanor offense of "unlawfully obstructing a poll watcher." *Id.* § 33.061.

*    *    *

Plaintiffs' primarily complaint about Sections 4.01–4.09 is that they expose election officials to potential liability for their actions toward poll watchers. *See* ECF 139 ¶¶ 225–27. But none of their allegations tie their supposed injuries have anything to do with enforcement by the Secretary. These sections (with one exception) address only early-voting clerks, presiding election judges, poll watchers, and, if necessary, law enforcement officers. Even if Plaintiffs' allegation that these sections would "increase voter and election official intimidation," ECF 139 ¶ 225, were true—and it is not—the Secretary of State would not be a proper defendant because he does not do anything to cause that harm. The Secretary does not supervise individual polling places or poll watchers during voting. Nor is the Secretary responsible for prosecutions that could impose criminal liability on anybody.

And the allegations regarding the exceptional section, Section 4.04, fail of their own accord. The only duty imposed on the Secretary in that section is to devise a training program. Plaintiffs do not allege that this duty itself violates the law or that carrying it out will harm them; their only allegation regarding that duty is that it exists. *See* ECF 139 ¶ 75 ("And the Secretary is tasked under section 4.04 with training poll watchers on their expanded authorities under SB 1. . . .") There is necessarily no allegation that the Secretary's "enforcing" the creation of the training program is connected to Plaintiffs' alleged harm because Plaintiffs allege no harm.

## B.  Referrals to the Attorney General

*Section 4.11* adds to the Secretary of State's permission to refer reported violations of law to the Attorney General a power to himself sue for injunctive relief if he "believes that a state inspector was unlawfully prevented or obstructed from the performance of the inspector's duties." *See* Tex. Elec. Code § 34.005(b). However, the Houston Justice Plaintiffs' complaint does not mention state inspectors; Section 4.11 is therefore unrelated to any of their alleged injuries or claims. And the pre-existing permission to refer reported violations to the Attorney General is not, as Plaintiffs appear to

9

argue, *see* ECF 139 ¶¶ 75–78, an omnibus power to enforce election laws that makes the Secretary a proper defendant under *Ex parte Young* or Article III. First, the discretionary permission to pass reported violations on to another official constitutes, at best, a "general duty to see that the laws of the state are implemented," which is insufficient to create jurisdiction. *See Tex. Democratic Party*, 961 F.3d at 400–01 (quoting *Morris*, 739 F.3d at 746). Second, Plaintiffs do not contend that they would be harmed by a mere referral or that such a referral would violate federal law. Any potential injury—which the Plaintiffs do not allege—would be tied to the bringing of an enforcement action, which is not the Secretary's role. Finally, though the Plaintiffs acknowledge that the Secretary's power is discretionary—and that, even if exercised, it is at least one step removed from harming them—they allege no facts that would demonstrate "a significant possibility" that the Secretary will in fact harm them. *City of Austin*, 943 F.3d at 1002.

### C.  Early-Voting Ballots

*Section 4.12* concerns procedures for delivering marked early-voting ballots. It adds a requirement that a ballot delivered in person be received by an election official, who must then record the voter's name, signature, and type of identification evidence. *See* Tex. Elec. Code § 86.006(a-2). Plaintiffs allege that the Secretary of State is responsible for designing a "roster" for use by the election official receiving the information listed above, *see* ECF 139 ¶ 75 (citing Tex. Elec. Code § 86.006(a-2)), but they do not challenge the design of the roster. Nor do they allege that the Secretary's actions in designing the roster will injure them or violate federal law. Plaintiffs' complaint concerns voters' having to deliver a ballot in person, rather than by using a drop box, but enforcing that requirement is the province of local election officials and does not depend on what the Secretary does or does not do regarding a roster. *See* Tex. Elec. Code § 86.006(a-2) ("An in-person delivery of a marked ballot voted under this chapter must be received by an election official at the time of delivery.").

\*       \*       \*

Plaintiffs fail to explain how the Secretary enforces Article 4 or how his statutory duties cause them an injury-in-fact. The process of certifying and accepting poll watchers for service, poll watchers'

monitoring of the election process, and the potential need for a poll watcher's removal all concern the early-voting clerk, the presiding election judge, and the poll watcher. Plaintiffs do not allege that the Secretary has any involvement in those interactions.

### iv.  SB1 Article 5: Voting by Mail

SB1's Article 5 generally concerns voting by mail, including ballot-application requirements and procedures for accepting or rejecting applications and ballots, among other things. The sections Plaintiffs specifically challenge are addressed below.

*Sections 5.01, 5.02 and 5.03* pertain to mail-in ballot applications and the prescribed form of the application itself. New requirements include the use of an original, or "wet," signature, *see* Tex. Elec. Code § 84.001(b), and inclusion of the applicant's driver's license number other form of identification, or certification that the applicant has not been issued appropriate identification, *see id.* § 84.002(a)(1-a)(A). The prescribed form is amended to include a space for the latter information, *id.* § 84.011(a)(3-a). These requirements are enforced by the early-voting clerk, not the Secretary. *See id.* § 86.001(a) (early-voting clerk "shall review each application for a ballot to be voted by mail" for compliance with statutory requirements); *cf. Mi Familia Vota*, 977 F.3d at 468 (Secretary has no enforcement connection with respect to ballot-printing restrictions). Plaintiffs plead no facts to the contrary.

*Section 5.04* prohibits "an officer or employee of this state or of a political subdivision" from distributing a mail-in voting ballot application "to a person who did not request an application." Tex. Elec. Code § 84.0111(a). Plaintiffs do not explain what the Secretary of State does to enforce this section 5.04; the answer is "nothing."

*Sections 5.07 and 5.08* address the new identification requirements created in Sections 5.02 and 5.03 for applications for mail-in ballots. Section 5.08 requires the form carrier-envelope for these applications to include a space for an applicant to include the required information. *See* Tex. Elec. Code § 86.002(g). Section 5.07 directs the early-voting clerk to reject applications that do not include the required information. *See id.* § 86.001(f). It also requires that the clerk notify the applicant of the rejection and give the applicant an opportunity to cure the application's defects. *See id.* § 86.001(f-1),

(f-2). As with Sections 5.01–5.03, these requirements are enforced by the early-voting clerk, not the Secretary.

*Sections 5.12, 5.13, and 5.14* concern the review, acceptance, or rejection of mail-in ballots. They create new sections of the Texas Election Code—Section 87.0271 and 87.0411—which give mail-in voters an opportunity to correct defects in submitted mail ballots. If a ballot contains one of several listed defects, and the voter can correct the defect and return the ballot before election day, the signature verification committee or early voting ballot board (local bodies of review constituted by the voting clerk) must provide the voter the opportunity to do so. *See id.* §§ 87.027; 87.0271(a), (b); 87.041(b)(8), (d-1); 87.0411. They may do so by returning the ballot and a notification of the defect to the voter by mail, if there is sufficient time for the voter to return the ballot by mail. *Id.* §§ 87.0271(b)(2), 87.0411(b)(2). If not, they may tell the voter by phone or e-mail of (i) the defect in the ballot and (ii) the two ways to remedy the defect: cancelling the mail-in ballot and voting in person or correcting the defect in person within the sixth day after Election Day. *Id.* §§ 87.0271(c), 87.0411(c). The Secretary of State "may prescribe any procedures necessary to implement" this process, *id.* §§ 87.0271(f), 87.0411(f), but the requirements themselves are enforced by the local election officials.

### v.  SB1 Article 6: Voter assistance

Section 6 of SB1 generally concerns voter assistance, eligibility requirements for giving or receiving assistance, and related procedures. Plaintiffs challenge the following specific sections.

*Section 6.01* pertains to persons who transport voters to the polls. A person who simultaneously transports seven or more voters to the polling place must fill out a form identifying the person's name and address and whether the person is also assisting the voters in filling out the ballot, though this form-filling requirement does not apply to family members, *id.* § 64.009(f), (f-1). This section also amends Section 64.009 to specify that a poll watcher is allowed to observe all activities related to this transport or to curbside voting, which is governed by that section. *Id.* § 64.009(e).

This process is implemented and enforced by "election officer[s]," *id.* § 64.009(f), not the Secretary of State. The Secretary is responsible solely for designing the form and retaining executed

forms as records. *See* Tex. Elec. Code § 64.009(g), (h). The Plaintiffs allege only that allowing poll watchers to watch activity at the polls and requiring persons to complete the form, ECF 139 ¶ 228, 232, 235, might injure; them do not allege how designing the form or retaining executed copies of it would do so.

*Sections 6.03, 6.04, and 6.05* establish procedures for voting assistants. Texas law, like federal law, entitles certain voters to assistance in marking or reading the ballot if they have an applicable physical disability or are unable to read the language in which the ballot is written. Tex. Elec. Code § 64.031. Following SB1, a person other than an election officer who assists a voter must take an oath, administered by the local election officer, swearing that the voter is eligible to receive assistance and that the assistant will assist the voter within the confines of the law. *See* Tex. Elec. Code § 64.034. The assistant must also complete a form identifying the assistant's name and address, identifying the voter's name and address, and stating whether the assistant received any compensation or benefit from a candidate, campaign, or political committee. *Id.* § 64.0322(a). While the Secretary of State is responsible for prescribing the form, the completed forms are submitted with the ballot and reviewed by local election officials, who are then responsible for accepting or rejecting the ballot. *Id.* § 64.0322(b); *see also id.* § 86.010(e) (form must be incorporated into the official carrier envelope of the mail-in ballot).

As with Section 6.01, Plaintiffs do not allege that the form injures them or that the form violates federal law. They insist that requiring an assistant "to fill out a form" and make an oath "impose barriers on voters with disabilities," ECF 139 ¶ 233, but they allege no facts demonstrating that the Secretary's actions impose those requirements. For example, Texas law would require assistants "to complete a form" regardless of whether the Secretary were enjoined from designing a form for that could be used for that purpose. Tex. Elec. Code § 64.0322(a).The Secretary is not a proper defendant as to these SB1 provisions.

Plaintiffs fail to demonstrate the Secretary of State has a sufficient enforcement connection to the provisions of SB1 they challenge. Sovereign immunity thus bars the claims asserted against him.

### C.  Plaintiffs Fail to Plausibly Allege an Enforcement Connection for the Attorney General

Neither do Plaintiffs establish a sufficient enforcement connection with the Attorney General. As to him, Plaintiffs purport to challenge SB1 Sections 2.04, 2.06, 4.06, 4.11, 5.15, 6.01, 6.04, 6.05, 7.02, 7.04, and 8.01. The State Defendants first outline the challenged sections, then address the Attorney General's insufficient connection to them.

#### 1.  The Challenged Sections

*Sections 2.04 and 2.06*, as explained, *see* Argument § I.A.2.a, Article 2 pertains to the registration of voters, eligibility for registration, and the maintenance of voter rolls. Local election officials are responsible for maintaining the relevant information, and for providing this information to the Secretary of State on a regular basis. Section 2.06 provides that upon three or more violations of these requirements, the Attorney General may initiate an enforcement action against the offending county and may seek civil penalties. *See* Tex. Elec. Code § 18.065(e)(3). Relatedly, Section 2.04 requires the voter registrar to give the Attorney General notice if it determines that a person voted who is not registered to vote. *See* Tex. Elec. Code § 15.028.

*Sections 4.06 and 4.11*, as noted, *see* Argument § I.A.2.c, these sections prohibit the wrongful rejection of a poll watcher by an early-voting clerk or presiding election judge. *See* Tex. Elec. Code § 33.051(g). In addition, Texas Election Code § 34.005(a), which is related to, but not amended by SB1 Section 4.11, authorizes the Secretary of State to refer a reported election-code violation to the Attorney General.

*Section 5.15* requires the early-voting clerk to give the Attorney General notice of any mail-in ballots rejected due to failure to comply with applicable requirements, like that the voter already voted in person in the same election. *See* Tex. Elec. Code § 87.041(b)(2).

*Sections 6.01, 6.04, and 6.05*, as discussed, *see* Argument § I.A.2.e, concern voter-assistance requirements and the penalties for compensating or offering to compensate someone for assisting a voter, or soliciting or receiving compensation for doing so.

*Sections 7.02 and 7.04* are generally concerned with election fraud, misconduct, and other unlawful practices. Specifically, Section 7.04 implements several new election offenses, including vote harvesting for benefit, *see* Tex. Elec. Code § 276.015, unlawful solicitation and distribution of application to vote by mail, *id.* § 276.016, unlawful distribution of early voting ballots and balloting materials, *id.* § 267.017, perjury in connection with election procedures, *id.* § 276.018, and unlawfully altering election procedures, *id.* § 276.019.

*Section 8.01*, as pertinent here, states that an election official may be liable to the State for a civil penalty for violating the Election Code. *See* Tex. Elec. Code § 31.129(b).

### 2. Plaintiffs Do Not Sufficiently Allege an Enforcement Role for the Attorney General

It is the plaintiffs' burden to show that "enforcement [is] forthcoming." *Tex. Democratic Party*, 978 F.3d at 181. Plaintiffs' argument on the Attorney General's enforcement of the challenged sections boils down to a recitation of the Attorney General's statutory authority and three public statements. Plaintiffs observe that the Attorney General *has authority* to investigate and prosecute Election Code violations, *may* initiate enforcement proceedings against counties under Section 2.06, and *can* bring civil suits against offending election officials under Section 8.01. *Id.* ¶ 78. They also observe that the Attorney General receives information from the Secretary of State, voter registrars, and early-voting clerks. *Id.* ¶ 78–79. They then state that the Attorney General "has demonstrated a willingness to enforce the election code," pointing to public statements regarding other enforcement actions and the structure of the Attorney General's office. *Id.* ¶ 80. These allegations fall well short of establishing an enforcement connection for purposes of *Ex parte Young*—particularly in light of binding precedent, which Plaintiffs do not address, from the Texas Court of Criminal Appeals and the Fifth Circuit.

In *State v. Stephens*, the Court of Criminal Appeals held that Texas Election Code § 273.021—which states that "[t]he attorney general may prosecute a criminal offense prescribed by the election laws of this state"—"is unconstitutional" and the Attorney General "cannot initiate prosecution [of election cases] unilaterally." No. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). That decision provides that, "the authority of the Attorney General is limited to assisting the

district or county attorney upon request." *Id.* at *9. This Court must "take the word of the highest court on criminal matters of Texas as to the interpretation of its law." *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (per curiam).[2] "Speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing" SB1 "is inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 1000). Accordingly, these and other allegations relating the Attorney General's authority to prosecute violations of Texas's elections law are also insufficient to establish the Attorney General as a proper defendant.

Even if the OCA Plaintiffs could overcome *Stephens*, they cannot overcome the Fifth Circuit's holding in *City of Austin*: "the mere fact that the Attorney General *has* the authority" to enforce a challenged law is insufficient to establish the requisite enforcement connection for purposes of *Ex parte Young*. 943 F.3d at 1001. An official's public statement is insufficient to demonstrate a likelihood of enforcement. *Id.*. So are letters from the Attorney General ordering election officials to comply with applicable laws, if they make no "specific threat or indicate that enforcement [is] forthcoming." *Id.* And the same is true of previous enforcement actions. *See City of Austin*, 943 F.3d at 1002 (holding that enforcement of "different statutes under different circumstances does not show that he is likely to do the same here"). Instead, Plaintiffs must set forth specific facts demonstrating that "formal enforcement [is] on the horizon." *Tex. Democratic Party*, 978 F.3d at 181 (quoting *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)).

Simply put, nothing in Plaintiffs' complaint supports the conclusion that formal enforcement is on the horizon. At best, Plaintiffs allege that they think the Attorney General has the authority to prosecute violations of the SB1 sections listed above and has previously prosecuted election offenses. That is not sufficient. Plaintiffs are required to plead specific facts showing that the Attorney General is likely to enforce sections of *SB1* such that *they* would be injured.  They do not.

---

[2] The State of Texas and the Attorney General believe that *Stephens* was wrongly decided. The State has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision.

### D.  Plaintiffs Fail to Demonstrate an Alternative Exception to Sovereign Immunity

As explained above, the *Ex parte Young* exception to qualified immunity does not apply. For this reason, the Court lacks jurisdiction over the claims Plaintiffs assert against the State Defendants unless Plaintiffs demonstrate an alternative exception to sovereign immunity. *See Tex. Democratic Party*, 978 F.3d at 179 (state sovereign immunity applies unless it has been "waived by the state, abrogated by Congress, or an exception applies.") They fail to do so.

*Counts 1, 2, 3, and 6 (Section 1983).* "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). *See* ECF. ¶¶ 250–300, 327–36.

*Counts 4 and 5 (Sections 2 and 208, VRA).* Although *OCA-Greater Houston v. Texas* holds that the VRA abrogates sovereign immunity, 867 F.3d 604, 614 (2007), that case was wrongly decided. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nor did it do so in Section 208. When the VRA authorizes relief against States, it does so through suits brought by the Attorney General, *see, e.g.*, 52 U.S.C. § 10308(d), which the Supreme Court has held are not subject to sovereign immunity. *See West Virginia v. United States*, 479 U.S. 305, 312 n.4 (1987); *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Although this Court is bound by *OCA-Greater Houston*, the State Defendants preserve this argument for appeal.

*Count 7 (Title II, ADA).* As explained in Defendants' first Motion to Dismiss, *see* ECF 64 at 8, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. As explained below, Plaintiffs

have not alleged the Secretary of State or Attorney General has engaged in conduct violating Title II, so they are entitled to sovereign immunity on Counts 7.

*Count 8 (Rehabilitation Act).* Although a defendant can "waive[] sovereign immunity under § 504 of the Rehabilitation Act," Plaintiffs plead no facts showing such a waiver. *Block*, 952 F.3d at 619.

### E.  Plaintiffs Fail to Plausibly Allege Traceability or Redressability

As explained above, sovereign immunity bars the Houston Justice Plaintiffs' claims asserted against the State Defendants because the latter do not have a sufficient enforcement connection to the challenged provisions. But even if Plaintiffs could overcome sovereign immunity, they would still lack standing to bring their claims because any role the State Defendants have in implementing SB1 does not actually impose the injuries they have alleged sustained. To reiterate, the *Ex parte Young* analysis "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. The most important difference is that traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2.

## II.    Plaintiffs Fail to State a Claim under the ADA, Rehabilitation Act, or Section 208

Certain Plaintiffs assert two forms of disability-discrimination claims. The Arc of Texas claims discrimination under the ADA and the Rehabilitation Act, *see* ECF ¶¶ 337–65, and the Arc, Mi Familia Vota, and Delta Sigma Theta Sorority assert claims under Section 208 of the VRA, *id.* ¶¶ 318–26 None of their allegations state a claim upon which relief can be granted. Plaintiffs do not have qualifying disabilities, and they may not bring claims on behalf of persons who actually do. Further, they do not allege a sufficient connection between the Governor, Secretary of State, or Attorney General and the enforcement of the challenged sections of SB1. The claims must be dismissed. *See* Fed. R. Civ. P. 12(b)(1), (6).

### A.  Plaintiffs Fail to Plausibly Allege Qualifying Disabilities

None of the Plaintiffs has a qualifying disability. Indeed, none of them *could* have a qualifying disability; each of them is an artificial entity that is incapable of being disabled. ECF 139 ¶ 39. For that reason alone, their claims must be dismissed. To the extent Plaintiffs rely on associational standing,

that cannot help Plaintiffs. Delta Sigma and Mi Familia Vota, which do not even allege that they have disabled members. *See id.* ¶¶ 42–48, 62–66. Their failure to identify members who would themselves have standing to bring their ADA and Rehabilitation Act claims means that they have failed to state valid claims. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing for lack of standing claim of entity plaintiff that identified no member was affected by challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing for lack of standing claims of entity plaintiff that identified no member affected by disability policy); *see also Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("[T]he essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change.").

### B.  Plaintiffs Cannot Assert Disability Claims as Third Parties

Even if each Plaintiff had identified particular members, their amended claims would still fail because Plaintiffs purport to bring individual claims on behalf of third parties. *See Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (plaintiff lacks statutory standing where "alleged rights at issue" belong to a third party); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014); *accord, e.g., Sims v. Tex. Dept. of Hous. & Cmty. Affairs*, No. 4:05-cv-2842, 2005 WL 3132184, at *4 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) (dismissing ADA and Rehabilitation Act claims); *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016–17 (N.D. Ill. 2002) (dismissing ADA claim for lack of third-party standing).

The third element of the associational-standing test demands that "neither the claim asserted nor the relief requested requires participation of individual members," *Center for Biological Diversity v. United States Environmental Protection Agency*, 937 F.3d 533, 536 (5th Cir. 2019), which in turn depends on "the claim's substance." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim at issue has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Plaintiffs' claims require individual participation, so they cannot be asserted by third-party entities. Disability claims, in particular, must be determined in a "case-by-case manner." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). For example, in a failure-to-accommodate case, it is a plaintiff's burden "to specifically identify the disability and resulting limitations and to request an accommodation in direct and specific terms." *Windham v. Harris County*, 875 F.3d 229, 236 (5th Cir. 2017). The plaintiff must show that a provider of public services understood the limitations resulting from a particular disability; "[o]therwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances." *Id.*; *see also Wilson v. City of Southlake*, 936 F.3d 326, 329–30 (5th Cir. 2019) (only material difference between standards for ADA and Rehabilitation Act claims is causation requirements); *Friends for Am. Free Enter. Assn. v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (the "nature of the claims asserted" demonstrates that individual participation is necessary). The case-by-case nature of a disability claim applies with equal force to challenges made under § 208. *E.g.*, *Ray v. Texas*, No. 2:06-cv-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (considering specific effect of voting law on particular elderly plaintiffs under § 208).

Nothing in the amended complaint suggests that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). Indeed, Plaintiffs' allegations demonstrate that the opposite is true. Plaintiffs allege that their members suffer from a wide variety of conditions—quadriplegia, cerebral palsy, muscular dystrophy, respiratory failure, and intellectual and developmental disability. *See* ECF 139. ¶¶ 58–61. They allege a variety of assistance needs. *Id.* ¶¶ 58–60. One admits to not being affected by SB1 but fearing that she will be in the future. *Id.* ¶ 61. Two of the members claim a need for assistance that in fact demonstrates one of the harms SB1 is meant to help prevent—one states that she must "ask her assistor to explain the wording of the lengthy amendments," *id.* ¶ 59, and one states that "he often needs to ask his chosen assistant questions about the information or words on the ballot," *id.* ¶ 60. Given the diversity of alleged disabilities and needed accommodations, individual participation is crucial for understanding the merits of disability claims.

Indeed, Plaintiffs cannot even claim to be protecting the entire class of those covered by the law; none of the persons identified in the amended complaint claims an entitlement to assistance on the basis of blindness or inability to read or write, two of the categories of persons covered by Section 208. 52 U.S.C. § 10508.

In fact, overlap between this amended complaint and the OCA-Greater Houston Plaintiffs' amended complaint highlights the inherent error of allowing a plaintiff to make a broad assertion of associational standing without identifying specific members. Here, the Arc identifies three of the exact same members as does REVUP Texas—an OCA-Greater Houston plaintiff. *Compare* ECF 139 ¶¶ 58–61, *with* ECF 137 ¶¶ 9–11, 165–67. Far from identifying persons with unique individualized needs that would entitle them to sue as representative, these plaintiff groups cannot even identify *different people*. Having multiple groups bring the same claims on behalf of the same individuals does not make sense or promote judicial efficiency.

Disability claims require individual participation. Their purpose is to ensure that a particular plaintiff, with a particular disability, can vindicate their particular rights. Plaintiffs here attempt to bring claims under the ADA, Rehabilitation Act, and Section 208 as an undifferentiated whole. That is not how disability claims work.

### C.  Plaintiffs' Alleged Injuries are Not Traceable to the State Defendants

Stating a claim for disability discrimination, whether under the ADA or the Rehabilitation Act, requires a plausible allegation that a service, program, or activity that is being denied is "provided by" the public entity being sued. *Ivy v. Williams*, 781 F.3d 250, 255 (5th Cir. 2015) (citing *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Plaintiffs' claims fail because the State Defendants do not provide the benefits Plaintiffs say they should receive.

In *Ivy*, the Fifth Circuit explained that plaintiffs there could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." 781 F.3d at 258. TEA merely regulated and supervised the schools

that provided driver education, rather than providing that service itself. The agency therefore did not "provide[]" the service for purposes of the ADA and Rehabilitation Act. *Id.*

So too here. As explained above, local election officials, not the Secretary or Attorney General, administer Texas elections. Among other things, they receive and review ballot applications, *see* Texas Election Code § 86.001; mail carrier and ballot envelopes to voters, *id.* § 86.002; receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011; verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2); and count the results, *id.* § 87.061. The State Defendants do not share those duties. In substance, the logic of Plaintiffs' claims would impose supervisory liability on the State Defendants. But the Fifth Circuit rejected that logic in *Lightbourn v. El Paso County*, 118 F.3d 421 (5th Cir. 1997). There, a group of plaintiffs who were blind and mobility-impaired sued the Secretary of State because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Id.* at 423–24. The district court held the ADA required the development and adoption of new voting systems—and that the Secretary had violated it because he failed to ensure the local election authorities complied with that mandate. The Fifth Circuit reversed, explaining that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA"); *see also id.* at 429 (although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance).

The same is true here for the voter-assistance and signature-match language that Plaintiffs challenge. Local elections officials, not the State Defendants, provide the benefits of the services that Plaintiffs contend they have been denied. Plaintiffs cannot plausibly allege that the State Defendants, who do not enforce the portions of SB1 challenged by the disability claims, have excluded anyone from a program or denied to anyone a benefit.

### D. Plaintiffs' Claims Fail on the Merits

Finally, Plaintiffs have not plausibly alleged that SB1 actually discriminates against voters with disabilities. They are not "excluded from participation in, or being denied benefits of," or "otherwise

being discriminated against" in voting. *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). In fact, Texas law expressly prohibits election officials from interpreting the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

Disabled Texans have multiple options to vote in every election. Among others, they may vote:

- in a polling place during early voting, *see id.* § 41.001, 82.005;

- at the curbside during early voting, *see id.* § 64.009;

- in a polling place on Election Day, *see id.* § 81.001;

- at the curbside on Election Day, *see id.* § 64.009; or

- by mail, *id.* at 82.002(a)

These are the same options offered to other voters, except that non-disabled voters are generally not eligible for curbside voting and may vote by mail only if they are elderly or satisfy other special conditions. *See id.* §§ 64.009, 82. 001–004, 82.007–008.

Plaintiffs have not plausibly alleged how SB1 has so curtailed the availability of voting through any one of these five methods that it constitutes an exclusion from participating in, or denial of the benefits of, the election process. *See also* 28 C.F.R. § 35.150 ("service, program, or activity, *when viewed in its entirety*" must be accessible, but public entity does not necessarily need to "make *each* of its existing facilities accessible") (emphases added). After all, Plaintiffs have a right to vote, not a right to vote by their preferred method. *See McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969) (plaintiffs had "right to vote," not "a claimed right to receive absentee ballots").

Nor have Plaintiffs plausibly alleged that the operation of SB1 has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law allows for numerous accommodations for disabled voters. It guarantees to disabled voters the right to request a reasonable accommodation

for or modification of any mandatory election standard, practice, or procedure if the voter is entitled to such a request under federal or state law. Tex. Elec. Code § 1.022. Texas law also requires particular accommodations for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *See id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

At bottom, the law requires *reasonable* accommodations, not preferred accommodation. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (neither ADA nor Rehabilitation Act requires equal access or equal results for individuals with disabilities). Texas's accommodations may not match Plaintiffs' preferences perfectly, but they are not required to do so. Texas is required to offer its disabled voters meaningful access to the opportunity to vote. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (reasonable accommodation must give qualified individuals "meaningful access"); *Cadena*, 946 F.3d at 725 (qualified individuals have a right to "meaningful access"). That is what Texas does—and Plaintiffs do not allege otherwise.

\*       \*       \*

With respect to their claims under the ADA, Rehabilitation Act, and Section 208 of the VRA, Plaintiffs fail to state a claim from which relief can be granted. They fail to identify specific members, cannot assert these highly individualized claims as a third party, fail to demonstrate that the State Defendants deny them the access they seek, and fail to show that SB1 violates the law as a matter of substance. These claims must be dismissed.

## III.   The Houston Justice Plaintiffs Lack Private Causes of Action Under the VRA

Finally, the Houston Justice Plaintiffs' claims under §§ 2 and 208 of the Voting Rights Act must be dismissed because those statutes do not create a private cause of action. State Defendants will

not burden the Court with further briefing on these issues that they raised in their previous Motion to Dismiss, ECF 64 at 16–21, because of the Court's denial of these arguments during the November 16, 2021 status conference. State Defendants respectfully disagree with that ruling and raise these arguments to preserve them for further review.

## CONCLUSION

The State Defendants respectfully request that the Court dismiss the claims asserted by the Houston Justice Plaintiffs.

Date: January 5, 2022                   Respectfully submitted.

KEN PAXTON                              */s/ Patrick K. Sweeten*
Attorney General of Texas               PATRICK K. SWEETEN
                                        Deputy Attorney General for Special Litigation
BRENT WEBSTER                           patrick.sweeten@oag.texas.gov
First Assistant Attorney General        Tex. State Bar No. 00798537


                                        WILLIAM T. THOMPSON
OFFICE OF THE ATTORNEY GENERAL          Deputy Chief, Special Litigation Unit
P.O. Box 12548 (MC-009)                 will.thompson@oag.texas.gov
Austin, Texas 78711-2548                Tex. State Bar No. 24088531
Tel.: (512) 463-2100
Fax: (512) 457-4410                     **COUNSEL FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 5, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN