```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                      SAN ANTONIO DIVISION

 3
     LA UNION DEL PUEBLO ENTERO,      .
 4   ET AL,                           .
                                      .
 5              PLAINTIFFS,           .
          vs.                         . DOCKET NO. 5:21-CV-844-XR
 6                                    . AND 5:21-CV-1223-XR
     GREGORY W. ABBOTT, ET AL,        .
 7                                    .
                DEFENDANTS.           .
 8

 9

10         TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
            BEFORE THE HONORABLE XAVIER RODRIGUEZ
11                UNITED STATES DISTRICT JUDGE
                      JANUARY 11, 2022
12

13

14

15

16   APPEARANCES:
     FOR THE PLAINTIFFS:      SEAN MORALES DOYLE, ESQUIRE
17                            BRENNAN CENTER FOR JUSTICE
                              120 BROADWAY
18                            SUITE 1750
                              NEW YORK, NY 10271
19

20                            RYAN V. COX, ESQUIRE
21                            TEXAS CIVIL RIGHTS PROJECT
                              2911 N. MAIN AVENUE
22                            SAN ANTONIO TX 78212

23

24

25
```

```
 1                              NINA PERALES, ESQUIRE
                                MALDEF
 2                              110 BROADWAY STREET
                                SUITE 300
 3                              SAN ANTONIO TX 78205

 4

 5                              DANIEL JOSHUA FREEMAN, ESQUIRE
                                DANA PAIKOWSKY, ESQUIRE
 6                              U.S. DEPARTMENT OF JUSTICE
                                950 PENNSYLVANIA AVENUE
 7                              4CON 8.143
                                WASHINGTON DC 20530
 8

 9

10
        FOR THE DEFENDANTS:     PATRICK K. SWEETEN, ESQUIRE
11                              WILLIAM THOMAS THOMPSON, ESQUIRE
                                JEFFREY MICHAEL WHITE, ESQUIRE
12                              TEXAS ATTORNEY GENERAL
                                P.O. BOX 12548
13                              MC 009
                                AUSTIN TX 78711
14

15

16

17

18      REPORTED BY:           GIGI SIMCOX, RMR, CRR
                                OFFICIAL COURT REPORTER
19                              UNITED STATES DISTRICT COURT
                                SAN ANTONIO, TEXAS
20

21

22

23

24

25
```

1       *(San Antonio, Texas; January 11, 2022, at 10:30 a.m., via*
2  *Zoom videoconference.)*
3           THE COURT:  Good morning.  Let's call 21 civil 1223,
4  Longoria versus Paxton, along with 21 civil 844, LUPE versus
5  Texas.
6           First of all, before I ask for appearances, I'd ask
7  that everybody check their microphones to make sure you're
8  muted.  We have a large number of individuals here.
9           We have more than 60 lawyers and participants here,
10 so to avoid feedback if you will mute your microphones unless
11 you will be speaking.
12          We are in the brand new courthouse for San Antonio
13 and this is our second week of experimenting with the new
14 technology, so I've been in here a few minutes early trying to
15 make sure that everything is in working order.
16          Let me stop here and double check with the court
17 reporter.
18           *(Off the record discussion)*
19          THE COURT:  Let me ask for appearances.
20          Who is the lead attorney for Longoria?
21          MR. MORALES-DOYLE:  Sean Morales-Doyle for the
22 Brennan Center for Justice on behalf of Isabel Longoria as a
23 plaintiff in the Longoria versus Paxton matter, Your Honor.
24          THE COURT:  Thank you.
25          Who is the lead for the State?

1          MR. SWEETEN:  William Thompson will be addressing the
2    motion.  This is Patrick Sweeten.  And on for the State also
3    is Jeff White.
4          So I'll let Mr. Thompson address the Court.
5          THE COURT:  Thank you.
6          Who is the lead attorneys for the plaintiffs in the
7    consolidated matters?
8          MS. PERALES:  Your Honor, good morning.
9          This is Nina Perales for the LUPE plaintiffs,
10   however, this morning we are going to have various different
11   counsel addressing the different issues that are before the
12   Court, and I would ask the Court to allow other counsel who
13   will be speaking today to introduce themselves.
14         THE COURT:  Thank you.
15         And the lead for the United States.
16         MR. FREEMAN:  This is Dan Freeman on behalf of the
17   United States.  Dana Paikowsky from my office will be
18   addressing the consolidation motion.
19         THE COURT:  Thank you.
20         So when an attorney does speak if you will clearly
21   identify yourself before speaking, that way the court reporter
22   is able to get a clear record.
23         So let's tackle some housekeeping matters first.
24         We had a motion for leave to file an amicus brief by
25   John Ashcroft, the Secretary of State for the State of

1  Missouri.  Some of the litigants in the consolidated matter

2  has opposed that filing of the amicus brief.

3        I have considered the matter.  The motion for leave

4  to file amicus is denied.  There's very little need to have a

5  non-Texas entity raise issues in this case.  And more

6  importantly, the amicus — amici — I'm not sure which is the

7  proper word here — appears to be asserting positions that are

8  in contrast to what the State of Texas has previously argued

9  in the past.

10       So in past matters alleging discrimination the State

11  of Texas has argued that we can't be looking at old matters,

12  that we can only be looking at new, relatively, evidence on

13  discrimination, that we shouldn't be looking at the past.

14       And I'm not sure exactly where the State of Texas

15  argues the past is and where the present is, but the amicus in

16  this case seems to argue that we should be looking at Tammany

17  Hall for evidence of voting fraud.  So it's, frankly, very

18  inconsistent and contradictory positions taken here.

19       So the motion for leave to file amicus brief is

20  denied.  That takes care of Docket Number 171, which moots the

21  motion to appear pro hac vice for Mark Hearne, Docket Number

22  165, which also moots the motion to appear by Stephen Davis,

23  Docket 166, and finally the motion to appear by John Ashcroft

24  is also mooted, 167.

25       So with that taken up we now move to the State's

1  opposed motion to consolidate cases along with an opposed

2  motion to stay.

3          So Longoria now has filed a separate lawsuit.  And

4  the argument from the State is that we should consolidate that

5  matter into the consolidated cases.  Longoria argues that

6  these are distinct issues.

7          I want to make sure I understand the Longoria

8  position here, and so let's hear from Longoria's attorneys.

9          In the Longoria matter what is it specifically — and

10  let me start here by saying this.  In the Longoria case the

11  relief that you may be seeking in that case, I want to make

12  sure, is just regarding election officials, correct?

13          MR. MORALES-DOYLE:  Election officials and public

14  officials, Your Honor.

15          So we represent both Isabel Longoria, who is the

16  elections administrator for Harris County, and Cathy Morgan

17  who is a volunteer deputy registrar in Travis and Williamson

18  Counties.

19          So, yes, election officials and public officials.

20          THE COURT:  And I want to make sure I understand what

21  your client is trying to get relief for.  So what is it your

22  clients specifically want to do that you believe SB 1 or

23  Election Code 31 prohibits?

24          MR. MORALES-DOYLE:  A variety of — sorry.  I'm

25  getting a little bit of feedback.  I apologize.

1      Essentially our clients want to be able to properly

2  advise and encourage voters to use whatever methods to allow

3  them to use to exercise their right to vote.  And that

4  includes, for some voters, the opportunity to cast their

5  ballot by mail, which in Texas requires each year applying to

6  vote by mail.

7      And you know, the ways in which they encourage voters

8  to do that vary.  In their declarations they give some

9  examples.

10     Miss Longoria often attends events where she provides

11 information about mail voting to voters, does paid advertising

12 and promotion in advance of election to encourage voters to

13 exercise their right to vote and advises voters both, at sort

14 of events like that, and on a one-on-one basis, their options

15 for casting their ballots, including the need to apply to vote

16 by mail each year.

17     And so I say there are a variety of things that each

18 of our clients would plan to do as they are -- as they have

19 set out in their declarations, unwilling to do now for fear

20 that they might be prosecuted or sued for engaging in those

21 activities.

22     THE COURT:  So Mr. Thompson, I'm assuming you are

23 arguing, since you get all the hard matters.

24     The election code, as I understand this here, the

25 Secretary of State can post on the Secretary of State website

1  the various frequently asked questions and answer them, and

2  state in the website, and I think it does, as a matter of

3  public record if you look at the Secretary of State's website,

4  that the website identifies who is eligible to vote by mail

5  and how to do so.

6        Does SB 1 prohibit an election official or a public

7  official from publishing the same information on their own

8  websites?

9        MR. THOMPSON:  Well, Your Honor, with the caveat that

10  I'm just getting into this issue since it was asserted last

11  week, my understanding is that the local officials I believe

12  are allowed to publish information on their websites that

13  matches what the secretary publishes on his website.

14        THE COURT:  So now apart from the website, if they go

15  to a public gathering, can they say — can they just hand out

16  a printout of that website?

17        MR. THOMPSON:  Your Honor, I'm not aware, I guess, of

18  a restriction on that, with the understanding that I don't

19  have a full grasp of all the nuances on this area of the law

20  yet.  But I guess what I should say is I do anticipate that we

21  will be arguing that the plaintiffs are overstating the effect

22  of SB 1 in their motion.

23        THE COURT:  So then, and to be fair to the State, I

24  didn't ask them to be ready to argue any preliminary

25  injunctive relief here.

1          And so the reason I'm sort of asking these questions

2     is I'm trying to figure out whether the issues in this case

3     are truly distinctive (audio transmission gap), consolidated

4     cases, and so Mr. Thompson, (audio transmission gap) why they

5     should be consolidated?

6          I'm hearing that the issues in the Longoria matter

7     are solely related to election officials and public officials

8     and solely relate to what type of information —

9          So I'm being told that I was — my audio lost for a

10    moment.  Is that correct or not?

11         MR. THOMPSON:  A word or two here and there.  And I,

12    for some reason, now see the blank screen of the courtroom

13    deputy rather than Your Honor, but I can hear Your Honor fine.

14         THE COURT:  And so I see that.

15         Why did the video go out?

16    *(Off the record discussion)*

17         THE COURT:  Okay.  There we go.

18         And are you able to hear me now?

19         MR. THOMPSON:  Yes, Your Honor.

20         THE COURT:  Okay.  Thank you.

21         So Mr. Thompson, I think where I left off is the

22    Longoria matter seems to be solely related to election

23    officials and public officials and solely related to the legal

24    issue of what they can or cannot say, pursuant to the newly

25    enacted provisions of SB 1.

1          To the Court, it seems to me that these are distinct

2    issues from the matters raised in the consolidated case, but

3    I'll hear your arguments.

4          MR. THOMPSON:   I appreciate that, Your Honor.

5          I'll start off by saying that it's worth noting the

6    plaintiffs thought they were related matters because this same

7    claim brought by this same plaintiff was included in the LUPE

8    original complaint that began this litigation.

9          So ECF-1 on our consolidated docket is the LUPE

10   original complaint.  It listed as a plaintiff Isabel Longoria,

11   who is now the plaintiff in Longoria versus Paxton, and it

12   stated the same First Amendment challenge to the same

13   provision of SB 1.

14         So they thought they were related enough to go

15   together in a complaint before.  We certainly think that made

16   sense at the time that the Court was consolidating all of the

17   different SB 1 complaints together, and the fact that they are

18   challenging different aspects of the same law.

19         It is worth noting that many of the other complaints

20   in this consolidated matter talk about this same provision of

21   SB 1.  The Houston Justice plaintiffs are challenging the same

22   provision of SB 1, albeit they say it is on a different

23   theory.  I think it's more of a Fourteenth Amendment theory

24   rather than a First and Fourteenth Amendment theory.

25         Other plaintiffs' complaints — and we're talking

1  about the first amended complaints I believe -- talk about

2  this provision as well.  Mr. Morales-Doyle has said in his

3  opposition paper that those plaintiffs are not challenging the

4  provision, they are merely including allegations about the

5  provision.

6          I'm not sure that's accurate.  I suppose if it is,

7  I'd like to hear it from the plaintiffs representing -- I'm

8  sorry -- from the plaintiffs' lawyers who wrote those

9  complaints to confirm that those issues are not in their

10  complaints as I understood them to be.

11          And I think, Your Honor, the other aspect of this is

12  kind of separate and apart from whether the two cases are

13  going to be consolidated formally or not.  I do think it makes

14  sense that they will have to take account of each other.  And

15  that is greatly aided by the fact they are both in front of

16  Your Honor.

17          But Your Honor may recall, we entered a negotiated

18  schedule, an expedited trial schedule, to consolidate the

19  case, that was expressly premised on the plaintiffs'

20  representation that they would not be seeking preliminary

21  injunction.

22          We talked about it at the last status conference.

23  Mr. Morales-Doyle spoke about it expressly.  He said, "On

24  behalf of the LUPE plaintiffs" -- which included plaintiff

25  Longoria -- "We do not intend to seek preliminary injunction."

1   And that was the basis for our schedule.

2          Now plaintiff Longoria has filed a new claim and a

3   new case seeking a preliminary injunction.  That's in conflict

4   with what was said before and we think it undermines the basis

5   of the expedited trial schedule.

6          So that tension can be resolved in a couple of

7   different ways, Your Honor.  I think the thing that makes the

8   most sense, in the light of plaintiff Longoria's previous

9   representation, is to hold the preliminary injunction motion

10  in abeyance, or at least give the State substantial extra time

11  to respond.

12         But if the Court is inclined to go a different

13  direction, we can talk about adjusting the consolidated trial

14  schedule to account for the fact that the State will now have

15  to respond to a serious preliminary injunction motion filed

16  over the holidays.

17         THE COURT:  Mr. Thompson, let me ask you this then.

18         Assuming we go that second route, and I guess I need

19  to hear from Mr. Morales-Doyle on this as well, I've been

20  looking at this as solely legal issues.  Is any discovery

21  necessary to either prosecute or defend this?

22         MR. THOMPSON:  Yes, Your Honor.

23         I won't speak on behalf of the plaintiffs, obviously

24  they can.  I think they said they don't need discovery, and

25  that's fine with the State of course.  The State believes it

1  will need some discovery.

2        The plaintiffs have submitted at least two

3  declarations.  There will likely be at least a little bit of

4  written discovery and two depositions in response to that.

5  But aside from the discovery, there will certainly be factual

6  development that the State will have to do.

7        While, of course, the State believes it should

8  prevail on some legal issues, of course the Court may not

9  agree with the State on some of the legal issues and may have

10  reached certain factual issues that go to the First Amendment

11  balancing test.

12        In effect, in this first amended complaint, as you've

13  just stated at a high level of generality, the plaintiffs are

14  asking the Court to weigh the benefits and burdens of the

15  challenged law and ask whether the burdens on related speech

16  are necessary to further compelling government interests.

17        That means we're going to — as a practical matter,

18  need to put in some evidence regarding the government's

19  compelling interest and how the law furthers that, including,

20  as Your Honor mentioned before, perhaps history related to the

21  types of problems that this law addresses.

22        THE COURT:  I'm not sure you'll need to reference

23  Tammany Hall.

24        MR. THOMPSON:  Perhaps not.

25        THE COURT:  So let me ask you the same question,

1  Mr. Morales-Doyle.  Are you-all going to require discovery to

2  prosecute your claims?

3          MR. MORALES-DOYLE:  No, Your Honor.

4          At least for purposes of the preliminary injunction,

5  we do not believe discovery is necessary.

6          And I actually think that, given the time frames that

7  we're working with here and the issues that are involved, I

8  am — I do not understand the State's need for discovery on

9  these issues.

10          To address some of what Mr. Thompson said there, we

11  understood Your Honor in the initial hearing here, certainly

12  we understood that the agreement to an expedited trial

13  schedule was based in part on the plaintiffs in the

14  consolidated cases representing that they would not be seeking

15  preliminary relief, but we also understood Your Honor to be

16  encouraging all of the parties to pursue the prompt resolution

17  of legal issues to the extent possible in this matter.

18          And that is what we are trying to do in this now

19  separate matter of Longoria versus Paxton because we do think

20  that this is a fairly straightforward legal issue.

21          And in fact, if we are right, as we believe we are

22  about the way this law applies to Section 276.016 of the Texas

23  Election Code, the State's interest and what they are

24  attempting to — the interest they are attempting to pursue

25  here is, frankly, irrelevant because this is viewpoint-based

1  discrimination and per se violative of the First Amendment.

2        But we — because we don't think that discovery is

3  required, that there are factual issues at issue here that we

4  need a hearing, we don't think that the briefing of a

5  preliminary injunction motion, the filing of one brief by the

6  defendants in this case has any real impact on our ability to

7  proceed with the schedule that we are — we have set in the

8  LUPE matter.

9        We, of course, agree with Mr. Thompson that while we

10 disagree that these cases should be consolidated, we agree

11 that they are at least related, which is why we marked the

12 Longoria versus Paxton case as a related case and we filed it.

13 And we think it is good that the Court — that both cases are

14 before Your Honor so that they can take account of one

15 another, as Mr. Thompson said.

16        We don't think that requires changing the schedule in

17 either case.  And we certainly don't think that it would make

18 sense to delay the resolution of a motion that is based on

19 irreparable harm to our clients because of the inconvenience

20 of filing a complaint.

21        THE COURT:  Thank you.

22        So you are correct, Mr. Morales-Doyle, that I did

23 want to see legal issues given to me in increments as opposed

24 to having to decide everything at the end, and so this does

25 allow for that.

1           Mr. Thompson, one other matter that the plaintiffs in
2  Longoria brought up that was fairly persuasive to me, but I'll
3  give you a chance to argue otherwise, I had raised earlier in
4  the consolidated matter the awkwardness of having
5  Miss Longoria as both a plaintiff and a defendant, and that
6  cures the issues on joint defense and privilege and everything
7  else.  How do you respond to that?
8           MR. THOMPSON:  Respectfully, Your Honor.  I don't
9  think it cures anything.  In consolidated cases —
10           THE COURT:  I can't hear you, sir.  Oh, there you go.
11           MR. THOMPSON:  Sorry, Your Honor.  Can you hear me
12  now?
13           THE COURT:  Yes.
14           MR. THOMPSON:  In consolidated cases it doesn't
15  affect who is a party to what claims or to what case.
16           So the fact that Isabel Longoria was a defendant in
17  one matter, a plaintiff in another matter, and those two cases
18  were consolidated, didn't make for a plaintiff and a defendant
19  in the same case.
20           By the same token, I understand that perhaps as a
21  practical matter the plaintiffs found it odd and inconvenient
22  to coordinate among themselves when they would have to speak
23  with a lawyer who is representing Isabel Longoria as a
24  plaintiff and as a defendant.
25           I think that's going to be a problem no matter what

1  for them though.  I mean, she is still represented by the same

2  counsel and Mr. Morales-Doyle will still be involved in

3  whatever negotiations there are.  So it doesn't — it's not

4  clear to me at all how they can resolve any awkwardness by

5  talking to the same lawyers and saying, "Oh, well, you know,

6  we don't have a formal consolidation motion here," even though

7  they are related.

8          MR. MORALES-DOYLE:  Your Honor, if I may briefly

9  address that.

10          THE COURT:  Yes, sir.  Go ahead.

11          MR. MORALES-DOYLE:  Just to be very clear for the

12  record, while I represent Miss Longoria in her capacity as a

13  plaintiff in the Longoria versus Paxton matter, I do not and

14  have never represented her as a defendant in the consolidated

15  cases.

16          So to the extent I am coordinating with the other

17  plaintiffs' council in the LUPE matter, I am not doing so as

18  an attorney for Miss Longoria in the LUPE consolidated cases,

19  nor are we coordinating with her defense counsel on her

20  defense of the claims in the LUPE matter, which is why we do

21  think it is important that they remain separate in order to

22  allow for the type of coordination that we understood Your

23  Honor to be encouraging.

24          And I do also just want to note that the State

25  defendants have raised the potential, and it sounds like

1  Mr. Thompson may go into it now, that they may seek discovery

2  into the communications between the plaintiffs and the

3  consolidated cases on the basis of the fact that Miss Longoria

4  is also a defendant.

5          And so, you know, it is because of those

6  representations that I think some of the other plaintiffs'

7  counsel, for whom I do not speak, were uncomfortable with the

8  type of coordination that I think Your Honor was encouraging

9  before we separated the case.

10         So while I will say that I think we have waived no

11  common interest privilege, and we were comfortable

12  coordinating with the other plaintiffs' groups, I think as a

13  practical matter it was clear that it was going to be

14  difficult to do so while the cases were consolidated.

15         And I will also just respond to something

16  Mr. Thompson said earlier.  I am one of the plaintiffs'

17  counsel that wrote the LUPE plaintiffs' complaint in the

18  consolidated cases, and I will say very clearly that we are

19  not challenging Section 276.016(a)(1) of the Texas Election

20  Code in the LUPE plaintiffs' matter.

21         And I think all the other plaintiffs' groups will say

22  the same, that these cases, while they both challenge

23  provisions of Senate Bill 1 simply do not challenge the same

24  provisions on the same theory and there will be no common

25  questions of law or fact at issue in the two cases.

1          THE COURT:  Thank you.

2          So with regard to the pending motion to consolidate

3  cases, does anyone, any plaintiff from the consolidated cases,

4  Ms. Perales or Mr. Cox, do you want to chime in on this issue?

5          MR. COX:  Judge, on behalf of the OCA-Greater Houston

6  plaintiffs, I think we really just echo what Mr. Morales-Doyle

7  said regarding the difficulty in coordination and in chilling

8  our ability to efficiently resolve the issues in this case.

9  It's something that we found to be a challenge from the

10 beginning.

11         In addition to the possibility of individual

12 discovery, we also have this concern, of any ability of the

13 plaintiffs to coordinate for efficiency also being potentially

14 subject to official records request of the general public

15 outside of this case, if privileges aren't protected.

16         And we certainly believe that, you know, there is a

17 privilege there, but at the same time we know that there might

18 be disagreements about that in the future, and it certainly

19 chills our ability to work together for an official resolution

20 of the case.

21         THE COURT:  Thank you.

22         Anyone else from the plaintiffs' group?  No one else.

23         Does the United States want to make any argument?

24         MS. PAIKOWSKY:  Your Honor, Dana Paikowsky for the

25 United States.

1          I don't think we have very much to add here.  Our

2     interest in this matter is in ensuring that we can have a

3     speedy and efficient resolution and progression of this

4     litigation.  We agree that we think consolidation in this

5     instance will undermine that interest and make it difficult

6     for the plaintiff groups to coordinate.

7          THE COURT:  Thank you.

8          Here's the ruling on the motion to consolidate.  It

9     is denied.  The Longoria case has distinctive legal issues

10    apart from the consolidated matters.  Consolidation will not

11    necessarily reduce the complexity of the consolidated matter.

12         We can enhance movement of discreet legal issues by

13    proceeding on two tracts in the interest of judicial economy

14    and the interest to the public at large when being benefited

15    by having rulings issued on discrete issues as soon as the

16    Court can reach them.

17         So motion to consolidate is denied.  That is Docket

18    Number 172.

19         The opposed motion to stay case is denied.  That was

20    Docket Number 9 in 1223.

21         So then we'll have just the opposed motion for

22    preliminary injunction that needs to be addressed.

23         I will trust that, Counsel, you-all can reach

24    agreements as to what discovery needs to take place prior to a

25    hearing, what the briefing schedule should be.  I will count

1  on you—all to work out those deadlines and present something

2  to me.

3       If you can't reach agreement on those deadlines, then

4  each party will submit to the Court its own independent

5  version of a scheduling order and then I will make the

6  decisions for you.

7       As you go forward on both any discovery and briefing,

8  I'll just sort of tip my hat as to issues that I'm already

9  interested in.  So, you know, I'm curious about the

10  restrictions that are placed on election officials here.  It

11  appears that if you're a private citizen, and fortuitously

12  just today on Texas Public Radio's website I saw an

13  announcement that if, well, if you're the president of the

14  League of Texas Women Voters, you can encourage people to vote

15  by mail and you can pass on all this information.

16       And so it's kind of odd that if a private individual

17  can do so, well, why the restriction on an election official?

18       The other oddity in my mind is, well, if you are a

19  public official running for office you get to encourage people

20  to vote by mail.  But if you're a public official not running

21  for office, the statute seems to read that you're precluded

22  from encouraging people to vote by mail.  And so I'm not sure

23  I understand why the distinction for all of that.

24       And of course, the League of Women Voters always does

25  a fine job and a fairly neutral job, but isn't it odd that we

1  let private citizens say anything to encourage voting by mail,

2  but election officials, who we should be trusting the most to

3  ensure free and fair elections, are gagged from saying

4  something?  That strikes me as kind of odd.

5          So those are the kind of discrepancies that I'm kind

6  of interested in.

7          And also it's unclear to me, by reading of the

8  statute, what general information is, and where is the line.

9          So apparently you might be able to put on your

10 website the same information that the Secretary of State has,

11 but why isn't general information, "You can request a mail-in

12 ballot by sending your application to the following address"?

13 I'm uncertain about where the parameters of general

14 information lie.

15         So just a heads-up.  I'm curious about those kind of

16 issues.

17         MR. THOMPSON:  Thank you, Your Honor.

18         THE COURT:  Mr. Thompson.

19         MR. THOMPSON:  I'm not going to get into the merits

20 of Your Honor's questions right there.  I just want a

21 clarification on logistics.

22         I believe that the State defendants, in the absence

23 of a ruling, face an upcoming deadline in the next few days

24 for responding to the PI motion.  In light of the fact that

25 the parties are to submit a joint proposal, or if necessary

1  separate proposals, could Your Honor confirm that we need not

2  meet that other deadline?

3          THE COURT:  Yes.  You are correct.  You do not need

4  to meet the deadline as of now.

5          So both of you work out a briefing schedule.  Again,

6  if you can't reach an agreement, I will render one for

7  you—all, but I will not hold you to the current deadline.

8          MR. THOMPSON:  Thank you, Your Honor.

9          THE COURT:  I believe for now that handles everything

10  that I was asked to —— that I needed to address for today.

11          But while I have everybody on the line, let's go down

12  the list to see if there are any other matters that we

13  probably should at least talk about or consider right now.

14          From the Longoria case perspective,

15  Mr. Morales—Doyle, is there anything else we need to take up

16  at this time?

17          MR. MORALES—DOYLE:  With regard to the Longoria case,

18  no.  I think the schedule and the potential for discovery are

19  the biggest issues, and it sounds like we should be having

20  that conference on our own.

21          I think we do have something to raise in the LUPE

22  matter and I believe Ms. Perales may be prepared to speak on

23  that.

24          THE COURT:  Thank you.  We'll get there in a minute.

25          From the State's perspective, Mr. Sweeten or

1  Mr. Thompson, anything else we need to talk about today?

2        MR. SWEETEN:  Your Honor, this is Patrick Sweeten.  I

3  don't think there are any other issues that the State needs to

4  address today.

5        THE COURT:  Thank you.

6        From the plaintiffs in the consolidated matters,

7  anything else we need to discuss today?

8        MS. PERALES:  Yes, Your Honor.

9        The plaintiffs would like to inform the Court that we

10  plan to move for leave to file second amended complaints, in

11  light of the recent decision of the Texas Court of Criminal

12  Appeals in a case called *State versus Stephens*.

13        It's a decision that came down in December,

14  mid-December, right before the holidays, and it relates to the

15  authority of the Attorney General to bring criminal

16  prosecutions for election law violations.

17        Texas has moved for reconsideration, but the

18  plaintiffs do want to alert the Court to the fact that we feel

19  that we need to amend our complaints to conform our

20  allegations to that decision.

21        THE COURT:  With that amendment — I'm not even sure

22  what number we're at — third amended?  Would those amended

23  complaints moot the current motion to dismiss, or not?

24        MS. PERALES:  I believe they would, but only

25  slightly.  In terms of the amount of work for the Attorney

General, I think most of the arguments that they have advanced
they will still be advancing.

        But we need to make changes with respect to the
allegations of the kind of scope of the authority of the
Attorney General with respect to prosecuting offenses, as well
as bringing civil cases for election law offenses under SB 1.

        THE COURT:  Mr. Sweeten, does the State oppose or not
oppose any amended complaints?

        MR. SWEETEN:  Your Honor, you know, we asked when we
were told that they were going to amend the complaint,
Mr. Thompson I believe wrote Ms. Perales and asked her to
provide, you know, a red line or information about the
specifics of what those changes were.

        We got a categorical description back, but we were
told that that — you know, that we couldn't see those.  Now,
the Court needs to understand that we are under, obviously, a
very compressed schedule.

        While Ms. Perales did describe them, it's not
completely clear what the changes are.  So you know, at this
point, we'd like to see what those changes are and assess how
they would impact the overall schedule.

        As the Court knows, we began filing motions to
dismiss in this case, and this Court, you know, had some
direction for the parties back in November.  And so, you know,
it's hard for us to have a position on this without seeing

1   what those particular changes are, and what — you know, how

2   that would impact the overall schedule.

3           So I think the best way would be to — you know, I

4   think the rules require a filing of what the amended complaint

5   would look like anyway, and then we could assess, upon a

6   filing of those motions, you know, what our position would be

7   vis-a-vis this late change.

8           THE COURT:  And that is fair.

9           So when you do file your motion for leave to file an

10  amended complaint, attach the version you would like to file.

11  But then let's provide a courtesy copy to Mr. Sweeten of a red

12  line so he's not having to do a laborious side by side to

13  figure out which words were changed.

14          Anything else that we need to talk about today,

15  Ms. Perales?

16          MS. PERALES:  No, Your Honor.  Thank you.

17          THE COURT:  Anything else from any of the other

18  plaintiffs in the consolidated cases?

19          MR. MORALES-DOYLE:  Nothing else, Your Honor.

20          MR. FREEMAN:  Nothing from the United States, Your

21  Honor.

22          THE COURT:  Thank you, Mr. Freeman.  I was going to

23  get to you next.  And nothing from the United States.

24          Okay, very well.  Let's see if we can reach

25  agreements on the Longoria scheduling order.

1    And then I'll wait for the amended leaves —— motions

2    for leave to amend complaints.

3    At some point, though, folks, I have to rule on

4    motions to dismiss, and so I would —— let me think about this

5    here as I'm contemplating this.

6    It seems to me that you ought to respond to the

7    pending motions to dismiss on any areas that you can respond

8    to now, just so we can start teeing up some of this, because

9    at some point, you know, again, you're going to put the Court

10   in a very awkward position if you make me rule on everything

11   at the end and things are not fully briefed.

12   We've got to make this manageable.  Hopefully I was

13   clear.

14   Very well.  Thank you, everyone.  This was productive

15   and we are adjourned.

16   (Proceedings concluded.)

17                              —o0o—

18   I certify that the foregoing is a correct transcript from

19   the record of proceedings in the above—entitled matter.  I

20   further certify that the transcript fees and format comply

21   with those prescribed by the Court and the Judicial Conference

22   of the United States.

23   Date:  01/18/22          /s/  *Gigi Simcox*
                              United States Court Reporter
24                            262 West Nueve Street
                              San Antonio TX 78207
25                            Telephone:  (210)244—5037