# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, FRIENDSHIP-WEST BAPTIST CHURCH, THE ANTI-DEFAMATION LEAGUE AUSTIN, SOUTHWEST, AND TEXOMA REGIONS, SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT, TEXAS IMPACT, MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS, TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION, JOLT ACTION, WILLIAM C. VELASQUEZ INSTITUTE, FIEL HOUSTON INC., and JAMES LEWIN, <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF TEXAS, JOHN B. SCOTT, in his official capacity as the Texas Secretary of State, WARREN K. PAXTON, in his official capacity as the Texas Attorney General, MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator, and LISA WISE, in her official capacity as the El Paso County Elections Administrator, <br><br> Defendants. | Civil Action No. <br><br> 5:21-CV-844-XR (Consolidated) |

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 3

SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS ................................... 3

    A.    Sovereign Immunity Does Not Apply to Claims Arising Under the Voting Rights Act ........................................................................................................ 4

    B.    The Ex Parte Young Exception Applies to Plaintiffs' Non-VRA Claims ............. 4

PLAINTIFFS HAVE STANDING TO LITIGATE THESE CLAIMS ....................................... 14

    A.    All Plaintiffs Adequately Plead Injury in Fact ....................................................... 14

        1.    All Organizational Plaintiffs Sufficiently Plead Organizational Standing 15

        2.    All Membership-Based Plaintiffs Adequately Plead Associational Standing ..................................................................................................... 17

        3.    Defendants' Third-Party Standing Arguments Lack Merit ...................... 19

    B.    Plaintiff Lewin Sufficiently Pleads Injury in Fact ................................................. 21

    C.    The Invalidity of Texas's Election Laws Is Traceable and Redressable by Defendants .............................................................................................................. 22

PLAINTIFFS STATE LEGALLY SUFFICIENT CLAIMS .................................................... 22

    A.    The VRA Indisputably Allows Private Organizations and Individuals to Defend Their Constitutional Rights in Litigation before Courts of Competent Jurisdiction ..................................................................................................... 23

    B.    Plaintiffs Assert Cognizable Claims under the Americans with Disabilities Act. 26

        1.    Plaintiffs May Bring ADA Claims on Behalf of Their Members with Disabilities ................................................................................................. 26

        2.    Defendants Administer Elections ............................................................. 28

        3.    Plaintiffs Raise Actionable Discrimination Claims .................................. 29

CONCLUSION ......................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ................................................................5

*Allen v. State Bd. of Elections*,
  393 U.S. 544 (1969)...........................................................................23

*Arcia v. Sec'y of Fla.*,
  772 F.3d 1335 (11th Cir. 2014) .........................................................16

*Ark. United v. Thurston*,
  517 F. Supp. 3d 777 (W.D. Ark. 2021).............................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................23

*Ass'n of Am. Physicians v. Tex Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) .......................................................18, 20

*Barker v. Halliburton Co.*,
  645 F.3d 297 (5th Cir. 2011) .............................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................23

*Chisom v. Roemer*,
  501 U.S. 380 (1991)...........................................................................24

*City of Austin v. Abbott*,
  385 F. Supp. 3d 537 (W.D. Tex. 2019)........................................ *passim*

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ...............................................................5

*Common Cause Ind. v. Lawson*,
  937 F.3d 944 (7th Cir. 2019) .............................................................16

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) .........................................................17

*Crawford v. Marion County Election Board*,
  553 U.S. 181 (2008)...........................................................................24

*Crawford v. Marion Cty. Election Bd.*,
  472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) ......................................................15

*Ctr. for Individual Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) .................................................................................................21

*Danos v. Jones*,
  652 F.3d 577 (5th Cir. 2011) .................................................................................................20

*Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*,
  522 F.3d 796 (7th Cir. 2008) .................................................................................................18

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965).................................................................................................................21

*Fla. State Conf. of the NAACP v. Browning*,
  522 F.3d 1153 (11th Cir. 2008) .............................................................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).................................................................................................................22

*Hancock Cty. Bd. of Supervisors*, 487 F. App'x 189 (5th Cir. Aug. 31, 2012) .............................18

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982).........................................................................................................15, 17

*Innovative Health Sys. v. City of White Plains*,
  117 F.3d 37 (2d Cir. 1997).....................................................................................................27

*Ivy v. Williams*,
  781 F.3d 250 (5th Cir. 2015), *vacated sub nom. Ivy v. Williams*, 137 S. Ct. 414
  (2016).......................................................................................................................................28

*Johnson v. De Grandy*,
  512 U.S. 997 (1994).................................................................................................................24

*K. P. v. LeBlanc*,
  729 F.3d 427 (5th Cir. 2013) ...................................................................................................4

*Lewis v. Hughs*,
  475 F. Supp. 3d 597 (W.D. Tex. 2020)......................................................................... *passim*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).................................................................................................................20

*Lightbourn v. Cty. of El Paso*,
  118 F.3d 421 (5th Cir. 1997) ...........................................................................................28, 29

*Mi Familia Vota v. Abbott,*
  497 F. Supp. 3d 195 (W.D. Tex. 2020)....................................................................16, 19, 25

*Mi Familia Vota v. Abbott,*
  977 F.3d 461 (5th Cir. 2020) ..................................................................................4, 14

*Morales v. TWA,*
  504 U.S. 374 (1992)...........................................................................................5, 13, 14

*Morgan v. Swanson,*
  659 F.3d 359 (5th Cir. 2011) (en banc) ....................................................................23, 30

*Morse v. Republican Party,*
  517 U.S. 186 (1996)...................................................................................................23

*MX Grp., Inc. v. City of Covington,*
  293 F.3d 326 (6th Cir. 2002) ...............................................................................26, 27, 28

*N.A.A.C.P. v. City of Kyle, Tex.,*
  626 F.3d 233 (5th Cir. 2010) ......................................................................................15

*Nat'l Council of La Raza v. Cegavske,*
  800 F.3d 1032 (9th Cir. 2015) .....................................................................................16

*Nat'l Fed'n of the Blind v. Lamone,*
  813 F.3d 494 (4th Cir. 2016) ......................................................................................26

*Ne. Ohio Coal. for the Homeless v. Husted,*
  837 F.3d 612 (6th Cir. 2016) ......................................................................................16

*OCA-Greater Hous. v. Texas,*
  867 F.3d 604 (5th Cir. 2017) ................................................................................. *passim*

*Richardson v. Tex. Sec'y of State,*
  No. SA-19-cv-00963-OLG, 2019 U.S. Dist. LEXIS 234207 (W.D. Tex. Dec.
  23, 2019) ................................................................................................14, 26, 27, 30

*Rumsfeld v. Forum for Acad. & Institutional Rts, Inc.,*
  547 U.S. 47 (2006)....................................................................................................14

*Sanchez v. R.G.L.,*
  761 F.3d 495 (5th Cir. 2014) ......................................................................................22

*Scott v. Schedler,*
  771 F.3d 831 (5th Cir. 2014) ......................................................................................16

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ....................................................................................2, 21

*State v. Hollins*,
    620 S.W.3d 400 (Tex. 2020) ...................................................................................6, 9, 10, 22

*Steffel v. Thompson*,
    415 U.S. 452 (1974) .......................................................................................................5, 12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...........................................................................................................18

*Tex. All. for Retired Ams. v. Hughs*,
    489 F. Supp. 3d 667 (S.D. Tex. 2020) ...............................................................................25

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ..................................................................................... *passim*

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) .................................................................................................6

*Tex. Democratic Party v. Hughs*,
    474 F. Supp. 3d 849 (W.D. Tex. 2020), *rev'd on other grounds*, 860 F. App'x
    874 (5th Cir. 2021) .........................................................................................................24, 25

*Tex. Democratic Party v. Hughs*,
    860 F. App'x 874 (5th Cir. 2021) .....................................................................................4, 6

*United States v. Students Challenging Regul. Agency Proc.*,
    412 U.S. 669 (1973) ...........................................................................................................15

*United Steel v. Anderson*,
    No. SA-17-cv-1242-XR, 2018 U.S. Dist. LEXIS 100539 (W.D. Tex. June 15,
    2018) ..............................................................................................................................15, 19

*Veasey v. Perry*,
    29 F. Supp. 3d 896 (S. D. Tex. 2014) .................................................................................24

*Verizon Md. Inc. v. PSC*,
    535 U.S. 635 (2002) .............................................................................................................5

*Warnock v. Pecos Cty.*,
    88 F.3d 341 (5th Cir. 1996) .................................................................................................4

*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................................................................ *passim*

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .......................................................................................................24

vi

**Statutes**

42 U.S.C. § 12132..................................................................................................................26

52 U.S.C. § 10302..................................................................................................................25

## INTRODUCTION

Senate Bill 1 ("SB1") infringes on the right to vote and disproportionally affects minority voters and voters with disabilities. While Texas was quick to enact such a law, the State and its top officials are even quicker to abdicate their responsibility for it, telling this Court that neither the State, its Attorney General, nor its chief elections officer are the appropriate defendants to answer for SB1's unlawful impact. Instead, the State and its executives say that local election officials are the ones who must answer for SB1. In effect, Defendants[1] do not believe their actions are subject to the Constitution, the Voting Rights Act of 1965 ("VRA"), or the Americans with Disabilities Act ("ADA"). Binding Fifth Circuit precedent does not immunize Defendants— whether local election officials join in or not—and Defendants' attempt to evade responsibility for SB1—a law they championed and enforce—is disingenuous.

Defendants move to dismiss on three main grounds: (1) sovereign immunity; (2) lack of standing; and (3) quibbles with a subset of Plaintiffs'[2] claims. *See gen.* (ECF 176). None of these arguments warrants dismissal.[3]

---

[1] The term "Defendants" is used to refer collectively to the moving defendants, Attorney General Warren K. Paxton ("AG"), Secretary of State John B. Scott ("Secretary"), and the State of Texas.

[2] The term "Plaintiffs" is used to refer collectively to plaintiffs La Unión Del Pueblo Entero ("LUPE"); Friendship-West Baptist Church; The Anti-Defamation League Austin, Southwest, and Texoma Regions ("ADL"); Southwest Voter Registration Education Project ("SVREP"); Texas Impact; Mexican American Bar Association of Texas ("MABA-TX"); Texas Hispanics Organized for Political Education ("Texas Hope"); Jolt Action, William C. Velasquez Institute ("WCVI"); FIEL Houston Inc.; and James Lewin.

[3] As the Court and Defendants are aware, Plaintiffs intend to file a motion seeking leave to file a second amended complaint in the coming days. During the January 11 status conference, the Court directed Plaintiffs to respond to Defendants' pending motion to dismiss to the extent the arguments raised would not be mooted by any proposed amendment. Consistent with the Court's direction, Plaintiffs address those arguments raised by Defendants that Plaintiffs believe will not be mooted by any second amended complaint to be filed in this action.

*First*, sovereign immunity does not apply where it has been abrogated by statute (as it has been for Plaintiffs' VRA claims) or where an exception applies (as is the case under *Ex parte Young*, 209 U.S. 123 (1908), for Plaintiffs' non-VRA claims).  Defendants say that they are not sufficiently connected to the enforcement of SB1 to permit application of the *Ex parte Young* exception to sovereign immunity; but the allegations in the First Amended Complaint (ECF 140) (the "1AC")—not to mention Defendants' post-filing public statements and actions—contradict this claim.  Plaintiffs sued the State of Texas, Texas's chief elections officer, and Texas's chief law enforcement officer to enjoin them from enforcing laws that unlawfully restrict voting.  SB1 is Texas's law, the Secretary oversees the administration of elections in the state, and the AG touts that he "is a national leader in election integrity" and has prosecuted, in 2020 alone, "a dozen critical election-integrity lawsuits[.]"[4]  Defendants' roles in enforcing SB1 are unmistakable.

*Second*, Defendants' standing challenges fail.  Standing requires injury in fact, traceability, and redressability.  Each element is satisfied here.  Plaintiffs are membership and community-based organizations (many of whom represent the interests of Latino and Black Texans), churches and other faith-based groups, and a Texan who has served as an election judge and intends to serve again.  Long-standing precedent, including from within this Circuit, establishes Plaintiffs' ability to bring claims on behalf of themselves and, where applicable, their members.  The 1AC contains more than 50 paragraphs describing in detail how the challenged provisions of SB1 will chill Plaintiffs' speech, force the diversion of critical resources in response to SB1, hamper Plaintiffs' ability to carry out their organizational missions, and burden their members' right to vote.  As

---

[4] Press Release, OFFICE OF THE ATTORNEY GENERAL OF TEXAS, AG Paxton Announces Formation of 2021 Texas Election Integrity Unit (Oct. 18, 2021), https://www.texasattorneygeneral.gov/news/releases/ag-paxton-announces-formation-2021-texas-election-integrity-unit.

Defendants recognize, binding Fifth Circuit precedent holds that the invalidity of Texas election laws is traceable to and redressable by the State and the Secretary of State. *See* (ECF 176 at 11) (citing *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017)). As such, at the pleading stage, Plaintiffs' allegations are more than sufficient to establish standing.

*Third*, Defendants' challenges to Plaintiffs' individual claims ring hollow. Defendants argue that Plaintiffs cannot assert ADA claims because they do not allege a qualifying disability. (ECF 176 at 21). But Fifth Circuit precedent does ***not*** require associational plaintiffs to name specific members to survive a motion to dismiss. Defendants both misconstrue the law on this issue and misapply the law to the facts alleged in the 1AC. Moreover, this Court has already correctly rejected Defendants' argument that Plaintiffs lack a private cause of action under the VRA, and they do not now ask the Court to reconsider that ruling. (*Id.*) As pleaded, Plaintiffs state actionable VRA and ADA claims.

For these and the other reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF 176) (the "Motion") should be denied.

## ARGUMENT

### SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

Defendants argue that they are immune from suit as to all claims alleged in the 1AC. *See* (ECF 176 at 2–6). Not so.

When evaluating a jurisdictional challenge on immunity grounds, "the court is generally free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *City of Austin v. Abbott*, 385 F. Supp. 3d 537, 540 (W.D. Tex. 2019) (Pitman, J.) (hereafter *Austin I*).[5] Courts should not grant a motion to dismiss under Federal Rule of Civil

---

[5] Internal citations and quotations are omitted unless otherwise stated.

Procedure 12(b)(1)[6] unless "it appears certain that the plaintiff cannot prove any set of facts that would entitle her to recovery." *Id.* (citing *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017)). For the reasons stated below, Defendants' sovereign immunity challenge should be rejected.

A.    *Sovereign Immunity Does Not Apply to Claims Arising Under the Voting Rights Act*

Binding authority from the Fifth Circuit unequivocally holds that "[t]here is no sovereign immunity with respect to Voting Rights Act claims" as the "Voting Rights Act . . . validly abrogated state sovereign immunity." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). Defendants offer no reason to depart from this binding authority. Thus, sovereign immunity does not apply to Plaintiffs' VRA-based claims (Counts IV and V of the 1AC).

B.    *The Ex Parte Young Exception Applies to Plaintiffs' Non-VRA Claims*

The Court has jurisdiction over Defendants as to Plaintiffs' remaining claims because, contrary to the arguments in Defendants' brief (ECF 176 at 2–6), the *Ex parte Young* exception to sovereign immunity applies here.

"*Ex parte Young* provides an exception to the general rule preventing private suits against state officials in their official capacity in federal court." *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021). Specifically, a lawsuit is not barred as being "against" the state when it seeks (i) "prospective, injunctive relief" (ii) "from a state actor, in her official capacity", (iii) "based on an alleged ongoing violation of the federal constitution." *K. P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (hereafter *K. P. II*). On the face of the 1AC, Plaintiffs seek

---

[6] Although Defendants do not refer to Rule 12(b)(1) in their papers, it is clear from their arguments that they are raising a jurisdictional challenge on sovereign immunity grounds. As such, these arguments are appropriately considered under the Rule 12(b)(1) standard. *Austin I*, 385 F. Supp. 3d at 540; *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

prospective, injunctive relief based on an ongoing violation of the Constitution and Defendants do not argue otherwise.  Instead, Defendants focus on the state actor prong; those challenges fail.

Under *Ex parte Young*, a state official must have "some connection with the enforcement of the act" at issue.  209 U.S. at 157.  "The text of the challenged law need not actually state the official's duty to enforce it, although such a statement may make that duty clearer."  *City of Austin v. Paxton*, 943 F.3d 993, 997–98 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021) (hereafter *Austin II*).  So-called "direct enforcement" of the at-issue law is also not required, and "actions that [constrain] the plaintiffs [are] sufficient to apply the *Young* exception."  *Id.* at 1001; *Air Evac EMS, Inc. v. Texas*, 851 F.3d 507, 520 (5th Cir. 2017) (holding that direct enforcement by a particular government official is not required in order to satisfy *Ex parte Young*).[7]  Moreover, courts need not determine with absolute certainty that the official will act in the way that plaintiffs suspect.  "[I]f an official *can* act, and there's a significant possibility that he or she *will* . . . , the official has engaged in enough compulsion or constraint to apply the *Young* exception."  *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (hereafter *Abbott I*) (quoting *Austin II*, 943 F.3d at 1002); *see also Steffel v. Thompson*, 415 U.S. 452, 475 (1974) (federal declaratory relief is available where "a federal plaintiff demonstrates a genuine threat of enforcement of a disputed . . . statute" even "when no state prosecution is pending").[8]

---

[7] As discussed in section II, *infra*, Plaintiffs have standing to bring these claims, which further supports application of *Ex parte Young*. *Austin II*, 943 F.3d at 1002 ("[A] finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question.").

[8] The decisions cited by Defendants do not alter the long-standing principles applicable to claims for injunctive relief against government officials, *i.e.*, that "a court need only conduct a *straightforward inquiry* into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002).  A streamlined analysis is necessary so that plaintiffs are not faced with a "Hobson's choice" of complying with the unlawful act or flouting the law and risking sanction.  *Morales v.*

Defendants also argue that *Ex parte Young* does not apply because the 1AC does not contain a "provision-by-provision analysis" of how each defendant is connected to the enforcement of the challenged SB1 provisions.  (ECF 176 at 2) (citing *Hughs*, 860 F. App'x at 877).  But that is not the pleading standard in this Circuit, or any other.  *Hughs* does not alter this fact.  The Fifth Circuit in *Hughs* merely reaffirmed that courts must consider whether a defendant-official has "the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation" and explained that courts should consider each provision of the challenged law when conducting such an analysis.[9]  *Id*. at 877.  As explained further below, Plaintiffs' allegations demonstrate that each defendant has the "requisite connection" to the enforcement of SB1 as discussed by *Hughs*.

***Secretary of State John B. Scott***: The 1AC alleges that the Secretary is deeply ingrained in the enforcement of SB1 as well as Texas's many other election laws.  *See, e.g.*, (1AC ¶¶ 22–35, 56, 65, 110, 142–145).  As the Supreme Court of Texas recently explained, the Secretary is "the chief election officer of the state" and the Texas Election Code "reflect[s] the Legislature's intent that election laws operate . . . under the direction and guidance of the Secretary of State."  *State v. Hollins*, 620 S.W.3d 400, 408 (Tex. 2020) (citing Tex. Elec. Code § 31.001).  The Secretary guides local officials in the conduct of elections and operates critical components of the election system in Texas, including promulgating forms for use by voters and officials, maintaining the Texas

---

*TWA*, 504 U.S. 374, 381 (1992) ("When enforcement actions are imminent . . . there is no adequate remedy at law.").

[9] The "provision-by-provision" language Defendants rely on appears only twice in the Fifth Circuit's precedents, articulated for the first time just over a year ago in *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (hereafter *Abbott II*) (citing *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020)).  In neither instance did the Fifth Circuit imply that it was establishing a new standard of pleading that plaintiffs must adhere to in order to enjoin the enforcement of a statute.

statewide database of registered voters, collecting and reporting election results, and directing local officials to refrain from activity that the Secretary considers to be in violation of the Texas Election Code.  Unsurprisingly then, the Secretary is a proper defendant for the instant challenges to the validity of Texas election laws.  In fact, in *OCA-Greater Hous. v. Texas*, the Fifth Circuit held that plaintiffs had standing to sue the Secretary because "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the chief election officer of the state."  867 F.3d at 613.  This, "in turn, suggests that *Young* is satisfied as to the Secretary of State."  *Abbott I*, 961 F.3d at 401.

The same result follows from a provision-by-provision analysis.  For example, the at-issue SB1 provision relating to Tex. Elec. Code § 18.065 falls under Article 7 titled "Enforcement." Section 18.065 already required the Secretary to "monitor each registrar for substantial compliance" with sections of the Texas Election Code.  Tex. Elec. Code § 18.065.  SB1 layers on civil penalties for a registrar's failure to correct violations in the amount of "$1,000 for each violation corrected by the secretary of state under that subsection."   (1AC ¶ 26).  Thus, the Secretary is directly involved in identifying violations and does, by correcting violations, directly affect the amount of the new civil penalty for which the registrar becomes liable.  This is clearly sufficient connection to enforcement to apply the *Young* exception.[10]

With respect to the provisions carrying the risk of criminal penalties, and contrary to Defendants' arguments, the Secretary is not "a mere recipient of information." (ECF 176 at 3). Indeed, SB1 *requires* the Secretary to refer any and all "information indicating that criminal

---

[10] Defendants' arguments to the contrary (ECF 176 at 5–6) miss the mark.  As explained above, the Secretary's roles in monitoring and identifying violations and determining the amounts of civil penalties suffice to establish the requisite connection to enforcement *even if*, as Defendants argue (ECF 176 at 5–6), SB1 imposes new penalties for preexisting statutory obligations and someone other than the Secretary actually collects those penalties.

conduct in connection with an election has occurred" that he "receive[s] or discover[s]" to the AG

if the Secretary determines "that there is reasonable cause to suspect that criminal conduct

occurred."  Tex. Elec. Code § 31.006(a); (1AC ¶ 31).  The Secretary is further required to "deliver

to the attorney general all pertinent documents and information in the secretary's possession."  *Id.*

This gives the Secretary an active role in enforcing every provision of the Texas Election Code

that may carry criminal penalties, including those challenged in the 1AC.  *See, e.g.*, (1AC ¶¶ 2, 5,

104–09, 115–18, 121–24, 132–36, 141–43); Tex. Elec. Code §§ 15.028, 33.051, 33.061, 64.034,

and 276.015.[11]

    The Secretary is also a proper defendant as to the vote-by-mail provisions.  As alleged in

the 1AC, the Texas Election Code requires that the Secretary "obtain and maintain uniformity in

the application, operation, and interpretation of [the] code and [other] election laws, prepare

detailed and comprehensive written directives and instructions for the appropriate state and local

authorities, and assist and advise all election authorities with regard to the application, operation,

and interpretation of election laws."  (1AC ¶ 24) (citing Tex. Elec. Code §§ 31.003–31.004); *see*

*Abbott I*, 961 F.3d at 399 (quoting Tex. Elec. Code § 31.003).  The Secretary is further authorized

to "take appropriate action to protect" voting rights "from abuse by the authorities administering

the state's electoral processes," which includes "order[ing] the person to correct the offending

conduct."  *Lewis v. Hughes*, 475 F. Supp. 3d 597, 611 (W.D. Tex. 2020) (Garcia, J.).  Citing these

---

[11] The Secretary's role in enforcement is confirmed by Defendants' public statements.  The AG provides a link on its website to the Secretary's complaint form and explains that the AG's office "does not have resources to actively detect fraud, but rather relies on members of the public and election officials to observe fraud and report it to the Secretary of State, who screens complaints pursuant to Election Code Section 31.006 and refers credible allegations to the OAG."  Election Integrity, *How Does the Office of the Attorney General Decide Which Election Fraud Cases to Pursue?*, Office of the Attorney General https://www.texasattorneygeneral.gov/initiatives/election-integrity (last visited Jan. 13, 2022).

same provisions, the Fifth Circuit recognized that existing Circuit precedent "suggests that the Secretary of State bears a sufficient connection to the enforcement of the Texas Election Code's vote-by-mail provisions to support standing," which "in turn, suggests that *Young* is satisfied as to the Secretary of State." *Abbott I*, 961 F.3d at 401; *see also Hollins*, 620 S.W.3d at 408; Tex. Elec. Code §§ 31.003–31.004.  This is equally applicable to the challenged provisions SB1 adds to the Texas Election Code's vote-by-mail provisions: *i.e.*, Tex. Elec. Code §§ 84.0111, 86.001, 86.0105, 87.027, 87.041, and 276.015.  (1AC ¶¶ 109, 130–39).

The 1AC also alleges several ways in which SB1 "makes the work of poll workers even harder by loosening restrictions on poll watchers and at the same time limiting poll workers' ability to carry out their duty of preserving order and preventing breaches of the peace and violations of the election code in the polling place."  (1AC ¶¶ 114–23).  Indeed, the conduct of poll watchers is at the heart of several of the challenged provisions, including as to Tex. Elec. Code §§ 33.051, 33.056, 33.061, 33.063.  *See* (1AC ¶¶ 2, 5, 110, 114–25).  The same duties to "prepar[e] detailed and comprehensive written directives and instructions" and to "assist and advise all election authorities with regard to the application, operation, and interpretation of . . . election laws" discussed above similarly establish a sufficient connection to the enforcement of SB1's poll watcher provisions.  *OCA-Greater Hous. v. Texas*, No. 1:15-CV-00679, 2016 U.S. Dist. LEXIS 202494, at *24–25 (W.D. Tex. Aug. 12, 2016) (Pitman, J.).  But SB1 goes a step further: now, the Secretary is specifically charged with *training and certifying* poll watchers.  Tex. Elec. Code § 33.008 ("The secretary of state shall develop and maintain a training program for watchers.  The training program must: (1) be available: (A) entirely via the Internet; and (B) at any time, without a requirement for prior registration; and (2) provide a watcher who completes the training with a certificate of completion."); Tex. Elec. Code § 33.031(b) ("In addition to the requirements of

Subsection (a), to be eligible to serve as a watcher, a person must complete training under Section 33.008.").

Texas election law also provides that the Secretary "shall prescribe the design and content" of necessary forms, which the counties are required to use. *Hollins*, 620 S.W.3d 408 (citing Tex. Elec. Code § 31.002(a)). Two of the challenged provisions burden the right to vote of those seeking assistance because assistors must take time to complete a sworn form providing personal information and recite an oath. (1AC ¶¶ 103–08, 110); Tex. Elec. Code §§ 64.009, 64.0322. As to each form, SB1 provides that "[t]he secretary of state shall prescribe the form . . . ." Tex. Elec. Code §§ 64.009(h), 64.0322(b). Because assistors "are required to use the Secretary's . . . form . . . , the Secretary has the authority to compel or constrain" both assistors and those seeking assistance "based on actions she takes as to the . . . form." *Abbott II*, 978 F.3d at 179–80.

In light of the above, the Secretary is a proper defendant in this action.

***Attorney General Ken Paxton***: Defendants argue that the AG is not a proper defendant because he "merely receives information" (ECF 176 at 7), has no authority to act on his own without invitation from local authorities in light of the decision of the Court of Criminal Appeals in *State v. Stephens* (ECF 176 at 7–8),[12] and is somehow unlikely to enforce any of the SB1 provisions that carry the potential for criminal penalties (ECF 176 at 8).

As noted in Defendants' Motion, however, the AG has already filed a motion for reconsideration in *Stephens* saying it was "wrongly decided." (ECF 176 at 8 n.2). As of this filing,

---

[12] While Defendants state that the 1AC "ignore[d]" the *Stephens* decision, (ECF 176 at 7), that opinion was issued weeks after the 1AC was filed; it was not ignored, but rather, did not yet exist.

the AG's motion for reconsideration remains undecided.  This Court should not dismiss the AG

on this basis in advance of a final ruling on the AG's motion for reconsideration.[13]

In any event, the *Stephens* decision does not alter the present analysis as the AG remains

authorized to prosecute voting-related cases at the invitation of local prosecutors, has done so in

the past, and by his own admission, fully intends to do so in the future.  Indeed, the AG is Texas's

chief law enforcement officer with a "*freestanding sovereign interest*" in enforcing Texas law.

*Austin I*, 385 F. Supp. 3d at 545 (quoting AG Paxton).  This includes "concurrent jurisdiction with

local prosecutors to prosecute election fraud" *Abbott I*, 961 F.3d at 401, which despite the *Stephens*

ruling, the AG continues to tout on his website.[14]  The AG has also been a vocal supporter *and*

*active enforcer* of Texas election laws targeting so-called voter fraud.  *See* (ECF 176 at 8 n.2).

While Defendants rely on *In re Abbott*, 956 F.3d at 709—a decision vacated by the Supreme

Court—in arguing that "[s]peculation that [the AG] might be asked by a local prosecutor" to assist

in a prosecution is inadequate support for an *Ex parte Young* action against the AG, Plaintiffs

---

[13] Plaintiffs' proposed amendment will spell out, in greater detail, the AG's role in civil enforcement against election officials.  That said, the 1AC sufficiently alleges the AG's connection to enforcement of SB1 and Texas's other voting laws so as to keep the AG in this case.

[14] According to the AG's website, the AG's "role in enforcing the election laws" includes that "statewide investigation authority and concurrent prosecution authority with local elected prosecutors over the election laws of the State" as well as having "deep experience and specialized resources to help train or assist local law enforcement and prosecution in working up complex and challenging election fraud cases."  Election Integrity, *What is the Office of the Attorney General's Role in Enforcing the Election Laws?*, OFFICE OF THE ATTORNEY GENERAL https://www.texasattorneygeneral.gov/initiatives/election-integrity (last visited Jan. 13, 2022). (responding to question "What is the Office of the Attorney General's role in enforcing the elections laws?").  The AG specifically notes that "Chapter 273, Texas Election Code, gives the OAG authority to investigate and prosecute election code violations anywhere in Texas."  *Id*.  The AG's website maintained such language even after issuance of the *Stephens* decision.  The fact that the AG's office affirmatively and publicly maintains its stance of having a role in prosecuting and enforcing election laws even after the *Stephens* decision further emphasizes the AG's intention to participate in election law cases and use the State's resources in doing so and subsequently further confirms the appropriateness of the AG being named as a defendant in this action.

allege far more than that the AG might be called on in the future to assist local prosecutors in prosecuting voter fraud cases; instead, Plaintiffs allege that the AG has a demonstrated history of bringing such prosecutions and has unequivocally stated his intention to continue prosecuting such matters in the future.[15]  As such, the AG is a proper defendant here.

Moreover, the AG has already exercised his enforcement authority by vigorously enforcing elections laws similar to the challenged provisions.  As alleged in the 1AC, the AG previously filed suit against the Harris County Clerk to prevent him from mailing out mail ballot applications to many eligible voters unless those voters first submitted a request.  (1AC ¶ 72).  The AG also tried to secure an indictment against the Travis County Clerk for, allegedly, unlawfully obstructing a poll watcher.[16]   Further, even before SB1 (which purports to be concerned with "preventing fraud in the conduct of elections"), the AG's office is alleged to have "spent 22,000 staff hours investigating voter fraud in the 2020 Election"—despite having "identified only 16 minor offenses out of more than 11,000,000 ballots cast."  (1AC ¶ 75).  The AG's concerted efforts to enforce similar election laws indicates that he will bring such enforcement actions in the future and is enough to tie him to the enforcement of SB1 for purposes of *Ex parte Young*.  *See Steffel*, 415 U.S. at 475; *Austin I*, 385 F. Supp. 3d at 545 ("[t]he attorney general bears some connection to enforcement of the statute" where he "might bring a similar enforcement proceeding").

---

[15] In *In re Abbott*, the Fifth Circuit suggested that the AG was not a proper defendant where, among other things, he indicated that an abortion law would be enforced but failed to indicate he would be the one doing the enforcing.  956 F.3d at 709.  In this case, the AG has stated that *he* will continue to use *his* resources to enforce Texas's election laws, including SB1.  *See* n. 17, *infra*.  In fact, he has created an entire division of the AG's office to do so.  *See* n. 16, *infra*.  These facts easily distinguish this case from *In re Abbott*.

[16] Reese Oxner, *The Texas Tribune, Amid Texas GOP's Effort To Question Electoral Integrity, Attorney General Tried To Indict Travis County Elections Chief*, THE TEXAS TRIBUNE, (Dec. 20, 2021) https://www.texastribune.org/2021/12/20/texas-ken-paxton-travis-county-elections/.

The AG's intent to vigorously enforce the provisions of the Texas Election Code (including SB1) in the future is confirmed by his public statements and actions after the initial complaint was filed.  For instance, the AG recently announced the formation of his 2021 Texas Election Integrity Unit, "which is a concentrated effort to devote agency lawyers, investigators, support staff, and resources to ensuring this local election season . . . is run transparently and securely."[17]  The AG also declared on social media that "I have always been in favor of swift & sure justice on those who attack the heart of our constitutional republic.  I will continue to muster all my resources to defend election integrity!"[18]  And, as recently as November of 2021, the AG tweeted that "I will never back down to make sure Texas has safe and secure elections.  ***Election integrity is my number one priority***."[19]  Because the AG has "made clear that [he] would seek to enforce the challenged provisions," he is a proper defendant here.  *Cf. Morales v. TWA*, 504 U.S. 374, 381 (1992) (holding that "[w]e think *Young* establishes that injunctive relief was available here" where, among other things, "the attorneys general . . . had made clear that they would seek to enforce the challenged portions . . . through suits under their respective state laws").

Moreover, and as alleged in the 1AC, the specific provisions of SB1 effectively create a pipeline for prosecution by the AG by directing state and local officials to provide names of allegedly ineligible voters, or information "indicating" criminal conduct, to the AG.  (1AC ¶ 141); Tex. Elec. Code §§ 15.028, 33.051, 33.061, 64.034, 276.015, 276.016 and 276.017.  These facts

---

[17] Press Release, OFFICE OF THE ATTORNEY GENERAL, *AG Paxton Announces Formation of 2021 Texas Election Integrity Unit* (Oct. 18, 2021), https://www.texasattorneygeneral.gov/news/releases/ag-paxton-announces-formation-2021-texas-election-integrity-unit.

[18] Ken Paxton (@KenPaxtonTX), TWITTER (Oct. 1, 2021, 11:34 PM EST).

[19] Ken Paxton (@KenPaxtonTX), TWITTER (Nov. 5, 2021, 6:25 PM EST) (emphasis added).

are sufficient to establish the AG as a proper defendant at this stage.  *Austin I*, 385 F. Supp. 3d at

545; *Abbott I*, 961 F.3d at 401; *see also Morales*, 504 U.S. at 381.

      *State of Texas*: Although Defendants argue that Texas is immune from suit on Plaintiffs'

VRA claims, Texas also acknowledges that precedential authority from the Fifth Circuit

unequivocally holds that there is no sovereign immunity with respect to Voting Rights Act claims

because "the Voting Rights Act abrogates sovereign immunity[.]"  (ECF 176 ¶ 8); *OCA-Greater

Hous.*, 867 F.3d at 613–14; *Mi Familia Vota v. Abbott*, 977 F.3d at 469.  As discussed above,

although Defendants aver that these cases were "wrongly decided[,]" they offer no compelling

reasons for this Court to deviate from binding Fifth Circuit precedent.

### PLAINTIFFS HAVE STANDING TO LITIGATE THESE CLAIMS

      A plaintiff establishes standing by demonstrating that it "(1) [suffered] an injury in fact

(2) that is fairly traceable to the challenged conduct and (3) redressable by a favorable decision."

*Lewis v. Hughs*, 475 F. Supp. 3d at 611 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992)).  This standard applies equally to individuals and entities.  *OCA-Greater Hous.*,

867 F.3d at 612.

      "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-

controversy requirement."  *Rumsfeld v. Forum for Acad. & Institutional Rts, Inc.*, 547 U.S. 47, 52

n.2 (2006).  Therefore, if the Court determines that any one of the Plaintiffs adequately pleads

standing, Plaintiffs meet their burden at this juncture.  All Plaintiffs satisfy their burden.

      A.    *All Plaintiffs Adequately Plead Injury in Fact*

      As courts in this District recognize, "[t]he injury in fact requirement under Article III is

qualitative, not quantitative, in nature, and the injury need not be substantial."  *Richardson v. Tex.

Sec'y of State*, No. SA-19-cv-00963-OLG, 2019 U.S. Dist. LEXIS 234207, at *15 (W.D. Tex. Dec.

23, 2019) (Garcia, J.) (quoting *OCA-Greater Hous.*, 867 F.3d at 612).  Plaintiffs satisfy the injury

in fact requirement if they can demonstrate harm amounting to anything more than an "identifiable trifle." *United States v. Students Challenging Regul. Agency Proc.*, 412 U.S. 669, 689 n.14 (1973); *OCA-Greater Hous.*, 867 F.3d at 612 (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999)).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *United Steel v. Anderson*, No. SA-17-cv-1242-XR, 2018 U.S. Dist. LEXIS 100539, at *49 (W.D. Tex. June 15, 2018) (Rodriguez, J.) (quoting *Lujan*, 497 U.S. at 889). As explained in more detail below, the allegations in the 1AC suffice at the pleading stage to establish injury in fact.

### 1.   All Organizational Plaintiffs Sufficiently Plead Organizational Standing

Entity plaintiffs can establish injury in fact under either of two independent theories: "associational standing" or "organizational standing." *OCA-Greater Hous.*, 867 F.3d at 612. For organizational standing, "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its 'activities—with the consequent drain on the organization's resources . . . .'" *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (hereafter *Kyle*) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982));[20] *Havens Realty Corp.*, 455 U.S. at 379 (affirming appellate court decision that dismissal on standing grounds had been improper). "The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury." *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S.

---

[20] The court in *Kyle* ultimately determined that the plaintiffs lacked standing after a full trial and does not counsel in favor of dismissal here at the pleading stage. 626 F.3d at 236.

181 (2008); *see Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 209 (W.D. Tex. 2020) (Pulliam, J.) (quoting *Crawford*, 472 F.3d at 951) (same).

Federal circuit courts, including the Fifth Circuit, regularly find that voter-advocacy organizations have standing to challenge election laws where those laws create unwanted demands on resources or require a diversion of resources to counteract the defendants' conduct.  For example, in *OCA-Greater Houston*, OCA alleged that its mission of getting out the vote was harmed by the "additional time and effort spent explaining the [challenged] provisions at issue to limited English proficient voters," which "frustrate[d] and complicate[d] its routine community outreach activities."  867 F.3d at 610.  The Fifth Circuit found that the challenged statute perceptibly impaired OCA's ability to "get out the vote[,]" which was a vital part of the organization's mission and therefore sufficient to establish a cognizable injury.  *Id.* at 612; *Scott v. Schedler*, 771 F.3d 831, 837 (5th Cir. 2014) (finding that injury due to increased time spent on voter registration drives constituted sufficient injury in fact to confer standing); *see also Lewis*, 475 F. Supp. 3d at 613 (finding that organizational plaintiffs may establish standing where "getting out their membership's vote is germane to their purpose").  The Sixth, Seventh, Ninth, and Eleventh Circuits have also affirmed findings of organizational standing and injury in fact under similar circumstances in voting rights cases.[21]

---

[21] *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 952 (7th Cir. 2019) (voter rights organizations had standing where law would require them to divert resources from other projects to alleviate "voter confusion, erroneous registration removal, and chaos at the polling place"); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (organization that helped homeless voters had standing to challenge a change in law requiring overhaul of voter-education and get-out-the-vote programs to focus on in-person voting instead of mail-in voting); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (organizations had standing based on their expenditure of additional resources to assist people who would no longer be registered to vote through state public assistance offices); *Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1342 (11th Cir. 2014) (voter registration organizations had standing to challenge program to remove non-citizens from voter roll because they diverted resources to addressing

Here, Organizational Plaintiffs[22] allege:

- a mission to educate and encourage eligible Texans to vote and/or serve as assistors and volunteers, *see, e.g.*, (1AC ¶ 9) ("To promote civic engagement in the communities it serves, LUPE . . . conducts voter registration, education, and non-partisan get-out-the-vote campaigns (GOTV)."); (1AC ¶¶ 9–19) (all Organizational Plaintiffs);

- the expenditure of resources to meet these goals, (1AC ¶¶ 158) ("LUPE has in the past, and will in the future, paid employees who, among their other duties: educate voters about an upcoming election; urge the voters to vote; and encourage, offer and deliver assistance to the voters."), 163 (Friendship-West), 167–68 (ADL), 170–71, 177 (SVREP), 178 (Texas Impact), 190 (MABA-TX), 16, 194 (Texas Hope), 200–01 (Jolt Action), 206 (WCVI), 207 (FIEL); and

- that SB1 will cause them to divert resources from their core missions, (*id.* ¶¶ 158) ("SB1 will force LUPE to divert its resources away from its GOTV, voter registration and community education activities, which are central to its mission, in order to counteract the negative effects of SB1 on its members."), 160–61 (LUPE) 162, 165–66 (Friendship-West), 168–69 (ADL), 171, 173, 176 (SVREP), 179, 182 (Texas Impact), 190, 192 (MABA-TX), 197–99 (Texas Hope), 204–05 (Jolt Action), 206 (WCVI), 209, and 211 (FIEL).

These allegations are more than sufficient at the pleading stage to establish organizational standing to challenge the State's election laws under a diversion of resources theory. *See Havens Realty*, 455 U.S. at 379; *OCA-Greater Hous.*, 867 F.3d at 612.

      2.    All Membership-Based Plaintiffs Adequately Plead Associational Standing

Alternatively, and contrary to the arguments in Defendants' brief, the membership-based Organizational Plaintiffs also adequately plead associational standing. An entity has associational standing when (1) their members would otherwise have standing to sue in their own right; (2) the

---

misidentification of citizenship); *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009*)* (NAACP had standing to challenge a photo ID law because it diverted some of its resources to helping voters comply with the new provisions); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1164–65 (11th Cir. 2008) (voting rights organizations had standing to challenge a voting law they reasonably anticipated would require diverting personnel and time to educating volunteers and voters and to assisting voters left off the registration rolls on election day).

[22] The term "Organizational Plaintiffs" is used to refer to all Plaintiffs except James Lewin.

interests the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Ass'n of Am. Physicians v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

An association ***does not*** need to "set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." *Hancock Cty. Bd. of Supervisors*, 487 F. App'x 189, 198 (5th Cir. 2012); *id.* at 198 n.5 (quoting *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2nd Cir. 2006)) ("[D]efendants cite to no authority—nor are we aware of any—that supports the proposition that an association must name names in a complaint in order properly to allege injury in fact to its members.").[23]  Where an association generally alleges "that some of its members" fall within the group of aggrieved citizens, the associational plaintiff has "adequately alleged that some of its members were suffering a concrete, particularized injury" and has standing to proceed.  *Hancock*, 487 F. App'x at 198–99; *see Lewis*, 475 F. Supp. 3d at 613 (finding that organizational plaintiffs had associational standing to challenge mail-in voting laws).

---

[23] Defendants misstate what is required at the pleading stage.  *Summers v. Earth Island Inst.* did not evaluate standing at the motion to dismiss stage.  555 U.S. 488, 500 (2009) (describing the procedural posture as being "after the trial is over, judgment has been entered, and a notice of appeal has been filed").  Even in the *Disability Rights Wis., Inc. v. Walworth Cty. Bd.* case cited by Defendants, the court acknowledged that the requirement that an organization include at least one member with standing to present that claim, "still allows for the member on whose behalf the suit is filed to remain unnamed by the organization."  522 F.3d 796, 802 (7th Cir. 2008) ("DRW"). This fact distinguishes the current claim from that of the plaintiff in DRW; the DRW Plaintiff's amended complaint did not allege the current existence of any student with a disability who had suffered an injury because of the Defendant's educational funding decision, but the current Organizational Plaintiffs have adequately alleged harm to their members.

The membership-based Organizational Plaintiffs clearly meet this pleading standard.[24]  In particular, membership-based Organizational Plaintiffs allege:

- they have members (in many cases, thousands) in the state of Texas, *see, e.g.*, (1AC ¶¶ 14) ("TEXAS IMPACT is comprised of dozens of member organizations, hundreds of member congregations, and more than 22,000 individual members who span the partisan spectrum, represent different ethnicities and denominations, and include individuals with disabilities."), 10 (LUPE), 11 (Friendship-West), 15 (MABA-TX), 16 (Texas Hope), 17 (Jolt Action), and 19 (FIEL);

- harm to their members, whom the 1AC describes as voters, assistors, persons with disabilities, poll workers, and persons with limited English proficiency, (1AC ¶¶ 181) ("TEXAS IMPACT's member organizations, member congregations, and individual members will be deterred from assisting voters who need it.  Members will also be deterred from assisting eligible voters because of SB1's increased information requirements and expanded oath requirement that limits what actions assistors may take to assist a voter without consideration of the range of needs of voters with disabilities and exposes assistors to potential criminal liability, and would require them to breach the privacy of a voter to confirm that the voter is eligible to receive assistance."), 153–57, 160 (LUPE), 162, 164–65 (Friendship-West), 184–89, 191, 193 (MABA-TX), 194–96, 199 (Texas Hope), 202–04 (Jolt Action), 207–08, and 210–14 (FIEL); and

- the ways in which the harm caused to these members flows directly from the challenged provisions of SB1.  *See id.* ¶¶ 98–145.

The voluminous factual allegations in the 1AC more than satisfy Plaintiffs' burden at the pleading stage to make "general factual allegations" demonstrating a minimal showing of injury.  *United Steel*, 2018 U.S. Dist. LEXIS 100539, at *49; *Mi Familia Vota*, 497 F. Supp. 3d at 209; *Hancock*, 487 F. App'x at 198–99; *Lewis*, 475 F. Supp. 3d at 612–13.

3.  Defendants' Third-Party Standing Arguments Lack Merit

Defendants argue that "the general prohibition on third-party standing" bars Plaintiffs' claims "regardless of whether the plaintiff has suffered his own injury."  (ECF 176 at 20).  Specifically, Defendants argue that, because membership-based Organizational Plaintiffs do not

---

[24] ADL, SVREP, and WCVI are not membership-based organizations and have not pleaded associational standing.  As explained above, ADL, SVREP, and WCVI have organizational standing.

themselves have the right to vote, and are not themselves persons with disabilities, the "alleged rights at issue" in this matter belong to third parties—*i.e.*, Organizational Plaintiffs' members. (ECF 176 at 20).  The law says otherwise.

As explained above, having a member who would otherwise have standing to sue in their own right is a *requirement* for establishing associational standing, not a bar to it.  *See Ass'n of Am. Physicians v. Tex Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt*, 432 U.S. at 343). Defendants' proposed extension of the third-party standing defense here would completely gut the long-recognized concept of associational standing.  Tellingly, none of the cases Defendants cite apply the third-party standing defense in the context of organizational or associational standing.[25] Moreover, an argument similar to the one raised by Defendants *was* advanced and summarily rejected by courts in this District.  *See Lewis*, 475 F. Supp. 3d at 613 n.2 (citing *Ass'n of Am. Physicians*, 627 F.3d at 551) (rejecting third-party standing defense where "Organizational Plaintiffs have sufficiently alleged that they have both direct organizational and associational standing to bring these claims").

For these reasons, Organizational Plaintiffs satisfy their burden at the motion to dismiss stage to plead that they have standing to bring the claims asserted.

---

[25] Defendants' cited authority is inapposite to any issue before this Court.  (ECF 176 at 20).  *Cf. Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011) (dismissing husband's loss of consortium claim as derivative of wife's Title VII sexual harassment and retaliation claim); *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (dismissing secretary's claim for loss of employment as distinct from termination of employer); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) ("[t]his case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day.").

B.  *Plaintiff Lewin Sufficiently Pleads Injury in Fact*

Plaintiff James Lewin also alleges sufficient facts to survive Defendants' motion to dismiss.  Defendants do not contest that Mr. Lewin's past and future service as an election judge is political activity and speech protected by the First Amendment and the VRA.  Nor do Defendants contest that Mr. Lewin intends to serve as an election judge in the future but is dissuaded from doing so by SB1.  Simply put, SB1's provisions produce a chilling effect that limits the ability of election judges to do their jobs and prevent voter intimidation and interference, and even dissuades them from serving in the first place; contrary to the arguments Defendants advance, this forced self-censorship is sufficient to establish injury in fact.  *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) ("the Center's self-censorship constitutes sufficient injury to confer standing."); *see Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."); *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020) ("[The Court of Appeals] has repeatedly held, in the pre-enforcement context, that [c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.").  As the Fifth Circuit has recognized, "[c]ontrolling precedent thus establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing."  *Carmouche*, 449 F.3d at 660.

Mr. Lewin alleges that he fully "intends to serve as an election judge in future Texas elections," that his "greatest concern was that he and his team members would encounter disruption at the polls, including by poll watchers who sought to delay the voting process and discourage or intimidate voters," and that now, "because of his (and his family members') fear for his personal safety and because of fear of criminal prosecution," he may be forced to self-censor.  (1AC ¶ 215). This self-censorship is sufficient to establish Mr. Lewin's injury at the pleading stage.

C.     *The Invalidity of Texas's Election Laws Is Traceable and Redressable by Defendants*

With respect to the final two elements of standing, Defendants ignore that the Fifth Circuit has already established that "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable *by the State itself and its Secretary of State*, who serves as the chief election officer of the state." *OCA-Greater Hous.*, 867 F.3d at 613 (emphasis added); *Lewis*, 475 F. Supp. 3d at 613 ("Because the challenged restrictions are all found in the Texas election code, their invalidity is undoubtedly both fairly traceable to and redressable by the Secretary.").

In any event, Plaintiffs may satisfy the traceability element by showing a causal connection between the injury and the conduct complained of.  *See OCA-Greater Hous.*, 867 F.3d at 610 (quoting *Kyle*, 626 F.3d at 237).  Plaintiffs may satisfy the redressability requirement by showing that it is likely that the injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  Plaintiffs need not demonstrate that the relief sought will completely cure the injury; showing that the desired relief would lessen the harm in some way is sufficient.  *See Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014).  For the same reasons discussed above, Plaintiffs' injuries are traceable to Defendants, who are the state actors charged with the administration and enforcement of the State's election laws, including the challenged provisions of SB1.  *See* § I.B, *supra*; *OCA-Greater Hous.*, 867 F.3d at 613; *Hollins*, 620 S.W.3d at 408.  The injunctive relief sought here will necessarily lessen the harm alleged in the 1AC.  Traceability and redressability are thus satisfied here.

## PLAINTIFFS STATE LEGALLY SUFFICIENT CLAIMS

Defendants argue that, if the Court finds it has subject matter jurisdiction, it should dismiss four of Plaintiffs' ten claims under Rule 12(b)(6): Counts IV, V, VI, and IX.  (ECF 176 ¶ 1). Dismissal is not appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless,

assuming the truth of all facts alleged, the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's allegations may be "either direct or inferential." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Throughout the Rule 12(b)(6) analysis, "[t]he complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Morgan v. Swanson*, 659 F.3d 359, 370 n.17 (5th Cir. 2011) (en banc) (quoting *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

A.  *The VRA Indisputably Allows Private Organizations and Individuals to Defend Their Constitutional Rights in Litigation before Courts of Competent Jurisdiction*

As Defendants concede, this Court has already denied Defendants' argument that there is no private right of action under the VRA. (ECF 176 at 26; ECF 126 at 24:9–25:14). While Defendants note their disagreement with the Court's earlier ruling and purport to preserve the issue for further review, they do not ask the Court to revisit its prior decision, which was correct for the reasons set forth below. (ECF 176 at 26)

The Supreme Court has long recognized a private right of action with respect to the VRA. In *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), the Supreme Court observed that the "achievement of the Act's laudable goal could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Id.* at 556. Congress itself endorsed this approach when it amended § 2 of the VRA in 1982, with the legislative history of the amendment declaring that "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." *Morse v. Republican*

*Party*, 517 U.S. 186, 232 (1996) (citing S. Rep. No. 97-417, at 30).   The Supreme Court has since entertained a series of cases brought by private litigants to enforce Section 2.   *See, e.g.*, *Chisom v. Roemer*, 501 U.S. 380 (1991); *Johnson v. De Grandy*, 512 U.S. 997 (1994).   This is not—as Defendants say—an "open question."   (ECF 53 at 27).

Defendants seemed to suggest in their earlier motion to dismiss that there has been some fundamental shift in the law as to implied private rights of action.   But the cases Defendants rely on say no such thing.   For example, in *Alexander v. Sandoval*, the Supreme Court held that § 602 of Title VI the Civil Rights Act of 1964 did not imply a private right of action because its enforcement powers were conferred only on federal agencies engaged in the distribution of public funds.   532 U.S. 275, 289 (2001).   The Supreme Court *also* found that § 601 *did* provide a private right of action.   *Id.* at 279.   In other words, the fact that § 602 was limited to the Attorney General did not preclude a private right of action under § 601.   *See Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 859 (W.D. Tex. 2020) (discussing *Sandoval*), *rev'd on other grounds*, 860 F. App'x 874 (5th Cir. 2021).   This does nothing to undermine the existence of a private cause of action under the VRA.[26]

Defendants' same argument has already been made—and rejected—by other courts.   In *Veasey v. Perry*, defendants (including the Secretary and State of Texas) argued that "associations and the voters do not have private rights of action under Section 2 of the VRA[.]"   29 F. Supp. 3d 896, 905 (S.D. Tex. 2014).   As here, the defendants in *Veasey* relied on *Sandoval* to suggest that "the Supreme Court is taking a new hard line against implied rights of action" which left "the

---

[26] In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), on which Defendants also rely, the Supreme Court merely applied long-established precedent to conclude that the plaintiffs' *Bivens* claims under the Fourth and Fifth Amendments could not proceed under unrelated precedents on the scope of qualified immunity.   This has nothing to do with the Plaintiffs' VRA claims.

litigants without a specific claim on which to predicate their standing." *Id.* at 906. Citing the Supreme Court's long history of permitting private parties to enforce Section 2 of the VRA, however, the court comprehensively and correctly rejected defendants' assertions. *Id.* at 906–07.

In *Mi Familia Vota*, 497 F. Supp. 3d at 211, a plaintiff non-profit organization challenged the Texas mask-mandate exemption in an executive order as violating Section 2 of the VRA because it created a discriminatory burden on Black and Latino voters on account of race or color. Two decades after *Sandoval*, the district court in *Mi Familia Vota*, explicitly considered and rejected the defendants' argument that plaintiffs have no private cause of action to sue for violation of Section 2 of the VRA, finding that the "argument has no merit." *Id.* at 223; *League of United Latin Am. Citizens v. Abbott*, No. 21-CV-00259, 2021 U.S. Dist. LEXIS 231524, at *4 (W.D. Tex. Dec. 3, 2021) (Guaderrama, J.) (denying motion to dismiss advanced by Texas's leadership to the extent it argued that Section 2 of the VRA does not provide for a private right of action); *Tex. All. for Retired Ams. v. Hughs*, 489 F. Supp. 3d 667, 689 n.4 (S.D. Tex. 2020) ("In fact, organizations, like private parties, have historically been able to enforce Section 2 of the VRA.").

Plaintiffs' private right of action with respect to Section 208 of the VRA (assistance to blind, disabled, or limited literacy voters) is equally clear. Section 3 of the VRA clearly contemplates "a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment" by "the Attorney General *or an aggrieved person*." 52 U.S.C. § 10302 (emphasis added). As Defendants acknowledge, a federal district court recently found that "[t]his language explicitly creates a private right of action to enforce the VRA," which coexists alongside the provisions permitting civil actions by the United States Attorney General. *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 790 (W.D. Ark. 2021). The Fifth Circuit also implicitly recognized a private right of action when it upheld the trial court's judgment in favor of the organizational

plaintiff on its Section 208 claims in *OCA*.  867 F.3d at 615.  Defendants cite *no authority* to the

contrary.  As such, Defendants' arguments were properly rejected.

       B.     *Plaintiffs Assert Cognizable Claims under the Americans with Disabilities Act*

       Title II of the ADA provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  Allegations of discrimination may proceed on any one of three theories: "(1)

intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make

reasonable accommodations."  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 n.5 (4th Cir.

2016).  Although Defendants' briefing focuses almost exclusively on the accommodations theory

of liability, Plaintiffs' claims are not so limited.  Rather, the crux of Plaintiffs' claims is that SB1

denies meaningful voting access to a large and diverse group of individuals with disabilities.

       1.     <u>Plaintiffs May Bring ADA Claims on Behalf of Their Members with
Disabilities</u>

       Defendants allege that Plaintiffs' claims must fail because Plaintiffs are "artificial entities"

that are not disabled and cannot prosecute ADA claims on behalf of their members with

disabilities.  (ECF 176 at 21).  Defendants appear to argue that Plaintiffs' ADA claims are more

appropriately resolved on an individual-by-individual basis.  These arguments miss the mark.

Federal courts, including the Western District of Texas, routinely find that advocacy organizations

representing individuals with disabilities have standing to challenge violations of federal law and

seek injunctive relief to remedy systemic violations without the participation of individual

members.  *See, e.g.*, *Richardson*, 2019 U.S. Dist. LEXIS 234207, at *15–16 (permitting an

organization to proceed with ADA claims on behalf of its members with disabilities); *see MX Grp.,

Inc. v. City of Covington*, 293 F.3d 326, 331–36 (6th Cir. 2002) (rejecting the defendants'

26

contention that an ADA claimant, a drug treatment center, was required to join a client or potential client to obtain standing); *Steward v. Abbott,* 189 F. Supp. 3d 620, 631–32 (W.D. Tex. 2016) (Garcia, J.) (permitting organizations to proceed with ADA claims); *G.T. v. Kanawha Cty. Sch.*, No. 2:20-CV-00057, 2020 U.S. Dist. LEXIS 125528, at *23 (S.D. W. Va. July 16, 2020) (permitting organization to proceed with ADA claim without individual member participation).

In fact, federal circuit courts that have considered ADA claims by organizational plaintiffs have found that they *may* assert claims on behalf of members with disabilities as long as they meet the requirements for standing under Article III *or* "on its own behalf, because of injury it suffered as a result of its association with individuals with disabilities." *MX Grp.*, 293 F.3d at 335; *Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 40, 46 (2d Cir. 1997) (holding that an outpatient drug and alcohol treatment center had standing to bring ADA claim on its own behalf because the injury it suffered was a result of its association with individuals with disabilities).

As numerous federal courts have found in the recent months, the right of organizations to litigate on behalf of their constituents with disabilities has no less force in the context of voting. *See Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, No. 1:21-cv-01284-JPB, 2021 U.S. Dist. LEXIS 250697, at *35–40 (N.D. Ga. Dec. 9, 2021) (concluding that various organizational plaintiffs had standing to pursue ADA claims on behalf of their members in the context of a voting rights action); *Fla. State Conference of the NAACP v. Lee*, No. 4:21-cv-187, 2021 U.S. Dist. LEXIS 200532, at *10 (N.D. Fla. Oct. 8, 2021) (holding that the organizational plaintiffs sufficiently pled an ADA claim regarding voter drop box availability because it will "severely burden or deny their constituents' right to vote"); *Richardson,* 2019 U.S. Dist. LEXIS 234207, at *45 (denying motion to dismiss ADA claim alleging that Texas refused to reasonably

accommodate mail-in ballot voters with disabilities brought by the Coalition of Texans with Disabilities). Defendants do not cite any countervailing authority.

Although Defendants contend that only three Organizational Plaintiffs—LUPE, Texas Impact, and FIEL—have members with disabilities (ECF 176 at 21), SVREP and Jolt Action also allege that they and their members assist voters with disabilities. (1AC ¶¶ 17, 170, 172, 177, 202). And, as explained above, all Organizational Plaintiffs sufficiently plead organizational standing on behalf of themselves, and all membership-based Organizational Plaintiffs sufficiently plead associational standing. Thus, each of plaintiffs LUPE, FIEL, Texas Impact, SVREP, and Jolt Action may bring an ADA claim. *MX Grp.*, 293 F.3d at 334 (citing *Innovative*, 117 F.3d at 47).

2.  Defendants Administer Elections

For the reasons detailed *supra*, Defendants play an active role in the administration and enforcement of SB1—despite their efforts to pass all responsibility for doing so to local election officials—and therefore administer elections for purposes of Plaintiffs' ADA claim. *See* § I.B, *supra*. Two cases Defendants cite, *Lightbourn v. Cty. of El Paso,* 118 F.3d 421 (5th Cir. 1997) and *Ivy v. Williams*, 781 F.3d 250 (5th Cir. 2015), *vacated and remanded sub nom.*, 137 S. Ct. 414 (2016), do not compel a different conclusion.

For example, in *Lightbourn*, the plaintiffs—voters with disabilities and a nonprofit group that aids persons with disabilities—sued the Secretary and other defendants under the ADA for failing to ensure that voters with disabilities were able to cast their ballots in secrecy. *Id.* at 423– 34. Relying on § 43.034 of the Texas Election Code, the Fifth Circuit found that local election officials, not the Secretary, had the duty to ensure accessibility of polling places to voters with disabilities. *Id.* at 431. Unlike *Lightbourn*, Plaintiffs' claims here have a clear and direct nexus to Defendants. For example, Plaintiffs allege that voters with disabilities will be harmed by the chilling effect of potential criminal liability on those who assist them. *See* § II.B.3, *infra*. Among

28

other things, and as described above, the Secretary prescribes the forms to be filled out by assistors and funnels any and all information regarding potential criminal violations he identifies to the AG for prosecution.  *See* § I.B, *supra*.  When Plaintiffs are harmed by SB1, it will be because Defendants themselves carried out their duties to enforce the law.  As such, *Lightbourn* is factually distinguishable.

### 3.    Plaintiffs Raise Actionable Discrimination Claims

Defendants argue that "Plaintiffs have not identified any provision of SB1 that discriminates against voters with disabilities" (ECF 176 at 24); that the State is not liable for failure to accommodate because "Texas law provides numerous accommodations for disabled voters" (ECF 176 at 25); and, as discussed above, that Plaintiffs have not plausibly alleged facts establishing a qualifying disability for those members.  (ECF 176 at 21).  Defendants simply ignore the numerous facts alleged in the 1AC that identify precise provisions of SB1 and describe the disparate effect these provisions will have on Plaintiffs' members with disabilities.  Among other things, SB1 Section 6.06 criminalizes all forms of compensated assistance, imposing severe burdens on voters with disabilities, because assistors will reasonably fear criminal liability.  (1AC ¶¶ 99, 109).  SB1 Section 6.04 further criminalizes certain forms of assistance to voters with disabilities, including by requiring the assistor to swear to an intimidating oath under penalty of perjury and limiting the types of assistance that a voter can receive when voting in person.  (1AC ¶¶ 103–108).  These restrictions will impede voters with disabilities from voting and/or result in avoidable errors on their ballots.  (1AC ¶ 111).  For some, this will prevent voting altogether.  And the Organizational Plaintiffs that pursue voter education as a part of their mission will be required to incur substantial costs and divert resources from other activities in order to train assistors and voters about the vague and confusing requirements of SB1.  *See, e.g.*, (1AC ¶¶ 158–209).

Instead, Defendants point to other provisions of the Texas Election Code not challenged here, such as a blanket prohibition on discrimination against voters with disabilities, options for voters with disabilities to cast a ballot, and accommodations generally available to all Texas voters. (ECF 176 at 24–25).  At no point do they attempt to describe how these other provisions interact with those challenged by Plaintiffs here, namely SB1 Sections 5.11, 6.01, 6.03, 6.04, 6.05, and 6.06.  By failing to address the challenged provisions and their effect on voters with disabilities, Defendants provide no basis to challenge the plausibility of Plaintiffs' claim.

Even if Defendants had addressed the provisions Plaintiffs challenge, resolution of this dispute is a question of fact, and inappropriate for dismissal at the pleading stage.  *See Richardson*, 2019 U.S. Dist. LEXIS 234207, at *46 (denying motion to dismiss allegations that the Secretary refused to reasonably accommodate mail-in ballot voters with disabilities after finding that "[t]he Secretary's request again ignores that the Court must accept Plaintiffs' allegations at this stage."); *Lee*, 2021 U.S. Dist. LEXIS 200532, at *68–71 (denying the defendants' motion to dismiss where plaintiffs made plausible allegations that Florida's voting law would cause election supervisors to move voting drop boxes inside, making them less accessible to voters with disabilities). Defendants' assertions amount to mere disagreement with Plaintiffs' factual assertions and inferences which, at the pleading stage, are to be "liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff."  *Morgan*, 659 F.3d at 370 n.17.

## CONCLUSION

For these reasons, Plaintiffs respectfully ask the Court to deny Defendants' Motion.

Respectfully submitted,                                  January 19, 2022

s/ Nina Perales
_____

Nina Perales
Julia R. Longoria
Mexican American Legal Defense And
Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210 224-5382
nperales@maldef.org
jlongoria@maldef.org

Michael C. Keats*
Rebecca L. Martin*
Jason S. Kanterman*
Kevin Zhen*
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com
kevin.zhen@friedfrank.com

* Admitted *pro hac vice*

-and-

Chzristopher Bell*
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003
christopher.bell@friedfrank.com

* Admitted *pro hac vice*

*Attorneys for Plaintiffs:*
LA UNIÓN DEL PUEBLO ENTERO

s/ Sean Morales-Doyle
_____

Sean Morales-Doyle
Eliza Sweren-Becker*
Patrick A. Berry*
Andrew B. Garber*
Jasleen K. Singh*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
eliza.sweren-becker@nyu.edu
patrick.berry@nyu.edu
andrew.garber@nyu.edu
* Admitted *pro hac vice*

Paul R. Genender
Texas State Bar No. 00790758
Elizabeth Y. Ryan
Texas State Bar No. 24067758
Matthew Berde*
Texas State Bar No. 24094379
Megan Cloud
Texas State Bar No. 24116207
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
Liz.Ryan@weil.com
Paul.Genender@weil.com
Matt.Berde@weil.com
Megan.Cloud@weil.com

-and-

Alexander P. Cohen*
Texas State Bar No. 24109739
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8020

SOUTHWEST VOTER REGISTRATION
  EDUCATION PROJECT
MEXICAN AMERICAN BAR
  ASSOCIATION OF TEXAS
TEXAS HISPANICS ORGANIZED FOR
  POLITICAL EDUCATION
JOLT ACTION
WILLIAM C. VELASQUEZ INSTITUTE
FIEL HOUSTON INC.

Facsimile: (212) 310-8007
Alexander.Cohen@weil.com

* Admitted *pro hac vice*

*Attorneys for Plaintiffs:*
FRIENDSHIP-WEST BAPTIST
    CHURCH
ANTI-DEFAMATION LEAGUE
    AUSTIN, SOUTHWEST, AND
    TEXOMA REGIONS
TEXAS IMPACT
JAMES LEWIN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically

(via CM/ECF) on January 19, 2022, and that all counsel of record were served by CM/ECF.

s/ Nina Perales
NINA PERALES