IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br><br> Defendants. | Civil Action No. 5:21-cv-844 (XR) <br> (Consolidated Cases) |

**UNITED STATES' OPPOSED MOTION TO COMPEL PRODUCTION**

This case raises profound issues affecting the right to vote. The United States alleges in part that Texas Senate Bill 1 (SB 1) deprives certain Texas citizens of their right to vote by requiring rejection of mail ballot materials that lack an identification document number matching that voter's record in the Texas Election Administration Management database (TEAM database), the statewide voter registration database maintained by the Texas Secretary of State. Because SB1's identification procedures are unrelated to establishing a voter's qualifications, the United States alleges that they violate Section 101 of the Civil Rights Act of 1964 (Section 101), which bars states from rejecting such voting materials based on "errors or omissions" that are not material to establishing whether a voter is qualified to voter under State law.

To help establish the facts underlying the United States' Section 101 claim, the United States requested that Defendants produce extracts of data fields from the TEAM database and from identification document databases maintained by the Texas Department of Public Safety (DPS). And while the Defendants have provided many of the requested extracts from these two databases, they inexplicably refuse to produce certain others. The withheld information is intensely relevant, nonprivileged, and—because it is akin to the types of extracts already produced—it can be produced without undue burden or expense. In fact, Defendants have previously produced to the United States in prior litigation the very database extracts they seek to withhold here.

The parties have conferred in good faith in an effort to resolve these issues without need of motion practice. The Defendants nonetheless decline to produce certain database extracts necessary to delineate fully the scope of the United States' allegations of a Section 101 violation and the harm SB 1 imposes on Texas voters. The United States therefore respectfully moves to compel production.

## BACKGROUND

SB 1 requires Texas election officials to reject a voter's mail ballot application and mail ballot carrier envelope when the identification card number the voter writes on these materials does not match information in the TEAM database. *See* SB 1 § 5.02 (codified at Tex. Elec. Code § 84.002); SB 1 § 5.07 (codified at Tex. Elec. Code § 86.001); SB 1 § 5.08 (codified at Tex. Elec. Code § 86.002); SB 1 § 5.13 (codified at Tex. Elec. Code § 87.041). The United States alleges that these requirements violate Section 101, which prohibits denying the right to vote based on an "error or omission" that is "not material" to determining whether the voter is eligible to vote. 52 U.S.C. § 10101(a)(2)(B); U.S. Am. Compl. ¶¶ 63-65, 71-76, ECF No. 131. In addition to the identification document numbers not being generally material to voter qualifications, SB 1 violates Section 101 because some mail ballot materials will be rejected (1) due to errors or omissions in the TEAM database that makes matches impossible even when voters provide accurate identification information, U.S. Am. Compl. ¶ 65, and (2) because some voters no longer possess the identification document whose number they listed when registering to vote, U.S. Am. Compl. ¶ 64. Any such "error or omission" is not material to establishing voter eligibility under State law.

The United States first informed Defendants it would seek production of extracts from the TEAM and DPS databases at a Rule 26(f) conference on November 12, 2021. Defendants then indicated they would object to any database production, based on relevance, "burden, expense, proportionality, privilege, or privacy concerns." Rule 26(f) Rep. at 7-9, ECF No. 115.

The United States served its Requests for Production immediately following that conference. *See* United States' First Request for Production (Ex. 1). The United States sought TEAM and DPS database extracts, including database fields indicating whether a Texas resident

continues to possess an identification document. *See id.* Those extracts will enable the United States to compare the relevant fields in the two databases to ascertain and demonstrate the extent to which TEAM records do not accurately reflect the identification documents in voters' possession, as well as the extent to which registered voters no longer possess identification documents showing the document number they need to avoid rejection of mail ballot materials. The requested extracts will also allow the United States to present evidence about voters who are likely to qualify to vote by mail regularly under Texas law, such as voters over 65, among others.

On November 24, 2021, the United States provided Defendants with a proposed consent protective order to address data security and privacy concerns. The parties' subsequent discussions narrowed disputes and enabled entry of a stipulated protective order regarding database productions. *See* Stipulated Protective Order, ECF No. 162. But as relevant here, the Defendants indicated they would not produce three critical fields in DPS databases related to identification document possession: Card Status, Surrendered DL/ID Number, and License Surrendered (hereinafter the "physical surrender fields").

On December 15, 2021, Defendants served their objections and responses to the United States' Requests. *See* Def. Resp. and Obj. (Ex. 2). Defendants proffered general objections to the request for DPS database records because "[m]ultiple fields are irrelevant to matching individuals in the DPS system to individual[] registered voters in the TEAM system, determining voter eligibility, and determining whether a voter has been issued one or more identification documents named in" SB 1. Ex. 2, Def. Resp. and Obj. 17. Defendants also objected that "[p]ortions of the request are also unduly burdensome" but specified only the request for Social Security Numbers, on the grounds they would "present[] a risk that sensitive personal information will become public." *Id.* at 18. Defendants also proffered vague objections about

3

the TEAM and DPS databases' relation to the claims in this case and the extent to which the United States' requests fall short of the "proportionality standard." *Id.* at 5-6.

Ultimately, Defendants agreed to produce a subset of the requested fields, and did in fact produce them to the United States on January 18, 2022. But among the fields Defendants refused to produce were the physical surrender fields. *Id.* at 19. The United States continued to offer to further meet and confer both before and after Defendants' production, up to and including an offer to meet last week. Defendants continue to decline to produce the physical surrender fields. Those critical fields are the subject of this motion.

Notably, Texas previously produced the physical surrender fields to the United States in 2014 in *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.), litigation that challenged Texas's photographic voter identification requirements. One relevant question in that case was the number of registered voters who did not possess identification needed to cast a regular in-person ballot. During trial, now-Secretary Scott, then serving as counsel for the State, represented that two of the physical surrender fields that Texas seeks to withhold here (Surrendered DL/ID Number and License Surrendered) capture "a broad, broad universe" of individuals, including those who surrender a Texas identification document because of prior conviction, for age-related reasons, and because they "simply just do[]n't want to drive anymore." *See* Trial Tr. 9:18-10:8 (Day 6), *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) (Ex. 3). Moreover, DPS confirmed in that case that the third physical surrender field the United States seeks here, Card Status, covers customers who have "voluntarily surrendered their card." 1st Am. DPS Responses to Written Deposition at 2, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) (Ex. 4).[1]

---

[1] The United States' expert relied on the physical surrender fields to estimate that 608,470 registered voters in Texas did not possess qualifying identification. *See* Ansolabehere Rep. at 2

4

## LEGAL STANDARD

"A party seeking discovery may move for an order compelling . . . production[] or inspection . . . if a party fails to . . . respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). "[I]t is well settled that parties may obtain discovery regarding any non[-]privileged matter that is relevant to the parties' claims or defenses." *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 246 (W.D. Tex. 2013) (citing Fed. R. Civ. P. 26(b)(1)). An incomplete disclosure "must be treated as a failure to disclose." Fed. R. Civ. P 37(a)(4). "The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable." *Garner v. Martin Marietta Materials, Inc.*, No. 1:20-cv-01167, 2021 WL 4993487, at *1 (W.D. Tex. Oct. 27, 2021) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). An order compelling production is appropriate where the requested discovery is relevant, nonprivileged, and proportional to the needs of the case. *See Labaty v. UWT, Inc.*, No. 5:13-cv-389, 2015 WL 1393641, at *2-*4 (W.D. Tex. Mar. 24, 2015).

## ARGUMENT

Defendants' objections to producing the withheld data fields proffer mere generalities and boilerplate, which fail as a matter of law. Given the clear relevance of this information, the insufficiency of Defendants' objections alone justifies relief here. The Court should grant the motion to compel because the physical surrender fields are actually critical to establishing the full extent of the Section 101 violation alleged, are proportional to the needs of the case, are not

---

& nn.1-2, 30, 76, 78-80, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex. Sept. 16, 2014), ECF No. 600-1. The Fifth Circuit, sitting en banc, ultimately relied upon this analysis. *See Veasey v. Abbott*, 830 F.3d 216, 250 (5th Cir. 2016) (en banc); *see also Veasey v. Perry*, 71 F. Supp. 3d 627, 659 (S.D. Tex. 2014), *aff'd in relevant part*, 830 F.3d 216, 250 (5th Cir. 2016) (en banc).

5

privileged, and add little if any burden to the database production Defendants have already made. These fields have also been produced by Texas to the United States before.

**I.       Defendants' Generalized Objections Are Facially Insufficient.**

Defendants' objections lack requisite specificity. "[T]he party resisting discovery must show specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod*, 894 F.2d at 1485 (internal quotation marks and citation omitted); *see also Enron Corp. Sav. Plan v. Hewitt Assocs.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) (describing "burden to clarify and explain its objections and to provide support for those objections"). The burden shifts to the proponent of a discovery request only after a valid and specific objection is raised. *See, e.g.*, *United States v. 4.620 Acres of Land*, No. 7:20-cv-154, 2021 WL 973460, at *1 & n.15 (S.D. Tex. Mar. 16, 2021); *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) ("[T]he [2015] amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery."). Conclusory allegations alone cannot suffice. *See McLeod*, 894 F.2d at 1485.

And while the physical surrender fields are relevant and proportional to the needs of this case, *see* Part II, *infra*, Defendants' failure to object specifically to production of the physical surrender fields alone justifies relief. "[E]ven if some of the . . . requests for production [are] irrelevant"—which is not the case here—the resisting party nonetheless "must have a valid objection to each one in order to escape the production requirement." *McLeod*, 894 F.2d at 1485.

Defendants fail that basic test. Their objections do not even mention the three physical surrender fields at issue, much less note their purported irrelevance. Nor do Defendants state why producing these fields would be unduly burdensome or disproportionate—a failing that was perhaps inevitable, given that Defendants have already produced similar extracts from the

6

relevant databases and have produced those same fields to the United States in prior litigation. Defendants merely proffer that "multiple fields" are irrelevant to matching, determining eligibility, or "determining whether a voter has been issued one or more identification documents named in" SB 1 and that "[m]any of the requested fields . . . do not indicate whether an individual currently possess[es] the license or identification." Ex. 2, Defs'. Resp. and Obj. 17-18.[2] Defendants neither specify which fields are subject to which objections nor indicate why the physical surrender fields are specifically objectionable. Moreover, Defendants limit their burden argument to the Social Security Number field (which they have agreed to produce), *id.* at 18, and their proportionality argument merely recites Rule 26(b)(1) factors, *id.* at 5-6. Defendants thus fail to meet their weighty burden. The motion to compel should be granted on that basis alone.

## II. The Physical Surrender Fields Are Relevant and Proportional to the Needs of the Case.

Even if Defendants had targeted their objections, those objections would still fail: the physical surrender fields are highly relevant to determining the range and extent of Texas voters harmed by SB 1's vote by mail identification procedures. Moreover, production of those fields is proportional to the needs of this case. Production is thus appropriate.

---

[2] Of course the opposite is true: the physical surrender fields indicate precisely those Texans who no longer possess a previously issued DPS license or identification card.

**A. The Physical Surrender Fields Relate to the Alleged Section 101 Violation.**

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." *Alvarez v. State Farm Lloyds*, No. 5:18-cv-01191, 2020 WL 734482, at *2 (W.D. Tex. Feb. 13, 2020) (quoting Fed. R. Evid. 401).

The physical surrender fields Defendants withhold are highly relevant. Under SB 1, a voter's right to vote depends in part on whether he or she continues to have a record of the DPS identification number recorded in the TEAM database. The physical surrender fields indicate whether some voters actually possess identification showing the number they must recite. *See* Ex. 3, *Veasey* Tr. 9:18-10:8; Ex. 4, DPS Responses at 2. Qualified voters who have surrendered identification documents are at grave risk of having mail ballot materials rejected because those voters lack access to the number they must list—an injury Congress crafted Section 101 to prevent. Accordingly, the physical surrender fields relate directly to the United States' Section 101 claim, which is "intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). And apart from whether a voter's ability to recite an identification number is ever material to voter qualifications under Texas law, *see* Tex. Elec. Code §§ 11.001-002—which the United States disputes—the physical surrender fields are likely to show the extent to which SB 1 causes rejection of mail ballot materials due to so-

called errors and omissions unrelated to a voter's qualifications.  They could not be more relevant.[3]

### B. Production of the Physical Surrender Fields Is Proportional to the Needs of the Case.

The Rule 26(b) proportionality factors strongly favor production of the withheld fields. Proportionality is evaluated in light of:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also Patterson v. Defense POW/MIA Acc'g Agency*, 343 F. Supp. 3d 637, 658-59 (W.D. Tex. 2018).  "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

The Rule 26(b) factors justify relief here.  First, the issue at stake is the right to vote, "a fundamental political right, . . . preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).  "The federal government's interest in enforcing voting rights statutes is, without question, highly important." *Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014).  Accordingly, "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).

---

[3] Media reports indicate that SB 1's identification document number requirements have led to increased rejection of mail ballot applications in some counties.  *See, e.g.*, Andrea Lucia, *Dallas, Tarrant, Denton Counties Report New State Law Forces 40% of Mail-In Ballot Applications to Be Rejected*, CBS-Dallas Ft. Worth (Jan. 18, 2022), https://perma.cc/Y8PC-RE5E.

9

Second, Defendants alone possess the database information requested. There is no alternative way for the United States to obtain this information to show the extent to which Texas voters possess the required identification cards.

Third, the fields are critical to resolving the issues in this litigation. As noted above, database evidence, including the physical surrender fields, will show the rate at which SB 1 will "increase the number of errors or omissions on the application forms" and thereby disqualify voters, which is the crux of a Section 101 claim. *Schwier*, 340 F.3d at 1294. The extent to which eligible voters lack the identification documents needed to vote by mail bears directly on whether an identification card number is material to determining a voter's qualification to vote.

Finally, the benefit of producing the physical surrender fields far outweighs any burden or expense in their production. Weighed against the substantial benefits of production, Defendants have not "show[n] specifically how . . . [the request] is overly broad, burdensome or oppressive." *McLeod*, 894 F.2d at 1485 (quotation marks and alteration omitted). Their responses and objections do not suggest that including the physical surrender fields would meaningfully increase the burden of production, let alone that any increased burden would outweigh the records' probative value. Indeed, Defendants' recent production of TEAM and DPS database extracts demonstrates that such information can be produced without undue burden or expense. That Defendants produced the same physical surrender fields in *Veasey* that they withhold here further weakens any burden claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to compel production of the physical surrender fields. A proposed order is attached.

Date: January 24, 2022

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Michael E. Stewart*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
DANIEL J. FREEMAN
DANA PAIKOWSKY
MICHAEL E. STEWART
JENNIFER YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

## CERTIFICATE OF SERVICE

      I hereby certify that on January 24, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                                 */s/ Michael E. Stewart*
                                                 Michael E. Stewart
                                                 Civil Rights Division
                                                 U.S. Department of Justice
                                                 950 Pennsylvania Ave, NW
                                                 Washington, DC 20530
                                                 (202) 307-2767
                                                 michael.stewart3@usdoj.gov