UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | [Lead Case] |
| | § | |
| THE STATE OF TEXAS and JOHN SCOTT, in his official capacity as Texas Secretary of State, | § § § | Case No. 5:21-cv-1085-XR [Consolidated Case] |
| | § | |
| *Defendants.* | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS
THE UNITED STATES' CLAIMS**

i

TABLE OF CONTENTS

Table of Contents .......................................................................................................................... ii

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 1

    I.    The Challenge to Section 6.04 Fails ................................................................................ 1

        A.    The Federal Government Does Not Have Standing ........................................... 1

            1.    The Secretary Does Not Enforce Section 6.04, and an Injunction Against the Secretary Would Not Redress Any Injury ................................................................................................................. 1

            2.    The United States Cannot Sue Texas Either .......................................... 3

        B.    Section 208 Does Not Preempt SB1 ..................................................................... 4

        C.    Congress Did Not Authorize the Attorney General to Bring This Claim .................................................................................................................... 6

    II.    The Challenge to Sections 5.07 and 5.13 Also Fails ........................................................ 7

        A.    SB1 Does Not Violate the Materiality Provision ................................................. 7

        B.    The Federal Government Cannot Sue the Secretary ......................................... 10

        C.    The Federal Government Cannot Sue the State ................................................ 10

Conclusion .................................................................................................................................. 11

Certificate of Service .................................................................................................................. 11

**INTRODUCTION**

Eager to challenge SB1, the United States is trying to fit square pegs in round holes. First, the United States argues that Section 208 of the Voting Rights Act, which governs *who* may provide assistance to voters, preempts Section 6.04 of SB1, which governs *what* assistance may be provided. The United States' preemption claim fails because state and federal law do not conflict. In fact, state law elsewhere adopts the Section 208 standard almost verbatim.

Second, the United States argues that the Materiality Provision of the Civil Rights Act prohibits requiring mail-in voters to provide identifying information, but a would-be voter's identity is material to determining whether he is qualified to vote. The United States' theory is that state and local officials may make mistakes, but the Materiality Provision is not about whether officials implement state law free of mistakes. It is about whether the information they require is material to the state-law determination of a voter's qualifications.

In any event, even if SB1 violated these federal statutes in the unusual circumstances that the United States posits (it does not), the United States' claims would still fail. The United States brings facial challenges, which cannot succeed unless SB1 is invalid in *all* of its applications. The United States does not even argue it can satisfy that burden. The Court should grant Defendants' motion to dismiss.

**ARGUMENT**

I. **The Challenge to Section 6.04 Fails**

   A. **The Federal Government Does Not Have Standing**

      1. **The Secretary Does Not Enforce Section 6.04, and an Injunction Against the Secretary Would Not Redress Any Injury**

To challenge Section 6.04, the United States sued Secretary Scott, but he does not enforce that provision. Various local officials implement the oath revisions in Section 6.04. *See* ECF 145 at 3. The United States does not identify any connection between the Secretary and the oath requirement. Indeed, its amended complaint affirmatively alleges that the Secretary "has *not* issued guidance

1

concerning implementation of the revised oath." ECF 130 ¶ 43. Even if the Secretary had issued guidance, such guidance is not an enforcement role sufficient to support traceability or redressability. *Cf. Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (explaining that the power "to issue, amend or rescind an Executive Order . . . is not the power to enforce it" (cleaned up)).

The United States does not argue that the Secretary enforces or otherwise implements the oath requirement. Instead, it argues that the Secretary is a proper defendant because of his title— "chief election officer," Tex. Elec. Code § 31.001(a)—and *OCA-Greater Houston*. *See* ECF 195 at 5–6. That does not establish that the Secretary enforces Section 6.04. Such general pleading would not satisfy a private plaintiff's burden under the *Ex parte Young* exception because, "in the particular context of Texas elections, [the Fifth Circuit has] held that the Secretary's role varies, so we must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)). The Fifth Circuit "has acknowledged that [its] Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). The United States insists that the two analyses are "not identical," ECF 195 at 8 n.3, but the case it cites describes the analyses as "similar." *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 395 n.5 (5th Cir. 2015). The United States does not explain how any dissimilarities would favor it here. In fact, the standing inquiry applicable here is arguably *more* demanding than the *Ex parte Young* analysis that would not be satisfied on these allegations. *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 431 (5th Cir. 2001) (en banc) (Higginbotham, J., concurring).

The United States suggests that none of this matters because this Court is bound by *OCA*, *see* ECF 195 at 7–8 n.3, but as Defendants previously argued, that case does not bind this Court on this question. *See* ECF 145 at 4. *OCA* did not squarely address the meaning of the Texas Election Code provisions it cited. It seemed to assume they conferred broad authority, presumably because the Texas

2

authority interpreting the Secretary's authority more narrowly "was not called to the attention of the [*OCA*] panel." *Wilson v. Taylor*, 658 F.2d 1021, 1035 (5th Cir. 1981). But *Bullock v. Calvert* explained that these general provisions are not "a delegation of authority to care for any breakdown in the election process." 480 S.W.2d 367, 372 (Tex. 1972). Older precedent not considering *Calvert* is not dispositive. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 180 (5th Cir. 2020) (declining to accept the plaintiffs' broad interpretation of the Secretary's general duties and noting the tension between older Fifth Circuit precedent and *Calvert*).[1]

## 2. The United States Cannot Sue Texas Either

The United States claims it has standing to sue Texas (as opposed to a government official) because the State "enacted and codified SB 1 and implements SB 1 through state officials and entities," ECF 195 at 5–6, but that contradicts *Muskrat v. United States*, 219 U.S. 346, 361–62 (1911). *See* ECF 145 at 5. In *Muskrat*, the United States was not a proper defendant even though it enacted the challenged law and charged the Secretary of the Interior with enforcing that law. 219 U.S. at 349, 362. Attempting to distinguish *Muskrat*, the United States claims that this case implicates "its own sovereign interest in seeing federal law enforced," ECF 195 at 7, but the same was true in *Muskrat*, in which the United States wanted to defend the validity of a federal statute and ensure that it would be enforced. Finally, the United States suggests *Muskrat* is too old to be binding, *see id.* at 7 n.2, but the Supreme Court often relies on *Muskrat*, despite its age. *See, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

In the end, the United States argues that "[t]he interests of the United States and Texas are manifestly adverse" because "[t]he United States seeks to have Texas enjoined from implementing a

---

[1] The United States also relies on an expressly tentative motions panel decision, *see* ECF 195 at 7 (citing *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020)), even though the subsequent merits panel declined to adopt that reasoning. *See Tex. Democratic Party*, 978 F.3d at 180.

statute that" it believes is invalid. ECF 195 at 7. But Article III requires more than adversity in a colloquial sense. After all, the *Muskrat* also plaintiffs also sought "to restrain the enforcement of [the challenged] legislation . . . upon the ground that the same is unconstitutional and void." 219 U.S. at 349. The Supreme Court nonetheless ruled that a sovereign defendant that had enacted the challenged statute and charged its officers with enforcing that statute "ha[d] no interest adverse to the claimants." *Id.* at 361. This Court should do the same here.

### B. Section 208 Does Not Preempt SB1

Section 208 does not preempt Section 6.04 because the two laws address different issues. Section 208 provides that certain voters "may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. It addresses *who* may give assistance. Section 6.04, by contrast, amends the oath that assistants take. *See* Tex. Elec. Code § 64.034. It addresses *what* assistance is appropriate.

Texas law does not conflict with Section 208. In fact, the Texas Legislature adopted the substance of Section 208 elsewhere in the Election Code: A "voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs." Tex. Elec. Coe § 64.032(c); *see* ECF 145 at 6. The Texas Election Code is not at war with itself. Section 6.04 does not conflict with Section 64.032(c). Consequently, it does not conflict with the substantively identical Section 208 either. The United States has not satisfied the high standard for establishing conflict preemption even on an as-applied basis. *See* ECF 145 at 5.

Even if Section 6.04 conflicted with Section 208 in *some* applications (it does not), the United States' claim would still fail as a matter of law because Section 6.04 does not conflict with Section 208 in *all* applications. Up until now, Defendants understated the United States' because they thought the

United States was bringing an as-applied claim, *see id.* at 4, but the United States insists that it is bringing a facial claim, *see* ECF 195 at 8 n.3.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987), *see Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987) (explain a defendant could "defeat" a "facial challenge" by "merely . . . identify[ing] a possible set of permit conditions not in conflict with federal law"). The United States does not attempt to satisfy this burden. It alleges, for instance, that SB1 prohibits assistance that a voter "may need." ECF 195 at 13. But whenever a voter does not need assistance, then even on the United States' theory, Section 6.04 can validly prohibit that unnecessary assistance without running afoul of Section 208.

The United States alludes to "allegations that forms of assistance barred by SB 1 are necessary to make votes effective," ECF 195 at 14, but it did not allege, much less plausibly allege, that *every* type of assistance prohibited by Section 6.04 is necessary for *every* Texas voter. On the contrary, the United States alleges only "that *some* qualified voters require" prohibited forms of assistance. ECF 131 ¶ 45 (emphasis added).

The United States does not contest that some applications of Section 6.04—such as barring an assistant from pressuring a voter to support a different candidate, *see* Tex. Elec. Code § 64.034—are consistent with Section 208. After all, Section 6.04 and Section 208 share a common purpose: preventing "abusive manipulation of assistance." ECF 145 at 7 (quoting H. Rep. 92-227, 14 (Sept. 15, 1981)); *cf.* ECF 195 at 13 n.8. The United States' claim fails because it does not allege that "that no set of circumstances exists under which [Section 6.04] would be valid." *Salerno*, 481 U.S. at 745.

## C. Congress Did Not Authorize the Attorney General to Bring This Claim

Congress expressly authorized the Attorney General to file various suits under the VRA, but it did not authorize this suit. *See* ECF 145 at 7–10. The United States relies on Section 12(d), which applies only "[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 10301, 10302, 10303, 10304, 10306, or 10307." 52 U.S.C. § 10308(d). The United States' argument fails for multiple reasons.

First, the State is not a "person" who can trigger Section 12(d). *See* ECF 145 at 10, 15–16. The United States emphasizes that Section 12(d) contemplates relief against States in some instances, *see* ECF 195 at 11, but it conflates what type of relief may be available at the end of a suit with the statutory prerequisites that must be satisfied before a suit is filed. *See* 52 U.S.C. § 10308(d). That should not cause the United States any hardship. If it cannot identify a person violating or about to violate the law, then it has no need for relief against the State itself.

Second, the United States does not allege that the Secretary "has engaged" or "is about to engage in any act or practice" regarding Section 6.04. 52 U.S.C. § 10308(d). In response, the United States points to *OCA*'s ruling on standing, *see* ECF 195 at 10–11, but that case did not interpret Section 12(d). *See OCA*, 867 F.3d at 606–07.

Third, the United States does not allege that any of the Secretary's actions is "prohibited by section . . . 10307." 52 U.S.C. § 10308(d). The United States points to Section 10307(a), which provides that "[n]o person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of chapters 103 to 107 of this title or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a). But the United States does not allege that the Secretary will "refuse to permit any person to vote." *Id.* Even if the Secretary were responsible for limiting the activities of assistants (he is not), that would not be the same as "refus[ing] to permit [a voter] to vote." *Id.*; *see* ECF 145 at 8–9.

6

Further, interpreting Section 12(d) to incorporate Section 11(a) and interpreting Section 11(a) to incorporate all violations of the VRA creates impermissible surplusage. *See* ECF 145 at 9. The United States admits that its interpretation would result in surplusage but responds that "overlap" in statute drafting is "nothing unusual." ECF 195 at 10. Contrary to the United States' suggestion, its interpretation would create a "positive repugnancy" because it would render other provisions of law "wholly superfluous." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). Unlike interpretations in which two provisions merely "overlap," "but each section" does some work "that the other section does not," *id.*, the United States' interpretation would render various provisions of federal law useless, doing no work beyond what the expansively interpreted Section 11(a) would do. *See* ECF 145 at 9. The United States' response does not contest this point.

Perhaps acknowledging the weakness of its express cause of action, the United States alternatively asks (in a footnote) that this Court to recognize an implied cause of action. *See* ECF 195 at 11–12 n.7. The United States ignores the framework established in *Alexander v. Sandoval*, 532 U.S. 275 (2001). Relying on pre-*Sandoval* precedent, the United States effectively asks this Court "revert in this case to the understanding of private causes of action that held sway [58] years ago when [the Civil Rights Act] was enacted," but federal courts, "[h]aving sworn off the habit of venturing beyond Congress's intent," should "not accept [the United States'] invitation to have one last drink." *Id.* at 287; *see* ECF 195 at 12 n.7. In any event, there is no indication that Section 208 creates a right or a remedy for the Attorney General. Congress's careful enumeration of express cause of action precludes finding any implied cause of action here.

II.     The Challenge to Sections 5.07 and 5.13 Also Fails

    A.     SB1 Does Not Violate the Materiality Provision

The Materiality Provision does not prohibit local officials from implementing Section 5.07 and 5.13 for two main reasons. First, the Materiality Provision applies only when the defendant "den[ies]

7

the right of any individual to vote in any election," 52 U.S.C. § 10101(a)(2)(B), but enforcing the challenged provisions never prohibits anyone from voting. Sections 5.07 and 5.13 apply only to voting by mail, and even in that context they allow for a cure process. "[T]he right to vote [is] not 'denied' where" would-be voters are not "in fact absolutely prohibited from voting." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 188 (5th Cir. 2020). The United States tries to characterize this as turning on whether everyone potentially affected will actually vote. *See* ECF 195 at 26. That is wrong. The question is whether SB1 "absolutely prohibit[s]" those individuals from voting, *Tex. Democratic Party*, 978 F.3d at 188, and there is no dispute that the challenged provisions do not affect the availability of in-person voting. *See, e.g.*, Tex. Elec. Code § 82.005.[2]

Other limitations in the Materiality Provision confirm that it does not apply to limitations on one method of voting, as opposed to voting in general. The provision applies only to "an error or omission on any record or paper relating to any application, registration, or other act *requisite* to voting." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). "Requisite" means "required" or "essential" and is synonymous with "indispensable."[3] Because enforcement of Sections 5.07 and 5.13 does not absolutely prohibit anyone from voting, the papers to which they pertain are not "required," "essential," or "indispensable" to voting.

Second, the Materiality Provision applies only when an "error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B), and the identifying information required by Section 5.07 and 5.13 is material to determining whether an individual is a qualified voter. *See* ECF 145 at 13. "[V]erifying an individual's

---

[2] The United States provocatively suggests that Defendants' interpretation would have allowed for racial discrimination in the past, *see* ECF 195 at 23 n.11, but that is not true. Other laws clearly prohibit such discrimination. *See, e.g.*, 52 U.S.C. § 10101(a)(1), (2)(A).
[3] *Requisite*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed.), https://ahdictionary.com/word/search.html?q=requisite.

8

identity is a material requirement of voting." *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 841 (S.D. Ind. 2006) (noting the plaintiffs conceded the issue, "as they must"), *aff'd sub nom. Crawford v. Marion County Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008).

The United States also appears to suggest that a voter's identify is not material to his or her qualification to vote because the authenticity of a person's identify is not one of the six enumerated factors listed in Texas Election Code § 11.002. *See* ECF 195 at 19–20. Of course, determining a person's identity is material to determining whether that person satisfies the enumerated qualifications. For example, one cannot determine whether a would-be voter is registered without knowing who the would-be voter is. *See* Tex. Elec. Code § 11.002(a)(6). Indeed, Texas law separately makes clear that a person being who he claims to be is a prerequisite to being allowed to vote. *See, e.g.*, Tex. Elec. Code § 64.012(a)(3) (making it an offense if a person "votes or attempts to vote a ballot belonging to another person, or by impersonating another person.").

In this respect, Texas follows the approach of federal law. Congress requires States to ensure that voter-registration applicants provide identifying numbers. *See* 52 U.S.C. § 21083(a)(5)(A)(i)(I)–(II). SB1 is remarkably similar. *See* Tex. Elec. Code § 84.002(a)(1-a). That federal law "requires states to obtain the applicant's identification numbers . . . indicates that Congress deemed the identification numbers material to determining eligibility to register and to vote" under the Materiality Provision. *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008).[4]

The United States argues that the process may not work in some circumstances "[b]ecause of inaccuracies, omissions, and incomplete records." ECF 195 at 21. "The mistaken premise in this

---

[4] The United States relies on a different Eleventh Circuit opinion, *see* ECF 195 at 21, but that case turned on the fact that a separate federal statute, the Privacy Act, prohibited Georgia from requiring the information at issue, rendering it automatically immaterial. *See Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285, 1286 (11th Cir. 2006) (affirming "for the reasons stated in the district court's memorandum opinion"). Like *Florida State Conference of NAACP*, "this case is the mirror image of" *Schwier*. *Fla. State Conference of NAACP*, 522 F.3d at 1174 n.22.

argument is that the materiality provision refers to the nature of the error rather than the nature of the underlying information requested." *Fla. State Conference of NAACP*, 522 F.3d at 1174–75. The United States further suggests some voters may not be able to provide a matching identification number through no fault of their own, *see* ECF 195 at 24–25, but a voter's identity is material regardless of who, if anyone, is at fault for the identity not being confirmed. And of course, the cure process is designed to resolve such issues. *See* ECF 145 at 10–11.

Even if SB1 violated the Materiality Provision in some circumstances (it does not), the United States would still have failed to state a claim. As discussed above, the United States insists that it "presents a facial challenge," ECF 195 at 8 n.3, and a facial challenge requires the plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. In this case, however, the United States alleges only that things could go wrong for *some* voters in *some* circumstances. *See, e.g.*, ECF 131 ¶¶ 64–65 (alleging "[s]ome" voters will face problems). That does not suffice. *See supra* Part I.B.

### B. The Federal Government Cannot Sue the Secretary

The Secretary is not a proper defendant because none of his alleged actions "deny the right of any individual to vote in any election." 52 U.S.C. § 10101(a)(2)(B); *see* ECF 145 at 14–15. In response, the United States rests entirely on cases addressing jurisdiction, not the Materiality Provision. *See* ECF 195 at 18. Whatever rule the Fifth Circuit has adopted for standing, *see supra* Part I.A.1, a state official cannot violate the Materiality Provision unless he takes some action that "den[ies] the right of any individual to vote." 52 U.S.C. § 10101(a)(2)(B). The United States does not allege that the Secretary does anything under Sections 5.07 and 5.13, much less that he takes any actions to prevent voting.

### C. The Federal Government Cannot Sue the State

The United States also cannot sue the State in these circumstances. Congress specifically authorized suits against States when an official "is alleged to *have committed*" a certain "act or practice."

10

52 U.S.C. § 10101(c) (emphasis added). The United States does not contend the Secretary has taken any such act in the past. The express authorization therefore does not apply, and the existence of an express authorization to sue States undermines the United States' suggestion of a separate implicit authorization. *See* ECF 195 at 16–18. Nothing about the statue's legislative history can overcome its plain text. *See id.* at 15–16; *Bostock v. Clayton County*, 140 S. Ct. 1731, 1749 (2020).

## CONCLUSION

Defendants respectfully request that the Court dismiss the federal government's claims.

Date: February 1, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 1, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN