# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs,* | § | Case No. 5:21-cv-844-XR |
| | § | [Lead Case] |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, *et al.*, | § | |
| *Defendants.* | § | |
| | | |
| LULAC TEXAS, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 1:21-cv-786-XR |
| v. | § | [Consolidated Case] |
| | § | |
| JOHN SCOTT, *et al.*, | § | |
| *Defendants.* | § | |

## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF LULAC TEXAS, ET AL.

**TABLE OF CONTENTS**

Table of Contents ...........................................................................................................................ii

Introduction .................................................................................................................................1

Argument ......................................................................................................................................2

    I.    Plaintiffs Cannot Satisfy *Ex parte Young* ..................................................................2

        A.   Plaintiffs Have Not Alleged that the Secretary of State Enforces the
            Challenged Provisions of SB1 .............................................................................3

        B.   Plaintiffs Have Not Alleged that the Attorney General Enforces the
            Challenged Provisions of SB1 .............................................................................6

        C.   Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity .................9

    II.  Plaintiffs Lack Standing ..........................................................................................10

        A.   Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis
            ......................................................................................................................10

        B.   Plaintiffs Have Not Plausibly Alleged Traceability or Redressability .........................11

        C.   No Plaintiff Has Associational Standing .............................................................13

        D.   None of the Plaintiffs Plausibly Allege a Cognizable Injury .........................................16

        E.   Plaintiffs Violate the Bar on Third-Party Standing .............................................20

    III. Plaintiffs' Claims Fail as a Matter of Law ..............................................................20

Conclusion .................................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott,*
956 F.3d at 709 ...................................................................................................................7

*Ala. State Conference of the NAACP v. Alabama,*
949 F.3d 647 (11th Cir. 2020) (Branch, J., dissenting) ...................................................10

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of
Trs.,*
19 F.3d 241 (5th Cir. 1994) .............................................................................................14

*Ass'n of Cmty. Organizations for Reform Now v. Fowler,*
178 F.3d 350 (5th Cir. 1999) ...........................................................................................17

*Barker v. Halliburton Co.,*
645 F.3d 297 (5th Cir. 2011) ...........................................................................................20

*Becker v. FEC,*
230 F.3d 381 (1st Cir. 2000) ............................................................................................19

*Berg v. Obama,*
586 F.3d 234 (3d Cir. 2009) ............................................................................................19

*City of Austin v. Paxton,*
943 F.3d 993 (5th Cir. 2019) .....................................................................................*passim*

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .........................................................................................................17

*Coon v. Ledbetter,*
780 F.2d 1158 (5th Cir. 1986) .........................................................................................20

*Cornerstone Christian Sch. v. Univ. Interscholastic League,*
563 F.3d 127 (5th Cir. 2009) ...........................................................................................15

*Ctr. for Biological Diversity v. EPA,*
937 F.3d 533 (5th Cir. 2019) ...........................................................................10, 11, 13, 15

*Ctr. for Law & Educ. v. Dep't of Educ.,*
396 F.3d 1152 (D.C. Cir. 2005) .......................................................................................17

*Danos v. Jones,*
652 F.3d 577 (5th Cir. 2011) ...........................................................................................20

*Davis v. United States*,
  597 F.3d 646 (5th Cir. 2009)..............................................................................................2

*Def. Distributed v. U.S. Dep't of State*,
  No. 1:15-CV-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018).......................18, 19

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
  522 F.3d 796 (7th Cir. 2008).............................................................................................14

*Draper v. Healey*,
  827 F.3d 1 (1st Cir. 2017) (Souter, J.)..............................................................................14

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*,
  469 F. App'x 364 (5th Cir. 2012) (per curiam) ..................................................................16

*Fair Elections Ohio v. Husted*,
  770 F.3d 456 (6th Cir. 2014).............................................................................................18

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990)...........................................................................................................10

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
  17 F. Supp. 3d 599 (S.D. Tex. 2014) (Costa, J.)................................................................18

*In re Gee*,
  941 F.3d 153 (5th Cir. 2019) (per curiam) ..................................................................11, 16

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ................................................................................................18, 19

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
  487 F. App'x 189 (5th Cir. 2012) ......................................................................................15

*Hartman v. Moore*,
  547 U.S. 250 (2006)............................................................................................................9

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977).....................................................................................................13, 14

*Jacobson v. Fla. Sec'y of State*,
  957 F.3d 1193 (11th Cir. 2020) .........................................................................................19

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ...........................................................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...........................................................................................................20

*Louisiana ACORN Fair Hous. v. LeBlanc,*
　211 F.3d 298 (5th Cir. 2000)............................................................................................19

*Lujan v. Defs. of Wildlife,*
　504 U.S. 555 (1992)...........................................................................................10, 11, 16

*Mi Familia Vota v. Abbott,*
　977 F.3d 461 (5th Cir. 2020)........................................................................................2, 4

*Morris v. Livingston,*
　739 F.3d 740 (5th Cir. 2014)............................................................................................3

*NAACP v. City of Kyle,*
　626 F.3d 233 (5th Cir. 2010)................................................................................10, 14, 17, 18

*Nat'l Taxpayers Union v. United States,*
　68 F.3d 1428 (D.C. Cir. 1995).........................................................................................18

*Nat'l Treasury Emps. Union v. United States,*
　101 F.3d 1423, 1429 (D.C. Cir. 1996)..............................................................................17

*Ne. Ohio Coal. for Homeless v. Blackwell,*
　467 F.3d 999 (6th Cir. 2006)...........................................................................................13

*OCA-Greater Houston v. Texas,*
　867 F.3d 604 (2017)........................................................................................................10

*Physician Hosps. of Am. v. Sebelius,*
　691 F.3d 649 (5th Cir. 2012).............................................................................................2

*Prison Justice League v. Bailey,*
　697 F. App'x 362 (5th Cir. 2017) (per curiam) ...............................................................16

*Raj v. LSU,*
　714 F.3d 322 (5th Cir. 2013)...........................................................................................10

*Ray v. Texas,*
　No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ....................................16

*Spokeo, Inc. v. Robbins,*
　578 U.S. 330 (2016)........................................................................................................10

*Summers v. Earth Island Inst.,*
　555 U.S. 488 (2009)..................................................................................................13, 14

*Tex. Democratic Party v. Abbott,*
　961 F.3d 389 (5th Cir. 2020).............................................................................................3

*Tex. Democratic Party v. Abbott,*
   978 F.3d 168 (5th Cir. 2020) ............................................................................ 2, 3, 9

*Tex. Democratic Party v. Hughs,*
   ---F. App'x ---, 2021 WL 2310010 (5th Cir. June 4, 2021) (per curiam) .............................. 2, 3, 4, 7

*Texas Indigenous Council v. Simpkins,*
   No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.) .............................. 14

*United States v. Armstrong,*
   517 U.S. 456 (1996) .................................................................................................... 9

*Zimmerman v. City of Austin,*
   881 F.3d 378 (5th Cir. 2018) ...................................................................................... 17

## Constitutional Provisions

U.S. Const. art. III, § 2 ................................................................................................ 11

## Legislative Materials

An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess.
   (2021) .................................................................................................................... *passim*

## Statutes and Rules

42 U.S.C. § 1983 ........................................................................................................ 10, 20

52 U.S.C.
   § 10508 ................................................................................................................ 16

Tex. Elec. Code

§ 15.028................................................................................................................7
§ 31.003................................................................................................................3
§ 31.005................................................................................................................3
§ 31.006................................................................................................................7
§ 31.006(b)............................................................................................................7
§ 31.006(b)(2)........................................................................................................7
§§ 32.075..............................................................................................................6
§ 33.001(a)............................................................................................................3
§ 33.008................................................................................................................4
§ 33.008(1)............................................................................................................4
§ 33.008(2)............................................................................................................4
§ 33.0015..............................................................................................................6
§§ 43.002–43.004..................................................................................................5
§ 64.034................................................................................................................5
§64.0322...............................................................................................................5
§ 64.0322(a)..........................................................................................................5
§ 64.0322(b)..........................................................................................................5
§§ 83.001–83.0012................................................................................................5
§ 86.001(c)............................................................................................................6
§ 86.002(g)–(i).......................................................................................................6
§ 87.041................................................................................................................6
§ 87.0271..............................................................................................................6
§ 87.0411..............................................................................................................6

## INTRODUCTION

LULAC Texas and their co-plaintiffs' Second Amended Complaint (ECF 207) is still deficient. First, rather than address sovereign immunity claim-by-claim and provision-by-provision, as Fifth Circuit precedent requires, the LULAC Plaintiffs seem to take it for granted that the Secretary of State and the Attorney General (here, the "State Defendants") enforce all of Senate Bill 1 ("SB1"). Tex. Leg., *An Act Relating to Election Integrity and Security*, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). In that regard, they appear to have sued the State Defendants just because they are the State's top election and legal officials. The LULAC Plaintiffs fail to identify specific provisions of SB1 that these defendants enforce and how that enforcement causes their alleged injuries.

The same is true with respect to standing. Fifth Circuit precedent instructs the LULAC Plaintiffs to plead standing claim-by-claim and provision-by-provision. But the LULAC Plaintiffs do not attempt to comply with this pleading requirement. Moreover, the LULAC Plaintiffs disregard well-established Fifth Circuit standards on associational and organizational standing. As to associational standing, the LULAC Plaintiffs provide only cursory information on their members and membership structure, making it impossible to tell if their members have actually been injured and (even if they have) if the LULAC Plaintiffs have standing based on those injuries. And as to organizational standing, the LULAC Plaintiffs fail to identify concrete interests that, if injured, would support Article III standing. Instead, they point to general social interests like increasing voter turnout or educating the public on SB1. But Fifth Circuit law rejects standing based on such interests.

To date, the LULAC Plaintiffs' amendments have failed to resolve the threshold issues the State Defendants raised for the first time months ago. The State Defendants respectfully request that the Court dismiss the claims against them.

ARGUMENT

## I.  Plaintiffs Cannot Satisfy *Ex parte Young*

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, 860 F. App'x 847, 877–78 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). During the status conference, the parties discussed this issue. The State Defendants argued that "the plaintiffs haven't met their burden of specific allegations about what conduct from the defendants they are complaining of." Ex. A at 16. The Court sent "clear signals to all the plaintiff groups, you need to further amend your complaints here to address these challenges." *Id.* But neither of the LULAC Plaintiffs' amended complaints addressed this problem. They still fail to allege relevant enforcement roles for the Secretary of State and Attorney General on a claim-by-claim and provision-by-provision basis.

### A.    Plaintiffs Have Not Alleged that the Secretary of State Enforces the Challenged Provisions of SB1

Sovereign immunity precludes the LULAC Plaintiffs' claims against the Secretary of State because he does not have a sufficient connection with enforcement of SB1's challenged provisions. The LULAC Plaintiffs are required to identify which SB1 provisions they challenge and explain how the Secretary enforces those provisions. But they do no such thing.

As a preliminary matter, the LULAC Plaintiffs appear to cite the Secretary's status as the State's top election official as a reason why he is a proper defendant. Citing the Secretary's general authority under Texas Election Code §§ 33.001(a) and 31.003, they allege: "The Secretary is the State's chief elections officer and must 'obtain and maintain uniformity in the application, operation, and interpretation' of the State's election laws." ECF 207 ¶ 26. They further note the Secretary's authority under Texas Election Code § 31.005: "The Secretary has authority to 'take appropriate action to protect the voting rights' of Texans, including by ordering officials to correct offending conduct that 'impedes the free exercise of a citizen's voting rights.'" *Id.*

These allegations do not satisfy *Ex parte Young* because they do not "identify the Secretary's specific duties within the particular statutory provision" being challenged. *Tex. Democratic Party*, 860 F. App'x at 877–78 (citing *Tex. Democratic Party*, 978 F.3d at 179–80). "[I]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). But a *general* duty is all that the LULAC Plaintiffs allege. These provisions contain no specific enforcement obligation, let alone a specific obligation related to SB1. *See Tex. Democratic Party*, 860 F. App'x at 877–78 ("[I]n the particular context of Texas elections, . . . the Secretary's role varies, so" the LULAC Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue.) (citing *Tex. Democratic Party*, 978 F.3d at 179–80). Citing those general statutes does not suffice.

The LULAC Plaintiffs' other allegations fare no better. They challenge numerous provisions

of SB1, but only include allegations regarding the Secretary's duties in connection with two—§§ 4.04 and 6.03. ECF 207 ¶ 26. Indeed, the LULAC Plaintiffs make no mention at all of the Secretary's alleged role in enforcing SB1 except in their paragraph introducing that party. Thus, as an initial matter, the LULAC Plaintiffs' claims against the Secretary regarding every other provision of SB1 should be dismissed. Without a "provision-by-provision analysis," the LULAC Plaintiffs cannot carry their burden. *Tex. Democratic Party*, 860 F. App'x at 877.

The LULAC Plaintiffs' allegations regarding §§ 4.04 and 6.03 do not establish the requisite connection to enforcement. The LULAC Plaintiffs do not explain how enforcement by the Secretary results in the harms they allege. The Secretary is not a proper defendant because "[d]irecting the Secretary not to enforce [the challenged provisions] would not afford the Plaintiffs the relief that they seek." *Mi Familia Vota*, 977 F.3d at 468.

The Secretary's role under SB1 § 4.04 is not related to Plaintiffs' alleged injuries. That provision simply requires the Secretary to establish a training program for poll watchers, *see* Tex. Elec. Code § 33.008, that the training be publicly available, *id.* § 33.008(1), and that the system provide people who complete the training with a certificate, *id.* § 33.008(2). The LULAC Plaintiffs do not allege that the training program violates their rights. Indeed, their Second Amended Complaint does not mention the training program or § 4.04, except when describing the Secretary. *See* ECF 207 ¶ 26. Instead, the LULAC Plaintiffs complain about the potential future behavior of poll watchers, *see, e.g.*, *id.* ¶¶ 185–89, but they do not allege that behavior is connected to the Secretary. The LULAC Plaintiffs seem to admit that local election officials, not the Secretary, will implement the poll-watching provisions they challenge. *See, e.g.*, *id.* ¶ 180 (describing SB1's limitations on what election officials can do at polling places). *See Tex. Democratic Party*, 860 F. App'x at 878 (Secretary of State did not enforce voter registration law because the "county registrars are the ones who review voter registration applications.").

Nor is the Secretary's role under SB1 § 6.03 related to the LULAC Plaintiffs' alleged injuries. That provision requires a person who assists a voter to submit a form certifying the assistor's name, relationship to the voter, and whether he or she received compensation from a political entity for assisting the voter. Tex. Elec. Code § 64.0322(a). The Secretary is responsible only for designing the form. *Id.* § 64.0322(b). SB1 does not delegate authority to the Secretary to enforce compliance should an individual fail to provide the information or oath required by these provisions. *See id.* §§ 64.0322, 64.034. Indeed, the forms are not even submitted to the Secretary. They are submitted to local election officers, who are responsible for ensuring assistors comply with the rules.

Even if the LULAC Plaintiffs had tried to connect the other SB1 provisions they challenge to the Secretary, they would have failed. They assert Counts I and IV against the Secretary. ECF 207 at 52, 60. In Count I, the LULAC Plaintiffs challenge SB1 §§ 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.02, 4.06, 4.07, 4.09, 4.12, 5.01–5.03, 5.07, 5.08, 6.03, 6.04, and 7.04. *Id.* ¶ 252. But the LULAC Plaintiffs fail to allege the Secretary's connection to enforcement of these provisions. The Secretary in fact does not enforce them.

For example, SB1 §§ 3.09, 3.10 and 3.12 amend Texas Election Code §§ 85.005, 85.006(b) and (e), and 85.061(a), respectively, and the early voting clerk enforces these provisions. *See* Tex. Elec. Code §§ 83.001–83.0012 (identifying whom is the early voting clerk and specifying that "[t]he early voting clerk shall conduct the early voting in each election"); *see also id.* at §§ 85.005, 85.006(b), 85.006(e), 85.0061(a) (specifying how the early voting clerk shall conduct early voting in certain elections). SB1 §§ 3.04 and 3.13 include amendments relating to the location of polling places, but the Secretary does not designate polling locations. *See Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291 (5th Cir. 2021) (finding that "[t]he Secretary plays no role"); *see also* Tex. Elec. Code §§ 43.002–43.004 (assigning this responsibility to local officials).

The Secretary also does not enforce the challenged provisions relating to watchers, that is, SB1

§§ 4.01, 4.02, 4.06, 4.07, 4.09, and 4.12. Section 4.02, at most, imposes obligations on poll watchers, not the Secretary. Tex. Elec. Code § 33.0015. The others specify no enforcement role for the Secretary. *See id.* §§ 32.075 (amended by § 4.01); 33.051 (amended by § 4.06); 33.056 (amended by § 4.07); 33.061 (amended by § 4.09); 86.006 (amended by § 4.12). As to §§ 5.01–5.03, and 5.07, the early voting clerk, not the Secretary, enforces the ballot-application requirements. Tex. Elec. Code § 86.001(c). SB1 § 5.08 requires that the carrier envelope include spaces for voters to include information, *id.* § 86.002(g)–(i), but the signature verification committee and early voting ballot board are responsible for verifying that individuals provide the required information. *See id.* §§ 87.0271, 87.041, 87.0411.

The Secretary does not enforce SB1 §§ 6.03 and 6.04 either. Section 6.03 is discussed above. Section 6.04 requires a person providing assistance to a voter that is not an election officer to take an oath administered by an election officer before providing assistance. *Id.* § 64.034. It is "an election officer at the polling place," not the Secretary, who administers and enforces the oath requirement. *Id.*; *see also id.* §§ 32.071 ("The presiding judge is in charge of and responsible for the management and conduct of the election at the polling place . . . .); 32.074 ("An election judge or clerk may administer any oath required or authorized to be made at the polling place.").

Section 7.04 is both the final provision of SB1 challenged in Count I and the only provision challenged in Count IV. ECF 207 ¶¶ 252, 291. SB1 § 7.04 adds §§ 276.015–.019 to the Election Code. These provisions assign no enforcement role to the Secretary, and the LULAC Plaintiffs have not alleged that he enforces them.

**B.**    **Plaintiffs Have Not Alleged that the Attorney General Enforces the Challenged Provisions of SB1**

Sovereign immunity also bars the LULAC Plaintiffs' claims against the Attorney General. Again, allegations that the Attorney General has a general duty to enforce state laws, ECF 207 ¶ 27, are not enough to satisfy *Ex parte Young. See Tex. Democratic Party*, 961 F.3d at 401–02. A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each

challenged provision. *Tex. Democratic Party*, 860 F. App'x at 877. Though they challenge numerous SB1 provisions, the LULAC Plaintiffs only discuss the Attorney General in relation to five—§§ 2.04, 2.08, 6.03, 6.04, and 7.04. ECF 207 ¶ 27. For this reason, the LULAC Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant for challenges to any other provision.

The LULAC Plaintiffs' allegations are also insufficient even for the provisions they mention: §§ 2.04, 2.08, 6.03, 6.04, and 7.04. The LULAC Plaintiffs observe that § 2.04 "requires the Attorney General to be informed of all instances of unlawful voting or registration" and contend that it "empowers the Attorney General to use that information to investigate and prosecute such crimes." ECF 207 ¶ 27. But the Attorney General does not *enforce* § 2.04. Under that provision, he merely receives information. *See* SB1 § 2.04 (amending Tex. Elec. Code § 15.028). Enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but § 2.04 does not empower the Attorney General to compel or constrain anyone. Because "the requisite connection is absent," the *Ex parte Young* analysis ends there. *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (citing *City of Austin*, 943 F.3d at 998), *vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021). In any event, the LULAC Plaintiffs do not contend that the Attorney General would violate federal law by merely receiving information.

Nor does the Attorney General enforce § 2.08. Under that provision, just like under § 2.04, the Attorney General receives information indicating that a criminal violation of the State's election laws may have occurred. In fact, the provision's primary effect is to establish that such information is not public information until after the investigation is completed. Tex. Elec. Code § 31.006(b). Nothing in Texas Election Code § 31.006 compels the Attorney General to take an enforcement action. Indeed, it expressly contemplates that he has discretion to determine that "the information referred does not warrant an investigation." *Id.* § 31.006(b)(2).

As for SB1 §§ 6.03, 6.04, and 7.04, the LULAC Plaintiffs allege that the "Attorney General

has . . . made clear that he plans to enforce" provisions of SB1, including "violations of voter assistance laws, like SB1 §§ 6.03–6.04, and so-called vote harvesting laws, like § 7.04," based on the Attorney General's announcement "that he would be forming the Texas Election Integrity Unit." ECF 207 ¶ 27. The LULAC Plaintiffs allege that "[t]he Attorney General is empowered to 'prosecute a criminal offense prescribed by the election laws of [the] state,' Tex. Elec. Code § 273.021(a), including the new criminal provisions of SB 1." *Id.* However, the Texas Court of Criminal Appeals recently held that Texas Election Code § 273.021 "is unconstitutional" and the Attorney General "cannot initiate prosecution [of election cases] unilaterally." *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). As a result, "the authority of the Attorney General is limited to assisting the district or county attorney upon request." *Id.* at *9.[1] This Court must "take the word of the highest court on criminal matters of Texas as to the interpretation of its law." *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (per curiam).

The LULAC Plaintiffs acknowledge the *Stephens* decision, but maintain that "the Attorney General retains the power to assist district or county attorneys, upon request." ECF 207 at 11 n.1. However, they make no allegation that such a request has been made or is imminent in relation to the challenged SB1 provisions. "Speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing" SB1 "is inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 1000). Accordingly, these and other allegations relating to the Attorney General's authority to prosecute violations of Texas's election laws are also insufficient to establish the Attorney General as a proper defendant.

Because the LULAC Plaintiffs have not alleged, on a provision-by-provision basis, "that the Attorney General *has* the authority to enforce" the particular provisions at issue, *City of Austin*, 943

---

[1] The State of Texas and the Attorney General believe that *Stephens* was wrongly decided. The State has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision.

F.3d at 1001, there is no need to proceed to the next step in the analysis. Their claims fail out of the gate.

But if the Court reaches the second step, it must consider whether the LULAC Plaintiffs have plausibly alleged "that [the Attorney General] is likely to" enforce the particular provisions at issue in the way Plaintiffs claim. *Id.* at 1002. The decision of the Texas Court of Criminal Appeals discussed above holds that the Attorney General cannot do so unilaterally. *See Stephens*, 2021 WL 5917198, at *1, 8. And the LULAC Plaintiffs do not allege that any district or county attorney has, or is likely to, seek the Attorney General's assistance in prosecuting violations of the challenged SB1 provisions. Moreover, to the extent the LULAC Plaintiffs rely on the Attorney General's prior investigations and prosecutions, "that he has chosen to" enforce "*different* statutes under *different* circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. The LULAC Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that violate federal law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006).

### C.     Plaintiffs Do Not Plead an Alternative Exception to Sovereign Immunity

Sovereign immunity bars the LULAC Plaintiffs' claims unless they show that sovereign immunity has been "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997). The *Ex parte Young* exception does not apply for the reasons above, and the LULAC Plaintiffs have not pleaded waiver or abrogation by Congress that would permit their claims to proceed. And if they had tried, they would have been wrong.

The LULAC Plaintiffs do not assert Counts II or III against the State Defendants in their Second Amended Complaint. ECF 207 at 54, 57. Those counts raise § 1983 claims, and "Congress

has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). As to Counts I and IV, although *OCA-Greater Houston v. Texas* holds, without analysis, that the Voting Rights Act abrogates sovereign immunity, 867 F.3d 604, 614 (5th Cir. 2017), that case was wrongly decided. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nor did it do so in Section 208. When the VRA authorizes relief against States, it does so through suits brought by the Attorney General, *see, e.g.*, 52 U.S.C. § 10308(d), which the Supreme Court has held are not subject to sovereign immunity. *See West Virginia v. United States*, 479 U.S. 305, 312 n.4 (1987); *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Although this Court is bound by *OCA-Greater Houston*, the State Defendants preserve this argument for appeal.

## II.    Plaintiffs Lack Standing

### A.    Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, the LULAC Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show that (1) its members would independently have standing; (2) the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Ctr.*

*for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because the LULAC Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," the LULAC Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue." *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, the LULAC Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

### B.    Plaintiffs Have Not Plausibly Alleged Traceability or Redressability

As an initial matter, the LULAC Plaintiffs lack standing because their alleged harms are neither traceable to the State Defendants nor redressable by this Court. By and large, the LULAC Plaintiffs challenge SB1 as an undifferentiated whole, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. But as explained in Part I, none of the State Defendants have broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. However, traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2. The LULAC Plaintiffs fail to address these requirements. Their claims against the State Defendants cannot proceed because they do not connect their alleged injuries to the Secretary's or the Attorney General's actions or explain how enjoining them will redress those injuries.

Any alleged injuries are not fairly traceable to the Attorney General for another reason. While the LULAC Plaintiffs acknowledge that the Attorney General lacks the authority to unilaterally prosecute election-law offenses according to the *Stephens* decision, they nonetheless attempt to establish standing based on his power to assist local prosecutors upon request. ECF 207 at 11 n.1. However, that argument rests on their highly speculative fear that: (1) a district or county attorney will

decide to prosecute an individual under one of the provisions challenged; (2) the individual to be prosecuted will be a member of one of the organizations bringing this challenge; (3) the county or district attorney will seek the assistance of the Attorney General; and (4) the Attorney General will agree to provide such assistance. Reliance on this "speculative chain of possibilities" is insufficient to establish that any prosecutorial injury "is certainly impending or is fairly traceable." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013). Moreover, given that the first and third links in the above-described chain of contingencies would require the Court to engage in "guesswork as to how independent decisionmakers will exercise their judgment," this Court should "decline to abandon [the] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.*

To be sure, *OCA-Greater Houston* wrongly found standing satisfied in an earlier suit against the Secretary of State because the Secretary "serves as the 'chief election officer of the state.'" 867 F.3d at 613. But *OCA* "involved a *facial* challenge under the Voting Rights Act," not "an as-applied challenge to a law enforced by local officials." *Tex. Democratic Party v. Hughs*, 974 F.3d 570, 571 (5th Cir. 2020) (per curiam) (distinguishing *OCA*). Its reasoning is limited, at least, to cases considering "[t]he facial validity of a Texas election statute." *OCA*, 867 F.3d at 613.

In any event, *OCA* is inconsistent with Texas authorities, which control on the underlying question of Texas law: Does being the "chief election officer" empower the Secretary to enforce Section 6.04? No, because the "Secretary's title chief election officer is not a delegation of authority to care for any breakdown in the election process." *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (Blacklock, J., concurring) (describing *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972)) (quotation marks omitted). *OCA* did not consider these precedents, or any other opinions from Texas courts. Justice Blacklock's *In re Hotze* concurrence post-dated *OCA*, so the *OCA* court did not have a chance to consider that opinion. And the *OCA* court appears to have been unaware of *Calvert*, which was not

cited in the parties' briefs. Because *OCA* did not "squarely address[]" Texas cases interpreting the Secretary's role as chief election officer, it is not binding "by way of stare decisis." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see Wilson v. Taylor*, 658 F.2d 1021, 1034–35 (5th Cir. 1981) (refusing to follow a Fifth Circuit opinion that conflicted with a previous Supreme Court opinion that "was not called to the attention of the [first Fifth Circuit] panel").

### C.     No Plaintiff Has Associational Standing

Plaintiffs' Second Amended Complaint does not plausibly allege facts establishing associational standing. A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. The plaintiff must therefore make two threshold showings: (1) that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1997) (requiring "indicia of membership"), and (2) that identified members have "suffered the requisite harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The LULAC Plaintiffs here have done neither.

The LULAC Plaintiffs have failed to establish they have "members" within the meaning of the *Hunt* test. Voto Latino does not even describe itself as having members. Indeed, the most recent financial disclosure form on its website told the IRS that it did not "have members," much less "members . . . who had the power to elect or appoint one or more members of the governing body." *See* ECF 54-2 (answering "No" to questions 6 and 7a in Part VI.A of IRS Form 990). Voto Latino instead claims to act on behalf of various Texas communities, *id.*, but the beneficiaries of a plaintiff's services do not qualify as members for purposes of associational standing. *See Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[T]he Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization."). Not having members is fatal to

associational standing.

The remaining Plaintiffs claim to have members in the colloquial sense, but they fail to allege that each of those individuals "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.). The LULAC Plaintiffs assert no facts to this end.

Second, even assuming Plaintiffs have members, they fail to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. This requires, among other things, allegations of a "specific member" and specific facts establishing how that member will suffer an injury in fact. *City of Kyle*, 626 F.3d at 237. As this Court recognized at the status conference, the LULAC Plaintiffs' original complaint did not "identify[] specific members of those associations who would themselves have standing to sue." ECF 177-1, Ex. A at 18. The Court advised the plaintiffs "to flush that out because I don't see where many of you have articulated those individuals sufficient to withstand any challenge." *Id.* But the LULAC Plaintiffs did not follow that advice in either of their amended complaints.

This defect is independently sufficient to warrant dismissal of the LULAC Plaintiffs' claims. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing

14

claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[2]

Moreover, to the extent the LULAC Plaintiffs seek to establish the requisite injury based on the Attorney General's authority to investigate and prosecute violations of SB 1, as explained above, the LULAC Plaintiffs have not credibly alleged that the Attorney General enforces the provisions challenged in this suit. *See* Part I.B, *supra*. As for the Attorney General's alleged investigative authority, *see* ECF 207 ¶ 27, "the mere existence, without more, of a governmental investigative and data-gathering activity" is insufficient to establish an imminent, concrete injury. *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 608 (6th Cir. 2008) (quoting *Laird v. Tatum*, 408 U.S. 1, 10 (1972)). Here, the LULAC Plaintiffs' attempt to establish an injury in fact based on a "possible," rather than "ongoing," investigation by the Attorney General is "speculative at best." *See Judicial Watch, Inc. v. Fed. Election Comm'n*, 293 F. Supp. 2d 41, 47–48 (D.D.C. 2003).

Finally, even if the LULAC Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claim: Count IV under § 208 of the VRA. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, the LULAC Plaintiffs' disability claim requires the participation of individual members,

---

[2] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that.

both because it has individualized elements and because of the relief requested. First, a plaintiff must identify which aspect of § 208 has been violated. That statute applies to several different categories of impairments: "blindness, disability, or inability to read or write." 52 U.S.C. § 10508. And as with all impairments, these vary in degree and effect. For these reasons, a voter's entitlement to assistance under § 208 is based on a specific voter's disability and the assistance necessary to accommodate that voter. *See, e.g., Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, 6–7 (E.D. Tex. Aug. 7, 2008) (considering the specific effect of Texas early voting law on group of elderly plaintiffs). This requires a "case-by-case analysis" of plaintiff-specific facts and circumstances. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 369 (5th Cir. 2012) (per curiam). The LULAC Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of a disability claim.

### D.    None of the Plaintiffs Plausibly Allege a Cognizable Injury

The LULAC Plaintiffs do not have organizational standing because they have not plausibly alleged that they, as organizations, will suffer injuries in-fact. The LULAC Plaintiffs do not claim to be "the object of the government action or inaction [they] challenge[]," so standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (quotation omitted). Instead, all four Plaintiffs claim that SB1's effects on third parties force them to divert resources from other programs and activities. ECF 207 ¶¶ 20, 22, 24–25, 254, 285. As an initial matter, the LULAC Plaintiffs' allegations are insufficient because they treat SB1 as an undifferentiated whole rather than address "each provision of law at issue." *In re Gee*, 941 F.3d at 161–62. This Court must "decide [standing] on a provision-by-provision basis." *Id.* at 165.

In any event, although the diversion of resources can constitute a requisite injury under certain

16

circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. First, an organization's decision to divert resources cannot itself be speculative. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402. Rather, the organization must act in response to an impending injury. That is, a diversion of resources is cognizable only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

The alleged underlying injury must also be concrete. "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). Allegations of impaired "issue-advocacy" do not suffice. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 (D.C. Cir. 2005). Thus, "a showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999).

In this case, none of the LULAC Plaintiffs identify a cognizable injury they would suffer if they did not divert their resources. LULAC claims that it "must divert resources . . . to address the adverse impacts of SB1." ECF 207 ¶ 20. LULAC does not claim that these "adverse impacts" affect *its* activities. Instead, it casts its objection as a concern over the burden SB1 allegedly imposes on LULAC's members. *Id.*; *see also id.* ¶¶ 254, 285. The most LULAC implies is a relationship between SB1 and voter turnout among Latino communities, which, it contends, is "critical" to its mission. *Id.* ¶ 20. But the "abstract social interest in maximizing voter turnout . . . cannot confer Article III

standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). And an interest in increasing turnout for particular groups is akin to a "generalized partisan preference[]," which the Supreme Court held insufficient to establish Article III standing. *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018). Regardless, "a stated interest in an issue is not enough unless there is a concrete showing of how the allegedly discriminatory . . . practice is going to impair the organization's activities." *Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 613 (S.D. Tex. 2014) (Costa, J.). That is missing here.

The harms alleged by Voto Latino fall flat for similar reasons. Voto Latino claims that it "will need to divert funds . . . , as well as the time and energy of its staff and volunteers in Texas, to educate its constituents" about SB1. ECF 207 ¶ 22. As an initial matter, an organization's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Voto Latino characterizes the diversion of resources as being directed towards "combat[ing] SB 1's effects on its core constituency" and "Texans that Voto Latino works to support" rather than SB1's impact on its own activities. ECF 207 ¶ 22; *see also id.* ¶¶ 254, 285. Voto Latino claims that SB1 "frustrates its mission of enfranchising and turning out Latinx voters in Texas." *Id.* ¶ 22. But again, maximizing voter turnout is not a concrete interest. *Fair Elections Ohio*, 770 F.3d at 461; *see also Gill*, 138 S. Ct. at 1933.

TARA and Texas AFT, meanwhile, argue that the diversion of resources is necessary to educate members on the new law, ECF 207 ¶¶ 24–25, but educating voters, on its own, is not an injury in-fact. *Nat'l Taxpayers Union*, 68 F.3d at 1434. In addition, to establish standing, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities.'" *Def. Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238). And it must "identify

'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Id.* (quoting *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)). TARA and Texas AFT allege none of this.

Finally, both TARA and Texas AFT contend that SB1 "threaten[s] the electoral prospects" of their "endorsed candidates," ECF 207 ¶ 23, impairing their ability "to help [their] membership select leaders" who support their memberships' interests. *Id.* ¶ 25. The argument fails, however, because not only have Plaintiffs not alleged that SB1 disproportionately affects the candidates TARA and Texas AFT prefer, but "[a]n organization's general interest in its preferred candidates winning as many elections as possible is still a 'generalized partisan preference[]' that federal courts are 'not responsible for vindicating.'" *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1206 (11th Cir. 2020) (quoting *Gill*, 138 S. Ct. at 1933). Thus, even though TARA claims that SB1 frustrates its mission, ECF 207 ¶ 23, none of the consequences that TARA attributes to SB1 constitute a legal harm. *See Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) (explaining that a plaintiff's "wish that . . . voters had chosen a different presidential candidate" is not "a legal harm"); *see also Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000). TARA also appears to assert an interest in general voter turnout. ECF 207 ¶ 24 (alleging that TARA "spends resources on voter registration, phone banking, and GOTV [get-out-the-vote] activities"). But as explained above, that interest does not support Article III standing.

*OCA-Greater Houston*, about which the Court asked at the status conference, is not to the contrary. In that case, the Fifth Circuit considered whether a plaintiff's alleged diversion of resources was an injury in fact. The court analyzed a "critical distinction": whether the expenses "were related to litigation" or "unrelated to litigation." *OCA*, 867 F.3d at 612. That is an important limitation on organizational standing, but it is not at issue in this case.

In this case, one key question is whether the LULAC Plaintiffs' alleged diversions of resources are self-inflicted injuries or necessary responses to cognizable injuries they otherwise would have

suffered. *OCA* did not analyze that question, seemingly because the parties did not brief it. The court there simply did not consider whether the plaintiff's "change in plans" was "in response to a reasonably certain injury imposed by the challenged law," as other precedent requires the Court to address here. *Zimmerman*, 881 F.3d at 390.

E.       **Plaintiffs Violate the Bar on Third-Party Standing**

Finally, the LULAC Plaintiffs lack standing for another reason: the bar on third-party standing. The LULAC Plaintiffs' Count III is based on § 1983, but that statute provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. The same is true for the LULAC Plaintiffs' other causes of action. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the LULAC Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right to assistance with voting if you have a disability). The LULAC Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

III.   **Plaintiffs' Claims Fail as a Matter of Law**

Finally, the LULAC Plaintiffs' claims under §§ 2 and 208 of the Voting Rights Act must be dismissed because those statutes do not create a private cause of action. State Defendants will not burden the Court with further briefing on these issues that they raised in their first Motion to Dismiss, ECF 54 at 16–21, because of the Court's denial of these arguments during the November 16, 2021 status conference. State Defendants respectfully disagree with that ruling and raise these arguments to preserve them for further review.

## CONCLUSION

State Defendants respectfully request that the Court dismiss the claims against them.

Date: February 9, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*\*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 9, 2022, and that all counsel of record were served by CM/ECF.

*/s/Patrick K. Sweeten*
PATRICK K. SWEETEN

23