# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | |
| | § | Case No. 5:21-cv-844-XR |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |
| | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 5:21-cv-1085-XR |
| | § | |
| THE STATE OF TEXAS, et al., | § | |
| *Defendants.* | § | |

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> JOSE A. ESPARZA, *et al,*. <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al.,* <br>     *Plaintiffs*, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *et al.*, <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> JOSE ESPARZA, *et al.*, <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-0920-XR |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-cv-1085-XR |
| | § | |
| THE STATE OF TEXAS, ET AL., | § | |
| Defendants | § | |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO THE UNITED STATES' FIRST SET OF REQUESTS FOR PRODUCTION

TO:   Plaintiff the United States of America, by and through their attorneys of record, Kristen Clarke, Pamela S. Karlan, T. Christian Herren, Jr., Richard A. Dellheim, Daniel J. Freeman, Dana Paikowsky, Michael E. Stewart, and Jennifer Yun, United States Department of Justice Civil Rights Division, 950 Pennsylvania Avenue NW, Washington, DC 20530

Defendants John Scott, in his official capacity as the Texas Secretary of State, and the State

of Texas hereby serve their Objections and Responses to the United States' First Set of Requests

for Production, pursuant to the Federal Rules of Civil Procedure.

Date: December 15, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415
*Application for Admission Pending

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2021, the attached Defendants' Objections and Responses to the United States' First Request for Production of Documents was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

# GENERAL OBJECTIONS

Defendants object to each discovery request to the extent that it: (1) calls for the production of documents that are publicly available or otherwise uniquely or equally available from third parties; (2) calls for the production of documents that are not proportional to the needs of this case; and (3) calls for the production of documents that are irrelevant to the subject matter of this litigation.

Under Rule 26(b)(1), the proper scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (2015). Among the considerations that are germane to that inquiry are "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Defendants object to these requests to the extent that the information sought is either irrelevant or disproportionate.

First, much of the production being sought is not "relevant to any party's claim or defense" in this case. The United States claims that provisions of SB 1 "deny eligible voters meaningful assistance in the voting booth and require rejection of mail ballot materials for immaterial errors

or omissions." ECF 131 ¶ 2; *see also id*. ¶¶ 66-76. The requested production is primarily directed at the United States' second claim involving the rejection of mail-in ballots. In pursuit of that second claim, the United States indicates that it needs to ascertain whether some qualified Texas voters either will not be able to provide the identification number required by SB 1 or will provide an identification number that is not in the Texas Election Administration Management ("TEAM") system. *See id.* ¶¶ 64-65. However, both the Office of the Secretary of State's TEAM system and the Department of Public Safety's system for driver licenses, personal identification cards, and election identification certificates contain vast amounts of data that sheds no light on these issues.

Nor are large amounts of the requested production "proportional to the needs of the case." This language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.*

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Defendants object to the United States' Requests for Production to the extent that these requests fall short of this more stringent proportionality standard.

Furthermore, the inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Defendants reserve the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Defendants likewise do not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Defendants' right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the United States' characterization of any facts, circumstances, or legal obligations. Defendants reserve the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Defendants will provide their responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Defendants object to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Defendant will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

As explained to counsel for the United States during discussions related to these Requests, producing records from the relevant databases requires a process comprising several steps, including, for example, requirements development, review, code development, test and quality assurance, scheduling to avoid system impacts, extraction, and verification. Compromising any of these steps risks compromising both the data collected and, potentially, the systems from which the data is being collected. In order for this process to commence, the data to be collected must be defined. Thereafter, the process requires approximately thirty days to complete. Accordingly, Defendants will produce responsive documents as indicated below in their Responses to Requests 2, 3, and 4, within thirty days of the parties reaching agreement on the fields to be produced.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE UNITED STATES'
## FIRST SET OF REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All database dictionaries and user manuals related to the Texas Election Administration Management (TEAM) database, the driver license and personal identification card database, and the election identification certificate database.

**RESPONSE:**

Defendants object to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome.

The Department of Public Safety ("DPS") does not maintain a user manual for the system it uses to maintain information on driver licenses, personal identification cards, and election identification certificates. DPS maintains a data dictionary for fields in the system, but that dictionary is extensive, containing sensitive information on hundreds of fields, most of which are irrelevant to the claims and defenses in this case. As indicated below in response to Request 3 and Request 4, only a limited subset of fields requested by the United States are relevant to the claims and defenses and responsive to those requests. Defendants will withhold portions of the data dictionary related to irrelevant and nonresponsive fields as indicated in response to Request 3 and Request 4. Producing the entire data dictionary and all information related to all data stored by DPS is not proportional to the needs of the case, unduly burdensome, overly broad, and irrelevant. Moreover, producing all of this information would unjustifiably risk exposure of sensitive information about the content of the DPS system and the content itself.

While the Office of the Secretary of State ("SOS") maintains multiple user manuals for election officials addressing their use of the TEAM system for various purposes, production of all of those manuals would not be proportional to the needs of the case, would be unduly burdensome,

and would not be relevant to the claims and defenses. The information contained in these manuals is largely unrelated to Request 2 and the United States' ability to understand and utilize the information to be produced in response to that request, which is directed toward the portion of the TEAM system that tracks voter registration information and voting history. Moreover, the user manuals are highly sensitive and contain information that, if exposed, could risk data security and the integrity of the Texas election system. Accordingly, Defendants will withhold producing those user manuals in response to this request.

This request is not sufficiently specific for Defendants to identify all potentially responsive portions of the requested documents. The United States failed to state the specific purpose for which these documents are being sought. Defendants understand that the United States seeks these documents in order to understand the information produced in response to Request 2, Request 3, and Request 4. Absent a more specific request that either details the United States' purpose for seeking these documents or names the portions of the documents with particularity, Defendants are impermissibly left "to ponder and to speculate in order to decide what is and what is not responsive." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. CIV.A.94-2304-EEO, 1995 WL 526533, at *3 (D. Kan. Aug. 31, 1995)).

Subject to and without waiving these objections, Defendants will produce TEAM record layout files, which show the TEAM fields and codes associated with the fields produced in response to Request 2, and Defendants will produce the portions of the data dictionary for the DPS system related to the fields produced in response to Request 3 and Request 4. Production of these records will be subject to an agreed upon protective order to be filed jointly by the United States and Defendants and approved by the Court.

**REQUEST FOR PRODUCTION NO. 2:** The contents of all fields contained within the State of Texas's voter registration database, also known as the Texas Election Administration Management System (TEAM), used to determine voter eligibility; to implement or enforce SB 1; to record voter history in any federal, state, or municipal election since 2016 (including whether the individual cast a ballot by mail and whether the individual received voter assistance); to establish the correct driver's license, election identification certificate, personal identification card, or partial social security number for each voter under procedures established by Section 5.02 of SB 1 (to be codified at Tex. Elec. Code § 84.002) and Section 5.08 of SB 1 (to be codified at Tex. Elec. Code § 86.002); to identify absent uniformed services voters and overseas voters entitled to the protections of the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. §§ 20301-11, Chapter 101 of the Texas Election Code, Tex. Elec. Code §§ 101.001-.109, or Chapter 114 of the Texas Election Code, Tex. Elec. Code §§ 114.001-.008; and to identify voters who have reported or established disability status for voting purposes.

a. With respect to voter eligibility, this request covers, but is not limited to the following fields in TEAM (identified by currently understood field name as well as by field contents):

| Field Name | Field Description | ST_DIR_SUFFIX | Voter Residential Street Direction Suffix |
|---|---|---|---|
| VOTER_COUNTY_ID | Internal database key | UNIT_NUMBER | Voter Residential Unit Number |
| JUR_ID | aka Jurisdiction ID, County Number, or County Code | UNIT_TYPE | Voter Residential Unit Type |
| VUID | Voter Unique ID | PARCEL_NUMBER | Voter Residential Parcel Number |
| LAST_NAME | Voter Last Name | CITY | Voter Residential City Name |
| FIRST_NAME | Voter First Name | STATE | Voter Residential State Name |
| MIDDLE_NAME | Voter Middle Name | ZIP_CODE | Voter Residential ZipCode |
| FORMER_LAST_NAME | Voter Former Last Name | MAIL_NAME | Voter Mailing Address Name |
| NAME_SUFFIX_CODE | Voter Name Suffix | MAIL_ADRS_1 | Voter Mailing Address Line1 |
| SSN | Voter Social Security Number (complete where available, or last 4 digits where complete is unavailable) | MAIL_ADRS_2 | Voter Mailing Address Line2 |
| GENDER_CODE | Voter Gender Code | MAIL_CITY | Voter Mailing City Name |
| OFFICIAL_ID_NUMBER | Texas Drivers License Number/Texas ID | MAIL_STATE | Voter Mailing State Name |
| DATE_OF_BIRTH | Voter Date of Birth- | MAIL_ZIP_CODE | Voter Mailing Address ZipCode |
| VOTER_STATUS_CODE | Voter Status Code (V=Active, C=Cancelled, | PCT_CODE | Precinct Code |

| | | | |
|---|---|---|---|
| | S=Suspense, L=Live Check Wait) | | |
| SPANISH_SURNAME_FG | Indicates whether Voter has a Spanish Surname (Y=Yes, N=No) | PCT_NAME | Precinct Name |
| BLOCK_NUMBER | Voter Residential Block Number | LANGUAGE_CODE | Language Code |
| DESIGNATOR | Voter Residential Designator | REGISTRATION_DATE | Voter Application Date |
| ST_DIR_PREFIX | Voter Residential Street Direction Prefix | EDR | Effective Date of Registration- |
| STREET_NAME | Voter Residential Street Name | DISPLAY_CODE | Cancel Event Display Code (Filled-in for Cancelled Voters Only) |
| STREET_TYPE | Voter Residential Street Type | EVENT_CODE | Cancel Event Code (Filled-in for Cancelled Voters Only) |
| | | EVENT_DESC | Cancel Event Description (Filled-in for Cancelled Voters Only) |
| | | APPLICATION_SOURCE_CODE | Voter Application Source Code |

b. With respect to voter history, this request covers, but is not limited to, the following fields in TEAM (identified by currently understood field name as well as by field contents):

| Field Name | Field Contents |
|---|---|
| VUID | Voter Unique ID |
| JUR_ID | Jurisdiction ID, County Number, or County Code |
| HIST_TYPE_CODE | Voting History Type Code (recording whether early, absentee, or election day votes are accepted or rejected) |
| ACTIVITY_DATE | Date of Activity (Voted, Rejected, etc.) |
| PROVISIONAL_REJECT_REASON_CODE | Provisional Ballot Rejected Reason Code |
| TITLE | Provisional Ballot Rejected Reason Description |
| ELECTION_DATE | Election Date |
| ELECTION_TYPE_CODE | Election Type Code: (E.g., primary, general, runoff) |
| ELECTION_NAME | Election Name |

c. With respect to implementation and enforcement of SB 1, this request includes the contents of any fields in TEAM necessary for implementation and enforcement of SB 1's requirements, including but not limited to the content of all fields recording which voters have requested an absentee ballot by mail application, have applied for an absentee ballot by mail, have had an absentee ballot by mail application rejected, have had an absentee ballot by mail application accepted, the reason for rejection of an absentee ballot by mail application, the reason for acceptance of an absentee ballot by mail application, the duration of an accepted absentee ballot by mail application (e.g., annual or one election), whether a voter cast an absentee ballot by mail, whether an absentee ballot by mail was accepted, whether an absentee ballot by mail was rejected, and the reason an absentee ballot by mail was rejected.

d. This request seeks any and all other fields produced by the State of Texas from the TEAM database during *United States v. Texas*, No. 2:13-cv-263 (S.D. Tex.).

**RESPONSE:**

Defendants object to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome.

The United States brings two claims in this case. First, the United States alleges that Section 6.04 of SB 1 violates 52 U.S.C. § 10508, which relates to voters that require assistance to vote due to blindness, disability, or inability to read or write. ECF 131 ¶¶ 67-70. The only portion of this request that could be construed to relate to this allegation is the request for the contents of all TEAM fields that are used "to identify voters who have reported or established disability status for voting purposes." However, the TEAM system contains no such fields, and neither Defendants nor local election officials are required to make any such determination. Rather, a voter that requires assistance need only inform local election officials of this need at the time of voting. *See* Tex. Elec. Code Ann. § 64.032.

Defendants understand Request 2 to pertain to the United States' claim that Sections 5.07 and 5.13 of SB 1 violate 52 U.S.C. § 10101(a)(2)(B), which relates to denying the right to vote due to errors or omissions not material in determining whether an individual is qualified to vote. ECF 131 ¶¶ 72-76. This claim relates exclusively to mail-in voting. *Id.* ¶¶ 60, 61, 73, 75. However, the United States requests the contents of data fields for all individuals in the TEAM system, regardless of whether such individuals have ever voted by mail. The TEAM system currently contains information on approximately 17 million voters, while the highwater mark for mail-in voting was approximately 1 million voters in 2020. Requesting information for millions of voters that are unlikely to be subject to Sections 5.07 and 5.13 of SB 1 is thus overly broad,

disproportionate to the needs of this case, and irrelevant to the United States' claim under 52 U.S.C. § 10101(a)(2)(B). Moreover, the TEAM system contains highly sensitive and confidential information that, if exposed, could risk data security and the integrity of the Texas election system. Thus, the United States' overbroad request is unduly burdensome and not proportional to the needs of the case.

Other aspects of this request are also irrelevant and overly broad for additional reasons. For example, many of the fields are not relevant to any claims or defenses in this case. Moreover, many of the requested fields are unrelated to determinations of voter eligibility, implementation or enforcement of SB 1, and recorded voter history. Furthermore, disclosure of complete social security numbers unnecessarily presents a risk that sensitive personal information will become public. Only the last four digits of a Social Security Number must be included on an early voting ballot application or carrier envelope, Tex. Elec. Code Ann. §§ 84.002(a)(1-a)(B) & 86.002(g)(2). Production of complete social security numbers is thus not proportional to the needs of the case. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (observing that where "the marginal utility of the documents requested, if any, is outweighed by the burdens and delays that would be imposed," it follows that "the discovery sought is not proportional to the needs of the case").

The request for the contents of all TEAM fields used "to implement or enforce SB 1" also exceeds the proper scope of discovery. First, Defendants do not "enforce SB 1." Second, SB 1, as enacted, features numerous provisions that are not challenged in this case. The request is thus overly broad to the extent that it seeks the contents of TEAM fields related to provisions of SB 1 that are not challenged in this litigation.

The request to produce the contents of all TEAM fields used "to establish the correct driver's license, election identification certificate, personal identification card, or partial social security number for each voter" pursuant to Sections 5.02 and 5.08 of SB 1 also lacks relevance to this case. While the United States' live complaint references these sections in passing, *see* ECF 131 ¶ 59, the United States neither challenges nor prays for relief from those provisions. Furthermore, this portion of the request is duplicative of the request to produce any fields that are "used to determine voter eligibility."

The request to produce the contents of all TEAM fields used "to identify absent uniformed services voters and overseas voters entitled to the protections" of certain federal and state statutes is also irrelevant to the United States' claims. The United States does not allege that any of the three challenged SB 1 provisions violate the Uniformed and Overseas Citizens Absentee Voting Act, Chapter 101 of the Texas Election Code, or Chapter 114 of the Texas Election Code.

The catch-all request for "any and all other fields produced by the State of Texas from the TEAM database during *United States v. Texas*, No. 2:13-cv-263 (S.D. Tex.)" lacks specificity, is unduly burdensome, and is overly broad. The fields contained in the TEAM system have changed, sometimes significantly, since that production occurred. Absent more specificity about the particular fields being sought, Defendants are unable to determine what new fields might contain potentially relevant, responsive information. Any attempt to do so would be unduly burdensome. And it is not only the fields that have changed. The claims in the present litigation also differ substantially from those that were involved in *United States v. Texas*. Specifically, this case involves claims brought under Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101. ECF 131 ¶ 2. By contrast, the claims brought by the United States in 2013 involved Sections 2 and 12(d) of the Voting Rights

Act, 42 U.S.C. §§ 1973 & 1973j(d). *See United States v. Texas*, ECF 1 ¶ 1. Any production here must be relevant to the claims in the present litigation, regardless of any past relevance to an unrelated case.

Subject to and without waiving these objections, Defendant will produce the portion of the TEAM system containing voter registration information as well as voting history records for active and suspense voters for elections from January 1, 2016, through the date of collection. Production of these records will be subject to an agreed upon protective order to be filed jointly by the United States and Defendants and approved by the Court. Moreover, as explained in Defendants' General Objections, production of this information requires thirty days following agreement on the fields to be included.

**REQUEST FOR PRODUCTION NO. 3:** The contents of all fields contained within the State of Texas's driver license and personal identification card database that could be used to match individuals against the State of Texas's TEAM voter registration database, to determine voter eligibility, or to determine whether an individual has been issued one or more identification documents named in Section 5.02 of SB 1 (to be codified at Tex. Elec. Code § 84.002) and Section 5.08 of SB 1 (to be codified at Tex. Elec. Code § 86.002). This request includes the content of all fields reflecting the full name, address (including city, state, county, and ZIP code), date of birth, Social Security account number, race, ethnicity, sex, driver license or personal identification card number, and disability status of all driver license and personal identification card holders, as well as the content of fields reflecting whether the driver license or identification card has expired, been suspended, or confiscated, and whether the license or identification or holder is deceased. This request covers but is not limited to the entire Admin and Issuance files; the Person ID, Transaction ID, Issuance ID, Transaction Type Code, and Last Update Date fields in the Transactions file; and the contents of following fields contained in the Person file:

    a. DL/ID/UNL or EC Number
    b. Person ID
    c. First Name
    d. Last Name
    e. Middle Name
    f. Suffix
    g. Date of Birth
    h. Social Security Number
    i. Permanent Street Address 1
    j. Permanent Street Address 2
    k. Permanent City

l. Permanent State
m. Permanent Zip Code
n. Permanent Zip Code Ext.
o. Permanent County
p. Permanent Country
q. Mailing Street Address 1
r. Mailing Street Address 2
s. Mailing City
t. Mailing State
u. Mailing Zip Code
v. Mailing Zip Code Ext.
w. Mailing County
x. Mailing Country
y. Sex
z. Race
aa. Disabled Veteran
bb. Homebound
cc. AKA Name
dd. AKA DL/ID Number
ee. Card Status
ff. Record Status
gg. Card Type
hh. Surrendered DL/ID Number
ii. License Surrendered
jj. License Confiscated
kk. DL Issuance Status
ll. ID Issuance Status
mm. License Status
nn. Deceased Certificate Number

In addition, this request includes all definitional tables for individual fields described above, including but not limited to homebound, county, race, and country. This request seeks any and all other tables and fields produced by the State of Texas from the driver license and personal identification card database during *United States v. Texas*, No. 2:13-cv-263 (S.D. Tex.).

**<u>RESPONSE:</u>**

Defendants object to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome.

The United States brings two claims in this case. First, the United States alleges that Section 6.04 of SB 1 violates 52 U.S.C. § 10508, which relates to voters that require assistance to vote due

to blindness, disability, or inability to read or write. ECF 131 ¶¶ 67-70. DPS's system does not track individuals who are blind, disabled, or unable to read or write as those terms are used in 52 U.S.C. § 10508.

Defendants understand this request to pertain to the United States' claim that Sections 5.07 and 5.13 of SB 1 violate 52 U.S.C. § 10101(a)(2)(B), which relates to denying the right to vote due to errors or omissions not material in determining whether an individual is qualified to vote. ECF 131 ¶¶ 72-76. This claim relates exclusively to mail-in voting. *Id.* ¶¶ 60, 61, 73, 75. However, the United States requests the contents of data fields for all individuals in DPS's system for driver licenses and personal identification cards. That system currently contains information on approximately 29 million individuals, far exceeding the approximately 17 million registered voters in Texas and the number of mail-in voters that typically vote in any given election. Requesting information for millions of individuals that are not registered voters or likely main-in voters is overly broad, disproportionate to the needs of this case, and irrelevant to the United States' claim under 52 U.S.C. § 10101(a)(2)(B). Moreover, the DPS system contains highly sensitive and confidential information that, if exposed, could risk the privacy and security of the individuals whose data is maintained in the system as well as the data security and the integrity of the system itself, which is used daily by state and law enforcement agencies. Thus, the United States' overbroad request is unduly burdensome and not proportional to the needs of the case.

Other aspects of this request are irrelevant and overly broad for additional reasons. For example, the content of many of the requested fields is not relevant to any claims or defenses in this case. Multiple fields are irrelevant to matching individuals in the DPS system to individuals registered voters in the TEAM system, determining voter eligibility, and determining whether a voter has been issued one or more identification documents named in Sections 5.02 and 5.08 of

SB 1. Many of the requested fields are not provided by DPS to the SOS and do not indicate whether an individual currently possess the license or identification. Additionally, some of the requested fields do not exist in the DPS system. Moreover, while the United States' live complaint references Sections 5.02 and 5.08 in passing, *see* ECF 131 ¶ 59, the United States neither challenges nor prays for relief from those provisions.

Portions of the request are also unduly burdensome. For example, the request for complete Social Security Numbers unnecessarily presents a risk that sensitive personal information will become public. Moreover, only the last four digits of a Social Security Number must be included on an early voting ballot application or carrier envelope, Tex. Elec. Code Ann. §§ 84.002(a)(1-a)(B) & 86.002(g)(2). Production of complete social security numbers is thus not proportional to the needs of the case. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (observing that where "the marginal utility of the documents requested, if any, is outweighed by the burdens and delays that would be imposed," it follows that "the discovery sought is not proportional to the needs of the case").

The catch-all request for "any and all other tables and fields produced by the State of Texas from the driver license and personal identification card database during *United States v. Texas*, No. 2:13-cv-263 (S.D. Tex.)" lacks specificity, is unduly burdensome, and is overly broad. The fields contained in DPS's system have changed, sometimes significantly, since that production occurred. Absent more specificity about the particular fields being sought, Defendants are unable to determine what new fields might contain potentially relevant, responsive information. Any attempt to do so would be unduly burdensome. And it is not only the fields that have changed. The claims in the present litigation also differ substantially from those that were involved in *United States v. Texas*. Specifically, this case involves claims brought under Section 208 of the Voting

Rights Act, 52 U.S.C. § 10508, and Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101. ECF 131 at ¶ 2. By contrast, the claims brought by the United States in 2013 involved Sections 2 and 12(d) of the Voting Rights Act, 42 U.S.C. §§ 1973 & 1973j(d). *See United States v. Texas*, ECF 1 at ¶ 1. Any production here must be relevant to the claims in the present litigation, regardless of any past relevance to an unrelated case.

Subject to and without waiving these objections, Defendant will produce records in the DPS system for all individuals, but limited to requested fields a through v, x, y, aa, bb, cc, dd, jj, and gg as well as an additional field, "Reported deceased," as of the date of collection. Production of these records will be subject to an agreed upon protective order to be filed jointly by the United States and Defendants and approved by the Court. Moreover, as explained in Defendants' General Objections, production of this information requires thirty days following agreement on the fields to be included.

**REQUEST FOR PRODUCTION NO. 4:** The State of Texas's election identification certificate database, in its entirety with the exception of information on the hair color, height, and weight of election identification certificate applicants. This request includes data kept as a column within the State of Texas's driver license and personal identification card database. This request includes the content of all fields reflecting data collected through the election identification certification application (except for those on hair color, height, and weight) including the applicants' full name, residential and mailing addresses (including city, state, county, and ZIP code), date of birth, Social Security account number, race, ethnicity, sex, as well as all data on underlying documentation presented, and all dates of issuance or denial of issuance.

**RESPONSE:**

Defendants object to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome.

Election identification certificate information is maintained as part of the same DPS system that is used to track driver's license and personal identification card information. There is no separate "database" for this information. Thus, there is substantial overlap between Defendants' response here and the response to Request 3. Defendants herein incorporate by reference their objections to Request 3.

While the United States brings two claims in this case, this request does not relate to the United States' first claim, which concerns requirements for voter assistance under 52 U.S.C. § 10508. Accordingly, to the extent that any of this request is relevant, the relevancy must be to the United States' second claim that Sections 5.07 and 5.13 of SB 1 violate 52 U.S.C. § 10101(a)(2)(B), which pertains to denying the right to vote due to errors or omissions not material in determining whether an individual is qualified to vote. ECF 131 ¶¶ 72-76. While this claim relates exclusively to mail-in voting, ECF 131 ¶¶ 60, 61, 73, 75, the United States does not limit its request to those that have voted in mail-in elections. This portion of the request is neither tailored to the United States' specific claims nor proportional to its needs in this case. Moreover, the DPS system contains highly sensitive and confidential information that, if exposed, could risk the privacy and security of the individuals whose data is maintained in the system as well as the data security and the integrity of the system itself, which is used daily by state and law enforcement agencies. Thus, the United States' overbroad request is unduly burdensome and not proportional to the needs of the case.

Other aspects of this request are also irrelevant and overly broad for additional reasons. For example, the requests for election identification certificate information "in its entirety" (with the minor exceptions of hair color, height, and weight) and for "all data on underlying documentation presented" sweeps far too broadly. Additionally, requesting "data" on "underlying documentation"

is not sufficiently specific to allow Defendants to determine what would be potentially responsive or assess the burdens of collecting and producing any such information.

Moreover, much of the requested information is not relevant to any claims or defenses in this case. Multiple fields are irrelevant to matching individuals in the DPS system to registered voters in the TEAM system, determining voter eligibility, and determining whether a voter has been issued one or more identification documents named in Sections 5.02 and 5.08 of SB 1. The United States has not asserted any claims in this case alleging racial discrimination or disparate impact. Moreover, while the United States' live complaint references Sections 5.02 and 5.08 in passing, *see* ECF 131 ¶ 59, the United States neither challenges nor prays for relief from those provisions.

The request for complete social security numbers unnecessarily presents a risk that sensitive personal information will become public. Moreover, only the last four digits of a Social Security Number must be included on an early voting ballot application or carrier envelope, Tex. Elec. Code Ann. §§ 84.002(a)(1-a)(B) & 86.002(g)(2). Accordingly, this request is not proportional to the needs of the case. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (observing that where "the marginal utility of the documents requested, if any, is outweighed by the burdens and delays that would be imposed," it follows that "the discovery sought is not proportional to the needs of the case").

Subject to and without waiving these objections, and consistent with their response to Request 3, Defendant will produce records in the DPS system for all individuals, but limited to requested fields a through v, x, y, aa, bb, cc, dd, jj, and gg as well as an additional field, "Reported deceased," as of the date of collection. Production of these records will be subject to an agreed upon protective order to be filed jointly by the United States and Defendants and approved by the

Court. Moreover, as explained in Defendants' General Objections, production of this information requires thirty days following agreement on the fields to be included.