# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 5:21-cv-844 (XR) <br> (Consolidated Cases) |

## STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Pursuant to Federal Rules of Civil Procedure 26(c) & 29(b) and the stipulated agreement of the Parties, this Stipulated Order Regarding Discovery of Electronically Stored Information and Privileged Materials (Stipulation) is made by and between counsel for all Plaintiffs and counsel for all Defendants (*collectively the* "Parties"), in connection with the above-styled cause.

**WHEREAS**, counsel for the Parties have met and conferred regarding discovery of electronically stored information (ESI);

**WHEREAS**, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

**WHEREAS**, the Parties have entered into this Stipulation to facilitate the just, speedy, and cost-efficient conduct of discovery involving ESI and privilege, and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

**IT IS HEREBY ORDERED** that:

1. All Parties are bound by and subject to the terms of this Order.

2. Definitions:

a. "Document" is defined as documents or electronically stored information as set forth in Federal Rule of Civil Procedure 34(a)(1)(A), excluding ESI from mobile phones.

b. The Parties, as well as their officers, directors, employees, and agents are referred to as the "Parties" solely for purposes of this protocol.

c. "Plaintiff" or "Plaintiffs" as used herein shall mean La Union Del Pueblo Entero, Friendship-West Baptist Church, The Anti-Defamation League Austin, Southwest, and Texoma, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, JOLT Action, William C. Velasquez Institute, James Lewin, Fiel Houston, Inc., Mi Familia Vota, Marla Lopez, Marlon Lopez, Paul Rutledge, Houston Justice, Houston Area Urban League, Delta Sigma Theta Sorority Inc., The Arc of Texas, Jeffrey Lamar Clemmons, LULAC Texas, Vote Latino, Texas Alliance for Retired Americans, Texas AFT, OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund, and the United States.

d. "Defendant" or "Defendants" as used herein shall mean the State of Texas, Gregory Wayne Abbott, *in his official capacity as Governor of Texas*, John B. Scott *in his official capacity as Secretary of State of Texas*, Warren K. Paxton *in his official capacity as Attorney General of Texas*, Lisa Wise *in her official capacity as the El Paso County Elections Administrator*, Isabel Longoria *in her official capacity as Harris County Elections Administrator*, Jacque Callanen *in her official capacity as Elections Administrator of Bexar County*, Yvonne Ramon *in her official capacity as the Hidalgo County Elections Administrator*, Michael Scarpello

*in his official capacity as the Dallas County Elections Administrator*, and Dana DeBeauvoir *in her official capacity as the Travis County Clerk.*

    **e.** All other terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fifth Edition). *See* The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition, 21 SEDONA CONF. J. 263 (2020).

3. **Cooperation.** The Parties shall attempt to conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed. R. Civ. P. 1 and 26(g)(1) and the proportionality standard in Fed. R. Civ. P. 26(b)(1); producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, appropriate search terms, and such other issues as may arise during the course of discovery.

4. **Proposed Custodians.** The Parties shall produce relevant responsive, non-privileged ESI and hard copy materials from a list of agreed-upon custodians. The Parties will cooperate with each other in advising which of their custodians, if any, are likely to have responsive information in their possession, custody or control.

5. **Deduplication.** The Parties shall make reasonable efforts to deduplicate ESI, if not unduly burdensome. ESI may be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching hash value (e.g., MD5 or SHA-1) as compared against the same document type (i.e., family or stand-alone file).

6. **Email Threading.** The Parties may utilize email thread suppression. As used in this ESI Order, Email Thread Suppression means reducing duplicative production of email threads

by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string ("ETS"). For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

7. **Privilege Logs and Redaction.**
    a. Where a producing party has any document that contains both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted. For all documents withheld or redacted based on privilege, the Parties agree to furnish logs which comply with the legal requirements under the Federal Rules. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or transmission of the document, the author or authors of the document, the recipients of the document (including individuals copied or blind-copied), the privilege or privileges claimed, and the basis for the assertion of privilege or protection. The Parties agree that communications between attorneys and clients regarding the current lawsuit, and not shared with any third parties (aside from any expert or other professional whose services have been retained by such Party in connection with this litigation), may be withheld if privileged and do not need to be logged. The Parties further agree that documents—including but not limited to draft documents—exchanged solely among counsel or individuals working directly on behalf of counsel in connection with this litigation (e.g., paralegals, analysts, and litigation support staff) may be withheld if privileged and need not be logged.

b. An email thread for which a party claims a privilege may be —but is not required to be—logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread, and provided that any included emails or portions of emails that are not subject to privilege are properly produced.

c. Privilege logs may be produced on a rolling basis, but, in any event, no later than 30 days after each associated production. The parties agree to meet and confer to discuss alternatives if producing a complete privilege log within 30 days of the associated production presents an undue burden on a party. If any log is produced less than 30 days before the close of discovery, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), and shall have the right to have those complaints resolved and have any non-privileged documents produced, regardless of the date of the close of fact discovery.

8. **Production Format For ESI.**

    a. **Production Format and Numbering.** Unless the Parties agree to a different format, all documents, including emails, should be produced in the following acceptable formats: native files; searchable PDF; or single page TIFF format showing comments and track changes where applicable, with text extract and load files containing standard fielded information and metadata if appropriate. To the extent that a producing party has loaded (or will load) documents into an eDiscovery system, and those documents are non-privileged and responsive to another party's requests for production, those documents must be produced as single page TIFF images with load files according to the requirements herein. If a Party opts to produce TIFF images, the TIFF images shall be placed in an Images

folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an Opticon .opt image load file. Each page of a document should be assigned a unique production number (aka Bates number) electronically "burned" onto the image at allocation that does not unreasonably conceal or interfere with information on the document. The number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a number or set of numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. The parties further agree to meet and confer regarding a different production format—such as native files—should the production format required by this paragraph prove impossible or unduly burdensome for the producing party to provide for certain documents, given the state in which documents exist in the ordinary course of business.

b. **Document Text.** To the extent a Party opts to produce documents using a load file, unredacted documents should be provided with complete document-level extracted text files. In the event a document originated in hard copy format or contains text which is redacted, text files consisting of OCR should be provided un-redacted portions of a document. Document text files should be provided in a "TEXT" folder, with filenames that correspond to the beginning Bates number, and a relative path to the location of the text file provided in the metadata (.dat) load file.

c. **Spreadsheet Files.** Notwithstanding the provisions of section 8(a) above, spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced in native format. If a Party opts to produce documents using a load file, a UNC file path must be included in the metadata (.dat) load file that resolves to the files produced in native format. Each party will include a unique production number in the file name and place the file in a Natives folder. Additionally, to the extent a Party is producing documents using an ESI load file with single page TIFF formatted documents, a single page TIFF placeholder matching the number of the native file must be included in the production and reflected in the Opticon (.opt) image load file. To the extent Parties prefer native file redaction of spreadsheet files, the Parties will meet and confer to discuss the form of production.

d. **Presentation Files.** Notwithstanding the provisions of section 8(a) above, presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data. If a Party opts to produce documents using an ESI load file , a native file path must be included in the metadata (.dat) load file. Each party will include a unique production number in the file name and place the file in a Natives folder. Additionally, to the extent a Party is producing documents using a load file with single page TIFF formatted documents, a TIFF placeholder matching the number of the native file must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate settings.

e. **Database Records and Structured Data.** Notwithstanding the provisions of section 8(a) above, to the extent that any Party has responsive data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the Parties agree to meet and confer to discuss the appropriate form of production.

f. **Embedded Files.** Embedded files (with the exception of inline images) will be extracted and produced as unique documents within the family group. Embedded files should be assigned production numbers that directly follow the production numbers on the documents within which they are embedded.

g. **Color.** Documents containing color need not be produced in color unless necessary to legibly read or understand the meaning or content of the document. The producing Party shall cooperate with a Party who reasonably requests re-production of a document in color, in which case the document shall be produced in color 24-bit JPEG or native format.

h. **Load File Formats.** The Parties shall meet and confer to the extent necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software such as Relativity, to the extent required by this ESI Order.

i. **Metadata to be Produced.** The parties agree that the following metadata fields need to be produced, to the extent in the producing party's possession, custody, or control and not unduly burdensome: document name/title, application; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent,

modified, accessed, and/or received; hash value; conversation index for emails, and page count. The parties agree that, absent extraordinary circumstances (e.g. reason to believe that a Party may have deleted responsive information after this litigation commenced), the following information need not be preserved or produced: "deleted," "slack," "fragmented," or "unallocated" data on hard drives; random access memory (RAM) or other ephemeral data; on-line access data such as temporary internet files, history, cache, cookies, etc.; data in metadata fields that are frequently updated automatically, such as last-opened dates; backup data that is substantially duplicative of data that is more accessible elsewhere; and other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business. The parties further agree to meet and confer to renegotiate the metadata fields identified in this paragraph, should such metadata prove unduly burdensome for the producing party to extract, given the needs of the case or the state in which documents exist in the ordinary course of business.

   j. **Other Fields.** Parties producing documents using an ESI load file agree to produce starting production number, ending production number, begin and end production numbers for attachments, and "legend" or other field indicating confidentiality branding.

9. **Production Format for Hard Copy Documents.** Hard copy documents shall be produced in searchable PDF or single TIFF file per page with complete document-level extracted text files. The unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of

documents (including attachment relationship and file associations) shall be maintained throughout the scanning or conversion process.

10. **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

11. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness or segregation of privileged or protected information before production. Nothing herein is intended to serve as a waiver by any Party to challenge any materials redacted or withheld because of the review allowed in the prior sentence. Nothing contained herein shall constitute a waiver of any governmental immunities, protections, or privileges afforded to the United States, the State of Texas, or a political subdivision or county of the State of Texas.

12. **Third-Party Discovery.**
    a. A Party that issues a non-party subpoena (the "Issuing Party") will include a copy of this Stipulated Order with the subpoena and will request that non-parties produce documents in accordance with the specifications set forth herein. Non-parties may assert any objections they maintain to the terms of this Order and the Court will separately rule on those objections, if any.
    b. The Issuing Party will produce any documents obtained under a subpoena to all other Parties. Any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party, except as subject to the Bates-

stamping requirements of 12(c). If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

c. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

Based on the foregoing, **IT IS SO ORDERED.**

DATED: February 10, 2022

_____
The Honorable Xavier Rodriguez
UNITED STATES DISTRICT JUDGE