# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

LA UNIÓN DEL PUEBLO ENTERO, *et al.*,

     *Plaintiffs*,

v.

THE STATE OF TEXAS, *et al.*,

     *Defendants*.

§
§
§
§
§
§
§
§
§

Case No. 5:21-cv-844-XR
[Lead Case]

---

## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF LA UNIÓN DEL PUEBLO ENTERO, ET AL.

Table of Contents ..................................................................................................................ii

Introduction ........................................................................................................................1

Argument ............................................................................................................................1

   I.   Plaintiffs Cannot Satisfy *Ex parte Young*...................................................................1

       A.   Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Secretary ............2

       B.   The Attorney General is Also Immune..............................................................7

   II.  Plaintiffs Cannot Sue the State of Texas...................................................................9

   III. Plaintiffs Lack Standing........................................................................................10

       A.   Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis ..................................................................................................................10

       B.   Plaintiffs Have Not Plausibly Alleged Traceability or Redressability .........................11

       C.   No Plaintiff Has Associational Standing..........................................................13

       D.   None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury ............................16

       E.   The Entity Plaintiffs Violate the Bar on Third-Party Standing.....................................21

       F.   Plaintiff Lewin is Not Injured...........................................................................21

   IV. Plaintiffs' Claims Fail as a Matter of Law ...............................................................22

       A.   Plaintiffs Failed to State a Claim under the ADA.................................................22

          1.   Plaintiffs Do Not Allege a Qualifying Disability ...................................23

          2.   Defendants Do Not Administer Elections..............................................24

          3.   Texas Law Does Not Discriminate Against Disabled Voters ............................26

          4.   Texas Already Provides Reasonable Accommodations .......................................27

       B.   Plaintiffs Lack a Private Cause of Action for Their VRA Claims ................................28

Conclusion .........................................................................................................................28

**Cases**

*Ala. State Conference of the NAACP v. Alabama,*
  949 F.3d 647 (11th Cir. 2020)........................................................................................10

*Alden v. Maine,*
  527 U.S. 706 (1999).......................................................................................................9

*Alexander v. Choate,*
  469 U.S. 287 (1985).....................................................................................................28

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.,*
  19 F.3d 241 (5th Cir. 1994) ........................................................................................14

*Ass'n of Am. Physicians & Surgeons, Inc. v. HHS,*
  224 F. Supp. 2d 1115 (S.D. Tex. 2002) ......................................................................22

*Ass'n of Community Orgs. for Reform Now v. Fowler,*
  178 F.3d 350 (5th Cir. 1999) .................................................................................17, 20

*Baaske v. City of Rolling Meadows,*
  191 F. Supp. 2d 1009 (N.D. Ill. 2002) ........................................................................23

*Barker v. Halliburton Co.,*
  645 F.3d 297 (5th Cir. 2011) ......................................................................................21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).....................................................................................................23

*Block v. Tex. Bd. of Law Examiners,*
  952 F.3d 613 (5th Cir. 2020) ......................................................................................10

*Brecht v. Abrahamson,*
  507 U.S. 619 (1993).....................................................................................................13

*Bullock v. Calvert,*
  480 S.W.2d 367 (Tex. 1972)........................................................................................13

*Cadena v. El Paso Cnty.,*
  946 F.3d 717 (5th Cir. 2020) ......................................................................................28

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ................................................................................passim

*Clapper v. Amnesty Intern. USA,*
  568 U.S. 398 (2013)..............................................................................................passim

*Coon v. Ledbetter,*
  780 F.2d 1158 (5th Cir. 1986)......................................................................................21

*Cornerstone Christian Sch. v. UIL,*
  563 F.3d 127 (5th Cir. 2009) ......................................................................................15

*Ctr. for Biological Diversity v. EPA,*
  937 F.3d 533 (5th Cir. 2019) ...........................................................................11, 13, 15

*Danos v. Jones,*
  652 F.3d 577 (5th Cir. 2011) ......................................................................................21

*Davis v. United States,*
  597 F.3d 646 (5th Cir. 2009) ........................................................................................2

*Def. Distributed v. U.S. Dep't of State,*
  No. 1:15-cv-372-RP, 2018 WL 3614221 (W.D. Tex. July 27, 2018)............................17

*Democracy N.C. v. N.C. State Bd. of Elections,*
  476 F. Supp. 3d 158 (M.D.N.C. 2020) ........................................................................19

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors,*
  522 F.3d 796 (7th Cir. 2008) .................................................................15

*Draper v. Healey,*
  827 F.3d 1 (1st Cir. 2017) ......................................................................14

*Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.,*
  469 F. App'x 364 (5th Cir. 2012) (per curiam) ....................................15

*Fair Elections Ohio v. Husted,*
  770 F.3d 456 (6th Cir. 2014) ...........................................................18, 19

*FW/PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990) ................................................................................10

*Garrett v. Thaler,*
  560 F. App'x 375 (5th Cir. 2014) (per curiam) ....................................15

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ......................................................................17, 18

*Guan v. Mayorkas,*
  No. 1:19-cv-6570, 2021 WL 1210295 (E.D.N.Y. Mar. 30, 2021) .........22

*Hale v. Harrison Cnty. Bd. of Supervisors,*
  8 F.4th 399 (5th Cir. 2021) (per curiam) ..............................................22

*Hale v. King,*
  642 F.3d 492 (5th Cir. 2011) (per curiam) .......................................22, 24

*Hartman v. Moore,*
  547 U.S. 250 (2006) ..................................................................................9

*Houston v. DTN Operating Co.,*
  No. 4:17-cv-35, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017) .......24

*Hunt v. Wash. State Apple Advert. Comm'n,*
  432 U.S. 333 (1977) ...........................................................................13, 14

*In re Abbott,*
  956 F.3d 696 (5th Cir. 2020) ...............................................................7, 8

*In re Gee,*
  941 F.3d 153 (5th Cir. 2019) (per curiam) ...........................................11

*In re Hotze,*
  627 S.W.3d 642 (Tex. 2020) ...................................................................13

*Ivy v. Williams,*
  781 F.3d 250 (5th Cir. 2015) ............................................................24, 25

*Jacobson v. Fla. Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) .............................................................17

*Kerrigan v. Phila. Bd. of Election,*
  No. 2:07-cv-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008) ............26

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
  624 F.3d 1083 (9th Cir. 2010) .................................................16, 18, 20

*La. ACORN Fair Hous. v. LeBlanc,*
  211 F.3d 298 (5th Cir. 2000) .................................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ................................................................................21

*Lightbourn v. County of El Paso,*
  118 F.3d 421 (5th Cir. 1997) ............................................................25, 26

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...........................................................................11, 22

iv

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) ................................................................. 1, 4, 6
*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ..............................................................11, 16, 17
*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) .......................................................16, 17, 18, 19
*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .................................................................17, 19
*Neely v. PSEG Tex., LP*,
  735 F.3d 242 (5th Cir. 2013) ...........................................................................15
*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) .........................................................9, 12, 13, 21
*Olivarez v. T-Mobile USA, Inc.*,
  997 F.3d 595 (5th Cir. 2021) ...........................................................................27
*Payne v. Midcrown Pavilion Apartments*,
  No. SA-19-cv-407-FB, 2021 WL 3813378 (W.D. Tex. Aug. 26, 2021) ..............24
*Physician Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) .............................................................................2
*Prison Justice League v. Bailey*,
  697 F. App'x 362 (5th Cir. 2017) (per curiam) ................................................16
*Pub. Citizen, Inc. v. Bomer*,
  274 F.3d 212 (5th Cir. 2001) ...........................................................................22
*Ray v. Texas*,
  No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ......................15
*Sims v. Tex. Dep't of Hous. & Cmty. Affs.*,
  No. 4:05-cv-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005) .....................23
*Smith v. Harris Cnty.*,
  956 F.3d 311 (5th Cir. 2020) .....................................................................26, 27
*Spokeo, Inc. v. Robbins*,
  578 U.S. 330 (2016) .........................................................................................10
*State v. Stephens*,
  No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ...........8, 9
*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...................................................................................13, 14
*T.O. v. Fort Bend Indep. Sch. Dist.*,
  2 F.4th 407 (5th Cir. 2021) ..............................................................................27
*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) .............................................................................7
*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .........................................................................2, 9
*Tex. Democratic Party v. Hughs*,
  860 F. App'x 874 (5th Cir. 2021) (per curiam) ......................................2, 3, 6, 7
*Tex. Democratic Party v. Hughs*,
  974 F.3d 570 (5th Cir. 2020) (per curiam) ......................................................13
*Tex. Democratic Party v. Hughs*,
  997 F.3d 288 (5th Cir. 2021) .............................................................................4
*Texas Indigenous Council v. Simpkins*,
  No. 5:11-cv-315, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) ........................14

*United States v. Armstrong,*
  517 U.S. 456 (1996) ............................................................9
*United States v. Georgia,*
  546 U.S. 151 (2006) ..........................................................10
*United States v. Mississippi,*
  380 U.S. 128 (1965) ..........................................................10
*West Virginia v. United States,*
  479 U.S. 305 (1987) ..........................................................10
*Whole Woman's Health v. Jackson,*
  142 S. Ct. 522 (2021) ..........................................................9
*Wilson v. Taylor,*
  658 F.2d 1021 (5th Cir. 1981) ...........................................13
*Zimmerman v. City of Austin,*
  881 F.3d 378 (5th Cir. 2018) .....................................passim

**Statutes**

42 U.S.C. § 12132 ....................................................................26
42 U.S.C. § 1983 ......................................................................21
52 U.S.C. § 10308(d) ...............................................................10
Tex. Elec. Code § 1.022 ......................................................26, 27
Tex. Elec. Code § 15.028 ............................................................7
Tex. Elec. Code § 18.065 ............................................................6
Tex. Elec. Code § 18.065(e)(3) ...................................................3
Tex. Elec. Code § 18.068 ............................................................3
Tex. Elec. Code § 31.001 ............................................................6
Tex. Elec. Code § 31.006 ............................................................3
Tex. Elec. Code § 31.129 ............................................................6
Tex. Elec. Code § 32.071 ............................................................5
Tex. Elec. Code § 32.074 ............................................................5
Tex. Elec. Code § 32.075 ............................................................4
Tex. Elec. Code § 33.051 ............................................................4
Tex. Elec. Code § 33.056 ............................................................4
Tex. Elec. Code § 33.061 ............................................................4
Tex. Elec. Code § 33.063 ............................................................4
Tex. Elec. Code § 41.001 ..........................................................26
Tex. Elec. Code § 43.034 ..........................................................27
Tex. Elec. Code § 61.012 ..........................................................27
Tex. Elec. Code § 64.009 ...........................................5, 8, 26, 27
Tex. Elec. Code § 64.009(f) ........................................................5
Tex. Elec. Code § 64.009(g) ........................................................8
Tex. Elec. Code § 64.009(h) ........................................................5
Tex. Elec. Code § 64.034 ............................................................5
Tex. Elec. Code § 81.001 ..........................................................26
Tex. Elec. Code § 82.002(a) ......................................................26
Tex. Elec. Code § 85.005 ............................................................4
Tex. Elec. Code § 85.006(b) ........................................................4
Tex. Elec. Code § 85.006(e) ........................................................4

Tex. Elec. Code § 85.061(a) ...........................................................................................4

Tex. Elec. Code § 86.001(c) ...........................................................................................5

Tex. Elec. Code § 86.002 ............................................................................................25

Tex. Elec. Code § 86.006 ............................................................................................25

Tex. Elec. Code § 86.007(b) ........................................................................................25

Tex. Elec. Code § 86.010 ..............................................................................................5

Tex. Elec. Code § 86.0105 ............................................................................................6

Tex. Elec. Code § 86.011 ............................................................................................25

Tex. Elec. Code § 87.027(i) .........................................................................................25

Tex. Elec. Code § 87.041(a) ..........................................................................................5

Tex. Elec. Code § 87.041(b)(2) ....................................................................................25

Tex. Elec. Code § 87.061 ............................................................................................25

Tex. Elec. Code §§ 276.015–.019 ..................................................................................6

Tex. Elec. Code §§ 31.003–.005 ....................................................................................6

Tex. Elec. Code §§ 43.002–43.004 ................................................................................4

Tex. Elec. Code §§ 83.001–83.0012 ..............................................................................4

Tex. Gov't Code § 62.114(b)(2) .....................................................................................3

**Rules**

28 C.F.R. § 35.150 ......................................................................................................26

Fed. R. Civ. P. 12(b)(6) .................................................................................................1

**Constitutional Provisions**

U.S. Const. art. III, § 2 ...............................................................................................12

## INTRODUCTION

In their Second Amended Complaint (ECF 204-1), the LUPE Plaintiffs still fail to address sovereign immunity and standing claim-by-claim and provision-by-provision, as Fifth Circuit precedent requires. They assert claims against the State of Texas, Secretary of State, and Attorney General, but they have failed to plead facts supporting an exception to sovereign immunity. Nor have they plausibly alleged standing to assert their claims.

The LUPE Plaintiffs' claims also fail as a matter of law. They cannot assert an Americans with Disabilities Act ("ADA") claim without identifying particular voters with identified disabilities. And their Voting Rights Act ("VRA") claims fail because they, as non-voters, do not have implied causes of action. So, if the Court concludes it has jurisdiction, it should dismiss Counts IV-VI for the reasons explained below. *See* Fed. R. Civ. P. 12(b)(6). The LUPE Plaintiffs' amendments in response to the State Defendants' motion to dismiss (including dropping challenges to several individual SB1 provisions as well as excluding one additional claim entirely, narrowing the claims from eleven originally to nine counts now) are not enough to meet their pleading burden.[1]

## ARGUMENT

### I. Plaintiffs Cannot Satisfy *Ex parte Young*

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020).

---

[1] Of course, the State Defendants believe that Plaintiffs' other claims are meritless as well. But for the sake of judicial efficiency, they will address those claims and other issues in subsequent motions, if necessary. *See* ECF 31, Order to Consolidate, *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844-XR (W.D. Tex. Sept. 30, 2021).

Fifth Circuit "precedents distill three rules": (1) "it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit"; (2) "where a statute is being challenged, . . . a provision-by-provision analysis is required"; and (3) "in the particular context of Texas elections . . . the Secretary's role varies, so [the plaintiffs] must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877–78 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)).

At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). During the status conference, the parties discussed this issue. The State Defendants argued that "the plaintiffs haven't met their burden of specific allegations about what conduct from the defendants they are complaining of." Ex. A at 16. The Court sent "clear signals to all the plaintiff groups, you need to further amend your complaints here to address these challenges." *Id.* But the LUPE Plaintiffs did not adequately address this problem in their first amended complaint, and they have still fallen short of curing these issues with their second amended complaint. They once again fail to allege relevant enforcement roles for the Secretary of State and Attorney General on a claim-by-claim and provision-by-provision basis.

## A. Plaintiffs Have Not Plausibly Alleged an Enforcement Role for the Secretary

Sovereign immunity precludes the LUPE Plaintiffs' claims against the Secretary of State because he does not have a sufficient connection with enforcement of the challenged SB1 provisions. As the Fifth Circuit explained, "in the particular context of Texas elections, . . . the Secretary's role varies," so Plaintiffs "must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party*, 860 F. App'x at 877–78 (citing *Tex. Democratic Party*, 978 F.3d at 179–

80). The LUPE Plaintiffs fail to address the Secretary's enforcement authority "provision-by-provision" as required. *Id.* at 877.

The LUPE Plaintiffs assert Counts I–IX against the Secretary. In these counts, they challenge SB1 §§ 2.04, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, 4.07, 4.09, 5.07, 5.13, 6.01, 6.03–6.06, 7.04, and 8.01. *See* ECF 204-1 ¶¶ 219, 231, 243, 256, 267, 273, 287, 302, 311. The LUPE Plaintiffs fail to allege the Secretary's connection to enforcement of these provisions. The Secretary, in fact, does not enforce them.

For example, the LUPE Plaintiffs allege that § 2.04 requires registrars to provide information to the Secretary and others, and that this "will have a chilling effect on voter registration" and "facilitate[] investigation and prosecution of perfectly legal activity by voters." *Id.* ¶¶ 145–46, 222. But that provision in no way authorizes the Secretary to undertake an investigation or prosecution. Similarly, § 2.11 requires the clerk of the court to send to the Secretary "a copy of the list of persons excused or disqualified in the previous month because the persons do not reside in the county[.]" Tex. Gov't Code § 62.114(b)(2). Just as with § 2.04, the Secretary is a mere recipient of information under § 2.11. It is difficult to imagine how the Secretary could be enjoined from receiving information. Nor could an injunction against the Secretary's receiving information prevent any alleged injury.

Neither does the Secretary play a role in enforcing §§ 2.06, 2.07, or 2.08. Those provisions feature information traveling in the other direction, as the Secretary provides information to others under all three statutes. Under § 2.06, the Secretary may "inform the attorney general that the county which the registrar serves may be subject to a civil penalty" for a third or subsequent violation. Tex. Elec. Code § 18.065(e)(3). Under § 2.07, the Secretary sends information to voter registrars, who then determine whether a voter is removed from the voter registration list. Tex. Elec. Code § 18.068. And § 2.08 states that "the secretary shall promptly refer the information to the attorney general" if he discovers or reasonably suspects that criminal conduct has occurred. Tex. Elec. Code § 31.006. Sharing

information does not involve "compulsion or constraint" and is therefore not enforcement. *City of Austin*, 943 F.3d at 1000.

SB1 §§ 3.04 and 3.13 relate to the location of polling places, but the Secretary does not designate polling locations. *See Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291 (5th Cir. 2021) (finding that "[t]he Secretary plays no role"); *see also* Tex. Elec. Code §§ 43.002–43.004 (assigning this responsibility to local officials). The Secretary does not enforce §§ 3.09, 3.10, or 3.12 either. These provisions amend Texas Election Code §§ 85.005, 85.006(b) and (e), and 85.061(a), respectively, which are enforced by the early voting clerk. *See* Tex. Elec. Code §§ 83.001–83.0012 (identifying whom is the early voting clerk and specifying that "[t]he early voting clerk shall conduct the early voting in each location"); *see also id.* §§ 85.005, 85.006(b), 85.006(e), 85.061(a) (specifying how the early voting clerk shall conduct early voting in certain elections).

The Secretary also does not enforce the challenged provisions relating to watchers, that is, §§ 4.01, 4.06, 4.07, and 4.09. These provisions do not specify an enforcement role for the Secretary. *Id.* §§ 32.075, 33.051, 33.056, 33.061, 33.063. The only alleged connection between the Secretary and these provisions in the LUPE Plaintiffs' amended complaint is one paragraph concerning a guide on the Secretary's website. ECF 204-1 ¶ 34. SB1 does not require the Secretary to publish that guide. The LUPE Plaintiffs misquote Texas Election Code § 33.008, which was added by SB1 § 4.04. Section 4.04 requires that the Secretary "develop and maintain a training program for watchers," but the LUPE Plaintiffs have not explained how providing online training and a certification upon completion to watchers has any relation to the harm they allege. *See Mi Familia Vota*, 977 F.3d at 465 (explaining that the Secretary is not a proper defendant where "[d]irecting the Secretary not to enforce [the challenged provision] would not afford the Plaintiffs the relief that they seek").

As to the challenged voting-by-mail provisions—§§ 5.07 and 5.13—neither has a role for the Secretary. As the LUPE Plaintiffs admit, the early voting clerk enforces the ballot-application

requirement of § 5.07. Tex. Elec. Code § 86.001(c); *see* ECF 204-1 ¶ 136. The early voting ballot board enforces the carrier-envelope requirement of § 5.13. Tex. Elec. Code § 87.041(a). The Secretary has no part in enforcing these provisions.

The Secretary also does not enforce the challenged assistance-of-voters provisions in §§ 6.01 and 6.03–6.06. The LUPE Plaintiffs admit that local officials, not the Secretary, enforce §§ 6.01, 6.03– 6.05. ECF 204-1 ¶ 51. The LUPE Plaintiffs complain that § 6.01 "discourages voter assistance" because individuals "must complete and sign a form." *Id.* ¶ 115. The LUPE Plaintiffs do not mention any relevant role for the Secretary (just receiving the form), *see id.*, and in fact, the Secretary's only potentially relevant role is to "prescribe the form." Tex. Elec. Code § 64.009(h). But the LUPE Plaintiffs are not complaining about the design of the form. Instead, they complain about having to "complete and sign [the] form," which will allegedly "deter individuals from giving these rides." ECF 204-1 ¶ 115. The LUPE Plaintiffs do not discuss who enforces the requirement if someone refuses to fill out the form (not the Secretary), nor do they claim that the Secretary will otherwise require them to fill out the form. Under Texas law, the form is "provided by" a local "election officer." Tex. Elec. Code § 64.009(f).

SB1 § 6.04 requires an oath, but it is "an election officer at the polling place," not the Secretary, that administers and enforces the oath requirement. *Id.* § 64.034; *see also id.* §§ 32.071 ("The presiding judge is in charge of and responsible for the management and conduct of the election at the polling place. . . .); 32.074 ("An election judge or clerk may administer the oath required or authorized to be made at a polling place."). For § 6.05, the LUPE Plaintiffs complain that requiring assistors "to fill out additional information on the mail ballot carrier envelope . . . will deter assistors and increase the risk that the ballot will be rejected." ECF 204-1 ¶ 112. Once again, SB1 does not give the Secretary authority to enforce this requirement. Tex. Elec. Code § 86.010. The LUPE Plaintiffs complain that

§ 6.06 will "deter . . . assistors who fear prosecution." ECF 204-1 ¶ 114. However, the Secretary is not authorized to prosecute violations of § 6.06. *See* Tex. Elec. Code § 86.0105.

The final provisions of SB1 that the LUPE Plaintiffs challenge are §§ 7.04 and 8.01. Section 7.04 adds §§ 276.015–.019 to the Election Code, but the Secretary is not authorized to enforce those provisions. *See id.* §§ 276.015–.019. Section 8.01 adds a civil penalty for any election official that violates a provision of the Election Code, *see* Tex. Elec. Code § 31.129, but, once again, the Secretary has no role in imposing that penalty.

As they did in their original complaint, the LUPE Plaintiffs improperly seek to rely on general statutes concerning the Secretary's authority. It is not enough to cite Texas Election Code § 31.001, which provides that the Secretary "is the chief election officer of the state." ECF 204-1 ¶ 22. Nor is it sufficient to rely on general statutes granting the Secretary election oversight authority. *See id.* ¶¶ 24–25, 29–30 (citing Tex. Elec. Code §§ 31.003–.005). Plaintiffs must "identify the Secretary's specific duties within the particular statutory provision" at issue. *Tex. Democratic Party*, 860 F. App'x at 877–78. By omitting the required "provision-by-provision analysis," *id.*, the LUPE Plaintiffs fail to sufficiently allege how enjoining the Secretary will prevent the alleged harm from the challenged SB1 provisions. *See Mi Familia Vota*, 977 F.3d at 465.

The LUPE Plaintiffs include allegations regarding the Secretary's authority under other sections of the Texas Election Code, but in each instance, they fail to sufficiently allege how enjoining the Secretary from acting pursuant to the authority granted by those general statutes will prevent the alleged harm. *See* ECF 204-1 ¶¶ 26–35. For example, the LUPE Plaintiffs allege that, by monitoring registrars, the Secretary "directly affect[s] the amount of the new civil penalty for which the registrar becomes liable," *id.* ¶ 26, but the Secretary is not authorized to recover that penalty. *See* Tex. Elec. Code § 18.065. And, as explained above, although the Secretary designs some forms, the LUPE Plaintiffs fail to allege how enjoining the Secretary from that task will prevent the alleged harm from

the challenged SB1 provisions. *See* ECF 204-1 ¶¶ 27–28. The LUPE Plaintiffs' allegations regarding the Secretary's general authority to perform inspections, pass along information to others, and provide training are similarly lacking. *See id.* ¶¶ 29–34.

## B. The Attorney General is Also Immune

Sovereign immunity also bars the LUPE Plaintiffs' claims against the Attorney General. Again, allegations that the Attorney General has a general duty to enforce state laws, *id.* ¶¶ 36–38, are not enough to satisfy *Ex parte Young. See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401–02 (5th Cir. 2020). A "provision-by-provision analysis is required" to show that a state official has the requisite connection to each challenged provision. *Tex. Democratic Party*, 860 F. App'x at 877. The LUPE Plaintiffs assert claims against the Attorney General based on numerous SB1 provisions, *see* ECF 204-1 ¶¶ 219, 231, 243, 256, 267, 273, 287, 302, 311, but for most of these provisions, they fail to address the Attorney General's enforcement role at all. By failing to include these necessary allegations, the LUPE Plaintiffs have not satisfied their burden to show that the Attorney General is a proper defendant.

Where the LUPE Plaintiffs do attempt to address the Attorney General's enforcement role, their allegations fall short. The LUPE Plaintiffs complain that SB1 § 2.04 "will have a chilling effect on voter registration" due to the "added threat of criminal prosecution." ECF 204-1 ¶ 145. But the Attorney General does not enforce § 2.04. Under that provision, he merely receives information. *See* SB1 § 2.04 (codifying Tex. Elec. Code § 15.028). As explained above, enforcement is defined by "compulsion or constraint," *City of Austin*, 943 F.3d at 1000, but § 2.04 does not empower the Attorney General to compel or constrain anyone. Because "the requisite connection is absent," the *Ex parte Young* analysis ends there. *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (citing *City of Austin*, 943 F.3d at 998), *vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021).

The LUPE Plaintiffs allege that § 6.01 "will deter individuals from giving" rides to the polls to seven or more voters—even though doing so "is not illegal" under SB1—because such drivers "must complete and sign a form." ECF 204-1 ¶ 115. The Attorney General has no role in that process, except that the form is "available to the attorney general for inspection upon request." SB1 § 6.01 (codifying Tex. Elec. Code § 64.009(g)). That is not "compulsion or constraint." *City of Austin*, 943 F.3d at 1000.

The LUPE Plaintiffs now acknowledge that "the Texas Court of Criminal Appeals recently held that Defendant Paxton lacks constitutional authority to unilaterally prosecute criminal offenses created by the Election Code[.]" ECF 204-1 ¶ 39; *see State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021).[2] They nevertheless rely on the fear of criminal prosecution to bring Counts I, VII, VIII, and IX against the Attorney General. ECF 204-1 ¶¶ 222, 224, 225, 293, 298, 303, 305, 307, 312, 313. They maintain that "Defendant Paxton may still assist the prosecuting district or county attorney upon request." ECF 204-1 ¶ 39. However, they make no allegation that such a request has been made or is imminent in relation to the challenged SB1 provisions. "Speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing [SB1] is inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d at 709 (citing *City of Austin*, 943 F.3d at 1000). These and other allegations relating to the Attorney General's authority to prosecute violations of Texas's election laws are therefore also insufficient to establish the Attorney General as a proper defendant. Because the LUPE Plaintiffs have not alleged, on a provision-by-provision basis, "that the Attorney General has the authority to enforce" the particular provisions at issue, *City of Austin*, 943 F.3d at 1001, there is no need to proceed to the next step in the analysis. Their claims fail out of the gate.

---

[2] The State of Texas and the Attorney General believe that *Stephens* was wrongly decided. The State has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision.

Were the Court to reach the second step, the LUPE Plaintiffs' claims would nonetheless fail. The LUPE Plaintiffs must plausibly allege "that [the Attorney General] is likely to" enforce the particular provisions at issue in the way Plaintiffs claim. *Id.* at 1002. But *Stephens* holds that the Attorney General cannot do so unilaterally. *See* 2021 WL 5917198, at *1, 8. And the LUPE Plaintiffs do not allege that any district or county attorney has, or is likely to, seek the Attorney General's assistance in prosecuting violations of the challenged SB1 provisions. Moreover, to the extent the LUPE Plaintiffs rely on the Attorney General's prior investigations and prosecutions, his choice to enforce "different statutes under different circumstances does not show that he is likely to" enforce the provisions Plaintiffs challenge in the manner they allege. *City of Austin*, 943 F.3d at 1002. The LUPE Plaintiffs do not and cannot plausibly allege that the Attorney General will bring suits that would themselves violate the law. That is especially true in light of the "presumption of regularity" afforded "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006).

## II. Plaintiffs Cannot Sue the State of Texas

The LUPE Plaintiffs assert Counts IV, V, and VI against the State of Texas. *See* ECF 204-1 ¶¶ 256, 267, 273. Each of these counts is barred by sovereign immunity. "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). "Unless waived by the state, abrogated by Congress, or an exception applies, the immunity precludes suit." *Tex. Democratic Party*, 978 F.3d at 179 (citing *City of Austin*, 943 F.3d at 997).

Counts IV and V raise claims under the Voting Rights Act. Although *OCA-Greater Houston* held that the Voting Rights Act abrogates sovereign immunity, that case was wrongly decided. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of*

*the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nor did it do so in Section 208. When the VRA authorizes relief against States, it does so through suits brought by the Attorney General, *see, e.g.*, 52 U.S.C. § 10308(d), which the Supreme Court has held are not subject to sovereign immunity. *See West Virginia v. United States*, 479 U.S. 305, 312 n.4 (1987); *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Although this Court is bound by *OCA-Greater Houston*, the State Defendants preserve this argument for appeal.

With respect to the LUPE Plaintiffs' ADA claim in Count VI, the Supreme Court "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Under *Georgia*, if the plaintiff alleges no conduct that violates Title II, sovereign immunity applies. *Id.* at 617–19. As explained below, the LUPE Plaintiffs have not alleged conduct violating Title II, *see infra* Part IV.A, so Texas is entitled to sovereign immunity on Count VI.

## III. Plaintiffs Lack Standing

### A. Plaintiffs Bear the Burden of Establishing Standing on a Claim-by-Claim Basis

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and

(3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Artificial entities have two options for trying to establish standing: (1) associational standing and (2) organizational standing. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). For associational standing, the entity must show that (1) its members would independently have standing; (2) the interests the organization is protecting are germane to the purpose of the organization; and (3) neither the claim asserted, nor the relief requested, requires participation of individual members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). For organizational standing, the plaintiff must establish, in its own right, an injury in fact, causation, and redressability. *Id.*

Because the LUPE Plaintiffs are "invoking federal jurisdiction," they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Additionally, because "[s]tanding is not dispensed in gross," Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue." *In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019) (per curiam) (emphasis added). But rather than proceed "provision-by-provision" and "claim-by-claim," *id.* at 165, 170, the LUPE Plaintiffs' standing allegations often treat SB1 as an undifferentiated whole. That does not suffice.

### B. Plaintiffs Have Not Plausibly Alleged Traceability or Redressability

As an initial matter, the LUPE Plaintiffs lack standing because their alleged harms are neither traceable to State Defendants nor redressable by this Court. By and large, the LUPE Plaintiffs challenge SB1 as an undifferentiated whole, without tying their alleged injuries to particular enforcement actions by any of the State Defendants. The LUPE Plaintiffs name the State of Texas as a defendant for Counts IV and V, but they fail to allege enforcement of the provisions challenged in those counts by a state official such that the alleged harm is traceable to the State and redressable by a favorable decision. To the extent the LUPE Plaintiffs attempt to allege enforcement by state officials, they reference the Secretary and Attorney General. But, as explained in Part I, the Secretary and

Attorney General do not have broad power to enforce all of SB1. The *Ex parte Young* analysis above "significantly overlap[s]" with the traceability and redressability analysis. *City of Austin*, 943 F.3d at 1002. However, traceability and redressability are still required even when sovereign immunity is inapplicable. *See* U.S. Const. art. III, § 2. Thus, even if the State Defendants are not immune from suit, the Court should dismiss the LUPE Plaintiffs' claims for lack of standing because of Plaintiffs' failure to adequately plead enforcement of the challenged SB1 provisions by the State Defendants.

Any alleged injuries are not fairly traceable to the Attorney General for another reason. The LUPE Plaintiffs attempt to establish standing based on the Attorney General's power to assist local prosecutors upon request. ECF 204-1 ¶ 39. However, that argument rests on their highly speculative fear that: (1) a district or county attorney will decide to prosecute an individual under one of the provisions challenged; (2) the individual to be prosecuted will be a member of one of the organizations bringing this challenge; (3) the county or district attorney will seek the assistance of the Attorney General; and (4) the Attorney General will agree to provide such assistance. Reliance on this "speculative chain of possibilities" is insufficient to establish that any prosecutorial injury "is certainly impending or is fairly traceable." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013). Moreover, given that the first and third links in this chain of contingencies would require "guesswork as to how independent decisionmakers will exercise their judgment," this Court should "decline to abandon [the] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.*

To be sure, *OCA-Greater Houston* wrongly found standing satisfied in an earlier suit against the Secretary of State because the Secretary "serves as the 'chief election officer of the state.'" 867 F.3d at 613. But *OCA* "involved a *facial* challenge under the Voting Rights Act," not "an as-applied challenge to a law enforced by local officials." *Tex. Democratic Party v. Hughs*, 974 F.3d 570, 571 (5th Cir. 2020)

(per curiam) (distinguishing *OCA*). Its reasoning is limited, at least, to cases considering "[t]he facial validity of a Texas election statute." *OCA*, 867 F.3d at 613.

In any event, *OCA* is inconsistent with Texas authorities, which control on the underlying question of Texas law: Does being the "chief election officer" empower the Secretary to enforce Section 6.04? No, because the "Secretary's title chief election officer is not a delegation of authority to care for any breakdown in the election process." *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (Blacklock, J., concurring) (describing *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972)) (quotation marks omitted). *OCA* did not consider these precedents, or any other opinions from Texas courts. Justice Blacklock's *In re Hotze* concurrence post-dated *OCA*, so the *OCA* court did not have a chance to consider that opinion. And the *OCA* court appears to have been unaware of *Calvert*, which was not cited in the parties' briefs. Because *OCA* did not "squarely address[]" Texas cases interpreting the Secretary's role as chief election officer, it is not binding "by way of stare decisis." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see Wilson v. Taylor*, 658 F.2d 1021, 1034–35 (5th Cir. 1981) (refusing to follow a Fifth Circuit opinion that conflicted with a previous Supreme Court opinion that "was not called to the attention of the [first Fifth Circuit] panel").

### C.  No Plaintiff Has Associational Standing

The amended complaint does not plausibly allege facts establishing associational standing. A plaintiff cannot have associational standing unless one of its members independently satisfies the Article III standing requirements. *Ctr. for Biological Diversity*, 937 F.3d at 536. The plaintiff must therefore make two threshold showings: (1) that it has "members" within the meaning of the associational standing test from *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (requiring "indicia of membership"), and (2) that identified members have "suffered the requisite harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The LUPE Plaintiffs here have done neither.

First, the LUPE Plaintiffs have not alleged facts establishing that they have "members" under the *Hunt* test. Plaintiffs ADL, SVREP, and WCVI do not assert associational standing. ECF 204-1 ¶¶ 12–13, 18 (asserting only organizational standing). The remaining entity Plaintiffs assert that they have members, at least in the colloquial sense, but they fail to allege that their purported members "possess all of the indicia of membership": that "[t]hey alone elect the members of the [governing board]; they alone may serve on the [governing board]; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. Generally, members must "participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). More specifically, the members must "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Texas Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.). The LUPE Plaintiffs allege no such facts. *See* ECF 204-1 ¶¶ 9–11, 14–17, 19, 149-170, 182–207, 209–16.

Second, even assuming the entity Plaintiffs have members, they have failed to "identify members who have suffered the requisite harm" to establish injuries in fact. *Summers*, 555 U.S. at 499. As this Court recognized at the status conference, the LUPE Plaintiffs' original complaint did not "identify[] specific members of those associations who would themselves have standing to sue." Ex. A at 18. The Court advised the plaintiffs "to flush that out because I don't see where many of you have articulated those individuals sufficient to withstand any challenge." *Id.* But the LUPE Plaintiffs did not follow that advice. The only individual identified in the amended complaint, James Lewin, is not alleged to be a member of the entity Plaintiffs. ECF 204-1 ¶¶ 20, 217.

This defect, on its own, is sufficient to support dismissal. *See, e.g.*, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the challenged regulation); *Disability Rights Wis., Inc. v. Walworth*

*Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008) (dismissing claim for lack of standing where entity plaintiff failed to identify a member who was affected by the disability policy).[3]

Finally, even if Plaintiffs otherwise had associational standing (they do not), they would not be able to rely on associational standing for their disability-based claims: Count V under § 208 of the VRA and Count VI under the ADA. The third element of associational standing demands that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536. "To determine whether" a "claim require[s] individual participation," courts "examine[] the claim's substance." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009). If the claim has an "individualized element," then "[t]he involvement of" individual members "is essential to the resolution of the" claim. *Id.*

Here, the LUPE Plaintiffs' disability claims require the participation of individual members, both because they have individualized elements and because of the relief requested. For example, "to prevail on a claim of disability discrimination under the ADA, a party must prove that he has a disability," *Neely v. PSEG Tex., LP*, 735 F.3d 242, 245 (5th Cir. 2013) (citations omitted), and that the disability "substantially limits an individual in a major life activity," *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (per curiam); *see also Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *1–3, *6–7 (E.D. Tex. Aug. 7, 2008) (as to § 208, considering the specific effect of Texas early voting law on group of elderly plaintiffs). This requires "a case-by-case analysis" of specific facts and circumstances, with respect to each particular plaintiff. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 369 (5th Cir. 2012) (per curiam). The LUPE Plaintiffs' "complaint alleges no facts suggesting" that disabled voters will face "uniform" issues across Texas's 254 counties and despite

---

[3] Although an unpublished opinion of the Fifth Circuit once noted that the panel was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint," *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), the precedent cited above holds exactly that.

variation in individual disabilities. *Prison Justice League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam). In the absence of such uniformity, individual participation is crucial for understanding the merits of disability claims.

### D. None of the Entity Plaintiffs Plausibly Allege a Cognizable Injury

The entity Plaintiffs have not plausibly alleged that they, as organizations, will suffer injuries in fact. They therefore lack organizational standing.

*ADL*: Plaintiff ADL claims standing on two grounds, but neither suffices. First, ADL alleges that it "is concerned that" its future activities "would place" it "at risk of prosecution." ECF 204-1 ¶ 172. But "subjective fear . . . does not give rise to standing." *Clapper*, 568 U.S. at 418. ADL does not even assert that it is likely to be prosecuted, much less plausibly allege that the risk of prosecution is more than "speculative." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018).

Second, ADL claims it "will be required to divert and expend resources on designing its voter education to properly inform Texas voters about SB1[]." ECF 204-1 ¶ 173. As an initial matter, an organization's "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). If standing were so broad, law professors would always have standing to challenge any new law.

In any event, although the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman*, 881 F.3d at 390. A diversion of resources is thus cognizable only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Here, ADL does not allege an underlying injury that

its alleged diversion was needed to counteract. Nor does it "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372-RP, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238).

*WCVI*: Plaintiff WCVI argues that it "will be forced to divert resources" for the purposes of "explaining," "analyzing," and "informing Texas Latino voters about SB1[]." ECF 204-1 ¶ 208. Again, diverting resources to educate individuals about a challenged law "does not present an injury in fact." *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. Moreover, where, as here, WCVI has not alleged that it "would have suffered some other injury if it had not diverted resources," the mere allegation of diversion or resources is insufficient to confer standing. *Zimmerman*, 881 F.3d at 390.

*MABA-TX*: Plaintiff MABA-TX alleges that SB1 will have "negative effects" on third parties and "communities," supposedly requiring MABA-TX "to divert resources to prepare new educational materials" as well as "educate" third parties "about SB1[]." ECF 204-1 ¶¶ 192, 194. That does not confer standing for the reasons explained above. A plaintiff's opposition to a law's effects is not a cognizable injury, *see Ass'n of Community Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 362 n.7 (5th Cir. 1999); *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996), nor is the expense of educating others about SB1, *see Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. Moreover, MABA-TX has not alleged "any specific projects" it will have "to put on hold" due to its alleged diversion of resources. *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). Finally, MABA-TX's concern that SB1 could affect who wins elections, *see* ECF 204-1 ¶ 195, does not suffice because "[a]n organization's general interest in its preferred candidates winning as many elections as possible is . . . a 'generalized partisan preference[]' that federal courts are 'not responsible for vindicating.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1263 (11th Cir. 2020) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018)).

*Texas HOPE*: Plaintiff Texas HOPE offers three proposed injuries, but none succeeds. First, Texas HOPE argues that it "will be forced to divert resources to educate its membership about SB1[]," ECF 204-1 ¶ 199, but again, educating members is not a cognizable injury in fact. *See Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. Second, Texas HOPE contends that SB1 will "depress Latino turnout," ECF 204-1 ¶ 200, but an "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014); *see Gill*, 138 S. Ct. at 1933. Third, "Texas HOPE *believes* it will have difficulty recruiting election workers because" potential volunteers suffer from "confusion" and "fear" about SB1. ECF 204-1 ¶ 201 (emphasis added). A plaintiff's speculative belief about the reactions of third parties to a challenged law cannot support standing, both because it is based on "conjecture" and because it is "based on third parties' subjective fear." *Clapper*, 568 U.S. at 417 n.7.

*LUPE*: Plaintiff LUPE alleges four theories of standing, but each fails. First, LUPE alleges that "SB1 will injure LUPE by exposing the organization's paid staff and members to investigation and prosecution." ECF 204-1 ¶ 155. However, LUPE does not assert that it is likely to be investigated or prosecuted, much less plausibly allege that the risk of investigation or prosecution is more than "speculative." *Zimmerman*, 881 F.3d at 390. Second, it claims "SB1 will frustrate [its] mission" by "reducing voter turnout." ECF 204-1 ¶ 164. That is not an injury in fact. *See Fair Elections Ohio*, 770 F.3d at 461. Third, LUPE alleges that it will "divert its resources . . . to counteract the negative effects" on voter turnout. ECF 204-1 ¶ 162. Because the alleged underlying effect on voter turnout is not a cognizable injury, neither is a diversion of resources meant to prevent that non-injury. *See Zimmerman*, 881 F.3d at 390; *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Fourth, LUPE alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 204-1 ¶ 165, but LUPE does not allege any "imminent" and "*certainly impending*" plans to provide such

assistance to would-be voters. *Clapper*, 568 U.S. at 409. Even if that were an injury in fact, it would not give LUPE standing to challenge any of the other provisions at issue.

*Friendship-West*: Plaintiff Friendship-West lacks standing for many of the reasons discussed above. First, Friendship-West alleges that "SB1 will frustrate [its] mission," ECF 204-1 ¶ 166, but "[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union*, 101 F.3d at 1429. Second, it alleges that SB1 "will frustrate its ability to operate as a polling place." ECF 204-1 ¶ 166. However, Friendship-West fails to allege how. This purely hypothetical alleged injury cannot support standing. *See Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 187 (M.D.N.C. 2020) (citing *Clapper*, 568 U.S. at 402). Third, Friendship-West alleges that it "will . . . be required to divert and expend resources . . . to ensure that its congregants and community members comply with SB1's new, often confusing, and vague restrictions," ECF 204-1 ¶ 170, but educating others about the law is not an injury in fact. *Nat'l Taxpayers Union*, 68 F.3d at 1434. Fourth, Friendship-West alleges that it "believes" that third parties will react to SB1 in ways it does not like, ECF 204-1 ¶ 169, but again, supposed injuries based on "conjecture" and "third parties' subjective fear" are doubly insufficient. *Clapper*, 568 U.S. at 417 n.7.

*SVREP*: Plaintiff SVREP alleges that SB1 will have "negative effects" on voter turnout and that it must "divert its resources . . . to counteract" those "negative effects." ECF 204-1 ¶ 175; *see id.* ¶ 180. That does not establish standing because SVREP's "abstract social interest in maximizing voter turnout . . . . cannot confer Article III standing." *Fair Elections Ohio*, 770 F.3d at 461. Like LUPE, SVREP also alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 204-1 ¶ 177, but SVREP does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. But even if SVREP were injured, its standing would be limited to challenging provisions that increase the costs of assisting voters.

*Texas Impact*: Plaintiff Texas Impact allegedly foresees "difficulty recruiting election workers" due to "confusion about SB1's new rules for partisan poll watchers and fear among volunteers of criminal prosecution for conduct that could 'obstruct the view of a watcher.'" ECF 204-1 ¶ 183. But again, standing cannot be "based on third parties' subjective fear." *Clapper*, 568 U.S. at 417 n.7. Next, Texas Impact claims it "has already" diverted, and "anticipates being required to continue" diverting, its time and resources "toward ensuring that its members comply with SB1[]," ECF 204-1 ¶ 186, but Texas Impact does not allege what "reasonably certain injury imposed by" SB1 this alleged diversion is a "response to." *Zimmerman*, 881 F.3d at 390; *see La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Nor does Texas Impact allege which provisions of SB1 allegedly impose these compliance costs.

*JOLT Action*: Plaintiff JOLT Action alleges that "SB1 will frustrate [its] mission" and that it wants "to counteract the negative effects of SB1," ECF 204-1 ¶¶ 202, 206, but even a "direct conflict" between an "organization's mission" and a challenged law does not suffice "to confer standing on the organization." *Fowler*, 178 F.3d at 362 n.7. Like LUPE and SVREP, JOLT Action, alleges it "will be required to divert resources . . . to comply with SB1's" rules regarding "assisting voters," ECF 204-1 ¶ 207, but JOLT Action does not allege any "imminent" and "*certainly impending*" plans to provide such assistance to would-be voters. *Clapper*, 568 U.S. at 409. But even if JOLT Action were injured, its standing would be limited to challenging provisions that increase the costs of assisting voters.

*Fiel*: Plaintiff Fiel alleges the same injuries as JOLT Action, *see* ECF 204-1 ¶¶ 209, 211, 213, and they fail for the same reasons.

*OCA-Greater Houston*, about which the Court asked at the status conference, is not to the contrary. In that case, the Fifth Circuit considered whether a plaintiff's alleged diversion of resources was an injury in fact. The court analyzed a "critical distinction": whether the expenses "were related

to litigation" or "unrelated to litigation." *OCA-Greater Hous.*, 867 F.3d at 612. That is an important limitation on organizational standing, but it is not at issue in this case.

In this case, one key question is whether the LUPE Plaintiffs' alleged diversions of resources are self-inflicted injuries or necessary responses to cognizable injuries they otherwise would have suffered. *OCA-Greater Houston* did not analyze that question, seemingly because the parties did not brief it. The court there simply did not consider whether the plaintiff's "change in plans" was "in response to a reasonably certain injury imposed by the challenged law," as other precedent requires the Court to address here. *Zimmerman*, 881 F.3d at 390.

### E. The Entity Plaintiffs Violate the Bar on Third-Party Standing

Finally, the entity Plaintiffs lack standing for another reason: the bar on third-party standing. Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights" at issue. 42 U.S.C. § 1983. The same is true for Plaintiffs' other causes of action. A "third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)). Thus, where the "alleged rights at issue" belong to a third party, the plaintiff lacks statutory standing, regardless of whether the plaintiff has suffered his own injury. *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 nn.3–4 (2014). Here, the entity Plaintiffs rely on the rights of third parties because they do not possess the relevant rights (*e.g.*, the right to vote, the right not to be discriminated against based on a disability). The LUPE Plaintiffs have not alleged any exception to the general prohibition on third-party standing.

### F. Plaintiff Lewin is Not Injured

Plaintiff Lewin has not alleged a cognizable injury. He claims that he "*may* hesitate to volunteer" because of certain SB1 provisions regarding poll watchers. ECF 204-1 ¶ 217 (emphasis added). That is not an "actual or imminent" injury. *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th

Cir. 2001) (citing *Lujan*, 504 U.S. at 560). Subjective chill is not sufficient to establish an injury in fact, *see Clapper*, 568 U.S. at 401 (distinguishing between a certainly impending injury and one built on subjective fear), but a plaintiff who is himself unsure whether he will be chilled certainly has not established an injury in fact. He has "failed to sufficiently plead the actual chilling of [his] First Amendment rights so as to constitute an injury for standing purposes." *Guan v. Mayorkas*, No. 1:19-cv-6570, 2021 WL 1210295, at *13 (E.D.N.Y. Mar. 30, 2021); *see Ass'n of Am. Physicians & Surgeons, Inc. v. HHS*, 224 F. Supp. 2d 1115, 1125 (S.D. Tex. 2002), *aff'd*, 67 F. App'x 253 (5th Cir. 2003) (per curiam) (dismissing for lack of standing due no "actual chill").

## IV. Plaintiffs' Claims Fail as a Matter of Law

If the Court concludes it has jurisdiction, it should streamline this case by dismissing claims that fail as a matter of law.

### A. Plaintiffs Failed to State a Claim under the ADA

The Court should dismiss Count VI because the LUPE Plaintiffs have not stated an ADA claim. The ADA requires a plaintiff to plausibly allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (per curiam) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)). The LUPE Plaintiffs have not plausibly alleged that they are disabled, that State Defendants provide the relevant service, that SB1 will prevent them from receiving assistance, or that reasonable accommodations are unavailable.

### 1. Plaintiffs Do Not Allege a Qualifying Disability

As an initial matter, the LUPE Plaintiffs do not have qualifying disabilities. Most of the plaintiffs in this case are artificial entities that could not be disabled. ECF 204-1 ¶¶ 9–19. Plaintiff Lewin does not allege that he is disabled. *Id.* ¶ 20.

Three of the entity Plaintiffs—LUPE, Texas Impact, and Fiel—claim to have disabled members, *see* ECF 204-1 ¶¶ 10, 149-51, 184, 214, 279, but that does not help them here. The LUPE Plaintiffs attempt to litigate the ADA rights of third parties despite "[t]he prohibition on third-party standing." *Sims v. Tex. Dep't of Hous. & Cmty. Affs.*, No. 4:05-cv-2842, 2005 WL 3132184, at *4 (S.D. Tex. Nov. 21, 2005) (Rosenthal, J.) (dismissing ADA and Rehabilitation Act claims); *see also Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016–17 (N.D. Ill. 2002) (dismissing an ADA claim for lack of third-party standing). Claims to third-party standing are even weaker where, as here, the plaintiffs' allegations do not tie the claim to "any identifiable individual" with a disability. *Sims*, 2005 WL 3132184, at *5.

Even if LUPE, Texas Impact, and Fiel could litigate the ADA rights of identified members, those groups still have not plausibly alleged facts establishing a qualifying disability for those members. As the Court noted at the status conference, "these entity plaintiffs haven't specifically alleged what disabilities the members have, or how the disability limits any major life activity." Ex. A at 12. But the LUPE Plaintiffs did not heed the Court's advice to "file an amended complaint to cure these deficiencies." *Id.*

Their amended complaint is based on the same conclusory assertions included in their original complaint. Asserting that their members include disabled voters does not suffice. *See* ECF 204-1 ¶¶ 10, 149–50, 184, 214. Asserting that these disabled voters "have disabilities that limit major life activities" is also insufficient. *See id.* ¶¶ 10, 151, 279. Even at the pleading stage, "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Pleading a qualifying disability requires alleging "facts sufficient to allow [the Court] to reasonably infer that" the individuals have: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale*, 642 F.3d at 499–500. Because no Plaintiff has "alleged any facts displaying what her disability is or how her disability substantially limits one of her major life activities," the Court should dismiss Count VI. *Houston v. DTN Operating Co.*, No. 4:17-cv-35, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017); *see also Payne v. Midcrown Pavilion Apartments*, No. SA-19-cv-407-FB, 2021 WL 3813378, at * 12 (W.D. Tex. Aug. 26, 2021) (recommending dismissal because the complaint alleged "no medical facts" showing "that Mr. Payne is disabled under . . . the ADA").

Even if the Court finds LUPE's, Texas Impact's, and Fiel's allegations sufficient (it should not), State Defendants respectfully request that the Court at least dismiss Count VI as to the eight Plaintiffs who do not claim to be disabled or have disabled members: Friendship-West, ADL, SVREP, MABA-TX, Texas HOPE, JOLT Action, WCVI, and Lewin.

## 2. Defendants Do Not Administer Elections

The LUPE Plaintiffs' ADA claim also fails for an independent reason: They have not plausibly alleged a "service[], program[], or activit[y] for which the public entity is responsible." *Hale*, 642 F.3d at 499. Plaintiffs allege that "[v]oting" is the relevant "activity." ECF 204-1 ¶ 277. Plaintiffs make the conclusory allegation that "[t]he State of Texas is a public entity . . ., and the individual Defendants are the public officials responsible for running these public entities," but they fail to allege facts to support this assertion as to the State Defendants. *Id.* ¶ 278.

The Fifth Circuit's opinion in *Ivy v. Williams* illuminates the "provided by" standard. 781 F.3d 250 (5th Cir. 2015), *vacated as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). There, the Fifth Circuit held that plaintiffs could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." *Id.* at

258. TEA did not teach driver education. *Id.* at 255. That TEA "provides the licensure and regulation of driving education schools" did not mean it also provides "driver education itself." *Id.* "[H]eavy regulation" and the provision of "sample course materials and blank certificates" to schools were not enough to say that TEA itself provided the educational service provided by the schools.

The same logic applies here. In general, local election officials administer Texas elections. They receive and review ballot applications, Tex. Elec. Code § 86.001, mail carrier and ballot envelopes to voters, *id.* § 86.002, receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011, verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2), and count the results, *id.* § 87.061. State Defendants do not share those responsibilities.

In substance, the LUPE Plaintiffs would impose supervisory liability on the State Defendants. But the Fifth Circuit rejected that tactic in *Lightbourn v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997). There, blind and mobility-impaired plaintiffs sued the Secretary of State because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Id.* at 423–24. The district court had held that the Secretary had a positive obligation to ensure that local election authorities complied with the ADA—one that the Secretary had violated, it concluded, by failing to encourage the development and adoption of new voting systems. Reversing the district court, the Fifth Circuit held that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (holding that the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA").

In reaching that decision, the Fifth Circuit analyzed the Secretary's legal obligations. First, many provisions in the Election Code "give discretion to the Secretary to take some action," but "[p]rovisions merely authorizing the Secretary to take some action do not confer a legal duty on [her] to take the contemplated action." *Id.* at 429. Second, although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make

the Secretary responsible for local compliance with the ADA. *Id.* For similar reasons, the Attorney General and the State of Texas generally are not responsible for local election officials' compliance with the ADA.

### 3. Texas Law Does Not Discriminate Against Disabled Voters

The ADA does not apply unless the relevant exclusion, denial, or discrimination is "by reason of [the plaintiff's] disability." 42 U.S.C. § 12132. Here, the LUPE Plaintiffs have not identified any provision of SB1 that discriminates against voters with disabilities. Plaintiffs are not "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020).

In fact, state law expressly prohibits election officials from interpreting any provision of the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

Texans with disabilities have multiple options to vote: (1) voting in a polling place during early voting, (2) curbside voting during early voting, (3) voting in a polling place on Election Day, (4) curbside voting on Election Day, and (5) voting by mail. *See* Tex. Elec. Code §§ 41.001, 64.009, 81.001, 82.002(a). These are the same options offered to other voters, except that voters without disabilities may not be eligible for curbside voting or voting by mail. *See id.* §§ 64.009, 82.002(a).

Texas's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [relevant jurisdiction], as well as its alternative and absentee ballot programs." *Kerrigan v. Phila. Bd. of Election*, No. 2:07-cv-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (explaining that "service, program, or activity, when viewed in its

entirety" must be accessible but that a public entity does not necessarily need to "make each of its existing facilities accessible") (emphases added).

The LUPE Plaintiffs suggest that SB1 will "mak[e] it harder for [disabled voters] to get necessary assistance," ECF 204-1 ¶ 280, but they do not allege getting appropriate assistance will be impossible. Nor do they allege that any particular voter will be unable to vote.

"[T]here are no allegations that permit the inference that [any] decision" under SB1 "was made because of [a Plaintiff's] disability status." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417–18 (5th Cir. 2021). "[A] conclusory allegation that" Defendants "discriminated against [Plaintiffs] based on [a] disability" does not satisfy "the Rule 8 pleading standard." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600–01 (5th Cir. 2021).

### 4. Texas Already Provides Reasonable Accommodations

To the extent the LUPE Plaintiffs raise a failure-to-accommodate theory, it fails because Plaintiffs have not plausibly alleged that Texas has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law provides numerous accommodations for disabled voters. Texas law guarantees that they can request a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that they are entitled to request under federal or state law. Tex. Elec. Code § 1.022.

Moreover, Texas law also ensures accommodations will be made for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *Id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

The LUPE Plaintiffs do not allege any problems with these accommodations, but even if they do not match Plaintiffs' preferences perfectly, they still offer disabled voters meaningful opportunities to vote. That is enough under federal law. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that a reasonable accommodation must give qualified individuals "meaningful access"); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) (stating that qualified individuals have a right to "meaningful access").

### B. Plaintiffs Lack a Private Cause of Action for Their VRA Claims

Finally, the LUPE Plaintiffs' claims under §§ 2 and 208 of the Voting Rights Act must be dismissed because those statutes do not create a private cause of action. State Defendants will not burden the Court with further briefing on these issues that they raised in their previous Motion to Dismiss, ECF 53 at 24–29, because of the Court's denial of these arguments during the November 16, 2021, status conference. State Defendants respectfully disagree with that ruling and raise these arguments to preserve them for further review.

### CONCLUSION

State Defendants respectfully request that the Court dismiss the claims against them.

Date: February 15, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

*Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*\*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR STATE DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 15, 2022, and that all counsel of record were served by CM/ECF.

*Patrick K. Sweeten*
PATRICK K. SWEETEN