IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 5:21-cv-844 (XR) <br> (Consolidated Cases) |

**UNITED STATES' REPLY IN SUPPORT OF
OPPOSED MOTION TO COMPEL PRODUCTION**

A party cannot successfully resist discovery where its objections lack requisite specificity. *See, e.g.*, *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Defendants neither acknowledge this controlling caselaw nor defend the sufficiency of their initial objections. This Court could compel production on this basis alone.

Nonetheless, the United States is narrowing its motion to compel to a single field in the driver license database: "Card Status."[1] Even setting aside Defendants' inadequate objections to producing that field, the declaration of Sherri Gipson, Chief of the DPS Driver License Division, submitted as part of Defendants' opposition brief, confirms that the "Card Status" field is relevant here. *See* Gipson Decl., ECF No. 247-2. Yet, Defendants offer only technical specifications and descriptions of internal processes, rather than meaningful facts about the burdens of producing a single database field, whether independently or alongside a supplemental production after the March primary. Defendants cannot use burdens created by their initial refusal to produce the "Card Status" field as part of a larger database extract as grounds to oppose production now. The motion to compel should accordingly be granted with respect to the "Card Status" field.

**I.      Defendants Do Not Dispute Their Generalized Objections Were Insufficient.**

A party that fails to "show specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive" cannot avoid production in response to a discovery request. *McLeod*, 894 F.2d at 1485 (internal quotations and citation omitted); *see also*

---

[1] Based on the declaration of Sheri Gipson, ECF No. 247-2, the United States withdraws its motion to compel with respect to the "Surrendered DL/ID Number" and "License Surrendered" fields. For the first time, the Gipson Declaration conclusively refutes representations by counsel for the State in prior litigation that these two fields may concern surrendered Texas documents and establishes that these fields pertain *only* to "an out-of-state [driver license] or [identification card] that an applicant surrenders at the time of application for a Texas [driver license] or [identification card]," absent clerical error. Gipson Decl. ¶¶ 3-4. In reliance on that Declaration, the United States accepts that those two fields are not relevant here.

1

Fed. R. Civ. P. 26(b)(2)(B).  Defendants' brief does not respond to this issue, let alone offer a defense of Defendants' inadequate objections.  *See* Defs.' Br., ECF No. 247.  To the extent Defendants' brief introduces specific bases for their objections, providing such information in response to a motion to compel "is too little, too late."  *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-cv-2255, 2018 WL 3548866, at *11 (N.D. Tex. July 24, 2018).  The motion to compel should therefore be granted.

## II. Defendants' Response Demonstrates the Relevance and Proportionality of the "Card Status" Field.

### A. The Gipson Declaration Demonstrates the "Card Status" Field's Relevance.

Defendants' response confirms that the "Card Status" field contains relevant information about whether voters will be able to recite identification document numbers matching voter registration records when they submit mail ballot materials.  *See* Gipson Decl. App. A.  The "Card Status" field shows whether a person's license has been revoked or suspended for various reasons including "when [a] person no longer wants to have a Texas [driver license] or [identification] card," when a person "does not comply with the requirement to maintain an ID or DL card," and when "the Department receives the person's card from law enforcement or if found and returned to the Department."  *Id.*  Defendants are not relieved from their obligation to produce this information merely because the field is not "narrowly circumscribed" to these statuses, Defs.' Br. 6, just as they may not withhold a letter or memo because some portion of the document may not have evidentiary value.  Similarly, Defendants' contention that the field is not "used to determine voting eligibility," *id.*, is a straw man.  If a qualified voter's driver's license has been revoked or surrendered, that voter may be unable to recite the number of that document on mail ballot materials because he or she has no record of the number.  And if that identification document number is listed on the voter's registration record, failure to provide that number will

2

likely lead to rejection of mail ballot materials, notwithstanding that voter's qualifications under state law. *See* Tex. Elec. Code §§ 84.002, 86.001-.002, 87.041. This is relevant to the United States' Section 101 claim. *See* 52 U.S.C. § 10101(a)(2)(B).

Defendants' merits argument similarly fails to undermine the relevance of the "Card Status" field. It is true that the United States alleges that identification document numbers are facially immaterial to voter qualifications under Texas law. *See* U.S. Am. Compl. ¶ 74 (citing Tex. Elec. Code §§ 11.001(a), 82.001-.004, 82.007-.008), ECF No. 131. However, the United States' Amended Complaint also alleges that "[s]ome qualified Texas voters will not be able to provide the identification number required by SB 1," including voters who "may not have available records of that number." U.S. Am. Compl. ¶ 64. Evidence that some qualified voters cannot provide identification document numbers and therefore will have their votes denied undermines the theoretical interest the State asserts in redundant confirmation of "identity." Defendants have asserted that the identification document requirement will identify Texas voters and that the State's cure processes will resolve the rejection of qualified voters' mail voting materials. *See* Defs.' Br. 9; *see also* Mot. to Dismiss U.S. 11-13, ECF No. 145. Having injected these factual issues, Defendants cannot deny the United States the chance to probe them in discovery, let alone the right to discovery regarding its own allegations. *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, Amy Gardner, *Texas Counties Reject Unprecedented Numbers of Mail Ballots Ahead of March 1 Primary under Restrictive New Law*, Wash. Post, Feb. 11, 2022 (describing rejection of mail ballot applications at "historic rates").

### B. The "Card Status" Field Is Proportional to the Needs of the Case.

Defendants have failed to present any independent burden to producing the "Card Status" field. Although Defendants outline the steps involved in their prior production of database

extracts, they do not suggest that adding the "Card Status" field would have meaningfully increased the burden of production. *See* Defs.' Br. 7-8. Instead, they argue that having to produce relevant information they previously withheld would require them to "repeat th[e] extraction process." Defs.' Br. 8; Crawford Decl. ¶ 11, ECF No. 247-3. But Defendants cannot leverage their prior refusal to produce relevant information as a reason they should not be compelled to produce it. The burden Defendants now claim is self-imposed.

Even if the generalized burden of database production were properly part of the analysis, Defendants' response adds little concrete information to their vague objections. A list of technical steps required to complete the database extraction does not demonstrate how burdensome those steps were, and the only quantifiable information Defendants provide is that "the actual production extraction . . . took approximately 2.5 hours." Crawford Decl. ¶ 7. That it took Defendants "about a month" to complete production of the database, Defs.' Br. 8; Crawford Decl. ¶ 9, does not mean that production took a month's worth of resources or effort.[2] Other aspects of Defendants' argument, such as the number of database records or negotiation of the protective order since entered by this Court, *see* Order, ECF No. 162, do not bear on the burden of production at all.

Moreover, the United States will continue to take reasonable steps to alleviate the burden of production. At Defendants' insistence, an attorney of record for the United States flew from Washington to Austin on January 18 to retrieve Defendants' initial production by hand, on encrypted hard drives provided by the United States. *See* Defs.' Br. 1 (referencing the

---

[2] In fact, Defendants' first extraction of the database produced to the United States is dated January 7, 2022, substantially before the actual date of production, January 18, suggesting this process can be completed in far less time. And after Defendants confirmed that their first production of voter registration records had been substantially incomplete, Defendants exported and physically produced a new version within 48 hours.

4

"exchange[] in-person on an encrypted hard drive"). And prior to that trip, the United States agreed to an extension of over a month for the State to produce database extracts responsive to a request for production served on November 12, 2021. *See* Mot. for Protective Order, ECF No. 160. Hence, Defendants' production crossed "the Christmas and New Year's holidays," Defs. Br. 1, at their own request.[3] Thus, the "Card Status" field falls well within proportionality.

**III.     The United States Will Accept a Supplemental Production.**

Defendants argue that their initial production will be "dated to the point of uselessness" by the end of the March 2022 primary election. *See* Defs.' Opp. 10. Because Defendants must supplement their response to a request for production under Rule 26(e) if they intend to argue that the original database extracts have grown stale, the United States is willing to accept delayed production of the "Card Status" field until it may be included in a supplemental production. This would minimize any burden of production on the Defendants, most notably the burden caused by Defendants' refusal to produce the "Card Status" field in the first instance, and would be appropriate in light of Defendants' representation that the post-primary data will be meaningfully different. The United States sought to meet and confer regarding this potential resolution of the pending motion on February 10, the day after Defendants served their opposition brief. Defendants declined to accept that resolution.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to compel production of the "Card Status" field.

---

[3] Defendants' assertion that the United States "demanded additional information" on the eve of production, Defs.' Br. 1, is simpy incorrect. The United States requested the disputed fields in its initial request, on November 12, 2021. *See* U.S. 1st RFP, ECF No. 205-2. That the United States did not abandon this request does not make it "new."

Date: February 16, 2022

        KRISTEN CLARKE
        Assistant Attorney General
        Civil Rights Division

        PAMELA S. KARLAN
        Principal Deputy Assistant Attorney General
        Civil Rights Division

        */s/ Michael E. Stewart*
        T. CHRISTIAN HERREN, JR.
        RICHARD A. DELLHEIM
        DANIEL J. FREEMAN
        DANA PAIKOWSKY
        MICHAEL E. STEWART
        JENNIFER YUN
        Attorneys, Voting Section
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue NW
        Washington, DC 20530

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                      */s/ Michael E. Stewart*
                                      Michael E. Stewart
                                      Civil Rights Division
                                      U.S. Department of Justice
                                      950 Pennsylvania Ave, NW
                                      Washington, DC 20530
                                      (202) 307-2767
                                      michael.stewart3@usdoj.gov