# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| La Unión del Pueblo Entero, *et al.*,<br>　　*Plaintiffs*,<br><br>v.<br><br>Greg Abbott, *et al.*,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-844-XR |
| Houston Justice, *et al.*,<br>　　*Plaintiffs*,<br><br>v.<br><br>Greg Abbott, *et al.*,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-848-XR |

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE HOUSTON JUSTICE
PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities ...................................................................................................................... ii

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 1

    I.   The Court Lacks Jurisdiction Over Plaintiffs' Claims ................................................... 1

        A.  Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Governor. ........................................................................................................................ 3

        B.  Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Secretary of State ............................................................................................................ 4

        C.  Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Attorney General ............................................................................................................ 7

        D.  Other Exceptions to Sovereign Immunity Do Not Apply ....................................... 9

    II.  Plaintiffs' Opposition Fails to Support the Disability and Assistance Claims ............ 9

        A.  Plaintiffs Do Not Have Organizational Standing ..................................................... 9

        B.  Plaintiffs Do Not Have Associational Standing ..................................................... 10

        C.  Plaintiffs' Injuries Are Not Traceable to the State Defendants ............................ 12

        D.  Plaintiffs' Claims Fail on the Merits ........................................................................ 13

Conclusion ................................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
 851 F.3d 507 (5th Cir. 2017) ............................................................................................2

*Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
 627 F.3d 547 (5th Cir. 2017) ..........................................................................................11

*Bircoll v. Miami-Dade County*,
 480 F.3d 1072 (11th Cir. 2007) ......................................................................................13

*Black v. Panola Sch. Dist.*,
 461 F.3d 584 (5th Cir. 2006) ............................................................................................7

*Block v. Tex. Bd. of Law Examiners*,
 952 F.3d 613 (5th Cir. 2020) ............................................................................................9

*Brnovich v. DNC*,
 141 S. Ct. 2321 (2021) ....................................................................................................13

*City of Austin v. Paxton*,
 943 F.3d 993 (5th Cir. 2019) ................................................................................2, 3, 5, 8

*Cornerstone Christian Sch. v. UIL*,
 563 F.3d 127 (5th Cir. 2009) ..........................................................................................11

*Ctr. for Biological Diversity v. U.S. EPA*,
 937 F.3d 533 (5th Cir. 2019) ..........................................................................................10

*Doe v. Bailey*,
 No. 4:14-cv-2985, 2015 WL 5737666 (S.D. Tex. Sept. 30, 2015) .................................11

*Glass v. Paxton*,
 900 F.3d 233 (5th Cir. 2018) ............................................................................................2

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982) ........................................................................................................10

*Henrietta D. v. Bloomberg*,
 331 F.3d 261 (2d Cir. 2003) ...........................................................................................14

*Hunter v. Branch Banking & Tr. Co.*,
 No. 3:12-cv-2437, 2013 WL 4052411 (N.D. Tex. Aug. 12, 2013) .................................11

*In re Abbott*,
 956 F.3d 696 (5th Cir. 2020) ..................................................................................2, 3, 8

*In re State*,
 602 S.W.3d 549 (Tex. 2020) .............................................................................................8

*Lewis v. Casey*,
 518 U.S. 343 (1996) ..........................................................................................................4

*Lightbourn v. El Paso County*,
  118 F.3d 421 (5th Cir. 1997) ............................................................................................ 12

*Longoria v. Paxton*,
  No. 5:21-cv-1223, Order, ECF 53 (W.D. Tex. Feb. 11, 2022) .......................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................... 2

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) .......................................................................................... 2, 3

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ............................................................................................. 5

*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ........................................................................................... 10

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ............................................................................................. 9

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) (en banc) ......................................................................... 2, 4

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
  24 F.4th 442 (5th Cir. 2022) .............................................................................................. 4

*Shaik v. Texas A&M Univ. Coll. of Med.*,
  739 F. App'x 215 (5th Cir. 2018) ...................................................................................... 9

*Smith v. Harris County*,
  956 F.3d 311 (5th Cir. 2020) ........................................................................................... 14

*State v. Hollins*,
  607 S.W.3d 923 (Tex. App.—Houston [14th Dist.]), *rev'd*, 620 S.W.3d 400 (2020) ......... 8

*State v. Stephens*
  No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ............................ 7

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ........................................................................................................... 9

*Tex. Democratic Party v. Abbott*,
  860 F. App'x at 874 (5th Cir. 2021) (per curiam) ............................................................. 5

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .......................................................................................... 4, 5

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ....................................................................................................... 4

*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ......................................................................................................... 14

*United States v. Georgia*,
  546 U.S. 151 (2006) ........................................................................................................... 9

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................................................................. 4

**Statutes**

Texas Election Code
  § 16.0332 ............................................................................................................................ 7
  § 18.065 .............................................................................................................................. 8
  § 31.001(a) ......................................................................................................................... 5
  § 31.128 .............................................................................................................................. 8
  § 31.129 .............................................................................................................................. 8
  § 41.001 ............................................................................................................................ 13
  § 43.034 ............................................................................................................................ 14
  § 61.012 ............................................................................................................................ 14
  § 64.009 ..................................................................................................................... 13, 14
  § 81.001 ............................................................................................................................ 13
  § 82.002(a) ....................................................................................................................... 13
  § 82.005 ............................................................................................................................ 13
  § 86.001 ............................................................................................................................ 12
  § 86.002 ............................................................................................................................ 12
  § 86.006 ............................................................................................................................ 12
  § 86.007(b) ....................................................................................................................... 12
  § 86.011 ............................................................................................................................ 12
  § 87.027(i) ........................................................................................................................ 12
  § 87.041(b)(2) .................................................................................................................. 12
  § 87.061 ............................................................................................................................ 12

**Regulations**

28 C.F.R.
  § 35.130(b)(1) .................................................................................................................. 13
  § 35.150(a) ....................................................................................................................... 13

**INTRODUCTION**

The Houston Justice Plaintiffs' second amended complaint is deficient in several significant respects. The Governor, Secretary of State, and Attorney General (together, the "State Defendants") explained these deficiencies in their Motion to Dismiss. ECF 239. The responses Plaintiffs offered in their Opposition are unavailing. ECF 252. The Court should grant the State Defendants' Motion.

First, the State Defendants explained that the Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs do not identify a sufficient enforcement connection for each of the challenged SB1 provisions for purposes of *Ex parte Young*. In response, Plaintiffs make cursory and general arguments, failing to conduct the "provision-by-provision" analysis that is required under Fifth Circuit precedent. Relatedly, the State Defendants also explained that Plaintiffs lack standing to bring their claims because any action the State Defendants take with respect to SB1 does not harm them. The Houston Justice Plaintiffs fail to respond.

Second, Plaintiffs' claims under the Americans with Disabilities Act, Rehabilitation Act, and Section 208 of the Voting Rights Act fail for multiple reasons. For one thing, Plaintiffs fail to establish either organizational or associational standing. For another, even supposing Plaintiffs have sustained injuries in fact under these claims, those alleged injuries relate to mail-in-voting and voter-assistance provisions that are enforced by local election officials, not the State Defendants. And finally, Plaintiffs' disability claims fail on the merits because the second amended complaint does not plausibly allege that Texas's voting program is not readily accessible to disabled Texans.

**ARGUMENT**

**I.     The Court Lacks Jurisdiction Over Plaintiffs' Claims**

In the State Defendants' Motion to Dismiss, ECF 239 at 2–17, they explained that the Court lacks jurisdiction over the Houston Justice Plaintiffs' claims for two related reasons. First, the State Defendants simply do not enforce the provisions Plaintiffs' challenge. For that reason, they lack the

requisite "enforcement connection with the challenged statute." *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)). This requires, at a minimum, that the relevant state official have the power to "compel" or "constrain" others in the enforcement of the challenged law. *City of Austin v. Paxton*, 943 F.3d 993, 1000–02 (5th Cir. 2019). In addition, "the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* at 999 (quoting *Okpalobi*, 244 F.3d at 416).

Second, the Houston Justice Plaintiffs lack standing to bring their claims because any actions the State Defendants take with respect to SB1 do not actually harm them. As such, any alleged injuries Plaintiffs have sustained are neither caused by the State Defendants nor redressable by an injunction directed at the State Defendants. These considerations are related because the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 997 (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)).

As an initial matter, Plaintiffs do not respond to the State Defendants' argument that they lack standing to pursue their claims. As the State Defendants previously explained, *see* ECF 239 at 6–14 (as to the Secretary of State); *id.* at 14–17 (as to the Attorney General), the second amended complaint does not identify any action the Secretary of State or Attorney General is required to take regarding SB1 that actually injures any of the Houston Justice Plaintiffs. The corresponding section in Plaintiffs' Opposition is silent on injury, causation, and redressability. *See* ECF 252 at 5–13. This omission is especially glaring because, as the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *See, e.g., Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Absent any contrary explanation from the Houston Justice Plaintiffs, their claims should be dismissed because they fail to explain how any injuries they may have

2

sustained are caused by the State Defendants, and how injunctive relief directed at those officials could remedy those alleged injuries.

In addition, Plaintiffs purport to identify sufficient enforcement connections for the State Defendants, but these are unavailing. In each case, the Governor, Secretary of State, and Attorney General either (1) do not do the things Plaintiffs think they do, or (2) take actions that do not constitute enforcement under binding precedent.

### A. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Governor

The Governor has no role in enforcing SB1, and nothing in the Houston Justice Plaintiffs' opposition is to the contrary. This means two things. First, Plaintiffs cannot rely on the *Ex parte Young* exception to sovereign immunity because it "allows injunctive or declaratory relief against a state official in her official capacity," only if "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota*, 977 F.3d at 467 (citing *In re Abbott*, 956 F.3d at 708). Second, Plaintiffs lack standing to sue the Governor because nothing he does harms them, or could harm them in the future. As the State Defendants explained in their Motion, *see* ECF 239 at 2–3, a state official "is not a proper defendant" if enjoining him or her from performing the applicable statutory duty would not "afford the Plaintiffs the relief they seek." *Mi Familia Vota*, 977 F.3d at 467. In that situation, even assuming the plaintiffs sustained an injury in fact, the State Defendants did not *cause* those injuries, and thus enjoining those officials will not *redress* their injuries. *See City of Austin*, 943 F.3d at 1002 (plaintiffs lack standing unless there is "a significant possibility that [the state official] will act to harm a plaintiff.").

In response, the Houston Justice Plaintiffs assert that they can overcome sovereign immunity because that the Governor is named only in the causes of action brought under the VRA, which they contend abrogates sovereign immunity. *See* ECF 252 at 1, 7. As explained in the Motion to Dismiss, *see* ECF 239 at 17, that is wrong. But even assuming the VRA does abrogate state sovereign immunity,

Plaintiffs still lack standing unless they plausibly allege that the Governor has taken some action that harms them. *See Okpalobi*, 244 F.3d at 419 (A state official is an improper defendant unless he has "some enforcement power" and has committed some "act that can be enjoined.")

The Houston Justice Plaintiffs fail to respond to this point. Instead, they pivot away from the Governor, arguing that "[i]n these counts, the Governor stands in for the State itself." ECF 252 at 1. This argument is meritless for several reasons. First, it does nothing to identify what action the Governor has taken that would grant the Houston Justice Plaintiffs standing to sue him. Second, it does not explain why Plaintiffs failed to name "The State of Texas" if they now believe it is a proper party. And even they had named the State, that too would have been futile because nothing in the second amended complaint alleges that the State of Texas in its sovereign capacity has done anything that harms the Houston Justice Plaintiffs. Nor can Plaintiffs sue the State under Section 1983 because it is not a "person" under that statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

The Governor does not belong in this lawsuit. The claims against him should be dismissed.

### B. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Secretary of State

The Supreme Court recently reiterated that "standing is not dispensed in gross." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)); *accord, e.g.*, *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442 (5th Cir. 2022) (quoting *Lewis*, 518 U.S. at 358 n.6). For this reason, "a plaintiff must demonstrate standing for *each claim* he seeks to press and for each form of relief that is sought." *Town of Chester*, 137 S. Ct. at 1650 (emphasis added) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). The same is true for purposes of sovereign immunity. The Fifth Circuit explains that "[d]etermining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis, *i.e.*, the official must have the requisite connection to the enforcement of the *particular statutory provision* that is the subject of the litigation." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (emphasis added).

4

Following these binding principles, the State Defendants addressed the SB1 sections Plaintiffs challenge as to the Secretary of State, and analyzed them provision by provision. *See* ECF 239 at 4–14. For each provision, the Motion to Dismiss explains why the Secretary either does not enforce the section at issue or that any enforcement role the Secretary does play does not actually cause the injury of which Plaintiffs are complaining. In response, the Houston Justice Plaintiffs choose not to address each challenged provision. *See* ECF 252 at 7–10. Instead, they raise a series of arguments designed to apply to broad categories of provisions. As a preliminary matter, this approach inappropriately treats sovereign immunity and standing as if they were dispended "in gross," which they are not. *Lewis*, 518 U.S. at 358 n.6. But even on their own terms, these general arguments fail.

First, Plaintiffs recycle their argument regarding the Secretary's authority based on his status as the State's "chief election officer." Tex. Elec. Code § 31.001(a). They point to this and other general statutory duties, *see* ECF 252 at 7–8, arguing that these render the Secretary a proper defendant as to each of the specific SB1 provisions they challenge. But Plaintiffs fail to respond to the points the State Defendants made precisely on this point. As explained previously, "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party*, 961 F.3d at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Rather, Plaintiffs "must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Abbott*, 860 F. App'x at 874, 877 (5th Cir. 2021) (per curiam). The Secretary of State's status as the chief election officer does not make him a proper defendant any lawsuit relating to the Election Code.

Second, ECF 252 at 8, Plaintiffs assert that the Secretary's authority to refer reported violations to the Attorney General is an omnibus power to enforce election laws. But again, they fail to respond to the arguments the State Defendants made in their Motion to Dismiss. The Fifth Circuit is clear that "enforcement" requires "compulsion" or "constraint." *City of Austin*, 943 F.3d at 1002. But referrals, by their very nature, do not compel or constrain anyone. And as before, the Houston Justice Plaintiffs

5

do not contend that they would be harmed by a mere referral or that such a referral would violate federal law. Any potential injury would necessarily be tied to the *Attorney General's* bringing of an enforcement action, which is not the *Secretary's* role. Finally, though Plaintiffs acknowledge that the Secretary's power is discretionary, they allege no facts that demonstrate "a significant possibility" that the Secretary will in fact harm them. *City of Austin*, 943 F.3d at 1002.[1]

Third, Plaintiffs stress the Secretary's responsibility to design various forms concerning mail-in voting and voter assistance, *see* ECF 252 at 6, 8–9, but their Opposition is conspicuously silent on how the act of designing a form harms them. As the State Defendants explained in their Motion, *see* ECF 239 at 9–10, 12–13, the substantive provisions of SB1 must be enforced by local election officials regardless of whether the Secretary promulgates forms or training videos. As such, the substance of Plaintiffs' complaint lies with local election officials, not the Secretary of State. Nowhere in the second amended complaint do Plaintiffs allege that the designing of a form injures them.[2]

Also, in two sentences, Plaintiffs attempt to address the Secretary's role in maintaining accurate voter rolls under SB1 § 2. *See* ECF 252 at 8. But they fail to respond to the State Defendants' Motion, which explains that the local voter registrars are charged with responsibility for updating voter rolls, and removing residents who are no longer eligible. *See* ECF 239 at 6. The Secretary's role is limited to providing information to the counties that he obtains from the Department of Public Safety. *See* Tex.

---

[1] Plaintiffs cite three news articles to support their contention that the Secretary of State is "willing[] to exercise his new authorities." ECF 252 at 10. For one thing, none of these articles are cited in the second amended complaint. Defects in the complaint cannot be cured by legal argument, much less hearsay contained in newspaper articles. For another, the argument is an improper generalization. To satisfy *Ex parte Young*, Plaintiffs must plead specific facts showing a "demonstrated willingness" to enforce the particular challenged provision. *Tex. Democratic Party*, 978 F.3d at 168. The articles Plaintiffs cite reference only general statements the Secretary has made about the implementation of SB1. They say nothing about whether the Secretary is likely to take any particular action with respect to the Plaintiffs.

[2] The same logic extends to Plaintiffs arguments regarding the Secretary's authority to promulgate regulations related to several provisions of the Election Code. *See* ECF 252 at 9–10. Authority to issue regulations is not the same thing as the obligation to implement state law. *See* ECF 239 at 12–13. Any injury the Houston Justice Plaintiffs have allegedly sustained is caused by local election officials' enforcement of SB1, not the Secretary of State's potential promulgation of voting regulations.

Elec. Code § 16.0332. Plaintiffs also fail to respond to the State Defendants' argument that Plaintiffs are not injured by the Secretary provision of information to the counties.

### C.   Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Attorney General

The Houston Justice Plaintiffs also cannot satisfy *Ex parte Young* for their claims against the Attorney General. As an initial matter, Plaintiffs appear to abandon their claims as to SB1 Sections 4.06, 5.15, 6.01, 6.04, 6.05, 7.02, and 7.04. As the State Defendants explained in their Motion, *see* ECF 239 at 14–17, the Attorney General does not enforce those provisions. Plaintiffs do not mention these provisions in the section of their Opposition addressing the Attorney General. *See* ECF 252 at 11–13. The failure to respond constitutes abandonment of those claims. *See, e.g.*, *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding plaintiff abandoned claim when she failed to defend claim in response to a motion to dismiss).

Nor can Plaintiffs defend their claims with respect to the remaining challenged provisions (SB1 Sections 2.06, 2.08, 4.11, 8.01). Previously, *see* ECF 239 at 15–16, the State Defendants explained that in *State v. Stephens*, the Texas Court of Criminal Appeals held that Texas Election Code § 273.021 "is unconstitutional" and that the Attorney General "cannot initiate prosecution" of election cases "unilaterally." No. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). This Court has already held in *Longoria* that "the delegation of prosecutorial authority in Section 273.021 can no longer satisfy *Ex parte Young*'s 'sufficient connection' requirement in light of *Stephens*." *Longoria v. Paxton*, No. 5:21-cv-1223, Order, ECF 53 at 22 (W.D. Tex. Feb. 11, 2022) ("Order"). To the extent Plaintiffs argue to the contrary, that argument fails.

The Houston Justice Plaintiffs also cannot establish the requisite enforcement connection to the Attorney General by observing that he may still be invited by local officials to prosecute election cases. *See* ECF 252 at 11. It is one thing to note that the Attorney General has statutory authority to accept a prosecution invitation from a district attorney. It is quite another to allege specific facts

showing that that the Attorney General is likely to do so in a case involving one of the Houston Justice Plaintiffs. *See City of Austin*, 943 F.3d at 1002 (explaining that just because the Attorney General has "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here."). What is more, Plaintiffs concede that the Fifth Circuit has rejected the argument that invitations from local prosecutors can satisfy *Ex parte Young*. ECF 252 at 11 (citing *In re Abbott*, 956 F.3d at 709). Nor could they reasonably argue to the contrary; the Fifth Circuit in *In re Abbott* was unequivocal: "Speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing GA-09, is inadequate to support an *Ex parte Young* action" against him. 956 F.3d at 709 (internal citations omitted). Plaintiffs' only defense is that *In re Abbott* was later vacated as moot, *see* 141 S. Ct. 1261 (2021). But that vacatur had nothing to do with the Court's holding with respect to sovereign immunity, and did not call into question the logic underlying the decision.

The Houston Justice Plaintiffs' last suggested enforcement connection is the SB1 provisions authorizing the Attorney General to seek civil penalties against noncompliant counties or officials. *See* ECF 252 at 12 (citing Tex. Elec. Code §§ 18.065, 31.128, 31.129). To be sure, in *Longoria*, the Court found that these provisions satisfied *Ex parte Young* with respect to the SB1's prohibition on election officials from soliciting vote-by-mail applications.³ Order at 22–25. But it did so only by citing several previous instances where the Attorney General sought to enforce more closely-related provisions. *See id.* at 23–24 (citing *In re State*, 602 S.W.3d 549 (Tex. 2020) and *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14th Dist.]), *rev'd*, 620 S.W.3d 400 (2020)). The difference here is that the Houston Justice Plaintiffs challenge dozens of SB1 provisions, not just the prohibition on election officials of soliciting vote-by-mail applications. In order to challenge *each provision*, Plaintiffs are required to

---

³ The State Defendants respectfully disagree with that holding, and maintain their position that Plaintiffs cannot satisfy *Ex parte Young* by reference to the prohibition on soliciting vote-by-mail applications. But in the alternative, the logic of the Court's holding would still not extend to other SB1 provisions.

8

demonstrate that it is likely the Attorney General will enforce each provision through the civil-penalty provisions. Relying exclusively on *State v. Hollins* inappropriately generalizes the issue. ECF 252 at 12.

D. **Other Exceptions to Sovereign Immunity Do Not Apply**

As explained above, the *Ex parte Young* exception to sovereign immunity does not apply to the Houston Justice Plaintiffs' claims. Nor do any other exceptions apply. Plaintiffs implicitly agree that 42 U.S.C. § 1983 does not abrogate sovereign immunity. *See* ECF 252 at 5. In addition, the ADA does not abrogate sovereign immunity unless the plaintiff demonstrates a violation of Title II. *See Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). As explained below, the Houston Justice Plaintiffs have not done so.[4] Finally, even though this Count is bound by *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), the State Defendants respectfully maintain that neither Section 2 nor Section 208 of the Voting Rights Act abrogates state sovereign immunity.

II. **Plaintiffs' Opposition Fails to Support the Disability and Assistance Claims**

A. **Plaintiffs Do Not Have Organizational Standing**

In the Motion to Dismiss, the State Defendants explained that Delta Sigma Theta and Mi Familia Vota lack standing to assert their Section 208 claims because they do not identify a single member who is disabled or who would require voting assistance. *See* ECF 239 at 18–19. Plaintiffs concede this point in response, instead pivoting to argue that DST and Mi Familia Vota rely exclusively on organizational standing. *See* ECF 252 at 14. They argue that DST, Mi Familia Vota, and the Arc of Texas have sustained organizational injuries sufficiency to confer Article III standing. That is incorrect.

---

[4] As Plaintiffs' Opposition highlights, *see* ECF 252 at 3–4, sovereign immunity would apply even if Plaintiffs could state a claim under Title II. Plaintiffs cite *Tennessee v. Lane*, 541 U.S. 509 (2004), for the proposition that the ADA abrogates sovereign immunity for disability claims in voting cases even if there is no independent violation of the Fourteenth Amendment. *See* ECF 252 at 4. But the language Plaintiffs cite is *dicta* and falls well short of the holding that Plaintiffs purport it is. Indeed, the Fifth Circuit has since held that *Lane* applies only to cases involving "access to the court." *Shaik v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 224–25 (5th Cir. 2018) (per curiam).

9

Plaintiffs base their organizational-standing argument on a diversion-of-resources theory. That is, they allege that they will expend resources litigating SB1 and educating the public regarding changes in voting law. *See* ECF 199 ¶¶ 48, 57, 64; *see also* ECF 252 at 14 (citing Plaintiffs' complaint). But they commit the error of assuming that *any* diversion of resources is sufficient. To the contrary, the Fifth Circuit is clear that "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact." *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). An organization sustains an injury for purposes of Article III only where the diversion of resources "concretely and 'perceptibly impair[s]' the [organization's] ability to carry out its purpose." *Id.* at 239 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). It is not enough for the challenged law to constitute a "setback to the organization's abstract social interests." *Id.* (quoting *Havens*, 455 U.S. at 379).

The Houston Justice Plaintiffs cannot rely on a diversion-of-resources theory to demonstrate organizational standing because nothing about SB1 *causes* them to divert resources or actually impairs their activities. Plaintiffs' complaint says nothing about specific projects they had to omit or concrete legal obstacles to conducting their activities. *See id.* ("Furthermore, Plaintiffs have not identified any specific projects that the [organizational plaintiff] had to put on hold or otherwise curtail in order to respond to the revised ordinances."). Rather, the Houston Justice Plaintiffs have diverted resources to oppose SB1 because it is inconsistent with their legislative preferences. That is a strategic decision to advocate for a particular social interest, not an injury in fact caused by SB1.

### B. Plaintiffs Do Not Have Associational Standing

Plaintiffs' Opposition also fails to address the flaws in their theory of associational standing. As pertinent here, an entity plaintiff has standing only if "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). Whether a claim requires the participation of individual members turns

10

on "the claim's substance," including whether it has an "individualized element." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009).

The State Defendants previously explained that Plaintiffs' disability claims require individual-member participation because they implicate Texans with different disabilities, who in turn may need different forms of relief. *See* ECF 239 at 19–21. The diversity of the alleged disabilities—quadriplegia, cerebral palsy, muscular dystrophy, respiratory failure, and intellectual and developmental disability, *see* ECF 199 ¶¶ 58–61—requires individual participation. To be sure, a plaintiff can satisfy associational standing if "claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." *Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2017). But the injured members listed in the Houston Justice Plaintiffs' second amended complaint *are not representative* of The Arc of Texas's members, or of disabled Texans as a whole. The result might be different if each member shared the same or similar disabilities. But they do not, and as a result Plaintiffs cannot maintain associational standing. *Compare Doe v. Bailey*, No. 4:14-cv-2985, 2015 WL 5737666, at *5 (S.D. Tex. Sept. 30, 2015) (ADA plaintiffs had different physical conditions, finding no associational standing), *with Hunter v. Branch Banking & Tr. Co.*, No. 3:12-cv-2437, 2013 WL 4052411 at *6–8 (N.D. Tex. Aug. 12, 2013) (ADA plaintiffs had same underlying physical conditions, finding associational standing).

Plaintiffs' only response to the issue concerning individual participation is to argue that SB1 imposes "systemic" harm to disabled Texans. ECF 252 at 15. But repeating this buzzword, *see id.* at 16, 18, 19 n.12, 22, 23, does not change the fact that Plaintiffs' alleged disability injuries are different in significant respects. In fact, Plaintiffs admit that "the disabilities of the affected individuals vary." *Id.* at 19. Notwithstanding that admission, Plaintiffs argue that SB1 "imposes uniform harm" simply because multiple disabled voters have allegedly been harmed. *Id.* But that argument confuses uniform

11

harm with harm experienced by multiple people in different ways. The latter is what Plaintiffs allege, and it does not support associational standing.

### C. Plaintiffs' Injuries Are Not Traceable to the State Defendants

As the State Defendants previously explained, *see* ECF 239 at 21–22, even supposing Plaintiffs had plausibly alleged a disability injury, which they have not, it is not traceable to the State Defendants. Plaintiffs' alleged injuries are based on the theory that SB1 provisions regarding voter identification and voter assistance unlawfully restrict disabled persons' access to voting. But local election officials are the ones who enforce these substantive provisions, not the State Defendants.

As explained before, these officials receive and review ballot applications, *see* Tex. Elec. Code § 86.001; mail carrier and ballot envelopes to voters, *id.* § 86.002; receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011; verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2); and count the results, *id.* § 87.061. Even after Plaintiffs' Opposition, it is unclear what the Houston Justice Plaintiffs think the State Defendants do that they wish to be enjoined. *See* ECF 252 at 23 ("Plaintiffs ask only that the Court enjoin State Defendants from implementing discriminatory voting policies."). Conclusory legal assertions aside, the only specific action Plaintiffs allege is that the Secretary of State implements "the use of forms limiting the type of assistance a voter with a disability can receive and affirmatively demanding voter ID information from voters with disabilities." *Id.* But election officials would be obligated to follow SB1's requirements even in the absence of a form. Enjoining the Secretary from implanting a form would do nothing to give Plaintiffs the relief they seek.

Plaintiffs' real complaint, if any, lies with local election officials. And at bottom, Plaintiffs' theory implies that the State Defendants are responsible for ensuring those officials comply with the ADA and Rehabilitation Act. But they are not. *See Lightbourn v. El Paso County*, 118 F.3d 421, 423–24, 429 (5th Cir. 1997). The Houston Justice Plaintiffs lack standing on this basis as well.

### D. Plaintiffs' Claims Fail on the Merits

Finally, even if Plaintiffs had standing to pursue their disability claims, those claims fail on the merits for two reasons. First, as the State Defendants previously explained, *see* ECF 239 at 22–23, the Houston Justice Plaintiffs have not stated a claim from which relief can be granted because they have not—and cannot—allege that elections are not "readily accessible" to disabled Texans. 28 C.F.R. § 35.150(a). To reiterate, Texas law offers ample opportunities to disabled voters. Among others, they may vote in a polling place during early voting, *see* Tex. Elec. Code §§ 41.001, 82.005; vote at the curbside during early voting, *id.* § 64.009; vote in a polling place on Election Day, *id.* § 81.001; vote at the curbside on Election Day, *id.* § 64.009; or vote by mail, *id.* § 82.002(a). Plaintiffs dispute none of this. Instead, they argue that the meaningful access afforded to disabled voters is irrelevant, and that the ADA and Rehabilitation Act require individual voting methods to be considered in isolation from the State's overall voting scheme. *See* ECF 252 at 20–22. They do not.

The ADA and Rehabilitation Act do not entitle the Houston Justice Plaintiffs to demand that the State Defendants offer "any and all means" of voting opportunity. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (11th Cir. 2007). Nor does it prescribe any particular accommodation so long as each individual has "an opportunity to participate in and benefit from the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1). Relatedly, any alleged burdens disabled voters have must be viewed in light of the other opportunities they possess. *See Brnovich v. DNC*, 141 S. Ct. 2321, 2339 (2021) ("[C]ourts must consider the opportunities provided by a State's entire system of voting when assessing the burden imposed by a challenged provision."). Plaintiffs overlook these basic principles.

In short, the Houston Justice Plaintiffs misunderstand the ADA and Rehabilitation Act. They accuse the State Defendants of "saying that a ramp to access a building is a sufficient reasonable modification for a deaf individual who requires a sign language interpreter." ECF 252 at 22. But they do not deny that Texas law provides Texans of all disabilities access to the accommodations they need

13

in order to vote. The better analogy would be to say that Texas law allows a deaf individual access to a sign language interpreter, but that Plaintiffs also seek accommodations on top of those which are already sufficient to make voting readily accessible.[5]

Second, the State Defendants also explained that the second amended complaint fails to allege that SB1 "fail[s] to make reasonable accommodations" in voting." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020); *see* ECF 239 at 23–24. Nor could it. SB1 expressly guarantees disabled voters the right to request a reasonable accommodation or modification. *See* Tex. Elec. Code § 1.022. And Texas law elsewhere provides ample accommodations. *See, e.g.*, *id.* §§ 43.034, 61.012, 64.009. As previously stated, the law requires *reasonable* accommodations, not preferred accommodations. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003). SB1 complies with that obligation.

The Houston Justice Plaintiffs' only defense is to reframe their allegations in terms they think are more favorable. They insist, ECF 252 at 22, that SB1 "inflict[s] systemic harm on large groups of people," and that the "systemic harms cannot be remedied on a case-by-case basis." *Id.* at 23. But this argument is at odds with Plaintiffs' assertion of associational standing. The whole point of that form of standing is that the association can bring a claim on behalf of particular members who suffered particular injuries. *See United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996) ("The modern doctrine of associational standing" allows an organization to "sue to redress *its members' injuries*.") (emphasis added). As such, Plaintiffs' claims pertain to individual persons and (if at all) require individual accommodations. Plaintiffs' have not sought class certification, *see* Fed. R. Civ. P. 23, or provided any other reason why its associational claims should be given broader effect.

---

[5] In fact, Plaintiffs concede that the question presented is whether the State's laws provide disabled voters meaningful access to voting in general, not whether the State affords disabled voters their preferred accommodations. *See* ECF 252 at 23 (framing their allegations as contending that the "State Defendants have excluded people with disabilities and denied meaningful access *to the state's voting program*.") (emphasis added) (citing ECF 199 ¶¶ 217, 233–38, 337–65).

14

## CONCLUSION

The State Defendants respectfully request that the Court grant their Motion and dismiss the claims asserted by the Houston Justice Plaintiffs.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

LEIF A. OLSON
Special Counsel, Special Litigation Unit
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 18, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN