# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| OCA-GREATER HOUSTON, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| HOUSTON JUSTICE, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| LULAC TEXAS, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOHN SCOTT, et al. | § | |
| | § | |
| *Defendants.* | § | |

MI FAMILIA VOTA, et al.                    §
                                           §
*Plaintiffs,*                              §
                                           §
vs.                                        §        Case No. 5:21-CV-0920-XR
                                           §
GREG ABBOTT, et al.                        §
                                           §
*Defendants.*                              §
                                           §

_____

UNITED STATES OF AMERICA                   §
                                           §
*Plaintiff,*                               §
                                           §
vs.                                        §        Case No. 5:21-CV-01085-XR
                                           §
STATE OF TEXAS, et al.,                    §
                                           §
*Defendants.*                              §
                                           §

## **LULAC PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF LULAC TEXAS, ET AL.**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    Sovereign immunity does not bar Plaintiffs' claims. ............................................. 2

II.    Plaintiffs have standing. ........................................................................................ 3

    A.    Plaintiffs have associational standing. ...................................................... 4

    B.    Plaintiffs have organizational standing. ................................................... 11

    C.    Plaintiffs have statutory standing to bring their Section 1983 claims. ................... 14

III.    Private plaintiffs may enforce the VRA ............................................................... 14

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. State Board of Elections,*
393 U.S. 544 (1969)............................................................................................15

*APFA Inc. v. UATP Mgmt. LLC,*
No. 4:21-cv-00108-O, 2021 WL 1814695 (N.D. Tex. May 6, 2021)......................9

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,*
No. 4:21-CV-01239-LPR, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022) ...............14

*Ark. United v. Thurston,*
517 F. Supp. 3d 777 (W.D. Ark. 2021)................................................................16

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
627 F.3d 547 (5th Cir. 2010) ...............................................................................14

*Brnovich v. Democratic Nat'l Comm.,*
141 S. Ct. 2321 (2021)........................................................................................15

*Chisom v. Roemer,*
501 U.S. 380 (1991)............................................................................................15

*Church of Scientology of Cal. v. Cazares,*
638 F.2d 1272 (5th Cir. 1972) .............................................................................14

*City of Austin v. Abbott,*
385 F. Supp. 3d 537 (W.D. Tex. 2019)..................................................................8

*City of Boerne v. Flores,*
521 U.S. 507 (1997)............................................................................................16

*Clapper v. Amnesty Intern. USA,*
568 U.S. 398 (2013).............................................................................................7

*Democracy N.C. v. N.C. State Bd. of Elections,*
476 F. Supp. 3d 158 (M.D.N.C. 2020) ................................................................16

*Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors,*
522 F.3d 796 (7th Cir. 2008) ................................................................................9

*Draper v. Healey,*
827 F.3d 1 (1st Cir. 2016).....................................................................................9

i

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
    695 F.3d 330 (5th Cir. 2012) ..................................................................5

*Fusilier v. Landry,*
    963 F.3d 447 (5th Cir. 2020) ..................................................................2

*Ga. Coal. for People's Agenda, Inc. v. Kemp,*
    347 F. Supp. 3d 1251 (N.D. Ga. 2018)..................................................14

*Hancock Cnty. Bd. of Supervisors v. Ruhr,*
    487 F. App'x 189 (5th Cir. 2012) ...........................................................9

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977)................................................................................5

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs,*
    749 F. Supp. 2d 486 (N.D. Tex. 2010) .................................................14

*Johnson v. De Grandy,*
    512 U.S. 997 (1994)..............................................................................15

*Katzenbach v. Morgan,*
    384 U.S. 641 (1966)..............................................................................16

*La. ACORN Fair Hous. v. LeBlanc,*
    211 F.3d 298 (5th Cir. 2008) ................................................................13

*Lewis v. Hughs,*
    475 F. Supp. 3d 597 (W.D. Tex. 2020).......................................... *passim*

*LULAC v. City of Boerne,*
    675 F.3d 433 (5th Cir. 2012) ................................................................15

*LULAC v. Perry,*
    548 U.S. 399 (2006)........................................................................15, 17

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ...........................................1, 2, 15, 17

*Morse v. Republican Party of Va.,*
    517 U.S. 186 (1996)..............................................................................15

*Nat'l Taxpayers Union v. United States,*
    68 F.3d 1428 (D.C. Cir. 1995) .............................................................13

*NiGen Biotech LLC v. Paxton,*
    804 F.3d 389 (5th Cir. 2015) ..................................................................8

ii

*OCA-Greater Hous. v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ................................................................... *passim*

*Prison Just. League v. Bailey*,
  697 F. App'x 362 (5th Cir. 2017) (per curiam) ....................................10

*Roberts v. Wamser*,
  883 F.2d 617 (8th Cir. 1989) ..................................................................14

*State v. Stephens*,
  No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App Dec. 15, 2021) ...................................7

*Stevens v. Univ. Vill. Assisted Living & Memory Care*,
  No. A-17-CV-543-LY, 2017 WL 6065286 (W.D. Tex. Dec. 7, 2017) ................................3, 6

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009)..................................................................................9

*Tex. All. for Retired Ams. v. Hughs*,
  489 F. Supp. 3d 667 (S.D. Tex. Sept. 25, 2020)....................................9, 17

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ...................................................................2

*Tex. Indigenous Council v. Simpkins*,
  Civ. Action No. SA-11-CV-315-XR, 2014 WL 252024 (W.D. Tex. Jan. 22, 2014) (Rodriguez, J.) ...................................................................5

*Veasey v. Abbott*,
  13 F. 4th 362 (5th Cir. 2021) ................................................................17

*Vote.org v. Callanen*,
  No. SA-21-CV-00649-JKP-HJB, slip op. (W.D. Tex. Oct. 27, 2021) ...........11, 13

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
  No. 4:20-CV-973-SDJ, 2021 WL 5003274 (E.D. Tex. Oct. 28, 2021) ....................................9

**Statutes**

42 U.S.C. § 1983..........................................................................................14

52 U.S.C. § 10302(a) ...................................................................................15

52 U.S.C. § 10302(c) ...................................................................................15

52 U.S.C. § 10310(e) ...................................................................................15

52 U.S.C. § 10508.................................................................................10, 11

Tex. C.C.P. Art. 12.01(8)........................................................................................8

Tex. C.C.P. Art. 12.02(a)-(b)....................................................................................8

Tex. Elec. Code § 31.008(2)......................................................................................7

**Other Authorities**

Rule 12(b)(1)............................................................................................................9

TO THE HONORABLE XAVIER RODRIGUEZ

Plaintiffs LULAC Texas ("LULAC"), Voto Latino, Texas Alliance for Retired Americans ("TARA"), and Texas AFT ("AFT" and, collectively, "Plaintiffs"), by and through their undersigned counsel, file this response to Secretary of State John Scott (the "Secretary") and Attorney General Ken Paxton's (the "Attorney General," and together, the "State Defendants") Motion to Dismiss the Second Amended Complaint.

## INTRODUCTION

The State Defendants' Motion to Dismiss the Second Amended Complaint flies in the face of controlling precedent and misrepresents Plaintiffs' allegations at every turn. At the threshold, the Secretary and Attorney General attempt to invoke sovereign immunity from this suit, despite the fact that Plaintiffs have named the Secretary and Attorney General as Defendants in their Voting Rights Act claims only; and it is settled law that "[t]here is no sovereign immunity with respect to the Voting Rights Act claims." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020).

The State Defendants' objection to Plaintiffs' standing fares no better. Each Plaintiff has alleged that SB 1 forces them to divert resources from various projects toward assisting voters to navigate SB 1's restrictions and educating their members and constituents about new laws that plainly interfere with their organizational missions. While that is enough to establish organizational standing under binding Fifth Circuit precedent, Plaintiffs have also established associational standing because they have members who would have standing to sue in their own

right, they are seeking to protect an interest—the right to vote—that is germane to their organizational missions, and their claims do not require the participation of individual members.

Finally, the State Defendants ask this Court to ignore Supreme Court precedent and hold that private plaintiffs cannot enforce Sections 2 and 208 of the VRA. That argument is irreconcilable with the text and purpose of the Act, and has been rejected by nearly every court to consider it. The Court should deny the motion.

## ARGUMENT

### I.     Sovereign immunity does not bar Plaintiffs' claims.

The State Defendants seek dismissal of Plaintiffs' claims against the Secretary and Attorney General on sovereign immunity grounds. But sovereign immunity cannot be invoked if it is "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). Such is the case here: the VRA, "which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). For this reason, the Fifth Circuit has repeatedly held, including in cases where the Secretary has similarly attempted to assert sovereign immunity, "[t]here is no sovereign immunity with respect to [] Voting Rights Act claims." *Mi Familia Vota*, 977 F.3d at 469; *see also Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020); *OCA-Greater Hous.*, 867 F.3d at 614.

The State Defendants concede that Fifth Circuit precedent forecloses their sovereign immunity defense for Plaintiffs' VRA claims. *See* Mot. to Dismiss Second Am. Compl. of LULAC Tex., et al. (hereinafter "Mot.") at 8, ECF No. 243. But rather than accept what is now settled law, they insist that those cases were "wrongly decided," citing a *dissenting opinion from another circuit* for support. *Id.* (citing *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir.

2

2020) (Branch, J., dissenting)). This Court, however, "is bound to apply the holdings of the Fifth Circuit," and is plainly "not bound" even "by decisions"—let alone *dissents*—"from . . . other circuits." *Stevens v. Univ. Vill. Assisted Living & Memory Care*, No. A-17-CV-543-LY, 2017 WL 6065286, at *3 (W.D. Tex. Dec. 7, 2017). The Fifth Circuit's rulings make emphatically clear that the Secretary and Attorney General enjoy no sovereign immunity from Plaintiffs' VRA claims. Indeed, the State Defendants are unable to point to a single affirmative opinion from *any* circuit that supports such an argument because no such case exists.

Plaintiffs named the Secretary and Attorney General as defendants in their VRA claims, only (Counts I and IV). *See* Second Am. Compl. ("SAC") at 52, 60, ECF No. 207. Because "[s]overeign immunity has no role to play" in such claims, *OCA-Greater Hous.*, 867 F.3d at 614, the State Defendants' extensive discussion of whether the *Ex parte Young* exception to sovereign immunity applies to the Secretary and Attorney General is irrelevant. *See* Mot. at 2–10. The State Defendants are not immune from Counts I and IV and therefore cannot be dismissed from this litigation on sovereign immunity grounds.

## II. Plaintiffs have standing.

The State Defendants contest Plaintiffs' standing, Mot. at 10–20, but largely ignore allegations in the Complaint, which plainly allege injuries that are traceable to and redressable by Defendants under controlling Fifth Circuit precedent.

"An association or organization can establish an injury-in-fact through either of two theories, appropriately called 'associational standing' and 'organizational standing.'" *OCA-Greater Hous.*, 867 F.3d at 610. Associational standing "is derivative of the standing of the association's members, requiring that . . . the interests the organization seeks to protect be germane to its purpose." *Id.* Organizational standing, by contrast, "does not depend on the standing of the

organization's members." *Id.* An organizational plaintiff "can establish standing in its own name if it meets the same standing test that applies to individuals." *Id.* (citing *ACORN v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999)). Plaintiffs satisfy both theories.

### A. Plaintiffs have associational standing.

Plaintiffs LULAC, TARA, and AFT have associational standing because they each have members whose right to vote is unlawfully burdened by SB 1.[1] The governing Second Amended Complaint alleges that LULAC "has more than 8,000 members across Texas, including registered voters," SAC ¶ 20; that TARA has "145,038 members, composed of retirees from public and private sector unions, community organizations, and individual activists," *Id.* ¶ 23; and that AFT "represents over 66,000 employees throughout Texas, including teachers, librarians, counselors, nurses, teaching assistants, and other public school employees." *Id.* ¶ 25. The governing complaint further alleges that SB 1 will unlawfully infringe upon the voting rights of each of these organizational plaintiffs' members. *Id.* ¶¶ 20, 24–25. Another federal court in this district recently held that virtually identical allegations were sufficient to support associational standing for TARA and other organizations. *Lewis v. Hughs*, 475 F. Supp. 3d 597, 613 (W.D. Tex. 2020).

The State Defendants contend that these allegations are insufficient because while "Plaintiffs claim to have members in the colloquial sense," they fail to show that these individuals "possess all of the indicia of membership." Mot. at 14 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977)). According to the State Defendants, *Hunt* requires Plaintiffs to show that their members "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Id.* (quoting *Tex. Indigenous Council v. Simpkins*, Civ. Action No. SA-11-CV-315-XR, 2014 WL 252024, at *3

---

[1] Plaintiff Voto Latino asserts only organizational standing at this time.

4

(W.D. Tex. Jan. 22, 2014) (Rodriguez, J.)). That is not the law. As this Court noted in *Simpkins*, the "indicia of membership" test from *Hunt* applies only "when an 'association seeking standing *does not have traditional members*'" but nonetheless seeks to bring suit on behalf of individuals whose interests it purports to represent. *Simpkins*, 2014 WL 252024, at *3 (emphasis added) (quoting *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012)).[2]

Where, as here, an organizational plaintiff *does* have "traditional voluntary membership," the relevant inquiry is (1) whether these members "have standing to sue in their own right," (2) whether the interests plaintiff seeks to protect "are germane to the organization's purpose," and (3) whether the claim "requires the participation of individual members in the lawsuit." *Funeral Consumers All.*, 695 F.3d at 344 (quoting *Hunt*, 432 U.S. at 343).[3]

The State Defendants do not argue that Plaintiffs' members lack an injury but rather that any injury is "neither traceable to the State Defendants nor redressable by this Court." Mot. at 11. Specifically, they argue that "[t]he *Ex parte Young* analysis [for sovereign immunity] 'significantly overlap[s]'" with questions of traceability and redressability and that "none of the State Defendants ha[s] broad power to enforce all of SB 1." *Id.* (quoting *City of Austin v. Paxton,* 943 F.3d 993,

---

[2] *Hunt* held that a Washington state agency could challenge a North Carolina statute on behalf of Washington apple growers and dealers. The Supreme Court explained that "while the apple growers and dealers are not 'members' of the [state agency] in the traditional trade associational sense, they possess all of the indicia of membership" because they alone can serve in and elect members to the agency's leadership and finance the litigation costs through compulsory assessments. *See* 432 U.S. at 344-45 ("[T]herefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests.").

[3] The State Defendants do not contest that LULAC, TARA, and AFT seek to protect interests germane to their organizational purpose, nor could they. The SAC plainly alleges as much. *See, e.g.*, SAC ¶ 19 (LULAC's "mission is to protect the civil and voting rights of Latinos"); *id.* ¶ 23 (TARA's "mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work"); *id.* ¶ 25 (AFT "champions high-quality public education, fairness, democracy, and economic opportunity for students, families, and communities").

1002 (4th Cir. 2019)). But this argument is irrelevant because neither the Attorney General nor the Secretary enjoy sovereign immunity from this suit for the reasons discussed *supra* pp. 2-3. Instead, the Fifth Circuit has made clear that plaintiffs generally have standing to sue the Secretary where their challenge, if successful, would invalidate a Texas election statute like SB 1. *See OCA-Greater Hou.*, 867 F.3d at 613 (explaining that "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the chief election officer of the state" and rejecting arguments that plaintiffs lacked standing to sue the Secretary (quotations omitted)); *see also Lewis*, 475 F. Supp. 3d at 613 ("Because the challenged restrictions are all found in the Texas election code, their invalidity is undoubtedly both fairly traceable to and redressable by the Secretary.").

Perhaps recognizing that the Fifth Circuit's decision in *OCA-Greater Houston* forecloses their standing argument, the State Defendants insist that "OCA involved a *facial* challenge under the Voting Rights Act, not an as-applied challenge to a law enforced by local officials," and that its reasoning is thus limited "to cases considering the facial validity of a Texas election statute." Mot. at 12 (citations and quotations omitted). But State Defendants supply no reason for limiting *OCA-Greater Houston*'s holding to facial challenges. Nor should this Court ignore *OCA-Greater Houston* as the State Defendants suggest, notwithstanding the Fifth Circuit's authority to reconsider its own precedents. *Id*. (citing *Wilson v. Taylor*, 658 F.2d 1021, 1034-35 (5th Cir. Unit B Nov. 1981)). This Court is "bound to apply the holdings of the Fifth Circuit" so long as they remain good law. *Stevens*, 2017 WL 6065286, at *3.

Even so, Plaintiffs allege that the Secretary and Attorney General are responsible for enforcing SB 1: the Secretary is the State's chief elections officer and must "'obtain and maintain uniformity in the application, operation, and interpretation' of the State's election laws." SAC ¶

6

26 (quoting Tex. Elec. Code §§ 31.001(a), 31.008(2)). The Secretary is also responsible for enforcing specific challenged provisions of SB 1 like those pertaining to partisan poll watchers. Under SB 1 §§ 4.04 and 6.03, the Secretary is authorized to create a mandatory training program for poll watchers and is required to certify poll watchers before they can serve at local polling places. *See* SAC ¶ 26. Thus an order finding the partisan poll watcher provisions unconstitutional will directly impact the Secretary's training program and certification process, which will in turn prevent partisan poll watchers from engaging in activities that harass and intimidate voters.

The State Defendants' argument also fails with respect to the Attorney General. The State Defendants assert that Plaintiffs' alleged injuries are not fairly traceable to the Attorney General because "the Attorney General lacks the authority to unilaterally prosecute election-law offenses" and must obtain the permission of local prosecutors. Mot. at 11-12, 15 (citing *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *1, *8 (Tex. Crim. App Dec. 15, 2021)). Relying on *Stephens*, they contend that Plaintiffs' injuries impermissibly rest on a "speculative chain of possibilities" because any injury will depend on the cooperation of district and county attorneys. *Id.* at 12 (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013)). Plaintiffs, however, do not raise "[a]llegations of possible *future* injury," *Clapper*, 568 U.S. at 400 (emphasis added) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)), but instead allege that they have *already* been injured—and continue to be injured—by "the constant threat of criminal prosecution." SAC ¶ 224; *see also id.* ¶¶ 2, 22, 23, 221, 283 (alleging that this ongoing threat of prosecution injures Plaintiffs by placing a chilling effect on the activities of Plaintiffs and their members).

The Second Amended Complaint plainly alleges that *Stephens* has not obviated this threat. For one thing, the Attorney General and the State of Texas "have moved for reconsideration of the

decision." *Id.* ¶ 27 n.1. If successful, the Attorney General would regain the power to unilaterally prosecute purported election-law offenses for actions taken now and throughout this election year. *See* Tex. C.C.P. Art. 12.01(8) (three-year statute of limitations for election-related felonies); *id.* Art. 12.02(a)-(b) (two-year statute of limitations for election-related misdemeanors). But even if *Stephens* is not reconsidered, Plaintiffs allege—and the State Defendants agree—that the Attorney General "retains the power" to prosecute election-law offenses if local prosecutors allow it. SAC ¶ 27 n.1. The Attorney General has demonstrated a strong interest in exercising this power— demonstrated by his formation of an election integrity unit to uncover election law violations, *see id*. ¶ 27, and the State's ongoing attempt to reverse the *Stephens* ruling—and there is no reason to believe that local prosecutors will in all instances reject the Attorney General's assistance in investigating and prosecuting purported offenses. Plaintiffs have alleged injury from this ongoing threat of prosecution. *See id.* ¶¶ 2, 22, 23, 221, 283. And "where a plaintiff's complaint alleges a continuing violation or the imminence of a future violation, a prayer for injunctive relief satisfies redressability." *NiGen Biotech LLC v. Paxton*, 804 F.3d 389, 397 (5th Cir. 2015). Applying this doctrine, another court in this district held that the City of Austin had standing to sue the Attorney General because it pled that future enforcement of the challenged law would injure it through lost revenue, and that "the attorney general bears some connection to enforcement of the statute" such that an order enjoining its implementation "would redress that injury." *City of Austin v. Abbott*, 385 F. Supp. 3d 537, 545 (W.D. Tex. 2019); *see also NiGen Biotech*, 804 F.3d at 397 (finding plaintiff satisfied traceability and redressability requirements where Attorney General imposed an injury through the threat of enforcement).

As a last resort, the State Defendants argue that Plaintiffs fail to identify a "specific member" with standing, which they claim "is independently sufficient to warrant dismissal of the

LULAC Plaintiffs' claims." Mot. at 14. While this Court echoed that concern at the status conference, *see id.* (quoting Ex. A at 18), Plaintiffs respectfully submit that this is not necessary at the pleading stage. An association need not "set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). The State Defendants argue that *Hancock* is "an unpublished opinion" that should not be followed, Mot. at 15 n.2, but identify no case in this circuit where a court has held that identification of individual members is required on a motion to dismiss. On the contrary, district courts in this circuit routinely hold that "such proof is not required at the pleading stage." *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2021 WL 5003274, at *4 (E.D. Tex. Oct. 28, 2021); *see also, e.g.*, *APFA Inc. v. UATP Mgmt. LLC*, No. 4:21-cv-00108-O, 2021 WL 1814695, at *5 (N.D. Tex. May 6, 2021); *Lewis*, 475 F. Supp. 3d at 613; *Tex. All. for Retired Ams. v. Hughs*, 489 F. Supp. 3d 667, 684 (S.D. Tex. Sept. 25, 2020). Plaintiffs are not aware of any case in this circuit that has held otherwise, and the State Defendants identify none.

Even the out-of-circuit cases cited by the State Defendants fail to support their argument. They rely on *Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors*, 522 F.3d 796 (7th Cir. 2008), but that case did not hold that identification of specific members is required at the pleading stage. On the contrary, *Disability Rights Wisconsin* held that the requirements for associational standing "still allow[] for the member on whose behalf the suit is filed to remain unnamed by the organization" in the complaint, and instead affirmed dismissal because the plaintiffs' allegations failed to show how any of its members *could* have had standing. *Id.* at 802. And *Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016), is not persuasive because it relied solely on the U.S. Supreme Court's decision in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), which

held that organizational plaintiffs lacked standing after they failed to identify specific members *at the merits stage*. There is simply no support for the State Defendants' attempt to create a new pleading standard for organizational plaintiffs asserting associational standing.

Finally, the State Defendants argue that Plaintiffs' VRA Section 208 claim (Count IV) fails to satisfy the third element of associational standing—"that neither the claim asserted nor the relief requested requires the participation of individual members." Mot. at 15-16 (quotations omitted).[4] This argument is easily dispensed with. A plaintiff satisfies the third requirement of associational standing "if its 'claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry.'" *Prison Just. League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam) (quoting *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010)). This claim requires no individualized inquiry. Section 208 provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice." 52 U.S.C. § 10508. SB 1 prevents an eligible voter from receiving assistance from a person of their choice: it prohibits any person from providing assistance in exchange for "compensation or other benefit," SAC ¶ 291 (citing SB 1 § 7.04), "which effectively prevents broad categories of individuals—including some of Plaintiffs' members and employees, and most anyone who receives compensation from an organization that supports a candidate or ballot measure—from providing assistance to eligible voters" in violation of Section 208. *Id.* ¶ 292.

The State Defendants argue that there are "variation[s] in individual disabilities" protected under Section 208. Mot. at 16. So what? Plaintiffs' Section 208 claim does not turn on the nature

---

[4] The State Defendants do not argue that Plaintiffs' remaining claims require the participation of individual members. *See* Mot. at 15-16.

of an eligible voter's disability. It turns on the fact that SB 1 prevents *all* eligible Section 208 voters from selecting a person who receives compensation for assistance. *See* 52 U.S.C. § 10508. The nature of a given voter's disability has nothing to do with Plaintiffs' claim, and an individualized inquiry to resolve it is not required.[5]

### B. Plaintiffs have organizational standing.

Furthermore, all Plaintiffs have organizational standing because they allege injuries based on their diversion of resources. "An entity can show an organizational injury by alleging that it must divert resources from its usual activities in order to lessen the challenged restriction's harm to its mission." *Lewis*, 475 F. Supp. 3d at 612. For instance, in *OCA-Greater Houston*, 867 F.3d at 610, the Fifth Circuit held that a plaintiff had organizational standing where it alleged that its mission of getting out the vote was harmed by the "additional time and effort spent explaining the [challenged] provisions at issue to limited English proficient voters," which "frustrate[d] and complicate[d] its routine community outreach activities." And another court in this district similarly held that various organizations dedicated to protecting voting rights had standing to challenge voting restrictions when they were required to divert resources toward educating voters about those restrictions. *See Lewis*, 475 F. Supp. 3d at 612; *see also Vote.org v. Callanen*, No. SA-21-CV-00649-JKP-HJB, slip op. at 2-4 (W.D. Tex. Oct. 27, 2021) (same).

So too here. LULAC alleges that its mission is to "protect the civil and voting rights of Latinos"; it "regularly engages in voter registration, voter education, and other activities and programs designed to increase voter turnout among its members and their communities which is critical to [its] mission"; and it "must divert resources from other programs and activities to address

---

[5] To the extent individualized proof is eventually required, the Complaint alleges that Plaintiffs have members who "require assistance marking or reading their ballots" and are therefore deprived of their rights under Section 208. SAC ¶ 287.

the adverse impacts [of] SB 1 and to assist its members and constituents in surmounting new barriers to registration and voting." SAC ¶ 20. The State Defendants argue that "LULAC does not claim that these 'adverse impacts' affect *its* activities," and that these allegations instead address "the burden SB 1 allegedly imposes on LULAC's members." Mot. at 17. But LULAC *does* allege an impact on its activities, as shown above; the State Defendants quote the exact allegation but appear to intentionally omit the decisive language. *Compare id.* (State Defendants assert that LULAC claims that it "must divert resources . . . to address the adverse impacts of SB 1" (alteration in original) (quoting SAC ¶ 20)), *with* SAC ¶ 20 (complaint actually alleges that "LULAC must divert resources *from other programs and activities* to address the adverse impacts of SB 1" (emphasis added)).

Voto Latino similarly alleges that, "[i]n furtherance of its mission, [it] expends significant resources to register and mobilize thousands of Latinx voters each election cycle," and "will have to expend and divert additional funds and resources that it would otherwise spend on its efforts to accomplish its mission in other states or its own registration efforts in Texas to combat SB 1's effects on its core constituency, and to assist its constituents in navigating the various additional hurdles that impede access to the franchise." SAC ¶ 22; *see also id.* ("For example, Voto Latino will need to divert funds from its voter registration and GOTV digital advertisement budgets, as well as the time and energy of its staff and volunteers in Texas, to educate its constituents on how to successfully vote in Texas given the new restrictions imposed by SB 1."). The State Defendants contend, in conclusory fashion and in total disregard of these allegations, that Voto Latino has failed to allege a diversion of resources caused by "SB1's impact on its own activities." Mot. at 18. That is demonstrably false, and Voto Latino has easily alleged sufficient facts to establish organizational standing under the precedent discussed above.

TARA and AFT similarly allege that SB 1 requires them to divert resources away from activities directed at advancing their missions. *See* SAC ¶ 24 (TARA "spend[s] resources on voter registration, phone banking, and GOTV activities . . . . As a result of SB 1, [it] will have to divert resources from furthering these other activities to educate [its] members, among others, on how to successfully vote in Texas given the new restrictions and limitations"); *id.* ¶ 25 ("Part of [AFT's] mission is to help its membership select leaders who embrace and uphold the interests of its members and the values of the union. As a result of SB 1, Texas AFT will have to divert resources from these activities to educate its members on the new laws and to assist its members in navigating the barriers to voting imposed by SB 1."). These allegations are sufficient to establish organizational standing for the reasons discussed above.

The State Defendants nevertheless cite *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428 (D.C. Cir. 1995), for the proposition that "educating voters, on its own, is not an injury-in-fact," Mot. 18, but omit critical context: *National Taxpayers Union* found the organizational plaintiff's allegations "self-serving" because—in sharp contrast to the allegations here—the alleged expense of resources was unrelated to the organization's mission. 68 F.3d at 1434. As for State Defendants' suggestion that TARA and AFT ought to "identify specific projects" that were impacted by SB 1, Mot. 18, that argument again imposes requirements that do not apply at the pleading stage. The case cited for this proposition held that a plaintiff must "demonstrate *at trial*" these specific projects. *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2008) (emphasis added). Plaintiffs here have alleged that SB 1 impacts their mission, thus forcing them to divert resources in response; that is plainly sufficient to establish standing. *See Lewis*, 475 F. Supp. 3d at 612; *Vote.org*, No. SA-21-CV-00649-JKP-HJB, slip op. at 2-4.

## C.    Plaintiffs have statutory standing to bring their Section 1983 claims.

The State Defendants once again disregard binding precedent in arguing that Plaintiffs lack

standing to bring claims under 42 U.S.C. § 1983, claiming that as "third parties," Plaintiffs do not

possess a constitutional right that has been violated by SB 1. Mot. at 20. That argument fails twice

over. First, the Fifth Circuit has repeatedly held that organizational plaintiffs have associational

standing to assert Section 1983 claims on behalf of their members. *See Ass'n of Am. Physicians &*

*Surgeons*, 627 F.3d at 551 (nonprofit had associational standing to assert Section 1983 claims on

members' behalf); *Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1278–79 (5th Cir.

1972) (church had associational standing to assert Section 1983 claims on members' behalf). And

second, courts routinely find that plaintiffs have organizational standing to bring Section 1983

claims based on diversions of resources. *See, e.g.*, *Lewis*, 475 F. Supp. 3d at 613 & n.2 (rejecting

argument to the contrary from the Texas Secretary of State); *Ga. Coal. for People's Agenda, Inc.*

*v. Kemp*, 347 F. Supp. 3d 1251, 1258 (N.D. Ga. 2018); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't*

*of Hous. & Cmty. Affairs*, 749 F. Supp. 2d 486, 496 (N.D. Tex. 2010). The State Defendants cite

no case where a court has held that an organization lacks standing to bring a Section 1983 claim

on third-party standing grounds.

## III.    Private plaintiffs may enforce the VRA.

Finally, the State Defendants contend that Plaintiffs' VRA claims fail because Sections 2

and 208 do not confer private rights of action. Mot. at 20. This argument is contrary to binding

U.S. Supreme Court precedent and has been rejected by nearly every court to consider it.[6]

---

[6] A single district court in Arkansas has held otherwise. *See Ark. State Conf. NAACP v. Ark. Bd.*
*of Apportionment*, No. 4:21-CV-01239-LPR, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022). But that
court's decision is neither binding nor persuasive: it was outside of this circuit and flouted both its
own circuit's precedent and that of the Supreme Court. *See Roberts v. Wamser*, 883 F.2d 617, 621

"[T]he existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996). Although the original VRA expressly conferred standing only upon the U.S. Attorney General, the U.S. Supreme Court held in *Allen v. State Board of Elections* that private plaintiffs could bring suit to enforce Section 5 of the Act, explaining that the VRA "was drafted to make the guarantees of the Fifteenth Amendment finally a reality for all citizens" and that this "laudable goal could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." 393 U.S. 544, 556 (1969). The U.S. Supreme Court has "entertained cases brought by private litigants to enforce § 2" so often that it has described its cases as "hold[ing] that both § 2 and § 5 are enforceable by private action." *Morse*, 517 U.S. at 232.[7] And various textual clues throughout the VRA support this conclusion.[8] The State Defendants cite no case rejecting a private right of action under Section 2.

Congress also intended for private individuals to enforce Section 208. "It would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action" while other provisions are not, "when all lack the same express authorizing language." *Id.* As with

---

(8th Cir. 1989) (finding that "aggrieved persons" may enforce Section 2); *Morse*, 517 U.S. at 232 (finding Congress "clearly intended" a private right of action to enforce Section 2).

[7] *See, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021); *LULAC v. Perry*, 548 U.S. 399 (2006); *Johnson v. De Grandy*, 512 U.S. 997 (1994); *Chisom v. Roemer*, 501 U.S. 380 (1991). The Fifth Circuit also routinely hears Section 2 suits brought by private litigants. *See, e.g.*, *OCA-Greater Hous.*, 867 F.3d at 604; *LULAC v. City of Boerne*, 675 F.3d 433 (5th Cir. 2012). So too do courts in this district. *See*, *e.g.*, *Mi Familia Vota*, 497 F. Supp. 3d at 195.

[8] As the United States notes in its Statement of Interest, *see* ECF No. 83 at 7, the text and structure of the VRA demonstrate the availability of a private right of action under Section 2. *See* 52 U.S.C. § 10302(a), (c) (affording certain remedies to "the Attorney General *or an aggrieved person*" when bringing suit "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment") (emphasis added); 52 U.S.C. § 10310(e) (awarding attorneys' fees to "the prevailing party, *other than the United States*," in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment") (emphasis added).

Section 2, courts have repeatedly recognized a private right of action under Section 208.[9] And the State Defendants, tellingly, identify no case that has ever rejected the availability of private Section 208 suits.

The State Defendants' arguments to the contrary are without merit. They claim, for instance, that the VRA's conferral of remedies to private plaintiffs to "enforce the voting guarantees of the fourteenth and fifteenth amendment," *see* ECF No. 54 at 19 n.4,[10] says nothing about the availability of private Section 208 suits because Section 208 has nothing to do with violations of these amendments. Mot. at 19. But they do not elaborate further. To the extent the State Defendants are arguing that the Fourteenth and Fifteenth Amendments do not protect persons requiring assistance at the polls, they are mistaken. *See City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) ("[M]easures protecting voting rights are within Congress's power to enforce the Fourteenth and Fifteenth Amendments."); *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966) (Section 4(e) of the VRA, which prohibits states from denying right to vote based on limited English proficiency, was a valid exercise of Congress's enforcement powers under the Fourteenth Amendment); *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 788 (W.D. Ark. 2021) (Section 208 is valid exercise of Congress's Fourteenth and Fifteenth Amendment enforcement powers).

The State Defendants also contend that any private of action under Section 208 should be limited to suits against local officials because "Section 208 focuses on the operation of a polling place, a function performed by local officials." ECF No. 54 at 18. But Plaintiffs' Section 208 claim challenges requirements on polling places enforced by the State Defendants, not just local officials.

---

[9] *See OCA-Greater Hous.*, 867 F.3d at 607; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020); *Ark. United v. Thurston*, 517 F. Supp. 3d 777 (W.D. Ark. 2021).

[10] The State Defendants made these arguments in their motion to dismiss the original complaint, which they have incorporated by reference into the instant motion. *See* Mot. at 20.

*See, e.g.*, SAC ¶¶ 26, 27, 175. And the Fifth Circuit has already recognized Section 208 claims brought by private organizational plaintiffs against the Secretary. *OCA-Greater Hous.*, 867 F.3d at 614-15.

Finally, the State Defendants argue that any private cause of action under Section 2 does not extend to "non-voters" like the organizational plaintiffs. But once again they cite no case holding as much and ignore the overwhelming Fifth Circuit authority recognizing Section 2 claims brought by organizational plaintiffs including some of the Plaintiffs here. *See, e.g.*, *Veasey v. Abbott*, 13 F. 4th 362, 370 (5th Cir. 2021) (awarding attorney's fees to plaintiffs including LULAC for prevailing on Section 2 claim); *Hughes*, 489 F. Supp. 3d at 667 (Plaintiffs including TARA likely to succeed on Section 2 claim); *see also Mi Familia Vota*, 977 F.3d at 461; *LULAC v. Perry*, 548 U.S. 399 (2006).

## CONCLUSION

For these reasons, the Court should deny the State Defendants' motion to dismiss LULAC Plaintiffs' Second Amended Complaint.

Dated: February 23, 2022.                    Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Marc E. Elias*
Uzoma N. Nkwonta*
Haley Costello Essig*
Kathryn E. Yukevich*
Graham W. White*
Noah B. Baron*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
melias@elias.law
unkwonta@elias.law
hessig@elias.law
kyukevich@elias.law
gwhite@elias.law
nbaron@elias.law

*Counsel for Plaintiffs LULAC Texas, Voto
Latino, Texas AFT, and Texas Alliance for
Retired Americans*

*Admitted Pro Hac Vice

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule CV-7(D)(3), counsel for Plaintiffs certify that this opposition brief does not exceed 20 pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta