# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>　　　*Defendants*. | § § § § § § § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*,<br>　　　*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>　　　*Defendants*. | § § § § § § § | Case No. 1:21-cv-780-XR |

## STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE OCA-GREATER HOUSTON PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Table of Contents ...........................................................................................................................i

Table of Authorities.......................................................................................................................ii

Introduction....................................................................................................................................1

Argument .......................................................................................................................................1

I.  The Court Lacks Jurisdiction Over Plaintiffs' Claims ...........................................................1

    A. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Secretary of State  ........................................................................................................................................2

    B. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Attorney General....................................................................................................................................6

    C. Other Exceptions to Sovereign Immunity Do Not Apply .........................................................8

II. Plaintiffs' Opposition Fails to Support the Disability and Assistance Claims ...................................9

    A. Plaintiffs Do Not Have Associational Standing ......................................................................9

    B. Plaintiffs' Injuries Are Not Traceable to the State Defendants....................................................12

    C. Plaintiffs' Claims Fail on the Merits ...........................................................................................13

III.  Plaintiffs Lack Private Causes of Action Under the Voting Rights Act and Civil Rights Act ...15

Conclusion ...................................................................................................................................15

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.,*
851 F.3d 507 (5th Cir. 2017)................................................................................2

*Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
627 F.3d 547 (5th Cir. 2017)..............................................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................8

*Bircoll v. Miami-Dade County,*
480 F.3d 1072 (11th Cir. 2007) .........................................................................13

*Block v. Tex. Bd. of Law Examiners,*
952 F.3d 613 (5th Cir. 2020)................................................................................8

*Brnovich v. DNC,*
141 S. Ct. 2321 (2021) .......................................................................................13

*City of Austin v. Paxton,*
943 F.3d 993 (5th Cir. 2019).......................................................................2, 4, 5

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency,*
313 F. Supp. 3d 285 (D.D.C. 2018)...................................................................10

*Cornerstone Christian Sch. v. UIL,*
563 F.3d 127 (5th Cir. 2009)..............................................................................11

*Ctr. for Biological Diversity v. U.S. EPA,*
937 F.3d 533 (5th Cir. 2019)..............................................................................10

*Doe v. Bailey,*
No. 4:14-cv-2985, 2015 WL 5737666 (S.D. Tex. Sept. 30, 2015) ....................11

*Glass v. Paxton,*
900 F.3d 233 (5th Cir. 2018)................................................................................2

*Hancock County Board of Supervisors v. Ruhr,*
487 F. App'x 189 (5th Cir. 2012) ......................................................................10

*Henrietta D. v. Bloomberg,*
331 F.3d 261 (2d Cir. 2003) ..............................................................................14

*Hunter v. Branch Banking & Tr. Co.*,
No. 3:12-cv-2437, 2013 WL 4052411 (N.D. Tex. Aug. 12, 2013) .................................11

*In re Abbott*,
956 F.3d 696 (5th Cir. 2020) .................................................................................. 2, 7

*Lewis v. Casey*,
518 U.S. 343 (1996) .....................................................................................................3

*Lightbourn v. El Paso County*,
118 F.3d 421 (5th Cir. 1997) .....................................................................................13

*Longoria v. Paxton*,
No. 5:21-cv-1223, Order, ECF 53 (W.D. Tex. Feb. 11, 2022) ...................................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .....................................................................................................2

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) ............................................................................. 2, 3, 5

*New Jersey Physicians, Inc. v. Obama*,
653 F.3d 234 (3d Cir. 2011) ......................................................................................10

*NiGen Biotech, LLC v. Paxton*,
804 F.3d 389 (5th Cir. 2015) ......................................................................................7

*OCA-Greater Houston v. Hughs*,
867 F.3d 604 (5th Cir. 2017) ......................................................................................6

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) ............................................................................... 8, 12

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) (en banc) .....................................................................2

*Papasan v. Allain*,
478 U.S. 265 (1986) .....................................................................................................8

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) ......................................................................................3

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
2 F.4th 1002 (7th Cir. 2021) .....................................................................................10

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) .....................................................................................10

*Smith v. Harris County*,
    956 F.3d 311 (5th Cir. 2020)..................................................................14

*State v. Stephens*
    No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ...........................6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..................................................................10

*Tex. Democratic Party v. Abbott*,
    860 F. App'x at 874 (5th Cir. 2021) (per curiam) ...........................6

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020)..................................................................3, 7

*Texas LULAC v. Abbott*,
    493 F. Supp. 3d 548 (W.D. Tex. 2020) ...........................10

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ..................................................................3

*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996)..................................................................15

*United States v. Armstrong*,
    517 U.S. 456 (1996)..................................................................7

*United States v. Georgia*,
    546 U.S. 151 (2006)..................................................................8

*United States v. McGinnis*,
    956 F.3d 747 (5th Cir. 2020)..................................................................6

*United States v. Salerno*,
    481 U.S. 739 (1987)..................................................................6

*W. Wood Preservers Inst. v. McHugh*,
    292 F.R.D. 145 (D.D.C. 2013) ...........................10

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ...........................10

**Statutes**

Texas Election Code
    § 41.001..................................................................13
    § 43.034..................................................................14
    § 61.012..................................................................14
    § 64.009..................................................................13, 14

Texas Election Code (continued)

§ 81.001 .................................................................................................................13
§ 82.002(a) ............................................................................................................13
§ 82.005 .................................................................................................................13
§ 86.001 .................................................................................................................12
§ 86.002 .................................................................................................................12
§ 86.006 .................................................................................................................12
§ 86.007(b) ............................................................................................................12
§ 86.011 .................................................................................................................12
§ 87.027(i) .............................................................................................................12
§ 87.061 .................................................................................................................12
§ 87.041(b)(2) ......................................................................................................12

## Regulations

28 C.F.R.

§ 35.130(b)(1) ......................................................................................................13
§ 35.150(a) ............................................................................................................13

**INTRODUCTION**

The Secretary of State and Attorney General's Motion to Dismiss, *see* ECF 240, explained that the OCA-Greater Houston Plaintiffs' second amended complaint should be dismissed. It explained that sovereign immunity bars Plaintiffs' civil-rights claims—based on Section 2 of the Voting Rights Act, Section 101 of the Civil Rights Act, and the First and Fourteenth Amendments—because local election officials enforce the provisions of Senate Bill 1 that they challenge, not the State Defendants. For the enforcement-connection analysis under *Ex parte Young*, a "provision-by-provision analysis" is required. Plaintiffs' Opposition ignores this framework, and fails to show how the Attorney General or Secretary enforce each of the challenged provisions. And even if the OCA Plaintiffs could satisfy *Ex parte Young* or point to another valid exception to sovereign immunity, they would still lack standing to pursue their claims. Any actions the State Defendants take under SB1 do not actually harm them.

The State Defendants' Motion also explained that the OCA Plaintiffs' disability claims—based on Title II of the Americans with Disabilities Act, Section 504 the Rehabilitation Act, and Section 208 of the VRA—fail for multiple reasons. As a preliminary matter, only Plaintiff REVUP lists specific members who allegedly have disabilities, disqualifying the other OCA Plaintiffs from asserting claims on their members' behalf. Moreover, none of the Plaintiffs can maintain associational standing for these claims because they involve different members, with different disabilities, who allegedly sustain different burdens, and who would require different relief if the claims were proven. For this reason, individual participation is necessary, which precludes associational standing. And even if Plaintiffs did have standing, their disability claims fail on the merits. The Court should grant the Motion to Dismiss.

**ARGUMENT**

**I.    The Court Lacks Jurisdiction Over Plaintiffs' Claims**

As the State Defendants explained in their Motion to Dismiss, ECF 240 at 4–13, the Court lacks jurisdiction over the OCA Plaintiffs' claims for two related reasons. First, the Secretary of State

and Attorney General simply do not enforce the provisions Plaintiffs challenge and therefore lack the requisite "enforcement connection with the challenged statute." *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (citing *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020), *vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021)). At a minimum, this requires the relevant state official to have the power to "compel" or "constrain" others in the enforcement of the challenged law. *City of Austin v. Paxton*, 943 F.3d 993, 1000–02 (5th Cir. 2019). The official at issue must also have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 999 (quoting *Okpalobi*, 244 F.3d at 416).

Second, the OCA Plaintiffs lack standing because any actions the State Defendants take with respect to SB1 do not actually harm them. As such, any alleged injuries Plaintiffs have sustained are neither caused by the State Defendants nor redressable by an injunction directed at them. These considerations are related because the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 997 (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)).

## A. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Secretary of State

The Court need not address the substance of the OCA Plaintiffs' claims because they failed to respond to the State Defendants' argument that they lack standing to sue the Secretary of State. As the parties invoking federal jurisdiction, the OCA Plaintiffs bear the burden of establishing standing. *See, e.g.*, *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). As previously illustrated, *see* ECF 240 at 6–9, Plaintiffs cannot establish standing by identifying some statutory duty the Secretary has with respect to SB1. Instead, they must identify a discrete action the Secretary has taken that actually *harms* them. *See City of Austin*, 943 F.3d at 1002 (Plaintiffs lack standing unless there is "a significant possibility that [the state official] will act to harm

a plaintiff"). Only then would the harm be caused by the Secretary, and redressable by an injunction directed at him. *Mi Familia Vota*, 977 F.3d at 467 (A state official "is not a proper defendant" if enjoining him from performing the duty would not "afford the Plaintiffs the relief they seek.").

The OCA Plaintiffs' claims against the Secretary of State should be dismissed because their lack of response means they fail to explain how their alleged injuries were caused by the Secretary or how injunctive relief directed at him could remedy those alleged injuries.

In addition, Plaintiffs misunderstand the nature of their burden to support each of their claims. As the State Defendants previously explained, "standing is not dispensed in gross." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)); *accord, e.g.*, *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442 (5th Cir. 2022) (quoting *Lewis*, 518 U.S. at 358 n.6). "[A] plaintiff must demonstrate standing for *each claim* he seeks to press and for each form of relief that is sought." *Town of Chester*, 137 S. Ct. at 1650 (emphasis added) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). The same is true for purposes of sovereign immunity: "Determining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis, *i.e.*, the official must have the requisite connection to the enforcement of the *particular statutory provision* that is the subject of the litigation." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (emphasis added).

Following these binding principles, the State Defendants analyzed the SB1 sections Plaintiffs challenge provision by provision. *See* ECF 240 at 2–4 (explaining each provision), 6–9 (applying them to the claims against the Secretary of State). For each provision, the Motion to Dismiss explains why the Secretary either does not enforce the section at issue or that any enforcement role the Secretary does play does not actually cause the injury of which Plaintiffs are complaining. The OCA Plaintiffs' response chose not to address each challenged provision, as they are required to do, but instead argue over broad categories of provisions. *See* ECF 279 at 2–6. As a preliminary matter, this approach

inappropriately treats sovereign immunity and standing as if they were dispended "in gross," which they are not. *Lewis*, 518 U.S. at 358 n.6. But even on their own terms, these general arguments fail.

Plaintiffs' primary argument is that the Secretary of State's duties to "prescribe the design and content of mail-in ballot applications and mail-in carrier envelope," ECF 279 at 3, and forms related to voter assistance, are sufficient to satisfy *Ex parte Young*. Their theory is that the Secretary causes their alleged injuries by designing forms that relate to local election officials' enforcement of certain SB1 provisions. *See id.* at 3–4. This misunderstands the causal relationship between SB1 and their alleged injuries.

Put simply, the Secretary of State's duty to prescribe forms concerning mail-in voting and voter assistance does not injure the OCA Plaintiffs. They implicitly recognize this, framing their alleged injuries as being made "to provide immaterial and burdensome identification numbers in order to receive a mail-in ballot, and to take an unlawful voter assistance oath before assisting voters with disabilities or language barriers." ECF 279 at 4. But as the Motion to Dismiss explains, *see* ECF 240 at 8–9, local election officials would have to enforce SB1's mail-in voting requirements and voter-assistance provisions even if the Secretary did not promulgate forms. Plaintiffs' complaints are properly directed to local election officials, not the Secretary of State.[1]

The State Defendants further explained, by reference to *Texas Democratic Party v. Abbott,* why designing a form does not satisfy *Ex parte Young* here. *See* ECF 240 at 8. The *Texas Democratic Party* plaintiffs claimed that the form itself was discriminatory; under that reasoning, enjoining the Secretary from prescribing the form would give the plaintiffs the relief they sought because the form was the cause of the alleged injury. *See id.* at 180–81. But the OCA Plaintiffs do not claim the mail-in voting

---

[1] The OCA Plaintiffs also emphasize that the Secretary "has shown a willingness" to "enforce" SB1 by issuing election "advisories and directives." ECF 279 at 4. They stress that the Secretary may give "advice and assistance," *id.*, to local election officials. But the discretionary nature of advice and assistance does not satisfy *Ex parte Young*'s requirement that the official enforce the challenged law by "compulsion" or "constraint." *City of Austin*, 943 F.3d at 1002. Moreover, Plaintiffs' concern with advice given to local election officials underscores that the latter are the ones who enforce SB1.

and voter assistance forms the Secretary prescribes are themselves discriminatory. Rather, they complain that local election officials use those forms in connection with their enforcement of SB1's substantive provisions. *See* ECF 279 at 4. *Texas Democratic Party* does not apply here, but it does highlight why the Secretary is not a proper defendant in these circumstances.

Plaintiffs similarly do not address *Mi Familia Vota v. Abbott*. There, plaintiffs sought to be allowed to use paper ballots despite a law on requiring electronic voting. *See* 977 F.3d at 468. The Secretary of State was dismissed because the counties, not the Secretary, enforced the electronic-equipment-only requirement. *See id.* Just as local election officials' enforcement of voter-equipment provisions caused the *Mi Familia Vota* plaintiffs' alleged injuries, , local election officials' enforcement of mail-in voting and voter-assistance provisions of SB1 cause the OCA Plaintiffs' alleged injures. Just as the *Mi Familia Vota* plaintiffs' claim was there, the OCA Plaintiffs' claim here against the Secretary should be dismissed because the Secretary is not the cause of their injuries

Plaintiffs also assert that the Secretary's authority to refer election-code violations to the Attorney General confers broad power to enforce election laws. *See* ECF 279 at 6. But again, they do not respond to the arguments the State Defendants made in their Motion to Dismiss. The Fifth Circuit is clear that "enforcement" requires "compulsion" or "constraint." *City of Austin*, 943 F.3d at 1002. Referrals, by their very nature, do not compel or constrain anyone. As the OCA Plaintiffs concede, the Attorney General is responsible for investigating "cases of illegal voting or election crimes," not the Secretary of State. ECF 279 at 6. Any injury would necessarily be tied to the Attorney General's— not the Secretary's—bringing an enforcement action.

Finally, and as explained previously, "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party*, 961 F.3d at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Rather, a plaintiff "must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party v. Abbott*, 860 F. App'x

at 874, 877 (5th Cir. 2021) (per curiam). The Secretary of State's status as the chief election officer does not automatically make him a proper defendant in lawsuits relating to the Election Code. The OCA Plaintiffs' only response is to rely on *OCA-Greater Houston v. Hughs*, 867 F.3d 604, 613 (5th Cir. 2017). *See* ECF 279 at 5. But, as explained in the State Defendants' Motion, *see* 240 at 7–8, that case was wrongly decided, is inconsistent with subsequent authority from the Texas Supreme Court, and does not apply to the OCA Plaintiffs' as-applied challenges.[2]

### B. Plaintiffs' Opposition Does Not Identify an Enforcement Connection for the Attorney General

The OCA Plaintiffs also cannot satisfy *Ex parte Young* for their claims against the Attorney General. Previously, *see* ECF 240 at 10–11, the State Defendants explained that in *State v. Stephens*, the Texas Court of Criminal Appeals held that Texas Election Code § 273.021 "is unconstitutional" and that the Attorney General "cannot initiate prosecution" of election cases "unilaterally." No. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). This Court has already held in *Longoria* that "the delegation of prosecutorial authority in Section 273.021 can no longer satisfy *Ex parte Young*'s 'sufficient connection' requirement in light of *Stephens*." *Longoria v. Paxton*, No. 5:21-cv-1223, Order, ECF 53 at 22 (W.D. Tex. Feb. 11, 2022) ("Order"). That should be the end of the inquiry.

The OCA Plaintiffs ignore the Court's holding in *Longoria* even though they are clearly aware of it. *See* ECF 279 at 10, 11, 12 (citing the Order). Their theory is that the Attorney General will seek to initiate criminal prosecutions under SB1 notwithstanding the decision in *Stephens*. *See id.* at 7–10. As the State Defendants have already explained, *see* ECF 240 at 10, arguing that the Attorney General will act in violation of binding state law is speculative and wrongly ignores the presumption or regularity

---

[2] Despite Plaintiffs' contention that "this case is also a facial challenge," ECF 279 at 5, the OCA Plaintiffs do not attempt to support it as such. They make no effort to "establish that no set of circumstances exists under which the [statute] would be valid." *United States v. McGinnis*, 956 F.3d 747, 752 (5th Cir. 2020) (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). For instance, the OCA Plaintiffs do not, and cannot, show that the mail-in voting identification requirements impose unlawful burdens on every Texas who votes by mail. Rather, the premise of their claim is that SB1 imposes unlawful burdens to some voters in some circumstances. That is an as-applied challenge.

afforded to government prosecutions. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (The "presumption of regularity supports [government officials'] prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (quotation omitted)).

In response, Plaintiffs point to instances in which the Attorney General brought prosecutions for election-code violations before the decision in *Stephens*. *See* ECF 279 at 8, 8 n.6, 9, 9 n.8, 10. But that is a *non sequitur*. That the Attorney General brought such prosecutions before *Stephens* does not at all support the argument that he will do so in light of the Texas Court of Criminal Appeals' holding that he "cannot initiation prosecution" of cases "unilaterally." No. PD-1032-20, 2021 WL 5917198, at *1, 8. Plaintiffs' argument disregards *Stephens* and ignores the Court's Order in *Longoria*.

In the alternative, the OCA Plaintiffs speculate that the Attorney General may be invited to prosecute election-code cases by local county or district attorneys and argue that this possibility satisfies *Ex parte Young*. *See* ECF 279 at 8, 10. But they ignore clear precedent to the contrary. The Fifth Circuit recently held that "[s]peculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing [the law at issue], is inadequate to support an *Ex parte Young* action" against him. *In re Abbott*, 956 F.3d at 709 (internal citations omitted). Plaintiffs' argument is precisely the one the Fifth Circuit rejected. The Court should do the same here.

Moreover, the OCA Plaintiffs' argument that the Attorney General "has not otherwise *disavowed* his previously expressed intent to prosecute election code violations alongside district or county attorneys, and has otherwise done nothing to suggest that such criminal prosecutions are *unlikely*," ECF 279 at 10 (emphasis added), flips the applicable burden of proof. It is the Plaintiffs who must set forth specific facts demonstrating that "formal enforcement is on the horizon." *Tex. Democratic Party*, 978 F.3d at 181 (quoting *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)); *see In re Abbott*, 956 F.3d at 709 (plaintiff must show a "likelihood" that "enforcement [is]

forthcoming"). They have not. Instead, they contend that a general allegation that the Attorney General "intends" to seek invitations satisfies their burden. ECF 279 at 8. But without allegations of specific facts tending to show an invited prosecution is forthcoming, this contention is just an unsupported legal conclusion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Legal conclusions such as those cannot meet Plaintiffs' burden to show that formal enforcement is on the horizon.

### C. Other Exceptions to Sovereign Immunity Do Not Apply

As explained above, the *Ex parte Young* exception to sovereign immunity does not apply to the OCA Plaintiffs' claims. Nor do any other exceptions apply. Plaintiffs do not dispute that Section 1983 does not abrogate sovereign immunity. *See* ECF 279 at 12.[3] The State Defendants also explained the uncontroversial principle that "Congress has not abrogated sovereign immunity for Civil Rights Act claims." *Tex. Democratic Party*, 860 F. App'x at 877 n.3. *See* ECF 240 at 11. Plaintiffs purport to dispute this, *see* ECF 279 at 12 ("State Defendants are not immune from . . . Civil Rights Act claims"), but do not offer authority on this point. *See id.* at 12–13. In addition, the ADA does not abrogate sovereign immunity unless the plaintiff demonstrates a violation of Title II. *See Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). As explained below, the OCA Plaintiffs have not done so.[4] Finally, although this Count is bound by *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), the State Defendants respectfully maintain that neither Section 2 nor Section 208 of the Voting Rights Act abrogates state sovereign immunity.

---

[3]   Plaintiffs misunderstand the State Defendants' argument regarding Section 1983. *See* ECF 279 at 12–13. The Motion argues that Section 1983 does not abrogate state sovereign immunity, not that it does not provide a private right of action. *See* ECF 240 at 12.

[4]   Nor do Plaintiffs address the fact that sovereign immunity would apply even if they could state a claim under Title II. In that case, they would still need to show (i) whether the same conduct also violates the Fourteenth Amendment, and if not, (ii) that Congress's purported abrogation of sovereign immunity in this particular context is valid. *See Block*, 952 F.3d at 617 (quoting *Georgia*, 546 U.S. at 159). Plaintiffs decline to grapple with this framework.

## II.      Plaintiffs' Opposition Fails to Support the Disability and Assistance Claims

The State Defendants previously explained that the OCA Plaintiffs' claims under Section 208 of the VRA, the Americans with Disabilities Act, and the Rehabilitation Act should be dismissed for three reasons. First, all but one of the plaintiffs fails to identify specific members who are allegedly disabled, which is mandatory for associational standing. Second, Plaintiffs lack standing because these claims require individual participation, and even if they don't, their alleged injuries are not traceable to the State Defendants. And third, their claims fail on the merits.

Plaintiffs' response on the first issue is unavailing. And their response to the remaining issues just recycles arguments asserted by the Houston Justice Plaintiffs, literally copying and pasting eight of the last nine pages of their brief. *See* ECF 279 at 16–23 (copying ECF 252 at 16–24).[5] As such, the arguments the State Defendants made in their Houston Justice reply brief apply with equal force here.

### A.      Plaintiffs Do Not Have Associational Standing

#### 1.      Plaintiffs Must Identify Specific Disabled Members

As an initial matter, in the State Defendants' Motion to Dismiss, they explained that OCA-Greater Houston, the League of Women Voters, Texas Organizing Project, and Workers Defense Action Fund lack standing to assert their disability claims because they do not identify a single member who is disabled or who would require voting assistance. *See* ECF 240 at 14. Plaintiffs do not deny this. *See* ECF 279 at 15 n.16. Instead, they argue that they are not required to identify specific members at the pleading stage.

However, that argument is inconsistent with the concept of associational standing as interpreted by the Supreme Court. To establish standing on that basis, the plaintiff must set forth "specific allegations establishing that at least *one identified member* had suffered or would suffer harm."

---

[5]   For other instances where the OCA Plaintiffs elected to duplicate the Houston Justice Plaintiffs' brief, see ECF 279 at 13 (copying ECF 252 at 3–4), *id.* at 14 n.12 (copying ECF 252 at 5 n.2).

*Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Based on this principle, courts of appeals and district courts alike regularly require the plaintiff to identify allegedly injured members at the pleading stage. *See, e.g., Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1010 (7th Cir. 2021); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *New Jersey Physicians, Inc. v. Obama*, 653 F.3d 234, 241 (3d Cir. 2011); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 257 (6th Cir. 2018); *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 298 (D.D.C. 2018); *W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 148 (D.D.C. 2013).

Plaintiffs point to two nonbinding cases in response. First, they cite *Hancock County Board of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). For one thing, unpublished opinions are not precedential. Moreover, the court reached its holding without reference to the many authorities cited above (and others). *See id.* ("*We are aware of no precedent* holding that an association must set forth the name of a particular member in its complaint.") (emphasis added). Second, Plaintiffs' argue that district courts "routinely" apply *Hancock County* to omit the specific-member requirement. But the only case they can martial is one that was abrogated on appeal. *See Texas LULAC v. Abbott*, 493 F. Supp. 3d 548 (W.D. Tex. 2020), *vacated sub nom.*, *Texas LULAC v. Hughs*, No. 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021). Plaintiffs are required to identify specific members to establish associational standing. Their failure to do so (other than REVUP) means that their disability claims must be dismissed.

## 2.    Plaintiffs' Claims Require Individual Participation

The OCA Plaintiffs' response also fails to address the flaws in their theory of associational standing. Such standing exists only if "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). Whether a claim requires the participation of individual members turns on "the claim's

substance," including whether it has an "individualized element." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009).

The State Defendants previously explained that Plaintiffs' disability claims require individual-member participation because they implicate Texans with different disabilities, who in turn may need different forms of relief. ECF 240 at 14–16. The OCA Plaintiffs misinterpret this as arguing that "an organization could never represent the interests of multiple members in a lawsuit under the ADA." ECF 279 at 15. But it is not the numerosity of Plaintiffs' members that requires individual participation, but rather their diversity. The OCA Plaintiffs purport to assert claims on behalf of different individuals with different disabilities who would require particularized relief. In short, litigating those claims requires member participation.

To be sure, a plaintiff can satisfy associational standing if "claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." *Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2017). But the injured members listed in Plaintiffs' second amended complaint *are not representative* of the organizations' members, or of disabled Texans as a whole. The result might be different if each member shared the same or similar disabilities—but they do not. As a result, the OCA Plaintiffs cannot maintain associational standing. *Compare Doe v. Bailey*, No. 4:14-cv-2985, 2015 WL 5737666, at *5 (S.D. Tex. Sept. 30, 2015) (no associational standing where ADA plaintiffs had different physical conditions), *with Hunter v. Branch Banking & Tr. Co.*, No. 3:12-cv-2437, 2013 WL 4052411 at *6–8 (N.D. Tex. Aug. 12, 2013) (associational standing where ADA plaintiffs had same underlying physical conditions).

Plaintiffs' only response is to argue that SB1 imposes "systemic" harm to disabled Texans. ECF 279 at 16, 22. That label is at attempt to paper over the OCA Plaintiffs' admission that "the disabilities of the affected individuals vary." *Id.* at 18. That they allege injuries to multiple disabled voters elides that the disabled voters' alleged injuries are different in significant respects. In short, the

OCA Plaintiffs confuse widespread harm with uniform harm. They allege the former, and it does not support associational standing.[6]

### B.     Plaintiffs' Injuries Are Not Traceable to the State Defendants

As the State Defendants previously explained, *see* ECF 240 at 16–17, even if the OCA Plaintiffs had plausibly alleged a disability injury, which they have not, it is not traceable to the State Defendants. Plaintiffs' alleged injuries are based on the theory that SB1's provisions regarding voter identification and voter assistance unlawfully restrict disabled persons' access to voting. But local election officials are the ones who enforce these substantive provisions, not the State Defendants.

As explained before, these officials receive and review ballot applications, *see* Tex. Elec. Code § 86.001; mail carrier and ballot envelopes to voters, *id.* § 86.002; receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011; verify voter signatures, *id.* §§ 87.027(i), 87.041(b)(2); and count the results, *id.* § 87.061. Even after Plaintiffs' Opposition, it is unclear what the OCA Plaintiffs think the State Defendants do that they wish to be enjoined. *See* ECF 279 at 22 (They, like the Houston Justice Plaintiffs, "ask only that the Court enjoin SOS from implementing discriminatory voting policies."). Conclusory legal assertions aside, the only specific action Plaintiffs allege is that the Secretary of State designs "forms limiting the type of assistance a voter with a disability can receive and affirmatively demanding voter ID information from voters with disabilities." *Id.* at 23. But election officials would have to enforce SB1's requirements even in the absence of a form. Enjoining the Secretary from implementing a form would do nothing to give Plaintiffs the relief they seek.

---

[6]     The OCA Plaintiffs contend that the individual-participation hurdle does not apply to their claims under Section 208 of the VRA. *See* ECF 279 at 14 n.13. They mistakenly point to *OCA-Greater Houston v. Texas* as standing for the proposition that an organizational plaintiff *per se* has associational standing to bring Section 208 claims on behalf of its members. But in *OCA*, the organizational plaintiff challenged a single voter-assistance statute on behalf of one member with a specific alleged injury. *See* 867 F.3d at 610–13. Here, the OCA Plaintiffs challenge many different provisions, which they contend injury many different members in many different ways. Individual participation is necessary to address Plaintiffs' diverse claims, and the particular means of assistance Plaintiffs' members might need.

Plaintiffs' real complaint, if any, lies with local election officials. Their theory implies that the State Defendants are responsible for ensuring those officials comply with the ADA and Rehabilitation Act, which they are not. *See Lightbourn v. El Paso County*, 118 F.3d 421, 423–24, 429 (5th Cir. 1997). The OCA Plaintiffs cannot establish associational standing on this basis.

## C.      Plaintiffs' Claims Fail on the Merits

Finally, even if Plaintiffs had standing to pursue their disability claims, those claims fail on the merits for two reasons. First, as the State Defendants previously explained, *see* ECF 240 at 17–19, the OCA Plaintiffs have not stated a claim from which relief can be granted because they have not—and cannot—allege that elections are not "readily accessible" to disabled Texans. 28 C.F.R. § 35.150(a). To reiterate, Texas law offers ample opportunities to disabled voters. Among others, they may vote in a polling place during early voting, *see* Tex. Elec. Code §§ 41.001, 82.005; vote at the curbside during early voting, *id.* § 64.009; vote in a polling place on Election Day, *id.* § 81.001; vote at the curbside on Election Day, *id.* § 64.009; or vote by mail, *id.* § 82.002(a). Plaintiffs dispute none of this. Instead, they contend that it is irrelevant and that the ADA and Rehabilitation Act require individual voting methods to be considered in isolation from the State's overall voting scheme. *See* ECF 279 at 22–23. They do not.

The ADA and Rehabilitation Act do not entitle the OCA Plaintiffs to demand that the State Defendants offer "any and all means" of voting opportunity. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (11th Cir. 2007). Nor do they prescribe any particular accommodation so long as each individual has "an opportunity to participate in and benefit from the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1). Relatedly, any alleged burdens disabled voters have must be viewed in light of the other opportunities they possess. *See Brnovich v. DNC*, 141 S. Ct. 2321, 2339 (2021) ("[C]ourts must consider the opportunities provided by a State's entire system of voting when assessing the burden imposed by a challenged provision."). Plaintiffs overlook these basic principles.

The OCA Plaintiffs concede that the relevant question is whether Texas's laws provide disabled voters meaningful access to voting in general, not whether the State affords disabled voters their preferred accommodations. *See* ECF 279 at 22 (contending that the "State Defendants have excluded people with disabilities and denied meaningful access *to the state's voting program.*") (emphasis added) (citing ECF 200 ¶¶ 129–138, 140–46, 182–93). This concession belies the OCA Plaintiffs' assertion that the State Defendants "misunderstand . . . the nature of disability law," ECF 279. And indeed, the OCA Plaintiffs do not deny that Texas law provides Texans of all disabilities access to the accommodations they need in order to vote. At bottom, Plaintiffs' disability claims fail because they fixate on particular aspects of the voting program and ignore the (uncontested) bottom line: disabled Texans have meaningful access to the ballot box.

Second, as the State Defendants explained, the second amended complaint fails to allege that SB1 "fail[s] to make reasonable accommodations" in voting." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020); *see* ECF 240 at 17–18. And had the OCA Plaintiffs tried to do so, they would have failed. SB1 expressly guarantees disabled voters the right to request a reasonable accommodation or modification. *See* Tex. Elec. Code § 1.022. And Texas law elsewhere provides ample accommodations. *See, e.g.*, *id.* §§ 43.034, 61.012, 64.009. As previously stated, the law requires *reasonable* accommodations, not preferred accommodations. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003). SB1 complies with that obligation.

In response, the OCA Plaintiffs resort to recasting their arguments in terms they believe are more favorable. They contend, ECF 279 at 22, that SB1 "inflict[s] systemic harm on large groups of people," and that "[t]hese are not harms that can be remedied on a case-by-case basis." *Id.* But this argument is at odds with the OCA Plaintiffs' assertion of associational standing. The whole point of that form of standing is that the association can bring a claim on behalf of particular members who suffered particular injuries. *See United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S.

544, 552 (1996) ("The modern doctrine of associational standing" allows an organization to "sue to redress *its members' injuries*.") (emphasis added). As such, their claims pertain to individual persons and (if at all) require individual accommodations. The OCA Plaintiffs have not sought class certification, *see* Fed. R. Civ. P. 23, or provided any other reason why their associational claims should be given broader effect.

## III. Plaintiffs Lack Private Causes of Action Under the Voting Rights Act and Civil Rights Act

Finally, the State Defendants respectfully maintain the position that Congress did not establish private rights of action under Sections 2 and 208 of the VRA and Section 101 of the CRA. *See* ECF 240 at 19–20; ECF 54 at 16–21. The Court previously denied prior motions to dismiss based on these arguments, but the State Defendants reassert them here to preserve the issues for further review.

### CONCLUSION

The State Defendants respectfully request that the Court grant their Motion and dismiss the claims asserted by the OCA-Greater Houston Plaintiffs.

Date: March 1, 2022                         Respectfully submitted.

KEN PAXTON                                  */s/ Patrick K. Sweeten*
Attorney General of Texas                   PATRICK K. SWEETEN
                                            Deputy Attorney General for Special Litigation
BRENT WEBSTER                               patrick.sweeten@oag.texas.gov
First Assistant Attorney General            Tex. State Bar No. 00798537

                                            WILLIAM T. THOMPSON
OFFICE OF THE ATTORNEY GENERAL              Deputy Chief, Special Litigation Unit
P.O. Box 12548 (MC-009)                     will.thompson@oag.texas.gov
Austin, Texas 78711-2548                    Tex. State Bar No. 24088531
Tel.: (512) 463-2100
Fax: (512) 457-4410                         LEIF A. OLSON
                                            Special Counsel, Special Litigation Unit
                                            leif.olson@oag.texas.gov
                                            Tex. State Bar No. 24032801

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 1, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN