# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>*Defendants*. | § § § § § § § § | Case No. 5:21-cv-844-XR<br>[Lead Case] |
| LULAC TEXAS, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>JOHN SCOTT, *et al.*,<br>*Defendants*. | § § § § § § § § | Case No. 1:21-cv-786-XR<br>[Consolidated Case] |

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT OF LULAC TEXAS, ET AL.**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................................i

Table of Authorities...................................................................................................................................ii

Introduction................................................................................................................................................1

Argument ....................................................................................................................................................2

    I.   Plaintiffs Have Not Shown an Injury-in-Fact Attributable to State Defendants. .......................2

        A.  The alleged injuries to Plaintiffs' members purportedly caused by the Attorney General are neither actual nor imminent. .................................................................................................2

        B.  Plaintiffs have not demonstrated that Section 7.04 denies any of their members voting assistance from a person of their choice. ..................................................................................4

        C.  Plaintiffs have not alleged an organizational injury sufficient to confer standing. ..............5

    II.  Plaintiffs' Purported Injuries Can Neither be Traced to State Defendants Nor Redressed by the Relief Requested. .......................................................................................................................6

        A.  Plaintiffs have not established standing on a provision-by-provision basis. ........................6

        B.  Plaintiffs' purported injuries are neither traceable to the Attorney General nor judicially redressable. .................................................................................................................................9

        C.  Plaintiffs' purported injuries are neither traceable to the Secretary of State nor judicially redressable. ...............................................................................................................................12

Conclusion ................................................................................................................................................13

## Table of Authorities

Page(s)

**Cases**

*Adarand Constructors, Inc. v. Mineta*,
  534 U.S. 103 (2001) ................................................................................................... 9

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
  851 F.3d 507 (5th Cir. 2017) ..................................................................................... 8

*Black v. Panola Sch. Dist.*,
  461 F.3d 584 (5th Cir. 2006) ..................................................................................... 7

*California v. Texas*,
  141 S. Ct. 2104 (2021) .............................................................................................. 10

*City of Austin v. Abbott*,
  385 F. Supp. 3d 537 (W.D. Tex. 2019) ................................................................ 2, 11

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ......................................................................... 8, 10, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................... 3

*Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*,
  937 F.3d 533 (5th Cir. 2019) ..................................................................................... 5

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ............................................................................................... 3

*El Paso Cty., Texas v. Trump*,
  982 F.3d 332 (5th Cir. 2020) ................................................................................... 10

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
  11 F.4th 68 (2d Cir. 2021) ......................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................................... 9

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ................................................................................................... 7

*Glass v. Paxton*,
  900 F.3d 233 (5th Cir. 2018) ..................................................................................... 3

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
 487 F. App'x 189 (5th Cir. 2012) ....................................................................................4

*In re Gee*,
 941 F.3d 153 (5th Cir. 2019) ...........................................................................................7

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
 624 F.3d 1083 (9th Cir. 2010) .........................................................................................6

*Lewis v. Casey*,
 518 U.S. 343 (1996) .........................................................................................................6

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) .........................................................................................................3

*Muskrat v. United States*,
 219 U.S. 346 (1911) .........................................................................................................8

*NAACP v. City of Kyle*,
 626 F.3d 233 (5th Cir. 2010) ....................................................................................... 4, 6

*NiGen Biotech LLC v. Paxton*,
 804 F.3d 389 (5th Cir. 2015) ................................................................................... 10, 11

*OCA-Greater Houston v. Texas*,
 867 F.3d 604 (5th Cir. 2017) ...........................................................................................8

*Okpalobi v. Foster*,
 244 F.3d 405 (5th Cir. 2001) ...........................................................................................8

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
 24 F.4th 442 (5th Cir. 2022) ............................................................................................6

*Prison Justice League v. Bailey*,
 697 F. App'x 362 (5th Cir. 2017) ....................................................................................5

*Serv. Employees Intern. Union, Local 5 v. City of Houston*,
 595 F.3d 588 (5th Cir. 2010) ...........................................................................................7

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) .........................................................................................................2

*State v. Stephens*,
 No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ........................2

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) .........................................................................................................3

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020)...............................................................................................11

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ........................................................................................................6

*Virginia House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) ........................................................................................................9

*Watson v. Texas*,
  261 F.3d 436 (5th Cir. 2001)................................................................................................8

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018)................................................................................................6

**Statutes**

Tex. Elec. Code
  § 33.008..............................................................................................................................12
  § 64.0322............................................................................................................................12
  § 276.015..............................................................................................................................4

## INTRODUCTION

The LULAC Plaintiffs' Second Amended Complaint is deficient in several significant respects. The Secretary of State and Attorney General (together, the "State Defendants") explained these deficiencies in their Motion to Dismiss. ECF 243. The responses offered by Plaintiffs in their Opposition are unavailing. ECF 281. The Court should grant the State Defendants' Motion.

First, the LULAC Plaintiffs have not demonstrated that they or their members have suffered an injury-in-fact from the provisions that they challenge. Their members are not injured by the Attorney General, both because a recent decision by the Texas Court of Criminal Appeals held that he is not empowered to unilaterally prosecute violations of any SB1 provision and, with regard to their Section 208 claim, because Plaintiffs have failed to adequately allege that any of their members will be denied voting assistance by a person of their choice. Plaintiffs also have not been injured organizationally because their alleged diversion of resources was not undertaken to avoid any legally cognizable harm.

Second, even if the Court were to find that they have been injured, the LULAC Plaintiffs still have not shown those injuries are both traceable to the provisions they challenge and redressable by this Court. Plaintiffs have not meaningfully attempted to fulfill their responsibility to explain how each provision they challenge imposes harm on either them or their members. The Attorney General's lack of prosecutorial authority means that he cannot cause them injury, and thus an injunction against him exercising authority that he does not possess would redress nothing. Similarly, Plaintiffs cannot trace the harm they allege to the two provisions of SB1 that they invoke in relation to the Secretary of State, one of which also lacks redressability because Plaintiffs request no relief from its application.

Having had the opportunity to amend their pleadings twice, the LULAC Plaintiffs' failure to adequately allege facts supporting standing calls for their suit to be dismissed.

**ARGUMENT**

**I. Plaintiffs Have Not Shown an Injury-in-Fact Attributable to State Defendants.**

**A. The alleged injuries to Plaintiffs' members purportedly caused by the Attorney General are neither actual nor imminent.**

In order to confer standing, a plaintiff's alleged injury must be "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). But the LULAC Plaintiffs have not met this basic standard for injury-in-fact with regard to the Attorney General. As State Defendants explained in their Motion, the Texas Court of Criminal Appeals recently held that the Attorney General is not empowered to unilaterally enforce the challenged provisions. ECF 243 at 8-9, 11-12. Further, any suggestion that this status quo will change in the future is highly speculative. In response, the LULAC Plaintiffs first disclaim that their allegations in any way involve future injury. ECF 281 at 7. Confusingly, they then invoke legal authority for showing future injury, relying on *City of Austin v. Abbott* in the very next paragraph to explain that the plaintiff there "had standing to sue the Attorney General because it pled that future enforcement of the challenged law would injure it." ECF 281 at 8 (citing 385 F. Supp. 3d 537, 545 (W.D. Tex. 2019)). Plaintiffs' shifting rationales aside, they have failed to establish associational standing to sue the Attorney General under either an "actual" or "imminent" injury theory.

First, Plaintiffs have not plausibly alleged that they are currently suffering harm caused by the Attorney General. As State Defendants have pointed out, the LULAC Plaintiffs do not claim that any district or county attorney has sought the Attorney General's assistance in prosecuting violations of the challenged SB1 provisions. ECF 243 at 9. Given the Texas Court of Criminal Appeals' recent decision in *State v. Stephens* that Texas Election Code § 273.021 is unconstitutional,[1] such an allegation

---

[1] *See generally State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) (holding that the Attorney General cannot initiate prosecution of election cases unilaterally, but instead is relegated to assisting district or county attorneys upon request). Although State Defendants still maintain that *Stephens*

is necessary for any ongoing injury allegedly suffered by Plaintiffs to be traceable to the Attorney General. Plaintiffs offer nothing but speculation about the future decisions of the Court of Criminal Appeals. *See* ECF 281 at 7. To the extent Plaintiffs claim they are currently chilled by the mere possibility of that court changing its mind, *see id.*, that is a self-inflicted injury. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

Plaintiffs also cannot demonstrate that an injury is imminent. Future injuries must be "certainly impending" or present "a substantial risk that the harm will occur" in order to meet the requirements of Article III. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Plaintiffs attempt to meet this burden by advancing two arguments, neither of which is availing. First, Plaintiffs point to the State's motion for reconsideration in *Stephens*, presenting the hypothetical that "*[i]f successful*, the Attorney General would regain the power to unilaterally prosecute purported election-law offenses." ECF 281 at 8 (emphasis added). The qualifier at the beginning of that statement gives the game away, as requesting that a court reconsider its decision falls far short of imposing a "certainly impending" injury or presenting a "substantial risk" of prosecution. Second, Plaintiffs argue that "there is no reason to believe that local prosecutors will in all instances reject the Attorney General's assistance in investigating and prosecuting purported offenses." ECF 281 at 8. But that argument places the burden on the wrong party. State Defendants are not required to prove that no request for assistance will ever come from local prosecutors. Quite the opposite in fact, as it is Plaintiffs' burden to establish standing. *See, e.g.*, *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Plaintiffs fail to carry that burden.

---

was wrongly decided, this Court is nonetheless bound by that decision unless and until it is withdrawn or overruled.

### B. Plaintiffs have not demonstrated that Section 7.04 denies any of their members voting assistance from a person of their choice.

The LULAC Plaintiffs also cannot establish associational standing with regard to Count IV, which alleges that Section 7.04 of SB1 violates Section 208 of the Voting Rights Act. *See* ECF 207 ¶¶ 287-94. To briefly review, Section 7.04 creates an offense for any person that either "knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit" or "knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services." Tex. Elec. Code § 276.015.[2] In their Second Amended Complaint, the LULAC Plaintiffs allege that Section 7.04 injures their members by preventing them from providing or receiving assistance. ECF 207 ¶¶ 292-93.

However, the LULAC Plaintiffs fail to allege that a "specific member" will be injured by being denied voting assistance from a person of his choice. ECF 243 at 14 (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)). In response, Plaintiffs rely upon an unpublished Fifth Circuit opinion for the proposition that they need not "set forth the name of a particular member in [their] complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." ECF 281 at 9 (quoting *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012)). That is wrong for the reasons State Defendants already explained, *see* ECF 243 at 15 n.2, but even if Plaintiffs were correct that they are not required to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021). Plaintiffs' allegation that Section 7.04 "effectively prevent[s] *broad categories* of individuals from assisting voters," which in turn purportedly denies some undefined subset of "eligible voters"

---

[2] Subsection D of this provision also creates an offense "if the person knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services." The LULAC Plaintiffs, however, makes no reference to this portion of the provision in either their Second Amended Complaint, *see* ECF 207 ¶¶ 287-94, or in their Response, *see* ECF 281 at 10-11.

4

the right to receive assistance, does not meet this standard. *See* ECF 207 ¶ 293 (emphasis added). Without more specific allegations of individualized harm to its members, Plaintiffs cannot demonstrate that any member is entitled to such assistance and injured by its denial.

Second, the LULAC Plaintiffs' Section 208 claim also fails because such claims require the participation of individual members. ECF 243 at 15-16. This is because an individual's entitlement to assistance under Section 208 is based on that specific voter's disability and the assistance necessary to accommodate him. *Id.* at 16. Without alleging such facts, Plaintiffs cannot satisfy the third requirement for associational standing. *See Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019) (stating that the third element in the three-part associational standing test is that "neither the claim asserted nor the relief requested requires participation of individual members"). Plaintiffs respond by citing *Prison Justice League v. Bailey* for the proposition that this requirement is satisfied if their "claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." ECF 281 at 10 (quoting 697 F. App'x 362, 363 (5th Cir. 2017) (per curiam)). However, as highlighted above, specific information about "representative injured members" is exactly what their Second Amended Complaint lacks. The LULAC Plaintiffs' pleading is also devoid of any factual allegations that at least one of their members would choose to receive voting assistance from an individual that is compensated for providing such assistance, which independently dooms their argument for associational standing. Even if an identifiable individual is entitled to assistance under Section 208, that individual—and by extension Plaintiffs—is not injured unless Section 7.04 prevents him from receiving that assistance from someone that he would otherwise select.

### C. Plaintiffs have not alleged an organizational injury sufficient to confer standing.

State Defendants' Motion also discussed in detail each of the LULAC Plaintiffs' allegations of organizational injury. ECF 243 at 17-19. In response, Plaintiffs continue to exclusively rely on a diversion-of-resources theory to support organizational standing, but they fail to address the crucial

5

inquiry accompanying that theory: Had Plaintiffs instead chosen not to divert resources, would the challenged provisions have inflicted a legally cognizable injury? *See Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (stating that any "change in plans must still be in response to a reasonably certain injury imposed by the challenged law"). True, Plaintiffs vaguely allege that "LULAC must divert resources from other programs and activities to address the adverse impacts SB 1." ECF 207 ¶ 20. However, when pressed on exactly what those adverse impacts are that the organization must avoid, the LULAC Plaintiffs' only response is to allege harm to its unidentified members. *See* ECF 281 at 12 (invoking the "new barriers to registration and voting" that its "members and constituents" must supposedly surmount). That is an unmeritorious argument for associational standing, not a meritorious argument organizational standing.

The LULAC Plaintiffs have failed to come to grips with the rule that "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. Instead, the diversion of resources only constitutes a cognizable injury if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Instead of explaining an injury they would have suffered if they had not diverted their resources, Plaintiffs focus on the alleged injuries flowing from diversion itself. *See, e.g.*, ECF 281 at 12. That is not enough.

## II. Plaintiffs' Purported Injuries Can Neither be Traced to State Defendants Nor Redressed by the Relief Requested.

### A. Plaintiffs have not established standing on a provision-by-provision basis.

The Supreme Court recently reiterated that "standing is not dispensed in gross." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)); *accord, e.g.*, *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442 (5th Cir. 2022) (quoting *Lewis*, 518 U.S. at 358 n.6). Rather, a court must "determine, provision by provision, if there [is] a claimant with standing to challenge" each measure involved in the suit before it. *Serv. Employees Intern. Union, Local 5*

*v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 233 (1990)); *see also In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) ("It is now beyond cavil that plaintiffs must establish standing for each and every provision they challenge."). The LULAC Plaintiffs lack standing to challenge any of the complained of provisions. In fact, they barely attempt to argue otherwise.

Plaintiffs' Second Amended Complaint purported to challenge 19 specific provisions of SB1 in the two claims brought against State Defendants. ECF 207 ¶¶ 252, 291; *see also id.* at pp. 62-63 (praying for declaratory and injunctive relief in subparts a, d, e, and h). Specifically, they challenge Sections 3.04, 3.09–3.10, 3.12–3.13, 4.01–4.02, 4.06–4.07, 4.09, 4.12, 5.01–5.03, 5.07–5.08, 6.03–6.04, and 7.04 of SB1. *Id.* However, the LULAC Plaintiffs now appear to have abandoned all but one of their claims as to those provisions. *See* ECF 281 at 7 (attempting to connect the Secretary of State to the enforcement of Section 6.03). The lone remaining challenge implicates only the Secretary of State. Their argument with regard to the Attorney General is even more paltry, as they forgo any reference to specific provisions and instead cite six paragraphs in their Complaint, none of which engage in the kind of provision-by-provision analysis that is required to demonstrate standing. *Id.* (citing ECF 207 ¶¶ 2, 22, 23, 221, 224, and 283). As State Defendants pointed out in their Motion, this simply "does not suffice" to meet Plaintiffs' burden. ECF 243 at 11. This failure to respond constitutes abandonment of Plaintiffs' claims regarding 18 of the 19 provisions they purport to challenge. *See, e.g.*, *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding plaintiff abandoned claim when she failed to defend claim in response to a motion to dismiss).

By contrast, State Defendants painstakingly addressed each of the SB1 sections for which the LULAC Plaintiffs seek relief. *See* ECF 243 at 3-8. State Defendants chose to do so primarily in the

context of discussing the *Ex parte Young* exception to sovereign immunity.[3] However, even if this Court finds an alternative waiver of sovereign immunity under the Voting Rights Act,[4] these considerations still remain central because the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)). Despite State Defendants' clear reference to this overlap in their discussion of standing, ECF 243 at 11, the LULAC Plaintiffs contend that State Defendants' lack of enforcement powers is "irrelevant" to determining standing "because neither the Attorney General nor the Secretary enjoy sovereign immunity from this suit," ECF 281 at 6. On the contrary, a connection to enforcement is required for Article III standing as well. Even when sovereign immunity does not apply, courts are bound by "the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (citing *Muskrat v. United States*, 219 U.S. 346 (1911)).

Plaintiffs fundamentally misunderstand the interplay between these two legal doctrines. Just because the analyses required for standing and *Ex parte Young* share in common certain factors, it does not follow that the instances in which those factors must be applied are somehow coextensive. To take one obvious example, sovereign immunity "can be waived by the state" even though it "partakes of the nature of a jurisdictional bar." *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001). By contrast,

---

[3] State Defendants still maintain that the *Ex parte Young* exception to sovereign immunity is inapplicable in this case. However, the LULAC Plaintiffs have now clarified that they are relying exclusively on the Voting Rights Act to waive sovereign immunity, and thus "the State Defendants' extensive discussion of whether the *Ex parte Young* exception to sovereign immunity applies to the Secretary and Attorney General is irrelevant." ECF 281 at 3. Accordingly, State Defendants instead focus on the LULAC Plaintiffs' lack of Article III standing in this Reply.

[4] As State Defendants explained in their Motion, the unreasoned holding in *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017), that the Voting Rights Act abrogates sovereign immunity is incorrect as a matter of law. *See* ECF 243 at 10. However, having already preserved that argument for appeal, State Defendants will not unnecessarily belabor the point here.

constitutional standing is a fully "jurisdictional requirement" that "cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). In fact, courts are even "obliged to examine standing *sua sponte* where standing has erroneously been assumed." *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001). That State Defendants' provision-by-provision analysis applied to both doctrines should have been obvious from the face of their Motion. *See* ECF 243 at 11 ("However, traceability and redressability are still required even when sovereign immunity is inapplicable."). The LULAC Plaintiffs cannot escape the requirements of Article III merely by arguing that sovereign immunity has been waived.

### B. Plaintiffs' purported injuries are neither traceable to the Attorney General nor judicially redressable.

Rather than engage in the kind of provision-by-provision analysis that is required, the LULAC Plaintiffs continue to treat SB1 as an undifferentiated whole that can be challenged in the aggregate, particularly with regard to their claims against the Attorney General. Indeed, two of the provisions that Plaintiffs first appeared to rely on for standing to sue the Attorney General—Sections 2.04 and 2.08, *see* ECF 207 ¶ 27—are neither challenged in their Complaint nor mentioned in their Response. *See* ECF 207 ¶¶ 252, 291; *id.* at pp. 62-63 (praying for declaratory and injunctive relief in subparts a, d, e, and h); ECF 281 at 7-8 (neglecting to discuss those provisions in relation to criminal enforcement of SB1). Because Plaintiffs seek no relief with regard to those provisions, any alleged injuries that Section 2.04 or Section 2.08 might cause are not redressable in this litigation.

In their Response, the LULAC Plaintiffs instead vaguely allege that their members are under "the constant threat of criminal prosecution" by the Attorney General, despite acknowledging in the same breath binding precedent foreclosing such a threat. ECF 281 at 7 (quoting ECF 207 ¶ 224). As an initial matter, the Attorney General's lack of enforcement power means that Plaintiffs have no standing for the injunctive relief they request, as there is nothing for the Court to enjoin. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (stating that "a plaintiff must

demonstrate standing separately for each form of relief sought"). Furthermore, an unenforceable statute cannot support standing. As the Supreme Court held last year, "[t]o find standing here to attack an unenforceable statutory provision would allow a federal court to issue what would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (internal quotation marks omitted).

Undeterred, Plaintiffs further argue "that *Stephens* has not obviated this threat" of enforcement, ECF 281 at 7, as "[t]he Attorney General has demonstrated a strong interest in exercising [his] power" to prosecute such offenses upon request from a local prosecutor, *id.* at 8. But the Attorney General's alleged desire to prosecute individuals for election law violations is immaterial if the Court of Criminal Appeals will not let him do so. After all, it is one thing to note that the Attorney General has statutory authority to accept a prosecution invitation from a district attorney. It is quite another to allege specific facts showing that that the Attorney General is likely to do so in a case involving one of the LULAC Plaintiffs or their members. *See City of Austin*, 943 F.3d at 1002 (explaining that just because the Attorney General has "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here."). Absent those facts, the LULAC Plaintiffs' alleged injuries are not fairly traceable to the Attorney General.

Nor do Plaintiffs satisfy Article III's requirement for redressability, which demands that a plaintiff demonstrate "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *El Paso Cty., Texas v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020). Plaintiffs rely on two cases to argue that they satisfy this requirement, but neither applies here. First, Plaintiffs cite *NiGen Biotech LLC v. Paxton* for the proposition that "where a plaintiff's complaint alleges a continuing violation or the imminence of a future violation, a prayer for injunctive relief satisfies redressability." ECF 281 at 8 (quoting 804 F.3d 389, 397 (5th Cir. 2015)). That case involved the Attorney General sending letters to the plaintiff company after determining that the company's product violated the Texas Deceptive

Trade Practices Act. *NiGen Biotech*, 804 F.3d at 392. Importantly, though, there was no question that the Attorney General was empowered to take formal enforcement action pursuant to the DTPA. *See City of Austin*, 943 F.3d at 1001. As discussed above, that is decidedly not the case with regard to any criminal sanctions that might accompany violations of the provisions challenged here.

The LULAC Plaintiffs also rely on *City of Austin v. Abbott* for the proposition that where "the attorney general bears some connection to enforcement of the statute," an injunctive order "would redress that injury." ECF 281 at 8 (quoting 385 F. Supp. 3d at 545). That decision involved SB 1004, which imposed new standards on telecommunications companies installing "small cell nodes" and placed limits on the fees that cities could charge for issuing permits for their installation and use. 385 F. Supp. 3d at 540. The court held that the City had demonstrated that it would lose revenue because of the statute, and thus that "an order enjoining SB 1004's implementation would redress that injury." *Id.* at 545. Importantly, however, the court only reached this decision because the Attorney General was empowered to sue political subdivisions if their ordinances were pre-empted by state law. *Id.* 544-45. The plausibility of such a suit in relation to SB 1004 was sufficient to meet the requirement that the Attorney General have a "connection to enforcement of the statute" for purposes of *Ex parte Young*.

However, unlike *City of Austin v. Abbott*, there is no connection between the Attorney General and prosecuting violations of challenged the statute. Furthermore, *City of Austin v. Abbott* is inconsistent with the Fifth Circuit's later opinion in *City of Austin v. Paxton*. 943 F.3d at 1001–02 (invoking Article III's "significant possibility of future harm" standard to support its conclusion that the Attorney General lacked "the requisite 'connection to the enforcement'" of the challenged statue). And the Fifth Circuit has since expressly held that a "general duty to enforce the law is insufficient" to make the Attorney General a proper defendant. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) (rejecting plaintiff's invocation of *City of Austin v. Abbott* to argue that a general

11

duty to enforce and uphold the law provided a sufficient connection to enforcement). Put simply, enjoining the Attorney General from taking an action that he is already prevented from taking can provide no relief to the LULAC Plaintiffs.

### C. Plaintiffs' purported injuries are neither traceable to the Secretary of State nor judicially redressable.

The LULAC Plaintiffs also fall short of demonstrating that the Secretary of State causes their alleged injuries and that those injuries are capable of judicial redress in this case. In half-heartedly attempting to engage in the kind of provision-by-provision analysis that is required for standing, Plaintiffs rely on only two provisions of SB1 in relation to the Secretary of State. Specifically, Plaintiffs invoke Sections 4.04 and 6.03 for the proposition that "the Secretary is authorized to create a mandatory training program for poll watchers and is required to certify poll watchers before they can serve at local polling places." ECF 281 at 7. As an initial matter, that description appears to only refer to Section 4.04, which requires the Secretary of State to "develop and maintain a training program for [poll] watchers" and "provide a watcher who completes the training with a certificate of completion." Tex. Elec. Code § 33.008. By contrast, Section 6.03 requires the Secretary of State to "prescribe the form required" for an individual "who assists a voter" pursuant to Chapter 64 of the Texas Election Code. *See* Tex. Elec. Code § 64.0322. Plaintiffs' Response is notably silent on how Section 6.03 can be fairly traced to any injury that they allege. In any regard, neither of these provisions can support the LULAC Plaintiffs' standing to sue the Secretary of State.

Giving their argument its most generous reading, Plaintiffs appear to contend that Section 4.04 causes them harm by training poll watchers in accordance with SB1, which in turn allows poll watchers to "engag[e] in activities that harass and intimidate voters." ECF 281 at 7. Section 4.04, however, imposes no injury because election officials would be obligated to follow SB1's poll watcher provisions even in the absence of this training. Similarly, Section 6.03 is not traceable to any harm Plaintiffs allege because the legal requirements for persons providing voting assistance would remain

12

even in the absence of the prescribed form. Additionally, Section 6.03 requires the form to "be submitted to an election officer at the time the voter casts a ballot," not the Secretary of State. SB1's training program and the prescription of a form are too far attenuated from any alleged harm to support standing.

Additionally, any purported injury caused by Section 4.04 is not redressable. Just as with Sections 2.04 and 2.08 in relation to the Attorney General, the LULAC Plaintiffs neither challenge Section 4.04 in their Second Amended Complaint nor pray for relief from this provision. *Compare* ECF 207 ¶ 26 (briefly referencing Section 4.04 as a means of introducing the Secretary of State as a Defendant), *with id.* at ¶¶ 252, 291 (failing to list Section 4.04 as a provision that injures them), *and id.* at pp. 62-63 (failing to pray for relief in relation to Section 4.04). Plaintiffs' failure to either challenge or seek relief from Section 4.04 provides an independent reason to find that the LULAC Plaintiffs lack standing to challenge that provision.

## CONCLUSION

The State Defendants respectfully request that the Court grant their Motion and dismiss the claims asserted by the LULAC Plaintiffs.

Date: March 2, 2022                                Respectfully submitted.

KEN PAXTON                                         */s/ Patrick K. Sweeten*
Attorney General of Texas                          PATRICK K. SWEETEN
                                                   Deputy Attorney General for Special Litigation
BRENT WEBSTER                                      patrick.sweeten@oag.texas.gov
First Assistant Attorney General                   Tex. State Bar No. 00798537

                                                   WILLIAM T. THOMPSON
OFFICE OF THE ATTORNEY GENERAL                     Deputy Chief, Special Litigation Unit
P.O. Box 12548 (MC-009)                            will.thompson@oag.texas.gov
Austin, Texas 78711-2548                           Tex. State Bar No. 24088531
Tel.: (512) 463-2100
Fax: (512) 457-4410                                ERIC A. HUDSON
                                                   Senior Special Counsel
                                                   eric.hudson@oag.texas.gov
                                                   Tex. Bar No. 24059977

13

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending

LEIF A. OLSON
Special Counsel, Special Litigation Unit
leif.olson@oag.texas.gov
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 2, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN