# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

LA UNIÓN DEL PUEBLO ENTERO, *et al.*,
    *Plaintiffs*,

v.

GREG ABBOTT, *et al.*,
    *Defendants*.

Case No. 5:21-cv-844-XR
[Lead Case]

# STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE LUPE PLAINTIFFS' SECOND AMENDED COMPLAINT

# Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 1

    I.   Plaintiffs Do Not Plausibly Allege a Waiver of Immunity Under *Ex parte Young*. ..................... 1

        A.  The Secretary of State is not connected to enforcing the challenged provisions. ............... 1

        B.  The Attorney General also lacks a sufficient connection to enforcement. ......................... 5

    II.  The LUPE Plaintiffs Lack Standing. ........................................................................... 7

        A.  Plaintiffs cannot rely on nonexistent requests for assistance from local prosecutors to establish standing to sue the Attorney General. ....................................................... 7

        B.  Plaintiffs lack organizational standing. ........................................................................ 9

        C.  Plaintiffs lack associational standing. ......................................................................... 10

        D.  Plaintiffs' disability-related claims are incompatible with associational standing. ............... 10

Conclusion ........................................................................................................................ 12

TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adarand Constructors, Inc. v. Mineta*,
  534 U.S. 103 (2001) ...................................................................................................................7

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
  851 F.3d 507 (5th Cir. 2017) .......................................................................................................2

*Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2017) .....................................................................................................11

*City of Austin v. Abbott*,
  385 F. Supp. 3d 537 (W.D. Tex. 2019) .......................................................................................5

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ................................................................................................. 2, 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................................................8

*Cornerstone Christian Sch. v. UIL*,
  563 F.3d 127 (5th Cir. 2009) .....................................................................................................10

*Cressman v. Thompson*,
  719 F.3d 1139 (10th Cir. 2013) ..................................................................................................3

*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) .....................................................................................................10

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ........................................................................................................... 7, 8

*Digital Recognition Network, Inc. v. Hutchinson*,
  803 F.3d 952 (8th Cir. 2015) .......................................................................................................2

*Doe v. Bailey*,
  No. 4:14-cv-2985, 2015 WL 5737666 (S.D. Tex. Sept. 30, 2015) ............................................11

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
  11 F.4th 68 (2d Cir. 2021) .........................................................................................................10

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
  487 F. App'x 189 (5th Cir. 2012) ..............................................................................................10

*Hunter v. Branch Banking & Tr. Co.*,
  No. 3:12-cv-2437, 2013 WL 4052411 (N.D. Tex. Aug. 12, 2013) ...........................................11

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) ...........................................................................................3

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) .........................................................................................9

*Longoria v. Paxton*,
   No. 21-cv-1223, 2022 U.S. Dist. LEXIS 25670 (W.D. Tex. Feb. 11, 2022) ....................3

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014) .......................................................................................4, 5

*N.A.A.C.P. v. City of Kyle, Tex.*,
   626 F.3d 233 (5th Cir. 2010) .......................................................................................9, 10

*NiGen Biotech, L.L.C. v. Paxton*,
   804 F.3d 389 (5th Cir. 2015) ...........................................................................................2

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ...........................................................................................2

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) ....................................................................................2, 5, 6

*Serv. Employees Intern. Union, Local 5 v. City of Houston*,
   595 F.3d 588 (5th Cir. 2010) ...........................................................................................3

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ........................................................................................................10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................................7

*State v. Stephens*,
   No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ..........................4

*Support Working Animals, Inc. v. Governor of Florida*,
   8 F.4th 1198 (11th Cir. 2021) ..........................................................................................3

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................................................7

*Tex. Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) ...........................................................................................4

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ...................................................................................2, 3, 5

*Tex. Democratic Party v. Hughs*,
   860 F. App'x 874 (5th Cir. 2021) ....................................................................................... 2, 4

*United States v. Armstrong*,
   517 U.S. 456 (1996) ................................................................................................................ 7

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) .................................................................................................. 9

**STATUTES**

Tex. Elec. Code § 15.028 ................................................................................................................ 5

Tex. Elec. Code § 31.006 ................................................................................................................ 5

Tex. Elec. Code § 33.051 ................................................................................................................ 5

Tex. Elec. Code § 33.061 ................................................................................................................ 5

Tex. Elec. Code § 64.009 ................................................................................................................ 5

Tex. Elec. Code § 64.034 ................................................................................................................ 5

Tex. Elec. Code § 276.015 .............................................................................................................. 5

INTRODUCTION

In their Motion to Dismiss, the Secretary of State, Attorney General, and State of Texas (together, the "State Defendants") explained the key deficiencies in the LUPE Plaintiffs' Second Amended Complaint. ECF 255. The Plaintiffs' responses are unavailing. ECF 301. The Court should dismiss their complaint.

The LUPE Plaintiffs have still not established the requisite connection between the provisions they challenge and enforcement by either the Secretary of State or the Attorney General. Thus, the *Ex parte Young* exception to sovereign immunity does not apply. For this reason alone, the Court should dismiss at least those claims not involving the Voting Rights Act.

The LUPE Plaintiffs also lack standing. They fail to establish an imminent future injury because they have not plausibly alleged that the Attorney General will work with county or district attorneys to prosecute them or their members. Instead, they cite inapposite precedent. The LUPE Plaintiffs also fail to establish organizational standing since their alleged diversion of resources was not undertaken to avoid organizational injury. And they lack associational standing both because they have failed to allege specific injuries to identifiable members of their organizations and because their disability-related claims contain an individualized element that is incompatible with associational standing.

Having amended their pleadings twice, the LUPE Plaintiffs still fail to adequately allege facts supporting both standing and a waiver of sovereign immunity. Their suit should be dismissed.

ARGUMENT

I.  **Plaintiffs Do Not Plausibly Allege a Waiver of Immunity Under *Ex parte Young*.**

   A.  **The Secretary of State is not connected to enforcing the challenged provisions.**

In their Motion to Dismiss, State Defendants thoroughly analyzed each of the 23 provisions of SB1 challenged by the LUPE Plaintiffs, demonstrating how there was no connection between their

1

enforcement and the Secretary of State. ECF 255 at 2–6. Plaintiffs, however, have failed to do the same, despite it being incumbent on them to engage in "a provision-by-provision analysis" and "identify the Secretary's specific duties within the particular statutory provision" when asserting that the *Ex parte Young* immunity exception applies.[1] *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877–78 (5th Cir. 2021) (per curiam) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 175, 179–81 (5th Cir. 2020)). Instead, Plaintiffs shirk the required analysis by denying that it exists. ECF 301 at 5–6. They are wrong as a matter of law.

The Fifth Circuit has repeatedly recognized that the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'"[2] *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)); *see also NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015) (comparing *Ex parte Young*'s requirements with the "Article III minimum for standing to request an injunction"); *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) ("The requirements of *Lujan* are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute."). Other circuits have also recognized the inherent similarities between the two doctrines. *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015) ("[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision."); *see also Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198,

---

[1] As State Defendants explained in their Motion, the unreasoned holding in *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017), that the Voting Rights Act abrogates sovereign immunity is incorrect as a matter of law. *See* ECF 255 at 9. However, having already preserved that argument for appeal, State Defendants will not unnecessarily belabor the point here.

[2] As State Defendants have explained, the LUPE Plaintiffs also fail to satisfy Article III's requirements for traceability and redressability for all of their claims. ECF 255 at 11–13. However, given the significant overlap between that analysis and *Ex parte Young*, and in the interest of brevity, State Defendants have elected not to address traceability and redressability separately in this reply where that analysis would merely repeat their *Ex parte Young* arguments here.

1202 (11th Cir. 2021) (quoting *Digital Recognition Network*); *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013) (employing nearly identical phrasing). Furthermore, "[i]t is now beyond cavil that plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019); *see also Serv. Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010) (stating that a court must "determine, provision by provision, if there [is] a claimant with standing to challenge" each measure involved in the suit before it). Given the well-established requirement for a provision-by-provision analysis in the context of Article III, along with the widely recognized overlap between standing and the *Ex parte Young* analysis, it is unsurprising that the Fifth Circuit would explicitly declare its longstanding practice that "the official must have the requisite connection to the enforcement of *the particular statutory provision* that is the subject of the litigation" for purposes of *Ex parte Young. See Tex. Democratic Party*, 978 F.3d at 179 (emphasis added).

In response, the LUPE Plaintiffs first cite Section 18.065(a) of the Texas Election Code, which pre-dates the passage of SB1. That provision requires the Secretary to "monitor each registrar for substantial compliance" with certain other provisions, none of which were themselves added or amended by SB1. Plaintiffs nonetheless use this provision, and the new $1,000 fine associated with it, to argue that there is "some authority to compel compliance with the law or constrain a person's ability to violate the law." ECF 301 at 7 (quoting *Longoria v. Paxton*, No. 21-cv-1223, 2022 U.S. Dist. LEXIS 25670 (W.D. Tex. Feb. 11, 2022)). But Plaintiffs are not registrars. Even if the provision were to compel registrars to comply, it does not follow that Plaintiffs have also been compelled to comply. And the Secretary of State does not even collect the $1,000 penalty from those registrars, adding yet another layer of attenuation. Given that a different government official is charged with collecting this penalty from a group of individuals that do not include the LUPE Plaintiffs, Section 18.065 falls short of demonstrating a connection between the Secretary and enforcement of the challenged provisions.

3

Plaintiffs also invoke Section 31.006 of the Texas Election Code, which requires the Secretary to promptly refer information to the Attorney General if he reasonably suspects that criminal conduct related to an election has occurred. However, as State Defendants have explained, the mere sharing of information with another government official does not constitute compulsion or constraint for purposes of *Ex parte Young*. ECF 255 at 3–4. Further, information sharing is a particularly flimsy basis to establish an enforcement connection where, as here, this State's highest criminal court has recently held that the would-be recipient cannot unilaterally prosecute election-related criminal offenses.[3] If the Attorney General is not sufficiently connected to enforcement, providing the Attorney General information certainly cannot justify the application of *Ex parte Young*.

The LUPE Plaintiffs next rely on the Secretary's general duties under Sections 31.003–31.004 of the Texas Election Code. But "it is not enough that the official have a 'general duty to see that the laws of the state are implemented.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Rather, a plaintiff "must identify the Secretary's specific duties within the particular statutory provision." *Tex. Democratic Party*, 860 F. App'x at 877. The Secretary of State's duties to prepare and distribute written guidance and other advice on election laws does not amount to compulsion or constraint.

Plaintiffs also try to connect the Secretary to alleged election-worker injuries from certain provisions involving poll watchers—first invoking the general duties just discussed and then arguing that "SB1 goes a step further" by requiring the Secretary to train poll watchers and to design forms for county use. ECF 301 at 8–9. However, the substantive provisions of SB1 must be enforced by

---

[3] *See generally State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) (holding that the Attorney General cannot initiate prosecution of election cases unilaterally, but instead is relegated to assisting district or county attorneys upon request). Although State Defendants still maintain that Stephens was wrongly decided, this Court is nonetheless bound by that decision unless and until it is withdrawn or overruled.

local election officials regardless of whether the Secretary promulgates forms or training materials. As such, the substance of Plaintiffs' complaint lies with local election officials, not the Secretary of State.

### B. The Attorney General also lacks a sufficient connection to enforcement.

The LUPE Plaintiffs challenged the same 23 provisions of SB1 regarding the Attorney General, but again have failed to establish the requisite connection to enforcement. They first rely on the Attorney General's "freestanding sovereign interest" in enforcing Texas law. ECF 301 at 10 (quoting *City of Austin v. Abbott*, 385 F. Supp. 3d 537, 545 (W.D. Tex. 2019)). But Plaintiffs ignore that the Fifth Circuit repudiated this rationale. *See Tex. Democratic Party*, 978 F.3d at 181 (specifically citing *City of Austin*, 385 F. Supp. 3d at 545, and rejecting its reasoning). Indeed, it is now well-established that "[a] general duty to enforce the law is insufficient for *Ex parte Young*." *Id.*; *see also Morris*, 739 F.3d at 746 ("The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" (quoting *Okpalobi*, 244 F.3d at 416)). Because this general duty cannot support the LUPE Plaintiffs' *Ex parte Young* argument, they must fall back on the required provision-by-provision analysis. Yet Plaintiffs cannot make this showing, and in fact barely even try.

The LUPE Plaintiffs cite seven statutory provisions amended by SB1 in support of their *Ex parte Young* argument.[4] ECF 301 at 11. None establish the necessary connection between the Attorney General and enforcement. As State Defendants previously explained, two sections (2.04 and 2.08) merely deal with the Attorney General receiving information. ECF 255 at 3, 7. That is not enforcement, by the Attorney General or anyone else. Another section (6.01) allows the Attorney General to examine forms filled out by individuals transporting seven or more voters to the polls,

---

[4] Those provisions are Sections 15.028, 31.006, 64.009, 33.051, 33.061, 64.034, and 276.015 of the Texas Election Code, which were amended by SB1 Sections 2.04, 2.08, 6.01, 4.06, 4.09, 6.04, and 7.04, respectively.

5

which also amounts to the receipt of information, not compulsion or constraint.[5] ECF 255 at 8. A fourth section (6.04) requires voting assistors to take an oath "administered by an election officer at the polling place." Patently, the Attorney General has no related enforcement role. ECF 255 at 5. Two other sections (4.06 and 4.09) create misdemeanor offenses for refusing to accept a poll watcher and for obstructing a watcher's view. Similarly, one final section (7.04) creates offenses for vote harvesting, unlawful solicitation and distribution of application to vote by mail, unlawful distribution of early voting ballots and balloting materials, perjury in connection with certain election procedures, and unlawful altering of election procedures.

Many of these provisions do not even apply to Plaintiffs or their members, as they are instead aimed at certain public officials. And as State Defendants have explained, the *Stephens* precedent prevents the Attorney General from unilaterally prosecuting any of those offenses. ECF 255 at 8–9. The LUPE Plaintiffs' two-page discussion of various statements made about election integrity pre-date the *Stephens* decision, and so they cannot surmount this jurisdictional obstacle. *See* ECF 301 at 11–12.

In one last-ditch effort to avoid the *Stephens* decision, the LUPE Plaintiffs argue that State Defendants' belief that "*Stephens* was wrongly decided" and acknowledgement that the Attorney General is "seeking reconsideration" means that *Ex parte Young* applies after all. ECF 301 at 12. But Plaintiffs' assertion that "[t]he AG cannot have it both ways" misstates the issue and misses the point. *See id*. The *Stephens* precedent is binding on not only this Court, but on the Attorney General as well. And "[w]ithout at least the ability to commit the [allegedly] unconstitutional act by the official defendant, the [*Ex parte Young*] fiction cannot be sustained." *Okpalobi*, 244 F.3d at 421. Furthermore,

---

[5] Section 6.01 is the only provision that the LUPE Plaintiffs challenge pursuant to the Voting Rights Act but not under other theories. However, even if this Court is persuaded that the Voting Rights Act waives immunity, Plaintiffs must nonetheless satisfy the traceability and redressability requirements of Article III. The LUPE Plaintiffs cannot trace their alleged injuries to the Attorney General's examination of forms, nor would enjoining the Attorney General from receiving that information redress those injuries.

arguing that the Attorney General will violate binding state law is speculative and wrongly ignores the presumption of regularity afforded to government prosecutions. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[The] presumption of regularity supports [government officials'] prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (quotation omitted)).

**II.    The LUPE Plaintiffs Lack Standing.**

    **A.    Plaintiffs cannot rely on nonexistent requests for assistance from local prosecutors to establish standing to sue the Attorney General.**

Although the LUPE Plaintiffs' Complaint tried to establish standing on the theory that the Attorney General "may still assist the prosecuting district or county attorney upon request," ECF 208 ¶ 39, Plaintiffs have now all but abandoned that theory in their Response. However, this Court is nonetheless "obliged to examine standing *sua sponte* where standing has erroneously been assumed." *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001). Further, Plaintiffs still pay lip service to this theory of standing, even if only in passing. *See* ECF 301 at 22; *id.* at 13 n.19. Accordingly, State Defendants briefly reply.

To confer Article III standing, a plaintiff's alleged injury must be "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). To be imminent, future injuries must be "certainly impending" or present "a substantial risk that the harm will occur." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Plaintiffs attempt to meet this burden by showing that the Attorney General has helped local prosecutors before. ECF 301 at 22. But that is not enough. Plaintiffs must not only allege that local prosecutors will request and receive assistance prosecuting violations of the provisions they challenge, but also that those prosecutions will involve the LUPE Plaintiffs or their members. *See City of Austin*, 943 F.3d at 1002 (explaining that just because the Attorney General has "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do

7

the same here."). Because they fail to do so, Plaintiffs have not established an imminent future injury. Nor should this Court "accept[] a repackaged version of [Plaintiffs'] first failed theory of standing" based on their claims of present injury from being chilled from exercising their rights. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiffs cannot show an ongoing, actual injury here "because the harm [they] seek to avoid is not certainly impending." *Id.* Their allegations amount to a "subjective fear" that "does not give rise to standing." *Id.* at 418.

Additionally, the LUPE Plaintiffs' alleged injuries are not fairly traceable to any challenged action by the Attorney General. As State Defendants have noted, Plaintiffs rely on a "speculative chain of possibilities" that would require this Court to "abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." ECF 255 at 12 (quoting *Clapper*, 568 U.S at 414). The LUPE Plaintiffs respond by citing *Department of Commerce* for the proposition that "future actions of third parties can support standing where those parties have 'historically' behaved in a certain manner." ECF 301 at 22 (quoting the use of the word "historically" at 139 S. Ct. at 2566). But the Supreme Court's decision in that case cannot rescue Plaintiffs from their lack of standing here.

In *Department of Commerce*, the relevant third parties were "noncitizen households" that had "historically responded to the census at lower rates than other groups." 139 S. Ct. at 2566. Given that history, the Court found that such households would "likely react in predictable ways to the citizenship question" that the Secretary of Commerce announced would be added to the census questionnaire. *Id.* In other words, the Court found that noncitizen households would predictably react to something a government actor already did.

Yet here, Plaintiffs contend that (1) local prosecutors will ask the Attorney General for help, (2) the Attorney General will agree, *and* (3) private individuals will then react in predictable ways by limiting their legitimate activities. Plaintiffs argue as such based solely on the Attorney General's

8

history of taking certain actions. This is categorically different than the Supreme Court's holding in *Department of Commerce*. That case was about one group's likely action. This is speculation about a chain of events involving the actions of three separate and distinct groups. It is too attenuated to meet Article III's causation requirements.

B.     **Plaintiffs lack organizational standing.**

State Defendants' Motion also discussed in detail each of the LUPE Plaintiffs' allegations of organizational injury. ECF 255 at 16–21. In response, Plaintiffs continue to rely exclusively on a diversion-of-resources theory to support organizational standing without addressing the crucial element of that theory: Had Plaintiffs not diverted resources, would the challenged provisions have inflicted a legally cognizable injury? *See Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (stating that any "change in plans must still be in response to a reasonably certain injury imposed by the challenged law"). True, all five entities asserting organizational standing allege that they must divert resources "to counteract the negative effects of SB1." ECF 208 ¶¶ 162, 175, 192, 202, 209. However, the LUPE Plaintiffs fail to allege that SB1 would cause "negative effects" directly to their organization. Instead, Plaintiffs allege that SB1 would negatively affect the organization's members, other members of the community, and the voters the organizations claim to serve. *Id.* That is an unmeritorious argument for associational standing, not a meritorious argument organizational standing.

The LUPE Plaintiffs have failed to come to grips with the rule that "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). Instead, the diversion of resources constitutes a cognizable injury only if the plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). But Plaintiffs focus merely on the alleged injuries flowing from diversion itself. *See* ECF 301 at 16. That is not enough.

9

### C. Plaintiffs lack associational standing.

The LUPE Plaintiffs have also still failed to allege that the provisions they challenge harm a "specific member" of their organization. *See City of Kyle*, 626 F.3d at 237. Instead, Plaintiffs rely on an unpublished Fifth Circuit opinion for the proposition that they need not "set forth the name of a particular member in [their] complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." ECF 301 at 17 (quoting *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012)). That is wrong for the reasons State Defendants already explained, *see* ECF 255 at 15 n.3, but even if Plaintiffs were correct that they are not required to "name names," they would at least have to include "more specific" allegations "identifying members who have suffered the requisite harm." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75–76 (2d Cir. 2021). Plaintiffs' generalized allegations that some of their members are harmed by some of the provisions they challenge do not meet this standard. *See* ECF 301 at 18. Without more specific allegations of individualized harm to its members, Plaintiffs cannot demonstrate that "their members . . . have been injured in fact, and thus could have brought suit in their own right." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

### D. Plaintiffs' disability-related claims are incompatible with associational standing.

The LUPE Plaintiffs cannot establish associational standing for their disability-based claims—Count V under § 208 of the VRA and Count VI under the ADA—for another reason. By their very nature, it is more difficult for such claims to meet the requirement that "neither the claim asserted nor the relief requested requires participation of individual members." *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). And that difficulty turns to impossibility where, as here, the members' purported disabilities are dissimilar from one another. Whether a claim requires the participation of individual members turns on "the claim's substance," including whether it has an "individualized element." *Cornerstone Christian Sch. v. UIL*, 563 F.3d 127, 134 (5th Cir. 2009). State

Defendants explained that Plaintiffs' disability-related claims featured just such an individualized element in their Motion to Dismiss. ECF 255 at 15-16. The LUPE Plaintiffs have failed to respond. *See* ECF 301 at 17–19 (addressing their failure to plead injury of a specific member yet ignoring the third requirement for associational standing).

The LUPE Plaintiffs' ADA claim fails because such claims require the participation of individual members. ECF 255 at 15–16. Count VI alleges that six sections of SB1 violate Title II of the ADA.[6] *See* ECF 208 ¶ 281. However, ADA claims require individual-member participation because they implicate Texans with different disabilities, who in turn may need different forms of relief. To be sure, a plaintiff can satisfy associational standing if "claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." *Assoc. of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2017). But the injured members listed in Plaintiffs' second amended complaint *are not representative* of the organizations' members, or of disabled Texans as a whole. The result might be different if each member shared the same or similar disabilities—but they do not. As a result, the LUPE Plaintiffs cannot maintain associational standing. *Compare Doe v. Bailey*, No. 4:14-cv-2985, 2015 WL 5737666, at *5 (S.D. Tex. Sept. 30, 2015) (no associational standing where ADA plaintiffs had different physical conditions), *with Hunter v. Branch Banking & Tr. Co.*, No. 3:12-cv-2437, 2013 WL 4052411 at *6–8 (N.D. Tex. Aug. 12, 2013) (associational standing where ADA plaintiffs had same underlying physical conditions).

The LUPE Plaintiffs' Section 208 claim fails for the same reason. ECF 255 at 15–16. Count V also alleges that six sections of SB1 addressing voter assistance violate Section 208 of the Voting Rights Act.[7] *See* ECF 208 ¶ 267. But an individual's entitlement to assistance under Section 208 is based on that specific voter's disability and the assistance necessary to accommodate him. ECF 255

---

6   Sections 6.01, 6.03, 6.04, 6.05, 6.06, and 7.04 of SB1.
7   Again, Sections 6.01, 6.03, 6.04, 6.05, 6.06, and 7.04 of SB1.

at 16. Furthermore, the LUPE Plaintiffs' pleading is devoid of any factual allegations that at least one of their members would choose to receive voting assistance from an individual that is compensated for providing such assistance, which independently dooms their argument for associational standing with regard to Section 7.04 of SB1. Even if an identifiable individual is entitled to assistance under Section 208, that individual—and by extension Plaintiffs—is not injured unless the challenged provisions prevent him from receiving that assistance from someone that he would otherwise select. The LUPE Plaintiffs therefore lack associational standing to bring these claims.

## CONCLUSION

The State Defendants respectfully request that the Court grant their Motion and dismiss the claims asserted by the LUPE Plaintiffs.

Date: March 8, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
eric.hudson@oag.texas.gov
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
kathleen.hunker@oag.texas.gov
Tex. State Bar No. 24118415
*Application for Admission Pending

LEIF A. OLSON
Special Counsel, Special Litigation Unit
leif.olson@oag.texas.gov

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN