# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR <br> [Lead Case] |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION OF TEXAS SECRETARY OF STATE**

On March 14, 2022, Plaintiff the United States served the Texas Secretary of State, John B. Scott, with a deposition notice. This request—to depose a Texas constitutional officeholder and the sitting head of a state agency with over 180 employees—is unduly burdensome and unjustifiable.

The United States' deposition notice is improper for three independent reasons. First, the United States is seeking an unlawful "apex deposition." Second, Scott was not even the Secretary of State at the time SB1 was passed, and he lacks superior or unique knowledge compared to other lower level SOS employees. Therefore, deposing Secretary Scott is not calculated to lead to the discovery of relevant information. Third, the noticed deposition date presents a conflict for Secretary Scott's attendance.

For these reasons, the Texas Secretary of State respectfully asks the Court for a protective order from the deposition notice served on March 14, 2022, or, in the alternative, an order quashing the deposition notice.

## BACKGROUND

The United States claims that Senate Bill 1 (SB1)[1] is inconsistent with federal statutes. *See* ECF 131 ¶¶ 68, 75. The Texas Legislature approved SB1 on September 1, 2021, and the Governor signed it into law on September 7, 2021. But Secretary Scott was not serving as the Secretary of State at that time. Rather, he assumed his position on October 28, 2021—nearly two months after SB1's passage. *See* Exhibit A, Declaration of John B. Scott ¶ 2. Indeed, Secretary Scott has declared that he lacks personal knowledge of facts related to the enactment of the challenged provisions of SB1. *See* Ex. A ¶ 6. Furthermore, he has declared that he lacks unique or superior personal knowledge of facts related to implementation of the challenged provisions of SB1. *See* Ex. A ¶ 7.

The United States has previously served written discovery on the Office of the Secretary of State (*i.e.*, the Secretary of State in his official capacity). Yet none of those requests required the involvement of, or were verified by, Secretary Scott.[2] The answers to the United States' interrogatories, for example, were verified by the Director of Elections, Keith Ingram, who is scheduled to be deposed by the United States on April 28, 2022.[3] The United States has also issued a 30(b)(6) deposition notice to the Office of the Texas Secretary of State for April 26, 2022.[4]

The United States has not offered any justification for deposing Secretary Scott, much less identified unique personal knowledge known only to Secretary Scott. Nor has the United States identified deficiencies in the Office of the Secretary of State's previous discovery responses that only Secretary Scott could cure. In fact, the United States did not even confer with Defendants before

---

[1] The Election Integrity Protection Act of 2021, S.B. 1, 87th Leg., 2d C.S. (Tex. 2021).
[2] *See generally* Exhibit B, United States' First Set of Interrogatories; Exhibit C, United States' First Set of Requests for Admission; Exhibit D, United States' First Request for Production of Documents; Exhibit E, United States' Second Request for Production of Documents; Exhibit F, United States' Third Request for Production of Documents.
[3] *See* Exhibit G, Defendants' Objections and Responses to the United States' First Set of Interrogatories.
[4] *See* Exhibit H, The United States' Notice of Rule 30(b)(6) Deposition of the Office of the Texas Secretary of State.

noticing the deposition of the sitting Secretary of State.

**STANDARD**

A party is entitled to discovery of only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A court must limit the "extent of discovery" where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Upon motion and for good cause, a court may "issue an order to protect a party or person from . . . undue burden." FED. R. CIV. P. 26(c).[5]

**ARGUMENT**

**I.    The United States Seeks an Unlawful Apex Deposition**

Federal Rule of Civil Procedure 26(c) authorizes this Court to enter a protective order if a deposition would subject "a party or person" to "undue burden."[6] When the deponent is a high-ranking government official, there is a strong presumption of undue burden. This is known as the apex doctrine.

The Fifth Circuit has long held that, under this doctrine, "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) (quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)). "It is a settled rule in this circuit that 'exceptional circumstances must exist before the involuntary depositions of high agency

---

[5]    A motion for a protective order is the appropriate procedural vehicle here. *Compare* FED. R. CIV. P. 26(c) (explaining that "[a] party or any person from whom discovery is sought may move for a protective order"), *with* FED. R. CIV. P. 45(d)(3)(A) (providing that "[o]n timely motion, the court . . . must quash or modify *a subpoena* that . . . subjects a person to undue burden" (emphasis added)). But if this Court disagrees, the Secretary of State moves, in the alternative, for a motion to quash the deposition notice. *See In re FDIC*, 58 F.3d 1055, 1057 (5th Cir. 1995) (holding it was an abuse of discretion to "declin[e] to quash notices of deposition").

[6]    Federal Rule of Civil Procedure 45(d)(3)(A)(iv) allows the Court to quash a subpoena if it "subjects a person to undue burden." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) (citation omitted).

3

officials are permitted.'" *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quoting *In re Office of Inspector Gen.*, 933 F.2d at 278); *accord In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (per curiam). This principle is also firmly rooted in other circuits across the country.[7] And the discovering party bears the burden of showing that extraordinary circumstances exist. *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 179 (Tex. 2000) (orig. proceeding).

The United States seeks to depose the Texas Secretary of State, a high-ranking government official. Yet that would impede the exercise of his official duties, and the United States has not shown that exceptional circumstances require this deposition.

### A. The Texas Secretary of State is a high-ranking government official.

The apex doctrine acknowledges that "[h]igh-ranking government officials are the subject of or involved in unusually high numbers of lawsuits." *In re Bryant*, 745 F. App'x at 220–21. Accordingly, courts across the country have applied this doctrine to preclude depositions of or testimony by high-ranking executive-branch officials, including Directors of the FDIC,[8] EPA Administrators,[9] the CFTC chairman and commissioners,[10] the Vice President's Chief of Staff,[11] the U.S. Attorney General and Deputy Attorney General,[12] and the FDA Commissioner.[13]

Likewise, Texas courts carefully restrict the extent to which high-level government officials

---

[7] *E.g., Lederman v. N.Y.C. Dep't of Parks & Recreation*, 713 F.3d 199, 203–04 (2d Cir. 2013) (addressing both former and current officials); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify or [be] deposed regarding their reasons for taking official action."); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam) ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that [one] show a special need or situation compelling such testimony[.]"); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co.*, 766 F.2d at 586.

[8] *In re FDIC*, 58 F.3d at 1063.

[9] *In re McCarthy*, 636 F. App'x 142, 145 (4th Cir. 2015).

[10] *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 875 (7th Cir. 2019).

[11] *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).

[12] *In re United States ("Holder")*, 197 F.3d 310, 316 (8th Cir. 1999).

[13] *In re United States ("Kessler")*, 985 F.2d 510, 513 (11th Cir. 1993) (per curiam).

may be compelled to testify. For example, in 2001, the Texas Supreme Court granted mandamus relief when a trial court denied a motion to quash the depositions of Legislative Redistricting Board members. *In re Perry*, 60 S.W. 3d 857, 861 (Tex. 2001). A Texas appeals court held that the trial court abused its discretion by allowing pre-suit depositions of the Texas Comptroller. *Combs v. Tex. Civ. Rts. Project*, 410 S.W.3d 529, 537–39 (Tex. App.—Austin 2013, pet. denied). And another Texas appeals court granted mandamus relief from an order allowing the deposition of former President George W. Bush. *In re Bush*, 287 S.W.3d 899, 904–05 (Tex. App.—Dallas 2009, orig. proceeding).

The Texas Secretary of State is a high-level government official. He is one of six state officials under the Texas Constitution that form the Executive Department of the State—the other five being the Governor, Lieutenant Governor, Comptroller, Land Commissioner, and Attorney General. TEX. CONST. art. IV, § 1; *see also Combs*, 410 S.W.3d at 537 (barring the deposition of the Comptroller). The Secretary is the chief election officer of Texas, maintains records required to be filed with the office, publishes rules and regulations, commissions notaries public, attests to the Governor's signature on official documents, advises the Governor on Texas border and Mexican affairs, and serves as the chief international protocol officer for Texas. *See, e.g.*, TEX. CONST. art. IV, §§ 3, 14, 19, 20, 21, 26. To perform these functions, the Secretary oversees multiple divisions comprised of over 180 employees. *See* Ex. A ¶ 3.

**B. Subjecting the Secretary to testimony would impede the exercise of his official duties.**

Compelling testimony from high-ranking public officials creates unique concerns given their significant duties and time constraints. For one thing, there is a "potential for harassment" that exists if the head of a large government agency were routinely called to testify. *See In re Alcatel USA, Inc.*, 11 S.W.3d at 181. As the Fifth Circuit has explained, "[h]igh ranking government officials have greater duties than other witnesses." *In re FDIC*, 58 F.3d at 1060. And because high-ranking government officials "are the subject of or involved in unusually high numbers of lawsuits," they must "be

protected from undue burdens" from that "frequent litigation." *In re Bryant*, 745 F. App'x at 220–21.

Having to regularly testify would hamstring the ability of critical governmental decisionmakers to carry out their duties. Indeed, the Texas Constitution charges the Secretary of State with many duties. *See* TEX. CONST. art. IV, §§ 3, 14, 19, 20, 21, 26. And the Secretary oversees 180 employees split across various divisions. *See* Ex. A ¶ 3. All the while, the Office of the Texas Secretary of State is involved in numerous lawsuits in both federal and state courts. *See* Ex. A ¶ 10. The Secretary cannot reasonably be expected to be deposed in each of these lawsuits. Otherwise, it would severely hamper his ability to fulfill his constitutional and statutory duties. This is precisely why the apex doctrine exists.

**C. The United States has not shown that exceptional circumstances exist.**

A litigant cannot compel apex testimony absent a showing that "exceptional circumstances" exist and require "involuntary depositions of high agency officials." *In re FDIC*, 58 F.3d at 1060 (quoting *In re Office of Inspector Gen.*, 933 F.2d at 78). The putative witness must have unique or superior knowledge of relevant facts that the litigant has been unable to obtain through less intrusive methods. *See, e.g.*, *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995) (orig. proceeding). This applies when, as here, a party seeks testimony from a high-ranking public official and that official moves to block the request by presenting an affidavit or declaration denying personal knowledge of relevant facts. *Id.* at 128; *see also* Ex. A ¶¶ 6–7.

An official's denial of unique or superior knowledge shifts the burden to the discovering party to show otherwise. *See In re Alcatel USA*, 11 S.W.3d at 179; *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 656–57 (Tex. 2000) (orig. proceeding) (per curiam). "[I]f a discovering party cannot arguably show that a high-level official has unique or superior knowledge of discoverable information, the trial court must grant a motion for protection, 'and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods.'" *In re Daisy Mfg. Co.*, 17 S.W.3d at 656–57 (quoting *Crown Cent.*, 904 S.W. 2d at 128).

This requirement is not met by showing merely that the official has "some knowledge of discoverable information." *In re Alcatel USA*, 11 S.W.3d at 179. Instead, this step entails "some showing beyond mere relevance, such as evidence that a high-level executive is the only person with knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Id.* The discovering party must also show that it made "a good faith effort to obtain the discovery through less intrusive methods" and "that the less intrusive methods of discovery [were] unsatisfactory, insufficient[,] or inadequate." *Crown Cent.*, 904 S.W.2d at 128.

Here, the Texas Secretary of State has denied having unique or superior personal knowledge of relevant facts. Ex. A ¶¶ 6–7. Secretary Scott did not hold his current post when the challenged provisions of SB1 were enacted. *See* Ex. A ¶¶ 2, 4, 6. And as explained in Defendants' Motion to Dismiss, *see generally* ECF 145, the challenged provisions of SB1 are implemented by election officials at the local level, Ex. A ¶ 8. Therefore, Secretary Scott lacks unique or superior personal knowledge of information relevant to any of the United States' claims. *See* Ex. A ¶¶ 6–7. To the extent he does have knowledge of relevant information, it is only insofar as other employees of the Office of the Texas Secretary of State or election officials have relayed it to him. *See* Ex. A ¶¶ 7–8.

What is more, prior to sending the notice in question, the United States did not confer with attorneys for Secretary Scott or list topics they plan to cover in the deposition. *See generally* Exhibit I, Notice of Deposition of John Scott. The United States has given neither Secretary Scott's representatives nor the Court any reason to conclude that Secretary Scott's "testimony is," as one court put it, "essential to the case at hand." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010). It is the United States' burden to show not just that the Secretary has personal knowledge of relevant facts but also that he has unique or superior knowledge. *See Crown Cent.*, 904 S.W. 2d at 128. The United States has not met—and cannot meet—that burden.

Even if it could meet that burden, the United States has not made a "good faith effort" to obtain the information through "less intrusive means" that were "unsatisfactory, insufficient[,] or inadequate." *See Crown Cent.*, 904 S.W. 2d at 128. In fact, the United States has breezed past this requirement. Instead they have noticed Secretary Scott's deposition for April 21, 2022, five days *before* the 30(b)(6) deposition of a Secretary of State witness and seven days *before* the Director of Elections' deposition. Additionally, there is no reason that the United States could not issue a 30(b)(6) deposition notice for the topics it planned to discuss with Secretary Scott before trying to depose the sitting Secretary of State. Hence the deposition of the Secretary should not go forward. This is not that "rarest of cases" in which a high-ranking government official can be compelled to testify. *See FDIC*, 58 F.3d at 1062.

The United States was required to consider "whether the information desired can be sought from alternative witnesses," and "whether the information desired can be obtained in another form," such as "written answers to questions." *Bryant*, 745 F. App'x at 220–22 (directing the district court to fully consider these issues). It did not, as demonstrated by the fact that just a day after the United States issued a deposition notice for Secretary Scott, it issued a 30(b)(6) deposition notice for the Office of the Texas Secretary of State. *See* Ex. D. The United States does not explain why it cannot obtain relevant information from other sources. For these reasons, this Court should grant the motion for a protective order.

**II.     This Deposition Is Not Calculated to Lead to the Discovery of Relevant Information**

Even if the apex doctrine did not apply, this Court should still grant a protective order. Under the Federal Rules, a court may "issue an order to protect a party or person from . . . undue burden." FED. R. CIV. P. 26(c).[14] And a party is entitled only to discovery of "any nonprivileged matter that is

---

[14]   Likewise, a subpoena that "subjects a person to undue burden" must be quashed or modified. FED. R. CIV. P. 45(d)(3)(A)(iv).

relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it were relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). The United States' deposition notice would not lead to the discovery of relevant information.

It is an undue burden to notice depositions that would provide only irrelevant information. *See INTL FCStone Fin., Inc. v. OptionSellers.com, Inc.*, No. 6:21-mc-0004-JDK, 2021 WL 1540528, at *2 (E.D. Tex. Apr. 20, 2021) ("Irrelevance is a ground for quashing a deposition as unduly burdensome."). As discussed *supra*, Secretary Scott lacks personal knowledge of information relevant to the enactment of the challenged provisions of SB1. He took office on October 28, 2021. *See* Ex. A ¶ 2. But the Legislature passed SB1 on September 1, 2021, and the Governor signed SB1 into law on September 7, 2021.

Moreover, the Secretary does not implement the provisions of SB1 that the United States challenges. As explained in the pending motion to dismiss, the United States is complaining about the potential future actions of local officials, not the Secretary. *See* ECF 145 at 3–4, 14–15. That not only warrants dismissal—it also demonstrates that Secretary Scott lacks unique or superior personal knowledge of implementation of the challenged provisions.

Even if the Secretary did have personal knowledge of relevant information, it is improper for the Secretary to reveal his decisionmaking process. The Supreme Court has repeatedly confirmed that absent "a strong showing of bad faith or improper behavior," discovery into the "mental processes of administrative decisionmakers" is unwarranted. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019); *see also In re Dep't of Commerce*, 139 S. Ct. 16, 16–17 (2018) (staying the district court's order

authorizing the deposition of the Secretary of Commerce). Otherwise, high-ranking officials "could never do their jobs" because they would be less willing to explore all options before them, lest they "be subpoenaed for every case involving their agency." *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993).

Finally, under the Federal Rules, the Court must limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Here, a 30(b)(6) deposition notice would allow the United States to obtain the discovery it seeks from another source that would be both more convenient and less burdensome to the head of one of Texas's six officials forming its Executive Department.

### III. The Noticed Deposition Date Presents a Conflict for Secretary Scott's Counsel

The United States' notice set the deposition for April 21, 2022. Ex. I. But the Texas Secretary of State has a conflict on the date the deposition was noticed involving his official duties as Secretary and will be unable to appear on the date in question. *See* Ex. A ¶ 9. Defendants maintain that the deposition of Secretary Scott is wholly improper for the reasons set forth above, but in any event Secretary of State Scott is unable to attend on the date noticed.

### CONCLUSION

The Texas Secretary of State respectfully asks that the Court enter a protective order and quash the deposition of Secretary of State Scott.

| Date: March 21, 2022 | Respectfully submitted. |
|---|---|
| | /s/ *Patrick K. Sweeten* |
| KEN PAXTON | PATRICK K. SWEETEN |
| Attorney General of Texas | Deputy Attorney General for Special Litigation |
| | Tex. State Bar No. 00798537 |
| BRENT WEBSTER | |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

On March 21, 2022, I conferred with counsel for the United States about the foregoing motion. Counsel for the United States represented that the United States opposes this motion.

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 21, 2022, and that all counsel of record were served by CM/ECF.

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN