IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § § | (Consolidated Case) |
| | § § | |
| GREGORY W. ABBOTT, et al., | § § | |
| *Defendants*. | § § | |

## <u>DEFENDANT KIM OGG'S MOTION TO DISMISS</u>

Defendant Kim Ogg, in her capacity as Harris County District Attorney ("Ogg"), files this motion to dismiss all claims bought against her in any of the matters consolidated by the Court under Civil Action No. 5:21-CV-00844-XR,[1] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

As the Court is aware, Plaintiffs in the consolidated cases ("Plaintiffs") challenge the constitutionality of various provisions of the Texas Election Code enacted through legislation passed in a 2021 special session of the Texas Legislature. Some but not all of the challenged provisions include, as part of the legislation and resulting amendments to the Texas Election Code, enactment of criminal offenses and misdemeanor or felony punishment provisions.

Ogg was not a party to these consolidated cases when they started in September 2021. Doc. No. 1. Plaintiffs only added Ogg as a defendant in January 2022, ostensibly in light of a decision

---

[1]As of the date of the filing of this motion, Ogg had been served only in the matters filed under original cause numbers 1:21-CV-0780, 5:21-CV-0848, and 1:21-CV-0786. Given that these matters have been consolidated, Ogg's motion applies to all claims made against her by any and all Plaintiffs in any of the consolidated matters.

issued by the Texas Court of Criminal Appeals in December 2021, *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021). *E.g.*, Doc. 200 at 18. The Court of Criminal Appeals held in *Stephens* that a Texas Election Code provision that vested original prosecutorial authority in the Texas Attorney General violated the Texas Constitution's separation of powers provision. *Stephens*, 2021 WL 5917198, at *5-11. None of the second amended complaints filed in January 2022 contain any allegation of any actual or threatened enforcement of *any* of the challenged provisions by Ogg—much less actual or threatened enforcement of any *criminal* (as opposed to civil or administrative) provisions for which Ogg would have hypothetical prosecutorial jurisdiction.

Plaintiffs in these consolidated amended complaints appear to seek varying forms of declaratory and injunctive relief against Ogg.[2] Some Plaintiffs seek a general declaration that "the State of Texas's statutory scheme as described with specificity therein" is unconstitutional, and general injunctive relief as to "prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any." Doc. 200 at 75-76. Other Plaintiffs seek declarations as to specifically cited sections of the Election Code as enacted through S.B. 1—regardless of whether they contain criminal penalties—and to enjoin "Defendants" (presumably including Ogg) from enforcing any of the provisions. Doc. 207 at 62.

Given the lack of clarity in the consolidated cases—as to which Plaintiff is suing Ogg over what newly-enacted provisions of the Texas Election Code—this motion to dismiss addresses the

---

[2]Plaintiffs appear to differ with respect to which provisions of the Election Code as enacted through S.B. 1 they seek to challenge through their claims against Ogg. *See* Doc. 199 at ¶77 (alleging generally, without identification of specific provisions, that Ogg "is charged with enforcing Texas's Election Code, including the new statutory provisions that place undue burdens on voters of color and that govern the activities of poll watchers as described in more detail below"); Doc. 200 at ¶48 (appearing to challenge only certain provisions under S.B. 1 Sections 6.04, 6.06, and 7.04); Doc. 207 at ¶33 ("the provisions of SB 1 challenged in this action that impose criminal penalties, including, SB 1 §§ 4.06, 4.09, 6.04, and 7.04").

63620613.v2

ability of any of the Plaintiffs to bring claims for declaratory and/or injunctive relief (and attendant claims for attorneys' fees and costs) against Ogg for any or all of the relief sought against anyone or any entity named as a defendant.

Any and all such claims against Ogg fail as a matter of law, for three reasons.

First, with respect to any claim by any Plaintiff against Ogg, the Eleventh Amendment bars any and all such claims. Plaintiffs' allegations do not provide any basis whatsoever to assert, with respect to Ogg, the *Ex parte Young* exception to the Eleventh Amendment's general rule precluding suits against state officials in their official capacities, nor could Plaintiffs make any such proper allegations.

Second, even if Plaintiffs had properly pled their way around the Eleventh Amendment—which they have not and cannot—Plaintiffs have not asserted a proper basis for Article III standing with respect to any such claims against Ogg. Plaintiffs have not and cannot plead—much less establish once their standing is challenged, which it is here—a real and immediate threat of prosecution by Ogg under any of the challenged provisions.

Third, to the extent that Plaintiffs could ever establish that the Court has jurisdiction to consider Plaintiffs' claims against Ogg—which Plaintiffs have not and cannot—Plaintiffs could never frame a proper, non-sanctionable basis for a claim for injunctive relief against Ogg. This is true with respect to any provision of the Texas Election Code that involves only civil or administrative matters. Ogg does not run or oversee elections or administrative aspects of the elections process in Harris County. She does not have statutory or other authority to bring any civil matter, much less any civil enforcement action, on behalf of the State of Texas or Harris County. Any and all authority over civil or administrative matters related to elections resides with other state or county actors, such as the Harris County Attorney. Even if Plaintiffs could establish

63620613.v2

the Court's jurisdiction to hear claims against Ogg, Plaintiffs' loosely pled claims against Ogg seeking declaratory or injunctive relief as to civil or administrative provisions would be subject to 12(b)(6) dismissal on this basis alone.  Furthermore, even as to challenged provisions of the Election Code that *do* include criminal offenses, Plaintiffs fail to allege actionable claims, as they have not made specific claims against Ogg that could ever support the entry of an injunction.

As with other district attorneys in the State of Texas, Ogg cannot be used—and for reasons of both judicial and governmental restraint and economy should *not* be used—as a litigation effigy every time the Texas Legislature passes a law that displeases a political action or advocacy group. Suing a district attorney to declare a law unconstitutional or to prevent its enforcement requires more, as the law provides.  Sovereign immunity and standing principles matter, in every case, regardless of the subject matter of the underlying claim.  The Court can and should dismiss all claims raised against Ogg in these consolidated cases under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## MOTION TO DISMISS STANDARDS

This Court is well aware that Federal Rule of Civil Procedure 12(b)(1) allows "for dismissal of a complaint based on the absence of subject matter jurisdiction."  *Dumas v. TDCJ*, No. SA-21-cv-492-XR, 2022 WL 488151, at *2 (W.D. Tex. Feb. 16, 2022) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  When a court evaluates subject matter jurisdiction, it may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (citing *Ramming*, 281 F.3d at 161).  This standard applies to the Court's consideration of whether the Eleventh Amendment prevents Plaintiffs from establishing that the Court has subject matter jurisdiction over their claims against Ogg.

Because standing is also necessary for subject matter jurisdiction, standing "is a threshold issue that [the court] consider[s] before examining the merits" of a claim. *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016). To establish standing, plaintiffs "must show (1) that they suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged action of the defendant; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision." *Id*. (cleaned up). Any alleged "injuries in fact must be 'fairly traceable to the actions of the defendant.'" *Id*. (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). "'The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.'" *Id*. (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998)). "If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit." *Id*. (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d at 315, 319 (5th Cir. 2002)).

A plaintiff constantly bears the burden of proof that jurisdiction exists when jurisdictional facts are controverted. *Hoyt v. City of El Paso*, 878 F. Supp.2d 721, 726 (W.D. Tex. 2012) (citing *Barrera–Montenegro v. USA and Drug Enforcement Admin.*, 74 F.3d 657, 659 (5th Cir. 1996)).

As the Court is also well aware, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plaintiff's legal conclusions are not entitled to the same deference and assumptions as his well pleaded facts; '[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'" *Dumas*, 2022 WL 488151, at *2 (quoting *Iqbal*, 556 U.S. at 678).  Determining whether the plaintiff has met the pleading standard requires the reviewing court to draw on its judicial experience and common sense. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## ARGUMENT

I.    **Ogg is entitled to Eleventh Amendment sovereign immunity because the *Ex parte Young* exception does not apply.**

As a district attorney, Ogg occupies a constitutionally established position within the Judicial Department of the State of Texas.  TEX. CONST. art. V, sec. 21.  As authorized by the Texas Constitution, the Texas Legislature has defined Ogg's jurisdiction as representing the State of Texas in criminal cases pending in the district and inferior courts of Harris County.  TEX. GOV'T CODE § 43.180(b).  By statute she "has all the powers, duties and privileges in Harris County relating to criminal matters for and in behalf of the state that are conferred on district attorneys in the various counties and districts."  *Id.* § 43.180(c).

As a State of Texas official, Ogg is generally entitled to sovereign immunity from suit.  State sovereign immunity generally precludes suits against state officials in their official capacities.  *E.g.*, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (hereinafter "*Tex. Democratic Party I*").  Unless waived by the state, abrogated by Congress, or an exception applies, the immunity precludes suit.  *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (hereinafter "*Tex. Democratic Party II*").

There is no allegation (nor could there be) that Ogg has somehow waived sovereign immunity for claims brought by Plaintiffs, or that Congress has abrogated immunity from these claims.  Plaintiffs will undoubtedly attempt to resort to the *Ex parte Young* exception to sovereign immunity, but that exception does not and cannot apply based on the allegations made by Plaintiffs.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized that sovereign immunity does not bar "suits for prospective injunctive relief against state officials acting in violation of federal law."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Under *Ex parte Young*, "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and *who threaten and are about to commence proceedings*, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."  *Ex parte Young*, 209 U.S. at 155-56 (emphasis added).

As has been made clear by the progeny of *Ex parte Young*, to avoid the Eleventh Amendment immunity bar, state officials must "have 'some connection' to the state law's enforcement."  *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017) (quoting *Ex parte Young*, 209 U.S. at 157).  A merely hypothetical or theoretical connection is not enough; the complaint must allege an ongoing violation of federal law and seek relief properly characterized as prospective.  *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002). To fit within the *Ex parte Young* exception to state sovereign immunity, it is not enough to allege that the defendant official has a "general duty to see that the laws of the state are implemented." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).  A mere connection by statute or otherwise to a law's *potential* enforcement is not sufficient.  The state official "*must have taken some step to enforce*" the statute.  *Tex. Democratic Party I*, 961 F.3d at 401 (emphasis added).  The Fifth Circuit has repeatedly held that this requires a plaintiff to plead and sufficiently demonstrate that the state official took some "affirmative action" regarding enforcement of the challenged statute, such that the official has "a demonstrated willingness to enforce that duty."  *See id.* at 400 ("some step" and

"affirmative action"); *Morris*, 739 F.3d at 746 ("demonstrated willingness"); *Tex. Democratic Party II*, 978 F.3d at 179 (same).

The Fifth Circuit recently recognized guideposts in applying the "enforcement" aspect of *Ex parte Young*.  Specifically, the Fifth Circuit re-emphasized that "enforcement" includes a showing of "compulsion or constraint."  *Texas All. for Retired Americans. v. Scott*, No. 20-40643, 2022 WL 795862, at *2 (5th Cir. March 16, 2022) (citing *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019)).  Accordingly, if there is no showing—as is the case here with respect to Ogg—that the sued official has compelled or constrained anyone to obey the challenged law, there is no standing to sue.  This is because enjoining that official could not stop any ongoing constitutional violation.  *Id.*

Even where a state official possesses enforcement authority, past Fifth Circuit decisions consistently require some affirmative step by the defendant for the *Ex parte Young* exception to apply.  *See City of Austin*, 943 F.3d at 1000 ("Attorney General Paxton is not subject to the *Ex parte Young* exception because our *Young* caselaw requires a higher showing of 'enforcement' than the City has proffered"); *Air Evac EMS*, 851 F.3d at 510-13 (noting that the state officials at issue were actively involved in rate-setting and overseeing the arbitration processes implicated by the challenged law); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392-95 (5th Cir. 2015) (*Ex parte Young* exception applied when the attorney general had sent "numerous 'threatening letters'" to the plaintiffs); *K.P. v. LeBlanc*, 627 F.3d 115, 119-25 (5th Cir. 2010) (defendant took an "active role" in enforcing the statute at issue).

Collectively, Plaintiffs appear to challenge (among other provisions) nine provisions of the S.B. 1 legislation that actually add criminal offenses to the Election Code and provide for criminal

penalties.[3]  Ogg, in her constitutional and statutory role as a prosecutor, indisputably has the statutory authority within the boundaries of Harris County to prosecute cases under any and all Texas statutes that set out criminal offenses, including criminal offense provisions of the Election Code.  But that type of general jurisdiction to enforce criminal laws does not establish a waiver or exception to sovereign immunity in the absence of actual or threatened enforcement of a criminal statute.  Granting a proper injunction against a district attorney requires more than general and hypothetical jurisdiction over criminal statutes.  *See, e.g.*, *Miller v. Mitchell*, 598 F. 3d 139 (3d Cir. 2010) (affirming the grant of a preliminary injunction when a district attorney threatened to file charges); *Ameritech Corp. v. McCann*, 297 F.3d 582 (7th Cir. 2002) (holding that *Ex parte Young* was satisfied where a district attorney refused to comply with Electronic Communications Privacy Act provision).  A district attorney's mere status as a district attorney, without more, is an insufficient basis on which to make a proper claim to the *Ex parte Young* exception.

There is nothing before the Court to suggest that Ogg has constrained or threatened to constrain anyone concerning the challenged provisions.  The complaints contain multiple paragraphs about alleged testimony by officials of the Texas Attorney General's Office concerning the S.B. 1 legislation before it was passed, and actions taken, and statements made by that office related to the Election Code and its enforcement.  Those allegations are in those complaints for a reason—presumably, at least in part, to support a claim by Plaintiffs to the *Ex parte Young* exception to the Texas Attorney General's Eleventh Amendment immunity from suit.  The absence of any similar allegations against Ogg—with respect to S.B. 1's passage, the criminal provisions at issue in Plaintiffs' claims, or otherwise—is conspicuous.  All that Plaintiffs plead regarding

---

[3]Newly-enacted Texas Election Code sections 33.051(g), 33.061, 86.006(f), 86.010(f), 276.004(a), 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a) appear to contain language creating criminal offenses, as enacted through S.B. 1.

Ogg's involvement in anything to do with the facts or circumstances underlying their claims is as follows:

With respect to the consolidated *Houston Justice, et al.* Second Amended Complaint (Doc.199):

77.     Defendant KIM OGG is sued in her official capacity as Harris County District Attorney.  As Harris County District Attorney, she is charged with enforcing Texas's Election Code, including the new statutory provisions that place undue burdens on voters of color and that govern the activities of poll watchers as described in more detail below in paragraph 81.

81.     The District Attorneys, including Defendants Ogg, Gonzales, and Garza, and the Attorney General have the authority to investigate and prosecute alleged violations of the

Election Code, including those provisions introduced in SB 1. Tex. Elec. Code Sec. 273.001,

273.021. Under SB 1, the Attorney General is also tasked with enforcing Tex. Elec. Code 18.065

against the counties—including provisions that require counties to maintain "suspense lists" of

voters—and is empowered to collect civil fines against counties who do not comply. *See* SB 1,

Sec. 2.06 (adding Tex. Elec. Code 18.065(f)-(g)); Tex. Elec. Code 18.065(a); Tex. Elec. Code

15.083. SB 1 also explicitly holds election officials liable to the state for violations of any

provision of the Texas Election Code, including those created or amended by SB 1—such as

offering extended hour or drive-through voting. SB 1, Sec. 8.01 (adding Sec. 31.128, 31.129).

All alleged violations are referred specifically to the Attorney General for enforcement. SB 1,

Sec. 4.11 (amending Sec. 34.005); SB 1, 2.08 (amending Sec. 31.006). Under governing Texas

case law, the District Attorneys for each county, including Defendants Ogg, Gonzales, and

Garza, and the Attorney General, are tasked with enforcing criminal penalties against election

judges, SB 1, Sec. 4.06 (amending Sec. 33.051); against assistors for failing to comply with

assistance provisions, SB 1, Sec. 6.04-6.05 (amending Sec. 64.034, 86.010); and against election

officials for using public funds to facilitate third-party distribution of applications to vote by

mail, SB 1, Sec. 7.04 (adding Sec. 276.016).

With respect to the *OCA-Greater Houston et al.* Second Amended Complaint (Doc. 200):

48.     Defendant Kim Ogg is the Harris County District Attorney ("Harris DA") and is

sued in her official capacity. The Harris DA represents the State of Texas in all criminal cases in

Harris County, unless conflicts exist. TEX. CONST. art. 5, § 21; Tex. Code Crim. P. Art. 2.01.

63620613.v2

Further, under Section 273.001 of the Election Code, "[i]f two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations." Plaintiffs bring claims against the Harris DA regarding SB 1 Sections 6.06 and 7.04, which include felony offenses, and Section 6.04, which modifies the oath that voters' assistants must take to include an affirmation "under penalty of perjury," subjecting the assistants to criminal liability. Additionally, failing to sign the affirmation required by Section 6.04 is a felony under Election Code § 86.010(g).

52.     Defendants SOS and AG, as state agencies, and Defendants Harris DA, Travis DA, Harris Elections, and Travis Elections, as county agencies, are public entities pursuant to the ADA and Section 504. 42 U.S.C. § 12131(1)(a),(b); 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including vote-by-mail and in-person voting on Election Day and during early voting, are each a service, program, or activity provided by Defendants SOS, county agencies, and other political subdivision agencies. Voting is a program or activity provided by Defendants within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B).

181.     Plaintiffs are entitled to injunctive relief against the SOS, who as set forth already is expressly charged with implementing the Oath and related provisions set forth in Sections 6.04, 6.05, and 6.06 of SB 1; the AG, Harris DA, and Travis DA, who as set forth already are charged with enforcing the criminal law penalties in Sections 6.04 and 6.06, and other county officials to whatever extent they are required to comply with directives from the SOS and the AG regarding the enforcement of the challenged provisions , as well as reasonable attorney's fees and costs.

63620613.v2

185.    Defendants (namely, the SOS, who as set forth already is expressly charged with implementing the Oath under section 6.04 of SB 1; the AG, Harris DA, and Travis DA, who as set forth already are charged with enforcing the criminal law penalties in Sections 6.04; and other county officials to whatever extent they are required to comply with directives from the SOS and the AG regarding the enforcement of the challenged provisions), have excluded and continue to exclude Plaintiffs' members and other voters with disabilities from participation in, and denied them the benefits of, or otherwise discriminated against them in, their service, program, or activity of voting, and excludes people with disabilities from participation in the services, programs, or activities of Defendants.

191.    Accordingly, Defendants (namely, the SOS, who as set forth already is expressly charged with implementing the Oath under section 6.04 of SB 1; the AG, Harris DA, and Travis DA, who as set forth already are charged with enforcing the criminal law penalties in Sections 6.04, and other county officials to whatever extent they are required to comply with directives from the SOS and the AG regarding the enforcement of the challenged provisions) have discriminated and continue to discriminate against Plaintiffs and their members by denying them a full and equal opportunity to participate in their voting programs.

225.    Plaintiffs are entitled to injunctive relief against the AG, Harris DA, and Travis DA, who are statutorily authorized to enforce the criminal penalties set forth in Section 7.04 of SB 1, as well as reasonable attorneys' fees and costs.

239.    Plaintiffs are entitled to injunctive relief, against the AG, Harris DA, and Travis DA, who are statutorily authorized to enforce the criminal penalties set forth in Section 7.04 of SB 1, as well as reasonable attorney's fees and costs.

Finally, with respect to the *LULAC Texas, et al.* Second Amended Complaint (Doc. 207):

13

33.     Defendant Kim Ogg is sued in her official capacity as Harris County District Attorney. By virtue of her position, Defendant Ogg is charged with investigating and prosecuting criminal violations of the Texas Election Code. She is sued for the manner in which she implements the provisions of SB 1 challenged in this action that impose criminal penalties, including, SB 1 §§ 4.06, 4.09, 6.04, and 7.04.

Over the three consolidated cases in which Ogg is named, this is *it* in terms of allegations related to Ogg's claimed involvement in any of the facts or circumstances that are alleged as having given rise to this litigation.  As a matter of law, the above is not enough.  Without any factual allegation that Ogg has demonstrated her intent to enforce any challenged provisions that she would have jurisdiction to enforce, the Plaintiffs cannot satisfy the *Ex parte Young* exception under Fifth Circuit precedent.  Accordingly, sovereign immunity precludes the Plaintiffs' claims against Ogg.

This is not merely an academic or "artful pleadings" point.  As the Court is aware in the *Longoria* case, a matter challenging the constitutionality of Texas Election Code § 276.016(a)(1), Ogg entered into a non-participating-defendant "non-enforcement" stipulation, under which she agreed not to enforce the challenged statute while the matter was being litigated, including in this Court.  Similarly, in this litigation, Ogg through the undersigned counsel offered to Plaintiffs to enter into an identical stipulation as to the Election Code provisions at issue in these consolidated cases.  A copy of the proposed stipulation is attached as **Exhibit A**.  Some of the Plaintiffs to whom the stipulation was proposed declined to enter into it.  The fact that Ogg was willing to offer to stipulate to non-enforcement—and thus avoid the expense and distraction of civil litigation over provisions that she was not enforcing and would agree not to enforce during the pendency of the lawsuit—helps prove the point.  Plaintiffs cannot plead, much less establish, any actual or

14

threatened enforcement of the provisions of the Election Code, over which they sue Ogg, in a manner that would allow them to claim the *Ex parte Young* exception to sovereign immunity.[4]

Plaintiffs have not alleged anywhere in their hundreds of pages of collective and consolidated complaints—as they cannot, consistent with Rule 11 requirements and the specificity requirements of federal pleading standards—that Ogg has commenced or has threatened to commence any criminal proceedings against any of Plaintiffs, or anyone else for that matter, under the Texas Election Code provisions challenged in the lawsuits.  And to the extent that any of Plaintiffs seek declaratory or injunctive or other relief against Ogg with respect to newly-enacted Texas Election Code provisions that do not create any criminal offense, the *Ex parte Young* analysis is similarly straightforward.  By law, Ogg has criminal jurisdiction only.  Authority for civil matters on behalf of the State at the Harris County level rests with the Harris County Attorney. TEX. GOV'T CODE § 45.201.  As Ogg has no authority to enforce the other provisions challenged by the Plaintiffs, such additional claims are irrelevant to the Court's analysis of this motion to dismiss.  *E.g.*, *Lewis v. Scott*, No. 20-50654, 2022 WL 795861, at * (5th Cir. Mar. 16, 2022) ("Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [the *Ex parte*] *Young* analysis ends.") (citing *City of*

---

[4]In filing this motion, Ogg is mindful of the fact that in *Longoria v. Paxton*, No. SA:21-CV-1223-XR, 2022 WL 447573 (W.D. Tex. Feb. 11, 2022)—a case in which Ogg is a non-participating defendant—the Court held that an allegation that "the district attorneys are responsible for investigating and prosecuting violations of the Election Code" was sufficient to state "some connection" to enforcement of that law so as to meet the *Ex parte Young* exception.  As the Court is aware, an appeal from the Court's injunction order in *Longoria* is pending before the Fifth Circuit Court of Appeals, which has since certified to the Texas Supreme Court issues of Texas law to be considered as part of that appeal.  *See Longoria v. Paxton*, No. 22-50110, 2022 WL 832239 (5th Cir. Mar. 21, 2022).  Ogg respectfully contends that the Court should not reach the same conclusion on the application of *Ex parte Young* to the claims against Ogg in these consolidated cases as it did in *Longoria*, in light of the absence of anything more than allegations of Ogg's "general duty to see that the laws of the state are implemented" in Harris County.  *Morris*, 739 F.3d at 746 (cited in *Longoria* order) ("some connection" requires establishing "the particular duty to enforce the status in question and a demonstrated willingness to exercise that duty").

*Austin*, 943 F.3d at 998 (holding that the Texas Secretary of State is entitled to sovereign immunity when local election officials, not the Secretary, are charged with enforcing provisions of the Texas Election Code).

The *Ex parte Young* exception to sovereign immunity does not apply to Plaintiffs' allegations against Ogg, whether they relate to newly-enacted criminal offense provisions or not.

## II.   Plaintiffs lack standing to sue Ogg because they have not suffered any injury-in-fact from any conduct by Ogg.

Even if Plaintiffs had included in their complaints allegations that would provide a proper basis for asserting the *Ex parte Young* exception to Ogg's Eleventh Amendment immunity—which they have not—Plaintiffs would not have standing to sue Ogg.

To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the defendant caused the injury, and (3) that the requested judicial relief would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury in fact element requires that a plaintiff show that he or she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

A "plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, by establishing actual present harm or a significant possibility of future harm." *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003). In *Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008), bar-owner plaintiffs sought declaratory and injunctive relief relating to the enforcement of an Austin ordinance prohibiting smoking in enclosed public places. The plaintiffs alleged that the ordinance was unconstitutionally vague and

violated procedural due process.  *Roark*, 522 F.3d at 539-40.  The Fifth Circuit found that the plaintiffs faced real and immediate threats of injuries resulting from violation of the ordinance because "some plaintiff bar owners have been charged under the ordinance and all plaintiff bar owners face the real potential of immediate criminal prosecution."  *Id*. at 543.

Plaintiffs challenge two types of criminal provisions in the Election Code: (1) provisions imposing criminal penalties against election officials, and (2) provisions imposing criminal penalties against any member of the public.  First, many of the Plaintiffs here cannot be the subject of criminal prosecution for many of the challenged criminal provisions because those provisions apply only to election officials.  *See* TEX. ELEC. CODE §§ 33.051(g), 33.061, 276.016, and 276.017 (all imposing criminal penalties for violations by "public officials" or "election officials").  Second, even for the Plaintiffs that do serve in official election-related capacities, unlike the case in *Roark*, these Plaintiffs have not alleged that they have been targeted or that others similarly situated to them have faced penalties under the criminal statutes.

Additionally, Plaintiffs have not and cannot allege any injury or harm arising out of the challenged criminal provisions that generally apply to the public.  For example, Plaintiffs have not alleged that they intend to harvest votes in violation of Sections 86.006 and 276.015; that they intend to violate the requirements for assisting voters under Section 86.010; that they intend to prevent employees from voting during work hours in contravention of Section 276.004; or that they knowingly made or plan to make false statements in an oath or on a voter registration application in violation of Section 276.018.  This only makes the Plaintiffs' allegations even more remote from any potential enforcement of the S.B. 1 criminal provisions—and certainly by Ogg in Harris County—because none of Plaintiffs has demonstrated any intent to engage in conduct that could contravene any of the challenged laws.

With respect to the provisions of S.B. 1 that do not contain criminal offenses or penalties, Plaintiffs' allegations against Ogg also fail to satisfy the causation and redressability prongs of the standing test.  Plaintiffs' pleadings and their use of the generic, "group pleading" term "Defendants" do not specify what claims related to what provisions of the Election Code added through S.B. 1 are raised against Ogg as an individual defendant.  The various pleadings are broad enough to suggest that injunctive relief is sought against Ogg related to enforcement of *any* of the challenged provisions, regardless of whether they contain any criminal offenses.[5]  As set forth above, Ogg as a matter of law, has no jurisdiction to enforce anything through a civil suit and her statutory duties do not include administering elections.

When a plaintiff names a defendant in the hope of obtaining injunctive relief against her but does not sufficiently allege that the defendant could take the action sought to be enjoined, dismissal for lack of standing is proper for two reasons. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (*en banc*).  First, Plaintiffs' alleged injury here "is not, and cannot possible be, *caused* by the defendant[]," because Ogg cannot and will not pursue any civil or administrative enforcement action against anyone.  *See id.* at 426. Second, any alleged injury would not be *redressable* by Ogg, because Ogg "cannot prevent" the people who could potentially enforce those

---

[5]An action recently taken by certain Plaintiffs, prior to the filing of this motion, further demonstrates and underlines why Ogg should not be used as a "litigation effigy" and have her constitutional and statutory exercise of duties burdened by lawsuits under these circumstances.  Even before the filing of this motion, certain Plaintiffs (in the *LULAC Texas, et al.* consolidated matter) served a deposition notice on "Kim Ogg."  A copy of the deposition notice is attached as **Exhibit B**.  Although it is not clear from the subpoena whether Plaintiffs who served it are seeking testimony from Kim Ogg as an individual or instead testimony from her office under a FED. R. CIV. P. 30(b)(6) request, the subpoena lists two topics, and two topics only.  Both topics listed in the deposition notice relate not to S.B. 1 or any of its criminal offense provisions, but instead to S.B. 1111, a bill passed in the last *regular* session of the Texas Legislature that includes no criminal provisions whatsoever.  Eleventh Amendment and standing principles serve an important purpose in having state governmental actors avoid having to defend against claims to which they cannot be named as parties and against attendant meritless discovery.  Unless the Plaintiffs who served the deposition notice withdraw it, Ogg will be forced to defend against the discovery request through a motion to quash.

18

civil and administrative provisions from doing so in the future. *See id.* An injunction prohibiting Ogg, a district attorney, from bringing civil or administrative enforcement actions would be "utterly meaningless." *Id.* Seeking to enjoin a state official from doing something that she has no ability to do is an improper claim that can and should be dismissed. *Id.*

As it currently stands, any injury alleged in the Plaintiffs' complaints is purely conjectural and hypothetical. To the extent those injuries relate to non-criminal statutory provisions, they cannot be caused by or redressed by Ogg. Accordingly, the Plaintiffs do not have standing to sue Ogg.[6]

### III.    With respect to any claim for injunctive relief against Ogg, Plaintiffs fail to state a claim upon which relief can be granted.

Even if Plaintiffs could allege a proper basis for jurisdiction in this Court—which for the two reasons set out above they cannot—Plaintiffs' complaints do not contain sufficient factual matter to state a claim against Ogg that is plausible on its face.

Even as to the challenged provisions that contain criminal penalties, Plaintiffs' allegations do not state a plausible claim. As indicated above in the briefing on Eleventh Amendment immunity from suit, Plaintiffs have wholly failed to allege any enforcement or threatened enforcement by Ogg of any of the provisions over which they sue. They do not even allege that any conduct under any of the challenged provisions has even been examined or inquired about by

---

[6]Again, in filing this motion, Ogg is mindful of the fact that in *Longoria* the Court found that two persons the Court held to be "election officials" had standing to pursue First Amendment claims related to a specific portion of the Election Code, section 276.016(a)(1), that contained criminal penalties. Without commenting on matters that may be the subject of the pending appeal and certified questions, the record before the Court in *Longoria* is different from the record in these consolidated cases. Unlike the Plaintiffs here, the *Longoria* plaintiffs asserted that the anti-solicitation provisions deterred them from engaging, as they had done in the past, in certain forms of voter outreach that they claim are now prohibited under the Election Code, including the explicit promotion of mail-in voting to community groups. The Plaintiffs here have not alleged any specific protected behavior in Harris County that they are chilled from engaging in due to fear of prosecution from Ogg under the challenged criminal provisions.

any law enforcement agency in any criminal investigation that might ultimately find its way to the Harris County District Attorney's Office for *consideration* of prosecution. *See Quinn v. Roach*, 326 Fed. App'x 280, 293 (5th Cir. 2009) (affirming the grant of a 12(b)(6) motion to dismiss on a plaintiff's claim for injunctive relief against a district attorney where the plaintiff failed to allege a likelihood of a future violation of his rights).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Iqbal*, 556 U.S. at 678. The plausibility threshold required under Rule 12(b)(6) is surpassed only when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Without any allegations that Ogg is somehow acting, or even *planning to act*, in violation of the United States Constitution by prosecuting or threatening to prosecute any criminal cases under the challenged provisions, there is no claim properly pled against Ogg. Thus, even if the Court had jurisdiction to consider the claims against Ogg—which it does not—Plaintiffs have failed to state a claim for injunctive relief against Ogg upon which the Court could grant relief.

## PRAYER FOR RELIEF

For the foregoing reasons, Defendant Kim Ogg, sued in her official capacity as Harris County District Attorney, respectfully requests that the Court dismiss all claims and causes of action that have been asserted against her in this action pursuant to Rule 12(b)(1) and Rule 12(b)(6) for the reasons stated herein, and prays for such other and further relief to which she may be justly entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

By: _/s/ Eric J.R. Nichols_
  Eric J.R. Nichols
  State Bar No. 14994900
  eric.nichols@butlersnow.com
  Karson K. Thompson
  State Bar No. 24083966
  karson.thompson@butlersnow.com
  1400 Lavaca Street, Suite 1000
  Austin, Texas 78701
  Tel: (737) 802-1800
  Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT
KIM OGG, IN HER OFFICIAL
CAPACITY AS HARRIS COUNTY
DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2022, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

_/s/ Eric J.R. Nichols_
Eric J.R. Nichols

63620613.v2