IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 5:21-cv-844 (XR) <br> (Consolidated Cases) |

## UNITED STATES' RESPONSE TO STATE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH

In this challenge to provisions of Texas Senate Bill 1 (SB 1), the United States noticed the deposition of Secretary of State John Scott based on concrete indicia of his first-hand, personal involvement in the implementation of SB 1's identification document number matching requirements for absentee voting by mail. Over the last three months, Secretary Scott has described these mail voting restrictions as his "biggest concern" in the 2022 election cycle, issued statements delineating SB 1's role in the rejection of mail ballot materials, and become the face of a public outreach campaign, articulating new and evolving State policy choices only he has authority to make. Nonetheless, the State now seeks to bar any deposition of Secretary Scott. *See* Mot. for Protective Order, ECF No. 334. This request by the State is premature, as further discovery will determine the necessity for deposing Secretary Scott. Therefore, the United States respectfully requests that this Court hold State Defendants' motion in abeyance so that these facts may be further developed or—in the alternative—authorize a deposition to proceed under reasonable conditions appropriate for a high-ranking state official.

I.      **Background**

The United States alleges that Sections 5.07 and 5.13 of SB 1 (the identification document number requirements) violate Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), by requiring rejection of mail ballot materials based on errors or omissions that are not material to determining whether a voter meets state-law qualifications to vote or to cast a mail ballot. U.S. Am. Compl. ¶¶ 58-65, 71-76, ECF No. 145. Under SB 1, voters are required to provide the following information on an Application for a Ballot By Mail (ABBM) and mail ballot carrier envelope:

> (A) the number of the applicant's driver's license, election identification certificate, or personal identification card issued by the Department of Public Safety; (B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or (C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B).

Tex. Elec. Code § 84.002(a); *see also id.* § 86.002(g). Roughly six weeks before Texas' March 1 primary, counties began reporting ABBM rejection rates as high as 50%, which they attributed largely to SB 1's identification document number requirements. *See, e.g.*, Ashely Lopez, *Travis County Clerk Says Half of Vote-by-Mail Applications Have Been Rejected Due to New Election Law*, KUT 90.5, Jan. 13, 2022, *at* https://perma.cc/TBN7-F83K.

Texas Secretary of State John Scott responded to widespread publicity of these ABBM rejections as the State's leading face of a responsive campaign. First, Secretary Scott publicly disputed Travis County's characterization that SB 1 was responsible for its unusually high ABBM rejection rate, noting "there's not a lot of leeway on how it's supposed to be interpreted or how it's supposed to be done" but "it's way too early to say if [there will] be a needed fix or not." Marissa Mizroch, *Texas Secretary of State Says New Election Rules Are "Learning Curve" for Everyone*, Spectrum Local News, Jan. 19, 2022, *at* https://perma.cc/4Q66-7GWW. Shortly thereafter, Secretary Scott engaged in a media blitz encouraging voters to provide both a

driver's license number and a partial social security number as a "failsafe" against erroneous rejections, posted instructional videos on social media, and held an informal session with county officials. *See, e.g.*, *Interview with Texas Secretary of State John Scott*, CBS-DFW, Jan. 19, 2022, *at* https://perma.cc/XFM6-2425; *TX Secretary of State Tries to Clear Up Confusion Over New Ballot-by-Mail Applications*, WBAP, Jan. 21, 2022, *at* https://www.wbap.com/2022/01/21/tx-secretary-of-state-clears-tries-to-clear-up-confusion-over-new-ballot-by-mail-applications/. These statements contradicted earlier guidance, forms already in use, and arguably SB 1's plain text. *See, e.g.*, Press Release, Tex. Sec'y of State, *Secretary Scott Encourages Texas Voters to Register by Deadline, Prepare to Vote in March 1 Primary Election* (Jan. 17, 2022), *at* https://perma.cc/3SFV-HYMM (instructing applicants to "provide ONE of the following numbers"); Tex. Sec'y of State, *Application for a Ballot by Mail* (Dec. 9, 2021), *at* https://perma.cc/YF2Q-7N6R; *see also* Tex. Elec. Code §§ 84.002(a), 86.002(g). Three weeks later, the Secretary issued a press release informing voters "there is no prohibition against mail voters providing both numbers on their ballot by mail materials" and that "so long as the number you provide matches one of the numbers on your voter registration record, you will be provided a ballot by mail if you are otherwise eligible to vote by mail." Press Release, Tex. Sec'y of State, *Secretary Scott Releases Message to Texans Eligible to Vote by Mail* (Feb. 16, 2022), *at* https://perma.cc/LQ6V-HKD8.

Given Secretary Scott's preeminent public role in interpreting SB 1, his policy determinations as to its interpretation, and his personal and evolving guidance as to its requirements, the United States served a deposition notice for Secretary Scott as a placeholder, should discovery demonstrate that Secretary Scott's personal knowledge of relevant facts is material, and to permit the parties appropriate time to confer to resolve concerns. On March 21,

State Defendants informed the United States that they intended to seek a protective order. The United States responded by offering to confer with the State Defendants to establish an appropriate framework for addressing and resolving their concerns. *See* Email from Dan Freeman to Patrick Sweeten, Mar. 21, 2022 (Ex. 1). The State Defendants disregarded that offer and, instead, filed the instant motion.

## II. Legal Standard

The Federal Rules of Civil Procedure generally permit discovery through deposition, and parties are subject to deposition on notice. Fed. R. Civ. P. 30. "Depositions of high ranking officials may be permitted where the official has first-hand knowledge," but only when the specific circumstances warrant the burden on the official. *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *see also Byrd v. Dist. of Columbia*, 259 F.R.D. 1, 6 (D.D.C. 2009) (explaining that courts must balance a party's "significant interest in preparing for trial" with the burden to the official). Thus, the Fifth Circuit has applied a two-step test to determine whether to permit high-ranking officials to be deposed. "First, the proponent must demonstrate that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources." *In Re Bryant*, 745 F. App'x 215, 218 n.8 (5th Cir. 2018); *see also, e.g.*, *Marisol A. v. Guiliani*, No. 95-cv-10533, 1998 WL 158948 (S.D.N.Y. Apr. 1, 1998) (ordering deposition of a governor if State was "unwilling or unable" to provide witnesses who could testify to "the factual information . . . on which [the governor's] decisions were based"). Then, proponents must show "exceptional circumstances" merit the deposition, considering "(1) 'the high-ranking status of the deponents,' (2) 'the potential burden that the depositions would impose upon them,' and (3) 'the substantive reasons for taking the depositions.'" *In Re Bryant*, 745 F. App'x at 221; *see also In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re Office of Inspector Gen.*. 933 F.2d 276, 278 (5th Cir. 1991) (per curiam). "[I]f those exceptional circumstances exist . . . the official

4

should sit for an oral deposition limited in time and subject matter." *Jackson Mun. Airport Auth. v. Reeves*, No. 3:16-CV-246, 2020 WL 5648329, at *7 (S.D. Miss. Sept. 22, 2020).

**III.    State Defendants' Motion Should be Held in Abeyance Until Discovery Is Sufficiently Complete to Determine Whether a Deposition is Necessary.**

    **A.    Fact Discovery of the Office of Secretary of State Is Just Beginning.**

State Defendants' request for a protective order prohibiting any deposition of Secretary Scott is premature. At this time, the United States lacks access to Secretary Scott's documents and has not had the opportunity to depose other personnel from the Office of the Secretary of State. Over the last several months, the United States has sought discovery into Secretary Scott's role in the implementation of SB 1, as State Defendants have noted. *See* Mot. at 2. Indeed, the United States served its principal document request on December 3, 2021, but it was not until March 14—the same day the United States noticed Secretary Scott's deposition—that State Defendants agreed to search terms and to begin a review and rolling production of responsive documents, including those in the custody of Secretary Scott. *See* Email from Eric Hudson to Dana Paikowsky (Mar. 14, 2022) (Ex. 2). These delays have limited the United States' ability to ascertain whether information known to Secretary Scott could be obtained from alternative sources. And while the United States seeks to depose the Office of the Texas Secretary of State, Elections Division Director Keith Ingram, and Elections Division Legal Director Christina Adkins—which will help determine the extent to which Secretary Scott's deposition is necessary—those depositions cannot proceed until after the State Defendants have produced relevant documents. *Cf. Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sciences*, No. 5:11-

cv-163, 2014 WL 1787813, at *2 (W.D. Tex. May 5, 2014) (denying request for protective order as unripe even after apex deposition had been noticed).[1]

      **B.**    **Holding the State Defendants' Premature Motion in Abeyance is Especially Appropriate Because the Requirements to Depose Secretary Scott Are Likely to be Met.**

Secretary Scott has first-hand and seemingly-unique knowledge of the implementation of SB 1, the evolving policy choices animating that implementation, and the State's public dissemination of those policy choices. But further discovery is needed to determine if his information is unobtainable from other sources. *See In Re Bryant*, 745 F. App'x at 218 n.8. Moreover, exceptional circumstances may exist that warrant a deposition of Secretary Scott, notwithstanding his invocation of the high-ranking official doctrine. *See, e.g.*, *In re FDIC*, 58 F.3d at 1060.

      **1.**    **Secretary of State Scott Possesses Relevant, First-Hand Knowledge that May Be Unobtainable from Other Sources.**

Secretary of State John Scott has taken a high profile, personal role in implementing SB 1's identification document number matching requirements, giving him first-hand knowledge of facts central to the United States' Section 101 claim. *See* Part I, *supra*.[2] The rules under which SB 1 operates have been in flux, and Secretary Scott is the lone state official charged with prescribing forms and guidelines under which SB 1 should uniformly operate across the State, as well as the official dictating how changing guidelines are communicated to the public. Tex. Elec. Code §§ 31.002(a), 31.003. At present, it appears that Secretary Scott may have unique knowledge of the following subjects:

---

[1] To protect the United States' ability to conduct fact depositions before the May 13 close of discovery, the United States noticed a series of depositions during the weeks of April 18 and April 25, anticipating that any concerns would be addressed through subsequent consultation between the parties. *See* Mar. 21 Email, *supra*.

[2] The United States does not contest the assertion that Secretary Scott is a high-ranking official.

- The basis, aims, and consequences for Secretary Scott's implementation decisions, including the decision to ask voters to provide multiple identification numbers as a "failsafe";
- Secretary Scott's ability to alter these decisions in future election cycles;
- The basis, aims, and consequences for Secretary Scott's decision to issue guidance related to ABBM and carrier envelope rejection and cure;
- The basis, aims, and consequences for Secretary Scott's public statements, including regarding ABBM rejection and identification of SB 1 mail voting restrictions as his "biggest concern" in the 2022 election cycle;
- The basis, aims, and consequences for Secretary Scott's outreach campaign; and
- The basis, aims, and consequences of Secretary Scott's decision to dedicate a "significant portion" of his Office's efforts in the coming year to address SB 1's mail voting restrictions.[3]

It remains to be seen whether Secretary Scott's knowledge is unobtainable from other sources, but a deposition would be justified if the record establishes that Secretary Scott has otherwise-unavailable first-hand knowledge related to his role in implementing the challenge provisions of SB 1. *See Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 413 (N.D. Ala. 2017) (allowing the deposition of a Secretary of State who was "hands-on" in implementing a challenged law).

---

[3] None of these subjects go to Secretary Scott's deliberative process in arriving at the decisions at issue. *See, e.g.*, *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (recognizing privilege protecting "predecisional materials 'reflecting deliberative or policy-making processes' but not materials that are 'purely factual'" (quoting *EPA v. Mink*, 410 U.S. 73, 87-89 (1973)); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (acknowledging that "an agency must disclose the basis of its action" (internal citation and quotation marks omitted)).

### 2. Exceptional Circumstances May Warrant a Deposition of Secretary Scott.

Information available only to Secretary Scott may be "necessary for the courts to discharge their duty," rendering this matter an exceptional case in which a deposition of a high-ranking official is permissible, should that information prove to be unavailable from any other source. *In re Office of Inspector Gen.*, 933 F.2d at 277 (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1388 (D.C. Cir. 1980) (en banc)). Moreover, this matter itself is an exceptional one. "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (internal citation and quotation marks omitted). But media reports have indicated that in the first election following implementation of SB 1, officials rejected nearly 23,000 mail ballots—a figure that does not include the number of rejected ABBMs and the number of voters deterred from voting by mail. *See, e.g.*, Paul J. Weber and Acacia Coronado, *Texas Mail Ballot Rejections Soar Under New Restrictions*, AP, Mar. 16, 2022, *at* https://perma.cc/6T2H-LHRS. Secretary Scott's unique statutory duty to coordinate the State's implementation of SB 1, and his apparent personal involvement in addressing a challenged provision of SB 1, renders this case distinct from other matters in which he is a defendant in his official capacity. *See Greater Birmingham Ministries*, 321 F.R.D. at 410 (addressing the same argument). Thus, requiring Secretary Scott to testify concerning the mail ballot restrictions would in no way impose the burden of testifying in all challenges to Texas election laws. *Cf. In re FDIC*, 58 F.3d at 1062 (addressing concern that agency heads would be required to testify in all matters reviewing decisions); *In re Stone*, 986 F.2d 898 (5th Cir. 1993) (same).

**IV.     Appropriate Relief**

The United States respectfully requests that this Court hold State Defendants' motion in abeyance until the United States is in a position to submit a short statement either establishing that Secretary Scott's unique knowledge is not available from alternative sources or inform the Court that it no longer seeks to depose Secretary Scott.  The United States proposes to submit a notice or supplemental response following the completion of document production and the depositions of appropriate personnel of the Secretary of State's office, no later than May 2, 2022.

In the alternative, this Court could issue an order permitting a deposition of Secretary Scott under conditions that would meet the requirements of the high-ranking official doctrine. For instance, the United States would consent to deposing Secretary Scott only on topics regarding which other deponents have been unable to provide complete responses and to limit Secretary Scott's deposition to no more than four hours.  *Cf. Greater Birmingham Ministries*, 321 F.R.D. at 410 (authorizing a deposition of Alabama Secretary of State John Merrill under similar conditions).  To the extent that the United States is able to obtain sufficient information by other means from the Office of the Secretary of State regarding the ongoing implementation of SB 1, the United States would withdraw its deposition notice.

**V.     Conclusion**

For the foregoing reasons, the United States respectfully requests this Court hold State Defendants' Motion for a Protective Order in abeyance or, alternatively, deny State Defendants' motion for a protective order while imposing appropriate limitations on the deposition of Secretary Scott.

Date:  March 29, 2022

                KRISTEN CLARKE
                Assistant Attorney General

                PAMELA S. KARLAN
                Principal Deputy Assistant Attorney General
                Civil Rights Division

                */s/ Dana Paikowsky*
                T. CHRISTIAN HERREN, JR.
                RICHARD A. DELLHEIM
                DANIEL J. FREEMAN
                DANA PAIKOWSKY
                MICHAEL E. STEWART
                JENNIFER YUN
                Attorneys, Voting Section
                Civil Rights Division
                U.S. Department of Justice
                950 Pennsylvania Avenue NW
                Washington, D.C. 20530
                dana.paikowsky@usdoj.gov

**CERTIFICATE OF SERVICE**

       I hereby certify that on March 29, 2021, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

       */s/ Dana Paikowsky*
Dana Paikowsky
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 353-5225
dana.paikowsky@usdoj.gov