# Exhibit 2

# Freeman, Daniel (CRT)

| | |
|---|---|
| **From:** | Eric Hudson <Eric.Hudson@oag.texas.gov> |
| **Sent:** | Monday, March 14, 2022 6:48 PM |
| **To:** | Paikowsky, Dana (CRT); Jeff White; Freeman, Daniel (CRT) |
| **Cc:** | Dellheim, Richard (CRT); Yun, Jennifer (CRT); Stewart, Michael (CRT); Patrick Sweeten; Kathleen Hunker; Aaron Barnes; Jack DiSorbo; Elizabeth Saunders |
| **Subject:** | [EXTERNAL] RE: LUPE v. Texas (SB 1): US Second RFP |

Dana—

Thanks for getting back to us. We had to run the new search with the November 3, 2020 date, and found that number places us at roughly 24,000 documents to review. We can agree to review the roughly 24,000 documents flowing from your most recent proposed dates, but we need two weeks from tomorrow to complete the review and an additional week for the privilege log. As for your proposal to produce piecemeal, we can agree to send the first production by next Tuesday, March 22, and the second on March 29. We'll produce a privilege log within seven business days of March 29. Considering the press of time, we're moving forward with the foregoing proposal, but if this agreement isn't satisfactory, let us know.

As for the response to the Third RFPs from the United States, we will supplement to the extent that supplementation is necessary, but as indicated in our discussion last week, we've already produced significant public-facing documents and documents that were responsive to DOJ's First RFPs that are also responsive to the significant overlap in your Third RFPs.

Lastly, I would like to address the conference and the concerns raised over the requests for documents that DOJ claims are ultra-sensitive and documents that are subject to privilege. First, while we appreciate that there are sensitivities about on-going investigations, the federal government has expressly challenged that election security was a valid concern when passing SB1. *See, e.g.*, ECF 131 at ¶¶ 25, 27-29. The United States can't use privileges and concerns over ultra-sensitive materials to withhold documents on the one hand while on the other hand claiming that election security is not a legitimate concern in Texas.

Of course, we are willing to negotiate a resolution that gets the State what it needs and protects DOJ's interests. As you recognize, the Texas OAG is also a law enforcement agency. It was that recognition, in fact, that allowed us to negotiate an extensive ultra-sensitive protocol for the United States to receive the DPS database and the Teams database. But we'd also like to point out that we've already received information about on-going federal investigations in Texas from other parties in this case, so it is difficult to reconcile DOJ's position with the fact that documents concerning federal criminal investigations have already been produced. *See* MS007415 (Email from Zachary Bowen, an investigator with the Diplomatic Security Service, detailing an on-going federal criminal investigation into voter fraud to Michael Scarpello, the Dallas County Elections Administrator).

That said, I understand the United State's position from the call last week to be that it can produce *nothing* and cannot produce a privilege log either. In effect, the United States is taking the position that the State of Texas is not entitled to any discovery from the United States to combat the contention that election integrity is a non-issue. Your email appears to abandon that position, and if that is the case, then we're making progress. As for your ask to limit the requests, we already agreed last week at the meet-and-confer to do so. To reiterate:

1. We're amenable to limiting our requests to information implicating Texas.
2. We're amenable to time limiting the requests. Here, the DOJ has agreed to limit its look back to November 3, 2020. We'll agree to a reciprocal limitation.

3. As for limiting our requests to particular custodians, the DOJ has not offered or identified any custodians and would be in the best position at this point to know who the relevant players are. Rather than wait the full thirty days to respond, the United States could send organizational charts that have been requested in advance of the response deadline to allow for a meaningful conference on relevant custodians. Considering the asymmetry of knowledge on this point, absent some assistance from you in understanding the relevant custodians, it is not practical or, frankly, possible, to negotiate this term at this time.

s/Eric Hudson