# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br> *Defendants*. | Case No. 5:21-cv-844-XR <br> [Lead Case] |

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION OF FORMER TEXAS SECRETARY OF STATE

On April 1, 2022, Plaintiff Mi Familia Vota (MFV) served the former Texas Secretary of State, Ruth R. Hughs, with a subpoena to testify at a deposition. This comes on the heels of co-plaintiff the United States' deposition notice for the sitting Secretary of State. As with that attempt, this request—to depose a former Texas constitutional officeholder—is unduly burdensome and unjustifiable.

MFV's deposition notice is improper for two reasons. First, MFV is seeking an unlawful "apex deposition" of former Secretary Hughs. Second, Hughs lacks superior or unique knowledge compared to other lower-level Secretary of State employees. Therefore, deposing Secretary Hughs is not calculated to lead to the discovery of relevant information.

Accordingly, the former Texas Secretary of State respectfully asks the Court to quash the subpoena served on April 1, 2022, or, in the alternative, for a protective order.

## BACKGROUND

MFV claims that Senate Bill 1 (SB1)[1] is inconsistent with federal statutes. *See* ECF 131 ¶¶ 68, 75. The Texas Legislature approved SB1 on September 1, 2021, and the Governor signed it into law

---

[1] The Election Integrity Protection Act of 2021, S.B. 1, 87th Leg., 2d C.S. (Tex. 2021).

on September 7, 2021. Hughs served as the Secretary of State from August 19, 2019, to May 31, 2021. *See* Exhibit A, Declaration of Ruth R. Hughs ¶ 2. Secretary Hughs has declared that she lacks unique or superior knowledge of facts related to the enactment of the challenged provisions of SB1, or personal knowledge of any private motivations of the members of the Texas Legislature related to the enactment of the challenged provisions of SB1. *See* Ex. A ¶¶ 5, 7. And she has declared that she lacks personal knowledge of facts related to implementation of the challenged provisions of SB1. *See* Ex. A ¶ 6.

Co-plaintiff the United States has previously served written discovery on the Office of the Secretary of State. Yet none of those requests required the involvement of, or were verified by, the current or former Texas Secretary of State.[2] Rather, the answers to the United States' interrogatories, for example, were verified by the Director of Elections, Keith Ingram, who is scheduled to be deposed by the United States on April 28, 2022.[3] The United States has also issued a 30(b)(6) deposition notice to the Office of the Texas Secretary of State for April 26, 2022.[4]

MFV's proffered basis to depose Secretary Hughs is that "only she can speak to her reasons for" stating that the "[2020] election [was] 'free and fair'" and "for her resignation"—"other election officials . . . would not be able to speak to Ms. Hughs' mental impressions." *See* Exhibit B, Email Exchange Between Elijah Watkins and Patrick Sweeten Dated March 30, 2022. MFV objects to alternative means of discovery—the sole rationale being that "a live deposition . . . is incomparable to written answers done with the assistants [*sic*] of counsel." Ex. B.

---

[2] *See generally* Exhibit C, United States' First Set of Interrogatories; Exhibit D, United States' First Set of Requests for Admission; Exhibit E, United States' First Request for Production of Documents; Exhibit F, United States' Second Request for Production of Documents; Exhibit G, United States' Third Request for Production of Documents.
[3] *See* Exhibit H, Defendants' Objections and Responses to the United States' First Set of Interrogatories.
[4] *See* Exhibit I, The United States' Notice of Rule 30(b)(6) Deposition of the Office of the Texas Secretary of State.

**STANDARD**

A party is entitled to discovery of only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A court must limit the "extent of discovery" where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). "On timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A); *see also In re FDIC*, 58 F.3d 1055, 1057 (5th Cir. 1995) (holding it was an abuse of discretion to "declin[e] to quash notices of deposition").[5]

**ARGUMENT**

**I.     Mi Familia Vota Seeks an Unlawful Apex Deposition**

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires the Court to quash a subpoena if it "subjects a person to undue burden." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) (citation omitted).[6] When the person is a high-ranking official, there is a strong presumption of undue burden. This is known as the apex doctrine.

The Fifth Circuit has long held that, under this doctrine, "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) (quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)). "It is a settled rule in this

---

[5] A motion to quash is the appropriate procedural vehicle here. *Compare* FED. R. CIV. P. 26(c) (explaining that "[a] party or any person from whom discovery is sought may move for a protective order"), *with* FED. R. CIV. P. 45(d)(3)(A) (providing that "[o]n timely motion, the court . . . must quash or modify *a subpoena* that . . . subjects a person to undue burden" (emphasis added)). But if this Court disagrees, the Secretary of State moves, in the alternative, for a motion for a protective order. *See* FED. R. CIV. P. 26(c).

[6] Federal Rule of Civil Procedure 26(c) allows this Court to enter a protective order if a deposition would subject "a person" to "undue burden."

3

circuit that 'exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.'" *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quoting *In re Office of Inspector Gen.*, 933 F.2d at 278); *accord In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (per curiam). This principle is also firmly rooted in other circuits across the country.[7] And the discovering party bears the burden of showing that extraordinary circumstances exist. *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 179 (Tex. 2000) (orig. proceeding).

MFV seeks to depose the former Texas Secretary of State, a high-ranking government official. Yet it has not shown that exceptional circumstances require this deposition.

### A. The apex doctrine applies with equal force to former high-ranking officials.

MFV agrees that the apex doctrine applies to former officials. *See* Ex. B. At first, MFV argued that former Secretary Hughs "is not a 'high-ranking public official,' but a partner at a large law firm and a fact witness." Ex. B; *see id.* ("If you have a case for me to look at that says partners at large law firms who use [*sic*] to work in government in a past life cannot be deposed, I'd be glad to review it."). But after further consideration, MFV now concedes that the apex doctrine applies to former officials. *See* Ex. B.

Indeed, courts hold just the same. *E.g.*, *Fauthier v. Union Pac. R.R. Co.*, No. 1:07-cv-12, 2008 WL 2467016, at *3, *9–14 (E.D. Tex. June 18, 2008) (quashing depositions of "current and former executive officers"); *see also Lederman v. N.Y.C. Dep't of Parks & Recreation*, 713F.3d 199, 203–04 (2d Cir. 2013) (addressing both former and current officials); *United States v. Newman*, 531 F. Supp. 3d 181,

---

[7] *E.g.*, *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 713F.3d 199, 203–04 (2d Cir. 2013); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify or [be] deposed regarding their reasons for taking official action."); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam) ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that [one] show a special need or situation compelling such testimony[.]"); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co.*, 766 F.2d at 586.

4

188 (D.D.C. 2021) ("[T]he apex doctrine is no less applicable to former officials than to current officials." (quoting *FDIC v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015))); *K.C.R. v. County of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.").

What is more, in a brief filed late last year, co-plaintiff the United States itself characterized the apex doctrine as "the well-recognized principle that high-ranking government officials, *both current and former*, should not—absent exceptional circumstances—be deposed or called to testify regarding their reasons for taking official action." *Texas v. Biden*, No. 2:21-cv-00067-Z, ECF 110 at 14 (emphasis added). For these reasons, the apex doctrine applies to former Secretary Hughs.

**B. The Texas Secretary of State is a high-ranking government official.**

The apex doctrine acknowledges that "[h]igh-ranking government officials are the subject of or involved in unusually high numbers of lawsuits." *In re Bryant*, 745 F. App'x at 220–21. Accordingly, courts across the country have applied this doctrine to preclude depositions of high-ranking executive-branch officials, including Directors of the FDIC,[8] EPA Administrators,[9] the CFTC chairman and commissioners,[10] the Vice President's Chief of Staff,[11] the U.S. Attorney General and Deputy Attorney General,[12] and the FDA Commissioner.[13]

Likewise, Texas courts carefully restrict the extent to which high-level government officials may be compelled to testify. For example, in 2001, the Texas Supreme Court granted mandamus relief when a trial court denied a motion to quash the depositions of Legislative Redistricting Board

---

[8] *In re FDIC*, 58 F.3d at 1063.
[9] *In re McCarthy*, 636 F. App'x 142, 145 (4th Cir. 2015).
[10] *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 875 (7th Cir. 2019).
[11] *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).
[12] *In re United States ("Holder")*, 197 F.3d 310, 316 (8th Cir. 1999).
[13] *In re United States ("Kessler")*, 985 F.2d 510, 513 (11th Cir. 1993) (per curiam).

members. *In re Perry*, 60 S.W. 3d 857, 861 (Tex. 2001). A Texas appeals court held that the trial court abused its discretion by allowing pre-suit depositions of the Texas Comptroller. *Combs v. Tex. Civ. Rts. Project*, 410 S.W.3d 529, 537–39 (Tex. App.—Austin 2013, pet. denied). And another Texas appeals court granted mandamus relief from an order allowing the deposition of former President George W. Bush. *In re Bush*, 287 S.W.3d 899, 904–05 (Tex. App.—Dallas 2009, orig. proceeding).

The Texas Secretary of State is a high-level government official. The Secretary is one of six state officials under the Texas Constitution that form the Executive Department of the State—the other five being the Governor, Lieutenant Governor, Comptroller, Land Commissioner, and Attorney General. TEX. CONST. art. IV, § 1; *see also Combs*, 410 S.W.3d at 537 (barring the deposition of the Comptroller). The Secretary is the chief election officer of Texas, maintains records required to be filed with the office, publishes rules and regulations, commissions notaries public, attests to the Governor's signature on official documents, advises the Governor on Texas border and Mexican affairs, and serves as the chief international protocol officer for Texas. *See, e.g.*, TEX. CONST. art. IV, §§ 3, 14, 19, 20, 21, 26. To perform these functions, the Secretary oversees multiple divisions comprised of approximately 180 employees. *See* Ex. A ¶ 3.

**C. Subjecting the former Secretary to testimony would unduly burden her.**

Compelling testimony from high-ranking public officials creates unique concerns. Although some of these concerns "are eliminated when the official leaves government service," there are "other rationales behind the apex doctrine." *Newman*, 531 F. Supp. 3d at 188. For one thing, there is a "potential for harassment" if the current or former head of a large government agency were routinely called to testify. *See In re Alcatel USA, Inc.*, 11 S.W.3d at 181. As the Fifth Circuit has held, because high-ranking government officials "are the subject of or involved in unusually high numbers of lawsuits," they must "be protected from undue burdens" from that "frequent litigation." *In re Bryant*, 745 F. App'x at 220–21. And "[t]he need to . . . encourage public service by protecting officials from

6

'indiscriminate depositions' continue[s] to persist after the official leaves government service." *Newman*, 531 F. Supp. 3d at 188 (quotation omitted).

The Office of the Texas Secretary of State is involved in many lawsuits in both federal and state courts. *See* Ex. A ¶ 8. The former Secretary cannot reasonably be expected to be deposed in each of these lawsuits. Otherwise, it would subject her to "harassment" and the "undue burdens" from "frequent litigation."

### D. MFV has not shown that exceptional circumstances exist.

A litigant cannot compel apex testimony absent a showing that "exceptional circumstances" exist and require "involuntary depositions of high agency officials." *In re FDIC*, 58 F.3d at 1060 (quoting *In re Office of Inspector Gen.*, 933 F.2d at 78). The putative witness must have unique or superior knowledge of relevant facts that the litigant has been unable to obtain through less intrusive methods. *See, e.g.*, *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995) (orig. proceeding). This applies when, as here, a party seeks testimony from a former high-ranking public official who presents a declaration denying personal knowledge of relevant facts. *Id.* at 128; *see also* Ex. A ¶¶ 5–7.

A former official's denial of unique or superior knowledge shifts the burden to the discovering party to show otherwise. *See In re Alcatel USA*, 11 S.W.3d at 179; *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 656–57 (Tex. 2000) (orig. proceeding) (per curiam). "[I]f a discovering party cannot arguably show that a high-level official has unique or superior knowledge of discoverable information, the trial court must grant a motion for protection, 'and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods.'" *In re Daisy Mfg. Co.*, 17 S.W.3d at 656–57 (quoting *Crown Cent.*, 904 S.W. 2d at 128).

This requirement is not met by showing merely that the official has "some knowledge of discoverable information." *In re Alcatel USA*, 11 S.W.3d at 179. Instead, this step entails "some showing beyond mere relevance, such as evidence that . . . the executive arguably possesses relevant

7

knowledge greater in quality or quantity than other available sources." *Id.* The discovering party must also show that it made "a good faith effort to obtain the discovery through less intrusive methods" and "that the less intrusive methods of discovery [were] unsatisfactory, insufficient[,] or inadequate." *Crown Cent.*, 904 S.W.2d at 128.

Here, the former Secretary has denied having unique or superior personal knowledge of relevant facts. Ex. A ¶¶ 5–7. To the extent Secretary Hughs has personal knowledge related to the enactment of SB1, it is only insofar as other employees of the Office of the Texas Secretary of State or election officials relayed it to her. Ex. A ¶ 5. Therefore, she lacks unique or superior personal knowledge related to the enactment of SB1. And Secretary Hughs resigned her post before the implementation of SB1. *See* Ex. A ¶ 2. Thus she lacks personal knowledge of relevant facts related to the implementation of SB1. Ex. A ¶ 6. Furthermore, as explained in Defendants' Motion to Dismiss, *see generally* ECF 145, the challenged provisions of SB1 are implemented by election officials at the local level, Ex. A ¶ 6. So even if Secretary Hughs had been in office during the implementation of SB1, she would still lack unique or superior knowledge related to SB1's implementation.

Because Secretary Hughs has denied unique or superior personal knowledge of relevant facts, MFV bears the burden of showing otherwise. *See In re Alcatel USA*, 11 S.W.3d at 179. But MFV cannot. MFV seeks to depose former Secretary Hughs to prove that the Texas Legislature's reason for enacting SB1 is mere pretext. *See* Ex. B ("[T]he Texas Legislature claims there was rampant voter fraud, which was the reason behind SB 1's enactment. As you know[,] MFV (and other plaintiffs groups) believe the Legislature's reasoning for SB 1 is pretextual . . . ."). Particularly, MFV contends that former Secretary Hughs' statement that the 2020 election was "free and fair" demonstrates that the Legislature's purpose in passing SB1 is pretextual and thus "justifies questioning Ms. Hughs." *See* Ex. B. That is a non sequitur. As Secretary of State, Hughs had no role in enacting SB1. Ex. A ¶ 5. It stands to reason she would not have personal knowledge of the alleged secret reasons for the Texas

8

Legislature's enactment of SB1 and such testimony would be speculative at best. *See* Ex. A ¶ 7.

Even if it could meet its burden, MFV has not made a "good faith effort" to obtain the information through "less intrusive means" that were "unsatisfactory, insufficient[,] or inadequate." *See Crown Cent.*, 904 S.W. 2d at 128. In fact, during the parties' meet-and-confer, counsel for State Defendants proposed written answers as an alternative. *See* Ex. B. But MFV waved away that suggestion, arguing that "courts . . . near universally agree that a live deposition . . . is incomparable to written answers done with the assistants [*sic*] of counsel." Ex. B. Thus, MFV implies that the apex doctrine does not require a good faith effort to obtain discovery through written answers. But that ignores the Fifth Circuit's holding that courts must consider "whether the information desired can be obtained in another form," explicitly including "written answers to questions." *Bryant*, 745 F. App'x at 220–22.

MFV also fails, as explained *supra*, to demonstrate that Secretary Hughs has personal knowledge—let alone unique or superior knowledge—of the Legislature's reasons for passing SB1. That by itself shows that "the information desired can be sought from alternative witnesses" and, as such, the deposition of former Secretary Hughs may not go forward. *Bryant*, 745 F. App'x at 220–22. MFV must at least try to obtain the discovery it seeks through such less intrusive means before deposing the former Texas Secretary of State. For these reasons, this Court should grant the motion to quash.

## II. This Deposition Is Not Calculated to Lead to the Discovery of Relevant Information

Even if the apex doctrine did not apply, this Court should still quash the subpoena. Under the Federal Rules, a court must quash or modify a subpoena that "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv).[14] And a party is entitled only to discovery of "any nonprivileged matter

---

[14] Likewise, a court shall "issue an order to protect a party or person from . . . undue burden." FED. R. CIV. P. 26(c).

that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

It is an undue burden to notice depositions that would provide only irrelevant information. *See INTL FCStone Fin., Inc. v. OptionSellers.com, Inc.*, No. 6:21-mc-0004-JDK, 2021 WL 1540528, at *2 (E.D. Tex. Apr. 20, 2021) ("Irrelevance is a ground for quashing a deposition as unduly burdensome."). As discussed *supra*, former Secretary Hughs lacks unique or superior knowledge related to the enactment of SB1; she lacks personal knowledge related to the implementation of SB1; and she lacks personal knowledge related to the supposed private motives of the Texas Legislature.

Even if the former Secretary did have personal knowledge of such information, it is improper for Plaintiffs to seek to discover her decisionmaking process. And yet that is precisely what MFV seeks. *See* Ex. B ("[I]t makes little sense to wait and depose other election officials as they would not be able to speak to Ms. Hughs' mental impressions."). But the Supreme Court has repeatedly confirmed that absent "a strong showing of bad faith or improper behavior," discovery into the "mental processes of administrative decisionmakers" is unwarranted. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019); *see also In re Dep't of Commerce*, 139 S. Ct. 16, 16–17 (2018) (staying the district court's order authorizing the deposition of the Secretary of Commerce). Otherwise, high-ranking officials "could never do their jobs" because they would be less willing to explore all options before them, lest they "be subpoenaed for every case involving their agency." *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993). And this protection continues to apply even after high-ranking officials leave office. *See Newman*, 531 F. Supp. 3d at 188 ("The need to protect the integrity of the underlying decision-making process [of high-ranking officials] . . . persist[s] after the official leaves government service.").

Moreover, even if Secretary Hughs did have personal knowledge, it would be subject to the deliberative-process privilege. *See generally In re EEOC*, 207 F. App'x 426 (5th Cir. 2006); *Swanston v.*

*City of Plano*, No. 4:19-cv-00412, 2020 WL 4732214 (E.D. Tex. Aug. 14, 2020); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351 (Tex. 2000).

Finally, under the Federal Rules, the Court must limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Here, several alternatives would allow MFV (and co-plaintiff the United States) to obtain the discovery it seeks that would be both more convenient and less burdensome to the former head of one of Texas's six officials forming its Executive Department—namely, a 30(b)(6) deposition, answers to written questions, and depositions of other sources.

## CONCLUSION

The former Texas Secretary of State respectfully asks the Court to quash the subpoena to former Secretary of State Hughs to testify at a deposition.

Date: April 6, 2022                          Respectfully submitted.

KEN PAXTON                                   /s/ Patrick K. Sweeten
Attorney General of Texas                    PATRICK K. SWEETEN
                                             Deputy Attorney General for Special Litigation
BRENT WEBSTER                                Tex. State Bar No. 00798537
First Assistant Attorney General

                                             WILLIAM T. THOMPSON
                                             Deputy Chief, Special Litigation Unit
                                             Tex. State Bar No. 24088531

                                             OFFICE OF THE ATTORNEY GENERAL
                                             P.O. Box 12548 (MC-009)
                                             Austin, Texas 78711-2548
                                             Tel.: (512) 463-2100
                                             Fax: (512) 457-4410
                                             patrick.sweeten@oag.texas.gov
                                             will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

On March 28, 2022, I conferred with counsel for the United States about the foregoing motion. Counsel for the United States represented that the United States opposes this motion.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 6, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN