IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HOUSTON AREA URBAN LEAGUE, et al., *Plaintiffs*, v. GREGORY WAYNE ABBOTT, et al., *Defendants*. MI FAMILIA VOTA, et al., *Plaintiffs*, v. GREG ABBOTT, et al., *Defendants*. | 5:21-cv-0844-XR |

**HOUSTON AREA URBAN LEAGUE AND MI FAMILIA VOTA PLAINTIFFS' OPPOSITION TO DEFENDANT OGG'S MOTION TO DISMISS**

The Houston Area Urban League and Mi Familia Vota Plaintiffs' Second Amended Complaint (Complaint) sets forth clear allegations documenting harm arising from the passage and imminent enforcement of Texas Senate Bill 1 (SB 1), including harm to Plaintiffs The Arc of Texas; Delta Sigma Theta Sorority, Inc.; and Mi Familia Vota, from anticipated enforcement of the law's criminal penalties against individuals who provide voting assistance to voters with disabilities. The Complaint sufficiently alleges standing on behalf of all three of the above-named plaintiffs and sufficiently connects Defendant Kim Ogg to the challenged provisions' enforcement. Defendant Ogg's motion to dismiss should therefore be denied.

**BACKGROUND**

Among many other provisions challenged through this consolidated litigation, SB 1 placed burdens and prohibitions, enforced through threat of criminal sanction, on individuals who assist voters with disabilities. Section 6.04 of SB 1 amended section 64.034 of the Texas Election Code to

1

require assistors to swear under penalty of perjury that they have conformed their assistance to the section's specifications and that the voter they are assisting "represented to [the assistor] they are eligible to receive assistance." SB 1 § 6.04 (amending Tex. Elec. Code § 64.034). Perjury is a criminal offense under section 37.02 of the Texas Penal Code. Section 6.05 amended section 86.010 of the Texas Election Code to require detailed disclosures from the assistor on the voter's ballot envelope; failure to complete the disclosures is a felony. SB 1 § 6.05 (amending Tex. Elec. Code § 86.010); *see also* Tex. Elec. Code § 86.010(f)-(g).

Plaintiff The Arc of Texas alleges harm arising from the prospect of enforcement of both of these provisions; Plaintiffs Delta Sigma Theta and Mi Familia Vota allege harm arising from the prospect of enforcement of section 6.05 of SB 1. *See* Second Amended Complaint, ECF No. 199 ¶¶ 42–66.

First, all three organizations have alleged that they have been forced to divert resources to respond to SB 1's new assistor provisions. In this way, the plaintiffs have alleged an organizational-level harm. Specifically, Plaintiffs The Arc of Texas, Delta Sigma Theta, and Mi Familia Vota allege that they will have to divert resources away from their routine activities to address SB 1's illegal voter assistance limitations. Plaintiff Delta Sigma Theta alleges that SB 1 will require it to expend resources "providing public education regarding the changes in voting law and procedure, and responding to how these changes in law will affect their members' ability to engage in voter registration and voter assistance." Second Am. Compl. ¶ 48. Plaintiff The Arc of Texas alleges that it "will have to expend more time, money, and resources on its efforts to educate and assist voters" with disabilities to understand and comply with SB 1's illegal voter assistance limitations. *Id.* ¶ 57. And Plaintiff Mi Familia Vota alleges that it will have to divert resources to "increase awareness and education about new restrictions on people who provide transportation and other physical and language assistance at the

2

polls to ensure that the elderly, disabled, or non-English-speaking voters who Mi Familia Vota supports are able to vote in compliance with SB 1." *Id.* ¶ 64.

Second, The Arc of Texas also alleges harm on behalf of its members and presents examples of several individual members who rely on assistance at the polls and who will be unable to enjoy that assistance in future elections, either because it is prohibited by section 6.04, or because assistors are unwilling to help, given the threat of criminal sanctions. *See* Second Am. Complaint ¶¶ 58–61.

Defendant Kim Ogg is the District Attorney for Harris County and is responsible for the enforcement of criminal laws, including enforcement of penalties associated with violation of the Texas Election Code. *See Longoria v. Paxton*, No. SA:21-CV-1223-XR, 2022 WL 447573, at *11 (W.D. Tex. Feb. 11, 2022). She is directly responsible for enforcing violations of SB 1 sections 6.04 and 6.05.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to contest the court's subject matter jurisdiction; Rule 12(b)(6) provides a path to contest the plausibility of the plaintiff's allegations of illegal conduct. A 12(b)(1) challenge can take the form of a facial attack—alleging that the allegations of the complaint do not establish subject matter jurisdiction—or a factual attack—alleging that as a matter of reality there is no subject matter jurisdiction. *See Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). Because Defendant Ogg challenges the sufficiency of the complaint's allegations and has submitted no admissible evidence tending to undermine the validity of the complaint's allegations, the instant challenge is facial. *See id.* at 263–64.

In assessing a motion to dismiss under 12(b)(1) and 12(b)(6), the Court takes the complaint's allegations as true. *See id.* at 263; *Dumas v. Texas Dep't of, Crim. Just. Bd. of Directors*, No. SA-21-CV-00492-XR, 2022 WL 488151, at *2 (W.D. Tex. Feb. 16, 2022). A 12(b)(1) motion should be granted "only if it appears certain the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Dumas*, 2022 WL 488151, at *2. A 12(b)(6) motion should be granted only "when

3

the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise [its] right to relief above the speculative level." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

Defendant Ogg incorrectly argues that Plaintiffs lack standing and that as an arm of the state, she is immune from this suit. Neither argument survives scrutiny. Plaintiffs have standing to sue Defendant Ogg, who undisputedly has enforcement authority over the provisions of SB1 at issue here. She cannot assert sovereign immunity from the Plaintiffs' statutory and constitutional claims. Finally, Defendant Ogg argues that Plaintiffs fail to state a claim against her. This argument, which repeats Defendant Ogg's flawed jurisdictional arguments, also should be rejected.

## I. Caselaw permits pre-enforcement challenges to criminal prohibitions.

Before addressing the specific allegations in the Complaint that establish Plaintiffs' standing and overcome sovereign immunity, Plaintiffs address in general terms the flawed premise of Defendant Ogg's jurisdictional challenges. Her motion is based largely on the notion that the lack of allegations regarding specific enforcement of the challenged assistor provisions by her office means both that Plaintiffs have no standing and that she is immune from suit. That argument is contrary to law.

In the standing context, which overlaps significantly with the *Ex parte Young* analysis, *see Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017), a plaintiff who challenges a criminal prohibition before it is enforced can establish injury in fact by demonstrating the plaintiff's intent to engage in a course of conduct affected with a constitutional interest that is "arguably proscribed" by the challenged law and that there is a "credible threat of prosecution." *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013). "[A] plaintiff may . . . establish a substantial threat of enforcement simply by showing that she is 'either presently or prospectively subject to the regulations, proscriptions, or compulsions [being challenged]." *Longoria*, 2022 WL

4

447573, at *6 (alteration in original) (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), as revised (Oct. 30, 2020)); *see also Fenves*, 979 F.3d at 335 (discussing presumption of credible threat of enforcement in pre-enforcement challenge to criminal law burdening First Amendment activity); *see, e.g., Consumer Data Indus. Ass'n v. Texas*, No. 1:19-CV-876-RP, 2021 U.S. Dist. LEXIS 212009, at *6-7 (W.D. Tex. Sep. 28, 2021) (finding cognizable harm traceable to the enforcing authority, even in the absence of explicit efforts to enforce the challenged law, where the enforcing authority has refrained from agreeing never to enforce the statute). A plaintiff need not allege specific ongoing enforcement actions, particularly in the context of a newly enacted criminal statute that prohibits the plaintiff from engaging in protected activity. *See McCraw*, 719 F.3d at 345; *cf. Longoria*, 2022 WL 447573, at *8.

The analysis is similar in the *Ex parte Young* context. As this Court recently observed, the district attorneys', including Defendant Ogg's, responsibility for investigating and prosecuting violations of the Election Code "confirm[s] that county and district attorneys have authority to compel or constrain a person's ability to violate the law." *Longoria*, 2022 WL 447573, at *11. As will be discussed more fully below, Defendant Ogg has specific, compulsive enforcement authority, which is sufficient to invoke the *Ex parte Young* sovereign immunity exception.

Defendant Ogg has not cited a single case in which the defendant's mere silence on enforcement of a recently enacted criminal statute that is challenged in a pre-enforcement posture defeats standing or defeats efforts to invoke the *Ex parte Young* exception to sovereign immunity. To the contrary, she acknowledges that this Court held otherwise in litigation challenging another provision of SB 1. *See* Ogg Mot. at 15 n.4, ECF No. 344 (citing *Longoria*, 2022 WL 447573, at *11).

**II.    Plaintiffs have standing to sue Defendant Ogg over the legality of sections 6.04 and 6.05.**

As Defendant Ogg correctly recites in her motion, Article III standing requires that Plaintiffs allege (1) injury in fact, (2) caused by the defendant, and (3) redressable by a favorable decision. *See*

5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because this suit requests prospective relief only, the Court need only satisfy itself that one plaintiff has standing. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585–86 (5th Cir. 2006). Defendant Ogg argues only that Plaintiffs fail to allege a cognizable injury for Article III purposes.[1]

      a. <u>All three plaintiffs allege organizational standing.</u>

Two types of injury in fact are relevant to the claims at issue. First is the organizational injury that all three Plaintiffs allege has arisen as a result of SB 1's assistor provisions. As discussed above, The Arc of Texas, Delta Sigma Theta Sorority, and Mi Familia Vota have alleged the diversion of resources to educate voters about compliance with the changes in the law. *See* Second Am. Compl. ¶¶ 48, 57, 64. These resource-intensive education efforts—which are targeted in part at educating individuals, so they do not violate the law's criminal provisions—are necessary because of the prospect of prosecutions by Defendant Ogg. The need to expend resources on those efforts confers standing. As this Court has explained, "the diversion of organizational resources from voter registration and other get-out-the-vote initiatives toward education concerning compliance with voting regulations confers standing." *OCA-Greater Houston v. Texas*, No. 1:15-CV-00679-RP, 2016 WL 9651777, at *5 (W.D. Tex. Aug. 12, 2016), *aff'd*, 867 F.3d 604 (5th Cir. 2017); *see also OCA-Greater Hous.*, 867 F.3d at 610–12; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (recognizing injury in fact arising from "injury to the organization's activities—with the consequent drain on the organization's resources").

All three organizations allege concrete organizational harm arising from the prospect of enforcement of the assistor provisions, and enjoining Defendant Ogg from enforcing the provisions would remediate that harm. *See NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 397 (5th Cir. 2015) (request

---

[1] Defendant Ogg, "[w]ith respect to the provisions of S.B. 1 that do not contain criminal offenses or penalties," argues that "Plaintiffs' allegations against Ogg also fail to satisfy the causation and redressability prongs of the standing test." Ogg Mot. at 18. Plaintiffs have sued Ogg over only criminal provisions; these arguments are therefore inapplicable Plaintiffs' Complaint.

6

for injunctive relief satisfies redressability where complaint alleges continuing or imminent violation). All three organizations therefore have standing to sue Defendant Ogg to enjoin enforcement of the offending provisions.

### b. The Arc of Texas also pleads facts establishing associational standing.

The Arc of Texas also alleges facts demonstrating associational standing on behalf of its members, many of whom will be unable to secure necessary assistance casting their votes because of the prospect of Defendant Ogg's enforcement of the assistor provisions' criminal penalties against their assistors.

An association has standing to sue on behalf of its members when "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Associational standing is an appropriate jurisdictional basis in this case because The Arc of Texas has alleged that its "members are among those injured by" SB 1 and that The Arc of Texas's mission is relevant to the relief it seeks. *See Steward v. Abbott*, 189 F. Supp. 3d 620, 631 (W.D. Tex. 2016) (finding The Arc of Texas has associational standing to represent members' interests in litigation under, *inter alia*, the ADA and Rehabilitation Act). Moreover, "participation of the members whose injury confers standing upon an organizational plaintiff is not required where, as here, the organizational plaintiffs seek only declaratory and injunctive relief." *Id.* at 631–32.

The Complaint includes allegations of members who require assistance beyond what is allowed under the terms of the assistor oath in section 6.04, which limits assistance at a polling place to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or

7

directing the voter to mark the ballot." SB 1 § 6.04 (amending Tex. Elec. Code § 64.034); *see* Second Am. Compl. ¶¶ 59–60. The Arc of Texas' Complaint also includes allegations from members who have been informed by past assistors that they can no longer provide voting assistance given the limitations imposed by section 6.04, the burdens imposed by section 6.05, and the threat of criminal sanctions for violation of either. *See* Second Am. Compl. ¶¶ 59–60. The Complaint further alleges that The Arc of Texas serves members throughout Texas facing similar obstacles imposed by the assistor provisions. *See id.* ¶ 49 & n.22, ¶ 56.

Defendant Ogg asserts that The Arc of Texas cannot establish associational standing because its members have not alleged an intent to violate the assistor provisions. *See* Ogg Mot. at 17. But The Arc of Texas has alleged that its members will be unable to secure adequate assistance because of the limitations and burdens sections 6.04 and 6.05 impose. Section 6.04 directly forbids a level of assistance that members require and have used in the past, and section 6.05 burdens assistors with the threat of prosecution for their assistance. The Complaint includes specific allegations of members who have received voting assistance in the past, the scope of which would violate the oath provision. *See* Second Am. Compl. ¶¶ 58–60. The Arc of Texas's members and their assistors are therefore refraining from activity in which they would normally engage, to avoid violating the assistor provisions. When a criminal provision forbids a plaintiff from engaging in a protected activity, standing exists. *See, e.g., McCraw*, 719 F.3d at 345 (plaintiffs have standing to sue criminal provision that forbids them from carrying a handgun).

Given the foregoing, Plaintiffs The Arc of Texas, Delta Sigma Theta, and Mi Familia Vota have standing to sue Defendant Ogg over the legality of sections 6.04 and 6.05.[2]

---

[2] Defendant Ogg faults "certain Plaintiffs" for serving a deposition notice on her related to SB 1111. Ogg Mot. at 18. That notice appears to have been filed in a completely separate case and thus is entirely irrelevant to the instant motion. *See* Ex. B. to Ogg Mot., ECF No. 344-2.

**III.     Defendant Ogg is not immune from suit.**

Defendant Ogg argues that, as an arm of the State of Texas, she is immune from suit because there has been no waiver or abrogation of immunity and because the *Ex parte Young* exception to sovereign immunity does not apply to her.

As set forth in Plaintiffs' response to the motion to dismiss filed by the State Defendants, ECF No. 252, multiple exceptions to sovereign immunity apply to Plaintiffs' claims. First, Congressional abrogation or waiver exempt Plaintiffs' claims under the Voting Rights Act, Title II of the ADA, and section 504 of the Rehabilitation Act from sovereign immunity. Plaintiffs repeat and incorporate in that regard the arguments made in opposition to the State Defendants' motion to dismiss below. *See also id.* at 2–5. Second, the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), creates an exception to sovereign immunity in suits for injunctive relief against officials who have a sufficient enforcement connection to the challenged law.

   a. <u>Sovereign Immunity Does Not Apply to Plaintiffs' Voting Rights Act, ADA, and Rehabilitation Act Claims</u>

Defendant Ogg is not immune from suit under Plaintiffs' statutory claims. Binding Fifth Circuit precedent recognizes that Congress abrogated sovereign immunity when it passed the Voting Rights Act of 1965 ("VRA"). "There is no sovereign immunity with respect to . . . Voting Rights Act claims." *Mi Familia Vota*, 977 F.3d at 469 & n.26. Defendant Ogg has no sovereign immunity as to Plaintiffs' claims under sections 2 and 208 of the VRA.

The Arc of Texas's claim under Title II of the ADA is also exempt from sovereign immunity. "Congress can abrogate this immunity if it (1) 'makes its intention to abrogate unmistakably clear in the language of the statute' and (2) 'acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment.'" *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). The first prong is met, as Congress clearly stated in the statute its intent to abrogate sovereign immunity.

9

*See id.*; *see also* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court . . . for a violation of" the ADA); *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). As to the second prong, the Supreme Court applies a three-part test to determine, on a claim-by-claim basis, whether Title II validly abrogates sovereign immunity. *Block*, 952 F.3d at 617. It asks: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

Plaintiffs have sufficiently pled that SB 1's onerous new voter assistance rules violate Title II of the ADA. Second Am. Compl. ¶¶ 337–53. And unreasonably burdening Plaintiffs' right to vote is conduct that violates both the ADA and the Fourteenth Amendment. *See, e.g., Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.); *see also Valentine v. Collier*, 993 F.3d 270, 280–81 (5th Cir. 2021) (alleged conduct that violated ADA and Eighth Amendment, which applies to the states through the Fourteenth Amendment, abrogated sovereign immunity under Title II).

Moreover, though *Lane* pertained to court access, in reaching its holding, the Court invoked "a pattern of unequal treatment in the administration of a wide range of public services, [including] voting." 541 U.S. at 525; *see also Doe v. Rowe*, 156 F. Supp. 2d 35, 57 (D. Me. 2001) (in case challenging state guardianship law as discriminating against voters with disabilities, holding that "Court concludes that State Defendants may not invoke sovereign immunity to shield them from Plaintiffs' claims under Title II of the ADA."); *see also Fla. State Conf. of the NAACP v. Lee*, No. 4:21CV187-MW/MAF, 2021 WL 6072197, at *9 (N.D. Fla. Dec. 17, 2021) (citing *Lane* as "explaining that Title II of the ADA

validly abrogated state sovereign immunity under the Fourteenth Amendment, in part, because it targeted discrimination against disabled persons in voting.").

Finally, under Section 504 of the Rehabilitation Act, a state waives its Eleventh Amendment immunity as to claims under Section 504 by accepting federal funds. *See* 42 U.S.C. § 2000d-7(a); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (en banc) (Louisiana education agencies waived immunity from Section 504 claims by accepting federal funding); *Danny R. ex rel. Ilan R. v. Spring Branch Indep. Sch. Dist.*, 124 F. App'x 289, 289–90 (5th Cir. 2005) (per curiam) (unpublished) (citing *Pace* in holding that TEA is not immune from suit under Section 504). Waiver applies here because the State receives federal funding for elections. *See* Second Am. Compl. ¶ 361.

      b. *Ex parte Young* is satisfied as to the remainder of Plaintiffs' claims

The remainder of the Plaintiffs' claims—those brought to enforce the Constitution and pursuant to 42 U.S.C. § 1983—fall within the *Ex parte Young* exception to sovereign immunity.[3]

Under that exception, "[s]uits for injunctive or declaratory relief are allowed against a state official acting in violation of federal law if there is a 'sufficient "connection" to enforcing an allegedly unconstitutional law.'" *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) (quoting *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)). To establish a "sufficient connection," Plaintiffs need only show that the defendant "[has] the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 168 (citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). A "'scintilla of enforcement' by the relevant state official with respect to the challenged law will do." *Id.* at 179 (citing *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)). Moreover, "if an official *can* act, and there's a significant possibility that he or she *will* . . ., the official has engaged in enough compulsion or constraint to apply

---

[3] To the extent the Court holds that sovereign immunity is not waived or abrogated as to the other claims, the *Ex parte Young* analysis permits Plaintiffs' suit under those counts as well.

11

the *Young* exception." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (alteration in original).

As Defendant Ogg admits, she is the state's authorized representative in criminal cases. *See* Ogg Mot. at 6 (citing Tex. Gov't Code § 43.180(b). This includes prosecution of criminal violations of the Texas Election Code. *See generally State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021). Defendant Ogg therefore undeniably has enforcement authority over sections 6.04 and 6.05 of SB 1.

This enforcement authority suffices to satisfy the "scintilla of enforcement" requirement of the *Ex parte Young* exception. As this Court recognized in another case challenging provisions of SB 1, "district attorneys have authority to compel or constrain a person's ability to violate" the assistor provisions. *Longoria*, 2022 WL 447573, at *11). "Because Plaintiffs have pled that [Ogg] is responsible for representing the state in criminal matters, including prosecuting violations of [sections 6.04 and 6.05 of SB 1], plaintiffs have met their burden of demonstrating a scintilla of enforcement." *Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 583 (W.D. Tex. 2020).

Defendant Ogg argues that her role as primary enforcer of the state's criminal laws, including the assistor provisions, is insufficient to invoke the *Ex parte Young* exception because the authority is too "general." Ogg Mot. at 9. But Ogg cites to no case in which a court has precluded suit against the official who is specifically charged with enforcing the very law at issue.

Defendant Ogg also argues that the *Ex parte Young* exception does not apply because she has not threatened anyone with prosecution pursuant to sections 6.04 and 6.05. Plaintiffs filed a pre-enforcement challenge to SB 1; at the time the Second Amended Complaint was filed, no election had taken place under SB 1. It would therefore have been impossible to allege that Defendant Ogg had threatened to prosecute assistors under the assistor provisions. Moreover, Defendant Ogg has refrained from enforcing other aspects of the law based on an agreement that she entered in a different

12

litigation. *See Longoria*, 2022 WL 447573, at *4 (noting stipulation filed "in the interest of conserving prosecutorial resources" committing not to enforce subsection of SB 1 "until such time as a final, non-appealable decision has been issued in this matter"); Ogg Mot. at 14. The fact that she temporarily agreed—in connection with pending litigation—not to pursue prosecutions for a limited period does not make her immune from suit.

Plaintiffs are not required to await the commencement of charges before challenging the legality of the assistor provisions, *see, e.g.*, *Ex parte Young*, 209 U.S. at 163-65, and, indeed, doing so would likely give rise to abstention problems, *see Steffel v. Thompson*, 415 U.S. 452, 462 (1974); *Ex parte Young*, 209 U.S. at 162. *Cf. McCraw*, 719 F.3d at 345 ("When asking a federal court to engage in pre-enforcement review of a criminal statute, a plaintiff need not violate the statute[.]").[4] Here, Plaintiffs have alleged that they have been required to divert resources to educate voters who are subject to the requirements of sections 6.04 and 6.05. Moreover, The Arc of Texas has pled that its members rely on assistance that will be unavailable in light of these statutory provisions. Their access to the franchise has been constrained by the challenged sections.

Finally, Defendant Ogg's discussion of her willingness to enter into a stipulation not to enforce the assistor provisions while this case is adjudicated, Ogg Mot. at 14, only highlights her authority to and the possibility that she will enforce the statute in the future if she is not enjoined from doing so. She has "not affirmatively represented that she *never* intends to enforce" the assistor provisions. *See Longoria*, 2022 WL 447573, at *8 (discussing implications of a non-enforcement litigation agreement for plaintiff's standing). Indeed, the explicit limitations of her offer to refrain from enforcement only until the case is resolved implies the opposite conclusion.

---

[4] The Fifth Circuit has been careful to distinguish the criminal context from civil when analyzing the enforcement prong of *Ex parte Young*. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) ("[T]he City faces no threat of criminal prosecution[.]").

13

Defendant Ogg is therefore appropriately sued under the *Ex parte Young* exception to sovereign immunity.

### IV. Defendant Ogg's argument that Plaintiffs fail to state a claim for injunctive relief is misguided.

Finally, Defendant Ogg argues that Plaintiffs fail to state a claim on the merits against Defendant Ogg because of the lack of allegations of any pending investigation or prosecution by her office. This is merely a restatement of Defendant Ogg's standing and sovereign immunity arguments and is clearly incorrect, in light of the response above.

The one case Defendant Ogg cites to support her argument is an opinion dealing with standing, under Rule 12(b)(1), in which the court held that a plaintiff seeking injunctive relief to preclude the specific re-urging of child abuse charges against him did not establish an immediate threat of prosecution. Ogg Mot. at 20 (citing *Quinn v. Roach*, 326 Fed. App'x 280, 293 (5th Cir. 2009)). The plaintiff in *Quinn* argued that the way that he was arrested, and then the delay in presenting his case to the grand jury, violated his constitutional rights. 326 Fed. App'x at 282. In other words, his harm arose from deficient treatment during the criminal process.

Aside from being a jurisdictional argument improperly cast as a merits argument, the analogy to *Quinn* fails for the simple reason that the Plaintiffs' harm is not based on a claim that they received deficient treatment by law enforcement officials, like the plaintiff in *Quinn*, but the prospect of the law's enforcement, which will result in a change in assistor behavior, resulting in a diversion of resources from Plaintiffs as well as disenfranchisement of The Arc of Texas's members. In other words, their harm is not dependent on charges being brought against them, but arises merely from the prospect of enforcement.

Defendant Ogg's attempt to recast her jurisdictional arguments as a merits argument should be rejected, just as the substance of her jurisdictional arguments fail.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendant Ogg's motion to dismiss.

Dated: April 12, 2022

By: /s/ Georgina Yeomans

Kenneth E. Broughton
Texas Bar No. 03087250
kbroughton@reedsmith.com

J. Keely Dulaney*
Texas Bar No. 24116306
kdulaney@reedsmith.com

Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3800
Facsimile: (713) 469-3899

Sarah Cummings Stewart
Texas Bar No. 24094609
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
sarah.stewart@reedsmith.com

Danielle Ahlrich
Texas Bar No. 24059215
401 Congress Avenue, Suite 1800
Austin, TX 78701
Telephone: (512) 623-1777
dahlrich@reedsmith.com

Kathryn Sadasivan*
Amir Badat*
Liliana Zaragoza*
Ciara A. Sisco*
NAACP Legal Defense and Educational
Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Telephone: (212) 965-2200
Facsimile: (212) 226-7592
ksadasivan@naacpldf.org
abadat@naacpldf.org
lzaragoza@naacpldf.org
csisco@naacpldf.org

Jennifer A. Holmes*
Georgina Yeomans*
R. Gary Spencer*+
NAACP Legal Defense and Educational Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
Facsimile: (202) 682-1312
jholmes@naacpldf.org
gyeomans@naacpldf.org

Shira Wakschlag*
The Arc of the United States, Inc.
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org

*Counsel for Plaintiffs Houston Area Urban League; Delta Sigma Theta Sorority, Inc.; The Arc of Texas; and Jeffrey Lamar Clemmons*

Wendy J. Olson*
Laura E. Rosenbaum*
Marc Rasich*
Elijah Watkins*
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Sean Lyons
State Bar No. 00792280
Sean@lyonsandlyons.com
Clem Lyons
State Bar No. 12742000
Clem@lyonsandlyons.com
LYONS & LYONS, P.C.

237 W. Travis Street, Suite 100
San Antonio, Texas 78205
Telephone: (210) 225-5251
Telefax: (210) 225-6545

Courtney Hostetler*
Ron Fein*
John Bonifaz*
Ben Clements*
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

*Attorneys for Plaintiffs Mi Familia Vota, Marla López, Marlon López, and Paul Rutledge*

*\* Admitted pro hac vice*
*+ Mailing address only. Work remotely from, and admitted to practice in, Georgia.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2022, I electronically filed the foregoing Opposition to Defendant Ogg's Motion to Dismiss.

*/s/ Georgina Yeomans*
Georgina Yeomans
