# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al.,<br>                       *Plaintiffs,*<br>   v.<br>GREGORY W. ABBOTT, et al.,<br>                       *Defendants.* | 5:21-cv-844-XR |
| LULAC TEXAS, et al.,<br>                       *Plaintiffs,*<br>   v.<br>JOHN SCOTT, et al.,<br>                       *Defendants.* | 1:21-cv-0786-XR |

## LULAC PLAINTIFFS' RESPONSE TO DEFENDANT KIM OGG'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.   Sovereign immunity does not bar Plaintiffs' claims. ....................................................... 3

        A.   Sovereign immunity does not bar Plaintiffs' VRA claims against Ogg (Counts I and IV)..................................................................................................... 3

        B.   Sovereign immunity does not bar Plaintiffs' constitutional claims against Ogg (Counts II & III). ................................................................................... 4

    II.  Plaintiffs have standing. ...................................................................................................... 8

    III. Plaintiffs have stated a claim against Ogg. ..................................................................... 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*520 Mich. Ave. Assocs. v. Devine*,
 433 F.3d 961 (7th Cir. 2006) ...................................................................................10

*Duarte v. City of Lewisville*,
 759 F.3d 514 (5th Cir. 2014) ...................................................................................11

*Fusilier v. Landry*,
 963 F.3d 447 (5th Cir. 2020) .....................................................................................3

*L.A. Police Dep't v. United Reporting Publ'g Corp.*,
 528 U.S. 32 (1999) ...................................................................................................10

*Longoria v. Paxton*,
 No. SA:21-CV-1223-XR, 2022 WL 447573 (W.D. Tex. Feb. 11, 2022) ........................ *passim*

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ...................................................................................................8

*McClure v. Ashcroft*,
 335 F.3d 404 (5th Cir. 2003) ...................................................................................12

*McKinley v. Abbott*,
 643 F.3d 403 (5th Cir. 2011) .....................................................................................9

*Mi Familia Vota v. Abbott*,
 977 F.3d 461 (5th Cir. 2020) ..................................................................................1, 3

*OCA-Greater Hous. v. Texas*,
 867 F.3d 604 (5th Cir. 2017) ..................................................................................3, 4

*Quinn v. Roach*,
 326 F. App'x 280 (5th Cir. 2009) .......................................................................12, 13

*Roark & Hardee LLP v. City of Austin*,
 522 F.3d 533 (5th Cir. 2008) ...................................................................................10

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*,
 547 U.S. 47 (2006) .....................................................................................................8

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) .....................................................................................8

*State v. Stephens*,
    No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) ..............................1, 5

*Tex. All. for Retired Ams. v. Scott*,
    No. 20-40643, 2022 WL 795862 (5th Cir. Mar. 16, 2022)........................................................3

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ...................................................................................................7

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ...................................................................................................3

*Virginia v. Am. Booksellers Ass'n*,
    484 U.S. 383 (1988)..................................................................................................................8

*Whole Women's Health v. Jackson*,
    142 S. Ct. 522 (2021) ...............................................................................................................7

*Ex parte Young*,
    209 U.S. 123 (1908)...............................................................................................................3, 4

**Statutes**

Tex. Elec. Code § 273.021..................................................................................................................5

Tex. Elec. Code § 273.022..................................................................................................................5

Tex. Elec. Code § 276.016(a)(1).........................................................................................................5

TO THE HONORABLE XAVIER RODRIGUEZ:

Plaintiffs LULAC Texas ("LULAC"), Voto Latino, Texas Alliance for Retired Americans ("TARA"), and Texas AFT ("AFT" and, collectively, "Plaintiffs"), by and through their undersigned counsel, file this response to Defendant Kim Ogg's Motion to Dismiss.

## INTRODUCTION

Plaintiffs brought this lawsuit in September 2021 against various state and county officials responsible for enforcing Senate Bill 1, including Attorney General Paxton. Three months later, the Texas Criminal Court of Appeals held that the Attorney General lacks the power to independently prosecute violations of the Election Code, explaining that this enforcement power lies primarily with county and district attorneys. *See State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *1, *4 (Tex. Crim. App. Dec. 15, 2021). Plaintiffs accordingly amended their Complaint to add certain county district attorneys as defendants, including Harris County District Attorney Kim Ogg. *See* Second Am. Compl. ("SAC"), ECF No. 207.

Ogg seeks dismissal from this action principally on the theory that she has no sufficient connection to the enforcement of SB 1, and as such is entitled to sovereign immunity.[1] But this argument fails twice over. For one, Plaintiffs have brought multiple claims against Ogg under the Voting Rights Act (Counts I & IV), and it is settled law that "there is no sovereign immunity with respect to . . . Voting Rights Act claims." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). For another, this Court already rejected Ogg's argument a few months ago in a separate

---

[1] Ogg also insists that she not be "used as a 'litigation effigy,'" oddly pointing to service on her of a deposition subpoena seeking testimony unrelated to SB 1. Def. Kim Ogg's Mot. to Dismiss ("Mot.") at 18 n.5, ECF No. 344. There is good reason the subpoena seeks unrelated testimony: as the caption on the subpoena reveals, it is for an ***entirely different case***. *See* Ex. 2 to Mot. at 1, ECF No. 344-2 (indicating the subpoena relates to "*Texas State LULAC; Voto Latino, Plaintiff[s] v. Bruce Elfant, et al., Defendant[s]*" in "Civil Action No. 1:21-cv-546.").

1

action challenging SB 1 brought by the Harris County Elections Administrator. *See Longoria v. Paxton*, No. SA:21-CV-1223-XR, 2022 WL 447573, at *11 (W.D. Tex. Feb. 11, 2022). In *Longoria*, this Court held that Ogg had no sovereign immunity from suit under the exception carved out in *Ex parte Young* because the Texas Election Code as interpreted by the Texas Criminal Court of Appeals in *Stephens* "establish[es] that county and district attorneys, by virtue of their office, have 'some connection' with enforcement of the Election Code." *Id.* (quoting *Morris v. Livingston,* 739 F.3d 740, 746 (5th Cir. 2014)). Ogg provides no basis for this Court to revisit *Longoria*, which forecloses her sovereign immunity defense here.

Ogg's challenge to Plaintiffs' standing—focused on whether Plaintiffs' harm is "actual or imminent"—fares no better. Her claim that Plaintiffs are unable establish standing as to the general criminal provisions, because Plaintiffs did not allege they intend to violate them, disregards the text of Plaintiffs' Second Amended Complaint, which, for example, clearly states that SB 1 "restricts speech from broad categories of individuals—including some of Plaintiffs' members and employees." SAC ¶ 282. Ogg also fails to account for the loosened standing requirements for First Amendment claims, which *presume* imminent harm, dooming her motion at least as to Count III. In any event, Plaintiffs' allegations are more than sufficient to establish "actual or imminent" harm under controlling Fifth Circuit precedent.

Ogg's argument that Plaintiffs lack standing to challenge the criminal provisions applicable to election officials is similarly misguided. The mere fact that Plaintiffs are not subject to imminent criminal prosecution under these provisions does not preclude standing; Ogg's enforcement of SB 1's criminal provisions deter election officials from "confront[ing] Partisan [Poll] Watchers who abuse their positions," *id.* ¶ 265, or "engag[ing] in . . . voter outreach relating to the mail-in voting process," *Longoria*, 2022 WL 447573, at *7; at least one county has confirmed that it would

engage in such outreach if not for SB 1. *Id*. Thus, the criminal penalties enforced by Ogg deter county election officials from engaging in conduct that protects Plaintiffs' members' right to vote. These penalties also chill the speech of both Plaintiffs and their members and force Plaintiffs to divert their limited resources to advance their mission. These concrete injuries to Plaintiffs and their members are not just imminent, they are occurring now.

## ARGUMENT

**I.     Sovereign immunity does not bar Plaintiffs' claims.**

Ogg seeks dismissal of Plaintiffs' claims against her on sovereign immunity grounds, but it is settled law that Congress abrogated sovereign immunity for claims brought under the Voting Rights Act. *Mi Familia Vota*, 977 F.3d at 469. Plaintiffs' VRA claims (Counts I and IV) therefore cannot be dismissed against Ogg on this basis. And while Plaintiffs have also named Ogg as a Defendant to their constitutional claims (Counts II and III), she cannot escape from the exception to sovereign immunity carved out in *Ex parte Young*, 209 U.S. 123 (1908), because she has a sufficient connection to the enforcement of SB 1. *See Longoria*, 2022 WL 447573, at *11.

**A.     Sovereign immunity does not bar Plaintiffs' VRA claims against Ogg (Counts I and IV).**

Sovereign immunity cannot be invoked if it is "waived by the state, abrogated by Congress, or an exception applies." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). Such is the case here: the VRA, "which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). For this reason, "[t]here is no sovereign immunity with respect to [] Voting Rights Act claims." *Mi Familia Vota*, 977 F.3d at 469; *see also Tex. All. for Retired Ams. v. Scott*, No. 20-40643, 2022 WL 795862, at *1 n. 4 (5th Cir. Mar. 16, 2022) (VRA "validly abrogated state sovereign immunity"). The Fifth Circuit has thus repeatedly rejected claims of

sovereign immunity by Texas state officials in suits brought under the VRA. *See, e.g.*, *Mi Familia Vota*, 977 F.3d at 469; *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020); *OCA-Greater Hous.*, 867 F.3d at 614.

Despite invoking sovereign immunity, Ogg's Motion fails to acknowledge the black-letter Fifth Circuit precedent foreclosing such a defense to VRA claims. Because "[s]overeign immunity has no role to play" in such claims, *OCA-Greater Houston*, 867 F.3d at 614, Ogg's extensive discussion of whether the *Ex parte Young* exception to sovereign immunity applies here is irrelevant to Counts I and IV. *See* Mot. at 6–16. Ogg is not immune from suit under Counts I and IV and therefore cannot be dismissed from this litigation on sovereign immunity grounds.

### B. Sovereign immunity does not bar Plaintiffs' constitutional claims against Ogg (Counts II & III).

Plaintiffs also named Ogg as a Defendant in their constitutional claims, which allege that SB 1 unduly burdens the right to vote in violation of the First and Fourteenth Amendments (Count II) and impermissibly chills free speech and expression under the First Amendment (Count III). *See* SAC at 54-60. But sovereign immunity does not bar these claims under the exception carved out in *Ex parte Young*.

While state sovereign immunity under the Eleventh Amendment generally precludes suits against state officials in their official capacities, the *Ex parte Young* exception "allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *Longoria*, 2022 WL 447573, at *10 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)). In determining whether the *Ex parte Young* exception applies, the Court must determine whether the state official, "by virtue of his office," has "some connection with the enforcement of the [challenged] act." *Ex parte Young*, 209 U.S. at 157. A plaintiff can establish the requisite connection by showing that "the defendant has some authority to compel

4

compliance with the law or constrain a person's ability to violate the law," that "the defendant has a duty to enforce the statute in question and a 'demonstrated willingness' to enforce the statute," or that there is "some scintilla" of "affirmative action by the state official." *Longoria*, 2022 WL 447573, at *10 (quoting *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020)).

This Court already held that Ogg has a sufficient connection to SB 1 that warrants application of the *Ex parte Young* exception. *See id.* at *10-11. In *Longoria*, plaintiffs sued various Texas state officials alleging that SB 1's "anti-solicitation provision," Tex. Elec. Code § 276.016(a)(1), violates the First Amendment. *Id.* at *2. The plaintiffs amended their complaint to bring a claim against Ogg and two other county district attorneys after the Texas Court of Criminal Appeals ruled that the Texas Constitution prohibits the Attorney General from prosecuting violations of the Election Code without the consent of county district attorneys. *Id.* at *4 (discussing *Stephens*, 2021 WL 5917198, at *10.

This Court then held that sovereign immunity did not bar the claim against the county district attorneys, including Ogg. It explained that the Texas Election Code "explicitly contemplate[s] that county and district attorneys would play an enforcement role" in prosecuting election law crimes, including those established by SB 1. *Longoria*, 2022 WL 447573, at *11; *see* Tex. Elec. Code § 273.022 (providing that the attorney general "may direct the county or district attorney . . . to prosecute an offense that the attorney general is authorized to prosecute under Section 273.021 or to assist the attorney general in the prosecution"). That language, combined with the Texas Court of Criminal Appeals' ruling in *Stephens*, "confirm[s] that county and district attorneys have authority to compel or constrain a person's ability to violate the law," which is "sufficient to establish that county and district attorneys, by virtue of their office, have some

5

connection with enforcement of the Election Code beyond a general duty to see that that the laws of the state are implemented." *Longoria*, 2022 WL 447573, at *11 (quotations omitted).

The same is true here. Plaintiffs have sued Ogg for her role in enforcing the anti-solicitation provision at issue in *Longoria*, along with numerous other criminal provisions in SB 1 that are codified in the Election Code. *See* SAC ¶¶ 33, 249-294. As a county district attorney, Ogg has the authority to enforce these provisions under *Stephens*. *Longoria*, 2022 WL 447573, at *11 (cleaned up). Ogg therefore has a sufficient connection with the challenged provisions, placing Counts II and III squarely within the purview of the *Ex parte Young* exception to sovereign immunity.

Ogg's arguments to the contrary fail. Recognizing that *Longoria* squarely forecloses her sovereign immunity defense, Ogg insists the Court should depart from it because an appeal of the decision is currently pending in the Fifth Circuit. *See* Mot. at 15 n.4. But that alone is no reason to reverse course when the underlying order remains good law. Ogg also contends that *Longoria* is distinguishable "in light of the absence of anything more than allegations of Ogg's 'general duty to see that the laws of the state are implemented' in Harris County." *Id.* (quoting *Morris*, 739 F.3d at 749). But as this Court explained, a county district attorney has a sufficient connection with enforcement of SB 1 that goes beyond their general duty to enforce given their prosecutorial authority under the Election Code as interpreted by *Stephens*. *Longoria*, 2022 WL 447573, at *11. And Plaintiffs have plainly alleged as much in the governing complaint. *See* SAC ¶ 33 (alleging that Ogg is "charged with investigating and prosecuting criminal violations of the Texas Election Code" and "sued for the manner in which she implements" various provisions imposing criminal penalties, including SB 1 §§ 4.06, 4.09, and 7.04); *see also id.* ¶ 27 n.1 (citing *Stephens*, 2021 WL 5917198, at *10).

Ogg does not dispute that she has direct authority to enforce the criminal penalty provisions of SB 1, but instead asks the Court to break from Supreme Court precedent (and this Court's recent ruling) and find that a specific connection to enforcement is not enough. But the decisions Ogg cites do not say that; they are, by the Fifth Circuit's own admission, "not a model of clarity on what constitutes a sufficient connection to enforcement." *Tex. Democratic Party*, 961 F.3d at 401 (quotation marks omitted). And in any event, those cases preceded the U.S. Supreme Court's most recent treatment of the issue in *Whole Women's Health v. Jackson*, 142 S. Ct. 522 (2021), in which all nine members of the Court agreed that *Ex parte Young* applies without a showing of any affirmative step of enforcement. *Id*. at 535-37. *Whole Women's Health* held that Texas executive licensing officials could not invoke sovereign immunity as a defense to claims that their enforcement of a state statute restricting abortion access (SB 8) was unconstitutional. *See id.* The Court explained that the *Ex parte Young* exception applied because "[e]ach of these individuals is an executive licensing official who *may or must* take enforcement actions against the petitioners *if* they violate the terms of Texas's Health and Safety Code, including S.B. 8." *Id.* at 535 (emphasis added); *see also id.* at n.3 ("The petitioners may proceed against Ms. Young *solely* based on her authority to supervise licensing of abortion facilities and ambulatory surgical centers.") (emphasis added). This Court similarly recognized in *Longoria* that Ogg's connection to enforcement of the challenged law was sufficient to defeat her sovereign immunity defense; the *Ex parte Young* exception to sovereign immunity requires no additional steps.[2]

---

[2] Justice Thomas, the lone dissenter from the Court's sovereign immunity analysis, also recognized that enforcement authority by itself is sufficient to establish a connection for purposes of *Ex parte Young. See Whole Women's Health,* 142 S. Ct. at 540 (Thomas, J., concurring in part) ("[A]n *Ex parte Young* defendant must have 'some connection with the enforcement of the act'—i.e., 'the right and the power to enforce' the 'act alleged to be unconstitutional.'") (quoting *Ex parte Young*, 209 U.S. at 157)); *see also id.* at 536 ("Justice Thomas . . . emphasizes that the relevant tradition

Ogg's invocation of sovereign immunity here fails for the same reasons it did in *Longoria*. The SAC alleges that Ogg has a sufficient connection to the challenged provisions of SB 1 given her authority to enforce the Election Code as interpreted in *Stephens*. Ogg is not immune from Counts II and III, and therefore cannot be dismissed from the lawsuit.

## II. Plaintiffs have standing.

Plaintiffs have met all requirements to establish standing: (1) "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

Ogg misapplies these standards and the Court should accordingly reject each of her challenges to Plaintiffs' standing.

*First*, Ogg fails to account for settled precedent establishing that when challenged laws "facially restrict expressive activity by the class to which the Plaintiff belongs," courts "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (quotation omitted); *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (holding plaintiffs had standing where, "if their interpretation of the statute [was] correct, [they would] have [had] to take significant and costly

---

here, embodied in *Ex parte Young*, permits equitable relief against only those officials who possess authority to enforce a challenged state law . . . We agree with all of these principles.").

compliance measures or risk criminal prosecution"). Count III of the SAC alleges that the Voter Interaction Ban (SB 1 § 7.04) unlawfully restricts the political speech of broad categories of individuals, "including some of Plaintiffs' members and employees," SAC ¶¶ 281-86. Elsewhere in the SAC, Plaintiffs allege that the Ban "is so broadly defined that it chills everything from core political speech to everyday common courtesy," even "discussing the merits of a candidate or ballot measure" or "telling a voter where to park when they arrive to drop off their ballot." *Id*. ¶ 281. Ogg has presented no "compelling contrary evidence" that would eliminate the threat of prosecution and the resulting chill on protected speech, nor has she disavowed an intent to enforce violations of SB 1.

This is true notwithstanding Ogg's draft "stipulation," which seeks to minimize her participation in this case but is ambiguous as to her enforcement plans. The proposed terms state only that she would not enforce certain provisions *until* this lawsuit is resolved; but notably, Ogg has not agreed to be bound by this Court's ruling on the merits. Quite the opposite—she has argued that she is protected by sovereign immunity and that this Court lacks jurisdiction to enter an injunction against her. In any event, "[a] plaintiff whose speech is subject to the challenged restriction can establish standing *even where the defendant disavows any intention to enforce the policy*." *Longoria*, 2022 WL 447573, at *6 (emphasis added).

Plaintiffs' allegations are more than enough to establish a credible threat of enforcement even under the ordinary standing analysis. In *McKinley v. Abbott*, 643 F.3d 403 (5th Cir. 2011), the Fifth Circuit found that a plaintiff "established a concrete injury that is actual and imminent" under similar circumstances.[3] 643 F.3d at 407. There, the plaintiff "alleged that he has acted and

---

[3] Though *McKinley* concerned a policy regulating speech, the court applied the ordinary standard because the speech in question was commercial in nature. 643 F.3d at 407.

intends to act in a manner that *could* violate" the statute. *Id*. (emphasis added). The same is true here. For example, Plaintiffs have alleged that their ordinary speech, like "everyday common courtesy" and "telling a voter where to park when they arrive to drop off their ballot" could fall within the ambit of the challenged law. SAC ¶¶ 281, 282. Under *McKinley*, then, Plaintiffs have established "imminent" injury.

Ogg's invocation of *Roark & Hardee LLP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) is unavailing. She suggests that Plaintiffs do not have standing because, in contrast to the plaintiffs in *Roark*, Plaintiffs themselves do not "face the real potential of immediate criminal prosecution." Mot. at 17 (quoting *Roark*, 522 F.3d at 543). But Ogg's analysis is wrong on both the law and the facts. As an initial matter, *Roark* demonstrates that the threat of "immediate criminal prosecution" is one way of establishing standing; it is not the only means. *Roark*, 522 F.3d at 543. *See L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) ("This is not to say that the threat of criminal prosecution is a necessary condition for the entertainment of a facial challenge."); *520 Mich. Ave. Assocs. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006) ("Courts occasionally say that one or another plaintiff has standing because a threat of prosecution is imminent, but that is a far cry from holding that *only* an imminent criminal prosecution suffices."). Regardless, Plaintiffs *have* alleged they or their members face a real potential of "immediate criminal prosecution." *E.g.*, SAC ¶ 222 ("Because the rules governing voter registration and ballot casting can be confusing, the threat of criminal prosecution for violating such rules significantly deters eligible voters from participating in the political process."); *id*. ¶ 283 ("The Voter Interaction Ban also restricts speech from . . . some of Plaintiffs' members and employees . . . [limiting them] from communicating with prospective voters simply because of the perceived content of their message.").

Meanwhile Ogg offers no authority to support her argument that *only* election officials may establish standing to challenge SB 1's antisolicitation provisions (prohibiting election officials from soliciting voters to submit applications to vote absentee if the voters have not already requested applications, *see id.* ¶ 162), or SB 1's poll watcher provisions (prohibiting election officials from interfering with the activities of partisan poll watchers, *see id.* ¶ 186), because that is not the law. *See Duarte v. City of Lewisville*, 759 F.3d 514, 518 (5th Cir. 2014) (rejecting argument that plaintiffs lacked standing because challenged ordinance "clearly does not apply to them" where plaintiffs established "interfer[ence] with [their] lives 'in a concrete and personal way'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009))). Here, Plaintiffs suffer injury from those provisions even if they are not the direct subject of prosecution because of the provisions' established effect on election officials. *Longoria*, 2022 WL 447573 at *7 (noting Longoria's voter outreach efforts have been chilled); SAC ¶ 194 ("[I]t is all but certain that the threat of criminal and civil sanctions will make election officials much less likely to confront Partisan Watchers who are abusing their positions . . . ."), *id*. ¶ 265 (similar).

For instance, by prohibiting election officials from encouraging voters to submit absentee ballot applications, SB 1 harms Plaintiffs and their members because it "inhibits voters from learning about how they can cast ballots" and limits "the ability of county officials to ensure that eligible voters receive absentee ballot applications." *Id.* ¶ 161; *Longoria*, 2022 WL 447573, at *7. And restricting election officials' ability to remove disruptive partisan poll watchers will harm Plaintiffs by multiplying instances of voter harassment and intimidation. SAC ¶ 109 (describing witness testimony to legislature that SB 1 would "invite vigilantism by poll watchers" and that "many people will be deterred from voting"); *id.* ¶ 194 ("[I]t is all but certain that the threat of criminal and civil sanctions will make election officials much less likely to confront Partisan

11

Watchers who are abusing their positions . . . ."); *id.* ¶ 265 ("In-person voters will also be forced to contend with newly empowered Partisan Watchers, whose intimidating behavior will go largely unchecked."); *id.* ¶ 271 ("LULAC, AFT, and the Alliance have members who now face an increased risk of intimidation and harassment at the polls as [a] result of the increased power SB 1 . . . provide[s] to partisan poll watchers—something that could keep the members from the polls entirely.").

Each provision is enforced by criminal penalties against election officials; but Plaintiffs and their constituents will suffer the consequences either through increased intimidation at polling places, or by Plaintiffs' diversion of resources to encourage (and protect) their members' and constituents' right to vote. It is enough for Article III standing that an injunction against those criminal penalties will likely redress Plaintiffs' injuries. *See McClure v. Ashcroft*, 335 F.3d 404, 410 (5th Cir. 2003) (finding redressability where relief would allay fear of prosecution by third parties that led to implementation of policies that caused plaintiffs' harm); *Longoria*, 2022 WL 447573, at *7 (discussing Texas election official's plans to make mail-in voting more accessible).

### III. Plaintiffs have stated a claim against Ogg.

Finally, Ogg asserts that Plaintiffs do not "state a plausible claim" because they have "failed to allege any enforcement or threatened enforcement by Ogg of any of the provisions over which they sue." Mot. at 19. This argument is essentially a reprise of Ogg's objections to standing, which are unavailing for the reasons set forth above. Ogg's sole authority, *Quinn v. Roach*, 326 F. App'x 280 (5th Cir. 2009), makes her reasoning no more persuasive. *Quinn* affirmed a district court's holding that the plaintiff "lack[ed] standing to seek injunctive relief because he has failed to allege a likelihood of a future violation of his rights." *Id.* at 293. But *Quinn*'s facts stand in stark contrast to those here. The plaintiff in *Quinn* brought a civil suit against government officials

following his arrest and lengthy detention and sought injunctive relief. The court held he lacked standing because his basis for prognosticating future harm was "vague" and "speculative." *Id*. *Quinn* involved no First Amendment claims.

By contrast, this case involves non-profit organizations (including civil rights groups) seeking relief from enforcement of a statute that will chill speech, disenfranchise their members or constituents, and force the organizations to divert resources. Far from being speculative, Plaintiffs' allegations demonstrate that they will suffer injury from the challenged provisions, some of which are already causing harm. *Longoria*, 2022 WL 447573, at *7. Moreover, because this case implicates the First Amendment, Plaintiffs can establish standing even where the defendant disclaims an intent to enforce the law. After all, "if there is . . . no intention to pursue discipline [up to and including criminal referral] under these policies for speech that is protected by the First Amendment, then why maintain the policies at all?" *Longoria*, 2022 WL 447573, at *7 (quoting *Fenves*, 979 F.3d at 337) (alteration in original).

In sum, Ogg's motion to dismiss for "failure to state a claim" is simply a restatement of her flawed argument relating to Plaintiffs' standing. It fails on the same grounds that her standing challenge does, and her citation to a single inapposite case provides no additional force.

## CONCLUSION

For these reasons, the Court should deny Kim Ogg's motion to dismiss.

Dated: April 12, 2022						Respectfully submitted,

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
Haley Essig*
Chris Dodge*
Graham W. White*
Noah Baron*
Michael Jones*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
hessig@elias.law
cdodge@elias.law
gwhite@elias.law
nbaron@elias.law
mjones@elias.law
mmcqueen@elias.law

John R. Hardin
Texas State Bar No. 24012784
**PERKINS COIE LLP**
500 North Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
johnhardin@perkinscoie.com

*Counsel for Plaintiffs*

*Admitted *Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule CV-7(D)(3), counsel for Plaintiffs certify that this opposition brief does not exceed 20 pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

<u>*/s/ Uzoma N. Nkwonta*</u>
Uzoma N. Nkwonta