# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GREGORY W. ABBOTT, et al., <br><br> Defendants. | NO. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN SCOTT, et al., <br><br> Defendants. | NO. 1:21-cv-780-XR |
| HOUSTON JUSTICE, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> GREGORY WAYNE ABBOTT, et al. <br><br> Defendants. | NO. 5:21-cv-848-XR |
| LULAC TEXAS, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN SCOTT, et al. <br><br> Defendants. | NO. 1:21-cv-786-XR |

| | |
|---|---|
| MI FAMILIA VOTA, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>GREG ABBOTT, et al.<br><br>Defendants. | NO. 5:21-cv-0920-XR |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF TEXAS, et al.<br><br>Defendants. | NO. 5:21-cv-1085-XR |

**PLAINTIFF MI FAMILIA VOTA'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION OF FORMER TEXAS SECRETARY OF STATE**

Plaintiff Mi Familia Vota ("MFV") respectfully submits this brief in opposition to the Defendants', Gregory W. Abbott et al. ("State Defendants"), Motion for a Protective Order and Motion to Quash Deposition of Former Texas Secretary of State ("Motion"). This brief is supported by the filings in this case.

## I. INTRODUCTION

MFV seeks to depose *former* Secretary of State Ruth R. Hughs to inquire into her unique and firsthand knowledge regarding statements she personally made about the 2020 election. Ms. Hughs called the election "free and fair" and a "resounding success." Soon thereafter, she resigned in May 2021, after the state Senate Nominations Committee failed to take up Ms. Hughs' nomination. *See* Tex. Const., art. 4, § 12(e). During that legislative session, the state legislature was crafting, debating, and attempting to pass two bills that eventually were amended into Senate

115128798.5 0099831-00001

Bill ("SB") 1, which passed in a subsequent special session. S.B. 1, 87th Leg., 2d Spec. Sess. (Tex. 2021). Ms. Hughs' statements and unique knowledge of the successful November 2020 election— and her forced resignation during consideration of SB 1's predecessors—are highly relevant to MFV's claims that SB 1 is a pretextual attempt to suppress the vote of marginalized communities.

The deposition notice is proper. MFV has established exceptional circumstances that justify deposing Ms. Hughs. She has unique, firsthand knowledge that no one else can provide regarding her own statements and circumstances. The deposition will not be burdensome and furthermore, the highly exceptional nature of this case greatly outweighs the nonexistent burden placed on Ms. Hughs as a *former* high-ranking official. For these reasons, MFV has met its burden under the *Morgan* doctrine.

## II. BACKGROUND

MFV alleges that SB 1 violates several constitutional and statutory provisions and was enacted with the purpose of denying or abridging the right of Black and Latino Texans to vote on account of race or color.[1] Particularly relevant here, MFV alleges that the near nonexistence of any evidence of widespread voter fraud in 2020 demonstrates the pretextual nature of SB 1.[2]

While the State Defendants claim that SB 1 is necessary to protect against voter fraud, such claims are undermined by statements from Ms. Hughs herself, who Governor Abbott once called "a trustworthy steward of our elections."[3] Having overseen the 2020 election, Ms. Hughs issued a press release on November 30, 2020, commending Texas voters on the historic turnout and praising what she called a "free and fair election."[4] She declared that the election was "a

---

[1] Mi Familia Vota Second Amended Complaint [Dkt. 199] ("Compl.") at ¶¶ 143, 252-365.
[2] *Id.* at ¶ 251.
[3] *Id.* at ¶ 247; Press Release, Tex. Sec'y of State, Texas Secretary of State Ruth Ruggero Hughs Announces Departure (May 21, 2021), https://www.sos.texas.gov/about/newsreleases/2021/052121.shtml.
[4] Compl. at ¶ 247.

resounding success," noted that it was the highest voter turnout in 28 years, and cheered that "Texans exercised their right to vote."[5] Ms. Hughs, as then-Secretary of State and chief election officer of the state, had unique knowledge of the election.

Yet in the immediate aftermath of the 2020 election and in the months thereafter, the Republican majorities in the House and Senate pushed a different narrative. During the 2021 legislative session, the Republican majorities in the House and Senate introduced several bills to suppress voting rights under the guise of tamping out purported voter fraud, despite having no evidence that the 2020 election—or indeed, any recent election—was influenced by widespread fraud. Predecessor bills to SB 1—SB 7 and House Bill 6—were presented to the elections committees in the Texas Senate and the Texas House of Representatives.[6] Ms. Hughs was forced to resign at the end of that legislative session;[7] both houses went on to pass SB 1 in a second special session in August 2021, and the Governor signed it into law on September 7, 2021.[8] Ms. Hughs now works as a partner at a large law firm in Austin.[9]

While SB 1 passed just a few months after Ms. Hughs resigned, the 2020 election cycle and the legislature's attempts to pass restrictive voting laws during the 2021 legislative session both largely occurred while Ms. Hughs was still in office. Ms. Hughs has a unique and specific knowledge of the 2020 elections and its aftermath. While others may be able to offer some insight as to the goings-on inside the Secretary of State's Office during that time, only Ms. Hughs can

---

[5] *Id.*
[6] *Id.* at ¶ 146.
[7] Alexa Ura, *Secretary of State Ruth Hughs, Texas' Top Elections Official, to Resign After Senate Takes No Action on Her Confirmation*, Tex. Tribune (May 21, 2021), https://www.texastribune.org/2021/05/21/secretary-of-state-resign-texas/.
[8] Compl. at ¶ 25.
[9] Press Release, Kelly Hart & Hallman, Former Texas Secretary of State Ruth Hughs Joins Kelly Hart (June 16, 2021), https://www.kellyhart.com/news/3480-former-texas-secretary-of-state-ruth-hughs-joins-kelly-hart.

speak to her own observations and thinking behind calling the election "free and fair" and a "resounding success."

On March 21, 2022, MFV emailed Ms. Hughs—a nonparty private citizen—asking for her availability to be deposed in relation to this lawsuit.[10] The Texas Attorney General's Office responded to oppose this request, alleging that Ms. Hughs is a "high-ranking public official" who cannot be called to testify.[11] The parties were unable to reach a resolution of the matter.[12] On April 1, 2022, MFV served Ms. Hughs with a subpoena to testify at her deposition on May 3, 2022 (a date and time agreed upon).[13] The State Defendants then moved to quash.[14]

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure generally permit discovery through deposition, and parties are subject to deposition on notice. Fed. R. Civ. P. 30. Deposition of a "high agency official[]" may proceed only where "exceptional circumstances" exist. *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (per curiam) (quoting *In re Off. of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991)). Emerging from *United States v. Morgan*, 313 U.S. 409 (1941), the *Morgan* doctrine

---

[10] Exhibit A.
[11] Exhibit B.
[12] *Id.*
[13] MFV subpoenaed Ms. Hughs on behalf of all private plaintiffs.
[14] Interestingly, the Motion is almost identical to one filed by the State Defendants against the United States' subpoena to depose current Secretary of State John Scott, wherein the state argues that his deposition is off limits too under the "high-ranking official" doctrine. State Defendants' Motion for a Protective Order and Motion to Quash Deposition of Texas Secretary of State [Dkt. 334]. In other words, the state has taken the position in two related lawsuits that MFV cannot depose Ms. Hughs because she is the *former* Secretary of State, and that the United States cannot depose Mr. Scott because he is the *current* Secretary of State, irrespective of the unique knowledge that either one of these individuals may have. In place of these fact witnesses who have unique firsthand knowledge of their own statements and actions, the State of Texas has offered up Keith Ingram—an attorney and long-time political appointee who routinely testifies on behalf of the state—as the deposition designee for the Secretary of State's office. LinkedIn, https://www.linkedin.com/in/keithingram/ (last visited Apr. 13, 2022). While Mr. Ingram likely does possess important knowledge relevant to this case, he does not and cannot speak to the unique knowledge that Ms. Hughs has regarding her own words and experiences.

discourages "the practice of calling high officials as witnesses." *Id.* (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir.) (per curiam), *cert. denied*, 510 U.S. 989 (1993)).[15] However, application of the doctrine "tend[s] to be fact-intensive, with the facts of each case varying substantially." *Hernandez v. Tex. Dep't of Aging & Disability Servs.*, No. A-11-cv-856, 2011 WL 6300852, at *2 (W.D. Tex. Dec. 16, 2011).

The Fifth Circuit has applied a two-step test to determine whether a high-ranking official may be deposed. "First, the proponent must demonstrate that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources." *In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018), *as revised* (Nov. 30, 2018). Then, proponents must show "exceptional circumstances" merit the deposition, considering "the high-ranking status of the deponents, the potential burden that the depositions would impose upon them, or the substantive reasons for taking the depositions." *In re FDIC*, 58 F.3d at 1060; *In re Off. of Inspector Gen.*, 933 at 278. "If those exceptional circumstances exist . . . the great weight of authority says the official should sit for an oral deposition limited in time and subject matter." *Jackson Mun. Airport Auth. v. Reeves*, No. 3:16-CV-246-CWR-FKB, 2020 WL 5648329, at *7 (S.D. Miss. Sept. 22, 2020).

While the privilege may also be applied to former high-ranking government officials, at least one rationale behind the rule is missing. *Steward by Next Friend Minor v. Smith*, No. CV SA-10-CA-1025-OG, 2018 WL 11361748, at *1 (W.D. Tex. July 5, 2018); *Ctr. for Juvenile Mgmt., Inc. v. Williams*, No. 5:15-CV-640-RP, 2016 WL 8904968, at *6 (W.D. Tex. Sept. 22, 2016); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010) ("[I]n the case of former high-ranking government officials, one important rationale for the rule is absent."). Namely, there is no

---

[15] The *Morgan* doctrine is distinct from the Apex doctrine, which refers to the privilege afforded to high-ranking *corporate* officials to avoid depositions.

risk that the deposition of a former high-ranking government official will have any meaningful impact on the day-to-day functioning of the government. *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 326 (D.N.J. 2009) ("No deposition will ever interfere with the duties of a former high-ranking government official because the official is no longer in office.").

## IV. DISCUSSION

**A.     Exceptional Circumstances Exist, Which Justify Deposing Ms. Hughs.**

Exceptional circumstances justify deposing Ms. Hughs in this case. Ms. Hughs has firsthand and unique knowledge regarding the statements she made about the 2020 election. The evidence that only she possesses is highly relevant to an exceptionally important case involving core constitutional rights.

**1.     Ms. Hughs possesses firsthand knowledge that is unobtainable from other sources.**

Depositions of former high-ranking government officials are allowed if the former official has personal knowledge of the facts in issue that cannot be obtained from other sources. *See, e.g.*, *Gibson v. Carmody*, No. 89 Civ. 5358, 1991 WL 161087 (S.D.N.Y. Aug. 14, 1991) (allowing the deposition of a former New York City Police Commissioner because of his personal knowledge of the issues at stake); *Energy Cap. Corp. v. United States*, 60 Fed. Cl. 315, 318 (2004) (permitting videotaped deposition of former Secretary of Housing and Urban Development upon showing of firsthand personal knowledge); *Hernandez*, 2011 WL 6300852, at *2 ("'Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated[] [but] . . . is permitted only where it is shown that other persons cannot provide the necessary information.'" (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007))).

Courts permit depositions to inquire into statements made by a high-ranking official. For example, in *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 692 (N.D. Ga. 2019), voter

rights organizations brought action for declaratory and injunctive relief against the Georgia Secretary of State, State Election Board, and members of the Board in their official capacities, alleging constitutional and Voting Rights Act violations. The organizations moved to compel the depositions of the secretary of state and governor. *Id.* Relevant here, the court permitted plaintiffs to depose the former secretary of state, who by then had become the governor, regarding statements he made about minority voters. *Id.* at 698. The court reasoned, "despite the explanations given by his counsel or local journalists, only then-Secretary Kemp can explain what he actually meant when he made the statement." *Id.* at 696.

Here, Ms. Hughs has relevant, firsthand knowledge that is unobtainable from other sources. Only Ms. Hughs can speak to her personal knowledge and understanding regarding her statements that the election was "free and fair" and a "resounding success."[16] MFV is entitled to discover the basis in fact, known to Ms. Hughs, for making those statements.

In this case, there are no concerns like those in *Fair Fight Action, Inc.* that deposing Ms. Hughs will impact the workings of the State of Texas, as she is now a partner at a large law firm. As noted by the court, "only then-Secretary [Hughs] can explain what [s]he actually meant when [s]he made the statement[s]." *Id.* at 696. Only Ms. Hughs can speak to the reasoning behind her own resignation. *See id.*

### 2. Ms. Hughs' unique firsthand knowledge is relevant.

Deposing Ms. Hughs is also reasonably calculated to lead to the discovery of admissible evidence that is essential to proving MFV's claims. MFV alleges that the stated purpose of the challenged provisions of SB 1 is merely pretext for passing unconstitutionally and unlawfully restrictive voting laws. Thus, Ms. Hughs' basis and reasoning for stating that the election was "free

---

[16] Compl. at ¶ 247.

and fair" and a "resounding success" is critical in establishing the pretextual nature of SB 1's purported efforts to limit largely nonexistent voter fraud.

Contrary to State Defendants' arguments, Ms. Hughs' unique firsthand knowledge is highly relevant even though she may have had a limited role in enacting SB 1 and she cannot divine what the State of Texas or its legislature was thinking.[17] State Defendants misunderstand MFV's argument. MFV is not asking Ms. Hughs to speak to the legislature's intentions or decision-making. However, she is uniquely positioned to speak to her *own statements* and her *own thoughts* regarding the 2020 election and its aftermath—which she accurately asserted were successful, despite the fact that widespread and demonstratively false allegations of voter fraud provided cover for the passage of SB 1. While Mr. Ingram has information relevant to this case as well, he cannot speak to Ms. Hughs' thoughts, statements, or experiences. A targeted deposition of Ms. Hughs therefore is reasonably calculated to lead to the discovery of admissible evidence that is essential to proving that SB 1 is pretextual.

State Defendants also argue that MFV is inappropriately trying to depose Ms. Hughs regarding her decision-making processes. State Defendants fail to identify what decision-making process they allege MFV intends to question Ms. Hughs about. Indeed, MFV has never suggested that it intends to ask Ms. Hughs why she implemented certain policies or why she took certain actions during the election. Quite the opposite.[18] Instead, MFV is merely trying to learn the basis behind Ms. Hughs' own statements. Such questioning is appropriate in voter rights litigation. *See Fair Fight Action, Inc.*, 333 F.R.D. at 692.

---

[17] Motion at 8.
[18] Exhibit B ("Nor are we interested in deposing her about her official acts . . . .").

B.  **Other Considerations Demonstrate That Exceptional Circumstances Exist to Depose Former Secretary Hughs.**

In order to properly prosecute its claims, MFV needs to depose former Secretary Hughs about information available only to her. *In re Off. of Inspector Gen.*, 933 F.2d at 277 (citing *SEC v. Dresser Indus.*, 628 F.2d 1368, 1388 (D.C. Cir. 1980) (en banc)). As such, this matter is an exceptional case in which a deposition of a high-ranking official is permissible. *Id.*

1. **This case is of exceptional importance.**

The subject matter of the litigation is in and of itself an exceptional one. "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (citation omitted). When governments discriminate against minority voters, courts do not hesitate to block such unconstitutional conduct. *See, e.g., Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 203 (W.D. Tex. 2020) (voiding Governor's mask-mandate exemption as violative of "Section 2 of the Voting Rights Act because it creates a discriminatory burden on Black and Latino voters"). "The right to vote is one of the most important and powerful privileges which our democratic form of government has to offer." *United States v. Atkins*, 323 F.2d 733, 743 (5th Cir. 1963). It therefore follows that litigation—and the discovery arising from that litigation—aimed at protecting this "most important and powerful privilege[]" is of exceptional significance. *Id.*

2. **There is no burden to Ms. Hughs or the State Defendants here because Ms. Hughs is no longer an active high-ranking member of the government.**

Given the exceptional nature of this case, the burden on Ms. Hughs is minimal. One factor courts often consider when deciding to permit a deposition is whether "the deposition will significantly interfere with the ability of the official to perform his or her duties." *Sensient Colors, Inc.*, 649 F. Supp. 2d at 325. As explained, "'[i]t is obvious that since [Ms. Hughs] is not a current government employee her deposition will not interfere with any present government duties.'" *Id.*

(citation omitted). Because Ms. Hughs is no longer a high-ranking government official, "sitting for a deposition is no more burdensome than it would be for any other private citizen." *Id.* at 327. Thus, because the burden to Ms. Hughs is low and the information she possesses is highly relevant to an exceptional case, MFV should be permitted to depose her.

Moreover, deposing Ms. Hughs is less burdensome than in other cases in which the court permitted a deposition. For example, in *Fair Fight Action, Inc.*, the Georgia court authorized the deposition of the former secretary of state who at the time was *currently* serving as the Governor of the State of Georgia. Despite concerns surrounding the impact of deposing a then-sitting governor and the impact that would have on the ability of the state to function, the Georgia court found that threats to voting rights justified the obvious inconvenience. *See* 333 F.R.D. at 693 (quoting movants: "[O]ther witnesses cannot supply this evidence for the simple reason that no one else can get into the heads of Governor Kemp and Secretary Raffensperger and thus cannot know their thoughts, their intentions, what factors they considered in arriving at various decisions, or what they meant when they made certain statements.").

### 3. A deposition of Ms. Hughs is appropriate.

State Defendants argue that, even if MFV met its burden (which it has), MFV has not made a "good faith effort" to obtain information through "less intrusive means" that were "unsatisfactory, insufficient[,] or inadequate."[19] But the cases cited by State Defendants to support this requirement involved *current* high-ranking officials. *See Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995) (reviewing a request to depose a *current* chairman of the board of directors and the chief executive officer); *In re Bryant*, 745 F. App'x at 220 (reviewing a request to depose a *current* governor). Where, here, the deposition of a *former* high-ranking

---

[19] Motion at 9 (quoting *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995)).

official is sought, "there is no need for a 'less disruptive' means of securing relevant discovery. A deposition is consequently appropriate." *Sensient Colors, Inc.*, 649 F. Supp. 2d at 326. This is because the rationale behind requiring the least disruptive means of securing relevant discovery relates back to the doctrine's purpose to ensure officials can perform their duties without constant interruption. As discussed above, that rationale is absent in the case of former high-ranking officials.

And besides, there is no "less intrusive means" to depose a declarant about their own statements than a live deposition where the demeanor and credibility of the witness can be examined. As one court noted, after rejecting the government's request for deposition by written interrogatories to a former high-ranking official and instead authorizing a live deposition:

> Credibility determinations are sensitive matters. Witness credibility is not readily discernable by one who merely reads a cold record. Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness's testimony, by closely observing the witness's demeanor, expressions, and intonations. . . . [T]he importance of presenting live testimony in court cannot be forgotten. . . . The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.
>
> Written statements, in contrast, are thought to be less useful, less likely to lead to truth. When a witness has an opportunity to write down his answers, he has the opportunity to plan artful responses. . . . [T]he usefulness of interrogatories as a discovery device is limited. . . . [I]n the unlikely event that you do get a response, it will most probably be useless. One suspects the majority of trial lawyers and trial-court judges prefer oral depositions over written interrogatories, even for extremely sensitive matters. . . . This matter is a good candidate for an oral deposition.

*Jackson Mun. Airport Auth.*, 2020 WL 5648329, at *4-5 (second and fourth ellipsis and third brackets in original; internal quotation marks and citations omitted).

MFV has more than established that exceptional circumstances are present to justify deposing Ms. Hughs. The Court should require her to sit for her oral deposition.

## V. CONCLUSION

For the reasons stated herein, MFV respectfully requests that the Court deny the State Defendants' Motion for a Protective Order and Motion to Quash Deposition of Former Texas Secretary of State, and permit MFV to depose Ms. Hughs.

DATED: April 13, 2022

Respectfully submitted,

/s/ Elijah M. Watkins
Elijah M. Watkins, Idaho Bar No. 8977 (*pro hac vice*)
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served in compliance with the Federal Rules of Civil Procedure upon the following via electronic mail:

Sean Lyons
Clem Lyons
Lyons & Lyons, P.C.
237 W. Travis St., Ste. 100
San Antonio, TX 78205
sean@lyonsandlyons.com
clem@lyonsandlyons.com

Courtney Hostetler
John Bonifaz
Ben Clements
Ron Fein
Free Speech for People
1320 Centre St., Ste. 405
Newton, MA 02459
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org
rfein@freespeechforpeople.org

Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548

Patrick K. Sweeten
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov

William T. Thompson
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov

Eric A. Hudson
Senior Special Counsel
eric.hudson@oag.texas.gov

Kathleen T. Hunker
Special Counsel
kathleen.hunker@oag.texas.gov

Leif A. Olson
Special Counsel
leif.olson@oag.texas.gov

Jeffrey M. White
Special Counsel
jeff.white@oag.texas.gov

Jack B. DiSorbo
Assistant Attorney General
jack.disorbo@oag.texas.gov

      /s/ Elijah M. Watkins
Elijah M. Watkins