# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION



| | |
|---|---|
| La Unión del Pueblo Entero, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> Gregory W. Abbott, *et al.*, <br> *Defendants*. | Case No. 5:21-cv-844-XR <br> [Lead Case] |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION
## OF FORMER TEXAS SECRETARY OF STATE

In its opposition, Mi Familia Vota (MFV) fails to carry its threshold burden of showing that former Secretary Hughs has unique or superior knowledge of relevant and discoverable facts, and that exceptional circumstances warrant deposing her. This Court should thus quash the deposition.

## ARGUMENT

### I. Mi Familia Vota Has Not Demonstrated Exceptional Circumstances

In its opposition, MFV argues that "at least one rationale behind the [apex] rule is missing" here. ECF 367 at 6. MFV argues that since fomer Secretary Hughs "is not a current government employee her deposition will not interfere with any present government duties." ECF 367 at 10–11 (quoting *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 325 (D.N.J. 2009). And therefore, according to MFV, exceptional circumstances exist. *See* ECF 367 at 10–11.

But Hughs's status as a former Texas Secretary of State does not preclude application of the high ranking public official doctrine. MFV's response and their preceding email exchanges agree that, as a former Secretary of State, the doctrine applies to Hughs. And many of the concerns that necessitate the application of the high ranking public official doctrine still exist. As one court recently

put it:

> The need to protect the integrity of the underlying decision-making process and encourage public service by protecting officials from "indiscriminate depositions" continue to persist after the official leaves government service. Therefore, the apex doctrine still applies.

*United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citations omitted). Since, in this case, there is still a "need to protect the integrity of the underlying decision-making process" and to "protect[] [an] official from 'indiscriminate depositions,'" the apex doctrine applies. MFV has not shown exceptional circumstances otherwise.

MFV compares their attempt to depose Hughs with a district court decision from the Northern District of Georgia where an extremely limited deposition was allowed of a high ranking public official. ECF 367 at 11 (citing *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 692 (N.D. Ga. 2019)). MFV argues that deposing Hughs is actually less burdensome since she is a former, not a currently serving, high-ranking public official. But "interference" with government duties is not the sole determiner for the apex doctrine's applicability. *See Newman*, 531 F. Supp. 3d at 188 (emphasizing protecting the "decision-making process" and "protecting officials" from the burden associated with repeated depositions).

And MFV's citation to *Fair Fight Action* is unavailing for multiple reasons. Although in *Fair Fight Action* the court permitted a limited deposition—on just 3 out of 16 topics noticed for deposition—the district court's reasons there do not apply to MFV's efforts to depose former Secretary Hughs. For one thing, the court allowed testimony regarding an issue that other Secretary of State employees testified that they could not provide answers about, *id.* at 695—instead only the former Secretary could, *see id.* Conversely, in this case, MFV has not elicited testimony from the Office of the Secretary of State that former Secretary Hughs alone possesses unique knowledge that is relevant to the case. What's more, the deposition of Director of Elections Keith Ingram is scheduled to be conducted during the week of April 25, 2022. Ingram served as the Director of Elections during the entirety of Hughs's tenure

2

including during the November 2020 election.

The entirety of MFV's quest to depose Secretary Hughs is based on an official press release issued by the Office of the Secretary of State dated November 30, 2020 that stated, among other things, that the election was a "resounding success" and the election was "free and fair." MFV claims that the Secretary of State's official statement about the election including her "unique knowledge of the November 2020 election" requires the extraordinary measure of conducting the deposition of a high ranking public official. But MFV's assertion of uniqueness is unsupported by the evidence, and undercut by their co-Plaintiffs. In fact, MFV's co-Plaintiffs in this litigation, the LULAC Plaintiffs, have alleged the following about Ingram's prior statements in their complaint:

> Keith Ingram, the director of the elections division in the Secretary's office, told the Texas House Elections Committee, "In spite of all the circumstances, Texas had an election that was smooth and secure. Texans can be justifiably proud of the hard work and creativity shown by local county elections officials."

ECF 136 ¶ 74. Despite the similarities in these statements about the November 2020 election and the fact that Director of Elections Ingram is scheduled to be deposed in just ten days in this very litigation, the MFV Plaintiffs have simply declared that Ms. Hughs's knowledge of the election is "unique" and that it necessitates the extraordinary step of a high-ranking public official deposition.

In addition to the above, the district court in *Fair Fight Action* also allowed testimony from the former Secretary to clarify ***what*** he meant in a prior statement—but notably, not ***why*** he had made that prior statement. *See id.* at 695–96 ("[O]nly then-Secretary Kemp can explain what he actually meant when he made the statement."). Yet here, MFV wants to know ***why*** former Secretary Hughs issued press releases—her "thinking behind" them. ECF 367 at 4–5.

Lastly, the court in *Fair Fight Action* allowed the former Secretary to be deposed about why "he decided to call (or forgo) meetings when he did, and why he chose to schedule certain items of discussion when he did." 333 F.R.D. at 689. But the Supreme Court has repeatedly admonished that a high-ranking official's decision-making process should not be probed absent "a strong showing of bad faith or improper

3

behavior." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019); *see also In re Dep't of Commerce*, 139 S. Ct. 16, 16–17 (2018). And it appears MFV agrees. *See* ECF 367 at 9 ("MFV has never suggested that it intends to ask Ms. Hughs why she implemented certain policies or why she took certain actions . . . ."); ECF 367 at 11–12 (citing *Sensient Colors, Inc.*, 649 F. Supp. 2d at 326, which recognizes the need to protect the decision-making process from discovery). The court in *Fair Fight Action* appears to have diverged from Supreme Court precedent. Such testimony may not be elicited from high-ranking officials without showing bad faith or improper behavior. MFV has not alleged—let alone proven—one or the other here.

Finally, MFV argues that "[t]his case is of exceptional importance." ECF 367 at 10. But the question is whether the circumstances are exceptional—not whether the matter is. If all that mattered was whether the case was an important one, every constitutional litigant would assert that his case was exceptionally important such that any high-ranking official may be deposed anytime. The exception would swallow the rule. For these reasons, MFV has failed to demonstrate that there are exceptional circumstances meriting the deposition of the former Secretary of State.

**II.    Mi Familia Vota Has Not Shown That It Made a Good Faith Effort to Obtain the Information It Seeks Through Less Intrusive Means**

MFV has not shown that, in good faith, it sought the information it requests through less intrusive means. According to MFV, it need not make "a 'good faith effort' to obtain information through 'less intrusive means'" since for depositions of "a *former* high-ranking official," "there is no need for a 'less disruptive' means of securing relevant discovery." ECF 367 at 11–12 (quoting *Sensient Colors, Inc.*, 649 F. Supp. 2d at 326).

But MFV's position mischaracterizes the court's full holding in *Sensient Colors*. Rather, the court went on to say:

> This Court recognizes three distinct rationales that support *Morgan*: (1) protecting the mental decision-making process; (2) ensuring officials can perform their duties without constant interruption; and (3) encouraging individuals to serve in public office. . . . In

4

the case of a *former* high-ranking government official, however, only two rationales are present. While the Court does not countenance the indiscriminate use of depositions after an official leaves office, it does recognize that concerns regarding fulfillment of duties without interruption are no longer present once the individual leaves office. As a result, one less impediment exists for a party who seeks to depose a former high-ranking government official.

*Sensient Colors, Inc.*, 649 F. Supp. 2d at 326 n.14. In other words, the holding in *Sensient Colors* does not mean that any former high-ranking official may be deposed at the drop of a hat.

But MFV argues that even if it had to try less intrusive means, no less intrusive means exist. ECF 367 at 12 ("[T]here is no 'less intrusive means' to depose a declarant about their own statements than a live deposition where the demeanor and credibility of the witness can be examined." (quoting *Jackson Mun. Airport Auth. V. Reeves*, 2020 WL 5648329, at *4–5 (S.D. Miss. 2020)))). Yet the case MFV cites specifically noted that the magistrate judge had found that testimony was essential because "[o]ther attempts to secure the information ha[d] been futile," *id.* at 5—namely requests for production of documents, *see id.* ("[T]he involved legislators refused to submit even a privilege log . . . ."), and "depositions of the former Governor's staff," *id.* (described as "fruitless"). By contrast, the United States' 30(b)(6) deposition of the Office of the Texas Secretary of State, the deposition of Secretary of State employee Christina Adkins, and the deposition of Director of Elections Keith Ingram have all been scheduled but have not yet even occurred.

For these reasons, and the reasons explained in the motion to quash, MFV has not shown that it has made a good faith effort to obtain the information it seeks through less intrusive means.

**III.     Mi Familia Vota's Opposition Confirms That It Seeks Non-Discoverable Information**

Lastly, MFV itself confirms that it seeks non-discoverable information. Of course, MFV tries to couch its aims as unrelated to the former Secretary's decision-making process. *See* ECF 367 at 8–9 ("MFV has never suggested that it intends to ask Ms. Hughs . . . why she took certain actions during the election [she oversaw]."). But the rest of MFV's opposition confirms its true goal—e.g., "only Ms. Hughs can speak to her own observations and thinking behind calling the [2020] election 'free and

5

fair' and a 'resounding success.'" ECF 367 at 4–5. And those comments, as MFV acknowledges, come from an official Secretary of State press release dated November 30, 2020. ECF 367 at 3. That official press release was an "action" she took "during the election." *See* ECF 367 at 9. In other words, it was an official decision to issue a press release. So when it comes down to it, MFV wants to know Ms. Hughs's "observations and thinking behind" an action she took as Secretary of State. That is an inquiry into her decision-making process. And it is not discoverable.

Finally, even if such information did not relate to the decision-making process, it still would not be relevant. MFV alleges that the Legislature's purported basis for enacting SB1—combatting "widespread voter fraud in 2020," ECF 367 at 3—is mere pretext. But SB1 includes no preamble declaring an intent to "combat" particular fraud having occurred during the 2020 presidential election. Rather, its purpose is to protect the integrity of elections in Texas generally—a duty enshrined in the Texas Constitution itself. TEX. CONST. art. VI, § 4. In other words, MFV's argument about pretext is an attack on a straw man. Therefore, it is not relevant. So it is not discoverable either.

## CONCLUSION

Former Texas Secretary of State Hughs respectfully asks that the Court quash her deposition.

| | |
|---|---|
| Date: April 18, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| | Tex. State Bar No. 00798537 |
| BRENT WEBSTER | |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 18, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN