IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> TEXAS, et al., <br><br> *Defendants*. | Civil Action No. 5:21-cv-844(XR) <br> (Consolidated Case) |
| OCA-GREATER HOUSTON, LEAGUE OF WOMEN VOTERS OF TEXAS, REVUP–TEXAS, and WORKERS DEFENSE ACTION FUND, <br><br> *Plaintiffs*, <br><br> v. <br><br> TEXAS SECRETARY OF STATE JOHN SCOTT, *in his official capacity*, TEXAS ATTORNEY GENERAL KEN PAXTON, *in his official capacity*, HARRIS COUNTY ELECTIONS ADMINISTRATOR ISABEL LONGORIA, *in her official capacity*, TRAVIS COUNTY CLERK REBECCA GUERRERO, *in her official capacity*, HARRIS COUNTY DISTRICT ATTORNEY KIM OGG, *in her official capacity*, TRAVIS COUNTY DISTRICT ATTORNEY JOSÉ GARZA, *in his official capacity*, <br><br> *Defendants*. | 1:21-cv-0780-XR |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY KIM OGG, IN HER OFFICIAL CAPACITY'S, MOTION TO DISMISS**

1

## I. Introduction

To hear the Attorney General and Harris County District Attorney tell it, there is no party responsible for enforcing the criminal provisions added to the Texas Election Code in 2021 by Senate Bill 1 (SB 1). The Attorney General has sought to have claims against his office dismissed on the theory that, especially after the Court of Criminal Appeals' decision in *State v. Stephens*, --- S.W. 3d ----, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021), he is not principally responsible for such enforcement—all the while telling the Court of Criminal Appeals that it should reconsider its decision because he *is* responsible for such enforcement. *See* Dkt. 279 at 7 & n.5. And now, Harris County District Attorney Kim Ogg has filed a motion to dismiss arguing that she too is not responsible for such enforcement, is not subject to the *Ex parte Young* exception, and is therefore immune from suit. Dkt. 344.

However, as a matter of law, *both* parties are properly named in Plaintiffs' Second Amended Complaint—not only because Plaintiffs bring claims under the Voting Rights Act (VRA), Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), all of which abrogate sovereign immunity—but also because both the Attorney General and Defendant Ogg fall under the *Ex parte Young* exception.[1] Specifically, this Court has already determined that the *Ex parte Young* exception to sovereign immunity is properly applied to Defendant Ogg with respect to new criminal provisions enacted in SB 1. *Longoria v. Paxton*, --- F. Supp. 3d ----, 2022 WL 447573, at *8 (W.D. Tex. Feb. 11, 2022). Defendant Ogg's arguments to dismiss Plaintiffs' claims provide no compelling reason to revisit that decision here.

---

[1] As Plaintiffs previously explained, Dkt. 279 at 6–12, the Attorney General plays a significant enforcement role with respect to these criminal provisions *regardless* of how the Court of Criminal Appeals decides the Attorney General's motion for reconsideration in *Stephens*. *Id.* at 7 & n.5.

Defendant Ogg's other arguments for dismissing Plaintiffs' claims are equally unavailing. She asserts that Plaintiffs do not have Article III standing and have failed to state a claim because Defendant Ogg has not prosecuted or affirmatively threatened them with prosecution. But it is a "[a] well-settled rule . . . that a would-be plaintiff need not violate a criminal provision and risk prosecution to challenge it." *In re Gee*, 941 F.3d 153, 161 n.3 (5th Cir. 2019) (citation omitted).

**II.     Background**

Plaintiffs' Second Amended Complaint includes claims against Defendant Ogg, in her official capacity, relating to the criminal penalties created by SB 1 Sections 6.04 (the voting assistance oath, under which an assistant must swear to limit the type of assistance provided under threat of perjury), 6.06 (the prohibition on "compensating" a voting assistant, violation of which is a state jail felony), and 7.04 (the prohibition on what SB 1 calls "vote harvesting," violation of which is a third degree felony). Dkt. 200. Plaintiffs allege that Sections 6.04 and 6.06 violate Section 208 of the VRA and the ADA and RA, and that Section 7.04 violates the First Amendment and the Due Process Clause.

On March 29, 2022, Defendant Ogg filed a motion to dismiss all of Plaintiffs' claims. Dkt. 344. She raises two arguments: (1) that Defendant Ogg lacks a sufficient connection to enforcement of SB 1 Sections 6.04, 6.06, and 7.04 to satisfy the requirements of *Ex parte Young*; and (2) that Plaintiffs do not have Article III standing because they have not suffered an injury-in-fact. She additionally contends that Plaintiffs have failed to plead their claims under Rule 12(b)(6), but that argument is simply a restatement of her standing challenge. For the reasons below, all of these arguments fail.

### III. Defendant Ogg Possesses the Requisite Connection to the Challenged Provisions under *Ex parte Young*

Defendant Ogg argues that sovereign immunity precludes all of Plaintiffs' claims.[2] She states that her "general duty" to see the laws of the state enforced is too attenuated to satisfy the "some connection" requirement of *Ex parte Young*. Dkt. 344 at 7. Her reasoning boils down to her contention that in the absence of allegations that she has taken "affirmative action" to enforce SB 1 Sections 6.04, 6.06, or 7.04, whether by commencing or threatening to commence any criminal proceedings against Plaintiffs or others, she cannot be a proper defendant. Dkt. 344 at 6–16. This Court already rejected that proposition, and it should again reject it here.

#### A. This Court Has Concluded that Defendant Ogg Possesses the Requisite Connection to Enforcement of the Texas Election Code

This Court recently held that "the language of the [Texas] Election Code and [*State v. Stephens*, --- S.W. 3d ----, 2021 WL 5917198, at *10 (Tex. Crim. App. Dec. 15, 2021)][3] confirm that county and district attorneys have authority to compel or constrain a person's ability to violate [criminal provisions of the Election Code]." *Longoria*, 2022 WL 447573, at *11; *see also* Dkt. 344

---

[2] Defendant Ogg did not address any of Plaintiffs' claims with particularity and her briefing is focused solely on the application of *Ex parte Young*. She does not argue that the VRA, ADA, or RA do not abrogate sovereign immunity, nor could she. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (the VRA abrogated state sovereign immunity); *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) ("Congress expressly declared that states 'shall not be immune' from suit for a violation of the ADA."); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (en banc) (State agency waives sovereign immunity from RA claims when it accepts federal funding); *see also* Dkt. 360 at 9–11 (explaining arguments in greater detail). Whether sovereign immunity is abrogated or waived as to Plaintiffs' VRA, ADA, or RA claims, Plaintiffs may nonetheless proceed under *Ex parte Young* as outlined in their response here. *See, e.g.*, *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 417 (5th Cir. 2004) (*Ex parte Young* can apply whenever there is an ongoing violation of federal law and other requirements are met, including in the context of ADA and RA claims).

[3] In *Stephens* the Texas Court of Criminal Appeals held that the Election Code's delegation of authority allowing the Attorney General to independently prosecute crimes under the Election Code violated the separation-of-powers clause of the Texas Constitution. *Longoria*, 2022 WL 447573 at *11.

at 15 n.4. As this Court explained, that was "sufficient to establish that county and district attorneys, by virtue of their office, have some connection with enforcement of the Election Code beyond a general duty to see that the laws of the state are implemented." *Id.* (cleaned up); *see Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp. 3d 568, 583 (W.D. Tex. 2020) ("Because [p]laintiffs have pled that [the district attorney] is responsible for representing the state in criminal matters, including prosecuting violations of the [challenged] provisions, plaintiffs have met their burden of demonstrating a scintilla of enforcement to fall within the *Ex parte Young* exception.").

This Court's reasoning in *Longoria* applies equally here and should end the inquiry. *Ex parte Young* does not require that the state official have "threatened civil and criminal prosecution." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). Rather, "enforcement" for purposes of *Ex parte Young* "typically involves compulsion or constraint," *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010), and there need only be a "scintilla of enforcement by the relevant state official," as is the case here. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

The Texas Court of Criminal Appeals has stated that it is the "specific duty of county and district attorneys" to prosecute crimes set out in the Texas Election Code. *Stephens*, 2021 WL 5917198 at *6 (assessing the grant of power given county and district attorneys in the Texas Constitution).[4] Moreover, it is Defendant Ogg's duty to "represent the State in all criminal cases in the district courts of [her] district and in appeals therefrom." Tex. Code Crim. Pro. art. 2.01; *see* Tex. Gov't Code § 43.180 ("The district attorney has all the powers, duties, and privileges in Harris

---

[4] The Texas Criminal Court of Appeals' statement underscores that it is unclear what State official could possibly be *more* connected to enforcement of SB 1 provisions than Defendant Ogg. However, as Plaintiffs argued in their response to the State Defendants' motion to dismiss, the Texas Attorney General is *also* sufficiently connected to enforcement of the challenged SB 1 provisions to satisfy *Ex parte Young*. Dkt. 279 at 6–12.

5

County relating to criminal matters for and in behalf of the state that are conferred on district attorneys in the various counties and districts."). This Court's prior decision in *Longoria* was correct and should not be disturbed here.[5]

## B. Defendant Ogg's Cited Cases Are Inapposite

Defendant Ogg's citations to Fifth Circuit opinions that suggest Plaintiffs must show she has taken "affirmative action" or "some step to enforce" the challenged provisions are misplaced because each involved civil, rather than criminal, enforcement. *See* Dkt. 344 at 7.[6] Critically, in *City of Austin*, the Fifth Circuit explicitly noted that the prospect of criminal enforcement presents meaningfully different concerns than the prospect of civil enforcement:

---

[5] The Fifth Circuit's decision in *Air Evac EMS Inc.* informs this outcome. 851 F.3d at 519–20. There the plaintiff argued that it should not be forced to expose itself to liability prior to bringing suit in order to challenge provisions limiting its ability to recover emergency air-ambulance costs through the Texas Workers' Compensation Act. *Id.* at 512–13. The Fifth Circuit held that the Texas Commissioner of Insurance and the Texas Commissioner of Workers' Compensation wielded "pervasive authority to oversee and enforce Texas's workers'-compensation system" which ensured that the regulatory scheme was "enforced from start to finish." *Id.* at 519. Here, Defendant Ogg's authority and duty to enforce the laws of the State within her limited geographical jurisdiction is more analogous to the "pervasive authority" the Fifth Circuit found sufficient to invoke *Young* in *Air Evac EMS, Inc.* than it is to the circumstances in the cases cited by Defendant Ogg in which the Fifth Circuit had to assess certain state executive branch officials' actions.

[6] *See* Dkt. 344 at 7–15 (citing *City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) (likelihood of Attorney General attempting to enforce supremacy of State law over municipal ordinance); *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014) (challenge to statute requiring prisoners to pay health care services fee when receiving medical treatment); *Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) (challenges to Texas's rules regarding who may use mail-in ballots); *Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020), cert. denied, 141 S. Ct. 1124 (2021) (challenge to age-limitations on using mail-in ballots); *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669 (5th Cir. 2022) (challenge to elimination of straight-ticket voting in Texas); *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010) (challenge to statute that removed medical malpractice cap for abortion providers); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017) (challenge to limitations on recovery of emergency transportation costs); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015) (application of *Young* to Attorney General's refusal to justify the sending of letters threatening civil enforcement of the Texas Deceptive Trade Practices Act).

6

> [W]e note that the City faces no consequences if it attempts to enforce its Ordinance. Contrary to what the City argues, this is not a case akin to *Steffel v. Thompson*, **because the City faces no threat of criminal prosecution like the plaintiff there**. *See* 415 U.S. 452, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (holding that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state [ ] statute").

943 F.3d at 1002 (emphasis added). In *Steffel* the Supreme Court reiterated the now routine holding that a plaintiff is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." 415 U.S. at 459. But the Court also noted that while "a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights [in the state court], a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Id.* at 462.

Accordingly, the Fifth Circuit has been careful to distinguish between the circumstances and consequences attendant upon civil versus criminal enforcement. *See City of Austin*, 943 F.3d at 1002; *see also Summit Medical Associates P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000) (holding that an "imminence requirement" in the criminal enforcement context "would render *Ex parte Young* a nullity" because it "would force a plaintiff into precisely [the] predicament" described in *Steffel*); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 & n.10 (6th Cir. 1996) (actions taken "under the threat of criminal penalty" subject a plaintiff to "real and immediate (not merely conjectural or hypothetical) harm of criminal penalty" and "allow[] the action to proceed under *Young*" even if prosecutor has not acted); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002), *opinion amended*

7

*on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) ("We decline to read additional 'ripeness' or 'imminence' requirements into *Ex parte Young* . . . beyond those already imposed by a general Article III and prudential ripeness analysis.").[7]

Moreover, as the Fifth Circuit also noted in *City of Austin*, "it may be the case that an official's connection to enforcement [for *Young*] is satisfied when standing has been established" because in situations where it has "been determined that an official can act, and there's a significant possibility that he or she will act to harm a plaintiff, the official has engaged in enough 'compulsion or constraint' to apply the *Young* exception." 943 F.3d at 1002; *id.* (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.").

Here, as set out below in detail, Plaintiffs have Article III standing because they have curtailed their activities based on a credible threat of prosecution by Defendant Ogg, and it is "a well-settled rule" that they "need not violate a criminal provision and risk prosecution" in order to bring their claims. *See In re Gee*, 941 F.3d 153, 161 n.3 (5th Cir. 2019). In this context—a pre-enforcement challenge to a criminal law—the connection between standing and *Young* is

---

[7] Additionally, requiring a plaintiff await charges prior to challenging a law would almost certainly give rise to issues of *Younger* abstention, rendering it near impossible for a plaintiff to seek prospective relief in a federal forum. *See Steffel*, 415 U.S. at 460–62 ("[F]ederal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions."); *Summit Medical Associates*, 180 F.3d at 1339–40 (declining to require "imminence" of prosecution in criminal enforcement context because, "as a practical matter, a potential plaintiff will [n]ever be able to predict when prosecution is indeed 'imminent' . . . [given that] a prosecutor has no obligation to inform a target that she is planning to bring criminal charges," which in conjunction with the doctrine of *Younger* abstention, would render "the avenue for seeking prospective relief [from enforcement of a criminal law] in a federal forum . . . slender indeed").

especially strong because it would turn this understanding of the availability of federal relief on its head to simultaneously find that standing exists but that *Young* nevertheless precludes suit. As one court addressing this interaction put it, "to the extent that a threat of prosecution is relevant to the *Ex parte Young* analysis, there is no justification for imposing a standard more restrictive of federal jurisdiction than [the Supreme Court's] 'credible threat' standard," particularly given that "[i]n *Ex parte Young*, the [Supreme] Court did not seek to limit federal court jurisdiction; it created a judicial fiction to expand federal court jurisdiction and expressly recognized the importance of allowing pre-enforcement challenges to be raised in federal court." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 916 (E.D. Wis. 2002).

### C. Defendant Ogg is Not Entitled to Sovereign Immunity

Defendant Ogg cannot avail herself of sovereign immunity with respect to Plaintiffs' claims. First, this Court has already, and correctly, rejected that proposition. Second, Defendant Ogg's cited cases fail to account for the fact that her enforcement capacity arises in the criminal context. And finally, in the context of a pre-enforcement challenge to a criminal law, "the standing inquiry . . . inform[s] the state sovereign immunity inquiry," *see Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021), and as set out below, Plaintiffs have clearly alleged standing to pursue their claims.

### IV. Plaintiffs Have Alleged Standing to Sue Defendant Ogg

Defendant Ogg concedes that Plaintiffs have alleged causation and redressability for purposes of Article III standing because they challenge only criminal provisions of SB 1. Dkt. 344 at 18.[8] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (for standing, a plaintiff must

---

[8] While Defendant Ogg does challenge causation and redressability with respect to claims challenging civil provisions of SB 1, she expressly disclaims any argument that Plaintiffs, or any other plaintiff in this consolidated lawsuit, have failed to allege causation and redressability with

9

show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision). She nevertheless argues that Plaintiffs have failed to allege an injury-in-fact because they have not "demonstrated any intent to engage in conduct that could contravene any of the challenged laws," and do not face a "real and immediate threat of prosecution by Ogg under any of the challenged provisions." Dkt. 344 at 3, 17. She is incorrect on both counts.

First, Plaintiffs laid out in great detail the conduct that they and their members have previously engaged in and wish to continue engaging in but for SB 1 Sections 6.04, 6.06, and 7.04. Dkt. 200 ¶¶ 148–94 (explaining how Plaintiffs and their members have previously provided and wish to continue providing voting assistance to their members and the community, but have been and will be unable to obtain adequate assistance in voting, and have been and will be unable to select the assistor of their choice, due to SB 1 Sections 6.04 and 6.06), ¶¶ 195–239 (explaining that Plaintiffs and their members have engaged in core political speech in the past and wish to do so again in the future, including in-person voter outreach and engagement such as door-to-door flyer distribution, circulating petitions, canvassing, holding candidate forums, voter education drives, town halls, GOTV events, and other voter mobilization activities, but have been forced to curtail those activities due to SB 1 Section 7.04). Because Plaintiffs' "desired conduct" is "arguably proscribed" under a "plausible reading" of Sections 6.04, 6.06, and 7.04, they have adequately pleaded this element of their injury for Article III standing. *See Barilla v. City of Houston*, 13 F.4th 427, 433 (5th Cir. 2021). This is true with respect to Section 7.04 even though Plaintiffs challenge

---

respect to the *criminal* provisions of SB 1. Dkt. 344 at 18. For the same reasons, Defendant Ogg's arguments regarding SB 1 provisions targeted at public election officials do not apply here; Plaintiffs are not public election officials and do not challenge any provisions that target public election officials.

it as being unconstitutionally vague, because they "fear that their actions will be interpreted to come within the broad terms" of that provision. *See Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (citing *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015)).[9]

Second, Plaintiffs have alleged "an actual and well-founded fear that the law will be enforced against them" because Defendant Ogg has not "suggested that the newly enacted law will not be enforced." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (physicians had standing to challenge law "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution" where physicians were those "against whom the[] criminal statutes directly operate"; they "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief"); *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018) (citing *United Farm Workers*, 442 U.S. 289, 302 (1979)) (standing may exist where, "even though the plaintiffs had not yet violated the statute and the statute had never been applied, the government would not disavow prosecution if plaintiffs engaged in their intended course of action"); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (existence of law prohibiting plaintiffs from carrying a handgun was sufficient to create credible threat of prosecution).[10] This is especially true with respect to

---

[9] In "determining when the threatened enforcement of a law creates an Article III injury" courts must look to whether the plaintiff has stated "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). Defendant Ogg does not acknowledge this case law and her argument addresses only the second and third prongs of that inquiry. Plaintiffs' desired conduct is indisputably affected with constitutional interests in the right to vote, the right to equal protection of the laws, the right to free speech and association, the due process right to notice of prohibited conduct, and the supremacy of federal law.

[10] *See also New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 51 (1st Cir. 2021) (citation omitted) (assuming, in pre-enforcement declaratory judgment action regarding application of Wire Act to non-sports gambling, that "the state will enforce its own non-moribund

Plaintiffs' First Amendment claims, because "a plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds need not show that the authorities have threatened to prosecute him . . .; the threat is latent in the existence of the statute." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020), as revised (Oct. 30, 2020) (cleaned up) (citation omitted). Thus, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 335.[11]

Defendant Ogg's reference to a proffered non-enforcement stipulation is a red herring. Dkt. 344 at 14 & Exh. A. Even if the parties had agreed to the stipulation, that would not have defeated standing. That stipulation was "identical" to the one Defendant Ogg entered into in the *Longoria* case. *Id.* But this Court has already ruled that such a non-enforcement stipulation does not defeat standing, given that in it Defendant Ogg does not "affirmatively represent[] she *never* intends to enforce" the law challenged "or that she intends to comply with any future court order enjoining such enforcement." *Longoria v. Paxton*, --- F. Supp. 3d ----, 2022 WL 447573, at *8 (W.D. Tex. Feb. 11, 2022); *accord Seals v. McBee*, 898 F.3d 587, 593 (5th Cir. 2018), as revised (Aug. 9, 2018) (if the "DA can change his mind and prosecute him," a plaintiff is "not required to live under

---

criminal laws, absent evidence to the contrary"); *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), as amended (June 23, 2021) ("Establishing standing does not require that a litigant fly as a canary into a coal mine before she may enforce her rights. . . . a court presumes that a legislature enacts a statute with the intent that it be enforced.").

[11] Although this language reflects that courts are particularly suspicious of laws that criminalize the exercise of First Amendment rights, there is no "special First Amendment rule for pre[-]enforcement review of statutes." *See, e.g.*, *Seegars v. Gonzales*, 396 F.3d 1248, 1254 (D.C. Cir. 2005); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.5 (3d ed. 2021) (collecting cases) ("Many of the cases that rely on general fears of enforcement involve First Amendment speech or religion claims, but similarly sensitive values may do as well.").

the specter of prosecution for violating a potentially unconstitutional law with nothing more than a non-committal promise as protection"). If anything, Defendant Ogg's "representation that she will not enforce the law *for now*" suggests she intends to enforce the law later. *See Longoria*, 2022 WL 447573, at *8 (emphasis in original).

In sum, it is a "[a] well-settled rule . . . that a would-be plaintiff need not violate a criminal provision and risk prosecution to challenge it," and so long as a plaintiff has "alleged they want[] to do something . . . that the state law prohibits," that is "a sufficient injury to justify their Article III standing." *In re Gee*, 941 F.3d 153, 161 n.3 (5th Cir. 2019) (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 153–53 (1967)). Plaintiffs have therefore alleged an injury in fact sufficient to establish Article III standing at this stage in the litigation. Defendant Ogg has not challenged, nor can she, causation and redressability with respect to Plaintiffs' claims. *See* Dkt. 344 at 18–19 (explicitly disclaiming any argument as to causation and redressability for criminal provisions of SB 1).[12]

---

[12] Defendant Ogg's standing argument focuses solely on whether Plaintiffs or their members have alleged injury with respect to the risk of prosecution under the challenged provisions. But all Plaintiffs in this lawsuit are organizations and have alleged claims on their own behalf, under theories of organizational standing, and on behalf of their members, under theories of associational standing. *See* Dkt. 200 ¶¶ 14, 19, 23, 28, 32, 124–47, 176–94, 214–39. While Defendant Ogg's motion addresses "organizational standing" in the sense that Plaintiffs, as organizations, fear prosecution, it does not address Plaintiffs' assertion of organizational standing based on a diversion of resources. But Plaintiffs have *also* alleged injury under that theory because, in addition to curtailing their activities due to the threat of prosecution, they have pleaded in great detail how they have had, and will continue to have, to spend time, money, and resources on educating their members and the public about compliance with changes in the law caused by SB 1 Sections 6.04, 6.06, and 7.04. Dkt. 200 ¶¶ 14–34, 166–69, 174–75, 208–13. Thus, because Plaintiffs "went out of [their] way to counter the effect of" the challenged provisions of SB 1, to "mitigat[e] its real-world impact on . . . the public" by taking actions "that consumed [their organizations'] time and resources in a way they would not have been spent absent the Texas law," and will continue to do so, they have alleged injury under a diversion of resources theory of organizational standing. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). These resource-intensive education efforts are necessary due to the prospect of prosecutions by Defendant Ogg and enjoining her from enforcing the challenged provisions would remediate that harm, so Plaintiffs have also alleged causation and redressability. *See NiGen Biotech, LLC v. Paxton*, 804 F.3d 389,

## V. Plaintiffs Have Sufficiently Pleaded their Claims

Defendant Ogg lastly and incorrectly argues that Plaintiffs have failed to sufficiently plead their claims under Rule 12(b)(6) because they have not explicitly alleged that she is "prosecuting or threatening to prosecute any criminal cases under the challenged provisions." Dkt. 344 at 19–20. This is simply a restatement of her standing challenge above and should fail for the same reasons. The only case Defendant Ogg cites to support her argument is *Quinn v. Roach*, 326 F. App'x 280, 293 (5th Cir. 2009), but *Quinn* is simply inapposite. There, the Fifth Circuit held that the plaintiff did "not have *standing* to seek injunctive relief" because the child-abuse charges against him had been dropped. *Id.* (emphasis added). Not only is that nothing like the facts here, where Plaintiffs seek to engage in constitutionally protected activities proscribed by the challenged statutes that Defendant Ogg is charged with enforcing, but it involved a jurisdictional rather than merits question. Defendant Ogg's motion to dismiss for "failure to state a claim" is baseless.

## VI. Conclusion

For the foregoing reasons Plaintiffs respectfully request the Court deny Defendant Ogg's motion to dismiss their claims in its entirety.

Dated: April 19, 2022.　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Zachary Dolling*

　　　　　　　　　　　　　　　　　　　　Mimi M.D. Marziani
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24091906
　　　　　　　　　　　　　　　　　　　　Hani Mirza
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24083512
　　　　　　　　　　　　　　　　　　　　Zachary Dolling
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24105809
　　　　　　　　　　　　　　　　　　　　Sarah Chen*
　　　　　　　　　　　　　　　　　　　　**TEXAS CIVIL RIGHTS PROJECT**
　　　　　　　　　　　　　　　　　　　　1405 Montopolis Drive

---

397 (5th Cir. 2015) (request for injunctive relief satisfies redressability where complaint alleges continued or imminent violation).

Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
zachary@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
Andre Segura
Texas Bar No. 24107112
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org
asegura@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Samantha Osaki*
Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavizky@aclu.org
slakin@aclu.org
sosaki@aclu.org
smizner@aclu.org
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)

LIA SIFUENTES DAVIS
Texas State Bar No. 24071411
LUCIA ROMANO
Texas State Bar No. 24033013
LISA SNEAD
Texas State Bar No. 24062204
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
ldavis@drtx.org
lromano@drtx.org
lsnead@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Urja Mittal*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
umittal@jenner.com

Sophia Cai*
**JENNER & BLOCK LLP**
455 Market St. Suite 2100
San Francisco, CA 94105
scai@jenner.com

**COUNSEL FOR PLAINTIFFS OCA-GREATER HOUSTON, ET AL.**

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on April 19, 2022, through the Electronic Case File System of the Western District of Texas.

*/s/ Zachary Dolling*