IN THE UNITED STATE DISTICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § § | (Consolidated Case) |
| GREGORY W. ABBOTT, et al., | § § § § | |
| *Defendants*. | § § | |

## DEFENDANT KIM OGG'S REPLY TO LULAC AND HAUL PLAINTIFFS' RESPONSES TO OGG'S MOTION TO DISMISS

Defendant Kim Ogg, in her capacity as Harris County District Attorney ("Ogg"), files this reply with respect to her motion to dismiss all claims bought against her in any of the matters consolidated by the Court under Civil Action No. 5:21-CV-00844-XR (Dkt. 344).

The only consolidated plaintiffs who filed a timely response to the motion to dismiss[1] are Plaintiffs LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT's (collectively, the "LULAC Plaintiffs") (Dkt. 361) and Plaintiffs Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Jeffrey Lamar Clemmons, Mi Familia Vota, Marla López, Marlon López, and Paul Rutledge's (collectively, the "HAUL Plaintiffs") (Dkt. 360).

The LULAC Plaintiffs and the HAUL Plaintiffs make the following arguments against Ogg's requested dismissal from the litigation:

---

[1] On April 19, 2022, the date on which this reply was due and filed, various other plaintiffs filed an additional response. (Dkt. 377). That response is untimely and should be disregarded by the Court. *See* Local Rule CV-7(d).

1

(1) The invocation of the Voting Rights Act, the Americans With Disabilities Act, and Rehabilitation Act by plaintiffs in their complaints effects an abrogation of sovereign immunity protections otherwise available to Ogg;

(2) This Court's interlocutory order in the separate *Longoria* matter forecloses the granting of the motion to dismiss;

(3) It is sufficient for purposes of invoking the *Ex parte Young* exception to Ogg's sovereign immunity from suit to allege that Ogg has jurisdiction by statute to enforce a challenged criminal statute within the jurisdictional confines of her authority, as opposed to alleging that she is enforcing, has enforced, or has threatened to enforce the challenged statute; and

(4) Plaintiffs have standing to sue Ogg, because they allege the statutes they challenge "chill the speech of both Plaintiffs and their members and force Plaintiffs to divert their limited resources to advance their mission."

None of these arguments is an effective basis on which to oppose Ogg's dismissal from the consolidated litigation, on hornbook principles of federal pleadings standards and sovereign immunity.

1. **Given the absence of allegations that Ogg has enforced, is enforcing, or has threatened to enforce any of the challenged criminal provisions of S.B. 1, the Plaintiffs have not stated an actionable claim for violation of the Voting Rights Act, the Americans with Disabilities Act, or the Rehabilitation Act against Ogg.**

The Plaintiffs argue that their claims against Ogg for violations of the Voting Rights Act, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act are viable because claims under those statutes are not barred by sovereign immunity. While actions brought under these statutes can obviously abrogate sovereign immunity in the appropriate case, *Plaintiffs wholly fail to allege that Ogg violated these statutes*. Nor could they, for the same reason that they cannot generally overcome sovereign immunity under the *Ex parte Young* exception: they have no

allegations (and in their responses admit as much) that Ogg has taken any action or threatened to take any action to enforce any criminal provision of S.B. 1 in a way that would allegedly violate the Voting Rights Act, the ADA, or the Rehabilitation Act. Given this absence of actionable allegations that Ogg engaged in actions that violated any of these statutes, their inclusion in the case is not a basis to keep Ogg in it.

This is true with respect to section 2 of the Voting Rights Act, which requires allegations and then proof of a challenged government action that has a discriminatory purpose or result, or that under the totality of the circumstances results in the denial or abridgment of the right to vote "on account of," or based on, race or color. *E.g.*, *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 986 F.2d 728, 738 (5th Cir. 1993) (citing *Chisom v. Roemer*, 501 U.S. 380 (1991)).

This is also true with respect to the ADA, which requires pleading and then proof of events that give rise to an actionable claim that a "qualified individual with a disability . . . by reason of such disability, [was] excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or [was] subjected to discrimination by any such entity." 42 U.S.C. § 12132. *E.g.*, *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017).

Finally, a claim under section 504 of the Rehabilitation Act requires pleading and then proof that a qualified individual with a disability "solely by reason of her or his disability, [was] excluded from participation in, [was] denied the benefits of, or [was] subjected to discrimination under any program or activity receiving Federal financial assistance." *E.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Accordingly, to state a claim under the Rehabilitation Act, "a plaintiff must allege that the specific program or activity with which he or

she was involved receives or directly benefits from federal financial assistance." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020).[2]

The claims by plaintiffs in these consolidated cases against Ogg under any or all of these three federal statutes fail for the same reason. None of the plaintiffs have alleged any action taken by Ogg, or threatened to be taken by Ogg, under any provision of S.B. 1 that contains criminal provisions. There are zero allegations that Ogg engaged in an official activity that would satisfy their burden to plausibly plead and then prove the basic elements of recovery under theses statutes.

For example, in pleading their Voting Rights Act claim, the only "governmental action" alleged by the LULAC Plaintiffs relates to the "passage of SB 1," not its enforcement:

> 252. All of the relevant indicia demonstrate that a racially discriminatory purpose was a motivating factor in the passage of SB 1, particularly the Suppressive Provisions: SB 1 §§ 3.04, 3.09–3.10, 3.12–3.13, 4.01–4.02, 4.06–4.07, 4.09, 4.12, 5.01–5.03, 5.07–5.08, 6.03–6.04, 7.04. The bill was introduced following record-setting voter turnout among Texas's Black and Hispanic populations and increasing successes among candidates supported by Black and Hispanic voters.

LULAC Plaintiffs' 2d Am. Comp. (Dkt. 207). There is (and could be) no allegation that Ogg, in her capacity as the Harris County District Attorney, caused the Texas Legislature to pass S.B. 1.

---

[2] In addition to other absent pleadings, Plaintiffs do not allege that the Harris County District Attorney's Office receives any federal funding related to criminal enforcement of S.B. 1, nor could they. That alone is fatal to a Rehabilitation Act claim. Additionally, a generic allegation that the State of Texas receives federal dollars is insufficient. *Lightbourn v. City of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997).

The HAUL Plaintiffs' complaint reads no better, alleging that the "enactment of SB 1," not its enforcement, supports their claim under section 2 of the Voting Rights Act:

> 315. Multiple factors support an inference that race was a motivating factor behind the enactment of SB 1, including, but not limited to:

Haul Plaintiffs' 2d Am. Compl. (Dkt.199). There is no allegation that Ogg took any particular action to support the passage of S.B. 1, much less any action that would involve even an inference of racial bias.

The remainder of the HAUL Plaintiffs' allegations under the other federal statutes consist only of general allegations of unlawful activities by "the Defendants," without specifically naming or enumerating any such acts. *See* Dkt. 199 at ¶ 326 ("Defendants, acting under color of state law, have deprived Plaintiffs of their rights secured by Section 208 of the Voting Rights Act."); Dkt. 199 at ¶¶ 353, 365 ("Acts and omissions of Defendants have caused and will continue to cause Plaintiffs irreparable harm."); Dkt. 199 at ¶ 363 ("Defendants' actions and inactions constitute violations of Section 504 [of the Rehabilitation Act]."). To the extent that any of the HAUL Plaintiffs or any other plaintiffs in the consolidated cases rely on such "group" or "shotgun" pleadings, they are insufficient to meet the burden to show that the *Ex parte Young* exception to sovereign immunity applies to claims against Ogg. FED. R. CIV. P. 8; *see also, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (characterizing "quintessential 'shotgun' pleading" that made "no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of" as insufficient); *Cain v. City of New Orleans*, 2016 WL 2849498, at *5 (E.D. La. May 13, 2016) (dismissing case in part because a civil rights complaint "lump[ed] all defendants together and assert[ed] identical allegations as to each, without distinction").

Without improper resort to general group "Defendants" pleadings, none of the plaintiffs have made individualized allegations against Ogg as a defendant regarding violation of any of the Voting Rights Act, the ADA, or the Rehabilitation Act. Ogg is not alleged to be a lawmaker or a person with any connection to the enactment or passage of S.B. 1. There is no allegation (nor could there be) that she has any power to regulate, oversee, or facilitate elections. The Plaintiffs have failed to state a claim upon which relief can be granted under any of these statutes against Ogg, and their claims under these statutes as to Ogg can and should be dismissed.

2. **This Court's interlocutory order in *Longoria* does not control the outcome of Ogg's motion to dismiss.**

In the briefing on her motion to dismiss, Ogg acknowledged and distinguished this Court's injunction order in the *Longoria* case, a case which Ogg understands was severed from this consolidated litigation. *Longoria v. Paxton*, No. SA:21-CV-1223-XR, 2022 WL 447573 (W.D. Tex. Feb. 11, 2022). Plaintiffs' argument that the *Longoria* injunction order somehow "forecloses [Ogg's] sovereign immunity defense here" (Dkt. 361, at 2) is not only wrong but also ignores the established principles of collateral estoppel and the law of the case doctrine.

Collateral estoppel prevents litigation of an issue when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)). Importantly, the Fifth Circuit has explained that collateral estoppel requires a final judgment on the merits. *See Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312 (5th Cir. 1999); *Int'l Union of Operating Eng'rs, Loc. No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 676 (5th Cir. 1981) ("The requirement of finality applies just as strongly to collateral estoppel as it does to res judicata."). Even if the issues here were identical to those in *Longoria*—which they are not for the reasons

explained in Ogg's motion to dismiss—the *Longoria* order granting the plaintiffs' motion for preliminary injunction was not a final judgment. Therefore, collateral estoppel could never apply.

Similarly, the "law of the case" doctrine, which refers to the practice of courts generally refusing to reopen what has been decided, only applies to subsequent stages of the *same* case. *United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996); *American Home Assur. Co. v. Oceaneering Intern., Inc.*, 609 Fed. App'x 171, 177 (5th Cir. 2015) (unpublished). "Even an identical issue decided in a separate action does not qualify as the law of the case." *American Home Assur. Co.*, 609 Fed. App'x at 177. Thus, even if the issues here were identical to those in *Longoria*—which they are not—the law of the case doctrine would not mandate a similar outcome here.

### 3. Plaintiffs cannot meet the *Ex parte Young* exception requirements.

Neither the LULAC Plaintiffs nor the HAUL Plaintiffs have shown that their claims meet the requirements of the *Ex parte Young* exception to sovereign immunity.

The *Ex parte Young* exception "requires a higher showing of 'enforcement'" than the plaintiffs in these consolidated cases have alleged. *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019). When the Fifth Circuit has permitted suits under *Ex parte Young*, it has done so based on "specific enforcement actions of the respective defendant state officials warranting the application of the *Young* exception." *Id.* at 1001 (citing *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010); *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017); and *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015)).

The LULAC Plaintiffs and the HAUL Plaintiffs fully recognize and concede that they have not alleged any "specific enforcement action" by Ogg. They even admit it is "impossible to allege that Defendant Ogg ha[s] threatened to prosecute" anyone under the challenged statute. (Dkt. 360,

at 12). These plaintiffs are clear that they are relying on the "mere fact" that Ogg "*has* the authority to enforce" a statute. This "mere fact" of authority to enforce a statute is categorically not enough to qualify for the *Ex parte Young* exception under Fifth Circuit precedent. *City of Austin*, 943 F.3d at 1001.

Contrary to the argument made by these plaintiffs, nothing in the United States Supreme Court's recent decision in *Whole Woman's Health v. Jackson* changes this outcome. 142 S. Ct. 522 (2021). There the Court agreed with the "principle" that a plaintiff seeking to invoke the *Ex parte Young* exception must "show at least a credible threat of [an enforcement] action against them." *Id.* at 536. The Supreme Court held that standard met where the named defendant-officials had a state-law duty to bring disciplinary actions against persons who violated the relevant statute. *Id.* at 537. Plaintiffs have not alleged that Ogg, as the Harris County District Attorney, has any similar duty or obligation imposed by state law or otherwise to exercise her prosecutorial discretion to enforce any of the provisions at issue in this litigation. It is a bedrock principle of the Texas (and federal) criminal justice systems that a prosecutor has no obligation or duty to bring criminal charges against anyone. "Both Texas and federal courts recognize that prosecutors have broad discretion in deciding which cases to prosecute." *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004).

**4. The plaintiffs have not pled standing to bring claims against Ogg.**

Even if the Plaintiffs could overcome Ogg's sovereign immunity from suit, which they cannot, the absence of pleadings connecting their conduct with actual or threatened criminal enforcement of the challenged provisions would be fatal to their attempt to allege an injury-in-fact that is properly traceable to and redressable by Ogg.

First, based on the nature of their pleadings, none of Plaintiffs are entitled to a presumption of a credible threat of prosecution. When dealing with pre-enforcement challenges to recently enacted statutes that "facially restrict expressive activity **by the class to which the plaintiff belongs**, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (emphasis added). Here, however, the LULAC Plaintiffs and the HAUL Plaintiffs do not allege that they or their members belong to the class of people who are allegedly restricted by the challenged provisions. *See* TEX. ELEC. CODE §§ 33.051(g), 33.061, 276.016, and 276.017 (imposing criminal penalties for violations by "public officials" or "election officials"). Without the benefit of this presumption, the Plaintiffs' complaints are insufficient to establish an injury-in-fact due to the absence of any facts describing a real and immediate threat of prosecution under any challenged provisions.[3] For example, the HAUL Plaintiffs cite *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013), for the proposition that a plaintiff "in pre-enforcement review of a criminal statute" "may meet this injury requirement by showing 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and ... a credible threat of prosecution thereunder.'" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 99 S. Ct. 2301 (1979)). The issue here, however, is that none of plaintiffs have made actionable and sufficient allegations that they have any intention to engage in a course of conduct in Harris County that would even arguably violate any of the provisions of S.B. 1 that carry criminal penalties. Moreover, *McCraw* is distinguishable on its facts because in that case the defendant (the State of

---

[3]Even if this presumption applied, Ogg's non-prosecution stipulation in the *Longoria* matter and her demonstrated willingness to similarly stipulate to non-prosecution here provide the Court with compelling evidence that Ogg does not intend to bring the kind of criminal prosecutions the Plaintiffs claim to fear.

Texas) on appeal "concede[d] that plaintiffs have standing." *Id.* at 345 n.5. There was therefore no dispute that the plaintiffs' intended conduct was proscribed by statute and that they faced a credible threat of prosecution.

Even if the Plaintiffs had pled a sufficiently likely injury-in-fact, which they have not, the Plaintiffs' allegations, even if assumed to be true, are facially insufficient to satisfy the causation and redressability prongs of the standing test. Nowhere in their recitation of non-particularized and hypothetical injuries are there any facts connecting any alleged injuries to Ogg. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."). It is telling that the *McCraw* case relied on by the HAUL Plaintiffs did not involve any district attorney being sued, but rather the Director of the Texas Department of Public Safety—the department that administers the concealed handgun licensing program at issue in that case. Plaintiffs do not cite any authority for the proposition that the causation and redressability prongs of the standing test can be met for claims against a district attorney when there are no allegations of enforcement or threatened enforcement of a challenged criminal statute. As the United States Supreme Court has held, "[t]he Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 93 S. Ct. 1146, 1149 (1973) (citing *Younger v. Harris*, 91 S. Ct. 746 (1971); *Bailey v. Patterson*, 82 S. Ct. 549 (1962); *Poe v. Ullman*, 81 S. Ct. 1752 (1961)). As with other parts of their allegations, Plaintiffs must allege a sufficient basis for standing as to each defendant they choose to sue, and they have not done so here.

**PRAYER FOR RELIEF**

For the foregoing reasons, Defendant Kim Ogg, sued in her official capacity as Harris County District Attorney, respectfully reiterates her request that the Court dismiss all claims and causes of action that have been asserted against her in this action pursuant to Rule 12(b)(1) and Rule 12(b)(6), and prays for such other and further relief to which she may be justly entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*

Eric J.R. Nichols
State Bar No. 14994900
eric.nichols@butlersnow.com
Karson K. Thompson
State Bar No. 24083966
karson.thompson@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Tel: (737) 802-1800
Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2022, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols

63938907.v2