IN THE UNITED STATE DISTICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § § § | (Consolidated Case) |
| GREGORY W. ABBOTT, et al., | § § § § § | |
| *Defendants*. | § § | |

## DEFENDANT KIM OGG'S REPLY TO
## THE OCA PLAINTIFFS' RESPONSES TO OGG'S MOTION TO DISMISS

Defendant Kim Ogg, in her capacity as Harris County District Attorney ("Ogg"), files this reply to Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, and Workers Defense Action Fund's (collectively, the "OCA Plaintiffs") Response (Dkt. 377)[1] to Ogg's motion to dismiss all claims bought against her in any of the matters consolidated by the Court under Civil Action No. 5:21-CV-00844-XR (Dkt. 344).

In the same fashion as the various other plaintiffs in this consolidated litigation, the OCA Plaintiffs argue that the Court should not dismiss Ogg because:

(1) The OCA Plaintiffs' non-statutory claims against Ogg satisfy the *Ex parte Young* exception to sovereign immunity based solely on Ogg's jurisdiction to enforce challenged criminal statutes, despite the absence of any allegation that Ogg has enforced or threatened to enforce any of the challenged provisions;

---

[1] The reply to various other plaintiffs' responses to the motion to dismiss (Dkt. 378) indicated in a footnote that the OCA Plaintiffs' response was untimely filed. Ogg corrects that statement here: the OCA Plaintiffs' response to the motion was timely pursuant to this Court's order of April 4, 2022. This reply accordingly addresses the merits of that response.

1

(2) The OCA Plaintiffs have Article III standing to sue Ogg based on their desire to engage in certain conduct they believe to be within the scope of these criminal statutes and their subjective fear that they will be prosecuted by Ogg for doing so; and

(3) The OCA Plaintiffs' statutory claims under the Voting Rights Act, the Americans with Disability Act, and the Rehabilitation Act all abrogate Ogg's entitlement to sovereign immunity.

For the same reasons asserted in Ogg's reply to the LULAC and HAUL Plaintiffs' responses (Dkt. 378), which Ogg hereby incorporates into this reply, these duplicative arguments are unavailing to overcome dismissal of their claims against Ogg.

**1. The mere fact that Ogg has jurisdiction to enforce criminal statutes is not enough to defeat her entitlement to sovereign immunity.**

From the outset, the OCA Plaintiffs' response misrepresents Ogg's position in an effort to create a straw man argument. Contrary to what is claimed in the response, Ogg has never argued that "there is no party responsible for enforcing the criminal provisions added to the Texas Election Code in 2021 by Senate Bill 1." (Dkt. 377, at 2). Ogg of course fully accepts her general jurisdictional authority to bring criminal prosecutions in Harris County. (Dkt. 344, at 6). But a "mere fact" allegation of general criminal jurisdiction is not enough to drag every district attorney in Texas into federal court every time the Texas Legislature enacts or modifies a criminal statute and someone wants to challenge that law.

The law protects officials like Ogg from precisely this scenario through limitations on federal jurisdiction and the doctrine of sovereign immunity, including the limitations on the scope of the *Ex parte Young* exception to a state actor's Eleventh Amendment immunity from suit. As the Fifth Circuit has explained, application of the *Ex parte Young* exception requires a "higher showing of 'enforcement'" than mere enforcement authority. *City of Austin v. Paxton*,

64006564.v2

943 F.3d 993, 1000 (5th Cir. 2019). When the Fifth Circuit has permitted suits under *Ex parte Young*, it has done so based on "specific enforcement actions of the respective defendant state officials warranting the application of the *Young* exception." *Id.* at 1001 (citing *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010); *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017); and *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015)).

The OCA Plaintiffs—like the others who have brought Ogg into the case—premise their arguments on the concept that if they believe a statute is unconstitutional, they *have to be able to sue someone*. This is obviously a false premise. As the courts have recognized many times over:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co.*, 114 S. Ct. 1673, 1675 (1994) (citations omitted); *see also* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3522 ("It is a principle of first importance that the federal courts are tribunals of limited subject matter jurisdiction.").

Two of the important considerations in the limitations imposed on the ability of allegedly aggrieved persons to get relief in federal court against a particular defendant are sovereign immunity and standing. With respect to sovereign immunity as a limitation on the ability of an allegedly aggrieved plaintiff to seek federal court relief:

> It was well established in 1989 when *Union Gas* was decided that the Eleventh Amendment stood for the constitutional principle that state sovereign immunity limited the federal courts' jurisdiction under Article III. The text of the Amendment itself is clear enough on this point: "The Judicial power of the United States shall not be construed to extend to any suit...." And our decisions since *Hans* had been equally clear that the Eleventh Amendment reflects "the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Art. III."

3

*Seminole Tribe of Florida v. Florida*, 116 S. Ct. 1114, 1127 (1996) (overruling *Pennsylvania v. Union Gas. Co.*, 109 S. Ct. 2273 (1989)) (additional citations omitted).

With respect to standing:

> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society.

*Warth v. Seldin*, 95 S. Ct. 2197, 2205 (1975) (citations omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 ("The 'law of Art. III standing is built on a single basic idea—the separation of powers.'" (quoting *Raines v. Byrd*, 117 S. Ct. 2312 (1997))).

The absence of a claim against Ogg is not a deprivation of a right held by the OCA Plaintiffs or any other plaintiff. Ogg is not a properly sued defendant within the limited scope of federal jurisdiction because the plaintiffs have not alleged—and have in fact acknowledged and admitted they cannot allege—she is enforcing, or even threatening to enforce, any criminal provisions created or modified by S.B. 1. The OCA Plaintiffs themselves even quote language from the Fifth Circuit acknowledging the need for plaintiffs to show that the defendant-official they are suing not only "can act," but likely *will act*. (Dkt. 377, at 8 (quoting *City of Austin*, 943 F.3d at 1002 ("a significant possibility that [the official] will act to harm a plaintiff"))). The absence of any factual basis to allege that Ogg "will act" to enforce any of the provisions the plaintiffs seek to have the Court declare unconstitutional is fatal to their claims against Ogg.

Besides the false premise that "I can sue Ogg, because I have to be able to sue someone," the OCA Plaintiffs' only response to the *City of Austin* case, and the line of cases it discusses (*K.P.*, *Air Evac*, and *NiGen Biotech*), is that they all involved enforcement of civil, rather than criminal, laws. This is a distinction without a difference. Regardless of the kind of statute a

4

plaintiff is challenging, that plaintiff must do more than allege that the defendant-official sued can theoretically enforce the challenged statute. *City of Austin*, 943 F.3d at 1001-02; *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001) (*en banc*) (requiring "a demonstrated willingness to exercise" a "particular duty to enforce the statute in question").[2] The OCA Plaintiffs' citation to *Steffel v. Thompson,* 415 U.S. 452 (1974), is no help to their position for at least two reasons. First, *Steffel* was not an *Ex parte Young* case at all. Second, the petitioner in *Steffel* had "been twice warned" to stop distributing handbills and had "been told by police" that if he did so again "he [would] likely be prosecuted." *Id.* at 459. The absence of any such allegations of conduct involving Ogg and the provisions challenged here is deafening.

2. **Similarly, the lack of factual allegations showing a credible threat of prosecution prevents the OCA Plaintiffs from establishing standing.**

The OCA Plaintiffs cite numerous cases for the basic and undisputed proposition that a plaintiff, in the right circumstances, may bring a pre-enforcement challenge to a statute. *E.g.*, *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013). However, any such pre-enforcement challenge requires an actionable allegation of a credible threat of prosecution. *E.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99 (1979). When a plaintiff has "no fears of state prosecution except those that are imaginary or speculative," that plaintiff lacks standing to sue. *Younger v. Harris*, 401 U.S. 37, 42 (1971); *see also McCraw*, 719 F.3d at 345 n.5 (state defendant conceded plaintiffs faced credible threat of prosecution).

Many of the authorities cited by the OCA Plaintiffs are First Amendment cases in which suits were allowed to proceed against statutes that had not yet been enforced. *E.g.*, *Speech First,*

---

[2]The OCA Plaintiffs have also failed to show Ogg has an "particular duty to enforce" any of the challenged provisions. Texas law gives Ogg absolute discretion to prosecute such cases (or not). *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004).

*Inc. v. Fenves*, 979 F.3d 319, 336-37 (5th Cir. 2020); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). Of course, a significant distinction is that the defendants in those First Amendment cases were directly responsible for the policies being challenged. *Fenves*, 979 F.3d at 323 (university president sued over university speech policies); *Am. Booksellers*, 484 U.S. at 386 (State of Virginia sued over criminal statute). In that scenario, it is fair to ask, as the Fifth Circuit did in *Fenves*, why the policy is even on the books if it is not going to be enforced. *Fenves*, 979 F.3d at 337. The distinction here is the absence of any allegation that Ogg had anything to do with the enactment of S.B. 1, much less any control over the Texas Legislature when it enacted the legislation. The "mere fact" that the Legislature passed a criminal statute that falls within the jurisdiction of Ogg in Harris County is just not enough under the law to involve Ogg in these plaintiffs' constitutional challenges.

In addition to a lack of allegations of intent or willingness to enforce any of the challenged statutory provisions, the record before the Court shows that Ogg has in fact expressed the *opposite* intent. The OCA Plaintiffs quibble with Ogg's proffered non-enforcement stipulation, saying that it was not permanent. This is another quibble without a cause. Once the constitutional challenges raised by plaintiffs are resolved by this Court and any reviewing court, there is no need for a promise of non-enforcement. The judicial process either decides plaintiffs' claims against them, in which case there is no basis for an injunction, or that the plaintiffs' claims as to the unconstitutionality of a challenged statute are justiciable and have merit, in which case there is no basis to sue Ogg or anyone else unless an actor actually took action to enforce a statute the judicial system had determined to be unconstitutional. There is simply no place in our federal system to subject the office of a district attorney to the burdens of litigation

64006564.v2

over the validity of statutes that the district attorney's office has no alleged intention or willingness to enforce.

The burdens of participating in this litigation are not hypothetical or abstract. Naming Ogg as a defendant forces her office to expend resources—time and money—on civil litigation that has nothing to do with the day-to-day criminal work of her office's prosecutors. It also subjects Ogg and her office to burdensome and harassing discovery requests. For example, the OCA Plaintiffs have sought from Ogg's office "all documents and communications" over a *six-year period* spanning a variety of topics including topics as broad as "suspected violation[s] of criminal election law," even laws that have nothing to do with S.B. 1. *See* **Ex. A** (OCA Plaintiffs' First RFPs to Ogg). Similarly, Ogg has been served with more than a dozen interrogatories demanding that Ogg itemize and describe all such criminal investigations or prosecutions, among other topics. *See* **Ex. B** (OCA Plaintiffs' First Set of Interrogatories to Ogg).

> **3. Given the absence of allegations that Ogg has enforced, is enforcing, or has threatened to enforce any of the challenged criminal provisions of S.B. 1, the OCA Plaintiffs have not stated an actionable claim for violation of the Voting Rights Act, the Americans with Disabilities Act, or the Rehabilitation Act against Ogg.**

As explained in more detail in Ogg's reply to the LULAC and HAUL Plaintiffs' responses, the lack of any allegation that Ogg has violated the Voting Rights Act, Americans with Disabilities Act, or Rehabilitation Act is fatal to those statutory causes of action. (Dkt. 378, at 2-6.)

Like the other plaintiffs, the OCA Plaintiffs' allegations focus not on any actions taken by Ogg but on actions taken by the Texas Legislature and its members:

> 2. In response to this increase in civic participation, the Texas Legislature passed an omnibus elections bill targeting many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters, such as voters with disabilities and voters with limited English proficiency. In their determination to push this omnibus legislation through the legislative process, lawmakers ignored widespread opposition by diverse groups of Texans—including business executives, faith leaders, community organizers, local elected officials, and countless everyday people—and refused to conduct any serious study of how this new law would impact voters.
>
> 55. The 2021 legislative sessions were marked by a disregard for procedural rules and a proclaimed ignorance of or indifference to the potential discrimination resulting from proposed voter suppression legislation Against that backdrop, the Legislature's second special session culminated in the passage of an omnibus elections bill, SB 1, that will illegally disenfranchise voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—while making it harder for community groups to continue the outreach that has led to the growing participation among these communities of voters in recent years.

(Dkt. 200). On the other hand, the allegations regarding Ogg are prospective and hypothetical, asserting what "will" happen in the future, rather than describing things that have actually occurred:

> 136. By enforcing and implementing those challenged provisions of SB 1, the AG, the SOS and county officials acting pursuant to SOS directives and using materials he created will exclude Plaintiffs' members and other voters with disabilities from participation in, and deny them the benefits of, or otherwise discriminate against them in, their service, program, or activity of voting via the State's mail-in voting program.

> 144. Accordingly, by enforcing and implementing those challenged provisions of SB 1, the AG, SOS, and county officials acting pursuant to SOS directives and using materials he created will discriminate against Plaintiffs and their members by denying them a full and equal opportunity to participate in their voting programs.
>
> 181. Plaintiffs are entitled to injunctive relief against the SOS, who as set forth already is expressly charged with implementing the Oath and related provisions set forth in Sections 6.04, 6.05, and 6.06 of SB 1; the AG, Harris DA, and Travis DA, who as set forth already are charged with enforcing the criminal law penalties in Sections 6.04 and 6.06, and other county officials to whatever extent they are required to comply with directives from the SOS and the AG regarding the enforcement of the challenged provisions , as well as reasonable attorney's fees and costs.

*Id.* In the absence of any factual allegations that Ogg has actually done something that constitutes an alleged violation of the Voting Rights Act, Americans with Disabilities Act, or Rehabilitation Act, Ogg is entitled to dismissal of those claims as well.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
   Eric J.R. Nichols
   State Bar No. 14994900
   eric.nichols@butlersnow.com
   Karson K. Thompson
   State Bar No. 24083966
   karson.thompson@butlersnow.com
   1400 Lavaca Street, Suite 1000
   Austin, Texas 78701
   Tel: (737) 802-1800
   Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

   */s/ Eric J.R. Nichols*
   Eric J.R. Nichols