# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | |
| *Plaintiffs,* | 5:21-cv-844-XR |
| v. | |
| GREGORY W. ABBOTT, et al., | |
| *Defendants.* | |
| | |
| LULAC TEXAS, et al., | |
| *Plaintiffs,* | 1:21-cv-0786-XR |
| v. | |
| JOHN SCOTT, et al., | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM TEXAS LAWMAKERS

This lawsuit raises constitutional and federal statutory challenges to Senate Bill 1 ("SB 1"), a sweeping suppression of voting rights in Texas. Several of Plaintiffs' claims allege that the legislature enacted SB 1 with intent to discriminate against certain demographic groups, including Black and Latino Texans. Thus, the legislature's intent and purpose in enacting SB 1 are deeply relevant to Plaintiffs' claims. To that end, Plaintiffs served third-party subpoenas to obtain documents from Texas Representatives Briscoe Cain and Andrew Murr and Texas Senators Paul

Bettencourt and Bryan Hughes (collectively, the "Lawmakers"), each of whom were sponsors and major proponents of SB 1.

Rather than comply with the subpoenas, the Lawmakers delayed producing materials for weeks beyond the subpoena's deadlines and ultimately withheld more than 700 documents through facially overbroad or clearly waived claims of privilege or protection from disclosure. Their privilege log makes clear that many of these documents likely reveal their intent in passing SB 1—a critical area of dispute between the parties. Despite Plaintiffs' repeated attempts to reach an agreement, the Lawmakers have refused to produce any of the hundreds of highly relevant documents they are improperly withholding. Plaintiffs therefore have no choice but to seek the Court's assistance in obtaining a narrowly tailored subset of these documents; specifically, those documents most likely to show legislative purpose and over which the Lawmakers' claims of privilege are most deficient. For the reasons below, the Court should grant Plaintiffs' motion to compel the production of this limited set of key documents under Federal Rules of Civil Procedure 45 and 37.

## STATEMENT OF FACTS

This case concerns the Texas legislature's enactment (and the defendants' enforcement) of SB 1—a sweeping voter suppression bill that imposes restrictions on virtually all voting procedures and more. Plaintiffs' claims under the United States Constitution and the Voting Rights Act allege that SB 1 was enacted with discriminatory intent, among other violations of federal law, and discovery into the legislature's suppressive purpose is highly relevant to these claims.

To that end, on December 15, 2021, Plaintiffs served the Lawmakers with subpoenas for documents. *See* Exs. A-D (subpoenas to Sen. Bettencourt, Rep. Cain, Sen. Hughes, and Rep. Murr, respectively) (Subpoenas), App001-072. These subpoenas sought, among other things, documents

and communications from the Lawmakers concerning claims of criminal conduct in Texas elections, the anticipated effects of SB 1 and related election law bills, and the Lawmakers' communications with third-party groups about the law. *Id.*

On January 1, 2022, counsel for the Lawmakers sent Plaintiffs a letter asserting various objections to the subpoenas, including broad claims of "legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege . . .[and/or] protected from disclosure by Texas Government Code § 323.017." *See* Ex. E (Obj. Letter), App075. Plaintiffs responded to the Lawmakers' objections in a January 7, 2022 letter refuting the basis for the assertion of legislative privilege in this case. *See* Ex. F (Jan. 7, 2022 Conferral Letter), App079-80. Plaintiffs explained, for example, that the Lawmakers could not rely upon Texas state-law privileges in this federal proceeding. *Id.* at 079.

On January 10, 2022, before any documents had been produced, Counsel for the Plaintiffs and Lawmakers met and conferred without success about the scope of the Lawmakers' privilege assertions. *See* Ex. G (Email Correspondence), App086. During that meeting, the Lawmakers' counsel could not confirm whether the Lawmakers intended to withhold any documents on the basis of privilege. *Id.*

The Lawmakers failed to timely produce any documents as required by Plaintiffs' subpoenas. *See* Subpoenas, App001-072; *see also* Ex. H (Feb. 22, 2022 Deficiency Letter), App091 (noting no production as of January 20). Instead, on January 20 the Lawmakers purported to make new objections to the subpoenas and promised to make unspecified productions on a "rolling basis within a reasonable time." Ex. I (Jan. 20, 2022 Objs.), App100-09, 116-25, 132-41, 148-57. After continuing not to receive any documents, Plaintiffs reached out to the Lawmakers on January 27 to meet and confer. Ex. G, App087-88. After the Lawmakers failed to offer a time

to confer, Plaintiffs reiterated their request on February 3. *Id.* at 085-86. The Lawmakers replied to the February 3 request by indicating that "roughly 1,700" responsive documents existed and that the Lawmakers "anticipate[d]" producing them early in the week of February 7. *Id.* at 084-85. The Lawmakers consistently refused during this correspondence to indicate whether they intended to withhold any documents on the basis of their asserted privileges. *See* Ex. H, App091.

Finally, on February 11, 2022—over three weeks after the deadline to complete production of documents in response to the subpoenas—the Lawmakers produced 232 documents. *See id.* After further correspondence, *id.*, the Lawmakers ultimately produced a total of 444 documents. According to a March 14 privilege log, the Lawmakers withheld roughly 725 documents—nearly double the number they produced—claiming various combinations of attorney-client privilege, work product protection, legislative privilege, and investigative privilege. *See* Ex. J (Privilege Log), App158-224.

Many of the Lawmakers' privilege claims in the log make clear the materials were shared well beyond the legislative sphere. For example, many entries claiming legislative privilege note that the withheld document was circulated to or from constituents, party activists, or members of the Texas executive branch, *see* Table B, App260-76 (identifying legislative privilege claims where materials where shared with third parties), including 18 documents were received from or shared with a "non-legislative third-party" or a "third party not employed by the Legislature," *id.* at Entries 2-4, 13-22, 43-44, 50-53.[1] The Lawmakers similarly assert attorney-client privilege and work product protection over dozens of documents that the log indicates were shared with third parties. *See, e.g.*, Table C, App277-82, Entries 1-8 (communications with "non-legislative third

---

[1] The tables attached to this motion are compiled directly from the Lawmakers' privilege log. *See generally* Ex. J, App158-224 (Privilege Log); *see also* App244-285 (Tables A-D). Plaintiffs have added Entry numbers to the appendix for the Court's convenience.

party"); *id.* at Entries 10-11, 14-20, 24, 26, 28-30, 37-39 (communications with Texas Legislative Council); *id.* at Entries 9, 33-36, 40 (communications with Office of Attorney General). The Lawmakers have not explained their basis for refusing to produce these materials.

Even where the Lawmakers have not plainly waived a privilege, their log makes little effort to meet their burden of showing that the relevant privilege applies. Their privilege log asserts legislative privilege over hundreds of responsive documents, including 139 that appear particularly probative of the legislative intent behind SB 1. *See generally* Table A, App244-59 (identifying specific legislative privilege claims disputed by Plaintiffs). But both in the log, and throughout their correspondence with Plaintiffs, the Lawmakers have not explained how these numerous entries meet the well-established standard for asserting state legislative privilege. *See generally* Exs. E-I, App073-157, nor have they explained the basis for their assertion of the investigative privilege, which is typically reserved to executive law enforcement agencies. *See* Table D, App283-85 (identifying assertions of investigative privilege).

On April 28, 2022, Plaintiffs met and conferred with counsel for the Lawmakers in a final effort to resolve these disputes, but both sides agreed that the parties held fundamentally different views with respect to the scope of the legislative privilege. *See* Ex. K (Email Correspondence), App226-27. Because the Lawmakers claim legislative privilege over *every* entry in their privilege log, the parties agreed that it did not make sense to revisit other disputed privilege claims, as each would still turn on disputed claims of legislative privilege. *Id.* For the reasons explained below, the Court should now compel the Lawmakers to produce: (1) 139 highly relevant legislative documents over which the Lawmakers have failed to justify their assertion of the legislative privilege (Table A, App244-59); (2) 89 documents over which the Lawmakers have waived legislative privilege (Table B, App260-76); (3) 41 documents over which the Lawmakers have

improperly asserted, and likely waived, attorney-client privilege or work product protection (Table C, App277-82); and (4) 11 documents over which the Lawmakers improperly assert an investigatory privilege (Table D, App283-85).

## LEGAL STANDARD

The scope of discovery, including third-party discovery, is broad. Parties are "entitled to use a Rule 45 subpoena to 'obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.'" *Shields v. Eleveated Energy Sols., LLC*, No. 3:19-CV-00390, 2020 WL 5658499, at *2 (S.D. Tex. Sept. 23, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). The recipient of a subpoena resisting the production of responsive materials has "[the] burden to establish that any documents subject to the [s]ubpoena are protect[ed] by" any asserted privilege. *Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 601 (N.D. Tex. 2017). The Federal Rules require the party asserting privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege. *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

Refusing to produce responsive materials based on deficient claims of privilege constitutes "an evasive or incomplete disclosure, answer, or response" and "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The requesting party may "move for an order compelling disclosure or discovery" with "notice to the other parties and all affected persons," after "in good faith conferr[ing] or attempt[ing] to confer with the person failing to make disclosure or discovery in an effort to obtain it without court action." *Id*. § 37(a); *see also id* § 45(d)(2)(B)(i) (permitting serving party to "move the court . . . for an order compelling production or inspection"

after commanded party serves objections). Such motions to compel production should be granted when the party resisting discovery fails to properly invoke a claimed privilege. *See Exxon Corp. v. Dep't of Energy*, No. CA3-75-0836-W, 1980 WL 1093, at *1 (N.D. Tex. June 4, 1980).

When a "motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

## ARGUMENT

**I. The Lawmakers have failed to meet their burden of showing that key documents relevant to the question of legislative intent are privileged.**

### A. The Lawmakers' blanket assertions of legislative privilege are overbroad in view of the narrow and qualified nature of the privilege.

The Lawmakers have broadly withheld hundreds of documents pursuant to legislative privilege claims, the vast majority of which they justify by asserting without explanation that the documents reveal the "mental impressions" of legislators. *See* Ex. J, App158-224. But that is not a sufficient basis to support their claim—the legislative privilege does *not* create absolute protection for materials revealing legislative intent. To the contrary, "the legislative privilege for state lawmakers is qualified," and courts often require state lawmakers to produce materials reflecting their thoughts and intentions in enacting legislation. *Gilby v. Hughs*, 471 F. Supp. 3d 763, 766 (W.D. Tex. 2020) (granting motion to compel); *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) (noting case law has "reinforced the qualified nature of the legislative privilege"); *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (explaining that "the legislative privilege for state lawmakers is, 'at best, one which is qualified'" (quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y.

2003), *aff'd,* 293 F. Supp. 2d 302 (S.D.N.Y. 2003))); *see generally Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("*Jefferson*") (discussing the qualified and limited nature of the legislative privilege).

Courts within this district and the Fifth Circuit have repeatedly explained that the privilege "is strictly construed and accepted only to the limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Gilby*, 471 F. Supp. 3d at 766; *see also Perez*, 2014 WL 106927, at *2 (similar); *Veasey*, 2014 WL 1340077, at *2 (similar). The Lawmakers cannot use this narrow privilege to categorically refuse to produce broad swathes of highly relevant documents. Such materials are critical to "ascertaining [the] truth" behind why these Lawmakers enacted the voter suppression legislation at issue in this case, and no "public good" is served by suppressing their production. *See Trammel v. United States*, 445 U.S. 40, 50 (1980).

**B.      The Court should compel production of 139 particularly relevant documents over which the Lawmakers have failed to establish privilege.**

While the legislative privilege claims are nearly all deficient on their face, Plaintiffs ask the Court to specifically compel production of 139 highly relevant documents identified in Table A, App244-259. Based on the descriptions in the privilege log, these documents appear most likely to be probative of the Lawmakers' intent in enacting SB 1. The Lawmakers' assertions of legislative privilege over these documents are judged using a balancing test of five factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Perez*, 2014 WL 106927, at *2 (citing *Rodriguez*, 280 F. Supp. 2d at 101); *see also Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246-CWR-FKB,

2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) ("Courts in the Fifth Circuit examining the extent to which state legislative privilege is qualified have cited *Rodriguez*, or cases stemming from it, as providing the relevant analysis and law." (collecting cases)). Here, these factors weigh in favor of disclosure of the documents referenced in the challenged entries listed in Table A.

Factor one—the relevance of the evidence—strongly weighs in favor of compelling disclosure. The Lawmakers cannot dispute that the documents included on their privilege log are relevant to this case. Indeed, privilege logs are only necessary to identify information withheld that is "otherwise discoverable." Fed. R. Civ. P. 26(b)(5). Lawmakers' counsel also previously represented to Plaintiffs that these records are among the "roughly 1,700" "responsive documents" identified by the Lawmakers. Ex. G, App085.

The entries in question also directly concern the legislation at issue in this case or related election bills containing substantively similar provisions to those at issue here. *See, e.g.*, Table A, App244-59, Entries 6 (notations from Rep. Cain regarding SB 7), 56 (comments and notes from Sen. Hughes regarding SB 7), 73 (chart from Sen. Hughes comparing SB 1 and HB 3). These materials are not merely relevant within the broad scope of Rule 26(b)(1); as the Lawmakers' own descriptions reveal, they speak directly to a key issue of this litigation—the Texas legislature's intent in passing the suppressive measures in SB 1. *See* Table A, App244-59 (repeatedly describing documents as "revealing mental impressions" of the Lawmakers or others in their offices).

Courts in this district and the Fifth Circuit assessing legislative privilege claims have previously determined that "legislative or administrative history may be highly relevant" in election law cases, "especially where there are contemporary statements by members of the decisionmaking body." *Gilby*, 471 F. Supp. 3d at 766 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). Such evidence is "highly relevant . . . because it bears

directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting" challenged legislation. *Veasey*, 2014 WL 1340077, at *2 (further explaining that "[t]he motive and intent of the state legislature when it enacted SB 14 is the Crux of this Voting Rights Act case"). This case is no exception.

The second factor, which considers the availability of other evidence, also weighs in favor of compelling disclosure because the legislature's intent inherently resides with legislators themselves in records of their contemporaneous discussions and impressions. That is particularly true when such non-public thoughts and discussions are likely to reveal discriminatory intent. Courts have repeatedly noted the inherent difficulty in gleaning such intent from other sources. *See, e.g.*, *Veasey*, 2014 WL 1340077 at *2 (stating that because legislators were unlikely to speak publicly of a "desire to discriminate against a racial minority" this factor weighed in favor of disclosure); *Baldus v. Brennan*, No. 11-CV-1011-JPS-DPW, 2011 WL 6122542, *2 (E.D. Wis. Dec. 8, 2011) (stating the "unique" nature of legislative evidence favored disclosure and finding no legislative privilege in a VRA case). Plaintiffs have alleged that the Lawmakers passed SB 1 with an intent to discriminate against voting groups they disfavor, and Plaintiffs are therefore entitled to examine the most probative evidence revealing what motivated the Lawmakers. That evidence, as identified in Table A, can only be obtained from the Lawmakers.

The third factor, the seriousness of the litigation and the issues involved, favors compelled disclosure. "At the root of the present controversy is the right to vote—a 'fundamental political right' that is 'preservative of all rights.'" *Williams v. Rhodes*, 393 U.S. 23 (1968) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). Given the significance of the right to vote, courts weighing this factor in voting rights cases routinely find such matters sufficiently "serious" to compel discovery from lawmakers. *See, e.g.*, *Benisek v. Lamone*, 263 F. Supp. 3d 551, 555 (D.

Md.), *aff'd*, 241 F. Supp. 3d 566 (D. Md. 2017) (describing voting rights as an "important federal interest" and finding that non-party legislators were not entitled to legislative privilege in a voting rights case); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 341 (E.D. Va. 2015) (stating of voting rights cases that "there is no more foundational right than meaningful representation" and that "[t]his factor weighs heavily in favor of disclosure" (collecting cases)). "[T]he importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated." *Veasey*, 2014 WL 1340077, at *2. This litigation seeks to do exactly that, making this case one of utmost seriousness.

As for the fourth factor—the role of the government in the litigation—the state government's direct role in the events at issue favors compelled disclosure. *Veasey*, 2014 WL 1340077 at *2; *see also Benisek*, 263 F. Supp. 3d at 554 ("[T]he legislature's decision-making process lies at the core of Plaintiffs' case, and the legislature's direct role in the precipitating events of the instant litigation supports overcoming the legislative privilege."). Here, the Texas Legislature was a direct and predominate actor in the events leading up to this suit. Evidence of the Lawmakers' intent is both highly relevant and resides uniquely within the possession of the Lawmakers themselves. The direct role these government actors played in the present litigation requires that they release responsive material. *See Veasey*, 2014 WL 1340077, at *2 (concluding the "motive and intent of the state legislature when it enacted SB 14 is the crux of this Voting Rights Act case" and ordering disclosure).

Finally, any risk of spooking Lawmakers or their employees is tempered by the fact that the Texas legislature has frequently run afoul of voting rights protections and has on numerous occasions been compelled to turn over communications. That history of compelled disclosure did not dissuade the Lawmakers here from pursing discriminatory voting legislation or creating

contemporaneous records revealing their purpose. The Lawmakers have little credible claim that release of legislative materials here will render them too "timid" to pursue similar legislation once again in the future. Regardless, any modest impact that disclosure will have on the Lawmakers' future willingness to enact discriminatory legislation is significantly outweighed by the relevance of the materials here and the seriousness of the litigation at hand. *See Veasey*, 2014 WL 1340077, at *3 (concluding first four factors outweighed concern of legislative timidity).

Because legislative intent is central to this case, this balancing test requires disclosure of those documents which uniquely reflect the thoughts of the Lawmakers. The documents Plaintiffs seek do just that: they "reveal[] [the] legislator's mental impressions" or disclose similar kinds of information relevant to the Lawmakers' intent. *See generally* Table A, App244-59. Similarly, Plaintiffs seek "handwritten notes" that are likely to reflect the Lawmakers' contemporaneous thoughts about SB 1. *See, e.g.*, *id.*, Entries 3, 5-12, 29-34, 36-38, 41, 47-49, 51-52, 59. Because the five *Perez* factors weigh strongly in favor of disclosure, Plaintiffs' motion to compel the production of these relevant records should be granted.

## II. The State Lawmakers' refusal to produce responsive materials is not justified by the federal Constitution's Speech and Debate Clause or any state law privilege.

Rather than defend the merits of their legislative privilege assertions, the Lawmakers have instead repeatedly pointed to inapt legal authority to justify their withholdings. For example, the Lawmakers have repeatedly cited to the Supreme Court's decision in *Gravel v. United States*, 408 U.S. 606 (1972), during the conferral process with Plaintiffs. *See* Ex. E, App075; Ex I, App098, 114, 130, 146. According to them, *Gravel* creates an omnibus "legislative privilege that protects anyone acting in a legislative capacity, including staff, from incurring civil liability for, or testifying about, legislative acts." Ex. E, App075. But *Gravel* considered protections afforded to *federal* legislators, and not state legislators. *Gravel*, 408 U.S. at 608-609. Indeed, the *Gravel* court

grounded its holding in the Speech and Debate Clause of the United States Constitution, which "is confined to federal legislators" and affords no protection to state legislators. *United States v. Gillock*, 445 U.S. 360, 374 (1980); *see also Cole v. Gray*, 638 F.2d 804, 810 (5th Cir. 1981) ("[T]he Supreme Court has unequivocally ruled that the embrace of the clause does not extend to a state legislator." (citing *Gillock*, 445 U.S. 360)); *Bethune-Hill*, 114 F. Supp. 3d at 334 (finding that "both state legislative immunity and privilege are not founded on the United States Constitution, but rather are based on an interpretation of the federal common law" and concluding that state legislators were not entitled to legislative privilege in a voting rights case). Unlike the privilege claims available to federal legislators, "a state legislator's privilege is qualified, not absolute; a state legislator's privilege is not coterminous with the privilege of a member of Congress under the Constitution's Speech and Debate Clause." *Florida v. United States*, 886 F. Supp. 2d 1301, 1303-1304 (N.D. Fla. 2012). The Lawmakers' view that *Gravel* establishes a complete privilege for state legislators is also incompatible with extensive case law within this circuit, subsequent to *Gravel*, explaining that the privilege for state legislators is narrow and qualified. *See supra* at 7-8. In short, *Gravel* addresses a different class of legislators protected by a different source of privilege.

Unable to rely on a federal constitutional privilege, the Lawmakers fall back on Texas Government Code § 323.017, which protects certain communications by legislators under state law. Ex. E, App075; Ex. I, App100-09, 116-25, 132-41, 148-57. But that state statute does not govern in this federal proceeding. Rather, the Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1. The assertion of legislative privilege in a federal proceeding is thus "governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence." *Jefferson*, 849 F.3d at 624 (quoting *Perez*, 2014 WL 106927, at *1); *see also Willy v. Admin. Rev. Bd.*, 423 F.3d 483,

495 (5th Cir. 2005) ("Questions of privilege that arise in the course of adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)).

Plaintiffs exclusively assert federal causes of action in a federal venue. *See* Second Am. Compl. at ¶¶ 249-294, ECF No. 207. Any assertion of legislative privilege in this proceeding is thus governed exclusively by federal rules and statutes. *See ACLU of Miss., Inc. v. Finch*, 638 F.2d 1336, 1342 (5th Cir. 1981) (finding state privilege law did not apply "[s]ince the only claims and defenses asserted here related to federal section 1983 claims"); *Harding v. Cnty. of Dall.*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *9 (N.D. Tex. Dec. 23, 2016) ("Because plaintiffs bring their claims under federal law (the VRA and the Equal Protection Clause of the Constitution), the court applies federal, rather than state, law of privilege.").

State law is relevant to a claim of privilege only to the extent allowed by the Federal Rules of Civil Procedure or to the extent state law governs a claim or defense. Simply put, because this case exclusively concerns federal claims raised in a federal venue, any state law privilege created by Texas statute does not apply. *See United States v. Moore*, 970 F.2d 48, 50 (5th Cir. 1992) (holding that in "a federal case in which the IRS is seeking to enforce a summons issued under federal statutory authority" that "Louisiana law does not control" under Rule 501); *Finch*, 638 F.2d at 1342 (agreeing that Mississippi statutory privilege "does not apply in federal court of its own force" and applies only to the extent the Court adopts it as a matter of federal common law); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, No. A-08-CV-675-LY, 2011 WL 13274196, at *2 (W.D. Tex. Dec. 9, 2011) (noting state board's concession that Texas statutory privilege

"does not apply in federal court of its own force" under Rule 501).[2] Section 323.017 of the Texas Government Code offers no support to the Lawmakers' claims of legislative privilege here.

## III. The privilege log reveals many waivers of legislative privilege on its face.

Even if the Lawmakers' claims of legislative privilege did not fail on the merits, or could be supported by a constitutional or state-law claim of privilege, many of their assertions are waived regardless. The Lawmakers have improperly withheld at least 89 documents under a claim of legislative privilege despite their privilege log making clear that these claims were waived through disclosure to third-parties. *See* Table B, App260-76 (detailing instances where log reveals disclosure to parties outside the legislature). Numerous documents, for example are described as being received "from a third party not employed by the legislature." *Id.* at Entries 2-4, 43-44, 50-53. Many others reflect various kinds of "[c]orrespondence from constituents to [a] legislator's staff." *Id.* at Entry 29; *see also id.* at Entries 30-35. Some entries even identify by name private individuals with whom materials were shared. Alan Vera, for example, is the chairman of the Ballot Security Committee of the Harris County Republican Party, and not a legislator. Yet the Lawmakers assert that 14 communications with him are entitled to legislative privilege. *Id.* at Entries 13, 17, 18-21, 29-36. That is not appropriate. The Lawmakers cannot refuse to produce materials they have already shared with those outside the legislative branch.

The legislative privilege exists only for communications between legislators and legislative staff. Documents sent to or by non-legislators, such as constituents, party activists, or members of

---

[2] To the extent the Lawmakers argue that this Court should adopt Texas's statutory privilege as a matter of federal common law, the Court should reject that argument. As discussed, precedent governing the assertion of legislative privilege within this Circuit is well-developed. *See supra* at 7-12. The Court should not permit the state to displace that precedent through its own statutory enactments. *See McDonnel Grp., L.L.C. v. Great Lakes Ins. SE,* 923 F.3d 427 (5th Cir. 2019) ("Although quite elemental to say, it is relevant here to point out that under our constitutional system, federal law . . . [is] the supreme law of the land . . .").

the executive branch, are not similarly protected. "To the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.*, party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Perez*, 2014 WL 106927, at *2; *Gilby*, 471 F. Supp. 3d at 767 (same); *TitleMax of Tex., Inc. v. City of Dall.*, No. 3:21-CV-1040-S-BN, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022) (similar); *Bryant*, 2017 WL 6520967, at *7 (similar).[3]

Rather than grapple with this substantial body of case law within the Fifth Circuit, the Lawmakers rely upon out-of-circuit precedent to defend their refusal to produce materials already shared beyond the legislative sphere. *See* Ex. L (Email Correspondence), App232-43. But the cases they cite are flatly inconsistent with the Fifth Circuit's admonition that the privilege must be "strictly construed." *Jefferson*, 849 F.3d at 624 (quoting *Perez*, 2014 WL 106927, at *1). Nor are they consistent with the many decisions within this circuit concluding the privilege is waived when materials are shared with non-legislators. One decision they cite, *Puente Ariz. v. Arpaio*, 314 F.R.D. 664 (D. Ariz. 2016), conflated the *federal* legislative privilege with the *state* legislator privilege at issue here, a flaw noted by at least one court within this circuit. *See Bryant*, 2017 WL 6520967, at *8 (discussing flaws in *Puente Arizona* and reaffirming privilege is "waived" over materials "shared with third parties"). The Lawmakers have not explained how their view of waiver is consistent with the law of this circuit.

---

[3] The Lawmakers suggested in correspondence that the legislative privilege "extends to 'officials outside the legislative branch' when such officials 'perform legislative functions.'" Ex. I, App098, 114, 130, 146. But that is not correct. The cases they cite for that claim each concerned legislative *immunity* from suit, not legislative *privilege* against testifying or producing records. *See Bogan v. Scott-Harris*, 523 U.S. 44, 45 (1998) ("Officials outside the legislative branch are entitled to legislative *immunity* when they perform legislative functions." (emphasis added); *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980) (discussing "absolute legislative immunity" from suit but not legislative privilege). Plaintiffs do not dispute that the Lawmakers are immune from suit and have not named them as Defendants here.

The Lawmakers have also wrongly withheld at least 28 documents that were shared with other branches of government in Texas. Among those recipients are Keith Ingram, the director of the elections division of the Secretary of State's office; Jonathon White, the chief of the Attorney General's election integrity division; Ryan Fisher, also of the Office of the Attorney General; and Alix Morris, the Deputy General Counsel of the Office of the Lieutenant Governor, whose name appears in the log at least 24 times. *See* Table B, App260-76, Entries 55-57, 59-72, 74, 76, 79-83, 87. Asserting privilege over legislative materials shared with the executive branch is "inconsistent with the purpose[] of [the] legislative privilege." *Gilby*, 471 F. Supp. 3d at 767 (citing *United States v. Helstoski*, 442 U.S. 477, 491 (1979)). The privilege is intended to protect legislators *from* other branches of government, and communications to the executive branch "from legislators looking to obtain guidance in formulating legislation are not meaningfully different from communications received by constituents from legislators or communications received by lobbyists, think-tanks, or any outsider." *Id.* at 768. Any claim of privilege over materials shared with these "non-legislators" and "non-legislative staff" is waived. *Perez*, 2014 WL 106927, at *2; *see also Gilby*, 471 F. Supp. 3d at 767-768.[4]

These descriptions remove any doubt about whether the documents at issue remained within the legislative confines necessary for privilege to apply. Each privilege log entry in Table

---

[4] The Lawmakers have cited *Texas v. Holder*, 1:12-cv-128, 2012 WL 13070060, at *4 (D.D.C. June 5, 2012), for the claim that a "legislator's request for information to a State agency regarding pending legislation is subject to the legislative privilege and need not be produced." But, as with their other out-of-circuit citations, this statement does not reflect the rule within this circuit, where the privilege is strictly construed. *See Jefferson*, 849 F.3d at 624. Cases like *Gilby* make clear that this strict construction includes limiting the privilege to materials kept *within* the legislative sphere. *See* 471 F. Supp. 3d at 766-767. But even *Holder* rejects the Lawmakers' broader view of legislative privilege. It held that "communications between legislators and constituents, lobbyists, and interest groups are not entitled to protection under a legislative privilege." *Holder*, 2012 WL 13070060, at *4. As explained, many of the records withheld by the Lawmakers are those shared with constituents and party activists and *Holder* supports compelling the release of those materials.

B indicates, on its face, that the underlying record strayed beyond the boundaries of the legislature and its legislative process. The Lawmakers have waived any claim to legislative privilege over such materials, which must be produced in response to Plaintiffs' subpoenas.[5]

## IV. The Lawmakers have improperly asserted claims of attorney-client privilege and the work product doctrine.

The Lawmakers' privilege log also includes documents improperly withheld under the attorney-client privilege and work product doctrine. The log itself reveals that many claimed instances of the attorney-client privilege concern communications the Lawmakers had with third parties, again waiving any privilege. Likewise, many asserted claims of the work product doctrine concern materials not plausibly prepared in anticipation of litigation. The Court should compel the Lawmakers to produce these records. *See* Table C, App277-82 (identifying improper and waived claims of attorney-client privilege and improper work product protection claims).

### A. The privilege log reveals waiver of certain attorney-client privilege claims.

Attorney-client privilege protects communications between an attorney and a client or prospective client made for the purpose of obtaining an opinion on law, legal services, or assistance in a legal proceeding. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). "The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege." *Id.* at 134. A "party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party[.]" *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2016 WL 8677303, at *2 (W.D. Tex. Dec. 30, 2016). "[T]he party asserting the attorney-client privilege must prove that waiver by

---

[5] The Lawmakers assert additional privileges over a number of the documents identified in Table B, including attorney-client privilege, work product protection, and the investigative privilege. But for the reasons set forth in Sections IV and V, those claims of privilege are similarly improper or waived.

breach of confidentiality did not occur." *Ferko*, 218 F.R.D. at 134 (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

The Lawmakers have asserted attorney-client privilege over several dozen documents which were received from or shared with individuals or entities outside of the attorney-client relationship. *See* Table C, App277-82. In more than 20 instances the log reveals that the supposedly privileged communication was shared with Deputy Counsel Morris or other members of the Lieutenant Governor's office. *Id.* at Entries 10-25, 27, 29-33, 38-39. Just as divulging records or communications with third parties waives any legislative privilege, so too does it waive any attorney client privilege or work product protection claim. *See, e.g.*, *Finalrod IP, LLC v. John Crane, Inc.*, No. MO:15-CV-097-DC, 2019 WL 13074600 (W.D. Tex. Mar. 22, 2019) ("Generally, when privileged information is divulged to a third party, attorney-client and work-product protection cease to exist."); *Ferko*, 218 F.R.D. at 134 ("[A] client's disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents.") (citing *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992)). The Court should compel the Lawmakers to produce the records identified in Table C.

The Lawmakers have also improperly asserted attorney-client privilege over documents shared with the Office of the Attorney General ("OAG"). *See* Table C, App277-82, Entries 9, 33-36, 40. The OAG "does not represent all individual legislators." *Perez v. Perry*, No. SA 11-CV-360 OLG JES XR, 2014 WL 12479575, at *1 (W.D. Tex. July 11, 2014). And the Lawmakers have not established that an attorney-client relationship existed between them and OAG at the time of these communications, all of which predate this litigation.

Attorney-client privilege similarly does not automatically attach to communications between the Lawmakers and the Texas Legislative Council, a legislative agency whose duties are

primarily non-legal. *See* Texas Gov. Code § 323.006(a) (identifying duties such as "assist[ing] the legislature in drafting proposed legislation" and "study[ing] and investgat[ing] the functions and problems of state departments, agencies, and offices"); *see also Texas v. United States*, 279 F.R.D. 24, 30 (D.D.C.) (concluding "[m]any" of the Texas Legislative Council's duties "are non-legal"), *vacated in part,* 279 F.R.D. 176 (D.D.C. 2012);[6] *Gomez v. Tex. Dep't of State Health Services*, 2016 WL 3382690 (W.D. Tex. 2016) (similar). Nonetheless, the Lawmakers seek to withhold numerous communications with the Council without establishing that these communications were with an attorney providing legal advice. *See* Table. C, App277-82, Entries 10-11, 14-20, 24, 28-30, 37-39; *see also Texas v. Holder*, No. CV12128DSTRMCRLW, 2012 WL 13070059, at *2 (D.D.C. May 21, 2012) (requiring Texas to produce new privilege log over Council documents where it was not clear "whether an *attorney* sent or received the allegedly privileged communication, let alone whether the attorney was *acting as an attorney* with respect to that communication"). But because "Texas offers no evidence to satisfy the elements of an attorney-client relationship between the Council and the Legislature," the underlying communications cannot be withheld. *Texas*, 279 F.R.D. at 34 (requiring production of memoranda produced by Council for legislators).

Nor have the Lawmakers shown that these communications served a privileged purpose, such as obtaining a legal opinion, legal services, or assistance in a legal proceeding. For example, the log contains descriptions such as "Correspondence between legislaor (sic) and Office of the Attorney General staff related to solicited information about incidents of voting misconduct . . ."

---

[6] Judge Collyer subsequently vacated portions of this decision because "in light of the Court's Memorandum Opinion and Order," the state of Texas "obtained waivers from relevant members of the Texas State Legislature regarding any alleged attorney-client relationship they may have with the Texas Legislative Council." *Texas v. United States*, 279 F.R.D. 176, 176 (D.D.C. 2012). After agreeing "to produce discovery pursuant to this waiver," Texas asked for, and Plaintiffs consented to, vacatur of the court's earlier opinion.

Table C, App277-82, Entries 35, 36. Another entry describes correspondence between legislative staff and the OAG "concerning an election complaint, considered when drafting legislation." *Id.*, Entry 34. These explanations describe little more than the Attorney General sharing the results of past investigations into allegations of voting misconduct with legislators. But merely conveying data or details about a past election complaint is not providing a legal opinion or service. *See Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000) ("A party's knowledge of facts, from whatever source, is not privileged" (quoting *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 428 (S.D.N.Y. 1994)); *id.* ("the privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client" (quoting *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.), Inc.*, 111 F.R.D. 76, 80 (S.D.N.Y. 1986)). Nor does the log indicate these communications concerned assistance in a legal proceeding. Instead, it appears these communications were made for purposes of "drafting legislation," not for litigation. Table C, App281, Entry 34. Without a privileged purpose, no privilege exists.

Because the Lawmakers have failed to preserve confidentiality over communications they now claim as privileged, and further made many of the communications for no privileged purpose, the Court should compel disclosure of the documents listed in Table C.[7]

### B. The Lawmakers have improperly invoked the work product doctrine to shield documents not prepared in anticipation of litigation.

The Lawmakers have also made dozens of inappropriate claims of work product protection. *See* Table C, App277-82, Entries 1-8, 10-11, 14-30, 32-33, 35, 37-41. The work product doctrine

---

[7] As with Appendix B, the Lawmakers assert additional privilege claims over many of the documents in Appendix C. But these claims are without merit for the reasons discussed in Sections I-III (addressing legislative privilege), Section IV.B (addressing work product protection), and Section V (addressing investigative privilege).

limits a party's ability to obtain through discovery "things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "The purpose of the work-product doctrine is to promote the adversary system. It does this by ensuring that an adversary cannot obtain materials that his opponent has prepared in anticipation of litigation." *Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Mo. 1993). "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer, however. The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from work product materials . . . are [m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation . . . ." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (internal quotations omitted) (citing the Advisory Committee notes to Fed. R. Civ. P. 26(b)(3)(A)).

The Lawmakers' assertion of the work product doctrine should be rejected for at least two reasons. First, the Lawmakers are not, and by law cannot be, parties to litigation regarding SB 1. While the legislative *evidentiary* privilege is qualified, legislative immunity from criminal and civil liability for official acts—such as enacting SB 1—is absolute. "Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). Because the Lawmakers cannot be parties to this litigation as a matter of law due to legislative immunity, and thus face no prospect of ever being parties to this or any similar action, work product protection does not attach to their records. Even if the Lawmakers *could* be parties to related litigation, that would still not permit them to assert the protection here. "Federal courts have repeatedly held that a non-party witness may not invoke work product protection to preclude production of materials

prepared by or for that witness, even if created in contemplation of the witness's own pending or anticipated litigation." *Smith v. Fifthian*, No. CIV.A. 03-2076, 2006 WL 548529, at *1 (W.D. La. Mar. 2, 2006) ("The work product immunity, as set forth in Federal Rule of Civil Procedure 26(b)(3), does not protect documents prepared by or for a non-party.").

Second, the assertion of the work product doctrine fails because, as the log reveals, the documents were prepared for *legislation*—not litigation. Even if it was foreseeable at the time that such materials *might* be relevant to litigation, the Fifth Circuit has held the protection only applies where "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davi*s, 636 F.2d 1028, 1039 (5th Cir. 1981); *see also In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (same). It does not extend to materials otherwise "assembled in the ordinary course of business." *Soto v. Liberty Mut. Fire Ins. Co.*, No. A-06-CA-819 AWA, 2007 WL 9710181, at *3 (W.D. Tex. May 23, 2007).

The materials over which the Lawmakers now assert work product doctrine were created for the purposes of enacting SB 1 or similar election law legislation, and not for the primary purpose of aiding future litigation. For example, one document is described as an "[a]ttachment to correspondence between private attorney and legislator's staff containing a draft of SB7 with notes, markings, and track changes that reveal mental impressions" (*see* Table C, App281, Entry 32). But a bill mark-up's primary purpose is for enacting legislation, not preparing for litigation. Many other log entries show similar *legislative* purposes. For example, one document is described as a "chart" prepared for "legislator's use at Conference Committee." (*see id.* at 282, Entry 41). By the Lawmakers' own admission, such documents were not prepared in anticipation of litigation, but rather in the course of the regular business duties of the legislature as carried out by the Lawmakers. These materials all "would have been created without regard to whether litigation was expected to

ensue" and thus were "made in the ordinary course of business and not in anticipation of litigation." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004). The work product doctrine therefore offers the documents identified in Table C no protection.

## V.    The Lawmakers may not assert investigative privilege.

Finally, the Lawmakers have claimed that 11 documents are protected by the investigative privilege.[8] That privilege, however, is not applicable to this case.

Investigative privilege protects material gathered for law enforcement. But asserting that privilege is traditionally the prerogative of the executive branch, which is charged with law enforcement responsibilities. The Fifth Circuit has recognized that the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, n.1 (5th Cir. 2006) (citing *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988)). There is no precedent within the Fifth Circuit recognizing an "investigative privilege" for legislators or their staff. Because the Lawmakers have offered no explanation as to how they are able to assert a privilege intended for law enforcement, this Court should compel productions of any documents withheld based on the improperly asserted investigative privilege.

Even if the Lawmakers possessed such a privilege, the records over which they assert it do not pertain to law enforcement investigations. Each concerns "correspondence" from "constituents" about alleged "voting misconduct." Table D, App283-85. But a private constituent's thoughts on alleged voting misconduct is plainly not a *law enforcement* matter, nor do the Lawmakers explain how the disclosure of such information would harm any ongoing law enforcement investigation.

---

[8] The Lawmakers also assert that each of these documents enjoys legislative privilege. *See* Table D, App283-85. But each of these legislative privilege claims is waived. *See* Table B, App260-76, Entries 14, 28-37.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully ask this Court to compel the Lawmakers to produce the documents listed in Tables A-D which have been inappropriately withheld from production, and order that the Lawmakersp, their counsel, or both, pay to Plaintiffs their reasonable costs for bringing this motion, including attorney's fees. A proposed order to that effect is attached.

Dated: May 3, 2022

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Haley K. Costello Essig*
Noah B. Baron*
Graham W. White*
Marcos Mocine-McQueen*
Michael B. Jones*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@eliaw.law
hessig@elias.law
nbaron@elias.law
gwhite@elias.law
mmcqueen@elias.law
mjones@elias.law

*Counsel for Plaintiffs*

*Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

On May 3, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Christopher D. Dodge*
Christopher D. Dodge

**LOCAL RULE CV-7(G) CERITIFCATION**

On April 28, 2022, Plaintiffs met and conferred with counsel for the Lawmakers in a final effort to resolve this matter without Court intervention. After meeting and conferring in good faith, the parties agreed that their dispute could not be resolved through additional conference. Plaintiffs indicated during the meet and confer that they were likely to raise the matter with the Court. On May 2, 2022, Plaintiffs confirmed again their intent to raise this matter with the Court.

*/s/ Christopher D. Dodge*
Christopher D. Dodge