# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., *Plaintiffs,* v. GREGORY W. ABBOTT, et al., *Defendants.* | 5:21-cv-844-XR |
| LULAC TEXAS, et al., *Plaintiffs,* v. JOHN SCOTT, et al., *Defendants.* | 1:21-cv-0786-XR |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM TEXAS LAWMAKERS**

**INTRODUCTION**

Plaintiffs' motion explained why well-established federal common law rules within this Circuit support disclosure of a subset of highly relevant documents withheld by Senators Bettencourt and Hughes and Representatives Cain and Murr ("Lawmakers"). *See* Pls.' Mot. to Compel ("MTC"), ECF No. 391. The Lawmakers ignore that on-point precedent, instead demanding that this Court recognize an absolute legislative privilege that runs contrary to Supreme Court and Fifth Circuit law. *See* Defs.' Resp. in Opp. to Pls.' Mot. to Compel ("Resp."), ECF No. 397. The Court should decline the Lawmakers' invitation to reject the clear and binding case law in this Circuit in favor of a motley assortment of authority, much of which the Lawmakers misunderstand. The Lawmakers repeatedly conflate distinct concepts of federal and state legislative privilege—which originate from separate sources of law—as well as principles of legislative immunity, ignoring that distinct standards apply to claims by state legislators. Simply put, the absolute privilege that the Lawmakers claim for state legislative activities does not exist.

The rules regarding waiver of legislative privilege in this Circuit are equally clear, and they require disclosure of materials the Lawmakers shared outside the legislative sphere. The Lawmakers' arguments to the contrary again rely on separate legal doctrines and out-of-circuit case law, all while ignoring this Circuit's own precedent. The same goes for the Lawmakers' waived claims of attorney-client privilege, improper assertions of work product protection, and half-hearted invocation of the investigative privilege.

Despite the Lawmakers' confused arguments, this dispute is simple. The Lawmakers refuse to produce highly relevant documents that are critical to Plaintiffs' claims that the legislature enacted a racially discriminatory law meant to impede Texans from voting. The Lawmakers have not met their burden of showing that privilege applies, and these documents must now be produced.

# ARGUMENT

I. **The Lawmakers have failed to meet their burden of showing that the legislative privilege applies here.**

   A. **The Lawmakers' claim of legislative privilege is governed by Federal Rule of Evidence 501 and the *Perez* factors, which favor disclosure.**

The Lawmakers' assertion of legislative privilege is "governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("*Jefferson*") (quoting *Perez v. Perry*, No. SA-11-CV-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)). While the Lawmakers passingly acknowledge that the current dispute is governed by "[f]ederal common law," Resp. at 5, their brief relies almost exclusively upon cases addressing *different* legal authority. *See infra* § 1.B. That is likely because the federal common law privilege at issue is "at best, one which is qualified," *Jefferson*, 849 F.3d at 624 (quoting *Perez*, 2014 WL 106927, at *2), and must be "strictly construed." *Gilby v. Hughs*, 471 F. Supp. 3d 763, 766 (W.D. Tex. 2020) (noting the privilege is "accepted only to the limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining the truth" (citing *Jefferson*, 849 F.3d at 624)); *see also In re Grand Jury,* 821 F.2d 946, 957 (3d Cir. 1987) ("[S]uch privilege must be qualified, not absolute, and must therefore depend on a balancing of the legitimate interests on both sides.").

"Courts in the Fifth Circuit examining the extent to which state legislative privilege is qualified have cited" the *Perez* factors *"as providing the relevant analysis and law." Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) (collecting cases); *see also Perez*, 2014 WL 106927, at *2. These factors *strongly* support disclosure here. *See* MTC at 8-12.

The Lawmakers offer only token argument under the *Perez* factors, dismissing them as "nebulous" and urging the Court to "not apply that test." Resp. at 8.[1] But they fail to offer any alternative standard for assessing a qualified claim of legislative privilege under Rule 501, demanding instead that the Court recognize an absolute evidentiary privilege that is contrary to Supreme Court and Fifth Circuit law. Their feeble attempt to address the *Perez* factors explains why: when the governing test is applied, their claims fall short.

For example, addressing the first factor, the Lawmakers contend that the documents at issue are not "especially relevant." Resp. at 9. That is wrong—Plaintiffs allege "that a racially discriminatory purpose was a motivating factor in the passage of SB 1," Second Am. Compl. ("SAC") at 52 ¶ 251, ECF No. 207, and documents reflecting the motivations of the law's chief supporters are highly relevant. The suggestion that Plaintiffs "seeks documents about bills they have not challenged" is also a red herring—these documents concern bills that *became* SB 1 and are very relevant to Plaintiffs' claims. *Id.* ¶¶ 93-135, 138, 145-46 (discussing SB 7 and HB 3).

---

[1] In reality, the decision undergirding the *Perez* factors thoughtfully surveyed federal common law and correctly recognized a "qualified legislative privilege." *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95-100 (S.D.N.Y.), *aff'd,* 293 F. Supp. 2d 302 (S.D.N.Y. 2003). The court in turn discussed how considerations governing the related deliberative process privilege might inform assessment of a qualified legislative privilege claim. *Id.* at 100-103. And, in the tradition of the common law, numerous courts have built upon the *Rodriguez* court's analysis to continue developing guiderails for claims of legislative privilege. *See Bryant*, 2017 WL 6520967, at *6 (collecting cases within the Fifth Circuit applying factors). The Lawmakers also argue that courts do not often actually compel discovery over legislative privilege claims. *See* Resp. at § 1.B. But this undermines the Lawmakers' position: courts applying the *Perez* factors sometimes compel disclosure and sometimes do not, reflecting that those factors are fair means for assessing such claims. The same is true of courts within this Circuit, several of which have compelled disclosure over legislative privilege claims in recent years. *See Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014); *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246-CWR-FKB, 2018 WL 3117020, at *1 (S.D. Miss. June 25, 2018), *vacated and remanded on other grounds sub nom. Stallworth v. Bryant*, 936 F.3d 224 (5th Cir. 2019); *Hall v. Louisiana*, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *11 (M.D. La. Apr. 23, 2014); *Harding v. Cnty. of Dall.*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *13 (N.D. Tex. Dec. 23, 2016); *Angelicare, LLC v. St. Bernard Par.*, No. CV 17-7360, 2018 WL 1172947, at *9 (E.D. La. Mar. 6, 2018).

The Lawmakers next suggest Plaintiffs may obtain similar evidence through "the public statements of legislators," Resp. at 10, but that ignores "the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Veasey*, 2014 WL 1340077, at *3 (cleaned up); MTC at 10. The Lawmakers cite *Village of Arlington Heights v. Metropolitan Housing Development Corporation* for the idea that "direct evidence" of discriminatory purpose would "frequently" be barred by privilege. Resp. at 10 (citing 429 U.S. 252, 268 (1977)). That argument undercuts the Lawmakers' broader position that evidence of legislative motivation is *always* barred (Resp. at 5-6) and, regardless, the Supreme Court's discussion there concerned compelling legislator *testimony at trial*, not the production of documentary evidence. 429 U.S. at 268. As courts in this Circuit have recognized, any "sound policy reasons against compelling depositions of high ranking officials do not apply with equal force to the compelled production of documents." *Harding*, 2016 WL 7426127, at *13 (noting this is "especially true when the documents have central relevance" to plaintiffs' claims and cannot be obtained "from other sources").

Turning to the third factor, the Lawmakers suggest Plaintiffs claims are not "serious" because they are "unproven." Resp. at 10-11. That circular argument misunderstands basic aspects of civil discovery; Plaintiffs are not required to substantiate their plausibly-alleged claims *before* engaging in discovery. Rather, they are "entitled to discovery before being put to their proof." *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 669 n.19 (E.D. Tex. 2004) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998)). And any suggestion that this matter is not serious is belied by the enactment of SB 1 itself, which drew nationwide media attention and required numerous special legislative sessions to pass. Plaintiffs' constitutional and Voting Rights Act claims present serious issues, and the Lawmakers give no reason to find otherwise.

The Lawmakers contend the fourth factor weighs against disclosure because Plaintiffs are not a government entity. Resp. at 11. But the fourth factor more broadly looks to "the role of the government in the litigation," not specifically whether the requesting party is a government entity. *Perez*, 2014 WL 106927, at *2; *see also Veasey*, 2014 WL 1340077, at *2 (recognizing that the "motive and intent of the state legislature" in enacting challenged voting law "is the crux of this Voting Rights Act case"). Here, numerous private Plaintiffs sued alongside the United States to enjoin a law adopted by the Texas legislature, led by the Lawmakers. The role of the Lawmakers is inextricable with Plaintiffs' claims. No precedent in the Lawmakers' brief suggests cabining this factor as they suggest, and the factor weighs in favor of disclosure. *See* MTC at 11; *Benisek v. Lamone*, 263 F. Supp. 3d 551, 554 (D. Md. 2017) ("[T]he legislature's decision-making process lies at the core of Plaintiffs' case, and the legislature's direct role in the precipitating events of the instant litigation supports overcoming the legislative privilege.").

Finally, the Lawmakers offer little argument on the fifth factor—"the possibility of future timidity by government employees." *Perez*, 2014 WL 106927, at *2. As explained, documents "withheld on the basis of legislative privilege" have previously been disclosed in voting rights cases in Texas, *Veasey*, 2014 WL 1340077, at *4, without tempering the legislature's willingness to subsequently enact suppressive legislation, *see also* MTC at 11-12. This factor therefore is, at best, neutral and does not outweigh the first four factors. *Veasey*, 2014 WL 1340077, at *3.

In sum, applying the proper legal framework—Rule 501 and the *Perez* factors—calls for disclosure of the documents in Tables A-B.[2]

---

[2] Table C and Table D each contain single documents—DOC_0001059 and DOC_00000477, respectively—not included in either Tables A or B. But the legislative privilege claims made as to those two claims fail because (1) privilege over the first document was waived by sharing it with non-legislator Alan Vera; and (2) the Lawmakers have failed to establish the privilege over the second document for the reasons described in § 1.B. of Plaintiffs' motion.

**B. The Lawmakers' reliance on legislative immunity and the federal Constitution's Speech and Debate Clause is misplaced.**

Resisting the relevant legal framework, the Lawmakers rely almost exclusively upon cases addressing either the federal Constitution's Speech and Debate Clause or absolute legislative *immunity*, rather than *privilege*. That is not appropriate. "The Supreme Court has unequivocally ruled" that the Speech and Debate Clause "does not extend to a state legislator." *Cole v. Gray*, 638 F.2d 804, 810 (5th Cir. 1981) (citing *United States v. Gillock*, 445 U.S. 360, 374 (1980)). Claims of state legislative privilege or immunity are instead governed by federal common law. *Jefferson*, 849 F.3d at 624. And "[w]hile the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." *Id.*

The Lawmakers make little effort to distinguish between these distinct legal concepts, explaining in a footnote only that each is "relevant" to the other. Resp. at 5 n.2. But that claim elides critical differences between each thread of cases. The Supreme Court explained in *Gillock* that the Speech and Debate Clause is "by its terms . . . confined to federal legislators." 445 U.S. at 374. Citing *Tenney v. Brandhove*, the Court there recognized that state legislators enjoy "common-law absolute immunity from civil suit." *Id.* at 372 (citing 341 U.S. 367 (1951)). But the Court explained at length why the historical bases for the Speech and Debate Clause and legislative immunity do not warrant "recognition of an [absolute] evidentiary privilege for state legislators." *Id.* at 374. While acknowledging that "principles of comity command careful consideration" of state legislative privilege claims, the Court nonetheless concluded that "where important federal interests are at stake . . . comity yields." *Id.* at 373; *see also Harding*, 2016 WL 7426127, at *2 (noting "the Supreme Court ruled in *Gillock* that . . . there is no absolute 'evidentiary privilege for state legislators for their legislative acts'" (quoting *Gillock*, 445 U.S. at 373)); *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 763 (S.D. Tex. 2011) (similar). The Lawmakers simply ignore

6

*Gillock*, seeking to collapse these distinct concepts into one "absolute" privilege, but the Supreme Court recognized (even prior to *Gillock*) that state legislators may sometimes be required to give evidence in claims concerning their motives. Resp. 10 (citing *Arlington Heights*, 429 U.S. at 268).[3]

The Lawmakers are therefore wrong in relying on legislative immunity cases like *Tenney* and *United States v. Brewster*, 408 U.S. 501 (1972). Resp. at 5-6. These cases predate *Gillock* and do not address state legislative privilege at all. *Brewster* also concerned the criminal prosecution of a *U.S.* Senator, not a state legislator. *See* 408 U.S. at 525. Myriad other cases cited by the Lawmakers concern either *state* legislative *immunity*[4] or a *federal* legislator's *constitutional* claim of privilege or immunity under the Speech and Debate Clause.[5] But notably what the Lawmakers do not cite or discuss is authority from within this Circuit addressing legislative privilege.

The few actual out-of-circuit legislative privilege cases the Lawmakers do discuss typically confuse the concepts above. *See* MTC at 16. They place special reliance on *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), a case courts within this Circuit have already found to be "inconsistent with the Fifth Circuit view (and apparent majority view) of the legislative privilege as a limited, qualified privilege." *Bryant*, 2017 WL 6520967, at *9 & n.10. *Hubbard* is also wrong on its own

---

[3]Many courts have recognized that *Arlington Heights* "reinforce[s] the qualified nature of the legislative privilege." *Veasey*, 2014 WL 1340077, at *1; *see also Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992); *Hall*, 2014 WL 1652791, at *9; *Bryant*, 2017 WL 6520967, at *5; *Gilby*, 471 F. Supp. 3d at 766.
[4] *See, e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Ct. of Va. v. Consumers Un. of U.S., Inc.*, 446 U.S. 719 (1980); *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391 (1979); *Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015); *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007); *Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007); *Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20 (1st Cir. 1992); *Gov't of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985).
[5] *See, e.g.*; *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975); *Gravel v. United States*, 408 U.S. 606 (1972); *United States v. Johnson*, 383 U.S. 169, 170 (1966); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995); *United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983); *McSurely v. McClellan*, 553 F.2d 1277 (D.C. Cir. 1976); *U.S. v. Dowdy*, 479 F.2d 213 (4th Cir. 1973); *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007).

terms. That case relied upon *Brewster*—which considered a federal legislator's immunity from criminal prosecution under the Speech and Debate Clause—for the proposition that state legislative privilege "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Hubbard*, 803 F.3d at 1310 (quoting *Brewster*, 408 U.S. at 525). That view simply cannot be squared with the Supreme Court's conclusion in *Gillock* that state legislative privilege sometimes must "yield" to federal interests. Other cases relied upon in *Hubbard* addressed either state legislative immunity (*Tenney*) and the Speech and Debate Clause (*Brewster*, *Eastland*), but—again—not state legislative privilege. *See* 803 F.3d at 1310.[6] In contrast, cases within this Circuit make clear state legislative privilege is not co-extensive with the Speech and Debate Clause or absolute legislative immunity.

    **C.**    **Many of the Lawmakers' claims of privilege are waived.**

The Lawmakers do not dispute that many documents sought by Plaintiffs were shared with non-legislators. Resp. at 11-16. That resolves the issue of waiver because to "the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Perez*, 2014 WL 106927, at *2. The Lawmakers fail to address the host of cases adopting this rule. *See* MTC at 16 (collecting cases).

Instead, the Lawmakers again rely on out-of-circuit cases addressing distinct legal concepts. *See supra* nn. 4, 5. Most stand for the unremarkable propositions that communicating

---

[6] Compounding the error still, *Hubbard* acknowledged that *Brewster* involved a federal constitutional "privilege" claim but explained that "it is well-established that state lawmakers possess a legislative privilege that is 'similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause[.]'" 803 F.3d at 1310 n.11 (quoting *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 732 (1980)). *Consumers Union*, however, concerned the absolute "common-law immunity from liability" that "state legislators enjoy," but did *not* address evidentiary privilege. 446 U.S. at 732.

8

with aides, consultants, and other third parties sometimes is necessary to draft legislation. Resp. at 12-16. But none hold that state legislators may refuse to produce such communications when they are critical evidence in civil litigation regarding federally protected rights. Only two cases in the Lawmakers' lengthy discussion of this topic can fairly be read to address waiver of state legislative privilege. One, *Thompson v. Merrill*, extensively relies upon (and was controlled by) the Eleventh Circuit's flawed *Hubbard* decision and is not persuasive for the same reasons. *See* No. 2:16-cv-783, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020); *supra* at 7-8.

The second, *Texas v. Holder*, supports the Lawmakers' view only in part, concluding that legislators do not waive privilege when requesting information from a state agency. *See* No. 1:12-cv-128, 2012 WL 13070060, at *4 (D.D.C. June 5, 2012). That is not the rule within the Fifth Circuit. *See* MTC at 16. Moreover, that court invoked the Speech and Debate Clause and cited two cases addressing that clause—*Jewish War Veterans* and *McSurely*—to support its conclusion, *Holder,* 2012 WL 13070060, at *4, even though state legislative privilege rests in federal common law and not the federal Constitution. The court did not cite any case stating that federal common law extends the legislative privilege to communications with executive state agencies. And *Holder* offers only limited support to the Lawmakers; the Court more broadly held that "communications between legislators and constituents, lobbyists, and interest groups are not entitled to protection under a legislative privilege." *Id.* at *2. Many of the documents at issue here originated with "organizations," *e.g.*, Table B, Entries 5-9; concern "analysis" or "reports" provided by third parties, *id.* Entries 2-4, 10-11; or originated with party activists and constituents, *id.*, Entries 17-21, 29-36. Even under *Holder*, these materials are not privileged.[7] *See also Hall*, 2014 WL

---

[7] The Lawmakers also address so-called "analogous privileges," which sometimes preserve privilege over communications including third parties. Resp. at 16-19. The relevance of this analysis is not clear because each privilege has its own rules and origins.

1652791, at *10 (compelling release of "information, reports or recommendations provided by outside consultants, experts or lobbyists utilized in consideration of the legislation").

Finally, the Lawmakers contend that the Lieutenant Governor ("LG") and his staff are within the scope of any legislative privilege held by the Lawmakers because of his "significant legislative duties." Resp. 19. The Lawmakers cite only one case analyzing a claim of legislative privilege over communications with the LG. *See* Order, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. May 28, 2012), ECF No. 154. That three-judge court—which also relied exclusively on case law discussing state legislative *immunity*—only permitted application of legislative privilege to communications "reflecting the LG's exercise of . . . specific [legislative duties]" set out in the Texas Constitution and the Senate Rules. *Id.* at 5. Those duties included, for example, appointing committee chairs and presiding over the Senate. *Id.* But they did *not*—and *do not*—include drafting, revising, or proposing changes to legislation—the subject of the communications at issue. *See* Table B, Entries, 55-80, 82-83, 87; *see also* Senate Rules for the 87th Texas Legislature, https://senate.texas.gov/rules.php (last accessed May 11, 2022).[8] The Lawmakers make no effort to show that the entries at issue concern the LG's enumerated Senate duties, and what little information is reflected on their log indicates the communications fall beyond those duties.

Further still, nearly all of the entries at issue involve communications between the LG's staff and a "private attorney" outside of both the legislature and the LG's office. *E.g.*, Table B, Entries 59-80, 82-83. Even assuming the LG's staff are within the scope of the legislative privilege

---

[8] The Texas LG has special duties with respect to the Committee of the Whole Senate, and the *Holder* court therefore recognized that his communications with that committee might also be privileged. *Id.* at 6. But nothing in the Lawmakers' log or response suggests the communications here concerned that committee. Further, the Texas LG is a part of the Executive Department, regardless of any greater involvement that he may have in the legislature relative to other vice executives, who also typically have legislative responsibilities. *See* Tex. Const. art. IV, § 1 ("The Executive Department of the State shall consist of," among others, "a Lieutenant Governor"); *see also id.* art. IV, § 16; *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672 (Tex. 1995).

10

when undertaking the LG's duties towards the Senate, "any privilege is waived as to the contents of those specific communications" when shared "with any outsider." *Perez*, 2014 WL 106927, at *2; *see also* MTC at 16 (collecting cases). The presence of a private attorney thus obviates any limited legislative privilege claim available over the LG documents.

II. **The Lawmakers have failed to meet their burden of showing that the attorney-client privilege or work product doctrine applies.**

The Lawmakers concede that they have withheld communications with third parties under attorney-client privilege. *See* Resp. at 21. For the first time, they now allege a "common legal interest," privilege, *id.*, over communications with these "non-legislative third part[ies]." *E.g.*, Table C, Entry 1. But the Lawmakers never asserted a "common legal interest" in either their privilege log or in the months of correspondence between the parties on these issues. That fails to comply with Rule 26(b)(5), which required the Lawmakers to "expressly make the claim" and to offer a description that "will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5); *see also U.S. ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-CV-86, 2019 WL 12875494, at *2 (E.D. Tex. Sept. 17, 2019) (requiring descriptions of common interest assertions in privilege log under Rule 26(b)(5)). Even though the common interest is an extension of the attorney-client privilege, Plaintiffs have had no opportunity to assess the doctrine as part of the Lawmaker's privilege claim. The Lawmakers belated effort to remedy overbroad attorney-client privilege claims is therefore waived. *E.g.*, *Beasley v. Lang*, No. 5:16CV82-DCB-MTP, 2018 WL 2072856, at *4 (S.D. Miss. May 2, 2018) (finding privilege claim waived when made "six months after the requests were propounded" and not included on a privilege log).

Regardless, the Lawmakers have not shown that these third-party communications were in any way related to litigation. *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002). Nor do the Lawmakers make any effort to show that the third parties involved in these communications

actually shared a common legal interest. "It would be an undue extension of the privilege to apply the common legal interest doctrine where the party asserting the privilege has not demonstrated that everyone present shared such an interest." *Perez v. Perry*, No. 11-CV-360, 2014 WL 12479575, at *2 (W.D. Tex. July 11, 2014) (explaining that "mere speculation that everyone at the meeting shared a cognizable common interest is insufficient to establish that the privilege applies").

The Lawmakers further assume that "various legislators (including the [LG]) can have common interests in, for example, the drafting of legislation." Resp. at 21. But again they cite no Fifth Circuit authority extending the common legal interest privilege to non-litigated matters. To the contrary, asserting such an interest requires at least "a palpable threat of litigation." *Newell*, 315 F.3d at 525. Even the *Holder* court—the sole reed upon which the Lawmakers rest their legislative privilege claim with respect to the LG—required Texas to produce "communications between the Lieutenant Governor's office and legislators" over an assertion of attorney-client privilege because the state failed to show the existence of an attorney-client relationship between those offices. Order at 3-4, *Holder*, ECF No. 154. The same outcome is appropriate here.

The Lawmakers also now perfunctorily claim that five communications between their offices and the Office of Attorney General ("OAG") were for purposes of providing "legal advice and recommendations" to the Lawmakers. Ex. K, Decl. Of Jonathan White at 11 ¶¶ 5-6, ECF No. 397-11; Resp. 22. However, several entries reflect that the communications concerned "solicited information about incidents of voting misconduct." Table C, Entries 35-36, 40. Merely asking for and receiving factual information from an attorney does not qualify as a privileged communication: "the privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client." *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000). Further still, the Lawmakers have done nothing to show that an attorney-client relationship existed

12

between themselves and OAG at the time similar communications were made. *See* MTC at 19.

Nor have the Lawmakers substantiated the existence of an attorney-client privilege between themselves and the Texas Legislative Council ("TLC"). *See id.* at 19-20. They rely on a Texas statute setting out the conditions by which a communication between a "legislative agency" and the Lawmakers *could* be privileged. *See* Tex. Gov't Code § 323.017(a). Its relevance is questionable, because "the federal common law of attorney-client privilege" governs this dispute, not state law. *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). Even so, the Lawmakers' response does *nothing* to explain how the TLC communications at issue meet the requirements of § 323.017(b), never mind the requirements for attorney-client privilege. *See* MTC at 19-20.

Finally, as to work product, the Lawmakers contend that non-parties such as themselves may assert the doctrine, *see* Resp. at 23-24, but cite in support only a single out-of-circuit decision that strays from the weight of authority. To the contrary, *Federal Practice and Procedure* cites to nearly a dozen cases expressing the view that "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3)." 8 Federal Practice & Procedure § 2024 & n.49 (3d ed.). The Lawmakers cite to a "but see" portion of that entry discussing a 1983 law review article dissenting from this clear majority view. Resp. 24. Regardless of whether that academic view "has much to commend itself," it does not represent the present state of the law. *See* MTC at 21-22. The Lawmakers also argue, without citation, that "legislative and litigation are not mutually exclusive." Resp. at 24. Fair enough. But the Fifth Circuit requires "the primary motivating purpose behind the creation of the document," to be "to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The Lawmakers do not even attempt to explain how the withheld documents meet this standard. *Id.* The doctrine does not apply.

13

**III.      The Lawmakers have failed to show that investigative privilege applies.**

The Lawmakers continue to assert inchoate claims of investigative privilege. But they have yet to cite a single case where a court has upheld a claim of investigative privilege made by a non-law enforcement agency, never mind a state legislator. Resp. at 24 (citing cases involving the DHS, DOJ, and the New York City Department of Investigation). While they do now sketch out the purpose and scope of the privilege, they make little effort to show that it applies. For example, the Fifth Circuit has explained the investigative privilege "protect[s] government documents relating to an *ongoing* criminal investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 n.2 (5th Cir. 2006) (emphasis added). But all the Lawmakers can muster is an assertion that the information at issue concerns "potential election code violations." Ex. K, Decl. of Jonathan White ¶ 7, ECF No. 397-11. Those "potential" violations appear to be little more than a list of alleged violations compiled by a private citizen, *see* Table D, Entries 1-11; the Lawmakers do not assert that any investigation even *occurred*, much less that one is "ongoing." They make only the half-hearted assertion that disclosure "*possibly* compromise[s] both ongoing and future investigations." Resp. at 24. Such conjecture fails to meet the burden of showing that a privilege applies.

**IV.      LULAC Plaintiffs' motion is timely and well-founded.**

Finally, the Lawmakers use their Background section to air a host of grievances unrelated to this motion that warrant only brief attention. *First*, the non-party Lawmakers complain that LULAC did not produce documents quickly enough in response to requests propounded by actual parties to the litigation. *Id.* at 3. The Lawmakers could not possibly be prejudiced by these unrelated discovery exchanges and, regardless, the Lawmakers also admit that LULAC completed its production of documents before the Lawmakers even filed their response. *See id.* at 4. By contrast, the State has yet to complete its production in response to discovery requests issued in November 2021. LULAC Plaintiffs do *not* take issue with the pace of ongoing productions, but

14

note this merely to emphasize that the *non-party* Lawmakers who were only asked to comply with a limited third-party subpoena miss the full picture and have no claim to prejudice.

*Second*, the Lawmakers contend that LULAC's motion is undercut because its counsel did not attend the depositions of Senator Hughes and Representatives Cain and Murr. *Id.* at 3-4. The Lawmakers are simply wrong. Counsel for other Plaintiffs led the questioning, but counsel for LULAC remotely observed Senator Hughes's deposition—the first of the three Lawmakers to be deposed—on April 19, during which Senator Hughes took broad and aggressive views of legislative privilege that precluded questioning on myriad topics. As a result, counsel for LULAC *on the very next day* requested to meet and confer to address the legislative privilege issues that necessitated the instant motion. App. to MTC ("App.") at 230-231 (May 3, 2022), ECF No. 392.

*Finally*, the Lawmakers contend that the motion to compel is tardy. Not so. As the Lawmakers' own recitation of the facts show, the parties have been engaged in correspondence and conferral on these topics since the Lawmakers first raised objections to Plaintiffs' subpoenas. The Lawmakers attempt to hang their hat on an entirely reasonable one-month gap in the parties' correspondence after the Lawmakers served their 68-page privilege log, which contained over 700 separate entries. Plaintiffs used that time evaluate the merits of these 700-plus privilege claims before moving to seek production of a targeted subset. Most importantly, as the Lawmakers admit, counsel "met and conferred in good faith on this subject, but were unable to come to an agreement regarding their differing positions." Resp. at 3 (citing App. at 226-228); *see also* App. at 229-231 (reflecting that it took three emails to Lawmakers' counsel to schedule final meet and confer). The instant motion therefore concerns a good-faith dispute between the parties on an issue of critical importance to this litigation; it is properly before the Court.

## CONCLUSION

For the reasons above and in their opening motion, Plaintiffs respectfully ask this Court to compel the production of documents listed in Tables A-D and to order the Lawmakers, their counsel, or both, to pay Plaintiffs their reasonable costs for bringing this motion, including fees.

Dated: May 11, 2022

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Haley K. Costello Essig*
Noah B. Baron*
Graham W. White*
Marcos Mocine-McQueen*
Michael B. Jones*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@eliaw.law
hessig@elias.law
nbaron@elias.law
gwhite@elias.law
mmcqueen@elias.law
mjones@elias.law

*Counsel for Plaintiffs*

*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

On May 11, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Christopher D. Dodge
Christopher D. Dodge