IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 5:21-cv-00844-XR [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**MOTION TO MODIFY SCHEDULING ORDER**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................................i

Introduction..........................................................................................................................................1

Standard.................................................................................................................................................1

Background...........................................................................................................................................1

Argument ..............................................................................................................................................3

     I.   Much More Discovery is Required ................................................................................4

     II.  Almost All of the Same Plaintiffs and Defendants are Simultaneously Preparing for Trial in the Consolidated Redistricting Cases................................................................................7

     III. The Proposed Intervenors are Entitled to Participate in Discovery.........................8

     IV. The Extension Will Not Prejudice Plaintiffs...............................................................9

Conclusion ............................................................................................................................................9

Certificate of Service.........................................................................................................................10

Certificate of Conference..................................................................................................................10

i

**INTRODUCTION**

Six months ago, the Court recognized that by requesting such an accelerated schedule, "the plaintiffs are asking . . . everybody[] to do a heck of a lot of work in a short period of time." Hearing Tr. at 35 (Nov. 16, 2021). Discovery in this case closes tomorrow, May 13. And trial is set to begin in under two month, on July 5. *See* ECF 368. Despite the parties' best efforts, it is clear that the current scheduling order does not provide them sufficient time to complete discovery and prepare for trial. As such, the State Defendants respectfully request that the Court modify the scheduling order, extending all deadlines by at least one month. And they also request that the Court call a status conference to discuss these issues at its first convenience.

**STANDARD**

A scheduling order may be modified for "good cause." Fed. R. Civ. P. 16(b)(4). Courts consider four factors in in determining whether to allow a scheduling modification for good cause under Rule 16(b): (1) the explanation for the failure to meet the deadline; (2) the importance of the requested modification; (3) potential prejudice in allowing the modification, and (4) the availability of a continuance to cure such prejudice. *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997). That standard requires the "party seeking relief to show that the deadlines cannot reasonably met despite the diligence of the party needing the extension." *S & W Eners., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1552.1 (2d ed. 1990)).

**BACKGROUND**

Discovery in these cases has proceeded at an extraordinary rate. The State Defendants have responded to discovery requests from all plaintiffs within the compressed discovery schedule, have reviewed and exchanged over 100,000 pages of document production, and have or will conduct over fifty depositions.

1

On December 3, 2021, the United States served its first requests for production. The State Defendants and the United States spent approximately four months negotiating search terms and producing documents. In the process the parties worked down from an initial 205,000 search hits down to 27,950 documents reviewed and produced through March 29, 2022. Private Plaintiffs served Requests for Production on November 29, 2021. The State Defendants and the Private Plaintiffs have thus far spent approximately five and a half months negotiating search terms and producing documents. In the process the parties worked down from an initial 2 million search hits down to 16,889 documents reviewed and produced through May 11, 2022 with additional documents expected to be produced the week of May 16, 2022.

The parties have also been undertaking depositions at a furious pace. Thirty-one depositions were conducted in the month of April alone. An additional 24 depositions were set for dates between May 1, 2022 and the discovery deadline on May 13, 2022. Seven additional deposition are currently set to be conducted after the discovery deadline including: (1) Corporate Representative of LULAC; (2) Lina Hidalgo, Harris County Judge; (3) Tanesa Lee, a fact witness; (4) Christina Adkins with the Texas Secretary of State; (5) Dr. Mark Hoekstra, the State Defendants' expert, and (6) the Corporate Representative of the Texas Secretary of State. The later deposition of Representative Rafael Anchia has also been discussed.

As indicated above, one of the heaviest drags on the expected completion of discovery was the addition of the United States after the framework of discovery was laid out. Much of the resources that would have been used to complete discovery was soaked up complying with the expansive scope of the United States' discovery. One example: State Defendants tasked a dozen attorneys to produce the 100,000 pages of documents to the United State in a timely manner. These attorneys worked almost exclusively on United States discovery during the heart of the deposition schedule. This necessitated a tightly packed deposition schedule that provided little flexibility, particularly when Plaintiffs

disclosed large numbers of additional witnesses shortly before the close of discovery. The United States' presence has also necessitated many more expert depositions than were originally intended. While the United States is entitled to the discovery that they have and are continuing to conduct, the framework of the discovery order turned out to be not robust enough to support its weight.

**ARGUMENT**

Despite the efforts listed above, these cases are simply not ready for trial. First, much more essential discovery is required. In a flurry of amended disclosures, the plaintiffs have listed dozens of new witnesses. The State Defendants are just now learning of these fact witnesses, and have not had the opportunity to depose any of them. Also, many of the plaintiffs have refused to fully comply with the State Defendants' discovery requests, leaving the State Defendants to send deficiency letters and possibly seek Court intervention to obtain the documents to which they are entitled. Similarly, most of the plaintiffs have not even sent the State Defendants a privilege log, so the State Defendants do not even know the existence of additional documents to which they may be entitled.

Second, it is important to place the immense obligations presented by these cases in context with the obligations presented by the consolidated redistricting litigation, *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex.)—which is proceeding at the very same time. Most of the parties here—plaintiffs and defendants alike—are parties to the redistricting litigation. The parties' ability to prepare for trial here is directly related to and limited by their obligations in *LULAC*.

Third, an extension will allow the Republican Committees to exercise their legal rights as intervenors, should their renewed motion to intervene be granted. As equals to the original parties, the Intervenors would be entitled to participate in discovery, as well as all other aspects of the litigation.

Nor would an extension prejudice any party. Quite the contrary. An extension would help all parties organize their claims and defenses, and allow them to conduct additional discovery. And no plaintiff has sought preliminary relief here, so any argument based on current harm would necessarily

fail. There is no principled reason why an extension would prejudice any party.

**I.     Much More Discovery is Required**

Despite the parties' best efforts, much remains to be done. One significant reason for this is that private plaintiffs amended their disclosures on April 18, 2022; April 26, 2022; May 4, 2022; and again, on May 11th, 2022. In so doing, private plaintiffs identified several dozen previously undisclosed persons "likely to have discoverable information that Plaintiffs may use to support their claims and/or defenses":

(1)     Pamela Gaskin;
(2)     Amatullah Contractor;
(3)     Hyunja Norman;
(4)     Rogene Gee Calvert;
(5)     Yi Lu Zhao;
(6)     Ming Fei Zhao;
(7)     Chanda Parbhoo;
(8)     Riazuddin Ahmed;
(9)     Jule Espinoza;
(10)    Wendy Salome;
(11)    Jennifer Martinez;
(12)    Ashley Ford;
(13)    Madeleine Appel;
(14)    Janet Eickmeyer;
(15)    Jeannie Lewis;
(16)    Marian Alexander;
(17)    Judy Alter;
(18)    Toby Cole;
(19)    Joe Potts; and
(20)    Teri Saltzman;
(21)    Cathy Cranston;
(22)    Nancy Crowther;
(23)    Rebecca Yerly;
(24)    Heisha Freeman;
(25)    Lydia Nunez Landry;
(26)    Jennifer Miller;
(27)    Mimi Spier;
(28)    Marc Spier;
(29)    Cynthia Edmondson;
(30)    Susan Pantell;
(31)    Tanesa Lee;
(32)    Peggy Ingram;
(33)    Deion Dorsett;
(34)    Penni Lemonn;

| | | | |
|---|---|---|---|
| (35) | Dave Chapple; | (40) | Luis Perales; |
| (36) | Weendie Noriega; | (41) | Esmeralda Perales; |
| (37) | Yolanda Ross; | (42) | Cris Rocha; |
| (38) | Jessica Anderson; | (43) | Jeanette Longoria; and |
| (39) | Remi Garza; | (44) | Paulita Sanchez.[1] |

Under the current Amended Scheduling Order, the deadline by which to complete discovery is May 13, 2022. *See* ECF 368 at 2. But "[w]ritten discovery requests are not timely if they are filed so close to the deadline that under the Federal Rules of Civil Procedure the response would not be due until after the deadline." *Id.* Therefore, the last day by which the State Defendants could serve written discovery was April 13, 2022. Because Private Plaintiffs' disclosures were amended to add persons likely to have discoverable information after that date, State Defendants were never afforded the opportunity to conduct written discovery on those individuals. Furthermore, State Defendants have not had the chance to depose these newly disclosed individuals.

This is not even to mention the deficiencies in the discovery that has already been well underway yet remains to be completed. Due to the ultra-compressed discovery timeline, the State Defendants have not had enough time to fully evaluate the extent to which deficiencies exist in the discovery responses they have received to date. Thus far, however, the State Defendants have identified a number of such deficiencies.

To begin with, LULAC's production has been woefully inadequate and late. On March 24, 2022, State Defendants sent LULAC a deficiency letter. In that letter, the State Defendants notified

---

[1] To be sure, the United States claims that Amatullah Contractor, Hyunja Norman, and Pam Gaskin were listed on one of its supplemental disclosures served in April. Regardless, the private plaintiffs only days ago disclosed these fact witnesses; and these parties' intent to rely on these fact witnesses is new information to the State Defendants. And to the extent that *other parties* intend to rely on those witnesses, the United States lacks standing to object to their depositions being taken because the State Defendants are entitled to discovery information the other parties intend to use to support their claims in these cases.

5

LULAC that although they had received LULAC's Objections and Responses to the First Set of Requests for Production on February 22, 2022, LULAC had not yet produced any documents. State Defendants also pointed out deficiencies with the responses. The parties met and conferred on April 6, 2022. Yet by April 27, 2022, LULAC had still failed to produce any documents to State Defendants or resolve the other deficiencies in its answers. Hence, State Defendants sent LULAC another deficiency letter on April 27. Again, State Defendants offered to meet and confer regarding LULAC's failure to produce documents and deficiencies in its responses. On May 5, 2022, LULAC produced a set of documents, but noted that it "anticipate[d] making additional productions over the coming weeks."

Likewise, several other parties have produced documents for the first time only very recently. On May 5, 2022, MALC served its first production of documents in response to the State Defendants' First Request for Production. LULAC and LUPE both produced within the last two weeks as well. As a result, and because their productions do not indicate one way or the other, the State Defendants have not yet been able to discern whether their productions are in response to the first or second sets of requests for production—let alone whether any deficiencies exist. Consequently, the State Defendants do not have time to issue deficiency letters respecting these most recent productions before the discovery cutoff.

Furthermore, some parties have only recently provided State Defendants with a privilege log. On April 4, 2022, the United States made its first production in response to the State Defendants' first request for production. But only a month later, on May 4, 2022, did the United States provide State Defendants with a privilege log associated with that discovery. As a result, State Defendants have only just begun reviewing the sufficiency of that production. For example, just on May 11, HAUL—while making its 10th and 11th productions—served its privilege log for only its 4th production.

6

Then there are productions and privilege logs that are missing altogether. Notably, only on May 12, 2022 did Bexar County Election Administrator Jacquelyn Callanen serve her objections and responses to State-Intervenor Defendants' First Request for Production. Yet the production of documents is still forthcoming, so State Defendants have not had the chance to review the production—let alone determine whether any deficiencies exist in it. Travis County has requested an extension until May 19, 2022 to produce documents responsive to State Defendants' Amended First Set of Requests for Production. Dallas County and El Paso County have requested similar extensions until May 20, 2022. Furthermore, Defendant Kim Ogg has requested an extension to Friday, June 10 because her counsel is in the midst of trial. Finally, LULAC has not yet provided any privilege log. Nor has LUPE. Nor has Mi Familia Vota.

## II. Almost All of the Same Plaintiffs and Defendants are Simultaneously Preparing for Trial in the Consolidated Redistricting Cases

These consolidated cases present an extraordinary volume of obligations on their own. But as the Court may well be aware, nearly all of the parties here are also parties to the consolidated redistricting cases. *See LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex.). The Governor, Secretary of State, State of Texas, United States, LULAC, LUPE, Voto Latino, Mi Familia Vota, OCA-Greater Houston, and many more of the groups who are parties here are also parties there.

Just as here, the plaintiffs in *LULAC* requested an accelerated schedule, with a three-week hearing set to begin this September. Just as here, discovery is proceeding at a breakneck pace. Five of the plaintiff groups have already sent multiple sets of party discovery, and those same plaintiffs have already served at least sixty-five Rule 45 subpoenas. Plaintiffs are also actively seeking to schedule as early as possible. Indeed, just today, when asked to postpone a deposition one week—from May 24 to May 31—counsel for the United States responded that he could not do so due to the need to prepare for the imminent trial here. The State Defendants need not belabor the massive obligations imposed by redistricting litigation, with which the Court is well-acquainted.

7

It cannot be disputed that the preparation and trial of these cases and the redistricting affect one another. To be sure, these cases present important questions relating to the State's new election-integrity law—questions that are independent of those presented by the redistricting litigation. However, the fact remains that the ability to be prepared for trial—both for plaintiffs and defendants—is substantially affected by the presence of the *LULAC* litigation.

The immense obligations required by the consolidated redistricting litigation, in combination with the almost total overlap of party representation among those cases and these, further evidence the need for the current deadlines to be extended.

### III.   The Proposed Intervenors are Entitled to Participate in Discovery

Also, the possibility of the Republican Committees' addition to these cases present meaningful issues relating to discovery and trial. Yesterday, and in light of the Fifth Circuit's decision in *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022), the Republican Committees renewed their motion to intervene. ECF 402.

An "intervenor of right 'is treated as if he were an original party and has equal standing with the original parties.'" *United States v. $4,480,466.16 in funds seized from Bank of America Account*, 942 F.3d 655, 661 (5th Cir. 2019) (quoting *Brown v. Demco*, 792 F.2d 478, 480–81 (5th Cir. 1986)); *see also* Wright & Miller, *Federal Practice and Procedure* § 1920 (An intervenor "is entitled to litigate fully on the merits once intervention has been granted.). He can take all actions an original party can take. He may "move to dismiss," "challenge the subject matter jurisdiction of the district court," and participate in discovery, hearings, and at trial. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985).

Should the Republican Committees' renewed motion to intervene be granted, the Intervenors would be entitled to seek discovery from all the parties, as well as from third parties. They would also be entitled to move to dismiss (or seek judgment on the pleadings on) any of the plaintiffs' claims, or take any other actions they deem appropriate in defense of their legal rights. And yet, at present, the

discovery period closes tomorrow, and the trial date is rapidly approaching. Absent some sort of extension, the Republican Committees will be unable to exercise many if not all of the rights they possess as "equals" with the "original parties." *$4,480,466.16 in funds seized*, 942 F.2d at 661.

In short, the Republican Committees' joining this litigation at this stage poses additional problems to the current scheduling order. Their entitlement to participate in these cases as an equal further confirms the need to extend the present deadlines.

### IV. The Extension Will Not Prejudice Plaintiffs

Finally, no meaningful prejudice will come as a result of an extension. To be clear, the State Defendants do not seek an indefinite extension, or even a long one. Plaintiffs undoubtedly desire their claims to be adjudicated promptly, but an extension will not frustrate that purpose. It will only ensure that parties will try their cases as soon as the cases are *ready* to be tried.

Moreover, there is no particular reason why these claims need to be tried in July instead of August. Although plaintiffs may point to any alleged ongoing harm, they had ample opportunity to seek preliminary relief. They affirmatively chose not to do so. They cannot now argue that these cases present urgent issues that must be decided at the first opportunity.

Despite plaintiffs' opposition to this motion, an extension would actually help all parties—plaintiffs included. It cannot be disputed that the discovery period, and these cases generally, proceeded on an aggressively expedited schedule. An extension of the current deadlines will give all parties additional time to finish discovery and organizes their claims and defenses. It would certainly lead to more focused motions for summary judgment, and a more efficient and orderly trial.

## CONCLUSION

The State Defendants respectfully request that the Court modify the current scheduling order, extending all deadlines by at least one month, and that the Court call a status conference to discuss these issues at its first convenience.

| | |
|---|---|
| Date: May 12, 2022 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov |
| | **COUNSEL FOR DEFENDANTS** |

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 12, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for plaintiffs regarding this motion. Counsel for each of the plaintiff groups indicated they are opposed to the relief sought here.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN