

# United States Court of Appeals
# for the Fifth Circuit

Certified as a true copy and issued
as the mandate on **May 17, 2022**

Attest:
*Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 21-51145

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2022

Lyle W. Cayce
Clerk

**FILED**

MAY 1 7 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST CHURCH; THE ANTI-DEFAMATION LEAGUE AUSTIN, *Southwest, and Texoma*; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN; FIEL HOUSTON, INCORPORATED; MI FAMILIA VOTA; MARLA LOPEZ; PAUL RUTLEDGE;

*Plaintiffs—Appellees*,

*versus*

GREGORY W. ABBOTT, *in his official capacity as Governor of Texas*; ET AL,

*Defendants*,

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants*,

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS; TEXAS ORGANIZING PROJECT; WORKERS DEFENSE ACTION FUND;

*Plaintiffs—Appellees*,

*versus*

JOSE A. ESPARZA, *in his official capacity as Deputy Secretary of the State of Texas*; ET AL,

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants,*

———————————————

HOUSTON JUSTICE; DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS;

*Plaintiffs—Appellees,*

*versus*

GREGORY WAYNE ABBOTT, *in his official capacity as Governor of Texas*; ET AL,

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants,*

———————————————

LULAC TEXAS; VOTE LATINO; TEXAS ALLIANCE FOR RETIRED
AMERICANS; TEXAS AFT;

*Plaintiffs—Appellees,*

*versus*

JOSE ESPARZA, *in his official capacity as the Texas Deputy Secretary of
State*; ET AL,

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants,*

---

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL
RUTLEDGE

*Plaintiffs—Appellees,*

*versus*

GREGORY ABBOTT, *in his official capacity as Governor of Texas*; ET AL,

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

No. 21-51145

*Movants—Appellants*,

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

STATE OF TEXAS; ET AL,

*Defendant*,

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844
USDC No. 1:21-CV-780
USDC No. 5:21-CV-848
USDC No. 1:21-CV-786
USDC No. 5:21-CV-920
USDC No. 5:21-CV-1085

_____

Before OWEN, *Chief Judge*, and HIGGINBOTHAM and ELROD, *Circuit Judges*.

JUDGMENT

4

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, dissenting.

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 25, 2022

No. 21-51145

Lyle W. Cayce
Clerk

FILED

MAY 1 7 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

La Union del Pueblo Entero; Friendship–West Baptist
Church; The Anti-Defamation League Austin,
Southwest, and Texoma; Southwest Voter Registration
Education Project; Texas Impact; Mexican American
Bar Association of Texas; Texas Hispanics Organized
for Political Education; JOLT Action; William C.
Velasquez Institute; James Lewin; Fiel Houston,
Incorporated; Mi Familia Vota; Marla Lopez; Paul
Rutledge,

*Plaintiffs—Appellees*,

*versus*

Gregory W. Abbott, *in his official capacity as Governor of Texas*, *et al.*,

*Defendants*,

Harris County Republican Party; Dallas County
Republican Party; National Republican Senatorial
Committee; National Republican Congressional
Committee; Republican National Committee,

*Movants—Appellants*,

OCA–Greater Houston; League of Women Voters of
Texas; REVUP-Texas; Texas Organizing Project;
Workers Defense Action Fund,

*Plaintiffs—Appellees,*

*versus*

JOSE A. ESPARZA, *in his official capacity as Deputy Secretary of the State of Texas, et al.,*

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants,*

———————————————

HOUSTON JUSTICE; DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,

*Plaintiffs—Appellees,*

*versus*

GREGORY WAYNE ABBOTT, *in his official capacity as Governor of Texas, et al.,*

*Defendants,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants,*

———————————————

LULAC Texas; Vote Latino; Texas Alliance for Retired Americans; Texas AFT,

*Plaintiffs—Appellees,*

*versus*

Jose Esparza, *in his official capacity as the Texas Deputy Secretary of State, et al.,*

*Defendants,*

Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee; Republican National Committee,

*Movants—Appellants,*

---

Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul Rutledge,

*Plaintiffs—Appellees,*

*versus*

Gregory Abbott, *in his official capacity as Governor of Texas, et al.,*

*Defendants,*

Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee; Republican National Committee,

*Movants—Appellants,*

---

No. 21-51145

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

STATE OF TEXAS, *et al.*,

*Defendant,*

HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL
COMMITTEE; REPUBLICAN NATIONAL COMMITTEE,

*Movants—Appellants.*

———————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844

———————————

Before OWEN, *Chief Judge*, and HIGGINBOTHAM and ELROD, *Circuit
Judges*.

JENNIFER WALKER ELROD, *Circuit Judge*:

The Texas Legislature passed Senate Bill 1 in August 2021 and
Governor Greg Abbott signed it into law the next month. SB 1 amended the
Texas Election Code in various ways. Five groups of private plaintiffs and
the United States sued the State of Texas and an assortment of state and local
officials to enjoin enforcement of some or all of the new provisions. Several
committees associated with the Republican Party moved to intervene as
defendants. The district court denied their motions. Because the
Committees have a right to intervene under Federal Rule of Civil Procedure
24(a)(2), we REVERSE and REMAND.

No. 21-51145

I.

In one of many special sessions in 2021, the Texas Legislature passed SB 1. *See* An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). SB 1 amended various provisions of the Texas Election Code pertaining to voter registration, voting by mail, poll watchers, and more. Before Governor Abbott could sign it into law, plaintiffs had already filed two of the lawsuits which make up part of this appeal. The rest of the private plaintiffs sued shortly thereafter. The United States later sued, and the district court joined that suit with the five consolidated cases. The lawsuits challenge SB 1's validity under the U.S. Constitution and other federal laws. They specifically seek to enjoin enforcement of SB 1 by the following defendants: the State of Texas; Governor Abbott, Texas Secretary of State John Scott, and Attorney General Ken Paxton (together, the "state officials"); and the Elections Administrators of Bexar, Hidalgo, Dallas, El Paso, and Harris Counties, plus the Travis County Clerk (together, the "local officials").

About a month after the district court consolidated the private suits at the end of September, and a week and a half before the United States filed suit, the Republican Committees sought to intervene as defendants. The Republican Committees include the local chapters of Harris and Dallas Counties, the Republican National Committee, the National Republican Senatorial Committee, and the National Republican Congressional Committee. The local chapter committees make "significant contributions and expenditures to support Republican candidates" in Texas's elections, primarily by "devoting substantial resources towards educating, mobilizing, assisting, training, and turning out voters, volunteers, and poll watchers" in their respective counties. The national chapter committees do much the same on the national level, but also provide resources to local Republican-affiliated groups in Texas.

No. 21-51145

The district court denied the Committees' motion to intervene. Though the court noted that the motion was "undoubtedly timely," it held that the Committees failed to satisfy the other three requirements in Rule 24(a)(2). The Committees appealed. Relevant here, the district court entered a scheduling order and accelerated proceedings in the district court, such that discovery would be completed in May 2022 and trial would be set for July 2022. The Committees then moved to expedite this appeal, which this court granted over opposition from the plaintiffs.

## II.

Rule 24 allows certain parties to intervene by right. Fed. R. Civ. P. 24(a).[1] If the right to intervene is not granted by some other federal statute, *see id.* R. 24(a)(1), a party can still intervene if it satisfies the four elements of Rule 24(a)(2):

(1) the application for intervention must be timely;

(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 463 (5th Cir. 1984)). It is the movant's burden to establish the right to intervene, but "Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749

---

[1] Rule 24(b) also allows for permissive intervention. Fed. R. Civ. P. 24(b). The Committees argued that they were entitled to permissive intervention below, but they abandoned that argument on appeal. Thus, we do not address it here.

F.3d 339, 341 (5th Cir. 2014). "Federal courts should allow intervention 'where no one would be hurt and the greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)); *see Miller v. Fed'n of S. Coops.*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022) (noting "our broad policy favoring intervention" and the intervenor's "minimal burden" (internal quotes and citation omitted)). At this stage, the court takes the movant's factual allegations as true. *See Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977). We review the denial of a right to intervene *de novo*. *Texas*, 805 F.3d at 656.

The Committees argue that they are entitled to intervene by right and that they satisfy each of Rule 24(a)(2)'s requirements. The United States and the private plaintiffs agree that the Committees' motion was timely (the first requirement), but they contest that the Committees satisfied any of the remaining Rule 24(a)(2) requirements.

## A.

First, the interest requirement. To intervene by right, the Committees must claim "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The precise definition of an "interest" has been hard to pin down, but we have interpreted Rule 24(a)(2) to require a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) (quoting *NOPSI*, 732 F.2d at 463). By contrast, intervention by right will not be granted for purely "ideological, economic, or precedential" reasons. *Texas*, 805 F.3d at 657. Property interests are the quintessential rights Rule 24(a) protects, but we have made clear that Rule 24(a)(2) does not require "that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2)." *Mothersill*

*D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987). In addition, a "legally protectable interest" does not mean the interest must be "legally *enforceable*": "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659. In fact, we have said that in a case involving "a public interest question" that is "brought by a public interest group," the "interest requirement may be judged by a more lenient standard." *Brumfield*, 749 F.3d at 344 (quoting 6 James W. Moore, *et al.*, *Moore's Federal Practice* § 24.03[2][c] (3d ed. 2008) (hereinafter "*Moore's*")).

The Committees have satisfied the interest requirement of Rule 24(a). Specifically, the Committees expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process.[2] SB 1 unquestionably regulates the conduct of the Committees' volunteers and poll watchers. *See Texas*, 805 F.3d at 658 (quoting *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007)). As noted by the Committees, they expend resources regarding the recruitment, training, and appointment of poll watchers, and SB 1 changes the legal landscape for what it takes to carry out that duty.[3] This interest goes beyond

---

[2] The United States and private plaintiffs contend that the Committees forfeited any argument pertaining to poll watchers. We disagree. "Although issues not raised before the district court are generally waived, an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 519 n.5 (5th Cir. 2010) (internal quotes omitted). The arguments pertaining to poll watchers were adequately addressed in the briefing before the district court, so the argument is not forfeited on appeal.

[3] This interest is not unlike the ones claimed by the private plaintiffs to support their arguments over whether they have standing to pursue these claims in the first place. *See, e.g.*, LULAC Complaint at 7 ("LULAC regularly engages in voter registration, voter education, and other activities and programs designed to increase voter turnout among its members and their communities, which is critical to LULAC's mission."); *id.* at 8 ("In

a purely "ideological" reason for intervention and amounts to a "direct" and "substantial" interest in the proceedings. *See Texas*, 805 F.3d at 657–59. Because the burden is lower for a "public interest group" raising a "public interest question," *see Brumfield*, 749 F.3d at 344, the Committees clear this hurdle because many of the claims brought by the plaintiffs could affect the Committees' ability to participate in and maintain the integrity of the election process in Texas.[4]    Accordingly, the Committees have a legally protectable interest in these proceedings to support intervention by right.[5]

## B.

Second, the impairment requirement. Because the Committees have established an interest in these proceedings, they must next show that "disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest." *Texas*, 805 F.3d at 657 (quoting *NOPSI*, 732

---

2022, Voto Latino anticipates making expenditures in the millions of dollars to educate, register, mobilize, and turn out Latinx voters across the United States, including in Texas."). We express no views on whether those interests are sufficient to establish the private plaintiffs' standing. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("[T]here is no Article III requirement that intervenors have standing in a *pending* case.").

[4] The plaintiffs argue that the Committees did not fully present this argument to the district court, and thus it was forfeited. We disagree. The Committees have maintained all along that their interests are tied to their expenditure of resources regarding "their voters" and "their members." Their poll watchers fall within those groups, as they further explained to the district court in reply. Those arguments were properly before the district court when it denied the Committees' intervention motion, so we can properly address them here.

[5] Because we deem this interest sufficient, we need not address whether the Committees' more election-specific interests are enough to establish intervention by right. *See, e.g., Shays v. FEC*, 414 F.3d 76, 85–87 (D.C. Cir. 2005) (articulating an interest in maintaining an election's "competitive environment" sufficient to establish the injury-in-fact requirement of Article III standing); *Issa v. Newsom*, No. 20-CV-1044, 2020 WL 3074351, at *3–4 (E.D. Cal. June 10, 2020) (intervention by right granted for committees of the Democratic Party); *Paher v. Cegavske*, No. 20-CV-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (same).

F.2d at 463). Though the impairment must be "practical" and not merely "theoretical," the Committees need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded. *See Brumfield*, 749 F.3d at 344–45.

The Committees have established that their interest may be impaired if they are denied intervention. SB 1 makes several amendments to the Texas Election Code which change the entire election landscape for those participating as the Committees' members and volunteers.

The poll watchers are the prime example. The Texas Election Code already provides that the "county chair for each political party" that has nominees on the ballot "may appoint [poll] watchers." Tex. Elec. Code § 33.003(a). Poll watchers "observe the conduct of an election on behalf of" the "political party." *Id.* § 33.001. Under SB 1, the Secretary of State must "develop and maintain a training program for" poll watchers, and prospective watchers must "complete[] the training with a certificate of completion" to participate in the election. *See* S.B. 1, 87th Leg., 2d Spec. Sess., art. IV, § 4.04 (codified at Tex. Elec. Code § 33.008). This squarely regulates the conduct of the Committees' members, and the outcome of this lawsuit may change what the Committees must do to prepare for upcoming elections.

SB 1 also provides poll watchers with more rights. Under SB 1, poll watchers "may not be denied free movement where election activity is occurring within the location at which the watcher is serving." *See id.* § 4.07 (codified at Tex. Elec. Code § 33.056(e)). It also further clarifies that an election official breaks the law by "taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective." *See id.* § 4.09 (codified at Tex. Elec. Code § 33.061(a)). Poll watchers may also now

observe the sealing and transfer of election-related data at the polling places they serve. *See id.* § 4.08 (codified at Tex. Elec. Code § 33.0605). And with those new rights comes new remedies, specifically for the Committees themselves (not just for their members): "The appointing authority for a watcher who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties may seek" injunctive relief, a writ of mandamus, and "any other remedy available under law." *Id.* § 4.10 (codified at Tex. Elec. Code § 33.063).

If the district court either partially or fully grants the relief sought by the plaintiffs here, the Committees will have to expend resources to educate their members on the shifting situation in the lead-up to the 2022 election. Further, SB 1 grants rights to the Committees and their members that could be taken away if the plaintiffs prevail. Because that result could practically impair the Committees' interest in their absence, they have satisfied the impairment requirement under Rule 24(a)(2).

## C.

Third, the inadequacy-of-representation requirement. Having satisfied the rest of Rule 24(a)(2)'s requirements, the Committees must show that their interests are not adequately represented by the State of Texas or the state officials. *Texas*, 805 F.3d at 661–64. The Committees "need not show that the representation by existing parties will be, for certain, inadequate," but instead that it *may* be inadequate. *See id.* at 661 (quoting *Moore's* § 24.03[4][a][i]; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

Though we have characterized this burden as "minimal," *Edwards*, 78 F.3d at 1005, to give it some "teeth," we have recognized "two presumptions of adequate representation," *Brumfield*, 749 F.3d at 345. The first presumption arises when the intervenor "has the same ultimate

objective as a party to the lawsuit." *Texas*, 805 F.3d at 661–62. This presumption can be overcome by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party."[6] *Id.* (quoting *Edwards*, 78 F.3d at 1005). An intervenor can establish an adversity of interest if "its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662. The second presumption arises when the existing party "is a governmental body or officer charged by law with representing the interests" of the intervenor, which can be overcome by showing that the intervenor's "interest is in fact different from that of the" governmental party "and that the interest will not be represented by" the existing governmental party. *Id.* at 661–62 (quoting *Edwards*, 78 F.3d at 1005).

Assuming either presumption applies, the Committees have rebutted each. It is uncontested that the starting point is that the Committees and the defendants have the same objective: uphold SB 1. But as the Committees point out, there are reasons to believe the Committees' interests are less broad than those of the governmental defendants, which *may* lead to divergent results. *See Brumfield*, 749 F.3d at 346. The Committees' interests diverge first and foremost with how to carry out the ultimate objective. The State and its officials would prefer to not resolve this case on the merits at all—they vigorously contend that these lawsuits should be dismissed on sovereign-immunity and standing grounds. Were the State and its officials to succeed on those arguments, the remaining local officials would not adequately represent the Committees' interests—neither the United States

---

[6] As we noted in *Texas*, "adversity of interest, collusion, or nonfeasance on the part of the existing party" is not an exclusive list of ways to rebut the presumption, though we have yet to clearly articulate other factors in our cases. 805 F.3d at 662 n.5.

No. 21-51145

nor the private plaintiffs contend the local officials could.[7] That is likely because at least some of the local officials have already said that they will not substantively defend the constitutionality of the law in this lawsuit. And one of the officials is a plaintiff in another case *challenging* the constitutionality of provisions in SB 1. *See Longoria v. Paxton*, No. 22-50110, 2022 WL 832239, at *1–2 (5th Cir. Mar. 21, 2022) (certifying questions to the Supreme Court of Texas). This would leave the Committees, especially the local committees involved here, without recourse to protect their interests in SB 1 being upheld. The Committees, by contrast, would benefit from the finality and certainty of SB 1's legality being resolved on the merits.

Specific to the governmental-representative presumption, the Committees' private interests are different in kind from the public interests of the State or its officials. The Committees interests primarily rely on the expenditure of their resources to equip and educate their members, along with relying on the rights of the Committees' members and volunteers who participate in the election. *See Sierra Club*, 18 F.3d at 1207 (finding this requirement satisfied where government was defending public interests while the intervenors sought to vindicate only their economic interests). Though the Committees' interests are not solely ideological, *see Texas*, 805 F.3d at 658, they are nevertheless incidentally partisan—if for no other

---

[7] The dissenting opinion raises *sua sponte* the argument that the local officials could adequately defend the Committees' interests. As support, it points to the motion to dismiss filed by Medina County Election Administrator Lupe Torres, which defended SB 1 on jurisdictional grounds and on the merits. *See post* at 5–6. However, when the private plaintiffs amended their complaints, they removed Administrator Torres as a defendant. The rest of the local officials have said they want to stay out of it, instead letting the state officials take the lead. Nor is it helpful that the United States' suit against the State of Texas does not raise sovereign immunity. *Post* at 5. The United States is not challenging many of the relevant provisions that affect the Committees' interest—specifically, the poll-watcher provisions, which are most important to the Committees.

reason than that they are brought on behalf of a partisan group, representing its members to achieve favorable outcomes.[8]  Neither the State nor its officials can vindicate such an interest while acting in good faith.  *Cf. Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (government actors "are accorded a presumption of good faith because they are public servants, not self-interested private parties").  Moreover, the State and its officials have many interests that the Committees do not— "maintaining not only" SB 1, "but also its relationship with the federal government and with the courts" that routinely hear challenges to the State's election laws. *See Brumfield*, 749 F.3d at 346.

Though we "cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation," we can say that "surely they might, which is all that [Rule 24(a)(2)] requires." *Id.*  Because the Committees here have "satisfied the minimal burden of showing inadequacy," *id.*, the fourth requirement is satisfied.

## III.

The Committees made a timely application to intervene by right, they claim interests relating to SB 1 which is the subject of this consolidated suit, their absence from the suit may practically impede their ability to protect their interests, and the existing parties might not adequately represent those interests.  Because this is enough to satisfy Rule 24(a)(2), we REVERSE the

---

[8] The United States and the private plaintiffs raise concerns about whether allowing the Committees to intervene here will allow special-interest or political groups to intervene in *every* high-profile case. Those concerns are misplaced. Every intervenor must satisfy each of the four requirements of Rule 24(a)(2)—though some can, *e.g.*, *Texas*, 805 F.3d at 663–64, many cannot, *e.g.*, *Hopwood v. Texas*, 21 F.3d 603, 606 (5th Cir. 1994). With the interests at issue in the present case, the Committees have carried their burden, and thus they are entitled to intervene by right.

No. 21-51145

district court's contrary determination and REMAND to allow the Committees to intervene by right in this suit.

No. 21-51145

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, dissenting:

Both local and national Republican committees ("the Committees") seek to intervene as of right as defendants in five consolidated lawsuits brought by private plaintiffs against Texas state and local officials and a suit by the United States against the State of Texas and Texas's Secretary of State challenging various provisions of SB 1. The Local Committees seeking to intervene are the Harris County Republican Party and Dallas County Republican Party. The National Committees are the National Republican Senatorial Committee, National Republican Congressional Committee, and the Republican National Committee. I write separately because, to these eyes, the Committees have not shown that they are entitled to intervene as of right under Rule 24 of the Federal Rules of Civil Procedure.[1]

## I.

I agree with the panel decision that the Local Committees presented a sufficient interest in the proceedings. But in my view, the National Committees failed to present a direct interest related to defending SB 1. An intervenor must show a "direct, substantial, legally protectable interest in the proceedings,"[2] and the interest must be "one that the substantive law recognizes as belonging to" the intervenor.[3] A "generalized preference that the case come out a certain way" is not enough to show an interest.[4] Nor are purely "ideological, economic, or precedential reasons" for intervention.[5]

---

[1] FED. R. CIV. P. 24(a).

[2] *Edwards v. City of Hous.*, 78 F.3d 983, 1004 (5th Cir. 1996) (en banc) (internal quotations and citations removed).

[3] *Id.*

[4] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

[5] *Id.*

No. 21-51145

## A.

The Local Committees assert that they have an interest in the lawsuit because they "recruit, train, and appoint poll watchers 'to observe the conduct of . . . election[s]' in Texas." Section 4.04 of SB 1 requires the Secretary of State to develop and maintain training for poll watchers.[6] SB 1 requires poll watchers to complete the training, though it also requires that this free training be accessible online "at any time, without a requirement for prior registration."[7] While SB 1 does not regulate whom the Local Committees recruit or appoint as poll watchers, the Local Committees assert a direct, substantial, legally protectable interest in the proceedings as SB 1's training requirements will affect how the Local Committees recruit and train their poll watchers.

## B.

The same cannot be said of the National Committees. The National Committees assert that they have an interest in the lawsuit because they "fund recruiting, education, and support activities for poll watchers." This is not a direct interest in the poll watching provisions of SB 1. The National Committees' purported interest is too remote to allow them to intervene as of right.

Several of our sister circuits likewise use the "direct, substantial, legally protectable" standard.[8] In *American Lung Association*, the Second Circuit held that electric utility companies did not have an interest in various

---

[6] S.B. 1, 87th Leg., 2d Spec. Sess. (Tex. 2021).

[7] *Id. See also Online Poll Worker Training Program*, TEX. SEC'Y OF STATE, https://www.sos.state.tx.us/elections/onlinepollworker.shtml.

[8] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc).

private plaintiffs' action against the EPA for failing to review and promulgate national air quality standards within the statutorily required period.[9] The court reasoned that the air quality standards at issue did not directly impact the utilities industry so the utility companies' interest was too remote to allow them to intervene as of right as defendants.[10] Here too, the National Committees do not claim that they assist in training or recruiting poll watchers; their interest only relates to funding local poll watching activities. This is more attenuated than the Local Committees' interest. Further, the National Committees fail to specify how the poll watching training provision of SB 1 affects its allocation of funding to the Local Committees' poll watching activities, given that the training is free, easily accessible, and simple to complete.

In sum, I would find that only the Local Committees presented a direct, substantial, legally protectable interest in the proceedings. That is not to say that the National Committees have no interest in the outcome of the litigation. Rather, their interest is too broad and indirect to support intervention as of right, especially as compared to the existing parties to the lawsuit and the Local Committees. In this situation, courts typically welcome their advocacy by amicus briefs. Here, the National Committees' position is most efficiently and appropriately considered as friends of the court rather than as parties to the lawsuit.

## II.

Second, even if both the National and Local Committees had a direct, substantial, legally protectable interest in the proceedings, the Committees

---

[9] *Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 261 (2d Cir. 1992).

[10] *Id.*

failed to rebut the presumption that the existing defendants adequately represent the Committees' interests.

There is a presumption that the existing parties adequately represent the intervenors interests when the intervenor and an existing party share the same ultimate objective.[11] Here, the Committees concede that they share same ultimate "objective" "of upholding SB 1." To rebut the presumption of adequate representation, the Committees "must show adversity of interest, collusion, or nonfeasance on the part of the existing party."[12] The Committees allege that their interests diverge from the existing defendants.

That the state defendants are defending SB 1 on jurisdictional grounds whereas the Committees seek to defend SB 1 on the merits does not create an adversity of interest. This case is dissimilar to *Brumfield*, in which the intervenors and the existing party had divergent views on the same substantive issue.[13] Indeed, the party in *Brumfield* conceded a legal issue whereas the intervenors wished to contest it.[14] Here, however, the existing defendants and the Committees are unified in defending the substance of the lawsuit—seeking to uphold SB 1. The state defendants are working towards that objective via jurisdictional challenges. Both procedural and merits-based

---

[11] *Edwards*, 78 F.3d at 1005.

[12] *Id.*

[13] *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014).

[14] *Id.* This Court's recent decision allowing a non-profit cooperative of Black farmers to intervene as defendants in a lawsuit brought by white farmers who were excluded from a relief program reserved for "socially disadvantaged farmer[s]," also differs from this case. In *Miller*, the Black farmers wishing to intervene wanted to defend the program's constitutionality by arguing that continuing discrimination created a compelling government interest. However, the existing government defendant defended the program only on the grounds that the lingering effects of *past* discrimination created a compelling government interest. *See Miller v. Vilsack*, No. 21-11271, 2022 U.S. App. LEXIS 7563, at *8–*9 (5th Cir. Mar. 22, 2022) (per curiam) (unpublished).

challenges can accomplish the defendants' and Committees' shared objective. If the defendants prevail on jurisdictional grounds, SB 1 yet stands. A win is a win—regardless of whether it rests on jurisdictional grounds or on the merits.

The panel decision contemplates that adversity of interests between the local officials named as defendants and the Committees could arise if the state officials are later dismissed on sovereign immunity grounds. But the Committees' purported adversity of interest must be "more than merely theoretical; there must be a serious probability that the existing party and the movant may not share the same ultimate objective."[15] The panel decision moves too quickly in its sovereign immunity analysis. First, one of the consolidated actions is the United States' action against the State of Texas. Obviously, Texas cannot assert protection on sovereign immunity grounds against the United States.[16] The Committees fail to explain why Texas would not continue to defend its own legislation on the merits when the State has been actively defending SB 1. Second, abrogation is a promising means to ensure that the state defendants remain in the lawsuit, as all the complaints bring claims under the Voting Rights Act to which the State enjoys no immunity.[17]

---

[15] *Helt v. Sethi Petro., L.L.C.*, No. 20-40240, 2022 U.S. App. LEXIS 1026, at *3 (5th Cir. Jan. 13, 2022) (per curiam) (unpublished) (citing 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed.)) (internal quotations removed).

[16] *Alden v. Maine*, 527 U.S. 706, 755 (1999).

[17] *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). For a general discussion of sovereign immunity, particularly the importance of *Ex parte Young*, and other jurisdictional challenges in election cases, *see Lewis v. Scott*, No. 20-50654, 2022 U.S. App. LEXIS 6795 (5th Cir. Mar. 16, 2022) (Higginbotham, J., dissenting).

Finally, sovereign immunity aside, the Committees fail to show that the local officials do not intend to defend SB 1. The panel decision notes that one local official declined to defend SB 1. However, multiple local officials were named as defendants: the Elections Administrators of Medina, El Paso, Harris, Bexar, Hidalgo, and Dallas County as well as the County Clerk of Travis County. Before these cases were consolidated, the Election Administrator of Medina County filed a motion to dismiss, defending SB 1 both on jurisdictional grounds and on the merits. And far from "stay[ing] out of" the lawsuit, other local defendants have "reserve[d] the right to raise any additional defenses that become apparent throughout the factual development of this case."

Because the Committees cannot point to a meaningful adversity of interest beyond a theoretical possibility that all the state defendants who are actively defending the lawsuit could drop out, the Committees failed to meet their burden to rebut the presumption that the existing defendants will adequately protect the Committees' interest.

## III.

Of course, this Court favors intervention when the elements are met; however, there is no "broad policy" favoring intervention when the intervenor fails to meet the strictures showing intervention as of right.[18] To me, the Committees failed to meet their burden to show they are entitled to intervention as of right. The price of relaxing the showing required for intervention as of right risks undue complication of litigation. An amicus brief, as invited by the able district court judge, would have been the

---

[18] *See Texas*, 805 F.3d at 661 (noting that for the inadequate representation element, "[a]lthough we have characterized the intervenor's burden as 'minimal,' it cannot be treated as so minimal as to write the requirement completely out of the rule") (internal quotations and citations removed).

No. 21-51145

appropriate mechanism to welcome the Committees' participation without the attending risk of future inefficiencies in this and other time-sensitive cases.[19] Indeed, amici enjoy a unique position with the opportunity to advocate outside the confines of controlling issues, both in the lower federal courts and the Supreme Court. I respectfully dissent.

---

[19] The transcript of the district court's hearing regarding the Committees' motion to intervene makes plain the management difficulties brought to this case as well as the district court's grasp of these issues.