**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

La Unión Del Pueblo Entero, *et al.*,

        *Plaintiffs*,

v.

Gregory W. Abbott, *et al.*,

        *Defendants*.

No. 5:21-cv-00844-XR
(Consolidated Cases)

## INTERVENOR-DEFENDANTS' COMBINED RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER

Intervenor-Defendants—the Harris County Republican Party, Dallas County Republican Party, Republican National Committee ("RNC"), National Republican Senatorial Committee ("NRSC"), and National Republican Congressional Committee ("NRCC")—did not enact SB 1 and do not enforce it.  Rather, they are political party committees engaged in "core" First Amendment activities as part of "campaign[s] for political office"—the area where the First Amendment "has its fullest and most urgent application."  *Eu v. San Francisco Cnty. Dem. Cent. Comm.*, 489 U.S. 214, 223 (1989).  Intervenor-Defendants therefore enjoy broad protection against compelled search or disclosure of internal documents, communications, or information related to their campaign activities, election and political strategy, advocacy on proposed legislation and matters of public concern, and formulation of policy positions, including on election administration and integrity.  *See id.*; *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2010); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002).  Intervenor-Defendants did not waive or forfeit those protections by intervening to assert their interest in defending SB 1, under which they are regulated

1

and they and their members exercise their constitutional rights to participate in elections. *See Perry*, 591 F.3d at 1152 (granting mandamus to uphold First Amendment privilege claim asserted by parties who intervened to defend state law).

Nonetheless, Plaintiffs have propounded exceptionally broad and burdensome discovery requests on Intervenor-Defendants, which Plaintiffs do not even quote in their barebones motion. *See* Dkt. No. 469. For example, Plaintiffs' requests for production demand "[a]ll documents, including but not limited to communications" exchanged between Intervenor-Defendants and their "third-party" political allies since 2020 on a variety of topics, including Texas legislative proposals that were never enacted into law and "election administration, voting, election integrity, [and] the conduct of elections." Ex. A at 10–11 (RFPs 6–7).

Plaintiffs, moreover, do not stop at seeking confidential communications between Intervenor-Defendants and their political allies: they go even further and demand production of "all" of Intervenor-Defendants' *internal* documents on a broad range of topics, even where those documents were never shared outside Intervenor-Defendants. In particular, Plaintiffs demand "all" of Intervenor-Defendants' internal documents dating back to January 1, 2018—three and a half years before SB 1 was enacted—regarding such broad topics as:

- "the recruitment, retention, and training of election judges, election clerks[,] other poll workers," and "poll watchers," including confidential "training materials";

- alleged "inappropriate behavior from poll watchers, election judges, election clerks, or other poll workers";

- "allegations, investigations, and discussions of illegal voting, election fraud, or any kind of criminal conduct in connection with" certain "methods of voting."

*Id.* at 11–12 (RFPs 8–10, 13).

Plaintiffs likewise demand "[a]ll documents" Intervenor-Defendants have "sent to or exchanged with" *their own* "candidates or potential candidates for elected office in Texas

regarding election administration, voting, election integrity, or the conduct of elections" and the alleged effects of SB 1 and bills that the Texas Legislature never adopted. *Id.* at 12 (RFPs 11–12). And Plaintiffs demand "all" internal documents regarding the alleged effects of SB 1—as well as bills the Texas Legislature never even adopted—on "methods of voting in Texas by demographic groups," driver's license possession rates among Texas voters, "the changing demographics of Texas voters," and even "particular voting practices in Texas." *Id.* at 12–15 (RFPs 14–20).

Plaintiffs make no attempt in their motion to compel to show that these discovery requests are proper. Nor could they, had they tried. To the contrary, the Court should deny Plaintiffs' motion and grant Intervenor-Defendants a protective order for at least three reasons.

*First*, Plaintiffs' various discovery requests of Intervenor-Defendants—including their requests for production, interrogatories, and eight deposition demands—contradict Plaintiffs' own representations to the Court and the Court's scheduling order. Plaintiffs previously told the Court that only "limited" discovery "needs to be completed" in this case and that the only discovery against Intervenor-Defendants they would seek during the extended primary election period was "discovery of witnesses disclosed" or "newly disclosed by Intervenors." Dkt. No. 436 at 2, 4. They even asked the Court to limit the scope and duration of the remaining discovery in order to prevent "unnecessary burden" on the parties, including around "the general election season." *Id.* at 3–4. The Court's scheduling order obliged Plaintiffs' requests, limited discovery, and capped the number of depositions at ten. *See* Dkt. No. 437 at 1–2. Plaintiffs have now taken an about face and seek free-ranging discovery against Intervenor-Defendants beyond the limitations they requested and the Court ordered. Indeed, Intervenor-Defendants have not disclosed any witnesses in this case, but Plaintiffs have served them with broad discovery demands and seek to depose *at least 8 individuals* affiliated with Intervenor-Defendants above the Court's ten-deposition limit.

*Second*, Plaintiffs' sprawling requests violate Rule 26.  In Plaintiffs' own words, their central claim is that "the Texas Legislature enacted SB 1 with the intent to discriminate and unduly burden the right to vote of Black and Latino voters, as well as differently abled voters."  Dkt. No. 469 at 2.  Intervenor-Defendants are not the Texas Legislature, did not enact SB 1, and do not enforce it.  Instead, they are merely regulated by it.  *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022).  Accordingly, Plaintiffs' requests for internal documents, communications, and information from Intervenor-Defendants are not even "relevant to [their] claim[s]," let alone "proportional to the[] needs of th[is] case."  Fed. R. Civ. P. 26(b).  Rule 26 forecloses imposing on Intervenor-Defendants the undue burdens and expense of the irrelevant and overbroad discovery Plaintiffs seek.

*Third*, Plaintiffs' requests strike at the heart of, and threaten a "chilling effect" on, Intervenor-Defendants' First Amendment-protected activities.  *Perry*, 591 F.3d at 1164.  At a minimum, Plaintiffs must satisfy a "heightened relevance standard" and show that the discovery they seek is "crucial" to their case.  *Id.*; *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981).  Plaintiffs, however, have not even attempted to make that showing.

The Court should deny Plaintiffs' motion and grant Intervenor-Defendants a protective order that (1) prohibits Plaintiffs from taking depositions of individuals and groups associated with Intervenor-Defendants in connection with the primary election discovery period, including the eight depositions noticed on October 21, 2022; (2) permits Intervenor-Defendants to withhold the documents and information sought in Plaintiffs' discovery requests except where such documents and information have been shared with the Texas Legislature or the public and are not already available to Plaintiffs; and (3) grants Intervenor-Defendants until March 17, 2023 to complete production of any such documents.  Counsel for Intervenor-Defendants certify that they have

conferred in a good-faith attempt to resolve the matter by agreement and have been unable to secure Plaintiffs' agreement to narrow the scope of discovery.

## BACKGROUND

### A.   Plaintiffs' Prior Representations And The Court's Current Scheduling Order

Discovery in this case proceeded in earnest during Intervenor-Defendants' appeal of the denial of their initial motion to intervene. *See La Union del Pueblo Entero*, 29 F.4th 299. Plaintiffs never sought any third-party discovery against Intervenor-Defendants. *See* Fed. R. Civ. P. 45.

After the Fifth Circuit's decision, the Court granted Intervenor-Defendants' motion to intervene and vacated the then-existing scheduling order. *See* 5/13/2022 Text Order; 5/18/2022 Text Order. The parties met and conferred regarding a new scheduling order and submitted a joint notice detailing their proposals on June 7, 2022. *See* Dkt. No. 436.

Consistent with the Court's indications, the parties proposed a narrow and limited extension of the discovery period related to the 2022 primary election. *See id.* The only discovery of Intervenor-Defendants that Plaintiffs sought leave to take during that period was "discovery of witnesses disclosed" or "newly disclosed by Intervenors." *Id.* at 2. Plaintiffs also specifically told the Court that the "three months of additional discovery" on the primary election "from May 13 to August 12, 2022" was sufficient for the case because, in their view, "[a]dditional plenary discovery beyond this significantly extended timeline would likely impose unnecessary burden, uncertainty, and duplication of effort and risk further delay of trial." *Id.* at 3.

Plaintiffs also sought limitations on the "Secondary Discovery Period" to commence on October 24, 2022. *Id.* Plaintiffs requested that the "second discovery period relate only to the November 2022 general election or documents produced in response to a successful motion to compel." *Id.* Plaintiffs further proposed that the parties be permitted to "commence or reopen no more than 8 depositions per side, absent further leave of the Court." *Id.* According to Plaintiffs,

this limitation on depositions "would appropriately limit the burden on the parties around the general election season and reflect the more limited nature of the discovery that needs to be completed." *Id.* at 3–4.

The Court's scheduling order tracked Plaintiffs' requests. *See* Dkt. No. 437.  In particular, the only discovery against Intervenor-Defendants that the Court granted Plaintiffs leave to take during the primary election discovery period was "discovery from witnesses both already and newly disclosed by Intervenors." *Id.* at 1.  The Court's order set a deadline of "August 12, 2022" for "discovery on matters related to the primary election as to Plaintiffs, State Defendants, and County Defendants." *Id.*  At the same time, the Court's scheduling order granted Intervenor-Defendants—who were new to the case and had not participated in the prior discovery—leave to conduct broader discovery than the other parties during the primary election discovery period.  In particular, the Court granted Intervenor-Defendants leave to "conduct additional, but limited, nonduplicative discovery." *Id.* at 1.  It set a deadline of October 24, 2022, for "discovery on matters related to the primary election as to Intervenors." *Id.*

The Court also adopted Plaintiffs' proposal for the scope of the second discovery period, expressly limiting discovery during that period to "any and all matters relating to the November 2022 general election" and documents produced in response to motions to compel related to the primary election period. *Id.* at 2.  The Court authorized the parties to "commence or reopen no more than 10 depositions per side, absent further leave of the Court." *Id.*  The Court set a deadline of March 17, 2023, for completion of fact discovery related to the 2022 general election. *See id.*

To date, Intervenor-Defendants have not disclosed any witnesses in this case. *See id.* at 1.

### B.  Plaintiffs' Discovery Requests

Plaintiffs' various discovery requests are not limited to "witnesses disclosed" or "newly disclosed by Intervenors" (of which there are none) in accordance with the Court's scheduling

order.  Dkt. No. 436 at 2; *see also* Dkt. No. 437 at 1.  For example, Plaintiffs' First Set of Requests

for Production ("RFPs") served on July 7, 2022, included requests for communications with Texas

state and county officials regarding SB 1, other election-related bills that never became law, and

election administration issues generally.  *See* Ex. A at 9–10 (RFPs 1–5).  The RFPs also included

requests for communications with Intervenor-Defendants' "third-party" political allies, numerous

conservative organizations, and their own unidentified "candidates" or "potential candidates" for

elected office in Texas regarding the same subjects.  *See id.* at 10–12 (RFPs 6–7, 11–12).

Plaintiffs sought a variety of other internal documents and communications, including:

- Documents and communications regarding recruiting, retention, and training of poll watchers and poll workers (RFPs 8–9);

- Documents and communications regarding alleged "inappropriate" or "criminal" behavior of poll watchers or poll workers (RFP 10);

- Documents and communications regarding alleged illegal voting, voter fraud, or criminal conduct in connection with certain methods of voting (RFP 13);

- Documents and communications regarding the potential impact of SB 1 on various demographic groups and Texas counties (RFPs 14, 16);

- Documents and communications regarding various demographic groups' use of certain methods of voting (RFP 15);

- Documents and communications regarding mail-ballot identification requirements (RFPs 17–18);

- Documents and communications regarding voter assistance (RFP 19); and

- Documents and communications regarding Texas demographics, voter turnout by various demographic groups, and "particular voting practices in Texas" (RFP 20).

*See* Ex. A at 11–15.  The RFPs generally seek documents going back to either January 1, 2018, or

January 1, 2020, well before the Texas Legislature considered and enacted SB 1 in August and

September 2021.  *See id.* at 9–15.

Five of the ten interrogatories in Plaintiffs' First Set of Interrogatories served on July 13, 2022, demand that Intervenor-Defendants "[i]dentify (including by Bates number if and once assigned)" documents related to a variety of topics and produced by Intervenor-Defendants. *See* Ex. B at 9–11 (Interrogatories 5–9). Four of the interrogatories are contention interrogatories aimed at Intervenor-Defendants' legal position. *See id.* at 8–9 (Interrogatories 1–4). Plaintiffs' final interrogatory seeks "identif[ication] and descri[ption] with particularity" of "any research or analyses you initiated, requested, or conducted with regard to voting patterns . . . in Texas related to the 2020 and 2022 primary, special, and general elections." *Id.* at 11 (Interrogatory 10).

Intervenor-Defendants timely objected to Plaintiffs' RFPs and interrogatories on a variety of bases, including that the documents, communications and information they seek are "irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case." Ex. C at 15; Ex. D at 3–5. Intervenor-Defendants also pointed out that Plaintiffs' RFPs and interrogatories seeking documents and communications internal to Intervenor-Defendants or shared only with their own candidates or political allies implicate Intervenor-Defendants' First Amendment privilege against compelled disclosure. Ex. C at 2–4; Ex. D at 3–5.

## C. The Parties' Correspondence, Meet-and-Confer Discussions, And Plaintiffs' Belated Request For Depositions

Counsel for the parties held a first meet-and-confer regarding Plaintiffs' RFPs and interrogatories on August 11, 2022. During that discussion, Intervenor-Defendants reiterated their objections to producing documents that are subject to the First Amendment privilege and documents not before the Texas Legislature when it enacted SB 1. Counsel explained that Intervenor-Defendants were not initially limiting their collection of documents on the basis of these objections. On August 29, 2022, Intervenor-Defendants provided to Plaintiffs a list of potential custodians from the RNC, NRSC, NRCC, and Dallas County Republican Party. *See* Ex.

E.  They further informed Plaintiffs that they were working to identify custodians from the Harris County Republican Party and were in the process of crafting reasonable search terms.  *See id.*

On September 19, 2022, Plaintiffs asked for dates certain when Intervenor-Defendants would provide proposed custodians for the Harris County Republican Party and proposed search terms.  *See* Ex. F at 29.  On September 21, 2022, the Fifth Circuit stayed all discovery in the case until September 29, 2022.  *See* Dkt No. 464.  On September 23, 2022, counsel to Intervenor-Defendants responded that Intervenor-Defendants "expect be in a position shortly after the stay expires to provide you dates certain for identifying custodians for the remaining intervenor and for sharing our search terms."  Ex. F at 26.  Counsel also noted that "our team is heading to trial in another matter over the next several weeks" and that the "discovery schedule in this case already contemplates all parties' counsel's conflicting trial schedules."  *Id.* at 27.

On October 5, 2022—nearly two months after the August 12, 2022 deadline "for completion of discovery on matters related to the primary election as to Plaintiffs," Dkt.  No. 437 at 1—Plaintiffs for the first time expressed their intent to depose five named individuals "and possibly other individuals" affiliated with Intervenor-Defendants, Ex. F at 20.  Plaintiffs' counsel indicated that they wished to depose the five named individuals "in their individual capacities" and asked whether Intervenor-Defendants' counsel "anticipate[d] defending th[ose] depositions" and was "willing to accept service of process . . . on behalf of [those] individuals."  *Id.*  Plaintiffs also requested that Intervenor-Defendants agree to an extension of the primary election discovery period until March 17, 2023.  *Id.*

On October 7, 2022, counsel to Intervenor-Defendants responded that it was their position that Plaintiffs had misread the scheduling order, explaining that "[t]he October 24 deadline pertains to discovery served by Intervenors" and that Plaintiffs had missed the applicable deadline of

August 12, 2022.  *See id.* at 17–18; *see also* Dkt. No. 437 at 1.  Counsel to Intervenor-Defendants further stated that Intervenor-Defendants were working in good faith to respond to Plaintiffs' broad discovery requests and that Plaintiffs' insistence on raising "privilege log issues" contradicted Plaintiffs' prior position on the timing of those issues.  Ex. F at 18.

The parties held another meet-and-confer on October 17, 2022, during which Intervenor-Defendants agreed to provide the list of remaining potential custodians and proposed search terms within a week.  On October 19, 2022, Plaintiffs sent email correspondence suddenly changing their position from what they had proposed during the October 17, 2022 meet-and-confer.  *See* Ex. F. at 1–2.  In particular, Plaintiffs now demanded that the deadline for them to seek discovery of Intervenor-Defendants related to the primary election be extended to January 27, 2023; that Intervenor-Defendants agree to a first production date of November 10, 2022, and substantial completion of productions on December 9, 2022; and that Intervenor-Defendants agree to an unspecified—and apparently unlimited—number of depositions of individuals affiliated with Intervenor-Defendants related to any topic other than the 2022 general election, including the 2022 primary election.  *See id.*  Plaintiffs also reiterated their threat to serve the five named individuals with deposition subpoenas at their home or place of business.  *See id.*

Intervenor-Defendants responded by letter the following day.  *See* Ex. G.  Intervenor-Defendants disclosed a list of potential custodians for the Harris County Republican Party and an initial set of search terms.  Ex. G at 1, App. A.  Intervenor-Defendants explained, however, that given the overbreadth of Plaintiffs' discovery requests, those search terms yielded a review universe of more than 24,000 documents for the Harris County Republican Party custodians alone.  *See id.* at 2.  Intervenor-Defendants reemphasized that the vast majority of these documents are unlikely to reveal relevant, non-privileged information, because Intervenor-Defendants "did not

enact SB 1 and do not enforce it." *Id.* Moreover, because each of the Intervenor-Defendants is a political party committee actively engaged in the upcoming November 8 general election, Intervenor-Defendants would not be in a position to begin making productions a mere two days after the election. *See id.* Intervenor-Defendants stated that they intended to begin making productions on or before December 1, 2022, and would continue to do so on a rolling basis with a goal of completion by January 31, 2023. *See id.* Intervenor-Defendants therefore agreed to Plaintiffs' request to extend the primary election discovery period through March 17, 2023, subject to certain qualifications, including that no new discovery may be propounded. *Id.* at 2–3.

Intervenor-Defendants further explained that Plaintiffs' untimely request for depositions of individuals associated with Intervenor-Defendants—as well as Plaintiffs' request for depositions not authorized by the Court's scheduling order—was unworkable. *See id.* at 3–4. Counsel reiterated the request that Plaintiffs not serve deposition subpoenas until other pending discovery-related issues were resolved. *See id.* at 5.

Plaintiffs nonetheless informed Intervenor-Defendants the following day that they were serving the five individuals with deposition subpoenas. *See* Ex. H. Plaintiffs also noticed 30(b)(6) depositions for the RNC, Dallas County Republican Party, and Harris County Republican Party. The list of "Deposition Topics" in the Rule 30(b)(6) deposition notices tracks nearly verbatim Plaintiffs' RFPs. *See* Ex. I at 17–22; Ex. J at 16–22; Ex. K at 16–22.

## LEGAL STANDARD

The Court may, "for good cause," issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in connection with discovery, including "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery." Fed. R. Civ. P. 26(c)(1). A protective order is warranted where the requested discovery exceeds the scheduling order, "does not fall

within Rule 26(b)(1)'s scope of proper discovery," "would impose an undue burden or expense," *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)), or threatens a "chilling effect" on the exercise of First Amendment freedoms, *Perry*, 591 F.3d at 1164.

## ARGUMENT

The Court should grant Intervenor-Defendants a protective order and deny Plaintiffs' motion because Plaintiffs' discovery requests stray far beyond the scope of the Court's scheduling order that Plaintiffs sought, are not calculated to discover information relevant to a claim or defense and are unduly burdensome, and violate Intervenor-Defendants' First Amendment rights.

## I.   PLAINTIFFS' DISCOVERY REQUESTS EXCEED THE SCHEDULING ORDER

The Court should grant the protective order and deny Plaintiffs' motion for the simple reason that *all* of Plaintiffs' requests—including their requests for production, interrogatories, and requests for deposition—stray beyond the terms of the Court's scheduling order. *See, e.g.*, *Cunningham v. Offshore Specialty Fabricators, Inc.*, No. 5:04-cv-282, 2009 WL 10707177, at *2 (E.D. Tex. Sept. 24, 2009) (denying requests for information that were "outside the scope" of discovery authorized in scheduling order). Indeed, *none* of Plaintiffs' requests seeks "discovery from witnesses . . . disclosed by Intervenors," Dkt. No. 437 at 1, for the simple reason that Intervenor-Defendants have not disclosed any witnesses to date. Moreover, Plaintiffs' various discovery requests are not related to the operation of SB 1 during the 2022 "primary election," which is the only topic on which discovery is authorized during the primary election discovery period. *See id.* To the contrary, Plaintiffs' discovery requests demand documents, communications, and information dating as far back as January 1, 2018—more than 4 years *before* the March 2022 primary election—and touching on such vast topics as "voting." Ex. A at 10; *see generally* Exs. A, B, I–K.

12

Plaintiffs' attempt to circumvent the Court's scheduling order does not end there.  Plaintiffs did not indicate any intention of taking depositions of individuals affiliated with Intervenor-Defendants until October 5, 2022, *see* Ex. F at 20, nearly two months after the August 12, 2022 deadline "for completion of discovery on matters related to the primary election as to Plaintiffs," Dkt. No. 437 at 1; *see also* Local Rule CV-16(e) ("Notices served before the discovery deadline that purport to schedule depositions after the discovery deadline will not be enforced.").  And Plaintiffs seek such depositions *above* the ten-deposition limit this Court set for the general election discovery period.  *See* Dkt. No. 437 at 2; Dkt. No. 469 at 11.

Plaintiffs cannot claim surprise or unfairness from the limitations on discovery in the Court's scheduling order.  After all, Plaintiffs *advocated* for those limitations.  *See* Dkt. No. 436 at 1–2.  Plaintiffs requested that the first discovery period be limited to the primary election, and the only discovery they sought to take from Intervenor-Defendants during that period was "discovery of witnesses disclosed" or "newly disclosed by Intervenors."  *Id.* Plaintiffs specifically told the Court that "the three months of additional discovery," "from May 13 to August 12, 2022" and limited to the primary election, was sufficient for the case because "[a]dditional plenary discovery beyond this significantly extended timeline would likely impose unnecessary burden, uncertainty, and duplication of effort and risk further delay of trial."  *Id.* at 3.

Plaintiffs also asked that the second discovery period "relate only to the November 2022 general election" and that the parties be permitted to "commence or reopen no more than 8 depositions per side."  *Id.* at 2.  According to Plaintiffs, this limitation on depositions "would appropriately limit the burden on the parties around the general election season and reflect the more limited nature of the discovery that needs to be completed."  *Id.* at 3–4.

The Court's scheduling order tracked Plaintiffs' various requests on the scope and duration of discovery, with one exception: the Court already granted Plaintiffs two more depositions during the general election discovery period than they requested.  *See* Dkt. No. 437 at 1–2.  Plaintiffs' motion nowhere mentions the scheduling order's limitations on discovery, much less their prior representations to the Court and advocacy for these limitations.  *See* Dkt. No. 469 at 9–10. Plaintiffs therefore offer no explanation as to how their overbroad discovery requests can be considered proper under the scheduling order or consistent with their prior position.  *See id.*

In fact, Plaintiffs' motion is little more than a back-door attempt to amend the scheduling order they sought under the guise of a motion to compel.  But Plaintiffs do not even attempt to show that such an amendment is warranted here.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 735 (5th Cir. 2018) (movant "must show good cause to modify the scheduling order").  For one thing, Plaintiffs' discovery requests violate Rule 26 and the First Amendment, *see infra* Parts II & III, so the Court's scheduling order may not be amended to permit them.  For another, Plaintiffs have not taken a single deposition during the general election discovery period—so they cannot now show "good cause" to take depositions *above* that limit.  Dkt. No. 437 at 3.

Plaintiffs' alternative criticism that Intervenor-Defendants "believe [the scheduling order] allows one-way discovery after August 12, 2022," Dkt. No. 469 at 10, likewise rings hollow.  The *reason* Intervenor-Defendants believe that is that it is true.  The scheduling order grants Intervenor-Defendants *both* a broader scope of potential discovery *and* more time to conduct it than any other party.  *See* Dkt. No. 437 at 1 (establishing October 24, 2022 as the deadline for "discovery on matters related to the primary election as to Intervenors" and authorizing Intervenor-Defendants

to "conduct additional, but limited, nonduplicative discovery").    This tracks Intervenor-Defendants' request for broader discovery rights than the other parties when they were "still in the process of receiving the discovery that has already been produced in this case, processing that information, and determining what discovery they need[ed] to take." Dkt. No. 436 at 4.

Moreover, Plaintiffs' contention that Intervenor-Defendants "have declined to cooperate in the setting of depositions," Dkt. No. 469 at 8, is misleading at best and false at worst. Intervenor-Defendants have no duty to "cooperate" in the scheduling of depositions not authorized by the Court's scheduling order for which Plaintiffs advocated.    Nonetheless, as an accommodation, Intervenor-Defendants have offered to work with Plaintiffs on scheduling any depositions of individuals associated with Intervenor-Defendants that may occur in the future. *See* Ex. G at 5; Ex. F at 12. Indeed, if anything, *Plaintiffs* have declined to cooperate in the setting of depositions because they have insisted upon serving subpoenas on individuals in disregard of Intervenor-Defendants' objections and without consulting on dates or availability. *See* Ex. F. at 1–3.

Finally, Plaintiffs' invocation of Rule 26, *see* Dkt. No. 469 at 8–9, misses the mark. Plaintiffs suggest that Intervenor-Defendants' initial disclosures evince an alleged "failure to timely disclose the names of individuals likely to have relevant information." *Id.* at 9. Plaintiffs selectively misquote Rule 26: it imposes an obligation to "disclose the names of individuals likely to have discoverable information . . . ***that the disclosing party may use to support its claims or defenses***." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). The Court's commonsense limitation on discovery in the scheduling order—which Plaintiffs themselves requested—is thus perfectly consistent with Rule 26: the scheduling order permits Plaintiffs to take discovery of any witness *disclosed* by Intervenor-Defendants, but not individuals whom Intervenor-Defendants do not intend to use to support their defenses. *Compare* Dkt. No. No. 437 at 1, *with* Fed. R. Civ. P.

26(a)(1)(A)(i).  That limitation makes particular sense: Intervenor-Defendants did not enact and do not enforce SB 1, and Plaintiffs have already taken voluminous discovery of the State Defendants in this matter.  The Court should grant the protective order and deny Plaintiffs' motion.

## II.  PLAINTIFFS' DISCOVERY REQUESTS SEEK IRRELEVANT INFORMATION AND ARE OVERBROAD, UNDULY BURDENSOME, AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

The Court should issue a protective order and deny Plaintiffs' motion for the additional reason that Plaintiffs' discovery requests violate Rule 26.  Parties may obtain discovery "regarding any non[-]privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," in light of "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "[I]nformation that only tangentially relates to an issue in the case" does not satisfy the proportionality standard.  *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2019 WL 5080392, at *4 (W.D. Tex. Oct. 10, 2019), *aff'd*, No. SA-19-CV-00375-XR, 2020 WL 96907 (W.D. Tex. Jan. 8, 2020).  If the Court determines that proposed discovery is outside the scope of Rule 26(b)(1), the Court "must limit the frequency or extent of discovery otherwise allowed by these rules[.]"  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Plaintiffs' overbroad discovery requests seek information that is not "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P . 26(b)(1).  In Plaintiffs' own words, their central claim is that "the Texas Legislature enacted SB 1 with the intent to discriminate and unduly burden the right to vote of Black and Latino voters, as well as differently abled voters."  Dkt. No. 469 at 2.  Intervenor-Defendants, however, did not enact and do not enforce SB 1.  They are merely regulated, and participate in elections governed, by it.  *La Union del Pueblo Entero*, 29 F.4th 306.

Plaintiffs' discovery requests nonetheless seek documents, communications, and information that were *never* before the Texas Legislature and do not relate to SB 1.  Indeed, as explained, the lion's share of Plaintiffs' discovery requests seek Intervenor-Defendants' purely internal documents and information—or communications with political allies and affiliated candidates—regarding bills that were never enacted, Texas election administration, and related public policy issues.  *See* Ex. A at 10–15; Ex. B at 9–11; Ex. I at 16–22.  These documents and information are not relevant, let alone proportional, to the question whether "the Texas Legislature enacted SB 1 with the intent to discriminate and unduly burden the right to vote of Black and Latino voters, as well as differently abled voters."  Dkt. No. 469 at 2; *see, e.g.*, *Apple Inc. v. Match Grp., Inc.*, No. 21-mc-80184-YGR-TSH, 2021 WL 3727067, at *4 (N.D. Cal. Aug. 19, 2021) (concluding that "discussions of lobbying activities, recruitment efforts, public education efforts, and so on, that are unlikely to be relevant" to the merits of antitrust claims).  Because the documents and information sought from Intervenor-Defendants do not bear on the legality of SB 1, they will not aid in resolution of the issues in the case, and Plaintiffs' various demands for them should be quashed.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2017 WL 1322247, at *3 (W.D. Tex. Apr. 10, 2017) (denying request for communications that were "irrelevant to a facial challenge to the statutes at issue").

For example, RFPs 6 and 7 broadly seek communications between Intervenor-Defendants and other political or advocacy organizations, including the Republican Party of Texas, regarding SB 1 or "election administration, voting, election integrity, or the conduct of elections."  Ex. A at 10–11.  But such communications between private organizations do not reveal any information that was before the Texas Legislature that could be relevant to the Legislature's intent in passing SB 1.  Nor do such communications help resolve whether enforcement of certain provisions will

violate, for example, the Americans with Disabilities Act, Dkt. No. 208 ¶ 282.  *See United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 36 (D.D.C. 2012) (discovery may not "stray too far away from the core facts of the case").  Likewise, documents concerning Intervenor-Defendants' "recruitment and training of poll watchers" have no bearing on whether the Texas Legislature enhanced the legal protections for poll watchers for a discriminatory purpose or whether such provisions otherwise violate federal law.  Ex. A. at 12.  The same is true with respect to Plaintiffs' remaining RFPs and corresponding topics in Plaintiffs' interrogatories and Rule 30(b)(6) notices; the discovery they seek from Intervenor-Defendants will not help resolve the issues in this case.  *See* Ex. A; Ex. I at 17–22; Ex. J at 16–22; Ex. K at 16–22.

On the other hand, the breadth and intrusiveness of the discovery sought from Intervenor-Defendants clearly "outweigh[]" any benefit of the proposed discovery.  Fed. R. Civ. P. 26(b)(1).  Intervenor-Defendants applied search terms based on Plaintiffs' RFPs to documents collected from the potential Harris County Republican Party custodians, which yielded a review universe of more than 24,000 potentially responsive documents.  *See* Ex. G at 2, App. A.  Collection of these documents alone—not to mention documents from the four other Intervenor-Defendants—has already proven to be extremely time-consuming and expensive.  *See* Voeks Decl. ¶ 14 (Ex. L).  Intervenor-Defendants' resources consist of contributions made by citizens, in the exercise of those citizens' "right to participate in democracy through political contributions."  *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014).  Forcing Intervenor-Defendants to divert resources away from election campaigns—particularly during the current general election campaign season—and toward addressing Plaintiffs' broad discovery requests, burdens that constitutional right, *see id.*, as Plaintiffs implicitly recognized earlier in the case, *see* Dkt. No. 436 at 3–4 (discovery limitations

Plaintiffs advocated "would appropriately limit the burden on the parties around the general election season and reflect the more limited nature of the discovery that needs to be completed").

Moreover, the discovery requests seek sensitive internal documents and information at the heart of First Amendment protection. *See infra* Part III. Yet little, if any, of those materials will likely be relevant to the claims and defenses in this case. Courts "frequently deny discovery when the party requests voluminous discovery where only a small fraction of the produced documents may be relevant." *Kellogg Brown & Root Servs.*, 284 F.R.D. at 36. The Court should follow suit and quash Plaintiffs' discovery requests.

Plaintiffs have offered two arguments in an attempt to prove that their broad discovery requests comply with Rule 26, neither of which has merit. *First*, Plaintiffs have asserted that their discovery requests are aimed at obtaining information that was before the Texas Legislature when it enacted SB 1. *See* Ex. G at 2. But by definition, documents, communications, and information internal to Intervenor-Defendants or shared only with their political allies and their own candidates—such as the discovery Plaintiffs overwhelmingly seek—was *not* before the Texas Legislature when it enacted SB 1. Any such documents, communications, and information therefore have no bearing on the question whether "the Texas Legislature enacted SB 1 with the intent to discriminate and unduly burden the right to vote of Black and Latino voters, as well as differently abled voters." Dkt. No. 469 at 2.

Moreover, SB 1's legislative history has been filed on the public docket for more than 11 months, *see* Dkt. Nos. 116, 117, and Plaintiffs have already taken voluminous discovery of the State Defendants. Plaintiffs offer no basis to believe that Intervenor-Defendants are in possession of any non-public documents or information that were shared with the Texas Legislature. Nonetheless, in the interest of resolving this dispute efficiently, Intervenor-Defendants have

offered to produce any non-privileged documents, if any, that they created and shared with the Texas Legislature or the public and that are not already available to Plaintiffs.

*Second*, Plaintiffs argued that they are entitled to the requested discovery because Intervenor-Defendants "intervened in this case based on claims of [their] substantial involvement in the elections." Ex. F at 15. Plaintiffs, however, have no basis to seek discovery on the issue of Intervenor-Defendants' intervention or their interest in defending SB 1 because the Fifth Circuit has already settled those issues. *See La Union del Pueblo Entero*, 29 F.4th 299. Moreover, Intervenor-Defendants did not waive or forfeit the discovery limitations in the scheduling order, Rule 26, or the First Amendment by intervening in this case. *See Perry*, 591 F.3d at 1152. The Court should enter a protective order and deny Plaintiffs' motion.

## III. PLAINTIFFS SEEK DOCUMENTS AND COMMUNICATIONS PROTECTED FROM DISCLOSURE BY THE FIRST AMENDMENT.

The Court should also grant the protective order and deny Plaintiffs' motion because Plaintiffs' overbroad discovery requests violate the First Amendment. The First Amendment conveys a privilege against compelled disclosure of documents and communications where such disclosure could infringe on free association rights. *See, e.g.*, *Perry*, 591 F.3d at 1159–60; *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018); *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022) (citing *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631–32 (5th Cir. 1980), and *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976)). Courts apply a two-part framework for evaluating First Amendment privilege claims in discovery.

*First*, the party asserting the privilege must show an "arguable" infringement on First Amendment rights. *Perry*, 591 F.3d at 1160. As the Fifth Circuit has recognized, political organizations' internal communications "must be permitted to be broad, uninhibited, and fearless,"

and "protecting such deliberations is a seminal aspect of the freedom to associate." *Whole Woman's Health*, 896 F.3d at 372. A party can make a *prima facie* showing of infringement if disclosure may result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160. The burden of making this showing is not a heavy one. A party "need not prove to a certainty that its First Amendment rights will be chilled by disclosure." *Black Panther Party*, 661 F.2d at 1267–68. It need only show "some probability" of a chilling effect. *Id.* at 1268; *see also Pulte Home Corp. v. Montgomery Cnty. Maryland*, No. GJH-14-3955, 2017 WL 1104670, at *4 (D. Md. Mar. 24, 2017); *Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *3 (M.D. Fla. May 25, 2016) (The "burden [of the proponent of the privilege] is 'light,' given 'the crucial place speech and associational rights occupy under our constitution.'").

*Second*, the burden then shifts to the party seeking disclosure to "show a substantial need for the documents that outweighs the intrusion into [the opposing party's] constitutional rights." *Whole Woman's Health*, 896 F.3d at 374. That party must satisfy a "heightened relevance standard" and show that the discovery is "highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under [Rule] 26(b)(1)." *Perry*, 591 F.3d at 1161, 1164. In other words, the party seeking disclosure must "prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information." *Pulte*, 2017 WL 1104670, at *4. "The interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case." *Black Panther Party*, 661 F.2d at 1268.

Here, compelled disclosure of Intervenor-Defendants' internal documents and information would chill the exercise of their First Amendment rights.  Accordingly, because Plaintiffs cannot show that their requests are relevant under even ordinary discovery standards, they cannot show that the discovery they seek is of "crucial relevance" to their case.  *Pulte*, 2017 WL 1104670, at *4.  The Court should grant the protective order and deny Plaintiffs' motion.

## A.  Compelled Disclosure Would Infringe On Intervenor-Defendants' First Amendment Rights

Intervenor-Defendants easily satisfy their minimal burden to show "some probability" of a chilling effect on First Amendment rights.  *Black Panther Party*, 661 F.2d at 1268; *see also Perry*, 591 F.3d at 1160 (party resisting disclosure need show only an "arguable" infringement).  Here, Plaintiffs broadly seek sensitive and confidential documents and information from Intervenor-Defendants' regarding issues of public policy, campaign strategies and tactics, and formulation of political advocacy and messaging.  *See* Ex. A at 10–15; Ex. B at 9–11; Ex. I at 16–22.  As the attached declarations from Intervenor-Defendants attest, compelled disclosure of these documents and information will chill the candor of Intervenor-Defendants' internal deliberations, discourage participation in Intervenor-Defendants' activities, and publicly reveal Intervenor-Defendants' confidential campaign strategies and tactics.  *See* Decls. (Exs. L, M, N, O, P).

Courts have recognized that compelled disclosure of confidential documents and information of a political association can have a "deterrent effect" on "participation in campaigns" and on "the free flow of information within campaigns."  *Perry*, 591 F.3d at 1162.  Consequently, compelled disclosure can chill First Amendment rights because it "mut[es]" this "internal exchange of ideas."  *Id.* at 1163; *see also Pulte*, 2017 WL 1104670, at *8 ("If a person knows that her communications will be disclosed to an unintended audience in the future, she may be more cautious in her statements or refrain from speaking entirely."); *Wal-Mart Stores, Inc. v. Texas*

*Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *9 (W.D. Tex. Oct. 11, 2016) (finding that a group's "ability to communicate with its members—fundamental to the right to associate—would be chilled if its internal newsletters were discoverable"); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 5308515, at *4 (S.D.W. Va. Sept. 4, 2020) (finding that compelled disclosure of political party's "internal communications concerning opinions as to campaign strategies" would cause it "to reassess or even modify how its membership can work, associate, communicate and provide any guidance on campaign strategies"). This infringement on First Amendment rights is particularly severe when a group is forced to disclose its internal communications "*to a public policy opponent*." *Whole Woman's Health*, 896 F.3d at 373.

Compelled disclosure can also discourage membership in an organization or participation in an organization's activities. *See Perry*, 591 F.3d at 1160. "[A] person who belongs to a group that is required to disclose its internal communications in civil litigation may decide that the invasiveness of the disclosure outweighs the benefit of belonging to or participating in the group." *Pulte*, 2017 WL 1104670, at *8. This is especially true where the party resisting disclosure has a reasonable basis to fear retaliation or reprisal as a result of the disclosure. *See, e.g.*, *NAACP*, 357 U.S. at 462–63; *Ass'n of Equip. Mfrs. v. Burgum*, 427 F. Supp. 3d 1082, 1098 (D.N.D. 2019); *All. of Auto. Mfrs., Inc. v. Jones*, No. 08-cv-555, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013).

Moreover, public disclosure of a political party's "confidential internal materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment'" and "seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)). The documents at issue in *AFL-CIO* included "detailed descriptions of training programs, member mobilization

campaigns, polling data, and state-by-state strategies." *Id.* at 176–77.  The parties claimed that disclosure would "directly frustrate" their "ability to pursue  their  political  goals  effectively" because it would reveal to their opponents "activities, strategies and tactics" that would likely be used in future election cycles. *Id.*  The D.C. Circuit agreed, holding that compelled disclosure of such materials would "frustrate those groups' decisions as to 'how to organize ... [themselves], conduct ... [their] affairs, and select ... [their] leaders,' as well as their selection of a 'message and ... the best means to promote that message.'" *Id.* at 177 (quoting *Eu*, 489 U.S. at 230–31 & n. 21). Consequently, the D.C. Circuit held that compelled disclosure of the parties' internal materials implicated "substantial First Amendment interests." *Id.* at 178.

The  First  Amendment  privilege  against  compelled  disclosure  also  applies  to communications with other organizations for the purposes of promoting shared political goals. *See Int'l Union v. Nat'l Right to Work Legal Defense and Educ. Found., Inc.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978) (First Amendment protection "extends not only to the organization itself, but also to its staff, members, contributors and others who affiliate with it"); *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981) (demand for "communications among various [draft-Kennedy] groups" had "potential for chilling the free exercise of political speech and association guarded by the [F]irst [A]mendment"); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (First Amendment protects parties' "strategic communications on policy issues with other environmental advocacy groups"); *Pulte*, 2017 WL 1104670, at *11 ("The citizen groups have an interest in the non-disclosure of the communications it had with third parties.").  After all, "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others" in those activities.  *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984); *see also Perry*, 591 F.3d at 1162.

The very nature of Intervenor-Defendants—political parties engaged in election campaigns and political speech—underscores that materials relating to their activities are entitled to the strongest level of First Amendment protection. *See Eu*, 489 U.S. at 223. That they are being asked to turn over confidential documents to groups that are often "public policy opponent[s]" heightens their First Amendment injury. *Whole Woman's Health*, 896 F.3d at 373. Moreover, Intervenor-Defendants have submitted declarations that more than make the minimal required showing of "some probability" of a chilling effect. *Pulte*, 2017 WL 1104670, at *4. These declarations show that compelled disclosure will inhibit "the free flow of information" and "mut[e] the internal exchange of ideas" within Intervenor-Defendants. *Perry*, 591 F.3d at 1162–63.

Specifically, the declarants attest to the chilling effect that compelled disclosure of Intervenor-Defendants' confidential materials would have. Among the types of documents that would have to be disclosed are internal communications and communications with political allies regarding policy issues, recruitment efforts, and political strategy. Decls. ¶ 9. These documents and communications would contain candid opinions and advice from the Republican Committees' officers, staff, consultants, and volunteers regarding the formulation of strategy and messaging related to campaigns and policy issues; documents regarding the allocation of resources for campaign expenditures and get-out-the-vote activities; drafts of press releases and other communications; documents regarding the recruitment of candidates; documents regarding the recruitment and training of volunteers; communications regarding media outreach and information for reporters; and discussions of current events and political developments, including SB 1 and other election-related legislation. *Id.* Disclosure would cause the Republican Committees' officers, staff, consultants, and volunteers to hesitate to offer candid thoughts about advocacy strategy and messaging in the future and to sometimes refrain entirely from offering their opinions.

Decls. ¶ 11.  These individuals would also be more cautious with respect to the views and advice they express if those communications can be compelled to become public.  *Id.*

Compelled disclosure would also harm Intervenor-Defendants' ability to recruit volunteers, poll watchers, and others to participate in political activities protected by the First Amendment.  Decls.  ¶ 12.  These volunteers and others routinely participate in confidential communications related to sensitive election-related topics and reasonably believed that these communications would remain confidential.  *Id.*  Disclosure of such communications would provide a disincentive for volunteers to participate in political activities and undoubtedly lead to lower levels of participation in such activities with Intervenor-Defendants in the future.  *See Perry*, 591 F.3d at 1160; *Pulte*, 2017 WL 1104670, at *8.

Finally, the compelled disclosure sought here would reveal confidential "strategies and tactics" that would harm the effectiveness of Intervenor-Defendants' campaign activities.  *AFL-CIO*, 333 F.3d at 177.  The requested materials include confidential discussions regarding the formulation of strategy and messaging related to campaign and advocacy activities as well as documents regarding the allocation of resources for campaign activities and get-out-the-vote activities.  Decls. ¶ 13.  Requiring Intervenor-Defendants to publicly disclose such materials would "frustrate" their ability to develop and deploy effective strategies in future election cycles.  *AFL-CIO*, 333 F.3d at 177.

In sum, Plaintiffs' various discovery requests strike at the heart of Intervenor-Defendants' First Amendment rights to participate in political activities.

### B.   Plaintiffs Cannot Show That The Discovery They Seek Is Highly Relevant To Their Claims.

As explained above, *see supra* Part II, Plaintiffs' discovery requests do not even meet the ordinary relevance standard under Rule 26(b)(1).  Plaintiffs *a fortiori* cannot show a "substantial

need" for the discovery because it is not "highly relevant" to their claims. *Whole Woman's Health*, 896 F.3d at 374; *Perry*, 591 F.3d at 1164. Because Intervenor-Defendants did not enact and do not enforce SB 1, the internal documents, communications, and information sought from them simply have no relevance to whether the Texas Legislature enacted SB 1 with discriminatory intent or whether SB 1 otherwise violates federal law. Intervenor-Defendants' private documents and communications are not relevant, let alone of "crucial relevance," to Plaintiffs' claims. *Pulte*, 2017 WL 1104670, at *4; *see also Black Panther Party*, 661 F.2d at 1268 ("The interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case."); *Perry*, 591 F.3d at 1164. Plaintiffs have not made, and cannot make, a showing otherwise. The Court should grant a protective order and deny Plaintiffs' motion.

## IV.  THE COURT SHOULD DENY PLAINTIFFS' REQUESTED RELIEF

Plaintiffs ask the Court to enter an order granting them relief with respect to their discovery requests. No such relief is warranted in any event.

*First*, Plaintiffs ask the Court to compel Intervenor-Defendants "to produce documents responsive to Plaintiffs' First Set of Requests for Production and provide proper responses to Plaintiffs' First Set of Interrogatories." Dkt. No. 469 at 10. With respect to the document requests, Intervenor-Defendants have agreed to make their first production on or before December 1, 2022. *See* Ex. G at 2. Plaintiffs do not suggest that this date—more than seven months before trial—prejudices them in any way. Thus, there is no justification for an order to compel Intervenor-Defendants to produce documents only two days after the general election day in which Intervenor-Defendants are actively engaged. *See id.*; *see also* Dkt. No. 436 at 3–4 (discovery limitations Plaintiffs advocated "would appropriately limit the burden on the parties around the general election season and reflect the more limited nature of the discovery that needs to be completed").

Moreover, Plaintiffs' various complaints about "delay" in productions are inaccurate.  Dkt. No. 469 at 6.  Intervenor-Defendants have diligently complied with their discovery obligations. Intervenor-Defendants timely served responses and objections to Plaintiffs' discovery requests in August 2022.  *See* Ex. C.  That month, Intervenor-Defendants identified the relevant custodians for four of the Committees.  *See* Ex. D.  Counsel then collected a substantial number of documents, crafted appropriate search terms, identified additional custodians, and began reviewing documents. *See supra* at 9–10.  Plaintiffs dismiss Intervenor-Defendants' overbreadth concerns as "lacking factual support" and "boilerplate."  Dkt. No. 469 at 5–6.  But Plaintiffs ignore that Intervenor-Defendants specifically objected to the relevance and proportionality of discovery requests seeking documents that were not before the Texas Legislature.  *See* Ex. C at 10–29.  Moreover, Intervenor-Defendants explained to Plaintiffs during the meet-and-confer process the concrete burdens imposed by their overbroad discovery requests.  *See* Ex. G.  Plaintiffs' unreasonable insistence on productions shortly before the November 8 general election and while counsel for Intervenor-Defendants was in trial only highlights the additional burdens Plaintiffs have imposed on Intervenor-Defendants.  *See id.*

Plaintiffs' objections to Intervenor-Defendants' interrogatory responses are likewise baseless.  Plaintiffs complain that the Intervenor-Defendants' responses to Interrogatories 5–10 "reference[] their forthcoming production."  Dkt. No. 469 at 5.  But Plaintiffs fail to mention that those interrogatories ask for that precise information—*i.e.*, that Intervenor-Defendants "[i]dentify" "by Bates number" responsive documents they produce.  *See* Ex. B at 9–11.  As Intervenor-Defendants stated, they will identify any communications responsive to these interrogatories that they produce in the litigation.  *See* Ex. D. at 16–22.  Interrogatories 1 and 3 relate to the state interests advanced by SB 1, and Intervenor-Defendants sufficiently responded that they intend to

argue in support of the same state interests advanced by the State Defendants.  *Id.* at 12–14. Further, these interrogatories improperly seek Intervenor-Defendants' legal theories.  *See* Fed. R. Civ. P. 33, advisory committee notes ("[I]nterrogatories may not extend to issues of 'pure law.'"); *Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) ("Instead of 'the application of law to fact,' these responses would involve issues of 'pure law,' and for that reason are impermissible under Rule 33[(a)(2)]."). Finally, Intervenor-Defendants objected to Interrogatory 4 because it seeks to impermissibly relitigate the motion to intervene.  *Id.* at 14–15.

*Second*, Plaintiffs ask the Court to extend "to January 27, 2023 the deadline to complete discovery related to the primary election as to Defendant Intervenors."  Dkt. No. 469 at 11. Intervenor-Defendants oppose this request to the extent it seeks to broaden the scope of discovery permitted under the scheduling order.  As explained, *supra* at Part I, Plaintiffs sought and the Court granted only limited additional discovery with respect to the primary election discovery period, and Plaintiffs' discovery requests are outside that scope.  In light of the irrelevance and disproportionality of Plaintiffs' discovery requests, amending the scheduling order to permit broader discovery than permitted under the scheduling order is unwarranted.

*Third*, Plaintiffs ask the Court to require Intervenor-Defendants "to cooperate in the taking of depositions of individuals associated with or employed by" Intervenor-Defendants.  Dkt. No. 469 at 11.  This order is unnecessary and unwarranted.  Plaintiffs' complaint appears to be that counsel for Intervenor-Defendants did not accept service of process for Plaintiffs' deposition notices.  But Plaintiffs' various deposition requests were improper, *see supra* Parts I-III, and, in any event, they seek to depose the five named individuals "in their individual capacities," not as representatives of Intervenor-Defendants, Ex. F at 20.   Regardless, counsel for Intervenor-Defendants accepted service of Plaintiffs' (improper) Rule 30(b)(6) notices, as well as one of the

subpoenas on an individual. This comported with Intervenor-Defendants' consistent (and correct) position that the depositions were not permitted under the scheduling order. *See id.* at 17–18.

*Fourth*, the Court should decline Plaintiffs' invitation to amend the scheduling order Plaintiffs advocated for and exempt the eight depositions noticed by Plaintiffs on October 21, 2022, from the ten-deposition limit. Dkt. No. 169 at 11. As explained, *supra* at Part I, the scheduling order does not permit these depositions with respect to the primary election discovery period. If any such depositions proceed during the general election discovery period, they count against the deposition limit that Plaintiffs themselves sought.

*Finally*, there is no basis for the Court to award attorneys' fees in connection with the motion to compel. Dkt. No. 169 at 11. Plaintiffs have waived any such claim by failing to present arguments in support of it. *See Paez v. Wal-Mart Stores Texas, LLC.*, No. EP-20-CV-00321-DCG, 2022 WL 3216343, at *2 (W.D. Tex. Aug. 9, 2022) ("[W]hen a litigant fails to develop an argument before this Court, that litigant waives that argument."); *id.* at n.1 (collecting cases). Moreover, under Rule 37(a)(5)(A)(ii), a court may award attorneys' fees only if the opposing party's position was not "substantially justified." Intervenor-Defendants' objections to Plaintiffs' discovery requests are substantially justified, for the reasons stated herein. *See supra* at I–III.

## CONCLUSION

The Court should deny Plaintiffs' motion to compel and grant the Intervenor-Defendants' cross-motion for a protective order.

October 31, 2022

Respectfully submitted,

*/s/ John M. Gore*
John M. Gore
E. Stewart Crosland*
Stephen J. Kenny*
Charles E.T. Roberts
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
skenny@jonesday.com
cetroberts@jonesday.com

*Counsel for Proposed Intervenor-Defendants*

*\*Pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 31, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

<i>/s/ John M. Gore</i>