**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.,*<br><br>*Plaintiffs,*<br><br>v.<br><br>STATE OF TEXAS, *et al.,*<br><br>*Defendants.* | No. 5:21-cv-00844-XR<br>(Consolidated Cases) |

**CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF
LUPE, HAUL, AND LULAC PLAINTIFFS' OPPOSED MOTION TO COMPEL AND
TO AMEND THE SCHEDULING ORDER (ECF 469) AND IN OPPOSITION TO
INTERVENOR DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER
(ECF 471)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.     Plaintiffs Properly Sought Discovery Concerning the Parties' Claims and Defenses In This Action.................................................................................................................. 3

II.    Plaintiffs' Requests Were Timely ...................................................................... 6

III.   Intervenor Defendants Failed to Comply With Their Discovery Obligations .................. 7

IV.   Intervenor Defendants Misunderstand the Amended Scheduling Order ........................... 9

V.    Intervenor Defendants Fail to Establish the Need for a Protective Order on First Amendment Privilege Grounds at This Juncture ............................................................. 12

CONCLUSION ..................................................................................................................... 14

## INTRODUCTION

Intervenor Defendants[1] asked to become full-fledged parties in this Action.  In their motion to intervene, Intervenor Defendants made clear that they "will raise defenses that share many common questions with the parties' claims and defenses," *e.g.*, ECF 57 at 10, 12, and represented to this Court that they "will follow any schedule the Court sets," *id.* at 12.  After their initial motion to intervene was denied, they declined this Court's invitation to serve as amici and appealed to the Fifth Circuit.  After a successful appeal, Intervenor Defendants became full-fledged parties with concomitant rights and obligations.  While Intervenor Defendants got their wish, they failed to keep their word.

Plaintiffs timely sought discovery from Intervenor Defendants concerning Plaintiffs' claims and Defendants'—including Intervenor Defendants'—defenses.  Plaintiffs sought targeted discovery concerning, among other things, (i) SB 1, its predecessor bills and the purported justifications for the voting restrictions therein, including promoting so-called "election integrity" and combatting alleged voter fraud (ROGs 1–3, 5; RFPs 1–7, 11–13); (ii) the recruitment and training of election judges, election clerks, poll workers, and poll watchers as well as instances of violence, discrimination, harassment or inappropriate behavior by any of the above (ROGs 8–9; RFPs 8–10); and (iii) the impact or potential impact of SB 1 and its predecessor bills on the demographic groups at issue in the consolidated actions (ROGs 7,10; RFPs 14–20).  These topics, among others, go to the heart of Plaintiffs' claims and Defendants' (including Intervenor Defendants') defenses and are clearly relevant and appropriate.  Any doubt as to the relevancy and appropriateness of these is assuaged by the fact that Intervenor

---

[1] Harris County Republican Party, Dallas County Republican Party, Republican National Committee ("RNC"), National Republican Senatorial Committee ("NRSC"), and National Republican Congressional Committee ("NRCC").

Defendants' served nearly identical requests on Plaintiffs.  *See* Exhibit A to the Declaration of Jonathan Bash (Intervenor RFPs); Exhibit B to the Declaration of Jonathan Bash (Intervenor ROGs).

Despite Intervenor Defendants' commitment, upon intervention, to comply with scheduling orders, not to mention their discovery obligations under the Federal Rules, Intervenor Defendants have produced *zero* documents to date.  Instead, as Plaintiffs explained in their motion, Intervenor Defendants offered only non-specific, boilerplate objections and incomplete responses to Plaintiffs' discovery requests; made sweeping assertions of First Amendment privilege while refusing to substantiate their claims in a privilege log; and refused to accept deposition notices Plaintiffs were forced to issue before receiving any documents.[2]  Through this motion, Plaintiffs respectfully seek this Court's assistance in compelling Intervenor Defendants to comply with the discovery obligations applicable to all parties in litigation, and which Intervenor Defendants themselves voluntarily agreed to undertake by becoming parties here.

In their opposition brief, Intervenor Defendants make it abundantly clear that they believe the rules do not apply to them.  Intervenor Defendants argue that this Court awarded them "*both a broader scope of potential discovery and more time to conduct it than any other party*" while making Intervenor Defendants subject only to narrow discovery related solely to the "primary election" and no witnesses.  Of course, that is not what the Amended Scheduling Order says.  Intervenor Defendants are also wrong in asserting that their refusal to disclose witnesses immunizes them from their discovery obligations as parties to this action.

---

[2] On October 21, 2021, Intervenor Defendants did ultimately accept all five subpoenas for deposition served by Plaintiffs (*see* ECF 471-8), nine days after they initially refused to accept any such subpoenas (ECF 471-6, at 13).

Last, Intervenor Defendants—for the first time via cross-motion—seek a protective order from the discovery propounded on them more than three months earlier; Intervenor Defendants base their motion on a sweeping assertion of First Amendment privilege. However, Intervenor Defendants made no attempt to seek relief from the Court before the discovery deadline and do not substantiate their claims on a document-by-document basis as required. Intervenor Defendants' motion is thus premature and without support.[3]

For these and other reasons set forth below and in Plaintiffs' opening papers, Plaintiffs respectfully request that the Court grant their motion to compel and to amend the scheduling order.

**ARGUMENT**

Because Plaintiffs' motion to compel and to amend the scheduling order should be granted for the same reasons Intervenor Defendants' motion for a protective order should be denied, Plaintiffs address the issues raised in these motions together below.

**I.     PLAINTIFFS PROPERLY SOUGHT DISCOVERY CONCERNING THE PARTIES' CLAIMS AND DEFENSES IN THIS ACTION**

Under Fed. R. Civ. P. 26, courts "generally hold that a request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.'" *Rocha v. Metro. Life Ins. Co.*, No. SA-05-CA-60-FB, 2005 U.S. Dist. LEXIS 51637, at *3 (W.D. Tex. Sep. 27, 2005).

In seeking to become a party, Intervenor Defendants assured this Court that they "will raise defenses that share many common questions with the parties' claims and defenses."

---

[3] State Defendants filed their own response in opposition to Plaintiffs' motion to argue that Plaintiffs missed the deadline to take depositions of Intervenor Defendants' witnesses and, if allowed, they should count against the general elections deposition limit. ECF 472. State Defendants' arguments largely overlap with Intervenor Defendants' arguments and fail for the reasons discussed below.

ECF 57 at 13.  As the parties' submissions in connection with the motion and cross-motion make

plain, Plaintiffs' discovery requests are directly relevant to the claims and defenses at issue in

this case and are entirely consistent with the scope of discovery permitted under the Federal

Rules, a conclusion reinforced by the fact that Intervenor Defendants served discovery requests

nearly identical to those they now object to.

On the face of the requests, Plaintiffs' First Set of Requests for Production of Documents,

ECF 469-1 ("1st RFPs" or "Requests") and First Set of Interrogatories, ECF 469-2 ("ROGs")

sought discovery concerning:

- SB 1 and its predecessor bills (1st RFPs 1, 3, 6, 11; *see also* ROG 6);

- The connection between the challenged provisions of SB 1 and the electoral prospects of candidates supported by Intervenor Defendants (ROG 4);

- purported justifications for SB 1, including so-called "election integrity" and voter fraud (1st RFPs 2, 4, 5, 7, 12, 13 *see also* ROG 1–3, 5, 7, 10);[4]

- the recruitment and training of election judges, election clerks, poll workers, and poll watchers as well as instances of violence, discrimination, harassment or inappropriate behavior by any of the above (1st RFPs 8–10; *see also* ROGs 8, 9); and

- the impact or potential impact of SB 1 and its predecessor bills on counties and demographic groups at issue in consolidated actions (1st RFPs 14–20).

When compared to the claims and defenses in this Action, the Requests are both highly

relevant and proportional to the needs of the case.  Intervenor Defendants say Plaintiffs' "central

claim" is that "the Texas Legislature enacted SB 1 with the intent to discriminate and unduly

---

[4] For example, Interrogatories 1 and 2 seek information regarding "the state interests [Intervenor Defendants] purport to be advanced by the Suppressive Provisions of SB 1" and "any research, analysis, or investigation to determine whether or how that interest would be advanced or impacted by any provision of SB 1."  ECF 469-2.  Similarly, Interrogatory 3 seeks the basis for any contention "that any Suppressive Provisions of SB 1 advance the legitimacy of Texas's election framework and administration."  The information sought by these and other interrogatories is central and narrowly tailored to Defendants' defenses.  *See also id.* (ROGs 6, 7, 10 regarding the intent of the Texas Legislature).

burden the right to vote of Black and Latino voters, as well as differently abled voters," ECF 471 at 4.   Both State Defendants and Intervenor Defendants maintain that the key reasons for enacting SB 1 included promoting so-called "election integrity" and combatting alleged voter fraud.  ECF 57 at 1; ECF 208 ¶98.  And, as the Fifth Circuit recognized, Plaintiffs also challenge provisions of SB 1 that give poll watchers "more rights" and "with those new rights comes [sic] new remedies, specifically for the Committees themselves" as the appointing authorities for poll watchers.  5C Order at 10–11.[5]  Having affirmatively chosen to become parties (not amici) to this litigation, Intervenor Defendants cannot avoid their discovery obligations by claiming that discovery targeted at the claims and defenses at issue is irrelevant.   Indeed, Intervenor Defendants' arguments as to irrelevance and disproportionality ring especially hollow since, instead of timely seeking relief from the Court, Intervenor Defendants simply copied and pasted the same purportedly overbroad and irrelevant requests and (with little modification) served the same on Plaintiffs.  *See* Exhibit A to Bash Decl. (Intervenor RFPs); Exhibit B to Bash Decl. (Intervenor ROGs).[6]

Moreover, and contrary to Intervenor Defendants' argument that "SB 1's legislative history has been filed on the public docket for more than 11 months," ECF 471 at 19, the Requests plainly seek documents and communications not in the public record, such as Intervenor Defendants communications with the Texas Legislature, Defendants, third-party

---

[5] What Intervenor Defendants say to recruit partisan poll watchers and how they train them as to what poll watchers can and cannot do at the polling place is directly and highly relevant to Plaintiffs' claims.   Intervenor Defendants' argument that documents concerning their "recruitment and training of poll watchers" have no bearing on the Texas Legislature's discriminatory purpose is disingenuous at best.  ECF 471 at 18.

[6] State Defendants and Intervenor Defendants have also said that SB 1 will increase voter turnout and make voting easier over time.  Requests 17 to 19 target discovery as to those defenses.

organizations and candidates.  Such documents are likely to shed light on the Texas Legislature's intent in passing SB 1.

Thus, the documents and communications sought in Plaintiffs' Requests go to the very heart of Plaintiffs' claims challenging SB 1, including documents Intervenor Defendants "sent to or exchanged with" the Texas Legislature, State or local officials (including Defendants), partisan third-party organizations, or candidates for elected office,.[7]

## II.    PLAINTIFFS' REQUESTS WERE TIMELY

Intervenor Defendants take the position that Plaintiffs' deadline to take discovery of Intervenor Defendants was August 12, 2022.  *E.g.*, ECF 471 at 5. Plaintiffs disagree.

But even accepting Intervenor Defendants' interpretation of the applicable deadlines, Plaintiffs' discovery requests were timely served.  Plaintiffs served their 1st RFPs on July 7, 2022.  Intervenor Defendants' responses were due 30 days later on August 6, 2022.  *See* Fed. R. Civ. P. 34(b)(2)(A).  Plaintiffs served their 1st ROGs on July 13, 2022.  Intervenor Defendants' responses were due 30 days later on August 12, 2022.  *See* Fed. R. Civ. P. 33(b)(2).  Therefore, even under Intervenor Defendants' self-servingly contrived and incorrect view that the cutoff for discovery of them in this case was August 12, Plaintiffs' interrogatories and RFPs were timely and responses were owed.  Yet Intervenor Defendants have not, as of this writing, properly responded.

Of course, though, the Amended Scheduling Order cannot be read as narrowly as Intervenor Defendants would like.  Rather, as discussed further below, while the Court and the parties agreed that outstanding discovery among the named parties would conclude in August,

---

[7] Although Intervenor Defendants coyly refer to SB 7, HB 3, and HB 6 as "bills that were never enacted" (ECF 471 at 17), these bills were predecessors to the enacted SB 1 with the same or similar stated purpose and contained many of the same or similar provisions as SB 1 and thus bear directly on Plaintiffs' claims and Defendants' defenses in this Action.

the Court set "[t]he discovery deadline for completion of discovery on matters related to the primary election as to Intervenors" as October 24, 2022.  ECF 437.  But even under their own view of the schedule, Intervenor Defendants are in default on their written discovery responses.

## III.   INTERVENOR DEFENDANTS FAILED TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS

Contrary to their commitment to "follow any schedule the Court sets," ECF 57, Intervenor Defendants have failed to keep their promise and should now be required to comply with their discovery obligations as parties to this case.  ECF 469 at 2.

Intervenor Defendants have now had more than three months to comply with Plaintiffs' reasonable and relevant discovery requests.  Plaintiffs tried in good faith to meet and confer with Intervenor Defendants to address any burden concerns, *see* ECF 469 at 3, but Intervenor Defendants have resisted Plaintiffs' attempts to reach a reasonable resolution of this discovery dispute without involving the Court.  Among other things, Intervenor Defendants repeatedly refused even to begin reviewing documents, and they did not finish identifying document custodians or begin applying search terms until October 20th, more than two months after their discovery responses were due.  ECF 471-7 at 6. Moreover, to the extent that Intervenor Defendants argue that the volume of documents to be reviewed is overbroad, they did not raise that issue until four days before the close of discovery—despite engaging in multiple meet and confers with us. ECF 471, Ex. G at 1.

Intervenor Defendants' non-specific claims of burden are also unavailing.  Intervenor Defendants only make broad and vague statements that participating in discovery is "extremely time-consuming and expensive" without explaining how their discovery costs are more uniquely burdensome than those of any other party in this case.  Discovery is burdensome on every party to litigation; Rule 26 only precludes *unduly* burdensome discovery, and Intervenor Defendants

have not come forward with any evidence supporting their bald assertion that they have been unduly burdened.   As an initial matter, Intervenor Defendants' failure to present evidentiary support in furtherance of their otherwise bald assertions regarding burdensomeness is basis alone to deny their request for a protective order.   *See, e.g.*, *Robroy Industries - Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 U.S. Dist. LEXIS 8510, at *7 (E.D. Tex. Jan. 23, 2017) (citing *McLeod, Alexander, Powel & Apfell, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)) ("In the absence of some evidentiary showing that a discovery request would be burdensome, it is appropriate for a court to reject a request for a protective order on the ground that the undue burden claim is conclusory.").   Moreover, it would be disingenuous for Intervenor Defendants to suggest that the discovery Plaintiffs served on them is overly burdensome where they served the exact same discovery on Plaintiffs.  *See supra* at 2.

Intervenor Defendants may not merely allege that the act of participating in discovery itself is costly when they chose to join this litigation as parties.   Nor is Intervenor Defendants' claim that discovery would "divert resources away from election campaigns" persuasive; if it were, Plaintiffs and State Defendants would equally be absolved of all of their discovery obligations.   Intervenor Defendants affirmatively inserted themselves into this action and agreed to comply with the discovery schedule set by the court and never sought a modification or extension based on the upcoming elections. *See* ECF 57 at 12 (the GOP Intervenor-Defendants represented that their intervention would "not delay these cases[...]" and that they "will follow any schedule the Court sets and do not intend to engage in duplicative discovery."); *see also* ECF 111 at 10 (the GOP Intervenor-Defendants represented that their "intervention will not cause any delay or prejudice, undue or otherwise[,]" as the "case is still in its infancy, and the Republican Committees will 'comply with the schedule that would be followed in their absence[,]'" (internal

citations omitted), and made a "firm pledge to avoid any duplication and to abide by any schedule the court sets."). Moreover, the review and production of these documents do not fall on the campaign staff or the candidates for election, but on their counsel. Discovery "will not involve [Defendant-Intervenors'] own time and will therefore not impose a personal burden on [them]." *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, No. SA-11-CV-163-XR, 2014 U.S. Dist. LEXIS 62040, at *10 (W.D. Tex. May 5, 2014).

Absent an order compelling Intervenor Defendants to produce documents in response to the Requests and otherwise comply with their party discovery obligations, Intervenor Defendants will be rewarded for their strategic and evasive conduct.

## IV.     INTERVENOR DEFENDANTS MISUNDERSTAND THE AMENDED SCHEDULING ORDER

Intervenor Defendants' arguments that the Court's scheduling order does not require them to comply with their discovery obligations are untenable and should be rejected.

Among other things, Intervenor Defendants argue that this Court awarded them "*both* a broader scope of potential discovery *and* more time to conduct it than any other party" while making Intervenor Defendants subject only to narrow discovery specifically related to the primary election and excluding any witnesses. ECF 471 at 14–15. As Plaintiffs' opening brief explained, however, Intervenor Defendants misread the Amended Scheduling Order. ECF 469.

Contrary to Intervenor Defendants' theory, the Amended Scheduling Order does not preclude Plaintiffs from seeking discovery from Intervenor Defendants that is not strictly related to the March 2022 primary election. ECF 471 at 12. As Intervenor Defendants are well aware, the purpose of the different deadlines in the Amended Scheduling Order was to avoid duplicative discovery "as to" Plaintiffs, State Defendants, and County Defendants (the "original parties")

9

while allowing all parties more time for discovery "as to" Intervenor Defendants.  ECF 437.[8] Indeed, the Amended Scheduling Order is clear that discovery during the period ending October 24, 2022, "may include," among other things, the depositions of Christina Adkins and Kristi Hart and "depositions of any witnesses who may have relevant testimony concerning" documents over which the State Defendants had asserted legislative, attorney-client, work-product and investigative privileges—as well as the later-added Intervenor Defendants.  ECF 42 (Order), 437 (Amended Scheduling Order).  These outstanding items (like the parties' discovery "as to" Intervenor Defendants) were in no way restricted to the primary election.

In State Defendants' response to Plaintiffs' motion, State Defendants argue that Plaintiffs' interpretation of the Amended Scheduling Order as allowing depositions of Intervenor Defendants to be taken through October 24 "would render the amended scheduling order nonsensical" and allow "[a]ll parties … to engage in endless third-party discovery."  ECF 472 at 4.  But State Defendants' hyperbole ignores the fact that none of the prior scheduling orders in this case specifically set deadlines as to third-party discovery.  *See, e.g.*, ECF Nos. 125 and 437. Rather, it has always been the case that the parties' opportunity to seek third-party discovery concludes at the end of the fact discovery period.

Nor does Plaintiffs' motion attempt to "slant the playing field," as State Defendants argue.  ECF 472.  Plaintiffs still have not received a single document from Intervenor Defendants

---

[8] Intervenor Defendants misconstrue the Plaintiffs' proposal in the Joint Notice.  *See* ECF 436 at 5.  There, Plaintiffs sought to limit discovery on the original parties to avoid "unnecessary burden, uncertainty, and duplication of effort and risk further delay of trial."  ECF 436 at 3. Plaintiffs' statement that a new scheduling order would give "all parties nearly three months of additional discovery than originally contemplated under the amended Scheduling Order (ECF 368)" did not apply to Intervenor Defendants, who did not become parties to this case until after the prior amended scheduling order.  ECF 368.  To the contrary, it was expected that Plaintiffs would serve additional discovery requests on the Intervenor Defendants.  ECF 436, at 2.

despite issuing timely document requests more than three months ago.  As relevant to State Defendants' argument, Plaintiffs' motion simply seeks the opportunity to take already noticed depositions once Plaintiffs have the benefit of Intervenor Defendants' discovery without prejudicing Plaintiffs' ability to develop the discovery record as to the general election.  State Defendants were similarly free to conduct discovery "as to" Intervenor Defendants through October 24, 2022.  Their strategic choice not to do so—perhaps because they did not believe such discovery would be helpful to their defenses—does not mean the playing field is not level.

Intervenor Defendants also ask this Court to set aside Plaintiffs' highly relevant discovery requests because they are not limited to the zero witnesses Intervenor Defendants listed in initial disclosures filed in November 2021 *before* they were admitted as parties.  ECF 471 at 6; ECF 110 at 1–2.  Of course, the language in the Amended Scheduling Order concerning witnesses "already and newly disclosed" simply clarified that witnesses later disclosed by Intervenor Defendants would be fair game for depositions. This language in the Amended Scheduling Order was not a limitation on Plaintiffs' ability to depose relevant witnesses where (as here) Intervenor Defendants did not disclose any witnesses or update their initial disclosures after becoming parties. ECF 110 at 1–2.  Moreover, if Intervenor Defendants' reading of the Amended Scheduling Order were correct (and it is not), it would serve to reward a party opponent for not disclosing witnesses in its required initial disclosures, which is plainly inconsistent with the Federal Rules governing party discovery.

As parties to the case, both the original parties and Intervenor Defendants had discovery rights and obligations "as to" Intervenor Defendants through the October 24 deadline.  The Intervenor Defendants' reading of the Amended Scheduling Order is nothing more than a self-

serving attempt to avoid the discovery obligations they took on by joining this this action as parties.

The Intervenor Defendants fought to be in this case. Having achieved intervention, they must participate in discovery; logically, the Intervenor Defendants should *want to* participate in it. The Intervenor Defendants should not be rewarded for evading discovery, and they should comply with existing discovery requests without further delay.

## V. INTERVENOR DEFENDANTS FAIL TO ESTABLISH THE NEED FOR A PROTECTIVE ORDER ON FIRST AMENDMENT PRIVILEGE GROUNDS AT THIS JUNCTURE

In their cross-motion, Intervenor Defendants ask for a protective order shielding them not only from producing materials that may be subject to First Amendment privilege, but also from even having to compile a privilege log. ECF 471 at 22. Such a request is inconsistent with long-settled law on how privilege assertions work and even inconsistent with the authority Intervenor Defendants rely on in their papers.

A protective order should only be granted "upon a showing of 'good cause' and [where] 'justice requires protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Rocha*, 2005 U.S. Dist. LEXIS 51637, at *3 (cleaned up). Intervenor Defendants have not carried their burden in making such a showing here.

As the Fifth Circuit recognizes, when privilege "has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to achieve its purpose." *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020). Privilege "may not be tossed as a blanket over an undifferentiated group of documents," *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982), but must "be specifically asserted" on a document-by-document basis. *Taylor Lohmeyer Law Firm P.L.L.C.*, 957 F.3d at 510; *see also* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information

otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); Appendix H-1, Western District of Texas Local Rules (a protective order "does not confer blanket protections on all disclosures of responses to discovery").

Guided by Rule 26 and *Taylor Lohmeyer Law Firm P.L.L.C.*, Intervenor Defendants cannot avoid their discovery obligations by asserting that First Amendment privilege broadly applies across all documents in their possession while simultaneously refusing to produce a privilege log or otherwise substantiate that blanket assertion on a document-by-document basis. Indeed, the cases on which Intervenor Defendants rely say just that.  At minimum, as the Ninth Circuit recognized in *Perry*, Intervenor Defendants are required to produce a privilege log that complies with the Federal Rules of Civil Procedure and sufficiently details the basis for withholding any given document for privilege, for each document being withheld. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1153 n.1 (9th Cir. 2010) (though the Court recognized the existence and validity of the First Amendment privilege being raised, the Court also specifically found "that some form of a privilege log is required and reject[ed] Proponents' contention that producing any privilege log would impose an unconstitutional burden.").

Absent a sufficiently detailed privilege log, Intervenor Defendants' cross-motion should be denied as unsubstantiated and premature.[9]

---

[9] Additionally, Intervenor Defendants' reliance on *Perry* is misplaced. 591 F.3d 1147; *see* ECF 471 22–26.  In *Perry*, the court considered a proposition enacted by voters where the intervenors agreed to produce some discovery, including "all communications actually disseminated to voters, including 'communications targeted to discrete voter groups,'" *id.* at 1164–65.  Here, by

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Intervenor Defendants' cross-motion for a protective order and instead compel Intervenor Defendants to produce documents, responses and witnesses in response to Plaintiffs' discovery requests, extend the discovery deadline as to Intervenor Defendants to January 27, 2023, and grant such other relief requested in Plaintiffs' motion and as this Court deems proper.  ECF 469 at 10–11.


Date:  November 7, 2022

/s/ Nina Perales
Nina Perales
Julia R. Longoria
MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org

Michael C. Keats*
Rebecca L. Martin*
Jason S. Kanterman*
Kevin Zhen*
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Respectfully submitted,

 /s/ Sean Morales-Doyle
Sean Morales-Doyle
Eliza Sweren-Becker*
Patrick A. Berry*
Jasleen K. Singh*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
eliza.sweren-becker@nyu.edu
patrick.berry@nyu.edu


* Admitted *pro hac vice*


Paul R. Genender
Texas State Bar No. 00790758
Elizabeth Y. Ryan

---

contrast, the law at issue was enacted by the Texas Legislature, which the requested discovery would likely show includes legislators selected, trained, and supported by Intervenor Defendants, and Intervenor Defendants have refused even to begin reviewing documents. Intervenor Defendants may not make sweeping assertions of First Amendment privilege to categorically shield these documents (as the privilege would not, for example, apply to documents exchanged with the Texas Legislature).

michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com
kevin.zhen@friedfrank.com
* Admitted *pro hac vice*

*Attorneys for Plaintiffs:*
LA UNIÓN DEL PUEBLO ENTERO
 SOUTHWEST VOTER REGISTRATION
  EDUCATION PROJECT
 MEXICAN AMERICAN BAR
  ASSOCIATION OF TEXAS
 TEXAS HISPANICS ORGANIZED FOR
  POLITICAL EDUCATION
 JOLT ACTION
 WILLIAM C. VELASQUEZ INSTITUTE
 FIEL HOUSTON INC.

Texas State Bar No. 24067758
Matthew Berde*
Texas State Bar No. 24094379
Megan Cloud
Texas State Bar No. 24116207
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
Liz.Ryan@weil.com
Paul.Genender@weil.com
Matt.Berde@weil.com
Megan.Cloud@weil.com


* Admitted *pro hac vice*

*Attorneys for Plaintiffs:*
FRIENDSHIP-WEST BAPTIST
    CHURCH
ANTI-DEFAMATION LEAGUE
    AUSTIN, SOUTHWEST, AND
    TEXOMA REGIONS
TEXAS IMPACT
JAMES LEWIN

By: /s/ Georgina Yeomans
Kenneth E. Broughton
Texas Bar No. 03087250
kbroughton@reedsmith.com
J. Keely Dulaney*
Texas Bar No. 24116306
kdulaney@reedsmith.com
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
Sarah Cummings Stewart
Texas Bar No. 24094609

Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200

15

Facsimile: (469) 680-4299
sarah.stewart@reedsmith.com

Danielle Ahlrich
Texas Bar No. 24059215
401 Congress Avenue, Suite 1800
Austin, TX 78701
Telephone: (512) 623-1777
dahlrich@reedsmith.com
Kathryn Sadasivan*
Amir Badat*
Liliana Zaragoza*
Ciara A. Sisco*

NAACP Legal Defense and Educational
Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
ksadasivan@naacpldf.org
abadat@naacpldf.org
lzaragoza@naacpldf.org
csisco@naacpldf.org
Jennifer A. Holmes*
Georgina Yeomans*
R. Gary Spencer*+

NAACP Legal Defense and Educational
Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
Facsimile: (202) 682-1312
jholmes@naacpldf.org
gyeomans@naacpldf.org
Shira Wakschlag*

The Arc of the United States, Inc.
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org
*Counsel for Plaintiffs Houston Area Urban
League; Delta Sigma Theta Sorority, Inc.;*

*The Arc of Texas; and Jeffrey Lamar Clemmons*

Wendy J. Olson* Laura E. Rosenbaum*
Marc Rasich*
Elijah Watkins*
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
Sean Lyons
State Bar No. 00792280
Sean@lyonsandlyons.com
Clem Lyons
State Bar No. 12742000
Clem@lyonsandlyons.com
LYONS & LYONS, P.C.
237 W. Travis Street, Suite 100
San Antonio, Texas 78205
Telephone: (210) 225-5251
Telefax: (210) 225-6545

Courtney Hostetler*
Ron Fein*
John Bonifaz*
Ben Clements*
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

*Attorneys for Plaintiffs Mi Familia Vota, Marla López, Marlon López, and Paul Rutledge*

* Admitted pro hac vice
+ *Mailing address only. Work remotely from, and admitted to practice in, Georgia.*

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Graham White*
Noah B. Baron*
Mike Jones*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Marcos Mocine-McQueen*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elias.law
gwhite@elias.law
nbaron@elias.law
mjones@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
mmcqueen @elias.law

Counsel for LULAC Plaintiffs

*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this document with this Court using the
CM/ECF system, which provides notice of this filing to all registered CM/ECF users on the 7th
day of November, 2022.

*/s/ Julia Longoria*
Julia Longoria