**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

La Unión Del Pueblo Entero, *et al.*,

                *Plaintiffs*,

v.

Gregory W. Abbott, *et al.*,

                *Defendants.*

No. 5:21-cv-00844-XR
(Consolidated Cases)

## <u>REPLY IN SUPPORT OF INTERVENOR-DEFENDANTS'<br>CROSS-MOTION FOR A PROTECTIVE ORDER</u>

Plaintiffs' combined response and reply brief (Dkt. No. 475) confirms that the Court should deny Plaintiffs' motion to compel and grant Intervenor-Defendants' motion for a protective order.

*First*, Plaintiffs fail to reconcile their sweeping discovery demands with their prior representations that the "limited" discovery of Intervenor-Defendants they would seek during the primary election discovery period would be "discovery of witnesses disclosed" or "newly disclosed by Intervenors," Dkt. No. 436 at 2, 4—representations the Court incorporated into the scheduling order, Dkt. No. 437 at 1–2.  Nor could they do so: Plaintiffs' discovery requests stray far beyond the scheduling order they requested and, thus, are improper for this reason alone.  *See* Dkt. No. 471 at 5–8, 12–16.

*Second*, Plaintiffs' various concessions that this case concerns "SB 1" and "the Texas Legislature's intent in passing SB 1," Dkt. No. 475 at 5–6, only underscore that their discovery requests are overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant, *see* Dkt. No. 471 at 16–20.  Intervenor-Defendants are not the Texas Legislature, did not enact SB 1, and do not enforce it.  Yet the lion's share of Plaintiffs' discovery requests seek

1

Intervenor-Defendants' purely internal documents and information on a broad variety of topics—including documents and information completely untethered to SB 1 and the Texas Legislature's decision to enact it. And Plaintiffs' contention that Intervenor-Defendants "have not come forward with any evidence supporting their . . . assertion that they have been unduly burdened," Dkt. No. 475 at 7–8, is simply baffling: *each* Intervenor-Defendant has submitted a declaration to the Court documenting the heavy burdens imposed by Plaintiffs' discovery requests, *see* Dkt. No. 471-12 – 471-16.

*Third*, Plaintiffs do not seriously engage, let alone defeat, Intervenor-Defendants' First Amendment privilege against Plaintiffs' overbroad discovery. They therefore do not dispute that compelled disclosure of Intervenor-Defendants' internal documents and communications, and those shared with their political allies and candidates, would chill Intervenor-Defendants' First Amendment associational rights. Nor do Plaintiffs attempt to show that the discovery they seek is "highly relevant" to their claims. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). Instead, Plaintiffs contend that the Intervenor-Defendants must undergo the burden and expense of generating a First Amendment privilege log. But there is no need to do so here, where the parties and the Court are able to assess the Intervenor-Defendants' privilege claims without one.

Plaintiffs' insistence on a privilege log is particularly unwarranted here. Plaintiffs have generally objected to producing documents to Intervenor-Defendants on First Amendment grounds—and several Plaintiffs have even gone so far as to declare that they will not even *identify*, let alone produce a privilege log related to, documents they view as protected by First Amendment privilege. Plaintiffs cannot have it both ways: they cannot demand a privilege log from Intervenor-Defendants when several refuse to provide one themselves.

*Finally*, Plaintiffs repeat throughout their brief the overheated refrain that Intervenor-Defendants "asked to become full-fledged parties in this Action" and therefore, in Plaintiffs' view, have "obligations as parties to this action" to accede to Plaintiffs' discovery demands and timeline. Dkt. No. 475 at 1–2. Plaintiffs even lob the accusation that the Intervenor-Defendants have "failed to keep their word" and "believe the rules do not apply to them." *Id.* at 1–2. These accusations are inappropriate and unwarranted. The entire issue here is whether Plaintiffs' discovery demands against Intervenor-Defendants violate the Court's scheduling order, the Federal Rules, and the First Amendment, which protect *parties* from such overbroad, unduly burdensome, and irrelevant discovery, as well as compelled disclosure of privileged matters. Indeed, Plaintiffs have now lodged the same objections to Intervenor-Defendants' discovery requests that they claim Intervenor-Defendants have no right to raise to their discovery requests. At a minimum, Intervenor-Defendants have the same "rights" as other parties to the case, *id.* at 1, to be free from the irrelevant, overbroad, unduly burdensome, and disproportionate discovery demands.

If anything, it is Plaintiffs who have "failed to keep their word" in the joint notice and who "believe the rules" of the scheduling order, Rule 26, and the First Amendment "do not apply to them." *Id.* at 1–2. The Court should deny Plaintiffs' motion to compel and grant the Intervenor-Defendants' motion for a protective order.

## ARGUMENT

## I.   PLAINTIFFS' DISCOVERY REQUESTS EXCEED THE SCHEDULING ORDER

The Court should deny Plaintiffs' motion to compel and grant Intervenor-Defendants' motion for a protective order because Plaintiffs' discovery requests contravene their representations to the Court and the Court's scheduling order. *See* Dkt. No. 471 at 12–16.

Plaintiffs, in fact, largely ignore their representations to the Court in the joint notice. *See id.* at 5–8, 12–16; *see also* Dkt. No. 436 at 1–4. Plaintiffs thus never reconcile their statement that

3

the only "limited" discovery of Intervenor-Defendants they would seek during the primary election discovery period would be "discovery of witnesses disclosed" or "newly disclosed by Intervenors," Dkt. No. 436 at 2, 4, with the fact that *none* of their discovery requests pertain to any such (nonexistent) witness, *id.*; *see also* Dkt. No. 471 at 12–16.  Rather, Plaintiffs relegate to a footnote the contention that their use of the term "all parties" in the joint notice somehow excluded Intervenor-Defendants.  Dkt. No. 475 at 10 n.8.  But Plaintiffs now loudly—and repeatedly— protest that Intervenor-Defendants are "full-fledged parties in this Action," as they were on the date of the joint notice.  *Id.* at 1 ("full-fledged parties" repeated twice in first paragraph); *id.* at 2 ("parties" twice); *id.* at 5 ("parties"); *id.* at 6 ("parties"); *id.* at 11 ("parties"); *id.* at 12 ("parties"). Plaintiffs' attempt to explain away their prior representations to the Court rings hollow.

Plaintiffs' various efforts to reinterpret the scheduling order—which incorporated their representations and requests regarding the scope of discovery—likewise fail.  *First*, Plaintiffs offer no persuasive explanation as to how their discovery requests are proper when the scheduling order limited them to taking discovery of "witnesses both already and newly disclosed by Intervenors." Dkt. No. 437 at 1.  Plaintiffs argue that Intervenor-Defendants had an obligation to "disclose witnesses" whose testimony *Plaintiffs* might view as "relevant."  Dkt. No. 475 at 11.  But Intervenor-Defendants' only obligation under "the Federal Rules" Plaintiffs allude to, *id.*, was to disclose "individual[s] likely to have discoverable information" that *Intervenor-Defendants* "may use to support [their] claims or defenses" at trial, Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Fed. R. Civ. P. 26, advisory committee notes (a party is not "obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use").  And the scheduling order's limitation on Plaintiffs' discovery of Intervenor-Defendants to such witnesses does not "reward a

party opponent for not disclosing witnesses," Dkt. No. 475 at 11, because the party opponent may not use undisclosed individuals as witnesses at trial, *see, e.g.*, Fed. R. Civ. P. 37(c)(1).

*Second*, Plaintiffs' contention that their discovery requests of Intervenor-Defendants during the primary election discovery period "were in no way restricted to the primary election," Dkt. No. 475 at 10, ignores the plain language of the scheduling order: "[t]he deadline for completion of discovery *on matters related to the primary election* as to Plaintiffs, State Defendants, and County Defendants is August 12, 2022," and that "[t]he deadline for completion of discovery *on matters related to the primary election* as to Intervenors is October 24, 2022." Dkt. No. 437 at 1 (emphases added). Plaintiffs alternatively highlight that the scheduling order permits some discovery that was not "restricted to the primary election." Dkt. No. 475 at 10. But that argument only proves the Intervenor-Defendants' point: the Court restricted discovery to "matters related to the primary election" except for matters it otherwise specified. *See* Dkt. No. 437 at 1 (allowing depositions of witnesses concerning documents at issue in the Court's order granting Plaintiff LULAC's motion to compel (Dkt. No. 425)). The Court should reject Plaintiffs' interpretation to "avoid a construction that renders" the scheduling order's subject-matter restriction "meaningless or inoperative." *Van Houten v. City of Fort Worth*, No. 4:12-CV-826-Y, 2015 WL 13651282, at *5 (N.D. Tex. Apr. 7, 2015), *aff'd*, 827 F.3d 530 (5th Cir. 2016).

*Third*, Plaintiffs argue that Intervenor-Defendants are in "default" with respect to their written discovery responses. Dkt. No. 475 at 6–7. This allegation is overheated and baseless. As Plaintiffs concede, Intervenor-Defendants timely served written responses and objections to Plaintiffs' discovery requests. *See id.* Intervenor-Defendants have since that time diligently complied with their discovery obligations, met-and-conferred with Plaintiffs in good faith, and identified relevant custodians, collected documents, developed a list of proposed search times, and

begun reviewing documents.  Intervenor-Defendants have represented to Plaintiffs they intend to begin producing documents on or before December 1, 2022, a date that Plaintiffs do not argue prejudices them in any way.  Nor could it, since trial remains several months away.  There is simply no basis to accuse the Intervenor-Defendants of being in default with respect to their written discovery responses.

*Fourth*, Plaintiffs argue that their deposition notices were timely because they were issued by the October 24, 2022 deadline for primary election discovery "as to" Intervenor-Defendants rather than the August 12, 2022 deadline for primary election discovery "as to" Plaintiffs.  *See* Dkt. No. 475 at 9–10.  In support, Plaintiffs argue that the purpose of the two discovery deadlines "was to avoid duplicative discovery" as to the original parties "while allowing all parties more time for discovery 'as to' Intervenor Defendants." *Id.*  This is revisionist history:  Plaintiffs asked the Court for—*and the Court granted*—the August 12, 2022 deadline for their "limited" discovery of only witnesses "disclosed by" Intervenor-Defendants.  Dkt. No. 436 at 2.  Moreover, the purpose of the October 24, 2022 deadline was to provide Intervenor-Defendants, as new parties to the case, additional time to take discovery.  *See id.* at 4.  Plaintiffs "are well aware" of this sequence of events and their own requests to the Court, Dkt. No. 475 at 9, and may not escape them now, *see* Dkt. No. 471 at 12–16.

In all events, Plaintiffs' revisionist reading cannot save their belated deposition notices. "Notices served before the discovery deadline that purport to schedule depositions after the discovery deadline will not be enforced."  W.D. Tex. Local Rule CV-16(e).  Plaintiffs did not request to depose any person associated with the Intervenor-Defendants until October 5, 2022, and noticed the depositions for January 2023, *see, e.g.*, Dkt. No. 471-9 at 1, well after the October 24, 2022 discovery deadline they (selectively) embrace, *see* Dkt. No. 475 at 9–10.  These notices

therefore may "not be enforced," W.D. Tex. Local Rule CV-16(e), and any depositions conducted by Plaintiffs in the future must be limited to the general election and count against Plaintiffs' ten-deposition limit (which exceeds by two the limit Plaintiffs requested), *see* Dkt. No. 437 at 1–2; Dkt. No. 471 at 12–16.

*Finally*, the Court should deny the United States' request to modify the scheduling order to "clarify[]" that the eight depositions Plaintiffs have noticed should "not count against the ten general election depositions collectively allotted to the United States and Private Plaintiffs." Dkt. No. 474 at 1.  If the United States believes that conducting such depositions would "upset the United States' reasonable expectation to be able to take or join up to ten depositions regarding the general election" or "unduly constrain" its ability "to present this Court with a full record," *id.* at 2, the United States must resolve those issues with its co-plaintiffs with whom it shares the ten-deposition limit, *see* Dkt. No. 437 at 1–2.

Moreover, the United States has not filed a motion to amend the scheduling order, and good cause to amend the scheduling order is not present in any event.  *See Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010).  Specifically, the Intervenor-Defendants *will* be "prejudice[d]" by such a modification because they would be subject to eight depositions they otherwise would not be subject to under the scheduling order.  *See id.*  The United States maintains that the modification is necessary to "ensure" the Court receives adequate evidence regarding the implementation of SB 1 during the 2022 general election.  Dkt. No. 474 at 3.  But nothing in the current scheduling order prevents the parties from achieving that goal; indeed, the United States does not dispute that ten depositions are sufficient for that purpose.  It is Plaintiffs' desire to take depositions regarding matters unrelated to the 2022 general election that is the basis for the United

States' modification request, and the United States has not shown "the importance" of *that* modification, so the Court should deny its request.  *Meaux*, 607 F.3d at 167.

## II. PLAINTIFFS' PROPOSED DISCOVERY IS IRRELEVANT, OVERBROAD, UNDULY BURDENSOME, AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

The Court should deny Plaintiffs' motion to compel and grant Intervenor-Defendants a protective order because Plaintiffs' discovery requests violate Rule 26.  *See* Dkt. No. 471 at 16–20.   Intervenor-Defendants did not enact SB 1 and do not enforce it.  *See id.*  They are merely regulated, and participate in elections governed, under the law.  *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022).   Accordingly, Plaintiffs' discovery requests are overboard, unduly burdensome, and not "relevant to any party's claim or defense" or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Dkt. No. 471 at 16–20.

Plaintiffs offer five main arguments to try to salvage their sweeping discovery demands. All fail.

*First*, Plaintiffs' own concession that this case concerns "SB 1" and "the Texas Legislature's intent in passing SB 1," Dkt. No. 475 at 5–6, only underscores that their requests against Intervenor-Defendants are improper.  Plaintiffs contend that "Intervenor-Defendants['] communications with the Texas Legislature, Defendants, third-party organizations and candidates . . . are likely to shed light on the Texas Legislature's intent in passing SB 1." *Id.*  Plaintiffs thus ignore that Intervenor-Defendants *already* have offered in good faith to produce any non-privileged documents regarding SB 1 that they created and shared "with the Texas Legislature or the public" and that "are not already available to Plaintiffs."  Dkt. No. 471 at 19–20.

Moreover, at least one group of Plaintiffs has conceded that documents "not before the Texas Legislature when it considered SB 1 and its predecessor bills" are not relevant or proportional to the needs of the case.  Ex. E (HAUL Plaintiffs' Objs.) at 23; *see also* Ex. G (OCA-

GH Plaintiffs' Objs.) at 19–21, 26 (objecting to timeframe of requests "given that SB 1's first predecessor bills were not introduced by the Texas Legislature until March 2021").  In all events, Plaintiffs fail to explain how Intervenor-Defendants' communications with "third-party organizations" and their own "candidates" could have any possible bearing "on the Texas Legislature's intent in passing SB 1."  Dkt. No. 475 at 5–6.  Nor could they:  by definition, any documents, communications, and information internal to Intervenor-Defendants or shared only with their political allies and their own candidates were *not* before the Texas Legislature when it enacted SB 1.  Dkt. No. 471 at 19–20.  They therefore have no bearing on the Texas Legislature's "intent in passing SB 1."  Dkt. No. 475 at 5–6.

That is especially true here.  Plaintiffs' requests for internal documents and communications shared only with Intervenor-Defendants' political allies or candidates are not limited to SB 1 or even to the bills the Texas Legislature never enacted.  Instead, Plaintiffs broadly seek "[a]ll documents" involving such political allies and candidates "relating to election administration, voting, election integrity, or the conduct of elections from January 1, 2020 to present."  Dkt. No. 471-1 at 11 (Request for Production No. 7); *id.* at 12 (Request for Production No. 12).  Plaintiffs' discovery requests thus stray far afield of anything related to "SB 1" or the "Texas Legislature's intent" in enacting it.  Dkt. No. 475 at 6; *see also United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 36 (D.D.C. 2012) (Courts "frequently deny discovery when the party requests voluminous discovery where only a small fraction of the produced documents may be relevant").

Plaintiffs also attempt to find relevance in the discovery they seek by pointing out that State Defendants and Intervenor-Defendants "maintain that the key reasons for enacting SB 1 included promoting so-called 'election integrity' and combatting alleged voter fraud."  Dkt. No. 475 at 5.

But, once again, Intervenor-Defendants' internal documents shared only with their political allies and candidates—and especially documents unrelated to SB 1—are simply not relevant to assessing the Legislature's "reasons for enacting SB 1." *Id.* Plaintiffs do not, and cannot, dispute this fundamental point. *See id.*

Plaintiffs next attempt to show relevance in their requests for internal documents and communications by contending that "Intervenor Defendants have also said that SB 1 will increase voter turnout and make voting easier over time." *Id.* at 5 n.6. But Plaintiffs do not cite to any such statements in the record. Nor do any apparently exist.

In any event, such statements would not render the Intervenor-Defendants' internal documents and communications relevant to the Texas Legislature's intent in enacting SB 1. Thus, it is unsurprising that Plaintiffs do not justify the relevance or proportionality of their request for "[a]ll" of the Intervenor-Defendants' internal documents related to "voter turnout" or documents related to the topic of "voting." Dkt. No. 471-1 at 11–12, 15. Indeed, many of the Plaintiffs themselves objected to similar requests on relevance and proportionality grounds. *See, e.g.*, Ex. A (LULAC Objs.) at 17 ("LULAC objects to this Request as overbroad and unduly burdensome as it seeks all documents and communications concerning broad categories of topics, like 'voting' and 'election administration,' but lacks particularity and is not limited to documents that pertain to LULAC's claims or defenses in this case."); Ex. B (AFT Objs.) at 16; Ex. C (TARA Objs.) at 17; Ex. D at (Voto Latino Objs.) at 17–18; Ex. G (OCA-GH Plaintiffs' Objs.) at 18 (objecting that the request for documents related to "voting" is "vague, ambiguous, overbroad, unduly burdensome, and disproportional to the needs of this case").

*Second*, Plaintiffs' description of their discovery requests related to poll watchers appointed by Intervenor-Defendants, *see* Dkt. No. 475 at 5, is a sleight of hand. Plaintiffs note

that they challenge provisions of SB 1 that give poll watchers "more rights" and provide poll watchers and even the Committees "new remedies." *Id.* But the discovery they seek regarding poll watchers, poll watcher training, and poll watcher activities is not tied to SB 1 or its expansion of poll watcher rights. *See id.* Instead, they sweepingly seek documents embodying Intervenor-Defendants' core political activity of "recruit[ing] and training" not only poll watchers, but also "election judges, election clerks, and other poll workers" dating back to "January 1, 2018." Dkt. No. 471-1 at 11–12 (Requests for Production 8–9). They also seek any "documents" related to alleged "violence" or "inappropriate behavior" by poll watchers, election judges, election clerks, or other poll workers dating from the same period. *See id.* at 12 (Request for Production 10). Plaintiffs do not even attempt to connect their sweeping discovery requests regarding poll watchers and other election officials since 2018 to their challenges to poll watchers' new rights and remedies under SB 1. *See* Dkt. No. 475 at 5.

Nor do Plaintiffs support their bald assertion (in a footnote) that "[w]hat Intervenor Defendants say to recruit partisan poll watchers and how they train them as to what poll watchers can and cannot do at the polling place is directly and highly relevant to Plaintiffs' claims." *Id.* at 5 n.5. Plaintiffs are challenging *SB 1*, *not* Intervenor-Defendants' private statements and training of their volunteers "from January 1, 2018 to the present." Dkt. No. 471-1 at 11–12 (Requests for Production 8–9). Once again, Intervenor-Defendants' internal communications and trainings to poll watchers since 2018 were not before the Texas Legislature when it enacted SB 1 and, thus, have no bearing "on the Texas Legislature's intent in passing SB 1." Dkt. No. 475 at 6. In fact, any such internal communications and trainings have nothing to do with SB 1 at all: for the first time, SB 1 now requires poll watchers to complete a training created by the Secretary of State. *See*

SB 1 §§ 4.04, 4.05(b).  Plaintiffs never explain how Intervenor-Defendants' internal poll watcher communications and trainings relate to SB 1's legality.  *See* Dkt. No. 475 at 5 n.5.

*Third*, Plaintiffs recite Intervenor-Defendants' statement in their original motion to intervene that they "'will raise defenses that share many common questions with the parties' claims and defenses.'"  Dkt. No. 475 at 3 (citing Dkt. No. 57 at 13).  But, of course, Intervenor-Defendants did *not* state that they would interject new facts or witnesses into the case.  *See* Dkt. No. 57 at 13.  That Intervenor-Defendants have not done so further demonstrates that Plaintiffs' discovery requests are not "relevant to any party's claim or defense [or] proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

*Fourth*, Plaintiffs make the baffling contention that Intervenor-Defendants "have not come forward with any evidence supporting their . . . assertion that they have been unduly burdened."  Dkt. No. 475 at 7–8.  In fact, Intervenor-Defendants *each* submitted a declaration attesting to the burdens imposed by Plaintiffs' discovery requests.  *See* Dkt. No. 471-12 – 471-16.  The Harris County Republican Party alone identified more than 24,000 potentially responsive documents requiring review.  *See* Dkt. No. 471-12 ¶ 14.  And Plaintiffs' discovery requests are overbroad on their face, as they seek documents from political party committees relating to such topics as "voting," "election administration," and "voter turnout."  Dkt. No. 471-1 at 9–15.  This evidentiary showing is more than sufficient to show undue burden.  *See, e.g.*, *Kleppinger v. Texas Dep't of Transportation*, No. CV L-10-124, 2012 WL 12893651, at *1 (S.D. Tex. Mar. 4, 2012) ("A party resisting facially overbroad or unduly burdensome discovery need not provide specific detailed support." (citation omitted)).

Plaintiffs alternatively argue that Rule 26 somehow requires Intervenor-Defendants to show that the discovery is "more uniquely burdensome" on them than the other parties to the case.

Dkt. No. 475 at 7.  Unsurprisingly, Plaintiffs offer no authority for this standard because there is none.  In any event, the discovery sought from Intervenor-Defendants is "uniquely burdensome" because that discovery is not even relevant, let alone "importan[t]," to "resolving the issues" in the case.  Fed. R. Civ. P. 26(b)(1).  Unlike other defendants in the case, the Intervenor-Defendants did not enact and do not enforce SB 1.  The "burden or expense" of the discovery sought from Intervenor-Defendants—including the cost of document review alone—thus clearly "outweighs its likely benefit." *Id.*

Moreover, the burdens Plaintiffs seek to impose on Intervenor-Defendants are uniquely severe because they have required diversion of scarce campaign contributions and resources away from political activities and toward responding to Plaintiffs' expansive discovery requests.  That the Plaintiffs served such broad requests and insisted on productions in the period shortly before the recent general election only increased that burden.  Plaintiffs cannot seriously dispute that diversion of scarce campaign resources in the middle of a biennial general election affects political parties like Intervenor-Defendants in a unique way when they previously asked for discovery limits that "would *appropriately limit the burden on the parties around the general election season* and reflect the more limited nature of the discovery that needs to be completed." Dkt. No. 436 at 3–4 (emphasis added).

And Plaintiffs' assertion that the burdens of discovery "do not fall" on Intervenor-Defendants "but on their counsel" is simply incorrect.  Dkt. No. 475 at 9.  Plaintiffs' lone cited case proves the point: that case made the undisputed and irrelevant point that collecting a custodian's email does not require any of the custodian's "own time"—not, as Plaintiffs suggest, that discovery imposes no burden on the entity who employs the custodian and must conduct the collection. *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, No. SA-11-CV-163-XR,

2014 U.S. Dist. LEXIS 62040, at *10 (W.D. Tex. May 5, 2014). Indeed, if Plaintiffs were correct that only counsel and not the party bears the burdens of discovery, then *no* represented party could ever claim that discovery imposes an undue burden, and Rule 26's "burden" provision, Fed. R. Civ. P. 26(b)(1), would be a dead letter.

*Finally*, Plaintiffs engage in a false equivalence when they suggest that "Intervenor Defendants served discovery request nearly identical to those they now object to." Dkt. No. 475 at 4. Intervenor-Defendants served their discovery requests on September 19, *after* various efforts had failed to convince Plaintiffs to narrow their improper and overbroad requests against Intervenor-Defendants. *See* Dkt. Nos. 475-1, 475-2. Intervenor-Defendants did so because it was obvious that *Plaintiffs* viewed the categories and types of information described in their discovery requests as relevant to the case. Intervenor-Defendants therefore served their discovery requests in an abundance of caution to ensure that they received documents that Plaintiffs viewed as relevant in discovery rather than for the first time at trial. *See McIntyre v. Unified Gov't of Wyandotte Cnty. & Kansas City, KS*, No. 18-2545-KHV-KGG, 2021 WL 5918917, at *4 (D. Kan. Dec. 15, 2021) (Intervenor-Defendants are "entitled to discover information Plaintiffs contend is the basis of their claims"). Plaintiffs ignore that they are differently situated from Intervenor-Defendants: they bear the burden of proof and the concomitant duty to disclose information they "contend is the basis of their claims," *id.*, while Intervenor-Defendants bear no burden of proof in this matter.

Moreover, Plaintiffs have now served objections to Intervenor-Defendants' discovery requests that are "nearly identical" to Intervenor-Defendants' objections Plaintiffs oppose in their motion. Dkt. No. 475 at 4. In particular:

- Plaintiffs variously object that Intervenor-Defendants' discovery requests are "unduly burdensome." *See, e.g.*, Ex. A (LULAC Objs.) at 13; Ex. B (AFT Objs.) at 12; Ex. C (TARA Objs.) at 13; Ex. D (Voto Latino Objs.) at 14; Ex. E (HAUL Plaintiffs' Objs.) at 19; Ex. F (MFV Plaintiffs' Objs.) at 7; Ex. G (OCA-GH Plaintiffs' Objs.) at 15; Ex. H (LUPE Plaintiffs' Objs.) at 12.

- Plaintiffs object that Intervenor-Defendants' discovery requests are "overbroad" or not "proportional" to the needs of the case. *See, e.g.*, Ex. A (LULAC Objs.) at 13; Ex. B (AFT Objs.) at 12; Ex. C (TARA Objs.) at 13; Ex. D (Voto Latino Objs.) at 14; Ex. E (HAUL Plaintiffs' Objs.) at 19; Ex. F (MFV Plaintiffs' Objs.) at 7; Ex. G (OCA-GH Plaintiffs' Objs.) at 15; Ex. H (LUPE Plaintiffs' Objs.) at 12.

- Plaintiffs object that Intervenor-Defendants' discovery requests are not "relevant." *See, e.g.*, Ex. A (LULAC Objs.) at 13; Ex. B (AFT Objs.) at 12; Ex. C (TARA Objs.) at 13; Ex. D (Voto Latino Objs.) at 14; Ex. E (HAUL Plaintiffs' Objs.) at 19; Ex. F (MFV Plaintiffs' Objs.) at 4; Ex. G (OCA-GH Plaintiffs' Objs.) at 15; Ex. H (LUPE Plaintiffs' Objs.) at 32.

- Plaintiffs also object that Intervenor-Defendants' discovery requests intrude upon Plaintiffs' "First Amendment" privilege and rights. *See, e.g.*, Ex. A (LULAC Objs.) at 13–14; Ex. B (AFT Objs.) at 12–13; Ex. C (TARA Objs.) at 13–14; Ex. D (Voto Latino Objs.) at 14; Ex. E (HAUL Plaintiffs' Objs.) at 19; Ex. F (MFV Plaintiffs' Objs.) at 7; Ex. G (OCA-GH Plaintiffs' Objs.) at 11; Ex. H (LUPE Plaintiffs' Objs.) at 12 (objecting to production of "Protected Information").

- Plaintiffs LULAC, AFT, TARA, and Voto Latino specifically object that Intervenor-Defendants' requests related to their communications with third-party organizations

and candidates "intrudes upon [Plaintiffs'] First Amendment rights" and "would severely chill [Plaintiff's] exercise of its associational rights and those of its strategic partner**s**." Ex. A (LULAC Objs.) at 13–14; Ex. B (AFT Objs.) at 12–13; Ex. C (TARA Objs.) at 13–14; Ex. D (Voto Latino Objs.) at 14.

- Plaintiffs LULAC, AFT, TARA, and Voto Latino further object that Intervenor-Defendants' requests related to recruitment and training of poll watchers "seek[] internal strategy or planning documents and communications that are protected by the First Amendment privilege" and that "[d]isclosure of such private information would severely intrude upon and chill [Plaintiffs'] exercise of [their] associational rights." Ex. A (LULAC Objs.) at 20; Ex. B (AFT Objs.) at 19; Ex. C (TARA Objs.) at 20; Ex. D (Voto Latino Objs.) at 21.

- Plaintiffs LULAC, AFT, TARA, and Voto Latino even go so far as to state that they "will not identify or produce documents in response to . . . Request[s]" they view as "intrud[ing]" upon their First Amendment rights. Ex. A (LULAC Objs.) at 13–14; Ex. B (AFT Objs.) at 12–13; Ex. C (TARA Objs.) at 13–14; Ex. D (Voto Latino Objs.) at 14.

If, as Plaintiffs would have it, Intervenor-Defendants' service of discovery requests related to topics important to Plaintiffs somehow "reinforce[s]" that Plaintiffs' discovery requests are proper, *see, e.g.*, Dkt. No. 475 at 4, then Plaintiffs' raising of objections "identical" to Intervenor-Defendants' objections likewise "reinforce[s]" that Intervenor-Defendants' objections are proper, *id.* The Court should deny Plaintiffs' motion to compel and should grant the Intervenor-Defendants' motion for a protective order.

## III. PLAINTIFFS SEEK DOCUMENTS AND COMMUNICATIONS PROTECTED FROM DISCLOSURE BY THE FIRST AMENDMENT.

The Court also should deny Plaintiffs' motion to compel and grant Intervenor-Defendants' motion for a protective order because Plaintiffs' overbroad discovery requests violate the First Amendment. *See* Dkt. No. 471 at 20–30. Intervenor-Defendants supported their claim of First Amendment privilege with detailed declarations from officers of each of the political party committees attesting to the chilling effect that compelled disclosure would have on their First Amendment associational rights. *See* Dkt. No. 471-12 – 471-16. Intervenor-Defendants also cited numerous cases holding that the documents and communications implicated by Plaintiffs' discovery requests fall squarely within the protections of the First Amendment privilege. *See* Dkt. No. 471 at 22–26.

Plaintiffs do not attempt to dispute the sufficiency of this showing, nor do they attempt to meet the "heightened relevance standard" that the First Amendment privilege imposes. *Perry*, 591 F.3d at 1164. To the contrary, in fact, each of the Plaintiffs has invoked the First Amendment privilege with respect to the discovery requests served on them by Intervenor-Defendants. *See* Ex. A (LULAC Objs.) at 13–14; Ex. B (AFT Objs.) at 12–13; Ex. C (TARA Objs.) at 13–14; Ex. D (Voto Latino Objs.) at 14; Ex. E (HAUL Plaintiffs' Objs.) at 19; Ex. F (MFV Plaintiffs' Objs.) at 7; Ex. G (OCA-GH Plaintiffs' Objs.) at 11; Ex. H (LUPE Plaintiffs' Objs.) at 12.

Instead, Plaintiffs' only reference to the merits of Intervenor-Defendants' First Amendment privilege appears in a footnote on the last page of their brief. *See* Dkt. No. 475 at 13 n.9. Plaintiffs attempt to distinguish *Perry* on the ground that the *Perry* intervenors "agreed to produce some discovery," including their public communications with voters whose support they sought. *Id.* (quoting *Perry*, 591 F.3d at 1164–65). Thus, Plaintiffs once again ignore that Intervenor-Defendants have likewise in good faith offered to produce any non-privileged

17

documents regarding SB 1 that they created and shared "with the Texas Legislature or the public"—the only documents and information potentially relevant to this case.  Dkt. No. 471 at 19–20.

In all events, the main thrust of Plaintiffs' position on the First Amendment is that Intervenor-Defendants may not assert the First Amendment privilege without producing a privilege log.  *See* Dkt. 475 at 12–13.  Of course, Plaintiffs LULAC, AFT, TARA, and Voto Latino have resolutely stated that they "will not identify or produce documents" or generate a privilege log "in response to . . . Request[s]" they view as "intrud[ing]" upon their First Amendment rights. Ex. A (LULAC Objs.) at 13–14; Ex. B (AFT Objs.) at 12–13; Ex. C (TARA Objs.) at 13–14; Ex. D (Voto Latino Objs.) at 14.

Plaintiffs' argument that Intervenor-Defendants (but not Plaintiffs) must produce a privilege log is meritless.  A privilege log is not required where the parties are able to "assess a claim of privilege" adequately without one.  *Jordan v. Comm'r, Miss. Dep't of Corrections*, 947 F.3d 1322, 1328 n.3 (11th Cir. 2020); *see also Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650010, at *4–5 (W.D. Tex. Sept. 10, 2015) (holding that documents were protected by First Amendment privilege without requiring a privilege log); *Brabo Int'l Grp. Inc. v. United Fire & Cas. Co.*, No. 5:19-CV-66, 2020 WL 6440716, at *3 (S.D. Tex. Sept. 21, 2020) (holding that privilege log was not required to assert privilege); *United States v. Eaton Corp.*, No. 12 MC 24, 2012 WL 3486910, at *6–7 (N.D. Ohio Aug. 15, 2012) (courts have "recognized that privilege logs are not required when the privileged nature of the documents at issue is readily apparent").  Indeed, courts have found that the First Amendment privilege applies based solely on the nature of the parties from whom discovery was sought and the types of documents and

communications that were at issue.  *See, e.g., Apple Inc. v. Match Grp., Inc.*, No. 21-mc-80184-YGR-TSH, 2021 WL 3727067, at *7–8 (N.D. Cal. Aug. 19, 2021).

Here, the privileged nature of Intervenor-Defendants' internal documents and communications "is readily apparent."  *Eaton Corp.*, 2012 WL 3486910, at *6–7.  Intervenor-Defendants are all political party committees engaged in "core" First Amendment activities as part of "campaign[s] for political office"—the area where the First Amendment "has its fullest and most urgent application."  *Eu v. San Francisco Cnty. Dem. Cent. Comm.*, 489 U.S. 214, 223 (1989).  As Intervenor-Defendants have described in detail, the discovery Plaintiffs seek encompasses confidential documents and communications regarding issues of public policy, campaign strategies and tactics, and the formulation of political and issue advocacy and messaging.  *See* Dkt. 471 at 22–26.  Officers of each of the political party committees attested to the chilling effect that disclosure of such documents and communications would have.  *See* Dkt. No. 471-12 – 471-16.  And numerous courts have held that disclosure of the types of documents and communications sought here implicate the First Amendment privilege.  *See* Dkt. No. 471 at 22–26.  A privilege log thus is not necessary to assess Intervenor-Defendants' claim of privilege.

Plaintiffs do not even address Intervenor-Defendants' detailed descriptions of documents and communications implicated by their discovery requests (which are supported by witness declarations), let alone offer any argument that these materials are not covered by the First Amendment privilege.  Instead, Plaintiffs point to a footnote in *Perry*, which stated that the party resisting discovery in that case was required to produce a privilege log.  *See* Dkt. No. 475 at 13.  But the court in *Perry* did not suggest that a privilege log is required with respect to *all* assertions of the First Amendment privilege.  As with other claims of privilege, a privilege log is not strictly required to assert the First Amendment privilege.  *See supra* at 18.  Indeed, courts have continued

19

to uphold claims of First Amendment privilege after *Perry* without requiring a privilege log where, as here, the privilege's application was obvious. *See, e.g.*, *Apple Inc.*, 2021 WL 3727067, at *7–8; *Am. C.R. Union*, 2015 WL 13650010, at *4–5.

Moreover, a privilege log is not required where, as here, the privilege log would itself reveal privileged information. *See* Fed. R. Civ. P. 26(b)(5) (a party must not "reveal[] information itself privileged or protected" when describing the nature of privileged documents). Intervenor-Defendants regularly communicate with volunteers regarding sensitive issues related to election administration and integrity. *See* Dkt. No. 471 at 26. Those volunteers have a reasonable expectation that their involvement in communications regarding such issues would not be publicly disclosed. In light of "the occasionally hostile and incendiary rhetoric used against advocates of election integrity measures," such volunteers have a reasonable basis to fear a "potential backlash . . . if their identity is revealed." *Am. C.R. Union*, 2015 WL 13650010, at *3. Because the identities of such volunteers is privileged, a privilege log disclosing their names on communications regarding sensitive public policy issues would impermissibly reveal privileged information.

The Court should hold that the First Amendment privilege protects Intervenor-Defendants' non-public documents and communications from compelled disclosure and from production of a privilege log.

## CONCLUSION

The Court should deny Plaintiffs' motion to compel and grant the Intervenor-Defendants' cross-motion for a protective order.

November 11, 2022                          Respectfully submitted,

                                           */s/ John M. Gore*
                                           John M. Gore
                                           E. Stewart Crosland*
                                           Stephen J. Kenny*
                                           Charles E.T. Roberts
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C. 20001
                                           Phone: (202) 879-3939
                                           Fax: (202) 626-1700
                                           jmgore@jonesday.com
                                           scrosland@jonesday.com
                                           skenny@jonesday.com
                                           cetroberts@jonesday.com

                                           *Counsel for Proposed Intervenor-Defendants*

                                           *Pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

*/s/ John M. Gore*
