IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| La Unión Del Pueblo Entero, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Gregory W. Abbott, *et al.*,<br><br>*Defendants*. | No. 5:21-cv-00844-XR<br>(Consolidated Cases) |

### INTERVENOR-DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING PLAINTIFFS' NOTICED DEPOSITIONS

On October 21, 2022, Plaintiffs noticed eight depositions of individuals and groups associated with Intervenor-Defendants ("Noticed Depositions"). Plaintiffs seek to depose three Rule 30(b)(6) witnesses representing the Republican National Committee, Dallas County Republican Party, and Harris County Republican Party. *See* Exs. A–C. The 28 topics identified in the 30(b)(6) deposition notices largely track Plaintiffs' First Set of Requests for Production of Documents and First Set of Interrogatories and, thus, implicate all of the same objections that Intervenor-Defendants lodged to those discovery requests. *Compare* Exs. A–C, *with* Exs. I–J. Plaintiffs also served five deposition subpoenas on individuals associated with Intervenor-Defendants. *See* Exs. D–H. Plaintiffs initially stated that they sought to depose these individuals "in their individual capacities." Ex. K at 20.

For the reasons explained in Intervenor-Defendants' briefing in support of their motion for a protective order and in opposition to Plaintiffs' motion to compel, the Noticed Depositions are not permitted under the Court's Amended Scheduling Order, seek testimony that is not relevant or proportional to the needs of the case, and seek information protected from disclosure by the First

1

Amendment privilege. *See* Dkt. Nos. 471, 477. The Court therefore should quash all eight of the Noticed Depositions. Indeed, even if the depositions were permissible under the Amended Scheduling Order and Rule 26, witnesses should not be required to appear for depositions just for counsel to make repeated objections based on First Amendment privilege and instruct witnesses not to answer. In the alternative, and at a minimum, the Court should enter an order limiting the scope of the Noticed Depositions to topics that do not implicate the First Amendment privilege and instructing Plaintiffs' counsel not to ask questions that seek information protected by the First Amendment privilege.

## ARGUMENT

**I. THE NOTICED DEPOSITIONS ARE NOT PERMITTED UNDER THE AMENDED SCHEDULING ORDER.**

As explained in Intervenor-Defendants' prior briefing, the Noticed Depositions are not permitted under the Court's Amended Scheduling Order, so the Court should quash them in their entirety. *See* Dkt. No. 471 at 12–16; Dkt. No. 477 at 3–8; *see also* Dkt. No. 437 at 1–2.

*First*, the Noticed Depositions are not limited to the operation of SB 1 during the March 2022 "primary election," which is the only topic on which the Amended Scheduling Order authorizes discovery during the primary election discovery period. Dkt. No. 437 at 1. Indeed, not a single one of the 28 deposition topics for the noticed 30(b)(6) depositions is limited to "matters related to the primary election." *Id.*; *see* Exs. A–C. The topics relate to such broad subjects as the recruitment and training of poll workers and poll watchers, instances of alleged "inappropriate behavior" from poll workers and poll watchers, and "usage" of certain voting methods since January 1, 2018, a period of more than *four years* prior to the March 2022 primary election. *See, e.g.*, Ex. A at 18–21. Moreover, Plaintiffs have indicated that the five individual depositions they noticed will also not be limited to matters related to the primary election. *See* Dkt. No. 475 at 9.

2

For this reason alone, the Noticed Depositions are not permitted under the Amended Scheduling Order.

Plaintiffs have contended that discovery during the primary election discovery period was "in no way restricted to the primary election." Dkt. No. 475 at 10. But this contention ignores the plain language of the scheduling order: "[t]he deadline for completion of discovery *on matters related to the primary election* as to Plaintiffs, State Defendants, and County Defendants is August 12, 2022," and that "[t]he deadline for completion of discovery *on matters related to the primary election* as to Intervenors is October 24, 2022." Dkt. No. 437 at 1 (emphases added). Plaintiffs alternatively highlight that the scheduling order permits some discovery that was not "restricted to the primary election." Dkt. No. 475 at 10. But that argument only proves Intervenor-Defendants' point: the Court restricted discovery to "matters related to the primary election" except for certain matters it otherwise specified. *See* Dkt. No. 437 at 1 (allowing depositions of witnesses concerning documents at issue in the Court's order granting Plaintiff LULAC's motion to compel (Dkt. No. 425)). The Court should reject Plaintiffs' interpretation to "avoid a construction that renders" the scheduling order's subject-matter restriction "meaningless or inoperative." *Van Houten v. City of Fort Worth*, No. 4:12-CV-826-Y, 2015 WL 13651282, at *5 (N.D. Tex. Apr. 7, 2015), *aff'd*, 827 F.3d 530 (5th Cir. 2016).

*Second*, none of the Noticed Depositions seeks "discovery from witnesses . . . disclosed by Intervenors," which is the only discovery Plaintiffs sought to take—and that the Amended Scheduling Order authorizes them to take—from Intervenor-Defendants. Dkt. No. 436 at 2; Dkt. No. 437 at 1. The Noticed Depositions do not relate to any witnesses disclosed by Intervenor-Defendants, because Intervenor-Defendants have not disclosed any witnesses to date—a fact that Plaintiffs do not dispute in their briefing. Instead, Plaintiffs argue that Intervenor-Defendants had

an obligation to "disclos[e] witnesses" whose testimony *Plaintiffs* might view as "relevant." Dkt. No. 475 at 11.  But Intervenor-Defendants' only obligation under "the Federal Rules" Plaintiffs allude to, *id.*, was to disclose "individual[s] likely to have discoverable information" that *Intervenor-Defendants* "may use to support [their] claims or defenses" at trial, Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Fed. R. Civ. P. 26, advisory committee notes (a party is not "obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use").

At the November 14 hearing, Plaintiffs suggested that the Amended Scheduling Order's statement that primary election discovery "may include" discovery from "witnesses both already and newly disclosed by Intervenors" did not purport to limit the discovery Plaintiffs may take from Intervenor-Defendants.  Dkt. No. 437 at 1.  Plaintiffs' interpretation cannot be correct because it would render the Scheduling Order's fifth paragraph—which limited the discovery during the primary election discovery period to five specific areas—entirely superfluous.  *See, e.g.*, *BNSF Ry. Co. v. United States*, 775 F.3d 743, 754 (5th Cir. 2015) (courts must avoid interpretations that render any provision superfluous).  Indeed, the implication of Plaintiffs' position—that the fifth paragraph provides only a non-exhaustive list of examples of discovery that the parties may pursue—is that the Amended Scheduling Order allows for plenary discovery.  Such an interpretation is inconsistent with the strict limits on discovery Plaintiffs themselves requested (and the Court imposed).  In the parties' joint notice, Plaintiffs proposed narrow areas of discovery that the parties "may conduct" during the extended primary election discovery period. Dkt. No. 436 at 2. This proposal was in opposition to the State Defendants' request for broader discovery. *See id.* The Court adopted the limits proposed by Plaintiffs with some modifications. *See* Dkt. No. 437 at 1. It is clear that the term "may," as used by Plaintiffs in the joint notice ("may conduct"), Dkt. No. 436 at 2, and the Court in the Amended Scheduling Order ("may include"), Dkt. No. 437 at 1,

4

was meant to specify which discovery *not* limited to the primary election the parties were permitted to take during the primary election discovery period. It was an *exhaustive* list of such discovery, not a *non*-exhaustive list implying authorization to conduct plenary discovery straying far beyond what Plaintiffs requested. *See, e.g.*, *Rincon Band of Luiseno Mission Indians of Rincon Rsrv. v. Schwarzenegger*, 602 F.3d 1019, 1029 n.9 (9th Cir. 2010) ("Although 'may' indicates permissiveness … to grant permission is not necessarily to grant carte blanche. What is 'permitted' is limited.").

*Third*, the Noticed Depositions are untimely. The Amended Scheduling Order provides for a deadline for primary election discovery of August 12, 2022 "as to" Plaintiffs, State Defendants, and County Defendants, and a deadline of October 24, 2022 for such discovery "as to" Intervenor-Defendants. Dkt. No. 437 at 1. The Court imposed these separate deadlines to accommodate Intervenor-Defendants, who had just been granted intervention in the case the month before. *See* 5/13/2022 Text Order. Plaintiffs represented to the Court that the "three months of additional" primary election discovery established by the August 12 deadline were more than sufficient and that "discovery beyond this significantly extended timeline would likely impose unnecessary burden, uncertainty, and duplication of effort and risk further delay of trial." Dkt. No. 436 at 3. If "as to" were interpreted as Plaintiffs suggest—*i.e.*, that it refers to parties from whom discovery may be taken—then Intervenor-Defendants would have had to take discovery from Plaintiffs by August 12, 2022. Plainly, that is not what the parties or the Court contemplated when it provided that the deadline "as to Plaintiffs" was August 12, 2022, and the deadline "as to Intervenors" was October 24, 2022.

Plaintiffs did not indicate any intention of taking depositions of individuals affiliated with Intervenor-Defendants until October 5, 2022, *see* Ex. K at 20, nearly two months after the August

12, 2022 deadline "for completion of discovery on matters related to the primary election as to Plaintiffs," Dkt. No. 437 at 1. And the Plaintiffs did not notice the depositions until more than two weeks later, on October 21, 2022. *See, e.g.*, Ex. A at 3. Accordingly, the Noticed Depositions are untimely under the Amended Scheduling Order.

Even assuming the October 24 deadline applied to Plaintiffs' discovery requests of Intervenor-Defendants, the Noticed Depositions are still untimely. "Notices served before the discovery deadline that purport to schedule depositions after the discovery deadline will not be enforced." W.D. Tex. Local Rule CV-16(e). Plaintiffs did not notice the depositions until October 21, 2022, and noticed them for January 2023, *see, e.g.*, Ex. A at 1, well after the October 24, 2022 discovery deadline they (selectively) embrace. These notices therefore may "not be enforced," W.D. Tex. Local Rule CV-16(e).

*Finally*, any depositions conducted by Plaintiffs in the future must be limited to matters related to the general election and must count against Plaintiffs' "per side" limit of "10 depositions" established in the Amended Scheduling Order. Dkt. No. 437 at 2; *see* Dkt. No. 471 at 12–16. Plaintiffs seek to avoid the ten-deposition limit by designating the Noticed Depositions for the primary election discovery period or by requesting that the Court change the ten-deposition limit to a per-party limit. Dkt. No. 469 at 11. The Court should reject this request. In the joint notice, Plaintiffs insisted on a strict bifurcation of primary election discovery and general election discovery and proposed that each side be limited to eight depositions during the general election discovery period that "relate only to the November 2022 general election." Dkt. No. 436 at 3. The Court granted each side ten depositions—two more than Plaintiffs sought—but otherwise agreed to limit the scope of discovery during the general election discovery period to "matters related to the general election." Dkt. No. 437 at 2. Plaintiffs' request to conduct additional non-general

election discovery during the general election discovery period—and not have the eight Noticed Depositions count against the ten-deposition limit—is a transparent attempt to rewrite the scheduling order and "slant the playing field in their favor by incongruently expanding both the number and scope of their depositions." Dkt. No. 472 at 1. Plaintiffs, however, have not even attempted to, and cannot, show good cause to amend the Amended Scheduling Order now. *See* Dkt. No. 471 at 14; Dkt. No. 472 at 5–6; Dkt. No. 477 at 7–8; *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 735 (5th Cir. 2018). The Court should quash the Noticed Depositions in their entirety.

## II. PLAINTIFFS SEEK TESTIMONY AND INFORMATION PROTECTED FROM DISCLOSURE BY THE FIRST AMENDMENT PRIVILEGE

The Court should quash the Notice Depositions for the additional reason that Plaintiffs seek testimony and information that the First Amendment protects from compelled disclosure. *See* Dkt. No. 471 at 20–27; Dkt. No. 477 at 17–20.

The First Amendment conveys a privilege against compelled disclosure of information where such disclosure could infringe on free association rights. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159–60 (9th Cir. 2010); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018); *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022) (citing *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631–32 (5th Cir. 1980), and *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976)). Courts apply a two-part framework for evaluating First Amendment privilege claims in discovery.

*First*, the party asserting the privilege must show an "arguable" infringement on First Amendment rights. *Perry*, 591 F.3d at 1160. As the Fifth Circuit has recognized, political organizations' internal communications "must be permitted to be broad, uninhibited, and fearless,"

7

and "protecting such deliberations is a seminal aspect of the freedom to associate." *Whole Woman's Health*, 896 F.3d at 372. A party can make a *prima facie* showing of infringement if disclosure may result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160. The burden of making this showing is not a heavy one. A party "need not prove to a certainty that its First Amendment rights will be chilled by disclosure." *Black Panther Party*, 661 F.2d at 1267–68. It need only show "some probability" of a chilling effect. *Id.* at 1268; *see also Pulte Home Corp. v. Montgomery Cnty. Maryland*, No. GJH-14-3955, 2017 WL 1104670, at *4 (D. Md. Mar. 24, 2017); *Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *3 (M.D. Fla. May 25, 2016) (The "burden [of the proponent of the privilege] is 'light,' given 'the crucial place speech and associational rights occupy under our constitution.'").

*Second*, the burden then shifts to the party seeking disclosure to "show a substantial need for the documents that outweighs the intrusion into [the opposing party's] constitutional rights." *Whole Woman's Health*, 896 F.3d at 374. That party must satisfy a "heightened relevance standard" and show that the discovery is "highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under [Rule] 26(b)(1)." *Perry*, 591 F.3d at 1161, 1164. In other words, the party seeking disclosure must "prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information." *Pulte*, 2017 WL 1104670, at *4. "The interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case." *Black Panther Party*, 661 F.2d at 1268.

Here, Plaintiffs seek testimony and information related to Intervenor-Defendants' internal communications and information—as well as confidential communications and information shared with political allies and affiliated candidates—regarding issues of public policy, campaign strategies and tactics, and formulation of political advocacy and messaging. *See* Ex. A at 17–22 (Topics 1–3, 5, 11–25). For example, Plaintiffs seek deposition testimony regarding communications between Intervenor-Defendants and "third-party organizations" and affiliated "candidates for elected office" regarding "voting" and the "conduct of elections." *Id.* at 19–20 (Topics 12 & 17). Plaintiffs also seek testimony regarding "the recruitment, retention, and training of poll watchers," the "usage" of certain methods of voting, and information about Texas "demographics" and "voting practices." *Id.* at 20–22 (Topics 14, 20, 25). The First Amendment protects Intervenor-Defendants, their political allies, and their candidates, workers, and volunteers from being compelled to sit for depositions and provide the testimony and information Plaintiffs seek. The Court should quash the Noticed Depositions.

### A. Allowing the Noticed Depositions To Proceed Would Infringe On Intervenor-Defendants' First Amendment Rights

Courts have recognized that compelled disclosure of confidential communications and information of a political association can have a "deterrent effect" on "participation in campaigns" and on "the free flow of information within campaigns." *Perry*, 591 F.3d at 1162. Consequently, compelled disclosure can chill First Amendment rights because it "mut[es]" this "internal exchange of ideas." *Id.* at 1163; *see also Pulte*, 2017 WL 1104670, at *8 ("If a person knows that her communications will be disclosed to an unintended audience in the future, she may be more cautious in her statements or refrain from speaking entirely."); *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *9 (W.D. Tex. Oct. 11, 2016) (finding that a group's "ability to communicate with its members—fundamental to the

9

right to associate—would be chilled if its internal newsletters were discoverable"); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 5308515, at *4 (S.D. W. Va. Sept. 4, 2020) (finding that compelled disclosure of political party's "internal communications concerning opinions as to campaign strategies" would cause it "to reassess or even modify how its membership can work, associate, communicate and provide any guidance on campaign strategies"). This infringement on First Amendment rights is particularly severe when a group is forced to disclose private information "*to a public policy opponent*." *Whole Woman's Health*, 896 F.3d at 373.

Compelled disclosure can also discourage membership in an organization or participation in an organization's activities. *See Perry*, 591 F.3d at 1160. "[A] person who belongs to a group that is required to disclose its internal communications in civil litigation may decide that the invasiveness of the disclosure outweighs the benefit of belonging to or participating in the group." *Pulte*, 2017 WL 1104670, at *8; *see also Apple Inc. v. Match Grp., Inc.*, No. 21-mc-80184-YGR-TSH, 2021 WL 3727067, at *8 (N.D. Cal. Aug. 19, 2021) ("Who in their right mind would want to participate in a public advocacy organization, knowing that all their internal communications about strategy, lobbying, planning, and so on, would be turned over to their principal opponent?"). This is especially true where the party resisting disclosure has a reasonable basis to fear retaliation or reprisal as a result of the disclosure. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958); *Ass'n of Equip. Mfrs. v. Burgum*, 427 F. Supp. 3d 1082, 1098 (D.N.D. 2019); *All. of Auto. Mfrs., Inc. v. Jones*, No. 08-cv-555, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013).

Moreover, public disclosure of a political party's "confidential internal materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment'" and "seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)). The information

at issue in *AFL-CIO* included "detailed descriptions of training programs, member mobilization campaigns, polling data, and state-by-state strategies." *Id.* at 176–77.  The parties claimed that disclosure would "directly frustrate" their "ability to pursue their political goals effectively" because it would reveal to their opponents "activities, strategies and tactics" that would likely be used in future election cycles.  *Id.*  The D.C. Circuit agreed, holding that compelled disclosure of such information would "frustrate those groups' decisions as to 'how to organize ... [themselves], conduct ... [their] affairs, and select ... [their] leaders,' as well as their selection of a 'message and ... the best means to promote that message.'"  *Id.* at 177 (quoting *Eu*, 489 U.S. at 230–31 & n. 21). Consequently, the D.C. Circuit held that compelled disclosure of the parties' internal information implicated "substantial First Amendment interests." *Id.* at 178.

The First Amendment privilege against compelled disclosure also applies to communications with other organizations for the purposes of promoting shared political goals.  *See Int'l Union v. Nat'l Right to Work Legal Defense and Educ. Found., Inc.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978) (First Amendment protection "extends not only to the organization itself, but also to its staff, members, contributors and others who affiliate with it"); *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981) (demand for "communications among various [draft-Kennedy] groups" had "potential for chilling the free exercise of political speech and association guarded by the [F]irst [A]mendment"); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (First Amendment protects parties' "strategic communications on policy issues with other environmental advocacy groups"); *Pulte*, 2017 WL 1104670, at *11 ("The citizen groups have an interest in the non-disclosure of the communications it had with third parties."). After all, "implicit in the right to engage in activities protected by the First Amendment"

is "a corresponding right to associate with others" in those activities. *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984); *see also Perry*, 591 F.3d at 1162.

Intervenor-Defendants easily satisfy their minimal burden to show "some probability" of a chilling effect on First Amendment rights. *Black Panther Party*, 661 F.2d at 1268; *see also Perry*, 591 F.3d at 1160 (party resisting disclosure need show only an "arguable" infringement). The topics contained in the 30(b)(6) deposition notices include internal "strategy" and "evaluation" related to the "implementation" of SB 1, Ex. A at 17; "suggestions, proposals, strategies or other analysis" regarding "legislation relating to the subject matter of SB 1," *id.* at 18; information shared with third-party political allies regarding SB 1 and "voting" generally, *id.* at 18–20; information regarding recruitment and training of poll watchers and poll workers, *id.* at 20; information shared with Intervenor-Defendants' own candidates regarding SB 1 and "voting" generally, *id.*; information regarding the usage of certain voting methods, *id.* at 21; information regarding voter assistance, *id.* at 22; and information regarding Texas demographics and "particular voting practices" in Texas, *id.* These topics are identical in many respects to Plaintiffs' document requests and interrogatories. *See* Exs. I–J. Plaintiffs have not indicated that the five individual depositions would relate to different topics than those contained in Plaintiffs' other discovery requests.

The very nature of Intervenor-Defendants—political party committees engaged in election campaigns and political speech—underscores that confidential information relating to their activities are entitled to the strongest level of First Amendment protection. *See Eu v. San Francisco Cnty. Democratic Central Comm.*, 489 U.S. 214, 223 (1989). That they are being asked to disclose private information to groups that are often "public policy opponent[s]" heightens their First Amendment injury. *Whole Woman's Health*, 896 F.3d at 373. Moreover, Intervenor-Defendants have previously submitted declarations that more than make the minimal required

showing of "some probability" of a chilling effect. *Pulte*, 2017 WL 1104670, at *4; *see* Decls. (Exs. L–P). Declarants attested that compelled disclosure of such information would chill the candor of Intervenor-Defendants' internal deliberations, discourage participation in Intervenor-Defendants' activities, and publicly reveal Intervenor-Defendants' confidential campaign strategies and tactics. That same chilling effect obviously would result from compelling testimony regarding those topics in the Noticed Depositions.

As the declarants attest, the discovery Plaintiffs seek would touch on Intervenor-Defendants' internal formulation of strategy and messaging related to campaigns and policy issues; their allocation of resources for campaign expenditures and get-out-the-vote activities; candidate recruitment efforts; recruitment and training of volunteers; and internal discussions of current events and political developments, including SB 1 and other election-related legislation. Decls. ¶ 9. Compelled depositions and disclosure would cause the Republican Committees' officers, staff, consultants, and volunteers to hesitate to offer candid thoughts about advocacy strategy and messaging in the future and to sometimes refrain entirely from offering their opinions. Decls. ¶ 11. These individuals would also be more cautious with respect to the views and advice they express if the content of those communications were the subject of compelled deposition testimony. *Id.* Thus, the compelled depositions and disclosure of such information Plaintiffs seek would inhibit "the free flow of information" and "mut[e] the internal exchange of ideas" within Intervenor-Defendants, in violation of the First Amendment. *Perry*, 591 F.3d at 1162–63.

Compelled depositions and disclosure would also harm Intervenor-Defendants' ability to recruit volunteers, poll watchers, and others to participate in political activities protected by the First Amendment. Decls. ¶ 12. It is obvious that compelling volunteers and even officials of political party committees to sit for depositions—as Plaintiffs propose to do—would chill the

willingness of *both* those individuals and others to engage in political activities with Intervenor-Defendants in the future. These volunteers and others routinely participate in confidential communications related to sensitive election-related topics and reasonably believed that these communications would remain confidential. *Id.* Compelled depositions and disclosure of the content of such communications would provide a disincentive for volunteers to participate in political activities and undoubtedly lead to lower levels of participation in such activities with Intervenor-Defendants in the future. *See Perry*, 591 F.3d at 1160; *Pulte*, 2017 WL 1104670, at *8. This concern is particularly acute where, as here, Plaintiffs seek information and communications regarding the issue of election integrity. *See Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650010, at *3 (W.D. Tex. Sept. 10, 2015) (describing chilling effect on First Amendment associational rights caused by "the occasionally hostile and incendiary rhetoric used against advocates of election integrity measures").

Finally, the compelled disclosure sought here would reveal confidential "strategies and tactics" that would harm the effectiveness of Intervenor-Defendants' campaign activities. *AFL-CIO*, 333 F.3d at 177. The Noticed Depositions would cover confidential discussions regarding the formulation of Intervenor-Defendants' strategy and messaging related to campaign and advocacy activities as well as information regarding the allocation of resources for campaign activities and get-out-the-vote activities. Decls. ¶ 13. Requiring Intervenor-Defendants to publicly disclose such information would "frustrate" their ability to develop and deploy effective strategies in future election cycles. *AFL-CIO*, 333 F.3d at 177.

In sum, allowing the Noticed Depositions to go forward would strike at the heart of Intervenor-Defendants' First Amendment associational rights.

### B. Plaintiffs Cannot Show That The Discovery They Seek Is Highly Relevant To Their Claims

As explained in Intervenor-Defendants' prior briefing, the discovery Plaintiffs seek does not even meet the ordinary relevance standard under Rule 26(b)(1). *See* Dkt. No. 471 at 16–20; Dkt. No. 477 at 8–16. Plaintiffs *a fortiori* cannot show a "substantial need" for the discovery because it is not "highly relevant" to their claims. *Whole Woman's Health*, 896 F.3d at 374; *Perry*, 591 F.3d at 1164. Because Intervenor-Defendants did not enact and do not enforce SB 1, the confidential information and communications sought from them simply have no relevance to whether the Texas Legislature enacted SB 1 with discriminatory intent or whether SB 1 otherwise violates federal law. Intervenor-Defendants' private information and communications are not relevant, let alone of "crucial relevance," to Plaintiffs' claims. *Pulte*, 2017 WL 1104670, at *4; *see also Black Panther Party*, 661 F.2d at 1268 ("The interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case."); *Perry*, 591 F.3d at 1164. Plaintiffs have not made, and cannot make, a showing otherwise.

Thus, the testimony Plaintiffs seek to obtain in the Noticed Depositions is protected from compelled disclosure by the First Amendment privilege.

## III. THE COURT SHOULD QUASH THE NOTICED DEPOSITIONS

A court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). Likewise, a court may issue a protective order prohibiting or limiting a deposition where the deposing party seeks disclosure of privileged information. Fed. R. Civ. P. 26(c)(1)(A); *see, e.g.*, *Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 2:17-cv-00050, 2019 WL 3847994, at *6 (D.N.J. Aug. 15, 2019) (quashing deposition of therapist based on patient-psychotherapist privilege); *SEC v. McGinnis*, No. 5:14-CV-6, 2015 WL 13505396 (D. Vt. Jan. 13, 2015) (quashing 30(b)(6) deposition notice because the identified topics

sought protected work-product); *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 11-MC-10, 2011 WL 5118601, at *10 (C.D. Ill. Oct. 27, 2011) (quashing deposition subpoena on First Amendment privilege grounds); *In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *5 (N.D. Ill. May 13, 2011) (same); *Trunk v. City of San Diego*, No. 06-cv-1597-LAB-WMC, 2007 WL 2701356, at *6–*7 (S.D. Cal. Sept. 13, 2007), *objections overruled*, 2007 WL 3001679 (S.D. Cal. Oct. 11, 2007) (prohibiting deposition implicating attorney-client privilege and Speech or Debate Clause privilege); *Angiolillo v. Collier Cnty.*, No. 2:08-cv-606-FTM-99SPC, 2009 WL 3762857 (M.D. Fla. June 18, 2009) (quashing deposition subpoena based on First Amendment reporters privilege). As courts have recognized, it is not necessary to make a witness appear for a deposition and make counsel object to each and every request for privileged information where, as here, substantially all of the testimony sought would involve privileged information. *See, e.g.*, *Levesque v. Doocy*, 247 F.R.D. 55, 57–58 (D. Me. 2007) ("I see no reason why a reporter must wait for his or her scheduled deposition, appear and be sworn and then refuse to answer questions based on the reporter's privilege[.]"); *McGinnis*, 2015 WL 13505396 at *4 (rejecting argument that the deponent "must await a specific question that infringes upon a privilege or protection before seeking to quash the deposition" where "it is clear that the identified topics seek protected work-product"); *Trunk*, 2007 WL 2701356, at *7 (prohibiting deposition even if "counsel were able to craft a few relevant and meaningful deposition questions that did not" implicate the privilege).

These cases are directly on point here. Plaintiffs seek to compel depositions and disclosure of information protected by the First Amendment privilege. *See supra* Part II. Indeed, Plaintiffs have not explained how *any* portion—or at least any significant portion—of the testimony they seek would not implicate Intervenor-Defendants' First Amendment privilege. The Court therefore

should quash the Noticed Depositions in their entirety, without compelling witnesses to appear solely for the pointless exercise of counsel objecting to each and every request for privileged information. *See, e.g.*, *Levesque*, 247 F.R.D. at 57–58; *McGinnis*, 2015 WL 13505396 at *4.

Although Plaintiffs seek deposition testimony on some topics that are not subject to the First Amendment privilege—namely, communications with government officials regarding SB 1, *see* Ex. A at 18—the Court should still quash the Noticed Depositions, because the limited amount of relevant information does not warrant eight additional (out-of-time) depositions. *See Trunk*, 2007 WL 2701356 at *7 (Even if "counsel were able to craft a few relevant and meaningful deposition questions that did not run afoul" of the attorney-client privilege, "the extremely limited amount of historical information [plaintiffs] might acquire does not tip the balance in favor of allowing" the deposition); *INTL FCStone Fin., Inc. v. OptionSellers.com, Inc.*, No. 6:21-MC-0004-JDK, 2021 WL 1540528, at *2 (E.D. Tex. Apr. 20, 2021) ("Irrelevance is a ground for quashing a deposition as unduly burdensome."). In light of Intervenor-Defendants' forthcoming document productions, as well as document productions and deposition testimony from the Texas Legislature, additional testimony on the subject is unreasonably "cumulative" and "duplicative," "undu[ly] burden[some], and not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), (2).

At a minimum, in the event the Court allows the Noticed Depositions to proceed (and to count against Plaintiffs' per-side ten-deposition limit), it should issue an order limiting the scope of the Noticed Depositions to topics that do not implicate the First Amendment privilege—*i.e.*, communications with Texas government officials regarding SB 1, *see* Ex. A at 18—and instructing Plaintiffs' counsel not to ask questions that seek information protected by the First Amendment privilege. *See, e.g.*, *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 144

(E.D. Tex. 2003) ("Because testimony regarding topics 1(c) and 5 covers documents and communications protected by the attorney-client privilege, ISC does not have to designate an individual to testify regarding topics 1(c) and 5.").

## CONCLUSION

The Court should quash the Noticed Depositions.

November 21, 2022

Respectfully submitted,

*/s/ John M. Gore*
John M. Gore
E. Stewart Crosland*
Stephen J. Kenny*
Charles E.T. Roberts
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
skenny@jonesday.com
cetroberts@jonesday.com

*Counsel for Proposed Intervenor-Defendants*

**Pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

*/s/ John M. Gore*