**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO *et al.*, | § | |
| *Plaintiffs* | § | |
| | § | |
| -vs- | § | SA-21-CV-00844-XR |
| | § | |
| GREGORY W. ABBOTT, IN HIS | § | *CONSOLIDATED CASES* |
| OFFICIAL CAPACITY AS GOVENOR | § | |
| OF TEXAS *et al.*; | § | |
| *Defendants* | § | |

## ORDER

On this date, the Court considered Plaintiffs' motion to compel discovery responses from Defendant Intervenors Harris County Republican Party, the Dallas County Republican Party, the Republican National Committee, the National Republican Senatorial Committee, and the National Republican Congressional Committee (collectively, the "Committees" or the "Defendant Intervenors") and to amend the scheduling order (ECF No. 469); Defendant Intervenors' motion for a protective order (ECF No. 471); the parties' arguments at the hearing on November 14, 2022; and the supplemental briefing that followed (ECF Nos. 483, 484, 486).

## BACKGROUND

These consolidated cases arise out of Texas's enactment of an omnibus voting bill, Senate Bill 1 ("SB 1"). In the days and weeks after the law was passed on August 31, 2021, numerous parties began filing complaints against various Texas state officials (the "State Defendants") and local elections administrators in this district, challenging certain provisions of SB 1 under the United States Constitution and various federal civil rights statutes. In the interest of judicial economy, these were consolidated under the above-captioned case, as it was first filed.[1]

---

[1] *See* ECF No. 31 (consolidating *OCA-Greater Houston v. Esparza*, No. 1:21-cv-780 (W.D. Tex. 2021); *Houston Justice v. Abbott*, No. 5:21- cv-848 (W.D. Tex. 2021); *LULAC Texas v. Esparza*, No. 1:21-cv-786 (W.D.

Plaintiffs generally allege (1) that the Texas Legislature enacted SB 1 with the intent to discriminate and unduly burden the right to vote of Black and Latino voters and voters with disabilities rather than to protect election integrity or prevent fraud and (2) that SB 1 does in fact unlawfully burden the right to vote. *See* ECF No. 199 ("HAUL Compl."), ECF No. 207 ("LULAC Compl."), ECF No. 208 ("LUPE Compl."). In their operative complaints, Plaintiffs allege violations of the Voting Rights Act of 1965, the Americans with Disabilities Act, and the United States Constitution. *See id.*

The Committees first sought to intervene in this action in October 2021. ECF No. 57. The Court denied their motion, concluding that the Committees had not established a legally protectable interest at stake in this litigation or that the State Defendants' representation of their purported interests would be inadequate. *See* ECF No. 122 at 2–7. The Fifth Circuit reversed the Court's order denying intervention, concluding that the Committees' interest in SB 1's provisions concerning party-appointed poll watchers—an interest raised for the first time on appeal— warranted intervention. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022).

In May 2022, the Court granted the Committees' renewed motion to intervene and, after giving the parties an opportunity to confer, entered an Amended Scheduling Order on June 8, 2022, to accommodate the Defendant Intervenors' participation in the case and various delays caused by discovery disputes. *See* Text Orders dated May 13, 2022 and May 18, 2022; ECF No. 437. Under that Order, primary election discovery "as to Plaintiffs" closed on August 12; such discovery "as to Intervenors" closed October 24. ECF No. 437. The Amended Scheduling Order also established a discovery period for the general election and limited general election discovery to "no more than 10 depositions per side[.]" *Id.* at 2.

---

Tex. 2021) and *Mi Familia Vota v. Abbott*, No. 5: 21-cv-920 (W.D. Tex. 2021) under *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. 2021); *United States v. Texas*, No. 5:21-cv-1085 (W.D. Tex. 2021), ECF No. 13.

After the Court granted the Committees' motion to intervene at the direction of the Fifth Circuit on May 13, the LUPE Plaintiffs, the HAUL Plaintiffs, and the LULAC Plaintiffs (hereinafter, "Private Plaintiffs") served their first set of requests for production ("RFPs") on the Defendant Intervenors on July 7, *see* ECF No. 469-1, and their first interrogatories ("ROGs") on July 13, *see* ECF No. 469-2. Private Plaintiffs sought discovery concerning (i) SB 1, its predecessor bills and the purported justifications for the voting restrictions therein, including allegedly promoting "election integrity" and combatting alleged voter fraud (ROGs 1–3, 5; RFPs 1–7, 11–13); (ii) the recruitment and training of election judges, election clerks, poll workers, and poll watchers as well as instances of violence, discrimination, harassment, or inappropriate behavior by any of the above (ROGs 8–9; RFPs 8–10); and (iii) the impact or potential impact of SB 1 and its predecessor bills on the demographic groups at issue in the consolidated actions (ROGs 7,10; RFPs 14–20).

On August 5, 2022, the Defendant Intervenors responded to Private Plaintiffs' RFPs with various boilerplate objections, including that the requests were "overbroad and unduly burdensome," and sweeping assertions of First Amendment privilege, unsupported by a privilege log. *See* ECF No. 469-3. On August 12, 2022, they responded with substantially similar objections to the interrogatories. *See* ECF No. 469-4. Private Plaintiffs allege that the Defendant Intervenors have been stringing them along, representing on three separate occasions between August and October 2022 that they were in the process of identifying search terms and custodians to collect documents responsive to the RFPs. ECF No. 469 at 4.

On October 5, 2022, without having received any responsive documents or interrogatory answers, Private Plaintiffs wrote the Defendant Intervenors to set depositions. *See* ECF No. 469-5. Then, on October 21, Private Plaintiffs served eight deposition notices, noticing the depositions

of three corporate representatives and five individuals associated with Defendant Intervenors. *See* ECF No. 471-9; ECF Nos. 471-10, 471-11, 483-4, 483-6, 483-7, 483-8. The list of "Deposition Topics" in the deposition notices closely tracks Private Plaintiffs' RFPs. *See* ECF Nos. 471-9, 471-10, 471-11. To date, the Defendant Intervenors have agreed to accept deposition subpoenas for only one of their current or former employees and maintain that Private Plaintiffs' "request for depositions related to the primary election is untimely," because, under the Amended Scheduling Order, the deadline to conclude primary discovery "as to Plaintiffs" was August 12, 2022. ECF No. 471-7 at 5.

After engaging in informal correspondence and two meet-and-confer meetings, Private Plaintiffs filed a motion asking the Court to (1) compel document production in response to their RFPs and substantive responses to their interrogatories and (2) amend the scheduling order to permit completion of discovery on the Defendant Intervenors on matters related to the 2022 primary election. ECF No. 469. On October 31, 2022, the Defendant Intervenors responded to Private Plaintiffs' motion to compel and moved for a protective order, arguing that compelled disclosure would chill their associational rights under the First Amendment and that discovery was untimely under the Amended Scheduling Order. ECF No. 471.

Private Plaintiffs, State Defendants, and the Defendant Intervenors dispute whether the noticed depositions constitute discovery "as to Plaintiffs" or "as to Intervenors," as well as numerous issues related to the scope of discovery and privilege claims. *See* ECF No. 469; ECF No. 471; ECF No. 472. Under their reading, Private Plaintiffs believe that they served discovery "as to the Intervenors" on time—before the October 24 discovery deadline. ECF No. 469 at 8–10. The Defendant Intervenors and State Defendants suggest that depositions noticed by Plaintiffs after August 12 but before the October 24 close of primary election discovery "as to Intervenors"

are out of time and thus must "count toward the ten-deposition-limit" for the United States and Private Plaintiffs during the general election discovery period. ECF No. 471 at 13, 30; ECF No. 472 at 2–3, 6. The United States, also a plaintiff in this action, asks the Court to modify the scheduling order to "clarify[]" that the eight depositions Plaintiffs have noticed should "not count against the ten general election depositions collectively allotted to the United States and Private Plaintiffs." ECF No. 474 at 1.

The Court held a hearing on the pending discovery motions on November 14, 2022. As of the date of the hearing, the Defendant Intervenors had not produced a single document in response to Private Plaintiffs' twenty outstanding RFPs or substantively answered a single interrogatory.

The Court addressed each of the RFPs individually. The Defendant Intervenors agreed to produce responsive documents to RFPs 1 and 3 by no later than December 1, 2022. Hr'g Tr. at 13:17–22, 35:3–4.[2] The Court agreed with the Defendant Intervenors that RFPs 2, 4, and 5 were overly broad and ordered the parties to meet and confer over potential search terms.[3] *Id.* at 17:21–18:10, 35:5–6. The Court further sustained the Defendant Intervenors' objections to the relevance

---

[2] RFP #1: All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Texas Legislature regarding SB 1, SB 7, HB 3, or HB 6.

RFP #3: All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Office of the Texas Governor, the Office of the Texas Attorney General, the Office of the Texas Lieutenant Governor, or the Office of the Texas Secretary of State regarding SB 1, SB 7, HB 3, or HB 6.

[3] RFP #2: All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Texas Legislature relating to election administration, voting, election integrity, or the conduct of elections from January 1, 2020, to present.

RFP # 4: All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Office of the Texas Governor, the Office of the Texas Attorney General, the Office of the Texas Lieutenant Governor, or the Office of the Texas Secretary of State relating to election administration, voting, election integrity, or the conduct of elections from January 1, 2020, to the present.

RFP # 5: All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Office of the Elections Administrator of Harris County or the Office of the Elections Administrator of Dallas County relating to election administration, voting, election integrity, or the conduct of elections from January 1, 2020 to the present.

of RFP 8's requests for documents and communications regarding the recruitment, retention, and training of election judges before SB 1 was enacted. *Id.* at 50:4–6.[4]

After hearing the parties' arguments, the Court took the remainder of the RFPs and the question of whether the Defendant Intervenors would be required to produce a privilege log in support of their assertions of First Amendment privilege under advisement. Recognizing that any order requiring a privilege log would not resolve the question of how to resolve assertions of the privilege raised during depositions of the Defendant Intervenors' 30(b)(6) witnesses, the Court invited the parties to file supplemental briefing on the application of the First Amendment privilege to the Defendant Intervenors' deposition testimony. Both parties have submitted additional briefing. *See* ECF No. 483 (Defendant Intervenor's Brief); ECF No. 484 (Plaintiff's Brief); ECF No. 486; (Defendant Intervenor's Response).

## DISCUSSION

### I.     Discovery Deadlines and Limits

The parties dispute the timeliness of discovery against the Defendant Intervenors and whether the noticed depositions count against the ten-per-side deposition limit for discovery during the general election discovery period. *See* ECF Nos. 469, 471, 472, 474.

To begin, in light of the Court's authority to control its own docket, the parties are *encouraged* to address any future confusion or disagreement about the scheduling order by filing a joint motion for clarification rather than spilling dozens of pages of ink on textualist arguments about the proper interpretation of an order that can be amended *sua sponte*.

---

[4] RFP #8: All documents, including but not limited to communications, regarding the recruitment, retention, and training of election judges, election clerks, and other poll workers in Texas from January 1, 2018, to present, including any training materials or presentations created or provided by You.

To clarify the meaning of the Amended Scheduling Order for the purposes of the scheduling dispute now before the Court, the Court confirms that the written discovery requests served on Defendant Intervenors on July 7 and July 13, and the deposition notices served on October 21 were timely under the Amended Scheduling Order, which permitted discovery on matters related to the primary election "as to Intervenors" until October 24, 2022. ECF No. 437 at 1. Both the Defendant Intervenors' months-long delay in document production and the parties' apparent confusion about the meaning of the Amended Scheduling Order constitute good cause to extend the deadline for primary discovery by and upon the Defendant Intervenors, which will not prejudice any party, nor delay the proceedings.

The deadline for discovery *by or upon* Defendant Intervenors on matters related to the primary election is hereby extended to **January 27, 2023**. Given that this extension overlaps with the general election discovery period, the Court clarifies that any deposition of Defendant Intervenors' representatives or members conducted during the general election discovery period shall *not* count against the deposition limit set forth in the Amended Scheduling Order *unless* the deposition explicitly addresses matters specific to the general election.

Having addressed the parties' case management concerns, the Court proceeds to the Defendant Intervenors' substantive objections to Private Plaintiffs' discovery requests as irrelevant, unduly burdensome, and impairing their right to associate under the First Amendment.

## II.    Relevance of Requested Documents and Burden of Production

Many of Defendant Intervenors' boilerplate objections misconstrue the nature of the claims and defenses at issue in this case, and, as a result, overlook the relevance of many of the Private Plaintiffs' discovery requests. In addition, "boilerplate, and unsupported objections to discovery requests that fail to state their grounds with specificity are improper and result in waiver of

those objections." *T.S. by & through P.O. v. Burke Found.*, No. 1:19-CV-809-RP, 2021 WL 3924796, at *3 (W.D. Tex. June 29, 2021).

Defendant Intervenors repeatedly emphasize the claims premised on the Texas legislature's discriminatory *intent* in enacting SB 1, objecting to "the relevance and proportionality of discovery requests seeking documents that were not before the Texas Legislature." ECF No. 471 at 17–18, 28. But Private Plaintiffs have also asserted claims based on SB 1's *effects*. For example, the LUPE Plaintiffs allege that SB 1 unconstitutionally burdens the right to vote and has a discriminatory impact on voters based on their race and disability in violation of Sections 2 and 208 of the Voting Rights Act. *See, e.g.*, LUPE Complaint (Counts I, IV, V). These claims do not require proof of discriminatory intent, but instead look to a challenged law's impact. *See Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)) (directing courts to conduct a balancing test weighing the asserted burden on the right to vote against the precise justifications for the burden imposed); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 986 F.2d 728, 741 (5th Cir. 1993) ("Congress specifically intended to make clear that proof of discriminatory intent is not required to establish a violation of Section 2."); *Patino v. City of Pasadena*, 230 F. Supp. 3d 667, 718 (S.D. Tex. 2017) ("[E]vidence of a discriminatory impact may prove a violation of the Voting Rights Act.").

The Defendant Intervenors' answers to the Private Plaintiffs' operative complaints clearly demonstrate an awareness that the legal challenges to SB 1 are not limited to the Texas legislature's discriminatory intent. *See* ECF No. 412 (Answer to LUPE Compl.); ECF No. 412-1 (Answer to LULAC Compl.); ECF No. 412-2 (Answer to HAUL Compl.). The answers explicitly state the Defendant Intervenors' position on SB 1's *effects* in response to the allegations in the Private Plaintiffs' complaints. *See, e.g.*, ECF No. 412 at 2 ("The Republican Committees deny . . . that

claims of threats to election integrity are 'baseless,' that it is hard to vote in Texas elections, or that SB 1 makes it 'harder' to vote."); *id.* at 30 ("The Republican Committees deny that SB 1 permits poll watchers to intimidate voters."); *id.* at 31 ("The Republican Committees deny that SB 1 will deter anyone from serving as an assistor" or "reduce the number of people available to assist voters, reduce turnout of voters who rely on assistance, or subject anyone to felony prosecution for assisting voters in accordance with the law."); *id.* at 36 ("The Republican Committees deny that SB 1 imposes burdens on mail voting."); *id.* at 39 ("The Republican Committees deny that SB 1 'suppress[es] Latino voters,' 'depress[es] Latino turnout,' or decreases the interest in or convenience of voting."). In their motion to intervene, the Committees asserted that they would "raise defenses that share many common questions with the parties' claims and defenses," *e.g.*, ECF No. 57 at 10, 12. Private Plaintiffs are plainly entitled to discovery as to the Defendant Intervenors' defenses.

Defendant Intervenors' objections that the discovery requests are overly burdensome are also unavailing because they have failed to present evidence of the burden that each request will impose on each Committee. Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. FED. R. CIV. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); FED. R. CIV. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). "In the absence of some evidentiary showing that a discovery request would be burdensome, it is appropriate for a court to reject a request for a protective order on the ground that the undue burden claim is conclusory." *See, e.g.*, *Robroy Industries - Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 319064, at *3 (E.D. Tex. Jan. 23, 2017)

(citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *McLeod*, 894 F.2d at 1484–86 (holding that merely objecting to requests as "overly broad, burdensome, oppressive and irrelevant" without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection").

In support of their argument that *all* of the discovery requests are unduly burdensome, Defendant Intervenors have offered a single data point—that their initial search terms had yielded over 24,000 documents in the review universe for Harris County Republican Party custodians alone. *See* ECF No. 471 at 18. Clearly, the search results of a single search by a single Committee is insufficient evidence that the discovery requests on all of the Committees are overly burdensome. Moreover, because Defendant Intervenors appear to have aggregated all possible search terms drawn from the discovery requests into a single search, it is impossible to discern which individual RFPs are overly burdensome. Indeed, as the Court pointed out on several occasions at the hearing, Defendant Intervenors cannot establish an undue burden as to RFPs for which the responsive documents had already been identified, ECF No. 487, Hr'g Tr. at 10:17–11:17, or did not exist in great numbers, if at all, *id.* at 35:21–36:4.

Without specific evidence supporting the alleged burden, Defendant Intervenors' objections amount to generalized complaints that participating in this litigation is costly and time consuming and may require them to "divert resources away from election campaigns." ECF No. 471 at 18. As Private Plaintiffs point out, these complaints are hardly persuasive considering that Defendant Intervenors "affirmatively inserted themselves into this action and agreed to comply with the discovery schedule set by the court and never sought a modification or extension based on the [general] elections." ECF No. 475 at 8; *see also* ECF No. 469 at 6–7 (citing *BankDirect*

*Cap. Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 6694904, at *6 (N.D. Ill. 2018) ("The excuse [of] a busy and demanding schedule rings even more hollow when those making it filed the case . . . .")). Having elected to enter this case as parties, rather than as amici, Defendant Intervenors cannot avoid their discovery obligations merely because participating in this litigation is inconvenient.

## III.    First Amendment Privilege

### A.    Applicable Law

Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.'' *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Thus, ''[t]he First Amendment protects political association as well as political expression,'' *Buckley v. Valeo*, 424 U.S. 1, 15 (1976), and the ''freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments.'' *Kusper v. Pontikes*, 414 U.S. 51, 56–57 (1973).

In *Perry v. Schwarzenegger*, the Ninth Circuit noted that "[a] party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." 591 F.3d 1147, 1160 (9th Cir. 2009); *see also Whole Woman's Health v. Smith,* 896 F.3d 362, 372 (5th Cir. 2018); *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022). That privilege protects against a forced "[d]isclosure[ ] of political affiliations and activities" that would have a deterrent effect on the exercise of free speech or freedom of association rights. *Perry*, 591 F.3d at 1160.

The privilege arising out of the First Amendment is not absolute, however, as it only protects a party from compelled disclosure that would chill the associational rights at issue.

*NAACP*, 357 U.S. at 462–63. Courts evaluate claims of First Amendment privilege using to a two-part test. First, the party asserting the qualified privilege must make a prima facie showing of arguable First Amendment infringement. This prima facie showing requires the party to prove that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights. *Perry*, 591 F.3d at 1160.

Second, if the litigant can make the necessary prima facie showing, the evidentiary burden then shifts to the requesting party to establish that its interest in the information sought through the discovery is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of association. *See id.* at 1161. "More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it." *Id.*

Information that may be privileged on the basis of associational rights includes identities of rank and file members and similarly situated individuals, mailing lists, and lists of conferences attendees. *See id.* at 462 ("[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association"); *Perry,* 591 F.3d at 1153, 1155. If the prerequisites for its application are established, the associational privilege also protects internal policy or campaign communications concerning contested political issues. *See Smith,* 896 F.3d at 372; *Perry,* 591 F.3d at 1162.

### A.    Analysis

Defendant Intervenors argue that disclosure of the documents and information requested in RFPs 6–20 (and related ROGs and deposition topics) would burden their right to free association and is protected from disclosure under the First Amendment. In support of this assertion,

Defendant Intervenors offer declarations from individual members of each Committee describing how compelled disclosure of the requested communications would impair the ability to associate freely under the First Amendment.[5] These burdens appear to fall into four general categories:

(1)     Harm to the efficacy of the Committee's political activities through publication revelation of its confidential strategies and tactics, campaign and advocacy activities, and the allocation of resources for campaign and get-out-the-vote activities.[6]

(2)     Harm to the free flow of information among each Committee's officers, staff, consultants, candidates, and volunteers based on the chilling effect that disclosure would have on their willingness to offer candid views on advocacy strategy and messaging.[7]

(3)     Harm to "outside organizations" with "shared political goals" who would be "more likely to decline to offer candid views on sensitive topics if they believed that their views would be disclosed."[8]

(4)     Harm to the Committees' efforts to attract and retain active members and volunteers, because such individuals would fear that their identities and confidential communications would be disclosed in future litigation over which they have no control.[9]

The Court will address these burdens more fully below as they specifically pertain to Plaintiffs' discovery requests, but begins with two preliminary comments concerning the scope of the requested discovery and any responsive production.

---

[5] *See* ECF No. 483-12, Decl. of Casey Voeks (Executive Director of the Harris County Republican Party); ECF No. 483-13, Decl. of Susan Fountain (Executive Director of the Dallas County Republican Party); ECF No. 483-14, Decl. of Andrew Sexton (Regional Political Director of the Republican National Committee); ECF No. 483-15, Decl. of Jackson Carter Gross (Deputy Political Director of the National Republican Senatorial Committee); ECF No. 483-16, Decl. of David Johnston (Regional Political Director of the Republican Congressional Committee).

[6] ECF No. 483-12, Voeks Decl. ¶ 13; ECF No. 483-13, Fountain Decl. ¶ 13; ECF No. 483-14, Sexton Decl. ¶ 11; ECF No. 483-13, Gross Decl. ¶ 13; ECF No. 483-16, Johnston Decl. ¶ 13.

[7] ECF No. 483-12, Voeks Decl. ¶ 11; ECF No. 483-13, Fountain Decl. ¶ 11; ECF No. 483-14, Sexton Decl. ¶ 11; ECF No. 483-15, Gross Decl. ¶ 11; ECF No. 483-16, Johnston Decl. ¶ 11.

[8] *Id.*

[9] ECF No. 483-12, Voeks Decl. ¶ 12; ECF No. 483-13, Fountain Decl. ¶ 12; ECF No. 483-14, Sexton Decl. ¶ 12; ECF No. 483-15, Gross Decl. ¶ 12; ECF No. 483-16, Johnston Decl. ¶ 12.

First, Defendant Intervenors will be permitted to redact the names of any individual Committee members or volunteers from all discovery they are required to produce in this litigation. This should obviate any concerns that the Defendant Intervenors' compliance with their discovery obligations in this matter will disclose the identity of the Committees' members or volunteers, resulting in harassment, membership withdrawal, or discouragement of new members.

Second and relatedly, the Court observes that the identity of any individual Committee member or volunteer appears to be wholly irrelevant to the claims and defenses at issue in this action. *See* FED. R. CIV. P. 26(b) (limiting scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). Outside of lobbying communications between the Defendant Intervenors and members of the Texas legislature, which must be produced in any event,[10] there is no reason to expect that the identity of any individual Committee member would have any bearing on the Texas legislature's *intent* in enacting SB 1. And to the extent that Private Plaintiffs' discovery requests are aimed at the *effects* of SB 1 on voting rights and election integrity, that evidence exists independent of the identity of any Committee member associated with that information.

## B. Defendant Intervenors' Communications with Third Parties (RFPs 6 & 7) [11]

Plaintiffs have requested from Defendant Intervenors documents and communications sent to or exchanged with twelve enumerated third-party organizations. ECF No. 469-1 at 11, 12.

---

[10] *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *7 (W.D. Tex. Oct. 11, 2016) ("[W]hile citizens plainly have a right to 'communicate with [public] officials on a matter of public concern,' that does not mean they have a right to protect these communications from public view.") (quoting *Sol v. Whiting*, No. SA–11–CV–360–OLG, 2013 WL 12098752 (D. Ariz. Dec. 11, 2013)); *Perez v. Perry*, No. SA–11–CV–360–OLG, 2014 WL 106927 *2 (W.D. Tex. Jan. 8, 2014) (communications between "any legislator, legislative aide, or staff member" and "any outsider" were not privileged and were discoverable).

[11] RFP #6: All documents, including but not limited to communications, sent to or exchanged with [twelve enumerated] third-party organizations (the "Third-Party Organizations"), including any of their affiliates or subsidiaries, and the current and former employees, officers, attorneys, agents, trustees, investigators, representatives,

Defendant Intervenors object that these documents and communications are not relevant to the claims and defenses at issue in this action and are subject to the First Amendment associational privilege. *See* ECF No. 471 at 9, 12

*Perry* and its progeny have all dealt with the disclosure of either the identity of association members or internal communications—not communications with third parties. *See, e.g.*, *Perry*, 591 F.3d at 1160 ("Disclosure of political affiliations and activities that have a deterrent effect on the on the exercise of First Amendment rights are therefore subject to this same exacting scrutiny." (emphasis added) (internal quotation marks omitted)); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174 (9th Cir. 2011) (stating that the holding in *Perry* "was limited to private internal campaign communications concerning the formulation of campaign strategies and messages" (internal quotation marks omitted)); *Dunnet Bay Constr. Co. v. Hannig*, No. 10-CV-3051, 2011 WL 5417123, at *3 (C.D. Ill. Nov. 9, 2011) (interpreting *Perry*'s holding as "protect[ing] against the disclosure of the identity of members and the content of internal communications between members, employees, and agents of political campaigns").

The Defendant Intervenors' communications with third-party organizations are not protected by the First Amendment privilege of association. The Court will not presume that a protected associational relationship exists between a party and every other person or entity with whom they share common beliefs or goals. Indeed, such an expansive view of the associational privilege would swallow the discovery process altogether.

---

contractors, consultants thereof, or other persons or entities acting on their behalf or subject to their control, regarding SB 1, SB 7, HB 3, or HB 6.

    RFP #7: All documents, including but not limited to communications, sent to or exchanged with the Third-Party Organizations, including any of their affiliates or subsidiaries, and the current and former employees, officers, attorneys, agents, trustees, investigators, representatives, contractors, consultants thereof, or other persons or entities acting on their behalf or subject to their control, relating to election administration, voting, election integrity, or the conduct of elections from January 1, 2020 to present.

## C.    Defendant Intervenors' Internal Communications (RFPs 9–20)[12]

Despite their assertions to the contrary, Defendant Intervenors are not entitled to a blanket

privilege by virtue of their status as associations. *See United States v. El Paso Co.*, 682 F.2d 530,

---

[12] RFP #9: All documents, including but not limited to communications, regarding the recruitment and training of poll watchers in Texas from January 1, 2018, to present, including any training materials or presentations created or provided by You.

RFP #10: All documents, including but not limited to communications, regarding instances of violence, discrimination, harassment, intimidation, or any inappropriate behavior from poll watchers, election judges, election clerks, or other poll workers in Texas from January 1, 2018, to present.

RFP #11: All documents, including but not limited to communications, sent to or exchanged with candidates or potential candidates for elected office in Texas regarding the effects or potential effects of SB 1, SB 7, HB 3, or HB 6.

RFP #12: All documents, including but not limited to communications, sent to or exchanged with candidates or potential candidates for elected office in Texas regarding election administration, voting, election integrity, or the conduct of elections during the period from January 1, 2020, to present.

RFP #13: All documents, including but not limited to communications, regarding allegations, investigations, and discussions of illegal voting, election fraud, or any kind of criminal conduct in connection with [nine enumerated] methods of voting during the period from January 1, 2018, to the present.

RFP #14: All documents, including but not limited to communications, the impact or potential impact of SB 1, SB 7, HB 3, or HB 6 on demographic groups, including but not limited to, racial or ethnic minorities, persons with disabilities, persons with limited English proficiency, or partisan affiliation.

RFP #15: All documents, including but not limited to communications, regarding usage of [nine enumerated] methods of voting in Texas by demographic groups, including but not limited to, racial or ethnic minorities, persons with limited English proficiency, persons with disabilities, or partisan affiliation, during the period from January 1, 2020, to present.

RFP #16: All documents, including but not limited to communications, regarding the impact or potential impact of SB 1, SB 7, HB 3, or HB 6 on residents of [Bexar, Dallas, Harris, El Paso, Hidalgo, or Travis] counties.

RFP #17: All documents, including but not limited to communications, regarding the number or proportion of Texas residents, Texas citizens of voting age, or Texas registered voters who have, or lack, a Texas Driver's License, a Texas Election Identification Certificate, a Texas Personal Identification Card, or a Social Security Number, including patterns by race, ethnicity, disability status, or party affiliation from January 1, 2020, to present.

RFP #18: All documents, including but not limited to communications, regarding questions or complaints received from voters about SB 1's requirements to provide an identification number on Applications for Ballot By Mail and to provide an identification number on the carrier envelope of a mail ballot.

RFP #19: All documents, including but not limited to communications, regarding voter assistance, including transportation assistance for curbside voters, and "vote harvesting services" as defined by SB1, and patterns of requests for voter assistance by race, ethnicity, disability status, or party affiliation during the period from January 1, 2020, to present.

539 (5th Cir. 1982) (noting that privilege "may not be tossed as a blanket over an undifferentiated group of documents"). Conclusory assertions of privilege are "insufficient to carry out the proponent's burden of establishing" the relevant privilege. *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

Defendant Intervenors point to several cases for the proposition that a privilege log is not required where the parties are able to "assess a claim of privilege" adequately without one. *See* ECF No. 477 at 18–19. These cases, however, generally involved discovery requests seeking the names of specific members of the relevant association or the application of different form of privilege altogether. *See, e.g.*, *Am. C. R. Union v. Martinez-Rivera*, No. 2:14-CV026-AM-CW, 2015 WL 13650010, at *4–5 (W.D. Tex. Sept. 10, 2015) (asking "ACRU to identify, by name, title, function, and contact information, all of the individuals, employees, and agents of ACRU, including all staff members, who have served since 2006"); *Jordan v. Comm'r, Miss. Dep't of Corrections*, 947 F.3d 1322, 1328 n.3 (11th Cir. 2020) ("Here, it is apparent from the face of the subpoena that the information sought therein falls within the plain language of the Lethal Injection Secrecy Act."). Here, it is not readily apparent from the face of Private Plaintiffs' discovery requests that all responsive documents will be subject to the First Amendment privilege.

Unlike cases involving the disclosure of membership lists, the Defendant Intervenors are not entitled to assert a blanket privilege by virtue of their status as associations. To begin, the associational privilege is limited. When privilege "has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to

---

RFP #20: All documents, including but not limited to communications, analyses, reports, studies, or commentary, relating to the changing demographics of Texas voters; voter turnout by particular demographic groups, including but not limited to, racial or ethnic minorities, persons with limited English proficiency, persons with disabilities, or partisan affiliation; or particular voting practices in Texas.

achieve its purpose." *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020). Thus, assertions of privilege must "be specifically asserted" on a document-by-document basis. *Id.*; *see Perry*, 591 F.3d at 1153 n.1 (concluding "that some form of a privilege log is required and reject[ing] Proponents' contention that producing any privilege log would impose an unconstitutional burden."); *Smith*, 896 F.3d at 366 (noting that the third-party witness asserting First Amendment privilege provided a privilege log).

Plaintiffs accurately observe that, as a practical matter, it is impossible to define the limits of this privilege in the abstract. Even assuming the seriousness of the chilling effects on Defendant Intervenors' First Amendment rights, the Court must determine whether Private Plaintiffs have borne their burden under *Perry*. Private Plaintiffs must establish a substantial need for the withheld documents that outweighs the intrusion into the Defendant Intervenors' constitutional rights. *See Perry*, 591 F.3d at 1161 ("[T]he second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but *not necessarily to preclude it*.") (emphasis added). Evaluating whether this burden has been met requires a document-by-document approach because the relevance and need for the document clearly depend on the contents of the document itself.

Accordingly, to the extent that Defendant Intervenors withhold purportedly privileged information, they must produce a privilege log. The privilege log must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5).

### D.  Application of First Amendment Privilege to Deposition Testimony

In their supplemental brief addressing depositions, Plaintiffs urge the Court to "defer ruling on the application of the First Amendment privilege" until after written discovery has taken place. ECF No. 484 at 5. Plaintiffs further propose a "limited protective order that would allow for any deposition answer for which the First Amendment privilege is claimed to be held under seal for two weeks" and would require Defendant Intervenors "to file a motion to keep the seal in place." *Id.* at 1. The Defendant Intervenors oppose Plaintiffs' proposal and ask the Court to quash the noticed depositions. *See* ECF No. 486 at 4–5.

The Federal Rules expressly authorize counsel to instruct a witness not to answer a question "when necessary to preserve a privilege." FED. R. CIV. P. 30(c)(2). Thus, the Rules allow a party to preserve the privilege while any disputes over the application of the privilege are resolved through a motion to compel. *Dean v. Shell Pipeline Co., LP*, No. CV 19-137-BAJ-RLB, 2020 WL 5899428, at *3 (M.D. La. Oct. 5, 2020) ("A party may move to compel an answer if 'a deponent fails to answer a question asked under Rule 30.'") (quoting FED. R. CIV. P. 37(a)(3)(B)(i)). Moreover, protective orders limiting dissemination of information protected by the First Amendment privilege "cannot eliminate" the First Amendment injury resulting from compelled disclosure. *Perry*, 591 F.3d at 1164. This is especially true where, as here, the compelled testimony is made directly to "public policy opponent[s]," who obviously will learn of the sensitive information regardless of the protective order. *Smith*, 896 F.3d at 373.

Accordingly, counsel for Defendant Intervenors may instruct their witnesses not to answer a question asked at their depositions when necessary to assert their associational privilege. In the event of the assertion of a privilege and instruction not to answer, the parties may raise the issue

to the Court for resolution. Should the Court conclude that a privilege was improperly asserted, the party improperly asserting a privilege may be required to bear the costs of any re-deposition.

## CONCLUSION

For the foregoing reasons and as stated in open court, Plaintiffs' motion to compel discovery responses from the Defendant Intervenors and to amend the scheduling order (ECF No. 469) and Defendant Intervenors' cross-motion for a protective order (ECF No. 471) are **GRANTED IN PART** and **DENIED IN PART**.

The deadline for discovery *by or upon* Defendant Intervenors on matters related to the primary election is hereby extended to **January 27, 2023**.

Any deposition of Defendant Intervenors' representatives or members conducted during the general election discovery period shall *not* count against the deposition limit set forth in the Amended Scheduling Order (ECF No. 437) *unless* the deposition explicitly addresses matters specific to the general election.

The Defendant Intervenors must (1) produce documents responsive to Plaintiffs' requests for production, subject to the objections sustained at the hearing held on November 14, 2022, and the Defendant Intervenors' assertions of privilege, and (2) supplement their responses to Plaintiffs' interrogatories as needed based on the documents produced during discovery. The Defendant Intervenors may redact the names of any of their members included in such documents. The Defendant Intervenors must provide a privilege log that satisfies the requirements of FED. R. CIV. P. 26(b)(5).

It is so **ORDERED**.

SIGNED this 9th of December, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE