**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | |
| | § | |
| GREG ABBOTT, *et al.*, | § | Case No. 5:21-cv-00844-XR |
| | § | [Lead Case] |
| *Defendants.* | § | |
| | § | |
| HARRIS COUNTY REPUBLICAN PARTY, *et al.*, | § | |
| | § | |
| | § | |
| *Intervenor-Defendants.* | | |

## OCA PLAINTIFFS' OPPOSED MOTION TO COMPEL DEFENDANT OGG'S ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, and Workers Defense Fund ("Plaintiffs") respectfully submit this motion to compel interrogatory answers and document production from Defendant Harris County District Attorney Kim Ogg ("Ogg").

Plaintiffs served their First Set of Interrogatories and First Set of Requests for Production on Ogg on April 12, 2022. Since then, Ogg has not answered a single interrogatory, produced a single document, or produced a privilege log. Plaintiffs have repeatedly but unsuccessfully attempted to resolve this matter by agreement with Ogg. Plaintiffs therefore respectfully request the Court compel Ogg to appropriately respond to Plaintiffs' discovery requests, to produce a privilege log, and to grant any other relief the Court deems warranted.

## I.  BACKGROUND

Plaintiffs brought this suit to challenge voting restrictions enacted in "Senate Bill 1" by the Texas Legislature in 2021 (hereinafter "SB 1"). In their complaint they state challenges against Ogg under the Voting Rights Act of 1965 ("VRA"), Title II of the Americans with Disabilities Act

("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("RA"), regarding her enforcement of SB 1 Section 6.04, which criminalizes certain types of voting assistance, and SB 1 Section 6.06, which criminalizes "compensation" in the context of mail-in voting assistance. Dkt. 200 at 51–65; Tex. Elec. Code §§ 64.034, 86.0105. Plaintiffs additionally state challenges against Ogg under the First and Fourteenth Amendments to the United States Constitution for her enforcement of SB 1 Section 7.04, which defines and criminalizes "vote harvesting." Dkt. 200 at 65–75; Tex. Elec. Code § 276.015.

Ogg filed a motion to dismiss the claims brought by Plaintiffs, as well as other consolidated plaintiffs, on March 29, 2022, alleging that sovereign immunity barred all the plaintiffs' claims and that no plaintiff had standing or had stated plausible claims. Dkt. 344. While Ogg's motion to dismiss remained pending, Plaintiffs served Ogg on April 12, 2022, with their First Set of Interrogatories, ("ROGs," Ex. 1), and First Set of Requests for Production, ("RFPs," Ex. 2). These thirteen ROGs and twelve RFPs sought information and documents related to Ogg's investigation and prosecution of criminal election laws, as well as related communications with various local officials, State officials, the Texas Legislature, and members of the public.

On May 12, 2022, the day Ogg's responses to Plaintiffs' ROGs and RFPS were due, *see* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), Ogg's counsel notified Plaintiffs, for the first time, that she needed until June 10, 2022, to respond. Ex. 5 at 4. Plaintiffs informed Ogg via phone and e-mail that they opposed this extension because June 10 came substantially after the May 27 deadline for dispositive motions under the then-in-force scheduling order. *See id.* at 3; Dkt. 368. Later that day, Ogg served her "Objections to OCA Plaintiffs' First Set of Interrogatories" (Ex. 3) and "Objections to OCA Plaintiffs' Requests for Production." (Ex. 4).

Ogg's responses to Plaintiffs' ROGs and RFPs contain only objections, with no interrogatories answered, no documents produced, no documents identified, and no mention of any intent to later produce documents. Ogg objected to every request using some combination of recurring objections relating to sovereign immunity, undue burden, harassment, impermissible fishing expeditions, overbreadth, relevance, vagueness, ambiguity, the privacy of non-parties, and the seeking of legal conclusions. She also asserted the blanket application of work-product and attorney-client privilege in response to every RFP and ten out of thirteen ROGs. *See* Exs. 3–4.

On May 18, 2022, due to the GOP Intervenor-Defendant's renewed motion to intervene, Dkt. 402; the Fifth Circuit's issuance of the mandate permitting such intervention, Dkt. 415; and the State Defendants' motion for an extension of the trial date, Dkt. 406, this Court vacated the then-in-force scheduling order and instructed the parties to file a joint proposed scheduling order. Text Order of May 18, 2022, 5:21-cv-844 (W.D. Tex.). This generated protracted negotiations between the various parties to this consolidated litigation, eventually culminating in submission of a proposed scheduling order on June 7, 2022. Dkt. 436. During this time, Plaintiffs opted to refrain from burdening the parties and the Court with a motion to compel.

Once negotiations had concluded, however, Plaintiffs reached out to Ogg's counsel on June 8, 2022, to inquire as to the status of document production. Ex. 5 at 3. Ogg's counsel responded on June 10, 2022, stating that Ogg maintained all her objections and emphasizing her still-pending motion to dismiss all of Plaintiffs' claims on grounds of sovereign immunity. *Id.* at 2–3. Plaintiffs responded on June 17, 2022, stating their position that while the Fifth Circuit has in some instances limited discovery pending resolution of a sovereign immunity defense, discovery going to the applicability of such a defense is permissible. *Id.* at 2. Ogg's counsel did not respond to this e-mail.

The Court ruled on Ogg's motions to dismiss on August 2, 2022, denying in full her motion to dismiss Plaintiffs' claims.[1] Dkt. 450 at 5–9. One day after the Court's decision, Plaintiffs again contacted Ogg's counsel via e-mail asking that she let Plaintiffs know by the end of day on Friday, August 5, 2022, whether she intended to produce responsive documents. Ex. 5 at 1–2. Ogg's counsel did not respond to this e-mail.

On August 9, 2022, Plaintiffs again reached out to counsel for Ogg to state their willingness to negotiate an agreed timeline for production or to meet and confer regarding her remaining objections. *Id.* at 1. In this e-mail Plaintiffs noted that in the absence of a response they saw no option but to move to compel. *Id.* However, the following day, August 10, 2022, Ogg filed notice that she was appealing the Court's denial of sovereign immunity, Dkt. 451, and later that same day Ogg's counsel informed Plaintiffs via e-mail that she intended to file a motion to stay discovery pending resolution of her appeal. Ex. 5 at 1. Plaintiffs responded indicating opposition to that motion. *Id.*

Four days later, on August 15, 2022, Plaintiffs again contacted counsel for Ogg by e-mail. Plaintiffs stated that they had intended to file a motion to compel, but because Ogg now planned to file a motion to stay, were willing to avoid burdening this Court with a motion to compel until after the Fifth Circuit decided Ogg's motion. Ex. 6 at 2. In return, Plaintiffs asked Ogg to agree that Plaintiffs' refraining from filing a motion to compel did not waive or otherwise prejudice them from filing one at a later date. *Id.* Ogg agreed to this proposal later that day. *Id.* at 1.

Also on August 15, 2022, Ogg filed a motion to stay proceedings in this Court, attaching as an exhibit Plaintiffs' RFPs. Dkt. 452 & 452-1. The Court denied this motion, ruling that it had

---

[1] The court dismissed several of the claims brought by other plaintiffs in this consolidated litigation, but all of Plaintiffs' claims were permitted to proceed. Dkt. 450 at 16–17.

"already addressed the merits of [her] arguments" in its order of August 2, 2022, and that "the discovery requests are relevant and responses thereto may be secured from Defendant Ogg either as a party to this case or a third party." Text Order of August 15, 2022, 5:21-cv-844 (W.D. Tex.)

After more than four weeks passed with no docket activity, Plaintiffs reached out to Ogg's counsel, on September 14, 2022, to ask whether Ogg still intended to file a motion to stay in the Fifth Circuit, and to again offer to negotiate a timeline for production. Ex. 6 at 1. Ogg's counsel responded that she did intend to file such a motion. *Id*. She then did so on September 19, 2022—more than five weeks after this Court's denial—and the Fifth Circuit denied it, in a three-page order, on Friday, October 7, 2022. *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022).

Ogg's counsel e-mailed Plaintiffs later that day suggesting a meet and confer to discuss Plaintiffs' discovery requests "to see if [the parties could] avoid or at least narrow any disputes to be presented to the district court." Ex. 7 at 2. Plaintiffs responded within the hour, and the parties held their first meet and confer on Wednesday, October 19, 2022.

During this meet and confer, the parties agreed that as a first step, (1) Ogg's counsel would speak to their client to ascertain what responsive information the Harris County District Attorney's Office (HCDAO) has relating to investigations and prosecutions of offenses in connection with voting assistance and mail-ballot fraud, including those pursuant to SB 1, while (2) Plaintiffs, in order to guide future negotiations, would review the materials the Travis County District Attorney's office had produced to Plaintiffs in response to identical discovery requests sent to that office. During this meet and confer, Ogg's counsel suggested, and Plaintiffs agreed, that the parties would reconvene early the following week to share this information and discuss next steps.

Plaintiffs sent an e-mail to Ogg's counsel the next day, Thursday, October 20, 2022, memorializing the parties' discussion and including times that Plaintiffs were available to meet

and confer the following Tuesday, October 25, 2022, and Wednesday, October 26, 2022. Ex. 8. Ogg's counsel did not contest Plaintiffs' memorialization of events or respond to this e-mail.

On Thursday, October 27, 2022, after the proposed meeting dates had come and gone, Plaintiffs e-mailed Ogg's counsel once again, briefly summarizing Ogg's failures to engage in the discovery process over the previous six months and suggesting, again, that failure on Ogg's part to so-engage would leave Plaintiffs no recourse but to involve the Court. Ex. 9 at 3. Ogg's counsel responded on Friday, October 28, 2022, did not acknowledge or contest Plaintiffs' summary of events, and suggested setting a time to meet "late next week." *Id.* at 2. After repeatedly reaching out to Ogg's counsel, and accommodating Ogg's counsel's availability, Plaintiffs held their second meet and confer with Ogg on Friday, November 4, 2022. *Id.* at 1–2.

During the second meet and confer, Ogg's counsel articulated the following regarding the agreed-upon search for investigations and prosecutions of offenses in connection with voting assistance and mail-ballot fraud:

- Any search by Ogg for HCDAO records pre-dating 2018 requires accessing physical records stored at a warehouse, which Ogg believes to be unduly burdensome. No information was provided to explain why traveling to a presumably local warehouse to retrieve physical copies of responsive documents constitutes an undue burden.

- Ogg's counsel could not, or would not, provide the search terms used to conduct the search, but stated it had been done by persons who were knowledgeable about the HCDAO's activities regarding the offenses that were the subject of the search.

- The search identified, from 2018 to present, no cases charged, or which have led to conviction, for the offenses that were the subject of the search.

- The search identified no pending criminal cases for the offenses that were the subject of the search.

- The search identified four pending referrals for alleged election-related offenses: one for unspecified mail-in ballot activity; one for person with a felony illegally voting; and two for non-citizens illegally voting.

Ogg's counsel additionally expressed that they believed "investigation" could have multiple meanings, so Plaintiffs defined it as meaning any affirmative step taken by the HCDAO after receiving a referral, such as devoting HCDAO's or another agency's law enforcement efforts to looking into the referral. Ogg's counsel then stated that the search had additionally revealed both prior and potentially ongoing investigations related to the offenses that were the subject of the search but refused to elaborate further as to the substance of those investigations. According to Ogg's counsel, the Texas Public Information Act applies in federal discovery and shields the disclosure of both ongoing and closed investigations. Ogg's counsel additionally mentioned "investigative privilege" as a basis for withholding this information. Neither of these objections was raised in her May 12 written objections to Plaintiffs' discovery requests. *See* Exs. 3–4.

Ogg's counsel then agreed to ascertain at least the number of investigations described above, if not their substance, and the parties agreed to set the next meet and confer for Monday, November 14, 2022. Plaintiffs sent an e-mail memorializing the above on November 7, 2022, and provided their availability for November 14 and November 15. Ex. 10 at 1. Ogg's counsel did not contest Plaintiffs' memorialization of events and did not respond to this e-mail.

On November 18, 2022, Plaintiffs yet again contacted Ogg's counsel via e-mail, this time including a letter setting out a detailed history of her refusal to participate in the discovery process, the ways Plaintiffs had attempted to resolve the dispute, and a final narrowing of Plaintiffs' discovery requests to address concerns articulated by Ogg's counsel during the two meet and confers. Plaintiffs requested a formal response by November 25, 2022. Exs. 11–12. Ogg's counsel did not contest Plaintiffs' summary of events and did not respond to this e-mail or letter.

Finally, on December 12, 2022, Plaintiffs contacted Ogg's counsel requesting Ogg's position on the instant motion to compel, by 5 p.m. central on December 13, 2022, and again

stating Plaintiffs' willingness to meet and confer to negotiate a timeline for production in connection with their narrowed discovery requests. Ex. 13. Ogg's counsel did not respond to this e-mail, and Plaintiffs have therefore marked Ogg as opposed to this motion. *Id.*

Plaintiffs have made consistent good faith efforts to obtain discovery from Ogg, but as of today—more than eight months after Plaintiffs first served their requests, seven months since Ogg served only objections in response, four months since this Court denied her motion to stay discovery, and two months since the Fifth Circuit did the same—she has failed to answer a single interrogatory, produce a single document, indicate that any production is forthcoming, or produce a privilege log. Plaintiffs therefore request this Court compel Ogg to meaningfully respond to their discovery requests.

## II. LEGAL STANDARDS

Generally speaking, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019) (cleaned up). "Once the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts" to the resisting party to show why the discovery is objectionable. *Id.* (cleaned up). Federal Rule of Civil Procedure 37 "empowers the court to compel the production of documents and complete responses to interrogatories." *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).

## III. ARGUMENT

Plaintiffs seek relevant information and Ogg's objections are universally inadequate.

## A. Plaintiffs' Discovery Requests Seek Relevant Information

Plaintiffs seek information that is "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Each discovery request is aimed at information relating to Ogg's "investigation or prosecution of violations or suspected violations of criminal election law" or her communications regarding the same with other local officials, the Texas Secretary of State, the Texas Attorney General, the Texas Legislature, or members of the public. *See generally* Exs. 1–2. "[C]riminal election law" is defined as "any criminal provision of the Texas Election Code, or any criminal provision of any other law regulating conduct in connection with voting or elections. This includes but is not limited to SB1 sections 6.04, 6.06, and 7.04." Ex. 1 at 4; Ex. 2 at 4.

The information sought is relevant to establishing Plaintiffs' and their members' fear of prosecution and the concomitant chilling effect that fear has on Plaintiffs' and their members' exercise of their First Amendment and other federal rights. *See, e.g.*, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020), as revised (Oct. 30, 2020) (setting out at least two "type[s] of evidence [that] may establish a fear of prosecution": that a plaintiff is "subject to a regulation or proscription" directly prohibiting the exercise of their rights, or that there is "a history of past enforcement" (cleaned up)); *Longoria v. Paxton*, 585 F. Supp. 3d 907, 920 (W.D. Tex. 2022), *vacated and remanded on different grounds*, 2022 WL 2208519 (5th Cir. June 21, 2022) ("To establish a credible fear of enforcement, then, a plaintiff may, but need not, rely on a history of past enforcement of similar policies or direct threats to enforce the challenged policies." (citing *Speech First*, 979 F.3d at 336)). It is also relevant to establishing the viability of Ogg's sovereign immunity defense, as it goes to whether she has a "demonstrated willingness," pursuant to *Ex parte Young*, to enforce the provisions challenged. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation omitted); Dkt. 448 at 25–28 (finding that Plaintiffs' allegations that

Texas Attorney General has previously and is currently investigating and prosecuting allegations of election law offenses, including those "regulating some of the same elections procedures" as challenged in this case, served to demonstrate threat of enforcement).

Moreover, Ogg has put these questions directly at issue by basing her motion to dismiss Plaintiffs' claims (and her appeal of this Court's decision denying that motion) largely on Plaintiffs' purported failure to show she has constrained or threatened to constrain their actions, or that there is a credible threat of prosecution, with respect to SB 1 Sections 6.04, 6.06, and 7.04. *See generally* Dkt. 344 (Ogg's motion to dismiss); *Mi Familia Vota v. Ogg*, No. 22-50732, Doc. 00516514898 (5th Cir. Oct. 19, 2022) (Ogg's Fifth Circuit principal brief). Ogg should not be allowed to demand Plaintiffs produce proof that she has taken "some step to enforce" the challenged provisions, Dkt. 344 at 7, while simultaneously refusing to respond to Plaintiffs' discovery requests seeking that very information.

This Court has already ruled to this effect. *See* Text Order of August 15, 2022, 5:21-cv-844 (W.D. Tex.) (stating Plaintiffs' "discovery requests are relevant and responses thereto may be secured from Defendant Ogg either as a party to this case or a third party"). Because Plaintiffs' ROGs track their RFPs, the Court's prior ruling should apply with equal force to Plaintiffs' ROGs.

Plaintiffs therefore maintain that the Court's prior ruling is dispositive of the question of relevance. Nevertheless, in an effort to avoid burdening this Court with a motion to compel, Plaintiffs attempted to obtain compliance from Ogg by narrowing their discovery requests to limit the definition of "criminal election law" to mean

> only those criminal provisions that regulate conduct in connection with voting. For example, this would include, among other things, mail-in ballot related offenses; mail-in and in-person voter assistance related offenses; "vote-harvesting" and related criminal offenses; fraud, perjury, or other offenses in connection with casting a ballot; election fraud offenses such as improperly influencing the

> independent exercise of the vote of another; and illegal voting. It would not include campaign finance offenses, political advertising offenses, or offenses in the administration of elections that do not touch upon the conduct of voting itself.

Ex. 12 at 3–4. Plaintiffs additionally narrowed their discovery requests regarding the violation or suspected violation of "any criminal provision of any other law regulating conduct in connection with voting or elections" by making clear they sought only responsive documents or interrogatory answers reflecting the application of such laws in relation to conduct in connection with voting. *Id.* at 4. Ogg did not respond to Plaintiffs' letter setting out this narrowing of their requests.

Plaintiffs' narrowed requests seek a subset of the information that the Court has already ruled is relevant. The narrowed requests therefore also meet this criterion. Plaintiffs' requests, as initially written and as narrowed, seek relevant information.

### B. Ogg's Objections are Universally Inadequate

Ogg prefaces her specific objections to each of Plaintiffs' ROGs and RFPs with "objections applicable to all [requests], instructions, and definitions." Exs. 3–4 at 4. She then raises some combination of the following seven specific objections[2] in response to each of Plaintiffs' ROGs:

> [1] Ogg further objects to this Interrogatory because it is not limited to the legislation at issue or the applicable timeframe, and thus, is overbroad in scope and time and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.
> . . .
> [2] Ogg also objects that this Interrogatory is vague and ambiguous in that it fails to define what Plaintiffs mean by "predicated at least in part," and "suspected violation."
> . . .
> [3] This Interrogatory is also overbroad and vague in that it fails to specifically identify the ["State officials" / "local official" / "Texas legislature" / "members of the public"] included in the subject matter of the Interrogatory.

---

[2] Plaintiffs have reordered and numbered Ogg's objections to group similar specific objections together for ease of analysis.

. . .

[4] Ogg objects because this Interrogatory is directed at an improper party, protected by the doctrine of sovereign immunity. *See* Ogg's Motion to Dismiss (Dkt. 344); *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). As such, the Interrogatory is unduly burdensome, harassing, and constitutes an impermissible fishing expedition.

. . .

[5] Ogg objects to the extent that this Interrogatory seeks documents and information that invades the constitutionally, statutorily, and otherwise protected personal privacy of non-parties to this litigation.

. . .

[6] Additionally, Ogg objects to the extent that this Interrogatory seeks information protected by the work-product privilege and attorney-client privilege. *See In re Bexar County Criminal District Attorney's Office*, 224 S.W.3d 182, 187 (Tex. 2007).

. . .

[7] Ogg additionally objects to this Interrogatory as it seeks a legal conclusion that is not within the confines of Ogg's role and authority as the Harris County District Attorney.

Ex. 3 at 4–10. Ogg again raises some combination of the same specific objections, minus the "seeks a legal conclusion" objection, in response to each of Plaintiffs' RFPs. Ex. 4 at 4–10. Many are raised in response to *all* of Plaintiffs' requests and thus hardly constitute "specific" objections, although Plaintiffs refer to them as such. Each and every objection is inadequate as set out below.

### i. Ogg's prefatory objections and specific objections regarding vagueness, ambiguity, and/or overbreadth all fail for lack of specificity

Plaintiffs address Ogg's prefatory objections and specific objections Nos. 1–3 together because all are based on vagueness, ambiguity, and/or overbreadth, and all fail for the same reasons.

### a. Ogg's prefatory objections should be overruled

Ogg's two prefatory general "objections applicable to all [requests], instructions, and definitions" are that she (1) "objects to the definitions and instructions set forth" in the ROGs and RFPs "to the extent that they purport to assign the words therein defined meanings other than those

in common usage," and will therefore "use the commonly accepted definition of words and phrases" in responding; and (2) "objects to Plaintiffs' definitions and use of 'criminal election law,' 'State officials,' 'local officials,' 'Local officials,' 'Texas legislature' and 'members of the public' as they are vague and overbroad in scope and time." Exs. 3–4 at 4.

First, "the prohibition against general or blanket objections to discovery requests has been long established." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (cleaned up). This is because "[i]n the face of such objections, it is impossible to know whether information has been withheld and if so, why," particularly "where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request." *Id.* (cleaned up). Ogg's prefatory objections should be overruled on this basis.

But even if these objections were viewed as in response to each request, they would be insufficient. General allegations that a discovery request is overly broad or vague are "not adequate to voice a successful objection" because they fail to "show specifically how" the discovery request is objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (cleaned up). Thus, "if part or all of [a discovery request] is allegedly vague and ambiguous, the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding." *Heller*, 303 F.R.D. at 488 (citations omitted). The objecting party "should exercise reason and common sense to attribute ordinary definitions to terms and phrases" and "[i]f necessary to clarify its answers . . . may include any reasonable definition of the term or phrase at issue." *Id.* (cleaned up). It is only when a request "is truly so vague and ambiguous that the responding party cannot understand its meaning and what information it seeks" that the party should "provide no answer at all or promise no production of

responsive documents." *Id.* The same applies to objections of overbreadth: "if a discovery request is overbroad, the responding party must . . . explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what the responding party is answering or responding to." *Id.* (cleaned up).

Moreover, Plaintiffs provided specific definitions of each of these terms—"local officials," "State officials," "Texas Legislature," and "members of the public," which largely track the closely analogous definition of "parties" permitted by the Western District of Texas' Local Rules.[3] Those same Local Rules specifically state that the definitions included therein "shall not preclude . . . the definition of other terms specific to the particular litigation." *Id.* Plaintiffs do not see how their instructions and definitions purport to assign any meaning outside of commonly accepted definition of words and phrases, making Ogg's prefatory objections doubly confusing because Plaintiffs have no idea what definitions she used, if not Plaintiffs', in formulating her objections.

Ogg made no effort to define her understanding of the terms she objected to and failed to explain with specificity how Plaintiffs' requests are overbroad in either scope or time. *See Heller*, 303 F.R.D. at 488; *McLeod*, 894 F.2d 1482 at 1485. Her prefatory objections should be overruled.

      **b. Objection No. 1: Ogg fails to explicate how Plaintiffs' requests are overbroad in scope and time, and relevant information is not limited to the time-period after passage of SB 1 or to the SB 1 provisions challenged**

---

[3] Plaintiffs defined "you"/"the Office of the Harris County District Attorney," "OAG"/"the Office of the Texas Attorney General," "SOS"/"the Office of the Texas Secretary of State," "local officials," "State officials," and "Texas Legislature," in relation to the "current and former employees, officers, attorneys, agents, trustees, investigators, representatives, contractors, and consultants" of each entity. Ex. 1 at 4–5, Ex. 2 at 4–6. This tracks but is slightly broader than the Local Rules defining parties as "officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates." *See* W.D. Tex. L. R. CV-26(b)(5). Plaintiffs straightforwardly defined "members of the public" as, essentially, anyone else: "any natural person or natural or legal entity not included in the definitions of you, the OAG, the SOS, State officials, local officials, or the Texas Legislature as set out in the definitions above." Ex. 1 at 4–5; Ex. 2 at 4–6.

Ogg raises specific objection No. 1—"not limited to the legislation at issue or the applicable timeframe, and thus, is overbroad in scope and time and seeks irrelevant information"— to all of Plaintiffs' discovery requests.[4] The issue of relevance has already been addressed and Ogg's objections on that basis should be overruled.

Second, this objection seems to imply that the "applicable timeframe" for Plaintiffs' requests would start with SB 1 going into effect (or perhaps with the introduction of SB 1 or its predecessor bills), and the appropriate scope would be the investigation or prosecution of offenses under SB 1. Plaintiffs do not know, and Ogg does not explain, how the requests are overbroad. Nor has she answered any interrogatory or produced documents subject to whatever narrowed breadth, if any, she contends is appropriate.

Third, this objection ignores the context of Plaintiffs' claims. Plaintiffs assert pre-enforcement challenges because SB 1 recently added *new* criminal offenses to the Texas Election Code. Although Ogg may not have yet carried out a substantial number of investigations or prosecutions of SB 1-created offenses, she may do so in the future and, as set out above, prior investigations or prosecutions of related offenses in connection with voting or an election are relevant to demonstrate her willingness to enforce new crimes under SB 1.

Fourth, Plaintiffs intentionally limited their requests to January 1, 2016, to the present, in order to minimize the burden posed while still providing for a small window of time prior to Ogg taking office in January 2017. Plaintiffs sue Ogg in her official capacity, and "her" willingness to enforce SB 1 is relevant insofar as it reflects her *office's* willingness to do so. *See Kentucky v.*

---

[4] Ogg did not directly state this objection to RFP Nos. 11 and 12. However, those RFPs request the production of documents identified in response to Plaintiffs' ROGs, and Ogg responded to RFP Nos. 11 and 12 by directing Plaintiffs to her responses to ROG Nos. 4, 5, and 11, all of which did contain this objection.

*Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Plaintiffs thus seek information reaching back slightly further than one individual's tenure as Harris County District Attorney.[5]

Because Ogg again fails to specifically explain how Plaintiffs' requests are overbroad in either scope or time, these objections should be overruled. *See McLeod*, 894 F.2d 1482 at 1485.

### c. Objection No. 2: Ogg does not explain why the meanings of "predicated at least in part" or "suspected violation" are vague or ambiguous

Ogg raises specific objection No. 2—that the phrasing "predicated at least in part" and "suspected violation[(s)]" is "vague and ambiguous"—to eleven of Plaintiffs' thirteen ROGs and all of Plaintiffs' RFPs.[6] An example of how Plaintiffs used this phrasing is found in RFP No. 1, which asks for "[a]ll documents and communications relating to investigations, criminal proceedings, or prosecutions initiated or participated in by your office and predicated at least in part on a violation or suspected violation of criminal election law." Ex. 2 at 10. All uses of the phrasing in Plaintiffs' requests occurred in substantially similar contexts.

---

[5] If the Court determines January 1, 2016, to the present is too large a window of time, Plaintiffs note that other county defendants have provided discovery responses to identical RFPs and ROGs at least back to 2017, and that Ogg's counsel has stated Ogg has access to information going back to January 1, 2018, without the need to search physical records. Plaintiffs therefore respectfully submit that should the Court choose to limit the responsive timeframe, that January 1, 2018, to the present is a limitation that would address any of Ogg's concerns while still ensuring Plaintiffs may obtain the discovery to which they are entitled.

[6] Ogg raises the "predicated at least in part" objection to ROG No. 1 and RFP No. 1 and the "suspected violation" objection to every ROG other than No. 4 and No. 13, as well as to every RFP. While Ogg did not directly state this objection to ROG No. 2, that ROG requests information stemming from ROG No. 1, to which Ogg did so-object. Similarly, while Ogg did not directly state this objection to RFP Nos. 11 and 12, those RFPs request the production of documents identified in response to Plaintiffs' ROGs. Ogg responded to RFP Nos. 11 and 12 by directing Plaintiffs to her responses to ROG Nos. 5, and 11, wherein she did raise this objection. Ogg did not raise these objections to ROG Nos. 4 and 6 despite both requests using one or both of those phrases.

Plaintiffs utilized the wording "predicated at least in part" because not all investigations or prosecutions involving offenses under criminal election law are based *solely* on criminal election law; some may involve offenses under other criminal laws. Plaintiffs utilized the "suspected violation" phrasing because not all investigations or prosecutions lead to final conviction; a "suspected violation" of criminal election is not always *proven*. Neither understanding requires special knowledge, and there is no reasonable basis on which to assert that these phrasings are "truly so vague and ambiguous" as to preclude even a partial interrogatory answer or production of responsive documents. *See Heller*, 303 F.R.D. at 488. Nor did Ogg make any attempt to provide her own definition of these purportedly objectionable terms. These objections should be overruled.

### d. Objection No. 3: Ogg does not explain the deficiencies in the definitions of the entities at issue or the documents and communications sought

Ogg raises specific objection No. 3—that a request is "overbroad and vague in that [it] fails to specifically identify" the "local official," "local officials," "State officials," "the Texas [L]egislature," and "members of the public" "included in the subject matter of [the request]"—to ROG Nos. 6 and 9–12, and RFP Nos. 6–10. Exs. 3–4 at 4–10. She adds to her objections to RFP Nos. 10–16 that they are "overbroad and vague" for failing to specifically identify "the type of communications and documents sought." Ex. 4 at 4–10.[7]

Plaintiffs did not "specifically identify" individual persons or entities in their requests because they do not know which persons or entities that Ogg has been or is communicating with about the specified subject matter. Similarly, Plaintiffs did not "specifically identify" the type of communications or documents they seek because they do not know what form those documents or communications are in. That is why they made these requests—to discover that information. *See*

---

[7] Ogg did not raise these objections to ROG No. 2 and RFP No. 2 despite both requests using the terms "local officials" and "State officials."

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978) (the purpose of discovery, "consistent with recognized privileges, [is] for the parties to obtain the fullest possible knowledge of the issues and facts before trial" (cleaned up)). Second, these objections are near-identical to Ogg's prefatory objections regarding the definitions of the terms "local official," "State officials," the "Texas Legislature," and "members of the public," and fail for the same reasons. And third, Plaintiffs provided specific definitions of the terms "communications" and "documents," which align with the definitions for those terms provided in the Western District of Texas's Local Rules and Federal Rule of Civil Procedure 34, respectively.[8]

As with all her other objections on these bases, Ogg does not explain with any specificity why the objected-to terms are "overbroad and vague" and made no attempt to provide her own definitions. These objections should be overruled.

### ii. Objection No. 4: The Court should overrule Ogg's sovereign immunity objections

Ogg raises specific objection No. 4—her sovereign immunity defense—in response to all of Plaintiffs' discovery requests. In support of each such objection she cites *Ex parte Young*, 209

---

[8] Plaintiffs defined "communications" as "any disclosure, conveyance, transfer, or exchange of any information or documents . . . by any means or in any form, including but not limited to oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise." Exs. 1–2 at 2–3. This tracks the Western District of Texas's Local Rules defining "communication" as "the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)," except that Plaintiffs provided more specific examples. *See* W.D. Tex. L. R. CV-26(b)(2).

Plaintiffs defined "documents" as "includ[ing] but not limited to" a list of media through which information may be documented, including through electronic means, such as photographs, bills, e-mails, notebooks, drawings, memoranda, advertisements, press releases, and so forth. Exs. 1–2 at 2–3. While admittedly lengthy, at base this definition simply provides a comprehensive but non-exhaustive list of documents that tracks the instruction that a party may request "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." *See* Fed. R. Civ. P. 34(a)(1)(A).

U.S. 123, 155–56 (1908), *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020), and *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), all of which focus on application of the *Ex parte Young* doctrine. Exs. 3–4 at 4–10. Ogg's motion to dismiss also focused primarily on the application of *Ex parte Young*. *See* Dkt. 344.

These objections should be overruled because this Court has already rejected Ogg's invocation of sovereign immunity, Dkt. 450, and rejected Ogg's motion to stay discovery pending resolution of her appeal of that order, Text Order of May 18, 2022, 5:21-cv-844 (W.D. Tex.), as has the Fifth Circuit, *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022). Moreover, the Court has permitted all of Plaintiffs claims against Ogg to go forward, Dkt. 450 at 17, which include not only constitutional claims but also claims pursuant to the VRA, ADA, and RA, all of which abrogate or provide for the waiver of sovereign immunity, *see OCA-Greater Houston v. Tex.*, 867 F.3d 604, 614 (5th Cir. 2017) ("The VRA, which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity."); *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) ("Congress expressly declared that states 'shall not be immune' from suit for a violation of the ADA."); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277–287 (5th Cir. 2005) (en banc) (State agency waives sovereign immunity from RA claims when it accepts federal funding). It was largely on this basis that the Fifth Circuit rejected Ogg's motion to stay discovery pending resolution of her appeal:

> [S]overeign immunity cannot bar Plaintiffs-Appellees' VRA claims because the VRA explicitly abrogated sovereign immunity. . . . Thus—and regardless of whether sovereign immunity applies to bar Plaintiff-Appellees' constitutional claims—sovereign immunity has no bearing on Plaintiffs-Appellees' VRA claims . . . [as to which] Ogg has no likelihood of succeeding on the merits of a sovereign immunity defense. . . . We acknowledge that the scope of such discovery proceedings may substantially overlap with the scope of discovery arising under [the] constitutional claims.

*Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022). Accordingly, Ogg's objections on grounds of sovereign immunity should be overruled. [9]

### iii.   Objection No. 5: Ogg neither explains how Plaintiffs' requests invade the privacy of non-parties nor acknowledges the protective orders in this case

Ogg raises specific objection No. 5—"to the extent" a request "invades the constitutionally, statutorily, and otherwise protected personal privacy of non-parties to this litigation"— to nine of Plaintiffs' thirteen ROGs and eleven of Plaintiffs' twelve RFPs.[10]

Ogg does not articulate whose, and which, privacy interests are protected, leaving Plaintiffs to guess as to the specifics. *See, e.g.*, *Reynolds v. Blann Tractor Co., Inc.*, 2019 WL 13214739, at *3 (E.D. Tex. Sept. 27, 2019) ("[B]oilerplate objections . . . apparently copied and pasted throughout [a party's] responses," such as "Plaintiff objects to this request to the extent that it seeks to violate Plaintiff's right to privacy," were waived due to lack of specificity).

Nevertheless, Plaintiffs acknowledge that "[t]he court must balance the interests of the parties in obtaining relevant discovery against the privacy interests of individual non-parties," and that the Court has "discretion to determine whether discovery of such files is warranted." *Meche v. Maint. Dredging, Inc.*, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (cleaned up); *see Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996). But in making these objections Ogg does not acknowledge that the parties in this consolidated litigation are bound by two

---

[9] Plaintiffs note that Ogg's objections on this basis additionally state it is *because* Ogg is protected by sovereign immunity that each request is "unduly burdensome, harassing, and constitutes a fishing impermissible fishing expedition." *See* Exs. 3–4 at 4–10. Resolution of her sovereign immunity objection therefore resolves these objections as well. Even were that not the case, Ogg has failed to explain how any particular request is unduly burdensome or harassing or constitutes a "fishing expedition." *Cf. Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' . . . preclude a party from inquiring into the facts.").

[10] Ogg raises this objection to ROG Nos. 1, 2, and 6–12, and to RFP Nos. 1, 2, and 4–12.

protective orders. The first governs "confidential" information, Dkt. 237 (entered on February 8, 2022), while the second governs "ultrasensitive" information, Dkt. 346 (entered on March 29, 2022). Once a document is classified as either "confidential" or "ultrasensitive," it is usable solely for "the purpose of preparation, trial, and appeal of this litigation and for no other purpose and shall not be disclosed except in accordance with the terms of [the protective orders]." Dkt. 237 at 5; Dkt. 346 at 4. Courts faced with objections that discovery requests invade the privacy of non-parties have found that protective orders such as these can "alleviate any privacy concerns." *See Ellison v. Patterson-UTI Drilling Co., LLC*, 2009 WL 3247193, at *7 (S.D. Tex. Sept. 23, 2009); *Lee v. Aramark Facility Services, LLC*, 2021 WL 6070448, at *6 (E.D. La. July 15, 2021).[11]

Because the protective orders in this case adequately protect the privacy interests of non-parties to this litigation, the Court should overrule Ogg's objections on those grounds.[12]

> ### iv. Objection No. 6: Federal law controls application of the work-product and attorney-client privileges here and Ogg's blanket assertion of these privileges, absent a privilege log, is inadequate

Ogg raises specific objection No. 6—"to the extent" a request "seeks information and documents protected by the work-product privilege and attorney-client privilege"—to ten of Plaintiffs' thirteen ROGs and all of Plaintiffs' RFPs.[13] Exs. 3–4 at 4–10. In support of each such

---

[11] For example, the Travis County District Attorney, on whom Plaintiffs served identical ROGs and RFPs, provided responsive documents and interrogatory answers, and marked information "confidential" or "ultrasensitive" as appropriate.

[12] In the event the Court finds that the protective orders in this case do not adequately protect the privacy interests of non-parties, Plaintiffs request the Court still compel Ogg to produce responsive documents and answers to their interrogatories while permitting her to redact personally identifying information to the extent that information is not otherwise relevant to Plaintiffs' claims or Ogg's defenses.

[13] Ogg raised these objections to all requests except for ROG Nos. 4 and 5—contention interrogatories regarding the role of other entities in the investigation and prosecution of criminal election law within Harris County—and ROG No. 13, seeking information on press releases, public announcements, and external-facing communications.

objection she cites *In re Bexar County Criminal District Attorney's Office*, 224 S.W.3d 182, 187 (Tex. 2007). *See* Exs. 3–4 at 4–10. She has not, however, produced a privilege log. Plaintiffs are therefore unable to meaningfully assess these objections. Moreover, Ogg's blanket assertion of these privileges, without production of a privilege log, arguably constitutes waiver of those privileges. Nevertheless, Plaintiffs ask only that the Court compel Ogg to produce a privilege log.

### a. Texas state law on privilege does not control in this action

In *In re Bexar County*, the Texas Supreme Court held that "all of the [Bexar County Criminal District Attorney's] Office's work in connection with the criminal proceeding against [a person], and relevant to the decision to bring criminal charges against him, constitutes work product," including "conversations made in the course of the criminal investigation, information learned during that investigation, and the DA's decision to drop the case." 224 S.W.3d at 187.

But "[q]uestions of privilege that arise in the course of the adjudication of federal rights" are governed by Federal Rule of Evidence 501, *United States v. Zolin*, 491 U.S. 554, 562 (1989), which states that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless the United States Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise, Fed. R. Evid. 501. Because Plaintiffs bring solely federal claims, federal common law controls. *See Willy v. Admin Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005) (finding "no difficulty" in concluding that federal, not state, common law of attorney-client privilege governed when claims arose under federal law).[14]

---

[14] The application of federal and state privilege law may independently lead to the same outcomes. But that is hardly a given and attempting such analysis in the absence of a privilege log is premature. *Compare In re Bexar County*, 224 S.W.3d at 187 *with Cruz v. Delapaz,* 2003 WL 22415743, at *1–2 (N.D. Tex. Oct. 20, 2003) (documents in a district attorney's file "that are related to litigation and not created as part of routine office procedure, and [which] reveal the attorneys' mental impressions" are work product, but "copies of court documents and court opinions, letters dealing with issues other than the impending litigation . . . copies of lab reports,

### b. Plaintiffs request the Court compel Ogg to produce a privilege log to allow them to assess her claims of work-product and attorney-client privilege

Plaintiffs are entirely unable to assess Ogg's work-product and attorney-client privilege claims absent a privilege log, which Ogg has not produced. "A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (citation omitted). "The attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents" but "must be specifically asserted with respect to particular documents," *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (cleaned up), because "determining the applicability of the privilege is a highly fact-specific inquiry," *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020), cert. denied, 142 S. Ct. 87 (2021) (cleaned up). Similarly, "[a] general allegation of work product protection" is inadequate to carry the resisting party's burden. *Orchestrate HR, Inc. v. Trombetta*, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014).[15]

To that end, the Federal Rules require a party resisting discovery based on privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). This is typically satisfied through production of a privilege log containing a

---

and letters from opposing attorneys or from individuals outside the district attorney's office" are not).

[15] For example, "documents prepared for one who is not a party to the present suit are wholly unprotected" under the work-product doctrine, *La Union Del Pueblo Entero v. Abbott*, 2022 WL 1667687, at *8 (W.D. Tex. May 25, 2022) (citation omitted), as are documents prepared "pursuant to public requirements unrelated to litigation," *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). Moreover, "like the attorney-client privilege, the work-product doctrine protects only the attorney's work product and not the underlying facts." *Adams v. Memorial Hermann*, 973 F.3d 343, 350 (5th Cir. 2020) (cleaned up); *see, e.g.*, *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (the work product doctrine "does not preclude inquiry into the mere fact of an investigation.").

"description of each document [withheld] and its contents [so as to] provide sufficient information to permit courts and other parties to test the merits of the privilege claim." *See Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (cleaned up).

"[A] party may properly raise and preserve an objection" based on privilege "by objecting 'to the extent' that the requests seek privileged materials or work product, so long as the responding party also provides the information required by Rule 26(b)(5)(A)." *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014) (declining to sanction party where it provided a privilege log after making "to the extent" privilege objections). However, it is "well-established law that parties seeking to invoke privileges are not permitted to provide mere blanket objections to discovery requests . . . and fail[] to 'provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.'" *Bess v. Cate*, 422 F. App'x 569, 572 (9th Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. v. Kapsner*, 408 F.3d 1142, 1148 (9th Cir. 2005)).

Accordingly, Ogg's failure to provide Plaintiffs with a privilege log "includ[ing] each requisite element of the privilege or protection asserted" arguably means that her "assertions of work product protection and attorney-client privilege must fail." *See Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*, 2022 WL 1908911, at *14 (S.D. Miss. Apr. 26, 2022) (collecting cases); *Climb Tech, LLC v. Verble*, 2008 WL 11334947, at *3 (W.D. Tex. Nov. 12, 2008) ("Failure to include a document on a privilege log may result in a waiver of the privilege." (citation omitted)); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997) (same); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 524–26 (D.D.C. 2006) (rejecting assertions of privilege because asserting party did not provide a privilege log).

Plaintiffs recognize, however, that while they served their discovery requests on Ogg more than eight months ago, it has been four months since this Court, and two months since the Fifth

Circuit, denied her respective motions to stay discovery. Accordingly, Plaintiffs do not ask this Court to rule that Ogg has waived her work-product or attorney-client privilege objections, but instead to compel Ogg to produce, by a reasonable date, a privilege log that will allow Plaintiffs to meaningfully assess her invocations of those privileges as contemplated by Rule 26(b)(5)(A).

> ### v. Objection No. 7: Plaintiffs are entitled to seek answers to contention interrogatories involving the application of law to fact

Finally, Ogg raises specific objection No. 7—that an interrogatory "seeks a legal conclusion that is not within the confines of Ogg's role and authority as the Harris County District Attorney"—to Plaintiffs' ROG Nos. 4 and 5. These interrogatories ask Ogg, if she contends "that the [Texas Attorney General or a local official other than her] is responsible for or engages in the investigation or prosecution of violations or suspected violations of prosecutions within Harris County," to state the facts and identify all documents supporting her contention. Ex. 1 at 7–8.

Ogg's objections to these interrogatories should be overruled because both are permissible contention interrogatories that "ask[] for an opinion or contention that relates to fact or the application of law to fact." *See* Fed. R. Civ. P. 33(a)(2). In this case, Ogg has asserted that despite being the Harris County District Attorney, she cannot be held responsible for enforcement of SB 1's criminal provisions within Harris County. These requests seek her contentions relating to who she believes is responsible for that enforcement, which "can be most useful in narrowing and sharpening the issues." *See* Fed. R. Civ. P. 33 advisory committee's notes (1970); *Alexander v. Hartford Life & Acc. Ins. Co.*, 2008 WL 906786, at *4 (N.D. Tex. Apr. 3, 2008) ("It is widely accepted that 'contention interrogatories,' which ask a party to state the facts upon which it bases a claim or defense, are a permissible form of written discovery.").

### C. Ogg's Later-Raised Objections are Waived, Inapplicable, or Narrowly Construed

Ogg's counsel has verbally raised the Texas Public Information Act ("TPIA") and the (presumably federal) investigative privilege as bases for withholding information relating to past and ongoing investigations. Ogg did not timely include these objections in her written discovery responses of May 12, 2022, and they are therefore waived. *See Gomez v. Ford Motor Co.*, 2016 WL 11431535, at *1 (W.D. Tex. Oct. 31, 2016).

Even if not waived, the TPIA is inapplicable, and the investigative privilege is limited. The TPIA explicitly states that "[e]xceptions from disclosure under this chapter do not create new privileges from discovery." Tex. Gov't Code § 552.005; *see Piatt v. City of Austin*, 2008 WL 11334173, at *4 (W.D. Tex. Sept. 29, 2008) ("By its own terms, the Texas Public Information Act has no effect on civil discovery"). And the federal investigative privilege extends only to "government documents [or information] relating to an ongoing criminal investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 n.2 (5th Cir. 2006). It does not protect disclosure of information relating to past investigations. *See id.* at 571.

### D. At Least Some Responsive Information Exists

Ogg has produced nothing, made no indication that any production is forthcoming, provided no answers, even partial, to Plaintiffs' interrogatories, and has not produced a privilege log. This is proper under the Federal Rules only if there is *zero* information—privileged or not— within Ogg's knowledge, possession, custody, or control. That cannot be true.

First, Ogg's counsel verbally confirmed the existence of certain investigations and pending referrals during the parties' two meet and confers, although Ogg has not provided that information in interrogatory answer format or through the production of responsive documents. *See supra* at 7 & Ex. 10.

Second, in a recent interview, Texas Secretary of State John Scott stated that if his office "find[s] something suspicious that may rise to [the] level [of voter fraud], we immediately pass it off to the local district attorney or the attorney general's office," and that "[i]n the wake of" *State v. Stephens*, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021), *reh'g denied*, 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022), his office's "working model is to make sure we always refer it to the local DA." Michael Hardy, *Texas Election Chief Speak Out on Conspiracy "Nuts," Death Threats, and President Biden's Legitimacy*, Texas Monthly, (Oct. 10, 2022), https://www.texasmonthly.com/news-politics/john-scott-texas-secretary-state-election-fraud/; *see* Ex. 1 at 8, ROG No. 8, and Ex. 2 at 10, RFP No. 5 (requesting communications between Ogg and the Texas Secretary of State relating to the investigation or prosecution of criminal election laws).

Third, last month Ogg stated to Houston Public Media that "her office had received a referral from the Texas Secretary of State's Office" about "potential criminal conduct" and that "[w]hen we get credible complaints of election irregularities, we are statutorily required to investigate." Adam Zuvanich, *Harris County DA Kim Ogg launches 2022 election investigation, asks Texas Rangers to assist*, Houston Public Media, (Nov. 16, 2022), https://www.houstonpublicmedia.org/articles/news/politics/elections/2022/11/16/437618/harris-county-da-kim-ogg-launches-elections-investigation-asks-texas-rangers-to-assist/; *see* Ex. 1 at 9, ROG No. 13, and Ex. 2 at 11, RFP No. 12 (requesting Ogg identify and produce documentation of press releases, public announcements or other communications made by her office to persons, entities, or media external to her office relating to the enforcement of criminal election law).

Accordingly, it is not conceivable that there is zero responsive information within Ogg's knowledge, possession, custody, or control.

## IV. CONCLUSION AND RELIEF SOUGHT

Ogg's undifferentiated and repeated objections to Plaintiffs' discovery requests are so generalized that "it is impossible to know whether information has been withheld and, if so, why," and thus fail to meet the baseline requirement that "[o]bjections to discovery must be made with specificity." *Heller*, 303 F.R.D at 483 (cleaned up). Plaintiffs therefore respectfully request the Court (1) compel Ogg to fully answer Plaintiffs' interrogatories and produce documents responsive to Plaintiffs' requests for production to the extent such information is not otherwise protected by the work-product or attorney-client privilege; (2) compel Ogg to produce a privilege log sufficient to allow them to assess any claims of privilege in the latter contexts; and (3) order any other relief the Court deems warranted.

Dated: December 14, 2022.

Respectfully submitted,

By: */s/ Zachary Dolling*

Zachary Dolling
Texas Bar No. 24105809
Mimi M.D. Marziani
Texas Bar No. 24091906
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar

Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Samantha Osaki*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavizky@aclu.org
slakin@aclu.org
sosaki@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
LISA A. SNEAD
Texas State Bar No. 24062204

PETER HOFER
Texas State Bar No. 09777275
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org
lsnead@drtx.org
phofer@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Urja Mittal*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
umittal@jenner.com

Sophia Cai*
**JENNER & BLOCK LLP**
455 Market St., #2100
San Francisco, CA 94105
(628) 267-6859
scai@jenner.com

***COUNSEL FOR PLAINTIFFS OCA-
GREATER HOUSTON, ET AL.***

*admitted *pro hac vice*

## **CERTIFICATE OF CONFERENCE**

I certify that on December 12, 2022, I attempted to confer via e-mail with Eric Nichols and Karson Thompson, counsel for Defendant Ogg, as to Defendant Ogg's position on this motion. They did not respond to this e-mail and have been marked as opposed.

*/s/ Zachary Dolling*

## **CERTIFICATE OF SERVICE**

I certify that on December 14, 2022, a true and correct copy of the foregoing was served on all counsel of record by filing through the Electronic Case File System of the Western District of Texas.

*/s/ Zachary Dolling*