IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| *Plaintiffs*, | § § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT DISTRICT ATTORNEY KIM OGG'S
## RESPONSE TO MOTION TO COMPEL

Defendant District Attorney Kim Ogg, in her official capacity as Harris County District Attorney ("District Attorney Ogg"), files this response to the OCA Plaintiffs' Opposed Motion to Compel Defendant Ogg's Answers to Interrogatories and Production of Documents (Dkt. 491).

## BACKGROUND

As the Court knows, these consolidated lawsuits concern the constitutionality of various provisions of the Texas Election Code as added or amended by the Election Protection and Integrity Act of 2021 ("S.B. 1"). District Attorney Ogg was not a defendant from the outset of these lawsuits. She was added in midstream by various plaintiff groups, not because of anything she is alleged to have done, but solely because of who she is: the Harris County District Attorney. The plaintiffs who have brought her into the litigation take the position that District Attorney Ogg is a proper state-official defendant simply because she is a state prosecutor, regardless of whether she has taken, or will ever take, any action to enforce any criminal law created or modified by S.B. 1.

District Attorney Ogg rejects that theory, and as the Court knows she has raised sovereign immunity and jurisdictional objections to the claims made against her.  The Court has granted those objections in part (as to civil provisions of S.B. 1), and District Attorney Ogg's appeal with respect to plaintiffs' claim against her with respect to criminal provisions of S.B. 1 remains pending in the Fifth Circuit.  In the meantime, the OCA Plaintiffs continue to press District Attorney Ogg for discovery on their claims.

Even if the sovereign immunity were not omnipresent as the elephant in the room, the requests made by the OCA Plaintiffs at issue are misdirected, not reasonably calculated to lead to discovery of relevant evidence.  They are demonstrably not proportional to the needs of the litigation or in relation to the burdens they would impose on the Harris County District Attorney's Office (the "HCDAO") to collect, review, and identify privilege attaching to specific pieces of information, without the demonstrated prospect of producing anything that actually relates to or supports any claim being advanced by the plaintiffs with respect to the criminal provisions added or amended by S.B. 1.  As written, these discovery requests seek an expansive collection of case files from the HCDAO, and other records (such as policies regarding prosecution or investigation of "criminal election law") that do not exist.  District Attorney Ogg thus responds to the motion to compel not only by raising issues of sovereign immunity and standing, but also by making a record, through the declaration of an authorized HCDAO representative,[1] of the misdirected and burdensome nature of the requests.

Among other things, the requests as written call for the production of:

---

[1]The declaration of George Jordan is attached as **Exhibit D** to this response.

- All documents "relating to investigations, criminal proceedings, or prosecutions . . . predicated at least in part on a violation or suspected violation of criminal election law" since 2016 (RFP No. 1).

- All communications regarding the same (RFP No. 1).

- All internal office policies regarding investigation or prosecution of "criminal election law" since 2016 (RFP No. 3).

- All communications regarding those same policies (RFP No. 3).

- All communications between the Harris County District Attorney's Office and

  o any "state officials," including but not limited to the Texas Attorney General's Office, the Texas Secretary of State's Office;

  o any "local officials";

  o the entire "Texas Legislature"; and

  o any "members of the public";

  concerning any investigations or prosecutions of violations of "criminal election laws" since 2016 (RFP Nos. 4, 5, 6, 7, 8, 9).

**Exhibit A** (District Attorney Ogg's Obj. & Resp. to RFP).  In addition to the document requests, written interrogatories seek to further burden District Attorney Ogg by having her itemize her office's work related to "criminal election law" over the last six years.  **Exhibit B** (District Attorney Ogg's Obj. & Resp. to Interrogatories).  Through meet-and-confer discussions, the OCA Plaintiffs agreed to "narrow" the phrase "criminal election law" to refer only to "criminal provisions that regulate conduct in connection with voting," regardless of whether those provisions appear in the Texas Election Code, Texas Penal Code, or elsewhere.  As reflected in the motion to

compel, the OCA Plaintiffs have not agreed to any other limitations or modifications to their requests.

## ARGUMENT

The Court should deny the motion to compel. First, and most importantly, District Attorney Ogg is protected from suit, and from discovery in this suit, by the Eleventh Amendment and the doctrine of sovereign immunity. Second, even if District Attorney Ogg were not immune from discovery, her objections to responding to the sweeping, overbroad, and ultimately unavailing requests made by the OCA Plaintiffs are valid.

### I.      District Attorney Ogg Enjoys Immunity From the OCA Plaintiffs' Discovery Requests

"[S]overeign immunity is an immunity from *suit* (including discovery), not just liability. Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go." *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022) (citation omitted). As this Court knows, District Attorney Ogg maintains that she is entitled to sovereign immunity in this case, and the applicability of that defense in this case is currently being considered on interlocutory appeal in the Fifth Circuit.

### A.      Sovereign immunity protects District Attorney Ogg from discovery.

"Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Tex. Democratic Party v. Abbott*, 960 F.3d 389, 400 (5th Cir. 2020) ("*Tex. Democratic Party I*"). District Attorney Ogg, sued in her official capacity, is a state official entitled to the protections of sovereign immunity. *Esteves v. Brock*, 106 F.3d 674, 677 & n.8 (5th Cir. 1997) ("when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state"). The Texas Constitution creates her office. TEX. CONST. art. V, sec. 21. And the

Texas Legislature defines her jurisdiction to represent the State of Texas in criminal matters.  TEX. GOV'T CODE § 43.180(b), (c).

The legal fiction of *Ex parte Young* provides an "exception to Eleventh Amendment sovereign immunity" in the subset of cases to which it applies.  *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Tex. Democratic Party I*, 961 F.3d at 400.  The exception permits federal courts to enjoin prospective unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, ***and*** who threaten and are about to commence proceedings, either of a civil or criminal nature."  *Ex parte Young*, 209 U.S. 123, 155-56 (1908) (emphasis added).  Under the plain language of *Ex parte Young*, having a public office that carries a duty to enforce laws of the state is not enough.  A plaintiff must also show that the official clothed with that duty has "threaten[ed] and [is] about to commence proceedings."

In order to be a proper *Ex parte Young* defendant, a state official "must have some connection with the enforcement of" the law being challenged.  *Id.* at 157.  Without the requisite connection, the state official is merely a stand-in for the otherwise immune state itself.  *Id.*  By its own accounts, the Fifth Circuit has struggled to define the exact contours of the "connection" required by *Ex parte Young*.  *See, e.g.*, *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 & n.5 (5th Cir. 2022); *Tex. Democratic Party I*, 978 F.3d at 179.  "But some guideposts have emerged."  *Scott*, 28 F.4th at 672.  Those guideposts are:

1. **A specific duty**.  The state official must have "more than the general duty to see that the laws of the state are implemented."  *Id.*  Instead, the state official must have a "particular duty to enforce the statute in question."  *Id.*

2. **Demonstrated willingness**.  The state official must have "a demonstrated willingness to exercise that duty."  *Id.*

3. **Enforcement**.  The state official must, through her conduct, "compel or constrain [persons] to obey the challenged law."  *Id.*

Plaintiffs must pass *each* of these guideposts to maintain a proper claim to the *Ex parte Young* exception.  *See id.*  District Attorney Ogg is entitled to dismissal of the claims against her because the OCA Plaintiffs have failed to pass *any* of these guideposts, let alone all of them.

1.    **District Attorney Ogg does not have a specific duty to enforce criminal offenses created or modified by S.B. 1.**

District Attorney Ogg has the undisputed *authority* to enforce criminal laws in Harris County, including those criminal provisions of the Texas Election Code modified or created by S.B. 1.  But as a prosecutor she has no *duty* to bring prosecutions under these criminal provisions. Instead, her duty under the Code of Criminal Procedure is as follows:

It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.

TEX. CODE CRIM. P. art. 2.01.  District Attorney Ogg has complete discretion whether to ever seek criminal charges against anyone whom she has probable cause to believe committed one of the challenged offenses.  *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004); *see also State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2022 WL 4493899, at *4 (Tex. Crim. App. Sept. 28, 2022) (Walker, J., concurring in denial of rehearing).

2.    **Plaintiffs cannot allege that District Attorney Ogg has threatened or demonstrated a willingness to enforce S.B. 1's criminal provisions.**

Even if District Attorney Ogg could be shown to have a *duty* to enforce the challenged criminal provisions of S.B. 1, Plaintiffs (as the party bearing the burden) have not alleged, much less shown, that she has a demonstrated willingness to enforce those provisions.  To sue under *Ex parte Young*, the plaintiffs must establish that District Attorney Ogg has "taken some step to enforce" the criminal provisions being challenged.  *Tex. Democratic Party I*, 961 F.3d at 401; *Scott*, 28 F.4th at 672.  While this Court has not defined "how big a step" must be taken in every

6

case, "the bare minimum appears to be some scintilla of affirmative action by the state official." *Tex. Democratic Party I*, 961 F.3d at 401 (internal quotation marks omitted).

Plaintiffs did not and cannot meet even this "bare minimum" standard, because there is no allegation in any complaint of any affirmative action taken by District Attorney Ogg with respect to any criminal provision created or modified by S.B. 1. No one alleges District Attorney Ogg had any involvement in the Texas Legislature's drafting or passing of S.B. 1. No one alleges District Attorney Ogg has threatened to prosecute them, or anyone else, for violating any criminal provisions created or modified by S.B. 1. No one alleges District Attorney Ogg has actually charged them, or anyone else, with committing an offense created or modified by S.B. 1. District Attorney Ogg was brought into the litigation simply and solely because of who she is—a state official with prosecutorial authority—not because of anything she has done. By suing District Attorney Ogg on these grounds, the plaintiffs are "merely making [her] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

**3.      Plaintiffs have not satisfied their burden to allege much less establish that District Attorney Ogg has compelled or constrained anyone by enforcing or threatening to enforce S.B. 1's criminal provisions.**

Regardless of the duty and willingness requirements discussed above, the *Ex parte Young* exception does not apply to District Attorney Ogg because the plaintiffs have never made—and disclaim any requirement to make—the showing of "enforcement" that District Attorney Ogg respectfully contends is required by this Court's case law. *See City of Austin*, 943 F.3d at 1000. Enforcement involves "compulsion or constraint." *Id.* "If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Scott*, 28 F.4th at 672.

Merely showing that a state official has the authority to enforce a statute is insufficient to show the necessary level of enforcement. *City of Austin*, 943 F.3d at 1001. Instead, the plaintiffs must "point[] to specific enforcement actions of the respective defendant state official[] warranting the application of the *Young* exception." *Id.* Examples of enforcement deemed sufficient by this Court include:

- denying claims for payment through a state medical malpractice compensation fund, based on a statute excluding abortion-related injuries, *K.P. v. LeBlanc*, 627 F.3d 115, 124-25 (5th Cir. 2010);

- "pervasive enforcement" of a worker's compensation scheme through setting reimbursement rates, *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017); and

- sending letters "intimating that formal enforcement was on the horizon" based on the Texas Attorney General's conclusion that a party's conduct violated the challenged statute, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015).

The plaintiffs have alleged nothing remotely similar to the enforcement shown in *K.P.*, *Air Evac EMS*, or *NiGen Biotech*. There is no allegation that District Attorney Ogg has taken any action or made any statement even suggesting that she may enforce any of the challenged statutes against the plaintiffs or anyone else. Accordingly, the plaintiffs who have brought her into this litigation have not met their burden to show that District Attorney Ogg is sufficiently connected to the enforcement of the challenged statutes to be amenable to suit under *Ex parte Young*.

**4.    The OCA Plaintiffs cannot use discovery in hopes of satisfying their pleading obligations.**

The OCA Plaintiffs' "sue first, and ask questions later" argument that they should be entitled to take discovery to meet their pleading burden under *Ex parte Young* fails as a matter of law and good-faith-pleading requirements. Immunity defenses are resolved at the earliest stages of litigation, based on the pleadings "without the benefit of pre-dismissal discovery." *Carswell v.*

*Camp*, 54 F.4th 307, 312 (5th Cir. 2022); *In re Paxton*, 53 F.4th at 307-08; *Serafine v. Abbott*, No. 1:20-CV-1249-RP, 2021 WL 3616102, at *2 (W.D. Tex. May 12, 2021) (staying all discovery pending resolution of motion to dismiss on sovereign immunity grounds); *Serafine v. LaVoie*, No. 1:20-CV-1249-RP-SH, 2022 WL 229364, at *1 (W.D. Tex. Jan. 26, 2022) (recommending dismissal based on sovereign immunity); **Exhibit C**, Order Granting Motion to Quash (Doc. 638), *Russell v. Harris County*, 4:19-cv-00226 (S.D. Tex. Dec. 28, 2022) (quashing subpoena on Harris County District Attorney's Office on sovereign immunity grounds).  This rigid process ensures that state officials are haled into court on pre-enforcement challenges only where plaintiffs have a legitimate basis for doing so.

For obvious reasons, sovereign immunity does not permit a "sue first, ask questions later" approach.  If the OCA Plaintiffs or other plaintiffs who chose to bring District Attorney Ogg into the litigation had a legitimate basis—on pre-suit inquiry—to allege that District Attorney Ogg had threatened to enforce, or had actually enforced, the criminal provisions of the Election Code added or amended through S.B. 1, the plaintiffs undoubtedly would have made those allegations.  Actual criminal prosecutions are by definition public record.  The HCDAO is an agency that is subject to the Texas Public Information Act.  Plaintiffs can endeavor to make allegations from newspaper accounts as well from as their own alleged personal experience and—to the extent they are advocacy groups—those of their members.  Plaintiffs did endeavor to make such allegations of actual or threatened enforcement with respect to other defendants they sued, but not with respect to District Attorney Ogg.  As the declaration attached to this response demonstrates, any efforts to engage in real pre-suit inquiry about actual or threatened enforcement of provisions added or amended by S.B. 1 at the HCDAO would have proved fruitless, but plaintiffs did <u>none</u>.  As indicated in the briefing on the sovereign immunity issues on the motion to dismiss, they did not

think they had to, because they contend that District Attorney Ogg's status as an elected prosecutor for Harris County is enough.  Their post hac efforts come not only too late but also in the form of requests that are unavailing while imposing yet more burdens on District Attorney Ogg through litigation than they already have.

**B.      The OCA Plaintiffs cannot use meritless statutory claims to evade sovereign immunity.**

Perhaps recognizing the challenges of overcoming District Attorney Ogg's sovereign immunity defense, the OCA Plaintiffs also nominally and in wholly conclusory fashion asserted claims against her for violations of federal antidiscrimination statutes such as the Voting Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.  Each of those statutes contains at least an arguable waiver of sovereign immunity.  *E.g.*, *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020) (Eleventh Amendment sovereign immunity barred claims against Governor Abbott except for claims brought under Voting Rights Act).

With respect to District Attorney Ogg, each of these claims is a non-substantive, baseless, and transparent attempt to evade sovereign immunity and the *Ex parte Young* analysis above. Regardless of the sovereign immunity waiver under these statutes, plaintiffs have still wholly failed to allege any conduct by District Attorney Ogg that, if true, would constitute a violation of any of these statutes.  Under the plaintiffs' view, every district attorney in the State of Texas violates these federal statutes merely by existing in a world in which the Texas Legislature passes bills that are subject to constitutional challenges.  The violations occur the second the laws hit the books, and no action or threatened action by the prosecutor is required.  This view proves too much.  And it is not the law.  Plaintiffs bear the burden of making actionable claims under statutes.

Even if Plaintiffs had set out an actionable claim for violations of any federal statute containing a waiver of sovereign immunity—which they have not done—those plaintiffs would

still be required to satisfy the traditional requirements for standing in order to maintain a claim against District Attorney Ogg. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). One of those requirements is the existence of an "injury in fact," meaning a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). Another is the establishment of a "causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable to the challenged action of the defendant." *Id.* (cleaned up). These inquiries are specific to each alleged claim, injury, and defendant, as "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). The plaintiffs did not and cannot make either showing here.

**1.      There is no injury in fact because no plaintiff intends to commit the challenged criminal offenses or faces a credible threat of prosecution.**

The OCA Plaintiffs have not alleged an injury in fact with respect to the challenged criminal offenses. There is no allegation District Attorney Ogg has prosecuted (or threatened to prosecute) any plaintiff or any member of a plaintiff group for committing one of S.B. 1's new or modified criminal offenses. These lawsuits are admittedly pre-enforcement.

To establish an injury in fact in a pre-enforcement context, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The OCA Plaintiffs' allegations come up short on these requirements.

First, these plaintiffs fail to allege a "serious intent" to commit the criminal offenses they seek to challenge. *Barilla v. City of Hous., Tex.*, 13 F.4th 427, 432 (5th Cir. 2021). No plaintiff alleges he or she is an election officer who intends to refuse to accept an election watcher as

required by law.  TEX. ELEC. CODE § 33.051(g).  No plaintiff alleges he or she serves in an official capacity at a place where election watchers are authorized and intends to knowingly prevent a watcher from observing an activity or procedure as authorized by law.  TEX. ELEC. CODE § 33.061(a).  No plaintiff alleges he or she intends to knowingly, unlawfully possess another person's ballot or voting envelope.  TEX. ELEC. CODE § 86.006(f).  No plaintiff alleges she intends to assist voters with voting by mail but also intends to knowingly fail to sign the required documentation.  TEX. ELEC. CODE § 86.010(f).  No plaintiff alleges he or she intends to compensate persons for assisting voters, or solicit or receive compensation himself.  TEX. ELEC. CODE § 86.0105(a).  No plaintiff alleges it is an employer who intends to deny an employee the right to be absent from work for the purpose of voting.  TEX. ELEC. CODE § 276.004(a).  No plaintiff alleges he or she intends to engage in "vote harvesting" for compensation.  TEX. ELEC. CODE § 276.015. No plaintiff alleges he or she is a public official or election official who intends to unlawfully solicit or distribute applications to vote by mail.  TEX. ELEC. CODE § 276.016.  No plaintiff alleges he or she is an early voting clerk or election official who intends to knowingly provide an early voting ballot by mail to a person he knows did not apply for one.  TEX. ELEC. CODE § 276.017. And no plaintiff alleges an intent to perjure himself or herself.  TEX. ELEC. CODE § 276.018.

No discovery from District Attorney Ogg would be necessary or even relevant to the plaintiffs meeting this burden of showing the intent aspect of standing.  Such intent (or lack thereof) is within their own knowledge, not within the HCDAO's files.

Second, even if the OCA Plaintiffs had alleged a "serious intent" to commit these offenses, they have not alleged any credible threat of prosecution by District Attorney Ogg.  There is no factual allegation supporting any desire by District Attorney Ogg to enforce these challenged statutes.  To the contrary, District Attorney Ogg has told the OCA Plaintiffs she *does not intend to*

*enforce them* while their constitutionality is litigated.  As this Court knows, District Attorney Ogg

even offered to stipulate to non-enforcement of the challenged provisions of S.B.1 as part of the

record in this case.  That stipulation was not acceptable to the plaintiffs.  But that offer stands as

another fact that shows that any wholly conclusory claims that they credibly fear prosecution by

District Attorney Ogg are just that.  *Cf. Barilla*, 13 F.4th at 433 (credible threat presumed where

"the City did not disclaim its intent to enforce the Busking Ordinances to the district court, in its

appellate briefing, or during oral argument").

Once again, the OCA Plaintiffs' "sue first, find evidence later" approach flips the law on

its head.  Standing doctrine does not permit a plaintiff to defer meeting its burden to plead a

credible threat of prosecution until after the plaintiff has conducted discovery.  *Ward v. Santa Fe

Indep. Sch. Dist.*, 393 F.3d 599, 607 (5th Cir. 2004); *Whalen v. Carter*, 21 F.3d 1109, 1994 WL

171685, at *2 (5th Cir.) (unpublished).

## 2.   There is no causal connection because District Attorney Ogg is not alleged to have done anything.

Second, the OCA Plaintiffs have failed to allege the necessary causal connection between

their alleged injuries and any action taken by District Attorney Ogg.  The OCA Plaintiffs have not

identified any specific action taken by District Attorney Ogg as a cause of their injury.  To the

contrary, the complaint relies on broad "group pleading" tactics and generally blames the actions

of *different state officials*, such as members of the Texas Legislature who passed S.B. 1, for causing

the alleged harm at the center of this lawsuit.

Standing doctrine requires that injuries be "traced to the challenged action of the

defendant."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976).  It is "a means of

identifying proper defendants."  *Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012)

(quoting 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.5, at 385

(3d ed. 2008)).  And it is a narrow inquiry, specific to individual claims by given plaintiffs against given defendants.  *Lewis*, 518 U.S. at 358 n.6; *Blum*, 457 U.S. at 999.   Given the total absence of any factual allegations against District Attorney Ogg, she is not a proper defendant here.[2]

## II.   Even Without These Sovereign Immunity and Standing Issues, District Attorney Ogg Has Valid and Sustainable Objections to the Discovery at Issue

Even if the sovereign immunity and standing issues were not insurmountable roadblocks to the type of discovery sought by the OCA Plaintiffs—which they are—the discovery would still be required to be quashed.

### A.   The absence of a meaningful relationship between the requests and the claims.

The OCA Plaintiffs have brought challenges to (among other things) portions of the Election Code that contain criminal offenses that were added or amended through S.B.1.  For obvious reasons, the OCA Plaintiffs did not, and do not now, limit their discovery requests to inquiries about investigations or prosecutions of the provisions of S.B.1 over which they sue. Instead, they ask for all records over a time period in excess of six years about "criminal election law," or (if they abide by their self-imposed limitation during meet-and-confer) "criminal provisions that regulate conduct in connection with voting."[3]  The OCA Plaintiffs do not, and have refused, to limit their requests for information about the actual criminal provisions about which they sue.  Even as "narrowed," the OCA Plaintiffs expressly seek documents and communications that concern criminal laws *not created or modified by S.B. 1 in any way*, so long as those criminal laws relate to "conduct in connection with voting."  These requests are staggering in their scope.

---

[2]Again, it is no response to say, "I need discovery to prove standing."  Standing, as a threshold jurisdictional issue, comes first.  *Ward*, 393 F.3d at 607.

[3]In their motion to compel, the OCA Plaintiffs argue they are entitled to prosecutorial files that "involve offenses under other criminal laws," provided at least one actual or potential charge relates to "voting."  *See* Mot. at 17.

The OCA Plaintiffs do not even attempt to articulate for the Court how prosecutorial files concerning statutes not at issue in this litigation could possibly make any fact of consequence in this litigation more or less probable. FED. R. EVID. 401. [4]   Whether any particular provision of S.B. 1 is constitutional has nothing to do with what District Attorney Ogg's office has done in the past, particularly when her office was investigating or prosecuting violations of criminal statutes unaffected by S.B. 1.

In addition to the missing S.B. 1 limitation, the OCA Plaintiffs' requests are also overbroad because they seek production of "all documents" in HCDAO files, or "all communications" on its servers. Even if an investigation or prosecution concerning "voting" exists, and even if that investigation or prosecution concerned a criminal law affected by S.B. 1, that would never make the entire investigatory or prosecutorial file relevant or discoverable.

All of the OCA Plaintiffs' requests are also vastly overbroad because they are not limited to any conceivably relevant time period. On its face, S.B. 1 went into effect in the fall of 2021. But the OCA Plaintiffs seek documents and communications going back six years to the beginning of 2016. The OCA Plaintiffs offer no explanation as to how anything District Attorney Ogg's office was doing with respect to "criminal election law" matters years before S.B. 1 even existed could possibly help the Court decide whether S.B. 1 is constitutional.

**B.      The burden associated with the requests is substantial and makes the requests non-proportional.**

The OCA Plaintiffs' approach—even without the overhanging issues of sovereign immunity and standing—thus constitutes a massive and unjustifiable fishing expedition into a

---

[4] The OCA Plaintiffs suggest this Court has "already ruled" that all of their discovery requests are relevant, citing a text order denying District Attorney Ogg's motion to stay. District Attorney Ogg disagrees. Prior to the filing of the OCA Plaintiffs' motion, this Court was never presented with any request to rule on District Attorney Ogg's specific discovery objections.

prosecutor's files.  This Court "must limit the extent of discovery" if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1); *e.g.*, *Maes v. Lowe's Home Centers LLC*, No. EP-17-CV-00107-FM, 2018 WL 3603113, at *5-6 (W.D. Tex. Feb. 9, 2018) (citing FED. R. CIV. P. 26(b)(2)).  Here, the burden vastly outweighs the benefit because the information sought is irrelevant and the burdens of obtaining it significant.

Plaintiffs argue that because they have challenged the constitutionality of a 2021 Texas law that regulates voting, they are entitled to take from any Texas prosecutor's office *all of that prosecutor's files* concerning cases involving "voting" in more than the last *six years*, plus all communications related to those files.  This would hypothetically include files related to ongoing criminal investigations or pending criminal cases; files related to investigations that did not result in any charges being brought; and files related to prosecutions that did not result in any conviction or deferred adjudication.  As the attached declaration of George Jordan demonstrates, such efforts to search through case files would impose an estimated 236 person-hours on the Public Corruption Division that has responsibility, among many others, for matters referred to the HCDAO related to potential violations of Texas election laws.  **Exhibit D** ¶ 7.  These hundreds of hours would ultimately prove to be unavailing, as there are no files in existence at the HCDAO that relate to any of the provisions added or amended by S.B.1.  *Id*. ¶ 8.  Furthermore, the OCA Plaintiffs' requests for "policies" and "communications related to policies" specific to "criminal election law" are unavailing, as no such specific policies exist.  *Id*. ¶ 4.

And what is the purported justification for this massive intrusion into years and years of historical files and communications?  What information could be contained in those files that would inform the Court's legal analysis of the constitutionality of S.B. 1?  The OCA Plaintiffs do not say.  They make no effort to explain how a file from, for example, a prosecution of a "criminal

election law" case will materially advance this litigation.  Nor how files reflecting investigations that *did not result in prosecution* will somehow influence their theories of why one or more provisions of S.B. 1 that added or amended a criminal provision of the Election Code violate the Constitution.  District Attorney Ogg respectfully requests that the Court end this effort to impose burdens on her office that have nothing to do with the plaintiffs' claims and that only serve to divert resources that are much better spent on law enforcement matters that are being handled through that office.

Even if the OCA Plaintiffs' requests *were* limited in scope to the statutes amended or added by S.B. 1, the requests would still seek irrelevant information.  The OCA Plaintiffs' legal challenges to the constitutionality of S.B. 1 simply do not depend on anything District Attorney Ogg's office has done.  The constitutionality of these statutes will not depend upon what was written in any email between state officials or between a state official and a member of the public.

Despite its 30-page length, the OCA Plaintiffs' motion does not present the Court with answers to the basic questions that should inform a motion to compel: What, specifically, do the plaintiffs want produced, and why does that information matter in the context of the claims and defenses being asserted?  Those questions go unanswered because there is no good answer to them.  This discovery is being sought not because it matters to the development of the OCA Plaintiffs' claims but because District Attorney Ogg has added midstream as a defendant and has had the fortitude to raise sovereign immunity and standing defenses.

## C.     The requests seek highly confidential and protected prosecutorial files.

The breadth of the OCA Plaintiffs' requests means that those requests potentially implicate various forms of highly sensitive, confidential, and protected information that may be found within prosecutors' files.  For example, by producing a file in a particular case, a prosecutor may disclose

the identity of a subject in an ongoing criminal investigation; the identifies of witnesses not accused of any criminal wrongdoing; the identities of confidential informants or other protected sources; or a person's criminal history and other background information.  This information, as compiled within a prosecutor's file, is not presumptively public and raises significant privacy concerns for individuals not in a position to assert their own interests in this litigation.  *Cf. U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762-71 (1989) (addressing the privacy concerns raised by potential disclosure of FBI "rap sheets").  Thus, the requests in general, and specific to the HCDAO, implicate privilege and materials that are confidential by law.  **Exhibit D ¶** 5.

## D.      Privilege questions are premature at this stage.

District Attorney Ogg agrees with the OCA Plaintiffs that it would be premature for this Court to overrule any specific privilege assertions in the absence of a privilege log.  If District Attorney Ogg were ordered to produce responsive documents or communications, the effort to gather, prepare, and produce those materials would require a page-by-page review of prosecutorial files and communications for privilege, which would add to the burdens.  For example, files would need to be carefully examined to redact a prosecutor's work product notes from a file, or to exclude a privileged internal communication about a case.  If and when such a review were to take place— which, given the current phrasing of the requests, would represent an non-proportional exercise— it would only lead to an additional burdensome exercise of generating item-by-item privilege logs.

## CONCLUSION

For the foregoing reasons, Defendant District Attorney Kim Ogg respectfully requests the Court deny the OCA Plaintiffs' Opposed Motion to Compel Defendant Ogg's Answers to Interrogatories and Production of Documents.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
   Eric J.R. Nichols
   State Bar No. 14994900
   eric.nichols@butlersnow.com
   1400 Lavaca Street, Suite 1000
   Austin, Texas 78701
   Tel: (737) 802-1800
   Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT
DISTRICT ATTORNEY KIM OGG,
IN HER OFFICIAL CAPACITY AS
HARRIS COUNTY DISTRICT
ATTORNEY**

## CERTIFICATE OF SERVICE

    I hereby certify that on January 6, 2023, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

                                                    */s/ Eric J.R. Nichols*
                                                    Eric J.R. Nichols