IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| V. | § § | |
| GREG ABBOTT, *et al.*, | § § | Case No. 5:21-cv-00844-XR [Lead Case] |
| *Defendants*. | § § | |
| HARRIS COUNTY REPUBLICAN PARTY, *et al.*, | § § § § | |
| *Intervenor-Defendants*. | | |

**OCA PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT OGG'S ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

It has now been almost six months since this Court denied Defendant Harris County District Attorney Kim Ogg's motion to stay discovery following the Court's denial of her motion to dismiss OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, and Workers Defense Fund's claims against her. In the intervening time, Ogg has continued to obfuscate, delay, and set forth legal defenses this Court has already rejected as justifying her refusal to meet her obligations under the Federal Rules of Civil Procedure. Despite this, Plaintiffs have at all stages of this dispute accepted at face value Ogg's and Ogg's counsel's purported need for various extensions of time and other accommodations and sought to in good faith entertain those requests. However, as made clear in Ogg's response in opposition to Plaintiffs' motion to compel—in which she attempts to relitigate this Court's rejection of the same arguments raised in her motion to dismiss, and generally fails to address Plaintiffs' arguments in favor of their motion to compel—it is apparent Ogg will not cooperate with discovery without the Court's intervention.

1

### I. The Majority of Ogg's Response is an Attempt to Relitigate Issues Already Decided

The majority of Ogg's response constitutes an attempt to relitigate her contentions that sovereign immunity protects her from discovery and that Plaintiffs have failed to plead Article III standing, both of which this Court squarely rejected, nearly six months ago, in denying her motion to dismiss. Dkt. 500 at 4–14; Dkt. 450. Ogg re-raised the same sovereign immunity arguments in her motion to stay in this Court, Dkt. 452, which this Court again rejected, Text Order of August 15, 2022, 5:21-cv-844 (W.D. Tex.), and in her motion to stay in the Fifth Circuit, which that court rejected, *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022). She repeats the same arguments here and the Court should again reject them.

The above disposes fully of Ogg's arguments on this front. Nevertheless, Plaintiffs will respond to Ogg's accusations that Plaintiffs have failed to meet "good-faith-pleading requirements" by purportedly seeking the "benefit of pre-dismissal discovery" to "meet their pleading burden under *Ex parte Young*," Dkt. 500 at 8–9 (citation omitted), and that the same applies to their allegedly deficient pleading as to standing, *id.* at 13–14 & n.2. Entirely missing from these allegations, and from Ogg's response in general, is any acknowledgement that this Court has already rejected Ogg's motions to dismiss and to stay presenting the exact same arguments. By extension, Ogg appears to blatantly reject the fact that she is bound by those orders or that this Court has jurisdiction over her. Her allegations of Plaintiffs' bad faith stand in stark contrast to her continued assertion that sovereign immunity justifies her non-participation in discovery despite both this Court and the Fifth Circuit rejecting that argument months ago.

### II. Ogg's Response Does Not Address the Substance of Plaintiffs' Motion to Compel

Ogg addresses the substance of Plaintiffs' motion to compel only in the last four pages of her eighteen-page response. Dkt. 500 at 14–18. In these pages she (1) inaccurately claims that

Plaintiffs have failed to explain the relevance of the requested information; (2) fails to meaningfully address the substance of Plaintiffs' motion to compel, *i.e.*, that her objections to Plaintiffs' discovery requests are inadequate; and (3) characterizes Plaintiffs' requests as "vastly overbroad," "staggering in . . . scope," a "massive and unjustifiable fishing expedition," and a "massive intrusion into years and years of historical files and communications" while at the same time asserting that no information responsive to certain of Plaintiffs' requests exists and seemingly admitting to already conducting the bulk of any search necessary to respond. *Id.* Notably absent from her internally contradictory arguments is reference to any supporting authority, save for one citation to Rule 26 and two citations to caselaw, for the uncontested conclusions that discovery is limited by proportionality and that Plaintiffs' requested discovery implicates privacy concerns. *Id.* at 16, 18.

### A. Plaintiffs Explained the Relevance of the Requested Information

First, Ogg claims that Plaintiffs "do[] not even attempt to articulate for the Court how prosecutorial files concerning statutes not at issue in this litigation could possibly" be relevant, and "offer no explanation as to how anything . . . Ogg's office was doing with respect to 'criminal election law' matters years before S.B. 1 even existed could possibly" be relevant. Dkt. 500 at 15. This is blatantly false. While Ogg may disagree with Plaintiffs' assertions, Plaintiffs directly addressed why they believe the information sought is relevant, *see* Dkt. 491 at 9–11, and Ogg fails entirely to address those arguments.[1]

---

[1] Ogg contests Plaintiffs' assertion that this Court has already ruled that Plaintiffs' requests seek relevant information because prior to the instant briefing the Court has not been presented with a request to rule on her discovery objections. Dkt. 500 at 15 n.4. This is contrary to the Court's direct statement in its Text Order of August 15, 2022, in which the Court denied Ogg's motion to stay and stated that Plaintiffs' "discovery requests are relevant and responses thereto may be secured from Defendant Ogg."

### B. Ogg Does Not Address the Majority of Plaintiffs' Motion to Compel

Second, Plaintiffs asserted in their motion to compel, at base, that Ogg's undifferentiated and repeated objections to Plaintiffs' discovery requests are so generalized that "it is impossible to know whether information has been withheld and, if so, why," and thus fail to meet the baseline requirement that "objections to discovery must be made with specificity." *See, e.g.*, *Heller v. City of Dallas*, 303 F.R.D 466, 483 (N.D. Tex. 2014) (cleaned up). Plaintiffs further and specifically set out Ogg's failure to:

- Explain her understanding of allegedly vague or ambiguous terms used in Plaintiffs' requests and to respond based on that understanding;
- Explain the extent to which Plaintiffs' requests are purportedly overbroad and answer or respond to the extent that they are not, as well as explain the scope of what she was responding to or answering;
- Explain why Plaintiffs' requests sought irrelevant information;
- Explain how the private information of third parties is implicated by Plaintiffs' requests or how the protective orders in this case would fail to protect any such private information;
- Produce a privilege log sufficient to invoke attorney-client privilege and the work product doctrine with the specificity required by law;
- Explain why Plaintiffs' contention interrogatories were inappropriate;
- Timely raise objections on the basis of investigative privilege or the Texas Public Information Act, or explain why those objections would apply even if timely raised.

*See generally* Dkt. 491. Ogg does not acknowledge or address the vast majority of these deficiencies in her response. Instead, she continues to present the false dichotomy that the only outcome here is either that she produce *nothing*, because there is no information *directly* related to the provisions of SB 1 challenged, or that she produce *everything conceivably covered* by the requests. She thus claims that Plaintiffs demand "all of [Ogg's] files concerning cases involving 'voting' in more than the last six years, plus all communications related to those files." Dkt. 500 at 16 (emphases removed). That is not true. Plaintiffs acknowledged in their motion to compel that privilege may justify the withholding of responsive information contained within those files, Dkt.

391 at 21–25, and narrowed their discovery requests in an attempt to facilitate discovery, *id.* at 10–11. But Ogg has displayed no interest in participating in any meaningful discovery negotiations, nor has she made any effort in her objections to "explain the extent to which [the requests are] overbroad and answer or respond to the extent that [they are] not—and explain the scope of what [she] is answering or responding to." *Heller*, 303 F.R.D. at 488 (cleaned up).

Beyond this, Ogg responds only on the issue of third-party privacy, stating that information within a prosecutor's file may "raise[] significant privacy concerns for individuals not in a position to assert their own interests in this litigation." Dkt. 500 at 18 (citing *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762–71 (1989)).[2] But she again fails to acknowledge the existence of the two protective orders in force in this lawsuit or to explain why they are inadequate to safeguard such information. Nor does it appear the authority she cites—a Supreme Court opinion analyzing the meaning of privacy under the Freedom of Information Act (FOIA)—is even applicable here. *See Freedom of Press*, 489 U.S. at 762 n.13 ("The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether . . . an individual's interest in privacy is protected by the Constitution."); *Vinzant v. United States*, No. 2:06-CV-10561, 2010 WL 2674609, at *8 (E.D. La. June 30, 2010) (collecting cases for the proposition that it does not automatically follow that because information is unavailable under the FOIA it is unavailable through discovery). Moreover, as Plaintiffs conceded in their motion to compel—and as they would have conceded in negotiations with Ogg had Ogg been willing to

---

[2] Ogg also cites to a statement in an attached declaration to the effect that the Texas Public Information Act (TPIA) and state law protect this information from disclosure. Dkt. 500 at 18 (citing Ex. D ¶ 5). As explained in Plaintiffs' motion to compel, the TPIA does not create or modify discovery privileges nor does state law on privilege apply to this purely federal litigation. Dkt. 491 at 22, 26. Even if it did, Ogg has not identified what state law would apply.

meaningfully engage in the discovery process—Plaintiffs do not seek, and do not object to the redaction of, personally identifying but irrelevant information. Dkt. 491 at 21 n.12.

### C. Ogg's Custodian's Declaration Belies Her Characterizations of Plaintiffs' Requests as "Vastly Overbroad"

Finally, Ogg has provided a declaration from George Jordan, the Harris County Assistant District Attorney who oversees the Harris County District Attorney's Office's "Public Corruption Division case database." *See* Dkt. 500, Ex. D. Mr. Jordan's statements are not only incompatible with several of Ogg's objections to Plaintiffs' discovery requests but also belie her characterizations of the requests as, among other descriptors, "vastly overbroad." Dkt. 500 at 15.

Initially, Ogg objected to Plaintiffs' Request for Production No. 3 and Interrogatory No. 3, both of which asked for information relating to her office's "practices or policies specific to the investigation or prosecution of violations or suspected violations of criminal election law," as—among other things—"overbroad in scope and time" and "vague and ambiguous in that it fails to define what Plaintiffs mean by 'suspected violation.'" *Id.*, Exs. A–B at 5. Now, in responding to Plaintiffs' motion to compel, Ogg has no apparent difficulty both understanding what information Plaintiffs requested but also stating that "[t]here are no written policies in place at [Ogg's office] that are specific to 'criminal election law,' as opposed to general policies and guidelines that apply to all manner of cases reviewed and prosecuted by [her office]." *Id.*, Ex. D ¶ 4. It is unclear why Ogg could not provide that response prior to the instant briefing or how it is compatible with her objections.

Next, in light of the above, Mr. Jordan states that the "only potentially responsive material" held by Ogg's office constitutes "files on complaints for potential prosecution or actual prosecutions of Texas Election Code criminal violations." *Id.* ¶ 5. He states that searching these files would impose "an estimated 236 person-hours on the Public Corruption Division that has

6

responsibility, among many others, for matters referred to the HCDAO related to potential violations of Texas election laws." *Id.* at 16 (citing Ex. D ¶ 7). This hourly total was obtained by estimating that it would take approximately 15 minutes to go over each of the 946 files contained in the Public Corruption Division archives for the time frame set out in Plaintiffs' requests (January 1, 2016, to present day). *Id.*, Ex. D. ¶ 6–7.

Plaintiffs cannot assess whether 236 person-hours is disproportionate to the needs of the case because that estimate appears to contradict the information contained in the declaration itself, which is admittedly not a model of clarity. First, it is unclear whether there are 946 files (1) in the database in total; (2) responsive to Plaintiffs' requests; or (3) responsive to Plaintiffs' narrowed requests. While Mr. Jordan references having reviewed both Plaintiffs' original requests as well as their narrowed requests, he does not return to that distinction later in setting out the number of files. *See id.* ¶ 3. Specifically, he states that:

> [o]ur database generally separates voting and election complaints from other public corruption cases. To the best of my knowledge, over the time period at issue in the OCA Plaintiffs' requests, there are approximately 946 files maintained by Public Corruption, 22 of these cases which fall in the general category of investigations of complaints of potential violations of the Texas Election Code that "touch upon the conduct of voting itself." Over the time period at issue in the OCA Plaintiffs' requests, there are two of these 22 files maintained by Public Corruption that fall in the general category of prosecutions of violations of the Texas Election Code that "touch upon the conduct of voting itself." While these two prosecuted cases do not appear to fall under the requests by the OCA Plaintiffs, out of an abundance of caution I include them as responsive to the request.[3]

---

[3] It is unclear how the statement that (1) two of the files "fall in the general category of prosecutions of violations of the Texas Election Code that 'touch upon the conduct of voting itself'" is consistent with the immediately following statement that (2) "these two prosecuted cases do not appear to fall under the requests by the OCA Plaintiffs."

7

*Id.* ¶ 6. The declaration therefore does not make it clear what this initial number of 946 files represents. However, the language of "touch[ing] upon the conduct of voting itself" is clearly a reference to Plaintiffs' narrowed requests, *see* Dkt. 491 at 10–11, so it seems likely that the number of files responsive to their narrowed requests is only 22. Plaintiffs are thus uncertain, irrespective of whether the 946 files are responsive to their initial requests, why it is necessary to review "all of the HCDAO Public Corruption files to ensure all files requested for the OCA Plaintiffs['] time period are included in the electronic search," as opposed to the 22 files already determined to be responsive to their narrowed requests. *See id.* ¶ 7.

More confoundingly, it appears from both the parties' meet and confer on November 4, 2022, in which counsel for Ogg relayed that a search of Ogg's files had revealed certain investigations and prosecutions, *see* Dkt. 491 at 6–7, as well as the statements in Mr. Jordan's declaration, that Ogg has already conducted at least the bulk of the searches required to respond to Plaintiffs' discovery requests. Plaintiffs are therefore unsure as to what future "massive intrusion into years and years of historical files" it is of which Ogg complains, Dkt. 500 at 16, although they note that Mr. Jordan's declaration is mostly devoid of information regarding the communications they requested.[4]

Discovery of these already-identified documents and related communications is hardly overbroad and is indisputably proportional to the needs of the case. Moreover, at this point the

---

[4] While Mr. Jordan references the fact that Plaintiffs have requested various communications between Ogg and others, his declaration is focused entirely on files contained in the Public Corruption database, which may not contain all such communications. For example, speaking entirely hypothetically, a communication between Ogg and a member of the public in which Ogg promised to diligently investigate and prosecute allegations of mail-in ballot voter fraud would likely be responsive to Plaintiffs' requests but may not be contained in the Public Corruption database. Plaintiffs acknowledge such communications may not exist, but at this juncture have no choice but to speculate because Ogg has not answered any of their interrogatories, produced any documents, or otherwise engaged meaningfully in discovery.

8

only basis for withholding the information referenced in Mr. Jordan's declaration appears to be that Ogg's counsel does not wish to engage in the labor of creating a privilege log. *See* Dkt. 500 at 18. That is insufficient justification to withhold this discovery.

### III. Conclusion

It is clear from the paucity of Ogg's response to the substance of Plaintiffs' motion to compel, as well as her continued insistence that sovereign immunity shields her from discovery—notwithstanding this Court's rejection of her motion to dismiss, as well as this Court's and the Fifth Circuit's rejections of her motions to stay—that absent this Court's intervention she will not comply with her discovery obligations under the Federal Rules of Civil Procedure. The Court should therefore grant Plaintiffs' motion to compel.

Dated: January 11, 2023.

Respectfully submitted,

By: */s/ Zachary Dolling*

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238

9

**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavizky@aclu.org
slakin@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
LISA A. SNEAD
Texas State Bar No. 24062204
PETER HOFER
Texas State Bar No. 09777275
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024

(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org
lsnead@drtx.org
phofer@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

***COUNSEL FOR PLAINTIFFS OCA-GREATER HOUSTON, ET AL.***

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on January 11, 2023, a true and correct copy of the foregoing was served on all counsel of record by filing through the Electronic Case File System of the Western District of Texas.

/s/ Zachary Dolling