**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | Case No. 5:21-cv-00844-XR |
| | § | [Lead Case] |
| *Defendants.* | § | |
| | § | |
| HARRIS COUNTY REPUBLICAN PARTY, *et al.*, | § | |
| | § | |
| | § | |
| *Intervenor-Defendants.* | | |

## LUPE PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TO COMPEL TESTIMONY OF DEFENDANT INTERVENOR HARRIS COUNTY REPUBLICAN PARTY

Plaintiffs La Union del Pueblo Entero, *et al.* ("Plaintiffs")[1] file this motion to compel and request that the Court order Defendant Intervenor Harris County Republican Party to (1) respond to Plaintiffs' Requests for Production of Documents 1 and 3 and (2) provide deposition testimony related to the Party's communications regarding Senate Bill 1 ("SB1") with Texas legislators, legislative staff and certain executive branch agencies. Plaintiffs' counsel hereby certify that they have conferred in a good faith attempt to resolve the matter by agreement and have been unable to secure compliance by Defendant Intervenor.

## I.    INTRODUCTION

This case involves a challenge by Plaintiff organizations and voters to SB1, a 2021 law that

---

[1] Plaintiffs are La Union del Pueblo Entero, Friendship-West Baptist Church, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Anti-Defamation League Austin, Southwest, and Texoma, Texas Hispanics Organized for Political Education, Jolt Action, William C. Velasquez Institute, FIEL Houston Inc., and James Lewin.

makes significant changes to how Texas voters cast ballots in elections.  Defendant Intervenor Harris County Republican Party, as well as other local and national Republican Party entities, intervened on May 13, 2022.[2]

Although Defendant Intervenor promised the Court in November 2022 that it would produce documents reflecting its communications about SB1 with Texas legislators and certain executive branch agencies, Defendant Intervenor did not conduct a search for responsive documents in the custody of Mr. Alan Vera, the Chair of the Harris County Republican Party Ballot Security Committee and the person who conducted most of Defendant Intervenor's lobbying activities on SB1.  Earlier this week, Mr. Vera testified in deposition that although he exchanged emails and gave documents to Texas legislators and executive branch officials related to SB1, he was never asked to search for or turn over emails or other documents in this case.

Furthermore, in his deposition, Mr. Vera followed the instructions of counsel for State Defendants not to answer questions regarding certain communications with Texas legislators and legislative staff on the grounds of legislative immunity.

Plaintiffs asked Defendant Intervenor on January 12, 2023 to search for responsive documents beyond those contained in Harris County Republican Party email accounts.  On February 27, following Mr. Vera's testimony that he used his personal email account to communicate with legislators and executive branch staff, Plaintiffs asked Defendant Intervenor to conduct a search for responsive documents in Mr. Vera's email and his computer.  Defendant Intervenor maintained that it only has custody or control over Harris County Republican Party

---

[2] Text Order of 5/13/2022.

email addresses and documents.

Defendant Intervenor also maintained that the legislative privilege objections are appropriate.  This motion follows.

## II.   BACKGROUND

Private Plaintiffs served Defendant Intervenors with their First Set of Requests for Production on July 7, 2022.  On October 24, 2022, following several meet and confer exchanges, Plaintiffs filed an Opposed Motion to Compel Production of Documents.[3]  In the November 14, 2022 hearing on that discovery motion, Defendant Intervenors advised the Court that they would produce all documents responsive to Plaintiffs' requests for production ("RFPs") 1[4] and 3[5] without objection and without any assertion of privileges, by December 1, 2022.[6]

 In their December 1, 2022 production in response to RFPs 1 and  3, Defendant Intervenors produced 61 documents, only seven of which were responsive to RFP 1.   Ex. K.   Many of the remaining documents, which purported to be responsive to RFPs 1 and 3, were simply notices sent by the Texas Secretary of State to local election officials, as opposed to direct communication with executive branch agencies or officials.

---

[3] *See* ECF 469.

[4] REQUEST FOR PRODUCTION NO. 1. All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Texas Legislature regarding SB 1, SB 7, HB 3, or HB 6.

[5] REQUEST FOR PRODUCTION NO. 3. All documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Office of the Texas Governor, the Office of the Texas Attorney General, the Office of the Texas Lieutenant Governor, or the Office of the Texas Secretary of State regarding SB 1, SB 7, HB 3, or HB 6.

[6] *See* ECF 490 at 5; Hr'g Tr. at 13:17–22, 35:3–4.

On January 12, 2023, Plaintiffs sent a deficiency letter to Defendant Intervenors.  Ex. H. In that letter, Plaintiffs requested that Defendant Intervenors include in their search individuals associated with Defendant Intervenors whose email accounts may contain documents "sent to or exchanged with the Texas Legislature [and several other state agencies] regarding SB 1, SB 7, HB 3, or HB 6"  and expand their search beyond official committee email addresses if necessary to include "[a]ll documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Texas Legislature [and several other state agencies] regarding SB 1, SB 7, HB 3, or HB 6." *Id.* at 2.

On February 23, 2023 and February 24, 2023, according to the agreement of the parties, Plaintiffs served Defendant Intervenors with notices to depose:  (1) Mr. Alan Vera, a named document custodian of Defendant Intervenor and Chairman of the Harris County Republican Party Ballot Security Committee, pursuant to Fed. R. C. P. 30(b)(1); (2) the Harris County Republican Party pursuant to Fed. R. C. P. 30(b)(6); and (3) Ms. Cindy Siegel, Harris County Republican Party Chairman, pursuant to Fed. R. C. P. 30(b)(1).  Exs. B, C, D, E and J.

On February 27, 2023, Defendant Intervenor Harris County Republican Party produced Mr. Alan Vera for deposition.  Mr. Vera testified that in his role as the Chairman of the Harris County Republican Party Ballot Security Committee, he communicated extensively with legislators and legislative staff regarding SB1, beginning in June of 2020 and through final passage of SB1 by the Texas Legislature in September 2021.  Ex. L. at 19:22-20:10, 25:3-21, 27:20-29:20; 71:15-72:6.  Mr. Vera testified that he met in person with legislators and legislative staff, gave them "exhibits" to his public testimony, and also communicated with them by email and phone calls.  Ex. L. at 70:7-19; 77:4-13; 76:11-17; 91:5-92:18; 94:14-95:1.

Mr. Vera testified that he both initiated communications with legislators about SB1 and responded to legislator requests for information about SB1. Ex. L. at 76:21-77:3. When he responded to inquiries from legislators, he gave them factual information and told them from his perspective that either certain holes needed to be plugged in the statute or certain issues needed to be addressed by the statute. Ex. L. at 78:9-16; 91:5-92:18; 108:24-109:23. Mr. Vera further testified that on at least one occasion, he provided legislators with proposed bill language that was included in the enacted SB1. Ex. L. at 30:3-14. Mr. Vera testified that he usually responded to legislator inquiries by email or phone. Ex. L. at 95:2-96:1.

During the two special legislative sessions immediately preceding SB1's passage, Mr. Vera provided feedback on SB1 to legislators once or twice a week. Ex. L. at 107:12-20. Mr. Vera testified that he provided feedback on SB1 to Texas Senator Paul Bettencourt, State Representative Jacey Jetton, State Representative Valoree Swanson and State Representative Briscoe Cain. Ex. L. at 107:21-108:8; 108:24-109:23. Senator Bettencourt served on the Senate State Affairs Committee and the SB1 conference committee in the Second Special Session[7], Representative Cain was the Chair of the House Elections Committee in 2021[8], and Representatives Swanson[9] and Jetton[10] served on the House Elections Committee in 2021.

Mr. Vera testified that he communicated with legislators about including language in SB1 related to mail ballot "harvesting," free movement of poll watchers, penalties for poll workers who

---

[7] https://capitol.texas.gov/Members/MemberInfo.aspx?Leg=87&Chamber=S&Code=A1055

[8] https://capitol.texas.gov/Members/MemberInfo.aspx?Leg=87&Chamber=H&Code=A3265

[9] https://capitol.texas.gov/Members/MemberInfo.aspx?Leg=87&Chamber=H&Code=A3425

[10] https://capitol.texas.gov/Members/MemberInfo.aspx?Leg=87&Chamber=H&Code=A3980

obstruct poll watchers, perceived problems with drive-thru voting, and voters registered at illegal addresses--provisions of SB1 challenged by Plaintiffs in this case.  Ex. L. at 78:23-80:9; 81:19-82:2; 82:25-83:8; 83:13-20; 84:2-19; 105:8-106:3; 110:7-13.  Mr. Vera further testified that in his opinion, SB1's language on poll watcher interference, drive-thru voting and mail ballot "harvesting" tracked closely to his communications with legislators.  Ex. L. at 132:11-133:6.

Mr. Vera used his personal email address to send communications to, and receive communications from, legislators and their staff regarding SB1, including sending proposed bill language.  Ex. L. at 30:3-14; 30:15-22; 131:20-25.  Also, when testifying in the Legislature on SB1, Mr. Vera would write out what he would say and retain those notes after testifying.  Ex. L. at 31:3-32:3.  Mr. Vera also used his personal email address to communicate with executive branch agencies about SB1.  Ex. L. at 116:25-118:15; 119:10-18.

Despite the fact that Mr. Vera was deeply involved in lobbying on SB1 on behalf of the Harris County Republican Party, Mr. Vera testified that he did not search for emails in which he was providing feedback to legislators or initiating conversations with legislators relevant to SB1.  Ex. L. at 122:17-123:3.  Mr. Vera further testified that he did not turn over his computer to anybody to have them search his emails as part of his involvement in the case, although his emails would be there if Microsoft Outlook saved emails that are older than one year.  Ex. L. at 123:9-18.

Without documents from Mr. Vera's files, Plaintiffs were unable to question Mr. Vera adequately about his communications with legislators and legislator staff.  The similar lack of document production related to Mr. Vera's communications with various executive branch agencies made it impossible for Plaintiffs to obtain information regarding Defendant Intervenor's communications with those agencies.  For example, Mr. Vera testified that he "clearly

remember[ed] not communicating with anyone in the SOS office about SB1 during the regular session or the two special sessions" until counsel showed him an email from the Party Chairman's account and then he recalled that he communicated with staff in the office of the Secretary of State regarding poll watcher training and SB1.  Ex. L. at 116:25-118:15; 119:10-18.

Mr. Vera further refused to answer specific questions about his responses to legislator inquiries for feedback on SB1 because counsel for State Defendants objected and instructed him not to answer on the grounds of legislative privilege.  Ex. L. at 72:20-75:5. Based on those instructions from counsel for State Defendants, Mr. Vera refused to answer questions such as what feedback he provided to legislators related to SB1's provisions on poll watchers, vote "harvesting," and drive-thru voting, and the requirement that voters provide identification numbers on their applications for ballot by mail and their mail ballots.  Ex. L. at 111:16-113:4

Counsel for State Defendants stated that they asserted legislative privilege as to Defendant Intervenor's "communications to the legislators or legislative staff in response to a legislative inquiry" Ex. L. at 74:14-75:5.  Mr. Vera testified that it was difficult to separate responsive communications from communications he initiated with legislators or legislative staff because "the interaction and the dynamics of the exchanges and discussions, those things overlap continually." Ex. L. at 75:6-76:10.  Mr. Vera further testified that when he communicated with legislators and their staff about SB1, it was frequently a combination of him offering information on his own initiative, receiving inquiries from legislators and their staff, and responding to the inquiries from legislators and their staff.  Ex. L. at 76:21-77:3.

In addition to following the instructions of counsel for State Defendants not to answer certain questions because of legislative privilege, Mr. Vera censored his answers to other questions

calling for communications with legislators regarding SB1, even when counsel for State Defendants did not object.  Ex. L. at 28:25-29:12; 87:6-9 ("Q. Okay. So what were you advocating for with protect [sic] to the vote harvesting?  A. Okay. So we got to be careful about stepping on the objections, okay?"); 88:2-12.  Mr. Vera also omitted from his answers information related to his responding to legislator inquiries, and then admitted to these communications when asked directly.  Ex. L. at 106:13-107:11.

At the end of Mr. Vera's questioning, counsel for Plaintiffs stated that they would hold open the deposition in order to resolve the issues that had arisen with respect to assertion of the legislative privilege.  Ex. L. at 139:22.  Counsel for Defendant Intervenor responded that "We think all the privilege assertions have been appropriate."  *Id.*  Counsel for Plaintiffs also requested that Defendant Intervenor agree to conduct a search for responsive documents in Mr. Vera's email and his computer because he had been designated by Defendant Intervenor as a document custodian, had testified that he had relevant and responsive documents, and testified that he had not searched and had not given over his computer to be searched.  Ex. L. at 159:2-161:23.  Counsel for Defendant Intervenor responded that although they had designated Mr. Vera as a document custodian, "we only have custody and control over Harris county republican party email addresses and document[s.]"  *Id.*

On February 28, 2023, Ms. Cynthia Siegel testified on behalf of the Harris County Republican Party.  Ms. Siegel confirmed that Mr. Vera represented the Harris County Republican Party in communicating with the Texas Legislature with respect to SB1 and its predecessor bills.  Ex. M (Forthcoming Excerpts of Transcript of Cindy Siegel (February 28, 2023) Rough Transcript.)  Ms. Siegel also testified that Mr. Vera conducted Harris County Republican Party

business through his personal email account because Mr. Vera did not have a Harris County Republican Party email address.   *Id.*

## I.   **LEGAL STANDARD**

### A.  **Motion to Compel**

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the other party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 34 permits parties to serve upon each other "a request within the scope of Rule 26(b)" to produce certain items "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Rule 26 requires a party that asserts a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  "It is well settled that the party asserting the privilege has the burden of establishing its applicability."  *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).  Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege.  *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

Under the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling an answer . . . if a deponent fails to answer a question."  Fed. R. Civ. P.

37(a)(3)(B)(i).  Where counsel instructs a deponent not to answer a question on privilege grounds, the Court may "more accurately assess the privilege dispute on an appropriate [later] motion." *League of United Latin Am. Citizens v. Abbott*, 3:21-cv-00259-DCG-JES-JVB, 2022 WL 3656395, at *3 (W.D. Tex. Aug. 23, 2022).  Of note, "[i]n a deposition, whether a query implicates privileged communications depends on the question being asked."  *Id.* at *2 (internal quotation omitted).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

### B.  Legislative Privilege

"Legislative privilege is an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'"  *La Union Del Pueblo Entero v. Abbott ("LUPE I")*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022) (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)).  "The privilege 'is, at best, one which is qualified.'"  *League of United Latin Am. Citizens v. Guillen*, No. 22-50407, 2022 WL 2713263, at *1 (5th Cir. May 20, 2022) (quoting *Jefferson Cmty.*, 849 F.3d at 624).   To that end, "[t]he privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."  *LUPE I*, 2022 WL 1667687, at *2 (quoting *Jefferson*

*Cmty.*, 849 F.3d at 624); *see also League of United Latin Am. Citizens v. Abbott (LULAC I)*, No. 3:21-cv-00259-DCG-JES-JVB, 2022 WL 1570858, at *1 (W.D. Tex. May 18, 2022).

II.   **ARGUMENT**

**A.   Defendant Intervenor has control of documents related to Mr. Vera's communications with Texas legislators and legislative staff, and executive branch agencies, and must produce any responsive documents from Mr. Vera's email account and computer.**

Mr. Vera was Defendant Intervenor Harris County Republican Party's primary agent for purposes of communicating with the Legislature regarding SB1. He used his personal computer and personal email address to conduct business for the Harris County Republican Party. Defendant Intervenor does not dispute that Mr. Vera's communications with the Legislature regarding SB1 are relevant and responsive to Plaintiffs' discovery requests.  Yet it argues that it is under no obligation to produce relevant documents from Mr. Vera's personal computer and personal email address because it claims that those documents are not within its possession, custody, or control. On the contrary, case law from this Circuit makes clear that those documents and communications made on behalf of Defendant Intervenor are plainly within its possession, custody, and control.

Courts in this Circuit have emphasized that "[p]ossession, custody, or control are broad terms." *League of United Latin Am. Citizens v. Abbott ("LULAC II")*, No. 3:21-cv-00259-DCG-JES-JVB, 2022 WL 3233406, at *7 (W.D. Tex. Aug. 10, 2022).  Indeed, those terms "include more than actual possession or control of the materials; the terms also contemplate a party's legal right or *practical ability to obtain* the materials from a nonparty to the action."  *Id.* (cleaned up); *see also Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014).  As such "a party can 'control' documents that are within the possession or custody of a non-party," and "[d]ocuments are considered to be within a party's control when that party has the

right, authority, or practical ability to obtain the documents from a nonparty." *Perez*, 2014 WL 1796661, at *1 (quoting Fed. R. Civ. P. 34(a)(1)(A)).

Because Mr. Vera used his personal computer and personal email address to conduct official business of the Harris County Republican Party, documents in both are under the "control" of Defendant Intervenor. *Ultravision Technologies, LLC v. Govision*, *LLC* is instructive. No. 2:18-cv-00100-JRG-RSP, 2020 WL 10692709 (E.D. Tex. Aug. 28, 2020). In that case, the requesting party sought documents from individuals identified as custodians and who had conducted business for the responding party on their personal email accounts. *Id.* at *2. Despite the responding party's objections, the court in *Ultravision* concluded that the personal email accounts of those individuals were "under [the responding party's] control" and compelled production from those email accounts. *Id.*

As in *Ultravision*, the challenged documents here are under the control of Defendant Intervenor. Mr. Vera is the Chairman of the Harris County Republican Party Ballot Security Committee. Ex. L. at 14:2-7. In that role, his duties include advocating on election legislation in the Texas Legislature, including providing members of the Legislature with the Party's priority items, proposing bill language, and testifying in Senate and House committees in support of election legislation. Ex. L. at 19:22-20:10, 25:3-21, 27:20-29:20. Mr. Vera and the designated representative of the Harris County Republican Party both testified that Mr. Vera conducted Harris County Republican Party business through his personal email account and his personal computer. Ex. L. at 30:3-14; 30:15-22; 131:20-25 (Vera) and Ex. <u>M</u> (Forthcoming Excerpts of Transcript of Cindy Siegel (February 28, 2023) Rough Transcript.). Defendant Intervenor also identified Mr. Vera as a document custodian for the Harris County Republican Party. Ex. F.

Thus, Defendant Intervenor plainly has "the right, authority, or practical ability to obtain the documents from" Mr. Vera—but failed to search for or produce any such document. *See Perez*, 2014 WL 1796661, at *1; *see also LULAC II*, 2022 WL 3233406, at *7. Accordingly, any responsive documents in Mr. Vera's personal email address and on his personal computer are under the "control" of Defendant Intervenor—and must be produced. *Ultravision*, 2020 WL 10692709, at *2.

### B. Defendant Intervenor, Mr. Vera, and State Defendants Improperly Invoke the Legislative Privilege.

> *1. Neither Defendant Intervenor, Mr. Vera, nor State Defendants Can Assert the Legislative Privilege.*

As an initial matter, Defendant Intervenor and Mr. Vera cannot assert the legislative privilege because they are not *legislators*.

Courts in this Circuit—including this Court—have consistently held that the legislative "privilege is personal, and it may be waived or asserted" only "by the individual legislator." *La Union Del Pueblo Entero v. Abbott ("LUPE I")*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022); *see also Perez v. Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014); *LULAC II*, 2022 WL 3233406, at *1; *Gilby v. Hughes*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040, 2022 WL326566, at *6 (N.D. Tex. Feb. 3, 2022). Neither Mr. Vera nor Defendant Intervenor is a state legislator. Accordingly, they may not assert the legislative privilege here over the challenged testimony.

And because State Defendants are also not legislators, the legislative privilege may not be invoked by, or on behalf of, State Defendants. During Mr. Vera's deposition, counsel for State

13

Defendants—from the Office of the Attorney General—invoked the legislative privilege to object to several of Plaintiffs' questions, (Ex. L. at 72:20-75:5; 74:14-75:5) and even instructed Mr. Vera to invoke the privilege and refuse to testify (Ex. L. at 111:16-113:4).  Following State Defendants' instructions, Mr. Vera declined to answer based on the legislative privilege.  *Id.*

As already discussed, neither Defendant Intervenor nor Mr. Vera could invoke the legislative privilege.  And as other courts in this Circuit have uniformly held, "neither the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member." *Perez*, 2014 WL 106927, at *1; *see also LULAC II*, 2022 WL 3233406, at *1; *Gilby*, 471 F. Supp. 3d at 768; *TitleMax*, 2022 WL 326566, at *6.  Counsel from the Office of the Attorney General made clear during the deposition that he represented only State Defendants, (Ex. L. at 2:15-17) and thus could "not invoke the privilege on behalf of [a] legislator, legislative aide, or staff member," *LUPE I*, 2022 WL 1667687, at *2 (quoting *Gilby*, 471 F. Supp. 2d at 767).  Accordingly, State Defendants' assertions of the legislative privilege—as well as any assertion by Defendant Intervenor or Mr. Vera on behalf of State Defendants (or  anyone else)—were improper, and Defendant Intervenor should be compelled to provide the deposition testimony regarding any communications between Mr. Vera and legislators or legislative staff.[11]

> ### 2.  *Legislators Waived the Legislative Privilege for any Communication with Defendant Intervenor.*

Even if Defendant Intervenor, Mr. Vera, or State Defendants could invoke the legislative privilege on behalf of a legislator or legislative staff, the privilege has been waived as to any communications with Mr. Vera.  As the Court previously emphasized, "the legislative privilege

---

[11] For the same reasons, State Defendants lack standing to assert the legislative privilege over any documents in Mr. Vera's computer or from Mr. Vera's personal email address.

[is] waived when [] State Legislators communicate[] with parties outside the legislature, such as party leaders and lobbyists." *LUPE I*, 2022 WL 1667687, at *2; *see also Perez*, 2014 WL 106927, at *2 ("To the extent that legislators or legislative staff communicated with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications."); *LULAC II*, 2022 WL 3233406, at *1 n.3; *Gilby*, 471 F. Supp. 3d at 767; *Favors v. Cuomo*, 285 F.R.D. 187, 212 (S.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege"). That is so even where communications with third parties are purportedly "made as part of the legislative process of gathering facts for and considering . . . legislation." *See LUPE I*, 2022 WL 1667687, at *3.[12] So, for example, "lobbying communications between the Defendant Intervenors and members of the Texas legislature" "must be produced." *La Union Del Pueblo Entero v. Abbott (LUPE II)*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *7 (W.D. Tex. Dec. 9, 2022).

Because Mr. Vera is a third party to the Texas Legislature, legislators with whom he communicated have waived the legislative privilege as to any information about which Mr. Vera may testify. Similarly, any documents in the possession, custody, or control of Defendant Intervenor—including those in Mr. Vera's personal computer and email account—necessarily have been shared with outsiders of the Legislature. Accordingly, Mr. Vera's testimony should be compelled, as should the production of any documents in the possession, custody, or control of Defendant Intervenor over which the legislative privilege is asserted.

---

[12] During Mr. Vera's deposition, counsel for State Defendants invoked the legislative privilege specifically over the "content of any communications that [Mr. Vera] made in response to an inquiry from a legislator of legislative staff," Ex. L. at 74:14-75:5, and instructed Mr. Vera not to testify as to any such information. Ex. L. at 111:16-113:4. Mr. Vera in turn declined to answer some of Plaintiffs' questions based on those instructions. *Id.* The Court has already rejected that overly broad view of the legislative privilege—an understanding based on inapposite case law regarding legislative *immunity*, not the legislative *privilege*— and the Court should do the same here. *LUPE I*, 2022 WL 1667687, at *3; *LULAC I*, 2022 WL 1570858, at *1.

      *3.   Defendant Intervenor, Mr. Vera, and State Defendants Cannot Assert the*
      *Legislative Privilege over Fact-based Information.*

Mr. Vera improperly declined to testify about fact-based information not subject to the legislative privilege.  The Court has previously emphasized that the legislative privilege "does not apply . . . to 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings,' or 'the materials and information available [to lawmakers] at the time a decision was made.'"  *LUPE I*, 2022 WL 1667687, at *2 (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011)); *see also League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-00259-DCG-JES-JVB, 2022 WL 2921793, at *2 (W.D. Tex. July 25, 2022), *appeal docketed sub nom. LULAC v. Patrick*, No. 22-50435 (5th Cir. July 26, 2022).

Plaintiffs sought testimony from Mr. Vera regarding communications in which he provided information to legislators or legislative staff at those individuals' request, Ex. L at 78:9-16.  Based on the legislative privilege, State Defendants objected to—and at times Mr. Vera declined to answer—Plaintiffs' questions seeking such testimony.  Ex. L. at 72:20-75:5; 74:14-75:5; 111:16-113:4.  However, that testimony constitutes merely "materials and information available [to lawmakers] at the time a decision was made," and is therefore distinct from documents or testimony that could fall within the scope of the privilege—that is, it is not evidence "that contains or involves opinions, motives, recommendations or advice about legislative decisions."  *LUPE I*, 2022 WL 1667687, at *2 (quotation omitted).  Likewise, documents on Mr. Vera's personal computer and in his personal email account contain fact-based information not subject to the privilege.  Accordingly, that evidence must be disclosed.

      *4.   Even if Applicable, the Legislative Privilege Should Yield.*

Even if applicable, the legislative privilege should yield to the need for discovery here. To determine whether the privilege should yield, courts in this Circuit and elsewhere have consistently considered the following five factors: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *See Perez*, 2014 WL 106927, at *2; *see also LUPE I*, 2022 WL 1667687, at *6. Further, as the Court previously emphasized, the legislative "privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *LUPE I*, 2022 WL 1667687, at *2 (quoting *Jefferson Cmty.*, 849 F.3d at 624); *LULAC I*, 2022 WL 1570858, at *1; *Perez*, 2014 WL 106927, at *2.

All five factors weigh in favor of disclosure. First, the evidence sought is both relevant and vital to Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution, as "[t]he evidence that [Plaintiffs] seek to compel is highly relevant in proving" those claims, as communications between Mr. Vera and legislators may "reflect the [legislators'] contemporaneous thoughts and motivations in drafting and enacting S.B. 1." *LUPE I*, 2022 WL 1667687, at *6. The second factor—the availability of other evidence—also weighs in favor of disclosure. Of note, this factor "weighs in favor of disclosure 'given the practical reality that officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."'" *LUPE I*, 2022 WL 1667687, at *6 (quoting *Veasey*, 2014 WL 1340077, at *3). Plaintiffs have alleged that the Legislature enacted SB1 with an intent

to discriminate against racial minorities and that those plans had a discriminatory effect, and Plaintiffs are therefore entitled to examine the most probative evidence regarding that legislation.

The third and fourth factors—the seriousness of the litigation and issues involved, and the role of the government in the litigation—also weigh in favor of disclosure. Plaintiffs "raise serious questions whether S.B. 1 complies with the Voting Rights Act and the First and Fourteenth Amendments." *LUPE I*, 2022 WL 1667687, at *6; *see also Harding v. Cnty. of Dallas*, No. 3:15-CV-1031-D, 2016 WL 7426127, at *6 (N.D. Tex. Dec. 23, 2016); *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014) ("[T]he importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated."). "As [Plaintiffs] have alleged that the Texas legislature intentionally discriminated against minority voters, the decisionmaking process . . . *is* the case[.]" *LUPE I*, 2022 WL 1667687, at *6 (quotation omitted).

Finally, there is no possible chilling effect on governmental employees. Texas legislators and executive officials have participated in the discovery process—including through document production, depositions, and trial appearances—associated with litigation challenging discriminatory voting laws in Texas. *See, e.g.*, *Perez* 2014 WL 106927, at *1; *Texas v. Holder*, 888 F. Supp. 2d 113, 120-21 (D.D.C. 2012). And yet, even after courts have previously concluded that the legislative privilege should yield, no chilling effect has occurred. *See Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014). In any event, even if this factor weighed against disclosure, courts have repeatedly found—particularly in the voting rights context—"that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE I*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL 1340077, at *3; *Baldus v. Brennan*, No. 11-CV-562, 11-CV-1011, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8,

2011) (concluding that the potential "chilling effect" on the state legislature "is outweighed by the highly relevant and potentially unique nature of the evidence").

Accordingly, the *Perez* factors strongly weigh in favor of disclosure of testimony and production of documents Plaintiffs seek to compel.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion, direct Defendant Intervenor to conduct a search for and produce all relevant documents in response to Plaintiffs' Requests for Production 1 and 3, including documents in Mr. Vera's personal email address and personal computer, and compel Defendant Intervenor to provide deposition testimony in response to Plaintiffs' questions regarding Defendant Intervenor's communications with legislators and legislative staff.


Dated: March 3, 2023                                    Respectfully submitted,


*/s/ Nina Perales*                                          */s/ Sean Morales-Doyle*
Nina Perales (TX Bar No. 24005046)          Sean Morales-Doyle (NY Bar No. 5646641)
Julia R. Longoria (TX Bar No. 24070166)    Patrick A. Berry (NY Bar No. 5723135)
Fatima L. Menendez (TX Bar No. 24090260)  Jasleen K. Singh (CA. Bar No. 316596)
MEXICAN AMERICAN LEGAL                         Eliza Sweren-Becker (NY Bar No. 5424403)
DEFENSE AND EDUCATIONAL FUND            Andrew B. Garber (NY Bar No. 5684147)
110 Broadway, Suite 300                             BRENNAN CENTER FOR JUSTICE AT
San Antonio, TX 78205                                 NYU SCHOOL OF LAW
Telephone: (210) 224-5476                           120 Broadway, Suite 1750
Facsimile: (210) 224-5382                            New York, NY 10271
nperales@maldef.org                                    Telephone: (646) 292-8310
jlongoria@maldef.org                                   Facsimile: (212) 463-7308
fmenendez@maldef.org                                sean.morales-doyle@nyu.edu
                                                                 patrick.berry@nyu.edu
Michael C. Keats*                                       jasleen.singh@nyu.edu
Rebecca L. Martin*                                      eliza.sweren-becker@nyu.edu
Jason S. Kanterman*                                    andrew.garber@nyu.edu
Kevin Zhen*
                                                                 Paul R. Genender (TX Bar No. 00790758)

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza

New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com
kevin.zhen@friedfrank.com

*Attorneys for Plaintiffs*
**LA UNIÓN DEL PUEBLO ENTERO,
SOUTHWEST VOTER
REGISTRATION EDUCATION
PROJECT, MEXICAN AMERICAN
BAR ASSOCIATION OF TEXAS,
TEXAS HISPANICS ORGANIZED FOR
POLITICAL EDUCATION, JOLT
ACTION, WILLIAM C. VELASQUEZ
INSTITUTE, FIEL HOUSTON INC**

*\*Admitted pro hac vice*

Elizabeth Y. Ryan (TX Bar No. 24067758)
Matthew Berde (TX Bar No. 24094379)
Megan Cloud (TX Bar No. 24116207_
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
paul.genender@weil.com
liz.ryan@weil.com
matt.berde@weil.com
megan.cloud@weil.com

**COUNSEL FOR
FRIENDSHIP-WEST BAPTIST
CHURCH, ANTI-DEFAMATION
LEAGUE AUSTIN, SOUTHWEST, AND
TEXOMA, TEXAS IMPACT, JAMES
LEWIN**

*\*Admitted pro hac vice*

## CERTIFICATE OF CONFERENCE

I hereby certify that, on January 12, 2023 and February 27, 2023, counsel for LUPE Plaintiffs conferred with counsel for Harris County Republican Party Defendant Intervenor concerning the relief requested in the instant motion. As described in the body of this motion, Harris County Republican Party Defendant Intervenor did not agree to produce the requested testimony and documents. I hereby further certify that, on March 3, 2023, counsel for LUPE Plaintiffs conferred with counsel for all parties concerning the subject of the instant motion. Counsel for State Defendants and Defendant Intervenor stated that they oppose the motion. Counsel for the United States stated that they took no position on the motion.

*/s/ Nina Perales*
Nina Perales

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 3rd day of March 2023.

*/s/ Nina Perales*
Nina Perales