**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | [Consolidated Cases] |
| | § | |
| GREGORY W. ABBOTT, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**STATE DEFENDANTS' RESPONSE TO LUPE PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' Motion to Compel seeks privileged information and imposes burdens that are disproportionate to the needs of the case. Despite deposing three members of the Texas Legislature, receiving thousands of pages of documents from individual legislators, and obtaining over 100,000 documents from State Defendants, Plaintiffs seek to impose more costs, burdens, and inefficiencies by compelling agents of individual legislators to release privileged information. This, despite a pending appeal involving the very same legal issue. Deciding legislative privilege absent further guidance from the Fifth Circuit is premature, and Mr. Vera should not be compelled to discuss information that is protected by a privilege that he cannot waive. Plaintiffs' motion should thus be denied.

**BACKGROUND**

Throughout the discovery in this case, individual legislators and State Defendants have diligently invoked legislative privilege. On May 3, 2022, Plaintiffs filed a motion to compel the production of nearly 300 privileged documents on multiple grounds. *See* ECF 391. This Court determined that the legislative privilege did not apply and granted Plaintiffs' initial motion, *see* ECF 425, which State Defendants then appealed. *See* Appellants' Brief, *LULAC v. Hughes*, No. 22-50435 (5th Cir. May 26, 2022). The parties and the Court still await guidance from the Fifth Circuit.

## ARGUMENT

### I. Legislative Privilege Protects the Information Plaintiffs Seek.

For centuries, the legislative privilege has "protect[ed] 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts'" and "preclude[d] any showing of how [a legislator] acted, voted, or decided." *United States v. Helstoski*, 442 U.S. 477, 489 (1979). In addition, "[t]he privilege protects the legislative process itself, and therefore covers . . . legislators' actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). This legislative process not only includes "words spoken in debate," but also "[c]ommittee reports, resolutions, and the act of voting," as well as the "things generally done" during a Legislature's session "by one of its members in relation to the business before it." *Gravel v. United States*, 408 U.S. 606, 617 (1972). This privilege necessarily includes "[m]eeting[s] with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation . . . [and] assist legislators in the discharge of their legislative duty." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007).

Here, the information Plaintiffs seek falls within the scope of legislative privilege. Plaintiffs attempt to obtain evidence of legislators' "contemporaneous thoughts and motivations in drafting and enacting S.B. 1." *See* ECF 547 at 17. Plaintiffs concede that Mr. Vera communicated with legislators extensively and "responded to legislator requests for information about SB1." *See* ECF 547 at 4–5. When responding to such legislative inquiries, Mr. Vera was necessarily engaged in the "proposal, formulation, and passage of legislation." *See Hubbard*, 803 F.3d at 1308. Indeed, Plaintiffs concede that Mr. Vera provided "proposed bill language" and gave legislators information relating to "certain holes [that] needed to be plugged in the statute or certain issues [that] needed to be addressed by the statute." ECF 547 at 5. For example, "Mr. Vera communicated with legislators about including language related to mail ballot 'harvesting,' free movement of poll watchers, penalties for poll workers who obstruct

poll watchers, perceived problems with drive-thru voting, and voters registered at illegal addresses," all of which implicate provisions of SB1 being challenged in this litigation. *See* ECF 547 at 5–6. These are but a few examples of the types of privileged information that Plaintiffs seek. For purposes of analyzing legislative privilege, Mr. Vera was thus acting as an "agent" of these legislators by fulfilling their requests "to discuss issues that bear on potential legislation" and to "assist legislators in the discharge of their legislative duty." *See Almonte*, 478 F.3d at 107.

All of these communications—and the other substantively similarly communications at issue—fall within the definition and scope of legislative privilege. Plaintiffs should not be allowed to obtain from Mr. Vera what they would not be allowed to obtain directly from the legislators themselves. Accordingly, such communications should not be compelled.

## II. Legislative Privilege was Properly Asserted Here.

Plaintiffs argue that legislative privilege has not been properly invoked. That argument is wrong for several reasons. First, any objection lodged by counsel representing those acting as legislative agents is proper. Second, the Office of the Texas Attorney General represents not only State Defendants, but individual legislators, and thus objections made on behalf of those legislators are also proper. Third, absent a specific waiver of legislative privilege by the legislator that holds the privilege, the State of Texas is entitled to lodge the objection.

Given the "complexities of the modern legislative process," the Supreme Court has reasoned that "it is literally impossible . . . for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Gravel*, 408 U.S. at 616. In line with this reasoning, circuit courts have likewise determined that the legislative privilege extends to non-legislators. *See, e.g.*, *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 630 (1st Cir. 1995) (finding that "the prophylaxis of the [Speech and Debate] Clause also extends to legislative acts performed by non-legislators"). Rather than adopt an "unacceptably narrow view" that legislative privilege is confined to legislators themselves, the Supreme

Court has instead described the privilege as having the "fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Id.* at 618. Thus, the privilege still applies here to the extent that it was invoked on behalf of non-legislators that were fulfilling a legislative role at the behest of members of the legislature.

Additionally, as Plaintiffs are aware, the Office of the Texas Attorney General represents specific legislators in this case. Those legislators have scrupulously invoked legislative privilege during their own depositions as well as in response to Rule 45 subpoenas for documents. Attempts to force their attendance at any deposition that might conceivably reveal legislatively privileged information would be both impractical and disproportionate to the needs of the case. Legislators have instead requested that counsel use its best legal judgment to vigorously defend the privileges to which they are entitled.

Finally, State Defendants themselves have a sufficient interest in preserving legislative privilege on behalf of legislators unless a waiver of that privilege has been effectuated. Legislative privilege applies "whether or not the legislators themselves have been sued." *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011); *see also Hubbard*, 803 F.3d at 1308; *S.C. State Conference of NAACP v. McMaster*, 584 F. Supp. 3d 152, 160 (D.S.C. 2022); *Benisek v. Lamone*, 241 F. Supp. 3d 566, 573 (D. Md. 2017). This is because "state and local officials undoubtedly share an interest in minimizing the 'distraction' of 'divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation.'" *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) (quoting *Eastland*, 421 U.S. at 503). Because members of the Texas Legislature presumably wish to keep their privileged documents and communications private absent any indication to the contrary, State Defendants' invocation of the privilege was also proper.

For this reason, Plaintiffs' argument for waiver also fails. *See* ECF 547 at 14–15. As the Supreme Court has observed, "waiver can be found only after explicit and unequivocal renunciation

of the protection." *Helstoski*, 442 U.S. at 490. But Plaintiffs have not established even one instance where a legislator explicitly and unequivocally renounced legislative privilege in relation to SB1. Plaintiffs' argument also conflicts with the Supreme Court's central justifications for extending the legislative privilege beyond just the legislators themselves. If legislators are not able to have free and open conversations with their agents about the problems in the relevant communities, a legislator's actions would be uninformed and unsuccessful—a demise that would effectively divide the voice of the people from the ears of the representatives. Accordingly, legislative privilege has not been waived.

## III. Any Marginal Benefit of the Requested Discovery is Insufficient to Overcome Legislative Privilege.

Plaintiffs use a five-factor balancing test to assert that the "legislative privilege should yield to the need for discovery here." *See* ECF 547 at 16–17. But the legitimacy and applicability of that argument is the subject of a currently pending appeal and awaiting decision from the Fifth Circuit. In addition, other circuit courts have rejected such a factor-based test. *See, e.g.*, *Hubbard*, 803 F.3d at 1308. Reliance on that test here would thus be premature.

Plaintiffs would not be entitled to the requested information even if that balancing test were applied. Proving discriminatory intent using the kind of information Plaintiffs hope to find is subject to "the inherent challenges of using evidence of individual lawmakers' motives to establish that the legislature as a whole enacted [the challenged legislation] with any particular purpose." *Am. Trucking Associations, Inc. v. Alviti*, 14 F.4th 76, 90 (1st Cir. 2021) (citing *United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."). While such "evidence of individual legislators' motives is [not] always irrelevant per se," it is undoubtedly "often less reliable and therefore less probative than other forms of evidence bearing on legislative purpose." *Id.* Balanced against this negligible benefit, imposing any discovery burden on

non-parties would be improper and not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Allowing plaintiffs to bootstrap greater access to discovery by bringing particular claims is also bad policy. Indeed, "[w]ere [this Court] to find the mere assertion of a federal claim sufficient, even one that addresses a central concern of the Framers, the privilege would be pretty much unavailable largely whenever it is needed." *Id.* at 88. Plaintiffs' efforts should not be rewarded, and the privileged information should remain protected.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' Motion to Compel.

Date: March 7, 2023

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division
Tex. State Bar No. 24087727

/s/ *Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

J. AARON BARNES
Special Counsel
Tex. State Bar No. 24099014

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
christopher.hilton@oag.texas.gov
kathleen.hunker@oag.texas.gov
aaron.barnes@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 7, 2023, and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER