```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3
   LA UNION DEL PUEBLO ENTERO,      .
 4 ET AL,                           .
                                    .
 5            PLAINTIFFS,           .
          vs.                      . DOCKET NO. 5:21-CV-844-XR
 6                                  .
   GREGORY W. ABBOTT, ET AL,        .
 7                                  .
              DEFENDANTS.           .
 8

 9

10             TRANSCRIPT OF MOTION PROCEEDINGS
          BEFORE THE HONORABLE XAVIER RODRIGUEZ
11             UNITED STATES DISTRICT JUDGE
                    MARCH 7, 2023
12

13

14

15

16 APPEARANCES:
   FOR THE PLAINTIFFS:    NINA PERALES, ESQUIRE
17                        FATIMA L. MENENDEZ, ESQUIRE
                          JULIA RENEE LONGORIA, ESQUIRE
18                        KENNETH PARRENO, ESQUIRE
                          MALDEF
19                        100 BROADWAY STREET, #300
                          SAN ANTONIO TX 78205
20

21                        JENNIFER JAESEON YUN, ESQUIRE
                          UNITED STATES DEPARTMENT OF JUSTICE
22                        150 M STREET NE, 8TH FLOOR
                          WASHINGTON DC 20002
23

24

25
```

```
 1
 2                         ZACHARY DOLLING, ESQUIRE
                          TEXAS CIVIL RIGHTS PROJECT
 3                        1405 MONTOPOLIS DRIVE
                          AUSTIN TX 78741
 4
 5   FOR THE DEFENDANTS:  CHRISTOPHER HILTON, ESQUIRE
                          OFFICE OF THE ATTORNEY GENERAL OF TEXAS
 6                        P.O. BOX 12548
                          CAPITAL STATION
 7                        AUSTIN TX 78701
 8
 9                        JOHN M. GORE, ESQUIRE
                          JONES DAY
10                        51 LOUISIANA AVENUE NW
                          WASHINGTON DC 20001
11
12                        MARINA EISNER, ESQUIRE
                          STATES UNITED DEMOCRACY CENTER
13                        1101 17TH STREET NW
                          WASHINGTON DC 20036
14
15                        DAVID LOUK, ESQUIRE
                          COOLEY LLP
16                        3 EMBARCADERO CENTER, 20TH FLOOR
                          SAN FRANCISCO CA 94000
17
18                        BEN L. STOOL, ESQUIRE
                          CRIMINAL DISTRICT ATTORNEY'S OFFICE
19                        OF DALLAS COUNTY, TX
                          500 ELM STREET, SUITE 6300
20                        DALLAS TX 75202
21
22                        ANTHONY J. NELSON, ESQUIRE
                          TRAVIS COUNTY ATTORNEY'S OFFICE
23                        314 WEST 11TH STREET, ROOM 590
                          AUSTIN TX 78701
24
25
```

```
 1
 2                          LEIGH ANN TOGNETTI, ESQUIRE
                            HIDALGO COUNTY CRIMINAL DISTRICT ATTY
 3                          100 E. CANO
                            EDINBURG TX 78539
 4

 5                          LISA V. CUBRIEL, ESQUIRE
                            BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE
 6                          CIVIL DIVISION
                            101 W. NUEVA STREET, 7TH FLOOR
 7                          SAN ANTONIO TX 78205

 8

 9                          ERIC J.R. NICHOLS, ESQUIRE
                            BUTLER SNOW LLP
10                          1400 LAVACA STREET, SUITE 1000
                            AUSTIN TX 78701
11

12                          JONATHAN GABRIEL CHAIM FOMBONNE, ESQ
                            SAMEER SINGH BIRRING, ESQUIRE
13                          HARRIS COUNTY ATTORNEY'S OFFICE
                            1019 CONGRESS, 15TH FLOOR
14                          HOUSTON TX 77002

15

16

17

18

19

20   REPORTED BY:           GIGI SIMCOX, RMR, CRR
                            OFFICIAL COURT REPORTER
21                          UNITED STATES DISTRICT COURT
                            SAN ANTONIO, TEXAS
22

23

24

25
```

1    (*San Antonio, Texas; March 7, 2023, at 4:00 p.m., in open*
2    *court and Zoom videoconference.)*
3         THE COURT:  Let's call La Union del Pueblo Entero
4    versus Gregg Abbott, 21 civil 844.
5         Who do we have for the plaintiffs?
6         MISS PERALES:  For LUPE plaintiffs, Your Honor, Nina
7    Perales.  And with me today in the courtroom, Samantha Selma
8    [phonetic], Julia Longoria, Fatima Menendez, and Kenneth
9    Parreno.
10        THE COURT:  Thank you.
11        Anyone else, appearances?
12        MISS YUN:  Jennifer Yun for the United States.
13        THE COURT:  Anyone else?
14        MR. DOLLING:  Zachary Dolling on behalf of the OCA
15   plaintiffs.
16        THE COURT:  And for the State?
17        MR. HILTON:  Good afternoon, Your Honor, Chris Hilton
18   from the Attorney General's Office for the State defendants.
19   There may be some other AG folks on Zoom, but I'll be the only
20   one speaking today.
21        THE COURT:  Who is representing the Harris County
22   Republican Party?
23        MR. HILTON:  That's John Gore.
24        MR. GORE:  Good afternoon, Your Honor.
25        THE COURT:  Mr. Gore, okay.

1          And do we have anyone else on the line representing

2   any of the other defendants?

3          MISS EISNER:  Good afternoon, Your Honor, Marina

4   Eisner representing El Paso County Elections Administrator

5   Lisa Wise from State's United Democracy Center.

6          THE COURT:  Thank you.

7          MR. LOUK:  David Louk from Cooley LLP also

8   representing defendant Wise from El Paso County.

9          THE COURT:  Thank you.

10          MR. STOOL:  Your Honor, this is Ben Stool from Dallas

11   County representing the Dallas County Elections Administrator

12   and the Dallas County District Attorney.

13          THE COURT:  Thank you.

14          So we are here on —

15          MR. NELSON:  Your Honor —

16          THE COURT:  Yes.

17          MR. NELSON:  I'm sorry.

18          Tony Nelson, Assistant Travis County Attorney for the

19   Travis County District Attorney and Travis County Clerk.

20          THE COURT:  Thank you.  Sorry, so the way it is being

21   displayed, I can't see that there's more people on the Zoom.

22          MISS TOGNETTI:  Also, Leigh Ann Tognetti from the

23   Hidalgo County District Attorney's Office representing the

24   Hidalgo County Election Administrator Hilda Salinas.

25          THE COURT:  Thank you.

1          Anybody else out there?  No one else.

2          MISS CUBRIEL:  Your Honor, Lisa Cubriel.

3          THE COURT:  Thank you; for Bexar County.

4          MISS CUBRIEL:  I'm here on — yes, Your Honor.  I

5 injured my ankle or I would have been there in person.

6          THE COURT:  Thank you.  You didn't have much of a

7 walk to go.

8          MR. NICHOLS:  Your Honor, Eric Nichols.  We're not

9 involved in the dispute today, but I represent the Harris

10 County District Attorney's Office.

11          THE COURT:  Thank you.  Okay.

12          MR. BIRRING:  Your Honor, Sameer Birring is here for

13 the Harris County Attorney's Office for the Harris County

14 Elections Administrator.  I believe Jonathan Fombonne is also

15 online from the Harris County Attorney's Office.

16          MR. FOMBONNE:  Yes, Your Honor, I'm here.

17          THE COURT:  Okay.  So we have two matters here, a

18 motion to compel regarding documents that Mr. Vera may or may

19 not have, and a deposition that took place, and then a motion

20 to clarify the scheduling order.

21          So first thing, let's take up the Vera deposition.

22          Who served as Mr. Vera's attorney during that

23 deposition?

24          MISS PERALES:  Your Honor, that counsel is named

25 Mr. Andy Taylor.

1          THE COURT:  Mr. Gore, is Mr. Taylor co-counsel with

2    you, or how does that work?

3          MR. GORE:  Mr. Taylor is not co-counsel with us.  I

4    represent the Harris County Republican Party and the other

5    intervenor defendant and Mr. Taylor represents Mr. Vera.

6          THE COURT:  So which attorney from either the

7    intervenor, the State defendants, or Mr. Taylor asserted the

8    legislative privilege?

9          MR. GORE:  The legislative privilege was asserted by

10   the State defendants during Mr. Vera's deposition.

11         THE COURT:  Mr. Hilton, were you the lawyer asserting

12   those privileges?

13         MR. HILTON:  Your Honor, I was not the attorney

14   asserting those privileges.  That was Mr. Will Wassdorf.

15         But just a point of clarification, the — we also

16   represent these legislators for many other purposes and

17   include some of them in this case, so the assertion of this

18   privilege, really more by the attorney than the State

19   defendant themselves.

20         We filed a brief shortly before the hearing today,

21   just to get something on file with —

22         THE COURT:  No, sir.  Wait a minute.  Let's wait

23   here.

24         So at the time of Mr. Vera's deposition, did any of

25   the individual legislators assert the privilege?

1          MR. HILTON:  I don't understand the question.  They

2   weren't at the deposition.

3          THE COURT:  No, sir.  So the question is real simple.

4          The legislative privilege is only to be asserted by a

5   legislator.  The question is which, if any, legislators

6   asserted that privilege during the time that Mr. Vera was

7   being deposed.

8          MR. HILTON:  If I understand your question, which of

9   those legislators had one of their attorneys there, you know,

10  asserting privilege exclusively on their behalf, then the

11  answer would be they did not have an attorney at the

12  deposition.

13         THE COURT:  So the answer is neither the legislator

14  nor any attorney representing a legislator invoked the

15  legislative privilege, is that correct?

16         MR. HILTON:  With the caveat that I provided earlier

17  that we do represent these legislators both in this and other

18  litigation for many purposes, but, yes, Mr. Wassdorf was there

19  as the attorney for the State defendants.

20         THE COURT:  For the State defendants, not the

21  legislators?

22         MR. HILTON:  Yes, Your Honor.

23         THE COURT:  So there was no meritorious invocation of

24  the legislative privilege for a variety of reasons.

25         I've already ruled on any number of occasions that

1  the privilege is only applicable to a legislator and that the

2  legislative privilege can be waived by third parties entering

3  into that relationship that only belongs between a legislator

4  and their staff member.

5        So Mr. Wassdorf, by invoking the legislative

6  privilege, was in violation of my previous orders asserting

7  groundless objections.  So the remedy for all of that is that

8  Mr. Vera will be redeposed.

9        He will be redeposed at the expense —— so now, I was

10  going to impose that upon the Harris Republican Party, but

11  since from what I understand the Harris Republican Party is

12  not responsible for these meritless objections, it was the

13  State defendants.  Cost of the second deposition of Mr. Vera

14  will be borne by the State of Texas Attorney General's Office.

15        In addition, any costs associated by the plaintiffs

16  in filing this motion to compel will be assessed against the

17  State defendants, as well as any cost of reasonable attorneys

18  fees for attendance of today's hearing.

19        Now let's talk about the documents that Mr. Vera or

20  the Harris County Republican Party should have tendered.

21        So, Mr. Gore, did you ever instruct Mr. Vera to

22  search for any documents that were responsive in Requests for

23  Productions 1 or 3?

24        MR. GORE:  Your Honor, we searched our files at the

25  Harris County Republican Party for documents responsive to

1  Request Numbers 1 and 3, including documents that would have

2  come from Mr. Vera.  That included emails that were sent by

3  Mr. Vera to legislators, many of which were produced.

4          On those emails when he reached out to legislators at

5  the initiative of the Harris County Republican Party or on his

6  own initiative, he copied or otherwise included members of the

7  Harris County Republican Party at their official email

8  accounts on those communications.

9          I just want to sharpen what the dispute is about here

10  in this particular motion.  There are two categories of

11  communications involving Mr. Vera, those that Mr. Vera

12  initiated with the legislature on behalf of the Harris County

13  Republican Party, and those that he sent to individual

14  legislators in response to their requests.

15         So we searched and located those emails that he had

16  sent on behalf of the Harris County Republican Party.  We

17  produced those and those were at issue and subject to his

18  testimony in the deposition.  He was asked about them.  He

19  gave answers about them.  We didn't object to him discussing

20  those.

21         And to the extent that those were emails that he

22  initiated and were not initiated by legislators, there was no

23  objection and he went ahead and he testified about those

24  particular documents.  So we've already produced those

25  documents.  We've allowed him to testify about those

1   documents.

2          So we did conduct a search for responsive documents,

3   not only emails but also hard copy documents.  There were no

4   responsive hard copy documents but we did search for those,

5   including those over which Mr. Vera would have been the

6   custodian.

7          THE COURT:  Okay.

8          MR. GORE:  So the dispute here ––

9          THE COURT:  So what I was going to say is –– so that

10  was helpful background.

11         Now, my understanding of the allegations in the

12  motion to compel are that Mr. Vera was acting as the agent for

13  the Harris County Republican Party in this SB 1 drafting

14  process and fielding questions on behalf of the Harris County

15  Republican Party to the legislators.  So he was acting as your

16  agent, is that true?

17         MR. GORE:  It's true in part.

18         THE COURT:  Okay.  Thank you.

19          (Crosstalk)

20         THE COURT:  This will go a lot faster if we just

21  answers questions that I have.

22         So he's acting as your agent and it's my

23  understanding that he's using his personal email address and

24  his personal computer because he doesn't have or hasn't been

25  given by the Harris County Republican Party one of its

1   computers or a Harris County Republican Party email address,

2   is that correct?

3          MR. GORE:  That is correct in part, yes.

4          THE COURT:  Okay.  "In part."  How can that be in

5   part?

6          MR. GORE:  Well, it is correct to the extent that he

7   is actually acting on behalf of the Harris County Republican

8   Party.  And when he sends emails on behalf of the Harris

9   County Republican Party, he copies the chair or other

10  individuals at their committee email addresses, and those are

11  the emails we searched for, collected, reviewed, and produced

12  to the plaintiffs.

13         THE COURT:  Now --

14         MR. GORE:  When the legislators are reaching out to

15  him separately from that, the Harris County Republican Party

16  is not involved in that.  Those legislators were reaching out

17  to him directly.  Harris County Republican Party was not an

18  intermediary for that, and so in those instances he's not

19  acting on behalf of the Harris County Republican Party when he

20  is fielding those questions and responding to questions to him

21  specifically.

22         THE COURT:  So how can you say, though -- so you put

23  him up as your agent, and so there's an agency when he sends

24  material, but you are claiming that there's no agency when the

25  legislators send him questions back?  How do you make this

1  artificial distinction about his role?

2      MR. GORE:  Because the questions back to him were not

3  tied to anything he had said on behalf of the Harris County

4  Republican Party.

5      THE COURT:  But the only reason that they are

6  approaching him is because you-all put him up in the first

7  instance.

8      MR. GORE:  I disagree, Your Honor.

9      Mr. Vera is a known activist and involved in voting

10 issues.  He's involved with other organizations such as the

11 Texas Election Network, which have no connection to the

12 Republican Party, and he advocates on their behalf.  He serves

13 on their board, all of which I understand he does from his

14 personal email.

15     I have to say, I don't represent Mr. Vera, but that's

16 my understanding as well, and so he has other functions and

17 other hats that he wears in this space that aren't necessarily

18 tied to —— or are not tied to the Harris County Republican

19 Party and aren't exclusively tied to the Harris County

20 Republican Party.

21     THE COURT:  So when you (inaudible) ——

22      *(Crosstalk)*

23     —— the custodian of records, did you make clear that

24 he was a custodian of records only sometimes and otherwise he

25 was not a custodian of records?

1          MR. GORE:  We made clear that we were searching

2    official committee email addresses ──

3          THE COURT:  No.  No.  No.  No.  No.  We're talking

4    apples and oranges now, Mr. Gore.

5          What I'm saying is ── or what I'm asking is, you

6    represented to the parties in this case in initial disclosures

7    or otherwise that Mr. Vera was an individual with knowledge of

8    relevant facts and that he was a custodian of records on

9    behalf of the Harris County Republican Party, did you not?

10         MR. GORE:  Yes, and all of those records ──

11         THE COURT:  And so stop.  Again, it will go a whole

12   lot easier if you just answer the questions that I have.

13         So in that representation, did you say he was only

14   acting in that capacity sometimes?

15         MR. GORE:  No, but we didn't have to say that because

16   when he does other things that aren't tied to the Harris

17   County Republican Party he's not a custodian of records for

18   the Harris County Republican Party.

19         (Crosstalk)

20         THE COURT:  If you insist on playing this game, I'll

21   play it too.

22         So with regard to the official agency capacity that

23   he's doing, my question to you is very direct.  Did you or

24   someone on behalf of the Harris County Republican Party search

25   his personal computer and personal email addresses for any

1  responsive documents to Requests for Production Numbers 1 or

2  3?

3          MR. GORE:  No, we searched official files and

4  committee email addresses, disclosed the scope of that search

5  to the plaintiffs —

6          THE COURT:  So without asking —

7          (Crosstalk)

8          THE COURT:  So without asking him to do that, you

9  made potentially an incomplete production, and so my question

10  to you is, you can't sit here as we talk and verify to the

11  parties and to the Court, pursuant to Rule 26(g), that you

12  made a complete and adequate review for responsive documents

13  because there could be documents that he was in his agency

14  capacity sending to these legislators that he didn't CC some

15  Harris County Republican Party official, and so there could be

16  potentially other documents, isn't that correct?

17          MR. GORE:  No, I don't believe that is correct

18  because we —

19          THE COURT:  How can you say that?

20          (Crosstalk)

21          MR. GORE:  — (inaudible) on behalf of the party.

22          Because when he did send anything on behalf of the

23  party, he copied officials at the Harris County Republican

24  Party and those documents have all been collected, searched,

25  reviewed, and produced and were discussed in his deposition.

1    THE COURT:  So but without a review of his computer

2  and email, you can't represent a full production was made

3  because there could be communications that he did without a CC

4  to somebody at the Harris County Office.  That is a

5  possibility that exists out there, is it not?

6    MR. GORE:  I don't see how that could be.  We have no

7  evidence that that ever happened.  What we have is him copying

8  people and we don't represent him in his personal capacity.

9    He has other associations, including attorney-client

10  relationships with his attorneys in other cases.  He's got an

11  association with an organization, at least one organization

12  that's not affiliated with the Harris County Republican Party.

13    So his personal email account is not within our

14  custody and control, particularly when he's acting as an agent

15  of the legislature and responding to legislative inquiries

16  that are directed at him.

17    Those inquiries were not directed at the Harris

18  County Republican Party.  They weren't directed at the chair.

19  They weren't directed at the party as an organization.  They

20  were directed as to Vera.  And when he acts in that capacity,

21  he's not acting in the capacity of the Harris County

22  Republican Party.  He's acting —

23    THE COURT:  In the 30(b)(6) deposition that was taken

24  of the Harris County Republican Party, your 30(b)(6)

25  representative stated that he was acting as your agent.

1          MR. GORE:  And he did act as our agent in --

2          THE COURT:  So if he was acting as your agent, why

3    didn't you have an obligation under Rule 26(g) to look at his

4    computer to ensure for yourself that all responsive documents,

5    even if you want to parse it the way you do, didn't you have a

6    responsibility to go through his computer to search for

7    responsive emails and other documents because he was your

8    agent?  Why didn't you -- even the way you are parsing it, why

9    didn't you do that?

10         MR. GORE:  Because such a search would not have been

11   reasonably calculated to discover discoverable information and

12   would have been unduly burdensome on the parties and on

13   Mr. Vera, because this is Mr. Vera's personal email that he

14   uses for a variety of functions that have nothing to do with

15   the Harris County Republican Party, and it is his practice to

16   share those official communications with members of the Harris

17   County Republican Party.  And in light of those facts, there

18   was no reason to go to Mr. Vera's personal email account and

19   try to find additional communications --

20         THE COURT:  Did you even ask him, can we do this, to

21   even get him to say that this would be intrusive on me?

22         MR. GORE:  We discussed it with Mr. Vera and he did

23   not want us to do it.

24         THE COURT:  And then why didn't you just, even if you

25   weren't going to make the inspection, why didn't you ask him

1  to self-collect?

2        MR. GORE:  Because the facts as we knew them showed

3  that that would be unreasonable and unduly burdensome in the

4  circumstances —

5        THE COURT:  So you produced 61 documents.  How would

6  that be unduly burdensome for him to self-collect whatever he

7  had?  If indeed you're correct and it's only 61 documents, how

8  is that unduly burdensome?

9        MR. GORE:  I don't know how many documents Mr. Vera

10  would have to search.  We produced 61 documents from our

11  files, but in terms of whether and what the search would

12  burden Mr. Vera to do and how he would disentangle email

13  communications that he initiated from those that he sent in

14  response to a legislative initiative, or initiation, which is

15  what the legislative privilege assertion was all about, that

16  was not possible for him necessarily to decouple.

17        Moreover, as I said, he's got mounds of personal

18  email on things that don't have anything to do with the Harris

19  County Republican Party, but that maybe on search terms that

20  are related to the plaintiffs' requests.

21        THE COURT:  The bottom line is no one even tried to

22  do so.  No one tried to do search terms.  No one did any kind

23  of attempt to see how burdensome, if any.  That's the bottom

24  line, isn't that true, Mr. Gore?

25        MR. GORE:  I think the bottom line is that we

1 | conducted a reasonable search of our files, produced
2 | documents, but didn't hear anything about Mr. Vera's personal
3 | email account until February 27th, which was four days before
4 | the close of discovery.

5 | THE COURT:  But you had an obligation.  You've had an
6 | obligation under Rule 26(g) to produce responsive documents
7 | and search for those, and if he was acting as your agent, as
8 | your 30(b)(6) representative states, then you failed in that
9 | obligation.

10 | MR. GORE:  Our obligation, Your Honor, was to conduct
11 | a reasonable search for responsive documents that was
12 | proportionate to the needs of the case and not unduly
13 | burdensome.

14 | THE COURT:  And the Court finds that you failed under
15 | Rule 26(g) to do that reasonable search.

16 | Now, with that, we are going to redepose Mr. Vera.
17 | He's not going to be able to assert any legislative privilege
18 | assertion.  The Court's already ruled I don't know how many
19 | times on that.  I'm not going to allow any further meritless
20 | objections to be lodged.

21 | He's to fully, and frankly, and honestly answer all
22 | questions posed to him in that regard between communications
23 | between him and the legislators.  Any lawyer and Mr. Vera who
24 | does assert that privilege, despite now my clear directions,
25 | will be held in contempt of court.

1          Now —

2          MR. HILTON:  Your Honor, may I address one more issue

3   related to that motion before we move on to the other matters?

4          THE COURT:  Yes.

5          MR. HILTON:  Thank you, Your Honor.

6          We'd be happy to do this in writing, if that would be

7   more convenient for the Court, but I thought I would at least

8   say now that we respectfully request that the Court move to

9   stay its ruling that it just made on this motion to compel.

10          THE COURT:  Denied.

11          MR. HILTON:  Thank you, Your Honor.

12          THE COURT:  So now, with that, I want to focus now on

13   what to do with Mr. Vera, in light of this hybrid role that

14   Mr. Gore is alleging he engages in.

15          Now, I will agree with Mr. Gore.  So I don't know who

16   Mr. Vera is, but if he's working for other clients on other

17   matters, then he shouldn't be required to produce something

18   like that, and so what's the plaintiffs' position on that?

19          Are you going to send him a subpoena, pursuant to a

20   third-party subpoena, or are you going to still demand a

21   ruling from this Court on whether or not the Harris County

22   Republican Party has possession, custody, or control regarding

23   his devices?

24          MISS PERALES:  Your Honor, we are happy to double up

25   with a subpoena, but what Mr. Gore is saying is not borne out

1  by Mr. Vera's testimony.  First of all, Mr. Vera doesn't have

2  any other clients; he's not an attorney.  Every time he

3  testified —

4          THE COURT:  Is he a lobbyist?

5          MISS PERALES:  He's a lobbyist for the Harris County

6  Republican Party.

7          THE COURT:  But does he have any other clients that

8  he's a lobbyist for?

9          MISS PERALES:  He did not testify that he did, or

10  given that the questioning was limited as to SB 1, he never

11  testified that he had any other person on whose behalf he was

12  interacting with the legislator.

13          This is a whole new thing that we are hearing today

14  and so I would ask the Court to make clear in its order that

15  unless there's a communication in which Mr. Vera made clear in

16  writing that he was interacting on behalf of somebody other

17  than the Harris County Republican Party that he should have to

18  produce it.

19          Every testimony — every time he testified — and

20  Mr. Gore is right, Mr. Vera testified many times and

21  interacted with the legislature many times on SB 1.  Every

22  time he signed up to register and testify, he did so on behalf

23  of the Harris County Republican Party Ballot Security

24  Committee, whether it was HB 6, SB 1, HB 3, or SB 7.  It was

25  always on behalf of the Harris County Republican Party.

1          Furthermore, Your Honor, I would ask the Court to

2     clarify its order that Mr. Gore and his counsel are not to

3     limit their documents.

4          THE COURT:  You are talking about Mr. Vera?

5          MISS PERALES:  I'm sorry.  That Mr. Vera should not

6     limit his document search to emails with the legislator in

7     which he CC'd party officials.  It is not the case that

8     Mr. Vera testified that he CC'd party officials when he

9     interacted with legislators.

10          In fact, he testified he interacted with legislators

11     many times and all we've received from Mr. Gore and his team

12     were less than seven documents.  That 61 mostly was

13     interaction with the Secretary of State.  With respect to

14     legislators, less than seven documents in the total production

15     in response to Request for Production Number 1, which

16     purported to represent their communications with legislators

17     on SB 1.

18          That's because they only produced what they found in

19     party, official party email addresses, so when the party chair

20     was CC'd.  But given Mr. Vera's testimony that he interacted

21     many times and used his personal email, with the very small

22     handful of documents that we received, we would not want the

23     Court's order to be understood that the search for documents

24     should only be those which Mr. Vera CC'd a party official

25     because we understand from his testimony he had a considerable

1   number of interactions which he did not CC party officials.

2           THE COURT:  Yeah.  No, the Request for Productions 1

3   and 3 doesn't say and limit the email communications or

4   documents were CC'd to anybody.  So the Requests for

5   Productions 1 and 3 are very clear.

6           And so Mr. Vera is ordered, upon penalty of contempt,

7   to produce any documents that he has — and so we can fight

8   about possession, custody, and control, and whether or not

9   this is a legal right jurisdiction, or this is a practical

10  ability jurisdiction, or whether or not this has to be done by

11  a third-party subpoena.

12          When you redepose him, the easiest way to tackle this

13  is just depose him in his individual capacity and require a

14  duces tecum for Requests of Productions 1 and 3.

15          And I expect Mr. Vera to search for documents

16  responsive to 1 and 3, regardless of whether they were CC'd to

17  party officials.  And if there's not a reasonable compliance,

18  pursuant to Rule 26(g) on that subpoena, I will issue sanction

19  orders against anybody and everybody responsible for the

20  failure to responsibly produce those documents.

21          This is my last warning to you-all.  I am tired of

22  this case coming up with these meritless objections, delays,

23  obfuscation.  This is just nonsense.  That's going to stop and

24  it's going to stop today.

25          And from here on out, lawyers and individuals will be

1  held in contempt of court for failure to abide by my orders.
2  I don't know how to make it any more direct than that.  And it
3  will go up the food chain, so you can tell that to your office
4  as well.
5          So that takes care of Vera.
6          The scheduling order.
7          So what I see is still much discovery left to do in
8  this case, and so how do we conduct the remaining discovery
9  and how do we do so in a manner that's as nonintrusive as
10 possible on the poor election officials that have been drug
11 into this thing?
12         Miss Perales.
13         MISS PERALES:  Your Honor, I believe Miss Yun is here
14 to speak on the parties' joint submission regarding the
15 schedule, if it's okay with the court.
16         THE COURT:  So you know, I'm not going to go into
17 this detail again about — because my observations about the
18 scheduling order; you-all agreed to that language.  That was
19 your language in the scheduling order.  And now both of
20 you-all, all of you-all, don't understand what you-all wrote
21 and you want me to rewrite it or clarify it.  I'm having none
22 of it.  I'm having none of it anymore.
23         This is going to be opened up for discovery for the
24 full gamut of relevant proportional discovery, whether it's
25 for primary information, for general election information.

1   I'm not going to play your games anymore.  I'm not going to

2   get drug into these fights anymore.

3           Now, I want to do this, though, in a way that's as

4   nonintrusive as possible on the election offices.

5           So how are we going forward?

6           MISS YUN:  Your Honor, Jennifer Yun, on behalf of the

7   United States.

8           So there are two live issues here, and, one, whether

9   relevant materials that were created or published or disclosed

10  after the primary election discovery period are discoverable

11  during this discovery period.

12          THE COURT:  So I'm telling you it is.  So what I'm

13  asking of you-all is how much more time do you need?  Where do

14  you need this stuff from?  And how are we going to make this

15  as unobtrusive upon the election officials?

16          MISS YUN:  Yes, Your Honor.

17          The parties have been engaging in good faith

18  negotiations to make sure that we are able to complete

19  discovery as expeditiously as possible.

20          And in terms of the county depositions, we have met

21  with the El Paso County counsel as well as the Harris County

22  counsel in order to obviate any need for this Court's

23  intervention.

24          I'm happy to let the counties speak for themselves,

25  but that part of the motion for clarification I believe does

1   not require the Court's intervention.

2          And we have also engaged in extensive meet and

3   confers with the State defendants in order to complete

4   depositions of newly disclosed witnesses into April.  That

5   agreement, I do not believe, is fully agreed upon but we are

6   negotiating that in order to not involve the Court's — in

7   order to not ask for the Court's intervention.

8          THE COURT:  So all these depositions, especially of

9   the election officials, I want to focus on them because they

10  are getting drug into this.

11         So how many times have they already been deposed?

12  What kind of new questions do you have for them that you need

13  and do they have to take?

14         And you-all seem to be fighting over hours and

15  minutes that people need to be deposed.  Again, I'm here to

16  tell you-all, I'm sick and tired of this.  I am not going to

17  be intervening in all this little minutia that good lawyers —

18  and there are good lawyers in this case — should resolve.

19         And so let's backtrack a little bit.  Why do you need

20  these election officials to be deposed yet again?

21         MISS YUN:  Your Honor, just to clarify, are you

22  asking about the Secretary of State's officials?

23         THE COURT:  No, I don't care about them.  I'm worried

24  about Bexar County, Harris County, El Paso, everybody else on

25  the Zoom, why are we —

1          MISS EISNER:  Apologies, Your Honor.  I can speak for

2    the El Paso Elections Administrator and the deposition issue.

3          We have reached agreement on that issue, and so we're

4    prepared to file a stipulation.  We were just making sure

5    everybody was going to sign on, but we had a meet and confer

6    and we have agreed to both the breadth and scope of the

7    deposition.  So I think we can take that off the table.

8          THE COURT:  Who else from an elections office thinks

9    they need relief here?

10          MR. FOMBONNE:  Judge, Jonathan Fombonne from the

11    Harris County Attorney's Office for the Harris County

12    Elections Administrator.

13          I don't think we need relief.  I sent an email

14    yesterday to all the counsel in this case asking for

15    confirmation of what I think is our understanding about the

16    Harris County Elections Administrator's 30(b)(6) deposition.

17          I have only received confirmation from one of the

18    plaintiffs' counsel and nobody else.  If folks would be

19    willing to respond to that email, I think we have an agreement

20    and we don't need the Court's intervention.

21          THE COURT:  Is everybody on board now with Harris

22    County or not?  So instead of nods, I want a yes or a no.

23          MISS YUN:  The United States is okay with Harris

24    County, our negotiation with Harris County and agreement with

25    Harris County.

1          MR. DOLLING:  OCA plaintiffs agree with the agreement

2     that Harris County sent out in the email a few days ago.

3          MISS PERALES:  Same for the LUPE plaintiffs, Your

4     Honor.

5          THE COURT:  I think you have relief, Harris County.

6          MR. FOMBONNE:  Thank you.

7          THE COURT:  Anybody else?

8          MR. NELSON:  Yes, Your Honor.

9          With respect to Travis County — and again this is

10    Tony Nelson, Assistant Travis County Attorney — we spoke with

11    counsel for the consolidated plaintiffs who had issued a

12    subpoena for a second 30(b)(6) deposition of the Travis County

13    Clerk's Office and counsel agreed that we would revisit those

14    issues following the outcome of this hearing, that it would

15    make more sense to do so.

16         We have not spoken again on that today but I would

17    presume that we should be able to work something out that

18    would be along the same lines as what has been agreed to with

19    respect to El Paso and Harris County.

20         THE COURT:  Thank you.

21         Any other counties?

22         So with regard to the depositions of any county

23    officials, you know, I expect it just to be relevant,

24    nonredundant, and as unobtrusive as possible.

25         Now, once we get all those depositions finished, how

1   much more do we have?  Who else is left?

2           MISS YUN:  We have two depositions scheduled with the

3   Secretary of State's Office for next week, and then there are

4   also various newly disclosed witnesses that will be deposed

5   but we are in the middle of negotiating those out-of-time

6   depositions with the State, but we do not —

7           THE COURT:  Well, now that I'm vacating the

8   scheduling order they are not out of time.  So then what I'm

9   hearing is there's a lot of work left to do, is what I'm

10  hearing.

11          MISS YUN:  Your Honor, we believe the agreement is

12  not — we have not fully agreed yet but we believe that we can

13  finish all depositions by April 7th.  That is the date that we

14  have been discussing with all the parties thus far.  It is not

15  yet finalized.

16          THE COURT:  And let me stop there.

17          The State, do you have anymore discovery to do, or

18  are you done?

19          MR. HILTON:  We do have some discovery to do.  I

20  think, as Miss Yun mentioned, we are going to work out the

21  issues we have with respect to newly disclosed witnesses and

22  I'm certain that whatever issue arises with anything we need

23  from the counties, we will be able to work that out as well.

24          You know, with the Court's ruling with respect to the

25  scope of the discovery, which was one of the two issues teed

1 up in the joint motion, that's what gives me pause about

2 questioning whether we can actually deal with it in the time

3 frame that we've been discussing.

4        THE COURT:  I'm going to vacate the current

5 scheduling order.

6        So what I'm hearing is I'm going to turn over to you

7 to come up with a new scheduling order, but again, I'm not

8 going to go into the trap of the tiering and the phasing that

9 you-all did that fell apart.  We are just going to have a

10 deadline for completion of discovery.

11        And then we are going to have a deadline for — I'm

12 assuming there's going to be — what we are all aiming for is

13 either cross-motions for summary judgment or trial, are we

14 not?

15        And so I don't know how, with the current scheduling

16 order, which is why I'm vacating it, we are ever going to get

17 to timely cross-motions for summary judgment being filed,

18 responded to, replied, and being ruled upon.  The time lines

19 now are completely untenable, in light of all the discovery

20 fights.

21        So I'm going to put the onus on you.  I'm going to

22 have my clerk, law clerk, send to you-all what I want down as

23 a new scheduling order.  And you-all are going to meet and

24 confer and fill in the blanks for the deadlines.

25        If you can't submit to me an agreed new scheduling

1    order, then you're going to submit to me on a party basis what
2    you think the scheduling order should be, and then I will just
3    be forced to fill in the blanks for you—all if you can't reach
4    resolution on that.
5           Now, where are we headed with this case?  Is it going
6    to be resolved one way or the other on cross-motions for
7    summary judgment?  Does it make sense to even have
8    cross-motions for summary judgment, or do we just, in lieu of
9    the tedium and expense and everything else of cross-motions
10   for summary judgment, have a bench trial?
11          What's the plaintiffs' position on that?
12          MISS YUN:  Your Honor, the United States does not
13   believe any summary judgment deadlines or the trial, pretrial
14   deadlines need to be moved at this time.
15          And we believe that —
16          THE COURT:  Well, I've already said otherwise, so
17   move on to what I was asking.
18          MISS YUN:  We believe that dispositive motions will
19   be helpful and that we hope to resolve at least some of the
20   claims before trial through dispositive motions.
21          MR. HILTON:  I would generally agree with that, Your
22   Honor.  I can't imagine that the entire case will be disposed
23   of before trial, just given the scope of it, but I think that
24   certainly some of the issues could be narrowed on dispositive
25   motion briefing.

1   THE COURT:  So we have cross—motions for summary

2   judgment, one way or the other the issues get disposed of

3   maybe in part and so the remainder is a bench trial?

4   MR. HILTON:  I think that's right, Your Honor, from

5   the State's perspective.

6   MISS YUN:  We agree, Your Honor.

7   THE COURT:  And then in light of some parties have

8   been dropping like flies here, and so I'm assuming does that

9   mean some of the issues have been narrowed, or not, or are we

10  just losing parties?

11  MISS PERALES:  I don't speak for all consolidated

12  plaintiffs but I will say, Your Honor, that from time to time

13  a party finds itself unable to proceed because of the burdens

14  of litigation.  The changes in the parties that are

15  participating have not narrowed the issues before the Court.

16  THE COURT:  And so as I'm thinking out loud on all of

17  this, one thing that will not be included in the new

18  scheduling order is a new amendment of pleadings.  We are

19  staying put on what's been pled to date.  We are not opening

20  up this file anymore.

21  Okay.  With all that said then, what else do we need

22  to talk about today, Miss Perales, or from the U.S.

23  Government?  I don't care who goes first.

24  MISS YUN:  Your Honor, there is one issue in the

25  motion for clarification regarding the two depositions that we

1    noticed with regards to the Secretary of State's Office.

2            We believe that the default federal rule of seven

3    hours per deposition should apply to those two depositions.

4    The State defendants do not agree, so we were hoping to raise

5    that.

6            THE COURT:  And so why should there be preemptive

7    limits?

8            MR. HILTON:  It's two depositions of the same witness

9    who has already been deposed twice before.  They are unwilling

10   to concede that it can be limited to anything less than the

11   full 14 hours for both his individual and 30(b)(6) capacity.

12   We've proposed nine hours spread over those two depositions.

13           I understand the Court's position on relative burdens

14   on the State versus the county defendants, but the fact of the

15   matter is this witness, Mr. Ingram, is incredibly busy helping

16   those counties try to run their elections, and so -- and we

17   think we have proposed a reasonable alternative, but, you

18   know, that's for the Court to decide whether you want to weigh

19   into that or not.

20           THE COURT:  So these other depositions that he's

21   given, has it been in this case or other cases?

22           MR. HILTON:  In this case, Your Honor, in addition to

23   many depositions in many other cases.  He sometimes feels like

24   he gets deposed more than he actually works his job, but

25   that's obviously not the Court's problem, but these would be

1  his third and fourth depositions in this case.

2          THE COURT:  So how is it that nine hours is not

3  enough?

4          MISS YUN:  Your Honor, while Mr. Ingram may be the

5  State's only 30(b)(6) witness, we actually do not know that

6  that is to be the case so we do not want to preemptively limit

7  the amount of time that we have across those two depositions.

8          Of course, we are going to be very respectful of

9  Mr. Ingram's time and want to be as efficient as possible.  We

10  were not saying that we have to take 14 hours.  It is just

11  that we do not know how long it will take and that a

12  preemptive limit is not warranted here.

13          THE COURT:  So with regard to Mr. Ingram, it's

14  limited to nine hours of Mr. Ingram.

15          However, in the event in his 30(b)(6) capacity

16  Mr. Ingram is unable to answer some question, that nine-hour

17  limit will not apply to any additional 30(b)(6) representative

18  that the State may need to proffer to answer questions that

19  Mr. Ingram is unable to answer.

20          MISS YUN:  Thank you.

21          THE COURT:  What else do we need to take up?

22          So you win one today.

23          MR. HILTON:  Thank you, Your Honor.

24          MR. STOOL:  Judge, this is Ben Stool from Dallas

25  County, Texas.

1        THE COURT:  Yes, sir.

2        MR. STOOL:  If I may ask as a point of clarification,

3   in the Court's vacating the current scheduling order, which I

4   take it to be ECF 437, is the Court opening up the county

5   defendants to newly served written discovery from the other

6   parties?  Because it's essentially closed at this point.

7        THE COURT:  So, yeah, thank you for that very good

8   question.

9        When I was talking out loud I was thinking about,

10  with the exception of Mr. Vera, that we have document

11  problems, and I guess we still have document problems from the

12  State that the Fifth Circuit — is the Fifth Circuit ever

13  going to rule?  Have they had a hearing?  They have had a

14  hearing.

15        MR. HILTON:  On the legislative privilege issue, Your

16  Honor, they have had argument.  It's been fully submitted for

17  months, as I understand it.

18        MISS PERALES:  Since August, Your Honor.

19        MR. HILTON:  So we are all waiting eagerly.

20        THE COURT:  They had oral argument in August?

21        MISS PERALES:  Yes, Your Honor.  They held oral

22  argument in August.

23        THE COURT:  Wow.

24        MISS PERALES:  August 2nd.

25        MR. HILTON:  And just to clarify, because they

1    haven't ruled, that's why we have — you know, I previously
2    moved the Court to stay its ruling with respect to the motion
3    to compel.  So we are waiting for the Fifth Circuit.
4            THE COURT:  Again, now the reason I'm cutting it this
5    way is the State has a different argument on the legislative
6    privilege.
7            Their argument, and unless you've argued it
8    differently upstairs, which you have done, and so somehow or
9    another arguments not presented to me get to go to the Fifth
10   Circuit somehow and get ruled on, despite me never having the
11   opportunity in the first instance, but your argument before me
12   was the fact that a document is actually seen, smelled,
13   whiffed by, opened by a legislator, made it subject to the
14   legislative privilege.
15           The reason the legislative privilege does not apply
16   to Mr. Vera is, one, it hasn't been asserted to by any
17   legislator; two, these are broken by waiver because Mr. Vera
18   is not a staffer employed by that legislator and the
19   legislative privilege applies only to the legislator staff
20   relationship.  And so just like any other attorney-client
21   document, once you start showing documents to third parties
22   that's been waived.
23           So the arguments here are completely different than
24   the arguments advanced to me on the legislative privilege.
25           And again, if Mr. Vera does not produce and not talk

1    about all of this, heads will roll.

2             MR. HILTON:  I certainly understand the Court's

3    ruling in that regard, you know, and we'll take whatever

4    appropriate action we think we need to take with respect to

5    that.

6             THE COURT:  It's called more delay in discovery of

7    this case.

8             MR. HILTON:  Well, I would just add that on appeal my

9    understanding is that there are also individual legislators

10   who have consolidated appeals who have, you know, slightly

11   different arguments.  So with respect to legislative

12   privilege, there's a lot that we are waiting on, but

13   regardless, we understand the Court's ruling.

14            THE COURT:  So let's go back to Mr. Stool's excellent

15   question.

16            I was thinking that there was going to be depositions

17   of these individuals but no longer anymore — now, apart from

18   the State, I'm talking about burdens on the county election

19   officials.  I was under the impression that this was just

20   depositions, not placing additional discovery production

21   burdens on any county election officials, or are you thinking

22   otherwise?

23            MISS PERALES:  Your Honor, there is current discovery

24   outstanding.  Because of the Court's current scheduling order,

25   there is discovery that has been served on counties.

1          And in fact, Mr. Stool and I are setting up a meet

2    and confer about document production from Dallas County before

3    the deadline, which is 30 days out from when we served it, and

4    within the Court's now vacated scheduling order.

5          So I would only want to make clear that if Mr. Stool

6    is asking as to newly propounded discovery versus that

7    discovery that we are still waiting to come in from the

8    counties.

9          THE COURT:  So, Mr. Stool, with regard to the request

10   for production that has been currently propounded upon your

11   office or other offices, are you objecting to producing the

12   current request?

13         MR. STOOL:  Not all of it, Your Honor.

14         There's — we — Miss Perales and I do have — we are

15   going to set up a meet and confer about the specifics of it

16   because Dallas County had been relying on the Court's previous

17   amended scheduling order and its limitation on the scope of

18   the discovery to the November 2022 general election that

19   was — your previous order had been very clear that —

20         THE COURT:  Yeah.  Well, that part, Mr. Stool, I'm

21   vacating.

22         MR. STOOL:  I understand that, so I will certainly,

23   we will take that into account when Miss Perales and I meet

24   and confer about that.  So, no, we just — I mostly wanted to

25   make sure we are not going to being subject to anymore written

1  discovery requests from the parties.

2          THE COURT:  I got you.

3          So with regard to the county election officials, any

4  request for production that have been currently propounded and

5  outstanding, the parties are to — well, the plaintiffs and

6  the county officials are to meet and confer about any

7  objections, burdensome, oppressive kind of arguments and try

8  to reach resolution.

9          But in an effort to protect the county election

10 officials from any further discovery, the new scheduling order

11 that will be entered will not permit the additional

12 propounding of discovery on the county election officials

13 unless it's acquiesced to and agreed to by that county office.

14         Does that make sense?

15         MISS YUN:  Yes, Your Honor.

16         MR. STOOL:  Yes, sir.

17         MR. HILTON:  Apologies for being the slowest one in

18 the room.  I just want to clarify, you know, your ruling with

19 respect to the scope of discovery.

20         I understand it with respect to the private—party

21 plaintiffs, the United States, and with the State.  You are

22 removing any scope limitations for the new discovery period?

23         THE COURT:  Well, it still has to be relevant.  It

24 still has to be proportional.  And it's got to be

25 nonprivileged.

1          MR. HILTON:  Of course.  Does that ruling not apply
2     to the county defendants, or does that ruling also apply to
3     the county defendants?
4          And the reason I ask is that the currently, you know,
5     currently propounded discovery we all issued under the
6     assumption that the scope of discovery — you know, the old
7     scope of discovery applied.  I could foresee a situation where
8     the Court has incomplete information if the scope is not the
9     same and we don't have the ability to address that.
10          Maybe I'm getting too hypothetical with it but that
11     was my question.
12          THE COURT:  Well, my understanding of what's been
13     going on with that scope is that there's arguments that — and
14     I'm not saying that they are correct — but the arguments are
15     that the State has not fully complied or it's delayed
16     production, and so it's all still hanging out there.
17          And so I don't want to be dealing with what was in
18     scope, what was out of scope.  Scope is 26(b)(1), relevant,
19     proportional, and nonprivileged.  And so I don't want to deal
20     with your fights.
21          MR. HILTON:  Understood.
22          THE COURT:  Anything else we need to take up today?
23          MISS YUN:  Your Honor, will the Court set a deadline
24     for the joint scheduling proposal that we are supposed to
25     submit?

1        THE COURT:  You will have 14 days.  My law clerk will

2   get it out to you today or tomorrow and you have 14 days from

3   receipt of that email to either get me an agreed to or

4   individual submissions.

5        MISS YUN:  Thank you, Your Honor.

6        THE COURT:  Anything else we need to do today?

7        MISS PERALES:  Not for plaintiffs, Your Honor.

8        MR. HILTON:  Nothing from the State, Your Honor.

9        THE COURT:  So I sure hope we don't have anymore

10   discovery fights because I'll be mad.

11        You know, the last time we were here regarding the

12   Harris County Republican Party, Mr. Vera -- I don't remember

13   who the lawyer was here.  I guess it was Mr. Gore.  My

14   question or comment, "Okay.  So then I'm hearing from you" --

15   this is all back in what?  November '22?  Yeah.  November

16   14th.

17        "Okay.  So then I'm hearing from you that you are

18   going to produce all documents responsive to Request for

19   Production Number 1 without objection and without any

20   assertion of privileges by December 1, is that what I'm

21   hearing?"  "Yes, Your Honor."

22        And then after we had discussions about the

23   similarity between Number 1 and Number 3, I said, "So I expect

24   Number 3 is going to be fully complied with by December 1,"

25   and we didn't get any of this slicing and dicing legislative

1  privilege.

2       And so after 20 years on the bench, I guess you just

3  get a smell test about who is not playing well in the sandbox,

4  and so whoever doesn't play well in the sandbox next time will

5  find themselves in deeper trouble than being deprived recess.

6       We're adjourned.

7    *(Concludes proceedings)*

8                          -o0o-

9    I certify that the foregoing is a correct transcript from

10  the record of proceedings in the above-entitled matter.  I

11  further certify that the transcript fees and format comply

12  with those prescribed by the Court and the Judicial Conference

13  of the United States.

14

15  Date:  03/10/23          /s/  *Gigi Simcox*
                             United States Court Reporter
16                           262 West Nueve Street
                             San Antonio TX 78207
17                           Telephone:  (210)244-5037

18

19

20

21

22

23

24

25