```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                       SAN ANTONIO DIVISION

 3
      LA UNION DEL PUEBLO ENTERO,     .
 4    ET AL,                          .
                                      .
 5                 PLAINTIFFS,        .
            vs.                       . DOCKET NO. 5:21-CV-844-XR
 6                                    .
      GREGORY W. ABBOTT, ET AL,       .
 7                                    .
                   DEFENDANTS.        .
 8

 9

10         TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
           BEFORE THE HONORABLE XAVIER RODRIGUEZ
11                UNITED STATES DISTRICT JUDGE
                         MAY 16, 2023
12

13

14

15    APPEARANCES:
      FOR THE PLAINTIFFS:     NINA PERALES, ESQUIRE
16                            FATIMA L. MENENDEZ, ESQUIRE
                              JULIA LONGORIA, ESQUIRE
17                            KENNETH PARRENO, ESQUIRE
                              MALDEF
18                            100 BROADWAY STREET, #300
                              SAN ANTONIO TX 78205
19

20                            MARK BIETER, ESQUIRE
                              STOEL RIVES LLP
21                            101 S. CAPITOL BLVD, SUITE 1900
                              BOISE ID 83702
22

23                            JENNIFER HOLMES, ESQUIRE
                              NAACP LEGAL DEFENSE & EDUCATIONAL
24                            FUND INC
                              700 14TH STREET, SUITE 600
25                            WASHINGTON DC 20005
```

```
 1
 2                         ELENA RODRIGUEZ ARMENTA, ESQUIRE
                           ELIAS LAW GROUP LLP
 3                         250 MASSACHUSETTS AVENUE NW, SUITE 400
                           WASHINGTON DC 20001
 4
 5                         ZACHARY DOLLING, ESQUIRE
                           TEXAS CIVIL RIGHTS PROJECT
 6                         1405 MONTOPOLIS DRIVE
                           AUSTIN TX 78741
 7
 8                         MARINA EISNER, ESQUIRE
                           STATES UNITED DEMOCRACY CENTER
 9                         1101 17TH STREET NW
                           WASHINGTON DC 20036
10
11                         COURTNEY M. HOSTETLER, ESQUIRE
                           FREE SPEECH FOR PEOPLE
12                         1320 CENTRE STREET, #405
                           NEWTON MA 02459
13
14                         DANIEL JOSHUA FREEMAN, ESQUIRE
                           U.S. DEPARTMENT OF JUSTICE
15                         950 PENNSYLVANIA AVENUE
                           4CON 8.143
16                         WASHINGTON DC 20530
17
18                         RICHARD A. DELLHEIM, ESQUIRE
                           U.S. DEPARTMENT OF JUSTICE
19                         VOTING SECTION
                           950 PENNSYLVANIA AVENUE, NW
20                         7254-NWB
                           WASHINGTON DC 20530
21
22  FOR THE DEFENDANTS:    CHRISTOPHER D. HILTON, ESQUIRE
                           KATHLEEN HUNKER, ESQUIRE
23                         TEXAS ATTORNEY GENERAL
                           P.O. BOX 12548
24                         MC 009
                           AUSTIN TX 78711
25
```

```
 1

 2                         JOHN GORE, ESQUIRE
                           JONES DAY
 3                         51 LOUISIANA AVENUE NW
                           WASHINGTON DC 20001
 4

 5                         CORY REN LIU, ESQUIRE
                           BUTLER SNOW LLP
 6                         1400 LAVACA STREET, SUITE 1000
                           AUSTIN TX 78701
 7

 8                         LISA V. CUBRIEL, ESQUIRE
                           BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE
 9                         CIVIL DIVISION
                           101 W. NUEVA, 7TH FLOOR
10                         SAN ANTONIO TX 78205

11

12                         ANTHONY J. NELSON, ESQUIRE
                           TRAVIS COUNTY ATTORNEY'S OFFICE
13                         314 WEST 11TH STREET, ROOM 590
                           AUSTIN TX 78701
14

15                         TIFFANY SUE BINGHAM, ESQUIRE
                           HARRIS COUNTY ATTORNEY'S OFFICE
16                         1019 CONGRESS, 15TH FLOOR
                           HOUSTON TX 77002
17

18

19

20   REPORTED BY:          GIGI SIMCOX, RMR, CRR
                           OFFICIAL COURT REPORTER
21                         UNITED STATES DISTRICT COURT
                           SAN ANTONIO, TEXAS
22

23

24

25
```

1    *(San Antonio, Texas; May 16, 2023, at 9:00 a.m., in open*
2    *court and Zoom videoconference.)*
3          THE COURT:  Let's call 21 civil 844, LUPE versus
4    Abbott.
5          Who do we have for the plaintiffs?
6          MISS PERALES:  Good morning, Your Honor.  Nina
7    Perales for plaintiffs LUPE, et al.  With me today are Fatima
8    Menendez, Julia Longoria, Kenneth Parreno, and a flock of law
9    student interns.
10          THE COURT:  Thank you.
11          And for the defendants.
12          MR. HILTON:  Good morning, Your Honor.  Chris Hilton
13    and Kathleen Hunker for the State defendants.
14          MISS CUBRIEL:  Lisa Cubriel on behalf of the Bexar
15    County Elections Administrator and Bexar County District
16    Attorney.
17          MR. LIU:  Cory Liu on behalf of the Harris County
18    District Attorney.
19          THE COURT:  Do we have anybody online?
20          MR. FREEMAN:  Your Honor, Dan Freeman on behalf of
21    the United States and with me is Richard Dellheim as well.
22          THE COURT:  Thank you.
23          MISS HOLMES:  Good morning, Your Honor, Jennifer
24    Holmes on behalf of the HUL plaintiffs, the Houston Area Urban
25    League plaintiffs.

```
 1              MR. DOLLING:  Zachary Dolling on behalf of the OCA
 2  plaintiffs.
 3              UNIDENTIFIED FEMALE SPEAKER:  (Inaudible) on behalf
 4  of the Hidalgo County Elections Administrator.
 5              THE COURT:  Thank you.
 6              MISS RODRIGUEZ:  Elena Rodriguez on behalf of the
 7  LULAC plaintiffs, Your Honor, good morning.
 8              THE COURT:  Morning.
 9              MISS HOSTETLER:  Good morning, Your Honor.  Courtney
10  Hostetler on behalf of Mi Familia Vota plaintiffs.
11              THE COURT:  Morning.
12              Anyone else?
13              MR. BIETER:  Good morning, Your Honor.  This is Mark
14  Bieter on behalf of the Mi Familia Vota plaintiff.
15              THE COURT:  Thank you.
16              Anyone else?
17              MISS EISNER:  Good morning, Your Honor.  Marina
18  Eisner on behalf of El Paso County Elections Administrator
19  Lisa Wise.
20              THE COURT:  Thank you.
21              Anyone else?
22              MR. NELSON:  Good morning, Your Honor.  Tony Nelson
23  on behalf of Travis County District Attorney Jose Garza and
24  Travis County Clerk Limon.  Thank you.
25              THE COURT:  Thank you.
```

1           Anyone else?

2           MR. GORE:  Good morning, Your Honor.  John Gore for

3    intervenor defendant.

4           THE COURT:  Thank you.

5           And anyone else?

6           MISS BINGHAM:  Good morning, Your Honor, Tiffany

7    Bingham for the Harris County Elections Administrator.

8           THE COURT:  Thank you.

9           So I thought I was going to bring you-all together

10   here because I'm frankly surprised by how long the appeals are

11   taking.  I mean, I have no inside knowledge here but here's

12   what I think may happen that we have to be prepared for.

13          So I'm not sure which way this is going to come out

14   upstairs, but let's assume that I get affirmed.  Well, in that

15   event, though, we still have to do further discovery and

16   that's going to be problematic for the timetable, assuming

17   there's not a request to have the entire matter heard en banc

18   which then further places a stay on all of this.

19          And I could see that possibility happening, or the

20   other possibility is I get reversed and there's still a

21   request for an en banc, which still has us all pending and

22   waiting.

23          So I'm open to suggestions but what I wanted to offer

24   to you-all right now is this suggestion.  Is there anyway we

25   can go forward on any claims regarding impact that doesn't

1   require the intent portion to be resolved at this stage?

2          That way, we at least get going forward on something

3   rather than nothing.  And so that's my initial thought but I

4   want your opinions on that or any other better opinion that

5   you-all can come up with.

6          MR. FREEMAN:  Your Honor, again, Dan Freeman on

7   behalf of the United States.

8          The United States believes that its claims under

9   Section 101, the Civil Rights Act of 1964, can go forward as

10  scheduled on September 11th.

11         Those claims do not require intent evidence.  It is

12  a, on its face, a racial neutral statute and so there's no

13  need for the type of discovery that is currently pending in

14  the Fifth Circuit and both United States and the OCA of

15  Greater Houston plaintiffs have taken the position that we can

16  move forward with that stand-alone claim on the 11th.

17         MISS PERALES:  Your Honor, in addition, as the Court

18  will see in the joint advisory which is Docket 594, the

19  parties are prepared to move forward with the

20  September 11th trial date if it comes to pass that we are able

21  to receive the documents by that time.

22         THE COURT:  But so I'm operating under the worst-case

23  scenario, that you're not going to get documents on time.  So

24  I mean, the worst — I mean, the best outcome is we get a

25  ruling tomorrow.  It affirms me.  No one appeals.  There's no

1    motions for reconsideration and we all go forward with this

2    current trial date.

3            I'm anticipating the worst.  Either an affirmance or

4    a reversal of me, I'm still planning even on just — this is

5    highly unusual.  And again, I'm not privy to any insider

6    knowledge but I just have to assume that there's an internal

7    fight within that panel which means that there's going to be

8    perhaps a request for an en banc, so I'm assuming worst-case

9    scenario.

10           MISS PERALES:  Understood, Your Honor.

11           In lieu of filing an advisory with the Court we did

12   want to provide, and if I might hand to the clerk, a recent

13   panel decision in the *Jackson Municipal Airport* case regarding

14   similar issues.  I'll bring a second copy for the Court.

15           THE COURT:  What did they do?

16           MISS PERALES:  Your Honor, they ruled that there was

17   jurisdiction on an appeal, which is one of the issues that is

18   present in our appeals as well, and then ruled that some of

19   the documents were privileged that were shared by third-party

20   legislators with lobbyists, and so there have been three 28(j)

21   letters filed in the Fifth Circuit so far by folks that are in

22   this case and we wanted to make sure that the Court understood

23   that this was happening as well in this, both in the appeal,

24   *LULAC versus Hughes*, as well as the decision in the *Jackson*

25   *Municipal Airport* case.

1          THE COURT:  And so I haven't had a chance to look at
2    this *Jackson* case, but how similar was this in procedural
3    posture, because in our cases it's my interpretation that the
4    State defendants waived any kind of argument of privilege
5    because the posture they did this is they didn't assert the
6    privilege until after my rulings.
7          So is that the same posture as this case or not?
8          MISS PERALES:  No, it's not, Your Honor.
9          THE COURT:  So that throws another little loop into
10   this.
11         MISS PERALES:  Yes.
12         MR. HILTON:  Your Honor, if I could just add to the
13   discussion of *Jackson*.  We agree this is an important case and
14   I think it makes sense for us to provide you with all the
15   28(j) letters that were recently filed, I think just as late
16   as yesterday.  So we'll certainly get those to the Court.
17         You know, I think Miss Perales and I will disagree as
18   to the extent of *Jackson* but certainly it implicates some
19   aspects of the Court's rulings with respect to sharing
20   documents with third parties, the effect of that on any sort
21   of legislative privilege claim and jurisdictional issues that
22   are squarely at issue at the appeal, so it does further
23   complicate all the issues that are on appeal from this case.
24         I'd also like to note that the other parties to these
25   appeals in their 28(j) letters have noted that the Fifth

1 Circuit should send these issues back down to this Court for a

2 determination as to issues like waiver, whether a privilege

3 log should be provided or updated or whatever, and then make

4 another ruling on those issues and then that would --

5             THE COURT:  For that to go back up.

6             MR. HILTON:  To go back up on appeal which the Fifth

7 Circuit said there is jurisdiction to do.

8             So however one reads the *Jackson* case, and I think

9 it's a set of multiple fair readings as are pointed out in the

10 28(j) letters that we'll provide, there's no way in which it

11 makes things simpler.  It absolutely is going to complicate

12 and I think further delay.

13             THE COURT:  So I didn't know any of this before I

14 took the bench.  Is my initial gut reaction correct then that

15 we should try to go forward on impact claims?

16             MR. HILTON:  Your Honor, that's an interesting

17 thought and we haven't actually thought about the possibility

18 of splitting claims.  When we conferred and we put together

19 the joint status report, we were really thinking about it in

20 terms of everything or you know delay the whole thing, but

21 what we would like to see more than anything is certainty

22 coming out of today's ruling, either we're going to go to --

23 as far as -- certainty as far as what we're going to do with

24 the scheduling.

25             THE COURT:  Thank you for that clarification

1  because --

2          MR. HILTON:  Perhaps that's the only certainty we can

3  aspire to, Your Honor, but you know what we would like to see

4  happen is to keep the trial date, let's just go forward.

5          Nobody has ever gone to trial with all the documents

6  and all the testimony that they felt like they wanted to go to

7  trial with in any case.  I don't think this case will be any

8  different.

9          And in our view, you know, all of these legislative

10  privilege issues have been nothing but a wild goose chase.  We

11  don't think any of that material is going to move the needle

12  for this Court in any significant way.

13          But if we're not going to keep the trial date, what

14  we would suggest is that, you know, let's actually solve the

15  problem here which is we don't know what the Fifth Circuit is

16  going to do and when they are going to do it, let's let --

17  let's structure the schedule in such a way that we are waiting

18  for the Fifth Circuit and we get final clarity on those

19  issues.  Let's stay these deadlines and not try to put another

20  date on the calendar until we actually know what we're going

21  to be dealing with on these legislative privilege issues.

22          With respect to whether we can go forward on intent

23  versus just the effects claims --

24          THE COURT:  The opposite.

25          MR. HILTON:  I'm sorry?

1          THE COURT:  Just the opposite.

2          MR. HILTON:  Right.

3          THE COURT:  Whether we can go forward on —

4          MR. HILTON:  Right.  Excuse me.  Yes.  Yes.  Of

5   course, whether we can go forward on some but not all of the

6   claims.

7          There are, you know, kind of obvious issues about

8   inconvenience to parties, particularly the county defendants

9   and other defendants that the Court has been extremely

10  concerned about the impact on them, particularly while they

11  are trying to, you know, conduct elections in the State of

12  Texas.  There is no way that doesn't increase the burdens on

13  other defendants in this case that as the Court has noted are

14  kind of getting dragged into this.

15         You know, duplication of effort, and cost, and

16  expense and all those things are also obvious, but, you know,

17  another important point that's our initial reaction to that is

18  we have multiple types of claims on the same provisions of the

19  law at issue so we would be trying an intent claim at one time

20  and an effects claim at another time on the exact same

21  statutory provision and there's no way that we can kind of

22  cleanly separate those two when we are talking about the

23  same — you know, when we are talking about the same statutory

24  language.

25         There's going to necessarily be some duplication of

1  effort, some overlap, possibility for inconsistent rulings,

2  administrability issues.

3           So again, Your Honor, I apologize.  We haven't given

4  that specific scenario further thought but it's going to have

5  a lot of practical problems.  It's going to have a lot of real

6  world costs, particularly on folks like the county defendants

7  and third-party witnesses, in addition to, you know, attorney

8  time, the Court's time, duplication of efforts and all those

9  things.

10          MR. FREEMAN:  Your Honor, I would just note that to

11 the extent trial was pushed back on the Section 101 claims

12 significantly it's likely that the State could argue that

13 things have changed, that things have gotten better and it

14 will eventually necessitate new document discovery, new

15 analysis of election records, and expert discovery, and

16 potentially new depositions as well to the extent that the

17 State seeks to argue things have improved, they have gotten

18 used to it, they have learned, and so it's not clear to at

19 least from where we sit that pushing back resolution of the

20 Section 101 claim would reduce the burden on all the third

21 parties in the litigation.

22          More the point, it would increase the burden on the

23 voters, the voters who have been disenfranchised by the mail

24 ballot provisions of SB 1.  Over 10,000 ballots.  There's no

25 dispute over 10,000 ballots have been discarded as a result of

1   this law and the longer that resolution of our claim is pushed

2   back, the more voters will be disenfranchised unlawfully as a

3   result.

4         MR. HILTON:  Your Honor, we agree to the extent that

5   Mr. Freeman is saying we should go to trial on the date that's

6   been set.  We agree with that.

7         We want to go to trial on all claims on the schedule

8   that the Court has set, but if that's not going to be possible

9   then severing claims and whatnot, all the duplication of

10  effort, all the expense, all the inconvenience on the

11  officials who are actually running the elections, that's not

12  going to help voters either.

13        And I think it is worth acknowledging again that this

14  is really a situation not of any of our making.  It's really

15  the Fifth Circuit's making in its delays here as far as why

16  it's causing these scheduling issues now, but, you know, even

17  before I came into the case we've had similar questions,

18  similar status conferences where we have to re-examine the

19  schedule and readjust it because of these legislative issues.

20        I've only been in the case as lead counsel for a few

21  months.  This is only the second such hearing that we are

22  having.  It strikes me that we either need to go to trial on

23  the date set and just accept that not all documents will be in

24  front of the Court that every party wishes they would have,

25  which is true of every trial that I've ever been a part of

1  certainly, or we should actually address the problem which is

2  we need to wait for the Fifth Circuit to resolve these issues

3  and it is not the fault necessarily anyone in this room that

4  the Fifth Circuit is taking the time that it's taking.

5          There's just nothing that any of us can do about it

6  and it does not make sense, I think, for anyone involved in

7  the case, including the Court, to go through the effort of

8  preparing a trial, going through all that expense, having

9  mentioned the fact that, you know, if we prepare a case for

10 trial there's another ruling from the Fifth Circuit, we have

11 to readjust the schedule, reopen discovery, what have you.

12         That's now additional attorneys fees that ultimately

13 plaintiffs, if they prevail, are going to seek from us and

14 that's cost ultimately borne by the taxpayers.

15         So there's just a lot of reasons from our perspective

16 why we should either pick a date and stick to it knowing we're

17 not going to have anything, or let's actually solve the

18 problem by just saying that we are going to wait for the Fifth

19 Circuit to resolve these issues knowing that we're not in

20 control of how long that takes.

21         MISS PERALES:  With respect to Your Honor's question,

22 the Department of Justice, or the United States, is prepared

23 to move forward with trial on their Section 101 claim, which

24 my best understanding is, is shared by one other set of

25 plaintiffs, and that's the OCA.

1    THE COURT:  Thank you for anticipating my question.
2    And who would that be?
3    MISS PERALES:  That would be the Organization of
4    Chinese Americans, OCA plaintiffs.  Mr. Dolling is here for
5    them.
6    With respect to whether there are other claims that
7    could be tried on September 11th that go to disparate impact,
8    I don't think the private plaintiffs have had a chance to
9    confer among themselves about that but if the Court would like
10   a filing on that, you know, quickly, we could do that for you.
11   THE COURT:  So let me try to make sure I understand
12   what the state's position is and their opposition to this.
13   If we had this next trial date limited to the DOJ 101
14   claims and whatever other claims the parties all agree to not
15   require evidence of intent to be resolved, what would that
16   trial look like?  Who would be the parties?  Who would have to
17   be at this party and who would have to be at this party twice?
18   MR. FREEMAN:  On the 101 claim it would be the United
19   States, the OCA plaintiffs, and the states, and likely the
20   defendant intervenors —— or intervenor defendants.  Some
21   county officials would likely be called as witnesses, not
22   necessarily all of them.  It would be testimony from state
23   officials, impacted voters, and the like.
24   MR. DOLLING:  The Harris County Elections
25   Administrator and Travis County Clerk would certainly be

1   involved since they are defendants to the OCA plaintiffs.

2           THE COURT:  And so the burdensome on them would be

3   just appearing as a witness as they would be in any other

4   case?

5           MR. FREEMAN:  Yes, Your Honor.

6           THE COURT:  How that is overly burdensome?

7           MR. HILTON:  Well, it wouldn't be just appearing as a

8   witness as counsel has said.  They would be appearing as

9   parties, as defendants.

10          Their lawyers would have to prepare, all the things

11  that that takes for a public office to get prepared for trial.

12  It's more than just a couple of witnesses and a couple of

13  attorneys showing up for a trial.  There's a lot that goes

14  into it from just a public sector side, what an office needs

15  to get prepared for a trial.

16          I'll let them speak to those burdens.  I think they

17  are the appropriate parties to speak to that.

18          Of course, there would also be experts involved, and

19  you know, we would have to just kind of fundamentally rethink

20  about how we've been preparing this case for trial, not that

21  we wouldn't necessarily have time to do that but it would

22  result in a huge amount of duplication of effort of what we've

23  already done up to this point because we're now we are

24  planning for a fundamentally different trial.  Then we also

25  have to a plan for a second phase of trial.

1          It's an incredibly increased amount of work from an
2   attorney's perspective and I think ultimately from the Court's
3   perspective as well because we're going to come up across a
4   lot of issues that we can't anticipate thinking about here in
5   court today when we try to bifurcate the case in this way just
6   because of the number of parties, the number of claims, and
7   the interrelatedness of all of the evidence, all of the facts.
8          THE COURT:  It could be a learning experience for us
9   all.
10         MR. HILTON:  It could be certainly, but an expensive
11  one and a burdensome one.
12         I would also — you know, thinking out loud about how
13  can we continue to make progress on this case in light of what
14  we're dealing with, with the Fifth Circuit, you know, I'll
15  allow Mr. Freeman to characterize his own claims but I think
16  from our perspective they are much more, you know, legal than
17  factual.
18         Certainly there are some factual issues at play but
19  there are issues of law that the Court is going to have to
20  decide.  We could make progress in that regard via summary
21  judgment motion or partial summary judgment motion to get some
22  clarity on those issues while we are waiting for the, you
23  know, factual trial to get teed up.
24         Again, our preference is to go forward as scheduled.
25  You know, for all of these reasons we just want this case to

1  be over with and we want to try it and move on.

2          THE COURT:  Well, I understand the State wants it all

3  to be over with but it's not going to be all over with.

4          And so, you know, here's my problem with that.  Okay,

5  let's assume all those boxes that I reviewed in camera, let's

6  assume just for argument's sake that you're right.  It's not

7  going to tip anything one way or the other, but I can't say

8  the same thing about what unknown information is in the

9  possession of — I'm sorry.  I'm already forgetting names.

10  I'm in the middle of trial and I've got other things on my

11  mind — the person from Harris County Republican Party.

12          MR. HILTON:  Mr. Alan Vera.  And unfortunately, Your

13  Honor, Mr. Vera has passed away quite recently.

14          THE COURT:  The drafter of all this stuff has passed

15  away?

16          MR. HILTON:  Mr. Alan Vera, yes, Your Honor.

17          MISS PERALES:  Yes, Your Honor.

18          The main lobbyist for the Harris County Republican

19  Party has passed away recently.  There were documents

20  identified that have not yet been produced and those were

21  documents between Mr. Vera and legislators.

22          THE COURT:  Right.  So the point I was going to make

23  is I have no — let's assume for argument's sake that those

24  five or six or seven very large boxes I've reviewed won't tip

25  the scale much.  I can't say the same thing about what was in

1 the possession of Mr. Vera and what he passed on to those two

2 if not more legislators.

3        So, I mean, that's extremely prejudicial to the

4 plaintiffs and so, you know, it's easy to say, well, we all

5 don't go to trial with everything we want but for them to get

6 nothing until such time as I get reversed doesn't seem

7 appropriate.

8        MR. HILTON:  And, Your Honor, we just may disagree on

9 that point.  In our view the whole legislative privilege issue

10 and this kind of evidence has been a wild goose chase that is

11 not bearing any fruit for anyone.

12        THE COURT:  Well, then turn over the stuff.  It's

13 real easy for you to cure that.  All you have to do is turn it

14 all over.

15        MR. HILTON:  It's not my privilege to waive.

16        THE COURT:  Well, and I don't think it was asserted

17 in the first place.  So we just have a disagreement.

18        MR. HILTON:  We have many disagreements and this is

19 why we're in the difficult situation and we have to wait for

20 the Fifth Circuit to resolve them.

21        THE COURT:  Before I recognize you, let me turn to

22 Travis and Harris County.

23        Who is where?  Anybody here from Travis?

24        MR. NELSON:  Yes, Your Honor, Tony Nelson for

25 Travis County.

1      We will agree that this does place Travis County in a

2 very difficult position with the uncertainty as to the trial

3 date and preparation for the trial and splitting the causes of

4 action and would certainly like to have certainty in the path

5 forward.

6      THE COURT:  So, Mr. Nelson, let me ask you this.  How

7 unduly burdensome would it be for Travis County if we did

8 this, first we bifurcate and we have this first trial

9 dedicated to the Department of Justice Section 101 claims and

10 whatever claims OCA have, how burdensome would it be for

11 you-all to potentially appear at two points in time, one in

12 the first bifurcated matter, and then potentially a second

13 time?

14      MR. NELSON:  Well, Your Honor, quite frankly, that's

15 not something I had anticipated and would need to be able to

16 visit with our clients about that to be able to speak to that,

17 but it's not something —

18      THE COURT:  That's fair enough.

19      What about Houston or Harris County?  What do you-all

20 have to say?

21      MISS BINGHAM:  Harris County would neither want to

22 delay the plaintiffs' claims nor prejudice the plaintiffs'

23 claims in terms of their access to documents and so we are

24 willing to work with the plaintiffs and the State to

25 accommodate the plaintiffs' desires in terms of going to trial

1   more quickly, even if that requires two.

2        I too would need to confer with my client but I'm

3   certain that we can work out things in terms of the dates that

4   our election administrator might have to be present to

5   testify, things like that, and so as long as the parties are

6   willing to work with us I'm sure we'll be available and

7   cooperative, Your Honor.

8        MR. LIU:  Just on behalf of the district attorney,

9   one thing to draw to the Court's attention is we do have our

10  interlocutory appeal on sovereign immunity which is pending.

11       It did get scheduled for oral argument the second

12  week of July so we do anticipate arguing at least there and,

13  you know, we'll see what the reception of the panel there is,

14  but that's at least a potential ground for just removing us

15  from the case entirely.

16       As for, you know, splitting versus doing it once, I

17  think, you know, we certainly will talk to the client to kind

18  of -- to do whatever the Court requires but I think at least

19  having them altogether at once would certainly, you know,

20  reduce some burdens in terms of preparation.

21       THE COURT:  Yeah, everybody agrees with that.  It's

22  just it doesn't appear that we're going to get there anytime

23  soon.

24       MR. FREEMAN:  Your Honor, I would just note that the

25  district attorney evidence that they may offer in the district

1    attorney's role as a defendant doesn't come into play with

2    respect to the Section 101 claim and the United States would

3    do whatever we can in order to minimize the burden on whatever

4    county election officials would appear for trial and we're

5    happy to work with the counties on dates and whatever other

6    logistical questions they may have.

7           One other thing I may note is that as county

8    defendants have proliferated in voting cases across the

9    country they have not necessarily filed proposed findings of

10   fact, conclusions of law, the type of documents to which the

11   State was referring when talking about a public official

12   serving as a defendant in a case.

13          It's sort of a hybrid role and it's not quite the

14   same level of burden that you would have as a defendant going

15   to trial twice.

16          THE COURT:  Yeah.

17          MISS RODRIGUEZ:  Your Honor, if I may, Elena

18   Rodriguez Armenta for the LULAC plaintiffs.

19          As parties to the currently pending legislative

20   appeal, first of all, I want to thank the counties, especially

21   Harris County, for their willingness to accommodate and not

22   wanting to prejudice our claims.

23          We, back to your Court's original proposal, would be

24   not opposed to moving forward on all our claims except for the

25   intent claims, if the Court was open to it, which might

1  perhaps be a middle ground there.

2         As Miss Perales notes, we have not discussed this

3  internally as plaintiffs, but might, you know, be a way of

4  further accommodating and lessoning the burden on the counties

5  if we were to keep a September 11th trial date, move forward

6  on everything but the intent claims, and then discuss a

7  bifurcation or a phase two of the remaining claims which

8  might — you know, will probably be more limited if they were

9  just limited to the intent claims following whatever

10  resolution of the pending legislative privilege appeals,

11  whichever way they go, Your Honor.

12         So I wanted to put that on the table for the Court's

13  consideration and for possible future discussion.

14         THE COURT:  Thank you.

15         Okay.  So my first initial reaction would be let

16  you—all talk a little bit and talk with clients.

17         You want certainty.  I guess I'm just going to give

18  you certainty.

19         If I wait for one whole package deal to come out, we

20  may be waiting for another year or two.  I mean, I see motions

21  for en banc, reconsideration, you bring the possibility that I

22  didn't even think of that this might actually get remanded

23  back to me and then back up for another appeal, and so I

24  see — I don't see a wait that's justifiable at this point in

25  time when I can at least address the impact claims.

1          So the order is that we will go forward on a

2    bifurcated basis.  We will have the impact claims asserted by

3    the DOJ under Section 101 and the claims under — brought by

4    OCA as they relate to impact.

5          I've not gone through everybody else's pleadings so

6    what I'd like is an advisory and potentially joint advisory by

7    everybody indicating everybody's agreement on what impact

8    claims can be heard in this first bifurcated portion.

9          And then to relieve any kind of burden, I'm not going

10   to require anybody to file proposed findings of fact and

11   conclusions of law.  That will relieve some of the burden.

12         Frankly, you know, things change and so they are of

13   little value pretrial anyway.  So no one will file proposed

14   findings of fact and conclusions of law and I'll only offer

15   that opportunity post-trial for everybody to submit what they

16   believe is the appropriate findings of fact and conclusions of

17   law that the Court should render.

18         Any improvements to what I just said?

19         MR. FREEMAN:  Certainly not improvements, Your Honor,

20   but this Court has stayed summary judgment deadlines.  To the

21   extent that parties think that issues are potentially subject

22   to narrowing, when would this Court like the new summary

23   judgment deadline to be?  The parties have proposed May 26th.

24         THE COURT:  If you can meet a May 26th deadline, I'm

25   fine with that.

1      MR. HILTON:  Your Honor, again, this was just not an
2  outcome that we envisioned, not a possibility that we
3  considered.  My preference, as I stand here right now, my
4  colleagues agree with me, would be just to continue the stay
5  of all deadlines temporarily until we can all discuss with our
6  clients and confer with each other.
7      You know, it is easy to say a distinction between
8  intent and effect claims.  I think there may be some disputes
9  as to that and exactly what that looks like could affect what
10 we want to do on summary judgment.
11      THE COURT:  So that's why I wanted this advisory.
12 And so, you know, my general — you got me rethinking this
13 order now because my general gut reaction would be to have
14 you-all meet and confer.
15      Miss Perales.
16      MISS PERALES:  Your Honor, the State defendants, as
17 well as everybody else, have signed an advisory that the Court
18 has before it that was just filed on May 8th saying that
19 May 26th is an appropriate deadline for summary judgment
20 motions.  I don't think that it's helpful for anybody to start
21 backtracking from that.
22      THE COURT:  Well, we are opening everything up again.
23      Can you meet a May 26th or not?
24      MR. HILTON:  We'll meet whatever deadline the Court
25 requires but given what we are going to do in bifurcating

1  these claims, again, I just — we're going to have disputes
2  about what's properly to be tried and what isn't and that's
3  going to affect the summary judgment motions we want to bring
4  before the Court to potentially narrow the issues for a
5  bifurcated trial.
6      THE COURT:  What about this?  I mean, so why should
7  you be expending time and effort for summary judgment filings
8  that don't — I mean, limit your summary judgment filings just
9  to the impact type of claims.  Why file these things on intent
10 claims that's going to require me just to say, hey, no, we're
11 still waiting on the Fifth Circuit?
12     MR. HILTON:  That's what I anticipate we would do.
13 That absolutely makes intuitive sense to me, but again,
14 standing here right now — of course we'll abide by whatever
15 agreement.  Miss Perales is right, of course we did agree to
16 that deadline, but that was under the assumption that I think
17 we all shared that we, you know, we just didn't discuss the
18 possibility of a bifurcated trial.  I think maybe the
19 plaintiffs did but we certainly didn't.
20     So, you know, we will abide by that deadline if
21 that's what the Court prefers.  I certainly anticipate this
22 will narrow what we may file but without the opportunity to
23 confer with clients and the full team about that, my
24 preference would be to continue the stay at least for a short
25 period of time.

1          MR. FREEMAN:  And, Your Honor, our interest is in

2    ensuring that you have the opportunity to address any summary

3    judgment motions that are filed prior to trial and so we just

4    want to get the summary judgment process started sooner rather

5    than later and to set internal deadlines under a schedule that

6    will work for the Court.  So we proposed some internal

7    deadlines but we certainly want to know from the Court what

8    will work for Your Honor so we can get these issues resolved

9    and potentially —

10          THE COURT:  Let me make sure I understand what we are

11   now fighting about.  Are we anticipating filing motions on all

12   the other claims at this point in time without this discovery

13   dispute being resolved by the Fifth Circuit?

14          MR. HILTON:  I can't — if we're going to delay a

15   trial in the impact claims, it seems to me that — on the

16   intent claims, excuse me — then I don't think any of us would

17   be filing intent based summary judgment motions.  That's what

18   I understand the Court to be saying, we want to go forward

19   with what we can and focus only on that.

20          THE COURT:  That's what I'm thinking.

21          MR. HILTON:  So that makes sense to me.

22          And I certainly agree with Mr. Freeman that let's

23   just do what works for the Court, and I certainly agree that

24   we want to make sure the Court has ample time to, you know,

25   consider these summary judgment motions.

1          Perhaps another way to ensure that the Court has
2   ample time, in addition to your order that we're not going to
3   do pretrial findings of fact and conclusions of law, we would
4   also suggest that perhaps we could just forego pretrial
5   *Daubert* motions.
6          THE COURT:  I'm sorry.  I missed that.
7          MR. HILTON:  I would suggest that perhaps we could
8   forego pretrial *Daubert* motions on the experts, allow the
9   parties to just raise those objections on cross-examination
10  without waiving any of their rights.
11         Every bench trial I've ever been a part of the judge
12  wants to see the experts live before they make such a
13  determination and without a jury there's no reason why a court
14  wouldn't be able to do that.
15         So that could again alleviate the burden, allow us a
16  little more time on summary judgment and still allow
17  everything to be heard timely by the Court.
18         MR. FREEMAN:  The United States does not intend to
19  file --
20         MISS RODRIGUEZ:  Your Honor, excuse me --
21         THE COURT:  One second, Miss Rodriguez.
22         MISS RODRIGUEZ:  Go ahead, Mr. Freeman.
23         MR. FREEMAN:  The United States does not intend to
24  file *Daubert* motions in this matter.  As Mr. Hilton said, it's
25  a bench trial, but I believe some of the other plaintiffs may.

```
 1          THE COURT:  Miss Rodriguez.
 2          MISS RODRIGUEZ:  Sorry, Your Honor.  I just wanted to
 3  know, and perhaps this might give us all a little more
 4  breathing room, but baked into the same joint advisory that
 5  has a May 26th proposed deadline, the plaintiffs also proposed
 6  that the deadline could be postponed one week for the filing
 7  of dispositive and Daubert motions to June 2nd with
 8  oppositions coming in June 30th and replies coming in
 9  July 21st, if the Court had any sort of uncertainty about a
10  fixed trial date.
11          So that also, one-week extension for each filing
12  deadline, might be what we're looking for.
13          I can't quite see in the courtroom, but —
14          MR. FREEMAN:  Your Honor, I'll note that that
15  proposal was only if the Court was not moving forward with the
16  September 11th trial date and was not agreed to by all
17  parties.
18          THE COURT:  The date you-all did agree to was
19  May 29th?
20          MISS PERALES:  May 26th, Your Honor.
21          THE COURT:  26th, okay.
22          Okay.  Here's the ruling.  Again, we are going to
23  have a bifurcated trial.  We are going to have this first
24  phase dedicated to the Department of Justice Section 101
25  claims and any claims brought by OCA and any other parties
```

1  regarding impact that don't go to intent claims.

2          The parties are to file, hopefully, a joint advisory

3  to me by May 26th indicating which claims will be heard at

4  this first phase and noting any disagreement.  Once I receive

5  that then I'll just make a ruling on which claims will go

6  forward on this first phase of the trial.

7          Any motions for summary judgment regarding impact

8  claims must be filed no later than May 26th.  And then

9  whatever you-all agree to as reply briefs and response briefs,

10  these deadlines will be applicable.

11          The Court will not entertain any *Daubert* motions for

12  this first phase.  The Court will not require any findings of

13  fact and conclusions of law to be filed in advance.  And the

14  Court will not entertain any motions for summary judgment on

15  any intent matters.

16          Was that clear from the plaintiffs?

17          MR. FREEMAN:  Yes, Your Honor.

18          THE COURT:  From the defendants?

19          MR. HILTON:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MISS HOLMES:  If I may, Your Honor.

22          THE COURT:  Yes, ma'am.

23          MISS HOLMES:  In your order, Number 579, the earlier

24  scheduling order, there were pretrial deadlines that we did

25  not address in our joint advisory.  Are those pretrial

1  deadlines still in place?

2          THE COURT:  At some point I'm going to turn to

3  you-all to work out the nitty-gritty.  You-all work that out.

4  If you can't reach an agreement, submit something to me in

5  writing.

6          MISS HOLMES:  Thank you, Your Honor.

7          MR. LIU:  And just to clarify, as Mr. Freeman said,

8  that doesn't implicate the Harris County District Attorney for

9  that particular claim, so summary judgment deadlines for other

10  matters would still be stayed until --

11          THE COURT:  Right.  Summary judgment matters as to

12  any intent claims are all stayed and we will entertain those

13  at a later date, if and when we ever get to phase two.

14          Anybody else online want to say something?

15          MISS RODRIGUEZ:  No.  Thank you, Your Honor.

16          THE COURT:  I hear nothing.

17          Okay.  Back to my other trial.  Thank you all.  I

18  appreciate your presence here.

19      *(Concludes proceedings)*

20

21

22

23

24

25

33

—o0o—

      I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.  I
further certify that the transcript fees and format comply
with those prescribed by the Court and the Judicial Conference
of the United States.


Date:  05/22/23              /s/  *Gigi Simcox*
                             United States Court Reporter
                             262 West Nueve Street
                             San Antonio TX 78207
                             Telephone:  (210)244-5037