# EXHIBIT 1



STATE'S
EXHIBIT
7

Chapter 1

S.B. No. 1

1                              AN ACT

2 relating   to   election   integrity   and   security,   including   by

3 preventing   fraud   in   the   conduct   of   elections   in   this   state;

4 increasing criminal penalties; creating criminal offenses.

5       BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6                    ARTICLE 1.  GENERAL PROVISIONS

7       SECTION 1.01.   SHORT TITLE.   This Act may be cited as the

8 Election Integrity Protection Act of 2021.

9       SECTION 1.02.   PURPOSE.   The purpose of this Act is to

10 exercise the legislature's constitutional authority under Section

11 4, Article VI, Texas Constitution, to make all laws necessary to

12 detect and punish fraud.

13       SECTION 1.03.   FINDINGS. The legislature finds that:

14             (1)   full,   free,   and   fair   elections   are   the

15 underpinnings of a stable constitutional democracy;

16             (2)   fraud in elections threatens the stability of a

17 constitutional democracy by undermining public confidence in the

18 legitimacy of public officers chosen by election;

19             (3)   reforms are needed to the election laws of this

20 state to ensure that fraud does not undermine the public confidence

21 in the electoral process;

22             (4)   the reforms to the election laws of this state made

23 by this Act are not intended to impair the right of free suffrage

24 guaranteed to the people of Texas by the United States and Texas

S.B. No. 1

1  Constitutions, but are enacted solely to prevent fraud in the
2  electoral process and ensure that all legally cast ballots are
3  counted.  Integral to the right to vote is the assurance of voter
4  access and the right for all votes legally cast to be counted;

5        (5)  additionally, preventing a valid vote from being
6  counted violates the basic constitutional rights guaranteed to each
7  citizen by the United States Constitution; and

8        (6)  providing for voter access and increasing the
9  stability of a constitutional democracy ensures public confidence
10  in the legitimacy of public officers chosen by election.

11       SECTION 1.04.  Chapter 1, Election Code, is amended by
12  adding Section 1.0015 to read as follows:

13       Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the
14  legislature that the application of this code and the conduct of
15  elections be uniform and consistent throughout this state to reduce
16  the likelihood of fraud in the conduct of elections, protect the
17  secrecy of the ballot, promote voter access, and ensure that all
18  legally cast ballots are counted.

19       SECTION 1.05.  Section 1.003, Election Code, is amended by
20  adding Subsection (a-1) to read as follows:

21       (a-1)  Election officials and other public officials shall
22  strictly construe the provisions of this code to effect the intent
23  of the legislature under Section 1.0015.

24       SECTION 1.06.  Section 1.005, Election Code, is amended by
25  amending Subdivision (4-a) and adding Subdivision (4-b) to read as
26  follows:

27       (4-a)  "Election official" means:

| 1 | (A) a county clerk; |
| 2 | (B) a permanent or temporary deputy county clerk; |
| 3 | (C) an elections administrator; |
| 4 | (D) a permanent or temporary employee of an |
| 5 | elections administrator; |
| 6 | (E) an election judge; |
| 7 | (F) an alternate election judge; |
| 8 | (G) an early voting clerk; |
| 9 | (H) a deputy early voting clerk; |
| 10 | (I) an election clerk; |
| 11 | (J) the presiding judge of an early voting ballot |
| 12 | board; |
| 13 | (K) the alternate presiding judge of an early |
| 14 | voting ballot board; |
| 15 | (L) a member of an early voting ballot board; |
| 16 | (M) the chair of a signature verification |
| 17 | committee; |
| 18 | (N) the vice chair of a signature verification |
| 19 | committee; |
| 20 | (O) a member of a signature verification |
| 21 | committee; |
| 22 | (P) the presiding judge of a central counting |
| 23 | station; |
| 24 | (Q) the alternate presiding judge of a central |
| 25 | counting station; |
| 26 | (R) a central counting station manager; |
| 27 | (S) a central counting station clerk; |

3

1          (T)  a tabulation supervisor;

2          (U)  an assistant to a tabulation supervisor; and

3          (V)  a chair of a county political party holding a

4    primary election or a runoff primary election.

5          (4-b)  "Federal judge" means:

6          (A)  a judge, former judge, or retired judge of a

7    United States court of appeals;

8          (B)  a judge, former judge, or retired judge of a

9    United States district court;

10          (C)  a judge, former judge, or retired judge of a

11   United States bankruptcy court; or

12          (D)  a magistrate judge, former magistrate judge,

13   or retired magistrate judge of a United States district court.

14         SECTION 1.07.  Section 1.018, Election Code, is amended to

15   read as follows:

16         Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to

17   Section 1.03, Penal Code, and to other titles of the Penal Code that

18   may apply to this code, Titles 2 and [Title] 4, Penal Code, apply

19   [applies] to offenses prescribed by this code.

20         SECTION 1.08.  Chapter 1, Election Code, is amended by

21   adding Section 1.022 to read as follows:

22         Sec. 1.022.  REASONABLE ACCOMMODATION OR MODIFICATION.  A

23   provision of this code may not be interpreted to prohibit or limit

24   the right of a qualified individual with a disability from

25   requesting a reasonable accommodation or modification to any

26   election standard, practice, or procedure mandated by law or rule

27   that the individual is entitled to request under federal or state

S.B. No. 1

1  law.

2              ARTICLE 2.  REGISTRATION OF VOTERS

3       SECTION 2.01.  Section 13.002, Election Code, is amended by

4  adding Subsection (c-1) to read as follows:

5       (c-1)  The information required under Subsections (c)(3),

6  (4), (5), (6), and (8) must be supplied by the person desiring to

7  register to vote.

8       SECTION 2.02.  Section 13.007, Election Code, is amended to

9  read as follows:

10      Sec. 13.007.  FALSE STATEMENT ON APPLICATION.  (a)  A person

11  commits an offense if the person knowingly or intentionally:

12              (1)  makes a false statement; or

13              (2)  requests, commands, coerces, or attempts to induce

14  another  person  to  make  a  false  statement  on  a  registration

15  application.

16      (b)  An  offense  under  this  section  is  a  Class  A  [B]

17  misdemeanor, except that an offense under this section is a state

18  jail felony if the person:

19              (1)  directly  or  through  a  third  party  offers  or

20  provides compensation or other benefit to a person for activity

21  described by Subsection (a); or

22              (2)  solicits,  receives,  or  accepts  compensation  or

23  other benefit for an activity described by Subsection (a).

24      (c)  If  conduct  that  constitutes  an  offense  under  this

25  section also constitutes an offense under another law, the actor

26  may be prosecuted under this section, the other law, or both. [For

27  purposes of this code, an offense under this section is considered

S.B. No. 1

1  ~~to be perjury, but may be prosecuted only under this section.~~]

2       SECTION 2.03.   Section 15.021, Election Code, is amended by

3  amending Subsections (b) and (d) and adding Subsections (d-1) and

4  (d-2) to read as follows:

5       (b)  Except as provided by Subsection (d), the [~~The~~] voter

6  shall   use   the   registration   certificate   or   a   registration

7  application form as the notice, indicating the correct information

8  in the appropriate space on the certificate or application form

9  unless the voter does not have possession of the certificate or an

10  application form at the time of giving the notice.

11       (d)  A voter [~~who continues to reside in the county in which~~

12  ~~the voter is registered~~] may correct information under this section

13  by  digital  transmission  of  the  information  under  a  program

14  administered  by  the  secretary  of  state  and  the  Department  of

15  Information Resources.

16       (d-1)  If the notice indicates that a voter no longer resides

17  in the county in which the voter is registered, the registrar shall

18  forward the notice and the voter's application for registration to

19  the  registrar  of  the  county  in  which  the  voter  resides.   The

20  registrars  shall  coordinate  to  ensure  that  the  voter's  existing

21  registration is canceled immediately after the voter is registered

22  in  the  county  in  which  the  voter  resides  in  accordance  with

23  Subsection (d-2).

24       (d-2)  A  registrar  who  receives  a  voter's  notice  and

25  application from another registrar under Subsection (d-1) shall

26  treat it as an original application for registration under Section

27  13.002, and shall register the voter if the voter resides in the

1  county and is otherwise eligible under Section 13.001.

2      SECTION 2.04.  Section 15.028, Election Code, is amended to

3  read as follows:

4      Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO

5  PROSECUTOR].  [(a)]  If the registrar determines that a person who

6  is not eligible to vote registered to vote or [a registered voter]

7  voted in an election, the registrar shall, within 72 hours not

8  including weekends after making the determination, execute and

9  deliver to the attorney general, the secretary of state, and the

10 county or district attorney having jurisdiction in the territory

11 covered by the election an affidavit stating the relevant facts.

12      [(b)  If the election covers territory in more than one

13 county, the registrar shall also deliver an affidavit to the

14 attorney general.]

15      SECTION  2.05.  Section 16.0332, Election Code, is amended

16 by amending Subsection (a) and adding Subsections (a-1), (d), and

17 (e) to read as follows:

18      (a)  After the registrar receives notification [a list]

19 under Subsection (a-1) of this section, Section 18.068 of this

20 code, or Section 62.113, Government Code, of persons excused or

21 disqualified from jury service because of citizenship status or

22 notification of persons who indicate a lack of citizenship status

23 in connection with a motor vehicle or Department of Public Safety

24 record as provided by Subsection (a-1), the registrar shall deliver

25 to each registered voter whose name appears on the list a written

26 notice requiring the voter to submit to the registrar proof of

27 United States citizenship in the form of a certified copy of the

S.B. No. 1

1   voter's birth certificate, United States passport, or certificate
2   of naturalization or any other form prescribed by the secretary of
3   state.   The notice shall be delivered by forwardable mail to the
4   mailing address on the voter's registration application and to any
5   new address of the voter known to the registrar.

6        (a-1)   The secretary of state shall enter into an agreement
7   with the Department of Public Safety under which information in the
8   existing   statewide   computerized   voter   registration   list   is
9   compared against information in the database of the Department of
10  Public  Safety  on  a  monthly  basis  to  verify  the  accuracy  of
11  citizenship   status   information   previously   provided   on   voter
12  registration applications.   In comparing information under this
13  subsection, the secretary of state shall consider only a voter's
14  information in the database of the Department of Public Safety that
15  was derived from documents presented by the voter to the department
16  after the person's current voter registration became effective, and
17  may  not  consider  information  derived  from  documents  presented  by
18  the  voter  to  the  department  before  the  person's  current  voter
19  registration became effective.

20       (d)   The  secretary  of  state  shall  prescribe  rules  for  the
21  administration of this section.

22       (e)   Not  later  than  December 31 of  each  year,  the  secretary
23  of state shall provide a report to the legislature of the number of
24  voter registrations canceled under this section during the calendar
25  year.

26       SECTION 2.06.   Section 18.065, Election Code, is amended by
27  adding Subsections (e), (f), (g), (h), and (i) to read as follows:

8

S.B. No. 1

1    (e)  If the secretary of state determines that a voter

2 registrar is not in substantial compliance with a requirement

3 imposed on the registrar by a provision or rule described in

4 Subsection (a), the secretary of state shall:

5         (1)  for the first violation, require the registrar to

6 attend a training course under Subsection (h);

7         (2)  for the second violation, audit the voter

8 registration list for the county in which the registrar serves to

9 determine the actions needed to achieve substantial compliance

10 under Subsection (a) and provide the results of the audit to the

11 registrar; or

12         (3)  for a third or subsequent violation, if the

13 secretary of state determines that the registrar has not performed

14 any overt actions in pursuance of compliance with the actions

15 identified under Subdivision (2) as necessary for the registrar to

16 achieve substantial compliance under Subsection (a) within 14 days

17 of receiving the results of the audit conducted under that

18 subsection, inform the attorney general that the county which the

19 registrar serves may be subject to a civil penalty under Subsection

20 (f).

21    (f)  A county is liable to this state for a civil penalty of

22 $1,000 for each day after the 14th day following the receipt of the

23 results of the audit conducted under Subsection (e)(2) that the

24 county's voter registrar fails to take overt action to comply with

25 the actions identified under that subsection as necessary for the

26 registrar to achieve substantial compliance under Subsection (a).

27 The attorney general may bring an action to recover a civil penalty

1  imposed under this section.

2      (g)  A civil penalty collected by the attorney general under
3  this section shall be deposited in the state treasury to the credit
4  of the general revenue fund.

5      (h)  The secretary of state shall develop and implement a
6  training course for registrars on substantial compliance with
7  Sections 15.083, 16.032, and 18.061 and with rules implementing the
8  statewide computerized voter registration list.

9      (i)  The secretary of state shall adopt rules and prescribe
10  procedures for the implementation of this section.

11      SECTION 2.07.  Section 18.068, Election Code, is amended by
12  amending Subsection (a) and adding Subsection (a-1) to read as
13  follows:

14      (a)  The secretary of state shall quarterly compare the
15  information received under Section 16.001 of this code and Sections
16  [Section] 62.113 and 62.114, Government Code, to the statewide
17  computerized voter registration list.  If the secretary determines
18  that a voter on the registration list is deceased or has been
19  excused or disqualified from jury service because the voter is not a
20  citizen or a resident of the county in which the voter is registered
21  to vote, the secretary shall send notice of the determination
22  to the voter registrar of the counties considered appropriate by
23  the secretary.

24      (a-1)  The secretary of state is not required to send notice
25  under Subsection (a) for a voter who is subject to an exemption from
26  jury service under Section 62.106, Government Code, if that
27  exemption is the only reason the voter is excused from jury service.

1      SECTION 2.08.  Section 31.006, Election Code, is amended to
2   read as follows:

3      Sec. 31.006.  REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.
4   (a)  If, after receiving or discovering information indicating that
5   [a complaint alleging] criminal conduct in connection with an
6   election has occurred, the secretary of state determines that there
7   is reasonable cause to suspect that [the alleged] criminal conduct
8   occurred, the secretary shall promptly refer the information
9   [complaint] to the attorney general.  The secretary shall deliver
10  to the attorney general all pertinent documents and information in
11  the secretary's possession.

12      (b)  The  documents  and  information  submitted  under
13  Subsection (a) are not considered public information until:

14            (1)  the secretary of state makes a determination that
15  the  information  [complaint]  received  does  not  warrant  an
16  investigation; or

17            (2)  if referred to the attorney general, the attorney
18  general has completed the investigation or has made a determination
19  that the information [complaint] referred does not warrant an
20  investigation.

21      SECTION 2.09.  Subchapter B, Chapter 87, Election Code, is
22  amended by adding Section 87.028 to read as follows:

23      Sec. 87.028.  ACCESS TO INFORMATION.  (a)  On request, a
24  county election official shall provide to a member of an early
25  voting  ballot  board  all  available  information  necessary  to
26  fulfilling the functions of the board, including any information
27  from the statewide computerized voter registration list under

11

1  Section 18.061.

2      (b)  On request, a county election official shall provide to

3  a  member  of  a  signature  verification  committee  all  available

4  information necessary to fulfilling the functions of the committee,

5  including any information from the statewide computerized voter

6  registration list under Section 18.061.

7      (c)  The secretary of state shall adopt rules as necessary to

8  prevent  a  member  of  an  early  voting  ballot  board  or  signature

9  verification  committee  from  retaining  or  sharing  personally

10  identifiable  information  from  the  statewide  computerized  voter

11  registration list under Section 18.061 obtained under this section

12  for any reason unrelated to the official's official duties.

13      SECTION 2.10.  Section  62.113(b),  Government  Code,  is

14  amended to read as follows:

15      (b)  On the third business day of each month, the clerk shall

16  send a copy of the list of persons excused or disqualified because

17  of citizenship in the previous month to:

18            (1)  the voter registrar of the county;

19            (2)  the secretary of state; and

20            (3)  the county or district attorney[, as applicable,]

21  for an investigation of whether the person committed an offense

22  under Section 13.007, Election Code, or other law.

23      SECTION 2.11.  Sections 62.114(b) and (c), Government Code,

24  are amended to read as follows:

25      (b)  On the third business day of each month, the clerk shall

26  send [to the voter registrar of the county] a copy of the list of

27  persons excused or disqualified in the previous month because the

S.B. No. 1

1   persons do not reside in the county to:

2           (1)   the voter registrar of the county; and

3           (2)   the secretary of state.

4       (c)  A list compiled under this section may not be used for a

5   purpose other than a purpose described by Subsection (b) or Section

6   15.081 or 18.068, Election Code.

7           ARTICLE 3.  CONDUCT AND SECURITY OF ELECTIONS

8       SECTION 3.01.  Section 2.053(a), Election Code, is amended

9   to read as follows:

10      (a)  On receipt of the certification, the governing body of

11  the political subdivision by order or ordinance shall [may] declare

12  each unopposed candidate elected to the office.  If no election is

13  to be held on election day by the political subdivision, a copy of

14  the order or ordinance shall be posted on election day at each

15  polling place used or that would have been used in the election.

16      SECTION 3.02.  Section 2.056(c), Election Code, is amended

17  to read as follows:

18      (c)  A certifying authority shall [may] declare a candidate

19  elected to an office of the state or county government if, were the

20  election held, only the votes cast for that candidate in the

21  election for that office may be counted.

22      SECTION 3.03.  Sections 43.007(c) and (d), Election Code,

23  are amended to read as follows:

24      (c)  In conducting the program, the secretary of state shall

25  provide for an audit of the voting system equipment [direct

26  recording electronic voting units] before and after the election,

27  and during the election to the extent such an audit is practicable.

13

1    (d)  The secretary of state shall select to participate in
2  the program each county that:

3         (1)  has held a public hearing under Subsection (b);

4         (2)  has submitted documentation listing the steps
5  taken to solicit input on participating in the program by
6  organizations or persons who represent the interests of voters;

7         (3)  has implemented a computerized voter registration
8  list that allows an election officer at the polling place to verify
9  that a voter has not previously voted in the election;

10        (4)  uses direct recording electronic voting machines,
11 ballot marking devices, or hand-marked scannable paper ballots that
12 are printed and scanned at the polling place or any other type of
13 voting system equipment that the secretary of state determines is
14 capable of processing votes for each type of ballot to be voted in
15 the county; and

16        (5)  is determined by the secretary of state to have the
17 appropriate technological capabilities.

18    SECTION 3.04.  Section 43.031(b), Election Code, is amended
19 to read as follows:

20    (b)  Each polling place shall be located inside a building.
21 No voter may cast a vote from inside a motor vehicle unless the
22 voter meets the requirements of Section 64.009.

23    SECTION 3.05.  Section 52.092(a), Election Code, is amended
24 to read as follows:

25    (a)  Except as provided by Section 2.053(c) or 2.056(e), for
26 [For] an election at which offices regularly filled at the general
27 election for state and county officers are to appear on the ballot,


S.B. No. 1

1 the offices shall be listed in the following order:

2         (1)  offices of the federal government;

3         (2)  offices of the state government:

4            (A)  statewide offices;

5            (B)  district offices;

6         (3)  offices of the county government:

7            (A)  county offices;

8            (B)  precinct offices.

9     SECTION 3.06.  Section 61.002, Election Code, is amended to

10 read as follows:

11     Sec. 61.002.  OPENING AND CLOSING POLLING PLACE FOR VOTING.

12 (a)  Immediately before opening the polls for voting on the first

13 day of early voting and on election day, the presiding election

14 judge or alternate election judge shall confirm that each voting

15 machine has any public counter reset to zero and shall print the

16 tape that shows the counter was set to zero for each candidate or

17 measure on the ballot.

18     (b)  At the official time for opening the polls for voting,

19 an election officer shall open the polling place entrance and admit

20 the voters.

21     (c)  Immediately after closing the polls for voting on

22 election day, the presiding election judge or alternate election

23 judge shall print the tape to show the number of votes cast for each

24 candidate or ballot measure for each voting machine.

25     (d)  Each election judge or alternate election judge present

26 shall sign a tape printed under this section.

27     SECTION 3.07.  Section 64.007(c), Election Code, is amended

1 to read as follows:

2      (c)  An election officer shall maintain a register of spoiled

3 ballots at the polling place.  An election officer shall enter on

4 the register the name of each voter who returns a spoiled ballot and

5 the spoiled ballot's number.  The secretary of state shall create

6 and promulgate a form to be used for this purpose.

7      SECTION 3.08.  Subchapter A, Chapter 66, Election Code, is

8 amended by adding Section 66.004 to read as follows:

9      Sec. 66.004.  POLLING PLACE CHECKLISTS.  The secretary of

10 state shall adopt rules and create a checklist or similar

11 guidelines to assist the presiding judge of a polling place in

12 processing forms and conducting procedures required by this code at

13 the opening and closing of the polling place.

14      SECTION 3.09.  Section 85.005, Election Code, is amended to

15 read as follows:

16      Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING. (a)  Except

17 as provided by Subsection (c), in an election in which a county

18 clerk [or city secretary] is the early voting clerk under Section

19 83.002 [or 83.005], early voting by personal appearance at the main

20 early voting polling place shall be conducted on each weekday of

21 [the weekdays of] the early voting period that is not a legal state

22 holiday and for a period of at least nine hours, except that voting

23 may not be conducted earlier than 6 a.m. or later than 10 p.m.

24 [during the hours that the county clerk's or city secretary's main

25 business office is regularly open for business.]

26    (b)  In an election to which Subsection (a) does not apply,

27 early voting by personal appearance at the main early voting

1 polling place shall be conducted at least <u>nine</u> [eight] hours each
2 weekday of the early voting period that is not a legal state holiday
3 unless the territory covered by the election has fewer than 1,000
4 registered voters.  In that case, the voting shall be conducted at
5 least <u>four</u> [three] hours each day.  The authority ordering the
6 election, or the county clerk if that person is the early voting
7 clerk, shall determine which hours the voting is to be conducted.

8      (c)  In a county with a population of <u>55,000</u> [100,000] or
9 more, the voting in a primary election or the general election for
10 state and county officers shall be conducted at the main early
11 voting polling place for at least 12 hours on each weekday of the
12 last week of the early voting period, and the voting in a special
13 election ordered by the governor shall be conducted at the main
14 early voting polling place for at least 12 hours on each of the last
15 two days of the early voting period.  <u>Voting under this subsection</u>
16 <u>may not be conducted earlier than 6 a.m. or later than 10 p.m.</u>
17 Voting shall be conducted in accordance with this subsection in
18 those elections in a county with a population under <u>55,000</u>
19 [100,000] on receipt by the early voting clerk of a written request
20 for the extended hours submitted by at least 15 registered voters of
21 the county.   The request must be submitted in time to enable
22 compliance with Section 85.067.

23      (d)  <u>A voter who has not voted before the scheduled time for</u>
24 <u>closing a polling place is entitled to vote after that time if the</u>
25 <u>voter is in line at the polling place by closing time.  The</u>
26 <u>secretary of state shall promulgate any materials and provide any</u>
27 <u>training to presiding judges necessary to properly process voters</u>

<u>17</u>

S.B. No. 1

1  under this subsection [~~In an election ordered by a city, early~~
2  ~~voting by personal appearance at the main early voting polling~~
3  ~~place shall be conducted for at least 12 hours:~~

4         [~~(1) on one weekday, if the early voting period~~
5  ~~consists of less than six weekdays; or~~

6         [~~(2) on two weekdays, if the early voting period~~
7  ~~consists of six or more weekdays~~].

8         SECTION 3.10.  Sections 85.006(b) and (e), Election Code,
9  are amended to read as follows:

10        (b)  In an election in which a county clerk [~~or city~~
11 ~~secretary~~] is the early voting clerk under Section 83.002 [~~or~~
12 ~~83.005~~], only the early voting clerk may order voting on a Saturday
13 or Sunday.  The clerk must do so by written order.

14        (e)  In a primary election or the general election for state
15 and county officers in a county with a population of 55,000
16 [~~100,000~~] or more, the early voting clerk shall order voting by
17 personal appearance [~~voting~~] at the main early voting polling place
18 to be conducted on the last Saturday of the early voting period for
19 at least 12 hours, except that voting may not be conducted earlier
20 than 6 a.m. or later than 10 p.m., [~~on the last Saturday~~] and on the
21 last Sunday of the early voting period for at least six [~~five~~]
22 hours, except that voting may not be conducted earlier than 9 a.m.
23 or later than 10 p.m [~~on the last Sunday of the early voting~~
24 ~~period~~].  The early voting clerk shall order voting to be conducted
25 at those times in those elections in a county with a population
26 under 55,000 [~~100,000~~] on receipt of a written request for those
27 hours submitted by at least 15 registered voters of the county.  The

S.B. No. 1

1  request must be submitted in time to enable compliance with Section
2  85.007.    This  subsection  supersedes  any  provision  of  this
3  subchapter to the extent of any conflict.

4         SECTION 3.11.  Section  85.010(a-1),  Election  Code,  is
5  amended to read as follows:

6         (a-1)  In  this  section,  "eligible  county  polling  place"
7  means an early voting polling place[, other than a polling place
8  established under Section 85.062(e),] established by a county.

9         SECTION 3.12.  Section 85.061(a), Election Code, is amended
10 to read as follows:

11        (a)  In a countywide election in which the county clerk is
12 the  early  voting  clerk  under  Section 83.002,  an  early  voting
13 polling place shall be located inside [at] each branch office that
14 is regularly maintained for conducting general clerical functions
15 of the county clerk, except as provided by Subsection (b).   If a
16 suitable room is unavailable inside the branch office, the polling
17 place may be located in another room inside the same building as the
18 branch office.

19        SECTION 3.13.  Section 85.062, Election Code, is amended by
20 amending Subsection (b) and adding Subsection (f-1) to read as
21 follows:

22        (b)  A polling place established under this section may be
23 located, subject to Subsection (d), at any place in the territory
24 served by the early voting clerk and may be located inside [in] any
25 building [stationary structure]  as  directed  by  the  authority
26 establishing the branch office.   The polling place may not be
27 located in a movable structure in the general election for state and

19

1  county officers, general primary election, or runoff primary
2  election.  Ropes or other suitable objects may be used at the
3  polling place to ensure compliance with Section 62.004.  Persons
4  who are not expressly permitted by law to be in a polling place
5  shall be excluded from the polling place to the extent practicable.

6      (f-1) Notwithstanding any other provision of this section
7  concerning the location of temporary branch polling places, in an
8  election in which countywide polling places are used, the
9  commissioners court of a county shall employ the same methodology
10 it uses to determine the location of countywide polling places to
11 determine the location of temporary branch polling places.

12      SECTION 3.14.  Section 87.002, Election Code, is amended to
13 read as follows:

14      Sec. 87.002.  COMPOSITION OF BOARD.  (a) The early voting
15 ballot board consists of a presiding judge, an alternate presiding
16 judge, and at least one [two] other member [members].

17      (b)  Except as provided by Subsection (d), the presiding
18 judge and the alternate presiding judge are [is] appointed in the
19 same manner as a presiding election judge and alternate presiding
20 election judge, respectively.  Except as provided by Subsection
21 (c), each [the] other member is [members are] appointed by the
22 presiding judge in the same manner as the precinct election clerks.

23      (c)  In the general election for state and county officers,
24 each county chair of a political party with nominees on the general
25 election ballot shall submit to the county election board a list of
26 names of persons eligible to serve on the early voting ballot board
27 in order of the county chair's preference.  The county election

1  board shall appoint at least one person from each list to serve as a
2  member of the early voting ballot board. The same number of members
3  must be appointed from each list.  The county election board shall
4  appoint persons as members of the early voting ballot board in the
5  order of preference indicated on each list.

6      (d)  In addition to the members appointed under Subsection
7  (c), the county election board shall appoint as the presiding judge
8  the highest-ranked person on [from] the list provided under that
9  subsection by the political party whose nominee for governor
10 received the most votes in the county in the most recent
11 gubernatorial general election and as the alternate presiding judge
12 the highest-ranked person on the list provided under that
13 subsection by the political party whose nominee for governor
14 received the second most votes in the county in the most recent
15 gubernatorial general election.

16     SECTION 3.15.  Section 124.002, Election Code, is amended by
17 adding Subsection (c) to read as follows:

18     (c)  Voting system ballots may not be arranged in a manner
19 that allows a political party's candidates to be selected in one
20 motion or gesture.

21     SECTION 3.16.  Sections 127.006(a) and (c), Election Code,
22 are amended to read as follows:

23     (a)  The [Both the] manager, [and] the presiding judge, and
24 the alternate presiding judge may appoint clerks to serve at the
25 central counting station.

26     (c)  A clerk appointed by the manager serves under the
27 manager and shall perform the functions directed by the manager.  A

21

S.B. No. 1

1  clerk appointed by the presiding judge <u>or the alternate presiding</u>

2  <u>judge</u> serves under the presiding judge and shall perform the

3  functions directed by the presiding judge.

4      SECTION 3.17.  Subchapter A, Chapter 127, Election Code, is

5  amended by adding Section 127.009 to read as follows:

6      <u>Sec. 127.009.  ELECTRONIC   DEVICES   IN   CENTRAL   COUNTING</u>

7  <u>STATION.  (a)  A counting station manager and the presiding judge of</u>

8  <u>the counting station shall develop a protocol under which any</u>

9  <u>electronic device inside a central counting station that is</u>

10 <u>necessary to count votes is equipped with software that tracks all</u>

11 <u>input and activity on the electronic device.</u>

12     <u>(b)  The counting station manager and the presiding judge of</u>

13 <u>the counting station shall ensure that the input and activity</u>

14 <u>tracked by the software is delivered to the secretary of state not</u>

15 <u>later than the fifth day after vote counting is complete.</u>

16     <u>(c)  This section applies only to a central counting station</u>

17 <u>located in a county with a population of 250,000 or more.</u>

18     SECTION 3.18.  Section 127.1232, Election Code, is amended

19 to read as follows:

20     Sec. 127.1232.  SECURITY OF VOTED BALLOTS.  <u>(a)</u>  The general

21 custodian of election records shall post a <u>licensed peace officer</u>

22 [<s>guard</s>] to ensure the security of ballot boxes containing voted

23 ballots throughout the period of tabulation at the central counting

24 station.

25     <u>(b)  The general custodian of election records in a county</u>

26 <u>with a population of 100,000 or more shall implement a video</u>

27 <u>surveillance system that retains a record of all areas containing</u>

22

S.B. No. 1

1  voted ballots:

2           (1)  from the time the voted ballots are delivered to

3  the central counting station until the canvass of precinct election

4  returns; and

5           (2)  from the time the voted ballots are delivered to

6  the signature verification committee or early voting ballot board

7  until the canvass of precinct election returns.

8       (c)  A video from a system implemented under Subsection (b)

9  shall be made available to the public by a livestream.

10      (d)  The video recorded is an election record under Section

11 1.012 and shall be retained by the general custodian of election

12 records until the end of the calendar year in which an election is

13 held or until an election contest filed in the county has been

14 resolved, whichever is later.

15      SECTION 3.19.  Chapter 127, Election Code, as effective

16 September 1, 2021, is amended by adding Subchapter J to read as

17 follows:

18           SUBCHAPTER J.  RANDOMIZED AUDITS

19      Sec. 127.351.  RANDOMIZED COUNTY AUDITS.  (a)  Immediately

20 after the uniform election date in November of an even-numbered

21 year, the secretary of state shall conduct an audit of the elections

22 held in four counties during the previous two years.

23      (b)  The secretary of state shall select the counties to be

24 audited under Subsection (a) at random, except that:

25           (1)  two of the counties selected must have a total

26 population of less than 300,000;

27           (2)  two of the counties selected must have a total

1 population of 300,000 or more; and

2          (3)   a county selected in the most recent audit cycle

3 may not be selected in the current audit cycle.

4      (c)   A county selected to be audited may not pay the cost of

5 performing an audit under this section.

6      (d)   The secretary of state shall adopt rules as necessary to

7 implement this section.

8          ARTICLE 4. ELECTION OFFICERS AND OBSERVERS

9      SECTION 4.01.   Section 32.075, Election Code, is amended by

10 adding Subsections (g) and (h) to read as follows:

11      (g)   A presiding judge may not have a watcher duly accepted

12 for service under Subchapter A, Chapter 33, removed from the

13 polling place for violating a provision of this code or any other

14 provision of law relating to the conduct of elections, other than a

15 violation of the Penal Code, unless the violation was observed by an

16 election judge or clerk.

17      (h)   Notwithstanding Subsection (g), a presiding judge may

18 call a law enforcement officer to request that a poll watcher be

19 removed if the poll watcher commits a breach of the peace or a

20 violation of law.

21      SECTION 4.02.   Subchapter A, Chapter 33, Election Code, is

22 amended by adding Section 33.0015 to read as follows:

23      Sec. 33.0015.   CHAPTER PURPOSE AND WATCHER DUTY.   The

24 purpose of this chapter is to preserve the integrity of the ballot

25 box in accordance with Section 4, Article VI, Texas Constitution,

26 by providing for the appointment of watchers.   It is the intent of

27 the legislature that watchers duly accepted for service under this

1  chapter be allowed to observe and report on irregularities in the

2  conduct of any election, but may not interfere in the orderly

3  conduct of an election. To effect that purpose, a watcher appointed

4  under this chapter shall observe without obstructing the conduct of

5  an election and call to the attention of an election officer any

6  observed or suspected irregularity or violation of law in the

7  conduct of the election.

8      SECTION 4.03. Subchapter A, Chapter 33, Election Code, is

9  amended by adding Section 33.0016 to read as follows:

10     Sec. 33.0016. REFERENCES TO EARLY VOTING BALLOT BOARD IN

11  THIS CHAPTER. A reference in this chapter to an early voting ballot

12  board includes a signature verification committee.

13     SECTION 4.04. Subchapter A, Chapter 33, Election Code, is

14  amended by adding Section 33.008 to read as follows:

15     Sec. 33.008. TRAINING PROGRAM. The secretary of state

16  shall develop and maintain a training program for watchers. The

17  training program must:

18          (1) be available:

19             (A) entirely via the Internet; and

20             (B) at any time, without a requirement for prior

21  registration; and

22          (2) provide a watcher who completes the training with

23  a certificate of completion.

24     SECTION 4.05. Section 33.031, Election Code, is amended by

25  adding Subsection (b) to read as follows:

26     (b) In addition to the requirements of Subsection (a), to be

27  eligible to serve as a watcher, a person must complete training

1 under Section 33.008.

2      SECTION 4.06.  Section 33.051, Election Code, is amended by
3 amending Subsections (a), (b), (d), and (e) and adding Subsections
4 (a-1), (g), and (h) to read as follows:

5      (a)  A watcher appointed to serve at a precinct polling
6 place, a meeting place for an early voting ballot board, or a
7 central counting station must deliver the following materials [a
8 certificate of appointment] to the presiding judge at the time the
9 watcher reports for service:

10          (1)  a certificate of appointment; and

11          (2)  a  certificate  of  completion  from  training
12 completed by the watcher under Section 33.008.

13      (a-1)  A watcher  appointed  to  serve  at  an  early  voting
14 polling place must deliver the certificates under Subsection (a) [a
15 certificate of appointment] to the early voting clerk or deputy
16 clerk in charge of the polling place when the watcher first reports
17 for service.

18      (b)  The officer presented with a watcher's certificates
19 [certificate of appointment]  shall  require  the  watcher  to
20 countersign the certificate of appointment to ensure that the
21 watcher  is  the  same  person  who  signed  the  certificate  of
22 appointment.  Except as provided by Subsection (c), a watcher who
23 presents  himself  or  herself  at  the  proper  time  with  the
24 certificates  required  under  Subsection  (a)  [a  certificate  of
25 appointment] shall be accepted for service unless the person is
26 ineligible  to  serve  or  the  number  of  appointees  to  which  the
27 appointing authority is entitled have already been accepted.

1    (d)  The certificates [certificate] of a watcher serving at
2  an early voting polling place shall be retained at the polling place
3  until voting at the polling place is concluded.  At each subsequent
4  time that the watcher reports for service, the watcher shall inform
5  the clerk or deputy in charge.  The officer may require the watcher
6  to sign the watcher's name in the officer's presence, for comparison
7  with the signature on the certificate of appointment, if the
8  officer is uncertain of the watcher's identity.

9    (e)  If  a  watcher  is  not  accepted  for  service,  the
10 certificates [certificate of appointment] shall be returned to the
11 watcher with a signed statement of the reason for the rejection.

12    (g)  An election officer commits an offense if the officer
13 intentionally or knowingly refuses to accept a watcher for service
14 when acceptance of the watcher is required by this section.  An
15 offense under this subsection is a Class A misdemeanor.

16    (h)  Before accepting a watcher, the officer presented with a
17 watcher's certificate of appointment shall require the watcher to
18 take the following oath, administered by the officer: "I swear (or
19 affirm) that I will not disrupt the voting process or harass voters
20 in the discharge of my duties."

21    SECTION 4.07.  Section 33.056, Election Code, is amended by
22 amending Subsection (a) and adding Subsections (e) and (f) to read
23 as follows:

24    (a)  Except as provided by Section 33.057, a watcher is
25 entitled to observe any activity conducted at the location at which
26 the watcher is serving.  A watcher is entitled to sit or stand
27 [conveniently] near enough to see and hear the election officers

S.B. No. 1

1  conducting the observed activity, except as otherwise prohibited by

2  this chapter.

3       (e)  Except as provided by Section 33.057(b), a watcher may

4  not be denied free movement where election activity is occurring

5  within the location at which the watcher is serving.

6       (f)  In this code, a watcher who is entitled to "observe" an

7  election activity is entitled to sit or stand near enough to see and

8  hear the activity.

9       SECTION 4.08.  Subchapter C, Chapter 33, Election Code, is

10  amended by adding Section 33.0605 to read as follows:

11       Sec. 33.0605.  OBSERVING DATA STORAGE SEALING AND TRANSFER.

12  (a) A watcher appointed to serve at a polling place in an election

13  who is available at the time of the action may observe all election

14  activities relating to closing the polling place, including the

15  sealing and transfer of a memory card, flash drive, hard drive, data

16  storage device, or other medium now existing or later developed

17  used by the voting system equipment.

18       (b)  Notwithstanding any other provision of this code, a

19  watcher duly accepted for service at a polling location is entitled

20  to follow the transfer of election materials from the polling place

21  at which the watcher was accepted to a regional tabulating center,

22  the central counting station, or any other location designated to

23  process election materials.  The authority responsible for

24  administering a regional tabulating center or another location

25  where election materials are processed must accept duly appointed

26  watchers for service in the same manner a watcher is accepted for

27  service under Section 33.051 and must accept the same number of

1  watchers that may serve under Section 33.007(a).

2      SECTION 4.09.  Section 33.061(a), Election Code, is amended

3  to read as follows:

4      (a)  A person commits an offense if the person serves in an

5  official capacity at a location at which the presence of watchers is

6  authorized and knowingly prevents a watcher from observing an

7  activity or procedure the person knows the watcher is entitled to

8  observe, including by taking any action to obstruct the view of a

9  watcher or distance the watcher from the activity or procedure to be

10 observed in a manner that would make observation not reasonably

11 effective.

12     SECTION 4.10.  Subchapter C, Chapter 33, Election Code, is

13 amended by adding Section 33.063 to read as follows:

14     Sec. 33.063.  RELIEF.  The appointing authority for a

15 watcher who believes that the watcher was unlawfully prevented or

16 obstructed from the performance of the watcher's duties may seek:

17         (1)  injunctive relief under Section 273.081,

18 including issuance of temporary orders;

19         (2)  a writ of mandamus under Section 161.009 or

20 273.061; and

21         (3)  any other remedy available under law.

22     SECTION 4.11.  Section 34.005, Election Code, is amended to

23 read as follows:

24     Sec. 34.005.  ACTION BY SECRETARY OF STATE.  (a)  The

25 secretary of state may refer a reported violation of law for

26 appropriate action to the attorney general, if the attorney general

27 has jurisdiction, or to a prosecuting attorney having jurisdiction.

29

S.B. No. 1

1     (b)  If  the  secretary  of  state  believes  that  a  state

2  inspector   was   unlawfully   prevented   or   obstructed  from  the

3  performance of the inspector's duties, the secretary of state may

4  seek:

5          (1)  injunctive   relief   under   Section   273.081,

6  including issuance of temporary orders;

7          (2)  a  writ  of  mandamus  under  Section  161.009  or

8  273.061; and

9          (3)  any other remedy available under law.

10     SECTION 4.12.  Section 86.006, Election Code, is amended by

11  amending Subsection (a) and adding Subsection (a-2) to read as

12  follows:

13     (a)  A  marked  ballot  voted  under  this  chapter  must  be

14  returned  to  the  early  voting  clerk  in  the  official  carrier

15  envelope.   The  carrier  envelope  may  be  delivered  in  another

16  envelope and must be transported and delivered only by:

17          (1)  mail;

18          (2)  common or contract carrier; or

19          (3)  subject  to  Subsections  [Subsection]  (a-1)  and

20  (a-2), in-person delivery by the voter who voted the ballot.

21     (a-2)  An in-person delivery of a marked ballot voted under

22  this chapter must be received by an election official at the time of

23  delivery.   The receiving official shall record the voter's name,

24  signature,  and  type  of  identification  provided  under  Section

25  63.0101 on a roster prescribed by the secretary of state.   The

26  receiving official shall attest on the roster that the delivery

27  complies with this section.

S.B. No. 1

1      SECTION 4.13.  Chapter 121, Election Code, is amended by

2  adding Section 121.004 to read as follows:

3      Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR

4  PUBLIC INFORMATION.  (a) Except as provided by Subsection (b), a

5  written  letter,  e-mail,  or  other  communication,  including  a

6  communication made confidential by other law, between a public

7  official and a voting systems vendor:

8          (1)  is not confidential;

9          (2)  is public information for purposes of Chapter 552,

10  Government Code; and

11          (3)  is  not  subject  to  an  exception  to  disclosure

12  provided by Chapter 552, Government Code, other than Sections

13  552.110 and 552.1101, Government Code.

14      (b)  A  written  letter,  e-mail,  or  other  communication

15  between a public official and a voting systems vendor is excepted

16  from  disclosure  under  Chapter  552,  Government  Code,  if  the

17  communication discloses information, data, or records relating to

18  the security of elections critical infrastructure.

19      SECTION 4.14.  Section 127.1301, Election Code, is amended

20  to read as follows:

21      Sec. 127.1301.  [TALLYING,  TABULATING,  AND  REPORTING]

22  CENTRALLY  COUNTED  OPTICAL  SCAN  BALLOTS  [BALLOT  UNDERVOTES  AND

23  OVERVOTES].  (a)  In an election using centrally counted optical

24  scan ballots, the undervotes and overvotes on those ballots shall

25  be  tallied,  tabulated,  and  reported  by  race  and  by  election

26  precinct in the form and manner prescribed by the secretary of

27  state.

S.B. No. 1

1    (b)  An authority operating a central counting station under
2    this chapter may not purchase or use a centrally counted optical
3    ballot  scan  system  that  uses  a  data  storage  disc  on  which
4    information, once written, is capable of being modified.

5    (c)  An authority that purchases system components in order
6    to comply with this section is eligible to have 100 percent of the
7    cost of those system components reimbursed.

8    (d)  Subsection (b) applies starting on the earlier of:

9    (1)  the date on which the state certifies the first
10   centrally counted optical ballot scan system under this section; or

11   (2)  September 1, 2026.

12   (e)  This subsection and Subsection (d) expire October 1,
13   2026.

14   SECTION 4.15.  Section 127.131, Election Code, is amended by
15   adding Subsection (f) to read as follows:

16   (f)  The presiding judge of the central counting station
17   shall provide and attest to a written reconciliation of votes and
18   voters at the close of tabulation for election day and again after
19   the central counting station meets for the last time to process
20   late-arriving ballots by mail and provisional ballots.  The
21   secretary of state shall create and promulgate rules and a form to
22   facilitate compliance with this subsection.  The form shall be
23   posted on a website maintained by the county along with election
24   returns and results.

25   SECTION 4.16.  Section 129.023, Election Code, is amended by
26   adding Subsections (b-2) and (c-1) to read as follows:

27   (b-2)  If the test is being conducted for an election in

1 which a county election board has been established under Section

2 51.002, the general custodian of election records shall notify each

3 member of the board of the test at least 48 hours before the date of

4 the test.  If the county election board chooses to witness the test,

5 each member shall sign the statement required by Subsection (e)(1).

6     (c-1)  A test conducted under this section must also require

7 the general custodian of election records to demonstrate, using a

8 representative sample of voting system equipment, that the source

9 code of the equipment has not been altered.

10                    ARTICLE 5.  VOTING BY MAIL

11     SECTION 5.01.  Section 84.001(b), Election Code, is amended

12 to read as follows:

13     (b)  Subject to Section 1.011, an [An] application must be

14 submitted in writing and signed by the applicant using ink on paper.

15 An electronic signature or photocopied signature is not permitted.

16     SECTION 5.02.  Section 84.002, Election Code, as effective

17 September 1, 2021, is amended by amending Subsection (a) and adding

18 Subsection (b-1) to read as follows:

19     (a)  An early voting ballot application must include:

20         (1)  the applicant's name and the address at which the

21 applicant is registered to vote;

22         (1-a)  the following information:

23             (A)  the  number  of  the  applicant's  driver's

24 license,  election  identification  certificate,  or  personal

25 identification card issued by the Department of Public Safety;

26             (B)  if the applicant has not been issued a number

27 described by Paragraph (A), the last four digits of the applicant's

1  social security number; or

2              . (C)  a  statement  by  the  applicant  that  the
3  applicant has not been issued a number described by Paragraph (A) or
4  (B);

5              (2)  for an application for a ballot to be voted by mail
6  on the ground of absence from the county of residence, the address
7  outside the applicant's county of residence to which the ballot is
8  to be mailed;

9              (3)  for an application for a ballot to be voted by mail
10 on the ground of age or disability, the address of the hospital,
11 nursing  home  or  other  long-term  care  facility,  or  retirement
12 center, or of a person related to the applicant within the second
13 degree  by  affinity  or  the  third  degree  by  consanguinity,  as
14 determined under Chapter 573, Government Code, if the applicant is
15 living  at  that  address  and  that  address  is  different  from  the
16 address at which the applicant is registered to vote;

17             (4)  for an application for a ballot to be voted by mail
18 on the ground of confinement in jail, the address of the jail or of a
19 person  related  to  the  applicant  within  the  degree  described  by
20 Subdivision (3);

21             (5)  for an application for a ballot to be voted by mail·
22 on  any  ground,  an  indication  of  each  election  for  which  the
23 applicant is applying for a ballot;

24             (6)  an  indication  of  the  ground  of  eligibility  for
25 early voting; and

26             (7)  for an application for a ballot to be voted by mail
27 on the ground of involuntary civil commitment, the address of the

S.B. No. 1

1  facility operated by or under contract with the Texas Civil
2  Commitment Office or of a person related to the applicant within the
3  degree of consanguinity described by Subdivision (3).

4      (b-1)  A person may use the number of a driver's license,
5  election identification certificate, or personal identification
6  card that has expired for the purpose of fulfilling the requirement
7  under Subsection (a)(1-a) if the license or identification is
8  otherwise valid.

9      SECTION 5.03.  Section 84.011(a), Election Code, as
10  effective September 1, 2021, is amended to read as follows:

11      (a)  The officially prescribed application form for an early
12  voting ballot must include:

13          (1)  immediately preceding the signature space the
14  statement: "I certify that the information given in this
15  application is true, and I understand that giving false information
16  in this application is a crime.";

17          (2)  a statement informing the applicant of the
18  offenses prescribed by Sections 84.003 and 84.004;

19          (3)  spaces for entering an applicant's voter
20  registration number and county election precinct of registration,
21  with a statement informing the applicant that failure to furnish
22  that information does not invalidate the application;

23          (3-a)  a space for entering the information required
24  under Section 84.002(a)(1-a); and

25          (4)  on an application for a ballot to be voted by mail:

26              (A)  a space for an applicant applying on the
27  ground of absence from the county of residence to indicate the date

1 on or after which the applicant can receive mail at the address

2 outside the county;

3               (B)   a   space   for   indicating   the   fact   that   an

4 applicant whose application is signed by a witness cannot make the

5 applicant's mark and a space for indicating the relationship or

6 lack of relationship of the witness to the applicant;

7               (C)   a space for entering an applicant's telephone

8 number, with a statement informing the applicant that failure to

9 furnish that information does not invalidate the application;

10               (D)   a space or box for an applicant applying on

11 the ground of age or disability to indicate that the address to

12 which the ballot is to be mailed is the address of a facility or

13 relative described by Section 84.002(a)(3), if applicable;

14               (E)   a space or box for an applicant applying on

15 the ground of confinement in jail or involuntary civil commitment

16 to indicate that the address to which the ballot is to be mailed is

17 the address of a relative described by Section 84.002(a)(4) or (7),

18 if applicable;

19               (F)   a space for an applicant applying on the

20 ground of age or disability to indicate if the application is an

21 application under Section 86.0015;

22               (G)   spaces for entering the signature, printed

23 name, and residence address of any person assisting the applicant;

24               (H)   a statement informing the applicant of the

25 condition prescribed by Section 81.005; and

26               (I)   a statement informing the applicant of the

27 requirement prescribed by Section 86.003(c).

1      SECTION 5.04.  Subchapter A, Chapter 84, Election Code, is

2  amended by adding Section 84.0111 to read as follows:

3      Sec. 84.0111.  DISTRIBUTION  OF  APPLICATION  FORM.   (a)

4  Except as provided by Subsection (c) or as otherwise authorized by

5  this code, an officer or employee of this state or of a political

6  subdivision of this state may not distribute an application form

7  for an early voting ballot to a person who did not request an

8  application under Section 84.001.

9      (b)  An officer or employee of this state or of a political

10  subdivision of this state may not use public funds to facilitate the

11  distribution by another person of an application form for an early

12  voting ballot to a person who did not request an application under

13  Section 84.001.

14      (c)  A political  party  or  a  candidate  for  office  may

15  distribute an application form for an early voting ballot to a

16  person who did not request an application under Section 84.001.

17      SECTION 5.05.  Section 84.032(c), Election Code, is amended

18  to read as follows:

19      (c)  An applicant may submit a request after the close of

20  early voting by personal appearance by appearing in person and:

21          (1)  returning the ballot to be voted by mail to the

22  early voting clerk; or

23          (2)  executing an affidavit that the applicant:

24              (A)  has not received the ballot to be voted by

25  mail; [or]

26              (B)  never requested a ballot to be voted by mail;

27  or

S.B. No. 1

1          (C)  received notice of a defect under Section
2  87.0271(b) or (c) or 87.0411(b) or (c).

3      SECTION 5.06.  Section 84.035, Election Code, is amended to
4  read as follows:

5      Sec. 84.035.  BALLOT SENT TO APPLICANT.  (a)  If the early
6  voting clerk cancels an application by an applicant to whom an early
7  voting ballot has been sent, the clerk shall:

8          (1)  remove the applicant's name from the early voting
9  roster; and

10         (2)  make any other entries in the records and take any
11  other action necessary to prevent the ballot from being counted if
12  returned.

13     (b)  An election judge may permit a person to whom an early
14  voting ballot has been sent who cancels the person's application
15  for a ballot to be voted by mail in accordance with Section 84.032
16  but fails to return the ballot to be voted by mail to the early
17  voting clerk, deputy early voting clerk, or presiding judge as
18  provided by that section to vote only a provisional ballot under
19  Section 63.011.

20     SECTION 5.07.  Section 86.001, Election Code, is amended by
21  adding Subsections (f), (f-1), and (f-2) to read as follows:

22     (f)  If  the  information  required  under  Section
23  84.002(a)(1-a) included on the application does not identify the
24  same voter identified on the applicant's application for voter
25  registration under Section 13.002(c)(8), the clerk shall reject the
26  application.

27     (f-1)  If an application is rejected under Subsection (f),

38

S.B. No. 1

1  the clerk shall provide notice of the rejection in accordance with

2  Subsection (c). The notice must include information regarding the

3  ability to correct or add information required under Section

4  84.002(a)(1-a) through the online tool described by Section

5  86.015(c).

6      (f-2) If an applicant corrects an application for a ballot

7  to be voted by mail online and that application subsequently

8  identifies the same voter identified on the applicant's application

9  for voter registration, the clerk shall provide a ballot to the

10  applicant as provided by this chapter.

11      SECTION 5.08. Section 86.002, Election Code, is amended by

12  adding Subsections (g), (h), and (i) to read as follows:

13      (g) The carrier envelope must include a space that is hidden

14  from view when the envelope is sealed for the voter to enter the

15  following information:

16      (1) the number of the voter's driver's license,

17  election identification certificate, or personal identification

18  card issued by the Department of Public Safety;

19      (2) if the voter has not been issued a number described

20  by Subdivision (1), the last four digits of the voter's social

21  security number; or

22      (3) a statement by the applicant that the applicant

23  has not been issued a number described by Subdivision (1) or (2).

24      (h) A person may use the number of a driver's license,

25  election identification certificate, or personal identification

26  card that has expired for purposes of Subsection (g) if the license

27  or identification is otherwise valid.

1      (i)  No record associating an individual voter with a ballot
2  may be created.

3      SECTION 5.09.  Section 86.011(c), Election Code, is amended
4  to read as follows:

5      (c)  If the return is not timely, the clerk shall enter the
6  time of receipt on the carrier envelope and retain it in a locked
7  container  for  the  period  for  preserving  the  precinct  election
8  records.   The clerk shall destroy the unopened envelope and its
9  contents after the preservation period.

10     SECTION 5.10.  Section   86.015(c),   Election   Code,   as
11  effective September 1, 2021, is amended to read as follows:

12     (c)  An online tool used under this section must:

13          (1)  for each election, record:

14               (A)  each application for a ballot to be voted by
15  mail received by the clerk; and

16               (B)  each carrier envelope sent to a voter by the
17  clerk;

18          (2)  for  each  carrier  envelope,  record  or  assign  a
19  serially  numbered  and  sequentially  issued  barcode  or  tracking
20  number that is unique to each envelope; [and]

21          (3)  update the applicable Internet website as soon as
22  practicable after each of the following events occurs:

23               (A)  receipt  by  the  early  voting  clerk  of  the
24  person's application for a ballot to be voted by mail;

25               (B)  acceptance  or  rejection  by  the  early  voting
26  clerk of the person's application for a ballot to be voted by mail;

27               (C)  placement  in  the  mail  by  the  early  voting

40

S.B. No. 1

1   clerk of the person's official ballot;

2                   (D)   receipt by the early voting clerk of the
3   person's marked ballot; and

4                   (E)   acceptance or rejection by the early voting
5   ballot board of a person's marked ballot; and

6          (4)   allow a voter to add or correct information
7   required under Section 84.002(a)(1-a) or Section 86.002(g).

8          SECTION 5.11.   Sections 87.027(d), (e), and (i), Election
9   Code, are amended to read as follows:

10         (d)   The early voting clerk shall determine the number of
11  members who are to compose the signature verification committee and
12  shall state that number in the order calling for the committee's
13  appointment.   A committee must consist of not fewer than five
14  members.   In an election in which party alignment is indicated on
15  the ballot, each county chair of a political party with a nominee or
16  aligned candidate on the ballot shall submit to the appointing
17  authority a list of names of persons eligible to serve on the
18  signature verification committee in order of the  county chair's
19  preference.   The authority shall appoint at least two persons from
20  each list in the order of preference indicated on each list to serve
21  as members of the committee.   The same number of members must be
22  appointed from each list.   The authority shall appoint as [the]
23  chair of the committee the highest-ranked person on [from] the list
24  provided by the political party whose nominee for governor received
25  the most votes in the county in the most recent gubernatorial
26  general election.   The authority shall appoint as vice chair of the
27  committee the highest-ranked person on the list provided by the

41

1   political party whose nominee for governor received the second most
2   votes in the county in the most recent gubernatorial general
3   election. A vacancy on the committee shall be filled by appointment
4   from the original list or from a new list submitted by the
5   appropriate county chair.

6          (e)  To be eligible to serve on a signature verification
7   committee, a person must be eligible under Subchapter C, Chapter
8   32, for service as a presiding election judge, except that the
9   person must be a qualified voter:

10                (1)  of the county, in a countywide election ordered by
11   the governor or a county authority or in a primary election;

12                (2)  of the part of the county in which the election is
13   held, for an election ordered by the governor or a county authority
14   that does not cover the entire county of the person's residence; or

15                (3)  of the political subdivision, in an election
16   ordered by an authority of a political subdivision other than a
17   county.

18          (i)  The signature verification committee shall compare the
19   signature on each carrier envelope certificate, except those signed
20   for a voter by a witness, with the signature on the voter's ballot
21   application to determine whether the signatures are those of the
22   voter.  The committee may also compare the signatures with any
23   known signature [two or more signatures] of the voter [made within
24   the preceding six years and] on file with the county clerk or voter
25   registrar to determine whether the signatures are those of the
26   voter.  Except as provided by Subsection (l), a determination under
27   this subsection that the signatures are not those of the voter must

1 be made by a majority vote of the committee's membership.  The
2 committee shall place the jacket envelopes, carrier envelopes, and
3 applications of voters whose signatures are not those of the voter
4 in separate containers from those of voters whose signatures are
5 those of the voter.  The committee chair shall deliver the sorted
6 materials to the early voting ballot board at the time specified by
7 the board's presiding judge.

8       SECTION 5.12.  Subchapter B, Chapter 87, Election Code, is
9 amended by adding Section 87.0271 to read as follows:

10      Sec. 87.0271.  OPPORTUNITY TO CORRECT DEFECT:  SIGNATURE
11 VERIFICATION COMMITTEE.  (a)  This section applies to an early
12 voting ballot voted by mail:

13           (1)  for which the voter did not sign the carrier
14 envelope certificate;

15           (2)  for which it cannot immediately be determined
16 whether the signature on the carrier envelope certificate is that
17 of the voter;

18           (3)  missing any required statement of residence;

19           (4)  missing information or containing incorrect
20 information required under Section 84.002(a)(1-a) or Section
21 86.002; or

22           (5)  containing incomplete information with respect to
23 a witness.

24      (b)  Not later than the second business day after a signature
25 verification committee discovers a defect described by Subsection
26 (a) and before the committee decides whether to accept or reject a
27 timely delivered ballot under Section 87.027, the committee shall:

S.B. No. 1

1       (1)  determine if it would be possible for the voter to
2 correct the defect and return the carrier envelope before the time
3 the polls are required to close on election day; and
4       (2)  return the carrier envelope to the voter by mail,
5 if the committee determines that it would be possible for the voter
6 to correct the defect and return the carrier envelope before the
7 time the polls are required to close on election day.
8       (c)  If the signature verification committee determines
9 under Subsection (b)(1) that it would not be possible for the voter
10 to correct the defect and return the carrier envelope before the
11 time the polls are required to close on election day, the committee
12 may notify the voter of the defect by telephone or e-mail and inform
13 the voter that the voter may request to have the voter's application
14 to vote by mail canceled in the manner described by Section 84.032
15 or come to the early voting clerk's office in person not later than
16 the sixth day after election day to correct the defect.
17      (d)  If the signature verification committee takes an action
18 described by Subsection (b) or (c), the committee must take either
19 action described by that subsection with respect to each ballot in
20 the election to which this section applies.
21      (e)  A poll watcher is entitled to observe an action taken
22 under Subsection (b) or (c).
23      (f)  The secretary of state may prescribe any procedures
24 necessary to implement this section.
25      (g)  Notwithstanding any other law, a ballot may not be
26 finally rejected for a reason listed in Section 87.041(b)(1), (2),
27 or (6) before the seventh day after election day.

44

1      SECTION 5.13.  Section 87.041, Election Code, is amended by

2   amending Subsections (b) and (e) and adding Subsection (d-1) to

3   read as follows:

4      (b)  A ballot may be accepted only if:

5           (1)  the  carrier  envelope  certificate  is  properly

6   executed;

7           (2)  neither  the  voter's  signature  on  the  ballot

8   application nor the signature on the carrier envelope certificate

9   is determined to have been executed by a person other than the

10  voter, unless signed by a witness;

11          (3)  the  voter's  ballot  application  states  a  legal

12  ground for early voting by mail;

13          (4)  the voter is registered to vote, if registration

14  is required by law;

15          (5)  the address to which the ballot was mailed to the

16  voter, as indicated by the application, was outside the voter's

17  county of residence, if the ground for early voting is absence from

18  the county of residence;

19          (6)  for a voter to whom a statement of residence form

20  was required to be sent under Section 86.002(a), the statement of

21  residence is returned in the carrier envelope and indicates that

22  the  voter  satisfies  the  residence  requirements  prescribed  by

23  Section 63.0011; [and]

24          (7)  the address to which the ballot was mailed to the

25  voter is an address that is otherwise required by Sections 84.002

26  and 86.003; and

27          (8)  the information required under Section 86.002(g)

1 provided by the voter identifies the same voter identified on the
2 voter's application for voter registration under Section
3 13.002(c)(8).

4        (d-1)  If a voter provides the information required under
5 Section 86.002(g) and it identifies the same voter identified on
6 the voter's application for voter registration under Section
7 13.002(c)(8), the signature on the ballot application and on the
8 carrier envelope certificate  shall be rebuttably presumed to be
9 the signatures of the voter.

10        (e)  In making the determination under Subsection (b)(2), to
11 determine whether the signatures are those of the voter, the board
12 may also compare the signatures with any known signature [two or
13 more signatures] of the voter [made within the preceding six years
14 and] on file with the county clerk or voter registrar [to determine
15 whether the signatures are those of the voter].

16        SECTION 5.14.  Subchapter C, Chapter 87, Election Code, is
17 amended by adding Section 87.0411 to read as follows:

18        Sec. 87.0411.  OPPORTUNITY TO CORRECT DEFECT: EARLY VOTING
19 BALLOT BOARD.  (a)  This section applies to an early voting ballot
20 voted by mail:

21        (1)  for which the voter did not sign the carrier
22 envelope certificate;

23        (2)  for which it cannot immediately be determined
24 whether the signature on the carrier envelope certificate is that
25 of the voter;

26        (3)  missing any required statement of residence;

27        (4)  missing information or containing incorrect

1 information required under Section 84.002(a)(1-a) or Section
2 86.002; or

3      (5) containing incomplete information with respect to
4 a witness.

5     (b) Not later than the second business day after an early
6 voting ballot board discovers a defect described by Subsection (a)
7 and before the board decides whether to accept or reject a timely
8 delivered ballot under Section 87.041, the board shall:

9      (1) determine if it would be possible for the voter to
10 correct the defect and return the carrier envelope before the time
11 the polls are required to close on election day; and

12      (2) return the carrier envelope to the voter by mail,
13 if the board determines that it would be possible for the voter to
14 correct the defect and return the carrier envelope before the time
15 the polls are required to close on election day.

16     (c) If the early voting ballot board determines under
17 Subsection (b)(1) that it would not be possible for the voter to
18 correct the defect and return the carrier envelope before the time
19 the polls are required to close on election day, the board may
20 notify the voter of the defect by telephone or e-mail and inform the
21 voter that the voter may request to have the voter's application to
22 vote by mail canceled in the manner described by Section 84.032 or
23 come to the early voting clerk's office in person not later than the
24 sixth day after election day to correct the defect.

25     (d) If the early voting ballot board takes an action
26 described by Subsection (b) or (c), the board must take either
27 action described by that subsection with respect to each ballot in

S.B. No. 1

1  the election to which this section applies.

2      (e)  A poll watcher is entitled to observe an action taken

3  under Subsection (b) or (c).

4      (f)  The secretary of state may prescribe any procedures

5  necessary to implement this section.

6      (g)  Notwithstanding any other law, a ballot may not be

7  finally rejected for a reason listed in Section 87.041(b)(1), (2),

8  or (6) before the seventh day after election day.

9      SECTION 5.15.  Section 87.0431(b), Election Code, is amended

10  to read as follows:

11      (b)  The early voting clerk shall, not later than the 30th

12  day after election day, deliver notice to the attorney general,

13  including  certified  copies  of  the  carrier  envelope  and

14  corresponding ballot application, of any ballot rejected because:

15          (1)  the voter was deceased;

16          (2)  the voter already voted in person in the same

17  election;

18          (3)  the signatures on the carrier envelope and ballot

19  application were not executed by the same person;

20          (4)  the carrier envelope certificate lacked a witness

21  signature; [or]

22          (5)  the carrier envelope certificate was improperly

23  executed by an assistant; or

24          (6)  the early voting ballot board or the signature

25  verification committee determined that another violation of the

26  Election Code occurred.

27      SECTION 5.16.  Sections 87.062(a) and (c), Election Code,

48

S.B. No. 1

1 are amended to read as follows:

2      (a)  On the direction of the presiding judge, the early

3 voting ballot board, in accordance with Section 85.032(b), shall

4 open the containers [container] for the early voting ballots that

5 are to be counted by the board, remove the contents from each [the]

6 container, and remove any ballots enclosed in ballot envelopes from

7 their envelopes.

8      (c)  Ballots voted by mail shall be tabulated and stored

9 separately from the ballots voted by personal appearance and shall

10 be separately reported on the returns [The results of all early

11 voting ballots counted by the board under this subchapter shall be

12 included in the same return].

13      SECTION 5.17.  Section 87.103, Election Code, is amended to

14 read as follows:

15      Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS.  (a)

16 The early voting electronic system ballots counted at a central

17 counting station, the ballots cast at precinct polling places, and

18 the ballots voted by mail shall be tabulated separately [from the

19 ballots cast at precinct polling places] and shall be separately

20 reported on the returns.

21      (b)  The early voting returns prepared at the central

22 counting station must include any early voting results obtained by

23 the early voting ballot board under Subchapter [Subchapters] D [and

24 E].

25      SECTION 5.18.  Section 87.126, Election Code, is amended by

26 adding Subsection (a-1) to read as follows:

27      (a-1)  Electronic records made under this section shall

49

S.B. No. 1

1  record both sides of any application, envelope, or ballot recorded,

2  and all such records shall be provided to the early voting ballot

3  board, the signature verification committee, or both.

4       SECTION 5.19.  Subchapter G, Chapter 87, Election Code, is

5  amended by adding Section 87.128 to read as follows:

6       Sec. 87.128.  NOTES.  (a)  Each member of an early voting

7  ballot board and each member of a signature verification committee

8  is entitled to take any notes reasonably necessary to perform the

9  member's duties under this chapter.

10      (b)  Notes taken under this section may not contain

11  personally identifiable information.

12      (c)  Each member who takes notes under this section shall

13  sign the notes and deliver them to the presiding judge or committee

14  chair, as applicable, for delivery to the custodian of election

15  records.

16      (d)  Notes collected under this section shall be preserved in

17  the same manner as precinct election records under Section 66.058.

18                 ARTICLE 6.  ASSISTANCE OF VOTERS

19      SECTION 6.01.  Section 64.009, Election Code, is amended by

20  amending Subsection (b) and adding Subsections (e), (f), (f-1),

21  (g), and (h) to read as follows:

22      (b)  The  regular  voting  procedures,  except  those  in

23  Subchapter B, may be modified by the election officer to the extent

24  necessary to conduct voting under this section.

25      (e)  Except as provided by Section 33.057, a poll watcher is

26  entitled to observe any activity conducted under this section.

27      (f)  A person who simultaneously assists seven or more voters

S.B. No. 1

1    voting under this section by providing the voters with

2    transportation to the polling place must complete and sign a form,

3    provided by an election officer, that contains the person's name

4    and address and whether the person is providing assistance solely

5    under this section or under both this section and Subchapter B.

6        (f-1)  Subsection (f) does not apply if the person is related

7    to each voter within the second degree by affinity or the third

8    degree by consanguinity, as determined under Subchapter B, Chapter

9    573, Government Code.

10       (g)  A form completed under Subsection (f) shall be delivered

11   to the secretary of state as soon as practicable.  The secretary

12   shall retain a form delivered under this section for the period for

13   preserving the precinct election records and shall make the form

14   available to the attorney general for inspection upon request.

15       (h)  The secretary of state shall prescribe the form

16   described by Subsection (f).

17       SECTION 6.02.  Section 64.031, Election Code, is amended to

18   read as follows:

19       Sec. 64.031.  ELIGIBILITY FOR ASSISTANCE.   A voter is

20   eligible to receive assistance in marking or reading the ballot, as

21   provided by this subchapter, if the voter cannot prepare or read the

22   ballot because of:

23           (1)  a physical disability that renders the voter

24   unable to write or see; or

25           (2)  an inability to read the language in which the

26   ballot is written.

27       SECTION 6.03.  Subchapter B, Chapter 64, Election Code, is

S.B. No. 1

1  amended by adding Section 64.0322 to read as follows:

2       Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT.   (a)  A

3  person, other than an election officer, who assists a voter in

4  accordance with this chapter is required to complete a form

5  stating:

6            (1)  the name and address of the person assisting the

7  voter;

8            (2)  the relationship to the voter of the person

9  assisting the voter; and

10           (3)  whether the person assisting the voter received or

11 accepted any form of compensation or other benefit from a

12 candidate, campaign, or political committee.

13      (b)  The secretary of state shall prescribe the form required

14 by this section.  The form must be incorporated into the official

15 carrier envelope if the voter is voting an early voting ballot by

16 mail and receives assistance under Section 86.010, or must be

17 submitted to an election officer at the time the voter casts a

18 ballot if the voter is voting at a polling place or under Section

19 64.009.

20      SECTION 6.04.  Section 64.034, Election Code, is amended to

21 read as follows:

22      Sec. 64.034.  OATH.  A person, other than an election

23 officer, selected to provide assistance to a voter must take the

24 following oath, administered by an election officer at the polling

25 place, before providing assistance:

26      "I swear (or affirm) under penalty of perjury that the voter I

27 am assisting represented to me they are eligible to receive

S.B. No. 1

1   assistance; I will not suggest, by word, sign, or gesture, how the
2   voter should vote; I will confine my assistance to reading the
3   ballot to the voter, directing the voter to read the ballot, marking
4   the voter's ballot, or directing the voter to mark the ballot;
5   [answering the voter's questions, to stating propositions on the
6   ballot, and to naming candidates and, if listed, their political
7   parties,] I will prepare the voter's ballot as the voter directs; I
8   did not pressure or coerce the voter into choosing me to provide
9   assistance; [and] I am not the voter's employer, an agent of the
10  voter's employer, or an officer or agent of a labor union to which
11  the voter belongs; I will not communicate information about how the
12  voter has voted to another person; and I understand that if
13  assistance is provided to a voter who is not eligible for
14  assistance, the voter's ballot may not be counted."
15          SECTION 6.05.  Sections 86.010(e), (h), and (i), Election
16  Code, are amended to read as follows:
17          (e)  A person who assists a voter to prepare a ballot to be
18  voted by mail shall enter on the official carrier envelope of the
19  voter:
20                (1) the   person's   signature,   printed   name,   and
21  residence address;
22                (2) the  relationship  of  the  person  providing  the
23  assistance to the voter; and
24                (3) whether the person received or accepted any form
25  of compensation or other benefit from a candidate, campaign, or
26  political committee in exchange for providing assistance [on the
27  official carrier envelope of the voter].

53

1    (h)   Subsection (f) does not apply<u>:</u>

2         <u>(1)  to a violation of Subsection (c),</u> if the person is

3    related to the voter within the second degree by affinity or the

4    third degree by consanguinity, as determined under Subchapter B,

5    Chapter 573, Government Code, or was physically living in the same

6    dwelling as the voter at the time of the event<u>; or</u>

7         <u>(2)  to a violation of Subsection</u> (e)<del>,</del> <u>if the person is</u>

8    <u>related to the voter within the second degree by affinity or the</u>

9    <u>third degree by consanguinity, as determined under Subchapter B,</u>

10   <u>Chapter 573, Government Code</u>.

11   (i)   An offense under this section <u>for a violation of</u>

12   <u>Subsection (c)</u> is increased to the next higher category of offense

13   if it is shown on the trial of an offense under this section that:

14        (1)   the defendant was previously convicted of an

15   offense under this code;

16        (2)   the offense involved a voter 65 years of age or

17   older; or

18        (3)   the defendant committed another offense under this

19   section in the same election.

20   SECTION 6.06.   Section 86.0105, Election Code, is amended by

21   amending Subsections (a), (c), and (e) and adding Subsection (f) to

22   read as follows:

23   (a)   A person commits an offense if the person:

24        (1)   compensates <u>or offers to compensate</u> another person

25   for assisting voters as provided by Section 86.010[<del>, as part of any</del>

26   <del>performance-based compensation scheme based on the number of voters</del>

27   <del>assisted or in which another person is presented with a quota of</del>

1  ~~voters to be assisted as provided by Section 86.010~~]; or

2  (2)  solicits,  receives,  or  [~~engages  in  another~~

3  ~~practice  that  causes  another  person's  compensation  from  or~~

4  ~~employment status with the person to be dependent on the number of~~

5  ~~voters assisted as provided by Section 86.010; or~~

6  [~~(3)  with knowledge that accepting compensation for~~

7  ~~such activity is illegal,~~] accepts compensation for an activity

8  described by Subdivision (1) [~~or (2)~~].

9  (c)  An offense under this section is a state jail felony [~~if~~

10 ~~it is shown on the trial of an offense under this section that the~~

11 ~~defendant was previously convicted two or more times under this~~

12 ~~section~~].

13 (e)  For purposes of this section, compensation means an

14 economic benefit as defined by Section 38.01, Penal Code [~~any form~~

15 ~~of monetary payment, goods, services, benefits, or promises or~~

16 ~~offers of employment, or any other form of consideration offered to~~

17 ~~another person in exchange for assisting voters~~].

18 (f)  This section does not apply if the person assisting a

19 voter is an attendant or caregiver previously known to the voter.

20 SECTION 6.07.  Section 86.013(b), Election Code, is amended

21 to read as follows:

22 (b)  Spaces must appear on the reverse side of the official

23 carrier envelope for:

24 (1)  indicating the identity and date of the election;

25 [~~and~~]

26 (2)  entering  the  signature,  printed  name,  and

27 residence address of a person other than the voter who deposits the

S.B. No. 1

1  carrier envelope in the mail or with a common or contract carrier;
2  and

3          (3)  indicating the relationship of that person to the
4  voter.

5          SECTION 6.08.  (a)  The secretary of state shall conduct a
6  study  regarding  the  implementation  of  educational  programs,
7  including  the  production  and  publication  on  the  secretary  of
8  state's Internet website of instructional videos, to help voters
9  with disabilities understand how to use voting systems used in this
10 state.

11         (b)  Not later than December 1, 2022, the secretary of state
12 shall submit to the standing committees of the legislature with
13 jurisdiction over elections a report on the study required by this
14 section.

15         (c)  The secretary of state, using existing resources, may
16 contract with a qualified vendor to conduct the study required by
17 this section.

18         (d)  This section expires December 1, 2023.

19         ARTICLE 7.  FRAUD AND OTHER UNLAWFUL PRACTICES

20         SECTION 7.01.  Chapter 63, Election Code, is amended by
21 adding Section 63.0111 to read as follows:

22         Sec. 63.0111.  OFFENSES RELATED TO PROVISIONAL VOTING.  (a)
23 An  election  judge  commits  an  offense  if  the  judge  knowingly
24 provides a voter with a form for an affidavit required by Section
25 63.001 if the form contains information that the judge entered on
26 the form knowing it was false.

27         (b)  An offense under this section is a state jail felony.

1    SECTION 7.02.  Sections 276.004(a) and (b), Election Code,
2  are amended to read as follows:

3    (a)  A person commits an offense if, with respect to another
4  person  over  whom  the  person  has  authority  in  the  scope  of
5  employment, the person knowingly:

6    (1)  refuses to permit the other person to be absent
7  from work on election day or while early voting is in progress for
8  the purpose of attending the polls to vote; or

9    (2)  subjects or threatens to subject the other person
10  to a penalty for attending the polls on election day or while early
11  voting is in progress to vote.

12    (b)  It is an exception to the application of this section
13  that the person's conduct occurs in connection with an election in
14  which the polls are open on election day or while early voting is in
15  progress  for  voting  for  two  consecutive  hours  outside  of  the
16  voter's working hours.

17    SECTION 7.03.  Sections 276.013(a) and (b), Election Code,
18  are amended to read as follows:

19    (a)  A person commits an offense if the person knowingly or
20  intentionally makes any effort to:

21    (1)  influence the independent exercise of the vote of
22  another in the presence of the ballot or during the voting process,
23  including by altering the ballot of another or by otherwise causing
24  a ballot to not reflect the intent of the voter;

25    (2)  cause a voter to become registered, a ballot to be
26  obtained, or a vote to be cast under false pretenses; [or]

27    (3)  cause  any  false or  intentionally  misleading

S.B. No. 1

1  statement, representation, or information to be provided:

2                (A)   to an election official; or

3                (B)   on an application for ballot by mail, carrier

4  envelope, or any other official election-related form or document;

5          (4)   prevent a voter from casting a legal ballot in an

6  election in which the voter is eligible to vote;

7          (5)   provide false information to a voter with the

8  intent of preventing the voter from voting in an election in which

9  the voter is eligible to vote;

10          (6)   cause the ballot not to reflect the intent of the

11  voter;

12          (7)   cause a ballot to be voted for another person that

13  the person knows to be deceased or otherwise knows not to be a

14  qualified or registered voter;

15          (8)   cause or enable a vote to be cast more than once in

16  the same election; or

17          (9)   discard or destroy a voter's completed ballot

18  without the voter's consent.

19      (b)   An offense under this section is a Class A misdemeanor,

20  unless:

21          (1)   the person committed the offense while acting in

22  the person's capacity as an elected official, in which case the

23  offense is a state jail felony; or

24          (2)   the person is convicted of an attempt, in which

25  case the offense is a Class B [A] misdemeanor.

26      SECTION 7.04.   Chapter 276, Election Code, is amended by

27  adding Sections 276.015, 276.016, 276.017, 276.018, and 276.019 to

1  read as follows:

2       Sec. 276.015.  VOTE HARVESTING.  (a)  In this section:

3            (1)  "Benefit" means anything reasonably regarded as a

4  gain or advantage, including a promise or offer of employment, a

5  political favor, or an official act of discretion, whether to a

6  person or another party whose welfare is of interest to the person.

7            (2)  "Vote    harvesting    services"    means    in-person

8  interaction with one or more voters, in the physical presence of an

9  official ballot or a ballot voted by mail, intended to deliver votes

10  for a specific candidate or measure.

11       (b)  A person commits an offense if the person, directly or

12  through a third party, knowingly provides or offers to provide vote

13  harvesting services in exchange for compensation or other benefit.

14       (c)  A person commits an offense if the person, directly or

15  through a third party, knowingly provides or offers to provide

16  compensation or other benefit to another person in exchange for

17  vote harvesting services.

18       (d)  A person commits an offense if the person knowingly

19  collects or possesses a mail ballot or official carrier envelope in

20  connection with vote harvesting services.

21       (e)  This section does not apply to:

22            (1)  an    activity    not    performed    in    exchange    for

23  compensation or a benefit;

24            (2)  interactions that do not occur in the presence of

25  the ballot or during the voting process;

26            (3)  interactions that do not directly involve an

27  official ballot or ballot by mail;

1      (4)   interactions that are not conducted in-person with

2 a voter; or

3      (5)   activity that is not designed to deliver votes for

4 or against a specific candidate or measure.

5      (f)   An offense under this section is a felony of the third

6 degree.

7      (g)   If  conduct  that  constitutes  an  offense  under  this

8 section also constitutes an offense under any other law, the actor

9 may be prosecuted under this section, the other law, or both.

10      (h)   Records necessary to investigate an offense under this

11 section or any other section of this code shall be provided by an

12 election officer in an unredacted form to a law enforcement officer

13 upon  request.   Records  obtained  under  this  subsection  are  not

14 subject to public disclosure.

15      Sec. 276.016.   UNLAWFUL  SOLICITATION  AND  DISTRIBUTION   OF

16 APPLICATION TO VOTE BY MAIL.   (a)   A public official or election

17 official commits an offense if the official, while acting in an

18 official capacity, knowingly:

19      (1)   solicits the submission of an application to vote

20 by mail from a person who did not request an application;

21      (2)   distributes an application to vote by mail to a

22 person who did not request the application unless the distribution

23 is expressly authorized by another provision of this code;

24      (3)   authorizes or approves the expenditure of public

25 funds to facilitate third-party distribution of an application to

26 vote by mail to a person who did not request the application; or

27      (4)   completes any portion of an application to vote by

1  mail and distributes the application to an applicant.

2      (b)  An offense under this section is a state jail felony.

3      (c)  Subsection (a)(2) does not apply if the public official

4  or election official engaged in the conduct described by Subsection

5  (a)(2) by providing access to an application to vote by mail from a

6  publicly accessible Internet website.

7      (d)  Subsection (a)(4) does not apply if the public official

8  or election official engaged in the conduct described by Subsection

9  (a)(4) while lawfully assisting the applicant under Section 84.003.

10      (e)  Subsection (a) does not apply if the public official or

11  election official:

12          (1)  provided general information about voting by mail,

13  the vote by mail process, or the timelines associated with voting to

14  a person or the public; or

15          (2)  engaged in the conduct described by Subsection (a)

16  while acting in the official's capacity as a candidate for a public

17  elective office.

18      (f)  The remedy provided under this chapter is cumulative,

19  and does not restrict any other remedies provided by this code or by

20  law.  A violation of this section is subject to injunctive relief or

21  mandamus as provided by this code.

22      Sec. 276.017.  UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS

23  AND BALLOTING MATERIALS.  (a)  The early voting clerk or other

24  election official commits an offense if the clerk or official

25  knowingly mails or otherwise provides an early voting ballot by

26  mail or other early voting by mail ballot materials to a person who

27  the clerk or official knows did not submit an application for a

1  ballot to be voted by mail under Section 84.001.

2      (b)  An offense under this section is a Class A misdemeanor.

3      Sec. 276.018.  PERJURY IN CONNECTION WITH CERTAIN ELECTION

4  PROCEDURES.  (a) A person commits an offense if, with the intent to

5  deceive, the person knowingly or intentionally makes a false

6  statement or swears to the truth of a false statement:

7          (1)  on a voter registration application; or

8          (2)  previously made while making an oath, declaration,

9  or affidavit described by this code.

10     (b)  An offense under this section is a state jail felony.

11     Sec. 276.019.  UNLAWFUL ALTERING OF ELECTION PROCEDURES.  A

12 public official or election official may not create, alter, modify,

13 waive, or suspend any election standard, practice, or procedure

14 mandated by law or rule in a manner not expressly authorized by this

15 code.

16              ARTICLE 8. ENFORCEMENT

17     SECTION 8.01.  Subchapter E, Chapter 31, Election Code, is

18 amended by adding Sections 31.128, 31.129, and 31.130 to read as

19 follows:

20     Sec. 31.128.  RESTRICTION ON ELIGIBILITY.  (a)  In this

21 section, "election official" does not include a chair of a county

22 political party holding a primary election or a runoff primary

23 election.

24     (b)  A person may not serve as an election official if the

25 person has been finally convicted of an offense under this code.

26     Sec. 31.129.  CIVIL PENALTY. (a) In this section, "election

27 official" has the meaning assigned by Section 31.128.

S.B. No. 1

1    (b)  An election official may be liable to this state for a

2 civil penalty if the official:

3        (1)  is employed by or is an officer of this state or a

4 political subdivision of this state; and

5        (2)  violates a provision of this code.

6    (c)  A civil penalty imposed under this section may include

7 termination of the person's employment and loss of the person's

8 employment benefits.

9    Sec. 31.130.  SUIT AGAINST ELECTION OFFICER.  An action,

10 including an action for a writ of mandamus, alleging that an

11 election officer violated a provision of this code while acting in

12 the officer's official capacity may only be brought against the

13 officer in the officer's official capacity.

14    SECTION 8.02.  Sections 232.008(b), (c), and (d), Election

15 Code, are amended to read as follows:

16    (b)  Except as provided by Subsection (c), a contestant must

17 file the petition not later than the later of the 45th [30th] day

18 after the date the election records are publicly available under

19 Section 1.012 or the official result of the contested election is

20 determined.

21    (c)  A contestant must file the petition not later than the

22 later of the 15th [10th] day after the date the election records are

23 publicly available under Section 1.012 or the official result is

24 determined in a contest of:

25        (1)  a primary or runoff primary election; or

26        (2)  a general or special election for which a runoff is

27 necessary according to the official result or will be necessary if

63

1  the contestant prevails.

2       (d)  A contestant must deliver, electronically or otherwise,

3  a copy of the petition to the secretary of state by the same

4  deadline prescribed for the filing of the petition.

5       SECTION 8.03.  Title 14, Election Code, is amended by adding

6  Subtitle D to read as follows:

7            SUBTITLE D.  OTHER ELECTION LAWSUITS

8     CHAPTER 247.  LAWSUIT ALLEGING IMPROPER ELECTION ACTIVITIES

9       Sec. 247.001.  PETITION  ALLEGING  FRAUD.    This  chapter

10  applies to a civil suit in which a candidate in an election alleges

11  in the petition that an opposing candidate, an agent of the opposing

12  candidate, or a person acting on behalf of the opposing candidate

13  with  the  candidate's  knowledge  violated  any  of  the  following

14  sections of this code:

15            (1)  Section 13.007;

16            (2)  Section 64.012;

17            (3)  Section 64.036;

18            (4)  Section 84.003;

19            (5)  Section 84.0041;

20            (6)  Section 86.0051;

21            (7)  Section 86.006;

22            (8)  Section 86.010;

23            (9)  Section 276.013; and

24            (10)  Section 276.015.

25       Sec. 247.002.  PROCEDURE.  A candidate  in  an  election  may

26  file a petition for an action under this chapter in any county where

27  a defendant resided at the time of the election.  If the election is

S.B. No. 1

1  for a statewide office, the candidate may also file the petition in
2  a district court in Travis County.

3      Sec. 247.003.  FILING PERIOD FOR PETITION.  A candidate in an
4  election may file a petition for an action under this chapter not
5  earlier than the day after the date the election is certified and
6  not later than the 45th day after the later of that date or the date
7  election records are made publicly available under Section 1.012.

8      Sec. 247.004.  DAMAGES.   (a)   If  it  is  shown  by  a
9  preponderance of the evidence that a defendant, an agent of the
10  defendant, or a person acting on behalf of the defendant with the
11  defendant's knowledge committed one or more violations of a section
12  described  by  Section  247.001,  the  defendant  is  liable  to  the
13  plaintiff for damages in an amount of $1,000 for each violation.

14     (b)  Notwithstanding  Section  41.004,  Civil  Practice  and
15  Remedies Code, a court shall award damages under Subsection (a) to
16  the  plaintiff  irrespective  of  whether  the  plaintiff  is  awarded
17  actual damages.

18     Sec. 247.005.  ATTORNEY'S FEES.   In  an  action  under  this
19  chapter,  the  court  may  award  reasonable  attorney's  fees  to  the
20  prevailing party.

21     SECTION 8.04.  Section 273.061, Election Code, is amended to
22  read as follows:

23     Sec. 273.061.  JURISDICTION.  (a)   The supreme court or a
24  court  of  appeals  may  issue  a  writ  of  mandamus  to  compel  the
25  performance  of  any  duty  imposed  by  law  in  connection  with  the
26  holding of an election or a political party convention, regardless
27  of  whether  the  person  responsible  for  performing  the  duty  is  a

1  public officer.

2       (b)  The court of criminal appeals may issue a writ of
3  mandamus to compel the performance of any duty imposed by law in
4  connection  with  the  provision,  sequestration,  transfer,  or
5  impoundment of evidence in or records relating to a criminal
6  investigation conducted under this code or conducted in connection
7  with the conduct of an election or political party convention.  If a
8  writ of mandamus is issued under this subsection, it shall include
9  an order requiring the provision, sequestration, transfer, or
10 impoundment of the evidence or record.

11      SECTION 8.05.  Subchapter D, Chapter 22, Government Code, is
12 amended by adding Sections 22.304 and 22.305 to read as follows:

13      Sec. 22.304.  COURT SITTING IN PANELS FOR CERTAIN ELECTION
14 PROCEEDINGS; CRIMINAL OFFENSE.   (a)   In this section, "public
15 official" means any person elected, selected, appointed, employed,
16 or otherwise designated as an officer, employee, or agent of this
17 state, a government agency, a political subdivision, or any other
18 public body established by state law.

19      (b)  Notwithstanding  any  other  law  or  rule,  a  court
20 proceeding entitled to priority under Section 22.305 and filed in a
21 court of appeals shall be docketed by the clerk of the court and
22 assigned to a panel of three justices determined using an automated
23 assignment system.

24      (c)  A person, including a public official, commits an
25 offense if the person communicates with a court clerk with the
26 intention of influencing or attempting to influence the composition
27 of a three-justice panel assigned a specific proceeding under this

66

1  section.

2      (d)  An offense under this section is a Class A misdemeanor.

3      Sec. 22.305.  PRIORITY OF CERTAIN ELECTION PROCEEDINGS.  (a)

4  The supreme court or a court of appeals shall prioritize over any

5  other proceeding pending or filed in the court a proceeding for

6  injunctive relief or for a writ of mandamus under Chapter 273,

7  Election Code, pending or filed in the court on or after the 70th

8  day before a general or special election.

9      (b)  If granted, oral argument for a proceeding described by

10  Subsection (a) may be given in person or through electronic means.

11      SECTION 8.06.  Section 23.101, Government Code, is amended

12  by amending Subsection (a) and adding Subsections (b-1) and (b-2)

13  to read as follows:

14      (a)  Except as provided by Subsection (b-1), the [The] trial

15  courts of this state shall regularly and frequently set hearings

16  and trials of pending matters, giving preference to hearings and

17  trials of the following:

18          (1)  temporary injunctions;

19          (2)  criminal actions, with the following actions given

20  preference over other criminal actions:

21              (A)  criminal actions against defendants who are

22  detained in jail pending trial;

23              (B)  criminal actions involving a charge that a

24  person committed an act of family violence, as defined by Section

25  71.004, Family Code;

26              (C)  an offense under:

27                  (i)  Section 21.02 or 21.11, Penal Code;

S.B. No. 1

1                    (ii)   Chapter 22, Penal Code, if the victim
2  of the alleged offense is younger than 17 years of age;
3                    (iii)  Section 25.02, Penal Code, if the
4  victim of the alleged offense is younger than 17 years of age;
5                    (iv)   Section 25.06, Penal Code;
6                    (v)    Section 43.25, Penal Code; or
7                    (vi)   Section 20A.02(a)(7), 20A.02(a)(8),
8  or 20A.03, Penal Code;
9             (D)  an offense described by Article 62.001(6)(C)
10 or (D), Code of Criminal Procedure; and
11            (E)  criminal actions against persons who are
12 detained as provided by Section 51.12, Family Code, after transfer
13 for prosecution in criminal court under Section 54.02, Family Code;
14       (3)  election contests and suits under the Election
15 Code;
16       (4)  orders for the protection of the family under
17 Subtitle B, Title 4, Family Code;
18       (5)  appeals of final rulings and decisions of the
19 division of workers' compensation of the Texas Department of
20 Insurance regarding workers' compensation claims and claims under
21 the Federal Employers' Liability Act and the Jones Act;
22       (6)  appeals of final orders of the commissioner of the
23 General Land Office under Section 51.3021, Natural Resources Code;
24       (7)  actions in which the claimant has been diagnosed
25 with malignant mesothelioma, other malignant asbestos-related
26 cancer, malignant silica-related cancer, or acute silicosis; and
27       (8)  appeals brought under Section 42.01 or 42.015, Tax

68

S.B. No. 1

1  Code, of orders of appraisal review boards of appraisal districts
2  established for counties with a population of less than 175,000.

3      (b-1)  Except for a criminal case in which the death penalty
4  has been or may be assessed or when it would otherwise interfere
5  with a constitutional right, the trial courts of this state shall
6  prioritize over any other proceeding pending or filed in the court a
7  proceeding for injunctive relief under Chapter 273, Election Code,
8  pending or filed in the court on or after the 70th day before a
9  general or special election.

10     (b-2)  A hearing in a proceeding described by Subsection
11  (b-1) may be held in person or through electronic means, as
12  determined by the court.

13     SECTION 8.07.  Chapter 23, Government Code, is amended by
14  adding Subchapter D to read as follows:

15              SUBCHAPTER D.  GENERAL PROVISIONS

16     Sec. 23.301.  ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS;
17  CRIMINAL OFFENSE.  (a)  Notwithstanding any other law or rule, the
18  clerk of a district court in which a proceeding entitled to priority
19  under Section 23.101(b-1) is filed shall docket the proceeding and,
20  if more than one district court in the county has jurisdiction over
21  the proceeding, randomly assign the proceeding to a district court
22  using an automated assignment system.

23     (b)  Notwithstanding any other law or rule, the clerk of a
24  county court or statutory county court in which a proceeding
25  entitled to priority under Section 23.101(b-1) is filed shall
26  docket the proceeding and, if more than one court in the county has
27  jurisdiction over the proceeding, randomly assign the proceeding to

1  a court using an automated assignment system.

2      (c) A person, including a public official, commits an
3  offense if the person communicates with a county or district clerk
4  with the intention of influencing or attempting to influence the
5  court or judge assigned to a proceeding under this section.

6      (d)  An offense under this section is a Class A misdemeanor,
7  except that the offense is a state jail felony if it is shown on the
8  trial of the offense that the person committed the offense while
9  acting in the person's official capacity as an election official.

10     (e)  If a district or county clerk does not comply with this
11 section, a person may seek from the supreme court or a court of
12 appeals a writ of mandamus as provided by Section 273.061, Election
13 Code, to compel compliance with this section.

14     Sec. 23.302.  DEADLINES IN CERTAIN ELECTION PROCEEDINGS.
15 (a)  Not later than 24 hours after the proceeding is filed, a judge
16 to whom a case is assigned under Section 23.301(b) who wishes to be
17 recused from the proceeding must, before recusal:

18         (1)  hear an application for any emergency temporary
19 relief sought;

20         (2)  grant or deny any emergency temporary relief
21 sought; and

22         (3)  set a scheduling order that provides:

23             (A)  a date for a hearing on any injunction sought
24 not later than five days after the date on which the proceeding was
25 filed; and

26             (B)  discovery and deposition deadlines before
27 the expiration of any emergency relief order entered.

S.B. No. 1

1       (b) The presiding judge of an administrative region shall
2  assign a new judge to a proceeding assigned under Section 23.301(b)
3  not later than 12 hours after the original judge assigned to the
4  proceeding is recused under Subsection (a).

5       (c) A final order in a proceeding filed under Section
6  273.081, Election Code, shall be submitted in writing to the
7  parties not later than 24 hours after the judge makes a final
8  determination in the proceeding.

9       (d) If a district judge does not comply with this section, a
10  person may seek from the supreme court, the court of criminal
11  appeals, or a court of appeals a writ of mandamus as provided by
12  Section 273.061, Election Code, to compel compliance with this
13  section.

14       (e) Notwithstanding Section 23.101(b-1), a proceeding
15  relating to a permanent injunction being sought in connection to a
16  challenge under Section 141.034, Election Code, may be heard after
17  the primary election has been canvassed.

18       ARTICLE 9. INELIGIBLE VOTERS AND RELATED REFORMS

19       SECTION 9.01. Chapter 42, Code of Criminal Procedure, is
20  amended by adding Article 42.0194 to read as follows:

21       Art. 42.0194. FINDING REGARDING FELONY CONVICTION. In the
22  trial of a felony offense, if the defendant is adjudged guilty of
23  the offense, the court shall:

24       (1) make an affirmative finding that the person has
25  been found guilty of a felony and enter the affirmative finding in
26  the judgment of the case; and

27       (2) instruct the defendant regarding how the felony

S.B. No. 1

1  conviction will impact the defendant's right to vote in this state.

2      SECTION 9.02.   Article 42.01, Code of Criminal Procedure, as

3  effective September 1, 2021, is amended by adding Section 16 to read

4  as follows:

5      Sec. 16.   In  addition  to  the  information  described  by

6  Section 1, the judgment should reflect the affirmative finding and

7  instruction entered pursuant to Article 42.0194.

8      SECTION 9.03.   Section 64.012, Election Code, is amended by

9  amending Subsections (a) and (b) and adding Subsections (c) and (d)

10  to read as follows:

11      (a)  A person commits an offense if the person knowingly or

12  intentionally:

13          (1)  votes or attempts to vote in an election in which

14  the person knows the person is not eligible to vote;

15          (2)  [knowingly] votes or attempts to vote more than

16  once in an election;

17          (3)  [knowingly] votes or attempts to vote a ballot

18  belonging to another person, or by impersonating another person;

19  [or]

20          (4)  [knowingly] marks or attempts to mark any portion

21  of another person's ballot without the consent of that person, or

22  without specific direction from that person how to mark the ballot;

23  or

24          (5)  votes or attempts to vote in an election in this

25  state after voting in another state in an election in which a

26  federal office appears on the ballot and the election day for both

27  states is the same day.

S.B. No. 1

1      (b)  An offense under this section is a Class A misdemeanor

2  [felony of the second degree unless the person is convicted of an

3  attempt.  In that case, the offense is a state jail felony].

4      (c)  A person may not be convicted solely upon the fact that

5  the person signed a provisional ballot affidavit under Section

6  63.011 unless corroborated by other evidence that the person

7  knowingly committed the offense.

8      (d)  If conduct that constitutes an offense under this

9  section also constitutes an offense under any other law, the actor

10  may be prosecuted under this section, the other law, or both.

11      SECTION 9.04.  The change in law made by this article in

12  adding Section 64.012(c), Election Code, applies to an offense

13  committed before, on, or after the effective date of this Act,

14  except that a final conviction for an offense under that section

15  that exists on the effective date of this Act remains unaffected by

16  this article.

17   ARTICLE 10.  REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

18      SECTION 10.01.  The following provisions of the Election

19  Code are repealed:

20          (1)  Section 85.062(e);

21          (2)  Section 86.0105(b); and

22          (3)  Section 127.201(f).

23      SECTION 10.02.  If any provision of this Act or its

24  application to any person or circumstance is held invalid, the

25  invalidity does not affect other provisions or applications of this

26  Act that can be given effect without the invalid provision or

27  application, and to this end the provisions of this Act are declared

1  to be severable.

2      SECTION 10.03.   (a)   Except as otherwise provided by this
3  Act, the changes in law made by this Act apply only to an offense
4  committed on or after the effective date of this Act.   An offense
5  committed before the effective date of this Act is governed by the
6  law in effect when the offense was committed, and the former law is
7  continued in effect for that purpose. For purposes of this section,
8  an offense was committed before the effective date of this Act if
9  any element of the offense occurred before that date.

10      (b)   The changes in law made by this Act apply only to an
11 election ordered on or after the effective date of this Act.   An
12 election ordered before the effective date of this Act is governed
13 by the law in effect when the election was ordered, and the former
14 law is continued in effect for that purpose.

15      (c)   The changes in law made by this Act apply only to an
16 application to vote an early voting ballot by mail submitted on or
17 after the effective date of this Act.   An application to vote an
18 early voting ballot by mail submitted before the effective date of
19 this Act is governed by the law in effect when the application was
20 submitted, and the former law is continued in effect for that
21 purpose.

22      (d)   The changes in law made by this Act apply only to an
23 application for voter registration submitted on or after the
24 effective date of this Act.

25      (e)   Chapter 247, Election Code, as added by this Act,
26 applies only to a cause of action for which the associated election
27 occurred after the effective date of this Act.

1       SECTION 10.04.   This Act takes effect on the 91st day after

2  the last day of the legislative session.

S.B. No. 1

_____  _____
President of the Senate          Speaker of the House

I hereby certify that S.B. No. 1 passed the Senate on August 12, 2021, by the following vote: Yeas 18, Nays 11; August 27, 2021, Senate refused to concur in House amendments and requested appointment of Conference Committee; August 29, 2021, House granted request of the Senate; August 31, 2021, Senate adopted Conference Committee Report by the following vote:  Yeas 18, Nays 13.

_____
Secretary of the Senate

I hereby certify that S.B. No. 1 passed the House, with amendments, on August 27, 2021, by the following vote:  Yeas 80, Nays 41, one present not voting; August 29, 2021, House granted request of the Senate for appointment of Conference Committee; August 31, 2021, House adopted Conference Committee Report by the following vote:  Yeas 80, Nays 41, one present not voting.

_____
Chief Clerk of the House

Approved:

_____
        Date
9 - 7 - 21

_____
        Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___7PM   O'CLOCK

SEP 0 7 2021

_____
Secretary of State

76

# EXHIBIT 2

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

John B. Scott
Secretary of State

## ELECTION ADVISORY
## NO. 2022-08

TO:       Election Officials

FROM:   Keith Ingram, Director, Elections Division

DATE:    January 28, 2022

RE:       NEW LAW: Senate Bill 1 – Opportunity to Correct Defects on Application for a
            Ballot by Mail and Carrier Envelope

---

Senate Bill 1 (87th Leg., 2nd C.S., 2021) added new identification requirements related to the ballot by mail process.  SB 1 took effect on December 2, 2021.  Any elections ordered on or after December 2, 2021, must adhere to the changes in law made by SB 1 and the procedures outlined in this advisory.

This advisory details the new requirements on the Application for Ballot by Mail (ABBM) form and the carrier envelope, and it outlines the new process that allows voters to correct certain defects on their ABBM or carrier envelope. As authorized by the Legislature, the Secretary of State is prescribing these procedures to implement the corrective action process mandated in SB 1. (Secs. 87.0271(f), 87.0411(f), Texas Election Code).

All statutory references in this advisory are to the Texas Election Code ("the Code"), unless otherwise indicated.

## New Requirements for Application for Ballot by Mail (ABBM)

As amended by SB 1, Section 84.002 of the Election Code provides that a voter who seeks to vote by mail must include one of the following on their ABBM:
- The number of the applicant's driver's license, election identification certificate (EIC), or personal identification card issued by the Department of Public Safety (DPS);
- The last four digits of the applicant's social security number, if the applicant has not been issued a DPS number; or
- A statement that the applicant has not been issued one of these numbers. (Sec. 84.002(a)(1-a)).

A person may use the number of a DPS-issued driver's license, EIC, or personal identification card that has expired for the purpose of fulfilling the identity requirements in Section 84.002(a)(1-a) if the license or identification is otherwise valid.  (Sec. 84.002(b-1)).

The official ABBM form has been revised to include a space for the required identification information. (Sec. 84.011). If a voter requests an ABBM form, the county must send the new form that includes a space for the identification information. If a voter uses an old version of the ABBM form, the early voting clerk must follow the procedures outlined below in rejecting the application. Please be advised that there are other changes to the ABBM form that will be addressed in a separate advisory.

## Requirements for Processing Applications for Ballot by Mail

It is the early voting clerk's responsibility to review applications for ballot by mail, determine whether the applicant is entitled to vote by mail, and provide ballot materials to the voter. (Secs. 86.001, 86.002).

Section 86.001 outlines the process that an early voting clerk must follow when reviewing a voter's submitted ABBM. Among other things, the early voting clerk must verify that the personal identification information provided by the voter on the application—i.e., a DPS-issued driver's license, EIC, or personal identification card number, the last four digits of the applicant's social security number, or a statement that the applicant has not been issued any of these numbers — identifies the same voter identified on the applicant's voter registration record. (Sec. 86.001(f)).

If the voter fails to provide any of the required identification information on the ABBM or the information provided by the voter on the ABBM does not match the information on the voter's voter registration record, the early voting clerk shall reject the ABBM and provide notice of the rejection (Form 6-3, Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number). Similarly, if the voter provides one or both of the required identification numbers but the voter's voter registration record does not contain either number, the early voting clerk must reject the ABBM and promptly notify the voter of the rejection (Form 6-4, Notice of Rejected Application for Ballot by Mail - Required Personal Identification Number Not Associated with Voter Record).

These SOS-prescribed notices include instructions on how the voter can correct the applicable defect online, as required by Section 86.001(f-1). If the rejection occurs on or before the 18th day before election day, the early voting clerk must also send the voter a new ABBM along with the rejection notice. (Sec. 86.008). Section 86.008(d) further provides that the early voting clerk may deliver a second ABBM to a voter in person if the defective original ABBM is timely and the clerk may receive, before the deadline, the corrected ABBM in person from the voter, as long as the clerk applies these procedures uniformly to all ABBMs covered by the subsection.

Below, we discuss several scenarios that early voting clerks may encounter in reviewing ABBMs, and we outline the opportunities provided to voters to cure certain ABBM defects, including additional information regarding the forms that the SOS has prescribed for early voting clerks to send voters when notifying them that their ABBMs have been rejected.

### Possible Scenarios:

- **Scenario 1**: Voter provides a DPS-issued driver's license number on the ABBM. The early voting clerk validates that this number matches the driver's license number in the voter's voter registration record. If the voter is otherwise eligible to vote by mail, the early voting clerk must accept the ABBM and send a ballot to the voter.

2

STATE019850

- **Scenario 2**: Voter provides a DPS-issued driver's license number on the ABBM. The early voting clerk is unable to validate this number, as the voter registration record contains the voter's social security number but not a driver's license number. The early voting clerk must reject the ABBM and provide notice of the rejection, which must include information explaining how to correct or add information to cure the defect. (Sec. 86.001(f-1)). *See* Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number.
    - ○ **NOTE**: If a voter has not provided the required personal identification information by the 11th day before election day, the ABBM will be finally rejected, but the voter may still vote in person if otherwise eligible. (Sec. 84.007(c)).

- **Scenario 3**: Voter provides the last four digits of their social security number on the ABBM. The voter registration record contains a driver's license number and social security number. The early voting clerk is able to validate that the partial social security number on the ABBM matches the number in the voter's registration record. The early voting clerk must accept the ABBM and send a ballot to the voter.
    - ○ **NOTE**: As a reminder, the early voting clerk's obligation in reviewing the identification information on an ABBM is to determine if the information provided by the voter on the ABBM identifies the same voter identified on the applicant's voter registration record. (Sec. 86.001(f)).

- **Scenario 4**: Voter indicates on their ABBM that they have not been issued any of the required personal identification numbers, but the voter registration record contains one or both numbers. The early voting clerk must reject the ABBM and provide notice of the rejection, which must include information explaining how to correct or add information to cure the defect. (Sec. 86.001(f-1)). *See* Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number.
    - ○ **NOTE**: If a voter has not provided the required personal identification information by the 11th day before election day, the ABBM will be finally rejected, but the voter may still vote in person if otherwise eligible. (Sec. 84.007(c)).

- **Scenario 5**: Voter provides one of the required personal identification numbers on their ABBM, but the voter's voter registration record does not contain either number. The early voting clerk must reject this ABBM and provide notice of the rejection, which must include instructions on how the voter can update their voter registration record to include the personal identification numbers. (Sec. 86.001(f)). *See* Notice of Rejected Application for Ballot by Mail – Required Personal Identification Number Not Associated with Voter Record.
    - ○ **NOTE**: A voter cannot vote by mail unless at least one of the required numbers is added to the voter's registration record. If the ABBM is otherwise valid, the voter must be given the opportunity to update their voter registration record in order to finish processing the ABBM. The early voting clerk will need to re-check ABBMs in this category to determine if the voter updated their voter registration record with one or more required personal identification numbers. If a voter has not updated their voter registration record by the 11th day before election day, the ABBM will be finally rejected, but the voter may still vote in person if otherwise eligible. (Sec. 84.007(c)).

- **Scenario 6**: Voter provides both types of personal identification numbers (ex: driver's license number and last four digits of social security number) on their ABBM. The voter registration record contains both types of personal identification numbers; one number on the ABBM matches the record, but the other does not match. Because the early

3

voting clerk is able to validate one of the numbers to the voter's voter registration record (and thus verify the identity of the voter), the clerk must accept the ABBM and send a ballot to the voter.

- **Scenario 7**: Voter provides both types of personal identification numbers (ex: driver's license number and last four digits of social security number) on their ABBM. The voter registration record only contains the social security number, which matches with the partial number on the ABBM. The early voting clerk must accept the ABBM and send a ballot to the voter.

- **Scenario 8**: Voter indicates on the ABBM that they have not been issued any of the required personal identification numbers. If the voter's voter registration record does not contain any of these numbers, the early voting clerk must accept the ABBM and send a ballot to the voter.

- **Scenario 9**: The voter uses an old ABBM form that does not contain any of the required identification information or leaves the personal identification information section blank and does not indicate that they have not been issued any of the required numbers. The early voting clerk must reject the ABBM and provide notice of the rejection, which must include information explaining how to correct or add information to cure the defect. (Sec. 86.001(f-1)). *See* Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number.
  - ○ **NOTE**: If a voter has not provided the required personal identification information by the 11th day before election day, the ABBM will be finally rejected, but the voter may still vote in person if otherwise eligible. (Sec. 84.007(c)).

## Opportunity to Correct Rejection of ABBM

As described above, if the early voting clerk rejects an ABBM because the voter failed to provide any of the required identification information or the information included on the ABBM does not match the voter's voter registration record, the early voting clerk must provide the voter with notice of the rejection in accordance with Section 86.001(c). (Sec. 86.001(f-1)). The notice must include information explaining how to correct the defect by using the online Ballot by Mail Tracker, available at www.votetexas.gov. (Sec. 86.001(f-1)). The SOS has prescribed Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3) for this rejection notice. If the applicant corrects the missing or incorrect number by validating the required information through the Ballot by Mail Tracker, and this information subsequently identifies the same voter identified on the applicant's voter registration record, the early voting clerk shall provide a ballot to the applicant. (Sec. 86.001(f-2)).

**NOTE**: The early voting clerk should retain the documentation from TEAM that shows the voter validated their personal identification number(s). This documentation should be retained with the voter's original ABBM and provided to the early voting ballot board so that the board is notified that the defect has been cured.

If the early voting clerk rejects an ABBM because the voter's voter registration record does not contain any of the personal identification information provided on the ABBM, the clerk must offer the voter an opportunity to correct this defect. The notice must include instructions on how the voter can update their voter registration record to include one or more of the required identification numbers by submitting a new voter registration application to the registrar or by validating their personal identification numbers on texas.gov. The SOS has prescribed Notice of Rejected Application for Ballot by Mail – Required Personal Identification Number Not Associated with Voter Record (Form 6-4) for this rejection notice.

4

STATE019852

Missing or incorrect personal identification information on the ABBM or the voter registration record is the only defect that can be corrected on an ABBM. If the application is rejected on any other grounds, a voter must submit a new ABBM if they still wish to vote by mail instead of voting in person. (Secs. 86.001(c), (f), (f-1), 86.008).

Any written notice of an ABBM rejection must state the reason for the rejection and be delivered to the voter at both the voter's residence address and the mailing address on the ABBM, if different. Additionally, if the voter provided an email address on the ABBM, the early voting clerk may also send notification by email of the reason for rejection. (Sec. 86.001(c)).

Please see pages 18-20 of this advisory for additional information regarding forms that SOS has prescribed for use in notifying voters of rejected ABBMs.

## Deadline to Correct Defects in Application for Ballot by Mail

If a voter receives a Notice of Rejected Application for a Ballot by Mail or the voter logs into the Ballot by Mail Tracker and sees that there is missing or incorrect personal identification information, the voter must either (1) complete the required validation on the Ballot by Mail Tracker no later than the 11th day before election day, or (2) complete a new ABBM that must be received by the early voting clerk no later than the 11th day before election day. (Secs. 84.007(c), 86.015).

The early voting clerk must review all pending ABBMs that were initially rejected due to missing or incorrect personal identification information. If the applicant did not subsequently provide the missing or corrected identification information, the early voting clerk should send a final rejection notice. The early voting clerk can use the standard Notice of Rejected Application for Ballot by Mail form (Form 6-2) and mark reason 16 on the form.

If a voter corrects a defective ABBM after early voting by personal appearance has begun, the early voting clerk should confirm that the voter did not vote in person before sending balloting materials to the voter.

Please review the Secretary of State's election law calendar for additional details about ballot by mail deadlines.

## New Requirements for Carrier Envelope

As amended by SB 1, Section 86.002 requires that the carrier envelope include a space that is hidden from view when the envelope is sealed for the voter to enter one of the following: (1) the number of the voter's driver's license, EIC, or personal identification card issued by DPS; (2) the last four digits of the voter's social security number, if the voter has not been issued a DPS number; or (3) a statement that the applicant has not been issued one of these numbers. (Sec. 86.002(g)).

The carrier envelope has been updated to include a place for the voter to add an email address and/or telephone number so that the early voting ballot board or signature verification committee can contact the voter to notify them of a defect in their carrier envelope. Please note that there are other changes to the carrier envelope that will be addressed in a separate advisory.

STATE019853

# New Comparison Requirements for Early Voting Ballot Board (EVBB) and Signature Verification Committee (SVC)

Section 87.041 directs the early voting ballot board to determine whether to accept a voted ballot by mail and provides that a ballot can be accepted only if it meets several specified requirements. Based on changes to this provision made by SB 1, the EVBB must now review additional information when qualifying a voted ballot by mail. The EVBB shall only accept a voted ballot by mail if, among other things, the personal identification information provided by the voter on the carrier envelope identifies the same voter identified on the voter's voter registration record. (Sec. 87.041(b)(8)). In performing its assigned duties, the signature verification committee, if established, may also review the personal identification information on the voter's carrier envelope. (Secs. 87.027, 87.0271). If the voter includes an identification number on the carrier envelope, the number on the carrier envelope does not have to match the type of number on the voter's ABBM as long as they are both associated with the voter's registration record.

### Rebuttable Presumption

Under Section 87.041, if the voter provides personal identification information on the carrier envelope that matches the voter's registration record, the signatures on the ABBM and the carrier envelope shall be rebuttably presumed to be the signatures of the voter. (Sec. 87.041(d-1)). Thus, the only way to reject a mail ballot due to a signature mismatch is for a member of the SVC or EVBB to rebut this presumption. The presumption may be rebutted by presenting other past signatures on file with the early voting clerk or voter registrar that would support a finding that the signatures on the carrier envelope and ABBM are not those of the same voter.

Any findings by the SVC that the signatures are not those of the same voter can be overridden by the EVBB. (Sec. 87.027(j)). This decision can be overridden even in circumstances when the voter has been provided an opportunity to correct a signature mismatch (notified by phone or email of the defect and subsequent corrective action process), but the voter did not complete the corrective action process. (Sec. 87.027(j)).

## Possible Scenarios:

- **Scenario 1**: Voter provides a personal identification number on the carrier envelope that matches the number in the voter's voter registration record. The SVC or EVBB has completed the verification of personal identification information and should perform its remaining duties in the ballot review process. If the SVC or EVBB does not identify any other ground for rejection, the ballot would be accepted.

- **Scenario 2**: Voter provides a personal identification number on the carrier envelope that matches the number in the voter's voter registration record, but it is a different type of number than what the voter listed on the ABBM. (Example: Voter provided last four digits of social security number on ABBM and a driver's license number on carrier envelope.) Because the voter's voter registration record contains both personal identification numbers, the SVC or EVBB is able to verify the voter's identity. The SVC or EVBB should perform its remaining duties in the ballot review process. If the SVC or EVBB does not identify any other ground for rejection, the ballot would be accepted.

6

STATE019854

- **Scenario 3**: Voter provides the last four digits of their social security number on the carrier envelope. The voter registration record contains a driver's license number and social security number. The SVC or EVBB is able to validate that the partial social security number on the carrier envelope matches the number in the voter's voter registration record. The SVC or EVBB should perform its remaining duties in the ballot review process. If the SVC or EVBB does not identify any other ground for rejection, the ballot would be accepted.
    - **NOTE**: As explained above with respect to the early voting clerk's acceptance of ABBMs, the obligation of the SVC or EVBB in reviewing the identification information on a carrier envelope is to determine if the information provided by the voter on the envelope identifies the same voter identified on the voter's voter registration record. (Secs. 87.027, 87.0271, 87.041(b)(8), 87.0411).

- **Scenario 4**: Voter indicates on the carrier envelope that they have not been issued any of the required personal identification numbers, and the voter's voter registration record does not contain any of these numbers. The SVC or EVBB has completed the verification of personal identification information, and it must rely on the signature comparison process for this part of the review. The SVC or EVBB should perform its remaining duties in the ballot review process. If the SVC or EVBB does not identify any other ground for rejection, the ballot would be accepted.

- **Scenario 5**: Voter provided one of the required personal identification numbers on the ABBM that matched the voter's voter registration record, but the voter does not include an identification number on the carrier envelope. The SVC or EVBB must notify the voter of their ability to correct this defect in the carrier envelope, as described in more detail below. If the voter timely corrects the defect, and there are no other grounds for rejection, the ballot would be accepted.

- **Scenario 6**: Voter provided one of the required personal identification numbers on the ABBM that matched the voter's voter registration record, but the voter indicates on the carrier envelope that they have not been issued one of the applicable identification numbers. The SVC or EVBB must notify the voter of their ability to correct this defect in the carrier envelope. If the voter timely corrects the defect, and there are no other grounds for rejection, the ballot would be accepted.

## Signature Verification Committee Corrective Action Process

SB 1 added Section 87.0271 of the Code to provide a process by which the signature verification committee, if established, shall offer voters the opportunity to correct certain defects in the required paperwork associated with a voted mail ballot. The signature verification committee is created by the early voting clerk and can be appointed for any election. (Sec. 87.027(a)). The signature verification committee may begin meeting as early as 20 days before election day. (Sec. 87.027(f)).

Because the early voting ballot board in counties with a population of under 100,000 are not permitted to meet to qualify mail ballots until the end of the period for early voting by personal appearance, the **Secretary of State's office strongly recommends that all entities create a signature verification committee so that voters will be timely notified of defects in their carrier envelopes.** *See* Section 87.027 for more details on the creation and administration of a signature verification committee.

7

The following defects are eligible for correction when identified by the signature verification committee (Sec. 87.0271(a)):

- The voter did not sign the carrier envelope certificate.
- The SVC cannot determine whether the signature on the carrier envelope is that of the voter.
- The personal identification information required under Section 84.002(a)(1-a) (ABBM) or Section 86.002 (carrier envelope) was missing or contained incorrect information.
- If a voter used a witness for completion of the carrier envelope, the witness information was incomplete.
    **NOTE**: Incomplete information about an assistant cannot be corrected and will result in a rejected mail ballot, but the voter may still vote in person if otherwise eligible.

Only the early voting ballot board has the authority to open a carrier envelope for those voters who submitted their request using an ABBM. (Sec. 87.041(a)). As the SVC does not have the authority to open a carrier envelope, the SVC is unable to determine whether a carrier envelope contains a completed statement of residence (SOR). Because the authority to open a carrier envelope to determine whether a voter submitted a completed SOR lies solely with the early voting ballot board, the SVC cannot notify voters of defects related to a missing SOR.

The signature verification committee can open a sealed carrier envelope, or envelope used for mailing the voted ballot and balloting materials, for voters who submitted their request to vote by mail using an FPCA, as signature sheets are expressly authorized for this process.

# Early Voting Ballot Board Corrective Action Process

SB 1 also added Section 87.0411 of the Code to provide a process by which the early voting ballot board shall offer voters the opportunity to correct certain defects on their carrier envelope or in the required paperwork associated with the voted mail ballot. The first day that an EVBB can convene to qualify mail ballots depends on the size of the county, and for local political subdivisions (city, school, water district, etc.) contracting with a county. As noted above, the early voting ballot board in counties with a population of under 100,000, and in local entities that are not contracting with a county, are not permitted to meet to qualify mail ballots until the end of early voting by personal appearance. (Secs. 87.022, 87.0222).

The following defects are eligible for correction when identified by the early voting ballot board (Sec. 87.0411(a)):

- The voter did not sign the carrier envelope certificate.
- The EVBB cannot determine whether the signature on the carrier envelope is that of the voter.
- The voter did not include the required statement of residence.
- The personal identification information required under Section 84.002(a)(1-a) (ABBM) or Section 86.002 (carrier envelope) was missing or contained incorrect information.
- If a voter used a witness for completion of the carrier envelope, the witness information was incomplete.
    **NOTE**: Incomplete information about an assistant cannot be corrected and will result in a rejected mail ballot, but the voter may still vote in person if otherwise eligible.

# Corrective Action Process Timelines

The SVC or EVBB has two methods by which they can notify a voter of their ability to correct one or more of the defects outlined above.

8

STATE019856

**Returning the Carrier Envelope by Mail**: If the SVC or EVBB determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the SVC or EVBB must mail the original defective carrier envelope to the voter.  This determination must be made not later than the second business day after the SVC or EVBB discovers a defect, and before the SVC or EVBB decides whether to accept or reject a timely delivered mail ballot. (Secs. 87.0271(b), 87.0411(b)).

**Notifying the Voter by Phone or Email**: If the SVC or EVBB determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the SVC or EVBB may notify the voter of the defect by telephone or email and inform the voter that the voter may come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. (Secs. 87.0271(c), 87.0411(c)).

If the SVC or EVBB takes one of the actions described above, the committee or board must take that action with respect to each ballot in the election to which these options apply.  (Secs. 87.0271(d), 87.0411(d)).

# Recommended Timelines/Plan for the SVC and EVBB

The SOS recommends that before qualifying mail ballots, the early voting clerk meet with the SVC or EVBB to determine dates to convene and to establish timelines for the corrective action process. (Secs. 87.0411, 87.0271).

### Establishing Timelines and Guidelines for the Corrective Action Process

- The SVC or EVBB must set a uniform policy for when carrier envelopes will be mailed to the voter versus when voters will be notified of the defect by phone or email. See recommendations below regarding establishing a specific deadline for transitioning to phone/email notification.
- The SVC or EVBB should determine whether it will notify voters of a defect by both phone and email, if both are available.
- The SVC or EVBB should establish a policy for making multiple attempts to reach a voter if it is unsuccessful in reaching a voter by phone or email on the first attempt.

### Recommended Timelines for Notification Process

When the SVC or EVBB is determining whether there is adequate time to return a defective carrier envelope to the voter by mail, we strongly recommend that it takes into account postal delivery time frames.  According to the United States Postal Service (USPS), first-class delivery can take up to five business days.  Because a defective carrier envelope needs to be returned to the voter, and then mailed back to the early voting clerk, the SOS recommends that the SVC or EVBB implement a policy to provide notification of a defect by phone or email to all voters whose ballots are reviewed by the SVC or EVBB on or after the 14th day before election day (approximately 10 business days).  Although early voting ballot boards in counties with a population of 100,000 or greater cannot begin meeting until 12 days before election day, the SVC is authorized to return a defective carrier envelope by mail during this time.

STATE019857

**Rolling Review of Carrier Envelopes**

To ensure that voters are given the maximum amount of time to correct a defective carrier envelope, the SOS recommends that the SVC or EVBB meet on the first possible day allowed under the Texas Election Code to qualify all mail ballots received up until that point (as identified in the chart below). The SOS recommends the SVC or EVBB continue their qualification of ballots on a rolling basis throughout the authorized meeting period to ensure that voters who are eligible to correct defects are notified as quickly as possible of the defect and their correction options. Notice of all SVC or EVBB meeting times should be posted timely to ensure that poll watchers are aware of when the SVC or EVBB meetings will occur.

|  | First Day Mail Ballots can be Reviewed | Texas Election Code Section |
|---|---|---|
| **Signature Verification Committee** (All counties and local political subdivisions) | 20th day before election day | Sec. 87.027(f) |
| **Early Voting Ballot Board** (Counties with a population of 100,000 or more) | 12th day before election day | Sec. 87.0222(a) |
| **Early Voting Ballot Board** (Counties with a population under 100,000) | 4th day before election day | Sec. 87.022 |

# Methods of Correcting Defects in Carrier Envelope

## Correcting Defect by Returning Carrier Envelope by Mail

If the SVC or EVBB determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the SVC or EVBB shall return the original carrier envelope containing the voter's marked ballot to the voter by mail to allow the voter to correct the defect. (Secs. 87.0271(b), 87.0411(b)).

When the carrier envelope is sent to the voter for corrective action, the voter MUST return the carrier envelope by 7:00 p.m. on election day. If the voter is hand-delivering the carrier envelope to the early voting clerk's office on election day, it must be received by the early voting clerk no later than 7:00 p.m. Only the voter may hand-deliver their carrier envelope, and the voter must present a valid form of voter ID (either a List A ID or a List B ID with reasonable impediment declaration) at the time of delivery.

**Procedures**

The SOS recommends that when preparing to return the voter's carrier envelope containing the voter's marked ballot, the SVC or EVBB take several actions, including the following:

1. Stamp or mark the voter's carrier envelope with the words "Corrective Action Required."
2. Note the appropriate defect on the Notice of Carrier Defect – Carrier Envelope Returned to the Voter by Mail.

10

STATE019858

3. Mail the voter's defective carrier envelope along with the Notice of Carrier Defect – Carrier Envelope Returned to the Voter by Mail. The early voting clerk should include an envelope for the voter to return the corrected carrier envelope to the early voting clerk. This envelope should contain the Official Election Mail logo prescribed by the USPS. The voter must be notified if the return envelope needs additional postage.
4. Enter the voter's information on the Roster of Voters with Defective Carrier Envelopes – Returned to the Voter by Mail.

## Correcting Defect by Appearing in Person at Early Voting Clerk's Office

If the SVC or EVBB determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the SVC or EVBB may notify the voter of the defect by telephone or email and inform the voter that the voter may come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. The SVC or EVBB must also inform the voter that he or she may request to have their application for ballot by mail cancelled in a manner described by Section 84.032. (Secs. 87.0271(c), 87.0411(c)).

Upon appearing at the early voting clerk's office, the voter will be asked to submit the Corrective Action Form for Defective Carrier Envelope. This form allows the voter to provide the information necessary to address the defects in their carrier envelope.

### Procedures

The SOS recommends that when notifying the voter of a defect, the SVC or EVBB take certain actions, including the following:

- **If notifying by email:**
    1. Send the voter the Notice of Carrier Defect – Voter Notified of Carrier Envelope Defect by Phone or Email via email.
    2. The voter's name should be entered on the Roster of Voters with Defective Carrier Envelopes – Notified by Phone or Email, and the action taken by the voter should be noted on the roster.
    3. **Parameters for Email Notification**: The SOS recommends that the early voting clerk set up an email address for corrective action notifications. The early voting clerk and the SVC or EVBB should establish rules and procedures for utilizing this email address. Any emails sent or received through the corrective action process are considered election records under the Election Code, are subject to the Public Information Act, and should be retained by the general custodian of election records. The general custodian should consult with their attorney regarding any requests for such emails, as certain information may be exempt from disclosure under the Public Information Act.
- **If notifying by phone:**
    1. Contact the voter using any known phone number on file with the early voting clerk or in the possession of the SVC or EVBB.
        **NOTE**: As a reminder, the voter registrar may not transcribe, copy or otherwise record a telephone number furnished on a voter registration application. (Sec. 13.004). The SVC or EVBB may be able to review a voter registration application at the voter registrar's office to obtain a phone

11

number.  The registrar may also read a phone number from a voter registration application to a member of the SVC or EVBB, if necessary.
2. The SVC or EVBB should create a phone script that explains to the voter that the voter's mail ballot was received by the early voting clerk's office and has been reviewed by the SVC or EVBB, whichever is applicable.
3. The SOS recommends that the SVC or EVBB confirm the voter's identity using publicly available information.
   - **Example**: Ask the voter to confirm their voter registration address and whether they requested a mail ballot for the given election.
4. The voter should be told that upon review of the carrier envelope, the SVC or EVBB discovered a defect in the carrier envelope.  The specific defect should be explained.
5. The SVC or EVBB should explain the process for the voter to correct the defect in the carrier envelope as well as the process to cancel their mail ballot and vote in person during early voting or on election day.
6. The SVC or EVBB should provide a return phone number that the voter may use to confirm that they were contacted by the SVC or EVBB.  The number provided should be the number of the early voting clerk's office so the voter can verify this information and obtain details about the corrective action process during times that the SVC or EVBB are not meeting.
7. The voter's name should be entered on the Roster of Voters with Defective Carrier Envelopes – Notified by Phone or Email, and the action taken by the SVC or EVBB should be noted on the roster.

- **If the SVC or EVBB is unable to contact the voter**:
  1. The SVC or EVBB should leave a detailed message explaining that the SVC or EVBB determined there was a defect in the voter's carrier envelope and explain the process for correcting the defect.
  2. The SVC or EVBB should NOT provide any details related to a voter's personally identifiable information on a voicemail or with a person who is not the voter.
  3. The SVC or EVBB should leave a return number that the voter may use to validate the information provided by phone.
  4. The SVC or EVBB should mail the voter a Notice of Carrier Defect – Voter Notified of Carrier Envelope Defect by Phone or Email to inform the voter of their ability to correct the defect by appearing at the early voting clerk's office or by cancelling their mail ballot and voting in person during early voting or on election day.
  5. The voter's name should be entered on the Roster of Voters with Defective Carrier Envelopes – Notified by Phone or Email, and the action taken by the SVC or EVBB should be noted on the roster.
- **If the SVC or EVBB does not have a phone number or email to notify the voter**: The SVC or EVBB should mail a Notice of Carrier Defect – Voter Notified of Carrier Envelope Defect by Phone or Email to inform the voter of their ability to correct the defect by appearing at the early voting clerk's office or by cancelling their mail ballot and voting in person during early voting or on election day.

If a voter's carrier envelope has a defect that may be corrected, the SVC or EVBB must provide this status information to the county early voting clerk, who submits the information via TEAM to update the Ballot by Mail Tracker.

Any actions taken by the SVC or EVBB shall be uniformly applied to every ballot in the election to which this procedure applies.  (Secs. 87.0271(d), 87.0411(d)). A poll watcher is entitled to observe any action taken by the SVC or EVBB related to the corrective action process.  (Secs.

12

STATE019860

87.0271(e), 87.0411(e)).   Poll watchers may not transcribe or make notes of any voter's personally identifiable information while observing the activities of the SVC or EVBB.

## Correcting Certain Defects Through Ballot by Mail Tracker

If the SVC or EVBB determines that the identification information required under Section 84.002(a)(1-a) (ABBM) or Section 86.002 (carrier envelope) was missing or contained incorrect information, the voter may cure this defect through the SOS's Ballot by Mail Tracker. However, if the SVC or EVBB has returned the voter's carrier envelope by mail for correction, the voter also MUST return the carrier envelope to the early voting clerk no later than 7:00 p.m. on election day for the ballot to be processed and counted.  (Secs. 87.0271(b), 87.0411(b)).  The Notice of Carrier Defect form provides information on how to utilize the tracker.  Information validated through the Ballot by Mail Tracker should be provided to the EVBB for their final review of the ballot before determining acceptance or rejection.

If a voter's carrier envelope has a defect that may be corrected, the SVC or EVBB must give this information to the early voting clerk, who submits it via TEAM to update the tracker.

## Correcting Defect by Cancellation

If the voter received a defective carrier envelope in the mail or was notified by telephone or email about a defect, the voter may request to have their ABBM/marked ballot cancelled in accordance with Section 84.032.  If the voter has possession of the defective carrier envelope, it may be surrendered at an early voting or election day polling place in order to vote a regular ballot in person. The voter may also surrender the ballot at the early voting clerk's office and be given a Notice of Surrendered Ballot by Mail to take to the polling place and vote a regular ballot.

### Cancellation Options

After receiving a Notice of Carrier Defect by mail or receiving notification via email or phone, the voter may opt to cancel their ballot by mail and vote a regular ballot in person.  All cancellations must be completed in accordance with Section 84.032.  If the voter is an Annual ABBM voter, a cancellation request submitted for these purposes applies only to the current election unless the voter specifically requests to cancel their Annual ABBM. (Sec. 84.038).

- **Cancellation by Surrendering Mail Ballot at Polling Place During Early Voting or on Election Day**: If a voter has possession of their mail ballot, they may surrender that ballot at any early voting or election day polling place. Upon surrendering the ballot and completing the Application to Cancel a Ballot by Mail for Use in the Polling Place form, the voter will be given a regular ballot for voting.  (Sec. 84.032(c), (d)).
- **Cancellation at Polling Place Without Surrendering Mail Ballot**: If a voter appears at a polling place during early voting or on election day after receiving a Notice of Carrier Defect, but does not have the defective carrier envelope to surrender, the voter may complete the Application to Cancel a Ballot by Mail for Use in the Polling Place form. The voter should vote provisionally and the election judge should check reason #4 on the Affidavit of Provisional Voter Envelope. (Secs. 84.032(c), 84.035(b)).
- **Cancellation at Early Voting Clerk's Office**
  - ○ If the voter appears at the early voting clerk's office and submits a cancellation request in writing and surrenders the mail ballot, the voter will be permitted to vote a regular ballot in person.  The voter will be issued a Notice of Surrendered

13

STATE019861

Ballot by Mail. This notice will be taken to the polling place and presented to the presiding judge. The presiding judge must issue the voter a regular ballot for voting. (Secs. 84.032(a), (c), (d), 84.035(b)).

- o If the voter appears at the early voting clerk's office and submits a cancellation request in writing but does **NOT** surrender their mail ballot, the voter will be permitted to vote, but they must be issued a provisional ballot. The voter must complete a proper affidavit on cancellation form. The voter should be sent to their applicable polling location to vote provisionally. (Secs. 84.032(a), (c), 84.035(b)).
    - **NOTE**: The early voting clerk's office may not always contain the main early voting polling place. If a voter appears during early voting, the voter should be directed to the nearest early voting location to vote.
- **Cancellation by Voter who was Notified of the Defect by Phone or Email**: If a voter was notified of the defect in their carrier envelope by phone or email, the voter may cancel their mail ballot application and vote in person.
    - o If the voter appears at the early voting clerk's office and submits a cancellation request in writing and the early voting clerk can verify that ballot is in the possession of the EVBB, the early voting clerk can issue a Notice of Surrendered Ballot by Mail. This notice will be taken to the polling place and presented to the presiding judge. The presiding judge must issue the voter a regular ballot for voting. (Secs. 84.032(a), (c), (d), 84.035(b)).
    - o If the voter appears at the polling place and completes a written cancellation request, the voter may be given a provisional ballot. The presiding judge should mark reason number 4 on the provisional ballot affidavit envelope. The presiding judge may also want to add a notation that the voter was notified of a defect on their carrier envelope by phone or email. (Sec. 84.032(b), (c)).

There is no process under Texas law by which a voter can cancel a mail ballot application by phone. All cancellations must be in writing and completed in accordance with Section 84.032 of the Code. A written, signed, and scanned copy of a cancellation request may be submitted by email or fax. The request must contain an original, wet ink signature; an electronic or digital signature is not permissible. If a voter has possession of their mail ballot, they must still surrender their mail ballot at the polling place or early voting clerk's office in order to vote a regular ballot in person even if they submit a cancellation request.

### Provisional Voting

If the voter does not have possession of the carrier envelope, Notice of Improper Delivery, or Notice of Surrendered Ballot by Mail, but would like to cancel their mail ballot, the voter can go to an early voting or election day polling place and vote a provisional ballot.

## Correcting in the Early Voting Clerk's Office when Voter is Notified of Defect by Phone or Email

If a voter has been notified of a defect by phone or email and the voter has not been sent their defective carrier envelope, the voter may appear in person at the early voting clerk's office not later than the sixth day after election day to take certain corrective actions. (Secs. 87.0271(c), 87.0411(c)).

Upon appearing at the early voting clerk's office and informing the early voting clerk that they have been notified that their carrier envelope had a defect, the early voting clerk should review the appropriate Roster of Voters with Defective Carrier Envelopes (or other applicable records)

14

STATE019862

provided to the early voting clerk from the SVC or EVBB to determine what corrective action is necessary.

If the voter has a completed Corrective Action Form for Defective Carrier Envelope, the early voting clerk will take the form and make a notation on the appropriate roster that the form was received.

If the voter does not have a completed Corrective Action Form for Defective Carrier Envelope, the early voting clerk shall provide the form to the voter and have the voter complete the paperwork. After completion of paperwork, the early voting clerk will take the corrective action form and make a notation on the appropriate roster that the form was received.

The early voting clerk must review the documentation provided by the voter to ensure that the voter has completed the necessary corrective actions. The early voting clerk or deputy early voting clerk will then complete the remaining notations on the roster. The Corrective Action Form for Defective Carrier Envelope must be securely retained until the records are transferred back to the SVC or EVBB.

The early voting clerk should make arrangements with the SVC chair and/or the EVBB presiding judge to receive an updated copy of the Roster of Voters with Defective Carrier Envelopes after each meeting of the SVC or EVBB in which the committee or board qualifies voted ballots for signature comparison or makes a determination to accept or reject voted ballots. Additionally, the early voting clerk shall provide any Corrective Action Form for Defective Carrier Envelope received along with an updated copy of the roster to the EVBB for the board's final review of ballots. The SOS recommends that this information be provided to the EVBB prior to any meeting of the EVBB. On election day, if the EVBB is meeting prior to the closing of the polls, it should be provided with any Corrective Action Form for Defective Carrier Envelope received before its meeting and any forms received up until the polls close on election day.

The early voting clerk should provide instructions about how to process voters who appear in person to correct defects in their carrier envelopes to all deputy early voting clerks who may be assisting with the corrective action process or answering phone or email inquiries.

## Required Actions by Early Voting Ballot Board for all Ballots Subject to Corrective Action Process

Upon receiving any defective carrier envelopes that have been corrected and returned by mail, any Corrective Action Form for Defective Carrier Envelope that voters provided in person, or a notification from the early voting clerk that a voter provided missing or incorrect personal identification information through the Ballot by Mail Tracker, the EVBB must review the carrier envelope and associated paperwork to make a determination whether to accept or reject the ballot. (Sec. 87.0411(g)).

If a voter has been notified of a defect by phone or email, the voter has until the sixth day after election day to correct the defect. (Secs. 87.0271(c), 87.0411(c)). The voter's ballot may not be finally rejected for the reason provided in the Notice of Carrier Defect before the seventh day after election day. (Secs. 87.0271(g), 87.0411(g)). If a voter was mailed their defective carrier envelope, the revised carrier envelope containing the voted ballot MUST be returned to the early voting clerk by the time the polls close on election day. (Secs. 87.0271(b), 87.0411(b)).

15

STATE019863

# Impacts on Federal Post Card Application (FPCA) Voters

The new requirements that an ABBM contain a voter's personal identification information apply to Federal Post Card Application voters. The FPCA form already includes a place for a voter to provide this information, as the form is also used for voter registration purposes. If a voter fails to include their personal identification number on the FPCA, the voter may correct this defect by submitting a new FPCA or by validating their identification number in the Ballot by Mail Tracker.

Likewise, the new identification requirements for carrier envelopes apply to mail ballots for FPCA voters. Our FPCA materials have been revised to reflect this change. Many FPCA voters receive their balloting materials by email, and an FPCA voter cannot construct the carrier envelope with a sufficient secrecy flap. Additionally, all FPCA ballots must be carried by the USPS free of postage. To facilitate the mailing of FPCA balloting materials, early voting clerks may use any type of mailing envelope that contains the Official Election Mail logo and the required postage-paid information as long as the early voting clerk includes a required signature sheet for the voter to complete.

All FPCA voters must be provided with an Official Election Signature Sheet for an FPCA Voter if their balloting materials were sent by email. If the balloting materials were sent by physical mail, but the early voting clerk is using one of the FVAP envelopes that does not contain all of the requirements for the carrier envelope, the voter MUST be provided with an Official Election Signature Sheet for an FPCA Voter to return with their marked ballot.

The SOS has prescribed a version of the carrier envelope that contains the required postage-paid information to be used only for FPCA voters. The personal identification number requirements have been added to the FPCA signature sheet.

## Actions by Signature Verification Committee or Early Voting Ballot Board Regarding FPCA Voters

The SVC or EVBB, whichever is applicable, must review an FPCA voter's returned carrier envelope or signature sheet just as they would for a regular ABBM voter. However, as many FPCA voters will be utilizing a signature sheet that is contained within a sealed envelope, the SVC may have to open the sealed envelope to determine if the voter included a required signature sheet. The SVC may ONLY open FPCA carrier envelopes containing these voted ballots to ensure that the signature sheet has been included and that it contains the necessary information required for validation of personal identification numbers and/or signatures.

## Correction of Defects by FPCA Voters

If the FPCA voter provides missing or incorrect identification information on their carrier envelope or signature sheet, or did not include the Official Election Signature Sheet for an FPCA Voter, the voter must be notified of the defect in the same manner as a regular ABBM voter. Because the signature sheet is separate from the voted ballot and is authorized under state and federal law, FPCA voters who have a defect in their signature sheet have additional methods for returning this corrected or missing required documentation. Specifically, an FPCA voter may submit a corrected signature sheet by email, fax, personal delivery, or mail. The SVC or EVBB should make an appropriate notation on their roster to indicate how FPCA voters were notified of a defect and how the FPCA voter provided the corrected signature sheet to the SVC or EVBB. (Secs. 1.007, 31.003, 31.004, 87.0271(f), 87.0411(f), 101.007, 101.109).

16

STATE019864

# Validating Voter Registration Information When an Entity or Political Subdivision Does Not Contract with County Election Officer

The requirements to verify voters' personal identification information with their voter registration records apply to all elections regardless of whether a political subdivision contracts with the county election officer to conduct the election on its behalf. For those entities that are running their own elections, the following verification process must be completed.

### Verifying Personal Identification Information on ABBM/FPCA

- For Annual ABBM/FPCA voters who file applications with the county: When the county election office forwards the list of ABBM/FPCA voters along with copies of their mail ballot applications, the county shall only forward those applications for which the personal identification information provided on the ABBM/FPCA matches the information in the voter's voter registration record. The county election officer should prepare a certification, included with the forwarded list, confirming that the information provided on each forwarded application matches the voter's voter registration record. If the early voting clerk does not want to rely on the county's certification, the clerk must coordinate with the county election officer to determine a date and time to go to the county's office to validate the information on the ABBM/FPCA with the voter's voter registration record.

- If a local entity receives an ABBM or FPCA directly from a voter, the early voting clerk must make arrangements with the county election officer to verify that the information provided on the application matches the voter's voter registration record. This verification may be made over the telephone or in person before the early voting clerk sends the voter's balloting materials. Verification of personal identification information should be confirmed on a separate document or directly on the ABBM (as long as the notation does not obscure any of the applicant's markings). The notation should indicate that the verification occurred and include the date of verification.

    **NOTE**: If a local entity receives an Annual ABBM/FPCA, the entity must forward the application to the county as soon as possible for the county's use. (Sec. 86.0015(d)).

### Verifying Personal Identification Information on Carrier Envelope

- Because the early voting clerk already validated the personal identification information on the voter's ABBM, if the information submitted on the carrier envelope matches the information on the ABBM, the EVBB may accept the information and proceed to signature verification.

- If the information submitted on the carrier envelope does NOT match the information on the voter's ABBM, the SVC or EVBB must verify that the information on the carrier envelope matches the voter's voter registration record. The SVC or EVBB must verify this information with the voter registrar or county election officer. The verification may be performed over the telephone or in person at the voter registrar's or county election officer's office, or a member of the voter registrar's or county election officer's staff may be on site at the SVC or EVBB meeting to look up the voter registration records. Verification of personal identification information should be confirmed on a separate document or directly on the ABBM (provided that the notation does not obscure any of the applicant's markings). The notation should indicate that the verification occurred and

17

STATE019865

include the date of verification. The verification, method used for verification, and the individuals involved in the verification must all be documented by the SVC or EVBB, and these records should be maintained for the applicable preservation period.

# Forms Related to Corrective Action Process

The SOS has prescribed several forms pertaining to the procedures identified in this advisory.

### Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3)

The SOS has prescribed a specific form for early voting clerks to use when notifying a voter that their ABBM is subject to rejection because the voter failed to provide any of the required personal identification information on the ABBM or the information provided by the voter on the ABBM does not match the voter's voter registration record. This new form provides detailed information on how the voter can correct this defect by utilizing the SOS's Ballot by Mail Tracker to validate their personal identification numbers, as required by Section 86.001(f-1). If the missing or incorrect identification information is the only basis for rejecting the ABBM, we recommend that early voting clerks use Form 6-3 as it explains the correction process.

The SOS has also added language regarding missing or incorrect personal identification information to the standard Notice of Rejected Application for Ballot by Mail (Form 6-2). If there are multiple defects with an ABBM (including missing or incorrect identification information), we recommend that the early voting clerk send the standard Form 6-2 because the voter must submit a new ABBM to resolve the other defects even if the voter utilizes the Ballot by Mail Tracker to correct the missing or incorrect information.

### Notice of Rejected Application for Ballot by Mail – Required Personal Identification Number Not Associated with Voter Record (Form 6-4)

The SOS has prescribed a specific form for early voting clerks to use when notifying a voter that their ABBM is subject to rejection because the voter's voter registration record does not contain one or more of the required personal identification numbers. This notice provides instructions on how a voter can add their personal identification number(s) to their voter registration record through texas.gov or by submitting a new voter registration application to the voter registrar. A postage-paid voter registration application must accompany this notice so that the voter may add the numbers to his or her voter registration record if the voter does not have online access.

### Notice of Carrier Defect (Forms 8-23, 8-24)

The SOS has prescribed two different Notice of Carrier Defect forms to notify voters of defects in their carrier envelope and the available corrective actions. For voter convenience, we have included a copy of the Corrective Action Form for Defective Carrier on the reverse side of each Notice of Carrier Defect.

- The Notice of Carrier Defect – Carrier Envelope Returned to the Voter by Mail is to be used for those voters who are mailed back their carrier envelope for correction.

- The Notice of Carrier Defect – Voter Notified of Carrier Envelope Defect by Phone or Email is to be used for those voters who are notified of their carrier envelope defect by phone or email.

18

STATE019866

The notice must be completed by members of the SVC or EVBB. Any phone call or email notifying a voter of a defect in their carrier envelope should be made or sent during the time the SVC or EVBB is convened. The SVC or EVBB may utilize employees of the early voting clerk to assist with this process if all activities are completed while the SVC or EVBB is officially convened so that poll watchers may be present to observe the activities.

### Roster of Voters with Defective Carrier Envelopes (Forms 8-20, 8-21, 8-22)

The SVC or EVBB should create a Roster of Voters with Defective Carrier Envelopes – Returned to the Voter by Mail and a Roster of Voters with Defective Carrier Envelopes – Notified by Phone or Email to record and detail the voters whose carrier envelopes have been mailed to a voter or are pending review by the SVC or EVBB. The roster should include the following information:

- Voter's Name/VUID;
- Type of defect on the carrier envelope;
- Date the SVC or EVBB provided notice of defect, if applicable;
- How notice was provided (returned carrier, phone call, email); and
- Who on the SVC or EVBB provided the notice.

A copy of the roster should be provided to the early voting clerk on a regular basis so that they are aware of voters who may appear at the early voting clerk's office to complete any corrective actions associated with their carrier envelope or cancel their mail ballot application.

The SOS has prescribed three different sample rosters that may be used for these purposes. The SVC or EVBB may choose to complete the roster or track this information electronically, as long as the SVC or EVBB is able to generate a report with the required information that can be provided to the early voting clerk to assist with the corrective action process.

Voters' names entered on this roster are not eligible for public inspection until after the voter has returned the corrected carrier envelope, canceled their mail ballot, or appeared in person to correct any necessary defects. (Sec. 87.121).

### Corrective Action Form for Defective Carrier Envelope (Form 6-14)

The SOS has prescribed a specific form that voters should use when appearing in person at the early voting clerk's office to correct certain defects in their carrier envelope. This form allows the voter to provide the missing or incorrect information from their carrier envelope. When completed, the early voting clerk must provide this form to the EVBB so that the board can make a final determination on acceptance or rejection of a voted mail ballot.

The Corrective Action Form for Defective Carrier Envelope also contains the elements of a statement of residence. Voters may want to consider completing all portions of the corrective action form; if the EVBB subsequently discovers a different defect in the carrier envelope (such as a missing SOR form), and the voter provided all the required information in the corrective action form, this form can be used to correct the newly found defects.

The SOS has prescribed a standalone Corrective Action Form for Defective Carrier, but has also included this form on the reverse side of the Notice of Carrier Defect form for voter convenience.

19

STATE019867

**Notice of Surrendered Ballot by Mail (Form 6-13)**

The SOS has prescribed a Notice of Surrendered Ballot by Mail to use when a voter surrenders their mail ballot to the early voting clerk and is eligible to vote a regular ballot in person. Upon surrendering their mail ballot, the voter will be issued the Notice of Surrendered Ballot by Mail. The voter will take this form to their early voting or election day polling place and present the form to the election judge, entitling the voter to vote a regular ballot in person.

# Address Confidentiality Program

When reviewing the Confidential Voter Registration Form and Early Voting Ballot Application of a voter in the Attorney General's address confidentiality program, the early voting clerk will not compare the personal identification information on the application form to a voter registration record as these voters are not registered voters in the statewide voter registration system.

After the voter returns their carrier envelope, the early voting clerk or applicable designee must confirm that the personal identification information on the carrier envelope matches the information on the Confidential Voter Registration Form and Application for Ballot by Mail. If the information does not match, the early voting clerk or designee must generate a Notice of Carrier Defect. The voter's name is not entered on the Roster of Voters with Defective Carrier Envelopes. Instead, a notation of the defect is made on the Roster for Early Voting by Mail for Address Confidential Applicants.

As these individuals are not registered voters in the statewide registration system, the Ballot by Mail Tracker will not contain information regarding their ballot application or carrier envelope. Voters wishing to verify the receipt of their carrier envelope must contact the early voting clerk.

# Early Voting Clerk Notification to Voter of Defects in Carrier Envelope

Under Section 86.011(d) of the Code, if an early voting clerk receives a timely carrier envelope that does not comply with the applicable requirements of the Code, the early voting clerk may deliver the carrier envelope in person or by mail to the voter so that the voter may correct the defect. Additionally, the early voting clerk may notify the voter of the defect by phone and advise the voter that they may come to the early voting clerk's office to correct the defect or cancel their ABBM and vote in person. The early voting clerk may utilize this provision for defects such as a missing signature by the voter, a partially completed witness or assistant box (if applicable), or a ballot that is not returned in a carrier envelope.

If an early voting clerk chooses to notify voters of defects in their carrier envelope under Section 86.011(d), the clerk must apply these procedures uniformly to all voters in similar circumstances. Additionally, the SOS recommends keeping a log to track the ballots mailed to voters and the ballots in the possession of the early voting clerk before ballots are delivered to the SVC or EVBB. If the early voting clerk notifies a voter of a defect in their carrier envelope by mail, the clerk should include a letter explaining the actions that the voter needs to take to correct and return the carrier envelope.

Please be advised that the early voting clerk can only notify voters of certain defects under Section 86.011(d). If the early voting clerk receives a mail ballot with an obvious defect, but it is within the time frame that the SVC or EVBB can meet, the early voting clerk should expeditiously deliver these ballots to the SVC or EVBB so that they may complete their full

STATE019868

review and the voter can be notified of all defects in a timely fashion. The SVC or EVBB should review the ballots with obvious defects first to ensure that those voters are timely notified of their options to correct or cancel their mail ballot.

# Types of Defects and Corrective Action Options

| Type of Defect | Carrier Envelope Returned by Mail to Voter | Voter Notified of Defect by Phone or Email |
|---|---|---|
| Voter did not sign the carrier envelope certificate. | Voter should sign original carrier envelope and return the carrier envelope to the early voting clerk by mail by 7:00 p.m. on election day, or, if on election day, the voter may hand-deliver their signed carrier envelope to the early voting clerk's office. Voter can make corrections directly on the returned carrier envelope. They do not need a Corrective Action for Carrier Envelope form.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person. If voter surrenders their mail ballot, they should be given a regular ballot. If the voter does not surrender their mail ballot, they must vote provisionally. | Voter can complete Corrective Action Form for Defective Carrier Envelope and return the form in person to the early voting clerk's office by the 6th day after election day.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person.<br>• If voter cancels at the early voting clerk's office and is given a Notice of Surrendered Ballot by Mail, the voter votes a regular ballot.<br>• If voter surrenders ballot at the polling place, voter may fill out cancellation form and vote a regular ballot.<br>• If voter appears at the polling place without a Notice of Surrendered Ballot by Mail and no ballot, the voter may fill out cancellation form and be given a provisional ballot. |
| The EVBB/SVC cannot determine whether the signature on the carrier envelope is that of the voter. | Voter can complete Corrective Action Form for Defective Carrier Envelope form and return the form AND the original carrier envelope to the early voting clerk's office. Carrier envelope and Corrective Action for Carrier Envelope form must be received by the early voting clerk by 7:00 p.m. on election day.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person. If voter surrenders their mail ballot, they should be given a regular | Voter can complete Corrective Action Form for Defective Carrier Envelope and return the form in person to the early voting clerk's office by the 6th day after election day.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person.<br>• If voter cancels at the early voting clerk's office and is given a Notice of Surrendered Ballot by Mail, the voter votes a regular ballot.<br>• If voter surrenders ballot at the |

21

| Type of Defect | Carrier Envelope Returned by Mail to Voter | Voter Notified of Defect by Phone or Email |
|---|---|---|
| | ballot. If the voter does not surrender their mail ballot, they must vote provisionally. | polling place, voter may fill out cancellation form and vote a regular ballot.<br>• If voter appears at the polling place without a Notice of Surrendered Ballot by Mail and no ballot, the voter may fill out cancellation form and be given a provisional ballot. |
| Voter did not include the required Statement of Residence form. | Voter can complete Corrective Action Form for Defective Carrier Envelope and Statement of Residence form and return the forms AND the original carrier envelope to the early voting clerk's office. Carrier envelope, SOR form, and Corrective Action Form for Defective Carrier Envelope must be received by the early voting clerk by 7:00 p.m. on election day.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person. If voter surrenders their mail ballot, they should be given a regular ballot. If the voter does not surrender their mail ballot, they must vote provisionally. Voter may be required to complete a SOR when appearing to vote in person. | Voter can complete Corrective Action Form for Defective Carrier Envelope and Statement of Residence form and return the form in person to the early voting clerk's office by the 6th day after election day.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person.<br>• If voter cancels at the early voting clerk's office and is given a Notice of Surrendered Ballot by Mail, the voter votes a regular ballot.<br>• If voter surrenders ballot at the polling place, voter may fill out cancellation form and vote a regular ballot.<br>• If voter appears at the polling place without a Notice of Surrendered Ballot by Mail and no ballot, the voter may fill out cancellation form and be given a provisional ballot.<br>• Voter may be required to complete a SOR when appearing to vote in person. |
| The personal identification information required under Section 84.002(a)(1-a) (ABBM) or Section 86.002 (carrier envelope) was missing or contained incorrect information. | Voter can complete Corrective Action Form for Defective Carrier Envelope and return the form AND the original carrier envelope to the early voting clerk's office. Carrier envelope and Corrective Action Form for Defective Carrier Envelope must be received by the early voting clerk by 7:00 p.m. on election day. | Voter can complete Corrective Action Form for Defective Carrier Envelope and return the form in person to the early voting clerk's office by the 6th day after election day.<br><br>**OR**<br><br>Voter can log into the Ballot by Mail Tracker on www.votetexas.gov to |

22

STATE019870

| Type of Defect | Carrier Envelope Returned by Mail to Voter | Voter Notified of Defect by Phone or Email |
|---|---|---|
| | **OR**<br><br>Voter can enter the missing information on the original carrier envelope that was returned to the voter and return the carrier envelope to the early voting clerk.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person. If voter surrenders their mail ballot, they should be given a regular ballot. If the voter does not surrender their mail ballot, they must vote provisionally. | complete the verification of the missing or incorrect personal identification information.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person.<br>• If voter cancels at the early voting clerk's office and is given a Notice of Surrendered Ballot by Mail, the voter votes a regular ballot.<br>• If voter surrenders ballot at the polling place, voter may fill out cancellation form and vote a regular ballot.<br>• If voter appears at the polling place without a Notice of Surrendered Ballot by Mail and no ballot, the voter may fill out cancellation form and be given a provisional ballot. |
| If a voter used a witness for completion of the carrier envelope, the witness information was incomplete. | Voter can complete, or have a witness help complete, the Corrective Action Form for Defective Carrier Envelope and return the form AND the original carrier envelope to the early voting clerk's office. Carrier envelope and Corrective Action Form for Defective Carrier Envelope must be received by the early voting clerk by 7:00 p.m. on election day.<br><br>**OR**<br><br>Voter/witness can enter the missing information on the original carrier envelope or Corrective Action Form for Defective Carrier Envelope and return the carrier envelope to the early voting clerk.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person. If voter surrenders their mail ballot, they should be given a regular | Voter can have the witness complete the Corrective Action Form for Defective Carrier Envelope, and voter can return the form in person to the early voting clerk's office by the 6th day after election day.<br><br>**OR**<br><br>Voter can appear in person at the early voting clerk's office by the 6th day after election day and the early voting clerk/deputy early voting clerk can serve as a witness for the voter on the corrective action form.<br><br>**OR**<br><br>Voter can cancel their mail ballot application and vote in person.<br>• If voter cancels at the early voting clerk's office and is given a Notice of Surrendered Ballot by Mail, the voter votes a regular ballot.<br>• If voter surrenders ballot at the polling place, voter may fill out |

23

| Type of Defect | Carrier Envelope Returned by Mail to Voter | Voter Notified of Defect by Phone or Email |
|---|---|---|
| | ballot. If the voter does not surrender their mail ballot, they must vote provisionally. | cancellation form and vote a regular ballot.<br>• If voter appears at the polling place without a Notice of Surrendered Ballot by Mail and no ballot, the voter may fill out cancellation form and be given a provisional ballot. |

## Questions and Answers

1. **What if a voter does not use the new ABBM form or otherwise does not include any of the required personal identification information?**

   A. The early voting clerk must reject the voter's ABBM and provide notice of the rejection. If the missing identification information is the only defect in the ABBM, the early voting clerk should send the voter a Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number. The voter may correct this defect by submitting a new ABBM or by validating their personal identification information through the Ballot by Mail Tracker on votetexas.gov.

2. **What information does a voter need to access the Ballot by Mail Tracker?**

   A. To access the Ballot by Mail Tracker on votetexas.gov, the voter must enter their DPS-issued number, the last four digits of their social security number, and their residence address as listed in their voter registration record.

3. **A voter can't access the Ballot by Mail Tracker because their voter registration record does not contain a required personal identification number. What should the voter do?**

   A. If a voter is unable to enter the Ballot by Mail Tracker because they do not have an identification number associated with their voter registration record, the voter needs to update their voter registration record. They can do so by submitting a new voter registration application to the registrar or by validating their personal identification numbers on texas.gov if the voter has a DPS-issued driver's license or personal identification card. The process for updating the voter registration record is explained to the voter in Notice of Rejected Application for Ballot by Mail – Required Personal Identification Number Not Associated with Voter Record (Form 6-4).

4. **If the personal identification information on the carrier envelope matches the voter's voter registration record, should the SVC or EVBB still review the signatures on the ABBM and carrier envelope?**

   A. Yes, but there is a rebuttable presumption that the signatures on the ABBM and carrier envelope are those of the voter. The only way to reject a ballot due to a signature mismatch is for a member of the SVC or EVBB to rebut the presumption. The presumption may be rebutted by presenting other past

24

signatures on file with the early voting clerk or voter registrar that would support a finding that the signatures on the carrier envelope and ABBM are not those of the same voter.

**5.  What if a voter includes an incomplete or unsigned Statement of Residence form?**

    **A.** A voter should be notified of an incomplete SOR and provided an opportunity to correct this defect, similar to the process for a missing SOR.

**6.  Can someone other than the voter return a voter's corrected carrier envelope or corrective action form in person?**

    **A.** No. Only the voter can hand-deliver their corrected carrier envelope on election day, or complete the Corrective Action Form for Defective Carrier Envelope, in person at the early voting clerk's office. If necessary, the voter may have someone accompany the voter to serve as a witness.

**7.  If the SVC or EVBB attempts to call a voter and is unable to reach the voter by phone, should they leave a message? Can the SVC or EVBB call multiple times?**

    **A.** The SVC or EVBB can leave a message for the voter, but they should avoid providing any personally identifiable information on the voicemail so as not to compromise the privacy of the voter. Additionally, the SVC or EVBB can make multiple attempts to reach a voter by phone. The SOS recommends that the SVC or EVBB set a policy on the number of attempts allowed and what information will be provided in a voicemail message. Any actions that the EVBB/SVC takes for one voter must be uniformly applied to all voters in similar circumstances for that election.

**8.  If the SVC or EVBB is unable to reach the voter by phone, what number should the SVC or EVBB provide as a return number in a voicemail message?**

    **A.** The SOS recommends that the SVC or EVBB provide a telephone number that will be routinely staffed by members of the SVC or EVBB, or by deputy early voting clerks, so that voters can receive information about the corrective action process in a timely fashion. As a best practice, the SVC or EVBB should identify the days and hours that someone will be available to answer calls. In addition, if a voicemail is set up with the return phone number, this voicemail should be routinely checked and any voicemails should be logged and tracked to ensure that voters are being provided uniform information in a timely fashion. The SVC or EVBB does not need a separate phone line. They can use the early voting clerk's main number, but the SVC or EVBB must work with the early voting clerk to develop a procedure for tracking calls about the correction process.

**9.  Can the SVC or EVBB contact voters both by email and phone?**

    **A.** Yes. As long as the SVC or EVBB apply the same procedures uniformly to all voters in similar circumstances, they can contact a voter by phone and email to notify them of the defect. The SVC or EVBB should set a policy regarding the number and/or methods of attempts to contact a voter. In addition, all attempts to contact a voter should be documented on the applicable roster.

25

STATE019873

**10. A voter has contacted our office and indicated that the personal identification number in their voter registration record is wrong; what can the voter do?**

> **A.** The voter can correct their personal identification number by submitting a new voter registration application to the voter registrar.

**11. If the voter lists a personal identification number on an ABBM that is not contained in their voter registration record, can the early voting clerk update the voter registration record?**

> **A.** No. The voter should be notified that their voter registration record does not contain the identification number listed on the ABBM. The voter can update their voter registration record by submitting a new voter registration application to the registrar or by validating their personal identification numbers on texas.gov.

**12. If a voter validates their DPS-issued driver's license number or social security number through texas.gov to update their voter registration record, how long does it take for this change to be effective?**

> **A.** This is an immediate update. It does not take 30 days for the update to become effective.

**13. If a voter hand-delivers their ABBM to the early voting clerk, can the clerk review whether the personal identification information on the ABBM matches the voter's voter registration record before the voter submits their application?**

> **A.** Upon receipt of the ABBM, the early voting clerk can review the application even if the voter remains in the clerk's presence. However, any such actions taken as to one voter should be uniformly applied to all voters in similar circumstances. Thus, if the early voting clerk intends to review hand-delivered ABBMs for completeness or accuracy in the voter's presence, the clerk should follow the same process for all voters who hand-deliver their ABBMs.

**14. Can a poll watcher challenge the acceptance of a signature by the EVBB?**

> **A.** No. A poll watcher has no authority to challenge the acceptance of a signature or any actions taken by the SVC or EVBB during the course of their regular meetings. The poll watcher can point out an election irregularity to the EVBB presiding judge or the SVC chair, after which the poll watcher has no further authority to take any actions with respect to their observations.

**15. What email address should the SVC or EVBB use when notifying voters of a defect by email?**

> **A.** The SOS recommends that the early voting clerk set up an email address for these notifications. The early voting clerk and the SVC or EVBB should establish rules and procedures for utilizing the email address. Any emails sent or received through the corrective action process are considered election records under the Election Code, are subject to the Public Information Act, and should be retained by the general custodian of election records. The general custodian should consult with their attorney regarding any requests for such emails, as certain information may be exempt from disclosure under the Public Information Act.

STATE019874

**16. What if a voter comes to the early voting clerk's office to correct a defect in their carrier envelope and the reason for voting by mail is absence from the county?**

   **A.** If a voter appears in person to correct a defect with their carrier envelope, the voter must be provided an opportunity to correct the defect, and the early voting clerk must send any completed corrective action form to the early voting ballot board.  The EVBB should not reject a correction merely because the voter applied to vote by mail due to expected absence from their county of residence.

**17. If a county election officer is forwarding applicable annual ABBMs and FPCAs to a local entity, how should that information be transmitted to the entity?**

   **A.** The county election officer should transmit copies of the applicable ABBMs and FPCAs through a secure method.  This may include hand-delivering the copies, arranging for the local entity to pick up the copies, or utilizing an encrypted email or file transfer protocol.

**18. If a voter is mailed their carrier envelope to correct a defect, is the voter's name removed from the roster of voters who voted by mail under Section 87.121?**

   **A.** No.  The voter's name will stay on the early voting roster as the voter has properly and timely submitted their mail ballot.  The voter's name will subsequently be entered on the Roster of Voters with Defective Carrier Envelopes – Returned to the Voter by Mail to track the status of the ballot in the correction process.

**19. Can a voter call and ask what personal identification number the voter registrar has on file for that voter?**

   **A.** Yes. A voter can ask to confirm the number listed, but the number should be provided by the voter and the early voting clerk can confirm whether that number is accurate.  The early voting clerk should not provide any personal identification number from the voter registration record to a person over the phone.  If the voter provides an incorrect number, the voter registrar can tell the voter that the number is incorrect, but the voter registrar should not read the number to the voter over the phone.  The voter registrar can also confirm the type of number listed on file (driver's license or social security number).

**20. What if an entity has a mailed a corrected ballot and the voter returns both ballots, but the second, corrected ballot has a defect in the carrier envelope (ex: missing personal identification information)?  Can the SVC or EVBB review the original carrier envelope to obtain the missing information?**

   **A.** No, the original ballot may not be reviewed or counted. The initial carrier envelope is never sent to the SVC or EVBB if the corrected ballot has been returned.  If there is a defect in the corrected ballot, the SVC or EVBB must notify the voter of the defect and allow the voter an opportunity to correct the defect.  Even if the voter does not resolve the defect in the corrected ballot, the SVC or EVBB may not review the original ballot, as the corrected ballot is now the timely returned ballot.

27

STATE019875

**21. If the SVC or EVBB is unable to locate a voter's email or phone number to notify the voter of a defect in their carrier envelope, what should the SVC or EVBB do?**

    **A.** The SVC or EVBB should mail a Notice of Carrier Defect to inform the voter of their ability to correct the defect by appearing at the early voting clerk's office or by cancelling their mail ballot and voting in person during early voting or on election day.

**22. Can the early voting clerk retain the voter's ABBM and a copy of the Notice of Rejected Application for Ballot by Mail electronically?**

    **A.** Yes.  There is no prohibition on an early voting clerk scanning these documents for storage and retention.  However, the original document must be kept for the retention period associated with precinct election records.

If you have any questions regarding this advisory, please contact the Elections Division toll-free at 1-800-252-VOTE(8683).

KI:CA

28

# EXHIBIT

# 3

Please complete sections by printing LEGIBLY. If you have any questions about how to fill out this application, please call your local voter registrar.
Please visit the Texas Secretary of State website, **www.sos.state.tx.us**, and for additional election information visit **www.votetexas.gov.**
*Este formulario está disponible en español. Favor de llamar a su registrador de votantes local para conseguir una versión en español.*

## Qualifications

- You must register to vote in the county in which you reside.
- You must be a citizen of the United States.
- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by Election Day.
- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.
- You must not have been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**1** | **THESE QUESTIONS MUST BE COMPLETED BEFORE PROCEEDING (Check one)**

☐ New Application ☐ Change of Address, Name, or Other Information ☐ Request for a Replacement Card

Are you a United States Citizen? ☐ Yes ☐ No    Will you be 18 years of age on or before election day? ☐ Yes ☐ No

**If you checked 'No' in response to either of the above, do not complete this form.**

Are you interested in serving as an election worker? ☐ Yes ☐ No

**2** | **Last Name** Include Suffix if any (Jr, Sr, III) | **First Name** | **Middle Name**(If any) | **Former Name** (if any)

**3** | **Residence Address:** Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address) | **City** | **TEXAS**
| | **County** | **Zip Code**

**4** | **Mailing Address:** Street Address and Apartment Number. (If mail cannot be delivered to your residence address.) | **City** | **State**
| | | **Zip Code**

**5** | **City and County of Former Residence in Texas**

**6** | **Date of Birth: (mm/dd/yyyy)**    **7** | **Gender** (Optional) ☐ Male ☐ Female    **8** | **Telephone Number** (Optional) Include Area Code

**9** | **Texas Driver's License No. or Texas Personal I.D. No.** (Issued by the Department of Public Safety)    **If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number**

XXX-XX-

☐ I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

**10** | I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to one year in jail, a fine up to $4,000, or both. Please read all **three** statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**X**                                        Date: _____

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

### FOR VOLUNTEER DEPUTY REGISTRAR USE ONLY

| Deputy Number | Application must be delivered to Voter Registrar no later than **5 days** after receipt |
| | Signature of Volunteer Deputy Registrar          Date |

### REGISTRATION RECEIPT

| Name of Applicant/Applicant's Agent (if applicable) | Receipt No.: |
| Name of Volunteer Deputy Registrar | Deputy No.: |
| Signature of Volunteer Deputy Registrar | Date: |

You should receive your Voter Registration Certificate within **30 days**. Please keep this receipt until you receive your Voter Registration Certificate from the voter registrar.

STATE040495

EXHIBIT

4

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| THE STATE OF TEXAS, *et al.*, | § | |
| *Defendants*. | § | |

---

**DEFENDANTS' OBJECTIONS AND RESPONSES TO THE UNITED STATES'**
**FIRST SET OF REQUESTS FOR ADMISSION**

TO:    Plaintiff the United States of America, by and through its attorneys of record, Kristen Clarke, Pamela S. Karlan, T. Christian Herren, Jr., Richard A. Dellheim, Daniel J. Freeman, Dana Paikowsky, Michael E. Stewart, and Jennifer Yun, United States Department of Justice Civil Rights Division, 950 Pennsylvania Avenue NW, Washington, DC 20530

John Scott, in his official capacity as the Texas Secretary of State, and the State of Texas (Defendants) hereby serve Objections and Responses to the United States' First Set of Requests for Admission, pursuant to the Federal Rules of Civil Procedure.

Date: January 13, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415
*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2022, the attached Defendants' Objections and Responses to the United States' Second Request for Production of Documents was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## RESPONSES

**REQUEST FOR ADMISSION NO. 1:** Admit that after the November 2020 election, Texas Elections Director Keith Ingram stated that "Texas had an election that was smooth and secure." *See* Exhibit A.

**RESPONSE:** Defendants admit that Director Ingram said that the 2020 general election in Texas was "smooth and secure" in the context of addressing the extraordinary circumstances under which that election took place. Specifically, the comment was made in the context of speaking about the election occurring during a global pandemic that presented unique obstacles to both election officials and voters. Defendants deny that Director Ingram's comment was meant to apply to anything else beyond that specific context.

**REQUEST FOR ADMISSION NO. 2:** Admit that prior to the enactment of SB 1, the Texas Secretary of State's webpage for annual seminar presentation materials contained guidance for election administrators that directed assistors to "be prepared to read or explain all ballot choices or questions in a language the voter understands." *See* Exhibit B at 16.

**RESPONSE:** Defendants lack sufficient information to either admit or deny this statement. The Texas Secretary of State's webpage does not currently contain any materials that feature the quoted phrase. Instead, Exhibit B of the United States' Requests features materials from Disability Rights Texas, which is a private third-party organization. The materials provided by the United States give no indication of having been posted on the Texas Secretary of State's webpage. Should Defendants locate materials containing this statement in an archived version of that website, Defendants will supplement this response. Because Defendants are without sufficient information or knowledge to admit or deny this Request, the statement is therefore denied.

**REQUEST FOR ADMISSION NO. 3:** Admit that prior to the enactment of SB 1, Texas poll worker training materials directed election officials to "[r]ely on the voter as the 'expert'" and to "ask them what you can do to best assist them." *See* Exhibit C at 10.

**RESPONSE:** Defendants lack sufficient information to either admit or deny this statement. Exhibit C of the United States' Request features materials from Disability Rights Texas, which is a private third-party organization. The materials provided by the United States give no indication of having ever been used or recommended by the Texas Secretary of State for poll worker training, nor do Defendants have any knowledge of their use for such a purpose. Because Defendants are without sufficient information or knowledge to admit or deny this Request, the statement is therefore denied.

**REQUEST FOR ADMISSION NO. 4:** Admit that the Texas Election Code, as amended by SB 1, bars assistors from answering voters' questions while providing assistance by any means other than "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot." SB 1 § 6.04 (codified at Section 64.034 of the Texas Election Code).

**RESPONSE:** Defendants deny that Section 64.034, which sets forth the oath that must be taken by persons providing voting assistance, directly bars such assistors from engaging in any activity. Beyond that specific denial, this Request contains a statutory citation that speaks for itself. To the extent that this Request requires an interpretation of Section 64.034 of the Texas Election Code or its interaction with other statutory provisions, including but not limited to Section 64.036 or Section 276.018 of the Texas Election Code, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Additionally, state law expressly prohibits election officials from interpreting Section 64.034 "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022. Accordingly, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 5:** Admit that the Texas Election Code, as amended by SB 1, bars assistors from explaining the voting process while providing assistance, even when asked to do so. *See* SB 1 § 6.04 (codified at Section 64.034 of the Texas Election Code).

**RESPONSE:** Defendants deny that Section 64.034, which sets forth the oath that must be taken by persons providing voting assistance, directly bars such assistors from engaging in any activity. Beyond that specific denial, this Request contains a statutory citation that speaks for itself. To the extent that this Request requires an interpretation of Section 64.034 of the Texas Election Code or its interaction with other statutory provisions, including but not limited to Section 64.036 or Section 276.018 of the Texas Election Code, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Additionally, state law expressly prohibits election officials from interpreting Section 64.034 "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022. Accordingly, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 6:** Admit that the Texas Election Code, as amended by SB 1, bars assistors from paraphrasing or explaining ballot language to a voter while providing assistance, even when asked to do so. *See* SB 1 § 6.04 (codified at Section 64.034 of the Texas Election Code).

**RESPONSE:** Defendants deny that Section 64.034, which sets forth the oath that must be taken by persons providing voting assistance, directly bars such assistors from engaging in any activity. Beyond that specific denial, this Request contains a statutory citation that speaks for itself. To the extent that this Request requires an interpretation of Section 64.034 of the Texas Election Code or its interaction

with other statutory provisions, including but not limited to Section 64.036 or Section 276.018 of the Texas Election Code, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Additionally, state law expressly prohibits election officials from interpreting Section 64.034 "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022. Accordingly, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 7:** Admit that the Texas Election Code, as amended by SB 1, bars assistors from clarifying translation or interpretation of ballot language while providing assistance, even when asked to do so. *See* SB 1 § 6.04 (codified at Section 64.034 of the Texas Election Code).

**RESPONSE:** Defendants deny that Section 64.034, which sets forth the oath that must be taken by persons providing voting assistance, directly bars such assistors from engaging in any activity. Beyond that specific denial, this Request contains a statutory citation that speaks for itself. To the extent that this Request requires an interpretation of Section 64.034 of the Texas Election Code or its interaction with other statutory provisions, including but not limited to those contained in Subchapter B of Chapter 61 of the Texas Election Code or Section 276.018, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Additionally, state law expressly prohibits election officials from interpreting Section 64.034 "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022. Accordingly, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 8:** Admit that mail ballot materials submitted by absent uniformed services voters and overseas voters, as defined by the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20310, are subject to and in no way excluded from the requirements of Section 5.07 of SB 1 (codified at Section § 86.001 of the Texas Election Code) and 5.13 of SB 1 (codified at Section 87.041 of the Texas Election Code).

**RESPONSE:** Denied. Defendants object to the extent that this Request requires an interpretation of Sections 86.001 or 87.041 of the Texas Election Code, or either of those provisions' interactions with each other or with other statutory provisions, including but not limited to 52 U.S.C. § 20310, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive

officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process.

**REQUEST FOR ADMISSION NO. 9:** Admit that SB 1 did not change the qualifications under Texas law to vote in federal, state, or local elections. *See* Tex. Elec. Code §§ 11.001, 11.002.

**RESPONSE:** Defendants admit that SB1 did not amend either Section 11.001 or Section 11.002 of the Texas Election Code. Defendants object to this Request as vague, ambiguous, and lacking in specificity to the extent it refers to "qualifications to vote in federal, state, or local elections" beyond those in the Sections 11.001 and 11.002 of the Texas Election Code. To the extent that this Request inquires into whether other state statutes also determine the qualifications for voting in federal, state, or local elections, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Beyond what is specifically admitted above, Defendants deny any other aspect of this Request.

**REQUEST FOR ADMISSION NO. 10:** Admit that before enactment of SB 1, Texas law provided that the mail ballot application contained elements sufficient under Texas law to identify a registered voter and establish that the voter is qualified to cast a mail ballot. *See* Exhibit D.

**RESPONSE:** Defendants object to this Request as overly broad and seeking irrelevant information to the extent that "before enactment of SB 1" is not temporally limited to "Texas law" as it existed immediately prior to the effective date of SB 1. Defendants also object to this Request as vague, ambiguous, and lacking in specificity. To the extent that Defendants understand this Request, it appears to employ circular logic: The requirements set forth in "Texas law" are inherently sufficient "under Texas law," and Defendants thus admit as much. To the extent that the first use of "Texas law" refers to a different statute or provision than the second use of "Texas law," Defendants are unable to determine which specific provisions the United States intends to reference. Absent further clarification, Defendants can neither admit nor deny this statement. And because Defendants are without sufficient information or knowledge to admit or deny the remainder of this Request, anything not specifically admitted above is therefore denied. This response does not waive any future objections to similar Requests or to this Request following clarification by the United States, including that this Request improperly calls for a purely legal conclusion.

**REQUEST FOR ADMISSION NO. 11:** Admit that under Texas law, election officials must accept mail ballot applications that include a last name different from the last name on the voter's application for voter registration, so long as officials can confirm that the applicant is a registered voter in the jurisdiction. *See* Exhibit E at 31.

**RESPONSE:** Defendants object to this Request to the extent that it requires an interpretation of "Texas law." No response is required because this aspect of the Request calls for legal conclusions

and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Defendants further object because the Request is vague, ambiguous, and lacking in specificity, as neither the Request itself nor Exhibit E reference any particular statute or rule. Furthermore, Exhibit E is a copy of a PowerPoint presentation by the Office of the Texas Secretary of State, which does not carry with it the force of law. To the extent that a response is required, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 12:** Admit that under Texas law, election officials must accept mail ballot applications that include an address different from the address on the voter's application for voter registration, so long as the new address is within the jurisdiction of the same voter registrar. *See* Exhibit E at 30.

**RESPONSE:**  Defendants object to this Request to the extent that it requires an interpretation of "Texas law." No response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Defendants further object because the Request is vague, ambiguous, and lacking in specificity, as neither the Request itself nor Exhibit E reference any particular statute or rule. Furthermore, Exhibit E is a copy of a PowerPoint presentation by the Office of the Texas Secretary of State, which does not carry with it the force of law. To the extent that a response is required, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 13:** Admit that under SB 1, any voter who has been issued a Texas driver license, personal identification card, or election identification certificate must provide the number of that document on mail ballot materials, rather than a partial social security number. *See* SB 1 § 5.02 (codified at Section 84.002 of the Texas Election Code); SB 1 § 5.08 (codified at Section 86.002 of the Texas Election Code).

**RESPONSE:** Defendants object because this Request contains statutory citations that speak for themselves. Furthermore, to the extent that this Request requires a legal interpretation regarding the sufficiency of one identifying number vis-à-vis another, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code both authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority. To the extent that a response is required, Defendants deny the statement contained in this Request.

**REQUEST FOR ADMISSION NO. 14:** Admit that Texas first allowed residents to apply for voter registration using an identification document number on January 1, 2004. *See* Tex. H.B. 1549, 78th Legis. § 1 (2003); *see also* Tex. Elec. Code § 13.002(c)(8)(A).

**RESPONSE:** Defendants object to the extent that this Request would require them to conduct a comprehensive search of the entirety of Texas laws throughout the State's history in order to ensure that this provision had no legal predecessors that were previously unknown to Defendants. Without waiving that objection, Defendants admit that, after a reasonable and diligent search, the referenced statute from the 78th Texas Legislature appears to be the first codification of the option for an applicant to provide a copy of an identification document to establish the applicant's identity for the purpose of voter registration.

**REQUEST FOR ADMISSION NO. 15:** Admit that under SB 1, even if an early voting clerk is able to identify a registered voter based on the information provided on mail ballot materials, the early voting clerk must reject those materials if the identification document number on the mail ballot materials do not match the number on the voter's application for voter registration. *See* SB 1 § 5.07 (codified at Section 86.001 of the Texas Election Code).

**RESPONSE:** Defendants object because this Request contains a statutory citation that speaks for itself. Furthermore, to the extent that this Request requires an interpretation of Section 86.001 of the Texas Election Code or its interaction with other statutory provisions, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority and process. Defendants deny any remaining aspects of this Request.

**REQUEST FOR ADMISSION NO. 16:** Admit that even after enactment of SB 1, the Texas Election Code continues to require that if an applicant provides a date of birth, Texas driver license number, or social security number on the mail ballot application that is different from the information maintained by the voter registrar, the early voting clerk must notify the voter registrar, and the voter registrar must update the voter's record with the information provided by the applicant. *See* Tex. Elec. Code § 84.014.

**RESPONSE:** This Request contains a statutory citation that speaks for itself. Defendants admit that SB1 did not amend Section 84.014 of the Texas Election Code. To the extent that this Request inquires into how Section 84.014 interacts with any provision of SB1, no response is required because this aspect of the Request calls for legal conclusions and arguments. The Texas Constitution and the Texas Government Code both authorize and set forth a process for the Office of the Attorney General of Texas to "give legal advice in writing to the Governor and other executive officers" and "issue a written opinion on a question affecting the public interest." Tex. Const. art. IV, § 22; Tex. Gov't Code Ann. § 402.042. By requesting a pure conclusion of law, this Request seeks to usurp that constitutional and statutory authority. Beyond what is specifically admitted above, Defendants deny any other aspect of this Request.

# EXHIBIT

# 5





TEXAS SECRETARY OF STATE

## TOPICS COVERED

- Reviewing ABBMs
- Ballot by Mail Tracker
- Distribution of ABBMs

1/18/2022                 Texas Secretary of State Elections Division                 2

STATE040586





TEXAS SECRETARY of STATE

## If a voter uses an old ABBM form, should I reject the ABBM?

- Yes. If a voter uses an outdated ABBM form that does not contain the personal identification number box and does not provide one of the identification numbers required under Section 84.002(a)(1-a), the ABBM must be rejected.

- You must send the voter a Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3), which informs the voter how they can correct or add information to cure the defect.



1/18/2022                    Texas Secretary of State Elections Division                    5

---

TEXAS SECRETARY of STATE

## What if a voter provides only a driver's license number on the ABBM, but the voter registration record does not contain a driver's license number?

- The ABBM must be rejected.
- You must send the voter a Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3).



1/18/2022                    Texas Secretary of State Elections Division                    6

STATE040588

TEXAS SECRETARY OF STATE

**If a voter provides both types of identification numbers on the ABBM (ex: driver's license AND last four digits of SSN), do both numbers have to match the voter registration record?**

- No. If one number matches the voter registration record (and the voter is otherwise eligible to vote by mail), you must accept the ABBM.

- Your obligation in reviewing the identification numbers on an ABBM is to determine if the information provided by the voter on the ABBM identifies the same voter identified on the applicant's voter registration record. (Sec. 86.001(f)).



1/18/2022          Texas Secretary of State Elections Division          7

---

TEXAS SECRETARY OF STATE

**What if a voter provides the last four digits of the SSN, but the voter registration record shows both a driver's license and an SSN?**

- If the last four digits of the SSN provided by the voter on the ABBM matches the voter record (and the voter is otherwise eligible to vote by mail), you must accept the ABBM.

1/18/2022          Texas Secretary of State Elections Division          8

---

STATE040589

TEXAS SECRETARY OF STATE

## What defects can a voter correct in a rejected ABBM?

- If a voter fails to provide any of the required personal identification numbers or the numbers do not match the voter registration record, the voter may correct the defect through the Ballot by Mail Tracker.

- Alternatively, if a voter's ABBM is rejected for a missing or incorrect personal identification number OR for any other reason, the voter may submit a new ABBM with the required/corrected information.



1/18/2022                    Texas Secretary of State Elections Division                    9

---

TEXAS SECRETARY OF STATE

# BALLOT BY MAIL TRACKER



1/18/2022                    Texas Secretary of State Elections Division                    10

---

STATE040590

TEXAS SECRETARY OF STATE

# Ballot by Mail Tracker

## NEW LAW:  House Bill 1382 (2021, R.S.)

- Requires the Secretary of State to provide an online tool on the Secretary of State's website that enables a person who has submitted an Application for a Ballot by Mail to track the location and status of the person's application and ballot.  The tracking tool must require the voter to provide certain personally identifiable information in order for the voter to obtain information related to their ballot.
- The ballot by mail tracker must be updated with each of the following events to provide information on:
  - When an application to vote by mail has been received by the early voting clerk;
  - When the mail ballot application has been accepted or rejected by the early voting clerk;
  - When the official ballot has been placed in the mail by the early voting clerk;
  - When the person's marked ballot is received by the early voting clerk; and
  - Whether the early voting ballot board has accepted or rejected the ballot.
- For each carrier envelope containing a mail ballot, the ballot by mail tracker must assign or record a serially numbered and sequentially issued barcode or tracking number unique to each envelope.

NOTE: The mail ballot tracker will only be available for elections in which the county election officer is the early voting clerk.

Section 86.015, Texas Election Code

| 1/18/2022 | Texas Secretary of State Elections Division | 11 |

---

TEXAS SECRETARY OF STATE

# Where is the Ballot by Mail Tracker located?

- The Ballot by Mail Tracker is located on VoteTexas.gov



| 1/18/2022 | Texas Secretary of State Elections Division | 12 |

STATE040591





**What information does the voter need to enter the Ballot by Mail Tracker?**

- The voter must enter:
  - Texas Driver's License or Personal Identification Card Number issued by DPS,
  - Last four digits of SSN, AND
  - Residence Address.

1/18/2022          Texas Secretary of State Elections Division          14

__SEGMENT__

---

TEXAS SECRETARY OF STATE

## What other information can the voter access on VoteTexas.gov?

- Through the **My Voter Portal** on VoteTexas.gov, the voter can:
  - Check their voter registration
  - Start a new voter registration application
  - Update their name or address
    - Including updates to new counties
  - Track their mail ballot

- teamrv-mvp.sos.texas.gov/MVP/mvp.do



1/18/2022          Texas Secretary of State Elections Division          15

---

TEXAS SECRETARY OF STATE

## Do FPCA voters have a different mail ballot tracker?

- No. The Ballot by Mail Tracker will contain information for FPCA voters as well.

- If an FPCA voter has a missing or incorrect personal identification number, they may correct this defect in the Ballot by Mail Tracker.



1/18/2022          Texas Secretary of State Elections Division          16

---

STATE040593





STATE040594

TEXAS SECRETARY OF STATE

# Distribution of ABBMs

- Sec. 276.016.  UNLAWFUL SOLICITATION AND DISTRIBUTION  OF APPLICATION TO VOTE BY MAIL.
- (a)  A public official or election official commits an offense if the official, while acting in an official capacity, knowingly:

    - (1) solicits the submission of an application to vote by mail from a person who did not request an application;

    - (2)  distributes an application to vote by mail to a person who did not request the application unless the distribution is expressly authorized by another provision of this code;  **(Sends out to voters who did not request an ABBM)**

    - (3)  authorizes or approves the expenditure of public funds to facilitate third-party distribution of an application to vote by mail to a person who did not request the application; or **(Provides ABBM forms printed at county expense to groups or candidates that will distribute to voters)**

    - (4)  completes any portion of an application to vote by mail and distributes the application to an applicant. **(Pre-fills ABBM)**

- (b)  An offense under this section is a state jail felony.

1/18/2022                                Texas Secretary of State                                19

---

TEXAS SECRETARY OF STATE

# Distribution of ABBMs

## Exceptions to prohibition on distribution (Sec. 276.016):

- (c)  Subsection (a)(2) does not apply if the public official or election official engaged in the conduct described by Subsection (a)(2) by providing access to an application to vote by mail from a publicly accessible internet website.  **(Posting a blank ABBM on official's website is allowable)**

- (d)  Subsection (a)(4) does not apply if the public official or election official engaged in the conduct described by Subsection (a)(4) while lawfully assisting the applicant under Section 84.003. **(If serving as an assistant, it is permissible to help voter complete the ABBM form)**

- (e)  Subsection (a) does not apply if the public official or election official:

    - (1) provided general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public; or

    - (2)  engaged in the conduct described by Subsection (a) while acting in the official's capacity as a candidate for a public elective office.

- (f)  The remedy provided under this chapter is cumulative, and does not restrict any other remedies provided by this code or by law.  A violation of this section is subject to injunctive relief or mandamus as provided by this code.

1/18/2022                                Texas Secretary of State                                20



STATE040595

## TEXAS SECRETARY OF STATE

### Who is considered an "election official" under Section 276.016?

- "Election official" is defined in Section 1.005 to mean:
  - a county clerk;
  - a permanent or temporary deputy county clerk;
  - an elections administrator;
  - a permanent or temporary employee of an elections administrator;
  - an election judge;
  - an alternate election judge;
  - an early voting clerk;
  - a deputy early voting clerk;
  - an election clerk;
  - the presiding judge of an early voting ballot board;
  - the alternate presiding judge of an early voting ballot board;
  - a member of an early voting ballot board;

- the chair of a signature verification committee;
- the vice chair of a signature verification committee;
- a member of a signature verification committee;
- the presiding judge of a central counting station;
- the alternate presiding judge of a central counting station;
- a central counting station manager;
- a central counting station clerk;
- a tabulation supervisor;
- an assistant to a tabulation supervisor; and
- a chair of a county political party holding a primary election or a runoff primary election.



1/18/2022          Texas Secretary of State Elections Division          21

## TEXAS SECRETARY OF STATE

### If a person request two ABBMs from an election office (one for themselves and the other for their spouse), can I provide both forms to them?

- No. Sections 84.0111 and 276.016 prohibit the distribution of an ABBM to a person who did not request the application.

1/18/2022          Texas Secretary of State Elections Division          22

TEXAS SECRETARY OF STATE

## Can I post a blank ABBM on my website?

- Yes.  Section 276.016(c) specifically allows an election official to provide access to an ABBM on a publicly accessible Internet website.

TEXAS SECRETARY OF STATE

## Can I provide an ABBM to an assistant who requests one on behalf of a voter they are assisting?

- No. Sections 84.0111 and 276.016 prohibit an election official from distributing an ABBM to a person who did not request the application.

STATE040597

TEXAS SECRETARY OF STATE

## If a voter calls to request an ABBM, can I fill in the voter's name and residence address at the top of the form?

- No. Section 276.016(a)(4) prohibits an election official from completing any portion of the ABBM form and distributing that form to the applicant.



1/18/2022                     Texas Secretary of State Elections Division                     25

TEXAS SECRETARY OF STATE

## Can I write or pre-print the early voting clerk's office address on the reverse side of the application to ensure it is mailed back to my office?

- Yes. We do not believe that providing your own mailing address on an ABBM constitutes pre-filling an application, as such information does not relate to the content of the ballot by mail request.

1/18/2022                     Texas Secretary of State Elections Division                     26

STATE040598

TEXAS SECRETARY OF STATE

## If a voter has difficulties communicating, how can they request an ABBM?

- The voter can receive assistance in calling your office to request the form, but the voter must be the one to make the request.
- A voter can submit a request in writing. If necessary, someone assisting the voter can witness the voter's request if they provide the information required under Section 1.011 of the Texas Election Code.

1/18/2022                Texas Secretary of State Elections Division                27

TEXAS SECRETARY OF STATE

## Can different organizations or candidates distribute ABBMs to voters? Can they pre-fill information on the ABBM?

- The prohibition on distribution of ABBMs by public officials and election officials does not apply to third-party organizations or candidates.
- Certain information can be pre-filled on an ABBM form.
- The following information should NOT be pre-filled:
  - Any witness or assistant information
  - Any personally identifiable information
  - Any affirmations that must be made by the voter



1/18/2022                Texas Secretary of State Elections Division                28

STATE040599

TEXAS SECRETARY OF STATE

## How can nursing homes or assisted living facilities obtain blank ABBMs?

- These facilities can request ABBMs from the Secretary of State's office, which has express statutory authority to provide ABBM forms to voters and organizations, in reasonable quantities, upon request. (Sec. 84.013).

1/18/2022            Texas Secretary of State Elections Division            29

---

TEXAS SECRETARY OF STATE

## Can county chairs distribute ABBM forms?

- Because a county chair is included in the definition of an "election official," the prohibition against distribution of ABBMs by election officials in Section 276.016(a)(2) of the Election Code applies to county chairs.

- If a county chair were distributing ABBMs as a candidate on the ballot, then the prohibition against distributing ABBMs would not apply to the county chair.  (Sec. 276.016(e)(2)).

- Note: Section 84.0111(c) of the Election Code authorizes a political party to distribute ABBMs to voters who did not request ABBMs.  Therefore, a county executive committee could distribute unsolicited ABBMs.  Because county chairs are prohibited from distributing ABBMs, we recommend that a county chair not be directly involved in the distribution of ABBMs in their role as county chair because it could constitute a violation of Section 276.016(a)(2).

1/18/2022            Texas Secretary of State Elections Division            30

---

STATE040600



STATE040601