IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| *Plaintiffs*, | § § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY
## KIM OGG'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant Kim Ogg, in her official capacity as Harris County District Attorney ("District Attorney Ogg"), files this motion for summary judgment on all claims asserted against her by any and all of the private plaintiffs[1] in all of the matters consolidated by the Court under Civil Action No. 5:21-CV-00844-XR.[2]

---

[1] The plaintiffs in the consolidated case that have brought claims against District Attorney Ogg, and whose claims remain the case following the Court's ruling on a motion to dismiss, include the organizations Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, OCA-Greater Houston, and LULAC Texas.  Dkt. 450 at 10.

[2] In the May 16, 2023 status conference, the Court ordered that "[a]ny motions for summary judgment regarding impact claims must be filed no later than May 26th."  Counsel for District Attorney Ogg attempted to confer with private plaintiffs' counsel (as the Government/Department of Justice has no claims pending against her) on what they consider to be "impact claims" their clients have pending against District Attorney Ogg.  **Ex. 1**.  As of the time of filing, no understanding had been reached among the parties.  In the absence of an agreement from private plaintiffs on how the Court's recent bifurcation relates to their claims, District Attorney Ogg moves for summary judgment on all of the private plaintiffs' claims against her.

## INTRODUCTION

This Court previously granted in part District Attorney Ogg's motion to dismiss, and allowed claims filed against her related to criminal provisions of S.B. 1 to proceed through discovery.  Discovery related to those claims has now closed.[3]  With the close of discovery, District Attorney Ogg now moves for summary judgment as to all claims lodged against her as a defendant in the consolidated litigation.  In short, none of the private plaintiffs can overcome, as a legal *and factual* matter, the bars against recovery—as to District Attorney Ogg—of sovereign immunity (as to the private plaintiffs' constitutional claims) and standing (as to the private plaintiffs' statutory claims).  Even if the private plaintiffs could overcome these bars—which they cannot—their claims against District Attorney Ogg would not survive the most basic rule of summary judgment: that private plaintiffs cannot proffer *evidence* that would create a genuine issue of material fact for trial on those claims.

This requested layered analysis of the deficiencies in private plaintiffs' claims against District Attorney Ogg is reflected in the organization of this motion:

- First, the motion sets forth the factual record on summary judgment, which is important for what the record does *not* contain as much as what it does.

- Second, the motion sets forth how the available factual record supports the grant of summary judgment on sovereign immunity grounds, as to the constitutional claims made by the private plaintiffs against District Attorney Ogg.

- Third, the motion sets forth how that available factual record further demonstrates the absence of standing by any of the private plaintiffs to bring suit under any of the statutes they have invoked against District Attorney Ogg.

- Fourth and finally, the motion sets forth how even if the sovereign immunity and standing hurdles could be overcome—which District Attorney Ogg respectfully contends they

---

[3]The Court will recall that it provided guidance to the parties on written discovery served on District Attorney Ogg, and District Attorney Ogg provided discovery responses in a manner consistent with the Court's guidance.  None of the private plaintiffs ever raised any continued issue regarding the discovery responses provided under the Court's guidance.

cannot—private plaintiffs could never meet their burdens of proof on their constitutional and statutory claims against District Attorney Ogg.

For each and all of these reasons, the Court should grant summary judgment dismissing all claims against District Attorney Ogg.

## STATEMENT OF UNDISPUTED FACTS

The available summary judgment record, as it relates to claims made against District Attorney Ogg, includes the following:

Exhibit 1        Email correspondence from undersigned counsel seeking to confer on which of the private plaintiffs' claims against District Attorney Ogg should be tried in Phase 1 of this consolidated litigation.

Exhibit 2        District Attorney Ogg's March 12, 2022 proposed non-enforcement stipulation.

Exhibit 3        OCA Plaintiffs' rejection of District Attorney Ogg's proposed non-enforcement stipulation via e-mail on March 14, 2022.

Exhibit 4        Declaration of George Jordan, January 5, 2023.

Exhibit 5        Attorney General Ken Paxton's March 17, 2023 Objections and Responses to LULAC Plaintiffs' Interrogatory No. 2.

Further, private plaintiffs have repeatedly indicated in their pleadings and briefing that they have no evidence to suggest that District Attorney Ogg has threatened to enforce or has enforced any of the S.B. 1 provisions that contain criminal penalties over which they have brought suit. E.g., *Houston Justice et al*. second amended complaint (Dkt. 199) ¶¶ 77, 81; *OCA Greater Houston et al.* second amended complaint (Dkt. 200) ¶¶ 48, 52, 181, 185, 191; *LULAC Texas et al.* second amended complaint (Dkt. 207) ¶ 33; *LULAC Texas et al*. response to District Attorney Ogg motion to dismiss (Dkt. 361) at 2 ("The mere fact that Plaintiffs are not subject to imminent criminal prosecution under these provisions does not preclude standing."); *HAUL et al.* response to District

Attorney Ogg motion at 12 ("It would therefore have been impossible to allege that Defendant Ogg had threatened to prosecute assistors under the assistor provisions.").

Accordingly, for purposes of the Court's consideration of this motion for summary judgment, the following material facts are undisputed:

1. District Attorney Ogg has not taken or threatened to take any action to enforce any of the criminal offenses created or modified by S.B. 1 and challenged by private plaintiffs against any of the various private plaintiffs, or anyone else for that matter; and

2. District Attorney Ogg was not involved in the passage of S.B. 1, and there is no evidence to suggest that she was.

These undeniable facts necessarily foreclose the private plaintiffs' claims against District Attorney Ogg under the well-established doctrines of sovereign immunity and standing.  Even if private plaintiffs could successfully argue that those core jurisdictional issues could ever be resolved legally and factually in to allow their claims against District Attorney Ogg to proceed— which, respectfully, they cannot—those same undeniable core facts would preclude them from meeting their burdens of proof on their claims.

As the Court is aware, the private plaintiffs in the consolidated cases[4] challenge various provisions of the Texas Election Code enacted through legislation passed in a 2021 special session of the Texas Legislature:  the Election Integrity Protection Act of 2021.  Consistently referred to in this litigation by its Texas Senate bill number, "S.B. 1," the bill modified existing laws and created new ones governing elections in the State of Texas in addition to amending or enacting criminal offenses and misdemeanor or felony punishment provisions related to voting and other election-related conduct.[5]

---

[4]Again, District Attorney Ogg addresses her arguments only to claims advanced by the private plaintiffs in the consolidated litigation and not to claims advanced by the Government/Department of Justice, as those governmental claims are not advanced against her.

[5]Many of the modified criminal offenses have existed under Texas law for decades.  *E.g.*, TEX.

In the days before and after Texas Governor Greg Abbott signed S.B. 1 into law, the private plaintiffs filed lawsuits against various Texas officials, including the Texas Attorney General, asserting that certain provisions of the bill violated federal statutes and the United States Constitution. It was not until early 2022 that various of the private plaintiffs added District Attorney Ogg in her official capacity, along with certain other Texas district attorneys, as a defendant, alleging that the district attorneys are proper defendants to their claims under the First, Fourteenth, and Fifteenth Amendments, sections 2 and 208 of the Voting Rights Act of 1965 ("VRA"), Title II of the Americans with Disabilities Act ("ADA"), and section 504 of the Rehabilitation Act.

In a manner that reinforces the point about the absence of any evidentiary support for the private plaintiffs' claims against District Attorney Ogg, she offered to enter into a "non-participation in litigation" stipulation that provided, among other things, she would not enforce the challenged statutory provisions until the constitutional challenges were fully and finally litigated. **Ex. 3**. That stipulation would have avoided demonstrably needless and unwarranted litigation against District Attorney Ogg and the concomitant expenditure of time and resources in litigation she neither initiated nor invited.[6] The private plaintiffs declined District Attorney Ogg's offered stipulation. *Id*.

District Attorney Ogg moved to dismiss all claims brought against her on the bases of sovereign immunity, standing, and failure to state a claim. Dkt. 344. The Court granted District

---

ELEC. CODE § 33.061(a) (offense in existence since 1986); TEX. ELEC. CODE § 86.006(f) (offense in existence since 2003).

[6] *Cf. Planned Parenthood Ctr. for Choice v. Abbott*, No. A-20-CV-323-LY, 2020 WL 1815587, at *7 (W.D. Tex. Apr. 9, 2020) (holding temporary restraining order did not apply to defendant criminal district attorney based on non-participation stipulation), *mandamus granted in part*, *In re Abbott*, 956 F.3d 696 (5th Cir. 2020), *vacated as moot*, *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021).

Attorney Ogg's motion in part, dismissing all claims against her that sought to challenge Election Code provisions that impose only civil penalties.  Dkt. 450.  The Court denied District Attorney Ogg's motion with respect to all provisions of S.B. 1 challenged by the private plaintiffs that the Court found to implicate criminal law.  *Id.*  District Attorney Ogg's interlocutory appeal of that order remains pending before the Fifth Circuit and has been set for argument during the week of July 10, 2023.  U.S.C.A. Case No. 22-50732.

## ARGUMENT

## I.     General Summary Judgment Standards

A movant for summary judgment who would not bear the burden of proof at trial need not present evidence to put the plaintiff's claims in issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986).  Rather, a defendant need only "point[ ] out . . . that there is an absence of evidence to support the nonmoving party's case."  *Id.*  Once a defendant meets this obligation, the burden shifts to the plaintiff to produce competent evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).  Summary judgment is required when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex*, 477 U.S. at 322).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*

Speculative theories cannot defeat a motion for summary judgment.  *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 (5th Cir. 1994) (en banc) (per curiam)).  A plaintiff cannot avoid summary judgment based on "speculation, improbable inferences, or unsubstantiated assertions."  *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).  Rather, the plaintiff "must go

beyond the pleadings and come forward with specific facts" demonstrating a genuine issue for trial—and the evidence must be admissible. *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015). "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999).

## II.  District Attorney Ogg is entitled to sovereign immunity, now as a matter of both the private plaintiffs' allegations and the factual record on summary judgment.

The Court has previously denied District Attorney Ogg's arguments as to her sovereign immunity from suit on the face of the private plaintiffs' constitutional claims.  Dkt. 450.  The Court found that the private plaintiffs had made allegations that allowed them to fit their claims into the exception to sovereign immunity created by *Ex parte Young*, 209 U.S. 123, 155-56 (1908), and its progeny.

Even as the Court's ruling is on appeal, District Attorney Ogg respects it, and because of the Court's prior consideration of the argument will not repeat here a discussion of the core elements of sovereign immunity.  District Attorney Ogg, sued in her official capacity, respectfully maintains her position that she is a state official entitled to the protections of state sovereign immunity.  *Esteves v. Brock*, 106 F.3d 674, 677 & n.8 (5th Cir. 1997) (holding that "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county" and is entitled to the protections of state sovereign immunity); Order Granting Motion to Quash, *Russell v. Harris County*, No. 4:19-CV-226, ECF No. 638 (S.D. Tex. Dec. 28, 2022) (Dkt. 500-3) (holding that District Attorney Ogg was entitled to sovereign immunity).

At this later stage of the litigation, District Attorney Ogg does supplement her prior arguments on sovereign immunity with the argument that as discovery is done, the summary

judgment record does not support the private plaintiffs' invocation of *Ex parte Young* and its progeny as an exception to state sovereign immunity in the subset of cases to which it applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). "[I]n order to fall within the *Ex parte Young* exception, a suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020).

The exception permits federal courts to enjoin unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, ***and*** who threaten and are about to commence proceedings, either of a civil or criminal nature." *Ex parte Young*, 209 U.S. at 155-56 (emphasis added). Under the plain language of *Ex parte Young*, holding a public office with law-enforcement authority is necessary, but not sufficient; a plaintiff must also show that the official clothed with that duty has "threaten[ed] and [is] about to commence proceedings." *Id.* at 156. In her motion to dismiss, District Attorney Ogg argued that the private plaintiffs' pleadings did not contain allegations about a threat of existing or imminent proceedings—involving District Attorney Ogg—on enforcement of the challenged provisions of S.B. 1. Now that the litigation has proceeded through discovery, it is not only the absence of *allegations* about existing or imminent proceedings but also the absence of evidence by which the private plaintiffs could properly invoke the *Ex parte Young* exception to sovereign immunity.

In order to be a proper *Ex parte Young* defendant, a state official "must have some connection with the enforcement of" the law being challenged. *Id.* at 157. The Fifth Circuit has identified in its precedents three requirements to establish the requisite connection. *Tex. All. for*

*Retired Ams. v. Scott*, 28 F.4th 669, 672 & n.5 (5th Cir. 2022).

1. **A specific duty**. The state official must have "more than the general duty to see that the laws of the state are implemented." *Id*. Instead, the state official must have a "particular duty to enforce the statute in question." *Id*.

2. **Demonstrated willingness**. The state official must have "a demonstrated willingness to exercise that duty." *Id*.

3. **Enforcement**. The state official must, through her conduct, "compel or constrain [persons] to obey the challenged law." *Id*.

In addition to her prior arguments about the absence of *allegations* to meet the above elements, District Attorney Ogg contends that private plaintiffs cannot *factually* meet any of these requirements, let alone all of them.

### A.   Absence of showing of "specific duty."

As a legal (not factual) matter, District Attorney Ogg has a general grant of *authority* under state law to enforce criminal laws in Harris County.[7]  However, there is no legal or factual basis for a claim that she has a *duty* to bring particular prosecutions.  Instead, her duty under the Code of Criminal Procedure is as follows:

> It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.

Tex. Code Crim. P. art. 2.01.  As a legal and factual matter, the private plaintiffs cannot overcome the principle that District Attorney Ogg has complete discretion over whether to ever initiate criminal charges against anyone whom her office has probable cause to believe committed a violation of Texas criminal laws.  *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004); *see also State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2022 WL 4493899, at *4 (Tex. Crim. App. Sept. 28, 2022) (Walker, J., concurring in denial of rehearing).  No provision of the Election Code contemplates

---

[7]District Attorney Ogg shares this authority with dozens of other district attorneys, criminal district attorneys, and county attorneys, depending upon the configuration of the particular district.  *See* Tex. Gov't Code §§ 43 (district attorneys), 44 (criminal district attorneys), 45 (county attorneys).

anything beyond District Attorney Ogg's "general duty to see that the laws of the state are implemented." *City of Austin*, 943 F.3d at 999-1000. District Attorney Ogg's general duty to represent the State in a criminal proceeding brought in Harris County is not the same as a specific duty to enforce individual criminal statutes, much less against specified individuals; such prosecutorial decisions remain within District Attorney Ogg's discretion. *Neal*, 150 S.W.3d at 173; *see also Scott*, 28 F. 4th at 673 ("Yes, the Secretary has discretion to alter the form and content of electronic ballots, but . . . [p]laintiffs fail to show how that clerical discretion is a duty at all . . . .").

### B. Absence of showing of "demonstrated willingness" to enforce the challenged statutes.

Likewise, the private plaintiffs have no proof that District Attorney Ogg has demonstrated a willingness to enforce the criminal provisions of S.B. 1 over which they sue. A mere connection by statute or otherwise to a law's *potential* enforcement is not sufficient for *Ex parte Young* purposes. The state official "*must have taken some step to enforce*" the challenged statute. *Tex. Democratic Party*, 961 F.3d at 401 (emphasis added). While the Fifth Circuit has not defined "how big a step" must be taken in every case, "the bare minimum appears to be some scintilla of affirmative action by the state official." *Id.*

There is no evidence that could raise a genuine issue of material of fact for trial on whether District Attorney Ogg has taken even a scintilla of affirmative action to enforce any of the challenged provisions. *E.g.*, **Ex. 4** (declaration from Assistant District Attorney responsible for Election Code matters that no investigations or prosecutions include any of the challenged S.B. 1 provisions). At the motion-to-dismiss stage, this Court drew on *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), and presumed that a credible threat of prosecution existed "[i]n the 'absence of compelling contrary evidence'" in determining that *Ex parte Young* was satisfied. The litigation has advanced through discovery, and the case is in a different posture. The time for any

presumptions based on allegations in complaints is over.  There must be evidence to support the narrow window through which sovereign immunity can be avoided through *Ex parte Young*.  There is no such evidence, much less evidence that could give rise to a genuine issue of material fact for trial.

First, such a presumption is generally inapplicable to the *Ex parte Young* inquiry, especially now given that the discovery process is complete.  The presumption drawn from *Fenves* is a rule about standing, not sovereign immunity, and that rule cannot be imported into the *Ex parte Young* analysis.  *See Fenves*, 979 F.3d at 335; *Scott*, 28 F.4th at 674 (noting that *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), "addressed only standing and has no bearing on the *Ex parte Young* analysis").  District Attorney Ogg has not located any Fifth Circuit decision using this *Fenves*-type presumption in this context.

Second, the language in *Fenves* applied a presumption that was tailored to the factual record of that case.  In *Fenves*, the University of Texas had been sued, through its President in his official capacity, over the University's speech code.  *Id.* at 323.  Because the University wrote its own rules, it stood to reason that students (and courts) could presume the University credibly intended to enforce those rules.  *See id.* at 337 (absent an intent to enforce, "why maintain the policies at all?").

Here, there is no allegation, much less evidence, that District Attorney Ogg had anything to do with S.B. 1 or its passage.  Accordingly, even if a presumption were appropriate at this stage of this litigation—which District Attorney Ogg respectfully contends it is not—there is no evidence to support any *Fenves*-type inference that District Attorney Ogg intends to enforce any of the challenged provisions.  While the analysis at the motion-to-dismiss stage requires the presumption that the plausible factual allegations in a complaint are true, at the summary-judgment

stage the appropriate inquiry is whether the factual record is sufficient to avoid summary judgment. The only evidence produced in the record concerning District Attorney Ogg's intentions with respect to S.B. 1 are found in her written offer to stipulate to non-enforcement.  **Ex. 2**.  There is no evidence that District Attorney Ogg has a "demonstrated willingness" to prosecute the private plaintiffs—or anyone—under any of the criminal provisions in S.B. 1.  *Scott*, 28 F.4th at 672; *see also* **Ex. 4**.

To the extent that the private plaintiffs may seek to demonstrate a credible threat of prosecution by pointing to the involvement of District Attorney Ogg's office in investigating or prosecuting Election Code violations prior to the passage of S.B.1, such efforts would be unavailing.  The test under *Ex parte Young* is not whether District Attorney Ogg has demonstrated her willingness to enforce criminal election law or even the criminal laws generally; it is whether District Attorney Ogg has demonstrated a willingness to enforce "the statute in question."  *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (finding that demonstrated willingness under *Ex parte Young* could not be met by reference to enforcement of other laws); *see also Inclusive Cmtys. Project, Inc. v. Abbott*, No. 3:17-CV-0440-D, 2018 WL 2415034, at *10 (N.D. Tex. May 29, 2018).  Indeed, the private plaintiffs are challenging Election Code provisions that were added or amended through S.B. 1, and not the laws as they existed before.

The Fifth Circuit has made clear that the analysis of "demonstrated willingness" must occur "provision-by-provision."  *Scott*, 28 F.4th at 672.  In this respect, the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.' "  *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)).  Indeed, as argued below in Part III of the argument and authorities section of this brief, District Attorney Ogg does challenge the private plaintiffs' ability to meet their burdens to establish standing in similar ways.

C.     **Absence of a showing of enforcement.**

To fall within the *Ex parte Young* exception, a suit must seek prospective relief to redress ongoing conduct.  *Williams*, 2023 WL 119452, at *6 (citing *Freedom from Religion Found., 955 F.3d at 424*).  As with the other necessary showings for the *Ex parte Young* exception, the private plaintiffs cannot raise a genuine issue of material fact regarding the required showing of "enforcement" by District Attorney Ogg.  *See City of Austin*, 943 F.3d at 1000.  Enforcement involves "compulsion or constraint."  *Id.*  "If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation."  *Scott*, 28 F.4th at 672.

Merely showing that a state official has the authority to enforce a statute is insufficient to show the necessary level of enforcement.  *City of Austin*, 943 F.3d at 1001.  Instead, Plaintiffs must "point[] to specific enforcement actions of the respective defendant state official[] warranting the application of the *Young* exception."  *Id.*  Examples of enforcement deemed sufficient by the Fifth Circuit include:

- denying claims for payment through a state medical malpractice compensation fund, based on a statute excluding abortion-related injuries, *K.P. v. LeBlanc*, 627 F.3d 115, 124-25 (5th Cir. 2010);

- "pervasive enforcement" of a worker's compensation scheme through setting reimbursement rates, *Air Evac EMS*, 851 F.3d at 519; and

- sending letters "intimating that formal enforcement was on the horizon" based on the Texas Attorney General's conclusion that a party's conduct violated the challenged statute, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015).

There is no evidence that any of the private plaintiffs could adduce for purposes of opposing this motion for summary judgment that District Attorney Ogg has enforced or has threatened to enforce any of the challenged S.B. 1 provisions against anyone.  Thus, as a matter of the private plaintiffs' allegations and now the absence of summary judgment proof, the Court

should find that the private plaintiffs cannot properly invoke the *Ex parte Young* exception to District Attorney Ogg's sovereign immunity.  There is no evidence to support the type of application of the *Ex parte Young* exception in such cases as *K.P.*, *Air Evac EMS*, or *NiGen Biotech*.  There is no allegation that District Attorney Ogg has taken any action or made any statement even suggesting that she may enforce any of the challenged statutes against Plaintiffs or anyone else.  Accordingly, there is no ongoing enforcement conduct by District Attorney Ogg that can be redressed prospectively.

**III.    The private plaintiffs lack standing to sue District Attorney Ogg on their constitutional and statutory claims.**

Sovereign immunity applies squarely to the private plaintiffs' constitutional claims.  As an apparent effort to avoid the impact of sovereign immunity, the private plaintiffs have also asserted what District Attorney Ogg contends are meritless claims under statutes that private plaintiffs allege contain statutory waivers of sovereign immunity.  This attempted end-run on sovereign immunity does not ultimately work, especially now at summary judgment.  As the Court is well aware, a jurisdictional predicate for raising *any* claim in federal court—constitutional or statutory—is a proper showing of Article III standing.

Article III standing is the "fundamental limitation" on federal judicial power.  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).  It is built on "'a single basic idea— the idea of separation of powers.'"  *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)).  The doctrine of standing "confines the federal courts to a properly judicial role," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and "serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  It thus "ensur[es] that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society.'"

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citations omitted).  Federal courts thus have an "obligation" to assure themselves that litigants have Article III standing.  *Id.*; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000).  This core prerequisite is "jurisdictional and not subject to waiver."  *Lewis v. Casey*, 518 U.S. 343, 348-49 n.1 (2006); *see also Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th Cir. 2007) (en banc) (same).

This obligation extends to situations in which Congress has granted a right to private citizens to sue for a statutory violation.  "'Article III standing requires a concrete injury even in the context of a statutory violation,'" *TransUnion*, 141 S.Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341), and as a result, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *Id.*  If that were not the law, "Congress could authorize virtually any citizen to bring statutory damages suit against virtually any defendant who violated virtually any federal law," a result that would "flout constitutional text, history, and precedent."  *Id.* at 2206.  Congress cannot constitutionally pass a law that "'permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576-77 (1992)).

The "irreducible constitutional minimum of standing" has three elements.  *Lujan*, 504 U.S. at 560.  A plaintiff must show:

> **Injury-in-fact**: the actual or imminent invasion of a legally protected interest, which must be concrete and particularized;
>
> **Traceability**: a causal connection between the injury and the conduct by the defendant complained of; and
>
> **Redressability**: likelihood that the injury will be redressed by a favorable decision.

*Id.* at 560-61.  In other words, to invoke a federal court's jurisdiction, a plaintiff "must satisfy the

familiar tripartite test for Article III standing:  (A) an injury in fact; (B) that's fairly traceable to the defendant's conduct; and (C) that's likely redressable by a favorable decision." *E.T. v. Paxton, 41 F.4th 709, 714 (5th Cir. 2022)* (citing *Lujan*, 504 U.S. at 560); *see also City of Austin v. Paxton, 943 F.3d at 1002*.  These elements of standing "are not mere pleading requirements but rather an indispensable part of the [plaintiffs'] case [.]"  *Lujan*, 504 U.S. at 561 (citing cases).

Initially, plaintiffs need only plead sufficient allegations to support their standing.  But at trial, plaintiffs cannot rely on pleadings; they must actually prove standing.  "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"  *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan*, 504 U.S. at 561).  Ultimately, plaintiffs must "prove the allegations in order to prevail." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987).  In short, because standing is "an indispensable part of the plaintiff's case," the three elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561.

Proof of standing must be specific.  As the Supreme Court frequently states, "[o]ur standing decisions make clear that 'standing is not dispensed in gross.'"  *Town of Chester*, 137 S. Ct. at 1650 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008), and *Lewis*, 518 U.S. at 358 n.6).  Rather, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S. Ct. at 2208; *accord Town of Chester*, 137 S. Ct. at 1650; *Davis*, 554 U.S. at 733-34; *DaimlerChrysler*, 547 U.S. at 352; *Laidlaw*, 528 U.S. at 185.  Thus, to "ensure that standing is not dispensed impermissibly 'in gross,' the district court must analyze Plaintiffs' standing to challenge *each provision of law at issue*." *In re Gee*, 941 F.3d 153, 161-62 (5th Cir. 2019) (per curiam) (emphasis added); *see also Lewis*, 518 U.S. at 358 n.6; *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).  This requirement applies even if

several claims involve comparable conduct.    The Supreme Court has repudiated any "commutative" theory of standing that would allow a plaintiff to lump claims that arise from a common factual nucleus.  *DaimlerChrysler*, 547 U.S. at 352.  This rule is settled:  "Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Blum,* 457 U.S. at 999; *see also Lewis,* 518 U.S. at 358 n.6 (same).  If courts did not scrupulously enforce this rule, the doctrine of standing "would be rendered hollow rhetoric."  *DaimlerChrysler*, 547 U.S. at 353.

These rigorous Article III standards require a "claim-by-claim analysis" of each plaintiff's standing for each cause of action asserted against *each defendant*.  *In re Gee*, 941 F.3d at 171; *see also id.* at 165 ("We recognize that analyzing standing at this level of granularity can be tedious in a sweeping challenge like this one. But it's what Article III requires.").  "Standing to sue one defendant does not, on its own, confer standing to sue a different defendant."  *Daves v. Dallas County*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc).  For example, if a court dismisses a plaintiff's claims against a defendant with whom the plaintiff had dealt, that vitiates the jurisdictional basis for claims that the plaintiff may seek to press against another defendant with whom the plaintiff had no dealings.  *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir. 2008).  Under such a circumstance, the remaining defendants "have caused [the plaintiff] no cognizable injury," and the plaintiff "lacks standing to bring claims against any Defendant other than" the one with whom the plaintiff dealt.  *Id.* at 247.  In other words, even if the Court were to conclude on the basis of the factual record that the private plaintiffs have standing to sue someone other than District Attorney Ogg, the private plaintiffs cannot use such a finding to bootstrap standing against District Attorney Ogg.

A.       **Absence of showing of injury-in-fact.**

The starting point for any analysis of standing is the plaintiff's injury-in-fact, which must be "both concrete *and* particularized." *Spokeo*, 136 S. Ct. at 1548 (emphasis in original).  An alleged injury "'must affect the plaintiff in a personal and individual way,'" *id.* (quoting *Lujan*, 504 U.S. at n.1), and must be "'real,' and not 'abstract.'"  *Id*.  A statutory right to sue is irrelevant without such a concrete, personal injury. *TransUnion*, 141 S. Ct. at 2203-07.  One cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Spokeo*, 136 S. Ct. at 1549; *TransUnion*, 141 S. Ct. at 2205-07.  Private litigants are not knights errant, roaming in search of perceived wrongs to right.  They may sue only for their own personal injuries—not perceived injuries to the public.  *Id.*; *Lujan*, 504 U.S. at 572; *Summers v. Earth Isl. Inst.*, 555 U.S. 488, 496 (2009).

The private plaintiffs cannot raise a genuine issue of material fact on whether District Attorney Ogg has prosecuted—or threatened to prosecute—any of the individuals or entities who are private plaintiffs for committing one of S.B. 1's new or modified criminal offenses.  In the absence of such evidence, standing to sue an elected district attorney cannot be carried through trial on allegations that (1) there is a provision of Texas criminal law passed by the Texas Legislature that an individual or advocacy organization believes reflects poor public policy choices that could affect the activities of the individual or organization and (2) one of the private plaintiffs lives or works or conducts activities in an area within the general criminal jurisdiction of the elected Texas district attorney.  Even in a pre-enforcement context, there must be proof to raise a genuine issue of material fact of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" and "a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).  There must be proof to raise a

genuine issue of material fact that the threatened enforcement is "imminent." _Susan B. Anthony List v. Driehaus_, 573 U.S. 149, 159 (2014).  For example, proof of incurring "certain costs" as a "reaction to a risk of harm" is insufficient to establish injury-in-fact unless the plaintiff can establish that the risk of harm rises to the level of being "certainly impending." _Clapper_, 568 U.S. at 409.

Here, there is no evidence that any of the private plaintiffs who have sued District Attorney Ogg have a "serious intent" to commit the criminal offenses they challenge in Harris County. _Barilla v. City of Hous._, 13 F.4th 427, 432 (5th Cir. 2021).  With respect to the lack of evidence of injury-in-fact with respect to each challenged provision of S.B. 1, there is no evidence on, among other things:

- That any plaintiff is an election officer who intends to refuse to accept an election watcher as required by law. Tex. Elec. Code § 33.051(g).

- That any plaintiff is an individual who serves in an official capacity at a place where election watchers are authorized and intends to knowingly prevent a watcher from observing an activity or procedure as authorized by law. _Id._ 33.061(a).

- That any plaintiff intends to knowingly, unlawfully possess another person's ballot or voting envelope. _Id._ § 86.006(f).

- That any plaintiff intends to assist voters with voting by mail while knowingly failing to sign the required oath and documentation. _Id._ § 86.010(f).

- That any plaintiff intends to compensate persons, or solicit or receive compensation, for assisting voters. _Id._ § 86.0105(a).

- That any plaintiff is an employer who intends to deny an employee the right to be absent from work for the purpose of voting. _Id._ § 276.004(a).

- That any plaintiff intends to engage in "vote harvesting" for compensation. _Id._ § 276.015.

- That any plaintiff is a public official or election official who intends to unlawfully solicit or distribute applications to vote by mail. _Id._ § 276.016.

- That any plaintiff is an early voting clerk or election official who intends to

knowingly provide an early voting ballot by mail to a person he knows did not apply for one. *Id.* § 276.017.

There is no evidence that any of these private plaintiffs face an imminent and certainly impending threat of prosecution under any of these challenged provisions by District Attorney Ogg. Furthermore, there is no evidence that District Attorney Ogg has any intent to enforce any of these challenged statutes against any of the private plaintiffs. To the contrary, District Attorney Ogg has told the private plaintiffs through their counsel, in an offer to stipulate, that she *does not intend to enforce them* while their constitutionality is litigated. **Ex. 2**. The private plaintiffs rejected that stipulation. **Ex. 3**. But the offered stipulation, along with the declarations and discovery responses provided remains the only evidence in the record regarding District Attorney Ogg's intentions and plainly rebuts their unsubstantiated claims that they fear prosecution by District Attorney Ogg.

**B.    Absence of a causal connection between any action taken by District Attorney Ogg and any injury-in-fact to any of the private plaintiffs.**

The Supreme Court's decision in *Lujan* teaches that traceability requires "a causal connection between the injury and the conduct complained of." 504 U.S. at 560. The Supreme Court has subsequently reiterated that traceability requires evidence that "the injury was likely caused *by the defendant*." *TransUnion*, 141 S. Ct. at 2203 (emphasis added); *see also Vermont Agency of Nat. Res. v. Stevens*, 529 U.S. 765, 771 (2000) ("causation"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) ("causation"). Standing requires that injuries be "traced to the challenged action *of the defendant*." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) (emphasis added); see also *Lujan*, 504 U.S. at 560 ("the injury has to be "fairly ... trace[able] to the challenged action of the defendant, *and not . . . th[e] result [of] the independent action of some third party not before the court*." (emphasis added) (quoting *Simon*, 426 U.S. at 41-42)). In *Simon*, the Court found it was "purely speculative" whether the injury had resulted from the

conduct of the defendants or third parties, *Simon*, 426 U.S. at 42-43, and held that "unadorned speculation will not suffice to invoke the federal judicial power."  *Id*. at 44.

To be precise, *Lujan* based the need for a "causal connection" on a line of cases holding that the plaintiff's injury-in-fact must "result from" the conduct at issue.[8]  This is a requirement of "'*de facto* causality.'"  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) (citation omitted).  In other words, there must be "concrete harm *because of* the *defendant's* violation of federal law."  *TransUnion*, 141 S. Ct. at 2205 (emphasis added); *see also id*. at 2210 (same).  And causation of injury is a narrow inquiry, specific to individual claims by individual plaintiffs against individual defendants.  *Lewis*, 518 U.S. at 358 n.6; *Blum*, 457 U.S. at 999.

This burden cannot be satisfied with speculation.  *Simon*, 426 U.S. at 42-43; *Clapper*, 568 U.S. at 413.  There must be competent evidence of causation-in-fact; under any formulation, the evidence proffered to meet such a burden at trial to prove traceability must be "more than surmise."  *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996).

Under these legal standards, there is no evidence—much less evidence sufficient to raise a genuine issue for trial—of the necessary causal connection between the claimed injuries of any of the private plaintiffs and District Attorney Ogg.  As detailed above, the private plaintiffs cannot adduce any evidence of any actual, threatened, or imminent enforcement by District Attorney Ogg of any of the challenged S.B. 1 provisions against any of the private plaintiffs, much less anyone else.  The time for private plaintiffs' reliance on broad "group pleading" tactics and efforts to bootstrap claims against District Attorney Ogg on evidence of actions of *other officials*, such as members of the Texas Legislature who passed S.B. 1, for causing the alleged harm at the center of this lawsuit, has long come and gone.  For purposes of summary judgment, there is an absence of

---

[8] *See*, *e.g.*, *Simon*, 426 U.S. at 41-42; *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973) (citing cases); *Laird v. Tatum*, 408 U.S. 1, 13 (1972); *Ex parte Levitt*, 302 U.S. 633, 636 (1937).

credible evidence to support the notion that any of the private plaintiffs could sustain its burden of proof to demonstrate standing for a constitutional or statutory claim against District Attorney Ogg at trial.  The necessary Article III showings of "injury to the plaintiff," *Laidlaw*, 528 U.S. at 181, as traced to any actual conduct (as opposed to office status) by District Attorney Ogg, cannot be made,[9] as a matter of fact and law.[10]

---

[9]In the absence of any potential showing of injury-in-fact traceable to actions by District Attorney Ogg, the private plaintiffs cannot show that any relief they seek would result in redressability of such non-existent, non-traceable injuries. *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 657 (5th Cir. 2019).

[10]For similar reasons, the private plaintiffs' claims are unripe and must be dismissed for lack of jurisdiction.  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).  The requirement of ripeness "ensures that federal courts do not decide disputes that are 'premature or speculative.'" *DM Arbor Court, Ltd v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2015) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)).  "A case becomes ripe when it 'would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now.'" *Id.* (quoting *Pearson v. Holder*, 624 F.3d 682 (5th Cir. 2010)).  In evaluating ripeness, the "key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

The claims in this case against District Attorney Ogg challenging various criminal provisions satisfy neither requirement.  The claims are not fit for judicial decision because there is no evidence of a credible threat of prosecution.  To the extent the parties raise questions about the proper interpretation of the scope of various criminal provisions, the "operation of the statute is better grasped when viewed in light of a particular application." *Texas v. United States*, 523 U.S. at 301.  Determining the scope of legislation "in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Id.*  The private plaintiffs also have not shown hardship.  In *Choice Inc.*, the plaintiff alleged "it could satisfy the hardship-prong of the ripeness inquiry because it had been 'forced to operate in a heightened state of vigilance' in which it is required to 'undertake all steps possible to try to predict which laws the Department [of Health and Hospitals] will enforce and how it will interpret them." 691 F.3d at 715-16.  The plaintiff, however, did "not identify a single concrete example of how it has been forced to modify its behavior as a result of" the challenged law. *Id.* at 716.  The same problem arises in this case because, again, there is no evidence that the private plaintiffs have ever engaged in any of the conduct prohibited by the challenged criminal laws in Harris County.  They allege—but have not adduced summary judgment proof—that they as organizations are "expending resources" to "educate the public" about the new provisions of law.  Even assuming that expending resources to educate the public about laws could ever be an "injury" for purposes of standing—that is not an "injury" that could ever be traced to conduct by District Attorney Ogg, as opposed to the Texas Legislature that passes laws.  The private plaintiffs cannot adduce evidence to raise a genuine issue of material fact on any action by District Attorney Ogg, as opposed to other actors, that have had a "direct effect on the day-to-day business" of their organizations. *Texas v. United States*, 523 U.S. at 301.

It is important in this context to keep in mind that with the possible exception of private plaintiff Arc of Texas, *see* Dkt. 360 at 7-8, all private plaintiffs assert *organizational*, and not *associational*, standing.  This means that at trial, they would need to adduce evidence of injury-in-fact to them as organizations, and not to their members.  The alleged "injuries" to the organizations are, in the words of some of the private plaintiffs, "resource-intensive education efforts."  *Id*. at 6.  Whatever those education efforts may or may not be, if the office of District Attorney Ogg has not taken any action to enforce the laws on which "education efforts" are ongoing, how could those claimed "injuries" ever be properly correlated to conduct by District Attorney Ogg, rather than other actors (such as the Texas Legislature) that passed the legislation challenged by the private plaintiffs?  Any such claims run afoul of the established Article III principle that a plaintiff can bring claims in federal court for an injury in fact "that's fairly traceable to the defendant's conduct."  *E.T.*, 41 F.4th at 714.

## IV. Even if this Court had jurisdiction, there would be no genuine issue of material fact on the private plaintiffs' ability to meet their burdens of proof on their claims as to District Attorney Ogg.

If this Court concludes that sovereign immunity, lack of standing, and lack of ripeness do not mandate summary judgment, it should grant summary judgment to District Attorney Ogg because there is no evidence to support the private plaintiffs' claims against her on the merits.

### A. Constitutional claims under 42 U.S.C. § 1983

For the various allegations of constitutional violations, there is no evidence that District Attorney Ogg has taken any actions that would burden, let alone violate, anyone's First Amendment, Fourteenth, or Fifteenth Amendment rights.  Absent proof that her office has taken *any* action with respect to the S.B. 1 provisions over which the private plaintiffs sue, how could the private plaintiffs ever sustain their burden of proof at trial to demonstrate that District Attorney

Ogg has violated any of the private plaintiffs' rights to free speech, equal protection, due process, and voting?  A core element of a section 1983 claim is that the defendant must have taken some action that led to a deprivation of a civil right.  Section 1983 itself provides:

> Every *person* who, under color of any [state] statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any ... other person ... to the deprivation of any rights ... secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Plaintiffs, for purposes of their injunctive relief claims, must prove that District Attorney Ogg as a "person" took actions to deprive one or more of the private plaintiffs of constitutional rights.  As a matter of plain summary judgment procedure, the private plaintiffs cannot meet this burden.  There is no evidence that since the legislative changes enacted through S.B. 1 took effect, District Attorney Ogg has initiated investigations or prosecutions under any of the criminal provisions challenged by the private plaintiffs, much less against them.

No court has ever recognized the legal theory that a district attorney can serve as an all-purpose placeholder defendant for a plaintiff to obtain a pre-enforcement advisory opinion on the facial constitutionality of any state criminal law on the books without evidence that the specific district attorney defendant poses a genuine threat to the specific plaintiff's constitutional rights. To the contrary, courts have devoted significant attention to the question whether the plaintiff has sued the proper defendant in a section 1983 claim and require "a credible threat" of an enforcement action.  *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 536 (2021).  Given the complete absence of any evidence that District Attorney Ogg has taken actions that have threatened the constitutional rights of the private plaintiffs—much less anyone else—the Court (if it needed to after working through the sovereign immunity and standing jurisdictional challenges) would be in

an unavoidable position to grant District Attorney Ogg summary judgment on any and all of the section 1983 claims lodged against her.

### B.    Title II of the Americans with Disabilities Act

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The statute requires a Title II claimant to prove:  "(1) that he has a *qualifying disability*; (2) that he is being denied the benefits of services, programs, or activities *for which the public entity is responsible*, or is otherwise *discriminated against by the public entity*; and (3) that *such discrimination* is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (emphasis added).  The burden of showing discrimination falls on the plaintiff to specifically identify the disability and resulting limitations and request accommodation in direct and specific terms. *Windham v. Harris County*, 875 F.3d 229, 236-37 (5th Cir. 2017).

The private plaintiffs cannot meet any of the three elements of a Title II claim against District Attorney Ogg.  First, with respect to "qualifying disability," the private plaintiffs who have sued Ogg are non-profit organizations, not individuals, and therefore cannot make a showing at trial on the first element of such a claim. *See* 42 U.S.C. § 12131(2) ("The term 'qualified individual with a disability' means an individual with a disability . . . ."); *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (holding that a plaintiff must prove he has a disability to prevail on a claim for disability discrimination under the ADA).

With respect to the second element, the private plaintiffs could never prove that any of them is being denied a "service, program, or activity" for which District Attorney Ogg is responsible.  No one is alleging—much less proving—that District Attorney Ogg, for example, is

25

an elections administrator.  Furthermore, there is no proof that could be adduced at trial to establish discrimination against any of the private plaintiffs (or anyone else) by the public entity for which District Attorney Ogg is responsible.  *See LUPE v. Abbott*, 618 F. Supp. 3d 504, 542 (W.D. Tex. 2022) (Rodriguez, J.) (dismissing the Title II claims against the Attorney General because he "does not provide the service or benefit at issue," "namely, voting and voting by mail").

Finally, with respect to the third element, without any actionable conduct by District Attorney Ogg (much less discriminatory conduct), there could never be a showing of a nexus between any injury claimed by any of the private plaintiffs and conduct by District Attorney Ogg that would violate Article II.  *Id.*

The lack of substance of such a "statutory" claim against District Attorney Ogg—again, pled in a transparent effort to get around core principles of sovereign immunity—can and should be laid bare on summary judgment.  None of the private plaintiffs, as a matter of fact and law, could prove an Article II claim against her.

### C.      Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act states that no "otherwise qualified individual with a disability in the United States shall, solely *by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity* receiving Federal financial assistance."  29 U.S.C. § 794.  For a section 504 claim, a plaintiff must show that (1) she is a qualified individual with a disability, and (2) the disputed program or activity is federally funded.  *Brennan v. Stewart*, 834 F.2d 1248, 1260 (5th Cir. 1988).

The Court's summary judgment analysis of this additional non-existent claim against District Attorney Ogg can and should mirror that properly applied to the private plaintiffs' Title II claim.  First, the private plaintiffs as non-profit organizations, are not "qualified individual[s] with

a disability." *See* 29 U.S.C. § 705(2)(A) "The term 'individual with a disability means any individual who [] has a physical or mental impairment . . . ."); *Sapp v. Donohoe*, 539 Fed. App'x 590, 595 (5th Cir. 2013) (affirming summary judgment where plaintiff failed to meet her burden that she was disabled); *Tips v. Regents of Tex. Tech Univ.*, 921 F. Supp. 1515, 1517 (N.D. Tex. 1996) ("In order to establish a *prima facie* case of discrimination under Section 504 . . . Plaintiff must show that . . . she is a 'qualified individual with a disability' as that term is defined in Section 504 and under the ADA.").

Second, none of the private plaintiffs has any ability to raise a genuine issue of material fact at trial that District Attorney Ogg operates or controls any federally funded program or activity from which any of the private plaintiffs can prove they have been excluded, denied benefits, or subjected to discrimination. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 (5th Cir. 2012) (affirming summary judgment dismissal of Rehabilitation Act claim where plaintiff "offered no evidence that [] [c]ounty jail received federal funds, so the [Rehabilitation Act] is inapplicable to his claims"); *Johnson v. Callanen*, 608 F. Supp. 3d 476, 487-88 (W.D. Tex. 2022) (Rodriguez, J.) (dismissing Rehabilitation Act claim in absence of an "allegation that Defendants receive[d] or directly benefit[ed] from federal financial assistance in connection with the administration of elections generally or voting by mail specifically"). Again, to the extent that the private plaintiffs are claiming organizational standing, they cannot even claim a right to vote. Even if they could, District Attorney Ogg does not operate or control any elections process.

Again, the straw-grasping approach at alleging "statutory" claims in a transparent effort to avoid sovereign immunity is laid bare. None of the private plaintiffs could ever prove a section 504 claim against District Attorney Ogg.

D.        **Section 208 of the Voting Rights Act**

Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  52 U.S.C. § 10508.  Texas law specifically guarantees the right secured by Section 208, stating that a "voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs."  Tex. Elec. Code § 64.032(c).

This paper-thin statutory Section 208 claim made against District Attorney Ogg would fare no better at trial than any of the others.  None of the private plaintiffs could raise a genuine issue of material fact that District Attorney Ogg has taken, or threatened to take, any actions that would affect the provision of assistance to voters who require it.  Thus, even if the Court did have jurisdiction over a Section 208 claim against District Attorney Ogg, the Court should grant summary judgment in light of the absence of evidence of any violation of Section 208.

E.        **Section 2 of the Voting Rights Act**

Section 2 of the Voting Rights Act states that no State shall "impose[] or appl[y] . . . a voting qualification or prerequisite to voting or standard, practice, or procedure . . . which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).  The essence of a Section 2 claim "is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities" of minority and non-minority voters to elect their preferred representatives.  *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)).  Section 2 is violated only where, based on the totality of the

circumstances, "the political processes leading to nomination or election" are not "equally open to participation" by members of the relevant protected group "in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

Even assuming *arguendo* that the private plaintiffs could ever satisfy their burden under Section 2 to prove that any of the challenged provisions prevent minorities in Harris County from electing their preferred representatives, there is no proof supporting a causal connection between any such inability and District Attorney Ogg. *See Salas v. Sw. Tex. Jr. College Dist.*, 964 F.2d 1542, 1555 (5th Cir. 1992) ("Underlying these functions of the court and the plaintiffs in a multimember district vote dilution case is an inquiry into causation—whether the given electoral practice is responsible for plaintiffs' inability to elect their preferred representatives."). District Attorney Ogg does not operate any elections system, and none of the private plaintiffs can raise a genuine issue of material fact on any action by District Attorney Ogg that has "imposed or applied" any of the criminal provisions of S.B.1 *at all*—let alone in a manner that has resulted in denial of a United States citizen's right to vote on the basis on race or color. Further, as discussed above, there is no administrative or statutory requirement that District Attorney Ogg *ever* apply the challenged laws in the future. Without sufficient evidence of a link between District Attorney Ogg and any discriminatory effects of S.B.1, the private plaintiffs' Section 2 claims would fail on a summary judgment analysis as well, even if the Court were to reach their merits.

**CONCLUSION**

For the foregoing reasons, Defendant Harris County District Attorney Kim Ogg respectfully requests that the Court grant her motion for summary judgment on all claims asserted against her in any and all of the matters consolidated by the Court under Civil Action No. 5:21-CV-00844-XR, and all other relief to which she may show herself to be entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

By: _/s/ Eric J.R. Nichols_
   Eric J.R. Nichols
   State Bar No. 14994900
   eric.nichols@butlersnow.com
   Cory R. Liu
   State Bar No. 24098003
   cory.liu@butlersnow.com
   Victoria A. Giese
   State Bar No. 24126391
   victoria.giese@butlersnow.com
   1400 Lavaca Street, Suite 1000
   Austin, Texas 78701
   Tel: (737) 802-1800
   Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT DISTRICT ATTORNEY KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols