IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 5:21-cv-844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| Defendants. | § | |

---

**STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................2

STATEMENT OF GROUNDS & UNDISPUTED FACTS .........................................................6

I. Voters with Disabilities Have Ample and Meaningful Opportunities to Vote in Texas...........6

II. The Texas Legislature Enacts Senate Bill 1 and Expands Protections for Voters with Disabilities ..................................................................................................................8

III. Plaintiffs File Suit, Alleging Discrimination Against Voters with Disabilities. ...........................9

LEGAL STANDARD ..............................................................................................................10

ARGUMENT & AUTHORITIES ..............................................................................................12

I. Texas Law Does Not Discriminate Against Disabled Voters. ..................................................12

    A. Voters with Disabilities Have Ample and Meaningful Opportunities to Vote in Texas; the Challenged Provisions Do Not Change That. ........................................12

    B. Neither Plaintiffs nor Their Members Requested a Reasonable Accommodation. ..................................................................................................19

        1. Plaintiffs Cannot Meet the First Element of a Failure to Accommodate Claim. ..........................................................................................................20

        2. Plaintiffs Cannot Meet the Second Element of a Failure to Accommodate Claim. ..........................................................................................................21

II. Instead of Seeking Reasonable Accommodations, Plaintiffs Propose to Enjoin Each Challenged Provision for All Voters. ......................................................................................24

    A. Plaintiffs Had the Burden of Showing That Their Requested Modification is Reasonable; They Failed to Meet It. ........................................................................24

    B. Enjoining the Challenged Provisions in Their Entirety Represents a Fundamental Alteration. ......................................................................................27

    C. Neither the ADA nor the Rehabilitation Act Demand that Defendants Acquiesce to Plaintiffs' Choice of Accommodations. ........................................28

CONCLUSION .....................................................................................................................29

## INDEX OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................................................12

*Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007)................................................................12

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005).......................................12, 13

*Cadena v. El Paso Cty.*, 946 F.3d 717 (5th Cir. 2020)......................................13, 24, 27, 33

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).............................................................11, 12

*Clark v. Dep't of Pub. Safety*, 63 F.4th 466 (5th Cir. 2023)..................................................28

*E.T. v. Paxton*, 41 F.4th 709 (5th Cir. 2022)........................................................................32

*Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216 (5th Cir. 2011)........................................33

*Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012) ...........................14

*Johnson v. Callanen*, 608 F. Supp. 3d 476 (W.D. Tex. 2022)...............................................30

*Johnson v. Callanen*, No. SA-22-CV-00409-XR, 2022 WL 14069015 (W.D. Tex. Oct. 21, 2022)........32

*Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997) ...................27, 28

*League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom. League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023) ....................................................................................30, 31

*Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) ....................................8, 13

*Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847 (W.D. Tex. 2014)...........................14

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698 (5th Cir. 1994)........12

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ........................................13

*Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678 (5th Cir. 1996) ..................................................13

*Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349 (6th Cir. 2015) ........................................14

*Smith v. Harris Cty.*, 956 F.3d 311 (5th Cir. 2020)................................................13, 22, 23

*Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155 (5th Cir. 1996) ........................................33

*Tennessee v. Lane*, 541 U.S. 509 (2004) .......................................................................27, 32

*Tex. League of United Latin Am. Citizens v. Abbott*, 493 F. Supp. 3d 548 (W.D. Tex. 2020),
   *vacated sub nom. Tex. League of United Latin Am. Citizens v. Hughs*, No. 20-50867,
   2021 WL 1446828 (5th Cir. Feb. 22, 2021) ........................................................... 9

*Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002) ............................... 24

*Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253 (5th Cir. 2007) ............................ 12

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) .................................................. 28

*Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020) ................................................. 14

*Windham v. Harris Cty.*, 875 F.3d 229 (5th Cir. 2017) ...................................... 22, 23

**Statutes**

42 U.S.C. § 12102(1)(A) ......................................................................................... 27

Tex Elec. Code § 1.0015 ........................................................................................... 9

Tex. Elec. Code § 1.022 ...................................................................................... 9, 24

Tex. Elec. Code § 41.001 .................................................................................... 7, 24

Tex. Elec. Code § 43.034 .................................................................................... 7, 24

Tex. Elec. Code § 61.012 .................................................................................... 7, 24

Tex. Elec. Code § 64.009 ........................................................................ 7, 10, 17, 24

Tex. Elec. Code § 64.0322 .................................................................................... 18

Tex. Elec. Code § 64.034 ................................................................................. 10, 18

Texas Elec. Code § 64.036 .................................................................................... 18

Tex. Elec. Code § 81.001 .................................................................................... 7, 24

Tex. Elec. Code § 82.002(a) .................................................................................. 24

Tex. Elec. Code § 82.005 ...................................................................................... 24

Tex. Elec. Code § 84.002 ...................................................................................... 13

Tex. Elec. Code § 84.011(a) ................................................................................. 13

Tex. Elec. Code § 84.035 ...................................................................................... 14

Tex. Elec. Code § 86.001 ...................................................................................... 15

Tex. Elec. Code § 86.013 ............................................................................................................ 19

Tex. Elec. Code § 86.015(c) ........................................................................................................ 17

Tex. Elec. Code § 87.0271 ..................................................................................................... 9, 17

Tex. Elec. Code § 87.041 ............................................................................................................ 10

Tex. Elec. Code § 87.0411 ............................................................................................................ 9

Tex. Elec. Code §§ 82.001–.004 ................................................................................................... 7

Tex. Elec. Code §§ 82.007–.008 ................................................................................................... 7

Tex. Elec. Code §§ 276.015-.019 ................................................................................................ 20

### Other Authorities

Tex. Leg., An Act Relating to Election Integrity and Security,
    S.B. 1, 87th Leg., 2d Spec. Sess. (2021) ................................................................................ 9

### Rules

Fed. R. Civ. P. 56(a) ................................................................................................................... 11

Defendants Gregory W. Abbott, in his official capacity as Governor of Texas, Jane Nelson, in her official capacity as Secretary of State ("the Secretary"), Warren K. Paxton, in his official capacity as Attorney General of Texas, and the State of Texas ("State Defendants"), move for summary judgment on claims brought against the Secretary pursuant to Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973.

### STATEMENT OF GROUNDS & UNDISPUTED FACTS

## I.     Voters with Disabilities Have Ample and Meaningful Opportunities to Vote in Texas.

Texas law provides all voters, including voters with disabilities, multiple opportunities and methods to vote each election. Among others, voters may (1) vote in a polling place during early voting; (2) vote curbside during early voting; (3) vote in a polling place on Election Day; (4) vote curbside on Election Day; and (5) vote by mail. *See* Tex. Elec. Code §§ 41.001, 64.009,  81.001. These are the same options offered to other voters, except that non-disabled voters are generally not eligible for curbside voting and may vote by mail only if they are at least sixty-five years of age or satisfy other special conditions. *See id.* §§ 64.009, 82.001–.004, 82.007–.008.

Texas law also allows for numerous accommodations for disabled voters. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly.[1] *See id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

---

[1] *See* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Dep.) at 204:18–205:20

Texas has chosen a highly decentralized system by which to manage and administer its elections. *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 428 n.7 (5th Cir. 1997). Accordingly, counties have additional policies in place to increase access to voters with physical and mental impairments.[2] Pursuant to these policies, each polling site has trained election workers available to provide assistance to any voters who need it.[3] In many counties, this assistance is available in multiple languages, particularly Spanish, but also Vietnamese, Chinese, and even American Sign Language ("ASL") and Braille.[4] Counties also keep available forms and notices in accessible formats. They also develop procedures by which they receive and process accommodation requests from voters.[5]

Overall, counties treat their obligations under the ADA seriously[6] and do their best to accommodate voters when they receive a request.[7]

---

[2] *See, e.g., Technical Advisory Committee for Persons with Disabilities*, Bexar County, https://www.bexar.org/1535/Technical-Advisory-Committee?utm_source=website&utm_medium=navAccessButton&utm_content=defaulttheme (last visited May 25, 2023); *Voters with Special Needs*, Dallas County, https://www.dallascountyvotes.org/voter-information/voters-with-special-needs/ (last visited May 25, 2023); *Voters with Special Needs*, El Paso County, https://epcountyvotes.com/voter_information/voters_with_special_needs (last visited May 25, 2023); *Voters with Disabilitieas*, Harris County, https://www.harrisvotes.com/Voter/Voters-with-Disabilities (last visited May 25, 2023); *Voters with Special Needs*, Hidalgo County, https://www.hidalgocounty.us/2806/Voters-with-Special-Needs (last visited May 25, 2023); *Voters with Disabilities*, Travis County, https://countyclerk.traviscountytx.gov/departments/elections/voters-with-disabilities/ (last visited May 25, 2023).

[3] *See, e.g.,* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Dep.) at 200:13–200:15, 204:12–204:17; App. F (Cameron County Remi Garza May 9, 2022 Dep.) at 205:20–205:22.

[4] *See, e.g.,* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Dep.) at 201:9–203:3; App. G (Dallas County EA April 29, 2022 Dep.) at 123:3–125:14; App. H (Dallas County Michael Scarpello April 13, 2023 Dep.) at 53:22–56:14; App. N (El Paso County Lisa Wise April 15, 2023 Dep.) at 56:3–58:25, 233:4–233:20; App. F (Cameron County Remi Garza May 9, 2022 Dep.) at 205:23–206:9, 269:17–170:11; App. P (Harris County Isabel Longoria April 20, 2022 Dep.) at 67:7–70:3.

[5] *See, e.g., ADA Complaint Form*, Bexar County, https://www.bexar.org/DocumentCenter/View/5033/ADA-Complaint-Form-Word (last visited May 25, 2023); *ADA Notice and Complaint Policy*, Bexar County, https://www.bexar.org/DocumentCenter/View/5348/ADA-Notice-and-Complaint-Policy-Word (last visited May 25, 2023); *Notice to Voters with Disabilities*, Harris County, https://files.harrisvotes.com/harrisvotes/prd/docs/VotingInfo/NOTICE%20TO%20VOTERS%20WITH%20DISABILITIES%20-%202021.pdf (last visited May 25, 2023); *Disability Complaints Policy*, Harris County, https://www.harrisvotes.com/Voter/Voters-with-Disabilities/Disability-Complaints-Policy (last visited May 25, 2023); *Disability Complaint Form*, Harris County, https://www.harrisvotes.com/Voter/Voters-with-Disabilities/Disability-Complaint-Form (last visited May 25, 2023); *Disability Complaints Process for Travis County Elections*, Travis County, https://countyclerk.traviscountytx.gov/wp-content/uploads/elections/ADAComplaintProcess.pdf (last visited May 25, 2023); *Notice to Voters with Disabilities*, Travis County, https://countyclerk.traviscountytx.gov/wp-content/uploads/elections/NoticeOfVotersWithDisabilitiesTimContact.pdf (last visited May 25, 2023); *ADA Complaint Form*, Travis County, https://countyclerk.traviscountytx.gov/departments/elections/voters-with-disabilities/ada-complaint-form/ (last visited May 25, 2023).

[6] App. R (Harris County Lauren Smith March 21, 2022 Dep.) at 13:21–17:17; App. H (Dallas County Michael Scarpello April 13, 2023 Dep.) at 123:14–128:25; App. O (El Paso County Lisa Wise April 18, 2023 Dep.) at 71:24–72:3.

[7] *See, e.g.,* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Dep.) at 204:18–205:20; Appx_ (El Paso County Lisa Wise April 18, 2023 Dep.) at 71:19–71:23.

II.     **The Texas Legislature Enacts Senate Bill 1 and Expands Protections for Voters with Disabilities**

The COVID-19 pandemic prompted counties to deviate from past practice when conducting the 2020 elections. For the most part, these changes focused on the use of personal protective equipment and other health protocols, but a number of policies implemented during this time pushed at the boundaries of what was permitted under the Texas Election Code. *See, e.g., Tex. League of United Latin Am. Citizens v. Abbott*, 493 F. Supp. 3d 548, 558 (W.D. Tex. 2020), *vacated sub nom. Tex. League of United Latin Am. Citizens v. Hughs*, No. 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021). In response to these controversies, as well as other concerns related to election integrity, the 87th Texas Legislature took up election reform as one of its priorities and enacted Senate Bill 1 ("SB 1") on September 7, 2021. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021).

According to the bill's text, the Legislature intended for the provisions of SB 1 to "reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted." Tex Elec. Code § 1.0015. Keeping with this purpose, the statute did not reduce or eliminate any of the abovementioned options or services offered to voters with disabilities. It instead codified additional protections, by prohibiting election officials from interpreting the Election Code as "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." *Id.* § 1.022.

Voters with disabilities benefited from other changes in the law as well. In years past, the Election Code did not provide voters with a workable means to cure defects in their mail-in ballots. SB 1 rectified that omission by providing voters, including those with disabilities, with a process to correct their ballot and ensure that their ballot is counted. *Id.* at §§ 87.0271; 87.0411. SB 1

deemphasizes signature matching as a means of verifying voters' identity, addressing concerns that physical impairments could prevent some voters from creating consistent signatures. *Id.* at § 87.041. Multiple provisions help guarantee that voters' choices remain private when obtaining assistance. *Id.* at §§ 64.009; 64.034.

### III.    Plaintiffs File Suit, Alleging Discrimination Against Voters with Disabilities.

Litigation was commenced by Plaintiff La Unión Del Pueblo Entero (LUPE), *et al.*, on September 3, 2021—four days before the Governor signed SB 1 into law, and ninety days before SB 1 became effective. ECF 1. Additional lawsuits were soon filed by Houston Area Urban League ("HAUL"), *et al.*;[8] the Organization of Chinese Americans–Greater Houston Chapter ("OCA-GH"), *et al.*;[9] the League of United Latin American Citizens, *et al.*;[10] Mi Familia Vota, *et al.*;[11] and the United States of America[12]—all of which were consolidated in the present action. *See* ECF 31. Among the claims brought, LUPE Plaintiffs, HAUL Plaintiffs, and OCA-GH Plaintiffs contend that thirteen provisions of SB 1 violate Title II of the ADA. *See* ECF 280 at ¶¶ 272–85; ECF 200 at ¶¶ 182–87; ECF 199 at ¶¶ 337–53. HAUL Plaintiffs and OCA-GH Plaintiffs also contend that ten of these provisions violate Section 504 of the Rehabilitation Act. *See* ECF 200 at ¶¶ 188–94; ECF 199 at ¶¶ 354–65.

State Defendants moved to dismiss these claims, arguing that voting is not a program or activity provided by the Secretary of State or Attorney General. The Court agreed with this argument as it pertained to the Attorney General and dismissed the claims against him. The Court denied State Defendants' motion as it pertained to the Secretary. State Defendants now file this motion for summary judgment on behalf of the Secretary because Plaintiffs have failed to meet their prima facie

---

[8] Original Complaint, *Houston Area Urban League et al. v. Abbott et al.*, No. 5:21-cv-848 (W.D. Tex. Sept. 7, 2021), ECF 1.
[9] Original Complaint, *OCA-Greater Houston et al. v. Esparza et al.*, No. 1:21-cv-780 (W.D. Tex. Sept. 3, 2021), ECF 1.
[10] Original Complaint, *League of United Latin American Citizens et al. v. Esparza et al.*, No. 1:21-cv-00786 (W.D. Tex. Sept. 7, 2020), ECF 1.
[11] Complaint, *Mi Familia Vota et al. v. Abbott et al.*, No. 5:21-cv-00920 (W.D. Tex. Sept. 27, 2021), ECF 1.
[12] Complaint, *United States v. Texas et al.*, No. 5:21-cv-01085 (W.D. Tex. Nov. 4, 2021), ECF 1.

burden, and in any event, the relief they seek is unreasonable and would fundamentally alter Texas election law.

## LEGAL STANDARD

Federal courts favor granting summary judgment where no genuine fact issue exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole[.]"). The Supreme Court teaches that courts should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322. Disputes are genuine only where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Of course, [t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citation omitted). But where, as here, the burden of proof at trial lies with the nonmoving party, a defendant may satisfy its initial burden by "'showing'—that is, pointing out to this Court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp.*, 477 U.S. at 325; *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994).

A defendant must demonstrate the absence of a genuine issue of material fact to win summary judgment, but it need not negate the elements of a plaintiff's case to carry its burden here. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). If a defendant meets its Rule 56 burden, the plaintiff must identify specific evidence in the record and articulate how that evidence supports his claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Plaintiffs cannot satisfy the burden by pointing out "'some metaphysical doubt as to the material facts, by conclusory allegations,

by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quotation omitted).

In this motion, State Defendants move for summary judgment against Plaintiffs' claims under the ADA and the Rehabilitation Act. To make "a prima facie case of discrimination under the ADA," a plaintiff must demonstrate: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Smith v. Harris Cty.*, 956 F.3d 311, 317 (5th Cir. 2020).

The Rehabilitation Act has the same requirements, except it is stricter in two respects. First, the causation requirement is more demanding. The exclusion, denial, or discrimination must be "solely by reason" of plaintiff's disability." *Cadena v. El Paso Cty.,* 946 F.3d 717, 723 n.1 (5th Cir. 2020). Second, the Rehabilitation Act requires "that the specific program or activity with which [the plaintiff is] involved receives or directly benefits from federal financial assistance." *Lightbourn,* 118 F.3d at 427.

If Plaintiffs establish a prima facie case of discrimination, Plaintiffs must then propose a facially reasonable modification to the challenged provision that will allow them the meaningful access they seek. *Accord Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996) (requiring Plaintiff to propose reasonable accommodations in employment context); *see also*, *e.g.*, *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016).  An accommodation is not reasonable "if it either imposes 'undue financial and administrative burdens on a grantee, or requires a 'fundamental alteration in the nature of [the] program.'" *Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847, 857 (W.D. Tex. 2014).

The determination of the reasonableness is often fact-specific. *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020). However, courts have granted summary judgment in favor of defendants when "a plaintiff failed to present evidence from which a jury may infer that the accommodation is

reasonable on its face" and when "the defendant establishes as a matter of law that the proposed modification will cause 'undue hardship in the particular circumstances.'" *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)); *see also Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 355 (6th Cir. 2015).

## ARGUMENT & AUTHORITIES

### I.    Texas Law Does Not Discriminate Against Disabled Voters.

#### A.    Voters with Disabilities Have Ample and Meaningful Opportunities to Vote in Texas; the Challenged Provisions Do Not Change That.

Plaintiffs allege thirteen sections of Senate Bill 1 (the "Challenged Provisions") impede the ability to vote for individuals with disabilities. As described in detail below, not only do the Challenged Provisions improve voting security and accessibility, they are also reasonable and rational. These improvements have been made to many types of voting, including, but not limited to, curbside voting, mail voting for individuals with a disability, and polling staff training. The Challenged Provisions do not pose a barrier to the extensive voting opportunities offered to disabled voters in Texas.

**Section 5.02** amended § 84.002 of the Election Code by requiring mail ballot applications to include either Social Security numbers or a Texas identification number which matches a voter's registration record before being accepted.[13] Logically, **Section 5.03** mandates that mail ballot applications must have a space for a Social Security number or a Texas identification number.[14] Requiring voters to list on their ballot a number that will never change is rational and more reliable identifier than other kinds of identification that do change, like addresses or signatures.[15] Plaintiffs have failed to provide evidence showing how the requirement to use an identifying number excludes or denies individuals with disabilities equal access to voting, much less discriminates against voters

---

[13] Tex. Elec. Code § 84.002.
[14] Tex. Elec. Code § 84.011(a).
[15] *See* Appx. ▢ (Yvonne Ramón April 21, 2022 Dep.) at 153:8–155:19; App. EE (Rep. John Bucy August 9, 2022 Dep.) at 158:20 – 160:2.

with disabilities. Along with acknowledging the improvements in accessibility since SB 1's enactment,[16] one of Plaintiffs' witnesses, Pamiel Gaskin, noted in her sworn deposition she has never had trouble filling out the necessary form, nor trouble in assisting her disabled husband while voting.[17] Indeed, contrary to Plaintiffs' conclusory arguments,[18] Gaskin's deposition revealed the ease at which she acquired, completed, and submitted her mail voting applications, which ultimately resulted in her and her disabled husband voting in the March 2022 primary election.[19]

Plaintiffs instead ask the Court to engage in speculation to support their argument. They ask the Court to infer that having disabled voters writing the identifying numbers, either themselves or through an assistor, is more exclusionary than writing their voter information, or indicating their reason for voting by mail, or their selection for which elections they would like to receive a mail-in ballot. Plaintiffs imply that there is a threshold by which a disabled voter or assistor is able to navigate the application for ballot by mail, but only until reaching the rarified air of writing down a Driver's License or Social Security number. Plaintiffs have however not made the claim that there is any more difficulty in remembering your Social Security number than there is your current residential address.

**Section 5.06** amended Election Code § 84.035 to permit election judges to allow voters to cancel their early mail ballot without returning it and voting in-person by provisional ballot.[20] This section improves election integrity by dealing with mail ballots that are unaccounted for, while ensuring voters, including disabled voters the right to have their in-person vote counted. A Plaintiffs' witness testified at her deposition to a situation where this arose.[21] The voter had applied to vote by

---

[16] *See* App. DD (Pamiel Gaskin June 29, 2022 Dep.) at 53:20-21; 54:1-13 (citing the benefits of curbside voting for disabled individuals).

[17] *See* App. DD (Pamiel Gaskin June 29, 2022 Dep.) at 84:8-14.

[18] HAUL Second Am. Compl. ¶¶ 217, 349; OCA-GH Second Am. Compl. ¶ 19.

[19] *See* App. DD (Pamiel Gaskin June 29, 2022 Dep.) at 20:22-24:24 (noting she was able to easily obtain, print, and complete voter forms using the county's website, resulting in successfully processed mail votes for herself and her disabled husband, which she was able to track using the county website).

[20] Tex. Elec. Code § 84.035.

[21] *See* App. A (Alice Penrod April 27, 2023 Dep.) at 34:15–36:12.

mail in 2022 and her application had been accepted. When she decided to instead vote in-person for the November 8, 2022, General Election, she did not think to bring her mail ballot to the voting location. Because of § 5.06, this voter was able to successfully vote in-person by provisional ballot, despite not having her mail ballot present. Plaintiffs have not alleged that there are any instances where § 5.06 caused voters with disabilities to be unable to vote. Plaintiffs provide no explanation of how a provision which created a remedy for a voter who failed to return an early voter ballot constitutes an impediment to voting, as even their expert witness acknowledged, "I don't have any particular information about how that would pose a problem."[22] There is therefore no genuine dispute whether § 5.06 has resulted in discrimination against disabled Texas voters.

**Section 5.07** requires early voting clerks to reject any mail ballot application if the numerical identifying information does not match the voter's registration record.[23] Because elections that have concluded since the passage of SB 1 cannot be reopened, any relief granted by the Court must be prospective, not retroactive. Any difficulty voters may have experienced with the implementation of § 5.07 resulted largely from unfamiliarity. Both voters and county election administrators have figured out how to successfully incorporate § 5.07 into secure and successful elections. The rejection rates for mail ballots in Texas dropped from over 12% in the March 2022 primaries[24] to only 2.7% in the November 2022 general election.[25] While there were many factors that affected the implementation of § 5.07, there is no evidence that mail ballot voters, including disabled mail ballot voters, are in danger of being disenfranchised in the future elections that would be affected by the decision of the Court.

---

[22] *See* App. K (Douglas Kruse May 3, 2022 Dep.) at 164:12-13.

[23] Tex. Elec. Code § 86.001.

[24] Alexa Ura, *More than 12% of mail-in ballots were rejected under new GOP voting rules, final tally shows*, April 6, 2022, https://www.texastribune.org/2022/04/06/texas-mail-in-ballot-rejection-voting/.

[25] Taylor Goldenstein, *Texas mail ballot rejection rate fell to 2.7 percent in midterms*, Houston Chronicle, Dec. 15, 2022, https://www.houstonchronicle.com/politics/texas/article/Mail-ballot-rejection-rate-fell-to-2-7-percent-in-17657412.php.

Plaintiffs' arguments that § 5.07 will disenfranchise voters primarily fall into two buckets. Neither bucket indicates that § 5.07 affects disabled mail ballot voters more than non-disabled mail ballot voters.

First, Plaintiffs argue that ballots will be rejected under § 5.07 "because of simple errors or omissions." *See* ECF 140 at 67. Simple errors of omission occur among all voters. Plaintiffs have failed to advance the argument that disabled voters are more likely to commit errors than non-disabled voters. Considering disabled voters alone, there is nothing in the numerical identifying information requirement that makes disabled voters more likely to forget to fill out this section. This section is at the very top of the page of the application for ballot by mail.[26] If a disabled voter were to have their application for ballot by mail denied for incompleteness, other sections on the form are more likely to be incomplete, due to the placement of the numerical information section.

Second, Plaintiffs argue that disabled voters are especially likely to be affected by this requirement. *See* ECF 137 at 35-37. The OCA-GH Plaintiffs raise the case of a 51-year-old Travis County voter with Cerebral Palsy, who "is completely unable to use his hands and communicates using a communication device that he controls with a mouth stick." *Id.* This voter would likely be unable to fill out an application for vote by mail without personal or mechanical assistance, due to his inability to use his hands. All parts of the application for ballot by mail would certainly be more challenging to this voter because of his disability. The numerical identifying information requirement however is of the same kind as many of the other personal identifying requirements on the application. There is no part of the numerical identifying information requirement under § 5.07 that would be more challenging to this voter than the other sections of the application for ballot by mail.

---

[26] *See* Secretary of State form (5-15f) (Dec. 2021) at https://webservices.sos.state.tx.us/forms/5-15f.pdf.

**Section 5.10** allows voters to correct or add their numerical identifying information on the application or mail ballot,[27] while **Section 5.12** creates a cure process for multiple ballot defects identified by county Signature Verification Committees.[28] This cure process did not exist prior to SB 1; Plaintiffs' argument[29] that the creation of a previously unavailable remedy amounts to an obstacle to one's right to vote lacks coherence. Sections 5.10 and 5.12 only benefit disabled voters. Unless the Court holds against Plaintiffs on §§ 5.10 and 5.12, disabled voters, along with all other mail ballot voters, would be denied the benefit of public voting services.  There is therefore no genuine dispute as to whether §§ 5.10 and 5.12 have resulted in discrimination against disabled Texas voters.

**Section 6.01** mandates that a person who transports seven or more voters to curbside voting must provide their name and address to county election officials and sign a form which is sent to the counties by the Secretary of State.[30] Plaintiffs' opposition to this provision, like many others, is rooted in speculation. One of Plaintiffs' expert witnesses explained he believed this provision may cause individuals to be leery of driving voters to the polls, despite admitting to having not interviewed any such drivers, nor knowing of any data, or even anecdotes of voters who did not receive transportation due to this provision.[31] Plaintiffs have not alleged that any disabled voter in Texas was unable to vote because their driver was required to sign under § 6.01. Plaintiffs have failed even to allege that any disabled voter was unable to utilize curbside voting because of the signature requirement. Plaintiffs have further failed to allege that any county required voters, organization, or organizations' members to provide a signature when transporting seven or more voters to utilize curbside voting. If § 6.01 burdens no voters, then Plaintiffs have no injury. There is therefore no genuine dispute whether § 6.01 has resulted in discrimination against disabled Texas voters.

---

[27] Tex. Elec. Code § 86.015(c).
[28] Tex. Elec. Code § 87.0271.
[29] OCA-GH Second Am. Compl. ¶¶ 125, 143.
[30] Tex. Elec. Code § 64.009.
[31] *See* App. K (Douglas Kruse May 3, 2022 Dep.) at 185:24-190:19.

The voter assistance provisions of SB 1 are intended to preserve the independence of disabled voters and help them be confident that the assistor marking the ballot was marking the voter's choices, and not those of the assistor. The assistance provisions help address concerns about improper assistance in the disabled community.[32] **Section 6.03** requires anyone who assists voters, excluding election officers, to complete a form stating their name and address, their relationship to the voter, and whether they, the assistor, accepted compensation from a candidate, campaign, or political committee.[33] Individuals paid by campaigns are more likely to act improperly as assistors than individuals who have no financial stake in the election. **Section 6.04** amends the oath of assistance. Assistors now affirm that oath is made under penalty of perjury, that the voter represented to them that the voter qualifies for assistance, that the assistor did not pressure or coerce the voter, that assistor will not disclose how voter voted, and that ballot may not count if voter did not qualify for assistance.[34] Plaintiffs were not harmed by § 6.04, because the Texas Election Code already prohibited, with the threat of a Class A misdemeanor[35], an assistor from:

(1)     Providing assistance to a voter ineligible for assistance;
(2)     Preparing the voter's ballot in a way other than the way the voter directs or
         without direction from the voter;
(3)     Suggesting by word, sign, or gesture how the voter should vote; or
(4)     Providing assistance to a voter who has not requested assistance or selected
         the person to assist the voter.

Plaintiffs' arguments[36] are again based on an unfounded contention that the amended oath is confusing and will dissuade potential assistors and as a result, impede disabled individuals from voting. Expert witness Kara Ayers opined that assistors would be dissuaded; however, when asked how many assistors she believed would cease assisting voters due to the amended oath, she admitted: "not

---

[32] Trinady Joslin, *For nearly 3 million disabled Texans, voting this year is even harder*, The Texas Tribune, October 30, 2020, texastribune.org/2020/10/30/texas-voting-disability/. *See also* App. D (Jacquelyn Callanen April 20 ,2022 Dep.) at 31:25–36:9.
[33] Tex. Elec. Code § 64.0322.
[34] Tex. Elec. Code § 64.034.
[35] Texas Election Code § 64.036, https://statutes.capitol.texas.gov/Docs/EL/htm/EL.64.htm#64.assi
[36] OCA-GH Second Am. Compl. ¶¶ 149–161.

many."[37] Perhaps revealing Plaintiffs' underlying motive, Plaintiffs' witness Toby Cole, after incorrectly asserting the amended oath would disallow assistors from providing voters with their notes, asserted, "The entire idea of having to take an oath under the penalty of perjury for anything is harmful."[38] There is no genuine dispute whether §§ 6.03 and 6.04 have resulted in discrimination against disabled Texas voters.

**Section 6.05** states a person who assists a voter in preparing a mail ballot must note on the carrier envelope their relationship to the voter and whether they received compensation or other benefit from candidate, campaign, or political committee. As noted above, this is to prevent untoward behavior by interested parties. **Section 6.06** states a person commits offense if the person compensates or offers to compensate someone for assisting a voter or solicits, receives, or accepts compensation for assisting voter, with exemptions for attendants or caregiver previously known to voter. Plaintiffs will have the capacity to continue making the same level of commitment to election related activities that they have made prior to § 6.05. They are therefore unharmed by it. Plaintiffs' objections to these provisions are based in fictional scenarios, lacking any data or evidence.[39] There is therefore no genuine dispute whether § 6.05 has resulted in discrimination against disabled Texas voters.

**Section 6.07** implements the assistor protections in § 6.06. Section 6.07 mandates a space on carrier envelopes to indicate relationship of assistor to the voter.[40] This protection ensures that disabled voters can vote with assistance, while protecting the State interest in preventing the victimization of disabled voters by strangers and of untoward influence on the election by interested

---

[37] *See* App. Y (Kara Ayers May 10, 2022 Dep.) at 173:22.

[38] *See* App. JJ (Toby Cole June 28, 2022 Dep.) at 25:24-26:1.

[39] *See* App. K (Douglas Kruse May 3, 2022 Dep.) at 204:08-205:10 (acknowledging he had no data of how Section 6.06 harmed voters, and claiming voters buying each other ice cream would be in violation of the law); OCA-GH Second Am. Compl. ¶ 163 (alleging a cup of coffee purchased by the voter for a friend or family member could amount to a criminal prosecution, ignoring exceptions for previously known caretakers).

[40] Tex. Elec. Code § 86.013.

actors. There is therefore no genuine dispute whether § 6.07 has resulted in discrimination against disabled Texas voters.

**Section 7.04** bans compensated vote harvesting, defined as in-person interactions with one or more voters, in the physical presence of an official ballot, intended to deliver votes for a specific candidate or measure.[41] A ban on vote harvesting does not deny the opportunity for voters with disabilities to equally participate in voting. This ban affects all mail ballot voters equally. Reversing the ban would not benefit disabled voters in any way different than other mail ballot voters; there is nothing about disabled voters that makes vote harvesting more beneficial to them than to anyone else who relies on vote by mail. There is therefore no genuine dispute whether § 7.04 has resulted in discrimination against disabled Texas voters.

The Challenged Provisions of SB 1 do not discriminate against voters with disabilities. Instead, the Challenged Provisions protect voters with disabilities by refusing to interfere with the reasonable and adequate protections Texas law already has in place, while adding assistance protections. Because SB 1 does not exclude or deny the opportunity for voters with disabilities to participate in voting equally, deny them the benefits of public voting services, or discriminate against voters because of their disability, Defendants are entitled to judgment on the above provisions.

### B. Neither Plaintiffs nor Their Members Requested a Reasonable Accommodation.

Plaintiffs have also failed to establish a failure-to-accommodate claim against the Secretary of State. For one, the Secretary plays no part in receiving or providing accommodations to voters with qualified disabilities—that role is played by the counties and other local election officials. But more, the Plaintiffs cannot establish the elements of a failure-to-accommodate claim. Generally, in addition to having a qualified disability within the meaning of the ADA, a plaintiff must prove two more

---

[41] Tex. Elec. Code §§ 276.015-.019.

elements for a failure-to-accommodate claim: (1) "the disability and its consequential limitations were known by the covered entity;" and (2) "the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 317. Plaintiffs can prove neither of these elements.

### 1. Plaintiffs Cannot Meet the First Element of a Failure to Accommodate Claim.

Plaintiffs have failed to establish the first failure-to-accommodate element because they have not requested an accommodation from the counties by identifying their disabilities and the resulting limitations from those disabilities in direct and specific terms. *See Smith*, 956 F.3d at 317. In general, "[m]ere knowledge of the disability is not enough; the service provider must also have understood 'the limitations the plaintiff experienced *as a result* of that disability.'" *Windham v. Harris Cty.*, 875 F.3d 229, 236 (5th Cir. 2017) (cleaned up) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)). "Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances." *Id.* Thus, the Plaintiff and their members must show that they (1) "identified their disabilities as well as the resulting limitations to a public entity or its employees" and (2) "requested an accommodation in direct and specific terms." *Smith*, 956 F.3d at 317 (citing *Windham*, 875 F.3d at 237).

Here, such requests are, and have been, absent. In fact, numerous counties have testified under oath that they have not received any such requests, including (among others) Bexar County, Dallas County, El Paso County, Hidalgo County, Cameron County, and Travis County.[42] Plus, the Plaintiffs'

---

[42] *See* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Dep.) at 327:9–328:6; App. E (Bexar County Jacquelyn Callanen February 28, 2023 Dep.) at 173:12–174:7; App. G (Dallas County EA April 29, 2022 Dep.) at 158:9–159:18, 292:15–292:19; App. I (Dallas County Michael Scarpello May 4, 2022 Dep.) at 78:1–78:18; App. H (Dallas County Michael Scarpello April 13, 2023 Dep.) at 125:21–126:19; App. J (Dallas County Tacoma Phillips April 13, 2023 Dep.) at 97:3–97:8, 112:9–112:21; App. M (El Paso County Lisa Wise April 13, 2022 Dep.) at 184:4–184:13; App. N (El Paso County Lisa Wise April 15, 2023 Dep.) at 234:22–235:8; App. O (El Paso County Lisa Wise April 18, 2023 Dep.) at 72:9–74:2; App. T (Hildago County Hilda Salinas April 20, 2023 Dep.) at 31:5–31:11, 31:16–31:19, 31:25–32:17; App. F (Cameron County Remi Garza May 9, 2022 Dep.) at 236:11–236:21; App. KK (Travis County Rebecca Guerrero May 11, 2022 Dep.) at 51:16–51:18.

own witnesses have testified that several individuals requested no accommodations at all, much less in direct and specific terms.[43]

This failure to request an accommodation means that the Plaintiffs and their members can only prevail on this first element by showing that "'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Windham*, 875 F.3d at 237 (requiring plaintiff to make such a showing "[w]hen a plaintiff fails to request an accommodation in [the appropriate] manner"). But because there were no requests for accommodations, the Plaintiffs and their members have completely failed to provide any evidence that their disabilities were in any way "open, obvious, and apparent" to the local election officials. Indeed, despite the voluminous factual and legal record in this case, the Plaintiffs and their members have not even attempted to produce evidence that their disabilities were patent or obvious. Accordingly, the Plaintiffs' failure to request any type of accommodation—and their failure to establish any potential obviousness of their respective disabilities, if any—doom their ADA and Rehabilitation claims under SB 1.

### 2. Plaintiffs Cannot Meet the Second Element of a Failure to Accommodate Claim.

Even if the Plaintiffs and their members were able to establish the first element of a failure-to-accommodate claim—they are not—they cannot satisfy the second element because they have failed to prove that any accommodation they theoretically requested was "reasonable." *Smith*, 956 F.3d

---

[43] *See* App. II (The Arc of Texas Jennifer Martinez April 12, 2022 Dep.) at 63:7–63:11, 90:10–90:15, 91:23–92:23, 93:8–93:21, 94:7–15; App. B (Amatullah Contractor July 20, 2022 Dep.) at 15:9–15:17; App. BB (Nancy Crowther June 17, 2022 Dep.) at 50:16–21, 117:2–21; App. AA(Michelle Brown April 23, 2022 Dep.) at 184:21–185:3; App. W (Janet Eickmeyer June 13, 2022 Dep.) at 23:4–23:10; App. X (Julie Espinoza June 9, 2022 Dep.) at 50:7–50:12, 93:23–94:2; App. CC (OCA-GH Deborah Chen March 28, 2022 Dep.) at 231:3–231:17; App. U (Hidalgo County Yvonne Ramon April 21, 2022 Dep.) at 83:9–83:15; App. V (Hidalgo County Yvonne Ramon May 10, 2022 Dep.) at 236:18–236:21; App. FF (REVUP Bob Kafka April 7, 2022 Dep.) at 107:15–109:5; App. HH (Teri Saltzman July 15, 2022 Dep.) at 24:22–25:3; App. GG (Sadia Tirmizi May 8, 2023 Dep.) at 51:5–51:11.

at 317. Generally, an accommodation is "reasonable" if it does not (1) "impose undue financial or administrative burdens," or (2) "fundamentally alter the nature of the service, program, or activity." *Cadena*, 946 F.3d at 724.[44] But here, any analysis of whether an accommodation was "reasonable" would be inappropriate because the lack of a request means the lack of an accommodation. And the lack of any accommodation for this Court to analyze means that any determination of "reasonableness" would be an exercise in pure conjecture and extrapolation, consequently violating the ADA's requirement for an individualized assessment of the disability *and* proposed accommodation. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (disability claims, in particular, must be determined in a "case-by-case manner.").

Likewise, counties take their responsibility to accommodate the needs of disabled voters seriously, and they have been responsive to requested accommodations by unidentified individuals or groups.[45] And if the accommodations were not explicitly met, it was because such accommodations were too expensive or too difficult to be "reasonable." And if the accommodations were not explicitly met, it was because such accommodations were too expensive or too difficult to be "reasonable." *See Cadena*, 946 F.3d at 724. In Harris County, for example, there were some voters who were unable to enter the elections office to cure their ballot, so staff "would take a clipboard and go out to them" and allow voters to complete the process from their car.[46] According to Harris County's corporate representative, this was the only request for accommodation that the office received related to the

---

[44] In this case, the Plaintiffs' proposed remedy under its ADA and Rehabilitation Act claims would fundamentally alter the nature of the service, program, or activity. *See infra* at 25–26.

[45] *See* App. C (Bexar County Jacquelyn Callanen April 4, 2022 Depo) at 204:18–205:20; App. D (Bexar County Jacquelyn Callanen April 20, 2022 Dep.) at 304:22–305:16; App. E (Bexar County Jacquelyn Callanen February 28, 2023 Dep.) at 78:18–79:3, 81:17–84:2; App. I (Dallas County Michael Scarpello May 4, 2022 Dep.) at 78:11–78:14; App. M (El Paso County Lisa Wise April 13, 2022 Dep.) at 184:4–184:13; App. N (El Paso County Lisa Wise April 15, 2023 Dep.) at 233:4–235:8; App. P (Harris County Isabel Longoria April 20, 2022 Dep.) at 25:9–26:21, 36:9–36:14, 37:14–38:1; App. Q (Harris County Jennifer Colvin March 21, 2023 Dep.) at 45:19–46:24; App. R (Harris County Lauren Smith March 21, 2023 Dep.) at 21:24–22:23; App. X (Julie Espinoza June 9, 2022 Dep.) at 93:23–94:2: App. F (Cameron County Remi Garza May 9, 2022 Depo) at 236:11–236:21; App. KK (Travis County Rebecca Guerrero May 11, 2022 Dep.) at 52:4–52:14; App. V (Yvonne Ramon May 10, 2022 Dep.) at 236:18–236:21; App. HH (Teri Saltzman July 15, 2022 Dep.) at 24:22–25:3.

[46] App. Q (Harris County Jennifer Colvin March 21, 2023 Dep.) at 45:7–46:24.

numerical identification requirement in the November 2022 general election, and they were able to meet it.

Nonetheless, Texas's voters have many meaningful opportunities and methods to vote in Texas, which SB 1 does not change. In fact, section 1.08 of SB 1 specifically prohibits election officials from interpreting the Texas Election Code "to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022. As described in detail above, the Challenged Provisions of SB 1 do not conflict with this blanket ban against voter discrimination on the basis of disability. *Supra* at 12–19.

SB 1 also does not interfere with the various options available to every Texas voter with a qualified disability. These options include, among other things, the ability to vote:

- in a polling place during early voting, *see id.* §§ 41.001, 82.005;
- at the curbside during early voting, *see id.* § 64.009;
- in a polling place on Election Day, *see id.* § 81.001;
- at the curbside on Election Day, *see id.* § 64.009; or
- by mail, *id.* at § 82.002(a).

Texas law also has several protections in place for those disabled voters who choose to vote in person. For example, at least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *See id.* § 61.012. Likewise, polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. And to the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting. *Id.* § 64.009. This allows voters to vote without ever leaving their cars. *Id.* § 64.009.

II.     **Instead of Seeking Reasonable Accommodations, Plaintiffs Propose to Enjoin Each Challenged Provision for All Voters.**

Texas has held four state-wide elections since SB 1 took effect—this is in addition to a number of local and special elections scheduled in that time. Yet, as the record shows, neither Plaintiffs nor the members that Plaintiffs disclosed during discovery requested an accommodation from County Defendants or the Secretary with respect to the changes ushered in by the new law. *See supra* at 17–18. Instead, Plaintiffs went for broke, asking this Court to enjoin, and declare illegal, thirteen separate provisions of SB 1 for every Texas voter, regardless of whether that voter had a qualifying disability, difficulty voting, or a relationship to Plaintiffs.

The record establishes that Plaintiffs are not entitled to the relief they seek. First, Plaintiffs have failed to establish that the requested injunction of the Challenged Provisions "is reasonable in the general sense, that is, reasonable in the run of cases;" nor could they, given their requested relief's scope. *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). Second, even if Plaintiffs met their burden of identifying a reasonable modification, a complete injunction constitutes a fundamental alteration of state policy that undermines the Legislature's purpose in enacting the Challenged Provisions. Third, Defendants, not Plaintiffs, get to choose which reasonable accommodation is employed. Plaintiffs cannot circumvent this limitation by sprinting to the courthouse after a new law is enacted.

A.  **Plaintiffs Had the Burden of Showing That Their Requested Modification is Reasonable; They Failed to Meet It.**

The ADA and Rehabilitation Act do not give Plaintiffs the power to rewrite and decommission laws and policies that they disfavor. The statutes only require that public entities make "reasonable modifications" that would not fundamentally alter the nature of the service or activity at issue or impose undue fiscal or administrative hardship. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *Cadena*, 946 F.3d at 724. For this reason, courts tend to employ the *Riel* framework for allocating burdens of proof

in ADA cases, where Plaintiffs have the obligation to: (1) propose a reasonable modification, and (2) introduce evidence that the modification is reasonable. *Johnson*, 116 F.3d at 1059 (noting that "plaintiff bears the ultimate burden of proof on the issue"). The burden of proof then shifts if the requisites are met, and Defendants must either make the modification or establish that the request would constitute a fundamental alteration or impose an undue burden. *Id.*

On its face, Plaintiffs' requested relief is unreasonable. For Plaintiffs to meet their burden, they must show that the modification requested with the Court is reasonable "ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002); *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 471 (5th Cir. 2023) (applying standard to Title II). That is impossible here given the breadth of the relief sought. Plaintiffs propose to enjoin thirteen separate provisions of SB 1 in their entirety. The injunction would apply to all Texas voters, with no distinction being made between voters with legitimate ADA and § 504 claims and voters who lack qualifying disabilities, were not denied access to voting because of those disabilities, or could have had their exclusion cured with a more modest adjustment to Defendants' practices, policies, and procedures. In short, the proposed modification far exceeds any alleged harm caused by the Challenged Provisions and is unreasonable as a matter of law.

Because there is no close nexus between the complete non-enforcement of the Challenged Provisions and the denial of access alleged by Plaintiffs, Plaintiffs cannot prove that their proposed modification would be reasonable in the run of cases. Just the opposite. Most of the so-called beneficiaries of the modification would not, in ordinary circumstances, qualify for an exception under the ADA or § 504. The State's interests would prevail.

To combat this reality, Plaintiffs have introduced evidence about the prevalence of disabilities in the Texas population, but the data do not support Plaintiffs' proposed, sweeping remedy. For example, in his February 28, 2022, report, Plaintiffs' expert Dr. Douglas L. Kruse reiterated statistics from the American Community Survey (ACS), which estimated that 15.6 percent of voting-eligible

Texans in 2020 had some form of disability.[47] App. L (Pls' Expert Dr. Douglas L. Kruse February 28, 2022 Report) at 11. However, even if one were to assume that the Challenged Provisions excluded or discriminated against the entire subset, that still would implicate only a minority of prospective voters and would not support the requested modification.

What's more, Dr. Kruse's number is misleading. First, the U.S. Census Bureau did not adopt the ADA's definition of disability when it conducted the ACS; its estimate therefore encompassed respondents whose impairment did not "substantially limit[] one or more major life activities." 42 U.S.C. § 12102(1)(A); App. K (Douglas Kruse May 3, 2022 Dep.) at 74:17-76:9. Second, Dr. Kruse does not identify the extent that respondents actually experienced an impediment that denied them meaningful access to voting and was attributable to the Challenged Provisions. The true number of voters with disabilities affected by the Challenged Provisions is thus significantly less than the percentage of voters in Texas with disabilities. Third, to the extent that voters experienced an impediment, Dr. Kruse did not assess whether the voters' exclusion could have been solved with a different accommodation that fell short of enjoining each provision.[48]

The actual number of voters with disabilities affected by the Challenged Provisions is in fact quite small, especially when compared to the total number of Texans who participate each election. The United States' expert who analyzed the TEAMS database determined that there were over 8.1 million ballots cast in the November 2022 general election: 7,775,713 in person and 359,526 by mail.

---

[47] Dr. Kruse also cited statistics from the Survey of Income and Program Participation SSA Supplement (SIPP), which estimated that 30.5 percent of voting-age people in Texas have disabilities. State Defendants referenced ACS data in the body of its arguments because the survey measured eligible voters rather than the voting-age population and utilized a more expansive set of questions that was likely to identify impairments that did not qualify under the ADA. The same limitations State Defendants identified with respect to the ACS also apply to the SIPP. [47]

[48] Dr. Kruse notes that "the importance of variation across different types of disability is shown in the voting figures" (App. L (Pls.' Expert, Dr. Douglas L. Kruse February 28, 2022 Report) at 11), and that because "each person may be unique in the particular configuration" determining "[f]or a particular individual, a particular reasonable accommodation" requires a highly individualized, fact specific analysis (App. K (Pls' Expert Douglas Kruse May 3, 2022 Dep.) at 117:23-119:7). *See also* App. Q (Harris County Jennifer Colvin March 21, 2023 Dep.) at 45:7–46, 82 (granting individualized accommodation).

Appx. _____ (United States Expert, Dr. Eitan Hersh, February 10, 2023 Report) at 7. At the same time, according to their corporate representatives, **only a single County Defendant received a request for an accommodation regarding one of the Challenged Provisions, which it granted.**[49] The County Defendants, likewise, received no reports of voters with disabilities being unable to find transportation to the polls, obtain assistance, or cast their ballot in person on account of the Challenged Provisions.[50] The record simply does not support the reasonableness of Plaintiffs' requested modification in the run of cases. Accordingly, summary judgment should be granted in favor of State Defendants.

### B. Enjoining the Challenged Provisions in Their Entirety Represents a Fundamental Alteration.

Plaintiffs' proposed modification is unreasonable as a matter of law. However, even if this Court determines that Plaintiffs met their burden on this point, State Defendants are still entitled to summary judgment because Plaintiff's proposed modification fundamentally alters Texas policy. Indeed, it bears repeating that unlike the plaintiffs in *Johnson v. Callanen*, who sought a limited exception to state policy for certain voters, Plaintiffs in this case seek to fully enjoin thirteen separate provisions of the Texas Election Code against all Texas voters. 608 F. Supp. 3d 476, 481 (W.D. Tex. 2022). This "undermines the basic purpose of the law, no matter what that purpose is." *League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042, 1158 (N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom. League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023). As such, it constitutes a fundamental alteration that defeats Plaintiffs' claims.

---

[49] App. Q (Harris County Jennifer Colvin March 21, 2023 Dep.) at 45:7–46:24.

[50] App. E (Bexar County Jacquelyn Callanen February 28, 2023 Dep.) at 103:19–104:1; App. H (Dallas County Michael Scarpello April 13, 2023 Depo) at 125:17–127:14; App. O (El Paso County Lisa Wise April 18, 2023 Dep.) at 72:9–74:2; App. T (Hidalgo County Hilda Salinas April 20, 2023 Dep.) at 31:16–32:17.

The Northern District Court of Florida's ruling in *League of Women Voters of Florida v. Lee* is instructive. There, the plaintiffs challenged the state's new election integrity law on multiple claims, including the ADA. *See Lee*, 595 F. Supp. 3d at 1060, 1152–53. Among other things, the plaintiffs sought to enjoin the requirement that voters renew their vote-by-mail application requests each general election cycle, rather than every two general election cycles, which was the previous rule. *Id.* at 1156–58. The court denied relief on this claim. *See id.* While the court was "moved" by the testimony of several voters who struggled with the requirement, it did not view a complete injunction against all voters as "a modification which this Court is entitled to adopt." *Id.* at 1158. The court explained that "[t]he expansive scope of the proposed modification, both in applying to all voters and in seeking to enjoin the entire provision, has the effect of fundamentally altering the law." *Id.* It necessarily eliminated an "essential aspect" of the challenged provision. *Id.*

The same logic applies here. Like in *Lee*, where the plaintiffs sought an all-encompassing injunction as part of their ADA claims, Plaintiffs in this case seek a complete injunction against thirteen provisions in their entirety, against every Texas voter. In fact, just like *Lee*, Plaintiffs here do not seek to limit any proposed injunction or modification to a subset of disabled voters or even a portion of one of the thirteen provisions challenged under the ADA. Nor do Plaintiffs seek to expand an existing exception, as in *Johnson v. Callanen*, where the county already provided electronic delivery systems to military voters. No. SA-22-CV-00409-XR, 2022 WL 14069015, at *2 (W.D. Tex. Oct. 21, 2022). Instead, they seek an injunction against entire swaths of SB 1's provisions—without limits, without restraints. And like *Lee*, such a challenge should not stand.

### C. Neither the ADA nor the Rehabilitation Act Demand that Defendants Acquiesce to Plaintiffs' Choice of Accommodations.

The fact that Plaintiffs sought relief from the court first—before and in lieu of asking Defendants for an accommodation—does not expand Defendants' obligations under the ADA or

§ 504. Although the ADA and Rehabilitation Act impose an affirmative obligation to make reasonable modifications when necessary to avoid discrimination on the basis of disability, neither law mandates that public entities adopt a particular technology or accommodation, so long as individuals with qualifying disabilities have "meaningful access" to government programs. *E.T. v. Paxton*, 41 F.4th 709, 717 (5th Cir. 2022); *see Lane*, 541 U.S. at 532 (noting that "the reasonable modification requirement can be satisfied in a number of ways"). To the contrary, "[i]t's well settled that *defendants*—not plaintiffs—get to choose between reasonable accommodation(s), and plaintiffs' preferences between reasonable accommodation(s) are irrelevant" to the calculus. *E.T.,* 41 F.4th at 517 (emphasis in original).

Despite these controlling limitations, Plaintiffs would have this Court impose an extreme modification—the non-enforcement of Texas election law—without ever giving the Secretary or—more properly—County Defendants the opportunity to offer voters an alternative (and more tailored) accommodation. This request should be denied, as neither the ADA nor § 504 demand that Defendants acquiesce to Plaintiffs' choice of accommodations, *see Cadena*, 946 F.3d at 725, regardless of whether that request was first directed at the Court. If anything, Plaintiff' failure to engage in good faith with the Secretary and County Defendants before commencing suit should preclude relief. *See Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 163 (5th Cir. 1996) (holding that it is the initial request for an accommodation which triggers obligation); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (noting that "an employer cannot be found to have violated [the law] when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants Motion for Summary Judgment and dismiss all claims brought pursuant to the ADA and § 504 of the Rehabilitation Act.

Date: May 26, 2023                          Respectfully submitted.

KEN PAXTON                                  RYAN G. KERCHER
Attorney General of Texas                   Deputy Chief, General Litigation Division
                                            Tex. State Bar No. 24060998
BRENT WEBSTER
First Assistant Attorney General            /s/ Kathleen T. Hunker
                                            KATHLEEN T. HUNKER
GRANT DORFMAN                               Special Counsel
Deputy First Assistant Attorney General     Tex. State Bar No. 24118415

SHAWN E. COWLES                             WILLIAM D. WASSDORF
Deputy Attorney General for Civil           Assistant Attorney General
Litigation                                  Tex. State Bar No. 24103022

CHRISTOPHER D. HILTON                       AMY SNOW HILTON
Chief, General Litigation Division          Assistant Attorney General
Tex. State Bar No. 24087727                 Tex. State Bar No. 24097834

                                            OFFICE OF THE ATTORNEY GENERAL
                                            P.O. Box 12548 (MC-009)
                                            Austin, Texas 78711-2548
                                            Tel.: (512) 463-2120
                                            Fax: (512) 320-0667
                                            kathleen.hunker@oag.texas.gov
                                            christopher.hilton@oag.texas.gov
                                            ryan.kercher@oag.texas.gov
                                            will.wassdorf@oag.texas.gov
                                            amy.hilton@oag.texas.gov


## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 26, 2023, and that all counsel of record were served by CM/ECF.

                                            /s/ KATHLEEN T. HUNKER
                                            KATHLEEN T. HUNKER