**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | |
| *Plaintiffs*, | CIVIL ACTION NO. |
| v. | 5:21-cv-844-XR |
| STATE OF TEXAS, *et al.*, | [Consolidated Action:  Lead Case] |
| *Defendants*. | |
| HARRIS COUNTY REPUBLICAN PARTY, *et al.*, | |
| *Intervenor-Defendants*. | |

**LUPE PLAINTIFFS' OPPOSED MOTION TO COMPEL PRODUCTION OF**
**DOCUMENTS FROM DEFENDANTS JANE NELSON AND JOHN SCOTT**

Plaintiffs La Unión del Pueblo Entero, *et al.* ("LUPE Plaintiffs")[1] file this motion to compel

and request that the Court order that Defendants Jane Nelson and John Scott produce documents

withheld based on improper assertions of the attorney-client privilege, deliberative process

privilege, and investigative privilege.  Based on sweeping claims of privilege, Jane Nelson

("SOS") and John Scott ("OAG")[2] withheld or redacted 927 documents that largely contain factual

---

[1] LUPE Plaintiffs are La Unión del Pueblo Entero, Friendship-West Baptist Church, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education , Jolt Action, William C. Velasquez Institute , FIEL Houston Inc., and James Lewin.

[2] For ease of reference, throughout the brief, LUPE Plaintiffs refer to the Defendants by the respective offices over which they are the chief official:  the Office of the Secretary of State (Nelson) and the Office of the Attorney General (Scott).

information regarding election administration, or are reports that reflect neither agency decisionmaking protected by the deliberative process privilege nor legal advice protected by the attorney-client privilege.  And to the extent that the deliberative process and investigative privileges do apply, those qualified privileges must yield here to the needs of discovery, particularly in light of the relevance of the evidence pertaining to the discriminatory effect of SB1's implementation and the unavailability of the evidence elsewhere.

During the meet and confer process, LUPE Plaintiffs identified and requested a narrowed subset of those approximately 927 documents that it sought, but the parties have been unable to resolve their disagreements over those privileges through the meet-and-confer process.  LUPE Plaintiffs therefore respectfully seek relief from the Court.

## I.    BACKGROUND

This case involves a challenge by LUPE Plaintiffs to SB1, a 2021 law that makes significant changes to how Texas voters cast ballots in elections.

On February 15, 2023, LUPE Plaintiffs propounded their second set of document requests to SOS and OAG.  *See* Exs. A (requests to SOS) and B (requests to OAG).  Following several meet-and-confer exchanges regarding search terms for those document requests, SOS and OAG produced documents they determined were responsive and not privileged.  In connection with those productions, SOS served a privilege log on May 12, 2023, Ex. C, and OAG served a privilege log on May 19, 2023, Ex. D.[3]

On June 5, 2023, LUPE Plaintiffs emailed counsel for OAG and SOS to schedule a meet and confer regarding the privilege assertions in the respective privilege logs.  On June 9, 2023,

_____

[3] Under the parties' Stipulated ESI Agreement, LUPE Plaintiffs' original deadline to file a motion to compel regarding the SOS privilege log was June 12, 2023.  Dkt. 251.  The Court granted the parties' joint motion to extend that deadline to June 20, 2023, the same deadline as any motion to compel regarding the OAG privilege log.  *See* Dkt. 625.

LUPE Plaintiffs emailed a letter with accompanying exhibits that identified documents from the privilege logs that were the subject of what LUPE Plaintiffs believed to be improper privilege assertions.  Exs. E (letter) and F (compilation of exhibits).  In that letter, LUPE Plaintiffs also specified a subset of documents for which they sought additional information to evaluate whether they would challenge the privilege assertions by SOS and OAG.

On June 12, 2023, the parties held a meet and confer.  During that meet and confer, counsel for SOS and OAG indicated that they would provide additional information regarding some of the documents over which the investigative privilege was asserted.  On June 13, 2023, counsel for LUPE Plaintiffs emailed counsel for SOS and OAG to clarify, among other things, which of the documents withheld based on the investigative privilege remained the subject of active ongoing criminal investigations.  On June 16, 2023, counsel for LUPE Plaintiffs emailed counsel for SOS and OAG to specify which of the documents over which the investigative privilege was *not* asserted they still sought following the meet and confer.

On June 20, 2023, counsel for LUPE Plaintiffs emailed counsel for SOS and OAG that, upon further review, all assertions of the investigative privilege identified in LUPE Plaintiffs' June 9, 2023 letter were improper.  In that same email, LUPE Plaintiffs inquired whether, in light of the meet and confer exchanges to that point, counsel for SOS and OAG would produce any of the documents identified in LUPE Plaintiffs' June 9, 2023 letter.[4]

Since the June 12, 2023 meet and confer, counsel for SOS and OAG have not sent any emails regarding the privilege logs at issue, including to provide additional information after the

---

[4] In an effort to obtain additional time to explore whether any disagreements could be narrowed, counsel for LUPE Plaintiffs also sought whether, in the alternative, counsel for SOS and OAG would join a motion requesting that the Court extend the deadline for the instant motion to compel to June 23, 2023.

meet and confer or in response to LUPE Plaintiffs' subsequent inquiries.  Unable to resolve the issues without Court intervention, LUPE Plaintiffs now respectfully file the instant motion.

## II.    LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the other party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 34 permits parties to serve upon each other "a request within the scope of Rule 26(b)" to produce certain items "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Rule 26 requires a party that asserts a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  "It is well settled that the party asserting the privilege has the burden of establishing its applicability."  *Perez v. Perry*, No. SA-11-cv-360-OLG-JES-XR, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treas.*, 768 F.2d 719, 721 (5th Cir. 1985)).  Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege.  *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that

conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

### III.    ARGUMENT

### A.  Improper Invocations of the Attorney-Client Privilege.[5]

SOS incorrectly withholds several documents based on a misapplication of the attorney-client privilege.  "A statement enjoys attorney-client privilege if it was made to a lawyer, in confidence, and primarily for the purpose of seeking legal advice or services."  *League of United Latin Am. Citizens v. Abbott ("LULAC IV")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3656395, at *3 (W.D. Tex. Aug. 23, 2022) (citing *BDO USA*, 876 F.3d at 695).  "The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications."  *La Union Del Pueblo Entero ("LUPE") v. Abbott*, No. 3:21-cv-00844-XR, 2022 WL 1667687, at *7 (quoting *Hodges*, 768 F.2d at 720-21), *rev'd on other grounds*, 68 F.4th 228 (5th Cir. 2023).  Of note, "[w]hether a communication is privileged is fact-specific and depends on the nature of the statement and the context in which it was made."  *LULAC IV*, 2022 WL 3656395, at *2.  "The burden of proof is on the individual asserting the privilege to demonstrate an attorney-client relationship."  *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978); *see also League of United Latin Am. Citizens v. Abbott ("LULAC III")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3353409, at *4 (W.D. Tex. Aug. 12, 2022).

"Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to appl[y] only where necessary to achieve its purpose."  *BDO USA*, 876 F.3d at 695 (quotation omitted).  To that end, "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to

---

[5] LUPE Plaintiffs refer to only SOS in this portion of their brief because they seek no documents over which OAG asserted the attorney-client privilege in its May 19, 2023 privilege log.  *See* Exs G, H, and I.

carry out the proponent's burden of establishing attorney-client privilege," and that documents sent from one staff member to another are not privileged "merely because a copy is also sent to counsel." *Id.* at 696.

SOS has invoked the attorney-client privilege over documents that (1) reflect communications not sought *primarily* for the purpose of seeking legal advice or services (Exhibit G), (2) contain underlying facts not subject to the privilege (Exhibit H), or (3) were never shared with a client (Exhibit I). Under well-settled law in this Circuit, these documents must be produced.

1. *SOS Must Produce Communications That Were Not Sought For the Primary Purpose Of Seeking Legal Advice.*

SOS improperly asserts the attorney-client privilege over documents that were not created or sought for the primary purpose of legal advice. Ex. G. Attorney-client "[p]rivilege claims must be detailed," *LULAC III*, 2022 WL 3353409, at *4, and "[a] communication must be for the *primary* purpose of *legal* advice for attorney-client privilege to attach," *id.* (citing *BDO USA*, 876 F.3d at 695); *see also LUPE*, 2022 WL 1667687, at *7 (noting that communications that "do not concern legal advice" are not privileged). To that end, "[o]ther communications, including 'advice on political, strategic, or policy issues,' are 'not . . . shielded from disclosure.'" *LULAC IV*, 2022 WL 3656395, at *3 (quoting *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)); *see also LULAC III*, 2022 WL 3353409, at *4. "To draw an analogy to the business context, a manger with a law degree does not get to shield her communications with the CEO simply because any business decision, like any [agency] decision, can have legal consequences." *Perez v. Perry*, No. 5:11-cv-360-OLG-JES-XR, 2014 WL 3359324, at *1 (W.D. Tex. July 9, 2014). Thus, when legislators seek political, strategic, or policy advice, those communications do not automatically become subject to the attorney-client privilege simply because an attorney comments on the political, strategic, or policy ramifications of the agency's action. *See Perez v. Perry*, No. 5:11-cv-360-

6

OLG-JES-XR, 2014 WL 3359324, at *1 (W.D. Tex. July 9, 2014); *see also LULAC III*, 2022 WL 3353409, at *4; *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005).   After all, "documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer."  *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997).

SOS has failed to show that the documents listed in Exhibit G were created "for the *primary* purpose of *legal* advice." *LULAC III*, 2022 WL 3353409, at *4.  As an initial matter, those entries fail to indicate whether the documents were sought to *any* extent for the purpose of legal advice, and thus SOS has failed to meet its burden of establishing that the privilege applies.  *See BDO USA*, 876 F.3d at 695-96.  In any event, SOS has not shown that the documents were created for the *primary* purpose of seeking legal advice.  *Id.* at 695.  These documents include communications regarding election procedures, agency reports, and recommendations to the Legislature—*i.e.*, documents sought or created for the primary purpose of policy, political, or strategic advice by the agency.  *See* Ex. G.  Other documents reflect "solicited information about incidents of voting misconduct," which also "do not concern legal advice."  *See LUPE*, 2022 WL 1667687, at *7.  As such, the attorney-client privilege does not shield the documents listed in Exhibit G, and those documents must be produced.

Further, to the extent that any document contains a mixed discussion of legal and non-legal advice (*e.g.*, business, political, strategic, or policy), "courts should consider the 'context . . . key,' ultimately seeking to glean the 'manifest purpose' of the communication."  *See BDO USA*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)).  In the event that the State's failure to establish privilege is not alone sufficient to warrant disclosure, *in camera* review may be necessary to distinguish between documents providing only legal advice and those that concern policy, political, strategic, or technical matters.  Upon any such review, to the extent

7

that any document has portions or annotations implicating bona fide legal advice, LUPE Plaintiffs respectfully request that the Court direct SOS to produce a redacted version of any such document.

### 2. *SOS May Not Invoke the Attorney-Client Privilege Over Underlying Factual or Otherwise Non-Legal Information.*

In several instances, SOS improperly asserts the attorney-client privilege over underlying factual or otherwise non-legal information contained in documents.  Ex. H.  But as the Court previously emphasized, "[f]acts within the client's knowledge are not protected by the attorney-client privilege, 'even if the client learned those facts through communications with counsel.'" *LUPE*, 2022 WL 1667687, at *7; *see also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (stating that the "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts").  In that vein, and as other courts in this Circuit have concluded, just because "data . . . were also used by counsel . . . does not render them privileged."  *League of United Latin Am. Citizens v. Abbott ("LULAC I")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 2921793, at *7 (W.D. Tex. July 25, 2022) (cleaned up).

Further, "pre-existing documents—whether prepared by a third-party or even by the client, so long as the client was not compelled to write it (aka, a testimonial communication)—are underlying facts that are not protected by the attorney-client privilege." *Petteway v. Galveston Cnty.*, No. 3:22-cv-00057-JVB-AME, 2023 WL 3452065, at *3 (S.D. Tex. May 15, 2023) (quotation omitted) (citing *Fisher v. United States*, 425 U.S. 391, 403–04 (1976); then citing, *Robinson*, 121 F.3d at 975).  Of course, "[p]re-existing documents . . . are but a small subset of 'underlying facts.'"  *Id.*

For example, and as this Court has previously noted, "communications concern[ing] solicited information about incidents of voting misconduct" do not concern legal advice.  *LUPE*, 2022 WL 1667687, at *7 (quotation omitted).  In addition, discovery that "seeks statistical

information" does not implicate the attorney-client privilege. *League of United Latin Am. Citizens v. Abbott ("LULAC V")*, 342 F.R.D. 227, 235 (W.D. Tex. 2022) (noting, for example, that questions that seek information about a "statistical conclusion—i.e. voting patterns by race" do not seek privileged information); *see also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (ordering production of "facts, data, and maps" over assertions of attorney-client privilege in redistricting lawsuit).   Analyses and reports containing fact-based information are likewise not privileged, even if those "were fashioned exclusively within the attorney-client relationship."   *See Petteway*, 2023 WL 3452065, at *4 (holding that spreadsheet with breakdown of population in county prepared at lawyers' request "in order for them to understand the lay of the land and conduct an initial analysis of the legal considerations at play in the 2021 redistricting process" still constituted "underlying facts that are classically outside the [attorney-client] privilege[]"); *see also Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, No. 19-13134, 2020 WL 9172077, at *5 (E.D. La. June 25,  2020) (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)) ("If what is sought is not legal advice but only [data analysis] . . . or if the advice sought is the [statistician's] rather than the lawyer's, no privilege exists.").   And in the legislative context, courts in this Circuit have concluded that a legislator can provide discovery about "the legislative process without revealing the substantive communications he exchanged with attorneys."   *LULAC V*, 342 F.R.D. at 234; *see id.* at 236 (concluding that "questions [that] asked 'how' Chairman Hunter came to a particular conclusion" do not implicate attorney-client privilege).

Exhibit H lists documents that contain underlying factual or otherwise non-legal information that fall outside the scope of the attorney-client privilege.  That factual information includes information about alleged voting misconduct, election procedures, details about the

implementation of SB1, election results, and reports authored by the agency—all information that is not privileged. Those documents therefore must be produced.[6]

### 3. SOS Cannot Assert the Attorney-Client Privilege Over Documents Never Shared with a Client.

Documents shared among only SOS attorneys are not subject to the attorney-client privilege. Ex. I. A document must have been shared between a lawyer (or her subordinate) and a client in order to receive the protection of the attorney-client privilege. *See BDO USA*, 876 F.3d at 695; *see also LUPE*, 2022 WL 1667687, at *7. That rule applies equally to governmental agencies invoking the privilege. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011) ("Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications *between* Government officials and Government attorneys." (emphasis added)). As such, "the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures," *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), or keeps "hidden in an attorney's file," *id.* at 511. *See also Hodges*, 768 F.2d at 721 ("Documents and materials developed by a lawyer for use in or in anticipation of litigation are not protected by the attorney-client privilege."). Accordingly, documents shared among only SOS attorneys—and not shared with other SOS employees—cannot be subject to the attorney-client privilege.

Exhibit I reflects entries that have only been shared among SOS attorneys. Because SOS attorneys failed to share these with a client, the attorney-client privilege does not apply to those documents.

---

[6] To the extent that any documents contain both bona fide legal advice and underlying factual information, LUPE Plaintiffs respectfully request that the Court order the production of those documents with any legal advice redacted.

### B.  Improper Invocations of the Deliberative Process Privilege.[7]

The deliberative process privilege is an executive privilege.  *League of United Latin Am. Citizens v. Abbott ("LULAC II")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *2 (W.D. Tex. Aug. 10, 2022).  "For the deliberative process privilege to apply, the documents must be both 'deliberative' and 'predecisional.'"  *Id.* (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).  "The privilege, however, is qualified; not absolute."  *Doe v. City of San Antonio*, No. SA-14-cv-102-XR, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014).  That means that the deliberative-process privilege "can be overcome 'by a sufficient showing of need'" for materials and accurate fact-finding.  *Harding v. Cnty. of Dallas*, No. 3:15-cv-0131-SAF, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (collecting cases)); *see also Favors v. Cuomo*, 285 F.R.D. 187, 210 n.22 (E.D.N.Y. 2012) (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 98 (S.D.N.Y. 2003))

Because SOS has not properly invoked the deliberative process privilege, withholds documents that reflect purely factual information exempt from the privilege, and asserts the privilege over documents where the privilege should yield, the documents in Exhibit J must be produced.

#### 1.  Trial Counsel Cannot Invoke the Deliberative Process Privilege on Behalf of SOS.

As an initial matter, counsel from the Office of the Attorney General cannot, without more, invoke the deliberative process privilege on behalf of a state agency.  Ex. J.  To be protected by deliberative-process privilege, a document must be "part of a process by which governmental decisions and policies are formulated."  *In re Sealed Case*, 121 F.3d at 737 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1996)).  To demonstrate that these

---

[7] LUPE Plaintiffs refer to only SOS in this portion of their brief because OAG's May 19, 2023 privilege log lists no assertions of the deliberative process privilege.  *See* Ex. D.

requirements are met, parties claiming deliberative-process privilege generally provide, in addition to a privilege log, "declarations from agency officials explaining 'what the documents are and how they relate to the [agency] decision.'" *Ascom Hasler Mailing Sys., Inc. v. USPS*, 267 F.R.D. 1, 4 (D.D.C. 2010) (quoting *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 309 (D.D.C. 2009)); *see also Nevada Partners Fund, LLC v. United States,* No. 3:06-cv-379-HTW-MTP, 2008 WL 2484198, at *5 (S.D. Miss. May 12, 2008) (describing declarations of IRS officials submitted in support of deliberative-process privilege claims).  Thus, as other courts in this Circuit have recently noted, "[t]rial counsel cannot invoke the [deliberative process] privilege on [an executive agency's] behalf."  *LULAC II*, 2022 WL 3233406, at *3 (collecting cases) (concluding that counsel from the Office of the Attorney General cannot invoke the deliberative process privilege on behalf of the Office of the Governor).

Here, attorneys from the Office of the Attorney General—not SOS officials—invoked the deliberative process privilege.  Although LUPE Plaintiffs raised this deficiency both in their June 9, 2023 letter and their June 12, 2023 meet and confer, *see* Ex. E, no SOS official provided a declaration regarding the documents listed in Exhibit J.  "Because only trial counsel has invoked the deliberative process privilege" over those documents, SOS "has not validly asserted the privilege" and "must produce documents withheld on" that basis.  *LULAC II*, 2022 WL 3233406, at *3.

> 2. *The Deliberative Process Privilege Does Not Apply to Underlying Factual Information.*

"The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is *purely* factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *In re Sealed Case*, 121 F.3d

at 737 (emphasis added) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-54 (1975));

*see also Stokes v. Brennan*, 476 F.2d 699, 703 (5th Cir. 1973) ("Factual information may be

protected only if it is inextricably intertwined with policy-making processes[.]"); *Harding*, 2016

WL 7426127, at *11.  To the extent that documents contain some privileged information and some

purely factual information, courts have routinely ordered that the responding party produce

redacted versions of the challenged documents.  *See, e.g.*, *S.E.C. v. Cuban*, No. 3:08-cv-2050-SAF,

2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013); *Principe v. Crossland Sav., FSB*, 149 F.R.D.

444, 448 (E.D.N.Y. 1993); *see also BidPrime, LLC v. SmartProcure, Inc.*, 1:18-cv-478-RP, 2018

WL 6588574 (W.D. Tex. Nov. 13, 2018).

Courts have routinely emphasized that factual information may be withheld under only

"narrow circumstances" and "limited exception[s]," *Trentadue v. Integrity Comm.*, 501 F.3d 1215,

1228, 1229 (10th Cir. 2007), such that the privilege applies to factual information only when

"unveiling . . . factual materials would be tantamount to the publication of the *evaluation and

analysis* of the multitudinous facts" conducted by the agency," *Nat'l Wildlife Fed'n v. U.S. Forest

Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988) (emphasis added) (quotations omitted).  "As an example

of this standard applied in the . . . context of Equal Employment Opportunity Commission

('EEOC') actions, courts hold that the deliberative process privilege does not extend to facts such

as who conducted investigations and whom they interviewed, the actions taken by the EEOC

during the investigations, and communications between the EEOC and witnesses."  *S.E.C. v.

Cuban*, No. 3:08-cv-2050-SAF, 2013 WL 1091233, at *9 (N.D. Tex. Mar. 15, 2013) (holding

deliberative process privilege did not apply factual portions of Securities and Exchange

Commission's notes and summaries from witness interviews conducted in course of investigating

an individual).  That is, information that "is merely part of the factual investigation undertaken by"

an agency "is not so intertwined with the deliberative decisionmaking" "so as to render [the information] privileged." *Equal Emp. Opportunity Comm'n v. Productivity Improvement Ctr., Inc.*, No. 3:05-cv-465-WHB-JCS, 2006 WL 8430242, at *1, *2 (S.D. Miss. June 19, 2006) ("Most of the questions objected to specifically ask for merely facts, for example, ["w]hat facts did you gather during your investigation—what information did you gather as to the number of times" alleged assailant assaulted alleged victim?). Further, the privilege does not protect documents "consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *Trentadue*, 501 F.3d at 1227 (quotations omitted). And as another example, courts have required the production of agency reports, such as some internal reports prepared by the agency that "involve a thorough review of a wide range of documents, and culminate in a report recommending supervisory action where necessary." *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 448 (E.D.N.Y. 1993) (holding that privilege did not fully shield bank examination reports by agency-appointed officials tasked "to review bank records in order to facilitate the [agency's] supervision and regulation of insured financial institutions"); *see also United States v. Sutton*, No. 1:21-0598-1-PLF, 2022 WL 3340046, at *5 (D.D.C. Aug. 12, 2022) ("Because these memoranda effectively summarize factual information— the witness's interview statements—without expressing the opinions or policies of the government, they are not shielded from discovery by the deliberative process privilege.").

Especially in light of the narrow and limited circumstances in which the deliberative process privilege applies, the entries in Exhibit J reflect purely factual information that SOS may not withhold. That information includes factual information in reports in audits, details about

election procedures, information gathered from county election administrators, and election results.  Accordingly, the documents in Exhibit J must be produced.[8]

### 3.  Even if the Deliberative Process Privilege Applies to the Entirety of the Challenged Documents, the Privilege Must Yield.

Because the "need for the [documents] and the need for accurate fact-finding override the government's interest in non-disclosure," the deliberative process privilege—as a qualified privilege—must yield.  *See Doe*, 2014 WL 6390890, at *2 (citing *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).  "After all, [t]he deliberative process privilege should seldom be upheld in a case where there is any need for the evidence because it rests on such a puny instrumental rationale."  26A Kenneth W.  Graham, Jr. & Ann Murphy, *Federal Practice and Procedure: Evidence* § 5680 (April 2023 update)  To determine whether the deliberative-process privilege should yield, courts consider the following factors:  (1) the relevance of the evidence, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the government, and (5) the possibility of future timidity by government employees.  *See In re Sealed Case*, 121 F.3d at 737–38; *see also Harding*, 2016 WL 7426127, at *12; *Doe*, 2014 WL 6390890, at *2; *Rodriguez*, 280 F. Supp. 2d at 101.  Further, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."  *In re Sealed Case*, 121 F.3d at 738 (quotation omitted).

For the similar reasons as expressed in the Court's May 25, 2022 Order regarding the legislative privilege, these five factors weigh strongly in favor of disclosure.  *LUPE*, 2022 WL

---

[8] To the extent that SOS asserts that the entries reflect factual information that is inextricably intertwined with deliberative decisions by the agency, LUPE Plaintiffs respectfully request that the Court conduct *in camera* review and order the production of redacted documents, such that purely factual information is still produced.

1667687, at *6-7.  As an initial matter, during the parties' June 12, 2023 meet and confer, counsel for SOS asserted that the deliberative process privilege should not yield here in light of the Fifth Circuit's recent decision in *LULAC Texas v. Hughes*, 68 F.4th 228 (5th Cir. 2023).  But *Hughes* is inapposite.  As the Court is well aware, the *Hughes* court concluded that the *legislative* privilege should not yield.  *Id.* at 237.  Indeed, neither this Court nor the Fifth Circuit addressed the deliberative process privilege when they evaluated the discovery requests at issue in *Hughes*. Because SOS has provided no justification to apply the analysis in *Hughes* to a different privilege, the Court should reject applying the logic in *Hughes* to the deliberative process privilege.[9]

Thus, consistent with the Court's prior analysis, the deliberative process privilege should yield.  *See LUPE*, 2022 WL 1667687, at *6-7.  Regarding the first factor—relevance—the evidence is highly relevant to LUPE Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution.  Any claim based on intent requires "a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'"  *Veasey v. Abbott*, 830 F.3d 216, 230-31 (5th Cir. 2016) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). Moreover, evidence in the possession of SOS regarding the implementation of SB1—and in turn, its discriminatory impact—is plainly relevant to any effects claims.  *See Veasey v. Abbott*, 830 F.3d at 230-31, 243; *LULAC I*, 2022 WL 2921793, at *5 n.4 (as to first factor, noting that "[l]itigants may also prevail on a Section 2 claim by demonstrating that legislation has a discriminatory effect").

The remaining factors likewise favor disclosure.  Regarding the second factor—availability of other evidence—internal communications regarding the implementation of SB1 and related

---

[9] Although LUPE Plaintiffs contend that the Fifth Circuit erred in its holdings in *Hughes*, because LUPE Plaintiffs do not seek disclosure of any documents withheld by SOS based on the legislative privilege, this brief does not address the scope of the legislative privilege.

information compiled by SOS would not be otherwise publicly available.  Regarding the third and fourth factors—the seriousness of the litigation and issues involved, and the role of the government in the litigation—LUPE Plaintiffs "raise serious questions whether S.B. 1 complies with the Voting Rights Act and the First and Fourteenth Amendments." *LUPE I*, 2022 WL 1667687, at *6.  Finally, regarding the fifth factor—possibility of future timidity by government employees—Texas executive officials have participated in the discovery process—including through document production, depositions, and trial appearances—associated with litigation challenging discriminatory voting laws in Texas.  *See, e.g.*, *Perez* 2014 WL 106927, at *1; *Texas v. Holder*, 888 F. Supp. 2d 113, 120-21 (D.D.C. 2012).  And yet, even after courts have previously concluded that the legislative privilege should yield, no chilling effect has occurred.  *See Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014).  In any event, even if this factor weighed against disclosure, courts have repeatedly found—particularly in the voting rights context—that the need for accurate fact finding outweighs any chill to governmental deliberations. *LUPE*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL 1340077, at *3; *Baldus v. Brennan*, No. 11-cv-562, 11-cv-1011, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011).  That is especially so where, as here, "documents sought may shed light on government misconduct"—*i.e.*, voter suppression—as "shielding internal government deliberations in this context does not serve the public's interest in honest, effective government."  *In re Sealed Case*, 121 F.3d at 738.  Thus, on balance, these five factors strongly favor disclosure.

Accordingly, for any document in Exhibit J over which the deliberative process privilege applies, the privilege should still yield, and any such document must be produced.

### C.  Investigative Privilege

SOS and OAG improperly withhold several documents based on the investigative privilege. Ex. K. "[F]ederal common law recognizes a qualified privilege"—known as the investigative privilege—"protecting investigative files in an *ongoing criminal* investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006) (emphasis added) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)). As such, where a party fails to show that documents "concern an ongoing criminal investigation," the party has "failed to show the documents are subject to an investigatory privilege." *LUPE*, 2022 WL 1667687, at *8. To that end, the Court has concluded that, even where an OAG official "avers that the documents concern 'potential election code violations,'" that alone does not satisfy the burden to establish that the investigative privilege applies. *Id.*

"Additionally, the law enforcement privilege is bounded by relevance and time constraints." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 571; *LUPE*, 2022 WL 1667687, at *8. As such, the Fifth Circuit has noted that "[s]everal types of information probably would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing investigation, and (3) people who may have violated only civil provisions." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 571; *LUPE*, 2022 WL 1667687, at *8; *Roque v. City of Austin*, No. 1-17-cv-932-LY-AWA, 2018 WL 5848988, at *4 (W.D. Tex. Nov. 7, 2018).

Although the May 12, 2023 and May 19, 2023 privilege logs do not state whether the entries sought by LUPE Plaintiffs were the subject of an ongoing criminal investigation, *see* Ex. K, counsel for SOS and OAG indicated during the parties' June 12, 2023 meet and confer that the information in the entries was related to ongoing criminal investigations at the time of service of

the privilege logs.  On June 13, 2023, LUPE Plaintiffs sought clarification of which, if any, of the entries listed in Exhibit K remain subject of ongoing criminal investigations; as of the date of the instant motion, LUPE Plaintiffs have not received that information.  In light of the fact that it is the burden of SOS and OAG to establish that the privilege applies, LUPE Plaintiffs respectfully request that the Court direct SOS and OAG to produce any documents in Exhibit K that are no longer related to an ongoing criminal investigation, because those documents are categorically beyond the scope of the investigative privilege.  *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 571; *LUPE*, 2022 WL 1667687, at \*8.

But "[e]ven if the privilege might possibly apply because the files are part of an ongoing criminal investigation," a court may still require the production of "the materials in question."  *See Roque,*, 2018 WL 5848988, at \*4; *see also In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 570. To determine whether the investigative privilege applies to documents that are a part of an ongoing criminal investigation, "the court must balance 'the government's interest in confidentiality against the litigant's need for the documents.'"  *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 570 (quoting *Coughlin*, 946 F.2d at 1160).  To balance those interests, the Court "should consider the *Frankenhauser* factors."  *Id.* (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973).  Those ten factors are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise

> from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.* (citing *Tuite v. Henry,* 98 F.3d 1411, 1417 (D.C. Cir. 1996)).  Although a court "must apply" these ten factors when evaluating a document that is related to an ongoing criminal investigation, it may do so "in a flexible manner."  *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 571.

In that vein, in civil rights suits, courts in this Circuit have concluded the balance of these factors strongly favor disclosure especially where "the information sought is crucial to the Plaintiffs' case and is not likely available through other discovery or other sources."  *Roque*, 2018 WL 5848988, at *4.  *Roque* is instructive.  In that case, the plaintiffs—parents of an individual fatally shot by the police—brought a suit pursuant to 42 U.S.C § 1983 against a city and one of its police officers, asserting violations of the Fourth and Fourteenth Amendments.  *Id.* at *1.  The plaintiffs alleged that the city's police department "disproportionately utilize[d] deadly force against unarmed males of color," and that, according to the police department's "own internal reviews, minorities are disproportionately victims of police abuse."  *Id.*  Related to those allegations, the plaintiffs sought records concerning prior instances of deadly, excessive, or arguably excessive force by officers of the city's police department.  *Id.* at *2.

The city objected to the disclosure of such "information related to officers other than" the defendant officer, but the *Roque* court concluded that the investigative privilege did not apply.  *Id.* at *4.  As that court emphasized, "[e]ven if the privilege might possibly apply because the files are part of an ongoing criminal investigation, the Court finds that in considering the ten *Frankenhauser* factors that the factors weigh in favor of releasing the materials in question."  *Id.*  "In particular, the fact that the information sought is crucial to the Plaintiffs' case and is not likely available through other discovery or other sources weighs strongly in favor of disclosure."  *Id.*  The court

emphasized that the withheld documents were "highly relevant," noting that "the information [the plaintiffs] [sought] regarding known prior incidents of similar misconduct by other . . . officers— including the video and audio recordings, Internal Affairs investigation files, and use of force reports—are crucial to advancing [the plaintiffs'] pattern and practice claims, and go directly to proving the causation and deliberate indifference elements of municipal liability." *Id.* at *5. Indeed, the court emphasized that "[b]eing given access to such material would also be in line with other decisions in this circuit that have permitted disclosure of law enforcement departments' investigative reports and files." *Id.* (collecting cases). Accordingly, the *Roque* court held that, based on the ten *Frankenhauser factors*, the investigative privilege did not apply. *Id.*

The same logic applies to the extent that any of the documents in Exhibit K are related to ongoing criminal investigations. As discussed regarding whether the deliberative process privilege should yield, the evidence sought here is highly relevant to LUPE Plaintiffs' intent-based and effects-based claims, and internal communications regarding the implementation of SB1 and information collected regarding the potential discriminatory effects of that implementation would not otherwise be publicly available. *See supra,* Section III.B.3 (the first and second factors strongly favor that the deliberative process privilege should yield). Indeed, these documents involve election complaints related to alleged improper poll worker behavior, voter assistance, vote harvesting, curbside voting, and potential obstruction by a poll watcher in the 2022 primary and general elections. *See* Ex. K.

Further, the balance of these and the remaining *Frankenhauser* factors strongly favor disclosure. First, given the importance of the franchise, citizens will not be discouraged from continuing to report information. Indeed, any assertion by SOS or OAG that citizens will be discouraged from reporting information is undermined by the fact that several entries in the

privilege logs appear to reveal the full name of the complainants.  *See* Ex. K.  Second, there will be minimal impact of disclosing the identities of persons who provided the agency with information, especially if the Court directs SOS and OAG to serve documents with any names redacted.  Third, there is little risk of a chilling effect given that SOS and OAG frequently have produced agency documents in litigation challenging discriminatory voting laws in Texas, and yet no chilling effect to the agency occurred.  *See Veasey*, 2014 WL 1340077, at *3.  Fourth, the information sought is largely factual data (*i.e.*, information about alleged behavior) or evaluative of behavior described in complaints.  *See Cuban*, 2013 WL 1091233, at *9 (noting that "deliberative process privilege does not extend to facts such as who conducted investigations and whom they interviewed, the actions taken by the EEOC during the investigations, and communications between the EEOC and witnesses.").  Fifth, to the best of LUPE Plaintiffs' knowledge, they are not actual or potential defendants in a criminal proceeding related to the alleged incidents.  Sixth, especially given that LUPE Plaintiffs have survived a motion to dismiss and are only a few months away from trial, the suit is non-frivolous and brought in good faith.  Thus, even if the remaining factors favor the government's interest in confidentiality, the balance of the factors strongly favor disclosure.

Accordingly, "[e]ven if the privilege might possibly apply because the files are part of an ongoing criminal investigation," the ten *Frankenhauser* weigh strongly in favor of "releasing the materials in question," particularly in light of "the fact that the information sought is crucial to the Plaintiffs' case and is not likely available through other discovery or other sources weighs strongly in favor of disclosure."  *See Roque*, 2018 WL 5848988, at *4.  The documents listed in Exhibit K therefore should be produced.

## IV.   CONCLUSION

For the foregoing reasons, LUPE Plaintiffs respectfully request that the Court grant their motion to compel regarding the documents identified in Exhibits G through K.

Dated:  June 20, 2023

Respectfully submitted,

/s/ Nina Perales
Nina Perales (TX Bar No. 24005046)
Julia R. Longoria (TX Bar No. 24070166)
Fátima L. Menéndez (TX Bar No. 24090260)
Kenneth Parreno (MA BBO No. 705747)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org
fmenendez@maldef.org
kparreno@maldef.org

Michael C. Keats*
Rebecca L. Martin*
Jason S. Kanterman*
Kevin Zhen*
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com
kevin.zhen@friedfrank.com

**Attorneys for Plaintiffs**
**LA UNIÓN DEL PUEBLO ENTERO,**
**SOUTHWEST VOTER REGISTRATION**
**EDUCATION PROJECT, MEXICAN**
**AMERICAN BAR ASSOCIATION OF**

/s/ Sean Morales-Doyle
Sean Morales-Doyle (NY Bar No. 5646641)
Patrick A. Berry (NY Bar No. 5723135)
Jasleen K. Singh (CA. Bar No. 316596)
Eliza Sweren-Becker (NY Bar No. 5424403)
Andrew B. Garber (NY Bar No. 5684147)
Leah J. Tulin (MD No. 0812180236)
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
patrick.berry@nyu.edu
jasleen.singh@nyu.edu
eliza.sweren-becker@nyu.edu
andrew.garber@nyu.edu
tulinl@brennan.law.nyu.edu

Paul R. Genender (TX Bar No. 00790758)
Elizabeth Y. Ryan (TX Bar No. 24067758)
Matthew Berde (TX Bar No. 24094379)
Megan Cloud (TX Bar No. 24116207)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
paul.genender@weil.com
liz.ryan@weil.com
matt.berde@weil.com
megan.cloud@weil.com

**COUNSEL FOR**

**TEXAS, TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION, JOLT ACTION, WILLIAM C. VELASQUEZ INSTITUTE, FIEL HOUSTON INC**

**FRIENDSHIP-WEST BAPTIST CHURCH, SOUTHWEST, AND TEXOMA, TEXAS IMPACT, JAMES LEWIN**

*Admitted pro hac vice*

*Admitted pro hac vice*


## CERTIFICATE OF CONFERENCE

I hereby certify that, on June 9, 2023, June 12, 2023, June 13, 2023, June 16, 2023, and June 20, 2023, counsel for LUPE Plaintiffs conferred with counsel for the State concerning the subject of the instant motion.  On June 12, 2023, counsel for the State indicated that they oppose the relief sought.

/s/ Nina Perales
Nina Perales


## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 20th day of June 2023.

/s/ Nina Perales
Nina Perales