# EXHIBIT E

LUPE Plaintiffs' June 9, 2023 Letter



...

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
500 West Lanier Ave.
Suite 908
Fayetteville, GA 30214
*Tel:* 470.878.0785

**Chicago
Regional Office**
100 North LaSalle St.
Suite 1900
Chicago, IL 60602
*Tel:* 312.427.0701
*Fax:* 312.588.0782

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 4th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

June 9, 2023

Kathleen Hunker
Special Litigation Unit
Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, TX  78711-2548

**RE: Meet and Confer Letter Regarding the Office of the Secretary of State's May 12, 2023 and the Office of the Attorney General's May 19, 2023 Privilege Logs, *LUPE v. Abbott*, No. 5:21-cv-844-XR (W.D. Tex.)**

Dear Counsel,

I write to meet and confer regarding some of the entries in the May 12, 2023 privilege log of the Office of the Secretary of State ("SOS") and the May 19, 2023 privilege log of the Office of the Attorney General ("OAG") in connection with LUPE Plaintiffs' February 15, 2023 Requests for Production of Documents. I look forward to discussing the concerns outlined in this letter during our meet and confer scheduled for June 12, 2023.

### I. Improper Invocations of the Investigative Privilege

Exhibit A lists the entries for which the State has improperly asserted the investigative privilege.

The Fifth Circuit has emphasized that the investigative privilege is qualified and exists to protect documents relating to an *ongoing criminal* investigation. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 n.2 (5th Cir. 2006) (emphasis added). Because the State does not assert that the documents listed in Exhibit A "concern an ongoing criminal investigation," the State has "failed to show the documents are subject to an investigatory privilege." *See also La Union Del Pueblo Entero (LUPE) v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *8 (W.D. Tex. May 25, 2022), *rev'd on other grounds*, 68 F.4th 228 (5th Cir. 2023).

## II.     Improper Invocations of the Attorney-Client Privilege

"A statement enjoys attorney-client privilege if it was made to a lawyer, in confidence, and primarily for the purpose of seeking legal advice or services." *League of United Latin Am. Citizens v. Abbott ("LULAC III")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3656395, at *3 (W.D. Tex. Aug. 23, 2022) (citing *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).  "Whether a communication is privileged is fact-specific and depends on the nature of the statement and the context in which it was made." *Id.* at *2.  "The burden of proof is on the individual asserting the privilege to demonstrate an attorney-client relationship." *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978); *see also League of United Latin Am. Citizens v. Abbott ("LULAC II")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3353409, at *3 (W.D. Tex. Aug. 12, 2022).

For the reasons discussed below, Exhibits B, C, and D list documents over which the State has improperly asserted the attorney-client privilege.

### A.  *Documents Shared Among Only Attorneys*

Exhibit B lists documents that were shared among only attorneys and thus are not subject to the attorney-client privilege.

A document must have been shared between a lawyer (or her subordinate) and a client in order to receive the protection of the attorney-client privilege.  *See BDO USA*, 876 F.3d at 695.  As such, "the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures," *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), or keeps "hidden in an attorney's file," *id.* at 511.  Because the documents listed in Exhibit B have been shared among only SOS attorneys—and not any client—those documents must be produced.

### B.  *Communications Not Sought for the Primary Purpose of Seeking Legal Advice*

Exhibit C lists documents that were not created or sought for the primary purpose of legal advice.  Attorney-client "[p]rivilege claims must be detailed," *LULAC II*, 2022 WL 3353409, at *4, and "[a] communication must be for the *primary* purpose of *legal* advice for attorney-client privilege to attach," *id.* (citing *BDO USA*, 876 F.3d at 695).  As such, "a claim that attorneys worked on or reviewed documents does not alone establish attorney-client privilege."  *Id.* (citing *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).  Indeed, as courts in this Circuit recently have emphasized, "[o]ther communications, including 'advice on political, strategic, or policy issues,' are 'not . . . shielded from disclosure'" simply because those communications included an attorney. *LULAC III*, 2022 WL 3656395, at *3 (quoting *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).  Because the entries listed in Exhibit C do not reflect communications sought for the primary purpose of seeking legal advice, those documents must be produced.

### C. Underlying Factual Information

Exhibit D lists entries that contain fact-based information that is not privileged. "[F]acts within the client's knowledge are not protected by the attorney-client privilege, even if the client learned those facts through communications with counsel." *LULAC II*, 2022 WL 3353409, at *4 (quoting *LUPE*, 2022 WL 1667687, at *7); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1985) (stating that the "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts"). Because such underlying factual information is not subject to the attorney-client privilege, documents listed in Exhibit D must be produced.

### III. Improper Invocations of the Deliberative Process Privilege

Exhibit E lists entries over which the State has improperly asserted the deliberative process privilege.

As an initial matter, SOS has not identified the legal basis for its assertion of the deliberative process privilege, as a *state* agency. As other courts in this Circuit have recently emphasized, "[s]ome courts have concluded the deliberative process privilege is inapplicable to state agencies." *League of United Latin Am. Citizens v. Abbott ("LULAC I")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *2 n.4 (W.D. Tex. Aug. 10, 2022); *Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990) (concluding the federal common law "deliberative process privilege should not be extended to include state governmental agencies"). Because SOS is a state agency, it cannot invoke the deliberative process privilege.

Further, even if it could invoke the deliberative process privilege, SOS has not properly invoked the privilege. "Trial counsel cannot invoke the privilege on [SOS's] behalf." *See League of United Latin Am. Citizens v. Abbott ("LULAC I")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *3 (W.D. Tex. Aug. 10, 2022) (collecting cases). "Because only trial counsel has invoked the deliberative process privilege," SOS has not validly asserted the privilege, and the documents listed in Exhibit E must be produced. *Id.*

The documents in Exhibit E also contain information that is outside of the scope of the deliberative process privilege. "The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Harding v. Cnty. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *11 (N.D. Tex. Dec. 23, 2016) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). Because the entries listed in Exhibit E contain such information exempt from the privilege—including but not limited to factual information such as election procedures, implementation details, and election results—the privilege does not apply.

In addition, to the extent that the deliberative-process privilege applies to any of the entries, the privilege should yield. The deliberative process privilege "is qualified; not absolute." *Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014). That means that the deliberative-process privilege "can be overcome 'by a sufficient showing of need.'" *Harding*, 2016 WL 7426127, at *12 (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)) (collecting cases). To determine whether the deliberative-process privilege should yield, courts consider the following factors: (1) the relevance of the evidence, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the government, and (5) the possibility of future timidity by government employees. *See In re Sealed Case*, 121 F.3d at 737–38; *see also Harding*, 2016 WL 7426127, at *12; *Doe*, 2014 WL 6390890, at *2. Further, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d at 738 (quotation omitted).

The balance of these factors weigh heavily in favor of disclosure. First, the evidence sought is relevant to LUPE Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution. Second, the evidence sought by LUPE Plaintiffs would not otherwise be available. Third, LUPE Plaintiffs raise serious questions about whether SB1 complies with the Voting Rights Act and the First and Fourteenth Amendments. Fourth, there is no question of the State's involvement. Fifth and finally, even after decades of election-related litigation involving the State—and past orders in those suits requiring disclosure of documents in the possession of the State—no chilling effect has occurred; and in any event, the need for accurate fact finding in the voting rights context outweighs any potential chilling effect. *See Harding*, 2016 WL 7426127, at *13. As such, to the extent that the deliberative process privilege applies to any of the documents listed in Exhibit E, that privilege should yield.

## IV. Improper Invocations of the Work Product Doctrine

Exhibit F lists entries over which the State has improperly invoked the work product doctrine. For the work product doctrine to apply, "the *primary* motivating purpose behind the creation of [a] document" must be "to aid in possible future litigation." *LULAC I*, 2022 WL 3233406, at *6 (quoting *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)). Thus, "[d]ocuments created 'in the ordinary course of business' are not covered by the work product doctrine," *id.* (quoting *El Paso Co.*, 682 F.2d at 542), including "documents created in the ordinary course of government business," *id.* Put another way, "[i]f the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Harding*, 2016 WL 7426127, at *11. Because the documents in Exhibit F were created in SOS's ordinary course of business—*i.e.*, the administration of election procedures—the work product doctrine does not apply.

V.  **Further Detail Regarding Other Entries in the May 12, 2023 and May 19, 2023 Privilege Logs.**

A number of entries lack sufficient detail to allow LUPE Plaintiffs to assess whether the State has properly withheld those documents.

Exhibit G lists entries that contain the following undefined acronyms in the Subject Line and Privilege Statement columns: "CC," "EA," and "VR." Please provide the meaning of those acronyms.

Exhibit H lists entries that provide insufficient detail about the nature of any alleged voter fraud. For each entry in Exhibit H, please indicate the nature of any alleged voter fraud, including any citations to provisions of the Texas Election Code, where applicable. For example, please indicate if the alleged voter fraud is related to potential unlawful assistance or if the alleged voter fraud is related to potential ballot harvesting. Please also indicate which entries, if any, are the subject of an ongoing criminal investigation.

Exhibit I lists entries that provide insufficient detail about the nature of allegations of voter suppression. For each entry in Exhibit I, please provide details about the nature of the alleged voter suppression, including citations to the provisions of the Texas Election Code that were potentially violated. Please also indicate which entries, if any, are subject of an ongoing criminal investigation.

Exhibit J lists entries that provide insufficient detail about specific election complaints. For example, the entries in Exhibit J include complaints regarding alleged "election improprieties" and alleged "potential election irregularities." For each entry in Exhibit J, please provide details about the nature of the complaints—including citations to the provisions of the Texas Election Code that were potentially violated, as well as a description of any alleged election impropriety or any alleged potential election irregularity in each complaint. Please also indicate which entries, if any, are subject of an ongoing criminal investigation.

Exhibit K lists entries that provide insufficient detail about what "potential election code violation(s)" are alleged in certain election complaints. For each entry in Exhibit K, please indicate which provisions of the Texas Election Code, if any, are at issue in each election complaint. Please also indicate which entries, if any, are subject of an ongoing criminal investigation.

Exhibit L lists entries over which the legislative privilege has been asserted, and for which insufficient detail has been provided to assess whether the privilege has been properly asserted. For each entry in Exhibit L, please identify the document's author(s). In addition, please indicate which documents, if any, reflect an amendment that was offered in the Texas House or Texas Senate during the Regular Session, First Called Special Session, or Second Called Special Session of the 87th Texas Legislature—and for any documents that reflect such an amendment, please indicate the amendment number; the bill

to which the amendment related; and whether the amendment was offered in committee, on the floor for second reading, or on the floor for third reading.

In seeking additional information regarding the entries in Exhibits G to L, LUPE Plaintiffs reserve the right to challenge the privilege assertions for these entries at a later time, including based on any of the above arguments regarding the investigative privilege, attorney-client privilege, work product doctrine, and deliberative process privilege. In addition, LUPE Plaintiffs incorporate by reference any arguments previously made regarding the legislative privilege. *See, e.g.*, Dkt. 547 (LUPE Plaintiffs' March 4, 2023 motion to compel). LUPE Plaintiffs also reserve the right to assert any of those arguments regarding the documents listed in Exhibit L at a later time.

\* \* \*

LUPE Plaintiffs reserve the right to raise additional concerns with the SOS's May 12, 2023 privilege log and the OAG's May 19, 2023 privilege log. We look forward to addressing the above concerns in our forthcoming meet and confer.

Sincerely,

*Nina Perales*

Nina Perales
Fátima Menéndez
Julia Longoria
Kenneth Parreno
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205

*Counsel for LUPE Plaintiffs*