# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| La Unión del Pueblo Entero, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 5:21-CV-844-XR |
| | (consolidated cases) |
| Greg W. Abbott, *et al.*, | |
| *Defendants.* | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................. 1

      A.      Defendant is made a party to this suit and offers an illusory "stipulation." .......... 3

      B.      Defendant Ogg's sovereign immunity and standing defenses are rejected by this Court and by the Fifth Circuit's motions panel ........................................... 5

      C.      Discovery has Confirmed the Injurious Effects of the Criminal Provisions on Plaintiffs ................................................................................................. 7

III.    ARGUMENT ................................................................................................. 10

      A.      Summary Judgment Standard .............................................................. 10

      B.      Defendant Ogg's jurisdictional challenges are without merit ............................. 10

            1.      Defendant Ogg is not entitled to sovereign immunity ............................. 11

                  a.      Sovereign Immunity Standard .................................... 12

                  b.      Defendant Ogg is an official with the duty to enforce the challenge criminal provisions ....................................... 13

                  c.      Sovereign immunity defenses are irrelevant to most of Plaintiffs' claims ................................................... 16

            2.      Plaintiffs have standing under Article III ............................................. 16

      C.      The Record Demonstrates a Triable Issue of Material Fact as to Each Claim Asserted Against Kim Ogg. .......................................................... 22

            1.      Constitutional Claims ........................................................................ 22

            2.      Title II of the ADA ........................................................................... 23

            3.      Section 504 of the Rehabilitation Act .................................................. 24

            4.      Section 208 of the VRA ..................................................................... 24

            5.      Section 2 of the VRA ........................................................................ 24

IV.     CONCLUSION .............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Order Den. Ogg's Mot. to Stay Disc. (October 7, 2022) (Ex. C) ....................................................6

*In re Abbott,*
   956 F.3d 696 (5th Cir. 2020) ...........................................................................................12

*Air Evac EMS v. Tex. Dep't of Insurance, Div., of Worker's Compensation,*
   851 F.3d 507 (5th Cir. 2017) ....................................................................................13, 16

*Alice L. v. Dusek,*
   492 F.3d 563 (5th Cir. 2007) ...........................................................................................11

*Ark. Right to Life State Political Action Comm. v. Butler,*
   983 F. Supp. 1209 (W.D. Ark. 1997)...............................................................................10

*Askew v. Hargrave,*
   401 U.S. 476 (1971).........................................................................................................10

*Block v. Tex. Bd. of Law Exam'rs,*
   952 F.3d 613 (5th Cir. 2020) ...........................................................................................16

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).........................................................................................................10

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) .....................................................................................12, 13

*Deville v. Marcantel,*
   567 F.3d 156 (5th. Cir. 2009) ..........................................................................................10

*Griggs v. Provident Consumer Discount Co.,*
   459 U.S. 56 (1982)...........................................................................................................11

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982).....................................................................................................17, 21

*Houston Justice v. Abbott,*
   No. 5:20-cv-848-XR ...........................................................................................................3

*Kentucky. v. Graham,*
   473 U.S. 159 (1985).........................................................................................................22

*La. ACORN Fair Housing v. LeBlanc,*
    211 F.3d 298 (5th Cir. 2000) ............................................................17

*La Union del Pueblo Entero v. Abbott,*
    No. 5:21-cv-844-XR ............................................................3

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................17

*LULAC Texas v. Esparza,*
    No. 1:21-cv-786 ............................................................3

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 ............................................................16

*Mi Familia Vota v. Abbott,*
    No. 5:20-cv-920-XR ............................................................3

*Mi Familia Vota v. Ogg,*
    U.S.C.A. Case No. 22-50732 (5th Cir.) ............................................................6, 11

*N.A.A.C.P. v. City of Kyle, Tex.,*
    626 F.3d 233 (5th Cir. 2010) ............................................................17

*Nat'l Press Photographers Ass'n v. McGraw,*
    594 F. Supp. 3d 789 (W.D. Tex. 2022) ............................................................13, 14

*OCA-Greater Houston v. Scott,*
    No. 1:21-cv-780-XR ............................................................3

*Perez v. Abbott,*
    253 F. Supp. 3d 864 (W.D. Tex. 2017) ............................................................2

Order on Ogg's Mot. to Dismiss ("MTD Order") 17, ECF No. 450 ..............1, 5, 7, 11, 15, 17, 24

*Sindermann v. Perry,*
    430 F.2d 939 (5th Cir. 1970) ............................................................10

*State v. Stephens,*
    663 S.W.3d 45 (Tex. Crim. App. 2021), *reh'g denied,* 664 S.W.3d 293 (Tex.
    Crim. App. 2022) ............................................................4, 5, 13, 23

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ............................................................16

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................16, 21

*Taylor v. Sterrett*,
    640 F.2d 663 (5th Cir. 1981) ........................................................................................11

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ..............................................................................12, 13

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) ......................12

*United States v. Stevens*,
    559 U.S. 460 (2010) ..................................................................................................15

*United States v. Texas*,
    No. 5:21-cv-1085-XR ...................................................................................................3

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ...........................................................................12, 13, 14, 23

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ....................................................................................................22

*Ex parte Young*,
    209 U.S. 123 (1908). MTD Order.............................................5, 11, 12, 13, 16

**Statutes**

42 U.S.C. § 1983................................................................................................22, 23

42 U.S.C. § 12202.....................................................................................................16

Rehabilitation Act .........................................................................................16, 23, 24

Tex. Elec. Code §§ 33.051............................................................................................2, 6

Tex. Elec. Code § 33.061(a) ......................................................................................2, 6

Tex. Elec. Code § 64.034............................................................................................6

Tex. Elec. Code § 86.010............................................................................................6

Tex. Elec. Code § 86.0105..........................................................................................6

Tex. Elec. Code § 273.002.............................................................................4, 23, 25

Tex. Elec. Code §§ 276.015.......................................................................................2, 6

Tex. Elec. Code §§ 276.016 and 276.017 ..................................................................6

Tex. Loc. Gov't. Code § 3(B) ......................................................................................3

Texas Election Code § 273.001, 273.002 ...............................................4, 22, 23, 24, 25

Texas Election Code § 273.021 .............................................................................................4

Texas House Bill 17.....................................................................3, 13, 14, 22, 23, 25

Texas Senate Bill 1. ....................................................................................... *passim*

The Americans with Disabilities Act ...................................................................16, 23

Voting Rights Act .............................................................................................6, 16, 24

**Other Authorities**

Cassandra Pollock, *Houston-area lawmakers urge DA to investigate possible
    "non-existent" March primary candidate*, THE TEXAS TRIBUNE (Apr. 9, 2020),
    https://www.texastribune.org/2020/04/09/allegations-fake-candidate-
    houstondraw-calls-investigation/ ...............................................................................14

Charles Alan Wright, et al., *Federal Practice and Procedure,* § 2732.2 (2d
    ed.1983) .......................................................................................................................10

Constitution of the United States eleventh amendment...............................................16

Eleanor Klibanoff, *House passes bill to rein in "rogue" prosecutors*, THE TEXAS
    TRIBUNE (April 27, 2023), https://www.texastribune.org/2023/04/27/texas-
    house-rogue-prosecutors/ .............................................................................................3

Fed. R. Civ. P. 25(d) ......................................................................................................1

Federal Rule of Civil Procedure 56(a) .......................................................................10

Konner McIntire and Courtney Rau, *Fact Check Team: States move to limit
    prosecutorial discretion,* CBS AUSTIN (June 7, 2023, 4:36pm),
    https://cbsaustin.com/news/nation-world/fact-check-team-states-move-to-
    limit-prosecutorial-discretion-rogue-attorneys-abortion-roe-v-wade-dobbs-v-
    jackson-marijuana-healthcare-voter-fraud-drug-offenses-law-enforcement-
    judicial-system-gregg-abbott-texas..............................................................................3

Press Release, Office of the Texas Governor, Governor Abbott Signs 8 Public
    Safety Bills Into Law To Protect Texans (June 6, 2023),
    https://gov.texas.gov/news/post/governor-abbott-signs-8-public-safety-bills-
    into-law-to-protect-texans.............................................................................................3

## I.      **INTRODUCTION**

The HAUL Plaintiffs, MFV Plaintiffs, OCA Plaintiffs, and LULAC Plaintiffs (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in opposition to Defendant District Attorney Kim Ogg's motion for summary judgment. Defendant seeks to relitigate points that this Court decided when it denied in part her motion to dismiss almost a year ago: that she is not entitled to sovereign immunity, and that Plaintiffs have standing to bring this suit. There exist genuine issues of material fact to be resolved at trial on each of Plaintiffs' claims with respect to Defendant Ogg, as demonstrated by the factual record described below and in the Plaintiffs' memoranda, filed contemporaneously herewith, in opposition to the State Defendants'[2] and the Intervenor-Defendants'[3] motions for summary judgment. Plaintiffs respectfully submit that this Court should deny Defendant Ogg's motion for summary judgment in its entirety.

## II.     **STATEMENT OF FACTS**

Plaintiffs are voting rights and civil rights organizations that challenge Texas Senate Bill 1 ("S.B. 1") under the U.S. Constitution and federal statutes. In its ruling on Defendant Ogg's motion to dismiss, the Court allowed Plaintiffs to proceed on their claims pertaining to sections of S.B. 1 that criminalize activities that are central to the organizations' missions: Sections 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04 (the "Criminal Provisions"). Order on Ogg's Mot. to Dismiss ("MTD Order") 17, ECF No. 450. Among its numerous impediments to Plaintiffs' voter outreach and

---

[1] The HAUL Plaintiffs include the Houston Area Urban League ("HAUL"), The Arc of Texas, Delta Sigma Theta Sorority, Inc., and Jeffery Lamar Clemmons. The MFV Plaintiffs include Mi Familia Vota ("MFV"), Marla Lopez, Marlon Lopez, and Paul Rutledge. The OCA Plaintiffs include the League of Women Voters of Texas ("LWVTX"), OCA-Greater Houston, and REVUP-Texas. All OCA Plaintiffs challenge S.B. 1 Sections 6.06 and 7.04; REVUP-Texas challenges only Section 6.06. The LULAC Plaintiffs include Texas LULAC, Voto Latino, Texas AFT, and Texas Alliance for Retired Americans.

[2] State Defendants include: Gregory W. Abbott, in his official capacity as Governor of Texas; Jane Nelson, in her official capacity as Secretary of State; John Scott, in his official capacity as Interim-Attorney General of Texas, *see* Fed. R. Civ. P. 25(d); and the State of Texas.

[3] Intervenor-Defendants include: Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee.

education efforts, S.B. 1 makes it a criminal offense to urge voters to support or oppose a candidate or measure in the presence of a ballot – a prohibition that captures in its broad sweep legitimate interactions such as helping voters with disabilities to receive assistance to which they are entitled under federal law. S.B. 1 § 7.04 (adding Tex. Elec. Code §§ 276.015); LULAC Pls.' Second Am. Compl. ¶¶ 279, 291, 292 ECF No. 207. S.B. 1 also imposes potential criminal penalties on election judges and poll workers for actions taken to regulate the conduct of poll watchers for the purpose of maintaining good order in the polling place. S.B. 1 §§ 4.06, 4.09 (amending Tex. Elec. Code §§ 33.051(a)-(b), (d)-(e), and 33.061(a) and adding Tex. Elec. Code §§ 33.051(a-1), (g)-(h)); LULAC Pls.' Second Am. Compl. ¶¶ 185-186.

The Criminal Provisions continue Texas's lengthy record of regulating the electoral process with punitive criminal sanctions – a scheme in which prosecutors such as Defendant Ogg have always played an indispensable role. *Cf. Perez v. Abbott*, 253 F. Supp. 3d 864, 959 (W.D. Tex. 2017) (noting Texas's "long history of discrimination with regard to voting and in general"). As Defendant Ogg herself admitted, she "indisputably has the statutory authority within the boundaries of Harris County to prosecute cases under any and all Texas statutes that set out criminal offenses, including criminal offense provisions of the Election Code." Ogg's Mot. to Dismiss ("MTD") 9, ECF No. 344. Indeed, Ogg's office regularly receives reports of alleged violations of the Texas Election Code, *see* Ogg's First Am. Resp. to OCA-GH's Second Set of Interrogatories (Ex. A), Resp. Nos. 1 and 2,  including at least twelve reports of alleged conduct violating Election Code sections changed or added by the Criminal Provisions since S.B. 1's passage. *See* Ogg's Resp. to LULAC Pls.' Discovery Requests (Ex. B), Resp. to Interrogatory No. 1. She has also pointedly refused to "disavow any intent to prosecute any person for conduct that violates S.B. 1." *Id.* These facts alone easily raise a genuine factual dispute as to whether Defendant

Ogg has "taken or threatened to take any action to enforce [the Criminal Provisions]." Ogg's Motion for Summary Judgment ("MSJ") at 4.

The recently enacted Texas House Bill 17 ("H.B. 17") further emphasizes the duty of district attorneys to enforce the Criminal Provisions. Under the new law, effective September 1, 2023, district attorneys may be removed from office if they adopt any policy that "prohibits or materially limits the enforcement of any criminal offense." H.B. 17 § 1 (adding Tex. Loc. Gov't. Code § 3(B)). Governor Greg Abbott declared that H.B. 17 is intended to rein in "rogue district attorneys;"[4] local news described the law as, at least in part, "a response to elected district and county attorneys in Texas's large, left-leaning counties who . . . seem disinterested in pursuing election fraud cases."[5]  In other words, even if Ogg wished to disclaim a desire to enforce S.B. 1's criminal provisions—and she has made clear she does not, *see infra*—state law now compels her to enforce S.B. 1's criminal penalties.

### A.    Defendant is made a party to this suit and offers an illusory "stipulation."

In September, 2021, five private plaintiff groups initiated actions against state and county-level officials: *LULAC Texas v. Esparza*, No. 1:21-cv-786; *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-844-XR; *OCA-Greater Houston v. Scott*, No. 1:21-cv-780-XR; *Mi Familia Vota v. Abbott*, No. 5:20-cv-920-XR; and *Houston Justice v. Abbott*, No. 5:20-cv-848-XR.[6] Three months later, Plaintiffs[7] amended their complaints to add several district attorneys as defendants, including

---

[4] Press Release, Office of the Texas Governor, *Governor Abbott Signs 8 Public Safety Bills Into Law To Protect Texans* (June 6, 2023), https://gov.texas.gov/news/post/governor-abbott-signs-8-public-safety-bills-into-law-to-protect-texans.

[5] Eleanor Klibanoff, *House passes bill to rein in "rogue" prosecutors*, THE TEXAS TRIBUNE (April 27, 2023), https://www.texastribune.org/2023/04/27/texas-house-rogue-prosecutors/; *see also* Konner McIntire and Courtney Rau, *Fact Check Team: States move to limit prosecutorial discretion,* CBS AUSTIN (June 7, 2023, 4:36pm), https://cbsaustin.com/news/nation-world/fact-check-team-states-move-to-limit-prosecutorial-discretion-rogue-attorneys-abortion-roe-v-wade-dobbs-v-jackson-marijuana-healthcare-voter-fraud-drug-offenses-law-enforcement-judicial-system-gregg-abbott-texas.

[6] On November 4, 2021, the United States also filed a lawsuit challenging S.B. 1, *United States v. Texas*, No. 5:21-cv-1085-XR, which was subsequently consolidated into this action.

[7] This brief is filed on behalf of all private Plaintiffs.

Kim Ogg, in accordance with a Texas Court of Criminal Appeals decision recognizing local district attorneys' broad authority to initiate prosecutions for election-related criminal offenses. *See State v. Stephens*, 663 S.W.3d 45, 51-55 (Tex. Crim. App. 2021), *reh'g denied,* 664 S.W.3d 293 (Tex. Crim. App. 2022) (characterizing such prosecutions as the "specific duty of the county and district attorneys").[8]

Defendant Ogg initially sought to avoid this suit by offering to stipulate that she would refrain from enforcing the Criminal Provisions "until such time as a final, non-appealable decision has been issued in this matter." MSJ Ex. 2. ¶ 2, ECF No. 614-2. The proffered stipulation did not bind her to abide by a final ruling on the merits; it was silent as to Defendant Ogg's legal obligation to investigate any allegation of election-related criminal conduct presented to her by two or more Harris County voters, *see* Texas Election Code § 273.001; and it made no mention of whether she would investigate election crimes at the Attorney General's request or permit the Attorney General to prosecute alleged violations of the Criminal Provisions in Harris County. The narrow terms of the proposed stipulation were intended only to allow Defendant Ogg to "conserv[e] prosecutorial resources until such time as challenges to the constitutionality of the [Criminal Provisions] are resolved." *Id.* at ¶ 3. By contrast, then-El Paso County District Attorney Yvonne Rosales, in moving to be excused from active participation in this litigation, agreed to "comply with all court orders and judgments applicable to her." Def. Yvonne Rosales's Unopposed Mot. To Be Excused From Active Participation ¶ 3, ECF No. 356. Plaintiffs did not oppose Rosales's motion, but rejected Ogg's proffered stipulation.

---

[8] The *Stephens* court struck down Texas Election Code § 273.021, which allowed the Attorney General to prosecute election-related offenses. *Stephens*, 663 S.W.3d at 57. However, the decision left in place § 273.002, which authorizes the Attorney General to direct district attorneys to conduct or assist in investigations of alleged Election Code violations.

**B.      Defendant Ogg's sovereign immunity and standing defenses are rejected by this Court and by the Fifth Circuit's motions panel.**

The legal arguments in Ogg's instant motion for summary judgment are virtually identical to the ones this Court rejected nearly a year ago when it ruled on her motion to dismiss "all claims brought against her." *See* MTD at 1. Then, as now, Defendant Ogg claimed that the *Ex parte Young* exception to sovereign immunity was inapplicable to her. *Id.* at 6-16. She also argued, as she does again in the instant motion, that Plaintiffs lack any injury-in-fact as they have not been subject to the Criminal Provisions and because, she asserts, there is no causal relationship between her enforcement authority and any injuries. *Id.* at 6-18.

On August 2, 2022, this Court rejected these arguments as to Plaintiffs' claims concerning the Criminal Provisions, holding that sovereign immunity did not bar these claims under the exception articulated in *Ex parte Young*, 209 U.S. 123 (1908). MTD Order at 6-9. The Court observed that Ogg had the specific duty to enforce the provisions of S.B. 1 that "create and implicate criminal offenses," pointing to both *Stephens* and Ogg's admission that she "indisputably has the statutory authority within the boundaries of Harris County to prosecute cases under any and all Texas statutes that set out criminal offenses, including criminal offense provisions of the Election Code." *Id.* at 8. The Court held, moreover, that Plaintiffs had plausibly asserted standing to assert claims against Ogg concerning the Criminal Provisions. *Id.* at 10. The Court held that Plaintiffs had adequately pleaded that S.B. 1 will harm their members, and that Plaintiffs will need to divert resources from their ordinary activities to educate members about the effects of the Criminal Provisions. *Id.* at 11-15. These injuries, the Court further concluded, were traceable to and redressable by Ogg because Ogg has the undisputed authority to prosecute violations of the Criminal Provisions, and an injunction preventing her from exercising that authority will at least

5

partly ameliorate Plaintiffs' injuries. *Id.* at 16. Accordingly, this Court allowed Plaintiffs to proceed against Ogg with challenges to the following provisions of S.B. 1:

- Section 4.06, which creates a misdemeanor offense for "election officer[s]" if they "intentionally or knowingly refuse[] to accept a [poll] watcher for service when acceptance of the watcher is required by this section." S.B. 1 § 4.06 (adding (creating Tex. Elec. Code § 33.051(g));

- Section 4.09, which makes it an offense for an election official to "obstruct the view of [a poll] watcher or [to] distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective." S.B. 1 § 4.09 (amending Tex. Elec. Code § 33.061(a));

- Section 6.04, which requires persons assisting voters to swear under penalty of perjury that the voter they are assisting represented that "they are eligible to receive assistance." S.B. § 6.04 (amending Tex. Elec. Code § 64.034);

- Section 6.05, which imposes criminal penalties on assistors who do not provide detailed disclosures on a voter's ballot envelope. S.B. 1 § 6.05 (amending Tex. Elec. Code § 86.010);

- Section 6.06, which criminally prohibits offering or providing compensation to, or accepting compensation from, "another person for assisting" mail voters. S.B. 1 § 6.06 (amending Tex. Elec. Code § 86.0105); and

- Section 7.04, which criminalizes (1) efforts by election officials to encourage voters to request applications for absentee ballots, S.B. 1 § 7.04 (creating Tex. Elec. Code §§ 276.016 and 276.017); and (2) knowingly compensating or being compensated for "in-person interaction with one or more voters, in the physical presence of an official ballot or ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.* (creating Tex. Elec. Code § 276.015).

Defendant Ogg's interlocutory appeal of this Court's Order remains pending before the Fifth Circuit. *Mi Familia Vota v. Ogg*, U.S.C.A. Case No. 22-50732 (5th Cir.). When she sought a stay of discovery therein, however, her principal arguments were rejected by the Fifth Circuit's motions panel, which held that she had "no likelihood of success" on her sovereign immunity defense, at least as to Plaintiffs' Voting Rights Act ("VRA") claims, "because the [Voting Rights Act] explicitly abrogated sovereign immunity." Order Den. Ogg's Mot. to Stay Disc. (October 7, 2022) (Ex. C) at 4.

**C.**     **Discovery has Confirmed the Injurious Effects of the Criminal Provisions on Plaintiffs.**

The evidentiary record firmly establishes triable issues of material fact as to Plaintiffs' injuries.[9] With the benefit of discovery, Plaintiffs' organizational injuries are not merely well-pleaded, but are supported by more than enough evidence to overcome Defendant Ogg's renewed attempt to end this lawsuit prematurely. This voluminous factual record is summarized in Plaintiffs' oppositions, filed concurrently herewith, to the State Defendants' and Intervenor-Defendants' summary judgment motions.  Plaintiffs incorporate those memoranda by reference here. For present purposes, it is sufficient to highlight a small sampling of key facts from discovery that demonstrate the injury to Plaintiffs:

- 30(b)(6) deposition testimony of HAUL by Ray Shackelford: "I work with [HAUL] . . . to educate them . . . on items like S.B. 1 . . . [T]here are instances where we also have to take away from their time, to train them on the changes to S.B. 1 . . . So it's a diversion of their time [and] those resources." HAUL 30(b)(6) Dep. (Ex. D) at 21:9-14. "Things have been scaled back as a result of the passage of S.B. 1 . . . [Advocacy classes] have had to now shift to focus on S.B. 1, when that was not initially a part of the planning." *Id.* at 148:17-149:15. "[HAUL] has pulled away from [certain] Family and Community Engagement activities through our Education Department . . . [I]n some instances, [S.B. 1 ] will pull[] away from our Housing Department . . . because we now have to spend additional time and energy . . . to train the other staff on what S.B. 1 is." *Id.* at 150:20-151:1.

- 30(b)(6) deposition testimony of LWVTX by Grace Chimene: "[I]t's not just about resources . . . but it's also that [our organization's mission is] we truly want people to vote in every election…." OCA Ps' Response App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 98:16-22.[10] "[D]uring most elections we're working really hard . . . trying to get more people registered to vote . . . [but] instead of being able to do that, since[] SB1 we spent a great deal of our time instead educating voters who are normally consistent voters…." *Id.* at 89:16-90:21. "And our concern . . . is for the safety of those members who may . . . be at risk . . . of criminal penalty of some type . . . [We have to be] educating our members . . . and other members of the community [because] we don't want people in our normal activity of empowering

---

[9] The Court has accepted Plaintiffs' "diversion-of-resources" theory of organizational standing, MTD Order at 15, and concluded, after a "straightforward inquiry," that such injuries (if proven) would meet the requirements of traceability and redressability. *Id.* at 16.

[10] OCA Plaintiffs have gathered the majority of the evidence they rely upon in responding to Defendant Ogg's motion for summary judgment in a response appendix, attached here as Exhibit H.

voters and encouraging voting and getting people to participate in elections . . . to have this confusing law that seems to indicate that they may go to jail . . .." *Id.* at 108:10-109:2.

- 30(b)(6) testimony of The Arc of Texas by Jennifer Martinez: "There is a chilling effect on folks who are looking to support folks with disabilities . . . [Assistors are] concerned that [they] would be limited in how [voters are] supported because of their concern about filling out a form that could have criminal penalties." Arc of Texas 30(b)(6) Dep. (Ex. E) at 67:5-17. "[R]equiring folks to sign a[n] oath that could end in criminal penalties is an additional burden for Texans with disabilities to vote." *Id.* at 72:19-21. "We believe that a barrier is placed in front of anybody with a disability who is looking to vote when there is a criminal penalty for filling out a form incorrectly[, so] that's a concern and is a barrier in our minds." *Id.* at 74:7-11.

- 30(b)(6) testimony of Delta Sigma Theta by Michelle Brown: ". . . the retraining that we're going to have to do because what's most concerning to us is that if they make a mistake . . . [voters are] subjected possibly to criminal penalties." Delta Sigma Theta 30(b)(6) Dep. (Ex. F) at 144:11-17.   "Absolutely, [resources have been expended] in re-educating the members so that . . . we can mitigate the possibility of any criminal penalties against any of our members or volunteers," *Id.* at 147:21-148:2. "We provide, of course, voter education . . . We provide webinars . . . on the full scope of SB1 and how it affects [voters] . . . And we've provided training to our members on how to volunteer with our communities, ensuring that they know the full scope of SB1 so that they can also convey that information to them  and do it safely so that they're not subjected to criminal penalties." *Id.* at 192:5-18.

- 30(b)(6) testimony of OCA-GH by Deborah Yeilin Chen: "[T]he harm [to OCA-GH is] to members who want to be good citizens and want to be volunteers and want to encourage people to go out and vote. This potentially makes them criminals if they do an inadvertent mistake."  OCA App'x (Ex. H), Ex. 9, OCA-GH 30(b)(6) Dep. at 207:18-22. "Because it removes us from being in an in-person situation where we're physically there, distributing information or giving information or opening the opportunity for questions that would put us, our staff, or volunteers at risk of . . . some kind of criminal violation versus if we just [tell voters to] go online." *Id.* at 271:21-272:2 (in response to question about why OCA-GH has directed voters to Harris County's elections website instead of handing out physical materials).

- 30(b)(6) testimony of MFV by Angelica Razo: "Our focus . . . is to ensure that the voting process and the people that are assisting folks throughout the voting process don't feel like they cannot help someone because they have to give an identity or put down their name or their relationship, that they get confused, tripped up, accidentally put down something wrong." MFV 30(b)(6) Dep. (Ex. G) at 185:23-186:4. "All of our trainings for volunteers had to be updated to ensure that they

were representing the changes that came with S.B. 1 . . . any social media posts that we had or any public facing information also had to be updated." *Id.* at 59:3-9. "There was more focus on training and making sure we were in compliance for our internal team members and our volunteers and less time dedicated to other activities for voter mobilization that could have included block walking." *Id.* at 59:23-60:2.

- 30(b)(6) testimony of REV UP Texas by Bob Kafka: "[W]e have had to move our focus . . . [Other education issues have] taken a back seat since S.B. 1. I think about five or six of our podcasts have related directly to Senate Bill 1 where our original plans was to start doing a much more intensive . . . education [on other issues]." OCA App'x (Ex. H), Ex. 11, REVUP 30(b)(6) Dep. at 25:12-17. "[S.B. 1] has coincided with the increase of the disability vote . . . [so] the good part is that the number of people who are more involved in the voting process is a positive. But then S.B. 1 has just . . . take[n] up a predominant amount of our time. So it seems like it's omnipresent." *Id.* at 35:2-9. "[Section 6.06 potentially] criminalizes . . . a community attendant who in good faith is assisting a person. And because of the narrowing of what assistants can do[they] are putting themselves in jeopardy . . . And that is the chilling effect…." *Id.* at 142:10-20.

- Testimony from LULAC President Domingo Garcia: "As a result of these added restrictions [from SB 1] and the accompanying risk of criminal liability, LULAC has had difficulty recruiting volunteers who are willing to assist with mail-in ballot related assistance programming, and senior citizens in the community no longer feel comfortable requesting assistance[.]" LULAC Pls.' Opp. to Intervenor-Defendants' Mot. for Summ. J., Ex. B ("LULAC Decl.") ¶ 18. "Consequently, LULAC has ended all programming specifically meant to encourage Latino seniors to vote by mail through [its] local councils' voter assistance programs." *Id.* ¶ 19. As a result, "LULAC has been forced to divert significant resources from other programming [including] reallocating staff and volunteer time from other programs and activities—such as raising money for scholarships, recruiting new members, and educating and mobilizing its members around issues related to racial justice, immigration, education, and other issues in Texas [.]" *Id.* ¶ 22; *see also id.* ¶¶ 8-25.

- Testimony from Texas AFT President Zeph Capo: "[B]ecause of SB 1's restrictions on interactions 'in the physical presence' of a ballot … Texas AFT has been forced to significantly alter its canvassing and get-out-the-vote strategy, shifting away from using volunteer and paid field organizers." LULAC Pls.' Opp. to Intervenor-Defendants' Mot. for Summ. J., Ex. A ("AFT Decl.") ¶ 10. Instead, its "field organizers are now asked to engage with voters remotely" which has "made Texas AFT's efforts less effective." *Id.* ¶ 11. Because its voter engagement efforts are less effective, AFT must "divert resources away from its volunteer recruitment effort to support its day-to-day phone banks focused on voter persuasion." *Id.* ¶ 12.

9

III.   **ARGUMENT**

A.   **Summary Judgment Standard**

To succeed on her motion for summary judgment under Federal Rule of Civil Procedure 56(a), Defendant Ogg must show, in light of the pleadings and completed discovery, that "there is no genuine issue as to any material fact" and that she is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden is hers to identify "those portions of [the record] which [she] believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The Court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th. Cir. 2009).

The Fifth Circuit has cautioned against using summary judgment "to dispose of constitutional issues," noting that "this form of disposition is often inappropriate in cases involving issues of far-flung import." *Sindermann v. Perry*, 430 F.2d 939, 943 (5th Cir. 1970). Where constitutional rights are at stake, "courts may refuse to grant summary judgment . . . because it is felt that a fuller record is necessary in order to be able to decide properly the issues involved." *Ark. Right to Life State Political Action Comm. v. Butler,* 983 F. Supp. 1209, 1215 (W.D. Ark. 1997) (quoting Charles Alan Wright, et al., *Federal Practice and Procedure,* § 2732.2 at 340–41 (2d ed.1983)).[11]

B.   **Defendant Ogg's jurisdictional challenges are without merit.**

Plaintiffs note at the outset that this Court is likely without jurisdiction to consider the jurisdictional arguments in Defendant Ogg's motion because Defendant Ogg's interlocutory

---

[11] *See also, Askew v. Hargrave,* 401 U.S. 476, 478-79 (1971) (noting that summary judgment was inappropriately granted where Plaintiffs alleged significant equal protection violations that "should not be decided without fully developing the factual record at a hearing").

appeal is currently pending before the Fifth Circuit. Once a notice of appeal from an interlocutory order is filed, a district court is divested of jurisdiction "over those aspects of the case on appeal." *Alice L. v. Dusek,* 492 F.3d 563, 564 (5th Cir. 2007). Noting that circuit caselaw "makes this point clearly," the Court of Appeals has held that "[i]t is the general rule that a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in the appeal." *Id.* (quoting *Taylor v. Sterrett,* 640 F.2d 663, 667 (5th Cir. 1981)).The analysis for this Court on Defendant Ogg's jurisdictional arguments is therefore straightforward: this Court rejected Defendant Ogg's standing and sovereign immunity arguments in denying in part her motion to dismiss, MTD Order at 9, 17; Defendant Ogg appealed that interlocutory order on standing and sovereign immunity grounds, and that appeal is pending before the Court of Appeals, *Mi Familia Vota v. Ogg,* No. 22-50732 (oral argument scheduled for July 12, 2023); therefore, this Court cannot consider those issues until the appeal is resolved. *See Dusek,* 492 F.3d at 564.[12]

Plaintiffs nevertheless address these questions below, in the event the Court should decide to consider them in determining the instant motion. The record developed in discovery thoroughly supports Plaintiffs' jurisdictional arguments.

### 1.    Defendant Ogg is not entitled to sovereign immunity.

In the months since this Court denied Defendant Ogg's motion to dismiss the part of this suit that concerns the Criminal Provisions, Plaintiff's *Ex Parte Young* arguments have only become stronger. Plaintiffs therefore incorporate by reference their prior successful arguments, *see* MTD Order 8-9, that Defendant Ogg indisputably has the statutory authority to prosecute the challenged

---

[12] The United States Supreme Court has stated forthrightly that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of *jurisdictional significance* – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (emphases added).

Criminal Provisions and has never disclaimed an intent to do so. In addition, Plaintiffs explain how the record now before the Court further negates Defendant Ogg's claim to sovereign immunity.

### a.    Sovereign Immunity Standard

Under an exception to sovereign immunity, "[s]uits for injunctive or declaratory relief are allowed against a state official acting in violation of federal law if there is a 'sufficient "connection" to enforcing an allegedly unconstitutional law.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) (quoting *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)) "[I]f an official can act, and there's a significant possibility that he or she will . . ., the official has engaged in enough compulsion or constraint to apply the *Young* exception." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (alteration in original). As the Supreme Court recently held, an official "who *may or* must take enforcement actions" has the requisite connection. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) (emphasis in original). Plaintiffs may proceed against an official "solely" because of such statutory authority. *Id.* at 536 n.3. So, too, with officials upon whom "provisions of state law…appear to impose a duty…to bring disciplinary actions" for violations of a challenged statute. *Id.* at 537. And even before this clarification from the Supreme Court, the Fifth Circuit required no more than a "scintilla of enforcement" to clear the sovereign immunity bar. *City of Austin v. Paxton,* 943 F.3d 993, 1002 (5th Cir. 2019).

Defendant Ogg asserts that in order to prevail, Plaintiffs "must 'point[] to specific enforcement actions of the respective defendant state official'" MSJ at 13 (quoting *City of Austin,* 943 F.3d at 1001), and that because there "is no evidence that [she] has enforced or has threatened to enforce any of the challenged S.B. 1 provisions," they cannot do so. *Id.* Defendant Ogg's argument ignores the Supreme Court's holding in *Whole Women's Health* that there is no

12

sovereign immunity for an official who "may" act. 142 S. Ct. at 535. She further ignores the Fifth Circuit's admonition that the *Young* analysis "turns on the complaint's context," such that a state official with the "specific means through which to apply the [challenged] statute" is a proper Defendant. *Air Evac EMS v. Tex. Dep't of Insurance, Div., of Worker's Compensation,* 851 F.3d 507, 519 (5th Cir. 2017).[13] And while the Fifth Circuit has noted that the limits of the required enforcement connection are "unsettled" in caselaw, it has not wavered from the basic principle that only a "scintilla" of an enforcement connection is required. *Tex. Democratic Party, 961 F.3d at 400-01.*

> **b.      Defendant Ogg is an official with the duty to enforce the challenge criminal provisions**

In her capacity as the Harris County District Attorney, Defendant Ogg has "the specific duty" to prosecute "election law violations." *Stephens*, 663 S.W.3d at 52. She is therefore an official who "may or must take enforcement actions against" individuals who violate S.B. 1. *Whole Women's Health,* 142 S. Ct. at 536. On this basis alone, her sovereign immunity arguments must fail. She has never disclaimed this duty to enforce the criminal provisions of S.B. 1 and, now, with the enactment of H.B. 17, any discretion on her part to do so has been restricted. *See infra.* On this basis alone, her sovereign immunity arguments must fail.

The Supreme Court's decision *Whole Women's Health* shows why. *Id.* There, Plaintiffs "identified provisions of state law that appear[ed] to impose a duty on" certain officials to enforce the challenged statute. *Id.* at 537. Here, Defendant Ogg is similarly duty-bound by statute to enforce S.B. 1. Texas H.B. 17 provides that "a prosecuting attorney's adoption or enforcement of

---

[13] *See also Nat'l Press Photographers Ass'n v. McGraw,* 594 F. Supp. 3d 789, 803 (W.D. Tex. 2022) (summary judgment on sovereign immunity grounds was inappropriate even absent a specific enforcement action because a defendant prosecutor had prosecuted similar offenses in the past, undoubtedly had enforcement authority, and refused to disavow future prosecutions under the challenged statute).

a policy of refusing to prosecute a class or type of criminal offense under state law" constitutes "official misconduct" warranting removal from office. H.B. 17 § 1. Just as in *Whole Women's Health*, Plaintiffs have identified state statutory provisions that "appear to impose a duty" upon Defendant Ogg to enforce S.B. 1. *See id.*

Also crucial is Defendant Ogg's pointed refusal to disavow any intent to prosecute future violations of S.B. 1. Indeed, under H.B. 17, she is now categorically prohibited from doing so. When asked to "disavow any intent to prosecute any person for conduct that violates S.B. 1," Defendant Ogg would not do so, asserting instead that her office initiates prosecutions "when appropriate under the facts and law and exercise of prosecutorial discretion." *See* Ex. B, Resp. to Interrogatory No. 1. In the past, moreover, Defendant Ogg committed herself to prosecuting all laws related to the "election process."[14]

Even under the standard before *Whole Women's Health* was decided, Defendant Ogg's refusal to disavow prosecutions for violations of S.B. 1 would present a credible threat of enforcement. The Fifth Circuit has held that refusals to disavow enforcement of a challenged statute are relevant in the pre-enforcement context. In *KVUE, Inc. v. Moore,* the Court of Appeals held that plaintiffs had standing to pursue a pre-enforcement challenge in part because "the state has not disavowed enforcement." 709 F.2d 922, 930 (5th Cir. 1983); *see also McGraw,* 594 F. Supp. 3d at 803 (Without "binding assurances" that there will be no prosecution, "'[w]e would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.'") (quoting *United States v. Stevens,* 559 U.S. 460, 480 (2010)). A public commitment to prosecute all election-related offenses, in conjunction with a refusal to forgo prosecutions of

---

[14] Cassandra Pollock, *Houston-area lawmakers urge DA to investigate possible "non-existent" March primary candidate*, THE TEXAS TRIBUNE (Apr. 9, 2020), https://www.texastribune.org/2020/04/09/allegations-fake-candidate-houstondraw-calls-investigation/.

S.B. 1, certainly add up to the required "scintilla" of enforcement that Plaintiffs need to meet their burden.

Indeed, Defendant Ogg's discovery responses create a reasonable inference that she will enforce the Criminal Provisions in S.B. 1. In written discovery, she admitted that since she took office as District Attorney on January 1, 2017, her office has routinely received reports of suspected election code violations but does not currently have data on whether such tips implicate S.B. 1's new criminal provisions. *See* Ex. A, Resp. Nos. 1 and 2. Given Ogg's answers about ongoing election law-related prosecutions brought by her office before S.B. 1 was enacted, there is at least a genuine issue of material fact whether such enforcement actions are likely to continue, especially given that new crimes have been added to the State's Election Code. *See id.* This evidence alone permits the inference that she is willing to enforce the Criminal Provisions.

Defendant Ogg focuses, as she did in her motion to dismiss, "almost exclusively on the purported lack of actual or threatened enforcement of the challenged provisions." MTD Order at 8. In so doing, she continues to "conflate[] the jurisdictional question with the merits question." *Id.* Although the instant motion comes at a later procedural stage, the analysis is much the same. Defendant Ogg still "has not affirmatively represented that she *never* intends to enforce the challenged provisions," so the Court must "assume a credible threat of prosecution." *Id.* at 8-9.

Plaintiffs respectfully submit that a District Attorney who has committed herself to prosecuting every known instance of election law violations, is known to routinely receive reports of alleged violations, declines to disavow prosecution of S.B. 1's Criminal Provisions, and who is now statutorily constrained from making such a disavowal, presents far more than the "scintilla" of enforcement needed to overcome sovereign immunity.[15]

---

[15] Even were the Court to find Defendant Ogg's proposed stipulation meaningful, her limited exercise of prosecutorial discretion could not overcome her clear connection to enforcement of the challenged Criminal Provisions. *See, e.g.*

c.      **Sovereign immunity defenses are irrelevant to most of Plaintiffs' claims.**

Finally, Plaintiffs emphasize that well-settled law establishes that no claim of sovereign immunity can block causes of action arising under the VRA, the Americans with Disabilities Act ("ADA"), and Rehabilitation Act.  *See Mi Familia Vota v. Abbott,* 977 F.3d 461, 469 ("There is no sovereign immunity with respect to Voting Rights Act claims."); *see* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court . . . for a violation of" the ADA); *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020) (" A state entity waives sovereign immunity under § 504 of the Rehabilitation Act by accepting federal financial assistance.").

2.      **Plaintiffs have standing under Article III.**

Defendant Ogg asserts that Plaintiffs cannot meet their standing burden because they "cannot raise a genuine issue of material fact on whether [she] has prosecuted – or threatened to prosecute – any of the" private plaintiffs for violations of S.B. 1's Criminal Provisions. *See* MSJ at 18. A claimant, however, need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quoting *Steffel v. Thompson,* 415 U.S. 452, 459 (1974)). In addition to the standing arguments of the individual Plaintiffs, moreover, the standing of Plaintiff organizations rests not on an impending prosecution, but on the burden on their respective organizations of ensuring that none of their employees, volunteers, members, or clients violates the Criminal Provisions.

---

*Air Evac EMS, Inc.,* 851 F.3d at 518-19 ("*Ex parte Young* analysis turns on the complaint's context—including the challenged state law and defendants—to determine whether 'the state officer, by virtue of his office, has some connection with the enforcement of the act.'") (quoting *Ex Parte Young,* 209 U.S. 123, 157 (1908).) As in *Air Evac,* the fact that Defendant Ogg could, in theory, choose not to prosecute violations of S.B. 1 in the future cannot save her sovereign immunity arguments given the evidence that shows the requisite enforcement connection. *See id.; see also supra,* Part III.B.1.b.

The proper test for standing to bring this pre-enforcement challenge is the test for organizational standing, a version of the familiar tripartite framework requiring a plaintiff to demonstrate injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561-62 (1992). "[A]n organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'" *N.A.A.C.P. v. City of Kyle, Tex.,* 626 F.3d 233, 238 (5th Cir. 2010) (quoting *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982)).

As this Court explained in denying Defendant Ogg's identical arguments in her motion to dismiss, the Fifth Circuit's precedents hold that "an organization could have standing if it had proven a drain on its resources resulting from counteracting the effects of the defendant's actions." MTD Order at 11 (quoting *La. ACORN Fair Housing v. LeBlanc,* 211 F.3d 298, 305 (5th Cir. 2000)). This Court concluded, "[t]hat is precisely what the Private Plaintiffs have alleged" in this case. MTD Order at 11. In sum, if Plaintiffs can show a "drain on their resources" in response to S.B. 1, Plaintiffs have shown injury in fact.  The record now before the Court makes that showing. Additionally, as set out below, Plaintiffs have also established organizational standing through undisputed evidence that they have a serious intention to engage in protected activity arguably proscribed by the Criminal Provisions and that they face a credible threat of prosecution thereunder, and therefore the challenged laws have an impermissible chilling effect. *See also supra*, Part II.C. If an Order of this Court enjoining Defendant Ogg from bringing prosecutions under S.B. 1 would alleviate either that resource drain, the chilling effect, or both, Plaintiffs have cleared the causation and redressability bars.

The record further establishes Plaintiffs' organizational standing because it contains undisputed evidence of the Criminal Provisions' impermissible chilling effect on protected activity for which Plaintiffs now face a credible threat of prosecution. Throughout the discovery process, Plaintiffs have detailed the ways in which S.B. 1 has forced the redirection of their scarce resources toward educating their constituents about how to avoid violating the Criminal Provisions, correspondingly reduced resources for staffing and servicing other critical components of their missions, and chilled their political speech and other protected activity. *See also supra,* Part II.C. The following testimony and record evidence more than sufficiently raises triable issues of fact as to Plaintiffs' diversionary injuries:

- Ray Shackelford, testifying for HAUL, stated that the organization has had to expend more resources educating voters about the Criminal Provisions, causing the organization to "pull[] away from…Family and Community Engagement activities through [its] Education Department…[and] Housing Department." Ex. D at 150:17-21. Mr. Shackelford further testified that the time and resources of full time HAUL staff have been diverted and drained, as those staff members themselves need education on how to educate HAUL's clients. *Id.* at 21:8-14.

- Grace Chimene, on behalf of the League of Women Voters of Texas ("LWV TX"), testified that the organization will need to move around resources due to a "concern…for the safety of those members who may…be at risk of…criminal penalty" under the new ballot harvesting provisions. OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 108:10-12.[16]

---

[16] *See also* OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 126:19–24 (LWVTX "tries to address" Section 7.04 "by shifting resources from other activities to educating people potentially subject to [it] about [it]."

LWVTX has members, including members with disabilities, who regularly vote by mail and intend to vote by mail in the future, who will be harmed by SB1's assistance requirements for voting by mail. ECF No. 611-1, Ex. 30, LeBombard Dec. ¶¶ 10–13; ECF No. 611-1, Exs. 118–119; ECF No. 611-1, Ex. 34, Lewis Dep. at 10:21, 44:25–45:25, 47:11–25. Likewise, LWVTX has many members who serves as assistants to voters casting mail-in-ballots in their communities; organizations and others will often ask LWVTX chapters and members to provide assistants. ECF No. 611-1, Ex. 30, LeBombard Dec. ¶¶ 12; OCA App'x (Ex. H), at Ex. 4 (("[The Potter County Elections Office] helped this voter by contacting a member of our local League of Women Voters who agreed to go by the voter's home and assist her," because "her eyesight has gotten so bad, she could not read the [VBM] application and fill it out").

LWVTX has been forced to divert resources to educate voters about the changes resulting from SB1's changes to assistance requirements; to provide guidance to voters who use assistants while voting and to organizations, individuals, and members who provide assistance; to answer questions from members and others about S.B. 1's changes to assistance requirements; and to design an alternative ABBM in an attempt to reduce the harm and confusion from S.B. 1's assistance requirements. ECF No. 611-1, Ex. 30, LeBombard Dec. ¶¶ 15–18, 20–24, 26–28; OCA App'x

- The Arc of Texas CEO Jennifer Martinez testified that "requiring folks to sign a oath that could end in criminal penalties is an additional burden for Texans with disabilities to vote" created by S.B. 1, and her organization will need to devote resources to combat this new burden. Ex. E at 72:19-21. She further stated: "We believe that a barrier is placed in front of anybody with a disability who is looking to vote when there is a criminal penalty for filling out a form incorrectly that's a concern and is a barrier in our minds." *Id.* at 74:7-11.

- Delta Sigma Theta representative Michelle Brown noted that the organization will have to devote resources to "retraining" its members "because what's most concerning to us…that [voters are] subjected possibly to criminal penalties." Ex. F at 144:11-17.  When asked if the Criminal Provisions had caused the organization to spend any money thus far, Brown stated: "Absolutely, in re-educating the members so that…we can mitigate the possibility of any criminal penalties against any of our members or volunteers," Delta Sigma Theta Dep. at 147:21-148:2.

- Angelica Razo, on behalf of MFV, testified that the organization was directing resources to supporting people who provide much-needed assistance to voters but are afraid of falling foul of S.B. 1. Ex. G at 185:23-186:4. MFV had to update its training, diverting resources away from voter mobilization and toward efforts to keep staff and volunteers in compliance with S.B. 1. *Id.* at 59:23-60:2.

- Deborah Yeilin Chen, on behalf of OCA-GH, testified that her organization is concerned that its members "who want to be good citizens" by either voting or helping others will be entrapped by S.B. 1, which "potentially makes them criminals." OCA App'x (Ex. H), Ex. 9, OCA-GH 30(b)(6)Dep. at 207:18-22. She described the organization's directing Harris County voters to the County's election website instead of providing assistance materials directly because the law "removes

---

(Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 102:23–103:23; ECF No. 611-1, Exs. 128–139; OCA App'x (Ex. H), Exs. 3–4, 6–7. LWVTX has also spent significant time speaking with the media to raise awareness about changes under S.B. 1, including to help educate voters about changes related to voter assistance. ECF No. 611-1, Ex. 30, LeBombard Dec. ¶ 21; OCA App'x (Ex. H), Ex. 5. This has caused LWVTX to turn away from its usual goals of increasing voter turnout among low-propensity and first-time voters. ECF No. 611-1, Ex. 30, LeBombard Dec. ¶ 26; OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 89:7–91:2, 138:12–19; ECF No. 611-1, Ex. 107 (LWVTX strategic goals are to increase voter registration rates and reach low-propensity voters); ECF No. 611-1, Ex. 154 ("This past election we were intensely focusing on the VBM process with our voter education.").

LWVTX staff, members, or volunteers are also paid or receive what could be perceived as compensation under Section 7.04 to engage in-person voter interactive activities, such as voter registration drives and candidate forums, during which it or its members could violate Section 7.04 of S.B. 1, and local LWVTX leagues periodically endorse local ballot measures. OCA App'x (Ex. H), Ex. 2, LeBombard Supp. Dec. ¶¶ 3–6 & Attachment A; OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 106:8–112:9, 113:21–114:7; OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep. at 10:23–11:7; ECF No. 611-1, Exs. 110–112; OCA App'x (Ex. H), Exs. 6, 8. Section 7.04 thus chills LWVTX members and volunteers, as well as voters, from engaging in their desired get out the vote efforts and from speaking about any endorsed ballot measures. OCA App'x (Ex. H), Ex. 1, LWVTX 30(b)(6) Dep.  at 113:21–114:7, 123:21–124:10, 126:12–128:2.

[OCA-GH] from being in an in-person situation" that might entail "some kind of criminal violation" *Id.* at 271:21-272:2.[17]

- Bob Kafka, on behalf of REVUP-Texas, testified that the organization has "had to move our focus . . . [Other education issues have] taken a back seat since S.B. 1. I think about five or six of our podcasts have related directly to Senate Bill 1 where our original plans was to start doing a much more intensive . . . education [on other issues]." OCA App'x (Ex. H), Ex. 11, REVUP 30(b)(6) Dep. at 25:12-17. "[S.B. 1] has coincided with the increase of the disability vote . . . [so] the good part is that the number of people who are more involved in the voting process is a positive. But then S.B. 1 has just . . . take[n] up a predominant amount of our time. So it seems like it's omnipresent." *Id.* at 35:2-9. "[Section 6.06 potentially] criminalizes . . . a community attendant who in good faith is assisting a person. And because of the narrowing of what assistants can do [they] are putting themselves in jeopardy . . . And that is the chilling effect...." *Id.* at 142:10-20.[18]

- Testimony from LULAC's President that the organization "has had difficulty recruiting "volunteers who are willing to assist with mail-in ballot related assistance programming" due to S.B. 1's criminal provisions, which has caused LULAC to have its local councils in Texas "end[] all programming specifically meant to encourage Latino seniors to vote by mail through." LULAC Decl. ¶¶ 18-19. LULAC has, as a result, been forced "to divert significant resources from other

---

[17] Prior to passage of S.B. 1, OCA-GH routinely provided mail-in voting assistance at local community centers and early vote centers, as well as during in-person candidate forums, Asian American and Pacific Islander ("AAPI") candidate "meet and greets," mail-in voting training sessions, voting machine trainings, exit polling activities, and door knocking, canvassing, and other field campaign activities, ranging from helping Chinese-speaking, often elderly and/or limited English proficiency voters complete their ABBMs, mail-ballots, and registration forms, to explaining the election process and what was on the ballot to first-time AAPI voters. OCA App'x (Ex. H), Ex. 10, Chen. Supp Dec. ¶¶ 4–15. OCA-GH focused its resources on in-person, in-depth, and repeat interactions with individual voters, which in its experience has a high success rate in motivating people to go vote. *Id.* ¶ 27. Since S.B. 1's passage, however, OCA-GH has ceased providing mail-in voting assistance, as well as severely scaled back the scope of its communications during activities at which mail-in ballots may be present, due to the fear of criminal prosecution under S.B. 1 Sections 6.06 and 7.04. *Id.* ¶¶ 17–27. OCA-GH has also been forced to pivot its time, energy, and resources away from its prior focus on in-depth voter outreach interactions to instead attempting to generate as many surface-level interactions (*i.e.*, which do not run afoul of S.B. 1) as possible, which do not have as great an impact as before. *Id.* ¶ 27. Moreover, carrying out an "S.B. 1-risk assessment" with respect to each of OCA-GH's programs requires substantial staff time, as does training new staff or members to avoid such risk. *Id.* ¶ 24; *see also* OCA App'x (Ex. H), Ex. 9, OCA-GH 30(b)(6) Dep. at 210:8–21 (explaining that it takes "time and resources" to "try[] to understand what can or cannot be done under [S.B. 1]" and fear that even "providing bottled water to people" is "some kind of compensation because everything has an economic value"), *id.* at 212:21–214:1 (similar), 215:19–219:4 (explaining ways in which S.B. 1 has curtailed OCA-GH's desired conduct and that S.B. 1 "require[s] us to be much more careful about how we're doing canvassing or, frankly, doing any, you know, assistance type of events"). *id.* at 220:1–8 ("The most immediate harm for our members" and the community is "the lack of ability for them to actually get assistance," particularly the language assistance OCA-GH can provide).

[18]      REVUP-Texas continues to divert resources concerning voter assistance restrictions imposed by S.B. 1, including by answering questions from the disability voting community about the assistor requirements through its outreach and office time. OCA App'x (Ex. H), Ex. 12, Kafka Supp. Dec. ¶¶ 18–20. REVUP-Texas has also identified REVUP members who fear they will not be able to receive mail-in voting assistance due to S.B. 1 Section 6.06. *See* Pls. Opp. to State-Defendants' Mot. for Summ. J., Section II.d.

programming" to ensure "LULAC's members and other Latino constituents are able to vote in spite of SB 1's new requirements[.]" *Id.* ¶ 22.

- Testimony from Texas AFT's President that the group "has been forced to significantly alter its canvassing and get-out-the-vote strategy, shifting away from using volunteer and paid field organizers." AFT Decl. ¶ 10. Because these volunteers and field organizers must now use less effective methods to engage voters, AFT must "divert resources away from its volunteer recruitment effort to support its day-to-day phone banks focused on voter persuasion." *Id.* ¶ 12.

These facts more than establish triable issues of material fact as to Plaintiffs' injury for purposes of standing.

Rather than engage with this evidence, Ogg poses a rhetorical question: "[I]f the office of District Attorney Ogg has not taken any action to enforce the laws on which 'education efforts' are ongoing, how could those claimed 'injuries' ever be properly correlated to conduct by District Attorney Ogg?" MSJ at 23. The law, however, does not require an imminent arrest for a pre-enforcement challenge to be viable; *see Susan B. Anthony List,* 537 U.S. at 158; and the injuries Plaintiffs suffer are the chilling effect on their activities, the resource drain, and the attendant impairment of other mission-critical programs caused by having to change programs and retrain staff, volunteers, members, and clients in order to obviate the risk of prosecution by Ogg's office. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982) (holding that "there can be no question" that an organization has suffered an injury in fact when its activities are "perceptibly impaired" by resource drain). Plaintiffs need not show that Defendant Ogg plans to prosecute them, but rather that the injury they currently suffer would dissipate with an Order barring future prosecutions for violating the provisions that are currently causing the resource drain. Finally, to the extent the specific prosecutorial policies or practices of Defendant Ogg's office were ever relevant, the sections of the Election Code that require District Attorneys to investigate allegations of election crimes at the direction of the Attorney General or whenever presented with alleged

violations by two or more registered voters, Texas Election Code §§ 273.001,  273.002, as well as

the newly enacted H.B. 17, undercut her standing arguments. *See supra,* Part III.B.1.b. Unable to

disavow future prosecutorial actions as a matter of state law, Ogg cannot now rely upon her lack

of prosecutorial conduct to date to defeat Plaintiffs' standing. Plaintiffs will be required to divert

their resources on an ongoing basis to avoid having their constituents face future investigation and

prosecution in Harris County. They have therefore shown a triable issue of fact as to their standing.

### C.     The Record Demonstrates a Triable Issue of Material Fact as to Each Claim Asserted Against Kim Ogg.

Ogg's so-called merits-based arguments, MSJ at 23-29, do little more than recycle her

earlier positions concerning sovereign immunity and standing. Recasting these questions as

"merits" issues cannot obscure the fact that, as to every claim against Ogg, there exists at the very

least a triable issue of material fact that forecloses summary judgment.

To avoid submitting duplicative arguments, Plaintiffs' responses below incorporate by

reference the memoranda in opposition to State Defendants' and Intervenor-Defendants' summary

judgment motions in this consolidated action.

### 1.     Constitutional Claims

That 42 U.S.C. § 1983 provides for prospective relief against constitutional violations is

an uncontroversial proposition. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, n. 10

(1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief,

would be a person under § 1983 because 'official-capacity actions for prospective relief are not

treated as actions against the State.'") (quoting *Kentucky. v. Graham,* 473 U.S. 159, 167, n.14

(1985)). Yet Ogg insists that she is entitled to summary judgment "[a]bsent proof that her office

has taken any action with respect to the [Criminal Provisions]." MSJ at 23. This argument ignores

that a pre-enforcement § 1983 challenge to a statute is proper against any official who "may or

must take enforcement actions" under the law at issue. *See Whole Women's Health*, 142 S. Ct. at 535-36.

Ogg was named as a Defendant because, for Harris County, she is the one official vested with the authority to enforce the Criminal Provisions, not because Plaintiffs drew her name out of a hat to serve as an "all-purpose placeholder." MSJ at 24; *see also Stephens,* 663 S.W.3d at 52 (noting that district attorneys have "the specific duty" to "[r]epresent the state in a criminal prosecution for election law violations."). She "may or must take enforcement actions" because Texas Election Code § 273.001 requires her to investigate any allegation of election-related criminal conduct that is presented by two or more registered voters in her county. The Attorney General, moreover, has significant control and influence over her enforcement discretion, as he holds the authority to "direct [any] county or district attorney . . . to *conduct* or *assist* the attorney general in conducting the investigation." Tex. Elec. Code § 273.002. Indeed, Ogg's proposed stipulation was notably silent as to her statutory duty to facilitate investigations of S.B. 1 violations, even as she offered to refrain from enforcing S.B. 1 temporarily. *See* MSJ, Ex. 2. Finally, any remaining doubt as to whether Ogg "may or must" enforce the Criminal Provisions is diminished by H.B. 17, which prohibits prosecutors from disavowing the prosecution of any type of criminal offense under penalty of removal from office. H.B. 17 § 1.

### 2. Title II of the ADA

Plaintiffs hereby incorporate by reference their contemporaneously filed opposition to the State Defendants' motion for summary judgment on Plaintiffs' ADA and Rehabilitation Act claims. *See* Pls.' Opp. to State Defendants' Mot. for Summ. J. on ADA and Rehabilitation Act Claims.

### 3.    Section 504 of the Rehabilitation Act

Plaintiffs hereby incorporate their contemporaneously filed opposition to the State Defendants' motion for summary judgment on Plaintiff's Section 504 claims. *See id.*

### 4.    Section 208 of the VRA

Plaintiffs hereby incorporate by reference their contemporaneously filed opposition to the Intervenor-Defendants' motion for summary judgment on Plaintiffs' Section 208 claims. *See* Pls.' Opp. to Intervenor-Defendants' Mot. for Summ. J., Part II.

### 5.    Section 2 of the VRA

Defendant Ogg does not dispute that the Criminal Provisions violate Section 2 of the Voting Rights Act causing injuries to Plaintiffs, but she argues that she lacks a connection to those injuries.[19] Here again, however, whether Plaintiffs' injuries have a sufficient connection to District Attorney Ogg is a question that was answered by this Court nearly a year ago. *See* supra, Part III.B.2. There, this Court held:

> Ogg has authority to prosecute criminal violations of the Election Code. An injunction prohibiting Ogg from enforcing the challenged S.B. 1 provisions that create criminal offenses will, at least partly, redress the injuries that [Plaintiffs have] suffered. MTD Order at16.

It is unclear why Ogg's causality argument should merit renewed consideration at the summary judgment stage, particularly as the motion does not dispute that the Criminal Provisions violate Section 2 of the VRA. Indeed, the claim that "there is no administrative or statutory requirement that District Attorney Ogg *ever* apply the challenged laws in the future," MSJ at 29, is belied by Texas Election Code § 273.001 (requiring district attorneys to investigate all alleged violations of

---

[19] Ogg appears to assert that there is no connection between herself and any "inequality in the opportunities of minority and non-minority voters to elect their preferred representatives," MSJ at 28 (internal quotations removed). This assertion ignores that the Criminal Provisions erect barriers to the act of voting by preventing the regulation of poll watchers, S.B. 1 §§ 4.06, 4.09; and by creating criminal penalties for activities that are part of voter outreach and assistance, S.B. 1 §§ 6.04, 6.05, 6.06, 7.04. As such, an injunction against the enforcement of those Provisions by Ogg will remedy voting-related harms that are directly addressed by Section 2 of the VRA.

the Election Code that are referred to them); Texas Election Code § 273.002 (authorizing the Attorney General, in the exercise of investigatory powers under the Election Code, to "direct the county or district attorney" to conduct, or assist the Attorney General in conducting, investigations of alleged violations); and H.B. 17 § 1 (providing for the removal of any district attorney who adopts a policy that "prohibits or materially limits the enforcement of any criminal offense").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that District Attorney Ogg's request for summary judgment be denied in its entirety.

Dated: June 23, 2023

Respectfully Submitted,

Courtney Hostetler
Ron Fein
John Bonifaz
Ben Clements
FREE SPEECH FOR THE PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

Elijah Watkins
STOEL RIVES LLP
101 S. Capital Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
elijah.watkins@stoel.com

Bradley Prowant
John Katuska
STOEL RIVES LLP
33 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
(612) 373 8863
bradley.prowant@stoel.com

*/s/ J. Michael Showalter*
J. Michael Showalter
ARENTFOX SCHIFF LLP
South Wacker Drive, Suite 7100
Chicago, IL 60606
j.michael.showalter@afslaw.com
Tel: (312) 258-5561

Eitan Berkowitz
Derek Ha
(appearances forthcoming)
ARENTFOX SCHIFF LLP
44 Montgomery St., 38th Floor
San Francisco, CA 94104
eitan.berkowitz@afslaw.com
derek.ha@afslaw.com
Tel: (415) 757-5500

Jennifer A. Holmes*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street N.W. Suite 600
Washington, DC 2005
jholmes@naacpldf.org
Tel: (202) 683-1300

Victor Genecin*
Amir Badat*

25

john.katuska@stoel.com

Whitney A. Brown
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 95501
Telephone: (907) 263-8413
whitney.brown@stoel.com

*Counsel for Plaintiffs Mi Familia Vota,
Marla López, Marlon López, and Paul
Rutledge ("MFV Plaintiffs")*

/s/ Zachary Dolling
Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
Veronikah Warms*
Texas Bar No. 24132682
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
ACLU FOUNDATION OF TEXAS, INC.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org

Breanna Williams*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
vgenecin@naacpldf.org
abadat@naacpldf.org
bwilliams@naacpldf.org

Kenneth Broughton
Texas Bar No. 03087250
J. Keely Pippin
Texas Bar No. 24116306
REED SMITH LLP
811 Main Street
Suite 1700
Houston, TX 77002
kbroughton@reedsmith.com
kpippin@reedsmith.com
Tel: (713) 469-3819

Sarah Cummings Stewart
Texas Bar No. 24094609
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
sarah.stewart@reedsmith.com

Shira Wakschlag*
The Arc of the United States, Inc.
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org

*Counsel for Plaintiffs Houston Area Urban
League; Delta Sigma Theta Sorority, Inc;
The Arc of Texas; and Jeffrey Lamar
Clemmons ("HAUL Plaintiffs")*
*admitted pro hac vice

esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
PETER HOFER
Texas State Bar No. 09777275
CHRISTOPHER MCGREAL
Texas State Bar No. 24051774
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Noah B. Baron*
Michael B. Jones*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Marcos Mocine-McQueen*
Marisa A. O'Gara*
Omeed Alerasool*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elais.law
nbaron@elias.law
mjones@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
mmcqueen@elias.law
mogara@elias.law
oalerasool@elias.law

*Counsel for Texas LULAC, Voto Latino, Texas AFT, and Texas Alliance for Retired Americans ("LULAC Plaintiffs")*
*\*admitted pro hac vice*

phofer@drtx.org
cmcgreal@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com

Gregory D. Washington*
JENNER & BLOCK LLP
455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

*Counsel for League of Women Voters of
Texas, OCA-Greater Houston, and
REVUP-Texas ("OCA Plaintiffs")
*admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2023, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ J. Michael Showalter*
J. Michael Showalter
