# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S
FIRST AMENDED RESPONSES TO PLAINTIFF OCA-GREATER
HOUSTON'S SECOND SET OF INTERROGATORIES**

TO:   Plaintiff OCA-Greater Houston, by and through Plaintiff OCA-Greater Houston's attorney of record, Zachary Dolling, TEXAS CIVIL RIGHTS PROJECT, 1405 Montopolis Drive, Austin, Texas 78741.

Defendant Harris County District Attorney Kim Ogg ("District Attorney Ogg"), in accordance with the Federal Rules of Civil Procedure, services these First Amended responses to Plaintiff OCA-Greater Houston's Second Set of Interrogatories.  District Attorney Ogg reserves the right to supplement and/or amend this response as the case progresses and as permitted by the Federal Rules of Civil Procedure and any orders of the Court.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
 Eric J.R. Nichols
 State Bar No. 14994900
 eric.nichols@butlersnow.com
 Victoria A. Giese
 State Bar No. 24126391
 victoria.giese@butlersnow.com
 1400 Lavaca Street, Suite 1000
 Austin, Texas 78701
 Tel: (737) 802-1800
 Fax: (737) 802-1801

 **ATTORNEYS FOR DEFENDANT KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2023, a true and correct copy of the foregoing document was served on counsel of record by electronic mail.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols

2

**DISTRICT ATTORNEY OGG'S FIRST AMENDED RESPONSES TO PLAINTIFF
OCA-GREATER HOUSTON'S SECOND SET OF INTERROGATORIES**

These responses are without prejudice to District Attorney's Ogg position that principles of sovereign immunity bar the requesting plaintiffs' claims against her.

**INTERROGATORY NO. 1:**   Identify each investigation initiated or participated in by your office predicated at least in part on a violation or suspected violation of the above-listed Sections of the Texas Election Code. Include for each investigation identified the Section(s) of the Texas Election Code involved or suspected to be involved, the date the investigation was opened, the result of the investigation (e.g., dismissal because inconclusive), and the date the investigation was closed, where applicable.

**RESPONSE NO. 1:**   During the time period January 1, 2017 to present, there were reports made to the Harris County District Attorney's Office ("HCDAO") of 165 instances in which individuals provided the Harris County District Clerk and/or the City of Houston with responses to jury summonses indicating a lack of U.S. citizenship that may have been inconsistent with representations of citizenship made on previously filed voter registration applications.  During this time period, there were reports made to the HCDAO of 470 instances in which individuals signed in to vote in a primary, either Democratic or Republican, after previously signing in to vote in a different party's primary in the same election.  During this time period, there was a report made to the HCDAO of a situation in which an individual falsified a voter registration application with the wrong address for that individual.  During this time period, there were reports made to the HCDAO of 20 instances in which a person was suspected of voting illegally in person in Harris County—three that involved potential voting by a felon not eligible to vote; two that involved potential voting by non-citizens not eligible to vote; and 15 that involved the potential situation in which a voter voted more than once. During this time period, there was one report to the HCDAO of a claim that an individual engaged in improper ballot harvesting.  During this time period, there was one report made to the HCDAO of multiple instances in which a person may have indicated that he or she witnessed a request for mail-in ballots when in fact he or she had not.  Records maintained by the division of the HCDAO that processes complaints and referrals of Election Code matters, and engages in investigations of Election Code matters, do not reflect other instances of the HCDAO receiving complaints, referrals, and/or participating in investigations during this time period that could have arisen in part or in whole under any one or more of the following provisions of the Texas Election Code as enacted or amended by SB1:  13.007, 33.051(g), 33.061(a), 64.012, 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.013, 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including

3

under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 2:**   Identify each prosecution initiated or participated in by your office predicated at least in part on a violation or suspected violation of the above-listed Sections of the Texas Election Code. Include for each prosecution identified the Section(s) of the Texas Election Code involved or suspected to be involved, the date the prosecution was initiated, and the result of the prosecution.

**RESPONSE NO. 2:**   From January 1, 2017 to present, the HCDAO has participated in the following prosecutions, which are of public record:

      *State v. Anthony Rodriguez*, Cause No. 1629438 (176th Judicial District Court) (filed 4/26/19)

      *State v. Richard Anthony Bonton*, Case No. 2337503 (Harris CCCL #15) (filed 12/11/20)

      *State v. Natasha Nicole Demming*, Case No. 2337506 (Harris CCCL #15) (filed 12/11/20)

Records maintained by the division of the HCDAO that processes complaints and referrals of Election Code matters, and engages in prosecutions of Election Code matters, do not reflect other instances of prosecutions that arose in part or in whole under any one or more of the following provisions of the Texas Election Code as enacted or amended by SB1: 13.007, 33.051(g), 33.061(a), 64.012, 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.013, 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 3:** Identify and describe with particularity any communications your office has had with the OAG regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 3:**   At least four of the matters involving a complaint, referral, and/or investigation as discussed in the response to Interrogatory No. 1 involved communications with the "OAG" as defined in the request.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on

000005

February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 4:** Identify and describe with particularity any communications your office has had with the SOS regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 4:**   At least one of the matters involving a complaint, referral, and/or investigation as discussed in the response to Interrogatory No. 1 involved communications with the "SOS" as defined in the request.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 5:** Identify and describe with particularity any communications your office has had with State officials regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 5:**  See responses to Interrogatories 3 and 4.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

000006

**INTERROGATORY NO. 6:** Identify and describe with particularity any communications your office has had with local officials, other than you, regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 6:**   See responses to Interrogatories 1, 3, 4, and 5.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 7:**   Identify and describe with particularity any communications your office has had with the Texas Legislature regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 7:**   Following diligent inquiry, District Attorney Ogg has not located any communications with the "Texas Legislature" as defined by the request regarding investigations or prosecutions related to one or more of the following provisions of the Texas Election Code as enacted or amended by SB1:  33.051(g), 33.061(a), 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 8:**   Identify and describe with particularity any communications your office has had with members of the public regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 8:**   See responses to Interrogatories 1, 2, 3, 4, and 5.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023. As discussed with the Court during the proceedings on February 16, 2023, these

000007

responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

000008

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

    I declare pursuant to 28 U.S.C. § 1746 that I am an Assistant District Attorney/Fraud Examiner with the Public Corruption Division of the Harris County District Attorney's Office, and that the foregoing answers to interrogatories are based on information and records available through diligent inquiry at the Harris County District Attorney's Office.


                                        */s/ George Jordan (with permission)*
                                        GEORGE JORDAN

000009

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 5:21-CV-00844-XR (Consolidated Cases) |
| GREGORY W. ABBOTT, et al., | § § § | |
| *Defendants*. | § § | |

### DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S RESPONSES TO LULAC PLAINTIFFS' DISCOVERY REQUESTS

TO:     LULAC Plaintiffs, by and through LULAC Plaintiffs' attorney of record, Uzoma N. Nkwonta, ELLIS LAW GROUP LLP, 250 Massachusetts Avenue Northwest, Suite 400, Washington, D.C. 20001.

Defendant Harris County District Attorney Kim Ogg ("District Attorney Ogg"), in accordance with the Federal Rules of Civil Procedure, serves these responses to the LULAC Plaintiffs' First Requests for Interrogatories, First Requests for Production, and First Requests for Admission.  District Attorney Ogg reserves the right to supplement and/or amend this response as the case progresses and as permitted by the Federal Rules of Civil Procedure and any orders of the Court.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
 Eric J.R. Nichols
 State Bar No. 14994900
 eric.nichols@butlersnow.com
 Victoria A. Giese
 State Bar No. 24126391
 victoria.giese@butlersnow.com
 1400 Lavaca Street, Suite 1000
 Austin, Texas 78701
 Tel: (737) 802-1800
 Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2023, a true and correct copy of the foregoing document was served on counsel of record by electronic mail.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols

## RESPONSES TO
## LULAC PLAINTIFFS' FIRST REQUESTS FOR INTERROGATORIES

These responses are without prejudice to District Attorney's Ogg position that principles of sovereign immunity bar the requesting plaintiffs' claims against her.

**INTERROGATORY NO. 1**:       State whether you disavow any intent to prosecute violations of SB 1 § 4.06.

**RESPONSE NO. 1:**   The Harris County District Attorney's Office ("HCDAO") does not engage in prosecution of violations of bills but rather—when appropriate under the facts and law and exercise of prosecutorial discretion—criminal violations of enacted laws of the State of Texas that occur within Harris County.  *See* Texas Code of Criminal Procedure art. 2.01; Texas Government Code § 43.180.

For further answer, if any is needed, District Attorney Ogg proposed a stipulation regarding non-enforcement of the criminal provisions added to or amended in the Texas Election Code by SB1 "until such time as a final, non-appealable decision has been issued in this matter."  *See* Exhibit 1. Certain plaintiffs in the consolidated cases failed to accept the reasonable stipulation.  District Attorney Ogg does not seek and would not seek to enforce any laws that have been determined by courts to be unconstitutional.  Regardless, no matters arising in part or in whole under the following sections of the Texas Election Code as added or amended by SB 1—33.051, 33.061(a), 64.034, 276.015, 276.016, 276.017, 276.018 and 276.019—are pending investigation or prosecution at the HCDAO, other than the following: there were reports made to the HCDAO on or after September 1, 2021 of 12 instances in which individuals provided the Harris County District Clerk and/or the City of Houston with responses to jury summonses indicating a lack of U.S. citizenship that may have been inconsistent with representations of citizenship made on previously filed voter registration applications.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 2**:  State whether you disavow any intent to prosecute violations of SB 1 § 4.09.

**RESPONSE NO. 2**:  See response to Interrogatory No. 1.

000013

**INTERROGATORY NO. 3**:         State whether you disavow any intent to prosecute any person for conduct that violates SB 1 § 6.04.

**RESPONSE NO. 3**:  See response to Interrogatory No. 1.

**INTERROGATORY NO. 4**:         State whether you disavow any intent to prosecute violations of SB 1 § 7.04.

**RESPONSE NO. 4**:  See response to Interrogatory No. 1.

**INTERROGATORY NO. 5**:  State the number of alleged violations of the Criminal Provisions between the enactment of SB 1 in September 2021 and commencement of trial in this matter of which you are aware and the number of such violations you have investigated or prosecuted.  For each incident that you investigated or prosecuted, describe the incident at issue and the outcome of your investigation or prosecution. If you have not investigated or prosecuted any such violations, explain why not.

The Harris County District Attorney's Office ("HCDAO") has not engaged in any investigations initiated between September 2021 to date arising in part or in whole under any one or more of the following provisions of the Texas Election Code:  33.051, 33.061(a), 64.034, 276.015, 276.016, 276.017, 276.018, and 276.019, other than the following: there were reports made to the HCDAO on or after September 1, 2021 of 12 instances in which individuals provided the Harris County District Clerk and/or the City of Houston with responses to jury summonses indicating a lack of U.S. citizenship that may have been inconsistent with representations of citizenship made on previously filed voter registration applications.

From September 2021 to present, the HCDAO has not initiated any prosecutions arising in part or in whole under any one or more of the following provisions of the Texas Election Code:  33.051, 33.061(a), 64.034, 276.015, 276.016, 276.017, 276.018, and 276.019.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

000014

**RESPONSES TO**
**LULAC PLAINTIFFS' REQUESTS FOR PRODUCTION**

These responses are without prejudice to District Attorney's Ogg position that principles of sovereign immunity bar the requesting plaintiffs' claims against her.

**REQUEST FOR PRODUCTION 1**:  All documents and communications that you identified, relied upon or consulted in preparing your responses to LULAC Plaintiffs' First Set of Interrogatories.

**RESPONSE NO. 1:**  See the foregoing responses to the interrogatories.  To the extent that this request seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**REQUEST FOR PRODUCTION 2:** All documents and communications sent or made publicly available by you evidencing your disavowal or intention to disavow any intent to prosecute any violation of the Criminal Provisions.

**RESPONSE NO. 2:**  See the foregoing responses to the interrogatories.  To the extent that this request seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

000015

## RESPONSES TO
## <u>LULAC PLAINTIFFS' REQUESTS FOR ADMISSION</u>

These responses are without prejudice to District Attorney's Ogg position that principles of sovereign immunity bar the requesting plaintiffs' claims against her.

**REQUEST FOR ADMISSION NO. 1**:  Admit that you have made no announcement that you will refrain from enforcement of the Criminal Provisions.

**RESPONSE NO. 2:**  Denied.

**REQUEST FOR ADMISSION NO. 2**:  Admit that you do not intend to wholly refrain  from prosecuting violations of the Criminal Provisions.

**RESPONSE NO. 2:**  The request cannot be admitted or denied.  See response to Interrogatory No. 1.  District Attorney Ogg proposed a stipulation regarding non-enforcement of the criminal provisions added to or amended in the Texas Election Code by SB1 "until such time as a final, non-appealable decision has been issued in this matter."  *See* Exhibit 1.  Certain plaintiffs in the consolidated cases failed to accept the reasonable stipulation.  District Attorney Ogg does not seek and would not seek to enforce any laws that have been determined by courts to be unconstitutional. Regardless, no matters arising in part or in whole under the following sections of the Texas Election Code—33.051, 33.061(a), 64.034, 276.015, 276.016, 276.017, 276.018, and 276.019—are pending investigation or prosecution at the HCDAO.

**REQUEST FOR ADMISSION NO. 3**:  Admit that you do not intend to wholly refrain  from investigating alleged violations of the Criminal Provisions.

**RESPONSE NO. 3**:  The request cannot be admitted or denied.  See response to Interrogatory No. 1.  District Attorney Ogg proposed a stipulation regarding non-enforcement of the criminal provisions added to or amended in the Texas Election Code by SB1 "until such time as a final, non-appealable decision has been issued in this matter."  *See* Exhibit 1.  Certain plaintiffs in the consolidated cases failed to accept the reasonable stipulation.  District Attorney Ogg does not seek and would not seek to enforce any laws that have been determined by courts to be unconstitutional. Regardless, no matters arising in part or in whole under the following sections of the Texas Election Code—33.051, 33.061(a), 64.034, 276.015, 276.016, 276.017, 276.018, and 276.019—are pending investigation or prosecution at the HCDAO.

000016

**VERIFICATION**

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

    I declare pursuant to 28 U.S.C. § 1746 that I am an Assistant District Attorney/Fraud Examiner with the Public Corruption Division of the Harris County District Attorney's Office, and that the foregoing answers to interrogatories are based on information and records available through diligent inquiry at the Harris County District Attorney's Office.


                                        */s/ George Jordan*
                                        George Jordan

000017

# Exhibit 1

| From: | Zachary Dolling |
| --- | --- |
| To: | Eric Nichols |
| Cc: | Hani Mirza; mimi@texascivilrightsproject.org; schen@texascivilrightsproject.org; tbuser-clancy@aclutx.org; skuman@aclutx.org; aharris@aclutx.org; asegura@aclutx.org; Victoria Filoso; Sandy Myers; Karson Thompson |
| Subject: | Re: OCA-Greater Houston et al. v. Texas Secretary of State et al., 1:21-CV-0780-XR |
| Date: | Monday, March 14, 2022 5:17:51 PM |
| Attachments: | image001.png |



Hi Eric,

Thanks for reaching out with the draft and for your patience. After internal consultation, however, we have decided not to agree to a stipulation.

Sincerely,

**Zachary Dolling**
Texas Civil Rights Project
Mobile: 512-496-4746
This email and any files attached are privileged and confidential, and is/are intended only for the individual named. If you are not the intended recipient or otherwise have reason to believe that you have received this message in error, please notify the sender by email and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this message and any attachments is strictly prohibited.

On Sat, Mar 12, 2022 at 3:06 PM Eric Nichols <Eric.Nichols@butlersnow.com> wrote:

> Hani and Zach, attached is a draft non-participation/non-enforcement stipulation for the case. If your team would please review and let us know if this stipulation works we would appreciate it. The stipulation is based on the one we entered into for DA Ogg in the *Longoria* matter.
>
> Our current response date for DA Ogg is Tuesday, so if you could let us know by COB Monday or early Tuesday we would appreciate it. I will be in the office on Monday if you want to discuss. Thanks.
>
> Eric
>
> **Eric J.R. Nichols**
>
> **Butler Snow LLP**
>
> D: (737) 802-1807 | C: | F: (737) 802-1801
>
> 1400 Lavaca Street, Suite 1000, Austin, TX 78701
>
> Eric.Nichols@butlersnow.com| vCard | Bio

Twitter | LinkedIn | Facebook | YouTube

**From:** Hani Mirza <hani@texascivilrightsproject.org>
**Sent:** Monday, February 28, 2022 12:51 PM
**To:** Eric Nichols <Eric.Nichols@butlersnow.com>; Zachary Dolling <zachary@texascivilrightsproject.org>
**Cc:** mimi@texascivilrightsproject.org; schen@texascivilrightsproject.org; tbuser-clancy@aclutx.org; skuman@aclutx.org; aharris@aclutx.org; asegura@aclutx.org; Victoria Filoso <Victoria.Filoso@butlersnow.com>; Sandy Myers <Sandy.Myers@butlersnow.com>
**Subject:** Re: OCA-Greater Houston et al. v. Texas Secretary of State et al., 1:21-CV-0780-XR

Eric,

We are unopposed to the extension request. The best points of contact for the case are me (hani@texascivilrightsproject.org), Zach Dolling (zachary@texascivilrightsproject.org), and Sarah Chen (schen@texascivilrightsproject.org). Please include us in all future correspondence about the case.

Thank you,

Hani Mirza

On Sat, Feb 26, 2022 at 11:20 AM Eric Nichols <Eric.Nichols@butlersnow.com> wrote:

> Counsel:
>
> We will be coming in to represent Harris County District Attorney Kim Ogg in her official capacity in this lawsuit.
>
> We are filing on Monday a motion to extend the response or answer date for Defendant Ogg to March 15, 2022.  Please let us know if plaintiffs are unopposed to the motion.

Also, please let us know who among you (or your other colleagues on the pleadings) is the best point of contact to discuss the case.

Thanks and have a good weekend.

Eric

**Eric J.R. Nichols**

**Butler Snow LLP**

D: (737) 802-1807 | C: | F: (737) 802-1801

1400 Lavaca Street, Suite 1000, Austin, TX 78701

Eric.Nichols@butlersnow.com | vCard | Bio



Twitter | LinkedIn | Facebook | YouTube

CONFIDENTIALITY NOTE: This e-mail and any attachments may be confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by replying to the sender and deleting this copy and the reply from your system. Thank you for your cooperation.

--

**Hani Mirza**

*Voting Rights Program Director*

Texas Civil Rights Project

O: (972) 333-9200 ext. 171

[www.texascivilrightsproject.org](http://www.texascivilrightsproject.org)

[Facebook](#) | [Twitter](#) | [Instagram](#)

[Donate Now!](#)



This email and any files attached are privileged and confidential, and is/are intended only for the individual named.  If you are not the intended recipient or otherwise have reason to believe that you have received this message in error, please notify the sender by email and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this message and any attachments is strictly prohibited.

CONFIDENTIALITY NOTE: This e-mail and any attachments may be confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by replying to the sender and deleting this copy and the reply from your system. Thank you for your cooperation.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OCA-GREATER HOUSTON, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 1:21-CV-00780-XR |
| v. | § | |
| | § | (Consolidated Case No. 5:21-CV- |
| TEXAS SECRETARY OF STATE | § | 00844-XR) |
| JOHN SCOTT, in his official capacity, | § | |
| et al., | § | |
| | § | |
| *Defendants*. | § | |

## AGREED STIPULATION

Plaintiffs and Defendant Kim Ogg, in her capacity as District Attorney for Harris County ("Ogg"), stipulate as follows:

1. Plaintiffs stipulate and agree not to seek attorneys' fees, penalties, damages, expert fees, court costs, or other costs or expenses of any kind from Ogg as well as her employees, agents, attorneys, and successors.

2. Ogg stipulates and agrees not to enforce Sections 33.051(g), 33.061, 86.006(f), 86.010(f), 276.004(a), 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a) of the Texas Election Code challenged in the above-styled and numbered cause until such time as a final, non-appealable decision has been issued in this matter.

3. Ogg agrees not to participate in litigating the above-styled and numbered cause unless required to do so, and this stipulation shall be void if the Court orders Ogg to answer the operative complaint or respond to any motions seeking relief from or against Ogg. Further, by entering into this stipulation, Ogg is conserving prosecutorial resources until such time as challenges to the constitutionality of Texas Election Code Sections 33.051(g), 33.061,

86.006(f), 86.010(f), 276.004(a), 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a) are resolved.

4. Plaintiffs and Ogg agree that Ogg shall not file an answer, unless ordered to do so by the Court, and that no default judgment shall be taken against her.

5. These stipulations are made without prejudice to any claim or defense that Plaintiff or Ogg may assert subsequent to this litigation.

6. For avoidance of doubt, nothing in this stipulation precludes Plaintiffs from seeking injunctive relief that would bind Ogg with respect to relief sought in the case, and nothing in the stipulation precludes Ogg from taking any position with respect to such relief sought should Ogg later participate in the litigation as provided in paragraph (3).

Respectfully submitted,

**BUTLER SNOW LLP**

By: _/s/ Eric J.R. Nichols_
  Eric J.R. Nichols
  State Bar No. 14994900
  eric.nichols@butlersnow.com
  Karson Thompson
  State Bar No. 24083966
  karson.thompson@butlersnow.com
  1400 Lavaca Street, Suite 1000
  Austin, Texas 78701
  Tel: (737) 802-1800
  Fax: (737) 802-1801

  **ATTORNEYS FOR DEFENDANT KIM OGG, IN HER CAPACITY AS DISTRICT ATTORNEY FOR HARRIS COUNTY**

63565243.v1

000024

AGREED AND STIPULATED:


*/s/ Hani Mirza*
Hani Mirza
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I certify that on March 15, 2022 I electronically filed the foregoing with this Court using the CM/ECF system, which will send notification of such filing to all counsel of record who have appeared in this matter.

*/s/ Karson Thompson*
Karson Thompson

3

**000025**

# EXHIBIT C

Case 5:21-cv-00844-XR    Document 638-2    Filed 06/23/23    Page 27 of 68

Case 5:21-cv-00844-XR    Document 466    Filed 10/07/22    Page 1 of 6
Case: 22-50732    Document: 00516500366    Page: 1    Date Filed: 10/07/2022

# United States Court of Appeals
## for the Fifth Circuit

FILED

OCT -7 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

_____

No. 22-50732

_____

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL
RUTLEDGE,

*Plaintiffs—Appellees,*

*versus*

KIM OGG,

*Defendant—Appellant,*

_____

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF
TEXAS; REVUP-TEXAS; TEXAS ORGANIZING PROJECT;
WORKERS DEFENSE ACTION FUND,

*Plaintiffs—Appellees,*

*versus*

JOSE A. ESPARZA, *In His Official Capacity as Texas Secretary of State
(Acting)*; ET AL.,

*Defendants,*

KIM OGG,

*Appellant,*

_____

000027

No. 22-50732

LULAC Texas; Vote Latino; Texas Alliance for Retired Americans; Texas AFT,

*Plaintiffs—Appellees,*

*versus*

Jose Esparza; Et al.,

*Defendant,*

Kim Ogg,

*Appellant,*

———————

Delta Sigma Theta Sorority, Incorporated; Houston Area Urban League; The Arc of Texas; Jeffrey Lamar Clemmons,

*Plaintiffs—Appellees,*

*versus*

Gregory Wayne Abbott, *In His Official Capacity as the Governor of Texas*; Et al.,

*Defendants,*

Kim Ogg,

*Appellant,*

———————

Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul

2

Case 5:21-cv-00844-XR   Document 638-2   Filed 06/23/23   Page 29 of 68

Case 5:21-cv-00844-XR   Document 466   Filed 10/07/22   Page 3 of 6
Case: 22-50732      Document: 00516500366      Page: 3      Date Filed: 10/07/2022

No. 22-50732

RUTLEDGE,

*Plaintiffs—Appellees,*

*versus*

GREG ABBOTT, *In His Official Capacity as Governor of Texas*; ET AL.,

*Defendants,*

KIM OGG,

*Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844~XR
USDC No. 1:21-CV-780
USDC No. 1:21-CV-786
USDC No. 5:21-CV-848
USDC No. 5:21-CV-920

Before KING, JONES, and SMITH, *Circuit Judges.*

PER CURIAM:

Plaintiffs-Appellees challenge various provisions of the Texas
Election Code as amended by Texas Senate Bill 1, colloquially known as
"S.B. 1." They bring constitutional, Voting Rights Act ("VRA"), and other
claims against Defendant-Appellant Kim Ogg and various other state and
local officials. Ogg, the Harris County District Attorney, moved to dismiss
all of Plaintiffs-Appellees' claims, arguing in relevant part that such claims
are barred by the Eleventh Amendment's grant of sovereign immunity, that
Plaintiffs-Appellees lack standing, and that the complaints do not state a

3

Case 5:21-cv-00844-XR   Document 638-2   Filed 06/23/23   Page 30 of 68

Case 5:21-cv-00844-XR   Document 466   Filed 10/07/22   Page 4 of 6
Case: 22-50732      Document: 00516500366      Page: 4      Date Filed: 10/07/2022

No. 22-50732

plausible claim. The district court denied her motion, and Ogg filed an interlocutory appeal—currently pending—of the order's denial of her sovereign immunity defense. Ogg then moved to ask the district court to "stay *all* further discovery and related proceedings against her" (emphasis added) pending our resolution of her interlocutory appeal. The district court denied this motion; Ogg then filed a similar motion in this court. In response, we issued a temporary administrative order staying discovery until further notice and solicited responses from Plaintiffs-Appellees. Having reviewed responses from Plaintiffs-Appellees and Ogg's subsequent reply, we now rule on Ogg's motion to stay discovery pending appeal.

In granting a stay, the "most critical" factors we assess are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits" and "(2) whether the applicant will be irreparably injured absent a stay."[1] *Richardson v. Tex. Sec. of State*, 978 F.3d 220, 228 (5th Cir. 2020). Ogg addresses these factors in attempting to justify a stay based on (1) a likelihood of success on the merits of her sovereign immunity defense and (2) the irreparable harm that would allegedly be caused by violation of her sovereign immunity.

But sovereign immunity cannot bar Plaintiffs-Appellees' VRA claims because the VRA explicitly abrogated sovereign immunity. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017). Thus—and regardless of whether sovereign immunity applies to bar Plaintiffs-Appellees' constitutional claims—sovereign immunity has no bearing on Plaintiffs-Appellees' VRA claims. Concerning these VRA claims, Ogg has no likelihood of succeeding on the merits of a sovereign immunity defense, and

---

[1] The other factors are "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding" and "(4) where the public interest lies." *Richardson*, 978 F.3d at 228.

000030

Case 5:21-cv-00844-XR   Document 638-2   Filed 06/23/23   Page 31 of 68

Case 5:21-cv-00844-XR   Document 466   Filed 10/07/22   Page 5 of 6
Case: 22-50732     Document: 00516500366     Page: 5     Date Filed: 10/07/2022

No. 22-50732

she suffers no irreparable harm when we deny her sovereign immunity protections that precedent precludes us from granting.[2] She thus cannot meet the required showing to justify a stay on discovery proceedings stemming from any VRA claims.[3] We acknowledge that the scope of such discovery proceedings may substantially overlap with the scope of discovery arising under Plaintiffs-Appellees' constitutional claims. Nevertheless, Ogg has not shown the factors required to stay discovery arising out of the VRA claims, and we thus decline to broadly stay *all* discovery proceedings.

With respect to the VRA claims, Ogg only restates arguments from her initial motion to dismiss in district court, namely (1) these VRA claims are not specifically pleaded as to Ogg and (2) Ogg can show she is likely to succeed on the merits of her argument that Plaintiffs-Appellees lack standing to bring their VRA claims. We are unpersuaded for two reasons. First, we note the district court has not yet rendered a final judgment in the underlying suit. Accordingly, we decline Ogg's invitation to prematurely review these pleading and standing arguments at the motions stage of an interlocutory appeal concerning a wholly separate sovereign immunity issue. Second, even if Ogg is correct on the merits, these arguments cannot justify a stay. Assuming *arguendo* that Plaintiffs-Appellees' VRA claims are deficient in the ways Ogg suggests, she still has not articulated any theory of *irreparable* harm arising from being subjected to discovery requests related to these purportedly deficient VRA claims. Absent this showing of irreparable harm,

---

[2] For completeness, we note that the other two factors also likely weigh against issuance of a stay based on an inapplicable defense; issuing a stay would contravene clear precedent, which is likely to injure other parties and is not in the public interest.

[3] Similarly, given the clarity of the VRA's abrogation of sovereign immunity, there is no "serious legal question. . . involved," *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981), here that could justify a lower threshold for Ogg's showing a likelihood of success. Even if she could show a "serious legal question," she does not show how *sovereign immunity* could bar the VRA claims and thus has not shown a likelihood of success.

000031

No. 22-50732

we decline to grant the extraordinary request of a stay on otherwise proper discovery proceedings arising out of Plaintiffs-Appellees' VRA claims.

IT IS ORDERED that the Appellant Kim Ogg's opposed motion to stay all further discovery and related proceedings against her or her office in the district court, pending this Court's resolution of her interlocutory appeal of the denial of Ogg's motion to dismiss based on the legal defense of sovereign immunity, is DENIED.

000032

# EXHIBIT D

000033

Page 1

```
          IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF TEXAS
                  SAN ANTONIO DIVISION
LA UNIÓN DEL PUEBLO ENTERO,  )
ET AL.,                      )
          Plaintiffs,        )
                             )
vs.                          ) Case No. 5:21-CV-844-XR
                             )
GREGORY W. ABBOTT, ET AL.,   )
          Defendants.        )
_____
OCA-GREATER HOUSTON, ET AL., )
          Plaintiffs,        )
                             )
vs.                          ) Case No. 1:21-CV-780-XR
                             )
JOHN SCOTT, ET AL.,          )
          Defendants.        )

_____
HOUSTON AREA URBAN LEAGUE, ET )
AL.,                          )
          Plaintiffs,        )
                             )
vs.                          ) Case No. 5:21-CV-848-XR
                             )
GREGORY WAYNE ABBOTT, ET AL., )
          Defendants.        )
_____
LULAC TEXAS, ET AL.,         )
          Plaintiffs,        )
                             )
vs.                          ) Case No. 1:21-CV-0786-XR
                             )
JOHN SCOTT, ET AL.,          )
          Defendants.        )


Job No. 824263
```

MAGNA LEGAL SERVICES
866.624.6221
www.MagnaLS.com



Page 2

```
 1                    (CASE NAMES CONT'D)

 2   _____

 3
     MI FAMILIA VOTA, ET AL.,      )
 4           Plaintiffs,           )
                                   )
 5   vs.                           ) Case No. 5:21-CV-0920-XR
                                   )
 6   GREG ABBOTT, ET AL.,          )
             Defendants            )
 7   _____

 8

 9

10

11   ***************************************************

12        ORAL AND VIDEO-RECORDED DEPOSITION OF

13                  RAY SHACKELFORD

14                  April 29, 2022

15   ***************************************************

16       ORAL AND VIDEO-RECORDED DEPOSITION OF RAY SHACKELFORD,
     produced as a witness at the instance of the State of
17   Texas Defendants and duly sworn, was taken in the
     above-styled and numbered cause on Friday, April 29, 2022,
18   from 10:08 a.m. to 5:22 p.m., before JAMES M. PLAIR,
     Certified Shorthand Reporter in and for the State of
19   Texas, reported by computerized stenotype machine at the
     offices of REED SMITH, L.L.P., 811 Main Street, Suite
20   1700, Houston, Texas 77002-6110, pursuant to the Federal
     Rules of Civil Procedure and the provisions stated on the
21   record or attached hereto.

22

23

24

25
```



Page 3

```
 1                       APPEARANCES

 2

 3   REPRESENTING PLAINTIFF HOUSTON AREA URBAN LEAGUE:

 4   Mr. Victor Genecin
     NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
 5   40 Rector Street, Fifth Floor
     New York, New York 10006
 6   212.965.2200 Telephone
     212.226.7592 Fax
 7   VGenecin@naacpldf.org Email

 8           and

 9   Mr. Kenneth E. Broughton
     REED SMITH, L.L.P.
10   811 Main Street, Suite 1700
     Houston, Texas 77002-6110
11   713.469.3800 Telephone
     713.469.3899 Fax
12   KBroughton@ReedSmith.com Email

13   REPRESENTING DEFENDANTS GREGORY WAYNE ABBOTT, ET AL.:

14   Mr. Jack DiSorbo
     OFFICE OF THE ATTORNEY GENERAL
15   P.O. Box 12548 (MC-009)
     Austin, Texas 78711-2548
16   512.463.2100 Telephone
     512.457.4410 Fax
17   Jack.DiSorbo@oag.texas.gov Email

18
     ALSO PRESENT:
19   Mr. Judson W. Robinson, III (Via Zoom Videoconferencing)
     President of Houston Area Urban League
20
     THE REPORTER:
21   Mr. James Plair

22   THE VIDEOGRAPHER:
     Mr. Terry Harrison
23

24

25
```



Page 21

1    advocacy.

2                  I work with Mr. Robinson, uh, to advise

3    HAUL, as it relates to those matters and also reviewing

4    different policies that could either be beneficial to the

5    community that we serve or could be harmful.

6                  Uhm, what else?

7                  Also working with, uh, the other members of

8    the staff.  So I'm actually a consultant.  And so we have

9    full-time staff.  I work with them at times, to educate

10   them, uh, on items like SB 1, uh, because there are

11   instances where we also have to take away from their time,

12   to train them on the changes to SB 1, so they can educate

13   our clients that come to those other programmatic areas.

14   So it's a diversion of their time, those resources.

15                 Uhm, what else?

16                 I've trained our volunteers, when it comes

17   to, uh, canvassing efforts, going out into the community,

18   to let people know when an election is going on, to go out

19   and, you know, help register people to vote.

20                 Uh, also working with Mr. Robinson and our

21   Board Chair around radio campaigns, around Get Out The

22   Vote.  Uh, again, we had to do that as recent as last

23   fall.  Uhm, that was not something that was planned but,

24   again, in response to SB 1, we had to divert our time and

25   resources, to put something together, to make sure that



Page 148

1    picking phrases out of, uh, out of a paragraph.

2              Uhm, the phrase you picked out has a clear

3    predicate here, uhm, so maybe you want to focus on that.

4    Uhm, I'm just suggesting that -- that if you want to

5    understand the particular phrase, it -- it -- it was

6    stated in context.

7              MR. DiSORBO:  Okay.  And I guess the reason

8    I didn't read the whole antecedent is it's very long

9    and -- and I think it would have been hard to apply it to

10   just one or the other, but I understand what you're

11   saying.

12        Q.    (BY MR. DiSORBO) Uhm, have you stopped -- Has

13   HAUL stopped doing any activities since the passage of

14   SB 1?

15        A.    And you're talking about across the entire

16   organization?

17        Q.    Uh, yes.

18        A.    Things have been scaled back as a result of the

19   passage of SB 1.  I don't --

20        Q.    Which things?

21        A.    So I think I have mentioned a few times

22   specifically my activities and what I was originally

23   brought in to -- to take care of have been impacted.

24              So when I was brought on initially, uhm, it

25   was actually in conjunction with Houston in Action and the



1   census project, uhm, so this was in August of 2019.

2              Uhm, fast forward to, uhm -- What is it?

3   I'm trying to think of my timelines now.

4              So in the legislative session, 2021, at

5   this point, obviously, the census is over; uhm, I'm

6   supposed to be focusing more on educating the community

7   around redistricting, even though there was some issues

8   with the State when it came to that, gerrymandering, uhm,

9   as we have been accused and convicted of in years past, so

10  that happening again.

11             Uhm, but that was one of the things I was

12  educating the community on.  Uh, in addition to the

13  general advocacy classes, uhm, some of the monthly

14  activations, they have had to now shift to focus on SB 1,

15  when that was not initially a part of the planning.

16             So, typically, how it goes is myself,

17  Mr. Robinson, uhm, and Eric Goodie, our Area

18  Vice-President will say, "Okay.  Hey, this spring, these

19  are the things we want to focus on, uhm, but because of

20  SB I, some of those things have to be put on hold because

21  we have to continue to focus on voting rights."

22             Uhm, and so it does take away time from,

23  for example, us just doing voter registration.  Instead of

24  registering more voters, we are having to also take time

25  to educate people on SB 1, and I think it's important to



Page 150

1   note that, you know, just because we have been educating
2   them about the potential harm and have start to do it
3   about the harm that it causes now, it doesn't stop,
4   because there is constantly people moving to the Houston
5   area; so there is more people to continue to educate.
6           We are one of the -- You know, as a native
7   Houstonian, you know, part of me doesn't want a whole
8   bunch people moving to the city; I feel like we're full,
9   but the reality is that people keep coming here, and so as
10  they continue to move here, we have to continue to educate
11  those people, uh, and you and I both know, because we are,
12  you know, both educated, you can't just tell somebody
13  something once and they are just going to know it; and so
14  it takes a lot of repetition.
15          And so because of that, uhm, it's pulled
16  away from my activities that I was initially brought it to
17  handle.  I mentioned it's pulled away from those Family
18  and Community Engagement activities through our Education
19  Department.
20          Uhm, in some instances, it will pull away
21  from our Housing Department, some of the activities they
22  would facilitate, uhm, when it comes to counseling, when
23  it comes to, uhm, some of the tabling events they would be
24  doing, because we now have to spend additional time and
25  energy, but also for me to train the other staff on what



1    SB 1 is.

2              So it's not just me training the community;

3    uhm, I have to train them; and even, you know, for myself,

4    you know, I'm pretty smart.  I don't know everything and I

5    have to continue to read through these things and

6    understand them.

7              So there is a lot of, uhm, time, resources

8    that gets -- has and will continue to get used on this,

9    and, like I said, Mr. Robinson has started to look at now

10   hiring somebody full-time that all they do is voting, uhm,

11   and that's not something we have funding for, so he has to

12   go out and find that money.

13      Q.   So I want to talk more about the monthly

14   activations in a second, but let's talk about

15   redistricting first.

16              Uhm -- So when you were originally brought

17   on, you were focusing on Houston in Action and census

18   activities.

19              Is that right?

20      A.   That's correct.

21      Q.   Uhm, and then the plan was for you to transition

22   to focusing on redistricting.

23              Is that correct?

24      A.   That is correct.

25      Q.   Uh, was HAUL planning on taking legal action



Page 277

1   STATE OF TEXAS

2   COUNTY OF HARRIS

3        I, JAMES M.PLAIR, a Certified Shorthand Reporter in

4   and for the State of Texas, do hereby certify that,

5   pursuant to the notice issued and the agreement

6   hereinbefore set forth, there came before me on the 29th

7   day of April, A.D., 2022, at 10:08 a.m., at the offices of

8   REED SMITH, L.L.P., 811 Main Street, Suite 1700, Houston,

9   Texas 77002-6110, the following named person, to-wit:  RAY

10  SHACKELFORD, who was by me duly cautioned and sworn to

11  testify the truth, the whole truth, and nothing but the

12  truth of his knowledge touching and concerning the matters

13  in controversy in this cause; and that he was thereupon

14  carefully examined upon his oath and his examination

15  reduced to typewriting under my supervision; that the

16  deposition is a true record of the testimony given by the

17  witness; that the witness has requested a review pursuant

18  to Rule 30(e)(2), same to be sworn to, and subscribed, by

19  said witness before any Notary Public, pursuant to the

20  agreement of the parties.

21       I further certify that I am neither attorney nor

22  counsel for, nor related to or employed by, any of the

23  parties to the action in which this deposition is taken;

24  and further that I am not a relative or employee of any

25  attorney or counsel employed by the parties hereto, or



Page 278

1    financially interested in the action.

2        I further certify that the amount of time used by

3    each counsel at the time of the deposition is as follows:

4

         Mr. Victor Genecin -(00:00:00)
5            Attorney for PLAINTIFF HOUSTON AREA URBAN LEAGUE
         Mr. Jack DiSorbo   -(06:36:17)
6            Attorney for DEFENDANTS GREGORY WAYNE ABBOTT, ET
             AL.

7

8        GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the

9    3rd day of May, A.D., 2022.

10

11

12

13

14

15    _____
      JAMES M. PLAIR, CSR
16    Texas CSR 4409
      Expiration:  12-31-2022
17    MAGNA LEGAL SERVICES
      700 Milam, Suite 1300
18    Houston, Texas 77002
      832.871.5100 Phone
19    713.353.4601 Fax

20

21

22

23

24

25



# EXHIBIT E

000044

Transcript of the Testimony of



**Jennifer Martinez**

**Date:**

April 12, 2022

**Case:**

LA UNION DEL PUEBLO ENTERO vs GREGORY W. ABBOTT

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO          )
     ENTERO, et al,              )
 4                               )
               Plaintiffs,       )
 5                               ) CIVIL ACTION
     VS.                         )
 6                               ) NO.: 5:21-cv-844-XR
     GREGORY W. ABBOTT, et al,   )
 7                               )
               Defendants.       )
 8                               )

 9        ------------------------------------

10        ORAL AND VIDEOTAPED DEPOSITION OF

11                 JENNIFER MARTINEZ

12                 APRIL 12, 2022

13        ------------------------------------

14        ORAL AND VIDEOTAPED DEPOSITION OF JENNIFER

15   MARTINEZ, produced as a witness at the instance of the

16   DEFENDANTS, and duly sworn, was taken in the

17   above-styled and numbered cause on April 12, 2022, from

18   10:12 a.m. to 1:46 p.m. before Miah Parson, CSR in and

19   for the State of Texas, reported by oral stenography, at

20   the law offices of Reed Smith LLP, 401 Congress Avenue,

21   Suite 1800, Austin, Texas 78701, pursuant to the Federal

22   Rules of Civil Procedure and the provisions stated on

23   the record or attached hereto.

24

25
```

 1  Otherwise, I'd prefer that you not instruct the witness

 2  on how she should answer things.

 3              MS. LOPEZ:  That's fine.

 4      A.  We -- we contend that the voter assistance

 5  issue would impact Ms. Litzinger.  There is a chilling

 6  effect on folks who are looking to support folks with

 7  disabilities.  If they are asked to sign a form that

 8  says that they are -- could be criminally prosecuted for

 9  helping a person erroneously.  There's also not the

10  opportunity for her to be fully supported.  I don't know

11  what Ms. Litzinger needs, but it could be additional

12  support, cueing, navigating the poling place,

13  translation services.  Any of those that the Arc of

14  Texas is concerned that would be limited in how she is

15  supported and her assister would be likely to assist her

16  in voting because of their concern about filling out a

17  form that could have criminal penalties.

18      Q.  Do you know whether Ms. Litzinger voted in

19  person in the March 22nd primary?

20      A.  I do not.

21      Q.  Do you know whether Ms. Litzinger voted at all

22  in the March 22 primary?

23      A.  I do not.

24      Q.  Do you know whether Ms. Litzinger has ever

25  voted in an election?

 1      Q.  Now, the problem as I understand you're saying

 2  is, Arc of Texas contends that it added a criminal

 3  penalty; is that right?

 4      A.  Correct.

 5      Q.  Okay.  Has Arc of Texas heard from any assister

 6  that they can identify at this deposition today, who has

 7  declined to provide assistance in voting on account of

 8  Senate Bill 1?

 9      A.  Again, we don't do individual we do systems

10  work so I do not have any information on an assister.

11      Q.  What is Arc of Texas' factual contention for

12  how Section 6.04 harms Ms. Litzinger?

13      A.  We believe that there is a barrier being placed

14  in front of our members that requires them to have a

15  limited set of supports that are available to them that

16  does not include cueing, navigating, translation, and a

17  myriad of other supports that a unique person with a

18  disability may need to vote successfully in Texas.  In

19  addition to that, requiring folks to sign a oath that

20  could end in criminal penalty is an additional burden

21  for Texans with disabilities to vote.

22      Q.  You talked earlier this morning about the

23  criminal justice system as regard to people with IDD,

24  right?

25      A.  Yes.

1  developmental disabilities?

2      A.  Without the appropriate supports that's a

3  possibility.

4      Q.  Let's move onto Section 6.05 which is at

5  Page 53.  What is the Arc of Texas' factual contention

6  for how Ms. Litzinger is harmed by Section 6.05?

7      A.  We believe that a barrier is placed in front of

8  anybody with a disability who is looking to vote when

9  there is a criminal penalty for filling out a form

10  incorrectly that's a concern and is a barrier in our

11  minds.

12      Q.  You understand that Section 6.05 applies to a

13  person who assists not the person voting, right?

14      A.  Correct.

15      Q.  So I guess what I'm trying to get at is, what

16  is the factual contention about how this impacts the

17  person with the disability?

18      A.  The person with the disability could be

19  impacted by an assister because they are concerned about

20  a criminal penalty.  Not receiving the appropriate

21  supports and assistance that they need to successfully

22  vote.

23      Q.  Does Arc of Texas have any examples that you

24  can give me today of an assister who has declined to

25  provide assistance on account of criminal penalties in

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3   LA UNION DEL PUEBLO          )
    ENTERO, et al,               )
4                                )
                 Plaintiffs,     )
5                                ) CIVIL ACTION
    VS.                          )
6                                ) NO.: 5:21-cv-844-XR
                                 )
7   GREGORY W. ABBOTT, et al,    )
                                 )
8                Defendants.     )
                                 )
9

10               REPORTER'S CERTIFICATION

11   ORAL AND VIDEOTAPED DEPOSITION OF JENNIFER MARTINEZ

12                    APRIL 12, 2022

13

14       I, Miah Parson, CSR, Certified Shorthand Reporter

15   in and for the State of Texas, hereby certify to the

16   following:

17       That the witness, JENNIFER MARTINEZ, was duly sworn

18   by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21       I further certify that pursuant to FRCP Rule

22   30(f)(1) that the signature of the deponent:

23    _X_ was requested by the deponent or a party before the

24   completion of the deposition and that the signature is

25   to be before any notary public and returned within 30
```

Jennifer Martinez                                          April 12, 2022
                                                              Page 130

 1   days from the date of receipt of the transcript.  If

 2   returned, the attached Changes and Signature Page

 3   contains any changes and the reasons therefor;

 4         ___ was not requested by the deponent or a party

 5   before the completion of the deposition.

 6         I further certify that I am neither counsel for,

 7   related to, nor employed by any of the parties or

 8   attorneys in this action in which this proceeding was

 9   taken, and further that I am not financially or

10   otherwise interested in the outcome of the action.

11         Certified to by me this 27th day of April, 2022.

12

13

14                        _____

15                        Miah Parson, CSR No. 11773
                          Expiration Date:  02/28/2023
16                        Firm Registration No. 633
                          Magna Legal Services
17                        16414 San Pedro, Suite 900
                          San Antonio, Texas 78232
18                        Phone 210-697-3400
                          Fax 210-697-3408

19

20

21

22

23

24

25

# EXHIBIT F

000052

Transcript of the Testimony of

**Michelle  Brown**

**Date:**

April 23, 2022

**Case:**

LA UNION DEL PUEBLO ENTERO vs GREGORY W. ABBOTT

000053

Michelle Brown                                        April 23, 2022

```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3    LA UNIÓN DEL PUEBLO ENTERO,    *
      et al.,                        *
 4              Plaintiffs,          *
                                     *
 5    VS.                            *   Case No. 5:21-cv-844-XR
                                     *
 6    GREGORY W. ABBOTT, et al.,     *
                Defendants.          *
 7    _____  *
                                     *
 8    OCA-GREATER HOUSTON, et al.,   *
                Plaintiffs,          *
 9                                   *
      VS.                            *   Case No. 1:21-cv-780-XR
10                                   *
      JOHN SCOTT, et al.,            *
11              Defendants.          *
      _____  *
12                                   *
      DELTA SIGMA THETA, et al.,     *
13              Plaintiffs,          *
                                     *
14    VS.                            *   Case No. 5:21-cv-848-XR
                                     *
15    GREGORY W. ABBOTT, et al.,     *
                Defendants.          *
16    _____  *
                                     *
17    LULAC TEXAS, et al.,           *
                Plaintiffs,          *
18                                   *
      VS.                            *   Case No. 1:21-cv-0786-XR
19                                   *
      JOHN SCOTT, et al.,            *
20              Defendants.          *
      _____  *
21                                   *
      MI FAMILIA VOTA, et al.,       *
22              Plaintiffs,          *
                                     *
23    VS.                            *   Case No. 5:21-cv-0920-XR
                                     *
24    GREGORY ABBOTT, et al.,        *
                Defendants.          *
25    _____  *
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                  210-697-3408

**000054**

1

2

         **************************************************

3

             ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF

4                DELTA SIGMA THETA SORORITY, INC.,
            THROUGH ITS DESIGNATED REPRESENTATIVE,

5                       MICHELLE BROWN
                       APRIL 23, 2022

6

         **************************************************

7

8

9

10

11

12

13                  DEPOSITION of MICHELLE BROWN, produced

14    as a witness at the instance of the Defendants, and

15    duly sworn, was taken in the above-styled and

16    numbered cause on the 22nd day of April, 2022, from

17    10:08 a.m. to 4:08 p.m., before Christy R. Sievert,

18    CSR, RPR, in and for the State of Texas, reported by

19    machine shorthand, at the offices of Reed Smith,

20    LLP, 2850 N. Harwood Street, Suite 1500, Dallas,

21    Texas pursuant to the Mississippi Rules of Civil

22    Procedure and the provisions stated on the record or

23    attached hereto.

24

25

1    And now we're adding -- this -- this particular

2    section is adding additional burdens on those who

3    drive individuals to the polls by subjecting them to

4    have to complete the name and address and all of

5    this information, which they did not have to do in

6    the past.  If I'm just driving you to the poll and

7    dropping you off so that you can vote, we're not

8    understanding why this is -- this -- you know, this

9    added information is necessary.  It's just a burden

10   on the individuals.

11          Also, it means that for us, we're

12   having -- this is another part of the -- of the

13   retraining that we're going to have to do because

14   what's most concerning to us is that if they make a

15   mistake, if they don't list all of the people that

16   they have brought to the polls, that they're

17   subjected possibly to criminal penalties.  So we

18   want to make sure that our volunteers and our

19   members are safe when they are providing a service

20   to voters who otherwise would not be able to get to

21   the polls.

22      Q.   Okay.  And the -- but the oath -- do you --

23   are you familiar with what the oath forms say?

24      A.   Which oath -- what oath form are we talking

25   about?

1          A.    It could, if they were driving an SUV.

2          Q.    Okay.  And would there be some concern with

3     that person basically signing an oath saying that

4     they didn't provide any unlawful assistance?

5          A.    Well, the issue is because this is so new

6     and this is not something that's been done before,

7     if they make a minor mistake, then they are

8     subjected to criminal penalties, and that's what

9     we're concerned about.

10         Q.    Okay.  And what -- what kinds of mistakes

11    would you call minor that are the concern?

12         A.    Perhaps go drop a group off, fill out

13    the -- the names and what -- and forget one of the

14    persons that they had transported or something like

15    that.  We don't know.  It's just burdensome to know

16    that this is something that our volunteers and our

17    members are going to have to be subjected to.

18         Q.    Has -- has Delta Sigma Theta, have they --

19    have they expended funds as a result of this

20    provision?

21         A.    Absolutely, in re-educating the members so

22    that they understand what the obligations are and

23    what the penalties are in terms of not following

24    this new provision.  We want them to understand so

25    that they -- we can mitigate the possibility of any

1    criminal penalties against any of our members or

2    volunteers.

3         Q.    Okay.  Like the other provisions that we

4    have talked about, are you slotting those

5    educational programs into existing educational

6    programs?

7         A.    No, these are new educational programs

8    because these are new provisions.  This is a new

9    law.

10        Q.    So they're within the same -- you said that

11   there were existing educational programs and that --

12        A.    We're having to -- sorry.

13        Q.    -- these would be brought -- and that these

14   would be brought up in the course of those on the

15   previous provisions.  Are you -- are you now saying

16   that there are additional educational programs that

17   have to be created in terms of --

18        A.    Absolutely.  There are several chapters who

19   have created educational webinars specifically --

20   specifically geared towards SB1.  In fact, I can

21   think of one, the Houston alumnae chapter is doing a

22   program called "Navigating SB1 In the Election

23   Process," or something like that.

24             So it's specifically to that, which is

25   educating our community, our members, and our

1   earlier your educational activities, the application

2   process that your organization engages in.  What

3   other voting activities does Delta Sigma Theta

4   perform other than those that we talked about?

5        A.   I think we've talked about most things.  We

6   provide, of course, the voter education.  We provide

7   the forums, candidate forums so that the voters can

8   be knowledgeable what the candidates stand for.  We

9   provide webinars on how, when, where to vote.

10  Webinars -- we provided webinars on the full scope

11  of SB1 and how it affects them.  We've provided

12  transportation to the polls.  And we've provided

13  training to our members on how to volunteer with --

14  since SB1 on how to volunteer with our communities,

15  ensuring that they know the full scope of SB1 so

16  that they can also convey that information to them

17  and do it safely so that they're not subjected to

18  criminal penalties.

19       Q.   And do you believe those have been

20  effective, your training programs?

21       A.   They have been what?

22       Q.   They have been effective.

23       A.   We hope so, yes.

24       Q.   All right.  Now, I want to ask about any

25  other partner organizations related to voting.  Now,

```
 1              REPORTER'S CERTIFICATION
            DEPOSITION OF MICHELLE BROWN
 2                 APRIL 22, 2022

 3              I, CHRISTY R. SIEVERT, CSR, RPR, in

 4     and for the State of Texas, hereby certify to the

 5     following:

 6              That the witness, MICHELLE BROWN, was duly

 7     sworn by the officer and that the transcript of the

 8     oral deposition is a true record of the testimony

 9     given by the witness;

10              I further certify that the signature of

11     the deponent was requested by the deponent or a

12     party and is to be returned within 30 days from date

13     of receipt of the transcript.  If returned, the

14     attached Changes and Signature Page contains any

15     changes and the reasons therefor;

16              I further certify that I am neither

17     counsel for, related to, nor employed by any of the

18     parties or attorneys in the action in which this

19     proceeding was taken, and further that I am not

20     financially or otherwise interested in the outcome

21     of the action.

22     /////

23     /////

24     /////

25     /////
```

Michelle Brown                                                April 23, 2022
                                                              Page 219

1          Subscribed and sworn to on this the 26th

2     day of April, 2022.

3

4

5                              _____

6                              CHRISTY R. SIEVERT, CSR, RPR
                               Texas CSR 8172
7                              Expiration Date:  4-30-2023

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT G

000062

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
               SAN ANTONIO DIVISION
LA UNION DEL PUEBLO         §
ENTERO, et al.,            §
                           §
     Plaintiffs,           §
                           §
vs.                        § CASE NO. 5:21-cv-844-XR
                           §
GREGORY W. ABBOTT, et      §
al.,                       §
                           §
     Defendants.           §
_____

OCA-GREATER HOUSTON, et    §
al.,                       §
                           §
     Plaintiffs,           §
                           §
vs.                        § CASE NO.1:21-cv-780-XR
                           §
JOHN SCOTT, et al.,        §
                           §
     Defendants.           §
_____

HOUSTON JUSTICE, et al.,   §
                           §
     Plaintiffs,           §
                           §
vs.                        § CASE NO.5:21-cv-848-XR
                           §
GREGORY WAYNE ABBOTT, et   §
al.,                       §
                           §
     Defendants.           §
_____
```



000063

Page 2

LULAC TEXAS, et al.,      §
                         §
    Plaintiffs,          §
                         §
vs.                      §  CASE NO. 1:21-cv-0786-XR
                         §
JOHN SCOTT, et al.,      §
                         §
    Defendants.          §
_____

MI FAMILIA VOTA, et al., §
                         §
    Plaintiffs,          §
                         §
vs.                      §  CASE NO. 5:21-cv-0920-XR
                         §
GREG ABBOTT, et al.,     §
                         §
    Defendants.          §
_____

UNITED STATES OF AMERICA, §
                         §
    Plaintiff,           §
                         §
vs.                      §  CASE NO. 5:21-cv-1085-XR
                         §
THE STATE OF TEXAS, ET   §
AL.,                     §
                         §
    Defendants.          §
_____

ORAL VIDEOTAPED DEPOSITION
CORPORATE REPRESENTATIVE OF
MI FAMILIA VOTA
MS. ANGELICA RAZO
April 5, 2022

Page 3

ORAL VIDEOTAPED DEPOSITION OF THE CORPORATE
REPRESENTATIVE OF MI FAMILIA VOTA, MS. ANGELICA RAZO,
produced as a witness at the instance of the
Defendants and duly sworn, was taken in the
above-styled and numbered cause on the 5th day of
April, 2022, from 9:52 a.m. to 7:05 p.m., before
Michelle Hartman, Certified Shorthand Reporter in and
for the State of Texas and Registered Professional
Reporter, reported by computerized stenotype machine
at the offices of Reed Smith LLP, 811 Main Street,
Suite 1700, Houston, Texas 77002, pursuant to the
Federal Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

Page 4

```
 1              APPEARANCES
 2  FOR THE PLAINTIFFS MI FAMILIA VOTA, et al.:
 3      Mr. Bradley Prowant
        Ms. Wendy Olson (via Zoom)
 4  and Mr. Elijah Watkins (via Zoom)
        STOEL RIVES LLP
 5      33 South Sixth Street
        Suite 4200
 6      Minneapolis, Minnesota 55402
        Telephone: 612-373-8860
 7      E-mail: bradley.prowant@stoel.com
 8  FOR THE STATE DEFENDANTS:
 9      Mr. Eric A. Hudson
        OFFICE OF THE ATTORNEY GENERAL
10      P.O. Box 12548 (MC-009)
        Austin, Texas 78711
11      Telephone: 512-463-2100
        E-mail: eric.hudson@oag.texas.gov
12
13  FOR THE HAUL PLAINTIFFS:
14      Mr. Kenneth E. Broughton (via Zoom)
    and Ms. Sarah Stewart (Zoom)
15      REED SMITH LLP
        811 Main Street
16      Suite 1700
        Houston, Texas 77002
17      Telephone: 713-469-3819
        E-mail: kbroughton@reedsmith.com
18  FOR THE DEFENDANT HIDALGO COUNTY DISTRICT ATTORNEY
    RICARDO RODRIGUEZ, JR.:
19
        Ms. Jacqueline Villarreal (via Zoom)
20  and Mr. V.M. Garza
        HIDALGO COUNTY DISTRICT ATTORNEY'S OFFICE
21      100 E Cano St
        Edinburg, Texas 78539
22      Telephone: 956-292-7609
23
24
25
```

Page 5

```
 1          APPEARANCES (Cont.)
 2  FOR THE U.S. DEPARTMENT OF JUSTICE:
 3      Mr. Michael E. Stewart (via Zoom)
        U.S. Department of Justice
 4      JENNER & BLOCK LLP
        1099 New York Avenue NW
 5      Washington, D.C. 20001
        Telephone: 202-639-6000
 6
 7  ALSO PRESENT:
 8      Mr. Terry Harrison, videographer
 9      Ms. Amy Frieder, US DOJ (Zoom)
10      Mr. Camryn Pak, US DOJ (Zoom)
11      Ms. Courtney Hostetler, Free Speech For The
        People (Zoom)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2 (Pages 2 to 5)



Page 58

1  morning about mobilization, education and engagement,
2  you'd agree with that?
3      A.  Yes.
4      Q.  With regard to those three programs, I
5  understand those are the only voting programs that Mi
6  Familia Vota operates in Texas; is that right?
7      A.  Yes, with -- and including voter
8  registration and their engagement under those.
9      Q.  So with regard to those three programs,
10 how were they operated differently in advance of the
11 March primary as opposed to before the last primary
12 election?
13     A.  Before this March primaries, between
14 December and February, we spent excess of time
15 understanding the impact of S.B. 1, what we as an
16 organization had to be mindful of, and with the other
17 entities, what changed -- what practices other
18 entities such local officials had to change because
19 of S.B. 1.
20     Q.  So if I understand you correctly,
21 Mi Familia Vota had to spend time understanding
22 Senate Bill 1; is that right?
23     A.  Yes.
24     Q.  Aside from spending time understanding
25 Senate Bill 1, were there any changes to any

Page 59

1  practices by Mi Familia Vota on account of Senate
2  Bill 1?
3      A.  All of our trainings for volunteers had
4  to be updated to ensure that they were representing
5  the changes that came with S.B. 1, any presentations
6  regarding voter application had to be reviewed and
7  updated and any -- any social media posts that we had
8  or any public facing information also had to be
9  updated.
10     Q.  So Mi Familia Vota spent time, Mi
11 Familia Vota had to update things it had said and
12 training materials and on social media.  Is that it?
13     A.  Yes.  And all of our -- anything that
14 we ever talked about regarding the March primary
15 elections, we all had to be prepped and trained to
16 make sure that we knew the changes that were coming
17 with that, with S.B. 1.
18     Q.  So aside from updating, learning the
19 new laws, and spending time doing both of those
20 things, are there any differences in the way that Mi
21 Familia Vota operated prior to the March primary as
22 opposed to the last primary prior to Senate Bill 1?
23     A.  Yes.  There was more focus on training
24 and making sure we were in compliance for our
25 internal team members and our volunteers and less

Page 60

1  time dedicated to other activities for voter
2  mobilization that could have included block walking.
3      Q.  So what things did Mi Familia Vota not
4  do because you were spending time learning the new
5  law and updating materials?
6      A.  For example, we did not do candidate --
7  non-partisan candidate engagements, because we focus
8  on voter education.  We did not have volunteer run
9  block walking or fun baking, because we were focused
10 on voter education and our -- and running our online.
11     Q.  What was the first one you said, you
12 didn't do candidate engagement?
13     A.  Yes.
14     Q.  What is candidate engagement?
15     A.  For example, an event where you invite
16 all candidates of a particular race to come out and
17 meet with community members or a candidate forum.
18     Q.  I'll go back to that in a second, but I
19 guess let me -- are there specific block walking
20 activities that you did -- well, I guess let's set it
21 up like this:  What is the last primary that occurred
22 prior to the March 20, 2022 primary?
23     A.  The March -- the last time we had
24 accepted engagement with -- well, I would say 2021,
25 our Dallas office had municipal elections, so we did

Page 61

1  primary and then runoff elections for the municipal
2  elections in 2021.
3      Q.  What about in 2020?
4      A.  We focus on the March 2020 primaries.
5      Q.  Would the March 2020 primaries be more
6  akin to the March to '22 primaries than the Dallas
7  municipal elections?
8      A.  Yes.
9      Q.  So let's talk about March 2020 as
10 compared to March 2022.  Can you identify any
11 specific block walking activities that occurred in
12 March of 2020 that did not occur in March 2022
13 specifically because of the passage of Senate Bill 1?
14     A.  No.
15     Q.  The same question, but for phone
16 banking, can you think of any specific phone bank
17 activities that didn't occur in March of 2022 that
18 occurred in March of '20 on account of Senate Bill 1?
19     A.  No.
20     Q.  Can you think of any particular
21 candidate engagement that occurred in March of 2020
22 that didn't occur in March of 2022 --
23     A.  Yes.
24     Q.  -- on account of Senate Bill 1?
25     A.  Yes.

16  (Pages 58 to 61)



1  correctly, the complaint that Mi Familia Vota has
2  about Section 6.05 is that you feel that providing
3  the relationship of a person, whether they received
4  compensation, is unnecessary?
5       A.  Yes.
6       Q.  Are there any other reasons why
7  Mi Familia Vota factually believes that Section 6.05
8  violates the 1st and 14th Amendments to the United
9  States Constitution?
10      MR. PROWANT:  Objection:  Form.
11      THE WITNESS:  Can you repeat the
12  question?
13      Q.  (BY MR. HUDSON)  Sure.  Aside from
14  deeming it unnecessary, is there any other reason
15  factually that Mi Familia Vota believes Section 6.05
16  violates the 1st and 14th Amendments to the United
17  States Constitution?
18      A.  No.
19      Q.  For all the provisions that we have
20  talked about so far today, the discussion that we had
21  about comparing Latinos to other racial groups in
22  Texas, is it true that on any of these provisions
23  that we have discussed today, Mi Familia Vota has not
24  compared Latinos to other racial groups in Texas?
25      A.  We have not done that.

1       Q.  You would also agree with me that of
2  all the provisions we've looked at so far today, none
3  of them explicitly mentions race of any kind, right?
4       A.  Can you repeat the question?
5       Q.  You would agree with me that of all the
6  provisions that we have looked at today, none of them
7  explicitly mentions race?
8       A.  That is correct.
9       Q.  None of the provisions that we looked
10 at so far today explicitly mentions Latino?
11      A.  That is correct.
12      Q.  None of the provisions that we looked
13 at today explicitly mentions African-American or
14 Black Texans?
15      A.  That's correct.
16      Q.  And none of the provisions that we have
17 looked at today explicitly references any racial
18 group at all?
19      A.  That's correct.
20      Q.  Let's go ahead and move on to
21 Section 6.07, which is at page 62 of Defendant's 2.
22 Go ahead and take a look at that and let me know when
23 you're ready to discuss.
24      A.  Ready.
25      Q.  What is Mi Familia Vota's factual basis

1  for asserting that Section 6.07 violates the 1st and
2  14th Amendments to the United States Constitution?
3       MR. PROWANT:  Objection:  Form.
4       THE WITNESS:  It creates an additional
5  step and again creates a possibility for the ballot
6  being rejected or the voter having to cure it for
7  whatever reason that the verification committee or
8  the county might find.
9       Q.  (BY MR. HUDSON)  So the only thing that
10 Section 6.07 adds is, it requires a person giving
11 assistance to identify the relationship to the person
12 that they're assisting, right?
13      A.  Yes.
14      Q.  So that's not a requirement on the
15 voter, right?
16      A.  That's correct.
17      Q.  And that only applies to vote by mail,
18 right?
19      A.  Yes.
20      Q.  What step does it add for the voter?
21      A.  If -- I think that there's just a
22 possibility that once that ballot is submitted, if
23 somebody has -- if the county person who's reviewing
24 the ballot has a question, that they might end up
25 following up with the voter.

1       Q.  Let me ask you this:  We talked earlier
2  today about vote harvesting, do you remember that?
3       A.  Uh-huh, yes.
4       Q.  Let's say a person in a nursing home is
5  a nurse, and she gets paid by somebody to go around
6  and gather voter registrations from everybody in the
7  nursing home, do you think that that nurse should be
8  allowed to not identify her relationship to the
9  people she's gathering registrations from?
10      A.  Can you say that again?
11      Q.  Sure.
12      A.  Give me that example again.
13      Q.  Sure.  A nurse in a nursing home
14 gathers voter registrations from people in the
15 nursing home, so everybody in there, helps them fill
16 them out.  Do you think that that nurse should be
17 allowed to not identify her relationship to the
18 people she's gathering registrations from?
19      A.  I can't speak to that example.  It's a
20 concern around voter harvesting.
21      Q.  Well, I think it is.  And so my
22 question to you is:  Would you see that as a problem?
23      A.  Our focus at Mi Familia Vota is to
24 ensure that the voting process and the people that
25 are assisting folks throughout the voting process

47 (Pages 182 to 185)



000066

Page 186

1    don't feel like they cannot help someone because they
2    have to give an identity or put down their name or
3    their relationship, that they get confused, tripped
4    up, accidentally put down something wrong.
5        Q.  I understood you to say earlier that
6    Mi Familia Vota pays people who as part of their job,
7    also bring in registrations; is that right?
8        A.  Correct.
9        Q.  Does Mi Familia Vota have a problem
10   with their employees identifying their relationship
11   to the people that they're assisting?
12       A.  Say that one more time.
13       Q.  Does Mi Familia Vota have a problem
14   with their employees identifying their relationship
15   to the person that they're assisting?
16       A.  Can you give me an example?
17       Q.  Sure.  I guess let's say one of your
18   employees, who as part of their job is gathering a
19   registration from someone, does Mi Familia Vota have
20   a problem with that employee writing down on the
21   carrier envelope, I'm an employee of Mi Familia Vota
22   assisting at the request of the person?
23       A.  The folks that are within our staff
24   that support voter registration, are voter -- like
25   voter -- deputy voter volunteer registrars, and so

Page 187

1    they already have a code associated with the person
2    that they assist with voter registration.  So there
3    is no need for people at Mi Familia Vota having to
4    take that additional step.
5        Q.  Wonderful.  So there's already a system
6    in place for volunteer deputy registrars, right?
7        A.  Yes.
8        Q.  And that's coded on the envelope of
9    their relationship to the person that they're
10   assisting, right?
11       A.  As a -- as a VDR.
12       Q.  Why wouldn't we want to use that same
13   successful system for everybody?
14       A.  For a vote by mail process?
15       Q.  Well, I understood you to just say the
16   VDRs already do it?
17       A.  Yes.
18       Q.  Yes.
19       A.  That's the system that we currently
20   have in Texas.  I'm not saying that that's a perfect
21   system.
22       Q.  Did you have that system before Senate
23   Bill 1?
24       A.  Yes.
25       Q.  You didn't challenge that as

Page 188

1    unConstitutional, did you?
2        A.  Our current voter registration system?
3        Q.  The VDR requirement that you just
4    described?
5        A.  No.
6        Q.  Okay.  If it works for VDRs, why can't
7    it work for everyone?
8        A.  There is a lot of state resource,
9    county resources and organizational resources that go
10   into making that system work as it should.
11       Q.  And it works, right?
12       A.  Yes.
13       Q.  Okay.  So if it works, why can't we
14   scale it up and apply it to everyone?  What's
15   unConstitutional about that?
16       A.  Mi Familia Vota does not see that as a
17   priority right now in order to increase Latino voter
18   engagement.
19       Q.  So you have a policy difference with
20   it?
21       A.  I think if we're programmatically,
22   not in -- in going into our operations, we would
23   prioritize other forms of voter engagement,
24   mobilization and education.
25       Q.  In other words, if Mi Familia Vota

Page 189

1    wasn't charged, you would do it differently?
2        A.  I don't think I can speak to that at
3    the moment.
4        Q.  Why not?
5        A.  I'm hesitant to make speculations on
6    what decisions I would make to re -- to re -- to
7    change our voting system without actually having
8    factual evidence.
9        Q.  As for 6.07, I'll ask you the same
10   questions I asked you earlier, as for 6.07, there has
11   been no comparison by Mi Familia Vota of the effect
12   of indicating a relationship on Latino voters as
13   opposed to any other race in Texas, right?
14       A.  Correct.
15       Q.  And again, section 6.07 doesn't
16   explicitly mention race in any shape or form?
17       A.  Correct.
18       Q.  And that's true of any race?
19       A.  Correct.
20           MR. HUDSON:  Do you want to take a
21   break?
22           MR. PROWANT:  That's fine.
23           MR. HUDSON:  Off the record.
24           THE VIDEOGRAPHER:  Off the record.
25   The time's 3:57.



000067

Page 278

```
 1        CHANGES AND SIGNATURE
 2   PAGE LINE  CHANGE        REASON
 3   _____
 4   _____
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

Page 279

```
 1
 2
 3
 4
 5
 6
 7        I declare under penalty of perjury that the
 8   foregoing is true and correct.
 9
10   _____
11             MS. ANGELICA RAZO
12
13
14        SUBSCRIBED AND SWORN TO BEFORE ME, the
15   undersigned authority, by the witness, MS. ANGELICA
16   RAZO, on this the _____ day of
17   _____, 2022.
18
19
20   _____
21   NOTARY PUBLIC IN AND FOR
22   THE STATE OF _____
23   My Commission Expires: _____
24
25
```

Page 280

```
 1   STATE OF TEXAS
 2   COUNTY OF HARRIS
 3
 4        REPORTER'S CERTIFICATE
 5      ORAL VIDEOTAPED DEPOSITION OF
 6           MS. ANGELICA RAZO
 7              April 5, 2022
 8
 9        I, Michelle Hartman, the undersigned
10   Certified Shorthand Reporter in and for the State of
11   Texas and Registered Professional Reporter, certify
12   that the facts stated in the foregoing pages are true
13   and correct.
14        I further certify that I am neither
15   attorney or counsel for, related to, nor employed by
16   any parties to the action in which this testimony is
17   taken and, further, that I am not a relative or
18   employee of any counsel employed by the parties
19   hereto or financially interested in the action.
20        That the deposition transcript was duly
21   submitted on _____ to the witness or to
22   the attorney for the witness for examination,
23   signature, and returned to me by _____.
24
25
```

Page 281

```
 1        SUBSCRIBED AND SWORN TO under my hand and
 2   seal of office on this _____ day of April, 2022,
 3
 4
 5
 6   _____
     Michelle Hartman, CSR, RPR
 7   Texas CSR 7093
     Expiration: 12/31/23
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



MAGNA
LEGAL SERVICES

000068