EXHIBIT H

000069

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al.,<br>*Plaintiffs,*<br>     v.<br><br>GREGORY W. ABBOTT, et al.,<br>*Defendants.* | 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, et al.,<br>*Plaintiffs,*<br>     v.<br><br>JANE NELSON, et al.,<br>*Defendants.* | 1:21-CV-0780-XR |

## OCA PLAINTIFFS' APPENDIX IN SUPPORT OF THEIR RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

1. LWVTX 30(b)(6) Deposition of Grace Chimene ……………………………………...4
2. Supplemental Declaration of Joyce LeBombard ……………………………………37
3. LWVTX Social Media Post Regarding Criminal Penalties for Assistants ………...42
4. Email Regarding LWVTX Mail-Voting Assistance in Potter County …………….49
5. LWVTX E-mail to reporter with Talking Points on SB 1's Assistance Changes ……………………………………………………………………………54
6. Question to LWVTX From Local League Regarding Assistance Liability Under SB1 ……………………………………………………………………57
7. Updated LWVTX Website Explaining Assistant Requirements Under SB 1 ……………………………………………………………………………59
8. LWVTX Application for Grant to Host In-Person Voting Events (Filed Separately Under Seal) ……………………………………………………62
9. OCA-GH 30(b)(6) Deposition of Deborah Chen …………………………………63
10. Supplemental Declaration of Deborah Chen ……………………………………87
11. REVUP TX 30(b)(6) Deposition of Bob Kafka …………………………………106
12. Supplemental Declaration of Bob Kafka ………………………………………121

Dated: June 23, 2023                    */s/ Zachary Dolling*

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*

1

California Bar No 325327
Veronikah Warms*
Texas Bar No 24132682
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org
Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
PETER HOFER
Texas State Bar No. 09777275
CHRISTOPHER MCGREAL
Texas State Bar No. 24051774
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org
phofer@drtx.org
cmcgreal@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900

2

Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com


Gregory D. Washington*
**JENNER & BLOCK LLP**

455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

***COUNSEL FOR OCA-GREATER
HOUSTON
PLAINTIFFS.***
*admitted *pro hac vice*

**000072**

# Exhibit 1

000073

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO          )
     ENTERO, et al,               )
 4                                )
                   Plaintiffs,    )
 5                                ) CIVIL ACTION
     VS.                          )
 6                                ) NO.: 5:21-cv-844-XR
     GREGORY W. ABBOTT, et al,    )
 7                                )
                   Defendants.    )
 8                                )

 9             -----------------------------------
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900  San Antonio, Texas 78232
210-697-3400          ORAL AND VIDEOTAPED DEPOSITION OF          210-697-3408

                        GRACE CHIMENE

        Designated Representative of League of Woman Voters of

                            Texas

                        APRIL 26, 2022

                -----------------------------------

        ORAL AND VIDEOTAPED DEPOSITION OF GRACE CHIMENE,

produced as a witness at the instance of the DEFENDANTS,

and duly sworn, was taken in the above-styled and

numbered cause on April 26, 2022, from 10:14 a.m. to

5:13 p.m. before Miah Parson, CSR in and for the State

of Texas, reported by oral stenography, at the

Disability Rights Texas offices, 2222 W. Braker Lane,

Austin, Texas 78758, pursuant to the Federal Rules of

Civil Procedure and the provisions stated on the record

or attached hereto.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                 210-697-3408
                        OCA-RESPONSE-APPX-005

                                                             000074

```
 1                   A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3         THOMAS BUSER-CLANCY
           ACLU FOUNDATION OF TEXAS, INC.
 4         5225 Katy Freeway, Suite 350
           Houston, Texas 77007
 5         Phone:  713-942-8146
           Fax:  915-642-6752
 6         tbuser-clancy@aclutx.org

 7
      FOR THE DEFENDANTS GREGORY W. ABBOTT, et al:
 8
           WILLIAM T. THOMPSON
 9         DEPUTY CHIEF, SPECIAL LITIGATION
           UNIT
10         P.O. BOX 12548 (MC-009)
           Austin, Texas 78711
11         Phone:  512-463-2100
           Fax:  512-457-4410
12         will.thompson@oag.texas.gov

13    ALSO PRESENT:

14    Lauren Morris-Videographer

15    Savannah Kumar
      Sarah Chen
16    Ashley Harris

17    VIA ZOOM:

18    Bradley Prowant
      Kelsey Pormasdoro-DOJ
19

20

21

22

23

24

25
```

Grace Chimene                                                    April 26, 2022
                                                                      Page 3

```
 1                              INDEX

 2                                                             PAGE

 3  Appearances........................................ 2

 4  GRACE CHIMENE
         Examination by Mr. Thompson, ..................... 4
 5

 6  Signature and Changes............................ 209

 7  Reporter's Certificate........................... 211

 8

 9                            EXHIBITS

10  NO.  DESCRIPTION                                        PAGE

11  1    Notice..................................       7

12  2    Answers to the interrogatories............      14

13  3    2020 Impact Report....................          32

14  4    2021 Impact Report.......................        37

15  5    Plaintiff's Second Amended Complaint......       78

16  6    Slides Voting.........................          134

17  7    Action Paper..........................          141

18  8    Attack on Texas Voters..................        143

19  9    Survey................,,,,,,,,,,,,,,,,,,,        159

20  10   Voter data............................         162

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                    THE VIDEOGRAPHER:  The time is now

 3   10:14 a.m. and we are on the record.  Today is Tuesday

 4   April 26th, 2022.  My name is Lauren Morris.  I am the

 5   videographer today for Magna Legal in the deposition of

 6   Grace Chimene in the consolidated cases of La Union Del

 7   Pueblo Entero, Plaintiffs versus Gregory Abott,

 8   Defendants.  Case No. 521CV844XR.  Will the attorneys

 9   please state who they are, who they represent and the

10   court reporter will read the witness into the record.

11                    MR. THOMPSON:  For the State Defendants,

12   Will Thompson from the Office of the Attorney Genera.

13                    MR. CLANCY:  And for the OCA-Greater

14   Houston Plaintiffs including the League of Women Voters

15   of Texas, Thomas Buser-Clancy, Ashley Harris, Savannah

16   Kumar, and Sarah Chen.

17                         GRACE CHIMENE,

18   having been first duly sworn, testified as follows:

19                         EXAMINATION

20   BY MR. THOMPSON:

21                    MR. THOMPSON:  Thank you, very much.

22       Q.  (BY MR. THOMPSON)  Good morning.  As you just

23   heard, my name is Will Thompson.  I represent the State

24   Defendants in this case.  Will you please state -- spell

25   your name for the record?
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                         210-697-3408
                        OCA-RESPONSE-APPX-008

                                                                    000077

1  also have this other type of League in Texas it serves a
2  local community called a League at large and they are
3  normally smaller leagues or newer leagues and they need
4  more assistance and they're considered units, right of
5  the Texas League.  So one of them has their own by laws
6  and policies and procedures the other one is -- is a
7  part of the Texas League.  Okay.  Right.
8       Q.  And does the National League have its own
9  bylaws and organizational documents?
10 Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900  San Antonio, Texas 78232
   210-697-3400                                        210-697-3408  A.  It has its own bylaws.  The Texas League has
11 its own bylaws and then local leagues that are
12 independent have their own bylaws.
13      Q.  Okay.  When I ask you about the League today
14 I'm gonna be asking about the Women Voters of Texas --
15      A.  Okay.
16      Q.  -- and anything that's a part of the League of
17 Women Voters of Texas, including those, I think you
18 called them consolidated local leagues?
19      A.  Leagues at Large.
20      Q.  The Leagues at Large.
21      A.  Yes.
22      Q.  They're --
23      A.  Yes, but the people who are members of a local
24 League that has their own bylaws and has their own
25 policies and procedures they are under the Texas League

```
 1  so they have -- they follow our -- they -- they follow
 2  what we say for anything to do with state level
 3  information or state level advocacy.  So they take care
 4  of the needs of the local level.  We take care of the
 5  needs of the Voters at the state level.  So we're all
 6  one organization.  They belong to all the same
 7  organization, but they joined the local level.
 8       Q.  So I think you said that the state League can
 9  set certain rules that govern the conduct of local
10  leagues; is that right?
11       A.  Yeah.  But not -- not every conduct.  Some
12  things are -- are open for the local leagues that have
13  their own policies specific to what they're doing at the
14  local level.
15       Q.  And some activities are undertaken by local
16  leagues -- separate from the state League, right?
17       A.  At the local level.
18       Q.  Is that a yes?
19       A.  It was.  No, it wasn't a yes.  It was at the
20  local level local leagues can take action like if they
21  want to -- when they're doing the voters guide, they're
22  doing the voters guide for local elections, right?
23       Q.  Sure, I'm not --
24       A.  When they're going --
25       Q.  -- trying --
```

1   voters overall.  LWVTX would not have to conduct this

2   type of public education in the absence of SB1.  Do you

3   see all that?

4        A.  Yes, that was a very long paragraph.

5        Q.  It was indeed?

6        A.  Yes.

7        Q.  Okay.  So toward the top of that paragraph the

8   complaint alleges that SB1 would frustrate LWVTX's

9   mission of empowering voters and defending democracy by

10  expanding voter registration and increasing voter turn

11  out.  How does SB1 frustrate LWVTX's mission?

12       A.  So our mission of empowering voters and

13  defending democracy we take -- we take to heart and I

14  can barely say the mission without going woo hoo every

15  time because it's so important to us.  The -- so during

16  empowering voters.  So during most elections we're

17  working really hard and especially working on trying to

18  get more people registered to vote in voting Texas

19  elections and -- and we have in the past been

20  concentrating much of our efforts on young voters like

21  we have a high school voter registration program,

22  college age voters also because we know if you could get

23  a voter to -- a young voter to participate in one

24  election then they're more likely to participate in more

25  elections.  And we do that through our high school voter

1  registration and education, first vote education project
2  and the campus vote project that we work on a lot.  The
3  other area we work with are people who are less likely
4  to vote and so those would be people who are not
5  consistent voters, voters in low income areas, we work
6  with voters who are served by food banks, voters who are
7  new voters, we have a whole naturalization ceremony and
8  we have voters who -- who are new to Texas.  And so
9  those -- those are some of the areas -- some of the
10 areas we work on when we try to empower voters in Texas
11 in trying to get out the vote.  The -- and instead of
12 being able to do that, since -- SB1 we spent a great
13 deal of our time instead educating voters who are
14 normally consistent voters who have been voted -- voting
15 for a very, very, very long time in many cases who are
16 voting by mail, who are 65 years and over or are a voter
17 with a disability.  And so we've been spending much of
18 our time instead of working with those inconsistent
19 voters, but working with normally consistent voters
20 who's been voting for a very long time who are now need
21 a lot of voter education in order to get -- even get
22 through the application or the ballot by mail process.
23 So we -- we turned all of our energy -- I'm sorry, I'm
24 making hand motion we turned our energy from what we had
25 previously been concentrating on to these 65 and over

 1  voters and voters with disabilities on educating them
 2  about the new SB1 law, especially regarding voter ID.
 3       Q.  So I understand, Ms. Chimene, that you brought
 4  in some specific examples of what the League does and
 5  how it respond to SB1.  I want to see if I can kind of
 6  put those examples into categories and make sure I
 7  understand each of the applicable categories that they
 8  exist.  So what I think you were just testifying about
 9  was -- that in response to SB1, the League has shifted
10  some of its focus from activities it used to do to other
11  activities in response to SB1, is that accurate?
12       A.  Yes.
13       Q.  Is there any way -- I'm sorry, let me try that
14  again.  Is that what the League is referring to when it
15  says that SB1 frustrates the League's mission?
16       A.  It's one of the aspects of what we mean when we
17  say it frustrates the League's mission.  It's -- is it
18  okay if I keep going?  So for us our mission is really
19  important to our members and -- and supporters.  And
20  that is empowering voters and defending democracy.  And
21  frustrating our mission by making it so that these
22  consistent older voters who are 65 and over and Texas
23  and who are voters with a disability can't get through
24  the process either of applying to vote by mail or the
25  ones that had their ballots rejected in this last

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                 210-697-3408
                          OCA-RESPONSE-APPX-013

                                                                  000082

1            MR. CLANCY:  Objection to form.  To the

2    extent it calls for a legal conclusion.

3        A.  Let me think then.  Trying to think all the

4    ways.  I'm -- I think so say -- I think you're still

5    missing out on the part -- our mission that we take very

6    seriously, sorry of -- of ensuring that voters can

7    participate in our elections and as many ways as we can

8    we tried to help voters participate in elections and I

9    think that one of the things you're missing is that

10   these voters were unable to get through either the

11   application process or the vote by mail ballot process

12   and will continue in the future to be unable to get

13   through that process and some of them may drop out of

14   voting entirely and it is that -- it doesn't -- so that

15   is really important to us in our mission.  And so I just

16   want to make sure that that is in there.  It's not just

17   about resources and it's not just about our -- turning

18   our attention, but it's also that we truly want people

19   to vote in every election.  And these people have lost

20   their right to vote and I'm very concerned that in the

21   future they will not be able to participate in our

22   democracy.

23       Q.  Thank you for that clarification, Ms. Chimene.

24   I meant to include that so I'm gonna try it again where

25   I maybe more expressing to that --

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                       210-697-3408
                    OCA-RESPONSE-APPX-014

                                                              000083

1  the League's mission?

2            MR. CLANCY:  Objection to form.

3       A.  So we have resources, we have voters, we have

4  our time, and efforts.  So I could say yes for now.  I'm

5  sorry, I -- I -- I know that I'll go home and remember

6  all these other reasons.  So I apologize and I know

7  you're going to try to go over and over and over again,

8  but maybe after the next break I can come back to you

9  and tell you some more, but at this particular moment I

10 think that is a lot of resources and a lot of

11 frustration that we have so thank you.

12      Q.  (BY MR. THOMPSON)  Sitting here today you can't

13 tell me about any other ways that the vote by mail

14 provisions and SB1 frustrates the League's mission, can

15 you.

16      A.  Tell me, again.  Read it out loud.  Let me try

17 to categorize it.

18      Q.  Sure.  Maybe -- maybe it would help if I

19 numbered them.

20      A.  Well, if it was written down I'd probably able

21 to look at it and think more, but go -- yes, say No. 1

22 that might help.

23      Q.  Okay.  No. 1, the League contends that the vote

24 by mail provisions and SB1 will prevent some voters from

25 participating in elections, right?

1        A.   Yes, so that's voters, yes.

2        Q.   No. 2, the League tries to address that problem

3   by shifting its resources from other activities to

4   educating voters about SB1, right?

5        A.   Right.  Yes.

6        Q.   No. 3, despite the League's efforts the vote by

7   mail provisions and SB1 will according to the League

8   still prevent some voters from participating in

9   elections, right?

10       A.   Yes.

11       Q.   Now, I think those are the three broad

12  categories of ways that you have testified the vote by

13  mail provisions and SB1 can frustrate the League's

14  mission.

15       A.   Did one of those include financial resources,

16  not just volunteer time, but also financial resources?

17  Is that included under the resource section?

18       Q.   Yes, as far as I'm concerned the resources

19  addressed in No. 2 can be any type of resource you want.

20       A.   Okay.  All right that sounds good.

21       Q.   Is that -- are those the only three broad

22  categories you can testify about sitting here today.

23       A.   Sitting here today, yes.  Thank you.

24       Q.   You can't identify right now any other way in

25  which the vote by mail provisions of SB1 frustrates the

1  elections, right?

2        A.  Yes.

3        Q.  And sitting here today, that is the best

4  complete summary you could give of the ways that the

5  oath and the prohibition on compensation frustrate the

6  League's mission?

7        A.  Yes.

8        Q.  The last aspect of SB1 that you mentioned, I

9  believe was the vote harvesting provision, do you recall

10 that?

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                    210-697-3408

11       A.  Yes.

12       Q.  Can you tell me what the vote harvesting

13 provision of SB1 does?

14       A.  So I'm not a lawyer, my understanding is that

15 there is a confusion -- confusing section of SB1 that

16 makes it so that you cannot speak to a voter about

17 what's on the ballot if the voter has a ballot with them

18 and you are supporting a provision or you're maybe

19 talking about or supporting a provision and/or talking

20 about or supporting a candidate.  That's my

21 understanding, I think it's confusing.

22       Q.  Okay.  So I want to go through, I'm sorry, did

23 you say something else?

24       A.  And, I'm sorry, be -- and also I think one if

25 the -- not only is that something called vote

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                    210-697-3408
                          OCA-RESPONSE-APPX-017

                                                                        000086

1  harvesting, but it also involves like a jail sentence.

2  So that is my understanding, I'm not a lawyer.

3       Q.  I want to go to through the same frustration

4  mission questions that we did with the other aspects of

5  SB1, I'm just gonna do it now for the vote harvesting

6  provision.

7       A.  Uh-huh.

8       Q.  With regard to the vote harvesting provision in

9  SB1, the League contends that those provisions will

10  prevent some voters from participating in elections,

11  right?

12                 MR. CLANCY:  Objection; misstates

13  testimony.

14       A.  Yes.

15       Q.  (BY MR. THOMPSON)  Second, the League tries to

16  address that problem by shifting resources from other

17  activities to educating voters about the vote harvesting

18  provisions in SB1, right?

19       A.  No.

20       Q.  The League does not attempt to educate voters

21  about SB1's vote harvesting provision?

22       A.  No.

23                 MR. CLANCY:  Objection; misstates

24  testimony.

25       Q.  (BY MR. THOMPSON)  Does the League attempt to

1  educate anyone --

2       A.  Yes.

3       Q.  -- about the vote harvesting provisions of SB1?

4       A.  There you go.  The impact of this part of the

5  bill is less about educating voters and more about

6  educating League members partner organizations about the

7  impact of this bill for them personally if they were to

8  have, say, a candidate form or if they were to be

9  talking to a voter who may have their ballot with them.

10 And our concern, you know, is for the safety of those

11 members who may -- because of this bill and the way it

12 is written now, be at risk of -- of criminal penalty of

13 some type.  And so the education wouldn't be educating

14 voters about this, the education would be to educate

15 people who assist voters or people who have candidate

16 forms or people who do -- who may talk to a voter at a

17 voter registration booth and they may have their --

18 their ballot with them or people who go to a nursing

19 home and talk to voters who may have a ballot with them

20 and that is my understanding.  So it's not about

21 educating the voters it is about educating our members

22 and -- and other members of the community and that

23 situation 'cause we don't want people in our normal

24 activity of empowering voters and encouraging voting and

25 getting people to participate in elections for them to

 1 | have this confusing law that seems to indicate that they
 2 | may go to jail if they -- they do something like that.
 3 |     Q.  The vote harvesting provision in SB1 regulates
 4 | people who provide vote harvesting services, right?
 5 |                 MR. CLANCY:  Objection to the extent it
 6 | calls for legal conclusion.
 7 |     Q.  (BY MR. THOMPSON)  A verbal answer will be
 8 | helpful.
 9 |     A.  I -- I am not a lawyer.  So my understanding of
10 | it -- is -- is what I previously said.  Sorry.
11 |     Q.  And I don't object to the way you said it
12 | except that it was about 400 words --
13 |     A.  Yeah.
14 |     Q.  -- I was looking for a phrase we could use --
15 |     A.  Yeah.
16 |     Q.  -- to capture the universe's -- subject to the
17 | vote harvesting provision.
18 |     A.  Okay.  Say it again.
19 |     Q.  What term would you use to describe the people
20 | who are regulated by the vote harvesting provision of
21 | SB1?
22 |                 MR. CLANCY:  Objection to the extent it
23 | calls for a legal conclusion.
24 |     A.  My con -- my concern is that it is very
25 | confusing and I do not know how to keep my members and

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                210-697-3408
OCA-RESPONSE-APPX-020

000089

1  the people in our organizations and all the other

2  organizations we work with out of jail because it is a

3  confusing part of the bill, I'm sorry.

4              MR. THOMPSON:  Objection; nonresponsive.

5  But that's quite all right.

6       Q.  (BY MR. THOMPSON)  If I use the phrase, people

7  regulated by the vote harvesting provisions of SB1, will

8  you know what I mean?

9       A.  No, not really.

10      Q.  I'm trying to get you to agree or disagree

11  about who is subject to the law --

12      A.  Yeah.

13      Q.  -- I understand you're not a lawyer it may not

14  be obvious to you who is regulated by those provisions?

15      A.  Yes, it is not obvious to me who is regulated

16  by those provisions.

17      Q.  Is it fair to say that the League is trying to

18  provide education about those provisions to people who

19  are potentially subject to those provisions?

20      A.  Yes, thank you.

21      Q.  So if I refer to people who are potentially

22  subject to the vote harvesting provisions of SB1, will

23  you know what I mean?

24      A.  Yes.

25      Q.  Okay.  Well, let's use that phrase.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                    210-697-3408
                    OCA-RESPONSE-APPX-021

                                                    000090

1       A.  Okay.

2       Q.  We'll start back at the beginning with point

3  one.

4       A.  Okay.

5       Q.  For ways that the League contends the vote

6  harvesting provisions of SB1 frustrates its mission.  So

7  first, the League contends that SB1 prevents, excuse me.

8  The League contends that the vote harvesting provisions

9  of SB1 prevents from some voters from participating in

10 the elections, right?

11                  MR. CLANCY:  Objection to the extent it

12 misstates the testimony.

13      A.  Yes.

14      Q.  (BY MR. THOMPSON)  Second, the League tries to

15 address that problem by shifting resources from other

16 activities to educating people potentially subject to

17 the vote harvesting provisions of SB1 about the vote

18 harvesting provisions of SB1, correct?

19      A.  Correct.

20      Q.  Third, the League contends that despite its

21 efforts the vote harvesting provisions of SB1 will still

22 stop some voters from participating in elections, right?

23                  MR. CLANCY:  Objection to the extent it

24 misstates the testimony.

25                  THE REPORTER:  I'm sorry, can you repeat

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                 210-697-3408
                        OCA-RESPONSE-APPX-022

                                                            000091

1  that?

2            MR. CLANCY:  Objection to the extent it

3  misstates the testimony.

4       A.  Say it again, please.

5       Q.  (BY MR. THOMPSON)  Third, the League contends

6  that despite its efforts, the vote harvesting provisions

7  of SB1 will still stop some voters from participating in

8  elections, correct?

9       A.  Correct.

10      Q.  And sitting here today those are the only three

11  ways that you can testify about that the League contends

12  the vote harvesting provisions of SB1 frustrates its

13  mission, correct?

14      A.  No.  I would add a fourth and that is because

15  this impacts our members and other partner type

16  organizations that we work with because it will keep

17  them from being able to do some important work that we

18  do where a person a voter may have their ballot with

19  them and those type of things that we do will keep us

20  from doing that.  Such as can it make -- it -- it

21  impacts candidate forms, it impacts our work at voter

22  registration tables and it impacts anytime we go -- we

23  would go door to door or talk to the community where

24  they may have a ballot with them.  It impacts our

25  ability to -- if we have, say, if we support a

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                          210-697-3408
                    OCA-RESPONSE-APPX-023

                                                              000092

1   constitutional amendment that it impacts our ability to

2   provide that information out to voters in case they have

3   their ballot with them.  I don't want our members and

4   other organizations we work with to go to jail because

5   of this confusing and I consider dangerous legislation

6   that makes it so they may have a criminal penalty.

7         Q.  Does the League of women voters of Texas

8   undertake any activities with the intent to deliver

9   votes for a specific candidate or measure?

10        A.  We never take activities with intent to support

11  our pose political candidates.  Occasionally we do

12  support a provision.  It is something different than the

13  voters guide where we explain what the provision is in

14  plain language because of you lawyers and then, sorry,

15  that was an aside, and then we also sometimes do pros

16  and cons.  Sometimes those pros and cons people have

17  call-- called me and say you're supporting that

18  constitutional amendment.  I say no, there's pros and

19  cons, but this looks like the cons are more or the pros

20  are more and so you're supporting it.  That is just the

21  voter's guide.  Occasionally we support or oppose a

22  constitutional amendment or a local League may support

23  or oppose some kind of bond or a proposition locally.

24  There is a concern to that if they do that somebody

25  comes to a forum to learn about it and they have their

1  ballot with them because it would be provided those type

2  of educational opportunities would be provided, you

3  know, during the early voting time and then they may be

4  penalized or it's -- criminal offense, whatever is in

5  SB1, that is my concern.  So no on candidates, yes,

6  occasionally on propositions and ballot measures and

7  constitutional amendments.

8       Q.  When was the last time that the League of women

9  Voters of Texas supported or opposed a constitutional

10  amendment in the way that you're describing?

11       A.  Oh, we considered -- so I have been in the

12  League, on the board since 2014 and -- and so 2000 at

13  some point there was one on providing rainy day funds I

14  think to pay for transportation infrastructure and we

15  considered supporting it, but we didn't at that time.

16  Before that I don't know when we -- we do that, but in

17  our policies and procedures it says that we can and so

18  we have considered that before and I -- I think it would

19  -- if this continues, we would consider removing that

20  ability to provide opposition or support for a

21  constitutional amendment or propositioned if there is a

22  criminal penalty assoc -- if this continues.  So we'll

23  have to relook at our policies and procedures.

24       Q.  What year was it that the League considered

25  supporting a measure to amend the Constitution relating

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                  210-697-3408
                          OCA-RESPONSE-APPX-025

                                                                    000094

1       A.   Yes, thank you.

2       Q.   Third, despite the League's efforts the League

3   contends that the vote harvesting provision of SB1 will

4   still stop some voters from participating in elections,

5   correct?

6               MR. CLANCY:   Objection to the extent it

7   misstates thee testimony.

8       A.   Say -- say it one more time.  Lord.

9       Q.   (BY MR. THOMPSON)   Third, the League contends

10  that despite its efforts the vote harvesting provisions

11  of SB1 will still stop some voters from participating in

12  elections, correct?

13      A.   Yes.

14      Q.   Fourth, the League contends that the vote

15  harvesting provisions of SB1 could stop it from

16  undertaking certain activities if it decided to support

17  our oppose a constitutional amendment or other ballot

18  measure, correct?

19              MR. CLANCY:   Objection; form and misstates

20  the testimony.

21      A.   Almost.  I would think and my concern would be

22  whether this section would -- would not only do that

23  which keep us from supporting or opposing constitutional

24  amendments as a state League or as a local League

25  supporting or opposing propositions or bond measures,

1  but also I think it may limit our -- or restrict the way

2  we currently hold candidate forms and do in-person

3  contact with voters who may have a ballot because of the

4  vagueness of the bill, my concern is that members and

5  volunteers may feel like they're going to get into

6  trouble and the criminal -- and be accused of vote

7  harvesting when actually they're just guiding people

8  through the vote process and they happen to have a

9  ballot with them.  So I just wanted to be clear there

10  was a little addition, addendum.

11      Q.  Yeah, I'd like to understand the addendum.  Are

12  you aware that the vote harvesting provision of SB1

13  applies only to actions intended to deliver votes for a

14  specific candidate or measure?

15              MR. CLANCY:  Objection; form.

16      A.  Yes.

17      Q.  (BY MR. THOMPSON)  When the League hosts a Lake

18  candidate forum, for example, is it intending to deliver

19  voted for a specific candidate or measure?

20      A.  It is not intending to, but what the perception

21  is occasionally is that people may think we are

22  supporting one candidate over another per se because

23  certain candidates don't show up at the candidate forum

24  and so the perception may be there and because of the

25  vagueness of the law I am very concerned about our

 1  members getting accused of something about -- regarding

 2  vote harvesting.

 3      Q.  Right.  I want to -- I want to make sure I

 4  understand the concern --

 5      A.  Okay.

 6      Q.  It sounds like the concern is that the League

 7  and its members could be falsely accused of violating

 8  the vote harvesting provision, correct?

 9              MR. CLANCY:  Objection to the extent it

10  misstates the testimony or calls for a legal conclusion.

11      A.  I'm not a lawyer.  I don't understand it

12  completely.  I -- I am concerned about the impact of our

13  work, educating voters may be construed as some people

14  say sometimes that we are trying to promote one

15  candidate over another.

16      Q.  (BY MR. THOMPSON)  Let me try to reword again.

17      A.  Okay.

18      Q.  Is it a concern you're describing a concern

19  that the League and it's members would be accused of

20  violating the vote harvesting provisions of SB1, even

21  though they do not intend to deliver votes for a

22  specific candidate or measure?

23              MR. CLANCY:  Objection; form.

24      A.  Can you just say it again.

25      Q.  (BY MR. THOMPSON)  Sure.  Is the concern that

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                  210-697-3408
                        OCA-RESPONSE-APPX-028

                                                            000097

1  you're describing a concern that the League and its

2  members would be accused of violating the vote

3  harvesting provisions of SB1, even though they do not

4  intend to deliver votes for a specific candidate or

5  measure?

6       A.  Yes.

7       Q.  Okay.  So will it be okay if I treat that as a

8  fifth way in which the vote harvesting provisions --

9       A.  Sure.  Thank you.

10      Q.  Then our favorite time, we'll just go back

11 through 1 through 5 again and hopefully this time I'll

12 get them correct.  Okay.  We're talking about the 5 ways

13 you've testified that the League contends the vote

14 harvesting provisions of SB1 frustrates its mission.

15 First, the League contends that the vote harvesting

16 provisions of SB1 prevent some voters from participating

17 in elections, right?

18      A.  Right.

19      Q.  Second, the League tries to address that

20 problem by shifting resources from other activities to

21 educating people potentially subject to the vote

22 harvesting provisions about the vote harvesting

23 provisions, correct?

24      A.  Yes.

25      Q.  Third, despite the League's efforts, the League

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                210-697-3408
OCA-RESPONSE-APPX-029

000098

1    contends the vote harvesting provisions will still stop

2    some voters from participating in elections, correct?

3        A.   I thought that's the same as No. 1.

4        Q.   There may be overlap there.

5        A.   Okay.

6        Q.   And I'm fine with you saying that they're the

7    same if they're the same to you.

8        A.   Okay.

9        Q.   But the third way is accurate?

10       A.   It is accurate.  It sounds like No. 1 to me.

11       Q.   Fourth, the League contends that the vote

12   harvesting provisions of SB1 could prevent it from

13   supporting or opposing a constitutional amendment or

14   other ballot measure if in the future it decides to

15   support or oppose a constitutional amendment or other

16   ballot measure?

17       A.   Okay.

18       Q.   Is that correct?

19       A.   Yes.

20       Q.   And fifth, the League is concerned that it

21   could be accused of violating the vote harvesting

22   provisions of SB1 or that its members could be accused

23   of violating the vote harvesting provisions of SB1 even

24   though neither the League nor the members intend to

25   deliver votes for a specific candidate or measure,

 1  correct?

 2      A.  Correct.

 3      Q.  And sitting here today, those are the only five

 4  ways that you can contend that the vote harvesting

 5  provisions of SB1 frustrates the League's mission,

 6  correct?

 7      A.  Yes.

 8      Q.  Thanks.  I'm sorry, that was very tedious

 9  process?

10      A.  That's okay.

11              MR. CLANCY:  We've been going about an

12  hour, Grace, I don't know, do you want to keep going for

13  a little bit, do you want to take a short break.

14      A.  No, I need a break.  My brain is -- keeps

15  getting tired.

16              MR. THOMPSON:  Let's go off the record.

17              THE VIDEOGRAPHER:  Going off the record.

18  The time is 2:45 p.m.

19              (Recess.)

20              THE VIDEOGRAPHER:  We are back on the

21  record the time is 2:52 p.m.

22      Q.  (BY MR. THOMPSON)  Ms. Chimene, welcome back.

23  I believe you still have Exhibit 5, the second amended

24  complaint in front of you.

25      A.  Yes.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                              210-697-3408
                    OCA-RESPONSE-APPX-031

                                                          000100

1     Q.  If you flip to Page 9 and 10 and look at slides

2  18 to 19.

3     A.  Okay.

4     Q.  There the League is providing tips about

5  assistance for voters in polling place, right?

6     A.  Right.

7     Q.  So having gone through a few of these slides, I

8  guess what I want to know is, is this exhibit a

9  representative example of the types of tips and

10  education that the League provides?

11                    MR. CLANCY:  Objection; form.

12     A.  This is not -- this is way more specific than

13  we normally get.  Because SB1 is so complicated and was

14  so massive and the changes are overwhelming for many

15  voters this is a lot more than we normally do.  We

16  normally have more perky happy slides about registering

17  to vote or voting early, you know, and this one is like

18  really more detailed, detailed oriented and that is what

19  SB1 has done.  Also this is very early on so over time

20  our education has changed and this is not for voters it

21  is for organizations that work with the voters.  So I

22  wouldn't teach voters all of this necessarily.  I would

23  try to make it more simple, but it's -- I like it.  I --

24  I created it.  I'm not a lawyer.

25     Q.  Sure.  And I'm surely not trained --

Grace Chimene                                        April 26, 2022
                                                        Page 209

1                     CHANGES AND SIGNATURE.

2     WITNESS NAME: GRACE CHIMENE DATE: APRIL 26, 2022

3     PAGE LINE      CHANGE              REASON

4     _____

5     _____

6     _____

7     _____

8     _____

9     _____

10    Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
      210-697-3400                                        210-697-3408

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25    _____

      Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
      210-697-3400                                        210-697-3408
                        OCA-RESPONSE-APPX-033

                                                        000102

1          I, GRACE CHIMENE, have read the foregoing
   deposition and hereby affix my signature that same is
2  true and correct, except as noted above.

3

4

5                    _____
                     GRACE CHIMENE

6

7

8

9  THE STATE OF _____)

10 KISTANTAIL(COF Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
   210-697-3400                                              210-697-3408

11

12         Before me, _____, on

13 this day personally appeared GRACE CHIMENE, known to me

14 (or proved to me under oath or through

15 _____) (description of identity

16 card or other document)) to be the person whose name is

17 subscribed to the foregoing instrument and acknowledged

18 to me that they executed the same for the purposes and

19 consideration therein expressed.

20         Given under my hand and seal of office this

21 _____ day of _____, _____.

22

23

24                    _____
                     NOTARY PUBLIC IN AND FOR
25                   THE STATE OF _____
                     COMMISSION EXPIRES: _____

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO          )
     ENTERO, et al,               )
 4                                )
                  Plaintiffs,     )
 5                                ) CIVIL ACTION
     VS.                          )
 6                                ) NO.: 5:21-cv-844-XR
                                  )
 7   GREGORY W. ABBOTT, et al,    )
                                  )
 8                Defendants.     )
                                  )
 9
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900  San Antonio, Texas 78232
210-697-3400                                                             210-697-3408

```
10              REPORTER'S CERTIFICATION

11        ORAL AND VIDEOTAPED DEPOSITION OF GRACE CHIMENE

12                    APRIL 26, 2022

13

14        I, Miah Parson, CSR, Certified Shorthand Reporter

15   in and for the State of Texas, hereby certify to the

16   following:

17        That the witness, GRACE CHIMENE, was duly sworn by

18   the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21        I further certify that pursuant to FRCP Rule

22   30(f)(1) that the signature of the deponent:

23   _X_ was requested by the deponent or a party before the

24   completion of the deposition and that the signature is

25   to be before any notary public and returned within 30
```

1  days from the date of receipt of the transcript.  If

2  returned, the attached Changes and Signature Page

3  contains any changes and the reasons therefor;

4       ___ was not requested by the deponent or a party

5  before the completion of the deposition.

6       I further certify that I am neither counsel for,

7  related to, nor employed by any of the parties or

8  attorneys in this action in which this proceeding was

9  taken, and further that I am not financially or

10 otherwise interested in the outcome of the action.

11       Certified to by me this 17th day of May, 2022.

12

13

14                              _____

15                              Miah Parson, CSR No. 11773
                                Expiration Date:  02/28/2023
                                Firm Registration No. 633
16                              Magna Legal Services
                                16414 San Pedro, Suite 900
17                              San Antonio, Texas 78232
                                Phone 210-697-3400
18                              Fax 210-697-3408

19

20

21

22

23

24

25

# Exhibit 2

000106

## SUPPLEMENTAL DECLARATION OF JOYCE LEBOMBARD

My name is Joyce LeBombard. I am over the age of 18 and capable of making this declaration. The facts stated herein are within my personal knowledge:

1. I am the President of the League of Women Voters of Texas ("LWVTX" or the "League"). I have served in this role since June 2022. My current term will end in June of 2024. This is an unpaid, volunteer position to which I devote an average of 40 hours a week. I have been a member of the League since February 2017. I served the Austin Area League as VP of Voters Service, and then as President and Interim Communications & Technology Director. I am retired from a management career in IT, primarily in the financial services industry.

2. LWVTX is a volunteer-based organization. Many of our members participate in LWVTX's election-related programs, such as registering people to vote, participating in get out the vote ("GOTV") events, canvassing or "doorknocking," assisting individual voters, and hosting nonpartisan issue or candidate forums. Many of these events are held in person.

3. LWVTX members regularly interact with voters and answer their questions when they are registering them to vote, canvassing at resident addresses, or hosting GOTV events.

4. Additionally, local leagues regularly host non-partisan candidate forums before elections, where they will invite candidates in local elections to speak to LWVTX members and other voters about issues in the election. Many of these forums are held in person.

5. Additionally, local leagues, whose members are also members of LWVTX, periodically endorse non-partisan ballot measures. Additionally, LWVTX has the ability to endorse non-partisan ballot measures. These endorsements are separate from the LWVTX's non-

partisan voter guide. For instance, when I was the Austin Area League (LWV-AA) president in 2018, LWV-AA supported certain electoral Austin bond measures and encouraged members and other voters to vote in favor of the ballot measures, *see* Attachment A.

6.  LWVTX is concerned that its staff, members, or volunteers could be prosecuted for allegedly violating SB 1 due to their voter interactive activities if they are providing information to voters in person who happen to have their mail-in ballots with them, if those staff, members, or volunteers are paid or otherwise accused of being compensated or provided with a benefit. LWVTX is also concerned that its staff or members could be prosecuted in similar circumstances for allegedly providing payment, compensation, or a benefit. The vague language in SB 1 about these restrictions makes it difficult for LWVTX to know what types of actions are prohibited.

This Declaration is made pursuant to 28 U.S.C. § 1745. I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____06/22/23_____

*Joyce LeBombard*
_____
Joyce LeBombard
President LWVTX



## League of Women Voters Austin Area (LWV-AA) Supports City of Austin Bonds Package

The Board of Directors of the League of Women Voters Austin Area (LWV-AA) endorses all seven bond initiatives on the 2018 City of Austin ballot.

City of Austin Bond Package:
- Proposition A -- $250 million for affordable housing;
- Proposition B -- $128 million for libraries, museums, and cultural centers;
- Proposition C -- $149 million for parks and recreation;
- Proposition D -- $184 million for flood mitigation, open space, and water quality protection;
- Proposition E -- $16 million for health and human services;
- Proposition F -- $38 million for public safety; and
- Proposition G -- $160 million for transportation infrastructure.

While Proposition A will not meet all of Austin's affordable housing needs, it is a substantial step in the right direction. We like that the affordable housing bond dollars will be divided between four existing City programs to assist both renters and homeowners.

Propositions B, C, and E will improve the quality of life for residents by supporting the arts, parks, and public health services.

Propositions D, F, and G address necessary infrastructure and environmental needs, or deferred maintenance to public facilities. If we continue to delay updating and maintaining our public works projects, we believe the cost will only increase.

Together, these bonds total nearly $1 billion. While that is a lot of money, we feel the overall benefit to the City is worth the cost.

We encourage our members and supporters to vote in favor of these bond initiatives.

League of Women Voters Austin Area
www.LWVaustin.org                    OCA-RESPONSE-APPX-040

512.451.6710



OCA-RESPONSE-APPX-041

**000110**

# Exhibit 3

000111



OCAGH_00014836

000112

3/31/22, 10:20 AM          LeagueWomenVotersTX on Twitter: "Texans with disabilities fear new restrictions on voting help could mean criminal charges at t...



Search Twitter

**Don't miss what's happening**
People on Twitter are the first to know.

Log in          **Sign up**

OCAGH_00014838

000114

Q   Search Twitter

**Don't miss what's happening**
People on Twitter are the first to know.

Log in          **Sign up**

OCA-RESPONSE-APPX-046

OCAGH_00014839

**000115**

Q  Search Twitter

**Don't miss what's happening**
People on Twitter are the first to know.

Log in        **Sign up**

OCAGH_00014840

**000116**

Q  Search Twitter

Don't miss what's happening

People on Twitter are the first to know.

Log in          Sign up

OCA-RESPONSE-APPX-048

OCAGH_00014841

000117

# Exhibit 4

OCA-RESPONSE-APPX-049

000118

| | |
|---|---|
| **From:** | Stephanie Swanson [sswanson@lwvtexas.org] |
| **Sent:** | 2/15/2023 8:07:09 PM |
| **To:** | Andrew Hendrickson [ahendrickson@aclutx.org] |
| **CC:** | Ashley Harris [aharris@aclutx.org]; Joyce LeBombard [jlebombard@lwvtexas.org] |
| **Subject:** | Re: An idea for legislation from our Elections Administrator |

Hey Andrew and Ashley,

Could you share y'all's thoughts on how to fix this issue through legislation?  Terry Meza filed this bill today:

https://capitol.texas.gov/tlodocs/88R/billtext/pdf/HB02379I.pdf#navpanes=0

████████████████████████████████████████████████████████████

That poor woman.  This makes me so mad.  Doesn't this violate the ADA?

Steph


On Wed, Feb 15, 2023 at 6:59 AM Andrew Hendrickson <ahendrickson@aclutx.org> wrote:

Hi Steph,


Is there a time today or tomorrow when we could set up a call with the Potter County EA? If we are going to get a fix to lege council by Friday, we'll need to move quickly, and I want a little clarity regarding the issue. As James mentioned on our SMERC call yesterday, an exception under 276.016 in SB 1 was described as a means of preventing this scenario. §276.016(a)(4) prohibits a public official from completing "any portion of an application to vote by mail and distribut(ing)" it to an applicant. However, §276.016(d) states that subsection (a)(4) "does not apply if the public official or election official engaged in the conduct… while lawfully assisting the applicant under §84.003," which lays out the procedures for assisting an applicant. I have a couple of thoughts about what could be happening here, and I want to ensure that we're all on the same page regarding why the SOS attorney believed the EA could be subject to criminal charges. Thanks!


Best,


Andrew


OCA-RESPONSE-APPX-050

**From:** Stephanie Swanson <sswanson@lwvtexas.org>
**Sent:** Sunday, February 12, 2023 8:05 PM
**To:** Ashley Harris <aharris@aclutx.org>; Joyce LeBombard <jlebombard@lwvtexas.org>; Andrew Hendrickson <ahendrickson@aclutx.org>
**Subject:** Fwd: An idea for legislation from our Elections Administrator

> **Caution:** This is an external email and has a suspicious subject or content. Please take care when clicking links or opening attachments. When in doubt, contact your IT Department

CAUTION: This message is from an external sender. Please be cautious of links & attachments.

Privileged & Confidential

Hey Ashley and Andrew,

Can you take a look at the problem mentioned below?

I have a few questions:

- ███████████████████████████████
- ███████████████████████████████
- I have not seen any legislation filed that would fix this, have you?
- Is it too late for us to try to file something that would fix this?  Andrew, is it too late to submit something to lege council for a draft?

Thanks for y'all's help!


Steph


---------- Forwarded message ---------
From: **SONYA LETSON** <letsons@outlook.com>
Date: Sun, Feb 12, 2023 at 6:31 PM
Subject: An idea for legislation from our Elections Administrator
To: Stephanie Swanson <sswanson@lwvtexas.org>, Joyce LeBombard <jlebombard@lwvtexas.org>, Dorothy Marchand <dmarchand@lwvtexas.org>

This is from our EA in Potter County (Amarillo).

SL

**From:** Election Administration - Melynn Huntley <MelynnHuntley@co.potter.tx.us>
**Sent:** Thursday, February 9, 2023 10:20 AM
**To:** letsons@outlook.com
**Cc:** info@drtx.org
**Subject:** Idea for legislation

Sonya (LWV) and Disability Rights Texas,

After working with a voter yesterday and calling the Texas Secretary of State's legal folks, I would like to suggest a legislative change to TEC 276.016.

With applications for ballots by mail, our office cannot fill in the information for a voter when they request the ABBM. This is a problem for voters with disabilities as illustrated by our call yesterday.

- We received a phone call last week from a voter who requested the application. Our office mailed the ABBM to her.
- She called yesterday and stated that her eyesight has gotten so bad, she could not read the application and fill it out.
- Her daughter, who normally assists her, was unavailable due to a medical situation.

Our office helped this voter by contacting a member of our local League of Women Voters who agreed to go by the voter's home and assist her. HOWEVER, I called the legal department at the SOS to see if there is an exception under ADA that would allow us to fill in the information for voters who cannot complete an application on their own.

The SOS said that I could be charged with a crime and be subject to a State Jail Felony for assisting a voter by completing the information for her, even if the voter is disabled. The person I was talking with said that nothing in TEC 276.016 allows me to help, even in an ADA situation. He did say it might be a good defense, but I could still be charged.

OCA-RESPONSE-APPX-052

OCAGH_00018589

**000121**

The SOS person said that I raised a good point and suggested that I contact those who might be putting forth legislative suggestions. So I am contacting you. If the LWV or DRTX are working on addressing the gaps, please address this gap.


Sincerely,


*Melynn Huntley*

Potter County Elections Administrator

806-379-2299

P.O. Box 9618

Amarillo, TX 79105-9618

OCA-RESPONSE-APPX-053

# Exhibit 5

000123

| | |
|---|---|
| **From**: | Grace Chimene [gchimene@lwvtexas.org] |
| on behalf of | Grace Chimene <gchimene@lwvtexas.org> [gchimene@lwvtexas.org] |
| **Sent**: | 2/10/2022 4:31:33 PM |
| **To**: | Acacia Coronado [acoronado@ap.org] |
| **Subject**: | Some more information on voter assistance. |
| **Attachments**: | Voter Assistance Talking Points.docx |

Some information on voter assistance.

--

**Grace Chimene** (she/her)

**President,** League of Women Voters of Texas

gchimene@lwvtexas.org

LWVTexas.org & VOTE411.org

512-940-9948

*Empowering Voters. Defending Democracy*

**Voter Assistance Talking Points**

SB 1 makes voting more onerous for voters who need assistance and makes assistants more vulnerable to criminal penalties.

- The assistant must complete **a form** stating: name and address, relationship to the voter, and whether the assistant received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee. The form must be incorporated into the official carrier envelope if the voter is voting by mail.

- Then the assistant must sign **a lengthy oath** that among other things states that they understand that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted - putting the responsibility squarely on the assistant to discern if the voter is eligible to receive assistance. This provision will make people leery of assisting voters.
    The new oath requires the assistant to affirm that:

    - the voter represented that they are eligible to receive assistance;

    - the assistant will confine their assistance to reading or directing the voter to read the ballot and marking or directing the voter to mark the ballot;

    - the assistant did not pressure or coerce (Senate Bill 1 also adds the word "encourage") the voter into choosing the assistant; and

    - the assistant will not communicate information about how the voter voted to another person.

    ➤ Failing to sign the oath is a state jail felony with a few exceptions.

- Criminal penalties: SB1 makes it easier to prosecute those who pay or who are paid for depositing mail ballots or assisting voters while voting by mail, by **eliminating some of the elements prosecutors must prove,** while also raising the punishment for such offenses Sections 6.06 (amending Election Code Section 86.0105).

- Also, the new law changes the current criminal prohibitions from ones that prohibit compensating another person for depositing a VBM ballot or assisting VBM voters as part of a performance-based compensation scheme. It would now be a **flat prohibition on compensating or even offering to compensate** another person for depositing a VBM ballot or assisting VBM voters, even if not part of a performance-based compensation scheme. These criminal prohibitions do not apply to one who is providing assistance and is "an attendant or caregiver previously known to the voter."

OCA-RESPONSE-APPX-056

# Exhibit 6

OCA-RESPONSE-APPX-057

**000126**

| | |
|---|---|
| **From**: | Jerrie Champlin [jbaralin@gvtc.com] |
| on behalf of | Jerrie Champlin <jbaralin@gvtc.com> [jbaralin@gvtc.com] |
| **Sent**: | 1/22/2022 10:26:36 AM |
| **To**: | gchimene [gchimene@lwvtexas.org] |
| **CC**: | Laraine Henchal [laraine.henchal@gmail.com] |
| **Subject**: | question re: "assistance" in filling out ABBM |

Thanks for all that you're doing!  I shared all the information, clarification and links re: the ABBM and voter registration forms with our Voter Services team which includes Joyce Doyle who also does VDR volunteer work for the local Democrats.  We are planning on including a pre-addressed, stamped envelope with ABBM forms & the Tips one-pager we provide at our LWV GOTV events and Joyce asked the question below.  IMO providing a pre-addressed, stamped envelope is not the same as helping someone complete the application or mailing for them.  Does LWVTX have any guidance/opinion on this specific question?

Jerrie

Jerrie Champlin
President, LWV-Comal Area
jbaralin@gvtc.com
830-643-4657

---

**From:** "Joyce Doyle" <joycedtx@gmail.com>
**To:** "Jerrie Champlin" <jbaralin@gvtc.com>
**Sent:** Friday, January 21, 2022 4:03:00 PM
**Subject:** Re: information on VOTE411, new forms, new laws etc

Thank you for this great information. We will be doing some Voter Registration soon and of course offer help with ABBM both there and at Dem HQ. Are you sure that it's OK to give out envelopes and stamps? I saw this on the SOS website under instructions for :

1.      "If someone helped you complete the application or mailed the application for you, that person must complete Section 11. [giving their name and address as an Assistant]

2.      Affix postage.

a.             If you printed the application you must place it in your own envelope and add postage."

It bothers me that he says "your own envelope." Maybe I'm being too suspicious and it just means they won't be supplying an envelope. It would be ridiculous if you couldn't give them an envelope and even a stamp. Did you address the envelope to the elections office?

I'll forward your information on to our VDRs. Thanks.
Joyce

OCAGH_00005900

**000127**

# Exhibit 7

OCA-RESPONSE-APPX-059

**000128**

4/6/22, 1:14 PM                                                 Texas Voting Information

English



# TEXAS

**UPCOMING ELECTION DATES & REGISTRATION DEADLINES**

Some elections in this list are local and do not apply for all Texas voters. Please click the "View all" button below to view all election dates in your state.



NEXT ELECTION: MUNICIPAL

**Saturday, May 7, 2022**

**Uniform Election**

View details

**24 MAY**   Tuesday, May 24, 2022   RUNOFF
**Runoff**
View details

**08 NOV**   Tuesday, November 8, 2022   GENERAL
**General Election**
View details

**Registration Deadlines**

BY MAIL (POSTMARKED)
Thursday, April 7, 2022

IN PERSON
Thursday, April 7, 2022

**MORE RESOURCES**

Find what's on your Ballot
Learn more ↗

Find your Polling Place
Learn more ↗

Register to vote in Texas
Learn more ↗



# TEXAS VOTING INFORMATION

Select an option:

Provisions for Voters with Disabilities

If you are a voter with a disability:

You may vote by mail if you have a sickness or physical condition that prevents you from voting in person without needing personal assistance or injuring your health. Voters with disabilities may fill out an annual application to vote by mail.

You may apply with the county voter registrar for a permanent exemption for a photo ID.

Voters who are physically unable to enter the polling place may use curbside voting during early voting and on Election Day.

If you vote in person, the notice of voting order allows a voter with a disability and their helper to request to move ahead of other voters in line.

**Persons who assist voters**

- Persons who assist voters with a Vote by Mail application, Vote by Mail ballot, or in-person ballot must provide their relationship to the voter and address, and for the Vote by Mail ballot and in-person ballot, the assistor must sign an oath and mark that they didn't receive compensation.
- Persons who drive 7 or more voters who qualify for curbside voting must sign a form.

If you are physically unable to mark your ballot, or cannot read the ballot, you are eligible for assistance. You may choose anyone as an assistant except your employer or an officer of your union, or an agent of either. The assistant must take an oath of assistance administered by an election official. The assistant may read the ballot to you and mark your ballot. If you do not choose your own assistant, two election officials (of different political parties in the General Election) may assist you. Poll watchers and inspectors can observe the assistance by election officials.

An interpreter may be used if you and the election official cannot speak the same language. The interpreter must be a registered voter of the county, must take the oath of assistance and may interpret for any number of voters.

All Texas counties must provide one direct electronic voting machine (DRE) at each polling place for use by voters with visual disabilities, so they may cast their ballot without assistance. These machines are equipped with headphones and a keypad.

To find out more about how you may receive support while voting, click here.

For more information, you can utilize the American Association of People With Disabilities (AAPD) resource.

If you are a person with a disability and have questions about your voting rights, call Disability Rights Texas' Voting Hotline at 1-888-796-VOTE (8683)

OCA-RESPONSE-APPX-060

OCAGH_00014852

**000129**

4/6/22, 1:14 PM                                                    Texas Voting Information

## PERSONALIZED VOTING INFORMATION

See What's On Your Ballot

Check Your Voter Registration

Find Your Polling Place

Discover Upcoming Debates and Forum in Your Area

Get Started

### VIEW UPCOMING
## DEBATES AND FORUMS IN YOUR AREA

Find Events

### TEXAS DEPARTMENT OF STATE

Secretary of State
208 East 10th Street
Thomas J. Rusk Bldg.
Austin 78701

512-463-5650

512-475-2761

elections@sos.state.tx.us

http://www.sos.state.tx.us/elections/index.shtml

### GET INVOLVED WITH
## LWV OF TEXAS

LWV volunteers work year-round to register new voters, host community forums and debates, and provide voters with election information they need.

Learn More

### ELECTION DAY PROBLEMS?
Report an election problem by calling:

1-866-OUR-VOTE (866-687-8683)
1-888-VE-Y-VOTA (en Español)

1-888-API-VOTE (Asian multilingual assistance)
1-844-YALLA-US (Arabic)

## DONATE

Help us provide accurate and unbiased voting information by donating today!

Make a donation

## YOUR VOTING GUIDE

Find what's on your ballot

Explore Now

VOTE

Contact Us            Follow us
About Us              Facebook
Get Involved          Instagram
Sponsors & Partners   Twitter
                      YouTube

Brought to you by

VOTE411 is committed to ensuring voters have the information they need to successfully participate in every election. Whether it's local, state or federal, every election is important to ensuring our laws and policies reflect the values and beliefs of our communities.

©2022 League of Women Voters Education Fund. All rights reserved.                    Terms of Use    Privacy Policy

OCA-RESPONSE-APPX-061

OCAGH_00014853

**000130**

# Exhibit 8
## Filed Separately Under Seal