IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 5:21-cv-844 (XR) (consolidated cases) |
| GREGORY W. ABBOTT, et al., | |
| Defendants. | |

**STATEMENT OF INTEREST OF THE UNITED STATES
REGARDING SECTION 208 OF THE VOTING RIGHTS ACT**

## TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ........................................................................ 1

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

STATUTORY BACKGROUND ................................................................................. 3

ARGUMENT ............................................................................................................... 3

    I.     Section 208 of the Voting Rights Act Preempts State Laws That Interfere with Its Voting Assistance Guarantee, Including Those Targeting Assistors. ....................... 3

    II.    Section 208 of the Voting Rights Act Guarantees a Voter's Choice in Assistor Subject Only to the Limitations Enumerated by Congress. ..................................... 5

        A.     States May Not Impose Additional Restrictions on Section 208's Right to Assistance. .................................................................................................. 5

        B.     States May Not Restrict Section 208's Guarantees While Purporting to Further Those Guarantees. ......................................................................... 9

        C.     Congress Did Not Sanction Supplemental Restrictions on Voter Assistance. ... 11

    III.    The United States' Enforcement Decisions Are Irrelevant Here. ........................... 11

CONCLUSION .......................................................................................................... 12

i

# TABLE OF AUTHORITIES

## Cases

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ....................................................................11

*Andrus v. Glover Constr. Co.*, 446 U.S. 608 (1980).........................................................................7

*Ark. United v. Thurston* (*Ark. United II*), 626 F. Supp. 3d 1064 (W.D. Ark. 2022), *appeal docketed*, No. 22-2918 (8th Cir. Sept. 12, 2022)........................................................3, 4, 5, 10

*Ark. United v. Thurston* (*Ark. United I*), No. 5:20-CV-5193, 2020 WL 6472651 (W.D. Ark. Nov. 3, 2020) ...............................................................................................................................6, 8

*Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020 (W.D. Wis. 2022) ...................................5

*Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597 (1915) ...................9

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 971 F.3d 340 (D.C. Cir. 2020) ...6

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ........................................................5

*Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020) ..............10

*Disability Rts. N.C. v. N.C. State Bd. of Elections* (*Disability Rts. N.C. I*), 602 F. Supp. 3d 872 (E.D.N.C. 2022)................................................................................................................5, 8, 10

*Disability Rts. N.C. v. N.C. State Bd. of Elections* (*Disability Rts. N.C. II*), No. 5:21-CV-361, 2022 WL 2678884 (E.D.N.C. July 11, 2022) ........................................................................5, 10

*Heckler v. Chaney*, 470 U.S. 821 (1985) .....................................................................................12

*Hillman v. Maretta*, 569 U.S. 483 (2013) ......................................................................................7

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016)...........................................................10

*Med. Ctr. Pharm. v. Mukasey*, 536 F.3d 383 (5th Cir. 2008) ........................................................6

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) ............................................................................8

*OCA-Greater Hous. v. Texas* (*OCA-Greater Hous. I*), 867 F.3d 604 (5th Cir. 2017) ......4, 5, 8, 10

*OCA Greater Hous. v. Texas* (*OCA-Greater Hous. II*), No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022)..................................................................................................1, 4

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).................................................................1, 4, 5

*Parada v. Garland*, 48 F.4th 374 (5th Cir. 2022) ..........................................................................7

*Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020), *rev'd and remanded*, 860 F. App'x 419 (6th Cir. 2021) ..................................................................................................8

*Quebrado Cantor v. Garland*, 17 F.4th 869 (9th Cir. 2021) ..........................................7

*Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) .........................8

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ....................................................................6

*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015)...........................................7, 8

*United States v. Cox*, 342 F.2d 167 (5th Cir. 1965)......................................................12

*United States v. Johnson*, 529 U.S. 53 (2000) .............................................................6

*United States v. Locke*, 529 U.S. 89 (2000) ..................................................................9

*United States v. Naranjo*, 259 F.3d 379 (5th Cir. 2001) ...............................................7

*United States v. Rand*, 924 F.3d 140 (5th Cir. 2019)....................................................7

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524 (5th Cir. 2013).........9

**Statutes**

28 U.S.C. § 517....................................................................................................................1

52 U.S.C. § 10307(a) ...........................................................................................................1

52 U.S.C. § 10308(d) ...........................................................................................................1

52 U.S.C. § 10310(c)(1)........................................................................................................3

52 U.S.C. § 10501(b)(1) .......................................................................................................3

52 U.S.C. § 10508...................................................................................................1, 3, 5, 8

52 U.S.C. § 20302(a)(8)(A) ..................................................................................................7

**Legislation and Legislative History**

Election Integrity Protection Act of 2021, Tex. S.B. 1, 87th Leg., 2d C.S., ch. 1 (2021) ...............2

S. Rep. No. 97-417 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 177 ..........................3, 4, 6, 9, 11

**Dictionaries**

Black's Law Dictionary (5th ed. 1979)............................................................................7

Oxford Eng. Dictionary (3rd ed. 2008, modified version published online 2023)........................6

## INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  These consolidated cases present important questions regarding the interpretation of Section 208 of the Voting Rights Act, 52 U.S.C. § 10508.  Congress has vested the Attorney General with authority to enforce Section 208 of the Voting Rights Act on behalf of the United States.  52 U.S.C. §§ 10307(a), 10308(d). Accordingly, the United States has a substantial interest in ensuring proper interpretation of Section 208.  The United States submits this Statement of Interest to provide guidance to the Court on certain issues under Section 208 and takes no position on any other issues related to Private Plaintiffs' Section 208 claims in this case.[1]

## INTRODUCTION

Section 208 of the Voting Rights Act provides that voters with disabilities and voters unable to read or write are entitled to voting assistance from "a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  52 U.S.C. § 10508.  The Supremacy Clause of the U.S. Constitution requires preemption of any state statute that, when enacted, makes compliance with both federal and state law impossible or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting Section 208.  *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373,

---

[1] A Statement of Interest is appropriate where, as here, issues implicating the United States' interests are raised solely in the context of private parties' claims.  *See, e.g.*, Statement of Interest of the United States at 1-2, ECF No. 83 (explaining that Section 2 of the Voting Rights Act provides a private right of action).  While the United States brought a Section 208 claim in this consolidated action, it was rendered moot by the court's injunction in *OCA Greater Houston v. Texas* (*OCA-Greater Hous. II*), No. 1:15-CV-679, 2022 WL 2019295 (W.D. Tex. June 6, 2022). *See* Order Granting in Part Denying in Part Mot. to Dismiss at 2-3 & n.3, ECF No. 444.

377 (2015) (internal citations omitted).  Limitations on voters' choice in assistor beyond the two exceptions provided by federal law and secondary requirements on assistors could each give rise to valid preemption claims.

Private Plaintiffs have alleged that Texas Senate Bill 1 violates Section 208's federal voting assistance guarantee by imposing impermissible burdens on assistors and limiting covered voters' choice of assistors.  Intervenor-Defendants seek summary judgment on these claims, arguing that: (1) state-law restrictions and requirements on assistors "of the voter's choice" do not violate Section 208 and therefore cannot be preempted; and (2) Section 208 permits state-law restrictions on who may serve as an assistor beyond the limitations provided in federal law.  *See* Intervenor-Defs. Mot. Summ. J. ("Int.-Defs. Mot.") at 27-30, ECF No. 608; *see also* State Defs. Notice of Joinder at 1, ECF No. 610.  Intervenor-Defendants' arguments ignore well-established federal preemption rules as well as Section 208's plain text, statutory context, and history.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2021, Governor Greg Abbott signed Senate Bill 1 ("SB 1") into law. *See* Election Integrity Protection Act of 2021, Tex. S.B. 1, 87th Leg., 2d C.S., ch. 1 (2021).  Five groups of private plaintiffs and the United States challenged the law in federal court, and those complaints were consolidated before this Court.  *See* Order at 2, ECF No. 31.  Relevant here, Private Plaintiffs challenge various provisions of SB 1 under Section 208 of the Voting Rights Act, alleging that they impose burdensome requirements on those who seek to assist voters with disabilities and those with limited English proficiency.  HAUL-MFV 2d Am. Compl. ¶¶ 27, 325, ECF No. 199; OCA-GH 2d Am. Compl. ¶¶ 161, 178-79, ECF No. 200; LULAC 2d Am. Compl. ¶¶ 287, 294, ECF No. 207; LUPE 2d Am. Compl. ¶¶ 266, 270-71, ECF No. 208.

Discovery in this case has largely closed.  Order Granting Mot. to Extend, ¶ 4, ECF No. 518.  Intervenor-Defendants have moved for summary judgment on Private Plaintiffs' Section 208 claims, Int.-Defs. Mot. at 3, and State Defendants have joined that motion, State Defs. Notice of Joinder at 1.

## STATUTORY BACKGROUND

Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  52 U.S.C. § 10508.  The Act defines the terms "vote" and "voting" broadly to encompass "all action necessary to make a vote effective."  *Id.* § 10310(c)(1).  Congress passed Section 208 to reinforce the nationwide ban on literacy tests by "assur[ing] meaningful voting assistance" and in turn "greater participation in our electoral process."  S. Rep. No. 97-417, at 62-63 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 177, 241; *see also* 52 U.S.C. § 10501(b)(1).

## ARGUMENT

I.    **Section 208 of the Voting Rights Act Preempts State Laws That Interfere with Its Voting Assistance Guarantee, Including Those Targeting Assistors.**

Congress enacted Section 208 with the "clear purpose to allow [a] voter to decide who assists them" during the voting process.  *Ark. United v. Thurston* (*Ark. United II*), 626 F. Supp. 3d 1064, 1085 (W.D. Ark. 2022), *appeal docketed*, No. 22-2918 (8th Cir. Sept. 12, 2022).[2]  It found "this broad protection was necessary to prevent discrimination against voters who require assistance because 'many such voters may feel apprehensive about casting a ballot in the

_____

[2] The Eighth Circuit granted a stay pending appeal.  *See* Order, *Ark. United v. Thurston*, No. 22-2918 (8th Cir. Sept. 28, 2022).

presence of, or may be misled by, someone other than a person of their own choice.'" *Id.* at 1085-86 (citing S. Rep. No. 97-417, at 62).  Intervenor-Defendants nonetheless argue that the provisions of SB 1 that target assistors—for example by requiring they make disclosures or attestations—cannot be challenged under Section 208 because the statute protects voters, not those who assist them.  *See* Int.-Defs. Mot. at 30.  But it is exactly because of Section 208's broad protection of voters that state laws targeting assistors do not per se escape Section 208 review.  Those laws may fall within Section 208's ambit, and thus be preempted, if they obstruct Congress' purpose by effectively hindering qualified voters from getting required assistance. *See Oneok Inc*., 575 U.S. at 377 (holding that state laws are subject to preemption "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").  If so, Section 208 is violated, and those state law provisions that conflict with Section 208 are preempted.  Intervenor-Defendants' contrary arguments fail.

To begin, Section 208 provides covered voters more than a bare right to assistance in the poll booth.  Rather, it assures that they will have access to any kind of assistance they need, at any step of the voting process, from a person of their choice other than their employer or a representative of their union.  *See, e.g.*, *OCA-Greater Hous. v. Texas* (*OCA-Greater Hous. I*), 867 F.3d 604, 615 (5th Cir. 2017) (explaining that assistance to vote "plainly contemplates more than the mechanical act of filling out the ballot sheet").  Section 208 thus preempts state laws that impermissibly constrain access to voting assistance in various ways.  *See id.* at 614 (concluding that a limitation on assistance "beyond the ballot box"—even with "near-unfettered choice of assistance *inside the ballot box*"—"impermissibly narrows the right guaranteed by Section 208" (emphasis in original)); *see also OCA Greater Hous. v. Texas* (*OCA-Greater Hous. II*), No. 1:15-CV-679, 2022 WL 2019295, at *3 (W.D. Tex. June 6, 2022) (modifying injunction

to enjoin new state law "limiting the activities eligible for assistance to 'marking or reading the ballot'" (citation omitted)); *Disability Rts. N.C. v. N.C. State Bd. of Elections* (*Disability Rts. N.C. II*), No. 5:21-CV-361, 2022 WL 2678884, at *7 (E.D.N.C. July 11, 2022) (holding Section 208 preempted a restriction on choice of assistor during absentee voting); *Ark. United II*, 626 F. Supp. 3d at 1087 (finding Section 208 preempted a limitation on the number of voters assistors could serve); *Carey v. Wis. Elections Comm'n*, 624 F. Supp. 3d 1020, 1032 (W.D. Wis. 2022) (enjoining restriction on absentee ballot return assistance).

Because a state law can interfere with a voter's substantive rights under Section 208 by regulating assistors just as readily as by regulating voters needing assistance, laws regulating assistors may stand as obstacles to accomplishing Congress's objectives in enacting Section 208. Determining whether they in fact do so is "a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Accordingly, state laws—such as SB 1—that target persons assisting voters are not per se shielded from review under Section 208. Courts may properly determine whether those laws effectively restrict Section 208 rights and, if so, the extent to which those laws are preempted. *See, e.g.*, *Oneok Inc.*, 575 U.S. at 377.

II.   **Section 208 of the Voting Rights Act Guarantees a Voter's Choice in Assistor Subject Only to the Limitations Enumerated by Congress.**

A.   **States May Not Impose Additional Restrictions on Section 208's Right to Assistance.**

Section 208's text is "unambiguous." *OCA-Greater Hous. I*, 867 F.3d at 614. It guarantees voters the right to assistance from "a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. No other exceptions are provided, and nothing in the statute suggests that extra-textual exceptions can be imposed or implied. *See Disability Rts. N.C. v. N.C. State Bd. of Elections*

(*Disability Rts. N.C. I*), 602 F. Supp. 3d 872, 877 (E.D.N.C. 2022) ("Other than these two excluded groups, the plain language of Section 208 gives voters unfettered choice over who may assist them with the voting process."); *see also Ark. United v. Thurston* (*Ark. United I*), No. 5:20-CV-5193, 2020 WL 6472651, at *4 (W.D. Ark. Nov. 3, 2020) ("There is nothing in the statutory language to suggest that a state may burden, unduly or otherwise, the right [to choice] articulated in § 208.").  "Where Congress creates specific exceptions to a broadly applicable provision, the 'proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'"  *Med. Ctr. Pharm. v. Mukasey*, 536 F.3d 383, 395 (5th Cir. 2008) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)).

Section 208's legislative history mirrors the statute's plain language.  The Senate Judiciary Committee's Report—which is the "authoritative source for legislative intent" regarding the 1982 amendments to the Voting Rights Act, *Thornburg v. Gingles*, 478 U.S. 30, 43 n.7 (1986)—confirms Congress's intent that covered voters must be allowed assistance "from a person of their own choosing, with two exceptions" only, S. Rep. No. 97-417, at 2.  Congress in fact viewed the guarantee of choice as so central to its remedial scheme that it noted Section 208's employer exception should yield in certain circumstances where "the burden on the individual's right to choose a trustworthy assistant would be too great to justify application of the bar on employer assistance."  *Id.* at 64.

Intervenor-Defendants argue, however, that Congress's use of an indefinite article in Section 208—guaranteeing voters "assistance by *a* person of the voter's choice"—somehow permits states to limit a voter's ability to choose an assistor.  Int.-Defs. Mot. at 28.  Not so.

First, an indefinite article, by definition, "[i]ndicat[es] indefiniteness" and can reasonably mean "one, some, any" member of the identified class.  *See* A (*adj.*), Oxford Eng. Dictionary

(3rd ed. 2008, modified version published online 2023) (Exhibit A).  Contemporary dictionaries

also recognized both usages.  *See Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,

971 F.3d 340, 354-55 (D.C. Cir. 2020) ("'A' means 'one' or 'any' . . . [but] is more often used in

the sense of 'any.'" (citing *A*, Black's Law Dictionary (5th ed. 1979))).  And, consistent with

both the definition of "a" and its common usage, courts routinely find that "a" serves as a

synonym for "any."  *See, e.g.*, *United States v. Naranjo*, 259 F.3d 379, 382 (5th Cir. 2001)

("'Such *a* violation' . . . refers to . . . *any* violation . . . ."); *United States v. Alabama*, 778 F.3d

926, 932 (11th Cir. 2015) ("The plain meaning of the term 'an election' is 'any election.'"

(quoting 52 U.S.C. § 20302(a)(8)(A)).

Intervenor-Defendants also overlook the significance of Section 208's enumerated

exceptions.  "[W]here Congress explicitly enumerates certain exceptions to a general prohibition,

additional exceptions are not to be implied, in the absence of evidence of a contrary legislative

intent."  *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (quoting *Andrus v. Glover Constr. Co*.,

446 U.S. 608, 616-17 (1980)); *see also United States v. Rand*, 924 F.3d 140, 144 (5th Cir. 2019).

As the Fifth Circuit aptly analogized in another context:

> [W]hen Congress provided the two exceptions to the . . . requirement, it created all
> the keys that would fit. It did not additionally create a skeleton key that could fit
> when convenient. To conclude otherwise "would turn this principle on its head,
> using the existence of two exceptions to authorize a third very specific exception."

*Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022) (quoting *Quebrado Cantor v. Garland*, 17

F.4th 869, 874 (9th Cir. 2021)).

Most importantly, though, Intervenor-Defendants' reading overlooks Section 208's

weightiest command: an assistor must reflect "the voter's choice."  Nothing in Section 208's

plain language, including the article used to modify the word "person," permits states to impose

exceptions to Section 208 that Congress neither contemplated nor approved, and States may not

7

substitute their judgment for Congress's.  Nor may they limit or override a voter's choice of assistor so long as the chosen assistor is not an employer or union representative or an agent thereof.  *See* 52 U.S.C. § 10508.  Section 208's use of "a" to modify "person" does not obviate Section 208's essential guarantee and it is no evidence of an "intent by Congress to allow states to restrict a federally created right, for Congress does not 'hide elephants in mouseholes.'" *Disability Rts. N.C. I*, 602 F. Supp. 3d at 878 (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)).

Finally, Intervenor-Defendants' textual analysis relies on only one source, *Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020), *rev'd and remanded*, 860 F. App'x 419 (6th Cir. 2021), for support and replicates the flawed reasoning of that outlier case.  *Nessel* flouts the settled canon that enumerated statutory exceptions are presumed to be exclusive, engages in an undue burden analysis unsupported by the statute and preemption law, and misreads the legislative history by overlooking the importance of voter choice as Congress's chosen remedy. *Compare Nessel*, 487 F. Supp. 3d at 619 (relying solely on dictionary definition of "a" to interpret Section 208), *with Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) (explaining that courts must look at the statutory context to determine the meaning of "a"); *see also Alabama*, 778 F.3d at 933 ("We have repeatedly found . . . that the context of a statute required us to read 'a' or 'an' to mean 'any' rather than 'one.'").  The only other court to address *Nessel*'s Section 208 analysis rejected it.  *See Ark. United I*, 2020 WL 6472651, at *4 ("[T]he Court is unconvinced by the opinion in *Nessel*.").[3]  This Court should reject it as well.

---

[3] The only other case Intervenor-Defendants point to where a court has found Section 208 permitted a state to narrow voters' choice of assistor beyond the explicit exceptions in Section 208 is *Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008), a decision predating *OCA-Greater Houston I*, in which the Fifth Circuit clarified that a "state cannot restrict

**B.     States May Not Restrict Section 208's Guarantees While Purporting to Further Those Guarantees.**

Intervenor-Defendants also argue that Section 208 permits states to restrict voters' choice of assistors if such restrictions further Section 208's goal of "prevent[ing] fraud, undue influence, and abuse."  Int.-Defs. Mot. at 28.  Intervenor-Defendants aptly note that "voters who need assistance 'are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated.'"  *Id.* at 28-29 (quoting S. Rep. No. 97-417, at 62).  But they overlook Congress's chosen remedy for that concern: a guarantee that voters may choose their assistor.  As the Senate Report explains:

> To limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote, the Committee has concluded that they must be permitted to have the assistance of a person of their own choice. The Committee concluded that this is the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter. To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens.

S. Rep. No. 97-417, at 62.

Congress's concern for voters cannot serve as the basis for gutting the very means Congress chose to address that issue.  In fact, these differing paths to a common goal underscore that preemption is appropriate.  *See Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 529 (5th Cir. 2013) ("As the Supreme Court has cautioned, . . . 'conflict is imminent' when 'two separate remedies are brought to bear on the same activity.'" (quoting *Crosby*, 530 U.S. at 380)); *see also United States v. Locke*, 529 U.S. 89, 115 (2000) ("[A] state law is not to be declared a help because it attempts to go farther than Congress has seen fit to

---

[Section 208's] federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined," 867 F.3d at 615.

go." (quoting *Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 604 (1915))).

Yet again, Texas may not substitute its judgment for that of Congress.  *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 (2016) (explaining that "[s]tates may not seek to achieve ends, however legitimate, through . . . means that intrude" on federal power); *see also Ark. United II*, 626 F. Supp. 3d at 1086 (noting there is no "exception to the Supremacy Clause when a state has a compelling interest in enacting a statute that conflicts with federal law"). Although Congress allowed for the possibility that state laws could permissibly regulate assistance in some circumstances, it directed that limitations on voter choice should be preempted.  *See id.* at 1087 (finding that, while Congress indicated that "that some state legislation on the topic of voter assistance is permissible . . . the one thing states cannot do is disallow voters the assistor of their choice"); *see also Disability Rts. N.C. I*, 602 F. Supp. 3d at 880 ("[G]iven the context of the legislative discussion around Section 208, it is unlikely that the Senate intended to permit state election procedures that directly restrict rights [to voter choice] guaranteed by the text of Section 208.").  In this case, "Congress contemplated the vulnerability of disabled voters when it discussed providing unrestricted choice of assistants and provided two explicitly excluded groups.  States are not permitted to limit the right to assistance further." *Disability Rts. N.C. II*, 2022 WL 2678884, at *5.

Consistent with Section 208's text, context, and history, courts have found state laws limiting who may serve as an assistor to be preempted both because compliance with such laws makes full compliance with Section 208 impossible, *see Disability Rts. N.C. II*, 2022 WL 2678884, at *4-6; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 235 (M.D.N.C. 2020), and because such laws "pose[] an obstacle to Congress's clear purpose to

allow the voter to decide who assists them at the polls," *Ark. United II*, 626 F. Supp. 3d at 1085; *see also, e.g.*, *OCA-Greater Hous. I*, 867 F.3d at 614-15.

     **C.**    **Congress Did Not Sanction Supplemental Restrictions on Voter Assistance**.

Intervenor-Defendants suggest that SB 1's restrictions on choice of assistor are "exactly the type of laws Congress sought to leave undisturbed when it enacted Section 208." Int.-Defs. Mot. at 28. But the Senate Report refutes that. It directly addresses which contemporary state laws Section 208 intended to leave undisturbed: those in "many states [that] already provide for assistance by a person of the voter's choice." S. Rep. No. 97-417, at 63. Congress could have preserved other more restrictive state laws by adding more exceptions to the text of Section 208. But it did not. Instead, the Senate Judiciary Committee was clear that guaranteeing voters their choice of assistor was "the most effective method of providing assistance while at the same time conforming to the pattern already in use in many states." *Id.* at 64. States may not second guess that decision or rewrite that history.

**III.**    **The United States' Enforcement Decisions Are Irrelevant Here.**

Intervenor-Defendants suggest it is "telling[]" that the United States has thus far declined to challenge certain provisions of SB 1 under Section 208. Int.-Defs. Mot. at 3. It is nothing of the kind. Congress provided a private right of action to ensure the Voting Rights Act's robust enforcement. As the Supreme Court has recognized, "if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General," "the achievement of the Act's laudable goal[s] could be severely hampered." *Allen v. State Bd. of Elections*, 393 U.S. 544, 556 (1969) (noting that "[t]he Attorney General has a limited staff" who may not always be able "to uncover quickly new regulations and enactments passed at the varying levels of state government"). Requiring the United States' participation on every claim and issue would thus

not only undermine Congress's clear purpose but also impede enforcement of federal voting rights statutes and risk leaving violations unremedied.

Further, the Department of Justice's enforcement decisions reflect a "complicated balancing of a number of factors," including a variety of prudential considerations beyond the merits of any specific claim.  *See Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (describing the "absolute discretion" that an agency has "not to prosecute or enforce").  The mere fact that the United States has not brought a claim does not—and cannot—be understood to imply that it believes the claim is without merit.  *Cf. United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc) ("The discretionary power of the attorney for the United States in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause.").  Hence, this Court should not place weight on the fact that the United States has not challenged certain provisions of SB 1 under Section 208.

## CONCLUSION

The United States respectfully submits the foregoing Statement of Interest to assist the Court in its evaluation of Private Plaintiffs' claims under Section 208 of the Voting Rights Act.

Date:  June 23, 2023

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division


*/s/ Dana Paikowsky*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
DANIEL J. FREEMAN
DANA PAIKOWSKY
MICHAEL E. STEWART
JENNIFER YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
dana.paikowsky@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Michael E. Stewart*
Michael E. Stewart
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 307-2767
michael.stewart3@usdoj.gov