# Exhibit C

```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                        SAN ANTONIO DIVISION

   LA UNION DEL PUEBLO ENTERO )
   et al.,                    )
         Plaintiffs,           )
                              ) Civil Action No. SA-21-cv-
   v.                         )      00844-XR
                              ) (Consolidated Cases)
   STATE OF TEXAS, et al.,    )
         Defendants.           )
```

         ----------------------------------------

               ORAL DEPOSITION OF
                 KEITH INGRAM
               APRIL 26, 2022
                  Volume 1

         ----------------------------------------

    ORAL DEPOSITION OF KEITH INGRAM  produced as a witness at the instance of Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 26th day of April, 2022 from 9:18 a.m. to 2:19 p.m. before Nancy Newhouse, a Certified Shorthand Reporter in and for the State of Texas, reported by oral shorthand, located at Price Daniel Sr. State Office Building, 209 West 14th Street, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure, and the provisions stated on the record or attached hereto.

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 3 of 11

5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 129  
129

1  can watch that process.  Sometimes poll watchers think
2  that they can watch anybody being assisted, and that's
3  not the case.  So the only possible example of harassing
4  voters is something that, you know, they would try to
5  watch a voter being assisted by an assistant of their
6  choice, which is not allowed, and it wasn't allowed
7  before SB 1, it's not allowed after SB 1.
8       Q.  And so you told me that besides the example
9  you gave earlier, you couldn't think of others, is it
10 fair to say that there might, in fact, be other ways in
11 which a watcher might harass, as that term is used under
12 Section 4.06 --
13          MR. JEFFREY WHITE:  Objection, form.
14      Q.  (BY MR. KANTERMAN)  -- a voter?
15      A.  I'm sure there are a lot of ways you could
16 harass a voter.  You could, you know, get in their
17 personal space and stand too close to them, or try to
18 see what they're marking on their ballot, but we haven't
19 had that come up.  We haven't had that come up before SB
20 1 or since SB 1.
21      Q.  And based on your recent response, is it fair
22 to say that trying to stand too close to a voter or
23 being in their personal space would constitute
24 harassment, as the Secretary of State's Office
25 understands it, as used in Section 4.06?

Entero v Texas 5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

129 Keith Ingram  
Page: 129

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 4 of 11

5:21-cv-844 (XR)
4/26/2022

Entero v Texas
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 143
143

1  the watcher may sit or stand near, quote, "enough to see
2  and hear," closed quote?
3       A.  Instead of conveniently near.
4       Q.  I'm sorry, let me just -- I want to make sure
5  I finish my question so the record is clear, please?
6            SB 1 modifies 33.056 to say that the
7  watcher may stand or sit near enough to see and hear the
8  election officer conducting the observed activity, is
9  that right?
10      A.  That's right.
11           MR. JEFFREY WHITE:  Objection, form.
12      A.  It changed the standard from conveniently near
13 to near enough to see and hear.  Subjectively,
14 objectively there's no difference between those two,
15 because conveniently near meant near enough to see and
16 hear.
17      Q.  (BY MR. KANTERMAN)  And so my question to you
18 is, in whose view, or from whose perspective is somebody
19 near enough to see and hear?
20      A.  There's the rub.  So pre SB 1, post SB 1, that
21 judgment, is it conveniently near enough?  The -- the
22 people who work at the place think differently than the
23 poll watcher, and in my experience, both the people who
24 work at the Central Count or Ballot Board and the poll
25 watchers are maxima lists in their positions.  They --

Entero v Texas 5:21-cv-844 (XR)
4/26/2022

Entero v Texas
National Court Reporters Inc. 888.800.9656

143 Keith Ingram
Page: 143

1　then that can be different.

2　　　　And we've often found, from talking on

3　the phone to both parties involved at, you know, the

4　same or almost the same time, that it's a lack of

5　communication that -- that often causes

6　misunderstanding.

7　　Q.　And so I understand your testimony to be that

8　is a subjective decision made by the local officials on

9　the ground at the polling place, is that right?

10　　A.　That's right.

11　　Q.　And so my question to you is slightly

12　different.  I'm looking for the Secretary of State's

13　Office's opinion about an interpretation of this law.

14　　A.　And what I'm telling you is we don't have an

15　opinion.  We would tell the presiding judge, use your

16　best judgment.  Now, if they've given you an

17　explanation,  and you're ignoring their explanation,

18　then be careful,  because it's a -- it's a Class A

19　misdemeanor to obstruct a poll watcher, so think about

20　what you're doing, maybe call your county election

21　officer.  Maybe call your county attorney before you

22　make a final choice, but, if they're being disruptive,

23　you've got the right to remove them.  That's your call.

24　　Q.　And so just to be clear, the Secretary of

25　State's Office has no position about what distance is

1　close enough to see or hear?

2　　　A.　No, of course not.

3　　　Q.　And it's the Secretary of State's Office's

4　position --

5　　　A.　And we didn't have a position about how -- how

6　close was conveniently near, either, we -- it's the

7　same.  It's the same thing, conveniently near or near

8　enough to see and hear, substantively, from our

9　perspective, no difference.

10　　　Q.　And you have no opinion on either, is that

11　correct?

12　　　A.　That's correct.  That was -- we'd always tell

13　the presiding judge, it's in your discretion to decide

14　that fact, be careful, because it's a crime to obstruct

15　a poll watcher.

16　　　Q.　But as we discussed earlier, SB 1 also

17　prohibits harassing behavior, does it not?

18　　　A.　Harassing behavior was prohibited before.

19　　　Q.　And so my question to you is, does Section

20　4.07(a) find tension with that prohibition against

21　harassing behavior?

22　　　A.　No, no more tension.  That has always been the

23　case between poll watchers who want to observe the

24　activity and poll workers who feel like they're crowded.

25　That has always been a source of tension.

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 7 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 155 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 155 |

1  denial of your right to be conveniently near.  Right?  I
2  mean, substantively, the law has not changed.  This
3  doesn't add anything, other than what was implicit
4  before.
5      Q.  You say implicit before, implicit in what way?
6      A.  When it -- whenever the poll watchers have the
7  right to stand conveniently near enough to observe
8  election activity, that's they've got the right to move
9  around to do that, and we -- we've told lots of election
10 administrators, you can't confine poll watchers to a
11 specific area.  SB 1 didn't change that.
12     Q.  And so absent 33.056(b)'s restriction, or
13 restrictions, is the Secretary of State's Office's view
14 that there are no other limitations on the watchers'
15 activities?
16     A.  Of course not.
17     Q.  I don't understand when you say of course not,
18 can you explain?
19     A.  They can't disrupt the voting process, they
20 can't disrupt the Central Counting process, they can't
21 harass voters, they can't breach the peace, they can't
22 commit crimes.
23     Q.  And so in your view, would it be a denial of
24 free movement to prevent a poll watcher from standing
25 within one foot of a voter at a time where they're not

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 8 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 156 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 156 |

1   in a restricted location such as the voting station?

2       A.  We don't get into those kind of details.  If

3   -- if a presiding judge thinks that a poll watcher is

4   trying to provoke a voter by standing too close to them

5   at the check-in table, the presiding judge needs to

6   address that.

7       Q.  And so again, that's a subjective inquiry left

8   to the local officials, is that right?

9       A.  And it always has been, that's why they've got

10  discretion.  That's why they explicitly have been given

11  discretion, because these kind of things need that

12  discretion in order to be resolved.

13      Q.  What trains, and materials or instructions has

14  your office published relating to Section 4.07's

15  amendment to the law?

16      A.  I don't know if we've addressed that,

17  specifically, but it's in the same materials that we

18  updated for all the poll watchers as well as poll

19  workers.

20      Q.  But sitting here today, nothing specific that

21  you can think of that contains instruction about 4.07,

22  is that right?

23      A.  They have whatever they have, you can read

24  them for yourself, but the idea of 4.07 is certainly

25  covered.  Whether or not we talk about the specific

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 9 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 158 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 158 |

1  Q. Does your office have an idea or

2  interpretation of the law as to what would make, quote,

3  "observation not reasonably effective," closed quote?

4  MR. JEFFREY WHITE: Objection, form.

5  A. No. That's going to be up to the poll watcher

6  to -- to alert somebody that their ability to

7  effectively observe has been deteriorated in some way.

8  Q. (BY MR. KANTERMAN) And again, I assume that

9  the ultimate determination of whether or not that report

10  from the poll watcher is, in fact, the correct or

11  incorrect position will lie with the local official, is

12  that fair?

13  A. The presiding judge of whatever location

14  they're at.

15  Q. And does the Secretary of State's Office have

16  any opinion as to the definition of the term reasonable

17  effectiveness?

18  A. No. No. And again, this doesn't change the

19  law. They -- they've always had the ability to

20  effectively observe whatever activity they want to

21  observe, and they've always had the ability to holler

22  obstruction if they believe they're being obstructed.

23  Q. If an election judge were to ask an unruly

24  poll watcher to stand 10 feet back from voting booths,

25  in the Secretary of State's Office's view, could that

1　person be charged with a crime?

2　　A.　That person being who?

3　　Q.　I should clarify, thank you.

4　　　　If the election judge asks a poll watcher
5　to stand 10 feet back from voting booths, could the
6　election judge be charged with a crime in your office's
7　view?

8　　A.　Well, I don't know, maybe.  It just depends.
9　I mean, poll watchers don't have the right to go to poll
10　-- to voting booths, so being a clear distance marker,
11　you know, other than whenever a voter is being assisted
12　by election workers at the polling place, it's probably
13　not a bad idea.  But if the poll watcher thinks that
14　their ability to stand conveniently near or near enough
15　to see and hear is being impeded by this, then they've
16　got the right to complain about it.

17　　Q.　And again, ultimately, the determination of
18　who is in the right in that position lies with the local
19　officials, correct?

20　　A.　Well, you say ultimately, but that -- that
21　really means in the first instance.  Right?  So the
22　presiding judge decides a poll worker (sic) is getting
23　too close to voters and harassing them, and the poll
24　watcher obviously doesn't agree with that, but the poll
25　watcher gets warned, the poll watcher keeps doing it,

Case 5:21-cv-00844-XR   Document 643-4   Filed 06/23/23   Page 11 of 11

5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 160  
160

1  the presiding judge kicks them out, there is a criminal
2  complaint.  The grand jury is going to be the ultimate
3  decider of whether or not, and then the jury if it
4  actually goes to a trial.
5           I mean, it's a criminal activity if you
6  -- if you obstruct a poll watcher, so just because a
7  presiding judge gets to make a determination in the
8  first instance, doesn't mean that that's not going to
9  get reviewed.
10      Q.  Does the Secretary of State's Office have a
11  view as to specific conduct that 4.09 prohibits?
12           MR. JEFFREY WHITE:  Objection, form.
13      A.  No.  I mean, it's just -- it's just trying to
14  put some gloss on what obstructing a poll watcher means,
15  so they're saying obstructing the view or the distance
16  so that it can't be reasonably observed or reasonably
17  effectively observed.  I mean, that just puts some gloss
18  on what we already know, that it's a crime to obstruct a
19  poll watcher.
20      Q.  (BY MR. KANTERMAN)  And what materials, if
21  any, has your office made available, available or
22  published, relating to Section 4.09's amendment to the
23  law?
24      A.  The -- the -- the same series of materials
25  that we talked about before, the -- all the poll watcher

Entero v Texas 5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

160 Keith Ingram  
Page: 160