# Exhibit R

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al, Plaintiffs,

VS.

GREGORY W. ABBOTT, et al, Defendants.

CIVIL ACTION NO.: 5:21-cv-844-XR

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

GRACE CHIMENE

Designated Representative of League of Woman Voters of Texas

APRIL 26, 2022

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF GRACE CHIMENE, produced as a witness at the instance of the DEFENDANTS, and duly sworn, was taken in the above-styled and numbered cause on April 26, 2022, from 10:14 a.m. to 5:13 p.m. before Miah Parson, CSR in and for the State of Texas, reported by oral stenography, at the Disability Rights Texas offices, 2222 W. Braker Lane, Austin, Texas 78758, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A. Yes.
Q. Does the League contend that Ms. Espinoza is disabled.
A. Yes.
Q. What is her disability?
A. She is a juvenile rheumatoid arthritis wheelchair user.
Q. What major life functions or activities is Ms. Espinoza unable to perform?
MR. CLANCY: Objection. Calls for a legal conclusion.
A. I don't -- I don't know. I know that she is a wheelchair user so I would presume that means she can't walk. I also by having met -- I've actually met Julie she has very limited range of motion of her arms and her legs. She's a small person who cannot move well. She is in a wheelchair.
Q. (BY MR. THOMPSON) Does the League know anything else about Ms. Espinoza's disability?
A. Only that I asked her specifically because I had met her what it -- what was -- why she was in the wheelchair and she told me she had juvenile rheumatoid arthritis.
Q. How old is Ms. Espinoza?
A. She told me, so I could be wrong, it's -- -

as Exhibit 2 says that Ms. Espinoza is concerned that anyone who assists her could be accused of violating SB1. Do you see that?

A. Yes.

Q. And it further says she no longer wants to vote in-person. Do you see that?

A. Yes.

Q. Does the League know the basis for Ms. Espinoza's concern that anyone who assists her could be accused of violating SB1?

A. Yes.

Q. What is the basis for her concern?

A. She is very concerned about the oath which -- that the assisters have to take. That her concern is about the part that says you only can read the ballot and that assister would have to sign that they're only to read the ballot. That is the part that she expressed that they wouldn't be able to do all the other activities that she needs an assister to do to help her with voting and the communication that would have to go back and forth between her and her assister.

Q. Does the League know whether Ms. Espinoza is aware that she can receive assistance from someone who doesn't take the oath?

MR. CLANCY: Objection. Vague. Calls for

Exhibit 2, correct?

A. Yes.

Q. Has the League identified any other members that it contents are injured or will be injured by SB1?

MR. CLANCY: Objection to the extent it calls for a legal conclusion.

A. I have I have other people I know that our League members that have sent me emails or filled out a survey letting me know that they had issues with voting by mail. So my answer is yes. What was the question again.

MR. THOMPSON: Objection; unresponsive.

Q. (BY MR. THOMPSON) Has the League identified any members other than the five listed in the interrogatory responses that they contend are injured or will be injured by SB1?

MR. CLANCY: Objection to the same. Calls for a legal conclusion.

A. So yes.

Q. (BY MR. THOMPSON) Who are those members?

A. They are members who contacted me either via emails or on the voter survey.

Q. Can you provide their names?

A. Not off the top of my head.

Q. Where can I find their names?

A. The names would be on the voter survey or on the emails that were -- 'cause some people did both, that were submitted at your request like --

Q. You're referring to documents produced as part of discovery?

A. Yes.

Q. Has the League had any communications with those members about their alleged injuries apart from the emails and the voter survey to which you're referring?

A. Say it -- say it again.

Q. Has the League had other communications with identified members about their alleged injuries besides the communications that took place in the emails and the voter survey produced in discovery?

A. I did speak on the phone. We're often called and asked to provide voters, if the media calls and says can you please help us find a vote who's having this issue so that we can explain to the public and to the on watchers what is going on. So I contacted some folks who I knew had an issue with voting by now and so they told me their story either in an email, but also by telephone.

Q. And who are the people you contacted by telephone?

Q. Understand you don't know the number of voters who might fit that category. My question is slightly different. Can you identify any such voter other than Julie Espinoza, regardless of what the total number is?
A. I do not have and I personally as Grace Chimene, and the League of Women Voters does not have an identity of a individual voter. I don't believe at this time.
Q. Okay. The next topic in the deposition notice, Topic 20?
A. 20?
Q. Says the League's knowledge and factual basis for its contention in Paragraph 161 of your complaint that many people will be unwilling to risk criminal prosecution for inadvertently violating the oath's restrictions, but would serve as an assistant, but for those penalties. Do you see that?
A. Yes.
Q. Sitting here today, can you identify any person who fits this criteria?
A. I've had League members come up to me and say that. Do I know their names, no. There's many League members, but I have had League people say that they're not going to be assisting voters because of the oath.
Q. You don't know their names?

Q. Do you remember what Section 6.06 is about?

A. No.

Q. For purposes of my question just assume that Section 6.06 is about the prohibition on compensation. Does that make sense to you?

A. So factual basis. So when -- so will chill voter's abilities select assistant of the person's choice when voting. What I would say is factual basis. That I have heard -- my concern is for the members, the voters, of course, themselves, but the members of the League that go out and assist a voter and they are putting themselves at risk because they may accidently or inadvertently or without take a form of compensation that they don't realize is compensation. So these would be league members perhaps who would get to park for free and free parking, and then go in and help an assisted if they were helping somebody. This is about you said 606 is about the compensation. If -- if that league member or assister goes to someplace in assisting -- and as assisting a voter and they accept a cup of coffee if they -- if they, you know, have a glass of tea with somebody is that taking compensation from somebody? Often times, you know, people are very happy to provide something to this person who helped them. It doesn't mean what -- it means that they are just sharing

something for the voter, with the assistant. You know if they give them a cookie. I don't know. That -- that is my concern there is that the voters won't be able to use -- happily people go over and help them because they would be concerned -- not the voter, but more like the member would be concerned that they would accidentally be accused of taking something from a voter. So that's my understanding.

MR. THOMPSON: Objection; nonresponsive.

Q. (BY MR. THOMPSON) Topic 21 is about voter's ability to select the assistant of their choice, correct?

A. Yes, but.

Q. Can you identify any voters who are unable to select the assistant of their choice due to the prohibition on compensation during the March 2022 primary elections.

MR. CLANCY: Objection to the extent it calls for legal conclusion.

A. So the -- I can't name an individual voter. I do recall getting notices from some leagues that they were not to show up at a nursing home and provide any information or assistance with voting by mail. That was at the nursing home asking us -- asking one of the ladies not to participate in that. I don't remember