# Exhibit S

```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
                     SAN ANTONIO DIVISION
LA UNION DEL PUEBLO            §
ENTERO, et al.,                §
                               §
     Plaintiffs,               §
                               §
vs.                            § CASE NO. 5:21-cv-844-XR
                               §
GREGORY W. ABBOTT, et          §
al.,                           §
                               §
     Defendants.               §
_____

OCA-GREATER HOUSTON, et        §
al.,                           §
                               §
     Plaintiffs,               §
                               §
vs.                            § CASE NO.1:21-cv-780-XR
                               §
JOHN SCOTT, et al.,            §
                               §
     Defendants.               §
_____

HOUSTON JUSTICE, et al.,       §
                               §
     Plaintiffs,               §
                               §
vs.                            § CASE NO.5:21-cv-848-XR
                               §
GREGORY WAYNE ABBOTT, et       §
al.,                           §
                               §
     Defendants.               §
_____
```



Page 2

```
LULAC TEXAS, et al.,         §
                             §
     Plaintiffs,             §
                             §
vs.                          § CASE NO. 1:21-cv-0786-XR
                             §
JOHN SCOTT, et al.,          §
                             §
     Defendants.             §
_____

MI FAMILIA VOTA, et al.,     §
                             §
     Plaintiffs,             §
                             §
vs.                          § CASE NO. 5:21-cv-0920-XR
                             §
GREG ABBOTT, et al.,         §
                             §
     Defendants.             §
_____

UNITED STATES OF AMERICA,    §
                             §
     Plaintiff,              §
                             §
vs.                          § CASE NO. 5:21-cv-1085-XR
                             §
THE STATE OF TEXAS, ET       §
AL.,                         §
                             §
     Defendants.             §
_____
```

ORAL VIDEOTAPED DEPOSITION
CORPORATE REPRESENTATIVE OF
MI FAMILIA VOTA
MS. ANGELICA RAZO
April 5, 2022



Page 3

ORAL VIDEOTAPED DEPOSITION OF THE CORPORATE REPRESENTATIVE OF MI FAMILIA VOTA, MS. ANGELICA RAZO, produced as a witness at the instance of the Defendants and duly sworn, was taken in the above-styled and numbered cause on the 5th day of April, 2022, from 9:52 a.m. to 7:05 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine at the offices of Reed Smith LLP, 811 Main Street, Suite 1700, Houston, Texas 77002, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



Page 180

1        A.   No.
2        Q.   Any other community?
3        A.   No.
4        Q.   Okay.  So when you say this is a bigger
5   impact on Latinos, what's your basis for saying that?
6        A.   I'm saying that based off the community
7   that we serve, our -- the engagement that we've done,
8   at least in the past two, three, four years in Texas,
9   we've noted like just in the Latino community there
10  is a need for voter assistance.
11       Q.   Understood.  My question is a little
12  bit different.  I guess what I'm asking you is:  If
13  all you deal with is the Latino community by and
14  large, how would you have any idea what's going on in
15  other communities?
16       A.   We work in coalition with several other
17  organizations that are focused on doing outreach to
18  the communities that you stated.
19       Q.   Okay.  Do you ever compare notes about
20  what level of assistance is needed?
21       A.   Maybe to not the detail that you're
22  asking for.
23       Q.   Well, I guess I'm trying to figure out,
24  if you're telling me Latinos need something more or
25  less than another group, how do you figure that out?



Page 181

1      A.   We know the different layers and -- we
2  know the different layers that our community has
3  again, naturalized citizens, they tend to be first
4  time voters, new voters and frequent voters.  Those
5  are things that we can extrapolate based off
6  population, data, and then also past voter turn out
7  data.  And so we look at the baseline of what is the
8  existing voter education -- what is the level of
9  voter education that our community has and what is
10 The gap and what are the individualized -- what are
11 the specific and unique moments where Latino voters
12 might require more assistance then an average Texas
13 voter.
14      Q.   I get that you're comparing it to the
15 average Texas voter, I'm asking you, are you
16 comparing it to other racial groups?
17      A.   No.
18      Q.   Okay.  So as you sit here today, it's
19 great that you're comparing it to the average Texan,
20 but you don't know how Latinos do compared to, for
21 instance, Black Texans, White Texans, Asian Texans,
22 and so forth?
23      A.   No.
24      Q.   So aside from -- I just want to close
25 the loop on Section 6.05 here.  If I understand you



```
                                                              Page 185
 1                 Q.   Let me ask you this:  We talked earlier
 2    today about vote harvesting, do you remember that?
 3                 A.   Uh-huh, yes.
 4                 Q.   Let's say a person in a nursing home is
 5    a nurse, and she gets paid by somebody to go around
 6    and gather voter registrations from everybody in the
 7    nursing home, do you think that that nurse should be
 8    allowed to not identify her relationship to the
 9    people she's gathering registrations from?
10                 A.   Can you say that again?
11                 Q.   Sure.
12                 A.   Give me that example again.
13                 Q.   Sure.  A nurse in a nursing home
14    gathers voter registrations from people in the
15    nursing home, so everybody in there, helps them fill
16    them out.  Do you think that that nurse should be
17    allowed to not identify her relationship to the
18    people she's gathering registrations from?
19                 A.   I can't speak to that example.  It's a
20    concern around voter harvesting?
21                 Q.   Well, I think it is.  And so my
22    question to you is:  Would you see that as a problem?
23                 A.   Our focus at Mi Familia Vota is to
24    ensure that the voting process and the people that
25    are assisting folks throughout the voting process
```



Page 186

1  don't feel like they cannot help someone because they
2  have to give an identity or put down their name or
3  their relationship, that they get confused, tripped
4  up, accidentally put down something wrong.
5            Q.   I understood you to say earlier that
6  Mi Familia Vota pays people who as part of their job,
7  also bring in registrations; is that right?
8            A.   Correct.
9            Q.   Does Mi Familia Vota have a problem
10 with their employees identifying their relationship
11 to the people that they're assisting?
12           A.   Say that one more time.
13           Q.   Does Mi Familia Vota have a problem
14 with their employees identifying their relationship
15 to the person that they're assisting?
16           A.   Can you give me an example?
17           Q.   Sure.  I guess let's say one of your
18 employees, who as part of their job is gathering a
19 registration from someone, does Mi Familia Vota have
20 a problem with that employee writing down on the
21 carrier envelope, I'm an employee of Mi Familia Vota
22 assisting at the request of the person?
23           A.   The folks that are within our staff
24 that support voter registration, are voter -- like
25 voter -- deputy voter volunteer registrars, and so



Page 248

1   that in -- I believe she said in the 2020 election,
2   she asked for assistance from a poll worker and she
3   didn't feel -- she said she did not feel that the
4   assistance -- that the assistance that was provided
5   was essentially mishandling of her ballot and her
6   voting -- voting choices, and she was not certain
7   that when she cast her ballot, she had received
8   appropriate assistance to make her own decisions to
9   vote.
10              Q.  Now, if a poll watcher has been there
11  to see and hear that and had reported that to a
12  polling judge, that could have been resolved at the
13  polling place, right?
14              MR. PROWANT:  Objection:  Form.
15              THE WITNESS:  I can't -- I can't speak
16  to that.
17              Q.  (BY MR. HUDSON)  Well, I'm asking you:
18  Based on the example that you give me, if somebody
19  was there to catch a person coercing a voter to vote
20  in a way that they didn't want, that person watching
21  would be able to report it to a presiding judge,
22  right?
23              A.  Perhaps so.  It's very -- I can't speak
24  to that scenario playing out just like that.
25              Q.  Well, you admit that it is a scenario

