*EXHIBIT 1*

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 2 of 15

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 1 |
|---|---|---|
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 1 |

```
 1          UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF TEXAS
 2                SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO ENTERO )
     et al.,                    )
 4        Plaintiffs,           )
                                ) Civil Action No. SA-21-cv-
 5   v.                         )     00844-XR
                                ) (Consolidated Cases)
 6   STATE OF TEXAS, et al.,    )
          Defendants.           )
 7

 8

 9
                 ---------------------------------------
10
                          ORAL DEPOSITION OF
11                          KEITH INGRAM
                            APRIL 26, 2022
12                            Volume 1

13               ---------------------------------------

14                                 `

15

16          ORAL DEPOSITION OF KEITH INGRAM  produced

17   as a witness at the instance of Plaintiff, and duly

18   sworn, was taken in the above-styled and numbered cause

19   on the 26th day of April, 2022 from 9:18 a.m. to 2:19

20   p.m. before Nancy Newhouse, a Certified Shorthand

21   Reporter in and for the State of Texas, reported by oral

22   shorthand, located at Price Daniel Sr. State Office

23   Building, 209 West 14th Street, Austin, Texas 78701,

24   pursuant to the Federal Rules of Civil Procedure, and the

25   provisions stated on the record or attached hereto.
```

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 3 of 15

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 157 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 157 |

1  language of, you know, conveniently near versus near
2  enough to see and hear, because substantively didn't
3  make a change.  Free movement hasn't, it doesn't add
4  anything, that's just making explicit what was implicit
5  before.
6      Q.  Let's stay with Exhibit 19, if we could,
7  please, and look at Section 4.09, which is on Page 29?
8          And sir, just let me know, if you could,
9  when you've arrived?
10     A.  Okay.
11     Q.  Beginning with Line 8 on Page 29 of Exhibit
12 19, 4.09(a) says, and amends 33.061(a) to make it an
13 offense to take any action to obstruct the view of a
14 watcher, or distance the watcher from the activity or
15 procedure to be observed in a manner that would make
16 observation not reasonably effective, do you see that?
17     A.  I do.
18     Q.  And we've talked about this a little bit
19 already, do you have an understanding of the activities
20 that would obstruct the view of a watcher, as that term
21 is used in this section?
22     A.  You know, it could be as -- as much as just
23 standing between the watcher and the activity being
24 viewed, it could be making them stay in a designated
25 area, I mean, it could be a lot of things.

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 4 of 15

| | | |
|---|---|---|
| 5:21-cv-844 (XR)<br>4/26/2022 | **Entero v Texas**<br>NATIONAL COURT REPORTERS INC 888.800.9656 | Keith Ingram 158<br>158 |

1    Q.   Does your office have an idea or
2    interpretation of the law as to what would make, quote,
3    "observation not reasonably effective," closed quote?
4           MR. JEFFREY WHITE:  Objection, form.
5    A.   No.  That's going to be up to the poll watcher
6    to -- to alert somebody that their ability to
7    effectively observe has been deteriorated in some way.
8    Q.   (BY MR. KANTERMAN)  And again, I assume that
9    the ultimate determination of whether or not that report
10   from the poll watcher is, in fact, the correct or
11   incorrect position will lie with the local official, is
12   that fair?
13   A.   The presiding judge of whatever location
14   they're at.
15   Q.   And does the Secretary of State's Office have
16   any opinion as to the definition of the term reasonable
17   effectiveness?
18   A.   No.  No.  And again, this doesn't change the
19   law.  They -- they've always had the ability to
20   effectively observe whatever activity they want to
21   observe, and they've always had the ability to holler
22   obstruction if they believe they're being obstructed.
23   Q.   If an election judge were to ask an unruly
24   poll watcher to stand 10 feet back from voting booths,
25   in the Secretary of State's Office's view, could that

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 5 of 15

5:21-cv-844 (XR)
4/26/2022

Entero v Texas
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 159
159

1  person be charged with a crime?

2     **A.  That person being who?**

3     Q.  I should clarify, thank you.

4           If the election judge asks a poll watcher

5  to stand 10 feet back from voting booths, could the

6  election judge be charged with a crime in your office's

7  view?

8     **A.  Well, I don't know, maybe.  It just depends.**

9  **I mean, poll watchers don't have the right to go to poll**

10 **-- to voting booths, so being a clear distance marker,**

11 **you know, other than whenever a voter is being assisted**

12 **by election workers at the polling place, it's probably**

13 **not a bad idea.  But if the poll watcher thinks that**

14 **their ability to stand conveniently near or near enough**

15 **to see and hear is being impeded by this, then they've**

16 **got the right to complain about it.**

17    Q.  And again, ultimately, the determination of

18 who is in the right in that position lies with the local

19 officials, correct?

20    **A.  Well, you say ultimately, but that -- that**

21 **really means in the first instance.  Right?  So the**

22 **presiding judge decides a poll worker (sic) is getting**

23 **too close to voters and harassing them, and the poll**

24 **watcher obviously doesn't agree with that, but the poll**

25 **watcher gets warned, the poll watcher keeps doing it,**

Entero v Texas 5:21-cv-844 (XR)
4/26/2022

Entero v Texas
National Court Reporters Inc. 888.800.9656

159 Keith Ingram
Page: 159

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 6 of 15

| | | |
|---|---|---|
| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 160 |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 160 |

1    the presiding judge kicks them out, there is a criminal

2    complaint.  The grand jury is going to be the ultimate

3    decider of whether or not, and then the jury if it

4    actually goes to a trial.

5              I mean, it's a criminal activity if you

6    -- if you obstruct a poll watcher, so just because a

7    presiding judge gets to make a determination in the

8    first instance, doesn't mean that that's not going to

9    get reviewed.

10       Q.   Does the Secretary of State's Office have a

11   view as to specific conduct that 4.09 prohibits?

12             MR. JEFFREY WHITE:  Objection, form.

13       A.   No.  I mean, it's just -- it's just trying to

14   put some gloss on what obstructing a poll watcher means,

15   so they're saying obstructing the view or the distance

16   so that it can't be reasonably observed or reasonably

17   effectively observed.  I mean, that just puts some gloss

18   on what we already know, that it's a crime to obstruct a

19   poll watcher.

20       Q.   (BY MR. KANTERMAN)  And what materials, if

21   any, has your office made available, available or

22   published, relating to Section 4.09's amendment to the

23   law?

24       A.   The -- the -- the same series of materials

25   that we talked about before, the -- all the poll watcher

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 7 of 15

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 182 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 182 |

1  it, the determination as to whether or not a caregiver
2  or attendant is being paid for giving voting assistance
3  or some other type of assistance?
4      **A.  It would be up to the DA to -- to prosecute**
5  **this section, we don't prosecute.**
6      Q.  And you don't have, sitting here, any opinion
7  as to how that discretion should be used?
8          MR. JEFFERY WHITE:  Objection, form.
9      **A.  I know -- my only context for this, as I said**
10  **before, is when I get an election law complaint, right,**
11  **and somebody alleges that this paid attendant for a**
12  **voter took them to the voting booth and assisted them in**
13  **voting and that's violation of compensation.  I would**
14  **say no crime, no referral.**
15      Q.  (BY MR. KANTERMAN)  What trains information or
16  guidance has your office published regarding Section
17  6.06s amendment?
18      **A.  None.  This is -- this is not about running**
19  **elections.**
20      Q.  Staying with Exhibit 19, please, let's turn to
21  Section 7.04, which I believe is on page 58, the last
22  two lines of page 58.  Let me know when you're there,
23  please.
24      **A.  I'm there.**
25      Q.  7.04 defines vote harvesting services to mean

1    in person interaction with one or more voters in the
2    physical presence of an official ballot or a ballot
3    voted by mail intended to deliver votes for a specific
4    candidate or measure, do you see that?
5         A.   I do.
6         Q.   And we've touched on this briefly.  For
7    purposes of this section, what is The Secretary of
8    State's position as to what an in person interaction is?
9         A.   Same as what we talked about before with
10   regard to mail in ballot assistance?
11        Q.   And nothing beyond your earlier definition, is
12   that correct?
13        A.   That's right.
14        Q.   What constitutes physical presence of an
15   official ballot?
16        A.   Physical presence of an official ballot?
17        Q.   And what does that mean, sir?
18        A.   It means a ballot is physically present with
19   the people who are talking.
20        Q.   I guess I'm looking for more clarity on what
21   physically present as related to a ballot mean?
22             MR. JEFFERY WHITE:  Objection form.
23        A.   Again, you understand our office is not a
24   prosecutor.  We're never going to enforce this language.
25   We don't interpret this language, this is not us.  So

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 9 of 15

5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 184  
184

1  I'm just a civil lawyer -- tort lawyer mainly, and you
2  want me to talk about what a criminal standard is, I got
3  nothing.
4      Q.  (BY MR. KANTERMAN)  So you say you'll never
5  enforce this provision.  Does that mean you will never
6  refer any complaints regarding physical presence of an
7  official ballot to the agent office for prosecutor?
8           MR. JEFFERY WHITE:  Object to form.
9      A.  If we get a complaint with regard vote
10  harvesting, I'll look at this and see if I think there's
11  a reasonable cause to suspect a crime has occurred, and
12  I might refer to the attorney general, if I think it
13  does.  That's the limit of our involvement.  And our
14  agency does not express opinions about any of this
15  stuff, because this is not ours to express an opinion
16  about.
17      Q.  (BY MR. KANTERMAN)  And so as your office
18  would look, let me ask a different question.
19      A.  I could send something over to Jonathan White,
20  and Jonathan White would say, let's keep smoking,
21  dismissed, right?  I mean, I don't have any control over
22  the prosecution; do you know what I'm saying?  This
23  isn't -- we don't do this.
24      Q.  And so sitting here today, you don't have a
25  precise definition of what "physical presence" means as

Entero v Texas 5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

184 Keith Ingram  
Page: 184

1　used in this section, correct?

2　　A.　I have a layperson's understanding of

3　what I think it means, yeah.

4　　Q.　And I'm not asking for your layperson

5　understanding, I'm asking for the Secretary of State's

6　Office --

7　　A.　The Secretary of State doesn't have position

8　on that.

9　　Q.　So I just want to be very clear with the

10　record.  The Secretary of State's office does not have a

11　position on what the phrase "physical presence of an

12　official ballot" means as used in Section 7.04 of SB 1,

13　correct?

14　　A.　Other than Keith Ingram's lay opinion, as he

15　reads a complaint and decides whether or not to refer to

16　the attorney general?

17　　Q.　And we can get Mr. Ingram's lay opinion of

18　that at some later time, but that was not my question.

19　My question was whether or not the Secretary of State of

20　-- well, my question was based on your testimony, isn't

21　it true, the Secretary of State's office does not have a

22　position as to what the definition of "physical presence

23　of an official ballot" means, as that term is used

24　within Section 7.04 of SB 1?

25　　A.　Do you understand the Secretary of State's

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 11 of 15

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 190 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 190 |

1    A.  Yes, certainly.

2    Q.  (BY MR. KANTERMAN)  And so the canvasser, in

3 your opinion, has not violated section 7.04?

4    A.  Or, as I would say it, I would have no

5 reasonable cause to suspect that a crime has occurred

6 and I would not make that a referral to the Attorney

7 General's Office.

8    Q.  Assume the same facts, please, and modify them

9 so that the resident grabs their ballot, brings it to

10 the front door and has a conversation with the canvasser

11 about the measure but they now have the ballot in hand,

12 do you understand that modification?

13    A.  Sure.

14    Q.  Under that scenario, if the conversation

15 between the canvasser and the voter continues, has the

16 canvasser violated section 7.04?

17    A.  I don't think so.

18    Q.  And what is your basis for that opinion?

19    A.  Because he didn't cause the ballot to be

20 brought in front of him and it wasn't their -- I mean,

21 the intent is, is to deliver votes against the measure,

22 I get that.  But that wasn't -- he's not trying to trick

23 the voter, I mean, the voter brought the ballot.  I

24 don't know why, just look at the ballot language, I

25 guess.  If I was the canvasser, I would say please put

1    **that away, it makes me uncomfortable.**
2         Q.  **But even if the canvasser does not ask the**
3    **voter to put the ballot away, in your view, the**
4    **Secretary of State's office's view, they -- that**
5    **canvasser would not have violated section 7.04, correct?**
6              BY MR. JEFFERY WHITE:  Objection, form.
7         A.  **I'm not going to agree to that.**
8         Q.  (BY MR. KANTERMAN)  Why not?
9         A.  **Because that Secretary of State doesn't have a**
10   **view.  I would look at the facts presented that --**
11   **probably I would look at that and say I don't have**
12   **enough facts.  And I would send it back to the person**
13   **who complained and say, tell me more.**
14        Q.  Staying with this same section of SB 1, what
15   does the phrase in the Secretary of State's offices view
16   "intended to deliver" votes mean?
17        A.  That means, I mean, the whole point of vote
18   harvesting is that a vote harvester promises a candidate
19   or the proponent of a measure, I'll deliver you 5000
20   votes, right.  They promised they make a commitment.  If
21   you pay me, I will guarantee you a certain number of
22   votes.  And that's what that means intended to deliver
23   votes.  I've got a commitment to a candidate or I've got
24   a commitment to the proponents of measure to deliver on
25   votes or deliver votes against them.

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 13 of 15

| 5:21-cv-844 (XR) | Entero v Texas | Keith Ingram 204 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 204 |

1    registered voters is the highest in 28 years as Texans
2    exercise their right to vote", do you see that?
3        A.   I do.
4        Q.   And so pointing you towards the statement
5    "resounding success" in that paragraph, do you see it
6    now?
7        A.   I did see it before but I didn't see primary
8    before.
9        Q.   Okay.  So let me --
10       A.   And I still don't.
11       Q.   Let me withdraw my comment about it being
12   related to the primary.
13           What election is this comment issued in
14   response to?
15       A.   The General Election in November of 2020?
16       Q.   Okay.  Following the general election in
17   November of 2020, then Secretary Hughs issued this
18   statement that is Exhibit 22, correct?
19       A.   I agree with that.
20       Q.   And Secretary Hughs called the November 2020
21   election a "resounding success", is that correct?
22       A.   I agree with that.
23       Q.   Do you know what Secretary Hughs' basis in
24   making that statement was?
25       A.   Sure.  She says.

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 14 of 15

5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Keith Ingram 213  
213

1  Q.  Where else can I --

2  A.  This was a collaborative effort that
3  we worked on together.  There's no reason to bother
4  Secretary Hughs about this.  I have told you what we
5  were thinking?

6  Q.  You say we were thinking?  Who do you mean we?

7  A.  Secretary Hughs and I.  We wanted to
8  congratulate the counties for pulling off this kind of
9  election with this kind of turnout under these
10  conditions.

11  MR. KANTERMAN:  I'll make clear for the
12  record my objection that I don't think the question has
13  been sufficiently answered, I will reserve our right to
14  seek further clarification on it if the time presents.

15  Q.  (BY MR. KANTERMAN)  Sir, staying with Exhibit
16  22, if I may, please.  Secretary Hughs also says that it
17  was a "safe, free and fair election", is that right?

18  A.  That's what she says.

19  Q.  And do you know the basis for that statement?

20  A.  Sure.  That we didn't have, I mean, here we
21  are a month later, we didn't have any evidence that it
22  was a super spreader event of any sort.  We had one
23  report of possible COVID transmission to one poll worker
24  in Travis County.  And of course, we always have free
25  and fair elections in Texas.

Entero v Texas 5:21-cv-844 (XR)  
4/26/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

213 Keith Ingram  
Page: 213

Case 5:21-cv-00844-XR   Document 644-2   Filed 06/23/23   Page 15 of 15

| 5:21-cv-844 (XR) | **Entero v Texas** | Keith Ingram 216 |
| --- | --- | --- |
| 4/26/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 216 |

1   time it's been?

2           MR KANTERMAN:  Yes.  Can we go off the

3   record?

4           MR. JEFFERY WHITE:  Sure.

5           MR. KANTERMAN:  Off the record, please.

6           COURT REPORTER:  Off the record at 2:18

7   p.m.

8           (Briefly off the record.)

9           COURT REPORTER:  We're back on the record

10  at 2:19 p.m.

11          MR. KANTERMAN:  I just wanted to get for

12  the record that we're about four hours, nine minutes in

13  and that we're -- you're holding this open for

14  continuation on May 6.

15          MR. JEFFERY WHITE:  That is correct.

16  Thank you, sir. Now we can go off the record.

17          COURT REPORTER:  We're off the record at

18  2:19 p.m.

19          (Deposition concluded at 2:19 p.m.)

20

21

22

23

24

25