# *EXHIBIT 3*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO. 5:21-cv-844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| | § | |
| Defendants. | § | |

______________________________________________________

| | | |
|---|---|---|
| OCA-GREATER HOUSTON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO.1:21-cv-780-XR |
| | § | |
| JOHN SCOTT, et al., | § | |
| | § | |
| Defendants. | § | |

______________________________________________________

| | | |
|---|---|---|
| HOUSTON JUSTICE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO.5:21-cv-848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
| | § | |
| Defendants. | § | |

______________________________________________________



LULAC TEXAS, et al., §
§
Plaintiffs, §
§
vs. § CASE NO. 1:21-cv-0786-XR
§
JOHN SCOTT, et al., §
§
Defendants. §

---

MI FAMILIA VOTA, et al., §
§
Plaintiffs, §
§
vs. § CASE NO. 5:21-cv-0920-XR
§
GREG ABBOTT, et al., §
§
Defendants. §

---

UNITED STATES OF AMERICA, §
§
Plaintiff, §
§
vs. § CASE NO. 5:21-cv-1085-XR
§
THE STATE OF TEXAS, ET AL., §
§
Defendants. §

---

ORAL VIDEOTAPED DEPOSITION
CORPORATE REPRESENTATIVE OF
MI FAMILIA VOTA
MS. ANGELICA RAZO
April 5, 2022

ORAL VIDEOTAPED DEPOSITION OF THE CORPORATE REPRESENTATIVE OF MI FAMILIA VOTA, MS. ANGELICA RAZO, produced as a witness at the instance of the Defendants and duly sworn, was taken in the above-styled and numbered cause on the 5th day of April, 2022, from 9:52 a.m. to 7:05 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine at the offices of Reed Smith LLP, 811 Main Street, Suite 1700, Houston, Texas 77002, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

APPEARANCES

FOR THE PLAINTIFFS MI FAMILIA VOTA, et al.:
Mr. Bradley Prowant
Ms. Wendy Olson (via Zoom)
and Mr. Elijah Watkins (via Zoom)
STOEL RIVES LLP
33 South Sixth Street
Suite 4200
Minneapolis, Minnesota 55402
Telephone: 612-373-8860
E-mail: bradley.prowant@stoel.com

FOR THE STATE DEFENDANTS:
Mr. Eric A. Hudson
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711
Telephone: 512-463-2100
E-mail: eric.hudson@oag.texas.gov

FOR THE HAUL PLAINTIFFS:
Mr. Kenneth E. Broughton (via Zoom)
and Ms. Sarah Stewart (Zoom)
REED SMITH LLP
811 Main Street
Suite 1700
Houston, Texas 77002
Telephone: 713-469-3819
E-mail: kbroughton@reedsmith.com

FOR THE DEFENDANT HIDALGO COUNTY DISTRICT ATTORNEY RICARDO RODRIGUEZ, JR.:
Ms. Jacqueline Villarreal (via Zoom)
and Mr. V.M. Garza
HIDALGO COUNTY DISTRICT ATTORNEY'S OFFICE
100 E Cano St
Edinburg, Texas 78539
Telephone: 956-292-7609

APPEARANCES (Cont.)

FOR THE U.S. DEPARTMENT OF JUSTICE:
Mr. Michael E. Stewart (via Zoom)
U.S. Department of Justice
JENNER & BLOCK LLP
1099 New York Avenue NW
Washington, D.C. 20001
Telephone: 202-639-6000

ALSO PRESENT:
Mr. Terry Harrison, videographer
Ms. Amy Frieder, US DOJ (Zoom)
Mr. Camryn Pak, US DOJ (Zoom)
Ms. Courtney Hostetler, Free Speech For The People (Zoom)



Rocha are filling in Ms. Hidalgo about what's going on?
A. I do not know.
Q. What is the elections advisory council supposed to do?
A. To serve as a community member based advisory council that can support the administration's office, making sure that they are providing increased access to -- equitable access to the ballot box during elections days.
Q. What does that mean?
A. That means if any issues arise, that there is an advisory council that can provide feedback to any election plans before they are -- to any election plans before they are sent to approval by Harris County Commissioners Court and then after election, do a debrief.
Q. So --
A. The bylaws are being written out as we speak.
(Court reporter asks for clarification).
Q. (BY MR. HUDSON) Are you saying written out or written now?
A. Written out. They are still in discussion.

Q. What other organizations are part of this community council?
A. The community council is not formed yet. There's just discussions to form one.
Q. What organizations are a part of Houston in Action?
A. There's several organizations. More than I can list.
Q. Tell me the ones you can list.
A. Pertaining to the election advisory council or Houston in Action in general?
Q. Well, let's talk about Houston in Action first.
A. Mi Familial Vota's part of it. Other civic engagement organizations, such as OCA Greater Houston, NALEO, which is the National Association of Latino Elected Officials, Baker Ripley, Jolt Texas, League of Women Voters, Engage Texas, East Houston Empowerment Center, maybe -- I forgot the name. That's all I recall at the moment.
Q. And which of these are involved in the elections council advisory?
A. Did I mention the Houston Area Urban League?
Q. No.

A. Houston Area Urban League.
Q. Are all these groups that you just identified part of the discussions about forming an elections advisory council?
A. No.
Q. Which ones of the ones that you just listed are involved?
A. That I recall, the Houston Urban Area League.
Q. Any others?
A. I believe Move Texas is also part of those conversations.
Q. Any other groups?
A. Not that I can recall at the moment.
Q. How often does the group meet on the elections advisory council?
A. Very sparsely due to other priorities.
Q. How many times to your knowledge has it met in 2022?
A. Once.
Q. Did any of the discussions that you've been a part of with regard to the elections advisory counsel center on Senate Bill 1?
A. No.
Q. Could you describe for the Court what

equitable access is in the context of voting?
A. Ensuring that the demographic of voters that exist in Harris County and the livelihoods that they have, that we have election systems that make it easy for them to access voting either vote by mail, voting in person, voting early, voting on election day.
Q. What kind of voters need those options from Mi Familia Vota's perspective?
A. We have several community members that work nontraditional work hours. So, for example, 7:00 a.m. to 7:00 p.m. voting hours might not necessarily fit their work schedule.
Q. Can you give me an example of the kind of worker you're talking about?
A. Yes. For example, truck drivers that reside in Harris County, that's an example. Also, our medical staff.
Q. So doctors?
A. Health professionals in general.
Q. What about plant workers?
A. Can you elaborate?
Q. Sure. So in Baytown we have Chevron, Shell, Bayer, Exxon, the list goes on, and they work shift work. So it's 24 hours around the clock,



subpoenaing specific legislators.
Q. Has Mi Familia Vota retained any experts to speak to intentional discrimination?
A. I believe so.
Q. Any other efforts that you're aware of that Mi Familia Vota is making to discover intentional discrimination?
A. I believe there are efforts to -- that rely on experts to have information around the disproportionate impact and voting -- that S.B.1 would have on the community.
Q. So just clearing up a bit about your specific community, because there were questions about your community versus others.
Are you aware of what the Latino voter turnout was in the 2020 general election?
A. It was higher than previous elections.
Q. Was it a record election?
A. Yes.
Q. Record turnout?
A. Yes, substantially higher, particularly during early voting.
Q. Are there provisions in S.B. 1 -- are you aware of why there was a record voter turnout for Latino voters?



A. Yeah, well, we hear from community members, particularly in Harris County, is that you see methods like drive-thru voting, 24-hour voting, those were methods that had -- they had never used before that were implemented in the 2020 election, and community members liked using that. It was convenient for them to use it. It was time convenient -- it was also less time consuming than other regular voting practices and it was accessible, and so I -- we think that that contributed to an increase in voter turnout from our Latino community.
Q. Are those processes that you've identified as contributing potentially to the record voter turnout in 2020 addressed by S.B. 1?
A. S.B. 1 limits or prohibits several of those different voting methods that were implemented in 2020.
Q. And do you believe that's going to have an impact on the Latino vote in the future?
A. Yes.
MR. HUDSON: Objection: Form; calls for speculation.
MR. PROWANT: I don't have any other questions.
MR. HUDSON: Yeah, I have just got a



couple of follow-ups.

FURTHER EXAMINATION

Q. (BY MR. HUDSON) Okay. You had indicated that your attorney team is conducting discovery to find evidence of discrimination; is that right?
A. Yes.
Q. So as you sit here today, did you answer truthfully when you said you had no evidence of intentional discrimination?
A. I answered truthfully when I said I have no evidence.
Q. Did you answer truthfully to all of my other questions today?
A. Yes.
Q. So your attorney team hopes to find some evidence of intentional discrimination through either statistical evidence by your expert witnesses, which have been designated, or I suppose by finding documents from legislators, but as we sit here today, you don't have any, right?
MR. PROWANT: Objection: Form.
THE WITNESS: Correct.
MR. HUDSON: We will reserve.
MR. PROWANT: And we will review and



sign.
THE VIDEOGRAPHER: Off the record. The time is 7:05.
(Proceedings concluded at 7:05 p.m.)

