*EXHIBIT 5*

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
                            SAN ANTONIO DIVISION



LA UNION PUEBLO ENTERO, et al.,  )
                                 )
          Plaintiffs,            )
                                 )
V.                               ) Case No. 5:21-cv-844-XR
                                 )
GREGORY W. ABBOTT, et al.,       )
                                 )
          Defendants.            )
     ----------------------------------------------------------
OCA-GREATER HOUSTON, et al.,     )
                                 )
          Plaintiffs,            )
                                 )
V.                               ) Case No. 1:21-cv-780-XR
                                 )
JOHN SCOTT, et al.,              )
                                 )
          Defendants.            )
     ----------------------------------------------------------
HOUSTON JUSTICE, et al.,         )
                                 )
          Plaintiffs,            )
                                 )
V.                               ) Case No. 5:21-cv-848-XR
                                 )
GREGORY WAYNE ABBOTT, et al.,    )
                                 )
          Defendants.            )
     ----------------------------------------------------------
```

Emily Timm                                                                      April 22, 2022
                                                                                Pages 2 to 5

Page 2

LULAC TEXAS, et al.,           )
                               )
        Plaintiffs,            )
                               )
V.                             ) Case No. 1:21-cv-0786-XR
                               )
JOHN SCOTT, et al.,            )
                               )
        Defendants.            )
-------------------------------------------------------
MI FAMILIA VOTA, et al.,       )
                               )
        Plaintiffs,            )
                               )
V.                             ) Case No. 5:21-cv-0920-XR
                               )
GREG ABBOTT, et al.,           )
                               )
        Defendants.            )
-------------------------------------------------------
UNITED STATES OF AMERICA,      )
                               )
        Plaintiffs,            )
                               )
V.                             ) Case No. 5:21-cv-1085-XR
                               )
THE STATE OF TEXAS, ET AL.,    )
                               )
        Defendants.            )
-------------------------------------------------------

Page 3

ORAL & VIDEO DEPOSITION OF EMILY TIMM

April 22, 2022

------------------------------------------------

Oral deposition of EMILY TIMM, produced as a witness at the

instance of the defendants, and duly sworn, was taken in

the above-styled and numbered cause on the 22nd day of

April, 2022, before Patrick Stephens, Certified

Court Reporter, at 1405 Montopolis Drive, Austin, Texas

78741.

Page 4

A P P E A R A N C E S
ON BEHALF OF THE PLAINTIFFS:
    URJA MITTAL, ESQ.
    SOPHIA L. CAI, ESQ.
    Jenner & Block LLP
    1099 New York Ave. NW
    Suite 900
    Washington, DC 20001
    Telephone:  (202) 369-6000
    umittal@jenner.com
    scai@jenner.com
ON BEHALF OF THE DEFENDANTS:
    ARI M. HERBERT, ESQ.
    Office of the Attorney General
    P.O. Box 12548 (MC-009)
    Austin, Texas 78711
    Telephone:  (512) 463-2100
    ari.herbert@oag.texas.gov
VIDEOGRAPHER:
    Manuel Martin
    Mamartin73@gmail.com
ALSO PRESENT VIA ZOOM:
    Jacqueline Villarreal, Hidalgo County ADA
    Jarrett Dillard, Reed Smith
    Ashley Harris, ACLU of Texas
    Alex Trepp, Jenner & Block
    Kathleen Hunker, TX Attorney General Special Counsel
    Kelsey Pormasdoro, DOJ
    Juan Estrada, Fried Frank Law Clerk
    Savannah Kumar, ACLU of Texas
    Sarah Chen, Texas Civil Rights Project

Page 5

1              I N D E X
2  APPEARANCES ............................. 02
3  EMILY TIMM
4        Cross-Examination by Mr. Herbert ................ 06
5
6
7  Reporter's Certificate .................. 214
8
9
10             E X H I B I T S
11
12 NO.     DESCRIPTION                              PAGE
13  1      Depo Notice                               08
14  2      2nd Amended Complaint                     11
15  3      Interrogatories                           13
16  4      Twitter Screenshot                        39
17  5      Twitter Screenshot                        40
18  6      Tweet                                     41
19  7      Senate Bill 1                            100
20  8      Texas Election Code                      193
21  9      Objections & Responses                   194
22
23
24
25

Page 58

1  Q   Okay.
2       MS. MITTAL:  Counsel, when -- whenever you're at
3  a stopping point, do you think it would make sense to take a
4  break?
5       MR. HERBERT:  Sure.  Yeah, just -- let's see.
6  Yeah, I wanted to ask a little bit more about voter education.
7  I'm sort of partway through.  We can stop here if you'd like and
8  just pick back up on voter education.  Maybe -- otherwise maybe
9  10 to 12 minutes to -- to a stopping point.
10      MS. MITTAL:  Ms. Timm, would you like to take a
11 break now?
12      THE WITNESS:  That would be great.
13      MS. MITTAL:  Okay.  Then we'll do that.
14      VIDEOGRAPHER:  We are off the record at 11:18.
15      (A recess was taken.)
16      VIDEOGRAPHER:  We are back on the record at
17 11:32.
18 BY MR. HERBERT (resuming):
19  Q   Okay, Ms. Timm.  Good to be back.  We were talking
20 about Workers Defense Action Fund's education for voters about
21 the voting process before we went on break.  You had mentioned
22 that there were -- that how you've -- that how Workers Defense
23 Action Fund educates voters about the voting process is by --
24 through digital and through flyers; is that right?
25  A   And through conversations, yes.

Page 59

1  Q   And through conversations.  Okay.  Thank you.  And you
2  had mentioned that these were both official events and also
3  informal; is that right?
4  A   Yes.  Primarily through official events or through
5  digital.  It's not really events.
6  Q   Okay.  And forgive me if I -- if I already asked this,
7  I'm just forgetting, but are these efforts directed at members
8  only or at the community at large?
9  A   They're primarily directed at members, but also we do
10 voter-rights education for the community at large, so yes.
11  Q   Okay.  Is this by staff or volunteers?
12  A   By both staff and volunteers.
13  Q   Okay.  So as part of your voter-education work, do you
14 inform voters about polling locations?
15  A   Yes.
16  Q   What if polling locations change?  Do you inform
17 voters about the change?
18  A   Yes.
19  Q   Okay.  Do you inform voters about polling hours?
20  A   Yes.
21  Q   And what about -- do you inform voters about different
22 voting options, for example, mail-in voting or curbside voting?
23  A   Yes.
24  Q   Okay.  Do you let voters know when their voting
25 options change?

Page 60

1  A   Yes.
2  Q   Okay.  So, for example, did Workers Defense Action
3  Fund tell voters that they could hand-deliver their mail-in
4  ballot for the November 2020 election before election day?
5  A   Yes, we did.
6  Q   Okay.  And do you inform voters about changes to
7  election laws?
8  A   Yes.
9  Q   Okay.  So Workers Defense Action Fund conducts --
10 conducts the same type of voter-education work in 2022 that it
11 did in 2020; is that right?
12  A   We -- as I mentioned, we've only done very limited
13 work in the primary.  Most of our work would be ahead of us for
14 the remainder of this year and we're determining how that will
15 be impacted by SB1 and determining if it will change how we do
16 our work.
17  Q   Okay.  When do you think you'll be able to make that
18 determination?
19  A   Probably in the next few months that we're preparing
20 for our -- the voter-education programs.
21  Q   Okay.  And how do you think you will make that
22 determination?
23  A   I mean, we're consulting with legal counsel about the
24 risks that our organization would incur under SB1, particularly
25 related to conversations at the door, the -- the challenges of

Page 61

1  informing workers about vote by mail, as we have in the past
2  when we've encouraged voters who that is sort of the most
3  accessible option for them, after seeing the results of the
4  primary election with so many voter -- vote-by-mail ballots
5  being rejected, we're considering how we would need to expand or
6  develop our communications around how to avoid those challenges
7  over rejected ballots if you were to use vote by mail and
8  whether that would continue to be something that we would talk
9  to voters about.  So just a lot of considerations of how SB1 is
10 making it more difficult for the voters we're talking to to --
11 to vote and how that will impact our approach and if it will
12 change it.
13  Q   Okay.  So you had mentioned that you had spent about
14 $200,000 on digital for the -- for Workers Defense Action Fund's
15 education program for candidates running for election.  How much
16 did Workers Defense Action Fund -- it spend on its
17 voter-education program in toto in 2020 altogether?
18  A   I don't have that exact number.  A large portion of
19 the expenses were related to the digital program, so it was
20 probably a little bit more than that.
21  Q   Okay.  So roughly in the same ballpark.
22  A   I would say 2 -- yeah, something like that, but I'm
23 not sure exactly.
24  Q   Okay.
25  A   Yeah.

Page 210

1  as that first person we spoke about, but to the extent that
2  you're just -- as you said earlier, Zach, that you're willing to
3  just, as an Option 3, just not use any of these people, then we
4  don't need the names.  That's fine with us.
5             MR. MIRZA:  And that's it -- like, we won't use
6  these people if we end up not naming them; is that right?  Like,
7  if we name them, obviously, we'll keep the deposition open for
8  you to ask any questions about it or are you saying --
9             MR. HERBERT:  Well, no, if you -- if you intend
10 to name them --
11            MR. MIRZA:  Yeah.
12            MR. HERBERT:  -- then we want the names now.
13            MR. MIRZA:  Yeah -- oh, okay.  So we can never
14 use them is what you're saying.
15            MR. HERBERT:  That's what I understood Zach's
16 Option 3 to mean.  I -- I could have misunderstood, but that's
17 what I misunderstood.  And, Zach, I don't believe you're mic'd
18 up and I don't know that you are either, so...
19            MR. MIRZA:  I think they can hear us, though,
20 because there are mics here.
21            THE WITNESS:  I've got one.
22            MR. HERBERT:  Oh, okay, okay.  Good.  Just
23 because I know the folks on Zoom might -- might not be hearing
24 quite as well.
25            MR. DOLLING:  I think that's okay with us.

Page 211

1  Oh, sorry.  I think -- yeah, we're willing to agree to that now
2  that --
3             MR. HERBERT:  Okay.
4             MR. DOLLING:  -- we will not use the unnamed
5  individuals from today.
6             MR. HERBERT:  Okay.  Sorry.  You will not use a
7  named individual from today?
8             MR. DOLLING:  No named -- unnamed individuals.
9             MR. HERBERT:  Oh, an unnamed -- unnamed
10 individual from today.
11            MR. DOLLING:  The people that we were speaking
12 about earlier but did not name.
13            MR. MIRZA:  There's three people; right?  We've
14 got three people?
15            MR. HERBERT:  I don't know.  That's part of the
16 -- the issue.  That's as best that I can keep count, is that
17 there might be up to three people, but there might be more.
18 So...
19            MR. MIRZA:  And that doesn't include -- like,
20 when we talk about members generally, right, we're not saying --
21 like, we're not talking about not using the whole membership.
22 Obviously we're going to try to identify members.
23            MR. DOLLING:  I feel like we should -- for now,
24 we can agree to this --
25            MR. HERBERT:  Okay.

Page 212

1             MR. DOLLING:  -- let's get that agreement on the
2  record, and then to the extent we want to hash things out
3  further, I think I would prefer to do that with Kathleen because
4  she was -- nothing --
5             MR. HERBERT:  No, no problem.
6             MR. DOLLING:  -- nothing wrong with you, but she
7  was the original person with whom we -- we made these
8  discussions.
9             MR. HERBERT:  That's -- that's no problem, that's
10 no problem.  I know I'm just picking up where she left off --
11            MR. DOLLING:  Yeah, and we'll forget about it.
12            MR. HERBERT:  -- so that's fine as long as we're
13 all squared away on -- on this, then I think we're okay without
14 the names and we can just leave it at that if that works for
15 you-all.
16            MR. DOLLING:  Okay.  That's good.  Thank you.
17            MR. HERBERT:  Okay.  Thank you.  Yeah.  Well,
18 then, with that, then I -- I have no further questions, so...
19            MS. MITTAL:  And we don't have any redirect.  So,
20 with that, I guess we're done for the day.
21            MR. HERBERT:  Okay.  Sounds good.
22            MS. MITTAL:  Thank you.
23            MR. HERBERT:  All right.  Thank you, and thank
24 you, Ms. Timm.
25            COURT REPORTER:  Before you go off the record, do

Page 213

1  you need anything or are you good?
2             VIDEOGRAPHER:  (Nonverbal response.)
3             COURT REPORTER:  Okay.  We can go off.
4             VIDEOGRAPHER:  We are off the record at 3 -- I
5  mean -- sorry -- 5:35.

25            (Whereupon, the proceedings were concluded.)