# *EXHIBIT 7*

```
 1                   UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
 2                        SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO ENTERO )
     et al.,                    )
 4        Plaintiffs,           )
                                )
 5   v.                         ) Civil Action No. SA-21-CV-
                                )         00844-XR
 6   GREGORY W. ABBOTT, et al., )
          Defendants.           )
 7
 7
 8
                    ------------------------------------------
 9
                     ORAL AND VIDEOTAPED DEPOSITION OF
10                              LISA WISE
                             APRIL 15, 2022
11                              Volume 1

12                  ------------------------------------------

13

15

16            ORAL AND VIDEOTAPED DEPOSITION OF LISA

17   WISE  produced as a witness at the instance of Plaintiff,

18   and duly sworn, was taken in the above-styled and

19   numbered cause on the 14th day of April, 2022 from 9:06

20   a.m. to 5:05 p.m., before Nancy Newhouse, a Certified

21   Shorthand Reporter in and for the State of Texas,

22   reported by oral shorthand, located at the 500 East San

23   Antonio, Room 503, El Paso, Texas 79901, pursuant to the

24   Federal Rules of Civil Procedure, and the provisions

25   stated on the record or attached hereto.
```

Lisa Wise                                                        April 15, 2022
                                                                      Page 96

```
 1        Q.   (BY MS. PERALES)  Have you received any
 2   guidance from the Texas Secretary of State about what
 3   action by a poll watcher would, quote, "make observation
 4   not reasonably effective", unquote?
 5             MS. SPECTOR:  Object to form.
 6        A.   No.
 7        Q.   (BY MS. PERALES)  What have you told your poll
 8   workers about what it means -- what -- what activity by
 9   them would be obstructing the view improperly now?
10             MS. SPECTOR:  Object to form.
11        A.   I don't know if we've got into the -- I'm
12   sorry -- gone into specifics about that.
13        Q.   (BY MS. PERALES)  Okay.  Do you know whether
14   if a poll worker inserted themselves between a voter and
15   a watcher who was standing too close, in the opinion of
16   the poll worker, whether that would be now an offense
17   under the Election Code?
18             MS. SPECTOR:  Objection, calls for legal
19   conclusion.
20        A.   Yeah.  I don't know for sure.  That might be
21   something -- if we received a report about that, that I
22   would either, you know, talk with our county attorney or
23   consult the Code if it was something that was happening.
24        Q.   (BY MS. PERALES)  When I'm quiet I'm switch --
25   I am skipping over questions, so quiet is good.
```

1             MS. SPECTOR:  Objection --
2        Q.   (BY MS. PERALES)  -- what the exact criteria
3    is for eligibility for assistance?
4             MS. SPECTOR:  Objection to form.
5        A.   Yes.
6        Q.   (BY MS. PERALES)  Would you agree with me that
7    a potential assistor, whether that person be a trusted
8    friend, or a neighbor, or a family member might be
9    concerned that if they offer assistance to a voter,
10   navigating the polling place, or interacting with poll
11   workers or figuring out how to use the voting machine,
12   that that assistor might be exceeding the permissible
13   assistance that they swore to on the oath?
14            MS. SPECTOR:  Objection to form.
15       A.   They may be.
16       Q.   (BY MS. PERALES)  Do you think that a
17   potential assistor might have some concerns about
18   securing a representation from the voter that that voter
19   needs assistance?
20            MS. SPECTOR:  Objection to form.
21            MR. JEFFREY WHITE:  Objection, form.
22       A.   Yes, they might be.
23       Q.   (BY MS. PERALES)  Would you agree with me that
24   a potential assistor might be concerned that if they
25   make a mistake in giving either the wrong kind of

1    assistance, or assistance to an ineligible voter, that
2    the ballot of that voter might not get counted?
3                   MS. SPECTOR:  Objection to form.
4         A.    They could be.
5         Q.    (BY MS. PERALES)  Would you agree with me that
6    it's possible that a potential assistor might think that
7    if they make a mistake in either giving the assistance,
8    or giving the assistance to the wrong type of voter,
9    that they might be accused of perjury for having signed
10   the oath before delivering assistance?
11        A.    Yeah.
12                  MS. SPECTOR:  Object -- sorry.  Objection
13   to form.  Go ahead.
14        A.    Yes.  If they're aware of that law, then yes,
15   they could be aware -- concerned with that.
16        Q.    (BY MS. PERALES)  And you would agree with me
17   that when an assistor arrives at the polling place to
18   give the assistance to the voter, that that assistor
19   would sign this document that we see here in Exhibit 10,
20   that has the oath written out up top, is that correct?
21        A.    Yes.
22        Q.    So they would see -- this potential assistor
23   would see all of that language that you and I just
24   covered in SB 1 that has been added to the assistor
25   oath, correct?

```
 1        Q.   Okay.  Let's go back to the scenario that I
 2   mentioned a few minutes ago, nonprofit is going door to
 3   door with canvassers to educate the voters and get the
 4   vote out, and they are promoting this drainage bond
 5   issue, let's call it.
 6                  How would you advise a canvasser who
 7   calls you up and says well, I'm pushing this drainage
 8   issue, we want the bond, I'm visiting voters in their
 9   home, some of whom are elderly, how do I know if there's
10   a mail ballot present?
11                  How would you advise that canvasser?
12                  MS. SPECTOR:  Objection to form, calls
13   for speculation, calls for legal conclusion.
14        A.   I would tell them I am not allowed to give you
15   legal advice, which is something I have to say to people
16   a lot, and I would suggest that, if your organization
17   has an attorney, that you consult with them.
18        Q.   (BY MS. PERALES)  Have you done any training
19   with your staff about the vote harvester provisions here
20   in 7.04?
21        A.   I don't believe so.  Because we aren't a law
22   enforcement agency, because we have no law enforcement
23   powers and because that's something that would be done
24   outside of our office --
25        Q.   Uh-huh.
```

| Lisa Wise | April 15, 2022 |
|---|---:|
| | Page 170 |

```
 1        A.   -- we really have not focused on that.
 2        Q.   Okay.  Have you received any guidance from the
 3   Secretary of State that mentions the vote harvesting, or
 4   tries to guide you at all in terms of these new
 5   requirements related to voters and their mail ballots?
 6             MS. SPECTOR:  Objection to form.
 7        A.   I don't believe so.
 8        Q.   (BY MS. PERALES)  Are you aware of any
 9   incidents of voter fraud related to individuals visiting
10   mail voters at their homes, and trying to commit fraud
11   that way?
12             MS. SPECTOR:  Objection to form.
13             MR. JEFFREY WHITE:  Objection, form.
14        A.   Not in El Paso County.
15        Q.   (BY MS. PERALES)  Okay.  And have you ever
16   heard of anyone that's with a nonprofit or community
17   organization, not a campaign PAC or candidate, trying to
18   commit fraud with a mail voter and the mail ballot?
19             MR. JEFFREY WHITE:  Objection, form.
20             MS. SPECTOR:  Same.
21        A.   No.
22        Q.   (BY MS. PERALES)  If you'll turn to -- I'm
23   trying to find the -- trying to find the section --
24   okay, well, Page 60?
25             Do you see around the middle of the page
```

| | |
|---|---|
| 1 | MR. JEFF WHITE:  Sorry about that. |
| 2 | And this last document should be Exhibit |
| 3 | 15. |
| 4 | (Defendant's Exhibit No. 15 was marked |
| 5 | for identification.) |
| 6 | MS. SPECTOR:  Thanks, Jeff. |
| 7 | Q. (BY MR. JEFFREY WHITE)  And Ms. Wise, do you |
| 8 | recognize this Exhibit 15? |
| 9 | A. I do. |
| 10 | Q. And what is this showing? |
| 11 | A. This is the March 2022 primary early voting |
| 12 | stations. |
| 13 | Q. And so if I was to look at the right-hand |
| 14 | column, would this show the hours that they were open |
| 15 | during early voting on different dates in this year, in |
| 16 | the March 2022 primary? |
| 17 | A. Yes. |
| 18 | MR. JEFF WHITE:  That's all the |
| 19 | additional questions I have. |
| 20 | MS. SPECTOR:  Okay.  Nothing from us. |
| 21 | MS. PERALES:  So if counsel for Ms. Wise |
| 22 | or El Paso County will reserve their questions for the |
| 23 | time of trial, this deposition is concluded. |
| 24 | VIDEOGRAPHER:  We are now off record at |
| 25 | 5:05 p.m. |