*EXHIBIT 8*

Jacquelyn Callanen                                                April 20, 2022

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO ENTERO,  )
     ET AL                        )
 4                                )
     vs.                          )   CASE NO. 5:21-CV-844-XR
 5                                )
     GREGORY W. ABBOTT, ET AL     )
 6   _____
     OCA-GREATER HOUSTON, ET AL   )
 7                                )
     vs.                          )   CASE NO. 1:23-CV-780-XR
 8                                )
     JOHN SCOTT, ET AL            )
 9   _____
     HOUSTON JUSTICE, ET AL       )
10                                )
     vs.                          )   CASE NO. 5:21-CV-848-XR
11                                )
     GREGORY WAYNE ABBOTT, ET AL  )
12   _____
     LULAC TEXAS, ET AL   )
13                                )
     vs.                          )   CASE NO. 1:21-CV-0786-XR
14                                )
     JOHN SCOTT, ET AL            )
15   _____
     MIFAMILIA VOTA, ET AL        )
16                                )
     vs.                          )   CASE NO. 5:21-CV-0920-XR
17                                )
     GREG ABBOTT, ET AL           )
18   _____
     UNITED STATES OF AMERICA     )
19                                )
     vs.                          )   CASE NO. 5:21-CV-1085-XR
20                                )
     THE STATE OF TEXAS, ET AL    )
21   _____

22              ORAL VIDEOTAPED DEPOSITION

23                  JACQUELYN CALLANEN

24                    APRIL 20, 2022

25
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                            210-697-3408

```
 1   correct?
 2        A.   Correct.
 3        Q.   And then, of course, now there is this new part
 4   about the penalty of perjury which we know is criminal
 5   prosecution.
 6        A.   Yes.
 7        Q.   How would you advise a possible assistor to
 8   obtain a statement of eligibility for assistants from
 9   the voter?
10              MS. HUNKER:  Objection, form.
11              THE WITNESS:  Again, that we don't enter
12   into that.  That is not part of our instructions.
13        Q.   (By Ms. Perales) So if someone called your
14   office and said you, elections department, you are in
15   charge of elections, I want to assist my neighbor, how
16   do I obtain a statement of eligibility for assistance?
17   How would you advise them?
18        A.   Again, we would not do that.  We would not.
19   There are certain lines we don't cross.  Because a lot
20   in the past when we have tried do be of assistance, it
21   will turn around and bite us.  I'm sorry.  That is not
22   real PC but we have trained the staff not to anything
23   that can be interpreted like that.  It is up to that
24   person.
25        Q.   Would you agree with me that some voters would
```

1  be reluctant to share details about a need for
2  assistance such as the type of disability?
3              MS. HUNKER:  Objection, form.
4              THE WITNESS:  Sure.
5     Q.   (By Ms. Perales) Do you think -- would you
6  agree with me that some possible assistors might feel
7  reluctant to want to probe the voter for a statement of
8  eligibility?
9              MS. HUNKER:  Objection, form.
10             THE WITNESS:  I would hope not.  But
11 again, we are not involved in that piece.
12    Q.   (By Ms. Perales) A moment ago, we talked about
13 assistors helping voters understand how to use the
14 voting machine.  How would you advise someone who called
15 your office and said that they want to serve as an
16 assistor but the oath says they have to confine their
17 assistants to either reading the ballot or marking the
18 ballot?
19             MS. HUNKER:  Objection, form.
20             THE WITNESS:  Not on how to use the
21 equipment.  Is that what you are asking?
22    Q.   (By Ms. Perales) Yes.
23    A.   Again, we would direct them to our web site
24 where we have videos on how to use the equipment and
25 basic, you know, voter ID, the information there that

1   they would need.
2       Q.   Is that information available, for example, in
3   Asian languages?
4       A.   Again, English and Spanish only.
5       Q.   How would you advise someone who called your
6   office and said they wanted to provide voter assistance
7   but they are not sure what it means to pressure a voter?
8   Let's say an assistor calls you and says well, I have
9   reminded my neighbor to vote three times.  Am I
10  pressuring her if I take her to the polls and help her
11  get around inside of the polling place?
12              MS. HUNKER:  Objection, form.
13      Q.   (By Ms. Perales) How would you advise that
14  potential assistor?
15              MS. HUNKER:  Same objection.
16              THE WITNESS:  Again, we wouldn't enter
17  into that.
18      Q.   (By Ms. Perales) Would you sign an oath under
19  penalty of perjury if you weren't sure you were
20  complying with the oath?
21              MS. HUNKER:  Objection, form.
22      Q.   (By Ms. Perales) Personally?
23      A.   Personally, no.
24      Q.   Have you received any guidance or training from
25  the secretary of state about the requirement that an

1  you taking the time leading up to the election.
2  However, with that said, I have no further questions so
3  I thank you again.
4              THE WITNESS:  Thank you.  Bless you.
5  Thank you.  I appreciate it.
6              VIDEOGRAPHER:  The time is 7:07 p.m.  We
7  are off the record.
8              (Proceedings concluded at 7:07 p.m.)
9  (Pursuant to FCRP 30(e)(1), request to review the
   transcript was not made by either deponent or party
10 before the deposition was completed.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25