*EXHIBIT 12*

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 2 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 1 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 1 |

```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
                    SAN ANTONIO DIVISION

LA UNION DEL PUEBLO        §
ENTERO, ET AL.,            §
      Plaintiffs,          §   Civil Action No.
                           §   5:21-cv-844 (XR)
VS.                        §   (Consolidated Cases)
                           §
STATE OF TEXAS, ET AL.     §
      Defendants.          §
*********************************************************

                    ORAL DEPOSITION OF

                  JONATHAN SHERMAN WHITE

                     APRIL 27, 2022


*********************************************************

       ORAL DEPOSITION OF JONATHAN SHERMAN WHITE,

produced as a witness at the instance of the Plaintiffs

and Plaintiff-Intervenors, and duly sworn, was taken in

the above-styled and numbered cause on the 27th day of

April 2022, from 9:11 a.m. to 5:31 p.m., before Caroline

Chapman, CSR in and for the State of Texas, reported by

Computerized Stenotype Machine, Computer-Assisted

Transcription, held at the William P. Clements Jr. State

Office Building, 300 West 15th Street, Hearing Room

1001E, Austin, Texas, pursuant to the Federal Rules of

Civil Procedure.
```

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 3 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 128 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 128 |

1 **specific elements.**
2    Q.  Let's turn forward now to 4.09(a), which is on
3 Page 29.
4    **A.  Yes, ma'am.**
5    Q.  Here would you agree with me that
6 Section 33.061(a) already describes an offense related
7 to preventing a watcher from observing?
8    **A.  Yes, ma'am.**
9    Q.  And would you agree with me that there is new
10 language now brought in my SB 1 that makes it an offense
11 to take any action to obstruct the view of a watcher
12 distance the watcher from the activity or procedure to
13 be observed in a manner that would make observation not
14 reasonably effective?
15    **A.  Yes, ma'am.  That's what it says.**
16    Q.  In this language here, starting at Line 8,
17 where it says "taking any action," you would understand
18 that to mean it could be any one of a number of
19 different types of action, right?  Action is not defined
20 here, but it says "any action," you agree?
21    **A.  I would agree that "action" is not defined.**
22    Q.  It also says "any action," doesn't it?
23    **A.  Yes, ma'am, it does.**
24    Q.  Do you know what action would obstruct the view
25 of a watcher?

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 4 of 11

5:21-cv-844 (XR)  |  Entero v Texas  |  Jonathan Sherman White 129
4/27/2022  |  NATIONAL COURT REPORTERS INC 888.800.9656  |  129

1          MR. HUDSON: Objection, form, foundation.

2      Objection, calls for speculation.

3      A.   I don't know what that -- that action would be.

4      Could be anything, I suppose.

5      Q.   Okay.  Do you know what action would be to

6  distance the watcher from the activity or procedure?

7          MR. HUDSON: Same objections.

8      A.   I don't.  I don't have a list of examples of

9  that off the top of my head, no, ma'am.

10     Q.   Do you know what would -- do you know what

11 would constitute a manner that would make observation

12 not reasonably effective?

13         MR. HUDSON: Same objections.

14     A.   No.  We would -- we would take a set of facts

15 that we were given in a complaint and then we would try

16 to apply the law, and I don't typically work in reverse.

17     Q.   Have you developed any standards at this point

18 for deciding what would be an action that would obstruct

19 the view of a watcher?

20     A.   No, ma'am.

21     Q.   Have you developed any standards that would

22 allow you to decide whether a poll official had

23 distanced the watcher from the activity?

24         MR. HUDSON: I'll just remind you of the

25 running objection that we have concerning privileges,

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 5 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 131 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 131 |

1   scan it at the door on your way out.

2   Q.  Okay.  So generally you vote on a machine that

3   has a screen and it's sitting on a little table with

4   some long legs on it; is that right?

5   A.  Yes, ma'am.

6   Q.  Okay.  And then you're going to take the piece

7   of paper that it gives you, and you're going to walk

8   over to that receptacle and put your piece of paper in

9   there; is that right?

10  A.  Yes, ma'am.  Place it in the receptacle.

11  Q.  Okay.  Sometimes called a tabulator.  Okay.  So

12  let's take the instance of a voter who is standing at

13  one of those voting machines like the kind that you vote

14  on, Mr. White.  How close -- let me ask the question

15  this way.  How far could a watcher be placed by the

16  election judge such that it would violate Section

17  4.09(a) in SB 1?

18          MR. HUDSON:  Objection.  Incomplete

19  hypothetical.  Objection, calls for speculation.

20  A.  I don't think I could answer that.

21  Q.  Is it because you don't know?

22  A.  I couldn't --

23          MR. HUDSON:  Objection, calls for an

24  incomplete hypothetical.  Calls for speculation.

25  A.  Yeah.  I don't have enough facts to -- to

1  answer that question.  And even if I did have enough
2  facts, it would probably involve me going into my
3  thought processes about -- about the offense, and so I
4  don't think I could answer that.
5      Q.   Okay.  At this point, I would like to say on
6  the record that you should listen to your counsel, and
7  especially if he instructs you not to answer the
8  question.  But counsel is limited to making form
9  objections and not speaking objections.  And so in order
10  to avoid any appearance of coaching the witness, which I
11  know counsel would never do, his form objections --
12           MR. HUDSON:  Well, I'll just go ahead and
13  stop you right there and say you're tossing out coaching
14  on the record.  Nobody is coaching by giving form and
15  giving the description of what the objection is, which
16  I've been limiting to one word.  We also have a standing
17  objection, our standing or running objection based on
18  privileges.  And I would point out that some of your
19  questions are clearly targeted at getting at privileged
20  information, so I'm simply reminding the witness of the
21  stipulation that you made early on so that I wouldn't
22  give long objections based on privilege.
23           If you want me to go ahead and start
24  making all formal objections because you're concerned
25  that I'm giving speaking objections, I'm happy to do

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 7 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 133 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 133 |

1  that.  I'm just trying to make sure that my client isn't
2  reaching out and expanding beyond the privilege
3  stipulation that we've already made.
4         MS. PERALES:  You have your running
5  stipulation, and we've agreed to that.  I just want to
6  make sure that the form objections are stated as
7  succinctly as the rules hope we do.
8     Q.   (By Ms. Perales)  So let's go back to the
9  voting machine scenario.  Mr. White, you're familiar
10 with your own voting machine that you use in the polling
11 place in your home county.  If we have a situation where
12 there's a watcher and a voter, and an election judge,
13 and the election judge has distanced the watcher from
14 that machine and the activity of the voter at that
15 machine, is it your testimony that -- that that is still
16 not enough information upon which you could make a
17 decision whether there is a violation of 4.09 of SB 1?
18         MR. HUDSON:  Objection, speculation.
19 Incomplete hypothetical.
20    A.   I think that's correct, that I wouldn't have
21 enough information.
22    Q.   Could you explain to me how this new language
23 in 4.09(a) makes unlawful behavior that previously would
24 have been lawful?
25    A.   I would say the plain text that was added adds

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 8 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 136 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 136 |

1   something that had actually happened rather than coming
2   up with examples of what might potentially violate a
3   code.
4       Q.  Do you have an idea of the degree to which the
5   watcher's subjective perception of whether they have
6   been distanced or obstructed would play a role in
7   whether or not there's a violation of Section 4.09?
8           MR. HUDSON:  Objection, calls for
9   speculation.  Improper and incomplete hypothetical.
10      A.  I would say, from a legal perspective, when we
11  talk about -- that uses the language "not reasonably
12  effective," a reasonable standard would be applied.  So
13  normally in the law it would be an objectively
14  reasonable standard or reasonable person, not this
15  specific individual and what they thought was
16  reasonable, but what is the reasonable and objective
17  standard.  And so I believe that's what -- that's what
18  is implemented in the new language of Subsection A.
19      Q.  And so if it is a reasonable person standard,
20  are you comfortable sharing with me what your thought is
21  about a distance of the watcher from an activity at a
22  voting machine that would be reasonable or unreasonable?
23      A.  No, I don't think I would.
24      Q.  Let's flip forward to Section 6.4.  That starts
25  on Page 52.

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 9 of 11

5:21-cv-844 (XR)  
4/27/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Jonathan Sherman White 169  
169

1   Q.  Okay.  So let's get the ballot in the picture
2   then.  The voter is engaging with me.  I am talking
3   about this clear -- clear -- clean air measure.  I know
4   that the voter has the mail ballot there because the
5   voter says, "I have the mail ballot right here, it's on
6   the table inside the door," or "It's right over there on
7   the kitchen table," the ballot is in the picture.  And I
8   am telling you that I am urging this voter to vote for
9   the clean air measure because I want this voter to vote
10  for the clean air measure, okay?  So I'm there, I'm
11  standing in the voter's door.  The voter is there, the
12  mail ballot is there, and I am telling you -- I am
13  saying to this voter, "Look, I am telling you, we want
14  to vote for this because it's important; I want you to
15  vote."  And it's my job going door-to-door to make sure
16  that people vote for this clean air measure.  I'm
17  exhorting the voter at that point.
18          MR. HUDSON:  Same objection.
19  A.  Yeah.
20  Q.  Am I running afoul of 7.04?
21  A.  7.04 being the -- well, it's the section that
22  contains the statute.  The vote harvesting statute, we
23  haven't even gotten to.
24  Q.  The compensation.  Okay.  So let me rephrase
25  the question.  Am I vote harvesting?  Am I committing

Entero v Texas 5:21-cv-844 (XR)  
4/27/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

169 Jonathan Sherman White  
Page: 169

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 10 of 11

5:21-cv-844 (XR)
4/27/2022

Entero v Texas
NATIONAL COURT REPORTERS INC 888.800.9656

Jonathan Sherman White 170
170

1  vote harvesting services as set out in Paragraph 2
2  starting at Line 7, Page 59?
3      A.  Well, I think it may be unclear whether or not
4  the definition of vote harvesting services has been
5  actually triggered or not, and again, the -- the actual
6  involvement of the ballot is kind of one of the nebulous
7  issues in your hypothetical, but, also we haven't even
8  gotten to an offense yet.
9      Q.  Uh-huh.
10     A.  So the offense language, while it involves vote
11 harvesting services, that's merely an element in the
12 several offenses in this section, as well, and then
13 there's kind of a safe harbor set of provisions as well
14 that explain what the section does not apply to, so --
15     Q.  Understood.  And the reason that I'm taking
16 this in pieces is because 7.04, the offense of vote
17 harvesting is itself made up of elements which are
18 themselves made up of elements.  So vote harvesting is
19 an element of the offense, and so I'm hoping to get a
20 clear understanding of what vote harvesting services
21 means in the context of my hypothetical, because then I
22 want to move on to other questions.
23          Are you -- are you saying that, if I tell
24 you that the ballot is on a table inside the door or the
25 ballot is in view on a kitchen table that you're --

Entero v Texas 5:21-cv-844 (XR)
4/27/2022

Entero v Texas
National Court Reporters Inc. 888.800.9656

170 Jonathan Sherman White
Page: 170

Case 5:21-cv-00844-XR   Document 644-13   Filed 06/23/23   Page 11 of 11

| 5:21-cv-844 (XR) | Entero v Texas | Jonathan Sherman White 233 |
| --- | --- | --- |
| 4/27/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 233 |

```
 1   this?
 2            MR. HUDSON:  Yeah.  We'll ask for a
 3   24-hour turnaround on ours.  Is that no good?  You're
 4   squinting --
 5            THE REPORTER:  There is no way I can do
 6   that.  I'm sorry.
 7            MR. HUDSON:  Okay.  Why don't we go off
 8   the record and we can talk about the timing on it.
 9            (Deposition concluded.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```