# *EXHIBIT 13*

Deborah Chen                                                                                    March 28, 2022

```
 1                IN THE UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
 2                       SAN ANTONIO DIVISION

 3
     LA UNIÓN DEL PUEBLO             §    Case No.
 4   ENTERO, et al.,                 §    5:21-cv-844-XR
          Plaintiffs,                §
 5                                   §
     v.                              §
 6                                   §
     GREGORY W. ABBOTT, et           §
 7   al.,                            §
          Defendants.                §
 8                                   §
                                     §
 9                                   §
     OCA-GREATER HOUSTON, et         §    Case No.
10   al.,                            §    1:21-cv-780-XR
          Plaintiffs,                §
11                                   §
     v.                              §
12                                   §
     JOHN SCOTT, et al.,             §
13        Defendants.                §
                                     §
14                                   §
                                     §
15   HOUSTON JUSTICE, et al.,        §    Case No.
          Plaintiffs,                §    5:21-cv-848-XR
16                                   §
     v.                              §
17                                   §
     GREGORY WAYNE ABBOTT, et        §
18   al.,                            §
          Defendants.                §
19                                   §
                                     §
20                                   §
     LULAC TEXAS, et al.,            §    Case No.
21        Plaintiffs,                §    1:21-cv-0786-XR
                                     §
22   v.                              §
                                     §
23   JOHN SCOTT, et al.,             §
          Defendants.                §
24                                   §
                                     §
25                                   §
     MI FAMILIA VOTA, et al.,        §    Case No.
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900    San Antonio, Texas 78232
210-697-3400                                                              210-697-3408

```
 1         Plaintiffs,              §     5:21-cv-0920-XR
                                    §
 2   v.                             §
                                    §
 3   GREG ABBOTT, et al.,           §
           Defendants.              §
 4                                  §
                                    §
 5                                  §
     UNITED STATES OF AMERICA,      §     Case No.
 6         Plaintiff,               §     5:21-cv-1085-XR
                                    §
 7   v.                             §
                                    §
 8   THE STATE OF TEXAS, et         §
     al.,                           §
 9         Defendants.
```

10

11             ORAL AND VIDEOTAPED DEPOSITION OF
                          DEBORAH CHEN
12                       MARCH 28, 2022

13

14

15      ORAL AND VIDEOTAPED DEPOSITION OF DEBORAH CHEN,

16   produced as a witness at the instance of the Defendants

17   and duly sworn, was taken in the above styled and

18   numbered cause on Monday, March 28, 2022, from

19   10:31 a.m. to 7:24 p.m., before DONNA QUALLS, Notary

20   Public in and for the State of Texas, reported by

21   computerized stenotype machine, at the offices of the

22   Houston Chinese Community Center, 9800 Town Park Drive,

23   Houston, Texas, pursuant to the Federal Rules of Civil

24   Procedure, and any provisions stated on the record or

25   attached hereto.

Deborah Chen                                                      March 28, 2022
                                                                      Page 215

```
 1                 It's all the way through -19.
 2        Q.   Yeah, this one's unfortunately a long section.
 3   But...
 4        A.   Just making sure.
 5        Q.   Yeah.  I guess -- let's start, I guess, with
 6   Section 20 -- 276.015.
 7        A.   Okay.
 8        Q.   Since 276.016 seems to be directed towards a
 9   public official, and that is not what OCA-Greater
10   Houston is.
11        A.   Yeah.
12        Q.   So, yeah, let's focus on that first part.  Good
13   question.
14        A.   Okay.
15        Q.   276.015.
16             And if you can just let me know when you're
17   done.
18        A.   Yes.
19        Q.   All right.  So this section is in regards to
20   vote harvesting.  And talks about a benefit being (As
21   read):  "Anything reasonably regarded as a gain or
22   advantage, including a promise or offer of employment,
23   or political favor, or an official act of discretion,
24   whether to a person or another party whose welfare of an
25   interest to the person."
```

Deborah Chen                                                         March 28, 2022
                                                                        Page 216

 1                  It also says "A person commits an offense
 2   if the person, directly or through a third party,
 3   knowingly provides or" -- "or offers to provide vote
 4   harvesting services in exchange for compensation or
 5   other benefits."
 6                  Is that an accurate summation so far of the
 7   section?
 8       A.   Yes.
 9       Q.   And then it says "A person commits an offense
10   if a person, directly or through a third party,
11   knowingly provides or offers to provide compensation or
12   other benefit to another person in exchange for vote
13   harvesting services."
14                  Is that a accurate summation of that
15   provision?
16       A.   Yes.
17       Q.   Okay.  And then it says an -- "An offense under
18   this section is a felony of the third degree.  If
19   conduct that constitutes an offense under this section
20   also constitutes an offense under any other law, the
21   actor may be prosecuted under this section, the other
22   law, or both."
23                  Is that an accurate summation of the
24   remainder portion of the subsection?
25       A.   Yes.

```
 1        Q.   Does this subsection or section directly
 2   regulate S- -- OCA-Greater Houston?
 3                MR. DOLLING:  Objection; calls for a legal
 4   conclusion.
 5                You can answer.
 6        A.   It directly impacts the work that we do.
 7        Q.   (BY MS. HUNKER)  Okay.  Can you give me a short
 8   summation of how?
 9        A.   It makes it potentially more difficult for us
10   to do our education and assistance work.  It makes our
11   activities that we can do potentially have to be
12   curtailed, example being our candidate forum.  It
13   required us to be much more careful about how we're
14   doing canvassing or, frankly, doing any, you know,
15   assistance type of events.
16                We haven't done -- we -- we basically just
17   decided we're not even going to attempt to do community
18   information sessions where people could come and, you
19   know, potentially get assistance.  Normally, we might
20   have, you know, contacted the Harris County elections
21   office to come and do a demonstration of the machines,
22   especially with the new machines.  That would have been
23   a prime opportunity, frankly, to get people to come out.
24   But it also meant that people might come with questions
25   with their mail-in ballots.  And so we just said, okay,
```

Deborah Chen                                                              March 28, 2022
                                                                            Page 218

```
 1  we're -- we're not going to run that risk at all.
 2       Q.   So what is the basis for your belief that
 3  you're exchanging a compensation or benefit to another
 4  person in exchange --
 5            MR. DOLLING:  Objection; calls --
 6       Q.   (BY MS. HUNKER)  -- for these --
 7            MR. DOLLING:  I'm sorry.
 8       Q.   (BY MS. HUNKER)  -- activities?
 9            MR. DOLLING:  Objection.
10       A.   I'm sorry.  Could you repeat that?
11       Q.   (BY MS. HUNKER)  Yes.
12            What is your basis for deciding that you
13  are offering a benefit or compensation to another person
14  in exchange for the activities that you were just
15  describing?
16            MR. DOLLING:  Objection; calls for a legal
17  conclusion.
18            You can answer.
19            THE WITNESS:  Okay.
20       A.   Just common sense that, you know, everything
21  has some kind of economic value.  So, you know, if we're
22  providing, you know, refreshments or snacks or meals,
23  right?  Sometimes for community events, we have catered
24  in, like, you know, box lunches or, you know, meal boxes
25  or trays of food.  That all has a -- some kind of
```

Deborah Chen                                                    March 28, 2022
                                                                     Page 219

```
 1   economic benefit -- or rather it has an economic value.
 2   So I am just not sure if that would qualify because an
 3   economic benefit to me means there's some kind of value
 4   or we are receiving something of some kind of value.
 5        Q.   (BY MS. HUNKER)  And again, your understanding
 6   of this is based on your reading of the text as opposed
 7   to any type of investigation that you conducted,
 8   correct?
 9        A.   Correct.
10        Q.   And so you did not consult with the DA of
11   Harris County, correct?
12        A.   Correct.
13        Q.   Or the election administrator of Harris County,
14   correct?
15        A.   Correct.
16        Q.   Or the secretary of state's office, correct?
17        A.   Correct.
18        Q.   Or any other state agency?
19        A.   Yeah.  I did not reach out to -- to speak with
20   anybody.
21        Q.   And what is the specific harm that your members
22   suffer as a result of this provision?
23             MR. DOLLING:  Objection; calls for a legal
24   conclusion.
25             You can answer.
```

```
 1      A.   The most immediate harm for our members and,
 2  you know, any community member is the lack of ability
 3  for them to actually get assistance, right, to have a --
 4  a place that -- or -- or a group in the community that
 5  is known for being able to provide information and not
 6  having that opportunity to come and -- and get
 7  information, you know, and to meet with people who can
 8  speak their own language or their own dialect.
 9      Q.   (BY MS. HUNKER)  So in this case, are you
10  describing the harm as being associational as opposed to
11  being a limitation on voting?
12               MR. DOLLING:  Objection; calls --
13      A.   I'm sorry.  I don't understand that.
14               What -- what does that mean,
15  "associational"?
16      Q.   (BY MS. HUNKER)  In having to do with how you
17  interact with people, how you express yourself as
18  opposed to, let's say, voting.
19               MR. DOLLING:  Objection; calls for legal
20  conclusion.
21               You can answer.
22      A.   I'm sorry.  Could you repeat the question?
23      Q.   (BY MS. HUNKER)  Yes.  I'm trying to understand
24  how you would characterize your harm based on the
25  summary you gave me.
```

```
 1                And I'm trying to figure out is it
 2   something to do with associational, like your ability to
 3   associate with people, members, if they have to
 4   associate with each other; or are you concerned that it
 5   restricts their ability to vote?
 6                MR. DOLLING:  Objection; calls for legal
 7   conclusion.
 8                You can answer.
 9        A.  My concern is, I guess, multiple.
10                One is our ability to -- to do our -- our
11   job, to accomplish our mission to educate and assist
12   people, to encourage them to actually go and vote.
13                My other concern is for members and
14   community members who may need assistance and who are
15   not able to -- to get that assistance because we're
16   constrained by this law.
17                And then, third, you know, I'm concerned
18   about potential and -- and loss of volunteers.  It's
19   very difficult to get people to come out and volunteer
20   to do civic engagement type of work.  It's not sexy.
21   It's not fun.  Really, it's not fun for young people.
22   So you have the loss of those opportunities to engage
23   with people for them to actually come and -- and -- and
24   do something and -- and do some kind of community
25   service.
```

```
 1              Then they'll find something else
 2   potentially to fill that time which means a loss to us
 3   of somebody who could have been developed into --
 4   essentially into our pipeline of volunteerism around
 5   civic engagement work whereas, because they don't have
 6   the opportunity to do this with us, you know, they'll go
 7   and do their community service hours somewhere else.
 8   And then, potentially, you know, we lose that
 9   opportunity to have that relationship.
10        Q.   (BY MS. HUNKER)  And you even mentioned earlier
11   in the deposition that you chose not to recruit
12   volunteers, correct?
13        A.   Yes.
14        Q.   And so you don't have any experience of
15   individuals choosing not to volunteer so much as you
16   declined to solicit volunteers; is that accurate?
17        A.   Correct.
18        Q.   And as with the other provisions, you did not
19   segregate the harm, determining how much harm was the
20   result of one provision as opposed to the other,
21   correct?
22        A.   Correct.
23        Q.   And sitting here before me, you don't know of a
24   single voter and/or member who is unable to vote as a
25   result of Section 7.04; is that correct?
```

```
 1  weren't filled out properly or they were missing
 2  information.
 3       Q.   And that missing information was the
 4  information that was required under SB 1, to your
 5  knowledge?
 6       A.   Correct.
 7            MS. HUNKER:  Objection; speculation.
 8       Q.   (BY MR. DOLLING)  Okay.  I'd like to just go
 9  back to a couple of things we were talking about earlier
10  in the deposition just to clarify.
11            So, earlier, you were talking to counsel
12  for the State about how you would -- currently are
13  directing people to Harris County's elections website or
14  other government materials rather than handing out the
15  information yourselves in physical form like flyers.
16            Do you remember that?
17       A.   Yes.
18       Q.   And why did you make -- why are you making that
19  distinction between flyers versus sending people to the
20  website?
21       A.   Because it removes us from being in an
22  in-person situation where we're physically there,
23  distributing information or giving information or
24  opening the opportunity for questions that would put us,
25  our staff, or volunteers at risk of somehow -- some kind
```

```
 1   of criminal violation versus if we just say go -- go
 2   look at the -- go online.  Here is the website.  Go look
 3   at it.  And one would hope that, if there are new
 4   policies or new changes, that, you know, the government
 5   website will update that and have the most, you know,
 6   current information available.
 7               We -- we basically don't want to put
 8   ourselves and our volunteers in a position where
 9   somebody has, you know, criminal liability, potentially.
10        Q.  Okay.  Sort of in that same vein, earlier, you
11   were talking with counsel for the State about sort of
12   where your fear of prosecution under the various
13   provisions of SB 1 came from.
14               Do you remember that?
15        A.  Yes.
16        Q.  When we were going through each provision one
17   by one.
18        A.  Yes.
19        Q.  And the question that was often asked was did
20   your understanding of that come from a plain reading of
21   the statute, or had you done a full investigation?
22               Do you remember that?
23        A.  I remember that -- that line of questioning.
24               It -- it's a combination of just the plain
25   reading of the statute and just the general environment
```