# *EXHIBIT 16*

```
 1              IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3
     LA UNIÓN DEL PUEBLO           §
 4   ENTERO, ET AL.,               §
          PLAINTIFFS,              §
 5                                 §
     V.                            § CASE NO. 5:21-cv-844-XR
 6                                 §
     GREGORY W. ABBOTT, ET AL.,    §
 7        DEFENDANTS.              §
     -----------------------------------------------------------
 8   OCA-GREATER HOUSTON,          §
     ET AL.,                       §
 9        PLAINTIFFS,              §
                                   §
10   V.                            § CASE NO. 1:21-cv-780-XR
                                   §
11   JOHN SCOTT, ET AL.,           §
          DEFENDANTS.              §
12   -----------------------------------------------------------
     HOUSTON JUSTICE, ET AL.,      §
13        PLAINTIFFS,              §
                                   §
14   V.                            § CASE NO. 5:21-cv-848-XR
                                   §
15   GREGORY WAYNE ABBOTT,         §
     ET AL.,                       §
16        DEFENDANTS.              §
     -----------------------------------------------------------
17   LULAC TEXAS, ET AL.,          §
          PLAINTIFFS,              §
18                                 §
     V.                            § CASE NO. 1:21-cv-0786-XR
19                                 §
     JOHN SCOTT, ET AL.,           §
20        DEFENDANTS.              §
     -----------------------------------------------------------
21   MI FAMILIA VOTA, ET AL.,      §
          PLAINTIFFS,              §
22                                 §
     V.                            § CASE NO. 5:21-cv-0920-XR
23                                 §
     GREG ABBOTT, ET AL.,          §
24        DEFENDANTS.              §
     -----------------------------------------------------------
25
```

```
 1   UNITED STATES OF AMERICA,   §
         PLAINTIFF,              §
 2                               §
     V.                          §  CASE NO. 5:21-cv-1085-XR
 3                               §
     THE STATE OF TEXAS,         §
 4   ET AL.,                     §
         DEFENDANTS.             §
 5

 6   *********************************************************

 7              ORAL AND VIDEOTAPED DEPOSITION OF

 8                         JAMES LEWIN

 9                       APRIL 27, 2022

10   *********************************************************

11

12              ORAL AND VIDEOTAPED DEPOSITION OF

13   JAMES LEWIN, produced as a witness at the instance of

14   the Defendants, and duly sworn, was taken in the

15   above-styled and numbered cause on the 27th day of

16   April, 2022, from 10:07 a.m. to 1:33 p.m., before

17   MICHELLE CARVER, Certified Shorthand Reporter, in and

18   for the State of Texas, reported by oral stenograph,

19   in Austin, Texas, pursuant to the Federal Rules of

20   Civil Procedure and the provisions stated on the

21   record or attached hereto.

22

23

24

25
```

```
 1        Q.   So your -- the basis then is the statute
 2   itself; is that correct?
 3        A.   The basis for what?
 4        Q.   Believing that the standards before were
 5   clearer than now?
 6        A.   Could you give that to me in a -- in a full
 7   question?
 8        Q.   Sure.  I had asked you what was the basis
 9   for believing that the standards prior to SB 1 were
10   clearer than the standards that came after.  You
11   referred to the statute itself, particularly this last
12   section, as being vague.
13        A.   Uh-huh.
14        Q.   Is it that language the sole basis of your
15   belief that the standards prior were clearer than now?
16        A.   Is it the sole basis of my belief, no.
17        Q.   Is it a basis of belief?
18        A.   It is a basis of belief, yes.
19        Q.   What are the other bases?
20        A.   The other bases is that prior to this going
21   into effect in the 2020 election, it seemed that all
22   of the folks who are involved with the election had a
23   better understanding of how to advise us on these
24   things.  It -- if you were to call the help desk and
25   ask about the protocols for onboarding a election poll
```

1  watcher, that all seemed clear.  Since the language
2  has been introduced, the folks that I have talked to
3  to ask questions about how to interpret the language
4  and what the, you know -- what the parameters are for
5  acting, no one seems to have a clear understanding,
6  and no one that I've asked or talked to seems to have
7  a clear understanding of how to interpret those rules.
8  And so in addition to my own personal reservations
9  about what I consider vagueness in that language, it
10 seems more difficult now than it did --
11      Q.   Uh-huh.
12      A.   -- then to get a straight answer about how
13 to behave in the role.
14      Q.   Okay.  But you had stated that you had not
15 read the language in the prior bill; is that correct?
16      A.   Correct.
17      Q.   So I guess my question then is:  How did you
18 believe it was less clear now when you hadn't read the
19 language prior, and you felt it was clearer then?
20      A.   Just now when I was answering the question,
21 I was referring when I say it was less clear, the --
22 the answers were less clear, not the language of
23 the --
24      Q.   Thank you.
25      A.   -- provision.

1	A.	Yes.
2	Q.	Okay.  Now let's jump now to page 14, and do
3	you see where it says Plaintiff James Lewin?
4	A.	Yes.
5	Q.	Okay.  And you would agree with me that this
6	is your portion of the response to that interrogatory
7	question?
8	A.	Yes.
9	Q.	All right.  And if we go to the second
10	sentence, it says:  Mr. Lewin is concerned that SB 1's
11	ambiguous provisions that limit election judges'
12	ability to regulate poll watcher's conduct will invite
13	confusion and disruptions at the polls, putting him at
14	risk for criminal prosecution or jeopardizing his
15	personal safety.
16		Did I read that correctly?
17	A.	Yes.
18	Q.	Okay.  We had discussed a little bit about
19	your fear for risk of criminal prosecution.  You have
20	here, however, jeopardizing personal safety.  Can you
21	please explain that?
22	A.	Yes.  I think that gets to the original
23	concern that if there was ambiguity in the manner in
24	which the poll watchers were instructed or their
25	behavior was governed, that there would be cause for

```
 1  disruption at the polls, bipartisan folks including
 2  poll watchers, and that those disruptions would
 3  jeopardize the personal safety of election workers and
 4  judges at those locations.
 5       Q.   And this concern about your personal safety
 6  preexisted SB 1?
 7       A.   Yes.
 8       Q.   And SB 1 did not change your view in regards
 9  to your concern about your personal safety; is that
10  correct?
11       A.   It -- no, that is not correct.
12       Q.   Okay.  Can you please clarify?
13       A.   You're asking me to clarify whether SB 1 --
14       Q.   Yes.
15       A.   -- changes my view --
16       Q.   That's correct.
17       A.   -- of my personal safety?  It's the same
18  concern just heightened because I believe the
19  vagueness in the language of SB 1 is even more
20  empowering to folks who might seek to disrupt polling
21  locations and an election.
22       Q.   What is the basis of your belief that it
23  will increase disruptions in polling locations?
24       A.   One basis of the belief is that by using
25  vague language that would allow for poll workers or
```

```
 1  election judges to be criminally prosecuted for bad
 2  decisions, it might deter people from participating in
 3  that role -- good people who otherwise might really
 4  have a positive impact in making sure it's a fair and
 5  user-friendly election for all the eligible voters.
 6       Q.   So is it fair to say then the basis of your
 7  belief is the language of the statute itself?
 8       A.   No.  That's part of it but not all of it.
 9       Q.   Okay.  What's the remainder?
10       A.   Could you ask the -- that as a full
11  question?
12       Q.   Sure.  Besides the language of the text,
13  what else is the basis of your belief that Senate
14  Bill 1 will jeopardize your personal safety?
15       A.   Another part of that basis is just that in
16  my experience there seems to be confusion over the
17  interpretation of that text among poll workers, among
18  other judges, and among folks who work for the
19  Elections Division that would otherwise be able to
20  answer those questions.  And the inability to answer
21  those questions based on that vagueness is also part
22  of the basis for my belief.
23       Q.   Okay.  Similar question but trying to target
24  a different allegation.  Besides the language of the
25  text, what is your basis -- belief that SB 1,
```

1                   MS. NICHOLAS:  Okay.  Thank you.  No
2    further questions from Defendant Scarpello and
3    Defendant Creuzot.  Thank you.
4                   THE COURT REPORTER:  Is there any more
5    questions?
6                   MS. HUNKER:  No more questions.
7                   THE COURT REPORTER:  No more questions.
8    Okay.  Before we go off the record real quick, though,
9    Ms. Nicholas, did you want to purchase a copy of the
10   transcript today?
11                  MS. NICHOLAS:  Yes.  Let's have a basic
12   transcript.  I don't need any rush or anything --
13                  THE COURT REPORTER:  Okay.
14                  MS. NICHOLAS:  -- of that nature.
15                  THE COURT REPORTER:  Okay.  Thank you.
16   That's all I have.
17                  THE VIDEOGRAPHER:  We are off the
18   record at 1:33.
19                  (End of testimony at 1:33 p.m.)
20
21
22
23
24
25