# *EXHIBIT 19*

1          IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF TEXAS
2                SAN ANTONIO DIVISION

3

4   LA UNION DEL PUEBLO ENTERO,     )(
    et al.                          )(
5           Plaintiffs              )(
                                    )(
6   VS.                             )(    CASE NO.
                                    )(    5:21-cv-844-XR
7                                   )(    (LEAD CASE)
    GREGORY W. ABBOTT, et al.       )(
8           Defendants              )(
    _____
9
    OCA-GREATER HOUSTON, et al.     )(
10          Plaintiffs              )(
                                    )(    CASE NO.
11  VS.                             )(    1:21-cv-780-XR
                                    )(
12  JANE NELSON, et al.             )(
            Defendants              )(
13  _____

14  HOUSTON AREA URBAN LEAGUE,      )(
    et al.                          )(
15          Plaintiffs              )(
                                    )(    CASE NO.
16  VS.                             )(    5:21-cv-848-XR
                                    )(
17  GREGORY WAYNE ABBOTT, et al.    )(
            Defendants              )(
18  _____

19  LULAC TEXAS, et al.             )(
            Plaintiffs              )(
20                                  )(
                                    )(    CASE NO.
21  VS.                             )(    1:21-cv-0786-XR
                                    )(
22  JANE NELSON, et al.             )(
            Defendants              )(
23  _____

24

25



```
 1  _____

 2  MIFAMILIA VOTA, et al.          )(
            Plaintiffs              )(
 3                                  )(   CASE NO.
    VS.                             )(   5:21-cv-0920-XR
 4                                  )(
    GREG ABBOTT, et al.             )(
 5          Defendants              )(
    _____
 6
    UNITED STATES OF AMERICA        )(
 7          Plaintiff               )(
                                    )(   CASE NO.
 8  VS.                             )(   5:21-cv-1085-XR
                                    )(
 9  THE STATE OF TEXAS, et al.      )(
            Defendants              )(
10  _____

11              ORAL AND VIDEOTAPED DEPOSITION OF
12                         MARIA GOMEZ
                         APRIL 25, 2023
13  _____

14

15          ORAL AND VIDEOTAPED DEPOSITION OF MARIA GOMEZ,

16  produced as a witness at the instance of the State

17  Defendants, taken in the above-styled and numbered

18  cause on APRIL 25, 2023, between the hours of

19  10:07 a.m. and 12:17 p.m., reported stenographically by

20  DONNA McCOWN, Certified Court Reporter No. 6625, in and

21  for the State of Texas, at La Union Del Pueblo Entero,

22  1601 US 83 Business, San Juan, Texas, pursuant to the

23  Federal Rules of Civil Procedure and any provisions

24  stated on the record or attached therein.

25
```



```
 1   about, were there any documents that y'all reviewed?
 2        A.  No.
 3        Q.  Well, like I said, Maria, my name is Luis
 4   Suarez.  So kind of how this goes is I'm going to ask
 5   you some questions, and the court reporter here will be
 6   taking them down.  And I just need you to respond
 7   truthfully the best you -- the best way you can.  Do
 8   you understand that?
 9        A.  Yes.
10        Q.  How old are you, Ms. Gomez?
11        A.  74.
12        Q.  And do you live in Harlingen?
13        A.  No.
14        Q.  Where do you live?
15        A.  In Pharr.
16        Q.  Is that about 20 minutes from here?
17        A.  More or less.
18        Q.  And how long have you lived in Pharr?
19        A.  For many years.
20        Q.  Were you born in Pharr?
21        A.  Yes.
22        Q.  And you -- do you currently work for LUPE?
23        A.  No.
24        Q.  Where do you currently work?
25        A.  I am retired.
```



```
 1         Q.   Where did you work before you retired?
 2              MS. SERNA URIBE:   Objection, vague.
 3         A.   At LUPE.
 4         Q.   Let me take a step back.   There will be times
 5    when your attorney will object.   You can let her finish
 6    her objection and then still answer, unless she
 7    instructs you not to.   Okay?
 8         A.   Okay.
 9         Q.   So you said before you retired you worked for
10    LUPE; is that correct?
11         A.   Yes.
12         Q.   How long did you work for LUPE?
13         A.   I don't remember how many years.
14         Q.   Could you give an estimate?
15         A.   More than ten.
16         Q.   Did you work somewhere before that?
17              MS. SERNA URIBE:   Objection, vague.
18         Q.   You can answer.
19         A.   What's the question?
20         Q.   Did you work somewhere before you worked for
21    LUPE?
22         A.   Yes.
23         Q.   And where did you work?
24         A.   Union de Campesinos and in the field.
25         Q.   What is Union de Campesinos?
```



```
 1        A.  I visit people at home, and I visit other

 2   people like me.

 3        Q.  And what do y'all generally do?

 4             MS. SERNA URIBE:  Objection, vague.

 5        Q.  You can answer.

 6        A.  Well, I take some people to the doctor.  To

 7   others, I help them.  I clean their rooms.  To others,

 8   I try to talk to them.  I -- I take food to share.  I

 9   try to also to do the hygiene.

10             MS. SERNA URIBE:  Would it be possible to

11   have the interpreter also interpret my objections?

12             MR. SUAREZ:  That's fine.

13             MS. SERNA URIBE:  Thank you.

14             THE INTERPRETER:  I'll do that.

15        Q.  As -- as far as your volunteer work with LUPE,

16   do you ever assist people -- or do you ever assist

17   people with voting?

18             MS. SERNA URIBE:  Objection, vague.

19        Q.  You can answer.

20        A.  I used to do it before, but I don't feel

21   committed.  I mean, I don't feel able to do it right

22   now.

23        Q.  When you say you used to do it before, when did

24   you used to do it?

25        A.  I believe it was before '21.
```



```
 1        Q.  What happened in '21 that changed your
 2   position?
 3        A.  I started here --
 4             MS. SERNA URIBE:  Objection -- sorry --
 5   vague; calls for speculation.
 6             MR. SUAREZ:  You can still translate what
 7   she said.
 8        A.  I started hearing that there was a change in
 9   the laws, and I didn't want to continue because I
10   didn't want to make a mistake.
11        Q.  You said that you heard there was a change in
12   the law, correct?
13             MS. SERNA URIBE:  Objection, vague and
14   calls for speculation.
15        Q.  You can answer.
16        A.  Well, we didn't have to help the people anymore
17   to vote.  Well, it's not that we couldn't.  They didn't
18   want us to.  I mean, us, that we were helping people to
19   vote, we didn't have to do it anymore.
20        Q.  Why didn't -- why didn't y'all have to do it
21   anymore?
22             MS. SERNA URIBE:  Objection, vague.
23        Q.  You can answer.
24        A.  I wasn't -- I wasn't feeling that okay to help
25   people to vote because I didn't know how strong the law
```



Maria Gomez                                        April 25, 2023
                                                        Page 13

1   was, how strong the law was as far as us helping.  And

2   when people would ask me, I will let them know that

3   there were people inside that could help them.  I was

4   feeling impotent because I couldn't help them.

5       Q.  You were -- you felt powerless, or you felt

6   impotent to help?

7       A.  Yes, because what I was hearing about the

8   change in the law.

9       Q.  Did LUPE ever instruct you not to -- to stop

10  helping people vote?

11          MS. SERNA URIBE:  Objection, vague;

12  mischaracterizes the testimony.

13      Q.  You can answer.

14          THE INTERPRETER:  Could you repeat the

15  question?  The interpreter didn't interpret it.

16      Q.  Did you ever -- did LUPE ever instruct you not

17  to help people vote?

18      A.  No.

19      Q.  So you stopped helping people vote because you

20  were worried about the law; is that correct?

21          MS. SERNA URIBE:  Objection,

22  mischaracterizes prior testimony; objection, vague.

23      Q.  You can answer.

24      A.  What's the question?

25      Q.  You weren't instructed to stop helping people



1   vote, but you felt worried about the law and that's why

2   you stopped helping people vote; is that correct?

3               MS. SERNA URIBE:   Same objections.

4        A.   I decided.

5        Q.   Why -- how did you come to that decision?

6               MS. SERNA URIBE:   Objection, vague; and

7   objection, calls for speculation.

8        Q.   You can answer.

9        A.   What was the question I need to answer?

10       Q.   How did you come to that decision to stop

11  helping people vote?

12              MS. SERNA URIBE:   Same objections.

13       Q.   You can answer.

14       A.   Because of the restrictions and then under oath

15  and so many things that I didn't understand.

16       Q.   Were you -- have you ever read the law -- or

17  the SB 1 law?

18       A.   I have heard of it.

19       Q.   When you say you've heard of it, where have you

20  heard of it?

21              MS. SERNA URIBE:   Objection, vague.

22       Q.   You can answer.

23       A.   Well, on TV, on the radio, with people.

24       Q.   When you went to trainings or meetings with

25  LUPE, did they ever discuss the law?



```
 1    previously helped vote that you were no longer going to

 2    assist them vote?

 3                    MS. SERNA URIBE:   Objection, vague.

 4         Q.  You can answer.

 5         A.  Yes, they did ask me.

 6         Q.  And what was your response?

 7         A.  I told them that I was not trained anymore to

 8    be able to help them.

 9         Q.  Okay.  Ms. Gomez, I want to narrow down what

10    you were no longer trained for.  You no longer received

11    any training after SB 1 was passed.  Is that your

12    testimony?

13                    MS. SERNA URIBE:   Objection, vague.

14         Q.  You can answer.

15                    MS. SERNA URIBE:   Objection,

16    mischaracterizes the prior testimony.

17         A.  I don't remember.

18         Q.  You said you loved helping people or

19    volunteering for LUPE; is that correct?

20         A.  Yes.

21         Q.  So deciding not to help people vote is a big

22    decision; is that correct?

23                    MS. SERNA URIBE:   Objection, vague;

24    objection, mischaracterizes prior testimony.

25         Q.  You can answer.
```



Maria Gomez                                          April 25, 2023
                                                        Page 19

```
 1        Q.  When you attended these meetings to familiarize
 2   yourself with SB 1, did you hear something that
 3   concerned you specifically about SB 1?
 4                MS. SERNA URIBE:  Same objections.
 5        A.  I don't remember.
 6        Q.  There had to be something that concerned you,
 7   correct?
 8                MS. SERNA URIBE:  Objection, vague;
 9   objection asked and answered; objection, argumentative.
10        Q.  You can answer.
11        A.  I was concerned with me not being able to help
12   people to vote.
13        Q.  When you say you were concerned you weren't
14   able to help people vote, what was told to you or what
15   was your belief of why you could no longer do that?
16                MS. SERNA URIBE:  Objection, vague;
17   objection, calls for speculation; and objection, it's a
18   compound question.
19        Q.  You can answer.
20        A.  I need the question again.
21        Q.  When you say that you were concerned regarding
22   the bill, what was told to you or what was your
23   understanding of SB 1 that prevented you or concerned
24   you from helping people to vote?
25                MS. SERNA URIBE:  Same objections.
```



 1        A.   I think that more than anything, it was the

 2   fear that that law would be hurting me for me helping

 3   people to vote.

 4        Q.   But what was -- what was the basis of that

 5   fear?

 6               MS. SERNA URIBE:   Objection, vague;

 7   objection, calls for speculation.

 8        A.   I believe to hear the negative things about

 9   this law.

10        Q.   To your understanding, what were the negative

11   things about the law?

12               MS. SERNA URIBE:   Objection, vague; and

13   objection, calls for speculation.

14        A.   I don't remember right now, but yes, but I

15   don't remember.

16        Q.   Would you go help people to go vote today if

17   you could?

18               MS. SERNA URIBE:   Objection, vague;

19   objection, calls for speculation.

20        Q.   You can answer.

21        A.   Can you ask me again?

22        Q.   Would you go help people today to go vote if

23   you could?

24               MS. SERNA URIBE:   Same objections.

25        A.   If I could, I would think so.  Without fear,



Maria Gomez                                            April 25, 2023
                                                          Page 28

```
 1       A.   We would be trained.
 2       Q.   And people that voted by mail-in ballots, to
 3  your understanding, did they still have to be
 4  registered to vote?
 5            MS. SERNA URIBE:   Objection, vague.
 6       A.   The problem here is that they stopped sending
 7  the ballots to vote over the mail.  Not all of us
 8  received them.
 9       Q.   Was there any other problem aside -- aside from
10  that that prevented you from helping people vote by
11  mail?
12            MS. SERNA URIBE:   Objection, vague.
13       A.   Well, more than anything, I think it was my
14  fear for something to affect me, something that would
15  be in the law that will affect me.
16       Q.   So you were -- were you worried about making a
17  mistake?
18            MS. SERNA URIBE:   Objection, vague.
19       A.   Due to me not understanding the laws that well.
20       Q.   In respect to mail-in voting or in general?
21            MS. SERNA URIBE:   Objection, vague.
22       A.   Well, in general.
23       Q.   But you can't point to any specific part of
24  SB 1 that worried you, correct?
25            MS. SERNA URIBE:   Objection, vague;
```



1   objection, calls for speculation.

2       A.   No.

3       Q.   As far as the mail-in voting, are you aware of

4   any instances where someone was not able to vote other

5   than the -- their failure to register on time?

6            MS. SERNA URIBE:   Objection, calls for

7   speculation.

8       A.   I don't remember.

9       Q.   As a volunteer, prior to SB 1, did you help

10  people vote by mail?

11           MS. SERNA URIBE:   Objection, vague.

12      A.   Yes.

13      Q.   And it's your testimony that because of SB 1,

14  you no longer can help people vote by mail?

15      A.   I don't understand the law that well.   That's

16  why I'm trying not to help those people.

17      Q.   Do you give them a number or somebody else that

18  they can reach to seek assistance voting my mail?

19           MS. SERNA URIBE:   Objection, vague.

20      A.   Yes, right, there at the voting polls.

21      Q.   If it's at the voting polls, then it wouldn't

22  be voting by mail, correct?

23           MS. SERNA URIBE:   Objection, vague;

24  objection, calls for speculation.

25      A.   It's that there was two different ways, one



```
 1       A.  Of course I did.

 2       Q.  And the problem with that oath is that other

 3  people didn't take the oath?

 4       A.  No.  Well, they would be working there.  They

 5  were the ones that were working at the polling onsite.

 6       Q.  As far as you yourself as a volunteer, did you

 7  have a problem with the oath?

 8                 MS. SERNA URIBE:  Objection, vague.

 9       A.  No.

10       Q.  But you have a problem with the new oath; is

11  that correct?

12       A.  No.  It's not just -- it's not about the oath.

13  It's about the restrictions.  I don't have a problem

14  with the oath.  I just don't feel capable or -- to

15  assist the people to vote.

16       Q.  So you don't have a problem with the oath under

17  SB 1; is that correct?

18                 MS. SERNA URIBE:  Objection, vague.

19       A.  Well, I don't understand it that well nowadays.

20  That's why I'm not -- I'm trying not to help people to

21  vote.

22       Q.  So you stopped assisting people to vote because

23  you don't understand the oath.  Is that fair to say?

24                 MS. SERNA URIBE:  Objection,

25  mischaracterizes prior testimony.
```



```
 1        A.  Yes, because I don't feel at peace.  I don't
 2   feel capable.
 3        Q.  What part of the oath makes you feel uncapable
 4   of giving it -- sorry, of taking it?
 5             MS. SERNA URIBE:  Objection, vague.
 6        A.  Right now I don't know, but I don't want to
 7   risk on doing something that I feel that I'm not able
 8   to do.
 9        Q.  You felt that you're unable to take the oath?
10        A.  Not the oath, but how the law is nowadays, what
11   are the requirements, how many are the requirements.
12        Q.  So correct me if I'm wrong.  You didn't -- you
13   don't have a problem with the oath.  You have a problem
14   with the restrictions around voting assistance; is that
15   correct?
16        A.  Yes, the restrictions.  Then also restrictions
17   that I don't understand that well, and that I don't
18   want those problems for me.
19        Q.  Can you identify what those alleged
20   restrictions are?
21             MS. SERNA URIBE:  Objection, vague.
22        A.  Well, I don't know, but they're written there,
23   or I have heard about them, that we cannot be -- we're
24   not able to help the people to vote.
25        Q.  You say you've heard about the restrictions?
```



MAGNA
LEGAL SERVICES

1        A.   Yes, I have heard about them, and that's why I

2    will be abstaining myself from having that problem.

3        Q.   What restrictions did you hear about?

4        A.   Especially the one that we have heard about the

5    most is that we're not able to help people to vote,

6    especially us as volunteers.

7        Q.   You were told that you can no longer volunteer?

8             MS. SERNA URIBE:   Objection,

9    mischaracterizes the testimony.

10       A.   I don't believe so.   I don't think they have

11   told me that I cannot be a volunteer, but I can't do it

12   because I don't feel, like, able to do it.   I don't

13   feel free like I used to before.   I feel like my hands

14   are tied.

15       Q.   Why do you feel like your hands are tied?

16       A.   Because what you hear about the law, that we're

17   not able to help people to vote.

18       Q.   That brings me back to the question of whether

19   you were ever told or ever heard of an instance where

20   you couldn't help people vote.

21             MS. SERNA URIBE:   Objection, vague.

22       A.   After '21, I haven't tried to go with them to

23   the voting poll inside to help them vote.

24       Q.   So you haven't tried to assist people to vote

25   in the last election?



```
 1        A.  No.
 2        Q.  And that's because of your fear of being an
 3   assister?
 4        A.  Yes.
 5        Q.  Even though you can't point to any specific
 6   part of SB 1 that you're afraid of?
 7        A.  I don't know.
 8        Q.  So you -- you didn't try to help people vote in
 9   the last election?
10        A.  To go inside with them, no.
11        Q.  Do you know of other people that were voting
12   assisters in the last election?
13             MS. SERNA URIBE:  Objection, vague;
14   objection, calls for speculation.
15        A.  I don't remember.
16        Q.  Do you have a lot of friends in LUPE that are
17   volunteers?
18        A.  Some.
19        Q.  And you don't know any of them that volunteer
20   to assist, help people vote?
21             MS. SERNA URIBE:  Objection, calls for
22   speculation.
23        A.  I don't know.
24        Q.  Were you at the polling station last election?
25             MS. SERNA URIBE:  Objection, vague.
```



```
 1   isn't correct, I think -- or complete, I should say.
 2   She testified that she also feared the law.  I just
 3   want to make sure that that's in the record, the
 4   complete reason that she said she feared the law.
 5                 THE INTERPRETER:  Well, I don't have
 6   the -- can you read my --
 7                 THE COURT REPORTER:  Not in Spanish, I
 8   can't.
 9                 THE INTERPRETER:  No.  The interpretation.
10                 (Requested portion was read back.)
11                 THE INTERPRETER:  The interpreter stands
12   corrected.  The witness used the word "fear of not
13   understanding the law."
14       Q.  So, Ms. Gomez, I understand your fear and your
15   worry.  But my specific question is whether you
16   understand or have knowledge or facts regarding how
17   SB 1 has impacted voters who need assistance voting.
18                 MS. SERNA URIBE:  Objection, compound
19   question, and it's vague, and it calls for speculation.
20       A.  I think that the trust of the community is what
21   has been lost because of the fear of going and not
22   finding anybody to help them with voting.
23       Q.  What's your basis for that knowledge?
24       A.  The fear exists there.  They used to look
25   out -- look for us before, because we were one
```



Maria Gomez                                            April 25, 2023
                                                          Page 50

1   community with them.  And now, well, they look for me
2   at least, but I don't feel able to help them.
3       Q.  But you testified as to their fear and the
4   effects SB 1 has on them.  I'm specifically talking
5   about what's your knowledge as to those effects.
6               MS. SERNA URIBE:  Objection, vague;
7   objection, calls for speculation; objection,
8   mischaracterizes prior testimony.
9       A.  The community effect or the law?
10      Q.  I'm talking about the effects on voters who
11  need assistance voting by mail.
12              MS. SERNA URIBE:  Same objections.
13      A.  I don't know.
14      Q.  So your knowledge of the effects on SB 1 and
15  the voters is speculation, kind of your own thoughts,
16  derived from nothing else?
17              MS. SERNA URIBE:  Objection,
18  mischaracterizes prior testimony.
19      A.  It's that people are different, so I don't
20  know.
21      Q.  Can you give me an example of one person that
22  the effects of -- strike that.
23              Can you give me an example of what one
24  person has said about how SB 1 affects them?
25              MS. SERNA URIBE:  Objection, vague; and



1          Do you know if they ever requested a

2   reasonable accommodation to vote by mail?

3          MS. SERNA URIBE:  Objection, calls for

4   speculation.

5      A.  I don't remember.

6          MR. SUAREZ:  Pass the witness.

7          MS. SERNA URIBE:  I don't have any

8   questions.

9          THE COURT REPORTER:  Does anybody on Zoom

10  have any questions?

11         I take it that nobody does.  Does anybody

12  on Zoom need a copy of the transcript?

13         MS. MENENDEZ:  MALDEF will need a copy of

14  the transcript.  Samantha, the attorney who is there on

15  behalf of MALDEF, will request one.  Thank you.

16         MR. SUAREZ:  We have a standing order.

17         (Deposition concluded)

18

19

20

21

22

23

24

25

