**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | [Consolidated Cases] |
| | § | |
| GREGORY W. ABBOTT, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**STATE DEFENDANTS' RESPONSE TO**
**THE UNITED STATES' STATEMENT OF UNCONTESTED FACTS IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

On May 26, 2023, the United States submitted a Statement of Uncontested Facts in support of its Motion for Summary Judgment (ECF 609-1). State Defendants hereby respond to delineate facts that are contested.

The United States used the following terms and definitions, except where otherwise specified:

1. "Senate Bill 1" or "SB 1" refers to the Election Integrity and Protection Act of 2021, 2021 Tex. Sess. Law Serv. 2d Called Sess. ch. 1.

2. "Secretary of State" or "SOS" refers to the individual officeholder and all employees and agents thereof, including but not limited to the employees and agents of the Elections Division of the Office of the Secretary of State.

3. "DPS" refers to the Texas Department of Public Safety.

4. "DPS number" refers to the number of an individual's Texas driver's license, election identification certificate, or personal identification card issued by DPS.

5. "SSN4" refers to the last four digits of a Social Security number.

6. "TEAM" refers to the Texas Election Administration Management system, which

i

includes the official statewide voter registration database maintained by the Texas Secretary of State.

7. "ABBM" refers to an application for a ballot by mail.

8. "FPCA" refers to a Federal Postcard Application, a ballot request form available only to members of the military, military family members, and overseas citizens.

9. "Overseas citizens" refers to United States citizens residing outside the United States.

10. "EVBB" refers to a county early voting ballot board. *See* Tex. Elec. Code §§ 87.001-.006

11. "SVC" refers to a county signature verification committee. *See* Tex. Elec. Code § 87.027.

State Defendants' The United States' Statement of Uncontested Facts is inaccurate or incomplete in the following respects:

5. The United States lists the substantive eligibility requirements listed under Tex. Elec. Code § 11.002(a). However, Texas law imposes other practical, non-substantive qualifications that a voter must meet before being considered a qualified, whether by person or by mail. *See*, *e.g.*, *Id.* §§ 13.002. In addition, although "any qualified voter is eligible for early voting by personal appearance," *Id.* § 82.005, a voter must satisfy additional eligibility requirements, *Id* at §§ 82.001–82.004, as well as other practical, non-substantive qualifications to receive and cast a ballot by mail. *Id.* at §§ 84.001, 84.002.

6. SB 1 amended the practical, non-substantive qualifications that a voter must meet before being entitled to vote by mail. Although "any qualified voter is eligible for early voting by personal appearance," Tex. Elec. Code § 82.005, a person must fall under one of the specified categories, *Id* at §§ 82.001–82.004, and submit an application for an early voting ballot to be voted by mail that is in compliance with the Texas Election Code "to be entitled to vote an early voting ballot by mail." *Id.* at § 84.001(a). Following SB 1, an ABBM must contain an identification number that matches the same voter identified on the voter's application for voter registration under Section 13.002(c)(8) for ABBM to be compliant with §84.002(1-a) and for the voter to be qualified to vote by mail.

7. To complete a voter registration application in Texas that demonstrates the resident's qualifications to vote, "[a] registration application must include: . . . (A) the applicant's Texas driver's license number or the number of a personal identification card issued by the Department of Public Safety; (B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or (C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B)." Tex. Elec. Code § 13.002(c)(8). If the registrar determines that an application does not comply with this requirement, "the registrar shall reject the application." Tex. Elec. Code § 13.072 (c).

Likewise, "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless: an applicant must enter in the applicants' voter registration form: "(I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or (II) in the case of any other applicant . . . the last 4 digits of the applicant's social security number. 52 U.S.C. § 21083(a)(5)(A)(i).

11. Texas required voter registration applicants to include a DPS number, SSN4, or statement that the applicant has not been issued a DPS number or SNN4 in response to the Help America Vote Act, which states: "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes: (I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or (II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A)(i).

12. Following the passage of Senate Bill 975, in the Regular Session of the 88th Texas Legislature, the Department of Public Safety shall notify a person who surrenders their driver's license that their voter registration information will need to be updated to include the identification number of the newly issued certificate and provided an opportunity to update their voter registration information at the time of applying for the certificate to include the new identification number. Act of May 22, 2023, 88th Leg. R.S., S.B. 975, § 1 (to be codified as an amendment to Tex. Transp. Code § 521.101).

14. State Defendants admit that possession of a DPS number or SSN4 is not a qualification to vote inasmuch that Texas law allows voters to provide a statement on their voter registration application that the voter has not been issued such a number. Tex. Elec. Code § 13.002(c)(8)(C). For voters who have been issued a DPS number or SSN, the voter must recite the DPS number or SSN4 that they have been issued to be qualified to vote. *Id.*; *see also* 52 U.S.C. § 21083(a)(5)(A)(i).

**15.** State Defendants object to this allegation as misleading and a mischaracterization of the witness's testimony. The Former Director was referring in this instance to the substantive eligibility criteria

iv

set forth § 11.002(a), but Texas law imposes additional qualifications that a voter must meet to vote both by personal appearance and by mail, as set forth in State Defendants objections in Paragraph 5–7. In addition, as Former Director Ingram explained in the same exchange, the DPS number and SSN4 identifies the vote who is or is not eligible to vote by mail.

18. State Defendants admit that SB 1 did not amend the categories of voters eligible to vote early by mail, but it did amend practical, non-substantive qualifications that a voter must meet before being entitled to vote by mail. Specifically, Section 84.001(a), Texas Election Code, states that "To be entitled to vote an early voting ballot by mail, a person who is eligible for early voting must make an application for an early voting ballot to be voted by mail as provided by this title." Following SB 1, that required voters to provide either their DPS number, SSN4, or a statement that the application was not issued either number.

19. State Defendants object to this allegation as misleading, speculative, and a mischaracterization of both the law and the witness's testimony. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. O (SOS Keith Ingram 30(b)(6) March 28, 2023 Dep.) at 85:10–86:7.

20. State Defendants admit that possession of a DPS number or SSN4 is not a qualification to vote by mail inasmuch that Texas law allows voters to provide a statement on their ABBM or carrier envelope that the voter has not been issued such a number. Tex. Elec. Code §§ 84.002(1-a), 86.002(g)(3), 87.041(b)(8). For voters who have been issued a DPS number or SSN, the voter must recite the DPS number or SSN4 that is in their voter registration file on TEAM to be qualified to vote by mail.

21. & 22. State Defendants admit that SB 1 did not change the requirement that voters submit an application that "is in writing and signed by the applicant" to request a mail-ballot, but State Defendants note that the United States only excerpted a fragment of the relevant section of the Texas Election Code. Sections 84.001 and 84.002 contain other basic requirements that voters must meet for their ABBM to be

accepted and receive a mail-ballot.

26. State Defendants admit that SB 1 did not amend Section 84.001(c), which states that "[a]n applicant is not required to use the official application form." State Defendants note, however, that SB 1 did amend the content of both official and unofficial ABBMs to require applicants to provide either their DPS number, SSN4, or a statement that the applicant was not issued either number. Tex. Elec. Code § 84.002(a)(1-a)(A)–(C).

27. State Defendants admit that the information required under a FPCA is generally the same as the information required under an ABBM in Texas, except that a FPCA additionally requires the applicant to affirm his or her substantive qualifications to vote via a FPCA while not requiring the applicant to select the specific election(s) for which the applicant is submitting a mail-ballot.

30. State Defendants admit that SB 1 did not amend the substantive qualifications for an annual ABBM; however, it did amend practical, non-substantive qualification for all applicants who vote by mail.

31. In addition to the information listed, a voter requesting a mail ballot before SB 1's enactment was also required to affirm the statement, "I have a sickness or physical condition that prevents me from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring my health," if the voter was applying for a mail ballot on the ground of disability. Tex. Elec. Code § 84.002(c) (internal quotation marks omitted) (quoting Tex. Elec. Code § 82.002(a)). Furthermore, a voter requesting a mail ballot for a primary election was required to indicate party preference on the application. Tex. Elec. Code §§ 162.003, 162.012.

35. In the event the early voting clerk must reject an ABBM, the clerk "shall provide notice of the rejection," which must state "the reason for the rejection" and "include information regarding the ability to correct or add information" required under SB 1 through the online tool. Tex. Elec. Code § 86.001(f-1), (c).

36. If an "application does not identify the same voter identified on the applicant's application for

voter registration," Tex. Elec. Code § 86.001(f), a ballot may not be issued to the voter based on that application, except if the voter updates their voter registration record.

37. State Defendants deny that the only method of correcting a rejected ABBM is through the Ballot by Mail Tracker or the submission of a new ABBM, as voters may also update their voter registration record by submitting a new registration form or validate their personal identification numbers on texas.gov. *See* ECF 609-3 at Ex. 2 (Election Advisory 2022-08) at 4.

41. State Defendants admit that the online ballot tracker does not update a voter's registration records, but State Defendants note that voters may update their personal identification numbers electronically on texas.gov. ECF 609-3 at Ex. 2 (Election Advisory 2022-08) at 4, 24.

45. State Defendants object to this allegation as misleading and based on a mischaracterization of both the Texas Election Code and the witness's testimony. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context of his statements.  Resp. Appx. M (SOS Keith Ingram 30(b)(6) April 28, 2022 Dep.) at 99:3–102:3.

49.  Members of the military, military family members, and overseas voters who submitted an FPCA may submit a corrected signature sheet by email, fax, personal delivery, or mail. ECF 609-3 at Ex. 2 (Election Advisory 2022-08) at 16.; *see also* Tex. Elec. Code § 101.107.

58. The procedure laid out in Section 86.011, and referenced by the United States, only applies to facial defects on the carrier envelope. Prior to SB1, facial defects would include "a missing signature by the voter, a partially completed witness or assistant box (if applicable), or a ballot that is not returned in a carrier envelope." ECF 609-3 at Ex. 2 (Election Advisory 2022-08) at 20.

62. & 63. When reviewing a carrier envelope, the SVC or EVBB may only accept a mail ballot if the numerical identifying information provided on the carrier envelope "identifies the same voter identified on the voter's application for voter registration." Tex. Elec. Code § 87.041(b)(8); *see also id.* § 87.027(j).

67. The Texas Legislature amended Sections 87.0271(b) and 87.0411 in the 88th Regular Session. In accordance with these amendments, "not later than the second day" after the SVC and EVBB discovers that DPS number or SSN4 is missing or does not identify the same voter identified on the voter's application for voter registration, the SVC and EVBB "shall send the voter a notice of the defect and a corrective action form developed by the secretary of state . . . by mail or by common or contract carrier." The SVC and EVBB shall include with the notice a brief explanation of each defect in the noncomplying ballot and inform the voter that the voter may cancel the voter's application to vote by mail in the manner described by Section 84.032; or correct the defect in the voter's ballot by one of the permitted options. *See* Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws (STATE182734–STATE182742).

68. The Texas Legislature amended Sections 87.0271(b) and 87.0411 in the 88th Regular Session. In accordance with these amendments, if the SVC or EVBB determines "that it would not be possible for the voter to receive the notice of defect within a reasonable time to correct the defect," the SVC or EVBB may notify the voter of the defect by telephone or e-mail and inform the voter that the voter may request to have the voter's ABBM canceled, submit a corrective action form developed by the secretary of state, come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect, or cure the defect through the online ballot tracker. *See* Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws. *See* Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws (STATE182739–STATE182740.)

69. The Texas Legislature amended Section 87.0222 in the 88th Regular Session. In accordance with these amendments, "the jacket envelopes containing early voting ballots voted by mail shall be delivered to the board" "not later than the ninth day before election day." *See* Tex. S.B. 1599, 88th Legis., R.S., § 6, sec. 87.0222, 2023 Tex. Gen. Laws (STATE182737). In addition, when such an envelope is returned after delivery of the ballots under Subsection (a), it "may be delivered to the presiding judge of

vi

the early voting ballot board between the end of the ninth day before election day and the closing of the polls on election day, or as soon after closing as practicable, at the time or times specified by the presiding judge. " *See* Tex. S.B. 1599, 88th Legis., R.S., § 6, sec. 87.0222, 2023 Tex. Gen. Laws (STATE182737).

70. Under the Texas Election Code, a carrier envelope must be received at the address on the carrier envelope no later than the time the polls are required to close on Election Day in order for the ballot within to be timely and counted, or "not later than 5 p.m. on the day after election day, if the carrier envelope was placed for delivery by mail or common or contract carrier before election day and bears a cancellation mark of a common or contract carrier or a courier indicating a time not later than 7 p.m. at the location of the election on election day." Tex. Elec. Code § 86.007(a)(2). In addition, a voter has the option to cancel their ABBM and vote by personal appearance. Tex. Elec. Code §§ 84.032, 87.0271(c), 87.0411(c)

72. The Texas Legislature amended Section 86.015(b) in the 88th Regular Session. In accordance with these new amendments, voters must now enter their date of birth to gain access to the Ballot by Mail Tracker instead of the voter's registration address. *See* Tex. S.B. 1599, 88th Legis., R.S., § 5, sec. 86.015(b), 2023 Tex. Gen. Laws (STATE182736); Tex. H.B. 357, 88th Legis., R.S., § 2, sec. 86.015(b), 2023 Tex. Gen. Laws (STATE182638).

85., 86., and 87. State Defendants admit that Section 31.004 of the Texas Election Code authorizes the Secretary of State to "assist and advise all election authorities with regard to the application, operation, and interpretation" of the Texas Election Code. State Defendants deny that such assistance or advice has the force and effect of law or is in any way authoritative or binding. By asserting the interpretations issued by the Secretary of State are "authoritative," the United States mischaracterizes both Texas law and the witness's testimony. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. A (Christina Adkins July 20, 2022 Dep.) at 80:10–82:11; *see also* Resp. Appx. HH (Christina Adkins Decl.) ¶ 3.

89., 90., 91., 96., and 100–102. 104 State Defendants object to the use of the words "directed," "directions," "instructed," or "instructions" to the extent that it implies the Secretary of State's advisories or guidance have the force and effect of law or are in any way authoritative or binding.

103. The election advisory issued by the Secretary of State states, "Because the early voting clerk is able to validate one of the numbers to the voter's voter registration record (and thus verify the identity of the voter), the clerk must accept the ABBM and send a ballot to the voter." ECF 609-3 at Ex. 2 (Election Advisory 2022-08) at 3.

104. State Defendants object to the use of the word "directed" to the extent that it implies the Secretary of State's advisories or guidance have the force and effect of law or are in any way authoritative or binding.

105. State Defendants note that, in the vote by mail context, voters with a DPS number or SSN4 must recite the DPS number or SSN4 that is in their voter registration file on TEAM to be qualified to vote by mail. Tex. Elec. Code §§ 84.002(a)(1-a), 86.002(g), 87.041(b)(8).

106. State Defendants object to the United States' assertion as misleading. Texas's voter registration form states that it may be used to "Change of Address, Name, or *Other Information,"* which includes information missing from voter registration records.

107. While the Plaintiff's assertions are accurate as it pertains to the registration page, a visitor to that page must select "Continue" to Log in. The resulting page requires entering a DPS ID and an SSN4 in the provided form. At the bottom of that page, just above the "Login" button, it explicitly states," I understand that my personal information, including my Texas Driver's License and the last four digits of my Social Security number are being used to update my current voter registration." Since the information is required and the page explicitly states that information will be used to update their voter registration, a voter is made aware that the information will be updated.

109. State Defendants object to the phrase "applying guidance provided by the SOS" to the extent

that it implies that Secretary of State's advisories or guidance have the force and effect of law or are in any way binding.

110. State Defendants object to the use of the word "direction" to the extent that it implies that the Secretary of State's advisories or guidance have the force and effect of law or are in any way authoritative or binding.

111. State Defendants deny that assistance, guidance, or advice issued by the Secretary of State has the force and effect of law or is in any way binding on the counties. By asserting "[c]ounty officials are not free to ignore SOS instructions," the United States mischaracterizes both Texas law and the witness's testimony. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. A (Christina Adkins July 20, 2022 Dep.) at 80:10–82:11; *see also* Resp. Appx. HH (Christina Adkins Decl.) ¶ 3.

117. State Defendants object to the use of the word "directs" to the extent that it implies the Secretary of State's advisories or guidance have the force and effect of law or are in any way authoritative or binding.

118. State Defendants object to this allegation as misleading and a mischaracterization of the witness's testimony. The witness actually testified that the Secretary of State does not suggest, one way or the other, "how [early voting clerks] should look up the voter registration status of an applicant." Resp. Appx. N (Keith Ingram 30(b)(1) March 28, 2023 Dep.) at 67:13–68:3. After all, early voting clerks "could look it up by DL number if they wanted." Resp. Appx. N (Keith Ingram 30(b)(1) March 28, 2023 Dep.) at 68:15–69:12. Thus, we refer this Court to the relevant portions of the witness's testimony for full and accurate context of his statements.

119. State Defendants object to the use of the "ordinarily" to the extent that it implies the predominant practice of election officials. The United States uses the testimony of officials from 1.2% of Texas counties to generalize about the practices of all county officials. Denton County's election

administrator, Frank Phillips, testified that both Texas ID numbers and Social Security numbers were used to identify qualified voters in his jurisdiction. Resp. Appx. R (Frank Phillips March 31, 2023 Dep.) at 102:5–9.

120. State Defendants object to the use of the "typically" to the extent that it implies the predominant practice of election officials across Texas. The United States' citations only go to the practices of the election officials referenced, but there are 254 counties throughout the State. The United States also misidentifies Dallas County Election Administrator Michael Scarpello as "Phillips."

121. The United States misidentifies Dallas County Election Administrator Michael Scarpello as "Phillips."

122. The United States mischaracterizes the witness's testimony in Resp. Appx. H (Jacquelyn Callanen Feb. 28, 2023 Dep.) at 142:17-21. Neither the question, nor the answer, references Bexar County's ability or desire to invest "sustained resources" in future elections. State Defendants admit that some county officials took substantial measures to implement SB1. State Defendants deny that any financial outlays by the county officials were substantially caused by the results of the March 2022 primary. The United States has failed to establish that the cost of implementing SB1 will continue indefinitely into the future.

124. State Defendants deny that there is any "conflict" between the Secretary of State's official forms and any guidance or advisories. The Secretary of State testified that its guidance or recommendations are not in any way "inconsistent with the text that is the on the form." Resp. Appx. A (Christina Adkins July 20, 2022 Dep.) at 70:8-20.

126 State Defendants object to this assertion as misleading and a mischaracterization of the witnesses' complete testimony. County officials who testified in this matter do not understand that it would be possible to eliminate mail-ballot rejections entirely for any type of defect. *See* Resp. Appx. I (Harris Cnty. Jennifer Colvin March 21, 2023 Dep.) at 100:2–5 ("Q. Okay. To your knowledge, has Harris

County ever had a rejection rate for ballots by mail that was zero? A. No."); Resp. Appx. W (Dallas Cty. Michael Scarpello 30(b)(6) April 13, 2023 Dep.) at 131:22–25, 133:9–18 ("Q. Are you aware of any election that had a zero percent rejection rate? A. No."); Resp. Appx. FF (El Paso Cty. Lisa Wise 30(b)(6) April 18, 2023 Dep.) at 175:1–10.

146. State Defendants object to this assertion as misleading and a mischaracterization of the witnesses' testimony. Based on the cited passages, counsel for the United States asked Director of Election Administration and Voter Registration Kristi Hart at deposition about the timing of duplicate batch process. He did not ask about the rate at which TEAM contains errors in individual voters' records. State Defendants refer this Court to the relevant portions of the witnesses' testimony for full and accurate context. Resp. Appx. M (SOS Keith Ingram 30(b)(6) April 28, 2022 Dep.) at 33:3–34:11; Resp. Appx. JJ (Kristi Hart June 30, 2022 Dep.) at 40:5–41:15.

163. While Dr. Hersch identified five FPCA voters whose mail ballots were rejected on SB 1 grounds during the November 2022 general election, he did not specify whether these voters were ultimately able to cure the defect or if they received a final rejection. Additionally, Dr. Hersh does not identify in his report whether the defect was due to voter error. ECF 611-1 at Ex. 3 (Hersh Second Suppl. Rep.) ¶ 12.b.

179. State Defendants object to this assertion as misleading, speculative, and a mischaracterization of the witness's testimony. The witness refused to speculate about future elections or whether rejection rates would decline after the November 2022 General Election. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context. Appx. II (Christina Adkins April 11, 2023 Dep.) at 66:11–67:3.

183. State Defendants object to this assertion as misleading and as a mischaracterization of the witness's testimony. The witness could have voted in person had he known of the defect in his mail ballot. *See* Resp. Appx. E (Roberto Benavides March 30, 2023 Dep.) at 42:22-43:7. State Defendants thus refer

this Court to the relevant portions of the witness's testimony for full and accurate context.

184. State Defendants object to these assertions as misleading and as mischaracterizations of the witness's testimony. The witness took no proactive steps to determine what was faulty with his mail ballot, and made no calls to local election officials. Instead, the local election officials proactively called him to inform him of the issues they detected. State Defendants thus refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. E (Roberto Benavides March 30, 2023 Dep.) at 26:21-27:24.

185. State Defendants object to these assertions as misleading and as mischaracterizations of the witness's testimony. It would not have been "extremely burdensome" for the witness to vote in person if he knew of the mail ballot and carrier envelope defects because the witness's wife, unfortunately, "passed away several weeks before the election day," meaning that his wife's care did not prevent his voting on Election Day. *See* Resp. Appx. E (Roberto Benavides March 30, 2023 Dep.) at 42:22-43:7. State Defendants thus refer this Court to the relevant portions of the witness's testimony for full and accurate context.

186. State Defendants object to this assertion as misleading and a mischaracterization of the witness's testimony. El Paso County Election Administrator Lisa Wise did not testify that voters threw out ballots due to frustration or unwillingness to cure, but because they mistakenly thought that rejected ballots were duplicate ballots sent mistakenly by the County. Resp. Appx. FF (El Paso Cty. Lisa Wise 30(b)(6) April 18, 2023 Dep.) at 120:22 –121:14. In addition, the United States misidentifies Dallas County Election Administrator Michael Scarpello as "Phillips." State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. FF (El Paso Cnty. Lisa Wise 30(b)(6) April 18, 2023 Dep.) at 120:9–121:14, 89:12–91:25. Resp. Appx. KK (Bexar Cnty. Jacquelyn Callanen 30(b)(6) April 20, 2022 Dep.) at 216:12–219:5, 278:5–279:24. ECF 609-94 at Ex. 94 (Travis Cnty. Charlton Johnson 30(b)(6) March 29, 2023 Dep.) at 40:24–41:4.

187. State Defendants object to this assertion as misleading and as a mischaracterization of the witness's testimony. Even if the Secretary of State identified instances of "potential" voter fraud and referred those cases to the law enforcement, it would not be able to disclose those cases publicly because of the investigative privilege. State Defendants thus refer this Court to the relevant portions of the witness's testimony for full and accurate context. Resp. Appx. O (SOS Keith Ingram 30(b)(6) March 28, 2023 Dep.) at 65:20–66:2.

192. State Defendants object to this assertion as misleading and a mischaracterization of the witness's testimony. The witness testified that the Secretary of State would "continue to rely on complaints that have credible evidence about election fraud," and not exclusively on tools or methods used before the enactment of SB 1. Resp. Appx. Z (Jonathan White April 27, 2022 Dep.) at 92:18-21. State Defendants thus refer this Court to the relevant portions of the witness's testimony for full and accurate context.

193. States Defendants deny that this assertion contains the only instance of voter fraud in the State of Texas. Other examples of voting by impersonation and voter fraud have occurred in in Texas. *See, e.g.*, Resp. Appx. BB (Jonathan White Decl.) at ¶ 18; Resp. Appx. M (Keith Ingram April 28, 2022 Dep.) at 20:12–21:9, 153:4–154:7, 177:14–180:6, 185:10–188:22; Resp. Appx. R (Frank Phillips March 31, 2023 Dep.) at 99:16–101:3.

194. State Defendants object to these assertions as misleading and a mischaracterization of the witness's testimony. The witness testimony did not suggest that the identification number requirement was less useful in preventing mail voting crimes than other methods of identification. State Defendants refer this Court to the relevant portions of the witness's testimony for full and accurate context:

A. Most of it happens in the presence of the voter. And I think the reason for that is because eventually they have to go back to the voter for the ballot, and so it's helpful to have that prior interaction with the voter. It's helpful to get -- it's easy to get an actual signature from the voter for an application, because I'm just helping you get a mail ballot.

Q. Right.

A. Now, when you go to the mail ballot, that's where the skill comes in.

 Resp. Appx. Z (Jonathan White April 27, 2022 Dep.) at 88:7-17.

195. & 196. State Defendants deny that the individuals referenced in this assertion were fully qualified and eligible to vote by mail. State Defendants note that, in the vote by mail context, voters with a DPS number or SSN4 must recite the DPS number or SSN4 that is in their voter registration file on TEAM to be qualified to vote by mail. Tex. Elec. Code §§ 84.002(a)(1-a), 86.002(g), 87.041(b)(8).

197. & 198. State Defendants object to this assertion as speculative and misleading. State Defendants further deny that the individuals referenced in this assertion were fully qualified and eligible to vote by mail. State Defendants note that, in the vote by mail context, voters with a DPS number or SSN4 must recite the DPS number or SSN4 that is in their voter registration file on TEAM to be qualified to vote by mail. Tex. Elec. Code §§ 84.002(a)(1-a), 86.002(g), 87.041(b)(8).

200. & 202. The Texas Legislature amended Sections 87.0271(b) and 87.0411 in the 88th Regular Session. In accordance with these amendments, if the SVC or EVBB determines "that it would not be possible for the voter to receive the notice of defect within a reasonable time to correct the defect," the SVC or EVBB may notify the voter of the defect by telephone or e-mail and inform the voter that the voter may request to have the voter's ABBM canceled, submit a corrective action form developed by the secretary of state, come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect, or cure the defect through the online ballot tracker. See Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws. See Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws (STATE182739–STATE182740.).

203. The Texas Legislature amended Sections 87.0271(b) and 87.0411 in the 88th Regular Session. In accordance with these amendments, "not later than the second day" after the SVC and EVBB

x`

discovers that DPS number or SSN4 is missing or does not identify the same voter identified on the voter's application for voter registration, the SVC and EVBB "shall send the voter a notice of the defect and a corrective action form developed by the secretary of state . . . by mail or by common or contract carrier." The SVC and EVBB shall include with the notice a brief explanation of each defect in the noncomplying ballot and inform the voter that the voter may cancel the voter's application to vote by mail in the manner described by Section 84.032; or correct the defect in the voter's ballot by one of the permitted options. *See* Tex. S.B. 1599, 88th Legis., R.S., § 8, sec. 87.0271, 2023 Tex. Gen. Laws; Tex. S.B. 1599, 88th Legis., R.S., § 10, sec. 87.0411, 2023 Tex. Gen. Laws (STATE182734–STATE182742).

209. State Defendants object to this assertion as misleading and a mischaracterization of the witness's testimony. State Defendants thus refers this Court to the relevant portions of the witness's testimony for full and accurate context: "Well, it's choice of voter as to whether or not to pursue voting by mail or decide to vote in person. From my perspective if the voter successfully votes that's a win." Resp. Appx. O (SOS Keith Ingram 30(b)(6) March 28, 2023 Dep.) at 18:4-7. State Defendants furthermore object as misleading and argumentative to the assertion that a person being able to vote by personal appearance, despite submitting an application for a ballot to be voted by mail, is not a form of "curing" the ballot. Pursuant to Tx. Elec. Code § 84.032(b)(3)(A), a person can cancel their mail-ballot not later than the third day before election, for any reason, and vote by personal appearance. Additional, pursuant to Tex. Elec. Code § 84.032(c)(2)(C), a person who received notice of a defect under Section 87.0271(b) or (c) or 87.0411(b) or (c) is allowed to vote by personal appearance after the close of early voting. The United States' attempts to diminutize this additional flexibility in voting methods by saying it is not "curing" mischaracterizes and downplays the voter access provided by § 84.032.

1