**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 5:21-cv-844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO**
**OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# APPENDIX II

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO,        )
et al.,                            )
                                   )
          Plaintiffs,              )
                                   )
V.                                 ) Case No. 5:21-cv-844 (XR)
                                   ) (Consolidated Cases)
STATE OF TEXAS, et al.,            )
                                   )
          Defendants.              )

------------------------------------------------------------

ORAL DEPOSITION OF:

CHRISTINA ADKINS

April 11, 2023

--------------------------------------------------

Oral deposition of CHRISTINA ADKINS, produced as a

witness at the instance of the plaintiffs, and duly sworn,

was taken in the above-styled and numbered cause on the

11th day of April, 2023, before Patrick Stephens,

Certified Court Reporter, at 209 W. 14th Street,

Austin, Texas 78701.



Christina Adkins

April 11, 2023
Pages 14 to 17

Page 14

1    So you testified that your office has heard a lot of
2  complaints from voters who were unable to use the ballot tracker
3  because of the residence address field, which is required under
4  the statute, and you used your own address as an example where
5  west of West 51st Street was not coded correctly to validate
6  your address when you were trying to use the ballot tracker.  Do
7  you remember that?
8    A    I do.
9    Q    Great.  Did your office suggest that the legislature
10 enact legislation that would replace residence address with date
11 of birth for the purposes of using the ballot tracker?
12   A    No.
13        MS. HUNKER:  Objection, form.
14 BY MS. YUN (resuming):
15   Q    How did this bill come about in terms of interactions
16 between your office and any legislators who were proposing this?
17        MS. HUNKER:  Objection, form, and I'm also going
18 to object on legislative privilege.  We object today to any
19 questioning that would elicit testimony that protected -- that
20 is protected by legislative privilege.  Both the State
21 defendants and individual legislators have been diligent in
22 asserting this privilege to the fullest extent of the law.  The
23 Office of the Attorney General has represented and will continue
24 to represent many legislators for the purpose of protecting
25 their privilege.

Page 15

1        These exact issues have been and will continue to
2  be the subject of numerous appeals and emergency proceedings.
3  Nobody can question where the State stands on these issues.
4  Moreover, until the Fifth Circuit rules on these issues, it
5  would be wholly inappropriate to conduct any questioning
6  regarding any privileged information.
7        We vehemently disagree with the district court in
8  this matter and we have -- that we have improperly raised any
9  legislative-privilege objections in this litigation.  I have
10 been in touch with numerous legislators and their staff and I
11 also represent them at today's deposition for purposes of
12 protecting their legislative privilege.  These legislators have
13 instructed me to protect their privileges in this litigation to
14 the fullest extent permitted.  It is my hope and expectation
15 that privileged testimony will not be elicited from this witness
16 today.
17        MS. HUNKER:  Counsel, are you instructing
18 Ms. Adkins to not answer?
19        MS. HUNKER:  Not at this time.
20 BY MS. YUN (resuming):
21   Q    Could you answer the question?
22   A    Could you repeat the question again?
23   Q    Sure.
24   A    Thank you.
25   Q    How -- so you just told me that you did not suggest

Page 16

1  that they propose this legislation.  To the -- to the best of
2  your knowledge, how did this bill come about?
3        MS. HUNKER:  Similar objection -- same objection,
4  also objection, form; lack of personal knowledge.
5  BY THE WITNESS (resuming):
6    A    Representative Bucy's office had a -- a profound
7  interest in this aspect of legislation from last session because
8  the ballot-by-mail tracker was something that he was heavily
9  involved in and was advocating for.  His office reached out to
10 my office to see what -- what was happening with respect to the
11 tracker, how the implementation was, and they specifically asked
12 if we had any issues that had been reported to us or any
13 problems that they needed to be aware of, you know, in dealing
14 with voter concerns, and we relayed to them that we were getting
15 a lot of calls about difficulty getting into the tracker because
16 of the residence address.  And so they, you know, initiated a
17 conversation with us about that -- several conversations about
18 that particular component to it and did ask us about, you know,
19 What are other alternatives that could be used other than
20 residence address.
21   Q    And was your office's suggestion date of birth instead
22 of residence address?
23        MS. HUNKER:  Objection, form; also objection,
24 legislative privilege.  I represent Representative Bucy for the
25 purposes of protecting his privilege today.  On behalf of

Page 17

1  Representative Bucy, I object to the question on the basis of
2  legislative privilege.  It is wholly inappropriate for this
3  question to be asked at all given the pending appeals to which
4  we are all a party.  We vehemently disagree with the district
5  court's decision to permit this kind of questioning while we
6  await a decision from the Fifth Circuit.
7        Nonetheless, the district court has wrongfully
8  made clear that attorneys who raise these objections faced the
9  possibility of contempt.  We have a duty to our clients to
10 protect their privileged information.  Because of the district
11 court's orders and threats, we cannot instruct the witness not
12 to answer this question; however, the State defendants and
13 Representative Bucy reserve all rights to challenge this
14 improper questioning, including sealing this portion of the
15 transcript, preventing its further disclosure or use at trial,
16 appealing and seeking any emergency relief from the Fifth
17 Circuit and any other relief allowed by law.  We further
18 designate this testimony as confidential under the protective
19 order in this matter.
20 BY MS. YUN (resuming):
21   Q    Please answer.
22   A    When they asked us about if there are alternatives, we
23 -- we indicated that there were alternative fields we could use,
24 looking at some of the alternatives that are used for other
25 components on our websites, like the Am I Registered box, and



Christina Adkins

April 11, 2023
Pages 66 to 69

Page 66

1          MS. HUNKER:  Objection to form.
2   BY THE WITNESS (resuming):
3     A   Again, I don't know -- I don't know what results in
4   that reduction.  All I know is that we're going to make sure
5   that we're doing our part to make -- to train on what the law is
6   and what those requirements are and what opportunities are
7   available to make corrections or to remedy those rejection
8   issues.  I don't want an election official or ballot board
9   member to be in a position of not knowing what those options
10  are, but that's the most that I can do.
11    Q   Okay.  Do you believe that there will be reductions in
12  general in -- okay.  Let me try it again.  Do you believe that
13  there will be any further reduction in mail-ballot rejections in
14  future elections?
15    A   I -- that, I don't know.  I -- I -- I don't recall the
16  actual rejection rate in November, but I remember that it was
17  pretty consistent with what we had seen in previous years prior
18  to the corrective-action process being in place -- or the ID
19  requirements being in place.  So I remember it was relatively
20  consistent with what we had in the past.  I can't really
21  speculate on future elections because I don't know what the laws
22  are going to be going forward.  I -- I don't know what changes
23  there might be that could -- that maybe are unrelated to this
24  issue but could impact rejection rates.
25    Q   Okay.  Absent any further legal changes, do you have

Page 67

1   any predictions as to what's going to happen to the rejection
2   rate?
3     A   I really don't.  I don't know.  I'm sorry.
4     Q   It's okay.  So moving on to voter education as opposed
5   to training of county officials, does your office intend to
6   conduct more -- any more voter education concerning SB1's
7   mail-ballot requirements in the future?
8     A   So I don't know the answer to that.  I'm not the
9   person that makes decisions on our voter-education campaign.
10  That's our communications director who just left and we have a
11  new one starting --
12    Q   Okay.
13    A   -- so I imagine I'll be working with that new
14  communications director to map out what we can and can't do and
15  what we have a budget for.
16    Q   I see.  And who's the new communications director?
17    A   Her name is Alicia Pierce, and she has not started
18  yet --
19    Q   Okay.
20    A   -- so don't scare her away.
21    Q   I just read a lot of E-mails from Mr. Taylor, so --
22    A   Sure.
23    Q   -- you know, I've never met him, but I just...
24    A   You feel like you know him.
25    Q   Exactly.

Page 68

1     A   Yes.
2     Q   So you said it would depend on the budget and it would
3   depend on sort of your discussions with her?
4     A   Uh-huh.  And -- and I have to throw this in:  And I
5   imagine any other subsequent law changes --
6     Q   Yes.
7     A   -- that are -- that could impact the campaign.
8     Q   Right.  So you also don't know whether it will be more
9   or less compared to what happened leading up to the November
10  election.
11    A   Correct.
12    Q   So you testified that you don't really know exactly
13  what would drive rejection rates down.  I'm just going to apply
14  that same principle to voter education and ask you the same
15  question just for the sake of completeness.  So do you expect
16  that further voter education would drive down mail-ballot
17  rejection rates in the future?
18    A   Again, I -- you know, I don't know the answer to that.
19  I'm not -- that's -- that's not my area of expertise, and I just
20  don't know what kind of data would -- we can look at that would
21  give us a sense.  I -- I think there's a lot of factors that --
22  that impact rejection rates.
23    Q   Okay.  What do you believe led to the reduction in the
24  rejection rates between the March primary and the November
25  general election in terms of mail ballots?

Page 69

1     A   I mean, again, I don't really know that I can point to
2   any one thing.  I think there's a number of factors that
3   contribute to that.  Anytime there's a change in the law, it
4   takes a few elections for voters to get used to that change.  I
5   think our county election officials were very aggressive after
6   the primary -- or even during the primary in educating people on
7   those changes.
8         I also think that our county election officials did
9   something pretty brilliant with respect to the ID number
10  requirements.  You know, one -- one of the things that we talked
11  about with our counties is that if somebody submitted an ABBM or
12  a carrier envelope that was missing an ID number or they
13  realized that the voter didn't have both numbers in the
14  statewide voter registration system, in TEAM, they didn't just
15  focus on correcting it for that election.  They were --
16  everybody was pretty aggressive about getting those folks to
17  submit a new voter registration application or go online to get
18  that update, and so we have more complete records, because that
19  is a viable cure option is updating your voter registration
20  record with that -- with that number.
21        And so rather than just doing a cure for the one election,
22  I think they were pretty good about looking at the bigger
23  picture.  And so if -- you know, they would -- they would help
24  facilitate that change, get that information to voters, which is
25  one of the things that we educated on, and I think the counties



Christina Adkins

April 11, 2023
Pages 70 to 73

Page 70

1 really, really harnessed that and -- and were aggressive in
2 realizing that that could fix problems later.
3    So I think, you know, a number of factors like that.  You
4 know, lots of training, you know, education of voters,
5 addressing issues -- you know, identifying and addressing those
6 issues broadly so that they weren't problems for voters in
7 subsequent elections, and I think just better -- well, I think
8 also there was quite a bit of misinformation going up to the
9 primary -- leading up to the primary, and I think we talked
10 about that last time with respect to what those ID requirements
11 were, and I think in November, I didn't see those misstatements
12 quite as much.  So the media was better educated on what the law
13 said.
14    Q    Right.  I would like to talk -- move on to what is
15 called EAVS, the Election Administration and Voting Survey.  Do
16 you know what that is?
17    A    I do know what it is.
18    Q    What is it?
19    A    It's a survey that's put out by the EAC every so often
20 to gather data from all of the states and the local
21 jurisdictions with issues related to election administration.
22    Q    And the EAC stands for the Election Assistance
23 Commission; is that right?
24    A    That's correct.
25        MS. YUN:  For the court reporter.

Page 71

1 BY MS. YUN (resuming):
2    Q    In Texas, who is responsible for collecting EAVS data
3 and reporting it into the EAC?
4    A    So, in Texas, the secretary of state's office is the
5 clearinghouse for the data.  We send out the survey, we gather
6 responses and it passes through us to the EAC.
7    Q    And so is it the secretary of state who is Texas'
8 chief election officer for the purposes of the EAVS data?
9    A    Well, the secretary of the state is the chief election
10 officer for the whole state, and then we have an elections
11 division by statute that -- that supports the secretary.  And so
12 it's our division but within the secretary of state's office
13 that sends out the survey.
14    Q    Okay.  So what else other than sending out the survey
15 does your office do with regards to the EAVS survey?
16    A    I don't know.  You would have to talk to Kristi Hart.
17 It's -- she's the one that oversees the distribution of the
18 survey and the collection of data.
19    Q    Okay.
20    A    It -- I will add it's all self-reported data from the
21 counties, and so I -- I don't know how -- that there's much that
22 we do with the data other than get it back to the EAC.  We do
23 hound the counties quite a bit to get them to complete the
24 survey.
25    Q    Okay.

Page 72

1    A    So we do that.  I would say we do that.
2    Q    Okay.  So you --
3    A    That's the only thing I can speak to.
4    Q    And I'm going to mark this next exhibit, 13.  So as
5 far as you know -- you're aware, so your office also sets
6 deadlines for county responses.
7    A    I don't know that we set deadlines or if there's
8 deadlines set by the EAC.
9    Q    Okay.  So you communicate those deadlines to the
10 counties and remind them.
11    A    That's correct.
12    Q    Okay.  And based on this E-mail that Mr. Ingram sent
13 out on this Exhibit 13, your office also serves as a resource
14 for the counties in responding to the survey.
15    A    I don't know that I would say we're a resource.  I
16 mean, we're a resource generally to counties on pretty much
17 everything, but I think on this -- I mean, we're more
18 facilitate the information getting from the EAC to them, and
19 what I recall is actually indicated in this video.  There's
20 actually some instructional videos that the EAC puts out to tell
21 counties what type of data they're looking for, so we -- I don't
22 think we answer a whole lot of data-specific questions, but we
23 just facilitate the process of them reporting their information.
24    Q    Okay.  So would it be fair that your office is
25 responsible for coordinating the effort across all counties to

Page 73

1 send it -- send the data over to the EAC?
2    A    Yes.  I think we're -- we're the contact for the state
3 to pass through that data to the EAC, that's correct.
4    Q    Okay.
5    A    Much to the counties' dismay.
6    Q    Why do you say that?
7    A    Well, it's just a lot of work to gather the data.
8 It's a common role for us to constantly hound the counties,
9 so...
10    Q    Does your office use the EAVS data?  Once it's been
11 delivered to the EAC and then they issue a report; right?
12    A    That's correct.
13    Q    And do you ever use the data from that report?
14    A    I can't think of specific instances where we used it
15 for anything specific.  You know, we do typically take a look at
16 it.  We don't necessarily review it in great detail.  There are
17 some drawbacks to the EAVS survey.  One of the things is that
18 they don't standardize terminology across states.  You know,
19 states refer to things in different ways, and that's always been
20 a problem with getting accurate reporting in certain categories,
21 and then again, because we don't validate that data or proof it
22 -- you know, we just -- it just passes through to us -- I have
23 -- we have seen things in the past where we think counties have
24 misreported data.  You know, it's all self-reported data that's
25 not validated, and so it's -- you know, there's -- there's an



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,          §
      *Plaintiffs,*          §
                §
*v.*          §          Case No. 5:21-cv-844-XR
                §
GREGORY W. ABBOTT, et al.,          §
      *Defendants.*          §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# APPENDIX JJ

Confidential Transcript of the Testimony of

# Kristi Hart

**Date:**

June 30, 2022

**Case:**

LA UNION DEL PUEBLO ENTERO vs GREGORY W. ABBOTT

Transcript of the Testimony of

Kristi Hart


Date:

June 30, 2022


Case:

LA UNION DEL PUEBLO ENTERO V. GREGORY W . ABBOTT

Kristi Hart  CONFIDENTIAL  June 30, 2022
Pages 2 to 5

## Page 2

Kristi Hart  CONFIDENTIAL  June 30, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO,
et al.,

    Plaintiffs,

V.  | Case No. 5:21-cv-844-XR

GREGORY W. ABBOTT, et al.,

    Defendants.
OCA-GREATER HOUSTON, et al.,

    Plaintiffs,

V.  | Case No. 1:21-cv-780-XR

JOHN SCOTT, et al.,

    Defendants.
HOUSTON JUSTICE, et al.,

    Plaintiffs,

V.  | Case No. 5:21-cv-848-XR

GREGORY WAYNE ABBOTT, et al.,

    Defendants.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900 San Antonio, Texas 78232

Kristi Hart  CONFIDENTIAL  June 30, 2022

LULAC TEXAS, et al.,

    Plaintiffs,

V.  | Case No. 1:21-cv-0786-XR

JOHN SCOTT, et al.,

    Defendants.
MI FAMILIA VOTA, et al.,

    Plaintiffs,

V.  | Case No. 5:21-cv-0920-XR

GREG ABBOTT, et al.,

    Defendants.
UNITED STATES OF AMERICA,

    Plaintiffs,

V.  | Case No. 5:21-cv-1085-XR

THE STATE OF TEXAS, ET AL.,

    Defendants.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400  210-697-3408

## Page 3

Kristi Hart  CONFIDENTIAL  June 30, 2022

ORAL DEPOSITION OF KRISTI HART

June 30, 2022

Oral deposition of KRISTI HART, produced as a witness at

the instance of the plaintiffs, and duly sworn, was taken

in the above-styled and numbered cause on the 30th day of

June, 2022, before Patrick Stephens, Certified

Court Reporter, at the William P. Clements Building,

10th Floor Conference Room, 300 W. 15th Street,

Austin, Texas 78701.

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232

210-697-3400  210-697-3408

## Page 4

Kristi Hart  CONFIDENTIAL  June 30, 2022

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

    JENNIFER K. YUN, ESQ.

    RICHARD A. DELLHEIM, ESQ.

    MICHAEL E. STEWART, ESQ.

    U.S. Department of Justice, Civil Rights Division

    950 Pennsylvania Avenue NW

    Washington, DC 20530

    Telephone: (202) 305-5533

    Jennifer.yun@usdoj.gov

    Richard.dellheim@usdoj.gov

    Michael.stewart3@usdoj.gov

ON BEHALF OF THE PLAINTIFFS, MI FAMILIA VOTA:

    MARK L. BIETER, ESQ.

    Stoel Rives LLP

    101 S. Capitol Boulevard

    Suite 1900

    Boise, Idaho 83702

    Telephone: (208) 387-4217

    Mark.bieter@stoel.com

ON BEHALF OF THE DEFENDANTS:

    KATHLEEN HUNKER, ESQ.

    J. AARON BARNES, ESQ.

    Office of the Attorney General

    P.O. Box 12548 (MC-009)

    Austin, Texas 78711

    Telephone: (512) 936-2275

    Kathleen.hunker@oag.texas.gov

    Aaron.barnes@oag.texas.gov

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400  210-697-3408

## Page 5

A P P E A R A N C E S (Cont.)

ALSO PRESENT:

    ADAM BITTER, ESQ., General Counsel

    ZAC RHINES, ESQ., Assistant General Counsel

    Office of the Secretary of State

    Capitol Building, Rm 1E.8

    P.O. Box 12697

    Austin, Texas 78711

    Telephone:  (512) 475-2813

    abitter@sos.texas.gov

    zrhines@sos.texas.gov

ALSO PRESENT VIA ZOOM:

    Georgina Yeomans, Legal Defense Fund

    Leigh Tognetti, ADA Hidalgo County

    Chuck Roberts, Republican Committees

    Victoria Giese, Butler Snow Law Firm

    Wendy Olson, Stoel Rives LLP

    Barbara Nicholas, Scarpello Law Firm

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232

Kristi Hart                    CONFIDENTIAL                    June 30, 2022
                                                              Pages 38 to 41

Page 38

1    A   Again, if we receive a record and it's provided to
2  the county, then the county is going to look at that record.
3  They will then determine if that's already a person that's
4  registered or if it's a new registration by comparing that
5  information to their county voter-registration role.
6    Q   Okay. So it's the county who's making that
7  determination.
8    A   Yes.
9    Q   And the TEAM system does not automatically tell you,
10 like, Oh, hey, this might be a duplicate, or something like
11 that to the county official who's entering that information.
12   A   The duplicate process doesn't come into play with
13 that.
14   Q   Right. So on the flipside, when someone wants to
15 update their existing voter registration, how does -- how would
16 a user of the TEAM system determine whether the individual
17 already has a TEAM record?
18   A   Again, when it comes in, it's matched and it's
19 provided to the county. And so if there's one that comes in
20 and it does appear that it is similar, then they would review
21 those two records to make the determination if they are in fact
22 similar, the same or different.
23   Q   And when you say they are matched, what do you mean
24 by that sort of -- what do you mean by that?
25   A   Again, when the record comes in, we still have to

Page 39

1  match it with what's there based on the criteria set for that
2  particular process, and then if there's nothing there, it goes
3  as a new registrant.
4    Q   So we talked about the duplicate process a little bit
5  earlier, and you said that that was an annual process; right?
6    A   I'm sorry. I didn't hear.
7    Q   We talked about the duplicate batch process earlier,
8  and am I remembering correctly that you said it was an annual
9  process?
10   A   Yes.
11   Q   And so each year you run the process, and if there
12 are any possible duplicates, you send those on to the counties
13 to process.
14   A   Yes.
15   Q   And what are some scenarios -- how do duplicates get
16 created?
17       MS. HUNKER: Objection, form.
18 BY THE WITNESS (resuming):
19   A   I'm sorry. I couldn't hear you.
20   Q   Oh. How do -- how -- why are there some duplicates
21 in the TEAM system? Like, what are some ways in which those
22 get created and then they get flagged and then processed?
23       MS. HUNKER: Objection, form; ambiguous; calls
24 for speculation.
25 BY THE WITNESS (resuming):

Page 40

1    A   Yeah. I don't know that I can give specific examples
2  of that.
3    Q   And do you know when the duplicate batch process, the
4  annual process, started happening with the TEAM system?
5    A   It was prior to my time. I do not know.
6    Q   And is the annual nature of it, is that required by a
7  regulation or a state law provision? Do you know?
8    A   I do not recall. I don't know that the annual is
9  part of a requirement, but we are required, yes, to conduct a
10 comparative analysis of the system.
11   Q   Are there any circumstances that might create
12 multiple TEAM records that pertain to one Texas voter?
13       MS. HUNKER: Objection, form; vague; calls for
14 speculation, outside of personal knowledge.
15 BY THE WITNESS (resuming):
16   A   Can you repeat that again?
17   Q   Yeah. Are there any circumstances that you're aware
18 of that might create multiple TEAM records that pertain to one
19 single individual Texas voter?
20       MS. HUNKER: Same objection.
21 BY THE WITNESS (resuming):
22   A   I can't think of any particularly, if you're asking
23 for a specific example of that. I mean, I think -- I think you
24 do have to look at data entry as a possibility or different
25 information actually provided. But, again, that's why we -- we

Page 41

1  do our checks on the system for that.
2    Q   When you say data entry, you mean when someone is
3  manually entering something.
4    A   Yes.
5    Q   How common, if you know, are errors in the TEAM
6  system that are due to inaccurate data entry?
7        MS. HUNKER: Objection, form; outside of
8  personal knowledge, calls for speculation.
9  BY THE WITNESS (resuming):
10   A   I don't know. It's not information I could give you
11 off the top of my head.
12   Q   Do you know if data entry errors occur with greater
13 frequency in some places than others?
14       MS. HUNKER: Objection, form; calls for
15 speculation, outside of personal knowledge.
16 BY THE WITNESS (resuming):
17   A   And I don't know what you mean by, In some places
18 greater than others.
19   Q   Say, some counties than others.
20       MS. HUNKER: Objection, form --
21 BY THE WITNESS (resuming):
22   A   Oh. No.
23       MS. HUNKER:  -- calls for speculation --
24 BY THE WITNESS (resuming):
25   A   No --

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,          §
    *Plaintiffs,*          §
              §
*v.*          §          Case No. 5:21-cv-844-XR
              §
GREGORY W. ABBOTT, et al.,          §
    *Defendants.*          §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


# APPENDIX KK

INDEX

| A | |
|---|---|
| B | |
| C | |
| D | |
| E | |
| F | |
| G | |
| H | |
| I | |
| J | |
| K | |
| L | |
| M | |
| N | |
| O | |
| P | |
| Q | |
| R | |
| S | |
| T | |
| U | |
| V | |
| W | |
| X | |
| Y | |
| Z | |
| AA | |
| BB | |
| CC | |
| DD | |
| EE | |
| FF | |
| GG | |
| HH | |
| II | |
| JJ | |
| | |

Transcript of the Testimony of

**Jacquelyn Callanen**

**Date:**

April 20, 2022

**Case:**

LA UNION DEL PUEBLO ENTERO vs GREGORY W. ABBOTT

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO ENTERO, )
     ET AL                      )
 4                              )
     vs.                        )  CASE NO. 5:21-CV-844-XR
 5                              )
     GREGORY W. ABBOTT, ET AL   )
 6   _____
     OCA-GREATER HOUSTON, ET AL )
 7                              )
     vs.                        )  CASE NO. 1:23-CV-780-XR
 8                              )
     JOHN SCOTT, ET AL          )
 9   _____
     HOUSTON JUSTICE, ET AL     )
10                              )
     vs.                        )  CASE NO. 5:21-CV-848-XR
11                              )
     GREGORY WAYNE ABBOTT, ET AL )
12   _____
     LULAC TEXAS, ET AL   )
13                              )
     vs.                        )  CASE NO. 1:21-CV-0786-XR
14                              )
     JOHN SCOTT, ET AL          )
15   _____
     MIFAMILIA VOTA, ET AL      )
16                              )
     vs.                        )  CASE NO. 5:21-CV-0920-XR
17                              )
     GREG ABBOTT, ET AL         )
18   _____
     UNITED STATES OF AMERICA  )
19                              )
     vs.                        )  CASE NO. 5:21-CV-1085-XR
20                              )
     THE STATE OF TEXAS, ET AL  )
21   _____

22              ORAL VIDEOTAPED DEPOSITION

23                  JACQUELYN CALLANEN

24                    APRIL 20, 2022

25
```

Jacquelyn Callanen

April 20, 2022
Pages 2 to 5

Page 2

1       ORAL VIDEOTAPED DEPOSITION OF JACQUELYN CALLANEN,

2   produced as a witness at the instance of the Plaintiffs

3   and duly sworn, was taken in the above-styled and

4   numbered cause on the 20TH day of April, 2022, from

5   9:27 a.m. to 7:07 p.m., before Sarah A. Prugh, Certified

6   Shorthand Reporter in and for the State of Texas,

7   reported by machine shorthand at the Offices of The

8   Mexican American Legal Defense and Educational Fund, 110

9   Broadway Street, Suite 300, San Antonio, Texas, pursuant

10   to the Federal Rules of Civil Procedure and the

11   provisions stated on the record or attached hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1              APPEARANCES
2
3   FOR PLAINTIFFS HOUSTON AREA URBAN LEAGUE; DELTA SIGMA
    THETA SORORITY, INC.; THE ARC OF TEXAS; AND JEFFREY
4   LAMAR CLEMMONS:
5     Ms. Sarah Cummings Stewart (Via Zoom)
      Reed Smith, LLP
6     2850 N. Harwood Street, Suite 1500
      Dallas, Texas 75201
7     Telephone: 469-680-4200
      E-mail: sarah.stewart@reedsmith.com
8
      Ms. Ciara A. Sisco
9     Email: csisco@naacpldf.org
      Ms. Liliana Zaragoza (Via Zoom)
10    Email: lzaragoza@naacpldf.org
      NAACP Legal Defense and Educational Fund, Inc.
11    40 Rector Street, 5th Floor
      New York, New York 10006
12    Telephone: 212-965-2200
13  FOR PLAINTIFFS LA UNION DEL PUEBLO ENTERO, SOUTHWEST
    VOTER REGISTRATION EDUCATION PROJECT, MEXICAN AMERICAN
14  BAR ASSOCIATION OF TEXAS, TEXAS HISPANICS ORGANIZED FOR
    POLITICAL EDUCATION, JOLT ACTION, WILLIAM C. VELASQUEZ
15  INSTITUTE, FIEL HOUSTON, INC.:
16    Ms. Nina Perales
      E-mail: nperales@maldef.org
17    Ms. Julia R. Longoria (Via Zoom)
      E-mail: jlongoria@maldef.org
18    Mexican American Legal Defense and Educational Fund
      110 Broadway, Suite 300
19    San Antonio, Texas 78205
      Telephone: 210-224-5476
20
      Ms. Jasmine Johnson (Via Zoom)
21    Fried, Frank, Harris, Shriver & Jacobson, LLP
      One New York Plaza
22    New York, New York 10004
      Telephone: 212-859-8000
23    E-mail: jasmine.johnson@friedfrank.com
24
25

Page 4

1   FOR PLAINTIFFS OCA-GREATER HOUSTON, LEAGUE OF WOMEN
    VOTERS OF TEXAS, REVUP-TEXAS, TEXAS ORGANIZING PROJECT
2   AND WORKERS DEFENSE ACTION FUND:
3     Mr. Thomas Buser-Clancy (Via Zoom)
      ACLU Foundation of Texas, Inc.
4     5225 Katy Freeway, Suite 350
      Houston, Texas 77007
5     Telephone: 713-942-8146
6     Ms. Lia Sifuentes Davis (Via Zoom)
      Disability Rights Texas
7     2222 West Braker Lane
      Austin, Texas 78758-1024
8     Telephone: 512-454-4816
      E-mail: ldavis@drtx.org
9
      Ms. Susana Lorenzo-Giguere (Via Zoom)
10    Asian American legal Defense and Education Fund
      99 Hudson Street, 12th Floor
11    New York, NY 10013
      Telephone: 212-966-5932
12    E-mail: slorenzo-giguere@aaldef.org
13  FOR PLAINTIFF LULAC TEXAS:
14    Mr. Graham W. White
      Elias Law Group, LLP
15    10 G Street NE, Suite 600
      Washington, DC 20002
16    Telephone: 202-968-4490
      E-mail: gwhite@elias.law
17
    FOR PLAINTIFF MI FAMILIA VOTA:
18
      Ms. Wendy Olson (Via Zoom)
19    Stoel Rivas, LLP
      101 S. Capitol Boulevard, Suite 1900
20    Boise, Idaho 83702
      Telephone: 208-387-4291
21    E-mail: wendy.olson@stoel.com
22  FOR DEFENDANT HIDALGO COUNTY ELECTIONS ADMINISTRATOR
    YVONNE RAMON:
23
      Ms. Leigh Tognetti (Via Zoom)
24    Hidalgo County District Attorney's Office
      E-mail: josephine.ramirez@da.co.hidalgo.tx.us
25

Page 5

1   FOR DEFENDANT HIDALGO COUNTY CRIMINAL DISTRICT ATTORNEY
    RICARDO RODRIGUEZ, JR.:
2
      Ms. Jacqueline Villarreal (Via Zoom)
3     Assistant District Attorney
4   FOR DALLAS COUNTY:
5     Ms. Barbara Nicholas (Via Zoom)
      Dallas District Attorney's Office
6
    FOR DEFENDANTS GUERRERO & GARZA:
7
      Mr. Anthony "Tony" Nelson (Via Zoom)
8     Assistant Travis County Attorney
      E-mail: tony.nelson@traviscountytx.gov
9
    FOR UNITED STATES OF AMERICA:
10
      Mr. Jaywin Singh Malhi (Via Zoom)
11    Trial Attorney
      Civil Rights Division, Voting Section
12    US Department of Justice
      Telephone: 202-598-0146
13    E-mail: jaywin.malhi@usdoj.gov
14  FOR DEFENDANT BEXAR COUNTY ELECTIONS ADMINISTRATOR
    JACQUELYN CALLANEN:
15
      Ms. Lisa V. Cubriel
16    Assistant District Attorney -- Civil Division
      101 W. Nueva, 7th Floor
17    San Antonio, Texas 78205-3030
      Telephone: 210-335-2142
18    E-mail: Lisa.Cubriel@bexar.org
19  FOR DEFENDANTS:
20    Ms. Kathleen T. Hunker
      Special Counsel
21    kathleen.hunker@oag.texas.gov
      Office of the Attorney General
22    P. O. Box 12548 (MC-009)
      Austin, Texas 78711-2548
23    Telephone: 512-463-2100
24
25

Jacquelyn Callanen

Page 214

1    A.   Yes, ma'am.
2    Q.   Those were mail ballots?
3    A.   Yes, ma'am, that were returned to us and that
4  the ballot board rejected, yes, ma'am.
5    Q.   And that number is 3,940.  And then you have
6  837 that were cured.
7    A.   That came in to cure out of that 39.  So that
8  is 20 percent -- 22 some percent.
9    Q.   So I am getting 3,103.
10    A.   That did not --
11    Q.   That did not cure.
12    A.   Okay.  3,103?
13    Q.   Yeah, 3,103.  So that is 1,117 plus 2,823 minus
14  837 gets us 3,103.
15    A.   Yes, ma'am.
16    Q.   So how would we describe that 3,103?  3,103 are
17  the number of voters in Bexar County who sent you a mail
18  ballot.  You could not match the ID number and they
19  didn't cure in time so their vote was not counted.
20    A.   Correct.
21    Q.   Okay.  Now, do you have a sense of how many
22  people sent you an application for a mail ballot and you
23  couldn't match their number and you never got a cured
24  application for mail ballot from them?
25    A.   No, that we didn't track.  Like I said, we

Page 215

1  didn't have that system in place.
2    Q.   Do you know how many times you mailed out to a
3  voter a new application for ballot by mail because you
4  weren't able to verify the first time?
5    A.   Again, we didn't track that.  We didn't know it
6  would be --
7    Q.   So would you agree with me there is some number
8  of people who sent an application for ballot by mail and
9  you couldn't match their number and they were unable to
10  cure and so they never received a mail ballot?
11        MS. HUNKER:  Objection, form.
12        THE WITNESS:  Correct, although we did
13  send rejects to them and new applications up to the
14  point where the gate came down and it was closed.  So
15  again, I just don't know what that push/pull was.
16    Q.   (By Ms. Perales) It is also possible, isn't it,
17  and this would be a terrible situation.  But if the
18  voter sent you the first application for ballot by mail
19  and put the driver's license and you couldn't match the
20  driver's license, so you sent them a new application for
21  ballot by mail and they put the social down, and then
22  you couldn't match the social either, that could happen;
23  couldn't it?
24    A.   Oh, sure.
25    Q.   And do you know if it happened for anybody in

Page 216

1  particular?
2    A.   I don't.
3    Q.   Is that because you weren't tracking those
4  individual voters?
5    A.   Correct.  Again, because the system we have had
6  no coding for it in there.  Previously, it had never
7  been an issue.  It was handled manually.  If something
8  came in and we had to reject it, we sent something out
9  and we literally kept it in a box.  I mean we kept it
10  filed.  We knew where it was.  But the computer system,
11  the database didn't even have the codes in there.
12    Q.   Do you recall your office receiving any phone
13  calls from voters who said I received a second
14  application for ballot by mail from you and I filled
15  that one out too and I still got rejected?
16    A.   Yes.
17    Q.   Do you know how many voters were twice
18  rejected?
19    A.   No, no, that would have been anecdotally.  But
20  yes, we would hear it.
21    Q.   And I will represent to you that El Paso County
22  got some pretty angry phone calls from voters.
23    A.   So did we.  So did we.  And again, as I spoke
24  before, we had to have a meeting with the staff to allow
25  them to say they don't deserve to be spoken to like

Page 217

1  that.  So and again, in all of the years I have been
2  here, I have never had to have a meeting like that, to
3  even say something like that because we are a customer
4  service driven organization and that is part of who we
5  are.  And we had to do that for the first time and that
6  was sad.
7    Q.   Did you have any voters call with confusion
8  about the verifying of the numbers on the mail ballot
9  applications or mail ballots who were Spanish speaking
10  voters?
11    A.   Oh, sure.
12    Q.   Did you have a Spanish speaking staff person
13  who would talk to them on the phone?
14    A.   Yes, ma'am.  Yes, ma'am.
15    Q.   You mentioned that at some point, you started
16  sending voter registration forms to voters who had --
17  who were obviously already registered --
18    A.   Correct.
19    Q.   -- but for whom you couldn't get some kind of
20  number on them?
21    A.   Correct.
22    Q.   Did you receive any phone calls from voters who
23  were confused about why you were sending them a voter
24  registration form?
25    A.   Yes, ma'am.

Jacquelyn Callanen

Page 218

1   Q.  And they were already --
2   A.  They were already registered.
3   Q.  Do you recall whether the voter registration
4 form that you sent out was in both English and Spanish
5 or just English?
6   A.  I bet it was just English.  We had Spanish.  If
7 they request, we have Spanish ones.  But now that you
8 are saying that, I bet the staff was just picking and
9 stuffing and picking and stuffing as they -- that is a
10 great point.
11   Q.  So it is likely that when you were sending out
12 these new voter registration forms to voters, you were
13 sending the English form?
14   A.  Yes.
15   Q.  Did you get a sense from all of this of what
16 characteristics of the voter was most likely to cure
17 when you notified them that you couldn't match their ID
18 number?
19       MS. HUNKER:  Objection, form.
20   Q.  (By Ms. Perales) Anything about education level
21 or anything that you were picking up from your
22 conversations with voters on the phone that would help
23 you understand kind of the differences between the group
24 that did manage to cure and the group that just never
25 got their ballot counted?

Page 219

1       MS. HUNKER:  Objection, form.
2       THE WITNESS:  No, I didn't have a sense of
3 that.
4   Q.  (By Ms. Perales) We talked to one lady who had
5 a PhD.  And she was all fired up and she cured.
6   A.  Was she related to Tommy Calvert because he is
7 the one that tells me all of the time --
8   Q.  No, it was a different county.
9   A.  I have got to stop.  Sorry.  Bite my tongue.  I
10 am going to get myself in so much trouble, I can't stand
11 it.  Lisa, you are supposed to keep me --
12       MS. CUBRIEL:  She didn't say that.
13       MS. PERALES:  I think you are supposed to
14 kick her under the table when she mentions a county
15 commissioner.
16       THE WITNESS:  That is your job to keep me
17 out of trouble.
18       MS. CUBRIEL:  Are you doing okay?  Do you
19 need a break?
20       MS. PERALES:  Whenever you need a break,
21 you call break.
22   Q.  (By Ms. Perales) So here is a question I have.
23 There is still a signature verification requirement for
24 application for a ballot by mail and mail ballot;
25 correct?

Page 220

1   A.  No.
2   Q.  Because once an ID number matches, that is
3 presumptively then considered a match on the signature
4 side?
5   A.  That is a word I didn't understand, the one you
6 all use, legalese --
7   Q.  Presumption?
8   A.  Yeah, that.
9   Q.  You had mentioned before that when somebody --
10 pre-SB-1, that you were looking to match the signature
11 on the mail ballot to the signature on the application
12 for ballot by mail.
13   A.  Yes, ma'am.
14   Q.  But what were you matching the signature on the
15 application for ballot by mail to when you first
16 received that?
17   A.  Nothing.
18   Q.  You wouldn't match that against anything?
19   A.  No, ma'am.
20   Q.  When I am quiet, I am skipping questions.
21   A.  That is a good thing.
22       MS. CUBRIEL:  Can we go off the record
23 real quick?
24       MS. PERALES:  Can we go off the record?
25       VIDEOGRAPHER:  The time is 3:49 p.m.  We

Page 221

1 are off the record.
2       (Recess taken)
3       VIDEOGRAPHER:  The time is 3:57 p.m.  We
4 are back on the record.
5   Q.  (By Ms. Perales) Ms. Callenan, can you describe
6 a specific instance in which someone contacted your
7 office asking for an application for ballot by mail on
8 behalf of another individual and you could not send that
9 application for ballot by mail?
10   A.  Many times.
11   Q.  Okay.  And give me an example of the
12 relationship between the two people.
13   A.  Well, again, as I mentioned the last time, I
14 mean the one that really hurt was when the mother
15 reached out and she asked for the two applications.  And
16 I had her on the call and I was explaining to her that
17 we could only send the one to her and she wanted one for
18 her son.
19       And you know, first, we go through well,
20 but I always call and you always send me two.  And then
21 so we had to stop and say yes, but SB-1, now we can
22 only -- so I said just take a minute and put your son on
23 the phone.  If I can hear his voice, I will be glad to
24 send you one for him too.  And that is when she said
25 that he was paralyzed and that he did not speak.  And

Jacquelyn Callanen

April 20, 2022
Pages 278 to 281

Page 278

1    A.   Again, every one of these voters is important.
2  Every one of them is a vote.  And when we disenfranchise
3  or we lose one, that is not right.  That is not what we
4  are in business for.
5    Q.   Thank you.  And have you -- actually, scratch
6  that because you have answered it already.  Do you have
7  any reason to believe that this significantly larger
8  number of rejected of people who had their ballots
9  rejected are not otherwise eligible voters?
10        MS. HUNKER: Objection, form.
11        THE WITNESS:  I'm sorry.  I don't
12  understand.
13    Q.   (By Ms. Sisco) I can rephrase.  Do you have any
14  reason to believe that the people -- that the majority
15  of the people whose votes weren't counted because they
16  were rejected, do you think that they are -- do you
17  think there is voter fraud going on there or do you
18  think they are eligible voters who misunderstood or
19  messed up?
20        MS. HUNKER: Objection, form.
21        THE WITNESS:  I think they were eligible
22  voters.
23    Q.   (By Ms. Sisco) Do you think the SB-1, this ID
24  number requirement confused voters?
25    A.   Yes.

Page 279

1    Q.   Did the secretary of state provide adequate
2  guidance on this requirement to voters?
3    A.   In my opinion which is only an opinion, the
4  answer would be no.
5    Q.   And has -- do you think the secretary of state
6  has provided additional -- since the March 2022 primary,
7  do you think that now the secretary of state has
8  provided adequate guidance to voters?
9    A.   No.
10    Q.   Okay.  Thank you.  So we talked a lot about how
11  people can come in person to cure their votes?
12    A.   Yes.
13    Q.   Okay.  And I believe you said that they
14  could -- you, if their application is rejected, you were
15  just sending them a new application?
16    A.   Correct.
17    Q.   So could they have returned that by mail?
18    A.   Absolutely.
19    Q.   Okay.  Do you know how many people did that?
20    A.   No.  As I said, we weren't tracking that at the
21  time.
22    Q.   And could they provide like their number?
23  Could they cure it by email?
24    A.   They could but they didn't.
25    Q.   Okay.

Page 280

1    A.   Again, there was a strong hesitancy of sending
2  information like that over the internet in an email.
3  And I don't blame them.
4    Q.   Understood.  And would they provide an updated
5  number by phone?
6    A.   No.
7    Q.   Okay.  And we talked about they could
8  theoretically do it online but it didn't work and only
9  39 voters were able to do that?
10    A.   Correct.
11    Q.   Okay.  Can a voter -- could a voter who came in
12  person to cure their ballot, could they do that curbside
13  or would they have to physically go into your office and
14  talk to an elections worker?
15    A.   We did provide curbside for that.
16    Q.   Okay.  Great.  And we have talked a lot about
17  the steps that your office, the various steps that your
18  office has taken to help voters kind of understand and
19  cure their ballot issues.  Do you remember that?
20    A.   Yes.
21    Q.   And one of the things you mentioned is that
22  your office started advising people to just put both
23  numbers on everything?
24    A.   Correct.
25    Q.   When did you start advising that?

Page 281

1    A.   When it became apparent that we had a problem.
2    Q.   And when was that?
3    A.   You know, probably like the third week of
4  January.
5    Q.   Okay.  And why did you start advising that?
6    A.   Again, because we were noticing that we were
7  getting the wrong number.  I don't want to say it is the
8  wrong number.  The other number.
9    Q.   Got it.  Okay.  And you also mentioned that
10  your office sent voter registration cards with new
11  applications when the original was rejected; correct?
12    A.   Correct.
13    Q.   Did that require the use of resources like
14  staff or funding to do that that wasn't necessary in
15  prior elections?
16    A.   Correct.
17    Q.   Can you describe a little bit what additional
18  resources were required?
19    A.   I mean, again, you have the staff time to do
20  it.  You have the cost of the new voter registration
21  card.  You have the cost of the mailer.  You have your
22  envelopes that are nine cents a piece.  You have your
23  application, the new application.  You have the new
24  voter registration card and you are going to pay the
25  postage out.  So each one was a necessary financial

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

LA UNION DEL PUEBLO ENTERO, et al.,          §
     *Plaintiffs,*          §
               §
*v.*          §          Case No. 5:21-cv-844-XR
               §
GREGORY W. ABBOTT, et al.,          §
     *Defendants.*          §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO**
**OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# APPENDIX LL



# HOUSE JOURNAL

## EIGHTIETH LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

#### SIXTIETH DAY — MONDAY, APRIL 23, 2007

The house met at 10 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 590).

Present — Mr. Speaker; Allen; Alonzo; Anchia; Anderson; Aycock; Bailey; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Delisi; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; Elkins; England; Escobar; Farabee; Farias; Farrar; Flores; Flynn; Frost; Gallego; Garcia; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Goolsby; Guillen; Haggerty; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Hernandez; Herrero; Hilderbran; Hill; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Isett; Jackson; Jones; Keffer; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Latham; Laubenberg; Leibowitz; Lucio; Macias; Madden; Mallory Caraway; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miles; Miller; Morrison; Mowery; Murphy; Naishtat; Noriega; O'Day; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Puente; Quintanilla; Raymond; Riddle; Ritter; Rodriguez; Rose; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Van Arsdale; Vaught; Veasey; Villarreal; Vo; West; Woolley; Zedler; Zerwas.

Absent, Excused — King, S.; Moreno.

The invocation was offered by Steve Doles, director, Pray Lubbock, as follows:

Our Heavenly Father, your servant, Moses, not only brought law and order to his people, but provided the foundation upon which laws are established today. May each member of the house breathe in a fresh sense of divinely ordained duty and their stamina renewed as they consider legislation regarding the affairs of our state. May their noble work bring forth laws which will protect our freedoms, enhance life for individuals, and insure rule and order in our society.

We thank you that you have created the men and women in this room with passion about their opinions on appropriate governing policy. I pray that you will endow these representatives, whether on the debate floor or in the committee room, with self-control and honorable statesmanship equal to their passion allowing true corporate wisdom to prevail in this 80th Legislature.

Absent — Cook, R.; King, S.; Woolley.

**STATEMENT OF VOTE**

When Record No. 617 was taken, my vote failed to register. I would have voted yes.

Woolley

**HB 218 - REMARKS**

REPRESENTATIVE ANCHIA: Members, I'm going to be brief, this has been a long day. The debate has gone on for, oh boy, about six hours and this is what we learned. We've learned that the authors of this bill have provided not one shred of evidence of voter impersonation, which is the type of voter fraud this bill gets at. We have learned that upwards of two million Texans may be disenfranchised by this bill. We have learned that the sense of this body is not to prosecute the offenders and not to set up and devote resources to engage a prosecuting voter impersonation.

So, let me tell you what I know it's not about. This is clearly not about voter fraud, it's not about voter impersonation, it's not about expanding the franchise, it's not about protecting those that are least vulnerable in our society, and it's not about making sure that elections are more secure, and I'll tell you why. I've been saving this wonderful nugget for you guys until the end. If you look at the list of documents that you can offer up, it includes employee identification. No matter how much training you do with poll workers, no matter how much training you do of election judges and election officials, it will be impossible for them to discern what is a valid employment identification and what is an invalid employment identification. Mr. Talton probably has an identification for his law firm. It would be impossible for me to tell whether it was valid or invalid or whether Joe Deshotel's face was on it or whether it was correct or not. In fact, you can go down to Kinko's and have a bogus little ID made and say that you're an employee of whatever organization you want to be for about five dollars. In fact, this bill, rather than increasing the integrity of elections, makes sure that there's a huge loophole that you can drive a train through to increase voter fraud that was what was crossing the mind of a particular person.

We know that there's no evidence of it, but if this body wants to create an opportunity for voter fraud then vote for **HB 218**. In fact, that Section 3 part (a) of **HB 218** creates a wonderful opportunity for people at a low cost to be able to impersonate someone else by saying that this is a valid employee ID and no poll worker, no election worker, no election judge will be able to discern a valid from an invalid ID. Furthermore, there's another wonderful loophole in this bill that creates a glaring weakness. It essentially allows vote by mail to continue without photo identification. Vote by mail, that we know, is the greatest source of voter fraud in this state. In fact, all of the prosecutions by the attorney general—I shouldn't say all, but a great majority of the prosecutions by the attorney general occur with respect to vote by mail.

So ladies and gentlemen, you have a pig on your hands. It's an ugly bill. It creates more of an opportunity for voter fraud than current law, and I will tell you that if you vote for this without any commensurate enforcement like what was

offered up in Representative Strama's bill, you are voting for a pig with no lipstick, and it's going to be nasty. So I urge you, members of this body, to please vote against the loopholes that this bill creates and vote against the opportunities of voter fraud that this creates and vote against **HB 218**.

REPRESENTATIVE BURNAM: I particularly want to thank Rafael Anchia for the leadership role he's taken, both on the Elections Committee and today, and I'm only going to add a few words from my hometown daily paper, the *Star-Telegram* today. The opening paragraph, "An insidious scheme to turn back the clock on voting rights in Texas tragically has once again made it's way to the state house floor. The architects of this idea pitched as a noble effort to prevent voter fraud cannot be allowed to succeed with what is surely one of the greatest assaults on the right to vote in this state since the passage of The Federal Voting Rights Act in 1965." Racism is racism, xenophobia is xenophobia. It's too bad that we're going to see it enacted on the house floor again.

## REMARKS ORDERED PRINTED

Representative Thompson moved to print all closing remarks on **HB 218**.

The motion prevailed.

REPRESENTATIVE VEASEY: Mr. Speaker, members, thank you very much. I'll be very brief. I want to start off by thanking some of the folks that have helped bring attention to this voter ID, or what I call a voter suppression bill. First of all, I'd like to thank the Baptist General Convention of Texas. They put out a pamphlet, a flier today asking members to please oppose this bill. I think that's significant because the Civil Rights Movement back when we were going through a lot of these issues that we're facing today—and don't be mistaken about it—this is a Civil Rights issue that we are debating today. But back during the '60s the black ministers and everyone else that marched for freedom, that marched for voting rights, rarely did any of the white pastors from the South join in, and the fact that the Baptist General Convention joined in shows that we are making some progress in this country on racial harmony.

Unfortunately, this bill sets us back. We have heard absolutely no evidence of any voter impersonation today, absolutely none. I think that Representative Strama and Representative Anchia pointed that out very eloquently. All of the amendments and everything that Ms. Brown has offered you today is asking you to vote for this bill based on generalizations, and based on stereotypes, and based on things that are untrue. There has been absolutely not one shred of evidence, and we're voting for this bill today. It makes absolutely no sense, and especially in light of what's going on with the attorney general in the State of Texas. They were trying to force U.S. attorneys to say that there was voting fraud going on in their respective districts in there respective states so they could produce convictions that would prove voter impersonation. The panel, the U.S. panel who looked into this, found none. They had to help doctor some of the findings to make their findings more compelling. And I think that it's time that—instead of 15 or 20 years from now—because, you know, when we look down the road this is going to be embarrassing that we even voted for this. But right now people are

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,           §
     *Plaintiffs,*                                 §
                                                   §
*v.*                                          §   Case No. 5:21-cv-844-XR
                                                   §
GREGORY W. ABBOTT, et al.,                    §
     *Defendants.*                                 §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


# APPENDIX MM

Vice Chair, Natural Resources
and Economic Development
Texas Judicial Council
Chair, Eagle Ford Shale
Legislative Caucus



**Judith Zaffirini**
State Senator, District 21
President Pro Tempore, 1997

Committees
Administration
Business and Commerce
State Affairs

December 3, 2018

The Honorable
Bryan Hughes, Chair
Senate Select Committee
   on Election Security
P.O. Box 12068
Austin, TX 78711



Dear Chair Hughes:

Thank you for your leadership as Chair of the Senate Select Committee on Election
Security. It is my privilege to serve with you, and I appreciate the opportunity to
share my perspective regarding the Committee's Interim Report to the 86th
Legislature. The report includes numerous good recommendations, and I am
delighted to sign it. This letter, however, is to record my concerns regarding the
need to (1.) provide concrete recommendations to address mail-in ballot fraud and
(2.) reflect that Texas lags behind much of the nation in modernizing and
simplifying the registration process, which is critical in offering adequate
opportunities for all Texans to register to vote.

During the last several sessions many legislators have focused on voter ID laws
intended to prevent in-person voter fraud, but not on the increasingly serious
problem of mail-in ballot fraud. Our Committee heard troubling testimony
regarding the state of election security related to the latter. The report's
recommendation that the Legislature needs to find a solution to the "vexing issue"
of mail-in ballot fraud at nursing homes and assisted living facilities is a good start,
but we must take all possible steps to address voting irregularities caused by
fraudulent mail-in ballots.

The report also states that current federal and state laws governing Texas' voter
registration system "create a broad base of opportunity for registration for all
Texans" and describes how eligible persons may register to vote. It does not
mention, however, that we have not adopted secure voter registration reforms that

many other states have. Texas, for example, is one of only thirteen states that does not offer online registration. The Legislature should consider this and other secure methods to facilitate voter registration.

Thank you for your dedication to the many important issues we examined during the 85th Interim. I look forward to continuing to work with you and other members of the committee during our next legislative session.

May God bless you.

Very truly yours,

*Judith Zaffirini*

Judith Zaffirini

Z/ah

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al., §
    *Plaintiffs,* §
     §
*v.* §    Case No. 5:21-cv-844-XR
     §
GREGORY W. ABBOTT, et al., §
    *Defendants.* §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# APPENDIX NN

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

## John B. Scott
### Secretary of State

## ELECTION ADVISORY
## NO. 2022-12

TO:         Election Officials

FROM:    Keith Ingram, Director, Elections Division

DATE:     February 11, 2022

RE:         Additional Procedures Regarding Correction of Defects on Application for Ballot by Mail or Carrier Envelope

---

In our continued efforts to provide advice and assistance on the changes in law made by Senate Bill 1 (87th Leg., 2nd C.S., 2021), the Secretary of State is issuing additional guidance regarding the process for voters to correct certain defects in an application for ballot by mail (ABBM) or carrier envelope. This advisory is intended to be read in conjunction with Election Advisory No. 2022-08, issued on January 28, 2022.

All statutory references in this advisory are to the Texas Election Code ("the Code"), unless otherwise indicated.

## Processing Applications for Ballot by Mail

In Election Advisory No. 2022-08, we identified several scenarios that early voting clerks may encounter in reviewing ABBMs. We also outlined the actions that early voting clerks should take in each scenario. Based on feedback that we received from early voting clerks following the issuance of Election Advisory No. 2022-08, we are providing further guidance regarding one of the scenarios (Scenario 2).

In Scenario 2, a voter provides a DPS-issued driver's license number on their ABBM but the early voting clerk is unable to validate this number because the voter registration record only contains the voter's social security number. As we indicated in our prior advisory, the early voting clerk must reject the ABBM and provide notice of the rejection, which must include information explaining how to correct or add information to cure the defect. (Sec. 86.001(f-1)).

In this scenario, if the voter's voter registration record contains only one personal identification number, the voter can also update their record—by submitting a new voter registration application to the registrar or by validating their information on texas.gov—to add the missing number in addition to or in lieu of submitting a new ABBM. Accordingly, the early voting clerk should provide a voter in Scenario 2 with the Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3) or the Notice of Rejected Application for

STATE001469

Ballot by Mail – Required Personal Identification Number Not Associated with Voter Record (Form 6-4). The early voting clerk should also consider sending both a blank ABBM and a blank voter registration application to the voter so that they can include the additional personal identification number on the ABBM or submit a new voter registration application to update their record with both numbers. Updating the voter registration record will also reduce the likelihood that any future ABBMs or carrier envelopes submitted by the voter will contain identification information that does not match the voter's record.

> **NOTE**: As we stated in Election Advisory No. 2022-08, if a voter in Scenario 2 has not provided the required personal identification information by the 11th day before election day, the ABBM will be finally rejected, but the voter may still vote in person if otherwise eligible. (Sec. 84.007(c)).

## EVBB/SVC Mailing of Defective Carrier Envelope to Voter

In Election Advisory No. 2022-08, we outlined detailed procedures regarding the methods of correcting defects in a carrier envelope, including the process for the SVC or EVBB to return a carrier envelope to the voter by mail. As a reminder, if the SVC or EVBB determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the SVC or EVBB must mail the original defective carrier envelope to the voter. This determination must be made not later than the second business day after the SVC or EVBB discovers a defect, and before the SVC or EVBB decides whether to accept or reject a timely delivered mail ballot. (Secs. 87.0271(b), 87.0411(b)).

In addition to the procedures identified in our earlier advisory, if the EVBB/SVC mails a defective carrier envelope to the voter, the EVBB/SVC can also call or email a voter to notify them that the carrier envelope has been returned to the voter. If the EVBB/SVC opts to provide this additional notice by phone or email, the EVBB/SVC must apply these procedures uniformly to all voters in similar circumstances. (Secs. 87.0271(d), 87.0411(d)).

## Missing or Incorrect Personal Identification Information on Carrier Envelope – Updating Voter Registration Record

If an SVC/EVBB discovers that a voter's personal identification information is missing or incorrect on the carrier envelope, and the SVC/EVBB determines there is not enough time to return the carrier envelope to the voter, the SVC/EVBB may notify the voter of the defect by phone or email. (Secs. 87.0271(c), 87.0411(c)). If the voter's voter registration record only contains one of the required identification numbers, the SVC/EVBB may also notify the voter that they can add the missing number to their record by submitting a new voter registration application or by updating their registration at texas.gov. Updating the voter registration record to include the missing personal identification number may provide the SVC/EVBB with the information needed to accept the carrier envelope. Additionally, once the voter updates their record, the voter will be able to access the SOS's Ballot by Mail Tracker in any future election for which they apply to vote by mail.

## Early Voting Clerk Notification to Voter of Defects in Carrier Envelope

As we explained in Election Advisory No. 2022-08, if an early voting clerk receives a timely carrier envelope that does not comply with the applicable requirements of the Code, Section 86.011(d) of the Code authorizes the clerk to deliver the carrier envelope in person or by mail to the voter

STATE001470

so that the voter may correct the defect.  The early voting clerk also may notify the voter of the defect by phone and advise the voter that they may come to the early voting clerk's office to correct the defect or cancel their ABBM and vote in person.  Section 86.011(d) directs the SOS to prescribe any procedures necessary to implement this subsection.

## Removing the Secrecy Flap on Carrier Envelope

The early voting clerk is authorized to remove the secrecy flap on a returned carrier envelope to facilitate the processing and review of voted mail ballots.  If, in removing the secrecy flap, the early voting clerk discovers that the voter did not fully seal the carrier envelope, the clerk may take actions such as taping or sealing the flap to ensure that the envelope containing the ballot is not separated from the carrier envelope.

## Returning the Carrier Envelope to Voter

If the early voting clerk discovers that the carrier envelope is missing the voter's signature, has an incomplete signature, has missing or incomplete witness or assistant information, or has missing or incorrect personal identification information, the early voting clerk may deliver the carrier envelope in person or by mail to the voter so that the voter may correct the defect.  If the early voting clerk sends the carrier envelope to the voter by mail, the clerk should include a notice explaining the defect and provide instructions on how the voter can correct and return the carrier envelope or cancel their ABBM and vote in person.  The early voting clerk may provide their own letter to the voter explaining these defects.

If an early voting clerk delivers the carrier envelope to the voter in person, the clerk should document this delivery.  This hand-delivery option must be applied uniformly to all voters in similar circumstances.  In addition, poll watchers are entitled to follow the early voting worker when making the delivery and observe the correction process.  Upon receipt of the carrier envelope, the voter may correct the defect immediately and surrender the carrier envelope to the early voting clerk personnel, who would return to the clerk's office with the corrected carrier envelope. Alternatively, the early voting worker could leave the carrier envelope in the voter's possession and allow the voter to either make the correction on their own and mail the ballot to the early voting clerk or cancel their mail ballot and vote in person.

The early voting clerk may return defective carrier envelopes by mail under Section 86.011(d) up until the point when SVC/EVBB begins notifying voters of defects by phone or email.  The early voting clerk should determine this cutoff date in coordination with the SVC/EVBB.  At that point, the early voting clerk should not provide these notifications, as the SVC/EVBB has additional options to contact voters of defective carrier envelopes—and voters notified of such defects by the SVC/EVBB have until the 6th day after election day to correct the defect in person at the early voting clerk's office.

## Deadline to Return Carrier Envelope to the Early Voting Clerk

As the carrier envelope was returned to the voter prior to review by the early voting ballot board, the regular delivery deadlines for carrier envelopes apply.  These deadlines are listed in the Secretary of State's election law calendars.  Any carrier envelopes returned to the early voting clerk after the regular return deadlines will not be sent to the EVBB for review, as they were not timely returned.  (Sec. 86.011(c)).

STATE001471



KEN PAXTON
ATTORNEY GENERAL of TEXAS

# Election Integrity

Jonathan White
Division Chief
Election Integrity Division

Views expressed are those of the presenters, do not constitute legal advice, and are not official opinions of the Office of the Texas Attorney General

STATE054622



STATE054632

18.009 UNLAWFUL USE OF INFORMATION ON REGISTRATION LIST
13.046 HIGH SCHOOL DEPUTY REGISTRARS
64.010 UNLAWFULLY PERMITTING OR PREVENTING DEPOSIT OF BALLOT
42.21 PERJURY
13.044 PURPORTEDLY ACTING AS VOLUNTEER DEPUTY REGISTRAR
18.012 SECRETARY OF STATE TO APPROVE COMPUTER SERVICES CONTRACTS
13.145 UNLAWFUL DELIVERY OF CERTIFICATE
13.005 UNLAWFULLY ACTING AS AGENT
64.036 UNLAWFUL ASSISTANCE 13.043 FAILURE TO DELIVER APPLICATION
18.067 UNLAWFUL USE OF STATEWIDE COMPUTERIZED VOTER REGISTRATION LIST
15.085 UNLAWFUL USE OF INFORMATION ON SUSPENSE LISTS
43.033 CONSIDERATION FOR USE OF PUBLIC BUILDING AS POLLING PLACE
13.006 PURPORTEDLY ACTING AS AGENT 87.041 ACCEPTING VOTER
86.0105 COMPENSATION FOR ASSISTING VOTERS PROHIBITED 64.011 UNLAWFULLY DEPOSITING BALLOT
51.010 FAILURE TO DISTRIBUTE OR DELIVER SUPPLIES
31.035 RESTRICTIONS ON POLITICAL ACTIVITIES

# 100+ Election Offenses

61.003 ELECTIONEERING AND LOITERING NEAR POLLING PLACE
33.061 UNLAWFULLY OBSTRUCTING WATCHER 36.02 BRIBERY
61.001 BYSTANDERS EXCLUDED; UNLAWFUL PRESENCE OF CANDIDATE
52.0063 UNLAWFUL PREPARATION OF BALLOTS 283.005 SEPARATE ACCOUNTS
61.006 UNLAWFULLY DIVULGING VOTE 64.012 ILLEGAL VOTING
61.005 SECURITY OF BALLOTS, BALLOT BOXES, AND ENVELOPES
63.0013 FALSE STATEMENT ON DECLARATION OF REASONABLE IMPEDIMENT
61.008 UNLAWFULLY INFLUENCING VOTER 85.036 ELECTIONEERING
64.012 ILLEGAL VOTING: ATTEMPT 31.093 DUTY TO CONTRACT
63.012 UNLAWFULLY ACCEPTING OR REFUSING TO ACCEPT VOTER
61.010 WEARING NAME TAG OR BADGE IN POLLING PLACE
61.064 UNLAWFUL OPERATION OF SOUND AMPLIFICATION DEVICE OR SOUND TRUCK
62.013 UNAUTHORIZED POSTING OF SIGNS PROHIBITED

STATE054633

 ## Most Common Offenses

- Vote Harvesting (or Mail Ballot Fraud)

- Assistance Fraud

- Illegal Voting

STATE054634



STATE054635


# Vote Harvesting

**Vote harvesting** generally consists of two phases:

**Seeding** & **Harvesting**

STATE054636



## Vote Harvesting

Campaign workers generate mail ballots and collect votes for their candidate/s by any means necessary.

**Vote harvesting** generally consists of two phases:

Seeding & Harvesting

STATE054637



STATE054638



STATE054639

# Seeding: Application Fraud

## Application for Ballot by Mail (ABBM) Seeding Activity



STATE054640



# Seeding: Signs of ABBM Fraud



Similar Handwriting



Forged Signature



Eligibility Fraud



Pre-Filled Applications



"Professional" Assistants



ABBM Batches from One Source

STATE054641



# Examples: Signs of ABBM Fraud

## Similar Handwriting

NAME: Vera Brown
ADDRESS: 1104 Elmwood Ave.
CITY: Ft. Worth, TX. — 76104

NAME: Evangelyn Allen
ADDRESS: 3201 Illinose Ave
CITY: Ft. Worth, TX. — 76110

NAME: Charles Washington
ADDRESS: 1125 E. Pulaski St.
CITY: Ft. Worth TX. — 76104

NAME: James Hornsby
ADDRESS: 1105 Vicki Ln.
CITY: Ft. Worth, TX. — 76104

NAME: James Cortez.
ADDRESS: 4629 Quails Ln.
CITY: Ft. Worth, TX. — 76119

NAME: Margie Brazzile
ADDRESS: 5604 Comer Dr.
CITY: Ft. Worth, TX. — 76134

NAME: Rossie Barrett
ADDRESS: 4225 Eastland St.
CITY: Ft. Worth, TX. — 76119

NAME: Dorothy Carey
ADDRESS: 4133 Burke Rd.
CITY: Ft. Worth, TX. — 76119

STATE054642

 Examples: Signs of ABBM Fraud

## Forged Signatures/Print

**SIGNATURE OF VOTER (FIRMA DEL VOTANTE)**

X *Maria D. Guevara*

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. *(Certifico que la boleta aqui adjunta da a conocer mis deseos y no obedece las indicaciones ni influencias indebidas de otras personas.)*

10  "I certify that the information given in this application is true, and I understand that this application is a crime."

X *Maria Guevara*

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the

---

**SIGNATURE OF VOTER (FIRMA DEL VOTANTE)**

X *José D. Guevara*

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. *(Certifico que la boleta aqui adjunta da a conocer mis deseos y no obedece las indicaciones ni influencias indebidas de otras personas.)*

10  "I certify that the information given in this application is true, and I understand that giving false information this application is a crime."

X *José Guevara*

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Boxes #11a-b.

STATE054643

## Examples: Signs of ABBM Fraud

### Signature Appears Electronic



STATE054644

# Examples: Signs of ABBM Fraud

## Multiple Electronic or Typed ABBMs
- Especially those coming from the same precincts



STATE054645

# Examples: Signs of ABBM Fraud

## Frequent Flyer Assistants/Witnesses (not family members)



STATE054646

# Harvesting: Mail Ballot Fraud

## Ballot/Carrier Envelope Fraud



STATE054647



STATE054648



## Where Does Vote Harvesting Occur?

- No Geographical Limitations

.

STATE054649



# Where Does Vote Harvesting Occur?

- No Geographical Limitations
- Primary Targets:
  - Locals, Primaries, Special Districts

STATE054650



# Where Does Vote Harvesting Occur?

- No Geographical Limitations

- Primary Targets:
  - Locals, Primaries, Special Districts

- Rule of Thumb:
  - The lower the turnout, and smaller the margins between candidates, the better the chances of success for harvesting.

STATE054651



# What Should I Do If I Find This?

If you receive a bulk shipment of ABBMs:

- Preserve Box/Envelope

- Make a copy of original batch of ABBMs

- Contact DA & OAG and provide copy of the batch

- Process ABBMs normally



STATE054652





TEXAS SECRETARY OF STATE

## TOPICS COVERED

- Reviewing ABBMs
- Ballot by Mail Tracker
- Distribution of ABBMs

1/18/2022          Texas Secretary of State Elections Division          2





TEXAS SECRETARY OF STATE

# Reviewing ABBMs

1/18/2022 Texas Secretary of State Elections Division 3

TEXAS SECRETARY OF STATE

# Reviewing an ABBM

**Box 1: Personal Identification Numbers – Voter must provide:**

- Texas Driver's License, Texas Personal Identification Number, or Election Identification Certificate Number issued by DPS, OR
- Last four digits of SSN, OR
- An indication that they have not been issued either number.

- The number provided by the voter on the ABBM MUST be validated off of the voter's voter registration record. If the number is missing or incorrect on the ABBM, the voter will have the opportunity to correct the defect either by submitting a new ABBM or by validating their identification number in the Ballot by Mail Tracker.

1/18/2022 Texas Secretary of State Elections Division 4

STATE061322

TEXAS SECRETARY OF STATE

## If a voter uses an old ABBM form, should I reject the ABBM?

- Yes. If a voter uses an outdated ABBM form that does not contain the personal identification number box and does not provide one of the identification numbers required under Section 84.002(a)(1-a), the ABBM must be rejected.

- You must send the voter a Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3), which informs the voter how they can correct or add information to cure the defect.



1/18/2022                 Texas Secretary of State Elections Division                  5

TEXAS SECRETARY OF STATE

## What if a voter provides only a driver's license number on the ABBM, but the voter registration record does not contain a driver's license number?

- The ABBM must be rejected.
- You must send the voter a Notice of Rejected Application for Ballot by Mail – Missing or Incorrect Personal Identification Number (Form 6-3).



1/18/2022                 Texas Secretary of State Elections Division                  6

STATE061323

Texas Secretary of State Elections Division                                                    1/18/2022

---

TEXAS SECRETARY OF STATE

## If a voter provides both types of identification numbers on the ABBM (ex: driver's license AND last four digits of SSN), do both numbers have to match the voter registration record?

- No. If one number matches the voter registration record (and the voter is otherwise eligible to vote by mail), you must accept the ABBM.

- Your obligation in reviewing the identification numbers on an ABBM is to determine if the information provided by the voter on the ABBM identifies the same voter identified on the applicant's voter registration record. (Sec. 86.001(f)).



1/18/2022                         Texas Secretary of State Elections Division                         7

---

TEXAS SECRETARY OF STATE

## What if a voter provides the last four digits of the SSN, but the voter registration record shows both a driver's license and an SSN?

- If the last four digits of the SSN provided by the voter on the ABBM matches the voter record (and the voter is otherwise eligible to vote by mail), you must accept the ABBM.

1/18/2022                         Texas Secretary of State Elections Division                         8

---

Texas Secretary of State Elections Division                                                           4

**STATE061324**

## March 1, 2022 Primary Election Law Calendar

- Downloadable PDF

**Note:** For deadlines affecting all candidates, refer to our online 2022 Candidates' Guide Important Dates calendar.  Remember that under Section 41.007(d) of the Texas Election Code, no other elections may be conducted on primary or runoff primary election day.

# Notes

1. Campaign Information
2. Statutory and Administrative Code References
3. Web Posting Requirements
4. Notice of Elections
5. Regular Days and Hours for Voting at the Main Early Voting Location
6. Extended Early Voting Hours and Weekend Early Voting
7. Temporary Branch Locations
8. Joint Primaries
9. Testing Tabulating and Electronic Voting Equipment
10. Conventions of Parties Holding Primary Elections
11. Party Electoral Rules
12. Accepting Voters With Certain Disabilities
13. Faxed or Emailed ABBMs or FPCAs
14. Opportunity to Correct Defects in Mail Ballots
15. Deadlines for Vacancies and Replacement Nominees for the General Election for State and County Officers (Primary Appendices)

**NOTE REGARDING CERTAIN STATUTES AND GOVERNMENTAL ACTIONS THAT RELATE TO THE FEDERAL CENSUS: Pursuant to HB 2025 (2021, R.S.), the population figures from the 2010 federal census will continue to apply with respect to a statute that applies to a political subdivision having a certain population according to the most recent federal census until September 1, 2023. The bill specifies that a statute does not apply to a political subdivision to which the statute did not apply under the 2010 federal census, regardless of whether the political subdivision has the population prescribed by the statute according to the 2020 federal census.**

## 1. Note on Campaign Information

Under Title 15 of the Texas Election Code, candidates running for office must file campaign contribution and expenditure reports. For further information and all questions about such disclosure filings, campaign finance, and political advertising, please contact the Texas Ethics Commission at 201 E. 14th, 10th Floor, Austin, Texas 78701; call 512-463-5800; or access their website. Candidates filing for federal offices should contact the Federal Elections Commission toll-free at 1-800-424-9530 or visit their website.

## 2. Note on Statutory and Administrative Code References

Unless otherwise indicated, all references are to the Texas Election Code. The county election officer is either the county clerk, the county elections administrator, or the county tax assessor-collector, depending

1

STATE062358

on the actions of the county commissioners court. (Secs. 31.031, 31.071 & 31.091). The county voter registrar is either the county clerk, the county elections administrator, or the county tax assessor-collector, depending on the actions of the county commissioners court. (Secs. 12.001, 12.031, 31.031 & 31.071).

Any references to the Texas Administrative Code are cited to the relevant section of the "T.A.C."

## 3. Note on Web Posting Requirements

In the 2021 Regular Session, the 87th Legislature enacted SB 1116, which created additional requirements regarding information that a county must post on its website for elections held by a county or elections for any local political subdivision in which the county has contracted to provide election services. While these statutory web posting requirements do not specifically apply to primary elections, **we strongly recommend that you post this information for any primary election in which the county has contracted to provide election services.**

Not later than the 21st day before election day, a county that provides election services for a primary election should post the following information related to that upcoming primary election:

- The date of the election;
- The location of each polling place;
- Each candidate for an elected office on the ballot; and
- Each measure on the ballot. (Sec. 4.009).

In addition**,** a county that provides election services for a primary election should post the following information **as soon as practicable after the election.** This information should be accessible without having to make more than two selections or view more than two network locations after accessing the county's home page. The information on the website should include:

- the results of each election;
- the total number of votes cast;
- the total number of votes cast for each candidate or for or against each measure;
- the total number of votes cast by personal appearance on election day;
- the total number of votes cast by personal appearance or mail during the early voting period; and
- the total number of counted and uncounted provisional ballots cast. (Sec. 65.016).

## 4. Note on Notice of Elections

**NOTE: There is no order of election in a primary election.** The primary election occurs automatically as a matter of law on the primary election dates outlined in the Texas Election Code.

The county clerk must post a notice of election on or before the 21st day before the election. (Secs. 4.003(b), 172.1112). (**NOTE:** There is no requirement to publish notice of the primary or runoff primary elections in a newspaper, and the cost of any such publication will not be reimbursed with primary funds.) For the Tuesday, March 1, 2022 Primary Election, this notice must be posted on the county's website (or, if the county does not have a website, on the commissioners court bulletin board) on or before Tuesday, February 8, 2022. For the Tuesday, May 24, 2022 Runoff Primary Election, the notice must be posted on or before Tuesday, May 3, 2022.

This notice **must** include:

1. The type and date of the election;
2. The location of the main early voting polling place, **including the street address, room number, and building name. The notice must designate which location is the main early voting polling place**;
3. The location of each polling place, **including the street address, room number, and building name**;

STATE062359

4. The hours the polls will be open;
5. The regular dates and hours for early voting by personal appearance;
6. The dates and hours of any Saturday or Sunday early voting;
7. The early voting clerk's official mailing address or street address at which the clerk may receive delivery by common or contract carrier, if different, phone number, e-mail address, and the Internet website, if the early voting clerk has an Internet website;
8. We **recommend** that the information regarding branch early voting locations be included as part of your notice; and
9. Any other information required by law.

(Secs. 4.004, 83.010, 85.004, 85.007).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 4.004 of the Code to require the notice of election to include the Internet website of the authority conducting the election. (Sec. 4.004(a)).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 83.010 of the Code to require the election notice to state the early voting clerk's official mailing address or street address at which the clerk may receive delivery by common or contract carrier, if different, phone number, e-mail address, and the Internet website, if the early voting clerk has an Internet website. (Sec. 83.010).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 85.004 of the Code to provide that an election notice must designate which location is the main early voting polling place. (Sec. 85.004).

**NOTE –** ANY notice of polling locations must include more detailed information regarding the polling locations including: the polling location's street address, any applicable suite or room number, and any applicable building name. (Sec. 1.021).

**Note regarding branch early voting locations**: The branch early voting locations are no longer a required part of the notice under the Texas Election Code. However, the early voting clerk must post a schedule stating the location of those branch early voting locations and the dates and hours that temporary branch voting will be conducted. That schedule must be posted on the county's website if the county has a website; otherwise, it must be posted on the commissioners court bulletin board. (Secs. 4.004, 85.067, 85.068).

**Notice for Consolidated Precincts**. If precincts are to be consolidated for the election, a notice of consolidated precincts must also be posted and may be included on the Notice of Election. (Secs. 4.003, 172.1112).

**Notice of Changed Polling Place**: If a different polling place is being used from the previous election held by the same authority, notice must be posted at the entrance of the previous polling place informing voters of the current polling place location, if possible, no later than the day before election day. (Sec. 43.062).

**Notice of Nearest Polling Places in Countywide Election:** EACH countywide polling place must post a notice, at that location, of the four nearest locations, by driving distance. (Sec. 43.007(o)). Notice of Four Nearest Countywide Polling Place Locations (PDF).

**NOTE:** The county must post a copy of the election notice on the county's website, if the county maintains a website. If the county does not maintain a website, then the county clerk will post a copy of the election notice on the bulletin board used for commissioners court meetings. (Sec. 4.003(b)).

**NOTE:** Notice of the early voting dates and hours must be posted continuously for 72 hours on the county's website before voting begins. If the county does not maintain a website, then the county clerk will post a copy of the election notice on the bulletin board used for commissioners court meetings. (Sec. 85.007).

**NOTE:** The county must post the notice of election and notice of consolidated precincts on the county's website if the county maintains a website. Under a prior version of the law, the notice was required to be posted on the party's website. (Sec. 172.1112).

STATE062360

## 5. Note on Regular Days and Hours for Voting at the Main Early Voting Location

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 85.005 to modify the required days and hours for early voting by personal appearance at the main early voting location.

For elections in which the county is serving as the early voting clerk, early voting must be conducted at the main early voting location on each weekday that is not a legal state holiday for a period of at least **nine (9) hours**. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM.

## 6. Note on Extended Early Voting Hours and Weekend Early Voting

The county election officer may also order early voting on a Saturday or Sunday, and determine the hours for such Saturday or Sunday early voting. This must be done by written order (PDF). Notice (PDF) of Saturday or Sunday early voting must be posted for at least 72 hours immediately preceding the first hour that voting will be conducted.

> **NOTE**: The election notice must be subsequently amended to include voting later ordered for ANY Saturday or Sunday and must be posted on the county's website, if maintained. (Sec. 85.007).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Sections 85.005 and 85.006 to modify the requirements relating to extended early voting hours and weekend early voting in a primary election.

**In a county with a population of 55,000 or more:**

- Voting in a primary election or general election for state and county officers shall be conducted at the main early voting location for at least 12 hours on each weekday of the last week of the early voting period. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM.
- Voting in a primary election or general election for state and county officers shall be conducted at the main early voting location on the last Saturday of the early voting period for at least 12 hours. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM.
- Voting in a primary election or general election for state and county officers shall be conducted at the main early voting location on the last Sunday of the early voting period for at least six hours. Voting may not be conducted earlier than 9:00 AM or later than 10:00 PM.

**In a county with a population of less than 55,000:**

- Voting in a primary election or general election for state and county officers shall be conducted at the main early voting location for at least 12 hours on each weekday of the last week of the early voting period if the early voting clerk receives a written request (PDF) submitted by at least 15 registered voters of the county requesting extended weekday hours. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM. The request must be submitted in time to enable compliance with Sec. 85.067. See Notice of Extended Weekday Voting at Main Early Voting Location for County Elections (PDF).
- On receipt of a written request submitted by at least 15 registered voters, voting shall be conducted at the main early voting location on the last Saturday of the early voting period for at least 12 hours. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM.
- On receipt of a written request submitted by at least 15 registered voters, voting shall be conducted at the main early voting location on the last Sunday of the early voting period for at least six hours. Voting may not be conducted earlier than 9:00 AM or later than 10:00 PM.

## 7. Note on Temporary Branch Locations

In a primary election, a certain number of temporary branch locations must be established depending on the population size of the county:

STATE062361

1. in a county with a population of 400,000 or more, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each state representative district containing territory covered by the election.

2. in a county with a population of 120,000 or more but less than 400,000, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each commissioners precinct containing territory covered by the election.

3. in a county with a population of 100,000 or more but less than 120,000, the early voting clerk **must** establish one or more early voting polling places in each commissioners precinct for which the early voting clerk receives a **timely filed written request by at least 15 registered voters of that precinct**.

   The temporary polling place(s) must remain open for each weekday of the early voting period that the main early voting polling place will be open.  The temporary branch polling place(s) must be open at least nine hours each day.  (Secs. 85.062, 85.064).

   **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 85.062 to provide that the location of temporary branch polling places in an election in which countywide polling places are used must be determined with the same methodology that is used for the location of countywide polling places.

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 85.064 and created Section 85.065 to modify the required dates and hours for temporary branch locations based on the population size of the county.

**Note for Counties with a Population of 100,000 or More:** Early voting at any temporary branch polling place **MUST** be conducted on the same days that voting is required to be conducted at the main early voting polling place under Section 85.005 of the Code and **MUST** remain open for at least eight hours each day. Early voting must be conducted for at least 12 hours on the last Saturday and at least 6 hours on the last Sunday of the early voting period at the mandatory temporary branch locations established under Section 85.062(d). (Secs. 85.005, 85.064).

   **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 85.068 of the Code to provide that if the early voting clerk is a county election officer, the clerk must post notice (PDF) for each election stating any dates and the hours that voting on Saturday or Sunday will be conducted under Sections 85.064(d) or 85.065(b). (Sec. 85.068).

**Note for Counties with a Population of Less than 100,000:** Early voting at any temporary branch polling place may be conducted on any days and during any hours of the period for early voting by personal appearance, as determined by the authority establishing the branch. However, voting at a temporary branch polling place must be conducted on at least two consecutive business days and for at least eight consecutive hours on each of those days. The authority authorized under Section 85.006 of the Code to order early voting on a Saturday or Sunday may also order, in the manner prescribed by that section, early voting to be conducted on a Saturday or Sunday at any one or more of the temporary branch polling places. The schedules for conducting voting are not required to be uniform among the temporary branch polling places. (Sec. 85.065).

   **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 85.068 of the Code to provide that if the early voting clerk is a county election officer, the clerk must post notice (PDF) for each election stating any dates and the hours that voting on Saturday or Sunday will be conducted under Sections 85.064(d) or 85.065(b). (Sec. 85.068).

   **NOTE**: There is no petition process to require weekend early voting at temporary branch locations in counties with a population of less than 100,000.  However, the early voting clerk may voluntarily order weekend early voting at those temporary branch locations by written order if they choose to do so.

## 8. Note on Joint Primaries

STATE062362

In many Texas counties, the commissioners court, the county election officer, and the county chair of each political party holding a primary election in the county will sign a joint resolution agreeing to hold a joint primary. (Sec. 172.126(a)).

Joint primary elections are held in many Texas counties, with the political parties sharing election equipment, polling places, and a team of election workers in each polling place composed of an even number of workers from each political party. (Sec. 172.126; 1 T.A.C. Ch. 81, Subch. G).

The entries in this calendar are generally written in terms of primary elections being held separately rather than jointly. Unless indicated to the contrary, entries in this calendar are applicable whether a primary election is held separately or jointly. However, in a joint primary, the authority responsible for carrying out many of the activities associated with conducting an election will be the county election officer. (Sec. 172.126).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 31.124 of the Code to provide that the mandatory meeting between the county election officer and the county chair of each political party holding primary elections in the county must now include a discussion of whether to hold a joint primary election in the county.  (Sec. 31.124).

## 9. Note on Testing Tabulating and Electronic Voting Equipment

**Note on Ballot Testing:**

Once all candidate filing deadlines have passed, we recommend that you proof and test your ballot programming as soon as possible. Early testing will allow adequate time to locate any errors and make any necessary corrections in ballot programming. We also strongly suggest that you have candidates proof their names and offices before finalizing the ballot to avoid the necessity for last minute ballot corrections.

**Note on Logic and Accuracy Test:**

We recommend establishing a date to perform the first test of your electronic voting equipment (L&A, or Logic and Accuracy Test) as soon as possible. We recommend that this test be performed on a date that allows time to correct programming and retest, if necessary. A notice of this test must be published by the custodian of the electronic voting equipment at least 48 hours before the date of the test. That notice must be posted on the county's website if the county maintains a website; otherwise, it must be posted on the commissioners court bulletin board. (Sec. 129.023; Tex. Sec'y of State Election Advisory No. 2019-23). Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test. The L&A test must be conducted not later than 48 hours before voting begins on a voting system. (Sec. 129.023).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that if logic and accuracy testing is being conducted for a primary election, the general custodian of election records shall notify the county chair of the test at least 48 hours before the date of the test.  The county chair must confirm receipt of the notice.  (Sec. 129.023(b-1)).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.  (Sec. 129.023(c-1)).

**Note on Testing Tabulating Equipment:**

The automatic tabulating equipment used for counting ballots at a central counting station must be tested three times for each election. (Ch. 127, Subch. D). We recommend you test the equipment as soon as possible; early testing will allow adequate time to locate any errors and make any necessary corrections in programming. However, the first test **must be conducted at least 48 hours before** the automatic tabulating equipment is used to count ballots voted in the election. The second test shall be conducted immediately before the counting of ballots with the equipment begins. The third test must be conducted

STATE062363

immediately after the counting of ballots with the equipment is completed. Please note that the custodian of the automatic tabulating equipment must publish <u>notice</u> of the date, hour, and place of the first test in a newspaper at least 48 hours before the date of the test. Additionally, in a primary election, the custodian must notify the county chair 48 hours prior to the time of the test. (Sec. 127.096). The electronic files created from the L&A testing are what must be used for testing the tabulating equipment. (<u>Tex. Sec'y of State Election Advisory No. 2019-23</u>).

Precinct tabulators must also be tested in accordance with the procedures set forth in Chapter 127, Subchapter D of the Texas Election Code to the extent those procedures can be made applicable. (Sec. 127.152; <u>Tex. Sec'y of State Election Advisory No. 2019-23</u>).

Our recommendation is that both L&A testing and testing of the automatic tabulating equipment take place prior to ballots by mail being sent out. However, should there be a reason to delay testing, please be advised that L&A testing must be conducted at least 48 hours before voting begins on a voting system. This means that L&A testing should be completed before early voting and possibly, before election day, if your election day system is different than your early voting system. Additionally, the automatic tabulating equipment may not be used to count ballots voted in the election until a test is successful.  (See Chapters 127 and 129, Election Code.)

For more information on testing tabulating equipment used at the central counting station, please see Chapter 127, Subchapter D of the Election Code and <u>Tex. Sec'y of State Election Advisory No. 2019-23</u>. See Chapter 129, Subchapter B of the Election Code and <u>Tex. Sec'y of State Election Advisory No. 2019-23</u> **for other types of testing such as functionality tests, logic and accuracy tests, tests for central accumulators, etc.** Please see <u>Tex. Sec'y of State Election Advisory No. 2019-23</u> for additional information regarding voting system equipment access, security and preservation, and chain of custody.

## 10. Note on Conventions of Parties Holding Primary Elections

### Precinct Conventions

Time and Place. Section 174.022 of the Texas Election Code provides that precinct conventions may be held at a time and place determined by rules adopted by the state executive committee of a political party. If precinct conventions are held on general primary election day, the hour set for convening the conventions may not be earlier than 7:00 PM or later than 9:00 PM, but a convention may not convene until the last voter has voted at the precinct polling place. If precinct conventions are held on a day other than general primary election day, the county executive committee must set the hour for convening or a time frame in which the convention must convene. (Secs. 174.021 & 174.022).

> **NOTE:** Section 174.021(b) allows a political party to hold their precinct conventions during the county convention and at the same place as the county convention.

Notice Required: Section 174.023(a) requires the county chair to post a notice of the date, hour, and place for convening each precinct convention on the county or state party's Internet website or other Internet location easily found through a search engine. If the county party does not maintain an Internet website, the chair shall post the notice on the county commissioners court bulletin board. The notice must remain posted continuously for the 10 days immediately preceding the date of the convention. Because the convention times are not yet determined, this calendar does not show any deadlines for posting such notices. (Sec. 174.023(b)).

> **NOTE:** The county chair is no longer required to deliver written notice to the county clerk of the date, time and place of each precinct convention by the 10th day before the date of the conventions.

### County and Senatorial Conventions

Time and Place: Section 174.063(a) provides that the state executive committee by rule specifies the date the county and senatorial conventions will be held. Under Section 174.021 of the Texas Election Code, a

STATE062364

political party may by rule allow a county to hold precinct conventions before or during the county convention on the same day and at the same place as the county convention.

> **NOTE:** Section 174.021(b) allows a political party to hold their precinct conventions during the county convention and at the same place as the county convention.

Notice Required: Section 174.064(a) requires notice of the hour and date for convening each county convention to be posted electronically on the county or state party's Internet website or on the bulletin board used for posting notice of meetings of the commissioners court. The notice must remain posted continuously for the 10 days immediately preceding the date of the convention. Because the convention times are not yet determined, this calendar does not show any deadlines for posting such notices.

> **NOTE:** The county chair is no longer required to deliver written notice to the county clerk of the date, time and place of each precinct convention by the 10th day before the date of the conventions.

**State Conventions**

Section 174.092(a) of the Texas Election Code provides that the biennial state convention must be convened on a date selected by the state executive committee. The state convention date is no longer limited to one in June or July. Section 174.092(b) of the Texas Election Code continues to provide that the state executive committee must set the date of the state convention not later than the date the state chair delivers to the county chairs the certification of names for placement on the primary election ballot. *See* entry at <u>Wednesday, December 22, 2021</u>. Accordingly, this calendar does not show any deadline or time frame for holding the state convention. Notice of the date, hour, and place for convening the state convention must be posted by the state chair on the party's Internet website before the date of the party's precinct conventions under Section 174.093 of the Texas Election Code.

## 11. Note on Party Electoral Rules

Section 163.006(a) of the Texas Election Code provides that a rule on electoral affairs that is to become effective in a year in which the party will hold precinct conventions must be posted on the party's Internet website, as well as filed with Secretary of State, **not later than the 30th day before the date the party convenes its earliest precinct conventions**. It should be noted that the date of precinct conventions is no longer fixed by statute. (*See* **Note 10** above.) Accordingly, this calendar does not show any deadline for the posting or filing of such electoral rules.

## 12. Note on Accepting Voters with Certain Disabilities

An election officer may accept a person with a mobility problem that substantially impairs a person's ability to ambulate who is offering to vote before accepting others offering to vote at the polling place who arrived **before** the person. "Mobility problem that substantially impairs a person's ability to ambulate" has the meaning assigned by Section 681.001, Transportation Code. A person assisting an individual with a mobility problem may also, at the individual's request, be given voting order priority. <u>Notice</u> of the priority given to persons with a mobility problem that substantially impairs a person's ability to ambulate **shall** be posted:

1. at one or more locations in each polling place where it can be read by persons waiting to vote;
2. on the website of the Secretary of State; **and**
3. on each website relating to elections maintained by a county. (Sec. 63.0015).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that a qualified individual with a disability may request a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law. (Sec. 1.022).

The voting order priority notice required under Section 63.0015 **must** read as follows:

STATE062365

"Pursuant to Section 63.0015, Election Code, an election officer may give voting order priority to individuals with a mobility problem that substantially impairs the person's ability to move around. A person assisting an individual with a mobility problem may also, at the individual's request, be given voting order priority. Disabilities and conditions that may qualify you for voting order priority include paralysis, lung disease, the use of portable oxygen, cardiac deficiency, severe limitation in the ability to walk due to arthritic, neurological, or orthopedic condition, wheelchair confinement, arthritis, foot disorder, the inability to walk 200 feet without stopping to rest, or use of a brace, cane, crutch, or other assistive device."

The **recommended** time to include the voting order priority notice on a county website is when the Notice of Election is also posted on the website. (Sec 85.007(d)).  See <u>Note 4</u> regarding Notice of Elections.

## 13. Note Regarding Faxed or Emailed ABBMs and Faxed FPCAs

If an ABBM is faxed or emailed or if an FPCA is faxed, then the applicant **must** submit the ORIGINAL application BY MAIL to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA.** If the early voting clerk does not receive the original ABBM or FPCA by that deadline, then the emailed or faxed ABBM or faxed FPCA will be considered incomplete, and the early voting clerk may NOT send the applicant a ballot. The early voting clerk should retain a copy of the FPCA for their own records, but should send the FPCA submitted by the voter to the Voter Registrar for registration purposes. (Sec. 84.007).

If a voter faxes or emails the ABBM or faxes the FPCA, the date the early voting clerk receives the fax or email is considered the date of submission. Essentially, the faxed or emailed form serves as a place-holder for the voter. Therefore, a voter whose application was faxed or emailed by the 11th day before election day (the deadline), and whose original application is received on or before the 4th business day after that date, would still be entitled to receive a ballot for the election (if otherwise eligible). The early voting clerk will have to hold the faxed or emailed ABBM or faxed FPCA until the clerk receives the original, and would only send the voter a ballot if the original is received by the 4th business day after the faxed or emailed ABBM or faxed FPCA was received. *See* <u>Tex. Sec'y of State Election Advisory No. 2018-02.</u>

The requirement to mail the original application does not apply to an **emailed** FPCA, but does apply to a faxed FPCA.

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 84.008 of the Code to provide that an applicant for a ballot to be voted by mail may submit the application by delivering it in person to the early voting clerk if the application is submitted not later than the deadline provided by Section 84.007(c) of the Code. This means that effective September 1, 2021, voters may now personally deliver their ABBM or FPCA to the early voting clerk not later than the close of regular business in the early voting clerk's office or 12 noon, whichever is later, on the 11th day before election day (unless that day is a Saturday, Sunday, or legal state or national holiday, in which case the last day is the first preceding regular business day). (Sec. 84.008).

## 14. Note on Opportunity to Correct Defects in Mail Ballots

**NEW LAW: Pursuant to SB 1 (2021, 2nd C.S.), effective December 2, 2021, the early voting ballot board, or signature verification committee (if one is appointed), will need to provide voters voting a**

9

ballot by mail the opportunity to correct certain defects in the voter's carrier envelope containing the voter's ballot.

**Early Voting Ballot Board:** Section 87.0411 provides a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after an early voting ballot board discovers the defect and before the board decides whether to accept or reject a timely delivered ballot under Section 87.041, the board shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the board determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the board determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the board may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the board takes one of the actions described above, the board must take that action with respect to each ballot in the election that to which these options apply. Poll watchers are entitled to observe these activities by the early voting ballot board.

**Signature Verification Committee (if appointed):** Section 87.0271 provides a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after a signature verification committee discovers the defect and before the committee decides whether to accept or reject a timely delivered ballot under Section 87.027, the committee shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the committee determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the committee determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the signature verification committee may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the signature verification committee takes one of the actions described above, the committee must take that action with respect to each ballot in the election that to which these options apply. Poll watchers are entitled to observe these activities by the signature verification committee.

The Secretary of State is authorized to prescribe any procedures necessary to implement Sections 87.0271 and 87.0411. (Secs. 87.0271(f), 87.0411(f)). The Secretary of State will issue such procedures prior to the March 2022 primary.

## 15. Note on Deadlines for Vacancies and Replacement Nominees for the General Election for State and County Officers (Primary Appendices)

While most public offices are filled at the expiration of the term for that office, vacancies will occasionally occur in the middle of a term of office.   The Election Code outlines specific procedures that determine whether that office will be placed on the ballot in the following November general election for state and county officers, and if so, whether the party's nominees for that office will be selected through the primary election process or whether nominations will be made by the party executive committees.

In addition, certain candidacy issues during the primary election process may result in situations where the party's nominee for a public office becomes vacant before the November general election for state and county officers.  The Election Code outlines specific rules for when and how those vacancies in nomination may be filled by a political party.

For more information on these rules and deadlines, please see our advisory on Deadlines for Vacancies and Replacement Nominees for the General Election for State and County Officers (Primary Calendar Appendices).

## Calendar of events

STATE062367

## September

**Wednesday, September 1, 2021**

*Recommended* date that the voter registrar forwards a list of voters who have indicated an interest in working as an election judge to the county chair. (Sec. 13.004(c-1)).

**Tuesday, September 14, 2021 (90th day before regular filing deadline)**

First day to file an application (PDF) for the office of precinct chair. (Sec. 172.023(b)). County chair must review each application within five days after the date the application is received.  If the application is rejected, the chair must immediately deliver written notice of the reason for the rejection to the candidate. (Sec. 141.032).

> **NOTE – NEW LAW:** SB 13 (2021, 2nd C.S.) provides that the election for the office of precinct chair in 2022 will be held on the same date as the runoff primary election. SB 13 further states that precinct chairs will be elected by plurality vote (rather than majority vote) in 2022.  SB 13 also directs the Secretary of State to set the dates of the filing period for precinct chair elections. SB 13 takes effect on December 2, 2021. Before that date, the Texas Election Code's existing provisions regarding the opening of the precinct chair candidate filing period remain in place.  Accordingly, the office of precinct chair will have a split filing period in accordance with Section 172.023 of the Texas Election Code and SB 13. Candidates for the office of precinct chair may file their application during the first filing period (September 14, 2021 – December 1, 2021) or during the second filing period (dates to be announced in a future advisory).

## October

**October 2021**

Secretary of State must email each state and county chair that has provided an email address rules regarding primary election financing.  The Secretary of State will also post these rules on the Secretary of State's website. (Sec. 173.010).

## November

**Saturday, November 13, 2021 (30th day before statutory regular filing deadline)**

First day to file an application for a place on the primary ballot (PDF) for an office other than precinct chair. (Sec. 172.023(b)).

> **NOTE – NEW LAW:** HB 4555 (2021, R.S.) amended Sections 141.031 and 141.039 of the Code by modifying the application requirements related to a candidate's final felony conviction status and what must be included on the candidate application form. Specifically, effective September 1, 2021, candidates will need to provide an indication on their candidate application that the candidate has either not been finally convicted of a felony, or if so convicted, has been pardoned or otherwise released from the resulting disabilities. A person who has been convicted of a felony will need to include with the application proof that the person has been pardoned or otherwise released from the resulting disabilities. The application form must include a statement informing candidates of the requirement to submit this information. Further, the official application form will need to include a statement informing candidates that knowingly providing false information on their application related to their final felony conviction status is a Class B misdemeanor. (Secs. 141.031, 141.039).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Sections 143.004 and 144.003 of the Code to provide that candidate applications, other than those that must be accompanied by a filing fee, may be filed via email. The application must be a scanned copy of the candidate application and must be sent to the filing authority's designated email address for accepting applications. (Secs. 143.004, 144.003).

STATE062368

First day to file a <u>Declaration of Intent to Run as an Independent Candidate (PDF)</u> with appropriate filing authority. (Sec. 142.002).

**Saturday, November 20, 2021 (30th day before write-in candidate filing deadline)**

First day to file a Declaration of Write-in Candidacy for the Office of County and/or Precinct Chair as a write-in candidate for the office of precinct chair or county chair, if the county executive committee has decided to authorize write-in candidates. (Secs. 171.0231, 146.025).

**Friday, November 26, 2021 (72 hours before meeting date of county election officer and county chairs)**

Deadline to provide notice of meeting under Section 31.124, if the meeting is to be held on Monday, November 29, 2021, as recommended. The county election officer must deliver written notice of time and place of meeting between county election officer and county chair on or before this date. *See* entry under <u>Monday, November 29, 2021</u>. Notice may be delivered by U.S. mail, electronic mail, or other method of written communication. (Sec. 31.124).

**Monday, November 29, 2021**

*Recommended* day by which the county election officer in each county should hold the mandatory meeting with the county chair of each political party to discuss for the primary election whether a joint primary election will be held and the plan for implementation of Subchapters A, B, C, and D of Chapter 87 concerning the establishment of the early voting ballot board, the delivery of materials to the early voting ballot board, the acceptance of mail ballots, the manual counting of early voting ballots. (Sec. 31.124).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 31.124 to require that the mandatory meeting between the county election officer and the county chair include a discussion of whether to hold a joint primary election in the county.

*Recommended* date by which county chairs who wish to conduct a joint primary should meet with the county election officer to determine whether to enter into a joint resolution to conduct the primary, and if the determination is in the affirmative, to discuss potential consolidation or combination of election precincts, to determine the estimated number of election judges and clerks, members of the early voting ballot board, and central counting station personnel to be appointed from the parties, and to decide which voting system and ballot formats are to be used. (Sec. 172.126).

*Recommended* date by which county chairs should meet with the county election officer to discuss whether a contract for election services should be entered into, even if a joint primary will not be conducted. The terms of such a contract, potential consolidation or combination of election precincts, the estimated number of election judges and clerks, members of the early voting ballot board, and central counting station personnel that will be needed and how they will be obtained, and which voting system and ballot formats will be used should be discussed. (Secs. 31.092, 31.094 & 172.1113).

*Recommended* date by which county chairs should submit names of persons eligible to serve as deputy early voting clerks for the primary election. (Sec. 85.0091).   The early voting clerk will select elections officers for the main and branch early voting polling places from lists provided by the county chair. However, the early voting clerk will set the actual deadline for the submission of those lists. This recommended deadline serves to provide adequate time for chairs to compile lists and the election officials to be notified.

# December

**Wednesday, December 1, 2021 (day before effective date of SB 13 and SB 1)**

Last day to file application for a place on the ballot for the office of precinct chair during the first filing period. (Secs. 172.023, 41.0075).

STATE062369

**NOTE – NEW LAW:** SB 13 (2021, 2nd C.S.) provides that the election for the office of precinct chair in 2022 will be held on the same date as the runoff primary election. SB 13 further states that precinct chairs will be elected by plurality vote (rather than majority vote) in 2022. SB 13 also directs the Secretary of State to set the dates of the filing period for precinct chair elections. SB 13 takes effect on December 2, 2021. Before that date, the Texas Election Code's existing provisions regarding the opening of the precinct chair candidate filing period remain in place. Accordingly, the office of precinct chair will have a split filing period in accordance with Section 172.023 of the Texas Election Code and SB 13. Candidates for the office of precinct chair may file their application during the first filing period (September 14, 2021 – December 1, 2021) or during the second filing period (dates to be announced in a future advisory).

**Saturday, December 4, 2021 (day after 10th day before date of regular filing deadline)**

If a vacancy for an unexpired term in an office of the state or county government occurs after the 10th day before the date of the regular filing deadline, but on or before the 5th day before the date of the regular filing deadline (on or after December 4 and on or before December 8), an application for the unexpired term is subject to an extended filing deadline. *See* entry at **Monday, December 20, 2021**. (Sec. 202.004(a), (c)).

**Wednesday, December 8, 2021 (5th day before regular filing deadline)**

Last day a vacancy for an unexpired term in an office of the state or county government may occur and appear on the primary ballot. (Sec. 202.004(a)). An application for such a vacancy is subject to an extended filing deadline. *See* entry at **Monday, December 20, 2021**. (Sec. 202.004(a), (c)).

**Thursday, December 9, 2021**

*Recommended* time frame in which the commissioners court should approve resolution to have a joint primary. *See* entry under <u>Monday, November 29, 2021</u>. (Sec. 172.126(a)).

**Sunday, December 12, 2021 (last day before regular filing deadline)**

Deadline for the county chair (or secretary of the county executive committee) **to post on the political party's Internet website or in the location where a candidate files for a place on the ballot** a <u>notice (PDF)</u> containing the address at which the county chair and secretary of the county executive committee will be available to receive applications on the last day for filing an application. This deadline is not extended under Section 1.006. (Sec.172.022(b)).

**NOTE:** If the party secretary is accepting applications at a second location in addition to the county chair, the notice must include both locations.

**Monday, December 13, 2021 (2nd Monday in December)**

6:00 PM – Deadline for applications for a place on the general primary election ballot to be **received** by the state or county chair, as applicable to the office. (Secs. 172.022(a), 172.023(a)). Postmark by this deadline without actual receipt by the state or county chair is **not** sufficient. (Sec. 172.021(c)).

**NOTE – NEW LAW:** HB 4555 (2021, R.S.) amended Sections 141.031 and 141.039 of the Code by modifying the application requirements related to a candidate's final felony conviction status and what must be included on the candidate application form. Specifically, effective September 1, 2021, candidates will need to provide an indication on their candidate application that the candidate has either not been finally convicted of a felony, or if so convicted, has been pardoned or otherwise released from the resulting disabilities. A person who has been convicted of a felony will need to include with the application proof that the person has been pardoned or otherwise released from the resulting disabilities. The application form must include a statement informing candidates of the requirement to submit this information. Further, the official application form will need to include a statement informing candidates that knowingly providing false information on their application related to their final felony conviction status is a Class B misdemeanor. (Secs. 141.031, 141.039).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Sections 143.004 and 144.003 of the Code to provide that candidate applications, other than those that must be accompanied by a filing fee, may be filed via email. The application must be a scanned copy of the candidate application and must be sent to the filing authority's designated email address for accepting applications. (Secs. 143.004, 144.003).

NOTE: This deadline is also applicable to applications for a place on the primary election ballot to fill a vacancy for an unexpired term in an office of the state or county government that occurred on or before the 10th day before the date of the regular filing deadline (December 3, 2021). (Sec. 202.004(b)).

6:00 PM – Deadline for minor party candidates to file applications to be nominated by convention. (Sec. 181.033(a)).

6:00 PM – Deadline for independent candidates to file declaration of independent candidacy with appropriate filing authority. (Sec. 142.002).

Deadline for each party chair to deliver lists of names of election judges and clerks, early voting ballot board members, and central counting station personnel (if applicable) to the county election officer if joint primary election is going to be conducted. (Sec. 172.126(c); 1 T.A.C. § 81.148).

**Tuesday, December 14, 2021 (1st day after the regular filing deadline)**

If a candidate withdraws, dies or is declared ineligible by this date, their name is omitted from the primary ballot. (Secs. 172.057 & 172.058(a)).

**Monday, December 20, 2021 (7th day after regular filing deadline)**

6:00 PM – Deadline for the state or county chair, as applicable, to **receive** applications for a place on the general primary election ballot for an unexpired term for a vacancy in an office of the state or county government that occurs after the 10th day (December 3, 2021) before the date of the regular filing deadline, but on or before the 5th day (December 8, 2021) before the date of the regular filing deadline. (Secs. 1.006 & 202.004(a), (c)). (The deadline is extended to the next regular business day which is Monday, December 20, 2021 due to the **5th day after the regular candidate filing deadline falling on Saturday, December 18, 2021. (Sec. 1.006).**)

6:00 PM – Extended deadline for the state or county chair to receive an application for a place on the general primary election ballot for an office if a candidate who has made an application that complies with the applicable requirements (Sec. 172.054(b)):

- dies on or after the fifth day before the date of the regular filing deadline (December 8, 2021) and on or before the first day after the date of the regular filing deadline (December 14, 2021);
- holds the office for which the application was made and withdraws or is declared ineligible on the date of the regular filing deadline (December 13, 2021) or on the first day after the date of the regular filing deadline (December 14, 2021); or
- withdraws or is declared ineligible on the date of the regular filing deadline (December 13, 2021) or on the first day after the date of the regular filing deadline (December 14, 2021), and at the time of the withdrawal or declaration of ineligibility no other candidate has made an application that complies with the applicable requirements for the office sought by the withdrawn or ineligible candidate.

(The deadline is extended to the next regular business day which is Monday, December 20, 2021 due to the **5th day after the regular candidate filing deadline falling on Saturday, December 18, 2021. (Sec. 1.006).**)

NOTE: An application filed by mail with the state chair in a situation where the deadline is extended due to death, withdrawal, or ineligibility of a candidate under the circumstances outlined above is not timely if received later than 5:00 PM on the extended deadline. (Sec. 172.054(b)).

STATE062371

6:00 PM – Deadline to file a declaration of write-in candidacy for county chair or precinct chair if authorized by the county executive committee. (Secs. 171.0231, 1.006).

**Tuesday, December 21, 2021 (8th day after regular filing deadline)**

Deadline for county and state chairs to electronically submit candidate information and status for posting on the Secretary of State's website.

Recommended deadline for each state chair to certify to Secretary of State for placement on the general primary election ballot the name of each candidate who files with the chair an application that complies with Section 172.021(b). (Sec. 172.028(a)).

**Wednesday, December 22, 2021 (9th day after regular filing deadline)**

Deadline for state chair to notify county chair in each county in which the candidate's name is to appear on the ballot that the certification of candidates has been posted by the Secretary of State. (Sec. 172.028(b)).

Date by which Secretary of State anticipates posting on Secretary of State's Internet website that is viewable by the public the certified list of candidates who filed, provided by each chair. (Sec. 172.028(a)).

Deadline for chair to post notice on the party's website 24 hours preceding the date, hour, and place of ballot drawing if ballot drawing is conducted on December 23, 2021. If the party does not maintain an Internet website, the party must post notice on the commissioners court bulletin board. All candidates who provide an email address on their filing form must be notified electronically of drawing. (Sec. 172.082(e)).

Deadline for state executive committee to set date, hour, and place for convening state convention. (Sec. 174.092(b)). (*See* **Note 10** prior to Calendar of Events.)

**Thursday, December 23, 2021 (10th day after regular filing deadline)**

Deadline for county chair or county chair's designee to conduct drawing for candidate order on ballot (unless committee provides by resolution that the county executive committee is to conduct drawing). (Sec. 172.082(c)).

> **NOTE:** Section 172.082(b) allows the county chair to designate another individual to conduct the ballot drawing. To be eligible to act as the county chair's designee, the individual must be a member of the county executive committee. If no member of the county executive committee is available, then a resident of the county who is affiliated with the same political party may serve as the county chair's designee.

**Wednesday, December 29, 2021 (62nd day before election day)**

Recommended date for county chair to submit the ballot format to primary committee for its approval, if primary committee has been established. (Sec. 172.083).

Recommended date for primary committee to approve ballot format, if primary committee has been established.

Recommended date for county chair to order ballots.

Recommended last day to order election supplies (other than ballots).

Recommended date to order the lists of registered voters from the county voter registrar. (Sec. 18.006).

**Friday, December 31, 2021 (60th day before primary election day; New Year's Eve)**

STATE062372

Deadline for printers/vendors to register with the Secretary of State to print primary ballots. (Sec. 51.013).

Recommended last day for the county chair of each political party to appoint presiding and alternate judges for each precinct in which the primary election will be held in the county, presiding judge and alternate presiding judge for the early voting ballot board, presiding judge of the central counting station, and personnel for the central counting station. (Secs. 32.006, 32.008, 87.002 & 127.002-127.005). Written notice of the appointments must be given to the judges. (Sec. 32.009).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 87.002 to require the early voting ballot board to have an alternate judge. The alternate judge is appointed in the same manner as the presiding judge.

Recommended last day for the county election officer to appoint presiding and alternate judges from the lists provided by each county chair and to appoint the election clerks in a **joint primary** election. (Sec. 172.126(c)). Written notice of the appointments must be given to the judges. (Sec. 32.009).

**NOTE:** General eligibility requirements for election judges and clerks are found in Subchapter C, Chapter 32 of the Texas Election Code. General eligibility requirements for central counting station personnel are found in Sections 127.002-127.006 of the Texas Election Code. The presiding judge appoints the clerks, but not more than the maximum set by the political party, consistent with Secretary of State's primary finance rules; however, the alternate judge must serve as one of the clerks. (Secs. 32.031, 32.032, & 32.033; 1 T.A.C. § 81.117).

## January

**Saturday, January 1, 2022 (59th day before election day; New Year's Day)**

First day for voters to submit a **regular application** for ballot by mail for an election in 2022. The application is considered submitted at the time of receipt. (Secs. 84.001(e), 84.007).

First day for voters to submit an **annual application** for ballot by mail for all elections in calendar year 2022. The voter must be 65 years of age or older on election day or disabled in order to submit an annual application. The application is considered submitted at the time of receipt. (Secs. 84.001(e), 84.007, 86.0015).

**Monday, January 10, 2022 (50th day before election day)**

Last day to publish notice for testing of automatic tabulation equipment testing and logic and accuracy testing (L&A testing) of a voting system if test will be completed by recommended deadline of Wednesday, January 12, 2022. Notice of the public tests must be published at least 48 hours before the test begins. The notice must be posted on the county's website if the county maintains a website.  If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board.  Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test.  The county chair must confirm receipt of the notice. (Secs. 127.093, 127.096, 129.022, 129.023).

Recommended deadline for county chair of party holding a primary election to procure from voter registrar a set of precinct lists of registered voters (also supplemental lists and correction lists, if necessary) to deliver to county election officer for use in conducting early voting by mail and in person in the party's general primary. (Secs. 18.001(d) & 18.002-18.004).

Deadline to challenge the filing of an application for a place on the ballot as to form, content, and procedure.  (Sec. 172.0223).

**Wednesday, January 12, 2022 (48th day before election day)**

STATE062373

*Recommended* date to conduct the first test of the automatic tabulating equipment and for logic and accuracy (L&A test) test on voting system. (Secs. 127.093, 127.096. 129.022, 129.023). The SOS recommends you complete your first round of testing prior to mailing your mail ballots if those ballots will be counted using automatic tabulation equipment.  If you conduct your first round of testing by this date, you must publish notice of the test 48 hours prior to testing. See Note 9, above.

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that if logic and accuracy testing is being conducted for a primary election, the general custodian of election records shall notify the county chair of the test at least 48 hours before the date of the test.  The county chair must confirm receipt of the notice.  (Sec. 129.023(b-1)).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered.  (Sec. 129.023(c-1)).

**Saturday, January 15, 2022 (45th day before primary election day)**

Deadline to mail ballots to military or overseas voters who already submitted their ballot requests via a federal postcard application (FPCA) or via a standard application for ballot by mail (ABBM) and indicated that they are outside the United States. If the early voting clerk cannot meet this 45th-day deadline, the clerk **must** notify the Secretary of State within 24 hours. (Sec. 86.004(b)).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE: The 45th Day deadline under Section 86.004(b) is *not* extended by Section 1.006 to the next business day. The ballots covered by Section 86.004(b) should be sent out on or before Saturday, January 15, 2022.**

**Reminder Regarding FPCAs and Overseas ABBMs:** If the early voting clerk receives an FPCA (from a military or non-military voter) or an ABBM from an overseas voter after the 45th day deadline, then the ballot **must** be mailed within seven days after the early voting clerk **receives** the FPCA or ABBM. (Secs. 86.004(b), 101.104).

> **Reminder:** In regards to mail ballots for other voters (not military voters using an FPCA or overseas voters using an FPCA or ABBM), the early voting clerk **must** mail a ballot not later than the 7th day after the later of: (1) the date the early voting clerk has accepted a voter's application for a ballot by mail or (2) the date the ballots become available for mailing. However, if the 7th day falls earlier than the 37th day before election day, the voter's mail ballot must be mailed no later than the 30th day before election day. (Sec. 86.004(a)). This means that for every application that comes in before the 37th day before election day, the balloting materials must be mailed by the 30th day before election day. Any application that comes in after the 37th day before election day will follow the 7-day timeline in Sec. 86.004.

**NOTE:** Information on the early voting roster for both early voting in person and early voting by mail must be made available for public inspection and on the county's website if the county clerk or elections administrator is serving as the early voting clerk. The early voting roster shall be posted by 11:00 AM on the day after the information is entered on the roster (for early voting in person) or by 11:00 AM on the day after the early voting clerk receives a ballot voted by mail. (Sec. 87.121).

STATE062374

**NOTE – NEW LAW:** HB 1622 (2021, R.S.) amended Section 87.121 of the Code to provide that if an early voting clerk fails to post their early voting rosters in accordance with Section 87.121, a person registered to vote in the county where the early voting clerk is conducting early voting may file a complaint with the Secretary of State regarding the early voting clerk's noncompliance. The Secretary of State by rule shall create and maintain a system for receiving and recording these complaints. (Sec. 87.121).

**Monday, January 17, 2022 (43rd day before primary election day; MLK Day)**

**Tuesday, January 18, 2022 (42nd day before primary election day)**

Deadline for state chairs and county chairs to submit itemized estimate and request for state funds to cover general primary expenses. (Sec. 173.081(c)(2)). Notice of consolidation of county election precincts, if any, must accompany the itemized estimate. (Sec. 173.081(f)). (The deadline is extended to the next regular business day, due to the **45th day before primary election day falling on Saturday, January 15, 2022 and due to the fact that Monday, January 17, 2022 is MLK Day, a legal holiday**. (Sec. 1.006).)

**NOTE**: The state chair (or the state chair's designee) may submit this statement on behalf of the county chair if the county chair (1) requests the state chair to submit the statement on the county chair's behalf, or (2) fails to submit the statement by the deadline. (Sec. 173.081(g)).

**Friday, January 28, 2022 (32nd day before primary election day and 12th day before first day signature verification committee may convene)**

Recommended date for early voting clerk to issue order calling for appointment of signature verification committee for the primary election, if the early voting clerk determines that a committee is to be appointed. (Sec. 87.027).

If the signature verification committee will start meeting on Wednesday, February 9, 2022, **recommended date** early voting clerk should post copy of the order calling for appointment of the signature verification committee. (Saturday, January 29, and Sunday, January 30, 2022 are the 10th and 11th days before the first day the committee may meet.) The notice must remain posted continuously for at least 10 days before the first day the committee meets. The notice must be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board. (Sec. 87.027).

**Monday, January 31, 2022 (29th day before primary election day)**

Last day to register to vote or make a change of address effective for the Tuesday, March 1, 2022 primary election. (Secs. 13.143, 15.025).

**NOTE** - A Federal Postcard Application (FPCA) also serves as an application for **permanent** registration under Texas law **unless the voter marked "my intent to return is uncertain" (2019 form), or "my return is uncertain" (2017 form)**. The early voting clerk should make a copy (for mailing ballots, keeping records, etc.), then should forward the original to the county voter registrar, as soon as practicable. (Sec. 101.055; 1 T.A.C. § 81.40(a), (c)(2)).

## February

**Wednesday, February 2, 2022 (5th day after recommended date to order signature verification committee)**

If the early voting clerk issues order calling for appointment of signature verification committee, this is the deadline for the county chair to appoint the members to the committee. *See* entry under Friday, January 28, 2022. (Sec. 87.027).

STATE062375

**Tuesday, February 8, 2022 (21st day before primary election day)**

Last day for county clerk to post notice of the general primary election on the county's website. The notice must also be posted on the party's website if the party maintains a website.  If the party does not maintain a website, the notice must be posted on the commissioners court bulletin board. (Secs. 4.003 & 172.1112).

> **NOTE:** Section 172.1112 requires the county to post the notice of election and notice of consolidated precincts on the county's website if the county maintains a website.  Under the prior version of the law, the notice was required to be posted on the party's website.

> **NOTE:** Section 172.1112 requires that the **county clerk**, rather than the county chair, post the notice of election for the primary election.

**NOTE – NEW LAW:** SB 1116 (2021, R.S.) created additional requirements regarding information that a county must post on its website for elections held by a county or elections for any local political subdivision in which the county has contracted to provide election services.  While these statutory web posting requirements do not specifically apply to primary elections, **we strongly recommend that you post this information for any primary election in which the county has contracted to provide election services.**  Accordingly, the following information should be posted on the county's website not later than the 21st day before election day:

- The date of the election;
- The location of each polling place;
- Each candidate for an elected office on the ballot; and
- Each measure on the ballot. (Sec. 4.009).

**Wednesday, February 9, 2022 (20th day before primary election day; 5th day before the first day of early voting)**

Deadline for a person who is not permanently registered to vote to submit a postmarked FPCA, in order to receive a full ballot by mail for the March 1, 2022 primary election. A person who is **not** permanently registered to vote and submits a postmarked FPCA after this date (20th day) and before the deadline to submit an application for ballot by mail, is not entitled to receive a ballot for any non-federal election. *See* Monday, February 14, 2022 entry for timeliness of an FPCA received without a postmark. (Secs. 101.052(e), 101.052(i)(2)).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052)

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001)

> **NOTE:** Be sure to check the list of registered voters for permanent registration status. Also, state law authorizes an FPCA to also serve as an application for **permanent registration**; therefore, the person might be permanently registered based on a prior FPCA. Even if the FPCA arrives too late for a particular election, the early voting clerk will still need to forward the original FPCA to the county voter registrar, after making a copy for your early voting clerk's use (mailing ballots, etc.) and records **unless the voter marked "my intent to return is uncertain" (2019 form), or "my return is uncertain" (2017 form)**, in which case, it will not serve as a permanent registration. (Sec. 101.055; 1 T.A.C. § 81.40).

> **NOTE: Overseas (non-military) voters** marking the FPCA **"my intent to return is uncertain"** (2019 form), **or "my return is uncertain" (2017 form)** receive a federal ballot **only** regardless of the date filed. (Chapter 114).

STATE062376

Last day to publish notice of L&A test if test will be held on Friday, February 11, 2022, if testing was not already completed by January 12, 2022. Notice of the public L&A Test must be published at least 48 hours before the test begins.  The notice must be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board.  Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test.  The county chair is required to confirm receipt of the notice. (Secs. 129.001, 129.023). See Note 9, above.

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that if logic and accuracy testing is being conducted for a primary election, the general custodian of election records shall notify the county chair of the test at least 48 hours before the date of the test.  The county chair must confirm receipt of the notice.  (Sec. 129.023(b-1)).

First day that the signature verification committee, if one is appointed, may begin operating. (Sec. 87.027).

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0271 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after a **signature verification committee** discovers the defect and before the committee decides whether to accept or reject a timely delivered ballot under Section 87.027, the committee shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the committee determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the committee determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the signature verification committee may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the signature verification committee takes one of the actions described above, the committee must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0271). *See* Note 14.

Last day to post branch early voting schedule, which should be posted continuously from the fifth day before the start of the early voting period until the last day of the early voting period.  The schedule must include the location of each permanent and temporary branch early voting location, and the dates and hours that voting will be conducted at temporary branch locations.  The schedule may also include the dates and hours of any weekend or extended early voting that will be conducted at permanent or temporary branch locations. (Sec. 85.067).

> **NOTE:** This schedule may be amended after posting to include additional temporary branch locations or additional dates and hours at those locations.  If any locations, dates, or hours are added, then the amended schedule must be posted at least five days before the start of voting at those additional locations or at least five days before the additional or extended hours at existing locations.  (Sec. 85.067).

**Thursday, February 10, 2022 — Friday, February 18, 2022 (19th — 11th day before primary election day)**

A person submitting an FPCA during this period who is **not** registered to vote is not entitled to receive a full ballot for the March 1, 2022 primary election, meaning that a person submitting an FPCA during this period is entitled to receive a federal ballot only (no state, district, or county offices), if not already a permanent registered voter.  (Secs. 101.052(f), 114.002, 114.004).  *See* entry below under Monday, February 14, 2022 (FPCA without a postmark). (Secs. 101.052(f) & 114.004(c)).

The early voting clerk is required to maintain a copy of this application since it may be used for other elections and forward the original to the voter registrar. (Secs. 84.007, 101.052(e), (f)).

STATE062377

**NOTE** - Be sure to check the list of registered voters for permanent registration status. Also, state law authorizes an FPCA to also serve as an application for **permanent registration**; therefore, the person might be permanently registered based on a prior FPCA. Even if the FPCA arrives too late for a particular election, the early voting clerk will still need to forward the original FPCA to the county voter registrar, after making a copy for your early voting clerk's use (mailing ballots, etc.) and records unless the voter marked "**my intent to return is uncertain**" (2019 form), or "**my return is uncertain**" (2017 form) in which case, it will not serve as a permanent registration. (Sec. 101.055, 1 T.A.C. § 81.40).

**NOTE - Overseas (non-military) voters** marking the FPCA "**my intent to return is uncertain**" (2019 form), or "**my return is uncertain**" (2017 form) receive a federal ballot **only** regardless of the date filed. (Chapter 114).

**Friday, February 11, 2022 (18th day before primary election; last business day 48 hours before start of early voting in person)**

Last day to conduct public L&A test of a voting system. We highly **recommend** that this test is done on an earlier date to allow time for corrections to programming, if necessary. (See Note 9, above). Per Section 129.023, the L&A test shall be conducted not later than 48 hours before voting begins on such voting systems, assuming that the voting system will first be used for early voting in person.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered. (Sec. 129.023(c-1)).

If a **defective application to vote early by mail** is received on or before this date, the early voting clerk must mail the applicant a new application with explanation of defects and instructions for submitting the new application. For defective applications received after this date and before the end of early voting by personal appearance, the early voting clerk must mail only the Notice of Rejected Application for Ballot by Mail and a statement that the voter is not entitled to vote early by mail unless he or she submits a sufficient application by the deadline, which is Friday, February 18, 2022. (Secs. 84.007(c), 86.008).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 86.001 to provide that if the information required by Section 84.002(a)(1-a) included on the application does not identify the same voter identified on the applicant's voter registration application, the clerk shall reject the application. (Sec. 86.001(f)). If an application is rejected under Section 86.001(f), the clerk shall provide notice of the rejection. The notice must include information regarding the ability to correct or add the required information through the online ballot by mail tracker described in Section 86.015(c). (Sec. 86.001(f-1)). If the applicant corrects the application for ballot by mail online and that application subsequently identifies the same voter identified on the applicant's voter registration application, the clerk shall provide a ballot to the voter. (Sec. 86.001(f-2)).

**Monday, February 14, 2022 (15th day before primary election day)**

First day to vote early in person. (Sec. 85.001(a)).

**NOTE:** The early voting period for the general primary election begins 17 days prior to election day, but because the first day of the early voting period falls on a weekend (Saturday, February 12, 2022), it is extended to the next regular business day, Monday, February 14, 2022. (Sec. 85.001(c)).

In a primary election, a certain number of temporary branch locations must be established depending on the population size of the county:

1. in a county with a population of 400,000 or more, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each state representative district containing territory covered by the election.

STATE062378

2. in a county with a population of 120,000 or more but less than 400,000, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each commissioners precinct containing territory covered by the election.

3. in a county with a population of 100,000 or more but less than 120,000, the early voting clerk **must** establish one or more early voting polling places in each commissioners precinct for which the early voting clerk receives a **timely filed written request by at least 15 registered voters of that precinct**.

The temporary polling place(s) must remain open for each weekday of the early voting period that the main early voting polling place will be open. The temporary branch polling place(s) must be open at least eight hours each day. (Secs. 85.062, 85.064).

NOTE – NEW LAW: SB 1 (2021, 2nd C.S.) amended Section 85.062 to provide that the location of temporary branch polling places in an election in which countywide polling places are used must be determined with the same methodology that is used for the location of countywide polling places.

NOTE – NEW LAW: (SB 1, 2nd C.S.) amended Section 85.005 to provide that early voting in person must be conducted at the main early voting location on each weekday of the early voting period that is not a legal state holiday and for a period of at least **nine (9) hours**, except that voting may not be conducted earlier than 6:00 AM or later than 10:00 PM. (Sec. 85.005(a)).

NOTE – NEW LAW: Temporary Branch Locations: Effective September 1, 2021, the rules for temporary branch locations differ based on the population size of the county. *See* Note 7 for additional information regarding temporary branch location days and hours.

NOTE – NEW LAW: SB 1 (2021, 2nd C.S.) amended Section 61.002 to provide that immediately before the opening of the polls on the first day of early voting and on election day, the presiding judge or alternate judge shall confirm that the public counters on each voting machine are set to zero and shall print the tape that shows that there are zero votes for each candidate or measure on the ballot. Each election judge and alternate judge shall sign the printed tapes. (Sec. 61.002).

If early voting by personal appearance is required to be conducted for extended hours or for weekend hours, the county voter registrar's office is required to remain open for providing voter registration information during the extended hours or weekend hours that the main early voting polling place is open for voting. (Secs. 12.004(d), 85.005(c) & 85.006(e)).

NOTE: The notice of precinct conventions must be posted continuously during the early voting period. Prior to opening the polls, the presiding judge of each precinct must post at each entrance to the building a notice of the time and place for convening the precinct, county, senatorial and state conventions. This notice must remain posted continuously during the early voting period and on election day. (Sec. 172.1111).

Deadline to receive an FPCA **without** a postmark. If an FPCA is received by this date **without** a postmark to prove mailing date, the early voting clerk will accept the FPCA and mail the applicant a full ballot even if the applicant is **not** a permanently registered voter but meets the requirements under Title 2 of the Election Code (unless the voter marks the FPCA form indicating **"my intent to return is uncertain"** (2019 form), **or "my return is uncertain"** (2017 form), in which case the voter receives a federal-only ballot). (Sec. 101.052(i)). *See* Note under entry for Wednesday, February 9, 2022.

Last day to notify election judges of duty to hold election (Writ of Election). The Writ of Election must be given to each presiding judge and include:

1. The judge's duty to hold the election;
2. The type and date of election;
3. The polling place location at which the judge will serve;
4. The polling place hours; and
5. The maximum number of clerks the judge may appoint.

STATE062379

(Sec. 4.007).

**NOTE – NEW LAW:** *Recommended date* for a signature verification committee (if appointed) that has discovered a defect in a voter's carrier envelope to return the voted ballot in the carrier envelope to the voter. (Sec. 87.0271).

> **NOTE:** If the committee determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the signature verification committee may notify the voter of the defect by **phone or email** and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. (Sec. 87.0271). *See* Note 14.

**Tuesday, February 15, 2022 (14th day before primary election day)**

Deadline to file a petition (PDF) to require the county early voting clerk in a county with a population less than 55,000 to conduct extended early voting on Saturday, February 19, 2022. Notice of weekend voting (PDF) must be posted beginning no later than Wednesday, February 16, 2022, and continuing through Friday, February 18, 2022. (Secs. 85.006(d), 85.007(c)).

**Wednesday, February 16, 2022 (72 hours preceding first hour Saturday early voting will be conducted; 13th day before primary election day)**

Deadline to post notice of Saturday early voting on county website. The notice must be posted continuously for at least 72 hours preceding the first hour that early voting on Saturday, February 19, 2022 will be conducted. (Sec. 85.007(b), (c)).

In counties with a population of 100,000 or more, deadline to post notice of Saturday early voting at any required temporary branch locations (created under Section 85.062(d) of the Texas Election Code). The notice must be posted continuously for at least 72 hours preceding the first hour that early voting on Saturday, February 19, 2022 will be conducted. (Secs. 85.006(e), 85.007(c), 85.062(d), 85.064(d), 85.068).

> **NOTE:** There is no petition process to require a county with a population less than 100,000 to conduct weekend early voting at temporary branch locations. However, the early voting clerk may voluntarily order weekend early voting at temporary branch locations by written order if they choose to do so.

Deadline to file a petition (PDF) to require the county early voting clerk to conduct extended early voting on Sunday, February 20, 2022. Notice of weekend voting (PDF) must be posted beginning no later than Thursday, February 17, 2022, and continuing through Saturday, February 19, 2022. (Secs. 85.006(d), 85.007(c)).

**Note for Counties with Population of Less than 55,000: Extended Early Voting Hours - Notice Requirement**: Deadline for counties with populations of less than 55,000 to post the Notice of Extended Hours (PDF) for the general primary election if the early voting clerk received a timely **petition** for early voting to be conducted at the main early voting location for 12 hours on each weekday of the last week of the early voting period. The notice must be posted beginning no later than Wednesday, February 16, 2022, and continuing through Sunday, February 20, 2022. For additional information, *see* Note 6 regarding extended early voting hours.

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) modified the days and hours for extended early voting by personal appearance. In counties with a population of 55,000 or more, early voting in a primary election shall be conducted at the main early voting location for least 12 hours on each weekday of the last week of the early voting period. Voting may not be conducted earlier than 6:00 AM or later than 10:00 PM. (Sec. 85.005(c)).

**Thursday, February 17, 2022 (72 hours preceding first hour Sunday early voting will be conducted; 12th day before primary election day)**

23

Deadline to post notice of Sunday early voting on county website. The notice must be posted continuously for at least 72 hours preceding the first hour that early voting on Sunday, February 20, 2022 will be conducted. (Sec. 85.007(b), (c)).

In counties with a population of 100,000 or more, deadline to post notice of Sunday early voting at any required temporary branch locations (created under Section 85.062(d) of the Texas Election Code). The notice must be posted continuously for at least 72 hours preceding the first hour that early voting on Sunday, February 20, 2022 will be conducted (Secs. 85.006(e), 85.007(c), 85.062(d), 85.064(d)).

> **NOTE:** There is no petition process to require a county with a population less than 100,000 to conduct weekend early voting at temporary branch locations. However, the early voting clerk may voluntarily order weekend early voting at temporary branch locations by written order if they choose to do so.

First day a voter who becomes sick or disabled on or after this date may submit an application for a late ballot if the sickness or physical condition prevents the voter from appearing at the polling place without the likelihood of needing personal assistance or of injuring his or her health. (Sec. 102.001). *See* Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability (PDF). Applications may continue to be submitted until 5:00 PM on Election Day. (Sec. 102.003).

First day that counties with a population of 100,000 or more may convene their early voting ballot board and deliver ballot materials to begin processing and qualifying mail ballots; however, the mail ballots may not be counted until (i) the polls open on election day, or (ii) in a county with a population of 100,000 or more, the end of the period for early voting in person. (Secs. 87.0222, 87.0241). The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Sec. 87.0222). **NOTE: results may not be released until the polls close on election day.**

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0411 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after an **early voting ballot board** discovers the defect and before the board decides whether to accept or reject a timely delivered ballot under Section 87.041, the board shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the board determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the board determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the board may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the ballot board takes one of the actions described above, the board must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0411). *See* Note 14.

**Friday, February 18, 2022 (11th day before primary election day)**

Last day for early voting clerk to receive applications for a ballot to be voted by mail. (Sec. 84.007(c)). All applications to vote by mail must be received by the early voting clerk before the close of regular business or 12 noon, **whichever is later**. Applications to vote by mail must be submitted by mail, common or contract carrier, fax (if a fax machine is available in the office of the early voting clerk) or by electronic submission of a scanned application with an original signature. The early voting clerk's designated e-mail address for the receipt of applications for ballot by mail must be posted on the Secretary of State's website. (Sec. 84.007(c)).

Last day to receive an FPCA from a voter. If the voter is **not** registered in the county (or the voter marked **"my intent to return is uncertain"** (2019 form), **or "my return is uncertain"** (2017 form)), the voter is eligible for a ballot containing federal offices only. (Secs. 101.052(f) & 114.004(c)).

STATE062381

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE**: If an ABBM is faxed or emailed or if an FPCA is faxed, then the applicant must submit the ORIGINAL application BY MAIL to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA.** If the early voting clerk does not receive the original ABBM or FPCA by that deadline, then the emailed or faxed ABBM or faxed FPCA will be considered incomplete, and the early voting clerk may NOT send the applicant a ballot. The requirement to mail the original application does not apply to an **emailed** FPCA. For additional information, please *see* Note 13, above.

An applicant for a ballot to be voted by mail (ABBM or FPCA) may submit the application by delivering it in person to the early voting clerk if the application is submitted not later than the close of regular business in the clerk's office on Friday, February 18, 2022. (Sec. 84.008).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 84.008 of the Code to provide that an applicant for a ballot to be voted by mail may submit the application by delivering it in person to the early voting clerk if the application is submitted not later than the deadline provided by Section 84.007(c) of the Code. This means that effective September 1, 2021, voters may now personally deliver their ABBM or FPCA to the early voting clerk not later than the close of regular business in the early voting clerk's office or 12 noon, whichever is later, on the 11th day before election day (unless that day is a Saturday, Sunday, or legal state or national holiday, in which case the last day is the first preceding regular business day).

**Saturday, February 19, 2022 (10th day before primary election day)**

In counties with a population of 55,000 or more, early voting must be conducted for at least 12 hours on the last Saturday of the early voting period at the main early voting polling place. In counties with a population less than 55,000, early voting must be conducted for this same number of hours at the main early voting polling place upon receipt of a petition submitted by at least 15 registered voters of the county. (Sec. 85.006(e)).

In counties with a population of 100,000 or more, early voting must be conducted for at least 12 hours on the last Saturday of the early voting period at any required temporary branch locations (created under Section 85.062(d) of the Texas Election Code). (Secs. 85.006(e), 85.062(d), 85.064(d)).

**NOTE:** There is no petition process to require a county with a population less than 100,000 to conduct weekend early voting at temporary branch locations. However, the early voting clerk may voluntarily order weekend early voting at temporary branch locations by written order if they choose to do so.

**Sunday, February 20, 2022 (9th day before primary election day)**

In counties with a population of 55,000 or more, early voting must be conducted for at least six hours on the last Sunday of the early voting period at the main early voting polling place. In counties with a population less than 55,000, early voting must be conducted for this same number of hours at the main early voting polling place upon receipt of a petition submitted by at least 15 registered voters of the county. (Sec. 85.006(e)).

STATE062382

In counties with a population of 100,000 or more, early voting must be conducted for at least six hours on the last Sunday of the early voting period at any required temporary branch locations (created under Section 85.062(d) of the Texas Election Code). (Secs. 85.006(e), 85.062(d), 85.064(d)).

> **NOTE:** There is no petition process to require a county with a population less than 100,000 to conduct weekend early voting at temporary branch locations. However, the early voting clerk may voluntarily order weekend early voting at temporary branch locations by written order if they choose to do so.

**Monday, February 21, 2022 (Presidents' Day; 8th day before primary election day)**

**Because Monday, February 21, 2022 is Presidents' Day, which is a legal holiday, early voting will not be conducted on this date. (Sec. 85.005).**

**Tuesday, February 22, 2022 — Friday, February 25, 2022 (7th day — 4th day before primary election day)**

In counties with a population of 55,000 or more, the early voting clerk must keep the main early voting polling place open for at least 12 hours each day between February 22 and February 25, 2022. Early voting must be conducted at permanent branch locations for at least 12 hours each day. (Secs. 85.005(c) & 85.067).

In counties with a population of less than 55,000, the early voting clerk must keep the main early voting polling place open for at least 12 hours each weekday of the last week of the early voting period for the primary election if 15 or more registered voters petition the county for the extended 12-hour schedule. (Secs. 85.005(c) & 85.067).

**Tuesday, February 22, 2022 (7th day before primary election day)**

If county election precincts are consolidated, county clerk must post at the polling place used in the preceding general election for state and county officers a notice of consolidation and location of the polling place. For purposes of conducting a primary election, the "preceding general election" is the preceding primary election. (Secs. 4.003(b) & 172.1112). (The deadline is extended to the next regular business day which is Tuesday, February 22, 2022 due to the 10th day falling on Saturday, February 19, 2022 and due to the fact that Monday, February 21, 2022 is Presidents' Day, a legal holiday. (Sec. 1.006).)

> **NOTE:** Section 172.1112 provides that the **county clerk** is required to post the notice of consolidation, if polling places are consolidated. The notice of consolidation should be posted on the county's website.

> **NOTE:** Section 172.1112 requires the county to post the notice of election and notice of consolidated precincts on the county's website if the county maintains a website. Under the prior version of the law, the notice was required to be posted on the party's website.

**Wednesday, February 23, 2022 (4th business day before primary election day)**

Last day for Secretary of State to receive a Request for Election Inspectors for the general primary election. The request must be a written request by 15 or more registered voters of the county for which the inspector is requested. (Sec. 34.001).

**Thursday, February 24, 2022 (day before the last day of early voting in person)**

A voter is eligible to vote a late ballot if they will be out of the county of residence on election day due to a death in the immediate family (related within 2nd degree of consanguinity or affinity) that occurs on or after this day. The voter may submit the Application for Emergency Early Ballot Due to Death in Family starting Saturday, February 26, 2022 (the day after early voting in person ends). (Secs. 103.001, 103.003(b)). An application may be submitted after the last day of the period for early voting by personal appearance and before the close of business on the day before election day. (Sec. 103.003).

STATE062383

Early voting clerk must post <u>Notice of Delivery of Early Voting Balloting Materials</u> to the early voting ballot board if materials are to be delivered to the board on Friday, February 25, 2022. Notice must be posted continuously for 24 hours preceding each delivery to the board. (Secs. 87.0221, 87.0222, 87.023, 87.024, 87.0241).

> **NOTE**: The Notice of Delivery of Early Voting Balloting Materials serves as notice of the convening of the early voting ballot board. This notice should be posted every time the early voting ballot board reconvenes.

**Friday, February 25, 2022 (4th day before primary election day)**

**Last day to vote early in person.** (Sec. 85.001(a)).

Last day to publish notice of public test of automatic tabulating equipment, if test will be held on Sunday, February 27, 2022, and testing was not already completed. The public notice of the test of automatic tabulating equipment must be published at least 48 hours before the test begins. Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test. (Sec. 127.096).

> **NOTE**: Section 127.096 requires that for a primary election, the custodian of election records must give the county chair 48 hours of notice prior to the test. The county chair is required to confirm receipt of the notice.

**After the polls close at the end of early voting**, the ballot board and/or central counting station may convene to perform the following activities, depending on the population size of the county:

**Counties with a population of 100,000 or more:**

> First day those counties may convene their early voting ballot board and/or central counting station and begin **counting** ballots; **however, the results may not be announced until after the polls close on election day.** (Secs. 87.0222, 87.0241).

> **NOTE -** If a county with a population of 100,000 or more is convening their early voting ballot board and/or central counting station early to begin **counting** ballots, the test of the tabulation equipment will need to be completed at least 48 hours before the equipment is used to count ballots. (Secs. 87.0222, 87.0241, 127.096).

**Counties with a population less than 100,000:**

> First day those counties may convene their early voting ballot board for processing and qualifying mail ballots, but cannot begin counting the ballots until the polls open on election day. The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Secs. 87.0221, 87.023, 87.024, 87.0241). *See* <u>Notice of Delivery of Early Voting Balloting Materials (PDF)</u>.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0411 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after an **early voting ballot board** discovers the defect and before the board decides whether to accept or reject a timely delivered ballot under Section 87.041, the board shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the board determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the board determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the board may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the ballot board

27

STATE062384

takes one of the actions described above, the board must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0411). *See* Note 14.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 127.1232 to provide that in counties with a population of 100,000 or more, the general custodian of election records shall implement a video surveillance system that retains a record of all areas containing voted ballots: (1) from the time the voted ballots are delivered to the central counting station until the canvass of the precinct election returns; and (2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns. Video from the surveillance system shall be made available to the public by live stream. The recorded video is considered an election record and shall be retained by the general custodian until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later. (Sec. 127.1232).

**Saturday, February 26, 2022 (day after last day of early voting in person; 3rd day before primary election day)**

First day to submit an Application for Emergency Early Ballot Due to Death in Family because of a death in the immediate family that occurred on or after Thursday, February 24, 2022 ("the day before the last day of the period for early voting by personal appearance"), and will require absence from the county of residence on election day.  The application may be submitted through the close of business on Monday, February 28, 2022, the day before primary election day. (Secs. 103.001 & 103.003(b)).

**Sunday, February 27, 2022 (2nd day before primary election day)**

Last day to conduct public test of automatic tabulation equipment. Per Section 127.093, the test shall be conducted at least 48 hours before the automatic tabulating equipment is used to count ballots voted in an election and was not previously tested. We highly *recommend* that this test is done on an earlier date to allow time for corrections to programming, if necessary. (See Note 9, above).

**Monday, February 28, 2022 (day before primary election day)**

Last day for early voting clerk to mark the precinct list of registered voters with a notation beside each name of voter who voted early, and deliver the list to election judges. The early voting clerk must also deliver the precinct early voting list.  The list may be delivered electronically if the county will be using an electronic pollbook. (Sec. 87.122).

Last day to submit Application for Emergency Early Ballot Due to Death in Family and vote a late ballot by personal appearance due to death in immediate family that occurred on or after Thursday, February 24, 2022. (Sec. 103.003).

Deadline for county chair to post notices of changed polling places.  The notice must be posted at the entrance of the polling place used in the last primary election and must provide the location of the new polling place.  (Sec. 43.062).

**Delivery of Provisional Ballots and Forms**: If the voter registrar wants to take possession of the provisional ballots and forms on election night, the voter registrar must inform the custodian of the election records and post a Notice of Election Night Transfer no later than Monday, February 28, 2022, 24 hours before election day. (1 T.A.C. § 81.174(d)(3)).

    **NOTE:** Under this type of delivery, the county voter registrar **must** go to the office of the custodian of election records and pick up the provisional ballots and forms.

    **NOTE:** The general custodian of election records (or the early voting clerk, if applicable) must also post a Notice of Delivery of Provisional Ballots at least 24 hours before delivery will occur. (1 T.A.C. § 81.174(b)(1)).

**March**

STATE062385

**Tuesday, March 1, 2022, PRIMARY ELECTION DAY (Sec. 41.007(a), (c)).**

Prior to opening the polls, the presiding judge of each precinct must post at each entrance to the building a notice of the time and place for convening the precinct, county, senatorial and state conventions. This notice must remain posted continuously during the early voting period and on election day. (Sec. 172.1111).

| | |
|---|---|
| **7:00 AM – 7:00 PM** | Polls are open. (Sec. 41.031(a)).<br><br>Voter registrar's office is open. (Sec. 12.004(c)).<br><br>Early voting clerk's office is open for early voting activities. A voter may deliver a marked ballot by mail to the early voting clerk's office while the polls are open on election day. The voter must provide an acceptable form of identification under Section 63.0101 upon delivery. The identification procedure is the same as that used for personal appearance voting. (Secs. 63.0101, 83.011, 86.006).<br><br>A voter may vote at the main early voting polling place if **voting machines** are used at regular polling place(s) on election day <u>and</u> the voter has a sickness or physical condition that prevents the voter from voting in the regular manner without personal assistance or a likelihood of injuring the voter's health. (Secs. 104.001 & 104.003). However, if the early voting ballots by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location. (Sec. 104.003). |
| **5:00 PM** | Deadline for receiving <u>Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability</u> for late ballots to be voted by persons who became sick or disabled on or after Thursday, February 17, 2022 (12th day before election day). (Sec. 102.003(b)). *See* entry at <u>Thursday, February 17, 2022</u>. |
| **7:00 PM** | Regular deadline for receiving **early voting ballots** by mail. **BUT see** <u>entry</u> for **Thursday, March 3, 2022 on "late domestic ballots," and** <u>entry</u> for **Monday, March 7, 2022 on other "late" ballots.**<br><br>This is also the deadline to receive **late ballots cast by voters who became sick or disabled** on or after Thursday, February 17, 2022 (12th day before election day). (Secs. 86.007(a) & 102.006(c)). *See* entry at <u>Thursday, February 17, 2022</u>. |
| **7:00 PM** | County election officer begins transmitting results to Secretary of State and transmits continuously until results are final. (Sec. 68.034). |

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 61.002 to provide that immediately before the opening of the polls on election day, the presiding judge or alternate judge shall confirm that the public counters on each voting machine are set to zero and shall print the tape that shows that there are zero votes for each candidate or measure on the ballot. Immediately after the closing of the polls on election day, the presiding judge or alternate judge shall print the tape to show the number of votes cast for each candidate or measure. Each election judge and alternate judge shall sign the printed tapes. (Sec. 61.002).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. (Sec. 127.131).

**NOTE: Receipt of Mail Ballots**: All early voting ballots sent by mail from inside the United States that are received by 7:00 PM on election day, Tuesday, March 1, 2022, **must be counted on election night**. If the

STATE062386

carrier envelope does not bear a cancellation mark or a receipt mark, the ballot must arrive before the time the polls are required to close **on election day**. (Sec. 86.007(a)(1)). If the early voting clerk cannot determine whether a ballot arrived before that deadline, the ballot is considered to have arrived at the time the place at which the carrier envelopes are deposited was last inspected for removal of returned ballots. (Sec. 86.007(b)). The early voting clerk **must** check the mailbox for early voting mail ballots at least once after the time for regular mail delivery. (Sec. 86.007(b)).

**NOTE: An early voting mail ballot that is not received by 7:00 pm on election day may not be counted unless the ballot may be counted late, which applies to late domestic ballots (Sec. 86.007(a)(2)), ballots mailed from outside the United States (Sec. 86.007(d)), and ballots from members of the armed forces and merchant marine of the United States, Texas National Guard or the National Guard of another state or members of the Reserves, as well as their spouses and dependents (Sec. 101.057). See** entry **for Thursday, March 3, 2022, and** entry **for Monday, March 7, 2022.** *See* Tex. Sec'y of State Election Advisory No. 2018-02.

**Note on Delivery of Early Voting by Personal Appearance and Mail Ballots:** The early voting clerk delivers the voted ballots, the key to the double locked ballot box, etc., to the early voting ballot board at the time or times specified by the presiding judge of the early voting ballot board, during the hours on election day that the polls are open or as soon after the polls close as practicable. (Secs. 87.021, 87.022). The custodian of the key to the second lock of the double locked early voting ballot box delivers his or her key to the presiding judge of the early voting ballot board on request of the presiding judge. (Secs. 85.032(d) & 87.025). **The custodian is the sheriff for county elections, elections ordered by the governor, or a primary election** (or the county judge in a year when the office of sheriff is on the ballot). (Sec. 66.060).

>    **NOTE:** If ballots are to be delivered before election day, the early voting clerk must post Notice of Delivery at least 24 hours before each delivery at the main early voting polling place. (Secs. 87.021, 87.022).

**Note on Manual Examination of Ballots Before Processing on Automatic Counting Equipment:** The central counting station manager shall direct the manual examination of all electronic voting system ballots to ascertain whether the ballots can be processed in the usual manner or if the ballots need to be duplicated to clearly reflect the voter's intent. (Sec. 127.125).

**Note on Testing Tabulating Equipment: The second test of automatic tabulating equipment** used for counting ballots at a central counting station must be conducted immediately before the counting of ballots with equipment begins. The **third test** must be conducted immediately after the counting is completed. (Secs. 127.093, 127.097 & 127.098).

After the polling place is officially closed and the last person has voted, the presiding judge may from time to time make an unofficial announcement of the total number of votes counted for each candidate and/or for or against each proposition in the order that they appear on the ballot. (Sec. 65.015(a)). The announcement shall be made at the entrance to the polling place. (Sec. 65.015(c)).

>    **NOTE:** The authority conducting the election may require or prohibit such announcements. (Sec. 65.015(b)). Unofficial election results must be released by the central counting station as soon as they are available after the polls close, but the presiding judge of the central counting station, in cooperation with the county election officer, may choose to withhold the release of vote totals until the last voter has voted. (Sec. 127.1311).

**Note on Precinct Election Returns:** Precinct election returns are delivered to the appropriate authorities after completion. (Secs. 66.053(a), 127.065, 127.066 & 127.067).

**Transfer of Provisional Ballots to Voter Registrar on Election Night:** The county voter registrar may take possession of the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used) on election night (instead of on the next business day) by informing the custodian of election records and posting a notice of such election night transfer no later than 24 hours before election day. Under this type of delivery, the voter registrar must go to the office of the

STATE062387

custodian and pick up the ballot box(es) or transfer case(s) and associated forms. (Sec. 65.052; 1 T.A.C.§§ 81.172 – 81.174 & 81.176).

**NOTE – NEW LAW:** SB 1116 (2021, R.S.) created additional requirements regarding information that a county must post on its website for elections held by a county or elections for any local political subdivision in which the county has contracted to provide election services.   While these statutory web posting requirements do not specifically apply to primary elections, **we strongly recommend that you post this information for any primary election in which the county has contracted to provide election services.**   Accordingly, the following information should be posted on the county's website **as soon as practicable after the election.**  This information should be accessible without having to make more than two selections or view more than two network locations after accessing the county's home page.   The information on the website should include:

1.  the results of each election;
2.  the total number of votes cast;
3.  the total number of votes cast for each candidate or for or against each measure;
4.  the total number of votes cast by personal appearance on election day;
5.  the total number of votes cast by personal appearance or mail during the early voting period; and
6.  the total number of counted and uncounted provisional ballots cast. (Sec. 65.016).

**Wednesday, March 2, 2022 (Texas Independence Day)**

**Thursday, March 3, 2022 (1st business day after primary election day)**

**5:00** PM **–** Deadline to receive "**late domestic ballots"** mailed **within** the United States from **non-military voters and from any military voters** who submitted an **Application for Ballot by Mail** ("ABBM") (not a Federal Postcard Application – "FPCA"), if the carrier envelope was placed for delivery by mail or common or contract carrier **AND** bears a cancellation mark of a postal service or a receipt mark of a common or contract carrier or a courier indicating a time not later than **7:00** PM at the location of the election on election day, March 1, 2022.  (Sec. 86.007(a)(2)).  A late domestic ballot **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark.  (Sec. 86.007(c), (e), & (f)).   The deadline is extended to the next regular business day which is Thursday, March 3, 2022 due to the 1st day after election day falling on a legal holiday, Texas Independence Day, March 2, 2022. (Sec. 86.007(d-1)).

NOTE:  This deadline does not apply to ballots sent by non-military voters who are overseas but applied for a ballot using an ABBM; these voters have until the 5th day after primary election day to return their ballots (or the next business day if the 5th day falls on a weekend or legal state or federal holiday). This deadline also does not apply to ballots mailed (domestically or from overseas) by certain members of the military who applied for a ballot using an FPCA; those voters have until the 6th day after primary election day to return their ballots.  See entry for March 7, 2022.

Unless the county voter registrar has already taken possession of the provisional ballots prior to this date, the general custodian of election records must deliver the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used), along with the Summary of Provisional Ballots and the List of Provisional Voters for each precinct to the voter registrar by this day. The general custodian of election records makes this delivery to the voter registrar during the voter registrar office's regular business hours. (Secs. 65.052, 65.053; 1 T.A.C. §§ 81.172 – 81.174 & 81.176).

NOTE: For the primary election, if the voter registrar wants to take possession of the provisional ballots and forms on election night (Tuesday, March 1, 2022), the voter registrar must inform the custodian of the election records and post a notice of the election night transfer no later than 24 hours before election day. However, under this type of delivery, the voter registrar **must** go to the office of the custodian of election records and pick up the provisional ballots and forms. Also, note that the voter registrar may take possession of provisional ballots prior to election night if ballots are kept separate and may be provided without unlawful entry into ballot box. (1 T.A.C. §§ 81.172 – 81.174).

**Friday, March 4, 2022 (3rd day after primary election day)**

STATE062388

Last day to begin the **partial manual count** for entities using electronic voting systems for the counting of ballots. This is the last day to **begin** manual recount of ballots in three precincts or one percent of precincts, whichever is greater. (Sec. 127.201(a), (g)). The count must be completed not later than the 21st day after election day. Results of the manual count must be delivered to the Secretary of State not later than the 3rd day after the manual count is completed. (Sec. 127.201(e)). No partial manual count needs to be done of ballots cast on DRE voting machines, but partial manual count must be completed for mail ballots. (Sec. 127.201(g)).

**NOTE:** For information on how to begin the partial manual count, please see <u>Tex. Sec'y of State Election Advisory No. 2018-30</u>.

**Monday, March 7, 2022 (6th day after primary election day)**

Last day to receive ballots from **non-military and any military voters** casting ballots from outside of the United States, who submitted an **ABBM** (not an FPCA) **AND** who placed their ballots in delivery by 7:00 PM on primary election day, Tuesday, March 1, 2022, as evidenced by a postal service cancellation mark or a receipt mark of a common or contract carrier or a courier. (Sec. 86.007(d)). A late overseas ballot sent by a voter who applied for a ballot using an ABBM (not an FPCA) **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark. (Sec. 86.007(c), (e), & (f)). The deadline is extended to the next regular business day which is Monday, March 7, 2022 due to the 5th day falling on a Sunday. (Sec. 86.007(d-1)).

> **NOTE:** The delivery is considered timely if the carrier envelope or, if applicable, the envelope containing the carrier envelope is properly addressed with postage or handling charges prepaid **and** bears a cancellation mark of a recognized postal service or a receipt mark of a common or contract carrier or a courier indicating a time **by 7:00 PM** on primary election day.

Last day to receive ballots from **non-military voters** casting ballots from <u>overseas</u>, who submitted a **FPCA, AND** who placed their ballots in delivery by 7:00 PM on primary election day, Tuesday, March 1, 2022. (Sec. 86.007(d) & (e)). The deadline is extended to the next regular business day which is Monday, March 7, 2022 due to the 5th day falling on a Sunday. (Sec. 86.007(d-1)).

Last day to receive carrier envelopes mailed domestically (within the United States) OR overseas from voters who submitted a **FPCA AND** who are members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves. (Secs. 101.057 and 101.001).

> **NOTE -** Section 101.057 provides that carrier envelopes mailed domestically or overseas from certain **military voters** (members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves) who submitted a **Federal Post Card Application (FPCA)** may arrive on or before the 6th day after election day. (Secs. 86.007, 101.057 and 101.001).

> **NOTE: The carrier envelope or, if applicable, the envelope containing the carrier envelope sent by the military members listed above who applied to vote by mail using the FPCA does <u>NOT</u> need to bear a cancellation or receipt mark in order to be counted.**

Last day to post notice of the county chair (or county chair's designee) and at least one member of the county executive committee's canvass of the returns for the primary election because canvass must take

STATE062389

place on Thursday, March 10, 2022. This notice must be posted at least 72 hours before the scheduled time of the meeting. (Sec. 172.116; Secs. 551.002, 551.041 & 551.043, Texas Government Code).

**NOTE:** Section 172.116 provides that a county chair may designate another individual to conduct the local canvass on the county chair's behalf.  That designee must be a member of the county executive committee. If no member of the county executive committee is available to act as the county chair's designee, then any individual who is a resident of the county and is affiliated with the same political party may act as the county chair's designee.

Deadline for ID related provisional voter to: (1) present acceptable photo identification to county voter registrar; or (2) if the voter does not possess and cannot reasonably obtain acceptable photo identification, follow the Reasonable Impediment Declaration procedure at the county voter registrar; or (3) execute an affidavit relative to "natural disaster" or "religious objection" in presence of county voter registrar, if applicable; or (4) qualify for the disability exemption, if applicable, with the county voter registrar. (Secs. 65.054, 65.0541).

Deadline for county voter registrar to complete the review of provisional ballots. (1 T.A.C. §§ 81.175 & 81.176).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.): Last day a voter may come to the early voting clerk's office in person to correct certain defects in their carrier envelope. (Secs. 87.0271, 87.0411). *See* Note 14.

**Tuesday, March 8, 2022 (7th day after primary election day; 2nd Tuesday in March)**

Precinct conventions held for parties nominating by convention. (Secs. 181.061(c) & 182.005).

Deadline for custodian of election records or presiding judge of the early voting ballot board to retrieve provisional ballots from county voter registrar. (1 T.A.C. §§ 81.175 & 81.176).

**Thursday, March 10, 2022 (2nd Thursday after primary election day, 9th day after Primary Election Day)**

Last day for **early voting ballot board** to convene to qualify and count:

1.  any late **domestic** ballots (from non-military and from any military voters who submitted an ABBM) that bear a cancellation mark or receipt mark indicating they were placed for delivery by mail or common or contract carrier not later than 7:00 PM on election day, March 1, 2022, and were received not later than 5:00 PM on the first business day after election day, Thursday, March 3, 2022. (Secs. 86.007(a) & (d-1), 87.125(a)).

2.  any late ballots that were submitted from outside the United States by voters who applied for the ballot using an ABBM or by non-military voters who applied for the ballot using an FPCA, and which were received by the 5th day after election day, Monday, March 7, 2022. (Secs. 86.007(d) & (d-1), 87.125(a)).

3.  any ballots received by the 6th day after election day, Monday, March 7, 2022, from voters who are members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves, and who applied for a ballot using an FPCA. (Secs. 101.057, 87.125(a)).

4.  any provisional ballots that have been reviewed by the voter registrar. (Sec. 65.051(a)).

**NOTE:** Ballots that do not qualify under 1-3 above should be treated as ballots not timely returned and should not be delivered to the ballot board.   (Sec. 86.007).

STATE062390

> **NOTE:** If the early voting ballot board needs to meet after this date, it will require a court order to do so.

The time the board reconvenes is set by the presiding judge of the early voting ballot board. (Secs. 86.007(d), 87.125).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. (Sec. 127.131).

**Local canvass** of the general primary election by county chair (or county chair's designee) and at least one member of the county executive committee must be conducted on this date. (Sec. 172.116(b)).

> **NOTE:** Section 172.116 provides that a county chair may designate another individual to conduct the local canvass on the county chair's behalf. That designee must be a member of the county executive committee. If no member of the county executive committee is available to act as the county chair's designee, then any individual who is a resident of the county and is affiliated with the same political party may act as the county chair's designee.

**NOTE:** Section 172.084(a) requires that the order of candidates on the ballot for the runoff primary election be the same as the order of candidates on the ballot for the general primary election. Therefore, a second ballot drawing for ballot order for the runoff primary election is no longer required.

Last day to post notice of state executive committee's meeting to canvass returns of primary election because state canvass must take place on Sunday, March 13, 2022. This notice must be posted at least 72 hours before the scheduled time of the meeting. (Sec. 172.120; Secs. 551.002, 551.041 & 551.043, Texas Government Code).

**Friday, March 11, 2022 (10th day after primary election day; 24 hours after local canvass)**

The presiding judge of the EVBB shall mail a Notice of Rejected Ballot (PDF) to voters whose mail ballots were rejected no later than the 10th day after election day or as soon as practicable, depending on when the EVBB last convenes. (Sec. 87.0431).

> **NOTE:** Section 87.0431 requires notice to also be provided to email address of an overseas mail ballot voter if ballot was transmitted to the voter by email under Section 101.102.

Deadline for state chairs and county chairs to submit itemized estimate and request for state funds to cover runoff primary expenses. (Sec. 173.081(e)). Notice of consolidation of county precincts, if any, must accompany the itemized estimate. (Sec. 173.081(f)).

**Saturday, March 12, 2022 (1st Saturday after 2nd Tuesday in March)**

County convention for minor parties that are nominating candidates for single-county district, county, or precinct offices. (Sec. 181.061(c)).

**Sunday, March 13, 2022 (2nd Sunday after the primary election day)**

Deadline for state executive committee to conduct state canvass for all races with potential runoffs (races with three or more candidates). See entry under Wednesday, March 23, 2022. State chair must certify these candidates for statewide and district offices for placement on runoff primary election ballot to county chair as soon as practicable after canvass is completed. The certification will be posted to the Secretary of State's website. (Secs. 172.120(b)(1) & 172.121).

STATE062391

**NOTE**: Section 172.121 requires the state chair to certify runoff candidates for state or district offices by posting the candidates and their respective outcomes to the Secretary of State's website.

**NOTE**: Section 172.084(a) requires that the order of candidates on the ballot for the runoff primary election be the same as the order of candidates on the ballot for the general primary election. Therefore, a second ballot drawing for ballot order for the runoff primary election is not required.

## Wednesday, March 16, 2022 (3rd day after state canvass of races with potential runoffs; 15th day after general primary election day)

5:00 PM — Last day runoff primary candidates may withdraw from ballot. (Sec. 172.059(a)).

Election records from the general primary election must be available in an electronic format no later than this day, for a fee of not more than $50.00. (Sec. 1.012(e)).

### Thursday, March 17, 2022 (4th day after state canvass of races with potential runoffs; 68th day before runoff primary election day)

Recommended date for primary committee to approve runoff primary ballot format. (Sec. 172.083).

Recommended date for county chair to order runoff primary election ballots. (Sec. 172.083).

## Monday, March 21, 2022 (64th day before runoff primary election day, 11th day after local canvass)

Deadline for the presiding judge of the early voting ballot board to notify provisional voters whether their ballots were counted and if not, the reason why they were not counted. (Sec. 65.059; 1 T.A.C. §§ 81.176(e)). (The deadline is extended to the next regular business day which is Monday, March 21, 2022 due to the **10th day falling on Sunday, March 20, 2022**. (Sec. 1.006).)

## Wednesday, March 23, 2022 (22nd day after primary election day)

Deadline for state chair to conduct the state canvass for races with no potential runoff. (Sec. 172.120(b)(2)). (*See* entry under <u>Sunday, March 13, 2022</u>).

## Friday, March 25, 2022 (60th day before runoff primary election)

Deadline for printers/vendors to register with the Secretary of State to print runoff primary ballots. (Sec. 51.013).

Recommended last day to order any additional election supplies necessary for the runoff primary election.

Recommended last day for the county chair of each political party to appoint presiding and alternate judges for each precinct in which the primary runoff election will be held in the county, presiding judge and alternate presiding judge for the early voting ballot board, presiding judge of the central counting station, and personnel for the central counting station, if judges have not been appointed for the primary runoff election. (Secs. 32.006, 32.008, 87.002 & 127.002-127.005). Written notice of the appointments must be given to the judges in accordance with Section 32.009 of the Texas Election Code.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 87.002 to require the early voting ballot board to have an alternate judge. The alternate judge is appointed in the same manner as the presiding judge.

Recommended last day for the county election officer to appoint presiding and alternate judges from the lists provided by each county chair and to appoint the election clerks in a **joint primary** election. (Sec. 172.126(c)). Written notice of the appointments must be given to the judges in accordance with Section 32.009 of the Texas Election Code.

**NOTE:** General eligibility requirements for election judges and clerks are found in Subchapter C, Chapter 32 of the Texas Election Code. General eligibility requirements for central counting station personnel are found in Sections 127.002-127.005 of the Texas Election Code. The presiding judge appoints the clerks, but not more than the maximum set by the political party, consistent with Secretary of State's primary finance rules; however, the alternate judge must serve as one of the clerks. (Secs. 32.032 & 32.033).

Recommended date to order the lists of registered voters from the county voter registrar. (Sec. 18.006).

**Wednesday, March 30, 2022 (20th day after local canvass of primary election)**

Deadline for county chair to post notice on the Secretary of State's website of the names of the persons elected as county chair for the county. (Sec. 172.118).

    **NOTE:** Section 172.118 does not require the county chair to provide written notice to the state chair and county clerk of new party officers. Instead, the county chair will post this information on the Secretary of State's website.

**Thursday, March 31, 2022 (30th day after primary election day)**

Deadline for county clerk to deliver to Secretary of State precinct returns of primary election for all offices other than party offices, including precinct-by-precinct returns for early voting. The report must include early voting votes cast by mail and early voting votes cast by personal appearance. That delivery to SOS must be made through the electronic system for submission of the report. (Secs. 67.017 & 172.124).

    **NOTE:** Sections 67.017 and 172.124 require this report to include all offices other than party offices in the precinct-by-precinct reports under this section. That report must include separate totals for early voting votes by mail and early voting votes by personal appearance.

## April

**Monday, April 4, 2022 (50th day before runoff primary election day)**

Recommended deadline for county chair of party holding a runoff primary election to procure from voter registrar a set of precinct lists of registered voters (also supplemental lists and correction lists, if necessary) to deliver to county election officer for use in conducting early voting by mail and in person in the party's runoff primary. (Secs. 18.001(d) & 18.002-18.004).

Last day to publish notice for testing of automatic tabulation equipment testing and logic and accuracy testing (L&A testing) of a voting system if test will be completed by recommended deadline of Wednesday, April 6, 2022. Notice of the public tests must be published at least 48 hours before the test begins. The notice must be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board. Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test. The county chair must confirm receipt of the notice. (Secs. 127.093, 127.096, 129.022, 129.023).

    **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that if logic and accuracy testing is being conducted for a primary election, the general custodian of election records shall notify the county chair of the test at least 48 hours before the date of the test. The county chair must confirm receipt of the notice. (Sec. 129.023(b-1)).

**Wednesday, April 6, 2022 (48th day before runoff primary election day)**

*Recommended* date to conduct the first test of the automatic tabulating equipment and for logic and accuracy (L&A test) test on voting system. (Secs. 127.093, 127.096, 129.022, 129.023). The SOS recommends you complete your first round of testing prior to mailing your mail ballots if those ballots will

STATE062393

be counted using automatic tabulation equipment. If you conduct your first round of testing by this date, you must publish notice of the test 48 hours prior to testing. See Note 9, above.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered. (Sec. 129.023(c-1)).

**Saturday, April 9, 2022 (45th day before runoff primary election day; 2nd Saturday in April)**

Deadline to mail ballots to military or overseas voters who already submitted their ballot requests via a federal postcard application (FPCA) or via a standard application for ballot by mail (ABBM) and indicated that they are outside the United States. If the early voting clerk cannot meet this 45-day deadline, the clerk **must** notify the Secretary of State within 24 hours. (Sec. 86.004(b)).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052)

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE: The 45th-day deadline under Section 86.004(b) is *not* extended by Section 1.006 to the next business day. The ballots covered by Section 86.004(b) should be sent out on or before Saturday, April 9, 2022.**

**Reminder Regarding FPCAs and Overseas ABBMs:** If the early voting clerk receives an FPCA (from a military or non-military voter) or an ABBM from an overseas voter after the 45th day deadline, then the ballot **must** be mailed within seven days after the early voting clerk **receives** the FPCA or ABBM. (Secs. 86.004(b), 101.104).

**Reminder:** In regards to mail ballots for other voters (not military voters using an FPCA or overseas voters using an FPCA or ABBM), the early voting clerk **must** mail a ballot not later than the 7th day after the later of: (1) the date the early voting clerk has accepted a voter's application for a ballot by mail or (2) the date the ballots become available for mailing. However, if the 7th day falls earlier than the 37th day before election day, the voter's mail ballot must be mailed no later than the 30th day before election day. (Sec. 86.004(a)). This means that for every application that comes in before the 37th day before election day, the balloting materials must be mailed by the 30th day before election day. Any application that comes in after the 37th day before election day will follow the 7-day timeline in Sec. 86.004.

**NOTE:** Information on the early voting roster for both early voting in person and early voting by mail must be made available for public inspection and on the county's website if the county clerk or elections administrator is serving as the early voting clerk. The early voting roster shall be posted by 11:00 AM on the day after the information is entered on the roster (for early voting in person) or by 11:00 AM on the day after the early voting clerk receives a ballot voted by mail. If the entity does not maintain a website, the information must be on the bulletin board used for posting notices. (Sec. 87.121).

**NOTE – NEW LAW:** HB 1622 (2021, R.S.) amended Section 87.121 of the Code to provide that if an early voting clerk fails to post their early voting rosters in accordance with Section 87.121, a person registered to vote in the county where the early voting clerk is conducting early voting may file a complaint with the Secretary of State regarding the early voting clerk's noncompliance. The Secretary of State by rule shall create and maintain a system for receiving and recording these complaints. (Sec. 87.121).

State convention for minor party that is nominating candidates for statewide offices. (Sec. 181.061(a)).

STATE062394

**Friday, April 15, 2022 (39th day before runoff primary election day; Good Friday)**

**Thursday, April 21, 2022 (33rd day before runoff primary election day; San Jacinto Day)**

**Friday, April 22, 2022 (32nd day before runoff primary election day and 12th day before first day signature verification committee may convene)**

Recommended date for early voting clerk to issue order calling for appointment of signature verification committee for the runoff primary election, if the early voting clerk determines that a committee is to be appointed. (Sec. 87.027).

If the signature verification committee will start meeting on Wednesday, May 4, 2022, **recommended date** early voting clerk should post copy of the order calling for appointment of the signature verification committee. (Saturday, April 23, and Sunday, April 24, 2022 are the 10th and 11th days before the first day the committee may meet.) The notice must remain posted continuously for at least 10 days before the first day the committee meets. The notice must be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board. (Sec. 87.027).

**Monday, April 25, 2022 (29th day before runoff primary election day)**

Last day to register to vote or make a change of address effective for the Tuesday, May 24, 2022 primary runoff election. (Secs. 13.143, 15.025).

> **NOTE** - A Federal Postcard Application (FPCA) also serves as an application for **permanent** registration under Texas law **unless the voter marked "my intent to return is uncertain" (2019 form), or "my return is uncertain" (2017 form)**. The early voting clerk should make a copy (for mailing ballots, keeping records, etc.), then should forward the original to the county voter registrar, as soon as practicable. (Sec. 101.055; 1 T.A.C. § 81.40(a), (c)(2)).

**Wednesday, April 27, 2022 (5th day after recommended date to order signature verification committee)**

If the early voting clerk issues order calling for appointment of signature verification committee on the recommended date for issuing that order (Friday, April 22, 2022), this is the deadline for the county chair to appoint the members to the committee. *See* entry under <u>Friday, April 22, 2022</u>. (Sec. 87.027).

## May

**Sunday, May 1, 2022 (61st day after primary election day)**

First day the general custodian of election records may (1) require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and (2) unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period. (Sec. 66.058(b)). **Please note that the custodian is not required by law to do this on Sunday, May 1, 2022; the custodian may choose to transfer the voted ballots to another secure container for the remainder of the preservation period on Monday, May 2, 2022 or a later date**.

**Tuesday, May 3, 2022 (21st day before runoff primary election day)**

Last day for county clerk to post notice of the runoff primary election on the county's website. The notice must also be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board. (Secs. 4.003 & 172.1112).

STATE062395

**NOTE:** Section 172.1112 requires the county to post the notice of election and notice of consolidated precincts on the county's website if the county maintains a website. Under the prior version of the law, the notice was required to be posted on the party's website.

**NOTE:** Section 172.1112 requires that the county clerk, rather than the county chair, post the notice of election for the primary election.

**NOTE – NEW LAW:** SB 1116 (2021, R.S.) created additional requirements regarding information that a county must post on its website for elections held by a county or elections for any local political subdivision in which the county has contracted to provide election services. While these statutory web posting requirements do not specifically apply to primary elections, **we strongly recommend that you post this information for any primary election in which the county has contracted to provide election services.** Accordingly, the following information should be posted on the county's website not later than the 21st day before election day:

- The date of the election;
- The location of each polling place;
- Each candidate for an elected office on the ballot; and
- Each measure on the ballot. (Sec. 4.009).

**Wednesday, May 4, 2022 (20th day before runoff primary election day)**

Deadline for a person who is not permanently registered to vote to submit a postmarked FPCA, in order to receive a full ballot by mail for the May 24, 2022 primary runoff election. A person who is **not** permanently registered to vote and submits a postmarked FPCA after this date (20th day) and before the deadline to submit an application for ballot by mail, is not entitled to receive a ballot for any non-federal election. *See* Monday, May 9, 2022 entry for timeliness of an FPCA received without a postmark. (Secs. 101.052(e), 101.052(i)(2)).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052).

**NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE:** Be sure to check the list of registered voters for permanent registration status. Also, state law authorizes an FPCA to also serve as an application for **permanent registration**; therefore, the person might be permanently registered based on a prior FPCA. Even if the FPCA arrives too late for a particular election, the early voting clerk will still need to forward the original FPCA to the county voter registrar, after making a copy for your early voting clerk's use (mailing ballots, etc.) and records **unless the voter marked "my intent to return is uncertain" (2019 form), or "my return is uncertain" (2017 form)**, in which case, it will not serve as a permanent registration. (Sec. 101.055; 1 T.A.C. § 81.40).

**NOTE: Overseas (non-military) voters** marking the FPCA **"my intent to return is uncertain" (2019 form), or "my return is uncertain" (2017 form)** receive a federal ballot **only** regardless of the date filed. (Chapter 114).

First day that the signature verification committee, if one is appointed, may begin operating. (Sec. 87.027).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0271 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after a **signature verification committee** discovers the defect and before the committee decides whether to accept or reject a timely delivered ballot under Section 87.027, the

STATE062396

committee shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the committee determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the committee determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the signature verification committee may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the signature verification committee takes one of the actions described above, the committee must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0271). *See* Note 14.

**Thursday, May 5, 2022 — Friday, May 13, 2022 (19th — 11th day before runoff primary election day)**

A person submitting an FPCA during this period who is **not** registered to vote is not entitled to receive a full ballot for the May 24, 2022 primary runoff election, meaning that a person submitting an FPCA during this period is entitled to receive a federal ballot only (no state, district, or county offices), if not already a permanent registered voter. (Secs. 101.052(f), 114.002, 114.004). *See* entry below under Monday, May 9, 2022 (FPCA without a postmark). (Secs. 101.052(f) & 114.004(c)).

**NOTE** - The early voting clerk is required to maintain a copy of this application since it may be used for other elections and forward the original to the voter registrar. (Secs. 84.007; 101.052(e), (f)).

**NOTE** - Be sure to check the list of registered voters for permanent registration status. Also, state law authorizes an FPCA to also serve as an application for **permanent registration**; therefore, the person might be permanently registered based on a prior FPCA. Even if the FPCA arrives too late for a particular election, the early voting clerk will still need to forward the original FPCA to the county voter registrar, after making a copy for your early voting clerk's use (mailing ballots, etc.) and records unless the voter marked "**my intent to return is uncertain**" (2019 form), or "**my return is uncertain**" (2017 form (PDF)) in which case, it will not serve as a permanent registration. (Sec. 101.055; 1 T.A.C. § 81.40).

**NOTE - Overseas (non-military) voters** marking the FPCA "**my intent to return is uncertain**" (2019 form), or "**my return is uncertain**" (2017 form) receive a federal ballot **only** regardless of the date filed. (Chapter 114).

**Friday, May 6, 2022 (18th day before runoff primary election day)**

If a **defective application to vote early by mail** is received on or before this date, the early voting clerk must mail the applicant a new application with explanation of defects and instructions for submitting the new application. For defective applications received after this date and before the end of early voting by personal appearance, the early voting clerk must mail only the Notice of Rejected Application for Ballot by Mail and a statement that the voter is not entitled to vote early by mail unless he or she submits a sufficient application by the deadline, which is Friday, May 13, 2022. (Secs. 84.007(c), 86.008).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 86.001 to provide that if the information required by Section 84.002(a)(1-a) included on the application does not identify the same voter identified on the applicant's voter registration application, the clerk shall reject the application. (Sec. 86.001(f)). If an application is rejected under Section 86.001(f), the clerk shall provide notice of the rejection. The notice must include information regarding the ability to correct or add the required information through the online ballot by mail tracker described in Section 86.015(c). (Sec. 86.001(f-1)). If the applicant corrects the application for ballot by mail online and that application subsequently identifies the same voter identified on the applicant's voter registration application, the clerk shall provide a ballot to the voter. (Sec. 86.001(f-2)).

**Monday, May 9, 2022 (15th day before runoff primary election day)**

STATE062397

Deadline to receive an FPCA **without** a postmark. If an FPCA is received by this date **without** a postmark to prove mailing date, the early voting clerk will accept the FPCA and mail the applicant a full ballot even if the applicant is **not** a permanently registered voter but meets the requirements under Title 2 of the Election Code (unless the voter marks the FPCA form indicating **"my intent to return is uncertain"** (2019 form), **or "my return is uncertain"** (2017 form), in which case the voter receives a federal-only ballot). (Sec. 101.052(i)). *See* Note under entry for Wednesday, May 4, 2022.

Last day to notify election judges of duty to hold election (Writ of Election). The Writ of Election must be given to each presiding judge and include:

1.  The judge's duty to hold the election;
2.  The type and date of election;
3.  The polling place location at which the judge will serve;
4.  The polling place hours; and
5.  The maximum number of clerks the judge may appoint.

(Sec. 4.007).

**Wednesday, May 11, 2022 (13th day before runoff primary election day)**

Last day to publish notice of L&A test if test is to be conducted on Friday, May 13, 2022, if testing has was not already completed by Wednesday, April 6, 2022.  Notice of the public L&A Test must be published at least 48 hours before the test begins.  The notice must be posted on the county's website.  Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test.  The county chair is required to confirm receipt of the notice. (Secs. 129.001, 129.023). See Note 9, above.

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) provides that if logic and accuracy testing is being conducted for a primary election, the general custodian of election records shall notify the county chair of the test at least 48 hours before the date of the test.  The county chair must confirm receipt of the notice.  (Sec. 129.023(b-1)

**Thursday, May 12, 2022 (day before the last day to apply for a ballot by mail; 12th day before runoff primary election day)**

First day a voter who becomes sick or disabled on or after this date may submit an application for a late ballot if the sickness or physical condition prevents the voter from appearing at the polling place without the likelihood of needing personal assistance or of injuring his or her health. (Sec. 102.001). *See* Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability (PDF). Applications may continue to be submitted until 5:00 PM on Election Day. (Sec. 102.003).

First day that counties with a population of 100,000 or more may convene their early voting ballot board and deliver ballot materials to begin processing and qualifying mail ballots; however, the mail ballots may not be counted until (i) the polls open on election day, or (ii) in a county with a population of 100,000 or more, the end of the period for early voting in person. (Secs. 87.0222, 87.0241). The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Sec. 87.0222).  **NOTE: results may not be released until the polls close on election day.**

> **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0411 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after an **early voting ballot board** discovers the defect and before the board decides whether to accept or reject a timely delivered ballot under Section 87.041, the board shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the board determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day.  If the board determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the board may notify the voter of the

STATE062398

defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the ballot board takes one of the actions described above, the board must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0411). *See* Note 14.

**Friday, May 13, 2022 (11th day before runoff primary election; last business day 48 hours before start of early voting in person)**

Last day for early voting clerk to receive applications for a ballot to be voted by mail. (Sec. 84.007(c)). All applications to vote by mail must be received by the early voting clerk before the close of regular business or 12 noon, **whichever is later**. Applications to vote by mail must be submitted by mail, common or contract carrier, fax (if a fax machine is available in the office of the early voting clerk) or by electronic submission of a scanned application with an original signature. The early voting clerk's designated e-mail address for the receipt of applications for ballot by mail must be posted on the Secretary of State's website. (Sec. 84.007(c)).

Last day to receive a FPCA from a voter. If the voter is **not** registered in the county (or the voter marked **"my intent to return is uncertain"** (2019 form), **or "my return is uncertain"** (2017 form)), the voter is eligible for a ballot containing federal offices only. (Secs. 101.052(f) & 114.004(c)).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.001 of the Code regarding FPCAs. Effective September 1, 2021, a member of the Texas National Guard or the National Guard of another state or a member of a reserve component of the armed forces of the United States serving on active duty under an order of the President of the United States or activated on state orders, or the spouse or dependent of a member, may submit an FPCA. (Sec. 101.001).

**NOTE**: If an ABBM is faxed or emailed or if an FPCA is faxed, then the applicant must submit the ORIGINAL application BY MAIL to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA.** If the early voting clerk does not receive the original ABBM or FPCA by that deadline, then the emailed or faxed ABBM or faxed FPCA will be considered incomplete, and the early voting clerk may NOT send the applicant a ballot. The requirement to mail the original application does not apply to an **emailed** FPCA. For additional information, please *see* Note 13, above.

An applicant for a ballot to be voted by mail (ABBM or FPCA) may submit the application by delivering it in person to the early voting clerk if the application is submitted not later than the close of regular business in the clerk's office on Friday, May 13, 2022. (Sec. 84.008).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 101.052 of the Code regarding FPCAs. Effective September 1, 2021, an FPCA may be submitted by in-person delivery by the voter in accordance with Section 84.008 of the Code or by common or contract carrier. (Sec. 101.052).

> **NOTE – NEW LAW:** HB 3107 (2021, R.S.) amended Section 84.008 of the Code to provide that an applicant for a ballot to be voted by mail may submit the application by delivering it in person to the early voting clerk if the application is submitted not later than the deadline provided by Section 84.007(c) of the Code. This means that effective September 1, 2021, voters may now personally deliver their ABBM or FPCA to the early voting clerk not later than the close of regular business in the early voting clerk's office or 12 noon, whichever is later, on the 11th day before election day (unless that day is a Saturday, Sunday, or legal state or national holiday, in which case the last day is the first preceding regular business day).

Last day to conduct public L&A test of a voting system. We highly ***recommend*** that this test is done on an earlier date to allow time for corrections to programming, if necessary. (See Note 9, above). Per Section 129.023, the L&A test shall be conducted not later than 48 hours before voting begins on such voting systems, assuming that the voting system will first be used for early voting in person.

STATE062399

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the general custodian of election records to demonstrate, using a representative sample of voting system equipment, that the source code of the equipment has not been altered. (Sec. 129.023(c-1)).

**Monday, May 16, 2022 — Friday, May 20, 2022 (8th — 4th day before runoff primary election day)**

In counties with a population of 55,000 or more, the early voting clerk must keep the main early voting polling place open for at least 12 hours each day between May 16, 2022 and May 20, 2022. Early voting must be conducted at permanent branch locations for at least 12 hours each day. (Secs. 85.005(c) & 85.067).

In counties with a population of less than 55,000, the early voting clerk must keep the main early voting polling place open for at least 12 hours each weekday of the last week of the early voting period for the runoff primary election if 15 or more registered voters petition the county for the extended 12-hour schedule. (Secs. 85.005(c) & 85.067).

**Monday, May 16, 2022 (8th day before runoff primary election day)**

First day to vote early in person. (Sec. 85.001(b)).

**NOTE:** The early voting period for the runoff primary election begins 10 days prior to election day, but because the first day of the early voting period falls on a weekend (Saturday, May 14, 2022), it is extended to the next regular business day, Monday, May 16, 2022. (Sec. 85.001(b), (c)).

In a primary election, a certain number of temporary branch locations must be established depending on the population size of the county:

1. in a county with a population of 400,000 or more, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each state representative district containing territory covered by the election.

2. in a county with a population of 120,000 or more but less than 400,000, the commissioners court **must** establish one or more temporary polling places, other than the main early voting polling place, in each commissioners precinct containing territory covered by the election.

3. in a county with a population of 100,000 or more but less than 120,000, the early voting clerk **must** establish one or more early voting polling places in each commissioners precinct for which the early voting clerk receives a **timely filed written request by at least 15 registered voters of that precinct**.

   The temporary polling place(s) must remain open for each weekday of the early voting period that the main early voting polling place will be open. The temporary branch polling place(s) must be open at least eight hours each day. (Secs. 85.062, 85.064).

   **NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 85.062 to provide that the location of temporary branch polling places in an election in which countywide polling places are used must be determined with the same methodology that is used for the location of countywide polling places.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 85.005 to provide that early voting in person must be conducted at the main early voting location on each weekday of the early voting period that is not a legal state holiday and for a period of at least **nine (9) hours**, except that voting may not be conducted earlier than 6:00 AM or later than 10:00 PM. (Sec. 85.005(a)).

**NOTE – NEW LAW: Temporary Branch Locations**: Effective September 1, 2021, the rules for temporary branch locations differ based on the population size of the county. *See* Note 7 for additional information regarding temporary branch location days and hours.

STATE062400

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 61.002 to provide that immediately before the opening of the polls on the first day of early voting and on election day, the presiding judge or alternate judge shall confirm that the public counters on each voting machine are set to zero and shall print the tape that shows that there are zero votes for each candidate or measure on the ballot. Each election judge and alternate judge shall sign the printed tapes. (Sec. 61.002).

If early voting by personal appearance is required to be conducted for extended hours, the county voter registrar's office is required to remain open for providing voter registration information during the extended hours that the main early voting polling place is open for voting. (Secs. 12.004(d), 85.005(c) & 85.006(e)).

If county election precincts are consolidated, county clerk must post at the polling place used in the preceding general election for state and county officers a notice of consolidation and location of the polling place. For purposes of conducting a runoff primary election, the "preceding general election" is the **preceding primary election**. (Secs. 4.003(b) & 172.1112). (The deadline is extended to the next regular business day which is Monday, May 16, 2022 due to the 10th day falling on Saturday, May 14, 2022. (Sec. 1.006).)

> **NOTE:** Section 172.1112 requires that the county clerk, rather than the county chair, post the notice of consolidation. The notice should be posted on the county's website if the county maintains a website. If the county does not maintain a website, then it should be posted on the commissioners court bulletin board.

> **NOTE:** Section 172.1112 requires the county to post the notice of election and notice of consolidated precincts on the county's website if the county maintains a website. Under the prior version of the law, the notice was required to be posted on the party's website.

**Wednesday, May 18, 2022 (4th business day before runoff primary election day)**

Last day for Secretary of State to receive a Request for Election Inspectors for the runoff primary election. The request must be a written request by 15 or more registered voters of the county for which the inspector is requested. (Sec. 34.001).

**Thursday, May 19, 2022 (day before the last day of early voting in person; 5th day before runoff primary)**

A voter is eligible to vote a late ballot if they will be out of the county of residence on election day due to a death in the immediate family (related within 2nd degree of consanguinity or affinity) that occurs on or after this day. The voter may submit the Application for Emergency Early Ballot Due to Death in Family starting Saturday, May 21, 2022 (the day after early voting in person ends). (Secs. 103.001, 103.003(b)). An application may be submitted after the last day of the period for early voting by personal appearance and before the close of business on the day before election day. (Sec. 103.003).

Early voting clerk must post Notice of Delivery of Early Voting Balloting Materials to the early voting ballot board if materials are to be delivered to the board on Friday, May 20, 2022. Notice must be posted continuously for 24 hours preceding each delivery to the board. (Secs. 87.0221, 87.0222, 87.023, 87.024, 87.0241).

> **NOTE:** The Notice of Delivery of Early Voting Balloting Materials serves as notice of the convening of the early voting ballot board. This notice should be posted every time the early voting ballot board reconvenes.

**Friday, May 20, 2022 (4th day before runoff primary election day)**

**Last day to vote early in person in the runoff primary election.** (Sec. 85.001(b)).

First day for voter registrar or elections administrator to return the list of registered voters used in first primary to the county chair if it is to be used for the runoff primary election. (Sec. 172.115(b)).

STATE062401

Deadline to publish notice of the first test of the automatic tabulating equipment, if the test is to be conducted as recommended on Sunday, May 22, 2022. The notice must be published at least 48 hours before the test. Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test.  The county chair must confirm receipt of the notice. (Secs. 127.093 & 127.096).

**After the polls close at the end of early voting**, the ballot board and/or central counting station may convene to perform the following activities, depending on the population size of the county:

**Counties with a population of 100,000 or more:**

First day those counties may convene their early voting ballot board and/or central counting station and begin **counting** ballots; **however, the results may not be announced until after the polls close on election day.** (Secs. 87.0222, 87.0241).

**NOTE** - If a county with a population of 100,000 or more is convening their early voting ballot board and/or central counting station early to begin **counting** ballots, the test of the tabulation equipment will need to be completed at least 48 hours before the equipment is used to count ballots. (Secs. 87.0222, 87.0241, 127.096).

**Counties with a population less than 100,000:**

First day those counties and political subdivisions may convene their early voting ballot board for **processing** and **qualifying** mail ballots, but cannot begin counting the ballots until the polls open on election day. The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Secs. 87.0221, 87.023, 87.024, 87.0241). *See* <u>Notice of Delivery of Early Voting Balloting Materials</u> <u>(PDF)</u>.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) added Section 87.0411 to provide a procedure by which a voter can correct certain defects in their carrier envelope containing their voted ballot. Not later than the second business day after an **early voting ballot board** discovers the defect and before the board decides whether to accept or reject a timely delivered ballot under Section 87.041, the board shall: (1) determine if it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day; and (2) return the carrier envelope to the voter by mail, if the board determines that it would be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day. If the board determines that it would not be possible for the voter to correct the defect and return the carrier envelope before the time the polls are required to close on election day, the board may notify the voter of the defect by phone or email and inform the voter that the voter may cancel their mail ballot in accordance with Section 84.032 or come to the early voting clerk's office in person not later than the sixth day after election day to correct the defect. If the ballot board takes one of the actions described above, the board must take that action with respect to each ballot in the election that to which these options apply. (Sec. 87.0411). *See* <u>Note 14</u>.

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 127.1232 to provide that in counties with a population of 100,000 or more, the general custodian of election records shall implement a video surveillance system that retains a record of all areas containing voted ballots: (1) from the time the voted ballots are delivered to the central counting station until the canvass of the precinct election returns; and (2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns. Video from the surveillance system shall be made available to the public by live stream. The recorded video is considered an election record and shall be retained by the general custodian until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later. (Sec. 127.1232).

**Saturday, May 21, 2022 (day after last day of early voting in person; 3rd day before runoff primary election day)**

First day to **submit an application for and vote** a late ballot because of a death in the immediate family that occurred on or after Thursday, May 19, 2022 ("the day before the last day of the period for early voting

STATE062402

by personal appearance"), and will require absence from the county of residence on election day. The application may be submitted through the close of business on May 23, 2022, the day before runoff primary election day. (Secs. 103.001 & 103.003(b)).

Last day to publish notice of the public L&A test of a voting system that will be used for the first time on election day, if test will be held on Monday, May 23, 2022. The last date to perform this test for voting systems that will be used for the first time on election day is Monday, May 23, 2022. Notice of the public L&A test must be published at least 48 hours before the test begins. The notice must be posted on the county's website if the county maintains a website. If the county does not maintain a website, the notice must be posted on the commissioners court bulletin board. Additionally, for a primary election, the custodian must notify the county chair of the test 48 hours prior to the test. The county chair must confirm receipt of the notice. (Secs. 1.006, 129.001 & 129.023).

**Sunday, May 22, 2022 (2nd day before primary election day)**

Last day to conduct first test of automatic tabulating equipment, if not done already. The test must be conducted at least 48 hours before ballots will be counted. The notice of the test must be published at least 48 hours before the test. (Secs. 127.093 & 127.096).

**Monday, May 23, 2022 (day before runoff primary election day)**

Last day to submit an <u>Application for Emergency Early Ballot Due to Death in Family</u> and vote a late ballot by personal appearance due to death in immediate family that occurred on or after Thursday, May 19, 2022. (Sec. 103.003).

Last day for early voting clerk to mark the precinct list of registered voters with a notation beside each name of voter who voted early, and deliver the list to election judges. The early voting clerk must also deliver the precinct early voting list. The list may be delivered electronically if the county will be using an electronic pollbook. (Sec. 87.122).

Deadline for county chair to post notices of changed polling places. The notice must be posted at the entrance of the polling place used in the last primary election and must provide the location of the new polling place. (Sec. 43.062).

**Delivery of Provisional Ballots and Forms**: If the voter registrar wants to take possession of the provisional ballots and forms on election night, the voter registrar must inform the custodian of the election records and post a <u>Notice of Election Night Transfer</u> no later than Monday, May 23, 2022, 24 hours before election day. (1 T.A.C. § 81.174(d)(3)).

>    **NOTE:** Under this type of delivery, the county voter registrar **must** go to the office of the custodian of election records and pick up the provisional ballots and forms.

>    **NOTE:** The general custodian of election records (or the early voting clerk, if applicable) must also post a <u>Notice of Delivery of Provisional Ballots</u> at least 24 hours before delivery will occur. (1 T.A.C. § 81.174(b)(1)).

Deadline for minor party chairs to submit petitions and precinct convention lists to Secretary of State and to the appropriate county clerk (or other county election official) for placement on the ballot. (Secs. 181.005(a), 181.006(b)(3), 182.003, 182.004). (The deadline is extended to the next regular business day which is Monday, May 23, 2022 due to the 75th day after the precinct conventions falling on Sunday, May 22, 2022. (Sec. 1.006).)

**Tuesday, May 24, 2022 (4th Tuesday in May) RUNOFF PRIMARY ELECTION DAY (Sec. 41.007(b)).**

STATE062403

| 7:00 AM – 7:00 PM | Polls are open. (Sec. 41.031(a)). |
| | Voter registrar's office is open. (Sec. 12.004(c)). |
| | Early voting clerk's office is open for early voting activities.  A voter may deliver a marked ballot by mail to the early voting clerk's office while the polls are open on election day.  The voter must provide an acceptable form of identification under Section 63.0101 upon delivery.  The identification procedure is the same as that used for personal appearance voting. (Secs. 63.0101, 83.011, 86.006). |
| | A voter may vote at the main early voting polling place if **voting machines** are used at regular polling place(s) on election day and the voter has a sickness or physical condition that prevents the voter from voting in the regular manner without personal assistance or a likelihood of injuring the voter's health. (Secs. 104.001 & 104.003). However, if the early voting ballots by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location. (Sec. 104.003). |
| 5:00 PM | Deadline for receiving Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability for late ballots to be voted by persons who became sick or disabled on or after Thursday, May 12, 2022 (12th day before election day). (Sec. 102.003(b)). *See* entry at Thursday, May 12, 2022. |
| 7:00 PM | Regular deadline for receiving **early voting ballots** by mail. **BUT see** entry for **Wednesday, May 25, 2022** on "**late domestic ballots,**" and entry for **Tuesday, May 31, 2022** on other "**late**" ballots. |
| | This is also the deadline to receive **late ballots cast by voters who became sick or disabled** on or after Thursday, May 12, 2022 (12th day before election day). (Secs. 86.007(a) & 102.006(c)). *See* entry at Thursday, May 12, 2022. |
| 7:00 PM | County election officer begins transmitting results to Secretary of State and transmits continuously until results are final. (Sec. 68.034). |

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 61.002 to provide that immediately before the opening of the polls on election day, the presiding judge or alternate judge shall confirm that the public counters on each voting machine are set to zero and shall print the tape that shows that there are zero votes for each candidate or measure on the ballot. Immediately after the closing of the polls on election day, the presiding judge or alternate judge shall print the tape to show the number of votes cast for each candidate or measure. Each election judge and alternate judge shall sign the printed tapes. (Sec. 61.002).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. (Sec. 127.131).

**NOTE: Receipt of Mail Ballots**: All early voting ballots sent by mail from inside the United States that are received by 7:00 PM on election day, Tuesday, May 24, 2022, **must be counted on election night**. If the carrier envelope does not bear a cancellation mark or a receipt mark, the ballot must arrive before the time the polls are required to close **on election day**. (Sec. 86.007(a)(1)). If the early voting clerk cannot determine whether a ballot arrived before that deadline, the ballot is considered to have arrived at the time the place at which the carrier envelopes are deposited was last inspected for removal of returned ballots. (Sec. 86.007(b)). The early voting clerk **must** check the mailbox for early voting mail ballots at least once after the time for regular mail delivery. (Sec. 86.007(b)).

STATE062404

**NOTE: An early voting mail ballot that is not received by 7:00 pm on election day may not be counted unless the ballot may be counted late, which applies to late domestic ballots (Sec. 86.007(a)(2)), ballots mailed from outside the United States (Sec. 86.007(d)), and ballots from members of the armed forces and merchant marine of the United States, Texas National Guard or the National Guard of another state or members of the Reserves, as well as their spouses and dependents (Sec. 101.057). See** entry **for Wednesday, May 25, 2022, and** entry **for Tuesday, May 31, 2022.** *See* **Tex. Sec'y of State Election** Advisory No. 2018-02.

**Note on Delivery of Early Voting by Personal Appearance and Mail Ballots**: The early voting clerk delivers the voted ballots, the key to the double-locked ballot box, etc., to the early voting ballot board at the time or times specified by the presiding judge of the early voting ballot board, during the hours on election day that the polls are open or as soon after the polls close as practicable. (Secs. 87.021, 87.022). The custodian of the key to the second lock of the double-locked early voting ballot box delivers his or her key to the presiding judge of the early voting ballot board on request of the presiding judge. (Secs. 85.032(d) & 87.025). **The custodian is the sheriff for county elections, elections ordered by the governor, and a primary election** (or the county judge in a year when the office of sheriff is on the ballot). (Sec. 66.060).

**NOTE:** If ballots are to be delivered before election day, the early voting clerk must post Notice of Delivery at least 24 hours before each delivery at the main early voting polling place. (Secs. 87.021, 87.022).

**Note on Manual Examination of Ballots Before Processing on Automatic Counting Equipment**: The central counting station manager shall direct the manual examination of all electronic voting system ballots to ascertain whether the ballots can be processed in the usual manner or if the ballots need to be duplicated to clearly reflect the voter's intent. (Sec. 127.125).

**Note on Testing Tabulating Equipment**: The **second test of automatic tabulating equipment** used for counting ballots at a central counting station must be conducted immediately before the counting of ballots with equipment begins. The **third test** must be conducted immediately after the counting is completed. (Secs. 127.093, 127.097 & 127.098).

After the polling place is officially closed and the last person has voted, the presiding judge may from time to time make an unofficial announcement of the total number of votes counted for each candidate and/or for or against each proposition in the order that they appear on the ballot. (Sec. 65.015(a)). The announcement shall be made at the entrance to the polling place. (Sec. 65.015(c)).

**NOTE:** The authority conducting the election may require or prohibit such announcements. (Sec. 65.015(b)) Unofficial election results must be released by the central counting station as soon as they are available after the polls close, but the presiding judge of the central counting station, in cooperation with the county election officer, may choose to withhold the release of vote totals until the last voter has voted. (Sec. 127.1311).

**Note on Precinct Election Returns:** Precinct election returns are delivered to the appropriate authorities after completion. (Secs. 66.053(a), 127.065, 127.066 & 127.067).

**Transfer of Provisional Ballots to Voter Registrar on Election Night:** The county voter registrar may take possession of the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used) on election night (instead of on the next business day) by informing the custodian of election records and posting a notice of such election night transfer no later than 24 hours before election day. Under this type of delivery, the voter registrar must go to the office of the custodian and pick up the ballot box(es) or transfer case(s) and associated forms. (Sec. 65.052; 1 T.A.C.§§ 81.172 – 81.174 & 81.176).

**NOTE – NEW LAW:** SB 1116 (2021, R.S.) created additional requirements regarding information that a county must post on its website for elections held by a county or elections for any local political subdivision in which the county has contracted to provide election services.   While these statutory web posting requirements do not specifically apply to primary elections, **we strongly recommend that you post this information for any primary election in which the county has contracted to provide election**

STATE062405

**services.** Accordingly, the following information should be posted on the county's website **as soon as practicable after the election.** This information should be accessible without having to make more than two selections or view more than two network locations after accessing the county's home page. The information on the website should include:

1. the results of each election;
2. the total number of votes cast;
3. the total number of votes cast for each candidate or for or against each measure;
4. the total number of votes cast by personal appearance on election day;
5. the total number of votes cast by personal appearance or mail during the early voting period; and
6. the total number of counted and uncounted provisional ballots cast. (Sec. 65.016).

**Wednesday, May 25, 2022 (1st business day after runoff primary election day)**

**5:00 PM –** Deadline to receive "**late domestic ballots**" mailed **within** the United States from **non-military voters and from any military voters** who submitted an **Application for Ballot by Mail** ("ABBM") (<u>not</u> a Federal Postcard Application – "FPCA"), if the carrier envelope was placed for delivery by mail or common or contract carrier **AND** bears a cancellation mark of a postal service or a receipt mark of a common or contract carrier or a courier indicating a time not later than **7:00 PM** at the location of the election on runoff primary election day, May 24, 2022. (Sec. 86.007(a)(2)). A late domestic ballot **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark. (Sec. 86.007(c), (e), & (f)).

> **NOTE:** This deadline does <u>not</u> apply to ballots sent by non-military voters who are overseas but applied for a ballot using an ABBM; these voters have until the 5th day after election day to return their ballots (or the next business day if the 5th day falls on a weekend or legal state or federal holiday). This deadline also does <u>not</u> apply to ballots mailed (domestically or from overseas) by certain members of the military who applied for a ballot using an FPCA; those voters have until the 6th day after election day to return their ballots. *See* <u>entry</u> for May 31, 2022.

Unless the county voter registrar has already taken possession of the provisional ballots prior to this date, the general custodian of election records must deliver the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used), along with the Summary of Provisional Ballots and the List of Provisional Voters for each precinct to the voter registrar by this day. The general custodian of election records makes this delivery to the voter registrar during the voter registrar office's regular business hours. (Secs. 65.052, 65.053; 1 T.A.C. §§ 81.172 – 81.174, 81.176).

> **NOTE:** If the voter registrar wants to take possession of the provisional ballots and forms on election night (Tuesday, May 24, 2022), the voter registrar must inform the custodian of the election records and post a notice of the election night transfer no later than 24 hours before election day. However, under this type of delivery, the voter registrar **must** go to the office of the custodian of election records and pick up the provisional ballots and forms. Also, note that the voter registrar may take possession of provisional ballots prior to election night if ballots are kept separate and may be provided without unlawful entry into ballot box. (1 T.A.C. §§ 81.172 – 81.174).

**Friday, May 27, 2022 (3rd day after primary election day)**

Last day to begin the **partial manual count** for entities using electronic voting systems for the counting of ballots. This is the last day to **begin** manual recount of ballots in three precincts or one percent of precincts, whichever is greater. (Sec. 127.201(a), (g)). The count must be completed not later than the 21st day after election day. Results of the manual count must be delivered to the Secretary of State not later than the 3rd day after the manual count is completed. (Sec. 127.201(e)). No partial manual count needs to be done of ballots cast on DRE voting machines, but partial manual count must be completed for mail ballots. (Sec. 127.201(g)).

> **NOTE:** For information on how to begin the partial manual count, please see <u>Tex. Sec'y of State Election Advisory No. 2018-30</u>.

STATE062406

**Monday, May 30, 2022 (Memorial Day)**

**Tuesday, May 31, 2022 (7th day after runoff primary election day)**

Last day to receive ballots from **non-military and any military voters** casting ballots from outside of the United States, who submitted an **ABBM** (not an FPCA) **AND** who placed their ballots in delivery by 7:00 PM on runoff primary election day, Tuesday, May 24, 2022, as evidenced by a postal service cancellation mark or a receipt mark of a common or contract carrier or a courier. (Sec. 86.007(d)). A late overseas ballot sent by a voter who applied for a ballot using an ABBM (not an FPCA) **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark. (Sec. 86.007(c), (e), & (f)). The deadline is extended to the next regular business day which is Tuesday, May 31, 2022, due to the **5th day falling on Sunday, May 29, 2022 and due to the fact that Monday, May 30, 2022 is Memorial Day, a legal holiday. (Sec. 86.007(d-1))**.

> **NOTE:** The delivery is considered timely if the carrier envelope or, if applicable, the envelope containing the carrier envelope is properly addressed with postage or handling charges prepaid **and** bears a cancellation mark of a recognized postal service or a receipt mark of a common or contract carrier or a courier indicating a time **by 7:00 PM** on runoff primary election day.

Last day to receive ballots from **non-military voters** casting ballots from <u>overseas</u>, who submitted a **FPCA, AND** who placed their ballots in delivery by 7:00 PM on runoff primary election day, Tuesday, May 24, 2022. (Sec. 86.007(d) & (e)). The deadline is extended to the next regular business day which is Tuesday, May 31, 2022 due to the **5th day falling on Sunday, May 29, 2022 and due to the fact that Monday, May 30, 2022 is Memorial Day, a legal holiday. (Sec. 86.007(d-1))**.

Last day to receive carrier envelopes mailed domestically (within the United States) OR overseas from voters who submitted a **FPCA AND** who are members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves. (Secs. 101.057 and 101.001). The deadline is extended to the next regular business day which is Tuesday, May 31, 2022 due to the **6th day falling on Monday, May 30, 2022, Memorial Day, a legal holiday. (Sec. 86.007(d-1))**.

> **NOTE -** Section 101.057 provides that carrier envelopes mailed domestically or overseas from certain **military voters** (members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves) who submitted a **Federal Post Card Application (FPCA)** may arrive on or before the 6th day after election day. (Secs. 86.007, 101.057 and 101.001).

> **NOTE: The carrier envelope or, if applicable, the envelope containing the carrier envelope sent by the military members listed above who applied to vote by mail using the FPCA does <u>NOT</u> need to bear a cancellation or receipt mark in order to be counted.**

Last day to post notice of county chair (or county chair's designee) and at least one member of county executive committee's canvass of the returns for the runoff primary election because canvass must take place on Thursday, June 2, 2022. This notice must be posted at least 72 hours before the scheduled time of the meeting. (Sec. 172.116; Secs. 551.002, 551.041 & 551.043, Texas Government Code).

> **NOTE:** Section 172.116 provides that a county chair may designate another individual to conduct the local canvass on the county chair's behalf. That designee must be a member of the county executive committee. If no member of the county executive committee is available to act as the county chair's

STATE062407

designee, then any individual who is a resident of the county and is affiliated with the same political party may act as the county chair's designee.

Deadline for ID related provisional voter to: (1) present acceptable photo identification to county voter registrar; or (2) if the voter does not possess and cannot reasonably obtain acceptable photo identification, follow the Reasonable Impediment Declaration procedure at the county voter registrar; or (3) execute an affidavit relative to "natural disaster" or "religious objection" in presence of county voter registrar, if applicable; or (4) qualify for the disability exemption, if applicable, with the county voter registrar. (Secs. 65.054, 65.0541).

Deadline for county voter registrar to complete the review of provisional ballots. (1 T.A.C. §§ 81.175 & 81.176).

Deadline for custodian of election records or presiding judge of the early voting ballot board to retrieve provisional ballots from county voter registrar. (1 T.A.C. §§ 81.172 – 81.175 & 81.176).

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.): Last day a voter may come to the early voting clerk's office in person to correct certain defects in their carrier envelope. (Secs. 87.0271, 87.0411). *See* Note 14.

## June

**Thursday, June 2, 2022 (9th day after runoff primary election day; 2nd Thursday after runoff primary election day)**

Last day for **early voting ballot board** to convene to qualify and count:

1.  any late **domestic** ballots (from non-military and from any military voters who submitted an ABBM) that bear a cancellation mark or receipt mark indicating they were placed for delivery by mail or common or contract carrier not later than 7:00 PM on election day, May 24, 2022, and were received not later than 5:00 PM on the first business day after election day, Wednesday, May 25, 2022. (Secs. 86.007(a), 87.125(a)).

2.  any late ballots that were submitted from outside the United States by voters who applied for the ballot using an ABBM or by non-military voters who applied for the ballot using an FPCA, and which were received by the 5th day after election day, Tuesday, May 31, 2022. (Secs. 86.007(d) & (d-1), 87.125(a)).

3.  any ballots received by the 6th day after election day, Tuesday, May 31, 2022, from voters who are members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine, members of the Texas National Guard, or the spouse or a dependent of a member of the Texas National Guard, a member of the National Guard of another state, or the spouse or a dependent of a member of the National Guard of another state, or members of the Reserves, or the spouse or a dependent of a member of the Reserves, and who applied for a ballot using an FPCA. (Secs. 101.057, 87.125(a)).

4.  any provisional ballots that have been reviewed by the voter registrar. (Secs. 65.051(a)).

**NOTE:** Ballots that do not qualify under 1-3 above should be treated as ballots not timely returned and should not be delivered to the ballot board.  (Sec. 86.007).

**NOTE:** If the early voting ballot board needs to meet after this date, it will require a court order to do so.

The time the board reconvenes is set by the presiding judge of the early voting ballot board. (Secs. 86.007(d), 87.125).

STATE062408

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) requires the presiding judge of the central counting station to provide and attest to a written reconciliation of votes and voters at the close of tabulation for election day and again after the central counting station meets for the last time to process late-arriving ballots by mail and provisional ballots. (Sec. 127.131).

**Local canvass** of the runoff primary election by county chair (or county chair's designee) and at least one member of the county executive committee must be conducted on this date. (Sec. 172.116(b)).

> **NOTE:** Section 172.116 provides that a county chair may designate another individual to conduct the local canvass on the county chair's behalf. That designee must be a member of the county executive committee. If no member of the county executive committee is available to act as the county chair's designee, then any individual who is a resident of the county and is affiliated with the same political party may act as the county chair's designee.

**Friday, June 3, 2022 (10th day after runoff primary election day; 24 hours after local canvass)**

The presiding judge of the EVBB shall mail a Notice of Rejected Ballot (PDF) to voters whose mail ballots were rejected no later than the 10th day after election day or as soon as practicable, depending on when the EVBB last convenes. (Sec. 87.0431).

> **NOTE:** Sec. 87.0431 requires notice to also be provided to email address of an overseas mail ballot voter if ballot was transmitted to the voter by email under Section 101.102.

**Wednesday, June 8, 2022 (15th day after runoff primary election day)**

Election records from the runoff primary election must be available in an electronic format no later than this day, for a fee of not more than $50.00. (Sec. 1.012(e)).

**Saturday, June 11, 2022 (3rd Saturday after runoff primary election day)**

Deadline for state executive committee to conduct **state canvass**. (Sec. 172.120).

**Monday, June 13, 2022 (11th day after local canvass; 20th day after runoff primary election day)**

Deadline for the presiding judge of the early voting ballot board to notify provisional voters whether their ballots were counted and if not, the reason why they were not counted. (Sec. 65.059; 1 T.A.C. § 81.176). (The deadline is extended to the next regular business day which is Monday, June 13, 2022 due to the **10th day falling on Sunday, June 12, 2022.** (Sec. 1.006).)

New party officers take office. (Sec. 171.022(c)).

**Wednesday, June 22, 2022 (20th day after local canvass)**

Deadline for county chair to post notice to the Secretary of State's website of the names of the persons elected as county chair and precinct chairs for the county. The notice must include (1) each party officer's address, (2) each precinct chair's precinct number, and (3) each precinct officer's phone number and email address, if supplied by the officer. (Sec. 172.118).

**Thursday, June 23, 2022 (30th day after runoff primary election day)**

Deadline for county clerk to deliver to Secretary of State precinct returns of primary election for all offices other than party offices, including precinct-by-precinct returns for early voting. The report must include early voting votes cast by mail and early voting votes cast by personal appearance. That delivery to SOS must be made through the electronic system for submission of the report. (Secs. 67.017 & 172.124).

STATE062409

NOTE: Sections 67.017 and 172.124 require this report to include all offices other than party offices in the precinct-by-precinct reports under this section. That report must include separate totals for early voting votes by mail and early voting votes by personal appearance.

## July

### Wednesday, July 13, 2022 (30th day after term of party office starts)

Deadline by which former county chair must transfer party bank accounts and records to new county chair; it is a **Class C misdemeanor** if the former county chair fails to transfer the records. (Sec. 171.028).

### Sunday, July 24, 2022 (61st day after runoff primary election day)

First day the general custodian of election records may (1) require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and (2) unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period. (Sec. 66.058(b)). **Please note that the custodian is not required by law to do this on Sunday, July 24, 2022; the custodian may choose to transfer the voted ballots to another secure container for the remainder of the preservation period on Monday, July 25, 2022 or a later date**.

## August

### Wednesday, August 31, 2022

Deadline for county chair to file report of the actual expenses of the general primary election and runoff primary election (Final Cost Report) with the Secretary of State. (Sec. 173.084). Any surplus remaining in a county primary fund account after payment of approved expenses must be remitted to the Secretary of State on request. (Sec. 173.0851). The county chair is not entitled to final payment unless precinct-by-precinct returns have been received by the Secretary of State.

## 2023

## January

### January 1, 2023 (1st day after end of calendar year 2022)

**NOTE – NEW LAW:** SB 1 (2021, 2nd C.S.) amended Section 127.1232 to provide that in counties with a population of 100,000 or more, the general custodian of election records shall implement a video surveillance system that retains a record of all areas containing voted ballots: (1) from the time the voted ballots are delivered to the central counting station until the canvass of the precinct election returns; and (2) from the time the voted ballots are delivered to the signature verification committee or early voting ballot board until the canvass of precinct election returns. Video from the surveillance system shall be made available to the public by live stream. The recorded video is considered an election record and shall be retained by the general custodian until the end of the calendar year in which an election is held or until an election contest filed in the county has been resolved, whichever is later. (Sec. 127.1232).

## 2024

### January 2024 (Twenty-two (22) months after 2022 primary election day)

Contents of ballot box(es) may be destroyed **IF** no contest or criminal investigation has arisen (Secs. 1.013, 66.058), and **IF** no open records request has been filed (Tex. Att'y Gen. ORD-505 (1988)).

    **All** election records must be preserved for 22 months from election day, even when there is no federal office on the ballot. (Sec. 66.058).

STATE062410

**Notable Exceptions:**

> **Permanent Records**: Election results must be permanently maintained in the election register. (Sec. 67.006).

> **Electronic Voting Systems**: See advisories on our website for preservation procedures for electronic voting systems. (*See* Tex. Sec'y of State Election Advisory No. 2019-23.)

## March 2024 (Twenty-two (22) months after 2022 runoff primary election day; two years after 2022 primary election day)

Contents of ballot box(es) may be destroyed **IF** no contest or criminal investigation has arisen (Secs. 1.013; 66.058), and **IF** no open records request has been filed (Tex. Att'y Gen. ORD-505 (1988)).

**All** election records must be preserved for 22 months from election day, even when there is no federal office on the ballot. (Sec. 66.058).

**Notable Exceptions:**

> **Permanent Records**: Election results must be permanently maintained in the election register. (Sec. 67.006).

> **Electronic Voting Systems**: See advisories on our website for preservation procedures for electronic voting systems. (See Tex. Sec'y of State Election Advisory No. 2019-23.)

Candidate applications must be retained by the county chair for two years (24 months) after date of primary election. (Sec. 141.036).

STATE062411



# Building Confidence in U.S. Elections



## REPORT OF THE COMMISSION ON FEDERAL ELECTION REFORM








SEPTEMBER 2005

**ORGANIZED BY**
Center for Democracy and Election Management
American University

**SUPPORTED BY**
Carnegie Corporation of New York
The Ford Foundation
John S. and James L. Knight Foundation
Omidyar Network

**RESEARCH BY**
Electionline.org/The Pew Charitable Trusts

STATE097647





# Building Confidence in U.S. Elections

## REPORT OF THE COMMISSION ON FEDERAL ELECTION REFORM

### SEPTEMBER 2005

**ORGANIZED BY**
Center for Democracy and Election Management
American University

**SUPPORTED BY**
Carnegie Corporation of New York
The Ford Foundation
John S. and James L. Knight Foundation
Omidyar Network

**RESEARCH BY**
Electionline.org/The Pew Charitable Trusts

STATE097648

## 4.2 VOTE BY MAIL

A growing number of Americans vote by mail. Oregon moved entirely to a vote-by-mail system in 1998, and the practice of casting ballots by mail has continued to expand nationwide as voters and election officials seek alternatives to the traditional system of voting at polling stations. The state legislatures of California and of Washington state have considered legislation to expand the use of vote by mail, and in 24 states no excuse is required to vote absentee.

The impact of vote by mail is mixed. Proponents argue that vote by mail facilitates participation among groups that experience low voter turnout, such as elderly Americans and Native Americans.

While vote by mail appears to increase turnout for local elections, there is no evidence that it significantly expands participation in federal elections.[40] Moreover, it raises concerns about privacy, as citizens voting at home may come under pressure to vote for certain candidates, and it increases the risk of fraud. Oregon appears to have avoided significant fraud in its vote-by-mail elections by introducing safeguards to protect ballot integrity, including signature verification. Vote by mail is, however, likely to increase the risks of fraud and of contested elections in other states, where the population is more mobile, where there is some history of troubled elections, or where the safeguards for ballot integrity are weaker.


An Oregon voter drops off his mail ballot (AP Photo/Rick Bowmer)

The case of King County, Washington, is instructive. In the 2004 gubernatorial elections, when two in three ballots there were cast by mail, authorities lacked an effective system to track the number of ballots sent or returned. As a result, King County election officials were unable to account for all absentee ballots. Moreover, a number of provisional ballots were accepted without signature verification.[41] The failures to account for all absentee ballots and to verify signatures on provisional ballots became issues in the protracted litigation that followed Washington state's 2004 gubernatorial election.

Vote by mail is popular but not a panacea for declining participation. While there is little evidence of fraud in Oregon, where the entire state votes by mail, absentee balloting in other states has been one of the major sources of fraud. Even in Oregon, better precautions are needed to ensure that the return of ballots is not intercepted.

The evidence on "early" voting is similar to that of vote by mail. People like it, but it does not appear to increase voter participation, and there are some drawbacks. It allows a significant portion of voters to cast their ballot before they have all of the information that will become available to the rest of the electorate. Crucial information about candidates may emerge in the final weeks or even days of an election campaign. Early and convenience voting also detracts from the collective expression of citizenship that takes place on Election

STATE097689

Day. Moreover, the cost of administering elections and of running campaigns tends to increase when early and mail-in voting is conducted in addition to balloting on Election Day. Early voting should commence no earlier than 15 days prior to the election, so that all voters will cast their ballots on the basis of largely comparable information about the candidates and the issues.

---

### Recommendation on Vote by Mail

**4.2.1** The Commission encourages further research on the pros and cons of vote by mail and of early voting.

---

## 4.3 VOTE CENTERS

Another alternative to voting at polling stations is the innovation of "vote centers," pioneered by Larimer County, Colorado. Vote centers are larger in size than precincts but fewer in number. They are dispersed throughout the jurisdiction, but close to heavy traffic routes, larger residential areas, and major employers. These vote centers allow citizens to vote anywhere in the county rather than just at a designated precinct. Because these vote centers employ economies of scale, fewer poll workers are required, and they tend to be more professional. Also, the vote centers are reported to use more sophisticated technology that is more accessible to voters with disabilities. Vote centers eliminate the incidence of out-of-precinct provisional ballots, but they need to have a unified voter database that can communicate with all of the other centers in the county to ensure that eligible citizens vote only once.

While vote centers appear to have operated effectively in Larimer County, further research is needed to determine if the costs of establishing vote centers are offset by the savings of eliminating traditional polling sites. Moreover, because vote centers replace traditional voting at precincts, which are generally closer to a voter's home, it is not clear that citizens actually view them as more convenient.

---

### Recommendations on Vote Centers

**4.3.1** States should modify current election law to allow experimentation with voting centers. More research, however, is needed to assess whether voting centers expand voter participation and are cost effective.

**4.3.2** Voting centers need a higher quality, computer-based registration list to assure that citizens can vote at any center without being able to vote more than once.

---

STATE097690

## INDICTMENT

CAUSE NO. _50949-B_

### THE STATE OF TEXAS vs. MARLENA ROSANNE JACKSON

DOB: 11/29/1969

OFFENSE:  COUNT ONE: ENGAGING IN ORGANIZED ELECTION
FRAUD (F1)
COUNT TWO: ILLEGAL VOTING (F2)
COUNTS THREE: THIRTY-THREE - FRAUDULENT USE
OF MAIL BALLOT APPLICATION ENHANCED (F3)
COUNTS THIRTY-FOUR – FORTY: UNLAWFUL
POSSESSION OF BALLOT/BALLOT ENVELOPE
ENHANCED (SJF)
COUNTS FORTY-ONE – SEVENTY-ONE: ELECTION
FRAUD ENHANCED (SJF)
COUNTS SEVENTY-TWO – NINETY-SEVEN:
TAMPERING WITH A GOVERNMENTAL RECORD
WITH INTENT TO HARM OR DEFRAUD (SJF)

### IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, duly selected, empaneled, sworn, charged, and organized as such for the County of Gregg, State of Texas, at the July-December, 2020 term of the 188th District Court for said County, upon their oaths present in and to said Court that from on or about the 22nd day of January A.D., 2018 and continuing until on or about the 6th day of March A.D., 2018, and anterior to the presentment of this Indictment, in the County and State aforesaid, MARLENA ROSANNE JACKSON, hereinafter called Defendant, did then and there,

COUNT ONE
**Engaging in Organized Election Fraud (F1)**

with the intent to establish, maintain, and participate in a vote harvesting organization, said organization consisting of Shannon Brown, Marlena Jackson, Dewayne Ward, and Charlie Burns, who collaborated in carrying on election offenses under Titles 1 through 7 of the Texas Election Code, knowingly commit the offenses of illegal voting, unlawful assistance, fraudulent use of a mail ballot application multiple times in the same election, unlawful possession of a ballot or carrier envelope of another multiple times in the same election, and unlawfully assisting a voter voting a ballot by mail, by committing said offenses as the primary actor or by acting with the intent to promote or assist the commission of said offenses by soliciting, encouraging, directing, aiding, or attempting to aid members of said organization to commit said offenses,

Page **1** of **21** – Marlena Jackson

STATE097980

## COUNT TWO
### Illegal Voting (F2)
And further that Defendant, on or about the 13th day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas did then and there knowingly mark Andrew Erwin's ballot, without specific direction from Andrew Erwin on how to mark the ballot,

## COUNT THREE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Corby Martin, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT FOUR
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Linda Carrier, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT FIVE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Davonia Bradley, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SIX
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Rayford Jordan, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SEVEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Victoria Miller-Burns, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

STATE097981

## COUNT EIGHT
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Lorine Bagley, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT NINE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Eric Taylor, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Yolita Johnson, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT ELEVEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Lorenzo Washington, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWELVE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Terri Thomas, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact Shannon Brown, a candidate on the ballot in the upcoming election, assisted the voter with said application,

## COUNT THIRTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)
And further that Defendant, on or about the 23rd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Robert Harvey Jr., specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

STATE097982

## COUNT FOURTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Roceta Anderson, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT FIFTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Kaylon Earl, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SIXTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Ricardo Pencheon, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SEVENTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Shannon Martin, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT EIGHTEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Jennifer Martin, specifically: Defendant indicated by signature the she assisted the voter in completing an application for ballot by mail, when in fact Shannon Brown, a candidate on the ballot in the upcoming election, assisted the voter with said application,

## COUNT NINETEEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Mary Lynn Odom, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact another person assisted the voter with said application,

Page **4** of **21** – Marlena Jackson

## COUNT TWENTY
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Tiesean McCray, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWENTY-ONE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas did then and there knowingly provide false information on an application for ballot by mail for a voter, Otis Jones, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWENTY-TWO
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Kenneth Pierson, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWENTY-THREE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on application for ballot by mail for a voter, Athena Johnson, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact another person assisted the voter with said application,

## COUNT TWENTY-FOUR
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Roderick Smith, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact another person assisted the voter with said application,

## COUNT TWENTY-FIVE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas did then and there knowingly provide false information on an application for ballot by mail for a voter, Beshad Faggans, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

STATE097984

## COUNT TWENTY-SIX
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Veronica Moore, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact Shannon Brown, a candidate on the ballot in the upcoming election, assisted the voter with said application,

## COUNT TWENTY-SEVEN
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Coby Johnson, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWENTY-EIGHT
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Cason Johnson, specifically: Defendant marked the application to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT TWENTY-NINE
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 14th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Keyianna Lister, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact Shannon Brown, a candidate on the ballot in the upcoming election, assisted the voter with said application,

## COUNT THIRTY
### Fraudulent Use of Mail Ballot Application Enhanced (F3)

And further that Defendant, on or about the 14th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly provide false information on an application for ballot by mail for a voter, Tamika Buchanan, specifically: Defendant indicated by signature that she assisted the voter in completing an application for ballot by mail, when in fact Shannon Brown, a candidate on the ballot in the upcoming election, assisted the voter with said application,

STATE097985

### COUNT THIRTY-ONE
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Andrew Erwin, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

### COUNT THIRTY-TWO
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Elizabeth Choice, specifically: Defendant caused a forged signature of the voter to be appear on her application for ballot by mail,

### COUNT THIRTY-THREE
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly submit an application for ballot by mail for voter Kaylon Earl without the voter's knowledge and authorization, specifically: Defendant submitted an application that purported to be a request by the voter to receive ballots by mail for the Democratic Party for elections occurring in 2018, when in fact the voter did not wish to make such a request,

And it is further alleged that Defendant committed the offenses described in Counts Three through Thirty-Three in the March 6, 2018 Democratic primary election,

### COUNT THIRTY-FOUR
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**

And further that Defendant, on or about the 12th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Linda Carrier,

### COUNT THIRTY-FIVE
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**

And further that Defendant, on or about the 13th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Robert Harvey Jr,

### COUNT THIRTY-SIX
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**

And further, that Defendant, on or about the 13th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Andrew Erwin,

STATE097986

## COUNT THIRTY-SEVEN
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)
And further that Defendant, on or about the 15th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Rayford Jordan,

## COUNT THIRTY-EIGHT
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)
And further that Defendant, on or about the 20th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Coby Johnson,

## COUNT THIRTY-NINE
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)
And further that Defendant, on or about the 20th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Cason Johnson,

## COUNT FORTY
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)
And further that Defendant, on or about the 21st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Ricky Johnson,

And it is further alleged that Defendant committed the offenses described in Counts Thirty-Four through Forty in the March 6, 2018 Democratic primary election,

## COUNT FORTY-ONE
### Election Fraud Enhanced (SJF)
And further that Defendant, on or about the 12th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there, while in the presence of the ballot and during the voting process, knowingly make an effort to influence the independent exercise of the vote of Linda Carrier, specifically: Defendant influenced Linda Carrier to vote for candidate Shannon Brown for Gregg County Commissioner, Precinct 4,

## COUNT FORTY-TWO
### Election Fraud Enhanced (SJF)
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Yolita Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Yolita Johnson's mail ballot application to be marked "disability," when Yolita Johnson was in fact not disabled and was not eligible to vote by mail,

STATE097987

## COUNT FORTY-THREE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Corby Martin, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Corby Martin's mail ballot application to be marked "disability," when Coby Martin was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-FOUR
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Lorine Bagley, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Lorine Bagley's mail ballot application to be marked "disability," when Lorine Bagley was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-FIVE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Eric Taylor, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Eric Taylor's mail ballot application to be marked "disability," when Eric Taylor was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-SIX
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Davonia Bradley, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Davonia Bradley's mail ballot application to be marked "disability," when Davonia Bradley was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-SEVEN
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Linda Carrier, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Linda Carrier's mail ballot application to be marked "disability," when Linda Carrier was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-EIGHT
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Victoria Miller-Burns, to obtain a ballot under false pretenses, specifically:

STATE097988

Defendant caused the eligibility reason on Victoria Miller-Burns' mail ballot application to be marked "disability," when Victoria Miller-Burns was in fact not disabled and was not eligible to vote by mail,

## COUNT FORTY-NINE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Rayford Jordan, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Rayford Jordon's mail ballot application to be marked "disability," when Rayford Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Terri Thomas, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Terri Thomas' mail ballot application to be marked "disability," when Terri Thomas was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-ONE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Andrew Erwin, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Andrew Erwin's mail ballot application to be marked "disability," when Andrew Erwin was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-TWO
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 23rd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Robert Harvey Jr., to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Robert Harvey Jr.'s mail ballot application to be marked "disability," when Robert Harvey Jr. was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-THREE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Roceta Anderson to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Roceta Anderson's mail ballot application to be marked "disability," when Roceta Anderson was in fact not disabled and was not eligible to vote by mail,

STATE097989

## COUNT FIFTY-FOUR
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Shannon Martin to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Shannon Martin's mail ballot application to be marked "disability," when Shannon Martin was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-FIVE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Jennifer Martin to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Jennifer Martin's mail ballot application to be marked "disability," when Jennifer Martin was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-SIX
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Ricardo Pencheon to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Ricardo Pencheon's mail ballot application to be marked "disability," when Ricardo Pencheon was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-SEVEN
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Kaylon Earl to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Kaylon Earl's mail ballot application to be marked "disability," when Kaylon Earl was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-EIGHT
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Mary Lynn Odom to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Mary Lynn Odom's mail ballot application to be marked "disability," when Mary Lynn Odom was in fact not disabled and was not eligible to vote by mail,

## COUNT FIFTY-NINE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Roderick Smith, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Roderick Smith's mail ballot application to be marked

STATE097990

"disability," when Roderick Smith was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Athena Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Athena Johnson's mail ballot application to be marked "disability," when Athena Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-ONE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Loretta Faggans to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Loretta Faggans' mail ballot application to be marked "disability," when Loretta Faggans was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-TWO
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Tiesean McCray, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Tiesean McCray's mail ballot application to be marked "disability," when Tiesean McCray was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-THREE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Otis Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Otis Johnson's mail ballot application to be marked "disability," when Otis Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-FOUR
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Kenneth Pierson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Kenneth Pierson's mail ballot application to be marked "disability," when Kenneth Pierson was in fact not disabled and was not eligible to vote by mail,

STATE097991

## COUNT SIXTY-FIVE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Veronica Moore, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Veronica Moore's mail ballot application to be marked "disability," when Veronica Moore was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-SIX
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Aubrey Durham, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Aubrey Durham's mail ballot application to be marked "disability," when Aubrey Durham was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-SEVEN
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Beshad Faggans, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Beshad Faggans' mail ballot application to be marked "disability," when Beshad Faggans was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-EIGHT
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Coby Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Coby Johnson's mail ballot application to be marked "disability," when Coby Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT SIXTY-NINE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Cason Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Cason Johnson's mail ballot application to be marked "disability," when Cason Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT SEVENTY
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 14th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Keyannia Lister, to obtain a ballot under false pretenses, specifically: Defendant

STATE097992

caused the eligibility reason on Keyannia Lister's mail ballot application to be marked "disability," when Keyannia Lister was in fact not disabled and was not eligible to vote by mail,

## COUNT SEVENTY-ONE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 14th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Tamika Buchanan, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Tamika Buchanan's mail ballot application to be marked "disability," when Tamika Buchanan was in fact not disabled and was not eligible to vote by mail,

And it is further alleged that Defendant committed the offenses described in Counts Forty-One through Seventy-One in the March 6, 2018 Democratic primary election,

## COUNT SEVENTY-TWO
### Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Corby Martin, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-THREE
### Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Terri Thomas, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-FOUR
### Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Davonia Bradley, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

STATE097993

## COUNT SEVENTY-FIVE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Victoria Miller-Burns, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-SIX
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Rayford Jordan, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-SEVEN
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Lorine Bagley, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-EIGHT
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Eric Taylor, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT SEVENTY-NINE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for

STATE097994

voter Lorenzo Washington, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Yolita Johnson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-ONE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Andrew Erwin, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-TWO
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 23rd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Robert Harvey Jr., with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-THREE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Shannon Martin, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

STATE097995

## COUNT EIGHTY-FOUR
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Jennifer Martin, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-FIVE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Roceta Anderson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-SIX
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Kaylon Earl, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-SEVEN
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 25th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority, and candidate Kasha Williams, an application for ballot by mail for voter Ricardo Pencheon, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT EIGHTY-EIGHT
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud a voter, Elizabeth Choice, the Gregg County election authority, and candidate Kasha Williams, an

Page **17** of **21** – Marlena Jackson

STATE097996

application for ballot by mail for voter Elizabeth Choice, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: Defendant forged the voter's signature on an application for ballot by mail before submitting it to the election office,

## COUNT EIGHTY-NINE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Tiesen McCray, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Otis Jones, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-ONE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Athena Johnson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-TWO
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 26th day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Kenneth Pierson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

STATE097997

## COUNT NINETY-THREE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Veronica Moore, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-FOUR
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 1st day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud, the Gregg County election authority and candidate Kasha Williams an application for ballot by mail for voter Beshad Faggans, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-FIVE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Coby Johnson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-SIX
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 2nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Cason Johnson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT NINETY-SEVEN
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 14th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for

STATE097998

voter Tamika Buchanan, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_Sherri Zucker_
Foreperson of the Grand Jury

STATE097999

THE STATE OF TEXAS
COUNTY OF GREGG

I, Trey Hattaway, Clerk of the District Court within and for the County and State aforesaid, do hereby certify that the foregoing contains a true and correct copy of the Indictment in Cause No. _50949-B_, of the State of Texas vs. MARLENA ROSANNE JACKSON as now on file in this office.

IN TESTIMONY WHEREOF I hereto set my hand and seal, this ___23rd___ day of _Sept._, A.D. 20 _20_.


By _____
Deputy

_____
Trey Hattaway
Clerk of the District Court
Gregg County, Texas


WITNESSES

_____

_____

_____

_____

Page **21** of **21** -- Marlena Jackson

**STATE098000**

# INDICTMENT

CAUSE NO. _50953-B_

THE STATE OF TEXAS vs. SHANNON EVERETTE BROWN

DOB: 10/20/1970

OFFENSE:   COUNT ONE: ENGAGING IN ORGANIZED ELECTION
FRAUD (F2)
COUNTS TWO – EIGHT: FRAUDULENT USE OF MAIL
BALLOT APPLICATION ENHANCED (F3)
COUNTS NINE – TEN: UNLAWFUL POSSESSION OF
BALLOT/BALLOT ENVELOPE ENHANCED (SJF)
COUNTS ELEVEN – EIGHTEEN: ELECTION FRAUD
ENHANCED (SJF)
COUNTS NINETEEN – TWENTY-THREE: TAMPERING
WITH A GOVERNMENTAL RECORD WITH INTENT
TO HARM OR DEFRAUD (SJF)

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, duly selected, empaneled, sworn, charged, and organized as
such for the County of Gregg, State of Texas, at the July-December, 2020 term of the
188th District Court for said County, upon their oaths present in and to said Court
that from on or about the 22nd day of January A.D., 2018 and continuing until on or
about the 6th day of March A.D., 2018, and anterior to the presentment of this
Indictment, in the County and State aforesaid, SHANNON EVERETTE BROWN,
hereinafter called Defendant, did then and there,

### COUNT ONE
#### Engaging in Organized Election Fraud (F2)

with the intent to establish, maintain, and participate in a vote harvesting
organization, said organization consisting of Shannon Brown, Marlena Jackson,
Dewayne Ward, and Charlie Burns, who collaborated in committing election offenses
under Titles 1 through 7 of the Texas Election Code, knowingly commit the offenses of
illegal voting, unlawful assistance, fraudulent use of a mail ballot application multiple
times in the same election, unlawful possession of a ballot or carrier envelope of
another multiple times in the same election, and unlawfully assisting a voter voting a
ballot by mail, by committing said offenses as the primary actor or by acting with the
intent to promote or assist the commission of said offenses by soliciting, encouraging,
directing, aiding, or attempting to aid members of said organization to commit said
offenses,

STATE098001

## COUNT TWO
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Davonia Bradley, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT THREE
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Yolita Johnson, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT FOUR
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Terri Thomas, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT FIVE
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Ricky Johnson, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SIX
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Eric Taylor, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT SEVEN
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

And further that Defendant, on or about the 23rd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Robert Harvey Jr., specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

## COUNT EIGHT
**Fraudulent Use of Mail Ballot Application Enhanced (F3)**

Page **2** of **7** – Shannon Everette Brown

STATE098002

And further that Defendant, on or about the 1st day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Veronica Moore, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

And it is further alleged that Defendant committed the offenses described in Counts Two through Eight in the same election,

## COUNT NINE
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)

And further that Defendant, on or about the 17th day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or carrier envelope of a voter, Davonia Bradley,

## COUNT TEN
### Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)

And further that Defendant, on or about the 6th day of March A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or carrier envelope of a voter, Tamika Buchanan,

And it is further alleged that Defendant committed the offenses described in Counts Nine and Ten in the same election,

## COUNT ELEVEN
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 12th day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there, while in the presence of the ballot and during the voting process, knowingly make an effort to influence the independent exercise of the vote of Linda Carrier, specifically: Defendant influenced Linda Carrier to vote for candidate Shannon Brown for Gregg County Commissioner, Precinct 4,

## COUNT TWELVE
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Yolita Johnson, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Yolita Johnson's mail ballot application to be marked "disability," when Yolita Johnson was in fact not disabled and was not eligible to vote by mail,

## COUNT THIRTEEN
### Election Fraud Enhanced (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Terri Thomas, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Terri Thomas' mail ballot application to be marked "disability," when Terri Thomas was in fact not disabled and was not eligible to vote by mail,

STATE098003

COUNT FOURTEEN
**Election Fraud Enhanced (SJF)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Davonia Bradley to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Davonia Bradley's mail ballot application to be marked "disability," when Davonia Bradley was in fact not disabled and was not eligible to vote by mail,

COUNT FIFTEEN
**Election Fraud Enhanced (SJF)**

And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Eric Taylor, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Eric Taylor's mail ballot application to be marked "disability," when Eric Taylor was in fact not disabled and was not eligible to vote by mail,

COUNT SIXTEEN
**Election Fraud Enhanced (SJF)**

And further that Defendant, on or about the 23rd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Robert Harvey Jr., to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Robert Harvey Jr's mail ballot application to be marked "disability," when Robert Harvey Jr. was in fact not disabled and was not eligible to vote by mail,

COUNT SEVENTEEN
**Election Fraud Enhanced (SJF)**

And further that Defendant, on or about the 1st day of February 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Veronica Moore, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Veronica Moore's mail ballot application to be marked "disability," when Veronica Moore was in fact not disabled and was not eligible to vote by mail,

COUNT EIGHTEEN
**Election Fraud Enhanced (SJF)**

And further that Defendant, on or about the 14th day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there cause Tamika Buchanan, to obtain a ballot under false pretenses, specifically: Defendant caused the eligibility reason on Tamika Buchanan's mail ballot application to be marked "disability," when Tamika Buchanan was in fact not disabled and was not eligible to vote by mail,

And it is further alleged that Defendant committed the offenses described in Counts Eleven through Eighteen in the same election,

Page **4** of **7** – Shannon Everette Brown

STATE098004

## COUNT NINETEEN
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Terri Thomas, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT TWENTY
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Yolita Johnson, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNTY TWENTY-ONE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams an application for ballot by mail for voter Davonia Bradley, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled.

## COUNT TWENTY-TWO
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 23rd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for voter Robert Harvey Jr., with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

## COUNT TWENTY-THREE
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 14th day of February A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams, an application for ballot by mail for

STATE098005

voter Tamika Buchanan, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

AGAINST THE PEACE AND DIGNITY OF THE STATE.


Foreperson of the Grand Jury

Page **6** of **7** -- Shannon Everette Brown

STATE098006

THE STATE OF TEXAS
COUNTY OF GREGG

I, Trey Hattaway, Clerk of the District Court within and for the County and State aforesaid, do hereby certify that the foregoing contains a true and correct copy of the Indictment in Cause No. _50953-B_, of the State of Texas vs. SHANNON EVERETTE BROWN as now on file in this office.

IN TESTIMONY WHEREOF I hereto set my hand and seal, this _23rd_ day of _Sept._, A.D. 20 _20_.

By _____
Deputy

_____
Trey Hattaway
Clerk of the District Court
Gregg County, Texas

WITNESSES

_____

_____

_____

_____

Page **7** of **7** – Shannon Everette Brown

STATE098007

# INDICTMENT

CAUSE NO. 50951-B

## THE STATE OF TEXAS vs. CHARLIE BURNS, JR.

DOB: 06/09/1936

OFFENSE:   COUNT ONE - ENGAGING IN ORGANIZED ELECTION
           FRAUD (F3)
           COUNT TWO - FRAUDULENT USE OF APPLICATION
           FOR BALLOT BY MAIL (SJF)
           COUNTS THREE – SEVEN - POSSESSION OF A
           BALLOT OR CARRIER ENVELOPE ENHANCED
           (SJF)
           COUNT EIGHT - TAMPERING WITH A
           GOVERNMENTAL RECORD WITH INTENT TO
           HARM OR DEFRAUD (SJF)

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, duly selected, empaneled, sworn, charged, and organized as such for the County of Gregg, State of Texas, at the July-December, 2020 term of the 188th District Court for said County, upon their oaths present in and to said Court that from on or about the 22nd day of January A.D., 2018 and continuing until on or about the 6th day of March A.D., 2018, and anterior to the presentment of this Indictment, in the County and State aforesaid, CHARLIE BURNS, JR., hereinafter called Defendant, did then and there

### COUNT ONE
#### Engaging in Organized Election Fraud (F3)

with the intent to establish, maintain, and participate in a vote harvesting organization, said organization consisting of Shannon Brown, Marlena Jackson, Dewayne Ward, and Charlie Burns, who collaborated in carrying on election offenses under Titles 1 through 7 of the Texas Election Code, knowingly commit the offenses of fraudulent use of a mail ballot application and possessing a ballot or carrier envelope of another multiple times in the same election, by acting with the intent to promote or assist the commission of said offense by soliciting, encouraging, directing, aiding, or attempting to aid members of said organization to commit said offense,

### COUNT TWO
#### Fraudulent Use of Application for Ballot by Mail (SJF)

And further that Defendant, on or about the 22nd day of January A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there intentionally cause false information to be provided on an application for ballot by mail for a voter, Davonia Bradley, specifically: Defendant caused the application to be marked to reflect that the voter was disabled, when in fact the voter was not disabled,

Page **1** of **4** – Charlie Burns, Jr.

STATE098008

## COUNT THREE
### Possession of a Ballot or Carrier Envelope Enhanced (SJF)

And further that Defendant, on or about the 16th of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Otis Jones,

## COUNT FOUR
### Possession of a Ballot or Carrier Envelope Enhanced (SJF)

And further that Defendant, on or about the 17th of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Natasha Bush,

## COUNT FIVE
### Possession of a Ballot or Carrier Envelope Enhanced (SJF)

And further that Defendant, on or about the 17th of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Davonia Bradley,

## COUNT SIX
### Possession of a Ballot or Carrier Envelope Enhanced (SJF)

And further that Defendant, on or about the 17th of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Veronica Moore,

## COUNT SEVEN
### Possession of a Ballot or Carrier Envelope Enhanced (SJF)

And further that Defendant, on or about the 22nd day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Roceta Anderson,

And it is further alleged that Defendant committed the offenses described in Counts Three through Seven in the March 6, 2018 Democratic primary election,

STATE098009

COUNT EIGHT
**Tampering with a Governmental Record with Intent to Harm or Defraud (SJF)**
And further that Defendant, on or about the 22nd day of January A.D., 2018, and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly make, present, or use, with intent to harm or defraud the Gregg County election authority and candidate Kasha Williams an application for ballot by mail for voter Davonia Bradley, with knowledge of its falsity and with the intent that it be taken by the election authority as a genuine governmental record, specifically: the application was false in that the eligibility reason on the application was marked "disability," when in fact the voter was not disabled,

AGAINST THE PEACE AND DIGNITY OF THE STATE.


_Sherrie Tucker_
Foreperson of the Grand Jury

Page **3** of **4** – Charlie Burns, Jr.

STATE098010

THE STATE OF TEXAS
COUNTY OF GREGG

I, Trey Hattaway, Clerk of the District Court within and for the County and State aforesaid, do hereby certify that the foregoing contains a true and correct copy of the Indictment in Cause No. _50951-B_, of the State of Texas vs. CHARLIE BURNS, JR. as now on file in this office.

IN TESTIMONY WHEREOF I hereto set my hand and seal, this _23rd_ day of _Sept._, A.D. 20 _20_.

By _____
Deputy

_____
Trey Hattaway
Clerk of the District Court
Gregg County, Texas

WITNESSES

_____

_____

_____

_____

Page **4** of **4** – Charlie Burns, Jr.

STATE098011

# INDICTMENT

CAUSE NO. _____ 50947-B

## THE STATE OF TEXAS vs. DEWAYNE WARD
### DOB: 09/28/1961

OFFENSE:   COUNT ONE - ENGAGING IN ORGANIZED ELECTION
            FRAUD (F1)
            COUNT TWO - UNLAWFUL POSSESSION OF
            BALLOT/BALLOT ENVELOPE WITHOUT REQUEST
            OF VOTER ENHANCED (F2)
            COUNTS THREE – SIX - UNLAWFUL POSSESSION OF
            BALLOT/BALLOT ENVELOPE (SJF)

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, duly selected, empaneled, sworn, charged, and organized as such for the County of Gregg, State of Texas, at the July-December, 2020 term of the 188th District Court for said County, upon their oaths present in and to said Court that from on or about the 22nd day of January A.D., 2018 and continuing until on or about the 6th day of March A.D., 2018, and anterior to the presentment of this Indictment, in the County and State aforesaid, DEWAYNE WARD, hereinafter called Defendant, did then and there

### COUNT ONE
### Engaging in Organized Election Fraud (F1)

DEWAYNE WARD, hereinafter styled Defendant, from on or about the 22nd day of January A.D., 2018 and continuing until on or about the 6th day of March A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there, with the intent to establish, maintain, and participate in a vote harvesting organization, said organization consisting of Shannon Brown, Marlena Jackson, Dewayne Ward, and Charlie Burns, who collaborated in carrying on election offenses under Titles 1 through 7 of the Texas Election Code, knowingly commit, multiple times in the same election, the offenses of unlawful possession of a ballot or carrier envelope without the request of the voter and unlawful possession of a ballot or carrier envelope of another, by committing said offenses as the primary actor or by acting with intent to promote or assist the commission of said offenses by soliciting, encouraging, directing, aiding, or attempting to aid members of said organization to commit said offenses,

### COUNT TWO
### Unlawful Possession of Ballot/Ballot Envelope without Request of Voter
### Enhanced (F2)

And further that Defendant, on or about the 6th day of March A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Tamika Buchanan, without the request of the voter,

Page **1** of **3** – Dewayne Ward

STATE098012

### COUNT THREE
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**
And further that Defendant, on or about the 24th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Mary Lynn Odom,

### COUNT FOUR
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**
And further that Defendant, on or about the 26th day of February A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Aubrey Durham,

### COUNT FIVE
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**
And further that Defendant, on or about the 6th day of March A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Keyannia Lister,

### COUNT SIX
**Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF)**
And further that Defendant, on or about the 6th day of March A.D., 2018 and before the presentment of this indictment, in Gregg County, Texas, did then and there knowingly possess the official ballot or official carrier envelope of a voter, Roderick Smith,

And it is further alleged that Defendant committed the offenses described in Counts Two through Six in the March 6, 2018 Democratic primary election,

AGAINST THE PEACE AND DIGNITY OF THE STATE.


_Sherri Ticker_
Foreperson of the Grand Jury

STATE098013

THE STATE OF TEXAS
COUNTY OF GREGG

I, Trey Hattaway, Clerk of the District Court within and for the County and State aforesaid, do hereby certify that the foregoing contains a true and correct copy of the Indictment in Cause No. _50947-B_, of the State of Texas vs. DEWAYNE WARD as now on file in this office.

IN TESTIMONY WHEREOF I hereto set my hand and seal, this _23rd_ day of _Sept._, A.D. 20 _20_.

By _____
   Deputy

_____
Trey Hattaway
Clerk of the District Court
Gregg County, Texas

WITNESSES

_____

_____

_____

_____

Page **3** of **3** – Dewayne Ward

STATE098014

# HOUSE JOURNAL

## EIGHTIETH LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

SIXTIETH DAY — MONDAY, APRIL 23, 2007

The house met at 10 a.m. and was called to order by the speaker.

The roll of the house was called and a quorum was announced present (Record 590).

Present — Mr. Speaker; Allen; Alonzo; Anchia; Anderson; Aycock; Bailey; Berman; Bohac; Bolton; Bonnen; Branch; Brown, B.; Brown, F.; Burnam; Callegari; Castro; Chavez; Chisum; Christian; Cohen; Coleman; Cook, B.; Cook, R.; Corte; Crabb; Creighton; Crownover; Darby; Davis, J.; Davis, Y.; Delisi; Deshotel; Driver; Dukes; Dunnam; Dutton; Eiland; Eissler; Elkins; England; Escobar; Farabee; Farias; Farrar; Flores; Flynn; Frost; Gallego; Garcia; Gattis; Geren; Giddings; Gonzales; Gonzalez Toureilles; Goolsby; Guillen; Haggerty; Hamilton; Hancock; Hardcastle; Harless; Harper-Brown; Hartnett; Heflin; Hernandez; Herrero; Hilderbran; Hill; Hochberg; Hodge; Homer; Hopson; Howard, C.; Howard, D.; Hughes; Isett; Jackson; Jones; Keffer; King, P.; King, T.; Kolkhorst; Krusee; Kuempel; Latham; Laubenberg; Leibowitz; Lucio; Macias; Madden; Mallory Caraway; Martinez; Martinez Fischer; McCall; McClendon; McReynolds; Menendez; Merritt; Miles; Miller; Morrison; Mowery; Murphy; Naishtat; Noriega; O Day; Oliveira; Olivo; Orr; Ortiz; Otto; Parker; Patrick; Paxton; Peña; Phillips; Pickett; Pierson; Pitts; Puente; Quintanilla; Raymond; Riddle; Ritter; Rodriguez; Rose; Smith, T.; Smith, W.; Smithee; Solomons; Strama; Straus; Swinford; Talton; Taylor; Thompson; Truitt; Turner; Van Arsdale; Vaught; Veasey; Villarreal; Vo; West; Woolley; Zedler; Zerwas.

Absent, Excused — King, S.; Moreno.

The invocation was offered by Steve Doles, director, Pray Lubbock, as follows:

Our Heavenly Father, your servant, Moses, not only brought law and order to his people, but provided the foundation upon which laws are established today. May each member of the house breathe in a fresh sense of divinely ordained duty and their stamina renewed as they consider legislation regarding the affairs of our state. May their noble work bring forth laws which will protect our freedoms, enhance life for individuals, and insure rule and order in our society.

We thank you that you have created the men and women in this room with passion about their opinions on appropriate governing policy. I pray that you will endow these representatives, whether on the debate floor or in the committee room, with self-control and honorable statesmanship equal to their passion allowing true corporate wisdom to prevail in this 80th Legislature.

Absent — Cook, R.; King, S.; Woolley.

## STATEMENT OF VOTE

When Record No. 617 was taken, my vote failed to register. I would have voted yes.

Woolley

### HB 218 - REMARKS

REPRESENTATIVE ANCHIA: Members, I'm going to be brief, this has been a long day. The debate has gone on for, oh boy, about six hours and this is what we learned. We've learned that the authors of this bill have provided not one shred of evidence of voter impersonation, which is the type of voter fraud this bill gets at. We have learned that upwards of two million Texans may be disenfranchised by this bill. We have learned that the sense of this body is not to prosecute the offenders and not to set up and devote resources to engage a prosecuting voter impersonation.

So, let me tell you what I know it's not about. This is clearly not about voter fraud, it's not about voter impersonation, it's not about expanding the franchise, it's not about protecting those that are least vulnerable in our society, and it's not about making sure that elections are more secure, and I'll tell you why. I've been saving this wonderful nugget for you guys until the end. If you look at the list of documents that you can offer up, it includes employee identification. No matter how much training you do with poll workers, no matter how much training you do of election judges and election officials, it will be impossible for them to discern what is a valid employment identification and what is an invalid employment identification. Mr. Talton probably has an identification for his law firm. It would be impossible for me to tell whether it was valid or invalid or whether Joe Deshotel's face was on it or whether it was correct or not. In fact, you can go down to Kinko's and have a bogus little ID made and say that you're an employee of whatever organization you want to be for about five dollars. In fact, this bill, rather than increasing the integrity of elections, makes sure that there's a huge loophole that you can drive a train through to increase voter fraud that was what was crossing the mind of a particular person.

We know that there's no evidence of it, but if this body wants to create an opportunity for voter fraud then vote for **HB 218**. In fact, that Section 3 part (a) of **HB 218** creates a wonderful opportunity for people at a low cost to be able to impersonate someone else by saying that this is a valid employee ID and no poll worker, no election worker, no election judge will be able to discern a valid from an invalid ID. Furthermore, there's another wonderful loophole in this bill that creates a glaring weakness. It essentially allows vote by mail to continue without photo identification. Vote by mail, that we know, is the greatest source of voter fraud in this state. In fact, all of the prosecutions by the attorney general—I shouldn't say all, but a great majority of the prosecutions by the attorney general occur with respect to vote by mail.

So ladies and gentlemen, you have a pig on your hands. It's an ugly bill. It creates more of an opportunity for voter fraud than current law, and I will tell you that if you vote for this without any commensurate enforcement like what was

STATE098261

offered up in Representative Strama's bill, you are voting for a pig with no lipstick, and it's going to be nasty. So I urge you, members of this body, to please vote against the loopholes that this bill creates and vote against the opportunities of voter fraud that this creates and vote against **HB 218**.

REPRESENTATIVE BURNAM: I particularly want to thank Rafael Anchia for the leadership role he's taken, both on the Elections Committee and today, and I'm only going to add a few words from my hometown daily paper, the Star-Telegram today. The opening paragraph, "An insidious scheme to turn back the clock on voting rights in Texas tragically has once again made it's way to the state house floor. The architects of this idea pitched as a noble effort to prevent voter fraud cannot be allowed to succeed with what is surely one of the greatest assaults on the right to vote in this state since the passage of The Federal Voting Rights Act in 1965." Racism is racism, xenophobia is xenophobia. It's too bad that we're going to see it enacted on the house floor again.

### REMARKS ORDERED PRINTED

Representative Thompson moved to print all closing remarks on **HB 218**.

The motion prevailed.

REPRESENTATIVE VEASEY:  Mr. Speaker, members, thank you very much. I'll be very brief.  I want to start off by thanking some of the folks that have helped bring attention to this voter ID, or what I call a voter suppression bill. First of all, I'd like to thank the Baptist General Convention of Texas.  They put out a pamphlet, a flier today asking members to please oppose this bill.  I think that's significant because the Civil Rights Movement back when we were going through a lot of these issues that we're facing today—and don't be mistaken about it—this is a Civil Rights issue that we are debating today. But back during the 60s the black ministers and everyone else that marched for freedom, that marched for voting rights, rarely did any of the white pastors from the South join in, and the fact that the Baptist General Convention joined in shows that we are making some progress in this country on racial harmony.

Unfortunately, this bill sets us back.  We have heard absolutely no evidence of any voter impersonation today, absolutely none.  I think that Representative Strama and Representative Anchia pointed that out very eloquently.  All of the amendments and everything that Ms. Brown has offered you today is asking you to vote for this bill based on generalizations, and based on stereotypes, and based on things that are untrue.  There has been absolutely not one shred of evidence, and we're voting for this bill today.  It makes absolutely no sense, and especially in light of what's going on with the attorney general in the State of Texas. They were trying to force U.S. attorneys to say that there was voting fraud going on in their respective districts in there respective states so they could produce convictions that would prove voter impersonation.  The panel, the U.S. panel who looked into this, found none.  They had to help doctor some of the findings to make their findings more compelling. And I think that it's time that—instead of 15 or 20 years from now—because, you know, when we look down the road this is going to be embarrassing that we even voted for this. But right now people are

An official website of the United States government. Here's how you know

Submit Search .search-icon-link { fill: #ffffff; } Search

# SAN ANTONIO

News | Wanted By The FBI | Community Outreach

**U.S. Department of Justice**

Twitter     Facebook     Email

December 1, 2014

# Campaign Manager Pleads Guilty to Conspiracy to Buy Votes in a Donna, Texas School Board Election

WASHINGTON—A campaign manager pleaded guilty today in the Southern District of Texas for conspiring with others to pay voters to vote in a Donna, Texas, school board election, announced Assistant Attorney General Leslie R. Caldwell of the Justice Department's Criminal Division and U.S. Attorney Kenneth Magidson of the Southern District of Texas. Five campaign workers have already pleaded guilty to vote-buying charges in connection with this election.

Francisco "Frankie" Garcia, 47, of Donna, Texas, pleaded guilty to one count of conspiring to buy votes and one count of vote-buying in connection with the November 2012 general election. Garcia's sentencing hearing is scheduled for Feb. 24, 2015, before Chief Judge Ricardo H. Hinojosa of the U.S. District Court for the Southern District of Texas.

At his plea hearing, Garcia admitted that a general election was held on Nov. 6, 2012, in Donna, Texas, which included candidates for the presidential election, as well as candidates for various state, county and local offices, including members of the Donna School Board. Garcia worked as a campaign manager for four school board candidates, and he and others agreed to pay voters with cash and cocaine to vote for those candidates.

This case was investigated by the FBI and is being prosecuted by Trial Attorneys Monique Abrishami and Maria Lerner of the Criminal Division's Public Integrity Section and Assistant U.S. Attorney Leo J. Leo of the Southern District of Texas.

Most Wanted

Ten Most Wanted

Fugitives

Terrorism

Kidnappings / Missing Persons

Seeking Information

Bank Robbers

ECAP

ViCAP

About

Mission & Priorities

Leadership & Structure

Partnerships

Community Outreach

FAQs

News

Stories

Videos

Press Release

Speeches

Testimony

Podcasts and Radio

Photos

Español

Apps

Resources

Law Enforcement

Businesses

STATE107786

Victim Assistance

Reports & Publications

## What We Investigate

Terrorism

Counterintelligence

Cyber Crime

Public Corruption

Civil Rights

Organized Crime

White-Collar Crime

Violent Crime

WMD

## Contact Us

Field Offices

FBI Headquarters

Overseas Offices

## Services

CJIS

CIRG

Laboratory Services

Training Academy

Operational Technology

Information Management

## FBI Jobs

Submit a Tip

Crime Statistics

History

FOIPA

Scams & Safety

STATE107787

FBI Kids

FBI Tour

Additional Resources

Accessibility

eRulemaking

Freedom of Information / Privacy Act

Legal Notices

Legal Policies & Disclaimers

Privacy Policy

USA.gov

White House

No FEAR Act

Equal Opportunity

FEDERAL BUREAU
OF INVESTIGATION

FBI.gov Contact Center

STATE107788

United States Department of Justice                                    Offices of the United States Attorneys

## THE UNITED STATES ATTORNEY'S OFFICE
## SOUTHERN DISTRICT *of* TEXAS

Search

**Search**

HOME    ABOUT    NEWS    U.S. ATTORNEY    DIVISIONS    PROGRAMS    EMPLOYMENT    CONTACT US

U.S. Attorneys » Southern District of Texas » News

**Department of Justice**

U.S. Attorney's Office

Southern District of Texas

SHARE ↗



FIND **YOUR** LOCAL
VOTING RESOURCES

REPORT
COVID-19 CRIME

Contact the National Center for
Disaster Fraud Hotline:
866-720-5721 or
Justice.gov/DisasterComplaintForm

JUSTICE 101

**VWA**
V I C T I M
W I T N E S S
A S S I S T A N C E

LEARN MORE

**Civil Rights
Enforcement**

LEARN MORE

APPLY NOW

We are currently
accepting applications for
Law Student Interns.
Click for more info.

---

FOR IMMEDIATE RELEASE                                    Thursday, June 5, 2014

# Campaign Worker Pleads Guilty To Buying Votes In Donna School Board Election

McALLEN, Texas – A campaign worker pleaded guilty today for paying voters to vote in the November 2012 Donna school board election, announced U.S. Attorney Kenneth Magidson and Assistant Attorney General Leslie R. Caldwell of the Justice Department's Criminal Division.

Guadalupe Escamilla, 72, of Weslaco, pleaded guilty to one count of vote-buying before Chief U.S. District Judge Ricardo Hinojosa. She faces a maximum penalty of five years in prison and a $10,000 fine. Sentencing is set for Aug. 29, 2014.

According to a factual statement read during the plea hearing, a general election was held on or about Nov. 6, 2012, in Donna, which included candidates for the presidential election, as well as various state, county and local offices, including the members of the Donna School Board. Escamilla assisted in the campaign to elect candidates to the Donna School Board. In the course of that work, Escamilla knowingly and willfully paid and offered to pay voters for voting in this election. In addition, she indicated during the plea hearing that at least two candidates gave her money to pay to voters for voting in the election.

Two other campaign workers, Rebecca Gonzalez, 44, and Diana Balderas Castaneda, 48, of Donna, have pleaded guilty to the same charge. They are awaiting sentencing.

This case was investigated by the FBI. Assistant U.S. Attorney Leo J. Leo and Trial Attorneys Monique Abrishami and Jennifer Blackwell of the Public Integrity Section in the Justice Department's Criminal Division are prosecuting the case.

---

**Component(s):**

USAO - Texas, Southern

Updated April 30, 2015

project **safe** childhood

Help us combat the proliferation of sexual exploitation crimes against children.

LEARN MORE

LEARN MORE

HOME   ABOUT   NEWS   U.S. ATTORNEY         DIVISIONS         PROGRAMS         EMPLOYMENT   CONTACT US

Leadership                                  Appellate         Community        AUSAs        Report a
History                                     Division          Outreach         Support Staff Crime
Former USAs                                 Branch            Law              Law Student   Procurement
                                            Offices           Enforcement      Interns
                                            Civil Division    Coordination
                                            Criminal          Victim
                                            Division          Witness
                                                              Assistance
                                                              Project Safe
                                                              Childhood
                                                              Project Safe
                                                              Neighborhoods
                                                              HTRA

U.S. DEPARTMENT OF JUSTICE

Accessibility      Justice.gov
FOIA               USA.gov
Privacy Policy     Vote.gov
Legal Policies &
Disclaimers

STATE107845

**FBI** FEDERAL BUREAU OF INVESTIGATION

## San Antonio Division

Home • San Antonio • Press Releases • 2013 • Former Cameron County Woman Convicted of Voter Fraud

# Former Cameron County Woman Convicted of Voter Fraud

| | |
|---|---|
| **U.S. Attorney's Office** | **Southern District of Texas** |
| November 04, 2013 | (713) 567-9000 |

BROWNSVILLE, TX—Sonia Leticia Solis, 55, has entered a plea of guilty to voting more than once in connection with the 2012 primary runoff election held in Cameron County on July 31, 2012, announced United States Attorney Kenneth Magidson.

The election included candidates running for the U.S. House of Representatives.

Solis resided in Brownsville during the election and obtained multiple mail-in ballots by forging applications on behalf of individuals she represented to be disabled.

U.S. District Judge Hilda Tagle, who accepted the guilty plea, has set sentencing for February 5, 2014, at which time Solis faces a possible federal prison sentence of up to five years and a maximum $10,000 fine.

This case was investigated by the FBI and is being prosecuted by Assistant United States Attorney Bill Hagen.

This content has been reproduced from its original source.

### San Antonio Division Links

**San Antonio Home**

Contact Us
- Overview
- Territory/Jurisdiction

News and Outreach
- Press Room | Stories
- In Your Community

About Us
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- San Antonio History

**Wanted by the FBI - San Antonio**

**FBI Jobs**

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close

# The Detroit News

NATION

# Four charged with vote harvesting in Texas

**The Associated Press**
Published 9:55 a.m. ET Sept. 27, 2020 | Updated 9:57 a.m. ET Sept. 27, 2020

*Longview, Texas* — An East Texas county commissioner and three other people have been indicted on charges that they fraudulently solicited mail-in votes from able-bodied voters by claiming they were disabled, often without the voters' knowledge or consent.

Gregg County Commissioner Shannon Brown and three paid workers of Brown's 2018 Democratic primary campaign — Marlena Jackson, Charlie Burns, and DeWayne Ward — were charged in a 35-page, 134-count indictment returned last week with multiple counts of election-related fraud and record tampering.

The case arises from the Precinct 4 commissioner's primary race between Brown and his opponent, Kasha Williams, a race that drew more than 2,000 votes. According to the Gregg County District Attorney Tom Watson, more than 360 mail-in ballots were requested claiming voter disability. By comparison, fewer than 15 mail-in ballots were requested for the Precincts 1, 2, and 3 commissioners' races combined due to voter disability. In live voting, Williams led Brown by more than 20 percentage points. However, 74% of the mail-in ballots were for Brown and gave him a four-vote victory

In a statement, the Texas Attorney General's Office said Brown's group, to increase the pool of ballots needed to swing the race in Brown's favor, targeted young, able-bodied voters to cast ballots by mail by fraudulently claiming the voters were "disabled," in most cases without the voters' knowledge or consent. Under Texas election law, mail ballots based on disability are specifically reserved for those who are physically ill and cannot vote in-person as a result.

Penalties for the various violations range from up to 99 years in prison for first-degree felony engaging in organized election fraud alleged against Brown, Jackson and Ward to up to two years in state jail for election fraud and records tampering counts faced by the four.

STATE107791

All four defendants have been released on $25,000 bond each. Court records listed no attorneys for the four on Saturday. Brown has no published telephone number and could not be reached for comment, and telephone numbers for the other three were not accepting calls.

The prosecution comes amid an ongoing campaign by Republicans, in Texas and the nation, to portray voting-by-mail as vulnerable to fraud.

Texas Republican Attorney General Ken Paxton has been waging ongoing court battles to limit voting by mail, and President Donald Trump has tried to fan skepticism of mail voting, baselessly claiming that its widespread use will lead to fraud.

Trump has warned that mail voting could lead to so many people voting that "you'd never have a Republican elected in this country again." That is despite assertions by experts, including from FBI Director Christopher Wray, that no evidence exists that voting by mail was fraud-prone. "Now, we have not seen, historically, any kind of coordinated national voter fraud effort in a major election, whether it's by mail or otherwise," Wray told the Senate. "We have seen voter fraud at the local level from time to time,"

STATE107792



# Senate Select Committee on Election Security

Interim Report

December 2018

STATE108344



December 3, 2018

The Honorable Dan Patrick
Lieutenant Governor of the State of Texas
Capitol Building, Room 2E.13
Austin, Texas 78701

Dear Lieutenant Governor Patrick:

You charged the Senate Select Committee on Election Security with reviewing the integrity of elections in our State. We submit this report in response to that charge. In the midst of changing voting technology and evolving threats to election security, we have a fixed and unalterable commitment to preserve the fundamental franchise rights of every Texan. We humbly offer the recommendations contained herein to strengthen the integrity of the ballot box and to give the citizens of our State renewed confidence that they are the makers of their own government.

Respectfully submitted,

Bryan Hughes, Chair

Brian Birdwell

Bob Hall

Don Huffines

Joan Huffman

Borris L. Miles

Judith Zaffirini

STATE108345



Vice Chair, Natural Resources
and Economic Development
Texas Judicial Council
Chair, Eagle Ford Shale
Legislative Caucus

Committees
Administration
Business and Commerce
State Affairs

### Judith Zaffirini
State Senator, District 21
President Pro Tempore, 1997

December 3, 2018

The Honorable
Bryan Hughes, Chair
Senate Select Committee
    on Election Security
P.O. Box 12068
Austin, TX 78711

Dear Chair Hughes:

Thank you for your leadership as Chair of the Senate Select Committee on Election Security. It is my privilege to serve with you, and I appreciate the opportunity to share my perspective regarding the Committee's Interim Report to the 86th Legislature. The report includes numerous good recommendations, and I am delighted to sign it. This letter, however, is to record my concerns regarding the need to (1.) provide concrete recommendations to address mail-in ballot fraud and (2.) reflect that Texas lags behind much of the nation in modernizing and simplifying the registration process, which is critical in offering adequate opportunities for all Texans to register to vote.

During the last several sessions many legislators have focused on voter ID laws intended to prevent in-person voter fraud, but not on the increasingly serious problem of mail-in ballot fraud. Our Committee heard troubling testimony regarding the state of election security related to the latter. The report's recommendation that the Legislature needs to find a solution to the "vexing issue" of mail-in ballot fraud at nursing homes and assisted living facilities is a good start, but we must take all possible steps to address voting irregularities caused by fraudulent mail-in ballots.

The report also states that current federal and state laws governing Texas' voter registration system "create a broad base of opportunity for registration for all Texans" and describes how eligible persons may register to vote. It does not mention, however, that we have not adopted secure voter registration reforms that

STATE108349

many other states have. Texas, for example, is one of only thirteen states that does not offer online registration. The Legislature should consider this and other secure methods to facilitate voter registration.

Thank you for your dedication to the many important issues we examined during the 85th Interim. I look forward to continuing to work with you and other members of the committee during our next legislative session.

May God bless you.

Very truly yours,

Judith Zaffirini

Z/ah

STATE108350

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegations | Election Involved | Court/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Bee | Melva Kay Ponce | Illegal Voting | 2004 General Election | B-05-2101-0-CR-B | 1 count illegal voting - voter impersonation | 1 | 07/26/05 | EC 64.012 | Pled guilty to 1 count attempted illegal voting. 2 years deferred adjudication, $1500 fine w/$500 probated |
| Hardeman | Johnny Wayne Akers | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Possession of an official ballot by another | 2004 Primary Election | 013449 | 6 counts possession of official ballot or carrier envelope of another | 6 | 11/04/05 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another.  2 years probation, $2000 fine |
| Nueces | Virginia Ramos Garza | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9806-4 | 4 counts possessing an official ballot or carrier envelope of another | 4 | 03/22/06 | EC 86.006 | 1 year pre-trial diversion, 12 months community supervision |
| Nueces | Elida Garza Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9805-4 | 1 count possessing an official ballot or carrier envelope of another | 1 | 03/22/06 | EC 86.006 | 1 year pre-trial diversion, 12 months community supervision |
| Nueces | Isabel Lisa Rios Gonzalez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9808-3 | 2 counts possessing an official ballot or carrier envelope of another | 2 | 03/22/06 | EC 86.006 | Pled nolo contendere to 2 counts of possessing an official ballot or carrier envelope of another.  1 year deferred adjudication, $500 fine, 12 months community supervision |
| Nueces | Josefina Marinas Suarez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9807-1 | 1 count illegally possessing an official carrier envelope of another | 1 | 05/04/06 | EC 86.006 | Pled guilty to 1 count of illegally possessing an official carrier envelope of another.  1 year deferred adjudication, $500 fine, 12 months community supervision |
| Reeves | Trine Villalobos | Vote Harvesting/Mail Ballot Fraud - Method of returning marked ballot | 2004 Primary Election | 25,185 | 4 counts possession of an official ballot or official carrier envelope of another | 4 | 06/27/06 | EC 86.006 | Found guilty by jury of 4 counts of possession of an official ballot or official carrier envelope of another.  10 days jail / probated for 6 months |
| Bowie | Willie Howard Ray | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M1309-CCL | 7 counts possessing an official ballot or carrier envelope of another | 7 | 07/17/06 | EC 86.006 | Pled guilty to possession of an official ballot or official carrier envelope of another. 8 months deferred adjudication, $200 fine. Original indictment dismissed. |
| Bowie | Jamillah Johnson | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M0302-CCL | 2 counts possessing an official ballot or carrier envelope of another | 2 | 07/17/06 | EC 86.006 | 6 months deferred adjudication, $200 fine |
| Bowie | Melinda Hunter | Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M0301-CCL | 7 counts possessing an official ballot or carrier envelope of another | 7 | 07/17/06 | EC 86.006 | 6 months pre-trial diversion |
| Nueces | Maria Dora Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal Voting - Unlawful assistance, unlawfully influencing voter | 2006 Primary Election | 06-CR-2166-B | 2 counts illegal voting-(4) marking a ballot without voter's consent | 2 | 08/04/06 | EC 64.012 | Pled guilty to 2 counts illegal voting.  2 years deferred adj probation, $750 fine |
| Reeves | Anita Baeza | Vote Harvesting/Mail Ballot Fraud - Method of returning marked ballot | 2004 Primary Election | 25,186 | 5 counts illegally possessing ballots for another person | 5 | 08/28/06 | EC 86.006 | 6 months pre-trial diversion |

CONFIDENTIAL

STATE112177

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegations | Election Involved | Cause/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Calhoun | Debra Briseno | Illegal voting, fraudulent registrations, and vote harvesting/mail ballot fraud | 2006 Primary Election | 2006-8-6465, 2006-8-6466, 2006-8-6467, 2006-8-6468, 2006-8-6469 | 3 counts illegal voting-(1) ineligible voter non-citizen, 1 count unlawful assistance, 11 counts possessing an official ballot or carrier envelope of another, 6 counts tampering with a governmental record, 6 counts false statement on a registration application | 27 | 06/25/07 | EC 64.012 / PC 37.10 | Jury verdict of guilty on 2 counts illegal voting, 1 count tampering with a government record.  5 years TDCJ |
| Refugio | Raymond Villarreal | Illegal Voting, Tampering | 2006 Primary Election | 2007-2-4809, 2007-2-4810 | 4 counts illegal voting, 3 count tampering with governmental record | 7 | 10/09/07 | PC 37.10 | Pled guilty to tampering with government record. 2 years TDCJ suspended for 5 years community supervision, $1,500 fine, 90 days Jail, $2,090 restitution |
| Starr/ Brooks | Noelia Lopez | Illegal voting | 2006 General Election | 07-07-09767 CR | 1 count illegal voting | | 01/24/08 | EC 64.012 | Dism'd |
| Hays | Mark Littlefield | Forgery, tampering with a government document | 2006 Special Election | 89,288 | Possession of forged instrument | 1 | 02/01/08 | PC 32.21 | 1 year pre-trial diversion, $300 donation |
| Starr/ Brooks | Jose Rene Gomez | Illegal voting | 2006 General Election | 07-05-09743 CR | 1 count illegal voting-(2) voting more than once | 1 | 05/01/08 | EC 64.012 | Pled guilty to illegal voting. 2 years deferred adjudication, $300 fine, 2 years community supervision (Motion to Adjudicate) |
| Starr/ Brooks | Oscar Luis Rios | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 07-05-09741 CR | 12 counts possessing a ballot without the voter's consent | 12 | 05/01/08 | EC 86.006 | Pled guilty to 12 counts possessing a ballot without the voters consent.  2 years deferred adjudication, $300 fine, 2 years community supervision |
| Potter | Michael C. Shumate | Unlawfully accepting campaign donations, bribery | 2008 Primary Election | 56732-B, 56733-B,   56734 B | 1 count unlawfully accepting contribution, 1 count organized criminal activity,1 count unlawfully accepting contribution, | 3 | 06/12/08 | PC 71.02 | Jury verdict of guilty on engaging in organized criminal activity.  10 years confinement, suspended for 8 years, community supervision with 180 days Jail as a condition, $5,000 fine |
| Duval/ Brooks | Lydia Molina | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09864, 11479 | 6 counts possession of official ballot or carrier envelope of another | 6 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another.  1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Maria Soriano | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09863, 11480 | 6 counts possession of official ballot or carrier envelope of another | 6 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another.  1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Elva Gutierrez Lazo | Unlawful assistance, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09865, 11482 | 3 counts possession of official ballot or carrier envelope of another | 3 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another.  1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Maria Adelina Trigo | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09866, 11481 | 2 counts possession of official ballot or carrier envelope of another | 2 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another.  1 year deferred adjudication, $300 fine, 12 months community supervision |
| Goliad | Jami Parkinson Billings | Unlawfully divulged voting results prior to the closing of polls | 2008 Municipal Election | 08-8-8967 CR | 1 count unlawfully revealing information before polls close | 1 | 11/12/08 | EC 61.007 | Pled nolo contendere to 1 count unlawfully revealing information before polls close.  2 years deferred adjudication, $3,000 fine, 2 years community supervision |
| Starr/ Brooks | Guadalupe Rios | Vote Harvesting/Mail Ballot Fraud | 2006 Municipal Election | 08-08-09945 CR | 11 counts possessing a ballot without the voter's consent | 11 | 03/16/09 | EC 86.006 | Pled guilty to 11 counts possessing a ballot without the voter's consent.  2 years probated for 4 years probation, $500 fine, 60 days house arrest |
| Starr/ Brooks | Oralia Frausto | Illegal Voting/Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2006 Primary Election | 07-05-09738 CR | 15 counts of possessing a ballot without the voter's consent | 15 | 03/26/09 | EC 86.006 | 1 year pre-trial diversion |
| Starr/ Brooks | Maria Gonzalez | Illegal Voting/Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2006 Primary Election | 07-05-09742 CR | 5 counts of possessing a ballot without the voter's consent | 5 | 03/26/09 | EC 86.006 | 1 year pre-trial diversion |
| Aransas/ Travis | Gallaher, Todd | Misrepresentation of identity - intent to manipulate election or injure candidate | 2008 Primary Election | C08999934 | Misrepresentation of identity | 1 | 05/21/09 | E.C. 255.005 | Pre-trial diversion for 1 year, 60 hours of community service, completed early. |
| Hidalgo | Paulito Nilo | Illegal Voting - Felon | 2008 Municipal Election | CR-2622-09-F | 1 count of illegal voting-(1) ineligible voter felon | 1 | 09/29/09 | E.C. 64.012 | Pled guilty for 5 years TDCJ, probated for 5 years of community supervision, 1 day in Jail, $500 fine |
| Hill | Leland Mac Coffman | Divulged election results prior to the closing of polls on election day; made false report to peace officer about divulging results | 2007 School District and Municipal Election | M0593-09 | 3 counts false report to peace officer | 3 | 10/14/09 | PC 37.08 | Pled guilty to 3 counts of false report to a peace officer. 2 years probation, $2000 fine, 90 days in Jail, probated |

Information as of 7/15/2022

CONFIDENTIAL

STATE112178

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Cause/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Resolution |
|--------|-----------|-----------|------------------|-------------------|-----------|-------------------|-----------------|-----------------|------------|
| Harris[1] | Jack Carol Crowder | Illegal Voting - Impersonation of deceased voter | 2008 Primary Election | 1215818 | 1 count illegal voting-(3) voter impersonation at polling place | 1 | 10/06/09 | EC 64.012 | Pled guilty to 1 count fraudulent use of identifying information, 1 year deferred adjudication, $200 fine |
| Starr/Brooks | Raul Reyna | Illegal Voting - Felon | 2007 Municipal and School Election | 09-04-09980 CR | 2 counts illegal voting-(1) ineligible voter felon | 2 | 11/05/09 | EC 64.012 | Pled guilty to illegal voting, 2 years TDCJ, $500 fine |
| Starr/Brooks | Cynthia Pena | Illegal Voting - Felon | 2007 Municipal and School Election | 09-04-09881 CR | 2 counts illegal voting-(1) ineligible voter felon | 2 | 11/05/09 | EC 64.012 | Pled guilty to illegal voting, 10 years TDCJ-suspended, 4 years community supervision, $500 fine |
| Starr/Brooks | Elizabeth Martinez | Illegal Voting - Felon | 2007 Municipal Election | 09-04-09982 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 11/05/09 | EC 64.012 | Pled guilty to 1 count of illegal voting, 5 years TDCJ |
| Panola | Drew Nixon | Official oppression; voting | 2006 Special Election | 2007-C-0193 | 2 counts of official oppression | 2 | 01/28/10 | PC 39.03 | Dismissed Indictment. Defense motion for collateral estoppel granted. |
| Dimmit/ LaSalle | Maria Mendoza Garcia | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 08-11-00052 CRL | 7 counts knowingly provide false information on an application for an early voting ballot | 7 | 04/15/10 | EC 84.0041 | 12 months pre-trial diversion, $60 supervision fee, 80 hours of community service |
| Dimmit/ LaSalle | Estela Cruz Saenz | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 08-12-00063 CRL | 7 counts knowingly provide false information on an application for an early voting ballot | 7 | 04/15/10 | EC 84.0041 | 6 months pre-trial diversion, $60 supervision fee |
| Jim Wells/ Live Oak | Zaida Cantu Bueno | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20068 | 4 counts of method of returned marked ballot (less than 10) | 4 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended), $200 fine, 40 hours of community service |
| Jim Wells/ Live Oak | Norma Lopez | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20067 | 8 counts of method of returned marked ballot (less than 10) | 8 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended), $200 fine, 40 hours of community service |
| Jim Wells/ Live Oak | Cynthia Lopez | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20066 | 3 counts of method of returned marked ballot (less than 10) | 3 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended), $200 fine, 40 hours of community service |
| Hidalgo/ Brooks | Ruben Trevino Garcia | Illegal voting - felon, bribery, and official misconduct | 2008 School District Election | 09-09-10116 CR | 1 count illegal voting-(1) | 1 | 06/17/10 | EC 64.012 | Pled guilty, 8 years TDCJ-ID suspended for 8 years community supervision, $500 fine |
| Starr[2] | Raul Pena, Jr. | Vote Harvesting/Mail Ballot Fraud - Unlawful possession of 56 mail-in ballots by candidate | 2010 Primary Election | CR-10-371 | 1 count of carrier envelope action by another person other than voter | 1 | 06/22/10 | EC 86.0051 | Pled guilty, 6 months community supervision, 180 days in jail (suspended), $500 fine |
| Starr/Brooks | Mary Lou Garza | Vote Harvesting/Mail Ballot Fraud - Providing fraudulent registration cards to vote harvesters | 2006 Primary Election | 07-07-09768 CR | 1 count of unlawful delivery of a certificate | 1 | 09/15/10 | EC 13.145 | Jury trial resulting in hung jury, dism'd |
| Hidalgo/ Brooks | Mario Manuel Medrano | Illegal voting - felon, bribery, and official misconduct | 2008 School District Election | 09-09-10117 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 11/10/10 | EC 64.012 | Pled guilty, 2 years TDCJ-ID |
| Duval/Live Oak | Christina Lichtenberger | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20080, 20081 | 1 count of unlawful assistance, 1 count of method of returned marked ballot | 2 | 12/14/10 | EC 64.036, 86.006 | Pled guilty to Possession of a Ballot and Unlawful Assistance, and received 1 year deferred adjudication, and paid a $1000 fine and court costs |
| Duval/Live Oak | Andrea Campos Bierstedt | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20082, 20083 | 1 count of unlawful assistance, 1 count of method of returned marked ballot | 2 | 12/14/10 | EC 64.036, 86.006 | Pre-trial diversion 6 months, $3,500 donation to the county |
| Duval/Live Oak | Alicia Pena Perez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20084, 20085, 20086, 20087, 20088, 20089, 20090, 20091 | 4 counts of unlawful assistance, 4 counts of method of returned marked ballot | 8 | 12/14/10 | EC 64.036, 86.006 | Pled guilty to 4 counts of Possession of a Ballot and 4 counts of Unlawful Assistance, and received 1 year jail, probated for 12 months, and paid a $1000 fine and court costs |
| Smith | Ronald Marsh | Illegal Voting | 2009 Municipal Election - Local Option | 241-1682-11 | 1 count of Illegal Voting-(1) ineligible voter | 1 | 03/23/11 | E.C. 64.012 | Pled guilty, received four years of deferred adjudication, a $1,000 fine, and 100 hours of community service hours |
| Smith | Ann Marie Marsh | Illegal Voting | 2009 Municipal Election - Local Option | 241-1681-11 | 1 count of Illegal Voting-(1) ineligible voter | 1 | 03/23/11 | E.C. 64.012 | Plea bargain in 241-1682-11 for guilty plea to def'd adj resulting in dismissal. |
| Bexar | Ester Sandoval Martinez-Moreno | Unlawfully accepting a voter, unlawfully permitting the deposit of a ballot, and illegal voting | 2010 Primary Election | 2010-W-0375 | 1 count of tampering of a governmental record | 1 | 03/23/11 | P.C. 37.10 | Pled guilty to one count of misdemeanor Tampering, 1 year probation |
| Dallas/ Rockwall | Delores McMillian | Illegal Voting - Voter Impersonation | 2010 Primary Election | 11082011CCL-A | 2 counts of attempted illegal voting-(3) voter impersonation at polling place | 2 | 06/16/11 | E.C. 64.012 | Pled guilty to attempted illegal voting for impersonating a voter, 1 year probation, paid $227 court costs |
| Duval/ Jim Wells | Regino Cantu Salinas | Illegal Voting - Felon | 2008 Primary Election | 11-02-13251-CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 08/31/11 | E.C. 64.012 | Pled guilty for 2 years probation, 90 days in jail, and a $2000 fine |

Information as of 7/15/2022

CONFIDENTIAL

STATE112179

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Court/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Results/Penalty |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo/ Brooks | Reyna Almanza | Illegal voting | 2009 School District Election | 10-03-10342-CR | 1 count of illegal voting- (3) voter impersonation | 1 | 12/01/11 | E.C. 64.012 | Convicted by a jury on 11/16/11, sentenced to 2 years TCDJ, suspended for 5 years on probation, 90 days in County Jail as a condition of probation, $313 court costs |
| Bexar | Mary Comparin | Voter impersonation (voting for 20 years using the identity of a deceased voter still on voter rolls, while voting herself by mail ballot), benefits fraud (receiving SS benefits for herself and a deceased individual) | 2008 General Election | 2011-CR-7939 | 2 counts of illegal voting - voter impersonation | 2 | | E.C. 64.012 (a) 3 | Statute of limitations tolled by filing of indictment on 9/18/11.  Defendant declared incompetent to stand trial.  Cause 2011-CR-7939 closed, case left pending. |
| Brazos | Shank, Christine Thomas | Unlawfully Influencing Voter | 2010 General Election | 11-05590-CRM-CCL1 | 1 count of Unlawful Assistance | 1 | 02/06/12 | E.C. 64.036 | Pled guilty, 1 year deferred adjudication community supervision, 20 hours community service, $332.00 court costs, $500.00 fine, prohibited from offering assistance in the election process to anyone |
| Dallas/ Rockwall | Name Removed | Aggravated perjury in connection with Illegal Voting | 2010 Primary Election | | 4 counts of aggravated perjury | 4 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 1 count of illegal voting - ineligible voter | 1 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Carlos Medrano | Illegal Voting | 2010 Primary Election | 2-11-418 | 2 counts of illegal voting - ineligible voter | 2 | 02/27/12 | E.C. 64.012 | Elected Justice of the Peace convicted at bench trial of illegal voting - ineligible voter, 5 years TDCJ, probated for 5 years, 180 days in Jail as a condition of probation, $2500 fine, removed from office |
| Dallas/ Rockwall | Robert Edward Medrano | Illegal Voting | 2010 Primary Election | 2-11-420 | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | In exchange for acknowledgement of offense and cooperating testimony at trial, charges dism'd |
| Dallas/ Rockwall | Rolando Medrano | Illegal Voting, aggravated perjury | 2010 Primary Election | 2-11-416 | 6 counts of aggravated perjury | 6 | 02/29/12 | P.C. 37.03 | Pled guilty to two counts of aggravated perjury, 4 years TDCJ probated for 4 years community supervision, $5,000 fine, $219 Court Coust., 45 days in jail as a condition of probation, work release day for day |
| Dallas/ Rockwall | Raquel Medrano | Illegal Voting, aggravated perjury | 2010 Primary Election | 2-11-108, 2-11-414 | 1 count of illegal voting - ineligible voter, 5 counts of aggravated perjury | 6 | 02/28/12 | E.C. 64.012, P.C. 37.03 | Dism'd upon conviction of defendant in 2-11-418 |
| Dallas/ Rockwall | Gilda Hernandez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Influencing Voter | 2010 Primary Election | 11082011CCL-B | 4 counts of possession of an official ballot or carrier envelope, 3 counts of unlawful assistance (influencing voter), 2 counts Failure to Provide identifying info while assisting voter | 9 | 04/05/12 | E.C. 86.006, 64.036. 86.010 | Pled guilty to two counts of Unlawful Assistance, two counts of Possession of a Ballot, and two counts of Failure to Provide Identifying Information While Assisting a Voter, and received one year of deferred adjudication and a $250. |
| Hidalgo/ Brooks | Jose De Jesus Cano | Illegal voting - felon, bribery | 2008 School District Election | 09-09-10115 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 06/14/12 | EC 64.012 | Pled guilty, received 10 years TDCJ, probated for 10 years, $1,000 fine, and $313 court costs |
| Henderson/ Smith | Frank Ross | Illegal Voting | 2009 Municipal Election | 241-1683-11 | 1 count of Illegal Voting - (1) ineligible voter | 1 | 06/19/12 | E.C. 64.012 | Dism'd |
| Hidalgo | Angel Trujillo | Illegal Voting - Felon | 2010 Municipal and School District Election | CR-1914-12-E | 2 counts illegal voting by ineligible voter | 2 | 08/10/12 | E.C. 64.012 | Pled guilty to illegal voting (1 ct), sentenced to 3 years TDCJ-probated for community supervision, $750 fine. |
| Hidalgo | Baudelia Zapata Rojas | Unlawfully revealing information before the polls close | 2008 Municipal Election | 12-03529 | Unlawfully Revealing Information before polls close | | 12/27/12 | E.C 61.007 | No Bill |
| Hidalgo | Sylvia Salas Vela | Illegal Voting | 2008 Municipal Election | 12-03519 | Illegal Voting | | 12/27/12 | E.C. 64.012 | No Bill |
| Hidalgo | Salvador Vela | Mail in ballot violation | 2008 Municipal Election | 12-03528 | Method of returning marked ballot | | 12/27/12 | E.C. 86.006 | No Bill |
| Hidalgo | Fermina Castillo | Illegal Voting | 2010 General Election | CR-1913-12-1 | 1 count illegal voting - (1) ineligible voter felon | | 01/17/13 | E.C. 64.012 | Pled guilty to illegal voting, sentenced to 2 years deferred with community supervison and $100 fine. |
| Cameron | Margarita Rangel Ozuna | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2010 Primary Election | 2013-DCR-00484 | 1 count Unlawfully Assisting Voter | 1 | 05/30/13 | E.C. 86.010 | Pled no contest to Unlawfully Assisting Voter (Class A Misdemeanor) 12 month county jail, probated for 12 month community service. $250.00 fine. |

CONFIDENTIAL

STATE112180

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Court/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo/ Brooks | Lorenzo Antonio Almanza | Illegal Voting - Voter Impersonation | 2009 School District Election | 10-03-10343-CR | 2 counts of illegal voting-(3) voter impersonation at polling place | 2 | 06/24/13 | E.C. 64.012 | Pled guilty to Illegal Voting - voter impersonation, Illegal Voting - voting twice, sentenced to 2 years TDCJ on both counts, run concurrently,  $313 court costs |
| Montgomery | James Alan Jenkins | Illegal Voting - Residency | 2010 Special Election | 12-03-025479-CR | 1 count of illegal voting - ineligible voter | 1 | 06/28/13 | E.C 64.012 | Convicted during a jury trial, 1 count of illegal voting (1) ineligible voter, 3 years TDCJ, $10,000 fine and $364.00 in court costs reversed/remanded by 14th COA, pending new trial |
| Montgomery | Peter Joseph Goeddertz | False statement on application, illegal voting | 2010 Special Election | 12-03-02581-CR | 1 count of illegal voting - ineligible voter | 1 | 07/12/13 | E.C. 64.012 | 1 year Probation - Pre-trial Diversion Program |
| Montgomery | Adrian Heath | False statement on application, illegal voting | 2010 Special Election | 12-03-025480-CR | 1 count of illegal voting - ineligible voter | 1 | 10/31/13 | E.C. 64.012 | Convicted during a Jury trial, 1 count of illegal voting (1) ineligible voter. Sentenced to 3 years TDCJ and $10,000 fine, $334.00 in court costs. |
| Montgomery | Sybil Lea Doyle | False statement on application, illegal voting | 2010 Special Election | 12-03-02583-CR | 2 counts of illegal voting - ineligible voter | 1 | 04/02/14 | E.C 64.012 | Convicted at jury trial, 1 count of illegal voting (1) ineligible voter. Sentenced by deferred agreement, 3 years TDCJ, probated for 5 years, $5,000 fine and $359.00 in court costs. |
| Montgomery | Roberta Margaret Cook | False statement on application, illegal voting | 2010 Special Election | 12-03-02585-CR | 1 count of illegal voting - ineligible voter | 1 | 04/02/14 | E.C 64.012 | Convicted at bench trial, 1 count of illegal voting (1) ineligible voter. Sentenced by deferred agreement, 3 years TDCJ, probated for 5 years, $5000 fine. |
| Cameron | Garza, Israel | Illegal Voting - Felon | 2010 Municipal Election | 2013-DCR-00957 | 1 count of illegal voting - ineligible voter (felon) | 1 | 04/10/13 | E.C 64.012 | Pled guilty to illegal voting attempted  (felon voter) Class A misdeameanor. Sentenced to 10 months confinement, 2 years probation, fine $250. |
| Montgomery | Name Removed | False statement on application, illegal voting | 2010 Special Election | 12-03-xxxxx-CR | 1 count of illegal voting - ineligible voter | 1 | 05/15/14 | E.C. 64.012 | 1 year Deferred Prosecution Probation.  Eligible for expunction after serving 12 mos probation. |
| Montgomery | William Mervin Berntsen | False statement on application, illegal voting | 2010 Special Election | 12-03-02586-CR | 1 count of illegal voting - ineligible voter | 1 | 10/23/14 | E.C.64.012 | 3 years Deferred Adjudication, $2,500.00 fine, $334.00 in court costs |
| Cameron | Tomasa Chavez | Vote Harvesting/Mail Ballot Fraud/Assistance Voter; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02977-A/14-CCR-02983-A/14-CCR-02984-A/14-CCR-02985-A/14-CCR-02987-A/14-CCR-02989-A/14-CCR-02991-A/14-CCR-02993-A/14-CCR-02995-A/14-CCR-02996-A/14-CCR-02997-A/14-CCR-02999-A/14-CCR-03003-A | 3 counts - Carrier Envelope Action: Person Other than voter (Misd B), 3 counts - Assisting Voter Violation (Misd A), 3 counts - Method of Returning Marked Ballot (Misd A), 4 count - Unlawful Assistance to Voter (Misd A) | 13 | 01/22/15 | E.C 86.0051 / E.C 86.010 /  E.C 86.006 /  E.C 64.036 | Pled guilty to unlawful assistance of voter, 6 month confinement, probated for 1 year of community supervision, fine $250. |
| Jim Wells | Benito Aranda Jr. | Illegal Voting - Felon | 2012 Primary Election | 14-07-13904-CR | Indicted 1 count of illegal voting(1) ineligible voter felon, 2nd Felony | 1 | 02/18/15 | E.C 64.012 | Pled guilty to illegal voting (felon) Sentenced to 10 years confinement, probated for 10 years of community supervision |
| Jim Wells | Mark Homero Almaraz | Illegal Voting - Felon | 2012 Primary Election | 14-07-13903-CR | Indicted 1 count of illegal voting(1) ineligible voter felon, 2nd Felony | 1 | 02/18/15 | E.C 64.012 | Pled guilty to illegal voting (felon) Sentenced to 10 years confinement, probated for 10 years of community supervision. |
| Hidalgo | Jorge Luis Martinez | Unlawfully rejecting voters, illegal voting, and unlawfully accepting voters | 2008 Municipal Election | CR-2623-09-B | 12 counts of illegal voting | 12 | 02/25/15 | E.C.64.012 | Pled guilty to counts 1-6 for attempted Illegal Voting (Class A). Three years community supervision. Counts 7-12 were dismissed |
| Cameron | Facunda Garcia | Vote Harvesting/Mail Ballot Fraud/Assistance Voter; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02980-A | 1 Count - Unlawful Assistance to Voter (Misd. A) | 1 | 03/19/15 | E.C 64.036 | Pled guilty to unlawful assistance of a voter. Sentenced to 3 day confinement in county jail and $250.00 fine. |
| Cameron | Bernice Garcia | Vote Harvesting/Mail Ballot Fraud/Assistance Voter; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02979-A/14-CCR-03010-A/14-CCR-03011-A | 1 count - Carrier Envelope Action: Person Other than voter (Misd B), 1 Count - Method of Returning Marked Ballot (Misd B), 1 count - Unlawful Assistance to Voter (Misd A) | 3 | 04/08/15 | E.C 86.0051 / E.C 86.006 /  E.C 64.036 | 1 year probation under diversion program (Deferred Pros.) for offense of unlawfully assisting voter. |
| Cameron | Rafael Angel Elizondo | Vote Harvesting/Mail Ballot Fraud - Method of Returning Marked Ballot | 2012 Primary Election Runoff | 2015-DCR-00269-D | 1 Count - Method of Returning Marked Ballot more than 10 but less than 20 offical ballots/carrier envelopes.  ( 3rd Degree Felony) | 1 | 06/12/15 | E.C. 86.006 | Pled no contest to Method of Returning Marked Ballot =10<20, (Class A). Sentenced to three days in county jail, and taken into custody. |

Information as of 7/15/2022

**CONFIDENTIAL**

**STATE112181**

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation(s) | Election Involved | Cause/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Cameron | Jose Angel Garcia | Vote Harvesting/Mail Ballot Fraud - Method of Returning Marked Ballot | 2012 Primary Election Runoff | 2015-DCR-00270-D | 5 Counts -Method of Returing Marked Ballot fewer than 10 offical ballots/carrier envelopes (SJF) | 5 | 06/12/15 | E.C. 86.006 | Pled guilty to Method of Returning Marked Ballot <10 (Class B).  Sentenced to two days county jail. |
| Cameron | Margarita Ozuna | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02981-B/14-CCR-02986-B/14-CCR-02988-B/14-CCR-02990-B/14-CCR-02992-B/14-CCR-02994-B | 3 Counts - Carrier Envelope Action: Person Other than voter (Misd B), 3 counts - Method of Returning Marked Ballot (Misd B) | 6 | 08/10/15 | E.C 86.0051 / E.C 86.006 | Pled guilty to Carrier Envelope Action by Person Other than voter. Sentenced to 15 days county jail and $250.00 fine/court cost. |
| Cameron | Vicenta Verino | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02978-C/14-CCR-02998-C/14-CCR-03000-C/14-CCR-03001-C/14-CCR-03002-C/14-CCR-03004-C/14-CCR-03005-C/14-CCR-03006-C/14-CCR-03007-C/14-CCR-03008-C | 1 count - Unlawful Assistance to Voter (Misd A), 1 count - Assisting Voter Violation (Misd A) ,4 counts - Carrier Envelope Action: Person Other than voter (Misd. B), 4 counts - Method of Returning Marked Ballot (Misd. B) | 10 | 08/19/15 | E.C 64.036/ E.C 86.010/ E.C 86.0051/ E.C 86.006 | Pled guilty to Class A misdemeanor Unlawful Assistance of a Voter. 12 months of deferred adjudication, $250 fine, and refraining from handling mail ballots and assisting voters. |
| Harris[c] | Avery Ayers | Forgery/Tampering with peitition for candidacy - forged signatures | 2014 General Election | 1476757 | 1 Count of Tampering w / a Governmental Record (SJF) | 1 | 10/06/15 | P.C. 32.21 | Waived a jury trial and pled guilty to one count of 3rd degree felony Forgery. Court convicted defendant and sentenced him to five (5) years TDCJ-Institutional Division. No fine, court costs or restitution. |
| Cameron | Sarah Perales | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02982-C 14-CCR-03009-C | 1 Count - Carrier Envelope Action: Person Other than voter (Misd. B), 1 Count - Method of Returning Marked Ballot (Misd. B) | 2 | 10/28/15 | E.C. 86.006 | Pled guilty to Class B misdemeanor Method or Returning Ballot. Court sentenced her to one year of community supervision-deferred adjudication, plus a fine of $150 and court costs. Defendant was ordered to refrain from assisting voters or other politiquera activity. |
| Edwards | Michael Scotch | Illegal voting (residency) | 2013 Municipal Election 2014 Primary Election | 6053 | 1 Count Illegal Voting (Municipal) 2 Counts of Tamper w/ a Gov't rec  1 Count of Illegal Voting (Primary) | 4 | 12/07/15 | E.C 64.012 | Pled no contest to Count 1 of the Indictment - Illegal voting (ineligible voter-non resident) in a plea bargain agreement. State to dismiss counts 2, 3 & 4. Sentenced to 24 months of deferred adjudication community supervision, $500 fine. |
| Edwards | Tamara Scotch | Illegal voting (residency) | 2013 Municipal Election 2014 Primary Election | 6054 | 1 Count Illegal Voting (Municipal) 2 Counts of Tamper w/ a Gov't rec  1 Count of Illegal Voting (Primary) | 4 | 12/07/15 | E.C 64.012 | Pled no contest to Count 1 of the Indictment - Illegal voting (ineligible voter-non resident) in a plea bargain agreement. State to dismiss counts 2, 3 & 4. Sentenced to 24 months of deferred adjudication community supervision, $500 fine. |
| Hidalgo | Guadalupe "Lupe" Rivera, Jr. | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08765-B, CR-15-08766-B | 1 Count Carrier Envelope Action: Person Other than Voter, 1 count Method of Returning Marked Ballot <10 | 2 | 07/11/16 | E.C. 86.0051  E.C. 86.006 | Co-defendant accepted criminal responsibility for these offenses in plea resolving causes CR-15-08767-E, CR-15-08768-E, CR-15-08769-E, CR-15-08770-E, CR-15-08771-E, CR-15-08772-E, CR-15-08773-E, CR-15-08774-E, CR-15-08775-E, CR-15-08776-E, CR-15-08777-E, CR-15-08778-E, CR-15-08779-E, CR-15-08780-E, CR-15-08781-E, and CR-15-08782-E. |
| Hidalgo | Guadalupe "Lupe" Rivera, Sr. | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08767-E CR-15-08768-E CR-15-08769-E CR-15-08770-E CR-15-08771-E CR-15-08772-E CR-15-08773-E CR-15-08774-E CR-15-08775-E CR-15-08776-E CR-15-08777-E CR-15-08778-E CR-15-08779-E CR-15-08780-E CR-15-08781-E | 1 Count Unlawful Assistance to Voter, 6 counts Carrier Envelope Action: Person Other than Voter, 6 counts Method of Returning Marked Ballot <10, 3 counts Assisting Voter Violation | 16 | 07/11/16 | E.C. 64.036 | Pled guilty to Unlawful Assistance to a Voter, Class A misdemeanor. Sentenced to 365 days in jail, probated for one year of community supervision with a $500 fine. |

CONFIDENTIAL

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegations | Election Involved | Cause/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo | Graciela Sanchez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08761-B   CR 15-08762-B   CR-15-08763-B   CR-15-08764-B | 2 counts Carrier Envelope Action: Person Other than Voter, 2 counts Method of Returning Marked Ballot <10 | 4 | 07/11/16 | E.C. 86.0051 | Pled guilty to Carrier Envelope Action: Person Other than Voter, Class B misdemeanor. Pre-trial diversion for a period of two years of community supervision, pay court and probations fees, complete 24 hours of community service. Other charges dismissed. |
| Dallas/ Tarrant | Rosa Maria Ortega | Illegal Voting - Non-Citizen | 2012 General Election, 2014 Primary Run-Off Election | 1434155 | 2 counts of illegal voting - ineligible voter (non citizen) | 2 | 02/09/17 | E.C. 64.012 | Convicted by jury on both counts of Illegal Voting - Non citizen. Jury sentenced her to a period of eight (8) years in the Texas Department of Criminal Justice Institutional Division on each count, sentences to run concurrently. $5,000.00 fine and $329.00 in court costs. |
| Edwards | Manuel Rodriguez III | Illegal Voting - voter impersonation, Illegal Voting - ineligible voter (felon, unregistered voter) | 2014 General Election | 1730 | 2 counts of illegal voting, ineligible voter (felon, unregistered), voted as 99-yr-old grandfather | 2 | 2/27/2017 | E.C. 64.012 (a) 1 | Convicted of illegal voting (2nd deg. felony). Sentenced to two (2) years in the Texas Department of Criminal Justice Institutional Division. |
| Edwards | Rita Renee Johnson | Illegal Voting- ineligible voter (non-resident) | Nov. 2014 general election; May 2015 RISD election, May 2015 City of Rocksprings election, March 2016 primary election, May 2016 City of Rocksprings election, Nov. 2016 general election, and May 2017 City of Rocksprings election | CX7779096408 | 7 counts of illegal voting - ineligible voter (non-resident) - 2nd degree Felony | 7 | 12/20/17 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 7 counts Illegal Voting |
| Webb | Angel Antonio De Leon, Jr. | Illegal Voting- ineligible voter (convicted felon, on paper) | Special COL Dist. 2 - 2/13/2016; Special COL Dist. 2 Runoff - 4/2/2016; Joint Primary Runoff - 5/24/2016; November 2016 General Election | CX8826260117 | 4 counts of illegal voting - ineligible voter (felon) - 2nd degree Felony | 4 | 01/29/18 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 4 counts Illegal Voting |
| Webb | Arturo Garcia, Jr. | Illegal Voting- ineligible voter (convicted felon, on paper) | Nov. 2014 general election; March 2016 Democratic primary; May 2016 Democratic runoff | CX8140980101 | 3 counts of illegal voting - ineligible voter (felon) - 2nd degree Felony | 3 | 01/29/18 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 3 counts Illegal Voting |
| Medina | Patricia Barton | Unlawfully Influencing Voter in Polling Place; Electioneering | Mar. 2018 Primary Election | CX4240437617 | 2 counts of unlawfully influencing voter in polling place; 1 count electioneering | 3 | 04/26/18 | E.C. 61.008; E.C. 61.003 | Prosecution Diversion Program - stipulation of guilt to 2 counts unlawfully influencing voter; 1 count electioneering |
| Hill | Aaron Torres | Unlawfully Revealing Information Before the Polls Close | 2018 Primary Runoff | CX7954393300 | 1 count unlawfully revealing information before the polls close | 1 | 05/30/18 | E.C. 61.007 | Prosecution Diversion Program - stipulation of guilt to 1 count unlawfully revealing information before the polls close |
| Dallas | Shirley Brown | Unlawfully Accepting a Voter not eligible to vote, by election judge | 2016 General Election | CX3852040670 | 3 counts unlawfully accepting a voter | 3 | 05/31/18 | E.C. 63.012 | Prosecution Diversion Program - stipulation of guilt to 3 counts unlawfully accepting a voter |
| Kenedy | Chriselda Olvera | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX3920309473 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – election fraud, CI A; Count 3 - false statement on a registration application, CI B | 3 | 07/02/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |
| Kenedy | Martin Olvera | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX8890196392 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – election fraud, CI A; Count 3 - false statement on a registration application, CI B | 3 | 06/27/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |

CONFIDENTIAL

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegations | Election Involved | Court/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Law(s) Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Kenedy | Heather Lauren Miller | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX4641286029 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – election fraud, Cl A; Count 3 – false statement on a registration application, Cl B | 3 | 06/05/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |
| Nueces/ San Patricio | Rosita Torres Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal voting | Robstown 2016 General | S-18-3065-CR; 18-CR-83358 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – method of returning marked ballot, SJF 1 count misdemeanor unlawful assisting, Cl A | 3 | 6/12/2018 | E.C. 64.012; 86.006; 64.036 | Convicted of unlawfully assisting/influencing voter with mail ballot (E.C. 64.036); 12 months jail, probated for 18 months; $1000 fine; 10 days confinement in county jail served day for day as condition of probation |
| Frio | Consuelo Barrientos Cantu | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2016 Primary Runoff | CX3772923814 | 2 Counts Unlawful Assistance | 2 | 6/15/2018 | E.C. 64.036 | Prosecution Diversion Program - stipulation of guilt to 2 Counts unlawful assistance to voters with their mail ballots |
| Frio | Maria Delcarmen Vela | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2016 Primary Runoff | CX3772923814 | 6 Counts Unlawful Assistance | 6 | 6/15/2018 | E.C. 64.036 | Prosecution Diversion Program - stipulation of guilt to 6 Counts unlawful assistance to voters with their mail ballots |
| Starr | Miguel Moreno | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | Mar. 2016 Primary Election | CX4341881207 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/26/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Veronica Flores Vega | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX2819749616 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Abigail Estrada | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX7915417228 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Dora Barrera | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX4783488382 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Nitzia Marbella Flores | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX0192300090 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/25/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Eusebio Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX6220705016 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Starr | Adelaida Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX1897927803 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Alayssa Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX9033550035 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Zeida S. Maldonado | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX9693226046 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/25/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Jose Guadalupe Garcia | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX0876257916 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Andrea Martinez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX5913948503 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Rudolfo A. Trevino | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX4183309968 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/26/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Raul Lozano Jr. | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX6361275996 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Starr | Deyla Maria Garcia | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX2635106999 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Kenedy | Lariah Saenz | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX9041380477 | 1 Count False Statement on Application; 1 Count Illegal Voting | 2 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 1 Count Illegal Voting |

CONFIDENTIAL

STATE112184

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Cause/Case Number | Charges | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Kenedy | Juan Vela | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX2940077682 | 1 Count False Statement on Application; 3 Counts Illegal Voting | 4 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 3 Counts Illegal Voting |
| Kenedy | Leticia Munoz Vela | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX8789204507 | 1 Count False Statement on Application; 5 Counts Illegal Voting | 6 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 5 Counts Illegal Voting |
| Starr | Guadalupe Garza | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX8930944834 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting | 6 | 7/25/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting |
| Starr | Brandon Lee Garza | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX6232993804 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting | 6 | 7/25/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting |
| Nueces/ San Patricio | Cynthia Kay Gonzales | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal voting | Robstown 2016 Primary Runoff | 18-CR-83109; 18-CR-83110; 18-CR-83111 | Count 1 – carrier envelope action, SJF; Count 2 – method of returning marked ballot, SJF; Count 3 – assisting voter, SJF; and Count 4 – illegal voting, 2nd Degree Felony | 4 | 8/14/2018 | E.C. 86.0051; 86.006; 64.036; 64.012 | Convicted of unlawful possession of a ballot (86.006); carrier envelope action other than voter (86.0051); and unlawfully assisting voter with a mail ballot (86.010); sentenced to 180 days jail probated for 540 days, 180 days probated for 540 days, and 365 days probated for 540 days and a $500 fine, respectively.  Sentenced to served 5 days county jail, day for day, as condition of probation. |
| Harris/ Montgomery | Laura Janeth Garza AKA Angie Yadira Zamora | Illegal Voting (non-citizen); Impersonation of a U.S. Citizen | 2016 General Election | 18-05-06033; 18-05-06032 | Cause 1 - illegal voting - voter impersonation; Cause 2 - Illegal voting (non-citizen) | 2 | 9/13/2018 | E.C. 64.012 | Convicted of two counts of Illegal Voting for impersonating a voter and voting when she was not eligible to vote (noncitizen); 10 years TDCJ probated for 10 years, with 180 days in jail as condition, $10,000 fine probated for 10 years. |
| Starr | Artemio Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX8019112853 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 3 Counts Illegal Voting | 8 | 9/17/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 2 Counts Illegal Voting |
| Tarrant | Charles Jackson | False Statement on Application Mail Ballot Fraud/Vote Harvesting  - Forged Voter's Signature | 2016 Democratic Primary Election | 1565412 | False Statement on Mail Ballot Application | 1 | 4/6/2019 | E.C. 84.0041 | Convicted of False Statement on Mail Ballot Application; sentenced to 10 days county jail. |
| Polk | William Williams | Tampering with a Governmental Record; Illegal Voting (voting ballot of another); Election Fraud - Mail Ballot | 2018 General Election | CX1976897707 | 2 Counts - Tampering with a Governmental Record; 2 Counts - Illegal Voting (voting mail ballot of another); 2 Counts - Election Fraud | 6 | 8/5/2019 | P.C. 37.10; E.C. 64.012; E.C. 276.013 | Prosecution Diversion Program - stipulation of guilt to 2 Counts Tampering with a Governmental Record; 2 Counts Illegal Voting (voting mail ballot of another); 2 Counts Election Fraud |
| Starr/Hidalgo | Bernice Garza | Illegal Voting/Mail Ballot Fraud Impersonation of deceased voter, Mail ballot application fraud, Mail ballot cast for voter who was dead 9 years | 2016 Democratic Primary Election | CR-0115-19-J | Counts 1-2 - Illegal voting Count 3 - False Statement on Mail Ballot Application | 3 | 1/24/2019 | E.C. 64.012; E.C. 84.0041 | Dism'd for lack of evidence and in exchange for Defendant's cooperation with the State and an ongoing investigation by the Texas Rangers. |
| Harris | John Alsup | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count – False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/17/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |

CONFIDENTIAL

STATE112185

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Court/Case Number | Charge(s) | # Offense Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Harris | Betty Anderson | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2019 Special Election; 2020 Primary | CX8794422517 | 1 Count - False Statement on Application, 3 Counts Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 6 | 8/14/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 3 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | James Core | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/18/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Michael Debello | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/12/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX87944225-- | 1 Count - False Statement on Application, 1 Count Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/17/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count1 Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Brian Hoffner | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2018 Primary Runoff | CX8794422517 | 1 Count - False Statement on Application, 2 Counts Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 5 | 8/14/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Micaela Ladet | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/18/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | David Levy | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/14/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Kyle Levy | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/14/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2019 Special Election | CX8794422517 | 1 Count - False Statement on Application, 2 Counts Illegal Voting, 1 Count Tampering with a Government Record, 2 Counts Election Fraud | 6 | 8/11/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 2 Counts Election Fraud |
| Harris | Barnett Pate | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/18/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | John Scott | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/19/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |

**CONFIDENTIAL**

**STATE112186**

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Cause/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statutes Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Harris | Aaron Sprecher | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/20/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Justin Thomas | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/12/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/21/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Judith Zimmerman | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 9/2/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Antonia McClammy | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2019 Special Election | CX8794422517 | 1 Count - False Statement on Application, 2 Counts Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 5 | 8/21/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Luis Cruz | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/20/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Medina | A. Hitzfelder | Unlawfully Assisting Voters with Mail Ballot Applications | 2020 Presidential Election | CX8093477769 | 10 Counts Unlawfully Assisting Applicant | 10 | 05/19/21 | E.C. 84.003 | Prosecution Diversion Program - stipulation to the commission of 10 Counts Unlawfully Assisting Applicant |
| Lubbock | Christopher Donayre | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud | 2018 General Election | CX8764358848 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 09/02/21 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Guadalupe | Gregory Gilcrease | Illegal Voting; Election Fraud; False Statement on Registration Application; Tampering with a Government Record | 2018 General Election; 2020 General Election | CX3419210173 | 2 Counts - Illegal Voting, 1 Count - Election Fraud, 1 Count - False Statement on Registration Application, 1 Count Tampering with a Government Record | 5 | 10/28/21 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Gregg[c] | Shannon Everette Brown | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50953-B | 1 count of Engaging in Organized Election Fraud (F2), 7 counts of Fraudulent Use of an Application for Ballot by Mail (F3), 2 counts of Unlawful Possession of Ballot/Ballot Envelope (SJF), 8 counts of Election Fraud (SJF), and 5 counts of Tampering with a Governmental Record (SJF) | 23 | 1/20/2022 | E.C. 276.011; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 276.013 Election Fraud, and sentenced to 1 yr county jail, probated for 1 yr. and $2,000 fine. Public apology required as condition of plea deal. |

CONFIDENTIAL

STATE112187

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| County | Defendant | Allegation | Election Involved | Court/Case Number | Charge(s) | # Offenses Charged | Resolution Date | Statute Violated | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Gregg[c] | Marlena Roseanne Jackson | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50949-B | 1 count of Engaging in Organized Election Fraud (F1), 1 count of Illegal Voting (F2), 31 counts of Fraudulent Use of an Application for Ballot by Mail (F3), 7 counts of Unlawful Possession of Ballot/Ballot Envelope (SJF), 31 counts of Election Fraud (SJF), and 26 counts of Tampering with a Governmental Record (SJF) | 97 | 1/20/2022 | E.C. 276.011; 64.012; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 276.013 Election Fraud, and sentenced to 1 yr county jail, probated for 1 yr. and $2,000 fine. Public apology required as condition of plea deal. |
| Gregg[c] | Charlie Burns, Jr. | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50951-B | 1 count of Engaging in Organized Election Fraud (F3), 1 count of Fraudulent Use of an Application for Ballot by Mail (SJF), 5 counts of Unlawful Possession of a Ballot/Ballot Envelope (SJF), and 1 count of Tampering with a Governmental Record (SJF) | 8 | 1/27/2022 | E.C. 276.011; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 86.006 Unlawful Possession of Ballot with Intent to Defraud. Sentenced to 1 yr county jail, probated for 1 yr. |
| Gregg[c] | DeWayne Ward | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50947-B | 1 count Engaging in Organized Election Fraud (F1), 1 count of Unlawful Possession of Ballot or Carrier Envelope without the Consent of the Voter (F2), and 4 counts Unlawful Possession of Ballot/Ballot Envelope (SJF) | 6 | 1/31/2022 | E.C. 276.011; 86.006 | Convicted of E.C. 86.006 Unlawful Possession of Ballot with Intent to Defraud. Sentenced to 1 yr county jail, probated for 1 yr. |
| Bexar | Ozuki Trevino | Illegal Voting | 2018 Republican Primary | CR-21-0000047 | 1 count Illegal Voting (F2) | 1 | 3/8/2022 | E.C. 64.012(b) | Prosecution Diversion Program - 1 count Illegal Voting |
| Guadalupe | Stan "Stosh" Boyle | Tampering with Government Record - Application for Candidacy - Felony Conviction/Ineligible for Office | 2017 City of Cibolo Election; 2019 City of Cibolo Election | 19-2108-CR-C; CCL-19-0809 | 1 count Aggravated Perjury, 1 count of Tampering w/Government Record with Intent to Defraud, 1 count of Tampering with a Government Record | 3 | 4/12/2022 | P.C. 37.03; P.C. 37.10 | Pled Guilty to 1 count Aggravated Perjury (F3) and 1 count Tampering with a Government Record with Intent to Defraud (SJF).  Placed on 4-year deferred adjudication probation. |

|  | **Total Counts/ Offenses Prosecuted** | **691** |  |  |
|---|---|---|---|---|
| Number of offenses related to cases involving: | Mail Ballot Fraud | 444 | 64% | Note: significant overlap in fraud activity involving (two or more of) mail ballot fraud, assistance fraud, and illegal voting in the same case may result in totals > 100%. |
|  | Assistance Fraud | 169 | 24% |  |
|  | Illegal Voting | 189 | 27% |  |
|  | **2015-present** | **429** |  |  |

[a] County offense occurred/County offense prosecuted. | [b] For complete information on disposition, see judgment and sentence.  Prosecution Diversion Program includes an acknowledgment of the commission of offense/s.
[c] Prosecuted by or with assistance of local district/county attorney. | [d] Cause number, where available; otherwise, OAG investigation or prosecution case number.
**This document is not a summary of all election violations in this state.  This document does not record or report offenses handled exclusively by local law enforcement, district or county attorneys, or federal authorities.  This document only reflects cases investigated and/or prosecuted by the OAG.**

**CONFIDENTIAL**

STATE112188

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| County | Defendant | Allegations | Elections Involved | Cause Number | Charge(s) | # Counts Charged | Date Charged | Statutes Violated |
|--------|-----------|-------------|--------------------|--------------|-----------|------------------|--------------|-------------------|
| Jefferson/ Chambers | Zena Collins Stephens | Bribery, unlawfully accepting a cash contribution ($5,000/$1,000), tampering with a campaign finance report | 2016 General Election | 18DCR0152 | Count 1 - tampering with an election record; Count 2 - unlawfully accepting a cash contribution; Count 3 - unlawfully accepting a cash contribution | 3 | 4/26/2018 | P.C. 37.10; E.C. 253.033 |
| Jefferson/ Chambers | Ray Elliott Beck | Bribery, unlawfully accepting a cash contribution | 2016 General Election | 18DCR0153 | Count 1 - unlawfully accepting a cash contribution; Count 2 - failure to return a political contribution | 2 | 4/26/2018 | E.C. 253.033; 254.034 |
| Jefferson/ Chambers | Joseph Sterling Stevenson | Bribery, unlawfully accepting a cash contribution | 2016 Democratic Primary Election | 18DCR0154 | Unlawfully accepting a cash contribution | 1 | 4/26/2018 | E.C. 253.033 |
| Hidalgo | Marcela Gutierrez | Unlawfully assisting/influencing voters; illegal voting | 2016 City of Hidalgo Runoff Election | CR-18-08298-G; CR-18-08299-G; CR-18-08300-G; CR-18-08301-G; CR-18-08302-G; CR-18-08303-G; CR-18-08304-G; CR-18-08305-G; CR-18-08306-G; CR-18-08307-G | Misdemeanor cases 1-10 - Unlawfully Assisting/influencing Voters; Felony count 1 - Illegal Voting | 11 | 6/1/2018 | E.C. 64.036; 64.012 |
| Hidalgo | Sara Ornelas | Unlawfully assisting/influencing voters | 2016 City of Hidalgo Runoff Election | CR-18-08296-A; CR-18-08297-A; CR-18-08170-A | Counts 1-3 - unlawfully assisting/influencing voters | 3 | 5/31/2018 | E.C. 64.036 |
| Hidalgo | Sylvia Arjona | Unlawfully assisting/influencing voters | 2016 City of Hidalgo Runoff Election | CR-18-08167-H; CR-18-08168-H; CR-18-08169-H; CR-18-08295-H | Counts 1-4 - unlawfully assisting/influencing voters | 4 | 5/31/2018 | E.C. 64.036 |
| Tarrant | Leticia Sanchez | Illegal Voting - voting another's ballot; Vote Harvesting/Mail Ballot Fraud False Statement on Mail Ballot Application | 2016 Democratic Primary Election | 1565416 | Count 1 - Illegal voting Counts 2-17 - False Statement on Mail Ballot Application | 17 | 10/10/2018 | E.C. 64.012 (a) 4; E.C. 84.0041 |
| Tarrant | Leticia Sanchez Tepichin | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565415 | Counts 1-9 - False Statement on Mail Ballot Application | 9 | 10/10/2018 | E.C. 84.0041 |
| Tarrant | Maria Rosa Solis | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565413 | Counts 1-2 - False Statement on Mail Ballot Application | 2 | 10/10/2018 | E.C. 84.0041 |
| Tarrant | Laura Parra | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565155 | Counts 1 - False Statement on Mail Ballot Application | 1 | 10/10/2018 | E.C. 84.0041 |

CONFIDENTIAL

STATE112189

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| County | Defendant | Allegation | Election Involved | Cause Number | Charge(s) | # Counts Charged | Date Charged | Statute Violated |
|---|---|---|---|---|---|---|---|---|
| Navarro[c] | Marites Curry | Illegal Voting - Non-Citizen | 2016 Presidential Election | D38883-CR | Illegal Voting | 1 | 12/20/2018 | E.C. 64.012 |
| Harris[c] | Anthony Rodriguez | Election Fraud - False Statement to Election Official | 2018 General Election | 1629438 | Counts 1-2 - Election Fraud | 2 | 4/26/2019 | E.C. 276.013 |
| Hidalgo[c] | Ricardo Molina | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2056-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-12 - Illegal Voting | 12 | 6/6/2019 | E.C. 276.011;<br>E.C. 64.012 |
| Hidalgo[c] | Dalia Molina | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2057-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-3 - Illegal Voting | 3 | 6/6/2019 | E.C. 276.011;<br>E.C. 64.012 |
| Hidalgo[c] | Julio Carranza | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2058-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-3 - Illegal Voting | 3 | 6/6/2019 | E.C. 276.011;<br>E.C. 64.012 |
| Hidalgo[c] | Araceli Gutierrez | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-3349-19-A | Count 1 - Engaging in Organized Election Fraud<br>Count 2 - Illegal Voting | 2 | 8/22/2019 | E.C. 276.011;<br>E.C. 64.012 |
| Hidalgo[c] | Alyssa Cano | Illegal Voting | 2017 City of Edinburg Election | CR-3493-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[c] | Belinda Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3343-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[c] | Brenda Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3344-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[c] | Crystal Lee Ponce | Illegal Voting | 2017 City of Edinburg Election | CR-3341-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[c] | Cynthia Tamez | Illegal Voting | 2017 City of Edinburg Election | CR-3339-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |

CONFIDENTIAL

STATE112190

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| County | Defendant | Allegation | Election Involved | Cause Number | Charge(s) | # Counts Charged | Date Charged | Statutes Violated |
|---|---|---|---|---|---|---|---|---|
| Hidalgo[C] | Daniel Castillo | Illegal Voting | 2017 City of Edinburg Election | CR-3494-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[C] | Felisha Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3346-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Francisco Tamez, Jr. | Illegal Voting | 2017 City of Edinburg Election | CR-3348-19-A | Counts 1-2 – Illegal Voting | 2 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Guadalupe Garza | Illegal Voting | 2017 City of Edinburg Election | CR-3342-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Jose Martinez | Illegal Voting | 2017 City of Edinburg Election | CR-3347-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Jose Vela | Illegal Voting | 2017 City of Edinburg Election | CR-3491-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[C] | Ludivina Leal | Illegal Voting | 2017 City of Edinburg Election | CR-3492-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[C] | Maria Aleman | Illegal Voting | 2017 City of Edinburg Election | CR-3338-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Rosendo Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3345-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Ruby Tamez | Illegal Voting | 2017 City of Edinburg Election | CR-3340-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[C] | Veronica Vela Saenz | Illegal Voting | 2017 City of Edinburg Election | CR-3337-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Guadalupe | Stan "Stosh" Boyle | Tampering with Government Record – Application for Candidacy – Felony Conviction/Ineligible for Office | 2017 City of Cibolo Election; 2019 City of Cibolo Election | 19-2108-CR-C; CCL-19-0809 | 1 count of Aggravated Perjury, 1 count of Tampering w/Government Record with Intent to Defraud, 1 count of Tampering with a Government Record | 3 | 9/5/19; 7/26/19 | P.C. 37.03; P.C. 37.10 |
| Limestone[C] | Kelly Reagan Brunner | Voter Registration Fraud – Vote Harvesting | 2020 Presidential Election | 15126-A | 67 counts Purportedly Acting as Agent (F3), 67 counts Election Fraud (SJF) | 134 | 10/21/2020 | E.C. 13.006; 276.013 |

Information as of 7/15/2022

CONFIDENTIAL

STATE112191

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| County | Defendant | Allegations | Elections Involved | Cause Number | Charge(s) | # Counts Charged | Date Charged | Statutes Violated |
|---|---|---|---|---|---|---|---|---|
| Medina/ Bandera[a] | Eva Ann Martinez | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-022 | 1 count Engaging in Organized Election Fraud (F1), 9 counts Illegal Voting (F2), 15 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF), 3 counts Purportedly Acting as an Agent (F3), 5 counts Tampering w/Government Document w/Intent to Harm or Defraud (SJF), 14 counts Election Fraud Enhanced (SJF), 4 counts Fraudulent Use of Mail Ballot Application Enhanced (F3), 13 counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3) | 64 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; E.C. 13.006; P.C. 37.10; E.C. 276.013; E.C. 84.0041; E.C. 86.010 |
| Medina/ Bandera[a] | Leonor Rivas Garza | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-019 | 1 count Engaging in Organized Election Fraud (F1); 2 counts Illegal Voting (F2); 8 counts of Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 2 counts Election Fraud Enhanced (SJF); 5 counts Fraudulent Use of Mail Ballot Application Enhanced (F3) | 18 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; E.C. 276.013; E.C. 84.0041 |
| Medina/ Bandera[a] | Mary Jane Balderrama | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-020 | 1 count Engaging in Organized Election Fraud (F1); 9 counts Illegal Voting (F2); 2 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 1 count Fraudulent Use of Mail Ballot Application Enhanced (F3); 2 Counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3); 2 counts Tampering w/Government Document with Intent to Harm or Defraud (SJF); 8 counts Election Fraud Enhanced (SJF) | 25 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; P.C. 37.10; E.C. 276.013; E.C. 84.0041; E.C. 86.010 |
| Medina/ Bandera[a] | Tomas Ramirez | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-021 | 1 count Engaging in Organized Election Fraud (F1); 17 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 17 counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3) | 35 | 2/9/2021 | E.C. 276.011; E.C. 86.006; E.C. 86.010 |
| Victoria | Monica Mendez | Vote Harvesting, Assistance Fraud, Illegal Voting, Election Fraud | 2018 Victoria Co Water District Election | 21-06-32996-A | 3 counts Illegal Voting (F2); 7 counts Unlawful Possession of Vote by Mail Enhanced (F3); 8 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 8 counts Election Fraud Enhanced (SJF) | 26 | 7/15/2021 | E.C. 64.012; E.C. 86.006; E.C. 86.010; E.C. 276.013 |
| Bexar/ Kendall[a] | Rachel "Raquel" Rodriguez | Vote Harvesting, Assistance Fraud, Illegal Voting, Election Fraud | 2020 Presidential Election | 8231; 21-078-CR | 1 count Illegal Voting (F2); 1 count Unlawful Possession of Ballot w/ intent to defraud, victim over 65 (SJF); 1 count Unlawful Assistance (CI A); 1 count Election Fraud (CI A) | 4 | 3/1/2021 | E.C. 64.012; E.C. 86.006; E.C. 64.036; E.C. 276.013 |
| Harris/ Montgomery[a] | Hervis Earl Rogers | Illegal Voting | 2020 Primary Election; 2018 General and Special Elections | 21-06-08801-CR | 2 counts Illegal Voting (F2) | 2 | 6/24/2021 | E.C. 64.012 |

Information as of 7/15/2022

CONFIDENTIAL
STATE112192

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| County[a] | Defendant | Offense(s) | Election Involved | Cause Number | Charge(s) | # Counts Charged | Date Charged | Statute Violated |
|---|---|---|---|---|---|---|---|---|
| Harris/ Montgomery[a] | Ignacio Gonzalez Beltran | Illegal Voting - Impersonation of a U.S. Citizen, Document Fraud; ref'd by Diplomatic Security Services - U.S. State Dept. | Multiple Elections | 21-06-08808 | 4 counts Illegal Voting (F2) | 4 | 6/24/2021 | E.C. 64.012 |
| Nolan[c] | Kenneth Ray Teaff | Fraudulent Use of Ballot Application - Deceased Voter Impersonation, Tampering with Gov't Record | 2020 Presidential Election | 13853; 13854 | 1 count Fraudulent Use of Application for Ballot by Mail, enhanced (F3); 1 count Tampering with Gov't Record (SJF) | 2 | 8/17/2021 | E.C. 84.0041; P.C. 37.10 |
| Hildago | Bianca Moron | Illegal Voting | 2019 City of La Villa Municpal Election | CR-1890-22-H | 1 count Illegal Voting (F2) | 1 | 4/28/2022 | E.C. 64.012 |
| Hildago | Roberto Alonzo Perez | Illegal Voting | 2019 City of La Villa Municpal Election | CR-1888-22-H | 1 count Illegal Voting (F2) | 1 | 4/28/2022 | E.C. 64.012 |
| Hildago | Anabel Rios | Illegal Voting | 2019 City of La Villa Municpal Election | CR-1889-22-H | 1 count Illegal Voting (F2) | 1 | 4/28/2022 | E.C. 64.012 |

| Total Counts/ Offenses Pending Prosecution | | 413 | |
|---|---|---|---|
| Number of offenses related to cases involving: | Mail Ballot Fraud | 287 | 69% |
| | Assistance Fraud | 18 | 4% |
| | Illegal Voting | 70 | 17% |

[a] County offense occurred/County offense prosecuted. | [b] Investigated by local law enforcement and referred to OAG for prosecution | [c] Prosecuted by or with assistance of local district/county attorney.

This document is not a summary of all election violations in this state.  This document does not record or report offenses handled exclusively by local law enforcement, district or county attorneys, and federal authorities.  This document only reflects cases investigated and/or prosecuted by the OAG.

CONFIDENTIAL

STATE112193

# Alabama

www.alabamavotes.gov/

## Federal Election Deadlines

|  | General Election<br>November 8, 2022 |
|---|---|
| Registration | Postmarked by<br>October 24, 2022 |
| Ballot Request | Received by<br>November 1, 2022 |
| Ballot Return | Postmarked by*<br>November 8, 2022 |

*Postmarked ballots must still be received by the 7th day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
|---|---|
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires a candidate to receive a certain percentage of the votes in order to advance to a general election or take public office. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | No. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | No. |

STATE115060

| | |
|---|---|
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://myinfo.alabamavotes.gov/voterview |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/alabama |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** an Alabama-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Alabama-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your |

absentee ballot online, you must provide your email address.

| | |
|---|---|
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You **must mail** your signed FPCA to your election official. Addresses can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail** or **online***.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the

general election ballot. Additional information about this label can be found in the "Important Information" section.

**\*Online only if you requested your absentee ballot by email or online and are located outside the territorial limits of the United States. Instructions for this option will be provided when your state absentee ballot is transmitted to you electronically.**

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in all elections for federal, state and local offices, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that best describes you. |
| --- | --- |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** an Alabama-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Alabama-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official |

can contact you if they need additional information from you in order to accept your FWAB.

| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.** |
| --- | --- |
| | B. Do not make a selection. If you want to receive voting materials you must submit an FPCA to your election office. |
| | C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| | **This form must have two witness signatures.** |
| Section 7 | Sign and date the form. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

If you are voting in Alabama's primary election, please note that the **primary** is Ranked Choice Voting for federal offices. You will be able to rank federal candidates in order of preference. Since there may be more than one candidate registered as affiliated with a political party or group in each race, to make sure your ballot can be counted, it is important that you write the candidate name and NOT the political party or group. For more information, visit http://www.alabamavotes.gov/.

## How and where to submit your FWAB

The FWAB **must be mailed** to your election official. Addresses can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. Overseas Uniformed Service members can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about

this label can be found in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for county

| County | Mailing Address |
|---|---|
| Autauga | Autauga County Absentee Elections Manager<br>134 N Court St.<br>Prattville, AL 36067<br>Phone: 334-358-6808<br>Email: debra.hill@alacourt.gov |
| Baldwin | Baldwin County Circuit Clerk<br>312 Courthouse Square, Ste 10<br>Bay Minette, AL 36507<br>Phone: 251-937-0379<br>Email: absentee.elections@baldwincountyal.gov |
| Barbour | Barbour County Absentee Elections Manager<br>303 East Broad Street Room 201<br>Eufaula, AL 36027<br>Phone: 334-689-2713<br>Email: paige.smith@alacourt.gov |
| Bibb | Bibb County Absentee Elections Manager<br>35 Court Square East<br>Centreville, AL 35042<br>Phone: 205-926-3103<br>Email: kayla.cooner@alacourt.gov |
| Blount | Blount County Circuit Clerk<br>220 2nd Ave, Ste 208<br>Oneonta, AL 35121<br>Phone: 205-625-4153<br>Email: droybal@blountcountyal.gov |
| Bullock | Bullock County Circuit Clerk<br>PO Box 230<br>Union Springs, AL 36089<br>Phone: 334-738-2280<br>Email: rashawn.harris@alacourt.gov |
| Butler | Butler County Circuit Clerk<br>PO Box 236<br>Greenville, AL 36037<br>Phone: 334-382-3521<br>Email: mattie.gomillion@alacourt.gov |
| Calhoun | Calhoun County Absentee Elections Manager<br>1702 Noble St., Suite 111<br>Anniston, AL 36201<br>Phone: 256-241-2822<br>Email: splatt@calhouncounty.org |
| Chambers | Chambers County Circuit Clerk<br>2 Lafayette Street S, Ste B-114<br>Lafayette, AL 36862<br>Phone: 334-864-4348<br>Email: lisa.burdette@alacourt.gov |
| Cherokee | Cherokee County Circuit Clerk<br>100 Main Street, Room 203<br>Centre, AL 35960<br>Phone: 256-927-3637<br>Email: dwayne.amos@alacourt.gov |
| Chilton | Chilton County Circuit Clerk<br>PO Box 1946<br>Clanton, AL 35046<br>Phone: 205-755-4275<br>Email: glenn.mcgriff@alacourt.gov |
| Choctaw | Choctaw County Circuit Clerk<br>117 S Mulberry St Ste 10<br>Butler, AL 36904<br>Phone: 205-459-2155<br>Email: candace.jenkins@alacourt.gov |
| Clarke | Clarke County Circuit Court<br>PO Box 921<br>Grove Hill, AL 36451<br>Phone: 251-275-3363<br>Email: summer.padgett@alacourt.gov |

STATE115063

**Alabama**

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| Clay | Clay County Circuit Clerk<br>PO Box 816<br>Ashland, AL 36251<br>Phone: 256-354-7926<br>Email: julie.poe@alacourt.gov | Etowah | Etowah County Circuit Clerk<br>801 Forrest Avenue, Suite 202<br>Gadsen, AL 35901<br>Phone: 256-549-2174<br>Phone: 256-549-5355<br>Email: cassandra.johnson@alacourt.gov |
| Cleburne | Cleburne County Circuit Clerk<br>120 Vickery Street, Room 202<br>Heflin, AL 36264<br>Phone: 256-463-2651<br>Email: warreng.sarrell@alacourt.gov | Fayette | Fayette County Circuit Clerk<br>PO Box 906<br>Fayette, AL 35555<br>Phone: 205-932-4617<br>Email: samantha.howard@alacourt.gov |
| Coffee | Coffee County Absentee Elections Manager<br>PO Box 427<br>New Brockton, AL 36351<br>Phone: 334-894-1100<br>Email: debbie.kinsaul@vote.alabama.gov | Franklin | Franklin County Circuit Clerk<br>PO Box 160<br>Russellville, AL 35653<br>Phone: 256-332-8865<br>Email: anita.scott@alacourt.gov |
| Colbert | Colbert County Circuit Clerk<br>PO Box 740370<br>Tuscumbia, AL 35674<br>Phone: 256-386-8511<br>Email: mark.eady@alacourt.gov | Geneva | Geneva County Circuit Clerk<br>PO Box 86<br>Geneva, AL 36340<br>Phone: 334-684-5620<br>Email: gale.laye@alacourt.gov |
| Conecuh | Conecuh County Circuit Clerk<br>111 Court Street Room 203<br>Evergreen, AL 36401<br>Phone: 251-578-7012<br>Email: david.jackson@alacourt.gov | Greene | Greene County Circuit Clerk<br>PO Box 307<br>Eutaw, AL 35462<br>Phone: 205-372-3598<br>Email: veronica.jones@alacourt.gov |
| Coosa | Coosa County Judge of Probate<br>PO Box 218<br>Rockford, AL 35136<br>Phone: 256-377-4919 x1<br>Phone: 256-377-4919 x2<br>Email: CoosaCountyProbate@outlook.com | Hale | Hale County Circuit Clerk<br>PO Box 69<br>Greensboro, AL 36744<br>Phone: 334-624-4334<br>Email: catrinna.perry@alacourt.gov |
| Covington | Covington County Circuit Clerk<br>1-K North Court Square<br>Andalusia, AL 36420<br>Phone: 334-428-2520<br>Email: amy.jones@alacourt.gov | Henry | Henry County Circuit Clerk<br>101 Court Square, Suite J<br>Abbeville, AL 36310<br>Phone: 334-585-2753<br>Email: shirlene.vickers@alacourt.gov |
| Crenshaw | Crenshaw County Absentee Elections Manager<br>P.O. Box 263<br>Luverne, AL 36049<br>Phone: 334-335-6568<br>Email: s.berry@vote.alabama.gov | Houston | Houston County Circuit Clerk<br>PO Drawer 6406<br>Dothan, AL 36302<br>Phone: 334-671-8700<br>Email: carla.woodall@alacourt.gov |
| Cullman | Cullman County Circuit Clerk<br>500 Second Ave SW, Room 303<br>Cullman, AL 35055<br>Phone: 256-775-4654<br>Email: lisa.mcswain@alacourt.gov | Jackson | Jackson County Circuit Clerk<br>PO Box 459<br>Scottsboro, AL 35768<br>Phone: 256-574-9380<br>Email: bart.buchanan@alacourt.gov |
| Dale | Dale County Circuit Clerk<br>PO Box 1350<br>Ozark, AL 36361<br>Phone: 334-774-5003<br>Email: delores.woodham@alacourt.gov | Jefferson -<br>Bessemer | Jefferson - Bessemer County Circuit Clerk<br>1851 2nd Ave. N.<br>Bessemer, AL 35020<br>Phone: 205-497-8510<br>Email: karen.dunnburks@alacourt.gov |
| Dallas | Dallas County Circuit Clerk<br>PO Box 327<br>Selma, AL 36702<br>Phone: 334-874-2536<br>Email: lynnethia.robinson@alacourt.gov | Jefferson -<br>Birmingham | Jefferson - Birmingham County Circuit Clerk<br>716 Richard Arrington Jr. Blvd N, Room 500<br>Birmingham, AL 35203-0102<br>Phone: 205-325-5313<br>Email: jackie.smith@alacourt.gov |
| DeKalb | DeKalb County Circuit Clerk<br>PO Box 681149<br>Fort Payne, AL 35968<br>Phone: 256-845-8525<br>Email: todd.greeson@alacourt.gov | Lamar | Lamar County Circuit Clerk<br>PO Box 434<br>Vernon, AL 35592<br>Phone: 205-695-7193<br>Email: mary.jones@alacourt.gov |
| Elmore | Elmore County Circuit Clerk<br>PO Box 310<br>Wetumpka, AL 36092<br>Phone: 334-514-3116<br>Email: michael.dozier@alacourt.gov | Lauderdale | Lauderdale County Circuit Clerk<br>PO Box 795<br>Florence, AL 35631<br>Phone: 256-760-5728<br>Email: missy.homan@alacourt.gov |
| Escambia | Escambia County Circuit Clerk<br>PO Box 856<br>Brewton, AL 36427<br>Phone: 251-867-0225 x225<br>Email: john.fountain@alacourt.gov | Lawrence | Lawrence County Circuit Clerk<br>14451 Market Street, Suite 300<br>Moulton, AL 35650<br>Phone: 256-974-2438<br>Email: sandra.ligon@alacourt.gov |

**STATE115064**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Lee** | Lee County Circuit Clerk<br>PO Box 1616<br>Opelika, AL 36803<br>Phone: 334-737-3490 | **Pike** | Pike County Circuit Clerk<br>120 West Church Street<br>Troy, AL 36081<br>Phone: 334-566-5113<br>Email: jamie.scarbrough@alacourt.gov |
| **Limestone** | Limestone County Circuit Clerk<br>200 Washington Street W.<br>Athens, AL 35611<br>Phone: 256-216-3875<br>Email: brad.curnutt@alacourt.gov | **Randolph** | Randolph County Circuit Clerk<br>PO Box 328<br>Wedowee, AL 36278<br>Phone: 256-357-4551<br>Email: Chris.May@alacourt.gov |
| **Lowndes** | Lowndes County Absentee Elections Manager<br>PO Box 235<br>Hayneville, AL 36040<br>Phone: 334-201-1213<br>Email: Johnniekng55@gmail.com | **Russell** | Russell County Circuit Clerk<br>501 14th Street<br>Phenix City, AL 36867<br>Phone: 334-298-0516 x2343<br>Email: jody.sellers@alacourt.gov |
| **Macon** | Macon County Circuit Clerk<br>PO Box 830723<br>Tuskegee, AL 36083<br>Phone: 334-724-2614<br>Email: david.love@alacourt.gov | **Shelby** | Shelby County Circuit Clerk<br>PO Box 1810<br>Columbiana, AL 35051<br>Phone: 205-669-3779<br>Email: mary.harris@alacourt.gov |
| **Madison** | Madison County Circuit Clerk<br>1918 North Memorial Parkway<br>Huntsville, AL 35801<br>Phone: 256-532-3684<br>Email: debra.kizer@alacourt.gov | **St. Clair** | St. Clair County Circuit Clerk<br>1815 Cogswell Ave, Ste 205<br>Pell City, AL 35125<br>Phone: 205-884-2395 x3<br>Email: kcrowe@stclairco.com |
| **Marengo** | Marengo County Probate/AEM<br>PO Box 480668<br>Linden, AL 36748<br>Phone: 334-295-2210<br>Email: marengoprobate@gmail.com | **Sumter** | Sumter County Circuit Clerk<br>PO Box 936<br>Livingston, AL 35470<br>Phone: 205-652-2333<br>Email: devon.james@alacourt.gov |
| **Marion** | Marion County Circuit Clerk<br>PO Box 1595<br>Hamilton, AL 35570<br>Phone: 205-921-7451<br>Email: Denise.Mixon@alacourt.gov | **Talladega** | Talladega County Circuit Clerk<br>PO Box 6137<br>Talladega, AL 35161<br>Phone: 256-761-2102 x1208<br>Email: brian.york@alacourt.gov |
| **Marshall** | Marshall County Circuit Clerk<br>424 Blount Avenue, Suite 201<br>Guntersville, AL 35976<br>Phone: 256-571-7790<br>Email: angie.johnson@alacourt.gov | **Tallapoosa** | Tallapoosa County Circuit Clerk<br>125 N Broadnax St<br>Dadeville, AL 36853<br>Phone: 256-825-1059<br>Email: patrick.craddock@alacourt.gov |
| **Mobile** | Mobile County Absentee Elections Manager<br>PO Box 7<br>Mobile, AL 36601<br>Phone: 251-574-6400<br>Email: abarnett@mobile-county.net | **Tuscaloosa** | Tuscaloosa County Circuit Clerk<br>714 Greensboro Avenue Rm 214<br>Tuscaloosa, AL 35401<br>Phone: 205-464-8259<br>Email: magaria.bobo@alacourt.gov |
| **Monroe** | Monroe County Circuit Clerk<br>65 North Alabama Avenue<br>Monroeville, AL 36460<br>Phone: 251-743-2283<br>Email: wesley.hines@alacourt.gov | **Walker** | Walker County Circuit Clerk<br>1803 3rd Ave Ste 205<br>Jasper, AL 35501<br>Phone: 205-384-7025<br>Email: susan.odom@alacourt.gov |
| **Montgomery** | Montgomery County Circuit Clerk<br>PO Box 1667<br>Montgomery, AL 36102<br>Phone: 334-832-1281<br>Email: gina.ishman@alacourt.gov | **Washington** | Washington County Circuit Clerk<br>PO Box 548<br>Chatom, AL 36518<br>Phone: 251-847-2239<br>Email: valerie.knapp@alacourt.gov |
| **Morgan** | Morgan County Circuit Clerk<br>PO Box 668<br>Decatur, AL 35602<br>Phone: 256-351-4794<br>Email: chris.priest@alacourt.gov | **Wilcox** | Wilcox County Circuit Clerk<br>PO Box 608<br>Camden, AL 36726<br>Phone: 334-682-6313<br>Email: carolyn.posey@alacourt.gov |
| **Perry** | Perry County Circuit Clerk<br>PO Box 508<br>Marion, AL 36756<br>Phone: 334-683-6106<br>Email: mia.turner@alacourt.gov | **Winston** | Winston County Circuit Clerk<br>PO Box 220<br>Double Springs, AL 35553<br>Phone: 205-489-5533<br>Email: john.snoddy@alacourt.gov |
| **Pickens** | Pickens County Circuit Clerk<br>PO Box 418<br>Carrollton, AL 35447<br>Phone: 205-367-2050<br>Email: keith.cox@alacourt.gov | | |

STATE115065

# Florida

www.dos.myflorida.com/elections/

## Federal Election Deadlines

|  | State Primary<br>August 23, 2022 | General Election<br>November 8, 2022 |
|---|---|---|
| Registration | Postmarked by<br>July 25, 2022 | Postmarked by<br>October 11, 2022 |
| Ballot Request | Request Mail Ballot: Received by<br>August 13, 2022<br>Request Email/Online or Fax Ballot:<br>Received by<br>August 23, 2022 | Request Mail Ballot: Received by<br>October 29, 2022<br>Request Email/Online or Fax Ballot: Received<br>by<br>November 8, 2022 |
| Ballot Return | Within the U.S.<br>Return by Mail: Received by<br>August 23, 2022<br>Outside the U.S.<br>Return by Mail: Postmarked by<br>August 23, 2022<br>Outside the U.S.<br>Return by Fax: Received by<br>August 23, 2022 | Within the U.S.<br>Return by Mail: Received by<br>November 8, 2022<br>Outside the U.S.<br>Return by Mail: Postmarked by*<br>November 8, 2022<br>Outside the U.S.<br>Return by Fax: Received by<br>November 8, 2022 |

*Ballot Return: Ballots must still be received by the 10th day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
|---|---|
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |

STATE115066

| | |
|---|---|
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | No. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | No. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://www.dos.myflorida.com/elections/for-voters/check-your-voter-status-and-polling-place/vote-by-mail-ballot-information-and-status-lookup/ |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/florida |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide your Florida driver license number **or** Florida-issued ID number **or** the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: "I do not have a Social Security Number, Florida driver license number, or Florida-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax". |
| | B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting |

STATE115067

| | an absentee ballot for general elections. |
|---|---|
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

### How and where to submit your FPCA

If you are using the FPCA to **register to vote**, you **must mail** the form. Addresses can be found in the "Local Election Offices" section or online at FVAP.gov.

If you are already registered and are using the FPCA to **request** an absentee ballot, you can **mail, email** or **fax** your signed form to your election official. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

## Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines provided in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail** or **fax\***.

Contact information can be found in the "Local Election Offices" section. If you do not have access to

a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

**\*Fax only if you are outside of the U.S.**

## Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in all elections for federal, state and local offices.

### Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that best describes you. |
|---|---|
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Provide your Florida driver license number **or** Florida-issued ID number **or** the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: "I do not have a Social Security Number, Florida driver license number, or Florida-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional |

STATE115068

| | information from you in order to accept your FWAB. |
|---|---|
| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.**<br><br>B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

## Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

### How and where to submit your FWAB

You can submit the FWAB by **mail** or **fax\***. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**\*Fax only if you are outside the U.S.**

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Fax your FWAB:** *(fax only if you are outside of the U.S.)*. Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may

use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

STATE115069

# Local election offices for county

| County | Mailing Address |
|--------|-----------------|
| **Alachua** | Alachua Supervisor of Elections<br>515 N. Main St., Suite 300<br>Gainesville, FL 32601<br>Phone: 352-374-5252<br>Fax: 352-374-5264<br>Email: kbarton@alachuacounty.us |
| **Baker** | Baker Supervisor of Elections<br>PO Box 505<br>Macclenny, FL 32063<br>Phone: 904-259-6339<br>Fax: 904-259-2799<br>Email: vote@bakercountyfl.org |
| **Bay** | Bay County Supervisor of Elections<br>830 West 11th Street<br>Panama City, FL 32401<br>Phone: 850-784-6100<br>Fax: 850-767-3450<br>Email: absenteereg@bayvotes.org |
| **Bradford** | Bradford Supervisor of Elections<br>PO Box 58<br>Starke, FL 32091<br>Phone: 904-966-6266<br>Fax: 904-966-6165<br>Email: Bradsoe@bradfordcountyfl.gov |
| **Brevard** | Brevard Supervisor of Elections<br>PO Box 410819<br>Melbourne, FL 32941<br>Phone: 321-633-2127<br>Fax: 321-637-5460<br>Email: mailballot@votebrevard.gov |
| **Broward** | Broward Supervisor of Elections<br>115 S. Andrews Avenue, Room 102<br>Fort Lauderdale, FL 33301<br>Phone: 954-357-7050<br>Fax: 954-357-7033<br>Email: elections@browardvotes.gov |
| **Calhoun** | Calhoun Supervisor of Elections<br>20859 Central Avenue East, Room 117<br>Blountstown, FL 32424<br>Phone: 850-674-8568<br>Fax: 850-674-2449<br>Email: soe@votecalhoun.com |
| **Charlotte** | Charlotte Supervisor of Elections<br>226 Taylor Street, Unit 120<br>Punta Gorda, FL 33950<br>Phone: 941-833-5400<br>Fax: 941-833-5434<br>Email: soe@soecharlottecountyfl.gov |
| **Citrus** | Citrus Supervisor of Elections<br>PO Box 1870<br>Lecanto, FL 34460-1870<br>Phone: 352-564-7120<br>Fax: 352-564-7121<br>Email: vote@votecitrus.gov |
| **Clay** | Clay Supervisor of Elections<br>500 N. Orange Ave.<br>Green Cove Springs, FL 32043<br>Phone: 904-269-6350<br>Fax: 904-541-5343<br>Email: VBMrequests@clayelections.gov |
| **Collier** | Collier Supervisor of Elections<br>Rev Dr MLK Bldg, 3750 Enterprise Ave<br>Naples, FL 34104<br>Phone: 239-252-8683<br>Fax: 239-774-9468<br>Email: mailballot@CollierVotes.gov |
| **Columbia** | Columbia Supervisor of Elections<br>971 W. Duval Street, Suite 102<br>Lake City, FL 32055<br>Phone: 386-758-1026<br>Fax: 386-758-2194<br>Email: election@votecolumbia.com |
| **DeSoto** | DeSoto Supervisor of Elections<br>201 East Oak Street, Suite 104<br>Arcadia, FL 34265<br>Phone: 863-993-4871<br>Fax: 863-993-4875<br>Email: mnegley@votedesoto.com |
| **Dixie** | Dixie Supervisor of Elections<br>229 NE 351 Hwy., Suite A<br>Cross City, FL 32628<br>Phone: 352-498-1216<br>Fax: 352-498-1218<br>Email: elections@dixievotes.com |
| **Duval** | Duval Supervisor of Elections<br>105 East Monroe Street<br>Jacksonville, FL 32202<br>Phone: 904-255-8683<br>Fax: 904-301-3867<br>Email: duvaluocava@coj.net |
| **Escambia** | Escambia Supervisor of Elections<br>PO Box 12601<br>Pensacola, FL 32591<br>Phone: 850-595-3900<br>Fax: 850-595-3914<br>Email: soe@escambiavotes.com |
| **Flagler** | Flagler Supervisor of Elections<br>1769 E. Moody Blvd., Building 2, Suite 101<br>Bunnell, FL 32110<br>Phone: 386-313-4170<br>Fax: 386-313-4171<br>Email: info@flaglerelections.com |
| **Franklin** | Franklin Supervisor of Elections<br>47 Avenue F<br>Apalachicola, FL 32320<br>Phone: 850-653-9520<br>Fax: 850-653-9092<br>Email: Heather@votefranklin.com |
| **Gadsden** | Gadsden Supervisor of Elections<br>16 South Madison Street<br>Quincy, FL 32351<br>Phone: 850-627-9910<br>Fax: 850-627-6144<br>Email: info@gadsdensoe.com |
| **Gilchrist** | Gilchrist Supervisor of Elections<br>112 South Main Street, Room 137<br>Trenton, FL 32693<br>Phone: 352-463-3194<br>Fax: 352-463-3196<br>Email: elections@gilchrist.fl.us |
| **Glades** | Glades Supervisor of Elections<br>PO Box 668<br>Moore Haven, FL 33471<br>Phone: 863-946-6005<br>Fax: 863-946-0313<br>Email: vote@voteglades.com |
| **Gulf** | Gulf Supervisor of Elections<br>401 Long Ave.<br>Port St Joe, FL 32456<br>Phone: 850-229-6117<br>Fax: 850-229-8975<br>Email: gulfsoe@votegulf.com |
| **Hamilton** | Hamilton Supervisor of Elections<br>1153 US Hwy 41 NW Suite 1<br>Jasper, FL 32052<br>Phone: 386-792-1426<br>Fax: 386-792-3205<br>Email: elect@hamiltonvotes.com |

STATE115070

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Hardee** | Hardee Supervisor of Elections<br>311 N. 6th Ave.<br>Wauchula, FL 33873<br>Phone: 863-773-6061<br>Fax: 863-773-6813<br>Email: info@hardeecountyelections.com | **Leon** | Leon Supervisor of Elections<br>PO Box 8600<br>Tallahassee, FL 32314-8600<br>Phone: 850-606-8683<br>Fax: 850-606-8602<br>Email: vbm@leonvotes.gov |
| **Hendry** | Hendry Supervisor of Elections<br>PO Box 174<br>LaBelle, FL 33975<br>Phone: 863-675-5230<br>Fax: 863-675-7803<br>Email: supervisor@hendryelections.org | **Levy** | Levy Supervisor of Elections<br>421 South Court Street<br>Bronson, FL 32621<br>Phone: 352-486-5163<br>Fax: 352-486-5146<br>Email: elections@votelevy.gov |
| **Hernando** | Hernando Supervisor of Elections<br>20 North Main Street, Room 165<br>Brooksville, FL 34601<br>Phone: 352-754-4125<br>Fax: 352-754-4425<br>Email: Elections@hernandovotes.com | **Liberty** | Liberty Supervisor of Elections<br>10818 NW SR 20<br>Bristol, FL 32321<br>Phone: 850-643-5226<br>Fax: 850-643-5648<br>Email: vote@libertyelections.com |
| **Highlands** | Highlands Supervisor of Elections<br>580 South Commerce Ave, Room A201<br>Sebring, FL 33871<br>Phone: 863-402-6655<br>Fax: 863-402-6657<br>Email: soe@votehighlands.com | **Madison** | Madison Supervisor of Elections<br>239 SW Pinckney St.<br>Madison, FL 32340<br>Phone: 850-973-6507<br>Fax: 850-973-3780<br>Email: hdriggers@votemadison.com |
| **Hillsborough** | Hillsborough Supervisor of Elections<br>2514 N. Falkenburg Rd.<br>Tampa, FL 33619<br>Phone: 813-744-5900<br>Fax: 813-612-4199<br>Email: votebymail@votehillsborough.gov | **Manatee** | Manatee Supervisor of Elections<br>600 301 Blvd. W., Suite 108<br>Bradenton, FL 34206<br>Phone: 941-741-3823<br>Fax: 941-741-8788<br>Email: info@votemanatee.gov |
| **Holmes** | Holmes Supervisor of Elections<br>201 North Oklahoma Street, Ste 102<br>Bonifay, FL 32425<br>Phone: 850-547-1107<br>Fax: 850-547-4168<br>Email: therisa@holmeselections.com | **Marion** | Marion Supervisor of Elections<br>PO Box 308<br>Ocala, FL 34478<br>Phone: 352-620-3290<br>Fax: 352-620-3286<br>Email: votebymail@votemarion.gov |
| **Indian River** | Indian River Supervisor of Elections<br>4375 43rd Avenue<br>Vero Beach, FL 32967<br>Phone: 772-226-4700<br>Fax: 772-770-5367<br>Email: votebymail@voteindianriver.gov | **Martin** | Martin Supervisor of Elections<br>135 SE Martin Luther King, Jr. Blvd.<br>Stuart, FL 34995<br>Phone: 772-288-5637<br>Fax: 772-288-5765<br>Email: elections@martinvotes.com |
| **Jackson** | Jackson Supervisor of Elections<br>2851 Jefferson Street<br>Marianna, FL 32448<br>Phone: 850-482-9652<br>Fax: 850-482-9102<br>Email: email@jacksoncountysoe.com | **Miami-Dade** | Miami-Dade Supervisor of Elections<br>PO Box 521250<br>Miami, FL 33152-1250<br>Phone: 305-499-8444<br>Fax: 305-499-8401<br>Email: votebymail@miamidade.gov |
| **Jefferson** | Jefferson Supervisor of Elections<br>1175 W. Washington St.<br>Monticello, FL 32344<br>Phone: 850-997-3348<br>Fax: 850-997-6958<br>Email: soe@jeffersoncountyfl.gov | **Monroe** | Monroe Supervisor of Elections<br>530 Whitehead Street, Suite 101<br>Key West, FL 33040<br>Phone: 305-292-3416<br>Fax: 305-292-3406<br>Email: info@keys-elections.org |
| **Lafayette** | Lafayette Supervisor of Elections<br>PO Box 76<br>Mayo, FL 32066<br>Phone: 386-294-1261<br>Fax: 386-294-2164<br>Email: travis@lafayettevotes.com | **Nassau** | Nassau Supervisor of Elections<br>96135 Nassau Place, Suite 3<br>Yulee, FL 32097<br>Phone: 904-491-7500<br>Fax: 904-432-1417<br>Email: info@votenassau.com |
| **Lake** | Lake Supervisor of Elections<br>PO Box 457<br>Tavares, FL 32778<br>Phone: 352-343-9734<br>Fax: 352-253-1422<br>Email: mailballots@lakevotes.com | **Okaloosa** | Okaloosa Supervisor of Elections<br>302 Wilson St N., Suite 102<br>Crestview, FL 32536<br>Phone: 850-689-5600<br>Fax: 850-689-5644<br>Email: plux@myokaloosa.com |
| **Lee** | Lee Supervisor of Elections<br>PO Box 2545<br>Fort Myers, FL 33902<br>Phone: 239-533-8683<br>Fax: 239-533-6322<br>Email: votebymail@lee.vote | **Okeechobee** | Okeechobee Supervisor of Elections<br>304 NW 2nd Street, Rm 144<br>Okeechobee, FL 34972<br>Phone: 863-763-4014<br>Fax: 863-763-0152<br>Email: SOE@voteokeechobee.com |

STATE115071

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Orange** | Orange Supervisor of Elections<br>PO Box 562003<br>Orlando, FL 32856-2003<br>Phone: 407-836-8683<br>Fax: 407-254-6577<br>Email: elecrequest@ocfelections.gov | **St. Johns** | St. Johns Supervisor of Elections<br>4455 Avenue A, Suite 101<br>St. Augustine, FL 32095<br>Phone: 904-823-2238<br>Fax: 904-823-2249<br>Email: elections@votesjc.gov |
| **Osceola** | Osceola Supervisor of Elections<br>2509 E Irlo Bronson Memorial Hwy<br>Kissimmee, FL 34744<br>Phone: 407-742-6000<br>Fax: 407-742-6179<br>Email: vbmrequest@voteosceola.com | **St. Lucie** | St. Lucie Supervisor of Elections<br>4132 Okeechobee Rd<br>Fort Pierce, FL 34947<br>Phone: 772-462-1500<br>Fax: 772-462-1534<br>Email: votebymail@slcelections.com |
| **Palm Beach** | Palm Beach Supervisor of Elections<br>240 South Military Trail<br>West Palm Beach, FL 33415<br>Phone: 561-656-6200<br>Fax: 561-656-6287<br>Email: info@pbcelections.org | **Sumter** | Sumter County Supervisor of Elections<br>316 E. Anderson Ave.<br>Bushnell, FL 33513<br>Phone: 352-569-1540<br>Fax: 352-569-1541<br>Email: electioninfo@sumtercountyfl.gov |
| **Pasco** | Pasco Supervisor of Elections<br>PO Box 300<br>Dade City, FL 33526-0300<br>Phone: 800-851-8754<br>Fax: 352-521-4127<br>Email: vbm@pascovotes.gov | **Suwannee** | Suwannee Supervisor of Elections<br>302 Pine Avenue SW<br>Live Oak, FL 32064<br>Phone: 386-362-2616<br>Fax: 386-364-5185<br>Email: suwanneesoe@suwanneevotes.com |
| **Pinellas** | Pinellas Supervisor of Elections<br>13001 Starkey Road<br>Largo, FL 33773<br>Phone: 727-464-8683<br>Fax: 727-464-7636<br>Email: election@votePinellas.gov | **Taylor** | Taylor Supervisor of Elections<br>433 U.S. 19 N<br>Perry, FL 32347<br>Phone: 850-838-3515<br>Fax: 850-838-3516<br>Email: taylorelections@gtcom.net |
| **Polk** | Polk Supervisor of Elections<br>250 South Broadway Avenue<br>Bartow, FL 33831<br>Phone: 863-534-5888<br>Fax: 863-845-2719<br>Email: votebymail@polkelections.com | **Union** | Union Supervisor of Elections<br>175 West Main Street<br>Lake Butler, FL 32054<br>Phone: 386-496-2236<br>Fax: 386-496-1535<br>Email: debbie.osborne@unionflvotes.com |
| **Putnam** | Putnam Supervisor of Elections<br>2509 Crill Ave, Suite 900<br>Palatka, FL 32177<br>Phone: 386-329-0224<br>Fax: 386-329-0455<br>Email: electionsoffice@putnam-fl.com | **Volusia** | Volusia Supervisor of Elections<br>1750 S. Woodland Blvd.<br>DeLand, FL 32720<br>Phone: 386-736-5930<br>Fax: 386-822-5715<br>Email: elections@volusia.org |
| **Santa Rosa** | Santa Rosa Supervisor of Elections<br>6495 Caroline Street, Suite F<br>Milton, FL 32570<br>Phone: 850-983-1900<br>Fax: 850-983-1829<br>Email: villane@santarosa.fl.gov | **Wakulla** | Wakulla Supervisor of Elections<br>PO Box 305<br>Crawfordville, FL 32326<br>Phone: 850-926-7575<br>Fax: 850-926-8104<br>Email: wakullacountysoe@wakullaelection.com |
| **Sarasota** | Sarasota Supervisor of Elections<br>P.O. Box 4194<br>Sarasota, FL 34230<br>Phone: 941-861-8618<br>Fax: 941-861-8617<br>Email: votebymail@sarasotavotes.com | **Walton** | Walton Supervisor of Elections<br>571 US Hwy 90 E<br>DeFuniak Springs, FL 32433<br>Phone: 850-892-8112<br>Fax: 850-892-8113<br>Email: BBeasley@votewalton.com |
| **Seminole** | Seminole Supervisor of Elections<br>1500 East Airport Blvd.<br>Sanford, FL 32773<br>Phone: 407-585-8683<br>Fax: 407-708-7705<br>Email: Elections@VoteSeminole.org | **Washington** | Washington Supervisor of Elections<br>1331 South Blvd, Suite 900<br>Chipley, FL 32428<br>Phone: 850-638-6230<br>Fax: 850-638-6238<br>Email: crudd@wcsoe.org |

STATE115072

This page intentionally left blank.

STATE115073

# Georgia

sos.ga.gov/

## Federal Election Deadlines

|  | General Election<br>November 8, 2022 | General Runoff<br>December 6, 2022 |
|---|---|---|
| Registration | By Mail, Email or Fax: Received by<br>October 11, 2022 | By Mail, Email or Fax: Received by<br>November 7, 2022 |
| Ballot Request | Received by<br>October 28, 2022 | Received by<br>November 25, 2022 |
| Ballot Return | Postmarked by*<br>November 8, 2022 | Postmarked by*<br>December 6, 2022 |

*Ballot Return: Ballots must still be received by the 3rd day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

STATE115074

# Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA. UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | A U.S. citizen who has never resided in the U.S. and has a parent or legal guardian who was last registered in Georgia, is eligible to vote in Georgia. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | No. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: http://www.mvp.sos.ga.gov/MVP/mvp.do |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/georgia |

STATE115075

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide your Georgia driver's license number **or** Georgia-issued ID number. If you do not have either of these numbers, provide the last four digits of your Social Security Number. If you do not have any of these numbers, you must enter in Section 6: "I do not have a Social Security Number, Georgia driver's license, or Georgia-issued ID number". |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, you must provide your email address. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail, email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

With your ballot package, you will receive a primary/general election ballot and a ranked-choice runoff ballot. Follow the instructions included in your ballot package to vote and return your ballot. The primary/general election ballot must be returned according to the applicable deadlines provided in the "Federal Election Deadlines" chart for the State Primary or

**STATE115076**

General Election. The ranked-choice runoff ballot must be returned according to the applicable deadlines for the Primary Runoff or General Runoff. For special federal elections, visit FVAP.gov for specific deadlines.

The state absentee ballot **must be mailed** to your election official. The address of your election official can be found in the "Local Election Offices" section. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

---

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

The Federal Write-In Absentee Ballot (FWAB) can be used to register to vote. If you are using the FWAB to register to vote, it **must** be received by the registration deadline listed in the "Federal Election Deadlines" chart.

You can use the FWAB to vote in federal, state and local elections, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide your Georgia driver's license number **or** Georgia-issued ID number. If you do not have either of these numbers, provide the last four digits of your Social Security Number. If you do not have any of these numbers, you must enter in Section 6: "I do not have a Social Security Number, Georgia driver's license, or Georgia-issued ID number". |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. If you want to receive your absentee ballot by email or online, you must provide your email address. |
| Section 5 | A. Check "Yes" if you would like to register to vote, otherwise check "No." You cannot use this form to request a ballot. |
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

In runoff elections where a federal candidate appears on the ballot, you can use the FWAB for Ranked Choice Voting. Ranked Choice Voting is only allowed for use in runoff elections where a federal candidate appears on the runoff ballot. When using a FWAB, you should indicate your order of preference on the Official Backup Ballot page for each candidate for each office to be voted on in a runoff, by writing the name and offices of candidates you wish to vote for and their rank. Place a numeral "1" next to the name of the candidate who is your first choice, the numeral "2" next to the name of the candidate who is your

**STATE115077**

**Georgia**

second choice, and so forth. For more information, visit www.sos.ga.gov.

## How and where to submit your FWAB

The FWAB **must be mailed** to your election official. Addresses can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

## Local election offices for county

| County | Mailing Address |
| --- | --- |
| Appling | Appling Registrar Office<br>83 South Oak Street<br>Baxley, GA 31513<br>Phone: (912) 367-8113<br>Fax: (912) 367-5377<br>Email: shonda@applingco.com |
| Atkinson | Atkinson County Election Superintendent<br>P.O. Box 1234<br>Pearson, GA 31642-1234<br>Phone: (912) 422-3003<br>Fax: (912) 422-6710<br>Email: atcoelections@hotmail.com |
| Bacon | Bacon County Election Superintendent<br>P.O. Box 375<br>Alma, GA 31510<br>Phone: (912) 632-5551<br>Fax: (912) 632-0232<br>Email: arussell@baconcounty.org |
| Baker | Baker County Board of Elections<br>P.O. Box 335<br>Newton, GA 39870<br>Phone: (229) 734-3019<br>Fax: (229) 734-0889<br>Email: bd.elect@bakercountyga.com |
| Baldwin | Baldwin County Voter Registrar<br>P.O. Box 1804<br>Milledgeville, GA 31061-5756<br>Phone: (478) 445-4526<br>Fax: (478) 445-5756<br>Email: baldwinuocava@baldwincountyga.com |
| Banks | Banks County Registrars<br>226 Candler St<br>Homer, GA 30547<br>Phone: (706) 677-6260<br>Fax: (888) 294-0416<br>Email: registrars@co.banks.ga.us |
| Barrow | Barrow County Board of Elections and Registration<br>233 E Broad St<br>Winder, GA 30680<br>Phone: (770) 307-3110<br>Fax: (770) 307-1054<br>Email: mfranklin@barrowga.org |
| Bartow | Bartow County Elections and Voter Registration<br>135 W Cherokee Ave, Box 106<br>Cartersville, GA 30120-3182<br>Phone: (770) 387-5098<br>Fax: (770) 606-2245<br>Email: billardc@bartowga.org |
| Ben Hill | Ben Hill Board of Elections and Voter Registration<br>602 S. Grant St.<br>Fitzgerald, GA 31750<br>Phone: (229) 922-0241<br>Phone: (229) 426-5151<br>Fax: (229) 233-6162<br>Email: electionsbenhill@aol.com |
| Berrien | Berrien County Board of Elections and Registration<br>201 N Davis St, Room 142<br>Nashville, GA 31639<br>Phone: (229) 686-6160<br>Fax: (229) 686-9495<br>Email: belections@windstream.net |
| Bibb | Bibb County Board of Elections<br>P.O. Box 6297<br>Macon, GA 31208<br>Phone: (478) 621-6622<br>Fax: (478) 621-6119<br>Email: bibbcogauocava@maconbibb.us |

STATE115078

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Bleckley** | Bleckley County Chief Registrar<br>112 N Second St<br>Cochran, GA 31014<br>Phone: (478) 934-3200<br>Fax: (478) 298-6830<br>Email: bleckleyvr@bleckley.org | **Charlton** | Charlton County Board of Elections and Registration<br>1520 3rd St, Ste C<br>Folkston, GA 31537-8961<br>Phone: (912) 496-2607<br>Fax: (912) 496-2608<br>Email: bhodges@charltoncountyga.gov |
| **Brantley** | Brantley County Board of Elections and Registrations<br>P.O. Box 326<br>Nahunta, GA 31553-0326<br>Phone: (912) 462-6159<br>Fax: (912) 462-6197<br>Email: bcelections@btconline.net | **Chatham** | Chatham County Voter Registration<br>P.O. Box 13757<br>Savannah, GA 31416<br>Phone: (912) 790-1520<br>Fax: (912) 790-1519<br>Email: voter@chathamcounty.org |
| **Brooks** | Brooks County Election Supervisor<br>P.O. Box 5030<br>Quitman, GA 31643-5030<br>Phone: (229) 263-9939<br>Fax: (229) 263-5372<br>Email: brookscoelections@windstream.net | **Chattahoochee** | Chattahoochee County Chief Deputy Registrar<br>215 McNaughton St.<br>Cusseta, GA 31805<br>Phone: (706) 989-3249<br>Fax: (706) 989-2013<br>Email: taxassessor@ugoccc.com |
| **Bryan** | Bryan County Voter Registration<br>P.O. Box 1526<br>Pembroke, GA 31321-1526<br>Phone: (912) 653-3859<br>Fax: (912) 653-3895<br>Email: cindyreynolds@bryan-county.org | **Chattooga** | Chattooga County Registrar<br>P.O. Box 165<br>Summerville, GA 30747-0165<br>Phone: (706) 857-0739<br>Fax: (706) 857-0739<br>Email: Chattoogaregistrar@gmail.com |
| **Bulloch** | Bulloch County Board of Elections<br>113 N Main St, Ste 201<br>Statesboro, GA 30458<br>Phone: (912) 764-6502<br>Fax: (912) 764-8167<br>Email: bullochuocava@bullochcounty.net | **Cherokee** | Cherokee County Elections & Registration<br>2782 Marietta Hwy, Suite 100<br>Canton, GA 30114<br>Phone: (770) 479-0407<br>Fax: (678) 493-4703<br>Email: jrodgers@cherokeega.com |
| **Burke** | Burke County Board of Elections and Registration<br>P.O. Box 923<br>Waynesboro, GA 30830-0923<br>Phone: (706) 554-7457<br>Fax: (706) 554-8764<br>Email: burkereg@burkecounty-ga.gov | **Clarke** | Athens-Clarke County Board of Elections<br>P.O. Box 1828<br>Athens, GA 30603<br>Phone: (706) 613-3150<br>Fax: (706) 613-3840<br>Email: paula.williams@accgov.com |
| **Butts** | Butts County Board of Elections and Registration<br>625 W. Third St, Ste 5<br>Jackson, GA 30233-1965<br>Phone: (770) 775-8202<br>Fax: (770) 775-2765<br>Email: bschreiner@buttscounty.org | **Clay** | Clay County Election Superintendent<br>210 S. Washington St, Ste 4<br>Fort Gaines, GA 39851<br>Phone: (229) 768-2445<br>Fax: (229) 768-3028<br>Email: ccbregistrars@gmail.com |
| **Calhoun** | Calhoun County Election Superintendent<br>P.O. Box 101<br>Morgan, GA 39866<br>Phone: (229) 849-2972<br>Fax: (229) 849-0071<br>Email: cc.registrar@windstream.net | **Clayton** | Clayton County Board of Elections and Registration<br>121 S McDonough St, Annex II<br>Jonesboro, GA 30236-3636<br>Phone: (770) 477-3372<br>Fax: (770) 477-4521<br>Email: claytonuocava@claytoncountyga.gov |
| **Camden** | Camden County Election Superintendent<br>P.O. Box 608<br>Woodbine, GA 31569<br>Phone: (912) 576-3245<br>Fax: (912) 576-8176<br>Email: ddfelix@co.camden.ga.us | **Clinch** | Clinch County Board of Elections and Registration<br>25 Court Sq, Ste A<br>Homerville, GA 31634-2150<br>Phone: (912) 487-3656<br>Fax: (912) 487-5162<br>Email: clinchelections@clinchcountyga.gov |
| **Candler** | Candler County Board of Registration<br>1075 E. Hiawatha Street, Suite A<br>Metter, GA 30439<br>Phone: (912) 685-6687<br>Fax: (912) 685-2189<br>Email: kharris@candlerco-ga.gov | **Cobb** | Cobb County Board of Elections and Registration<br>736 Whitlock Ave., Ste. 400<br>Marietta, GA 30064<br>Phone: (770) 528-2581<br>Fax: (770) 528-2519<br>Email: absentee@cobbcounty.org |
| **Carroll** | Carroll County Election and Registration Supervisor<br>P.O. Box 338<br>Carrollton, GA 30112<br>Phone: (770) 830-5823<br>Fax: (770) 214-3594<br>Email: elections@carrollcountyga.com | **Coffee** | Coffee County Elections and Registration<br>224 W Ashley St<br>Douglas, GA 31533<br>Phone: (912) 384-7018<br>Fax: (912) 384-1343<br>Email: james.barnes@coffeecounty-ga.gov |
| **Catoosa** | Catoosa County Board of Elections and Registration<br>5238 Evitt Street<br>Ringgold, GA 30736-2301<br>Phone: (706) 935-3990<br>Fax: (706) 935-2538<br>Email: catoosaelections@catoosa.com | **Colquitt** | Colquitt County Board of Registrars<br>P.O. Box 517<br>Moultrie, GA 31776-0517<br>Phone: (229) 616-7056<br>Fax: (229) 616-7058<br>Email: colquittuocava@ccboc.com |

**STATE115079**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| Columbia | Columbia County Board of Elections<br>P.O. Box 919<br>Evans, GA 30809-0919<br>Phone: (706) 868-3355<br>Fax: (706) 868-3358<br>Email: vote@columbiacountyga.gov | Douglas | Douglas County Voter Registration<br>8700 Hospital Drive<br>Douglasville, GA 30134-2264<br>Phone: (770) 920-7217<br>Fax: (770) 920-7583<br>Email: voterreg@co.douglas.ga.us |
| Cook | Cook County Board of Elections and Registration<br>1200 S Hutchinson Ave<br>Adel, GA 31620<br>Phone: (229) 896-7925<br>Fax: (229) 896-1194<br>Email: cookelections@windstream.net | Early | Early County Board of Registrars<br>17 McDonald Ave<br>Blakely, GA 39823<br>Phone: (229) 723-4522<br>Fax: (229) 723-4532<br>Email: elections@earlycounty.org |
| Coweta | Coweta County Election Superintendent<br>22 E Broad Street<br>Newnan, GA 30263-1973<br>Phone: (770) 254-2615 x8936<br>Fax: (770) 683-2800<br>Email: agay@coweta.ga.us | Echols | Echols County Election Superintendent<br>P.O. Box 118<br>Statenville, GA 31648-0118<br>Phone: (229) 559-7526<br>Fax: (229) 559-8128<br>Email: echolscoregistrar2@gmail.com |
| Crawford | Crawford County Board of Elections<br>P.O. Box 732<br>Roberta, GA 31078<br>Phone: (478) 836-1877<br>Fax: (478) 836-1879<br>Email: b.peacock@crawfordcountyga.org | Effingham | Effingham County Board of Elections and Registration<br>284 GA Hwy 119 S<br>Springfield, GA 31329<br>Phone: (912) 754-8030<br>Fax: (912) 754-8408<br>Email: boe@effinghamcounty.org |
| Crisp | Crisp County Election Supervisor<br>Crisp County Government Ctr, 210 S 7th St, Rm 103<br>Cordele, GA 31015<br>Phone: (229) 276-2611<br>Fax: (229) 276-2735<br>Email: elections@crispcounty.com | Elbert | Elbert County Board of Registrars<br>Government Complex, 45 Forest Ave<br>Elberton, GA 30635<br>Phone: (706) 283-2012<br>Fax: (706) 283-9668<br>Email: votems@elberton.net |
| Dade | Dade County Board of Elections and Registration<br>P.O. Box 970<br>Trenton, GA 30752<br>Phone: (706) 657-8170<br>Fax: (706) 657-2048<br>Email: tvaughan@dadecounty-ga.gov | Emanuel | Emanuel County Elections and Registration<br>105 S Main St<br>Swainsboro, GA 30401<br>Phone: (478) 237-3471<br>Fax: (478) 237-5998<br>Email: E@emanuelco-ga.gov |
| Dawson | Dawson County Election Supervisor<br>96 Academy Ave<br>Dawsonville, GA 30534<br>Phone: (706) 344-3640<br>Fax: (706) 344-3642<br>Email: gferguson@dawsoncounty.org | Evans | Evans County Board of Registrars<br>P.O. Box 652<br>Claxton, GA 30417-0652<br>Phone: (912) 739-0708<br>Fax: (912) 739-4425<br>Email: chiefregistrar@evanscounty.org |
| Decatur | Decatur County Board of Elections<br>P.O. Box 7428<br>Bainbridge, GA 39818-7428<br>Phone: (229) 243-2087<br>Fax: (229) 248-3743<br>Email: elections@decaturcountyga.gov | Fannin | Fannin County Board of Elections and Voter Registration<br>400 W Main St, Ste 301<br>Blue Ridge, GA 30513-8593<br>Phone: (706) 632-7740<br>Fax: (706) 258-5164<br>Email: elections@fannincountyga.org |
| DeKalb | DeKalb County Board of Registration and Elections<br>4380 Memorial Dr, Ste 300<br>Decatur, GA 30032-1239<br>Phone: 404-297-4442<br>Fax: 404-298-4038<br>Email: uocava@dekalbcountyga.gov | Fayette | Fayette County Board of Elections and Voter Registration<br>140 Stonewall Ave W, Ste 208<br>Fayetteville, GA 30214<br>Phone: (770) 305-5408<br>Fax: (770) 719-5589<br>Email: tbass@fayettecountyga.gov |
| Dodge | Dodge County Elections Office<br>5016 Courthouse Circle, Ste B<br>Eastman, GA 31023<br>Phone: (478) 374-8123<br>Fax: (478) 374-8124<br>Email: dc.registrar.ga@hotmail.com | Floyd | Floyd County Board of Elections and Voter Registration<br>12 E Fourth Ave, Ste 20<br>Rome, GA 30161-9313<br>Phone: (706) 291-5168<br>Fax: (706) 233-0019<br>Email: waddellv@floydcountyga.org |
| Dooly | Dooly County Election & Registration<br>P.O. Box 322<br>Vienna, GA 31092-0304<br>Phone: (229) 268-9023<br>Fax: (229) 268-9325<br>Email: dooly.county.elections@gmail.com | Forsyth | Forsyth County Board of Elections and Voter Registration<br>1201 Sawnee Drive<br>Cumming, GA 30040<br>Phone: (770) 781-2118<br>Fax: (770) 886-2825<br>Email: Voter@forsythco.com |
| Dougherty | Dougherty County Election Supervisor<br>P.O. Box 1827<br>Albany, GA 31702-1827<br>Phone: (229) 431-3247<br>Fax: (229) 438-3975<br>Email: DOCOVoterRegElections@dougherty.ga.us | | |

STATE115080

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Franklin** | Franklin County Elections and Registration Office<br>P.O. Box 313<br>Carnesville, GA 30521<br>Phone: (706) 384-4390<br>Fax: (706) 384-3506<br>Email: glk@franklincountyga.gov | **Hancock** | Hancock County Board of Registrars<br>P.O. Box 118<br>Sparta, GA 31087-0118<br>Phone: (706) 444-5259<br>Fax: (706) 444-0989<br>Email: boer.deputy@hancockcountyga.gov |
| **Fulton** | Fulton County Board of Registration and Elections<br>130 Peachtree St SW, Ste 2186<br>Atlanta, GA 30303-3460<br>Phone: 404-612-3816<br>Fax: 404-612-3697<br>Email: elections.absentee@fultoncountyga.gov | **Haralson** | Haralson County Board of Elections and Voter Registration<br>P.O. Box 1119<br>Buchanan, GA 30113-1119<br>Phone: (770) 646-2010<br>Fax: (770) 646-1523<br>Email: peppar.head@haralsoncountyga.gov |
| **Gilmer** | Gilmer County Board of Voter Registration<br>1 Broad St., Ste 107<br>Ellijay, GA 30540<br>Phone: (706) 635-4617<br>Fax: (706) 635-4647<br>Email: registrar@gilmercounty-ga.gov | **Harris** | Harris County Board of Elections and Voter Registration<br>P.O. Box 123<br>Hamilton, GA 31811-0123<br>Phone: (706) 628-5210<br>Fax: (706) 628-4223<br>Email: sjarrett@harriscountyga.gov |
| **Glascock** | Glascock County Board of Registrars<br>P.O. Box 68<br>Gibson, GA 30810<br>Phone: (706) 598-2811<br>Fax: (706) 598-3638<br>Email: voting@glascockcountyga.com | **Hart** | Hart County Board of Registrars<br>P.O. Box 426<br>Hartwell, GA 30643-0426<br>Phone: (706) 376-8911<br>Fax: (706) 376-1694<br>Email: registrar@hartcountyga.org |
| **Glynn** | Glynn County Board of Elections and Voter Registration<br>1815 Gloucester St<br>Brunswick, GA 31520<br>Phone: (912) 554-7060<br>Fax: (888) 870-1374<br>Email: glynncountyUOCAVA@glynncounty-ga.gov | **Heard** | Heard County Board of Registrars<br>P.O. Box 427<br>Franklin, GA 30217-0427<br>Phone: (706) 675-3907<br>Fax: (706) 675-2134<br>Email: tadams@heardcountyga.com |
| **Gordon** | Gordon County Board of Elections and Voter Registration<br>P.O. Box 715<br>Calhoun, GA 30703-0715<br>Phone: (706) 629-7781<br>Fax: (706) 629-7198<br>Email: shicks@gordoncounty.org | **Henry** | Henry County Elections and Registration<br>40 Atlanta St.<br>McDonough, GA 30253<br>Phone: (770) 288-6448<br>Fax: (770) 288-6468<br>Email: henryuocava@co.henry.ga.us |
| **Grady** | Grady County Board of Registrars<br>250 N. Broad St. Suite 3<br>Cairo, GA 39828<br>Phone: (229) 377-1897<br>Fax: (229) 377-4127<br>Email: malinda.butler@gradycountyga.gov | **Houston** | Houston County Board of Elections and Voter Registration<br>P.O. Box 945<br>Perry, GA 31069-0945<br>Phone: (478) 987-1973<br>Fax: (478) 988-0699<br>Email: elections.houstonga@gmail.com |
| **Greene** | Greene County Board of Elections and Registration<br>1180 C. Weldon Smith Dr., Ste 120<br>Greensboro, GA 30642<br>Phone: (706) 453-1108<br>Fax: (706) 453-9438<br>Email: bkilgore@greenecountyga.org | **Irwin** | Irwin County Board of Elections & Registration<br>507 N Irwin Ave, Ste C<br>Ocilla, GA 31774<br>Phone: (229) 468-0081<br>Fax: (229) 468-0089<br>Email: electionsirwincounty@aol.com |
| **Gwinnett** | Gwinnett County Voter Registration and Elections<br>455 Grayson Hwy, Ste 200<br>Lawrenceville, GA 30046<br>Phone: (678) 226-7210<br>Fax: (678) 226-7208<br>Email: UniformedandOverseasCitizensAbsenteeVotingAct@gwinnettcounty.com | **Jackson** | Jackson County Voter Registration<br>441 Gordon Street<br>Jefferson, GA 30549<br>Phone: (706) 367-6377<br>Fax: (706) 367-1193<br>Email: jelogan@jacksoncountygov.com |
| **Habersham** | Habersham County Elections & Registration<br>130 Jacob's Way, Ste 101<br>Clarkesville, GA 30523<br>Phone: (706) 839-0170<br>Fax: (706) 754-5836<br>Email: lellison@habershamga.com | **Jasper** | Jasper County Board of Registrars<br>126 W Greene St, Ste 3<br>Monticello, GA 31064<br>Phone: (706) 468-4908<br>Fax: (706) 468-1485<br>Email: cnorris@jaspercountyga.org |
| **Hall** | Hall County Board of Elections and Voter Registration<br>2875 Browns Bridge Rd (Lower level)<br>Gainesville, GA 30504<br>Phone: (770) 531-6945<br>Fax: (770) 531-3931<br>Email: ymack@hallcounty.org | **Jeff Davis** | Jeff DavisCounty Board of Elections & Registrars<br>P.O. Box 552<br>Hazlehurst, GA 31539<br>Phone: (912) 375-6635<br>Fax: (912) 379-0340<br>Email: jeffdaviselections@gmail.com |

**STATE115081**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Jefferson** | Jefferson County Board of Registrars<br>415 Green St<br>Louisville, GA 30434<br>Phone: (478) 625-8357<br>Fax: (478) 625-7124<br>Email: sgray@jeffersoncountyga.gov | **Lowndes** | Lowndes County Board of Elections<br>P.O. Box 10130<br>Valdosta, GA 31604<br>Phone: (229) 671-2850<br>Fax: (229) 333-5199<br>Email: elections@lowndescounty.com |
| **Jenkins** | Jenkins County Board of Registrars<br>P.O. Box 510<br>Millen, GA 30442-0510<br>Phone: (478) 982-3985<br>Fax: (478) 982-4380<br>Email: jenkinscountyreg@bellsouth.net | **Lumpkin** | Lumpkin County Election and Voter Registration Office<br>56 Short St<br>Dahlonega, GA 30533<br>Phone: (706) 864-6279<br>Fax: (706) 864-0731<br>Email: elections@lumpkincounty.gov |
| **Johnson** | Johnson County Board of Elections and Voter Registration<br>P.O. Box 255<br>Wrightsville, GA 31096-0255<br>Phone: (478) 864-4019<br>Fax: (478) 864-2019<br>Email: dkillingsworth@johnsonco.org | **Macon** | Macon County Board of Elections and Voter Registration<br>P.O. Box 415<br>Oglethorpe, GA 31068-0415<br>Phone: (478) 472-8520<br>Fax: (478) 472-8522<br>Email: macoboer@windstream.net |
| **Jones** | Jones County Board of Elections and Voter Registration<br>P.O. Box 1417<br>Gray, GA 31032-1417<br>Phone: (844) 986-3222<br>Fax: 478-986-9682<br>Email: marion.hatton@jonescountyga.org | **Madison** | Madison County Board of Elections & Registration<br>P.O. Box 328<br>Danielsville, GA 30633-0328<br>Phone: (706) 795-6335<br>Fax: (706) 795-2233<br>Email: tdean@madisonco.us |
| **Lamar** | Lamar County Board of Elections and Registration<br>408 Thomaston St, Ste D<br>Barnesville, GA 30204-1684<br>Phone: (770) 358-5235<br>Fax: (770) 358-5445<br>Email: lamarcountyregistrars@yahoo.com | **Marion** | Marion County Board of Elections and Registration<br>P.O. Box 444<br>Buena Vista, GA 31803-0444<br>Phone: (229) 649-9838<br>Fax: (229) 649-3928<br>Email: marioncountyelect@gmail.com |
| **Lanier** | Lanier County Board of Registrars<br>162 W Thigpen Ave Suite C<br>Lakeland, GA 31635<br>Phone: (229) 363-9260<br>Email: elections@laniercountyboc.com | **McDuffie** | McDuffie County Board of Elections and Registration<br>P.O. Box 600<br>Thomson, GA 30824-0600<br>Phone: 706-595-2105<br>Fax: (706) 595-0460<br>Email: fiona.roberts@thomson-mcduffie.net |
| **Laurens** | Laurens County Board of Registrars<br>P.O. Box 2130<br>Dublin, GA 31040-2130<br>Phone: (478) 272-2841<br>Fax: (478) 277-2933<br>Email: registrars@dlcga.com | **McIntosh** | McIntosh County Board of Elections and Registrations<br>P.O. Box 1987<br>Darien, GA 31305-0571<br>Phone: (912) 437-6605<br>Fax: (912) 437-5041<br>Email: egale@darientel.net |
| **Lee** | Lee County Board of Elections and Voter Registration<br>P.O. Box 326<br>Leesburg, GA 31763-0326<br>Phone: (229) 759-6002<br>Fax: (229) 759-3348<br>Email: vjohnson@lee.ga.us | **Meriwether** | Meriwether County Board of Elections and Voter Registration<br>P.O. Box 219<br>Greenville, GA 30222<br>Phone: (706) 672-9433<br>Fax: (706) 672-9584<br>Email: p.threadgill@meriwethercountyga.gov |
| **Liberty** | Liberty County Board of Elections and Voter Registration<br>100 Main Street, Suite 1600<br>Hinesville, GA 31313<br>Phone: (912) 876-3310<br>Fax: (912) 876-2538<br>Email: elections@libertycountyga.com | **Miller** | Miller County Board of Registrars<br>155 S First St, Suite 113<br>Colquitt, GA 39837<br>Phone: (229) 758-4118<br>Fax: (229) 758-8133<br>Email: millercoregistrar@gmail.com |
| **Lincoln** | Lincoln County Board of Elections<br>P.O. Box 1419<br>Lincolnton, GA 30817-1419<br>Phone: (706) 359-6126<br>Fax: (706) 359-7396<br>Email: lbolton@lincolncountyga.com | **Mitchell** | Mitchell County Board of Registrars<br>P.O. Box 1009<br>Camilla, GA 31730<br>Phone: 229-336-2018<br>Fax: 229-336-4928<br>Email: tross@mitchellcountyga.net |
| **Long** | Long County Elections and Registrar<br>P.O. Box 669<br>Ludowici, GA 31316<br>Phone: (912) 545-2234<br>Fax: (912) 545-3446<br>Email: longcountyelections@gmail.com | **Monroe** | Monroe County Board of Elections and Registration<br>P.O. Box 1245<br>Forsyth, GA 31029<br>Phone: (478) 994-7622<br>Fax: (478) 994-7624<br>Email: kwarren@monroecoga.org |

STATE115082

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| Montgomery | Montgomery County Board of Registrars<br>P.O. Box 363<br>Mount Vernon, GA 30445-0363<br>Phone: (912) 583-4296<br>Fax: (912) 583-4343<br>Email: montgomeryuocava@yahoo.com | Pike | Pike County Board of Elections and Registrars<br>P.O. Box 1032<br>Zebulon, GA 30295-1032<br>Phone: (770) 567-2003<br>Fax: (770) 567-7280<br>Email: lvickers@pikecoga.com |
| Morgan | Morgan County Board of Elections and Registration<br>237 North Second St<br>Madison, GA 30650<br>Phone: (706) 342-2508<br>Email: uocava@morgancountyga.gov | Polk | Polk County Board of Elections and Registration<br>144 W Ave, Ste D<br>Cedartown, GA 30125<br>Phone: (770) 749-2103<br>Fax: (770) 749-2194<br>Email: UOCAVA@polkga.org |
| Murray | Murray County Board of Elections and Registration<br>P.O. Box 1015<br>Chatsworth, GA 30705-1015<br>Phone: (706) 695-1983<br>Fax: (706) 695-9755<br>Email: vote@murraycountyga.gov | Pulaski | Pulaski County Board of Elections<br>P.O. Box 1375<br>Hawkinsville, GA 31036<br>Phone: (478) 783-0828<br>Fax: (478) 783-0696<br>Email: vote@pulaskico.com |
| Muscogee | Muscogee County Board of Elections and Voter Registration<br>P.O. Box 1340<br>Columbus, GA 31902-1340<br>Phone: (706) 653-4392<br>Fax: (706) 225-4394<br>Email: muscogeeelectionsandregistration@columbusga.gov | Putnam | Putnam County Board of Elections and Registration<br>117 Putnam Drive Suite D<br>Eatonton, GA 31024<br>Phone: (706) 485-8683<br>Fax: (706) 485-9684<br>Email: berlaseter@gmail.com |
| Newton | Newton County Board of Elections and Voter Registration<br>P.O. Box 1274<br>Covington, GA 30015-1274<br>Phone: (770) 784-2055<br>Fax: (770) 784-2057<br>Email: elections@co.newton.ga.us | Quitman | Quitman County Board of Registrars<br>P.O. Box 447<br>Georgetown, GA 39854<br>Phone: (229) 234-3123<br>Email: quitco8@gqc-ga.org |
| Oconee | Oconee County Board of Elections and Voter Registration<br>P.O. Box 958<br>Watkinsville, GA 30677<br>Phone: (706) 769-3958<br>Fax: (706) 310-3486<br>Email: jstone@oconee.ga.us | Rabun | Rabun County Board of Elections and Registration<br>184 S. Main St, Suite 102<br>Clayton, GA 30525<br>Phone: (706) 782-1878<br>Fax: (706) 782-3754<br>Email: twhitmire@rabuncounty.ga.gov |
| Oglethorpe | Oglethorpe County Board of Elections and Registration<br>P.O. Box 190<br>Lexington, GA 30648<br>Phone: (706) 743-8954<br>Fax: (706) 743-3514<br>Email: smccannon@oglethorpecountyga.gov | Randolph | Randolph County Board of Registrars<br>P.O. Box 532<br>Cuthbert, GA 39840<br>Phone: (229) 732-5220<br>Fax: (229) 732-3616<br>Email: rcc.boe@gmail.com |
| Paulding | Paulding County Board of Elections and Registration<br>Watson Government Complex, 240 Constitution Blvd., 1st fl<br>Dallas, GA 30132<br>Phone: (678) 224-4047<br>Fax: (678) 224-4447<br>Email: absenteerequest@paulding.gov | Richmond | Richmond County Board of Elections<br>535 Telfair Street, Suite 500<br>Augusta, GA 30901<br>Phone: (706) 821-2340<br>Fax: (706) 821-2814<br>Email: richmondelections@augustaga.gov |
| Peach | Peach County Board of Elections and Registration<br>205 W Church St, Ste 102<br>Fort Valley, GA 31030-0853<br>Phone: (478) 825-3514<br>Fax: (478) 825-2187<br>Email: adrienne-ray@peachcounty.net | Rockdale | Rockdale County Board of Elections and Voter Registration<br>1261 Commercial Dr SW, Ste B<br>Conyers, GA 30094<br>Phone: (770) 278-7333<br>Fax: (770) 785-6932<br>Email: absentee@rockdalecountyga.gov |
| Pickens | Pickens County Board of Elections and Voter Registration<br>83 Pioneer Rd.<br>Jasper, GA 30143<br>Phone: (706) 253-8781<br>Fax: (706) 253-8782<br>Email: jroberts@pickenscountyga.gov | Schley | Schley County Board of Registrars<br>P.O. Box 385<br>Ellaville, GA 31806-0385<br>Phone: (229) 937-2689<br>Fax: (229) 937-5010<br>Email: registrars_schley@yahoo.com |
| | | Screven | Screven County Board of Registrars<br>Screven County Courthouse, 216 Mims Road, Rm 114<br>Sylvania, GA 30467-2026<br>Phone: (912) 564-2153<br>Fax: (912) 564-5617<br>Email: dorothyhglisson@yahoo.com |
| Pierce | Pierce County Board of Elections and Registration<br>312 Nichols St., Ste 2<br>Blackshear, GA 31516<br>Phone: (912) 449-2028<br>Fax: (912) 807-9940<br>Email: elections@piercecountyga.gov | Seminole | Seminole County Board of Registrars<br>P.O. Box 684<br>Donalsonville, GA 39845<br>Phone: 229-524-5256<br>Fax: (229) 524-8644<br>Email: seminoleprobate@gmail.com |

STATE115083

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Spalding** | Spalding County Board of Elections and Voter Registration<br>P.O. Box 1087<br>Griffin, GA 30224<br>Phone: (770) 467-4245<br>Fax: (770) 467-4278<br>Email: mridley@spaldingcounty.com | **Tift** | Tift County Board of Elections and Voter Registration<br>P.O. Box 1867<br>Tifton, GA 31793-1867<br>Phone: (229) 386-7915<br>Fax: (229) 386-7996<br>Email: leila.dollison@tiftcounty.org |
| **Stephens** | Stephens County Board of Elections and Voter Registration<br>P.O. Box 1557<br>Toccoa, GA 30577-1557<br>Phone: (706) 886-8954<br>Email: aroberts@stephenscountyga.gov | **Toombs** | Toombs County Board of Election and Registration<br>P.O. Box 897<br>Lyons, GA 30436<br>Phone: (912) 526-8226<br>Fax: (912) 526-9420<br>Email: cachenbach.toombs.elections@gmail.com |
| **Stewart** | Stewart County Board of Elections and Voter Registration<br>P.O. Box 713<br>Lumpkin, GA 31815-0713<br>Phone: (229) 838-6769 x210<br>Fax: (229) 838-4489<br>Email: ahudson@stewartcountyga.gov | **Towns** | Towns County Board of Registrars<br>67 Lakeview Circle, Suite A<br>Hiawassee, GA 30546<br>Phone: (706) 896-4353<br>Fax: (706) 896-2689<br>Email: tcelections@townscountyga.com |
| **Sumter** | Sumter County Board of Elections and Voter Registration<br>P.O. Box 1263<br>Americus, GA 31709<br>Phone: (229) 928-4580<br>Fax: (229) 928-4589<br>Email: Rhoward@sumtercountyga.us | **Treutlen** | Treutlen County Board of Registrars<br>Courthouse Annex, 650 Second St, Ste 104<br>Soperton, GA 30457<br>Phone: (912) 529-3098<br>Fax: (912) 529-3262<br>Email: keri.hedgecock@treutlengov.us |
| **Talbot** | Talbot County Board of Elections & Registration<br>P.O. Box 8<br>Talbotton, GA 31827-0008<br>Phone: (706) 665-8270<br>Fax: (706) 665-2152<br>Email: elections-registration@talbotcountyorg.org | **Troup** | Troup County Board of Elections and Registration<br>100 Ridley Ave.<br>LaGrange, GA 30241<br>Phone: (706) 883-1745<br>Fax: (706) 883-1692<br>Email: elections@troupcountyga.gov |
| **Taliaferro** | Taliaferro County Board of Registrars<br>P.O. Box 9<br>Crawfordville, GA 30631-0009<br>Phone: (706) 456-3563<br>Fax: (706) 456-2904<br>Email: registrars131@yahoo.com | **Turner** | Turner County Board of Elections and Voter Registration<br>1807 U.S Hwy 41 North<br>Sycamore, GA 31790<br>Phone: (229) 567-2909<br>Fax: (229) 567-9624<br>Email: jwinter@turnercountygeorgia.com |
| **Tattnall** | Tattnall County Board of Elections and Voter Registration<br>P.O. Box 1098<br>Reidsville, GA 30453-1098<br>Phone: (912) 557-6417<br>Fax: (912) 557-3005<br>Email: tattnall_elections_24@yahoo.com | **Twiggs** | Twiggs County Board of Elections and Voter Registration<br>P.O. Box 130<br>Jeffersonville, GA 31044-0130<br>Phone: (478) 945-3639<br>Fax: (478) 945-3477<br>Email: dstephens@twiggscounty.us |
| **Taylor** | Taylor County Board of Registrars<br>P.O. Box 2044<br>Butler, GA 31006-2044<br>Phone: (478) 862-3997<br>Fax: (478) 862-3992<br>Email: votetaylorga@gmail.com | **Union** | Union County Board of Registrars<br>65 Courthouse St, Ste 9<br>Blairsville, GA 30512<br>Phone: (706) 439-6016<br>Fax: (706) 439-6015<br>Email: ucregistrar@uniongov.com |
| **Telfair** | Telfair County Board of Registrars<br>91 Telfair Avenue Annex Bldg. #3<br>McRae Helena, GA 31055<br>Phone: (229) 868-2023<br>Fax: (229) 868-2266<br>Email: telfair.registrar@hotmail.com | **Upson** | Upson County Board of Elections and Voter Registration<br>P.O. Box 547<br>Thomaston, GA 30286<br>Phone: (706) 647-6259<br>Fax: (706) 646-3168<br>Email: kking@upsoncountyga.org |
| **Terrell** | Terrell County Board of Elections and Voter Registration<br>P.O. Box 715<br>Dawson, GA 39842<br>Phone: (229) 995-5066<br>Fax: (229) 995-6537<br>Email: terrelluocava@hotmail.com | **Walker** | Walker County Board of Elections and Voter Registration<br>P.O. Box 1105<br>LaFayette, GA 30728-1105<br>Phone: (706) 638-4349<br>Fax: (706) 639-3346<br>Email: elections@walkerga.us |
| **Thomas** | Thomas County Board of Elections<br>P.O. Box 110<br>Thomasville, GA 31799-0110<br>Phone: (229) 225-4101<br>Fax: (229) 225-3133<br>Email: patsy.dekle@thomascountyga.gov | **Walton** | Walton County Board of Elections and Registration<br>303 S Hammond Dr., Dept 465<br>Monroe, GA 30655<br>Phone: (770) 267-1337<br>Fax: (770) 267-1408<br>Email: lisa.clark@co.walton.ga.us |

STATE115084

**Georgia**

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Ware** | Ware County Board of Elections and Registration<br>408 Tebeau Street<br>Waycross, GA 31501<br>Phone: (912) 287-4363<br>Fax: (912) 287-4364<br>Email: wareuocava@warecounty.com | **White** | White County Board of Elections and Voter Registration<br>1241 Helen Hwy, Ste 210-A<br>Cleveland, GA 30528<br>Phone: (706) 865-7812<br>Fax: (706) 219-1511<br>Email: lmanning@whitecounty.net |
| **Warren** | Warren County Board of Registrars<br>P.O. Box 186<br>Warrenton, GA 30828-0186<br>Phone: (706) 465-1993<br>Fax: (706) 465-2576<br>Email: voting@warrencountyga.gov | **Whitfield** | Whitfield County Board of Elections and Voter Registration<br>205 N Selvidge St, Ste K<br>Dalton, GA 30720<br>Phone: (706) 278-7183 x1542<br>Fax: (706) 226-0792<br>Email: whitfielduocava@whitfieldcountyga.com |
| **Washington** | Washington County Board of Elections and Registration<br>P.O. Box 5856<br>Sandersville, GA 31082<br>Phone: (478) 552-5239<br>Fax: (478) 640-9961<br>Email: clhagans@washingtoncountyga.gov | **Wilcox** | Wilcox County Board of Registrars<br>377 College St.<br>Abbeville, GA 31001<br>Phone: (229) 467-2111<br>Fax: (229) 467-2115<br>Email: wilcox2115@windstream.net |
| **Wayne** | Wayne County Board of Registrars<br>P.O. Box 1092<br>Jesup, GA 31598-1092<br>Phone: (912) 427-5950<br>Fax: (912) 588-0184<br>Email: snash@waynecountyga.us | **Wilkes** | Wilkes County Board of Registrars<br>23 E Court St, Ste 113<br>Washington, GA 30673-1570<br>Phone: (706) 678-1850<br>Fax: (706) 678-3458<br>Email: wilkescovoter@wilkescountyga.org |
| **Webster** | Webster County Board of Elections and Voter Registration<br>P.O. Box 29<br>Preston, GA 31824-0029<br>Phone: (229) 828-5775<br>Fax: (229) 828-2105<br>Email: websterfinance@windstream.net | **Wilkinson** | Wilkinson County Board of Elections and Registration<br>P.O. Box 186<br>Irwinton, GA 31042-0186<br>Phone: (478) 946-2188<br>Fax: (478) 946-4388<br>Email: elections@wilkinsoncounty.net |
| **Wheeler** | Wheeler County Board of Registrars<br>16 W. Forest Avenue, Ste 101<br>Alamo, GA 30411<br>Phone: (912) 568-0095<br>Fax: (912) 568-0097<br>Email: wcregistrars@windstream.net | **Worth** | Worth County Board of Elections and Voter Registration<br>201 N Main St, Rm 10<br>Sylvester, GA 31791<br>Phone: (229) 776-8208<br>Fax: (229) 776-8258<br>Email: wcboe.supervisor@gmail.com |

STATE115085

# Hawaii

www.elections.hawaii.gov/

## Federal Election Deadlines

|  | State Primary<br>August 13, 2022 | General Election<br>November 8, 2022 |
|---|---|---|
| Registration | Postmarked by*<br>August 3, 2022 | Postmarked by*<br>October 31, 2022 |
| Ballot Request | Received by<br>4:30 PM, August 6, 2022 | Received by<br>4:30 PM, November 1, 2022 |
| Ballot Return | Received by<br>7 PM, August 13, 2022 | Received by<br>7 PM, November 8, 2022 |

*Registration: The FWAB must be received by the 10th day before the election if used for registration.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

STATE115086

# Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is 'temporary registration'? | The FPCA will only temporarily register you to vote. This means that you will be registered and can vote in the elections in which the FPCA allows you to do so. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | A U.S. citizen who has never resided in the U.S., and has a parent or legal guardian who was last domiciled in Hawaii, is eligible to vote in Hawaii. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot by contacting your election official. Contact information can be found in the "Local Election Offices" section. |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/hawaii |

STATE115087

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) temporarily registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide a Hawaii-issued ID number. If you do not have a Hawaii-issued ID number, provide the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Hawaii-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or fax, you must provide your email address or fax number. |

| | |
|---|---|
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax". |
| | B. Political party is not required. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail, email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail, email** or **fax**.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you

**STATE115088**

may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in federal elections.

## Complete the following sections of the FWAB's voter information page

| | |
|---|---|
| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide a Hawaii-issued ID number. If you do not have a Hawaii-issued ID number, provide the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Hawaii-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. |
| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.**<br><br>B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>C. Political party is not required. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

You can submit the FWAB by **mail**, **email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". Email this ballot package directly to your election official.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your

STATE115089

election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for county

| County | Mailing Address |
|--------|-----------------|
| Hawaii | Hawaii County Clerk<br>25 Aupuni St, Rm 1502<br>Hilo, HI 96720-4245<br>Phone: (808) 961-8277<br>Fax: (808) 961-8673<br>Email: hiloabm@hawaiicounty.gov |
| Honolulu | Honolulu County Clerk<br>530 S King St, Rm 100<br>Honolulu, HI 96813-3077<br>Phone: (808) 768-3800<br>Fax: (808) 768-3835<br>Email: elections@honolulu.gov |
| Kauai | Kauai County Clerk<br>4386 Rice St, Rm 101<br>Lihue, HI 96766-1819<br>Phone: (808) 241-4800<br>Fax: (808) 241-6207<br>Email: elections@kauai.gov |
| Maui | Maui County Clerk<br>200 S High St<br>Wailuku, HI 96793-9920<br>Phone: (808) 270-7749<br>Fax: (808) 270-7171<br>Email: elections@mauicounty.us |

STATE115090

This page intentionally left blank.

STATE115091

# Louisiana

www.sos.la.gov/ElectionsAndVoting/Pages/default.aspx

## Federal Election Deadlines

|  | General Election<br>November 8, 2022 | General Runoff<br>December 10, 2022 |
|---|---|---|
| Registration | **Return by Mail: Postmarked by**<br>October 10, 2022<br>**Return by Email or Fax: Received by**<br>October 10, 2022<br>**Return by Online: Received by**<br>October 18, 2022 | **Return by Mail: Postmarked by**<br>November 9, 2022<br>**Return by Email or Fax: Received by**<br>November 9, 2022<br>**Return by Online: Received by**<br>November 19, 2022 |
| Ballot Request | **Received by**<br>November 7, 2022 | **Received by**<br>December 9, 2022 |
| Ballot Return | **Received by**<br>8 PM, November 8, 2022 | **Received by**<br>8 PM, December 10, 2022 |

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

**STATE115092**

# Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | No. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://voterportal.sos.la.gov/ |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/louisiana |

STATE115093

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a Louisiana-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Louisiana-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can |

choose to receive your absentee ballot by "mail", "email or online", or "fax".

B. Political party affiliation is not required if requesting an absentee ballot for other primary elections or general elections.

| | |
|---|---|
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail, email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail** or **fax**.

Contact information can be found in the "Local Election Offices" section. If you do not have access to

**STATE115094**

a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in federal elections.

## Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that best describes you. |
|---|---|
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** a Louisiana-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Louisiana-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. |

| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.** |
|---|---|
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax". |
| | C. Political party affiliation is not required if voting an absentee ballot in other primary elections and all general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

Louisiana's general election system is Ranked Choice Voting. Please list your candidates in order of preference. Since there may be more than one candidate registered as affiliated with a political party or group in each race, to make sure your ballot can be counted, it is important that you write the candidate name and NOT the political party or group. For more information, visit GeauxVote.com.

## How and where to submit your FWAB

You can submit the FWAB by **mail** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB (Hardcopy Instructions):** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official.

**Mail your FWAB (Printed PDF Instructions):** If you are using a printed version of the FWAB you will need **two envelopes for your ballot to be accepted by Louisiana.** One envelope must be marked "Official Ballot" envelope and the other envelope will be used as the mailing envelope. Place and seal the completed "Official Backup Ballot" into the envelope marked "Official Ballot". Then place that envelope and the

STATE115095

"Voter Information" page into the mailing envelope and mail your FWAB directly to your election official.

*Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for parish

| Parish | Mailing Address |
|--------|-----------------|
| **Acadia** | Acadia Parish Registrar of Voters<br>568 NW Ct Cir<br>Crowley, LA 70526-4363<br>Phone: (337) 788-8841<br>Fax: (337) 788-3571<br>Email: acadiarov@sos.la.gov |
| **Allen** | Allen Parish Registrar of Voters<br>P.O. Box 150<br>Oberlin, LA 70655-0150<br>Phone: (337) 639-4966<br>Fax: (337) 639-4901<br>Email: allenrov@sos.la.gov |
| **Ascension** | Ascension Parish Registrar of Voters<br>828 S Irma Blvd, Rm 205<br>Gonzales, LA 70737-3631<br>Phone: (225) 621-5780<br>Fax: (225) 621-5783<br>Email: ascensionrova@sos.la.gov |
| **Assumption** | Assumption Parish Registrar of Voters<br>P.O. Box 578<br>Napoleonville, LA 70390-0578<br>Phone: (985) 369-7347<br>Fax: (985) 369-2976<br>Email: assumptionrov@sos.la.gov |
| **Avoyelles** | Avoyelles Parish Registrar of Voters<br>312 N Main St, Ste E<br>Marksville, LA 71351-2409<br>Phone: (318) 253-7129<br>Fax: (318) 253-0359<br>Email: avoyellesrov@sos.la.gov |
| **Beauregard** | Beauregard Parish Registrar of Voters<br>P.O. Box 952<br>DeRidder, LA 70634-0952<br>Phone: (337) 463-7955<br>Fax: (337) 463-7986<br>Email: beauregardrov@sos.la.gov |
| **Bienville** | Bienville Parish Registrar of Voters<br>P.O. Box 697<br>Arcadia, LA 71001-0697<br>Phone: (318) 263-7407<br>Fax: (318) 263-4101<br>Email: bienvillerov@sos.la.gov |
| **Bossier** | Bossier Parish Registrar of Voters<br>P.O. Box 635<br>Benton, LA 71006-0635<br>Phone: (318) 965-2301<br>Fax: (318) 965-3760<br>Email: bossierrov@sos.la.gov |
| **Caddo** | Caddo Parish Registrar of Voters<br>P.O. Box 1253<br>Shreveport, LA 71163-1253<br>Phone: (318) 226-6891<br>Fax: (318) 226-6969<br>Email: caddorov@sos.la.gov |
| **Calcasieu** | Calcasieu Parish Registrar of Voters<br>1000 Ryan St, Rm 7<br>Lake Charles, LA 70601-5250<br>Phone: (337) 721-4000<br>Fax: (337) 437-3389<br>Email: calcasieurov@sos.la.gov |
| **Caldwell** | Caldwell Parish Registrar of Voters<br>P.O. Box 1107<br>Columbia, LA 71418-1107<br>Phone: (318) 649-7364<br>Fax: (318) 649-7320<br>Email: caldwellrov@sos.la.gov |

STATE115096

| Parish | Mailing Address | Parish | Mailing Address |
|---|---|---|---|
| Cameron | Cameron Parish Registrar of Voters<br>P.O. Box 1<br>Cameron, LA 70631<br>Phone: (337) 775-5493<br>Fax: (337) 775-8014<br>Email: cameronrov@sos.la.gov | Iberville | Iberville Parish Registrar of Voters<br>P.O. Box 554<br>Plaquemine, LA 70765-0554<br>Phone: (225) 687-5201<br>Fax: (225) 687-5235<br>Email: ibervillerov@sos.la.gov |
| Catahoula | Catahoula Parish Registrar of Voters<br>P.O. Box 215<br>Harrisonburg, LA 71340-0215<br>Phone: (318) 744-5745<br>Fax: (318) 744-2010<br>Email: catahoularov@sos.la.gov | Jackson | Jackson Parish Registrar of Voters<br>500 E Court St, Rm 102<br>Jonesboro, LA 71251-3400<br>Phone: (318) 259-2486<br>Fax: (318) 259-5671<br>Email: jacksonrov@sos.la.gov |
| Claiborne | Claiborne Parish Registrar of Voters<br>507 W Main St, Ste 1<br>Homer, LA 71040-3914<br>Phone: (318) 927-3332<br>Fax: (318) 927-3345<br>Email: claibornerov@sos.la.gov | Jefferson | Jefferson Parish Registrar of Voters<br>P.O. Box 10494<br>Jefferson, LA 70181-0494<br>Phone: (504) 736-6191<br>Fax: (504) 736-6197<br>Email: jeffersonrov@sos.la.gov |
| Concordia | Concordia Parish Registrar of Voters<br>4001 Carter St, Ste K<br>Vidalia, LA 71373-3021<br>Phone: (318) 336-7770<br>Fax: (318) 336-9906<br>Email: concordiarov@sos.la.gov | Jefferson Davis | Jefferson Davis Parish Registrar of Voters<br>302 N Cutting Ave<br>Jennings, LA 70546-5361<br>Phone: (337) 824-0834<br>Fax: (337) 824-0821<br>Email: jeffersondavisrov@sos.la.gov |
| DeSoto | DeSoto Parish Registrar of Voters<br>104 Crosby St.<br>Mansfield, LA 71052-2046<br>Phone: (318) 872-1149<br>Fax: (318) 872-1153<br>Email: desotorov@sos.la.gov | Lafayette | Lafayette Parish Registrar of Voters<br>1010 Lafayette St, Ste 313<br>Lafayette, LA 70501-6885<br>Phone: (337) 291-7140<br>Fax: (337) 291-7143<br>Email: lafayetterov@sos.la.gov |
| East Baton Rouge | E Baton Rouge Parish Registrar of Voters<br>222 St. Louis St., Rm 201<br>Baton Rouge, LA 70802-5860<br>Phone: (225) 389-3940<br>Fax: (225) 389-5340<br>Email: eastbatonrougerova@sos.la.gov | Lafourche | Lafourche Parish Registrar of Voters<br>307 W 4th St<br>Thibodaux, LA 70301-3105<br>Phone: (985) 447-3256<br>Fax: (985) 447-3277<br>Email: lafourcherova@sos.la.gov |
| East Carroll | E Carroll Parish Registrar of Voters<br>P.O. Box 708<br>Lake Providence, LA 71254-0708<br>Phone: (318) 559-2015<br>Fax: (318) 559-5110<br>Email: eastcarrollrov@sos.la.gov | LaSalle | LaSalle Parish Registrar of Voters<br>P.O. Box 2439<br>Jena, LA 71342-2439<br>Phone: (318) 992-2254<br>Fax: (318) 992-7309<br>Email: lasallerov@sos.la.gov |
| East Feliciana | E Feliciana Parish Registrar of Voters<br>P.O. Box 488<br>Clinton, LA 70722-0488<br>Phone: (225) 683-3105<br>Fax: (225) 683-9464<br>Email: eastfelicianarov@sos.la.gov | Lincoln | Lincoln Parish Registrar of Voters<br>100 W Texas Ave, #10<br>Ruston, LA 71270-4463<br>Phone: (318) 251-5110<br>Fax: (318) 251-5126<br>Email: lincolnrov@sos.la.gov |
| Evangeline | Evangeline Parish Registrar of Voters<br>200 Court St, Ste 102<br>Ville Platte, LA 70586-4463<br>Phone: (337) 363-5538<br>Fax: (337) 363-5530<br>Email: evangelinerov@sos.la.gov | Livingston | Livingston Parish Registrar of Voters<br>P.O. Box 968<br>Livingston, LA 70754-0968<br>Phone: (225) 686-3054<br>Fax: (225) 686-3055<br>Email: livingstonrov@sos.la.gov |
| Franklin | Franklin Parish Registrar of Voters<br>6560 Main St<br>Winnsboro, LA 71295-2750<br>Phone: (318) 435-4489<br>Fax: (318) 435-4416<br>Email: franklinrov@sos.la.gov | Madison | Madison Parish Registrar of Voters<br>100 N Cedar St<br>Tallulah, LA 71282-3892<br>Phone: (318) 574-2193<br>Fax: (318) 574-2193<br>Email: madisonrov@sos.la.gov |
| Grant | Grant Parish Registrar of Voters<br>200 Main St, Courthouse Bldg.<br>Colfax, LA 71417-1828<br>Phone: (318) 627-9938<br>Fax: (318) 627-9940<br>Email: grantrov@sos.la.gov | Morehouse | Morehouse Parish Registrar of Voters<br>129 N Franklin St<br>Bastrop, LA 71220-3815<br>Phone: (318) 281-1434<br>Fax: (318) 281-0929<br>Email: morehouserov@sos.la.gov |
| Iberia | Iberia Parish Registrar of Voters<br>300 S Iberia St, Ste 110<br>New Iberia, LA 70560-4543<br>Phone: (337) 369-4407<br>Fax: (337) 369-4409<br>Email: iberiarov@sos.la.gov | Natchitoches | Natchitoches Parish Registrar of Voters<br>P.O. Box 677<br>Natchitoches, LA 71458-0677<br>Phone: (318) 357-2211<br>Fax: (318) 357-2212<br>Email: natchitochesrov@sos.la.gov |

STATE115097

**Louisiana**

| Parish | Mailing Address | Parish | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Orleans** | Orleans Parish Registrar of Voters<br>1300 Perdido St, Rm 1W24<br>New Orleans, LA 70112-2127<br>Phone: (504) 658-8300<br>Fax: (504) 658-8315<br>Email: orleansrov@sos.la.gov | **St John the Baptist** | St John the Baptist Registrar of Voters<br>1811 W Airline Hwy<br>LaPlace, LA 70068-3344<br>Phone: (985) 359-0179<br>Fax: (985) 359-0335<br>Email: st.johnrova@sos.la.gov |
| **Ouachita** | Ouachita Parish Registrar of Voters<br>1650 Desiard St, Rm 125<br>Monroe, LA 71201<br>Phone: (318) 327-1436<br>Fax: (318) 327-1337<br>Email: ouachitarov@sos.la.gov | **St Landry** | St Landry Parish Registrar of Voters<br>P.O. Box 818<br>Opelousas, LA 70571-0818<br>Phone: (337) 948-0572<br>Fax: (337) 948-0575<br>Email: st.landryrov@sos.la.gov |
| **Plaquemines** | Plaquemines Parish Registrar of Voters<br>P.O. Box 989<br>Port Sulphur, LA 70083-0989<br>Phone: (504) 934-3620<br>Fax: (504) 934-3625<br>Email: plaqueminesrov@sos.la.gov | **St Martin** | St Martin Parish Registrar of Voters<br>415 Saint Martin St<br>St Martinville, LA 70582<br>Phone: (337) 394-2204<br>Fax: (337) 394-2204<br>Email: st.martinrov@sos.la.gov |
| **Pointe Coupee** | Pointe Coupee Parish Registrar of Voters<br>1919 Hospital Rd, Ste 1<br>New Roads, LA 70760-3661<br>Phone: (225) 638-5537<br>Fax: (225) 638-5545<br>Email: pointecoupeerov@sos.la.gov | **St Mary** | St Mary Parish Registrar of Voters<br>500 Main St, Courthouse, Rm 301<br>Franklin, LA 70538-6144<br>Phone: (337) 828-4100 x360<br>Fax: (337) 829-9901<br>Email: st.maryrova@sos.la.gov |
| **Rapides** | Rapides Parish Registrar of Voters<br>701 Murray St<br>Alexandria, LA 71301-8099<br>Phone: (318) 473-6770<br>Fax: (318) 473-6601<br>Email: rapidesrov@sos.la.gov | **St Tammany** | St Tammany Parish Registrar of Voters<br>701 N Columbia St<br>Covington, LA 70433<br>Phone: (985) 809-5500<br>Fax: (985) 809-5508<br>Email: st.tammanyrova@sos.la.gov |
| **Red River** | Red River Parish Registrar of Voters<br>P.O. Box 432<br>Coushatta, LA 71019-0432<br>Phone: (318) 932-5027<br>Fax: (318) 932-5086<br>Email: redriverrov@sos.la.gov | **Tangipahoa** | Tangipahoa Parish Registrar of Voters<br>P.O. Box 895<br>Amite, LA 70422-0895<br>Phone: (985) 748-3215<br>Fax: (985) 748-3839<br>Email: tangipahoarova@sos.la.gov |
| **Richland** | Richland Parish Registrar of Voters<br>P.O. Box 368<br>Rayville, LA 71269-0368<br>Phone: (318) 728-3582<br>Fax: (318) 728-7028<br>Email: richlandrov@sos.la.gov | **Tensas** | Tensas Parish Registrar of Voters<br>P.O. Box 183<br>St Joseph, LA 71366-0183<br>Phone: (318) 766-3931<br>Fax: (318) 766-3933<br>Email: tensasrov@sos.la.gov |
| **Sabine** | Sabine Parish Registrar of Voters<br>400 Capitol St, #107<br>Many, LA 71449-3099<br>Phone: (318) 256-3697<br>Fax: (318) 256-5944<br>Email: sabinerov@sos.la.gov | **Terrebonne** | Terrebonne Parish Registrar of Voters<br>8026 Main St, Ste 101<br>Houma, LA 70360<br>Phone: (985) 873-6533<br>Fax: (985) 873-6834<br>Email: terrebonnerov@sos.la.gov |
| **St Bernard** | St Bernard Parish Registrar of Voters<br>8201 W Judge Perez Dr, Rm 104<br>Chalmette, LA 70043-1696<br>Phone: (504) 278-4231<br>Fax: (504) 277-0470<br>Email: st.bernardrov@sos.la.gov | **Union** | Union Parish Registrar of Voters<br>P.O. Box 235<br>Farmerville, LA 71241-0235<br>Phone: (318) 368-8660<br>Fax: (318) 368-8660<br>Email: unionrov@sos.la.gov |
| **St Charles** | St Charles Parish Registrar of Voters<br>P.O. Box 315<br>Hahnville, LA 70057-0315<br>Phone: (985) 783-5120<br>Fax: (985) 783-5121<br>Email: st.charlesrov@sos.la.gov | **Vermilion** | Vermilion Parish Registrar of Voters<br>100 N State St, Ste 120<br>Abbeville, LA 70510<br>Phone: (337) 898-4324<br>Fax: (337) 898-4326<br>Email: vermilionrov@sos.la.gov |
| **St Helena** | St Helena Parish Registrar of Voters<br>P.O. Box 543<br>Greensburg, LA 70441-0543<br>Phone: (225) 222-4440<br>Fax: (225) 222-3040<br>Email: st.helenarov@sos.la.gov | **Vernon** | Vernon Parish Registrar of Voters<br>P.O. Box 626<br>Leesville, LA 71496-0626<br>Phone: (337) 239-3690<br>Fax: (337) 238-0634<br>Email: vernonrov@sos.la.gov |
| **St James** | St James Parish Registrar of Voters<br>P.O. Box 179<br>Convent, LA 70723-0179<br>Phone: (225) 562-2330<br>Fax: (225) 562-2331<br>Email: st.jamesrov@sos.la.gov | **Washington** | Washington Parish Registrar of Voters<br>900 Washington St, #105<br>Franklinton, LA 70438-1719<br>Phone: (985) 839-7850<br>Fax: (985) 839-7851<br>Email: washingtonrov@sos.la.gov |

STATE115098

| Parish | Mailing Address | Parish | Mailing Address |
|---|---|---|---|
| Webster | Webster Parish Registrar of Voters<br>P.O. Box 674<br>Minden, LA 71058-0674<br>Phone: (318) 377-9272<br>Fax: (318) 377-9917<br>Email: websterrov@sos.la.gov | West Feliciana | W Feliciana Parish Registrar of Voters<br>P.O. Box 2490<br>St Francisville, LA 70775-2490<br>Phone: (225) 635-6161<br>Fax: (225) 635-6161<br>Email: westfelicianarov@sos.la.gov |
| West Baton Rouge | W Baton Rouge Parish Registrar of Voters<br>P.O. Box 31<br>Port Allen, LA 70767-0031<br>Phone: (225) 336-2421<br>Fax: (225) 387-3222<br>Email: westbatonrougerov@sos.la.gov | Winn | Winn Parish Registrar of Voters<br>119 W Main St, Rm 105<br>Winnfield, LA 71483-3238<br>Phone: (318) 628-6133<br>Fax: (318) 628-6142<br>Email: winnrov@sos.la.gov |
| West Carroll | W Carroll Parish Registrar of Voters<br>P.O. Box 71<br>Oak Grove, LA 71263-0071<br>Phone: (318) 428-2381<br>Fax: (318) 428-9253<br>Email: westcarrollrov@sos.la.gov | | |

STATE115099

# Mississippi

www.sos.ms.gov/Vote/Pages/default.aspx

## Federal Election Deadlines

|  | State Primary Runoff<br>June 28, 2022 | General Election<br>November 8, 2022 |
|---|---|---|
| Registration | By Mail: Received by<br>June 18, 2022<br>By Email or Fax: Received by<br>June 18, 2022 | By Mail: Received by<br>October 29, 2022<br>By Email or Fax: Received by<br>October 29, 2022 |
| Ballot Request | No Deadline | No Deadline |
| Ballot Return | By Mail: Postmarked by*<br>June 28, 2022<br>By Email or Fax: Received by<br>7 PM, June 28, 2022 | By Mail: Postmarked by*<br>November 8, 2022<br>By Email or Fax: Received by<br>7 PM, November 8, 2022 |

*Ballot Return: Ballots must still be received by the 5th day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

STATE115100

# Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | No. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot by contacting your election official. Contact information can be found in the "Local Election Offices" section. |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/mississippi |

**STATE115101**

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** a Mississippi-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Mississippi-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax". |
| | B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail**, **email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it **must** be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail, email** or **fax**.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

The Federal Write-In Absentee Ballot (FWAB) can be used to register to vote. If you are using the FWAB to register to vote, it **must** be received by the registration deadline listed in the "Federal Elections Deadlines" chart.

You can use the FWAB to vote in federal, state and local elections, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** a Mississippi-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Mississippi-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |

| | |
|---|---|
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Check "Yes" if you would like to register to vote and/or request an absentee ballot, otherwise check "No." |
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax". |
| | C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

Mississippi provides Ranked Choice Voting for *UOCAVA* voters. Please list your candidates in order of preference. Since there may be more than one candidate registered as affiliated with a political party or group in each race, to make sure your ballot can be counted, it is important that you write the candidate name and NOT the political party or group. For more information, visit https://www.sos.ms.gov/yall-vote.

## How and where to submit your FWAB

You can submit the FWAB by **mail, email** or **fax.** Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope

**Mississippi**

and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". Email this ballot package directly to your election official.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

## Local election offices for county

| County | Mailing Address |
|--------|-----------------|
| **Adams** | Adams County Registrar<br>115 S. Wall Street<br>Natchez, MS 39120<br>Phone: (601) 446-6326<br>Fax: (601) 445-7955<br>Email: UOCAVA.Adams@sos.gov |
| **Alcorn** | Alcorn County Registrar<br>P. O. Box 430<br>Corinth, MS 38835<br>Phone: (662) 286-7740<br>Fax: (662) 286-7767<br>Email: UOCAVA.Alcorn@sos.ms.gov |
| **Amite** | Amite County Registrar<br>P. O. Box 312<br>Liberty, MS 39645<br>Phone: (601) 657-8932<br>Fax: (601) 657-1082<br>Email: UOCAVA.Amite@sos.ms.gov |
| **Attala** | Attala County Registrar<br>100 Courthouse Ste 1<br>Kosciusko, MS 39090<br>Phone: (662) 289-1471<br>Fax: (662) 289-7666<br>Email: UOCAVA.Attala@sos.ms.gov |
| **Benton** | Benton County Registrar<br>P. O. Box 262<br>Ashland, MS 38603<br>Phone: (662) 224-6310<br>Fax: (662) 224-6312<br>Email: UOCAVA.Benton@sos.ms.gov |
| **Bolivar** | Bolivar County Registrar<br>200 S. Court St., P. O. Box 670<br>Cleveland, MS 38732-0670<br>Phone: (662) 843-2061<br>Fax: (662) 846-2943<br>Email: UOCAVA.Bolivar@sos.ms.gov |
| **Calhoun** | Calhoun County Registrar<br>P. O. Box 25<br>Pittsboro, MS 38951<br>Phone: (662) 412-3101<br>Fax: (662) 412-3103<br>Email: UOCAVA.Calhoun@sos.ms.gov |
| **Carroll** | Carroll County Registrar<br>P. O. Box 6<br>Vaiden, MS 39176<br>Phone: (662) 464-5476<br>Fax: (662) 464-5407<br>Email: UOCAVA.Carroll@sos.ms.gov |
| **Chickasaw** | Chickasaw County Registrar<br>1 Pinson Sq Rd Rm 2<br>Houston, MS 38851<br>Phone: (662) 456-2331<br>Fax: (662) 456-4831<br>Email: UOCAVA.Chickasaw@sos.ms.gov |
| **Choctaw** | Choctaw County Registrar<br>P. O. Box 34<br>Ackerman, MS 39735<br>Phone: (662) 285-6245<br>Fax: (662) 285-2196<br>Email: UOCAVA.Choctaw@sos.ms.gov |
| **Claiborne** | Claiborne County Registrar<br>P. O. Box 549<br>Port Gibson, MS 39150<br>Phone: (601) 437-5841<br>Fax: (601) 437-4543<br>Email: UOCAVA.Claiborne@sos.ms.gov |

**STATE115104**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| Clarke | Clarke County Registrar<br>P. O. Box 216<br>Quitman, MS 39355<br>Phone: (601) 776-3111<br>Fax: (601) 776-1001<br>Email: UOCAVA.Clarke@sos.ms.gov | Harrison | Harrison County Registrar<br>P. O. Box 998<br>Gulfport, MS 39502<br>Phone: (228) 865-4051<br>Fax: (228) 865-4099<br>Email: UOCAVA.Harrison@sos.ms.gov |
| Clay | Clay County Registrar<br>P. O. Box 364<br>West Point, MS 39773<br>Phone: (662) 494-3384<br>Fax: (662) 495-2057<br>Email: UOCAVA.Clay@sos.ms.gov | Hinds | Hinds County Registrar<br>P. O Box 327<br>Jackson, MS 39205<br>Phone: (601) 968-6628<br>Fax: (601) 973-5547<br>Email: UOCAVA.Hinds@sos.ms.gov |
| Coahoma | Coahoma County Registrar<br>P. O. Drawer 849<br>Clarksdale, MS 38614<br>Phone: (662) 624-3014<br>Fax: (662) 624-3075<br>Email: UOCAVA.Coahoma@sos.ms.gov | Holmes | Holmes County Registrar<br>P. O. Box 718<br>Lexington, MS 39095<br>Phone: (662) 834-2476<br>Fax: (662) 834-3870<br>Email: UOCAVA.Holmes@sos.ms.gov |
| Copiah | Copiah County Registrar<br>P. O. Box 467<br>Hazelhurst, MS 39083-0467<br>Phone: (601) 894-1241<br>Fax: (601) 894-3026<br>Email: UOCAVA.Copiah@sos.ms.gov | Humphreys | Humphreys County Registrar<br>P. O. Box 696<br>Belzoni, MS 39038<br>Phone: (662) 247-3065<br>Fax: (662) 247-3906<br>Email: UOCAVA.Humphreys@sos.ms.gov |
| Covington | Covington County Registrar<br>P. O. Box 667<br>Collins, MS 39428<br>Phone: (601) 765-6506<br>Fax: (601) 765-5012<br>Email: UOCAVA.Covington@sos.ms.gov | Issaquena | Issaquena County Registrar<br>P. O. Box 27<br>Mayersville, MS 39113<br>Phone: (662) 873-2761<br>Fax: (601) 873-2061<br>Email: UOCAVA.Issaquena@sos.ms.gov |
| DeSoto | DeSoto County Registrar<br>2535 Hwy 51 S, Room 201<br>Hernando, MS 38632<br>Phone: (662) 469-8007<br>Fax: (662) 469-8370<br>Email: UOCAVA.Desoto@sos.ms.gov | Itawamba | Itawamba County Registrar<br>201 W Main St<br>Fulton, MS 38843<br>Phone: (662) 862-3511<br>Fax: (662) 862-4006<br>Email: UOCAVA.Itawamba@sos.ms.gov |
| Forrest | Forrest County Registrar<br>P. O. Box 992<br>Hattiesburg, MS 39403-0992<br>Phone: (601) 582-3213<br>Fax: (601) 545-6065<br>Email: UOCAVA.Forrest@sos.ms.gov | Jackson | Jackson County Registrar<br>P. O. Box 998<br>Pascagoula, MS 39568<br>Phone: (228) 769-3040<br>Fax: (228) 769-3180<br>Email: UOCAVA.Jackson@sos.ms.gov |
| Franklin | Franklin County Registrar<br>P. O. Box 267<br>Meadville, MS 39653<br>Phone: (601) 384-2320<br>Fax: (601) 384-8244<br>Email: UOCAVA.Franklin@sos.ms.gov | Jasper | Jasper County Registrar<br>27 W. 8th Ave., P.O. Box 447<br>Bay Springs, MS 39422-0447<br>Phone: (601) 764-2245<br>Fax: (601) 764-3078<br>Email: UOCAVA.Jasper@sos.ms.gov |
| George | George County Registrar<br>355 Cox St , Ste C<br>Lucedale, MS 39452<br>Phone: (601) 947-4881<br>Fax: (601) 947-8804<br>Email: UOCAVA.George@sos.ms.gov | Jefferson | Jefferson County Registrar<br>P. O. Box 305<br>Fayette, MS 39069<br>Phone: (601) 786-3422<br>Fax: (601) 786-9676<br>Email: UOCAVA.Jefferson@sos.ms.gov |
| Greene | Greene County Registrar<br>P. O. Box 310<br>Leakesville, MS 39451<br>Phone: (601) 394-2379<br>Fax: (601) 394-2334<br>Email: UOCAVA.Greene@sos.ms.gov | Jefferson Davis | Jefferson Davis County Registrar<br>P. O. Box 1090<br>Prentiss, MS 39474<br>Phone: (601) 792-4231<br>Fax: (601) 792-4957<br>Email: UOCAVA.JeffersonDavis@sos.ms.gov |
| Grenada | Grenada County Registrar<br>P. O. Box 1517<br>Grenada, MS 38902-1517<br>Phone: (662) 226-1941<br>Fax: (662) 227-2865<br>Email: UOCAVA.Grenada@sos.ms.gov | Jones | Jones County Registrar<br>P. O. Box 1336<br>Laurel, MS 39441<br>Phone: (601) 425-2556<br>Fax: (601) 399-4774<br>Email: UOCAVA.Jones@sos.ms.gov |
| Hancock | Hancock County Registrar<br>152 Main St, Ste B<br>Bay Saint Louis, MS 39520<br>Phone: (228) 467-5265<br>Fax: (228) 467-2779<br>Email: UOCAVA.Hancock@sos.ms.gov | Kemper | Kemper County Registrar<br>P. O. Box 130<br>DeKalb, MS 39328<br>Phone: (601) 743-2224<br>Fax: (601) 743-4173<br>Email: UOCAVA.Kemper@sos.ms.gov |

**STATE115105**

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Lafayette** | Lafayette County Registrar<br>1 Courthouse Sq , Ste 101<br>Oxford, MS 38655<br>Phone: (662) 234-4951<br>Fax: (662) 236-0238<br>Email: UOCAVA.LaFayette@sos.ms.gov | **Monroe** | Monroe County Registrar<br>P. O. Box 843<br>Aberdeen, MS 39730<br>Phone: (662) 369-8695<br>Fax: (662) 369-3684<br>Email: UOCAVA.Monroe@sos.ms.gov |
| **Lamar** | Lamar County Registrar<br>P. O. Box 369<br>Purvis, MS 39475<br>Phone: (601) 794-3470<br>Fax: (601) 794-3905<br>Email: UOCAVA.Lamar@sos.ms.gov | **Montgomery** | Montgomery County Registrar<br>P. O. Box 765<br>Winona, MS 38967<br>Phone: (662) 283-4161<br>Fax: (662) 283-3363<br>Email: UOCAVA.Montgomery@sos.ms.gov |
| **Lauderdale** | Lauderdale County Registrar<br>P. O. Box 1005<br>Meridian, MS 39302-1005<br>Phone: (601) 482-9731<br>Fax: (601) 482-9734<br>Email: UOCAVA.Lauderdale@sos.ms.gov | **Neshoba** | Neshoba County Registrar<br>401 E. Beacon St , Ste 110<br>Philadelphia, MS 39350<br>Phone: (601) 656-4781<br>Fax: (601) 650-3997<br>Email: UOCAVA.Neshoba@sos.ms.gov |
| **Lawrence** | Lawrence County Registrar<br>P. O. Box 1249<br>Monticello, MS 39654<br>Phone: (601) 587-4791<br>Fax: (601) 587-4405<br>Email: UOCAVA.Lawrence@sos.ms.gov | **Newton** | Newton County Registrar<br>P. O. Box 447<br>Decatur, MS 39327<br>Phone: (601) 635-2368<br>Fax: (601) 635-3210<br>Email: UOCAVA.Newton@sos.ms.gov |
| **Leake** | Leake County Registrar<br>P. O. Box 67<br>Carthage, MS 39051<br>Phone: (601) 267-8357<br>Fax: (601) 267-8889<br>Email: UOCAVA.Leake@sos.ms.gov | **Noxubee** | Noxubee County Registrar<br>505 Jefferson St., #3, P. O. Box 431<br>Macon, MS 39341<br>Phone: (662) 726-5737<br>Fax: (662) 726-6041<br>Email: UOCAVA.Noxubee@sos.ms.gov |
| **Lee** | Lee County Registrar<br>P. O. Box 762<br>Tupelo, MS 38802<br>Phone: (662) 432-2300<br>Fax: (662) 680-6079<br>Email: UOCAVA.Lee@sos.ms.gov | **Oktibbeha** | Oktibbeha County Registrar<br>108 W. Main St , Ste 118<br>Starkville, MS 39759<br>Phone: (662) 323-1356<br>Fax: (662) 323-1121<br>Email: UOCAVA.Oktibbeha@sos.ms.gov |
| **Leflore** | Leflore County Registrar<br>P. O. Box 1953<br>Greenwood, MS 38935<br>Phone: (662) 453-1435<br>Fax: (662) 455-1278<br>Email: UOCAVA.LeFlore@sos.ms.gov | **Panola** | Panola County Registrar<br>P. O. Box 346<br>Batesville, MS 38606<br>Phone: (662) 563-6210<br>Fax: (662) 563-8233<br>Email: UOCAVA.Panola@sos.ms.gov |
| **Lincoln** | Lincoln County Registrar<br>301 S First St, Rm 205<br>Brookhaven, MS 39602<br>Phone: (601) 835-3435<br>Fax: (601) 835-3482<br>Email: UOCAVA.Lincoln@sos.ms.gov | **Pearl River** | Pearl River County Registrar<br>P. O. Box 530<br>Poplarville, MS 39470<br>Phone: (601) 403-2328<br>Fax: (601) 403-2327<br>Email: UOCAVA.PearlRiver@sos.ms.gov |
| **Lowndes** | Lowndes County Registrar<br>P. O. Box 31<br>Columbus, MS 39703<br>Phone: (662) 329-5900<br>Fax: (662)329-5935<br>Email: UOCAVA.Lowndes@sos.ms.gov | **Perry** | Perry County Registrar<br>P. O. Box 198<br>New Augusta, MS 39462<br>Phone: (601) 964-8663<br>Fax: (601) 964-8740<br>Email: UOCAVA.Perry@sos.ms.gov |
| **Madison** | Madison County Registrar<br>P. O. Drawer 1626<br>Canton, MS 39046<br>Phone: (601) 859-4365<br>Fax: (601) 859-8555<br>Email: UOCAVA.Madison@sos.ms.gov | **Pike** | Pike County Registrar<br>P. O Drawer 31<br>Magnolia, MS 39652<br>Phone: (601) 783-2581<br>Fax: (601) 783-6322<br>Email: UOCAVA.Pike@sos.ms.gov |
| **Marion** | Marion County Registrar<br>250 Broad St , Ste 1<br>Columbia, MS 39429<br>Phone: (601) 736-8246<br>Fax: (601) 731-6344<br>Email: UOCAVA.Marion@sos.ms.gov | **Pontotoc** | Pontotoc County Registrar<br>P. O Box 428<br>Pontotoc, MS 38863<br>Phone: (662) 489-3908<br>Fax: (662) 489-2318<br>Email: UOCAVA.Pontotoc@sos.ms.gov |
| **Marshall** | Marshall County Registrar<br>P. O. Box 459<br>Holly Springs, MS 38635<br>Phone: (662) 252-3434<br>Fax: (662) 252-5951<br>Email: UOCAVA.Marshall@sos.ms.gov | **Prentiss** | Prentiss County Registrar<br>P. O Box 727<br>Booneville, MS 38829<br>Phone: (662) 728-4611<br>Fax: (662) 728-2006<br>Email: UOCAVA.Prentiss@sos.ms.gov |

**Mississippi**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Quitman** | Quitman County Registrar<br>220 Chestnut St, Ste 4<br>Marks, MS 38646<br>Phone: (662) 326-8003<br>Fax: (662) 326-8004<br>Email: UOCAVA.Quitman@sos.ms.gov | **Tunica** | Tunica County Registrar<br>P. O. Box 184<br>Tunica, MS 38676<br>Phone: (662) 363-2842<br>Fax: (662) 363-2413<br>Email: UOCAVA.Tunica@sos.ms.gov |
| **Rankin** | Rankin County Registrar<br>P. O. Box 1599<br>Brandon, MS 39043<br>Phone: (601) 825-1466<br>Fax: (601) 825-1465<br>Email: UOCAVA.Rankin@sos.ms.gov | **Union** | Union County Registrar<br>P. O. Box 298<br>New Albany, MS 38652<br>Phone: (662) 534-1910<br>Fax: (662) 534-2059<br>Email: UOCAVA.Union@sos.ms.gov |
| **Scott** | Scott County Registrar<br>P. O. Box 371<br>Forest, MS 39074<br>Phone: (601) 469-3601<br>Fax: (601) 469-5188<br>Email: UOCAVA.Scott@sos.ms.gov | **Walthall** | Walthall County Registrar<br>200 Ball Ave<br>Tylertown, MS 39667<br>Phone: (601) 876-5677<br>Fax: (601) 876-4077<br>Email: UOCAVA.Walthall@sos.ms.gov |
| **Sharkey** | Sharkey County Registrar<br>P. O. Box 218<br>Rolling Fork, MS 39159<br>Phone: (662) 873-2755<br>Fax: (662) 873-6045<br>Email: UOCAVA.Sharkey@sos.ms.gov | **Warren** | Warren County Registrar<br>P. O. Box 351<br>Vicksburg, MS 39181<br>Phone: (601) 636-3961<br>Fax: (601) 630-4100<br>Email: UOCAVA.Warren@sos.ms.gov |
| **Simpson** | Simpson County Registrar<br>P. O. Box 307<br>Mendenhall, MS 39114<br>Phone: (601) 847-2474<br>Fax: (601) 847-4011<br>Email: UOCAVA.Simpson@sos.ms.gov | **Washington** | Washington County Registrar<br>P. O Box 1276<br>Greenville, MS 38702<br>Phone: (662) 378-2747<br>Fax: (662) 334-2698<br>Email: UOCAVA.Washington@sos.ms.gov |
| **Smith** | Smith County Registrar<br>P. O. Box 517<br>Raleigh, MS 39153<br>Phone: (601) 782-4751<br>Fax: (601) 782-4007<br>Email: UOCAVA.Smith@sos.ms.gov | **Wayne** | Wayne County Registrar<br>P. O. Box 428<br>Waynesboro, MS 39367<br>Phone: (601) 735-1171<br>Fax: (601) 735-6261<br>Email: UOCAVA.Wayne@sos.ms.gov |
| **Stone** | Stone County Registrar<br>323 E. Cavers Ave.<br>Wiggins, MS 39577<br>Phone: (601) 928-5246<br>Fax: (601) 928-5248<br>Email: UOCAVA.Stone@sos.ms.gov | **Webster** | Webster County Registrar<br>P. O. Box 308<br>Walthall, MS 39771<br>Phone: (662) 258-6287<br>Fax: (662) 258-7686<br>Email: UOCAVA.Webster@sos.ms.gov |
| **Sunflower** | Sunflower County Registrar<br>P. O. Box 880<br>Indianola, MS 38751<br>Phone: (662) 887-1252<br>Fax: (662) 887-7077<br>Email: UOCAVA.Sunflower@sos.ms.gov | **Wilkinson** | Wilkinson County Registrar<br>P. O. Box 327<br>Woodville, MS 39669<br>Phone: (601) 888-6697<br>Fax: (601) 888-6984<br>Email: UOCAVA.Wilkinson@sos.ms.gov |
| **Tallahatchie** | Tallahatchie County Registrar<br>P. O. Box 86<br>Charleston, MS 38921<br>Phone: (662) 647-8758<br>Fax: (662) 647-8490<br>Email: UOCAVA.Tallahatchie@sos.ms.gov | **Winston** | Winston County Registrar<br>P. O. Drawer 785<br>Louisville, MS 39339<br>Phone: (662) 773-3581<br>Fax: (662) 773-7192<br>Email: UOCAVA.Winston@sos.ms.gov |
| **Tate** | Tate County Registrar<br>201 Ward St<br>Senatobia, MS 38668<br>Phone: (662) 562-5211<br>Fax: (662) 562-7486<br>Email: UOCAVA.Tate@sos.ms.gov | **Yalobusha** | Yalobusha County Registrar<br>14400 Main St., P. O. Box 260<br>Coffeeville, MS 38922<br>Phone: (662) 675-8187<br>Fax: (662) 675-8004<br>Email: UOCAVA.Yalobusha@sos.ms.gov |
| **Tippah** | Tippah County Registrar<br>102-A N. Main<br>Ripley, MS 38663<br>Phone: (662) 837-7370<br>Fax: (662) 837-1030<br>Email: UOCAVA.Tippah@sos.ms.gov | **Yazoo** | Yazoo County Registrar<br>P. O Box 108<br>Yazoo City, MS 39194<br>Phone: (662) 746-1872<br>Fax: (662) 716-0113<br>Email: UOCAVA.Yazoo@sos.ms.gov |
| **Tishomingo** | Tishomingo County Registrar<br>1008 Battleground Dr<br>Iuka, MS 38852<br>Phone: (662) 423-7026<br>Fax: (662) 423-1667<br>Email: UOCAVA.Tishomingo@sos.ms.gov | | |

STATE115107

# New Jersey

nj.gov/state/elections/index.html

## Federal Election Deadlines

|  | General Election<br>November 8, 2022 |
|---|---|
| Registration | **By Mail: Received by**<br>October 18, 2022<br>**By Email or Fax: Received by**<br>October 18, 2022 |
| Ballot Request | **By Mail: Received by**<br>November 1, 2022<br>**By Email or Fax: Received by**<br>November 4, 2022 |
| Ballot Return | **Postmarked by***<br>November 8, 2022 |

*Ballots must still be received by the 6th day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
|---|---|
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |

STATE115108

| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | Yes. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://voter.njsvrs.com/PublicAccess/servlet/ com.saber.publicaccess.control.PublicAccessNavigationServlet? USERPROCESS=PublicSearch |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/new-jersey |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| Section 1 | Select the category that best describes you.

Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.

Your date of birth is required.

You must provide **either** a New Jersey-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or New Jersey-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".

B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

STATE115109

## How and where to submit your FPCA

You can submit the FPCA by **mail, email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

## Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the ballot by **mail, email** or **fax.** If you send it by email or fax you **must** also immediately mail your ballot to the Board of Election.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

## Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

**U.S. citizens residing outside the United States whose return is not certain,** can use the FWAB to vote in all elections for federal office.

**All other** *UOCAVA* **voters** can use the FWAB to vote in all elections for federal, state and local offices, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a New Jersey-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or New Jersey-issued ID number." |
| --- | --- |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. |
| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.** |

STATE115110

| | |
|---|---|
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

The FWAB can be submitted by **mail, email** or **fax.** If you send it by email or fax you **must** also immediately mail your FWAB to the Board of Election.

Contact information can be found in the "Local Election Offices" section.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** *(The FWAB must also be mailed)*. Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". Email this ballot package directly to your election official.

**Fax your FWAB:** *(The FWAB must also be mailed)*. Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and

the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

STATE115111

# Local election offices for county

| County | Mailing Address |
|---|---|
| Atlantic | Atlantic County Clerk - FPCA<br>5901 Main St<br>Mays Landing, NJ 08330<br>Phone: (609) 909-5842<br>Fax: (609) 909-5111<br>Email: sommers_mike@aclink.org |
| Atlantic | Atlantic County Board of Elections - FWAB<br>5903 Main St<br>Mays Landing, NJ 08330<br>Phone: (609) 645-5867<br>Fax: (609) 645-5875<br>Email: evote_submit@aclink.org |
| Bergen | Bergen County Clerk - FPCA<br>1 Bergen County Plaza, Rm 130<br>Hackensack, NJ 07601<br>Phone: (201) 336-7020<br>Fax: (201) 336-7005<br>Email: electionsclerk@co.Bergen.nj.us |
| Bergen | Bergen County Board of Elections - FWAB<br>1 Bergen County Plaza, Rm 310<br>Hackensack, NJ 07601<br>Phone: (201) 336-6230<br>Fax: (201) 336-6242<br>Email: electionsclerk@co.Bergen.nj.us |
| Burlington | Burlington County Clerk - FPCA<br>50 Rancocas Rd, 3rd Floor P.O. Box 6000<br>Mount Holly, NJ 08060<br>Phone: (609) 265-5122<br>Fax: (609) 265-0696<br>Email: osballot@co.burlington.nj.us |
| Burlington | Burlington County Board of Elections - FWAB<br>50 Rancocas Rd, 1st Floor<br>Mount Holly, NJ 08060<br>Phone: (609) 265-5062<br>Fax: (609) 265-3131<br>Email: osreturn@co.burlington.nj.us |
| Camden | Camden County Clerk - FPCA<br>100 University Court, P.O. Box 218<br>Blackwood, NJ 08012<br>Phone: (856) 225-7219<br>Fax: (856) 374-6398<br>Email: electdiv@camdencounty.com |
| Camden | Camden County Board of Elections - FWAB<br>100 University Court P.O. Box 258<br>Blackwood, NJ 08012<br>Phone: (856) 401-8683<br>Fax: (856) 401-8689<br>Email: vote@camdencounty.com |
| Cape May | Cape May County Clerk - FPCA<br>7 N Main St, P.O. Box 5000<br>Cape May Courthouse, NJ 08210<br>Phone: (609) 465-1013<br>Fax: (609) 463-0966<br>Email: clerk.elections@co.cape-may.nj.us |
| Cape May | Cape May County Board of Elections - FWAB<br>10 W. Mechanic St<br>Cape May Courthouse, NJ 08210<br>Phone: (609) 465-1050<br>Fax: (609) 465-1639<br>Email: clerk@co.cape-may.nj.us |
| Cumberland | Cumberland County Clerk - FPCA<br>P.O. Box 100<br>Bridgeton, NJ 08302<br>Phone: (856) 453-4860<br>Fax: (856) 455-1410<br>Email: ccclerknj@co.cumberland.nj.us |

| County | Mailing Address |
|---|---|
| Cumberland | Cumberland County Board of Elections - FWAB<br>555 Shiloh Pike<br>Bridgeton, NJ 08302<br>Phone: (856) 453-5801<br>Fax: (856) 451-3172<br>Email: votebymailreturn@co.cumberland.nj.us |
| Essex | Essex County Clerk - FPCA<br>P.O. Box 690<br>Newark, NJ 07101-0690<br>Phone: (973) 621-4921<br>Fax: (973) 621-4640<br>Email: jferry@clerk.essexcountynj.org |
| Essex | Essex County Board of Elections - FWAB<br>465 Dr. Martin Luther King, Jr. Blvd., 4th Fl, Rm 411<br>Newark, NJ 07102<br>Phone: (973) 621-5071<br>Fax: (973) 621-4640<br>Email: ballotreturn2020@clerk.essexcountynj.org |
| Gloucester | Gloucester County Clerk - FPCA<br>P.O. Box 129<br>Woodbury, NJ 08096<br>Phone: (856) 384-4532<br>Fax: (856) 251-1646<br>Email: ccelections@co.gloucester.nj.us |
| Gloucester | Gloucester County Board of Elections - FWAB<br>P.O. Box 352<br>Woodbury, NJ 08096<br>Phone: (856) 384-4500<br>Fax: (856) 251-1645<br>Email: boe@co.gloucester.nj.us |
| Hudson | Hudson County Clerk - FPCA<br>257 Cornelison Ave - 4th Fl<br>Jersey City, NJ 07302<br>Phone: (201) 369-3470 x6<br>Fax: (201) 369-3478<br>Email: vote@hcnj.us |
| Hudson | Hudson County Board of Elections - FWAB<br>257 Cornelison Ave - 4th Fl<br>Jersey City, NJ 07302<br>Phone: (201) 369-3435<br>Fax: (201) 369-3436<br>Email: eballot@hcnj.us |
| Hunterdon | Hunterdon County Clerk - FPCA<br>Hall of Records, 71 Main St<br>Flemington, NJ 08822<br>Phone: (908) 788-1214<br>Fax: (908) 782-4068<br>Email: countyclerk@co.hunterdon.nj.us |
| Hunterdon | Hunterdon County Board of Elections - FWAB<br>P.O. Box 2900<br>Flemington, NJ 08822<br>Phone: (908) 788-1190<br>Fax: (908) 806-4686<br>Email: eballot@co.hunterdon.nj.us |
| Mercer | Mercer County Clerk - FPCA<br>209 S. Broad St., 2nd Floor, P.O. Box 8068<br>Trenton, NJ 08650<br>Phone: (609) 989-6494<br>Fax: (609) 394-8785<br>Email: vote@mercercounty.org |
| Mercer | Mercer County Board of Elections - FWAB<br>930 Spruce St.<br>Lawrence, NJ 08648<br>Phone: (609) 989-6522<br>Fax: (609) 278-2713<br>Email: returnballot@mercercounty.org |
| Middlesex | Middlesex County Clerk - FPCA<br>75 Bayard St P.O. Box 1110<br>New Brunswick, NJ 08901<br>Phone: (732) 745-4202<br>Fax: (732) 745-2170<br>Email: request.absentee@co.middlesex.nj.us |

STATE115112

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Middlesex** | Middlesex County Board of Elections - FWAB<br>11 Kennedy Blvd.<br>East Brunswick, NJ 08816-1250<br>Phone: (732) 745-3471<br>Fax: (732) 296-6560<br>Email: elections@co.middlesex.nj.us | **Salem** | Salem County Board of Elections - FWAB<br>110 Fifth St, Ste 1000<br>Salem, NJ 08079<br>Phone: (856) 935-7510 x8330<br>Fax: (856) 935-6725<br>Email: overseasballot@salemcountynj.gov |
| **Monmouth** | Monmouth County Clerk - FPCA<br>300 Halls Mill Rd<br>Freehold, NJ 07728-8835<br>Phone: (732) 431-7790<br>Fax: (732) 409-4887<br>Email: eballotapp@co.monmouth.nj.us | **Somerset** | Somerset County Clerk - FPCA<br>P.O. Box 3000<br>Somerville, NJ 08876<br>Phone: (908) 231-7013<br>Fax: (908) 575-3930<br>Email: mailinvoting@co.somerset.nj.us |
| **Monmouth** | Monmouth County Board of Elections - FWAB<br>300 Halls Mill Rd<br>Freehold, NJ 07728-8834<br>Phone: (732) 431-7802 x7150<br>Fax: (732) 303-7648<br>Email: eballotvote@co.monmouth.nj.us | **Somerset** | Somerset County Board of Elections - FWAB<br>P.O. Box 3000<br>Somerville, NJ 08876<br>Phone: (908) 231-7084<br>Fax: (908) 231-9465<br>Email: federalvoter@co.somerset.nj.us |
| **Morris** | Morris County Clerk - FPCA<br>P.O. Box 315<br>Morristown, NJ 07963-0315<br>Phone: (973) 285-6066<br>Fax: (973) 285-5233<br>Email: morriscountyclerkelections@co.morris.nj.us | **Sussex** | Sussex County Clerk - FPCA<br>83 Spring St, Ste 304<br>Newton, NJ 07860<br>Phone: (973) 579-0900<br>Fax: (973) 383-7493<br>Email: ballot@sussex.nj.us |
| **Morris** | Morris County Board of Elections - FWAB<br>P.O. Box 900<br>Morristown, NJ 07693-0900<br>Phone: (973) 285-6715<br>Fax: (973) 285-5208<br>Email: ballotsubmission@co.morris.nj.us | **Sussex** | Sussex County Board of Elections - FWAB<br>83 Spring St, Ste 305<br>Newton, NJ 07860<br>Phone: (973) 579-0950<br>Fax: (973) 579-0955<br>Email: voter@sussex.nj.us |
| **Ocean** | Ocean County Clerk - FPCA<br>118 Washington St, Rm 107<br>Toms River, NJ 08754<br>Phone: (732) 929-2018<br>Fax: (732) 349-4336<br>Email: oceancountyUOCAVA@co.ocean.nj.us | **Union** | Union County Clerk - FPCA<br>2 Broad St, Rm 113<br>Elizabeth, NJ 07201-2299<br>Phone: (908) 527-4996<br>Fax: (908) 558-3592<br>Email: ucvote@ucnj.org |
| **Ocean** | Ocean County Board of Elections - FWAB<br>129 Hooper Ave, P.O. Box 2006<br>Toms River, NJ 08754<br>Phone: (732) 929-2167<br>Fax: (732) 506-5110<br>Email: ocevaballot@co.ocean.nj.us | **Union** | Union County Board of Elections - FWAB<br>271 N. Broad St<br>Elizabeth, NJ 07208<br>Phone: (908) 527-4123<br>Fax: (908) 527-4127<br>Email: ucboe@ucnj.org |
| **Passaic** | Passaic County Clerk - FPCA<br>401 Grand St, Rm 130<br>Paterson, NJ 07505<br>Phone: (973) 881-4127 x2235<br>Fax: (973) 742-5744<br>Email: hanak@passaiccountynj.org | **Warren** | Warren County Clerk - FPCA<br>413 Second St<br>Belvidere, NJ 07823<br>Phone: (908) 475-6211<br>Fax: (908) 475-6208<br>Email: hmackey@co.warren.nj.us |
| **Passaic** | Passaic County Board of Elections - FWAB<br>401 Grand St, Rm 123<br>Paterson, NJ 07505<br>Phone: (973) 881-4527<br>Fax: (973) 523-9121<br>Email: return-ballots@passaiccountynj.org | **Warren** | Warren County Board of Elections - FWAB<br>202 Mansfield St<br>Belvidere, NJ 07823<br>Phone: (908) 475-6313<br>Fax: (908) 475-6221<br>Email: wduffy@co.warren.nj.us |
| **Salem** | Salem County Clerk - FPCA<br>110 Fifth St, Ste 200<br>Salem, NJ 08079<br>Phone: (856) 935-7510 x8454<br>Fax: (856) 935-8882<br>Email: overseasballot@salemcountynj.gov | | |

STATE115113

# North Carolina

www.ncsbe.gov/ncsbe/

## Federal Election Deadlines

| | Federal Primary Runoff<br>July 26, 2022 | General Election<br>November 8, 2022 |
|---|---|---|
| Registration | **Received by**<br>5 PM, July 25, 2022 | **Received by**<br>5 PM, November 7, 2022 |
| Ballot Request | **Received by**<br>5 PM, July 25, 2022 | **Received by**<br>5 PM, November 7, 2022 |
| Ballot Return* | **Return by Email/Online or Fax: Received by**<br>7:30 PM ET, July 26, 2022<br>**Return by Mail: Received by**<br>5 PM ET, August 4, 2022 | **Return by Email/Online or Fax: Received by**<br>7:30 PM ET, November 8, 2022<br>**Return by Mail: Received by**<br>5 PM ET, November 17, 2022 |

*If your ballot is received after 7:30 PM ET on Election Day, it will not be timely unless you transmitted the ballot by 12:01 AM on the day of the election at the place where you completed the ballot, and it is received by the "Return by Mail" receipt deadline above.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

STATE115120

# Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office. |
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | A U.S. citizen who has never resided in the U.S., and has a parent or legal guardian who was last domiciled in North Carolina, is eligible to vote in North Carolina. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://www.ncsbe.gov/voting/voter-tools-and-forms |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/north-carolina |

STATE115121

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) temporarily registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a North Carolina-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or North Carolina-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can |

choose to receive your absentee ballot by "mail", "email or online", or "fax".

B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections.

| | |
|---|---|
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail, email,** or **fax** or use the **North Carolina Military and Overseas Absentee Ballot portal,** available at https://votebymail.ncsbe.gov/app/uocava.

Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines"

STATE115122

chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail, email, online\*** or **fax**.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

**\*You can receive, mark, and return your absentee ballot online using the North Carolina Military and Overseas Absentee Ballot portal, available at https://votebymail.ncsbe.gov/app/uocava.**

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

The Federal Write-In Absentee Ballot (FWAB) can be used to register to vote. If you are using the FWAB to register to vote, it **must** be received by the registration deadline listed in the "Federal Election Deadlines" chart.

You can use the FWAB to vote in federal, state and local elections, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| | |
|---|---|
| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a North Carolina-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or North Carolina-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an |

absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence.

| | |
|---|---|
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Check "Yes" if you would like to register to vote and/or request an absentee ballot, otherwise check "No."<br><br>B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

You can submit the FWAB by **mail, email** or **fax.** Contact information can be found in the "Local Election Offices" section. or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope.

STATE115123

Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". Email this ballot package directly to your election official.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for county

| County | Mailing Address |
|---|---|
| **Alamance** | Alamance County Board of Elections<br>115 South Maple Street<br>Graham, NC 27253<br>Phone: (336) 570-6755<br>Fax: (336) 570-6757<br>Email: Alamance.BOElections@alamance-nc.com |
| **Alexander** | Alexander County Board of Elections<br>PO Box 326<br>Taylorsville, NC 28681<br>Phone: (828) 632-2990<br>Fax: (828) 632-1381<br>Email: elections@alexandercountync.gov |
| **Alleghany** | Alleghany County Board of Elections<br>PO Box 65<br>Sparta, NC 28675<br>Phone: (336) 372-4557<br>Fax: (336) 372-5435<br>Email: elections@alleghanycounty-nc.gov |
| **Anson** | Anson County Board of Elections<br>PO Box 768<br>Wadesboro, NC 28170<br>Phone: (704) 994-3223<br>Fax: (704) 694-2443<br>Email: smelton@ansoncountync.gov |
| **Ashe** | Ashe County Board of Elections<br>150 Government Circle, Suite 2100<br>Jefferson, NC 28640<br>Phone: (336) 846-5570<br>Fax: (336) 846-5574<br>Email: johnshepherd@ashecountygov.com |
| **Avery** | Avery County Board of Elections<br>PO Box 145<br>Newland, NC 28657<br>Phone: (828) 733-8282<br>Fax: (828) 733-8283<br>Email: sheila.ollis@averycountync.gov |
| **Beaufort** | Beaufort County Board of Elections<br>PO Box 1016<br>Washington, NC 27889<br>Phone: (252) 946-2321<br>Fax: (252) 974-2962<br>Email: BEAUFORT.boe@co.beaufort.nc.us |
| **Bertie** | Bertie County Board of Elections<br>PO Box 312<br>Windsor, NC 27983<br>Phone: (252) 794-5306<br>Fax: (252) 794-5368<br>Email: elections@bertie.nc.gov |
| **Bladen** | Bladen County Board of Elections<br>PO Box 512<br>Elizabethtown, NC 28337<br>Phone: (910) 862-6951<br>Fax: (910) 862-7820<br>Email: elections@bladenco.org |
| **Brunswick** | Brunswick County Board of Elections<br>PO Box 2<br>Bolivia, NC 28422<br>Phone: (910) 253-2620<br>Fax: (910) 253-2618<br>Email: absentee@brunswickcountync.gov |
| **Buncombe** | Buncombe County Board of Elections<br>PO Box 7468<br>Asheville, NC 28802<br>Phone: (828) 250-4200<br>Fax: (828) 250-6262<br>Email: elections@buncombecounty.org |

STATE115124

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| Burke | Burke County Board of Elections<br>PO Box 798<br>Morganton, NC 28680<br>Phone: (828) 764-9010<br>Fax: (828) 764-9011<br>Email: BURKE.boe@burkenc.org | Columbus | Columbus County Board of Elections<br>PO Box 37<br>Whiteville, NC 28472<br>Phone: (910) 640-6609<br>Fax: (910) 640-0916<br>Email: Columbus.BOE@columbusco.org |
| Cabarrus | Cabarrus County Board of Elections<br>PO Box 1315<br>Concord, NC 28026<br>Phone: (704) 920-2860<br>Fax: (704) 920-2831<br>Email: cabarrus.boe@cabarruscounty.us | Craven | Craven County Board of Elections<br>406 CRAVEN STREET<br>New Bern, NC 28560<br>Phone: (252) 636-6610<br>Fax: (252) 636-6687<br>Email: cravenboe@cravencountync.gov |
| Caldwell | Caldwell County Board of Elections<br>PO Box 564<br>Lenoir, NC 28645<br>Phone: (828) 757-1326<br>Fax: (828) 757-1195<br>Email: elections@caldwellcountync.org | Cumberland | Cumberland County Board of Elections<br>227 Fountainhead Lane, Suite 101<br>Fayetteville, NC 28301<br>Phone: (910) 678-7733<br>Fax: (910) 678-7738<br>Email: boardofelections@co.cumberland.nc.us |
| Camden | Camden County Board of Elections<br>PO Box 206<br>Camden, NC 27921<br>Phone: (252) 338-5530<br>Fax: (252) 338-1271<br>Email: ELECTIONS@CAMDENCOUNTYNC.GOV | Currituck | Currituck County Board of Elections<br>PO Box 177<br>Currituck, NC 27929<br>Phone: (252) 232-2525<br>Fax: (252) 232-2427<br>Email: currituck.boe@currituckcountync.gov |
| Carteret | Carteret County Board of Elections<br>1702 Live Oak Street, Suite 200<br>Beaufort, NC 28516<br>Phone: (252) 728-8460<br>Fax: (252) 728-8571<br>Email: boemail@carteretcountync.gov | Dare | Dare County Board of Elections<br>PO Box 1000<br>Manteo, NC 27954<br>Phone: (252) 475-5631<br>Fax: (252) 475-1223<br>Email: elections@darenc.com |
| Caswell | Caswell County Board of Elections<br>PO Box 698<br>Yanceyville, NC 27379<br>Phone: (336) 694-4010<br>Fax: (336) 694-9924<br>Email: help@caswellelections.com | Davidson | Davidson County Board of Elections<br>PO Box 1084<br>Lexington, NC 27293<br>Phone: (336) 242-2190<br>Fax: (336) 242-2199<br>Email: DAVIDSON.boe@davidsoncountync.gov |
| Catawba | Catawba County Board of Elections<br>PO Box 132<br>Newton, NC 28658<br>Phone: (828) 464-2424<br>Fax: (828) 464-9832<br>Email: elections@catawbacountync.gov | Davie | Davie County Board of Elections<br>161 Poplar Street, Suite 102<br>Mocksville, NC 27028<br>Phone: (336) 753-6072<br>Fax: (336) 751-0185<br>Email: tparrish@daviecountync.gov |
| Chatham | Chatham County Board of Elections<br>PO Box 111<br>Pittsboro, NC 27312<br>Phone: (919) 545-8500<br>Fax: (919) 542-6430<br>Email: elections@chathamcountync.gov | Duplin | Duplin County Board of Elections<br>PO Box 975<br>Kenansville, NC 28349<br>Phone: (910) 296-2170<br>Fax: (910) 296-2167<br>Email: dcboe@duplincountync.com |
| Cherokee | Cherokee County Board of Elections<br>40 Peachtree Street<br>Murphy, NC 28906<br>Phone: (828) 837-6670<br>Fax: (828) 837-7998<br>Email: ccboe@cherokeecounty-nc.gov | Durham | Durham County Board of Elections<br>PO Box 868<br>Durham, NC 27702<br>Phone: (919) 560-0700<br>Fax: (919) 560-0688<br>Email: absentee@dconc.gov |
| Chowan | Chowan County Board of Elections<br>PO Box 133<br>Edenton, NC 27932<br>Phone: (252) 482-4010<br>Fax: (252) 482-5920<br>Email: chowan.boelections@chowan.nc.gov | Edgecombe | Edgecombe County Board of Elections<br>PO Box 10<br>Tarboro, NC 27886<br>Phone: (252) 641-7852<br>Fax: (252) 641-1740<br>Email: jerryspruell@edgecombeco.com |
| Clay | Clay County Board of Elections<br>54 Church Street<br>Hayesville, NC 28904<br>Phone: (828) 389-6812<br>Fax: (828) 389-3757<br>Email: rhall@claync.us | Forsyth | Forsyth County Board of Elections<br>201 N. Chestnut Street<br>Winston Salem, NC 27101<br>Phone: (336) 703-2800<br>Fax: (336) 727-2893<br>Email: fcvotes@forsyth.cc |
| Cleveland | Cleveland County Board of Elections<br>PO Box 1299<br>Shelby, NC 28151<br>Phone: (704) 484-4858<br>Fax: (704) 484-4958<br>Email: CLEVELAND.boe@clevelandcounty.com | Franklin | Franklin County Board of Elections<br>PO Box 180<br>Louisburg, NC 27549<br>Phone: (919) 496-3898<br>Fax: (919) 496-7418<br>Email: mchavis@franklincountync.us |

STATE115125

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Gaston** | Gaston County Board of Elections<br>PO Box 1396<br>Gastonia, NC 28053<br>Phone: (704) 852-6005<br>Fax: (704) 852-6011<br>Email: elections@gastongov.com | **Hyde** | Hyde County Board of Elections<br>PO Box 152<br>Swan Quarter, NC 27885<br>Phone: (252) 926-4194<br>Fax: (252) 926-3707<br>Email: elections@hydecountync.gov |
| **Gates** | Gates County Board of Elections<br>PO Box 621<br>Gatesville, NC 27938<br>Phone: (252) 357-1780<br>Fax: (252) 357-4341<br>Email: elections@gatescountync.gov | **Iredell** | Iredell County Board of Elections<br>203 STOCKTON ST.<br>Statesville, NC 28677<br>Phone: (704) 878-3140<br>Fax: (704) 832-2312<br>Email: sjordan@co.iredell.nc.us |
| **Graham** | Graham County Board of Elections<br>PO Box 1239<br>Robbinsville, NC 28771<br>Phone: (828) 479-7969<br>Fax: (828) 479-4264<br>Email: teresa.garland@grahamcounty.org | **Jackson** | Jackson County Board of Elections<br>876 Skyland Drive, Suite 1<br>Sylva, NC 28779<br>Phone: (828) 586-7538<br>Fax: (828) 586-1951<br>Email: LisaLovedahl@jacksonnc.org |
| **Granville** | Granville County Board of Elections<br>PO Box 83<br>Oxford, NC 27565<br>Phone: (919) 693-2515<br>Fax: (919) 690-0245<br>Email: vote@granvillecounty.org | **Johnston** | Johnston County Board of Elections<br>PO Box 1172<br>Smithfield, NC 27577<br>Phone: (919) 989-5095<br>Fax: (919) 989-5142<br>Email: elections@johnstonnc.com |
| **Greene** | Greene County Board of Elections<br>PO Box 583<br>Snow Hill, NC 28580<br>Phone: (252) 747-5921<br>Fax: (252) 747-2426<br>Email: vote@greenecountync.gov | **Jones** | Jones County Board of Elections<br>367-B HWY 58-S<br>Trenton, NC 28585<br>Phone: (252) 448-3921<br>Fax: (252) 448-1040<br>Email: jking@jonescountync.gov |
| **Guilford** | Guilford County Board of Elections<br>PO Box 3427<br>Greensboro, NC 27402<br>Phone: (336) 641-6876<br>Fax: (336) 641-4454<br>Email: absentee@guilfordcountync.gov | **Lee** | Lee County Board of Elections<br>PO Box 1443<br>Sanford, NC 27331<br>Phone: (919) 718-4646<br>Fax: (919) 718-4629<br>Email: elections@leecountync.gov |
| **Halifax** | Halifax County Board of Elections<br>PO Box 101<br>Halifax, NC 27839<br>Phone: (252) 583-4391<br>Fax: (252) 583-1068<br>Email: elections@halifaxnc.com | **Lenoir** | Lenoir County Board of Elections<br>PO Box 3503<br>Kinston, NC 28502<br>Phone: (252) 523-0636<br>Fax: (252) 523-3472<br>Email: shines@co.lenoir.nc.us |
| **Harnett** | Harnett County Board of Elections<br>PO Box 356<br>Lillington, NC 27546<br>Phone: (336) 641-4454<br>Fax: (910) 893-4655<br>Email: harnettboe@harnett.org | **Lincoln** | Lincoln County Board of Elections<br>451 Salem Church Road Lincolnton, NC 28092<br>Lincolnton, NC 28092<br>Phone: (704) 736-8480<br>Fax: (704) 736-8804<br>Email: lincolnboe@lincolncounty.org |
| **Haywood** | Haywood County Board of Elections<br>63 Elmwood Way, Suite A<br>Waynesville, NC 28786<br>Phone: (828) 452-6633<br>Fax: (828) 452-6750<br>Email: elections@haywoodcountync.gov | **Macon** | Macon County Board of Elections<br>5 WEST MAIN ST<br>Franklin, NC 28734<br>Phone: (828) 349-2034 x2035<br>Fax: (828) 349-2557<br>Email: mthibault@maconnc.org |
| **Henderson** | Henderson County Board of Elections<br>PO Box 2090<br>Hendersonville, NC 28793<br>Phone: (828) 697-4970<br>Fax: (828) 697-4590<br>Email: hcelections@hendersoncountync.gov | **Madison** | Madison County Board of Elections<br>PO Box 142<br>Marshall, NC 28753<br>Phone: (828) 649-3731<br>Fax: (828) 649-0187<br>Email: MADISON.boe@madisoncountync.gov |
| **Hertford** | Hertford County Board of Elections<br>PO Box 355<br>Ahoskie, NC 27910<br>Phone: (252) 358-7812<br>Fax: (252) 513-8454<br>Email: elections@hertfordcountync.gov | **Martin** | Martin County Board of Elections<br>PO Box 801<br>Williamston, NC 27892<br>Phone: (252) 789-4317<br>Fax: (252) 789-4319<br>Email: vote@martincountyncgov.com |
| **Hoke** | Hoke County Board of Elections<br>PO Box 1565<br>Raeford, NC 28376<br>Phone: (910) 875-8751 x1550<br>Fax: (910) 875-9084<br>Email: elections@hokecounty.org | **McDowell** | McDowell County Board of Elections<br>PO Box 1509<br>Marion, NC 28752<br>Phone: (828) 659-0834<br>Fax: (828) 659-3294<br>Email: elections@mcdowellgov.com |

STATE115126

| County | Mailing Address |
|--------|-----------------|
| Mecklenburg | Mecklenburg County Board of Elections<br>PO Box 31788<br>Charlotte, NC 28231<br>Phone: (704) 336-2133<br>Fax: (704) 343-0537<br>Email:<br>kristin.mavromatis@mecklenburgcountync.gov<br>Email: Edwin.terrell@mecklenburgcountync.gov |
| Mitchell | Mitchell County Board of Elections<br>11 N. Mitchell Avenue, Room 108<br>Bakersville, NC 28705<br>Phone: (828) 688-3101<br>Fax: (828) 688-1651<br>Email: roycene.jones@mitchellcounty.org |
| Montgomery | Montgomery County Board of Elections<br>PO Box 607<br>Troy, NC 27371<br>Phone: (910) 572-2024<br>Fax: (910) 576-2118<br>Email: rhonda.johnson@montgomerycountync.com |
| Moore | Moore County Board of Elections<br>PO Box 787<br>Carthage, NC 28327<br>Phone: (910) 947-3868<br>Fax: (910) 947-2389<br>Email: elections@moorecountync.gov |
| Nash | Nash County Board of Elections<br>PO Box 305<br>Nashville, NC 27856<br>Phone: (252) 459-1350<br>Fax: (252) 459-1371<br>Email: info@nashcountyboe.com |
| New Hanover | New Hanover County Board of Elections<br>1241A Military Cutoff Road<br>Wilmington, NC 28405<br>Phone: (910) 798-7330<br>Fax: (910) 798-7295<br>Email: newhanover.boe@nhcgov.com |
| Northampton | Northampton County Board of Elections<br>PO Box 603<br>Jackson, NC 27845<br>Phone: (252) 534-5681 x679<br>Fax: (252) 534-1202<br>Email: elections@nhcnc.net |
| Onslow | Onslow County Board of Elections<br>246 Georgetown Road<br>Jacksonville, NC 28540<br>Phone: (910) 455-4484<br>Fax: (910) 455-1390<br>Email: onslowBOE@onslowcountync.gov |
| Orange | Orange County Board of Elections<br>PO Box 220<br>Hillsborough, NC 27278<br>Phone: (919) 245-2350<br>Fax: (919) 644-3318<br>Email: vote@orangecountync.gov |
| Pamlico | Pamlico County Board of Elections<br>PO Box 464<br>Bayboro, NC 28515<br>Phone: (252) 745-4821<br>Fax: (252) 745-4114<br>Email: pamlico.boe@pamlicocounty.org |
| Pasquotank | Pasquotank County Board of Elections<br>PO Box 1797<br>Elizabeth City, NC 27906<br>Phone: (252) 335-1739<br>Fax: (252) 331-2560<br>Email: boe@co.pasquotank.nc.us |

| County | Mailing Address |
|--------|-----------------|
| Pender | Pender County Board of Elections<br>PO Box 1232<br>Burgaw, NC 28425<br>Phone: (910) 259-1220<br>Fax: (910) 259-1269<br>Email: PenderBOE@pendercountync.gov |
| Perquimans | Perquimans County Board of Elections<br>PO Box 336<br>Hertford, NC 27944<br>Phone: (252) 426-5598<br>Fax: (252) 426-5068<br>Email:<br>perquimanscountyboe@perquimanscountync.gov |
| Person | Person County Board of Election<br>331 South Morgan Street<br>Roxboro, NC 27573<br>Phone: (336) 597-1727<br>Fax: (336) 598-0300<br>Email: personboe@personcountync.gov |
| Pitt | Pitt County Board of Elections<br>PO Box 56<br>Greenville, NC 27835<br>Phone: (252) 902-3300<br>Fax: (252) 830-1157<br>Email: pittelections@pittcountync.gov |
| Polk | Polk County Board of Elections<br>PO Box 253<br>Columbus, NC 28722<br>Phone: (828) 894-8181<br>Fax: (828) 894-3565<br>Email: polkboe@polknc.org |
| Randolph | Randolph County Board of Elections<br>1457 N. Fayetteville St.<br>Asheboro, NC 27203<br>Phone: (336) 318-6900<br>Fax: (336) 318-6903<br>Email: elections@randolphcountync.gov |
| Richmond | Richmond County Board of Elections<br>PO Box 1843<br>Rockingham, NC 28380<br>Phone: (910) 997-8253<br>Fax: (910) 417-4900<br>Email: richmond.boe@richmondnc.com |
| Robeson | Robeson County Board of Elections<br>PO Box 2159<br>Lumberton, NC 28359<br>Phone: (910) 671-3080<br>Fax: (910) 671-3089<br>Email: robeson.boe@co.robeson.nc.us |
| Rockingham | Rockingham County Board of Elections<br>PO Box 22<br>Wentworth, NC 27375<br>Phone: (336) 342-8107<br>Fax: (336) 342-8228<br>Email: rcboe@co.rockingham.nc.us |
| Rowan | Rowan County Board of Elections<br>1935 Jake Alexander Blvd. W., Suite D10<br>Salisbury, NC 28147<br>Phone: (704) 216-8140<br>Fax: (704) 216-8145<br>Email: rowan.boe@rowancountync.gov |
| Rutherford | Rutherford County Board of Elections<br>PO Box 927<br>Rutherfordton, NC 28139<br>Phone: (828) 287-6030<br>Fax: (828) 287-6140<br>Email: elections@rutherfordcountync.gov |
| Sampson | Sampson County Board of Elections<br>120 County Complex Road, Suite 110<br>Clinton, NC 28328<br>Phone: (910) 592-5796<br>Fax: (910) 592-3918<br>Email: nrayner@sampsonnc.com |

STATE115127

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Scotland** | Scotland County Board of Elections<br>231 East Cronly Street, Suite 305<br>Laurinburg, NC 28352<br>Phone: (910) 277-2595<br>Fax: (910) 277-2928<br>Email: Elections@scotlandcounty.org | **Wake** | Wake County Board of Elections<br>PO Box 695<br>Raleigh, NC 27602<br>Phone: 919-404-4040<br>Fax: (919) 231-5737<br>Email: absentee@wakegov.com |
| **Stanly** | Stanly County Board of Elections<br>PO Box 1309<br>Albemarle, NC 28002<br>Phone: (704) 986-3647<br>Fax: (704) 986-3798<br>Email: elections@stanlycountync.gov | **Warren** | Warren County Board of Elections<br>PO Box 803<br>Warrenton, NC 27589<br>Phone: (252) 257-2114<br>Fax: (252) 257-5232<br>Email: DebbieFormyduval@warrencountync.gov |
| **Stokes** | Stokes County Board of Elections<br>PO Box 34<br>Danbury, NC 27016<br>Phone: (336) 593-2409<br>Fax: (336) 593-4022<br>Email: vote@co.stokes.nc.us | **Washington** | Washington County Board of Elections<br>PO Box 1007<br>Plymouth, NC 27962<br>Phone: (252) 793-6017<br>Fax: (252) 793-5801<br>Email: elections@washconc.org |
| **Surry** | Surry County Board of Elections<br>PO Box 372<br>Dobson, NC 27017<br>Phone: (336) 401-8225<br>Fax: (336) 401-8228<br>Email: elections@co.surry.nc.us | **Watauga** | Watauga County Board of Elections<br>PO Box 528<br>Boone, NC 28607<br>Phone: (828) 265-8061<br>Fax: (828) 265-8068<br>Email: matthew.snyder@watgov.org |
| **Swain** | Swain County Board of Elections<br>PO Box 133<br>Bryson City, NC 28713<br>Phone: (828) 488-6177<br>Fax: (828) 488-6463<br>Email: jallman@swaincountync.gov | **Wayne** | Wayne County Board of Elections<br>309 E. Chestnut Street<br>Goldsboro, NC 27530<br>Phone: (919) 731-1411<br>Fax: (919) 731-1409<br>Email: elections@waynegov.com |
| **Transylvania** | Transylvania County Board of Elections<br>PO Box 868<br>Brevard, NC 28712<br>Phone: (828) 884-3114<br>Fax: (828) 884-8682<br>Email: Transylvania.boe@tconc.org | **Wilkes** | Wilkes County Board of Elections<br>110 North Street, Room 315<br>Wilkesboro, NC 28697<br>Phone: (336) 651-7339<br>Fax: (336) 651-7560<br>Email: elections@wilkescounty.net |
| **Tyrrell** | Tyrrell County Board of Elections<br>PO Box 449<br>Columbia, NC 27925<br>Phone: (252) 796-0775<br>Fax: (252) 796-5375<br>Email: elections@tyrrellcounty.net | **Wilson** | Wilson County Board of Elections<br>PO Box 2121<br>Wilson, NC 27894<br>Phone: (252) 399-2836<br>Fax: (252) 399-2838<br>Email: elections@wilson-co.com |
| **Union** | Union County Board of Elections<br>PO Box 1106<br>Monroe, NC 28111<br>Phone: (704) 283-3809<br>Fax: (704) 282-1083<br>Email: union.boe@unioncountync.gov | **Yadkin** | Yadkin County Board of Elections<br>PO Box 877<br>Yadkinville, NC 27055<br>Phone: (336) 849-7907<br>Fax: (336) 849-7927<br>Email: YCBOE@yadkincountync.gov |
| **Vance** | Vance County Board of Elections<br>300 S. Garnett Street, Suite C<br>Henderson, NC 27536<br>Phone: (252) 492-3730<br>Fax: (252) 430-7370<br>Email: mvaughan@vancecounty.org | **Yancey** | Yancey County Board of Elections<br>PO Box 763<br>Burnsville, NC 28714<br>Phone: (828) 682-3950<br>Fax: (828) 682-2209<br>Email: boe@yanceycountync.gov |

STATE115128

This page intentionally left blank.

STATE115129

# Pennsylvania

www.dos.pa.gov

## Federal Election Deadlines

| | General Election<br>November 8, 2022 |
|---|---|
| Registration | **By Mail: Received by**<br>October 24, 2022<br>**By Email or Fax: Received by**<br>11:59 PM, October 24, 2022 |
| Ballot Request | **Received by**<br>November 7, 2022 |
| Ballot Return | **Signed by***<br>11:59 PM, November 7, 2022 |

*Ballot Return: Ballots must still be received by 5:00 PM on the 7th day after the election.

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| | |
|---|---|
| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |

STATE115136

| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | No. |
|---|---|
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://www.pavoterservices.pa.gov/ |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/pennsylvania |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a Pennsylvania-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Pennsylvania-issued ID number." |
|---|---|
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online. If you want your election materials sent to a different address or have a forwarding address, |

use the forwarding address space to provide this information.

| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, you must provide your email address. |
|---|---|
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online".<br><br>B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for special or general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail, email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission

STATE115137

Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

The state absentee ballot **must be mailed** to your election official. The address of your election official can be found in the "Local Election Offices" section. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

If you are a **Uniformed Service member or eligible family member**, you can use the Federal Write-In Absentee Ballot (FWAB) to register to vote and vote in all elections for federal, state and local offices, including ballot measures. If you are using the FWAB to register to vote, it **must** be received by the registration deadline listed in the "Federal Election Deadlines" chart.

If you are an **overseas citizen** and have already requested an absentee ballot, you may use the FWAB to vote in all elections for federal, state and local offices, including ballot measures. If not, you can only use the FWAB to vote in elections for federal office.

## Complete the following sections of the FWAB's voter information page

| | |
|---|---|
| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide **either** a Pennsylvania-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or Pennsylvania-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. If you want to receive your absentee ballot by email or online, you must provide your email address. |
| Section 5 | A. Check "Yes" if you would like to register to vote and/or request an absentee ballot, otherwise check "No" (Uniformed Service members only). |
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | C. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for special or general elections. |

**Pennsylvania**

| Section 6 | Provide any information that may assist the election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

### How and where to submit your FWAB

The FWAB **must be mailed** to your election official. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FWAB (Hardcopy Instructions):** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official.

**Mail your FWAB (Printed PDF Instructions):** If you are using a printed version of the FWAB you will need **two envelopes for your ballot to be accepted by Pennsylvania**. One envelope must be marked "Official Ballot" and the other envelope will be used as the mailing envelope. Place and seal the completed "Official Backup Ballot" into the envelope marked "Official Ballot". Then place that envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official.

*Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

## Local election offices for county

| County | Mailing Address |
|---|---|
| **Adams** | Adams County Board of Elections<br>Adams County Courthouse<br>Gettysburg, PA 17325-2313<br>Phone: (717) 337-9832<br>Fax: (717) 337-9830<br>Email: acrouse@adamscounty.us |
| **Allegheny** | Allegheny County Board of Elections<br>542 Forbes Ave, Ste 604<br>Pittsburgh, PA 15219-2953<br>Phone: (412) 350-4500<br>Fax: (412) 350-5697<br>Email: Military/OverseasVoting@AlleghenyCounty.us |
| **Armstrong** | Armstrong County Board of Elections<br>450 E Market St, Ste 207<br>Kittanning, PA 16201-1429<br>Phone: (724) 548-3222<br>Fax: (724) 548-3714<br>Email: aspoole@co.armstrong.pa.us |
| **Beaver** | Beaver County Board of Elections<br>810 Third St.<br>Beaver, PA 15009-2139<br>Phone: (724) 770-4440<br>Fax: (724) 728-9318<br>Email: csisk@beavercountypa.gov |
| **Bedford** | Bedford County Board of Elections<br>200 S Juliana St<br>Bedford, PA 15522-0166<br>Phone: (814) 623-4807<br>Fax: (814) 623-0991<br>Email: dbrown@bedfordcountypa.org |
| **Berks** | Berks County Board of Elections<br>633 Court St., 1st Floor<br>Reading, PA 19601-4302<br>Phone: (610) 478-6490<br>Fax: (610) 478-6218<br>Email: elections@countyofberks.com |
| **Blair** | Blair County Board of Elections<br>297 Loop Rd.<br>Hollidaysburg, PA 16648-9978<br>Phone: (814) 693-3150<br>Fax: (814) 693-3144<br>Email: sseymour@blairco.org |
| **Bradford** | Bradford County Board of Elections<br>6 Court St, Ste 2<br>Towanda, PA 18848-1878<br>Phone: (570) 265-1717<br>Fax: (570) 265-1738<br>Email: smithkorsr@bradfordco.org |
| **Bucks** | Bucks County Board of Elections<br>55 E. Court St.<br>Doylestown, PA 18901-4318<br>Phone: (215) 348-6154<br>Fax: (215) 348-6387<br>Email: cmmaloney@buckscounty.org |
| **Butler** | Butler County Board of Elections<br>124 West Diamond St. P.O. Box 1208<br>Butler, PA 16001<br>Phone: (724) 284-5308<br>Fax: (724) 284-5311<br>Email: asheasle@co.butler.pa.us |
| **Cambria** | Cambria County Board of Elections<br>200 S. Center St<br>Ebensburg, PA 15931-1947<br>Phone: (814) 472-1464<br>Fax: (814) 472-9642<br>Email: mdillon@co.cambria.pa.us |

**STATE115139**

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Cameron** | Cameron County Board of Elections<br>20 E. 5th St<br>Emporium, PA 15834-1469<br>Phone: (814) 486-9321<br>Fax: (814) 486-3176<br>Email: elections@cameroncountypa.com | **Elk** | Elk County Board of Elections<br>300 Center St P.O. Box 448<br>Ridgway, PA 15853-0448<br>Phone: (814) 776-5337<br>Fax: (814) 776-5362<br>Email: kfrey@countyofelkpa.com |
| **Carbon** | Carbon County Board of Elections<br>76 Susquehanna St. P.O. Box 170<br>Jim Thorpe, PA 18229-0170<br>Phone: (570) 325-4801<br>Fax: (570) 732-0040<br>Email: lisadart@carboncounty.net | **Erie** | Erie County Board of Elections<br>140 W. 6th St, Rm 112<br>Erie, PA 16501-1029<br>Phone: (814) 451-6276<br>Fax: (814) 451-7007<br>Email: tfernandez@eriecountypa.gov |
| **Centre** | Centre County Board of Elections<br>420 Holmes St<br>Bellefonte, PA 16823-1488<br>Phone: (814) 355-6703<br>Fax: (814) 355-6857<br>Email: elections@centrecountypa.gov | **Fayette** | Fayette County Board of Elections<br>Fayette County Public Service Building 22 E. Main St.<br>Uniontown, PA 15401-3412<br>Phone: (724) 430-1289<br>Fax: (724) 430-4948<br>Email: mbkuznik@fayettepa.org |
| **Chester** | Chester County Board of Elections<br>601 Westtown Road, Ste 150 P.O. Box 2747<br>West Chester, PA 19380-0990<br>Phone: (610) 344-6410<br>Fax: (610) 344-5682<br>Email: ccfpca@chesco.org | **Forest** | Forest County Board of Elections<br>526 Elm St. - Unit #3<br>Tionesta, PA 16353-9724<br>Phone: (814) 755-3537<br>Fax: (814) 755-8837<br>Email: jahitchcock@co.forest.pa.us |
| **Clarion** | Clarion County Board of Elections<br>330 Main St<br>Clarion, PA 16214-1093<br>Phone: (814) 226-4000<br>Fax: (814) 226-8069<br>Email: ccallihan@co.clarion.pa.us | **Franklin** | Franklin County Board of Elections<br>272 North Second Street<br>Chambersburg, PA 17201-1824<br>Phone: (717) 261-3886<br>Fax: (717) 261-3131<br>Email: voter@franklincountypa.gov |
| **Clearfield** | Clearfield County Board of Elections<br>212 E. Locust St., Ste 106<br>Clearfield, PA 16830-2448<br>Phone: (814) 765-2642 x5053<br>Fax: (814) 765-2642<br>Email: elections@clearfieldco.org | **Fulton** | Fulton County Board of Elections<br>116 W. Market St, Ste 205<br>McConnelsburg, PA 17233-1018<br>Phone: (717) 485-6864<br>Fax: (717) 485-9411<br>Email: electionsdirector@co.fulton.pa.us |
| **Clinton** | Clinton County Board of Elections<br>2 Piper Way<br>Suite 309, PA 17745-0928<br>Phone: (570) 893-4019<br>Fax: (570) 893-4041<br>Email: mboileau@clintoncountypa.com | **Greene** | Greene County Board of Elections<br>County Office Building 93 E. High St., Rm 102<br>Waynesburg, PA 15370-1839<br>Phone: (724) 852-5304<br>Fax: (724) 852-5320<br>Email: jsnyder@co.greene.pa.us |
| **Columbia** | Columbia County Board of Elections<br>11 W. Main St., P.O. Box 380<br>Bloomsburg, PA 17815-0380<br>Phone: (570) 389-5640<br>Fax: (570) 784-0257<br>Email: mrepasky@columbiapa.org | **Huntingdon** | Huntingdon County Board of Elections<br>233 Penn St<br>Huntingdon, PA 16652-1486<br>Phone: (814) 643-3091 x205<br>Fax: (814) 643-8152<br>Email: tthompson@huntingdoncounty.net |
| **Crawford** | Crawford County Board of Elections<br>Crawford County Courthouse 903 Diamond Park<br>Meadville, PA 16335-2678<br>Phone: (814) 333-7307<br>Fax: (814) 337-0457<br>Email: jmcfarland@co.crawford.pa.us | **Indiana** | Indiana County Board of Elections<br>825 Philadelphia St<br>Indiana, PA 15701-3934<br>Phone: (724) 465-3852<br>Fax: (724) 465-2935<br>Email: dstreams@indianacountypa.gov |
| **Cumberland** | Cumberland County Board of Elections<br>1601 Ritner Highway<br>Carlisle, PA 17013<br>Phone: (717) 240-6385<br>Fax: (717) 240-7759<br>Email: bureauofelections@ccpa.net | **Jefferson** | Jefferson County Board of Elections<br>155 Main St, 2nd Fl<br>Brookville, PA 15825-1269<br>Phone: (814) 849-1603<br>Fax: (814) 849-4084<br>Email: klupone@jeffersoncountypa.com |
| **Dauphin** | Dauphin County Board of Elections<br>P.O. Box 1295<br>Harrisburg, PA 17108-1295<br>Phone: (717) 780-6360<br>Fax: (717) 780-6478<br>Email: election@dauphinc.org | **Juniata** | Juniata County Board of Elections<br>Juniata County Courthouse 1 North Main Streets<br>P.O. Box 68<br>Mifflintown, PA 17059<br>Phone: (717) 436-7706<br>Fax: (717) 436-7756<br>Email: eweyrich@juniataco.org |
| **Delaware** | Delaware County Bureau of Elections<br>2501 Seaport Drive, Suite 120<br>Chester, PA 19013<br>Phone: (610) 891-4673<br>Fax: (610) 892-0641<br>Email: UOCAVA@co.delaware.pa.us | **Lackawanna** | Lackawanna County Board of Elections<br>123 Wyoming Avenue, 2nd Floor<br>Scranton, PA 18503<br>Phone: (570) 963-6737<br>Fax: (570) 963-6691<br>Email: hopkinse@lackawannacounty.org |

STATE115140

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Lancaster** | Lancaster County Board of Elections<br>150 N. Queen St, Ste 117<br>Lancaster, PA 17603-3562<br>Phone: (717) 299-8293<br>Fax: (717) 209-3076<br>Email: voter@co.lancaster.pa.us | **Montour** | Montour County Board of Elections<br>Montour County Courthouse 435 E Front St<br>Danville, PA 17821-1999<br>Phone: (570) 271-3000<br>Fax: (570) 271-3088<br>Email: hbrandon@montourco.org |
| **Lawrence** | Lawrence County Board of Elections<br>Lawrence County Government Center, 430 Court Street<br>New Castle, PA 16101-3593<br>Phone: (724) 656-2161<br>Fax: (724) 656-1987<br>Email: lcvote@co.lawrence.pa.us | **Northampton** | Northampton County Board of Elections<br>669 Washington St., Room 1211<br>Easton, PA 18042-4101<br>Phone: (610) 829-6260<br>Fax: (610) 559-3736<br>Email: election@northamptoncounty.org |
| **Lebanon** | Lebanon County Board of Elections<br>Municipal Building, Rm 209 400 S. 8th St.<br>Lebanon, PA 17042-6794<br>Phone: (717) 228-4428<br>Fax: (717) 675-2669<br>Email: voter@lebcnty.org | **Northumberland** | Northumberland County Board of Elections<br>320 N. Second St. Ste 1<br>Sunbury, PA 17801-2360<br>Phone: (570) 988-4208<br>Fax: (570) 988-4306<br>Email: nathan.savidge@norrycopa.net<br>Email: Lindsay.phillips@norrycopa.net |
| **Lehigh** | Lehigh County Board of Elections<br>Lehigh County Government Center 17 S. 7th St.<br>Allentown, PA 18101-2401<br>Phone: (610) 782-3194<br>Fax: (610) 770-3845<br>Email: timothybenyo@lehighcounty.org | **Perry** | Perry County Board of Elections<br>25 W Main St<br>New Bloomfield, PA 17068-0037<br>Phone: (717) 582-2131 x4110<br>Fax: (717) 582-5162<br>Email: bdelancey@perryco.org |
| **Luzerne** | Luzerne County Board of Elections<br>20 N. Pennsylvania Ave, Ste 207<br>Wilkes-Barre, PA 18701-3505<br>Phone: (570) 825-1715<br>Fax: (570) 820-6399<br>Email: elections@luzernecounty.org | **Philadelphia** | Philadelphia County Board of Elections<br>City Hall, Room 142<br>Philadelphia, PA 19107<br>Phone: (215) 686-3469<br>Fax: (215) 686-3398<br>Email: phillyelection@phila.gov |
| **Lycoming** | Lycoming County Board of Elections<br>48 W. Third St<br>Williamsport, PA 17701-0536<br>Phone: (570) 327-2267<br>Fax: (570) 320-2117<br>Email: flehman@lyco.org | **Pike** | Pike County Board of Elections<br>506 Broad St<br>Milford, PA 18337-1535<br>Phone: (570) 296-3426<br>Fax: (570) 296-6055<br>Email: nmanzoni@pikepa.org |
| **McKean** | McKean County Board of Elections<br>McKean County Courthouse 500 W. Main St.<br>Smethport, PA 16749-1149<br>Phone: (814) 887-3203<br>Fax: (814) 887-2242<br>Email: lmpratt@mckeancountypa.org | **Potter** | Potter County Board of Elections<br>1 N Main St., Ste. 204<br>Coudersport, PA 16915-1690<br>Phone: (814) 274-8467<br>Fax: (814) 274-7395<br>Email: slewis@pottercountypa.net |
| **Mercer** | Mercer County Board of Elections<br>5 Courthouse<br>Mercer, PA 16137-1227<br>Phone: (724) 662-7542<br>Fax: (724) 662-1530<br>Email: thall@mcc.co.mercer.pa.us | **Schuylkill** | Schuylkill County Board of Elections<br>420 N. Center St<br>Pottsville, PA 17901<br>Phone: (570) 628-1467<br>Fax: (570) 628-1466<br>Email: agricoski1@co.schuylkill.pa.us |
| **Mifflin** | Mifflin County Board of Elections<br>Mifflin County Courthouse 20 N. Wayne St.<br>Lewistown, PA 17044-1770<br>Phone: (717) 248-6571<br>Fax: (717) 242-5455<br>Email: VoterRegistration@MifflinCO.org | **Snyder** | Snyder County Board of Elections<br>9 W Market St P.O. Box 217<br>Middleburg, PA 17842-0217<br>Phone: (570) 837-4286<br>Fax: (570) 837-4282<br>Email: sguyer@snydercounty.org |
| **Monroe** | Monroe County Board of Elections<br>Monroe County Administration Offices One Quaker Plaza, Rm 105<br>Stroudsburg, PA 18360-2170<br>Phone: (570) 517-3165<br>Fax: (570) 517-3856<br>Email: smay-silfee@monroecountypa.gov | **Somerset** | Somerset County Board of Elections<br>300 N. Center Ave, Ste 340<br>Somerset, PA 15501-1472<br>Phone: (814) 445-1549<br>Fax: (814) 445-7991<br>Email: voter@co.somerset.pa.us |
| **Montgomery** | Montgomery County Board of Elections<br>PO Box 311<br>Norristown, PA 19404-0311<br>Phone: (610) 278-3275<br>Fax: (610) 292-4527<br>Email: ksisler@montcopa.org | **Sullivan** | Sullivan County Board of Elections<br>245 Muncy St. P.O. Box 157<br>Laporte, PA 18626-0157<br>Phone: (570) 946-5201<br>Fax: (570) 946-4421<br>Email: elections@sullivancounty-pa.us |

STATE115141

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Susquehanna** | Susquehanna County Board of Elections<br>Susquehanna County Courthouse, 105 Maple St.,<br>P.O. Box 218 31 Lake Ave.<br>Montrose, PA 18801-0218<br>Phone: (570) 278-4600<br>Fax: (570) 278-9268<br>Email: vrs@susqco.com | **Washington** | Washington County Board of Elections<br>100 W. Beau St, Suite 206<br>Washington, PA 15301-4432<br>Phone: (724) 228-6750<br>Fax: (724) 250-6422<br>Email: melanie.ostrander@co.washington.pa.us |
| **Tioga** | Tioga County Board of Elections<br>118 Main St<br>Wellsboro, PA 16901-0589<br>Phone: (570) 723-8230<br>Fax: (570) 724-9124<br>Email: pwhipple@tiogacountypa.us | **Wayne** | Wayne County Board of Elections<br>Wayne County Courthouse Annex 925 Court St.<br>Honesdale, PA 18431-1996<br>Phone: (570) 253-5978<br>Fax: (570) 253-5432<br>Email: cfurman@waynecountypa.gov |
| **Union** | Union County Board of Elections<br>155 N. 15th St<br>Lewisburg, PA 17837-8822<br>Phone: (570) 524-8681<br>Fax: (570) 524-8627<br>Email: gradel@unionco.org | **Westmoreland** | Westmoreland County Board of Elections<br>2 N. Main St, Ste 109<br>Greensburg, PA 15601-2405<br>Phone: (724) 830-3150<br>Fax: (724) 830-3152<br>Email: election@co.westmoreland.pa.us |
| **Venango** | Venango County Board of Elections<br>Courthouse Annex P.O. Box 831 1174 Elk St.<br>Franklin, PA 16323-0831<br>Phone: (814) 437-9514<br>Fax: (814) 432-4741<br>Email: mbailey@co.venango.pa.us | **Wyoming** | Wyoming County Board of Elections<br>Wyoming County Courthouse Annex 1 Courthouse Sq<br>Tunkhannock, PA 18657-1216<br>Phone: (570) 996-2224<br>Fax: (570) 836-5797<br>Email: fkellet@wycopa.org |
| **Warren** | Warren County Board of Elections<br>Warren County Courthouse 204 Fourth Ave.<br>Warren, PA 16365-2399<br>Phone: (814) 728-3406<br>Fax: (814) 728-3419<br>Email: lzuck@warren-county.net | **York** | York County Board of Elections<br>28 E Market St<br>York, PA 17401-1579<br>Phone: (717) 771-9604<br>Fax: (717) 771-4387<br>Email: evr@yorkcountypa.gov |

STATE115142

This page intentionally left blank.

STATE115143

# South Dakota

sdsos.gov/elections-voting/default.aspx

## Federal Election Deadlines

|  | **General Election**<br>November 8, 2022 |
|---|---|
| **Registration** | **Received by**<br>5 PM, October 24, 2022 |
| **Ballot Request** | **Received by**<br>5 PM, November 7, 2022 |
| **Ballot Return** | **Received by**<br>7 PM, November 8, 2022 |

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
|---|---|
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |
| What is a runoff election? | A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office. |

STATE115144

| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | A U.S. citizen who has never resided in the U.S., and has a parent or spouse who was last domiciled in South Dakota, is eligible to vote in South Dakota as long as he or she has not registered or voted in another state. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | Yes. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://vip.sdsos.gov/VIPLogin.aspx |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/south-dakota |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| Section 1 | Select the category that best describes you. |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| | Your date of birth is required. |
| | You must provide your South Dakota driver's license number **or** South Dakota-issued ID number **or** the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: "I do not have a Social Security Number, South Dakota driver's license, or South Dakota-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want |

your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information.

| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email, you must provide your email address. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

If you are using the FPCA to **register to vote**, you **must mail** the form.

If you are already registered and are using the FPCA to **request** an absentee ballot, you can **mail, email** or **fax** your signed form to your election official. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

STATE115145

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your local election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet". Email this package directly to your local election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your local election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your local election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your local election official. Your local election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

The state absentee ballot **must be mailed** to your local election official. The address of your local election official can be found in the "Local Election Offices" section. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in federal elections.

## Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that best describes you. |
| --- | --- |
| | Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area. |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. |
| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.** |
| | B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail" or "email or online". |
| | C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the local election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

The FWAB **must be mailed** to your local election official. Addresses can be found in the "Local Election Offices" section or online at FVAP.gov.

STATE115146

**South Dakota**

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your local election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for county

| County | Mailing Address |
|---|---|
| Aurora | Aurora County Auditor<br>P.O. Box 397<br>Plankinton, SD 57368-0397<br>Phone: (605) 942-7752<br>Fax: (605) 942-7746<br>Email: susan.urban@state.sd.us |
| Beadle | Beadle County Auditor<br>450 3rd St SW, Ste 201<br>Huron, SD 57350-1868<br>Phone: (605) 353-8400<br>Fax: (605) 353-8402<br>Email: auditor@beadlesd.org |
| Bennett | Bennett County Auditor<br>P.O. Box 460<br>Martin, SD 57551-0460<br>Phone: (605) 685-6931<br>Fax: (605) 685-6311<br>Email: bcauditor@gwtc.net |
| Bon Homme | Bon Homme County Auditor<br>P.O. Box 605<br>Tyndall, SD 57066-0605<br>Phone: (605) 589-4212<br>Fax: (605) 589-4202<br>Email: tamara.brunken@state.sd.us |
| Brookings | Brookings County Auditor<br>520 3rd St, Ste 100<br>Brookings, SD 57006-2024<br>Phone: (605) 696-8250<br>Fax: (605) 696-8259<br>Email: lschultz@brookingscountysd.gov |
| Brown | Brown County Auditor<br>25 Market St, Ste 1<br>Aberdeen, SD 57401-4293<br>Phone: (605) 626-7110<br>Fax: (605) 626-4010<br>Email: Cathy.McNickle@browncounty.sd.gov |
| Brule | Brule County Auditor<br>300 S Courtland, Ste 103<br>Chamberlain, SD 57325-1599<br>Phone: (605) 234-4430<br>Fax: (605) 234-4430<br>Email: brulaud@midstatesd.net |
| Buffalo | Buffalo County Auditor<br>P.O. Box 146<br>Gann Valley, SD 57341-0146<br>Phone: (605) 293-3217<br>Fax: (605) 293-3240<br>Email: buffalo.aud@midstatesd.net |
| Butte | Butte County Auditor<br>117 5th Avenue<br>Belle Fourche, SD 57717-1139<br>Phone: (605) 892-4485<br>Fax: (605) 723-0057<br>Email: auditor@buttesd.org |
| Campbell | Campbell County Auditor<br>P.O. Box 37<br>Mound City, SD 57646-0037<br>Phone: (605) 955-3366<br>Fax: (605) 955-3308<br>Email: campbellcommission@yahoo.com |
| Charles Mix | Charles Mix County Auditor<br>P.O. Box 490<br>Lake Andes, SD 57356-0490<br>Phone: (605) 487-7131<br>Fax: (605) 487-7221<br>Email: ddavenport@charlesmix.org |

STATE115147

**South Dakota**

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Clark** | Clark County Auditor<br>P.O. Box 294<br>Clark, SD 57225-0294<br>Phone: (605) 532-5921<br>Fax: (605) 532-5931<br>Email: christine.tarbox@state.sd.us | **Faulk** | Faulk County Auditor<br>P.O. Box 309<br>Faulkton, SD 57438-0309<br>Phone: (605) 598-6224<br>Fax: (605) 598-6680<br>Email: faulkaud@venturecomm.net |
| **Clay** | Clay County Auditor<br>211 W Main St, Ste 200<br>Vermillion, SD 57069-2039<br>Phone: (605) 677-7120<br>Fax: (605) 677-7109<br>Email: carri.crum@claycountysd.org | **Grant** | Grant County Auditor<br>210 E Fifth Ave<br>Milbank, SD 57252-2499<br>Phone: (605) 432-6711<br>Fax: (605) 432-9004<br>Email: karen.layher@grantcountysd.us |
| **Codington** | Codington County Auditor<br>14 First Ave SE<br>Watertown, SD 57201-3611<br>Phone: (605) 882-6297<br>Fax: (605) 882-6288<br>Email: cbrugman@codington.org | **Gregory** | Gregory County Auditor<br>P.O. Box 437<br>Burke, SD 57523-0413<br>Phone: (605) 775-2664<br>Fax: (605) 775-2596<br>Email: Julie.Bartling@state.sd.us |
| **Corson** | Corson County Auditor<br>P.O. Box 255<br>McIntosh, SD 57641-0255<br>Phone: (605) 273-4229<br>Fax: (605) 273-4233<br>Email: corsonauditor@sdplains.com | **Haakon** | Haakon County Auditor<br>P.O. Box 698<br>Philip, SD 57567-0698<br>Phone: (605) 859-2800<br>Fax: (605) 859-2801<br>Email: haakon@gwtc.net |
| **Custer** | Custer County Auditor<br>420 Mt Rushmore Rd<br>Custer, SD 57730-1934<br>Phone: (605) 673-8173<br>Fax: (605) 673-8121<br>Email: countyauditors@custercountysd.com | **Hamlin** | Hamlin County Auditor<br>P.O. Box 237<br>Hayti, SD 57241-0237<br>Phone: (605) 783-3201<br>Fax: (605) 783-3201<br>Email: dixie.opdahl@state.sd.us |
| **Davison** | Davison County Auditor<br>200 E 4th St<br>Mitchell, SD 57301-2692<br>Phone: (605) 995-8608<br>Fax: (605) 995-8618<br>Email: auditor@davisoncounty.org | **Hand** | Hand County Auditor<br>415 W First Ave<br>Miller, SD 57362-1346<br>Phone: (605) 853-2182<br>Fax: (605) 853-2769<br>Email: auditor@handcountysd.org |
| **Day** | Day County Auditor<br>711 W 1st St<br>Webster, SD 57274-1364<br>Phone: (605) 345-9500<br>Fax: (605) 345-9515<br>Email: auditor@daycounty.org | **Hanson** | Hanson County Auditor<br>P.O. Box 500<br>Alexandria, SD 57311-0500<br>Phone: (605) 239-4714<br>Fax: (605) 239-4296<br>Email: lesa.trabing@state.sd.us |
| **Deuel** | Deuel County Auditor<br>P.O. Box 616<br>Clear Lake, SD 57226-0616<br>Phone: (605) 874-2312<br>Fax: (605) 874-1306<br>Email: dcaud1@itctel.com | **Harding** | Harding County Auditor<br>P.O. Box 26<br>Buffalo, SD 57720-0026<br>Phone: (605) 375-3313<br>Fax: (605) 375-3318<br>Email: kathy.glines@state.sd.us |
| **Dewey** | Dewey County Auditor<br>P.O. Box 277<br>Timber Lake, SD 57656-0277<br>Phone: (605) 865-3672<br>Fax: (605) 865-3691<br>Email: auditor@deweycounty.biz | **Hughes** | Hughes County Auditor<br>104 E Capitol Ave<br>Pierre, SD 57501-2591<br>Phone: (605) 773-7451<br>Fax: (605) 773-7479<br>Email: Jane.Naylor@co.hughes.sd.us |
| **Douglas** | Douglas County Auditor<br>P.O. Box 159<br>Armour, SD 57313-0159<br>Phone: (605) 724-2423<br>Fax: (605) 724-2204<br>Email: phyllis.barker@state.sd.us | **Hutchinson** | Hutchinson County Auditor<br>140 Euclid, Rm 128<br>Olivet, SD 57052-0128<br>Phone: (605) 387-4212<br>Fax: (605) 387-4209<br>Email: dmurtha@hutchinsoncounty.org |
| **Edmunds** | Edmunds County Auditor<br>P.O. Box 97<br>Ipswich, SD 57451-0097<br>Phone: (605) 426-6762<br>Fax: (605) 426-6164<br>Email: kschurr@midco.net | **Hyde** | Hyde County Auditor<br>P.O. Box 379<br>Highmore, SD 57345-0379<br>Phone: (605) 852-2519<br>Fax: (605) 852-3178<br>Email: hydeaud@venturecomm.net |
| **Fall River** | Fall River County Auditor<br>906 N River St<br>Hot Springs, SD 57747-1398<br>Phone: (605) 745-5130<br>Fax: (605) 745-6835<br>Email: sue.ganje@state.sd.us | **Jackson** | Jackson County Auditor<br>P.O. Box 280<br>Kadoka, SD 57543-0280<br>Phone: (605) 837-2422<br>Fax: (605) 837-2447<br>Email: vicki.wilson@state.sd.us |

STATE115148

| County | Mailing Address | County | Mailing Address |
|---|---|---|---|
| **Jerauld** | Jerauld County Auditor<br>P.O. Box 422<br>Wessington Springs, SD 57382-0422<br>Phone: (605) 539-9301<br>Fax: (605) 539-9125<br>Email: cindy.peterson@state.sd.us | **Miner** | Miner County Auditor<br>P.O. Box 86<br>Howard, SD 57349-0086<br>Phone: (605) 772-4671<br>Fax: (605) 772-4821<br>Email: minerauditor@minercountysd.org |
| **Jones** | Jones County Auditor<br>P.O. Box 307<br>Murdo, SD 57559-0307<br>Phone: (605) 669-7100<br>Fax: (605) 669-7120<br>Email: jonesaud@goldenwest.net | **Minnehaha** | Minnehaha County Auditor<br>415 N Dakota Ave<br>Sioux Falls, SD 57104-2465<br>Phone: (605) 367-4220<br>Fax: (605) 367-7409<br>Email: bkyte@minnehahacounty.org |
| **Kingsbury** | Kingsbury County Auditor<br>P.O. Box 196<br>Desmet, SD 57231-0196<br>Phone: (605) 854-3832<br>Fax: (605) 854-3833<br>Email: aud1@kingsburycountysd.org | **Moody** | Moody County Auditor<br>101 E Pipestone Ave, Ste D<br>Flandreau, SD 57028-1750<br>Phone: (605) 997-3161<br>Fax: (605) 997-9996<br>Email: mcaud1@moodycounty.net |
| **Lake** | Lake County Auditor<br>200 E Center<br>Madison, SD 57042-2941<br>Phone: (605) 256-7600<br>Fax: (605) 256-7622<br>Email: lakeauditor@lake.sd.gov | **Oglala Lakota** | Oglala Lakota County Auditor<br>906 N River St<br>Hot Springs, SD 57747-1398<br>Phone: (605) 745-5130<br>Fax: (605) 745-6835<br>Email: sue.ganje@state.sd.us |
| **Lawrence** | Lawrence County Auditor<br>P.O. Box F<br>Deadwood, SD 57732-0678<br>Phone: (605) 578-1941<br>Fax: (605) 578-1065<br>Email: voters@lawrence.sd.us | **Pennington** | Pennington County Auditor<br>130 Kansas City St. Suite 230<br>Rapid City, SD 57701<br>Phone: (605) 394-2153<br>Fax: (605) 394-6840<br>Email: elections@pennco.org |
| **Lincoln** | Lincoln County Auditor<br>104 N Main, Ste 110<br>Canton, SD 57013-1703<br>Phone: (605) 764-2581<br>Fax: (605) 764-0134<br>Email: Auditor@lincolncountysd.org | **Perkins** | Perkins County Auditor<br>P.O. Box 126<br>Bison, SD 57620-0126<br>Phone: (605) 244-5624<br>Fax: (605) 231-5560<br>Email: pkaud@sdplains.com |
| **Lyman** | Lyman County Auditor<br>P.O. Box 38<br>Kennebec, SD 57544-0038<br>Phone: (605) 869-2247<br>Fax: (605) 869-2247<br>Email: auditor@lymancounty.org | **Potter** | Potter County Auditor<br>201 S Exene<br>Gettysburg, SD 57442-1521<br>Phone: (605) 765-9408<br>Fax: (605) 765-2332<br>Email: pcaudit@venturecomm.net |
| **Marshall** | Marshall County Auditor<br>P.O. Box 130<br>Britton, SD 57430-0130<br>Phone: (605) 448-2401<br>Fax: (605) 448-2116<br>Email: mcauditor@venturecomm.net | **Roberts** | Roberts County Auditor<br>411 2nd Ave E<br>Sisseton, SD 57262-1495<br>Phone: (605) 698-7336<br>Fax: (605) 698-4277<br>Email: dawn.sattler@state.sd.us |
| **McCook** | McCook County Auditor<br>P.O. Box 190<br>Salem, SD 57058-0190<br>Phone: (605) 425-2791<br>Fax: (605) 425-2534<br>Email: mccookaud@triotel.net | **Sanborn** | Sanborn County Auditor<br>P.O. Box 7<br>Woonsocket, SD 57385-0007<br>Phone: (605) 796-4513<br>Fax: (605) 796-4509<br>Email: kamim@sanborncounty.net |
| **McPherson** | McPherson County Auditor<br>P.O. Box 390<br>Leola, SD 57456-0448<br>Phone: (605) 439-3314<br>Fax: (605) 439-3394<br>Email: mcphersonaud@valleytel.net | **Spink** | Spink County Auditor<br>210 E 7th Ave, Ste 5<br>Redfield, SD 57469-1266<br>Phone: (605) 472-4580<br>Fax: (605) 472-4582<br>Email: spinkcoauditor@nrctv.com |
| **Meade** | Meade County Auditor<br>1300 Sherman St, Ste 126<br>Sturgis, SD 57785<br>Phone: (605) 347-2360<br>Fax: (605) 720-6624<br>Email: auditor@meadecounty.org | **Stanley** | Stanley County Auditor<br>P.O. Box 595<br>Fort Pierre, SD 57532-0595<br>Phone: (605) 223-7780<br>Fax: (605) 223-7791<br>Email: scauditor@midconetwork.com |
| **Mellette** | Mellette County Auditor<br>P.O. Box C<br>White River, SD 57579-0403<br>Phone: (605) 259-3291<br>Fax: (605) 259-3194<br>Email: mellettecounty@gmail.com | **Sully** | Sully County Auditor<br>P.O. Box 265<br>Onida, SD 57564-0265<br>Phone: (605) 258-2541<br>Fax: (605) 258-2884<br>Email: sullyaud@venturecomm.net |

STATE115149

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| **Todd** | Todd County Auditor<br>200 East 3rd<br>Winner, SD 57580-1806<br>Phone: (605) 842-3727<br>Fax: (605) 842-3621<br>Email: bdesersa@trippcounty.us | **Walworth** | Walworth County Auditor<br>P.O. Box 199<br>Selby, SD 57472-0199<br>Phone: (605) 649-7878<br>Fax: (605) 649-7867<br>Email: ecagnones@walworthco.org |
| **Tripp** | Tripp County Auditor<br>200 East 3rd<br>Winner, SD 57580-1806<br>Phone: (605) 842-3727<br>Fax: (605) 842-1116<br>Email: bdesersa@trippcounty.us | **Yankton** | Yankton County Auditor<br>321 W 3rd St, Ste 100<br>Yankton, SD 57078-0137<br>Phone: (605) 260-4436<br>Fax: (605) 260-4494<br>Email: patty@co.yankton.sd.us |
| **Turner** | Turner County Auditor<br>P.O. Box 370<br>Parker, SD 57053-0370<br>Phone: (605) 297-3153<br>Fax: (605) 297-5556<br>Email: turcoaud@iw.net | **Ziebach** | Ziebach County Auditor<br>P.O. Box 68<br>Dupree, SD 57623-0068<br>Phone: (605) 365-5157<br>Fax: (605) 365-5204<br>Email: ziebachauditor@lakotanetwork.com |
| **Union** | Union County Auditor<br>209 E Main St, Ste 200<br>Elk Point, SD 57025-2327<br>Phone: (605) 356-2101<br>Fax: (605) 356-3047<br>Email: ucauditor@unioncountysd.org | | |

STATE115150

This page intentionally left blank.

STATE115151

# West Virginia

www.wvsos.com

## Federal Election Deadlines

|  | **General Election**<br>November 8, 2022 |
|---|---|
| **Registration** | **Received by**<br>October 18, 2022 |
| **Ballot Request** | **Received by**<br>November 2, 2022 |
| **Ballot Return** | **Return by Email or Fax: Received by**<br>November 8, 2022<br>**Return by Mail: Received by**<br>November 14, 2022 |

Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 for details.

## Important information

| What is UOCAVA? | The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA. UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices. |
|---|---|
| What is the Federal Post Card Application (FPCA)? | The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information. |
| What is the Federal Write-In Absentee Ballot (FWAB)? | The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB. |
| What is the DoD Fax Service? | The DoD Fax Service is for those voters who cannot send their election materials directly to their election officials. To fax your election materials, use the "Transmission Cover Sheet" found in Chapter 1 or online at FVAP.gov and fax to: (703) 693-5527, DSN 223-5527 or toll-free from the U.S., Canada, Guam, Puerto Rico and the Virgin Islands to 1-800-368-8683. If you need to send your election materials to your election official by fax, but do not have access to a fax machine, you can email them to fax@fvap.gov and FVAP will fax your election materials for you. **This service is fax only.** If your state accepts your election materials by email you should email them directly to your election official. FVAP will not transmit email-to-email transactions. |
| What is the Prepaid Mail Label 11- DoD? | *Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service. |
| What is a primary election? | A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot. |

STATE115204

| | |
|---|---|
| I am an American citizen, but I have never lived in the U.S., can I vote in this state? | A U.S. citizen who has never resided in the U.S. and has a parent or legal guardian who was last domiciled in West Virginia, is eligible to vote in West Virginia. |
| I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges? | No. |
| How can I check the status of my ballot? | You can check the status of your absentee ballot here: https://services.sos.wv.gov/Elections/Voter/AbsenteeBallotTracking |
| Does my state have any online tools? | You can see if your state has any online tools available here: https://www.fvap.gov/west-virginia |

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

| | |
|---|---|
| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.<br><br>Your date of birth is required.<br><br>You must provide **either** a West Virginia-issued ID number **or** the last four digits of your Social Security Number. If you do not have either of these numbers you must enter in Section 6: "I do not have a Social Security Number or West Virginia-issued ID number." |
| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
| Section 3 | Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a |

different address or have a forwarding address, use the forwarding address space to provide this information.

| | |
|---|---|
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number. |
| Section 5 | A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections. |
| Section 6 | Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots. |
| Section 7 | Sign and date the form. No witness signature required. |

## How and where to submit your FPCA

You can submit the FPCA by **mail**, **email** or **fax**. Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission

STATE115205

Cover Sheet". Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FPCA if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

# Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail, email, online** or **fax**.

Contact information can be found in the "Local Election Offices" section. If you do not have access to a fax machine to fax your election official directly, you may use the DoD Fax Service to fax your ballot. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

# Haven't received your ballot? Use the Federal Write-In Absentee Ballot

You **must** be registered to vote and have already requested a state absentee ballot in order to use the Federal Write-In Absentee Ballot (FWAB).

You can use the FWAB to vote in all elections for federal, state and local offices, including ballot measures.

## Complete the following sections of the FWAB's voter information page

| Section 1 | Select the category that best describes you.<br><br>Enter your current name (Last, First). If you are registered under a different |
|---|---|

name, provide this information in the previous name area.

Your date of birth is required.

| Section 2 | Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence. |
|---|---|
| Section 3 | Enter your current mailing address. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information. |
| Section 4 | Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. |
| Section 5 | A. Do not check "Yes" or "No." **The FWAB cannot be used for voter registration or as a ballot request.**<br><br>B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax".<br><br>C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections. |
| Section 6 | Provide any information that may assist the election official in accepting this form. |
| Section 7 | Sign and date the form. No witness signature required. |

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

You can submit the FWAB by **mail, email** or **fax.** Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**STATE115206**

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official. *Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". Email this ballot package directly to your election official.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet". You may use the DoD Fax Service to fax your FWAB toll-free if you do not have access to a fax machine to fax your election official directly. Instructions for the DoD Fax Service are in the "Important Information" section or online at FVAP.gov.

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

# Local election offices for county

| County | Mailing Address |
|--------|-----------------|
| **Barbour** | Barbour Clerk of the County Commission<br>26 N. Main St., Ste. 104<br>Philippi, WV 26416<br>Phone: (304) 457-2232<br>Fax: (304) 457-5983<br>Email: barbourcounty@wvsos.com |
| **Berkeley** | Berkeley Clerk of the County Commission<br>400 W. Stephen St., Suite 106<br>Martinsburg, WV 25401<br>Phone: (304) 264-1989<br>Fax: (304) 260-4882<br>Email: berkeleycounty@wvsos.com |
| **Boone** | Boone Clerk of the County Commission<br>200 State St.<br>Madison, WV 25130<br>Phone: (304) 369-7330<br>Fax: (304) 369-7329<br>Email: boonecounty@wvsos.com |
| **Braxton** | Braxton Clerk of the County Commission<br>300 Main St., PO Box 486<br>Sutton, WV 26601<br>Phone: (304) 765-2833<br>Fax: (304) 765-2093<br>Email: braxtoncounty@wvsos.com |
| **Brooke** | Brooke Clerk of the County Commission<br>632 Main St.<br>Wellsburg, WV 26070<br>Phone: (304) 737-3661<br>Fax: (304) 737-4023<br>Email: barbetta@mail.wvnet.edu |
| **Cabell** | Cabell Clerk of the County Commission<br>750 5th Ave, Ste. 108<br>Huntington, WV 25701<br>Phone: (304) 526-8625<br>Fax: (304) 526-8632<br>Email: psmith@cabellcountyclerk.org |
| **Calhoun** | Calhoun Clerk of the County Commission<br>363 Main St., Ste. 201, PO Box 230<br>Grantsville, WV 26147<br>Phone: (304) 354-6725<br>Fax: (304) 354-6447<br>Email: calhouncounty@wvsos.com |
| **Clay** | Clay Clerk of the County Commission<br>246 Main St., P.O. Box 190<br>Clay, WV 25043<br>Phone: (304) 587-4259<br>Fax: (304) 587-4202<br>Email: claycounty@wvsos.com |
| **Doddridge** | Doddridge Clerk of the County Commission<br>108 Court St.<br>West Union, WV 26456<br>Phone: (304) 873-2631<br>Fax: (304) 873-1840<br>Email: doddridgecounty@wvsos.com |
| **Fayette** | Fayette Clerk of the County Commission<br>100 Court St., Ste. 1, P.O. Box 569<br>Fayetteville, WV 25840<br>Phone: (304) 574-4225<br>Fax: (304) 574-4335<br>Email: fayettecounty@wvsos.com |
| **Gilmer** | Gilmer Clerk of the County Commission<br>10 Howard St.<br>Glenville, WV 26351<br>Phone: (304) 462-7641<br>Fax: (304) 462-8855<br>Email: gilmercounty@wvsos.com |

STATE115207

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| Grant | Grant Clerk of the County Commission<br>5 Highland Ave.<br>Petersburg, WV 26847<br>Phone: (304) 257-4550<br>Fax: (304) 257-4207<br>Email: grantcounty@wvsos.com | Marion | Marion Clerk of the County Commission<br>219 Adams St., PO Box 1267<br>Fairmont, WV 26555<br>Phone: (304) 367-5445<br>Fax: (304) 367-5448<br>Email: marioncounty@wvsos.com |
| Greenbrier | Greenbrier Clerk of the County Commission<br>912 Court St. N., PO Box 506<br>Lewisburg, WV 24901<br>Phone: (304) 647-6602<br>Fax: (304) 647-6694<br>Email: greenbriercounty@wvsos.com | Marshall | Marshall Clerk of the County Commission<br>600 7th St., P.O. Box 459<br>Moundsville, WV 26041<br>Phone: (304) 845-1220<br>Fax: (304) 845-5891<br>Email: marshallcounty@wvsos.com |
| Hampshire | Hampshire Clerk of the County Commission<br>19 East Main St., PO Box 806<br>Romney, WV 26757<br>Phone: (304) 822-5112<br>Fax: (304) 822-4039<br>Email: hampshirecounty@wvsos.com | Mason | Mason Clerk of the County Commission<br>200 Sixth St.<br>Point Pleasant, WV 25550<br>Phone: (304) 675-1997<br>Fax: (304) 675-2521<br>Email: masoncounty@wvsos.com |
| Hancock | Hancock Clerk of the County Commission<br>102 North Court St., PO Box 367<br>New Cumberland, WV 26047<br>Phone: (304) 564-3311<br>Fax: (304) 564-5941<br>Email: hancockcounty@wvsos.com | McDowell | McDowell Clerk of the County Commission<br>90 Wyoming St., Ste. 109<br>Welch, WV 24801<br>Phone: (304) 436-8544<br>Fax: (304) 436-8576<br>Email: mcdowellcounty@wvsos.com |
| Hardy | Hardy Clerk of the County Commission<br>204 Washington St., Room 111<br>Moorefield, WV 26836<br>Phone: (304) 530-0250<br>Fax: (304) 530-0251<br>Email: hardycounty@wvsos.com | Mercer | Mercer Clerk of the County Commission<br>1501 West Main St., Ste. 121<br>Princeton, WV 24740<br>Phone: (304) 487-8338<br>Fax: (304) 425-4851<br>Email: mercercounty@wvsos.com |
| Harrison | Harrison Clerk of the County Commission<br>306B Washington Ave.<br>Clarksburg, WV 26301<br>Phone: (304) 624-8613<br>Fax: (304) 626-1090<br>Email: harrisoncounty@wvsos.com | Mineral | Mineral Clerk of the County Commission<br>150 Armstrong St.<br>Keyser, WV 26726<br>Phone: (304) 788-3924<br>Fax: (304) 788-4109<br>Email: mineralcounty@wvsos.com |
| Jackson | Jackson Clerk of the County Commission<br>100 Court St. North, P.O. Box 800<br>Ripley, WV 25271<br>Phone: (304) 373-2250<br>Fax: (304) 372-1107<br>Email: cheryl.bright@jacksoncountywv.com | Mingo | Mingo Clerk of the County Commission<br>78 East 2nd Ave., Room 125<br>Williamson, WV 25661<br>Phone: (304) 235-0330<br>Fax: (304) 235-0565<br>Email: mingocounty@wvsos.com |
| Jefferson | Jefferson Clerk of the County Commission<br>100 East Washington St., P.O. Box 208<br>Charles Town, WV 25414<br>Phone: 304-728-3246<br>Fax: 304-728-1957<br>Email: jeffersoncounty@wvsos.com | Monongalia | Monongalia Clerk of the County Commission<br>243 High St., Room 123<br>Morgantown, WV 26505<br>Phone: (304) 291-7230<br>Fax: (304) 291-7233<br>Email: monongaliacounty@wvsos.com |
| Kanawha | Kanawha Clerk of the County Commission<br>415 Quarrier St.<br>Charleston, WV 25301<br>Phone: (304) 357-0130<br>Fax: (304) 357-0585<br>Email: veramccormick@kanawha.us | Monroe | Monroe Clerk of the County Commission<br>350 Main St., P.O. Box 350<br>Union, WV 24983<br>Phone: (304) 772-3096<br>Fax: (304) 772-4191<br>Email: jmeadows@monroecountywv.net |
| Lewis | Lewis Clerk of the County Commission<br>110 Center Ave.<br>Weston, WV 26452<br>Phone: (304) 269-8215<br>Fax: (304) 269-8202<br>Email: lewiscounty@wvsos.com | Morgan | Morgan Clerk of the County Commission<br>77 Fairfax St., Room 102<br>Berkeley Springs, WV 25411<br>Phone: (304) 258-8547<br>Fax: (304) 258-8545<br>Email: knickles@morgancountywv.gov |
| Lincoln | Lincoln Clerk of the County Commission<br>8000 Court Ave., P.O. Box 497<br>Hamlin, WV 25523<br>Phone: (304) 824-3336<br>Fax: (304) 824-2444<br>Email: lincolncounty@wvsos.com | Nicholas | Nicholas Clerk of the County Commission<br>700 Main St., Ste. 2<br>Summersville, WV 26651<br>Phone: (304) 872-7820<br>Fax: (304) 872-9600<br>Email: nicholascounty@wvsos.com |
| Logan | Logan Clerk of the County Commission<br>300 Stratton St., Room 102<br>Logan, WV 25601<br>Phone: (304) 792-8600<br>Fax: (304) 792-8246<br>Email: logancounty@wvsos.com | Ohio | Ohio County Elections Clerk<br>1500 Chapline St., Room 215<br>Wheeling, WV 26003<br>Phone: (304) 234-3750<br>Fax: (304) 234-3827<br>Email: tchieffalo@ohiocountywv.gov |

STATE115208

| County | Mailing Address | County | Mailing Address |
|--------|-----------------|--------|-----------------|
| Pendleton | Pendleton Clerk of the County Commission<br>100 South Main St., P.O. Box 1167<br>Franklin, WV 26807<br>Phone: (304) 358-2505<br>Fax: (304) 358-2473<br>Email: pendletoncounty@wvsos.com | Taylor | Taylor Clerk of the County Commission<br>128 W. Main St., Annex 2<br>Grafton, WV 26354<br>Phone: (304) 265-1401<br>Fax: (304) 265-2889<br>Email: taylorcounty@wvsos.com |
| Pleasants | Pleasants Clerk of the County Commission<br>301 Court Lane<br>St. Marys, WV 26170<br>Phone: (304) 684-3542<br>Fax: (304) 684-7569<br>Email: pleasantscounty@wvsos.com | Tucker | Tucker Clerk of the County Commission<br>211 First St., Ste. 204<br>Parsons, WV 26287<br>Phone: (304) 478-2414<br>Fax: (304) 478-2217<br>Email: tuckercounty@wvsos.com |
| Pocahontas | Pocahontas Clerk of the County Commission<br>900-C 10th Ave.<br>Marlinton, WV 24954<br>Phone: (304) 799-4549<br>Fax: (304) 799-6947<br>Email: pocahontascounty@wvsos.com | Tyler | Tyler Clerk of the County Commission<br>121 Main St., P.O. Box 66<br>Middlebourne, WV 26149<br>Phone: (304) 758-2102<br>Fax: (304) 758-2126<br>Email: tylercounty@wvsos.com |
| Preston | Preston Clerk of the County Commission<br>106 West Main St., Ste. 103<br>Kingwood, WV 26537<br>Phone: (304) 329-0070<br>Fax: (304) 329-0198<br>Email: prestoncounty@wvsos.com | Upshur | Upshur Clerk of the County Commission<br>40 W. Main St., Room 101<br>Buckhannon, WV 26201<br>Phone: (304) 472-1068<br>Fax: (304) 472-1029<br>Email: upshurcounty@wvsos.com |
| Putnam | Putnam Clerk of the County Commission<br>12093 Winfield Road, Ste. 3<br>Winfield, WV 25213<br>Phone: (304) 586-0202<br>Fax: (304) 204-1408<br>Email: bwood@putnamwv.org | Wayne | Wayne Clerk of the County Commission<br>700 Hendricks St., P.O. Box 248<br>Wayne, WV 25570<br>Phone: (304) 272-6362<br>Fax: (304) 272-5318<br>Email: waynecounty@wvsos.com |
| Raleigh | Raleigh Clerk of the County Commission<br>215 Main St.<br>Beckley, WV 25802<br>Phone: (304) 252-8681<br>Fax: (304) 252-8698<br>Email: raleighcounty@wvsos.com | Webster | Webster Clerk of the County Commission<br>2 Court Square, Room G1<br>Webster Springs, WV 26288<br>Phone: (304) 847-2508<br>Fax: (304) 847-7755<br>Email: webstercounty@wvsos.com |
| Randolph | Randolph Clerk of the County Commission<br>2 Randolph Ave.<br>Elkins, WV 26241<br>Phone: (304) 636-0543<br>Fax: (304) 636-0544<br>Email: randolphcounty@wvsos.com | Wetzel | Wetzel Clerk of the County Commission<br>200 Main St., PO Box 156<br>New Martinsville, WV 26155<br>Phone: (304) 455-8224<br>Fax: (304) 455-5256<br>Email: wetzelcounty@wvsos.com |
| Ritchie | Ritchie Clerk of the County Commission<br>115 East Main St., Room. 201<br>Harrisville, WV 26362<br>Phone: (304) 643-2164<br>Fax: (304) 643-2906<br>Email: tdmcdona@clerk.state.wv.us | Wirt | Wirt Clerk of the County Commission<br>19 Washington St., Rm 102, P.O. Box 53<br>Elizabeth, WV 26143<br>Phone: (304) 275-4271<br>Fax: (304) 275-3418<br>Email: wirtcounty@wvsos.com |
| Roane | Roane Clerk of the County Commission<br>200 Main St.<br>Spencer, WV 25276<br>Phone: (304) 927-2860<br>Fax: (304) 927-2489<br>Email: roanecounty@wvsos.com | Wood | Wood Clerk of the County Commission<br>1 Court Square, PO Box 1474<br>Parkersburg, WV 26101<br>Phone: (304) 424-1850<br>Fax: (304) 424-1982<br>Email: woodcounty@wvsos.com |
| Summers | Summers Clerk of the County Commission<br>120 Ballengee Street., Ste. 106, PO Box 97<br>Hinton, WV 25951<br>Phone: (304) 466-7104<br>Fax: (304) 466-7146<br>Email: summerscounty@wvsos.com | Wyoming | Wyoming Clerk of the County Commission<br>24 Main Ave., PO Box 309<br>Pineville, WV 24874<br>Phone: (304) 732-8000<br>Fax: (304) 732-9659<br>Email: wyomingcounty@wvsos.com |

STATE115209

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|---|---|---|---|
| Anderson | 88 | 2 | 2.22% |
| Andrews | 3 | 0 | 0.00% |
| Angelina | 253 | 24 | 8.66% |
| Aransas | 91 | 19 | 17.27% |
| Archer | 16 | 0 | 0.00% |
| Armstrong | 4 | 0 | 0.00% |
| Atascosa | 141 | 9 | 6.00% |
| Austin | 79 | 0 | 0.00% |
| Bailey | 6 | 0 | 0.00% |
| Bandera | 59 | 13 | 18.06% |
| Bastrop | 466 | 46 | 8.98% |
| Baylor | 4 | 0 | 0.00% |
| Bee | 152 | 7 | 4.40% |
| Bell | 833 | 6 | 0.72% |
| Bexar | 9757 | 2797 | 22.28% |
| Blanco | 50 | 9 | 15.25% |
| Borden | 1 | 0 | 0.00% |
| Bosque | 42 | 6 | 12.50% |
| Bowie | 307 | 21 | 6.40% |
| Brazoria | 884 | 42 | 4.54% |
| Brazos | 470 | 31 | 6.19% |
| Brewster | 101 | 1 | 0.98% |
| Briscoe | 11 | 0 | 0.00% |
| Brooks | 117 | 2 | 1.68% |
| Brown | 57 | 3 | 5.00% |
| Burleson | 58 | 16 | 21.62% |
| Burnet | 249 | 9 | 3.49% |
| Caldwell | 157 | 13 | 7.65% |
| Calhoun | 80 | 2 | 2.44% |
| Callahan | 18 | 0 | 0.00% |
| Cameron | 1292 | 130 | 9.14% |
| Camp | 61 | 2 | 3.17% |
| Carson | 7 | 0 | 0.00% |
| Cass | 122 | 3 | 2.40% |
| Castro | 12 | 0 | 0.00% |
| Chambers | 62 | 5 | 7.46% |
| Cherokee | 109 | 9 | 7.63% |
| Childress | 2 | 0 | 0.00% |
| Clay | 18 | 2 | 10.00% |
| Cochran | 3 | 0 | 0.00% |
| Coke | 10 | 0 | 0.00% |
| Coleman | 7 | 0 | 0.00% |

2022 Democratic Primary

STATE115581

| | | | |
|---|---:|---:|---:|
| Collin | 2027 | 330 | 14.00% |
| Collingsworth | 1 | 0 | 0.00% |
| Colorado | 72 | 24 | 25.00% |
| Comal | 687 | 96 | 12.26% |
| Comanche | 32 | 1 | 3.03% |
| Concho | 11 | 0 | 0.00% |
| Cooke | 67 | 6 | 8.22% |
| Coryell | 139 | 2 | 1.42% |
| Cottle | 4 | 0 | 0.00% |
| Crane | 5 | 0 | 0.00% |
| Crockett | 4 | 1 | 20.00% |
| Crosby | 20 | 0 | 0.00% |
| Culberson | 14 | 0 | 0.00% |
| Dallam | 7 | 0 | 0.00% |
| Dallas | 7269 | 557 | 7.12% |
| Dawson | 11 | 0 | 0.00% |
| Deaf Smith | 27 | 0 | 0.00% |
| Delta | 26 | 5 | 16.13% |
| Denton | 1943 | 238 | 10.91% |
| Dewitt | 23 | 1 | 4.17% |
| Dickens | 6 | 0 | 0.00% |
| Dimmit | 116 | 0 | 0.00% |
| Donley | 3 | 0 | 0.00% |
| Duval | 367 | 2 | 0.54% |
| Eastland | 48 | 0 | 0.00% |
| Ector | 210 | 0 | 0.00% |
| Edwards | 2 | 0 | 0.00% |
| El Paso | 3609 | 762 | 17.43% |
| Ellis | 368 | 58 | 13.62% |
| Erath | 61 | 5 | 7.58% |
| Falls | 47 | 0 | 0.00% |
| Fannin | 119 | 1 | 0.83% |
| Fayette | 129 | 6 | 4.44% |
| Fisher | 30 | 3 | 9.09% |
| Floyd | 5 | 2 | 28.57% |
| Foard | 1 | 0 | 0.00% |
| Fort Bend | 2822 | 383 | 11.95% |
| Franklin | 23 | 0 | 0.00% |
| Freestone | 40 | 3 | 6.98% |
| Frio | 231 | 33 | 12.50% |
| Gaines | 14 | 0 | 0.00% |
| Galveston | 1270 | 187 | 12.83% |
| Garza | 5 | 1 | 16.67% |
| Gillespie | 146 | 1 | 0.68% |

2022 Democratic Primary

STATE115582

| | | |
|---|---:|---:|
| Glasscock | 2 | 0 | 0.00% |
| Goliad | 31 | 3 | 8.82% |
| Gonzales | 53 | 3 | 5.36% |
| Gray | 39 | 0 | 0.00% |
| Grayson | 353 | 46 | 11.53% |
| Gregg | 426 | 63 | 12.88% |
| Grimes | 67 | 29 | 30.21% |
| Guadalupe | 548 | 96 | 14.91% |
| Hale | 46 | 7 | 13.21% |
| Hall | 13 | 0 | 0.00% |
| Hamilton | 17 | 0 | 0.00% |
| Hansford | 4 | 0 | 0.00% |
| Hardeman | 10 | 0 | 0.00% |
| Hardin | 108 | 6 | 5.26% |
| Harris | 17784 | 3814 | 17.66% |
| Harrison | 163 | 70 | 30.04% |
| Hartley | 6 | 0 | 0.00% |
| Haskell | 12 | 0 | 0.00% |
| Hays | 1560 | 127 | 7.53% |
| Hemphill | 3 | 0 | 0.00% |
| Henderson | 251 | 26 | 9.39% |
| Hidalgo | 2001 | 488 | 19.61% |
| Hill | 60 | 2 | 3.23% |
| Hockley | 28 | 0 | 0.00% |
| Hood | 160 | 19 | 10.61% |
| Hopkins | 98 | 11 | 10.09% |
| Houston | 102 | 8 | 7.27% |
| Howard | 64 | 6 | 8.57% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 136 | 16 | 10.53% |
| Hutchinson | 14 | 1 | 6.67% |
| Irion | 2 | 0 | 0.00% |
| Jack | 17 | 0 | 0.00% |
| Jackson | 41 | 1 | 2.38% |
| Jasper | 98 | 1 | 1.01% |
| Jeff Davis | 5 | 0 | 0.00% |
| Jefferson | 1367 | 152 | 10.01% |
| Jim Hogg | 206 | 0 | 0.00% |
| Jim Wells | 163 | 119 | 42.20% |
| Johnson | 305 | 37 | 10.82% |
| Jones | 45 | 0 | 0.00% |
| Karnes | 89 | 22 | 19.82% |
| Kaufman | 195 | 34 | 14.85% |
| Kendall | 154 | 1 | 0.65% |

2022 Democratic Primary

STATE115583

| | | | |
|---|---|---|---|
| Kenedy | 3 | 2 | 40.00% |
| Kent | 0 | 0 | 0.00% |
| Kerr | 232 | 20 | 7.94% |
| Kimble | 5 | 0 | 0.00% |
| King | 0 | 0 | 0.00% |
| Kinney | 12 | 0 | 0.00% |
| Kleberg | 178 | 4 | 2.20% |
| Knox | 2 | 0 | 0.00% |
| Lamar | 131 | 1 | 0.76% |
| Lamb | 32 | 5 | 13.51% |
| Lampasas | 65 | 1 | 1.52% |
| Lasalle | 289 | 21 | 6.77% |
| Lavaca | 102 | 11 | 9.73% |
| Lee | 60 | 5 | 7.69% |
| Leon | 52 | 0 | 0.00% |
| Liberty | 120 | 3 | 2.44% |
| Limestone | 70 | 4 | 5.41% |
| Lipscomb | 13 | 1 | 7.14% |
| Live Oak | 34 | 0 | 0.00% |
| Llano | 202 | 18 | 8.18% |
| Loving | 0 | 0 | 0.00% |
| Lubbock | 618 | 27 | 4.19% |
| Lynn | 6 | 0 | 0.00% |
| Madison | 19 | 2 | 9.52% |
| Marion | 58 | 17 | 22.67% |
| Martin | 3 | 0 | 0.00% |
| Mason | 16 | 0 | 0.00% |
| Matagorda | 114 | 10 | 8.06% |
| Maverick | 145 | 29 | 16.67% |
| Mcculloch | 33 | 0 | 0.00% |
| Mclennan | 847 | 57 | 6.31% |
| Mcmullen | 2 | 0 | 0.00% |
| Medina | 158 | 23 | 12.71% |
| Menard | 12 | 0 | 0.00% |
| Midland | 134 | 35 | 20.71% |
| Milam | 88 | 0 | 0.00% |
| Mills | 8 | 0 | 0.00% |
| Mitchell | 9 | 0 | 0.00% |
| Montague | 27 | 0 | 0.00% |
| Montgomery | 1553 | 85 | 5.19% |
| Moore | 11 | 0 | 0.00% |
| Morris | 42 | 0 | 0.00% |
| Motley | 4 | 0 | 0.00% |
| Nacogdoches | 263 | 4 | 1.50% |

2022 Democratic Primary

STATE115584

| | | | |
|---|---|---|---|
| Navarro | 82 | 12 | 12.77% |
| Newton | 38 | 7 | 15.56% |
| Nolan | 30 | 2 | 6.25% |
| Nueces | 1955 | 0 | 0.00% |
| Ochiltree | 4 | 0 | 0.00% |
| Oldham | 3 | 0 | 0.00% |
| Orange | 288 | 11 | 3.68% |
| Palo Pinto | 55 | 12 | 17.91% |
| Panola | 50 | 1 | 1.96% |
| Parker | 301 | 59 | 16.39% |
| Parmer | 9 | 1 | 10.00% |
| Pecos | 63 | 7 | 10.00% |
| Polk | 187 | 17 | 8.33% |
| Potter | 252 | 28 | 10.00% |
| Presidio | 23 | 0 | 0.00% |
| Rains | 24 | 1 | 4.00% |
| Randall | 347 | 20 | 5.45% |
| Reagan | 0 | 0 | 0.00% |
| Real | 1 | 0 | 0.00% |
| Red River | 40 | 0 | 0.00% |
| Reeves | 92 | 2 | 2.13% |
| Refugio | 46 | 4 | 8.00% |
| Roberts | 3 | 0 | 0.00% |
| Robertson | 74 | 8 | 9.76% |
| Rockwall | 186 | 5 | 2.62% |
| Runnels | 17 | 0 | 0.00% |
| Rusk | 130 | 25 | 16.13% |
| Sabine | 28 | 0 | 0.00% |
| San Augustine | 34 | 1 | 2.86% |
| San Jacinto | 93 | 3 | 3.13% |
| San Patricio | 323 | 48 | 12.94% |
| San Saba | 7 | 0 | 0.00% |
| Schleicher | 7 | 0 | 0.00% |
| Scurry | 13 | 0 | 0.00% |
| Shackelford | 4 | 0 | 0.00% |
| Shelby | 41 | 7 | 14.58% |
| Sherman | 2 | 0 | 0.00% |
| Smith | 686 | 68 | 9.02% |
| Somervell | 15 | 0 | 0.00% |
| Starr | 94 | 204 | 68.46% |
| Stephens | 8 | 1 | 11.11% |
| Sterling | 0 | 0 | 0.00% |
| Stonewall | 8 | 0 | 0.00% |
| Sutton | 4 | 0 | 0.00% |

2022 Democratic Primary

STATE115585

| | | |
|---|---:|---:|
| Swisher | 32 | 1 | 3.03% |
| Tarrant | 4892 | 856 | 14.89% |
| Taylor | 259 | 4 | 1.52% |
| Terrell | 15 | 0 | 0.00% |
| Terry | 20 | 3 | 13.04% |
| Throckmorton | 1 | 0 | 0.00% |
| Titus | 84 | 7 | 7.69% |
| Tom Green | 324 | 50 | 13.37% |
| Travis | 8737 | 673 | 7.15% |
| Trinity | 31 | 0 | 0.00% |
| Tyler | 51 | 0 | 0.00% |
| Upshur | 131 | 0 | 0.00% |
| Upton | 5 | 0 | 0.00% |
| Uvalde | 167 | 65 | 28.02% |
| Val Verde | 204 | 0 | 0.00% |
| Van Zandt | 83 | 14 | 14.43% |
| Victoria | 485 | 59 | 10.85% |
| Walker | 176 | 19 | 9.74% |
| Waller | 120 | 39 | 24.53% |
| Ward | 24 | 0 | 0.00% |
| Washington | 89 | 1 | 1.11% |
| Webb | 575 | 31 | 5.12% |
| Wharton | 145 | 12 | 7.64% |
| Wheeler | 11 | 0 | 0.00% |
| Wichita | 226 | 54 | 19.29% |
| Wilbarger | 44 | 1 | 2.22% |
| Willacy | 65 | 5 | 7.14% |
| Williamson | 2208 | 269 | 10.86% |
| Wilson | 251 | 14 | 5.28% |
| Winkler | 2 | 0 | 0.00% |
| Wise | 140 | 11 | 7.28% |
| Wood | 119 | 0 | 0.00% |
| Yoakum | 3 | 0 | 0.00% |
| Young | 0 | 0 | 0.00% |
| Zapata | 57 | 9 | 13.64% |
| Zavala | 83 | 0 | 0.00% |
| **Statewide Totals** | **96464** | **14281** | 12.90% |

2022 Democratic Primary

STATE115586

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|---|---|---|---|
| Anderson | 72 | 0 | 0.00% |
| Andrews | 42 | 0 | 0.00% |
| Angelina | 220 | 27 | 10.93% |
| Aransas | 78 | 10 | 11.36% |
| Archer | 35 | 0 | 0.00% |
| Armstrong | 29 | 0 | 0.00% |
| Atascosa | 112 | 9 | 7.44% |
| Austin | 116 | 0 | 0.00% |
| Bailey | 35 | 2 | 5.41% |
| Bandera | 171 | 13 | 7.07% |
| Bastrop | 346 | 31 | 8.22% |
| Baylor | 9 | 0 | 0.00% |
| Bee | 70 | 4 | 5.41% |
| Bell | 1345 | 11 | 0.81% |
| Bexar | 4326 | 1108 | 20.39% |
| Blanco | 74 | 14 | 15.91% |
| Borden | 12 | 0 | 0.00% |
| Bosque | 82 | 16 | 16.33% |
| Bowie | 359 | 23 | 6.02% |
| Brazoria | 1479 | 93 | 5.92% |
| Brazos | 740 | 111 | 13.04% |
| Brewster | 23 | 0 | 0.00% |
| Briscoe | 39 | 0 | 0.00% |
| Brooks | 3 | 1 | 25.00% |
| Brown | 365 | 7 | 1.88% |
| Burleson | 100 | 37 | 27.01% |
| Burnet | 689 | 53 | 7.14% |
| Caldwell | 90 | 5 | 5.26% |
| Calhoun | 30 | 1 | 3.23% |
| Callahan | 101 | 31 | 23.48% |
| Cameron | 260 | 28 | 9.72% |
| Camp | 23 | 1 | 4.17% |
| Carson | 31 | 1 | 3.13% |
| Cass | 242 | 5 | 2.02% |
| Castro | 23 | 0 | 0.00% |
| Chambers | 105 | 17 | 13.93% |
| Cherokee | 85 | 9 | 9.57% |
| Childress | 25 | 0 | 0.00% |
| Clay | 34 | 0 | 0.00% |
| Cochran | 23 | 0 | 0.00% |
| Coke | 72 | 2 | 2.70% |
| Coleman | 35 | 0 | 0.00% |

2022 Republican Primary

STATE115587

| County | Total | Count | Percent |
|---|---|---|---|
| Collin | 3200 | 449 | 12.30% |
| Collingsworth | 15 | 0 | 0.00% |
| Colorado | 49 | 16 | 24.62% |
| Comal | 1511 | 326 | 17.75% |
| Comanche | 77 | 8 | 9.41% |
| Concho | 35 | 0 | 0.00% |
| Cooke | 154 | 3 | 1.91% |
| Coryell | 296 | 3 | 1.00% |
| Cottle | 5 | 0 | 0.00% |
| Crane | 21 | 0 | 0.00% |
| Crockett | 9 | 0 | 0.00% |
| Crosby | 26 | 0 | 0.00% |
| Culberson | 0 | 0 | 0.00% |
| Dallam | 51 | 0 | 0.00% |
| Dallas | 2768 | 159 | 5.43% |
| Dawson | 64 | 2 | 3.03% |
| Deaf Smith | 116 | 2 | 1.69% |
| Delta | 86 | 10 | 10.42% |
| Denton | 2560 | 539 | 17.39% |
| Dewitt | 94 | 0 | 0.00% |
| Dickens | 34 | 0 | 0.00% |
| Dimmit | 2 | 0 | 0.00% |
| Donley | 14 | 0 | 0.00% |
| Duval | 2 | 0 | 0.00% |
| Eastland | 162 | 0 | 0.00% |
| Ector | 386 | 11 | 2.77% |
| Edwards | 5 | 4 | 44.44% |
| El Paso | 178 | 35 | 16.43% |
| Ellis | 260 | 29 | 10.03% |
| Erath | 96 | 9 | 8.57% |
| Falls | 67 | 0 | 0.00% |
| Fannin | 154 | 4 | 2.53% |
| Fayette | 161 | 2 | 1.23% |
| Fisher | 17 | 0 | 0.00% |
| Floyd | 32 | 4 | 11.11% |
| Foard | 0 | 0 | 0.00% |
| Fort Bend | 1320 | 185 | 12.29% |
| Franklin | 56 | 0 | 0.00% |
| Freestone | 66 | 4 | 5.71% |
| Frio | 9 | 2 | 18.18% |
| Gaines | 46 | 0 | 0.00% |
| Galveston | 1812 | 248 | 12.04% |
| Garza | 37 | 2 | 5.13% |
| Gillespie | 348 | 9 | 2.52% |

2022 Republican Primary

STATE115588

| | | | |
|---|---|---|---|
| Glasscock | 15 | 1 | 6.25% |
| Goliad | 22 | 2 | 8.33% |
| Gonzales | 84 | 6 | 6.67% |
| Gray | 228 | 13 | 5.39% |
| Grayson | 604 | 85 | 12.34% |
| Gregg | 301 | 19 | 5.94% |
| Grimes | 169 | 92 | 35.25% |
| Guadalupe | 526 | 184 | 25.92% |
| Hale | 96 | 10 | 9.43% |
| Hall | 19 | 0 | 0.00% |
| Hamilton | 24 | 0 | 0.00% |
| Hansford | 69 | 0 | 0.00% |
| Hardeman | 3 | 0 | 0.00% |
| Hardin | 273 | 5 | 1.80% |
| Harris | 12153 | 3100 | 20.32% |
| Harrison | 54 | 14 | 20.59% |
| Hartley | 44 | 2 | 4.35% |
| Haskell | 12 | 0 | 0.00% |
| Hays | 763 | 164 | 17.69% |
| Hemphill | 56 | 0 | 0.00% |
| Henderson | 238 | 11 | 4.42% |
| Hidalgo | 179 | 31 | 14.76% |
| Hill | 92 | 3 | 3.16% |
| Hockley | 89 | 0 | 0.00% |
| Hood | 275 | 41 | 12.97% |
| Hopkins | 82 | 9 | 9.89% |
| Houston | 74 | 3 | 3.90% |
| Howard | 136 | 9 | 6.21% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 425 | 93 | 17.95% |
| Hutchinson | 90 | 9 | 9.09% |
| Irion | 6 | 0 | 0.00% |
| Jack | 64 | 1 | 1.54% |
| Jackson | 42 | 3 | 6.67% |
| Jasper | 46 | 0 | 0.00% |
| Jeff Davis | 14 | 0 | 0.00% |
| Jefferson | 142 | 18 | 11.25% |
| Jim Hogg | 1 | 0 | 0.00% |
| Jim Wells | 7 | 2 | 22.22% |
| Johnson | 771 | 110 | 12.49% |
| Jones | 71 | 0 | 0.00% |
| Karnes | 160 | 11 | 6.43% |
| Kaufman | 146 | 50 | 25.51% |
| Kendall | 649 | 9 | 1.37% |

2022 Republican Primary

STATE115589

| | | |
|---|---|---|
| Kenedy | 0 | 0 | 0.00% |
| Kent | 0 | 0 | 0.00% |
| Kerr | 636 | 76 | 10.67% |
| Kimble | 57 | 3 | 5.00% |
| King | 3 | 0 | 0.00% |
| Kinney | 2 | 1 | 33.33% |
| Kleberg | 32 | 0 | 0.00% |
| Knox | 12 | 0 | 0.00% |
| Lamar | 202 | 1 | 0.49% |
| Lamb | 46 | 10 | 17.86% |
| Lampasas | 174 | 16 | 8.42% |
| Lasalle | 5 | 0 | 0.00% |
| Lavaca | 188 | 87 | 31.64% |
| Lee | 118 | 21 | 15.11% |
| Leon | 152 | 0 | 0.00% |
| Liberty | 231 | 9 | 3.75% |
| Limestone | 102 | 12 | 10.53% |
| Lipscomb | 72 | 0 | 0.00% |
| Live Oak | 21 | 1 | 4.55% |
| Llano | 470 | 77 | 14.08% |
| Loving | 1 | 0 | 0.00% |
| Lubbock | 685 | 6 | 0.87% |
| Lynn | 2 | 0 | 0.00% |
| Madison | 61 | 1 | 1.61% |
| Marion | 12 | 3 | 20.00% |
| Martin | 14 | 0 | 0.00% |
| Mason | 38 | 0 | 0.00% |
| Matagorda | 51 | 3 | 5.56% |
| Maverick | 2 | 1 | 33.33% |
| Mcculloch | 60 | 1 | 1.64% |
| Mclennan | 1137 | 102 | 8.23% |
| Mcmullen | 4 | 0 | 0.00% |
| Medina | 232 | 36 | 13.43% |
| Menard | 32 | 1 | 3.03% |
| Midland | 493 | 70 | 12.43% |
| Milam | 152 | 1 | 0.65% |
| Mills | 39 | 0 | 0.00% |
| Mitchell | 13 | 5 | 27.78% |
| Montague | 73 | 4 | 5.19% |
| Montgomery | 3272 | 232 | 6.62% |
| Moore | 92 | 2 | 2.13% |
| Morris | 43 | 0 | 0.00% |
| Motley | 23 | 0 | 0.00% |
| Nacogdoches | 464 | 7 | 1.49% |

2022 Republican Primary

STATE115590

| | | | |
|---|---|---|---|
| Navarro | 55 | 8 | 12.70% |
| Newton | 34 | 6 | 15.00% |
| Nolan | 16 | 4 | 20.00% |
| Nueces | 346 | 0 | 0.00% |
| Ochiltree | 73 | 1 | 1.35% |
| Oldham | 19 | 0 | 0.00% |
| Orange | 212 | 10 | 4.50% |
| Palo Pinto | 201 | 76 | 27.44% |
| Panola | 110 | 4 | 3.51% |
| Parker | 619 | 191 | 23.58% |
| Parmer | 38 | 1 | 2.56% |
| Pecos | 18 | 1 | 5.26% |
| Polk | 332 | 25 | 7.00% |
| Potter | 609 | 116 | 16.00% |
| Presidio | 2 | 0 | 0.00% |
| Rains | 70 | 0 | 0.00% |
| Randall | 1454 | 114 | 7.27% |
| Reagan | 11 | 2 | 15.38% |
| Real | 2 | 0 | 0.00% |
| Red River | 55 | 4 | 6.78% |
| Reeves | 8 | 0 | 0.00% |
| Refugio | 12 | 0 | 0.00% |
| Roberts | 24 | 0 | 0.00% |
| Robertson | 62 | 1 | 1.59% |
| Rockwall | 453 | 63 | 12.21% |
| Runnels | 31 | 7 | 18.42% |
| Rusk | 203 | 38 | 15.77% |
| Sabine | 64 | 0 | 0.00% |
| San Augustine | 25 | 1 | 3.85% |
| San Jacinto | 178 | 4 | 2.20% |
| San Patricio | 122 | 7 | 5.43% |
| San Saba | 22 | 0 | 0.00% |
| Schleicher | 13 | 6 | 31.58% |
| Scurry | 61 | 13 | 17.57% |
| Shackelford | 46 | 0 | 0.00% |
| Shelby | 141 | 12 | 7.84% |
| Sherman | 11 | 7 | 38.89% |
| Smith | 549 | 77 | 12.30% |
| Somervell | 19 | 1 | 5.00% |
| Starr | 25 | 12 | 32.43% |
| Stephens | 90 | 3 | 3.23% |
| Sterling | 4 | 0 | 0.00% |
| Stonewall | 24 | 0 | 0.00% |
| Sutton | 16 | 0 | 0.00% |

2022 Republican Primary

STATE115591

| | | | |
|---|---|---|---|
| Swisher | 56 | 4 | 6.67% |
| Tarrant | 5446 | 27 | 0.49% |
| Taylor | 350 | 14 | 3.85% |
| Terrell | 4 | 0 | 0.00% |
| Terry | 62 | 1 | 1.59% |
| Throckmorton | 14 | 0 | 0.00% |
| Titus | 88 | 9 | 9.28% |
| Tom Green | 433 | 73 | 14.43% |
| Travis | 1915 | 260 | 11.95% |
| Trinity | 30 | 0 | 0.00% |
| Tyler | 196 | 7 | 3.45% |
| Upshur | 155 | 0 | 0.00% |
| Upton | 8 | 0 | 0.00% |
| Uvalde | 25 | 0 | 0.00% |
| Val Verde | 74 | 0 | 0.00% |
| Van Zandt | 79 | 9 | 10.23% |
| Victoria | 1221 | 109 | 8.20% |
| Walker | 206 | 11 | 5.07% |
| Waller | 61 | 26 | 29.89% |
| Ward | 56 | 0 | 0.00% |
| Washington | 148 | 8 | 5.13% |
| Webb | 18 | 0 | 0.00% |
| Wharton | 132 | 4 | 2.94% |
| Wheeler | 35 | 0 | 0.00% |
| Wichita | 180 | 26 | 12.62% |
| Wilbarger | 105 | 0 | 0.00% |
| Willacy | 2 | 1 | 33.33% |
| Williamson | 1582 | 264 | 14.30% |
| Wilson | 255 | 7 | 2.67% |
| Winkler | 11 | 1 | 8.33% |
| Wise | 358 | 45 | 11.17% |
| Wood | 224 | 0 | 0.00% |
| Yoakum | 22 | 0 | 0.00% |
| Young | 4 | 0 | 0.00% |
| Zapata | 3 | 0 | 0.00% |
| Zavala | 0 | 0 | 0.00% |
| **Statewide Totals** | **77420** | **10355** | **11.80%** |

2022 Republican Primary

STATE115592

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|--------|-------------------------|--------------------------|------------|
| Anderson | 169 | 0 | 0.00% |
| Andrews | 42 | 0 | 0.00% |
| Angelina | 397 | 63 | 13.70% |
| Aransas | 188 | 2 | 1.05% |
| Archer | 50 | 0 | 0.00% |
| Armstrong | 13 | 0 | 0.00% |
| Atascosa | 221 | 11 | 4.74% |
| Austin | 217 | 0 | 0.00% |
| Bailey | 44 | 0 | 0.00% |
| Bandera | 196 | 3 | 1.51% |
| Bastrop | 853 | 19 | 2.18% |
| Baylor | 13 | 0 | 0.00% |
| Bee | 199 | 4 | 1.97% |
| Bell | 1623 | 340 | 17.32% |
| Bexar | 18361 | 231 | 1.24% |
| Blanco | 167 | 6 | 3.47% |
| Borden | 9 | 1 | 10.00% |
| Bosque | 152 | 1 | 0.65% |
| Bowie | 614 | 26 | 4.06% |
| Brazoria | 2041 | 63 | 2.99% |
| Brazos | 1058 | 36 | 3.29% |
| Brewster | 127 | 0 | 0.00% |
| Briscoe | 45 | 0 | 0.00% |
| Brooks | 69 | 0 | 0.00% |
| Brown | 373 | 0 | 0.00% |
| Burleson | 204 | 3 | 1.45% |
| Burnet | 802 | 15 | 1.84% |
| Caldwell | 237 | 4 | 1.66% |
| Calhoun | 100 | 3 | 2.91% |
| Callahan | 153 | 0 | 0.00% |
| Cameron | 1602 | 31 | 1.90% |
| Camp | 84 | 0 | 0.00% |
| Carson | 39 | 1 | 2.50% |
| Cass | 354 | 0 | 0.00% |
| Castro | 25 | 0 | 0.00% |
| Chambers | 157 | 0 | 0.00% |
| Cherokee | 216 | 19 | 8.09% |
| Childress | 23 | 0 | 0.00% |
| Clay | 56 | 0 | 0.00% |
| Cochran | 50 | 3 | 5.66% |
| Coke | 95 | 0 | 0.00% |
| Coleman | 53 | 0 | 0.00% |

2022 Constitutional Amendment

STATE115593

| | | | |
|---|---|---|---|
| Collin | 5148 | 109 | 2.07% |
| Collingsworth | 0 | 0 | 0.00% |
| Colorado | 185 | 5 | 2.63% |
| Comal | 2407 | 77 | 3.10% |
| Comanche | 107 | 7 | 6.14% |
| Concho | 48 | 0 | 0.00% |
| Cooke | 210 | 0 | 0.00% |
| Coryell | 436 | 4 | 0.91% |
| Cottle | 11 | 0 | 0.00% |
| Crane | 26 | 0 | 0.00% |
| Crockett | 16 | 0 | 0.00% |
| Crosby | 50 | 0 | 0.00% |
| Culberson | 11 | 0 | 0.00% |
| Dallam | 57 | 0 | 0.00% |
| Dallas | 10649 | 382 | 3.46% |
| Dawson | 99 | 0 | 0.00% |
| Deaf Smith | 127 | 0 | 0.00% |
| Delta | 101 | 0 | 0.00% |
| Denton | 4964 | 155 | 3.03% |
| Dewitt | 135 | 0 | 0.00% |
| Dickens | 31 | 0 | 0.00% |
| Dimmit | 109 | 8 | 6.84% |
| Donley | 10 | 0 | 0.00% |
| Duval | 161 | 1 | 0.62% |
| Eastland | 217 | 0 | 0.00% |
| Ector | 577 | 0 | 0.00% |
| Edwards | 9 | 4 | 30.77% |
| El Paso | 3582 | 490 | 12.03% |
| Ellis | 754 | 28 | 3.58% |
| Erath | 181 | 13 | 6.70% |
| Falls | 33 | 0 | 0.00% |
| Fannin | 267 | 0 | 0.00% |
| Fayette | 286 | 5 | 1.72% |
| Fisher | 39 | 0 | 0.00% |
| Floyd | 29 | 7 | 19.44% |
| Foard | 0 | 0 | 0.00% |
| Fort Bend | 4368 | 101 | 2.26% |
| Franklin | 68 | 0 | 0.00% |
| Freestone | 112 | 3 | 2.61% |
| Frio | 167 | 23 | 12.11% |
| Gaines | 55 | 1 | 1.79% |
| Galveston | 3177 | 66 | 2.04% |
| Garza | 39 | 0 | 0.00% |
| Gillespie | 520 | 10 | 1.89% |

2022 Constitutional Amendment

STATE115594

| | | | |
|---|---|---|---|
| Glasscock | 2 | 0 | 0.00% |
| Goliad | 46 | 0 | 0.00% |
| Gonzales | 134 | 0 | 0.00% |
| Gray | 234 | 1 | 0.43% |
| Grayson | 965 | 33 | 3.31% |
| Gregg | 711 | 24 | 3.27% |
| Grimes | 349 | 17 | 4.64% |
| Guadalupe | 1370 | 32 | 2.28% |
| Hale | 130 | 2 | 1.52% |
| Hall | 35 | 0 | 0.00% |
| Hamilton | 0 | 0 | 0.00% |
| Hansford | 58 | 0 | 0.00% |
| Hardeman | 0 | 0 | 0.00% |
| Hardin | 363 | 1 | 0.27% |
| Harris | 31306 | 3193 | 9.26% |
| Harrison | 267 | 17 | 5.99% |
| Hartley | 46 | 0 | 0.00% |
| Haskell | 28 | 0 | 0.00% |
| Hays | 2460 | 67 | 2.65% |
| Hemphill | 31 | 0 | 0.00% |
| Henderson | 455 | 28 | 5.80% |
| Hidalgo | 2244 | 91 | 3.90% |
| Hill | 169 | 0 | 0.00% |
| Hockley | 103 | 0 | 0.00% |
| Hood | 384 | 87 | 18.47% |
| Hopkins | 176 | 8 | 4.35% |
| Houston | 175 | 0 | 0.00% |
| Howard | 273 | 4 | 1.44% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 689 | 12 | 1.71% |
| Hutchinson | 129 | 0 | 0.00% |
| Irion | 9 | 0 | 0.00% |
| Jack | 75 | 0 | 0.00% |
| Jackson | 74 | 0 | 0.00% |
| Jasper | 145 | 0 | 0.00% |
| Jeff Davis | 11 | 0 | 0.00% |
| Jefferson | 1477 | 75 | 4.83% |
| Jim Hogg | 90 | 0 | 0.00% |
| Jim Wells | 110 | 33 | 23.08% |
| Johnson | 1093 | 5 | 0.46% |
| Jones | 104 | 0 | 0.00% |
| Karnes | 220 | 4 | 1.79% |
| Kaufman | 355 | 94 | 20.94% |
| Kendall | 636 | 33 | 4.93% |

2022 Constitutional Amendment

STATE115595

| | | |
|---|---|---|
| Kenedy | 1 | 0 | 0.00% |
| Kent | 0 | 0 | 0.00% |
| Kerr | 883 | 49 | 5.26% |
| Kimble | 61 | 0 | 0.00% |
| King | 0 | 0 | 0.00% |
| Kinney | 0 | 0 | 0.00% |
| Kleberg | 207 | 0 | 0.00% |
| Knox | 22 | 0 | 0.00% |
| Lamar | 272 | 10 | 3.55% |
| Lamb | 56 | 0 | 0.00% |
| Lampasas | 226 | 5 | 2.16% |
| Lasalle | 71 | 11 | 13.41% |
| Lavaca | 338 | 0 | 0.00% |
| Lee | 156 | 5 | 3.11% |
| Leon | 170 | 0 | 0.00% |
| Liberty | 305 | 10 | 3.17% |
| Limestone | 165 | 2 | 1.20% |
| Lipscomb | 79 | 0 | 0.00% |
| Live Oak | 45 | 1 | 2.17% |
| Llano | 658 | 54 | 7.58% |
| Loving | 0 | 0 | 0.00% |
| Lubbock | 1585 | 77 | 4.63% |
| Lynn | 2 | 0 | 0.00% |
| Madison | 90 | 4 | 4.26% |
| Marion | 82 | 3 | 3.53% |
| Martin | 12 | 0 | 0.00% |
| Mason | 36 | 0 | 0.00% |
| Matagorda | 168 | 7 | 4.00% |
| Maverick | 108 | 0 | 0.00% |
| Mcculloch | 92 | 0 | 0.00% |
| Mclennan | 1817 | 102 | 5.32% |
| Mcmullen | 6 | 0 | 0.00% |
| Medina | 422 | 23 | 5.17% |
| Menard | 42 | 0 | 0.00% |
| Midland | 634 | 24 | 3.65% |
| Milam | 231 | 0 | 0.00% |
| Mills | 49 | 0 | 0.00% |
| Mitchell | 25 | 0 | 0.00% |
| Montague | 82 | 0 | 0.00% |
| Montgomery | 4492 | 34 | 0.75% |
| Moore | 84 | 0 | 0.00% |
| Morris | 80 | 0 | 0.00% |
| Motley | 20 | 0 | 0.00% |
| Nacogdoches | 594 | 12 | 1.98% |

2022 Constitutional Amendment

STATE115596

| | | | |
|---|---|---|---|
| Navarro | 122 | 22 | 15.28% |
| Newton | 51 | 8 | 13.56% |
| Nolan | 49 | 2 | 3.92% |
| Nueces | 2167 | 2 | 0.09% |
| Ochiltree | 64 | 5 | 7.25% |
| Oldham | 18 | 0 | 0.00% |
| Orange | 566 | 7 | 1.22% |
| Palo Pinto | 358 | 2 | 0.56% |
| Panola | 138 | 0 | 0.00% |
| Parker | 1023 | 41 | 3.85% |
| Parmer | 42 | 0 | 0.00% |
| Pecos | 85 | 0 | 0.00% |
| Polk | 452 | 16 | 3.42% |
| Potter | 902 | 29 | 3.11% |
| Presidio | 13 | 3 | 18.75% |
| Rains | 104 | 1 | 0.95% |
| Randall | 1674 | 54 | 3.13% |
| Reagan | 14 | 0 | 0.00% |
| Real | 0 | 0 | 0.00% |
| Red River | 92 | 0 | 0.00% |
| Reeves | 98 | 1 | 1.01% |
| Refugio | 50 | 3 | 5.66% |
| Roberts | 11 | 0 | 0.00% |
| Robertson | 122 | 2 | 1.61% |
| Rockwall | 576 | 14 | 2.37% |
| Runnels | 42 | 3 | 6.67% |
| Rusk | 339 | 2 | 0.59% |
| Sabine | 75 | 0 | 0.00% |
| San Augustine | 32 | 0 | 0.00% |
| San Jacinto | 208 | 7 | 3.26% |
| San Patricio | 418 | 24 | 5.43% |
| San Saba | 28 | 0 | 0.00% |
| Schleicher | 18 | 2 | 10.00% |
| Scurry | 59 | 1 | 1.67% |
| Shackelford | 55 | 0 | 0.00% |
| Shelby | 104 | 29 | 21.80% |
| Sherman | 21 | 4 | 16.00% |
| Smith | 1259 | 85 | 6.32% |
| Somervell | 32 | 0 | 0.00% |
| Starr | 121 | 40 | 24.84% |
| Stephens | 98 | 0 | 0.00% |
| Sterling | 6 | 0 | 0.00% |
| Stonewall | 11 | 0 | 0.00% |
| Sutton | 17 | 0 | 0.00% |

2022 Constitutional Amendment

STATE115597

| | | |
|---|---|---|
| Swisher | 90 | 0 | 0.00% |
| Tarrant | 9106 | 1583 | 14.81% |
| Taylor | 620 | 3 | 0.48% |
| Terrell | 1 | 1 | 50.00% |
| Terry | 67 | 1 | 1.47% |
| Throckmorton | 12 | 0 | 0.00% |
| Titus | 131 | 0 | 0.00% |
| Tom Green | 885 | 72 | 7.52% |
| Travis | 11158 | 410 | 3.54% |
| Trinity | 55 | 1 | 1.79% |
| Tyler | 222 | 5 | 2.20% |
| Upshur | 233 | 0 | 0.00% |
| Upton | 1 | 2 | 66.67% |
| Uvalde | 169 | 0 | 0.00% |
| Val Verde | 209 | 14 | 6.28% |
| Van Zandt | 187 | 4 | 2.09% |
| Victoria | 1686 | 42 | 2.43% |
| Walker | 354 | 15 | 4.07% |
| Waller | 250 | 2 | 0.79% |
| Ward | 0 | 0 | 0.00% |
| Washington | 253 | 6 | 2.32% |
| Webb | 455 | 13 | 2.78% |
| Wharton | 278 | 0 | 0.00% |
| Wheeler | 40 | 0 | 0.00% |
| Wichita | 579 | 0 | 0.00% |
| Wilbarger | 159 | 0 | 0.00% |
| Willacy | 44 | 0 | 0.00% |
| Williamson | 4280 | 122 | 2.77% |
| Wilson | 485 | 19 | 3.77% |
| Winkler | 0 | 0 | 0.00% |
| Wise | 520 | 13 | 2.44% |
| Wood | 369 | 0 | 0.00% |
| Yoakum | 23 | 0 | 0.00% |
| Young | 0 | 0 | 0.00% |
| Zapata | 20 | 5 | 20.00% |
| Zavala | 111 | 0 | 0.00% |
| **Statewide Totals** | **178054** | **9420** | **5.02%** |

2022 Constitutional Amendment

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|--------|--------------------------|--------------------------|------------|
| Anderson | 82 | 0 | 0.00% |
| Andrews | 3 | 0 | 0.00% |
| Angelina | 212 | 18 | 7.83% |
| Aransas | 73 | 0 | 0.00% |
| Archer | 16 | 0 | 0.00% |
| Armstrong | 4 | 0 | 0.00% |
| Atascosa | 163 | 9 | 5.23% |
| Austin | 62 | 0 | 0.00% |
| Bailey | 4 | 0 | 0.00% |
| Bandera | 60 | 0 | 0.00% |
| Bastrop | 453 | 9 | 1.95% |
| Baylor | 4 | 0 | 0.00% |
| Bee | 132 | 2 | 1.49% |
| Bell | 624 | 49 | 7.28% |
| Bexar | 11712 | 80 | 0.68% |
| Blanco | 55 | 0 | 0.00% |
| Borden | 0 | 0 | 0.00% |
| Bosque | 50 | 0 | 0.00% |
| Bowie | 265 | 20 | 7.02% |
| Brazoria | 749 | 12 | 1.58% |
| Brazos | 413 | 7 | 1.67% |
| Brewster | 98 | 0 | 0.00% |
| Briscoe | 0 | 0 | 0.00% |
| Brooks | 60 | 0 | 0.00% |
| Brown | 38 | 0 | 0.00% |
| Burleson | 70 | 0 | 0.00% |
| Burnet | 202 | 7 | 3.35% |
| Caldwell | 134 | 1 | 0.74% |
| Calhoun | 53 | 0 | 0.00% |
| Callahan | 21 | 0 | 0.00% |
| Cameron | 1323 | 21 | 1.56% |
| Camp | 59 | 0 | 0.00% |
| Carson | 5 | 0 | 0.00% |
| Cass | 119 | 0 | 0.00% |
| Castro | 10 | 0 | 0.00% |
| Chambers | 48 | 1 | 2.04% |
| Cherokee | 103 | 9 | 8.04% |
| Childress | 2 | 0 | 0.00% |
| Clay | 17 | 0 | 0.00% |
| Cochran | 5 | 0 | 0.00% |
| Coke | 8 | 2 | 20.00% |
| Coleman | 5 | 0 | 0.00% |

2022 Democratic Primary Runoff

STATE115599

| Collin | 1969 | 20 | 1.01% |
|---|---|---|---|
| Collingsworth | 0 | 0 | 0.00% |
| Colorado | 90 | 0 | 0.00% |
| Comal | 672 | 7 | 1.03% |
| Comanche | 28 | 0 | 0.00% |
| Concho | 0 | 0 | 0.00% |
| Cooke | 59 | 0 | 0.00% |
| Coryell | 113 | 1 | 0.88% |
| Cottle | 4 | 0 | 0.00% |
| Crane | 3 | 0 | 0.00% |
| Crockett | 3 | 1 | 25.00% |
| Crosby | 16 | 0 | 0.00% |
| Culberson | 12 | 0 | 0.00% |
| Dallam | 7 | 0 | 0.00% |
| Dallas | 7274 | 243 | 3.23% |
| Dawson | 13 | 1 | 7.14% |
| Deaf Smith | 19 | 0 | 0.00% |
| Delta | 23 | 0 | 0.00% |
| Denton | 1916 | 36 | 1.84% |
| Dewitt | 15 | 0 | 0.00% |
| Dickens | 4 | 0 | 0.00% |
| Dimmit | 191 | 25 | 11.57% |
| Donley | 1 | 0 | 0.00% |
| Duval | 435 | 69 | 13.69% |
| Eastland | 47 | 0 | 0.00% |
| Ector | 149 | 0 | 0.00% |
| Edwards | 2 | 0 | 0.00% |
| El Paso | 3797 | 264 | 6.50% |
| Ellis | 357 | 4 | 1.11% |
| Erath | 0 | 0 | 0.00% |
| Falls | 53 | 0 | 0.00% |
| Fannin | 94 | 4 | 4.08% |
| Fayette | 119 | 1 | 0.83% |
| Fisher | 29 | 0 | 0.00% |
| Floyd | 9 | 0 | 0.00% |
| Foard | 0 | 0 | 0.00% |
| Fort Bend | 2719 | 139 | 4.86% |
| Franklin | 17 | 0 | 0.00% |
| Freestone | 40 | 1 | 2.44% |
| Frio | 267 | 19 | 6.64% |
| Gaines | 9 | 1 | 10.00% |
| Galveston | 1232 | 29 | 2.30% |
| Garza | 4 | 0 | 0.00% |
| Gillespie | 159 | 6 | 3.64% |

2022 Democratic Primary Runoff

STATE115600

| | | |
|---|---|---|
| Glasscock | 1 | 0 | 0.00% |
| Goliad | 16 | 0 | 0.00% |
| Gonzales | 42 | 0 | 0.00% |
| Gray | 26 | 0 | 0.00% |
| Grayson | 323 | 7 | 2.12% |
| Gregg | 418 | 9 | 2.11% |
| Grimes | 77 | 3 | 3.75% |
| Guadalupe | 678 | 8 | 1.17% |
| Hale | 23 | 2 | 8.00% |
| Hall | 14 | 0 | 0.00% |
| Hamilton | 0 | 0 | 0.00% |
| Hansford | 1 | 0 | 0.00% |
| Hardeman | 0 | 0 | 0.00% |
| Hardin | 78 | 1 | 1.27% |
| Harris | 17951 | 1125 | 5.90% |
| Harrison | 182 | 19 | 9.45% |
| Hartley | 3 | 0 | 0.00% |
| Haskell | 12 | 0 | 0.00% |
| Hays | 1448 | 33 | 2.23% |
| Hemphill | 4 | 0 | 0.00% |
| Henderson | 221 | 11 | 4.74% |
| Hidalgo | 1902 | 117 | 5.79% |
| Hill | 49 | 0 | 0.00% |
| Hockley | 19 | 0 | 0.00% |
| Hood | 134 | 14 | 9.46% |
| Hopkins | 75 | 2 | 2.60% |
| Houston | 87 | 3 | 3.33% |
| Howard | 60 | 0 | 0.00% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 165 | 2 | 1.20% |
| Hutchinson | 18 | 0 | 0.00% |
| Irion | 0 | 0 | 0.00% |
| Jack | 14 | 0 | 0.00% |
| Jackson | 27 | 0 | 0.00% |
| Jasper | 74 | 1 | 1.33% |
| Jeff Davis | 4 | 0 | 0.00% |
| Jefferson | 1425 | 64 | 4.30% |
| Jim Hogg | 171 | 0 | 0.00% |
| Jim Wells | 117 | 30 | 20.41% |
| Johnson | 279 | 9 | 3.13% |
| Jones | 40 | 0 | 0.00% |
| Karnes | 91 | 0 | 0.00% |
| Kaufman | 170 | 20 | 10.53% |
| Kendall | 156 | 6 | 3.70% |

2022 Democratic Primary Runoff

STATE115601

| | | | |
|---|---|---|---|
| Kenedy | 6 | 0 | 0.00% |
| Kent | 0 | 0 | 0.00% |
| Kerr | 209 | 5 | 2.34% |
| Kimble | 6 | 0 | 0.00% |
| King | 0 | 0 | 0.00% |
| Kinney | 0 | 0 | 0.00% |
| Kleberg | 166 | 0 | 0.00% |
| Knox | 4 | 0 | 0.00% |
| Lamar | 110 | 4 | 3.51% |
| Lamb | 28 | 0 | 0.00% |
| Lampasas | 61 | 0 | 0.00% |
| Lasalle | 145 | 27 | 15.70% |
| Lavaca | 94 | 1 | 1.05% |
| Lee | 43 | 2 | 4.44% |
| Leon | 40 | 0 | 0.00% |
| Liberty | 107 | 3 | 2.73% |
| Limestone | 60 | 1 | 1.64% |
| Lipscomb | 11 | 0 | 0.00% |
| Live Oak | 0 | 0 | 0.00% |
| Llano | 176 | 2 | 1.12% |
| Loving | 0 | 0 | 0.00% |
| Lubbock | 571 | 19 | 3.22% |
| Lynn | 2 | 0 | 0.00% |
| Madison | 20 | 0 | 0.00% |
| Marion | 59 | 1 | 1.67% |
| Martin | 2 | 0 | 0.00% |
| Mason | 7 | 0 | 0.00% |
| Matagorda | 107 | 1 | 0.93% |
| Maverick | 101 | 4 | 3.81% |
| Mcculloch | 23 | 1 | 4.17% |
| Mclennan | 773 | 34 | 4.21% |
| Mcmullen | 1 | 0 | 0.00% |
| Medina | 147 | 14 | 8.70% |
| Menard | 0 | 0 | 0.00% |
| Midland | 150 | 1 | 0.66% |
| Milam | 76 | 0 | 0.00% |
| Mills | 7 | 0 | 0.00% |
| Mitchell | 8 | 1 | 11.11% |
| Montague | 19 | 0 | 0.00% |
| Montgomery | 1306 | 5 | 0.38% |
| Moore | 5 | 0 | 0.00% |
| Morris | 0 | 0 | 0.00% |
| Motley | 1 | 0 | 0.00% |
| Nacogdoches | 230 | 3 | 1.29% |

2022 Democratic Primary Runoff

STATE115602

| | | | |
|---|---|---|---|
| Navarro | 75 | 6 | 7.41% |
| Newton | 7 | 2 | 22.22% |
| Nolan | 26 | 0 | 0.00% |
| Nueces | 1628 | 3 | 0.18% |
| Ochiltree | 1 | 0 | 0.00% |
| Oldham | 0 | 0 | 0.00% |
| Orange | 247 | 0 | 0.00% |
| Palo Pinto | 52 | 0 | 0.00% |
| Panola | 48 | 0 | 0.00% |
| Parker | 301 | 9 | 2.90% |
| Parmer | 8 | 0 | 0.00% |
| Pecos | 46 | 6 | 11.54% |
| Polk | 143 | 1 | 0.69% |
| Potter | 233 | 7 | 2.92% |
| Presidio | 6 | 4 | 40.00% |
| Rains | 20 | 0 | 0.00% |
| Randall | 281 | 6 | 2.09% |
| Reagan | 0 | 0 | 0.00% |
| Real | 0 | 0 | 0.00% |
| Red River | 37 | 0 | 0.00% |
| Reeves | 90 | 0 | 0.00% |
| Refugio | 39 | 0 | 0.00% |
| Roberts | 2 | 0 | 0.00% |
| Robertson | 57 | 0 | 0.00% |
| Rockwall | 162 | 1 | 0.61% |
| Runnels | 14 | 0 | 0.00% |
| Rusk | 126 | 0 | 0.00% |
| Sabine | 23 | 0 | 0.00% |
| San Augustine | 22 | 0 | 0.00% |
| San Jacinto | 77 | 3 | 3.75% |
| San Patricio | 286 | 6 | 2.05% |
| San Saba | 4 | 0 | 0.00% |
| Schleicher | 4 | 0 | 0.00% |
| Scurry | 11 | 0 | 0.00% |
| Shackelford | 0 | 0 | 0.00% |
| Shelby | 31 | 0 | 0.00% |
| Sherman | 1 | 0 | 0.00% |
| Smith | 585 | 30 | 4.88% |
| Somervell | 14 | 0 | 0.00% |
| Starr | 73 | 24 | 24.74% |
| Stephens | 9 | 0 | 0.00% |
| Sterling | 0 | 0 | 0.00% |
| Stonewall | 4 | 0 | 0.00% |
| Sutton | 4 | 0 | 0.00% |

2022 Democratic Primary Runoff

STATE115603

| | | |
|---|---:|---:|
| Swisher | 22 | 0 | 0.00% |
| Tarrant | 4664 | 409 | 8.06% |
| Taylor | 246 | 1 | 0.40% |
| Terrell | 5 | 0 | 0.00% |
| Terry | 16 | 0 | 0.00% |
| Throckmorton | 0 | 0 | 0.00% |
| Titus | 75 | 0 | 0.00% |
| Tom Green | 318 | 22 | 6.47% |
| Travis | 7849 | 193 | 2.40% |
| Trinity | 20 | 0 | 0.00% |
| Tyler | 19 | 0 | 0.00% |
| Upshur | 99 | 4 | 3.88% |
| Upton | 0 | 1 | 100.00% |
| Uvalde | 156 | 9 | 5.45% |
| Val Verde | 1 | 3 | 75.00% |
| Van Zandt | 69 | 4 | 5.48% |
| Victoria | 478 | 4 | 0.83% |
| Walker | 153 | 8 | 4.97% |
| Waller | 137 | 4 | 2.84% |
| Ward | 0 | 0 | 0.00% |
| Washington | 69 | 0 | 0.00% |
| Webb | 750 | 33 | 4.21% |
| Wharton | 144 | 5 | 3.36% |
| Wheeler | 7 | 0 | 0.00% |
| Wichita | 262 | 1 | 0.38% |
| Wilbarger | 42 | 0 | 0.00% |
| Willacy | 40 | 0 | 0.00% |
| Williamson | 2100 | 42 | 1.96% |
| Wilson | 246 | 4 | 1.60% |
| Winkler | 0 | 0 | 0.00% |
| Wise | 117 | 3 | 2.50% |
| Wood | 93 | 0 | 0.00% |
| Yoakum | 2 | 0 | 0.00% |
| Young | 0 | 0 | 0.00% |
| Zapata | 2 | 0 | 0.00% |
| Zavala | 132 | 1 | 0.75% |
| **Statewide Totals** | **94092** | **3592** | **3.68%** |

2022 Democratic Primary Runoff

STATE115604

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|---|---|---|---|
| Anderson | 79 | 0 | 0.00% |
| Andrews | 38 | 0 | 0.00% |
| Angelina | 190 | 27 | 12.44% |
| Aransas | 80 | 5 | 5.88% |
| Archer | 34 | 0 | 0.00% |
| Armstrong | 20 | 0 | 0.00% |
| Atascosa | 117 | 0 | 0.00% |
| Austin | 136 | 1 | 0.73% |
| Bailey | 25 | 0 | 0.00% |
| Bandera | 147 | 2 | 1.34% |
| Bastrop | 381 | 8 | 2.06% |
| Baylor | 9 | 0 | 0.00% |
| Bee | 54 | 0 | 0.00% |
| Bell | 1092 | 98 | 8.24% |
| Bexar | 5858 | 50 | 0.85% |
| Blanco | 112 | 11 | 8.94% |
| Borden | 3 | 0 | 0.00% |
| Bosque | 99 | 0 | 0.00% |
| Bowie | 286 | 15 | 4.98% |
| Brazoria | 1307 | 50 | 3.68% |
| Brazos | 713 | 44 | 5.81% |
| Brewster | 35 | 0 | 0.00% |
| Briscoe | 30 | 0 | 0.00% |
| Brooks | 2 | 0 | 0.00% |
| Brown | 391 | 1 | 0.26% |
| Burleson | 129 | 1 | 0.77% |
| Burnet | 626 | 19 | 2.95% |
| Caldwell | 90 | 3 | 3.23% |
| Calhoun | 27 | 0 | 0.00% |
| Callahan | 141 | 5 | 3.42% |
| Cameron | 290 | 7 | 2.36% |
| Camp | 29 | 0 | 0.00% |
| Carson | 33 | 0 | 0.00% |
| Cass | 214 | 1 | 0.47% |
| Castro | 24 | 0 | 0.00% |
| Chambers | 88 | 2 | 2.22% |
| Cherokee | 97 | 10 | 9.35% |
| Childress | 20 | 0 | 0.00% |
| Clay | 45 | 0 | 0.00% |
| Cochran | 33 | 4 | 10.81% |
| Coke | 65 | 1 | 1.52% |
| Coleman | 42 | 0 | 0.00% |

2022 Republican Primary Runoff

| | | | |
|---|---|---|---|
| Collin | 3368 | 49 | 1.43% |
| Collingsworth | 0 | 0 | 0.00% |
| Colorado | 83 | 7 | 7.78% |
| Comal | 1842 | 35 | 1.86% |
| Comanche | 88 | 1 | 1.12% |
| Concho | 1 | 0 | 0.00% |
| Cooke | 170 | 0 | 0.00% |
| Coryell | 270 | 0 | 0.00% |
| Cottle | 11 | 0 | 0.00% |
| Crane | 15 | 0 | 0.00% |
| Crockett | 12 | 0 | 0.00% |
| Crosby | 32 | 0 | 0.00% |
| Culberson | 0 | 0 | 0.00% |
| Dallam | 48 | 0 | 0.00% |
| Dallas | 3247 | 130 | 3.85% |
| Dawson | 76 | 1 | 1.30% |
| Deaf Smith | 102 | 0 | 0.00% |
| Delta | 78 | 0 | 0.00% |
| Denton | 3030 | 74 | 2.38% |
| Dewitt | 69 | 0 | 0.00% |
| Dickens | 32 | 0 | 0.00% |
| Dimmit | 0 | 0 | 0.00% |
| Donley | 10 | 0 | 0.00% |
| Duval | 1 | 0 | 0.00% |
| Eastland | 176 | 0 | 0.00% |
| Ector | 396 | 0 | 0.00% |
| Edwards | 8 | 0 | 0.00% |
| El Paso | 284 | 23 | 7.49% |
| Ellis | 333 | 4 | 1.19% |
| Erath | 2 | 0 | 0.00% |
| Falls | 68 | 0 | 0.00% |
| Fannin | 131 | 13 | 9.03% |
| Fayette | 189 | 1 | 0.53% |
| Fisher | 11 | 0 | 0.00% |
| Floyd | 32 | 1 | 3.03% |
| Foard | 0 | 0 | 0.00% |
| Fort Bend | 1481 | 70 | 4.51% |
| Franklin | 41 | 0 | 0.00% |
| Freestone | 68 | 1 | 1.45% |
| Frio | 8 | 2 | 20.00% |
| Gaines | 53 | 2 | 3.64% |
| Galveston | 1714 | 42 | 2.39% |
| Garza | 42 | 0 | 0.00% |
| Gillespie | 348 | 10 | 2.79% |

2022 Republican Primary Runoff

STATE115606

| | | | |
|---|---|---|---|
| Glasscock | 12 | 0 | 0.00% |
| Goliad | 27 | 0 | 0.00% |
| Gonzales | 80 | 0 | 0.00% |
| Gray | 174 | 0 | 0.00% |
| Grayson | 569 | 10 | 1.73% |
| Gregg | 315 | 6 | 1.87% |
| Grimes | 214 | 9 | 4.04% |
| Guadalupe | 751 | 24 | 3.10% |
| Hale | 106 | 2 | 1.85% |
| Hall | 18 | 0 | 0.00% |
| Hamilton | 0 | 0 | 0.00% |
| Hansford | 57 | 0 | 0.00% |
| Hardeman | 0 | 0 | 0.00% |
| Hardin | 232 | 0 | 0.00% |
| Harris | 13879 | 1169 | 7.77% |
| Harrison | 65 | 4 | 5.80% |
| Hartley | 40 | 0 | 0.00% |
| Haskell | 11 | 0 | 0.00% |
| Hays | 971 | 42 | 4.15% |
| Hemphill | 48 | 2 | 4.00% |
| Henderson | 229 | 17 | 6.91% |
| Hidalgo | 180 | 3 | 1.64% |
| Hill | 106 | 0 | 0.00% |
| Hockley | 77 | 2 | 2.53% |
| Hood | 275 | 46 | 14.33% |
| Hopkins | 88 | 1 | 1.12% |
| Houston | 87 | 3 | 3.33% |
| Howard | 176 | 1 | 0.56% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 497 | 11 | 2.17% |
| Hutchinson | 105 | 0 | 0.00% |
| Irion | 6 | 0 | 0.00% |
| Jack | 51 | 2 | 3.77% |
| Jackson | 43 | 0 | 0.00% |
| Jasper | 48 | 0 | 0.00% |
| Jeff Davis | 14 | 0 | 0.00% |
| Jefferson | 162 | 11 | 6.36% |
| Jim Hogg | 0 | 0 | 0.00% |
| Jim Wells | 9 | 0 | 0.00% |
| Johnson | 796 | 14 | 1.73% |
| Jones | 68 | 0 | 0.00% |
| Karnes | 161 | 3 | 1.83% |
| Kaufman | 156 | 55 | 26.07% |
| Kendall | 599 | 20 | 3.23% |

2022 Republican Primary Runoff

STATE115607

| County | Votes | Count | Percent |
|---|---|---|---|
| Kenedy | 0 | 0 | 0.00% |
| Kent | 0 | 0 | 0.00% |
| Kerr | 679 | 26 | 3.69% |
| Kimble | 64 | 0 | 0.00% |
| King | 0 | 0 | 0.00% |
| Kinney | 0 | 0 | 0.00% |
| Kleberg | 34 | 0 | 0.00% |
| Knox | 12 | 0 | 0.00% |
| Lamar | 157 | 6 | 3.68% |
| Lamb | 38 | 0 | 0.00% |
| Lampasas | 187 | 4 | 2.09% |
| Lasalle | 4 | 0 | 0.00% |
| Lavaca | 237 | 0 | 0.00% |
| Lee | 99 | 1 | 1.00% |
| Leon | 147 | 0 | 0.00% |
| Liberty | 200 | 2 | 0.99% |
| Limestone | 109 | 1 | 0.91% |
| Lipscomb | 60 | 0 | 0.00% |
| Live Oak | 0 | 0 | 0.00% |
| Llano | 473 | 29 | 5.78% |
| Loving | 0 | 0 | 0.00% |
| Lubbock | 938 | 40 | 4.09% |
| Lynn | 4 | 0 | 0.00% |
| Madison | 73 | 0 | 0.00% |
| Marion | 16 | 0 | 0.00% |
| Martin | 11 | 0 | 0.00% |
| Mason | 26 | 0 | 0.00% |
| Matagorda | 52 | 6 | 10.34% |
| Maverick | 3 | 0 | 0.00% |
| Mcculloch | 69 | 0 | 0.00% |
| Mclennan | 1133 | 72 | 5.98% |
| Mcmullen | 6 | 0 | 0.00% |
| Medina | 240 | 12 | 4.76% |
| Menard | 0 | 0 | 0.00% |
| Midland | 523 | 12 | 2.24% |
| Milam | 139 | 0 | 0.00% |
| Mills | 45 | 0 | 0.00% |
| Mitchell | 22 | 0 | 0.00% |
| Montague | 72 | 0 | 0.00% |
| Montgomery | 3035 | 39 | 1.27% |
| Moore | 56 | 0 | 0.00% |
| Morris | 0 | 0 | 0.00% |
| Motley | 19 | 0 | 0.00% |
| Nacogdoches | 389 | 9 | 2.26% |

2022 Republican Primary Runoff

STATE115608

| | | | |
|---|---:|---:|---:|
| Navarro | 69 | 4 | 5.48% |
| Newton | 23 | 4 | 14.81% |
| Nolan | 23 | 0 | 0.00% |
| Nueces | 394 | 2 | 0.51% |
| Ochiltree | 42 | 0 | 0.00% |
| Oldham | 0 | 0 | 0.00% |
| Orange | 254 | 1 | 0.39% |
| Palo Pinto | 307 | 1 | 0.32% |
| Panola | 102 | 0 | 0.00% |
| Parker | 795 | 29 | 3.52% |
| Parmer | 30 | 0 | 0.00% |
| Pecos | 22 | 3 | 12.00% |
| Polk | 268 | 20 | 6.94% |
| Potter | 609 | 22 | 3.49% |
| Presidio | 1 | 0 | 0.00% |
| Rains | 77 | 0 | 0.00% |
| Randall | 1376 | 17 | 1.22% |
| Reagan | 14 | 1 | 6.67% |
| Real | 0 | 0 | 0.00% |
| Red River | 44 | 0 | 0.00% |
| Reeves | 7 | 0 | 0.00% |
| Refugio | 9 | 0 | 0.00% |
| Roberts | 12 | 0 | 0.00% |
| Robertson | 55 | 0 | 0.00% |
| Rockwall | 444 | 6 | 1.33% |
| Runnels | 32 | 1 | 3.03% |
| Rusk | 240 | 2 | 0.83% |
| Sabine | 50 | 0 | 0.00% |
| San Augustine | 14 | 0 | 0.00% |
| San Jacinto | 147 | 1 | 0.68% |
| San Patricio | 117 | 0 | 0.00% |
| San Saba | 18 | 0 | 0.00% |
| Schleicher | 18 | 2 | 10.00% |
| Scurry | 55 | 1 | 1.79% |
| Shackelford | 46 | 0 | 0.00% |
| Shelby | 83 | 0 | 0.00% |
| Sherman | 16 | 3 | 15.79% |
| Smith | 635 | 51 | 7.43% |
| Somervell | 23 | 1 | 4.17% |
| Starr | 4 | 0 | 0.00% |
| Stephens | 93 | 0 | 0.00% |
| Sterling | 0 | 0 | 0.00% |
| Stonewall | 9 | 0 | 0.00% |
| Sutton | 12 | 0 | 0.00% |

2022 Republican Primary Runoff

STATE115609

| | | |
|---|---:|---:|
| Swisher | 54 | 0 | 0.00% |
| Tarrant | 4873 | 689 | 12.39% |
| Taylor | 401 | 2 | 0.50% |
| Terrell | 11 | 0 | 0.00% |
| Terry | 61 | 0 | 0.00% |
| Throckmorton | 12 | 0 | 0.00% |
| Titus | 92 | 0 | 0.00% |
| Tom Green | 566 | 24 | 4.07% |
| Travis | 2164 | 90 | 3.99% |
| Trinity | 23 | 0 | 0.00% |
| Tyler | 184 | 6 | 3.16% |
| Upshur | 142 | 4 | 2.74% |
| Upton | 0 | 1 | 100.00% |
| Uvalde | 23 | 0 | 0.00% |
| Val Verde | 0 | 1 | 100.00% |
| Van Zandt | 92 | 5 | 5.15% |
| Victoria | 1152 | 16 | 1.37% |
| Walker | 222 | 7 | 3.06% |
| Waller | 110 | 0 | 0.00% |
| Ward | 0 | 0 | 0.00% |
| Washington | 168 | 0 | 0.00% |
| Webb | 17 | 0 | 0.00% |
| Wharton | 129 | 0 | 0.00% |
| Wheeler | 40 | 0 | 0.00% |
| Wichita | 201 | 3 | 1.47% |
| Wilbarger | 101 | 0 | 0.00% |
| Willacy | 3 | 0 | 0.00% |
| Williamson | 1807 | 63 | 3.37% |
| Wilson | 251 | 8 | 3.09% |
| Winkler | 1 | 0 | 0.00% |
| Wise | 340 | 14 | 3.95% |
| Wood | 0 | 0 | 0.00% |
| Yoakum | 20 | 0 | 0.00% |
| Young | 0 | 0 | 0.00% |
| Zapata | 1 | 0 | 0.00% |
| Zavala | 0 | 0 | 0.00% |
| **Statewide Totals** | **81924** | **3652** | **4.27%** |

2022 Republican Primary Runoff

STATE115610

| County | Ballots by Mail Accepted | Ballots by Mail Rejected | % Rejected |
|---|---|---|---|
| Anderson | 370 | 0 | 0.00% |
| Andrews | 62 | 0 | 0.00% |
| Angelina | 854 | 35 | 3.94% |
| Aransas | 391 | 11 | 2.74% |
| Archer | 89 | 0 | 0.00% |
| Armstrong | 37 | 1 | 2.63% |
| Atascosa | 464 | 10 | 2.11% |
| Austin | 367 | 4 | 1.08% |
| Bailey | 61 | 1 | 1.61% |
| Bandera | 368 | 8 | 2.13% |
| Bastrop | 1363 | 8 | 0.58% |
| Baylor | 28 | 0 | 0.00% |
| Bee | 386 | 4 | 1.03% |
| Bell | 3593 | 209 | 5.50% |
| Bexar | 30401 | 361 | 1.17% |
| Blanco | 271 | 6 | 2.17% |
| Borden | 15 | 1 | 6.25% |
| Bosque | 250 | 2 | 0.79% |
| Bowie | 1097 | 37 | 3.26% |
| Brazoria | 3802 | 60 | 1.55% |
| Brazos | 2221 | 64 | 2.80% |
| Brewster | 219 | 0 | 0.00% |
| Briscoe | 65 | 0 | 0.00% |
| Brooks | 144 | 2 | 1.37% |
| Brown | 610 | 2 | 0.33% |
| Burleson | 299 | 8 | 2.61% |
| Burnet | 1422 | 32 | 2.20% |
| Caldwell | 450 | 17 | 3.64% |
| Calhoun | 213 | 1 | 0.47% |
| Callahan | 203 | 10 | 4.69% |
| Cameron | 3156 | 43 | 1.34% |
| Camp | 165 | 0 | 0.00% |
| Carson | 58 | 1 | 1.69% |
| Cass | 572 | 0 | 0.00% |
| Castro | 62 | 0 | 0.00% |
| Chambers | 261 | 0 | 0.00% |
| Cherokee | 439 | 20 | 4.36% |
| Childress | 46 | 0 | 0.00% |
| Clay | 100 | 1 | 0.99% |
| Cochran | 55 | 0 | 0.00% |
| Coke | 128 | 1 | 0.78% |
| Coleman | 113 | 2 | 1.74% |
| Collin | 11943 | 112 | 0.93% |
| Collingsworth | 1 | 0 | 0.00% |
| Colorado | 314 | 14 | 4.27% |

2022 General Election

STATE115611

| | | | |
|---|---|---|---|
| Comal | 3763 | 75 | 1.95% |
| Comanche | 190 | 3 | 1.55% |
| Concho | 65 | 3 | 4.41% |
| Cooke | 407 | 0 | 0.00% |
| Coryell | 720 | 0 | 0.00% |
| Cottle | 18 | 0 | 0.00% |
| Crane | 35 | 1 | 2.78% |
| Crockett | 4 | 0 | 0.00% |
| Crosby | 92 | 0 | 0.00% |
| Culberson | 18 | 0 | 0.00% |
| Dallam | 74 | 0 | 0.00% |
| Dallas | 18714 | 336 | 1.76% |
| Dawson | 150 | 1 | 0.66% |
| Deaf Smith | 201 | 0 | 0.00% |
| Delta | 144 | 0 | 0.00% |
| Denton | 10199 | 172 | 1.66% |
| Dewitt | 228 | 3 | 1.30% |
| Dickens | 34 | 0 | 0.00% |
| Dimmit | 203 | 0 | 0.00% |
| Donley | 0 | 1 | 100.00% |
| Duval | 403 | 101 | 20.04% |
| Eastland | 356 | 1 | 0.28% |
| Ector | 873 | 62 | 6.63% |
| Edwards | 23 | 1 | 4.17% |
| El Paso | 4036 | 559 | 12.17% |
| Ellis | 1540 | 69 | 4.29% |
| Erath | 370 | 12 | 3.14% |
| Falls | 181 | 0 | 0.00% |
| Fannin | 532 | 11 | 2.03% |
| Fayette | 470 | 7 | 1.47% |
| Fisher | 68 | 0 | 0.00% |
| Floyd | 65 | 0 | 0.00% |
| Foard | 6 | 0 | 0.00% |
| Fort Bend | 9831 | 524 | 5.06% |
| Franklin | 113 | 0 | 0.00% |
| Freestone | 192 | 1 | 0.52% |
| Frio | 357 | 3 | 0.83% |
| Gaines | 73 | 0 | 0.00% |
| Galveston | 5270 | 98 | 1.83% |
| Garza | 48 | 0 | 0.00% |
| Gillespie | 802 | 8 | 0.99% |
| Glasscock | 23 | 0 | 0.00% |
| Goliad | 95 | 6 | 5.94% |
| Gonzales | 262 | 1 | 0.38% |
| Gray | 353 | 1 | 0.28% |
| Grayson | 1821 | 32 | 1.73% |
| Gregg | 1519 | 19 | 1.24% |

2022 General Election

STATE115612

| | | | |
|---|---|---|---|
| Grimes | 517 | 32 | 5.83% |
| Guadalupe | 2502 | 80 | 3.10% |
| Hale | 210 | 0 | 0.00% |
| Hall | 0 | 0 | 0.00% |
| Hamilton | 98 | 3 | 2.97% |
| Hansford | 21 | 0 | 0.00% |
| Hardeman | 8 | 0 | 0.00% |
| Hardin | 580 | 8 | 1.36% |
| Harris | 59708 | 2791 | 4.47% |
| Harrison | 539 | 27 | 4.77% |
| Hartley | 71 | 1 | 1.39% |
| Haskell | 62 | 0 | 0.00% |
| Hays | 4527 | 196 | 4.15% |
| Hemphill | 70 | 0 | 0.00% |
| Henderson | 1016 | 17 | 1.65% |
| Hidalgo | 4920 | 98 | 1.95% |
| Hill | 331 | 0 | 0.00% |
| Hockley | 178 | 0 | 0.00% |
| Hood | 1098 | 92 | 7.73% |
| Hopkins | 285 | 5 | 1.72% |
| Houston | 311 | 0 | 0.00% |
| Howard | 350 | 12 | 3.31% |
| Hudspeth | 0 | 0 | 0.00% |
| Hunt | 1164 | 28 | 2.35% |
| Hutchinson | 211 | 1 | 0.47% |
| Irion | 16 | 0 | 0.00% |
| Jack | 127 | 0 | 0.00% |
| Jackson | 143 | 12 | 7.74% |
| Jasper | 309 | 1 | 0.32% |
| Jeff Davis | 32 | 1 | 3.03% |
| Jefferson | 2841 | 158 | 5.27% |
| Jim Hogg | 249 | 0 | 0.00% |
| Jim Wells | 436 | 83 | 15.99% |
| Johnson | 1920 | 0 | 0.00% |
| Jones | 223 | 0 | 0.00% |
| Karnes | 320 | 10 | 3.03% |
| Kaufman | 811 | 33 | 3.91% |
| Kendall | 1201 | 32 | 2.60% |
| Kenedy | 8 | 0 | 0.00% |
| Kent | 4 | 0 | 0.00% |
| Kerr | 1436 | 10 | 0.69% |
| Kimble | 97 | 1 | 1.02% |
| King | 3 | 0 | 0.00% |
| Kinney | 0 | 0 | 0.00% |
| Kleberg | 405 | 2 | 0.49% |
| Knox | 36 | 0 | 0.00% |
| Lamar | 554 | 8 | 1.42% |

2022 General Election

STATE115613

| | | | |
|---|---|---|---|
| Lamb | 160 | 0 | 0.00% |
| Lampasas | 382 | 13 | 3.29% |
| Lasalle | 162 | 2 | 1.22% |
| Lavaca | 507 | 0 | 0.00% |
| Lee | 245 | 11 | 4.30% |
| Leon | 294 | 1 | 0.34% |
| Liberty | 510 | 10 | 1.92% |
| Limestone | 300 | 1 | 0.33% |
| Lipscomb | 100 | 2 | 1.96% |
| Live Oak | 129 | 4 | 3.01% |
| Llano | 191 | 10 | 4.98% |
| Loving | 0 | 0 | 0.00% |
| Lubbock | 2656 | 78 | 2.85% |
| Lynn | 1 | 0 | 0.00% |
| Madison | 152 | 3 | 1.94% |
| Marion | 165 | 14 | 7.82% |
| Martin | 29 | 0 | 0.00% |
| Mason | 73 | 0 | 0.00% |
| Matagorda | 346 | 14 | 3.89% |
| Maverick | 222 | 14 | 5.93% |
| Mcculloch | 0 | 0 | 0.00% |
| Mclennan | 3760 | 121 | 3.12% |
| Mcmullen | 12 | 1 | 7.69% |
| Medina | 696 | 28 | 3.87% |
| Menard | 56 | 0 | 0.00% |
| Midland | 407 | 20 | 4.68% |
| Milam | 372 | 2 | 0.53% |
| Mills | 74 | 7 | 8.64% |
| Mitchell | 51 | 0 | 0.00% |
| Montague | 200 | 2 | 0.99% |
| Montgomery | 8943 | 43 | 0.48% |
| Moore | 126 | 0 | 0.00% |
| Morris | 132 | 10 | 7.04% |
| Motley | 34 | 0 | 0.00% |
| Nacogdoches | 968 | 9 | 0.92% |
| Navarro | 314 | 19 | 5.71% |
| Newton | 100 | 9 | 8.26% |
| Nolan | 119 | 0 | 0.00% |
| Nueces | 6784 | 2 | 0.03% |
| Ochiltree | 99 | 0 | 0.00% |
| Oldham | 35 | 1 | 2.78% |
| Orange | 910 | 18 | 1.94% |
| Palo Pinto | 487 | 11 | 2.21% |
| Panola | 247 | 1 | 0.40% |
| Parker | 1837 | 22 | 1.18% |
| Parmer | 58 | 0 | 0.00% |
| Pecos | 159 | 5 | 3.05% |

2022 General Election

STATE115614

| | | | |
|---|---:|---:|---:|
| Polk | 2643 | 45 | 1.67% |
| Potter | 1356 | 54 | 3.83% |
| Presidio | 69 | 4 | 5.48% |
| Rains | 174 | 0 | 0.00% |
| Randall | 2559 | 33 | 1.27% |
| Reagan | 16 | 0 | 0.00% |
| Real | 54 | 0 | 0.00% |
| Red River | 157 | 0 | 0.00% |
| Reeves | 146 | 1 | 0.68% |
| Refugio | 95 | 0 | 0.00% |
| Roberts | 24 | 0 | 0.00% |
| Robertson | 207 | 6 | 2.82% |
| Rockwall | 1186 | 19 | 1.58% |
| Runnels | 120 | 0 | 0.00% |
| Rusk | 634 | 3 | 0.47% |
| Sabine | 165 | 1 | 0.60% |
| San Augustine | 87 | 1 | 1.14% |
| San Jacinto | 421 | 1 | 0.24% |
| San Patricio | 842 | 10 | 1.17% |
| San Saba | 50 | 0 | 0.00% |
| Schleicher | 69 | 0 | 0.00% |
| Scurry | 125 | 4 | 3.10% |
| Shackelford | 92 | 0 | 0.00% |
| Shelby | 252 | 14 | 5.26% |
| Sherman | 25 | 0 | 0.00% |
| Smith | 2637 | 72 | 2.66% |
| Somervell | 69 | 1 | 1.43% |
| Starr | 449 | 157 | 25.91% |
| Stephens | 133 | 2 | 1.48% |
| Sterling | 7 | 0 | 0.00% |
| Stonewall | 34 | 0 | 0.00% |
| Sutton | 33 | 0 | 0.00% |
| Swisher | 124 | 1 | 0.80% |
| Tarrant | 21751 | 558 | 2.50% |
| Taylor | 1333 | 35 | 2.56% |
| Terrell | 0 | 0 | 0.00% |
| Terry | 108 | 1 | 0.92% |
| Throckmorton | 24 | 1 | 4.00% |
| Titus | 243 | 6 | 2.41% |
| Tom Green | 1653 | 62 | 3.62% |
| Travis | 19993 | 473 | 2.31% |
| Trinity | 128 | 0 | 0.00% |
| Tyler | 319 | 4 | 1.24% |
| Upshur | 450 | 5 | 1.10% |
| Upton | 27 | 0 | 0.00% |
| Uvalde | 395 | 20 | 4.82% |
| Val Verde | 0 | 0 | 0.00% |

2022 General Election

STATE115615

| | | | |
|---|---:|---:|---:|
| Van Zandt | 448 | 16 | 3.45% |
| Victoria | 2355 | 11 | 0.46% |
| Walker | 682 | 4 | 0.58% |
| Waller | 485 | 1 | 0.21% |
| Ward | 121 | 0 | 0.00% |
| Washington | 488 | 5 | 1.01% |
| Webb | 1064 | 23 | 2.12% |
| Wharton | 501 | 3 | 0.60% |
| Wheeler | 77 | 0 | 0.00% |
| Wichita | 1232 | 10 | 0.81% |
| Wilbarger | 229 | 0 | 0.00% |
| Willacy | 127 | 12 | 8.63% |
| Williamson | 8273 | 184 | 2.18% |
| Wilson | 840 | 9 | 1.06% |
| Winkler | 42 | 0 | 0.00% |
| Wise | 847 | 20 | 2.31% |
| Wood | 757 | 0 | 0.00% |
| Yoakum | 35 | 5 | 12.50% |
| Young | 0 | 0 | 0.00% |
| Zapata | 81 | 0 | 0.00% |
| Zavala | 166 | 2 | 1.19% |
| **Statewide Totals** | **336349** | **9348** | **2.70%** |

2022 General Election

STATE115616

```
*********************************************************

                    TRANSCRIPTION OF

           Senate Committee on State Affairs

                      (PART II)

                    August 9, 2021

                  2:15 p.m., E1.004

                    In Re: SB1

*********************************************************
```

TRANSCRIPTION DATE: March 3, 2023

STATE155409

94

1  think that's because you have seen a significant
2  expansion of voting by mail without the safeguards.  For
3  example, when you go to vote in person, the requirement
4  for an identification, or you have to sign that
5  reasonable declaration form and, essentially, vote
6  provisionally.
7        Bringing mail-in ballots up to that same
8  standard is very important, especially, as people use it
9  more and more and as Texas appears to be reluctant to
10  put in any reasonable brake on people just cavalierly
11  checking the disability box so they could vote from
12  home.  I know in previous iterations of this legislation
13  there was, for example, an affirmation that if you check
14  that box you were affirming under penalty of law that
15  you were, in fact, not able to get to the polls without
16  endangering your health or putting yourself in danger.
17  And that's been removed, I understand, in this current
18  iteration.  But because of that, you're likely to see,
19  Senator, continued increasing use of mail-in ballots and
20  without that safeguard of an ID, I think that's just a
21  huge loophole that we're leaving open.
22        SENATOR BETTENCOURT:  Right.
23        And I think Chairman Hughes has expressed
24  this multiple times in layouts of this bill.  But in one
25  of his counties, Greg County, there's multiple

95

1  indictments, okay, on what is voter harvesting.  There
2  apparently is multiple indictments of voter harvesting
3  in Bear County and, somehow, is SB 1's cracking down on
4  voter harvesting voter suppression?
5        MR. DEVORE:  Well, I certainly wouldn't
6  look at it that way.  Again, we've heard some
7  declarations that there is no voter fraud in Texas.  I
8  know I've said in the past before this body that you
9  don't find what you don't look for.
10        I was able to do some comparative analysis
11  prior to this hearing just to try to size things for the
12  members to provide a bit of a better analogy.  If you
13  look at the IRS and tax fraud, there's about 10,000 IRS
14  auditors nationwide.  Proportionally, there'd be about
15  900 in the State of Texas.  There were about 2500
16  convictions for tax fraud, that's individual and
17  corporate last year.  About 225 would be in Texas.  That
18  compares to roughly 47 current cases for voter fraud, or
19  election fraud here in Texas.  And what I find
20  interesting, Senator, is that, currently, your Attorney
21  General team that looks into election fraud is composed
22  of 11 individuals.  You have two prosecutors and nine
23  investigators.  So you have 11 people looking for voter
24  fraud in a state of 30 million people, versus 225 IRS
25  auditors looking tax fraud in the State of Texas.

96

1        And if you look at the production rate, it
2  takes about four auditors to get one conviction on tax
3  fraud.  If you look at our Attorney General's team, it
4  takes about one member of that team to generate four
5  convictions on election fraud.  So they're about 16
6  times more productive per individual.  And so, again, if
7  you want to -- if you want to look -- and if you
8  believe, you know, improperly or illegally evading your
9  federal income taxes, if you think that's a bad thing,
10  and you want to apply more resources to ensure that
11  people and corporations pay their proper taxes, that's
12  great.  But similarly we ought to consider our elections
13  to be certainly as important as our tax revenue, and
14  perhaps apply some additional resources in that area as
15  well.
16        SENATOR BETTENCOURT:  Thank you for your
17  testimony.
18        CHAIRMAN HUGHES:  Senators, any other
19  questions for the witness?
20        Thanks for being here.
21        MR. DEVORE:  Thank you.
22        CHAIRMAN HUGHES:  Members, we have as a
23  resource from the Attorney General's office, Jonathan
24  White.  We're going to call him at this time, and he
25  testified in the first special session and has handled

97

1  these cases.  And we're going to get -- have him
2  available to answer some questions while he's here.
3        Welcome back.  Introduce yourself.  Tell us
4  who you represent, and we'll maybe have some questions
5  for you.
6        MR. WHITE:  Good afternoon.  I'm Jonathan
7  White with the Attorney General's Office.  I'm the Chief
8  of Election Integrity.
9        CHAIRMAN HUGHES:  As Chief of Election
10  Integrity, what do you do?
11        MR. WHITE:  Well, we -- we're kind of the
12  receiving point for complaints involving criminal
13  violations of the election code and the election laws of
14  the State of Texas.  Our investigators will review those
15  complaints.  They will go out in the field after
16  gathering election documents and analyzing them and do
17  -- do interviews and determine whether an offense was
18  committed.  And then we will evaluate those for
19  potential prosecution.
20        CHAIRMAN HUGHES:  How many investigators do
21  you have?
22        MR. WHITE:  I believe we have nine.
23        CHAIRMAN HUGHES:  And how many lawyers do
24  you have?
25        MR. WHITE:  I currently have two lawyers

STATE155433

98

1 working for me.
2         CHAIRMAN HUGHES:  So total lawyers in the
3 office would be you, plus two?
4         MR. WHITE:  That's correct.
5         CHAIRMAN HUGHES:  Very good.
6         You testified in the first special session,
7 the previous session, about you had categories for the
8 types of cases that you see and you prosecute.  And I
9 think you put them into, I want to say, three buckets
10 and you ranked them for us.  But walk us through that.
11 If you're going to categorize the types of cases that
12 you handle, how would you describe them and how would
13 you rank them in terms of volume?
14        MR. WHITE:  Sure.
15        The three main areas that we see election
16 violations occur in mail ballot fraud, also known as
17 vote harvesting, illegal voting, and then voter
18 assistance fraud.  The largest of those, by far, would
19 be mail ballot fraud, which, depending on what you're
20 looking at, whether it's cases we've resolved in the
21 past or that we have pending, can be somewhere around
22 two-thirds of our cases in the Department of mail ballot
23 fraud.  Perhaps 25 percent percent or so of our cases
24 may involve an illegal vote.  And then maybe another
25 20 percent or 15 percent might involve assistance fraud.

99

1 And there is some overlap in those categories.
2         CHAIRMAN HUGHES:  And so assistance fraud,
3 were you here earlier when I read the testimony from the
4 trial where Ms. Cavazos testified about how she thought
5 someone was helping her, but, in fact, was voting on her
6 behalf and against her will?
7         MR. WHITE:  Yes, Chairman.
8         CHAIRMAN HUGHES:  Are you familiar with
9 that case?
10        MR. WHITE:  I am.
11        CHAIRMAN HUGHES:  And do you handle cases
12 like that, and is that -- give us -- give -- tell me, is
13 that what we're talking about when we think about
14 illegal assistance or --
15        MR. WHITE:  That's correct.
16        And, you know, unlawful assistance can
17 involve anything from assisting a voter who's not
18 eligible for assistance, to suggesting to the voter how
19 they should vote, or worst -- worst case scenario is
20 when the will of the voter is totally overcome by the,
21 quote, unquote, assistant who's usually a professional
22 campaign worker in the cases that we see.  Who have
23 overridden the voter's will to vote and put their own
24 vote on the ballot.
25        CHAIRMAN HUGHES:  And so, in those cases

100

1 and in the cases of ballot harvesting, we're not talking
2 about a voter who is trying to cheat.  We're talking
3 about someone who's trying to get in between the voter
4 and their ballot, in between the voter and her right to
5 cast her own ballot.  Is that fair to say?
6         MR. WHITE:  That's exactly right.  Yes.
7         CHAIRMAN HUGHES:  I think you told us last
8 time about where these cases occurred.  That is in one
9 election.  So, help me with this.  Let's say we have the
10 general election in the fall, then we have the primary
11 election, and then we also have city and school
12 elections and those are all important.  Help us rank
13 among those, and other categories I have forgotten,
14 where you see the most cases.
15        MR. WHITE:  We see the most cases in
16 elections where there's low voter turnout.  And,
17 typically, those happen in cities -- city or municipal
18 elections, special districts.  They also happen in
19 primary elections.  They don't often -- as often happen
20 in general elections, unless in that general election we
21 may have a city or a special election that happens then
22 as well.  So, typically, you know, May elections, March
23 elections to a lesser extent, and November elections.
24        CHAIRMAN HUGHES:  You mention those were --
25 the highest propensity was in those elections with lower

101

1 voter turnout.  This may be axiomatic, but in an
2 election with lower voter turnout, does it take less
3 fraud to affect the outcome of the election?
4         MR. WHITE:  That's right.  It seems there
5 is a calculus in there to -- if the margin of vote is
6 small enough that you can actually go out and impact
7 that and turn the election toward a specific candidate
8 by using vote harvesting, for example.  That would be
9 the type of election that would be targeted.  And it
10 wouldn't make economic sense to do that in, say, a
11 November general in an even year.
12        CHAIRMAN HUGHES:  That makes sense.
13        When you say economic sense, we're talking
14 about these political or other interests who are trying
15 to cheat, trying to influence an election their way
16 using money, using illegal means.  Is that the idea?
17        MR. WHITE:  That's correct.
18        CHAIRMAN HUGHES:  I see what you're saying.
19 Why would you waste your money if you can't make a
20 difference?  But you want to influence the election in
21 that way.
22        Do you know of cases where the outcome of
23 an election has been affected by this type of fraud?
24        MR. WHITE:  Yes, sir.
25        CHAIRMAN HUGHES:  Cases in Texas?

STATE155434

102

1    MR. WHITE:  Yes, sir.
2    CHAIRMAN HUGHES:  Have you personally been
3  involved in cases, investigated cases, where the outcome
4  of the election was affected by voter fraud?  And when I
5  say voter fraud, I'm talking about ballot harvesting,
6  illegal assistance, and illegal voting.
7    MR. WHITE:  Correct. I can think of at
8  least one we have pending in court right now.
9    CHAIRMAN HUGHES:  In addition to that one,
10  are there other cases that have been disposed of where
11  the election outcome was changed -- was affected because
12  of the violations?
13    MR. WHITE:  Yes, sir.
14    CHAIRMAN HUGHES:  In Texas?
15    MR. WHITE:  In Texas.
16    CHAIRMAN HUGHES:  Thank you.  That's all
17  I've got right now.
18    Members, any questions for the witness?
19    Senator Powell.
20    SENATOR POWELL:  Can you tell us how many
21  of those cases?  And how --
22    MR. WHITE:  Where elections have been
23  overturned?
24    SENATOR POWELL:  Yes.
25    MR. WHITE:  Or -- or have been affected?

103

1    SENATOR POWELL:  Mm-hmm.
2    MR. WHITE:  Specifically?  I can't.  I
3  don't know exactly how many elections have been reversed
4  through election contests, but that's typically where
5  you'll see them actually overturned and that's a civil
6  suit, which my office has nothing to do with.  We have
7  no authority.  But those -- those would be a matter of
8  public record.
9    And they're -- they're pretty difficult to
10  -- to succeed in an election contest because of the
11  short timeframe a candidate has to get information
12  together and determine what happened.  It's ten days
13  after canvas for a primary election or a special
14  district election, and 30 days in a general election
15  from the canvas that you have to actually have
16  everything together, figure out what happened, and file
17  the case.  So it's -- it's fairly difficult.  But there
18  have been cases where elections have been overturned.
19  Yes.
20    SENATOR POWELL:  Are you saying it's a
21  significant number?
22    MR. WHITE:  No.  I would think it's -- it's
23  probably a fairly small number, Senator.
24    SENATOR POWELL:  Thank you, sir.
25    MR. WHITE:  Yes, ma'am.

104

1    CHAIRMAN HUGHES:  Senators, any other
2  questions?
3    Senator Zaffirini.
4    SENATOR ZAFFIRINI:  Thank you, Mr.
5  Chairman.
6    Sir, does this bill in any way impact the
7  definition of residency?  You may recall that when
8  President Bush was registered at a hotel in Houston, I
9  believe it was challenged in court, and the decision was
10  that residency is a state of mind.  And so that was
11  perfectly fine and that any voter can decide where his
12  or her permanent residency is.  Does this impact the
13  definition of residency in any way?
14    MR. WHITE:  While I don't recall that being
15  the decision of a court, specifically, I don't believe
16  the definition of residency is impacted significantly by
17  this bill.
18    SENATOR ZAFFIRINI:  Would it impact a
19  student, for example, who wanted to register, say a
20  student who lived in San Antonio but came to school in
21  Austin and went to register in Austin?  Could that
22  student choose where to register, whether at the
23  parental home in San Antonio or the university home in
24  Austin?
25    MR. WHITE:  No, ma'am.  I don't think the

105

1  bill impacts that in any way.  But students are free
2  under the existing law to determine where it is they
3  intend to return.  And if that's their home, or if they
4  don't intend to return there, the address where they're
5  currently living is their residence.  And they have the
6  ability to make that determination.
7    SENATOR ZAFFIRINI:  Thank you, sir.
8    MR. WHITE:  Yes, ma'am.
9    SENATOR ZAFFIRINI:  Thank you, Mr.
10  Chairman.
11    CHAIRMAN HUGHES:  Senator Bettencourt.
12    SENATOR BETTENCOURT:  Thank you for your
13  testimony.
14    The legislature passed Senate Bill 1111,
15  which basically restricts addresses from impossible -- I
16  mean voter registration from impossible addresses, true.
17  And I believe you're aware of that.
18    MR. WHITE:  Yes, sir.
19    SENATOR BETTENCOURT:  There's a -- is this
20  (inaudible) however, the state's not party to, I
21  believe, at this point questioning that.  But with the
22  legislative intent of SB 1111, it's clearly that we're
23  trying to not have residency be a state of mind but --
24  and not have residency-based impossible addresses like a
25  two-inch by three-inch post post office box.  True?

STATE155435

106

1      MR. WHITE:  Yes.  That's my understanding.
2      SENATOR BETTENCOURT:  Okay.  Thank you.
3      MR. WHITE:  Yes, sir.
4      CHAIRMAN HUGHES:  Members, any other
5  questions?
6      Thank you, Mr. White.  You're excused.
7      MR. WHITE:  Thank you, Chairman.
8      CHAIRMAN HUGHES:  I'm going to ask the
9  following folks to make your way down front so we can
10  hear from you:  Emily Eby, Susan Carranza, Alex Cogan,
11  Maggie Stern, Tanya Coleman.  Once again, I'm going to
12  ask Emily Eby, Susan Carranza, Alex Cogan, Maggie Stern,
13  and Tanya Coleman to make your way down to the front.
14      MS. EBY:  I'm Emily Eby.
15      CHAIRMAN HUGHES:  I recognize you now.
16  Thank you.  Welcome.
17      MS. EBY:  Lower that a bit.
18      CHAIRMAN HUGHES:  Introduce yourself.  Give
19  us your testimony.
20      MS. EBY:  Hi, I'm Emily Eby.  I'm a staff
21  attorney at the Texas Civil Rights Project, and I'm here
22  representing TCRP and myself in opposition to SB 1.
23      I am here to oppose SB 1 still and again.
24  This may be my only chance to do so, since this body has
25  adopted rules seeming to limit testimony to one hearing

107

1  on an elections bill.  I want to start by correcting
2  some of the record from earlier that poll watchers, they
3  must be given a manual or handbook.  But they do not --
4  they are not required to read it.  They are not required
5  to be tested on it.  They can use it as a doorstop for
6  all the code cares.
7      I want to talk mainly today about
8  drive-through and extended hours voting, which force
9  Texans to choose between their lives and their votes.
10  Over and over again, TCRP and our other organizations
11  have testified that it is racially discriminatory to
12  eliminate drive-through voting and extended hours
13  voting.
14      Voters of color in Harris County, as you've
15  heard, use both methods more than white voters did in
16  2020.  And I have charts attached to my written
17  testimony to that effect.  If the legislature still
18  enacts these provisions after so much proof, the only
19  reasonable explanation is discriminatory intent.  This
20  disparate racial impact is not an unfortunate side
21  effect of SB 1, it is the primary and intended purpose
22  of this legislature.  In other words, you now have too
23  much information on your hands to be racist by accident.
24      I'm happy to defend that word choice,
25  especially, since if this body wanted to convince us

108

1  that there was not racism in it, perhaps Senator
2  Bettencourt should not have used the anti-somatic dog
3  whistle Zuckerbucks to reference the trope of Jewish
4  Americans influencing elections with money.
5      On July 14th, Representative Clardy told
6  NPR that steps like extended hours voting and
7  drive-through were just COVID 19 safety measures.  I've
8  heard this line several times from various legislators.
9  And, if that's true, there's no reason to get rid of
10  them now.  On the contrary, COVID is surging in every
11  Tex -- in nearly every Texas metropolitan county.
12  Drive-through and extended hours options protect Texans
13  from catching COVID-19 while voting.  Safe and healthy
14  access to voting must be a priority in Texas.  These
15  provisions take us in the wrong direction.
16      CHAIRMAN HUGHES:  Members, are there any
17  questions for Ms. Eby?
18      Thanks for your testimony.
19      MS. EBY:  Thank you.
20      CHAIRMAN HUGHES:  And, Ms. Carranza.  Did
21  Ms. -- there she is.  Ms. Carranza, come on.  You
22  pick.  Either microphone.  Up to you.  Left or right.
23  That's not a loaded choice -- loaded question.
24      And, Ms. Carranza, welcome.  Get situated
25  there and we'll let you get ready.

109

1      Did Alex Cogan -- did Alex Cogan make it?
2  How about Maggie Stern?  Please take a position there,
3  Ms. Stern, so you'll be ready when we hear from Ms.
4  Carranza.
5      Thank you.
6      Ms. Carranza, you go ahead whenever you're
7  ready.  You've got two minutes --
8      MS. CARRANZA:  All right.
9      CHAIRMAN HUGHES:  -- once you get started.
10  We'll let you get set.
11      MS. CARRANZA:  All right.  I'm ready.
12      CHAIRMAN HUGHES:  Go ahead.  Go ahead.
13  Thanks.
14      MS. CARRANZA:  I'm Susana Carranza
15  testifying as a member and on behalf of The League of
16  Women Voters of Texas in opposition to Senate Bill 1.
17      I speak for many members across Texas who
18  are listening and are very concerned about their voting
19  rights.  First of all, I would like to state our strong
20  support of the testimony of Jeff Miller and Chase
21  Bearden, which we heard before recess regarding
22  accommodations for voters with disabilities.  We
23  supplied our written testimony, which was also submitted
24  previously.  Please read it to get our full comments.
25      We oppose multiple sections of this bill,

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,          §
   *Plaintiffs,*                                §
            §
*v.*                                                      §  Case No. 5:21-cv-844-XR
            §
GREGORY W. ABBOTT, et al.,                       §
   *Defendants.*                             §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


# APPENDIX OO

Chapter 1

S.B. No. 1

1                              AN ACT

2    relating to election integrity and security, including by

3    preventing fraud in the conduct of elections in this state;

4    increasing criminal penalties; creating criminal offenses.

5           BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6                     ARTICLE 1.  GENERAL PROVISIONS

7           SECTION 1.01.  SHORT TITLE.  This Act may be cited as the

8    Election Integrity Protection Act of 2021.

9           SECTION 1.02.  PURPOSE.  The purpose of this Act is to

10   exercise the legislature's constitutional authority under Section

11   4, Article VI, Texas Constitution, to make all laws necessary to

12   detect and punish fraud.

13          SECTION 1.03.  FINDINGS. The legislature finds that:

14               (1)  full, free, and fair elections are the

15   underpinnings of a stable constitutional democracy;

16               (2)  fraud in elections threatens the stability of a

17   constitutional democracy by undermining public confidence in the

18   legitimacy of public officers chosen by election;

19               (3)  reforms are needed to the election laws of this

20   state to ensure that fraud does not undermine the public confidence

21   in the electoral process;

22               (4)  the reforms to the election laws of this state made

23   by this Act are not intended to impair the right of free suffrage

24   guaranteed to the people of Texas by the United States and Texas

1

S.B. No. 1

1  Constitutions, but are enacted solely to prevent fraud in the

2  electoral process and ensure that all legally cast ballots are

3  counted.  Integral to the right to vote is the assurance of voter

4  access and the right for all votes legally cast to be counted;

5          (5)  additionally, preventing a valid vote from being

6  counted violates the basic constitutional rights guaranteed to each

7  citizen by the United States Constitution; and

8          (6)  providing for voter access and increasing the

9  stability of a constitutional democracy ensures public confidence

10  in the legitimacy of public officers chosen by election.

11      SECTION 1.04.  Chapter 1, Election Code, is amended by

12  adding Section 1.0015 to read as follows:

13      Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the

14  legislature that the application of this code and the conduct of

15  elections be uniform and consistent throughout this state to reduce

16  the likelihood of fraud in the conduct of elections, protect the

17  secrecy of the ballot, promote voter access, and ensure that all

18  legally cast ballots are counted.

19      SECTION 1.05.  Section 1.003, Election Code, is amended by

20  adding Subsection (a-1) to read as follows:

21      (a-1)  Election officials and other public officials shall

22  strictly construe the provisions of this code to effect the intent

23  of the legislature under Section 1.0015.

24      SECTION 1.06.  Section 1.005, Election Code, is amended by

25  amending Subdivision (4-a) and adding Subdivision (4-b) to read as

26  follows:

27          (4-a)  "Election official" means:

2

S.B. No. 1

1                              (A)   a county clerk;

2                              (B)   a permanent or temporary deputy county clerk;

3                              (C)   an elections administrator;

4                              (D)   a  permanent  or  temporary  employee  of  an
5   elections administrator;

6                              (E)   an election judge;

7                              (F)   an alternate election judge;

8                              (G)   an early voting clerk;

9                              (H)   a deputy early voting clerk;

10                             (I)   an election clerk;

11                             (J)   the presiding judge of an early voting ballot
12  board;

13                             (K)   the  alternate  presiding  judge  of  an  early
14  voting ballot board;

15                             (L)   a member of an early voting ballot board;

16                             (M)   the   chair   of   a   signature   verification
17  committee;

18                             (N)   the  vice  chair  of  a  signature  verification
19  committee;

20                             (O)   a   member   of   a   signature   verification
21  committee;

22                             (P)   the  presiding  judge  of  a  central  counting
23  station;

24                             (Q)   the  alternate  presiding  judge  of  a  central
25  counting station;

26                             (R)   a central counting station manager;

27                             (S)   a central counting station clerk;

1              (T)  a tabulation supervisor;

2              (U)  an assistant to a tabulation supervisor; and

3              (V)  a chair of a county political party holding a

4  primary election or a runoff primary election.

5          (4-b)  "Federal judge" means:

6              (A)  a judge, former judge, or retired judge of a

7  United States court of appeals;

8              (B)  a judge, former judge, or retired judge of a

9  United States district court;

10             (C)  a judge, former judge, or retired judge of a

11 United States bankruptcy court; or

12             (D)  a magistrate judge, former magistrate judge,

13 or retired magistrate judge of a United States district court.

14         SECTION 1.07.  Section 1.018, Election Code, is amended to

15 read as follows:

16         Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to

17 Section 1.03, Penal Code, and to other titles of the Penal Code that

18 may apply to this code, Titles 2 and [Title] 4, Penal Code, apply

19 [applies] to offenses prescribed by this code.

20         SECTION 1.08.  Chapter 1, Election Code, is amended by

21 adding Section 1.022 to read as follows:

22         Sec. 1.022.  REASONABLE ACCOMMODATION OR MODIFICATION.  A

23 provision of this code may not be interpreted to prohibit or limit

24 the right of a qualified individual with a disability from

25 requesting a reasonable accommodation or modification to any

26 election standard, practice, or procedure mandated by law or rule

27 that the individual is entitled to request under federal or state

4

1  law.

2            ARTICLE 2.  REGISTRATION OF VOTERS

3        SECTION 2.01.  Section 13.002, Election Code, is amended by

4  adding Subsection (c-1) to read as follows:

5        (c-1)  The information required under Subsections (c)(3),

6  (4), (5), (6), and (8) must be supplied by the person desiring to

7  register to vote.

8        SECTION 2.02.  Section 13.007, Election Code, is amended to

9  read as follows:

10        Sec. 13.007.  FALSE STATEMENT ON APPLICATION.  (a)  A person

11  commits an offense if the person knowingly or intentionally:

12              (1)  makes a false statement; or

13              (2)  requests, commands, coerces, or attempts to induce

14  another  person  to  make  a  false  statement  on  a  registration

15  application.

16        (b)  An  offense  under  this  section  is  a  Class  A  [B]

17  misdemeanor, except that an offense under this section is a state

18  jail felony if the person:

19              (1)  directly  or  through  a  third  party  offers  or

20  provides  compensation  or  other  benefit  to  a  person  for  activity

21  described by Subsection (a); or

22              (2)  solicits,  receives,  or  accepts  compensation  or

23  other benefit for an activity described by Subsection (a).

24        (c)  If  conduct  that  constitutes  an  offense  under  this

25  section also constitutes an offense under another law, the actor

26  may be prosecuted under this section, the other law, or both. [For

27  purposes of this code, an offense under this section is considered

5

1 ~~to be perjury, but may be prosecuted only under this section.~~]

2      SECTION 2.03.   Section 15.021, Election Code, is amended by

3 amending Subsections (b) and (d) and adding Subsections (d-1) and

4 (d-2) to read as follows:

5      (b)  Except as provided by Subsection (d), the [~~The~~] voter

6 shall  use  the  registration  certificate  or  a  registration

7 application form as the notice, indicating the correct information

8 in the appropriate space on the certificate or application form

9 unless the voter does not have possession of the certificate or an

10 application form at the time of giving the notice.

11      (d)  A voter [~~who continues to reside in the county in which~~

12 ~~the voter is registered~~] may correct information under this section

13 by  digital  transmission  of  the  information  under  a  program

14 administered  by  the  secretary  of  state  and  the  Department  of

15 Information Resources.

16      (d-1)  If the notice indicates that a voter no longer resides

17 in the county in which the voter is registered, the registrar shall

18 forward the notice and the voter's application for registration to

19 the  registrar  of  the  county  in  which  the  voter  resides.   The

20 registrars  shall  coordinate  to  ensure  that  the  voter's  existing

21 registration is canceled immediately after the voter is registered

22 in  the  county  in  which  the  voter  resides  in  accordance  with

23 Subsection (d-2).

24      (d-2)  A  registrar  who  receives  a  voter's  notice  and

25 application  from  another  registrar  under  Subsection  (d-1)  shall

26 treat it as an original application for registration under Section

27 13.002, and shall register the voter if the voter resides in the

S.B. No. 1

1  county and is otherwise eligible under Section 13.001.

2      SECTION 2.04.  Section 15.028, Election Code, is amended to

3  read as follows:

4      Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO

5  PROSECUTOR].  [(a)]  If the registrar determines that a person who

6  is not eligible to vote registered to vote or [a registered voter]

7  voted in an election, the registrar shall, within 72 hours not

8  including weekends after making the determination, execute and

9  deliver to the attorney general, the secretary of state, and the

10  county or district attorney having jurisdiction in the territory

11  covered by the election an affidavit stating the relevant facts.

12      [(b)  If the election covers territory in more than one

13  county, the registrar shall also deliver an affidavit to the

14  attorney general.]

15      SECTION  2.05.  Section 16.0332, Election Code, is amended

16  by amending Subsection (a) and adding Subsections (a-1), (d), and

17  (e) to read as follows:

18      (a)  After the registrar receives notification [a list]

19  under Subsection (a-1) of this section, Section 18.068 of this

20  code, or Section 62.113, Government Code, of persons excused or

21  disqualified from jury service because of citizenship status or

22  notification of persons who indicate a lack of citizenship status

23  in connection with a motor vehicle or Department of Public Safety

24  record as provided by Subsection (a-1), the registrar shall deliver

25  to each registered voter whose name appears on the list a written

26  notice requiring the voter to submit to the registrar proof of

27  United States citizenship in the form of a certified copy of the

7

S.B. No. 1

1  voter's birth certificate, United States passport, or certificate

2  of naturalization or any other form prescribed by the secretary of

3  state.  The notice shall be delivered by forwardable mail to the

4  mailing address on the voter's registration application and to any

5  new address of the voter known to the registrar.

6      (a-1)  The secretary of state shall enter into an agreement

7  with the Department of Public Safety under which information in the

8  existing statewide computerized voter registration list is

9  compared against information in the database of the Department of

10  Public Safety on a monthly basis to verify the accuracy of

11  citizenship status information previously provided on voter

12  registration applications.  In comparing information under this

13  subsection, the secretary of state shall consider only a voter's

14  information in the database of the Department of Public Safety that

15  was derived from documents presented by the voter to the department

16  after the person's current voter registration became effective, and

17  may not consider information derived from documents presented by

18  the voter to the department before the person's current voter

19  registration became effective.

20      (d)  The secretary of state shall prescribe rules for the

21  administration of this section.

22      (e)  Not later than December 31 of each year, the secretary

23  of state shall provide a report to the legislature of the number of

24  voter registrations canceled under this section during the calendar

25  year.

26      SECTION 2.06.  Section 18.065, Election Code, is amended by

27  adding Subsections (e), (f), (g), (h), and (i) to read as follows:

8

S.B. No. 1

1    (e)  If  the  secretary  of  state  determines  that  a  voter

2 registrar  is  not  in  substantial  compliance  with  a  requirement

3 imposed  on  the  registrar  by  a  provision  or  rule  described  in

4 Subsection (a), the secretary of state shall:

5    (1)  for the first violation, require the registrar to

6 attend a training course under Subsection (h);

7    (2)  for  the  second  violation,  audit  the  voter

8 registration list for the county in which the registrar serves to

9 determine  the  actions  needed  to  achieve  substantial  compliance

10 under Subsection (a) and provide the results of the audit to the

11 registrar; or

12    (3)  for  a  third  or  subsequent  violation,  if  the

13 secretary of state determines that the registrar has not performed

14 any  overt  actions  in  pursuance  of  compliance  with  the  actions

15 identified under Subdivision (2) as necessary for the registrar to

16 achieve substantial compliance under Subsection (a) within 14 days

17 of  receiving  the  results  of  the  audit  conducted  under  that

18 subsection, inform the attorney general that the county which the

19 registrar serves may be subject to a civil penalty under Subsection

20 (f).

21    (f)  A county is liable to this state for a civil penalty of

22 $1,000 for each day after the 14th day following the receipt of the

23 results  of  the  audit  conducted  under  Subsection  (e)(2)  that  the

24 county's voter registrar fails to take overt action to comply with

25 the actions identified under that subsection as necessary for the

26 registrar to achieve substantial compliance under Subsection (a).

27 The attorney general may bring an action to recover a civil penalty

9

1   imposed under this section.

2        (g)  A civil penalty collected by the attorney general under
3   this section shall be deposited in the state treasury to the credit
4   of the general revenue fund.

5        (h)  The secretary of state shall develop and implement a
6   training course for registrars on substantial compliance with
7   Sections 15.083, 16.032, and 18.061 and with rules implementing the
8   statewide computerized voter registration list.

9        (i)  The secretary of state shall adopt rules and prescribe
10  procedures for the implementation of this section.

11       SECTION 2.07.  Section 18.068, Election Code, is amended by
12  amending Subsection (a) and adding Subsection (a-1) to read as
13  follows:

14       (a)  The secretary of state shall quarterly compare the
15  information received under Section 16.001 of this code and Sections
16  [Section] 62.113 and 62.114, Government Code, to the statewide
17  computerized voter registration list.  If the secretary determines
18  that a voter on the registration list is deceased or has been
19  excused or disqualified from jury service because the voter is not a
20  citizen or a resident of the county in which the voter is registered
21  to vote, the secretary shall send notice of the determination
22  to the voter registrar of the counties considered appropriate by
23  the secretary.

24       (a-1)  The secretary of state is not required to send notice
25  under Subsection (a) for a voter who is subject to an exemption from
26  jury service under Section 62.106, Government Code, if that
27  exemption is the only reason the voter is excused from jury service.

S.B. No. 1

1       SECTION 2.08.  Section 31.006, Election Code, is amended to

2   read as follows:

3       Sec. 31.006.  REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.

4   (a)  If, after receiving or discovering information indicating that

5   [a complaint alleging] criminal conduct in connection with an

6   election has occurred, the secretary of state determines that there

7   is reasonable cause to suspect that [the alleged] criminal conduct

8   occurred,  the  secretary  shall  promptly  refer  the  information

9   [complaint] to the attorney general.  The secretary shall deliver

10  to the attorney general all pertinent documents and information in

11  the secretary's possession.

12      (b)  The   documents   and   information   submitted   under

13  Subsection (a) are not considered public information until:

14          (1)  the secretary of state makes a determination that

15  the  information  [complaint]  received  does  not  warrant  an

16  investigation; or

17          (2)  if referred to the attorney general, the attorney

18  general has completed the investigation or has made a determination

19  that  the  information  [complaint]  referred  does  not  warrant  an

20  investigation.

21      SECTION 2.09.  Subchapter B, Chapter 87, Election Code, is

22  amended by adding Section 87.028 to read as follows:

23      Sec. 87.028.  ACCESS  TO  INFORMATION.  (a)  On  request,  a

24  county  election  official  shall  provide  to  a  member  of  an  early

25  voting  ballot  board  all  available  information  necessary  to

26  fulfilling  the  functions  of  the  board,  including  any  information

27  from  the  statewide  computerized  voter  registration  list  under

1   Section 18.061.

2        (b)  On request, a county election official shall provide to

3   a  member  of  a  signature  verification  committee  all  available

4   information necessary to fulfilling the functions of the committee,

5   including  any  information  from  the  statewide  computerized  voter

6   registration list under Section 18.061.

7        (c)  The secretary of state shall adopt rules as necessary to

8   prevent  a  member  of  an  early  voting  ballot  board  or  signature

9   verification  committee  from  retaining  or  sharing  personally

10  identifiable  information  from  the  statewide  computerized  voter

11  registration list under Section 18.061 obtained under this section

12  for any reason unrelated to the official's official duties.

13       SECTION 2.10.  Section  62.113(b),  Government  Code,  is

14  amended to read as follows:

15       (b)  On the third business day of each month, the clerk shall

16  send a copy of the list of persons excused or disqualified because

17  of citizenship in the previous month to:

18            (1)  the voter registrar of the county;

19            (2)  the secretary of state; and

20            (3)  the county or district attorney[, as applicable,]

21  for  an  investigation  of  whether  the  person  committed  an  offense

22  under Section 13.007, Election Code, or other law.

23       SECTION 2.11.  Sections 62.114(b) and (c), Government Code,

24  are amended to read as follows:

25       (b)  On the third business day of each month, the clerk shall

26  send [to the voter registrar of the county] a copy of the list of

27  persons excused or disqualified in the previous month because the

S.B. No. 1

1  persons do not reside in the county to:

2              (1)  the voter registrar of the county; and

3              (2)  the secretary of state.

4       (c)  A list compiled under this section may not be used for a

5  purpose other than a purpose described by Subsection (b) or Section

6  15.081 or 18.068, Election Code.

7              ARTICLE 3.  CONDUCT AND SECURITY OF ELECTIONS

8       SECTION 3.01.  Section 2.053(a), Election Code, is amended

9  to read as follows:

10      (a)  On receipt of the certification, the governing body of

11  the political subdivision by order or ordinance shall [may] declare

12  each unopposed candidate elected to the office.  If no election is

13  to be held on election day by the political subdivision, a copy of

14  the order or ordinance shall be posted on election day at each

15  polling place used or that would have been used in the election.

16      SECTION 3.02.  Section 2.056(c), Election Code, is amended

17  to read as follows:

18      (c)  A certifying authority shall [may] declare a candidate

19  elected to an office of the state or county government if, were the

20  election held, only the votes cast for that candidate in the

21  election for that office may be counted.

22      SECTION 3.03.  Sections 43.007(c) and (d), Election Code,

23  are amended to read as follows:

24      (c)  In conducting the program, the secretary of state shall

25  provide for an audit of the voting system equipment [direct

26  recording electronic voting units] before and after the election,

27  and during the election to the extent such an audit is practicable.

13

1     (d)  The secretary of state shall select to participate in
2  the program each county that:

3          (1)  has held a public hearing under Subsection (b);

4          (2)  has  submitted  documentation  listing  the  steps
5  taken  to  solicit  input  on  participating  in  the  program  by
6  organizations or persons who represent the interests of voters;

7          (3)  has implemented a computerized voter registration
8  list that allows an election officer at the polling place to verify
9  that a voter has not previously voted in the election;

10          (4)  uses direct recording electronic voting machines,
11  ballot marking devices, or hand-marked scannable paper ballots that
12  are printed and scanned at the polling place or any other type of
13  voting system equipment that the secretary of state determines is
14  capable of processing votes for each type of ballot to be voted in
15  the county; and

16          (5)  is determined by the secretary of state to have the
17  appropriate technological capabilities.

18     SECTION 3.04.  Section 43.031(b), Election Code, is amended
19  to read as follows:

20     (b)  Each polling place shall be located inside a building.
21  No voter may cast a vote from inside a motor vehicle unless the
22  voter meets the requirements of Section 64.009.

23     SECTION 3.05.  Section 52.092(a), Election Code, is amended
24  to read as follows:

25     (a)  Except as provided by Section 2.053(c) or 2.056(e), for
26  [For] an election at which offices regularly filled at the general
27  election for state and county officers are to appear on the ballot,

1  the offices shall be listed in the following order:

2                    (1)   offices of the federal government;

3                    (2)   offices of the state government:

4                         (A)   statewide offices;

5                         (B)   district offices;

6                    (3)   offices of the county government:

7                         (A)   county offices;

8                         (B)   precinct offices.

9       SECTION 3.06.   Section 61.002, Election Code, is amended to

10  read as follows:

11       Sec. 61.002.   OPENING AND CLOSING POLLING PLACE FOR VOTING.

12  (a)   Immediately before opening the polls for voting on the first

13  day of early voting and on election day, the presiding election

14  judge or alternate election judge shall confirm that each voting

15  machine has any public counter reset to zero and shall print the

16  tape that shows the counter was set to zero for each candidate or

17  measure on the ballot.

18       (b)   At the official time for opening the polls for voting,

19  an election officer shall open the polling place entrance and admit

20  the voters.

21       (c)   Immediately after closing the polls for voting on

22  election day, the presiding election judge or alternate election

23  judge shall print the tape to show the number of votes cast for each

24  candidate or ballot measure for each voting machine.

25       (d)   Each election judge or alternate election judge present

26  shall sign a tape printed under this section.

27       SECTION 3.07.   Section 64.007(c), Election Code, is amended

S.B. No. 1

1  to read as follows:

2        (c)  An election officer shall maintain a register of spoiled

3  ballots at the polling place.  An election officer shall enter on

4  the register the name of each voter who returns a spoiled ballot and

5  the spoiled ballot's number.  The secretary of state shall create

6  and promulgate a form to be used for this purpose.

7        SECTION 3.08.  Subchapter A, Chapter 66, Election Code, is

8  amended by adding Section 66.004 to read as follows:

9        Sec. 66.004.  POLLING PLACE CHECKLISTS.  The secretary of

10  state shall adopt rules and create a checklist or similar

11  guidelines to assist the presiding judge of a polling place in

12  processing forms and conducting procedures required by this code at

13  the opening and closing of the polling place.

14        SECTION 3.09.  Section 85.005, Election Code, is amended to

15  read as follows:

16        Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING. (a)  Except

17  as provided by Subsection (c), in an election in which a county

18  clerk [or city secretary] is the early voting clerk under Section

19  83.002 [or 83.005], early voting by personal appearance at the main

20  early voting polling place shall be conducted on each weekday of

21  [the weekdays of] the early voting period that is not a legal state

22  holiday and for a period of at least nine hours, except that voting

23  may not be conducted earlier than 6 a.m. or later than 10 p.m.

24  [during the hours that the county clerk's or city secretary's main

25  business office is regularly open for business.]

26        (b)  In an election to which Subsection (a) does not apply,

27  early voting by personal appearance at the main early voting

1  polling place shall be conducted at least nine [eight] hours each

2  weekday of the early voting period that is not a legal state holiday

3  unless the territory covered by the election has fewer than 1,000

4  registered voters.  In that case, the voting shall be conducted at

5  least four [three] hours each day.   The authority ordering the

6  election, or the county clerk if that person is the early voting

7  clerk, shall determine which hours the voting is to be conducted.

8       (c)  In a county with a population of 55,000 [100,000] or

9  more, the voting in a primary election or the general election for

10 state and county officers shall be conducted at the main early

11 voting polling place for at least 12 hours on each weekday of the

12 last week of the early voting period, and the voting in a special

13 election ordered by the governor shall be conducted at the main

14 early voting polling place for at least 12 hours on each of the last

15 two days of the early voting period.  Voting under this subsection

16 may not be conducted earlier than 6 a.m. or later than 10 p.m.

17 Voting shall be conducted in accordance with this subsection in

18 those elections in a county with a population under 55,000

19 [100,000] on receipt by the early voting clerk of a written request

20 for the extended hours submitted by at least 15 registered voters of

21 the county.   The request must be submitted in time to enable

22 compliance with Section 85.067.

23      (d)  A voter who has not voted before the scheduled time for

24 closing a polling place is entitled to vote after that time if the

25 voter is in line at the polling place by closing time.   The

26 secretary of state shall promulgate any materials and provide any

27 training to presiding judges necessary to properly process voters

S.B. No. 1

1  under this subsection [~~In an election ordered by a city, early~~

2  ~~voting by personal appearance at the main early voting polling~~

3  ~~place shall be conducted for at least 12 hours:~~

4          [~~(1)  on one weekday, if the early voting period~~

5  ~~consists of less than six weekdays; or~~

6          [~~(2)  on two weekdays, if the early voting period~~

7  ~~consists of six or more weekdays~~].

8          SECTION 3.10.  Sections 85.006(b) and (e), Election Code,

9  are amended to read as follows:

10         (b)  In an election in which a county clerk [~~or city~~

11  ~~secretary~~] is the early voting clerk under Section 83.002 [~~or~~

12  ~~83.005~~], only the early voting clerk may order voting on a Saturday

13  or Sunday.  The clerk must do so by written order.

14         (e)  In a primary election or the general election for state

15  and county officers in a county with a population of 55,000

16  [~~100,000~~] or more, the early voting clerk shall order voting by

17  personal appearance [~~voting~~] at the main early voting polling place

18  to be conducted on the last Saturday of the early voting period for

19  at least 12 hours, except that voting may not be conducted earlier

20  than 6 a.m. or later than 10 p.m., [~~on the last Saturday~~] and on the

21  last Sunday of the early voting period for at least six [~~five~~]

22  hours, except that voting may not be conducted earlier than 9 a.m.

23  or later than 10 p.m [~~on the last Sunday of the early voting~~

24  ~~period~~].  The early voting clerk shall order voting to be conducted

25  at those times in those elections in a county with a population

26  under 55,000 [~~100,000~~] on receipt of a written request for those

27  hours submitted by at least 15 registered voters of the county.  The

18

1  request must be submitted in time to enable compliance with Section

2  85.007.     This   subsection   supersedes   any   provision   of   this

3  subchapter to the extent of any conflict.

4       SECTION 3.11.  Section  85.010(a-1),  Election   Code,  is

5  amended to read as follows:

6       (a-1)  In  this  section, "eligible  county  polling  place"

7  means an early voting polling place[~~, other than a polling place~~

8  ~~established under Section 85.062(e),~~] established by a county.

9       SECTION 3.12.  Section 85.061(a), Election Code, is amended

10  to read as follows:

11       (a)  In a countywide election in which the county clerk is

12  the  early  voting  clerk  under  Section  83.002,  an  early  voting

13  polling place shall be located <u>inside</u> [~~at~~] each branch office that

14  is regularly maintained for conducting general clerical functions

15  of the county clerk, except as provided by Subsection (b).  <u>If a</u>

16  <u>suitable room is unavailable inside the branch office, the polling</u>

17  <u>place may be located in another room inside the same building as the</u>

18  <u>branch office.</u>

19       SECTION 3.13.  Section 85.062, Election Code, is amended by

20  amending  Subsection  (b)  and  adding  Subsection  (f-1)  to  read  as

21  follows:

22       (b)  A polling place established under this section may be

23  located, subject to Subsection (d), at any place in the territory

24  served by the early voting clerk and may be located <u>inside</u> [~~in~~] any

25  <u>building</u> [~~stationary structure~~] as  directed  by  the  authority

26  establishing  the  branch  office.    The  polling  place  may  <u>not</u>  be

27  located in a movable structure in the general election for state and

S.B. No. 1

1  county officers, general primary election, or runoff primary

2  election.  Ropes or other suitable objects may be used at the

3  polling place to ensure compliance with Section 62.004.  Persons

4  who are not expressly permitted by law to be in a polling place

5  shall be excluded from the polling place to the extent practicable.

6      (f-1)  Notwithstanding any other provision of this section

7  concerning the location of temporary branch polling places, in an

8  election in which countywide polling places are used, the

9  commissioners court of a county shall employ the same methodology

10  it uses to determine the location of countywide polling places to

11  determine the location of temporary branch polling places.

12      SECTION 3.14.  Section 87.002, Election Code, is amended to

13  read as follows:

14      Sec. 87.002.  COMPOSITION OF BOARD.  (a) The early voting

15  ballot board consists of a presiding judge, an alternate presiding

16  judge, and at least one [two] other member [members].

17      (b)  Except as provided by Subsection (d), the presiding

18  judge and the alternate presiding judge are [is] appointed in the

19  same manner as a presiding election judge and alternate presiding

20  election judge, respectively.  Except as provided by Subsection

21  (c), each [the] other member is [members are] appointed by the

22  presiding judge in the same manner as the precinct election clerks.

23      (c)  In the general election for state and county officers,

24  each county chair of a political party with nominees on the general

25  election ballot shall submit to the county election board a list of

26  names of persons eligible to serve on the early voting ballot board

27  in order of the county chair's preference.  The county election

<u>S.B. No. 1</u>

1  board shall appoint at least one person from each list to serve as a

2  member of the early voting ballot board.  The same number of members

3  must be appointed from each list.  <u>The county election board shall</u>

4  <u>appoint persons as members of the early voting ballot board in the</u>

5  <u>order of preference indicated on each list.</u>

6       (d)  In addition to the members appointed under Subsection

7  (c), the county election board shall appoint <u>as</u> the presiding judge

8  <u>the highest-ranked person on</u> [<s>from</s>] the list provided under that

9  subsection by the political party whose nominee for governor

10 received the most votes in the county in the most recent

11 gubernatorial general election <u>and as the alternate presiding judge</u>

12 <u>the highest-ranked person on the list provided under that</u>

13 <u>subsection by the political party whose nominee for governor</u>

14 <u>received the second most votes in the county in the most recent</u>

15 <u>gubernatorial general election.</u>

16      SECTION 3.15.  Section 124.002, Election Code, is amended by

17 adding Subsection (c) to read as follows:

18      <u>(c)  Voting system ballots may not be arranged in a manner</u>

19 <u>that allows a political party's candidates to be selected in one</u>

20 <u>motion or gesture.</u>

21      SECTION 3.16.  Sections 127.006(a) and (c), Election Code,

22 are amended to read as follows:

23      (a)  <u>The</u> [<s>Both the</s>] manager<u>,</u> [<s>and</s>] the presiding <u>judge, and</u>

24 <u>the alternate presiding judge</u> may appoint clerks to serve at the

25 central counting station.

26      (c)  A clerk appointed by the manager serves under the

27 manager and shall perform the functions directed by the manager.  A

1  clerk appointed by the presiding judge <u>or the alternate presiding</u>

2  <u>judge</u> serves under the presiding judge and shall perform the

3  functions directed by the presiding judge.

4       SECTION 3.17.   Subchapter A, Chapter 127, Election Code, is

5  amended by adding Section 127.009 to read as follows:

6       <u>Sec. 127.009.   ELECTRONIC   DEVICES   IN   CENTRAL   COUNTING</u>

7  <u>STATION.   (a)  A counting station manager and the presiding judge of</u>

8  <u>the counting station shall develop a protocol under which any</u>

9  <u>electronic device inside a central counting station that is</u>

10  <u>necessary to count votes is equipped with software that tracks all</u>

11  <u>input and activity on the electronic device.</u>

12       <u>(b)  The counting station manager and the presiding judge of</u>

13  <u>the counting station shall ensure that the input and activity</u>

14  <u>tracked by the software is delivered to the secretary of state not</u>

15  <u>later than the fifth day after vote counting is complete.</u>

16       <u>(c)  This section applies only to a central counting station</u>

17  <u>located in a county with a population of 250,000 or more.</u>

18       SECTION 3.18.   Section 127.1232, Election Code, is amended

19  to read as follows:

20       Sec. 127.1232.   SECURITY OF VOTED BALLOTS.  <u>(a)</u>  The general

21  custodian of election records shall post a <u>licensed peace officer</u>

22  [guard] to ensure the security of ballot boxes containing voted

23  ballots throughout the period of tabulation at the central counting

24  station.

25       <u>(b)  The general custodian of election records in a county</u>

26  <u>with a population of 100,000 or more shall implement a video</u>

27  <u>surveillance system that retains a record of all areas containing</u>

1 voted ballots:

2           (1)  from the time the voted ballots are delivered to

3 the central counting station until the canvass of precinct election

4 returns; and

5           (2)  from the time the voted ballots are delivered to

6 the signature verification committee or early voting ballot board

7 until the canvass of precinct election returns.

8     (c)  A video from a system implemented under Subsection (b)

9 shall be made available to the public by a livestream.

10     (d)  The video recorded is an election record under Section

11 1.012 and shall be retained by the general custodian of election

12 records until the end of the calendar year in which an election is

13 held or until an election contest filed in the county has been

14 resolved, whichever is later.

15     SECTION  3.19.  Chapter  127,  Election  Code,  as  effective

16 September 1, 2021, is amended by adding Subchapter J to read as

17 follows:

18                SUBCHAPTER J.  RANDOMIZED AUDITS

19     Sec. 127.351.  RANDOMIZED COUNTY AUDITS.  (a)  Immediately

20 after the uniform election date in November of an even-numbered

21 year, the secretary of state shall conduct an audit of the elections

22 held in four counties during the previous two years.

23     (b)  The secretary of state shall select the counties to be

24 audited under Subsection (a) at random, except that:

25           (1)  two of the counties selected must have a total

26 population of less than 300,000;

27           (2)  two of the counties selected must have a total

1  population of 300,000 or more; and

2         (3)  a county selected in the most recent audit cycle

3  may not be selected in the current audit cycle.

4     (c)  A county selected to be audited may not pay the cost of

5  performing an audit under this section.

6     (d)  The secretary of state shall adopt rules as necessary to

7  implement this section.

8         ARTICLE 4.  ELECTION OFFICERS AND OBSERVERS

9     SECTION 4.01.  Section 32.075, Election Code, is amended by

10  adding Subsections (g) and (h) to read as follows:

11     (g)  A presiding judge may not have a watcher duly accepted

12  for service under Subchapter A, Chapter 33, removed from the

13  polling place for violating a provision of this code or any other

14  provision of law relating to the conduct of elections, other than a

15  violation of the Penal Code, unless the violation was observed by an

16  election judge or clerk.

17     (h)  Notwithstanding Subsection (g), a presiding judge may

18  call a law enforcement officer to request that a poll watcher be

19  removed if the poll watcher commits a breach of the peace or a

20  violation of law.

21     SECTION 4.02.  Subchapter A, Chapter 33, Election Code, is

22  amended by adding Section 33.0015 to read as follows:

23     Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.  The

24  purpose of this chapter is to preserve the integrity of the ballot

25  box in accordance with Section 4, Article VI, Texas Constitution,

26  by providing for the appointment of watchers.  It is the intent of

27  the legislature that watchers duly accepted for service under this

S.B. No. 1

1   chapter be allowed to observe and report on irregularities in the

2   conduct of any election, but may not interfere in the orderly

3   conduct of an election.  To effect that purpose, a watcher appointed

4   under this chapter shall observe without obstructing the conduct of

5   an election and call to the attention of an election officer any

6   observed or suspected irregularity or violation of law in the

7   conduct of the election.

8        SECTION 4.03.  Subchapter A, Chapter 33, Election Code, is

9   amended by adding Section 33.0016 to read as follows:

10       Sec. 33.0016.  REFERENCES TO EARLY VOTING BALLOT BOARD IN

11  THIS CHAPTER.  A reference in this chapter to an early voting ballot

12  board includes a signature verification committee.

13       SECTION 4.04.  Subchapter A, Chapter 33, Election Code, is

14  amended by adding Section 33.008 to read as follows:

15       Sec. 33.008.  TRAINING PROGRAM.  The secretary of state

16  shall develop and maintain a training program for watchers.  The

17  training program must:

18            (1)  be available:

19                 (A)  entirely via the Internet; and

20                 (B)  at any time, without a requirement for prior

21  registration; and

22            (2)  provide a watcher who completes the training with

23  a certificate of completion.

24       SECTION 4.05.  Section 33.031, Election Code, is amended by

25  adding Subsection (b) to read as follows:

26       (b)  In addition to the requirements of Subsection (a), to be

27  eligible to serve as a watcher, a person must complete training

S.B. No. 1

1  under Section 33.008.

2      SECTION 4.06.  Section 33.051, Election Code, is amended by

3  amending Subsections (a), (b), (d), and (e) and adding Subsections

4  (a-1), (g), and (h) to read as follows:

5      (a)  A  watcher  appointed  to  serve  at  a  precinct  polling

6  place, a meeting place for an early voting ballot board, or a

7  central counting station must deliver the following materials [a

8  certificate of appointment] to the presiding judge at the time the

9  watcher reports for service:

10          (1)  a certificate of appointment; and

11          (2)  a  certificate  of  completion  from  training

12  completed by the watcher under Section 33.008.

13      (a-1)  A  watcher  appointed  to  serve  at  an  early  voting

14  polling place must deliver the certificates under Subsection (a) [a

15  certificate of appointment] to the early voting clerk or deputy

16  clerk in charge of the polling place when the watcher first reports

17  for service.

18      (b)  The  officer  presented  with  a  watcher's  certificates

19  [certificate  of  appointment]  shall  require  the  watcher  to

20  countersign  the  certificate  of appointment  to  ensure  that  the

21  watcher  is  the  same  person  who  signed  the  certificate  of

22  appointment.  Except as provided by Subsection (c), a watcher who

23  presents  himself  or  herself  at  the  proper  time  with  the

24  certificates  required  under  Subsection  (a)  [a  certificate  of

25  appointment] shall be accepted for service unless the person is

26  ineligible  to  serve  or  the  number  of  appointees  to  which  the

27  appointing authority is entitled have already been accepted.

26

S.B. No. 1

1    (d)  The certificates [certificate] of a watcher serving at

2    an early voting polling place shall be retained at the polling place

3    until voting at the polling place is concluded.  At each subsequent

4    time that the watcher reports for service, the watcher shall inform

5    the clerk or deputy in charge.  The officer may require the watcher

6    to sign the watcher's name in the officer's presence, for comparison

7    with the signature on the certificate of appointment, if the

8    officer is uncertain of the watcher's identity.

9    (e)  If a watcher is not accepted for service, the

10   certificates [certificate of appointment] shall be returned to the

11   watcher with a signed statement of the reason for the rejection.

12   (g)  An election officer commits an offense if the officer

13   intentionally or knowingly refuses to accept a watcher for service

14   when acceptance of the watcher is required by this section.  An

15   offense under this subsection is a Class A misdemeanor.

16   (h)  Before accepting a watcher, the officer presented with a

17   watcher's certificate of appointment shall require the watcher to

18   take the following oath, administered by the officer: "I swear (or

19   affirm) that I will not disrupt the voting process or harass voters

20   in the discharge of my duties."

21   SECTION 4.07.  Section 33.056, Election Code, is amended by

22   amending Subsection (a) and adding Subsections (e) and (f) to read

23   as follows:

24   (a)  Except as provided by Section 33.057, a watcher is

25   entitled to observe any activity conducted at the location at which

26   the watcher is serving.  A watcher is entitled to sit or stand

27   [conveniently] near enough to see and hear the election officers

27

1  conducting the observed activity, except as otherwise prohibited by

2  this chapter.

3      (e)  Except as provided by Section 33.057(b), a watcher may

4  not be denied free movement where election activity is occurring

5  within the location at which the watcher is serving.

6      (f)  In this code, a watcher who is entitled to "observe" an

7  election activity is entitled to sit or stand near enough to see and

8  hear the activity.

9      SECTION 4.08.   Subchapter C, Chapter 33, Election Code, is

10 amended by adding Section 33.0605 to read as follows:

11     Sec. 33.0605.   OBSERVING DATA STORAGE SEALING AND TRANSFER.

12 (a) A watcher appointed to serve at a polling place in an election

13 who is available at the time of the action may observe all election

14 activities relating to closing the polling place, including the

15 sealing and transfer of a memory card, flash drive, hard drive, data

16 storage device, or other medium now existing or later developed

17 used by the voting system equipment.

18     (b)  Notwithstanding any other provision of this code, a

19 watcher duly accepted for service at a polling location is entitled

20 to follow the transfer of election materials from the polling place

21 at which the watcher was accepted to a regional tabulating center,

22 the central counting station, or any other location designated to

23 process election materials.   The authority responsible for

24 administering a regional tabulating center or another location

25 where election materials are processed must accept duly appointed

26 watchers for service in the same manner a watcher is accepted for

27 service under Section 33.051 and must accept the same number of

1 watchers that may serve under Section 33.007(a).

2     SECTION 4.09.  Section 33.061(a), Election Code, is amended

3 to read as follows:

4     (a)  A person commits an offense if the person serves in an

5 official capacity at a location at which the presence of watchers is

6 authorized  and  knowingly  prevents  a  watcher  from  observing  an

7 activity or procedure the person knows the watcher is entitled to

8 observe, including by taking any action to obstruct the view of a

9 watcher or distance the watcher from the activity or procedure to be

10 observed  in  a  manner  that  would  make  observation  not  reasonably

11 effective.

12     SECTION 4.10.  Subchapter C, Chapter 33, Election Code, is

13 amended by adding Section 33.063 to read as follows:

14     Sec. 33.063.  RELIEF.   The  appointing  authority  for  a

15 watcher who believes that the watcher was unlawfully prevented or

16 obstructed from the performance of the watcher's duties may seek:

17     (1)  injunctive   relief   under   Section   273.081,

18 including issuance of temporary orders;

19     (2)  a  writ  of  mandamus  under  Section  161.009  or

20 273.061; and

21     (3)  any other remedy available under law.

22     SECTION 4.11.  Section 34.005, Election Code, is amended to

23 read as follows:

24     Sec. 34.005.  ACTION  BY  SECRETARY  OF  STATE.   (a)   The

25 secretary of state may refer a reported violation of law for

26 appropriate action to the attorney general, if the attorney general

27 has jurisdiction, or to a prosecuting attorney having jurisdiction.

1    (b)  If  the  secretary  of  state  believes  that  a  state

2  inspector  was  unlawfully  prevented  or  obstructed  from  the

3  performance of the inspector's duties, the secretary of state may

4  seek:

5    (1)  injunctive  relief  under  Section  273.081,

6  including issuance of temporary orders;

7    (2)  a  writ  of  mandamus  under  Section  161.009  or

8  273.061; and

9    (3)  any other remedy available under law.

10    SECTION 4.12.  Section 86.006, Election Code, is amended by

11  amending  Subsection  (a)  and  adding  Subsection  (a-2)  to  read  as

12  follows:

13    (a)  A  marked  ballot  voted  under  this  chapter  must  be

14  returned  to  the  early  voting  clerk  in  the  official  carrier

15  envelope.   The  carrier  envelope  may  be  delivered  in  another

16  envelope and must be transported and delivered only by:

17    (1)  mail;

18    (2)  common or contract carrier; or

19    (3)  subject  to  Subsections  [Subsection]  (a-1)  and

20  (a-2), in-person delivery by the voter who voted the ballot.

21    (a-2)  An in-person delivery of a marked ballot voted under

22  this chapter must be received by an election official at the time of

23  delivery.   The  receiving  official  shall  record  the  voter's  name,

24  signature,  and  type  of  identification  provided  under  Section

25  63.0101 on a roster prescribed by the secretary of state.   The

26  receiving  official  shall  attest  on  the  roster  that  the  delivery

27  complies with this section.

S.B. No. 1

1    SECTION 4.13.  Chapter 121, Election Code, is amended by

2  adding Section 121.004 to read as follows:

3    Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR

4  PUBLIC INFORMATION.  (a) Except as provided by Subsection (b), a

5  written letter, e-mail, or other communication, including a

6  communication made confidential by other law, between a public

7  official and a voting systems vendor:

8          (1)  is not confidential;

9          (2)  is public information for purposes of Chapter 552,

10  Government Code; and

11          (3)  is not subject to an exception to disclosure

12  provided by Chapter 552, Government Code, other than Sections

13  552.110 and 552.1101, Government Code.

14    (b)  A written letter, e-mail, or other communication

15  between a public official and a voting systems vendor is excepted

16  from disclosure under Chapter 552, Government Code, if the

17  communication discloses information, data, or records relating to

18  the security of elections critical infrastructure.

19    SECTION 4.14.  Section 127.1301, Election Code, is amended

20  to read as follows:

21    Sec. 127.1301.  [TALLYING, TABULATING, AND REPORTING]

22  CENTRALLY COUNTED OPTICAL SCAN BALLOTS [BALLOT UNDERVOTES AND

23  OVERVOTES].  (a)  In an election using centrally counted optical

24  scan ballots, the undervotes and overvotes on those ballots shall

25  be tallied, tabulated, and reported by race and by election

26  precinct in the form and manner prescribed by the secretary of

27  state.

31

S.B. No. 1

1    (b)  An authority operating a central counting station under

2  this chapter may not purchase or use a centrally counted optical

3  ballot  scan  system  that  uses  a  data  storage  disc  on  which

4  information, once written, is capable of being modified.

5    (c)  An authority that purchases system components in order

6  to comply with this section is eligible to have 100 percent of the

7  cost of those system components reimbursed.

8    (d)  Subsection (b) applies starting on the earlier of:

9    (1)  the  date  on  which  the  state  certifies  the  first

10  centrally counted optical ballot scan system under this section; or

11    (2)  September 1, 2026.

12    (e)  This subsection and Subsection (d) expire October 1,

13  2026.

14    SECTION 4.15.  Section 127.131, Election Code, is amended by

15  adding Subsection (f) to read as follows:

16    (f)  The  presiding  judge  of  the  central  counting  station

17  shall provide and attest to a written reconciliation of votes and

18  voters at the close of tabulation for election day and again after

19  the  central  counting  station  meets  for  the  last  time  to  process

20  late-arriving  ballots  by  mail  and  provisional  ballots.   The

21  secretary of state shall create and promulgate rules and a form to

22  facilitate  compliance  with  this  subsection.   The  form  shall  be

23  posted on a website maintained by the county along with election

24  returns and results.

25    SECTION 4.16.  Section 129.023, Election Code, is amended by

26  adding Subsections (b-2) and (c-1) to read as follows:

27    (b-2)  If  the  test  is  being  conducted  for  an  election  in

S.B. No. 1

1  which a county election board has been established under Section

2  51.002, the general custodian of election records shall notify each

3  member of the board of the test at least 48 hours before the date of

4  the test. If the county election board chooses to witness the test,

5  each member shall sign the statement required by Subsection (e)(1).

6      (c-1)  A test conducted under this section must also require

7  the general custodian of election records to demonstrate, using a

8  representative sample of voting system equipment, that the source

9  code of the equipment has not been altered.

10                    ARTICLE 5.  VOTING BY MAIL

11      SECTION 5.01.  Section 84.001(b), Election Code, is amended

12  to read as follows:

13      (b)  Subject to Section 1.011, an [An] application must be

14  submitted in writing and signed by the applicant using ink on paper.

15  An electronic signature or photocopied signature is not permitted.

16      SECTION 5.02.  Section 84.002, Election Code, as effective

17  September 1, 2021, is amended by amending Subsection (a) and adding

18  Subsection (b-1) to read as follows:

19      (a)  An early voting ballot application must include:

20          (1)  the applicant's name and the address at which the

21  applicant is registered to vote;

22          (1-a)  the following information:

23              (A)  the number of the applicant's driver's

24  license, election identification certificate, or personal

25  identification card issued by the Department of Public Safety;

26              (B)  if the applicant has not been issued a number

27  described by Paragraph (A), the last four digits of the applicant's

33

S.B. No. 1

1  social security number; or

2                (C) a statement by the applicant that the

3  applicant has not been issued a number described by Paragraph (A) or

4  (B);

5                (2)  for an application for a ballot to be voted by mail

6  on the ground of absence from the county of residence, the address

7  outside the applicant's county of residence to which the ballot is

8  to be mailed;

9                (3)  for an application for a ballot to be voted by mail

10 on the ground of age or disability, the address of the hospital,

11 nursing home or other long-term care facility, or retirement

12 center, or of a person related to the applicant within the second

13 degree by affinity or the third degree by consanguinity, as

14 determined under Chapter 573, Government Code, if the applicant is

15 living at that address and that address is different from the

16 address at which the applicant is registered to vote;

17               (4)  for an application for a ballot to be voted by mail

18 on the ground of confinement in jail, the address of the jail or of a

19 person related to the applicant within the degree described by

20 Subdivision (3);

21               (5)  for an application for a ballot to be voted by mail

22 on any ground, an indication of each election for which the

23 applicant is applying for a ballot;

24               (6)  an indication of the ground of eligibility for

25 early voting; and

26               (7)  for an application for a ballot to be voted by mail

27 on the ground of involuntary civil commitment, the address of the

34

1 facility operated by or under contract with the Texas Civil

2 Commitment Office or of a person related to the applicant within the

3 degree of consanguinity described by Subdivision (3).

4    (b-1)  A person may use the number of a driver's license,

5 election identification certificate, or personal identification

6 card that has expired for the purpose of fulfilling the requirement

7 under Subsection (a)(1-a) if the license or identification is

8 otherwise valid.

9    SECTION 5.03.  Section  84.011(a),  Election  Code,  as

10 effective September 1, 2021, is amended to read as follows:

11    (a)  The officially prescribed application form for an early

12 voting ballot must include:

13      (1)  immediately  preceding  the  signature  space  the

14 statement:  "I  certify  that  the  information  given  in  this

15 application is true, and I understand that giving false information

16 in this application is a crime.";

17      (2)  a  statement  informing  the  applicant  of  the

18 offenses prescribed by Sections 84.003 and 84.004;

19      (3)  spaces  for  entering  an  applicant's  voter

20 registration number and county election precinct of registration,

21 with a statement informing the applicant that failure to furnish

22 that information does not invalidate the application;

23      (3-a)  a space for entering the information required

24 under Section 84.002(a)(1-a); and

25      (4)  on an application for a ballot to be voted by mail:

26        (A)  a  space  for  an  applicant  applying  on  the

27 ground of absence from the county of residence to indicate the date

35

1 on or after which the applicant can receive mail at the address

2 outside the county;

3            (B)  a space for indicating the fact that an

4 applicant whose application is signed by a witness cannot make the

5 applicant's mark and a space for indicating the relationship or

6 lack of relationship of the witness to the applicant;

7            (C)  a space for entering an applicant's telephone

8 number, with a statement informing the applicant that failure to

9 furnish that information does not invalidate the application;

10            (D)  a space or box for an applicant applying on

11 the ground of age or disability to indicate that the address to

12 which the ballot is to be mailed is the address of a facility or

13 relative described by Section 84.002(a)(3), if applicable;

14            (E)  a space or box for an applicant applying on

15 the ground of confinement in jail or involuntary civil commitment

16 to indicate that the address to which the ballot is to be mailed is

17 the address of a relative described by Section 84.002(a)(4) or (7),

18 if applicable;

19            (F)  a space for an applicant applying on the

20 ground of age or disability to indicate if the application is an

21 application under Section 86.0015;

22            (G)  spaces for entering the signature, printed

23 name, and residence address of any person assisting the applicant;

24            (H)  a statement informing the applicant of the

25 condition prescribed by Section 81.005; and

26            (I)  a statement informing the applicant of the

27 requirement prescribed by Section 86.003(c).



S.B. No. 1

1       SECTION 5.04.   Subchapter A, Chapter 84, Election Code, is
2   amended by adding Section 84.0111 to read as follows:
3       Sec. 84.0111.   DISTRIBUTION   OF   APPLICATION   FORM.   (a)
4   Except as provided by Subsection (c) or as otherwise authorized by
5   this code, an officer or employee of this state or of a political
6   subdivision of this state may not distribute an application form
7   for  an  early  voting  ballot  to  a  person  who  did  not  request  an
8   application under Section 84.001.
9       (b)  An officer or employee of this state or of a political
10  subdivision of this state may not use public funds to facilitate the
11  distribution by another person of an application form for an early
12  voting ballot to a person who did not request an application under
13  Section 84.001.
14      (c)  A  political  party  or  a  candidate  for  office  may
15  distribute  an  application  form  for  an  early  voting  ballot  to  a
16  person who did not request an application under Section 84.001.
17      SECTION 5.05.   Section 84.032(c), Election Code, is amended
18  to read as follows:
19      (c)  An  applicant  may  submit  a  request  after  the  close  of
20  early voting by personal appearance by appearing in person and:
21              (1)  returning  the  ballot  to  be  voted  by  mail  to  the
22  early voting clerk; or
23              (2)  executing an affidavit that the applicant:
24                  (A)  has  not  received  the  ballot  to  be  voted  by
25  mail; [or]
26                  (B)  never requested a ballot to be voted by mail;
27  or

1          (C)  received notice of a defect under Section

2   87.0271(b) or (c) or 87.0411(b) or (c).

3       SECTION 5.06.  Section 84.035, Election Code, is amended to

4   read as follows:

5       Sec. 84.035.  BALLOT SENT TO APPLICANT.  (a)  If the early

6   voting clerk cancels an application by an applicant to whom an early

7   voting ballot has been sent, the clerk shall:

8          (1)  remove the applicant's name from the early voting

9   roster; and

10         (2)  make any other entries in the records and take any

11  other action necessary to prevent the ballot from being counted if

12  returned.

13      (b)  An election judge may permit a person to whom an early

14  voting ballot has been sent who cancels the person's application

15  for a ballot to be voted by mail in accordance with Section 84.032

16  but fails to return the ballot to be voted by mail to the early

17  voting clerk, deputy early voting clerk, or presiding judge as

18  provided by that section to vote only a provisional ballot under

19  Section 63.011.

20      SECTION 5.07.  Section 86.001, Election Code, is amended by

21  adding Subsections (f), (f-1), and (f-2) to read as follows:

22      (f)  If  the  information  required  under  Section

23  84.002(a)(1-a) included on the application does not identify the

24  same voter identified on the applicant's application for voter

25  registration under Section 13.002(c)(8), the clerk shall reject the

26  application.

27      (f-1)  If an application is rejected under Subsection (f),

S.B. No. 1

1  the clerk shall provide notice of the rejection in accordance with

2  Subsection (c).  The notice must include information regarding the

3  ability  to  correct  or  add  information  required  under  Section

4  84.002(a)(1-a)  through  the  online  tool  described  by  Section

5  86.015(c).

6      (f-2)  If an applicant corrects an application for a ballot

7  to  be  voted  by  mail  online  and  that  application  subsequently

8  identifies the same voter identified on the applicant's application

9  for  voter  registration,  the  clerk  shall  provide  a  ballot  to  the

10 applicant as provided by this chapter.

11     SECTION 5.08.  Section 86.002, Election Code, is amended by

12 adding Subsections (g), (h), and (i) to read as follows:

13     (g)  The carrier envelope must include a space that is hidden

14 from  view  when  the  envelope  is  sealed  for  the  voter  to  enter  the

15 following information:

16          (1)  the  number  of  the  voter's  driver's  license,

17 election  identification  certificate,  or  personal  identification

18 card issued by the Department of Public Safety;

19          (2)  if the voter has not been issued a number described

20 by  Subdivision  (1),  the  last  four  digits  of  the  voter's  social

21 security number; or

22          (3)  a  statement  by  the  applicant  that  the  applicant

23 has not been issued a number described by Subdivision (1) or (2).

24     (h)  A  person  may  use  the  number  of  a  driver's  license,

25 election  identification  certificate,  or  personal  identification

26 card that has expired for purposes of Subsection (g) if the license

27 or identification is otherwise valid.

S.B. No. 1

1      (i)  No record associating an individual voter with a ballot
2  may be created.

3      SECTION 5.09.  Section 86.011(c), Election Code, is amended
4  to read as follows:

5      (c)  If the return is not timely, the clerk shall enter the
6  time of receipt on the carrier envelope and retain it in a locked
7  container for the period for preserving the precinct election
8  records.  The clerk shall destroy the unopened envelope and its
9  contents after the preservation period.

10     SECTION 5.10.  Section  86.015(c),  Election   Code,   as
11  effective September 1, 2021, is amended to read as follows:

12     (c)  An online tool used under this section must:

13          (1)  for each election, record:

14              (A)  each application for a ballot to be voted by
15  mail received by the clerk; and

16              (B)  each carrier envelope sent to a voter by the
17  clerk;

18          (2)  for each  carrier  envelope,  record  or  assign  a
19  serially  numbered  and  sequentially  issued  barcode  or  tracking
20  number that is unique to each envelope; [and]

21          (3)  update the applicable Internet website as soon as
22  practicable after each of the following events occurs:

23              (A)  receipt  by  the  early  voting  clerk  of  the
24  person's application for a ballot to be voted by mail;

25              (B)  acceptance  or  rejection  by  the  early  voting
26  clerk of the person's application for a ballot to be voted by mail;

27              (C)  placement  in  the  mail  by  the  early  voting

40

1 clerk of the person's official ballot;

2           (D)  receipt  by  the  early  voting  clerk  of  the

3 person's marked ballot; and

4           (E)  acceptance  or  rejection  by  the  early  voting

5 ballot board of a person's marked ballot; and

6           (4)  allow  a  voter  to  add  or  correct  information

7 required under Section 84.002(a)(1-a) or Section 86.002(g).

8      SECTION 5.11.  Sections 87.027(d), (e), and (i), Election

9 Code, are amended to read as follows:

10      (d)  The  early  voting  clerk  shall  determine  the  number  of

11 members who are to compose the signature verification committee and

12 shall state that number in the order calling for the committee's

13 appointment.   A committee must consist of not fewer than five

14 members.   In an election in which party alignment is indicated on

15 the ballot, each county chair of a political party with a nominee or

16 aligned candidate on the ballot shall submit to the appointing

17 authority a list of names of persons eligible to serve on the

18 signature verification committee in order of the  county chair's

19 preference.  The authority shall appoint at least two persons from

20 each list in the order of preference indicated on each list to serve

21 as members of the committee.   The same number of members must be

22 appointed from each list.   The authority shall appoint as [the]

23 chair of the committee the highest-ranked person on [from] the list

24 provided by the political party whose nominee for governor received

25 the most votes in the county in the most recent gubernatorial

26 general election.   The authority shall appoint as vice chair of the

27 committee the highest-ranked person on the list provided by the

S.B. No. 1

1  political party whose nominee for governor received the second most

2  votes in the county in the most recent gubernatorial general

3  election. A vacancy on the committee shall be filled by appointment

4  from the original list or from a new list submitted by the

5  appropriate county chair.

6          (e)  To be eligible to serve on a signature verification

7  committee, a person must be eligible under Subchapter C, Chapter

8  32, for service as a presiding election judge, except that the

9  person must be a qualified voter:

10               (1)  of the county, in a countywide election ordered by

11  the governor or a county authority or in a primary election;

12               (2)  of the part of the county in which the election is

13  held, for an election ordered by the governor or a county authority

14  that does not cover the entire county of the person's residence; or

15               (3)  of the political subdivision, in an election

16  ordered by an authority of a political subdivision other than a

17  county.

18          (i)  The signature verification committee shall compare the

19  signature on each carrier envelope certificate, except those signed

20  for a voter by a witness, with the signature on the voter's ballot

21  application to determine whether the signatures are those of the

22  voter.  The committee may also compare the signatures with any

23  known signature [two or more signatures] of the voter [made within

24  the preceding six years and] on file with the county clerk or voter

25  registrar to determine whether the signatures are those of the

26  voter.  Except as provided by Subsection (l), a determination under

27  this subsection that the signatures are not those of the voter must

42

1  be made by a majority vote of the committee's membership.  The

2  committee shall place the jacket envelopes, carrier envelopes, and

3  applications of voters whose signatures are not those of the voter

4  in separate containers from those of voters whose signatures are

5  those of the voter.  The committee chair shall deliver the sorted

6  materials to the early voting ballot board at the time specified by

7  the board's presiding judge.

8       SECTION 5.12.  Subchapter B, Chapter 87, Election Code, is

9  amended by adding Section 87.0271 to read as follows:

10      Sec. 87.0271.  OPPORTUNITY TO CORRECT DEFECT:  SIGNATURE

11  VERIFICATION COMMITTEE.  (a)  This section applies to an early

12  voting ballot voted by mail:

13           (1)  for which the voter did not sign the carrier

14  envelope certificate;

15           (2)  for which it cannot immediately be determined

16  whether the signature on the carrier envelope certificate is that

17  of the voter;

18           (3)  missing any required statement of residence;

19           (4)  missing information or containing incorrect

20  information required under Section 84.002(a)(1-a) or Section

21  86.002; or

22           (5)  containing incomplete information with respect to

23  a witness.

24      (b)  Not later than the second business day after a signature

25  verification committee discovers a defect described by Subsection

26  (a) and before the committee decides whether to accept or reject a

27  timely delivered ballot under Section 87.027, the committee shall:

43

1      (1)  determine if it would be possible for the voter to

2  correct the defect and return the carrier envelope before the time

3  the polls are required to close on election day; and

4      (2)  return the carrier envelope to the voter by mail,

5  if the committee determines that it would be possible for the voter

6  to correct the defect and return the carrier envelope before the

7  time the polls are required to close on election day.

8      (c)  If the signature verification committee determines

9  under Subsection (b)(1) that it would not be possible for the voter

10  to correct the defect and return the carrier envelope before the

11  time the polls are required to close on election day, the committee

12  may notify the voter of the defect by telephone or e-mail and inform

13  the voter that the voter may request to have the voter's application

14  to vote by mail canceled in the manner described by Section 84.032

15  or come to the early voting clerk's office in person not later than

16  the sixth day after election day to correct the defect.

17      (d)  If the signature verification committee takes an action

18  described by Subsection (b) or (c), the committee must take either

19  action described by that subsection with respect to each ballot in

20  the election to which this section applies.

21      (e)  A poll watcher is entitled to observe an action taken

22  under Subsection (b) or (c).

23      (f)  The secretary of state may prescribe any procedures

24  necessary to implement this section.

25      (g)  Notwithstanding any other law, a ballot may not be

26  finally rejected for a reason listed in Section 87.041(b)(1), (2),

27  or (6) before the seventh day after election day.

1       SECTION 5.13.  Section 87.041, Election Code, is amended by

2  amending Subsections (b) and (e) and adding Subsection (d-1) to

3  read as follows:

4       (b)  A ballot may be accepted only if:

5            (1)  the  carrier  envelope  certificate  is  properly

6  executed;

7            (2)  neither  the  voter's  signature  on  the  ballot

8  application nor the signature on the carrier envelope certificate

9  is determined to have been executed by a person other than the

10 voter, unless signed by a witness;

11           (3)  the  voter's  ballot  application  states  a  legal

12 ground for early voting by mail;

13           (4)  the voter is registered to vote, if registration

14 is required by law;

15           (5)  the address to which the ballot was mailed to the

16 voter, as indicated by the application, was outside the voter's

17 county of residence, if the ground for early voting is absence from

18 the county of residence;

19           (6)  for a voter to whom a statement of residence form

20 was required to be sent under Section 86.002(a), the statement of

21 residence is returned in the carrier envelope and indicates that

22 the voter satisfies the residence requirements prescribed by

23 Section 63.0011; [and]

24           (7)  the address to which the ballot was mailed to the

25 voter is an address that is otherwise required by Sections 84.002

26 and 86.003; and

27           (8)  the information required under Section 86.002(g)

45

1  provided by the voter identifies the same voter identified on the

2  voter's application for voter registration under Section

3  13.002(c)(8).

4      (d-1)  If a voter provides the information required under

5  Section 86.002(g) and it identifies the same voter identified on

6  the voter's application for voter registration under Section

7  13.002(c)(8), the signature on the ballot application and on the

8  carrier envelope certificate  shall be rebuttably presumed to be

9  the signatures of the voter.

10      (e)  In making the determination under Subsection (b)(2), to

11  determine whether the signatures are those of the voter, the board

12  may also compare the signatures with any known signature [two or

13  more signatures] of the voter [made within the preceding six years

14  and] on file with the county clerk or voter registrar [to determine

15  whether the signatures are those of the voter].

16      SECTION 5.14.  Subchapter C, Chapter 87, Election Code, is

17  amended by adding Section 87.0411 to read as follows:

18      Sec. 87.0411.  OPPORTUNITY TO CORRECT DEFECT:  EARLY VOTING

19  BALLOT BOARD.  (a)  This section applies to an early voting ballot

20  voted by mail:

21          (1)  for which the voter did not sign the carrier

22  envelope certificate;

23          (2)  for which it cannot immediately be determined

24  whether the signature on the carrier envelope certificate is that

25  of the voter;

26          (3)  missing any required statement of residence;

27          (4)  missing information or containing incorrect

S.B. No. 1

1   information required under Section 84.002(a)(1-a) or Section

2   86.002; or

3           (5) containing incomplete information with respect to

4   a witness.

5       (b) Not later than the second business day after an early

6   voting ballot board discovers a defect described by Subsection (a)

7   and before the board decides whether to accept or reject a timely

8   delivered ballot under Section 87.041, the board shall:

9           (1) determine if it would be possible for the voter to

10  correct the defect and return the carrier envelope before the time

11  the polls are required to close on election day; and

12          (2) return the carrier envelope to the voter by mail,

13  if the board determines that it would be possible for the voter to

14  correct the defect and return the carrier envelope before the time

15  the polls are required to close on election day.

16      (c) If the early voting ballot board determines under

17  Subsection (b)(1) that it would not be possible for the voter to

18  correct the defect and return the carrier envelope before the time

19  the polls are required to close on election day, the board may

20  notify the voter of the defect by telephone or e-mail and inform the

21  voter that the voter may request to have the voter's application to

22  vote by mail canceled in the manner described by Section 84.032 or

23  come to the early voting clerk's office in person not later than the

24  sixth day after election day to correct the defect.

25      (d) If the early voting ballot board takes an action

26  described by Subsection (b) or (c), the board must take either

27  action described by that subsection with respect to each ballot in

S.B. No. 1

1   the election to which this section applies.

2          (e)  A poll watcher is entitled to observe an action taken

3   under Subsection (b) or (c).

4          (f)  The secretary of state may prescribe any procedures

5   necessary to implement this section.

6          (g)  Notwithstanding any other law, a ballot may not be

7   finally rejected for a reason listed in Section 87.041(b)(1), (2),

8   or (6) before the seventh day after election day.

9          SECTION 5.15.  Section 87.0431(b), Election Code, is amended

10  to read as follows:

11         (b)  The early voting clerk shall, not later than the 30th

12  day after election day, deliver notice to the attorney general,

13  including   certified   copies   of   the   carrier   envelope   and

14  corresponding ballot application, of any ballot rejected because:

15             (1)  the voter was deceased;

16             (2)  the voter already voted in person in the same

17  election;

18             (3)  the signatures on the carrier envelope and ballot

19  application were not executed by the same person;

20             (4)  the carrier envelope certificate lacked a witness

21  signature; [or]

22             (5)  the carrier envelope certificate was improperly

23  executed by an assistant; or

24             (6)  the early voting ballot board or the signature

25  verification committee determined that another violation of the

26  Election Code occurred.

27         SECTION 5.16.  Sections 87.062(a) and (c), Election Code,

48

1  are amended to read as follows:

2      (a)  On  the  direction  of  the  presiding  judge,  the  early

3  voting ballot board, in accordance with Section 85.032(b), shall

4  open the containers [container] for the early voting ballots that

5  are to be counted by the board, remove the contents from each [the]

6  container, and remove any ballots enclosed in ballot envelopes from

7  their envelopes.

8      (c)  Ballots voted by mail shall be tabulated and stored

9  separately from the ballots voted by personal appearance and shall

10  be separately reported on the returns [The results of all early

11  voting ballots counted by the board under this subchapter shall be

12  included in the same return].

13      SECTION 5.17.  Section 87.103, Election Code, is amended to

14  read as follows:

15      Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS.  (a)

16  The early voting electronic system ballots counted at a central

17  counting station, the ballots cast at precinct polling places, and

18  the ballots voted by mail shall be tabulated separately [from the

19  ballots cast at precinct polling places] and shall be separately

20  reported on the returns.

21      (b)  The  early  voting  returns  prepared  at  the  central

22  counting station must include any early voting results obtained by

23  the early voting ballot board under Subchapter [Subchapters] D [and

24  E].

25      SECTION 5.18.  Section 87.126, Election Code, is amended by

26  adding Subsection (a-1) to read as follows:

27      (a-1)  Electronic  records  made  under  this  section  shall

49

S.B. No. 1

1 record both sides of any application, envelope, or ballot recorded,

2 and all such records shall be provided to the early voting ballot

3 board, the signature verification committee, or both.

4 SECTION 5.19. Subchapter G, Chapter 87, Election Code, is

5 amended by adding Section 87.128 to read as follows:

6 Sec. 87.128. NOTES. (a) Each member of an early voting

7 ballot board and each member of a signature verification committee

8 is entitled to take any notes reasonably necessary to perform the

9 member's duties under this chapter.

10 (b) Notes taken under this section may not contain

11 personally identifiable information.

12 (c) Each member who takes notes under this section shall

13 sign the notes and deliver them to the presiding judge or committee

14 chair, as applicable, for delivery to the custodian of election

15 records.

16 (d) Notes collected under this section shall be preserved in

17 the same manner as precinct election records under Section 66.058.

18 ARTICLE 6. ASSISTANCE OF VOTERS

19 SECTION 6.01. Section 64.009, Election Code, is amended by

20 amending Subsection (b) and adding Subsections (e), (f), (f-1),

21 (g), and (h) to read as follows:

22 (b) The regular voting procedures, except those in

23 Subchapter B, may be modified by the election officer to the extent

24 necessary to conduct voting under this section.

25 (e) Except as provided by Section 33.057, a poll watcher is

26 entitled to observe any activity conducted under this section.

27 (f) A person who simultaneously assists seven or more voters

50

S.B. No. 1

1 voting under this section by providing the voters with
2 transportation to the polling place must complete and sign a form,
3 provided by an election officer, that contains the person's name
4 and address and whether the person is providing assistance solely
5 under this section or under both this section and Subchapter B.

6     (f-1) Subsection (f) does not apply if the person is related
7 to each voter within the second degree by affinity or the third
8 degree by consanguinity, as determined under Subchapter B, Chapter
9 573, Government Code.

10     (g) A form completed under Subsection (f) shall be delivered
11 to the secretary of state as soon as practicable. The secretary
12 shall retain a form delivered under this section for the period for
13 preserving the precinct election records and shall make the form
14 available to the attorney general for inspection upon request.

15     (h) The secretary of state shall prescribe the form
16 described by Subsection (f).

17     SECTION 6.02. Section 64.031, Election Code, is amended to
18 read as follows:

19     Sec. 64.031. ELIGIBILITY FOR ASSISTANCE. A voter is
20 eligible to receive assistance in marking or reading the ballot, as
21 provided by this subchapter, if the voter cannot prepare or read the
22 ballot because of:

23     (1) a physical disability that renders the voter
24 unable to write or see; or

25     (2) an inability to read the language in which the
26 ballot is written.

27     SECTION 6.03. Subchapter B, Chapter 64, Election Code, is

51

S.B. No. 1

1  amended by adding Section 64.0322 to read as follows:

2      Sec. 64.0322.  SUBMISSION  OF  FORM  BY  ASSISTANT.  (a)  A

3  person, other than an election officer, who assists a voter in

4  accordance  with  this  chapter  is  required  to  complete  a  form

5  stating:

6           (1)  the name and address of the person assisting the

7  voter;

8           (2)  the  relationship  to  the  voter  of  the  person

9  assisting the voter; and

10           (3)  whether the person assisting the voter received or

11  accepted  any  form  of  compensation  or  other  benefit  from  a

12  candidate, campaign, or political committee.

13      (b)  The secretary of state shall prescribe the form required

14  by this section.  The form must be incorporated into the official

15  carrier envelope if the voter is voting an early voting ballot by

16  mail  and  receives  assistance  under  Section  86.010,  or  must  be

17  submitted  to  an  election  officer  at  the  time  the  voter  casts  a

18  ballot if the voter is voting at a polling place or under Section

19  64.009.

20      SECTION 6.04.  Section 64.034, Election Code, is amended to

21  read as follows:

22      Sec. 64.034.  OATH.  A  person,  other  than  an  election

23  officer,  selected to provide assistance to a voter must take the

24  following oath, administered by an election officer at the polling

25  place, before providing assistance:

26      "I swear (or affirm) under penalty of perjury that the voter I

27  am  assisting  represented  to  me  they  are  eligible  to  receive

S.B. No. 1

1  assistance; I will not suggest, by word, sign, or gesture, how the
2  voter should vote; I will confine my assistance to reading the
3  ballot to the voter, directing the voter to read the ballot, marking
4  the voter's ballot, or directing the voter to mark the ballot;
5  [answering the voter's questions, to stating propositions on the
6  ballot, and to naming candidates and, if listed, their political
7  parties;] I will prepare the voter's ballot as the voter directs; I
8  did not pressure or coerce the voter into choosing me to provide
9  assistance; [and] I am not the voter's employer, an agent of the
10 voter's employer, or an officer or agent of a labor union to which
11 the voter belongs; I will not communicate information about how the
12 voter has voted to another person; and I understand that if
13 assistance is provided to a voter who is not eligible for
14 assistance, the voter's ballot may not be counted."

15     SECTION 6.05.  Sections 86.010(e), (h), and (i), Election
16 Code, are amended to read as follows:

17     (e)  A person who assists a voter to prepare a ballot to be
18 voted by mail shall enter on the official carrier envelope of the
19 voter:

20         (1)  the person's signature, printed name, and
21 residence address;

22         (2)  the relationship of the person providing the
23 assistance to the voter; and

24         (3)  whether the person received or accepted any form
25 of compensation or other benefit from a candidate, campaign, or
26 political committee in exchange for providing assistance [on the
27 official carrier envelope of the voter].

S.B. No. 1

1    (h)  Subsection (f) does not apply:

2       (1)  to a violation of Subsection (c), if the person is

3 related to the voter within the second degree by affinity or the

4 third degree by consanguinity, as determined under Subchapter B,

5 Chapter 573, Government Code, or was physically living in the same

6 dwelling as the voter at the time of the event; or

7       (2)  to a violation of Subsection (e), if the person is

8 related to the voter within the second degree by affinity or the

9 third degree by consanguinity, as determined under Subchapter B,

10 Chapter 573, Government Code.

11    (i)  An offense under this section for a violation of

12 Subsection (c) is increased to the next higher category of offense

13 if it is shown on the trial of an offense under this section that:

14       (1)  the defendant was previously convicted of an

15 offense under this code;

16       (2)  the offense involved a voter 65 years of age or

17 older; or

18       (3)  the defendant committed another offense under this

19 section in the same election.

20    SECTION 6.06.  Section 86.0105, Election Code, is amended by

21 amending Subsections (a), (c), and (e) and adding Subsection (f) to

22 read as follows:

23    (a)  A person commits an offense if the person:

24       (1)  compensates or offers to compensate another person

25 for assisting voters as provided by Section 86.010[, as part of any

26 performance-based compensation scheme based on the number of voters

27 assisted or in which another person is presented with a quota of

54

S.B. No. 1

1  ~~voters to be assisted as provided by Section 86.010~~]; or

2  (2)  solicits,  receives,  or  [~~engages  in  another~~

3  ~~practice  that  causes  another  person's  compensation  from  or~~

4  ~~employment status with the person to be dependent on the number of~~

5  ~~voters assisted as provided by Section 86.010; or~~

6  [~~(3)  with  knowledge  that  accepting  compensation  for~~

7  ~~such activity is illegal,~~] accepts  compensation  for  an  activity

8  described by Subdivision (1) [~~or (2)~~].

9  (c)  An offense under this section is a state jail felony [~~if~~

10 ~~it is shown on the trial of an offense under this section that the~~

11 ~~defendant  was  previously  convicted  two  or  more  times  under  this~~

12 ~~section~~].

13 (e)  For  purposes  of  this  section,  compensation  means  an

14 economic benefit as defined by Section 38.01, Penal Code [~~any form~~

15 ~~of  monetary  payment,  goods,  services,  benefits,  or  promises  or~~

16 ~~offers of employment, or any other form of consideration offered to~~

17 ~~another person in exchange for assisting voters~~].

18 (f)  This section does not apply if the person assisting a

19 voter is an attendant or caregiver previously known to the voter.

20 SECTION 6.07.  Section 86.013(b), Election Code, is amended

21 to read as follows:

22 (b)  Spaces must  appear  on  the  reverse  side  of  the  official

23 carrier envelope for:

24 (1)  indicating the identity and date of the election;

25 [~~and~~]

26 (2)  entering  the  signature,  printed  name,  and

27 residence address of a person other than the voter who deposits the

S.B. No. 1

1  carrier envelope in the mail or with a common or contract carrier<u>;</u>

2  <u>and</u>

3          <u>(3)  indicating the relationship of that person to the</u>

4  <u>voter.</u>

5        SECTION 6.08.  (a)  The secretary of state shall conduct a

6  study regarding the implementation of educational programs,

7  including the production and publication on the secretary of

8  state's Internet website of instructional videos, to help voters

9  with disabilities understand how to use voting systems used in this

10  state.

11        (b)  Not later than December 1, 2022, the secretary of state

12  shall submit to the standing committees of the legislature with

13  jurisdiction over elections a report on the study required by this

14  section.

15        (c)  The secretary of state, using existing resources, may

16  contract with a qualified vendor to conduct the study required by

17  this section.

18        (d)  This section expires December 1, 2023.

19        ARTICLE 7.  FRAUD AND OTHER UNLAWFUL PRACTICES

20        SECTION 7.01.  Chapter 63, Election Code, is amended by

21  adding Section 63.0111 to read as follows:

22      <u>Sec. 63.0111.  OFFENSES RELATED TO PROVISIONAL VOTING.  (a)</u>

23  <u>An election judge commits an offense if the judge knowingly</u>

24  <u>provides a voter with a form for an affidavit required by Section</u>

25  <u>63.001 if the form contains information that the judge entered on</u>

26  <u>the form knowing it was false.</u>

27      <u>(b)  An offense under this section is a state jail felony.</u>

S.B. No. 1

1          SECTION 7.02.  Sections 276.004(a) and (b), Election Code,
2     are amended to read as follows:

3          (a)  A person commits an offense if, with respect to another
4     person  over  whom  the  person  has  authority  in  the  scope  of
5     employment, the person knowingly:

6               (1)  refuses  to  permit  the  other  person  to  be  absent
7     from work on election day or while early voting is in progress for
8     the purpose of attending the polls to vote; or

9               (2)  subjects or threatens to subject the other person
10    to a penalty for attending the polls on election day or while early
11    voting is in progress to vote.

12         (b)  It  is  an  exception  to  the  application  of  this  section
13    that the person's conduct occurs in connection with an election in
14    which the polls are open on election day or while early voting is in
15    progress  for  voting  for  two  consecutive  hours  outside  of  the
16    voter's working hours.

17         SECTION 7.03.  Sections 276.013(a) and (b), Election Code,
18    are amended to read as follows:

19         (a)  A person commits an offense if the person knowingly or
20    intentionally makes any effort to:

21              (1)  influence  the  independent  exercise  of  the  vote  of
22    another in the presence of the ballot or during the voting process,
23    including by altering the ballot of another or by otherwise causing
24    a ballot to not reflect the intent of the voter;

25              (2)  cause a voter to become registered, a ballot to be
26    obtained, or a vote to be cast under false pretenses; [or]

27              (3)  cause  any  false  or  intentionally  misleading

57

S.B. No. 1

1  statement, representation, or information to be provided:

2          (A)  to an election official; or

3          (B)  on an application for ballot by mail, carrier

4  envelope, or any other official election-related form or document;

5          (4)  prevent a voter from casting a legal ballot in an

6  election in which the voter is eligible to vote;

7          (5)  provide false information to a voter with the

8  intent of preventing the voter from voting in an election in which

9  the voter is eligible to vote;

10         (6)  cause the ballot not to reflect the intent of the

11 voter;

12         (7)  cause a ballot to be voted for another person that

13 the person knows to be deceased or otherwise knows not to be a

14 qualified or registered voter;

15         (8)  cause or enable a vote to be cast more than once in

16 the same election; or

17         (9)  discard or destroy a voter's completed ballot

18 without the voter's consent.

19     (b)  An offense under this section is a Class A misdemeanor,

20 unless:

21         (1)  the person committed the offense while acting in

22 the person's capacity as an elected official, in which case the

23 offense is a state jail felony; or

24         (2)  the person is convicted of an attempt, in which

25 case the offense is a Class B [A] misdemeanor.

26     SECTION 7.04.  Chapter 276, Election Code, is amended by

27 adding Sections 276.015, 276.016, 276.017, 276.018, and 276.019 to

58

1 read as follows:

2      Sec. 276.015.   VOTE HARVESTING.  (a)  In this section:

3          (1)  "Benefit" means anything reasonably regarded as a

4 gain or advantage, including a promise or offer of employment, a

5 political favor, or an official act of discretion, whether to a

6 person or another party whose welfare is of interest to the person.

7          (2)  "Vote    harvesting    services"   means    in-person

8 interaction with one or more voters, in the physical presence of an

9 official ballot or a ballot voted by mail, intended to deliver votes

10 for a specific candidate or measure.

11     (b)  A person commits an offense if the person, directly or

12 through a third party, knowingly provides or offers to provide vote

13 harvesting services in exchange for compensation or other benefit.

14     (c)  A person commits an offense if the person, directly or

15 through a third party, knowingly provides or offers to provide

16 compensation or other benefit to another person in exchange for

17 vote harvesting services.

18     (d)  A person commits an offense if the person knowingly

19 collects or possesses a mail ballot or official carrier envelope in

20 connection with vote harvesting services.

21     (e)  This section does not apply to:

22          (1)  an activity not performed in exchange for

23 compensation or a benefit;

24          (2)  interactions that do not occur in the presence of

25 the ballot or during the voting process;

26          (3)  interactions that do not directly involve an

27 official ballot or ballot by mail;

S.B. No. 1

1   (4) interactions that are not conducted in-person with

2 a voter; or

3   (5) activity that is not designed to deliver votes for

4 or against a specific candidate or measure.

5  (f) An offense under this section is a felony of the third

6 degree.

7  (g) If conduct that constitutes an offense under this

8 section also constitutes an offense under any other law, the actor

9 may be prosecuted under this section, the other law, or both.

10  (h) Records necessary to investigate an offense under this

11 section or any other section of this code shall be provided by an

12 election officer in an unredacted form to a law enforcement officer

13 upon request. Records obtained under this subsection are not

14 subject to public disclosure.

15  Sec. 276.016. UNLAWFUL SOLICITATION AND DISTRIBUTION  OF

16 APPLICATION TO VOTE BY MAIL.  (a)  A public official or election

17 official commits an offense if the official, while acting in an

18 official capacity, knowingly:

19   (1) solicits the submission of an application to vote

20 by mail from a person who did not request an application;

21   (2) distributes an application to vote by mail to a

22 person who did not request the application unless the distribution

23 is expressly authorized by another provision of this code;

24   (3) authorizes or approves the expenditure of public

25 funds to facilitate third-party distribution of an application to

26 vote by mail to a person who did not request the application; or

27   (4) completes any portion of an application to vote by

S.B. No. 1

1   mail and distributes the application to an applicant.

2   (b)   An offense under this section is a state jail felony.

3   (c)   Subsection (a)(2) does not apply if the public official

4   or election official engaged in the conduct described by Subsection

5   (a)(2) by providing access to an application to vote by mail from a

6   publicly accessible Internet website.

7   (d)   Subsection (a)(4) does not apply if the public official

8   or election official engaged in the conduct described by Subsection

9   (a)(4) while lawfully assisting the applicant under Section 84.003.

10   (e)   Subsection (a) does not apply if the public official or

11   election official:

12   (1)   provided general information about voting by mail,

13   the vote by mail process, or the timelines associated with voting to

14   a person or the public; or

15   (2)   engaged in the conduct described by Subsection (a)

16   while acting in the official's capacity as a candidate for a public

17   elective office.

18   (f)   The remedy provided under this chapter is cumulative,

19   and does not restrict any other remedies provided by this code or by

20   law.  A violation of this section is subject to injunctive relief or

21   mandamus as provided by this code.

22   Sec. 276.017.   UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS

23   AND BALLOTING MATERIALS.   (a)   The early voting clerk or other

24   election official commits an offense if the clerk or official

25   knowingly mails or otherwise provides an early voting ballot by

26   mail or other early voting by mail ballot materials to a person who

27   the clerk or official knows did not submit an application for a

S.B. No. 1

1  ballot to be voted by mail under Section 84.001.

2      (b)  An offense under this section is a Class A misdemeanor.

3      Sec. 276.018.  PERJURY IN CONNECTION WITH CERTAIN ELECTION

4  PROCEDURES.  (a) A person commits an offense if, with the intent to

5  deceive,  the  person  knowingly  or  intentionally  makes  a  false

6  statement or swears to the truth of a false statement:

7          (1)  on a voter registration application; or

8          (2)  previously made while making an oath, declaration,

9  or affidavit described by this code.

10      (b)  An offense under this section is a state jail felony.

11      Sec. 276.019.  UNLAWFUL ALTERING OF ELECTION PROCEDURES.  A

12  public official or election official may not create, alter, modify,

13  waive,  or  suspend  any  election  standard,  practice,  or  procedure

14  mandated by law or rule in a manner not expressly authorized by this

15  code.

16                  ARTICLE 8.  ENFORCEMENT

17      SECTION 8.01.  Subchapter E, Chapter 31, Election Code, is

18  amended by adding Sections 31.128, 31.129, and 31.130 to read as

19  follows:

20      Sec. 31.128.  RESTRICTION ON ELIGIBILITY.  (a)  In  this

21  section, "election official" does not include a chair of a county

22  political  party  holding  a  primary  election  or  a  runoff  primary

23  election.

24      (b)  A person may not serve as an election official if the

25  person has been finally convicted of an offense under this code.

26      Sec. 31.129.  CIVIL PENALTY. (a)  In this section, "election

27  official" has the meaning assigned by Section 31.128.

S.B. No. 1

1        (b)  An election official may be liable to this state for a
2   civil penalty if the official:

3            (1)  is employed by or is an officer of this state or a
4   political subdivision of this state; and

5            (2)  violates a provision of this code.

6        (c)  A civil penalty imposed under this section may include
7   termination of the person's employment and loss of the person's
8   employment benefits.

9        Sec. 31.130.  SUIT AGAINST ELECTION OFFICER.  An action,
10  including an action for a writ of mandamus, alleging that an
11  election officer violated a provision of this code while acting in
12  the officer's official capacity may only be brought against the
13  officer in the officer's official capacity.

14       SECTION 8.02.  Sections 232.008(b), (c), and (d), Election
15  Code, are amended to read as follows:

16       (b)  Except as provided by Subsection (c), a contestant must
17  file the petition not later than the later of the 45th [30th] day
18  after the date the election records are publicly available under
19  Section 1.012 or the official result of the contested election is
20  determined.

21       (c)  A contestant must file the petition not later than the
22  later of the 15th [10th] day after the date the election records are
23  publicly available under Section 1.012 or the official result is
24  determined in a contest of:

25            (1)  a primary or runoff primary election; or

26            (2)  a general or special election for which a runoff is
27  necessary according to the official result or will be necessary if

63

1   the contestant prevails.

2       (d)   A contestant must deliver, electronically or otherwise,

3   a copy of the petition to the secretary of state by the same

4   deadline prescribed for the filing of the petition.

5       SECTION 8.03.   Title 14, Election Code, is amended by adding

6   Subtitle D to read as follows:

7                   SUBTITLE D.  OTHER ELECTION LAWSUITS

8       CHAPTER 247.  LAWSUIT ALLEGING IMPROPER ELECTION ACTIVITIES

9       Sec. 247.001.   PETITION   ALLEGING   FRAUD.    This   chapter

10  applies to a civil suit in which a candidate in an election alleges

11  in the petition that an opposing candidate, an agent of the opposing

12  candidate, or a person acting on behalf of the opposing candidate

13  with   the   candidate's   knowledge   violated   any   of   the   following

14  sections of this code:

15              (1)   Section 13.007;

16              (2)   Section 64.012;

17              (3)   Section 64.036;

18              (4)   Section 84.003;

19              (5)   Section 84.0041;

20              (6)   Section 86.0051;

21              (7)   Section 86.006;

22              (8)   Section 86.010;

23              (9)   Section 276.013; and

24              (10)   Section 276.015.

25      Sec. 247.002.   PROCEDURE.   A candidate in an election may

26  file a petition for an action under this chapter in any county where

27  a defendant resided at the time of the election.  If the election is

S.B. No. 1

1  for a statewide office, the candidate may also file the petition in

2  a district court in Travis County.

3      Sec. 247.003.  FILING PERIOD FOR PETITION.  A candidate in an

4  election may file a petition for an action under this chapter not

5  earlier than the day after the date the election is certified and

6  not later than the 45th day after the later of that date or the date

7  election records are made publicly available under Section 1.012.

8      Sec. 247.004.  DAMAGES.   (a)   If it is shown by a

9  preponderance of the evidence that a defendant, an agent of the

10  defendant, or a person acting on behalf of the defendant with the

11  defendant's knowledge committed one or more violations of a section

12  described by Section 247.001, the defendant is liable to the

13  plaintiff for damages in an amount of $1,000 for each violation.

14      (b)  Notwithstanding Section 41.004, Civil Practice and

15  Remedies Code, a court shall award damages under Subsection (a) to

16  the plaintiff irrespective of whether the plaintiff is awarded

17  actual damages.

18      Sec. 247.005.  ATTORNEY'S FEES.   In an action under this

19  chapter, the court may award reasonable attorney's fees to the

20  prevailing party.

21      SECTION 8.04.  Section 273.061, Election Code, is amended to

22  read as follows:

23      Sec. 273.061.  JURISDICTION.  (a)  The supreme court or a

24  court of appeals may issue a writ of mandamus to compel the

25  performance of any duty imposed by law in connection with the

26  holding of an election or a political party convention, regardless

27  of whether the person responsible for performing the duty is a

S.B. No. 1

1  public officer.

2        (b)  The court of criminal appeals may issue a writ of
3  mandamus to compel the performance of any duty imposed by law in
4  connection with the provision, sequestration, transfer, or
5  impoundment of evidence in or records relating to a criminal
6  investigation conducted under this code or conducted in connection
7  with the conduct of an election or political party convention.  If a
8  writ of mandamus is issued under this subsection, it shall include
9  an order requiring the provision, sequestration, transfer, or
10  impoundment of the evidence or record.

11        SECTION 8.05.  Subchapter D, Chapter 22, Government Code, is
12  amended by adding Sections 22.304 and 22.305 to read as follows:

13        Sec. 22.304.  COURT SITTING IN PANELS FOR CERTAIN ELECTION
14  PROCEEDINGS; CRIMINAL OFFENSE.  (a)  In this section, "public
15  official" means any person elected, selected, appointed, employed,
16  or otherwise designated as an officer, employee, or agent of this
17  state, a government agency, a political subdivision, or any other
18  public body established by state law.

19        (b)  Notwithstanding any other law or rule, a court
20  proceeding entitled to priority under Section 22.305 and filed in a
21  court of appeals shall be docketed by the clerk of the court and
22  assigned to a panel of three justices determined using an automated
23  assignment system.

24        (c)  A person, including a public official, commits an
25  offense if the person communicates with a court clerk with the
26  intention of influencing or attempting to influence the composition
27  of a three-justice panel assigned a specific proceeding under this

66

S.B. No. 1

1   section.

2        (d)   An offense under this section is a Class A misdemeanor.

3        Sec. 22.305.   PRIORITY OF CERTAIN ELECTION PROCEEDINGS.   (a)

4   The supreme court or a court of appeals shall prioritize over any

5   other proceeding pending or filed in the court a proceeding for

6   injunctive relief or for a writ of mandamus under Chapter 273,

7   Election Code, pending or filed in the court on or after the 70th

8   day before a general or special election.

9        (b)   If granted, oral argument for a proceeding described by

10  Subsection (a) may be given in person or through electronic means.

11       SECTION 8.06.   Section 23.101, Government Code, is amended

12  by amending Subsection (a) and adding Subsections (b-1) and (b-2)

13  to read as follows:

14       (a)   Except as provided by Subsection (b-1), the [The] trial

15  courts of this state shall regularly and frequently set hearings

16  and trials of pending matters, giving preference to hearings and

17  trials of the following:

18            (1)   temporary injunctions;

19            (2)   criminal actions, with the following actions given

20  preference over other criminal actions:

21                 (A)   criminal actions against defendants who are

22  detained in jail pending trial;

23                 (B)   criminal actions involving a charge that a

24  person committed an act of family violence, as defined by Section

25  71.004, Family Code;

26                 (C)   an offense under:

27                      (i)   Section 21.02 or 21.11, Penal Code;

1                    (ii)  Chapter 22, Penal Code, if the victim

2  of the alleged offense is younger than 17 years of age;

3                    (iii)  Section 25.02, Penal Code, if the

4  victim of the alleged offense is younger than 17 years of age;

5                    (iv)  Section 25.06, Penal Code;

6                    (v)  Section 43.25, Penal Code; or

7                    (vi)  Section 20A.02(a)(7), 20A.02(a)(8),

8  or 20A.03, Penal Code;

9                (D)  an offense described by Article 62.001(6)(C)

10  or (D), Code of Criminal Procedure; and

11                (E)  criminal actions against persons who are

12  detained as provided by Section 51.12, Family Code, after transfer

13  for prosecution in criminal court under Section 54.02, Family Code;

14            (3)  election contests and suits under the Election

15  Code;

16            (4)  orders for the protection of the family under

17  Subtitle B, Title 4, Family Code;

18            (5)  appeals of final rulings and decisions of the

19  division of workers' compensation of the Texas Department of

20  Insurance regarding workers' compensation claims and claims under

21  the Federal Employers' Liability Act and the Jones Act;

22            (6)  appeals of final orders of the commissioner of the

23  General Land Office under Section 51.3021, Natural Resources Code;

24            (7)  actions in which the claimant has been diagnosed

25  with malignant mesothelioma, other malignant asbestos-related

26  cancer, malignant silica-related cancer, or acute silicosis; and

27            (8)  appeals brought under Section 42.01 or 42.015, Tax

S.B. No. 1

1 Code, of orders of appraisal review boards of appraisal districts

2 established for counties with a population of less than 175,000.

3     (b-1)  Except for a criminal case in which the death penalty

4 has been or may be assessed or when it would otherwise interfere

5 with a constitutional right, the trial courts of this state shall

6 prioritize over any other proceeding pending or filed in the court a

7 proceeding for injunctive relief under Chapter 273, Election Code,

8 pending or filed in the court on or after the 70th day before a

9 general or special election.

10     (b-2)  A hearing in a proceeding described by Subsection

11 (b-1) may be held in person or through electronic means, as

12 determined by the court.

13     SECTION 8.07.  Chapter 23, Government Code, is amended by

14 adding Subchapter D to read as follows:

15     SUBCHAPTER D.  GENERAL PROVISIONS

16     Sec. 23.301.  ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS;

17 CRIMINAL OFFENSE.  (a)  Notwithstanding any other law or rule, the

18 clerk of a district court in which a proceeding entitled to priority

19 under Section 23.101(b-1) is filed shall docket the proceeding and,

20 if more than one district court in the county has jurisdiction over

21 the proceeding, randomly assign the proceeding to a district court

22 using an automated assignment system.

23     (b)  Notwithstanding any other law or rule, the clerk of a

24 county court or statutory county court in which a proceeding

25 entitled to priority under Section 23.101(b-1) is filed shall

26 docket the proceeding and, if more than one court in the county has

27 jurisdiction over the proceeding, randomly assign the proceeding to

S.B. No. 1

1   a court using an automated assignment system.

2        (c)  A person, including a public official, commits an

3   offense if the person communicates with a county or district clerk

4   with the intention of influencing or attempting to influence the

5   court or judge assigned to a proceeding under this section.

6        (d)  An offense under this section is a Class A misdemeanor,

7   except that the offense is a state jail felony if it is shown on the

8   trial of the offense that the person committed the offense while

9   acting in the person's official capacity as an election official.

10       (e)  If a district or county clerk does not comply with this

11  section, a person may seek from the supreme court or a court of

12  appeals a writ of mandamus as provided by Section 273.061, Election

13  Code, to compel compliance with this section.

14       Sec. 23.302.  DEADLINES IN CERTAIN ELECTION PROCEEDINGS.

15  (a)  Not later than 24 hours after the proceeding is filed, a judge

16  to whom a case is assigned under Section 23.301(b) who wishes to be

17  recused from the proceeding must, before recusal:

18            (1)  hear an application for any emergency temporary

19  relief sought;

20            (2)  grant or deny any emergency temporary relief

21  sought; and

22            (3)  set a scheduling order that provides:

23                 (A)  a date for a hearing on any injunction sought

24  not later than five days after the date on which the proceeding was

25  filed; and

26                 (B)  discovery and deposition deadlines before

27  the expiration of any emergency relief order entered.

S.B. No. 1

1    (b)  The presiding judge of an administrative region shall

2 assign a new judge to a proceeding assigned under Section 23.301(b)

3 not later than 12 hours after the original judge assigned to the

4 proceeding is recused under Subsection (a).

5    (c)  A final order in a proceeding filed under Section

6 273.081, Election Code, shall be submitted in writing to the

7 parties not later than 24 hours after the judge makes a final

8 determination in the proceeding.

9    (d)  If a district judge does not comply with this section, a

10 person may seek from the supreme court, the court of criminal

11 appeals, or a court of appeals a writ of mandamus as provided by

12 Section 273.061, Election Code, to compel compliance with this

13 section.

14    (e)  Notwithstanding Section 23.101(b-1), a proceeding

15 relating to a permanent injunction being sought in connection to a

16 challenge under Section 141.034, Election Code, may be heard after

17 the primary election has been canvassed.

18        ARTICLE 9.  INELIGIBLE VOTERS AND RELATED REFORMS

19        SECTION 9.01.  Chapter 42, Code of Criminal Procedure, is

20 amended by adding Article 42.0194 to read as follows:

21    Art. 42.0194.  FINDING REGARDING FELONY CONVICTION.  In the

22 trial of a felony offense, if the defendant is adjudged guilty of

23 the offense, the court shall:

24        (1)  make an affirmative finding that the person has

25 been found guilty of a felony and enter the affirmative finding in

26 the judgment of the case; and

27        (2)  instruct the defendant regarding how the felony

1  conviction will impact the defendant's right to vote in this state.

2       SECTION 9.02.   Article 42.01, Code of Criminal Procedure, as

3  effective September 1, 2021, is amended by adding Section 16 to read

4  as follows:

5       Sec. 16.   In   addition   to   the   information   described   by

6  Section 1, the judgment should reflect the affirmative finding and

7  instruction entered pursuant to Article 42.0194.

8       SECTION 9.03.   Section 64.012, Election Code, is amended by

9  amending Subsections (a) and (b) and adding Subsections (c) and (d)

10  to read as follows:

11       (a)   A person commits an offense if the person knowingly or

12  intentionally:

13            (1)   votes or attempts to vote in an election in which

14  the person knows the person is not eligible to vote;

15            (2)   [knowingly] votes or attempts to vote more than

16  once in an election;

17            (3)   [knowingly] votes or attempts to vote a ballot

18  belonging to another person, or by impersonating another person;

19  [or]

20            (4)   [knowingly] marks or attempts to mark any portion

21  of another person's ballot without the consent of that person, or

22  without specific direction from that person how to mark the ballot;

23  or

24            (5)   votes or attempts to vote in an election in this

25  state after voting in another state in an election in which a

26  federal office appears on the ballot and the election day for both

27  states is the same day.

S.B. No. 1

1      (b)  An offense under this section is a Class A misdemeanor

2 [felony of the second degree unless the person is convicted of an

3 attempt. In that case, the offense is a state jail felony].

4      (c)  A person may not be convicted solely upon the fact that

5 the person signed a provisional ballot affidavit under Section

6 63.011 unless corroborated by other evidence that the person

7 knowingly committed the offense.

8      (d)  If conduct that constitutes an offense under this

9 section also constitutes an offense under any other law, the actor

10 may be prosecuted under this section, the other law, or both.

11      SECTION 9.04.  The change in law made by this article in

12 adding Section 64.012(c), Election Code, applies to an offense

13 committed before, on, or after the effective date of this Act,

14 except that a final conviction for an offense under that section

15 that exists on the effective date of this Act remains unaffected by

16 this article.

17   ARTICLE 10.  REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

18      SECTION 10.01.  The following provisions of the Election

19 Code are repealed:

20         (1)  Section 85.062(e);

21         (2)  Section 86.0105(b); and

22         (3)  Section 127.201(f).

23      SECTION 10.02.  If any provision of this Act or its

24 application to any person or circumstance is held invalid, the

25 invalidity does not affect other provisions or applications of this

26 Act that can be given effect without the invalid provision or

27 application, and to this end the provisions of this Act are declared

1  to be severable.

2      SECTION 10.03.  (a)  Except as otherwise provided by this
3  Act, the changes in law made by this Act apply only to an offense
4  committed on or after the effective date of this Act.  An offense
5  committed before the effective date of this Act is governed by the
6  law in effect when the offense was committed, and the former law is
7  continued in effect for that purpose.  For purposes of this section,
8  an offense was committed before the effective date of this Act if
9  any element of the offense occurred before that date.

10      (b)  The changes in law made by this Act apply only to an
11  election ordered on or after the effective date of this Act.  An
12  election ordered before the effective date of this Act is governed
13  by the law in effect when the election was ordered, and the former
14  law is continued in effect for that purpose.

15      (c)  The changes in law made by this Act apply only to an
16  application to vote an early voting ballot by mail submitted on or
17  after the effective date of this Act.  An application to vote an
18  early voting ballot by mail submitted before the effective date of
19  this Act is governed by the law in effect when the application was
20  submitted, and the former law is continued in effect for that
21  purpose.

22      (d)  The changes in law made by this Act apply only to an
23  application for voter registration submitted on or after the
24  effective date of this Act.

25      (e)  Chapter 247, Election Code, as added by this Act,
26  applies only to a cause of action for which the associated election
27  occurred after the effective date of this Act.

<u>S.B. No. 1</u>

1        SECTION 10.04.  This Act takes effect on the 91st day after

2   the last day of the legislative session.

S.B. No. 1

_____          _____
President of the Senate                   Speaker of the House

I hereby certify that S.B. No. 1 passed the Senate on August 12, 2021, by the following vote: Yeas 18, Nays 11; August 27, 2021, Senate refused to concur in House amendments and requested appointment of Conference Committee; August 29, 2021, House granted request of the Senate; August 31, 2021, Senate adopted Conference Committee Report by the following vote: Yeas 18, Nays 13._____

_____
Secretary of the Senate

I hereby certify that S.B. No. 1 passed the House, with amendments, on August 27, 2021, by the following vote: Yeas 80, Nays 41, one present not voting; August 29, 2021, House granted request of the Senate for appointment of Conference Committee; August 31, 2021, House adopted Conference Committee Report by the following vote: Yeas 80, Nays 41, one present not voting._____

_____
Chief Clerk of the House

Approved:

9-7-21
_____
Date

_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
7PM O'CLOCK

SEP 07 2021

Secretary of State

76

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,           §
    *Plaintiffs,*                                     §
                                                      §
*v.*                                              §       Case No. 5:21-cv-844-XR
                                                      §
GREGORY W. ABBOTT, et al.,                     §
    *Defendants.*                                    §

---

**STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


# APPENDIX PP

Subject to Protective Order

EXPERT WITNESS REPORT

*La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex.) (lead case)

Submitted by

Mark Hoekstra, PhD

Date of Report

April 5, 2023

## I.       Introduction

1.       I have been engaged to respond to the second supplemental report dated March 6 2023, that was written by Professor Kenneth R. Mayer in the consolidated case *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex.). My analysis is based on my knowledge and experience as an active research economist who is well versed in the frontier empirical methods used in causal analyses.

## II.      Qualifications and Compensation

2.       I am the Rex B. Grey Professor of Economics at Texas A&M University in College Station, Texas, where I have been on the faculty since 2011. Prior to arriving at Texas A&M, I was an assistant professor of economics at the University of Pittsburgh. I received my PhD in Economics from the University of Florida in 2006. I have published more than 20 papers in peer-reviewed journals in economics, including the American Economic Association's (AEA) top journal of *American Economic Review* as well as the top AEA journals relevant to my field (*American Economic Journal: Applied Economics* and *American Economic Journal: Economic Policy*) and top field journals (*Journal of Labor Economics; Journal of Public Economics*; *Journal of Human Resources*). These studies have used a wide variety of administrative datasets, including data on voting. I serve as a reviewer for approximately 20 paper submissions per year, including for top economics journals. I serve as an Associate Editor at the *Journal of Labor Economics* (since 2018) and at the J*ournal of Human Resources* (since 2015), which are the top two field journals in labor economics.

3.       The common theme throughout both my research and my teaching is careful attention to the assumptions underlying various research designs used to assess the causal impact of policies. Some of my research is used as examples in the textbook *Causal Inference: The Mixtape* by Scott Cunningham, which is a leading graduate-level book on empirical methods used in economics. I teach

a PhD-level field course in labor economics, the focus of which is on understanding and assessing the various research methodologies used by economists and other social scientists. These include the methods used to test for racial and gender bias in different settings. I also teach part of the core 1st-year PhD sequence in econometrics, in which I focus on how to assess causality in non-experimental contexts.  I am perhaps best known among the PhD students as someone who offers advice on research projects, including whether the proposed method is sufficient to answer the question at hand. I recently won department-level awards for both the quality of graduate teaching and the quality of feedback given to students. During my time at Texas A&M, I have chaired more than 10 dissertation committees, and many of my students have gone on to careers at R-1 research universities. I have served on the committees of countless more PhD students.

4.      I also hold an appointment as a Research Fellow at the National Bureau of Economic Research based in Cambridge, Massachusetts, and as a Research Fellow at the Institute for Labor Economics (IZA) based in Bonn, Germany. In 2012 I received the IZA Young Labor Economist Award.

5.      I am being compensated for my time at the rate of $600/hour. I have not previously testified as an expert witness.

III.    **Assessment of Professor Mayer's March 6 supplemental report – Overview**

6.      Did the new mail-in voting requirements of SB 1 cause a sufficiently large burden on Texas voters to actually reduce voting?   And if so, to what extent did any such burden disproportionately impact minority voters?   Professor Mayer's March 6 report asserts that in the November 2022 general election in Dallas, Harris, and Hidalgo counties, 2,949 voters, out of a total of 1,881,445 voters, were "disenfranchised" as a result of the new mail-in voting rules implemented by SB 1.  Professor Mayer also asserted that the "disproportionate impact that these provisions have

Hoekstra                                                                                                3

on African American and Hispanic voters is material and statistically significant." Finally, Professor Mayer asserted that the new mail-in voting rules do not contribute to election security or the integrity of the voting process.

7. If true, these assertions would certainly be troubling. However, I show below that these assertions are at best unfounded, and at worst false. In particular, they are based on incorrect analysis and incorrect interpretation.

8. I show the following:

A. Professor Mayer repeatedly misinterprets ballots not counted due to the identification requirements as "disenfranchised voters". In fact, an alternative interpretation equally consistent with the facts is that these 2,949 votes in question were illegitimate. There is nothing in Professor Mayer's report, or in the underlying data, to indicate whether or not those rejected mail-in votes were cast legally. As a result, even if these votes went uncounted because SB 1 reduced illegitimate votes – which was the stated goal of the legislation – Professor Mayer would misinterpret that as evidence of disenfranchisement.

B. Professor Mayer's assertion that mail-in ballot rejections increased as a consequence of SB 1 is based on pre-SB 1 rejection data that appear to be incorrect. In my report, I highlight several ex ante reasons to doubt the quality of the pre-SB 1 rejection data, relative to the post-SB 1 rejection data.

Moreover, these concerns are borne out in the data. I demonstrate using Professor Mayer's data that mail-in ballot rejection rates *for reasons other than SB 1* more than doubled from before SB 1 to after SB 1. These rejections cannot, by definition, be caused by SB 1. This suggests that poor record-keeping of rejections prior to SB 1, or some other factor, is driving some or all of the increase in rejection rates observed. This casts serious doubt on the credibility of pre- versus post-SB 1 rejection rate comparisons.

C. In asserting that SB 1 does not contribute to election security, Professor Mayer repeatedly, and improperly, assumes that absence of evidence is evidence of absence. Much if not all of what Professor Mayer emphasizes is the number of election fraud cases that are prosecuted, which is small relative to total votes cast. However, I show that even for types of criminal misconduct such as property crime, fewer than 7 percent of incidents are prosecuted. It would be wrong to assume those other incidents never happened. That low prosecution rate is striking, given that property crimes are almost certainly detected by the victim, the victim is typically incentivized to report it, and there is often evidence to support a prosecution. By comparison, election fraud is much less likely to be detected and thus reported by either the victim or election personnel, and is likely more difficult to prove. Given that, would we not expect the prosecution rate of election fraud to be a small fraction of that of property crime? As a result, the prudent view is that it is difficult or even impossible for anyone to know how often mail-in ballot fraud occurs.

Hoekstra                                                                                            4

In addition, Professor Mayer ignores the indisputable public perception that election fraud is widespread.  As a result, even if one believes there is zero election fraud, one can also believe there are benefits associated with enacting safeguards such as SB 1 to help convince the electorate of the same.

D.   Professor Mayer's disparate impact analysis is characterized by three critical flaws.

i.   Professor Mayer computes disparate impact incorrectly.  While Professor Mayer accounts for differential rates of ballot rejections among voters who chose to vote absentee, he does *not* account for differences across groups in the likelihood of voting absentee.  This is incorrect; I show doing so results in nonsensical conclusions.  Professor Mayer's incorrect approach for estimating disparate impact is also inconsistent with a (correct) statement Professor Mayer made in his own report about how to evaluate disparate impact.  Similarly, it is also inconsistent with a (correct) statement about how to evaluate disparate impact made by another expert for the plaintiff, Professor Eric McDaniel.

   a.   While I presume this was an honest mistake by Professor Mayer, the practical implications are important.  I show correcting this mistake in Harris County indicates that SB 1's rules generate disparate impact *against* voters predicted to be White, in favor of voters predicted to be Hispanic.  This is the exact opposite of what Professor Mayer's incorrect analysis suggested.  Similarly, while Professor Mayer's findings assert evidence of disparate impact against predicted-Asians in favor of those predicted to be White, the correct analysis shows there is no difference between the two groups.  Additionally, while I do not have access to the necessary data for Dallas County to correct his analysis, it is clear the problem is sufficient as to cast serious doubt on, if not entirely discredit, the results in Professor Mayer's report.

ii.  Professor Mayer's disparate impact analyses do not use data on the actual race and ethnicity of voters.  Rather, it is inferred using data on surname and residential neighborhood.

   a.   Unsurprisingly, the creators of the prediction algorithm document that the predictions come with significant error.  This has important implications for any analysis across racial or ethnic groups.  Yet Professor Mayer's analysis seemingly ignores these errors.  For example, Professor Mayer's analysis predicts there are 187,416 votes cast by Black voters.  In contrast, I demonstrate that if we take into account the classification error documented by the scholars who developed the method used by Professor Mayer, there were actually an estimated 342,076 Black voters.  Given the sheer number of misclassified Black voters in the analysis, it should come as no surprise that a wide range of estimates of racial differences are possible, depending on the assumptions made.

   b.   Indeed, I show that if one accounts for the classification errors, estimates of the rejection rates of actual Black voters in Harris County range from 0 (and thus substantially lower than Whites), to rates that are substantially higher than Whites.  Put differently, Professor Mayer's interpretation depends crucially on assumptions he implicitly made, but did not acknowledge, about the impact of the classification error on the analysis.  As a result, a more prudent interpretation is that because classification

Hoekstra                                                                                        5

error is so large, it is hard to say anything with a high degree of certainty about differences in voting across actual racial and ethnic groups.

iii.   Professor Mayer does not acknowledge the importance of voter substitution across voting methods.  Yet this is a critical feature to assessing any potential burden imposed by SB 1's safeguards on mail-in voting.  Even the strictest restriction on mail-in voting will not burden voters if they consider another method of voting as a perfect substitute.  In fact, the best empirical evidence on this question indicates that Texan voters view in-person voting as a close-if-not-perfect substitute for mail-in voting.  In short, it shows that restrictions that are much stronger than those imposed by SB 1 only change *how* Texans vote, not *whether* they vote.

Yet Professor Mayer's report only references this possibility once, in a footnote about a small set of voters.  Beyond that, it is unclear whether Professor Mayer considered the likelihood that legitimate voters whose mail-in ballots were rejected would vote in person.  It is also unclear if he is including voters who subsequently cured their mail-in ballot or voted in person after a rejection in his final number of 2,949 ballots rejected due to SB 1.  Regardless, another expert for the plaintiff, Professor Eitan Hersh, indicated in his February 3, 2023 report that across all of Texas, there were only 6,355 votes, out of 8.1 million cast in the 2022 general election, that were rejected due to SB 1's requirements and where a vote by the same individual was not subsequently cast and counted.  And there is nothing in Professor Hersh's report, or Professor Mayer's report, to suggest that these votes were cast legitimately rather than illegitimately.  There is also nothing to suggest that these votes were not rejected due to voter error in completing the ballot, which means even this small number may decline as voters become more familiar with the new process.

E.   To what extent were drive-thru voters from the 2020 election in Calhoun County unwilling, or unable, to vote in subsequent elections, when drive-thru voting was no longer permissible? Professor Mayer would have you believe that "the elimination of drive-thru voting made it more difficult for Hispanic voters, in particular, to cast a vote in the 2022 general election".

The fact is, however, that there is no evidence that the individuals who voted in 2020 using drive-thru voting were negatively impacted *at all* by the elimination of drive-thru voting. Instead, I show that those voters participated in the 2022 primary and general elections at higher rates than did other Calhoun County residents who also voted early in the 2020 election. This is true both in the aggregate, and for voters predicted to be White, Non-White (i.e., all other groups combined), and Hispanic.  For example, while 29.8 percent of drive-thru voters predicted to be Hispanic voted in the 2022 primary, only 18.8 percent of predicted-Hispanic non-drive-thru-early-voters did so.  Similarly, 62.3 percent of predicted-Hispanic 2020 drive-thru voters subsequently voted in the 2022 general election, compared to only 47.9 percent of their non-drive-thru-voting predicted-Hispanic counterparts.

As a result, it is incorrect for Professor Mayer to imply that predicted-Hispanic drive-thru voters were disparately impacted.  Rather, it is clear they were more willing and able than their non-drive-thru-voting counterparts to subsequently cast votes in 2022.

In addition, I show that the statistical test employed by Professor Mayer is flawed.  I show that if the same test is applied to non-drive-thru early voters from 2020, that test would also

Hoekstra                                                                                                          6

conclude evidence of disparate impact.  That is clearly untenable, since those voters did not even use the drive-thru voting option in 2020.

Moreover, both of these criticisms leave aside the issue that as referenced earlier, Professor Mayer does not observe the race or ethnicity of voters.  Rather, he only observes a prediction of race and ethnicity, which comes with a considerable amount of error.  Accounting for the uncertainty in classifying ethnicity casts further doubt on the credibility of these findings.

## IV. Professor Mayer's (Mis)Interpretation of Mail-In Ballot Rejections, the Effect of SB 1 on Mail-In Ballot Rejections, and the Benefits of SB 1 to Election Security

### A. Professor Mayer's (Mis)Interpretation of Mail-In Ballot Rejections

9.      Professor Mayer's analysis of mail-in voting examines Dallas, Harris, and Hidalgo counties.  Table 1 replicates these results.  It shows that out of the 1.9 million votes cast and counted in those three counties in the 2022 general election, there were 2,949 mail-in ballots rejected (0.16 percent of total ballots) for reasons relating to SB 1's identification requirements.

10.      Professor Mayer chooses to interpret these ballot rejections as evidence that SB 1 "disenfranchised" legitimate voters.  The trouble is that there is nothing in Professor Mayer's report, or in the underlying data, to indicate whether these 2,949 votes were legally cast, rather than illegitimately cast.  Neither Professor Mayer, nor I, can distinguish between these two interpretations of the facts that Professor Mayer presents.

11.      This is particularly concerning given that the stated purpose of SB 1 was to reduce the likelihood of fraudulent votes being cast and counted.  Under Professor Mayer's chosen interpretation, any fraudulent votes rejected under SB 1 would be interpreted as evidence of disenfranchisement.  This is clearly incorrect.

Hoekstra                                                                                                   7

Table 1: Rejection Rates of Ballots Due to SB 1, Per Professor Mayer's Report

| County | Total Votes Cast in 2022 General Election | 2022 Total Mail Absentee Ballots Rejected on Account of SB 1, per Mayer Table 1 | Fraction of Total votes cast rejected due to SB 1 | % Total votes cast rejected due to SB 1 |
|---|---|---|---|---|
| | (1) | (2) | (3) = (2)/(1) | (4) = (2)/(1)*100 |
| Dallas | 626,944 | 320 | 0.000510 | 0.0510% |
| Harris | 1,110,726 | 2,558 | 0.002303 | 0.2303% |
| Hidalgo | 143,775 | 71 | 0.000494 | 0.0494% |
| Totals | 1,881,445 | 2,949 | 0.001567 | 0.1567% |

Notes: In Column (1), 2022 total votes cast was computed as the number of cumulative in-person votes reported on the Secretary of State Website at https://earlyvoting.texas-election.com/Elections/getElectionEVDates.do at the close of business on election day in 2022, plus the number of mail absentee ballots returned reported in Column 1 of Table 1 from Mayer. Column (2) is taken directly from Table 1 in Mayer.

**B. Professor Mayer's assertion that SB 1 caused an increase in mail ballot rejection rates is based on pre-SB 1 data that appear to be incorrect**

12.      Professor Mayer also asserts that SB 1 caused an increase in mail-in ballot rejection rates.  The trouble with this assertion is that any pre- versus post-policy comparison, including this one, is only as good as the underlying data.  Unfortunately, there are reasons to doubt the quality of ballot rejection data prior to SB 1.  That is in part because another bill, passed around the same time as SB 1, introduced a ballot tracker.  In addition, SB 1 introduced a cure process.  For these reasons, counties were required to collect more data after SB 1 compared to before.  This creates problems for before-versus-after comparisons.

13.      These concerns are borne out in the data.  Columns (2) and (3) of Table 2 show the number and rate of mail-in ballot rejections in the 2022 general election for reasons *other than the identification requirements associated with SB 1*.  It shows that 1.66, 0.86, and 0.67 percent of mail ballots in Dallas, Harris, and Hidalgo counties were rejected.  Columns (4) and (5) show that ballot rejections for non-SB 1 reasons were 2.7 to 2.8 times higher in Dallas County and Harris County in 2022, compared to all ballot rejections for 2020.  Yet there is no reason to expect that SB 1 should increase the rate of ballot rejections for reasons that have nothing to do with SB 1's identification requirements.

Hoekstra                                                                                                                    8

Rather, this result indicates something is clearly wrong with the underlying data, the comparison, or both. At best, this casts serious doubt on the reliability of before-versus-after comparisons in assessing the causal impact of SB 1 on ballot rejection rates.

Table 2 Rejection Rates of Mail-In Ballots for Non-SB 1 Reasons, 2020 and 2022

| County | 2022 Mail Absentee Ballots Returned | 2022 Total Mail Absentee Ballots Rejected for Reasons NOT Associated with SB 1 | 2022 Mail Absentee Rejection Rate for Rejections NOT Associated with SB 1 | 2020 Total Mail Absentee Ballot Rejection Rate | Increase in Total Rejection Rate from 2020 to 2022, including Only Rejections in 2022 NOT Due to SB 1 |
|---|---|---|---|---|---|
| | (1) | (2) | (3) = (2)/(1) | (4) | (5) = (3)/(4) |
| Dallas | 20,914 | 347 | 0 0166 | 0 0061 | 2 7 |
| Harris | 64,625 | 558 | 0 0086 | 0 0031 | 2 8 |
| Hidalgo | 5,059 | 34 | 0 0067 | 0 0108 | 0 6 |
| Totals | 90,598 | 939 | 0 0104 | 0 0044 | 2 4 |
| Source: | Mayer Table 1 | Computed from Mayer Table 2 | - | Mayer Table 1 | - |

Notes: 2022 Total votes cast was computed as the number of cumulative in-person votes reported on the Secretary of State Website at https://earlyvoting texas-election com/Elections/getElectionEVDates do at the close of business on election day in 2022, plus the number of mail absentee ballots returned reported in Column 1 of Table 1 from Mayer

14.     Finally, Professor Mayer seems to give little thought to whether the mail ballot rejection rates are likely to remain similar to those observed in the November 2022 election. This is important because anytime a new rule is introduced, there is a learning curve for both election administrators and voters. This was evident in the fact that the mail-in ballot rejection rate for all of Texas fell from 12.4 percent to 2.7 percent from the 2022 primary election to the 2022 general election.[1] It was also explicitly acknowledged by the Brazos County Elections Administrator, who indicated that many of the mail-in ballot rejections for the November 2022 election she had seen at the time of the interview were from voters who had not yet learned, despite election administrators' best efforts, to follow the new rules.[2] As a result, it is possible, if not likely, that ballot rejection rates will decline going forward, compared to the November 2022 election.

---

[1] Rejections of Texans' mail ballots decline markedly from big surge in March primary (dallasnews.com)
[2] Of the voters who had voted in the primary, Ms. Hancock said "This is a new process for them. Those who voted in the primary and the runoff know what they need to do, as opposed to someone who is only voting in the November election." *See* https://www.texastribune.org/2022/10/20/voting-texas-ballot-rejections/.

### C.  Professor Mayer's Assertions that SB 1 Lacks Any Legitimate Justification

15.     After (mis)interpreting the 2,949 ballot rejections among the 1,881,445 ballots cast and counted as evidence of disenfranchisement, Professor Mayer asserts that SB 1's mail absentee ballot rules are "pure deadweight", and that "[t]he new mail absentee ballot rules, moreover, do not contribute to election security or the integrity of the voting process".

16.     The first problem with these assertions is that as demonstrated above, the evidence that Professor Mayer chose to interpret as evidence of disenfranchisement could just as easily be interpreted as evidence of a reduction in fraud.  In this way, his rationale for asserting that SB 1 does not reduce fraud is based entirely on his own (mis)interpretation of rejected votes as unambiguous evidence of disenfranchisement, rather than fraud.

17.     In addition, much if not all of Professor Mayer's argument seems to hinge on his mistaken belief that absence of evidence is evidence of absence.  For example, in concluding that election fraud is rare, he cites both the number of prosecuted fraud cases in Texas, as well as a study by Auerbach and Pierson (2021) that used data on the number of election fraud cases prosecuted nationally.  The trouble, of course, is that it is difficult to detect and measure election fraud in general, and the type of fraud that would be prevented by SB 1's mail-in voting rules in particular.  Professor Mayer acknowledges this himself in his own study, where he states that "the prevalence of fraudulent voting, as with any illegal or largely private matter, is difficult to measure."[3]  Given that reality, how could we have any confidence that mail-in voter fraud would be detected if it occurred?

18.     While it is hard to know the answer to that question, we can assess how the incidence of other types of crime compares with measures of crime prosecution.  It turns out, for example, that less than seven percent of property crimes are both reported and prosecuted or otherwise cleared by

---

[3] *See* Ahlquist, Mayer, and Jackman (2014), which can be accessed at https://www.liebertpub.com/doi/abs/10.1089/elj.2013.0231.

police.[4]  In fact, even for the highest-priority criminal incidents—violent crime—only 21.4 percent are prosecuted.  Yet it would be a mistake to pretend that those incidents that were not prosecuted never happened.

19.     Importantly, property crimes are very likely to be detected by the victim, and violent crimes are almost certain to be detected by the victim.  In contrast, mail-in voting fraud is unlikely to be detected by its victims or election personnel.  This raises an important question: If prosecutions for property and violent crimes are that low, when the crime is almost certainly detected, when there is a victim who has an incentive to report the crime, and when there is often considerable evidence, wouldn't we expect the prosecution rate for mail-in voting fraud to be much, much lower?  To be clear, I do not claim to know whether unreported mail-in voter fraud is common, or nonexistent. Rather, the prudent view is that it is difficult or even impossible for anyone to know with any degree of certainty.

20.     Moreover, even if one believes there is zero election fraud, it is clear the American public strongly disagrees.  For example, a 2016 survey by the Associated Press and the NORC Center for Public Affairs Research at the University of Chicago indicates that 35 percent of Americans say there is a "great deal" of election fraud in the United States, 39 percent say there is "some election fraud", and only 24 percent say there is "hardly any".[5]  Similarly, a 2020 survey administered by California Institute of Technology found that 15 percent of registered voters believe that absentee ballot impersonation is "very common", and another 18 percent believe there is "occasional" absentee ballot impersonation.[6]  It is hard to imagine that anyone, including Professor Mayer, would dispute that these perceptions are bad for democracy.  As a result, one clear potential benefit of administering

---

[4]  *See* https://www.pewresearch.org/fact-tank/2017/03/01/most-violent-and-property-crimes-in-the-u-s-go-unsolved/, which indicates that only 34.6 percent of property crimes are even reported to the police, and only 19.4 percent of those are cleared (0.346 * 0.194 = 0.067).

[5]  *See* https://apnorc.org/projects/views-on-the-american-election-process-and-perceptions-of-voter-fraud/.

[6]  *See* https://static1.squarespace.com/static/5ace8a6b45776eba2e40cbee/t/5fbbe565ae796c5cf419b024/1606149477949/Perception_of_Fraud_2020_Survey_Report.pdf.

Hoekstra                                                                                                          11

safeguards such as those adopted by SB 1 is they may reduce these perceptions of widespread election fraud.

## V.     The Errors in Professor Mayer's Disparate Impact Analysis

21.     The doctrine known as "disparate impact" pertains to insufficiently justified practices that, while facially neutral with respect to factors such as race or ethnicity, have the impact of harming some protected groups more than others.  In his report, Professor Mayer asserts that SB 1's safeguards on absentee voting "disproportionately burden non-White voters".  If true – and if one were to believe Professor Mayer's unfounded declarations that SB 1's safeguards provide zero benefit and are thus insufficiently justified – this would indeed be troubling.

22.     The problem with Professor Mayer's analysis is threefold.  First, Professor Mayer computed disparate impact incorrectly.  Fixing this mistake in Harris County reveals that SB 1 had a disparate impact *against Whites,* relative to Hispanics, and had no disparate impact against Asians.  Second, Professor Mayer fails to account for the fact that he does not observe actual race or ethnicity, for any Texan voters.  Rather, he uses measures that represent educated guesses based on surname and residential neighborhood.  The resulting classification error is significant.  Thus, while Professor Mayer (and I) can estimate differences by predicted race, I demonstrate that this tells us little with certainty about differences by actual race.  Third, Professor Mayer seems to ignore the issue of whether Texas voters consider alternative forms of voting as good substitutes for mail-in voting.  This is important, since that issue is essential to assessing burden.  I describe each of these three problems in turn.

### A.   Professor Mayer's incorrect method of computing disparate impact in Harris County and Dallas County

23.     In assessing whether SB 1's safeguards on mail-in voting had a disparate impact on minority voters in Harris County, Professor Mayer examines only the voters in 2020 who chose to

vote via mail-in ballot.  He then asserts that the results in Table 3 of his report, which show higher

mail ballot rejection rates for voters predicted to be minorities, are evidence of disparate impact.

24.    Professor Mayer's focus only on those voters who chose to vote absentee is incorrect.

Table 3 provides an example that illustrates the problem.  It shows voting behavior for two equal-

sized groups: Group A, and Group B, after a hypothetical mail-in voting rule is adopted.[7]  All 1,000

members of Group A chose to vote by mail.  Ten percent, or 100, of those votes were subsequently

rejected.  By comparison, of the 1,000 members of Group B, only 2 voted by mail, 1 of whom was

rejected.

Table 3: Illustration of How Computing Disparate Impact Incorrectly, as Professor Mayer Did, Can Lead to Incorrect Conclusions

| Race | Total Votes Cast | Total Mail Ballots Cast | Mail Ballots Accepted | Mail Ballots Rejected Due to ID Rules | % Mail Ballots Rejected (Incorrect Method Used by Mayer) | Incorrect Odds Ratio for Computing Disparate Impact Used by Mayer | % Ballots Rejected (Correct Method of Measuring Disparate Impact) | Correct Odds Ratio for Computing Disparate Impact |
|---|---|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| Group A | 1,000 | 1000 | 900 | 100 | 10.0% | - | 10.0% | - |
| Group B | 1,000 | 2 | 1 | 1 | 50.0% | 5.0 | 0.1% | 0.010 |

25.    It is clear from this example that the hypothetical mail ballot identification rule had a

disparate impact on Group A, relative to Group B.  That is because while the rejection rate among

absentee voters was higher in Group B than Group A (50 percent versus 10 percent), members of

Group A voted absentee at much higher rates.  The importance of considering the latter is obvious:

while only 1 out of 1,000 members of Group B was unable to vote due to the hypothetical

identification rules, 100 out of 1,000 members of Group A were unable to do so.  Thus, the correct

odds ratio of 0.01 is shown in Column (8), which is the proportion of all ballots rejected for Group

---

[7] Assume, for the sake of simplicity, that no mail-in ballots were rejected prior to the adoption of the hypothetical rule, and that all of the votes cast were legitimate.

B, divided by the same rate for Group A (both shown in Column (7)).  This indicates that Group B's

rejection rate is only one percent as large, or 99 percent lower, than Group A's rejection rate.

26.     Yet under Professor Mayer's flawed approach used in Tables 3 through 6 of his report,

he would mistakenly conclude that there was disparate impact against Group B (only one member of

which was prevented from voting), relative to Group A (which had 100 members prevented from

voting).  This is because he considers only the members of Groups A and B who voted absentee, and

ignored the prevalence of voting method across groups.

27.     Notably, the importance of considering the prevalence of voting method by group in

assessing disparate impact has been acknowledged by at least two of the plaintiff's experts, including

Professor Mayer himself.  For example, on page 11 of Professor Mayer's March 6 report, he states,

with respect to drive-thru voting, that "voters of color in Harris County disproportionately relied on

drive-thru voting during the 2020 general election, and that eliminating the method of voting imposes

a disproportionate burden on such voters."  Similarly, another expert for the plaintiff, Professor Eric

McDaniel, stated in line 266 of his February 28, 2022 report that "Blacks are more likely to vote

absentee than their White or Hispanic counterparts, meaning that the new regulations will increase

the difficulty of them doing so in the future." While both of these statements are likely problematic

for other reasons—for example, I demonstrated in my response that Professor McDaniel ignored data

for years that showed the opposite pattern—both were correct in asserting the importance of the

prevalence of voting method across groups in assessing disparate impact.

28.     Table 4 shows that correcting this error implies that there is no longer any evidence of

disparate impact against voters predicted to be Hispanic, or predicted to be Asian, in Harris County.

Column (1) shows the total number of votes cast, per the data provided to me by Professor Mayer.[8]

---

[8] I was not able to determine whether these included the mail-in ballots or not, since Professor Mayer did not provide me with those data.  However, in practice it matters little either way for the purpose of this table, since the number of mail-in ballots is small relative to total votes cast.

Column (2) shows the number of mail-in votes rejected, as reported by Professor Mayer, and Column (3) reports the fraction of total votes rejected for reasons associated with SB 1. As shown there, only 0.2 percent of ballots cast by predicted-White voters were rejected, compared to 0.4, 0.16, and 0.2 percent of ballots cast by predicted-Black, predicted-Hispanic, and predicted-Asian voters in Harris County.

29.     The correct odds ratios, or the rejection rate for predicted-minority groups divided by that for predicted-Whites, are shown in Column (4). The incorrect odds ratios reported by Professor Mayer are reported in Column (5). It shows that when computed properly, there is evidence of disparate impact *against predicted-Whites* relative to predicted-Hispanics, and no evidence at all of disparate impact against predicted-Asians. In contrast, the evidence of disparate impact against predicted Blacks is somewhat larger than Professor Mayer reported (2.09 versus 1.82), though in the next section I discuss the significant problems associated with predicting race in general, and in particular for Black Americans.

Table 4: Computing Correct Odds Ratios for Computing Disparate Impact (Harris County 2022 General)

| | Total Votes Cast | Mail-In Ballots Rejected due to SB 1, per Mayer | Proportion Total Votes Rejected for SB 1 Reasons | Correct Odds Ratios (Relative to White) for Computing Disparate Impact | Incorrect Odds Ratios (Relative to White) for Computing Disparate Impact, Reported by Mayer |
|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) |
| Predicted White | 626,680 | 1,251 | 0.00200 | - | - |
| Predicted Black | 187,416 | 782 | 0.00417 | 2.09 | 1.82 |
| Predicted Hispanic | 222,556 | 357 | 0.00160 | 0.80 | 1.86 |
| Predicted Asian | 61,989 | 127 | 0.00205 | 1.03 | 1.71 |
| Predicted Other | 4,256 | 18 | 0.00423 | 2.12 | 2.13 |
| Total | 1,102,897 | 2,535 | 0.00230 | - | - |

Notes: Column (1) counts all individuals indicated to have voted per the data Professor Mayer provided to me   Column (2) is taken directly from Table 3 of Mayer, while Column (5) is taken from Table 4 of Mayer   The difference in rejection likelihood is not different for Predicted-Asian versus Predicted-White; in all other cases the differences are statistically significant

30.     Unfortunately, I am unable to report corrected disparate impact estimates for Dallas County.  This is because doing so requires individual-level data, with predicted race or ethnicity, for all voters in Dallas County.  In contrast, the data Professor Mayer shared with me include only the names of absentee voters in Dallas County.

31.     However, the results of the illustration shown in Table 3 above, and the results of the correct analysis for Harris County shown in Table 4 above, make it clear that we learn little about likely disparate impact from the incorrect analyses shown in Professor Mayer's report.  In particular, without knowing the rate at which predicted-Black and predicted-Hispanic voters in Dallas County voted absentee, one is unable to assess whether SB 1's rules regarding identification may have had a disparate impact on either group, relative to predicted-Whites.

## B. The Impact of the Large Classification Error When Using Predicted Race or Ethnicity, Rather than Actual Race or Ethnicity

32.     It is easy to get the mistaken impression from Professor Mayer's report that he observes voting outcomes by race and ethnicity.  He does not.  Rather, he is relying on a measure of race or ethnicity that comes solely from a voter's surname, combined with the Census characteristics of the Census Block Group (i.e., neighborhood) of the voter's residence.

33.     The problem, of course, is that this method of inferring race or ethnicity is far from perfect.  There are two types of classification errors.  The first, called Type I error, or "false positive rate", is when the algorithm predicts that an individual belongs to an ethnic group when that is not true in reality.  For example, the published paper by the researchers who developed this algorithm note that 4.28 percent of individuals predicted to be Black, are not actually Black.[9]  An even bigger

---

[9] *See* Table 5 in "Addressing Census Data Problems in Race Imputation via Fully Bayesian Improved Surname Geocoding and Name Supplements" by Kosuke Imai, Santiago Olivella, and Evan T. R. Rosenman, which was published in Science Advances on December 9 of 2022.  The paper is accessible at https://www.science.org/doi/10.1126/sciadv.ade9824.

Hoekstra                                                                                                16

problem is Type II error, or "false negatives". The published estimate implies that of those individuals predicted to *not* be Black, 17.77 percent are actually Black.

34.     How do classification errors of this magnitude impact our ability to estimate disparities across actual race? The typical way of addressing this type of issue is to perform what social scientists refer to as a bounding exercise, where we compute the range of possibilities that could arise under different assumptions about the classification error. If classification errors are small and matter little, then both bounds are similar, which gives us confidence that the answer is unaffected by the assumptions one makes about that error. On the other hand, if the range between the bounds is wide—as turns out to be the case for this setting—it implies we know little about the correct answer to the question.

### B.1 Harris County

35.     Table 5 shows the results from a bounding analysis for Harris County. I focus only on the rejection rate for predicted-Black voters in Harris County, since that was the one group for which the correct analysis in Table 4 suggested there may be evidence of disparate impact. Panel A indicates that there were 187,416 voters in Harris County in 2022 who were predicted to be Black. Of those, 782 had mail-in ballots rejected as a result of the identification safeguards associated with SB 1. As noted above, however, our best estimate is that 4.28 percent of those voters were not actually Black. This suggests that of the 187,416 predicted-Black voters, only 179,395 were actually Black.

36.     Of those, how many had their absentee ballots rejected due to SB 1? The answer is that there is no way for me, or Professor Mayer, to know. The true answer is that perhaps all 782 rejections, and perhaps none. Columns (4) and (5) show the lower and upper bound for rejection rates, which are 0.0000 and 0.0044. Put differently, while Professor Mayer knows the ballot rejection rate for voters predicted to be Black, he does not know the ballot rejection rate for the subset of those voters who are actually Black. Rather, the only thing we know for sure is that the rate is between 0

Hoekstra                                                                                                17

and 0.0044, and the odds ratio relative to predicted-White voters is between 0 (Column (6)) and 2.18 (Column (7)).

37.     Panel (B) of Table 5 shows that the problem is even worse with respect to the other type of classification error.  In particular, of those voters predicted to NOT be Black—which in the case of Harris County is 915,481 voters—the researchers who constructed the algorithm believe 17.77 percent are actually Black.  Given 915,481 voters in Harris County were predicted to not be Black, this means that the algorithm misclassifies 162,681 Black voters in Harris County as some race or ethnicity other than Black.

38.     Put differently, the authors of the algorithm expect that there are 342,076 Black voters in Harris County.  Yet the algorithm only classifies 187,416 as Black, and several thousand of those aren't actually Black.

Table 5: Impact of Errors in Predicting Race on the Range of Possible Rejection Rates of Black Voters in Harris County

| | Total Votes | # Rejected Mail-In Ballots per SB 1 | Rejection Rate | | | Odds Ratio: Actual Black/ Predicted White | |
|---|---|---|---|---|---|---|---|
| | | | Actual | Lower Bound | Upper Bound | Lower Bound | Upper Bound |
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Panel A: Voters Predicted to be Black | | | | | | | |
| Predicted Black, 4.28 percent of whom are not actually Black | 187,416 | 782 | 0.0042 | - | - | - | - |
| Actual Black voters who were predicted to be Black | 179,395 | Unknown; between 0 and 782 | Unknown | 0.0000 | 0.0044 | 0.00 | 2.18 |
| Panel B: Voters Predicted Not Black | | | | | | | |
| Predicted Not Black, 17.77 percent of whom are actually Black | 915,481 | 1,753 | 0.0019 | - | - | - | - |
| Voters predicted as not Black, but who are actually Black | 162,681 | Unknown; between 0 and 1,753 | Unknown | 0.0000 | 0.0108 | 0.00 | 5.39 |
| Panel C: Actual Black Voters | | | | | | | |
| Actual Black Voters | 342,076 | Unknown; between 0 and 2,535 | Unknown | 0.0000 | 0.0074 | 0.00 | 3.71 |

Notes: Per the study by Imai, Olivella, and Rosenman (2022) published in *Science Advances*, 4.28 percent of voters predicted to be Black are actually Black, while 17.8 percent of voters predicted not to be Black are actually Black.  These error rates are used in Column (1) to estimate the number of actual Black voters.  Odds ratios in Columns (6) and (7) are computed by dividing the rejection rate in Columns (4) and (5) by the rejection rates for voters predicted to be White, which was 0.002.

Hoekstra                                                                                                                         18

39.     It should be obvious that the voting behavior of the 162,681 expected-Black voters who are misclassified as non-Black will have a major impact on the actual ballot rejection rate of Black voters.  How wrong can the estimates for predicted-Black voters be?  It depends entirely on how many of those misclassified Black voters had their ballots rejected.  The only thing anyone can know for sure is that the true number is somewhere between 0 (if all of the 1,753 rejections were for non-Black voters) and all of them (i.e., 1,753).

40.     Panel C sums up the net impact of both of these types of errors.  Even though the algorithm predicted that only 187,416 voters were Black, based on the published error rates there were actually an estimated 342,076 actual Black voters.  Those Black voters were associated with somewhere between 0 and 2,535 rejected mail-in ballots.  That means that rejection rate could be zero, which is obviously less than that of predicted-Whites, or 0.0074, which is 3.71 times the rate for predicted-Whites.  There is no way to know, without imposing impossible-to-justify assumptions, where in that range the true disparity lies.

### B.2  Dallas County

41.     Professor Mayer also concludes that SB 1 generated a disparate impact against predicted-Black and predicted-Hispanic voters in Dallas County.  As noted above, and as with Harris County, he computed disparate impact incorrectly.  In particular, he ignored the possibility that different groups can vote absentee at different rates, even though that is a major factor in assessing whether a group is disproportionately impacted by additional voting rules.

42.     In addition, as in his analysis of Harris County, Professor Mayer only provides evidence regarding racial disparities between predicted-Black or predicted-Hispanic voters, compared to predicted-White voters.  Again, this begs the question: what do these estimates tell us about the differences between voters whose actual race or ethnicity is different?

43.     As in Harris County, the answer is "very little".  Tables 6 and 7 show the same type of

Hoekstra                                                                                                    19

bounding analysis for Dallas County.  The difference between these tables, and Table 5 for Harris County, is that in Dallas County I am unable to compute disparate impact correctly.  This is because I do not have voter-level data, including residential address, on every voter who cast a ballot in the 2022 election in Dallas County.  As a result, I instead perform a bounding exercise for disparate impact estimates computed in the same (incorrect) way as Professor Mayer.

44.     Results in Tables 6 and 7 show that as in Harris County, once we take into account the known error rates in classifying race and ethnicity, we know little about the relative rejection rates of actual White mail-in voters compared to those who are actually Black, or Hispanic.  Again, the intuition is straightforward.  Column (2) of Panel A of Table 6 shows that Professor Mayer predicts that 4,230 mail-in voters in Dallas County were Black.  The biggest problem is that there were actually an estimated 7,014 actual Black voters who cast mail-in ballots.  Nearly 3,000 Black voters were improperly predicted to be White.  What hope do we have of computing the correct ballot rejection rate for Black mail-in voters when we are misclassifying nearly half of them?

45.     Similarly, for Hispanics, Column (2) of Panel A of Table 7 shows that Professor Mayer predicts there were 1,550 ballots cast by Hispanic voters.  Again, the biggest problem is that there were another 2,277 actual Hispanic voters who were misclassified as being non-Hispanic.  Put differently, in computing the ballot rejection rate of predicted-Hispanics, Professor Mayer is ignoring the rejection rate of more than half of Hispanics who cast mail-in ballots.  Any reasonable observer ought to question the reliability of this method as a way of computing disparate impact across racial or ethnic groups.

46.     Column (7) of Tables 6 and 7 show that once we take into account the significant classification error, it is possible that the ballot rejection rates of actual Black and Hispanic voters are much lower—even zero—compared to the ballot rejection rate of actual White voters.  Put differently,

Hoekstra                                                                                                    20

we learn very little about racial disparities across actual race or ethnicity by comparing across individuals who are predicted to be of different race or ethnicity.

Table 6: Impact of Errors in Predicting Race on the Range of Possible Rejection Rates of Black Voters in Dallas County

| | Total Votes | # Mail-In Ballots | # Rejected Mail-In Ballots per SB 1 | Rejection Rate among Mail-in Ballots | | | Odds Ratio: Actual Black/ Predicted White | |
|---|---|---|---|---|---|---|---|---|
| | | | | Actual | Lower Bound | Upper Bound | Lower Bound | Upper Bound |
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| Panel A: Voters Predicted to be Black | | | | | | | | |
| Predicted Black, 4 28 percent of whom are not actually Black | Unavailable | 4,230 | 101 | 0 0239 | - | - | - | - |
| Actual Black voters who were predicted to be Black | Unavailable | 4,049 | Unknown; between 0 and 101 | Unknown | 0 0000 | 0 0249 | 0 00 | 1 95 |
| Panel B: Voters Predicted Not Black | | | | | | | | |
| Predicted Not Black, 17 77 percent of whom are actually Black | Unavailable | 16,684 | 219 | 0 0131 | - | - | - | - |
| Voters predicted as not Black, but who are actually Black | Unavailable | 2,965 | Unknown; between 0 and 219 | Unknown | 0 0000 | 0 0739 | 0 00 | 5 78 |
| Panel C: Actual Black Voters | | | | | | | | |
| Actual Black Voters | Unavailable | 7,014 | Unknown; between 0 and 320 | Unknown | 0 0000 | 0 0456 | 0 00 | 3 57 |

Notes: Per the study by Imai, Olivella, and Rosenman (2022) published in *Science Advances*, 4 28 percent of voters predicted to be Black are actually Black, while 17 8 percent of voters predicted not to be Black are actually Black These error rates are used in Column (2) to estimate the number of actual Black voters Odds ratios in Columns (7) and 8) are computed by dividing the rejection rate in Columns (5) and (6) by the rejection rates for voters predicted to be White, which was 0 01278

Table 7: Impact of Errors in Predicting Race on the Range of Possible Rejection Rates of Hispanic Voters in Dallas County

| | Total Votes | # Mail-In Ballots | # Rejected Mail-In Ballots per SB 1 | Rejection Rate among Mail-in Ballots | | | Odds Ratio: Actual Hispanic/ Predicted White | |
|---|---|---|---|---|---|---|---|---|
| | | | | Actual | Lower Bound | Upper Bound | Lower Bound | Upper Bound |
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| Panel A: Voters Predicted to be Hispanic | | | | | | | | |
| Predicted Hispanic, 2 11 percent of whom are not actually Hispanic | Unavailable | 1,550 | 27 | 0 0174 | - | - | - | - |
| Actual Hispanic voters who were predicted to be Hispanic | Unavailable | 1,517 | Unknown; between 0 and 27 | Unknown | 0 0000 | 0 0178 | 0 00 | 1 39 |
| Panel B: Voters Predicted Not Hispanic | | | | | | | | |
| Predicted Not Hispanic, 11 76 percent of whom are actually Hispanic | Unavailable | 19,364 | 293 | 0 0151 | - | - | - | - |
| Voters predicted as not Hispanic, but who are actually Hispanic | Unavailable | 2,277 | Unknown; between 0 and 293 | Unknown | 0 0000 | 0 1287 | 0 00 | 10 07 |
| Panel C: Actual Hispanic Voters | | | | | | | | |
| Actual Hispanic Voters | Unavailable | 3,795 | Unknown; between 0 and 320 | Unknown | 0 0000 | 0 0843 | 0 00 | 6 60 |

Notes: Per the study by Imai, Olivella, and Rosenman (2022) published in *Science Advances*, 2 11 percent of voters predicted to be Hispanic are actually not Hispanic, while 11 76 percent of voters predicted not to be Hispanic are actually Hispanic These error rates are used in Column (1) to estimate the number of actual Hispanic voters Odds ratios in Columns (7) and (8) are computed by dividing the rejection rate in Columns (5) and (6) by the rejection rates for voters predicted to be White, which was 0 01278

### B.3   Additional considerations casting doubt on the reliability of using educated guesses about race and ethnicity to assess disparate impact

47.     As though the results in Tables 5 – 7 are not bad enough news for the reliability of this type of analysis, the reality is even worse.  Tables 5 – 7 only consider the error in computing the ballot rejection rate of Black or Hispanic voters.  Yet disparities are constructed by comparing that rate for (actual) Blacks to the rate for (actual) Whites.  Unsurprisingly, there is also considerable error in predicting whether a voter is White.  Additionally adjusting for this would further increase the likelihood that comparisons across predicted-race are uninformative of reality.

48.     In addition, the algorithm was constructed using data from other states, and did not include Texas.  To the extent that Texas is different from those states, we would expect the classification error rates to be even higher than what was documented by Imai, Olivella, and Rosenman (2022).[10]

49.     In fact, there is evidence that out-of-sample error rates are much higher than those reported by Imai, Olivella, and Rosenman (2022), which I used in Tables 5 - 7.  For example, the American Financial Services Association commissioned a report by Charles River Associates in November of 2014.[11]  As part of that report, the authors assessed the classification error rate using the BISG method also used by Professor Mayer.  They did this by comparing predicted race to actual self-reported race, and therefore test the reliability of the BISG method used by Dr. Loren Collingwood, and provided to Professor Mayer.

50.     The results are alarming.  Table 8 of that Charles River Associates report shows that when using a threshold of 50 percent (e.g., an individual is classified as Black if the probability of Black

---

[10] It is also unclear to me whether Professor Mayer uses predictions based on the rBISG method described in the Imai, Olivella, and Rosenman (2022) study, or the less accurate BISG method.  I assume they are using the former, but if they are using the latter, my analysis understates the impact of classification error.

[11] The report is entitled "Fair Lending: Implications for the Indirect Auto Finance Market".  It can be accessed at https://www.crai.com/insights-events/publications/fair-lending-implications-indirect-auto-finance-market/.

Hoekstra                                                                                                            22

is greater than 50 percent), 43.6 percent of those classified as Black are not actually Black.  They also show that 51.8 percent of actual Black individuals are incorrectly classified as being not Black.

51.    The results of that study also demonstrate that while it is possible to use alternative rules to reduce one type of classification error, it comes at the cost of increasing another.[12]  For example, Table 8 of the same report shows that if one instead uses a threshold of 80 percent, it reduces the number of non-Black individuals mistakenly predicted to be Black from 43.6 percent to 22.4 percent.  However, the same change increases the fraction of Black individuals who are mistakenly classified as non-Black from 51.8 percent to 75.8 percent.

52.    In short, the problem is that surname and residential neighborhood simply aren't very good at predicting actual self-reported race or ethnicity.  As a result, it is hard to infer anything about disparities across actual race or ethnicity using that approach.

### C.  Professor Mayer's analyses of disparate impact ignore the fact that Texan voters are willing and able to substitute from mail-in voting to in-person voting

53.    Leaving aside the issue of whether the identification safeguards imposed by SB 1 are justified, an important factor in assessing whether voters are burdened by SB 1 depends on the extent to which they are willing and able to vote using another method.  For example, if voters viewed in-person voting as a perfect substitute for mail-in voting, then even the strictest regulation—such as the elimination of all mail-in voting—would not have adverse effects on voters.  On the other hand, if voters in Texas view voting in person as a poor substitute for voting absentee, some may decide not to vote at all in response to the mail-in ballot requirements of SB1.[13]

---

[12] The other alternative is to exclude individuals for whom there is an especially low degree of certainty about their actual race, though this is also problematic for obvious reasons.

[13] This is the same issue that economists face in assessing tax incidence, which involves identifying which party in the market bears the burden of a tax. While one might be inclined to believe that individuals who consume the good being taxed will bear the burden, this need not be the case. In particular, if those consumers have a perfect substitute available to them, they will simply shift consumption and bear none of the tax burden.

Hoekstra                                                                                                          23

54.     Despite the fact that substitutability is central to establishing burden, Professor Mayer never discusses the issue in his report.  The only reference to voters substituting or not substituting across methods is in a single footnote, which mentions less than 500 voters.  Yet this is a critical issue for assessing whether SB 1 generated a burden on voters, or a disparate burden on minority voters.

55.     The best way to assess substitutability is to use an approach that mirrors the following thought experiment: If we were to make absentee voting easy for a random set of voters, but more difficult for otherwise similar voters, would they vote at similar rates?  Put differently, would voters substitute toward voting in person on a one-to-one basis, or would some voters be so burdened that they no longer participate?

56.     Coincidentally, the best study on this topic, which was published in *Science Advances* in 2021, mirrors this thought experiment using data from Texas (and Indiana).  Intuitively, the authors compare those who just turned 65 prior to the election and could easily vote absentee to those who turned 65 just after the election, and could not.  Notably, this is a much more extreme hurdle to mail-in voting than any caused by SB 1.  Yet while eligible voters did shift toward absentee voting, this increased turnout was offset in a one-to-one fashion by a shift away from in-person voting.  In short, the ability to vote absentee only impacts *how* Texans (and Hoosiers) vote, not *whether* they vote.  Put differently, the results indicate even a version of SB1 that made absentee voting nearly impossible for everyone would not impose a sufficiently large burden as to prevent Texans from voting.

57.     The basic result of the study is shown in Figure 1 which replicates Figure 2 from the original paper.  It shows that while there were clear jumps in the likelihood of voting by mail at age 65 in the 2012, 2016, and 2020 elections, there was no such jump in overall voter turnout.  In other words, voters seemed to substitute from mail-in voting to in-person voting, on a one-to-one basis, when they were not allowed to vote by mail (i.e., when they were not yet 65 years old).

Hoekstra                                                                                              24

58.     Notably, the change in the ability to vote absentee studied in that paper—where very few 64 year-olds are eligible to vote by mail—is much more extreme than the changes imposed by SB1.  As a result, one must ask: If even an extreme change in the ability to vote by mail does not burden Texas voters so much that they do not vote, then why would we expect the much smaller changes imposed by SB1 to impose a burden?

59.     It is not clear from Professor Mayer's report whether or not the mail-in ballot rejections he considers are final rejections in which the individual did not subsequently vote using any method.  In particular, it is unclear whether the 2,949 voters Professor Mayer identifies as having had their ballot rejected were able to vote successfully by either curing their ballot, or voting using another method.

60.     However, what is clear is that across all of Texas in the 2022 election, there were only 6,355 mail-in ballots, out of 8.1 million votes cast, that were rejected, and where the voter did not subsequently vote successfully by mail or another method.  This evidence comes from the February 3, 2023 report of another expert for the plaintiff, Professor Eitan Hersh, and is documented in my response to that report. Importantly, there is no evidence in Professor Hersh's report or in the underlying data to suggest that these votes were legitimate rather than illegitimate votes.  Similarly, there is no evidence to suggest voter errors were not responsible for some or all of the rejections, which may well become less common as voters become more familiar with the new rules.  Professor Hersh's finding is consistent with the evidence shown in Figure 1 from the *Science Advances* study, which shows that even severely restricting mail-in voting only changes *how* Texans vote, not *whether* they vote.

Hoekstra                                                                                                  25

**Figure 1: A replication of Figure 2 from Yoder et al. (2021)**



Fig. 2. Absentee voting and turnout across age and elections in Texas and Indiana. In Texas and Indiana, only voters aged 65 or older can vote absentee without providing an excuse. This creates a large and discontinuous increase in voting absentee for 65-year-olds, which grew markedly in 2020 during the pandemic. Yet, turnout does not increase discontinuously between age 64 and 65, implying that the discontinuous increase in absentee voting is offset by a reduction in other modes.

## VI. Professor Mayer's incorrect assertion that the elimination of drive-thru voting had a disproportionate effect on non-White voters

61.     Professor Mayer asserts that "the elimination of drive-thru voting had a disproportionate effect on non-White voters who cast early drive-thru votes in the 2020 general election." In this section, I demonstrate that Professor Mayer's assertion is incorrect.

62.     I do so in three ways. First, I show that there is no evidence of an adverse effect of SB 1 on the subsequent voting of drive-thru voters, either in the aggregate or for any predicted-race or ethnic group. Second, I show that implementing the same statistical test of "disparate impact" that Professor Mayer used yields nonsensical results. In particular, I show that if one uses that test on non-drive-thru early voters from Calhoun County in 2020, one would conclude that SB 1 had a disparate impact on them as well. Yet those voters' voting methods were clearly unaffected by SB 1. Finally, Professor Mayer's use of predicted measures of race and ethnicity, as in his analysis of Harris County

Hoekstra                                                                                                                            26

and Dallas County, makes it difficult to infer much of anything regarding differences across actual race or ethnicity.

**A.  Disparate impact implies there is an adverse effect on voters, and there is no evidence that drive-thru voters were adversely impacted either in the aggregate, or for any predicted-race or ethnic group**

63.     As background, it is helpful to remember the meaning of "disparate" or "disproportionate" impact, as it applies to the setting of drive-thru voting.  In particular, the concern is that a facially neutral policy has a larger adverse impact on some protected groups than others.

64.     What would it mean for the elimination of drive-thru voting to have an adverse effect on voters?  If, for example, drive-thru voters were unable to vote using an alternative method, we would expect to see these voters vote at much lower rates than their counterparts who also voted early during the 2020 general election.

65.     The problem is that there is zero evidence that the drive-thru voters in Calhoun County voted at lower rates than their non-drive-thru voting counterparts.  Results are shown in Figure 2.  It shows that in the 2022 primary election and the 2022 general election, drive-thru voters from 2020 voted at *higher* rates than their counterparts who voted early and in-person during the 2020 election.  Put differently, there is no evidence that the elimination of drive-thru voting had any adverse effect at all on those who used drive-thru voting in 2020.

66.     Table 8 shows the full set of results.  Column (1) shows results from data provided by Professor Mayer for the voting rates of individuals from Calhoun County who voted in 2020 using the drive-thru option.[14]  In Column (2), I replicate these findings using data I downloaded from the Texas Secretary of State website.  Results are not identical, but are very similar.  For example, Professor Mayer has a sample of 2,110 voters, 42.4 percent of whom voted in the 2022 primary election, and

---

[14] The voting rate in the 2022 election, as recorded in the data provided to me by Professor Mayer, does not match the voting numbers reported in Table 8 of Professor Mayer's report.  I believe that the latter are incorrect, and therefore in Column (1) of Tables 8 and 9 I use the numbers from the data provided to me by Professor Mayer.

Hoekstra                                                                                                          27

72.6 percent of whom voted in the 2022 general election.  By comparison, I have a sample of 2,173 drive-thru voters from 2020, 42.0 percent of whom voted in the 2022 primary, and 72.2 percent of whom voted in the 2022 general election.[15]

Table 8: Fraction of 2020 General Election Drive-Thru and Other Early Voters in Calhoun County who Voted in 2022 Elections

|  | 2020 Drive-Thru Voters (Mayer's data) | 2020 Drive-Thru Voters | 2020 Early In-Person Voters, excluding drive-thru | 2020 Early In-Person + Mail-In Voters, excluding drive-thru | Difference between Drive-Thru and Other Early In-Person Voters | Difference between Drive-Thru and Early In-Person + Mail-In Voters |
|---|---|---|---|---|---|---|
|  | (1) | (2) | (3) | (4) | (5) = (2) - (3) | (6) = (2) - (4) |
| 2020 General Election | 1 | 1 | 1 | 1 | 0 | 0 |
| 2022 Primary Election | 0.424 | 0.420 | 0.338 | 0.325 | 0.082*** | 0.095*** |
| 2022 General Election | 0.726 | 0.722 | 0.648 | 0.629 | 0.073*** | 0.093*** |
| # 2020 Voters | 2,110 | 2,173 | 2,702 | 3,414 | 4,875 | 5,587 |
| Sample | Prof. Mayer | TX SoS | TX SoS | TX SoS | TX SoS | TX SoS |

Notes: Column (1) reports figures based on the data provided by Professor Mayer.  The remaining columns report results based on data downloaded from the Texas Secretary of State website.  *** denotes that the difference is statistically significant at the one percent level.

67.    Columns (1) and (2) make clear that not all of those individuals who voted early, via drive-thru, in 2020 subsequently voted in the 2022 elections.  This is likely in part because 2020 was a presidential election year, while 2022 was a midterm.  In addition, turnout in 2020 was idiosyncratically high even by the standards of presidential election years.

---

[15] I was not able to assess the reasons for the differences.  One potential explanation is that I believe that Professor Mayer obtained data directly from Calhoun County, whereas I used data from the Secretary of State website.  Another difference is that because the Secretary of State records available online do not have residential address, I predicted race using only surname, along with the 2020 Census.  Regardless, as can be seen in the first two columns of Table 8 and Table 9, results are similar across both data sets.  The only difference is in Table 9 for predicted-Black voters, of whom there are less than 30, which means results are sensitive to the inclusion or exclusion of a handful of voters.  Finally, if I were provided the full data directly from Calhoun County, as Professor Mayer was provided, I would be happy to replicate this analysis using those data.

68.     The important question is whether fewer of these drive-thru voters turned out to vote in 2022 compared to others in Calhoun County who also voted early in the 2020 election.  Column (3) shows results for those who voted early, in-person (excluding drive-thru voting), and column (4) shows results for those early voters plus those who voted by mail.  In both cases, drive-thru voters from 2020 turned out at *higher* rates in 2022 than other early voters from Calhoun County.  In short, it turns out that drive-thru voters demonstrated that they are more willing and able than other early voters from 2020 to vote in subsequent elections, even given the removal of the drive-thru voting option.  This implies there is no evidence that the elimination had an adverse effect on voting.



69.     Table 9 shows that the same is true for voters predicted to be in the various racial and ethnic groups.[16]  In particular, Columns (5) and (6) indicate that predicted-White, predicted non-White, and predicted-Hispanic drive-thru voters were each more likely than their non-drive-thru early-voting

---

[16] The wru package in the statistical software R was used to predict probabilities of each racial or ethnic group using (only) surname, based on the 2020 Census.  Using the code provided by Professor Mayer, I defined a voter as a certain predicted-race or ethnicity if the probability of being in that category was greater than 50 percent.

Hoekstra                                                                                                      29

counterparts to vote in the 2022 primary and general elections.  Again, this suggests that there is no evidence of adverse impact on any predicted-race or predicted-ethnic category.

Table 9: Fraction of 2020 General Election Drive-Thru and Other Early Voters in Calhoun County who Voted in 2022 Primary and General Elections

| Race | 2020 Drive-Thru Voters (Mayer's data) | 2020 Drive-Thru Voters | 2020 Early In-Person Voters, excluding drive-thru | 2020 Early In-Person + Mail-In Voters, excluding drive-thru | Difference between Drive-Thru and Other Early In-Person Voters | Difference between Drive-Thru and Early In-Person + Mail-In Voters |
|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) = (2) - (3) | (6) = (2) - (4) |
| 2020 General Election | 1 | 1 | 1 | 1 | 0 | 0 |
| 2022 Primary Election - All Voters | 0.424 | 0.420 | 0.338 | 0.325 | 0.082*** | 0.095*** |
| Predicted White | 0.493 | 0.482 | 0.398 | 0.375 | 0.084*** | 0.107*** |
| Predicted Non-White | 0.286 | 0.282 | 0.193 | 0.209 | 0.089*** | 0.073*** |
| Predicted Black | 0.273 | 0.407 | 0.385 | 0.371 | 0.023 | 0.036 |
| Predicted Hispanic | 0.310 | 0.298 | 0.188 | 0.211 | 0.110*** | 0.086*** |
| Predicted Asian | 0.129 | 0.134 | 0.174 | 0.144 | -0.040 | -0.010 |
| 2022 General Election - All | 0.726 | 0.722 | 0.648 | 0.629 | 0.073*** | 0.093*** |
| Predicted White | 0.777 | 0.777 | 0.725 | 0.689 | 0.052*** | 0.088*** |
| Predicted Non-White | 0.625 | 0.597 | 0.471 | 0.490 | 0.126*** | 0.106*** |
| Predicted Black | 0.593 | 0.778 | 0.731 | 0.714 | 0.047 | 0.063 |
| Predicted Hispanic | 0.659 | 0.623 | 0.479 | 0.501 | 0.144*** | 0.123*** |
| Predicted Asian | 0.385 | 0.354 | 0.337 | 0.342 | 0.017 | 0.011 |
| # 2020 Voters w/ predicted race | 2,110 | 1,981 | 2,466 | 3,120 | - | - |
| Sample | Prof. Mayer | TX SoS | TX SoS | TX SoS | TX SoS | TX SoS |

Notes:  Column (1) reports figures based on the data provided by Professor Mayer   The remaining columns report results based on data downloaded from the Texas Secretary of State website   *** denotes that the difference is statistically significant at the one percent level   The analysis excludes individuals predicted to be of "other" race or ethnicity, since only such drive-thru voter in my data

**B. Professor Mayer's flawed statistical test of disparate impact also mistakenly concludes there was disparate impact on Calhoun County 2020 early non-drive-thru voting minorities, whose method of voting was unaffected by SB 1**

70.    In addition, the problem with Professor Mayer's analysis can be demonstrated in another way.  Professor Mayer relies on what is called a Chi-Square statistical test of whether the participation of minority drive-thru voters in the 2022 elections falls by more than for predicted-White

Hoekstra                                                                                                                    30

drive-thru voters.  He concludes, on the basis of this test, that the elimination of drive-thru voting caused a disproportionate decline in the voter participation of predicted-minority voters.

71.    Let's assume, for a moment, that this test is in fact a scientifically valid test of whether SB 1's elimination of drive-thru voting caused the larger decline in participation among predicted-minorities.  If that were true, then if we apply the same test to a sample of 2020 Calhoun County voters who did not even participate in drive-thru voting, the test should give us a different answer.  Formally speaking, we should not be able to reject the null hypothesis.

72.    The problem is that when I perform the exact same statistical test as Professor Mayer, except on a sample of voters whose 2020 method of voting was completely unaffected by SB 1, I get the same result as Professor Mayer reported.  In both cases, the test rejects the null hypothesis.[17]  Yet it would be wrong to conclude that the elimination of drive-thru voting had a disparate impact, or even any impact at all, on 2020 voters who did not even use drive-thru voting.  As a result, it is clear that the test Professor Mayer employed is an unreliable test.  It is clearly poorly suited for assessing whether SB 1 caused a disparate impact on minorities.

## C.  Classification error rates in predicting race and ethnicity make it difficult to infer any differences between voters of actual different races or ethnicities

73.    As noted in my discussion of Professor Mayer's disparate impact analyses of Harris County and Dallas County, Professor Mayer used educated guesses about the race and ethnicity of voters.  Unfortunately, the published, known error rates associated with classifying race and ethnicity in this way imply that no small step of faith is required to believe that differences in predicted-race correspond to differences in actual race.

---

[17] For 2022 primary voting, the chi-squared statistic is 56.07, and the associated p-value is less than 0.001.  For 2022 general election voting, the chi-squared statistic is 39.4, with a p-value of less than 0.001.  This level of significance is qualitatively similar, and even somewhat more statistically significant, than that reported by Professor Mayer for 2020 drive-thru voters.

74.     While I will not go through the same type of exercise I performed in Tables 6 and 7 for Harris County and Dallas County, a simple example illustrates the problems associated with predicting ethnicity in this way.  For example, Table 8 of Professor Mayer's report indicates there were 588 drive-thru voters in the 2020 election predicted to be Hispanic.  By comparison, there were 1,522 voters predicted to not be Hispanic.  However, Table 8 of Imai, Olivella, and Rosenman (2022) indicates the algorithm has an 11.76 percent false negative rate for Hispanics.  That suggests that of the 1,522 voters predicted to be non-Hispanic, 179 of them actually identify as Hispanic.

75.     How would the inclusion of those individuals in the correct group (i.e., Hispanics) impact the analysis?  It is impossible to know.  That is because we do not know who they are, and therefore we do not know how they voted in the 2022 primary and general elections.  This number of Hispanics could impact the calculations in a meaningful way, given only 182 predicted-Hispanics voted in the 2022 primary, and only 267 predicted-Hispanics voted in the 2022 general election.  If all 179 of these mis-classified Hispanics in fact voted in the subsequent elections, it would mean that Professor Mayer significantly understates voting rates by Hispanics, and overstates the voting rates of the other groups – namely, Whites.

76.     As a result, if Professor Mayer or anyone else wishes to speak to racial or ethnic disparities, they either need a much more accurate prediction system, or data on actual race and ethnicity.

## VII.    Conclusion

77.     Professor Mayer would have you believe that SB 1 provides zero benefit to election security.  He provides no evidence of this, except for citing the number of prosecuted cases of election fraud.  Yet his own academic writings acknowledge the difficulty of detecting election fraud.  Moreover, Professor Mayer ignores the fact that prosecutions massively undercount other types of

crime that have clear victims, and are more likely to be detected, reported, and solved. Finally, Professor Mayer ignores the potential benefit of adopting safeguards such as SB 1 in addressing the indisputable, widespread belief by many Americans, whether correct or not, that election fraud is a problem.

78.   Professor Mayer would also have you believe that out of the 1,991,445 voters who cast ballots in Dallas, Harris, and Hidalgo counties in the 2022 general election, 2,949 voters were disenfranchised because their mail-in votes were rejected. Yet there is nothing in Professor Mayer's report, or in the underlying data, to suggest that these were legitimate votes. Put simply, Professor Mayer chooses to (mis)interpret any rejection of mail ballots as evidence of disenfranchisement, even though the same evidence is equally consistent with a reduction in illegitimate votes counted.

79.   Professor Mayer would also have you believe that the identification safeguards adopted by SB 1 caused an increase in mail-in ballot rejections, relative to prior to SB 1. However, I demonstrate using Professor Mayer's data that there was also a large increase in ballot rejections that had nothing to do with the identification requirements of SB 1. This casts serious doubt on the credibility of the pre-SB 1 ballot rejection numbers, and of comparisons of rejection rates before and after SB 1.

80.   Finally, Professor Mayer would have you believe that SB 1 had a disparate adverse impact against Black and Hispanic voters. Again, his evidence is unconvincing. Professor Mayer has no data on whether a voter is Black or Hispanic. Rather, he is using educated guesses based on surname and residential neighborhood. I demonstrate that the documented classification error inherent in these educated guesses makes it difficult to conclude anything with certainty regarding differences across actual race or ethnicity. Moreover, I demonstrate that Professor Mayer computed disparate impact of SB 1's mail-in voting safeguards incorrectly in Harris County and Dallas County. The correct approach results in the opposite conclusion of disparate impact against predicted-Whites

in favor of predicted-Hispanics, and no evidence at all of disparate impact against predicted-Asians. Similarly, I show there is no evidence of any adverse impact of the elimination of drive-thru voting in Calhoun County, either in the aggregate or for predicted-minorities.   In addition, I show that implementing Professor Mayer's flawed statistical test in Calhoun County yields a conclusion of disparate impact on 2020 voters who did not even use the drive-thru voting option.  This provides further evidence of the unreliability of Professor Mayer's approach to assessing disparate impact.


Respectfully Submitted,

Mark Hoekstra, PhD

CURRICULUM VITAE

Mark Hoekstra

Texas A&M University                              Office Phone:  979.845.7302
Department of Economics                           Email: markhoekstra@tamu.edu
275 Liberal Arts Social Sciences Building         https://sites.google.com/view/markhoekstra
College Station, TX  77840-4228                   Google Scholar Profile (link)

## Academic Appointments

| | |
|---|---|
| 2018 – Present | Professor of Economics |
| 2015 – Present | Private Enterprise Research Center Rex B. Grey Professor of Economics, Texas A&M University |
| 2011 – 2018 | Associate Professor of Economics, Texas A&M University |
| 2006 – 2011 | Assistant Professor of Economics, University of Pittsburgh |

## Research Appointments

| | |
|---|---|
| 2015 – Present | Research Associate, National Bureau of Economic Research |
| 2013 – Present | Research Fellow, IZA |
| 2011 – 2015 | Faculty Research Fellow, National Bureau of Economic Research |

## Editorial Positions

| | |
|---|---|
| 2018 – Present | Associate Editor, *Journal of Labor Economics* |
| 2015 – Present | Associate Editor, *Journal of Human Resources* |

## Education

Ph.D.   Economics, University of Florida, August 2006
        Dissertation Advisor: David Figlio

B.A.    Economics, Hope College (*summa cum laude*), June 2001

## Research Interests

Applied Microeconomics, including Labor Economics, Law and Economics, and the Economics of Education

## Publications

"The Effect of Open-Air Waste Burning on Infant Health: Evidence from Government Failure in Lebanon" (with Pierre Mouganie and Ruba Ajeeb), forthcoming in *Journal of Human Resources*

"The Effect of School and Neighborhood Peers on Achievement, Misbehavior, and Adult Crime" (with Stephen B. Billings), forthcoming in *Journal of Labor Economics*

"Does Race Matter for Police Use of Force?  Evidence from 911 Calls" (with CarlyWill Sloan), *American Economic Review* 2022, 112(3): 827-860.

"The Effect of Own-Gender Jurors on Conviction Rates" (with Brittany Street), *Journal of Law and Economics* 2021, 64(3): 513-537.

"(Almost) No One Votes Without ID, Even When They Can" (with Vijetha Koppa), *Economics Letters* 2021, 205: 1-3.

"The Impact of College Diversity on Behavior Toward Minorities" (with Scott E. Carrell and James West), *American Economic Journal: Economic Policy* 2019, 11(4): 159-182.

"The Long-Run Effects of Disruptive Peers" (with Elira Kuka and Scott E. Carrell), *American Economic Review* 2018, 108(11): 3377-3415.

"Peer Quality and the Academic Benefits to Attending Better Schools (with Pierre Mouganie and Yaojing Wang), *Journal of Labor Economics* 2018, 36(4): 841-884.

"Cash for Corollas: When Stimulus Reduces Spending" (with Steven L. Puller and Jeremy West), *American Economic Journal: Applied Economics* 2017, 9(3): 1 – 35.

"Illegal Immigration, State Law, and Deterrence" (with Sandra Orozco-Aleman), *American Economic Journal: Economic Policy* 2017, 9(2): 228-252.

"Vehicle Miles (Not) Traveled: Why Fuel Economy Requirements Don't Increase Household Driving" (with Jeremy West, Jonathan Meer, and Steven L. Puller), *Journal of Public Economics* 2017, 145: 65-81.

"Are School Counselors an Effective Education Input?" (with Scott E. Carrell), *Economics Letters* 2014, 125(1): 66-69.

"Bank Privatization, Finance, and Growth" (with Daniel Berkowitz and Koen Schoors), *Journal of Development Economics* 2014, 110: 93-106.

"Does Strengthening Self-Defense Law Deter Crime or Escalate Violence?  Evidence from Expansions to Castle Doctrine (with Cheng Cheng) *Journal of Human Resources* 2013, 48(3): 821-854.

"Family Business or Social Problem?  The Cost of Unreported Domestic Violence" (with Scott E. Carrell) *Journal of Policy Analysis & Management* 2012, 31(4): 861-875.

"Is Poor Fitness Contagious?  Evidence from Randomly Assigned Friends" (with Scott E. Carrell and James West) *Journal of Public Economics* 2011, 95(7-8): 657-663.

"The Ticket to Easy Street?  The Financial Consequences of Winning the Lottery" (with Scott Hankins and Paige Marta Skiba) *Review of Economics and Statistics* 2011, 93(3): 961-969.

"Does Drinking Impair College Performance?  Evidence from a Regression Discontinuity Approach" (with Scott E. Carrell and James West) *Journal of Public Economics* 2011, 95 (1-2): 54-62.

"Does High School Quality Matter?  Evidence from Admissions Data" (with Daniel Berkowitz) *Economics of Education Review* 2011, 30(2): 280-288.

"Lucky in Life, Unlucky in Love?  The Effect of Random Income Shocks on Marriage and Divorce" (with Scott Hankins) *Journal of Human Resources* 2011, 46(2): 403-426.

"Externalities in the Classroom: How Children Exposed to Domestic Violence Affect Everyone's Kids" (with Scott E. Carrell) *American Economic Journal: Applied Economics* 2010, 2(1): 211-228.

"The Effect of Attending the Flagship State University on Earnings: A Discontinuity-Based Approach" *Review of Economics and Statistics* 2009, 91(4):  717-724.

**Other Publications**

"Returns to Education Quality". 2020. In Steve Bradley and Colin Green (Eds.), *The Economics of Education: A Comprehensive Overview, 2nd edition.* Edited by Steve Bradley and Colin Green. Elsevier Academic Press.

"Domino Effect" (with Scott E. Carrell). 2009. *Education Next:* 9(3). Available at http://www.hoover.org/publications/ednext/Domino_Effect.html.

**Working Papers**

"The Scale and Nature of Neighborhood Effects on Children: Evidence from a Danish Social Housing Experiment" (with Stephen B. Billings and Gabriel Pons Rotger)

"Illegal Immigration: The Trump Effect" (with Sandra Orozco-Aleman)

"When Should We Trust Weighted Least Squares Estimates?" (with Cheng Cheng)

**Awards**

IZA Young Labor Economist Award, 2012 (with Scott E. Carrell)

**Teaching Experience**

Texas A&M University:
   Sports Economics, Public Economics I (PhD-level), Econometrics II (1st-year PhD), Labor Economics I (2nd-year PhD)

University of Pittsburgh:
   Labor Economics (PhD-level), Sports Economics, Intermediate Public Finance, Industrial Organization, and Research Methods in Empirical Microeconomics

University of Florida:
   Public Finance and Managerial Economics

**Department Service**

Executive Committee (Fall 2011 – Fall 2014; Fall 2016 – Spring 2017)
Graduate Instruction Committee (Fall 2012 – Spring 2019)
Director of PhD Admissions (Fall 2012 – Spring 2015; Fall 2018 – Spring 2019; Spring 2023)
Director of PhD Program (Fall 2012 – Fall 2014)
Applied Microeconomics Search Committee (2011-12, 2012-13, 2014-15)

**Primary Dissertation Advisor (Initial Placement, Current Position)**
(Non-tenure track positions and co-advisor roles are noted if applicable; excludes committee memberships)

| | |
|---|---|
| Suhyeon Oh | (expected 2025) |
| Maya Mikdash | (expected 2024) |
| Adam Bestenbostel | (2022, Air Force Academy, non-tenure-track Assistant Professor) |
| Meradee Tangvatchaparong | (2021, 5-year non-tenure-track Assistant Professor, Hitotsubashi University's Institute of Economic Research)) |
| CarlyWill Sloan | (2020, Claremont Graduate University, now at United States Military Academy West Point) |
| Brittany Street | (2019, University of Missouri) |
| Abigail Peralta | (2018, Louisiana State University) |
| Yaojing Wang | (2017, Bank of America, co-advised with Li Gan, now at Peking University) |
| Vijetha Koppa | (2016, Stephen F. Austin State University, now at Institute of Management |

|  | Technology, Dubai) |
| --- | --- |
| Jillian Carr | (2015, Purdue University) |
| Pierre Mouganie | (2015, American University of Beirut, now at Simon Fraser University) |
| Gonzalo Sanchez | (2015, Pontificia Universidad Católica de Ecuador) |
| Cheng Cheng | (2014, University of Mississippi, now at Amazon) |

## Presentations

*Essen Health Conference (keynote speaker, scheduled May 2023); Clemson University (November 2022); Berlin Applied Micro Seminar, October 2022; Simon Fraser University, April 2022, Jinan University, October 2021; National University of Singapore, April 2021; University of Florida, April 2021; ASSA American Economic Association Annual Meeting (x2), January 2021; San Diego State University, October 2020; Boston University, September 2020; University of Maryland, September 2020; Notre Dame, September 2020; NBER Summer Institute – Crime, July 2020; Claremont McKenna College, February 2020; Claremont Graduate University, January 2020; American Economic Association Annual Conference, January 2020; Southern Economic Association Annual Conference, November 2019; Victoria University of Wellington Applied Econometrics Workshop, October 2019 (keynote speaker); University of Mississippi, October 2019; Mississippi State University, October 2019; Stata/Texas Applied Microeconomics Conference, October 2019; University of Florida, May 2019; Georgia Tech, March 2019; West Virginia University, March 2018; University of Tennessee, January 2018, Purdue University, January 2018; University of Kentucky, October 2017; Annual Meeting of the Western Economic Association, June 2017; University of Leicester, June 2017; University of Leicester Domestic Violence Workshop, June 2017; American University of Beirut, March 2017; University of Uppsala, March 2017; Montana State University, April 2016; American University of Beirut, March 2016; Columbia University, February 2016; Annual Meeting of the American Economic Association Meeting (January 2016); Annual Meeting of the Southern Economic Association (November 2015); NBER Education Program Meeting (November 2015); Brigham Young University, February, 2015; Federal Reserve Bank of New York, February, 2015; Stata/Texas Applied Microeconomics Conference, November 2014; University of Florida, November, 2014; Louisiana State University, October 2014; Institute for the Study of Labor (IZA), October 2014;  University of Wisconsin-Milwaukee, October 2013; Ghent University, September 2013; University of Texas – Dallas, April 2013; Stata/Texas Applied Microeconomics Conference, December 2012; Southern Economic Association Annual Meeting, November 2012; University of Texas-Austin, April 2012; Georgetown Public Policy Institute, April 2012; University of Missouri, October 2011; Baylor University, August 2011; Texas A&M University, November 2010; University of Houston, October 2010; University of Pittsburgh School of Medicine, Psychiatry and Epidemiology Seminar, October 2009; NBER Summer Institute, Law and Economics Program, July 2009; University of California at Davis, April 2009; University of California at Berkeley Labor Lunch, March 2009; American Economic Association Annual Meetings, January 2009; Texas A&M University, September 2008; Carnegie Mellon University, September 2008; NBER Summer Institute, Economics of Education Program, July 2008; Society of Labor Economists Annual Meeting, May 2008; Vanderbilt University, April 2008; NBER Education Working Group, November 2006*

## Other Information

Referee: *American Economic Journal: Applied Economics, American Economic Journal: Economic Policy, American Economic Review, American Journal of Health Economics, American Sociological Review, Berkeley Electronic Press, Contemporary Economic Policy, Economic Development and Cultural Change, Economic Inquiry, Economic Journal, Economics of Transition, Education Economics, Education Finance and Policy, Empirical Economics, European Journal of Law & Economics; Journal of Applied Econometrics, Journal of Comparative Economics, Journal of Demographic Economics, Journal of the European Economic Association, Journal of Health Economics, Journal of Human Resources, Journal of Labor Economics, Journal of Policy Analysis and Management, Journal of Political Economy, Journal of Population Economics, Journal of Public Economics, Journal of Sports Economics, Journal of Urban Economics, Labour Economics, Proceedings of the National Academy of Sciences (PNAS), Quantitative Finance, Quarterly Journal of Economics, Regional Science and Urban Economics, Review of Economics and the Household, Review of Economics and Statistics, and Southern Economic Journal.*

Reviewer: Israel Science Foundation, National Science Foundation, Marsden Fund (New Zealand), Dutch Research Council

Citizenship: United States

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 5:21-cv-844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# APPENDIX QQ

Yvonne Iglesias                                            April 17, 2023

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3

 4
    LA UNION DEL PUEBLO ENTERO,   )
 5  et al.,                       )
              Plaintiffs,         )   Case No.
 6                                )   5:21-CV-844-XR
    vs.                           )
 7                                )
    GREGORY W. ABBOTT, et al.,    )
 8        Defendants,             )
 9  _____

10  OCA-GREATER HOUSTON, et al.,  )
          Plaintiffs,             )   Case No.
11                                )   1:21-CV-780-XR
    vs.                           )
12                                )
    JANE NELSON, et al.,          )
13        Defendants.             )

14  _____

15
    HOUSTON AREA URBAN LEAGUE, et )
16  al.,                          )   Case No.
          Plaintiffs,             )   5:21-CV-848-XR
17                                )
    vs.                           )
18                                )
    GREGORY WAYNE ABBOTT, et al., )
19        Defendants.
20  _____

21
    LULAC TEXAS, et al.,          )
22        Plaintiffs,             )   Case No.
                                  )   1:21-CV-0786-XR
23  vs.                           )
                                  )
24  JANE NELSON, et al.,          )
          Defendants.             )
25
```



Yvonne Iglesias

April 17, 2023
Pages 2 to 5

---

**Page 2**

```
 1  ─────────────────────────────
 2
    MI FAMILIA VOTA, et al.,    )
 3      Plaintiffs,    ) Case No.
                       ) 5:21-CV-0920-XR
 4  vs.                )
                       )
 5  GREG ABBOTT, et al.,    )
    Defendants.    )
 6
 7  ─────────────────────────────
 8
    UNITED STATES OF AMERICA,    )
 9      Plaintiff,    ) Case No.
                      ) 5:21-CV-1085-XR
10  vs.               )
                      )
11  THE STATE OF TEXAS, et al.,  )
        Defendants.    )
12
13
14  ─────────────────────────────
15      ORAL/VIDEOTAPED DEPOSITION OF
16          YVONNE IGLESIAS
17           APRIL 17, 2023
18  ─────────────────────────────
19
20      ORAL/VIDEOTAPED DEPOSITION OF YVONNE IGLESIAS,
    produced as a witness at the instance of the
21  Defendants, and duly sworn, was taken in the
    above-styled and numbered cause on April 17, 2023, from
22  10:00 a.m. to 12:26 p.m., Nilda Codina, Notary in and
    for the State of Texas, recorded by machine shorthand,
23  remotely from Edinburg, Texas, County of Hidalgo,
    pursuant to the Federal Rules of Civil Procedure, the
24  current Emergency Order regarding the COVID-19 State of
    Disaster, and the provisions stated on the record or
25  attached hereto.
```

---

**Page 4**

```
 1          I-N-D-E-X
 2                    PAGE
 3  Appearances.........................................2
 4  YVONNE IGLESIAS
 5  Direct Examination by Mr. Szumanski.................6
 6  Cross-Examination by Ms. Snead....................70
 7  Redirect by Mr. Szumanski.........................74
 8  Proceedings concluded.............................81
 9  Witness Signature/errata..........................82
10  Reporter's certificate............................84
11          E-X-H-I-B-I-T-S
12          (Retained by counsel.)
13  Exhibit 1 Notice of Deposition        12
14  Exhibit 2 OCA-Greater Houston and HAUL        13
        Plaintiffs' Sixth Supplemental Rule
15      26(a)(1) Initial Disclosures
16
17
18
19
20
21
22
23
24
25
```

---

**Page 3**

```
    A-P-P-E-A-R-A-N-C-E-S
 1  FOR THE PLAINTIFF:
 2
 3    Ms. Lisa Snead, Esq. (Via Zoom)
      (Mr. Peter Hofer, Esq.)
 4    DISABILITY RIGHTS OF TEXAS
      2222 W. Braker Ln.
 5    Austin, Texas 78758
      Phone:(512)454-4816
 6    phofer@drtx.org
 7    Ms. Lucia Romano, Esq. (Via Zoom)
      DISABILITY RIGHTS OF TEXAS
 8    2222 W. Braker Ln.
      Austin, Texas 78758
 9    Phone:(512)454-4816
10    Ms. Katherine Goetz, Esq. (Via Zoom)
      REED SMITH
11    811 Main St.
      Suite 1700
12    Houston, Texas 77002
      Phone:(713)469-3800
13    Fax:(713)469-3899
14
15  FOR THE DEFENDANT:
16    Mr. Ethan Szumanski, Esq. (Via Zoom)
      ATTORNEY GENERAL KEN PAXTON
17    P.O. Box 12548
      ethan.szumanski@oag.texas.gov
18
      Mr. Stephen Kenny, Esq. (Via Zoom)
19    JONES DAY
      51 Louisiana Avenue, N.W.
20    Washington, D.C. 20001-2113
      Phone:(202)879-3667
21    Fax:(202)626-1700
      skenny@jonesday.com
22
23
24  ALSO PRESENT:  Vincent Powley, Videographer
              ; Christopher McGreal, Esq.
25
```

---

**Page 5**

```
 1          P-R-O-C-E-E-D-I-N-G-S
 2      THE VIDEOGRAPHER:  We're now on the
 3  record.  This begins Videotape No. 1, in the deposition
 4  of Yvonne Iglesias.  Today is Monday, April 17, 2023.
 5  The time is 10:03 a.m.  Videographer is Vincent Powley
 6  of Magna Legal Services.  The court reporter is Nilda
 7  Codina of Magna Legal Services.
 8          Will counsel and all parties present
 9  state their appearances and whom they represent?
10      MR. SZUMANSKI:  Good morning.  This is
11  Ethan Szumanski.  I am with the Office of the Attorney
12  General, representing the State of Texas in this
13  matter, along with my colleague, Mr. David Bryant.
14      MS. SNEAD:  This is Lisa Snead with
15  Disability Rights Texas.  We represent the OCHGH
16  plaintiffs in this matter, and I'm defending the
17  deposition of Ms. Yvonne Iglesias, who is here with me.
18      THE VIDEOGRAPHER:  Swear in the
19  witness.
20          YVONNE IGLESIAS,
21  Having been first duly sworn, was examined and
22  testified as follows:
23      THE REPORTER:  All other parties,
24  Ms. Romano and Mr. Sullivan Baker, anybody else that's
25  present, we would need you to state that you are
```



Yvonne Iglesias

April 17, 2023
Pages 50 to 53

Page 50

1  needed to vote, to make a difference.
2      Q.  Did she ever --
3      A.  She always -- oh, sorry.  She was --
4      Q.  Sorry.
5      A.  I'm sorry.
6      Q.  Sorry.  I didn't mean to interrupt you.  I
7  know there's this Zoom lag, so I'll try to do better
8  about that.
9          But you said your sister pushed you, right?
10      A.  Yeah.  Well, she would convince me and -- and
11  tell me, you know, that it -- my vote does matter and
12  it does count, and that I could do it, you know.  And I
13  did make a difference.  I did count in this world, and
14  it made me feel, you know...
15          (Witness crying.)
16      A.  ...that I did make a difference.  You know,
17  that I did count.  That disability people count.  And
18  she always would tell me that my vote mattered.  So...
19      Q.  (BY MR. SZUMANSKI)  I understand.  I
20  understand.  Thank you for letting me know.
21          Would you like to take a break, Ms. Iglesias?
22      A.  No, I'm fine.  Thank you.
23      Q.  You sure?
24      A.  Yes.
25      Q.  Okay.  Now, in your conversations with your

Page 51

1  sister, Ms. Iglesias, did she ever give you practical
2  tips about voting my mail?
3      A.  A long time ago she had introduced me into
4  doing that because I didn't know that I could vote
5  through mail, ballot through mail.
6      Q.  So would it by fair to say, Ms. Iglesias,
7  that if you had been more aware of the resources out
8  there, that it is possible that your Application for
9  Ballot by Mail, in the November 8th general election in
10  2022, in Texas, possibly could have been accepted?
11      A.  Yes.
12      Q.  Why would you say that?
13      A.  I would have known who to turn to and be more
14  educated on things I can do and be aware.
15      Q.  Is there anything you wished you would have
16  done differently, in the 2022 general election, in
17  Texas, as far as submitting your Application for
18  Ballot by Mail?
19      A.  No, I just wanted my vote to count for my
20  sister -- it meant a lot to me.
21          (Witness crying.)
22      Q.  (BY MR. SZUMANSKI)  I understand.  Thank you
23  for letting me know that.
24          So is there anything else besides that, that
25  you would rather have done differently, yourself, as

Page 52

1  far as submitting your Application for Ballot by Mail,
2  in the November 8th general election in 2022, in Texas?
3      A.  Be more aware of organizations and -- and to
4  know that I'm not alone, and that, you know, we do
5  matter.  That's all.  I just wanted to make a
6  difference.
7      Q.  Understood.  Ms. Iglesias, is there anything
8  about SB1 in particular, that you believe may have made
9  it more difficult to vote by mail --
10          MS. SNEAD:  Objection, form.
11      Q.  (BY MR. SZUMANSKI) -- in Texas?
12      A.  I'm not sure.
13      Q.  Do you have any opinions about Senate Bill 1,
14  personally?
15      A.  No.
16      Q.  Now, Ms. Iglesias, I do know that there's a
17  May 6, 2023, election coming up, are you aware of that?
18      A.  Yes.
19      Q.  Do you plan to vote in this election?
20      A.  Yes.
21      Q.  What have you done, as far as preparing to
22  vote in this May 6, 2023 election?
23      A.  Well, be educated by the resources that I
24  have now and excited to make a difference.
25      Q.  And what resources do you have now that you

Page 53

1  did not have in 2022?
2      A.  I know about REV and Arch now.  And I -- they
3  educate me more about it and be aware of the things
4  that are going on.  And --
5      Q.  So did you --
6      A.  Sorry.
7      Q.  Sorry, that was my fault, Ms. Iglesias as far
8  as interrupting you.  Go ahead and finish.  I didn't
9  want to interrupt you.  I missed that last part of what
10  you were saying.
11      A.  And that I'm not alone.
12      Q.  Understood.  So would you-all mind if we take
13  a quick five-minute break as I go over some notes real
14  quick, just to make sure I kind of didn't miss anything
15  and make sure we're all on the same page?
16          MS. SNEAD:  Yeah.
17          MR. SZUMANSKI:  Great.  We'll come
18  back at 11:30, if that's all right with everybody.
19          THE VIDEOGRAPHER:  Okay.  We're off
20  the record at 11:24 a.m.
21          (Off the record.)
22          THE VIDEOGRAPHER:  We are now back on
23  the record at 11:32 a.m.
24      Q.  (BY MR. SZUMANSKI)  All right.  Ms. Iglesias,
25  we just came back from break.  I just kind of want to



Yvonne Iglesias

April 17, 2023
Pages 54 to 57

Page 54

1 follow-up some -- on some things you said earlier.
2        So you mentioned that in Edinburg, that you
3 are aware of -- or you mentioned voter fraud.
4        Can you explain to me why you believe there's
5 voter fraud in Edinburg, Texas?
6    A.  Before that there was on the news and
7 everything going on that the fed- -- federal government
8 was down here investigating on voter fraud and things
9 that were going on here.  And I just felt like when I
10 voted, like, I don't know who was controlling all of
11 that.  And I just didn't feel that it would ever -- and
12 it go through, and it didn't make a difference.
13    Q.  So based on that, would you agree that IDs
14 are an important part of submitting applications for
15 ballot by mail and mail-in ballots?
16    A.  Yes.
17    Q.  Why would you agree with that?
18    A.  So that they could know you're a person,
19 identification; so they can know who's voting.
20    Q.  Why is that an -- why do you think that is
21 important, as far as submitting applications for ballot
22 by mail and mail-in ballots?
23    A.  To make your vote count.  To make a
24 difference.
25    Q.  And you also mentioned aware -- as we were

Page 55

1 talking about awareness, right before we broke.
2        Now that you've been through the process and
3 you are aware of REV UP and -- and Arc of Texas, would
4 you agree with me that you have more knowledge about
5 how to vote by mail in future elections in Texas?
6    A.  Yes.
7    Q.  And that means that you will have more
8 knowledge and, as you say, make your vote count?
9    A.  Yes.
10    Q.  And do you also agree that having that
11 additional information will make it easier for voters
12 just like you to vote more effectively in future
13 elections in Texas?
14    A.  Definitely, yes.
15    Q.  And do you also agree that because,
16 sometimes, voting laws take some time to make their way
17 to people, to voters and individuals, that voters, who
18 now have gotten used to SB1 or Senate Bill 1, that they
19 will know be able to cast their ballot more
20 effectively, in future elections?
21    A.  Yes.
22    Q.  Why do you believe that?
23    A.  I believe they have more resources and
24 knowledge.
25    Q.  So if they had more resources and knowledge

Page 56

1 and they've been through the experience a little bit
2 more, you would agree with me that now their vote would
3 be, as you say, able to count?
4        MS. SNEAD:  Objection, form.
5    A.  Yes.
6    Q.  (BY MR. SZUMANSKI) So you would agree with me
7 that voter education is very important in helping
8 voters cast their Applications for Ballot by Mail and
9 their mail-in ballots?
10    A.  Yes.
11    Q.  Now, are you aware that -- as you become more
12 aware through your experience in the 2022 elections,
13 are you aware of the different ways that an individual
14 can cure the Application for Ballot by Mail?
15    A.  I don't understand.
16    Q.  So let me try rephrasing it.
17        So are you aware of, even though you -- a
18 voter submits an Application for Ballot by Mail, they
19 can fix that problem in several ways?
20    A.  Yes.
21    Q.  Are you aware of that?
22    A.  Yes.
23    Q.  Okay.  Do you know what those different
24 options are?
25    A.  Resubmit your application in time.  Just

Page 57

1 follow instructions and if you have a problem they'll
2 be people to help you and show you what to do in the
3 future.
4    Q.  So in addition to putting the correct ID
5 information on the new Application for Ballot by Mail,
6 are there any other options, that you're aware of, of
7 how to fix the -- a potential rejection of an
8 Application for Ballot by Mail?
9    A.  No.
10    Q.  So you're not aware that a voter can update
11 their voter registration by going to the "My Voter
12 Portal" on the Secretary of State's website?
13    A.  No, I'm barely starting to educate myself
14 more because I didn't know about those resources at the
15 time and I'm barely, you know, being aware of things
16 like that.
17    Q.  Understood.  So what are you doing, currently
18 to become more aware of these new options for fixing a
19 defect on an Application for Ballot by Mail or a
20 mail-in ballot?
21    A.  Well, looking through their news feed.
22 Trying to see if there's any changes going on and to
23 understand that because at the time of voting, I didn't
24 -- I don't -- I didn't know if there was any new laws
25 or any new ways of them receiving my ballot through --



Yvonne Iglesias

April 17, 2023
Pages 58 to 61

Page 58

1 through mail.
2    Q.   Understood.  So in addition to news feeds and
3 doing additional reading, are you aware that
4 VoteTexas.org has information on how to vote by mail?
5    A.   No.
6    Q.   Are you aware that The Arc of Texas has
7 information on their website about how to vote in
8 Texas?
9    A.   Now, I am.
10    Q.   Have you looked at their website to see what
11 they provide, as far as information about how to vote
12 in Texas?
13    A.   I seen a few things, but not completely gone
14 through everything, yet.
15    Q.   Is there a particular reason why you haven't
16 gone through everything, yet?
17    A.   I just been really busy, like I said, with
18 doctors, nurses and things going on.  I, usually, try
19 to -- now, I'm going to, before I vote this next time,
20 to really read and educate myself, before voting to see
21 if there's anything different.
22    Q.   Understood.  So you would agree that being
23 more aware is directly tied to your ability to cast a
24 ballot effectively in an election, right?
25    A.   Yes.

Page 59

1    Q.   So if voters go to those resources that
2 you're mentioning, they go to REV UP Texas or The Arc
3 of Texas and they read through that stuff, would you
4 agree that having that information would allow them to
5 be able to successfully cast their Applications for
6 Ballot by Mail and their mail-in ballots?
7    A.   Yes.
8    Q.   Can you explain the reason why?
9    A.   I believe that they could explain and speak
10 with us, especially for people that are blind and can't
11 really see and read and things like that.  But they
12 could get a number, or they could call us and educate
13 us because I am also blind from one eye.  And it's kind
14 of difficult to read.  I get tired, you know, but I am
15 thankful that people take their time and explain how
16 things that are going on to help us make -- you know,
17 do better.
18    Q.   Understood.  So because of all this new
19 knowledge and awareness you've gained and trying to, as
20 you say, help make a difference, you would agree that
21 your ability to cast a ballot now, under the same,
22 current existing law, is greater, as far as being able
23 to successfully cast an Application for Ballot by Mail
24 or mail-in ballot?
25         MS. SNEAD:  Objection, form.

Page 60

1    A.   I'm not sure.
2    Q.   (BY MR. SZUMANSKI) So -- so let me rephrase,
3 because maybe I got a little bit confusing there for a
4 second.
5    A.   Yeah.
6    Q.   So you would agree that because you have all
7 this new-found awareness and knowledge based on your
8 educating yourself, that voters just like you can make
9 their vote count, now based on the new knowledge that
10 they have?
11         MS. SNEAD:  Objection, form.
12    A.   I believe if they're -- if they know this
13 knowledge, you know, it would make a difference because
14 a lot of disability people need help to vote and to
15 make a difference.
16    Q.   (BY MR. SZUMANSKI) So would you agree that
17 it's more about knowledge than about the -- the change
18 in law --
19         MS. SNEAD:  Objection --
20    Q.   (BY MR. SZUMANSKI) -- that --
21         MS. SNEAD:  -- form.
22    Q.   (BY MR. SZUMANSKI) -- takes the Application
23 for Ballot by Mail or mail-in ballot being able to be
24 cast more successfully?
25         MS. SNEAD:  Objection, form.

Page 61

1    A.   No.
2    Q.   (BY MR. SZUMANSKI) And why is that?
3    A.   Because I believe that laws have to change,
4 to make it easier for us to make our vote count, you
5 know.  It's very difficult on the -- the way of life we
6 live.  Until you're in that situation and you're going
7 through something or maybe your family members or your
8 children or someone in your family is going through
9 something like this, then maybe, you would understand
10 that you would want to make it easier for them, because
11 you love and care for them.
12    Q.   So you would agree that even though -- you
13 would agree that making voting easier could sometimes
14 have an impact on voter fraud, right?
15    A.   Rephrase that?
16    Q.   Sure.  So you would agree -- earlier, you
17 said that ID requirements -- you believe that ID
18 requirements are needed, correct?
19    A.   Yes.
20    Q.   Because of the voter fraud that you believe
21 is happening or has happened in the past, at least in
22 Edinburg, Texas, correct?
23    A.   Yes.
24    Q.   So for example if voting was made easier and
25 those ID requirements were not there, you would agree



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al.,          §
　　　　　*Plaintiffs,*                        §
                                              §
*v.*                                          §          Case No. 5:21-cv-844-XR
                                              §
GREGORY W. ABBOTT, et al.,                    §
　　　　　*Defendants.*                        §

---

STATE DEFENDANTS' BRIEF IN RESPONSE TO
OCA-GH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# APPENDIX RR



**In The Matter Of**

**La Union Del Pueblo Entero, et al.,**

**Plaintiffs**

**v**

**State Of Texas, et al.,**

**Defendants**

**CASE**

**5:21-cv-844**

**Date**

**5-6-2022**

**Witness**

**Brian Keith Ingram, JD**

**Volume II of II**

**Certified Copy Transcript**

**National Court Reporters Inc.  ·  888.800.9656  ·**
**NationalCourtReporters.com**
**NCRNetwork@nationalcourtreporters.com**
Serving Legal Professionals From Coast To Coast and Internationally

Case 5:21-cv-00844-XR   Document 646-4   Filed 06/24/23   Page 433 of 434

5:21-cv-844 (XR)
5/6/2022

Entero v Texas
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 31 (344 - 347)

31 (344 - 347)

Page 344

1 immigrants to the United States who are eligible to
2 vote?
3    A.  So the other aspect of this is that we have
4 done is, we have engaged in town halls with elected
5 officials and their constituents, we have taken all the
6 invitations that we have got on that for those, and the
7 Secretary has, also, gone around the state trying to
8 procure as much free media as possible.
9    Q.  Is there any portion of that that is
10 specifically designed to make voter registration and
11 voting more accessible to immigrants to the United
12 States?
13    A.  Again, we don't think in terms of specific
14 groups when we're doing that sort of activity.  Our goal
15 is to reach all Texans.
16    Q.  So how about with respect to non-native English
17 speakers?
18       Is there anything other than you have
19 already described for anything at all that is specific
20 to making voter registration and voting more accessible
21 to non-native English speakers?
22    A.  Just what we have already discussed.
23    Q.  And so nothing specifically designed to assist
24 non-native English speakers?
25    A.  Our goal is to assist all Texans to have enough

Page 345

1 information so that they can successfully register to
2 vote and vote.
3    Q.  And how about same question with respect to
4 voters with limited English proficiency and/or literacy,
5 is there anything specific that the Secretary of State's
6 Office does to make voter registration and voting more
7 accessible or has done since January 1st of 2018?
8    A.  Again, our goal is to reach all Texans with
9 this information.
10    Q.  I am going to have you look at what we have
11 marked as Exhibit No. 17.
12       (Exhibit No. 17 marked.)
13    Q.  And sir, Exhibit 17 is an email from Lucas
14 Cabral to Ruth Hughs dated April 27th of 2020, attaching
15 a letter if the national association of Latino elected
16 and appointed officials educational fund; is that
17 correct?
18    A.  I agree with that.
19    Q.  And the following pages of the exhibit, I
20 believe, are the actual letter.  Do you see that, sir?
21    A.  I do.
22    Q.  And is it fair to say that this is a letter
23 from this group informing the Secretary of State's
24 Office of its view on the necessary steps to ensure that
25 all Texan voters can cast ballots in this year's

Page 346

1 election without impairing their personal health or
2 public safety?
3    A.  That's what it says.
4    Q.  And this is from a Latino advocacy group; is
5 that right?
6    A.  That's right.
7    Q.  Did the Secretary of State's Office take any
8 action regarding this letter?
9    A.  We did not.
10    Q.  Do you know whether it responded to Mr. Cabral
11 or this group regarding its concerns about voters and
12 Latino voters, in particular, being able to vote?
13    A.  I am not aware of a response.
14    Q.  Take a look at 846.
15       Do you know why there was a response sent
16 to the letter that's in Exhibit 17?
17    A.  Well, because there is no need for a response.
18       The two suggestions they make are going to
19 require legislative changes.  And then, obviously, we
20 were already working on robust voter education and
21 maintaining safe in-person polling places.
22    Q.  Did that letter signal to the Secretary of
23 State's Office that Latino voter advocacy groups in
24 particular needed information about how to vote during
25 the 2020 election?

Page 347

1    A.  It wanted robust voter education efforts and
2 that's what we were already engaged in.
3    Q.  That wasn't my question.
4       Did that signal to the Secretary of
5 State's Office that Latino communities in particular
6 wanted to ensure that they had information about how to
7 appropriately vote?
8    A.  Yes.
9       MS. HUNKER:  Objection, form.
10    A.  It signaled that this group was asking for
11 robust voter education, that's what it signaled, we were
12 already engaged in.
13    Q.  And it was a Latino advocacy organization, is
14 that right?
15    A.  That's what they are.
16    Q.  I am going hand you what we will mark as
17 Exhibit 18.
18       (Exhibit No. 18 marked.)
19    Q.  And Mr. Ingram, do you recognize what Exhibit
20 No. 18 is?
21    A.  I do.
22    Q.  At the top it is an email from Mr. Bitter to
23 John Scott, and others, on December 20th of 2021; is
24 that right?
25    A.  That's right.

Entero v Texas 5:21-cv-844 (XR)
5/6/2022

Entero v Texas
National Court Reporters Inc. 888.800.9656

31 (344 - 347) Brian Keith Ingram JD

Page: 31 (344 - 347)

**5:21-cv-844 (XR)**
**5/6/2022**

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 32 (348 - 351)

**32 (348 - 351)**

---

Page 348

1  Q.   And below it is an email from Kristi Hart to
2  yourself and Mr. Bitter from earlier that same day; is
3  that right?
4    A.   Agreed.
5    Q.   Who is Ms. Hart?
6    A.   She is our team -- team manager.
7    Q.   And it says, "As you know, we ran a comparative
8  process over the weekend.  We did run queries prior to
9  and following the process.  That information is listed
10 below."  Do you see that?
11   A.   I do.
12   Q.   Can you explain, essentially, what this table
13 means?  So "query," I take it, is like questions or a
14 search run across a database; is that right?
15   A.   That's right.
16   Q.   And what does "before" mean?
17   A.   Before we did the HB 2512 matching process.
18   Q.   All right.  And then, just for the record,
19 describe what that process involves?
20   A.   The HB 2512 process allows us to get
21 information from the driver's license record to
22 supplement voter registration records and use it for
23 voter registration purposes.
24   Q.   All right.  And so once this is done, for
25 example, on the top one -- and we are talking about --

Page 349

1  is it correct to say, we are talking about in the voter
2  registration, the team database then, the number of
3  active and suspense voting records with no Texas
4  driver's license number was 1.3 million and a little
5  above?
6    A.   Agreed.
7    Q.   And then after that, it was 493,823; is that
8  right?
9    A.   That's right.
10   Q.   And so it went down significantly,
11 approximately, 850,000.
12   A.   Agreed.
13   Q.   My math is really bad, so you don't have to
14 agree.
15   A.   It looks like about 800,000 to me.
16   Q.   Okay.  And if we go back down to the fourth
17 row, "Number of active and suspense voting records with
18 neither TDL or SSN in the record."  Do you see that?
19   A.   I do.
20   Q.   And the after number is 106,911; is that right?
21   A.   Agreed.
22   Q.   So does that mean in the team database there
23 are 106,911 voters with either Texas driver's license or
24 social security numbers?
25   A.   Well, that was the number as of December 20th,

Page 350

1  '21.  I am sure it's gone down since then.
2    Q.   All right.  But that's what that column means,
3  correct?
4    A.   That's what it means, yes.
5    Q.   And so is it fair to say, under SB 1 at least
6  at this time, on December 20th, 2021, there were that
7  many active and suspense voters who didn't have either
8  of the numbers required by SB 1?
9    A.   I agree with that.
10   Q.   And I understand that this process has gone on
11 since that time as well, since December 20th of 2021 is
12 that right, the matching process.  Is that fair to say?
13   A.   No.  That's not what I am talking about.
14   Q.   Okay.
15   A.   The matching process won't occur again until
16 next year.  What's happened since then is people have
17 been requesting mail ballots and sending in carrier
18 envelopes and logging into Texas.gov, and logging into
19 the ballot tracker, so these numbers -- the only way
20 they can go is smaller.
21   Q.   And so as people do that, those numbers may go
22 down.
23   A.   They are going down.
24   Q.   And do you know what the total -- what the
25 current number is of people who have neither one of

Page 351

1  those identification numbers is?
2    A.   No.  I am waiting to pull that until after we
3  do the primary runoff.
4    Q.   And so after May 24th --
5    A.   That's right.
6    Q.   -- of 2022.
7         All right.  Can we take a short break?  I
8  just want to check the time.
9         MS. HUNKER:  Sure.
10        (Brief recess.)
11        MS. HUNKER:  So it came to my attention
12 that the top portion of this email is in fact
13 attorney-client privilege, it is in reference to SB 1
14 litigation and it was given by their General Counsel to
15 Keith Ingram in pursuit of that; so what we would like
16 to do is fall this back, redact the top and reproduce
17 the email.
18        MS. OLSON:  I don't think that's
19 problematic because I think I only asked him questions
20 about the bottom half.
21        MS. HUNKER:  Yeah, sure.
22        MS. OLSON:  I only referred to the top
23 half to identify the exhibit, so that's not problematic.
24   Q.   (By Ms. Olson)  Mr. Ingram, has your -- has the
25 Secretary of State's Office provided any written

---

Entero v Texas 5:21-cv-844 (XR)
5/6/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656

32 (348 - 351) Brian Keith Ingram JD

**Page: 32 (348 - 351)**