IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF TEXAS, *et al.*,<br><br>*Defendants*.<br><br>HARRIS COUNTY REPUBLICAN PARTY, *et al.*,<br><br>*Intervenor-Defendants*. | CIVIL ACTION NO.<br>5:21-cv-844-XR<br>[Consolidated Action: Lead Case] |

**LUPE PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANTS JANE NELSON AND JOHN SCOTT (DKT. 630)**

After the LUPE Plaintiffs filed their motion to compel regarding documents in the possession of Defendants Jane Nelson ("SOS") and John Scott ("OAG") (together, "the State"), the State produced a small subset of the documents sought by LUPE Plaintiffs—several of which were almost entirely redacted. *See* Dkt. 630. Because the State's supplemental production fails to resolve the dispute between the parties, and because the State maintains its sweeping, and unjustified, assertions of the deliberative process, attorney-client, and investigative privileges, LUPE Plaintiffs respectfully request that the Court grant their motion to compel.

**I.    Supplementation by the State**

A. *Acknowledgement of Factual Error in LUPE Plaintiffs' Motion to Compel (Dkt. 630).*

1

As an initial matter, LUPE Plaintiffs wish to acknowledge a factual error in their opening brief regarding the meet and confer process between the parties. Specifically, in their opening brief, LUPE Plaintiffs stated: "Since the June 12, 2023 meet and confer, counsel for SOS and OAG have not sent any emails regarding the privilege logs at issue, including to provide additional information after the meet and confer or in response to LUPE Plaintiffs' subsequent inquiries." Dkt. 630 at 3-4. However, and as the State correctly points out in its response brief, the State produced a supplemental privilege log by email on the evening of Friday, June 16, 2023 with additional information regarding some of the documents sought by LUPE Plaintiffs in the instant motion. *See* Dkt. 650 at 5. That supplemental privilege log is attached to this reply as Reply Exhibit A.

> B. *The State's Withdrawal of Certain Privilege Assertions and Supplemental Production.*

In its response brief, the State indicated that it would produce additional documents sought by LUPE Plaintiffs. Dkt. 650 at 12. In accordance with that representation, on June 30, 2023, the State produced 99 additional documents—72 of which were redacted, almost in their entirety—that LUPE Plaintiffs sought in the instant motion. The State also served an additional privilege log that same day that matched "ID Numbers" in the privilege logs with the Bates ranges of any produced documents. Reply Ex. B.

Even with its June 30, 2023 supplemental production, the State continues to withhold the vast majority of the documents sought by LUPE Plaintiffs, and the redacted documents that the State did produce—which constitute the majority of the June 30, 2023 production—reveal little information contained in those documents. For example, in producing redacted versions of election complaint forms, the State redacted all of the information submitted by any complainant,

in effect producing blank forms. *See, e.g.*, Reply Ex. C at 2-6 (DOC_0808149, produced as STATE185077), at 7-12 (DOC_0808340, produced as STATE185082), and at 13-18 (DOC_0808349, produced as STATE185089).

As such, LUPE Plaintiffs still respectfully seek the Court's intervention. To aid the Court's review, LUPE Plaintiffs have included amended versions of Exhibits G through K to their opening brief.[1] For any documents still at issue, those amended exhibits also include any updated document descriptions that the State included in its June 16, 2023 supplemental privilege log. *See* Reply Ex. A.

## II. The State has Waived any Privilege Assertions over Documents Withheld by OAG.

The State has waived any privilege assertions to documents in the possession of OAG because it has sought to use the withheld information as both a sword and shield in the instant litigation.

Before filing its response to the instant motion to compel, in which the State argued that the investigative privilege protected from disclosure documents related to the OAG's investigation of alleged mail ballot fraud, vote harvesting and voter assistance, the State filed with the court a declaration by Jonathan White, the former Division Chief of OAG's Election Integrity Division. *See* Reply Ex. D at (Dkt. 645-5 at 14-22) (June 24, 2023 response to the United States' motion for summary judgment). Among other things, the OAG's declaration purports to describe in detail the techniques employed in "a variety of offenses related to voter fraud, including but not limited to ballot harvesting, illegal voting, and illegal ballot assistance." *id.* ¶ 6. The testimony is based

---

[1] These amended exhibits ("Amended Exhibit G" to "Amended Exhibit K") list (a) documents that the State has produced in full and therefore no longer require the Court's intervention (highlighted in green); (b) documents for which LUPE Plaintiffs have abandoned any claim and therefore no longer require the Court's intervention (strikethrough); and (c) documents that the State has produced in redacted form but that LUPE Plaintiffs still seek (highlighted in yellow).

3

on information learned in OAG's investigations regarding alleged fraud related to mail ballots (*id.* ¶¶ 11, 17-22, 25, 30, 31, 35, 42, 46), vote harvesting (*id.* ¶¶ 12, 13, 24, 26, 27, 28, 29, 32, 34, 37, 38, 39, 44, 45), in-person voter assistance (*id.* ¶ 11), and other election-related issues (*id.* ¶ 16)—all information contained in the documents withheld by OAG. *See generally*, Amended Ex. K (investigative privilege). The declaration claims that, based on this information learned in investigations, "the ID requirement of SB1 with regard to applications for ballots by mail and mail-in ballots is both reasonably calculated and necessary to eliminate several common types of voter fraud." *Id.* ¶ 6.

The State thus improperly relies on this purported evidence in its own briefing while simultaneously withholding related information here. As the Fifth Circuit has emphasized, when a party "uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *See Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005); *see also Nguyen v. Excel Corp*, 197. F.3d 200, 205-08 (5th Cir. 1999). As such, "[w]hen a party puts privileged matter in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject." *See* 8 Fed. Prac. & Proc. Civ. § 2016.2 (3d ed.); *see also Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 439 (W.D. Tex. 2017). Because the State "seeks to use the investigation[s]" to support its "defense . . . while at the same time invoking the privilege to deny Plaintiffs' access" to any of those investigations, the State has waived the privilege as to the remaining documents at issue in the possession of OAG. *See Doe 1 v. Baylor Univ.,* 335 F.R.D. 476, 496 (W.D. Tex. 2020). Those documents—all of which are listed in Amended Exhibit K—must therefore be disclosed.

### III. The Deliberative Process Does Not Protect the Remaining Documents Withheld by the State.

The State has withdrawn its assertion of the deliberative process privilege over all but two documents. *See* Dkt. 650 at 13 n.5. But those two documents—which relate to SOS's risk-limiting audit—contain factual information outside of the scope of the privilege, and the privilege should still yield even where applicable. Amended Ex. J.

As an initial matter, the State has waived its ability to assert the deliberative process privilege as to these documents. With its response brief, the State includes an invocation of the deliberative process privilege by Christina Adkina, the Director of the SOS Elections Division, *see* Dkt. 650-1 ¶ 2, consistent with the requirement that an agency official—not trial counsel—must invoke the deliberative process privilege, *see League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *3 (W.D. Tex. Aug. 10, 2022). However, "the proper time to make the showing that certain information is privileged is at the time the privilege is asserted," *Nevada Partners Fund, LLC v. United States*, No. CIVA306CV379-HTW-MTP, 2008 WL 2484198, at *5 (S.D. Miss. May 12, 2008), "not . . . when the matter is before the Court on a motion to compel," *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 562 n.5 (S.D. Ind. 2004). Because an SOS official did not attempt to invoke the privilege until the State's response to the instant motion, the State has waived the privilege as to the documents in Amended Exhibit J.

Even absent waiver, the deliberative process privilege does not shield these documents. The State does not dispute—much less acknowledge—that "[f]actual information may be protected" by the deliberative process privilege "only if it is inextricably intertwined with policy-making processes[.]" *Stokes v. Brennan*, 476 F.2d 699, 703 (5th Cir. 1973); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (emphasis added) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-54 (1975)). The two remaining documents relate to a risk-limiting audit

of the November 2022 General Election that SOS was required to conduct in accordance with Section 127.305 of the Texas Election Code. The State acknowledges that there are "facts articulated" in those documents. *See* Dkt. 650 at 13. Indeed, these documents contain quintessential fact-based information, based on the State's own characterization of the audit as "a post-election tabulation audit that manually inspects randomly sampled, voter-verifiable paper ballots in order to confirm the outcome of an election to a pre-specified level of confidence." *Id.* at 14 n.6; *see also* Dkt. 630 at 13-15 (collecting examples of factual information similar in kind that is exempt from the privilege).

More specifically, the withheld documents reflect "[d]raft changes to [a] risk-limiting audit pilot report" and SOS's "recommendation to the Legislature for [that] audit." *See* Amended Ex. J. The State has failed to show—as it must—that the facts in the audit-related documents are *inextricably intertwined* with any government deliberation, at most stating that the facts are "subject to change" and asserting that any disclosure "would discourage frank and open discussion among agency staff." Dkt. 650 at 13 (quoting Dkt. 650-1 ¶ 2). Those assertions are not only boilerplate, *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 01:19-cv-800-TSC, 2020 WL 5798442, at *4 (D.D.C. Sept. 29, 2020) (holding similar statement "fails to meaningfully connect the harm of discouraging frank dialogue to the information withheld"), but also fall short of meeting the State's burden to show how disclosure of the information "would inevitably reveal the government's deliberations," *In re Sealed Case*, 121 F.3d at 737. Indeed, *MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008)—on which the State relies for its assertion that the documents here are subject to the deliberative process privilege, Dkt. 650 at 13—emphasizes that "a document is not deliberative where it concerns purely factual information regarding, for example, investigative matters or factual observations" and that "factual findings and conclusions, as opposed to opinions

6

and recommendations, are not protected." *MacNamara*, 249 F.R.D. at 78 (quotations omitted). Accordingly, any factual information in the documents listed in Amended Exhibit J must be produced.

The State has also failed to refute that, even where applicable, the deliberative process should yield. As an initial matter, the State does not address—and therefore has conceded—that the seriousness of the litigation and the role of the government both favor disclosure. *See In re Sealed Case*, 121 F.3d at 737-38. For the reasons discussed in LUPE Plaintiffs' opening brief, those factors strongly weigh in favor of the privilege yielding here. *See* Dkt. 630 at 16-17.

The State's arguments regarding the remaining factors are unavailing. The first factor—relevance—still favors disclosure. Despite the State's assertions otherwise, the documents are relevant to, at a minimum, LUPE Plaintiffs' effects-based claims. The State suggests that, because "[t]his risk-limiting audit was established in the 87th Regular Session"—before SB1 was enacted—the document necessarily is irrelevant. *See* Dkt. 650 at 14. But regardless of the date of enactment of the legislation that created the audit program, the State fails to acknowledge that the audit program commenced with the November 2022 General Election. *See* Tex. Elec. Code § 127.305(a). Thus, the withheld documents reflect SOS agency actions while SB1 was in effect, and therefore bear on the potential discriminatory effects of SB1. Despite the State's argument that the audit "does not address the implementation of any of the provisions challenged in this litigation," it may still address the effects of challenged provisions of SB1. Indeed, the State's own descriptions indicate that at least one of the documents contains the Election Division's draft "recommendation to the Legislature for the election audit," which may include information relating to election protocols at issue in the instant suit. *See* Amended Ex. J (DOC_0808748).

The second factor—availability of other evidence—likewise favors disclosure. The State perplexingly asserts that LUPE Plaintiffs "had ample opportunity to discover information" regarding the challenged documents since the effective date of Texas Election Code Section 127.305 (September 1, 2021)—including "through production requests." Dkt. 650 at 14. But these documents necessarily could not have been created until *after* the November 2022 General Election, *see* Tex. Elec. Code § 127.305(a), and in fact were created *after* LUPE Plaintiffs served its February 15, 2023 document requests to SOS, *see* Amended Ex. J (documents dates of 2/16/2023 and 2/27/2023). Because LUPE Plaintiffs seek the withheld documents from the only entity that possesses the information (SOS), the second factor—availability of other evidence— weighs in favor of production. *See* Dkt. 630 at 16-17.

Finally, regarding the fifth factor—the possibility of future timidity by government employees—the State offers mere boilerplate assertions of a possible chilling effect. As discussed above, the State "falls short of meaningfully connecting [any] harm" of disclosure "to the specific information withheld." *See Jud. Watch*, 2020 WL 5798442, at *4.² As such, any chilling effect is, at best, "minimal" because the State has failed to "articulate how" SOS officials "may be 'chilled' in the performance of their investigations [or] how disclosure may impact future investigations." *See Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *4 (W.D. Tex. Nov. 17, 2014).

Thus, even where applicable, the deliberative process should yield for the documents in Amended Exhibit J. *See* Dkt. 630 at 15-17.

---

² The State also argues, without any support, that the possibility of changes to future drafts mean the documents "have as much likelihood to mislead as to illuminate." *See* Dkt. 650 at 13. To the extent that the fifth factor implicates the possibility of "public confusion," the State "has failed to provide more than speculation that disclosure of the drafts would cause public confusion." *Jud. Watch*, 2020 WL 5798442, at *3.

8

### IV. The State Continues to Withhold Documents Based on Improper Assertions of the Attorney-Client Privilege.

In its June 30, 2023 production, the State produced four documents—two in full, and two redacted—of the thirty-one documents still in dispute. *See* Ex. Amended Exhibits G, H, and I.[3] Because the majority of documents that LUPE Plaintiffs sought have not been produced, and the State's redactions improperly withhold information that should be disclosed, LUPE Plaintiffs maintain that the State has improperly invoked the attorney-client privilege.

These documents contain underlying factual information that is not subject to the privilege. *See* Amended Exhibit H. The State concedes, as it must, that "the attorney-client privilege does not extend to underlying facts." Dkt. 650 at 11. But the State asserts that, because the attorney-client "privilege 'protects disclosure of *communications*,'" *id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)), the entirety of each of the documents in Amended Exhibit H must necessarily be privileged.

That assertion contradicts the well-settled principle that the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395. Indeed, as the Fifth Circuit has emphasized, "a fact is not privileged 'merely because [a client] incorporated a statement of such fact into his communication to his attorney.'" *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (quoting *Upjohn*, 449 U.S. at 396). And as the Court previously emphasized, "[f]acts within the client's knowledge are not protected by the attorney-client privilege, 'even if the client learned those facts through communications with counsel.'" *La Union Del Pueblo Entero ("LUPE") v. Abbott*, No. 3:21-cv-

---

[3] In its original exhibits accompanying LUPE Plaintiffs' opening brief, LUPE Plaintiffs inadvertently included two exhibits withheld based only on the attorney-client privilege on Exhibit K: STATE177217 and DOC_0820978. LUPE Plaintiffs have corrected that error, and now include those documents at the bottom of Amended Exhibits G and H.

00844-XR, 2022 WL 1667687, at *7 (W.D. Tex. May 25, 2022), *rev'd on other grounds sub nom.*, *LULAC Texas v. Hughes*, 68 F.4th 228 (5th Cir. 2023) (noting that "communications concern[ing] 'solicited information about incidents of voting misconduct'" concern facts, not legal advice). As such, courts in this Circuit have routinely required the disclosure of underlying facts in communications between attorneys and clients. *See* Dkt. 630 at 8-9 (collecting examples of factual information). Consistent with that approach, any underlying factual information in the documents in Amended Exhibit H—including information about alleged voting misconduct, election procedures, details about the implementation of SB1, election results, investigations, and reports authored by the agency—is not protected by the attorney-client privilege. *See id.* at 8-10.

In addition, the State has failed to establish that the documents in Amended Exhibit G were created or sought for the *primary* purpose of legal advice. The State attempts to meet its burden by emphasizing broadly that the documents reflect "communications seek[ing] information about how the law applies to specific scenarios and the resulting legal implications," and that the documents are thus "predominantly legal in nature." Dkt. 650 at 11. But as the Fifth Circuit has emphasized, "simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

Further, despite the State's conclusory assertions otherwise, the descriptions of the documents in Amended Exhibit G "do not pertain to the rendering of . . . legal services" but instead reflect "advice on political, strategic, or policy issues" that are not "shielded from disclosure." *League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 232 (W.D. Tex. 2022) (first quoting, *Perez v. Perry*, No. 5:11-cv-360-OLG-JES-XR, 2014 WL 3359324, at *1 (W.D. Tex. July 9, 2014); then quoting, *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)). After all, "[t]o draw

an analogy to the business context, a manager with a law degree does not get to shield her communications with the CEO simply because any business decision, like any [agency] decision, can have legal consequences." *Perez*, 2014 WL 3359324, at *1. And even to the extent that "there are dual reasons (say, legal and policy) for creating a document, '[the Court] should consider the context' and determine the document's 'manifest purpose.'" *League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *5 (W.D. Tex. Aug. 10, 2022) (quoting *BDO USA*, 876 F.3d at 696).

Thus, for example, documents relating to SOS reports and recommendations to the Texas Legislature reflect political, strategic, or policy issues, especially in light of their connection to developing legislation. Amended Ex. H (DOC_0806487 and DOC_0808748). In a similar vein, documents related to agency responsibilities regarding election protocols or communications about election procedures reflect advice primarily on strategic or policy decisions by the agency. *See, e.g., id.* (DOC_0808839, DOC_0815319, DOC_0834531). Because the State has failed to show—with sufficient specificity—that these and the other documents in Amended Exhibit G were created primarily for the purpose of seeking legal advice, *see BDO USA*, 876 F.3d at 695, these documents are not protected by the attorney-client privilege, *see* Dkt. 630 at 6-8.

Finally, the State has still failed to show that certain documents shared among only SOS attorneys were part of an attorney-client relationship. *See* Amended Ex. I; *see also* Dkt. 630 at 10. The State makes two arguments regarding this point, but neither satisfies its burden here.

First, the State incorrectly asserts that the documents are privileged because they reflect communications "between SOS employees (*i.e.*, the client) and its legal counsel (*i.e.,* the attorneys)," and relies on *Greater New York Taxi Ass'n v. City of New York*, 13-cv-3089-VSB-JCF, 2017 WL 4012051, at *11 (S.D.N.Y. Sept. 11, 2017) for the proposition that a

11

communication between two government attorneys is privileged where one of the attorneys "plays the role as the requester of legal advice on behalf of the agency." Dkt. 650 at 12 (cleaned up). As an initial matter, the State relies on a single out-of-circuit case for this proposition. But even if the logic of *Greater New York* applies, that case shows how the State has failed to meet its burden. In that case, the court determined that memoranda involving decisions concerning possible prosecution against taxi companies were privileged. *Greater New York*, 2017 WL 4012051, at *11. The court emphasized that the documents showed that one attorney gave legal advice to another attorney (the "requester of legal advice" on behalf of the agency) about how to proceed in any prosecution against those companies, and that the requesting attorney in turn used that advice "to decide what enforcement actions the agency (the client) would take." *Id.*

Here, by contrast, the State has failed to establish (1) which, if any, attorney requested information on behalf of the agency and which attorney gave advice; (2) to what extent, if any, the requesting attorney used the information on behalf of the agency; and as discussed above, (3) that the communications were for the primary purpose of seeking legal advice for the agency. In such circumstances, courts have concluded that communications between two government attorneys are in fact *not* privileged. *Jackson v. City of New York*, No. 01:05-cv-721-RWS-MHD, 2006 WL 2789990, at *3 (S.D.N.Y. Sept. 27, 2006).

*Jackson* is instructive. In that case, the court held that a memorandum authored by a governmental attorney in the city's police department and sent to a supervising governmental attorney in the same office was not privileged. *Id.* at *1, *3. The memorandum summarized the results of an investigation into two officers' alleged improper conduct and made recommendations as to appropriate disciplinary action, *id.* at *1, and the memorandum "was provided to the

supervisor for the stated purpose of giving him information and analysis that would, in turn, assist him in providing a recommendation to anyone else in the" office, *id.* at *3.

As the *Jackson* court emphasized, and as here, "[t]he problem with defendants' invocation of [the attorney-client] privilege is that the communication in question was not between a lawyer and a client; it was, rather, a communication between two attorneys, with no indication that any advice contained in it was to be communicated to a client," with at most "defendants only vaguely identify[ing] the [government agency] as a possible client." *Id.* at *2. Further, the court emphasized that, although the "decision-making process" resulting from this memorandum eventually "led to a binding decision by" a different individual (the head of the office), that individual "[could not] properly be described as a client." *Id.* at *3. As the court noted, "were it otherwise, communications by a law firm associate to the partner in charge of a case would be deemed attorney-client privileged even though the communication was not intended to be conveyed to the law firm's client . . . . That is of course not the law." *Id.* Thus, because the withholding party in *Jackson* "fail[ed] to identify any communication from the attorneys in the [governmental agency] to anyone in [that agency] who might qualify as a client, much less show that" the communication was for the primary purpose of providing legal advice, the attorney-client privilege did not apply. *Id.* For the reasons already discussed, that same conclusion applies to the documents in Amended Exhibit I. *See Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (emphasizing law firm must establish that "the document contains a confidential communication, *between it and a client*, made with the client's primary purpose having been securing either a legal opinion or legal services, or assistance in some legal proceeding" (emphasis added) (quotation omitted)).

Second, the State relies on *Nguyen v. Excel Corporation*, 197 F.3d 200 (5th Cir. 1999) to justify withholding documents never shared with a client, noting that the Fifth Circuit in that case stated that "[t]he research undertaken by an attorney to respond to a client's request [for advice] also falls within the reaches of the [attorney-client] privilege." Dkt. 650 at 12 (quoting *Nguyen*, 197 F.3d at 206). But the State excises this quote from its context in *Nguyen*, and in doing so makes an argument that contradicts U.S. Supreme Court and Fifth Circuit precedent regarding the scope of the attorney-client privilege.

Indeed, the U.S. Supreme Court has emphasized that the attorney-client privilege "does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories" created in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). As such, the Fifth Circuit has emphasized that "[d]ocuments and materials developed by a lawyer for use in or in anticipation of litigation are not protected by the attorney-client privilege." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treas.*, 768 F.2d 719, 721 (5th Cir. 1985). Indeed, as the State emphasized, the attorney-client privilege focuses on communications with clients. *See* Dkt. 650 at 11; *see also Taylor Lohmeyer*, 957 F.3d at 510.

The Fifth Circuit's decision in *Nguyen* is entirely consistent with these well-settled principles. The *Nguyen* court did not broadly hold that legal research was privileged even if the research was never shared with a client. Rather, the issue in *Nguyen* was whether communications between attorneys and clients regarding "legal research undertaken by their attorneys" implicated the privilege. *See* 197 F.3d at 208 (noting clients "testified about privileged attorney-client

14

*communications*" (emphasis added)). Indeed, and as the State fails to acknowledge, the Fifth Circuit in *Nguyen* noted that "an attorney's mental impressions and opinions fall *outside* of the attorney-client privilege." 197 F.3d at 210 (emphasis added).[4] Thus, because the documents in Amended Exhibit I do not reflect communications with a client, they are not privileged.

### V.   The Investigative Privilege Does Not Bar Disclosure.

The State has failed to establish that the investigative privilege shields the documents listed in Amended Exhibit K.

As an initial matter, in its response, the State has not met its burden to show that the privilege applies at the time the privilege is asserted. The State indicates that it has done an "initial review" regarding whether the withheld documents are the subject of active ongoing criminal investigations—without specifying when that review occurred—and indicate simply that, "to the best of their knowledge," each document contains privileged information. Dkt. 650 at 7. But it is the State's burden to establish that the privilege applies, and it must be able to represent that it has determined at the time the privilege is asserted that the documents reflect active ongoing criminal investigations. *See Roque v. City of Austin*, No. 1-17-cv-932-LY-AWA, 2018 WL 5848988, at *5 (W.D. Tex. Nov. 7, 2018) ("the party resisting discovery . . . bears the burden of demonstrating the existence of a privilege") (citing *Hodges*, 768 F.2d at 721); *Perez*, 2014 WL 3495414, at *2. Because it has not done so, the State has failed to assert that the investigative privilege applies to all of the documents in Amended Exhibit K.

---

[4] The Fifth Circuit has indicated that the work product doctrine may implicate some of these materials. *See Nguyen*, 197 F.3d at 210; *see also Adams*, 973 F.3d at 349. But the State cannot conflate the scope of attorney-client privilege and the work product doctrine because "the work-product doctrine is distinct from and broader than the attorney-client privilege." *Id.* (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)). In any event, because the State has not asserted the work product doctrine regarding the documents in Amended Exhibit I, the State has waived any reliance on that doctrine.

15

Regardless of whether any of the documents in Amended Exhibit K reflect active ongoing criminal investigations, the State still fails to show that the privilege should apply. As articulated in LUPE Plaintiffs' opening brief, the *Frankenhauser* factors strongly favor disclosure. *See* Dkt. 630 at 19-22. That is especially so given the nature of LUPE Plaintiffs' claims and that the withheld information is uniquely in the possession of OAG and SOS. *See Roque*, 2018 WL 5848988, at *4-5. The State fails to acknowledge that courts have repeatedly held that in civil rights suits, such as here, there is a presumption in favor of disclosure.[5]

Further, the State's arguments regarding the *Frankenhauser* factors do not counsel otherwise. The State attempts to undercut the relevance of any of the withheld documents, but as the LUPE Plaintiffs discussed in their opening brief, the evidence sought here is highly relevant to LUPE Plaintiffs' intent-based claims, as information in the withheld documents prior to or around the enactment of SB1 reflect circumstantial evidence that bears on those claims. *See Veasey v. Abbott*, 830 F.3d 216, 230-31 (5th Cir. 2016). Further, internal communications regarding the implementation of SB1 and information collected regarding the potential discriminatory effects of that implementation would not otherwise be publicly available. *See* Dkt. 630 at 16-17, 21-22. Indeed, as discussed above, the State has effectively conceded that the withheld information is relevant, relying on information derived from its claimed voter fraud investigations in its declaration accompanying its June 24, 2023 response in opposition to the United States's motion for summary judgment. *See supra*, Section II.

---

[5] *See, e.g., Roque*, 2018 WL 5848988, at *5 ("A court should exercise special caution in recognizing a privilege in a civil rights case . . ."); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y 2010) ("Another important factor is whether a lawsuit involves a matter of public concern such as civil rights—a factor that will usually support disclosure."); *Tuite v. Henry*, 181 F.R.D. 175, 180 (D.D.C. 1998) ("Typically, courts require reports containing both factual and evaluative materials to be disclosed in civil rights actions brought pursuant to 42 U.S.C. § 1983.")

The State also broadly asserts that the disclosure of the withheld documents could compromise its "ability to investigate and, when warranted, prosecute violations of its criminal laws," and emphasizes the importance of maintaining confidentiality in connection with those efforts. Dkt. 650 at 8. But the State does not draw any specific connection between disclosure and consequent risk of its ability to investigate and prosecute, and it fails to account for the fact that complaints eventually become public records and that the complaint form itself states in bold and all-caps on the signature page: "NOTICE: THIS COMPLAINT IS NOT CONFIDENTIAL; ONCE REVIEWED BY THE SECRETARY OF STATE, IT WILL BE TREATED AS A PUBLIC RECORD," *see, e.g.,* Reply Ex. C at 6, 11, and 17. Consistent with that statement on the complaint form, the State's privilege log already reveals a number of the complainants' names and email addresses, undercutting any concern about confidentiality. *See, e.g.*, Amended Ex. K (DOC_0805440; DOC_0805430; DOC_0823829). And to the extent that the State can assert any valid concern regarding identifying information (such as names and addresses), redaction of that information can protect those interests.[6] *See Coughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir. 1991).

Thus, consistent with the analysis by other courts in this Circuit, the *Frankenhauser* factors favor disclosure here. *See Roque*, 2018 WL 5848988, at *5 (W.D. Tex. 2018). The State attempts to distinguish *Roque* by asserting that, in *Roque*, the plaintiffs "did not request core documents from case files that would have implicated the city's investigation into any alleged criminal activity directly." Dkt. 650 at 10. Not so. As the *Roque* court emphasized, disclosure was warranted

---

[6] The State also emphasizes possible harassment and reputational harms of individuals alleged to have committed election fraud. Dkt. 650 at 9. As an initial matter, the *Frankenhauser* factors contemplate only any "impact upon *persons who have given* information"—not any individuals named in a complaint. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006) (emphasis added). Regardless, the State has merely speculated about potential harm, and fails to address how narrow redactions would not avert this concern.

17

"[e]ven if . . . the files are part of an ongoing criminal investigation," 2018 WL 5848988, at *4, and the court ordered disclosure of documents such as "video and audio recordings, Internal Affairs investigation files, and use of force reports" even if they revealed information that was related to an ongoing criminal investigation, *see id.* at *5. *Roque* therefore is not distinguishable, and supports disclosure here.

As such, for the foregoing reasons and the reasons asserted in LUPE Plaintiffs' opening brief, the investigative privilege does not shield the documents in Amended Exhibit K, and the State must produce those documents. Dkt. 630 at 18-22.

## VI.   Conclusion

For the foregoing reasons, LUPE Plaintiffs respectfully request that the Court grant their motion to compel regarding the documents listed in Amended Exhibits G through K. *See* Dkt. 630.

Dated:  July 7, 2023                                   Respectfully submitted,

/s/ *Nina Perales*
Nina Perales (TX Bar No. 24005046)
Julia R. Longoria (TX Bar No. 24070166)
Fátima L. Menéndez (TX Bar No. 24090260)
Kenneth Parreno (MA BBO No. 705747)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org
fmenendez@maldef.org
kparreno@maldef.org

Michael C. Keats*
Rebecca L. Martin*

/s/ *Sean Morales-Doyle*
Sean Morales-Doyle (NY Bar No. 5646641)
Patrick A. Berry (NY Bar No. 5723135)
Jasleen K. Singh (CA. Bar No. 316596)
Eliza Sweren-Becker (NY Bar No. 5424403)
Andrew B. Garber (NY Bar No. 5684147)
Leah J. Tulin (MD No. 0812180236)
BRENNAN CENTER FOR JUSTICE AT NYU
SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: (646) 292-8310
Facsimile: (212) 463-7308
sean.morales-doyle@nyu.edu
patrick.berry@nyu.edu
jasleen.singh@nyu.edu
eliza.sweren-becker@nyu.edu
andrew.garber@nyu.edu
tulinl@brennan.law.nyu.edu

Paul R. Genender (TX Bar No. 00790758)

Jason S. Kanterman*
Kevin Zhen*
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com
kevin.zhen@friedfrank.com

*Attorneys for Plaintiffs*
LA UNIÓN DEL PUEBLO ENTERO, SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT, MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS, TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION, JOLT ACTION, WILLIAM C. VELASQUEZ INSTITUTE, FIEL HOUSTON INC

*Admitted pro hac vice

Elizabeth Y. Ryan (TX Bar No. 24067758)
Matthew Berde (TX Bar No. 24094379)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
paul.genender@weil.com
liz.ryan@weil.com
matt.berde@weil.com
megan.cloud@weil.com

COUNSEL FOR
FRIENDSHIP-WEST BAPTIST CHURCH, SOUTHWEST, AND TEXOMA, TEXAS IMPACT, JAMES LEWIN


*Admitted pro hac vice

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 7th day of July 2023.

/s/ Nina Perales
Nina Perales