UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al.,<br>*Plaintiffs,*<br>v.<br><br>GREGORY W. ABBOTT, et al.,<br>*Defendants.* | 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, et al.,<br>*Plaintiffs,*<br>v.<br><br>JANE NELSON, et al.,<br>*Defendants.* | 1:21-CV-0780-XR |

**OCA PLAINTIFFS' APPENDIX IN SUPPORT OF THEIR REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

1. Deposition of Keith Ingram, April 28, 2022 ………………………………………4
2. Deposition of Keith Ingram, March 28, 2023 ……………………………………20
3. Deposition of Frank Phillips ……………………………………………………35
4. REVUP-Texas 30(b)(6) Deposition of Bob Kafka ………………………………45
5. OCA-GH 30(b)(6) Deposition of Deborah Chen …………………………………58
6. State Defendants' Supplemental Objections and Responses to the United States' Second Set of Interrogatories……………………………………………………72
7. Harris County District Attorney's First Amended Responses to OCA-GH's Second Set of Interrogatories ……………………………………………87
8. Travis County District Attorney's Amended Objections and Responses to OCA-GH's First Set of Interrogatories ……………………………………96
9. OCA-GH's First and Third Amended Objections and Responses to State Defendants' First Set of Interrogatories …………………………………………108
10. LWVTX's First and Third Amended Objections and Responses to State Defendants' First Set of Interrogatories …………………………………………151
11. REVUP-Texas's First and Third Amended Objections and Responses to State Defendants' First Set of Interrogatories……………………………………195
12. Federal Postcard Application …………………………………………………236
13. Deposition of Pamiel Gaskin ……………………………………………………239

Dated: July 14, 2023

*/s/ Zachary Dolling*
Zachary Dolling
Texas Bar No. 24105809
Hani Mirza

Texas Bar No. 24083512
Sarah Chen*
California Bar No 325327
Veronikah Warms*
Texas Bar No 24132682
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org
Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
PETER HOFER
Texas State Bar No. 09777275
CHRISTOPHER MCGREAL
Texas State Bar No. 24051774
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org
phofer@drtx.org
cmcgreal@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
**JENNER & BLOCK LLP**

2

1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com


Gregory D. Washington*
**JENNER & BLOCK LLP**

455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

***COUNSEL FOR OCA-GREATER HOUSTON PLAINTIFFS.***
*admitted *pro hac vice*

# Exhibit 1



**In The Matter Of**

**La Union Del Pueblo Entero, et al.,**

**Plaintiffs**

**v**

**State Of Texas, et al.,**

**Defendants**

**CASE**

**5:21-cv-844**

**Date**

**4-28-2022**

**Witness**

**Brian Keith Ingram, J.D.**

## Certified Copy Transcript

**National Court Reporters Inc.  ·  888.800.9656  ·
NationalCourtReporters.com
NCRNetwork@nationalcourtreporters.com**

Serving Legal Professionals From Coast To Coast and Internationally

1            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3    LA UNION DEL PUEBLO        §
     ENTERO, ET AL.,            §
4         Plaintiffs,       §  Civil Action No.
                            §  5:21-cv-844 (XR)
5    VS.                    §  (Consolidated Cases)
                            §
6    STATE OF TEXAS, ET AL.     §
          Defendants.       §
7    *************************************************

8                    ORAL DEPOSITION OF
                  BRIAN KEITH INGRAM, J.D.
9             CORPORATE REPRESENTATIVE FOR THE
              TEXAS SECRETARY OF STATE OFFICE
10                    APRIL 28, 2022

11   *************************************************

12        ORAL DEPOSITION OF BRIAN KEITH INGRAM, J.D.,

13   CORPORATE REPRESENTATIVE FOR THE TEXAS SECRETARY OF

14   STATE OFFICE produced as a witness at the instance of

15   the Plaintiffs and Plaintiff-Intervenors, and duly

16   sworn, was taken in the above-styled and numbered cause

17   on the 28th day of April 2022, from 9:03 a.m. to

18   3:18 p.m., before Caroline Chapman, CSR in and for the

19   State of Texas, reported by Computerized Stenotype

20   Machine, Computer-Assisted Transcription, held at the

21   rice Daniel Sr State Office Building, 209 West 14th

22   Street, Austin, Texas, and via web-based conference

23   pursuant to the Federal Rules of Civil Procedure.

24

25

| | |
|---|---|
| 1 | A P P E A R A N C E S |
| 2 | COUNSEL FOR THE PLAINTIFFS AND PLAINTIFF-INTERVENORS: |
| 3 | MR. DANIEL J. FREEMAN<br>RICHARD A. DELLHEIM |
| 4 | Attorneys, Voting Section<br>Civil Rights Division |
| 5 | U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530 |
| 6 | (202) 305-4355<br>daniel.freeman@usdoj.gov |
| 7 | richard.dellheim@usdoj.gov |
| 8 | |
| 9 | COUNSEL FOR THE DEFENDANTS, THE OFFICE OF SECRETARY OF<br>STATE: |
| 10 | KATHLEEN HUNKER<br>JEFF WHITE |
| 11 | Special Litigation Unit<br>Office of the Attorney General of Texas |
| 12 | P.O. Box 12548<br>Austin, TX 78711-2548 |
| 13 | kathleen.hunker@oag.texas.gov<br>jeff.white@oag.texas.gov |
| 14 | ADAM BITTER |
| 15 | General Counsel<br>Office of the Secretary of State |
| 16 | Capitol Building, Room 1E.8<br>P.O. Box 12697 |
| 17 | Austin, TX 78711-2697<br>(512) 475-2813 Fax (512) 475-2761 |
| 18 | abitter@sos.texas.gov |
| 19 | COUNSEL FOR THE STATE OF TEXAS ATTORNEY GENERAL'S<br>OFFICE: |
| 20 | WILLIAM THOMAS "WILL" THOMPSON<br>ZACHARY LOUIS RHINES |
| 21 | Assistant General Counsel<br>Attorney General of Texas |
| 22 | Office of Special Litigation<br>P.O. Box 12548 (MC 009) |
| 23 | Austin, TX 78711-2548<br>(512) 936-2567 Fax: (512) 457-4410 |
| 24 | will.thompson@oag.texas.gov<br>zachary.rhines@oag.texas.gov |
| 25 | |

```
 1            A P P E A R A N C E S (CONTINUED)

 2   COUNSEL FOR THE LUPE PLAINTIFFS:
          JASON S. KANTERMAN
 3        REBECCA MARTIN
          FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP
 4        One New York Plaza
          New York, NY 10004
 5        (212) 859-8519 Fax:  (212) 859-4000
          Jason.Kanterman@friedfrank.com
 6        Rebecca.martin@friedfrank.com

 7
     HOUSTON AREA URBAN LEAGUE PLAINTIFFS:
 8        GEORGINA YEOMANS
          Assistant Counsel
 9        NAACP Legal Defense and Educational Fund, Inc.
          700 14th Street, NW 6th Floor
10        Washington, DC 20005
          (917) 841-5947
11        gyeomans@naacpldf.org

12
     COUNSEL FOR MI FAMILIA VOTA PLAINTIFFS:
13        WENDY OLSON
          STOEL RIVES, LLP
14        101 South Capitol Boulevard, Suite 1900
          Boise, ID 83702
15        (208) 387-4291
          wendy.olson@stoel.com

16

17   COUNSEL FOR YVONNE RAMÓN ELECTIONS ADMINISTRATORS OF
     HIDALGO COUNTY:
18        LEIGH ANN LEAVELL TOGNETTI (videoconference)
          Hidalgo County District Attorney's Office
19        100 East Cano, Courthouse Annex III, 1st Floor
          Edinburg, TX 78539
20        (956) 292-7609 EXT 8182
          Leigh.tognetti@da.co.hidalgo.tx.us

21

22   COUNSEL FOR REVUP:
          LIA SIFUENTES DAVIS
23        Disability Rights Texas
          2222 West Braker Lane
24        Austin, TX 78758
          (512) 407-2763
25        ldavis@drtx.org
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656

3 Brian Keith Ingram JD

**Page: 3**

OCA-REPLY-APPX-008

```
 1            A P P E A R A N C E S (CONTINUED)

 2   COUNSEL FOR DEFENDANT TRAVIS COUNTY CLERK REBECCA
     GUERRERO AND DISTRICT ATTORNEY JOSÉ P. GARZA:
 3        ANTHONY "TONY" NELSON (via videoconference)
          Civil Litigation Division of the Travis County
 4        Attorney's Office
          P.O. Box 1748
 5        Austin, TX 78767-1748
          (512) 854-9513 Fax: (512) 854-4808
 6        tony.nelson@traviscountytx.gov

 7

 8   COUNSEL FOR DEFENDANTS BEXAR COUNTY DISTRICT ATTORNEY
     JOE GONZALES AND BEXAR COUNTY ELECTIONS ADMINISTRATOR
     JACQUELYN CALLANEN:
 9        LAURA DURBIN
          Appellate Division
10        Assistant District Attorney Civil Division
          101 West Nueva Street, 7th Floor
11        San Antonio, TX 78205
          (210) 335-2142 Fax: (210) 335-2773
12        laura.durbin@bexar.org

13

14   COUNSEL FOR ISABEL LONGORIA WITH THE HARRIS COUNTY
     ATTORNEY'S OFFICE:
15        SUSANNAH MITCHAM
          Assistant County Attorney
16        Office of the Harris County Attorney
          1019 Congress, 15th Floor
17        Houston, TX 77002
          (713) 274-5334
18        Susannah.Mitcham@cao.hctx.net

19   COUNSEL FOR HARRIS COUNTY ATTORNEY'S OFFICE:
20        CHRISTIAN D. MENEFEE
          Office of the Harris County Attorney
21        1019 Congress, 15th Floor
          Houston, Texas 77002
          (713) 755-5101 Fax:  713-755-8924
22

23

24

25
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-009

4 Brian Keith Ingram JD

**Page: 4**

Case 5:21-cv-00844-XR   Document 665-1   Filed 07/14/23   Page 10 of 248

**5:21-cv-844 (XR)**
**4/28/2022**

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 5

**5**

```
 1          A P P E A R A N C E S (CONTINUED)

 2   COUNSEL FOR DEFENDANT LISA WISE, IN HER OFFICIAL
     CAPACITY AS THE EL PASO COUNTY ELECTIONS ADMINISTRATOR:
 3          SHARON S. SONG
            KELSEY ROSE SPECTOR
 4          COOLEY LLP
            3 Embarcadero Center, 20th Floor
 5          San Francisco, CA  94111-4004
            (415) 693-2027 Fax: (415) 693-2222
 6          ssong@cooley.com
            kspector@cooley.com
 7

 8   COUNSEL FOR PLAINTIFFS FIEL HOUSTON, INC., MEXICAN
     AMERICAN BAR ASSOCIATION OF TEXAS, TEXAS IMPACT, WILLIAM
 9   C. VELASQUEZ INSTITUTE, DELTA SIGMA THETA SORORITY INC.,
     HOUSTON AREA URBAN LEAGUE, THE ARC OF TEXAS, AND JEFFREY
10   LAMAR CLEMMONS:
            LINDSEY ROBIN
11          REED SMITH LLP
            2850 North Harwood Street, Suite 1500
12          Dallas, TX  75201
            (469) 680-4222 Fax:  (469) 680-4299
13          lrobin@reedsmith.com

14
     Also Present:  Nick Adkins, Law Clerk at Fried Frank
15
                 Jonathan Bash, Law Clerk at Fried Frank
16                   Harris Shriver and Jacobson

17               Josephine Ramirez

18               Barbara Nichols

19               Juan Estrada

20               Julie Longoria

21

22

23

24

25
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-010

5 Brian Keith Ingram JD
**Page: 5**

```
 1                    I N D E X

 2      Appearances  .  .  .  .  .  .  .  .  .  .      2

 3      BRIAN KEITH INGRAM, J.D.

 4                              PAGE
        Examination by Mr. Freeman   .  .  .  .  .      7
 5      Examination by Mr. Kanterman  .  .  .  .  .    142
        Examination by Mr. Freeman   .  .  .  .  .    198
 6      Signature and Changes   .  .  .  .  .  .  .    206
        Reporter's Certificate  .  .  .  .  .  .  .    208
 7

 8                 E X H I B I T S

 9      NO. DESCRIPTION                       PAGE
        Exhibit 1     Senate Bill No. 1        45
10      Exhibit 2     Oath of Assistance, State001652    51
                      through State001653
11      Exhibit 3     Form 7-58, State001651        77
        Exhibit 4     Application for a Ballot by Mail,   93
12                    State031879
        Exhibit 5     Texas Administrative Code Rule 81.6   105
13      Exhibit 6     Email to Sam Taylor from Kristi Hart   110
                      dated February 16, 2022, State073009
14      Exhibit 7     Election Code, Chapter 84,      114
                      Application for Ballot
15      Exhibit 8     Texas Secretary of State Ballot by   119
                      Mail Tracker
16

17              REQUESTED DOCUMENTS/INFORMATION
        NO. DESCRIPTION                     PAGE
18         copies of the script of those radio ads      6

19         requested, previously, all documents related to 109
           this match
20
           redacted form of the privilege log        152
21
           Mr. Ingram's emails to ascertain whether notes  166
22

23

24

25
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-011

6 Brian Keith Ingram JD

**Page: 6**

1    **A.   I don't know what the numbers would be on that.**

2    Q.   Would it surprise you?

3    **A.   I don't know what the numbers would be on that.**

4    **I don't know if that's a surprise or not.  I have no**

5    **idea.**

6    Q.   Would it be is problem for the architecture of

7    TEAM and the implementation of SB 1 if one in seven

8    voters in Texas had at some point, one in seven

9    registered voters in Texas had at some point been issued

10   more than one DPS ID number?

11            MS. HUNKER:  Objection, form.  Vague,

12   assumes facts not in evidence.

13   **A.   No.**

14   Q.   Why not?

15   **A.   Because they have got the opportunity to**

16   **provide the last four of their social, and because over**

17   **time this is going to -- the information is going to get**

18   **fixed, corrected.**

19   Q.   How is the information going to get fixed or

20   corrected?

21   **A.   By the voter.**

22   Q.   If a voter only has their Texas driver's

23   license number on TEAM and the voter provides both their

24   social security number and their Texas driver's license

25   number, but just as with the last example, the Texas

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-012

**91** Brian Keith Ingram JD

**Page: 91**

1    driver's license number does not match TEAM and the

2    social security number is not in TEAM is the incorrect

3    number, the incorrect Texas driver's license number

4    evidence of fraud or impersonation?

5    **A.  It is not.**

6         MS. HUNKER:  Objection, form.

7    Q.  Why not?

8    **A.  Because it is just the wrong number.**

9    Q.  In that case where the social security number

10   is not in TEAM, would that voter's absentee ballot by

11   mail application be rejected?

12   **A.  Yes.**

13        MS. HUNKER:  Objection, form.

14   Q.  What is the value for election administration

15   in Texas of rejecting that ABBM?

16        MS. HUNKER:  Objection, form.  Vague.

17   **A.  Well, the voter hasn't identified themselves as**

18   **the voter.**

19   Q.  Has the voter provided their name and address

20   under penalty of perjury?

21        MS. HUNKER:  Objection, form.

22   **A.  They have filled out a form with their name and**

23   **address, yes.**

24   Q.  And prior to SB 1, would you have said that

25   that same voter did identify themselves as the voter?

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-013

92 Brian Keith Ingram JD

**Page: 92**

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

| | |
|---|---|
| 1 | MS. HUNKER:  Objection, form. |
| 2 | **A.   If they signed their application, sure.** |
| 3 | Q.   Let's take another voter who has only their |
| 4 | social security number on TEAM.  If that voter provides |
| 5 | only her Texas driver's license number on an absentee |
| 6 | ballot by mail application, is that number that is not |
| 7 | in TEAM evidence of fraud or impersonation? |
| 8 | **A.   It is not.** |
| 9 | MS. HUNKER:  Objection, form. |
| 10 | Q.   Would that ABBM be rejected? |
| 11 | **A.   It would.** |
| 12 | Q.   What is the value for election administration |
| 13 | in Texas for rejecting that absentee ballot by mail |
| 14 | application? |
| 15 | MS. HUNKER:  Objection, form, vague. |
| 16 | **A.   It hasn't identified the voter that -- by the** |
| 17 | **way the law requires.** |
| 18 | Q.   And you agree that the Texas Election Code |
| 19 | requires voters to certify under penalty of perjury that |
| 20 | they are the registered voter requesting or submitting |
| 21 | an absentee ballot? |
| 22 | **A.   I don't know.  I would have to look at an ABBM** |
| 23 | **and see it that statement is on there.** |
| 24 | Q.   Mark this as Exhibit 4. |
| 25 | (Exhibit No. 4 marked.) |

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-014

5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 206

206

```
 1     CHANGES AND SIGNATURE

 2    PAGE        LINE     CHANGE           REASON

 3    _____

 4    _____

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25    _____
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-015

206 Brian Keith Ingram JD
**Page: 206**

5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 207

207

1  _____

2  _____

3  _____

4  _____

5  _____

6          I, BRIAN KEITH INGRAM, J.D., have read the

7  foregoing deposition and hereby affix my signature that

8  same is true and correct, except as noted above.

9

10         _____
          BRIAN KEITH INGRAM, J.D.

11 STATE OF TEXAS     )

12 COUNTY OF TRAVIS  )

13         Before me,_____, on this

14 the day personally appeared BRIAN KEITH INGRAM, J.D.,

15 known to me to be the person whose name is subscribed to

16 the foregoing instrument and acknowledge to me that they

17 executed the same for the purposes and consideration

18 therein expressed.

19         Given under my hand and seal of office

20 this ____ day of _____, 2022.

21

22

23         _____
          NOTARY PUBLIC IN AND FOR

24         THE STATE OF_____

25

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-016

207 Brian Keith Ingram JD

**Page: 207**

5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 208

208

```
1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
2                   SAN ANTONIO DIVISION

3    LA UNION DEL PUEBLO        §
     ENTERO, ET AL.,            §
4         Plaintiffs,       §  Civil Action No.
                            §  5:21-cv-844 (XR)
5    VS.                    §  (Consolidated Cases)
                            §
6    STATE OF TEXAS, ET AL.     §
          Defendants.       §
7    ****************************************************

8              REPORTER'S CERTIFICATION

9              ORAL DEPOSITION OF

10             BRIAN KEITH INGRAM, J.D.

11                  APRIL 28, 2022

12   ****************************************************

13        I, CAROLINE CHAPMAN, Certified Shorthand

14   Reporter in and for the State of Texas, hereby certify

15   to the following:

16        That the witness, BRIAN KEITH INGRAM, J.D.

17   was duly sworn by the officer and that the transcript of

18   the oral deposition is a true record of the testimony

19   given by the witness;

20        That the deposition transcript was

21   submitted on May 2, 2022, to the witness or to the

22   attorney for the witness for examination, signature, and

23   return to me within 20 days;

24        That the amount of time used by each party

25   at the deposition is as follows:
```

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-017

208 Brian Keith Ingram JD
**Page: 208**

5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 209

**209**

 1           Mr. Freeman - Two hours and fifty-five

 2    minutes.

 3           Mr. Kanterman - One hour and twenty-two

 4    minutes.

 5           That pursuant to information given to the

 6    deposition officer at the time said testimony was taken,

 7    the appearance page includes all parties of record.

 8           I further certify that I am neither

 9    counsel for, related to, nor employed by any of the

10    parties or attorneys in the action in which this

11    proceeding was taken, and further that I am not

12    financially or otherwise interested in the outcome of

13    the action.

14           Certified to by me on May 2, 2022.

15

16           _____

17    CAROLINE CHAPMAN, Texas CSR 467
      Expiration Date:  03/31/2023
      Firm Registration No. 223
18    WORLDWIDE COURT REPORTERS
      3000 Weslayan, Suite 235
19    Houston, Texas 77027
      (713) 572-2000
20

21

22

23

24

25

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656
OCA-REPLY-APPX-018

209 Brian Keith Ingram JD

**Page: 209**

**NATIONAL COURT REPORTERS INC**
Serving the Legal Community Nationally and Internationally
NATIONAL COURT REPORTERS INC. 888.800.9656

Entero v Texas

Brian Keith Ingram JD 210

**210**

## Transcript Errata Sheet For

**Date:**

**Case Number:**

**Case Name:**

**Deponent:**

_____

| Page | Line | Now Reads | Should Read | Remove Therefore |
|------|------|-----------|-------------|------------------|

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Date:** _____

**Signature of the Deponent:**

_____

**Please return via email within 30days to:**
**NCRNETWORK@NationalCourtReporters.com**

Entero v Texas 5:21-cv-844 (XR)
4/28/2022
National Court Reporters Inc. 888.800.9656 NationalCourtReporters.com
National Court Reporters Inc. 888.800.9656
ncrnetwork@nationalcourtreporters.com
Entero v Texas
210 Brian Keith Ingram JD
**Page: 210**

# Exhibit 2

```
1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION
   LA UNION DEL PUEBLO ENTERO,      )
3  et al.,                          )
                    Plaintiffs,     )
4       vs.                         )Civil Action No.
   STATE OF TEXAS, et al.,          )5:21-cv-844(XR)
5                   Defendants.     )(Consolidated Cases)

6
                   ------------------------
7                     ORAL DEPOSITION OF
                        KEITH INGRAM
8                      March 28, 2023
                          Volume 1
9                  ------------------------

10

11        ORAL 30(b)(1) DEPOSITION OF KEITH INGRAM, Volume

12  1, produced as a witness at the instance of the

13  Plaintiffs, and duly sworn, was taken in the

14  above-styled and numbered cause on March 28, 2023, from

15  9:15 a.m. to 4:18 p.m., before Dana Shapiro, CSR, in

16  and for the State of Illinois, reported by machine

17  shorthand, at 209 W. 14th Street, Austin, Texas 78701,

18  pursuant to the Federal Rules of Civil Procedure and

19  any provisions stated on the record or attached

20  hereto.

21

22

23

24

25
```



```
 1                    A P P E A R A N C E S

 2

 3    FOR PLAINTIFFS OCA/REVUP TEXAS (via ZOOM):

 4    MS. LUCIA ROMANO
      DISABILITY RIGHTS TEXAS
 5    1500 McGowen, Suite 100
      Houston, Texas 77004
 6    713-974-7691
      lromano@disabilityrightstx.org
 7         -and-
      MS. COURTNEY LUTHER
 8    DISABILITY RIGHTS TEXAS
      2222 West Braker Lane
 9    Austin, Texas 78758
      512-454-4816
10    cluther@disabilityrightstx.org

11    FOR INTERVENOR-DEFENDANTS HARRIS COUNTY REPUBLICAN
      PARTY, DALLAS COUNTY REPUBLICAN PARTY, REPUBLICAN
12    NATIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL
      COMMITTEE AND NATIONAL REPUBLICAN CONGRESSIONAL
13    COMMITTEE (appeared via ZOOM):

14    MR. STEPHEN J. KENNY
      JONES DAY
15    51 Lousiana Avenue, NW
      Washington, D.C. 20001
16    202-879-3939
      skenny@jonesday.com

17

18    FOR PLAINTIFFS HOUSTON AREA URBAN LEAGUE; DELTA SIGMA
      THETA SORORITY, INC.; THE ARC OF TEXAS; AND JEFFREY
19    LAMAR CLEMMONS (appeared via ZOOM):

20    MS. KATHRYN SADASIVAN
      MR. VICTOR GENECIN
      MS. URUJ SHEIKH
21    NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
      40 Rector Street, Fifth Floor
22    New York, New York 10006
      212-965-2200
23    ksadasivan@naacpldf.org
      vgenecin@naacpldf.org
24    usheikh@naaacpldf.org

25
```



```
 1        A P P E A R A N C E S (continued):

 2    FOR PLAINTIFFS LA UNION DEL PUEBLO ENTERO SOUTHWEST
      VOTER REGISTRATION EDUCATION PROJECT:
 3
      MS. NINA PERALES
 4    MS. JULIA R. LONGORIA(via ZOOM)
      MS. FATIMA L. MENENDEZ(via ZOOM)
 5    MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
      110 Broadway, Suite 300
 6    San Antonio, Texas 78205
      210-224-5476
 7    nperales@maldef.org
      jlongoria@maldef.org
 8    fmenendez@maldef.org
            -and-
 9    MR. JASON KANTERMAN (via ZOOM)
      MR. KEVIN ZHEN (via ZOOM)
10    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
      One New York Plaza
11    New York, New York 10004
      212-859-8519
12    Jason.Kanterman@friedfrank.com
      Kevin.Zhen@friedfrank.com
13
      FOR PLAINTIFFS LULAC, TEXAS, VOTO LATINO, TEXAS
14    ALLIANCE FOR RETIRED AMERICANS, TEXAS AFT (via ZOOM):

15    MS. MARISA O'GARA
      ELIAS LAW GROUP LLP
16    250 Massachusetts Avenue, NW, Suite 400
      Washington, D.C. 20001
17    202-968-4490
      mogara@elias.law
18

19    FOR THE UNITED STATES:

20    MR. JUSTIN BENNETT(via ZOOM)
      MR. RICHARD A. DELLHEIM
21    MR. MICHAEL E. STEWART
      U.S. DEPARTMENT OF JUSTICE
22    CIVIL RIGHTS DIVISION
      950 Pennsylvania Avenue, NW
23    Washington, D.C. 20530
      800-253-3931
24    Justin.Bennett@usdoj.gov
      Richard.Dellheim@usdoj.gov
25    Michael.Stewart3@usdoj.gov
```



OCA-REPLY-APPX-023

```
1              A P P E A R A N C E S (continued):

2                    -and-
      MR. DANIEL J. FREEMAN
3     U.S. DEPARTMENT OF JUSTICE
      CIVIL RIGHTS DIVISION
4     4 Constitution Square (4CON)
      150 M Street, N.E./8.143
5     Washington, D.C. 20530
      202-305-4355
6     Daniel.Freeman@usdoj.gov

7     FOR DEFENDANTS THE STATE OF TEXAS, GREG ABBOTT, IN HIS
      OFFICIAL CAPACITY AS GOVERNOR OF TEXAS, JANE NELSON, IN
8     HER OFFICIAL CAPACITY OF THE TEXAS SECRETARY OF STATE,
      WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS
9     ATTORNEY GENERAL:

10    MS. KATHLEEN HUNKER
      MR. ETHAN SZUMANSKI
11    OFFICE OF THE ATTORNEY GENERAL
      P.O. Box 12548
12    Austin, Texas 78711-2548
      512-463-2100
13    kathleen.hunker@oag.texas.gov
      ethan.szumanski@oag.texas.gov
14
      FOR OFFICE OF THE TEXAS SECRETARY OF STATE:
15
      MR. ADAM BITTER
16    OFFICE OF THE SECRETARY OF STATE
      Capitol Building, Rm 1E.8
17    P.O Box 12697
      Austin, Texas 78711-2697
18    512-475-2813
      abitter@sos.texas.gov
19
      FOR DEFENDANT LISA WISE, IN HER OFFICIAL CAPACITY AS
20    THE EL PASO COUNTY ELECTIONS ADMINISTRATOR (via ZOOM):

21    MR. GERMAINE HABELL
      COOLEY LLP
22    Wells Fargo Center, South Tower
      355 South Grand Avenue, Suite 900
23    Los Angeles, California 90071-1560
      213-561-3227
24    ghabell@cooley.com

25
```



```
 1                  A P P E A R A N C E S (continued):

 2    FOR DEFENDANTS BEXAR COUNTY ELECTIONS ADMINISTRATOR,
      JACQUELYN CALLANEN AND BEXAR COUNTY DISTRICT ATTORNEY
 3    JOE D. GONZALES (via ZOOM):

 4    MS. LISA V. CUBRIEL
      ASSISTANT DISTRICT ATTORNEY-CIVIL SECTION
 5    BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE
      7th Floor Paul Elizondo Tower
 6    101 West Nueva
      San Antonio, Texas 78205-3030
 7    210-335-2142
      Lisa.Cubriel@bexar.org
 8
      FOR PLAINTIFF MI FAMILIA VOTA (via ZOOM):
 9
      MS. COURTNEY HOSTETLER
10    FREE SPEECH FOR PEOPLE
      1320 Centre Street, #405
11    Newton, Massachusetts 02459
      617-249-3015
12    chostetler@freespeechforpeople.org

13    FOR DEFENDANTS CLIFFORD TATUM, IN HIS OFFICIAL CAPACITY
      AS HARRIS COUNTY ELECTIONS ADMINISTRATOR (via ZOOM):
14
      MR. SAMEER S. BIRRING
15    SENIOR ASSISTANT COUNTY ATTORNEY
      OFFICE OF THE HARRIS COUNTY ATTORNEY
16    1019 Congress Plaza, 15th Floor
      Houston, Texas 77002
17    713-274-5101
      Sameer.Birring@harriscountytx.gov
18
      FOR DEFENDANT HIDALGO COUNTY ELECTIONS ADMINISTRATOR
19    DELIA GARZA (via ZOOM):

20    MS. LEIGH ANN TOGNETTI
      ASSISTANT DISTRICT ATTORNEY
21    100 East Cano, First Floor
      Hidalgo County Courthouse Annex III
22    Edinburg, Texas 78539
      956-292-7609
23    leigh.tognetti@da.co.hidalgo.tx.us

24
      ALSO PRESENT (via ZOOM):
25    MS. MORGAN HUMPHREY
      MS. SAMANTHA KOBOR
```



```
 1                       INDEX

 2                                               PAGE
      Appearances.....................................2-5
 3    KEITH INGRAM VOLUME 1
            Examination by MR. FREEMAN................8
 4          Examination by MS. PERALES..............145
            Examination by MR. GENECIN..............184
 5    Signature and Changes........................219
      Reporter's Certificate.......................221
 6
                      EXHIBITS
 7    NO.                  DESCRIPTION             PAGE
      No. 1              Interrogatories           27
 8    No. 2        absentee ballot mail form       39
      No. 3                 email                  44
 9    No. 4                 email                  48
      No. 5             carrier envelope           50
10    No. 6             secrecy envelope           53
      No. 7                 email                  57
11    No. 8        voter instruction sheet         58
      No. 9                 email                  60
12    No. 10            signature sheet            62
      No. 11             presentation              65
13    No. 12          votetexas.gov page           72
      No. 13                portal                 73
14    No. 14                email                  76
      No. 15 voter registration application        82
15    No. 16      notice of rejected application    93
      No. 17      notice of rejected application    93
16    No. 18            texas.gov page             96
      No. 19            texas.gov page             97
17    No. 20                email                 100
      No. 21               NPR story              116
18    No. 22                email                 124
      No. 23                email                 145
19    No. 24                email                 148
      No. 25                 SB 1                 149
20

21

22

23

24

25
```



```
 1                        (WHEREUPON, the witness was duly

 2                        sworn.)

 3                        KEITH INGRAM,

 4    called as a witness herein, having been first duly

 5    sworn, was examined and testified as follows:

 6                        EXAMINATION

 7    BY MR. FREEMAN:

 8         Q.    My name is Dan Freeman.  This is the

 9    general election deposition of Mr. Keith Ingram in the

10    matter of La Union Del Pueblo Entero v. Abbott, U.S.

11    District Court for the Western District of Texas,

12    docket No. 5:21-cv-844.

13              Again, as you know, my name is Dan Freeman.

14    I represent the United States in this matter.  With me

15    here today are Mr. Richard Dellheim and Mr. Mike

16    Stewart.  And I will let everyone else introduce

17    themselves.

18         MS. PERALES:  Nina Perales for Plaintiffs LUPE,

19    L-U-P-E, et al.

20         MS. HUNKER:  Kathleen Hunker and Ethan Szumanski

21    representing the State Defendants along with individual

22    legislators for the purposes of legislative privilege

23    to the extent it's raised today.  With me is Adam

24    Bitter, General Counsel for The Office of the Texas

25    Secretary of State.
```



1   you talk to the voter registrar to confirm the voter

2   registration and status.

3        Q.    But am I correct that the numbers provided

4   here, driver's license, Social Security number, they

5   are not used to look up the voter, they are used to

6   confirm the voter; is that correct?

7        A.    They are used to make sure the voter has

8   properly identified themself on the application, yes.

9        Q.    Those numbers are not used to find the

10  voter in TEAM as part of the ABBM processing, correct?

11       A.    No, sir.  I mean not usually.  I guess they

12  could look it up by DL number if they wanted to.

13       Q.    Do you have any understanding as to

14  whether -- strike that.

15            Do you instruct local officials to do that?

16       MS. HUNKER:  Objection, form.

17  BY THE WITNESS:

18       A.    We don't tell them how they use TEAM.  All

19  of the fields are available to look up anything they

20  want to look up.

21  BY MR. FREEMAN:

22       Q.    Are you aware of any local officials using

23  the Texas driver's license number or Social Security

24  number to look up a voter as part of the initial

25  determination of their registration status?



```
 1          A.      If that's the way they do it's the way we
 2    do.  We don't know about it.
 3          Q.      You don't know about it personally?
 4          A.      That's right.  Or as an office that's not
 5    something we get into.
 6          Q.      Okay.
 7          A.      We tell them how to do a voter search.
 8          Q.      Turn to page 40.  You look at pages 40, 41
 9    and 42.  What are the matters set out on these pages in
10    the presentation?
11          A.      They are talking about the new law, the
12    requirement for a number on the carrier envelope.
13          Q.      Is there any information here about how the
14    numbers are to be used in the mail voting process other
15    than as a basis for rejection of a mail ballot?
16          A.      That's not what this says.  I don't know
17    why would you say -- what are you asking?
18          Q.      I'm asking if there is any information here
19    about how the numbers are to be used in the mail voting
20    process other than as a basis to confirm voter identity
21    or reject the ballot?
22          MS. HUNKER:  Objection, form.
23    BY THE WITNESS:
24          A.      They are supposed to look up the number
25    provided by the voter to see if it's in the voter
```



Keith Ingram

1                       CHANGES AND SIGNATURE

2   KEITH INGRAM

3   March 28, 2023

4   PAGE/LINE          CHANGE                    REASON

5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____



```
1              I, KEITH INGRAM, have read the foregoing

2    deposition and hereby affix my signature that the same

3    is true and correct, except as noted on the previous

4    page.

5

6              _____

7                         KEITH INGRAM

8    THE STATE OF _____)

9    COUNTY OF _____)

10       Before me, _____, on this day

11   personally appeared KEITH INGRAM, known to me (or

12   proved to me under oath or through _____)

13   (description of identity card or other document) to be

14   the person whose name is subscribed to the foregoing

15   instrument and acknowledged to me that he executed the

16   same for the purposes and consideration therein

17   expressed.

18       Given under my hand and seal of office this _____

19   day of _____, 20____.

20

21              _____

22                    NOTARY PUBLIC IN AND FOR

23                    THE STATE OF _____

24                    COMMISSION EXPIRES: _____

25
```



OCA-REPLY-APPX-031

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION
    LA UNION DEL PUEBLO ENTERO,     )
 3  et al.,                         )
                    Plaintiffs,     )
 4      vs.                         )Civil Action No.
    STATE OF TEXAS, et al.,         )5:21-cv-844(XR)
 5                  Defendants.     )(Consolidated Cases)

 6

 7                  REPORTER'S CERTIFICATION
                       ORAL DEPOSITION OF
 8                        KEITH INGRAM
                        March 28, 2023
 9

10        I, Dana Shapiro, a Certified Shorthand Reporter,

11   hereby certify to the following:

12        That the witness, KEITH INGRAM, was duly sworn by

13   the officer and that the transcript of the oral

14   deposition is a true record of the testimony given by

15   the witness;

16        I further certify that pursuant to FRCP Rule

17   30(e)(1) that the signature of the deponent:

18   was requested by the deponent or a party before the

19   completion of the deposition and that the signature is

20   to be before any notary public and returned within 30

21   days from date of receipt of the transcript.  If

22   returned, the attached Changes and Signature Pages

23   contain any changes and reasons therefore;

24        I further certify that I am neither counsel for,

25   related to, nor employed by any of the parties or
```



1    attorneys in the action in which this proceeding was

2    taken, and further that I am not financially or

3    otherwise interested in the outcome of the action.

4          Certified to by me this April 10, 2023.

5          _Dana Shapiro_

6          _____

7          Dana Shapiro
           Illinois CSR 84-3597

8          Expiration: 5/31/23
           Magna Legal Services

9          Firm Registration No. 633
           1635 Market Street

10         8th Floor
           Philadelphia, PA 19103

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
1    COUNTY OF TRAVIS )

2    STATE OF TEXAS    )

3         I hereby certify that the witness was notified on

4    _____, that the witness has 30 days

5    after being notified by the officer that the transcript

6    is available for review by the witness and if there are

7    changes in the form or substance to be made, then the

8    witness shall sign a statement reciting such changes

9    and the reasons given by the witness for making them;

10        That the witness' signature was/was not returned

11   as of _____.

12        Subscribed and sworn to on this _____ day of

13   _____, 20___.

14

15                  _____
                    Dana Shapiro
16                  Illinois CSR 84-3597
                    Expiration: 5/31/23
17                  Magna Legal Services
                    Firm Registration No. 633
18                  1635 Market Street
                    8th Floor
19                  Philadelphia, PA 19103

20

21

22

23

24

25
```



OCA-REPLY-APPX-034

# Exhibit 3

```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
2                     SAN ANTONIO DIVISION

3   LA UNIÓN DEL PUEBLO        §
    ENTERO, ET AL.,            §
4                              §
            PLAINTIFFS,        §
5                              §
            V.                 §   CIVIL ACTION NO.5:21-CV-844 (XR)
6                              §   (CONSOLIDATED CASES)
    STATE OF TEXAS, ET         §
7   AL.,                       §
                               §
8           DEFENDANTS.        §

9

    ***********************************************************
10
                       ORAL DEPOSITION OF
11
                       FRANK PHILLIPS
12
                       MARCH 31, 2023
13
    ***********************************************************
14

15          ORAL DEPOSITION OF FRANK PHILLIPS, PRODUCED AS A

16  WITNESS AT THE INSTANCE OF THE PLAINTIFF, AND DULY

17  SWORN, WAS TAKEN IN THE ABOVE-STYLED AND -NUMBERED CAUSE

18  ON THE 31ST DAY OF MARCH, 2023, FROM 9:14 A.M. TO

19  12:40 P.M., BEFORE KAREN A. GONZALEZ, COMMISSIONED

20  NOTARY, IN AND FOR THE STATE OF TEXAS, REPORTED BY

21  MACHINE SHORTHAND, FROM DALLAS COUNTY, TEXAS, PURSUANT

22  TO THE TEXAS RULES OF CIVIL PROCEDURE, THE TEXAS SUPREME

23  COURT EMERGENCY ORDER REGARDING THE COVID-19 STATE OF

24  DISASTER AND THE PROVISIONS STATED ON THE RECORD OR

25  ATTACHED HERETO.
```



Frank Phillips

Page 2

```
 1            A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4      MS. JENNIFER YUN
        ATTORNEYS, VOTING SECTION
 5      CIVIL RIGHTS DIVISION
        U.S. DEPARTMENT OF JUSTICE
 6      950 PENNSYLVANIA AVENUE NW
        WASHINGTON, D.C. 20530
 7      TELEPHONE:  (202) 307-2767
        E-MAIL:  JENNIFER.YUN@USDOJ.GOV
 8
        MR. WILLIAM D'ANGELO (VIA ZOOM)
 9      ARENTFOX SCHIFF
        555 WEST FIFTH STREET
10      48TH FLOOR LOS ANGELES
        CALIFORNIA 90013
11      TELEPHONE:  (213) 443-7667
        E-MAIL:    WILLIAM.DANGELO@AFSLAW.COM
12
13   FOR THE DEFENDANTS:
14      MS. KATHLEEN HUNKER
        OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS
15      P.O. BOX 12548 (MC-009)
        AUSTIN, TEXAS 78711,
16      TELEPHONE:  (512) 463-2100
        E-MAIL:  KATHLEEN.HUNKER@OAG.TEXAS.GOV
17
18   INTERVENOR DEFENDANTS:
19      MR. STEPHEN J. KENNY (VIA ZOOM)
        JONES DAY
20      51 LOUISIANA AVENUE N.W.
        WASHINGTON, D.C. 20001
21      TELEPHONE:  (202) 879-3939
        E-MAIL:    SKENNY@JONESDAY.COM
22
23
24
25
```

Page 3

```
 1              I N D E X
 2
 3   APPEARANCES. . . . . . . . . . . . . . . . .      2
 4   SWORN STATEMENT OF FRANK PHILLIPS
 5      EXAMINATION BY MS. YUN. . . . . . . . .       5
 6      EXAMINATION BY MS. HUNKER . . . . . . .      96
 7      FURTHER EXAMINATION BY MS. YUN. . . . .     107
 8      FURTHER EXAMINATION BY MS. HUNKER . . . .   113
     CHANGES AND SIGNATURE. . . . . . . . . . . .   116
 9   JURAT. . . . . . . . . . . . . . . . . . . .   117
     REPORTER'S CERTIFICATE . . . . . . . . . . .   118
12
13
14            E X H I B I T S
15
16   NO.  DESCRIPTION                              PAGE
17   1    WFAA ARTICLE . . . . . . . . . . . . . .    18
     2    DENTON RECORD-CHRONICLE ARTICLE 5/7/21 . .  26
18   3    DENTON COUNTY VOTER REGISTRATION FIGURES . . 32
     4    TARRANT COUNTY VOTER REGISTRATION FIGURES. . 34
19   5    WFAA ARTICLE ON MAIL-IN VOTING . . . . .    36
     6    SPREADSHEET MARCH 2022 PRIMARY ELECTION MAIL BALLOT
20   REJECTION . . . . . . . . . . . . . . . . . .   45
     7    E-MAIL CHAIN DATED 4/1/22. . . . . . . . .  56
21   8    ABBM FORM. . . . . . . . . . . . . . . .    95
     9    CARRIER ENVELOPE . . . . . . . . . . . . .  95
22
23
24
25
```

Page 4

```
 1        REPORTED FROM DALLAS COUNTY, TEXAS
 2        P R O C E E D I N G S
 3
 4
 5        THE REPORTER:  WE ARE NOW ON THE RECORD.
 6   TODAY IS MARCH 31ST, 2023.  THE TIME IS NOW 9:14 A.M.
 7   CENTRAL STANDARD TIME.
 8        WE ARE HERE TO TAKE MR. FRANK PHILLIPS'S
 9   DEPOSITION IN THE MATTER LA UNIÓN DEL PUEBLO ENTERO, ET
10   AL., PLAINTIFFS, VS. STATE OF TEXAS, ET AL., DEFENDANTS.
11        WE ARE CURRENTLY LOCATED AT 2001 BEACH
12   STREET, SUITE 700, FORT WORTH, TEXAS, 76103.
13        AT THIS TIME, WILL COUNSEL STATE YOUR
14   APPEARANCE FOR THE RECORD, PLEASE.
15        MS. YUN:  JENNIFER YUN FROM THE DEPARTMENT
16   OF JUSTICE.
17        MS. HUNKER:  KATHLEEN HUNKER WITH THE OFFICE
18   OF THE TEXAS ATTORNEY GENERAL REPRESENTING STATE
19   DEFENDANTS AND INDIVIDUAL EX-LEADERS.
20        MR. D'ANGELO:  WILLIAM D'ANGELO FROM
21   ARENTFOX SCHIFF REPRESENTING -- CO-COUNSEL FOR THE
22   PLAINTIFFS.
23        THE REPORTER:  ANYBODY ELSE FROM ZOOM?
24        MR. KENNY:  STEPHEN KENNY, JONES DAY,
25   REPRESENTING THE INTERVENOR DEFENDANTS.
```

Page 5

```
 1        THE REPORTER:  THANK YOU.
 2        MR. FRANK PHILLIPS, IF YOU COULD PLEASE
 3   RAISE YOUR RIGHT HAND.
 4        THE WITNESS:  I DO.
 5        FRANK PHILLIPS,
 6   HAVING BEEN FIRST DULY SWORN, WAS EXAMINED
 7        AND TESTIFIED AS FOLLOWS:
 8          EXAMINATION
 9   BY MS. YUN:
10   Q. GOOD MORNING, MR. PHILLIPS.
11   A. GOOD MORNING.
12   Q. WE MET ALREADY, BUT I'M JENNIFER YUN FROM THE
13   U.S. DEPARTMENT OF JUSTICE.
14   A. OKAY.
15   Q. THANK YOU FOR JOINING US THIS MORNING.
16   A. SURE.
17   Q. COULD YOU PLEASE STATE YOUR NAME FOR THE RECORD?
18   A. FRANK PHILLIPS.
19   Q. BEFORE WE DO ANYTHING ELSE, I WANT TO MAKE SURE
20   WE HAVE A SMOOTH DEPOSITION.
21        ARE YOU -- HAVE YOU EVER BEEN DEPOSED BEFORE?
22   A. I HAVE NOT.
23   Q. SO HERE'S SOME GROUND RULES TO HELP US THROUGHOUT
24   THE DEPOSITION.  SO FIRST THIS WORKS BEST FOR THE COURT
25   REPORTER IF YOU WAIT TO START YOUR ANSWER UNTIL I
```



Frank Phillips

Page 6

1  COMPLETELY FINISH MY QUESTION.
2      IS THAT OKAY WITH YOU?
3  A. SURE.
4  Q. AND THE COURT REPORTER CANNOT INDICATE ANY HEAD
5  NODS OR OTHER GESTURES OR UMMM, YOU KNOW, SOUNDS, SO --
6  SO EVERY ANSWER NEEDS TO BE VERBAL.
7      IS THAT OKAY WITH YOU?
8  A. YES.
9  Q. ARE YOU BEING REPRESENTED BY AN ATTORNEY TODAY?
10     MS. HUNKER:  I'M REPRESENTING THE STATE
11  DEFENDANTS.  MR. PHILIPS DOES NOT HAVE A SPECIFIC
12  ATTORNEY WITH HIM TODAY.
13  A. CORRECT.
14  Q. (BY MS. YUN)  OKAY.  MS. HUNKER MAY STILL OBJECT
15  TO A QUESTION, AND AS WOULD -- AS CAN ANY OTHER
16  ATTORNEYS ON THE -- ON ZOOM.  BUT YOU SHOULD STILL
17  ANSWER THE QUESTION UNLESS THERE'S ANY SPECIFIC
18  INSTRUCTION NOT TO.
19  A. OKAY.
20  Q. IF YOU DON'T UNDERSTAND A QUESTION OR NEED ANY
21  CLARIFICATION, COULD YOU PLEASE SAY SO?
22  A. YES.
23  Q. ON THE OTHER HAND, IF YOU ASK -- ANSWER WITHOUT
24  ASKING FOR CLARIFICATION, I'LL ASSUME THAT YOU
25  UNDERSTOOD MY QUESTION.

Page 7

1      IS THAT FAIR?
2  A. YES.
3  Q. IS THERE ANY REASON YOUR MEMORY OR ABILITY TO
4  ANSWER QUESTIONS WOULD BE IMPAIRED TODAY?
5  A. NO.
6  Q. IS THERE ANY REASON YOUR ABILITY TO EFFECTIVELY
7  COMMUNICATE YOUR ANSWERS WILL BE IMPAIRED TODAY?
8  A. NO.
9  Q. HAVE YOU CONSUMED ANY PRESCRIPTION MEDICATION,
10  DRUGS, ALCOHOL, OR SUFFERED ANY CONDITION OR INJURY THAT
11  MAY PREVENT YOU FROM TESTIFYING TRUTHFULLY AND
12  ACCURATELY TODAY?
13  A. NO.
14  Q. I WANT TO REMIND YOU THAT YOU'RE UNDER OATH AND
15  SUBJECT TO PENALTIES FOR GIVING FALSE OR MISLEADING
16  TESTIMONY.  SO THAT -- SO IT'S IMPORTANT THAT YOU ANSWER
17  MY QUESTIONS TRUTHFULLY AND ACCURATELY AND COMPLETELY.
18      IS THAT FAIR?
19  A. YES.
20  Q. AND FINALLY, IF YOU NEED A BREAK, JUST LET ME
21  KNOW AND WE CAN TAKE ONE.  HOWEVER, I WILL ASK THAT YOU
22  ANSWER ANY PENDING QUESTION BEFORE WE TAKE A BREAK.
23      IS THAT OKAY?
24  A. YES.
25  Q. GREAT.

Page 8

1      DO YOU HAVE ANY QUESTIONS?
2  A. NO, MA'AM.
3  Q. I WILL START WITH SOME BASIC BACKGROUND
4  QUESTIONS.
5      WHERE DO YOU WORK?
6  A. I WORK FOR DENTON COUNTY AS THE DENTON COUNTY
7  ELECTIONS ADMINISTRATOR.
8  Q. COULD YOU EXPLAIN WHAT YOUR POSITION ENTAILS?
9  A. YES.  THE GENERAL OVERSIGHT OF ALL OF THE
10  ELECTIONS IN DENTON COUNTY AND VOTER REGISTRATION IN
11  GENERAL.
12  Q. WHO DO YOU REPORT TO?
13  A. THAT'S A LITTLE COMPLICATED IN TEXAS.  I AM HIRED
14  BY AN ELECTION COMMISSION.  AND THEN IN MY DAY-TO-DAY
15  ACTIVITY, I REPORT TO THE COUNTY JUDGE OF DENTON COUNTY.
16  Q. AND IS THE COUNTY COMMISSION -- THE ELECTIONS
17  COMMISSION, IS THAT A -- WHO MAKES UP THAT COMMISSION?
18  A. THE ELECTION COMMISSION IS MADE UP OF THE COUNTY
19  JUDGE, THE TAX ASSESSOR/COLLECTOR, COUNTY CLERK, THE
20  REPUBLICAN PARTY CHAIR OF DENTON COUNTY, AND THE
21  DEMOCRATIC PARTY CHAIR OF DENTON COUNTY.
22  Q. HOW LONG HAVE YOU BEEN IN YOUR CURRENT POSITION?
23  A. I INITIALLY BECAME THE ELECTION ADMINISTRATOR IN
24  DENTON COUNTY IN 2009.  I LEFT IN 2014 AND BECAME THE
25  ELECTION ADMINISTRATOR IN TARRANT COUNTY.  AND THEN IN

Page 9

1  2016, I LEFT AND CAME BACK TO DENTON COUNTY AND I'VE
2  BEEN THERE SINCE.
3  Q. AND DID YOU HOLD ANY OTHER POSITION WITHIN THE
4  DENTON COUNTY ELECTIONS OFFICE PRIOR TO 2009?
5  A. NO.
6  Q. WHAT DID YOU DO BEFORE YOU JOINED THE DENTON
7  COUNTY ELECTIONS OFFICE IN 2009?
8  A. I WAS THE DIRECTOR OF ADMINISTRATION FOR OUR
9  COUNTY JUDGE, AND I HAD BEEN IN THAT POSITION SINCE
10  2003.
11  Q. AND DID THAT POSITION ENTAIL ANY ELECTION-RELATED
12  DUTIES?
13  A. NOT DIRECTLY.  THE ONLY THING EVEN REMOTELY
14  CONNECTED WAS ANYTHING THAT WENT ON COMMISSIONERS COURT,
15  EVEN IF IT WAS THEIR AGENDA, EVEN IF IT WAS
16  ELECTION-RELATED HAD TO GO THROUGH ME TO GET ON THE
17  AGENDA, AN ADMINISTRATIVE FUNCTION, SORRY.
18  Q. RIGHT.  SO EVERYTHING HAD TO GO THROUGH YOU IN
19  ORDER TO GET ON THAT AGENDA.
20  A. CORRECT.
21  Q. INCLUDING ELECTION-RELATED FUNCTIONS.
22  A. CORRECT.
23  Q. AND WHAT DID YOU DO BEFORE 2003?
24  A. I WAS -- IMMEDIATELY BEFORE THAT, I WAS -- HAD A
25  CONTRACT POSITION THROUGH THE STATE DEPARTMENT WITH



Frank Phillips

March 31, 2023
Pages 18 to 21

Page 18

1  YOUR CONVERSATIONS WITH MS. HUNKER.
2      HAVE YOU SPOKEN TO ANYONE ELSE IN HER OFFICE, THE
3  OFFICE OF THE ATTORNEY GENERAL OF TEXAS, ABOUT THIS
4  CASE?
5  A.  NO.
6  Q.  OKAY.  AND I ASKED YOU EARLIER ABOUT WHETHER YOU
7  SPOKE TO THE SECRETARY OF STATE'S OFFICE ABOUT THIS
8  DEPOSITION.
9      HAVE YOU SPOKEN TO ANYONE FROM THE SECRETARY OF
10  STATE'S OFFICE ABOUT THIS CASE?
11  A.  NO.
12  Q.  (BY MS. YUN)  OKAY.  I AM GOING TO HAND YOU WHAT
13  HAS BEEN MARKED AS EXHIBIT 1.
14      CAN YOU DESCRIBE WHAT IT IS?
15      (EXHIBIT 1 MARKED.)
16  A.  LET ME LOOK AT THE WHOLE THING.
17  Q.  (BY MS. YUN)  SURE.  TAKE YOUR TIME.
18      (PAUSE IN PROCEEDINGS.)
19  A.  OKAY.  YEAH, THIS APPEARS TO BE AN ARTICLE FROM
20  -- I BELIEVE IT'S -- I BELIEVE IT'S WFAA, WHICH IS
21  CHANNEL 8 IN DFW, BUT IT'S A PRINTED ARTICLE.
22  Q.  (BY MS. YUN)  RIGHT.
23  A.  YEAH.  IT'S A WFAA REPORT.  YEAH.
24  Q.  AND HAVE YOU SEEN IT BEFORE?
25  A.  I HAVE, YES.

Page 19

1  Q.  DO YOU RECALL GIVING STATEMENTS TO WFAA FOR THIS
2  ARTICLE?
3  A.  I DO.
4  Q.  DO YOU HAVE ANY REASON TO BELIEVE THAT THE
5  ARTICLE DOES NOT ACCURATELY REFLECT THE STATEMENTS YOU
6  GAVE TO WFAA?
7  A.  NO, I BELIEVE THEY'RE ACCURATE.
8  Q.  OKAY.  I'D LIKE TO DIRECT YOUR ATTENTION TO
9  PAGE 4 OF THE ARTICLE.  SO IT'S WHERE THE SCREENSHOT OF
10  YOUR --
11  A.  OKAY.
12  Q.  -- CONVERSATION, I BELIEVE, WITH THE REPORTER?
13  A.  OKAY.
14  Q.  SO, IT SAYS TOWARDS THE TOP, "FRANK PHILLIPS, THE
15  ELECTIONS ADMINISTRATOR FOR DENTON COUNTY, TOLD WFAA
16  THAT HE ALERTED AUTHORITIES ABOUT THE REQUESTED ABSENTEE
17  BALLOTS WHEN HE NOTICED THEY WERE BEING SENT TO A P.O.
18  BOX.  'WHEN YOU SEE THAT -- WHEN WE SEE THAT, WE
19  DOUBLE-CHECK THE ADDRESS,' PHILLIPS SAID.  'IT SENDS UP
20  A RED FLAG WHEN YOU HAVE A LARGE NUMBER OF BALLOTS GOING
21  SOMEWHERE LIKE THAT.'"
22      COULD YOU TELL ME MORE ABOUT HOW YOUR OFFICE WAS
23  ABLE TO IDENTIFY THIS INCIDENT IN 2020?
24      MS. HUNKER:  OKAY.  SO I'M GOING TO RAISE AN
25  OBJECTION ON INVESTIGATIVE PRIVILEGE.  THE ATTORNEY

Page 20

1  GENERAL'S OFFICE DID WORK ON THIS INVESTIGATION AND
2  PROSECUTION, AND THAT IS STILL ONGOING.  THE TRIAL DATE
3  IS GOING TO BE SET PRETTY SOON.
4      AND SO I'M GOING TO ADVISE THE WITNESS TO
5  ONLY DISCLOSE INFORMATION THAT WAS EITHER PUBLIC OR HE
6  BELIEVES WOULD NOT COMPROMISE ANY OF THE INVESTIGATION
7  OR PROSECUTION AS IT'S GOING FORWARD.
8      MS. YUN:  YEAH, I WOULD JUST LIKE TO CLARIFY
9  OR FOR THE RECORD THAT I'M SEEKING TESTIMONY CONCERNING
10  YOUR -- THE WITNESS'S FIRSTHAND KNOWLEDGE ABOUT THE
11  INCIDENT AND NOT THE CONTEXT OF ANY INVESTIGATORY FILE.
12  Q.  (BY MS. YUN)  SO IT IS ABOUT YOUR KNOWLEDGE ABOUT
13  THE CASE AS YOU WERE, FOR EXAMPLE, SPEAKING TO THE
14  REPORTER IN 2020, NOT RELATED TO ANYTHING THAT THE OAG
15  MAY HAVE DONE IN ITS COURSE OF THE INVESTIGATION.
16  A.  OKAY.  REPEAT YOUR INITIAL QUESTION.
17  Q.  SURE.
18      COULD YOU JUST TELL ME MORE ABOUT YOUR -- HOW
19  YOUR OFFICE WAS ABLE TO IDENTIFY THIS ISSUE IN 2020?
20      MS. HUNKER:  AND SAME OBJECTION AND ADVICE.
21  A.  I'M A LITTLE UNCOMFORTABLE TO GET INTO DETAILS,
22  BECAUSE IT IS ONGOING AND HAS NOT BEEN TO TRIAL YET.
23      I'LL GENERICALLY SAY WHAT IT SAID RIGHT HERE IN
24  PRINT, THAT WE NOTICED THAT THERE WERE A NUMBER OF
25  APPLICATIONS BEING SENT TO A SPECIFIC ADDRESS THAT

Page 21

1  RAISED A RED FLAG FOR US.
2  Q.  (BY MS. YUN)  AND WHAT HAPPENED NEXT WHEN THAT
3  RED FLAG WAS RAISED?  WHAT HAPPENED?
4  A.  I WANT TO CLARIFY ONE THING HERE.  YOU ASKED ME
5  IF MY QUOTES IN HERE, IF THEY WERE ACCURATE, AND I
6  ANSWERED YES.  AND I STILL THINK THAT'S YES.  BUT ONE OF
7  THE THINGS THAT I SEE HERE THAT'S NOT A QUOTE OF MINE --
8  Q.  UH-HUH.
9  A.  -- IS IT SAYS, THEY WERE BEING SENT TO A P.O.
10  BOX.  THAT'S NOT ACCURATE.  THEY WERE BEING SENT TO A --
11  A COMMERCIAL MAILBOX.  A P.O. BOX IS A USPS --
12  Q.  UH-HUH.
13  A.  -- IT WAS NOT A USPS.
14  Q.  I SEE.
15  A.  IT WAS A COMMERCIAL MAILBOX.
16  Q.  GOT IT.
17  A.  I THINK THEY PROBABLY USED P.O. BOX GENERICALLY
18  HERE.
19  Q.  UNDERSTOOD.
20  A.  BUT, ANYWAY, SO WE NOTICED THEM GOING TO -- A
21  LARGE NUMBER GOING TO ONE ADDRESS.  WE RESEARCHED THAT
22  ADDRESS BECAUSE THAT ADDRESS IS NOT A RESIDENTIAL
23  ADDRESS IN OUR VOTER REGISTRATION SYSTEM AND DETERMINED
24  THAT IT WAS A COMMERCIAL MAILBOX FACILITY.
25  Q.  AND THEN WHAT HAPPENED NEXT?



Frank Phillips

March 31, 2023
Pages 22 to 25

Page 22

1    A. WE GATHERED THOSE APPLICATIONS. AND THEN AT THAT
2  POINT, I BELIEVED THAT THERE WAS A POSSIBILITY OF SOME
3  MAIL VOTING FRAUD TAKING PLACE OF -- I DID TWO THINGS.
4  I HAD PREVIOUSLY WORKED IN TARRANT COUNTY WITH AN
5  INVESTIGATOR FROM THE AG'S OFFICE ON SOME SIMILAR THING.
6  SO I TRIED TO FIND HIS PHONE NUMBER.
7    Q. UH-HUH.
8    A. I COULDN'T DO IT. SO I WASN'T SUCCESSFUL THERE.
9      I E-MAILED THE SECRETARY OF STATE'S OFFICE AND --
10  ON THEIR GENERIC ELECTIONS E-MAIL ASKING SOMEONE TO
11  CONTACT ME. AND THEN I CONTACTED OUR SHERIFF'S
12  DEPARTMENT.
13    Q. AND OVER -- DO YOU REMEMBER OVER THE -- HOW
14  LONG -- STRIKE THAT --
15      ABOUT HOW MANY APPLICATIONS FOR BALLOT BY MAIL
16  WERE THERE AT THE TIME WHEN YOU LOOKED UP THE ADDRESS?
17    A. I DON'T REMEMBER THE NUMBER AT THE TIME WHEN WE
18  FIRST LOOKED IT UP. I MEAN, ENOUGH TO RAISE ATTENTION.
19    Q. AND WAS IT SOMEONE THAT YOU WERE SUPERVISING WHO
20  RAISED THAT CONCERN WITH YOU OR DID YOU NOTICE IT
21  YOURSELF? HOW DID IT COME ABOUT?
22    A. IT WAS SOMEONE I WAS SUPERVISING.
23    Q. AND --
24      MS. HUNKER: CAN WE GO OFF THE RECORD?
25      MS. YUN: YEAH.

Page 23

1      THE REPORTER: OFF THE RECORD AT 9:43 A.M.,
2  CENTRAL STANDARD TIME.
3      (OFF THE RECORD.)
4      THE REPORTER: BACK ON THE RECORD AT
5  9:43 A.M.
6    Q. (BY MS. YUN) I'M GOING TO DIRECT YOUR ATTENTION
7  TO PAGE 2 OF THE EXHIBIT.
8      SO TOWARDS -- I GUESS THIS IS THE FOURTH
9  PARAGRAPH FROM THE TOP. IT SAYS -- IT SAYS THAT A
10  SEARCH WARRANT WAS EXECUTED AND THEY FOUND 25 BALLOTS AT
11  THE DEFENDANT'S HOME, AND THEN THE DEFENDANT ALLEGEDLY
12  SENT 84 APPLICATIONS FOR MAIL-IN BALLOTS.
13      IS THAT -- DO THOSE NUMBERS SOUND RIGHT TO YOU?
14    A. I CAN SPEAK TO THE 84 APPLICATIONS FOR MAIL-IN
15  BALLOTS.
16    Q. UH-HUH.
17    A. THAT SOUNDS CORRECT. BUT I WAS NOT THERE WHEN
18  THE WARRANT WAS EXECUTED, SO I HAVE NO IDEA.
19    Q. RIGHT.
20      SO WHEN THEY -- WHEN THEY SAY THAT THEY FOUND
21  84 -- OR THAT THE DEFENDANT ALLEGEDLY SENT
22  84 APPLICATIONS, THAT WAS BASED ON -- WAS THAT A NUMBER
23  THAT YOU FOUND -- YOUR OFFICE FOUND, OR IS THAT BASED ON
24  THE SHERIFF'S OFFICE'S INVESTIGATION?
25      MS. HUNKER: OBJECTION; FORM.

Page 24

1    A. I DON'T REMEMBER THE EXACT NUMBER, BECAUSE THE 84
2  COULD BE CUMULATIVE. I'M NOT CERTAIN. BUT I BELIEVE
3  SOME OF THOSE MAY HAVE BEEN SENT TO DALLAS COUNTY. SO
4  THAT COULD INCLUDE SOME OF THOSE. I'M NOT SURE.
5    Q. (BY MS. YUN) I SEE.
6      SO WOULD IT BE FAIR TO SAY THAT ABOUT 110 ILLEGAL
7  VOTES WERE ATTEMPTED IN THIS CASE?
8      MS. HUNKER: OBJECTION; FORM.
9    A. YEAH, I'M NOT SURE ABOUT THAT.
10    Q. (BY MS. YUN) OKAY. HAVE YOU BEEN ASKED TO
11  TESTIFY IN THE CRIMINAL CASE?
12    A. I HAVE NOT, BECAUSE NO COURT DATE HAS BEEN SET.
13      OR LET ME REPHRASE THAT. I BELIEVE THE INITIAL
14  COURT DATE WAS SET AND IT WAS -- HAS BEEN RESET. SO NO,
15  I HAVEN'T.
16    Q. WAS YOUR UNDERSTANDING THAT WHEN THE INITIAL
17  COURT DATE WAS SET, THAT YOU WOULD TESTIFY AT TRIAL AT
18  THAT TIME?
19    A. THAT'S ONLY AN ASSUMPTION ON MY PART, BUT I HAD
20  NOT ACTUALLY BEEN CONTACTED. I CONTACTED THE DISTRICT
21  ATTORNEY'S OFFICE JUST TO INQUIRE, AND THEY SAID A DATE
22  HAD BEEN SET. AND THEN HE INFORMED ME A FEW DAYS LATER
23  IT HAD BEEN RESET FOR I DON'T KNOW WHAT REASON.
24    Q. I SEE.
25      WHEN, TO THE BEST OF YOUR RECOLLECTION, DID YOU

Page 25

1  CONTACT THE DA'S OFFICE?
2    A. IT WAS PROBABLY -- I COULD BE A LITTLE OFF HERE,
3  BUT PROBABLY JANUARY, MAYBE FEBRUARY.
4    Q. OF THIS YEAR --
5    A. THIS YEAR, YES, MA'AM, 2023.
6    Q. IS THERE ANY OTHER FACTS THAT YOU KNOW THAT BEAR
7  ON THE CASE THAT YOU HAVEN'T TOLD ME SO FAR?
8      MS. HUNKER: OBJECTION; FORM.
9    A. NO.
10    Q. (BY MS. YUN) OKAY. LET'S LOOK AT PAGE 5. AND
11  STARTING IN THE SECOND PARAGRAPH, "HOWEVER, PHILIPS SAID
12  SAFEGUARDS IN HIS OFFICE PREVENTED ANY OF THE BALLOTS IN
13  QUESTION FROM BEING CAST. 'WE HAVE PROCESSES IN PLACE
14  TO HELP IDENTIFY THAT, AND IT WORKED. WE WERE ABLE TO
15  STOP IT,' PHILLIPS SAID."
16      WHAT PROCESSES WERE YOU REFERRING TO IN THAT
17  STATEMENT?
18    A. GENERALLY, WE DO TRAIN OUR PEOPLE TO LOOK FOR
19  APPLICATIONS THAT ARE BEING SENT TO -- OR MULTIPLE
20  APPLICATIONS BEING SENT TO ONE ADDRESS.
21    Q. WAS THERE ANYTHING ELSE?
22    A. NO.
23    Q. DO YOU STILL AGREE WITH THAT STATEMENT, THAT THE
24  DENTON COUNTY ELECTIONS OFFICE HAD PROCESSES IN PLACE IN
25  2020 TO IDENTIFY MAIL-IN VOTER IMPERSONATION?



Frank Phillips

March 31, 2023
Pages 26 to 29

Page 26

1          MS. HUNKER:  OBJECTION; FORM.
2     A.  I DO.
3     Q.  (BY MS. YUN)  AND DO YOU STILL AGREE THAT THOSE
4  PROCESSES WERE TO STOP THE FRAUDULENT VOTES IN
5  CARROLLTON FROM ACTUALLY COUNTING IN 2020?
6          MS. HUNKER:  OBJECTION; FORM.
7     A.  I DO.
8     Q.  (BY MS. YUN)  OKAY.  I'M GOING TO -- WE CAN SET
9  THAT ONE ASIDE.
10        I'M NOW HANDING YOU WHAT'S BEEN MARKED AS
11  EXHIBIT 2.  IF YOU COULD TAKE A LOOK --
12        (EXHIBIT 2 MARKED.)
13        MS. HUNKER:  CAN WE GO OFF THE RECORD FOR A
14  MINUTE?
15        THE REPORTER:  YES.  WE'RE OFF THE RECORD AT
16  9:49 A.M., CENTRAL STANDARD TIME.
17        (OFF THE RECORD.)
18        THE REPORTER:  THE TIME IS NOW 9:55 A.M.  WE
19  ARE BACK ON THE RECORD.
20     Q.  (BY MS. YUN)  OKAY.  SO RIGHT BEFORE THE BREAK, I
21  HANDED YOU WHAT'S BEEN MARKED AS EXHIBIT 2.
22        COULD YOU DESCRIBE WHAT IT IS?
23     A.  THIS IS A MAY 7, 2021, DENTON RECORD-CHRONICLE
24  ARTICLE ABOUT THE SAME CARROLLTON MAYORAL CANDIDATE
25  INDICTED ON VOTER FRAUD CHARGES.

Page 27

1     Q.  AND DO YOU RECALL GIVING STATEMENTS TO THE DENTON
2  RECORD-CHRONICLE FOR THIS ARTICLE?
3     A.  GENERALLY, YES.
4     Q.  DO YOU HAVE ANY REASON TO BELIEVE THAT THE
5  ARTICLE DOES NOT ACCURATELY REFLECT THE STATEMENTS YOU
6  GAVE TO THE DENTON RECORD-CHRONICLE?
7     A.  I MEAN, IN GENERALITIES I THINK IT'S FINE.  I DID
8  NOTICE HE USED THE WORD POST OFFICE BOX AGAIN, BUT...
9          MS. HUNKER:  AND I'M GOING TO OBJECT TO
10  FORM.  I'M NOT SURE IF YOU MEAN THE FACTS IN THE ARTICLE
11  OR HIS QUOTES.
12        MS. YUN:  HIS STATEMENTS.
13     A.  WELL, I NOTICE I HAVE NO QUOTES IN HERE.  THESE
14  ARE GENERAL COMMENTS MADE BY THE -- I THINK HE'S
15  PARAPHRASING THE CONVERSATION I HAD.  SO I'M NOT QUOTED
16  IN THIS ARTICLE.
17     Q.  (BY MS. YUN)  SURE.  THAT'S FAIR.  SO I WILL JUST
18  READ SOME OF THE PARTS --
19     A.  SURE.
20     Q.  -- THAT I'M GOING TO ASK YOU ABOUT, AND THEN YOU
21  CAN TELL ME WHETHER YOU BELIEVE THAT -- WHETHER YOU
22  AGREE WITH THOSE STATEMENTS REFLECTED HERE.
23        SO ON PAGE 2 OF THE ARTICLE AFTER THIS BIG BREAK
24  IN THE MIDDLE, IT SAYS, "FRANK PHILLIPS, THE DENTON
25  COUNTY ELECTIONS ADMINISTRATOR, TOLD THE DENTON

Page 28

1  RECORD-CHRONICLE IN OCTOBER THAT THIS WAS THE FIRST
2  TIME, TO HIS KNOWLEDGE, HIS OFFICE HAD CONTACTED THE
3  SHERIFF'S OFFICE REGARDING ANY TYPE OF VOTER FRAUD."
4        IS THAT WHAT -- IS THAT STILL AN ACCURATE
5  STATEMENT, TO THE BEST OF YOUR KNOWLEDGE?
6     A.  YES, IT IS.
7     Q.  OKAY.
8     A.  HIS DATES ARE WRONG THERE.  WELL, NOT THAT IT --
9  BUT IF YOU'RE ASKING FOR ACCURACY, HIS DATES ARE WRONG
10  ON MY --
11     Q.  RIGHT.
12     A.  -- TIME IN DENTON COUNTY.
13     Q.  RIGHT.  THE FOLLOWING SENTENCE HAS THE WRONG
14  DATES --
15     A.  YES.
16     Q.  -- ABOUT YOUR -- WHEN YOU SERVED AS THE ELECTIONS
17  ADMINISTRATOR IN DENTON.
18     A.  CORRECT.
19     Q.  AND YOU SAID YOUR BREAK WAS FROM 2014 TO 2016.
20     A.  EXACTLY.
21     Q.  YEAH.  SO THIS HAD -- SO THAT STATEMENT IS
22  TALKING ABOUT UP UNTIL OCTOBER 2020.
23        DID YOUR OFFICE CONTACT ANY LAW ENFORCEMENT
24  AGENCY REGARDING A POTENTIAL CASE OF VOTER FRAUD BETWEEN
25  OCTOBER 2020 AND GOING UP TO THE NOVEMBER GENERAL

Page 29

1  ELECTION IN 2022?
2          MS. HUNKER:  OBJECTION; FORM.
3     A.  OTHER THAN THIS ONE?
4     Q.  (BY MS. YUN)  OTHER THAN THIS ONE.  SINCE THIS
5  HAPPENED.
6     A.  NO.
7     Q.  SO YOU TESTIFIED EARLIER THAT YOU HAD HELPED WITH
8  A SIMILAR CASE IN TARRANT COUNTY.
9        COULD YOU TELL US ABOUT THAT?
10     A.  YES.  IT WAS NOT A CASE THAT WE DISCOVERED.  IT
11  WAS A CASE THAT -- I DON'T KNOW HOW THE AG'S OFFICE WAS
12  WORKING IT OR CAME TO WORK IT, BUT THEY BASICALLY ASKED
13  US FOR DOCUMENTS.
14     Q.  AND WHAT KIND OF -- WHAT KIND OF CASE WAS IT?
15  WHAT KIND OF --
16        MS. HUNKER:  SO I'M GOING TO RAISE AN
17  OBJECTION ON INVESTIGATIVE PRIVILEGE.  TO THE EXTENT
18  THIS CASE HAS NOT BEEN RESOLVED, YOU CAN ANSWER THE
19  QUESTION.  BUT TO KEEP IT TO PUBLIC INFORMATION, GENERAL
20  INFORMATION THAT WOULD NOT COMPROMISE THE INTEGRITY OF
21  ANY INVESTIGATION OR PROSECUTION THAT'S ONGOING.
22        YES, MA'AM.
23     A.  I DO NOT REMEMBER DETAILS OTHER THAN THEY WERE
24  MAIL BALLOT RELATED.
25     Q.  (BY MS. YUN)  OKAY.  WAS IT WITNESS-RELATED



Frank Phillips

March 31, 2023
Pages 38 to 41

Page 38

1   A. I BELIEVE SO.
2   Q. YEAH.
3   A. I DON'T REMEMBER THE EXACT DATE.
4   Q. OKAY. YEAH.
5   A. I BELIEVE THAT'S CORRECT.
6   Q. I WILL JUST -- I CAN ALSO REFRESH YOUR MEMORY ON
7   THE FIRST EXHIBIT WE LOOKED AT, WHICH QUOTED YOU ABOUT
8   THE CARROLLTON CASE.
9   A. UH-HUH.
10  Q. WAS OCTOBER 2020, IS WHEN YOU --
11  A. OKAY.
12  Q. -- SPOKE.
13  A. YEAH.
14  Q. OKAY. I'M SORRY. THAT IS --
15  A. WELL, THAT WOULD BE ACCURATE.
16  Q. YEAH.
17  A. I STILL THINK IT'S ACCURATE.
18  Q. OKAY.
19  A. YEAH.
20  Q. AND SO YOU STILL BELIEVE THAT STATEMENT TO BE
21  ACCURATE THAT IT'S A VERY SMALL FRACTION?
22  A. ABSOLUTELY.
23  Q. OKAY. YOU CAN SET THAT ONE ASIDE.
24     OKAY. WE'RE GOING TO TURN TO SB 1, SB 1'S MAIL
25  VOTING REQUIREMENTS TO BE EXACT.

Page 39

1      SO I THINK YOU ALREADY ANSWERED THIS QUESTION,
2   BUT JUST TO MAKE SURE, SINCE SB 1 WAS IMPLEMENTED, SO
3   DECEMBER OF 2021, YOUR OFFICE HAS NEVER REFERRED -- I
4   BELIEVE YOU TESTIFIED -- AND PLEASE CORRECT ME IF I'M
5   WRONG -- THAT YOUR OFFICE HAS NEVER REFERRED ANY VOTER
6   AS A POTENTIAL CASE OF MAIL VOTER IMPERSONATION SINCE
7   THIS CARROLLTON CASE HAPPENED; IS THAT RIGHT?
8   A. THAT'S CORRECT.
9   Q. OKAY. SO IT IS FAIR TO SAY THAT NO ONE WAS EVER
10  REFERRED TO LAW ENFORCEMENT AS A POTENTIAL CASE OF VOTER
11  FRAUD BASED ON ANY SB 1 MAIL VOTING REQUIREMENTS.
12     MS. HUNKER: OBJECTION; FORM.
13  A. THAT'S FAIR TO SAY FOR DENTON COUNTY, YES.
14  Q. (BY MS. YUN) ARE YOU AWARE OF ANY OTHER COUNTY
15  THAT -- WHERE THAT MAY HAVE HAPPENED?
16  A. I AM NOT.
17  Q. AND WOULD IT -- IS IT FAIR TO SAY THAT IF YOU
18  DETECTED ANY MAIL VOTER IMPERSONATION, YOU WOULD REFER
19  THAT CASE TO A LAW ENFORCEMENT AGENCY?
20  A. YES.
21  Q. JUST GOING BACK, I JUST REMEMBERED THAT YOU SAID
22  THAT WITH THE CARROLLTON CASE, YOU E-MAILED THE
23  SECRETARY OF STATE'S OFFICE, AS WELL AS CALLED THE
24  SHERIFF'S OFFICE.
25     WHAT HAPPENED WITH THE SECRETARY OF STATE'S

Page 40

1   OFFICE?
2   A. NOTHING.
3   Q. OKAY.
4   A. I NEVER GOT A REPLY.
5   Q. UNDERSTOOD.
6      OKAY. SO WHEN I SAY -- I'M GOING TO REFER TO
7   SB 1'S ID NUMBER REQUIREMENTS FREQUENTLY GOING FORWARD.
8   A. OKAY.
9   Q. AND I'M REFERRING TO THE REQUIREMENT THAT EVERY
10  VOTER HAS TO PUT AN ID NUMBER, EITHER THEIR LAST FOUR
11  DIGITS OF THEIR SOCIAL OR THEIR TEXAS ID NUMBER OR CHECK
12  THE BOX THAT THEY DON'T HAVE EITHER --
13  A. CORRECT.
14  Q. -- WHEN THEY'RE SENDING IN THEIR APPLICATION FOR
15  BALLOT BY MAIL OR THEIR MAIL BALLOTS?
16     IS THAT CLEAR?
17  A. YES.
18  Q. OKAY. AND WHEN I SAY ABBM, I'M REFERRING TO THE
19  APPLICATION.
20  A. APPLICATION FOR BALLOT BY MAIL, YES.
21  Q. YES. YEAH. JUST SO THAT THE RECORD IS CLEAR.
22     DO YOU BELIEVE THAT SB 1'S ID NUMBER REQUIREMENTS
23  FOR MAIL VOTING ARE NECESSARY TO PREVENT MAIL VOTER
24  IMPERSONATION?
25     MS. HUNKER: OBJECTION; FORM.

Page 41

1   A. TO YOUR EXACT QUESTION, THE ANSWER WILL BE NO.
2   Q. (BY MS. YUN) AND WHY IS THAT?
3   A. WELL, I MEAN, I THINK WE'VE DONE A DECENT JOB IN
4   THE PAST WITHOUT THOSE REQUIREMENTS, BUT THAT DOESN'T
5   MEAN THESE REQUIREMENTS DON'T ADD ANOTHER LAYER OF
6   SECURITY. SO WE'VE PROVEN WE CAN DO IT WITHOUT IT,
7   BUT -- SO, I MEAN, THAT'S WHAT I BASE THAT OUT OF.
8   WE'VE DONE IT BEFORE WITHOUT IT.
9   Q. UH-HUH. THAT'S FAIR.
10     DO YOU BELIEVE THAT SB 1'S ID REQUIREMENTS ARE
11  NECESSARY TO PREVENT ANY OTHER TYPES OF ELECTION CRIMES?
12  Q. OKAY. WHEN YOU SAY SB 1 REQUIREMENTS, WHAT SB 1
13  REQUIREMENTS ARE YOU SPEAKING OF?
14  A. THE ID NUMBER.
15  A. THE ID NUMBERS?
16     MS. HUNKER: SAME OBJECTION.
17  A. YEAH. OFF THE TOP OF MY HEAD, I CAN'T THINK OF
18  ANY OTHER ELECTION CRIME THAT IT WOULD PREVENT.
19  Q. (BY MS. YUN) OKAY. SO TALKING ABOUT THE --
20  MOVING AWAY FROM ANY ELECTION CRIMES OR REFERRALS TO LAW
21  ENFORCEMENT, I THINK WE'VE -- I SORT OF PARAPHRASED IT
22  EARLIER.
23     BUT, IN YOUR OWN WORDS, WHAT IS YOUR
24  UNDERSTANDING OF SB 1'S ID NUMBER REQUIREMENTS FOR MAIL
25  VOTING?



Frank Phillips

March 31, 2023
Pages 114 to 117

Page 114

1   A. I WOULD SAY YES.
2   Q. DO YOU RECALL EARLY IN THE DEPOSITION MENTIONING
3   THAT YOU THOUGHT THAT MAIL VOTING WAS VULNERABLE TO
4   FRAUD?
5   A. YES.
6   Q. HOW IS MAIL VOTING VULNERABLE TO FRAUD?
7   A. BECAUSE IN ANY OTHER TYPE OF VOTING, THAT BALLOT
8   REMAINS UNDER OUR CONTROL, EITHER OUR CONTROL AT THE
9   OFFICE OR THE POLL WORKERS' CONTROL OUT IN THE FIELD.
10      THAT DOESN'T HAPPEN WITH MAIL BALLOTS. ONCE THAT
11  BALLOT IS MAILED, I DON'T KNOW WHAT HAPPENS TO IT. I
12  DON'T KNOW WHO RECEIVES IT, WHO INTERCEPTS IT, WHO GOT
13  IT OUT OF A MAILBOX. AND SO THAT'S WHY I SAY IT'S
14  SUSCEPTIBLE.
15      SO THERE HAS TO BE A WAY OF DETERMINING WHEN IT
16  COMES BACK THAT THE PERSON WHO GOT THE BALLOT AND
17  RETURNED IT IS THE PERSON WHO IT WAS MEANT TO GO TO.
18      MS. YUN: I WILL JUST NOTE THAT IT'S OUTSIDE
19  THE SCOPE OF THE REDIRECT, BUT KEEP GOING.
20  Q. (BY MS. HUNKER) IN YOUR OPINION, DOES SB 1
21  ADDRESS THAT VULNERABILITY OR SUSCEPTIBILITY?
22      MS. YUN: SAME OBJECTION.
23  A. YES, IT DEFINITELY HELPS.
24      MS. HUNKER: NO FURTHER QUESTIONS.
25      MS. YUN: OKAY.

Page 115

1       THE REPORTER: ARE WE DONE?
2       MS. YUN: YES.
3       THE REPORTER: IS ANYONE REQUESTING A COPY
4   OF THE TRANSCRIPT?
5       MS. YUN: YES.
6       AND, COUNSEL, I'LL JUST REQUEST THAT YOU
7   COPY ME WHEN YOU E-MAIL THE EXHIBIT.
8       THE REPORTER: NO ONE ONLINE -- OR THROUGH
9   ZOOM?
10      MR. KENNY: THIS IS STEPHEN KENNY. I'D LIKE
11  TO REQUEST A COPY OF THE TRANSCRIPT, PLEASE.
12      MR. D'ANGELO: THIS IS WILLIAM D'ANGELO ALSO
13  REQUESTING A COPY OF THE TRANSCRIPT.
14      THE REPORTER: THE TIME IS NOW 12:40. THIS
15  CONCLUDES OUR DEPOSITION FOR TODAY.
16
17
18      (DEPOSITION CONCLUDED AT 12:40 P.M.)
19
20
21
22
23
24
25

Page 116

1       C H A N G E S   A N D   S I G N A T U R E
2   WITNESS NAME:  FRANK PHILLIPS
3   DATE OF DEPOSITION:  MARCH 31, 2023
4
        PLEASE INDICATE CHANGES ON THIS SHEET OF PAPER,
5   GIVING THE CHANGE, PAGE NUMBER, LINE NUMBER, AND REASON
    FOR THE CHANGE.  PLEASE SIGN EACH PAGE OF CHANGES.
6
7   PAGE/LINE       CORRECTION       REASON FOR CHANGE
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

Page 117

1               J U R A T
2       I, _____, HAVE READ THE FOREGOING
3   DEPOSITION AND HEREBY AFFIX MY SIGNATURE THAT SAME IS
4   TRUE AND CORRECT, EXCEPT AS NOTED ABOVE;
5
6
7               FRANK PHILLIPS
8
9   THE STATE OF TEXAS   )
10  COUNTY OF DALLAS     )
11
12      BEFORE ME, _____, ON THIS DAY
13  PERSONALLY APPEARED _____  _____, KNOWN TO ME OR
14  PROVED TO ME UNDER OATH OR THROUGH IDENTITY CARD OR
15  OTHER DOCUMENT TO BE THE PERSON WHOSE NAME IS SUBSCRIBED
16  TO THE FOREGOING INSTRUMENT AND ACKNOWLEDGED TO ME THAT
17  THEY EXECUTED THE SAME OF THE PURPOSES AND CONSIDERATION
18  THEREIN EXPRESSED.
19      GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS _____
20  DAY OF _____, 2023.
21
22      _____
23          NOTARY PUBLIC IN AND FOR
24          THE STATE OF TEXAS
25



Frank Phillips                                      March 31, 2023
                                                    Pages 118 to 119

Page 118

1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE WESTERN DISTRICT OF TEXAS
2                            SAN ANTONIO DIVISION
3     LA UNIÓN DEL PUEBLO      $
      ENTERO, ET AL.,          $
4                              $
            PLAINTIFFS,         $
5                              $
            V.                 $   CIVIL ACTION NO.5:21-CV-844 (XR)
6                              $   (CONSOLIDATED CASES)
      STATE OF TEXAS, ET       $
7     AL.,                     $
                               $
8           DEFENDANTS.        $
9
10                      REPORTER'S CERTIFICATION
                          ORAL DEPOSITION OF
11                            FRANK PHILLIPS
                             MARCH 31, 2023
12
13       I, KAREN GONZALEZ, A NOTARY IN AND FOR THE STATE OF
14    TEXAS, HEREBY CERTIFY TO THE FOLLOWING:
15       THAT THE WITNESS, FRANK PHILLIPS, WAS DULY SWORN BY
16    THE OFFICER AND THAT THE TRANSCRIPT OF THE ORAL
17    DEPOSITION IS A TRUE RECORD OF THE TESTIMONY GIVEN BY
18    THE WITNESS;
19       THAT A COPY OF THE CERTIFICATE WAS SERVED ON ALL
20    PARTIES AND/OR THE WITNESS SHOWN HEREIN ON
21    _____.
22       I FURTHER CERTIFY THAT PURSUANT TO FRCP RULE
23    30(F)(1) THAT THE SIGNATURE OF THE DEPONENT:
24       X  WAS REQUESTED BY THE DEPONENT OR A PARTY BEFORE
25    THE COMPLETION OF THE DEPOSITION AND THAT SIGNATURE IS

Page 119

1     TO BE BEFORE ANY NOTARY PUBLIC AND RETURNED WITHIN 30
2     DAYS FROM DATE OF RECEIPT OF THE TRANSCRIPT.  IF
3     RETURNED, THE ATTACHED CHANGES AND SIGNATURE PAGE
4      CONTAINS ANY CHANGES AND THE REASONS THEREFOR;
5            WAS NOT REQUESTED BY THE DEPONENT OR A
6     PARTY BEFORE THE COMPLETION OF THE DEPOSITION.
7        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,
8     RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES OR
9     ATTORNEYS IN THE ACTION IN WHICH THIS PROCEEDING WAS
10    TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY OR
11    OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.
12       CERTIFIED TO BY ME THIS 26TH DAY OF APRIL, 2023.
13
14
15                      _____
                        KAREN A. GONZALEZ
16                      NOTARY IN AND FOR THE
                        STATE OF TEXAS
17                      NOTARY:  132644762
                        MY COMMISSION EXPIRES:
18                      AUGUST 26, 2024
                        MAGNA LEGAL SERVICES
19                      866-624-6221
                        WWW.MAGNALS.COM
20
21
22
23
24
25



# Exhibit 4

```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO ENTERO,   )
     et al,                        )
 4          Plaintiffs,            )
                                   )
 5   v.                            )    Case No. 5:21-cv-844-XR
                                   )
 6   GREGORY W. ABBOTT, et al.,    )
            Defendants.            )
 7   _____)_____
     OCA-GREATER HOUSTON, et al.,  )
 8          Plaintiffs,            )
                                   )
 9   v.                            )    Case No. 1:21-cv-780-XR
                                   )
10   JOHN SCOTT, et al.,           )
            Defendants.            )
11   _____)_____
     HOUSTON JUSTICE, et al.,      )
12          Plaintiffs,            )
                                   )
13   v.                            )    Case No. 5:21-cv-848-XR
                                   )
14   GREGORY WAYNE ABBOTT, et al., )
            Defendants.            )
15   _____)_____
     LULAC TEXAS, et al.,          )
16          Plaintiffs,            )
                                   )
17   v.                            )
                                   )    Case No. 1:21-cv-0786-XR
18                                 )
     JOHN SCOTT, et al.,           )
19          Defendants.            )
                                   )
20   _____)_____
     MI FAMILIA VOTA, et al.,      )
21          Plaintiffs,            )
                                   )
22   v.                            )    Case No. 5:21-cv-0920-XR
                                   )
23   GREG ABBOTT, et al.,          )
            Defendants.            )
24   _____)_____

25
```

```
 1   UNITED STATES OF AMERICA,      )
            Plaintiff,              )
 2                                  )
     v.                             )      Case No. 5:21-cv-1085-XR
 3                                  )
     THE STATE OF TEXAS, ET AL.,    )
 4          Defendants              )
 5   _____

 6

 7

 8   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 9                  VIDEOTAPED ORAL DEPOSITION OF

10                            BOB KAFKA

11                           April 7, 2022

12   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

13

14

15           VIDEOTAPED ORAL DEPOSITION OF BOB KAFKA, produced as

16   a witness at the instance of the Office of the Attorney

17   General, and duly sworn, was taken in the above-styled and

18   numbered cause on the 7th day of April, 2022, from 10:12 a.m to

19   4:25 p.m., before Dottie Norman, Certified Shorthand Reporter

20   in and for the State of Texas, reported by machine shorthand,

21   at the Offices of Disability Rights Texas, 2222 W. Braker Lane,

22   Austin, Texas, pursuant to the Federal Rule of Civil Procedure

23   30(b)(6) and the provisions stated on the record.

24

25
```

```
 1                   A P P E A R A N C E S

 2   FOR DISABILITY RIGHTS TEXAS:

 3        By:  LIA SIFUENTES DAVIS
                   -and-
 4             LUCIA ROMANO
          2222 W. Braker Lane
 5        Austin, Texas  78758
          512.454.4816

 6

 7   FOR ACLU FOUNDATION OF TEXAS, INC.:

 8        By:  THOMAS BUSER-CLANCY
                   -and-
 9             SAVANNAH KUMAR (Present from 1:30 p.m. - 4:25 p.m.)
          5225 Katy Freeway, Suite 350
10        Houston, Texas  77007
          713.942.8146

11

12   FOR THE OFFICE OF THE ATTORNEY GENERAL:

13        By:  ERIC A. HUDSON, Senior Special Counsel
                   -and-
14             KATHLEEN HUNKER (Via Zoom)
          P.O. Box 12548 (MC-009)
15        Austin, Texas  78711-2548
          512.463.2100

16

17   FOR THE BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE:

18        By:  LISA V. CUBRIEL
          101 W. Nueva, 7th Floor
19        San Antonio, Texas  78205
          210.335.2311
20        (Via Zoom)

21   ALSO PRESENT:
          Manuel Martin, Videographer
22        Michael Stewart:  United States of America (via Zoom)
          Shira Wakschlag:  HAUL Plaintiffs (via Zoom)
23        Anthony Nelson:   Travis County Defendants (via Zoom)
          Courtney Hostetler:  Mi Familia Vota (via Zoom)
24        Leigh Tognetti (via Zoom)
          Sam Fishman (via Zoom)
25        Nick Adkins (via Zoom)
          Julia Longoria (via Zoom)
```

OCA-REPLY-APPX-048

Bob Kafka                                                          April 07, 2022
                                                                        Page 4

```
 1                            INDEX

 2                                                      PAGE
    Appearances  ........................................  2
 3
    BOB KAFKA:
 4
          Examination by Mr. Hudson .......................  6
 5
    Correction Sheet ......................................160
 6
    Signature Page ........................................161
 7
    Reporter's Certificate ................................162
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Bob Kafka                                          April 07, 2022
                                                        Page 5

```
1                              EXHIBITS

2     NUMBER            DESCRIPTION                      PAGE

3
      Defendants' 1     Deposition Notice                  9
4
      Defendants' 2     Plaintiffs' Second Amended Complaint  39
5
      Defendants' 3     Senate Bill 1                      39
6
      Defendants' 4     Witness List August 9, 2021        47
7
      Defendants' 5     Caller Times News Article 6-14-18   56
8
      Defendants' 6     House Journal April 23, 2007       148
9
      Defendants' 7     Indictment - Marlena Rosanne Jackson  151
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1              THE VIDEOGRAPHER:  We are now on the record.

 2   This begins Videotape No. 1 in the deposition of Bob Kafka.

 3   Today is April 7th, 2022, and the time is 10:12 a.m.

 4              Will counsel and all parties present state their

 5   appearance and who they represent?

 6              MS. DAVIS:  Lia Sifuentes Davis for Disability

 7   Rights Texas representing REVUP.

 8              MR. BUSER-CLANCY:  Thomas Buser-Clancy with the

 9   ACLU of Texas representing REVUP in the deposition.

10              MS. ROMANO:  Lucia Romano, Disability Rights

11   Texas representing REVUP.

12              MR. HUDSON:  Eric Hudson on behalf of the State

13   defendants by way of the Office of the Attorney General.

14              I'd also note for the record that we have

15   several participants via the Zoom feature which is being used

16   to simulcast this deposition virtually.  It's my understanding

17   that no cross-notices have been filed.  That said, we have

18   asked the videographer to send through the Chat function of

19   Zoom a request for all parties who are appearing at today's

20   deposition via Zoom to submit their names and information so

21   that they can be included as having appeared at the deposition

22   today.

23                        BOB KAFKA,

24   having been first duly sworn, testified as follows:

25                        EXAMINATION

```
 1              THE VIDEOGRAPHER:  We are back on the record at
 2   2:49.
 3       Q.   (By Mr. Hudson) I want to finish touching on Counts
 4   5 and 6 real quick, so that's pages 61 through 65 of
 5   Defendants' 2.  Again, those are the Title II and
 6   Rehabilitation Act claims as pertaining to 6.04 and 6.06,
 7   right?
 8       A.   Okay.
 9       Q.   And I do want to go back and ask.  We talked about
10   the Title II Count 2 and Rehab Act Count 3, and we talked about
11   Sections 5, right?
12       A.   (Nod).
13       Q.   Now, I'll represent to you I have got a copy of your
14   amended responses in front of me.  And in addition to the
15   counts that are included in your live complaint, it adds some
16   -- some sections.  And I want to put those on the record, too.
17   We have Sections 5.02, 5.03, 5.06, 5.07, 5.08, 5.10, 5.12, 5.13
18   and 5.14 of Senate Bill 1 which is Defendants' 3.  Do you have
19   any reason to dispute that?
20       A.   No.
21       Q.   Now, those sections of Section 5 of Senate Bill 1
22   are challenged through Counts 2 and 3, right?
23       A.   Right.
24       Q.   Counts 6.04 and Section 6.0 --  or Section 6.04 and
25   6.06 are challenged by Counts 5 and 6 in your complaint, right?
```

```
 1                    CHANGES AND SIGNATURE

 2                BOB KAFKA       April 7, 2022

 3   PAGE  LINE      CHANGE                      REASON

 4   _____

 5   _____

 6   _____

 7   _____

 8   _____

 9   _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____
```

1            I, BOB KAFKA, have read the foregoing deposition and

2    hereby affix my signature that same is true and correct, except

3    as noted above.

4                           _____

5

     STATE OF TEXAS          )
6
     COUNTY OF TRAVIS        )

7

8            Before me _____ on this day

9    personally appeared BOB KAFKA, known to me or proved to me

10   under oath or through _____ (description of

11   identity card or other document) to be the person whose name is

12   subscribed to the foregoing instrument and acknowledged to me

13   that they executed the same for the purposes and consideration

14   therein expressed.

15           Given under my hand and seal of office this _____

16   day of _____, 2022.

17

18

19

20                           _____

                             NOTARY PUBLIC IN AND FOR
21                           THE STATE OF TEXAS

22

23

24

25

```
 1                IN THE UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                      SAN ANTONIO DIVISION

 3  LA UNION DEL PUEBLO ENTERO,   )
    et al,                        )
 4          Plaintiffs,           )
                                  )
 5  v.                            )    Case No. 5:21-cv-844-XR
                                  )
 6  GREGORY W. ABBOTT, et al.,    )
            Defendants.           )
 7  _____
    OCA-GREATER HOUSTON, et al.,  )
 8          Plaintiffs,           )
                                  )
 9  v.                            )    Case No. 1:21-cv-780-XR
                                  )
10  JOHN SCOTT, et al.,           )
            Defendants.           )
11  _____
    HOUSTON JUSTICE, et al.,      )
12          Plaintiffs,           )
                                  )
13  v.                            )    Case No. 5:21-cv-848-XR
                                  )
14  GREGORY WAYNE ABBOTT, et al., )
            Defendants.           )
15  _____
    LULAC TEXAS, et al.,          )
16          Plaintiffs,           )
                                  )
17  v.                            )
                                  )    Case No. 1:21-cv-0786-XR
18                                )
    JOHN SCOTT, et al.,           )
19          Defendants.           )
                                  )
20  MI FAMILIA VOTA, et al.,      )
            Plaintiffs,           )
21                                )
    v.                            )    Case No. 5:21-cv-0920-XR
22                                )
    GREG ABBOTT, et al.,          )
23          Defendants.           )

24  _____

25
```

```
 1   UNITED STATES OF AMERICA,      )
           Plaintiff,               )
 2                                  )
     v.                             )    Case No. 5:21-cv-1085-XR
 3                                  )
     THE STATE OF TEXAS, ET AL.,    )
 4         Defendants               )
     _____

 5                      REPORTER'S CERTIFICATION
 6                 VIDEOTAPED ORAL DEPOSITION OF
                             BOB KAFKA
 7                         April 7, 2022

 8              I, DOTTIE NORMAN, Certified Shorthand Reporter

 9   in and for the State of Texas, hereby certify to the following:

10              That the witness, BOB KAFKA, was duly sworn by

11   the officer and that the transcript of the oral deposition is a

12   true record of the testimony given by the witness;

13              I further certify that pursuant to FRCP Rule

14   30(f)(1) that the signature of the deponent:

15              X     was requested by the deponent or a party

16   before completion of the deposition and returned within 30 days

17   from date of receipt of the transcript.  If returned, the

18   attached Changes and Signature Page contains any changes and

19   the reasons therefor;

20              _____ was not requested by the deponent or a

21   party before the completion of the deposition.

22              I further certify that I am neither attorney nor

23   counsel for, related to, nor employed by any of the parties to

24   the action in which this testimony was taken.  Further, I am

25   not a relative or employee of any attorney of record in this
```

Bob Kafka                                                        April 07, 2022
                                                                    Page 164

1  cause, nor am I financially or otherwise interested in the

2  outcome of the action.

3              Subscribed and sworn to on this the _____ day

4  of _____, 2022.

5

6

7              _____
               DOTTIE NORMAN, Texas CSR 2283
8              Expiration Date:  8/31/2023
               Magna Legal Services
9              Firm Registration No. 633
               16414 San Pedro, Suite 900
10             San Antonio, Texas  78232
               866.672.7880

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 5

```
1                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
2                      SAN ANTONIO DIVISION

3

  LA UNIÓN DEL PUEBLO          §      Case No.
4 ENTERO, et al.,              §      5:21-cv-844-XR
       Plaintiffs,             §
5                              §
  v.                           §
6                              §
  GREGORY W. ABBOTT, et        §
7 al.,                         §
       Defendants.             §
8                              §
                               §
9                              §
  OCA-GREATER HOUSTON, et      §      Case No.
10 al.,                        §      1:21-cv-780-XR
       Plaintiffs,             §
11                             §
  v.                           §
12                             §
  JOHN SCOTT, et al.,          §
13     Defendants.             §
                               §
14                             §
                               §
15 HOUSTON JUSTICE, et al.,    §      Case No.
       Plaintiffs,             §      5:21-cv-848-XR
16                             §
  v.                           §
17                             §
  GREGORY WAYNE ABBOTT, et     §
18 al.,                        §
       Defendants.             §
19                             §
                               §
20                             §
  LULAC TEXAS, et al.,         §      Case No.
21     Plaintiffs,             §      1:21-cv-0786-XR
                               §
22 v.                          §
                               §
23 JOHN SCOTT, et al.,         §
       Defendants.             §
24                             §
                               §
25                             §
  MI FAMILIA VOTA, et al.,     §      Case No.
```

```
 1      Plaintiffs,              §      5:21-cv-0920-XR
                                 §
 2  v.                           §
                                 §
 3  GREG ABBOTT, et al.,         §
        Defendants.              §
 4                               §
                                 §
 5                               §
    UNITED STATES OF AMERICA,    §      Case No.
 6      Plaintiff,               §      5:21-cv-1085-XR
                                 §
 7  v.                           §
                                 §
 8  THE STATE OF TEXAS, et       §
    al.,                         §
 9      Defendants.

10

11          ORAL AND VIDEOTAPED DEPOSITION OF
                       DEBORAH CHEN
12                    MARCH 28, 2022

13

14

15      ORAL AND VIDEOTAPED DEPOSITION OF DEBORAH CHEN,

16  produced as a witness at the instance of the Defendants

17  and duly sworn, was taken in the above styled and

18  numbered cause on Monday, March 28, 2022, from

19  10:31 a.m. to 7:24 p.m., before DONNA QUALLS, Notary

20  Public in and for the State of Texas, reported by

21  computerized stenotype machine, at the offices of the

22  Houston Chinese Community Center, 9800 Town Park Drive,

23  Houston, Texas, pursuant to the Federal Rules of Civil

24  Procedure, and any provisions stated on the record or

25  attached hereto.
```

```
 1                    A P P E A R A N C E S

 2
      FOR THE PLAINTIFF, OCA-GREATER HOUSTON:
 3         ZACHARY DOLLING
           HANI MIRZA
 4         TEXAS CIVIL RIGHTS PROJECT
           1405 Montopolis Drive
 5         Austin, Texas  78741
           (512) 474-5073
 6         zachary@texascivilrightsproject.org
           hani@texascivilrightsproject.org
 7

 8
      FOR THE PLAINTIFFS, OCA-GREATER HOUSTON:
 9         SUSANA LORENZO-GIGUERE
           ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION
10         FUND
           99 Hudson Street, 12th Floor
11         New York, New York  10013
           (212) 966-5932
12         slorenzo-giguere@aaldef.org

13

14    FOR THE PLAINTIFFS, LULAC TEXAS:
           NOAH BARON (Remotely)
15         ELIAS LAW GROUP
           10 G. Street NE, Suite 600
16         Washington, District of Columbia  20002
           (202) 968-4556
17         nbaron@elias.law

18

19    FOR THE DEFENDANT, OFFICE OF THE ATTORNEY GENERAL:
           KATHLEEN T. HUNKER
20         ARISTOTLE HERBERT (Remotely)
           OFFICE OF THE ATTORNEY GENERAL
21         P.O. BOX 12548 (MC-009)
           AUSTIN, TEXAS  78711-2548
22         (512) 463-2100
           kathleen.hunker@oag.texas.gov
23

24

25
```

```
 1    FOR THE DEFENDANTS, BEXAR COUNTY DISTRICT ATTORNEY'S
      OFFICE:
 2         LISA V. CUBRIEL (Remotely)
           BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE
 3         101 West Nueva Street, 7th Floor
           San Antonio, Texas 78205
 4         (210) 335-2142
           lisa.cubriel.bexar.org
 5

 6
      Also Present (Remotely):
 7         Georgina Yeomans (LDF)
           Jason S. Kanterman
 8         Jon Bash
           Lia Sifuentes Davis
 9         Leigh Tognetti
           Kevin Zhen (FF)
10         Jennifer Yun (DOJ)
           Julia Longoria
11         Savannah Kumar
           Ari Herbert
12         Wendy Olson
           Tiffany Bingham
13         Jerry Vattamala - AALDEF
           Tony Nelson - Travis County
14         Josephine Ramirez
           Ciara Sisco - NAACP LDF
15         Katelynn Lujan, KTA Videographer
           Kamesha Archie, KTA Videographer (In person)
16

17

18

19

20

21

22

23

24

25
```

```
 1                         INDEX

 2                                                   PAGE

 3
      Appearances...................................   3
 4

 5    DEBORAH CHEN

 6    Examination by Ms. Hunker.....................   7
      Examination by Mr. Dolling....................  268
 7    Further Examination by Ms. Hunker.............  274

 8
      Signature Waived
 9

10    Reporter's Certificate........................  281

11
                       EXHIBIT INDEX
12

13    NUMBER           DESCRIPTION                    PAGE
      Exhibit 1        Notice of Deposition           13
14    Exhibit 2        Plaintiff's Second Amended     17
                       Complaint
15    Exhibit 3        Plaintiff OCA-Greater Houston's 34
                       Amended Objections and
16                     Responses to State Defendants'
                       First Set of Interrogatories
17    Exhibit 5        Enrolled Bill, SB 1            130
      Exhibit 6        Tweet                          210
18    Exhibit 9        Election Code Title 1,         233
                       Chapter 1
19    Exhibit 10       Statement                      238
      Exhibit 11       November 3rd, 2020, General and 81
20                     Special Elections Early Voting
                       Schedule for Harris County
21    Exhibit 12       News Article                  127

22

23

24

25
```

```
 1                    THE REPORTER:  We are on the record.
 2   Today's date is Monday, March 28, 2022.  The time is
 3   10:31 a.m.  This is the oral and videotaped deposition
 4   of Deborah Chen, and it is being conducted in person and
 5   remotely by agreement of the parties.
 6                    My name is Donna Qualls with Kim Tindall &
 7   Associates.  I am the court reporter.  I will be
 8   administering the oath and reporting the deposition
 9   remotely by stenographic means.
10                    Would counsels please state their name and
11   appearance for the record.
12                    MS. HUNKER:  Kathleen Hunker from the
13   State.  I am accompanied by my cocounsel, Aristotle
14   Herbert, who is participating remotely.
15                    MS. GIGUERE:  For OCA-GH, this is Susanna
16   Lorenzo-Giguere from the Asian American Legal Defense
17   and Education Fund.
18                    MR. DOLLING:  I'm Zach Dolling for
19   OCA-Greater Houston, and I am with the Texas Civil
20   Rights Project.
21                    MR. MIRZA:  For OCA-Greater Houston, my
22   name is Hani Mirza.  I'm with the Texas Civil Rights
23   Project.
24                    THE REPORTER:  Did anybody else online want
25   to introduce themselves?
```

```
 1                    DEBORAH CHEN,
 2   having been duly sworn, testified as follows:
 3                    EXAMINATION
 4   BY MS. HUNKER:
 5       Q.  Good morning, Ms. Chen.
 6       A.  Good morning.
 7       Q.  How are you today?
 8       A.  Good.
 9       Q.  As I stated just earlier, my name is Kathleen
10   Hunker.  I'm the attorney representing the state
11   defendants in this matter.
12              Before we start the deposition, I just want
13   to get one housekeeping matter to the side.  And that
14   is, your counsel, OCA-Greater Houston, has agreed to
15   keep the deposition open for a limited purpose, if
16   OCA-Greater Houston identifies and discloses a member
17   who is harmed after or -- the date of this deposition.
18   If you can just --
19              MS. HUNKER:  If your cocounsel can just
20   state if that was the -- their understanding of the
21   agreement as well?
22              MS. GIGUERE:  Yes.  That is the sole
23   purpose for this agreement, just for that reason.
24              MS. HUNKER:  Yes.
25              And in exchange, we amended Deposition
```

1   that this does not answer is, if somebody is requesting

2   a mail-in ballot, that implies that they are a senior or

3   they're disabled or ill or they're out of state.  And if

4   this requires them to go in person to correct something,

5   how -- how would they do that?

6       Q.  (BY MS. HUNKER)  We're going to be talking a

7   little bit later about the online cure.  But we'll get

8   to that in a bit.

9           So you've not done any analysis to

10  determine whether or not the cure mechanism would be

11  sufficient or un- -- or insufficient.  This is just

12  based on your speculation?

13          MR. DOLLING:  Objection; calls for a legal

14  conclusion.

15      A.  This is based on the direct words, just the

16  reading of how it's written.

17      Q.  (BY MS. HUNKER)  Okay.

18      A.  It's not -- well, it's -- it's just overly

19  broad.  It's not clear.

20      Q.  So it's based on the text?

21      A.  Yes.

22      Q.  Okay.  And let's move to Section 5.08.  And

23  this starts on the next page, page 39, line 11.

24          And take a few moments to read it and

25  please let me know when you are done.

```
 1        A.   Yes.
 2        Q.   And so this provision does not regulate
 3   OCA-Greater Houston directly, correct?
 4              MR. DOLLING:   Objection; calls for a legal
 5   conclusion.
 6        A.   I don't believe it does.
 7        Q.   (BY MS. HUNKER)   Okay.   The section instead
 8   talks about the space in the carrier envelope where the
 9   information -- namely, the voter's driver's license,
10   identification certificate, personal identification
11   card, or a social security number or a statement by the
12   applicant they haven't been issued one of these
13   numbers -- would be provided.
14              Is that an accurate summation of this
15   section?
16        A.   Yes.
17        Q.   And what is the specific harm that is suffered
18   by OCA-Greater Houston?   Is it the same as was described
19   above in regards to education?
20              MR. DOLLING:   Objection; calls for a legal
21   conclusion.
22              You can answer.
23        A.   The specific harm is similar to other sections
24   in regards to education and assistance for potential
25   voters.
```

1      Q.  (BY MS. HUNKER)  And the same -- it would be
2  the same programs and activities that were curtailed or
3  unable to be held, is that correct, as a result of
4  Section 5.08?
5      A.  Yes.  And the information that we may need to
6  create to -- to be able to explain this although I'm --
7  I'm not sure if we're able to actually explain this to
8  people.
9      Q.  All right.  And you haven't segregated the
10 specific harm in that you don't know the exact amount or
11 allocation of resources that were a result of
12 Section .508 [sic] as compared to other provisions of
13 SB 1?
14     A.  No, I have not sat to calculate out
15 specifically for this particular section.
16     Q.  And have you segregated that amount from any
17 of -- other changes in election law that came this past
18 year?
19     A.  I have not sat down to calculate out the
20 specific, you know, dollar amount by provision.
21     Q.  Okay.
22     A.  For each section, no.
23     Q.  And same with manpower, correct?
24     A.  Correct.
25     Q.  And you can't identify a specific individual

1  you believe would have as a result of 5.13 be similar to
2  the harms that you described with the other subsections?
3      A.  Similar only in the sense that this potentially
4  could prevent somebody's vote from counting or being
5  able to vote.
6      Q.  But you're not aware of anybody, as you sit
7  here, that was denied?
8      A.  Correct.
9      Q.  Moving on to Subsection -- sorry -- 5 --
10  Section 5.14 which is "Opportunity to correct defect:
11  Early voting ballot board."  It is similar to the one
12  regarding the signature verification committee, however,
13  just focused on the early voting ballot board.
14          It's a relatively long section.  Let me
15  know when you've got a decent sense of it, and we can
16  continue.
17      A.  Thank you.
18          Okay.
19      Q.  Okay.  So I'm not going to summarize since
20  it's -- would you agree with me that it's similar to the
21  one for the signature verification committee but
22  directed towards the early voting ballot board?
23      A.  Yes.
24      Q.  Okay.  This is, again, not regulating
25  OCA-Greater Houston directly, correct?

1              MR. DOLLING:  Objection; calls for a legal

2    conclusion.

3              You can answer.

4         A.  I believe so.

5         Q.  (BY MS. HUNKER)  And would -- is the harm the

6    same as it was for Section 5.12, the signature

7    verification committee, which is the education component

8    that OCA-Greater Houston would have to incur?

9         A.  Education and assistance, yes.

10        Q.  Education and assistance.

11             And as with the other sections, you haven't

12   segregated the specific harm that was a result of this

13   section as compared to the other sections, correct?

14        A.  Correct.

15        Q.  And that's true of both manpower and monetary

16   resources, correct?

17        A.  Correct.

18        Q.  And is the harm suffered -- alleged to be

19   suffered on voters the same with Section 5.14 as it is

20   for Section 5.12?

21             MR. DOLLING:  Objection; calls for a legal

22   conclusion.

23             You can answer.

24        A.  I don't know if it would be the same because

25   it's different bodies.  And, like, Section -- or

```
 1   COUNTY OF HARRIS )

 2   STATE   OF   TEXAS )

 3

 4                 REPORTER'S CERTIFICATION

 5

 6        I, Donna Qualls, Notary Public in and for the State

 7   of Texas, hereby certify that this transcript is a true

 8   record of the testimony given and that the witness was

 9   duly sworn by the notary.

10        I further certify that I am neither attorney nor

11   counsel for, related to, nor employed by any of the

12   parties to the action in which this testimony was taken.

13        Further, I am not a relative or employee of any

14   attorney of record in this cause, nor do I have a

15   financial interest in the action.

16        Subscribed and sworn to on this the 11th day of

17   April, 2022.

18

19

20
                              _____
21                            DONNA QUALLS
                              Notary Public in and for
22                            The State of Texas
                              My Commission expires 11/02/2022
23
                              Magna Legal Services
24                            Firm Registration No. 633
                              16414 San Pedro, Suite 900
25                            San Antonio, Texas 78232
                              (210)  697-3400
```

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 5:21-cv-844-XR |
| | § | [Lead Case] |
| GREGORY W. ABBOTT, *et al.*, | § | |
| *Defendants*. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 5:21-cv-1085-XR |
| | § | [Consolidated Case] |
| THE STATE OF TEXAS, ET AL., | § | |
| *Defendants* | § | |

**STATE DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES**
**TO THE UNITED STATES' SECOND SET OF INTERROGATORIES**

TO:   Plaintiff the United States of America, by and through their attorneys of record, Michael E. Stewart, Daniel J. Freeman, Richard Alan Dellheim, Dana Paikowsky, and Jennifer Yun, United States Department of Justice Civil Rights Division, 950 Pennsylvania Avenue NW, Washington, DC 20530

Jane Nelson, in her official capacity as the Texas Secretary of State, and the State of Texas (collectively "State Defendants"[1]) hereby serve their Supplemental Objections and Responses to the United States' Second Set of Requests for Interrogatories, pursuant to the Federal Rules of Civil Procedure. Because present circumstances prevent State Defendants from signing these responses, State Defendants' counsel will serve properly executed interrogatory answers on the requesting party not later than 21 days after serving these unexecuted answers. *See* W.D. Tex. Local Rule CV-33(a).

---

[1] All previous references to "Defendants" have been changed to "State Defendants" for the sake of clarity.

1

Date: January 19, 2023

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

WILLIAM T. THOMPSON
Acting Chief, Special Litigation Unit
Tex. State Bar No. 24088531

BRENT WEBSTER
First Assistant Attorney General

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
will.thompson@oag.texas.gov
kathleen.hunker@oag.texas.gov

**Counsel for State Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2023, the attached State Defendants' Supplemental Objections and Responses to the United States' Second Request of Interrogatories was served on opposing counsel via electronic mail.

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel

2

## GENERAL OBJECTIONS

Under Rule 26(b)(1), the proper scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (2015). Among the considerations that are germane to that inquiry are "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, State Defendants object to these requests to the extent that the information sought is either irrelevant or disproportionate.

State Defendants object to the definition of "conviction" or "convicted" as vague, overbroad, and ambiguous. Specifically, the term "an admission or finding of guilt" is subject to different interpretations. State Defendants understand the term to include pleas of guilt, stipulations of guilt, and acknowledgments of the offense. Therefore, State Defendants understand the terms "conviction" and "convicted" not to pertain to cases in which a defendant or suspect pleaded nolo contendere or no contest, or to cases in which a defendant otherwise reached an outcome that—though not a conviction by a judge or jury in a court of law—nonetheless involved violation of Texas Law.

3

State Defendants also object to the definition of "impermissible in-person voter assistance" as vague and ambiguous. Specifically, it is defined as "the acts of influencing or coercing a voter in the presence of their ballot"; yet Interrogatory No. 4 seeks instances of "impermissible in-person voter assistance" that occurred "by influencing or coercing a voter in the presence of their ballot." Therefore, this definition is tautological, and its meaning is not discernible. For this reason, State Defendants interpret the term "impermissible in-person voter assistance" to mean any in-person voter assistance that is not permissible.

Finally, State Defendants object to the definition of "voting by impersonation" as vague and ambiguous. The definition uses the term "vote harvesting," which is not defined. Therefore, State Defendants adopt the meaning of "vote harvesting" that State Defendants have otherwise used in the course of this litigation. Furthermore, the definition of "voting by impersonation" includes "improperly returning a ballot on behalf of another," which is a broad, sweeping, and undefined category of conduct. For this reason, the term "voting by impersonation" is vague and ambiguous because it is not limited in scope. Hence, State Defendants interpret the term "voting by impersonation" as those instances in which someone illegally votes as or on behalf of someone who is eligible to vote that does not constitute vote harvesting.

These answers and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. All answers are given without prejudice to State Defendants' right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these answers and objections are not intended to be, and shall not be construed as, agreement with the United States' characterization of any facts, circumstances, or legal obligations. State Defendants reserve the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

4

State Defendants will provide their answers based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. State Defendants object to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. State Defendants will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

5

**SPECIFIC OBJECTIONS AND RESPONSES TO THE UNITED STATES' SECOND SET OF INTERROGATORIES**

**INTERROGATORY NO. 4**: State each instance in which a person has been convicted of violating Texas law for providing or attempting to provide impermissible in-person voter assistance by influencing or coercing a voter in the presence of their ballot, including but not limited to relevant violations of Sections 64.012(a)(4), 64.036, 276.013(a)(1), and 276.013(a)(6) of the Texas Election Code.

**OBJECTIONS AND RESPONSE:**

State Defendants object to this interrogatory to the extent that the information sought is not proportional to the needs of this case and unduly burdensome, including for the reason that the United States does not limit its request to particular date ranges or particular statutory provisions. To that end, State Defendants object to this interrogatory to the extent that it requires State Defendants to search and examine all case records without limitation to time or statutory provision. *See* Fed. R. Civ. P. 26(b)(1). The Office of the Attorney General of Texas began tracking, investigating, and prosecuting election fraud cases in 2004. Therefore, State Defendants read this interrogatory to seek information dating from 2004 to the present. Furthermore, the Office of the Attorney General of Texas may not be aware of other prosecutions that may have been filed by criminal district attorneys.

Additionally, State Defendants object to this Interrogatory to the extent that it calls for information that is publicly available or otherwise equally accessible to the United States. In that same vein, the Office of the Attorney General has already produced charts of pending and completed prosecutions from the Office of the Attorney General, as well as copies of prosecution-diversion agreement at bates stamped ranges STATE087312–STATE087395. Those materials represent a summary of business records held by the Office of the Attorney General, and ascertaining the information requested in this interrogatory will impose substantially the same burden on OAG as it would Plaintiffs' counsel. Fed. R. Civ. P. 33(d).

Finally, State Defendants object to this interrogatory to the extent that it calls for information subject to investigative privilege, attorney–client privilege, or attorney work-product privilege. Because the Office of the Attorney General is actively involved in investigations and prosecutions of election-related crimes, all three privileges likely apply to on-going investigations and prosecutions.

Subject to and without waiving these objections, State Defendants answer as follows:

The following table represents convictions for providing impermissible in-person voter assistance by influencing or coercing a voter in the presence of his or her ballot but does not include mere instances of such occurrences without convictions:

6

| Case No. | Name | Location | Resolution Date | Laws Violated | Final Disposition |
|---|---|---|---|---|---|
| S-18-3065-CR; 18-CR-83358 | Rosita Tones Flores | Nueces/ San Patricio County | 6/12/2018 | Tex. Elec. Code§§ 64.012, 86.006, 64.036 | Convicted |
| 06-CR-2166-B | Maria Dora Flores | Nueces County | 8/4/2006 | Tex. Elec. Code§ 64.012 | Pleaded Guilty |
| 11-05590- CRM-CCL1 | Christine Thomas Shank | Brazos County | 2/6/2012 | Tex. Elec. Code§ 64.036 | Pleaded Guilty |
| 1108201ICCL- B | Gilda Hernandez | Dallas/ Rockwall County | 4/5/2012 | Tex. Elec. Code§§ 86.006, 64.036, 86.010 | Pleaded Guilty |
| 4-CCR-02977-A/14-CCR-02983-A/14-CCR-02984-A/14-CCR-02985-A/14-CCR-02987-A/14-CCR-02989-A/14-CCR-02991-A/14-CCR-02993-A/14-CCR-02995-A/14-CCR-02996-A/14-CCR-02997-A/14-CCR-02999-A/14-CCR-03003-A | Tomasa Chavez | Cameron County | 1/22/2015 | Tex. Elec. Code§§ 86.0051, 86.010, 86.006, 64.036 | Pleaded Guilty |
| 14-CCR-02980-A | Facunda Garcia | Cameron County | 3/19/2015 | Tex. Elec. Code§ 64.036 | Pleaded Guilty |

7

| | | | | | |
|---|---|---|---|---|---|
| 14-CCR-02978-C/14-CCR-02998-C/14-CCR-03000-C/14-CCR-03001-C/14-CCR-03002-C/14-CCR-03004-C/14-CCR-03005-C/14-CCR-03006-C/14-CCR-03007-C/14-CCR-03008-C | Vicenta Verino | Cameron County | 8/19/2015 | Tex. Elec. Code§§ 64.036, 86.010, 86.0051, 86.006 | Pleaded Guilty |
| CR-15-08767- E; CR-15- 08768-E; CR-15-08769-E; CR-15-08770- E; CR-15- 08771-E; CR-15-08772-E; CR-15-08773- E; CR-15- 08774-E; CR-15-08775-E; CR-15-08776- E; CR-15- 08777-E; CR-15-08778-E; CR-15-08779- E; CR-15- 08780-E; CR-15-08781-E | Guadalupe Rivera, Sr. | Hidalgo County | 7/11/2016 | Tex. Elec. Code§ 64.036 | Pleaded Guilty |
| 20080,20081 | Christina Lichtenberger | Duval/Live Oak County | 12/14/2010 | Tex. Elec. Code§§ 64.036, 86.006 | Pleaded Guilty |
| 20082,20083 | Andrea Campos Bierstedt | Duval/Live Oak County | 12/14/2010 | Tex. Elec. Code§§ 64.036, 86.006 | Acknowledgment of Offense |

8

| 14-CCR-02979-A/14-CCR-03010-A/14-CCR-03011-A | Bernice Garcia | Cameron County | 4/8/2015 | Tex. Elec. Code §§ 64.036, 86.006, 86.0051 | Acknowledgment of Offense |
|---|---|---|---|---|---|
| CX3772923814 | Consuelo Barrientos Cantu | Frio County | 6/15/2018 | Tex. Elec. Code § 64.036 | Stipulation of Guilt |
| CX3772923814 | Maria Delcarmen Vela | Frio County | 6/15/2018 | Tex. Elec. Code § 64.036 | Stipulation of Guilt |
| 20084, 20085, 20086, 20087, 20088, 20089, 20090,20091 | Alicia Pena Perez | Duval/Live Oak County | 12/14/2010 | Tex. Elec. Code §§ 64.036, 86.006 | Pleaded Guilty |

**INTERROGATORY NO. 5:** State each instance in which a person has been convicted of violating Texas law by voting or attempting to vote by impersonation using a mail ballot, including but not limited to violations of Sections 64.012, 64.036, 276.013(a)(2), 276.013(a)(3), or 276.013(a)(7) of the Texas Election Code.

**OBJECTIONS AND RESPONSE:**

State Defendants object to this interrogatory to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome, including for the reason that the United States does not limit its request to particular date ranges or particular statutory provisions. To that end, State Defendants object to this interrogatory to the extent that it requires State Defendants to search and examine all case records without limitation to time or statutory provision. *See* Fed. R. Civ. P. 26(b)(l). The Office of the Attorney General of Texas began tracking, investigating, and prosecuting election fraud cases in 2004. Therefore, State Defendants read this interrogatory to seek information dating from 2004 to the present. Furthermore, the Office of the Attorney General of Texas may not be aware of other prosecutions that may have been filed by criminal district attorneys.

Additionally, State Defendants object to this interrogatory to the extent that it calls for information that is publicly available or otherwise equally accessible to the United States. In that same vein, the Office of the Attorney General has already produced charts of pending and completed prosecutions from the Office of the Attorney General, as well as copies of prosecution-diversion agreement at bates stamped ranges STATE087312-STATE087395. Those materials represent a summary of business records held by the Office of the Attorney General, and ascertaining the information requested in this interrogatory will impose substantially the same burden on OAG as it would Plaintiffs' counsel. Fed. R. Civ. P. 33(d).

9

Finally, State Defendants object to this interrogatory to the extent that it calls for information subject to investigative privilege, attorney-client privilege, or attorney work-product privilege. Because the Office of the Attorney General is actively involved in investigations and prosecutions of election-related crimes, all three privileges likely apply to on-going investigations and prosecutions.

Subject to and without waiving these objections, State Defendants answer as follows:

State Defendants understand this interrogatory not to pertain to cases involving violation of Texas Law for voting or attempting to vote by impersonation not through the use of a mail ballot. Nor do State Defendants understand this interrogatory to pertain to cases that might also constitute vote harvesting. Therefore, State Defendants identify the following convictions for voting or attempting to vote by impersonation using a mail ballot but do not include mere instances of such occurrences without convictions:

| Case No. | Name | Location | Resolution Date | Laws Violated | Final Disposition |
|---|---|---|---|---|---|
| B-05-2101-0-CR-B | Melva Kay Ponce | Bee County | 7/26/2005 | Tex. Elec. Code§ 64.012 | Pleaded Guilty |

**SUPPLEMENTAL RESPONSE:** Subject to State Defendants' understanding of the meaning and parameters of this interrogatory as set forth in their original response, the individual and case identified above remains the only instance that is responsive to this interrogatory.

**INTERROGATORY NO. 6:** State the number of voters who have collected, modified, or added a Texas driver's license number, Texas election identification certificate number, Texas personal identification card number, or the last four digits of their social security number to their voter registration record using any online portals provided pursuant to SB 1 from December 2, 2021 until the present, disaggregated by portal. In answering this interrogatory, do not include voter registration information submitted or updated as part of an online driver license renewal or change-of-address transaction, pursuant to Section 5 of the National Voter Registration Act, 52 U.S.C. § 20504, and the settlement agreement in *Stringer v. Hughs,* No. 5:21-cv-46 (W.D. Tex.).

**OBJECTIONS AND ORIGINAL RESPONSE:**

State Defendants object to this interrogatory to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, or unduly burdensome. Additionally, State Defendants object to this interrogatory to the extent that it requests information through "the present," which would result in the inclusion of incomplete and inaccurate information if applied to the May 7, 2022 election, for which early voting began on April 25, 2022. Subject to and without waiving these objections,

State Defendants answer as follows:

State Defendants do not possess the capability to provide information responsive to this interrogatory. Aside from the methods specifically excluded in the interrogatory itself, the only "online portal[]" through which the referenced identifying information could have been updated by a voter is located on the Texas.gov website. That website is maintained by the Texas Department of Information Resources, which is not a party to this case. A voter is required to enter his current driver license number, ID number, voter registration card VUID, and Social Security Number in order to access this portal for the purpose of updating the voter's name or address. The identifying information of voters who submit a change of name or address on Texas.gov is transmitted to the Office of the Texas Secretary of State ("SOS") on a nightly basis. If the TEAM database is missing the driver license/ID number or Social Security number disclosed by the voter in gaining access to Texas.gov, that voter's missing information is updated in TEAM.

There is no individual field or combination of fields in TEAM that would allow State Defendants to isolate the specific information requested in this interrogatory. The TEAM system contains an audit log that tracks the history of changes or updates made to a voter's record, but that audit log does not differentiate between the types of changes offered through the Texas.gov system. Because of these limitations that are inherent in the TEAM system, State Defendants are unable to provide data that is responsive to this interrogatory.

**SUPPLEMENTAL RESPONSE:**

Subject to State Defendants' understanding of the meaning and parameters of this interrogatory as set forth in their original response, State Defendants remain unable to provide data responsive to this interrogatory.

**INTERROGATORY NO. 7:** State the number of voters who have cured identification defects in their Application for a Ballot By Mail using any online portals provided pursuant to SB 1 from December 2, 2021 until the present, disaggregated by portal.

**OBJECTIONS AND ORIGINAL RESPONSE:**

State Defendants object to this interrogatory to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, or unduly burdensome. Additionally, State Defendants object to this interrogatory to the extent that it requests information through "the present," which would result in the inclusion of incomplete and inaccurate information if applied to the May 7, 2022 election, for which early voting began on April 25, 2022. Subject to and without waiving these objections, State Defendants answer as follows:

The only "online portal[]" through which identification defects in a voter's Application for a Ballot By Mail ("ABBM") may be cured is the Ballot by Mail Tracker available at VoteTexas.gov.[2] A voter can use the Tracker to cure an initial failure to provide any of the required personal identification numbers or if the numbers provided do not match the voter registration record. While SOS can

---

[2] https://teamrv-mvp.sos.texas.gov/BallotTrackerApp/#/login

determine the number of voters who used the Tracker to correct a defect in their ABBM and subsequently had their ABBM accepted, this total does not necessarily provide the exact information requested in this interrogatory. That is because the TEAM system is a living database that captures only the current or most recent status associated with any information in a voter's record. Therefore, State Defendants can only provide ABBM figures for the March 1, 2022 Primary reflecting the final status of voters in the TEAM system. With those caveats and limitations in mind, State Defendants can represent that the total number of ABBMs submitted for the March 1, 2022 Primary was 264,647; the total number of voters who used the Tracker to correct a defect in their ABBM was 364; and the total number of those voters who used the Tracker to correct a defect in their ABBM and either had their ABBM accepted or cancelled their application and instead voted in person was 237.

**SUPPLEMENTAL RESPONSE:** Subject to State Defendants' understanding of the meaning and parameters of this interrogatory as set forth in their original response, State Defendants supplement their response with the following counts as calculated by the Texas Secretary of State:

> May 7, 2022 Constitutional Amendment Election
> Total number of ABBMs submitted: 288,865.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM: 48.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM and had their ABBM accepted or cancelled their application and voted in person: 16.

> May 24, 2022 Primary Runoff Election
> Total number of ABBMs submitted: 280,277.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM: 11.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM and had their ABBM accepted or cancelled their application and voted in person: 7.

> November 8, 2022 General Election
> Total number of ABBMs submitted: 431,571.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM: 523.
> Total number of voters who used the Ballot by Mail Tracker to correct a defect in their ABBM and had their ABBM accepted or cancelled their application and voted in person: 419.

**INTERROGATORY NO. 8:** State the number of voters who have cured carrier envelope identification defects using any online portal provided pursuant to SB 1 from February 9, 2022 to present, disaggregated by portal.

**OBJECTIONS AND ORIGINAL RESPONSE:**

State Defendants object to this interrogatory to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, or unduly burdensome. Additionally, State Defendants object to this interrogatory to the extent that it requests information through "the present," which would result in the inclusion of incomplete and inaccurate information if applied to the May 7, 2022 election, for which early voting began on April 25, 2022. Subject to and without waiving these objections, State Defendants

12

answer as follows:

The only "online portal[]" through which a voter may cure carrier envelope identification defects is again the Ballot by Mail Tracker available at VoteTexas.gov. Using this portal, a voter can cure the following three defects:

1. The carrier envelope did not contain the voter's Texas Driver's License Number, Texas Personal Identification Number, Texas Election Identification Certificate Number, or the Last 4 digits of his Social Security Number;
2. The identification number provided by the voter did not match the number associated with his voter registration record; or
3. The voter was not issued one of the documents with the required number and did not indicate this fact on the carrier envelope.

SOS can determine the number of voters who used the Tracker to correct a defective carrier envelope and subsequently had their mail-in ballot accepted, but this total does not necessarily provide the exact information requested in this interrogatory. That is because the TEAM system is a living database that captures only the current or most recent status associated with any information in a voter's record. Therefore, State Defendants can only provide mail ballot figures for the March 1, 2022 Primary reflecting the final status of voters in the TEAM system. Considering those limitations, State Defendants can represent that the total number of mail ballots submitted for the March 1, 2022 Primary was 198,947; the total number of voters who used the Tracker to correct a defective carrier envelope was 2,628; and the total number of voters who used the Tracker to correct a defective carrier envelope and either had their mail ballot accepted or cancelled their mail ballot and instead voted in person was 1,788.

**SUPPLEMENTAL RESPONSE:** Subject to State Defendants' understanding of the meaning and parameters of this interrogatory as set forth in their original response, State Defendants supplement their response with the following counts as calculated by the Texas Secretary of State:

May 7, 2022 Constitutional Amendment Election
Total number of mail ballots submitted: 190,469.
Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope: 1,017.
Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope and had their mail ballot accepted or cancelled their mail ballot and voted in person: 937.

May 24, 2022 Primary Runoff Election
Total number of mail ballots submitted: 183,260.
Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope: 1,071.
Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope and had their mail ballot accepted or cancelled their mail ballot and voted in person: 1,063.

November 8, 2022 General Election
Total number of mail ballots submitted: 345,679.

13

Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope: 1,531.

Total number of voters who used the Ballot by Mail Tracker to correct a defective carrier envelope and had their mail ballot accepted or cancelled their mail ballot and voted in person: 1,496.

OCA-REPLY-APPX-086

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S
FIRST AMENDED RESPONSES TO PLAINTIFF OCA-GREATER
HOUSTON'S SECOND SET OF INTERROGATORIES**

TO:     Plaintiff OCA-Greater Houston, by and through Plaintiff OCA-Greater Houston's attorney of record, Zachary Dolling, TEXAS CIVIL RIGHTS PROJECT, 1405 Montopolis Drive, Austin, Texas 78741.

Defendant Harris County District Attorney Kim Ogg ("District Attorney Ogg"), in accordance with the Federal Rules of Civil Procedure, services these First Amended responses to Plaintiff OCA-Greater Houston's Second Set of Interrogatories.  District Attorney Ogg reserves the right to supplement and/or amend this response as the case progresses and as permitted by the Federal Rules of Civil Procedure and any orders of the Court.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
Eric J.R. Nichols
State Bar No. 14994900
eric.nichols@butlersnow.com
Victoria A. Giese
State Bar No. 24126391
victoria.giese@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Tel: (737) 802-1800
Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2023, a true and correct copy of the foregoing document was served on counsel of record by electronic mail.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols

2

**DISTRICT ATTORNEY OGG'S FIRST AMENDED RESPONSES TO PLAINTIFF
OCA-GREATER HOUSTON'S SECOND SET OF INTERROGATORIES**

These responses are without prejudice to District Attorney's Ogg position that principles of sovereign immunity bar the requesting plaintiffs' claims against her.

**INTERROGATORY NO. 1:**   Identify each investigation initiated or participated in by your office predicated at least in part on a violation or suspected violation of the above-listed Sections of the Texas Election Code. Include for each investigation identified the Section(s) of the Texas Election Code involved or suspected to be involved, the date the investigation was opened, the result of the investigation (e.g., dismissal because inconclusive), and the date the investigation was closed, where applicable.

**RESPONSE NO. 1:**   During the time period January 1, 2017 to present, there were reports made to the Harris County District Attorney's Office ("HCDAO") of 165 instances in which individuals provided the Harris County District Clerk and/or the City of Houston with responses to jury summonses indicating a lack of U.S. citizenship that may have been inconsistent with representations of citizenship made on previously filed voter registration applications.  During this time period, there were reports made to the HCDAO of 470 instances in which individuals signed in to vote in a primary, either Democratic or Republican, after previously signing in to vote in a different party's primary in the same election.  During this time period, there was a report made to the HCDAO of a situation in which an individual falsified a voter registration application with the wrong address for that individual.  During this time period, there were reports made to the HCDAO of 20 instances in which a person was suspected of voting illegally in person in Harris County—three that involved potential voting by a felon not eligible to vote; two that involved potential voting by non-citizens not eligible to vote; and 15 that involved the potential situation in which a voter voted more than once.  During this time period, there was one report to the HCDAO of a claim that an individual engaged in improper ballot harvesting.  During this time period, there was one report made to the HCDAO of multiple instances in which a person may have indicated that he or she witnessed a request for mail-in ballots when in fact he or she had not.  Records maintained by the division of the HCDAO that processes complaints and referrals of Election Code matters, and engages in investigations of Election Code matters, do not reflect other instances of the HCDAO receiving complaints, referrals, and/or participating in investigations during this time period that could have arisen in part or in whole under any one or more of the following provisions of the Texas Election Code as enacted or amended by SB1:  13.007, 33.051(g), 33.061(a), 64.012, 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.013, 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including

under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 2:**   Identify each prosecution initiated or participated in by your office predicated at least in part on a violation or suspected violation of the above-listed Sections of the Texas Election Code. Include for each prosecution identified the Section(s) of the Texas Election Code involved or suspected to be involved, the date the prosecution was initiated, and the result of the prosecution.

**RESPONSE NO. 2:**   From January 1, 2017 to present, the HCDAO has participated in the following prosecutions, which are of public record:

> *State v. Anthony Rodriguez*, Cause No. 1629438 (176th Judicial District Court) (filed 4/26/19)

> *State v. Richard Anthony Bonton*, Case No. 2337503 (Harris CCCL #15) (filed 12/11/20)

> *State v. Natasha Nicole Demming*, Case No. 2337506 (Harris CCCL #15) (filed 12/11/20)

Records maintained by the division of the HCDAO that processes complaints and referrals of Election Code matters, and engages in prosecutions of Election Code matters, do not reflect other instances of prosecutions that arose in part or in whole under any one or more of the following provisions of the Texas Election Code as enacted or amended by SB1:  13.007, 33.051(g), 33.061(a), 64.012, 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.013, 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 3:** Identify and describe with particularity any communications your office has had with the OAG regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 3:**  At least four of the matters involving a complaint, referral, and/or investigation as discussed in the response to Interrogatory No. 1 involved communications with the "OAG" as defined in the request.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on

February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY** **NO. 4:** Identify and describe with particularity any communications your office has had with the SOS regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE** **NO. 4:**   At least one of the matters involving a complaint, referral, and/or investigation as discussed in the response to Interrogatory No. 1 involved communications with the "SOS" as defined in the request.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY** **NO. 5:** Identify and describe with particularity any communications your office has had with State officials regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE** **NO. 5:**   See responses to Interrogatories 3 and 4.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 6:** Identify and describe with particularity any communications your office has had with local officials, other than you, regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 6:**   See responses to Interrogatories 1, 3, 4, and 5.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 7:**   Identify and describe with particularity any communications your office has had with the Texas Legislature regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 7:**   Following diligent inquiry, District Attorney Ogg has not located any communications with the "Texas Legislature" as defined by the request regarding investigations or prosecutions related to one or more of the following provisions of the Texas Election Code as enacted or amended by SB1:  33.051(g), 33.061(a), 86.006(f), 86.010(i), 86.0105, 276.004(a), 276.015(b)-(d), 276.016(a), 276.017(a), and 276.018(a).

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023.  As discussed with the Court during the proceedings on February 16, 2023, these responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

**INTERROGATORY NO. 8:**   Identify and describe with particularity any communications your office has had with members of the public regarding investigations or prosecutions related to the above-listed Sections of the Texas Election Code.

**RESPONSE NO. 8:**   See responses to Interrogatories 1, 2, 3, 4, and 5.

To the extent that this interrogatory seeks more information than is provided above, the request would be inconsistent with the Court's guidance on the scope of discovery during proceedings held on February 16, 2023. As discussed with the Court during the proceedings on February 16, 2023, these

responses are intended to address a limited scope of inquiry to the HCDAO.  Should requesting plaintiffs persist in seeking broader discovery, District Attorney Ogg maintains and asserts all objections to discovery on any such broader scope, including that the requested discovery concerns matters that are not relevant to the claims being made by requesting plaintiffs; is not proportional to the needs of the case; and seeks to discover information that is privileged from discovery, including under attorney-client communications privilege, attorney work product, informer's identity privilege, and privilege associated with law enforcement investigations.

7

**VERIFICATION**

STATE OF TEXAS             §
                          §
COUNTY OF HARRIS          §

    I declare pursuant to 28 U.S.C. § 1746 that I am an Assistant District Attorney/Fraud Examiner with the Public Corruption Division of the Harris County District Attorney's Office, and that the foregoing answers to interrogatories are based on information and records available through diligent inquiry at the Harris County District Attorney's Office.


                                      */s/ George Jordan (with permission)*
                                       GEORGE JORDAN

# Exhibit 8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **5:21-CV-0844-XR** |
| | § | **(Consolidated Cases)** |
| GREGORY ABBOTT, et al. | § | |
| *Defendants.* | § | |

---

### DEFENDANT JOSÉ GARZA'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF OCA-GREATER HOUSTON'S FIRST SET OF INTERROGATORIES

TO:     Consolidated Plaintiffs, by and through their attorneys of record.

Comes now Defendant José Garza in his official capacity as Travis County District Attorney ("Defendant"), and hereby serves his Amended Objections and Responses to Plaintiff OCA-Greater Houston's First Set of Interrogatories.[1]

## I.     OBJECTIONS TO DEFINITIONS

1.     Defendant Garza objects to Plaintiff's definition of "you" as including "Travis County, including the Office of the Travis County District Attorney, the Travis County District Attorney, his predecessors and successors..." This definition is overly broad and improperly includes prior District Attorney administrations not included or the subject of this litigation. Additionally, said definitions could be construed to require the disclosure of information concerning matters made exempt from discovery under Federal Rule of Civil Procedure 26(b)(1) and the Federal Rules of Evidence, including, but not limited to attorney work product, litigation privilege, deliberative process privilege, grand jury proceedings, and ongoing criminal investigations.

---

[1] The objections made herein are asserted on behalf of Travis County District Attorney José Garza, in his official capacity.

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                        383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page **1** of 11

OCA-REPLY-APPX-097

<u>**PLAINTIFF OCA-GREATER HOUSTON'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANT TRAVIS COUNTY DISTRICT ATTORNEY JOSÉ GARZA, IN**
**HIS OFFICIAL CAPACITY**</u>

All interrogatories are limited in time from January 1, 2016, until present day.

<u>**Interrogatory No. 1:**</u> Identify and describe with particularity all investigations, criminal proceedings, or prosecutions initiated or participated in by your office and predicated at least in part on a violation or suspected violation of criminal election law.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks information or material relating to any ongoing criminal investigation. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. Documents and communications which may be responsive to this request for production related to open criminal cases currently being prosecuted by Travis County, if any, would impair any such investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this interrogatory seeks protected grand jury proceedings, attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this interrogatory seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE**: Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

On June 7, 2019, the TCDAO received a complaint from Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters alleging that the subject of the investigation in TCDAO File No. 11612-19, who is not a US citizen, illegally voted in multiple elections, the latest being on October 26, 2016. The case was closed without presenting it to the grand jury, as the statute of limitations ran in October 2019.

On February 4, 2019, the TCDAO received a complaint from Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters alleging that the subject of the investigation in TCDAO File No. 11482-19 illegally voted by voting on election day in addition to voting early. The case was closed without presenting it to the grand jury as there was insufficient evidence to prove criminal conduct.

On February 4, 2019, the TCDAO received a complaint from Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters alleging that the subject of the investigation in TCDAO File No. 11483-19 illegally voted by voting on election day in addition to voting early. The case was closed without presenting it to the grand jury as there was insufficient evidence to prove criminal conduct.

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                       383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page **2** of 11

OCA-REPLY-APPX-098

On February 2, 2017, Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters wrote an Affidavit of Fact stating "certain individuals possibly illegally voted in the November 8, 2016 General Election" in connection with the investigation in TCDAO File No. 11052-17, 2017 Illegal Voters Investigation.  A list of 17 individuals who were the subject of the investigation in TCDAO File No.  11052-17, 2017 Illegal Voters Investigation were believed to have voted twice based upon voter registration information as well as like signatures on polling signature rosters.  The cases were closed without presenting them to the grand jury as there was insufficient evidence to prove criminal conduct.

**Interrogatory No. 2:** For each investigation, criminal proceeding, or prosecution identified in response to Interrogatory No. 1, identify all local officials or State officials involved, other than you, and describe with particularity the role each local official or State official played. This identification may be limited to the political subdivision, political subdivision office, or statewide office with which the officials are affiliated rather than the names of individual persons.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Defendant further objects to this interrogatory to the extent that it requires disclosure of grand jury proceedings or materials requested or obtained pursuant to a grand jury subpoena.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:**   Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters was the Complainant in the TCDAO File No. 11052-17, 2017 Illegal Voters investigation, and the 2019 TCDAO File No. 11612-19, TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations, and provided an affidavit of fact in connection with the TCDAO File No. 11052-17, 2017 Illegal Voters investigation.

The Travis County Tax Assessor-Collector Office and Travis County Clerk's Office

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                                                         383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories      Page 3 of 11

OCA-REPLY-APPX-099

provided additional documentation in connection with the TCDAO File No. 11052-17, 2017 Illegal Voters Investigation, and the 2019 TCDAO File No. 11612-19, TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations.

The Travis County Attorney's Office received and conducted initial review of the Complaints in connection with the TCDAO File No. 11052-17, 2017 Illegal Voters investigation, and the 2019 TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations prior to referring each of these Complaints to the Travis County District Attorney's Office.

The Austin Police Department provided additional documentation to the Travis County District Attorney's Office in connection with the 2017 Illegal Voters Investigation.

**Interrogatory No. 3:** Identify and describe with particularity any practices or policies of your office specific to the investigation or prosecution of violations or suspected violations of criminal election law.

**RESPONSE:**

The Travis County District Attorney's Office does not have "practices or policies . . . specific to the investigation or prosecution of violations or suspected violations of criminal election law." The Travis County District Attorney's Office investigates and prosecutes "violations or suspected violations of criminal election law" pursuant to the authority granted to district attorneys in the State of Texas under Texas state law to represent the State of Texas in Criminal actions in District Court. More specifically, Texas Election Code Section 273.001 vests the "county or district attorney having jurisdiction in that territory" with investigating an allegation "by two or more registered voters" alleging "criminal conduct in connection with the election."

**Interrogatory No. 4:** If you contend that the OAG is responsible for or engages in the investigation or prosecution of violations or suspected violations of criminal election law within Travis County:

    A. State the facts that support your contention; and

    B. Identify all documents that support your contention.

**RESPONSE:**

The Travis County District Attorney's Office does not make this contention. Accordingly, no further response is required.

**Interrogatory No. 5:** If you contend that any local official other than you is responsible for or engages in the investigation or prosecution of violations or suspected violations of criminal election law within Travis County:

    A. Identify the local official(s);

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                    383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories    Page 4 of 11

OCA-REPLY-APPX-100

B. State the facts that support your contention(s); and

C. Identify all documents that support your contention(s).

**RESPONSE:**

Texas Election Code Section 273.001 vests the "county or district attorney having jurisdiction in that territory" with investigating an allegation "by two or more registered voters" alleging "criminal conduct in connection with the election." Thus, the Travis County Attorney's office would have jurisdiction over the investigation of any misdemeanor offense connected to an allegation made by two or more registered voters in connection with an election.

The prosecution for violations or suspected violations of the Texas Election Code could fall within the jurisdiction of the Travis County Attorney's Office or the Travis County District Attorney's Office. A misdemeanor involving official misconduct, which is intentional or knowing conduct by a public servant acting in their official capacity (Texas Penal Code Section 1.07), is within the jurisdiction of the District Courts pursuant to Code of Criminal Procedure Article 4.05. The Travis County District Attorney's Office represents the State of Texas in Criminal actions in District Court. However, a misdemeanor violation of the Texas Election Code committed by one who is not a public servant would fall within the ordinary jurisdiction of the County Courts at Law. The Travis County Attorney's Office represents the State of Texas in criminal actions in County Courts at Law.

**Interrogatory No. 6:** Identify and describe with particularity all investigations, criminal proceedings, or prosecutions in Travis County carried out by any local official other than you and predicated at least in part on a violation or suspected violation of criminal election law.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:**

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                    383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page 5 of 11

OCA-REPLY-APPX-101

Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

The Travis County Attorney's Office received and conducted initial review of the Complaints in connection with the 2017 Illegal Voters investigation, and the 2019 TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations prior to referring each of these Complaints to the Travis County District Attorney's Office.  No other "investigations, criminal proceedings, or prosecutions" known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 7:** Identify and describe with particularity any communications your office has had with the OAG regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:**  Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 8:** Identify and describe with particularity any communications your office has had with the SOS regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                                     383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories      Page 6 of 11

OCA-REPLY-APPX-102

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 9:** Identify and describe with particularity any communications your office has had with State officials, if not identified and described in your responses to Interrogatories No. 7 and 8 above, regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                    383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page 7 of 11

OCA-REPLY-APPX-103

parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 10:** Identify and describe with particularity any communications your office has had with local officials other than you regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

See Response to Interrogatory No. 2, above.  Travis County Tax Assessor-Collector Bruce Elfant, in his capacity as the Travis County Registrar of Voters was the Complainant in the 2017 Illegal Voters investigation, and the 2019 TCDAO File No. 11612-19, TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations, and provided an affidavit of fact in connection with the 2017 Illegal Voters Investigation.

The Travis County Tax Assessor-Collector Office and Travis County Clerk's Office provided additional documentation in connection with the 2017 Illegal Voters Investigation, and the 2019 TCDAO File No. 11612-19, TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations.

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                             383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page **8** of **11**

OCA-REPLY-APPX-104

The Travis County Attorney's Office received and conducted initial review of the Complaints in connection with the 2017 Illegal Voters investigation, and the 2019 TCDAO File No. 11482-19, and TCDAO File No. 11483-19 Investigations prior to referring each of these Complaints to the Travis County District Attorney's Office.

The Austin Police Department provided additional documentation to the Travis County District Attorney's Office in connection with the 2017 Illegal Voters Investigation.

**Interrogatory No. 11:** Identify and describe with particularity any communications your office has had with the Texas Legislature regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 12:** Identify and describe with particularity any communications your office has had with members of the public regarding the investigation or prosecution of violations or suspected violations of any criminal election law, including the specific topic of communication, the date of the communications, the individuals who participated in the communications, and the outcome of the communications.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                                    383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories      **Page 9 of 11**

OCA-REPLY-APPX-105

to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 13:** Identify and describe with particularity any press releases, public announcements, or any other communication made by your office to persons, entities, or media external to your office relating to the enforcement of criminal election law.

**OBJECTION:** Defendant objects to this interrogatory to the extent that it seeks material relating to an ongoing criminal investigation from Defendant's predecessor or seeks documents from "local officials," including other governmental entities, not within the custody and control of Defendant. As a matter of federal common law, the law enforcement privilege protects government documents relating to an ongoing criminal investigation. *In re US Dept. of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006). Documents and communications which may be responsive to this request for production are related to open criminal cases which are currently being prosecuted by Travis County and would impair the investigation and prosecution of alleged criminal activity within Travis County.

Additionally, Defendant further objects to the extent that this request seeks protected attorney client communications and/or attorney work product, if any, that exist.

Defendant further objects to the extent that this request seeks responsive information and documentation under prior administrations of the Travis County District Attorneys who are not parties to this lawsuit as being overly broad, and unduly burdensome on Defendant District Attorney Garza.

**RESPONSE:** Subject to, and without waiving the foregoing objections, Defendant Garza responds as follows:

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                   383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories   Page 10 of 11

OCA-REPLY-APPX-106

None known of by District Attorney Garza's administration. Defendant reserves the right to supplement this Response pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**DELIA GARZA**
County Attorney, Travis County
P. O. Box 1748
Austin, Texas 78767
Telephone:     (512) 854-9513
Facsimile:     (512) 854-4808

By:     */s/ Anthony J. Nelson*
SHERINE E. THOMAS
State Bar No. 00794734
Sherine.Thomas@traviscountytx.gov
LESLIE W. DIPPEL
State Bar No. 00796472
Leslie.Dippel@traviscountytx.gov
ANTHONY J. NELSON
State Bar No. 14885800
Tony.Nelson@traviscountytx.gov
PATRICK T. POPE
State Bar No. 24079151
Patrick.Pope@traviscountytx.gov

**ATTORNEYS FOR DEFENDANTS REBECCA GUERRERO AND JOSÉ GARZA, IN THEIR OFFICIAL CAPACITIES AS TRAVIS COUNTY CLERK, AND DISTRICT ATTORNEY, RESPECTIVELY.**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all parties and counsel of record via electronic mail, as follows, on the 30th day of September, 2022.

*/s/ Anthony J. Nelson*
ANTHONY J. NELSON
PATRICK T. POPE
Assistant County Attorneys

*La Unión del Pueblo Entero, et al. v. Greg Abbott, et al.*                                     383.141 / 1080255.6
Defendant José Garza's Amended Objections and Responses to OCA-GH Plaintiffs' First Interrogatories     Page 11 of 11

OCA-REPLY-APPX-107

# Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al.,<br>　　　Plaintiff,<br><br>v.<br><br>GREGORY W. ABBOTT, et al.,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-CV-0844-XR |
| OCA-GREATER HOUSTON, et al.,<br>　　　Plaintiff,<br>v.<br><br>JOSE A. ESPARZA, et al.,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-CV-0780-XR |
| HOUSTON JUSTICE, et al.,<br>　　　Plaintiff,<br>v.<br><br>GREGORY WAYNE ABBOTT, et al.,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-CV-0848-XR |
| LULAC TEXAS, et al.,<br>　　　Plaintiff,<br><br>v.<br><br>JOSE ESPARZA, et al.,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-CV-0786-XR |

1

| MI FAMILIA VOTA, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0920-XR |
| | § | |
| GREG ABBOTT, et al., | § | |
| Defendants. | § | |
| | § | |

| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
| Defendants. | § | |

## PLAINTIFF OCA-GREATER HOUSTON'S AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS' FIRST SET OF INTERROGATORIES

TO:   Defendants Texas Secretary of State John Scott and Texas Attorney General Ken Paxton ("State Defendants") by and through its attorneys of record Patrick K. Sweeten, William T. Thompson, Eric A. Hudson, Kathleen T. Hunker, Leif A. Olson, Jeffrey M. White, and Jack B. DiSorbo, via e-mail to patrick.sweeten@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff OCA-Greater Houston ("OCA-GH") hereby serves the following Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: March 25, 2022                Respectfully Submitted,

/s/   *Zachary Dolling*
Mimi M.D. Marziani
Texas Bar No. 24091906
Hani Mirza

2

Texas Bar No. 24083512
Zachary D. Dolling
Texas Bar No.
24105809Sarah Chen*
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org


Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
Andre Segura
Texas Bar No. 24107112
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org
asegura@aclutx.org


Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Samantha Osaki*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

3

acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
sosaki@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

LIA SIFUENTES DAVIS
Texas State Bar No. 24071411
LUCIA ROMANO
Texas State Bar No. 24033013
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
ldavis@drtx.org
lromano@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

4

Jessica Ring Amunson*
Urja Mittal*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
umittal@jenner.com

***COUNSEL FOR PLAINTIFF***

*admitted *pro hac vice*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 25th day of March, 2022, a true and correct copy of the foregoing *Plaintiff OCA-Greater Houston Amended Objections and Responses to State Defendants' First Set of Interrogatories* was served upon counsel of record via email or mail.

/s/   *Zachary Dolling*

5

## **RESERVATION OF RIGHTS**

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation State Defendants may give these Requests.

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiff is also willing to meet and confer about any of its objections or responses.

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting. Plaintiff reserves the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf, including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the

7

terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.      Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.      Plaintiff objects to the definition of "identify" when referring to:

a.      A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

b.      An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

c.      A document, to the extent that it expands the scope of discovery to include

8

materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

d.   A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

e.   A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.   Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.   Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.   Plaintiff objects to State Defendants' Requests to the extent that they contain

9

incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

10.     Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.     Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.     Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.     These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any

production made pursuant thereto.

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1**: Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

 **RESPONSE**: Plaintiff is challenging the following provisions in the Texas Election Code amended by Senate Bill 1 that were amended by Senate Bill 1 ("SB 1"):
1. SB 1 § 5.02: Amends Tex. Election Code § 84.002
2. SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3. SB 1 § 5.06: Amended Tex. Election Code § 84.035
4. SB 1 § 5.07: Amends Tex. Election Code § 86.001
5. SB 1 § 5.08: Amends Tex. Election Code § 86.002
6. SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)
7. SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8. SB 1 § 5.13: Amends Tex. Election Code § 87.041
9. SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.04: Amends Tex. Election Code § 64.034
11. SB 1 § 6.06: Amends Tex. Election Code § 86.0105
9. SB 1 § 7.04: Adds Tex. Election Code §§ 276.015, 276.016, 276.017, 276.018, and 276.019

**INTERROGATORY NO. 2**: If you contend that you have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:
 A. State the facts that support your contention; and
 B. Identify all documents that support your contentions.

 **RESPONSE**: Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

12

A. In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter its voter education and volunteer training programs in light of the changes made to the Texas Election Code by SB 1. Namely, it must divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting and voter assistance, and the criminal and civil penalties associated with those provisions.

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas election identification certificate, or Texas personal ID card on their mail-in ballot applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides that if the voter has not been issued one of these numbers by the State of Texas, the voter may instead provide the last four digits of its Social Security number. If the voter has not been issued any of these numbers by the State of Texas or the Social Security Administration, the voter may sign a statement indicating that they have never been issued one of these numbers. Since the SAC was filed, county elections offices across the state have reported high rejection rates of mail-in ballot applications for the March 2022 primary due to the difficulty for voters to comply with these new immaterial ID number requirements. Plaintiff has already been injured and will continue to suffer injury due to these provisions because they have diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will also need to divert staffing to answer questions from voters who do not understand the new burdensome requirements. Additionally, Plaintiff will need to divert resources to inform individuals who have a driver's license

13

number or Social Security number but are unable to access it, that unless they can find that number they will be unable to vote by mail, and helping individuals to either recall or locate identification numbers. The diversion of resources required to guide members through complying with and having their mail-in ballot counted pursuant to the burdensome new identification requirements will decrease the amount of time and resources that Plaintiff can spend conducting educational outreach to and answering questions from other voters about participating in the voting process and advancing its other organizational goals. This diversion of resources would not be necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶¶ 116 and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance in all aspects of the voting process, free of encumbrance by state laws that impose restrictions on the selection of those assistants or the specific types of assistance that may be provided by them. SB 1 Section 6.04 adds a requirement that voter assistants swear under penalty of perjury that "I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot" and no longer allows assistants to answer a voter's questions, help the voter navigate the polling place, or provide any other type of assistance that might be necessary for individuals with disabilities or with limited English proficiency. Plaintiff lists examples of additional specific types of assistance needed in SAC ¶¶ 154–160. In addition, SB 1 Section 6.06 creates a strict liability, state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with its mail-in ballot. Plaintiff lists specific injuries in SAC ¶¶ 166 and its response to Interrogatory No. 4.

Before SB 1, the Texas Elections Code already prohibited improper influencing or electioneering. Section 7.04 of SB 1 goes much further to criminalize paid ballot collection services and paid interactions with voters in the presence of an official ballot, which the bill derogatorily labels as "vote harvesting," creating a third-degree felony. Section 7.04 imposes criminal and civil penalties on any person who gives or receives some "compensation or other benefit" for "knowingly provid[ing] or offer[ing] to provide vote harvesting services," defined as any "in-person interaction with one or more voters, in the physical presence of"" and "directly involving" any "official ballot or a ballot voted by mail," which are "intended" "to deliver votes for [or against] a specific candidate or measure." This provision is substantially overbroad and vague, infringing on Plaintiff's core political speech and subjecting Plaintiff to potential arbitrary and/or selective prosecution without prior notice of precisely what activities are illegal, as well as possible civil claims by candidates. Plaintiff lists specific injuries in SAC ¶¶ 208–210 and its response to Interrogatory No. 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on March 24, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 3**: If you contend that your members have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

    A. State the facts that support your contention, including the identity of each injured member upon whom your standing is based; and

    B. Identify all documents that support your contentions.

      **RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionally objects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any time limitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. OGA-GH has board members and volunteers who work to fundraise and implement OCA-GH's programs to empower the Asian American and Pacific Islander ("AAPI") community through leadership training; education workshops; arts and cultural events; advocacy campaigns, including creating and distributing fliers in multiple languages; facilitating voting, including by providing rides to the polls and hosting candidate forums; legal clinics; internships; scholarships; mentorship and civic engagement; and monitoring of and advocacy for national and local public policy. A significant portion of OCA-GH's members and the community it serves lack the ability to read English-language election materials, including mail-in ballots, in-person ballots, and other voting instructions and materials. These individuals require assistance to vote in person or by mail-in ballot, if eligible to do so. OCA-GH serves its members and the AAPI community by facilitating and providing assistants who read and speak languages other than English to assist voters with reading and understanding election materials, including mail-in and in-person ballots. OCA-GH provides some of these assistants with benefits or compensation both as part of its broader activities, and to encourage more individuals to serve as assistants for voters in need. OCA-GH's members and the communities they serve will be harmed by the drastic illegal restrictions contained within SB1 on the ability to provide assistance to voters with mail-in ballots, at the polls, and in the course of the normal voter engagement that OCA-GH practices.

One member in particular named Sam Hwong was deterred from applying to vote by mail, despite being over 80 years old and previously successfully voting by mail, due to his fear his application or his mail ballot would be rejected. Although he wanted to vote by mail in the March 1 primary and would like to vote by mail in the future, he opted to bear the significant personal risk of voting in person instead.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on March 24, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4**: If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:
   A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;
   B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;
   C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and
   D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. OCA-GH has expended time, money, and resources in combating SB1's passage. OCA-GH made expenditures to send members to Austin to attend rallies protesting the passage of SB1 and defending the right to vote.

16

Since the passage of SB1 and its going into effect on December 2, 2021 OCA-GH has had to devote significant time and resources into reshaping its practices in order to navigate SB1's unlawful provisions. OCA-GH's Civic Engagement Programs Director Debbie Chen and her staff have had to devote hours and hours of limited staff time to determining how the organization can continue their operations with SB1 making it more difficult and dangerous for OCA-GH's members and their communities to participate in the electoral process. OCA's work involves voter trainings, advocacy campaigns, voter assistance in transportation, education sessions, and ballot assistance, door knocking campaigns, appearance at candidate forums, and several other forms of voter assistance and education that all have had to be scrutinized, and in many cases modified, by Ms. Chen and her staff in order to avoid civil or criminal penalties from SB1's illegal and confusing provisions.

Given the far-reaching implications into the ability of organizations to offer assistance and education to voters contained in SB1, passage of the bill has forced OCA-GH to comb through all of the ways its programs could potentially violate the law, assess the new risk factors associated with their programs, train staff and then in turn volunteers on how the new laws impact their programs, and then conduct trainings on the operation of its newly modified programs. All of this scrutiny, training, and modifications to programming cost OCA-GH in staff time and in financial expenditures related to operation of its modified programming, and will continue to cost the organization as OCA-GH anticipates significant diversion of its limited resources as SB1's implementation is carried out in the future.

B.  As a result of SB1, OCA-GH has had to significantly scale back its voter education and assistance efforts. Due to the possibility of civil and criminal penalties, and the confusing nature of the law's restrictions, OCA-GH has reduced or anticipates reducing its participation in voter outreach events, the information it provides to voters, the types of programming it pursues, and the scope of voters it seeks to target with its programming. Instead of assisting voters at candidate forums with mail-in ballot problems or registration issues, which was OCA-GH's usual practice, staff and volunteers are now merely referring voters to the Harris Co. website. This has led to instances such as one where an over 80-year old, high COVID-risk voter from the community OCA-GH serves, Sam Hwong, decided to vote in person because of a problem obtaining a mail-in ballot, and OCA-GH was not able to assist him in obtaining one. For the March 1 primary and upcoming elections, OCA-GH's door knocking volunteers limited and are limiting their valuable interactions with voters to just an "early voting alert" instead of engaging with the voter about any assistance they may require or directing them to voter education sessions, which changes the character of these interactions to one of an entirely different kind and reduces their utility both for OCA-GH and the voters. OCA-GH has been and will be forced to almost entirely abandon providing language assistance to Limited English Proficient (LEP) voters at the polls, due to the threat of penalty associated with assistance that does not comply with SB1's exactingly narrow and highly punitive provisions.

17

These reductions in efforts do not allow OCA-GH the freedom to pursue other projects relevant to their voter outreach goals, as the drain on resources in responding to SB1 and designing programming that does not put the organization and its members at significant risk of civil or criminal penalties are anticipated to meet or exceed the costs that would be anticipated for OCA to conduct its activities without the interference of SB1. Spending time and resources on countermeasures to SB1 will force OCA-GH to spend less time and money on its normal programming efforts, and will reach fewer voters overall.

C. Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expenditures Plaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on March 24, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 5**: If you contend that the passage of SB1 frustrates your mission, for each plaintiff:
   A. Explain how each provision makes your activities more difficult; and
   B. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as cumulative and duplicative of Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. OCA-GH's mission: (1) to advocate for social justice, equal opportunity, and fair treatment; (2) to promote civic participation, education, and leadership; (3) to advance coalitions and community building; and (4) to foster cultural heritage. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on March 24, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:
   A. Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;
   B. Identify the "local election authorities" that used these "precise methods;"
   C. Identify how these "precise methods" made "voting easier and more accessible to

18

traditionally marginalized voters;" and
    D. Identify all documents that support your contentions.

**RESPONSE**: Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; (2) permitting voters to receive assistance at the polls, particularly for voters with a disability or who are not fluent in English; and (3) permitting assistance with mail-in ballots.
    B. The referenced sentence refers to county election officials generally, not any specific county election official.
    C. Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that voting by mail, permitting assistance at the polls, and permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.
    D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff will produce documents responsive to this request—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 7**: If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:
    A. Identify the "immaterial burdens" added;
    B. Explain how these burdens are immaterial; and
    C Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous new requirements for applying to vote by mail, and the types of cure processes provided for in-person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8**: For each plaintiff, identify:
    A. All accommodations that would be necessary for you or your disabled members to vote in compliance with SB1;
    B. Any accommodations you or your members requested or intend to request for the March 2022 primary in response to SB1;
    C. State the facts that support your contentions; and
    D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of its members. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff' SAC, the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, case by case reasonable modification requests. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9**: Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the Voting Rights Act, the Civil Rights Act, the ADA and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;
3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42 U.S.C. §12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which the Plaintiff may be entitled.

20

**INTERROGATORY NO. 10**: If you seek mandatory injunctive relief through this Lawsuit, please identify and describe with specificity, by plaintiff, each omission that you contend each Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

 **RESPONSE**: Plaintiff objects to this Interrogatory because it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented.

**INTERROGATORY NO. 11**: If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

 **RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

 Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

**VERIFICATION FOR AMENDED RESPONSES TO INTERROGATORIES**

I _Deborah Chen_____ verify under penalty of perjury under the laws of the United States of America that the foregoing responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.

_Deborah Y. Chen_
Name

_Civic Engagement Programs Director_
Title

Signature

_03/24/2022_
Date

*On behalf of OCA-Greater Houston*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| OCA-GREATER HOUSTON, et al., | § | |
| Plaintiff, | § | |
| v. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| HOUSTON JUSTICE, et al., | § | |
| Plaintiff, | § | |
| v. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| LULAC TEXAS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOSE ESPARZA, et al., | § | |
| Defendants. | § | |

1

| | | |
|---|---|---|
| MI FAMILIA VOTA, et al., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0920-XR |
| | § | |
| GREG ABBOTT, et al., | § | |
|     Defendants. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
|     Defendants. | § | |

### PLAINTIFF OCA-GREATER HOUSTON'S THIRD AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS' FIRST SET OF INTERROGATORIES

TO:   Defendants Texas Secretary of State Jane Nelson and Texas Attorney General Ken Paxton ("State Defendants") by and through their attorneys of record, Kathleen T. Hunker and J. Aaron Barnes via e-mail to kathleen.hunker@oag.texas.gov and aaron.barnes@oag.texas.gov.

      Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff OCA-Greater Houston ("OCA-GH"), hereby serves the following Third Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: March 31, 2023               Respectfully Submitted,

                                  By: */s/ Zachary Dolling*

2

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
LISA A. SNEAD
Texas State Bar No. 24062204
PETER HOFER
Texas State Bar No. 09777275
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)

(512) 454-3999 (fax)
lromano@drtx.org
lsnead@drtx.org
phofer@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com

Gregory D. Washington*
**JENNER & BLOCK LLP**
455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

***COUNSEL FOR OCA-GREATER HOUSTON PLAINTIFFS.***
***\*admitted pro hac vice***

3

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2023, a true and correct copy of the foregoing *Plaintiff OCA-GH's Third Amended Objections and Responses to State Defendants' First Set of Interrogatories* was served upon counsel of record via email or mail.

/s/    *Zachary Dolling*

## RESERVATION OF RIGHTS

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any

4

interpretation State Defendants may give these Requests.

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiff is also willing to meet and confer about any of its objections or responses.

## **GENERAL OBJECTIONS**

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting. Plaintiff reserves the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf,

5

including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the

terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.      Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.      Plaintiff objects to the definition of "identify" when referring to:

a.      A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

b.      An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

6

    c.      A document, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

    d.      A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

    e.      A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.      Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.      Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.      Plaintiff objects to State Defendants' Requests to the extent that they contain

7

incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

10.      Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.      Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.      Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

8

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1**: Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

**RESPONSE**: Plaintiff is challenging the following provisions in the Texas Election Code that were amended by Senate Bill 1 ("SB 1"): [1]

1.  SB 1 § 5.02: Amends Tex. Election Code § 84.002
2.  SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3.  SB 1 § 5.06: Amended Tex. Election Code § 84.035
4.  SB 1 § 5.07: Amends Tex. Election Code § 86.001
5.  SB 1 § 5.08: Amends Tex. Election Code § 86.002
6.  SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)
7.  SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8.  SB 1 § 5.13: Amends Tex. Election Code § 87.041
9.  SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.06: Amends Tex. Election Code § 86.0105
11. SB 1 § 7.04: Adds Tex. Election Code §§ 276.015, 276.016, 276.017, 276.018, and 276.019

**INTERROGATORY NO. 2**: If you contend that you have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

A.  State the facts that support your contention; and
B.  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response

---

[1] In its Second Amended Complaint Plaintiff challenged SB 1 § 6.04 (amending Tex. Election Code § 64.034). The district court, in its order largely denying State Defendants' motion to dismiss Plaintiff's claims, held that a modified injunction in a different case, *OCA-Greater Houston v. Texas*, 1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022), mooted Plaintiff's Section 6.04 claims against State Defendants. *See* Dkt. 448 at 33 & n.18. Plaintiff has amended its interrogatory answers to reflect this.

9

to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter its voter education and volunteer training programs in light of the changes made to the Texas Election Code by SB 1. Namely, it must divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting and voter assistance, and the criminal and civil penalties associated with those provisions.

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.08, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas election identification certificate, or Texas personal ID card on their mail-in ballot applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides that if the voter has not been issued one of these numbers by the State of Texas, the voter may instead provide the last four digits of its Social Security number. If the voter has not been issued any of these numbers by the State of Texas or the Social Security Administration, the voter may sign a statement indicating that they have never been issued one of these numbers. Since the SAC was filed, county elections offices across the state have reported high rejection rates of mail-in ballot applications and ballots for the March 2022 primary and November 2022 general election due to the difficulty for voters to comply with these new immaterial ID number requirements. Plaintiff has already been injured and will continue to suffer injury due to these provisions because it has diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will also need to divert staff to answer questions from voters who do not understand the new burdensome requirements. Additionally, Plaintiff will need to divert resources to inform individuals who have a driver's license number or Social Security number but are unable to

10

access it, that unless they can find that number they will be unable to vote by mail, and helping individuals to either recall or locate identification numbers. The diversion of resources required to guide members through complying with and having their mail-in application accepted and ballot counted pursuant to the burdensome new identification requirements will decrease the amount of time and resources that Plaintiff can spend conducting educational outreach to and answering questions from other voters about participating in the voting process and advancing its other organizational goals. This diversion of resources would not be necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶ 116 and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance in all aspects of the voting process, free of encumbrance by state laws that impose restrictions on the selection of those assistants or the specific types of assistance that may be provided by them. SB 1 Section 6.06 creates a strict liability, state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with their mail-in ballot. Plaintiff lists specific injuries in SAC ¶ 166 and its response to Interrogatory No. 4.

Before SB 1, the Texas Elections Code already prohibited improper influencing or electioneering. Section 7.04 of SB 1 goes much further to criminalize paid ballot collection services and paid interactions with voters in the presence of an official ballot, which the bill derogatorily labels as "vote harvesting," creating a third- degree felony. Section 7.04 imposes criminal and civil penalties on any person who gives or receives some "compensation or other benefit" for "knowingly provid[ing] or offer[ing] to provide vote harvesting services," defined as any "in-person interaction with one or more voters, in the physical presence of"" and "directly involving" any "official ballot or a ballot voted by mail," which are "intended" "to deliver votes for [or against] a specific candidate or measure." This provision is substantially overbroad and vague, infringing on Plaintiff's core political speech and subjecting Plaintiff to potential arbitrary and/or selective prosecution without prior notice of precisely what activities are illegal, as well as possible civil claims by candidates. Plaintiff lists specific injuries in SAC ¶ 210 and its response to Interrogatory No. 4.

B.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 3**: If you contend that your members have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

A.  State the facts that support your contention, including the identity of each injured member upon whom your standing is based; and

11

B.  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionally objects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any time limitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A.  OGA-GH has board members and volunteers who work to fundraise and implement OCA-GH's programs to empower the Asian American and Pacific Islander ("AAPI") community through leadership training; education workshops; arts and cultural events; advocacy campaigns, including creating and distributing fliers in multiple languages; facilitating voting, including by providing rides to the polls and hosting candidate forums; legal clinics; internships; scholarships; mentorship and civic engagement; and monitoring of and advocacy for national and local public policy. A significant portion of OCA-GH's members and the community it serves lack the ability to read English-language election materials, including mail-in ballots, in-person ballots, and other voting instructions and materials. These individuals require assistance to vote in person or by mail-in ballot, if eligible to do so. OCA-GH serves its members and the AAPI community by facilitating and providing assistants who read and speak languages other than English to assist voters with reading and understanding election materials, including mail-in and in-person ballots. OCA-GH provides some of these assistants with benefits or compensation both as part of its broader activities, and to encourage more individuals to serve as assistants for voters in need. OCA-GH's members and the communities they serve will be harmed by the drastic illegal restrictions contained within SB1 on the ability to provide assistance to voters with mail-in ballots and in the course of the normal voter engagement that OCA-GH practices.

While the following is not an exhaustive list of injured members, OCA-GH contends that the following members have been injured by the Texas Election Code provisions identified in Interrogatory No. 1:

12

Elizabeth Hwong and Sam Hwong are married and are both in their 80s. Mrs. Hwong is a board member of OCA-Greater Houston and Mr. Hwong is a member of OCA-Greater Houston. Prior to passage of SB 1 both had voted by mail numerous times, and both were eligible to vote by mail during both the March 2022 primary election and the November 2022 general election. However, both Mrs. and Mr. Hwong chose to cast their votes in person during the March 2022 primary and November 2022 general elections because they feared that their mail-balloting materials would be rejected due to complications caused by the ID matching provisions of SB 1, despite the significant personal risk of voting in person. They would both have voted by mail if not for SB 1.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4**: If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:

A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;

B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;

C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and

D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections,

13

Plaintiff responds as follows:

A. OCA-GH has expended time, money, and resources in combating SB1's passage. OCA-GH made expenditures to send members to Austin to attend rallies protesting the passage of SB1 and defending the right to vote.

Since the passage of SB1 and its going into effect on December 2, 2021, OCA-GH has had to devote significant time and resources into reshaping its practices in order to navigate SB1's unlawful provisions. OCA-GH's Civic Engagement Programs Director Deborah Chen and her staff have had to devote hours and hours of limited staff time to determining how the organization can continue their operations with SB1 making it more difficult and dangerous for OCA-GH's members and their communities to participate in the electoral process. OCA's work involves voter trainings, advocacy campaigns, voter assistance in transportation, education sessions, and ballot assistance, door knocking campaigns, appearance at candidate forums, and several other forms of voter assistance and education that all have had to be scrutinized, and in many cases modified, by Ms. Chen and her staff in order to avoid civil or criminal penalties from SB1's illegal and confusing provisions.

Given the far-reaching implications into the ability of organizations to offer assistance and education to voters contained in SB1, passage of the bill has forced OCA-GH to comb through all of the ways its programs could potentially violate the law, assess the new risk factors associated with their programs, train staff and then in turn volunteers on how the new laws impact their programs, and then conduct trainings on the operation of its newly modified programs. All of this scrutiny, training, and modifications to programming cost OCA-GH in staff time and in financial expenditures related to operation of its modified programming and will continue to cost the organization as OCA-GH anticipates significant diversion of its limited resources as SB1's implementation is carried out in the future.

B. As a result of SB1, OCA-GH has had to significantly scale back its voter education and assistance efforts. Due to the possibility of civil and criminal penalties, and the confusing nature of the law's restrictions, OCA-GH has reduced or anticipates reducing its participation in voter outreach events, the information it provides to voters, the types of programming it pursues, and the scope of voters it seeks to target with its programming. Instead of assisting voters at candidate forums with mail-in ballot problems or registration issues, which was OCA-GH's usual practice, staff and volunteers are now merely referring voters to the Harris Co. website. This has led to instances such as one where an over 80-year old, high COVID-risk voter from the community OCA-GH serves, Sam Hwong, decided to vote in person because he worried that he could have problems obtaining a mail-in ballot, and OCA-GH was not able to assist him in obtaining one. For the March 2022 primary and the November 2022 general elections, and for upcoming elections, OCA-GH's door knocking volunteers limited and are limiting their valuable interactions with voters to just an "early voting alert" instead of engaging with the voter about any assistance they may require or directing them to voter education sessions, which

14

changes the character of these interactions to one of an entirely different kind and reduces their utility both for OCA-GH and the voters. These reductions in efforts do not allow OCA-GH the freedom to pursue other projects relevant to their voter outreach goals, as the drain on resources in responding to SB1 and designing programming that does not put the organization and its members at significant risk of civil or criminal penalties are anticipated to meet or exceed the costs that would be anticipated for OCA to conduct its activities without the interference of SB1. Spending time and resources on countermeasures to SB1 will force OCA-GH to spend less time and money on its normal programming efforts and will reach fewer voters overall.

C.  Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expenditures Plaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 5**: If you contend that the passage of SB1 frustrates your mission, for each plaintiff:

A.  Explain how each provision makes your activities more difficult; and
B.  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as cumulative and duplicative of Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A.  OCA-GH's mission: (1) to advocate for social justice, equal opportunity, and fair treatment; (2) to promote civic participation, education, and leadership; (3) to advance coalitions and community building; and (4) to foster cultural heritage. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

B.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

15

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:

    A. Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;
    B. Identify the "local election authorities" that used these "precise methods;"
    C. Identify how these "precise methods" made "voting easier and more accessible to traditionally marginalized voters;" and
    D. Identify all documents that support your contentions.

**RESPONSE**: Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; and (2) permitting assistance with mail-in ballots.
    B. The referenced sentence refers to county election officials generally, not any specific county election official.
    C. Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.
    D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 7**: If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:

    A. Identify the "immaterial burdens" added;
    B. Explain how these burdens are immaterial; and
    C. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous new requirements for applying to vote by mail, and the types of cure processes provided for in-

16

person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8**: For each plaintiff, identify:

A. All accommodations that would be necessary for you or your disabled members to vote in compliance with SB1;
B. Any accommodations you or your members requested or intend to request for the March 2022 primary in response to SB1;
C. State the facts that support your contentions; and
D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of its members. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff' SAC, the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, case by case reasonable modification requests. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9**: Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the Voting Rights Act, the Civil Rights Act, the ADA and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing

17

the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;

3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42 U.S.C. §12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which the Plaintiff may be entitled.

**INTERROGATORY NO. 10**: If you seek mandatory injunctive relief through this Lawsuit, please identify and describe with specificity, by plaintiff, each omission that you contend each Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory because it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objection, Plaintiff responds as follows:

Plaintiff seeks mandatory injunctive relief against the Texas Secretary of State requiring it to (a) issue guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required; (b) issue guidance that lack of an ID number or an ID-number mismatch on an application to vote by mail or a ballot is not grounds for rejecting the application or ballot; (c) prescribe the design and content of the forms necessary for elections that no longer contain the mail-in ballot ID provisions; (d) prescribe the design and content of the application to vote by mail and mail-in envelope that no longer contain the ID provisions; and/or (e) issue guidance to all county election administrators or equivalent county officials that waiving the ID requirements is a reasonable accommodation that may be granted for persons with disabilities. Plaintiff additionally seeks mandatory injunctive relief requiring the Texas Secretary of State to widely publicize any such guidance or changes in the operation of the law.

Plaintiff likewise seeks mandatory injunctive relief against the Travis County Clerk and the Harris County Elections Administrator requiring them to (a) use forms for mail-in applications and ballots that do not request ID numbers; (b) follow the Texas Secretary of State's guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required and that lack of ID number or mismatch of ID number are not grounds to reject an application to vote by mail or ballot by mail; (d) widely publicize that the ID requirements for mail-in applications and ballots are no longer valid; and/or (e) grant requests to waive the ID requirements as a reasonable accommodation for persons with disabilities.

**INTERROGATORY NO. 11**: If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

18

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

19

### VERIFICATION FOR RESPONSES TO INTERROGATORIES

I, Deborah Chen, verify under penalty of perjury under the laws of the United States of America that the foregoing third amended responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.

Deborah Chen
Name

Civic Engagement Programs Director
Title

Signature

03/21/2023
Date

*On behalf of OCA-Greater Houston*

# Exhibit 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
|     Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| OCA-GREATER HOUSTON, et al., | § | |
|     Plaintiff, | § | |
| v. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
|     Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| HOUSTON JUSTICE, et al., | § | |
|     Plaintiff, | § | |
| v. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
|     Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| LULAC TEXAS, et al., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOSE ESPARZA, et al., | § | |
|     Defendants. | § | |

1

| | | |
|---|---|---|
| MI FAMILIA VOTA, et al., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0920-XR |
| | § | |
| GREG ABBOTT, et al., | § | |
|     Defendants. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
|     Defendants. | § | |

## PLAINTIFF LEAGUE OF WOMEN VOTERS OF TEXAS'S AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS' FIRST SET OF INTERROGATORIES

TO:    Defendants Texas Secretary of State John Scott and Texas Attorney General Ken Paxton ("State Defendants") by and through its attorneys of record Patrick K. Sweeten, William T. Thompson, Eric A. Hudson, Kathleen T. Hunker, Leif A. Olson, Jeffrey M. White, and Jack B. DiSorbo, via e-mail to patrick.sweeten@oag.texas.gov.

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff League of Women Voters of Texas ("LWVTX"), hereby serves the following Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: April 25, 2022

Respectfully Submitted,

/s/ _Zachary Dolling_
Mimi M.D. Marziani
Texas Bar No. 24091906
Hani Mirza

2

Texas Bar No. 24083512
Zachary D. Dolling
Texas Bar No. 24105809
Sarah Chen*
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
Andre Segura
Texas Bar No. 24107112
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org
asegura@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Samantha Osaki*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

3

acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
sosaki@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

LIA SIFUENTES DAVIS
Texas State Bar No. 24071411
LUCIA ROMANO
Texas State Bar No. 24033013
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
ldavis@drtx.org
lromano@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

4

Jessica Ring Amunson*
Urja Mittal*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
umittal@jenner.com

***COUNSEL FOR PLAINTIFF***

*admitted *pro hac vice*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 25th day of April, 2022, a true and correct copy of the foregoing

*Plaintiff League of Women Voters of Texas's Amended Objections and Responses to State*

*Defendants' First Set of Interrogatories* was served upon counsel of record via email or mail.

<u>/s/    Zachary Dolling</u>

5

## **RESERVATION OF RIGHTS**

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation State Defendants may give these Requests.

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiff is also willing to meet and confer about any of its objections or responses.

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting. Plaintiff reserves the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf, including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the

7

terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.      Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.      Plaintiff objects to the definition of "identify" when referring to:

      a.      A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

      b.      An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

      c.      A document, to the extent that it expands the scope of discovery to include

8

materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

d.    A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

e.    A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.    Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.    Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.    Plaintiff objects to State Defendants' Requests to the extent that they contain

9

incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

10.     Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.     Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.     Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.     These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

10

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**: Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

   **RESPONSE**: Plaintiff is challenging the following provisions in the Texas Election Code that were amended by Senate Bill 1 ("SB 1"):
1. SB 1 § 5.02: Amends Tex. Election Code § 84.002
2. SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3. SB 1 § 5.06: Amended Tex. Election Code § 84.035
4. SB 1 § 5.07: Amends Tex. Election Code § 86.001
5. SB 1 § 5.08: Amends Tex. Election Code § 86.002
6. SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)
7. SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8. SB 1 § 5.13: Amends Tex. Election Code § 87.041
9. SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.04: Amends Tex. Election Code § 64.034
11. SB 1 § 6.06: Amends Tex. Election Code § 86.0105
12. SB 1 § 7.04: Adds Tex. Election Code §§ 276.015, 276.016, 276.017, 276.018, and 276.019

**INTERROGATORY NO. 2**: If you contend that you have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:
   A.   State the facts that support your contention; and
   B.   Identify all documents that support your contentions.

   **RESPONSE**: Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter its voter education and volunteer training programs in light of the changes made to the Texas Election Code by SB 1. Namely, it must divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting and voter assistance, and the criminal and civil penalties associated with those provisions.

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas election identification certificate, or Texas personal ID card on their mail-in ballot applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides that if the voter has not been issued one of these numbers by the State of Texas, the voter may instead provide the last four digits of its Social Security number. If the voter has not been issued any of these numbers by the State of Texas or the Social Security Administration, the voter may sign a statement indicating that they have never been issued one of these numbers. Since the SAC was filed, county elections offices across the state have reported high rejection rates of mail-in ballot applications for the March 2022 primary due to the difficulty for voters to comply with these new immaterial ID number requirements. Plaintiff has already been injured and will continue to suffer injury due to these provisions because they have diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will also need to divert staffing to answer questions from voters who do not understand the new burdensome requirements. Additionally, Plaintiff will need to divert resources to inform individuals who have a driver's license

12

number or Social Security number but are unable to access it, that unless they can findthat number they will be unable to vote by mail, and helping individuals to either recallor locate identification numbers. The diversion of resources required to guide members through complying with and having their mail-in ballot counted pursuant tothe burdensome new identification requirements will decrease the amount of time and resources that Plaintiff can spend conducting educational outreach to and answering questions from other voters about participating in the voting process and advancing its other organizational goals. This diversion of resources would not be necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶¶ 117–118 and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance in all aspects of the voting process, free of encumbrance by state laws thatimpose restrictions on the selection of those assistants or the specific types of assistance that may be provided by them. SB 1 Section 6.04 adds a requirement that voter assistants swear under penalty of perjury that "I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter'sballot, or directing the voter to mark the ballot" and no longer allows assistants to answer a voter's questions, help the voter navigate the polling place, or provide any other type of assistance that might be necessary for individuals with disabilities or with limited English proficiency. Plaintiff lists examples of additional specific types of assistance needed in SAC ¶¶ 154–160. In addition, SB 1 Section 6.06 creates a strict liability, state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with its mail-inballot. Plaintiff lists specific injuries in SAC ¶¶ 167–168 and its response to InterrogatoryNo. 4.

Before SB 1, the Texas Elections Code already prohibited improper influencing or electioneering. Section 7.04 of SB 1 goes much further to criminalize paid ballot collection services and paid interactions with voters in the presence of an official ballot, which the bill derogatorily labels as "vote harvesting," creating a third-degreefelony. Section 7.04 imposes criminal and civil penalties on any person who gives orreceives some "compensation or other benefit" for "knowingly provid[ing] or offer[ing] to provide vote harvesting services," defined as any "in-person interaction with one or more voters, in the physical presence of"" and "directly involving" any "official ballot or a ballot voted by mail," which are "intended" "to deliver votes for [or against] a specific candidate or measure." This provision is substantially overbroadand vague, infringing on Plaintiff's core political speech and subjecting Plaintiff to potential arbitrary and/or selective prosecution without prior notice of precisely whatactivities are illegal, as well as possible civil claims by candidates. Plaintiff lists specific injuries in SAC ¶¶ 208 and its response to Interrogatory No. 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 22, 2022—see Plaintiffs' Response to Request for Production No. 2.

13

**INTERROGATORY NO. 3**: If you contend that your members have been injured by any of theTexas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

    A. State the facts that support your contention, including the identity of each injuredmember upon whom your standing is based; and

    B. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended SchedulingOrder, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionallyobjects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any timelimitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. LWVTX has approximately 3,050 members across Texas. A large number of these members participate in LWVTX's election-related programs, such as registering people to vote, participating in get out the vote ("GOTV") events, canvassing or "doorknocking," serving as election workers, assisting individual voters, and hosting nonpartisan issue or candidate forums.

    In 2020, LWVTX surveyed its members and determined that hundreds of its members chose to vote by mail due to age or disability. LWVTX has members who have been or will be harmed by SB1's provisions requiring an application for ballot by mail or mail-in ballot to be automatically rejected when a voter omits their ID number or makes a mistake in entering their ID number. Some of these members are disabled.

    LWVTX also has members who will be harmed by SB 1's drastic illegal restrictions on the right to select an assistant of their choice and have assistance in all aspects of the voting process. LWVTX has members who need assistance either due to disability or limited English proficiency and who have used assistants when voting in the past. In every election, the League encourages all of their members, including members with disabilities and limited English proficiency to vote.

14

LWVTX members who have been harmed by SB 1 include:

Pam Gaskin is a League member. She is 74 years old and lives in Missouri City. In the March 2022 primary election, she filled out her vote by mail application with her driver's license number. Her application was rejected because her voter registration file included only her social security number. She had to submit a new application with her social security number.

Madeleine Appel is a League member. She is 85 years old and lives in Travis County. In the March 2022 primary election, her ballot to vote by mail was rejected, despite listing both her driver's license number and her social security number. She was told the identification number she listed did not match the number she used to register to vote. She submitted a second mail in ballot, but was unable to verify whether the ballot was received and counted.

Janet Eickmeyer is a League member. She is 75 years old and lives in Richardson. In the March 2022 primary election, her application to vote by mail was rejected twice. She used her social security number on her first application to vote by mail, but it was rejected because it did not match the number in her voter file. She applied again with both her driver's license and social security number. This was also rejected. She had to call the Dallas County Clerk's office, who confirmed the rejection, but then approved the application without any explanation. The Dallas County Clerk's office stated that her ballot had been counted, but the Secretary of State's website states that no voter can be found when she tries to input her information.

Jeannie Lewis is a League member. She is 80 years old, lives in San Marcos, and has a disability. Her application to vote by mail was rejected. When she applied for a mail in ballot before the 2022 primary election, she used her driver's license number. The application was rejected because the identification number did not match the number on file. In order to correct this, Ms. Lewis had to re-register to vote with her driver's license number. Subsequently, her mail in ballot was rejected because she did not write her identification number on the envelope flap. Because it was rejected close to the election, she had to go in person to correct the ballot.

Julie Espinoza is a League member who has a disability. She is a juvenile rheumatoid arthritis wheelchair user. She needs an assistant to vote in person but is concerned that anyone who assists her could be accused of violating SB 1, so she no longer wants to vote in person. Although she attempted to begin the process to apply to vote by mail, she ultimately did not vote in the March 2022 primary election.

A. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 22, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4**: If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:

15

A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;

B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;

C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and

D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. LWVTX has expended time, money, and resources in combating SB 1's passage, as well as combatting the passage of SB 1's predecessor bills from the regular session— SB 7 and HB 6. LWV members attended public testimony trainings, recruited other testifiers, testified at public hearings of the Texas House and Senate, wrote letters and op-eds against SB 1 and its predecessors, organized email writing campaigns, and organized a rally defending the right to vote.

Since SB 1 went into effect on December 2, 2021, LWVTX has had to devote significant personnel time and resources into helping members and the public navigate SB 1's new provisions. Starting on approximately November 1, 2021,

LWVTX's President, Grace Chimene, has had to devote the vast majority of her time to SB 1. Two other LWVTX Board members and the LWVTX Voting Rights Issue Chair have also spent the majority of their time addressing the challenges that SB 1 presents to voters and elections, and other paid staff have also devoted time to SB 1. In particular, Ms. Chimene and other LWVTX volunteers have had to spend their dedicated time on educating LWVTX members and the public about SB 1's new requirements and restrictions. For example, Ms. Chimene has had to: create social media posts and YouTube about mail-in ballot applications and voting by mail processes affected by SB 1; put together PowerPoint presentations regarding the ways

16

the vote by mail process has changed as a result of SB 1; host webinars about voting by mail in light of SB 1 and SB 1's provisions as a whole; review county websites to ensure that the voter information is updated as required by SB 1; answer members' questions about SB 1's driver's license/ social security number requirements for applying to vote by mail; brief local leagues on the effects of SB 1; and host webinars with other organizations about voting by mail and SB 1 as a whole. Doing all of this took significant time and often multiple attempts. For example, the initial educational video that the LWVTX assembled in light of SB 1 just reflected what SB 1 itself contained. However, after receiving belated guidance from the Secretary of State instructing that it would be more prudent to include both a driver's license number and a social security number on the application to vote by mail, the LWVTX had to make changes to the educational materials, website information, tips for voters materials, and graphics.

As part of her commitment to educating the public, Ms. Chimene has also devoted significant time to speaking to the media about the confusion caused by the new voting restrictions and requirements imposed by SB 1. Coordinating these interviews, preparing for them, and participating in them has taken a significant amount of personnel time. Overall, answering the public's questions about SB 1 consumes the vast majority of Ms. Chimene's time.

Beyond personnel time, LWVTX's response to SB 1 has also caused it to expend financial resources. As a result of all of the turmoil caused by SB 1's passage and the amount of the President's time it has consumed, the LWVTX's board of directors approved $46,000 to hire a brand new communications staff member and $10,000 to pay for recruitment and orientation. This communications staff member would not have been needed if the President had not had to respond to SB 1, since the President has historically handled LWVTX's communications efforts. Additionally, LWVTX has had to expend financial resources on producing materials reflecting changes in the law related to SB 1, including the voters' guide.

B. As a result of SB 1, LWVTX has had to significantly scale back its Get Out the Vote (GOTV) efforts. Rather than focusing on designing and disseminating materials on topics such as encouraging friends and family to vote, supporting college students in voting, finding one's polling place, and voting dates, LWVTX has had to focus on designing and disseminating materials regarding challenges with the vote-by-mail process as a result of SB 1 and other restrictions related to SB 1. Additionally, LWVTX has been forced to reduce its outreach to young voters, including encouraging voter registration at high schools, because they have had to focus on voters more likely to be affected by the challenged provisions of SB 1. LWVTX volunteers now spend significant portions of their time explaining to members and the public how to navigate the new vote by mail application process and teaching them how to use the Track My Ballot page in addition to answering questions about other provisions of SB 1, including the new rules surrounding assistants.

Further, the time expended to challenge and educate the public about SB 1 caused

17

LWVTX to table a planned study to assess the impact of election administration and technology, including voting by mail and cybersecurity measures. Given the intensity of discourse during the extended 2021 legislative season around SB 1, and the final massive changes to the Texas Election Code, the resources for the study were diverted to responding to widespread requests for detailed information during the legislative sessions and addressing the impact of SB 1 once it went into effect.

C. Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expendituresPlaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 22, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 5**: If you contend that the passage of SB1 frustrates your mission, for each plaintiff:
   A. Explain how each provision makes your activities more difficult; and
   B. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as cumulative and duplicative of Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extentit discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiverof the foregoing specific and general objections, Plaintiff responds as follows:

A. LWVTX is a nonpartisan, grassroots civic organization that encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy, including by empowering voters and defending democracy by expanding voter registration, increasing voter turnout, and providing voter education. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 22, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:
   A. Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;

18

B. Identify the "local election authorities" that used these "precise methods;"
C. Identify how these "precise methods" made "voting easier and more accessible to traditionally marginalized voters;" and
D. Identify all documents that support your contentions.

**RESPONSE**: Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; (2) permitting voters to receive assistance at the polls, particularly for voters with a disability or who are not fluent in English; and (3) permitting assistance with mail-in ballots.
B. The referenced sentence refers to county election officials generally, not any specific county election official.
C. Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that voting by mail, permitting assistance at the polls, and permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.
D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 22, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 7**: If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:
A. Identify the "immaterial burdens" added;
B. Explain how these burdens are immaterial; and
C  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous new requirements for applying to vote by mail, and the types of cure processes provided for in-person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8**: For each plaintiff, identify:
A. All accommodations that would be necessary for you or your disabled members to vote in compliance with SB1;
B. Any accommodations you or your members requested or intend to request for the March 2022 primary in response to SB1;
C. State the facts that support your contentions; and

19

D.  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of its members. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff' SAC, the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, case by case reasonable modification requests. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9**: Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the Voting Rights Act, the Civil Rights Act, the ADA and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;
3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42 U.S.C. §12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which the Plaintiff may be entitled.

**INTERROGATORY NO. 10**: If you seek mandatory injunctive relief through this Lawsuit, please identify and describe with specificity, by plaintiff, each omission that you contend each

20

Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory because it requires Plaintiff to describerelief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented.

**INTERROGATORY NO. 11**: If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County DistrictAttorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

21

**VERIFICATION FOR RESPONSES TO INTERROGATORIES**

I _Grace Chimene_ verify under penalty of perjury under the laws of the United States of America that the foregoing amended responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.

_Grace Chimene_
Name

_president_
Title

_Srace Chi_
Signature

_4-25-22_
Date

*On behalf of the League of Women Voters of Texas*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| OCA-GREATER HOUSTON, et al., | § | |
| Plaintiff, | § | |
| v. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| HOUSTON JUSTICE, et al., | § | |
| Plaintiff, | § | |
| v. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| LULAC TEXAS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOSE ESPARZA, et al., | § | |
| Defendants. | § | |

1

| | | |
|---|---|---|
| MI FAMILIA VOTA, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0920-XR |
| | § | |
| GREG ABBOTT, et al., | § | |
| Defendants. | § | |
| | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
| Defendants. | § | |

**PLAINTIFF LEAGUE OF WOMEN VOTERS OF TEXAS'S THIRD
AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS'
FIRST SET OF INTERROGATORIES**

TO:  Defendants Texas Secretary of State Jane Nelson and Texas Attorney General Ken Paxton ("State Defendants") by and through their attorneys of record, Kathleen T. Hunker and J. Aaron Barnes via e-mail to kathleen.hunker@oag.texas.gov and aaron.barnes@oag.texas.gov.

Pursuant to Federal Rule of Civil Procedure 26 and 33, Plaintiff League of Women Voters of Texas ("LWVTX"), hereby serves the following Third Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: March 31, 2023                    Respectfully Submitted,

By: */s/ Zachary Dolling*

2

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
LISA A. SNEAD
Texas State Bar No. 24062204
PETER HOFER
Texas State Bar No. 09777275
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)

(512) 454-3999 (fax)
lromano@drtx.org
lsnead@drtx.org
phofer@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com

Gregory D. Washington*
**JENNER & BLOCK LLP**
455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

***COUNSEL FOR OCA-GREATER HOUSTON PLAINTIFFS.***
*admitted *pro hac vice*

3

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2023, a true and correct copy of the foregoing *Plaintiff League of Women Voters of Texas's Third Amended Objections and Responses to State Defendants' First Set of Interrogatories* was served upon counsel of record via email or mail.

/s/   *Zachary Dolling*

## RESERVATION OF RIGHTS

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation State Defendants may give these Requests.

4

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiff is also willing to meet and confer about any of its objections or responses.

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting. Plaintiff reserves the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf, including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the

5

terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.      Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.      Plaintiff objects to the definition of "identify" when referring to:

   a.      A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

   b.      An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

   c.      A document, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

6

    d.      A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

    e.      A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.      Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.      Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.      Plaintiff objects to State Defendants' Requests to the extent that they contain incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

7

10.     Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.     Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.     Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.     These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**: Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

    **RESPONSE**: Plaintiff is challenging the following provisions in the Texas Election Code that were amended by Senate Bill 1 ("SB 1"): [1]

---

[1] In its Second Amended Complaint Plaintiff challenged SB 1 § 6.04 (amending Tex. Election Code § 64.034). The district court, in its order largely denying State Defendants' motion to dismiss Plaintiff's claims, held that a modified injunction in a different case, *OCA-Greater Houston v. Texas*, 1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022), mooted Plaintiff's Section 6.04 claims against State Defendants. *See* Dkt. 448 at 33 & n.18. Plaintiff has amended its interrogatory answers to reflect this.

8

1. SB 1 § 5.02: Amends Tex. Election Code § 84.002
2. SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3. SB 1 § 5.06: Amended Tex. Election Code § 84.035
4. SB 1 § 5.07: Amends Tex. Election Code § 86.001
5. SB 1 § 5.08: Amends Tex. Election Code § 86.002
6. SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)
7. SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8. SB 1 § 5.13: Amends Tex. Election Code § 87.041
9. SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.06: Amends Tex. Election Code § 86.0105
11. SB 1 § 7.04: Adds Tex. Election Code §§ 276.015, 276.016, 276.017, 276.018, and 276.019

**INTERROGATORY NO. 2**: If you contend that you have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

    A.    State the facts that support your contention; and

    B.    Identify all documents that support your contentions.

    **RESPONSE**: Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A.  In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter its voter education and volunteer training programs in light of the changes made to the Texas Election Code by SB 1. Namely, it must divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting and voter assistance, and the criminal

9

and civil penalties associated with those provisions.

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.08, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas election identification certificate, or Texas personal ID card on their mail-in ballot applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides that if the voter has not been issued one of these numbers by the State of Texas, the voter may instead provide the last four digits of its Social Security number. If the voter has not been issued any of these numbers by the State of Texas or the Social Security Administration, the voter may sign a statement indicating that they have never been issued one of these numbers. Since the SAC was filed, county elections offices across the state have reported high rejection rates of mail-in ballot applications and ballots for the March 2022 primary and November 2022 general election due to the difficulty for voters to comply with these new immaterial ID number requirements. Plaintiff has already been injured and will continue to suffer injury due to these provisions because it has diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will also need to divert staff to answer questions from voters who do not understand the new burdensome requirements. Additionally, Plaintiff will need to divert resources to inform individuals who have a driver's license number or Social Security number but are unable to access it, that unless they can find that number they will be unable to vote by mail, and helping individuals to either recall or locate identification numbers. The diversion of resources required to guide members through complying with and having their mail-in application accepted and ballot counted pursuant to the burdensome new identification requirements will decrease the amount of time and resources that Plaintiff can spend conducting educational outreach to and answering questions from other voters about participating in the voting process and advancing its other organizational goals. This diversion of resources would not be necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶¶ 117–118 and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance in all aspects of the voting process, free of encumbrance by state laws that impose restrictions on the selection of those assistants or the specific types of assistance that may be provided by them. SB 1 Section 6.06 creates a strict liability,

10

state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with their mail-in ballot. Plaintiff lists specific injuries in SAC ¶¶ 167–168 and its response to Interrogatory No. 4.

Before SB 1, the Texas Elections Code already prohibited improper influencing or electioneering. Section 7.04 of SB 1 goes much further to criminalize paid ballot collection services and paid interactions with voters in the presence of an official ballot, which the bill derogatorily labels as "vote harvesting," creating a third-degree felony. Section 7.04 imposes criminal and civil penalties on any person who gives or receives some "compensation or other benefit" for "knowingly provid[ing] or offer[ing] to provide vote harvesting services," defined as any "in-person interaction with one or more voters, in the physical presence of"" and "directly involving" any "official ballot or a ballot voted by mail," which are "intended" "to deliver votes for [or against] a specific candidate or measure." This provision is substantially overbroad and vague, infringing on Plaintiff's core political speech and subjecting Plaintiff to potential arbitrary and/or selective prosecution without prior notice of precisely what activities are illegal, as well as possible civil claims by candidates. Plaintiff lists specific injuries in SAC ¶¶ 208 and its response to Interrogatory No. 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 3**: If you contend that your members have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

A. State the facts that support your contention, including the identity of each injured member upon whom your standing is based; and
B. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionally objects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members

11

outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any time limitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A.  LWVTX has approximately 3,050 members across Texas. A large number of these members participate in LWVTX's election-related programs, such as registering people to vote, participating in get out the vote ("GOTV") events, canvassing or "doorknocking," serving as election workers, assisting individual voters, and hosting nonpartisan issue or candidate forums.

    In 2020, LWVTX surveyed its members and determined that hundreds of its members chose to vote by mail due to age or disability. LWVTX has members who have been or will be harmed by SB1's provisions requiring an application for ballot by mail or mail-in ballot to be automatically rejected when a voter omits their ID number or makes a mistake in entering their ID number. Some of these members are disabled.

    LWVTX also has members who will be harmed by SB 1's drastic illegal restrictions on the right to select an assistant of their choice and have assistance when voting by mail. LWVTX has members who need assistance either due to disability or limited English proficiency and who have used assistants when voting in the past. In every election, the League encourages all of their members, including members with disabilities and limited English proficiency to vote.

    While the following is not an exhaustive list of injured members, LWVTX contends the following members have been injured by the Texas Election Code provisions identified in Interrogatory No. 1:

    Pam Gaskin: Ms. Gaskin is a League member. She is approximately 74 years old and lives in Missouri City. In the March 2022 primary election, she filled out her vote by mail application with her driver's license number. Her application was rejected because her voter registration file included only her social security number. She had to submit a new application with her social security number.

    Madeleine Appel: Ms. Appel is a League member. She is approximately 85 years old and lives in Travis County. In the March 2022 primary election, her ballot to vote by mail was rejected, despite listing both her driver's license number and her social security number. She was told the identification number she listed did not match the number she used to register to vote. She submitted a second mail in ballot, but was unable to verify whether the ballot was received and counted.

12

Janet Eickmeyer: Ms. Eickmeyer is a League member. She is approximately 75 years old and lives in Richardson. In the March 2022 primary election, her application to vote by mail was rejected twice. She used her social security number on her first application to vote by mail, but it was rejected because it did not match the number in her voter file. She applied again with both her driver's license and social security number. This was also rejected. She had to call the Dallas County Clerk's office, who confirmed the rejection, but then approved the application without any explanation. The Dallas County Clerk's office stated that her ballot had been counted, but the Secretary of State's website stated that no voter could be found when she tried to input her information.

Jeannie Lewis: Ms. Lewis is a League member. She is approximately 80 years old, lives in San Marcos, and has a disability. Her application to vote by mail was rejected. When she applied for a mail in ballot before the 2022 primary election, she used her driver's license number. The application was rejected because the identification number did not match the number on file. In order to correct this, Ms. Lewis had to re-register to vote with her driver's license number. Subsequently, her mail in ballot was rejected because she did not write her identification number on the envelope flap. Because it was rejected close to the election, she had to go in person to correct the ballot.

Julie Espinoza: Ms. Espinoza is a League member who has a disability. She is a juvenile rheumatoid arthritis wheelchair user. She needs an assistant to vote in person but is concerned that anyone who assists her could be accused of violating SB 1, so she no longer wants to vote in person. Although she attempted to begin the process to apply to vote by mail, she ultimately did not vote in the March 2022 primary election.

Lorena Maher: Ms. Maher is a member of the League of Women Voters of Texas and is a person with a disability. She resides in Pasadena, Texas, and votes by mail. Her disability makes it difficult for her to read and write her identification numbers when voting by mail due to limited vision and decreased motor function. She was eligible to, and did, vote by mail during the November 2022 general election.

Patricia Buck: Ms. Buck is a member of the League of Women Voters of Texas and is a person with diabetes. She is 70 years old and resides in Harris County. In 2022, she wanted to start voting by mail because she and her husband have difficulty standing for a long time, including at polling locations. However, she was deterred from voting by mail because of concerns about rejection rates and privacy concerns related to the new identification requirements. As a result, she voted in person during the 2022 March primary and November general elections.

Milan Suarez: Ms. Suarez is a member of the League of Women Voters of Texas. She is a college student attending school in the State of Washington; she maintains her residency in Harris County and accordingly votes by mail in Texas elections. In the November 2022 general election, the Harris County Elections Administrator mailed

13

a notice to her Washington mailing address that her application to vote by mail was rejected because there was no acceptable identification number associated with her voter registration file. Subsequently, and after some delay, the Harris County Elections Administrator mailed her ballot to her Harris County residence address, which her family then forwarded to her. She is unsure whether her ballot was ultimately received on time or counted.

A. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4**: If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:

A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;

B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;

C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and

D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. LWVTX has expended time, money, and resources in combating SB 1's passage, as well as combatting the passage of SB 1's predecessor bills from the regular session— SB 7 and HB 6. LWV members attended public testimony trainings, recruited other

14

testifiers, testified at public hearings of the Texas House and Senate, wrote letters and op-eds against SB 1 and its predecessors, organized email writing campaigns, and organized a rally defending the right to vote.

Since SB 1 went into effect on December 2, 2021, LWVTX has had to devote significant personnel time and resources into helping members and the public navigate SB 1's new provisions. Starting on approximately November 1, 2021, LWVTX's President, Grace Chimene, had to devote significant time to SB 1. Grace Chimene's term as LWVTX President ended in 2022. The subsequent LWVTX President, Joyce LeBombard, has also had to devote significant time to addressing the effects of SB1. Two other LWVTX Board members and the LWVTX Voting Rights Issue Chair have also spent the majority of their time addressing the challenges that SB 1 presents to voters and elections, and other paid staff have also devoted time to SB 1. In particular, the LWVTX President and other LWVTX volunteers have had to spend their dedicated time on educating LWVTX members and the public about SB 1's new requirements and restrictions. For example, the LWVTX President has had to: create social media posts and YouTube about mail-in ballot applications and voting by mail processes affected by SB 1; put together PowerPoint presentations regarding the ways the vote by mail process has changed as a result of SB 1; host webinars about voting by mail in light of SB 1 and SB 1's provisions as a whole; review county websites to ensure that the voter information is updated as required by SB 1; answer members' questions about SB 1's driver's license/ social security number requirements for applying to vote by mail; brief local leagues on the effects of SB 1; host webinars with other organizations about voting by mail and SB 1 as a whole; and advocate for the Texas Legislature to repeal SB1. Doing all of this has taken significant time and often multiple attempts. For example, the initial educational video that the LWVTX assembled in light of SB 1 just reflected what SB 1 itself contained. However, after receiving belated guidance from the Secretary of State instructing that it would be more prudent to include both a driver's license number and a social security number on the application to vote by mail, the LWVTX had to make changes to the educational materials, website information, tips for voters materials, and graphics.

As part of her commitment to educating the public, the LWVTX President has also devoted significant time to speaking to the media about the confusion caused by the new voting restrictions and requirements imposed by SB 1. Coordinating these interviews, preparing for them, and participating in them has taken a significant amount of personnel time.

Beyond personnel time, LWVTX's response to SB 1 has also caused it to expend financial resources. As a result of all of the turmoil caused by SB 1's passage and the amount of the President's time it has consumed, the LWVTX's board of directors approved $46,000 to hire a brand new communications staff member and $10,000 to

15

pay for recruitment and orientation. This communications staff member would not have been needed if the President had not had to respond to SB 1, since the President has historically handled LWVTX's communications efforts. Additionally, LWVTX has had to expend financial resources on producing materials reflecting changes in the law related to SB 1, including the voters' guide.

B. As a result of SB 1, LWVTX has had to significantly scale back its Get Out the Vote (GOTV) efforts. Rather than focusing on designing and disseminating materials on topics such as encouraging friends and family to vote, supporting college students in voting, finding one's polling place, and voting dates, LWVTX has had to focus on designing and disseminating materials regarding challenges with the vote-by-mail process as a result of SB 1 and other restrictions related to SB 1. Additionally, LWVTX has been forced to reduce its outreach to young voters, including encouraging voter registration at high schools, because they have had to focus on voters more likely to be affected by the challenged provisions of SB 1. LWVTX volunteers now spend significant portions of their time explaining to members and the public how to navigate the new vote by mail application process and teaching them how to use the Track My Ballot page in addition to answering questions about other provisions of SB 1, including the new rules surrounding assistants.

Further, the time expended to challenge and educate the public about SB 1 caused LWVTX to table a planned study to assess the impact of election administration and technology, including voting by mail and cybersecurity measures. Given the intensity of discourse during the extended 2021 legislative season around SB 1, and the final massive changes to the Texas Election Code, the resources for the study were diverted to responding to widespread requests for detailed information during the legislative sessions and addressing the impact of SB 1 once it went into effect.

C. Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expenditures Plaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023— see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 5**: If you contend that the passage of SB1 frustrates your mission, for each plaintiff:

    A. Explain how each provision makes your activities more difficult; and
    B. Identify all documents that support your contentions.

    **RESPONSE**: Plaintiff objects to this interrogatory as cumulative and duplicative of

16

Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. LWVTX is a nonpartisan, grassroots civic organization that encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy, including by empowering voters and defending democracy by expanding voter registration, increasing voter turnout, and providing voter education. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

    B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:

    A. Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;

    B. Identify the "local election authorities" that used these "precise methods;"

    C. Identify how these "precise methods" made "voting easier and more accessible to traditionally marginalized voters;" and

    D. Identify all documents that support your contentions.

**RESPONSE**: Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; and (2) permitting assistance with mail-in ballots.

    B. The referenced sentence refers to county election officials generally, not any specific county election official.

    C. Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that

17

permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.

D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 14, 2022, April 22, 2022, May 13, 2022, September 13, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 7**: If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:

A. Identify the "immaterial burdens" added;

B. Explain how these burdens are immaterial; and

C. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous new requirements for applying to vote by mail, and the types of cure processes provided for in- person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8**: For each plaintiff, identify:

A. All accommodations that would be necessary for you or your disabled members to vote in compliance with SB1;

B. Any accommodations you or your members requested or intend to request for the March 2022 primary in response to SB1;

C. State the facts that support your contentions; and

D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of its members. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff' SAC, the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, case by case reasonable modification requests. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information

18

responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9**: Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the Voting Rights Act, the Civil Rights Act, the ADA and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;
3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42 U.S.C. §12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which the Plaintiff may be entitled.

**INTERROGATORY NO. 10**: If you seek mandatory injunctive relief through this Lawsuit, please identify and describe with specificity, by plaintiff, each omission that you contend each Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory because it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objection, Plaintiff responds as follows:

Plaintiff seeks mandatory injunctive relief against the Texas Secretary of State requiring it to (a) issue guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required; (b) issue guidance that lack of an ID number or an ID-number mismatch on an application to vote by mail or a ballot is not grounds for rejecting the application or ballot; (c) prescribe the design and content of the forms necessary for elections that no longer contain the mail-in ballot ID provisions; (d) prescribe the design and content of the application to vote by mail and mail-in

19

envelope that no longer contain the ID provisions; and/or (e) issue guidance to all county election administrators or equivalent county officials that waiving the ID requirements is a reasonable accommodation that may be granted for persons with disabilities. Plaintiff additionally seeks mandatory injunctive relief requiring the Texas Secretary of State to widely publicize any such guidance or changes in the operation of the law.

Plaintiff likewise seeks mandatory injunctive relief against the Travis County Clerk and the Harris County Elections Administrator requiring them to (a) use forms for mail-in applications and ballots that do not request ID numbers; (b) follow the Texas Secretary of State's guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required and that lack of ID number or mismatch of ID number are not grounds to reject an application to vote by mail or ballot by mail; (d) widely publicize that the ID requirements for mail-in applications and ballots are no longer valid; and/or (e) grant requests to waive the ID requirements as a reasonable accommodation for persons with disabilities.

**INTERROGATORY NO. 11**: If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

20

**VERIFICATION FOR RESPONSES TO INTERROGATORIES**

I, Joyce LeBombard, verify under penalty of perjury under the laws of the United States of America that the foregoing second amended responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.

Joyce LeBombard
Name

President
Title

*[signature]*
Signature

3/21/23
Date

*On behalf of the League of Women Voters of Texas*

# Exhibit 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
|      Defendants. | § | |

| | | |
|---|---|---|
| OCA-GREATER HOUSTON, et al., | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
|      Defendants. | § | |

| | | |
|---|---|---|
| HOUSTON JUSTICE, et al., | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
|      Defendants. | § | |

| | | |
|---|---|---|
| LULAC TEXAS, et al., | § | |
|      Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOSE ESPARZA, et al., | § | |
|      Defendants. | § | |

1

| | | |
|---|---|---|
| MI FAMILIA VOTA, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0920-XR |
| | § | |
| GREG ABBOTT, et al., | § | |
| Defendants. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
| Defendants. | § | |

## PLAINTIFF REVUP TEXAS' AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS' FIRST SET Of INTERROGATORIES

TO:    Defendants Texas Secretary of State John Scott and Texas Attorney General Ken Paxton ("State Defendants") by and through its attorneys of record Patrick K. Sweeten, William T. Thompson, Eric A. Hudson, Kathleen T. Hunker, Leif A. Olson, Jeffrey M. White, and Jack B. DiSorbo, via e-mail to patrick.sweeten@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff REVUP-Texas ("REVUP") hereby serves the following Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: April 5, 2022                    Respectfully Submitted,

                                        /s/  *Sarah Chen*
                                        Mimi M.D. Marziani
                                        Texas Bar No. 24091906
                                        Hani Mirza

Texas Bar No. 24083512
Zachary D. Dolling
Texas Bar No. 24105809
Sarah Chen*
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org


Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
Andre Segura
Texas Bar No. 24107112
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org
aharris@aclutx.org
asegura@aclutx.org


Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Samantha Osaki*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

3

acepedaderieux@aclu.org<br>
asavitzky@aclu.org<br>
slakin@aclu.org<br>
sosaki@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

LIA SIFUENTES DAVIS
Texas State Bar No. 24071411
LUCIA ROMANO
Texas State Bar No. 24033013
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
ldavis@drtx.org
lromano@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE**
**AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

4

Jessica Ring Amunson*
Urja Mittal*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
umittal@jenner.com

***COUNSEL FOR PLAINTIFF***

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2022, a true and correct copy of the foregoing

*Plaintiff REVUP-Texas' Amended Objections and Responses to State Defendants' First Set of*

*Interrogatories* was served upon counsel of record via email or mail.

/s/ *Sarah Chen*

5

## **RESERVATION OF RIGHTS**

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation State Defendants may give these Requests.

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiff is also willing to meet and confer about any of its objections or responses.

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting. Plaintiff reserves the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf, including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the

terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.      Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.      Plaintiff objects to the definition of "identify" when referring to:

a.      A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

b.      An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

c.      A document, to the extent that it expands the scope of discovery to include

8

materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

d.      A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

e.      A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.      Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.      Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.      Plaintiff objects to State Defendants' Requests to the extent that they contain

9

incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

10.      Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.      Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.      Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

10

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1**: Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

      **RESPONSE**: Plaintiff is challenging the following provisions in the Texas Election Code that were amended by Senate Bill 1 ("SB 1"):
1. SB 1 § 5.02: Amends Tex. Election Code § 84.002
2. SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3. SB 1 § 5.06: Amended Tex. Election Code § 84.035
4. SB 1 § 5.07: Amends Tex. Election Code § 86.001
5. SB 1 § 5.08: Amends Tex. Election Code § 86.002
6. SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)
7. SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8. SB 1 § 5.13: Amends Tex. Election Code § 87.041
9. SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.04: Amends Tex. Election Code § 64.034
11. SB 1 § 6.06: Amends Tex. Election Code § 86.0105

**INTERROGATORY NO. 2**: If you contend that you have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:
      A.     State the facts that support your contention; and
      B.     Identify all documents that support your contentions.

      **RESPONSE**: Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter its voter education and volunteer training programs in light of the changes made to the Texas Election Code by SB 1. Namely, it must divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting and voter assistance, and the criminal and civil penalties associated with those provisions.

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas election identification certificate, or Texas personal ID card on their mail-in ballot applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides that if the voter has not been issued one of these numbers by the State of Texas, the voter may instead provide the last four digits of its Social Security number. If the voter has not been issued any of these numbers by the State of Texas or the Social Security Administration, the voter may sign a statement indicating that they have never been issued one of these numbers. Since the SAC was filed, county elections offices across the state have reported high rejection rates of mail-in ballot applications for the March 2022 primary due to the difficulty for voters to comply with these new immaterial ID number requirements. Plaintiff has already been injured and will continue to suffer injury due to these provisions because they have diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will also need to divert staffing to answer questions from voters who do not understand the new burdensome requirements. Additionally, Plaintiff will need to divert resources to inform individuals who have a driver's license

12

number or Social Security number but are unable to access it, that unless they can find that number they will be unable to vote by mail, and helping individuals to either recall or locate identification numbers. The diversion of resources required to guide members through complying with and having their mail-in ballot counted pursuant to the burdensome new identification requirements will decrease the amount of time and resources that Plaintiff can spend conducting educational outreach to and answering questions from other voters about participating in the voting process and advancing its other organizational goals. This diversion of resources would not be necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶¶ 119 and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance in all aspects of the voting process, free of encumbrance by state laws that impose restrictions on the selection of those assistants or the specific types of assistance that may be provided by them. SB 1 Section 6.04 adds a requirement that voter assistants swear under penalty of perjury that "I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot" and no longer allows assistants to answer a voter's questions, help the voter navigate the polling place, or provide any other type of assistance that might be necessary for individuals with disabilities or with limited English proficiency. Plaintiff lists examples of additional specific types of assistance needed in SAC ¶¶ 154–160. In addition, SB 1 Section 6.06 creates a strict liability, state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with its mail-in ballot. Plaintiff lists specific injuries in SAC ¶¶ 166 and its response to Interrogatory No. 4.

Before SB 1, the Texas Elections Code already prohibited improper influencing or electioneering. Section 7.04 of SB 1 goes much further to criminalize paid ballot collection services and paid interactions with voters in the presence of an official ballot, which the bill derogatorily labels as "vote harvesting," creating a third-degree felony. Section 7.04 imposes criminal and civil penalties on any person who gives or receives some "compensation or other benefit" for "knowingly provid[ing] or offer[ing] to provide vote harvesting services," defined as any "in-person interaction with one or more voters, in the physical presence of"" and "directly involving" any "official ballot or a ballot voted by mail," which are "intended" "to deliver votes for [or against] a specific candidate or measure." This provision is substantially overbroad and vague, infringing on Plaintiff's core political speech and subjecting Plaintiff to potential arbitrary and/or selective prosecution without prior notice of precisely what activities are illegal, as well as possible civil claims by candidates. Plaintiff lists specific injuries in SAC ¶¶ 208–210 and its response to Interrogatory No. 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 4, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 3**: If you contend that your members have been injured by any of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

    A. State the facts that support your contention, including the identity of each injured member upon whom your standing is based; and

    B. Identify all documents that support your contentions.

    **RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionally objects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any time limitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. REVUP has at approximately 500 members, who are primarily individuals with disabilities and are eligible to vote by mail and eligible to receive assistance while voting. Some of REVUP's members also serve as assistants to persons needing assistance to vote due to a disability. REVUP members with disabilities participate in and help guide the direction of the organization's efforts. These members have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1 because these provisions burden and limit people who provide necessary assistance to voters, which in turn will unduly burden REVUP members who cannot vote without such assistance. In addition, REVUP members have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1 because these provisions burden and limit the ability to vote by mail by requiring identification information that members either do not have access to or cannot correctly provide thereby eliminating the option to vote by mail for these members. For some REVUP members, voting by mail is the only way they are able to vote. Plaintiffs' Second Amended Complaint details three examples of REVUP members who have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1. SAC ¶¶ 169–173.

    B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022— see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4**: If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:

    A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;

    B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;

    C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and

    D. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A. REVUP has expended time, money, and resources in combating SB 1's passage. REVUP's members attended public testimony trainings, recruited other testifiers, testified at public hearings of the Texas House and Senate, wrote letters against SB 1, organized email writing campaigns, and attended a rally defending the right to vote.

    Since SB 1 went into effect on December 2, 2021, REVUP has had to devote significant time and resources to educate members and the public to navigate SB 1's new provisions. Starting on approximately November 1, 2021, Bob Kafka, REVUP's coordinator, has had to devote the vast majority of his time to SB 1. In particular, Mr. Kafka and at least five other REVUP volunteers have had to work a significant amount of time on educating REVUP members and the public about SB 1's new requirements and restrictions. For example, REVUP volunteers have had to spend time: creating a podcast regarding changes and barriers in SB 1, updating the REVUP website to reflect the changes of SB 1, creating social media posts about SB 1, answering media inquiries about the impact of SB 1 on voters with disabilities, answering questions from members and the public about the mail-in ballot identification requirements and the restrictions on assistance, referring members to additional legal resources regarding their SB 1 questions, drafting and sending out information about the identification issues and application to vote by mail and ballot rejection, and doing media outreach and PSAs to get out the vote ("GOTV") to combat the

15

barriers created by SB 1. Doing all of this took significant time and took away from the time Mr. Kafka could devote to the organization's mission.

Because of REVUP's reputation as a disability advocacy organization, Mr. Kafka has also devoted significant time to receiving media requests and speaking to the media about the confusion caused by the restrictions and requirements imposed by SB 1. Coordinating these interviews, preparing for them, and participating in them has taken a significant amount of time.

Beyond volunteer time, REVUP's response to SB 1 has also caused it expend financial resources. REVUP has had to expend financial resources on paying its webmaster to update its website and paying for American Sign Language interpreters for its SB 1 podcast and trainings.

B. As a result of SB 1, REVUP has had to significantly scale back its voter registration and GOTV efforts. Rather than focusing on designing and disseminating materials on topics impacting people with disabilities, REVUP has had to focus on designing and disseminating materials regarding challenges with the vote-by-mail process as a result of SB 1 and the assistance provision. REVUP is a nonpartisan organization whose mission it is to register voters with disabilities, to encourage them to get educated on the issues, and to vote. REVUP has had to scale back on these efforts in order to focus on SB 1. Further, the time required to challenge and educate the public about SB 1 has also caused Rev Up to slow down and shrink the planning for a previously planned project called the Texas Disability Issues Forum.

C. Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expenditures Plaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022—see Plaintiffs' Response to Request for Production No. 2.


**INTERROGATORY NO. 5**: If you contend that the passage of SB1 frustrates your mission, for each plaintiff:
  A. Explain how each provision makes your activities more difficult; and
  B. Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory as cumulative and duplicative of Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

  A. The mission of REVUP is to conduct outreach, educate, and disseminate information to

people with disabilities, family members, supporters, professionals, the general public, and policymakers on issues affecting the integration of people with disabilities of all ages into every aspect of community living, including by increasing voter turnout in the disability community and advancing political change. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:
A. Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;
B. Identify the "local election authorities" that used these "precise methods;"
C. Identify how these "precise methods" made "voting easier and more accessible to traditionally marginalized voters;" and
D. Identify all documents that support your contentions.

**RESPONSE**: Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; (2) permitting voters to receive assistance at the polls, particularly for voters with a disability or who are not fluent in English; and (3) permitting assistance with mail-in ballots.
B. The referenced sentence refers to county election officials generally, not any specific county election official.
C. Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that voting by mail, permitting assistance at the polls, and permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.
D. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 7**: If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:
A. Identify the "immaterial burdens" added;

    B.  Explain how these burdens are immaterial; and

    C  Identify all documents that support your contentions.

**RESPONSE**: Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous new requirements for applying to vote by mail, and the types of cure processes provided for in-person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8**: For each plaintiff, identify:

    A.  All accommodations that would be necessary for you or your disabled members to vote in compliance with SB1;

    B.  Any accommodations you or your members requested or intend to request for the March 2022 primary in response to SB1;

    C.  State the facts that support your contentions; and

    D.  Identify all documents that support your contentions.

18

**RESPONSE**: Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of itsmembers. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff' SAC,the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, caseby case reasonable modification requests. Plaintiff reserves the right to supplement or amend thisresponse to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9**: Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the VotingRights Act, the Civil Rights Act, the ADA and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the TexasAttorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, andfrom prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;
3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42
   U.S.C. §12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which the Plaintiff may be entitled.

**INTERROGATORY NO. 10**: If you seek mandatory injunctive relief through this Lawsuit,

19

please identify and describe with specificity, by plaintiff, each omission that you contend each Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

**RESPONSE**: Plaintiff objects to this Interrogatory because it requires Plaintiff to describerelief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented.

**INTERROGATORY NO. 11**: If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County DistrictAttorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

**VERIFICATION FOR RESPONSES TO INTERROGATORIES**

I Bob Kafka verify under penalty of perjury under the laws of the United States of America that the foregoing responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.

Bob Kafka
Name

Coordinator
Title

_Bob Kafka_
Signature

_1/5/22_
Date

*On behalf of REVUP Texas*

**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| OCA-GREATER HOUSTON, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0780-XR |
| | § | |
| JOSE A. ESPARZA, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| HOUSTON JUSTICE, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-0848-XR |
| | § | |
| GREGORY WAYNE ABBOTT, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| LULAC TEXAS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:21-CV-0786-XR |
| | § | |
| JOSE ESPARZA, et al., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| | § | |
| MI FAMILIA VOTA, et al., | § | |
| Plaintiff, | § | |
| | § | |

|  | § | Case No. 5:21-CV-0920-XR |
| v. | § | |
| | § | |
| GREG ABBOTT, et al., | § | |
| Defendants. | § | |

| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:21-CV-01085-XR |
| | § | |
| STATE OF TEXAS, et al., | § | |
| Defendants. | § | |

## PLAINTIFF REVUP TEXAS' THIRD AMENDED OBJECTIONS AND RESPONSES TO STATE DEFENDANTS' FIRST SET OF INTERROGATORIES

TO: Defendants Texas Secretary of State Jane Nelson and Texas Attorney General Ken Paxton ("State Defendants") by and through their attorneys of record, Kathleen T. Hunker and J. Aaron Barnes via e-mail to kathleen.hunker@oag.texas.gov and aaron.barnes@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff REVUP-Texas ("REVUP") hereby serves the following Second Amended Objections and Responses to State Defendants' First Set of Interrogatories.

Dated: March 31, 2023

Respectfully Submitted,

/s/ _Zachary Dolling_

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor

New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
LISA A. SNEAD
Texas State Bar No. 24062204
PETER HOFER
Texas State Bar No. 09777275
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org

lsnead@drtx.org
phofer@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alyssa G. Bernstein*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com

Gregory D. Washington*
**JENNER & BLOCK LLP**
455 Market St. Suite 2100
San Francisco, CA 94105
gwashington@jenner.com

*COUNSEL FOR OCA-GREATER HOUSTON PLAINTIFFS.*
*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2023, a true and correct copy of the foregoing *Plaintiff REVUP-Texas' Third Amended Objections and Responses to State Defendants' First Set of Interrogatories* was served upon counsel of record via email or mail.

*/s/ Zachary Dolling*

**RESERVATION OF RIGHTS**

Plaintiff has responded to these interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiff, therefore, reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiff makes its objections and responses in accordance with its interpretation and understanding of *State Defendants' First Set of Requests for Admission, Requests for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If State Defendants subsequently provide an interpretation of any of its Requests that differs from Plaintiff's understanding of the same, Plaintiff reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation State Defendants may give these Requests.

Plaintiff reserves its right to object on any grounds, at any time, to the admission or use of  any response on any ground. Plaintiff is also willing to meet and confer about any of its objections  or responses.

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Plaintiff's possession, custody, or control; and (iii) that are publicly available or already within State Defendants' possession. Any inadvertent disclosure of privileged or protected information is not intended to  constitute a waiver of any privilege, protection, or immunity, or of any other ground for objecting.  Plaintiff reserves the right to request the return or destruction of any documents that contain any  inadvertent disclosures of privileged or protected information.

2.      Plaintiff objects to these Requests to the extent they are duplicative when propounded to another plaintiff in this Lawsuit, including Plaintiffs outside of the OCA-Greater Houston, et al. Plaintiff group. To the extent that Plaintiff agrees to produce a document that is  responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiff will only produce  such documents once.

3.      Plaintiff objects to the definitions of "Plaintiff," "you," and "your" as overly broad, unduly burdensome, and disproportionate to the needs of this case, to the extent that they define each party as including "any representative acting or purporting to act on its behalf, including but not limited to employees, attorneys, consultants, agents, and any other representative," which includes individuals unknown to Plaintiff. Plaintiff further objects to this definition because the terms "representative" and "agents" are vague and call for legal conclusions. Plaintiff further

objects to this definition to the extent that including "attorneys" calls for the disclosure of information subject to the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine.

4.   Plaintiff objects to the definition of "documents" as overly broad and as expanding the scope of discovery to include materials that are not within Plaintiff's possession, custody, and control, and imposing burdens that are not proportional to the needs of this case.

5.   Plaintiff objects to the definition of "identify" when referring to:

a.   A person, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

b.   An organization, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody and control, and imposes burdens that are not proportional to the needs of this case, such as email addresses and contact information that are not within Plaintiff's possession.

c.   A document, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control and imposes burdens that are not proportional to the needs of this case.

d.   A statement or communication, to the extent that it expands the scope of discovery to include materials and information that are not within

Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons "present" when the statement or communication was "made."

e.  A social media account, to the extent that it expands the scope of discovery to include materials and information that are not within Plaintiff's possession, custody, and control; imposes burdens that are not proportional to the needs of this case; and is vague, such as knowledge of all persons who "have access to" an account.

6.      Plaintiff objects to the definition of "regarding," "relating to," and "pertaining to" as overbroad and unduly burdensome to the extent that these definitions expand the scope of discovery in a manner that is not proportional to the needs of the case.

7.      Plaintiff objects to State Defendants' Requests to the extent that they improperly call for legal conclusions or legal arguments.

8.      Plaintiff objects to State Defendants' Requests to the extent that they contain incorrect or disputed factual assumptions or legal conclusions and do not by virtue of its response, objection, or production of documents admit the underlying assumption or conclusion.

9.      Plaintiff objects to State Defendants' Requests to the extent that they require the production of confidential business, proprietary, or trade secret information, or personal information concerning persons who are not parties to this litigation, to the extent this confidential information would not be covered by the protective order entered in this case.

10.      Plaintiff objects to State Defendants' Requests to the extent that certain ones do not specify a time period. These are overbroad, burdensome, and vague.

11.     Plaintiff objects to State Defendants' Requests, including the Definitions and Instructions contained therein, to the extent they are inconsistent with or seek to impose duties or require performance of acts broader in scope than those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Western District of Texas, and any other applicable rules, law or governing orders.

12.     Plaintiff objects to the Requests to the extent they seek information prohibited from disclosure by law, rules, or protective orders.

13.     These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Plaintiff reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

### PLAINTIFF'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each Texas Election Code provision that Senate Bill 1 amended and that you are challenging by the relevant section number of each Texas Election Code provision.

**RESPONSE:** Plaintiff is challenging the following provisions in the Texas Election Code that were amended by Senate Bill 1 ("SB 1"):[1]

1. SB 1 § 5.02: Amends Tex. Election Code § 84.002
2. SB 1 § 5.03: Amended Tex. Election Code § 84.011(a)
3. SB 1 § 5.06: Amended Tex. Election Code § 84.035
4. SB 1 § 5.07: Amends Tex. Election Code § 86.001
5. SB 1 § 5.08: Amends Tex. Election Code § 86.002
6. SB 1 § 5.10: Amends Tex. Election Code § 86.015(c)

---

[1] In its Second Amended Complaint Plaintiff challenged SB 1 § 6.04 (amending Tex. Election Code § 64.034). The district court, in its order largely denying State Defendants' motion to dismiss Plaintiff's claims, held that a modified injunction in a different case, *OCA-Greater Houston v. Texas*, 1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022), mooted Plaintiff's Section 6.04 claims against State Defendants. *See* Dkt. 448 at 33 & n.18. Plaintiff has amended its interrogatory answers to reflect this.

7.  SB 1 § 5.12: Adds Tex. Election Code § 87.0271
8.  SB 1 § 5.13: Amends Tex. Election Code § 87.041
9.  SB 1 § 5.14: Adds Tex. Election Code § 87.0411
10. SB 1 § 6.06: Amends Tex. Election Code § 86.0105

**INTERROGATORY NO. 2:** If you contend that you have been injured by any of the  Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

    A.  State the facts that support your contention; and
    B.  Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this blockbuster interrogatory because it seeks to require Plaintiff to marshal all its evidence at this stage in the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff interprets this interrogatory as asking only whether Plaintiff as an organization has been injured, since Interrogatory No. 3 asks about Plaintiff's members. Further as noted below, Plaintiff lists specific injuries in its response to Interrogatory No. 4—which Plaintiff hereby incorporates in   response to Interrogatory No. 2. Plaintiff reserves the right to supplement or amend this response   to the extent it discovers additional or conflicting information responsive to this Interrogatory. To   the extent Plaintiff becomes aware of additional information responsive to this Interrogatory,   Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and   without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. In its Second Amended Complaint ("SAC") (Dkt. 200), Plaintiff offers detailed facts supporting its contention that it will be injured by the challenged Texas Election Code provisions. SB 1 takes particular aim at voters with disabilities and voters with limited English proficiency—who, in Texas, are also overwhelmingly voters of color—and the organizations (including Plaintiff here) that represent, assist, and support these voters. Plaintiff promotes civic participation among its constituents and empowers them to vote through voter education and other initiatives. Plaintiff has been and will be forced to alter  its voter education and volunteer training programs in light of the changes made to the  Texas Election Code by SB 1. Namely, it must divert resources toward educating and  helping staff, volunteers, and voters navigate those provisions' new burdensome  restrictions on mail-in voting and voter assistance, and the criminal and civil penalties  associated with those provisions

Before SB 1, to successfully apply to vote by mail, voters were required to fill out a robust application that included identifying information such as name, address, and date of birth. The voters certified that the information given in the application was true and affirmed its understanding that giving false information is a crime. To receive a vote-by-mail application, a voter must also have previously registered to vote, which again required the voter to provide a robust amount of personal information that county voter registrars use to determine the voter's eligibility. SB 1 needlessly added immaterial burdens to the process  of voting by mail. Pursuant to Sections 5.02, 5.03, 5.06, 5.07, 5.08, 5.10, and 5.12 of SB 1, voters must additionally provide the number on either their Texas driver's license, Texas  election

identification certificate, or Texas personal ID card on their mail-in ballot  applications and on the ballot carrier envelopes used to return their ballot. SB 1 provides  that if the voter has not been issued one of these numbers by the State of Texas, the voter  may instead provide the last four digits of its Social Security number. If the voter has not  been issued any of these numbers by the State of Texas or the Social Security  Administration, the voter may sign a statement indicating that they have never been issued  one of these numbers. Since the SAC was filed, county elections offices across the state  have reported high rejection rates of mail-in ballot applications and ballots for the March 2022 primary   and November 2022 general election due to the difficulty for voters to comply with these  new immaterial ID number requirements. Plaintiff has already been injured and will  continue to suffer injury due to these provisions because it has diverted and will continue to divert resources toward educating and helping staff, volunteers, and voters  navigate those provisions' new burdensome restrictions on mail-in voting. Plaintiff will  also need to divert staff to answer questions from voters who do not understand the new  burdensome requirements. Additionally, Plaintiff will need to divert resources to inform  individuals who have a driver's license number or Social Security number but are unable to  access it, that unless they can find that number they will be unable to vote by mail, and  helping individuals to either recall or locate identification numbers. The diversion of  resources required to guide members through complying with and having their mail-in application accepted and  ballot counted pursuant to the burdensome new identification requirements will decrease  the amount of time and resources that Plaintiff can spend conducting educational outreach  to and answering questions from other voters about participating in the voting process and  advancing its other organizational goals. This diversion of resources would not be  necessary in the absence of SB 1. Plaintiff lists additional specific injuries in SAC ¶¶ 119  and its response to Interrogatory No. 4.

Before SB 1, voters had a right to select an assistant of their choice and to have assistance  in all aspects of the voting process, free of encumbrance by state laws that impose restrictions on the selection of those assistants or the specific types of assistance that may  be provided by them. SB 1 Section 6.06 creates a strict liability, state jail felony that criminalizes the provision of assistance by anyone who "solicits, receives, or accepts compensation" for assisting a voter with its mail-in ballot. Plaintiff lists specific injuries in SAC ¶¶ 169 and its response to Interrogatory No. 4.

B.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 3:** If you contend that your members have been injured by any  of the Texas Election Code provisions identified in Interrogatory No. 1, for each plaintiff:

A.  State the facts that support your contention, including the identity of each  injured member upon whom your standing is based; and

B.  Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to

associational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff additionally objects to this interrogatory as overbroad and imposing burdens not proportional to the needs of the case by seeking the identities of and documents relating to all members, rather than only identities and documents relating to members sufficient to support standing. Plaintiff does not maintain membership records that necessarily include information relating to disability or language access, nor does it monitor the election-related volunteer activities of members outside of Plaintiff-organized events. It is also unnecessarily burdensome and invasive to produce the identities of every injured member and every document related to those members without any time limitation. Nor is such individualized proof required to support associational standing. Indeed, requiring Plaintiff to produce proof of every injured member would turn the notion of associational standing on its head. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. REVUP has approximately 500 members, who are primarily individuals with disabilities and are eligible to vote by mail and eligible to receive assistance while voting by mail. Some of REVUP's members also serve as assistants to persons needing assistance to vote due to a disability. REVUP members with disabilities participate in and help guide the direction of the organization's efforts. These members have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1 because these provisions burden and limit people who provide necessary assistance to voters, which in turn will unduly burden REVUP members who cannot vote without such assistance. In addition, REVUP members have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1 because these provisions burden and limit the ability to vote by mail by requiring identification information that members either do not have access to or cannot correctly provide, thereby eliminating the option to vote by mail for these members. For some REVUP members, voting by mail is the only way they are able to vote. Plaintiffs' Second Amended Complaint details three examples of REVUP members who have been or will be injured by the Texas Election Code provisions identified in Interrogatory No 1. SAC ¶¶ 169–173

While the following is not an exhaustive list of injured members, REV-UP contends the following members have been injured by the Texas Election Code provisions identified in Interrogatory No. 1:

Laura Halvorson: Ms. Halvorson voted by mail in March 2022 but was unable to confirm whether her mail-in ballot was accepted using the ballot tracker system until well after the close of voting in March, making it impossible to have cured her ballot if there were an error in her identification number. Ms. Halvorson's disabilities affect her motor control, making it extremely difficult for her to write legibly, raising the possibility her identification number will be entered incorrectly or illegibly. Because Ms. Halvorson's March 2022 ballot was not counted with enough time for her to cure if there had been an error and because Ms. Halvorson was concerned her November 2022 ballot would be rejected due to a discrepancy with her ID number, Ms. Halvorson was left with no option other

than voting in person to ensure her ballot was counted in the November 2022 election. Ms. Halvorson's respiratory and mobility disabilities make voting in public dangerous, difficult, and time-consuming for her, yet this is the only way she can confirm her ballot was counted in November and will be counted in the future in light of the changes made by SB1 to mail-in voting. Ms. Halvorson remains afraid that her disabilities will again require her to vote by mail in the future and that her ballot will not be counted as a result of an ID-related rejection that Ms. Halvorson will not have the opportunity to cure.

Teri Saltzman: Ms. Saltzman is legally blind. In March 2022, she was notified by the Travis County Clerk that her ballot was rejected. She attempted to identify the error and cure her ballot, but was unable to complete the cure process online as this process was inaccessible to her even with her assistive devices. She still does not know whether her March 2022 ballot was counted. In November 2022, her ballot was even less accessible to her than the March ballot, with font so small that it was unreadable with her optic device that magnifies text for her. After filling in and submitting her ballot the best she could, she was again notified that her ballot was rejected in November 2022 and was again unable to cure her ballot using the online process as it was inaccessible to her. Ms. Saltzman prefers to vote by mail as she does not drive and arranging transportation to a polling place can be difficult if not impossible. Casting her ballot in private when she votes in person is essentially impossible as the various accommodations available to her either make her choice so large on the screen that it can be seen by anyone standing behind her or requires her to say her choice aloud for an assistor to mark. Ms. Saltzman had regularly voted by mail in Texas without issue before the changes instituted by SB1.

Ann and Taylor Scott: Taylor Scott is a person with Cerebral Palsy (CP) who is blind in one eye and uses a power wheelchair to ambulate. Miss Scott's disabilities also impact her communication such that people unfamiliar with her speech may not understand her. Her mother, Ann, is her assistor. In November 2022, Miss Scott applied to vote by mail, with her mother completing her application at her direction. Miss Scott's state-issued identification had expired during the Covid-19 pandemic and she was unable to renew it; however, she and Mrs. Scott believe the last four numbers of her social security number were entered on her application. Miss Scott never received a letter notifying her whether her application to vote by mail was rejected and therefore never had the opportunity to cure her application. On information and belief, Miss Scott's application to vote by mail was rejected for an ID-related reason. When a ballot did not arrive for Miss Scott, Mrs. Scott took Miss Scott to vote in person, a process requiring significant time and difficulty. Miss Scott successfully voted by mail in the November 2020 Presidential Election. As a result of the changes brought by SB1 and Miss Scott's mail-in ballot application rejection in November 2022, Miss Scott and Mrs. Scott must plan for Miss Scott to vote in person now, though doing so is substantially more difficult than voting by mail was for her before SB1.

Yvonne Iglesias: Ms. Iglesias is person who is paralyzed, experiences consistent muscle spasms, and is blind in one eye. She has voted by mail in most elections since 2006. Ms. Iglesias completed her application to vote by mail and then called the election office well before the election to confirm her application was received. She was informed for the first time when she called that her application had been rejected for an ID-related reason. The election official directed her which number to write on her application, which Ms. Iglesias

resubmitted. After submitting her application, she again reached out to the elections office several days before the election to confirm her second application was received and accepted. She was again informed that it was rejected for an ID-related reason and also because it had arrived too late. Ms. Iglesias is not able to travel on short-notice, as her disabilities require significant coordination to arrange appropriate, accessible transportation, thus she was not able to vote in the November 2022 election. Because of her disabilities, voting by mail remains the only form of voting that is physically accessible to her, though she no longer has confidence she will be able to vote in the future as a result of the changes brought about by SB1.

B. Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022, and February 7, 2023— see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 4:** If you contend that you have to divert time, money, and resources from other activities because of the passage of Senate Bill 1, for each plaintiff:

A. Identify the time, money, and resources that you have diverted or anticipate diverting in response to SB1;
B. Identify all specific projects that you had or will have to put on hold or otherwise curtail in response to SB1;
C. State the facts that support your contention that you have and will divert time, money, and resources in response to Senate Bill 1, including an explanation of how the projects and expenditures identified in Interrogatories Nos. 3.A and 3.B differ from your routine activities; and
D. Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this blockbuster interrogatory as broad and unduly burdensome because it demands that Plaintiff marshal all of its evidence with regard to organizational standing at this stage of the litigation. Plaintiff will produce all witnesses and documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence. Plaintiff objects to this interrogatory as vague and undefined as to "other activities" and what qualifies as "in response to SB 1." Plaintiff further objects to this interrogatory to the extent it seeks to impose injury requirements not required by law, such as the cancellation of specific projects. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. Plaintiff also objects that Interrogatory 4.C requests information about projects and expenditures identified in Interrogatories 3.A and 3.B, but Interrogatories 3.A and 3.B do not ask about projects or expenditures. Plaintiff further objects that Interrogatory 4.C requests information that is duplicative of Interrogatories 4.A and 4.B. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A. REVUP has expended time, money, and resources in combating SB 1's passage. REVUP's members attended public testimony trainings, recruited other testifiers, testified at public hearings of the Texas House and Senate, wrote letters against SB 1, organized email writing

13

campaigns, and attended a rally defending the right to vote.

Since SB 1 went into effect on December 2, 2021, REVUP has had to devote significant time and resources to educate members and the public to navigate SB 1's new provisions. Starting on approximately November 1, 2021 and extending through the March 2022 primaries, Bob Kafka, REVUP's coordinator, had to devote the vast majority of his time to SB 1. Since March 2022, though Mr. Kafka has been able to devote time to other projects, SB1 has continued to require his time. In particular, Mr. Kafka and at least five other REVUP volunteers have had to work a significant amount of time on educating REVUP members and the public about SB 1's new requirements and restrictions. For example, REVUP volunteers have had to spend time: creating a podcast regarding changes and barriers in SB 1, updating the REVUP website to reflect the changes of SB 1, creating social media posts about SB 1, answering media inquiries about the impact of SB 1 on voters with disabilities, answering questions from members and the public about the mail-in ballot identification requirements and the restrictions on assistance, referring members to additional legal resources regarding their SB 1 questions, drafting and sending out information about the identification issues and application to vote by mail and ballot rejection, and doing media outreach and PSAs to get out the vote ("GOTV") to combat the barriers created by SB 1. Doing all of this took significant time and took away from the time Mr. Kafka could devote to the organization's mission.

Because of REVUP's reputation as a disability advocacy organization, Mr. Kafka has also devoted significant time to receiving media requests and speaking to the media about the confusion caused by the restrictions and requirements imposed by SB 1. Coordinating these interviews, preparing for them, and participating in them has taken a significant amount of time.

Beyond volunteer time, REVUP's response to SB 1 has also caused it to expend financial resources. REVUP has had to expend financial resources on paying its webmaster to update its website and paying for American Sign Language interpreters for its SB 1 podcast and trainings.

REV-UP continues to receive calls from voters with questions about ballot by mail ID requirements and devotes its limited time and resources to answering these calls, particularly Mr. Kafka's time. REV-UP also continues to devote time during meetings and trainings to provide education and answer questions regarding vote by mail ID-requirements. Because these meetings and trainings are limited in time, these discussions necessarily take time away from discussing other topics central to REV-UP's mission.

B. As a result of SB 1, REVUP has had to significantly scale back its voter registration and GOTV efforts. Rather than focusing on designing and disseminating materials on topics impacting people with disabilities, REVUP has had to focus on designing and disseminating materials regarding challenges with the vote-by-mail process as a result of SB 1 and the assistance provision. REVUP is a nonpartisan organization whose mission it is to register voters with disabilities, to encourage them to get educated on the issues, and to vote. REVUP has had to scale back on these efforts in order to focus on SB 1. Further, the time required to challenge and educate the public about SB 1 also caused REVUP to slow down

and shrink the planning for a previously planned project called the Texas Disability Issues Forum.

>   In advance of the 2023 local elections REV-UP is ramping back up voter registrations and GOTV efforts; however, these registration and GOTV efforts include significant time spent providing information and discussions about vote by mail ID requirements that REV-UP members previously did not have to spend. SB 1 has thus continued to hamper the scale of REV-UP's voter registration and GOTV efforts.

C.  Plaintiff's Response to Interrogatories 4.A and 4.B identify the projects and expenditures Plaintiff must undertake in response to SB 1 that differ from its normal activities and those responses are incorporated herein.

D.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022, and February 7, 2023— see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 5:** If you contend that the passage of SB1 frustrates your mission, for each plaintiff:
>   A.  Explain how each provision makes your activities more difficult; and
>   B.  Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this interrogatory as cumulative and duplicative of Interrogatory No. 4. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules. Accordingly, subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

A.  The mission of REVUP is to conduct outreach, educate, and disseminate information to people with disabilities, family members, supporters, professionals, the general public, and policymakers on issues affecting the integration of people with disabilities of all ages into every aspect of community living, including by increasing voter turnout in the disability community and advancing political change. Plaintiff lists ways in which SB 1 has made carrying out its mission more difficult in its responses to Interrogatories No. 2, 3, and 4.

B.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production No. 2.

**INTERROGATORY NO. 6**: If you contend that SB1 targets "many of the precise methods that local election authorities and community groups used to make voting easier and more accessible to traditionally marginalized voters," as described in ECF 200 ¶ 2, for each plaintiff:
>   A.  Identify the "precise methods" that "local election authorities" used to make voting easier and more accessible;

    B.  Identify the "local election authorities" that used these "precise methods;"

    C.  Identify how these "precise methods" made "voting easier and more accessible to  traditionally marginalized voters;" and

    D.  Identify all documents that support your contentions.

**RESPONSE:** Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds as follows:

    A.  The "precise methods" used by "local election authorities" that make voting easier and more accessible that are at issue in this suit are: (1) voting by mail, particularly for the elderly and people with disabilities; and (2) permitting assistance with mail-in ballots.

    B.  The referenced sentence refers to county election officials generally, not any specific county election official.

    C.  Subject to and without waiver of its objections, Plaintiff points to SAC ¶ 4, which refers to voters with disabilities, voters with limited English proficiency, and voters of color. In Plaintiff's experience assisting voters and monitoring elections, these voters are traditionally marginalized in Texas. Plaintiff believes that voting by mail and permitting assistance with mail-in ballots makes it easier for voters with disabilities, voters with limited English proficiency, and voters of color to vote.

    D.  Subject to the foregoing objections and those indicated in the Response to Requests for Production, Plaintiff produced documents responsive to this request on April 5, 2022, and February 7, 2023—see Plaintiffs' Response to Request for Production  No. 2.

**INTERROGATORY NO. 7:** If you contend that SB1 "adds immaterial burdens to the process of applying to and actually voting by mail," as described in ECF 200 ¶ 99, for each plaintiff:

    A.  Identify the "immaterial burdens" added;

    B.  Explain how these burdens are immaterial; and

    C.  Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this interrogatory on the ground that it calls for a legal conclusion as to materiality. Subject to and without waiver of the foregoing specific and general objections, Plaintiff responds by pointing to SAC ¶¶ 99–111, which describe what types of  identification that are acceptable for voting in person yet are not acceptable to meet SB 1's onerous

new requirements for applying to vote by mail, and the types of cure processes provided for in-  person voting that are not provided for applying to vote by mail.

**INTERROGATORY NO. 8:** For each plaintiff, identify:

    A.  All accommodations that would be necessary for you or your disabled members to  vote in compliance with SB1;

    B.  Any accommodations you or your members requested or intend to request

for the March 2022 primary in response to SB1;

   C. State the facts that support your contentions; and

   D. Identify all documents that support your contentions.

**RESPONSE:** Plaintiff objects to this interrogatory as vague and undefined as to "accommodations" and what qualifies as "in response to SB 1." Plaintiff objects to this interrogatory as overly broad and premature because it seeks to require Plaintiff to marshal all of its evidence at this stage of the litigation for a large and diverse group of people with disabilities with varying modification needs, and Plaintiff—though it has numerous members with disabilities—does not specifically track the disability status and necessary accommodations of its members. Plaintiff further objects to the request for information about all disabled members as overbroad and not proportional to the needs of the case. Moreover, as described in Plaintiff's SAC, the SB 1 provisions challenged by Plaintiff inflict systemic harm on large groups of people with disabilities and impose a chilling effect deterring those who seek to assist individuals in voting, including Plaintiff and its members. These are not harms that can be remedied by individual, case- by-case reasonable modification requests. Plaintiff reserves the right to supplement or amend this response to the extent it discovers additional or conflicting information responsive to this Interrogatory. To the extent Plaintiff becomes aware of additional information responsive to this Interrogatory, Plaintiff will supplement its response in accordance with the Rules.

**INTERROGATORY NO. 9:** Please identify and describe with specificity each form of affirmative relief which you seek from each defendant through this Lawsuit.

**RESPONSE:** Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks:

1. Declaratory judgment that the State of Texas's statutory scheme as described with specificity in the operative pleading violates the United States Constitution, the Voting Rights Act, the Civil Rights Act, the ADA, and Section 504;
2. Permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions, if any;
3. Attorneys' fees to Plaintiff in accordance with 42 U.S.C. § 1988, 29 U.S.C. § 794a, 42 U.S.C. § 12205, and/or any other applicable provision;
4. Order that all costs of this action be taxed against Defendants; and
5. Grant any additional or alternative relief to which Plaintiff may be entitled.

**INTERROGATORY NO. 10:** If you seek mandatory injunctive relief through this Lawsuit, please identify and describe with specificity, by plaintiff, each omission that you contend

each Defendant should be enjoined to perform to resolve each claim you have alleged against the Defendant in this Lawsuit.

**RESPONSE:** Plaintiff objects to this Interrogatory because it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Subject to and without waiver of the foregoing objection, Plaintiff responds as follows:

Plaintiff seeks mandatory injunctive relief against the Texas Secretary of State requiring it to (a) issue guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required; (b) issue guidance that lack of an ID number or an ID-number mismatch on an application to vote by mail or a ballot is not grounds for rejecting the application or ballot; (c) prescribe the design and content of the forms necessary for elections that no longer contain the mail-in ballot ID provisions; (d) prescribe the design and content of the application to vote by mail and mail-in envelope that no longer contain the ID provisions; and/or (e) issue guidance to all county election administrators or equivalent county officials that waiving the ID requirements is a reasonable accommodation that may be granted for persons with disabilities. Plaintiff additionally seeks mandatory injunctive relief requiring the Texas Secretary of State to widely publicize any such guidance or changes in the operation of the law.

Plaintiff likewise seeks mandatory injunctive relief against the Travis County Clerk and the Harris County Elections Administrator requiring them to (a) use forms for mail-in applications and ballots that do not request ID numbers; (b) follow the Texas Secretary of State's guidance that SB 1's ID provisions for mail-in applications and ballots are no longer required and that lack of ID number or mismatch of ID number are not grounds to reject an application to vote by mail or ballot by mail; (d) widely publicize that the ID requirements for mail-in applications and ballots are no longer valid; and/or (e) grant requests to waive the ID requirements as a reasonable accommodation for persons with disabilities.

**INTERROGATORY NO. 11:** If you seek prohibitive injunctive relief through this Lawsuit, please identify and describe with specificity each action that you contend each Defendant should be enjoined from performing to resolve.

**RESPONSE:** Plaintiff objects to this Interrogatory to the extent it requires Plaintiff to describe relief that may be necessary to address or prevent injuries from SB 1 that Plaintiff may uncover through additional investigation and discovery or may occur as SB 1 is implemented. Plaintiff also objects to this Interrogatory as duplicative of Interrogatory No. 9. Subject to and without waiver of the foregoing objections, Plaintiff responds as follows:

Plaintiff seeks a permanent injunction against the State of Texas, the Texas Secretary of State, the Texas Attorney General, the Harris County District Attorney, the Travis County District Attorney, and other appropriate county agencies administering elections from enforcing the specific provisions of the Texas Election Code as amended by SB 1, and from prosecuting any individual pursuant to the criminal offenses defined in these provisions.

DocuSign Envelope ID: 57AA57F0-EE04-4EA6-911D-75C1EB63C71B

**VERIFICATION FOR RESPONSES TO INTERROGATORIES**

I, Bob Kafka, verify under penalty of perjury under the laws of the United States of America that the foregoing third amended responses to State Defendants' First Set of Interrogatories are true and correct, to the best of my knowledge.


Bob Kafka
Name

Coordinator
Title

Signature

March 31, 2023 | 4:25 PM CDT
Date

*On behalf of REV-UP Texas*

# Exhibit 12

# Voter Registration and Absentee Ballot Request

Federal Post Card Application (FPCA)

Print clearly in blue or black ink, please see back for instructions.

**This form is for absent Uniformed Service members, their families, and citizens residing outside the United States. It is used to register to vote, request an absentee ballot, and update your contact information. See your state's guidelines at FVAP.gov.**

## 1. Who are you? Pick one.

I request an absentee ballot for all elections in which I am eligible to vote AND:

☐ I am on active duty in the Uniformed Services or Merchant Marine **-OR-** ☐ I am an eligible spouse or dependent.
☐ I am a U.S. citizen living outside the country, and I intend to return.
☐ I am a U.S. citizen living outside the country, and my intent to return is uncertain.
☐ I am a U.S. citizen living outside the country, I have never lived in the United States.

☐ Mr. ☐ Miss
☐ Mrs. ☐ Ms.

| Last name | | Suffix (Jr., II) | |
| First name | | Previous names (if applicable) | |
| Middle name | | Birth date (MM/DD/YYYY) | |
| Social Security Number | | Driver's license or State ID# | |

## 2. What is your address in the U.S. state or territory where you are registering to vote and requesting an absentee ballot?

Your voting materials will not be sent to this address. See instructions on the other side of form.

| Street address | | Apt # | |
| City, town, village | | State | |
| County | | ZIP | |

## 3. Where are you now? You MUST give your CURRENT address to receive your voting materials.

Your mailing address. (Different from above)

Your mail forwarding address. (If different from mailing address)

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

Email: _____ Phone: _____
Alternate email: _____ Fax: _____

## 5. What are your preferences for upcoming elections?

A. How do you want to receive voting materials from your election office? (Select One)
☐ Mail
☐ Email or online
☐ Fax

B. What is your political party for primary elections?

## 6. What additional information must you provide?

Puerto Rico and Vermont require more information, see back for instructions. *Additional state guidelines* may be found at FVAP.gov. You may also use this space to clarify your voter information.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**

■ The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
■ I am a U.S. citizen, at least 18 years of age (or will be by the day of the election), eligible to vote in the requested jurisdiction, and
■ I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
■ I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.

**Sign here** X _____ **Today's date** (MM/DD/YYYY)

# You can vote wherever you are.

## 1. Fill out your form completely and accurately.

- Your U.S. address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your state of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address. DO NOT write a PO Box # in section 2.

- Most states allow you to provide a Driver's License number or the last 4 digits of your SSN. New Mexico, Tennessee, and Virginia require a full SSN.

- If you cannot receive mail at your current mailing address, please specify a mail forwarding address.

- Many states require you to specify a political party to vote in primary elections. This information may be used to register you with a party.

- **Section 6 Requirements:** If your voting residence is Vermont, you must acknowledge the following by writing in section 6: "I swear or affirm that I have taken the Vermont Voter's Oath." If your voting residence is in Puerto Rico, you must list your mother's and father's first name.

- We recommend that you complete and submit this form every year while you are an absentee voter.

## 2. Remember to sign this form!

## 3. Return this form to your election official. You can find their contact information at FVAP.gov.

- Remove the adhesive liner from the top and sides. Fold and seal tightly. If you printed the form, fold it and seal it in an envelope.

- All states accept this form by mail and many states accept this form by email and fax. See your state's guidelines at FVAP.gov.

## Agency Disclosure Statement

The public reporting burden for this collection of information, OMB Control Number 0704-0503, is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or burden reduction suggestions to the Department of Defense, Washington Headquarters Services, at whs.mc-alex.esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. DO NOT SUBMIT YOUR FORM TO THE E-MAIL ADDRESS ABOVE.

## Privacy Advisory

**When completed, this form contains personally identifiable information and is protected by the Privacy Act of 1974, as amended.**

**Questions?**
**Email: vote@fvap.gov**

---



(Fill in the address of your election office. The address can be found online at FVAP.gov.)

**To**

NO POSTAGE NECESSARY IN THE U.S. MAIL - DMM 703.8.0

OFFICIAL ABSENTEE BALLOTING MATERIAL – FIRST CLASS MAIL

International airmail postage is required if not mailed using the U.S. Postal Service, APO/FPO/DPO system, or diplomatic pouch.



PAR AVION

U.S. Postage Paid
39 USC 3406

(Your name and mailing address)
**From**

# Exhibit 13

Transcript of the Testimony of

# Pamiel Gaskin

## Date:

June 29, 2022

## Case:

LA UNION DEL PUEBLO ENTERO vs GREGORY W. ABBOTT

```
 1              IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3

 4      LA UNIÓN DEL PUEBLO      )
        ENTERO, et al.,          )
 5                               )   Case No.
           Plaintiffs,           )   5:21-cv-844-XR
 6                               )
        VS.                      )   (Consolidated for
 7                               )   space)
        GREGORY W. ABBOTT,       )
 8      et al.,                  )
           Defendants.           )
 9

10

11

12   _ _ _ _ _ _ _ _ _

13            DEPOSITION OF PAMIEL J. GASKIN
                 June 29, 2022, 9:25 a.m.
14
         Location:  U.S. Department of Justice
15          1000 Louisiana Street, Suite 2300
                    Houston, Texas
16
              Volume 1 of 1 - Pages 1 - 127
17                                _ _ _ _ _ _ _ _ _ _

18

19

20

21

22

23   Stenographic Reporter:
     DENYCE M. SANDERS, TX CSR, RDR, CRR, CCR (LA)
24   dsanderscsr@gmail.com

25   JOB NO. 845774
```

```
 1              A P P E A R A N C E S

 2


 3   ON BEHALF OF OCA—GREATER HOUSTON:

 4    ACLU TEXAS
      P.O. Box 8306
 5    Houston, Texas   77288
      512.983.0775
 6    aharris@aclutx.org

 7    Represented by: Ms. Ashley Harris

 8    ***
     ON BEHALF OF TEXAS CIVIL RIGHTS PROJECT ON BEHALF OF
 9   PAMIEL GASKIN:

10    TEXAS CIVIL RIGHTS PROJECT
      1405 Montopolis Drive
11    Austin, Texas   78741
      512.474.5073
12    zachary@texascivilrightsproject.org

13    Represented by: Mr. Zachary Dolling

14    ***
     ON BEHALF OF STATE DEFENDANTS:
15
      OFFICE OF THE ATTORNEY GENERAL
16    SPECIAL LITIGATION UNIT
      P.O. Box 12548, Capitol Station
17    Austin, Texas   78711
      512.936.2567
18    jack.disorbo@oag.state.tx.us

19    Represented by: Mr. Jack DiSorbo
                       Mr. Zachary Berg
20
      ***
21   ON BEHALF OF YSABEL RAMON:

22    HIDALGO COUNTY DISTRICT ATTORNEY'S OFFICE
      100 E. Cano, Courthouse Annex III, 1st Floor
23    Edinburg, Texas   78359
      956.292.7609
24    leigh.tognetti@da.co.hidalgo.tx.us

25    Represented by: Ms. Leigh Tognetti — via Zoom
```

Pamiel Gaskin                                              June 29, 2022
                                                                 Page 3

```
 1   ON BEHALF OF UNITED STATES OF AMERICA:

 2    DEPARTMENT OF JUSTICE
      Civil Rights Division, Voting Section
 3    Washington, DC  20530
      202.353.5373
 4    dana.paikowsky@usdoj.gov

 5    Represented by: Ms. Dana Paikowsky

 6   ***

 7   ON BEHALF OF HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE:

 8    BUTLER SNOW LLP
      1400 Lavaca Street, Suite 1000
 9    Austin, Texas  78701
      737.802.1800
10    victoria.giese@butlersnow.com

11    Represented by: Ms. Victoria A. Giese - via Zoom

12
      ON BEHALF OR INTERVENOR DEFENDANTS:
13
      JONES DAY
14    51 Louisiana Avenue, NW
      Washington, DC  20001
15    202.879.3667
      skenny@jonesday.com
16
      Represented by:  Stephen Kenny - via Zoom
17

18   ALSO PRESENT VIA ZOOM:

19   Kenny Buser-Clancy

20   Tiffany Bingham - Harris County

21   Savannah Kumar

22   Barbara Nicholas - Scarpello & Creuzot

23

24

25
```

Pamiel Gaskin

June 29, 2022
Page 4

```
 1                      INDEX

 2                ORAL DEPOSITION OF

 3           PAMIEL J. GASKIN, JUNE 29, 2022

 4                                      Page

 5  BY MR. DiSORBO.........................   6

 6

 7   Start time - 9:25 a.m. End time - 12:18 p.m.

 8   Total pages: 127

 9

10

11  REPORTER CERTIFICATION...................  127

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Pamiel Gaskin                                              June 29, 2022
                                                           Page 5

```
1                        EXHIBIT INDEX

2                     ORAL DEPOSITION OF

3                PAMIEL J. GASKIN, JUNE 29, 2022

4                      Description                    Page

5   ***Introduced ONLY
    Exhibit C          How Texas officials and ...... 105
6                      voting groups are trying to
                       limit mail ballot rejections
7
    Exhibit E          Gaskin Twitter profile........ 115
8
    Exhibit F          Gaskin interview picture...... 118
9

10                •_____•

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    school.  He called me.  He said, "For your birthday,
 2    I'm going to come get you.  Give me your schedule,
 3    your class schedule, and I'm going to come get you
 4    and get you registered to vote."
 5                    So I told him what my class schedule
 6    was.  He showed up on a Thursday afternoon, about 1
 7    o'clock.  Drove me back to Galveston County.
 8                    That morning -- next morning took me
 9    to register to vote, and drove me back to Austin
10    that afternoon so I could go to my 1 o'clock class.
11         Q.    That's great.
12                    Do you remember what class it was?
13         A.    No.  No.  No.  I'm 75.  That was -- I
14    was 21 then.
15         Q.    Sometimes when you've got great stories
16    like that, you remember random details, that sort of
17    thing.
18         A.    That's not a detail I remember.
19         Q.    Well, that's a long drive from Austin to
20    Galveston.
21         A.    Yeah.
22         Q.    Now, you said that you voted in the
23    March 2022 primary; correct?
24         A.    I did.
25         Q.    Okay.  Now, I understand you had some
```

1    wanted to see if the system for surrendering would

2    work; is that right?

3           A.     Yes.

4           Q.     Okay.  So when you voted absentee in the

5    2022 primaries, was that your first time voting by

6    that method?

7           A.     No.

8           Q.     When had you done that before?

9           A.     I started voting absentee when I turned

10   65.

11          Q.     Okay.  And you've done that since then?

12          A.     Yes.

13          Q.     Okay.

14          A.     Mostly.

15          Q.     Mostly.  Maybe some voting in person

16   here and there?

17          A.     Yeah.

18          Q.     Before you turned 65, how did you

19   typically vote?

20          A.     In person.

21          Q.     In person.

22                 Typically early voting --

23          A.     Early --

24          Q.     -- or election day?

25          A.     -- early voting.

```
1                    REPORTER CERTIFICATION

2    THE STATE OF TEXAS :
     COUNTY  OF  HARRIS :
3
             I, DENYCE SANDERS, a Certified Shorthand
4    Reporter and Notary Public in and for the State of
     Texas, do hereby certify that the facts as stated by
5    me in the caption hereto are true; that the above and
     foregoing answers of the witness, PAMIEL J. GASKIN, to
6    the interrogatories as indicated were made before me
     by the said witness after being first duly sworn to
7    testify the truth, and same were reduced to
     typewriting under my direction; that the above and
8    foregoing deposition as set forth in typewriting is a
     full, true, and correct transcript of the proceedings
9    had at the time of taking of said deposition.

10           I further certify that I am not, in any
     capacity, a regular employee of the party in whose
11   behalf this deposition is taken, nor in the regular
     employ of his attorney; and I certify that I am not
12   interested in the cause, nor of kin or counsel to
     either of the parties;
13
             That the amount of time used by each party at
14   the deposition is as follows:

15
             MR. DiSORBO - 02:45:34
16
             GIVEN UNDER MY HAND AND SEAL OF OFFICE, on
17   this, the 1st day of July, 2022.

18

19   _____
     DENYCE SANDERS, CSR, RDR, CRR, TCRR
20   Notary Public in and for
     Harris County, T E X A S
21
     My Commission Expires:  4-14-25
22   Certification No.:  4038
     Expiration Date:  4-30-24
23   Magna Legal Services
     1635 Market Street, 8th Floor
24   Philadelphia, PA 19103
     215.207.9460
25   JOB NO. 845774
```