IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § § | |
| Defendants. | § | |

**DEFENDANT HARRIS COUNTY DISTRICT ATTORNEY
KIM OGG'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Harris County District Attorney Kim Ogg, in her official capacity ("District Attorney Ogg"), files this reply to the responses (Dkts. 638, 642, 643) filed by various of the Plaintiffs in the consolidated cases to District Attorney Ogg's pending motion for summary judgment (Dkt. 621).

Plaintiffs' "consolidated" responses on summary judgment motions filed in the case demonstrate what District Attorney Ogg has asserted since she was added to these cases in mid-stream: there is no proper basis to include her in the litigation. Plaintiffs cannot overcome the core obstacle of sovereign immunity to naming District Attorney Ogg as a defendant to their challenges to the constitutionality of the nine or so provisions of Texas criminal law.[1] In addition to preserving her position on sovereign immunity, she challenged Plaintiffs' standing to bring those constitutional claims. Finally, once District Attorney Ogg filed her summary judgment motion, she also put Plaintiffs to the test on their kitchen-sink Voting Rights Act, Rehabilitation

---

[1]*See infra*, Part III.

Act, and Americans with Disabilities Act claims.  In the face of that motion, Plaintiffs were required to meet *their burden* to show that they could prove at trial (1) Article III standing to make those statutory claims against her and (2) even if they had Article III standing, actually *proving* (as opposed to generically pleading) that she did anything to violate any of those statutes.

Plaintiffs wholly failed to meet their summary judgment burdens, and as a result, the Court can and should dismiss all claims against District Attorney Ogg.

For reasons explained in Section III below, District Attorney Ogg begins this reply on the failure of Plaintiffs to establish standing to bring any of their statutory claims against her under the over-arching principle that a plaintiff must establish standing on her, his, or its behalf to bring suit against each defendant she, he, or it sues.

## I.    Plaintiffs have not met their summary judgment burden to establish standing to sue District Attorney Ogg for any of their claimed statutory violations.

### A.    The individual plaintiffs fail to demonstrate any injury that is fairly traceable to District Attorney Ogg.

Plaintiffs—in total, a group comprised mostly of advocacy organizations with a few individuals added—principally discuss efforts to establish organizational standing rather than standing by individuals.  There is a good reason for this.  Of the four plaintiffs who purport to have claims against District Attorney Ogg—Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons—only two (Marla and Marlon López) vote in Harris County.  None of these individual plaintiffs has adduced evidence demonstrating the traditional standing requirements.

To raise a pre-enforcement challenge, a plaintiff must face an "imminent," "certainly impending" threat of injury traceable to District Attorney Ogg.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiffs' response to District Attorney Ogg's summary judgment motion presents no evidence that Marla López or Marlon López (the Harris County voters), much less Paul Rutledge or Jeffrey Lamar Clemmons, faces an imminent, certainly impending risk of

enforcement from District Attorney Ogg.  Plaintiff Paul Rutledge is a resident of Montgomery County, and Plaintiff Jeffrey Clemmons is a resident of Travis County, so they do not even purport to have claims traceable to the Harris County District Attorney Kim Ogg.  Dkt. 199 at ¶¶ 69–70.

The only individual plaintiffs with ties to Harris County are Marla López and Marlon López.  These plaintiffs are described in their complaint as having concerns about the times and methods available for voting given their work and personal obligations, and there are no allegations—much less summary judgment evidence to raise a genuine issue for trial—that they have engaged in any conduct that implicates any of the challenged criminal provisions of S.B. 1. Dkt. 199 at ¶¶ 67–68.  Plaintiffs' response does not even attempt to demonstrate any evidence of specific, cognizable injuries to Marla López or Marlon López that is traceable to District Attorney Ogg.  Without any evidence that Marla López or Marlon Lopez face actual, threatened, or imminent prosecution by District Attorney Ogg of any of the challenged S.B. 1 provisions against them, they have not met their burden to prove standing.

Standing "is not dispensed in gross" and must be analyzed plaintiff-by-plaintiff, claim-by-claim, defendant-by-defendant.  *In re Gee*, 941 F.3d 153, 161 (5th Cir. 2019) (per curiam). Plaintiffs' efforts to obscure the individualized analysis that is required, by filing "consolidated" responses, are unavailing.  When the layers of the onion are peeled away, there are no claims by individual Plaintiffs that can survive the type of standing analysis required by the United States Supreme Court and United States Court of Appeals for the Fifth Circuit.

**B.      The organizational plaintiffs have not proffered any evidence of a judicially cognizable, non-speculative injury to themselves or their members that is traceable to District Attorney Ogg.**

Plaintiffs argue that the organizational plaintiffs have suffered an alleged "diversion of resources" injury due to the "redirection of their scarce resources toward educating their

constituents about how to avoid violating the Criminal Provisions."  *E.g.*, Dkt. 638 at 24.[2]  Such costs voluntarily taken in anticipation of the potential future prosecution of *others*—when there is no evidence that anyone has been or is likely to be prosecuted—are not judicially cognizable under the Supreme Court's recent decision in *United States v. Texas*, No. 22-58, 2023 WL 4139000 (June 23, 2023), and *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973).

*Linda R.S.* explained that the "Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."  410 U.S. at 619.  "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Id.*; *see also, e.g.*, *Bailey v. Patterson*, 369 U.S. 31, 32 (1962) ("Appellants lack standing to enjoin criminal prosecutions under Mississippi's breach-of-peace statutes, since they do not allege that they have been prosecuted or threatened with prosecution under them."); *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021) ("Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution.").  *United States v. Texas* reaffirmed that this "Article III standing principle remains the law today."  2023 WL 4139000, at *4.

Under these cases, Plaintiffs' concession that their theory of standing "rests not on an impending prosecution, but on the burden on their respective organizations," Dkt. 638 at 22, is fatal to their claims against District Attorney Ogg.  Plaintiffs must make that concession because there is no evidence in the record that District Attorney Ogg has prosecuted a single person under any of the challenged criminal provisions of S.B. 1 or that anyone in her jurisdiction of Harris

---

[2]Pincites are to ECF pagination, not internal pagination, except when citing a paragraph (¶).

County faces a likelihood of prosecution under any of the challenged criminal provisions. When "the Executive Branch elects *not* to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property, and thus does not infringe upon interests that courts . . . are called upon to protect." *United States v. Texas*, 2023 WL 413900, at *5. Plaintiffs have failed to "produce evidence of an intention to engage in a course of conduct . . . prescribed by statute." *Zimmerman v. City of Austin*, 881 F.3d 378, 388 (5th Cir. 2018) (quoting *Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011)). Accordingly, the claims against District Attorney Ogg must be dismissed for lack of standing under *United States v. Texas*.

Plaintiffs have also failed to link their alleged diversions of resources to any specific actions of District Attorney Ogg taken with respect to the challenged criminal provisions of S.B. 1. The Fifth Circuit recently reaffirmed that to have standing, "Plaintiffs must assert 'an injury that is the result of a statute's actual or threatened *enforcement.*'" *A & R Eng'g & Testing, Inc. v. Scott*, --- F.4th ----, 2023 WL 4417252, at *3 (5th Cir. July 10, 2023) (citing *California v. Texas*, 141 S. Ct. 2104, 2114 (2021)). When the defendant "hasn't taken any action to suggest he *might* enforce the provision," the standing requirement of traceability cannot be met. *Id.*

In *Texas State LULAC v. Elfant*, plaintiffs challenged S.B. 1111, which was passed during the 87th Texas Legislature along with the provisions of law in S.B. 1 challenged in this case. 52 F.4th 248 (5th Cir. 2022). The *Texas State LULAC* plaintiffs were organizations alleging a diversion of resources, much like the plaintiffs in this case, but the *Texas State LULAC* plaintiffs could not identify exactly which provisions of law, being enforced by which defendant, caused them to divert which resources. *Id.* at 254. The Fifth Circuit held that the *Texas State LULAC* plaintiffs' generalized assertions that they expended resources after the passage of S.B. 1111 (and S.B. 1) were insufficient to satisfy the requirement that the plaintiff organizations suffered an

injury traceable to the defendants' intended enforcement of the particular provisions challenged in that case. *Id.* at 254–55.

The same holds true here. The deposition excerpts cited by Plaintiffs in their response discuss resources spent in response to S.B. 1 as a whole—a massive bill spanning 75 pages—and do not identify particular criminal provisions or conduct in Harris County falling within the ambit of those provisions that would give rise to a likelihood of prosecution by District Attorney Ogg. Dkt. 638 at 13–15. As discussed previously, nothing in the record indicates that District Attorney Ogg took any action to enforce any provision of S.B. 1, or even lend resources to or support the bill's passage, which would have caused Plaintiffs to divert their resources. Plaintiffs cannot meet their burden to provide evidence "attribut[ing] [their] actions to any enforcement or threatened enforcement by [District Attorney Ogg]." *A & R Eng'g & Testing, Inc. v. Scott*, 2023 WL 4417252, at *3. Accordingly, pursuant to Fifth Circuit and Supreme Court precedent, the Court must "reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace injury to [District Attorney Ogg]." *Id.* at *3 (quoting *Clapper*, 568 U.S. at 410). Any injury suffered by Plaintiffs is not traceable to District Attorney Ogg, and thus Plaintiffs have no standing to sue her.

Finally, with respect to their ADA and Rehabilitation Act claims, the organizational Plaintiffs assert a theory of associational or representational standing, Dkt. 642 at 40, which requires each organization to demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). For example, in *Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard*

*College*, 143 S. Ct. 2141 (2023), the plaintiff established standing by supplying declarations from Asian American members who applied to Harvard and were rejected under the racially discriminatory admissions system challenged in the lawsuit. *See Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard College*, 980 F.3d 157, 164 (1st Cir. 2020).

Here, Plaintiffs' response identifies only three individuals with disabilities who have a connection to Harris County, and only one of them states that she is a member of any plaintiff organization—Jodi Lydia Nunez Landry, a member of REV UP Texas and Arc of Texas. *See infra*, Part II.B. As a threshold matter, this means that all Plaintiffs other than REV UP Texas and Arc of Texas have no evidence of any members who "would otherwise have standing to sue in their own right" and therefore have no claim to associational standing. *Hunt*, 432 U.S. at 343. Turning to Landry's declaration, she expresses generalized concerns that S.B. 1 might make it unlawful for her partner or personal attendants to assist her in voting but does not identify which of the challenged provisions of S.B. 1 might have that effect. Dkt. 642-2 at 300–01. Many of the challenged criminal provisions deal with only the responsibilities of election workers and are irrelevant to Landry's ability to receive voting assistance, and Plaintiffs fail to demonstrate how any of the other challenged criminal provisions could affect her ability to receive assistance. In fact, Texas Election Code § 86.015 specifically does not implicate an attendant or caregiver previously known to the voter, and Texas Election Code § 276.015 addresses only individuals compensated to provide votes for a "specific candidate or measure," neither of which applies to Landry's partner and personal attendants according to her own declaration. Landry's declaration therefore fails to identify an injury in fact caused by a challenged criminal provision and traceable to District Attorney Ogg. For that reason, Landry's declaration cannot establish that REV UP Texas and Arc of Texas have representational standing.

In summation, the organizational plaintiffs have not proffered any evidence of a judicially cognizable, non-speculative injury to themselves or their members traceable to District Attorney Ogg, and for that reason the Court should grant her summary judgment based on lack of standing.

## II.     Plaintiffs have not met their summary judgment burden on their claims.

### A.     Constitutional claims

Plaintiffs' argument conflates the issue of sovereign immunity with the merits of their constitutional claims.  Dkt. 638 at 28–29.  Even though this is a pre-enforcement action, Plaintiffs must put forward evidence of a likely constitutional violation that in some way relates to District Attorney Ogg in her official capacity as Harris County District Attorney.  Plaintiffs fail to do so.

The fact that Plaintiffs' response cites no evidence that Plaintiffs or their members are at risk of facing criminal prosecution by District Attorney Ogg that would violate their constitutional rights tells the Court everything it needs to know to dispose of the claims against her.  The response squarely admits that "[District Attorney] Ogg was named as a Defendant because, for Harris County, she is the one official vested with the authority to enforce the Criminal Provisions"—not because she has actually violated or threatened to violate any of the Plaintiffs' constitutional rights. Dkt. 638 at 29.  Plaintiffs' response focuses on mistaken assertions about what District Attorney Ogg is under a duty to do or not do and ignores their burden at the summary judgment stage: to bring forward some factual information that could support a claim under 42 U.S.C. § 1983. Plaintiffs have failed to do so.

Because of this absence of evidence, Plaintiffs have not demonstrated a triable issue of fact as to District Attorney Ogg on any of their constitutional claims.  Plaintiffs' legal arguments regarding sovereign immunity do not address this factual deficiency.[3]

---

[3]Plaintiffs' arguments about H.B. 17 from the 88th Texas Legislature, which goes to sovereign immunity, is discussed *infra*, Part III.

B.      **Title II of the Americans with Disabilities Act**

Plaintiffs misread District Attorney Ogg's arguments about the *merits* of their ADA claims

as an argument about the threshold *jurisdictional* requirement of standing.  Dkt. 642 at 39–40.  *See*

*Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (noting that

the phrase "statutory standing" is "misleading" and should instead be characterized as the "absence

of a valid . . . cause of action").  Therefore, this Court's statements at the motion-to-dismiss stage

on whether Plaintiffs alleged injuries sufficient to confer Article III standing have no bearing on

whether Plaintiffs can meet their burden under the ADA.

It is undisputed that under Fifth Circuit precedent, the elements of a Title II cause of action

are: (1) "a qualifying disability"; (2) a "deni[al of] the benefits of services, programs, or activities

for which the public entity is responsible, or is otherwise discriminated against by the public

entity"; and (3) "that such discrimination is by reason of [the plaintiff's] disability."  *Hale v. King*,

642 F.3d 492, 499 (5th Cir. 2011).

None of the individual plaintiffs claim to have produced evidence of a "qualifying

disability."  Moreover, the organizational Plaintiffs do not dispute that as non-profit organizations,

they are not individuals with a "qualifying disability."  Plaintiffs instead argue that they should be

able to sue because they represent individuals with disabilities.  Dkt. 642 at 40.  Many of the

individuals identified by Plaintiffs in their response do not reside in Harris County and thus have

no dispute with District Attorney Ogg.  It appears that only three individuals identified by plaintiffs

reside in Harris County: (1) Toby Cole; (2) Yolanda Ross; and (3) Jodi Lydia Nunez Landry.

Toby Cole's deposition testimony does not actually indicate whether he is a member of

any of the Plaintiff organizations such that a Plaintiff could sue on his behalf.  Dkt. 642-2 at 359.

*See Hunt*, 432 U.S. at 343 (noting that representational standing exists for an organization only

when "its members" have standing to sue in their own right). Furthermore, his testimony does not provide any evidence that the challenged criminal provisions in S.B. 1 subjected him to a likelihood of criminal prosecution or made it harder for him to vote, and he testified that he successfully voted in 2022. **Ex. 6**. Most importantly, whatever experiences Mr. Cole had voting as an individual with a disability after the effective date of S.B. 1 are attributable to the defendants with responsibilities over election administration rather than District Attorney Ogg, as those defendants are the ones responsible for Mr. Cole's experiences.

Yolanda Ross's declaration also does not indicate that she or her daughter Hannah, whom she assists with voting, are members of any of the Plaintiff organizations or has any affiliation with them. Dkt 642 at 283. *See Hunt*, 432 U.S. at 343. The declaration also does not provide any evidence that the challenged criminal provisions in S.B. 1 subjected her to a likelihood of criminal prosecution or made it harder for her to assist her daughter in voting. It states in general terms that she "think[s] S.B. 1 makes it more difficult for people like Hannah to vote" but does not specify which provisions in the omnibus legislative changes enacted in S.B. 1 might affect her. Dkt. 642-2 at 284. This is significant because only certain criminal provisions in S.B. 1 are at issue in the claims against District Attorney Ogg, many of which concern the responsibilities of election workers and do not affect the ability of people such as Ms. Ross to assist others with voting, and the rest of which would not restrict Ms. Ross from continuing to assist her daughter in the manner she describes in her declaration. Texas Election Code § 86.015 specifically does not implicate an attendant or caregiver previously known to the voter, and Texas Election Code § 276.015 deals only with individuals who are compensated to provide votes for a "specific candidate or measure," neither of which applies to Ms. Ross. Ms. Ross's generalized subjective concern about her

daughter's ability to vote without identifying a particular legal provision that impedes her ability to assist her daughter in voting is insufficient to establish an ADA violation.

Finally, Jodi Lydia Nunez Landry, a member of REV UP Texas and Arc of Texas who has Muscular Dystrophy and requires assistance with voting, describes how she prefers to vote in person but has difficulty doing so because of her physical limitations. She states that she would like for her "partner to assist [her]" but is "nervous" about asking him to "because he may be targeted with criminal liability simply for assisting [her]," and "[e]ven if the assistance he is providing is lawful under S.B. 1, the law is very confusing and [she] would never want to risk exposing anyone to criminal liability." Dkt. 642-2 at 300–01. The declaration does not describe, however, what criminal provision and facts could impede her partner from assisting her with voting. Ms. Landry also states in her declaration that in the future, she may need to vote by mail and may wish to have her personal attendant assist her with doing so if her partner is unavailable, but her attendant "may be afraid to assist [her] for fear of being accused of doing something illegal." Dkt. 642-2 at 301. Again, many of the challenged criminal provisions deal with only the responsibilities of election workers, which are irrelevant to Ms. Landry's ability to vote, and Plaintiffs fail to demonstrate how any of the other challenged criminal provisions could affect the abilities of people such as Ms. Landry's partner or personal attendants to assist her with voting. Texas Election Code § 86.015 specifically does not implicate an attendant or caregiver previously known to the voter, and Texas Election Code § 276.015 addresses only individuals compensated to provide votes for a "specific candidate or measure," so neither of these provisions applies to Ms. Landry's partner and personal attendants according to her own declaration.

Most fundamentally, however, to meet their summary judgment burden to show evidence that District Attorney Ogg has violated a statute like the Voting Rights Act, Plaintiffs would be

required to show that District Attorney Ogg has actually taken some action to violate that statute. Occupying an elected office does not violate that statute.  Summary judgment is therefore appropriate.

      **C.**     **Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act states that no "qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  In response to District Attorney Ogg's argument that Plaintiffs have not identified any federally funded program or activity under which any person has been excluded, denied benefits, or subjected to discrimination,  Plaintiffs identify two alleged sources of federal funding:  (1) an allocation of federal pandemic relief funds to pay for the operating expenses of the HCDAO; and (2) a federal grant from the Department of Justice to fund the work of Assistant District Attorneys working on domestic assault cases.  Dkt. 642 at 42.

Much like their failure to marshal evidence tracing any alleged injuries to District Attorney Ogg to demonstrate standing, Plaintiffs likewise fail to connect the dots between these federal funds and any claimed exclusionary or discriminatory conduct by District Attorney Ogg.  First, Plaintiffs lack any evidence that the pandemic relief funds have ever been used or will ever be used in any "program or activity" related to their allegations in this case.  By the plain text of the statute, the Plaintiffs' burden is to demonstrate that they or their members face discrimination in a federally funded program or activity.  Merely identifying that the Harris County District Attorney's Office has received federal funds is insufficient— there must be proof to raise a genuine issue of material fact on the use of funds that results in claimed exclusionary or discriminatory activity.

Plaintiffs have failed to even identify a discriminatory program or activity for which the federal funds were used, let alone identify any supporting evidence to overcome summary judgment.

Similarly, Plaintiffs' allegations have nothing to do with domestic assault cases. Plaintiffs' efforts to use the fact that the Department of Justice provides funds that might be used for programs wholly unrelated to Plaintiffs' claims that certain voting-related statutes enacted through S.B. 1 violate Section 504 fall flat. Plaintiffs again fail to meet their summary judgment burden that the funds from the domestic assault grant were somehow used or will somehow be used to prevent equal access to voting.

Again, the analysis should start and end with the principle that to proceed to trial against a defendant for violating a federal statute, a plaintiff must adduce evidence to raise a genuine issue of material fact that the defendant actually took some action to violate the statute. Absent such a showing, the remaining analysis involves ever-increasing abstractions. For example, even if Plaintiffs could show that District Attorney Ogg took some action related to their claims (they cannot), and even if Plaintiffs could show that District Attorney took the action with federal funds (they cannot), then they would further need to prove that any such actions (e.g., hypothetical prosecutions) would be initiated in a discriminatory manner that treats people with disabilities differently than any other person. The abstraction reaches beyond the point of senselessness. This is because at their core, Plaintiffs' claims are and always have been directed at the substance of the challenged provisions, not their enforcement. As such, any hypothetical prosecutions by District Attorney Ogg could not conceivably cause anyone to be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. No evidence in the record demonstrates that District Attorney Ogg has treated Plaintiffs or their members any differently than anyone else.

Without such evidence, Plaintiffs cannot survive summary judgment on their claims under Section 504 of the Rehabilitation Act.

### D.       Section 208 of the Voting Rights Act

Under Section 208 of the Voting Rights Act, voters with disabilities are entitled to voting assistance "by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Plaintiffs argue that Sections 6.01, 6.03, 6.05, and 6.07 of S.B. 1 violate Section 208 "by requiring assistors to take an oath under penalties of perjury and by adding burdensome form and disclosure requirements for assistors who help voters with in-person and mail voting or transport curbside voters to the polls." Dkt. 643 at 28. Again, this is not a claim of a Voting Rights Act violation by District Attorney Ogg. She is not a legislator; she is an elected district attorney with original criminal jurisdiction in Harris County. Absent a showing of a genuine issue of material fact that she *has actually engaged in some conduct* that could justify trial of claims against her, there is no basis on which the VRA claim against her should proceed to any trial.

As this Court has already determined, only those claims relating to provisions of S.B. 1 that create or implicate criminal penalties are applicable to District Attorney Ogg. Dkt. 450 at 16. Accordingly, S.B. 1 Section 6.05 (amending TEX. ELEC. CODE § 86.010) is the only relevant provision for the Court to consider from Plaintiffs' list of S.B. 1 provisions that they claim violate Section 208.

With respect to that claim, neither the text of the Voting Rights Act nor precedent recognizes that Section 208 offers a plaintiff a cause of action against a district attorney for pre-enforcement injunctive relief restraining the enforcement of a criminal law. That may be why the U.S. Department of Justice, with its extensive experience in civil-rights law, did not seek to bring

a Section 208 claim against District Attorney Ogg in this litigation.  Dkt. 131.  Although a constitutional claim meeting *Ex parte Young*'s requirements can provide a basis for pre-enforcement injunctive relief against a state official, it would be doctrinally mismatched and legally unsound to treat Section 208 of the Voting Rights Act as providing a cause of action for a pre-enforcement injunction against District Attorney Ogg.

Even if Section 208 did provide such a cause of action, Plaintiffs do not dispute that the requirements of Section 208 of the Voting Rights Act are already codified and secured for Texas voters in Texas Elections Code § 64.032(c).  These protections are still afforded to voters even after the passage of S.B. 1.

Again, the levels of abstraction reach the level of senselessness.  If one were to venture far enough down the rabbit trail, Plaintiffs would be unable to identify any evidence that anyone in Harris County is likely to be subjected to criminal liability by District Attorney Ogg under Section 6.05.  Importantly, the relevant criminal offense in Texas Election Code § 86.010 has existed since 2003.  As amended by S.B. 1, an individual who assists a voter in preparing a ballot to vote by mail but refuses to take the oath required by Texas Election Code § 64.034 is subject to increased criminal penalties if (1) the assistor was previously convicted of an Election Code offense, (2) the offense involved a voter aged 65 or older, or (3) the assistor committed another Election Code offense in the same election.  TEX. ELEC. CODE § 86.010(i).

Summary judgment is proper on the basis of the simple fact that Plaintiffs have proffered no evidence that District Attorney Ogg has done anything to prevent any voters from selecting an assistor of their choice.  Plaintiffs' purely legal argument that the required oath and corresponding criminal penalty "chills would-be assistors and dissuades voters from seeking assistance," Dkt. 643 at 34, is again directed at the substance of the law and not any evidence of action taken by

District Attorney Ogg.  Whether the penalties placed on assistors violate Section 208 has nothing to do with District Attorney Ogg, who did not enact the law and who has not prevented anyone from receiving assistance from the person of their choice.  Thus, even if voters are deciding not to seek assistance in voting or their preferred assistors are refusing to assist, District Attorney Ogg cannot be the cause of that decision because she has not taken or threatened action with respect to voter assistance.  Without evidence connecting District Attorney Ogg to voters' decisions not to vote, Plaintiffs cannot show that she is liable for violating Section 208 of the Voting Rights Act.

### E.       Section 2 of the Voting Rights Act

As this Court is undoubtedly aware, the proper parties have been litigating Section 2 Voting Rights Act claims—long and loud—without including Texas district attorneys.  *E.g.*, *LULAC v. Abbott*, No. 3:21-CV-00259 (W.D. Tex. filed Oct. 18, 2021); *Perez v. Abbott*, 267 F. Supp. 3d 750 (W.D. Tex. 2017); *Perez v. Abbott*, 274 F. Supp. 3d 624 (W.D. Tex. 2017); *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014).

It is not and cannot be District Attorney Ogg's burden to defend state statutes from challenges brought under Section 2 of the Voting Rights Act.  Even if it were, Plaintiffs' challenges would still fail the summary judgment analysis.  The Supreme Court recently reaffirmed the *Gingles* test for evaluating claims under Section 2 of the Voting Rights Act.  "To succeed in proving a § 2 violation under *Gingles*," the plaintiff must show, among other things, that a minority group "is politically cohesive" and that "the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Allen v. Milligan*, 143 S. Ct. 1487, 1503 (2023) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 51 (1986)).  Plaintiffs address this requirement in only a footnote in their response to District Attorney Ogg's motion for summary judgment, stating in conclusory fashion that "the Criminal Provisions erect barriers to the act of voting by preventing

the regulation of poll watchers . . . and by creating criminal penalties for activities that are part of voter outreach and assistance." Dkt. 638 at 30 n.19.  Plaintiffs cite no actual evidence to support those contentions, and in any event, those contentions (much less the reality of elections in Harris County) do not establish that minority voters in Harris County have been denied the ability to elect their preferred candidates.  In the absence of such evidence, Plaintiffs could never meet their burden of proof under *Milligan* for their Section 2 claims.

### III.   The sovereign immunity issue has been fully briefed and argued before the Fifth Circuit.

District Attorney Ogg of course raised her sovereign immunity defense as part of her summary judgment motion to avoid any meritless arguments that she waived it by not doing so. She respects this Court's rejection of that argument on her motion to dismiss.  The issue of whether Plaintiffs have satisfied the *Ex parte Young* exception to sovereign immunity is now fully before and pending decision by the United States Court of Appeals for the Fifth Circuit.  Arguments in Fifth Circuit Case No. 22-50732, specifically on the sovereign immunity issue, were held before a panel of that court on July 12, 2023.

While the parties await the outcome of that appeal, Plaintiffs' responses to District Attorney Ogg's summary judgment motion merely reinforce the issue that is squarely before the Fifth Circuit:  Can a Texas district attorney be sued to have a federal court declare a Texas criminal statute unconstitutional just because she holds the office, or does *Ex parte Young* require more? This is underlined as the question because in responding to District Attorney Ogg's motion for summary judgment, Plaintiffs have not come forward with evidence to raise a genuine issue of material fact as to whether District Attorney Ogg has ever:

- Enforced any of the challenged S.B. 1 provisions;

- Threatened to enforce any of the challenged S.B. 1 provisions;

- Been involved in any of the efforts to draft or pass S.B. 1; or

- Enforced or threatened to enforce any provision of law sufficiently similar to the challenged provisions even to merit consideration of whether the "demonstrated willingness" prong of *Ex parte Young* could ever be satisfied.

In *Ex parte Young*, the Attorney General of Minnesota brought a mandamus proceeding seeking to force railroad companies to comply with a law limiting railroad rates, clearly demonstrating "*an intention by the Attorney General of the State to endeavor to enforce its provision.*" 209 U.S. 123, 149 (1908) (emphasis added). A recent Fifth Circuit opinion reiterated that the *Ex parte Young* exception to sovereign immunity applies only when a state officer has a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Ostrewich v. Tatum*, --- F.4th ----, 2023 WL 4231608, at *3 (5th Cir. June 28, 2023) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020)); *see also id.* at *4 (citing *City of Austin v. Paxton*, 943 F.3d 993, 1000–02 (5th Cir. 2019)) ("Ostrewich must show that he has a particular duty to enforce the electioneering laws and has demonstrated willingness to do so."). The inquiry requires a "provision-by-provision" analysis. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022).

There is no evidence in the summary judgment record that District Attorney Ogg has demonstrated a willingness to enforce any of the challenged criminal provisions against anyone in Harris County. To the contrary, the only evidence in the record of her intentions regarding S.B. 1 is the stipulation in which she agreed not to enforce the challenged provisions pending judicial determination of their constitutionality. Plaintiffs rejected the stipulation in an effort to manufacture a case or controversy, but this rejection does not change the fact that there is no evidence of a demonstrated willingness by District Attorney Ogg to enforce any of the challenged

provisions.  Accordingly, the *Ex parte Young* exception to sovereign immunity continues not to apply at summary judgment, just as it did not apply at the motion to dismiss stage.

Plaintiffs cite H.B. 17 from the 88th Texas Legislature, which takes effect on September 1, 2023, to support their argument that District Attorney Ogg is statutorily obligated to enforce the challenged criminal provisions.  Dkt. 638 at 9.  But H.B. 17 is inapposite to the issues before the Court.  H.B. 17 amends the already established state removal procedures applicable to prosecuting attorneys to add as a ground for potential removal the prosecuting attorney's adoption of policies of wholesale refusal to prosecute certain crimes even when there is sufficient evidence of violations to support prosecution.  *See* H.B. 17, § 1 (amending TEX. LOC. GOV'T CODE § 87.011).  Contrary to Plaintiffs' assertion that H.B. 17 "now compels [District Attorney Ogg] to enforce S.B. 1's criminal penalties," Dkt. 638 at 9, nothing in H.B. 17 constrains District Attorney Ogg's inherent prosecutorial discretion or requires her to prosecute any case, much less a wholly hypothetical case of the type posited by Plaintiffs.  There is an absence of evidence in the record of any actual or anticipated violations of the criminal provisions of S.B. 1 in Harris County, let alone any evidence concerning how District Attorney Ogg would exercise her prosecutorial discretion if presented with evidence of such violations.  Plaintiffs, therefore, cannot demonstrate that District Attorney Ogg has a "particular duty to enforce the statute in question," much less show a "demonstrated willingness to exercise that duty."  *Ostrewich*, 2023 WL 4231608, at *3.  The *Ex parte Young* exception does not apply, and District Attorney Ogg is entitled to sovereign immunity.

## CONCLUSION

Plaintiffs lumped District Attorney Ogg in with several other Defendants in their efforts at group pleading and group-summary-judgment-responding, without evidence that anyone is likely to be prosecuted in Harris County under the challenged criminal provisions.  Plaintiffs cannot carry

their burden of proof for their claims against District Attorney Ogg.  The Court should grant summary judgment in favor of District Attorney Ogg on all claims against her.

Respectfully submitted,

**BUTLER SNOW LLP**

By: /s/ Eric J.R. Nichols
  Eric J.R. Nichols
  State Bar No. 14994900
  eric.nichols@butlersnow.com
  Cory R. Liu
  State Bar No. 24098003
  cory.liu@butlersnow.com
  Victoria A. Giese
  State Bar No. 24126391
  victoria.giese@butlersnow.com
  1400 Lavaca Street, Suite 1000
  Austin, Texas 78701
  Tel: (737) 802-1800
  Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT DISTRICT ATTORNEY KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 14, 2023, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

/s/ Eric J.R. Nichols
Eric J.R. Nichols