IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
|     *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 5:21-cv-844-XR |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
|     *Defendants.* | § | |

---

## STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

RYAN G. KERCHER
Tex. State Bar No. 24060998
Deputy Chief, General Litigation Division

WILLIAM D. WASSDORF
Assistant Attorney General
Tex. State Bar No. 24103022

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
kathleen.hunker@oag.texas.gov
ryan.kercher@oag.texas.gov
will.wassdorf@oag.texas.gov

TABLE OF CONTENTS

Table of Contents ...........................................................................................................ii

Index of Authorities .......................................................................................................iii

ARGUMENT & AUTHORITIES ...........................................................................................1

I.  Plaintiffs' Proposed Modification is Facially Unreasonable; Their Claims Therefore Fail on
    Summary Judgment...........................................................................................1

    A.  Enjoining Each Challenged Provision for All Texas Voters is Not Reasonable
        "in the Run of Cases." ...............................................................................2

    B.  Eliminating a State Policy Constitutes a Fundamental Alteration of It.........................5

II.  Plaintiffs Have Not Met Their Burden of Proof that the Challenged Provisions Deny Voters
     with Disabilities Meaningful Access to Voting. ...........................................................7

III. The Failure to Engage with Defendants Prior to Litigation Defeats Plaintiffs' Failure to
     Accommodate Claim. ....................................................................................16

CONCLUSION ............................................................................................................19

## INDEX OF AUTHORITIES

**Cases**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018) ......................................................................................................6

*Alexander v. Choate,*
    469 U.S. 287 (1985) ...................................................................................................... 1, 7

*Bailey v. Bd. of Comm'rs of La. Stadium & Exposition Dist.,*
    484 F. Supp. 3d 346 (E.D. La. 2020) ..........................................................................7

*Bailey v. France,*
    852 Fed. Appx. 852 (5th Cir. 2021) ............................................................................7

*Ball v. LeBlanc,*
    792 F.3d 584 (5th Cir. 2015) ......................................................................................18

*Boudreaux v. Swift Transp. Co.,*
    402 F.3d 536 (5th Cir. 2005) ........................................................................................8

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013) ....................................................................................................12

*E.T. v. Paxton,*
    41 F.4th 709 (5th Cir. 2022) ........................................................................................4

*Eu v. San Francisco Cty. Democratic Cent. Comm.,*
    489 U.S. 214 (1989) ......................................................................................................6

*Greer v. Richardson Ind. School Dist.,*
    472 Fed. Appx. 287 (5th Cir. 2012) ..........................................................................17

*Halpern v. Wake Forest Univ. Health Scis.,*
    669 F.3d 454 (4th Cir. 2012) ........................................................................................2

*Hedberg v. Ind. Bell Tel. Co.,*
    47 F.3d 928 (7th Cir. 1995) ........................................................................................16

*Housing Works v. Cnty. of Los Angeles,*
    No. CV 15-8982, 2016 WL 11730243 (C.D. Cal. Aug. 4, 2016) .................................1

*Johnson v. Callanen,*
    608 F. Supp. 3d 476 (W.D. Tex. 2022) ......................................................................5

*Johnson v. Gambrinus Co./Spoetzl Brewery,*
    116 F.3d 1052 (5th Cir. 1997) ....................................................................................17

*League of Women Voters of Fla., Inc. v. Lee,*
    595 F. Supp. 3d 1042 (N.D. Fla. 2022) ......................................................................5

*Maryland v. King,*
    567 U.S. 1301 (2012) ....................................................................................................6

*Nat'l Fed'n of the Blind v. Lamone,*
    813 F.3d 494 (4th Cir. 2016) ............................................................................ 1

*Payan v. L.A. Cmty. Coll. Dist.,*
    11 F.4th 729 (9th Cir. 2021) ........................................................................... 17

*People First of Alabama v. Merrill,*
    467 F. Supp. 3d 1179 (N.D. Ala. 2020) ........................................................... 6

*Riel v, Elec. Data Sys. Corp.,*
    99 F.3d 678 (5th Cir. 1996) ........................................................................... 17

*Schaw v. Habitat for Humanity of Citrus Cnty., Inc.,*
    938 F.3d 1259 (11th Cir. 2019) ....................................................................... 6

*Shaikh v. Lincoln Mem'l Univ.,*
    608 F. App'x 349 (6th Cir. 2015) ................................................................... 2

*Smith v. Harris Cnty,*
    956 F.3d 311 (5th Cir. 2020) ............................................................... 7, 16, 18

*Sutton v. United Air Lines, Inc.,*
    527 U.S. 471 (1999) ...................................................................................... 19

*Taylor v. Principal Fin. Group, Inc.,*
    93 F.3d 155 (5th Cir. 1996) ........................................................................... 16

*Toyota Motor Mfg., Ky., Inc. v. Williams,*
    534 U.S. 184 (2002) ........................................................................................ 4

*US Airways, Inc. v. Barnett,*
    535 U.S. 391 (2002) .................................................................................... 1, 3

*Windham v. Harris Cnty,*
    875 F.3d 229 (5th Cir. 2017) ......................................................... 7, 16, 17, 18

**Statutes**

Tex. Elec. Code § 64.009 .................................................................................... 9

Tex. Elec. Code § 64.0322 ................................................................................ 10

Tex. Elec. Code § 64.034 .................................................................................. 11

Tex. Elec. Code § 64.036 (a), (d) ...................................................................... 11

Tex. Elec. Code § 84.002 .................................................................................. 13

Tex. Elec. Code § 84.011(a) .............................................................................. 13

Tex. Elec. Code § 84.035 .................................................................................. 13

Tex. Elec. Code § 86.001 .................................................................................. 14

Tex. Elec. Code § 86.001(f-1) ........................................................................... 15

Tex. Elec. Code § 86.010 ........................................................................................................10

Tex. Elec. Code § 86.010(h)(1) ...............................................................................................11

Tex. Elec. Code § 86.010(h)(2) ...............................................................................................10

Tex. Elec. Code § 86.0105 .......................................................................................................12

Tex. Elec. Code § 86.0105(f) ...................................................................................................12

Tex. Elec. Code § 86.013 .........................................................................................................10

Tex. Elec. Code § 86.015(c) .....................................................................................................15

Tex. Elec. Code § 87.0271 .......................................................................................................15

Tex. Elec. Code § 87.0271(b)–(d), (g) .....................................................................................15

Tex. Elec. Code §§ 276.015-.019 ...............................................................................................8

**Regulations**

28 C.F.R. § 35.150 ......................................................................................................................8

29 C.F.R. § 1630.9 ....................................................................................................................16

52 U.S.C. § 21083(a)(5)(A)(i) ..................................................................................................13

ARGUMENT & AUTHORITIES

**I.      Plaintiffs' Proposed Modification is Facially Unreasonable; Their Claims Therefore Fail on Summary Judgment.**

Federal law mandates that public entities make "reasonable," but not "substantial" or "fundamental," modifications to accommodate persons with disabilities. *Alexander v. Choate*, 469 U.S. 287, 300 (1985). Accordingly, Plaintiffs must propose, as part of their case-in-chief, a reasonable modification to the challenged public program that would grant their members the meaningful access their members are allegedly denied. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016). They have not done so. Instead, Plaintiffs seek to enjoin each Challenged Provision for all Texas voters regardless of voters' disability status, relationship to Plaintiffs, or burden faced when voting.

In an attempt to fix this deficiency, Plaintiffs argue that "[t]he court can fashion appropriate relief after liability is determined." ECF 642 at 46. But this misunderstands the allocation of burden under the ADA and Rehabilitation Act. Identifying a reasonable modification is a perquisite to establishing liability. Plaintiffs therefore were obliged to propose an accommodation that, on its face, seems reasonable "in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). It cannot rely on the Court to fabricate one post hoc.

The cases Plaintiffs cite in support do not hold otherwise. In *King v. Our Lady of the Lake Hospital*, the court addressed whether the plaintiff had standing to seek injunctive relief, not whether the plaintiff could obtain relief after she failed to meet a requisite element of her claim. 455 F. Supp. 3d 249, 260–61 (M.D. La. 2020). In *Housing Works v. Cnty. of Los Angeles*, the plaintiffs provided 21 potential modifications through the course of litigation. No. CV 15-8982, 2016 WL 11730243, at *8 (C.D. Cal. Aug. 4, 2016). The defendants there did not question whether the modifications were reasonable, only whether the requested relief would result in a "broad, vague, and ultimately unenforceable 'obey the law' injunction" in violation of the Federal Rules. *Id.*

1

Plaintiffs also contend that reasonableness is "a question of fact not suited for summary judgment." ECF 642 at 45. However, while that is often true, courts have granted summary judgment in favor of defendants when "a plaintiff failed to present evidence from which a jury may infer that the accommodation is reasonable on its face" and when "the defendant establishes as a matter of law that the proposed modification will cause 'undue hardship in the particular circumstances.'" *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (citing *U.S. Airways*, 535 U.S. at 401–02); *see also Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 355 (6th Cir. 2015). That is the case here.

As explained below, Plaintiffs' proposed modification fails as a matter of law. *First*, Plaintiffs cannot establish that the complete non-enforcement of the Challenged Provisions—even if confined to voters with disabilities—would be reasonable ordinarily or in the run of cases, given Plaintiffs' utter failure to tailor the modification to the denial of access actually experienced by voters.[1] *Second*, by Plaintiffs' own admission, Plaintiffs seek to invalidate thirteen different provisions in SB 1 and "return the law to the status quo ante." ECF 642 at 46. Nothing could fundamentally alter a policy more than eliminating it in its entirety. Summary judgment is appropriate.

## A. Enjoining Each Challenged Provision for All Texas Voters is Not Reasonable "in the Run of Cases."

On its face, Plaintiffs' requested accommodation is unreasonable. Rather than propose a modest change to state or county procedures, Plaintiffs have asked this court to fully enjoin thirteen different provisions in SB 1. The injunction would apply to all Texas voters, with no distinction being made between voters with legitimate ADA and § 504 claims and voters who: (1) lack qualifying disabilities, (2) were not denied access to voting because of those disabilities, or (3) could have resolved the impediment with a modest adjustment by Defendants, had Defendants been given the opportunity

---

[1] State Defendants maintain that the Challenged Provisions do not deny voters with disabilities meaningful access voting. However, to the extent that they do, any accommodation would need to be somewhat proportionate to harm for it to be facially reasonable.

to engage in the good faith, interactive process that typically precedes an accommodation request. Because there is no close nexus between the proposed accommodation and the denial of access alleged by Plaintiffs, most of the so-called beneficiaries of the modification would not, in ordinary circumstances, qualify for relief under the ADA or § 504. Plaintiffs therefore cannot establish that the complete nonenforcement of the Challenged Provisions would be reasonable "ordinarily or in the run of cases." *US Airways*, 535 U.S. at 401.

Plaintiffs do not appear to contest the fact that their requested accommodation would eliminate state policy for all Texas voters, not merely those who were denied meaningful access to Texas's voting program on account of a disability. Instead, they emphasize the prevalence of disabilities among voters who cast their ballots by mail. ECF 642 at 3–4, 49. However, even accepting Plaintiffs' assertions as true, the data does not support the sweeping remedy Plaintiffs propose. *First*, Plaintiffs do not offer a justification for why their requested accommodation should encompass voters who are authorized to vote by mail for reasons other than disability, such as confinement in jail or being outside the county. Rather, Plaintiffs seek to enjoin enforcement of the Challenged Provisions against these voters. *Second*, the actual number of voters with disabilities affected by the Challenged Provisions was in fact quite small, especially when compared to the total number of Texans who participated in the last election.

State Defendants offer additional examples in its motion for summary judgment, ECF 616 at 26–27, but according to the United States' expert, there were 359,526 mail-ballots cast in the November 2022 election. ECF 616-1, App. S (United States Expert, Dr. Eitan Hersh, February 10, 2023 Report) at 7. Of that number, only 11,430 mail ballots were initially rejected due to voters' failure to provide a matching ID number, 6,355 of which were not cured. *Id.* at 7–10. Plaintiffs do not offer any evidence demonstrating how many of these ballots belonged to voters with disabilities and, more crucially, were rejected, in part, because of the voters' disability. For this reason, Plaintiffs try to pad

the numbers by citing statistics from the March 2022 primary, when the requirements were new and rejection rates uncharacteristically high. *See*, *e.g.*, ECF 642 at 13, 22. However, the undisputed facts show that, once counties had sufficient time to implement the ID number requirement, the rejection rates for mail ballots declined each successive election to where they are back at historic levels. *See* ECF 646 at 15–16.

Furthermore, the prevalence of disabilities among Texas voters does not act as good proxy for determining the burden that the Challenged Provisions impose on these voters, given the individualized nature of ADA and § 504 claims. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (disability claims, in particular, must be determined in a "case-by-case manner"). As Plaintiffs' expert Dr Douglas L. Kruse acknowledged, the determination of an appropriate accommodation requires a fact specific analysis "that has to be tailored to the person." ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 119:2–7. A 72-year-old voter with a hearing impairment, after all, will not have the same experience complying with the Challenged Provisions as a voter with partial paralysis or spinal muscular atrophy, even if they all have ADA qualifying disabilities.

Yet, when making their arguments, Plaintiffs treat all voters with disabilities as a monolithic group with the same limitations and circumstances. They never confront the variance in voters' experience, how that variance would affect their need for an accommodation, or the form that accommodation must take to be effective. This means that Plaintiffs base their requested relief on a massive generalization unmoored from not only the effects the Challenged Provisions had on voters, but also Defendants' obligations under the ADA or Rehabilitation Act, which do not mandate that public entities adopt a particular technology or accommodation as long as individuals with qualifying disabilities have "meaningful access" to government programs. *E.T. v. Paxton*, 41 F.4th 709, 717 (5th Cir. 2022).

**B.  Eliminating a State Policy Constitutes a Fundamental Alteration of It.**

It bears repeating that, in contrast to *Johnson v. Callanen* and other ADA litigation, Plaintiffs do not seek a limited exception to state policy for a particular subset of disabled voters. 608 F. Supp. 3d 476 (W.D. Tex. 2022). Instead, Plaintiffs have brought their ADA and § 504 claims to enjoin thirteen separate provisions of the Texas Election Code in their entirety. This constitutes a fundamental alteration since it involves the elimination of state policy, as opposed to a modification. Indeed, the Northern District of Florida considered this very question when considering ADA challenges to Florida's new election integrity law. It concluded that proposing "to enjoin an entire provision necessarily eliminates an 'essential aspect' of it." *League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042, 1158 (N.D. Fla. 2022), *aff'd in part, vacated in part, rev'd in part sub nom. League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023). The court continued, "Plaintiffs seek to enjoin the entire . . . provision for all voters in the whole state. Doing so undermines the basic purpose of the law, no matter what that purpose is." The same reasoning applies here.

In arguing otherwise, Plaintiffs contradict themselves. On the one hand, Plaintiffs try to characterize their relief as "a modification of state law provisions." ECF 642 at 46. On the other hand, Plaintiffs admit that they "seek an order" from the Court that would invalidate the reforms enacted by the Texas Legislature via SB 1 and "return the law to the status quo ante." ECF 642 at 46. They concede that the purpose of their requested relief is to have Texas authorities administer elections "without the Challenged Provisions in place." *Id.* The problem with this approach is that the Texas Legislature enacted these provisions to advance specific objectives, *see, e.g.*, SB 1 §§ 1.02–1.04, which cannot be accomplished absent some form of enforcement.[2] *Schaw v. Habitat for Humanity of Citrus*

---

[2] State Defendants articulated at length the purpose of SB 1's provisions related to the ID Number Requirement in their response to the United States and OCA-GH Plaintiffs' motions for summary judgment, as well as the irregularities and concerns they addressed. *See* ECF 645 at 15–16; ECF 646 at 4–13, 33–37.

*Cnty., Inc.*, 938 F.3d 1259, 1267 (11th Cir. 2019) (holding that an accommodation represents a fundamental alteration if it undermines "the basic purpose of the rule or policy at issue").

For this reason, Plaintiffs' contention that State Defendants lack evidence of a fundamental alteration misses the mark. Courts have repeatedly held that the "inability [of a State] to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012). And this is especially so in the context of elections, where Texas "indisputably has a compelling interest in preserving the integrity of its election process." *See Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). Nevertheless, Plaintiffs would have this Court foreclose all enforcement of the Challenged Provisions without exception.

The next argument Plaintiffs make is that the present action can be distinguished from *League of Women Voters* because Florida's vote-by-mail system is open to all voters while Texas confines mail-in voting to certain categories of voters. ECF 642 at 49. This is a distinction without a difference. In each instance, the Plaintiffs have sought the complete non-enforcement of the Challenged Provisions, even though the vast majority of voters did not suffer an injury under the ADA or Rehabilitation Act. *See supra* at I.A. Accordingly, the requested relief still constitutes a fundamental alteration of state policy since it would prevent the state from advancing the basic purpose of the law with no commensurate benefit to voters. *See Schaw*, 938 F.3d at 1267.

In addition, Plaintiffs misstate the Northern District of Florida's holding. ECF 642 at 49. When the court in *League of Women Voters* spoke about "older, disabled, and compromised voters," 66 F.4th at 1158, it was referencing *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1221 (N.D. Ala. 2020), which involved a proposed modification that would expand a pre-existing exemption to a limited group of voters. It was not insinuating that the plaintiffs' relief would have been appropriate had Florida only allowed excuse-based mail-in voting. If anything, the court in *League of Women Voters*

was making the same observation that State Defendants did when comparing *Johnson v. Callanen* and the present action: namely, that there is a legally significant difference between enlarging an established exception in the law and enjoining all enforcement of it. The former arguably allows the State to advance its policy; the latter does not.

Hence, even with the more exacting standard of summary judgment, Plaintiffs' requested accommodation does not survive review, as nothing could fundamentally alter a policy more than eliminating it in its entirety, and Plaintiffs have failed to present any evidence from which this Court might make an inference in their favor.

## II.     Plaintiffs Have Not Met Their Burden of Proof that the Challenged Provisions Deny Voters with Disabilities Meaningful Access to Voting.

As argued above, Plaintiffs have the burden to demonstrate a prima facie case of discrimination and to propose a facially reasonable modification. *See Smith v. Harris Cnty*, 956 F.3d 311, 317 (5th Cir. 2020); *Windham v. Harris Cnty*, 875 F.3d 229, 237 (5th Cir. 2017). In an effort to give their Response a fighting chance, Plaintiffs attempt to move the goalposts by mischaracterizing the standards under which State Defendants' conduct should be analyzed.

*First*, Plaintiffs repeatedly state that under the ADA and § 504, Plaintiffs are entitled to "*equal* opportunity" or "*equal* access" as provided other individuals. *See* ECF 642 at 42–43 (emphasis added). That is not the law. Instead, Plaintiffs are entitled to "*meaningful access* to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (emphasis added). "'Meaningful access,' however does not mean 'equal access' or preferential treatment." *Bailey v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 424 (E.D. La. 2020), aff'd sub nom. *Bailey v. France*, 852 Fed. Appx. 852 (5th Cir. 2021).

*Second*, Plaintiffs attempt to limit the scope of the courts review to only a part of Texas's voting program—mail-in-voting. ECF 642 at 44. However, Texas offers other types of voting in addition to

mail-in-voting, including in-person voting and curbside voting. When analyzing claims under the ADA and § 504 as applied to voting, a public entity's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [State], as well as its alternative and absentee ballot programs." *Kerrigan v. Pa. Bd. of Election*, No. 07-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (requiring a "service, program of activity, when viewed in its entirety" to be accessible to disabled individuals).

In spite of these mischaracterizations, Plaintiffs have failed to meet their burden as to each of the Challenged Provisions.

**Section 7.04.** Plaintiffs have failed to prove that Section 7.04 violates the ADA or Rehabilitation Act. Section 7.04 bans compensated vote harvesting, defined as in-person interactions with one or more voters, in the physical presence of an official ballot, intended to deliver votes for a specific candidate or measure. Tex. Elec. Code §§ 276.015-.019. Plaintiffs' suspect that Section 7.04's "[r]estrictions on [such] in-person interactions limit the ability of voters with disabilities to obtain needed assistance" because this type of interaction "may particularly benefit voters with cognitive and developmental disabilities who may have difficulty understanding the issues and voting process." ECF 642 at 16 (citing ECF 642-2, Ex. 2, Kruse Report at ¶ 107). But these conclusory allegations are entirely speculative and are not sufficient to overcome summary judgment. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Indeed, Plaintiffs' response only admits that "*it is possible* that someone connected to a campaign may be the best and only option to assist them with voting," given that "voters with disabilities are [purportedly] more likely to live alone and be socially isolated." ECF 642 at 16 (emphasis added). And more illuminating is the fact that Dr. Kruse admitted under oath in his deposition that he was "not aware of any data available on" "how restrictions on vote harvesting would prevent or impede a voter with [a] disability on finding an assister," and he was "not aware of

any data available on whether restrictions on vote harvesting would in fact prevent an individual from voting."[3] Therefore, Plaintiffs have failed to meet their burden of proof as to Section 6.07 of SB 1.

**Section 6.01.** Plaintiffs have also failed to prove that Section 6.01 violates the ADA or Rehabilitation Act. Section 6.01 mandates that a person transporting seven or more voters to curbside voting must provide their name and address to county election officials and sign a form that is sent to the counties by the Secretary of State. TEX. ELEC. CODE § 64.009. Generally, this provision means that the *driver* has to fill out the form, not any of the people being transported, and if the people transported actually go in the polling place to vote in-person (as many buses of voters from senior centers often do), no form is required. *See id.* Moreover, the seven-or-more threshold means that the rule will not apply to an average person driving a friend or family member, and nothing in this rule stops anyone from driving a bus to the polls for curbside voting or anyone from riding in that bus. Nevertheless, Plaintiffs' expert concluded that "Section 6.01 will cause some Texans with disabilities to be disenfranchised, and a further substantial number to face significant difficulties in voting that they would not otherwise face but for SB 1."[4] Notably, however, Dr. Kruse voluntarily admitted in his deposition that he did not "have direct data on how people are transported to the polls."[5] Even more telling, Dr. Kruse testified under oath that his research failed to actually study "whether requiring drivers to fill out a form will reduce the number of drivers available," and he did not even have "any specific data backing . . . up" his act of "hypothesizing."[6] On top of this speculation, Plaintiffs have still failed to establish that any disabled voter in Texas was unable to vote because their driver was required to sign under Section 6.01 or that such disabled voter was even unable to utilize curbside voting because of the signature requirement. Overall, Plaintiffs have identified no voter who said that

---

[3] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 209:21–210:3.
[4] ECF 642-2, Ex. 2, Kruse Report at ¶¶ 97–98.
[5] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 186:3–186:14.
[6] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 187:22–189:10.

this rule made it more difficult to vote, no activist group claimed that lack of transportation prohibited access to the polls, and the expert testimony is entirely hypothetical. As a result, Plaintiffs have failed to meet their burden of proof as to Section 6.01 of SB 1.

**Sections 6.03, 6.05, & 6.07.** Plaintiffs have likewise failed to prove that Sections 6.03, 6.05, and 6.07 violate the ADA or Rehabilitation Act. Section 6.03 requires anyone who assists voters, excluding election officers, to complete a form stating their name and address, their relationship to the voter, and whether they, the assistor, accepted compensation from a candidate, campaign, or political committee. Tex. Elec. Code § 64.0322. Similarly, Section 6.05 states a person who assists a voter in preparing a mail ballot must note on the carrier envelope their relationship to the voter and whether they received compensation or other benefit from candidate, campaign, or political committee. *Id.* § 86.010. And logically, Section 6.07 mandates a space on carrier envelopes to indicate relationship of assistor to the voter. *Id.* § 86.013. Notably, though, nothing in Section 6.05 stops a person from providing assistance; instead, this law merely requires that the assistance be disclosed. There is no penalty associated with being compensated for assistance if the assistor is a blood relative or lives with the individual. *Id.* § 86.010(h)(2). And while Plaintiffs hypothesize that these provisions of SB 1 will make a "clerical error or a minor mistake" more likely, *see* ECF 642 at 15, they have failed identify any instance of this occurring.

Plaintiffs have further failed to advance the argument that disabled voters are more likely to commit such "clerical errors or minor mistakes" than non-disabled voters. In fact, one of Plaintiffs' experts, Dr. Kruse, had not "done any research that show[ed], one way or the other, whether requiring mail-in voting assisters to fill out a form and disclose recipient of benefits would reduce the number of available assisters."[7] Dr. Kruse did not "analyze[] section 6.03 in practice in Texas," did not "talk[] to voters with disabilities to see how they found the provision," did not speak "to assisters who would

---

[7] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 196:17–196:21.

be subject to the provision," and did not even speak "to county election officials to see how this provision is implemented."[8] He also failed to undergo those fundamental steps for his research—or rather, lack thereof—on Section 6.05.[9] Given this abundance of suspicion and lack of evidence, Plaintiffs have failed to meet their burden of proof as to Sections 6.03, 6.05, and 6.07 of SB 1.

**Section 6.04.** Plaintiffs have also failed to prove that Section 6.04 violates the ADA or Rehabilitation Act. Section 6.04 amends the oath of assistance so that assistors now affirm that the oath is made under penalty of perjury, that the voter represented to them that the voter qualifies for assistance, that the assistor did not pressure or coerce the voter, that assistor will not disclose how the voter voted, and that the ballot may not count if the voter did not qualify for assistance. Tex. Elec. Code § 64.034. Importantly, though, similar oaths of assistance have been required for assistors at in-person voting since 1986. *See* Tex. Elec. Code § 64.034 (eff. Jan. 1, 1986, subsequently amended). Moreover, all oaths are sworn under penalty of perjury, so there is no harm from informing a signor of this fact because there is no special or additional burden. After all, the oath was not really changing the rules, as it is already a Class A misdemeanor if an assistor is:

(1) Providing assistance to a voter ineligible for assistance;
(2) Preparing the voter's ballot in a way other than the way the voter directs or without direction from the voter;
(3) Suggesting by word, sign, or gesture how the voter should vote; or
(4) Providing assistance to a voter who has not requested assistance or selected the person to assist the voter.

Tex. Elec. Code § 64.036 (a), (d). Thus, if an assistor is not breaking the law, then so stating under oath should not present any barriers—especially when there is no penalty associated with the oath if the assistor is a blood relative or lives with the individual. *Id.* § 86.010(h)(1). Moreover, Plaintiffs believe (wrongly) that Section 6.04 will inspire reluctance or confusion in voters, causing them to not receive or provide assistance. *See* ECF 642 at 14–15. But such an unreasonable interpretation of

---

[8] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 196:22–197:9.
[9] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 197:13–199:12.

Section 6.04 merits little to no weight, and such an allegation exists in theory, not in practice. Indeed, although Plaintiffs' expert witness, Kara Ayers, suspected that assistors would be dissuaded, she ultimately admitted that "not many" assistors would cease assisting voters due to the amended oath.[10] Therefore, Plaintiffs have failed to meet their burden of proof as to Section 6.04 of SB 1.

**Section 6.06.** Similarly, Plaintiffs have failed to establish that Section 6.06 denies voters meaningful access to voting. Section 6.06 states that a person commits an offense if the person compensates or offers to compensate someone for assisting a voter or solicits, receives, or accepts compensation for assisting voter, with exemptions for attendants or caregiver previously known to voter. Tex. Elec. Code § 86.0105. Plaintiffs report that voters and assistors are concerned about the specter of criminal penalties for their friends and caregivers, *see* ECF 642 at 15–16, but that assertion is unsupported, including by Plaintiffs' own expert. Dr. Kruse admitted that his own research "does not indicate" "how many friends, neighbors[,] and family members receive economic benefits for aiding somebody in voting."[11] In addition to his significant lack of research,[12] Dr. Kruse admitted that he was "not aware of any individual who was unable to find their assister of choice because of section 6.06,"[13] nor was he "aware of any specific individual who would have provided assistance to a voter but chose not to, because of section 6.06."[14] On top of this, Plaintiffs' complaint is based on an incorrect reading of the statute. Under a proper reading of the law, Plaintiffs' concerns fade, as paid caregivers would be exempt. Tex. Elec. Code § 86.0105(f). And the extent to which voters and assistors are overly cautious beyond what the law provides is neither the legal standard for adjudicating ADA claims nor traceable to the State. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013) (self-inflicted injuries based on speculation were not traceable to the statute). Therefore, because of Plaintiffs'

---

[10] *See* ECF 616-1, App. Y (Kara Ayers May 10, 2022 Dep.) at 173:22.
[11] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 204:8–204:11.
[12] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 205:7–207:20.
[13] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 207:21–207:24.
[14] ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 207:25–208:3.

hypotheticals and incorrect reading of the statute, they have failed to meet their burden as to Section 6.06 of SB 1.

**Sections 5.02 & 5.03.** Plaintiffs have failed to prove that Sections 5.02 and 5.03 violate the ADA or Rehabilitation Act. Section 5.02 amended § 84.002 of the Texas Election Code by requiring mail ballot applications to include either Social Security numbers or a Texas identification number which matches a voter's registration record before being accepted, Tex. Elec. Code § 84.002, while Section 5.03 mandated that mail ballot applications must have a space for a Social Security number or a Texas identification number, *id.* § 84.011(a). Plaintiffs argue that these provisions "make mail voting unnecessarily more difficult for voters with disabilities," *see* ECF 642 at 8, but they fail to establish that providing an identification number on ABBMs or mail-ballots is any more burdensome for voters with disabilities than providing it at registration, *see* 52 U.S.C. § 21083(a)(5)(A)(i), or providing other information that must go on ABBMs or mail-ballots for them to be complete, such as an address or zip code. Moreover, even if the requirement itself burdens voters, Plaintiffs introduced no specific evidence that merely having a place for the voter to insert additional personal information denies voters with disabilities meaningful access to the polls. Plaintiffs must carry their evidentiary burden as to each provision they challenge. They have not done so here.

**Section 5.06.** Plaintiffs have further failed to prove that Section 5.06 violates the ADA or Rehabilitation Act. Section 5.06 amended the Texas Election Code to permit election judges to allow voters to cancel their early mail ballot without returning it and voting in-person by provisional ballot.[15] Tex. Elec. Code § 84.035. Because voters can now vote provisionally in-person and cancel their mail-in ballot without having to return the original mail-in ballot, this provision removes a significant barrier to having votes count when a person who requested a mail-in ballot forgets the mail-in ballot, loses it,

---

[15] In their response, Plaintiffs alleged that, "[i]n describing Section 5.06, Defendants mistakenly refer to Section 84.035, which is Section 4.07 of SB 1." ECF No. 642 at 7 n.5. But they are the ones that are mistaken. Section 4.07 of SB 1 does not amend § 84.035; rather, it amends § 33.056 of the Texas Election Code.

or decides not to use it. And while Plaintiffs' expert theorizes that "voters who are voting by mail due to a disability *may* be unable to go in person to cure the defect for the same reason they did not vote in person,"[16] they fail to explain why giving voters this option harms voters with disabilities.[17]

In point of fact, the evidence goes the other way. For example, one of Plaintiffs' witnesses, Alice Penrod, testified during deposition that Section 5.06 allowed her to vote successfully by casting a provisional ballot in person during the November 8, 2022, general election, even though she forgot to bring her mail-ballot to the voting location. *See* ECF 616 at 13–14. Similarly, after being notified of a defect on their ABBM or mail ballot, two other Plaintiffs' witnesses—Ms. Anne Scott, the mother, and Ms. Taylor Scott, her daughter with cerebral palsy and partial blindness—testified that they were able to have their vote counted by voting in person, even though they originally tried to vote by mail and even though the daughter's physical disabilities generally kept her from leaving the house.[18] Therefore, given that Plaintiffs' bald assertions actually run counter to the evidence, Plaintiffs have failed to meet their burden of proof as to Section 5.06 of SB 1.

**Section 5.07.** Plaintiffs have additionally failed to prove that Section 5.07 violates the ADA or Rehabilitation Act. Section 5.07 requires early voting clerks to reject any mail ballot application if the numerical identifying information does not match the voter's registration record. Tex. Elec. Code § 86.001. Plaintiffs' experts generally surmised that SB 1's provisions "are likely to have a significant negative impact on many voters with disabilities."[19] But nowhere in his report does he point to a single Texas voter with a disability who was denied the opportunity to vote or excluded from voting due to a disability. In addition, even where Plaintiffs identified voters who had their mail ballot rejected, Plaintiffs conflate routine errors that can occur when an individual completes election materials with

---

[16] ECF 642-2, Ex. 2, Kruse Report at ¶ 92 (emphasis added)

[17] *See* ECF 616-1, App. K (Douglas Kruse May 3, 2022 Dep.) at 164:18–165:6 (confirming that he does not "have any evidence that [Section 5.06] would impede voting disabilities").

[18] *See* ECF 642-2, Ex. 13, Anne Scott Suppl. Decl. at ¶¶ 3, 7–9.

[19] ECF 642-2, Ex. 2, Kruse Report at ¶ 90.

a denial on account of a voter's disability. For example, Ms. Anne Scott entered her daughter's, Ms. Taylor Scott, passport number on her daughter's application. Ms. Taylor Scott was ultimately able to vote in person, but even focusing on mail-in voting, the error occurred because the requirement was new and unfamiliar, not because of Ms. Taylor Scott's disability.

**Sections 5.10 & 5.12.** Plaintiffs have also failed to prove that Sections 5.10 and 5.12 violate the ADA or Rehabilitation Act. Section 5.10 allows voters to correct or add their numerical identifying information on the application or mail ballot, Tex. Elec. Code § 86.015(c), while Section 5.12 creates a cure process for multiple ballot defects identified by county Signature Verification Committees, *id.* § 87.0271. Under these provisions, both the Election Clerk and the Signature Verification Committee can reach out to a voter to let him or her know there is an issue with the mail-in ballot to give the voter an opportunity to cure at different stages of the process. *Id.* §§ 86.001(f-1), 87.0271. Likewise, if the Signature Verification Committee finds an issue with the ballot, they can either send the ballot back to the voter or call or email them to come in and correct it before the seventh day after election day. *Id.* § 87.0271(b)–(d), (g). Through these opportunities to correct—along with the availability of an online tracking process to see if a ballot has been accepted and to correct a voter's information, *id.* § 86.015(c)—there is a reduced chance of simple errors that would disqualify a ballot. Essentially, these cure provisions, which were unavailable prior to SB 1, create a process for remedying any defects in a voter's ABBM or mail ballot, not just defects related to SB 1, meaning that these provisions are only a benefit to disabled voters, not a burden. So, enjoining these provisions in their entirety will hurt the same voters who benefit from these provisions and the same voters that Plaintiffs purport to protect.

### III.    The Failure to Engage with Defendants Prior to Litigation Defeats Plaintiffs' Failure to Accommodate Claim.

A plaintiff with a failure-to-accommodate claim must prove that (1) "the disability and its consequential limitations were known by the covered entity;" and (2) "the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 317. Plaintiffs have proven neither. Plaintiffs assert that there was no evidence that Defendants would have granted an accommodation. ECF 642 at 25-26. That is not the legal standard.

"[T]he ADA does not require clairvoyance." *Windham*, 875 F.3d at 236–37 (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995)). "In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (quoting 29 C.F.R. § 1630.9, App. (1995). The burden falls on plaintiffs to specifically "identif[y] their disabilities as well as the resulting limitations to a public entity or its employees and request[] an accommodation in direct and specific terms. *Smith*, 956 F.3d 317; *see also Windham*, 875 F.3d at 237. A failure to accommodate claim is "dead on arrival" if there is no request for accommodation. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F. 3d 570 (5th Cir. 2020); *see also Greer*, 472 Fed. Appx. at 294 ("[A] disabled individual . . . does not by default gain a prima facie case of discrimination under Title II merely because she is dissatisfied with her [accommodation] and makes no effort to ask the venue's staff … if she . . . can be accommodated.").

As courts have repeatedly observed, Plaintiffs in ADA cases should engage in good faith with government entities before rushing into court. *See Taylor*, 93 F.3d at 163 (holding that it is the initial request for an accommodation which triggers obligation to engage in the interactive process); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (noting that "an employer cannot be found to have violated [the law] when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer"); *see also Greer v. Richardson Ind. School Dist.*, 472 Fed.

Appx. 287, 294 (5th Cir. 2012) ("Asking a few questions of the [] venue's staff for more suitable accommodations is likely to be more effective and consistent with case law than remining silent and resorting to a Title II discrimination claim in the federal court system.").

Plaintiffs' failure to engage alone precludes relief because, in the absence of any request, the government entities could not know that additional modifications were needed beyond what the law already provided. Where, as here, no specific requests were made, Plaintiffs must rely on the fact that "'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Windham*, 875 F.3d at 237. Plaintiffs have presented no evidence that needs for additional accommodation beyond what the law already provided were "apparent" to the relevant government agents; they only turn to public testimony before the Texas Legislature as evidence that such alleged accommodations were apparent. ECF 642 at 40. Even assuming, *arguendo*, that Plaintiffs and their members had needs for accommodation beyond what Texas election law already provided, and that these needs were known, open, and obvious, the Plaintiffs have still failed to meet their burden to propose a facially reasonable modification. *See Riel v, Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (noting that "plaintiff bears the ultimate burden of proof on that issue"). Only if Plaintiffs meet their initial burden to propose a facially reasonable modification, must Defendants either make the modification or demonstrate that the modification would be an undue hardship or make a fundamental alteration to the program. *See id.*

Plaintiffs argue that even though *Smith* and *Windham* interpret Title II in cases against public entities, they do not apply because they deal with individuals rather than systemic discrimination. ECF 642 at 49–50. But the only precedent they offer is not binding on this Court and does not support Plaintiffs' position. ECF 642 at 49–50 (citing *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738–39 (9th Cir. 2021)). Plaintiffs cite *Payan* in support of the proposition that Plaintiffs need not request an

accommodation under the ADA because there is a difference between how the ADA treats Plaintiffs' systemic claim versus an individual claim. ECF 642 at 49. But Plaintiffs' cited authority does not—and could not—support such a position because, in *Payan*, the named individual Plaintiffs did request an accommodation. *Payan*, 11 F.4th at 732.

Plaintiffs also argue that Title II does not require that "a plaintiff's disability must have been 'known' to the defendant." ECF 642 at 50. The Fifth Circuit disagrees. In *Smith*, the Fifth Circuit held that under Title II, "[t]o succeed on a failure to accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 317 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (also a Title II case)). In fact, the Fifth Circuit has held that "[a] critical component of the Title II claim for failure to accommodate [] is proof that 'the disability and its consequential limitations were known by the entity providing public services'" *Windham*, 875 F.3d at 236. Binding Fifth Circuit precedent is clear: Title II requires knowledge of the disability and its limitations.

There is no evidence that Plaintiffs or their members informed State Defendants of their disabilities and resulting limitation or requested any reasonable accommodation. Plaintiffs further assert that there were many complaints about the voting process. ECF 642 at 27–29. Here, again, there is no evidence that a complaint or request made for an accommodation was denied.[20] The mere

---

[20] None of the Plaintiffs' referenced complaints resulted in denial of access to vote under SB1, and indeed, many affirm that election workers were faithfully trying to accommodate voters with special needs. ECF 642-2, Ex. 43 (Lauren Smith Deposition Excerpts, March 21, 2023) at 19:12–20:14 references three examples from Harris County, but two of them did not pertain to SB1. *Id.* at 19:5–9. In the third case, the individual was allowed to vote with assistance. *Id.* at 20:23–25. ECF 642-2, Ex. 46 (Isabel Longoria Deposition Excerpts, Morning April 20, 2022) at 72:25–73:12 describes an election judge's error in telling a voter requesting assistance that the assistance had to come from an election worker instead of the voter's chosen assistance, but the voter got to vote. *Id.* at 73:1–3. And the election judge was disciplined. *Id.* at 73:13–19. ECF 642-2, Ex. 47 (Lisa Wise Deposition Excerpts, April 13, 2022) at 183:27–184:3 describes a request for an audio ballot to be read differently from the prerecorded version that could not be accommodated, but there is no evidence that the voter making the request did not vote. ECF 642-2, Ex. 44 (Dan Hayes Deposition Excerpts, March 29, 2023) at 16:18–21 affirms that all requests for curbside voting at a given polling location were granted. ECF 642-2, Ex. 37 (Rachelle Obakozuwa Deposition Excerpts, March 21, 2023) at 57:21–58:1 merely recalls that the new provisions led to confusion and questions,

existence—much less the resulting limitations—of a disability is an individualized inquiry. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999) (overturned due to legislative action in 2009). Plaintiffs' assertions that the Challenged Provision must be enjoined under the ADA to remedy systemic discrimination against disabled individuals belie the textual requirements of the ADA. Plaintiff's argument that no request for accommodation is required should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants Motion for Summary Judgment and dismiss all claims brought pursuant to the ADA and § 504 of the Rehabilitation Act.

---

not that any particular person was denied access. ECF 642-2, Ex. 40 (Jennifer Colvin Deposition Excerpts, March 21, 2023) at 45:19–46:12 describes election accommodating voters who needed to cure a mail-in ballot by going out to their cars with a clipboard so they did not have to enter the building. ECF 642-2, Ex. 33 (Dallas County 30(b)(6) Tacoma Phillips Deposition Excerpts, April 13, 2023) at 103:2–105:17, 106:2–108:12 indicates that the new rules generated some questions, but again, the testimony does not indicate that anyone did not get to vote. ECF 642-2, Ex. 36 (Jacquelyn Callanen Deposition Excerpts, April 20, 2022) at 327:9–328:6 relates that a woman could not pick up a mail-in ballot for her paralyzed son (because it had to be mailed), but mysteriously, she did not request an accommodation on the basis of disability. ECF 642-2, Ex. 31 (Nancy Crowther Deposition Excerpts, June 17, 2022) at 30:24–33:1 relates the successful use of accommodations. Not one of these examples demonstrates that a voter who wanted to vote could not do so with the available accommodations.

Date: July 14, 2023

Respectfully submitted.

ANGELA COLMENERO
Provisional Attorney General of Texas

/s/ KATHLEEN T. HUNKER
KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RYAN G. KERCHER
Tex. State Bar No. 24060998
Deputy Chief, General Litigation Division

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

WILLIAM D. WASSDORF
Assistant Attorney General
Tex. State Bar No. 24103022

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
kathleen.hunker@oag.texas.gov
ryan.kercher@oag.texas.gov
will.wassdorf@oag.texas.gov

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 14, 2023, and that all counsel of record were served by CM/ECF.

/s/ KATHLEEN T. HUNKER
KATHLEEN T. HUNKER