**In the Matter Of:**

*La Union Del Pueblo Entero vs*

*Abbott*

---

*SUSAN FOUNTAIN*

*April 26, 2023*

---



1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3    LA UNIÓN DEL PUEBLO              §
      ENTERO, et al.,                  §
 4                                     §
                  Plaintiffs,          § CIVIL ACTION NO.:
 5                                     § 5:21-CV-0844-XR
      vs.                              §
 6                                     § (Consolidated Cases)
      GREGORY ABBOTT, et al.,          §
 7                                     §
                  Defendants.          §
 8

 9

10    *********************************************

11        HYBRID REALTIMED/VIDEOCONFERENCED

12          DEPOSITION OF SUSAN FOUNTAIN

13            INDIVIDUAL CAPACITY AND

14        AS CORPORATE REPRESENTATIVE OF

15       THE DALLAS COUNTY REPUBLICAN PARTY

16                 APRIL 26, 2023

17    *********************************************

18

19

20

21

22

23

24

25    Job No. 2023-894532
```

15

```
1   that you need to look over any exhibit.

2        A.   All right.  Thank you.  I appreciate that.

3        Q.   It's a little bit of an artificial

4   conversation.  It's hard to -- hard to do.

5        A.   Sorry.

6        Q.   No, that's okay.

7        A.   I can be trained.

8        Q.   And just let me know when you're through

9   looking through it.

10        A.   All right.

11        Q.   Okay.  Do you understand that you're here

12   testifying today as a representative of the Dallas

13   County Republican Party?

14        A.   I do.

15        Q.   Okay.  So if you could turn back to -- so

16   it's page 4 of Exhibit A of the first exhibit I

17   handed you, Exhibit 1 there.

18        A.   (Examined exhibit.)

19        Q.   So these are all the topics?

20        A.   It says, "Certificate of Service."

21        Q.   So go back a little bit further.

22        A.   (Complied.)  These?

23        Q.   And then flip to page 4.

24        A.   There's two page 4s.  (Complied.)  Okay.

25        Q.   Okay.  So do you understand that you've
```

1    as something --

2         A.    Nothing is jumping out at me.  Sorry.

3         Q.    Okay.  That's okay.

4                     Do you understand that you're also

5    being deposed in your personal capacity today?

6         A.    Yes.

7         Q.    Okay.

8         A.    Yes, I do.

9         Q.    Okay.  So to keep things clear.  I will

10   let you know when I'm asking you questions that

11   pertain to you, Susan Fountain, individually,

12   personal.

13                    And otherwise, can we agree that

14   you'll answer on behalf of the Dallas County

15   Republican Party?

16        A.    Yes.

17        Q.    Ms. Fountain, what did you do to prepare

18   for the deposition today?

19        A.    I spoke with Mr. Gore on several

20   occasions.

21        Q.    Okay.  And I don't want to know what you

22   talked about with your lawyers, but I would like to

23   know about how long you met with your lawyers?

24        A.    Overall?

25        Q.    Yes.

```
 1    at UT Dallas?

 2         A.    1982.

 3         Q.    Okay.  And then are you saying you went to

 4    college in San Antonio or to a college called

 5    San Antonio College?

 6         A.    I -- I went to San Antonio College in

 7    San Antonio, Texas.

 8         Q.    Okay.  And what years did you attend

 9    there?

10         A.    Sporadically over a few years while I was

11    working there.

12         Q.    Okay.  So that would have been prior to

13    1981?

14         A.    19 -- 1977 to 1981 when I moved.

15         Q.    Okay.  What is your current occupation?

16         A.    I'm the executive director of the Dallas

17    County Republican Party.

18         Q.    And what did you do before you were the

19    executive director for the Dallas County Republican

20    Party?

21         A.    I've been a self-employed -- sorry.

22         Q.    That's okay.

23         A.    I've been a self-employed -- a contract

24    accountant for small businesses in Dallas for the

25    last -- well, since I moved to -- to Dallas.
```

29

```
 1   susanwho@protonmail.com.   "Protonmail" is one word.

 2        Q.    Thank you.

 3                    And how long have you been the

 4   executive director of the Dallas County Republican

 5   Party?

 6        A.    August 1st, 2021.

 7        Q.    And how did you come to be in that

 8   position?

 9        A.    I was hired by our County chairman,

10   Jennifer Stoddard Hajdu.

11        Q.    And what are your roles and

12   responsibilities in that position?

13        A.    To communicate with Dallas County voters.

14   To communicate with precinct chairs.  To recruit

15   precinct chairs.  To recruit election workers.  To

16   assign election workers.  To -- I speak at a lot

17   of -- of various Republican groups on behalf of the

18   party.  I have been an election worker.  I am a

19   precinct chair.

20        Q.    Okay.  So you said that you do -- you

21   recruit and you -- do you do training as well as

22   part of your position?

23        A.    I do.

24        Q.    Okay.  Does anyone else at the Dallas

25   County Republican Party also have those same roles
```

41

```
1   through the state.
2        Q.   Okay.  And I see that you served on one of
3   those election integrity committees; is that right?
4        A.   No, I -- I don't recall being on that.
5        Q.   Okay.  Let's flip, then, to -- if you'll
6   look with me --
7        A.    I -- I may have been involved in it, but I
8   can't remember which one I was involved with.
9        Q.   Okay.  Well, if you'll flip with me to
10  Exhibit 3 that I handed you.
11       A.   (Complied.)  Uh-huh.
12       Q.   And if you'll flip to the -- the -- let's
13  see.  I have one, two -- third page under 2021.
14       A.   Um-hum.
15       Q.   It says, "Following the disastrous
16  November 2020 election, I served on the Legislative
17  Priorities Election Integrity Committee."
18       A.   Oh, okay.
19       Q.   Did I read that right?
20       A.   Of course, yeah.
21       Q.   Okay.
22       A.   I've served on many election integrity
23  committee members -- committees, so as a member or
24  being interested.  I'm sorry.  I'd forgotten that
25  one.  So this is -- this is pretty much a -- a very
```

48

1        A.   I don't believe I am.   AAA.

2        Q.   You served as an election judge; is that

3    right?

4        A.   Yes.

5        Q.   Okay.   Where have you served as an

6    election judge?

7        A.   In my neighborhood precinct location of

8    Wallace Elementary School.

9        Q.   How long have you served as an election

10   judge?

11       A.   I've served in several capacities over

12   many years.   I've served as a clerk.   I've served as

13   a presiding judge over the course of eight to ten

14   years.   Maybe more.   I can't remember.

15       Q.   Do you recall when you would have served

16   as a judge in particular?

17       A.   From a presiding judge?

18       Q.   Yes.

19       A.   From 2018 through 20- -- May -- March

20   of 2022.   The March primary last year was the last

21   time I served as a judge.

22       Q.   And when did you serve as a clerk?

23       A.   From 2008 through 2016.

24       Q.   And would these all have been at Wallace

25   Elementary School?

50

1   school?

2          A.   Yes.

3          Q.   So other than that time in the school in

4   Merriman Park, all the other times that you would

5   have served as a judge would have been at Wallace

6   Elementary?

7          A.   Wallace or Highland Meadows Elementary

8   School.  Those two.

9          Q.   Okay.  So I think you said you served as a

10  clerk at Highland Meadows?

11         A.   Yes.

12         Q.   And then did you also --

13         A.   The judge was at Wallace.

14         Q.   Wallace?

15         A.   Yes.

16         Q.   Thank you.

17         A.   Um-hum.

18         Q.   Have you ever served as a poll watcher?

19         A.   I have.

20         Q.   When did you serve as a poll watcher?

21         A.   From early 2019 until sometime in 2021.

22         Q.   Where did you serve?

23         A.   Central Count at Dallas County Elections

24  Department.

25         Q.   Are you familiar with the terms "block

52

```
 1    Luby Ryan.  Her predecessor, Jason Villalba.  Same

 2    House District.

 3              For Mayor of Dallas -- I'm trying to

 4    remember his name -- Mike Ablon.

 5              For Congress, Pete Sessions.

 6              For Congress, Jeb Hensarling.

 7              For State Senator, Don Huffines.

 8              Do you need more?

 9         Q.   If you recall more.

10         A.   District Attorney, Ken Paxton.

11              That's all I remember right now.

12         Q.   And when you walked block or canvassed for

13    these candidates, did you find that voters

14    recognized you when they opened the door?

15         A.   Of course.

16         Q.   Did you find yourself answering questions

17    of voters about how they should vote, meaning by

18    mail or in person?

19         A.   Yes.

20         Q.   Okay.  And what kind of questions would

21    you get?

22         A.   "How do I get a ballot by mail

23    application?"

24         Q.   And what would you tell those voters?

25         A.   I would direct them to the Elections
```

58

```
 1         A.   Yes.   Not all the time, every time.   Just
 2   when she didn't feel strong enough to -- to go
 3   herself.
 4         Q.   Approximately, how many times did you
 5   drive her to the polls?
 6         A.   Three or four.
 7         Q.   Do you recall the last time that you would
 8   have done so?
 9         A.   I don't.
10         Q.   Would it have been in the last two years?
11         A.   No.
12         Q.   So longer than two years?   Last five
13   years?
14         A.   That's the edge.   She's in an assisted
15   living center now, with dementia, unfortunately.
16         Q.   Ms. Fountain, do you expect to testify in
17   this case?
18         A.   I have no expectations.   If I'm asked, I
19   would be happy to testify.   If I'm not ...
20         Q.   Do you know what topics you would testify
21   on?
22         A.   Most likely my experiences as a poll
23   watcher in Central Count in Dallas County Elections
24   Department.
25         Q.   So you would expect your testimony to be
```

La Union Del Pueblo Entero vs
Abbott

Susan Fountain
April 26, 2023

59

```
 1    relevant just to Dallas County?

 2         A.    Yes.

 3         Q.    Okay.  So that's -- oh, go ahead.

 4         A.    And -- I'm sorry.

 5         Q.    What were you going to say?

 6         A.    That would be in respect to my personal

 7    experience and not as an employee of the Dallas

 8    County Republican Party since I have not poll

 9    watched since I've been executive director.

10         Q.    Do you expect to testify as representative

11    of the Dallas County Republican Party?

12         A.    If asked.

13         Q.    Do you know on what topics?

14         A.    Anything relevant to this case that I have

15    knowledge of.

16         Q.    So speaking as a representative of the

17    Dallas County Republican Party now, can you tell me

18    who you report to as the executive director?

19         A.    I report to the Dallas County Republican

20    Party Chairman, Jennifer Stoddard Hajdu, H-a-j-d-u.

21         Q.    And do you have a duty to report to the

22    Republican Party of Texas in your position?

23         A.    To the extent that I'm asked or -- or it's

24    relevant to the State Party.  We communicate with

25    our State Party Executive Director since we are on
```

1   There is a data and analytics committee chaired by

2   Dennis.  I'm trying to remember his last name.  I

3   can get his last name for you.  He's also a precinct

4   chair, so he's in our records.

5       Q.   Any other committees?

6       A.   We have a bylaws committee chaired by Dan

7   Pickens, P-i-c-k-e-n-s.  And we have a precinct

8   chair resource committee chaired by Troy Jackson.

9       Q.   What are the roles and responsibilities of

10  the election integrity committee?

11      A.   The roles and responsibilities of the

12  election integrity committee, as I understand them,

13  would be, to me, to review issues that have come up

14  with elections in mainly -- specific to Dallas

15  County and to discuss upcoming legislation if our

16  State legislature is in session.

17      Q.   How many people are on the election

18  integrity committee?

19      A.   I believe there are 20.

20      Q.   And you said Wes Bowen chairs that

21  committee?

22      A.   Yes, I did.

23      Q.   Is the election integrity committee

24  responsible for poll watcher recruitment?

25      A.   Yes.

1     Q.   Is he responsible for poll watcher

2  training?

3     A.   Yes.

4          Q.   Is there any other person or committee in

5     the Dallas County Republican Party that is

6     responsible for poll watcher recruitment or poll

7     watcher training?

8          A.   No.

9          Q.   And how long has Mr. Bowen held the chair

10    role?

11         A.   If I recall correctly, I believe he was

12    appointed by Missy Shorey, who was our party

13    chairwoman in 2017, through her death in April

14    of 2019.

15         Q.   And how many people are paid employees of

16    the Dallas County Republican Party?

17         A.   There are two.

18         Q.   One of them is you; is that correct?

19         A.   (Nodded head.)

20         Q.   And who is the other person?

21         A.   Mary Brooks.

22         Q.   Ms. Brooks is the executive assistant; is

23    that right?

24         A.   Yes.  Executive -- executive

25    administrator --

90

1    our elections go through a black box.  It goes in,

2    and we are not real sure of how it comes out on the

3    other end.

4         Q.   Have you given any presentations on SB 1?

5         A.   No.

6         Q.   Okay.  And then earlier you mentioned that

7    you had done quite a bit of block walking and

8    canvassing.

9         A.   Um-hum.

10        Q.   Have you ever received any compensation or

11   other benefit for acting as a block walker

12   canvasser?

13        A.   None at all.

14        Q.   Okay.  And then when you were block

15   walking or canvassing, did you ever help voters fill

16   out applications to vote by mail or mail ballots?

17        A.   Never.  Other than -- I did not fill it

18   out for them.  All I did was what -- interpret what

19   the -- the form said.  A lot of -- of people who

20   vote by mail are elderly, and that form can be

21   confusing sometimes, especially with providing one

22   form of ID on the ballot by mail or another.

23             Sometimes they forget if they put the

24   last four of their Social or their driver's license

25   number on the form, and they can't remember which

La Union Del Pueblo Entero vs                                    Susan Fountain
Abbott                                                           April 26, 2023

91

1    one.  So if they misremember, their ballot by mail

2    is rejected.  So that's basically the biggest

3    concern.

4         Q.   Okay.  And what do you tell them when you

5    interpret what should go on the form?

6         A.   What do I tell them?  I -- I advise them

7    to put both forms of ID on there in order to ensure

8    that their ballot is approved because it goes

9    through a scrutinization process.  And then when

10   they send their ballot back, their actual ballot by

11   mail, it has to match that ballot application.

12        Q.   Is there anything else you provided advice

13   on with respect to mail ballots?

14        A.   No.

15        Q.   Okay.

16        A.   They -- that -- except that they have to

17   mail it themselves.  I cannot take it and mail it

18   for them.

19        Q.   And when you -- and when you've provided

20   that assistance in interpreting what needs to go on

21   to the -- either the application of vote by mail or

22   the mail ballot, has that been part of your block

23   walking and canvassing that that's come up, or has

24   that been separate?

25        A.   That would be -- that would be separate.

93

1       Q.   I know that you can sign up to be a poll

2   watcher on the Dallas County Republican Party web

3   page; is that right?

4       A.   Yes.

5       Q.   Okay.  Is there any other way that the

6   Dallas County Republican Party recruits poll

7   watchers?

8       A.   Word of mouth.

9       Q.   Anything else?

10      A.   I don't recall any other.

11      Q.   And earlier you told me that when someone

12  provides information on the website, it kind of goes

13  into a repository or a list that is subject matter

14  based.

15           Would that be the same thing for

16  someone who signs up for poll watcher, you know,

17  being interested in being a poll watcher?

18      A.   Yes.

19      Q.   And the Dallas County Republican Party

20  provides in-person training for poll watchers; is

21  that right?

22      A.   Correct.

23      Q.   And is there written information or

24  training materials that you prepare for poll

25  watchers?

94

1        A.    It depends on what type of election it is.

2   The trainer would generally provide that.

3        Q.    So is there a standard training that's

4   provided?

5        A.    I think that Wes Bowen has used a

6   PowerPoint presentation before.  I remember asking

7   him to send it so that it can be, you know, reviewed

8   by counsel.

9        Q.    Do you know if it was produced in this

10  case?

11       A.    I -- I did not micromanage that process.

12  I asked, and I did not follow up to check -- to make

13  sure that every request was sent.  But I kind of

14  think that he sent it as asked.

15       Q.    It was forwarded for that purpose anyway?

16       A.    Yes.

17       Q.    Understood.  Who, besides Mr. Bowen,

18  provides poll watcher training?

19       A.    Under the window of the Dallas County

20  Republican Party?

21       Q.    Yes.

22       A.    I think that Wes Bowen is the only one who

23  does that.

24       Q.    And do you know if he drafted the

25  PowerPoint you mentioned?

95

1      A.   I do not.

2      Q.   Do you know who would have assisted with

3   that, if anyone?

4      A.   I do not.

5      Q.   Have you seen the PowerPoint training?

6      A.   Some parts of it, yes, I have.  I just

7   happened to be there at the time they gave the

8   training.  I've not committed it to memory, and I

9   don't have a copy of it.

10     Q.   Okay.  Prior to the enactment of SB 1, did

11  the Dallas County Republican Party provide training

12  about where a poll watcher could stand?

13     A.   Yes.

14     Q.   And what was that training?

15          MR. GORE:  I'm gonna object at this

16  point.  Dallas County Republican Party has asserted

17  a First Amendment privilege of the content of a poll

18  watcher training.  The content of that training has

19  never been divulged outside of the Dallas County

20  Republican Party and invited individuals.

21          We have logged it on our privilege log

22  as subject to First Amendment privilege.  At least

23  when it comes to the content of poll watcher

24  training, I instruct the witness not to answer those

25  questions.

96

```
 1   BY MS. CLOUD:

 2        Q.   Are you gonna follow your counsel's

 3   instruction?

 4        A.   Absolutely.

 5        Q.   As part of training prior to the enactment

 6   of SB 1, was there a training about what a poll

 7   watcher could observe?

 8        A.   Yes.

 9        Q.   Did that training change following the

10   enactment of SB 1?

11        A.   I believe it did.

12        Q.   And how did it change?

13            MR. GORE:   Again, I'm going to object

14   on First Amendment grounds and instruct the witness

15   not to answer.

16   BY MS. CLOUD:

17        Q.   Are you gonna follow your counsel's

18   instruction?

19        A.   Absolutely.

20        Q.   Does the Dallas County Republican Party

21   answer questions that poll watchers have about where

22   they can stand?

23        A.   Yes.

24        Q.   And does the Dallas County Republican

25   Party still give advice to poll watchers about where
```

La Union Del Pueblo Entero vs Abbott                     Susan Fountain
                                                         April 26, 2023

97

1   they can stand?

2        A.   Through our training, yes.

3        Q.   Does the Dallas County Republican Party

4   get questions from poll watchers that it appoints

5   about where they can stand?

6        A.   Yes.

7        Q.   Okay.  And does the Dallas County

8   Republican Party get questions from poll watchers

9   about what they can observe?

10       A.   Yes.

11       Q.   What kind of questions does the Dallas

12  County Republican Party get about what poll watchers

13  can observe?

14            MR. GORE:  I'm gonna object again on

15  the same basis as we're now getting into content of

16  trainings or advice that the Dallas County

17  Republican Party gives to its poll watchers.  That's

18  protected by the First Amendment.  Instruct the

19  witness not to answer.

20  BY MS. CLOUD:

21       Q.   Are you gonna follow your counsel's

22  instruction?

23       A.   Absolutely.

24       Q.   Okay.  Can a poll watcher address a voter

25  directly?

100

1      Q.   Are you gonna follow your counsel's

2  instruction?

3      A.   Absolutely.

4      Q.   I believe you told me earlier that you

5  didn't know if anyone else was involve in the

6  creation of the PowerPoint that Mr. Bowen uses for

7  training; is that right?

8      A.   Yes.

9      Q.   Okay.  Does anyone else at the -- at the

10  Dallas County Republican Party review those

11  materials?

12      A.   I don't know.

13      Q.   So I'm going to turn your attention to

14  what we'll mark as Exhibit -- what number are we at?

15  -- 5.

16            (Exhibit 5 marked.)

17  BY MS. CLOUD:

18      Q.   And I'm gonna turn your attention to

19  Section 4.07, which starts on page 27.  The part I

20  want to look at is on page 28.

21      A.   (Examined exhibit.)  Okay.

22      Q.   Okay.  So under SB 1, poll watchers "may

23  not be denied free movement where election activity

24  is occurring within the location where a watcher is

25  serving."

La Union Del Pueblo Entero vs Abbott

Susan Fountain
April 26, 2023

101

```
 1                 Did I read that correctly?
 2        A.   Where -- which section are you in?
 3          Q.   I'm sorry.  I'm in E.  So "watcher may not
 4   be denied free movement where election activity is
 5   occurring within the location where the watcher is
 6   serving."
 7                 Do you see that?
 8        A.   That's -- I agree that that's what that
 9   says.
10       Q.   Okay.  What do you understand "free
11   movement" to mean?
12        A.   That means that they can wander around,
13   stand close enough to observe.  They are not
14   restricted to a chair in the opposite corner of the
15   voting center.  They can observe the election clerks
16   as they check in voters as long as they do not
17   obstruct the duties of that election clerk.
18       Q.   And you said that means they can "stand
19   close enough to observe."
20                 Can you be more specific?
21                 MR. GORE:  I'm just gonna object to
22   this question to the extent it calls for a legal
23   opinion.
24   BY MS. CLOUD:
25       Q.   You can answer.
```

102

```
1        A.   I -- I prefer -- I don't have any specific
2   measurement personally.
3        Q.   Would you say it's less than 6 feet?
4        A.   Yes.
5        Q.   Less than 3 feet?
6             MR. GORE:  Same objection.
7        A.   It's -- it's a call of the poll watcher
8   at -- at that particular location.
9   BY MS. CLOUD:
10       Q.   So it could be 3 feet; it could be less?
11            MR. GORE:  Same objection.
12       A.   I -- I'm not sure of any specific
13  measurement.
14  BY MS. CLOUD:
15       Q.   And what is your understanding of where
16  election activity is incurring -- is occurring in a
17  polling place?
18            MR. GORE:  Same objection.
19       A.   There are different stations in every
20  polling location.  Every setup is different.
21  BY MS. CLOUD:
22       Q.   So can you give me a little bit more
23  information about how you personally would perceive
24  election activity and where that's occurring?
25            MR. GORE:  Objection to the extent it
```

La Union Del Pueblo Entero vs Abbott

Susan Fountain
April 26, 2023

103

```
 1   calls for a legal opinion.

 2        A.   I -- I don't have a personal opinion.

 3   Each voting center is different.

 4   BY MS. CLOUD:

 5        Q.   So you can't tell me any type of, you

 6   know, particular place in a polling center, any type

 7   of particular activity that could be going on, that

 8   you would identify as election activity and where

 9   that's occurring?

10             MR. GORE:   Same objection.

11        A.   The -- the entire room is an election

12   location.

13   BY MS. CLOUD:

14        Q.   And what do you feel is an appropriate

15   distance for a voter to stand -- for a poll watcher

16   to stand from a voter while checking in?

17             MR. GORE:   Objection to the extent it

18   calls for a legal opinion.  And objection on asked

19   and answered.

20   BY MS. CLOUD:

21        Q.   You can answer.

22        A.   Once again, it depends on the setup of the

23   room.  It's -- some rooms are smaller.  Some rooms

24   are much larger.  It's -- it's a -- it's a decision

25   made by the poll watcher at the time according to
```

La Union Del Pueblo Entero vs
Abbott

Susan Fountain
April 26, 2023

104

1    the circumstances and the venue.   There is no one

2    set.

3         Q.   Is there anything you can tell me that is

4    definitely an inappropriate distance, in your

5    opinion?

6                   MR. GORE:   Objection to the extent it

7    calls for a legal opinion.

8         A.   I would answer the same to that question

9    as well.

10   BY MS. CLOUD:

11        Q.   So there's no distance, to your mind, that

12   is -- that is always going to be too close; is that

13   right?

14                  MR. GORE:   Objection to the extent it

15   calls for a legal opinion.

16        A.   If they're gonna put their chin on their

17   shoulder and watch behind you, that's too close.   It

18   completely depends on the setup of the room.

19   BY MS. CLOUD:

20        Q.   And with respect to filling -- a voter

21   filling out their ballot, what do you think is an

22   appropriate distance to stand from a voter when

23   they're filling out their ballot?

24                  MR. GORE:   Same objection.

25        A.   A couple of feet, maybe.   Just to ensure

La Union Del Pueblo Entero vs Abbott

Susan Fountain
April 26, 2023

105

1   that they're not using a telephone in the voting

2   location, enough to observe that.  That no one else

3   is -- is trying to electioneer in the location.

4   BY MS. CLOUD:

5       Q.   Would the fact that a voter is speaking in

6   a foreign language would somewhat affect the

7   distance away from a voter that a poll watcher

8   should stand, in your opinion?

9           MR. GORE:  Same objection.  And object

10  to form.

11      A.   I don't think language would have any

12  bearing on the role of a poll watcher.

13  BY MS. CLOUD:

14      Q.   Okay.  So now I want to turn over to 4.09,

15  which is on page 29.

16      A.   (Complied.)

17      Q.   It says an election worker breaks the law

18  by "taking an action to obstruct the view" --

19      A.   What paragraph?

20      Q.   Oh, I'm sorry.  It's under A -- Subsection

21  A -- so Section 4.09, Subsection A.  Okay.  So about

22  halfway through the paragraph, it says an election

23  worker breaks the law if they (as read) "obstruct

24  the view of a watcher or at a distance from a

25  watcher from the activity or procedure to be

1   observed in a manner that would make observation not

2   reasonably effective."

3            Can you describe to me what actions an

4   election official might take that would obstruct the

5   view of a watcher of a activity or a procedure so

6   they're being observed in a manner that would not

7   make observation reasonable effective?

8            MR. GORE:  Objection to the extent it

9   calls for a legal opinion.  And object to form.

10       A.   It depends on the setup of the room.

11  BY MS. CLOUD:

12       Q.   Can you think of an example that might

13  make observation not reasonable effective?

14            MR. GORE:  Objection to the extent it

15  calls for a legal opinion.

16       A.   Depends on the setup of the room.

17  BY MS. CLOUD:

18       Q.   So as you sit here today, you can't think

19  of an example that might render observation not

20  reasonable effective?

21            MR. GORE:  Objection; mischaracterizes

22  testimony and to the extent it calls for a legal

23  conclusion.

24       A.   It would be an observation that would --

25  before SB 1, the presiding judges, more or less,

La Union Del Pueblo Entero vs
Abbott

Susan Fountain
April 26, 2023

107

1    subjected the poll watchers to sitting in a chair at

2    a -- an unreasonable distance away.  But I believe

3    that this makes a correction that we're there as

4    a -- a decision made on the setup of the room at the

5    end of -- that would make that arbitrary.

6    BY MS. CLOUD:

7         Q.   I'm sorry.  I want to make sure I

8    understood what you said.

9              (Examined realtime screen.)

10   BY MS. CLOUD:

11        Q.   Being, you know, put in a chair in a

12   specific spot could potentially make observation --

13        A.   Impossible.

14        Q.   Okay.  Anything else you can think of?

15        A.   No.

16        Q.   Does the Dallas County Republican Party

17   consider it within the scope of its -- of the duties

18   of a poll watcher to write down the names of voters

19   as they check in to vote?

20        A.   Absolutely not.

21        Q.   Does the Dallas County Republican Party

22   track the number of poll watcher violations or

23   potential infractions that are reported to it?

24             MR. GORE:  Object to form.

25        A.   Yes.

La Union Del Pueblo Entero vs
Abbott

Susan Fountain
April 26, 2023

115

1    ever had to do that?

2        A.   I -- I cannot remember if that specific

3    thing happened.

4        Q.   So I want to turn your attention to what

5    we'll mark as Exhibit 8.

6        A.   Okay.  I'll give these back to you, so I

7    don't ...

8                    (Exhibit 8 marked.)

9    BY MS. CLOUD:

10       Q.   Okay.  So this is an e-mail between

11   Michael Scarpello and Jennifer -- is it "Hey-do"?

12   Am I saying that correctly?

13       A.   "Hoy-do."

14       Q.   "Hoy-do."  I tried to get it right.

15       A.   It's okay.

16       Q.   Regarding Angela Robertson, who was

17   appointed to serve as an election judge in the May

18   7th, 2022, Constitutional Amendment and Joint

19   Election.  It was produced by your counsel and

20   marked as RCPI_0000361.

21                    Have you seen this e-mail before?

22       A.   (Examined exhibit.)  I believe I have.

23       Q.   Okay.  Is it a true and correct copy of

24   the e-mail between Mr. Scarpello and Jennifer Hajdu?

25       A.   I believe it is.

118

```
 1   issue?

 2                 MR. GORE:  Object to form.

 3        A.   It -- it was part of a long process.

 4   BY MS. CLOUD:

 5        Q.   And is that how the Dallas County

 6   Republican Party normally handles an individual who

 7   is not listening or cooperating with elections

 8   officials?

 9        A.   We try to cooperate with the Elections

10   Department and follow their guidelines.  And, yes,

11   we -- it's unfortunate that sometimes we have to

12   remove an election -- and she's a very good judge.

13   But if she's not gonna cooperate with the party or

14   the Elections Department, we have no choice.

15        Q.   Is there anyone else that has been removed

16   from your -- from the Dallas County Republican

17   Party's list of election workers?

18        A.   Not to my knowledge.

19        Q.   So is Ms. Robertson the only circumstance

20   you can think of where someone was no longer used?

21        A.   Yes.

22                 THE COURT REPORTER:  What was your

23   answer?

24                 THE WITNESS:  Yes.  Sorry.

25   BY MS. CLOUD:
```

123

```
 1        A.    We have an assignment priority that we
 2   implemented in November --
 3        Q.    Is that --
 4        A.    -- based on prior complaints.
 5        Q.    Would that be a list, or is that a rubric,
 6   or how?
 7        A.    I've not seen that.
 8        Q.    Who would have put that together?
 9        A.    Our chairman of our election integrity
10   committee.
11        Q.    Mr. Bowen?
12        A.    Yes.
13        Q.    Do poll watchers ever request to work in a
14   particular area or at a particular polling location?
15        A.    Yes.
16        Q.    Does the Dallas County Republican Party
17   accommodate those requests?
18        A.    Generally.
19        Q.    Does it matter whether those requests fall
20   within the assessment of priority?
21        A.    Not necessarily.
22        Q.    So if a person asks to go to a particular
23   location and say there had never been any particular
24   complaint so it was a low priority, the Dallas
25   County Republican Party might still assign them
```

124

1    there if they asked to be there; is that right?

2         A.   Yes.

3         Q.   Okay.  Is there as list available of where

4    poll watchers were placed in the 2020 general

5    election?

6         A.   I've never seen one.

7         Q.   Is there a list of where poll watchers

8    were placed in the 2022 general election?

9         A.   I have never seen that.

10        Q.   So turning to voter assistance, the Dallas

11   County Republican Party devotes resources to voter

12   education, immobilization, assistance, voter

13   turnout; is that right?

14        A.   Yes, I believe that to be correct.

15        Q.   And I believe earlier you told me that

16   there's no list that anyone works off of in terms of

17   block walking or canvassing; is that right?

18        A.   I've never seen one.

19        Q.   Okay.  And so anyone who wants to block

20   walk for the Dallas County Republican Party would

21   decide on their own where to go, where to start,

22   where to end; is that right?

23        A.   They coordinate that with each candidate.

24        Q.   Okay.  So that's not coming from the

25   Dallas County Republican Party?  That's coming from

127

1      for whom they know received a mail ballot?

2           A.    We don't track people who have requested

3      and/or received mail in ballots.  I believe they

4      call that ballot harvesting, which is, I believe,

5      against the law.  Not being an attorney.

6           Q.    If a block walker were to visit someone

7      that they knew had received a mail ballot, would

8      that block walker urge the voter to vote the ballot

9      and put it in the mail?

10          A.    I don't --

11               MR. GORE:   Sorry.  Let me just put an

12     objection on the record.  There's nothing in the

13     30(b)(6) notice about block walkers or about block

14     walking, so I understand these questions to be

15     directed to Ms. Fountain's personal capacity.  And,

16     of course, she can answer if she knows, but I don't

17     know the foundation has been laid either.  So I just

18     want to point out that we spent a lot of the

19     deposition on something that's not in the 30(b)(6)

20     notice.

21               Go ahead.

22          A.    They're not instructed to contact anyone

23     who has -- or we don't give that information to our

24     block walkers, that they have received or in the

25     process of receiving a ballot -- mail-in ballot.

1    employees -- that help bring voters to the polls on

2    election day?

3         A.   We don't have any set number of people.

4    We call people that could help drive a voter to the

5    polls if they call up to our office on -- at any

6    time.

7         Q.   And I think you said earlier that you had

8    driven someone to do curbside voting?

9         A.   Yes.

10        Q.   Are there other folks who are available to

11   help in that capacity as well?

12        A.   It would depend -- I'd -- it would depend

13   on either getting them to the polls or arranging

14   for the -- they do not help these -- if they do

15   drive someone to the polls, they do not help with

16   regard -- when I took my elderly friend to the

17   polls, I got out of the car and stood outside of the

18   car.

19             In fact, I -- I thought that the

20   election worker was gonna try to mark the ballot for

21   her.  She insisted on hovering over my friend while

22   she was voting.  So I asked her to step back and

23   give her some privacy, and she did.

24        Q.   Are you aware that voters who do not speak

25   English well may use assisters to help them vote?

1          A.   Yes, absolutely.

2          Q.   Does the Dallas County Republican Party

3   provide any language assistance to voters that don't

4   speak English well?

5          A.   Not to my knowledge.   Having been an

6   election judge, there's a phone in the election

7   judge's materials that if the presiding judge needs

8   help in that regard, they will hand the phone to the

9   voter who will speak directly to a native speaker of

10  their own language who is an employee of the

11  Elections Department.   And they help them explain

12  some things.   I don't know -- I don't understand

13  what they're talking about.

14         Q.   Is there a particular reason that the

15  Dallas County Republican Party does not provide

16  language assistance to voters who don't speak

17  English well?

18         A.   We have -- we have a limited number of

19  people who speak that language.   Mainly, people who

20  have trouble, the ballots are in three different

21  languages now: Spanish, English, and Vietnamese.

22  And if they have trouble reading that sample ballot,

23  which is also printed in that -- those three

24  languages, they, I believe, more often than not take

25  a family member who speaks the same language.

131

```
 1               That's -- that's always been my -- and

 2    then they have to sign at the polling place that

 3    they assisted that voter, and they have to sign

 4    their name.  And, usually, it's supposed to be a

 5    family member.  And I think that's even restricted

 6    to a mother, father, son, or daughter.  I don't

 7    think it's -- that they allow your second cousin by

 8    marriage to assist a voter.

 9         Q.   Have you had any communications with

10    Dallas County Republican Party members about

11    providing assistance to voters who don't speak

12    English well?

13         A.   We help where we can.  That's all I can

14    say.  If I know anybody who speaks Swahili and

15    somebody walks in and says, "Do you know anybody who

16    speaks Swahili?" I will give them a phone number.

17    Absolutely.

18         Q.   But in terms of talking with Republican

19    Party members -- Dallas County Republican Party

20    members, there's no specific guidelines or guidance

21    given with respect to this type of assistance; is

22    that right?

23         A.   We always offer advice to reach out to us

24    if they have a specific instance that they don't

25    know how to address.  Personally, I have a -- a
```

1    translation app on my phone that I can speak English

2    into it.  And it spits it out in whatever language I

3    ask it to, so ...  But I've never had to use that in

4    an actual voting center when I was presiding judge.

5        Q.   And what guidance does the Dallas County

6    Republican Party give about what to observe when

7    poll watchers are observing voters -- people giving

8    voter assistance to voters?

9             MR. GORE:  I'm going to object again

10   on First Amendment grounds.  It's getting into the

11   training of poll watchers.  I instruct the witness

12   not to answer.

13   BY MS. CLOUD:

14       Q.   Are you gonna follow your counsel's

15   instruction?

16       A.   Absolutely.

17       Q.   Can you tell me about any specific

18   instances of illegal voter assistance in polling

19   places that you have knowledge about personally?

20       A.   Would you repeat the question?

21       Q.   Yeah.  Do you have any specific

22   knowledge -- any knowledge of specific instances of

23   illegal voter assistance in a polling place?

24       A.   I have heard of illegal assistance, but

25   it's hearsay.

168

1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                   SAN ANTONIO DIVISION

3    LA UNIÓN DEL PUEBLO            §
     ENTERO, et al.,                §
4                                   §
              Plaintiffs,           § CIVIL ACTION NO.:
5                                   § 5:21-CV-0844-XR
     vs.                            §
6                                   § (Consolidated Cases)
     GREGORY ABBOTT, et al.,        §
7                                   §
              Defendants.           §
8

9

10       *******************************************

11       HYBRID REALTIMED/VIDEOCONFERENCED

12          DEPOSITION OF SUSAN FOUNTAIN

13            INDIVIDUAL CAPACITY AND

14        AS CORPORATE REPRESENTATIVE OF

15       THE DALLAS COUNTY REPUBLICAN PARTY

16               APRIL 26, 2023

17       *******************************************

18

19          CERTIFIED STENOGRAPHIC

20          COURT REPORTER'S CERTIFICATE

21

22      I, Karen L. D. Schoeve, Registered Diplomate

23  Reporter, Certified Realtime Reporter, and Realtime

24  Systems Administrator, residing in the State of

25  Texas, do hereby certify that the foregoing

169

1   proceedings were reported by me and that the

2   foregoing transcript constitutes a full, true, and

3   correct transcription of my stenographic notes, to

4   the best of my ability and hereby certify to the

5   following:

6        By agreement of all attending attorneys, the

7   witness, SUSAN FOUNTAIN, INDIVIDUAL CAPACITY AND AS

8   CORPORATE REPRESENTATIVE OF THE DALLAS COUNTY

9   REPUBLICAN PARTY, was duly sworn by the officer and

10  that the transcript of the oral deposition is a true

11  record of the testimony given by the witness;

12       That the original deposition was delivered to

13  Megan Cloud, custodial attorney;

14       That a copy of this certificate was served on

15  all parties and/or the witness shown herein on

16  _____.

17       I further certify that pursuant to FRCP No.

18  30(f)(i) that the signature of the witness was

19  requested by the witness or a party before the

20  completion of the deposition and the signature is to

21  be returned within 30 days from date of receipt of

22  the transcript.

23       If returned, the attached Changes and

24  Signature Page contains any changes and the reasons

25  therefor.

170

1         That pursuant to information given to the

2    deposition officer at the time said testimony was

3    taken, the following includes counsel for all

4    parties of record:

5

6    FOR PLAINTIFF LA UNIÓN DEL PUEBLO ENTERO:

7         MEGAN CLOUD, ESQUIRE
          WEIL, GOTSHAL & MANGES LLP
8

9    FOR PLAINTIFF HOUSTON AREA URBAN LEAGUE:

10        KENNETH E. BROUGHTON, ESQUIRE
          REED SMITH LLP
11

12   FOR DEFENDANT DALLAS COUNTY REPUBLICAN PARTY and THE
     WITNESS:
13
          JOHN M. GORE, ESQUIRE
14        JONES DAY

15

16   FOR STATE OF TEXAS, GOVERNOR GREG ABBOTT, ATTORNEY
     GENERAL WARREN PAXTON (OAG), AND SECRETARY OF STATE
17   JANE NELSON:

18        ETHAN SZUMANSKI, ASSISTANT ATTORNEY GENERAL
          (Appeared remotely via Zoom)
19        OFFICE OF THE ATTORNEY GENERAL OF TEXAS

     FOR BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE:
20
          LISA V. CUBRIEL, ESQUIRE
21        (Appeared remotely via Zoom)
          BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE
22

23

24

25

171

1          I further certify that I am neither counsel

2    for, related to, nor employed by any of the parties

3    in the action in which this proceeding was taken,

4    and further that I am not financially or otherwise

5    interested in the outcome of the action.

6

7          Subscribed and sworn to on this the 1st day of

8    May, 2023.

9

10

11

12

13

14    _____

15    Karen L.D. Schoeve, RDR, CRR
      Realtime Systems Administrator
      NCRA Exp. Date:  09-30-24

16    Lexitas Legal
      Firm Registration #736

17    999 Old Eagle School Road, Suite 118
      Wayne, Pennsylvania 19087

18    215-494-7650

19

20

21

22

23

24

25    Job No. 2023-894532

 My Account (/user-login-register)

## **Re-Elect Susan Fountain** (/)                                            ≡

# ABOUT SUSAN

HOME (/)


EXHIBIT
3

# About Susan Fountain, SREC SD-16 Committeewoman

### 2005-2006

Joined Lake Highlands Republican Women

### 2007-2008

LHRW Treasurer 2 years, Attended 1st RPT State Convention 2008

### 2009-2010

LHRW Membership Vice President; Attended RPT State Convention 2010

### 2010-2012

LHRW Treasurer 2 Years, Attended RPT State Convention 2012

### 2014-2015

LHRW President, 1st two-year term - Membership doubled, Attended RPT State Convention 2014

## 2016-2018

Dallas County Republican Party Treasurer, Attended RPT State Convention 2016 & 2018

## 2017-2018

Dallas County Council of Republican Women Treasurer, TFRW 2017 Convention Treasurer, Attended RPT State Convention 2018

LHRW President, 2nd two-year term

## 2018

2018  Elected to 1st term as SREC SD16 at June 2018 Convention.  Served on Legislative Priorities Committee.  This SREC Committee was focused on the 8 Legislative Priorities passed at the 2018 Republican Party of Texas State Convention in San Antonio, my 6th Convention.  Each Sub-Committee tracked bills from filing to final disposition in the 86th Legislative Session and I was Chair of our Sub-Committee "Abolish Abortion".  I also served on the Party Organization Committee tasked with rewriting Employee Handbook ensuring the resolution of Party Employees acting as activists at the mike during the Convention to implement changes to our Party Platform.  The Party Organization Committee also set out a plan to allocate $100,000 to fund website implementation for all 254 County Parties. Also served on  Engagement Committee, tasked with finding new methods of engaging communities within our own communities.  Full attendance of all eight quarterly SREC meetings in the full two-year term 2018 - 2020.

Additional 2018 Activities: While continuing to work full time as a contract accountant for small businesses, I served as Precinct Chair for Precinct 2064, reaching out to inform not only precinct 2064 but residents of other precincts in my Lake Highlands Community.  Launched DallasDecides2019, under Chairwoman Missy Shorey to bring information to Dallas residents of issues facing Dallas Police officers.  Sounded the alarm regarding the 7 City-wide Town Hall meetings to weaponize with funding the Community Police Reform Board (CPRB) now known as Community Police Oversight Board (CPOB).  Appearing at each of 7 Town Hall Meetings and speaking at Dallas City Council Meetings, we were successful in reducing the requested funding from $1.5 million to $375k. My goal was to engage the entire City of Dallas in supporting our Dallas Police rather than allow a group of very liberal and anti-police "Coalition Partners" to pressure the City Council into harassment of our police officers for not being "polite enough".

## 2019

Began working with the late Dallas County Republican Party Chairwoman Missy Shorey to expose the 'non-partisan' candidates of the 2019 Dallas City Council Election.  Using DallasDecides2019, we documented issues affecting Dallas residents and devised a candidate ranking system of liberal to conservative beginning with exposure of their well-documented voting records of Democrat and Republican primaries. Answered questions of thousands of voters who were always asking "For whom should I vote? There are no Rs or Ds."  Unfortunately, when Missy passed away unexpectedly, her successor immediately shut down many of our attempts to become more active in Dallas County elections.   We began recruiting precinct chairs to fill vacancies

and/or working with existing precinct chairs to become more active. Met with groups to show the way to getting involved. Campaigned for several Dallas City Council Candidates. Serving in Central Count as a watcher, I worked until 2am sometimes after completing my 15 hour day as an election judge.

## 2020

Covid shutdowns changed everything. I was very involved in Primary Election, serving as Election Judge. Served as a watcher in Central Count during March Primary election observing the flipping of flash drives from two separate locations, proving the existence of parallel Central Count and the compromising of live election votes. Spoke in an open Commissioner's Court meeting. Attended Precinct Convention, served on SD 16 Nominations Committee and attended SD16 Convention  Attended Virtual 2020 Republican Party of Texas Convention and re-elected to 2nd SREC term unopposed. We also elected a new RPT Chairman Allen West and I was extremely proud that he appointed me as Chair of the Party Organization Committee and also as a member of the very influential Officials Committee which serves the Party Chair as an interim committee to address all issues which cannot wait until a quarterly meeting. I have not yet missed a quarterly SREC meeting in 3 years. One of the highlights of 2020 was being awarded the  prestigious Conservative Leadership Award by Texas Scorecard. What an amazing honor!

## 2021

Following the disastrous November 2020 election, I served on the Legislative Priorities Election Integrity Committee. In the 87th Legislative Session, we watched our Heartbeat Bill pass, the strongest pro-life legislation ever passed in Texas, saving thousands of innocent lives. Constitutional Carry finally was passed.  No prohibition of Gender Modification Surgery was passed, which was extremely disappointing.  We immediately began implementing a plan for recruiting Dallas City Council candidates and began interviewing candidates in various homes scattered in North Dallas.  We were able to field a slate of 11 Republican candidates in 9 City Council Districts, and we could have flipped the majority from very liberal, very anti-police to a moderate/conservative slate of Republicans.  We were unable to increase our usually dismal municipal election voter turnout. Again while working as a contract Accountant and being Precinct Chair for 2064 and "ghost-chairing" Precinct 2063, I was also serving as a member of the Precinct Chair Vacancy Committee, and we have sworn in over 130 new precinct chairs while I have been serving on this committee.  Upon the resignation of Rodney Anderson, on July 29, we elected a new County Chairwoman, Jennifer Stoddard Hajdu.  What a breath of fresh air!  She immediately began the task of liquidating a $60,000 debt and reaching out to raise enough funds to keep the lights on and the rent paid.  She promptly hired me as her Executive Director, and I retired from my past life as a Contract Accountant to take the position, knowing the huge undertaking we were about to begin.  After I took a short vacation recuperating from 5 days in the ER at Medical City Hospital with covid and 5 days of homestay, Jennifer and I began the task of rebuilding the Dallas County Republican Party.  My voice in Dallas County as SREC for SD 16 suddenly quadrupled!  My role as SREC Party Organization Chair has served us well,  as my primary goal was to establish a credible website presence for all County Republican Party organizations throughout the entire State of Texas. Dallas County Republican Party was not only ineffective, outdated and woefully embarrassing for a County Party of our size, but there was no information on it and even our list of precinct chairs was incorrect.  My collaboration with fellow precinct

chair and 2020 convention delegate Bill Anderton began in September. I knew the BEST! We often met via telephone when I returned home in the evenings from the DCRP HQ and worked sometimes into the wee hours of the morning. We call him our master webmaster and Bill has worked tirelessly with us to now reach more than 44,000 Dallas County Republicans every month! His contribution is vast and he does it for the cause! We now have a world-class website valued at tens of thousands of dollars and we can never repay his service to the Party! Thank you so very much, Bill! You are truly our hero!

# 2022

Each and every day at Dallas County Republican Party, my role as SREC for SD-16 is in full swing and has guided me in implementing much change and we have now implemented many resources for our invaluable precinct chairs, who previously had no training, no data, no support, and no encouragement from our previous party leadership. We encourage vice-chairs to work in tandem with our precinct chairs, organizing precinct chairs within City Council Districts, all with the same goal: to reach our grassroots and get out the vote in Dallas County! Chair Jennifer Hajdu serves the cause; she and I are in the office every weekday. It is hard to imagine a more active and wonderful person with whom to work, an accomplished attorney focused on the same goal: to get Republicans elected in Dallas County! Jennifer works tirelessly for our Republican Party and always has a positive and happy outlook for Dallas County! We are often holding training classes at our Party HQ on many Saturdays. Since January, we began a method of vetting, training, and scheduling our election judges and clerks to ensure that all election workers were assigned in our March 1st Joint Primary, our May 7 Joint election, our May 24 Primary Runoff, and our upcoming June 18 School Board/Municipal Runoff. We are training new election workers every month and we will be ready for the upcoming November 1st Election! Our volunteers are heroes in our eyes and many have shown up to help us gather and enter data, answer the phone, etc. There is so much positive energy coming at us! The structure so lacking in Dallas County for many years is now taking place. People every day are learning that we get the government in which we participate! When we understand what the other side is doing when we are not paying attention, it makes us work all the harder to turn this ship around in Dallas County. I have never worked so hard or enjoyed what we are doing more! I am so grateful to Chair Jennifer Hajdu for giving me the opportunity to make a difference in Dallas County! Come and join us! I humbly ask for your support and your vote at the 2022 RPT Convention in Houston on June 16-18! Keep this unbelievable momentum going!

# VISION STATEMENT

Working all day, every day, for SD-16 to take back Dallas County.

FIRST NAME

LAST NAME

YOUR EMAIL

What is 7 + 5 ?

**ADD TO MAILING LIST**

There are no results.

[RSS icon]
(/blog-widget?rss=true)

## LATEST UPDATES

(//twitter.com/ilovelivesite)

## UPCOMING EVENTS

There are no upcoming calendar events.
[RSS icon]
(/calendar-widget?rss=true)

© Susan Fountain - All rights
reserved.

y   f   ⊕   in   ⏜



S.B. No. 1

1                          AN ACT

2   relating to election integrity and security, including by

3   preventing fraud in the conduct of elections in this state;

4   increasing criminal penalties; creating criminal offenses.

5        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6                   ARTICLE 1.  GENERAL PROVISIONS

7        SECTION 1.01.  SHORT TITLE.  This Act may be cited as the

8   Election Integrity Protection Act of 2021.

9        SECTION 1.02.  PURPOSE.  The purpose of this Act is to

10  exercise the legislature's constitutional authority under Section

11  4, Article VI, Texas Constitution, to make all laws necessary to

12  detect and punish fraud.

13       SECTION 1.03.  FINDINGS. The legislature finds that:

14            (1)  full, free, and fair elections are the

15  underpinnings of a stable constitutional democracy;

16            (2)  fraud in elections threatens the stability of a

17  constitutional democracy by undermining public confidence in the

18  legitimacy of public officers chosen by election;

19            (3)  reforms are needed to the election laws of this

20  state to ensure that fraud does not undermine the public confidence

21  in the electoral process;

22            (4)  the reforms to the election laws of this state made

23  by this Act are not intended to impair the right of free suffrage

24  guaranteed to the people of Texas by the United States and Texas

1

1 Constitutions, but are enacted solely to prevent fraud in the
2 electoral process and ensure that all legally cast ballots are
3 counted.  Integral to the right to vote is the assurance of voter
4 access and the right for all votes legally cast to be counted;

5          (5)  additionally, preventing a valid vote from being
6 counted violates the basic constitutional rights guaranteed to each
7 citizen by the United States Constitution; and

8          (6)  providing for voter access and increasing the
9 stability of a constitutional democracy ensures public confidence
10 in the legitimacy of public officers chosen by election.

11      SECTION 1.04.  Chapter 1, Election Code, is amended by
12 adding Section 1.0015 to read as follows:

13      Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the
14 legislature that the application of this code and the conduct of
15 elections be uniform and consistent throughout this state to reduce
16 the likelihood of fraud in the conduct of elections, protect the
17 secrecy of the ballot, promote voter access, and ensure that all
18 legally cast ballots are counted.

19      SECTION 1.05.  Section 1.003, Election Code, is amended by
20 adding Subsection (a-1) to read as follows:

21      (a-1)  Election officials and other public officials shall
22 strictly construe the provisions of this code to effect the intent
23 of the legislature under Section 1.0015.

24      SECTION 1.06.  Section 1.005, Election Code, is amended by
25 amending Subdivision (4-a) and adding Subdivision (4-b) to read as
26 follows:

27          (4-a)  "Election official" means:

2

1                    (A)  a county clerk;

2                    (B)  a permanent or temporary deputy county clerk;

3                    (C)  an elections administrator;

4                    (D)  a permanent or temporary employee of an

5    elections administrator;

6                    (E)  an election judge;

7                    (F)  an alternate election judge;

8                    (G)  an early voting clerk;

9                    (H)  a deputy early voting clerk;

10                   (I)  an election clerk;

11                   (J)  the presiding judge of an early voting ballot

12   board;

13                   (K)  the alternate presiding judge of an early

14   voting ballot board;

15                   (L)  a member of an early voting ballot board;

16                   (M)  the chair of a signature verification

17   committee;

18                   (N)  the vice chair of a signature verification

19   committee;

20                   (O)  a member of a signature verification

21   committee;

22                   (P)  the presiding judge of a central counting

23   station;

24                   (Q)  the alternate presiding judge of a central

25   counting station;

26                   (R)  a central counting station manager;

27                   (S)  a central counting station clerk;

S.B. No. 1

1           (T)  a tabulation supervisor;

2           (U)  an assistant to a tabulation supervisor; and

3           (V)  a chair of a county political party holding a
4  primary election or a runoff primary election.

5           (4-b)  "Federal judge" means:

6                (A)  a judge, former judge, or retired judge of a
7  United States court of appeals;

8                (B)  a judge, former judge, or retired judge of a
9  United States district court;

10                (C)  a judge, former judge, or retired judge of a
11  United States bankruptcy court; or

12                (D)  a magistrate judge, former magistrate judge,
13  or retired magistrate judge of a United States district court.

14           SECTION 1.07.  Section 1.018, Election Code, is amended to
15  read as follows:

16           Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to
17  Section 1.03, Penal Code, and to other titles of the Penal Code that
18  may apply to this code, Titles 2 and [Title] 4, Penal Code, apply
19  [applies] to offenses prescribed by this code.

20           SECTION 1.08.  Chapter 1, Election Code, is amended by
21  adding Section 1.022 to read as follows:

22           Sec. 1.022.  REASONABLE ACCOMMODATION OR MODIFICATION.  A
23  provision of this code may not be interpreted to prohibit or limit
24  the right of a qualified individual with a disability from
25  requesting a reasonable accommodation or modification to any
26  election standard, practice, or procedure mandated by law or rule
27  that the individual is entitled to request under federal or state

4

1   law.

2            ARTICLE 2.  REGISTRATION OF VOTERS

3        SECTION 2.01.  Section 13.002, Election Code, is amended by

4   adding Subsection (c-1) to read as follows:

5        (c-1)  The information required under Subsections (c)(3),

6   (4), (5), (6), and (8) must be supplied by the person desiring to

7   register to vote.

8        SECTION 2.02.  Section 13.007, Election Code, is amended to

9   read as follows:

10       Sec. 13.007.  FALSE STATEMENT ON APPLICATION.  (a)  A person

11  commits an offense if the person knowingly or intentionally:

12            (1)  makes a false statement; or

13            (2)  requests, commands, coerces, or attempts to induce

14  another  person  to  make  a  false  statement  on  a  registration

15  application.

16       (b)  An  offense  under  this  section  is  a  Class  A  [B]

17  misdemeanor, except that an offense under this section is a state

18  jail felony if the person:

19            (1)  directly  or  through  a  third  party  offers  or

20  provides  compensation  or  other  benefit  to  a  person  for  activity

21  described by Subsection (a); or

22            (2)  solicits,  receives,  or  accepts  compensation  or

23  other benefit for an activity described by Subsection (a).

24       (c)  If  conduct  that  constitutes  an  offense  under  this

25  section also constitutes an offense under another law, the actor

26  may be prosecuted under this section, the other law, or both. [For

27  purposes of this code, an offense under this section is considered

S.B. No. 1

1  ~~to be perjury, but may be prosecuted only under this section.~~]

2      SECTION 2.03.  Section 15.021, Election Code, is amended by

3  amending Subsections (b) and (d) and adding Subsections (d-1) and

4  (d-2) to read as follows:

5      (b)  Except as provided by Subsection (d), the [~~The~~] voter

6  shall   use   the   registration   certificate   or   a   registration

7  application form as the notice, indicating the correct information

8  in  the  appropriate  space  on  the  certificate  or  application  form

9  unless the voter does not have possession of the certificate or an

10  application form at the time of giving the notice.

11     (d)  A voter [~~who continues to reside in the county in which~~

12  ~~the voter is registered~~] may correct information under this section

13  by  digital  transmission  of  the  information  under  a  program

14  administered  by  the  secretary  of  state  and  the  Department  of

15  Information Resources.

16     (d-1)  If the notice indicates that a voter no longer resides

17  in the county in which the voter is registered, the registrar shall

18  forward the notice and the voter's application for registration to

19  the  registrar  of  the  county  in  which  the  voter  resides.   The

20  registrars  shall  coordinate  to  ensure  that  the  voter's  existing

21  registration is canceled immediately after the voter is registered

22  in  the  county  in  which  the  voter  resides  in  accordance  with

23  Subsection (d-2).

24     (d-2)  A  registrar  who  receives  a  voter's  notice  and

25  application  from  another  registrar  under  Subsection  (d-1)  shall

26  treat it as an original application for registration under Section

27  13.002, and shall register the voter if the voter resides in the

6

S.B. No. 1

1  county and is otherwise eligible under Section 13.001.

2      SECTION 2.04.  Section 15.028, Election Code, is amended to

3  read as follows:

4      Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO

5  PROSECUTOR].  [(a)]  If the registrar determines that a person who

6  is not eligible to vote registered to vote or [a registered voter]

7  voted in an election, the registrar shall, within 72 hours not

8  including weekends after making the determination, execute and

9  deliver to the attorney general, the secretary of state, and the

10  county or district attorney having jurisdiction in the territory

11  covered by the election an affidavit stating the relevant facts.

12      [(b)  If the election covers territory in more than one

13  county, the registrar shall also deliver an affidavit to the

14  attorney general.]

15      SECTION 2.05.  Section 16.0332, Election Code, is amended

16  by amending Subsection (a) and adding Subsections (a-1), (d), and

17  (e) to read as follows:

18      (a)  After the registrar receives notification [a list]

19  under Subsection (a-1) of this section, Section 18.068 of this

20  code, or Section 62.113, Government Code, of persons excused or

21  disqualified from jury service because of citizenship status or

22  notification of persons who indicate a lack of citizenship status

23  in connection with a motor vehicle or Department of Public Safety

24  record as provided by Subsection (a-1), the registrar shall deliver

25  to each registered voter whose name appears on the list a written

26  notice requiring the voter to submit to the registrar proof of

27  United States citizenship in the form of a certified copy of the

S.B. No. 1

1  voter's birth certificate, United States passport, or certificate
2  of naturalization or any other form prescribed by the secretary of
3  state.  The notice shall be delivered by forwardable mail to the
4  mailing address on the voter's registration application and to any
5  new address of the voter known to the registrar.

6       (a-1)  The secretary of state shall enter into an agreement
7  with the Department of Public Safety under which information in the
8  existing  statewide  computerized  voter  registration  list  is
9  compared against information in the database of the Department of
10  Public  Safety  on  a  monthly  basis  to  verify  the  accuracy  of
11  citizenship  status  information  previously  provided  on  voter
12  registration applications.  In comparing information under this
13  subsection, the secretary of state shall consider only a voter's
14  information in the database of the Department of Public Safety that
15  was derived from documents presented by the voter to the department
16  after the person's current voter registration became effective, and
17  may not consider information derived from documents presented by
18  the voter to the department before the person's current voter
19  registration became effective.

20       (d)  The  secretary  of  state  shall  prescribe  rules  for  the
21  administration of this section.

22       (e)  Not later than December 31 of each year, the secretary
23  of state shall provide a report to the legislature of the number of
24  voter registrations canceled under this section during the calendar
25  year.

26       SECTION 2.06.  Section 18.065, Election Code, is amended by
27  adding Subsections (e), (f), (g), (h), and (i) to read as follows:

8

S.B. No. 1

1     (e)  If the secretary of state determines that a voter
2  registrar is not in substantial compliance with a requirement
3  imposed on the registrar by a provision or rule described in
4  Subsection (a), the secretary of state shall:
5          (1)  for the first violation, require the registrar to
6  attend a training course under Subsection (h);
7          (2)  for the second violation, audit the voter
8  registration list for the county in which the registrar serves to
9  determine the actions needed to achieve substantial compliance
10  under Subsection (a) and provide the results of the audit to the
11  registrar; or
12          (3)  for a third or subsequent violation, if the
13  secretary of state determines that the registrar has not performed
14  any overt actions in pursuance of compliance with the actions
15  identified under Subdivision (2) as necessary for the registrar to
16  achieve substantial compliance under Subsection (a) within 14 days
17  of receiving the results of the audit conducted under that
18  subsection, inform the attorney general that the county which the
19  registrar serves may be subject to a civil penalty under Subsection
20  (f).
21     (f)  A county is liable to this state for a civil penalty of
22  $1,000 for each day after the 14th day following the receipt of the
23  results of the audit conducted under Subsection (e)(2) that the
24  county's voter registrar fails to take overt action to comply with
25  the actions identified under that subsection as necessary for the
26  registrar to achieve substantial compliance under Subsection (a).
27  The attorney general may bring an action to recover a civil penalty

9

1  imposed under this section.

2       (g)  A civil penalty collected by the attorney general under
3  this section shall be deposited in the state treasury to the credit
4  of the general revenue fund.

5       (h)  The secretary of state shall develop and implement a
6  training course for registrars on substantial compliance with
7  Sections 15.083, 16.032, and 18.061 and with rules implementing the
8  statewide computerized voter registration list.

9       (i)  The secretary of state shall adopt rules and prescribe
10  procedures for the implementation of this section.

11       SECTION 2.07.  Section 18.068, Election Code, is amended by
12  amending Subsection (a) and adding Subsection (a-1) to read as
13  follows:

14       (a)  The secretary of state shall quarterly compare the
15  information received under Section 16.001 of this code and Sections
16  [Section] 62.113 and 62.114, Government Code, to the statewide
17  computerized voter registration list.  If the secretary determines
18  that a voter on the registration list is deceased or has been
19  excused or disqualified from jury service because the voter is not a
20  citizen or a resident of the county in which the voter is registered
21  to vote, the secretary shall send notice of the determination
22  to the voter registrar of the counties considered appropriate by
23  the secretary.

24       (a-1)  The secretary of state is not required to send notice
25  under Subsection (a) for a voter who is subject to an exemption from
26  jury service under Section 62.106, Government Code, if that
27  exemption is the only reason the voter is excused from jury service.

S.B. No. 1

1    SECTION 2.08.  Section 31.006, Election Code, is amended to
2  read as follows:
3    Sec. 31.006.  REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.
4  (a)  If, after receiving or discovering information indicating that
5  [a complaint alleging] criminal  conduct  in  connection  with  an
6  election has occurred, the secretary of state determines that there
7  is reasonable cause to suspect that [the alleged] criminal conduct
8  occurred,  the  secretary  shall  promptly  refer  the  information
9  [complaint] to the attorney general.  The secretary shall deliver
10 to the attorney general all pertinent documents and information in
11 the secretary's possession.
12    (b)  The  documents  and  information  submitted  under
13 Subsection (a) are not considered public information until:
14      (1)  the secretary of state makes a determination that
15 the  information  [complaint]  received  does  not  warrant  an
16 investigation; or
17      (2)  if referred to the attorney general, the attorney
18 general has completed the investigation or has made a determination
19 that  the  information  [complaint]  referred  does  not  warrant  an
20 investigation.
21    SECTION 2.09.  Subchapter B, Chapter 87, Election Code, is
22 amended by adding Section 87.028 to read as follows:
23    Sec. 87.028.  ACCESS TO INFORMATION.   (a)  On  request,  a
24 county election official shall provide to a member of an early
25 voting  ballot  board  all  available  information  necessary  to
26 fulfilling the functions of the board, including any information
27 from the statewide computerized voter registration list under

11

S.B. No. 1

1    Section 18.061.

2         (b)  On request, a county election official shall provide to

3    a member of a signature verification committee all available

4    information necessary to fulfilling the functions of the committee,

5    including any information from the statewide computerized voter

6    registration list under Section 18.061.

7         (c)  The secretary of state shall adopt rules as necessary to

8    prevent a member of an early voting ballot board or signature

9    verification committee from retaining or sharing personally

10   identifiable information from the statewide computerized voter

11   registration list under Section 18.061 obtained under this section

12   for any reason unrelated to the official's official duties.

13        SECTION 2.10.  Section  62.113(b),  Government  Code,  is

14   amended to read as follows:

15        (b)  On the third business day of each month, the clerk shall

16   send a copy of the list of persons excused or disqualified because

17   of citizenship in the previous month to:

18             (1)  the voter registrar of the county;

19             (2)  the secretary of state; and

20             (3)  the county or district attorney[, as applicable,]

21   for an investigation of whether the person committed an offense

22   under Section 13.007, Election Code, or other law.

23        SECTION 2.11.  Sections 62.114(b) and (c), Government Code,

24   are amended to read as follows:

25        (b)  On the third business day of each month, the clerk shall

26   send [to the voter registrar of the county] a copy of the list of

27   persons excused or disqualified in the previous month because the

12

S.B. No. 1

1  persons do not reside in the county to:

2            (1)   the voter registrar of the county; and

3            (2)   the secretary of state.

4       (c)  A list compiled under this section may not be used for a

5  purpose other than a purpose described by Subsection (b) or Section

6  15.081 or 18.068, Election Code.

7            ARTICLE 3.  CONDUCT AND SECURITY OF ELECTIONS

8       SECTION 3.01.  Section 2.053(a), Election Code, is amended

9  to read as follows:

10      (a)  On receipt of the certification, the governing body of

11 the political subdivision by order or ordinance shall [may] declare

12 each unopposed candidate elected to the office.  If no election is

13 to be held on election day by the political subdivision, a copy of

14 the order or ordinance shall be posted on election day at each

15 polling place used or that would have been used in the election.

16      SECTION 3.02.  Section 2.056(c), Election Code, is amended

17 to read as follows:

18      (c)  A certifying authority shall [may] declare a candidate

19 elected to an office of the state or county government if, were the

20 election held, only the votes cast for that candidate in the

21 election for that office may be counted.

22      SECTION 3.03.  Sections 43.007(c) and (d), Election Code,

23 are amended to read as follows:

24      (c)  In conducting the program, the secretary of state shall

25 provide for an audit of the voting system equipment [direct

26 recording electronic voting units] before and after the election,

27 and during the election to the extent such an audit is practicable.

13

S.B. No. 1

1      (d)  The secretary of state shall select to participate in

2  the program each county that:

3          (1)  has held a public hearing under Subsection (b);

4          (2)  has submitted documentation listing the steps

5  taken to solicit input on participating in the program by

6  organizations or persons who represent the interests of voters;

7          (3)  has implemented a computerized voter registration

8  list that allows an election officer at the polling place to verify

9  that a voter has not previously voted in the election;

10        (4)  uses direct recording electronic voting machines,

11  ballot marking devices, or hand-marked scannable paper ballots that

12  are printed and scanned at the polling place or any other type of

13  voting system equipment that the secretary of state determines is

14  capable of processing votes for each type of ballot to be voted in

15  the county; and

16        (5)  is determined by the secretary of state to have the

17  appropriate technological capabilities.

18      SECTION 3.04.  Section 43.031(b), Election Code, is amended

19  to read as follows:

20      (b)  Each polling place shall be located inside a building.

21  No voter may cast a vote from inside a motor vehicle unless the

22  voter meets the requirements of Section 64.009.

23      SECTION 3.05.  Section 52.092(a), Election Code, is amended

24  to read as follows:

25      (a)  Except as provided by Section 2.053(c) or 2.056(e), for

26  [For] an election at which offices regularly filled at the general

27  election for state and county officers are to appear on the ballot,

14

S.B. No. 1

1  the offices shall be listed in the following order:

2          (1)  offices of the federal government;

3          (2)  offices of the state government:

4                  (A)  statewide offices;

5                  (B)  district offices;

6          (3)  offices of the county government:

7                  (A)  county offices;

8                  (B)  precinct offices.

9          SECTION 3.06.  Section 61.002, Election Code, is amended to

10  read as follows:

11          Sec. 61.002.  OPENING AND CLOSING POLLING PLACE FOR VOTING.

12  (a)  Immediately before opening the polls for voting on the first

13  day of early voting and on election day, the presiding election

14  judge or alternate election judge shall confirm that each voting

15  machine has any public counter reset to zero and shall print the

16  tape that shows the counter was set to zero for each candidate or

17  measure on the ballot.

18          (b)  At the official time for opening the polls for voting,

19  an election officer shall open the polling place entrance and admit

20  the voters.

21          (c)  Immediately after closing the polls for voting on

22  election day, the presiding election judge or alternate election

23  judge shall print the tape to show the number of votes cast for each

24  candidate or ballot measure for each voting machine.

25          (d)  Each election judge or alternate election judge present

26  shall sign a tape printed under this section.

27          SECTION 3.07.  Section 64.007(c), Election Code, is amended

S.B. No. 1

1  to read as follows:

2      (c)  An election officer shall maintain a register of spoiled

3  ballots at the polling place.  An election officer shall enter on

4  the register the name of each voter who returns a spoiled ballot and

5  the spoiled ballot's number.  The secretary of state shall create

6  and promulgate a form to be used for this purpose.

7      SECTION 3.08.  Subchapter A, Chapter 66, Election Code, is

8  amended by adding Section 66.004 to read as follows:

9      Sec. 66.004.  POLLING PLACE CHECKLISTS.  The secretary of

10 state shall adopt rules and create a checklist or similar

11 guidelines to assist the presiding judge of a polling place in

12 processing forms and conducting procedures required by this code at

13 the opening and closing of the polling place.

14     SECTION 3.09.  Section 85.005, Election Code, is amended to

15 read as follows:

16     Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING.  (a)  Except

17 as provided by Subsection (c), in an election in which a county

18 clerk [or city secretary] is the early voting clerk under Section

19 83.002 [or 83.005], early voting by personal appearance at the main

20 early voting polling place shall be conducted on each weekday of

21 [the weekdays of] the early voting period that is not a legal state

22 holiday and for a period of at least nine hours, except that voting

23 may not be conducted earlier than 6 a.m. or later than 10 p.m.

24 [during the hours that the county clerk's or city secretary's main

25 business office is regularly open for business.]

26     (b)  In an election to which Subsection (a) does not apply,

27 early voting by personal appearance at the main early voting

16

S.B. No. 1

1 polling place shall be conducted at least <u>nine</u> [~~eight~~] hours each

2 weekday of the early voting period that is not a legal state holiday

3 unless the territory covered by the election has fewer than 1,000

4 registered voters.  In that case, the voting shall be conducted at

5 least <u>four</u> [~~three~~] hours each day.  The authority ordering the

6 election, or the county clerk if that person is the early voting

7 clerk, shall determine which hours the voting is to be conducted.

8       (c)  In a county with a population of <u>55,000</u> [~~100,000~~] or

9 more, the voting in a primary election or the general election for

10 state and county officers shall be conducted at the main early

11 voting polling place for at least 12 hours on each weekday of the

12 last week of the early voting period, and the voting in a special

13 election ordered by the governor shall be conducted at the main

14 early voting polling place for at least 12 hours on each of the last

15 two days of the early voting period.  <u>Voting under this subsection</u>

16 <u>may not be conducted earlier than 6 a.m. or later than 10 p.m.</u>

17 Voting shall be conducted in accordance with this subsection in

18 those elections in a county with a population under <u>55,000</u>

19 [~~100,000~~] on receipt by the early voting clerk of a written request

20 for the extended hours submitted by at least 15 registered voters of

21 the county.  The request must be submitted in time to enable

22 compliance with Section 85.067.

23       (d)  <u>A voter who has not voted before the scheduled time for</u>

24 <u>closing a polling place is entitled to vote after that time if the</u>

25 <u>voter is in line at the polling place by closing time.  The</u>

26 <u>secretary of state shall promulgate any materials and provide any</u>

27 <u>training to presiding judges necessary to properly process voters</u>

S.B. No. 1

1   under this subsection [In an election ordered by a city, early

2   voting by personal appearance at the main early voting polling

3   place shall be conducted for at least 12 hours:

4           [(1) on one weekday, if the early voting period

5   consists of less than six weekdays; or

6           [(2) on two weekdays, if the early voting period

7   consists of six or more weekdays].

8        SECTION 3.10.  Sections 85.006(b) and (e), Election Code,

9   are amended to read as follows:

10       (b)  In an election in which a county clerk [or city

11   secretary] is the early voting clerk under Section 83.002 [or

12   83.005], only the early voting clerk may order voting on a Saturday

13   or Sunday.  The clerk must do so by written order.

14       (e)  In a primary election or the general election for state

15   and county officers in a county with a population of 55,000

16   [100,000] or more, the early voting clerk shall order voting by

17   personal appearance [voting] at the main early voting polling place

18   to be conducted on the last Saturday of the early voting period for

19   at least 12 hours, except that voting may not be conducted earlier

20   than 6 a.m. or later than 10 p.m., [on the last Saturday] and on the

21   last Sunday of the early voting period for at least six [five]

22   hours, except that voting may not be conducted earlier than 9 a.m.

23   or later than 10 p.m [on the last Sunday of the early voting

24   period].  The early voting clerk shall order voting to be conducted

25   at those times in those elections in a county with a population

26   under 55,000 [100,000] on receipt of a written request for those

27   hours submitted by at least 15 registered voters of the county.  The

1  request must be submitted in time to enable compliance with Section

2  85.007.    This    subsection    supersedes    any    provision    of    this

3  subchapter to the extent of any conflict.

4      SECTION 3.11.  Section  85.010(a-1),  Election  Code,  is

5  amended to read as follows:

6      (a-1)  In this section, "eligible county polling place"

7  means an early voting polling place[, other than a polling place

8  established under Section 85.062(e),] established by a county.

9      SECTION 3.12.  Section 85.061(a), Election Code, is amended

10  to read as follows:

11      (a)  In a countywide election in which the county clerk is

12  the  early  voting  clerk  under  Section  83.002,  an  early  voting

13  polling place shall be located inside [at] each branch office that

14  is regularly maintained for conducting general clerical functions

15  of the county clerk, except as provided by Subsection (b).  If a

16  suitable room is unavailable inside the branch office, the polling

17  place may be located in another room inside the same building as the

18  branch office.

19      SECTION 3.13.  Section 85.062, Election Code, is amended by

20  amending Subsection (b) and adding Subsection (f-1) to read as

21  follows:

22      (b)  A polling place established under this section may be

23  located, subject to Subsection (d), at any place in the territory

24  served by the early voting clerk and may be located inside [in] any

25  building [stationary structure] as directed by the authority

26  establishing the branch office.  The polling place may not be

27  located in a movable structure in the general election for state and

19

S.B. No. 1

1 county officers, general primary election, or runoff primary

2 election. Ropes or other suitable objects may be used at the

3 polling place to ensure compliance with Section 62.004. Persons

4 who are not expressly permitted by law to be in a polling place

5 shall be excluded from the polling place to the extent practicable.

6  (f-1) Notwithstanding any other provision of this section

7 concerning the location of temporary branch polling places, in an

8 election in which countywide polling places are used, the

9 commissioners court of a county shall employ the same methodology

10 it uses to determine the location of countywide polling places to

11 determine the location of temporary branch polling places.

12  SECTION 3.14. Section 87.002, Election Code, is amended to

13 read as follows:

14  Sec. 87.002. COMPOSITION OF BOARD. (a) The early voting

15 ballot board consists of a presiding judge, an alternate presiding

16 judge, and at least one [two] other member [members].

17  (b) Except as provided by Subsection (d), the presiding

18 judge and the alternate presiding judge are [is] appointed in the

19 same manner as a presiding election judge and alternate presiding

20 election judge, respectively. Except as provided by Subsection

21 (c), each [the] other member is [members are] appointed by the

22 presiding judge in the same manner as the precinct election clerks.

23  (c) In the general election for state and county officers,

24 each county chair of a political party with nominees on the general

25 election ballot shall submit to the county election board a list of

26 names of persons eligible to serve on the early voting ballot board

27 in order of the county chair's preference. The county election

20

S.B. No. 1

1  board shall appoint at least one person from each list to serve as a
2  member of the early voting ballot board.  The same number of members
3  must be appointed from each list.  The county election board shall
4  appoint persons as members of the early voting ballot board in the
5  order of preference indicated on each list.

6      (d)  In addition to the members appointed under Subsection
7  (c), the county election board shall appoint as the presiding judge
8  the highest-ranked person on [from] the list provided under that
9  subsection by the political party whose nominee for governor
10  received the most votes in the county in the most recent
11  gubernatorial general election and as the alternate presiding judge
12  the highest-ranked person on the list provided under that
13  subsection by the political party whose nominee for governor
14  received the second most votes in the county in the most recent
15  gubernatorial general election.

16      SECTION 3.15.  Section 124.002, Election Code, is amended by
17  adding Subsection (c) to read as follows:

18      (c)  Voting system ballots may not be arranged in a manner
19  that allows a political party's candidates to be selected in one
20  motion or gesture.

21      SECTION 3.16.  Sections 127.006(a) and (c), Election Code,
22  are amended to read as follows:

23      (a)  The [Both the] manager, [and] the presiding judge, and
24  the alternate presiding judge may appoint clerks to serve at the
25  central counting station.

26      (c)  A clerk appointed by the manager serves under the
27  manager and shall perform the functions directed by the manager.  A

S.B. No. 1

1  clerk appointed by the presiding judge or the alternate presiding

2  judge serves under the presiding judge and shall perform the

3  functions directed by the presiding judge.

4      SECTION 3.17.  Subchapter A, Chapter 127, Election Code, is

5  amended by adding Section 127.009 to read as follows:

6      Sec. 127.009.  ELECTRONIC  DEVICES  IN  CENTRAL  COUNTING

7  STATION. (a)  A counting station manager and the presiding judge of

8  the counting station shall develop a protocol under which any

9  electronic device inside a central counting station that is

10 necessary to count votes is equipped with software that tracks all

11 input and activity on the electronic device.

12     (b)  The counting station manager and the presiding judge of

13 the counting station shall ensure that the input and activity

14 tracked by the software is delivered to the secretary of state not

15 later than the fifth day after vote counting is complete.

16     (c)  This section applies only to a central counting station

17 located in a county with a population of 250,000 or more.

18     SECTION 3.18.  Section 127.1232, Election Code, is amended

19 to read as follows:

20     Sec. 127.1232.  SECURITY OF VOTED BALLOTS.  (a)  The general

21 custodian of election records shall post a licensed peace officer

22 [guard] to ensure the security of ballot boxes containing voted

23 ballots throughout the period of tabulation at the central counting

24 station.

25     (b)  The general custodian of election records in a county

26 with a population of 100,000 or more shall implement a video

27 surveillance system that retains a record of all areas containing

S.B. No. 1

1   voted ballots:

2           (1)   from the time the voted ballots are delivered to

3   the central counting station until the canvass of precinct election

4   returns; and

5           (2)   from the time the voted ballots are delivered to

6   the signature verification committee or early voting ballot board

7   until the canvass of precinct election returns.

8       (c)   A video from a system implemented under Subsection (b)

9   shall be made available to the public by a livestream.

10      (d)   The video recorded is an election record under Section

11  1.012 and shall be retained by the general custodian of election

12  records until the end of the calendar year in which an election is

13  held or until an election contest filed in the county has been

14  resolved, whichever is later.

15      SECTION 3.19.   Chapter 127, Election Code, as effective

16  September 1, 2021, is amended by adding Subchapter J to read as

17  follows:

18              SUBCHAPTER J.  RANDOMIZED AUDITS

19      Sec. 127.351.   RANDOMIZED COUNTY AUDITS.   (a)   Immediately

20  after the uniform election date in November of an even-numbered

21  year, the secretary of state shall conduct an audit of the elections

22  held in four counties during the previous two years.

23      (b)   The secretary of state shall select the counties to be

24  audited under Subsection (a) at random, except that:

25          (1)   two of the counties selected must have a total

26  population of less than 300,000;

27          (2)   two of the counties selected must have a total

23

S.B. No. 1

1  population of 300,000 or more; and

2        (3)  a county selected in the most recent audit cycle

3  may not be selected in the current audit cycle.

4      (c)  A county selected to be audited may not pay the cost of

5  performing an audit under this section.

6      (d)  The secretary of state shall adopt rules as necessary to

7  implement this section.

8           ARTICLE 4.  ELECTION OFFICERS AND OBSERVERS

9      SECTION 4.01.  Section 32.075, Election Code, is amended by

10  adding Subsections (g) and (h) to read as follows:

11      (g)  A presiding judge may not have a watcher duly accepted

12  for service under Subchapter A, Chapter 33, removed from the

13  polling place for violating a provision of this code or any other

14  provision of law relating to the conduct of elections, other than a

15  violation of the Penal Code, unless the violation was observed by an

16  election judge or clerk.

17      (h)  Notwithstanding Subsection (g), a presiding judge may

18  call a law enforcement officer to request that a poll watcher be

19  removed if the poll watcher commits a breach of the peace or a

20  violation of law.

21      SECTION 4.02.  Subchapter A, Chapter 33, Election Code, is

22  amended by adding Section 33.0015 to read as follows:

23      Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.   The

24  purpose of this chapter is to preserve the integrity of the ballot

25  box in accordance with Section 4, Article VI, Texas Constitution,

26  by providing for the appointment of watchers.  It is the intent of

27  the legislature that watchers duly accepted for service under this

24

S.B. No. 1

1  chapter be allowed to observe and report on irregularities in the

2  conduct of any election, but may not interfere in the orderly

3  conduct of an election. To effect that purpose, a watcher appointed

4  under this chapter shall observe without obstructing the conduct of

5  an election and call to the attention of an election officer any

6  observed or suspected irregularity or violation of law in the

7  conduct of the election.

8      SECTION 4.03.  Subchapter A, Chapter 33, Election Code, is

9  amended by adding Section 33.0016 to read as follows:

10     Sec. 33.0016.  REFERENCES TO EARLY VOTING BALLOT BOARD IN

11  THIS CHAPTER. A reference in this chapter to an early voting ballot

12  board includes a signature verification committee.

13     SECTION 4.04.  Subchapter A, Chapter 33, Election Code, is

14  amended by adding Section 33.008 to read as follows:

15     Sec. 33.008.  TRAINING PROGRAM. The secretary of state

16  shall develop and maintain a training program for watchers. The

17  training program must:

18          (1)  be available:

19              (A)  entirely via the Internet; and

20              (B)  at any time, without a requirement for prior

21  registration; and

22          (2)  provide a watcher who completes the training with

23  a certificate of completion.

24     SECTION 4.05.  Section 33.031, Election Code, is amended by

25  adding Subsection (b) to read as follows:

26     (b)  In addition to the requirements of Subsection (a), to be

27  eligible to serve as a watcher, a person must complete training

25

S.B. No. 1

1   under Section 33.008.

2        SECTION 4.06.  Section 33.051, Election Code, is amended by

3   amending Subsections (a), (b), (d), and (e) and adding Subsections

4   (a-1), (g), and (h) to read as follows:

5        (a)  A watcher appointed to serve at a precinct polling

6   place, a meeting place for an early voting ballot board, or a

7   central counting station must deliver the following materials [a

8   certificate of appointment] to the presiding judge at the time the

9   watcher reports for service:

10            (1)  a certificate of appointment; and

11            (2)  a certificate of completion from training

12   completed by the watcher under Section 33.008.

13        (a-1)  A watcher appointed to serve at an early voting

14   polling place must deliver the certificates under Subsection (a) [a

15   certificate of appointment] to the early voting clerk or deputy

16   clerk in charge of the polling place when the watcher first reports

17   for service.

18        (b)  The officer presented with a watcher's certificates

19   [certificate of appointment] shall require the watcher to

20   countersign the certificate of appointment to ensure that the

21   watcher is the same person who signed the certificate of

22   appointment.  Except as provided by Subsection (c), a watcher who

23   presents himself or herself at the proper time with the

24   certificates required under Subsection (a) [a certificate of

25   appointment] shall be accepted for service unless the person is

26   ineligible to serve or the number of appointees to which the

27   appointing authority is entitled have already been accepted.

26

S.B. No. 1

1    (d) The <u>certificates</u> [~~certificate~~] of a watcher serving at

2 an early voting polling place shall be retained at the polling place

3 until voting at the polling place is concluded.  At each subsequent

4 time that the watcher reports for service, the watcher shall inform

5 the clerk or deputy in charge.  The officer may require the watcher

6 to sign the watcher's name in the officer's presence, for comparison

7 with the signature on the certificate <u>of appointment</u>, if the

8 officer is uncertain of the watcher's identity.

9    (e) If a watcher is not accepted for service, the

10 <u>certificates</u> [~~certificate of appointment~~] shall be returned to the

11 watcher with a signed statement of the reason for the rejection.

12    <u>(g)  An election officer commits an offense if the officer</u>

13 <u>intentionally or knowingly refuses to accept a watcher for service</u>

14 <u>when acceptance of the watcher is required by this section.  An</u>

15 <u>offense under this subsection is a Class A misdemeanor.</u>

16    <u>(h)  Before accepting a watcher, the officer presented with a</u>

17 <u>watcher's certificate of appointment shall require the watcher to</u>

18 <u>take the following oath, administered by the officer: "I swear (or</u>

19 <u>affirm) that I will not disrupt the voting process or harass voters</u>

20 <u>in the discharge of my duties."</u>

21    SECTION 4.07.  Section 33.056, Election Code, is amended by

22 amending Subsection (a) and adding Subsections (e) and (f) to read

23 as follows:

24    (a) Except as provided by Section 33.057, a watcher is

25 entitled to observe any activity conducted at the location at which

26 the watcher is serving.  A watcher is entitled to sit or stand

27 [~~conveniently~~] near <u>enough to see and hear</u> the election officers

27

S.B. No. 1

1 conducting the observed activity, except as otherwise prohibited by

2 this chapter.

3 (e) Except as provided by Section 33.057(b), a watcher may

4 not be denied free movement where election activity is occurring

5 within the location at which the watcher is serving.

6 (f) In this code, a watcher who is entitled to "observe" an

7 election activity is entitled to sit or stand near enough to see and

8 hear the activity.

9 SECTION 4.08. Subchapter C, Chapter 33, Election Code, is

10 amended by adding Section 33.0605 to read as follows:

11 Sec. 33.0605. OBSERVING DATA STORAGE SEALING AND TRANSFER.

12 (a) A watcher appointed to serve at a polling place in an election

13 who is available at the time of the action may observe all election

14 activities relating to closing the polling place, including the

15 sealing and transfer of a memory card, flash drive, hard drive, data

16 storage device, or other medium now existing or later developed

17 used by the voting system equipment.

18 (b) Notwithstanding any other provision of this code, a

19 watcher duly accepted for service at a polling location is entitled

20 to follow the transfer of election materials from the polling place

21 at which the watcher was accepted to a regional tabulating center,

22 the central counting station, or any other location designated to

23 process election materials. The authority responsible for

24 administering a regional tabulating center or another location

25 where election materials are processed must accept duly appointed

26 watchers for service in the same manner a watcher is accepted for

27 service under Section 33.051 and must accept the same number of

28

S.B. No. 1

1 watchers that may serve under Section 33.007(a).

2        SECTION 4.09.  Section 33.061(a), Election Code, is amended
3 to read as follows:

4        (a)  A person commits an offense if the person serves in an
5 official capacity at a location at which the presence of watchers is
6 authorized and knowingly prevents a watcher from observing an
7 activity or procedure the person knows the watcher is entitled to
8 observe, including by taking any action to obstruct the view of a
9 watcher or distance the watcher from the activity or procedure to be
10 observed in a manner that would make observation not reasonably
11 effective.

12        SECTION 4.10.  Subchapter C, Chapter 33, Election Code, is
13 amended by adding Section 33.063 to read as follows:

14        Sec. 33.063.  RELIEF.   The appointing authority for a
15 watcher who believes that the watcher was unlawfully prevented or
16 obstructed from the performance of the watcher's duties may seek:

17             (1)  injunctive relief under Section 273.081,
18 including issuance of temporary orders;

19             (2)  a writ of mandamus under Section 161.009 or
20 273.061; and

21             (3)  any other remedy available under law.

22        SECTION 4.11.  Section 34.005, Election Code, is amended to
23 read as follows:

24        Sec. 34.005.  ACTION BY SECRETARY OF STATE.   (a)  The
25 secretary of state may refer a reported violation of law for
26 appropriate action to the attorney general, if the attorney general
27 has jurisdiction, or to a prosecuting attorney having jurisdiction.

S.B. No. 1

1    (b) If the secretary of state believes that a state

2  inspector was unlawfully prevented or obstructed from the

3  performance of the inspector's duties, the secretary of state may

4  seek:

5            (1) injunctive relief under Section 273.081,

6  including issuance of temporary orders;

7            (2) a writ of mandamus under Section 161.009 or

8  273.061; and

9            (3) any other remedy available under law.

10    SECTION 4.12.  Section 86.006, Election Code, is amended by

11  amending Subsection (a) and adding Subsection (a-2) to read as

12  follows:

13    (a) A marked ballot voted under this chapter must be

14  returned to the early voting clerk in the official carrier

15  envelope.  The carrier envelope may be delivered in another

16  envelope and must be transported and delivered only by:

17            (1) mail;

18            (2) common or contract carrier; or

19            (3) subject to Subsections [Subsection] (a-1) and

20  (a-2), in-person delivery by the voter who voted the ballot.

21    (a-2) An in-person delivery of a marked ballot voted under

22  this chapter must be received by an election official at the time of

23  delivery.  The receiving official shall record the voter's name,

24  signature, and type of identification provided under Section

25  63.0101 on a roster prescribed by the secretary of state.  The

26  receiving official shall attest on the roster that the delivery

27  complies with this section.

30

1    SECTION 4.13.  Chapter 121, Election Code, is amended by
2  adding Section 121.004 to read as follows:
3    Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR
4  PUBLIC INFORMATION.  (a) Except as provided by Subsection (b), a
5  written  letter,  e-mail,  or  other  communication,  including  a
6  communication  made  confidential  by  other  law,  between  a  public
7  official and a voting systems vendor:
8         (1)  is not confidential;
9         (2)  is public information for purposes of Chapter 552,
10  Government Code; and
11         (3)  is  not  subject  to  an  exception  to  disclosure
12  provided  by  Chapter  552,  Government  Code,  other  than  Sections
13  552.110 and 552.1101, Government Code.
14    (b)  A  written  letter,  e-mail,  or  other  communication
15  between a public official and a voting systems vendor is excepted
16  from  disclosure  under  Chapter  552,  Government  Code,  if  the
17  communication discloses information, data, or records relating to
18  the security of elections critical infrastructure.
19    SECTION 4.14.  Section 127.1301, Election Code, is amended
20  to read as follows:
21    Sec. 127.1301.  [TALLYING,  TABULATING,  AND  REPORTING]
22  CENTRALLY  COUNTED  OPTICAL  SCAN  BALLOTS  [BALLOT  UNDERVOTES  AND
23  OVERVOTES].  (a)  In an election using centrally counted optical
24  scan ballots, the undervotes and overvotes on those ballots shall
25  be  tallied,  tabulated,  and  reported  by  race  and  by  election
26  precinct  in  the  form  and  manner  prescribed  by  the  secretary  of
27  state.

31

S.B. No. 1

1    (b)  An authority operating a central counting station under

2    this chapter may not purchase or use a centrally counted optical

3    ballot scan system that uses a data storage disc on which

4    information, once written, is capable of being modified.

5    (c)  An authority that purchases system components in order

6    to comply with this section is eligible to have 100 percent of the

7    cost of those system components reimbursed.

8    (d)  Subsection (b) applies starting on the earlier of:

9    (1)  the date on which the state certifies the first

10   centrally counted optical ballot scan system under this section; or

11   (2)  September 1, 2026.

12   (e)  This subsection and Subsection (d) expire October 1,

13   2026.

14   SECTION 4.15.  Section 127.131, Election Code, is amended by

15   adding Subsection (f) to read as follows:

16   (f)  The presiding judge of the central counting station

17   shall provide and attest to a written reconciliation of votes and

18   voters at the close of tabulation for election day and again after

19   the central counting station meets for the last time to process

20   late-arriving ballots by mail and provisional ballots.  The

21   secretary of state shall create and promulgate rules and a form to

22   facilitate compliance with this subsection.  The form shall be

23   posted on a website maintained by the county along with election

24   returns and results.

25   SECTION 4.16.  Section 129.023, Election Code, is amended by

26   adding Subsections (b-2) and (c-1) to read as follows:

27   (b-2)  If the test is being conducted for an election in

32

S.B. No. 1

1  which a county election board has been established under Section
2  51.002, the general custodian of election records shall notify each
3  member of the board of the test at least 48 hours before the date of
4  the test. If the county election board chooses to witness the test,
5  each member shall sign the statement required by Subsection (e)(1).
6       (c-1)  A test conducted under this section must also require
7  the general custodian of election records to demonstrate, using a
8  representative sample of voting system equipment, that the source
9  code of the equipment has not been altered.
10                    ARTICLE 5.  VOTING BY MAIL
11      SECTION 5.01.  Section 84.001(b), Election Code, is amended
12  to read as follows:
13      (b)  Subject to Section 1.011, an [An] application must be
14  submitted in writing and signed by the applicant using ink on paper.
15  An electronic signature or photocopied signature is not permitted.
16      SECTION 5.02.  Section 84.002, Election Code, as effective
17  September 1, 2021, is amended by amending Subsection (a) and adding
18  Subsection (b-1) to read as follows:
19      (a)  An early voting ballot application must include:
20           (1)  the applicant's name and the address at which the
21  applicant is registered to vote;
22           (1-a)  the following information:
23                (A)  the number  of  the  applicant's  driver's
24  license,  election  identification  certificate,  or  personal
25  identification card issued by the Department of Public Safety;
26                (B)  if the applicant has not been issued a number
27  described by Paragraph (A), the last four digits of the applicant's

33

S.B. No. 1

1   social security number; or

2                    (C)   a   statement   by   the   applicant   that   the

3   applicant has not been issued a number described by Paragraph (A) or

4   (B);

5                    (2)   for an application for a ballot to be voted by mail

6   on the ground of absence from the county of residence, the address

7   outside the applicant's county of residence to which the ballot is

8   to be mailed;

9                    (3)   for an application for a ballot to be voted by mail

10  on the ground of age or disability, the address of the hospital,

11  nursing  home  or  other  long-term  care  facility,  or  retirement

12  center, or of a person related to the applicant within the second

13  degree  by  affinity  or  the  third  degree  by  consanguinity,  as

14  determined under Chapter 573, Government Code, if the applicant is

15  living  at  that  address  and  that  address  is  different  from  the

16  address at which the applicant is registered to vote;

17                    (4)   for an application for a ballot to be voted by mail

18  on the ground of confinement in jail, the address of the jail or of a

19  person related to the applicant within the degree described by

20  Subdivision (3);

21                    (5)   for an application for a ballot to be voted by mail

22  on  any  ground,  an  indication  of  each  election  for  which  the

23  applicant is applying for a ballot;

24                    (6)   an indication of the ground of eligibility for

25  early voting; and

26                    (7)   for an application for a ballot to be voted by mail

27  on the ground of involuntary civil commitment, the address of the

34

S.B. No. 1

1  facility operated by or under contract with the Texas Civil
2  Commitment Office or of a person related to the applicant within the
3  degree of consanguinity described by Subdivision (3).

4      (b-1)  A person may use the number of a driver's license,
5  election identification certificate, or personal identification
6  card that has expired for the purpose of fulfilling the requirement
7  under Subsection (a)(1-a) if the license or identification is
8  otherwise valid.

9      SECTION 5.03.  Section  84.011(a),  Election  Code,  as
10  effective September 1, 2021, is amended to read as follows:

11      (a)  The officially prescribed application form for an early
12  voting ballot must include:

13          (1)  immediately preceding the signature space the
14  statement:  "I  certify  that  the  information  given  in  this
15  application is true, and I understand that giving false information
16  in this application is a crime.";

17          (2)  a  statement  informing  the  applicant  of  the
18  offenses prescribed by Sections 84.003 and 84.004;

19          (3)  spaces  for  entering  an  applicant's  voter
20  registration number and county election precinct of registration,
21  with a statement informing the applicant that failure to furnish
22  that information does not invalidate the application;

23          (3-a)  a space for entering the information required
24  under Section 84.002(a)(1-a); and

25          (4)  on an application for a ballot to be voted by mail:

26              (A)  a space for an applicant applying on the
27  ground of absence from the county of residence to indicate the date

35

S.B. No. 1

1  on or after which the applicant can receive mail at the address

2  outside the county;

3  (B)  a space for indicating the fact that an

4  applicant whose application is signed by a witness cannot make the

5  applicant's mark and a space for indicating the relationship or

6  lack of relationship of the witness to the applicant;

7  (C)  a space for entering an applicant's telephone

8  number, with a statement informing the applicant that failure to

9  furnish that information does not invalidate the application;

10  (D)  a space or box for an applicant applying on

11  the ground of age or disability to indicate that the address to

12  which the ballot is to be mailed is the address of a facility or

13  relative described by Section 84.002(a)(3), if applicable;

14  (E)  a space or box for an applicant applying on

15  the ground of confinement in jail or involuntary civil commitment

16  to indicate that the address to which the ballot is to be mailed is

17  the address of a relative described by Section 84.002(a)(4) or (7),

18  if applicable;

19  (F)  a space for an applicant applying on the

20  ground of age or disability to indicate if the application is an

21  application under Section 86.0015;

22  (G)  spaces for entering the signature, printed

23  name, and residence address of any person assisting the applicant;

24  (H)  a statement informing the applicant of the

25  condition prescribed by Section 81.005; and

26  (I)  a statement informing the applicant of the

27  requirement prescribed by Section 86.003(c).

36

S.B. No. 1

1          SECTION 5.04.   Subchapter A, Chapter 84, Election Code, is
2   amended by adding Section 84.0111 to read as follows:
3          Sec. 84.0111. DISTRIBUTION  OF  APPLICATION  FORM.    (a)
4   Except as provided by Subsection (c) or as otherwise authorized by
5   this code, an officer or employee of this state or of a political
6   subdivision of this state may not distribute an application form
7   for an early voting ballot to a person who did not request an
8   application under Section 84.001.
9          (b)  An officer or employee of this state or of a political
10   subdivision of this state may not use public funds to facilitate the
11   distribution by another person of an application form for an early
12   voting ballot to a person who did not request an application under
13   Section 84.001.
14          (c)  A political  party  or  a  candidate  for  office  may
15   distribute an application form for an early voting ballot to a
16   person who did not request an application under Section 84.001.
17          SECTION 5.05.   Section 84.032(c), Election Code, is amended
18   to read as follows:
19          (c)  An applicant may submit a request after the close of
20   early voting by personal appearance by appearing in person and:
21              (1)   returning the ballot to be voted by mail to the
22   early voting clerk; or
23              (2)   executing an affidavit that the applicant:
24                  (A)   has not received the ballot to be voted by
25   mail; [or]
26                  (B)   never requested a ballot to be voted by mail;
27   or

37

S.B. No. 1

1          (C)  received notice of a defect under Section

2 87.0271(b) or (c) or 87.0411(b) or (c).

3     SECTION 5.06.  Section 84.035, Election Code, is amended to

4 read as follows:

5     Sec. 84.035.  BALLOT SENT TO APPLICANT.  (a)  If the early

6 voting clerk cancels an application by an applicant to whom an early

7 voting ballot has been sent, the clerk shall:

8          (1)  remove the applicant's name from the early voting

9 roster; and

10          (2)  make any other entries in the records and take any

11 other action necessary to prevent the ballot from being counted if

12 returned.

13     (b)  An election judge may permit a person to whom an early

14 voting ballot has been sent who cancels the person's application

15 for a ballot to be voted by mail in accordance with Section 84.032

16 but fails to return the ballot to be voted by mail to the early

17 voting clerk, deputy early voting clerk, or presiding judge as

18 provided by that section to vote only a provisional ballot under

19 Section 63.011.

20     SECTION 5.07.  Section 86.001, Election Code, is amended by

21 adding Subsections (f), (f-1), and (f-2) to read as follows:

22     (f)  If  the  information  required  under  Section

23 84.002(a)(1-a) included on the application does not identify the

24 same voter identified on the applicant's application for voter

25 registration under Section 13.002(c)(8), the clerk shall reject the

26 application.

27     (f-1)  If an application is rejected under Subsection (f),

38

S.B. No. 1

1  the clerk shall provide notice of the rejection in accordance with
2  Subsection (c).  The notice must include information regarding the
3  ability  to  correct  or  add  information  required  under  Section
4  84.002(a)(1-a)  through  the  online  tool  described  by  Section
5  86.015(c).
6       (f-2)  If an applicant corrects an application for a ballot
7  to  be  voted  by  mail  online  and  that  application  subsequently
8  identifies the same voter identified on the applicant's application
9  for  voter  registration,  the  clerk  shall  provide  a  ballot  to  the
10 applicant as provided by this chapter.
11      SECTION 5.08.  Section 86.002, Election Code, is amended by
12 adding Subsections (g), (h), and (i) to read as follows:
13      (g)  The carrier envelope must include a space that is hidden
14 from view when the envelope is sealed for the voter to enter the
15 following information:
16           (1)  the  number  of  the  voter's  driver's  license,
17 election  identification  certificate,  or  personal  identification
18 card issued by the Department of Public Safety;
19           (2)  if the voter has not been issued a number described
20 by Subdivision (1), the  last  four  digits  of  the  voter's  social
21 security number; or
22           (3)  a statement by the applicant that the applicant
23 has not been issued a number described by Subdivision (1) or (2).
24      (h)  A  person  may  use  the  number  of  a  driver's  license,
25 election  identification  certificate,  or  personal  identification
26 card that has expired for purposes of Subsection (g) if the license
27 or identification is otherwise valid.

S.B. No. 1

1    (i)  No record associating an individual voter with a ballot
2    may be created.

3    SECTION 5.09.  Section 86.011(c), Election Code, is amended
4    to read as follows:

5    (c)  If the return is not timely, the clerk shall enter the
6    time of receipt on the carrier envelope and retain it in a locked
7    container for the period for preserving the precinct election
8    records.  The clerk shall destroy the unopened envelope and its
9    contents after the preservation period.

10   SECTION 5.10.  Section  86.015(c),  Election  Code,  as
11   effective September 1, 2021, is amended to read as follows:

12   (c)  An online tool used under this section must:

13       (1)  for each election, record:

14           (A)  each application for a ballot to be voted by
15   mail received by the clerk; and

16           (B)  each carrier envelope sent to a voter by the
17   clerk;

18       (2)  for each carrier envelope, record or assign a
19   serially numbered and sequentially issued barcode or tracking
20   number that is unique to each envelope; [and]

21       (3)  update the applicable Internet website as soon as
22   practicable after each of the following events occurs:

23           (A)  receipt by the early voting clerk of the
24   person's application for a ballot to be voted by mail;

25           (B)  acceptance or rejection by the early voting
26   clerk of the person's application for a ballot to be voted by mail;

27           (C)  placement in the mail by the early voting

40

S.B. No. 1

1  clerk of the person's official ballot;

2             (D)  receipt by the early voting clerk of the
3  person's marked ballot; and

4             (E)  acceptance or rejection by the early voting
5  ballot board of a person's marked ballot; and

6             (4)  allow a voter to add or correct information
7  required under Section 84.002(a)(1-a) or Section 86.002(g).

8       SECTION 5.11.  Sections 87.027(d), (e), and (i), Election
9  Code, are amended to read as follows:

10      (d)  The early voting clerk shall determine the number of
11 members who are to compose the signature verification committee and
12 shall state that number in the order calling for the committee's
13 appointment.  A committee must consist of not fewer than five
14 members.  In an election in which party alignment is indicated on
15 the ballot, each county chair of a political party with a nominee or
16 aligned candidate on the ballot shall submit to the appointing
17 authority a list of names of persons eligible to serve on the
18 signature verification committee in order of the  county chair's
19 preference.  The authority shall appoint at least two persons from
20 each list in the order of preference indicated on each list to serve
21 as members of the committee.  The same number of members must be
22 appointed from each list.  The authority shall appoint as [the]
23 chair of the committee the highest-ranked person on [from] the list
24 provided by the political party whose nominee for governor received
25 the most votes in the county in the most recent gubernatorial
26 general election.  The authority shall appoint as vice chair of the
27 committee the highest-ranked person on the list provided by the

41

S.B. No. 1

1  political party whose nominee for governor received the second most

2  votes in the county in the most recent gubernatorial general

3  election. A vacancy on the committee shall be filled by appointment

4  from the original list or from a new list submitted by the

5  appropriate county chair.

6       (e)  To be eligible to serve on a signature verification

7  committee, a person must be eligible under Subchapter C, Chapter

8  32, for service as a presiding election judge, except that the

9  person must be a qualified voter:

10           (1)  of the county, in a countywide election ordered by

11  the governor or a county authority or in a primary election;

12           (2)  of the part of the county in which the election is

13  held, for an election ordered by the governor or a county authority

14  that does not cover the entire county of the person's residence; or

15           (3)  of the political subdivision, in an election

16  ordered by an authority of a political subdivision other than a

17  county.

18       (i)  The signature verification committee shall compare the

19  signature on each carrier envelope certificate, except those signed

20  for a voter by a witness, with the signature on the voter's ballot

21  application to determine whether the signatures are those of the

22  voter.  The committee may also compare the signatures with any

23  known signature [two or more signatures] of the voter [made within

24  the preceding six years and] on file with the county clerk or voter

25  registrar to determine whether the signatures are those of the

26  voter.  Except as provided by Subsection (l), a determination under

27  this subsection that the signatures are not those of the voter must

42

S.B. No. 1

1  be made by a majority vote of the committee's membership.  The
2  committee shall place the jacket envelopes, carrier envelopes, and
3  applications of voters whose signatures are not those of the voter
4  in separate containers from those of voters whose signatures are
5  those of the voter.  The committee chair shall deliver the sorted
6  materials to the early voting ballot board at the time specified by
7  the board's presiding judge.

8      SECTION 5.12.  Subchapter B, Chapter 87, Election Code, is
9  amended by adding Section 87.0271 to read as follows:

10     Sec. 87.0271.  OPPORTUNITY  TO  CORRECT  DEFECT:   SIGNATURE
11 VERIFICATION COMMITTEE.  (a)   This section applies to an early
12 voting ballot voted by mail:

13         (1)  for  which  the  voter  did  not  sign  the  carrier
14 envelope certificate;

15         (2)  for  which  it  cannot  immediately  be  determined
16 whether the signature on the carrier envelope certificate is that
17 of the voter;

18         (3)  missing any required statement of residence;

19         (4)  missing  information  or  containing  incorrect
20 information  required  under  Section  84.002(a)(1-a)  or  Section
21 86.002; or

22         (5)  containing incomplete information with respect to
23 a witness.

24     (b)  Not later than the second business day after a signature
25 verification committee discovers a defect described by Subsection
26 (a) and before the committee decides whether to accept or reject a
27 timely delivered ballot under Section 87.027, the committee shall:

43

S.B. No. 1

1        (1)  determine if it would be possible for the voter to

2  correct the defect and return the carrier envelope before the time

3  the polls are required to close on election day; and

4        (2)  return the carrier envelope to the voter by mail,

5  if the committee determines that it would be possible for the voter

6  to correct the defect and return the carrier envelope before the

7  time the polls are required to close on election day.

8      (c)  If the signature verification committee determines

9  under Subsection (b)(1) that it would not be possible for the voter

10  to correct the defect and return the carrier envelope before the

11  time the polls are required to close on election day, the committee

12  may notify the voter of the defect by telephone or e-mail and inform

13  the voter that the voter may request to have the voter's application

14  to vote by mail canceled in the manner described by Section 84.032

15  or come to the early voting clerk's office in person not later than

16  the sixth day after election day to correct the defect.

17      (d)  If the signature verification committee takes an action

18  described by Subsection (b) or (c), the committee must take either

19  action described by that subsection with respect to each ballot in

20  the election to which this section applies.

21      (e)  A poll watcher is entitled to observe an action taken

22  under Subsection (b) or (c).

23      (f)  The secretary of state may prescribe any procedures

24  necessary to implement this section.

25      (g)  Notwithstanding any other law, a ballot may not be

26  finally rejected for a reason listed in Section 87.041(b)(1), (2),

27  or (6) before the seventh day after election day.

44

1       SECTION 5.13.  Section 87.041, Election Code, is amended by
2   amending Subsections (b) and (e) and adding Subsection (d-1) to
3   read as follows:
4       (b)  A ballot may be accepted only if:
5           (1)  the carrier envelope certificate is properly
6   executed;
7           (2)  neither the voter's signature on the ballot
8   application nor the signature on the carrier envelope certificate
9   is determined to have been executed by a person other than the
10  voter, unless signed by a witness;
11          (3)  the voter's ballot application states a legal
12  ground for early voting by mail;
13          (4)  the voter is registered to vote, if registration
14  is required by law;
15          (5)  the address to which the ballot was mailed to the
16  voter, as indicated by the application, was outside the voter's
17  county of residence, if the ground for early voting is absence from
18  the county of residence;
19          (6)  for a voter to whom a statement of residence form
20  was required to be sent under Section 86.002(a), the statement of
21  residence is returned in the carrier envelope and indicates that
22  the voter satisfies the residence requirements prescribed by
23  Section 63.0011; [and]
24          (7)  the address to which the ballot was mailed to the
25  voter is an address that is otherwise required by Sections 84.002
26  and 86.003; and
27          (8)  the information required under Section 86.002(g)

45

S.B. No. 1

1  provided by the voter identifies the same voter identified on the

2  voter's application for voter registration under Section

3  13.002(c)(8).

4      (d-1)  If a voter provides the information required under

5  Section 86.002(g) and it identifies the same voter identified on

6  the voter's application for voter registration under Section

7  13.002(c)(8), the signature on the ballot application and on the

8  carrier envelope certificate  shall be rebuttably presumed to be

9  the signatures of the voter.

10     (e)  In making the determination under Subsection (b)(2), to

11  determine whether the signatures are those of the voter, the board

12  may also compare the signatures with any known signature [two or

13  more signatures] of the voter [made within the preceding six years

14  and] on file with the county clerk or voter registrar [to determine

15  whether the signatures are those of the voter].

16     SECTION 5.14.  Subchapter C, Chapter 87, Election Code, is

17  amended by adding Section 87.0411 to read as follows:

18     Sec. 87.0411.  OPPORTUNITY TO CORRECT DEFECT:  EARLY VOTING

19  BALLOT BOARD.  (a)  This section applies to an early voting ballot

20  voted by mail:

21       (1)  for which the voter did not sign the carrier

22  envelope certificate;

23       (2)  for which it cannot immediately be determined

24  whether the signature on the carrier envelope certificate is that

25  of the voter;

26       (3)  missing any required statement of residence;

27       (4)  missing information or containing incorrect

46

S.B. No. 1

1  information required under Section 84.002(a)(1-a) or Section

2  86.002; or

3        (5)  containing incomplete information with respect to

4  a witness.

5        (b)  Not later than the second business day after an early

6  voting ballot board discovers a defect described by Subsection (a)

7  and before the board decides whether to accept or reject a timely

8  delivered ballot under Section 87.041, the board shall:

9        (1)  determine if it would be possible for the voter to

10  correct the defect and return the carrier envelope before the time

11  the polls are required to close on election day; and

12        (2)  return the carrier envelope to the voter by mail,

13  if the board determines that it would be possible for the voter to

14  correct the defect and return the carrier envelope before the time

15  the polls are required to close on election day.

16        (c)  If the early voting ballot board determines under

17  Subsection (b)(1) that it would not be possible for the voter to

18  correct the defect and return the carrier envelope before the time

19  the polls are required to close on election day, the board may

20  notify the voter of the defect by telephone or e-mail and inform the

21  voter that the voter may request to have the voter's application to

22  vote by mail canceled in the manner described by Section 84.032 or

23  come to the early voting clerk's office in person not later than the

24  sixth day after election day to correct the defect.

25        (d)  If the early voting ballot board takes an action

26  described by Subsection (b) or (c), the board must take either

27  action described by that subsection with respect to each ballot in

47

S.B. No. 1

1  the election to which this section applies.

2      (e)  A poll watcher is entitled to observe an action taken

3  under Subsection (b) or (c).

4      (f)  The secretary of state may prescribe any procedures

5  necessary to implement this section.

6      (g)  Notwithstanding any other law, a ballot may not be

7  finally rejected for a reason listed in Section 87.041(b)(1), (2),

8  or (6) before the seventh day after election day.

9      SECTION 5.15.  Section 87.0431(b), Election Code, is amended

10  to read as follows:

11      (b)  The early voting clerk shall, not later than the 30th

12  day after election day, deliver notice to the attorney general,

13  including  certified  copies  of  the  carrier  envelope  and

14  corresponding ballot application, of any ballot rejected because:

15         (1)  the voter was deceased;

16         (2)  the voter already voted in person in the same

17  election;

18         (3)  the signatures on the carrier envelope and ballot

19  application were not executed by the same person;

20         (4)  the carrier envelope certificate lacked a witness

21  signature; [or]

22         (5)  the carrier envelope certificate was improperly

23  executed by an assistant; or

24         (6)  the early voting ballot board or the signature

25  verification committee determined that another violation of the

26  Election Code occurred.

27      SECTION 5.16.  Sections 87.062(a) and (c), Election Code,

48

1  are amended to read as follows:

2       (a)  On the direction of the presiding judge, the early
3  voting ballot board, in accordance with Section 85.032(b), shall
4  open the containers [container] for the early voting ballots that
5  are to be counted by the board, remove the contents from each [the]
6  container, and remove any ballots enclosed in ballot envelopes from
7  their envelopes.

8       (c)  Ballots voted by mail shall be tabulated and stored
9  separately from the ballots voted by personal appearance and shall
10 be separately reported on the returns [The results of all early
11 voting ballots counted by the board under this subchapter shall be
12 included in the same return].

13      SECTION 5.17.  Section 87.103, Election Code, is amended to
14 read as follows:

15      Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS.  (a)
16 The early voting electronic system ballots counted at a central
17 counting station, the ballots cast at precinct polling places, and
18 the ballots voted by mail shall be tabulated separately [from the
19 ballots cast at precinct polling places] and shall be separately
20 reported on the returns.

21      (b)  The early voting returns prepared at the central
22 counting station must include any early voting results obtained by
23 the early voting ballot board under Subchapter [Subchapters] D [and
24 E].

25      SECTION 5.18.  Section 87.126, Election Code, is amended by
26 adding Subsection (a-1) to read as follows:

27      (a-1)  Electronic records made under this section shall

49

S.B. No. 1

1  record both sides of any application, envelope, or ballot recorded,

2  and all such records shall be provided to the early voting ballot

3  board, the signature verification committee, or both.

4      SECTION 5.19.  Subchapter G, Chapter 87, Election Code, is

5  amended by adding Section 87.128 to read as follows:

6      Sec. 87.128.  NOTES.  (a)  Each member of an early voting

7  ballot board and each member of a signature verification committee

8  is entitled to take any notes reasonably necessary to perform the

9  member's duties under this chapter.

10      (b)  Notes taken under this section may not contain

11  personally identifiable information.

12      (c)  Each member who takes notes under this section shall

13  sign the notes and deliver them to the presiding judge or committee

14  chair, as applicable, for delivery to the custodian of election

15  records.

16      (d)  Notes collected under this section shall be preserved in

17  the same manner as precinct election records under Section 66.058.

18      ARTICLE 6.  ASSISTANCE OF VOTERS

19      SECTION 6.01.  Section 64.009, Election Code, is amended by

20  amending Subsection (b) and adding Subsections (e), (f), (f-1),

21  (g), and (h) to read as follows:

22      (b)  The regular voting procedures, except those in

23  Subchapter B, may be modified by the election officer to the extent

24  necessary to conduct voting under this section.

25      (e)  Except as provided by Section 33.057, a poll watcher is

26  entitled to observe any activity conducted under this section.

27      (f)  A person who simultaneously assists seven or more voters

50

S.B. No. 1

1 voting under this section by providing the voters with

2 transportation to the polling place must complete and sign a form,

3 provided by an election officer, that contains the person's name

4 and address and whether the person is providing assistance solely

5 under this section or under both this section and Subchapter B.

6     (f-1)  Subsection (f) does not apply if the person is related

7 to each voter within the second degree by affinity or the third

8 degree by consanguinity, as determined under Subchapter B, Chapter

9 573, Government Code.

10     (g)  A form completed under Subsection (f) shall be delivered

11 to the secretary of state as soon as practicable.  The secretary

12 shall retain a form delivered under this section for the period for

13 preserving the precinct election records and shall make the form

14 available to the attorney general for inspection upon request.

15     (h)  The secretary of state shall prescribe the form

16 described by Subsection (f).

17     SECTION 6.02.  Section 64.031, Election Code, is amended to

18 read as follows:

19     Sec. 64.031.  ELIGIBILITY FOR ASSISTANCE.  A voter is

20 eligible to receive assistance in marking or reading the ballot, as

21 provided by this subchapter, if the voter cannot prepare or read the

22 ballot because of:

23        (1)  a physical disability that renders the voter

24 unable to write or see; or

25        (2)  an inability to read the language in which the

26 ballot is written.

27     SECTION 6.03.  Subchapter B, Chapter 64, Election Code, is

51

S.B. No. 1

1  amended by adding Section 64.0322 to read as follows:

2       Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT.  (a)  A

3  person, other than an election officer, who assists a voter in

4  accordance with this chapter is required to complete a form

5  stating:

6            (1)  the name and address of the person assisting the

7  voter;

8            (2)  the relationship to the voter of the person

9  assisting the voter; and

10           (3)  whether the person assisting the voter received or

11  accepted any form of compensation or other benefit from a

12  candidate, campaign, or political committee.

13      (b)  The secretary of state shall prescribe the form required

14  by this section.  The form must be incorporated into the official

15  carrier envelope if the voter is voting an early voting ballot by

16  mail and receives assistance under Section 86.010, or must be

17  submitted to an election officer at the time the voter casts a

18  ballot if the voter is voting at a polling place or under Section

19  64.009.

20      SECTION 6.04.  Section 64.034, Election Code, is amended to

21  read as follows:

22      Sec. 64.034.  OATH.  A person, other than an election

23  officer, selected to provide assistance to a voter must take the

24  following oath, administered by an election officer at the polling

25  place, before providing assistance:

26      "I swear (or affirm) under penalty of perjury that the voter I

27  am assisting represented to me they are eligible to receive

52

S.B. No. 1

1  assistance; I will not suggest, by word, sign, or gesture, how the

2  voter should vote; I will confine my assistance to reading the

3  ballot to the voter, directing the voter to read the ballot, marking

4  the voter's ballot, or directing the voter to mark the ballot;

5  [answering the voter's questions, to stating propositions on the

6  ballot, and to naming candidates and, if listed, their political

7  parties,] I will prepare the voter's ballot as the voter directs; I

8  did not pressure or coerce the voter into choosing me to provide

9  assistance; [and] I am not the voter's employer, an agent of the

10 voter's employer, or an officer or agent of a labor union to which

11 the voter belongs; I will not communicate information about how the

12 voter has voted to another person; and I understand that if

13 assistance is provided to a voter who is not eligible for

14 assistance, the voter's ballot may not be counted."

15       SECTION 6.05.  Sections 86.010(e), (h), and (i), Election

16 Code, are amended to read as follows:

17       (e)  A person who assists a voter to prepare a ballot to be

18 voted by mail shall enter on the official carrier envelope of the

19 voter:

20            (1)  the  person's  signature,  printed  name,  and

21 residence address;

22            (2)  the  relationship  of  the  person  providing  the

23 assistance to the voter; and

24            (3)  whether the person received or accepted any form

25 of compensation or other benefit from a candidate, campaign, or

26 political committee in exchange for providing assistance [on the

27 official carrier envelope of the voter].

S.B. No. 1

1      (h)  Subsection (f) does not apply:

2          (1)  to a violation of Subsection (c), if the person is
3  related to the voter within the second degree by affinity or the
4  third degree by consanguinity, as determined under Subchapter B,
5  Chapter 573, Government Code, or was physically living in the same
6  dwelling as the voter at the time of the event; or

7          (2)  to a violation of Subsection (e), if the person is
8  related to the voter within the second degree by affinity or the
9  third degree by consanguinity, as determined under Subchapter B,
10  Chapter 573, Government Code.

11      (i)  An offense under this section for a violation of
12  Subsection (c) is increased to the next higher category of offense
13  if it is shown on the trial of an offense under this section that:

14          (1)  the defendant was previously convicted of an
15  offense under this code;

16          (2)  the offense involved a voter 65 years of age or
17  older; or

18          (3)  the defendant committed another offense under this
19  section in the same election.

20      SECTION 6.06.  Section 86.0105, Election Code, is amended by
21  amending Subsections (a), (c), and (e) and adding Subsection (f) to
22  read as follows:

23      (a)  A person commits an offense if the person:

24          (1)  compensates or offers to compensate another person
25  for assisting voters as provided by Section 86.010[, as part of any
26  performance-based compensation scheme based on the number of voters
27  assisted or in which another person is presented with a quota of

S.B. No. 1

1   ~~voters to be assisted as provided by Section 86.010~~]; or

2           (2)   solicits,   receives,   or   [~~engages   in   another~~

3   ~~practice   that   causes   another   person's   compensation   from   or~~

4   ~~employment status with the person to be dependent on the number of~~

5   ~~voters assisted as provided by Section 86.010; or~~

6           [~~(3)   with knowledge that accepting compensation for~~

7   ~~such activity is illegal,~~] accepts compensation for an activity

8   described by Subdivision (1) [~~or (2)~~].

9       (c)  An offense under this section is a state jail felony [~~if~~

10  ~~it is shown on the trial of an offense under this section that the~~

11  ~~defendant was previously convicted two or more times under this~~

12  ~~section~~].

13      (e)  For purposes of this section, compensation means an

14  economic benefit as defined by Section 38.01, Penal Code [~~any form~~

15  ~~of monetary payment, goods, services, benefits, or promises or~~

16  ~~offers of employment, or any other form of consideration offered to~~

17  ~~another person in exchange for assisting voters~~].

18      (f)  This section does not apply if the person assisting a

19  voter is an attendant or caregiver previously known to the voter.

20      SECTION 6.07.  Section 86.013(b), Election Code, is amended

21  to read as follows:

22      (b)  Spaces must appear on the reverse side of the official

23  carrier envelope for:

24          (1)   indicating the identity and date of the election;

25  [~~and~~]

26          (2)   entering   the   signature,   printed   name,   and

27  residence address of a person other than the voter who deposits the

55

S.B. No. 1

1 carrier envelope in the mail or with a common or contract carrier;

2 and

3         (3)  indicating the relationship of that person to the

4 voter.

5         SECTION 6.08.  (a)  The secretary of state shall conduct a

6 study  regarding  the  implementation  of  educational  programs,

7 including  the  production  and  publication  on  the  secretary  of

8 state's Internet website of instructional videos, to help voters

9 with disabilities understand how to use voting systems used in this

10 state.

11         (b)  Not later than December 1, 2022, the secretary of state

12 shall submit to the standing committees of the legislature with

13 jurisdiction over elections a report on the study required by this

14 section.

15         (c)  The secretary of state, using existing resources, may

16 contract with a qualified vendor to conduct the study required by

17 this section.

18         (d)  This section expires December 1, 2023.

19         ARTICLE 7.  FRAUD AND OTHER UNLAWFUL PRACTICES

20         SECTION 7.01.  Chapter 63, Election Code, is amended by

21 adding Section 63.0111 to read as follows:

22         Sec. 63.0111.  OFFENSES RELATED TO PROVISIONAL VOTING.  (a)

23 An  election  judge  commits  an  offense  if  the  judge  knowingly

24 provides a voter with a form for an affidavit required by Section

25 63.001 if the form contains information that the judge entered on

26 the form knowing it was false.

27         (b)  An offense under this section is a state jail felony.

56

S.B. No. 1

1     SECTION 7.02.  Sections 276.004(a) and (b), Election Code,

2  are amended to read as follows:

3     (a)  A person commits an offense if, with respect to another

4  person over whom the person has authority in the scope of

5  employment, the person knowingly:

6     (1)  refuses to permit the other person to be absent

7  from work on election day or while early voting is in progress for

8  the purpose of attending the polls to vote; or

9     (2)  subjects or threatens to subject the other person

10  to a penalty for attending the polls on election day or while early

11  voting is in progress to vote.

12     (b)  It is an exception to the application of this section

13  that the person's conduct occurs in connection with an election in

14  which the polls are open on election day or while early voting is in

15  progress for voting for two consecutive hours outside of the

16  voter's working hours.

17     SECTION 7.03.  Sections 276.013(a) and (b), Election Code,

18  are amended to read as follows:

19     (a)  A person commits an offense if the person knowingly or

20  intentionally makes any effort to:

21     (1)  influence the independent exercise of the vote of

22  another in the presence of the ballot or during the voting process,

23  including by altering the ballot of another or by otherwise causing

24  a ballot to not reflect the intent of the voter;

25     (2)  cause a voter to become registered, a ballot to be

26  obtained, or a vote to be cast under false pretenses; [or]

27     (3)  cause any false or intentionally misleading

S.B. No. 1

1  statement, representation, or information to be provided:

2                    (A)  to an election official; or

3                    (B)  on an application for ballot by mail, carrier

4  envelope, or any other official election-related form or document;

5            (4)  prevent a voter from casting a legal ballot in an

6  election in which the voter is eligible to vote;

7            (5)  provide false information to a voter with the

8  intent of preventing the voter from voting in an election in which

9  the voter is eligible to vote;

10           (6)  cause the ballot not to reflect the intent of the

11 voter;

12           (7)  cause a ballot to be voted for another person that

13 the person knows to be deceased or otherwise knows not to be a

14 qualified or registered voter;

15           (8)  cause or enable a vote to be cast more than once in

16 the same election; or

17           (9)  discard or destroy a voter's completed ballot

18 without the voter's consent.

19      (b)  An offense under this section is a Class A misdemeanor,

20 unless:

21           (1)  the person committed the offense while acting in

22 the person's capacity as an elected official, in which case the

23 offense is a state jail felony; or

24           (2)  the person is convicted of an attempt, in which

25 case the offense is a Class B [A] misdemeanor.

26      SECTION 7.04.  Chapter 276, Election Code, is amended by

27 adding Sections 276.015, 276.016, 276.017, 276.018, and 276.019 to

58

S.B. No. 1

1  read as follows:

2      Sec. 276.015.  VOTE HARVESTING.  (a)  In this section:

3          (1)  "Benefit" means anything reasonably regarded as a

4  gain or advantage, including a promise or offer of employment, a

5  political favor, or an official act of discretion, whether to a

6  person or another party whose welfare is of interest to the person.

7          (2)  "Vote   harvesting   services"   means   in-person

8  interaction with one or more voters, in the physical presence of an

9  official ballot or a ballot voted by mail, intended to deliver votes

10  for a specific candidate or measure.

11      (b)  A person commits an offense if the person, directly or

12  through a third party, knowingly provides or offers to provide vote

13  harvesting services in exchange for compensation or other benefit.

14      (c)  A person commits an offense if the person, directly or

15  through a third party, knowingly provides or offers to provide

16  compensation or other benefit to another person in exchange for

17  vote harvesting services.

18      (d)  A person commits an offense if the person knowingly

19  collects or possesses a mail ballot or official carrier envelope in

20  connection with vote harvesting services.

21      (e)  This section does not apply to:

22          (1)  an   activity   not   performed   in   exchange   for

23  compensation or a benefit;

24          (2)  interactions that do not occur in the presence of

25  the ballot or during the voting process;

26          (3)  interactions that do not directly involve an

27  official ballot or ballot by mail;

59

S.B. No. 1

1      (4)   interactions that are not conducted in-person with

2 a voter; or

3      (5)   activity that is not designed to deliver votes for

4 or against a specific candidate or measure.

5      (f)   An offense under this section is a felony of the third

6 degree.

7      (g)   If   conduct   that   constitutes   an   offense   under   this

8 section also constitutes an offense under any other law, the actor

9 may be prosecuted under this section, the other law, or both.

10      (h)   Records necessary to investigate an offense under this

11 section or any other section of this code shall be provided by an

12 election officer in an unredacted form to a law enforcement officer

13 upon request.   Records obtained under this subsection are not

14 subject to public disclosure.

15      Sec. 276.016.   UNLAWFUL SOLICITATION AND DISTRIBUTION   OF

16 APPLICATION TO VOTE BY MAIL.   (a)   A public official or election

17 official commits an offense if the official, while acting in an

18 official capacity, knowingly:

19      (1)   solicits the submission of an application to vote

20 by mail from a person who did not request an application;

21      (2)   distributes an application to vote by mail to a

22 person who did not request the application unless the distribution

23 is expressly authorized by another provision of this code;

24      (3)   authorizes or approves the expenditure of public

25 funds to facilitate third-party distribution of an application to

26 vote by mail to a person who did not request the application; or

27      (4)   completes any portion of an application to vote by

S.B. No. 1

1    mail and distributes the application to an applicant.

2        (b)   An offense under this section is a state jail felony.

3        (c)   Subsection (a)(2) does not apply if the public official

4    or election official engaged in the conduct described by Subsection

5    (a)(2) by providing access to an application to vote by mail from a

6    publicly accessible Internet website.

7        (d)   Subsection (a)(4) does not apply if the public official

8    or election official engaged in the conduct described by Subsection

9    (a)(4) while lawfully assisting the applicant under Section 84.003.

10        (e)   Subsection (a) does not apply if the public official or

11    election official:

12            (1)   provided general information about voting by mail,

13    the vote by mail process, or the timelines associated with voting to

14    a person or the public; or

15            (2)   engaged in the conduct described by Subsection (a)

16    while acting in the official's capacity as a candidate for a public

17    elective office.

18        (f)   The remedy provided under this chapter is cumulative,

19    and does not restrict any other remedies provided by this code or by

20    law.  A violation of this section is subject to injunctive relief or

21    mandamus as provided by this code.

22        Sec. 276.017.   UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS

23    AND BALLOTING MATERIALS.   (a)   The early voting clerk or other

24    election official commits an offense if the clerk or official

25    knowingly mails or otherwise provides an early voting ballot by

26    mail or other early voting by mail ballot materials to a person who

27    the clerk or official knows did not submit an application for a

61

S.B. No. 1

1   ballot to be voted by mail under Section 84.001.

2   (b)   An offense under this section is a Class A misdemeanor.

3   Sec. 276.018.   PERJURY IN CONNECTION WITH CERTAIN ELECTION

4   PROCEDURES.   (a) A person commits an offense if, with the intent to

5   deceive, the person knowingly or intentionally makes a false

6   statement or swears to the truth of a false statement:

7   (1)   on a voter registration application; or

8   (2)   previously made while making an oath, declaration,

9   or affidavit described by this code.

10   (b)   An offense under this section is a state jail felony.

11   Sec. 276.019.   UNLAWFUL ALTERING OF ELECTION PROCEDURES.   A

12   public official or election official may not create, alter, modify,

13   waive, or suspend any election standard, practice, or procedure

14   mandated by law or rule in a manner not expressly authorized by this

15   code.

16   ARTICLE 8. ENFORCEMENT

17   SECTION 8.01.   Subchapter E, Chapter 31, Election Code, is

18   amended by adding Sections 31.128, 31.129, and 31.130 to read as

19   follows:

20   Sec. 31.128.   RESTRICTION ON ELIGIBILITY.   (a)   In this

21   section, "election official" does not include a chair of a county

22   political party holding a primary election or a runoff primary

23   election.

24   (b)   A person may not serve as an election official if the

25   person has been finally convicted of an offense under this code.

26   Sec. 31.129.   CIVIL PENALTY.   (a)  In this section, "election

27   official" has the meaning assigned by Section 31.128.

S.B. No. 1

1    (b)  An election official may be liable to this state for a
2  civil penalty if the official:
3         (1)  is employed by or is an officer of this state or a
4  political subdivision of this state; and
5         (2)  violates a provision of this code.
6    (c)  A civil penalty imposed under this section may include
7  termination of the person's employment and loss of the person's
8  employment benefits.
9    Sec. 31.130.  SUIT AGAINST ELECTION OFFICER.  An action,
10  including an action for a writ of mandamus, alleging that an
11  election officer violated a provision of this code while acting in
12  the officer's official capacity may only be brought against the
13  officer in the officer's official capacity.
14    SECTION 8.02.  Sections 232.008(b), (c), and (d), Election
15  Code, are amended to read as follows:
16    (b)  Except as provided by Subsection (c), a contestant must
17  file the petition not later than the later of the 45th [30th] day
18  after the date the election records are publicly available under
19  Section 1.012 or the official result of the contested election is
20  determined.
21    (c)  A contestant must file the petition not later than the
22  later of the 15th [10th] day after the date the election records are
23  publicly available under Section 1.012 or the official result is
24  determined in a contest of:
25         (1)  a primary or runoff primary election; or
26         (2)  a general or special election for which a runoff is
27  necessary according to the official result or will be necessary if

63

S.B. No. 1

1 the contestant prevails.

2         (d)  A contestant must deliver, electronically or otherwise,

3 a copy of the petition to the secretary of state by the same

4 deadline prescribed for the filing of the petition.

5         SECTION 8.03.  Title 14, Election Code, is amended by adding

6 Subtitle D to read as follows:

7                  SUBTITLE D.  OTHER ELECTION LAWSUITS

8     CHAPTER 247.  LAWSUIT ALLEGING IMPROPER ELECTION ACTIVITIES

9         Sec. 247.001.  PETITION  ALLEGING  FRAUD.   This  chapter

10 applies to a civil suit in which a candidate in an election alleges

11 in the petition that an opposing candidate, an agent of the opposing

12 candidate, or a person acting on behalf of the opposing candidate

13 with  the  candidate's  knowledge  violated  any  of  the  following

14 sections of this code:

15             (1)  Section 13.007;

16             (2)  Section 64.012;

17             (3)  Section 64.036;

18             (4)  Section 84.003;

19             (5)  Section 84.0041;

20             (6)  Section 86.0051;

21             (7)  Section 86.006;

22             (8)  Section 86.010;

23             (9)  Section 276.013; and

24             (10)  Section 276.015.

25     Sec. 247.002.  PROCEDURE.  A candidate  in  an  election  may

26 file a petition for an action under this chapter in any county where

27 a defendant resided at the time of the election.  If the election is

64

1 for a statewide office, the candidate may also file the petition in
2 a district court in Travis County.

3     Sec. 247.003.  FILING PERIOD FOR PETITION.  A candidate in an
4 election may file a petition for an action under this chapter not
5 earlier than the day after the date the election is certified and
6 not later than the 45th day after the later of that date or the date
7 election records are made publicly available under Section 1.012.

8     Sec. 247.004.  DAMAGES.   (a)   If  it  is  shown  by  a
9 preponderance of the evidence that a defendant, an agent of the
10 defendant, or a person acting on behalf of the defendant with the
11 defendant's knowledge committed one or more violations of a section
12 described  by  Section  247.001,  the  defendant  is  liable  to  the
13 plaintiff for damages in an amount of $1,000 for each violation.

14     (b)  Notwithstanding  Section  41.004,  Civil  Practice  and
15 Remedies Code, a court shall award damages under Subsection (a) to
16 the  plaintiff  irrespective  of  whether  the  plaintiff  is  awarded
17 actual damages.

18     Sec. 247.005.  ATTORNEY'S FEES.   In  an  action  under  this
19 chapter,  the  court  may  award  reasonable  attorney's  fees  to  the
20 prevailing party.

21     SECTION 8.04.  Section 273.061, Election Code, is amended to
22 read as follows:

23     Sec. 273.061.  JURISDICTION.  (a)  The supreme court or a
24 court  of  appeals  may  issue  a  writ  of  mandamus  to  compel  the
25 performance  of  any  duty  imposed  by  law  in  connection  with  the
26 holding of an election or a political party convention, regardless
27 of  whether  the  person  responsible  for  performing  the  duty  is  a

S.B. No. 1

1   public officer.

2       (b)  The  court  of  criminal  appeals  may  issue  a  writ  of

3   mandamus to compel the performance of any duty imposed by law in

4   connection  with  the  provision,  sequestration,  transfer,  or

5   impoundment  of  evidence  in  or  records  relating  to  a  criminal

6   investigation conducted under this code or conducted in connection

7   with the conduct of an election or political party convention.  If a

8   writ of mandamus is issued under this subsection, it shall include

9   an  order  requiring  the  provision,  sequestration,  transfer,  or

10  impoundment of the evidence or record.

11      SECTION 8.05.  Subchapter D, Chapter 22, Government Code, is

12  amended by adding Sections 22.304 and 22.305 to read as follows:

13      Sec. 22.304.  COURT SITTING IN PANELS FOR CERTAIN ELECTION

14  PROCEEDINGS; CRIMINAL OFFENSE.  (a)  In this section, "public

15  official" means any person elected, selected, appointed, employed,

16  or otherwise designated as an officer, employee, or agent of this

17  state, a government agency, a political subdivision, or any other

18  public body established by state law.

19      (b)  Notwithstanding  any  other  law  or  rule,  a  court

20  proceeding entitled to priority under Section 22.305 and filed in a

21  court of appeals shall be docketed by the clerk of the court and

22  assigned to a panel of three justices determined using an automated

23  assignment system.

24      (c)  A  person,  including  a  public  official,  commits  an

25  offense  if  the  person  communicates  with  a  court  clerk  with  the

26  intention of influencing or attempting to influence the composition

27  of a three-justice panel assigned a specific proceeding under this

66

S.B. No. 1

1    section.

2        (d)   An offense under this section is a Class A misdemeanor.

3        Sec. 22.305.   PRIORITY OF CERTAIN ELECTION PROCEEDINGS.  (a)

4    The supreme court or a court of appeals shall prioritize over any

5    other proceeding pending or filed in the court a proceeding for

6    injunctive relief or for a writ of mandamus under Chapter 273,

7    Election Code, pending or filed in the court on or after the 70th

8    day before a general or special election.

9        (b)   If granted, oral argument for a proceeding described by

10   Subsection (a) may be given in person or through electronic means.

11       SECTION 8.06.  Section 23.101, Government Code, is amended

12   by amending Subsection (a) and adding Subsections (b-1) and (b-2)

13   to read as follows:

14       (a)   Except as provided by Subsection (b-1), the [The] trial

15   courts of this state shall regularly and frequently set hearings

16   and trials of pending matters, giving preference to hearings and

17   trials of the following:

18           (1)   temporary injunctions;

19           (2)   criminal actions, with the following actions given

20   preference over other criminal actions:

21               (A)   criminal actions against defendants who are

22   detained in jail pending trial;

23               (B)   criminal actions involving a charge that a

24   person committed an act of family violence, as defined by Section

25   71.004, Family Code;

26               (C)   an offense under:

27                   (i)   Section 21.02 or 21.11, Penal Code;

S.B. No. 1

1          (ii)   Chapter 22, Penal Code, if the victim
2    of the alleged offense is younger than 17 years of age;
3          (iii)  Section 25.02, Penal Code, if the
4    victim of the alleged offense is younger than 17 years of age;
5          (iv)   Section 25.06, Penal Code;
6          (v)    Section 43.25, Penal Code; or
7          (vi)   Section 20A.02(a)(7), 20A.02(a)(8),
8    or 20A.03, Penal Code;
9          (D)   an offense described by Article 62.001(6)(C)
10   or (D), Code of Criminal Procedure; and
11         (E)   criminal actions against persons who are
12   detained as provided by Section 51.12, Family Code, after transfer
13   for prosecution in criminal court under Section 54.02, Family Code;
14        (3)   election contests and suits under the Election
15   Code;
16        (4)   orders for the protection of the family under
17   Subtitle B, Title 4, Family Code;
18        (5)   appeals of final rulings and decisions of the
19   division of workers' compensation of the Texas Department of
20   Insurance regarding workers' compensation claims and claims under
21   the Federal Employers' Liability Act and the Jones Act;
22        (6)   appeals of final orders of the commissioner of the
23   General Land Office under Section 51.3021, Natural Resources Code;
24        (7)   actions in which the claimant has been diagnosed
25   with malignant mesothelioma, other malignant asbestos-related
26   cancer, malignant silica-related cancer, or acute silicosis; and
27        (8)   appeals brought under Section 42.01 or 42.015, Tax

S.B. No. 1

1 Code, of orders of appraisal review boards of appraisal districts
2 established for counties with a population of less than 175,000.

3     (b-1)  Except for a criminal case in which the death penalty
4 has been or may be assessed or when it would otherwise interfere
5 with a constitutional right, the trial courts of this state shall
6 prioritize over any other proceeding pending or filed in the court a
7 proceeding for injunctive relief under Chapter 273, Election Code,
8 pending or filed in the court on or after the 70th day before a
9 general or special election.

10     (b-2)  A hearing in a proceeding described by Subsection
11 (b-1) may be held in person or through electronic means, as
12 determined by the court.

13     SECTION 8.07.  Chapter 23, Government Code, is amended by
14 adding Subchapter D to read as follows:

15               SUBCHAPTER D.  GENERAL PROVISIONS

16     Sec. 23.301.  ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS;
17 CRIMINAL OFFENSE.  (a)  Notwithstanding any other law or rule, the
18 clerk of a district court in which a proceeding entitled to priority
19 under Section 23.101(b-1) is filed shall docket the proceeding and,
20 if more than one district court in the county has jurisdiction over
21 the proceeding, randomly assign the proceeding to a district court
22 using an automated assignment system.

23     (b)  Notwithstanding any other law or rule, the clerk of a
24 county court or statutory county court in which a proceeding
25 entitled to priority under Section 23.101(b-1) is filed shall
26 docket the proceeding and, if more than one court in the county has
27 jurisdiction over the proceeding, randomly assign the proceeding to

S.B. No. 1

1  a court using an automated assignment system.

2      (c)  A person, including a public official, commits an
3  offense if the person communicates with a county or district clerk
4  with the intention of influencing or attempting to influence the
5  court or judge assigned to a proceeding under this section.

6      (d)  An offense under this section is a Class A misdemeanor,
7  except that the offense is a state jail felony if it is shown on the
8  trial of the offense that the person committed the offense while
9  acting in the person's official capacity as an election official.

10     (e)  If a district or county clerk does not comply with this
11 section, a person may seek from the supreme court or a court of
12 appeals a writ of mandamus as provided by Section 273.061, Election
13 Code, to compel compliance with this section.

14     Sec. 23.302.  DEADLINES  IN  CERTAIN  ELECTION  PROCEEDINGS.
15 (a)  Not later than 24 hours after the proceeding is filed, a judge
16 to whom a case is assigned under Section 23.301(b) who wishes to be
17 recused from the proceeding must, before recusal:

18          (1)  hear an application for any emergency temporary
19 relief sought;

20          (2)  grant  or  deny  any  emergency  temporary  relief
21 sought; and

22          (3)  set a scheduling order that provides:

23              (A)  a date for a hearing on any injunction sought
24 not later than five days after the date on which the proceeding was
25 filed; and

26              (B)  discovery  and  deposition  deadlines  before
27 the expiration of any emergency relief order entered.

70

S.B. No. 1

1    (b)  The presiding judge of an administrative region shall
2  assign a new judge to a proceeding assigned under Section 23.301(b)
3  not later than 12 hours after the original judge assigned to the
4  proceeding is recused under Subsection (a).
5    (c)  A final order in a proceeding filed under Section
6  273.081, Election Code, shall be submitted in writing to the
7  parties not later than 24 hours after the judge makes a final
8  determination in the proceeding.
9    (d)  If a district judge does not comply with this section, a
10  person may seek from the supreme court, the court of criminal
11  appeals, or a court of appeals a writ of mandamus as provided by
12  Section 273.061, Election Code, to compel compliance with this
13  section.
14    (e)  Notwithstanding Section 23.101(b-1), a proceeding
15  relating to a permanent injunction being sought in connection to a
16  challenge under Section 141.034, Election Code, may be heard after
17  the primary election has been canvassed.
18    ARTICLE 9.  INELIGIBLE VOTERS AND RELATED REFORMS
19    SECTION 9.01.  Chapter 42, Code of Criminal Procedure, is
20  amended by adding Article 42.0194 to read as follows:
21    Art. 42.0194.  FINDING REGARDING FELONY CONVICTION.  In the
22  trial of a felony offense, if the defendant is adjudged guilty of
23  the offense, the court shall:
24    (1)  make an affirmative finding that the person has
25  been found guilty of a felony and enter the affirmative finding in
26  the judgment of the case; and
27    (2)  instruct the defendant regarding how the felony

71

S.B. No. 1

1  conviction will impact the defendant's right to vote in this state.

2      SECTION 9.02.  Article 42.01, Code of Criminal Procedure, as

3  effective September 1, 2021, is amended by adding Section 16 to read

4  as follows:

5      Sec. 16.  In addition to the information described by

6  Section 1, the judgment should reflect the affirmative finding and

7  instruction entered pursuant to Article 42.0194.

8      SECTION 9.03.  Section 64.012, Election Code, is amended by

9  amending Subsections (a) and (b) and adding Subsections (c) and (d)

10 to read as follows:

11     (a)  A person commits an offense if the person knowingly or

12 intentionally:

13          (1)  votes or attempts to vote in an election in which

14 the person knows the person is not eligible to vote;

15          (2)  [knowingly] votes or attempts to vote more than

16 once in an election;

17          (3)  [knowingly] votes or attempts to vote a ballot

18 belonging to another person, or by impersonating another person;

19 [or]

20          (4)  [knowingly] marks or attempts to mark any portion

21 of another person's ballot without the consent of that person, or

22 without specific direction from that person how to mark the ballot;

23 or

24          (5)  votes or attempts to vote in an election in this

25 state after voting in another state in an election in which a

26 federal office appears on the ballot and the election day for both

27 states is the same day.

S.B. No. 1

1  (b) An offense under this section is a <u>Class A misdemeanor</u>

2 [felony of the second degree unless the person is convicted of an

3 attempt.  In that case, the offense is a state jail felony].

4  <u>(c) A person may not be convicted solely upon the fact that</u>

5 <u>the person signed a provisional ballot affidavit under Section</u>

6 <u>63.011 unless corroborated by other evidence that the person</u>

7 <u>knowingly committed the offense.</u>

8  <u>(d) If conduct that constitutes an offense under this</u>

9 <u>section also constitutes an offense under any other law, the actor</u>

10 <u>may be prosecuted under this section, the other law, or both.</u>

11  SECTION 9.04.  The change in law made by this article in

12 adding Section 64.012(c), Election Code, applies to an offense

13 committed before, on, or after the effective date of this Act,

14 except that a final conviction for an offense under that section

15 that exists on the effective date of this Act remains unaffected by

16 this article.

17 ARTICLE 10.  REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

18  SECTION 10.01.  The following provisions of the Election

19 Code are repealed:

20   (1) Section 85.062(e);

21   (2) Section 86.0105(b); and

22   (3) Section 127.201(f).

23  SECTION 10.02.  If any provision of this Act or its

24 application to any person or circumstance is held invalid, the

25 invalidity does not affect other provisions or applications of this

26 Act that can be given effect without the invalid provision or

27 application, and to this end the provisions of this Act are declared

S.B. No. 1

1  to be severable.

2      SECTION 10.03.  (a)  Except as otherwise provided by this

3  Act, the changes in law made by this Act apply only to an offense

4  committed on or after the effective date of this Act.  An offense

5  committed before the effective date of this Act is governed by the

6  law in effect when the offense was committed, and the former law is

7  continued in effect for that purpose.  For purposes of this section,

8  an offense was committed before the effective date of this Act if

9  any element of the offense occurred before that date.

10     (b)  The changes in law made by this Act apply only to an

11 election ordered on or after the effective date of this Act.  An

12 election ordered before the effective date of this Act is governed

13 by the law in effect when the election was ordered, and the former

14 law is continued in effect for that purpose.

15     (c)  The changes in law made by this Act apply only to an

16 application to vote an early voting ballot by mail submitted on or

17 after the effective date of this Act.  An application to vote an

18 early voting ballot by mail submitted before the effective date of

19 this Act is governed by the law in effect when the application was

20 submitted, and the former law is continued in effect for that

21 purpose.

22     (d)  The changes in law made by this Act apply only to an

23 application for voter registration submitted on or after the

24 effective date of this Act.

25     (e)  Chapter 247, Election Code, as added by this Act,

26 applies only to a cause of action for which the associated election

27 occurred after the effective date of this Act.

74

S.B. No. 1

1        SECTION 10.04.  This Act takes effect on the 91st day after

2   the last day of the legislative session.

S.B. No. 1

_____        _____
   President of the Senate              Speaker of the House

    I hereby certify that S.B. No. 1 passed the Senate on August 12, 2021, by the following vote: Yeas 18, Nays 11; August 27, 2021, Senate refused to concur in House amendments and requested appointment of Conference Committee; August 29, 2021, House granted request of the Senate; August 31, 2021, Senate adopted Conference Committee Report by the following vote: Yeas 18, Nays 13.

                        _____
                          Secretary of the Senate

    I hereby certify that S.B. No. 1 passed the House, with amendments, on August 27, 2021, by the following vote: Yeas 80, Nays 41, one present not voting; August 29, 2021, House granted request of the Senate for appointment of Conference Committee; August 31, 2021, House adopted Conference Committee Report by the following vote: Yeas 80, Nays 41, one present not voting.

                        _____
                          Chief Clerk of the House

Approved:

_____
           Date

_____
          Governor

76

7/19/22, 10:50 AM                     Dallas County Republican Party Mail - FW: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May ...

 **DALLAS** COUNTY REPUBLICAN PARTY                                                                                  Jennifer Hajdu <jennifer@dallasgop.org>

---

### FW: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT
2 messages

---

**Michael Scarpello** <Michael.Scarpello@dallascounty.org>
To: Jennifer Hajdu <jennifer@dallasgop.org>, Susan Fountain <susanf@dallasgop.org>
Cc: Melissa Kouba <Melissa.Kouba@dallascounty.org>, Shannon Zimlich <Shannon.Zimlich@dallascounty.org>, Matthew Fairchild <Matthew.Fairchild@dallascounty.org>

Jennifer and Susan, I just wanted to make you aware of the issues in the email chain below. Ms. Robertson is not only being difficult with me, my understanding is that she has poached mult locations without the consent or even knowledge of our team and some of those other locations are short of workers.

So, it seems that as of now she has 16 poll workers scheduled and we have only authorized 9 to work at her location.

Thoughts on what we might be able to do to manage this situation?

Thanks,

Mike

**Michael Scarpello**

Dallas County Elections Administrator

1520 Round Table Drive

Dallas, TX 75247

(214) 819-6335

EXHIBIT

8

---

**From:** Angela Robertson <angelalanerobertson@gmail.com>
**Sent:** Thursday, May 5, 2022 4:49 PM
**To:** Michael Scarpello <Michael.Scarpello@dallascounty.org>
**Subject:** Re: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT

As a retired business executive and Texan for 60 years, I have an extensive network and recruited 16 people to work at our vote centers on Saturday.

I think I will be too busy to talk on the phone Saturday

Angela Robertson

On May 5, 2022, at 3:04 PM, Michael Scarpello <Michael.Scarpello@dallascounty.org> wrote:

Ms. Robertson, I really appreciate that you've "crunched" some numbers. But please understand that we have a proven methodology to project voter turnout. Also please understand March election was almost 16%. This election, in turn, the turnout will most likely be around 7%. Nonetheless, our original projections were based off of a projection of 9% just to be s: there are hot spots where there are hot races. After Early Voting we adjusted for those hot spots, thus the 34% increase in projected turnout for your location.

On top of that, we have allocated even more equipment just to make sure we had enough. With your current allotment, you have enough e-pollbooks to handle 1,440 voters and you h to handle 1,680 voters for the day. Contrast those numbers with our updated projections that say you will have 801 voters.

While I appreciate your concerns and have reacted to them, I also have an obligation to conduct this election in a fiscally responsible manner because the participating jurisdictions hav equipment and each person who works at the polls. If we simply allowed every Judge to have as much equipment and personnel as they wanted, without doing our homework first, we responsible.

Having said that, I can assure you that we will monitor your hourly numbers and if by chance, we see some unexpected spikes, we will respond accordingly with additional machines ar To do so, its incredibly important that you make sure all your e-pollbooks are up and running and are connected to the network.

Finally, I'd like to repeat my original question. Will you be able to obtain 2 (or 3) clerks? Or do you need additional assistance to obtain them?

Thanks again for your service. I look forward to talking to you during the day as I will be giving you a call to see how things are going.

Mike

**Michael Scarpello**

Dallas County Elections Administrator

1520 Round Table Drive

CONFIDENTIAL                                                                                                                      RPCI_0000361

7/19/22, 10:50 AM                      Dallas County Republican Party Mail - FW: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May ...

Dallas, TX 75247

(214) 819-6335

**From:** Angela Robertson <angelalanerobertson@gmail.com>
**Sent:** Thursday, May 5, 2022 2:35 PM
**To:** Michael Scarpello <Michael.Scarpello@dallascounty.org>
**Subject:** Re: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT

Yes, I still have concerns.

For May 7, total authorized workers was 7, and now is 9.

**Authorized workers for May 7, needs to be same as March 1, which I recall was 14.**

I attached proof of March 1 final vote count of 1083...............without a router first hour, thus 100 voters per hour.

Also attached is my 4/27 calculation of anticipated V2059 voter count for 5/7, which totals 1573.

**May 7 is a shorter ballot than March 1, thus we need at least 9 e-pollbooks and the same number of voting machines as we had March 1.**

On Thu, May 5, 2022 at 1:11 PM Michael Scarpello <Michael.Scarpello@dallascounty.org> wrote:

Ms. Robertson, one correction from my previous email.  I meant to say "alternate judge" not "alternate clerk."

**Michael Scarpello**

Dallas County Elections Administrator

1520 Round Table Drive

Dallas, TX 75247

(214) 819-6335

**From:** Michael Scarpello
**Sent:** Thursday, May 5, 2022 1:03 PM
**To:** Angela Robertson <angelalanerobertson@gmail.com>
**Cc:** Malissa Kouba <Malissa.Kouba@dallascounty.org>; Matthew Fairchild <Matthew.Fairchild@dallascounty.org>; Shannon Zimlich <Shannon.Zimlich@dallascounty.org>
**Subject:** RE: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT

Ms. Robertson, we've concluded our analysis of Early Voting turnout and have made adjustments to our Election Day projections and you are correct that Audelia did experience hig
we are making adjustments in your allocations.

I've included some information about what we expect at your location so that you can see our logic.  Our conclusion is that we are providing two more electronic poll books and three
believe the additional allocations should be more than adequate given the following:

1. EV turnout tells us that ED turnout may be 34% higher than expected so we adjusted from 598 to 801 expected voters.  The average per hour is 66.8 voters but the expected
   81 voters.
2. In order to handle 81 voters in an hour, we estimate that you need 3.31 e-pollbooks and 3.97 voting machines.  But, in an abundance of caution, we are allocating 5 e-pollboc
   the Judge, as well as 9 voting machines including 7 regular machines and 2 ADA machines.

So this means that you should have an additional two more clerks to handle your check-ins.  Also, our records do not show that your alternate clerk has confirmed.  If they haven't co
recommend that you add yet another clerk to fill that spot.  Do you need assistance with clerks or do you have three people that you can add to your crew?

Let me know if you still have concerns.

| VC #<br>Current | VC Name | Estimated<br>Number<br>for May<br>2022<br>Turnout | Post EV<br>Adjustments<br>to Estimated<br>Turnout | AVG<br>12<br>Hr | Peak<br>Hrly<br>Estimate | Peak<br>Hrly<br>Turnout | Estimated<br>E-<br>Pollbooks | Estimated<br>Peak Hr<br>E-<br>Pollbooks | Estimated<br>Voting<br>Machines | Estimated<br>Voting<br>Machines<br>Peak Hr |
|---|---|---|---|---|---|---|---|---|---|---|
| V2059 | Audelia Road Branch Library | 598 | 801 | 66.8 | 10% | 81 | 2.78 | 3.31 | 3.34 | 3.97 |

**Michael Scarpello**

Dallas County Elections Administrator

CONFIDENTIAL

RPCI_0000362

1520 Round Table Drive

Dallas, TX 75247

(214) 819-6335

**From:** Angela Robertson <angelaannerobertson@gmail.com>
**Sent:** Thursday, May 5, 2022 8:48 AM
**To:** Michael Scarpello <Michael.Scarpello@dallascounty.org>
**Subject:** Re: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT

Mike,

Please reply in the next couple hours with your approval of my problem-preventing request that is substantiated below.

I hope to work well with you for many years.

Thanks, Angela

On May 2, 2022, at 1:45 PM, Michael Scarpello <Michael.Scarpello@dallascounty.org> wrote:

Ms. Robertson, as a matter of fact, I just got out of our regularly scheduled meeting where we were analyze the trends from early voting to see if adjustments are needed to b
Day, and Audelia Library was the one location that jumped out at us. Consequently, we will most likely be making adjustments but haven't finalized those numbers quite yet.

Thanks for the heads up. We will be in touch regarding any changes in your allocations.

Mike

**Michael Scarpello**

Dallas County Elections Administrator

1520 Round Table Drive

Dallas, TX 75247

(214) 819-6335

**From:** Angela Robertson <angelaannerobertson@gmail.com>
**Sent:** Monday, May 2, 2022 1:38 PM
**To:** Malissa Kouba <Malissa.Kouba@dallascounty.org>; Michael Scarpello <Michael.Scarpello@dallascounty.org>
**Subject:** [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May 7 ****URGENT

Ms. Kouba and Mr. Scarpello,

I write to you as follow up to the message below, and your agreement to my virtual comments in the 4/11 VCAC and 4/12 CEAC meetings. Audelia Library will have one of th
turnouts on May 7.

Based on your EV count report attached, Audelia Library staff allocation needs to be doubled for May 7. Saturday it had the second highest number of voters, of your 57 EV

Staff allocation for Audelia Library on May 7 needs to be doubled to equal staff allocation there on March 1, when there were 100 voters an hour. Per attachment, total was 1
the first hour.

That neighborhood has two contested races and I know you are happy to see high vote counts.

Cooperating with your effort to reduce the number of vote centers, these vote centers in the neighborhood will not be used this month; Wallace Elementary, Lake Highlands Ji
Highlands High School. Staff and computers that would have been used there, are needed at Audelia Library, on May 7.

Audelia Library needs to retrieve 9 e-pollbooks at Our Redeemer on 5/5.

Through Wednesday, this is my highest priority. I hope we can work well together for many years.

Angela Robertson

CONFIDENTIAL                                                                                      RPCI_0000363

On Mon, May 2, 2022 at 11:31 AM Malissa Kouba <Malissa.kouba@dallascounty.org> wrote:

Dear ANGELA ROBERTSON:

Please carefully review the information about the May 7, 2022 Constitutional Amendment and Joint Election below as some information may have changed.

## Vote Center Location

The vote center you have been appointed to serve at is:

V2059 Audelia Road Branch Library

10045 Audelia Rd, Dallas, 75238

## Judges at Your Vote Center

- This is a non-partisan election, and you are appointed to the role of JUDGE.

The Alternate Judge appointed to serve at your location is listed below.

GERALD OAKLEY

(214) 329-7514 LEE.OAKLEY@GMAIL.COM

The alternate judge assigned for this election **not confirmed with DCED** for this election.

## Clerks at Your Vote Center

- As the Presiding Judge, you are responsible for securing clerks to assist you at your vote center.
- **For this election, you have been allocated 6 clerk positions to assist you**
  - If the Alternate Judge is listed above, and noted as confirmed, one of the allocated clerk positions is filled by them.
  - If the Alternate Judge is listed as *Vacant – Assign Clerk*, or if the alternate judge has not confirmed, the total number of allocated clerks is available to be fill
- **Requirements / Qualifications of Clerks**

When selecting your clerks, please remember that:

  - If possible, one clerk at each location should be bilingual and speak both English and Spanish.
  - If possible, one clerk at each location should be bilingual and speak both English and Vietnamese.
  - The remaining clerks may be of your choosing but must be qualified voters of Dallas County or qualified student clerks.
  - A clerk selected to work at a Vote Center cannot be:
    - A person who holds an elective public office
    - A candidate for public office in an election to be held on the same day
    - Employed by, or related within the second degree to, an opposed candidate for public office or the party office of county chairman
    - A campaign treasurer of a candidate in the election
    - A campaign manager of a candidate in the election

- **Student Clerks**

The Elections Department recruits a pool of student clerks from local high schools to work at vote centers on Election Day.  Student clerks are assigned at the request request a student clerk to serve at your vote center, contact the Voting Sites Department.  Assigned student clerks are counted towards your allocated number of clerk

- **Standby Clerks**

The Elections Department also has a pool of potential poll workers available to serve and we are happy to assist you in securing clerks or bilingual clerks for your vote need arise. If you need clerks assigned to serve at your location, please contact the Voting Sites team ASAP as placement is underway.

- A *Poll Worker Information Form* can be found here: https://www.dallascountyvotes.org/wp-content/uploads/PW-Information-Form_Final.pdf.  **If you have not alread form including the information of your assigned clerks and any stand-by clerks and email it to VotingSites-ED@dallascounty.org. Timely receipt of this information is cri preparation activities.**

## Training

If you have not already scheduled for or attended training, please see the information below.

Judges who worked in the 2022 March Primary Election will have two options for training.

  1) Attend a one-hour virtual refresher class focused on newly implemented changes and specific areas of the judge's duties, or

  2) Attend a 5-hour in-person advanced training class which includes the basic training coursework and interactive training on required forms and procedures spe Judge.

Clerks who worked in the 2022 March Primary Election do not have to attend any training.  However, they can sign up for an in-person training class or can review the train our website.

Clerks who did not work in the 2022 March Primary Election must attend a basic training class.  Basic training classes will be three hours and will include an overview of el and hands on training of the election equipment.

Training classes can be scheduled online via the Dallas County Election Poll Worker Portal.  If you have already signed up for the portal, you can schedule a class using y the link here: Easy Poll Worker Required Classes

CONFIDENTIAL

RPCI_0000364

If you have not signed up for the portal, please contact our office for assistance with logging in.

## Supply Pick-up

Most election equipment and supplies will be delivered to your vote center prior to Election Day.  However, the Presiding Judge, is responsible for picking up Electronic Pol Judge's Orange Case for each vote center.  Please see below information regarding your assigned Regional Site.

Supply Pick will be held on May 05, 2022, from 2pm – 7pm at:

RS03 Our Redeemer Lutheran Church

7611 Park Ln

Dallas, TX 75225

## Vote Center Set-Up

Prior to Election Day, it would be very beneficial to you to visit your vote center to establish your Election Day contact and to start setting up your vote center.  The contact center set up, or for other questions regarding your vote center is:

Julie Gonzalez 214-670-1350

## Compensation

The Dallas County Commissioners Court recently approved an increase in payrates for Election Day Judges and Co-Judges from $18 per hour to $20 per hour. Clerks will $16 per hour.  Workers should report to the vote center no later than 6am and will work until the vote center is closed and all closing procedures have been completed. All compensated for their actual time worked, beginning up to one hour prior to the opening of the vote center (6am) through up to two hours after the vote center is closed.  P poll workers who pick up election supplies and deliver voted ballots and other limited supplies to the regional site after the polls close will receive an additional $25.

Additionally, the Dallas County Commissioners Court approved compensation for attending training as follows:

- $50 for attending a Basic Training Class
- $100 for attending an Advanced In-Person Training Class
- $30 for attending a Refresher Advanced Training Class (In-Person or Virtual)

## Confirmation of Service

If you have not done so already, please email VotingSites-ED@dallascounty.org to either confirm your availability to serve, or to decline serving for this election.

If you have any questions or need additional information, please do not hesitate to contact us.

Sincerely,

Voting Sites Department

214-819-6332

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the re notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates e protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**This message came from outside of Dallas County Government. Please be thoughtful before you click a link or provide your login i**

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recip notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates ema protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human e failure, and to lead the movement toward building a more resilient world. To find out more, visit our website.

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, yo disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defens

CONFIDENTIAL

RPCI_0000365

Case 5:21-cv-00844-XR Document 692-2 Filed 07/29/23 Page 129 of 129

7/19/22, 10:50 AM          Dallas County Republican Party Mail - FW: [External Sender]V2059 Audelia Library staff allocation needs to be doubled for May …

security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology movement toward building a more resilient world. To find out more, visit our website

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you e disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; an building a more resilient world. To find out more, visit our website

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are here copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with br training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the move world. To find out more, visit our website

---

**Jennifer Hajdu** <jennifer@dallasgop.org>                                                    Fri, May 6, 2022 at 8:47 AM
To: Michael Scarpello <Michael.Scarpello@dallascounty.org>
Cc: Susan Fountain <susanf@dallasgop.org>, Malissa Kouba <Malissa.Kouba@dallascounty.org>, Shannon Zimlich <Shannon.Zimlich@dallascounty.org>, Matthew Fairchild <Matthew.Fairchild@dallascounty.org>

Michael:

I have sent Angela an email asking her to stop and work with the Elections Department. My apologies. I will also try to call her.

Jennifer

Jennifer Stoddard Hajdu
Dallas County Republican Party Chairman
Dallas County Republican Party
11617 N. Central Expressway, Suite 240
Dallas, TX 75243



## DALLAS
### County Republican Party
### Fighting for Freedom

*Copyright 2022 DallasGOP, All rights reserved.*

[Quoted text hidden]

CONFIDENTIAL                                                              RPCI_0000366