IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 5:21-CV-0844-XR |
| | § | [Consolidated Cases] |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

## SUMMARY RULING ON SECTION 101 MATERIALITY CLAIMS AND ORDER ON PRETRIAL FILINGS

On this date, the Court considered (1) the motions for summary judgment as to the Section 101 Materiality Provision claims in this consolidated matter filed by the United States (ECF No. 609), the OCA Plaintiffs (ECF No. 611), and the Intervenor-Defendants (ECF No. 608); (2) the parties' Advisory Regarding Section 101 Materiality Provision Claims (ECF No. 701); (3) Plaintiff's motion for an extension of time and request for a modification to the Court's guidance on pretrial submissions (ECF No. 703); and (4) the response in opposition to Plaintiff's motion filed by the State Defendants and Intervenor-Defendants (ECF No. 704). After careful consideration, the Court issues the following order.

### BACKGROUND

These consolidated cases are set for a bench trial to begin on September 11, 2023. On July 28, 2023, the parties provided a Joint Notice Regarding Trial Procedures indicating that the parties intended to file an advisory estimating the time needed for presentation of their affirmative cases and cross-examination by August 11. *See* ECF No. 683. On August 1, 2023, the Court filed an

order with guidance on the parties' anticipated submissions. ECF No. 695.[1] The Court's order (1) directed the parties, and in particular the Private Plaintiffs, to cull their witness lists and (2) clarified that the August 11 advisories should, among other things, identify which witnesses were expected to testify on which days and the subject of their testimony. *See id.*

On August 9, the United States filed an advisory indicating that the United States, OCA Plaintiffs, State Defendants, and Intervenor-Defendants agreed that the Section 101 claims could be resolved on summary judgment.[2] ECF No. 701. They further agreed that, "[t]o the extent the Court determines prior to trial that the Section 101 claims are subject to summary judgment in favor of any party, . . . those claims can be excluded from trial pending their resolution by the Court, even if the Court has not yet finalized its opinion and order." *Id.* at 1. They noted that resolving the Section 101 claims on summary judgment would obviate the need for the United States to call any witnesses at trial, eliminate the need for OCA Plaintiffs to call approximately 20 witnesses, eliminate the need for State Defendants to call at least three of their witnesses, and narrow the scope of other likely witnesses' testimony, including organizational representatives and county and State election officials. *Id.*

On August 11, the Private Plaintiffs filed a motion requesting that the Court modify the directives in its August 1 order to:

(1) extend to August 18 the date by which the parties must provide the requested witness schedule;[3]

---

[1] The Court thereafter filed an Amended Order providing an updated list of dates available for trial proceedings. *See* ECF No. 700.

[2] The "OCA Plaintiffs" include Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, and REVUP-Texas. The "Intervenor-Defendants" include the Harris County Republican Party, the Dallas County Republican Party, the Republican National Committee, the National Republican Senatorial Committee, and the National Republican Congressional Committee.

[3] The Private Plaintiffs' motion also noted the Courtroom Deputy's request that the parties submit a pretrial advisory identifying counsel expected to conduct direct and cross examinations for each witness. The Courtroom Deputy did not intend to amend the Court's August 1 advisory or any pretrial deadlines, but only sought to collect this

    (2)    allow the parties to identify the week of the trial a witness will be called rather than a specific day; and

    (3)    direct the parties to provide, to all other parties, 24-hour's notice of the names of the witnesses they will call on each trial day.

ECF No. 703

The State Defendants and Intervenor-Defendants opposed the motion and instead proposed that the Court either (1) extend all remaining pretrial deadlines by seven days to correspond with Private Plaintiffs' requested extension or (2) maintain the requirement that all Parties submit the proposed trial schedules by August 11, and allow the Parties to continue to cull their witness lists and supplement the schedule by Private Plaintiffs' proposed August 18 deadline. *See* ECF No. 704; *see also* ECF No. 705 (Defendant Kim Ogg's joinder to ECF No. 704).

The Court will provide further guidance on the parties' pretrial submissions herein. To assist the parties with their trial preparation, the Court will issue a summary ruling, described below, on the motions for summary judgment bearing on the Section 101 Materiality Provision filed by the United States (ECF No. 609), the OCA Plaintiffs (ECF No. 611), and the Intervenor-Defendants (ECF No. 608). The summary ruling will be followed in the coming weeks by a final written opinion and order.

## DISCUSSION

The United States and the OCA Plaintiffs allege that various provisions of S.B. 1 adding an identification number requirement to Texas's mail-in voting process violate the Materiality Provision of Section 101 of the Civil Rights Act of 1964, which provides that:

> "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating

---

information at the parties' earliest convenience on behalf of the Court Reporter, given the large number of attorneys and witnesses in this case.

3

to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual qualified under State law to vote in such election."

52 U.S.C. § 10101(a)(2)(B). "Voting" includes "all action necessary to make a vote effective including, but not limited to . . . casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast." *Id.* §§ 10101(a)(3)(A), 10101(e).

Several provisions of S.B. 1 amend the procedures for applying for and casting mail-in ballots under the Texas Election Code ("TEC"):

- **Section 5.02** requires voters to write one of three pieces of information on their application for a ballot by mail ("ABBM"): (1) the "number of the applicant's driver's license, election identification certificate, or personal identification card issued by the Department of Public Safety" (collectively, a "DPS ID number"); or (2) if the applicant "has not been issued" a DPS ID number, "the last four digits of [their] social security number" ("SSN4"); or (3) if the applicant lacks both a DPS ID number and an SSN4, a statement to that effect. TEC § 84.002(a)(1-a). A voter is permitted to use an expired DPS ID number, if the number is otherwise valid, for purposes of fulfilling these requirements. *Id.* § 84.002(b-1).

- **Section 5.03** requires the SOS's "officially prescribed" ABBM to include a space for entering this information. TEC § 84.011(a), (a)(3-a); *see id.* § 31.002.

- **Section 5.07** requires that early voting clerks "shall reject" mail ballot applications that do not include a DPS number or SSN4 that identifies "the same voter identified on the applicant's application for voter registration." TEC § 86.001(f).

- **Section 5.08** requires that the carrier envelope in which the ballot envelope is mailed include a space, hidden from view when sealed, for the voter to enter the same identification number information required under Section 5.02. TEC § 86.002(g).

- **Section 5.10** requires the SOS's Ballot by Mail Tracker to "allow a voter to add or correct information" on their ABBM or carrier envelope as required by S.B. 1's matching-number requirement. TEC § 86.015(c)(4).

- **Sections 5.12 and 5.14** amend the responsibilities of the Early Voting Ballot Board, and any Signature Verification Committee, if appointed, to include notifying the voter of any carrier envelope flagged for rejection for a variety of reasons, including pursuant to S.B. 1's number-matching requirement, and sets out a notice-and-cure scheme. *See* TEC §§ 87.0411; 87.0271.

- **Section 5.13** establishes that a mail ballot "may be accepted only if" the DPS number or SSN4 on the carrier envelope or signature sheet identifies "the same voter identified on the applicant's application for voter registration." TEC § 87.041(b)(8).

4

The OCA Plaintiffs attack the number-matching framework as a whole,[4] while the United States merely challenges the provisions requiring election officials to reject applications to vote by mail and mail-in ballots bearing identification numbers that do not match voter registration records—Sections 5.07 and 5.13 of S.B. 1. *See* ECF No. 200 ("OCA Compl.") at 45–46; *United States v. Texas*, No. 5:21-cv-1085-XR, ECF No. 1 ("USA Compl.") at 16–17. Both the United States and the OCA Plaintiffs seek injunctive relief against the enforcement of the provisions they challenge and a declaration that those provisions violate Section 101 of the Civil Rights Act of 1964. *See* OCA Compl. at 46, 75–76; USA Compl. at 17.

Both the OCA Plaintiffs and the United States have moved for summary judgment as to their Section 101 claims. *See* ECF No. 609 (USA MSJ); ECF No. 611 (OCA MSJ). The motions are opposed by both the State Defendants and the Intervenor-Defendants. *See* ECF Nos. 645, 646, 634, 635. The Intervenor-Defendants have also filed a cross-motion for summary judgment (ECF No. 608 at 13–23), in which the State Defendants have joined (ECF No. 610), asserting that the Section 101 claims brought by the United States and the OCA Plaintiffs fail as a matter of law.

After reviewing the summary judgment record, the Court concludes that Sections 5.07 and 5.13 of S.B.1, codified in Sections 86.001(f) and 87.041(b)(8) of the Texas Election Code, require officials to reject mail-in ballot applications and mail-in ballots based on errors or omissions on a record or paper relating to an act requisite to voting that are <u>not</u> material in determining whether

---

[4] In their motion for summary judgment, the OCA Plaintiffs stated that they seek to challenge Sections 5.02, 5.03, 5.07, 5.08, 5.10, 5.12, 5.13, and 5.14 of S.B. 1, or amended TEC Sections 84.002(a)(1-a), (b-1); 84.011(a)(3-a); 86.001(f), (f-1), (f-2); 86.002(g), (h), (i); 86.015(c)(4); 87.0271(a)(4); 87.041(b)(8); and 87.0411(a)(4). ECF No.611 at 8 n.1. They further asserted that, while their Second Amended Complaint also challenged Section 5.06, they had voluntarily withdrawn that claim. ECF No. 611 at 8 n.1. Although it will not meaningfully affect the disposition of the Section 101 claims, the Court observes that the Second Amended Complaint does not appear to include any references to Sections 5.08, 5.13, or 5.14 of S.B. 1. *See generally* ECF No. 200.

5

voters are qualified under Texas law to vote or to cast a mail ballot, in violation of the Materiality Provision of Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B).

Accordingly, the United States' motion for summary judgment (ECF No. 609) is **GRANTED**. A written order awarding the declaratory and injunctive relief as to Sections 5.07 and 5.13 of S.B. 1 requested therein will follow.

The OCA Plaintiffs' motion for summary judgment (ECF No. 611) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to the OCA Plaintiffs' challenge to Section 5.07 of S.B. 1. The motion is denied as to the OCA Plaintiffs' challenges to Sections 5.08, 5.13, and 5.14 for failure to raise those provisions in their Second Amended Complaint. The motion is further denied as to Sections 5.02, 5.03, 5.08, 5.10, 5.12, and 5.14 because none of those provisions require that mail-in ballot applications or mail-in ballots be rejected on any basis. Rather, those provisions merely address the procedures for collecting, tracking, and correcting the relevant identification numbers. Indeed, the OCA Plaintiff's Second Amended Complaint explicitly concedes that "the State may legally request this information from voters (for example, as an optional data point that would prevent the need for a signature review)." OCA Compl. at 45.

Finally, Intervenor-Defendants' motion for summary judgment (ECF No. 608) is **GRANTED IN PART** and **DENIED IN PART** as to the Section 101 claims. The motion is granted as to the OCA Plaintiffs' challenges to Sections 5.02, 5.03, 5.08, 5.10, 5.12, and 5.14 of S.B. 1 because, as discussed above, those provisions do not require the rejection of any voting materials. The Intervenor-Defendants' motion as to the Section 101 claims is otherwise denied because its proposed constructions of the Materiality Provision are unsupported by the text of the statute.

These summary rulings will be followed in the coming weeks by a final written opinion and order. To the extent possible, the Court will continue to enter summary rulings on the pending motions for summary judgment in advance of trial in order to narrow the scope of issues that remain to be tried in this case.

## CONCLUSION

For the reasons stated herein and to be set out more fully in a forthcoming opinion, the United States' motion for summary judgment (ECF No. 609) is **GRANTED**.

It is **FURTHER ORDERED** that OCA Plaintiffs' motion for summary judgment (ECF No. 611) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to the OCA Plaintiffs' challenge to Section 5.07 of S.B. 1 and **DENIED** in all other respects.

The parties are **DIRECTED** to pare down their witness lists in accordance with the Court's summary rulings on the Section 101 claims.

It is **FINALLY ORDERED** that the Private Plaintiff's motion for an extension of time and request for a modification to the Court's guidance on pretrial submissions (ECF No. 703) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

By no later than **August 25, 2023**, the parties are **DIRECTED** to provide an advisory indicating which witnesses they expect to call. Thereafter, the parties shall, on three-days' notice to the Court and remaining parties, identify which witnesses will be called on each day of trial on a rolling basis.

It is so **ORDERED**.

**SIGNED** this 17th day of August, 2023.

                                             _____
                                             XAVIER RODRIGUEZ
                                             UNITED STATES DISTRICT JUDGE