```
1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
2                   SAN ANTONIO DIVISION

3

   LA UNION DEL PUEBLO ENTERO,    .
4  ET AL,                         .
                                  .
5              PLAINTIFFS,        .
          vs.                     . DOCKET NO. 5:21-CV-844-XR
6                                 .
   GREGORY W. ABBOTT, ET AL,      .
7                                 .
               DEFENDANTS.        .
8

9

10            TRANSCRIPT OF STATUS CONFERENCE
         BEFORE THE HONORABLE XAVIER RODRIGUEZ
11            UNITED STATES DISTRICT JUDGE
                  AUGUST 22, 2023

12

13

14

15 APPEARANCES:
   FOR THE PLAINTIFFS:     NINA PERALES, ESQUIRE
16                         MALDEF
                           110 BROADWAY STREET
17                         #300
                           SAN ANTONIO TX 78205
18

19                         CHRISTOPHER DOOLEY DODGE
                           ELIAS LAW GROUP LLP
20                         250 MASSACHUSETTS AVENUE NW
                           SUITE 400
21                         WASHINGTON DC 20001

22

23                         JENNIFER HOLMES, ESQUIRE
                           NAACP LEGAL DEFENSE & EDUCATIONAL
24                          FUND INC
                           700 14TH STREET NW, SUITE 600
25                         WASHINGTON DC 20005
```

```
 1

 2                              VICTOR GENECIN, ESQUIRE
                                NAACP LEGAL DEFENSE & EDUCATIONAL
 3                               FUND INC.
                                40 RECTOR STREET
 4                              FIFTH FLOOR
                                NEW YORK NY 10006
 5

 6                              ZACHARY DOLLING, ESQUIRE
                                TEXAS CIVIL RIGHTS PROJECT
 7                              1405 MONTOPOLIS DRIVE
                                AUSTIN TX 78741
 8

 9
     FOR THE DEFENDANTS:        RYAN KERCHER, ESQUIRE
10                              TEXAS ATTORNEY GENERAL
                                P.O. BOX 12548
11                              MC 009
                                AUSTIN TX 78711
12

13                              ANTHONY J. NELSON, ESQUIRE
                                TRAVIS COUNTY ATTORNEY'S OFFICE
14                              314 WEST 11TH STREET
                                ROOM 590
15                              AUSTIN TX 78701

16

17                              ERIC J.R. NICHOLS, ESQUIRE
                                BUTLER SNOW LLP
18                              1400 LAVACA STREET
                                SUITE 1000
19                              AUSTIN TX 78701

20

21

22

23   REPORTED BY:              GIGI SIMCOX, RMR, CRR
                                OFFICIAL COURT REPORTER
24                              UNITED STATES DISTRICT COURT
                                SAN ANTONIO, TEXAS
25
```

1      *(San Antonio, Texas; August 22, 2023, at 1:30 p.m., via*
2   *Zoom videoconference.)*
3          THE COURT:  Good afternoon.  Let's call 21 civil 844,
4   LUPE versus Gregg Abbott and others.
5          Let's get a — well, I was going to say let's do a
6   roll call.  Instead of doing a roll call, whoever speaks, be
7   sure to identify yourself clearly for the court reporter and
8   who you represent.
9          But before I start recognizing folks, so there was a
10  request for a status conference on this to ask for some
11  clarification on how we ought to proceed.  I'm not sure I
12  understood the question.  I'll state a few words and I'll turn
13  it over to somebody from the plaintiffs' group to respond.
14         So we have a number of other counts besides the
15  materiality issue that we've disposed of.  So, for example, we
16  have violation of the First and Fourteenth Amendments,
17  violation of the Fifteenth Amendment, violation of Section 2
18  of the Voting Rights Act, violation of Section 208, violation
19  of the ADA, violation of Rehab Act, so it just goes on and on.
20         So how I would like to see this case proceed is in
21  the pretrial order what I would like to see is which remaining
22  claims are you going forward on?  Are any of these claims
23  being dropped by the plaintiffs' groups?
24         In the various amended complaints, you know, various
25  different provisions of SB 1 were being challenged; for

1  example, 309 to 310, 304, 312, 313, and 315 on the argument
2  that it burdened in-person voting and voting generally in
3  violation of Voting Rights Act of Section 2 as well as the
4  Fourteenth Amendment, and so just using that as an example are
5  the plaintiffs' groups still going forward on that claim?  Are
6  any of these kind of specific claims being dropped?  The
7  partisan watcher provisions, for example.
8         I would have thought as we moved forward in this case
9  that perhaps some of the claims were being dropped, but maybe
10 I'm mistaken there and maybe you're going forward on
11 everything.
12        I guess if we're going forward on everything other
13 than materiality, what I would like to see in this trial is,
14 let's just take the ADA one for simplicity, I would like to
15 see us, you know, take that claim in isolation.
16        We start — and I'm not saying we start with that
17 claim, but we do the ADA claim first, by way of example.  You
18 identify for me which provisions of SB 1 you claim are
19 violating the Americans with Disabilities Act, which
20 plaintiffs' groups are bringing forward that claim, and then
21 identify which witnesses and which exhibits you're going to
22 use in the prosecution of that ADA claim.
23        And then we do the same thing, repeat that over for
24 all the other claims.  That way, during the process of this
25 trial, we all know exactly which claim we're addressing on

1 which day with what witnesses.  That's my idea of how this

2 goes forward but let me hear from you-all.

3          Who wants to begin first?

4          MISS PERALES:  Good afternoon, Your Honor.  Nina

5 Perales for the LUPE plaintiffs.

6          We did have a request for clarification with respect

7 to the Court's summary judgment ruling and its effect on the

8 remaining claims, and the question is whether the Court plans

9 to continue to try the nonmateriality clause claims against

10 5.07 and 5.13.

11          A number of plaintiffs have challenges to 5.07 and

12 5.13 that are not materiality provision challenges.  And by

13 way of example, I will say that OCA plaintiffs still have ADA

14 claims.  LUPE plaintiffs and others have undue burden, or what

15 are known as Anderson-Burdick claims against 5.07 and 5.13.

16          So we understand from legal research that the Court

17 will exercise its discretion and decide whether or not to hear

18 other challenges to these provisions, 5.07 and 5.13, or

19 whether the Court will decide that because it has already

20 issued a summary judgment on those provisions it will not take

21 evidence as to the other claims on these provisions.

22          THE COURT:  Someone from the State want to respond to

23 that?

24          MR. KERCHER:  Your Honor, Ryan Kercher on behalf of

25 State defendants.

1        Our view is that — well, back up.

2        So as the Court knows, there are challenges to

3  multiple portions of Section 5, including those that the Court

4  has enjoined, as well as some others it declined to enjoin.

5        Our, the State's view, is that either we should

6  proceed with trying the plaintiffs' claims against all of the

7  Section 5 provisions at issue or against none of them, because

8  it's difficult to try those claims in isolation, particularly

9  since some of them have been enjoined.

10        There is, of course, this possibility that we go up

11  to the Fifth Circuit on the materiality ruling and we get

12  remanded for trial and we should consider whether we want to

13  have already had a trial on those Section 5 provisions,

14  understanding that we may have to have another trial on those

15  Section 5 provisions where there will be substantial

16  evidentiary overlap.

17        That's obviously trying to think several steps ahead.

18  We don't know whether there would be a remand, for example,

19  but in terms of efficiency it makes the most sense to us to

20  forestall trial on the Section 5 claims pending possible

21  remand from the Fifth Circuit.  But if we go forward, we would

22  ask to go forward on all the plaintiffs' claims on Section 5

23  provisions.

24        THE COURT:  Anybody else want to chime in on that?

25        Miss Perales, I mean, so the State's recommending I

1  guess deferral on the Section 5 elements for now.  Are you
2  opposed to that or not?
3        MISS PERALES:  I believe Mr. Dodge, for his set of
4  plaintiffs, may have a position he would like to share.
5        MR. DODGE:  Your Honor, Christopher D. Dodge on
6  behalf of the LULAC plaintiffs.
7        It's our view that we move forward on these claims
8  now as to the full set of Section 5 provisions at issue.  As
9  you noted at the outset, there are a host of claims in this
10  case.
11        There are conceptually distinct claims that speak to
12  the relief plaintiffs are seeking against Section 5 of SB 1.
13  They are ready to proceed now.  And for the reasons that
14  Mr. Kercher identified, it makes sense to proceed on these now
15  rather than from a potential remand years from now where much
16  of the evidence that's now ready for trial will potentially be
17  stale, where new discovery may be required on those claims.
18        As Miss Perales alluded to as well, there is case law
19  on this that makes clear that the Court has jurisdiction to
20  consider alternative bases for providing the same relief it's
21  already indicated it's going to provide the United States and
22  the OCA plaintiffs other than materiality provision claims,
23  and so given where we are on this case, given the efforts that
24  have been made by the parties to prepare for trial, from a
25  judicial efficiency standpoint it makes sense for us to put on

1  all the evidence now for the Court to consider so these issues

2  can be tried and then heard on appeal, rather than having the

3  Section 101 claims go up on remand and then come back for a

4  possible retrial.

5        And for the same reasons, we also don't think it

6  makes sense to defer the Section 5 claims unrelated to the

7  materiality provision.  Those should go forward now so all the

8  evidence can be heard now and the appeals can proceed either

9  together or in parallel.

10        MISS PERALES:  And, Your Honor, with respect to LUPE

11  plaintiffs and to ask our position, we are agnostic about

12  whether to go forward on the Section 5 claims alternative

13  theories of liability or not.

14        We just want to point out for the Court that although

15  the Department of Justice, which only had the materiality

16  claim, will not go forward in trial if the Court chooses to

17  hear the remaining claims against Section 5.  That will save

18  us approximately 17 hours of trial time, pursuant to our

19  advisory on August 11.

20        But for private plaintiffs, I think that the — there

21  may not be that savings of time because private plaintiffs

22  will be putting forward their full claims on Section 5 and the

23  not materiality claims.

24        THE COURT:  So I'm inclined to go ahead and hear it

25  all and then as I continue to work on getting a final order on

1  the materiality — now, I'm thinking out loud on this

2  procedurally.  I mean, I don't know whether I can augment that

3  order based upon the trial testimony or not but it seems to me

4  that it ought to just be wrapped up in one package.

5          Mr. Kercher.

6          MR. KERCHER:  I'm not sure I understand the question

7  you are posing, Your Honor.

8          THE COURT:  Well, I guess I'm giving you some

9  opportunity to chime in on my opining out loud that I just

10  hear it all and as I continue to work on finalizing the

11  materiality order, I mean, it's not summary — you know, I've

12  already concluded in the summary judgment.

13          But, I mean, if it's all going to go up, and we all

14  know it's going to go up, maybe then just it has the benefit

15  of the whole record going up there in addition to the summary

16  judgment evidence.

17          MR. KERCHER:  Well, I think the Court would be

18  cabined to the summary judgment evidence and ruling on the

19  summary judgment.  I don't think that it would be proper to

20  sort of augment the summary judgment ruling based on trial

21  testimony.

22          I want to address sort of the way that the Court laid

23  out how it would like trial or at least the pretrial, the

24  pretrial advisory from the parties to be set up.

25          THE COURT:  Go ahead.

1          MR. KERCHER:  When the Court talks about taking, by
2    way of example, the ADA claim, do you envision that the
3    parties will arrange information for you in a pretrial
4    advisory in that way, or are you suggesting that we try to —
5    or that we actually try the case that way, where we would
6    take, you know, three days and try to put on our ADA evidence?
7          THE COURT:  Well —
8          MR. KERCHER:  If it's the latter, I think that would
9    be challenging and inefficient.
10          THE COURT:  So you thought it would be challenging
11    and efficient or inefficient?
12          MR. KERCHER:  Inefficient.
13          THE COURT:  Inefficient.  Okay.  Yeah.
14          So I was throwing that out loud just for thoughts.
15          So I normally don't tell everybody how to try their
16    lawsuit, and so but I'm in a weird position where I don't know
17    where you-all are at, especially with the plaintiffs.
18          I have no idea whether or not you are dropping some
19    of your claims or not.  Let me start there.  Are we going
20    forward on everything else, or are you-all dropped something?
21          MR. DOLLING:  Your Honor,  this is Zachary Dolling
22    for the OCA plaintiffs.  I just wanted to jump in and clarify
23    something that I think maybe some wires are getting crossed
24    here.
25          Pursuant to our advisory to the Court, our

1  understanding is that we are not going to be presenting

2  evidence on the materiality claim at trial and I just want to

3  make sure that that's what we are contemplating here because

4  that's the position that we understood to be the case from

5  your order.

6          THE COURT:  Yeah.  So now we are talking apples and

7  oranges.  Materiality is not being tried in the lawsuit.  We

8  are going to hear everything else on Section 5.

9          And so now I'm trying to figure out have any of the

10 plaintiffs dropped any claims?

11         MISS PERALES:  Your Honor, for LUPE plaintiffs, we

12 did drop claims earlier in the lawsuit.  I don't have the

13 docket entry number for that filing, but we did do that some

14 time ago.

15         THE COURT:  Okay.  And so, you know, there's been

16 more discovery since and so I don't know whether you-all have

17 weighed the prospects of your claims and whether you are

18 planning to drop any additional ones.

19         I would like you in the pretrial order to very

20 clearly identify which claims you're going forward on and then

21 drop by way of footnote saying you are dismissing any other

22 claims and then identify them that you previously brought.  So

23 I'd like to see that at a minimum in the pretrial order.

24         And then for purposes of the pretrial order, and I'm

25 willing to have your thoughts on all this.  So Mr. Kercher

1  thinks it's inefficient to try the case the way I was

2  suggesting, but for purposes of the pretrial order does it

3  make sense for you-all to identify in each of your claims

4  which witnesses and which exhibits you-all are going to use to

5  substantiate those claims?

6          MISS PERALES:  Your Honor, if I might ask a question

7  as to that.

8          First of all, LUPE plaintiffs agree with State

9  defendants that attempting to try the case claim by claim

10  would be inefficient because we're hoping to call witnesses,

11  for example, one time, and they may testify on more than one

12  issue.

13          But my question for the Court right now is:  Does the

14  Court then expect to see witnesses identified multiple times

15  in the joint pretrial order, because a witness may testify to

16  something that spans more than one cause of action.

17          THE COURT:  Yeah.  No, that's a valid point.

18          MISS PERALES:  We could commit, Your Honor, in the

19  witness descriptions to be specific enough as to what the

20  witness is testifying on to give a sense of the injury or the

21  evidence that we're hoping to put forward as to that witness.

22          THE COURT:  So that's of some help to the State I

23  think.

24          Mr. Kercher.

25          MR. KERCHER:  The more information we can get, the

1  better, Your Honor, and we would certainly be in favor of

2  trying to, even if it meant, you know, designating a witness

3  multiple times as, you know, providing evidence in support of

4  more than one claim.

5          I don't think that that would be a useless effort,

6  but if Miss Perales, who has worked very constructively with

7  us through some of these issues, is willing to commit to

8  provide that kind of information on a witness by witness basis

9  rather than organizing it by claim, I think that that's fine.

10         THE COURT:  So at the very least let's have the

11  witnesses be identified further by what claims they are going

12  to testify on.

13         Now, what would be helpful personally, to me,

14  however, is that on this claim by claim basis, so when I'm

15  going to the evidence later when I have to write the findings

16  of fact and conclusions of law if I'm looking for a specific

17  claim then I know which witnesses I'm supposed to be

18  pinpointing on for the evidence.

19         And I realize it will make you maybe do it a couple

20  of times differently on different claims, but I'm looking

21  forward just like you-all are looking forward.  I'm looking at

22  drafting the findings of fact and conclusions of law in the

23  most efficient way possible and that's where I'm thinking.

24         MISS PERALES:  Your Honor, we can endeavor to create

25  some kind of list or chart that presents the witnesses that

1 the Court could be looking at for the different claims.

2        THE COURT:  As well as exhibits.

3        MISS PERALES:  Okay, yes, Your Honor.

4        And we also commit to providing fulsome and excellent

5 proposed findings of fact and conclusions of law after the

6 trial.

7        THE COURT:  Well, that will be helpful, but you-all

8 know already I'm going to draft my own.  And that's going to

9 be applying to both sides.  So just heads-up on how I'm going

10 to operate, right?

11        I'm going to draft my own from scratch based upon

12 what I thought were findings of fact and conclusions of law

13 and then I'm going to cross-reference both of yours.  When I

14 say "both of yours," I mean sides to see what, if anything, I

15 missed or did not miss.  And so that's how I use parties'

16 findings of fact and conclusions of law, and so — yeah.

17        Where are we on witnesses?  Have you-all

18 substantially brought down the number, or not?

19        MISS PERALES:  We are working to cull the list, Your

20 Honor.  We were hoping and we did get from the Court today an

21 understanding of what to do with the Section 5 evidence and

22 our nonmateriality claims.  That makes a difference on the

23 witness list.  So we understand now how to move forward.

24        As I mentioned before, the Department of Justice has

25 filed an advisory.  I know they have at least one attorney

1  here in this hearing today monitoring, but their advisory says
2  they don't plan to testify at trial.  So their 17 hours, we
3  can understand the trial will be reduced by that time.
4      We're preparing our witness list now because of the
5  joint pretrial order deadline.
6      THE COURT:  And let's talk about that.  So how much
7  time do you-all need now in light of what we've been talking
8  about?
9      MISS PERALES:  Well, we're planning to send
10 defendants a draft joint pretrial order today, as we work to
11 finish it on our end.  And we can still do that, but we would
12 need additional time to send over the new documents that the
13 Court has requested, which is a presentation of which
14 witnesses and exhibits go to each claim.
15      That's something we haven't started working on yet so
16 we would need some additional time.
17      The Court has before it a motion for extension of the
18 deadline for the joint pretrial order to Friday.  That's
19 Docket 727.  In light of the new material, we might need to
20 modify that request, Your Honor.
21      THE COURT:  So trial is the 11th.  I know this is
22 having everybody work Labor Day weekend.  I don't know if
23 you-all are going to do that or not, or need to.  Probably.
24      So what's the State say to a deadline of
25 September 5th to try to put this in tidy enough fashion that

1  we all know what we are dealing with?

2      MR. KERCHER:  Is the Court asking whether

3  September -- well, let me ask you this, Judge.  Right now I

4  think we have a final pretrial conference that's scheduled for

5  August 31, and so I understand your question is that would we

6  sort of pass on that current pretrial hearing and instead move

7  a deadline for the parties to provide the Court with our, call

8  it, trial outline by September 5th?

9      I think that that is a workable date.

10      THE COURT:  Let's do that.  We cancel August 31.  The

11  pretrial order is due September 5th as we discussed.  And

12  depending on how much more we talk about today, I don't even

13  know if we are going to need another final conference, but if

14  we do we can schedule one at the ready, but for now let's just

15  pass on that.

16      MR. KERCHER:  Your Honor, I can --

17      THE COURT:  Go ahead.

18      MR. KERCHER:  Sorry.  I can represent the parties

19  have conferred on motions in limine.  There will be some but

20  that's not going to be -- I think that's not going to require

21  extensive argument.  I think the Court will be able to dispose

22  of those in relatively short order, so I'm not sure we need a

23  separate hearing for those.

24      THE COURT:  Thank you.  And, yeah, it's a bench

25  trial, so I'm not sure we need to worry about that too much.

1          Well, let's continue thinking out loud here about
2    various issues.
3          MISS HOLMES:  Your Honor, if I may, can I ask a
4    clarifying question?  This is Jennifer Holmes on behalf of the
5    HULL plaintiffs.
6          So in terms of what's due on September 5th, are you
7    envisioning that the joint pretrial order is a separate
8    document from this document that lays out claim by claim which
9    witnesses and exhibits we are planning to use, or were you
10   just saying that you would like the joint pretrial order to be
11   organized in that fashion and we are just talking about one
12   document?
13         THE COURT:  Yeah.  We are talking about just one
14   document.  So what I'm envisioning is normally where the
15   pretrial order has contested issues of fact and law, this is
16   where you would be inserting this claim-by-claim basis about
17   which claims you-all are still pursuing and so we're just
18   talking one document.
19         And at this point, I think I said this earlier, I am
20   not expecting from anybody proposed findings of fact and
21   conclusions of law now.  That's probably just going to be a
22   waste of everybody's efforts and so we're only going to get
23   proposed findings of fact and conclusions of law from the
24   parties at the end of the proceedings.
25         MISS PERALES:  Your Honor, a question.

1          The plaintiffs have been preparing a relatively short

2    statement of contested and uncontested facts.  And by

3    relatively short, I mean between 20 and 30 pages for

4    plaintiffs combined that just gives an overview of the

5    contested and uncontested facts.

6          If the Court would find that useful, we can still

7    have that and simply attach an appendix, what Mr. Kercher has

8    referred to as the trial outline or the presentation of the

9    witnesses and exhibits that go to each claim.

10         THE COURT:  That works for me.

11         Let's work through some more mechanics.  How many

12   people are we expecting at this party?  Are we expecting a

13   full courtroom?  Do we need to move to a larger courtroom?

14   What's the expectations here?

15         MISS PERALES:  Your Honor, I know that perhaps in one

16   of the many advisories we have been filing there was a request

17   that counsel who was not actively presenting that day be

18   permitted to participate by Zoom.

19         This is especially important for counsel for the

20   county defendants who are entering a busy time.  That would,

21   by allowing counsel to participate remotely by Zoom would

22   relieve some of the pressure on the seats in the courtroom.

23         THE COURT:  Yeah.  And so we were still going to do

24   that.  So you are thinking we don't need the ceremonial

25   courtroom and we just stay put in the normal courtroom?

1          MR. KERCHER:  Your Honor, I can tell you State
2    defendants will have at counsel table at any one time probably
3    four, maybe five lawyers, and perhaps maybe a technology
4    person.
5          And looking around at the number of people on Zoom, I
6    guess I would be surprised if even if all of us only brought
7    one lawyer at a time if we could all fit comfortably in the
8    courtroom.  I'll defer to the Court's experience.  You've
9    tried more cases in that room than I have, Judge, but I think
10   it's going to be a pretty full house and it may be just
11   playing musical chairs who is at counsel table.
12         And as Miss Perales says, we don't need to bring all
13   our lawyers every day so it's possible sort of by playing
14   musical chairs that way we could reduce the feng shui burdens
15   on the courtroom, but it's certainly worth talking about
16   whether we should be in a bigger space.
17         THE COURT:  Yeah.  Let's just go to the bigger space.
18   The bigger space has two counsel tables on both sides, and so
19   that will relieve some of the pressure there.  So plan on
20   being in ceremonial courtroom for days of trial.
21         Now, I still have to block out dates so I know not to
22   schedule conflicting criminal matters.  Have we got any sense
23   of what dates you-all are going to use, or not?
24         MISS PERALES:  We do, Your Honor.  This will, of
25   course, depend ultimately on the witness list, but the Court

1    provided to us and we're beginning to chart out the week of

2    September 11 but not September 15.  The week of September 18

3    but not September 18.  Not at all the week of September 25th.

4         Yes, the week of Monday, October 2nd.  And, yes, the

5    week of October 9 with the exception of October 9th and

6    October 13th.

7         This is consistent with the dates that the Court

8    provided to us and so we are working within that time frame

9    right now for plaintiffs.

10        THE COURT:  And, Mr. Kercher, are you looking at

11   additional dates, or not?

12        MR. KERCHER:  I'm not clear from what Miss Perales

13   said whether she — the dates that she just mapped out there

14   would all belong to the plaintiffs' case in chief.

15        It is still our position that, including

16   cross-examination, we believe that defendants' case in chief

17   will take approximately six days.

18        THE COURT:  So, Miss Perales, were you including

19   State cross-examination time, or do we need to add?

20        MISS PERALES:  Yes.

21        THE COURT:  You were?

22        MISS PERALES:  We were including.  Yes, we were

23   estimating State cross-examination time of the witnesses that

24   we put up, but we were not including, let's say, a State

25   witness time.

1          THE COURT:  Okay.  So just so we don't screw up

2  dates, what's the last week you talked about?

3          MISS PERALES:  The Court has — the Court provided us

4  through the week of *[audio transmission gap]*.

5          THE COURT:  What happened here?

6          THE DEPUTY CLERK:  I don't know.

7          THE COURT:  One second, if you can hear me.  Somehow

8  or another —

9          MISS PERALES:  We can, Your Honor.

10          THE COURT:  Okay.  Here we go.  We're back now.

11          I wonder, so your last week was —

12          MISS PERALES:  We think we can get this done in the

13  week of October 9, even though that's a short week.  That's

14  the week of October 9 *[audio transmission gap]*.

15          THE COURT:  We've lost you again.  One second.

16          Are you back, Miss Perales?

17          MISS PERALES:  Yes, I'm here, Your Honor.

18          THE COURT:  Okay.

19          MISS PERALES:  So —

20          THE COURT:  So what I'm contemplating is, just to

21  make sure we give the State enough time, do we need to be

22  thinking about the week of October 16th or not?

23          MISS PERALES:  I believe so, Your Honor.

24          THE COURT:  Yeah.  Let's also plan the week of

25  October 16th, except for that I'm doing a Naturalization

1    Ceremony on the 20th, just to make sure we've got times

2    blocked out as much as possible and then we'll see where we

3    land after that.

4            Okay.  Now, we're going to allow Zoom for those

5    individuals who don't need to be present but I cannot

6    broadcast proceedings.  So for everyone, if anybody from your

7    team is going to appear by Zoom, you're going to have to

8    notify Miss Fernandez before that trial date so permission can

9    be granted to them and access via the Zoom because we cannot

10   publicly broadcast.

11           If you fail to provide Miss Fernandez at least one

12   day's notice for the Zoom invite, your party or person is not

13   getting in.

14           Any questions there?

15           MR. KERCHER:  No, Your Honor.

16           THE COURT:  Okay.  And then with regard to exhibits,

17   so let me think out loud here.  Normally, if this was a jury

18   trial, I would have to be worried about having them submitted

19   digitally in advance, but since this is a bench trial I'm not

20   sure we have to worry about that.

21           THE DEPUTY CLERK:  For appeals, yes.

22           MISS PERALES:  Is the Court —

23           THE COURT:  One second.  I'm talking to

24   Miss Fernandez.

25           MISS PERALES:  I'm sorry.

1          THE COURT:  So is the Fifth Circuit now receiving our
2    stuff electronically?
3          THE DEPUTY CLERK:  Yes, and they have to be formatted
4    so Diana can get them.
5          THE COURT:  So the Fifth Circuit has come aboard in
6    the electronic age and so they are going to now want all the
7    exhibits digitally formatted.
8          So all of your exhibits will need to be in digital
9    form and then given to Miss Fernandez before the trial date
10   that you're going to admit them.  Preferably, you-all are
11   organized enough that everybody gets all their exhibits loaded
12   up so we don't have Miss Fernandez having to constantly
13   augment the exhibits.
14         So hopefully on September 11th you-all show up to
15   trial with a thumb drive with all your exhibits ready and in
16   the proper format.  If there's any questions about formatting,
17   contact Miss Fernandez in advance to get those questions
18   resolved.
19         Now, so that's for purposes of appeal.  For purposes
20   of me looking at the stuff, I don't — at least have one hard
21   copy of legible readable stuff for me because I don't want to
22   be reading everything on the screen.  You guys have too many
23   exhibits for that.  I'll go blind.
24         MISS PERALES:  Yes, Your Honor.  We can provide bench
25   binders.

```
1              THE COURT:  What else are we missing?
2              Anybody else, questions?
3              MR. GENECIN:  Your Honor, if I may.
4              MISS PERALES:  I'm sorry, Victor, one moment.
5              We have an additional question in that there are some
6  witnesses who are physically unable or it would be extremely
7  difficult for them physically to get to the courthouse.  We
8  have reached some agreements with defendants regarding the
9  possibility of those individuals testifying remotely, or by
10 Zoom, and we wanted to know if the Court would be amenable to
11 that.
12             THE COURT:  Yes.  I'll be agreeable.  If there is no
13 objection by any party, I'll allow an individual to appear by
14 Zoom for their testimony.  But if any party objects to that
15 process, then they are going to have to appear live if they
16 are within the hundred-mile radius pursuant to the rules.
17             Other questions?
18             MISS PERALES:  One follow-up, Your Honor.
19             If, for example, if it's a plaintiffs' witness and
20 they are outside the hundred miles would the Court be amenable
21 to having that witness testify by Zoom, presenting by Zoom?
22             THE COURT:  And your hypothetical is there is an
23 objection to that, or unobjected to?
24             MISS PERALES:  Yes, an objection.
25             THE COURT:  An objection.
```

1          So let me hear from the State on that.

2          MR. KERCHER:  Your Honor, our primary concerns are

3     efficiency and efficacy.  We are working with the plaintiffs'

4     groups in the event that a witness has a physical disability,

5     or, for example, an injury and cannot get there.

6          Absent those, our preference would be for the

7     plaintiffs to testify live because we do think that people

8     tend to testify differently when they are sitting in a

9     courtroom.  And that matters.

10         If there are specific reasons why the plaintiff could

11    not make it, we are willing to confer with plaintiffs on that

12    and see if we cannot reach a resolution, but our default is

13    that in person in better where possible.

14         THE COURT:  So I agree with that.  That's why I said

15    if it's — if there's an agreement, they can testify remotely.

16    If there's no agreement and they are within 100 miles, they

17    need to appear live.

18         Now, the next question is:  If there's no agreement

19    and they are outside the hundred miles, what is your position?

20         MR. KERCHER:  My default position remains the same,

21    Your Honor.

22         THE COURT:  But doesn't the rules allow for them to

23    appear by deposition under that scenario?

24         MR. KERCHER:  If she's a party?

25         MISS PERALES:  Well, just a plaintiffs' witness.

1          MR. KERCHER:  Just a plaintiffs' witness.

2          In that case, our preference would be live testimony

3 over deposition testimony and so appearing remotely would be

4 our preference.  But you're right, Your Honor, if it's just a

5 plaintiffs' witness beyond the hundred miles, then testimony

6 by deposition would be appropriate.

7          THE COURT:  So I think that's right.  I think that's

8 the answer.

9          But, Miss Perales, I mean, I would prefer to have

10 live witnesses rather than me having to read now, because, you

11 know, you're not going to read it at the trial, you're going

12 to just provide me copies and that's just yet more stuff for

13 me to read.  So I prefer live whenever possible.

14          MISS PERALES:  Thank you, Your Honor.

15          THE COURT:  Mr. Nelson, you have your hand up.

16          MR. NELSON:  Yes, Your Honor.

17          As a point of clarification, there has been

18 discussion about a hybrid approach as to allowing for Zoom

19 testimony from county witnesses by the plaintiffs is my

20 understanding, but my understanding is further that the State

21 as to cross-examination prefers live and counsel can correct

22 me if that is correct.

23          Is that acceptable to the Court?

24          MISS PERALES:  Your Honor, that's not the agreement

25 of the parties, but I'd be happy to explain to the Court what

1  we've been talking about with the counties ——

2  　　　　　THE COURT:  Go ahead.

3  　　　　　MISS PERALES:  —— which is direct examination would

4  be done through a combination of submitting deposition

5  excerpts and live examination.

6  　　　　　So this would allow the county witnesses to testify

7  live as to kind of what we think of as the highlights of what

8  they have to say, and the nuts and bolts we could submit to

9  the Court through paper deposition excerpts.

10  　　　　　Some of the county witnesses were deposed for three

11  days and it just seems incredibly inefficient to have to bring

12  all of that out in live-time testimony, and so what we've been

13  discussing with the counties is a combination of testimony by

14  deposition excerpt and live testimony for direct, and then the

15  defendants have full and free opportunity for cross-exam live.

16  　　　　　THE COURT:  So we're basically talking about live

17  testimony but a condensed version of live, and so plaintiffs

18  would ask certain select direct questions.  The State has

19  unlimited opportunity to cross-examine as it sees fit, and

20  then the live testimony will be supplemented by deposition

21  excerpt?

22  　　　　　MISS PERALES:  Yes, Your Honor.

23  　　　　　THE COURT:  So does anybody have objection to that?

24  　　　　　MR. NELSON:  Your Honor, I guess the question that I

25  have, and maybe I'm the only county that has this question is:

1  Could that live testimony be by Zoom with them providing the

2  testimony by Zoom?

3          Particularly for the election officials at the time

4  that this is coming it is very much an imposition to have to

5  travel to San Antonio to give that live testimony.  I would

6  think that that's still live testimony in my mind, but perhaps

7  not.

8          THE COURT:  No, I follow you.  So I mean, I think you

9  are hearing from the State that their preference is for live.

10 Travis County, I don't think is outside the hundred-mile

11 radius, so that's going to be a problem on you-all.

12         MR. NELSON:  No, sir, unfortunately it's not.

13         THE COURT:  Yeah.  And so if you-all, the State —

14 you-all — the counties, the State, and the plaintiffs' groups

15 can reach agreement, I will accept the agreement.  Absent

16 agreement, I'm sorry, Mr. Nelson, your folks will have to

17 appear live.

18         MR. NELSON:  Thank you, Your Honor, for the

19 clarification.

20         THE COURT:  What else do we need to talk about?

21         MR. GENECIN:  Your Honor, if I may.  I'm Victor

22 Genecin of LDF representing the HULL plaintiffs and I wanted

23 to pick up or ask for clarification on a point that was raised

24 earlier.

25         We are going to be filing a couple of motions in

1  limine.  I understand that the State has a number of motions
2  in limine as well or may have them and we were going to be
3  filing those today, but in view of the new date of
4  September 5th I wanted to ask how the Court would like to
5  proceed with motions in limine.
6          Shall we file them, for example, on September 1st,
7  with answers on September 8th, and argument first thing in the
8  morning on the 11th before trial gets going?
9          THE COURT:  I think that sounds good.
10          Anybody, objections or improvements to that?
11          So the filing of any motions in limine would be due
12  no later than September 1.  Any and all responses would be due
13  no later than September 8.  And then you would appear before
14  me on the 11th and I would make rulings.
15          Any objections?
16          MR. KERCHER:  None from State defendants, Your Honor.
17          THE COURT:  And I don't hear any objections from the
18  plaintiffs' group, so that's how we will proceed.
19          Motions in limine due no later than the 1st,
20  responses by the 8th, and then I'll hear arguments and make
21  rulings on the 11th.
22          And on the 11th then I'll hear opening statements.
23  Do we have agreements on length of time?
24          MISS PERALES:  We do, Your Honor.  I believe it's 45
25  minutes per side.

1    THE COURT:  And your side is going to divvy it up

2  how?

3    MISS PERALES:  Well, we are not sure yet because part

4  of that was going to be taken by the Department of Justice

5  which is no longer going to be appearing at trial, but we have

6  agreed 45 minutes per side and we at the moment don't have an

7  internal division of that.

8    THE COURT:  And the 45 minutes, Mr. Kercher, is that

9  going to be you and the intervenors, or just you-all?

10    MR. KERCHER:  We, likewise, don't have an internal

11  division yet, Your Honor.  I'm sure that Mr. Gore will have

12  some enlightening words for the Court on behalf of intervenor

13  defendants.

14    There are some other defendants who may want to get a

15  word in as well but we will try and make that a part of our

16  pretrial disclosure to the Court so you know what to expect

17  from us.

18    THE COURT:  Okay.  So no more than 90 minutes for

19  everyone.

20    What else do we need to talk about?

21    MR. NICHOLS:  Judge, this is Eric Nichols and I'm one

22  of those word-in-edgewise parties, I guess, and you have seen

23  me before on the case and I always hate to be the tail or not

24  even being the tail trying to wag the dog.

25    We do have before the Court a motion for summary

1    judgment with respect to Harris County District Attorney Ogg,

2    so that's the only other motion that I know of that we filed

3    that's presently pending before the Court, but obviously the

4    Court will decide whether to reach that motion, whether to

5    grant it, whether to carry it with the case.

6         And if it is — if that does not dispose of the

7    claims against my client, we do plan to be with you on the

8    11th.

9         THE COURT:  Thank you.  I'm trying.  There is a lot.

10   You're not the only ones, and so there we are.

11        If I can dispose of any of the other motions before

12   the 11th, I will try and I will inform you-all as soon as

13   possible.  I'm not optimistic.  So I'll try.

14        Anybody else?

15        Okay.  Hopefully, we're all on board now on the same

16   page and I will then see you-all absent something breaking

17   down here in San Antonio on the 11th in the ceremonial

18   courtroom.

19        Okay.  Good luck.

20        MISS PERALES:  Thank you, Your Honor.

21        THE COURT:  Thank you.

22    *(Concludes proceedings)*

23

24

25

1                                –o0o–

2        I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above–entitled matter.  I

4    further certify that the transcript fees and format comply

5    with those prescribed by the Court and the Judicial Conference

6    of the United States.

7

8    Date:  08/25/23              /s/  *Gigi Simcox*
                                  United States Court Reporter
9                                 262 West Nueve Street
                                  San Antonio TX 78207
10                                Telephone:  (210)244–5037

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25