**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 5:21-cv-00844-XR |
| STATE OF TEXAS, *et al.*, | § | [Lead Case] |
| | § | |
| *Defendants.* | § | |
| | § | |
| HARRIS COUNTY REPUBLICAN PARTY, *et al.*, | § | |
| | § | |
| *Intervenor-Defendants.* | § | |

## JOINT PRETRIAL ORDER

**(1)     A short statement identifying the Court's jurisdiction. If there is an unresolved jurisdictional question, state it:**

Plaintiffs assert that this Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(3)–(4), 1345, 1357, and 2201(a) and 52 U.S.C. §§ 10101(d). State Defendants and Intervenor-Defendants contest this Court's jurisdiction on the following grounds: (i) Plaintiffs lack Article III standing to bring their claims against State Defendants; they also lack standing to challenge multiple provisions outright; and (ii) Organization Plaintiffs seek to vindicate the rights of third parties but do not fall under any recognized exception.  In addition, State Defendants and Intervenor-Defendants maintain that sovereign immunity bars Plaintiffs' claims against State Defendants and that the Voting Rights Act did not create a private cause of action for these Plaintiffs, precluding their Section 2 and Section 208 claims. Finally, Defendant Harris County District Attorney Defendant Kim Ogg asserts sovereign from Plaintiffs' constitutional claims, and contends that Plaintiffs' statutory claims against her are an improper end-run on her sovereign immunity and that none of Plaintiffs has standing to sue her on any of their constitutional or

statutory claims.[1]

**(2)     A brief statement of the case, one that the judge could read to the jury panel for an introduction to the facts and parties:**

These consolidated cases challenge certain provisions of Texas Senate Bill 1, 87th Leg., 2d Called Session (2021) ("SB 1") that make changes to voter assistance, vote by mail, poll-watching, and other aspects of voting.  Plaintiffs allege that enforcement of various provisions of SB 1 violate Section 2 and Section 208 of the federal Voting Rights Act ("VRA"), 52 U.S.C. §§ 10301, 10508; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–65; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution.[2] Specifically, Plaintiffs challenge the following provisions of Texas law enacted through SB 1 (collectively, the "Challenged Provisions"):

    a.   SB 1 §§ 2.05-2.07

    b.   SB 1 §§ 3.04, 3.09, 3.10, 3.12, 3.13, 3.15

    c.   SB 1 §§ 4.01, 4.06, 4.07, 4.09, 4.12

    d.   SB 1 §§ 5.02-5.04, 5.06-5.08, 5.10-5.14

    e.   SB 1 §§ 6.01, 6.03-6.07

    f.   SB 1 §§ 7.02, 7.04

    g.   SB 1 § 8.01

The State Defendants and Intervenor-Defendants deny Plaintiffs' allegations against SB 1.

---

[1] These issues of sovereign immunity are currently pending before the Fifth Circuit in *Mi Familia Vota v. Ogg*, No. 22-50732, which was argued July 12, 2023.

[2] The parties are proceeding on all claims during the September 11 Phase I trial with the caveat that the trial record remains open with respect to claims for intentional discrimination pending resolution of LUPE v. Bettencourt, No. 23-50201 (5th Cir.), and any related subsequent discovery, consistent with the Court's proposal in its Amended Order. See ECF No. 700 at 2 n.2. Specifically, the record would remain open to the LULAC Plaintiffs' Voting Rights Act ("VRA") Section 2 claim, see ECF No. 207 ¶¶ 249-56 (Count I); the HAUL/MFV Plaintiffs' Fourteenth and Fifteenth Amendment intentional discrimination claims, as well as its VRA Section 2 claim, see ECF No. 199 ¶¶ 270-317 (Counts II-IV); and the LUPE Plaintiffs' Fourteenth and Fifteenth Amendment intentional discrimination claims, as well as VRA Section 2 claim, see ECF No. 208 ¶¶ 230-265 (Counts II-IV).

They contend that SB 1 complies with all constitutional and legal requirements. District Attorney Ogg contends that she has not taken any action that would allow any of Plaintiffs to meet the threshold requirements of the *Ex parte Young* exception to sovereign immunity, much less to prove that she violated any of the statutes they raise in their claims.

**(3)**     **A summary of the remaining claims and defenses of each party:**

The Parties provide summaries of their remaining claims and defenses, below. The Parties have also appended a chart illustrating which parties have overlapping claims and defenses as Exhibit 1.

**A. Remaining Claims:**

*LUPE Plaintiffs*:

LUPE Plaintiffs claim that Sections 5.07, 5.13, 6.03, 6.04, 6.05, 6.06, and 7.04's "vote harvesting" provision violate the First and Fourteenth Amendments by imposing an unjustified, severe burden on the right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). This claim is against Defendants Nelson, Colmenero, Scarpello, Wise, Creuzot, Rosales, and Garza.

LUPE Plaintiffs claim that Sections 6.03, 6.04, 6.05, 6.06, and 7.04's vote harvesting provision violate the Fourteenth Amendment by intentionally discriminating against voters on the basis of race. *Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). This challenged claim is against Defendants Nelson, Colmenero, Scarpello, Wise, Creuzot, Rosales, and Garza.

LUPE Plaintiffs claim that Sections 6.03, 6.04, 6.05, 6.06, and 7.04's vote harvesting provisions violate the Fifteenth Amendment, by denying and abridging the rights of citizens of the United States to vote on account of race, color, or previous condition of servitude. *Mobile v.*

120777551.1 0099831-00001

*Bolden*, 446 U.S. 55, 62 (1980) (plurality opinion) (citing *Vill. of Arlington Heights*, 429 U.S. at 265). This claim is against Defendants Nelson, Colmenero, Scarpello, Wise, Creuzot, Rosales, and Garza.

LUPE Plaintiffs claim that Sections 6.03, 6.04, 6.05, 6.06, and 7.04's vote harvesting provision violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, et seq., because these provisions create political processes that are "not equally open to participation" by minority voters, such that those voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." This claim is against all Defendants against whom LUPE Plaintiffs have filed suit.

LUPE Plaintiffs claim that Sections 6.03, 6.04, 6.05, 6.06, and 7.04's vote harvesting provision violate Title II of the Americans with Disability Act, 42 U.S.C. § 12131, et seq., because these provisions discriminate against qualified Texas voters with disabilities on the basis of their disability. This claim is against Nelson, Colmenero, Scarpello, Wise, Creuzot, Rosales, and Garza.

LUPE Plaintiffs claim that Sections 6.03, 6.04, 6.05, 6.06, and 7.04's vote harvesting provision also violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508 because these provisions impede voters' practical ability to get necessary and statutorily guaranteed assistance. This claim is against all Defendants against whom LUPE Plaintiffs have filed suit.

LUPE Plaintiffs claim that Sections 4.09 and 8.01 violate the Fourteenth Amendment's Due Process Clause because these provisions are unconstitutionally vague. This claim is against Defendants Nelson, Colmenero, Creuzot, Rosales, and Garza.

LUPE Plaintiffs claim that Section 7.04's vote harvesting provision violates the First and Fourteenth Amendments to the U.S. Constitution because this provision is unconstitutionally vague and burdens free speech. This claim is against Defendants Nelson, Colmenero, Scarpello,

Wise, Creuzot, Rosales, and Garza.[3]

*OCA Plaintiffs*:

REVUP-Texas brings claims, on behalf of itself and its members, that SB 1 Sections 5.02, 5.03, 5.07, 5.10, 5.12, and 6.04 violate Title II of the Americans with Disability Act, 42 U.S.C. § 12131, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.[4] The Article 5 claims are brought against Defendants Nelson, Tatum, and Limon-Mercado. The Section 6.04 claims are brought against Defendants Nelson, Colmenero, Tatum, Limon-Mercado, Ogg, and Garza.

OCA-Greater Houston and League of Women Voters of Texas bring claims, on behalf of themselves and their members, that (1) SB 1 Section 6.06, Tex. Elec. Code § 86.0105, conflicts with and is preempted by Section 208 of the Voting Rights Act, 52 U.S.C. § 10508; and (2) SB 1 Section 7.04, Tex. Elec. Code § 276.015, is overbroad and void for vagueness in violation of the First and Fourteenth Amendments.[5] The Section 6.06 claims are brought against Defendants Nelson, Colmenero, Tatum, Limon-Mercado, Ogg, and Garza. The Section 7.04 claims are brought against Defendants Colmenero, Ogg, and Garza.

---

[3] On May 26, 2023, LUPE Plaintiffs filed their Unopposed Motion for Voluntary Dismissal, *see* ECF No. 613, which this Court granted on June 6, 2023, *see* ECF No. 624. As a result, LUPE Plaintiffs dismissed without prejudice their claims that SB 1 §§ 2.04, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, and 4.07 violate the First, Fourteenth, and Fifteenth Amendments of the U.S. Constitution (Counts I, II, and III) and Section 2 of the Voting Rights Act (Count IV). LUPE Plaintiffs also dismissed without prejudice a number of challenges to SB 1 §§ 5.07, 5.13, 6.03, 6.04, 6.05, 6.06, and 7.04 that are not set out in the body of this JPTO. LUPE Plaintiffs also intend to file a motion to voluntarily dismiss without prejudice their remaining challenges to SB 1 § 6.01, which will be filed as soon as they have given Defendants an opportunity to provide their position on the motion.

[4] REVUP-Texas voluntarily withdraws all claims challenging SB 1 Sections 5.06 and 6.06, as well as its claims that SB 1 Section 6.04 violates Section 208 of the Voting Rights Act. REVUP-Texas additionally maintains that it has pleaded challenges to SB 1 Sections 5.08, 5.13, and 5.14 under both Title II of the Americans with Disabilities Act and the Rehabilitation Act but has not included them here because it recognizes that the Court rejected that position in the Court's summary ruling on OCA Plaintiffs' materiality claims. See ECF No. 724 at 5–6. REVUP-Texas is not affirmatively waiving its claims against Sections 5.08, 5.13, and 5.14 by not including them in this Joint Pretrial Order.

[5] OCA-Greater Houston and the League of Women Voters of Texas voluntarily withdraw all of their claims under the Americans with Disabilities Act and Rehabilitation Act, as well as their claims that SB 1 Section 6.04 violates Section 208 of the Voting Rights Act. Additionally, all OCA Plaintiffs previously voluntarily withdrew their challenges to SB 1 Section 5.06 under the Materiality Provision of the Civil Rights Act of 1964. See ECF No. 611 at 8 n.1.

<u>*HAUL Plaintiffs:*</u>

HAUL Plaintiffs claim Sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.12 individually and collectively, impose an undue burden on the right to vote in violation of the First and Fourteenth Amendments.[6] The burden is severe and/or discriminatory and not justified by sufficiently weighty state interests. Plaintiffs Houston Area Urban League and Delta Sigma Theta Sorority bring this claim against Defendants Colmenero, Ogg, Gonzales, Nelson, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.02, 6.01, 6.03, 6.04, 6.05, and 6.07 violate the Fourteenth Amendment because race was a motivating factor in the decision-making process that led to their enactment.[7] Plaintiffs Houston Area Urban League and Delta Sigma Theta Sorority bring this claim against Defendants Colmenero, Ogg, Gonzales, Nelson, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.02, 6.01, 6.03, 6.04, 6.05, and 6.07 violate the Fifteenth Amendment because they were enacted to deny, abridge, or suppress the right to vote on account of race and ethnic origin.[8] Plaintiffs Houston Area Urban League and Delta Sigma Theta Sorority bring this claim against Defendants Colmenero, Ogg, Gonzales, Nelson, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.07, 6.01, 6.03, 6.04, 6.05, and 6.07 violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 *et seq.* because they were motivated by a discriminatory purpose, and/or because, individually and collectively, they result in a political process that is not equally open to participation by minority voters such that they have less opportunity to elect candidates of their choice.[9] Plaintiffs Houston Area Urban

---

[6] HAUL Plaintiffs voluntarily dismiss their challenge to SB1 §§ 5.04 and 7.04 under this claim (Count 1).
[7] HAUL Plaintiffs voluntarily dismiss their challenge to SB1 § 7.04 under this claim (Count 2).
[8] HAUL Plaintiffs voluntarily dismiss their challenge to SB1 § 7.04 under this claim (Count 3).
[9] HAUL Plaintiffs voluntarily dismiss their challenge to SB1 §§ 5.04 and 7.04 under this claim (Count 4).

120777551.1 0099831-00001

League and Delta Sigma Theta Sorority bring this claim against Defendants Colmenero, Ogg, Gonzales, Nelson, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 6.01, 6.03, 6.04, 6.05, and 6.07 violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, because they impede the right of voters with disabilities and voters with limited English proficiency to receive assistance from a person of their choice. Plaintiffs Delta Sigma Theta and the Arc of Texas bring this claim against Colmenero, Ogg, Gonzales, Nelson, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 4.06, 4.07, and 4.09 violate the Due Process Clause of the Fourteenth because they are unconstitutionally vague. Jeffrey Lamar Clemmons brings this claim against Defendants Nelson, Garza, Colmenero, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 5.02, 5.03, 5.06, 5.07, 5.10, 6.03, 6.04, 6.05, and 6.07, individually and collectively, discriminate against qualified Texas voters with disabilities in violation of Title II of the Americans with Disabilities Act. Plaintiff the Arc of Texas brings this claim against Defendants Nelson, Ogg, Gonzales, Tatum, and Callanen.

HAUL Plaintiffs claim Sections 5.02, 5.03, 5.06, 5.07, 5.10, 6.03, 6.04, 6.05, and 6.07, individually and collectively, discriminate against qualified Texas voters with disabilities in violation of Section 504 of the Rehabilitation Act. Plaintiff the Arc of Texas brings this claim against Defendants Nelson, Ogg, Colmenero, Paxton, Tatum, and Callanen.

*LULAC Plaintiffs*:[10]

---

[10] Pursuant to the Court's instructions at the August 22 status conference, *see* Tr. at 11:19-23, LULAC Plaintiffs no longer intend to challenge the following provisions of SB 1:

- §§ 4.01, 4.02, 4.06, 4.07, and 4.09 (previously challenged under LULAC Plaintiffs' VRA Section 2 and *Anderson-Burdick* claims);
- § 5.01 (previously challenged under LULAC Plaintiffs' VRA Section 2 claim);

LULAC Plaintiffs assert that SB 1 §§ 3.04, 3.09, 3.10, 3.12, 3.13, 4.12, 5.02, 5.03, 5.07, 5.08, and 7.04 violate Section 2 of the Voting Rights Act because SB 1 was enacted with an impermissible discriminatory intent against Black and Latino voters. This claim is brought against all Defendants.

LULAC Plaintiffs assert that SB 1 §§ 5.02, 5.03, 5.07, and 5.08 violate the First and Fourteenth Amendments to the United States Constitution because they impose an undue burden on the right to vote. This claim is brought against Defendants Callanen, Scarpello, Wise, Tatum, Salinas, Ramon, Limon-Mercado, DeBeauvoir, Gonzales, Garza, Ogg, Palacios, Creuzot, and Hicks.

LULAC Plaintiffs assert that SB 1 § 7.04 violates the First and Fourteenth Amendments to the United States Constitution because it infringes on the rights of free speech and free expression and is not narrowly tailored to advance any compelling state interest. This claim is brought against Defendants Callanen, Scarpello, Wise, Tatum, Salinas, Ramon, Limon-Mercado, DeBeauvoir, Gonzales, Garza, Ogg, Palacios, Creuzot, and Hicks.

LULAC Plaintiffs assert that SB 1 § 7.04 violates Section 208 of the Voting Rights Act because it denies voters qualified for assistance the right to receive assistance from the person of their choice. This claim is brought against all Defendants.

### *Mi Familia Vota Plaintiffs*:

Mi Familia Vota Plaintiffs assert that SB 1 violates the First, Fourteenth, and Fifteenth Amendments of the U.S. Constitution, as well as Sections 2 and 208 of the Voting Rights Act.

---

- §§ 6.03, 6.04 (previously challenged under LULAC Plaintiffs' VRA Section 2 and *Anderson-Burdick* claims).

LULAC Plaintiffs' decision to no longer challenge these specific provisions of SB 1 is without prejudice to any other Plaintiff's continued challenge to the same.

120777551.1 0099831-00001

Specifically, the Mi Familia Vota Plaintiffs assert:

a) The challenged provisions of SB 1 individually and collectively place an undue burden on the ability of the Plaintiffs, as well as Texas's Black and Latino voters, to participate in elections and cast a ballot that will count, in violation of the First and Fourteenth Amendment. The challenged provisions include SB 1 §§ 3.04, 3.12, 3.13 (prohibiting most voters from voting inside a motor vehicle and requiring polling places to be located inside a building, banning drive-through voting); SB §§ 3.09, 3.10 (limiting voting hours and prohibiting 24-hour voting); SB 1 § 4.12 (eliminating drop boxes); SB 1 §§ 4.01, 4.07, 6.01 (providing partisan poll watchers with expanded access to voters and election workers, limiting election workers' ability to remove poll watchers who intimidate voters or otherwise interfere with voting or counting processes); SB 1 § 5.04, 7.04 (restricting the distribution of absentee ballot applications by election officials and third parties); SB 1 §§ 5.02-5.03, 5.07-5.08, 5.13 (requiring early voting ballot applications to include specific identification numbers and the rejection of applications and ballots that contain mismatched identification numbers even where both numbers are accurate and merely obtained from different identification documents; and prohibiting the use of electronic or photocopied signatures); SB § 6.01 (requiring anyone who provides transportation to more than seven voters to submit a form with their personal information and authorization for providing transportation); SB 1 § 6.03 (requiring assistants to fill out forms and take an oath affirming that the voter has confirmed to them that they are qualified to obtain assistance); SB 1 § 6.05, 6.07 (requiring assistants to people voting by mail to provide on their ballot envelop their relationship to the voter, whether they received

compensation, their contact information, and their signature); SB 7.02 (eliminating employers' obligation to provide employees with leave to vote where the employee had any two-hour block outside that job's working hours during the voting period). The burdens imposed by the challenged provisions individually and collectively on eligible Texas voters' fundamental right to vote are severe and neither justified by nor necessary to promote any legitimate interest of the State.[11]

b) The above-referenced challenged provisions also violate the equal protection clause of the Fourteenth Amendment because race was a motivating factor in the decision-making process that led to SB 1. In particular, the challenged provisions, individually and collectively, bear more heavily on Latino, Black, and other voters of color and were adopted for the purpose of denying Latino, Black, and other voters of color full and equal access to the political process. Further supporting this claim is the historically racist voting policies and laws of the State of Texas and the abnormal legislative procedure that led to the passing of SB 1, which included, for example, two special sessions following the intentional absences of legislators opposing SB 1, the Texas speaker of the house oddly banning legislators from using the term "racism" while debating SB 1, and the final bill not including a provision proposed by SB 1 opponents whereby a committee would have been formed to study to the racial impacts of SB 1. Under this Claim, Mi Familia Vota also challenges SB 1 §§ 2.05-2.07 (establishing additional voter roll purges, requiring targeted voters to satisfy onerous requirements

---

[11] Pursuant to the Court's instructions at the August 22 status conference, *see* Tr. at 11:19-23, Mi Familia Vota Plaintiffs no longer intend to challenge the following provisions of SB 1: §§ 2.05-2.07; and 5.11, 5.12 and 5.14 as part of its undue burden Claim. It is voluntarily dismissing its challenge to SB 1 § 5.01 in its entirety.

to defeat erroneous removal from the rolls, and penalizing voter registrars alleged to be noncompliant with the purging requirements); and SB 1 §§ 5.11-5.14 (allowing for the rejection of ballots without notice by either the signature verification committee or early ballot committee if either committee determines that the signature allegedly does not match any known signature of the voter without regard to the age of the comparison signature);

c)   All of the above-referenced challenged provisions violate Section 1 of the Fifteenth Amendment because the provisions were enacted with racially discriminatory intent and abridge, if not outright deny, Latino, Black, and other voters of color of their right and freedom to vote.

d)   All of the above-referenced challenged provisions violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because they are intended to and under the totality of circumstances do disproportionately burden and erect barriers to Black and Latino voters' ability to participate in the political process.

e)   SB 1 §§ 6.01, 6.03, 6.04, 6.05, and 6.07 deny qualified voters access to assistors of their choice, thereby violating Section 208 of the Voting Rights Act, 52 U.S.C. § 10508.

**B. Remaining Defenses:**

*State Defendants and Intervenor-Defendants*

1.   *General Defenses*

a)   This Court lacks jurisdiction to hear Plaintiffs' claims. (i) Plaintiffs do not have Article III standing to bring their claims against State Defendants; they also lack standing to challenge multiple provisions outright. (ii) Organization Plaintiffs seek to vindicate the rights of third parties but do not fall under any recognized exception. (iii) Sovereign

immunity bars Plaintiffs' claims against State Defendants. (iv) The Voting Rights Act did not create a private cause of action for these Plaintiffs, precluding their Section 2 and Section 208 claims. (v) The Civil Rights Act did not create a private cause of action, precluding Plaintiffs' claim under 52 U.S.C. § 10101.

b) If the Court reaches the merits, State Defendants and Intervenor-Defendants deny that any provision of SB 1 is unlawful. SB 1 a commonsensical, constitutional, and legal statute enacted to "to prevent fraud in the electoral process," promote "voter access," "increas[e] the stability of [] constitutional democracy," and make "the conduct of elections . . . uniform and consistent throughout [Texas]."  SB 1 §§ 1.03, 1.04, 4.02. Indeed, multiple provisions in SB 1, including those challenged by Plaintiffs, expand voter access and protections; others simply clarified existing standards and practices.

2. *Standing*

a) Plaintiffs do not satisfy Article III standing with respect to the State Defendants; the Governor, Secretary of State, Attorney General and State of Texas either (i) do not enforce the SB1 sections Plaintiffs challenge, or (ii) do not harm Plaintiffs with the actions they take to implement a particular provision and could not redress any injuries by changing their behavior.

b) Plaintiffs do not have standing to challenge provisions in SB 1 that clarified or confirmed preexisting standards or practices as neither they nor Organization Plaintiffs' members suffered an injury-in-fact that would be redressable by this Court.

c) Multiple Organization Plaintiffs do not have members and therefore cannot rely on associational standing to meet Article III requirements. At minimum, this includes Southwest Voter Registration Project, the William C. Valequez Institute, Voto Latino,

120777551.1 0099831-00001

and Mi Familia Vota.

d) Organization Plaintiffs cannot rely on associational standing to challenge SB 1 under the ADA and Rehabilitation Act since the involvement of individual members as parties is essential to the resolution of the claims as well as the relief sought.

e) Organization Plaintiffs cannot establish a cognizable injury-in-fact in their own right, as the Challenged Provisions: (i) do not directly regulate Organization Plaintiffs or their activities; (ii) do not pose a direct conflict with Organization Plaintiffs' mission; (iii) have not caused Organization Plaintiffs to engage in conduct that differs from their routine activities, and/or (iv) have not caused them to divert resources in response to a reasonably certain injury. An interest in abstract social concerns does not impart standing.

f) Individual Plaintiffs have not suffered an injury-in-fact. Their alleged harm is conjectural or hypothetical, as opposed to actual or imminent, which does not confer Article III standing. This is also true of many of Organization Plaintiffs' members.

g) Organization Plaintiffs violate the general rule that a plaintiff must assert his own legal rights and interests, not those of third parties, and therefore lack statutory standing. The limited exception does not apply here.

3. *Sovereign Immunity*

a) State Defendants maintain that sovereign immunity bars Plaintiffs' claims against them.

b) The State of Texas is an improper party. States are generally immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity.

120777551.1 0099831-00001

c) The *Ex parte Young* exception to sovereign immunity does not apply since State Defendants lack a sufficient enforcement connection to the Challenged Provisions.

    i. In accordance with the Court of Criminal Appeals' decision in *State v. Stephens*, the Attorney General cannot initiate prosecution of election cases unilaterally but is instead limited to assisting the district or county attorney upon request. PD-1032-20, 2021 WL 5917198, at *1, 8 (Tex. Crim. App. Dec. 15, 2021). Plaintiffs cannot establish that formal enforcement is on the horizon.

    ii. The Secretary of State's title of chief election officer is not a delegation of authority. Accordingly, the Secretary does not enforce the Challenged Provisions—local county-level officials do. Any action the Secretary takes does not compel or constrain anyone into compliance and therefore does not constitute an enforcement connection for the purposes of *Ex parte Young*.

d) Plaintiffs cannot demonstrate an alternative exception to sovereign immunity.

    i. State Defendants have not waived sovereign immunity for any of Plaintiffs' claims.

    ii. Congress did not abrogate state sovereign immunity under § 1983 or the Civil Rights Act.

    iii. The Supreme Court established a three-part test for determining whether Title II of the ADA validly abrogates states' sovereign immunity on a claim-by-claim basis. Under this standard, the Secretary of State is entitled to sovereign immunity. The claims against the Attorney General were previously dismissed.

    iv. Although *OCA-Greater Houston v. Texas* holds that the VRA abrogates sovereign immunity, 867 F.3d 604, 614 (5th Cir. 2007), that case was wrongly

decided. State Defendants preserve this argument for appeal.

4. *14th & 15th Amendment – Intentional Discrimination Claims*

   a)  No provision of SB 1 was adopted with the intent to discriminate on the basis of race.

   b)  The Texas Legislature is entitled to a presumption of good faith. Plaintiffs cannot overcome that presumption.

   c)  Plaintiffs cannot prove that any provision of SB 1 resulted in a meaningful disparate impact on racial grounds.

5. *Section 2 VRA Claim – Disparate Impact/ Intentional Discrimination*

   a)  SB 1 does not violate Section 2 because voting is equally open to voters of all races in Texas.

   b)  No challenged provision of SB 1 blocks or seriously hinders voting by members of any minority group.

   c)  Many of the SB 1 Challenged Provisions incorporate standard practice at the time Section 2 was adopted in 1982.

   d)  None of the Challenged Provisions resulted in a racial disparate impact—let alone one significant enough to trigger Section 2 VRA liability.

   e)  Even if discriminatory burden existed, that burden is neither caused by nor linked to social and historical conditions that have or currently produce discrimination against a minority group.

   f)  Early and in-person voting are broadly available to all Texans. Mail-in voting is available to particular categories of Texans.

   g)  Texas has the authority to structure its elections.

120777551.1 0099831-00001

    h)  The challenged provisions fall in line with the election laws and practices implemented by many other states and the federal government for the purpose of administering secure and orderly elections.

    i)  The VRA did not create a private cause of action.

**6.** *Constitutional Right to Vote Claims*

    a)  None of the Challenged Provisions are subject to constitutional scrutiny because none impose severe burdens on the right to vote.

    b)  If non-severe burdens are sufficient to invoke constitutional scrutiny, SB 1's Challenged Provisions are supported by important state interests.

    c)  If the Court concludes any provision of SB 1 imposes a severe burden on voting, it is supported by compelling state interests.

    d)  All of the Challenged Provisions have plainly legitimate sweeps, so Plaintiffs' facial challenges to SB 1's provisions are inappropriate.

    e)  The right to vote is not implicated where the State permits voters to cast their ballot by other means.

    f)  Texas has the authority to structure its elections.

    g)  The Challenged Provisions fall in line with the election laws and practices implemented by many other states and the federal government for the purpose of administering secure and orderly elections.

**7.** *First Amendment Free Speech Claims*

    a)  Plaintiffs cannot bring a facial challenge because § 7.04 of SB 1 has a plainly legitimate sweep.

120777551.1 0099831-00001

b)  Under the *Anderson/Burdick* test—which governs this claim—§ 7.04 clearly passes muster because (i) it is supported by important state interests, and (ii) any burden on speech is incidental and modest.

c)  Even if strict scrutiny applies, § 7.04 is narrowly tailored to advance compelling state interests.

d)  The conduct regulated by § 7.04 is not protected speech.

**8.**  *Constitutional Vagueness Claims*

a)  Plaintiffs' challenges are improper pre-enforcement challenges. All provisions must be challenged in defenses to enforcement actions.

b)  This Court should not adjudicate Plaintiffs' vagueness challenges because Texas's courts have not been given a chance to interpret the Challenged Provisions or potentially adopt narrowing constructions.

c)  Plaintiffs lack standing to bring their vagueness challenges because there is no imminent enforcement action against any of them or Organization Plaintiffs' members.

d)  The Challenged Provisions are not vague or overbroad and comply with the Constitution.

e)  The Challenged Provisions give fair notice of the conduct the provisions proscribe.

**9.**  *Section 208 VRA Claims*

a)  Plaintiffs lack standing because no Plaintiff alleges that he or she was denied voter assistance; likewise, Plaintiffs do not allege that any member of Organization Plaintiffs was denied voter assistance.

b)  Section 208 does not preempt the Challenged Provisions.

120777551.1 0099831-00001

c) None of the Challenged Provisions results in the State selecting the person who will assist any voter.

d) Section 208's text contemplates that States may place reasonable restrictions on whom disabled individuals can select to provide voter assistance.

e) To that end, the Challenged Provisions are reasonable regulations of voter assistance—precisely the sort of state regulations that Section 208 envisions.

f) Section 208 does not specify that States must allow assistance beyond that allowed by Texas law.

g) The VRA does not create a private cause of action.

**10.** *Title II ADA/ Rehabilitation Act Claims*

a) Plaintiffs lack standing because no Plaintiff has alleged that he or she was denied a reasonable accommodation.

b) Plaintiffs cannot make out a prima facie case of an ADA or Rehabilitation Act violation.

c) Voting is a service or program that is provided by Texas's political subdivisions and political parties, not the Secretary of State.

d) The ADA and Rehabilitation Acts are not election laws. The Secretary of State is not responsible for any non-compliance with the ADA or Rehabilitation Act committed by local officials.

e) The Challenged Provision do not discriminate against qualified Texas voters with disabilities.

    i. No provision of SB 1 was adopted with the intent to discriminate against voters with disabilities.

ii.    The Challenged Provisions do not impose eligibility criteria that exclude or tend to exclude people with disabilities.

iii.    Voters with disabilities are not excluded from participation in, or denied benefits of, or otherwise discriminated against by the Challenged Provisions. Voters with disabilities have meaningful access to voting, especially when the program is viewed in its entirety.

iv.    Plaintiffs can point to no one who requested a reasonable accommodation—nor can they point to anyone who was denied a reasonable accommodation.

f)    As a matter of law, Texas law provides ample reasonable accommodations for voters with disabilities.

g)    Plaintiffs have not identified a reasonable modification to the challenged public program that would grant their members the meaningful access their members are allegedly denied. Their request to enjoin the Challenged Provisions for all Texas voters fails on its face.

h)    Neither the ADA nor the Rehabilitation Act mandates that public entities adopt a particular technology or accommodation, so long as individuals with qualifying disabilities have meaningful access to government programs.

i)    Enjoining the Challenged Provisions in their entirety would represent a fundamental alteration of state policy.

j)    Plaintiffs are not entitled to seek complete non-enforcement of Challenged Provisions because they did not seek to certify, and the court did not certify, a class.

120777551.1 0099831-00001

C.     **Parties Taking No Position on Contested Issues in this Joint Pretrial Order**

The Bexar County Elections Administrator, Jacquelyn Callanen; Bexar County District Attorney, Joe D. Gonzales; Dallas County Elections Administrator, Michael Scarpello; Dallas County District Attorney, John Creuzot; El Paso County Elections Administrator, Lisa Wise; Harris County Clerk, Teneshia Hudspeth; Hidalgo County Elections Administrator, Hilda A. Salinas; Hidalgo County District Attorney, Toribio "Terry" Palacios; Travis County Clerk, Dyana Limon-Mercado; and Travis County District Attorney, José Garza, take no position on the contested issues in this Joint Pretrial Order; however, the foregoing parties do not waive any available defenses, including defenses asserted in their respective answers.

**(4)     A list of facts all parties have reached agreement upon & (6) A list of legal propositions that are not in dispute;**

A.     **Legislative History of SB 1:**

1.     On March 11, 2021, Texas Senator Bryan Hughes introduced Senate Bill 7 ("SB7") in the Texas Legislature.

2.     Senator Bryan Hughes introduced Senate Bill 1 ("SB 1'). The bill was heard before the Senate State Affairs Committee on August 9, 2021, and voted out of committee that same day.

3.     SB 1 passed the Senate on August 12, 2021 on a party-line vote, following a 15-hour filibuster by Senator Carol Alvarado.

4.     SB 1 was heard before the House Select Committee on Constitutional Rights and Remedies on August 23, 2021. During the hearing, the Committee Chair permitted two witnesses to testify virtually in favor of the bill without calling a vote to authorize virtual testimony or alerting the public that such testimony would be permitted. The Committee passed SB 1 that same day.

5.     The House debated SB 1 on August 26, 2021, and adopted seventeen amendments to the bill.

120777551.1 0099831-00001

6.  The House passed SB 1 on August 27, 2021.

7.  The House and Senate convened a conference committee, which issued its report to each chamber on August 30, 2021.

8.  The Senate and the House both passed the SB 1 conference committee report on August 31, 2021, and the Legislature sent SB 1 to the Governor for his signature on September 1, 2021.

9.  The Governor signed SB 1 into law on September 7, 2021.

10. SB 1 went into effect on December 2, 2021.

**B.  Provisions of SB 1:**

11. A true and correct copy of SB1, highlighted to show the provisions Plaintiffs challenge, is attached to the Joint Pretrial Order as Appendix A.

12. The parties have been unable to reach agreement on any further description of the Challenged Provisions of SB 1. Plaintiffs have attached as Appendix B a summary description of the provisions of SB1 that Plaintiffs challenge, including the location those challenged provisions are found in the Texas Election Code.

**C.  The Parties**

13. Plaintiff La Unión Del Pueblo Entero (LUPE) is a 501(c)(3) non-partisan membership organization headquartered in San Juan, Texas.

14. Plaintiff Friendship-West Baptist Church ("Friendship-West") is a 501(c)(3) non-partisan religious organization in Dallas County.

15. Plaintiffs Anti-Defamation League Austin, Southwest, and Texoma Regions ("ADL") are made up of the regional offices of the non-partisan Anti-Defamation League in Texas.

16. Plaintiff Southwest Voter Registration Education Project ("SVREP") is a 501(c)(3) nonprofit and non-partisan organization headquartered in San Antonio, Texas.

17. Plaintiff Texas Impact is a 501(c)(4) non-partisan, multi-denominational organization.

18. Plaintiff Mexican American Bar Association of Texas ("MABA-TX") is a professional association of Latino lawyers located in Texas.

19. Plaintiff Texas Hispanics Organized For Political Education ("TEXAS HOPE") is a 501(c)(3) nonprofit membership organization.

20. Plaintiff JOLT ACTION is a 501(c)(4) nonprofit membership organization.

21. Plaintiff William C. Velasquez Institute ("WCVI") is a 501(c)(3) nonprofit and non-partisan public policy analysis organization.

22. Plaintiff FIEL Houston Inc. ("FIEL") is a 501(c)(3) nonprofit, non-partisan membership organization based in Houston, Texas.

23. Plaintiff James Lewin is a registered voter residing in Austin, Texas.

24. Plaintiff Jeffrey Clemmons is a registered voter residing in Austin, Texas.

25. Plaintiff LULAC Texas ("LULAC") is the Texas chapter of the League of United Latin American Citizens, a Latino civil rights membership organization in the United States. LULAC's mission is to protect the civil and voting rights of Latinos.

26. Plaintiff Voto Latino is a 501(c)(4) nonprofit, social welfare organization. Voto Latino engages, educates, and empowers Latino communities across the United States, working to ensure that Latino voters are enfranchised and included in the democratic process.

27. Plaintiff Texas Alliance for Retired Americans (the "Alliance") is incorporated in Texas as a 501(c)(4) nonprofit, social welfare, membership organization. The Alliance's mission is to ensure social and economic justice and full civil rights for retirees.

28. Plaintiff Texas AFT is a statewide labor union in Texas. Texas AFT advocates for the employment rights of its members and champions high-quality public education, fairness,

democracy, and economic opportunity for students, families, and communities. Part of Texas AFT's mission is to help its members select and elect leaders who embrace and uphold the interests of its members and the values of the union.

29. Plaintiff Marla López is a registered voter who resides in Harris County, Texas.

30. Plaintiff Marlon López is a registered voter who resides in Harris County, Texas.

31. Plaintiff Paul Rutledge is a registered voter who resides in Montgomery County, Texas.

32. Plaintiff Mi Familia Vota is a national, non-profit civic engagement organization with a state office in Texas.

33. Plaintiff Houston Area Urban League ("HAUL") is a nonpartisan, nonprofit corporation with its principal office in Houston, Texas. HAUL is an affiliate of the National Urban League.

34. Plaintiff The Arc of Texas is a nonpartisan, nonprofit corporation with its principal office in Austin, Texas. The Arc of Texas is an affiliate of The Arc of the United States.

35. Plaintiff Delta Sigma Theta Sorority, Inc. ("Delta Sigma Theta") is a national, nonpartisan, not-for-profit membership service organization.

36. Plaintiff OCA-Greater Houston ("OCA-GH") is a non-profit membership organization and the Greater Houston arm of the national organization OCA – Asian Pacific American Advocates.

37. Plaintiff League of Women Voters of Texas is a statewide non-profit membership organization.

38. Plaintiff REVUP-Texas is a grassroots organization whose name stands for "Register, Educate, Vote, Use Power." Defendant Greg Abbott is the Governor of Texas.

39. Defendant Jane Nelson is the Secretary of State of Texas (the "Secretary"). The office of the Secretary of State is an executive department or agency of the State of Texas.

40. Defendant Angela Colmenero is the Provisional Attorney General of Texas (the "Attorney

120777551.1 0099831-00001

General"). The office of the Texas Attorney General is an executive department or agency of the State of Texas.

41. Defendant Jacquelyn Callanen is the Bexar County Elections Administrator (the "Bexar County EA") and is responsible for the administration of elections in Bexar County.

42. Defendant Michael Scarpello is the Dallas County Elections Administrator (the "Dallas County EA") and is responsible for the administration of elections in Dallas County.

43. Defendant Lisa Wise is the El Paso County Elections Administrator (the "El Paso County EA") and is responsible for the administration of elections in El Paso County.

44. Defendant Clifford Tatum is the former Harris County Elections Administrator (the "Harris County EA") and was responsible for the administration of elections in Harris County during his service as Harris County EA.[12]

45. Teneshia Hudspeth is the Harris County Clerk and Chief Election Officer for Harris County, and is responsible for the administration of elections in Harris County. Plaintiffs are in the process of moving under Rule 25(d) to substitute Ms. Hudspeth, in her official capacity, for Defendant Tatum.

46. Defendant Hilda Salinas is the Hidalgo County Elections Administrator (the "Hidalgo County EA") and is responsible for the administration of elections in Hidalgo County.

47. Defendant Dyana Limon-Mercado is the Travis County Clerk (the "Travis County Clerk") and is responsible for administration of elections in Travis County.[13]

48. Defendant Joe Gonzales is the Bexar County District Attorney (the "Bexar County DA's

---

[12] The Harris County Elections Administrator has stipulated to the authenticity, accuracy, and conditional admission of certain discovery responses. Exhibit 8. The Harris County Elections Administrator's office was abolished on September 1, 2023, pursuant to 88th Leg. R.S., S.B. 1750 (to be codified as an amendment to Tex. Elec. Code § 31.050). Plaintiffs intend to shortly file a motion to substitute the Harris County Clerk in her official capacity as a Defendant in place of the Harris County Elections Administrator.
[13] The Travis County Clerk has stipulated to the authenticity, accuracy, and conditional admission of certain discovery responses. Exhibit 9.

120777551.1 0099831-00001

Office") and is responsible for the investigation and prosecution of alleged criminal violations of the Texas Election Code in Bexar County, including SB 1 §§ 4.06, 4.09, 6.04, 6.05, and 7.04. *See* Exhibit 2 (Stip. of the Dist. Att'y of Bexar Cnty.), ¶¶ 1-2.

49. The Bexar County DA's Office does not disclaim an intent to investigate or enforce these criminal provisions. Ex. 2, ¶¶ 3-6.

50. Defendant José Garza is the Travis County District Attorney (the "Travis County DA's Office") and is responsible for the investigation and prosecution of alleged criminal violations of the Texas Election Code in Travis County, including SB 1 §§ 4.06, 4.09, 6.05, 6.06, and 7.04 (the "Criminal Provisions"), and the crime of perjury. *See* Exhibit 3 (Stip. of the Dist. Att'y of Travis Cnty.), ¶¶ 1-2.

51. The Travis County DA's Office does not disclaim an intent to investigate or enforce these criminal provisions. Ex. 3, ¶¶ 3-6.

52. Plaintiffs and the Harris County DA's Office continue to work towards a negotiated stipulation ahead of trial. The parties will apprise the Court if a stipulation is reached.

53. Defendant Toribio "Terry" Palacios is the Hidalgo County District Attorney (the "Hidalgo County DA's Office") and is responsible for the investigation and prosecution of criminal violations of the Texas Election Code in Hidalgo County, including SB 1 §§ 4.06, 4.09, 6.04, and 7.04. *See* Exhibit 10 (Stip. of the Dist. Att'y of Hidalgo Cnty.) ¶¶ 1-2..

54. The Hidalgo County DA's Office does not disclaim an intent to investigate or enforce these criminal provisions. Ex. 10, ¶¶ 3-8.

55. Defendant John Creuzot is the Dallas County District Attorney (the "Dallas County DA's Office") and is responsible for the investigation and prosecution of alleged criminal violations of the Texas Election Code in Dallas County, including SB 1 §§ 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04.

*See* Exhibit 4 (Stip. of the Dist. Att'y of Dallas Cnty.), ¶¶ 1-2.

56. The Dallas County DA's Office does not disclaim an intent to investigate or enforce these criminal provisions. Ex. 4, ¶¶ 3-4.

57. Defendant Bill Hicks is the District Attorney of the 34th Judicial District, which encompasses El Paso, Hudspeth, and Culberson counties, and is responsible for the investigation and prosecution of alleged criminal violations of the Texas Election Code in El Paso County, including SB 1 §§ 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04, and the crime of perjury. *See* Exhibit 5 (Stip. of the Dist. Att'y of 34th Judicial District), ¶¶ 1-2.

58. Mr. Hicks does not disclaim an intent to investigate or enforce these criminal provisions. Ex. 5, ¶¶ 6-7.

59. Intervenor-Defendant Harris County Republican Party is the county Republican Party for Harris County, Texas.

60. Intervenor-Defendant Dallas County Republican Party is the county Republican Party for Dallas County, Texas.

61. Intervenor-Defendant National Republican Senatorial Committee is the national senatorial committee of the Republican Party as defined by 52 U.S.C. § 30101(4).

62. Intervenor-Defendant National Republican Congressional Committee is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(4).

63. Intervenor-Defendant Republican National Committee is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(4).

**(5) A list of contested issues of fact & (7) A list of contested issues of law;**

**A. <u>Standing:</u>**

1.  Have one or more Plaintiffs established a cognizable, concrete, and particularized injury-

in-fact?

2.  If Plaintiffs establish a cognizable, concrete, and particularized injury, is that injury traceable to and redressable by particular defendants?[14]

3.  Have Organization Plaintiffs satisfied the requirements for standing?

4.  Do the claims and relief asserted under ADA and Rehabilitation Act require the participation of individual members as parties?

5.  Do any of the Plaintiffs have statutory standing?

**B.  First Amendment Free Speech:**

1.  Whether any of the challenged provisions of SB 1 violate the First Amendment.

2.  Whether Plaintiffs may bring a facial challenge to § 7.04.

3.  Whether § 7.04 has a plainly legitimate sweep so as to preclude a facial challenge.

4.  Whether § 7.04  is subject to the *Anderson/Burdick* test or to strict scrutiny under the First Amendment, and if the former, whether § 7.04 satisfies the *Anderson/Burdick* test.

5.  Whether the conduct regulated by § 7.04 is protected speech.

6.  Whether § 7.04 restricts political speech.

7.  Whether § 7.04 applies to particular speech because of the topic discussed or the idea or message expressed.

8.  Whether § 7.04 furthers a compelling interest and is narrowly tailored to achieve that interest.

**C.  Fourteenth Amendment Void for Vagueness:**

1.  Whether any of SB 1's provisions are unconstitutionally vague.

---

[14] In a motion for summary judgment pending before the Court (ECF 614), District Attorney Ogg contends that there is no genuine issue of material fact for trial on the ability of any of the Plaintiffs to establish these standing requirements as against her.

2.   Whether Plaintiffs can bring pre-enforcement vagueness challenges to SB 1 §§ 4.06, 4.07, 4.09, 7.04, and 8.01, or whether they can only be raised as defenses to prosecutions or civil actions.

3.   Whether SB 1 §§ 4.06, 4.07, 4.09, 7.04, and 8.01 provide regulated persons fair notice of the conduct they proscribe.

4.   What the appropriate standard is for evaluating Plaintiffs' vagueness challenges to SB 1 §§ 4.06, 4.07, 4.09, 7.04, and 8.01.

**D.  <u>First Amendment Overbreadth</u>**

1.   Whether § 7.04 unreasonably restricts constitutionally protected speech or expressive conduct.

2.   Whether Texas's courts should be given a chance to interpret and potentially adopt narrowing constructions of § 7.04 before a federal court assesses whether it is unconstitutionally vague or overbroad.

3.   Whether a substantial number of SB 1 § 7.04's applications are unconstitutional when judged against the provision's legitimate sweep.

4.   Whether SB 1 § 7.04 might operate unconstitutionally under some conceivable set of circumstances.

**E.  <u>First And Fourteenth Amendment Right to Vote</u> : Undue Burden**

1.   The extent to which SB 1 §§, 3.04, 3.09-3.10, 3.12, 3.13, 4.01, 4.06-4.07, 4.09, 4.12, 5.02-5.04, 5.07-5.08, 5.13, 6.01, 6.03-6.07, 7.02, and 7.04 burden the right to vote.

2.   If any of the challenged provisions of SB 1 impose an undue burden on the right to vote, whether they are justified by sufficient state interests.

3.    What the appropriate standard is for evaluating Plaintiffs' vagueness challenges to SB 1 §§ 4.06, 4.07, 4.09, 7.04, and 8.01.

120777551.1 0099831-00001

**F.  Fourteenth And Fifteenth Amendments Intentional Discrimination:**

1.  Whether SB 1 §§ 2.05-2.07, 3.04, 3.09-3.10, 3.12, 3.13, 3.15, 4.01, 4.06-4.07, 4.09, 4.12, 5.01-5.04, 5.07-5.08, 5.11-5.14, 6.01, 6.03-6.07, 7.02, and 7.04 violate the Fourteenth and Fifteenth Amendment Prohibitions on Intentional Racial Discrimination.

2.  Whether Plaintiffs can overcome the presumption that the Legislature acted in good faith.

3.  Whether the Legislature adopted SB 1 §§ 2.05-2.07, 3.04, 3.09-3.10, 3.12, 3.13, 3.15, 4.01, 4.06-4.07, 4.09, 4.12, 5.01-5.04, 5.07-5.08, 5.11-5.14, 6.01, 6.03-6.07, 7.02, and 7.04 with the intent to discriminate on the basis of race.

4.  Whether race was a motivating factor in the adoption of SB 1 §§ 3.04, 3.09-3.10, 3.12, 3.13, 3.15, 4.01, 4.06-4.07, 4.09, 4.12, 5.01-5.04, 5.07-5.08, 5.11-5.14, 6.01, 6.03-6.07, 7.02, and 7.04.

5.  Whether any of the Challenged Provisions had a sufficient disparate impact on any racial group.

6.  Whether the legislative supporters of any of the Challenged Provisions of SB 1 reasonably foresaw that those provisions would cause a disparate impact on any racial group.

7.  Whether the purported justifications for the Challenged Provisions of SB 1 were pretextual.

8.  Whether the legislative process leading up to the passage of SB 1 included departures from the normal procedural sequence.

9.  Whether the specific sequence of events leading up to the enactment of SB 1 reveals a racially discriminatory purpose.

10. Whether the legislative history of SB 1 reveals a discriminatory purpose or any racist statements by supporters of the law.

11. Whether additional evidence reveals a racially discriminatory purpose in the enactment of

120777551.1 0099831-00001

SB 1.

12. Whether the supporters of SB 1 refused to include a provision that would study the impact of SB 1 on Black, Latino, and other voters of color.

13. Whether there were less discriminatory alternatives to any or all of the challenged provisions of SB 1.

14. Whether the supporters of SB 1 showed a willingness to adopt amendments to the originally proposed law.

**G. Section 2 of the VRA:**

*Discriminatory Effects Claim*

1.   Whether SB 1 §§ 2.05-2.07, 3.04, 3.09-3.10, 3.12-3.13, 3.15, 4.01, 4.06-4.07, 4.09, 4.12, 5.01-5.04, 5.07-5.08, 5.11-5.14, 6.01, 6.03-6.07, 7.02, and 7.04 result in the denial or abridgement of the right of any citizen of Texas to vote on account of race of color.

2.   Whether SB 1 §§ 2.05-2.07, 3.04, 3.09-3.10, 3.12-3.13, 3.15, 4.01, 4.06-4.07, 4.09, 4.12, 5.01-5.04, 5.07-5.08, 5.11-5.14, 6.01, 6.03-6.07, 7.02, and 7.04, based on the totality of the circumstances, create state political processes that are not equally open to participation by minority voters, such that those voters have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Discriminatory Intent Claim*

1.   Whether a holistic assessment of the relevant factors—including the existence of a racially disparate impact, the historical background, the specific sequence of events, departures from the normal procedural sequence, departures from normal substantive considerations, the law's legislative history, or other relevant evidence—reveals that an intent to discriminate on the basis of race was a motivating factor in enacting the provisions of SB 1 challenged under this claim.

**H.  Section 208 of the VRA:**

1.  Whether SB 1 §§ 6.01, 6.03-6.07, and 7.04 impair the ability of a voter, who requires assistance to vote by reason of blindness, disability, or inability to read or write to receive assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

2.  Whether Defendant Ogg has violated Section 208 of the VRA.

**I.  Title II of the ADA and Section 504 of the Rehabilitation Act:**

1.  Whether SB 1 §§ 5.02-5.03, 5.06-5.08, 5.10, 5.12-5.14, 6.01, 6.03-6.07, and 7.04 discriminate against Texas voters on the basis of disability.

2.   Whether Defendant Ogg has violated any provision of the ADA or Section 504 of the Rehabilitation Act.

(6) A LIST OF THE LEGAL PROPOSITIONS THAT ARE NOT IN DISPUTE

1.  The parties have been unable to reach agreement on an appropriate list of legal propositions that are not in dispute. Plaintiffs attach as Appendix C a statement of legal propositions that they contend are not in dispute.

**(6) A list of contested issues of law;**

1.  Whether the Challenged Provisions of SB 1 violate the First Amendment of the U.S. Constitution.

2.  Whether the Challenged Provisions of SB 1 are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

3.  Whether the Challenged Provisions of SB 1 are unconstitutionally overbroad in violation of the First Amendment.

4.  Whether the Challenged Provisions of SB 1 violate the First and Fourteenth Amendments of the U.S. Constitution.

5. Whether the Challenged Provisions of SB 1 violate the Fifteenth Amendment of the U.S. Constitution.

6. Whether the Challenged Provisions of SB 1 result in an abridgment of the right of any citizen to vote on account of race, color, or membership in a language minority group in violation of Section 2 of the VRA.

7. Whether an intent to discriminate on the basis of race was a motivating factor in the enactment of the Challenged Provisions of SB 1 in violation of Section 2 of the VRA.

8. Whether the Challenged Provisions of SB 1 violate Section 208 of the VRA.

9. Whether the Challenged Provisions of SB 1 violate Title II of the ADA.

10. Whether the Challenged Provisions of SB 1 violate Section 504 of the Rehabilitation Act.

**(7) A list of all exhibits expected to be offered;**

The Parties' exhibit lists were initially filed as part of their Rule 26(a)(3) disclosures on July 28, 2023. The parties have since conferred and identified a number of joint exhibits, a list of which is attached hereto as Exhibit 6. In addition, each party is separately filing exhibit lists concurrently with their trial outlines, *see infra*, that disclose any objections that have been raised and the grounds therefore.

As noted in the Parties' Notice Concerning Trial Procedures, ECF No. 683, in lieu of moving individual exhibits into evidence during trial, the Parties have agreed that disclosure of exhibits shall constitute a request to move such exhibits into evidence. The parties have further agreed to the use of disclosed exhibits during trial subject to oral and written objections, in expectation that the Court will rule on oral objections when made and on written objections prior to the close of evidence.

120777551.1 0099831-00001

**(8) A list of the names and addresses of witnesses who may be live called with a brief statement of the nature of their testimony;**

The Parties' witness lists were previously filed, and an updated Private Plaintiffs witness list is attached as Exhibit 7. These lists separately identify the witnesses that each party expects to offer for live testimony and those that the party may offer if the need arises. In addition, Mi Familia Vota now intends to call Dr. Franita Tolson in this phase of the trial rather than wait to call her at any subsequent intent phase.[15]

**(9) An estimate of trial length;**

Private Plaintiffs' pretrial disclosures "announced that 58 individuals will offer live trial testimony." ECF No. 700 at 1. The Court resolved the materiality-provision claims on summary judgment on August 17, and specifically noted parties' representations that such a resolution would reduce the number of witnesses called to testify at trial. ECF No. 724 at 2. Private Plaintiffs' current witness list now identifies 52 witnesses whom they will call to provide live testimony at trial. Ex. 7.

State Defendants and Intervenor-Defendants seek equal time to cross-examine Private Plaintiffs' witnesses as Private Plaintiffs propose to take for their affirmative case. Based upon Private Plaintiffs' request for 43 hours to present their affirmative cases, ECF No. 707 at 4, if State Defendants and Intervenor-Defendants take an equal amount of time on cross-examination, Private Plaintiffs' case in chief and cross-examination will take up to 86 hours of trial time, or approximately 14 trial days.

State Defendants and Intervenor-Defendants will need an estimated 8 trial days to present their case and to provide an equal amount of time for  cross-examination by Private Plaintiffs.

---

[15] By signing this joint pretrial order, State Defendants and Intervenor Defendants do not waive their right to object to the testimony of Dr. Franita Tolson.

ECF No. 709 at 3. Thus, approximately 22 trial days should be needed for presentation of evidence.

**(10) For a jury trial, include (a) proposed questions for the voir dire examination, and (b) a proposed charge, including instructions, definitions, and special interrogatories, with authority;**

This case will not be heard by a jury.

**(11) For a nonjury trial, include (a) proposed findings of fact and (b) proposed conclusions of law, with authority;**

The Parties have not provided proposed findings of fact and law, consistent with the Court's order during its May 16, 2023, status conference.

**(12) A list of the names of witnesses whose testimony will be offered by deposition designation, including the page and line of the testimony offered;**

For witnesses who will testify only by deposition designation, the Parties have exchanged exhibits containing the page and line of the deposition testimony offered and the Parties have also exchanged objections. The existing scheduling order does not specify the deadline for counter designations; the Parties intend to negotiate a date that all counter designations must be filed.[16]

The Parties continue to negotiate the exchange of exhibits containing the page and line designations of the deposition testimony for witnesses whose testimony will "hybrid" at trial.

**Trial Outlines**

During the August 22, 2023 status conference, the Court instructed the parties to provide a submission organized by claim, listing the witnesses and exhibits the parties contend support their arguments related to each claim. State Defendants and Intervenor Defendants refer the Court to their August 11, 2023 Trial Advisory, ECF 709, which identifies the witnesses State Defendants and Intervenor Defendants plan on calling to trial and the subject and anticipated length of their testimony. State Defendants and Intervenor Defendants will provide additional information to the

---

[16] State Defendants, Intervenor- Defendants, and District Attorney Ogg maintain that deposition designations are improper for any witness absent an agreement by the Parties or a showing that the requirements of Fed. R. Civ. P. 32 have been met.

Court near or at the time Plaintiffs rest, as necessary. The remaining parties intend to file these

trial outlines individually, concurrent with the deadline for this Joint Pretrial Order.

**The signatures of all attorneys;**

Dated: September 5, 2023                                    Respectfully Submitted,

**For LUPE Plaintiffs:**

/s/ *Nina Perales*                                          /s/ *Sean Morales-Doyle*
Nina Perales (TX Bar No. 24005046)                         Sean Morales-Doyle
Julia R. Longoria (TX Bar No. 24070166)                    Patrick A. Berry*
Fátima L. Menéndez (TX Bar No. 24090260)                   Jasleen K. Singh*
Kenneth Parreno (MA BBO No. 705747)                        Robyn N. Sanders*
MEXICAN AMERICAN LEGAL DEFENSE                             BRENNAN CENTER FOR JUSTICE AT
AND EDUCATIONAL FUND                                       NYU SCHOOL OF LAW
110 Broadway, Suite 300                                    120 Broadway, Suite 1750
San Antonio, TX 78205                                      New York, NY 10271
Tel: (210) 224-5476; Fax: (210) 224-5382                   Telephone: (646) 292-8310
nperales@maldef.org                                        sean.morales-doyle@nyu.edu
jlongoria@maldef.org                                       patrick.berry@nyu.edu
fmenendez@maldef.org                                       jasleen.singh@nyu.edu
kparreno@maldef.org                                        rs8592@nyu.edu
                                                           * Admitted *pro hac vice*

Michael C. Keats*
Rebecca L. Martin*                                         Leah J. Tulin*
Jason S. Kanterman*                                        BRENNAN CENTER FOR JUSTICE AT
Kevin Zhen*                                                NYU SCHOOL OF LAW
FRIED, FRANK, HARRIS, SHRIVER &                            1140 Connecticut Avenue NW, Suite 1150
JACOBSON LLP                                               Washington, DC 20036
One New York Plaza                                         (202) 650-6397
New York, New York 10004                                   tulinl@brennan.law.nyu.edu
Tel: (212) 859-8000; Fax: (212) 859-4000                   * Admitted *pro hac vice*
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com                              Paul R. Genender (Tex. Bar No. 00790758)
jason.kanterman@friedfrank.com                             Elizabeth Y. Ryan (Tex. Bar No. 24067758)
kevin.zhen@friedfrank.com                                  WEIL, GOTSHAL & MANGES LLP
                                                           200 Crescent Court, Suite 300
*Attorneys for Plaintiffs:*                                Dallas, Texas 75201
LA UNIÓN DEL PUEBLO ENTERO,                                (214) 746-8158
SOUTHWEST VOTER REGISTRATION                               paul.genender@weil.com
EDUCATION PROJECT, MEXICAN                                 liz.ryan@weil.com
AMERICAN BAR ASSOCIATION OF
TEXAS, TEXAS HISPANICS ORGANIZED                           *Attorneys for Plaintiffs:*
FOR POLITICAL EDUCATION, JOLT                              FRIENDSHIP-WEST BAPTIST CHURCH,
ACTION, WILLIAM C. VELASQUEZ

INSTITUTE, FIEL HOUSTON INC.

*Admitted pro hac vice*

TEXAS IMPACT, JAMES LEWIN

*Counsel for LUPE Plaintiffs*

**For OCA Greater Houston Plaintiffs:**

/s/ *Zachary Dolling*
Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah Chen*
California Bar No. 325327
Veronikah Warms*
Texas Bar No. 24132682
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 (Telephone)
(512) 474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
ACLU FOUNDATION OF TEXAS, INC.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Gregory D. Washington*
JENNER & BLOCK LLP
455 Market St. Suite 2100
San Francisco, CA 94105

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
AMERIAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

Lucia Romano
Texas State Bar No. 24033013
PETER HOFER
Texas State Bar No. 09777275
CHRISTOPHER MCGREAL
Texas State Bar No. 24051774
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)

gwashington@jenner.com

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org
Jessica Ring Amunson*
Alyssa G. Bernstein*
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
abernstein@jenner.com
*admitted *pro hac vice*

*Counsel for OCA-Greater
Houston Plaintiffs*

lromano@drtx.org
phofer@drtx.org
cmcgreal@drtx.org

### For Mi Familia Vota Plaintiffs:

/s/ *Courtney Hostetler*
Courtney Hostetler*
Ron Fein*
John Bonifaz*
Ben Clements*
FREE SPEECH FOR THE PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

Wendy Olson* Elijah
Watkins* Mark Bieter*
STOEL RIVES LLP
101 S. Capital Boulevard, Suite 1900

Laura Rosenbaum*
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
laura.rosenbaum@stoel.com

Bradley Prowant*
John Katuska*
STOEL RIVES LLP
33 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
bradley.prowant@stoel.com
john.katuska@stoel.com

Sean Lyons
Clem Lyons

Boise, ID 83702
Telephone: (208) 389-9000
wendy.olson@stoel.com
elijah.watkins@stoel.com
mark.bieter@stoel.com

LYONS & LYONS, P.C.
237 W. Travis Street, Suite 100 San
Antonio, Texas 78205
Telephone: (210) 225-5251
sean@lyonsandlyons.com
*Admitted pro hac vice

*Counsel for Plaintiffs Mi Familia Vota, Marla López, Marlon López, and Paul Rutledge ("MFV Plaintiffs")*

### For HAUL Plaintiffs:

/s/ *Jennifer A. Holmes*
Jennifer A. Holmes*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
Facsimile: (202) 682-1312
jholmes@naacpldf.org

Amir Badat*
Victor Genecin*
Breanna Williams*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor New
York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
abadat@naacpldf.org
vgenecin@naacpldf.org
bwilliams@naacpldf.org

Shira Wakschlag*
THE ARC OF THE UNITED STATES, INC.
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org

Sarah Cummings Stewart
Texas Bar No. 24094609
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
sarah.stewart@reedsmith.com

J. Michael Showalter*
ARENTFOX SCHIFF LLP
South Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: (312) 258-5561
j.michael.showalter@afslaw.com
*Admitted *pro hac vice*

Kenneth E. Broughton
Texas Bar No. 03087250
J. Keely Pippin
Texas Bar No. 24116306
REED SMITH LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
kbroughton@reedsmith.com
kpippin@reedsmith.com

*Counsel for Plaintiffs Houston Area Urban League; Delta Sigma Theta Sorority, Inc.; The Arc of Texas; and Jeffrey Lamar Clemmons ("HAUL Plaintiffs")*

38

**For LULAC Plaintiffs:**

/s/ *Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Michael B. Jones*
Noah B. Baron*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Marcos Mocine-McQueen*
Marisa A. O'Gara*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elais.law
mjones@elias.law
nbaron@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
mmcqueen@elias.law
mogara@elias.law
oalerasool@elias.law

*Counsel for LULAC Plaintiffs*

*\*Admitted Pro Hac Vice*

ANGELA COLMENERO
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

Respectfully submitted.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, General Litigation Division
Tex. State Bar No. 24060998

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

WILLIAM D. WASSDORF
Assistant Attorney General
Tex. State Bar No. 24103022

ZACHARY W. BERG
Special Counsel
Tex. State Bar No. 24107706

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov
zachary.berg@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**


*/s/ John M. Gore*
John M. Gore
E. Stewart Crosland (pro hac vice)
Louis J. Capozzi (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

*Counsel for Intervenor-Defendants*

BUTLER SNOW LLP

By:  */s/ Eric J.R. Nichols*
Eric J.R. Nichols
State Bar No. 14994900
eric.nichols@butlersnow.com
Cory R. Liu
State Bar No. 24098003
cory.liu@butlersnow.com
Victoria A. Giese
State Bar No. 24126391
victoria.giese@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Tel: (737) 802-1800
Fax: (737) 802-1801

ATTORNEYS FOR DEFENDANT
DISTRICT ATTORNEY KIM OGG, IN
HER OFFICIAL CAPACITY AS HARRIS
COUNTY DISTRICT ATTORNEY

JOE D. GONZALES
Bexar County Criminal District Attorney

By: /s/ *Lisa V. Cubriel*
LISA V. CUBRIEL
State Bar No. 24045731
Assistant District Attorney – Civil Division
ROBERT W. PIATT III
State Bar No. 24041692
Assistant District Attorney – Civil Division
LARRY L. ROBERSON
Civil Section Chief
Bexar County District Attorney's Office
101 W. Nueva, 7th Floor
San Antonio, Texas 78205-3030
Telephone: (210) 335-2142
Facsimile: (210) 335-2773
Email: Lisa.Cubriel@bexar.org
Robert.Piatt@bexar.org
lroberson@bexar.org
*Attorneys for Defendant Bexar County*
*Elections Administrator Jacquelyn*
*Callanen and Defendant Bexar County*
*District Attorney Joe D. Gonzales*

41

Respectfully submitted,

JOHN CREUZOT
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

/s/ Ben L. Stool
Assistant Criminal District Attorney
Texas Bar No. 19312500
ben.stool@dallascounty.org
Barbara S. Nicholas
Assistant Criminal District Attorney
Texas Bar No. 24032785
barbara.nicholas@dallascounty.org
Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Phone: (214) 653-7358
Fax:     (214) 653-6134
Attorneys for Defendant Michael
Scarpello, in his official capacity
as the Elections Administrator  of
Dallas County, Texas, and Defendant
John Creuzot, in his official capacity
as the Criminal District Attorney of
Dallas County, Texas

*/s/ Kathleen Hartnett*
Kathleen Hartnett* (CA SBN 314267)

COOLEY LLP
Kathleen Hartnett* (CA SBN 314267)
khartnett@cooley.com
Beatriz Mejia* (CA SBN 190948)
bmejia@cooley.com
Sharon Song* (CA SBN 313535)
ssong@cooley.com
Kelsey Spector* (CA SBN 321488)
kspector@cooley.com
Germaine Habell* (CA SBN 333090)
ghabell@cooley.com
Caroline A. Lebel* (CA SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693-2000
Facsimile: +1 415 693-2222

COOLEY LLP
Orion Armon (CO SBN 34923)
oarmon@cooley.com
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: +1 720 566-4000
Facsimile: +1 720 566-4099

STATES UNITED DEMOCRACY CENTER
Christine P. Sun* (CA SBN 218701)
3749 Buchanan St., No. 475165
San Francisco, CA 94147-3103
Telephone: +1 615 574-9108
christine@statesuniteddemocracy.org

STATES UNITED DEMOCRACY CENTER
Ranjana Natarajan (TX SBN 24071013)
1801 E 51st St., Suite 365, No. 334
Austin, TX 78723
Telephone: +1 323 422-8578
ranjana@statesuniteddemocracy.org

STATES UNITED DEMOCRACY CENTER
Robert Cotter* (IL SBN 6334375)
7510 N. Greenview Ave., Apt. #3

43

Chicago, IL 60626
Telephone: (224) 235-2606
robert@statesuniteddemocracy.org

STATES UNITED DEMOCRACY CENTER
Marina Eisner* (DC SBN 1005593)
1101 17 Street NW
Washington, DC 20036
Telephone: (240) 600-1316
marina@statesuniteddemocracy.org

EL PASO COUNTY ATTORNEYS
Jo Anne Bernal (TX SBN 02208720)
El Paso County Attorney
Joanne.Bernal@epcounty.com
John E. Untereker (TX SBN 24080627)
Assistant County Attorney
juntereker@epcounty.com
500 East San Antonio, Room 503
El Paso, Texas 79901
Telephone: +1 915 546-2050
Facsimile: +1 915 546-2133

*Attorneys for Defendant Lisa Wise, in her*
*official capacity as the El Paso County*
*Elections Administrator*


It is so **ORDERED**.

**SIGNED** this ___ day of _____, 2023.


_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

120777551.1 0099831-00001