# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> GREGORY W. ABBOTT, *et al.*, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> JOSE A. ESPARZA, *et al,.* <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-780-XR |
| HOUSTON JUSTICE, *et al,* <br> *Plaintiffs,* <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *et al.*, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-848-XR |
| LULAC TEXAS, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> JOSE ESPARZA, *et al.*, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:21-cv-0786-XR |
| MI FAMILIA VOTA, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 5:21-cv-0920-XR |

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| *Plaintiff,* | § |
| | § |
| v. | § |
| | §    Case No. 5:21-cv-1085-XR |
| THE STATE OF TEXAS, ET AL., | § |
| *Defendants* | § |
| | § |

### THE ATTORNEY GENERAL'S OBJECTIONS AND RESPONSES TO PRIVATE PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

TO:    The LUPE Plaintiffs, by and through their attorney of record, Nina Perales, Mexican American Legal Defense and Education Fund, 110 Broadway, Suite 300, San Antonio, TX 78205; The OCA-Greater Houston Plaintiffs, by and through their attorney of record, Ryan V. Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX 78741; The Houston Justice Plaintiffs, by and through their attorney of record, Sarah M. Cummings, Reed Smith LLP, 2850 N. Harwood Street, Suite 1500, Dallas, TX 75201; The LULAC Plaintiffs, by and through their attorney of record, John R. Hardin, Perkins Coie LLP, 500 North Akard Street, Suite 3300, Dallas, Texas 75201-3347; and The Mi Familia Vota Plaintiffs, by and through their counsel of record, Sean Lyons, Lyons & Lyons, P.C., 237 W. Travis Street, Suite 100, San Antonio, Texas 78205; the United States, by and through its attorney of record, Daniel J. Freeman, Civil Rights Division, U.S. Department of Justice, 950 Pennsylvania Ave, NW, Washington, DC 20530.

Defendant W. Kenneth Paxton ("Defendant") in his official capacity as the Texas Attorney General, hereby serves his Objections and Responses to the Private Plaintiffs' First Set of Requests for Production, pursuant to the Federal Rules of Civil Procedure.

Date: December 29, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415
*Application for Admission Pending*

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for the Texas Attorney General**

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2021, the attached the Attorney General's Objections and Responses to Private Plaintiffs' First Request for Production of Documents was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Defendant asserts that each of the following objections applies specifically to each request. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request below. These objections are as follows:

Defendant objects to each discovery request to the extent that it: (1) calls for the production of documents that are publicly available or otherwise uniquely or equally available from third parties; (2) calls for the production of documents that are not proportional to the needs of this case; and (3) calls for the production of documents that are irrelevant to the subject matter of this litigation.

Under Rule 26(b)(1), the proper scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (2015). Among the considerations that are germane to that inquiry are "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Defendant objects to these requests to the extent that the information sought is either irrelevant or disproportionate.

First, much of the production being sought is not "relevant to any party's claim or defense" in this case. The Private Plaintiffs challenge specific provisions within Senate Bill 1 ("SB1"). Many of the production requests, however, concern "election administration" generally, which effectively

4

encompasses every action that the State of Texas, including the Office of the Attorney General of Texas ("OAG"), and/or local election official takes pursuant to the Texas Election Code. *See, e.g.*, RFP Nos. 13, 15, and 17. Additionally, the Private Plaintiffs request OAG to produce any document and/or communication about SB1, SB7, HB3, or HB6, regardless of whether the subject of that document and/or communication bears on the issues raised in the Private Plaintiffs' legal action. The Private Plaintiffs, again, make no effort to limit their requests to the provisions of SB1 challenged in their live pleadings.

Second, large amounts of the requested production are not "proportional to the needs of the case." This language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia*

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

*Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Defendant objects to the Private Plaintiffs' Requests for Production to the extent that these requests fall short of this more stringent proportionality standard.

Furthermore, Defendant objects to Private Plaintiffs' definitions of the terms "you," "your," and "Attorney General," and to the names of specific individuals to the extent they attempt to impose rules or requirements that are inconsistent with the Federal Rules of Civil Procedure. Defendant is responding with information known to, or within the possession, custody, or control of Defendant. Defendant is not responding for other agencies, boards, bureaus, commissions, or other independent executive or legislative departments of the State of Texas. Defendant objects to the requests for production, definitions, and instructions to the extent they extend to non-parties, or require Defendant to answer for non-parties. Accordingly, Defendant objects to all requests with the terms "you," "your," and "Attorney General" as overbroad, unduly burdensome, and not calculated to lead to admissible evidence.

Defendant has endeavored to identify all divisions and staff within the Texas Attorney General's Office with information responsive to the Requests so that specific and focused objections and responses may be included in this response. Defendant objects to Private Plaintiffs' definition of "you," "your," and "Attorney General" to the extent that it seeks to impose burdens beyond the Federal Rules of Civil Procedure. Defendant further objects to Private Plaintiffs' definition of "you," "your," and "Attorney General" as overly broad, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The Office of the Attorney General has over 4,000 employees, thousands of whom are uninvolved with this matter. Moreover, this lawsuit concerns enforcement attorneys and investigators for OAG acting in an official governmental capacity. Defendant responds for enforcement attorneys and investigators in this matter, their immediate superiors, and those at OAG who may have information requested that could even possibly be reasonably calculated to lead

6

to the discovery of admissible evidence. Specifically, Defendant objects except as to production from the following: enforcement investigators for OAG who handle election integrity matters, those enforcement attorneys for OAG who are counsel in this matter, and the Government Relations Division. Defendant objects to all of Private Plaintiffs' requests to the extent that they call for information from groups beyond those specifically listed above as producing information. To the extent that they go beyond that scope, Private Plaintiffs' requests are overbroad, ambiguous, vague, harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Defendant reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Defendant likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Defendant's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the Private Plaintiffs' characterization of any facts, circumstances, or legal obligations. Defendant reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Defendant will provide his responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Defendant objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Defendant will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

**SPECIFIC OBJECTIONS AND RESPONSES TO PRIVATE PLAINTIFFS'
FIRST SET OF REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications regarding any rationale(s) for drafting or enacting SB 1, SB 7, HB 3, or HB 6.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request, and thus, OAG will conduct a search limited to OAG employees identified in the general objections above.

Additionally, Defendant objects to this request because it seeks irrelevant documents and communications. The Private Plaintiffs do not challenge *any* provision of SB7, HB3, or HB6, and challenge only a limited set of provisions of SB1, yet the request asks OAG to produce any document and communication about the rationale for drafting or enacting SB1, SB7, HB3, or HB6, regardless of whether it relates to provision that it challenged through the underlying suit. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege, making the request unduly burdensome. The burden of conducting this examination far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represent the Texas Governor, the Texas Secretary of State, and the Texas Attorney General ("State Defendants") in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant objects to this request to the extent that it calls for the production of documents within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. Finally, Defendant objects to this request to the extent that it encompasses documents publicly available or otherwise equally accessible to Plaintiffs.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be

identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications regarding the implementation or enforcement of SB 1, SB 7, HB 3, or HB 6.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request, and thus, OAG will conduct a search limited to OAG employees identified in the general objections above.

Additionally, Defendant objects to this request because it seeks irrelevant documents and communications. The Private Plaintiffs do not challenge *any* provision of SB7, HB3, or HB6, and challenge only a limited set of provisions of SB1, yet the request asks OAG to produce any document and communication about the rationale for drafting or enacting SB1, SB7, HB3, or HB6, regardless of whether it relates to provision that it challenged through the underlying suit. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege, making the request unduly burdensome. The burden of conducting this examination far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG's involvement with the enforcement and implementation of SB1 is limited to specific provisions and is additionally qualified by the recent decision *State v. Stephens*, PD-1032-20, 2021 WL 5917198, at *4 (Tex. Crim. App. Dec. 15, 2021). What's more, SB7, HB3, or HB6 were not enacted into law. OAG therefore has not developed any protocols or taken any action to implement or enforce these bills, such as an investigation or prosecution. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Additionally, in accordance with the Texas Election Code, if, after receiving or discovering information about alleged criminal conduct in connection with an election, the Texas Secretary of State ("Texas SOS") determines that there is reasonable cause to suspect that criminal conduct occurred, Texas SOS shall refer the complaint to OAG for further investigation. *See, e.g.* § 31.006. OAG then makes decision whether or not pursue criminal charges in conjunction with the local prosecutor. The release of non-public information related to these files would invariably reveal the identity of suspects, witnesses, and reporting parties, thereby compromising ongoing investigation. The release of this information also bears the risk compromising future investigations to the extent it reveals law enforcement's methods and tactics for detecting and investigating election fraud offenses. Defendant therefore considers any documents related to investigative and prosecution case files to be privileged, unduly burdensome, and not proportional to the needs of the case.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 3:** All documents and communications regarding voter turnout, including patterns of voter turnout by racial or ethnic minorities, disabled persons, and partisan affiliation during the 2020 primary and general elections.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices across Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant further objects to the request for "All documents and communications regarding voter turnout" sweeps far too broadly, and thus, is vague, overly broad, and unduly burdensome. Requesting "all documents" related to voter turnout is not sufficiently specific to determine what would be potentially responsive or assess the burdens of collecting and producing any such information. Moreover, much of the requested information is not relevant to any claims or defenses in this case. Plaintiffs have filed suit over select portions of SB1, not the entirety of the changes.

Defendant also objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or

control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision. *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding voter turnout. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 4:** All documents and communications regarding the impact or potential impact of SB 1, SB 7, HB 3, or HB 6 on particular demographics, including but not limited to racial or ethnic minorities, disabled persons, and party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request.  In addition, Defendant objects to this request to the extent it seeks irrelevant documents and/or communications. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any document and/or communication about the impact of SB1, SB7, HB3, or HB6, regardless of whether impact stems from a challenged provision. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who are not parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under SB1 and the Election Code more generally, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 5:** All documents and communications regarding usage of the following methods of voting by racial or ethnic minorities and disabled persons, or by party affiliation, during the period from 2016 to present:

   (a) Drop-box voting;
   (b) Drive-thru voting;
   (c) 24-hour voting;
   (d) Straight-ticket voting;
   (e) Vote-by-mail;
   (f) Early voting;
   (g) Curbside voting;
   (h) All other methods of voting.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific,

ambiguous, vague, and unduly burdensome. For example, as noted above in responses in the general objections concerning the scope of the requests and the objection to the definition of "Attorney General," this request on its face would require Defendant to search and examine any and all emails directed to or from an OAG employee.

Defendant also objects to the catchall term "all other methods of voting" as not only being vague, ambiguous, and overly broad, but also lacking specificity. Without additional limits, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy. Because the Plaintiffs do not challenge "all methods of voting," but rather specific provisions of SB1, the burden of conducting the request far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who are not parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding usage of voting methods by specific demographic groups. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Additionally, in accordance with the Texas Election Code, if, after receiving or discovering information about alleged criminal conduct in connection with an election, the Texas SOS determines that there is reasonable cause to suspect that criminal conduct occurred, Texas SOS shall refer the complaint to OAG for further investigation. *See, e.g.* § 31.006. OAG then makes decision whether or not pursue criminal charges in conjunction with the local prosecutor. The release of non-public information related to these files would invariably reveal the identity of suspects, witnesses, and reporting parties, thereby compromising ongoing investigation. The release of this information also bears the risk compromising future investigations to the extent it reveals law enforcement's methods and tactics for detecting and investigating election fraud offenses. Defendant therefore considers any documents related to its investigative and prosecution case files to be privileged, unduly burdensome, and not proportional to the needs of the case.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 6:** All documents and communications regarding voter assistance, including transportation assistance and vote harvesting, and patterns of requests for voter assistance by race, ethnicity, disability status, or party affiliation during the period from 2016 to present.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination thus far exceeds the benefit.

Defendant further objects to the request for "All documents and communications regarding voter assistance, as vague, unintelligible, overly broad, and unduly burdensome. Additionally, it calls for the production of materials that are irrelevant to any challenge raised in this case. For example, Texas Elections Code §§ 64.032, -.0321, -.033, and -.035, which were not amended by SB1, concern voting assistance, yet those provision are not at issue in this litigation. Defendant objects that review and production of *all documents and communications* regarding voter assistance, without limitation, will necessarily require a search for and review of materials that do not bear any relationship to the issues in this case.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at \*4. As such, OAG does not conduct independent assessments regarding voting assistance or the patterns or frequency in which certain demographic groups utilize this option. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003. That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope

of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Additionally, in accordance with the Texas Election Code, if, after receiving or discovering information about alleged criminal conduct in connection with an election, the Texas SOS determines that there is reasonable cause to suspect that criminal conduct occurred, Texas SOS shall refer the complaint to OAG for further investigation. *See, e.g.* § 31.006. OAG then makes decision whether or not pursue criminal charges in conjunction with the local prosecutor. The release of non-public information related to these files would invariably reveal the identity of suspects, witnesses, and reporting parties, thereby compromising ongoing investigation. The release of this information also bears the risk compromising future investigations to the extent it reveals law enforcement's methods and tactics for detecting and investigating election fraud offenses. Defendant therefore considers any documents related to investigative and prosecution case files to be privileged, unduly burdensome, and not proportional to the needs of the case.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 7:** All documents and communications regarding the number or proportion of Texas residents, Texas citizens of voting age, or Texas registered voters who have, or lack, a driver's license, election identification certificate, personal identification card, or social security number, including patterns by race, ethnicity, disability status, or party affiliation from 2016 to present.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request.  In addition, Defendant objects to this request to the extent it seeks irrelevant documents and/or communications. Defendant understands RFP No. 7 to pertain to the Private Plaintiffs' assorted claims that Sections 5.01–5.03, 5.06–5.08, and 5.10–14 of SB1 violate federal law. *See, e.g.*,

ECF 137 ¶¶ 110, 119–23. These provisions relate exclusively to mail-in voting. Yet the Private Plaintiffs request any documents and/or communication about the number of Texans who have, or lack, a driver's license, election identification certificate, personal identification card, or social security number generally. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit. The request is therefore not proportionate to the needs of this case and goes outside the scope of discovery.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at \*4. As such, OAG does not conduct, as a general matter, independent assessments regarding the number or proportion of Texans who have, or lack, the forms of identification identified in this request; nor does it assess patterns among certain demographic groups. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Additionally, in accordance with the Texas Election Code, if, after receiving or discovering information about alleged criminal conduct in connection with an election, the Texas SOS determines that there is reasonable cause to suspect that criminal conduct occurred, Texas SOS shall refer the complaint to OAG for further investigation. *See, e.g.* § 31.006. OAG then makes decision whether or not pursue criminal charges in conjunction with the local prosecutor. The release of non-public information related to these files would invariably reveal the identity of suspects, witnesses, and reporting parties, thereby compromising ongoing investigation. The release of this information also bears the risk compromising future investigations to the extent it reveals law enforcement's methods and tactics for detecting and investigating election fraud offenses. Defendant therefore considers any documents related to investigative and prosecution case files to be privileged, unduly burdensome, and not proportional to the needs of the case.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 8:** All documents and communications discussing actual or alleged illegal voting, election fraud, or other criminal conduct in connection with the following methods of voting during the period from 2016 to present:

      (a) Drop-box voting;
      (b) Drive-thru voting;
      (c) 24-hour voting;
      (d) Straight-ticket voting;
      (e) Vote-by-mail;
      (f) Early voting;
      (g) Curbside voting;
      (h) All other methods of voting.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant incorporates its general objection concerning the scope of these requests. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. Defendant also objects to the catchall term "all other methods of voting" as not only being vague, ambiguous, and overly broad, but also lacking specificity. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege.

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Defendant objects to this request to the extent that it calls for the production of documents within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. Finally, Defendant objects to this request to the extent that it encompasses documents publicly available or otherwise equally accessible to Plaintiffs.

Defendant will produce OAG's prosecution spreadsheet, which details resolved and pending prosecutions, including the name of the defendant, location of the offense, the election involved, the type of conduct alleged, and the charges brought.

Defendant is continuing to conduct a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 9:** All documents and communications regarding the methods you took to secure, monitor, surveil, watch, or supervise the following methods of voting during the period from 2016 to present:

    (a) Drive-thru voting;
    (b) 24-hour voting;
    (c) Ballot drop boxes;
    (d) Straight-ticket voting;
    (e) Vote-by-mail;
    (f) Early voting;
    (g) Curbside voting;
    (h) All other methods of voting.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, ambiguous, vague, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. Defendant also objects to the catchall term "all other methods of voting" as not only being vague, ambiguous, and overly broad, but also lacking specificity. Without additional parameters, the

request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination thus far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG only has limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not, as a general matter, secure, monitor, surveil, watch, or supervise methods of voting. It instead investigates allegations of alleged illegal conduct that it receives from Texas SOS and other sources. OAG does not interpret RFP No. 9 as applying to its investigative and prosecution case files. However, to the extent the request does encompass the case files, Defendant objects to the request for the reasons stated in response to RFP No. 8 and incorporates the same objections herein. Specifically, OAG objects that the production of documents in its case files implicate privilege, is unduly burdensome, overly broad, and not proportional to the needs of the case, as it would compromise ongoing and future investigations and make public vulnerabilities in the electoral process.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 10:** All documents and communications regarding actual or alleged illegal voting, election fraud, or other criminal conduct in connection with voter assistance, including transportation assistance and vote harvesting, during the period from 2016 to present.

**RESPONSE:**

Defendant objects to the request for "All documents and communications" regarding voter assistance, as vague, unintelligible, overly broad, and unduly burdensome. Additionally, it calls for the production of materials that are irrelevant to any challenge raised in this case. For example, Texas Elections Code §§ 64.032, -.0321, -.033, and -.035, which were not amended by SB1, concern voting assistance, yet those provision are not at issue in this litigation. Defendant objects that review and production of *all documents and communications* regarding voter assistance, without limitation, will necessarily require a search for and review of materials that do not bear any relationship to the issues in this case.

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of

whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant documents and communications. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks Defendant to produce any document or communication about all types of criminal conduct connected to voter assistance, regardless of whether that conduct was addressed by SB1. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege.

Defendant further objects that this request is needlessly duplicative on its face, or alternatively, it is indecipherable. Request No. 8 seeks information on alleged illegal voting, election fraud, or other criminal conduct, and so does this request. It is unclear how or whether this request is either broader or narrower than Request No. 8.

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Defendant objects to this request to the extent that it calls for the production of documents within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. Finally, Defendant objects to this request to the extent that it encompasses documents publicly available or otherwise equally accessible to Plaintiffs.

Subject to and without waiving these objections, Defendant refers Plaintiffs to the documents produced in response to RFP No. 8.

Defendant is continuing to conduct a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 11:** All documents and communications regarding instances of violence, discrimination, harassment, intimidation, or inappropriate behavior from a partisan poll watcher, poll worker, or election judge, during the period from 2016 to present.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, ambiguous, vague, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant documents and communications.

The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks Defendant to produce any document or communication about instances of violence, discrimination, harassment, intimidation, or inappropriate behavior from a partisan poll watcher, poll worker, or election judge, regardless of whether that conduct was addressed by SB1. The problems with this request are compounded by the Private Plaintiffs' use of the catchall term "inappropriate behavior," which Defendant objects to as not only being vague, ambiguous, and overly broad, but also lacking specificity. Accordingly, without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege.

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Defendant objects to this request to the extent that it calls for the production of documents within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. Finally, Defendant objects to this request to the extent that it encompasses documents publicly available or otherwise equally accessible to Plaintiffs.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 12:** All documents and communications regarding the purpose of forming the 2020 Ballot Fraud Intervention Team and the 2021 Texas Election Integrity Unit of the Office of the Texas Attorney General.

**RESPONSE:**

Defendant objects to this request as irrelevant.  Defendants further object to the extent that the information sought is not proportional to the needs of this case, overly broad, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. OAG does not interpret RFP No. 12 as applying to its investigative and prosecution case

files. However, to the extent the request does encompass the case files, Defendant objects to the request for the reasons stated in response to RFP No. 8 and incorporates the same objections herein. Specifically, OAG objects that the production of documents in its case files implicate privilege, is unduly burdensome, overly broad, and not proportional to the needs of the case, as it would compromise ongoing and future investigations and make public vulnerabilities in the electoral process.

Finally, Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 13:** All documents and communications related to voting practices, election administration, and voter turnout in Harris County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, vague, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request.

In addition, as commonly understood, the terms "voting practices" and "election administration" would encompass almost every action taken pursuant to the Election Code so long as it concerned Harris County. The terms therefore are overly broad, vague, lack specificity, and do not qualify or limit the Private Plaintiffs' request in any meaningful sense. Accordingly, without additional parameters, the request would require Defendant, and later counsel, to examine voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation. The request is therefore not proportionate to the needs of this case and goes outside the scope of discovery.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have

requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, OAG initiated or considered bringing lawsuits against Harris County for multiple violations of the Election Code during applicable period. The case files that pertain to these legal actions contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at \*4. As such, OAG does not conduct independent assessments regarding voter turnout; nor is it involved in election administration generally. It instead investigates allegations of alleged illegal conduct that it receives from Texas SOS and other sources. OAG does not interpret RFP No. 13 as applying to its investigative and prosecution case files. However, to the extent the request does encompass the case files, Defendant objects to the request for the reasons stated in response to RFP No. 8 and incorporates the same objections herein. Specifically, OAG objects that the production of documents in its case files implicate privilege, is unduly burdensome, overly broad, and not proportional to the needs of the case, as it would compromise ongoing and future investigations and make public vulnerabilities in the electoral process.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 14:** All documents and communications related to actual or alleged election fraud, illegal voting, and other criminal conduct relating to elections in Harris County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant documents and communications. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks Defendant to produce any document or communication about election-related, illegal conduct in Harris County, regardless of whether the specific conduct was addressed by SB1. Without additional parameters, the

request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege

Defendant further objects that this request is needlessly duplicative and cumulative of other requests. Request Nos. 8 and 10 seek information on alleged illegal voting, election fraud, or other criminal conduct, and so does this request.

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from publicly available sources, from other parties to this litigation, or from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, OAG initiated or considered bringing lawsuits against Harris County for multiple violations of the Election Code during applicable period. The case files that pertain to these legal actions contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Finally, Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control.

Subject to and without waiving these objections, Defendant refers Plaintiffs to the documents produced in response to RFP No. 8.

Defendant is continuing to conduct a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 15:** All documents and communications related to voting practices, election administration, and voter turnout in Bee County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, vague, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request.

In addition, as commonly understood, the terms "voting practices" and "election administration" would encompass almost every action taken pursuant to the Election Code so long as it concerned Bee County. The terms therefore are overly broad, vague, lack specificity, and do not qualify or limit the Private Plaintiffs' request in any meaningful sense. Accordingly, without additional parameters, the request would require Defendant, and later counsel, to examine voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation. The request is therefore not proportionate to the needs of this case and goes outside the scope of discovery.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, any files pertaining to enforcement action OAG initiated or considered initiating against Bee County would contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or

control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at \*4. As such, OAG does not conduct independent assessments regarding voter turnout; nor is it involved in election administration generally. It instead investigates allegations of alleged illegal conduct that it receives from Texas SOS and other sources. OAG does not interpret RFP No. 13 as applying to its investigative and prosecution case files. However, to the extent the request does encompass the case files, Defendant objects to the request for the reasons stated in response to RFP No. 8 and incorporates the same objections herein. Specifically, OAG objects that the production of documents in its case files implicate privilege, is unduly burdensome, overly broad, and not proportional to the needs of the case, as it would compromise ongoing and future investigations and make public vulnerabilities in the electoral process.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 16:** All documents and communications related to actual or alleged election fraud, illegal voting, and other criminal conduct relating to elections in Bee County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant documents and communications. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks Defendant to produce any document or communication about election-related, illegal conduct in Bee County, regardless of whether the specific conduct was addressed by SB1. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege

Defendant further objects that this request is needlessly duplicative and cumulative of other requests. Request Nos. 8, 10 and 14 seek information on alleged illegal voting, election fraud, or other criminal conduct, and so does this request. While Request No. 14 is limited to Harris County, and thus is not explicitly duplicative, Request Nos. 8 and 10 are.

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public

information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from publicly available sources, from other parties to this litigation, or from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, any files pertaining to an enforcement action OAG initiated or considered initiating against Bee County would contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Finally, Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control.

Subject to and without waiving these objections, Defendant refers Plaintiffs to the documents produced in response to RFP No. 8.

Defendant is continuing to conduct a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 17:** All documents and communications related to voting practices, election administration, and voter turnout in Bexar County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, vague, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, as commonly understood, the terms "voting practices" and "election administration" would encompass almost every action taken pursuant to the Election Code so long as it concerned Bexar County. The terms therefore are overly broad, vague, lack specificity, and do not qualify or limit the Private Plaintiffs' request in any meaningful sense. Accordingly, without additional parameters, the request would require Defendant, and later counsel, to examine voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit since much of the information Private Plaintiffs seeks is either publicly available or more readily attainable from other parties to this litigation. The request is therefore not proportionate to the needs of this case and goes outside the scope of discovery.

Defendant also objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, any files pertaining to enforcement action OAG initiated or considered initiating against Bexar County would contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Defendant further objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding voter turnout; nor is it involved in election administration generally. It instead investigates allegations of alleged illegal conduct that it receives from Texas SOS and other sources. OAG does not interpret RFP No. 13 as applying to its investigative and prosecution case files. However, to the extent the request does encompass the case files, Defendant objects to the request for the reasons stated in response to RFP No. 8 and incorporates the same objections herein. Specifically, OAG objects that the production of documents in its case files implicate privilege, is unduly burdensome, overly broad, and not proportional to the needs of the case, as it would compromise ongoing and future investigations and make public vulnerabilities in the electoral process.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent

they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 18:** All documents and communications related to actual or alleged election fraud, illegal voting, and other criminal conduct relating to elections in Bexar County.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant documents and communications. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks Defendant to produce any document or communication about election-related, illegal conduct in Bexar County, regardless of whether the specific conduct was addressed by SB1. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege

Defendant further objects to this request to the extent it calls for the production of full investigative and prosecution case files. Since 2016, OAG has investigated hundreds of alleged incidents of election misconduct, each of which is assigned a case file that can span thousands of pages. Each case file contains confidential information and attorney work product interspersed throughout, which would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. In addition to this labor cost, the release of non-public information related to these case files could have severe consequences on OAG's ability to safeguard the election and identify and prosecute illegal conduct. First, the release of non-public information would reveal the identity of suspects, witnesses, and reporting parties, compromising ongoing investigations. Second, the release of this information could reveal law enforcement's methods and tactics for detecting and investigating election fraud offenses, enabling offenders to evade detection. Third, disclosure could make public vulnerabilities in the electoral process. The burden of producing full case files thus far exceeds the benefit, especially since much of the information relevant to the Private Plaintiffs' claims can be obtained from publicly available sources, from other parties to this litigation, or from OAG's prosecution spreadsheet, which details OAG's resolved and pending prosecutions.

Defendant further objects that this request is needlessly duplicative and cumulative of other requests. Request Nos. 8, 10, 14, and 16 seek information on alleged illegal voting, election fraud, or other criminal conduct, and so does this request. While Request Nos. 14 and 16 are limited to particular counties, and thus is not explicitly duplicative, Request Nos. 8 and 10 are.

Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client

privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents the State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged. Likewise, any files pertaining to an enforcement action OAG initiated or considered initiating against Bexar County would contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production, which would be unduly burdensome and disproportionate to the needs of the case.

Finally, Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control.

Defendant refers Plaintiffs to the documents produced in response to RFP No. 8.

Defendant is continuing to conduct a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld.

**REQUEST FOR PRODUCTION NO. 19:** All communications between you and the Texas Legislature regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1, SB 7, HB 3, and HB 6 on racial or ethnic minorities, disabled persons, and on voters by party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request.

In addition, Defendant objects to this request to the extent it seeks irrelevant communications between OAG and the Legislature. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with lawmakers on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege.

The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represent State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 20:** All communications between you and the Texas Governor regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1 on racial or ethnic minorities, disabled voters, and voters by party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition,

Defendant objects to this request to the extent it seeks irrelevant communications between OAG and the Governor. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with the Governor on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents State Defendants, including the Texas Governor, in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 21:** All communications between you and the Texas Lieutenant Governor regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1, SB 7, HB 3, and HB 6 on racial or ethnic minorities and disabled voters, and on voters by party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant communications between OAG and the Lieutenant Governor.

The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with the Lieutenant Governor on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is  conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be

identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 22:** All communications between you and the Texas Secretary of State regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1, SB 7, HB 3, and HB 6 on racial or ethnic minorities and disabled voters, and on voters by party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant communications between OAG and Texas SOS. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with Texas SOS on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003. That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents State Defendants, including the Texas SOS, in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45

36

subpoenas and have requested representation. Attorneys within OAG also provide legal advice to state agencies and lawmakers when requested. Any communications made pursuant to that representation would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 23:** All documents and communications between you and local election officials regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1, SB 7, HB 3, and HB 6 on racial or ethnic minorities and disabled voters, and on voters by party affiliation.

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant communications between OAG and local election officials. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with local election officials on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs

of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, any files pertaining to investigation or enforcement action initiated by OAG would contain confidential information and attorney work product interspersed throughout. Not only would many of the documents be privileged, but answering the request would necessitate Defendant, and later counsel, to conduct a page-by-page, line-by-line privilege search prior to production. The disclosure of non-public information would also compromise ongoing and future investigations and expose vulnerabilities in the electoral process. The burden of producing these files thus far exceeds the benefit and is disproportionate to the needs of the case.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld

**REQUEST FOR PRODUCTION NO. 24:** All communications between you and the following third-party organizations, including any of their affiliates or subsidiaries, regarding SB 1, SB 7, HB 3, and HB 6, including communications regarding the impacts or potential impacts of SB 1 on racial or ethnic minorities and disabled voters, and on voters by party affiliation:

(a) The Heritage Foundation
(b) The Texas Public Policy Foundation
(c) The American Legislative Exchange Council
(d) The State Policy Network
(e) Honest Elections Project
(f) Public Interest Legal Foundation
(g) American Civil Rights Union
(h) Project Veritas
(i) The Republican National Committee

**RESPONSE:**

Defendant objects to this request to the extent that the information sought is not proportional to the needs of this case, overly broad, irrelevant to any claim or defense, not reasonably specific, and unduly burdensome. To that end, Defendant objects to this request to the extent that it requires Defendant to search and examine any and all emails directed to or from an OAG employee. OAG employs over 4,000 employees in 38 divisions and 117 offices around Texas, only tiny fraction of whom have job responsibilities that relate in any way to the subject matter of this request. In addition, Defendant objects to this request to the extent it seeks irrelevant communications between OAG and any of the listed third-party organizations. The Private Plaintiffs only challenge a limited set of provisions in SB1, yet the request asks OAG to produce any communication OAG had with the third-

party organizations on SB1, SB7, HB3, and HB6 regardless of whether the subject of that communication bears on the issues raised in Private Plaintiffs' legal action. Without additional parameters, the request would require Defendant, and later counsel, to search, identify, and review voluminous emails and documents unrelated to the underlying controversy to determine responsiveness and privilege. The burden of conducting this examination far exceeds the benefit, especially since the Private Plaintiffs indicate in the request that their inquiry is directed at a much narrower subset of information: impacts or potential impacts of SB1, SB7, HB3, and HB6 on certain demographic groups.

Defendant objects to this request to the extent that it calls for the production of documents that are publicly available or otherwise equally accessible to the Private Plaintiffs or that are within the control of third parties, including independent officers of the State of Texas, who may or may not be parties to this litigation and whose documents, communications, and deliberations are not within Defendant's custody, possession, or control. As explained throughout this litigation, OAG has only limited enforcement authority under the Election Code, which is further qualified by the recent decision *Stephens*, 2021 WL 5917198, at *4. As such, OAG does not conduct independent assessments regarding the impact or potential impact of enacted or proposed legislation on specific demographics. What's more, the State of Texas neither requests nor records a voter's party affiliation during the registration process. Voters instead typically affiliate with a party by being accepted to vote in a party's primary election. Tex. Elec. Code § 162.003.  That affiliation then automatically expires at the end of each calendar year. Tex. Elec. Code § 162.010. As such, this request is not proportionate to the needs of the case. It is outside the scope of discovery, and it seeks information that either does not exist or is not within Defendant's possession, custody, or control.

Finally, Defendant objects to this request to the extent that it calls for the production of documents subject to legislative privilege, investigative privilege, deliberative process privilege, attorney-client privilege, common interest privilege, attorney opinion work-product privilege, ordinary attorney work-product privilege, and/or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. Attorneys within OAG represents State Defendants in this consolidated legal action, as well as multiple Texas Legislators who have received Rule 45 subpoenas and have requested representation. The Texas Public Policy Foundation, meanwhile, represents Medina County, which was named one of the county defendants when this consolidated action started. Any communications made to Medina County's counsel pursuant to OAG's common interest, including strategy and common defenses, would be privileged.

Defendant is conducting a diligent search for responsive documents and will produce non-privileged documents and communications responsive to this request, if they exist and to the extent they are not withheld based upon any of the foregoing privileges or objections, within a reasonable time of this response. Should responsive documents subject to privilege, objection, or both, be identified through a diligent search, this response will be supplemented to reflect that documents are being withheld