IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al.,<br>*Plaintiffs,* | §<br>§<br>§ | |
| *v.* | §<br>§ | Case No. 5:21-cv-844-XR |
| GREGORY W. ABBOTT, et al.,<br>*Defendants.* | §<br>§<br>§<br>§ | |

---

### STATE DEFENDANTS' RESPONSE TO LUPE PLAINTIFFS' OPPOSED MOTION TO STRIKE AND MOTION IN LIMINE

Defendants Gregory W. Abbott, in his official capacity as Governor of Texas; Jane Nelson, in her official capacity as Secretary of State; Angela Colmenero, in her official capacity as Provisional Attorney General of Texas; and the State of Texas ("State Defendants") file this Response to LUPE Plaintiffs' ("Plaintiffs") Opposed Motion to Strike and Motion in Limine.

### BACKGROUND

On November 15, 2021, State Defendants listed Mr. Jonathan White in its initial disclosure (ECF No. 112-1 at 18) with following description:

> Mr. White is the Chief of the Office of the Attorney General of Texas, Elections Integrity Division. He also testified before the Legislature during the consideration of S.B. 1. He may have discoverable information on the claims and defenses at issue in these cases. He may have information regarding election-related investigations and prosecutions, to the extent those materials are not privileged. Mr. White may be contacted through counsel of record for the State Defendants.

On November 29, 2021, Plaintiffs served their First Request for Production ("First RFP") on the Attorney General's office.

On December 30, 2021, State Defendants provide to Plaintiffs a spreadsheet, created and maintained by Mr. White, which contained a list of election-related investigations and prosecutions.[1] This list included investigative details, such as the county of the alleged offense, the alleged crime, the election involved, the charge, the Statute violated, and the disposition.[2] This list contained a list of all active and closed investigations and included necessary information to identify the type and location of alleged crime. State Defendants informed Plaintiffs that they did not interpret Plaintiffs First RFP to include investigative files, and that such files were voluminous and not proportionate to the needs of the case. *Id.* Plaintiffs did not object to this determination or request specific sub-parts of the investigative files be produced in the alternative. Plaintiffs made no additional discovery requests based on the list of investigations.

Mr. White was deposed in his personal capacity on April 27, 2022. Mr. White was questioned at the April 27th deposition about a PowerPoint on election integrity that he presented to the Secretary of State's annual elections conference for elections administrators; this presentation was marked as Exhibit 5.[3] This presentation contained many pages regarding investigative techniques that could be used to detect voter fraud. Mr. White was questioned extensively by the United States regarding investigative techniques used to detect vote harvesting.[4] Plaintiffs also questioned Mr. White about the presentation, but regarding potential criminal offenses, not about investigative techniques.[5] Plaintiffs also questioned Mr. White about cases on the investigations list provided by State Defendants on December 30, 2021,[6] which was marked as Exhibit 6. During this questioning, State Defendants' counsel directed Mr. White to testify about "anything in the public record"[7] and Mr.

---

[1] State Defendants later produced updated lists. *See* ECF Nos. 747.7 through 747.11.
[2] *See* ECF 747.6
[3] *See* (Jonathan White April 27, 2022 Dep.) at 90:9.
[4] *Id.* at 90:7-102:10.
[5] *Id.* at 178:24-181:17
[6] *Id.* at 185:14-203:25.
[7] *Id* at 187:7-15

White confirmed to Plaintiffs' counsel that he could answer questions about any investigation where the "case has been resolved."[8]

Mr. White was deposed as a 30(b)(6) representative for the Attorney General's office on May 5, 2022. Plaintiffs did not ask Mr. White any questions at this deposition. Plaintiffs did not depose Mr. White during the General Election discovery period. Plaintiffs likewise did not depose any other employee or representative of the Office of the Attorney General during the General Election discovery period despite having ample opportunity to do so.

Mr. White left his position of Chief of the Election Integrity Division on November 30, 2022. His work duties since that date have been unrelated to elections.

The United States filed their Motion for Summary Judgment on materiality on May 26, 2023. ECF No. 609. As part of their response to this Motion, State Defendants had Mr. White to execute a declaration, which he did on June 22, 2023. State Defendants filed their Response to the United State' Motion for Summary Judgment on June 24, 2023. ECF No. 645. Mr. White's declaration was included as Appendix BB. ECF No. 645-5 at 14-23. Mr. White previously attested to this Court that his declaration does contain privileged information. *See* ECF 666-2 ¶ 5. Mr. White only cited facts from closed cases or that was publicly available.  *Id.* ¶ 6-7.

The Plaintiffs first raised their objections to Mr. White's testimony on July 10, 2023. State Defendants, following the advice of the Court, put forward Mr. White for a supplemental deposition on August 11, 2023. Plaintiffs questioned Mr. White on the investigations list,[9] his experiences with mail ballot fraud,[10] and investigative procedures,[11] and how those topics related to the information in his declaration.

---

[8] *Id* at 200:11-20.
[9] *See*, e.g., (Jonathan White Aug. 11, 2023 Dep.) at 70:5-74:8.
[10] *See Id*, e.g., at 62:15-107:1
[11] *See Id*, e.g., at 68:15-25; 77:15-78:15; 103:3-23

**ARGUMENT**

**I.    State Defendants Have Fully Complied with the Federal Rules of Civil Procedure.**

**A.  The Sword-and-Shield Doctrine is Inapplicable Here.**

The sword-and-shield doctrine does not apply here and does not bar Mr. White's testimony or his declaration. Under the sword-and-shield doctrine, "a party may not use privileged information both offensively and defensively at the same time." *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). This doctrine only comes into play when "a party puts privileged matter in issue as evidence in a case." *See* 8 Charles Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2016.2 (3d ed. 2023). After all, a party only waives such privilege over matters when that party "uses [privileged] information against [their] adversary (the sword)." *Willy*, 423 F.3d at 497.

State Defendants have not used any privileged matter in support of their arguments. Indeed, the paragraphs that Plaintiffs wish to strike from Mr. White's declaration do not relate to non-public information. Rather, all the information in Mr. White's declaration is public and can be found in numerous news articles, court filings, as well as exhibits used during the deposition of Denton County Elections Administrator Frank Phillips.[12] And tellingly, Private Plaintiffs have previously argued that such communications do not contain privileged information when they are "little more than the Attorney General sharing results of past investigations into allegations of voting misconduct . . . merely conveying data or details about a past election complaint is not providing a legal opinion or service." *See* ECF No. 391 at 20–21. Thus, State Defendants did not put any privileged information at issue. Accordingly, "the sword stays sheathed, [and] the privilege stands." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005).

**B.  State Defendants Properly Disclosed Jonathan White and His Declaration.**

---

[12] *See*, e.g., (Frank Phillips March 31, 2023 Dep.) at 18:12–29:6, 31:22–25. *See also* July 14, 2023 Declaration of Jonathan White, ECF 666-2 ¶ 6.

State Defendants' use of Mr. White's declaration in support of their motion for summary judgment was a proper disclosure. Courts have held that a failure to disclose does not exist when a party produces a declaration on the same day as the party's motion for summary judgment and when the party lists a witness in their initial or supplemental disclosures. *E.g.*, *Cunningham v. Circle 8 Crane Servs., LLC*, No. MO20CV00106DCRCG, 2022 WL 1811463, at *2 (W.D. Tex. Feb. 10, 2022). This is because the disclosure of such a declaration "would have been impossible, as the declarations did not exist at the time of initial or supplemental disclosures." *Id.* After all, "'the disclosure obligation under Rule 26(a)(1)(A)(ii) is limited to items in the disclosing parties' *possession, custody, or control.*'" *Id.* (quoting *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2020) (emphasis added)).

Here, much like *Cunningham v. Circle 8 Crane Services, LLC*, State Defendants properly disclosed Mr. White and his declaration. Indeed, State Defendants identified Mr. White in their initial disclosures as an individual likely to have discoverable information that the State may use to support its defenses, ECF No. 112-1 at 18, and have continued to identify Mr. White as a witness in each supplemental disclosure filed since. ECF No. 410 at 2, ECF No. ECF 539 at 3. Mr. White's declaration was specifically prepared to support State Defendants' summary judgment responses. *See* ECF No. 645-5; ECF No. 656-3. Thus, like *Cunningham*, Mr. White's declaration was not in the "possession, custody, or control" of State Defendants at the time of the initial disclosures or supplemental disclosures, and State Defendants' use of Mr. White's declaration in support of its motion for summary judgment was proper.

## C. Even If State Defendants Did Not Fully Comply with the Federal Rules of Civil Procedure—They Did—Any Such Error Would Be Harmless.

Even if State Defendants had failed to disclose Mr. White's declaration—they did not—any such failure to disclose was justified and harmless. Generally, when a party fails to disclose or identify certain evidence, the Federal Rules of Civil Procedure explain that "the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. P. 37(c)(1) (emphasis added). Courts generally evaluate four factors to determine whether an error is harmless and whether to strike such evidence: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Here, while a continuance at this stage of the litigation is unavailable, the remaining three factors described above favor including Mr. White's declaration. *First*, State Defendants disclosed Mr. White's declaration shortly after execution. Indeed, Mr. White only executed this declaration on June 22, 2023. *See* ECF No. 645-5 at 14–23; ECF No. 656-3 at 29–38, and State Defendants filed it two days later. State Defendants received the declaration, incorporated it into the summary judgment response, and filed it in short order.

*Second*, Mr. White's declaration is deeply important because it plays a "significant role in the outcome of this case." *Olivarez v. GEO Group Inc.*, EP–14–CV–00436–FM, 2015 WL 13227822, at *7 (W.D. Tex. Oct. 20, 2015), *aff'd*, 844 F.3d 200 (5th Cir. 2016). Indeed, Mr. White's declaration plays a significant role because it uses details based on his personal experience to explain the challenges of ensuring the integrity of the ballot box. These details help put into context the large number of election fraud investigations detailed on the lists that were provided to Plaintiffs. The declaration explains the distinctions between different types of election fraud and can be used to show why policy solutions needed to be tailored to specific threats to election integrity. State Defendants included Mr. White on their initial disclosures, and he has unique experience related to election integrity in Texas. And because Mr. White carries heavy importance for State Defendants' case, it counsels against exclusion. After all, "[w]hen evidence is important, the sanction of its exclusion is [] extreme, and [] only appropriate for severe misconduct." *Id.* at *7.

And *third*, the prejudice to Plaintiffs of allowing Mr. White's declaration into evidence is minimal at best. Plaintiffs had a list of election-related investigations on December 30, 2021. They had possession of Mr. White's PowerPoint containing OAG's investigative techniques no later than April 27, 2022. Plaintiffs have had multiple opportunities to depose Mr. White, and they have had since June of 2023 to respond to and challenge his Mr. White's declaration, including in their reply in support of their summary judgment motion. *See* ECF No. 665. Plaintiffs chose not to depose Mr. White, or anybody else from the Attorney General's office, during the General Election period. What's more, State Defendants followed this Court's suggestion and allowed Plaintiffs yet another opportunity to re-depose Mr. White and ask questions for an additional three hours. *See* ECF No. 747-13. Consequently, Plaintiffs' argument that they are prejudiced after having months to review and rebut any assertion in Mr. White's declaration lacks merit.

## II.    The Jonathan White Declaration is Admissible Evidence and Plaintiffs Objections to it are Unfounded.

### A.    The Jonathan White Declaration Does Not Constitute Inadmissible Summary Evidence.

Mr. White's declaration does not constitute inadmissible summary evidence because it is not a summary. Generally, Rule 1006 applies to "summar[ies] . . . of voluminous writings, records, or photographs." Fed. R. Evid. 1006. Stated differently, "summary witness testimony" occurs when a witness "summariz[es] voluminous records, as contemplated by Rule 1006." *United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010) (quoting *United States v. Fullwood*, 342 F.3d 409, 414 (5th Cir.2003)).

Here, Mr. White's declaration does not summarize anything. It does not summarize any evidence in this case. It does not summarize anyone's testimony in this case. And it does not summarize anyone's arguments in this case. Instead, Mr. White's declaration details his personal observations regarding elections in Texas and explains his extensive experience in that area. Mr. White

cites to individual cases and relies on specific instances when investigative techniques were used. Such a declaration is far from constituting a summary, and thus, Rule 1006 does not apply.

Moreover, even if Rule 1006 did apply—it does not—Mr. White's declaration would still be admissible because all the information in the declaration constitutes publicly available, non-privileged information. In fact, most of which is already within the knowledge of Plaintiffs or at least readily available to them from news sources or other publicly available information. An example is the case of Zul Mohamed, about which the United States questioned Denton County Elections Administrator Frank Phillips at his deposition,[13] and which has received extensive media coverage in Texas. Additionally, State Defendants produced multiple spreadsheets that listed non-privileged information about election fraud prosecutions and investigations. Plaintiffs used these spreadsheets to question Mr. White about individual cases during the April 27, 2022, and August 11, 2023, depositions. Throughout this case, Plaintiffs declined to issue discovery requests to State Defendants based on these spreadsheets.

Because such information was already available to and known by Plaintiffs—and because State Defendants produced multiple documents that detailed the same information Plaintiffs claim was withheld—any assertion that State Defendants need to undergo the fruitless effort of turning over information that Plaintiffs' already have, could easily get, or repeatedly declined to request, lacks merit. Hence, Mr. White's declaration does not constitute inadmissible summary evidence.

**B. The Jonathan White Declaration Constitutes Admissible Lay Opinion Evidence, Not Unreliable Expert Evidence.**

Mr. White's declaration also represents proper opinion testimony because all assertions are based on his personal knowledge or observations, not on "scientific, technical, or other specialized knowledge" that is unreliable. Fed. R. Evid. 701(c). "Under Fed. R. Evid. 701, a lay opinion must be

---

[13] *Supra* at 4.

based on personal perception, must 'be one that a normal person would form from those perceptions,' and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (quoting *Soden v. Freightliner Corp.*, 714 F.2d 498, 510–12 (5th Cir. 1983)). Specifically, "[t]estimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony." *Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022). And "testimony regarding an officer's perceptions of a particular event and whether or not such perceptions are consistent with his or her prior experiences constitutes lay opinion testimony." *United States v. Carrillo-Morones*, 564 F. Supp. 2d 707, 712 (W.D. Tex. 2008). After all, even in certain instances, the Fifth Circuit has "allowed lay witnesses to express opinions that required specialized knowledge," *id.*, such as when "[n]o great leap of logic or expertise was necessary," *see e.g.*, *Soden*, 714 F.2d at 510–12 (finding no abuse of discretion when trial court allowed a witness in charge of truck maintenance to make opinions based on his experience).

In this case, Mr. White's declaration constitutes lay opinion testimony because it is entirely based on his personal knowledge, observations, and experiences in working on election fraud cases. Indeed, Mr. White swore under oath that the information in his declaration was executed "to the best of [his] personal knowledge and belief" and was "based on [his] personal knowledge." ECF No. 645-5 at 14; ECF No. 646-3 at 29. Mr. White also testified that *he* had "been involved in election fraud prosecutions as some portion of his work," ECF No. 645-5 at 14; ECF No. 646-3 at 29; that *he* had "bec[o]me familiar with the administration and operations of Texas elections," ECF No. 645-5 at 15; ECF No. 646-3 at 30; and that *he* "investigated and prosecuted a variety of offenses related to voter fraud, . . . ballot harvesting, illegal voting, and illegal ballot assistance," ECF No. 645-5 at 15; ECF No. 646-3 at 30. As a result, Mr. White's declaration does not contain "specialized knowledge" that only an expert can know. Instead, *much like the experienced county witnesses in this case*, Mr. White's declaration testimony contains information that is within his personal knowledge and experience he

accumulated during his time in the Election Integrity Division. Hence, Mr. White's declaration constitutes admissible lay opinion testimony.

An even if Mr. White's declaration constitutes expert opinion testimony—it does not—it would nonetheless satisfy the reliability concerns Plaintiffs raised in their motion. After all, just as Tammy Patrick, one of Plaintiffs' retained experts, drew from her personal experiences and her many years as an election administrator to opine on related matters, Mr. White has himself "reviewed hundreds of investigations[] and handled approximately 100 prosecutions, many of which were complex, involving multiple, if not dozens, of election offenses." ECF No. 645-5 at 14; ECF No. 646-3 at 29. And now, "[b]ased on that experience," Mr. White proceeds to detail and explain his observations regarding election fraud in Texas. *See* ECF No. 645-5 at 15; ECF No. 646-3 at 30. As such, Mr. White's extensive involvement with election fraud prosecutions and investigations in Texas demonstrates that his opinions are reliable and trustworthy, undercutting Plaintiffs' claims to the contrary.

## C.  The Jonathan White Declaration Does Not Include Inadmissible Legal Opinions.

Mr. White's declaration does not contain inadmissible legal conclusions. Generally, "under Rule 704(a), testimony that amounts to a legal conclusion is improper." *United States v. Keys*, 747 F. App'x 198, 207 (5th Cir. 2018) (citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)). But "[e]ven though a non-expert witness may not offer *legal* conclusions, testimony in the form of an opinion or inference otherwise admissible is not objectionable simply because it embraces an ultimate fact issue to be determined by the factfinder." *United States v. Espino-Rangel*, 500 F.3d 398, 400 (5th Cir. 2007). Indeed, while the law generally prohibits a witness from "interpret[ing] statutes and [] giv[ing] legal opinions," *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011), as revised (Dec. 27, 2011), it does not prohibit "a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue." *Keys*, 747 F. App'x at 207 (alterations in original) (quoting

*United States v. Buchanan*, 70 F.3d 818, 833 n.20 (5th Cir. 1995)). Thus, a witness "may testify about the significance of particular conduct or methods of operation unique to the [witness's] business as long as the testimony is helpful and its relevance is not substantially outweighed by the possibility of unfair prejudice or confusion." *Espino-Rangel*, 500 F.3d at 400.

Here, Mr. White's declaration does not involve him interpreting statutes, *contra El-Mezain*, 664 F.3d at 511. Neither does Mr. White give any legal opinions in his declaration. Indeed, like the example provided in *United States v. Espino-Rangel*, the relevant portions of Mr. White's declaration merely explain the factual significance of voter fraud in Texas and the efficacy of S.B. 1 in dealing with such, and he executes this explanation by analyzing facts within his personal knowledge. *See Espino-Rangel*, 500 F.3d at 400. That does not rise to the level of an inadmissible legal conclusion.

## CONCLUSION

For these reasons, the Court should deny LUPE Plaintiffs' Opposed Motion to Strike and Motion in Limine.

Date: September 8, 2023

ANGELA COLMENERO
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Acting Deputy Attorney General for Civil
Litigation

Respectfully submitted.

RYAN G. KERCHER
Tex. State Bar No. 24060998
Deputy Chief, General Litigation Division

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

WILLIAM D. WASSDORF
Assistant Attorney General
Tex. State Bar No. 24103022

ZACHARY BERG
Special Counsel
Tex. State Bar. No. 24107706

ETHAN SZUMANSKI
Special Counsel
Tex. State Bar. No. 24123966

JAMESON JOYCE
Assistant Attorney General
Tex. State Bar No. 24110070

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
kathleen.hunker@oag.texas.gov
ryan.kercher@oag.texas.gov
will.wassdorf@oag.texas.gov

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 8, 2023, and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER