# CORRECTED EXHIBIT K

*Excerpts from the May 5, 2022 Deposition of Jonathan White*
*(Replacing Dkt. 761-11)*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al, | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| VS. | ) | NO.: 5:21-cv-844(XR) |
| STATE OF TEXAS, et al, | ) | (Consolidated Cases) |
| Defendants. | ) | |

-----------------------------------

ORAL DEPOSITION OF

JONATHAN WHITE

Designated Representative for the Office of the Texas Attorney General

MAY 5, 2022

-----------------------------------

ORAL DEPOSITION OF JONATHAN WHITE, produced as a witness at the instance of the DEFENDANTS, and duly sworn, was taken in the above-styled and numbered cause on May 5, 2022, from 10:02 a.m. to 4:06 p.m. before Miah Parson, CSR in and for the State of Texas, reported by oral stenography, at the Offices of the Attorney General 300 W. 15th Street Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A P P E A R A N C E S

FOR THE PLAINTIFFS:

ZACHARY DOLLING
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
Phone: 512-474-5073
Fax: 512-474-0726
zachary@texascivilrightsproject.org

FOR THE PLAINTIFFS:

WENDY J. OLSON
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 208-387-4291
Wendy.olson@stoel.com

FOR THE DEFENDANTS GREGORY W. ABBOTT, et al:

ERIC A. HUDSON
Office of the Attorney General
P.O. BOX 12548 (MC-009)
Austin, Texas 78711
Phone: 512-463-2100
Fax: 512-457-4410
eric.hudson@oag.texas.gov

ALSO PRESENT:

Erin Barnes-OAG
Hani Mirza-OCA

documents with you to the deposition today?

A. I did not.

Q. Okay. Great. Thank you. So let's get started. I understand that you are the chief of the Election Integrity Division at the OAG; is that correct?

A. That's correct.

Q. What is the Election Integrity Division?

A. It's a Division with the attorney general that's tasked with the prosecution of offenses under the election code or election offenses under Texas law.

Q. When was it -- the -- the division established?

A. I believe it was around 2018. Well, actually let me -- let me take that -- let me walk that back. The Election Integrity Section would have been -- begun in 2018. The division was popped out approximately a year ago.

Q. That's gonna be something I'm gonna be asking about because there's a lot of nomenclature sort of floating around and I just want to get all of that straight.

A. Yes, sir. Understood.

Q. For the Election Integrity Division, what was the impetus for that formation as an independent pop out division?

MR. HUDSON: I object to that to the extent

that it would encroach on deliberative process, attorney/client or attorney work product, to the extent that you can respond without encroaching on those, feel free to do so. Otherwise I'm gonna instruct you not to answer.

A. Yeah, without going into any deliberative process, I think probably the same reason as the Election Integrity Section was formed within the Special Prosecutions Division which is to further focus dedicated resources toward election and integrity issues because they are so complex.

Q. (BY MR. DOLLING) Does the Election Integrity Division have a specific budget that you know?

A. I'm aware of a budget allocation that is tracked by -- by our Budget Division for Election Integrity. It was a cost center that was created in 2019, but that includes both the investigation unit which is housed actually under a separate division and the Election Integrity Prosecution Division, EID.

Q. When I say Election Integrity Division, are you understanding it to include the investigators and the attorneys?

A. It does not.

Q. It does not?

A. I can explain.

A. Insofar as they comprise another category of common offenses we're responsive to those.

Q. Okay. Are there any suspected offenses under the election code that the OAG simply does not investigate even when there is credible evidence of that offense?

A. I -- I would say not that I'm aware of although there are certain types of offenses that present a particular problems for prosecution.

Q. Can you elaborate?

MR. HUDSON: I'm gonna object to the extent that that will encroach on attorney/client, attorney work product privileges or investigative privileges to the extent that you can respond without encroaching on those privileges you're free to do so. Otherwise I'm instructing you not to answer.

A. Without going into mental impressions or any deliberative process I can say that the elements of campaign-finance offenses are particularly complex and problematic in the way that the laws are drafted.

Q. (BY MR. DOLLING) Okay. So is it fair to say that the OAG has a policy of investigating all credible allegations of an offense under the election code?

A. I think that's probably accurate it's hard to elaborate or nuance that answer without getting into

deliberative process.

Q. Okay. And a sort of same question with respect to prosecutions. Are there any suspected offenses under the election code that the OAG just does not prosecute?

MR. HUDSON: Same objection. Same instructions.

A. We do not have any blanket policies about offenses that we don't prosecute. We evaluate each case based on legal and factual issues and proceed accordingly.

Q. (BY MR. DOLLING) Is it fair to say that the OAG has a policy of prosecuting offenses under the election code for which it believes there is sufficient evidence to convict?

A. Yes, I think so.

Q. Okay. And so back to this -- what are we on No. 3, I think. Back to Exhibit No. 3, you mentioned that it was created for training local election officials, I believe?

A. I don't think I described the purpose exactly, but the purpose is primarily to familiarize elections officials with who we are, what we do, some of the signs for activity that they might recognize and look into to determine whether they feel there is -- are possible offenses that require investigating. And instruct them

administrators sporadically, but those are the type and quality of referrals that we would like to see.

Q. Okay. So we can just put this one aside for a moment. So I'm handing you what I marked as Exhibit No. 4. This is the Texas Court of Criminal Appeals' opinion majority opinion and Zena Stephens are you familiar with the decision in Zena Stephens.

(Exhibit No. 4 marked.)

A. Yes, sir.

Q. (BY MR. DOLLING) And if we can just turn -- oh, I might have had an extra page in there. I'm not sure if your copy has an extra page, but there might be a random extra page. And if we turn to the last page here, I'm gonna read the holding out here. We hold that the grant of prosecutorial authority in Section 273.021 of the Texas election code violates article 2 Section 1 of the Texas Constitution the separation of powers clause; is that correct?

A. Correct.

Q. Could you please summarize the OAG's interpretation of the holding in Stephens?

MR. HUDSON: Object to the extent that it will call for attorney/client privilege or attorney work product, if you can answer without encroaching on attorney work product or attorney/client privilege

you're free to do so. Otherwise I'm gonna instruct you not to answer.

A. I think that's probably beyond this scope of what I prepared to present an interpretation on -- on behalf of the agency, but I do think that I can refer you to our public filings in the case before the CCA and our motion for rehearing which is still currently under consideration.

Q. (BY MR. DOLLING) So I was gonna ask are you aware that the OAG has moved for reconsideration in Stephens and it sounds like you have -- you are.

A. Yes, sir.

Q. And the motion has not being decided?

A. Correct.

Q. Does the OAG considers Stephens to be controlling law despite the pending motion to reconsider?

MR. HUDSON: Same objection. Same instructions.

A. Yeah, without getting into I guess deliberative process, I'm -- I'm not sure how to answer your question.

Q. (BY MR. DOLLING) Okay. That's fine. I'm handing you what I've marked as Exhibit No. 5. This is Chapter 273 of the Texas Election Code. Please take a

moment to look over it and when you're ready turn to section 273.021.

(Exhibit No. 5 marked.)

A. Yes, sir.

Q. (BY MR. DOLLING) So Section 273.021 reads, Prosecution by the Attorney General Authorized. The attorney -- Subsection A, the attorney general may prosecute a criminal offense prescribed by the election laws of this state. And Subsection B, the attorney general may appear before a grand jury in connection with an offense. The attorney general is authorized to prosecute under Subsection a and Subsection c. The authority to prosecute prescribed by this subchapter does not affect the authority to arrive from other law to prosecute the same offenses. Did I read that all correctly?

A. I believe you did.

Q. So does the OAG agree that after Stephens the Attorney General no longer has the authority to independently prosecute offenses under the election code pursuant to section 273.021?

MR. HUDSON: Same objections concerning privilege, attorney/client, attorney work product, investigative, and deliberative process. Same instructions.

A. I -- I didn't prepare in terms of the topics in the deposition presented to give an agency wide opinion or interpretation of the Stephens' opinion.

Q. (BY MR. DOLLING) What is your personal interpretation of the Stephens' opinion?

MR. HUDSON: Same objection, same instructions.

A. I think that would probably be testifying on my own work product or mental impressions about the case and our position. So I -- I think I may be in the same position.

Q. (BY MR. DOLLING) Okay. Does the OAG claim the Attorney General has authority to independently prosecute offenses under the election code pursuant to any other provision of Texas law other than Section 273.021 of the election code?

MR. HUDSON: Same objection, same instruction. And at the risk of being accused of being a speaking objection I'll just tell you if there's something in the public record concerning the AG's position you're free to comment on that.

A. Yeah, in terms of public record I'm not aware of any authority other than the statutory authority granted in 273.021 that has now been challenged by Stephens to give the Attorney General independent

prosecution authority over election offenses.
Q. (BY MR. DOLLING) Okay.
A. I hope that answers your question.
Q. Thank you. So going forward I'd like to use the term county prosecutors to refer to a county prosecutor in charge of a county in which an election code offense occurs which I understand could be the county attorney, it could be the district attorney, it could be the criminal district attorney. So if I use the term county prosecutor, will you understand what I --
A. Yes, sir.
Q. Okay. Is it accurate to say that after Stephens the OAG needs a county prosecutor's consent to prosecute an offense under the election code that occurred in that prosecutor's county?
MR. HUDSON: Objection. Same instruction.
A. Yeah, I think we're still in the area where I'm being asked to present an interpretation of the Stephen's opinion in our pending litigation on behalf of the agency which I didn't prepare to do. I think there's probably a way that I could answer your questions, but I don't think I can answer these specific line of questions.
Q. (BY MR. DOLLING) Okay. I think we -- we'll

OAG cannot maintain the prosecution because the OAG was independently prosecuting the case?

A. More or less those would take the form of pretrial writ of habeas corpus or a motion to dismiss the indictment and generally the remedy that's being sought by the Defendants is for the entire case to be thrown out.

Q. And that's on the basis of the prosecution being carried out by the OAG's alone?

A. In most cases, yes.

Q. What is -- what is the not most cases?

A. We've gotten challenges based on the fact that we've had anything to do with the case, even if the local district attorneys office consented to the prosecution or was even involved in the investigation and perhaps prosecution as well. So it opens a door to a whole lot of challenges.

Q. Has the OAG been forced to drop any of those pending prosecutions after Stephens or has it maintained them?

A. I believe that we have maintained those prosecutions pending final resolution of Stephens. I don't think there are any cases that have been dropped.

Q. And that would encompass, I guess any case that was not -- on Exhibit 6 that was not resolved prior to

the decisions in Stephens?

A. I think that's correct if I'm understanding your question correctly and -- and what I -- the cases I'm talking about would probably be found on the prosecutions pending list.

Q. Yeah, but there have not been any challenges to resolved cases on the basis of Stephens?

A. Not yet.

Q. Okay. Does the OAG anticipate that there will be?

MR. HUDSON: Object to the extent that that would encroach on attorney/client privilege or attorney work product. To the extent you can answer without encroaching on those privileges your free to do so. Otherwise I'm gonna instruct you not to answer.

A. I think I'll need to follow the advice of counsel on that.

Q. (BY MR. DOLLING) Does the OAG intend to continue to prosecute election code offenses after Stephens?

MR. HUDSON: I object to the extent that that will encroach on attorney/client privilege or attorney work products. To the extent that you can answer without encroaching on those privileges you're free to do so. Otherwise I'm instructing you not to

answer.

A. I think you could technically say that we're still prosecuting the cases that are pending, certainly even the ones that have been challenged on the basis of Stephens. Those prosecutions are still pending. We're still on the position of representing the State of Texas on those offenses and we have a large number of other prosecutions where we are still involved in the prosecution where we're working jointly with district attorneys offices.

Q. (BY MR. DOLLING) Okay. Has the OAG brought any new prosecutions after Stephens where the prosecution began after Stephens?

A. Let me refresh my memory with the bottom of the list of resolved cases. I believe the answer to that I believe is no.

Q. Okay. Thank you.

MR. HUDSON: For purposes of the record Mr. White, can you identify the page that you reviewed to refresh your recollection?

A. Page -- Pages 16 and 17 of Exhibit 6.

MR. HUDSON: Could you identify that by Bates stamp please?

A. States 087338 and 339.

MR. HUDSON: My apologies.

know, that sort of thing.

Q. Is it the policy of the OAG to always loop in the county prosecutor?

A. We don't have a hard and fast guideline on that, but it's been a best practice for our group because of resources and looking to leverage local resources wherever possible, wherever we have a DA or I say DA because most circumstances it's a district attorney, but local prosecutor, county prosecutor. We would try to loop them in to leverage resources and see if they have any willingness to get involved with the case.

Q. Does the OAG ever sort of investigate circumstances, decide that they should be prosecuted and then try to hand it off to the county prosecutor and not take part in the prosecution?

A. I don't think so as such, but, you know, there would be an evaluation of that county's willingness to be involved, available resources to take on an election fraud prosecution, prosecutors with knowledge that the election laws, whether the DA actually has any local political conflict or difficulty with being involved in the case. And it's, I mean it's a sliding scale with many different parts that would determine how involved a DA could be, but, you know, if a DA told us that he

wanted to take lead on the case or wanted to have the case completely and not have us involved then that's what we would do.

Q. Has that ever happened?

MR. HUDSON: Object to the extent that that will encroach on attorney/client privilege and attorney work product doctrine. To the extent you can answer without encroaching on those privileges you're free to answer. Otherwise I'm instructing you not to.

A. Limiting my answer to cases that have information in the public record. I don't recall a case -- well, it would be very rare. I think that a -- think about if I remember your question correctly I may have dumped it.

Q. (BY MR. DOLLING) I can repeat the gist of it. I'm not sure --

A. Yeah, that'd be great.

Q. But basically does -- has the OAG ever decided that circumstances warrant prosecution and then sort of just handed it off to a county prosecutor or the county prosecutor has done it independent of the OAG from that point forward?

MR. HUDSON: Same objection, same instructions. Go ahead.

A. I can't -- I can't think of a case that is in

the public record where that has happened, but I don't think there's anything wrong with that scenario. I don't think there's anything wrong with us investigating a case and handing it off to a district attorneys office to do what they see fit with the case.

Q. (BY MR. DOLLING) Would the OAG ever hand it off in that way absent the county prosecutor asking you to hand it off in that way?

MR. HUDSON: Same objection, same instructions.

A. I don't think I can answer that without getting into deliberative process.

Q. (BY MR. DOLLING) Okay. Has the OAG had any communication with Harris County regarding concerns about fraud related to drive through voting?

MR. HUDSON: I'll object to the extent that that will encroach on attorney/client, attorney work product, investigative privilege, to the extent that you can answer without encroaching on those you're free to do so. Otherwise I'm instruct you not to answer.

A. Can I clarify by what you mean by Harris County?

Q. (BY MR. DOLLING) Any election official or county prosecutor employee I guess.

MR. HUDSON: Same objection, same

instruction.

A. I'm -- I'm not aware of, I guess I don't think I'm prepared to answer that question in terms of any conversations about drive through voting with election officials in Harris County with regard to prosecutors I'm not aware.

Q. (BY MR. DOLLING) Does the OAG have concerns regarding fraud related to drive through voting?

MR. HUDSON: Same objection. Same instructions.

A. Follow the advice of counsel.

Q. (BY MR. DOLLING) Has the OAG had any communications with any election officials including county prosecutors regarding concerns about fraud related to drive through voting?

MR. HUDSON: Same objection, same instruction.

A. Yeah, without going into deliberative process and work product, I don't -- I don't know of anything I can answer to that.

Q. (BY MR. DOLLING) Has the OAG had any communications with Harris County election officials or county prosecutors regarding concerns about fraud related to 24 hour voting?

MR. HUDSON: Same objections, same

 instructions.

A. I think my answer would be the same on that one.

Q. (BY MR. DOLLING) Okay. And then has the OAG had any communications with any election officials or county prosecutors regarding concerns about fraud related to 24-hour voting?

MR. HUDSON: Same objection, same instructions.

A. I think same answer.

Q. (BY MR. DOLLING) Okay. Is it accurate to say that the OAG hears about most suspected offenses of the election code from outside referrals, outside of the OAG's office?

A. Absolutely.

Q. Earlier, I think you said that the majority of them come from the Secretary of States office; is that correct?

A. Strong majority.

Q. What is -- how -- if you could, could you put a number on that or percentage wise?

A. I --

MR. HUDSON: Object to form. Speculation.

A. Yeah, I could put a wide range on it. I'm ball parking, but certainly over half and it could be as much

So to that extent and to the extent that vote harvesting operations are complex, wide spread, touch a large number of individuals, focus on soft targets, elderly voters, sometimes voters with disabilities. They could -- it could be challenging to go in and find out what happened after the fact, as well as the fact that if vote harvesting is done correctly the process can be invisible to the voter.

Q. So the complexity mostly comes from difficulties in the investigative process because of the protections around voting, would you say?

A. I would say that those complexities extend into the prosecution as well.

Q. Okay. You mentioned that I think it was vote harvesting is wide spread. Do you mind just elaborating on that? What do you mean by wide spread?

A. In that context, I was referring to the fact that vote harvesting touches a large number of voters or ballots typically.

Q. Can you clarify what -- maybe put a number or range on what large means in this context?

MR. HUDSON: So I'll object to the extent that that would encroach upon attorney/client, attorney work product, or investigative privileges. To the extent you can answer without encroaching on those

you're free to do so. Otherwise I'm gonna instruct you not to.

A. From the standpoint of past investigations. A voter harvester can touch or control anywhere from 50 votes to several hundred votes depending on the industriousness and experience of the harvester.

Q. (BY MR. DOLLING) Has the OAG taken through to conviction a case in which hundreds of votes were touched by a vote harvester?

A. Probably so, although that does not mean that we were able to prove hundreds of votes, bring hundreds of voters on the stand who were able to explain what happened to them, knew what happened to them, positively identified the person that came by. So typically what we end up litigating in court is a fraction of the activity of a vote harvester.

Q. So that's what you have attempted to prove, but you have not carried through to final verdict on those facts?

MR. HUDSON: Objection; form.

A. I'd say what we attempted to prove is typically what's pled in the indictment, however many counts of offenses were charged that would be a fraction of the total activity that occurred. And then from there we may reach a plea agreement, which may involve one

OAG, well, I suppose you sort of answered this, but how often would the OAG decide to initiate a prosecution after completing an investigation based on a referral?

A. Whenever we made a determination that an offense occurred and that there was sufficient evidence for prosecution.

Q. Does the source of the referral make a difference in deciding to open an investigation?

MR. HUDSON: Object to the extent that that would encroach on attorney/client privilege or attorney work product. To the extent you can answer that without encroaching on those, you're free to do so. Otherwise I'm going to instruct you not to answer I'll also include on that investigative privilege.

A. We make decisions based on the strength of the evidence and not the source of referral, but as I said, most of our cases come through SOS, but they do come from varying sources prior to them.

Q. (BY MR. DOLLING) Currently or after Stephens if the OAG investigates, you know, on the basis of a referral and determines that a prosecution is warranted, how does it go about making that happen?

A. We would now present the case to a district attorneys office and allow them to decide whether to accept the case, reject the case, they would have the

option of appointing us as a prosecutor. If they desire to do that, but the decision ultimately rests entirely currently on under our current policy with local prosecutors.

Q. And with respect to the pending -- you remember we talked about how there are a number of challenges right now post Stephens about pending prosecutions based on Stephens?

A. Yes.

Q. Did the -- has the OAG continued to prosecute those cases independently while awaiting the mandate or has the OAG reached out to the county -- the relevant county prosecutor for each one of those cases and obtained that county prosecutor's consent?

MR. HUDSON: Object to the extent that it would encroach on attorney/client, attorney work product, investigative privileges. To the extent you can answer that without encroaching on those privileges you're free to do so. Otherwise, I would instruct you not to answer.

A. The public record in some of these cases will indicate that we have obtained an appointment from local prosecutors in certain cases.

Q. (BY MR. DOLLING) And that appointment came after Stephens in a case that existed before Stephens?

MR. HUDSON: Same objection. Same instructions.
A. In certain cases, yes.
Q. (BY MR. DOLLING) Is there a policy at the OAG to reach out to obtain consent in these cases post Stephens?
A. We haven't formulated an official policy on that, but our practice has been where there's an opportunity to obtain appointment or obtain a prosecution from a local prosecutor that we would seek that.
Q. Can you put a number -- out of the pending prosecutions in which the OAG has reached out to a county prosecutor or I guess in how many of the pending prosecutions has the OAG reached out to a county prosecutor to obtain consent?
MR. HUDSON: Object again based on the same privileges to the extent you can answer you can do so otherwise I'm gonna instruct you not to.
A. There are probably only a handful of cases where the public record would indicate that we have taken those actions to the extent that we have had conversations with other prosecutors about proceeding in the case I will follow the advice of counsel.
Q. (BY MR. DOLLING) In how many of the pending

prosecutions reflected on this chart has the OAG been appointed by a county prosecutor to work on a prosecution?

A. Having refreshed my memory States 087336 through 339, I'm seeing five cases where I believe a formal order appointing is on file in the public record.

Q. What is a formal appointment? Is it a document? Is it reflected in a document?

A. It is.

Q. Are there any county prosecutors in Texas with whom the OAG has a particularly good relationship?

MR. HUDSON: Object to the extent that that would encroach on attorney work product or attorney/client privilege or investigative privilege to the extent that you can respond to that without encroaching on these privileges you're free to do so. Otherwise, I'm gonna instruct you not to.

A. I don't think I can characterize relationships without getting into privilege materials, but if you do look at our prosecutions spreadsheets so the majority of counties where we have prosecuted cases indicate a working relationship with local prosecutors.

Q. (BY MR. DOLLING) Are there any county prosecutors with whom the OAG works more frequently beyond what you just mentioned as reflected in Exhibit

No. 6?

MR. HUDSON: Same objection, same instructions.

A. No, I don't think the records indicate that. I don't think you'll see an indication of that in the records, no.

Q. (BY MR. DOLLING) Would your answer be the same to whether there are any county prosecutors who reach out to the OAG for advice about election code offenses?

MR. HUDSON: Same objection, same instructions.

A. I don't know that you'd be able to ascertain that from the records they would be included in counties probably that we have had prosecutions, but they would be a subset.

Q. (BY MR. DOLLING) Okay. Can you elaborate on that at all?

MR. HUDSON: Same objection, same construction.

A. Trying to stick with what's public record without going into privilege material. I think I can just say that what I've already said that an attorney, if a district attorney reaches out to us and a prosecution results in that case that would be indicated on the spreadsheet and in the sense that that case would

be present. But again, that would probably be a subset of cases and there wouldn't be an indicator indicating what type of communication we had or relationship we might have had with a district attorney on this list.

Q. (BY MR. DOLLING) Okay. Before the Court of Criminal Appeals decision in Stephens, did the OAG ever investigate suspected offenses under the election code on the basis of its own information as opposed to based on a referral from one of the sources we talked about earlier?

MR. HUDSON: Objection based on attorney/ client privilege, work product investigative privilege. To the extent that you can answer without encroaching on these privileges, you're free to do so. Otherwise, I'm instructing you not to.

A. I can't think of any non-privileged answer to that question. I have to follow the advice of counsel, but I have said previously and I have testified before the legislature that the vast majority of our prosecutions, most if not all, have resulted from referrals to our office and that we are generally a proactive, not a proactive a reactive unit in terms of investigating complaints that come to us.

Q. (BY MR. DOLLING) Okay.

A. There is, you know, to the extent that fraud

takes place and it's not referred to our agency, you know, it may well go not investigated and a referral typically needs to be made to us for us to look into a case.

Q. And so to the extent that the OAG operates proactively in this context you feel like you cannot answer that question.

A. I can say this, there is nothing to preclude us from being proactive in attempting to detect and investigate crimes except for the limitations that we have with bandwidth and the fact that we have our hands full with the cases that come in to us and we've always been a responsive unit.

Q. Does the OAG engage in any sort of communications that for lack of a better word solicit cases from county prosecutors that say we're, like we're here to help you prosecute cases?

MR. HUDSON: Object to the basis. To the extent that that would encroach on attorney/client privilege, attorney work product, investigative privilege, joint prosecution privilege or any other applicable privilege, I instruct you not to answer. To the extent that you can answer without encroaching on those you're free to do so.

A. It is not been our general practice to do so.

Q. (BY MR. DOLLING) Okay. Thank you. And then sort of same questions. After Stephens, has the OAG ever investigated a suspected offense under the election code on the basis of its own information?

MR. HUDSON: Same objection, same instruction.

A. I'm not aware of any.

Q. (BY MR. DOLLING) Okay. Thank you. Okay if we could turn back to Exhibit No. 5 which was Chapter 273. Can we go to 273.001b which is right at the top?

A. Yes, sir.

Q. Okay. So Section 273.001 is entitled, Investigation of Criminal Conduct; is that correct?

A. Yes, sir.

Q. I'd like to go to Subsection b which reads, a district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officers own initiative to determine if criminal conduct occurred in connection with an election; is that correct?

A. That's correct.

Q. Does the OAG interpret election code 273.001b to permit it to conduct investigations of suspected offenses under the election code independent of any request from a county prosecutor?

MR. HUDSON: Object to the extent that encroach upon attorney/client attorney work product investigative privilege. To the extent you can answer without addressing that without encroaching on those privileges, you're free to do so.

A. I didn't prepare to give a position of the OAG on an interpretation of that provision. However, I just testified that well nothing would preclude our office from investigating on our own initiative. It's not our practice to do so generally and we -- we prefer referrals to come in through our established referral process that's how we prefer to approach a case.

Q. (BY MR. DOLLING) Okay. I think you might have said this earlier, but is it the OAG's policy typically to loop in the county prosecutor for the county in which the suspected offense occurred if the OAG is undertaking an investigation in that county?

A. That's been our practice more and more over recent years and particularly now since Stephens that's been a practice.

Q. Before Stephens would be the OAG, I -- you sort of implicitly said it just there. Would the OAG ever carry out an investigation on its own initiative without the involvement of the relevant county prosecutor?

A. Well, I understand 273.001 to be deferring to

the referral process for an investigation Subsection a covers the method that two or more registered voters per territory can present affidavits alleging violations to either the county or district attorney or us. Subsection b covers an officers own initiative should he learn of an election offense under some different circumstances. Subsection d covers our most common and preferred method which is referral from the Secretary of State under Section 31.006. We've always relied on them to sort of perform that in take process for us and so that's -- that is our preferred method and if I didn't answer a portion of your question, please feel free to repeat that.

Q. No, I think you -- you answered me. Before Stephens, had the OAG ever carried out an investigation despite the relative county prosecutor opposing the investigation?

A. I -- I don't have any recollection of a county prosecutor opposing a prosecution.

Q. Has the OAG modified its policies and practices after Stephens with respect to how it conducts investigations into suspected offenses under the election code?

MR. HUDSON: Object to the extent that that would encroach on the investigative privilege sources

methods etc. To the extent and also attorney product and attorney/client privilege, to the extent that you can respond to that without encroaching on those privileges you're free to do so. Otherwise, I'm gonna instruct you not to answer.

A. We have not hammered out concrete policies, but a best practice now is to involve a district attorney early on in an investigation when we can give him a picture or her, I'm sorry, a picture of the activity that -- that may have occurred and gauge interest in prosecution and this is something that DPS and Texas Rangers generally institute and it's a conservation of resources policy to where if there is no avenue for prosecution that you generally don't want to invest a tremendous amount of resources in that case when you have other cases to be investigating.

Q. (BY MR. DOLLING) Has the OAG initiated any investigations after Stephens?

A. I believe so. Yes.

Q. And have any of those investigations been initiated without looping in the relevant county prosecutor?

MR. HUDSON: Object to the extent that that would encroach on investigative privilege, attorney work product, attorney/client privilege. To the extent you

can answer without encroaching on those privileges you're free to do.

A. I'm not aware, but again I'll refer to my answer previously which is that at some point in the investigation our best practice would be to take what we know to a local prosecutor at some point and gauge prosecutability [sic] and that would be at a -- that would be at a -- there's no defined point in an investigation where that conversation would take place.

Q. (BY MR. DOLLING) Are there -- is there -- are there any reasons that the OAG would choose to delay taking investigation to the relevant county prosecutor rather than looping them in earlier?

MR. HUDSON: Same objection, same instruction.

A. I think that would be deal directly with our deliberative process so I'll follow the advice of counsel.

Q. (BY MR. DOLLING) For example, if a county prosecutor was known to not be enthusiastic about prosecuting election code offenses, would that impact your decision to loop the county prosecutor into the process?

MR. HUDSON: Objection to the extent that would encroach on attorney/client, attorney work product

investigative privilege. I instruct you not to answer. Since you can answer without encroaching on the privilege you are free to do so. I also object based on form, foundation, and incomplete hypothetical.

A. I think I'd have to refer back to my previous answer which without getting into our deliberative process I could only say another privileged information I can probably just say that if it becomes evident at some point in an investigation that there is no path to prosecution should we be able to establish the elements of offense that our best practice would be to keep that in mind as we make decisions based on expenditures investigative resources in that matter.

Q. (BY MR. DOLLING) After Stephens, does the fact that a county prosecutor does not consent to the prosecution qualify as no path to prosecution?

MR. HUDSON: Same objection, same instruction. Additionally objection; form. Foundation. Objection; form and incomplete hypothetical.

A. I would say because the Stephens' decision is not yet final there's still certain amount of that that is influx and that we're waiting to find out.

Q. (BY MR. DOLLING) Okay. Have OAG investigators used warrants in carrying out investigations on the OAG's own initiative?

MR. HUDSON: Objection to the extent that it would encroach upon investigative privilege attorney/client privilege and attorney work product privilege. I instruct you not to answer to the extent you can answer without encroaching on those privileges you're free to do so.

Q. (BY MR. DOLLING) I'm not looking for any specific ongoing criminal investigatory details, just in general.

A. Sure. I'm -- I'm concerned about the use of the phrase, on the OAG's own initiative being a context from what we see in the election code which is pertaining to the type of referral that we get. And so we consider that when we receive a referral that we are investigating that based on that referral and not on our own initiative. So we don't consider any of the investigations that we do that are responsive to an election complaint to be on our own initiative.

Q. Well, let me clarify by saying, does the -- have OAG investigators used warrants in carrying out investigations when not in cooperation with the county prosecutor?

MR. HUDSON: Same objection, same instruction and just to be clear I understand that counsel has clarified the question to me generally not

in a specific instance.

Q. (BY MR. DOLLING) Yeah.

A. I'm still a little iffy about your characterization of not with a local district attorney's cooperation or involvement or whatever the word that you used was. I can say that we have used search warrants in investigations that were opened in connection with a complaint that we received under Chapter 273.001.

Q. Okay. Is the same true of using raids in carrying out investigations?

MR. HUDSON: Same objection, same instruction.

A. We've never used what has been characterized by us or anyone else to my knowledge as a raid and I'm not sure what that would entail on the context of an election investigation.

Q. (BY MR. DOLLING) I suppose an example might be after obtaining a warrant, law enforcement officers go to a location and collect evidence on the basis of that.

A. We wouldn't consider executing a search warrant to obtain evidence or an arrest warrant for that matter to be a raid.

Q. Okay. But has the OAG utilized that sort of procedure in investigations?

A. If we've -- yes, if we executed a search

warrant or if we have obtained a search warrant, we do that with the intention of executing the search warrant whether that's for data or whether that's to collect evidence.

Q. Have OAG investigators interviewed witnesses in carrying out investigations?

A. Of course.

Q. Have OAG investigators interviewed suspects in carry out investigations?

A. Yes, to the extent that those suspects are willing to talk which --

Q. Understood. Okay. So can we now go back to Exhibit 5 and turn to 273.002.

A. Sure.

Q. And for some reason it starts subsections with numbers instead of letters this time, but if we look at Section 273.0021 it says, reading the -- the preliminary language. For an election in which the attorney general is conducting an investigation the attorney general may direct the county or district attorneys serving a county in the territory covered by the election to conduct or assist the attorney general in conducting the investigation; is that correct?

A. Yes, sir.

Q. Has the OAG ever used this authority to direct

a county prosecutor to conduct an investigation without the OAG's involvement?

MR. HUDSON: Renewed the privilege objection, same instruction.

A. To the extent that there may be a public record of this request I -- we have never to my knowledge directed a county or district attorney to conduct or assist an investigation or prosecution. However, it's possible that we have used, referenced this provision, not use the provision, but referenced the provision in a request that was clearly a request and not a direction for a local district attorney to assist in an investigation.

Q. (BY MR. DOLLING) Could you put a number on how often that happens?

A. Almost never.

Q. Okay. And when it has happened, have the county attorneys complied or have you had resistance?

MR. HUDSON: Objection; form. Argumentative.

A. I don't recall ever having resistance because probably the way that we approach it with a soft touch.

Q. (BY MR. DOLLING) I think you've already answered this, but I just want to be sure. Has the OAG ever used the authority in 273.0021 to direct a county

prosecutor to assist the OAG in conducting an investigation?

A. My answer would be the same.

Q. Soft touch, but not directing?

A. Correct and I'll also refer back to a previous answer that I gave. District attorney's offices have very limited ability and resources in the investigation department. So that's another reason that this section has not been frequently used.

Q. Okay. Does the OAG interpret any other provision of Texas law to give it similar authority to direct a county prosecutor to take actions regarding suspected offenses under the election code?

MR. HUDSON: Objection to the extent that that would encroach upon attorney/client privilege, attorney work product doctrine, investigative privilege, or any other applicable privileges. I instruct you not to answer. To the extent you can answer without encroaching on those you're free to do so.

A. I'll follow that advice and say that I am not aware of any other authority in Texas law that authorizes the attorney general to direct local prosecutors to investigate or prosecute.

Q. (BY MR. DOLLING) Okay. Thanks. That reminds me I'd like to just step back very quickly to our

discussion about the OAG investigating suspected offenses and, you know, we talked about how best practice is to loop the county prosecutor in earlier rather than later. Does the OAG consider any Texas law other than Chapter 273 to give it authority to independently investigate suspected offenses under the election code?

MR. HUDSON: Same objection, same instruction.

A. I think I answered that question earlier that, again, while I'm not prepared to enter law on behalf of the Attorney General's office I'm not aware of any other authority under Texas law to independently prosecute election offenses.

Q. (BY MR. DOLLING) Or investigate election offenses?

A. Oh, I'm sorry. Our officers are state police with statewide jurisdiction to investigate crimes and as state police officers, we have many other divisions within the criminal investigation division that that prosecute a variety of different crimes and they do so under the same type of authority as DPS has as state wide peace officers. So I'm not familiar with the exact provisions of law that they grant that authority to state police, but there would be independent authority

for investigations of general crimes under other law.

Q. Okay. And we talked about this earlier, but I just like to, you know, clarify. The majority of investigations are carried out in -- to some degree with cooperation from the county prosecutor; is that correct?

A. Could you repeat the first part of your question?

Q. The -- would you say that the majority of investigations into election code offenses are carried out with the cooperation of a county prosecutor?

A. I think to some degree that's probably true and just to present a case to a grand jury requires the permission of a local prosecutor to get time before his grand jury and present that case and actually the grand jury doesn't belong to the prosecutor, but access to the grand jury is for practical purposes controlled by that District Attorney's Office. So the grand jury is its own entity that's appointed by a district judge, but yes, in answer to your question I would say that we generally have some form of cooperation in every case that we prosecute from the local prosecutor's office.

Q. And similar series of question from before. When carrying out these sort of joint investigations, do the OAG and county prosecutors utilize warrants during that process of investigation?

general may appear before a grand jury in connection with an offense the attorney general is authorized to prosecute under Subsection a. Subsection d -- c, the authority to prosecute prescribed by the subchapter does not affect the authority to arrive from other law to prosecute the same offenses. Did I read that correctly?

A. I believe you did, sir.

Q. I don't want to ask too many redundant questions. So just give me a moment here.

A. No problem.

Q. Prior to Stephens, did the OAG ever prosecute a suspected offense under the election code within a county despite that county's prosecutors office knowing about it and opposing the prosecution?

MR. HUDSON: Objection; form. Asked and answered. Objection. Same objections concerning privilege, same instructions.

A. My answer to that question before is, as far as I'm aware, I don't know of any instance where a local district attorney has opposed our prosecution.

Q. (BY MR. DOLLING) I know that we spoke about how the OAG's office is waiting for the mandate to issue in Stephens, but outside of Section 273.021, do you know or what provision of Texas law allows the OAG to work with county prosecutors to prosecute an offense?

MR. HUDSON: I'll object to the extent that that would encroach upon attorney/client privilege, attorney work product doctrine, deliberative process privileges. To the extent you can answer without encroaching on those you're free to do so. I will also instruct you not to.

A. Yeah, I don't believe that was a topic that I'm prepared to answer on behalf of the attorney general, but from my knowledge of the law, I'm just trying to recall your question specifically. Could you help me with it? I'm sorry, just the gist of the question.

Q. (BY MR. DOLLING) I'm just curious, it doesn't I mean like, I'm just curious if you know what provision of law allows the office of the attorney general to work --

A. Yes, I'm sorry. Recalling your previous question.

MR. HUDSON: Objection. Same instruction.

A. Subject to those, I believe it's Article 2.07 of the Code of Criminal Procedure describes the process for us to be appointed as a district attorney pro tem. When a district attorney has a conflict or other reason that he or she cannot be involved in a case, that district attorney can recuse, we may be appointed by a district judge to serve as district attorney pro tem.

We step into the shoes of the district attorney and prosecute under a district attorney's authority.

Q. (BY MR. DOLLING) So have situations in which the OAG -- so do you interpret the law to require that the county prosecutor has to be unavailable for some reason before the OAG can do that?

MR. HUDSON: Same objection, same instruction.

A. Again, that's one, just one route under Article 2.07, but the ways that you can get there are the attorney -- if the district attorney has a conflict that they need to recuse from the case, there might be another element, and then the final element was unavailable. We typically don't see the unavailability as much as we see the personal conflict, political conflict come into play with the district attorney and that's typically the process that happens under those circumstances which we normally see which is a motion to recuse filed by the district attorney with the district court, the district court then signing an order appointing a DA pro tem, and appointing us or it could be another local prosecutor as the district attorney pro tem in that matter.

Q. (BY MR. DOLLING) Earlier -- earlier when we were talking about how in a number of these pending

prosecutions the OAG had been appointed by a county prosecutor, were you referring to this sort of situation?

A. In the cases that I identified off of Exhibit 6, I was referring in those cases. I believe all of those were yes, an order appointing a district attorney pro tem for the reason of a district attorney having to recuse due to a local conflict.

Q. When you say political conflict, a local conflict, can you give me an example?

MR. HUDSON: Objection to the extent that that would encroach on attorney/client privilege, attorney work product, or investigator privilege. Instruct you not to answer to the extent you can answer without encroaching on those privileges you may do so.

A. I can give you an example without identifying any particular case in order to preserve any privileges and that might be where a local district attorney would -- would be in a position where the, you know, the target of the investigation is another political official or elected official in the county. A person who he may have some sort of relationship with or a politically connected person in the county that would cause a significant conflict for the district attorney or the district attorney's office to be involved in the

 case.

Q. (BY MR. DOLLING) Has this process ever been used where the basis for the recusal was political unpopularity of the -- the prosecution?

MR. HUDSON: Same objection, same instruction.

A. From -- right, with -- with limiting myself to the public record no, I'm not aware of unpopularity of prosecuting election fraud offenses being used previously as a basis for a DA's recusal.

Q. (BY MR. DOLLING) Okay. I'm gonna hand you what I'm marking as, I think, are we on 7? And this is Texas government code Section 402.028 entitled assistance to prosecuting attorneys; is that correct?

(Exhibit No. 7 marked.)

A. Yes, sir.

Q. (BY MR. DOLLING) So I'm just gonna read it out quickly. Subsection a says, at the request of a district attorney, criminal district attorney, or county attorney, the attorney general may provide assistance in the prosecution of all manner of criminal cases, including participation by an assistant attorney general, as an assistant prosecutor when so appointed by the district attorney, criminal district attorney, or county attorney. Subsection b, a district attorney,

 criminal district attorney, or county attorney, may appoint and deputize an assistant attorney general, as assistant prosecutor to provide assistance in the prosecution of criminal cases including the performance of any duty imposed by law on the district attorney, criminal district attorney, or county attorney. Subsection c, nothing in this section shall prohibit an assistant attorney general from appointment as attorney pro tem under the provisions of article 2.07 code of criminal procedures; is that correct?

A. Yes, sir.

Q. And so --

MR. HUDSON: I might just put out on the record for you. I think the court reporter's losing her mind a little bit trying to keep up with you.

Q. (BY MR. DOLLING) I can slow down.

MR. HUDSON: Yeah, I'm not trying to step on you, she's having some problems.

Q. (BY MR. DOLLING) Just want to try to get through as quickly as possible. I will slow down in the future. I apologize. So Subsection c is what we were just talking about, the attorney pro tem.

A. Yes, sir.

Q. (BY MR. DOLLING) I'd like to talk about Subsection a and b. Does the OAG interpret the Texas

government code 402.028 to give it authority to prosecute a suspected offense under the Texas election code when requested to do so by a county prosecutor?

MR. HUDSON: Object to the extent that that would encroach on attorney/client privilege, attorney work product doctrine, or investigative privilege. To the extent you can respond without encroaching on these privileges you're free to do so. Otherwise, I'm instructing you not to answer.

A. Right. And without -- to remain consistent, this isn't one of the areas I'm prepared to give an interpretation of -- of the office of the attorney general on a specific law, but my understanding of the law is I believe that is correct.

Q. (BY MR. DOLLING) Has the office of the attorney general, after Stephens been appointed to prosecute an election code related offense under Subsection a or b as opposed to c which is what we were talking about earlier the pro tem provision?

A. I don't know that we have any such agreements on the public record. And without giving the impression that there aren't any agreements to proceed corporately in cases, I want to remain consistent and stick with what is publicly available and I don't believe that we have any filed deputization's on the record in any of

assistant attorney general as an assistant prosecutor.

Q. And we sort of covered this before, but has -- are any assistant attorney general's currently appointed under Subsection A or B to assist in the prosecution of a pending prosecution by a county prosecutor?

A. I don't believe we have deputization on file. I believe that the situations where we have been formally appointed have been under a code of criminal procedure Article 2.07 as district attorney pro tem.

Q. Would it be accurate to say that the list of pending prosecutions on Exhibit 6 include cases in which the OAG has been formally appointed pro tem and informally appointed via some sort of operation of 402.028 Subsection A or B?

MR. HUDSON: Object to the extent that it calls for attorney/client privileged, attorney work product, or investigative privilege. To the extent you can answer without encroaching on these privileges you're free to do so. Otherwise, I instruct you not to answer.

A. I wouldn't want to characterize the -- the communications or -- or understanding in any specific way, but we are working cooperatively with district attorneys in a number of these cases.

Q. (BY MR. DOLLING) Are there any of these cases

on Exhibit 6 pending prosecutions that you are not working cooperatively with a county prosecutor?

MR. HUDSON: Same objection, same instruction.

A. I think I will follow the advice of counsel on that.

Q. (BY MR. DOLLING) Okay. So Subsection B of 402.028 as we were discussing uses the word deputize.

A. Yes.

Q. Does the OAG interpret Subsection B to allow for a county prosecutor to issue a standing deputization to an assistant attorney general? For example, could a county prosecutor issue you, Jonathan white, a standing deputization to prosecute all suspected election law offenses in the county?

MR. HUDSON: Same objection, same instruction. Additional objection as to form, foundation, and incomplete hypothetical.

A. I don't have a position on that very specific scenario to share. I can say that we have not entered into one of those agreements historically.

Q. (BY MR. DOLLING) Thank you. That was my next question.

A. I knew it was.

Q. So if we could turn back to Exhibit No. 5

have been the same circumstances I described before as it would have been a soft touch. It would have been a request that we would not have pushed without agreement of the district attorney. And at most it would have been a reference to a code section, but never a mandatory directive.

Q. Okay. And so I guess that means that the OAG has never utilized this provision against a county prosecutor's wishes?

A. Exactly. Not -- not used it per se, but it could have been referenced with regards to a request.

Q. Okay.

A. It was not, you know, a directive or mandatory in nature.

Q. Would the OAG ever use this authority if a county prosecutor did not want to prosecute or assist with the -- in the -- the prosecution?

MR. HUDSON: Object as to attorney/client privilege, work product doctrine, investigative privilege, similar processes privilege, to the extent you can respond without encroaching on those privileges, you may do. Otherwise I'm instructing you not to answer.

A. I have no way of knowing if the attorney general would ever use it. We have never used it in the

past and as I previously testified here and before the legislature is we always used a soft touch and a cooperative approach with local prosecutors. We'd never desired to step on a local prosecutor's toes or tried to force them to do anything or be involved in anything that they didn't want to be.

Q. (BY MR. DOLLING) Okay. Thank you. So handing you what I've marked as Exhibit 8, which is a copy of SB1 enrolled. Just confirm that for me.

(Exhibit No. 8 marked.)

A. Yes, sir.

MR. HUDSON: In the interest of short circuiting out objections on the document itself as he's asking questions. Can you verify where you got it from and the reason I ask that is, is there's an actual signed copy on the Secretary of States website. I don't know if this is the final enrolled copy or not. Is there any chance I can get you to clarify that?

Q. (BY MR. DOLLING) I cannot remember exactly what the website is called, but it's the legislative look up that's provided by the state on the capital website or whatever it is.

MR. HUDSON: Thank you.

Q. (BY MR. DOLLING) So, Mr. White, do you understand that when text is struck through it means

as it exists now after the additions and removals. If the registrar determines that a person who is not eligible to vote registered to vote or voted in an election, the registrar shall within 72 hours not including weekends after making the determination execute and deliver to the attorney general, the Secretary of State, and the county or district attorney having jurisdiction in the territory covered by the election and affidavit stating the relevant facts; is that correct?

A. Yes.

Q. Thank you. So would you agree that SB1 Section 2.04 added the requirement of a 72 hour turnaround on the affidavit described in this section?

A. Yes, sir.

Q. And does the OAG agree that it added the requirement that the registered -- registrar deliver that affidavit to the OAG?

A. That is what the statute says. Yes, sir.

Q. And the requirement that the registrar deliver that affidavit to the Secretary of State?

A. That is what the statute says, yes.

Q. What does the OAG interpret as the purpose of these new requirements in the law?

MR. HUDSON: Objection; form. To the

extent that that encroaches -- excuse me, objection attorney/client privilege, attorney work product doctrine, investigative privilege, as well as legislative privilege, deliberative process privilege. To the extent that you can answer without encroaching on any of those privileges you're free to do so. Otherwise, I'm gonna instruct you not answer.

A. I'll follow advice of counsel and also note that that is not among the topics that I prepared to deliver an opinion from the attorney general's office on.

Q. (BY MR. DOLLING) What would you in your personal capacity interpret as the purpose of these new requirements?

MR. HUDSON: Same objection, same instruction.

A. I would want to speculate as to legislative intent behind this.

Q. (BY MR. DOLLING) Okay. Has the OAG received any affidavits after the effective date of SB1 pursuant to this amended election code Section 15.028?

A. Without getting into investigative privilege and identifying specific details and specific individuals who might have sent reports in. We have received reports; although, I don't know what form they

were in whether it was an affidavit or whether it was just information.

Q. Would you characterize that information that you received as pursuant to this section?

A. I don't really know for sure.

Q. Would the OAG use an affidavit if delivered to the OAG pursuant to this amended election code section as the basis for opening an investigation if it reflected sufficient -- sufficiently credible allegations?

MR. HUDSON: Same objection, same instructions.

A. If we received a report from an elections official regarding ineligible voting, we would accept that for preliminary investigation and the determination of whether to investigate fully.

Q. (BY MR. DOLLING) Has the OAG opened any investigations on the basis of one of these affidavits?

MR. HUDSON: Same objection, same instructions.

A. Without getting into any specific details subject to privilege, we have opened investigations as a result of information received from elections officials regarding ineligible voting.

Q. (BY MR. DOLLING) Has the OAG Initiated any

amendment?

A. I believe so. Yes.

Q. Thank you. Is it the OAG's understanding under this pre SB1 version of Section 31.006 that the law instructed the Secretary of State to refer complaints it received to the OAG, but no other type of information?

MR. HUDSON: Object to the extent that that will encroach on attorney/client privilege, work product doctrine, investigative privilege, deliberative process privilege. To the extent you can answer without encroaching on those you're free to do so. Otherwise I instruct you not to answer.

A. Well, I'm not prepared to deliver an interpretation of the OAG on this specific provision. My understanding of the statute as previously written was silent as to what a complaint would entail. And so the new language clarifies that other materials can be provided.

Q. (BY MR. DOLLING) Prior -- under the prior version of Section 31.006 when you receive referral -- when you would receive referrals from the Secretary of State, were they -- was there like a formal complaint document like a formal complaint form?

A. Yes. The Secretary of State has a formal complaint form that's filled out by the complainant.

A. Yes.
Q. And then it says the Secretary shall deliver to the attorney general all pertinent documents and information in the Secretary's possession and it adds the words and information there; is that correct?
A. Yes.
Q. So does the OAG agree that these changes to election code Section 31.006 broadened the universe of information the Secretary of States office may consider when making a referral to your office to include information beyond what it could consider prior to the changes?
MR. HUDSON: Object to the extent it calls for attorney/client privilege, attorney work product, investigative privilege. To the extent you can answer without stepping on those privileges you may do so. Otherwise, I'm gonna instruct you not to answer. Also object to form, foundation, form; speculation.
A. I don't know of any official position the attorney general has on whether that broadened the type of information that we could receive from the Secretary of State.
Q. (BY MR. DOLLING) Do you have an interpretation in your personal capacity?
MR. HUDSON: Same objection, same

instruction.
A. I don't know of any limitation that would have prevented the Secretary of State from providing us other information.
Q. Before --
A. Before SB1.
Q. Okay. Thank you. And so after the effective date of SB1, have the referrals that you have received from the SOS differed in any material way from the type, I guess the format and type of information that you received pre SB1 and post SB1, are there any material differences?
A. None that I'm aware of.
Q. Thank you. Okay. Can we turn to SB1, Section 5.15 which should be on Page 48? Right in the middle.
A. Yes, sir.
Q. So I'm just going to read -- let me start by saying Section 5.15 amended Section 87.0431B of the election code; is that correct?
A. Yes, sir.
Q. And so I'm just going to read how the election code existed before the changes. Subsection B, the early voting clerk shall, not later than the thirtieth day after election day deliver notice to the attorney

general, including certified copies of the carrier envelope and corresponding ballot application of any ballot rejected because one, the voter was deceased, two, the voter already voted in person in the same election, three, the signatures on the carrier envelope and ballot application were not executed by the same person. Four, the carrier envelope certificate lacked a witness signature, or five, the carrier envelope certificate was improperly executed by an assistant; is that a correct reading of how the law existed before SB1?

A. Yes, sir.

Q. What is the purpose of these requirements under section 87.0431B?

MR. HUDSON: Object based on the, attorney/client, attorney work product, investigative privilege, legislative privilege. With the extent you can answer without encroaching on those privileges you may do so. Otherwise I'm gonna instruct you not to answer.

A. I wouldn't want to speculate as to what legislative intent behind the statute has written.

Q. (BY MR. DOLLING) How often would the OAG receive notices under election code 87.0431b prior to the effective date of SB1?

Q. Okay. Thank you. And now I just want to look at how the SB1 amended this section and so, is it accurate to say that basically SB1 added a 6th category of circumstances in which the early voting clerk must deliver notice to the attorney general and that category is now Subsection 6 which reads, the early voting ballot board or the signature verification committee determined that another violation of the election code occurred?

A. Yes, sir.

Q. What does the OAG -- what is the purpose of adding this Subsection?

MR. HUDSON: Object to the extent it calls for attorney/client, attorney work product, investigative or legislative privilege. To the extent you can answer without encroaching on those privileges you're free to do so. Otherwise, I instruct you not to answer.

A. I wouldn't want to speculate as to the legislative intent.

Q. (BY MR. DOLLING) Assuming that county prosecutors would comply with these requirements, would you expect to receive more notices under this amendment than previous?

A. Adding additional category, I think logically you could, you know, just on the basis of there being an

additional category you might logically expect that there could be more referrals or not referrals, but notices.

Q. Has the OAG received any notices pursuant to this new Subsection after the effective date of SB1?

A. I'm not sure that we have.

Q. Okay. And so I guess you are unaware of any investigations opened as a result of a notice under this new Subsection?

A. That's correct.

Q. Same for prosecutions?

A. Yes.

Q. Okay. Thank you. And can we turn to SB1 Section 6.01 which is on Page 50, I think down at the bottom. So Section 6.01 of SB1 amended Section 64.009 of the election code by adding or amending Subsection B and adding Subsections E, F, F1, G, and H. Is that correct?

A. Yes.

Q. And so I'd like to read Subsection F, which was added by SB1 Section 6.01, and it reads, a person who simultaneously assists 7 or more voters voting under this section by providing the voters with transportation to the polling place must complete and sign a form provided by an election officer that contains the

person's name and address and whether the person is providing assistance solely under this section or under both this Subsection and Subchapter B; is that correct?

A. Yes.

Q. And then Subsection G, a little bit under it was added which reads, a form completed under Subsection F shall be delivered to the Secretary of State as soon as practicable. The Secretary shall retain a form delivered under this section for the period for preserving the precinct election records and shall make the form available to the attorney general for inspection upon request. Did I read that correctly?

A. Yes, sir.

Q. Do you know how long the period for preserving the election precinct records is?

A. I believe it's a standard 22 months.

Q. Thank you. What does the OAG interpret as the purpose of adding Subsection G, F and G.

MR. HUDSON: Object based on attorney/client privilege, work product doctrine, investigative privilege, legislative privilege. To the extent you can answer that without encroaching on those privileges you may do so. Otherwise, I will instruct you not to answer.

A. I can't without speculating.

Q. (BY MR. DOLLING) Since the effective date of SB1, has the OAG made any request to inspect the forms contemplated under Subsection G?

MR. HUDSON: Object to the extent that that will encroach on attorney/client privilege, attorney work product, investigative privilege. To the extent you can answer without encroaching on those privileges you're free to do so. Otherwise, I'm gonna instruct you not to answer.

A. Not that I'm aware of.

Q. (BY MR. DOLLING) If you received a referral or you -- if the OAG received a referral that implicated a need to consult these records in the course of an investigation, would the OAG utilize Subsection G to do so?

MR. HUDSON: Objection; form. Foundation. Objection; form. Speculation. Same instructions, same objections concerning privilege.

A. Yeah, I wouldn't speculate as to what we would do, but this is a potential tool that could be available for investigative use if we received a complaint regarding activity in an election that might have been involved the completion of these forms.

Q. (BY MR. DOLLING) What sort of criminal activity in a -- in an elect -- in connection with an

A. Yes, sir.
Q. And it has -- at the end of it, it says hash tag SB1; is that correct?
A. Yes, sir.
Q. And November 5th 2021 was after the passage of SB1; is that correct?
A. That is correct.
Q. Does the statement that election integrity is my number one priority reflect the policy of the OAG?
MR. HUDSON: Same objections.
A. I can't answer that.
Q. (BY MR. DOLLING) Okay. Do Attorney General Paxton's tweets have any impact on the operations of the Election Integrity Division?
A. What I can tell you is that this is my first time to read these tweets.
Q. Okay. Do you know if anyone else in the Election Integrity Division has read these tweets or is aware of Attorney General Ken Paxton's statements?
MR. HUDSON: Objection; form. Foundation. Objection; form. Speculation.
A. I don't know.
Q. (BY MR. DOLLING) Okay. Has Attorney General Ken Paxton ever put pressure on the Election Integrity Division to investigate more cases?

MR. HUDSON: Objection to the extent that it would encroach on deliberative process privilege, attorney/client, attorney work product, investigating privilege. I instruct you not to answer. To the extent you can answer without encroaching on those privileges you're free to do so. Also object to the form, foundation. Form. Speculation.

A. I'll follow advice of counsel.

Q. (BY MR. DOLLING) Have you in your personal capacity ever felt pressure from Attorney General Ken Paxton to investigate more cases?

A. No.

Q. Okay. Same question for prosecuting more cases.

A. Same answer.

Q. Okay. Has Attorney General Ken Paxton ever overridden an assistant attorney general's decision not to investigate an alleged offense under the election code?

MR. HUDSON: Same objection, same instructions.

A. Gonna follow the advice of counsel.

Q. (BY MR. DOLLING) Same question for prosecuting an alleged offense.

MR. HUDSON: Same objection, same

 instruction.

A. Follow the advice.

Q. (BY MR. DOLLING) Thank you. Okay. So if we could just go back to the SB1 enrolled which is Exhibit 8 and if we could just turn to Page 52.

MR. HUDSON: Just one thing before we go on any further. So two things; one, I've got somebody waiting for Topic 8. To the extent of the Topic 8 questions or are there more things coming?

MR. DOLLING: We could --

MR. HUDSON: And I'm only asking because I got somebody waiting and so if you guys are gonna --

MS. OLSON: We can do it now. How long do you think?

MR. DOLLING: I think it would just be a few minutes really. If we could call that person in for Topic 8 questions about the tweets --

MR. HUDSON: We don't have to do it right this second. I just want to know if I can release him. Yeah, I'm not trying to get in the way of your deposition, I'm just trying to -- if you guys gonna do the stuff with Jonathan then I'll let my other person go 'cause they're gonna be -- I hadn't planned to present them toward the end, whenever you wrap with Jonathan.

MR. DOLLING: We'll just finish with

our investigative team that's team oriented.

Q. Although you are the head of the Election Integrity Division, there are officers in the hierarchy of the OAG who are above you; is that correct?

A. Yes, we have an executive management team that sets policy for the agency.

Q. Does anyone from that team ever countermand decisions you make as head of Election Integrity Division?

MR. HUDSON: Object based on the attorney/client privilege, worked out prior to doctrine, investigative privilege. To the extent that -- and deliberative process privilege, to the extent you can answer without encroaching on these privileges you're free to do so. Otherwise, I direct you not to answer.

A. I don't think I can answer that without discussing privileged material.

Q. (BY MR. DOLLING) Have you ever reversed a policy or practice on the basis of someone else's command?

MR. HUDSON: Same objection, same instructions.

A. Same answer.

Q. (BY MR. DOLLING) Given the size of the Election Integrity Division, would you say it's accurate

to say that you are aware of all ongoing investigations and prosecutions?

A. I'm generally aware of most investigations and certainly as those investigations develop and they encounter factual and legal issues, I've become more informed of. So somewhere along the line I've become aware of most investigations. Certainly all investigations that lead to prosecutions and I'm at least generally aware of all prosecutions.

Q. So would it be accurate to say that you are not involved in all investigations, but you are involved in all prosecutions?

A. That's probably fair to say. I generally get involved from a standpoint of advice, legal analysis, factual analysis, on investigations that reach a certain point, but I think that's a pretty fair assessment.

Q. Are policies or practices ever set for the Election Integrity Division without your input?

MR. HUDSON: Same objection, same instructions.

A. I think I'll have to follow advice of counsel on that.

Q. (BY MR. DOLLING) Okay. Now, if we can turn back to Exhibit 8, which is SB1 enrolled please.

A. Yes, sir.

Q. And if we could go to Page 52 which should have Section 6.04 on it. So I'm just going to -- Section 6.04 amends election codes, Section 64.034; is that correct?

A. Yes, sir.

Q. I'm just going to read how it exists after the amendment. So Section 64.034 titled, Oath. A person other than an election officer selected to provide assistance to a voter must take the following oath, administered by an election officer at the polling place before providing assistance. I swear or affirm under penalty of perjury that the voter I am assisting represented to me they are eligible to receive assistance. I will not suggest by word, sign, or gesture how the voter should vote. I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot or directing the voter to mark the ballot. I will prepare the voter's ballot as the voter directs. I did not pressure or coerce the voter into choosing me to provide assistance. I am not the voter's employer, an agent of the voter's employer or an officer or agent of a labor union to which the voter belongs. I will not communicate information about how the voter has voted to another person and I understand that if assistance is

provided to a voter who is not eligible for assistance the voter's ballot may not be counted; is that correct?

A. Yes sir.

Q. What -- so I don't want to go back and read specifically what was added, but we can see what was added; is that correct?

A. Yes, sir.

Q. The underline --

A. Yes, we can.

Q. Does -- what does the OAG interpret as the purpose of these new -- of this new language in SB1 Section 6.04?

MR. HUDSON: Objection, attorney/client privilege, worked out, client investigative privilege, legislative privilege. To the extent you can testify without encroaching on those privileges you're free to do so. Otherwise, I'm instructing you not to answer.

A. Yeah, I'm respecting privileges, I can't answer without speculating.

Q. (BY MR. DOLLING) Okay. Would you -- would the OAG agree that this amended language added the potential for criminal liability into Section 64.034 by adding the words, under penalty of perjury at the beginning?

MR. HUDSON: Same objection, same

instructions.

A. I didn't prepare to deliver an AG interpretation of this specific provision.

Q. (BY MR. DOLLING) Okay.

A. But from my personal understanding of the law, no, this -- the addition of under penalty of perjury does not change or create an offense by -- Section 37.02 of the Penal Code always existed and this oath would have applied as an oath required by law that would have triggered a perjury offense had the other elements of 37.02 been met.

Q. Okay. In that case, would you agree that the language that was added and removed changed the oath?

A. It did with the addition of language and the subtraction of other language.

Q. So I guess I would ask, has the OAG participated in any capacity in any investigation into suspected offenses in connection with SB1 6.04 even if like acknowledging that under your personal interpretation the oath was subject to penalty of perjury even pre SB1?

MR. HUDSON: Objection based on attorney/client privilege, work product doctrine, investigative privilege. To the extent that you can respond without encroaching on those privileges you're

free to do so. Otherwise, I instruct you not to answer.
A. Are you talking about investigations after SB1?
Q. (BY MR. DOLLING) Well, we can -- let's split it up. So pre SB1, if this provision -- if the oath was taken under penalty of perjury at that time, has -- had your office participated in any capacity in any investigations into perjury committed in connection with this oath, the pre SB1 oath?
MR. HUDSON: Same objection, same instructions.
A. I'm not aware of any perjury investigations or result in prosecutions on this oath.
Q. (BY MR. DOLLING) Okay. Can we turn to Page 54 please? And that should be Section 6.06, starts at the bottom there; is that right?
A. Yes, sir.
Q. And Section 6.06 amends Section 86.0105 of the election code by amending Subsection A, C, and E, and adding Subsection F; is that correct?
A. Yes, sir.
Q. And Subsection A now reads, A person commits an offense if the person; one, compensates or offers to compensate another person for assisting voters as provided by a different section of the code, Section 86.010. And that's all I want to read for now. And

then if we go down to Subsection E, it adds to Subsection E and that reads, for purposes of this section compensation means an economic benefit as defined by Section 38.01 Penal Code.

A. Yes, sir. I see that.

Q. Do you interpret -- well, first of all, so Section 6.06 added language to what constitutes an offense under Section 86.01015 to create a new offense; is that correct?

A. I don't know that I would say it creates a new offense, but it modifies elements of an existing offense under the code.

Q. Okay. And I just have a simple question for this one which is, does the OAG interpret this offense as having a mens rea?

MR. HUDSON: Object to the extent it will call for attorney/client privilege, attorney work product, investigative privilege. To the extent that you can can respond to that without encroaching on those privileges feel free to do so. Otherwise, I'm gonna instruct you not to answer.

A. Could you repeat the part about mens rea?

Q. (BY MR. DOLLING) So as the -- the provision I'm interested in, as it reads right now, Subsection A of 86.0105 says, that a person commits an offense if the

person compensates or offers to compensate another person for assisting voters where under Subsection E, compensation means an economic benefit as defined by Section 38.01 Penal Code.

A. Got you.

Q. Would you read that offense -- would the OAG interpret that offense as having a mens rea?

MR. HUDSON: Same objection, same instructions.

A. Without having prepared to represent NAG's interpretation -- EAG's interpretation or opinion on this, I can tell you that whenever in a criminal law there's not a specific mens rea established in the statute it defaults to knowingly.

Q. (BY MR. DOLLING) Okay.

A. So the mens rea of this provision would be knowingly.

MR. DOLLING: Okay. Thank you. I think at this point if we can maybe take a five minute break?

MR. HUDSON: Sure. Off the record.

THE REPORTER: Off the record at 2:05 p.m.

(Recess.)

THE REPORTER: On the record at 2:19 p.m.

Q. (BY MR. DOLLING) Okay. Thank you for that break. I just have a few more questions before I pass

election fraud as an offense is typically a Class A misdemeanor?

A. The base level offense is Class A misdemeanor, yes.

Q. And that was true before SB1 and it's still true after SB1.

A. Correct.

Q. Okay. So you, meaning Jonathan White, testified before the House Election Committee in April 2021 about one of the predecessors to SB1 which was House Bill 6 during the 87th regular session; is that correct?

A. Sounds correct.

Q. At that time the House had been considering heightening offenses under election code 276.013 from Class A misdemeanors to second-degree felonies; is that correct?

MR. HUDSON: Object to the -- based on legislative privilege, attorney/client privilege, attorney work product doctrine. To the extent that you can testify without encroaching on those privileges you're free to do so. Otherwise I instruct you not to answer.

A. I'd like to stick to my testimony and I'm just trying to recall what my testimony was and I hadn't had

an opportunity to review that testimony, but I remember I think remember being asked about that.

Q. (BY MR. DOLLING) Okay. Well, just for the record, I'm gonna mark Exhibit No. -- I think we're on 10. This a copy of House Bill 6 that was being -- that was at issue at the time of the testimony that we're talking about April 2021. And I'm not sure exactly what page it's on so let me see if I can find it. Somewhere in here is House Bill 6's proposed changes to 276.01 -- here it is, it's on Page 17.

A. Got it.

Q. And so this is Section 5.04 of House Bill No. 6, amended Sections 2 -- 276.013A and B election code and Subsection B was amended to change the language from an offense under this section is a Class A misdemeanor to an offense under this section is a felony of the second-degree. Do you see that on Page 18?

(Exhibit No. 10 marked.)

A. Yes, that was proposed in this bill and thank you that helps refresh my memory.

Q. (BY MR. DOLLING) Thank you. Just to state the question again, at -- at the time that you testified in April 2021, the House had been considering heightening offenses under Election Code 276.013 from Class A misdemeanors to second-degree felonies, is that correct?

A. It would have been the portion of deposition Topic No. 1 that involved investigations, predicated on suspected violation of SB1 sections.

Q. And what did you discuss with Lieutenant Rubio in preparation for this deposition regarding that second part of Topic No. 1?

MR. HUDSON: I'll object to the extent that it will call for attorney/client privilege, work product or an investigative privilege. To the extent that you can respond to that without encroaching on those privileges you're free to do so. Otherwise, I instruct you not to answer.

A. I'll follow the advice of counsel.

Q. (BY MS. OLSON) What -- on what privilege are you declining to answer that question?

A. With regard to investigative privilege, primarily.

Q. All right. Are you relying on any other privilege? Are there any things that you discussed with Lieutenant Rubio that assisted you in preparing for your deposition today that were not covered by the investigative privilege?

A. I think if I could have a moment to discuss a privilege issue with counsel, I can answer that question.

MS. OLSON: All right. I'm happy to take a break we can go off the record.
THE REPORTER: All right. The time 2:31 p.m. and we are off the record.
(Recess.)
THE REPORTER: The time is 2:36 p.m. and we are back on the record.
Q. (BY MS. OLSON) We're back the record and, Mr. White, have you had an adequate opportunity to consult with counsel regarding your privilege question?
A. Yes, ma'am. Thank you.
Q. And I think my question that was pending at the time, was whether there was anything that you discussed with Lieutenant Rubio that was not covered by the investigative privilege?
A. Yes. I asked Lieutenant Rubio specifically about whether we had investigations pending involving violations that were novel to SB1.
Q. And did he answer your question?
A. Yes.
Q. And are there any such investigations pending?
A. No.
Q. And then you also met, you said with a person named Conrad Swan who had something to do with budget?
A. Yes, ma'am.

that a standard that is used when reviewing and a complaint a standard that is used by the Election Integrity Unit to determine whether or not it's going to move forward on an investigation?

A. Not as such that's a very baseline standard. We would have that standard in place because if an offense -- if -- if a complaint does not actually allege a criminal offense then we don't have any business with it. So it would certainly have to meet that hurdle, but that wouldn't necessarily make it a credible allegation.

Q. What aspects of a complaint or a referral would the Election Integrity Unit rely on to assess whether it's a credible investigation in practice?

MR. HUDSON: Object to the extent that it will encroach on attorney/client privilege, attorney work product, investigative privilege, including sources and methods. To the extent you can respond without encroaching on those privileges you're free to do so. Otherwise, I'm gonna instruct you not to answer.

A. I'm not aware of any formalized factors that are used in the evaluation of whether a complaint is credible or not it's taken on a case by case basis and fact by fact basis.

Q. (BY MS. OLSON) And who makes that initial determination within the Election Integrity Unit about

Q. So probable cause is the official legal standard?

A. That is the official legal standard, yes.

Q. And -- but is it your offices practice, your Election Integrity Division's practice only to charge a case when it believes there's sufficient evidence to convict a higher standard than probable cause?

MR. HUDSON: Objection; form. Foundation. Objection. Asked and answered,.

Q. (BY MS. OLSON) You can answer.

A. Our practice is -- is generally to look for cases that can actually be tried successfully and we don't always know for sure whether --

Q. Right.

A. -- prosecution will be successful or not that's the reason court exists. But yeah, we'll typically be looking for a higher standard than simple probable cause. We want successful cases.

Q. And does that mean you look at things about, for example, whether certain evidence would be admissible at a trial of the case?

MR. HUDSON: Object to the extent that encroaching on attorney work product, attorney/client privilege, or investigative privilege. To the extent you can respond without encroaching on those privileges

you're free to do so. Otherwise, I'll instruct you not to answer.

Q. (BY MS. OLSON) And I'm not asking about any particular case. I'm asking about what you do in practice.

A. We would look at all legal and factual issues.

Q. Mr. White, I think you testified that you don't keep track or don't keep statistics on how many referrals that come to the Election Integrity Unit results in investigations; is that right?

A. That's correct.

Q. Would there be a way to do that?

A. I think it would be possible to do that going forward.

Q. So, for example, there -- there's a record kept, I assume of your referrals that come into the office?

A. Criminal Investigations keeps some record of that.

Q. And when you say they keep some record of that, what do you mean?

A. It's not very specific about the allegations.

Q. Do they keep a log of referrals if you know?

A. Something -- something like that.

Q. And when you say something like that, do you

 violation of the election code?

A. They don't have those numbers, no.

Q. What kinds of evidence typically do you look for or do you find in a assistance fraud case?

MR. HUDSON: Object to the extent that it encroach on attorney work product, attorney/client privilege or investigative privilege. To the extent that you can respond without encroaching on those privileges, you may do so. Otherwise, I'm gonna instruct you not to answer.

A. One thing we normally try not to do is to discuss openly matter -- investigative methods.

Q. (BY MS. OLSON) So it was my -- I'm just wondering what kind of evidence. So earlier in the presentation you had all those examples or signs of ABBM seeding fraud, the various documents, the mismatched signatures. So that's evidence you might rely on in a mail in ballot or voter harvesting, fraud prosecution, correct?

A. Correct.

Q. Okay. So you discussed that publicly with the election --

A. Understood.

Q. -- administrator. So what I'm asking you is then for the assistance fraud, yeah I noticed there

weren't really a lot of slides on assistance fraud, but I'm wondering what kind of evidence? I'm not asking you for any techniques, whether you use under covers or anything like that or whether you are taping anybody or I'm probably guessing not search warrants in that situation, but I'm wondering what kinds of evidence do you rely on to prove assistance fraud cases? And if you can answer that even by referring to cases that have moved through to conviction, what kind of evidence was either referred to in a plea colloquy or was introduced as evidence in court, that's fine.

A. Sure. Typically it will be a combination of things, but it will rely heavily on testimony of the victim. And let me point out again, that you know there's not anything that we're doing that's scanning and monitoring the state of Texas for assistance fraud, that's not how it happens. We get a specific referral of an allegation of criminal activity that we look into at that point. That typically gives us some direction as to what happened, where it happened, who was involved in it, and then we can have investigators conduct interviews and request applicable election records from there. The other way that assistance fraud comes into play is when we're investigating a mail ballot fraud case and assistance fraud happens at the time that the

vote harvester is actually -- has taken the voter's ballot and purporting to help them fill out that ballot or suggesting to the voter during the voting process how that voter should vote. So there aren't like physical -- as many physical documentary signs as we had to give examples to the election officials about mail ballot fraud, for example, that leaves more of a paper trail.

Q. And prosecutors typically like to have documents for a paper trail, correct?

A. Yes and no because documentary cases are a pain to deal with, but yes.

Q. Documents say the same thing every time, right?

A. Theoretically, yeah, I think I agree with what you're saying.

Q. And witnesses might change their testimony from the time they're interviewed to the time they're in the grand jury to the time they testify at trial, correct?

A. Certainly prefer to have a document than have no document.

Q. And so with respect to assistance fraud, what is the and I think this is what you told Mr. Dolling, but please correct me if I'm wrong, which is why I have to reask it, but the mens rea is knowing voter assistance fraud?

Q. (BY MS. OLSON) Does the Election Integrity Division ever handle its own appeals?
A. Normally not.
Q. Who handles appeals from the Election Integrity Division?
A. In individual cases our Criminal Appeals Division will often step in to handle ordinary criminal appeals. I have personally handled a few appeals, but it's normally something that we hand off to a specialized unit.
Q. Thinking of some responses to some questions Mr. Dolling asked you. You asserted privilege or followed Mr. Hudson's directions about a question where he asked you if there were pending prosecutions that you were not working cooperatively with a county prosecutor. Do you recall that?
A. Yes, ma'am.
Q. And I just wanted to follow up on that a little bit. So what -- what -- under what privilege were you not answering that question?
A. To the extent that it involves discussions and conversations between our office and a district attorney with regard to a prosecution to a case. Could be work product privilege it could be attorney/client privilege, joint prosecution, doctoring may apply to that.

Q. And so was the privilege being asserted to the use of the word cooperatively?
A. The privilege would have been asserted in terms of communications between the offices. I don't think I was cuing in on a particular word in the question.
Q. And as I understood the question and maybe I misunderstood so I'm gonna ask the question this way. Are there pending prosecutions in which the Office of the Attorney General's office is involved, but not working with a county prosecutor or a district attorney's office? So just the Office of the Attorney General is handling?
A. I think I can answer that question generally. That yes, we have cases that are pending based on the Stephen's ruling whose outcome is tied to the Stephens' decision.
Q. Okay. So those are cases in which only Office of Attorney General personnel are assigned to the prosecution, no county prosecutor personnel are assigned to the prosecution; is that correct?
A. That's correct. We have cases where that's the case.
Q. And they are being -- are they stay pending motion for reconsideration?
A. Yes, ma'am, essentially.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNION DEL PUEBLO ENTERO, et al,
Plaintiffs,
vs.
STATE OF TEXAS, et al,
Defendants.

CIVIL ACTION
NO.: 5:21-cv-844-XR
(Consolidated Cases)

REPORTER'S CERTIFICATION

ORAL DEPOSITION OF JONATHAN WHITE

MAY 5, 2022

I, Miah Parson, CSR, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JONATHAN WHITE, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

_X_ was requested by the deponent or a party before the completion of the deposition and that the signature is to be before any notary public and returned within 30

days from the date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefor;

___ was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in this action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 23rd day of May, 2022.

Miah Parson, CSR No. 11773
Expiration Date: 02/28/2023
Firm Registration No. 633
Magna Legal Services
16414 San Pedro, Suite 900
San Antonio, Texas 78232
Phone 210-697-3400
Fax 210-697-3408

EXHIBIT
5

ELECTION CODE

TITLE 16. MISCELLANEOUS PROVISIONS

CHAPTER 273. CRIMINAL INVESTIGATION AND OTHER ENFORCEMENT PROCEEDINGS

SUBCHAPTER A. CRIMINAL INVESTIGATION

Sec. 273.001. INVESTIGATION OF CRIMINAL CONDUCT. (a) If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.

(b) A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election.

(c) On receipt of an affidavit under Section 15.028, the county or district attorney having jurisdiction and, if applicable, the attorney general shall investigate the matter.

(d) On referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations.

(e) Not later than the 30th day after the date on which a county or district attorney begins an investigation under this section, the county or district attorney shall deliver notice of the investigation to the secretary of state. The notice must include a statement that a criminal investigation is being conducted and the date on which the election that is the subject of the investigation was held. The secretary of state may disclose information relating to a criminal investigation received under this subsection only if the county or district attorney has disclosed the information or would be required by law to disclose the information.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1993, 73rd Leg., ch. 728, Sec. 78, eff. Sept. 1, 1993; Acts 1993, 73rd Leg., ch. 916, Sec. 26, eff. Sept. 1, 1993; Acts 2003, 78th Leg., ch. 1290, Sec. 1, eff. Sept. 1, 2003.

Sec. 273.002. LOCAL ASSISTANCE TO ATTORNEY GENERAL. For an election in which the attorney general is conducting an investigation, the attorney general may:

(1) direct the county or district attorney serving a county in the territory covered by the election to conduct or assist the attorney general in conducting the investigation; or

(2) direct the Department of Public Safety to assist in conducting the investigation.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Sec. 273.003. IMPOUNDING ELECTION RECORDS. (a) In the investigation of an election, a county or district attorney or the attorney general may have impounded for the investigation the election returns, voted ballots, signature roster, and other election records.

(b) To have election records impounded, the investigating officer must apply to a district court for an order placing the election records in the court's custody for examination by the officer.

(c) The application for impoundment must be filed with the district court of the county in which the election was held or an adjoining county. An application for records of a statewide election may be filed in the county in which the election was held, an adjoining county, or Travis County.

(d) On the filing of an application, the district judge shall issue an order impounding the records in a secure place under the terms and conditions the judge considers necessary to keep them under the judge's custody and control during the examination and for any additional time the judge directs.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., ch. 864, Sec. 254, eff. Sept. 1, 1997.

Sec. 273.004. EXAMINATION OF IMPOUNDED RECORDS. (a) The examination of impounded election records shall be conducted in the same manner as a court of inquiry.

(b) Impounded election records must be examined in the presence of the district judge ordering the impoundment or a grand jury, as provided by the judge's order.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

SUBCHAPTER B. PROSECUTION BY ATTORNEY GENERAL

Sec. 273.021. PROSECUTION BY ATTORNEY GENERAL AUTHORIZED. (a) The attorney general may prosecute a criminal offense prescribed by the election laws of this state.

(b) The attorney general may appear before a grand jury in connection with an offense the attorney general is authorized to prosecute under Subsection (a).

(c) The authority to prosecute prescribed by this subchapter does not affect the authority derived from other law to prosecute the same offenses.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1993, 73rd Leg., ch. 728, Sec. 79, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 864, Sec. 255, eff. Sept. 1, 1997.

Sec. 273.022. COOPERATION WITH LOCAL PROSECUTOR. The attorney general may direct the county or district attorney serving the county in which the offense is to be prosecuted to prosecute an offense that the attorney general is authorized to prosecute under Section 273.021 or to assist the attorney general in the prosecution.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Sec. 273.023. SUBPOENA. (a) A subpoena or subpoena duces tecum issued in connection with a prosecution under this subchapter is effective if served anywhere in this state.

(b) A witness may not be punished for failure to comply with a subpoena issued under this subchapter unless the proper fees are tendered to the witness as required by statute or court rule.

(c) The attorney general may direct the Department of Public Safety to serve a subpoena under this subchapter.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Sec. 273.024. VENUE. An offense under this subchapter may be prosecuted in the county in which the offense was committed or an adjoining county. If the offense is committed in connection with a statewide election, the offense may be prosecuted in the county in which the offense was committed, an adjoining county, or Travis County.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

SUBCHAPTER C. EXAMINATION OF BALLOTS BY GRAND JURY

Sec. 273.041. REQUEST TO EXAMINE BALLOTS. In the investigation of criminal conduct in connection with an election, a grand jury, on finding probable cause to believe an offense was committed, may request a district judge of the county served by the grand jury to order an examination of the voted ballots in the election.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., ch. 1078, Sec. 22, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 1315, Sec. 56, eff. Jan. 1, 2004.

Sec. 273.042. ORDER BY DISTRICT JUDGE. On request of a grand jury for an examination of voted ballots, a district judge may order the custodian of the ballots and the custodian of the keys to the ballot boxes to deliver the ballot boxes and the keys to the grand jury.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., ch. 1078, Sec. 22, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 1315, Sec. 56, eff. Jan. 1, 2004.

Sec. 273.043. CONDUCT OF EXAMINATION. The examination of ballots under this subchapter shall be conducted in secret before the grand jury.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., ch. 1078, Sec. 22, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 1315, Sec. 56, eff. Jan. 1, 2004.

SUBCHAPTER D. MANDAMUS BY APPELLATE COURT

Sec. 273.061. JURISDICTION. (a) The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

(b) The court of criminal appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the provision, sequestration, transfer, or impoundment of evidence in or records relating to a criminal investigation conducted under this code or conducted in connection with the conduct of an election or political party convention. If a writ of mandamus is issued under this subsection, it shall include an order requiring the provision, sequestration, transfer, or impoundment of the evidence or record.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.
Amended by:

Acts 2021, 87th Leg., 2nd C.S., Ch. 1 (S.B. 1), Sec. 8.04, eff. December 2, 2021.

Sec. 273.062. PROCEEDING TO OBTAIN WRIT. A proceeding to obtain a writ of mandamus under this subchapter shall be conducted in accordance with the rules pertaining to original proceedings of the court in which the petition is filed.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Sec. 273.063. VENUE IN COURT OF APPEALS. (a) A petition to a court of appeals for a writ of mandamus under this subchapter must be filed with the court specified by this section.

(b) A petition pertaining to an election must be filed with the court of the court of appeals district in which:

(1) the respondent resides, or in which one of them resides if there is more than one respondent, if the election is statewide; or

(2) the territory covered by the election is wholly or partly situated, if the election is not statewide.

(c) A petition pertaining to a political party convention must be filed with the court of the court of appeals district in which:

(1) the respondent resides, or in which one of them resides if there is more than one respondent, for a state convention;

(2) the territory represented by the convention delegates is wholly or partly situated, for a district convention; or

(3) the precinct or county is situated, for a precinct or county convention.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1987, 70th Leg., ch. 54, Sec. 15(c), eff. Sept. 1, 1987.

SUBCHAPTER E. INJUNCTION

Sec. 273.081. INJUNCTION. A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

EXHIBIT 6

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Bee | Melva Kay Ponce | Illegal Voting | 2004 General Election | B-05-2101-0-CR-B | 1 count illegal voting - voter impersonation | 1 | 07/26/05 | EC 64.012 | Pled guilty to 1 count attempted illegal voting. 2 years deferred adjudication, $1500 fine w/$500 probated |
| Hardeman | Johnny Wayne Akers | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Possession of an official ballot by another | 2004 Primary Election | 013449 | 6 counts possession of official ballot or carrier envelope of another | 6 | 11/04/05 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another. 2 years probation, $2000 fine |
| Nueces | Virginia Ramos Garza | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9806-4 | 4 counts possessing an official ballot or carrier envelope of another | 4 | 03/22/06 | EC 86.006 | 1 year pre-trial diversion, 12 months community supervision |
| Nueces | Elida Garza Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 06-CR-9805-4 | 1 count possessing an official ballot or carrier envelope of another | 1 | 03/22/06 | EC 86.006 | 1 year pre-trial diversion, 12 months community supervision |
| Nueces | Isabel Luz Rios Gonzalez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9808-3 | 2 counts possessing an official ballot or carrier envelope of another | 2 | 03/22/06 | EC 86.006 | Pled nolo contendere to 2 counts of possessing an official ballot or carrier envelope of another. 1 year deferred adjudication, $500 fine, 12 months community supervision |
| Nueces | Josefina Marinas Suarez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Method of returning marked ballot, unlawful assistance, assisting voter | 2005 School District Election | 05-CR-9807-1 | 1 count illegally possessing an official carrier envelope of another | 1 | 05/04/06 | EC 86.006 | Pled guilty to 1 count of illegally possessing an official carrier envelope of another. 1 year deferred adjudication, $500 fine, 12 months community supervision |
| Reeves | Trine Villalobos | Vote Harvesting/Mail Ballot Fraud - Method of returning marked ballot | 2004 Primary Election | 25,185 | 4 counts possession of an official ballot or official carrier envelope of another | 4 | 06/27/06 | EC 86.006 | Found guilty by jury of 4 counts of possession of an official ballot or official carrier envelope of another. 10 days jail / probated for 6 months |
| Bowie | Willie Howard Ray | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M1309-CCL | 7 counts possessing an official ballot or carrier envelope of another | 7 | 07/17/06 | EC 86.006 | Pled guilty to possession of an official ballot or official carrier envelope of another. 8 months deferred adjudication, $200 fine. Original indictment dismissed. |
| Bowie | Jamillah Johnson | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M0302-CCL | 2 counts possessing an official ballot or carrier envelope of another | 2 | 07/17/06 | EC 86.006 | 6 months deferred adjudication, $200 fine |
| Bowie | Melinda Hunter | Unlawfully obstructing watcher, unlawfully witnessing application for more than one application, unlawful assistance, security of ballots, ballot boxes and envelopes | 2004 Primary Election | 06M0301-CCL | 7 counts possessing an official ballot or carrier envelope of another | 7 | 07/17/06 | EC 86.006 | 6 months pre-trial diversion |
| Nueces | Maria Dora Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal Voting - Unlawful assistance, unlawfully influencing voter | 2006 Primary Election | 06-CR-2166-B | 2 counts illegal voting-(4) marking a ballot without voter's consent | 2 | 08/04/06 | EC 64.012 | Pled guilty to 2 counts illegal voting. 2 years deferred adj probation, $750 fine |
| Reeves | Anita Baeza | Vote Harvesting/Mail Ballot Fraud - Method of returning marked ballot | 2004 Primary Election | 25,186 | 5 counts illegally possessing ballots for another person | 5 | 08/28/06 | EC 86.006 | 6 months pre-trial diversion |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Calhoun | Debra Briseno | Illegal voting, fraudulent registrations, and vote harvesting/mail ballot fraud | 2006 Primary Election | 2006-8-6465, 2006-8-6466, 2006-8-6467, 2006-8-6468, 2006-8-6455 | 3 counts illegal voting (1) ineligible voter non-citizen, 1 count unlawful assistance, 11 counts possessing an offical ballot or carrier envelope of another, 6 counts tampering with a governmental record, 6 counts false statement on a registration application | 27 | 06/25/07 | EC 64.012 / PC 37.10 | Jury verdict of guilty on 2 counts illegal voting, 1 count tampering with a government record. 5 years TDCJ |
| Refugio | Raymond Villarreal | Illegal Voting, Tampering | 2006 Primary Election | 2007-2-4809, 2007-2-4810 | 4 counts illegal voting, 3 count tampering with governmental record | 7 | 10/09/07 | PC 37.10 | Pled guilty to tampering with government record. 2 years TDCJ suspended for 5 years community supervision, $1,500 fine, 90 days jail, $2,090 restitution |
| Starr/ Brooks | Rosalia Lopez | Illegal voting | 2006 General Election | 07-07-09767 CR | 1 count illegal voting | | 01/24/08 | EC 64.012 | Dism'd |
| Hays | Mark Littlefield | Forgery, tampering with a government document | 2006 Special Election | 89,288 | Possession of forged instrument | 1 | 02/01/08 | PC 32.21 | 1 year pre-trial diversion, $300 donation |
| Starr/ Brooks | Jose Rene Gomez | Illegal voting | 2006 General Election | 07-05-09743 CR | 1 count illegal voting (2) voting more than once | 1 | 05/01/08 | EC 64.012 | Pled guilty to illegal voting. 2 years deferred adjudication, $300 fine, 2 years community supervision (Motion to Adjudicate) |
| Starr/ Brooks | Oscar Luis Rios | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 07-05-09741 CR | 12 counts possessing a ballot without the voter's consent | 12 | 05/01/08 | EC 86.006 | Pled guilty to 12 counts possessing a ballot without the voters's consent. 2 years deferred adjudication, $300 fine, 2 years community supervision |
| Potter | Michael C. Shumate | Unlawfully accepting campaign donations, bribery | 2008 Primary Election | 56732-B, 56733-B, 56734-B | 1 count unlawfully accepting contribution, 1 count organized criminal activity, 1 count unlawfully accepting contribution, | 3 | 06/12/08 | PC 71.02 | Jury verdict of guilty to engaging in organized criminal activity. 10 years confinement, suspended for 8 years, community supervision with 180 days jail as a condition, $5,000 fine |
| Duval/ Brooks | Lydia Molina | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09864, 11479 | 6 counts possession of official ballot or carrier envelope of another | 6 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another. 1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Maria Soriano | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09863, 11480 | 6 counts possession of official ballot or carrier envelope of another | 6 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another. 1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Elva Gutierrez Lazo | Unlawful assistance, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09865, 11482 | 3 counts possession of official ballot or carrier envelope of another | 3 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another. 1 year deferred adjudication, $300 fine, 12 months community supervision |
| Duval/ Brooks | Maria Adelina Trigo | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud, unlawful buying and selling of ballot materials | 2006 Primary Election | 08-01-09866, 11481 | 2 counts possession of official ballot or carrier envelope of another | 2 | 10/02/08 | EC 86.006 | Pled guilty to possession of official ballot or carrier envelope of another. 1 year deferred adjudication, $300 fine, 12 months community supervision |
| Goliad | Jami Parkinson Billings | Unlawfully divulged voting results prior to the closing of polls | 2008 Municipal Election | 08-8-8967 CR | 1 count unlawfully revealing information before polls close | 1 | 11/12/08 | EC 61.007 | Pled nolo contendere to 1 count unlawfully revealing information before polls close. 2 years deferred adjudication, $3,000 fine, 2 years community supervision |
| Starr/ Brooks | Guadalupe Rios | Vote Harvesting/Mail Ballot Fraud | 2008 Municipal Election | 08-08-09945 CR | 11 counts possessing a ballot without the voter's consent | 11 | 03/16/09 | EC 86.006 | Pled guilty to 11 counts possessing a ballot without the voter's consent. 2 years probated for 4 years probation, $500 fine, 60 days house arrest |
| Starr/ Brooks | Oralia Frausto | Illegal Voting/Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2006 Primary Election | 07-05-09738 CR | 15 counts of possessing a ballot without the voter's consent | 15 | 03/26/09 | EC 86.006 | 1 year pre-trial diversion |
| Starr/ Brooks | Maria Gonzalez | Illegal Voting/Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2006 Primary Election | 07-05-09742 CR | 5 counts of possessing a ballot without the voter's consent | 5 | 03/26/09 | EC 86.006 | 1 year pre-trial diversion |
| Aransas/ Travis | Gallaher, Todd | Misrepresentation of identity - intent to manipulate election or injure candidate | 2008 Primary Election | CD8999934 | Misrepresentation of identity | 1 | 05/21/09 | E.C. 255.005 | Pre-trial diversion for 1 year, 60 hours of community service, completed early |
| Hidalgo | Paulino Nilo | Illegal Voting - Felon | 2008 Municipal Election | CR-2622-09-F | 1 count of illegal voting (1) ineligible voter felon | 1 | 09/29/09 | E.C. 64.012 | Pled guilty for 5 years TDCJ, probated for 5 years of community supervision, 1 day in jail, $500 fine |
| Hill | Leland Mac Coffman | Divulged election results prior to the closing of polls on election day, made false report to peace officer about divulging results | 2007 School District and Municipal Election | M0593-09 | 3 counts false report to peace officer | 3 | 10/14/09 | PC 37.08 | Pled guilty to 3 counts of false report to a peace officer. 2 years probation, $2000 fine, 90 days in jail, probated |

STATE087324

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|
| Harris | Jack Carol Crowder | Illegal Voting - Impersonation of deceased voter | 2008 Primary Election | 1215818 | 1 count illegal voting-(5) voter impersonation at polling place | 1 | 10/06/09 | EC 64.012 | Pled guilty to 1 count fraudulent use of identifying information, 1 year deferred adjudication, $200 fine |
| Starr/Brooks | Raul Reyna | Illegal Voting - Felon | 2007 Municipal and School Election | 09-04-09980 CR | 2 counts illegal voting-(1) ineligible voter felon | 2 | 11/05/09 | EC 64.012 | Pled guilty to illegal voting, 2 years TDCJ, $500 fine |
| Starr/Brooks | Cynthia Pena | Illegal Voting - Felon | 2007 Municipal and School Election | 09-04-09981 CR | 2 counts illegal voting-(1) ineligible voter felon | 2 | 11/05/09 | EC 64.012 | Pled guilty to illegal voting, 10 years TDCJ-suspended, 4 years community supervision, $500 fine |
| Starr/Brooks | Elizabeth Martinez | Illegal Voting - Felon | 2007 Municipal Election | 09-04-09982 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 11/05/09 | EC 64.012 | Pled guilty to 1 count of illegal voting, 5 years TDCJ |
| Parmer | Drew Nixon | Official oppression; voting | 2006 Special Election | 2007-C-8193 | 2 counts of official oppression | 2 | 01/28/10 | PC 39.03 | Dismissed Indictment. Defense motion for collateral estoppel granted. |
| Dimmit/ LaSalle | Maria Mendoza Garcia | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 08-11-00052 CRL | 7 counts knowingly provide false information on an application for an early voting ballot | 7 | 04/15/10 | EC 84.0041 | 12 months pre-trial diversion, $60 supervision fee, 80 hours of community service |
| Dimmit/ LaSalle | Estela Cruz Saenz | Vote Harvesting/Mail Ballot Fraud | 2006 Primary Election | 08-12-00063 CRL | 7 counts knowingly provide false information on an application for an early voting ballot | 7 | 04/15/10 | EC 84.0041 | 6 months pre-trial diversion, $60 supervision fee |
| Jim Wells/ Live Oak | Zaida Cantu Bueno | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20068 | 4 counts of method of returned marked ballot (less than 10) | 4 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended), $200 fine, 40 hours of community service |
| Jim Wells/ Live Oak | Norma Lopez | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20067 | 6 counts of method of returned marked ballot (less than 10) | 6 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended), $200 fine, 40 hours of community service |
| Jim Wells/ Live Oak | Cynthia Lopez | Vote Harvesting/Mail Ballot Fraud | 2008 Primary Election | 20066 | 3 counts of method of returned marked ballot (less than 10) | 3 | 06/24/10 | EC 86.006 | Pled guilty to unlawful possession of ballot, 12 months probation, 180 days in jail (suspended) $200 fine, 40 hours of community service. |
| Hidalgo/ Brooks | Ruben Trevino Garcia | Illegal voting - felon, bribery, and official misconduct | 2006 School District Election | 09-09-10116 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 06/17/10 | EC 64.012 | Pled guilty, 8 years TDCJ-ID suspended for 8 years community supervision, $500 fine |
| Starr | Raul Pena, Jr. | Vote Harvesting/Mail Ballot Fraud - Unlawful possession of 56 mail-in ballots by candidate | 2010 Primary Election | CR-10-371 | 1 count of carrier envelope action by another person other than voter | 1 | 06/22/10 | EC 86.0051 | Pled guilty, 6 months community supervision, 180 days in jail (suspended), $500 fine |
| Starr/Brooks | Mary Lou Garza | Vote Harvesting/Mail Ballot Fraud - Providing fraudulent registration cards to vote harvesters | 2006 Primary Election | 07-07-09768 CR | 1 count of unlawful delivery of a certificate | 1 | 09/15/10 | EC 13.145 | Jury trial resulting in hung jury, dsm'd |
| Hidalgo/ Brooks | Mario Manuel Medrano | Illegal voting - felon, bribery, and official misconduct | 2008 School District Election | 09-09-10117 CR | 1 count illegal voting-(1) ineligible voter felon | 1 | 11/10/10 | EC 64.012 | Pled guilty, 2 years TDCJ-ID |
| Duval/Live Oak | Christine Lichtenberger | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20080, 20081 | 1 count of unlawful assistance, 1 count of method of returned marked ballot | 2 | 12/14/10 | EC 64.036, 86.006 | Pled guilty to Possession of a Ballot and Unlawful Assistance, and received 1 year deferred adjudication, and paid a $1000 fine and court costs |
| Duval/Live Oak | Andrea Campos Bierstedt | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20082, 20083 | 1 count of unlawful assistance, 1 count of method of returned marked ballot | 2 | 12/14/10 | EC 64.036, 86.006 | Pre-trial diversion 6 months, $3,500 donation to the county |
| Duval/Live Oak | Alicia Pena Perez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2008 Primary Election | 20084, 20085, 20086, 20087, 20088, 20089, 20090, 20091 | 4 counts of unlawful assistance, 4 counts of method of returned marked ballot | 8 | 12/14/10 | EC 64.036, 86.006 | Pled guilty to 4 counts of Possession of a Ballot and 4 counts of Unlawful Assistance, and received 1 year jail, probated for 12 months, and paid a $1000 fine and court costs |
| Smith | Ronald Marsh | Illegal Voting | 2009 Municipal Election - Local Option | 241-1682-11 | 1 count of Illegal Voting-(1) ineligible voter | 1 | 03/23/11 | E.C. 64.012 | Pled guilty, received four years of deferred adjudication, a $1,000 fine, and 100 hours of community service hours |
| Smith | Ann Marie Marsh | Illegal Voting | 2009 Municipal Election - Local Option | 241-1681-11 | 1 count of Illegal Voting-(1) ineligible voter | | 03/23/11 | E.C. 64.012 | Plea bargain in 241-1682-11 for guilty plea to def'd adj resulting in dismissal. |
| Bexar | Ester Sandoval Martinez-Moreno | Unlawfully accepting a voter, unlawfully permitting the deposit of a ballot, and illegal voting | 2010 Primary Election | 2010-W-0375 | 1 count of tampering of a governmental record | 1 | 03/23/11 | P.C. 37.10 | Pled guilty to one count of misdemeanor Tampering, 1 year probation |
| Dallas/ Rockwall | Delores McMillan | Illegal Voting - Voter Impersonation | 2010 Primary Election | 1108201 1CCL-A | 2 counts of attempted illegal voting-(3) voter impersonation at polling place | 2 | 05/16/11 | E.C. 64.012 | Pled guilty to attempted illegal voting for impersonating a voter, 1 year probation, paid $227 court costs. |
| Duval/ Jim Wells | Regino Cantu Salinas | Illegal Voting - Felon | 2008 Primary Election | 11-02-13251-CR | 1 count of illegal voting-(1) ineligible voter felon | 1 | 08/31/11 | E.C. 64.012 | Pled guilty for 2 years probation, 90 days in jail, and a $2000 fine |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo/ Brooks | Reyna Almanza | Illegal voting | 2009 School District Election | 10-03-10342-CR | 1 count of illegal voting- (3) voter impersonation | 1 | 12/01/11 | E.C. 64.012 | Convicted by a jury on 11/16/11, sentenced to 2 years TCDJ, suspended for 5 years on probation, 90 days in County Jail as a condition of probation, $313 court costs |
| Bexar | Mary Comparin | Voter impersonation (voting for 20 years using the identity of a deceased voter still on voter rolls, while voting herself by mail ballot), benefits fraud (receiving SS benefits for herself and a deceased individual) | 2008 General Election | 2011-CR-7939 | 2 counts of illegal voting - voter impersonation | 2 | | E.C. 64.012 (a) 3 | Statute of limitations tolled by filing of indictment on 9/18/11. Defendant declared incompetent to stand trial. Cause 2011-CR-7939 closed, case left pending. |
| Brazos | Shenk, Christine Thomas | Unlawfully Influencing Voter | 2010 General Election | 11-05550-CRM-CCL1 | 1 count of Unlawful Assistance | 1 | 02/06/12 | E.C. 64.036 | Pled guilty, 1 year deferred adjudication community supervision, 20 hours community service, $332.00 court costs, $500.00 fine, prohibited from offering assistance in the election process to anyone |
| Dallas/ Rockwall | Name Removed | Aggravated perjury in connection with Illegal Voting | 2010 Primary Election | | 4 counts of aggravated perjury | 4 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 1 count of illegal voting - ineligible voter | 1 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Name Removed | Illegal Voting | 2010 Primary Election | | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | Expunged |
| Dallas/ Rockwall | Carlos Medrano | Illegal Voting | 2010 Primary Election | 2-11-418 | 2 counts of illegal voting - ineligible voter | 2 | 02/27/12 | E.C. 64.012 | Elected Justice of the Peace convicted at bench trial of illegal voting - ineligible voter, 5 years TDCJ, probated for 5 years, 180 days in jail as a condition of probation, $2500 fine, removed from office |
| Dallas/ Rockwall | Robert Edward Medrano | Illegal Voting | 2010 Primary Election | 2-11-420 | 3 counts of illegal voting - ineligible voter | 3 | 02/16/12 | E.C. 64.012 | In exchange for acknowledgement of offense and cooperating testimony at trial, charges dism'd |
| Dallas/ Rockwall | Rolando Medrano | Illegal Voting, aggravated perjury | 2010 Primary Election | 2-11-416 | 6 counts of aggravated perjury | 6 | 02/29/12 | P.C. 37.03 | Pled guilty to two counts of aggravated perjury, 4 years TDCJ probated for 4 years community supervision, $5,000 fine, $219 Court Coust., 45 days in jail as a condition of probation, work release day for day |
| Dallas/ Rockwall | Raquel Medrano | Illegal Voting, aggravated perjury | 2010 Primary Election | 2-11-108, 2-11-414 | 1 count of illegal voting - ineligible voter, 5 counts of aggravated perjury | 6 | 02/29/12 | E.C. 64.012, P.C. 37.03 | Dism'd upon conviction of defendant in 2-11-418 |
| Dallas/ Rockwall | Gilda Hernandez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud - Influencing Voter | 2010 Primary Election | 11082011CCL-8 | 4 counts of possession of an official ballot or carrier envelope, 3 counts of unlawful assistance (influencing voter), 2 counts failure to provide identifying info while assisting voter | 9 | 04/05/12 | E.C. 86.006, 64.036, 86.010 | Pled guilty to two counts of Unlawful Assistance, two counts of Possession of a Ballot, and two counts of Failure to Provide Identifying Information While Assisting a Voter, and received one year of deferred adjudication and a $250. |
| Hidalgo/ Brooks | Jose De Jesus Cano | Illegal voting - felon, bribery | 2008 School District Election | 09-09-18115 CR | 1 count Illegal voting-(1) ineligible voter felon | 1 | 06/14/12 | EC 64.012 | Pled guilty, received 10 years TDCJ, probated for 10 years, $1,000 fine, and $313 court costs |
| Henderson/ Smith | Frank Ross | Illegal Voting | 2009 Municipal Election | 241-1683-11 | 1 count of Illegal Voting- (1) ineligible voter | 1 | 06/19/12 | E.C. 64.012 | Dism'd |
| Hidalgo* | Angel Trujillo | Illegal Voting - Felon | 2010 Municipal and School District Election | CR-1914-12-E | 2 counts illegal voting by ineligible voter | 2 | 06/08/12 | E.C. 64.012 | Pled guilty to illegal voting (1 ct), sentenced to 3 years TDCJ-probated for community supervision, $750 fine |
| Hidalgo* | Baudelia Zapata Rojas | Unlawfully revealing information before the polls close | 2008 Municipal Election | 12-03529 | Unlawfully Revealing Information before polls close | | 12/27/12 | E.C 61.007 | No Bill |
| Hidalgo* | Sylvia Salas Vela | Illegal Voting | 2008 Municipal Election | 12-03519 | Illegal Voting | | 12/27/12 | E.C. 64.012 | No Bill |
| Hidalgo* | Salvador Vela | Mail in ballot violation | 2008 Municipal Election | 12-03528 | Method of returning marked ballot | | 12/27/12 | E.C 86.006 | No Bill |
| Hidalgo* | Fermina Castillo | Illegal Voting - Felon | 2010 General Election | CR-1913-12-I | 1 count of Illegal Voting- (1) ineligible voter felon | 1 | 01/17/13 | E.C. 64.012 | Pled guilty to illegal voting, sentenced to 2 years deferred with community supervision and $100 fine. |
| Cameron | Margarita Rangel Ozuna | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud: Influencing Voter | 2010 Primary Election | 2013-DCR-00484 | 1 count Unlawfully Assisting Voter | 1 | 05/30/13 | E.C. 86.010 | Pled no contest to Unlawfully Assisting Voter (Class A Misdemeanor) 12 month county jail, probated for 12 month community service. $250.00 fine. |

STATE087326

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo/ Brooks | Lorenzo Antonio Almanza | Illegal Voting - Voter Impersonation | 2009 School District Election | 10-03-10343-CR | 2 counts of illegal voting-(3) voter impersonation at polling place | 2 | 06/24/13 | E.C. 64.012 | Pled guilty to Illegal Voting - voter impersonation, Illegal Voting - voting twice, sentenced to 2 years TDCJ on both counts, run concurrently, $313 court costs |
| Montgomery | James Alan Jenkins | Illegal Voting - Residency | 2010 Special Election | 12-03-025479-CR | 1 count of illegal voting - ineligible voter | 1 | 06/28/13 | E.C 64.012 | Convicted during a jury trial, 1 count of illegal voting (1) ineligible voter, 3 years TDCJ, $10,000 fine and $364.00 in court costs reversed/remanded by 14th COA, pending new trial |
| Montgomery | Peter Joseph Goaddertz | False statement on application, illegal voting | 2010 Special Election | 12-03-02581-CR | 1 count of illegal voting - ineligible voter | 1 | 07/12/13 | E.C. 64.012 | 1 year Probation - Pre-trial Diversion Program |
| Montgomery | Adrian Heath | False statement on application, illegal voting | 2010 Special Election | 12-03-025480-CR | 1 count of illegal voting - ineligible voter | 1 | 10/31/13 | E.C. 64.012 | Convicted during a jury trial, 1 count of illegal voting (1) ineligible voter. Sentenced to 3 years TDCJ and $10,000 fine, $334.00 in court costs. |
| Montgomery | Sybil Lee Doyle | False statement on application, illegal voting | 2010 Special Election | 12-03-02582-CR | 1 count of illegal voting - ineligible voter | 1 | 04/02/14 | E.C. 64.012 | Convicted at jury trial, 1 count of illegal voting (1) ineligible voter. Sentenced by deferred agreement, 3 years TDCJ, probated for 5 years, $5,000 fine and $359.00 in court costs. |
| Montgomery | Roberta Margaret Cook | False statement on application, illegal voting | 2010 Special Election | 12-03-02565-CR | 1 count of illegal voting - ineligible voter | 1 | 04/02/14 | E.C 64.012 | Convicted at bench trial, 1 count of illegal voting (1) ineligible voter. Sentenced by deferred agreement, 3 years TDCJ, probated for 5 years, $5000 fine |
| Cameron* | Garza, Israel | Illegal Voting - Felon | 2010 Municipal Election | 2013-DCR-00657 | 1 count of illegal voting - ineligible voter (felon) | 1 | 04/10/13 | E.C 64.012 | Pled guilty to illegal voting attempted (felon voter) Class A misdemeanor. Sentenced to 10 months confinement, 2 years probation, fine $2500. |
| Montgomery | Name Removed | False statement on application, illegal voting | 2010 Special Election | 12-03-xxxxx-CR | 1 count of illegal voting - ineligible voter | 1 | 05/15/14 | E.C. 64.012 | 1 year Deferred Prosecution Probation. Eligible for expunction after serving 12 mos probation. |
| Montgomery | William Marvin Berntsen | False statement on application, illegal voting | 2010 Special Election | 12-03-02586-CR | 1 count of illegal voting - ineligible voter | 1 | 10/23/14 | E.C 64.012 | 3 years Deferred Adjudication; $2,500.00 fine, $334.00 in court costs |
| Cameron | Tomasa Chavez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02977-A/14-CCR-02983-A/14-CCR-02984-A/14-CCR-02985-A/14-CCR-02987-A/14-CCR-02989-A/14-CCR-02991-A/14-CCR-02993-A/14-CCR-02995-A/14-CCR-02996-A/14-CCR-02997-A/14-CCR-02999-A/14-CCR-03003-A | 3 counts - Carrier Envelope Action: Person Other than voter (Misd B), 3 counts - Assisting Voter Violation (Misd A), 3 counts - Method of Returning Marked Ballot (Misd B), 4 count - Unlawful Assistance to Voter (Misd A) | 13 | 01/22/15 | E.C 86.0051 / E.C 86.010 / E.C 86.006 / E.C 64.036 | Pled guilty to unlawful assistance of voter, 6 month confinement, probated for 1 year of community supervison, fine $250. |
| Jim Wells | Benito Aranda Jr. | Illegal Voting - Felon | 2012 Primary Election | 14-07-13904-CR | Indicted 1 count of illegal voting(1) ineligible voter felon, 2nd Felony | 1 | 02/18/15 | E.C 64.012 | Pled guilty to illegal voting (felon) Sentenced to 10 years confinment, probated for 10 years of community supervision |
| Jim Wells | Mark Homero Almeraz | Illegal Voting - Felon | 2012 Primary Election | 14-07-13903-CR | Indicted 1 count of illegal voting(1) ineligible voter felon, 2nd Felony | 1 | 02/18/15 | E.C 64.012 | Pled guilty to illegal voting (felon) Sentenced to 10 years confinment, probated for 10 years of community supervision |
| Hidalgo | Jorge Luis Martinez | Unlawfully rejecting voters, illegal voting, and unlawfully accepting voters | 2008 Municipal Election | CR-2623-09-B | 12 counts of illegal voting | 12 | 02/25/15 | E.C.64.012 | Pled guilty to counts 1-6 for attempted illegal Voting (Class A). Three years community supervision. Counts 7-12 were dismissed |
| Cameron | Facunda Garcia | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02980-A | 1 Count - Unlawful Assistance to Voter (Misd. A) | 1 | 03/19/15 | E.C 64.036 | Pled guilty to unlawful assistance of a voter. Sentenced to 3 day confinement in county jail and $250.00 fine. |
| Cameron | Sernica Garcia | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02979-A/14-CCR-03010-A/14-CCR-03011-A | 1 count - Carrier Envelope Action: Person Other than voter (Misd B), 1 Count - Method of Returning Marked Ballot (Misd B), 1 count - Unlawful Assistance to Voter (Misd A) | 3 | 04/08/15 | E.C 86.0051 / E.C 86.006 / E.C 64.036 | 1 year probation under diversion program (Deferred Pros.) for offense of unlawfully assisting voter. |
| Cameron | Rafael Angel Elizondo | Vote Harvesting/Mail Ballot Fraud - Method of Returning Marked Ballot | 2012 Primary Election Runoff | 2015-DCR-00269-D | 1 Count -Method of Returing Marked Ballot more than 10 but less than 20 offical ballots/carrier envelopes. ( 3rd Degree Felony) | 1 | 06/12/15 | E.C. 86.006 | Pled no contest to Method of Returning Marked Ballot =10<20, (Class A). Sentenced to three days in county jail, and taken into custody. |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cameron | Jose Angel Garcia | Vote Harvesting/Mail Ballot Fraud - Method of Returning Marked Ballot | 2012 Primary Election Runoff | 2015-DCR-00270-D | 5 Counts -Method of Returning Marked Ballot fewer than 10 offical ballots/carrier envelopes (SJF) | 5 | 05/12/15 | E.C. 86.006 | Pled guilty to Method of Returning Marked Ballot <10 (Class B). Sentenced to two days county jail. |
| Cameron | Margarita Ozuna | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02981-B/14-CCR-02986-B/14-CCR-02988-B/14-CCR-02990-B/14-CCR-02992-B/14-CCR-02994-B | 3 counts - Carrier Envelope Action: Person Other than voter (Misd B), 3 counts - Method of Returning Marked Ballot (Misd B) | 6 | 08/10/15 | E.C 86.0051 / E.C 86.006 | Pled guilty to Carrier Envelope Action by Person Other than Voter. Sentenced to 15 days county jail and $250.00 fine/court cost. |
| Cameron | Vicenta Verino | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02978-C/14-CCR-02998-C/14-CCR-03000-C/14-CCR-03001-C/14-CCR-03002-C/14-CCR-03004-C/14-CCR-03005-C/14-CCR-03006-C/14-CCR-03007-C/14-CCR-03008-C | 1 count - Unlawful Assistance to Voter (Misd A), 1 count - Assisting Voter Violation (Misd. A), 4 counts - Carrier Envelope Action: Person Other than voter (Misd. B), 4 counts - Method of Returning Marked Ballot (Misd. B) | 10 | 08/19/15 | E.C 64.036/ E.C 86.010/ E.C 86.0051/ E.C 86.006 | Pled guilty to Class A misdemeanor Unlawful Assistance of a Voter. 12 months of deferred adjudication, $250 fine, and refraining from handling mail ballots and assisting voters. |
| Harris' | Avery Ayers | Forgery/Tampering with petition for candidacy - forged signatures | 2014 General Election | 1476757 | 1 Count of Tampering w / a Governmental Record (SJF) | 1 | 10/06/15 | P.C. 32.21 | Waived a jury trial and pled guilty to one count of 3rd degree felony Forgery. Court convicted defendant and sentenced him to five (5) years TDCJ-Institutional Division. No fine, court costs or restitution. |
| Cameron | Sarah Perales | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2012 Primary Election Runoff | 14-CCR-02982-C 14-CCR-03009-C | 1 Count - Carrier Envelope Action: Person Other than voter (Misd. B), 1 Count - Method of Returning Marked Ballot (Misd. B) | 2 | 10/29/15 | E.C. 86.006 | Pled guilty to Class B misdemeanor Method of Returning Ballot. Court sentenced her to one year of community supervision-deferred adjudication, plus a fine of $150 and court costs. Defendant was ordered to refrain from assisting voters or other politiquera activity. |
| Edwards | Michael Scotch | Illegal voting (residency) | 2013 Municipal Election 2014 Primary Election | 6053 | 1 Count Illegal Voting (Municipal) 2 Counts of Tamper w/ a Gov't rec 1 Count of Illegal Voting (Primary) | 4 | 12/07/15 | E.C 64.012 | Pled no contest to Count 1 of the Indictment - Illegal voting (ineligible voter-non resident) in a plea bargain agreement. State to dismiss counts 2, 3 & 4. Sentenced to 24 months of deferred adjudication community supervision, $500 fine |
| Edwards | Tamara Scotch | Illegal voting (residency) | 2013 Municipal Election 2014 Primary Election | 6054 | 1 Count Illegal Voting (Municipal) 2 Counts of Tamper w/ a Gov't rec 1 Count of Illegal Voting (Primary) | 4 | 12/07/15 | E.C 64.012 | Pled no contest to Count 1 of the Indictment - Illegal voting (ineligible voter-non resident) in a plea bargain agreement. State to dismiss counts 2, 3 & 4. Sentenced to 24 months of deferred adjudication community supervision, $500 fine. |
| Hidalgo | Guadalupe "Lupe" Rivera, Jr. | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08765-B, CR-15-08766-B | 1 Count Carrier Envelope Action: Person Other than Voter, 1 count Method of Returning Marked Ballot <10 | 2 | 07/11/16 | E.C. 86.0051 E.C. 86.006 | Co-defendant accepted criminal responsibility for these offenses in plea resolving causes CR-15-08767-E, CR-15-08768-E, CR-15-08769-E, CR-15-08770-E, CR-15-08771-E, CR-15-08772-E, CR-15-08773-E, CR-15-08774-E, CR-15-08775-E, CR-15-08776-E, CR-15-08777-E, CR-15-08778-E, CR-15-08779-E, CR-15-08780-E, CR-15-08781-E, and CR-15-08782-E. |
| Hidalgo | Guadalupe "Lupe" Rivera, Sr. | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08767-E CR-15-08768-E CR-15-08769-E CR-15-08770-E CR-15-08771-E CR-15-08772-E CR-15-08773-E CR-15-08774-E CR-15-08775-E CR-15-08776-E CR-15-08777-E CR-15-08778-E CR-15-08779-E CR-15-08780-E CR-15-08781-E | 1 Count Unlawful Assistance to Voter, 6 counts Carrier Envelope Action: Person Other than Voter, 6 counts Method of Returning Marked Ballot <10, 3 counts Assisting Voter Violation | 16 | 07/11/16 | E.C. 64.036 | Pled guilty to Unlawful Assistance to a Voter, Class A misdemeanor. Sentenced to 365 days in jail, probated for one year of community supervision with a $500 fine. |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Hidalgo | Graciela Sanchez | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud; Influencing Voter | 2013 Municipal Election | CR-15-08761-B CR-15-08762-B CR-15-08763-B CR-15-08764-B | 2 counts Carrier Envelope Action: Person Other than Voter, 2 counts Method of Returning Marked Ballot <10 | 4 | 07/11/16 | E.C. 86.0051 | Pled guilty to Carrier Envelope Action: Person Other than Voter, Class B misdemeanor. Pre-trial diversion for a period of two years of community supervision, pay court and probations fees, complete 24 hours of community service. Other charges dismissed |
| Dallas/ Tarrant | Rosa Maria Ortega | Illegal Voting - Non-Citizen | 2012 General Election, 2014 Primary Run-Off Election | 1434155 | 2 counts of illegal voting - ineligible voter (non citizen) | 2 | 02/09/17 | E.C. 64.012 | Convicted by jury on both counts of Illegal Voting - Non citizen. Jury sentenced her to a period of eight (8) years in the Texas Department of Criminal Justice Institutional Division on each count, sentences to run concurrently. $5,000.00 fine and $329.00 in court costs. |
| Edwards | Manuel Rodriguez III | Illegal Voting - voter impersonation, Illegal Voting - ineligible voter (felon, unregistered voter) | 2014 General Election | 1730 | 2 counts of illegal voting, ineligible voter (felon, unregistered), voted as 99-yr-old grandfather | 2 | 2/27/2017 | E.C. 64.012 (a) 1 | Convicted of illegal voting (2nd deg. felony). Sentenced to two (2) years in the Texas Department of Criminal Justice Institutional Division. |
| Edwards | Rita Ramos Johnson | Illegal Voting- ineligible voter (non-resident) | Nov 2014 general election, May 2015 RISD election, May 2015 City of Rocksprings election, March 2016 primary election, May 2016 City of Rocksprings election, Nov. 2016 general election, and May 2017 City of Rocksprings election | CX7779096408 | 7 counts of illegal voting - ineligible voter (non-resident) - 2nd degree Felony | 7 | 12/20/17 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 7 counts Illegal Voting |
| Webb | Angel Antonio De Leon, Jr. | Illegal Voting- ineligible voter (convicted felon, on paper) | Special COL Dist. 2 - 2/13/2016; Special COL Dist. 2 Runoff - 4/2/2016; Joint Primary Runoff - 5/24/2016; November 2016 General Election | CX8826260117 | 4 counts of illegal voting - ineligible voter (felon) - 2nd degree Felony | 4 | 01/29/18 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 4 counts Illegal Voting |
| Webb | Arturo Garcia, Jr. | Illegal Voting- ineligible voter (convicted felon, on paper) | Nov. 2014 general election; March 2016 Democratic primary; May 2016 Democratic runoff | CX8140980101 | 3 counts of illegal voting - ineligible voter (felon) - 2nd degree Felony | 3 | 01/29/18 | E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 3 counts Illegal Voting |
| Medina | Patricia Barton | Unlawfully Influencing Voter in Polling Place; Electioneering | Mar. 2018 Primary Election | CX4240437617 | 2 counts of unlawfully influencing voter in polling place; 1 count electioneering | 3 | 04/26/18 | E.C. 61.008; E.C. 61.003 | Prosecution Diversion Program - stipulation of guilt to 2 counts unlawfully influencing voter; 1 count electioneering |
| Hill | Aaron Torres | Unlawfully Revealing Information Before the Polls Close | 2018 Primary Runoff | CX7954393300 | 1 count unlawfully revealing information before the polls close | 1 | 05/30/18 | E.C. 61.007 | Prosecution Diversion Program - stipulation of guilt to 1 count unlawfully revealing information before the polls close |
| Dallas | Shirley Brown | Unlawfully Accepting a Voter not eligible to vote, by election judge | 2016 General Election | CX3852040670 | 3 counts unlawfully accepting a voter | 3 | 05/31/18 | E.C. 63.012 | Prosecution Diversion Program - stipulation of guilt to 3 counts unlawfully accepting a voter |
| Kenedy | Chelseida Olvera | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX3920309473 | Count 1 - illegal voting, 2nd Degree Felony; Count 2 - election fraud, Cl A; Count 3 - false statement on a registration application, Cl B | 3 | 07/02/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |
| Kenedy | Martin Olvera | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX6890196392 | Count 1 - illegal voting, 2nd Degree Felony; Count 2 - election fraud, Cl A; Count 3 - false statement on a registration application, Cl B | 3 | 06/27/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |

STATE087329

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Kenedy | Heather Lauren Miller | Illegal voting; Election Fraud; False Statement on Registration Application | Mar. 2018 Primary Election | CX4541286029 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – election fraud, Cl A; Count 3 - false statement on a registration application, Cl B | 3 | 06/05/18 | E.C. 64.012; 276.013; 13.007 | Prosecution Diversion Program - stipulation of guilt to 1 count illegal voting, 1 count election fraud, and 1 count false statement on a registration application |
| Nueces/ San Patricio | Rosita Torres Flores | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal voting | Robstown 2016 General | S-18-3065-CR; 18-CR-83358 | Count 1 – illegal voting, 2nd Degree Felony; Count 2 – method of returning marked ballot, SJF; 1 count misdemeanor unlawful assistance, Cl A | 3 | 6/12/2018 | E.C. 64.012; 86.006; 64.036 | Convicted of unlawfully assisting/influencing voter with mail ballot (E.C. 64.036), 12 months jail, probated for 18 months; $1000 fine; 10 days confinement in county jail served day for day as condition of probation |
| Frio | Consuelo Barrientos Cantu | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2016 Primary Runoff Election | CX3772923814 | 2 Counts Unlawful Assistance | 2 | 6/15/2018 | E.C. 64.036 | Prosecution Diversion Program - stipulation of guilt to 2 Counts unlawful assistance to voters with their mail ballots |
| Frio | Maria Dalcarmen Vela | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud | 2016 Primary Runoff Election | CX3772923814 | 6 Counts Unlawful Assistance | 6 | 6/15/2018 | E.C. 64.036 | Prosecution Diversion Program - stipulation of guilt to 6 Counts unlawful assistance to voters with their mail ballots |
| Starr | Miguel Moreno | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | Mar. 2016 Primary Election | CX4341681207 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/26/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Veronica Flores Vega | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX2819749616 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Abigail Estrada | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX7915417328 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Dora Barrera | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX4783488382 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Nilda Marbella Flores | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX0192300090 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/25/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Eusebio Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX6220705016 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Starr | Adelaida Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX1897927603 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Alaysa Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX9033550035 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Zaida S. Maldonado | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX9693226046 | 1 Count Fraudulent Use of Application for Ballot by Mail; 2 Counts Illegal Voting | 3 | 6/25/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 2 Counts Illegal Voting |
| Starr | Jose Guadalupe Garcia | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX0876257916 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Andrea Martinez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary; 2016 Primary Runoff Election | CX5913948503 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/25/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Rudolfo A. Trevino | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail | 2016 Primary, 2016 Primary Runoff Election | CX4183309968 | 1 Count Fraudulent Use of Application for Ballot by Mail | 1 | 6/26/2018 | E.C. 84.0041 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail |
| Starr | Raul Lozano Jr. | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX6361275996 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Starr | Deyla Maria Garcia | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 Primary; 2016 Primary Runoff Election | CX2635106999 | 1 Count Fraudulent Use of Application for Ballot by Mail; 1 Count Illegal Voting | 2 | 6/26/2018 | E.C. 84.0041; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count fraudulent use of application for ballot by mail and 1 Count Illegal Voting |
| Kenedy | Leilah Saenz | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX9041380477 | 1 Count False Statement on Application, 1 Count Illegal Voting | 2 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 1 Count Illegal Voting |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|
| Kenedy | Juan Vela | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX2940077582 | 1 Count False Statement on Application; 3 Counts Illegal Voting | 4 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 3 Counts Illegal Voting |
| Kenedy | Leticia Munoz Vela | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2018 March Democratic Primary | CX2769204507 | 1 Count False Statement on Application; 5 Counts Illegal Voting | 6 | 7/17/2018 | E.C. 13.007; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False Statement on Application and 5 Counts Illegal Voting |
| Starr | Guadalupe Garza | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX8930944534 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting | 6 | 7/25/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting |
| Starr | Brandon Lee Garza | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX8232893804 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting | 6 | 7/25/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 1 Count Illegal Voting |
| Nueces/ San Patricio | Cynthia Key Gonzales | Vote Harvesting/Mail Ballot Fraud/Assistance Fraud/Illegal voting | Robstown 2016 Primary Runoff | 18-CR-83109; 18-CR-83110; 18-CR-83111 | Count 1 – carrier envelope action, SJF; Count 2 – method of returning marked ballot, SJF; Count 3 – assisting voter, SJF; and Count 4 – illegal voting, 2nd Degree Felony | 4 | 8/14/2018 | E.C. 86.0051; 86.006; 64.036; 64.012 | Convicted of unlawful possession of a ballot (86.006); carrier envelope action other than voter (86.0051); and unlawfully assisting voter with a mail ballot (86.010); sentenced to 180 days jail probated for 540 days, 180 days probated for 540 days, and 365 days probated for 540 days and a $500 fine, respectively. Sentenced to served 5 days county jail, day for day, as condition of probation. |
| Harris/ Montgomery | Laura Janeth Garza AKA Angie Yadira Zamora | Illegal Voting (non-citizen); Impersonation of a U.S. Citizen | 2016 General Election | 18-05-06033; 18-05-06032 | Cause 1 - illegal voting - voter impersonation; Cause 2 - Illegal voting (non-citizen) | 2 | 9/13/2018 | E.C. 64.012 | Convicted of two counts of Illegal Voting for impersonating a voter and voting when she was not eligible to vote (noncitizen); 10 years TDCJ probated for 10 years, with 180 days in jail as condition, $10,000 fine probated for 10 years. |
| Starr | Artemio Lopez | Vote Harvesting/Mail Ballot Fraud - Fraudulent Use of Application for Ballot by Mail; Illegal Voting | 2016 March Democratic Primary | CX8019112853 | 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 3 Counts Illegal Voting | 8 | 9/17/2018 | E.C. 13.007; E.C. 84.0041; P.C. 37.10; E.C. 64.012 | Prosecution Diversion Program - stipulation of guilt to 1 Count False statement on application; 2 Counts False information on application for ballot by mail; 2 Counts Tampering with a governmental record; 2 Counts Illegal Voting |
| Tarrant | Charles Jackson | False Statement on Application Mail Ballot Fraud/Vote Harvesting - Forged Voter's Signature | 2016 Democratic Primary Election | 1565412 | False Statement on Mail Ballot Application | 1 | 4/6/2019 | E.C. 84.0041 | Convicted of False Statement on Mail Ballot Application; sentenced to 10 days county jail. |
| Polk | William Williams | Tampering with a Governmental Record; Illegal Voting (voting ballot of another); Election Fraud - Mail Ballot | 2018 General Election | CX1976897707 | 2 Counts - Tampering with a Governmental Record; 2 Counts - Illegal Voting (voting mail ballot of another); 2 Counts - Election Fraud | 6 | 8/5/2019 | P.C. 37.10; E.C. 64.012; E.C. 276.013 | Prosecution Diversion Program - stipulation of guilt to 2 Counts Tampering with a Governmental Record; 2 Counts Illegal Voting (voting ballot of another); 2 Counts Election Fraud |
| Starr/Hidalgo | Servicia Garza | Illegal Voting/Mail Ballot Fraud - Impersonation of deceased voter, Mail ballot application fraud, Mail ballot cast for voter who was dead 9 years | 2016 Democratic Primary Election | CR-0315-19-J | Counts 1-2 - Illegal voting; Count 3 - False Statement on Mail Ballot Application | 3 | 1/24/2019 | E.C. 64.012; E.C. 84.0041 | Dism'd for lack of evidence and in exchange for Defendant's cooperation with the State and an ongoing investigation by the Texas Rangers. |
| Harris | John Aleup | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/17/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Harris | Betty Anderson | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2019 Special Election; 2020 Primary | CX8794422517 | 1 Count - False Statement on Application, 3 Counts Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 6 | 8/14/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 3 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | James Core | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/18/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application, 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Michael Cesafio | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/12/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application, 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX87944225-- | 1 Count - False Statement on Application, 1 Count Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/17/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count1 Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Brian Hoffner | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2018 Primary Runoff | CX8794422517 | 1 Count - False Statement on Application, 2 Counts Illegal Voting; 1 Count Tampering with a Government Record, 1 Count Election Fraud | 5 | 8/14/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Micaela Ladet | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/18/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | David Levy | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/14/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Kyle Levy | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/14/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application, 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2019 Special Election | | 1 Count - False Statement on Application, 2 Counts Illegal Voting, 1 Count Tampering with a Government Record, 2 Counts Election Fraud | 6 | 8/11/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 2 Counts Election Fraud |
| Harris | Barnett Pate | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/18/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | John Scott | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/19/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Harris | Aaron Sprecher | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/20/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Justin Thomas | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/13/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Name Removed | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 8/21/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Judith Zimmerman | False Statement on Registration Application; Tampering with Government Record; Election Fraud - False Registration Address | Voter Registration | CX8794422517 | 1 Count - False Statement on Application, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 3 | 9/2/2020 | E.C. 13.007; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Antonia McClammy | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election; 2019 Special Election | CX8794422517 | 1 Count - False Statement on Application, 2 Counts Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 5 | 8/21/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Harris | Luis Cruz | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud - False Registration Address | 2018 General Election | CX8794422517 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 8/20/2020 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Medina | A. Hitzfelder | Unlawfully Assisting Voters with Mail Ballot Applications | 2020 Presidential Election | CX8093477769 | 10 Counts Unlawfully Assisting Applicant | 10 | 05/19/21 | E.C. 84.003 | Prosecution Diversion Program - stipulation to the commission of 10 Counts Unlawfully Assisting Applicant |
| Lubbock | Christopher Dorsayre | False Statement on Registration Application; Illegal Voting; Tampering with Government Record; Election Fraud | 2018 General Election | CX8764358848 | 1 Count - False Statement on Application, 1 Count Illegal Voting, 1 Count Tampering with a Government Record, 1 Count Election Fraud | 4 | 09/02/21 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 1 Count Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Guadalupe | Gregory Gilcrease | Illegal Voting; Election Fraud; False Statement on Registration Application; Tampering with a Government Record | 2018 General Election; 2020 General Election | CX3419210173 | 2 Counts - Illegal Voting, 1 Count - Election Fraud, 1 Count - False Statement on Registration Application, 1 Count Tampering with a Government Record | 5 | 10/28/21 | E.C. 13.007; E.C. 64.012; P.C. 37.10; E.C. 276.013 | Prosecution Diversion Program - stipulation to the commission of 1 Count False Statement on Application; 2 Counts Illegal Voting; 1 Count Tampering with a Government Record; 1 Count Election Fraud |
| Gregg | Shannon Everette Brown | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | S0953-B | 1 count of Engaging in Organized Election Fraud (F2), 7 counts of Fraudulent Use of an Application for Ballot by Mail (F3), 2 counts of Unlawful Possession of Ballot/Ballot Envelope (SJF), 8 counts of Election Fraud (SJF), and 5 counts of Tampering with a Governmental Record (SJF) | 23 | 1/20/2022 | E.C. 276.011; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 276.013 Election Fraud, and sentenced to 1 yr county jail, probated for 1 yr. and $2,000 fine. Public apology required as condition of plea deal. |

STATE087333

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Resolved

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Gregg | Marlena Roseanne Jackson | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50949-B | 1 count of Engaging in Organized Election Fraud (F1), 1 count of Illegal Voting (F2), 31 counts of Fraudulent Use of an Application for Ballot by Mail (F3), 7 counts of Unlawful Possession of Ballot/Ballot Envelope (SJF), 31 counts of Election Fraud (SJF), and 26 counts of Tampering with a Governmental Record (SJF) | 97 | 1/20/2022 | E.C. 276.011; 64.012; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 276.013 Election Fraud, and sentenced to 1 yr county jail, probated for 1 yr. and $2,000 fine. Public apology required as condition of plea deal. |
| Gregg | Charlie Burns, Jr. | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50951-B | 1 count of Engaging in Organized Election Fraud (F3), 1 count of Fraudulent Use of an Application for Ballot by Mail (SJF), 5 counts of Unlawful Possession of a Ballot/Ballot Envelope (SJF), and 1 count of Tampering with a Governmental Record (SJF) | 8 | 1/27/2022 | E.C. 276.011; 84.0041; 86.006; 276.013; PC 37.10 | Convicted of E.C. 86.006 Unlawful Possession of Ballot with Intent to Defraud. Sentenced to 1 yr county jail, probated for 1 yr. |
| Gregg | DeWayne Ward | Organized Election Fraud - Vote Harvesting | 2018 Democratic Primary | 50947-B | 1 count Engaging in Organized Election Fraud (F1), 1 count of Unlawful Possession of Ballot or Carrier Envelope without the Consent of the Voter (F2), and 4 counts Unlawful Possession of Ballot/Ballot Envelope (SJF) | 6 | 1/31/2022 | E.C. 276.011; 86.006 | Convicted of E.C. 86.006 Unlawful Possession of Ballot with Intent to Defraud. Sentenced to 1 yr county jail, probated for 1 yr. |
| Bexar | Cruki Trevino | Illegal Voting | 2018 Republican Primary | CR-21-0000047 | 1 count Illegal Voting (F2) | 1 | 3/8/2022 | E.C. 64.012(b) | Prosecution Diversion Program - 1 count Illegal Voting |
| Guadalupe | Stan "Stosh" Boyle | Tampering with Government Record - Application for Candidacy - Felony Conviction/Ineligible for Office | 2017 City of Cibolo Election; 2019 City of Cibolo Election | 19-2108-CR-C; CCL-19-0809 | 1 count of Aggravated Perjury, 1 count of Tampering w/Government Record with Intent to Defraud, 1 count of Tampering with a Government Record | 3 | 4/12/2022 | P.C 37.03; P.C. 37.10 | Pled Guilty to 1 count Aggravated Perjury (F3) and 1 count Tampering with a Government Record with Intent to Defraud (SJF). Placed on 4-year deferred adjudication probation. |

| | | | | |
|---|---|---|---|---|
| | **Total Counts/ Offenses Prosecuted** | **691** | | |
| Number of offenses related to cases involving: | Mail Ballot Fraud | 444 | 64% | Note: significant overlap in fraud activity involving (two or more of) mail ballot fraud, assistance fraud, and illegal voting in the same case may result in totals > 100%. |
| | Assistance Fraud | 169 | 24% | |
| | Illegal Voting | 189 | 27% | |
| | **2015-present** | 429 | | |

* County offense occurred/County offense prosecuted. | ^ For complete information on disposition, see judgment and sentence. Prosecution Diversion Program includes an acknowledgment of the commission of offense/s.
+ Prosecuted by or with assistance of local district/county attorney. | [4] Cause number, where available; otherwise, OAG investigation or prosecution case number.
**This document is not a summary of all election violations in this state. This document does not record or report offenses handled exclusively by local law enforcement, district or county attorneys, or federal authorities. This document only reflects cases investigated and/or prosecuted by the OAG.**

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Jefferson/ Chambers | Zena Collins Stephens | Bribery, unlawfully accepting a cash contribution ($5,000/$1,000), tampering with a campaign finance report | 2016 General Election | 18DCR0152 | Count 1 - tampering with an election record; Count 2 - unlawfully accepting a cash contribution; Count 3 - unlawfully accepting a cash contribution | 3 | 4/26/2018 | P.C. 37.10; E.C. 253.033 |
| Jefferson/ Chambers | Ray Elliott Beck | Bribery, unlawfully accepting a cash contribution | 2016 General Election | 18DCR0153 | Count 1 - unlawfully accepting a cash contribution; Count 2 - failure to return a political contribution | 2 | 4/26/2018 | E.C. 253.033; 254.034 |
| Jefferson/ Chambers | Joseph Sterling Stevenson | Bribery, unlawfully accepting a cash contribution | 2016 Democratic Primary Election | 18DCR0154 | Unlawfully accepting a cash contribution | 1 | 4/26/2018 | E.C. 253.033 |
| Hidalgo | Marcela Gutierrez | Unlawfully assisting/influencing voters; illegal voting | 2016 City of Hidalgo Runoff Election | CR-18-08298-G; CR-18-08299-G; CR-18-08300-G; CR-18-08301-G; CR-18-08302-G; CR-18-08303-G; CR-18-08304-G; CR-18-08305-G; CR-18-08306-G; CR-18-08307-G | Misdemeanor cases 1-10 - Unlawfully Assisting/influencing Voters; Felony count 1 - Illegal Voting | 11 | 6/1/2018 | E.C. 64.036; 64.012 |
| Hidalgo | Shra Ornelas | Unlawfully assisting/influencing voters | 2016 City of Hidalgo Runoff Election | CR-18-08296-A; CR-18-08297-A; CR-18-08170-A | Counts 1-3 - unlawfully assisting/influencing voters | 3 | 5/31/2018 | E.C. 64.036 |
| Hidalgo | Sylvia Arjona | Unlawfully assisting/influencing voters | 2016 City of Hidalgo Runoff Election | CR-18-08167-H; CR-18-08168-H; CR-18-08169-H; CR-18-08295-H | Counts 1-4 - unlawfully assisting/influencing voters | 4 | 5/31/2018 | E.C. 64.036 |
| Tarrant | Leticia Sanchez | Illegal Voting; [illegible] another's Ballot; Vote Harvesting/Mail Ballot Fraud; False Statement on Mail Ballot Application | 2016 Democratic Primary Election | 1565416 | Count 1 - Illegal voting; Counts 2-17 - False Statement on Mail Ballot Application | 17 | 10/10/2018 | E.C. 64.012 (a) 4; E.C. 84.0041 |
| Tarrant | Leticia Sanchez Tepichin | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565415 | Counts 1-9 - False Statement on Mail Ballot Application | 9 | 10/10/2018 | E.C. 84.0041 |
| Tarrant | Maria Rosa Solis | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565413 | Counts 1-2 - False Statement on Mail Ballot Application | 2 | 10/10/2018 | E.C. 84.0041 |
| Tarrant | Laura Parra | False Statement on Mail Ballot Application; Vote Harvesting/Mail Ballot Fraud | 2016 Democratic Primary Election | 1565155 | Counts 1 - False Statement on Mail Ballot Application | 1 | 10/10/2018 | E.C. 84.0041 |

STATE087335

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Navarro | Maritza Curry | Illegal Voting - Non-Citizen | 2016 Presidential Election | D38883-CR | Illegal Voting | 1 | 12/20/2018 | E.C. 64.012 |
| Harris | Anthony Rodriguez | Election Fraud - False Statement to Election Official | 2018 General Election | 1629438 | Counts 1-2 - Election Fraud | 2 | 4/26/2019 | E.C. 276.013 |
| Hidalgo | Ricardo Molina | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2056-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-12 - Illegal Voting | 12 | 6/6/2019 | E.C. 276.011; E.C. 64.012 |
| Hidalgo | Dalia Molina | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2057-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-3 - Illegal Voting | 3 | 6/6/2019 | E.C. 276.011; E.C. 64.012 |
| Hidalgo | Julio Carranza | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-2058-19-A | Count 1 - Engaging in Organized Election Fraud<br>Counts 2-3 - Illegal Voting | 3 | 6/6/2019 | E.C. 276.011; E.C. 64.012 |
| Hidalgo | Araceli Gutierrez | Organized Election Fraud - Illegal Voting | 2017 City of Edinburg Election | CR-3349-19-A | Count 1 - Engaging in Organized Election Fraud<br>Count 2 - Illegal Voting | 2 | 8/22/2019 | E.C. 276.011; E.C. 64.012 |
| Hidalgo | Alyssa Cano | Illegal Voting | 2017 City of Edinburg Election | CR-3493-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo | Belinda Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3343-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo | Brenda Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3344-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo | Crystal Lee Ponce | Illegal Voting | 2017 City of Edinburg Election | CR-3341-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo | Cynthia Tamez | Illegal Voting | 2017 City of Edinburg Election | CR-3339-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Hidalgo[5] | Daniel Castillo | Illegal Voting | 2017 City of Edinburg Election | CR-3494-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[5] | Felisha Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3346-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Francisco Tamez, Jr. | Illegal Voting | 2017 City of Edinburg Election | CR-3349-19-A | Counts 1-2 - Illegal Voting | 2 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Guadalupe Garza | Illegal Voting | 2017 City of Edinburg Election | CR-3342-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Jose Martinez | Illegal Voting | 2017 City of Edinburg Election | CR-3347-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Jose Vela | Illegal Voting | 2017 City of Edinburg Election | CR-3491-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[5] | Ludivina Leal | Illegal Voting | 2017 City of Edinburg Election | CR-3492-19-A | Illegal Voting | 1 | 8/29/2019 | E.C. 64.012 |
| Hidalgo[5] | Mario Aleman | Illegal Voting | 2017 City of Edinburg Election | CR-3338-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Rosendo Rodriguez | Illegal Voting | 2017 City of Edinburg Election | CR-3345-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Ruby Tamez | Illegal Voting | 2017 City of Edinburg Election | CR-3340-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Hidalgo[5] | Veronica Vela Saenz | Illegal Voting | 2017 City of Edinburg Election | CR-3337-19-A | Illegal Voting | 1 | 8/22/2019 | E.C. 64.012 |
| Guadalupe | Stan "Stosh" Boyle | Tampering with Government Record - Application for Candidacy - Felony Conviction/Ineligible for Office | 2017 City of Cibolo Election; 2019 City of Cibolo Election | 19-2108-CR-C; CCL-19-0809 | 1 count of Aggravated Perjury, 1 count of Tampering w/Government Record with Intent to Defraud, 1 count of Tampering with a Government Record | 3 | 9/5/19; 7/26/19 | P.C. 37.03; P.C. 37.10 |
| Limestone[6] | Kelly Reagan Brunner | Voter Registration Fraud - Vote Harvesting | 2020 Presidential Election | 15126-A | 67 counts Purportedly Acting as Agent (F3), 67 counts Election Fraud (SJF) | 134 | 10/21/2020 | E.C. 13.006; 276.013 |

STATE087337

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Medina/ Bandera* | Eva Ann Martinez | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-022 | 1 count Engaging in Organized Election Fraud (F1), 9 counts Illegal Voting (F2), 15 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF), 3 counts Purportedly Acting as an Agent (F3), 5 counts Tampering w/Government Document w/intent to Harm or Defraud (SJF), 14 counts Election Fraud Enhanced (SJF), 4 counts Fraudulent Use of Mail Ballot Application Enhanced (F3), 13 counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3) | 64 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; E.C. 13.006; P.C. 37.10; E.C. 276.013; E.C. 84.0041; E.C. 86.010 |
| Medina/ Bandera* | Leonor Rivas Garza | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-019 | 1 count Engaging in Organized Election Fraud (F1); 2 counts Illegal Voting (F2); 8 counts of Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 2 counts Election Fraud Enhanced (SJF); 5 counts Fraudulent Use of Mail Ballot Application Enhanced (F3) | 18 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; E.C. 276.013; E.C. 84.0041 |
| Medina/ Bandera* | Mary Jane Balderrama | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-020 | 1 count Engaging in Organized Election Fraud (F1); 9 counts Illegal Voting (F2); 2 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 1 count Fraudulent Use of Mail Ballot Application Enhanced (F3); 2 Counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3); 2 counts Tampering w/Government Document with Intent to Harm or Defraud (SJF); 8 counts Election Fraud Enhanced (SJF) | 25 | 2/9/2021 | E.C. 276.011; E.C. 64.012; E.C. 86.006; P.C. 37.10; E.C. 276.013; E.C. 84.0041; E.C. 86.010 |
| Medina/ Bandera* | Tomas Ramirez | Organized Election Fraud - Vote Harvesting | 2018 Republican Primary | CR21-021 | 1 count Engaging in Organized Election Fraud (F1); 17 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 17 counts Unlawfully Assisting Voter Voting Ballot by Mail Enhanced (F3) | 35 | 2/9/2021 | E.C. 276.011; E.C. 86.006; E.C. 86.010 |
| Victoria | Monica Mendez | Vote Harvesting, Assistance Fraud, Illegal Voting, Election Fraud | 2018 Victoria Co Water District Election | 21-06-32996-A | 3 counts Illegal Voting (F2); 7 counts Unlawful Possession of Vote By Mail Enhanced (F3); 8 counts Unlawful Possession of Ballot/Ballot Envelope Enhanced (SJF); 8 counts Election Fraud Enhanced (SJF) | 26 | 7/15/2021 | E.C. 64.012; E.C. 86.006; E.C. 86.010; E.C. 276.013 |
| Bexar/ Kendall* | Rachel "Raquel" Rodriguez | Vote Harvesting, Assistance Fraud, Illegal Voting, Election Fraud | 2020 Presidential Election | 8231; 21-078-CR | 1 count Illegal Voting (F2); 1 count Unlawful Possession of Ballot w/ intent to defraud, victim over 65 (SJF); 1 count Unlawful Assistance (Cl A); 1 count Election Fraud (Cl A) | 4 | 3/1/2021 | E.C. 64.012; E.C. 86.006; E.C. 64.036; E.C. 276.013 |
| Harris/ Montgomery* | Hervis Earl Rogers | Illegal Voting | 2020 Primary Election; 2018 General and Special Elections | 21-06-08801-CR | 2 counts Illegal Voting (F2) | 2 | 6/24/2021 | E.C. 64.012 |

STATE087338

Office of the Attorney General of Texas
Election Fraud Violations
Prosecutions Pending

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Harris/ Montgomery[a] | Ignacio Gonzalez Beltran | Illegal Voting - Impersonation of a U.S. Citizen, Document Fraud; ref'd by Diplomatic Security Services - U.S. State Dept. | Multiple Elections | 21-05-08808 | 4 counts Illegal Voting (F2) | 4 | 5/24/2021 | E.C. 64.012 |
| Nolan[c] | Kenneth Ray Teaff | Fraudulent Use of Ballot Application Deceased Voter Impersonation, Tampering with Gov't Record | 2020 Presidential Election | 13853; 13854 | 1 count Fraudulent Use of Application for Ballot by Mail, enhanced (F3); 1 count Tampering with Gov't Record (SJF) | 2 | 8/17/2021 | E.C. 84.0041; P.C. 37.10 |

| | | | |
|---|---|---|---|
| | Total Counts/ Offenses Pending Prosecution | 410 | |
| Number of offenses related to cases involving: | Mail Ballot Fraud | 287 | 70% |
| | Assistance Fraud | 18 | 4% |
| | Illegal Voting | 67 | 16% |

[a] County offense occurred/County offense prosecuted. | [b] Investigated by local law enforcement and referred to OAG for prosecution | [c] Prosecuted by or with assistance of local district/county attorney.

**This document is not a summary of all election violations in this state. This document does not record or report offenses handled exclusively by local law enforcement, district or county attorneys, and federal authorities. This document only reflects cases investigated and/or prosecuted by the OAG.**