# EXHIBIT E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

```
LA UNION DEL PUEBLO ENTERO )
et al.,                     )
     Plaintiffs,            )
                            ) Civil Action No. SA-21-cv-
v.                          )      00844-XR
                            ) (Consolidated Cases)
STATE OF TEXAS, et al.,     )
     Defendants.            )
```

---------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF
MICHAEL SCARPELLO
MAY 4, 2022
Volume 1

---------------------------------------


ORAL AND VIDEOTAPED DEPOSITION OF MICHAEL
SCARPELLO produced as a witness at the instance of
Plaintiff, and duly sworn, was taken in the above-styled
and numbered cause on the 4th day of May, 2022 from 10:21
a.m. to 1:11 p.m. before Nancy Newhouse, a Certified
Shorthand Reporter in and for the State of Texas,
reported by oral shorthand, located at the Dallas County
Records Building, 500 Elm Street, Suite 6300, Dallas,
Texas 75202, pursuant to the Federal Rules of Civil
Procedure, and the provisions stated on the record or
attached hereto.

1        A.   Sometimes.

2        Q.   And other times they have concerns that,

3   although sincere, are based on a misunderstanding?

4        A.   Correct.

5        Q.   And so in the situations where they have

6   concerns that are based on a proper understanding, do

7   you attempt to alter the procedures to address those

8   concerns?

9        A.   Yes.

10        Q.   And when they have sincere but mistaken

11   concerns, do you try to either do -- but I guess there

12   are a couple of ways you could do that.

13             Do you try to share with them the truth

14   about the situation?

15        A.   Yes.

16        Q.   And correct any misunderstandings they have?

17        A.   Yes.

18        Q.   Do you also sometimes -- have you ever heard

19   the phrase Caesar's wife must be above reproach?

20        A.   Yes.

21        Q.   Do you know what it means?

22        A.   Uh-huh.

23        Q.   Do you ever take steps to make sure that

24   things appear above reproach, even if there was nothing

25   wrong in the first place?

1        A.   Yes.

2        Q.   Could you give me an example of that?

3        A.   Well, I will just continue with the -- the

4 Central Count Station.  The previous administration had

5 very strict rules about where poll watchers could go,

6 what they could do, who they could talk to, what

7 questions they could ask, et cetera, and I'll -- I'll

8 give you an example.  They had tape on the floors, and

9 you can't go beyond these, this -- this line, et cetera.

10 The first thing -- and -- and -- and they -- and -- and

11 they conveyed that to all of our staff, and our staff

12 did that, you know, that same, had that same approach,

13 very standoffish, defensive walls up.

14             And so what we did right off the bat was,

15 we brought those poll watchers in, we pulled up the tape

16 off the floor, we -- we said you can go anywhere you

17 want, ask anybody you want, and -- and just to -- to be

18 as transparent, to -- to lower their -- their

19 suspicions.  So that -- that's maybe a good example.

20        Q.   Has that had positive results for Dallas

21 County?

22        A.   Yes.

23        Q.   In what way?

24        A.   I think that there's less suspicion and more

25 trust.

1    an -- in a neighborhood polling place, who knows the

2    vote -- you know, a good chunk of those voters who come

3    into that location, not one time have I ever had a poll

4    worker report to me, hey, John Smith -- someone came in

5    and tried to vote for John Smith, and -- and I know

6    John, and it wasn't John.

7                    And so I know that that's just anecdotal

8    evidence, but I -- I -- I've never experienced that.

9         Q.   This is on a different topic, but just out of

10   curiosity, what percentage of voters do you think poll

11   workers recognize?

12        A.   It depends on the -- the model.  With the old

13   precinct model, where there was, you know, several

14   hundred voters at a location, and you had a precinct

15   captain, and you had people familiar with their

16   neighbors and et cetera, I think it's a very high

17   percentage.

18                    Under the vote center model, where it's

19   -- it's not so much isolated to a precinct anymore,

20   where anybody can come in, I think that the percentage

21   is much lower.

22        Q.   Dallas County follows the vote center model

23   now, right?

24        A.   That's correct.

25        Q.   Maybe my neighborhood just isn't very

Page 60

1        A.   Well, we have to be more specific.  Cure

2   processes regarding applications, or -- or regarding

3   ballots?

4        Q.   Right.  So I -- I just wanted to understand

5   the process for both, actually, and I'm happy to ask you

6   more specifically, or however you want to handle it.

7        A.   Yeah.  Why don't you go ahead and ask me --

8        Q.   Okay.

9        A.   -- more specifically.

10        Q.   Is there a cure process for applications for a

11   ballot by mail?

12        A.   Yes.

13        Q.   Does it come into play when an application is

14   otherwise going to be rejected?

15        A.   Yes.

16        Q.   What can a voter do to cure an application to

17   vote by mail that would otherwise be rejected?

18        A.   They can -- if they -- if they're missing --

19   well, it depends on what the -- the -- the flaw in the

20   application is.  If they haven't signed, they need to

21   sign.  If they haven't provided one of those two numbers

22   that we spoke of, they have to provide one of those

23   numbers.

24             There is a cure process, in theory,

25   that's supposed to work from -- to -- to have them go to

Page 61

1    the State's mail ballot tracking application, and be

2    able to cure through that.  That -- though, that has

3    been highly problematic, especially in counties what --

4    what are called offline counties.

5         Q.   There are other options for curing as well?

6         A.   Yes.

7         Q.   Do those involve, for example, a voter coming

8    to the Dallas County Elections Office?

9         A.   Yes.

10        Q.   Have any voters come to the Dallas County

11   Elections Office as part of the cure process?

12        A.   Yes.

13        Q.   Do you know whether they were able to

14   successfully cure issues with applications to vote by

15   mail?

16        A.   Yes.

17        Q.   Did they successfully cure those issues?

18        A.   Yeah.  And I don't have those numbers.

19        Q.   Do you have any high-level understanding of

20   how often they were successful?

21        A.   No.

22        Q.   All right.  So we were just talking about the

23   application to vote by mail, and the cure process

24   related to that.

25                  There is also a cure process related to

1    ballots, right?

2         A.    Yes.

3         Q.    Does it work in the same way?

4         A.    No.

5         Q.    How is it different?

6         A.    The cure process for ballots is run by the

7    Ballot Board, and it's when a person provides -- or does

8    not provide a social security number or driver's license

9    number that -- that matches with the number that's on

10   the voter registration.

11                  The Ballot Board sends a communication,

12   one of two prescribed forms, to the -- to the voter that

13   says here is how you cure the -- the -- the pro --

14   here's how you cure your ballot.  And it's -- it's a

15   highly-complex, long, verbiage-rich form that's very

16   difficult to use.

17        Q.    Now, apart from the identification number,

18   there are other issues that can be cured through the

19   cure process, right?

20        A.    Yes.

21        Q.    I think you mentioned earlier, one of them is

22   failing to provide a signature?

23        A.    Correct.

24        Q.    Do you know whether voters had to provide a

25   signature before SB 1?

Page 68

1    Q.   Were you left with less time to implement SB 1

2    than you would have liked?

3    A.   Yes.

4    Q.   Did that make it more difficult to implement

5    it correctly?

6    A.   Yes.

7    Q.   Do you know whether voters were also affected

8    by the fact that SB 1 was new for the March primary?

9    A.   I can speculate that they were, yes.

10   Q.   Aside from speculation, do you have any

11   personal knowledge about voters who misunderstood the

12   rule -- misunderstood the new rules, for example?

13   A.   Yes.

14   Q.   Could -- could you just give an example or two

15   of how that happened?

16   A.   Voters that would not fill out their

17   applications correctly, et cetera.

18   Q.   And in instances like this, were you often

19   able to explain the new rules to the voters?

20   A.   We -- we tried, and we went to extraordinary

21   means to do so.  We went to the Commissioners Court and

22   obtained funding to -- to do a public outreach campaign

23   to educate voters, and then we also reached out to those

24   who -- who made mistakes on their applications, we --

25   phone banking, et cetera, to try to get them to cure.

1    Q.    So what was the timing of the public outreach

2    campaign?

3    A.    Mid February, late February.

4    Q.    Is that when it began?

5    A.    Yes.

6    Q.    And is it still going on?

7    A.    That particular campaign, no, but our -- our

8    educational efforts on our website, et cetera, are.

9    Q.    Okay.  How long did the campaign go on -- this

10   specific campaign you are talking about?

11   A.    About two weeks.

12   Q.    Okay.  But then continued educational efforts?

13   A.    Uh-huh, yes.

14   Q.    Now, kind of apart from the broad-spectrum

15   public campaigns that you were talking about, you also

16   said you reached out to individual voters who had made

17   errors, is that right?

18   A.    Yes.

19   Q.    How -- how did that work?

20   A.    I think we -- well, we sent them written

21   communications, emails and phone banks, phone calls.

22   Q.    And -- and these communications explained the

23   specific error the voter in question had made?

24   A.    Yes.

25   Q.    And you designed these communications to try

Page 73

1    recommendation made to the Commissioners Court, and they

2    appoint those judges for a period of two years.  The

3    judges then in turn recruit clerks.  This model that's

4    implemented in Texas is problematic in -- in that

5    judges, when they're appointed for a two-year term, the

6    -- the drop-off rate is extraordinarily high, and they

7    don't -- they don't honor that commitment.  It's kind of

8    a relic of the old precinct model, frankly.

9                And so -- so what happens then is, as

10   those -- those judges don't show up, then within the

11   last 20 days of the election, the Elections Office is --

12   is expected to fill in those positions at the last

13   minute with volunteers.

14       Q.   And I take it sometimes you may not have

15   enough volunteers?

16       A.   That's correct.

17       Q.   Or at least volunteers who want to work for

18   free?

19       A.   Well, they -- they -- they're paid.  Election

20   workers are paid, so they're -- they aren't really

21   volunteers.

22       Q.   Oh, I see, okay.

23                And roughly how much are they paid?

24       A.   Clerks are paid $16.00 an hour, and judges

25   were paid $18.00 an hour, now we raised that to $20.00

1    an hour.

2        Q.   And so I take it that increasing the financial

3    incentives for county workers was an effort to get more

4    people to be willing to work at the polls?

5        A.   Correct.

6        Q.   Has it been successful?

7        A.   Yes.

8        Q.   How do you have the funding to increase

9    financial incentives for county workers to work at the

10   polls?

11       A.   We go to Commissioners Court and ask for that

12   funding.

13       Q.   It's a local funding, it's not --

14       A.   Yes.

15       Q.   -- from the Secretary of State?

16       A.   Correct.

17       Q.   All right.  I think we've been going longer

18   than I realized, and now might be a good time for a

19   break if you're amenable?

20       A.   Yes.

21              VIDEOGRAPHER:  We're off record at 11:52.

22              (Off the record.)

23              VIDEOGRAPHER:  We are back on record at

24   12:26.

25       Q.   (BY MR. THOMPSON)  Okay.  Mr. Scarpello, we

Page 75

1    just took a bit of a break for your counsel to confer

2    with the federal government.  While we're waiting on

3    that, we'll talk about some other stuff.

4                    Are you familiar with the oath that

5    people providing -- that certain people providing

6    assistance to voters must take?

7         A.   Yes.

8         Q.   How did that oath work before SB 1?

9         A.   Well, there was an oath that was required to

10   be taken, and now there is a different oath that's

11   required to be taken, with different verbiage.

12        Q.   Who administers the oath?

13        A.   The -- the poll worker.

14        Q.   And do you know what set of people have to

15   take the oath?

16        A.   The person providing assistance.

17        Q.   And so correct me if I'm wrong.

18                    My recollection is a voter can ask for

19   assistance at a polling place, right?

20        A.   Yes.

21        Q.   And that voter could receive assistance from

22   an election worker who works at the polling place,

23   right?

24        A.   Correct.

25        Q.   But the voter also has the option of seeking

Page 76

1    assistance from a third party, correct?

2        A.    Correct.

3        Q.    Now, if the voter opts to get assistance from

4    an election worker who's already working at the polling

5    place, that election worker doesn't have to take the

6    oath, correct?

7        A.    I believe they take an oath at the beginning

8    of the day.  They -- they don't have to take one for

9    every in -- individual, they take one for the day for --

10   for anyone that they -- that they help assist throughout

11   the day.

12       Q.    Okay.  And is it the same oath?

13       A.    Yes, I believe so.

14       Q.    Now, if the voter opts for assistance from a

15   third party, that third party then takes the oath

16   immediately before assisting the voter, correct?

17       A.    Correct.

18       Q.    Are you aware of any instance in which someone

19   was at a polling place intending to provide assistance,

20   but refused to take the oath?

21       A.    I'm not aware.

22       Q.    Are you aware of any instance in which someone

23   was at a polling place intending to take -- to provide

24   assistance, but objected to the content of the oath?

25       A.    I'm not aware.

Page 79

1                    (Defendant's Exhibit No. 9 was marked for

2       identification.)

3                    MS. PERALES:  Was there an 8?

4                    MR. THOMPSON:  I thought there was.

5                    MS. PERALES:  It may have just --

6                    MR. SCHUETTE:  Yeah, he --

7                    MS. PERALES:  -- been that I didn't have

8       a copy.

9                    MR. SCHUETTE:  8 was --

10                   MR. THOMPSON:  You are welcome --

11                   MS. PERALES:  Okay.  Thank you.

12                   MR. THOMPSON:  -- to have a copy if you

13      didn't --

14                   MS. PERALES:  No, I have 8.  I have 8, I

15      just put it in the wrong place.  I'm sorry.

16                   MR. THOMPSON:  Oh, okay.

17                   MS. PERALES:  That was my fault.

18                   MR. THOMPSON:  Not a problem at all.

19                   And --

20                   THE WITNESS:  Oh, yes.

21                   MR. THOMPSON:  -- for -- for anyone who

22      is curious, I will represent that Exhibit 9 is a copy of

23      SB 1.

24           Q.   (BY MR. THOMPSON)  Mr. Scarpello, have you

25      seen SB 1 before?

Page 80

1      A.    Yes.

2      Q.    Does this appear to be a copy of the Act?

3      A.    Yes.

4      Q.    Would you please flip to Page No. 4?

5      A.    Okay.

6      Q.    Now, I don't know if you know how these Acts

7   are organized, you probably do, but there's --

8      A.    Yes.

9      Q.    -- a section of SB 1, Section 1.08, which adds

10  section 1.022 of the Election Code, do you see that?

11     A.    Yes.

12     Q.    Okay.  I'm just going to read it, and I'll ask

13  you to confirm that I've read it correctly.

14             "Section 1.022, Reasonable Accommodation

15  or Modification.  A provision of this code may not be

16  interpreted to prohibit or limit the right of a

17  qualified individual with a disability from requesting a

18  reasonable  accommodation or modification to any

19  election standard,  practice, or procedure mandated by

20  law or rule that the individual is entitled to request

21  under federal or state law", and the quote ended on

22  Page 5, do you see that?

23     A.    Yes.

24     Q.    Were you familiar with that provision before I

25  read it?

1      A.   Yeah.  And you've -- you've refreshed my
2   memory on this.
3      Q.   Okay.  So what is your understanding of how
4   SB 1 affects your ability to grant accommodations
5   requested on the basis of disability?
6      A.   I don't believe we got an interpretation on
7   this section from the Secretary of State.  In -- in
8   other words, it -- it seems fairly vague to me, and I
9   don't know quite how to interpret it.
10      Q.   Sure.  And I'm not trying to put you in a box
11   or anything, but can you tell me --
12      A.   Uh-huh.
13      Q.   -- what about it is vague, or what part you're
14   unsure about?
15      A.   I don't know what a reasonable -- I don't know
16   an  example of a reasonable accommodation, what it
17   might, what it might need -- mean, under this particular
18   section.
19      Q.   You mean that it's not obvious what sorts of
20   accommodations would be reasonable, and what sorts
21   wouldn't be reasonable, is that what you mean?
22      A.   Yes.  And -- and -- and examples of -- of --
23   of a circ -- a hypothetical that would -- would kind of
24   lay out what would be reasonable, what would not be
25   reasonable, et cetera.

1      Q.   And I -- I know you're a lawyer, but I don't

2   know what scope your practice has had.

3                Do you know whether reasonableness is a

4   standard drawn from ADA cases, for example?

5      A.   I would assume so, yes.

6      Q.   And I think you said earlier that, to your

7   knowledge, the Dallas County Elections Department had

8   not denied any requests for accommodation related to

9   voting, right?

10      A.   Yes.

11      Q.   Based on your familiarity with Section 1.08 of

12   SB 1, which creates section 1.022 of the Election Code,

13   is it fair to say that SB 1 wouldn't change that fact?

14      A.   It's fair to say that we haven't run into a

15   circumstance yet that we've had to -- to research and --

16   and get a true sense of what Section 1.022 really means.

17      Q.   Sure.  And regardless of what -- how it will

18   cash out in specific circumstances, is it fair to say

19   that this provision does not increase the likelihood

20   that you would deny a particular accommodation request?

21      A.   It's fair.

22           MS. PERALES:  Objection, vague.

23      Q.   (BY MR. THOMPSON)  In light of the objection,

24   let me just try and ask it in a --

25      A.   Okay.

Page 88

1    BY MS. PERALES:

2        Q.    I only have a couple of questions.

3        A.    Okay.

4        Q.    Good afternoon --

5        A.    Good afternoon.

6        Q.    -- Mr. Scarpello.

7                Have you ever encountered a situation

8    where a voter requests a ballot by mail and checks off

9    the box to receive ballots throughout the year; that

10   happens from time to time, right?

11       A.    Where people -- where a voter checks a box for

12   a year long -- yes, that happens quite often.

13       Q.    Do you have a phrase for that; is it called

14   annual ballot by mail?

15       A.    Yes.

16       Q.    And have you ever encountered a situation

17   where a voter has indicated they want the ballot by mail

18   throughout the year, and then later in the year when the

19   voter receives the mail ballot, they call your office

20   asking why, because they thought they hadn't requested

21   the mail ballot?

22       A.    Yes.  Because some elections are -- are very

23   well-known, and other elections are a little more

24   obscure.  And so they might get a ballot for an election

25   that -- that they weren't even aware of, and they're

1    like, well, what's this, this ballot all about?

2        Q.   And do they sometimes call your office,

3    wondering if perhaps there's been some, you know,

4    mistake or -- or that somebody has done something wrong,

5    because that voter received a mail ballot?

6                    MR. THOMPSON:  Objection, form.

7        A.   Yes.  I think that voters tend to -- to get

8    confused about, you know, sometimes their own actions,

9    they don't realize that they -- they asked for a year-

10   long ballot, as opposed to just a ballot for an

11   individual election.

12       Q.   (BY MS. PERALES)  Thank you.  And I want to

13   say credit for that question is from Jacque Callanan --

14       A.   Oh.

15       Q.   -- who talked about that in Bexar County.

16       A.   Okay.

17       Q.   I would like -- for my last couple of

18   questions, I would like you --

19       A.   Uh-huh.

20       Q.   -- to turn again to Page 4 of Scarpello

21   Exhibit 9, which is your Bill, SB 1?

22       A.   Okay.

23       Q.   And if you could look at the same language

24   that Mr. Thompson was reviewing with you earlier that

25   begins on Line 22 of Page 4, Section 1.022, do you see

1    that?

2         A.    Yes.

3         Q.    Do you see a definition in that new language

4    of qualified individual?

5         A.    Yes.

6         Q.    Do you see the phrase there, "qualified

7    individual", --

8         A.    Yes.

9         Q.    -- is that right?

10        A.    Uh-huh.

11        Q.    But does the new language here that's come

12   into the law have a definition of qualified individual?

13        A.    Not that I'm aware.

14        Q.    And would you have any way of knowing whether

15   qualified individual with a disability is defined by

16   state law, or federal law or something else?

17                  MR. THOMPSON:   Objection, form.

18        A.    I don't know.

19        Q.    (BY MS. PERALES)   Would you consider somebody

20   who is Spanish-speaking, and doesn't speak English, to

21   be a qualified individual with a disability?

22                  MR. THOMPSON:   Objection, form.

23        A.    No.

24        Q.    (BY MS. PERALES)   Thank you.

25                  MS. PERALES:   I pass the witness.

Page 94

```
 1                    I, MICHAEL SCARPELLO , have read the
 2   foregoing deposition and hereby affix my signature that
 3   same is true and correct, except as noted above.
 4
 5                    _____
 6                    MICHAEL SCARPELLO
 7
 8
 9   THE STATE OF TEXAS            )
10   COUNTY OF _____ )
11             Before me, _____, on this
12   day personally appeared MICHAEL SCARPELLO , known to me
13   (or proved to me under oath or through
14   _____) (description of identity card or
15   other document) to be the person whose name is subscribed
16   to the foregoing instrument and acknowledged to me that
17   they executed the same for the purposes and consideration
18   therein expressed.
19             Given under my hand and seal of office this
20   _____day of _____, _____.
21
22                    _____
23                    NOTARY PUBLIC IN AND FOR
                      THE STATE OF _____
24
25
```

Page 95

```
 1                UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3    LA UNION DEL PUEBLO ENTERO )
      et al.,                    )
 4         Plaintiffs,           )
                                 )
 5    v.                         ) Civil Action No. SA-21-CV-
                                 )       00844-XR
 6    GREGORY W. ABBOTT, et al., ) (Consolidated Cases)
           Defendants.          )
 7

 8

 9

10                  REPORTER'S CERTIFICATION
                 DEPOSITION OF MICHAEL SCARPELLO
11                      MAY 04, 2022

12

13

14         I, Nancy Newhouse, Certified Shorthand Reporter

15    in and for the State of Texas, hereby certify to the

16    following:

17         That the witness, MICHAEL SCARPELLO , was duly sworn

18    by the officer and that the transcript of the oral

19    deposition is a true record of the testimony given by the

20    witness;

21         That the deposition transcript was submitted on

22    _____ to the witness or to the attorney for

23    the witness for examination, signature and return to me

24    by _____.

25
```

Page 98

1                    PARTIES OF RECORD Continued

2

3       Ms. Josephine Ramirez Solis, Attorney for Defendant
        Hidalgo County
4       ASSISTANT CRIMINAL DISTRICT ATTORNEY
        100 East Cano
5       Edinburg, Texas 78539

6

7                I further certify that I am neither counsel

8       for, related to, nor employed by any of the parties or

9       attorneys in the action in which this proceeding was

10      taken, and further that I am not financially or otherwise

11      interested in the outcome of the action.

12                Certified to by me this 16th day of May, 2022.

13

14

15                      _____
                        NANCY NEWHOUSE, Texas CSR 9000
16                      Expiration Date:  08/31/23
                        Firm Registration No. 633
17                      Magna Legal Services
                        16414 San Pedro, Suite 900
18                      San Antonio, Texas 78232
                        (210) 697-4300
19

20

21

22

23

24

25

S.B. No. 1

1                        AN ACT

2  relating to election integrity and security, including by

3  preventing fraud in the conduct of elections in this state;

4  increasing criminal penalties; creating criminal offenses.

5        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6                  ARTICLE 1.  GENERAL PROVISIONS

7        SECTION 1.01.  SHORT TITLE.  This Act may be cited as the

8  Election Integrity Protection Act of 2021.

9        SECTION 1.02.  PURPOSE.  The purpose of this Act is to

10 exercise the legislature's constitutional authority under Section

11 4, Article VI, Texas Constitution, to make all laws necessary to

12 detect and punish fraud.

13       SECTION 1.03.  FINDINGS. The legislature finds that:

14            (1)  full, free, and fair elections are the

15 underpinnings of a stable constitutional democracy;

16            (2)  fraud in elections threatens the stability of a

17 constitutional democracy by undermining public confidence in the

18 legitimacy of public officers chosen by election;

19            (3)  reforms are needed to the election laws of this

20 state to ensure that fraud does not undermine the public confidence

21 in the electoral process;

22            (4)  the reforms to the election laws of this state made

23 by this Act are not intended to impair the right of free suffrage

24 guaranteed to the people of Texas by the United States and Texas

1

**EXHIBIT**

9 - Scarpello - 5/4/22

exhibitsticker.com

S.B. No. 1

1  Constitutions, but are enacted solely to prevent fraud in the
2  electoral process and ensure that all legally cast ballots are
3  counted.  Integral to the right to vote is the assurance of voter
4  access and the right for all votes legally cast to be counted;

5          (5)  additionally, preventing a valid vote from being
6  counted violates the basic constitutional rights guaranteed to each
7  citizen by the United States Constitution; and

8          (6)  providing for voter access and increasing the
9  stability of a constitutional democracy ensures public confidence
10  in the legitimacy of public officers chosen by election.

11      SECTION 1.04.  Chapter 1, Election Code, is amended by
12  adding Section 1.0015 to read as follows:

13      Sec. 1.0015.  LEGISLATIVE INTENT.  It is the intent of the
14  legislature that the application of this code and the conduct of
15  elections be uniform and consistent throughout this state to reduce
16  the likelihood of fraud in the conduct of elections, protect the
17  secrecy of the ballot, promote voter access, and ensure that all
18  legally cast ballots are counted.

19      SECTION 1.05.  Section 1.003, Election Code, is amended by
20  adding Subsection (a-1) to read as follows:

21      (a-1)  Election officials and other public officials shall
22  strictly construe the provisions of this code to effect the intent
23  of the legislature under Section 1.0015.

24      SECTION 1.06.  Section 1.005, Election Code, is amended by
25  amending Subdivision (4-a) and adding Subdivision (4-b) to read as
26  follows:

27          (4-a)  "Election official" means:

2

S.B. No. 1

1                (A)   a county clerk;

2                (B)   a permanent or temporary deputy county clerk;

3                (C)   an elections administrator;

4                (D)   a permanent or temporary employee of an
5 elections administrator;

6                (E)   an election judge;

7                (F)   an alternate election judge;

8                (G)   an early voting clerk;

9                (H)   a deputy early voting clerk;

10              (I)   an election clerk;

11              (J)   the presiding judge of an early voting ballot
12 board;

13              (K)   the alternate presiding judge of an early
14 voting ballot board;

15              (L)   a member of an early voting ballot board;

16              (M)   the chair of a signature verification
17 committee;

18              (N)   the vice chair of a signature verification
19 committee;

20              (O)   a member of a signature verification
21 committee;

22              (P)   the presiding judge of a central counting
23 station;

24              (Q)   the alternate presiding judge of a central
25 counting station;

26              (R)   a central counting station manager;

27              (S)   a central counting station clerk;

1          (T)  a tabulation supervisor;

2          (U)  an assistant to a tabulation supervisor; and

3          (V)  a chair of a county political party holding a

4    primary election or a runoff primary election.

5          (4-b)  "Federal judge" means:

6                (A)  a judge, former judge, or retired judge of a

7    United States court of appeals;

8                (B)  a judge, former judge, or retired judge of a

9    United States district court;

10                (C)  a judge, former judge, or retired judge of a

11    United States bankruptcy court; or

12                (D)  a magistrate judge, former magistrate judge,

13    or retired magistrate judge of a United States district court.

14          SECTION 1.07.  Section 1.018, Election Code, is amended to

15    read as follows:

16          Sec. 1.018.  APPLICABILITY OF PENAL CODE.  In addition to

17    Section 1.03, Penal Code, and to other titles of the Penal Code that

18    may apply to this code, Titles 2 and [Title] 4, Penal Code, apply

19    [applies] to offenses prescribed by this code.

20          SECTION 1.08.  Chapter 1, Election Code, is amended by

21    adding Section 1.022 to read as follows:

22          Sec. 1.022.  REASONABLE ACCOMMODATION OR MODIFICATION.  A

23    provision of this code may not be interpreted to prohibit or limit

24    the right of a qualified individual with a disability from

25    requesting a reasonable accommodation or modification to any

26    election standard, practice, or procedure mandated by law or rule

27    that the individual is entitled to request under federal or state

S.B. No. 1

1 law.

2                ARTICLE 2. REGISTRATION OF VOTERS

3      SECTION 2.01. Section 13.002, Election Code, is amended by

4 adding Subsection (c-1) to read as follows:

5      (c-1) The information required under Subsections (c)(3),

6 (4), (5), (6), and (8) must be supplied by the person desiring to

7 register to vote.

8      SECTION 2.02. Section 13.007, Election Code, is amended to

9 read as follows:

10      Sec. 13.007. FALSE STATEMENT ON APPLICATION. (a) A person

11 commits an offense if the person knowingly or intentionally:

12           (1) makes a false statement; or

13           (2) requests, commands, coerces, or attempts to induce

14 another person to make a false statement on a registration

15 application.

16      (b) An offense under this section is a Class A [B]

17 misdemeanor, except that an offense under this section is a state

18 jail felony if the person:

19           (1) directly or through a third party offers or

20 provides compensation or other benefit to a person for activity

21 described by Subsection (a); or

22           (2) solicits, receives, or accepts compensation or

23 other benefit for an activity described by Subsection (a).

24      (c) If conduct that constitutes an offense under this

25 section also constitutes an offense under another law, the actor

26 may be prosecuted under this section, the other law, or both. [For

27 purposes of this code, an offense under this section is considered

5

S.B. No. 1

1  to be perjury, but may be prosecuted only under this section.]

2      SECTION 2.03.  Section 15.021, Election Code, is amended by

3  amending Subsections (b) and (d) and adding Subsections (d-1) and

4  (d-2) to read as follows:

5      (b)  Except as provided by Subsection (d), the [The] voter

6  shall use the registration certificate or a registration

7  application form as the notice, indicating the correct information

8  in the appropriate space on the certificate or application form

9  unless the voter does not have possession of the certificate or an

10  application form at the time of giving the notice.

11      (d)  A voter [who continues to reside in the county in which

12  the voter is registered] may correct information under this section

13  by digital transmission of the information under a program

14  administered by the secretary of state and the Department of

15  Information Resources.

16      (d-1)  If the notice indicates that a voter no longer resides

17  in the county in which the voter is registered, the registrar shall

18  forward the notice and the voter's application for registration to

19  the registrar of the county in which the voter resides.  The

20  registrars shall coordinate to ensure that the voter's existing

21  registration is canceled immediately after the voter is registered

22  in the county in which the voter resides in accordance with

23  Subsection (d-2).

24      (d-2)  A registrar who receives a voter's notice and

25  application from another registrar under Subsection (d-1) shall

26  treat it as an original application for registration under Section

27  13.002, and shall register the voter if the voter resides in the

S.B. No. 1

1  county and is otherwise eligible under Section 13.001.

2      SECTION 2.04.  Section 15.028, Election Code, is amended to

3  read as follows:

4      Sec. 15.028.  NOTICE OF UNLAWFUL VOTING OR REGISTRATION [TO

5  PROSECUTOR].  [(a)]  If the registrar determines that a person who

6  is not eligible to vote registered to vote or [a registered voter]

7  voted in an election, the registrar shall, within 72 hours not

8  including weekends after making the determination, execute and

9  deliver to the attorney general, the secretary of state, and the

10 county or district attorney having jurisdiction in the territory

11 covered by the election an affidavit stating the relevant facts.

12     [(b)  If the election covers territory in more than one

13 county, the registrar shall also deliver an affidavit to the

14 attorney general.]

15     SECTION 2.05.  Section 16.0332, Election Code, is amended

16 by amending Subsection (a) and adding Subsections (a-1), (d), and

17 (e) to read as follows:

18     (a)  After the registrar receives notification [a list]

19 under Subsection (a-1) of this section, Section 18.068 of this

20 code, or Section 62.113, Government Code, of persons excused or

21 disqualified from jury service because of citizenship status or

22 notification of persons who indicate a lack of citizenship status

23 in connection with a motor vehicle or Department of Public Safety

24 record as provided by Subsection (a-1), the registrar shall deliver

25 to each registered voter whose name appears on the list a written

26 notice requiring the voter to submit to the registrar proof of

27 United States citizenship in the form of a certified copy of the

7

S.B. No. 1

1  voter's birth certificate, United States passport, or certificate

2  of naturalization or any other form prescribed by the secretary of

3  state.  The notice shall be delivered by forwardable mail to the

4  mailing address on the voter's registration application and to any

5  new address of the voter known to the registrar.

6      (a-1)  The secretary of state shall enter into an agreement

7  with the Department of Public Safety under which information in the

8  existing statewide computerized voter registration list is

9  compared against information in the database of the Department of

10 Public Safety on a monthly basis to verify the accuracy of

11 citizenship status information previously provided on voter

12 registration applications.  In comparing information under this

13 subsection, the secretary of state shall consider only a voter's

14 information in the database of the Department of Public Safety that

15 was derived from documents presented by the voter to the department

16 after the person's current voter registration became effective, and

17 may not consider information derived from documents presented by

18 the voter to the department before the person's current voter

19 registration became effective.

20     (d)  The secretary of state shall prescribe rules for the

21 administration of this section.

22     (e)  Not later than December 31 of each year, the secretary

23 of state shall provide a report to the legislature of the number of

24 voter registrations canceled under this section during the calendar

25 year.

26     SECTION 2.06.  Section 18.065, Election Code, is amended by

27 adding Subsections (e), (f), (g), (h), and (i) to read as follows:

1    (e)  If the secretary of state determines that a voter

2  registrar is not in substantial compliance with a requirement

3  imposed on the registrar by a provision or rule described in

4  Subsection (a), the secretary of state shall:

5        (1)  for the first violation, require the registrar to

6  attend a training course under Subsection (h);

7        (2)  for the second violation, audit the voter

8  registration list for the county in which the registrar serves to

9  determine the actions needed to achieve substantial compliance

10  under Subsection (a) and provide the results of the audit to the

11  registrar; or

12        (3)  for a third or subsequent violation, if the

13  secretary of state determines that the registrar has not performed

14  any overt actions in pursuance of compliance with the actions

15  identified under Subdivision (2) as necessary for the registrar to

16  achieve substantial compliance under Subsection (a) within 14 days

17  of receiving the results of the audit conducted under that

18  subsection, inform the attorney general that the county which the

19  registrar serves may be subject to a civil penalty under Subsection

20  (f).

21    (f)  A county is liable to this state for a civil penalty of

22  $1,000 for each day after the 14th day following the receipt of the

23  results of the audit conducted under Subsection (e)(2) that the

24  county's voter registrar fails to take overt action to comply with

25  the actions identified under that subsection as necessary for the

26  registrar to achieve substantial compliance under Subsection (a).

27  The attorney general may bring an action to recover a civil penalty

1  imposed under this section.

2      (g)  A civil penalty collected by the attorney general under

3  this section shall be deposited in the state treasury to the credit

4  of the general revenue fund.

5      (h)  The secretary of state shall develop and implement a

6  training course for registrars on substantial compliance with

7  Sections 15.083, 16.032, and 18.061 and with rules implementing the

8  statewide computerized voter registration list.

9      (i)  The secretary of state shall adopt rules and prescribe

10  procedures for the implementation of this section.

11      SECTION 2.07.  Section 18.068, Election Code, is amended by

12  amending Subsection (a) and adding Subsection (a-1) to read as

13  follows:

14      (a)  The secretary of state shall quarterly compare the

15  information received under Section 16.001 of this code and Sections

16  [Section] 62.113 and 62.114, Government Code, to the statewide

17  computerized voter registration list.  If the secretary determines

18  that a voter on the registration list is deceased or has been

19  excused or disqualified from jury service because the voter is not a

20  citizen or a resident of the county in which the voter is registered

21  to vote, the secretary shall send notice of the determination

22  to the voter registrar of the counties considered appropriate by

23  the secretary.

24      (a-1)  The secretary of state is not required to send notice

25  under Subsection (a) for a voter who is subject to an exemption from

26  jury service under Section 62.106, Government Code, if that

27  exemption is the only reason the voter is excused from jury service.

1    SECTION 2.08.  Section 31.006, Election Code, is amended to

2  read as follows:

3    Sec. 31.006.  REFERRAL [OF COMPLAINT] TO ATTORNEY GENERAL.

4  (a)  If, after receiving or discovering information indicating that

5  [a complaint alleging] criminal conduct in connection with an

6  election has occurred, the secretary of state determines that there

7  is reasonable cause to suspect that [the alleged] criminal conduct

8  occurred,  the  secretary  shall  promptly  refer  the  information

9  [complaint] to the attorney general.  The secretary shall deliver

10  to the attorney general all pertinent documents and information in

11  the secretary's possession.

12    (b)  The   documents   and   information   submitted   under

13  Subsection (a) are not considered public information until:

14    (1)  the secretary of state makes a determination that

15  the   information   [complaint]   received   does   not   warrant   an

16  investigation; or

17    (2)  if referred to the attorney general, the attorney

18  general has completed the investigation or has made a determination

19  that  the  information  [complaint]  referred  does  not  warrant  an

20  investigation.

21    SECTION 2.09.  Subchapter B, Chapter 87, Election Code, is

22  amended by adding Section 87.028 to read as follows:

23    Sec. 87.028.  ACCESS TO INFORMATION.   (a)  On request, a

24  county  election  official  shall  provide  to  a  member  of  an  early

25  voting  ballot  board  all  available  information  necessary  to

26  fulfilling  the  functions  of  the  board,  including  any  information

27  from  the  statewide  computerized  voter  registration  list  under

11

S.B. No. 1

1  Section 18.061.

2      (b)  On request, a county election official shall provide to

3  a member of a signature verification committee all available

4  information necessary to fulfilling the functions of the committee,

5  including any information from the statewide computerized voter

6  registration list under Section 18.061.

7      (c)  The secretary of state shall adopt rules as necessary to

8  prevent a member of an early voting ballot board or signature

9  verification committee from retaining or sharing personally

10 identifiable information from the statewide computerized voter

11 registration list under Section 18.061 obtained under this section

12 for any reason unrelated to the official's official duties.

13     SECTION 2.10.  Section 62.113(b), Government Code, is

14 amended to read as follows:

15     (b)  On the third business day of each month, the clerk shall

16 send a copy of the list of persons excused or disqualified because

17 of citizenship in the previous month to:

18         (1)  the voter registrar of the county;

19         (2)  the secretary of state; and

20         (3)  the county or district attorney[, as applicable,]

21 for an investigation of whether the person committed an offense

22 under Section 13.007, Election Code, or other law.

23     SECTION 2.11.  Sections 62.114(b) and (c), Government Code,

24 are amended to read as follows:

25     (b)  On the third business day of each month, the clerk shall

26 send [to the voter registrar of the county] a copy of the list of

27 persons excused or disqualified in the previous month because the

12

S.B. No. 1

1   persons do not reside in the county to:

2            (1)   the voter registrar of the county; and

3            (2)   the secretary of state.

4       (c)  A list compiled under this section may not be used for a

5   purpose other than a purpose described by Subsection (b) or Section

6   15.081 or 18.068, Election Code.

7            ARTICLE 3.  CONDUCT AND SECURITY OF ELECTIONS

8       SECTION 3.01.  Section 2.053(a), Election Code, is amended

9   to read as follows:

10      (a)  On receipt of the certification, the governing body of

11  the political subdivision by order or ordinance shall [may] declare

12  each unopposed candidate elected to the office.  If no election is

13  to be held on election day by the political subdivision, a copy of

14  the order or ordinance shall be posted on election day at each

15  polling place used or that would have been used in the election.

16      SECTION 3.02.  Section 2.056(c), Election Code, is amended

17  to read as follows:

18      (c)  A certifying authority shall [may] declare a candidate

19  elected to an office of the state or county government if, were the

20  election held, only the votes cast for that candidate in the

21  election for that office may be counted.

22      SECTION 3.03.  Sections 43.007(c) and (d), Election Code,

23  are amended to read as follows:

24      (c)  In conducting the program, the secretary of state shall

25  provide for an audit of the voting system equipment [direct

26  recording electronic voting units] before and after the election,

27  and during the election to the extent such an audit is practicable.

13

1    (d)  The secretary of state shall select to participate in

2  the program each county that:

3         (1)  has held a public hearing under Subsection (b);

4         (2)  has submitted documentation listing the steps

5  taken to solicit input on participating in the program by

6  organizations or persons who represent the interests of voters;

7         (3)  has implemented a computerized voter registration

8  list that allows an election officer at the polling place to verify

9  that a voter has not previously voted in the election;

10         (4)  uses direct recording electronic voting machines,

11  ballot marking devices, or hand-marked scannable paper ballots that

12  are printed and scanned at the polling place or any other type of

13  voting system equipment that the secretary of state determines is

14  capable of processing votes for each type of ballot to be voted in

15  the county; and

16         (5)  is determined by the secretary of state to have the

17  appropriate technological capabilities.

18    SECTION 3.04.  Section 43.031(b), Election Code, is amended

19  to read as follows:

20    (b)  Each polling place shall be located inside a building.

21  No voter may cast a vote from inside a motor vehicle unless the

22  voter meets the requirements of Section 64.009.

23    SECTION 3.05.  Section 52.092(a), Election Code, is amended

24  to read as follows:

25    (a)  Except as provided by Section 2.053(c) or 2.056(e), for

26  [For] an election at which offices regularly filled at the general

27  election for state and county officers are to appear on the ballot,

14

1  the offices shall be listed in the following order:

2                (1)  offices of the federal government;

3                (2)  offices of the state government:

4                     (A)  statewide offices;

5                     (B)  district offices;

6                (3)  offices of the county government:

7                     (A)  county offices;

8                     (B)  precinct offices.

9        SECTION 3.06.  Section 61.002, Election Code, is amended to

10  read as follows:

11       Sec. 61.002.  OPENING AND CLOSING POLLING PLACE FOR VOTING.

12  (a)  Immediately before opening the polls for voting on the first

13  day of early voting and on election day, the presiding election

14  judge or alternate election judge shall confirm that each voting

15  machine has any public counter reset to zero and shall print the

16  tape that shows the counter was set to zero for each candidate or

17  measure on the ballot.

18       (b)  At the official time for opening the polls for voting,

19  an election officer shall open the polling place entrance and admit

20  the voters.

21       (c)  Immediately after closing the polls for voting on

22  election day, the presiding election judge or alternate election

23  judge shall print the tape to show the number of votes cast for each

24  candidate or ballot measure for each voting machine.

25       (d)  Each election judge or alternate election judge present

26  shall sign a tape printed under this section.

27       SECTION 3.07.  Section 64.007(c), Election Code, is amended

1 to read as follows:

2   (c)  An election officer shall maintain a register of spoiled

3 ballots at the polling place.  An election officer shall enter on

4 the register the name of each voter who returns a spoiled ballot and

5 the spoiled ballot's number.  The secretary of state shall create

6 and promulgate a form to be used for this purpose.

7   SECTION 3.08.  Subchapter A, Chapter 66, Election Code, is

8 amended by adding Section 66.004 to read as follows:

9   Sec. 66.004.  POLLING PLACE CHECKLISTS.  The secretary of

10 state  shall  adopt  rules  and  create  a  checklist  or  similar

11 guidelines to assist the presiding judge of a polling place in

12 processing forms and conducting procedures required by this code at

13 the opening and closing of the polling place.

14   SECTION 3.09.  Section 85.005, Election Code, is amended to

15 read as follows:

16   Sec. 85.005.  REGULAR DAYS AND HOURS FOR VOTING.  (a)  Except

17 as provided by Subsection (c), in an election in which a county

18 clerk [or city secretary] is the early voting clerk under Section

19 83.002 [or 83.005], early voting by personal appearance at the main

20 early voting polling place shall be conducted on each weekday of

21 [the weekdays of] the early voting period that is not a legal state

22 holiday and for a period of at least nine hours, except that voting

23 may not be conducted earlier than 6 a.m. or later than 10 p.m.

24 [during the hours that the county clerk's or city secretary's main

25 business office is regularly open for business.]

26   (b)  In an election to which Subsection (a) does not apply,

27 early voting by personal appearance at the main early voting

S.B. No. 1

1  polling place shall be conducted at least nine [eight] hours each
2  weekday of the early voting period that is not a legal state holiday
3  unless the territory covered by the election has fewer than 1,000
4  registered voters.  In that case, the voting shall be conducted at
5  least four [three] hours each day.  The authority ordering the
6  election, or the county clerk if that person is the early voting
7  clerk, shall determine which hours the voting is to be conducted.

8      (c)  In a county with a population of 55,000 [100,000] or
9  more, the voting in a primary election or the general election for
10  state and county officers shall be conducted at the main early
11  voting polling place for at least 12 hours on each weekday of the
12  last week of the early voting period, and the voting in a special
13  election ordered by the governor shall be conducted at the main
14  early voting polling place for at least 12 hours on each of the last
15  two days of the early voting period.  Voting under this subsection
16  may not be conducted earlier than 6 a.m. or later than 10 p.m.
17  Voting shall be conducted in accordance with this subsection in
18  those elections in a county with a population under 55,000
19  [100,000] on receipt by the early voting clerk of a written request
20  for the extended hours submitted by at least 15 registered voters of
21  the county.  The request must be submitted in time to enable
22  compliance with Section 85.067.

23      (d)  A voter who has not voted before the scheduled time for
24  closing a polling place is entitled to vote after that time if the
25  voter is in line at the polling place by closing time.  The
26  secretary of state shall promulgate any materials and provide any
27  training to presiding judges necessary to properly process voters

17

S.B. No. 1

1  under this subsection [In an election ordered by a city, early

2  voting by personal appearance at the main early voting polling

3  place shall be conducted for at least 12 hours:

4          [(1) on one weekday, if the early voting period

5  consists of less than six weekdays; or

6          [(2) on two weekdays, if the early voting period

7  consists of six or more weekdays].

8          SECTION 3.10.  Sections 85.006(b) and (e), Election Code,

9  are amended to read as follows:

10         (b)  In an election in which a county clerk [or city

11  secretary] is the early voting clerk under Section 83.002 [or

12  83.005], only the early voting clerk may order voting on a Saturday

13  or Sunday.  The clerk must do so by written order.

14         (e)  In a primary election or the general election for state

15  and county officers in a county with a population of 55,000

16  [100,000] or more, the early voting clerk shall order voting by

17  personal appearance [voting] at the main early voting polling place

18  to be conducted on the last Saturday of the early voting period for

19  at least 12 hours, except that voting may not be conducted earlier

20  than 6 a.m. or later than 10 p.m., [on the last Saturday] and on the

21  last Sunday of the early voting period for at least six [five]

22  hours, except that voting may not be conducted earlier than 9 a.m.

23  or later than 10 p.m [on the last Sunday of the early voting

24  period].  The early voting clerk shall order voting to be conducted

25  at those times in those elections in a county with a population

26  under 55,000 [100,000] on receipt of a written request for those

27  hours submitted by at least 15 registered voters of the county.  The

1  request must be submitted in time to enable compliance with Section

2  85.007.    This    subsection    supersedes    any    provision    of    this

3  subchapter to the extent of any conflict.

4       SECTION 3.11.  Section  85.010(a-1),  Election  Code,  is

5  amended to read as follows:

6       (a-1)  In  this  section,  "eligible  county  polling  place"

7  means an early voting polling place[, other than a polling place

8  established under Section 85.062(e),] established by a county.

9       SECTION 3.12.  Section 85.061(a), Election Code, is amended

10  to read as follows:

11      (a)  In a countywide election in which the county clerk is

12  the  early  voting  clerk  under  Section  83.002,  an  early  voting

13  polling place shall be located <u>inside</u> [at] each branch office that

14  is regularly maintained for conducting general clerical functions

15  of the county clerk, except as provided by Subsection (b).  <u>If a</u>

16  <u>suitable room is unavailable inside the branch office, the polling</u>

17  <u>place may be located in another room inside the same building as the</u>

18  <u>branch office.</u>

19      SECTION 3.13.  Section 85.062, Election Code, is amended by

20  amending Subsection (b) and adding Subsection (f-1) to read as

21  follows:

22      (b)  A polling place established under this section may be

23  located, subject to Subsection (d), at any place in the territory

24  served by the early voting clerk and may be located <u>inside</u> [in] any

25  <u>building</u> [stationary structure] as directed by the authority

26  establishing  the  branch  office.   The  polling  place  may  <u>not</u>  be

27  located in a movable structure in the general election for state and

1 county officers, general primary election, or runoff primary

2 election. Ropes or other suitable objects may be used at the

3 polling place to ensure compliance with Section 62.004. Persons

4 who are not expressly permitted by law to be in a polling place

5 shall be excluded from the polling place to the extent practicable.

6     (f-1) Notwithstanding any other provision of this section

7 concerning the location of temporary branch polling places, in an

8 election in which countywide polling places are used, the

9 commissioners court of a county shall employ the same methodology

10 it uses to determine the location of countywide polling places to

11 determine the location of temporary branch polling places.

12     SECTION 3.14. Section 87.002, Election Code, is amended to

13 read as follows:

14     Sec. 87.002. COMPOSITION OF BOARD. (a) The early voting

15 ballot board consists of a presiding judge, an alternate presiding

16 judge, and at least one [two] other member [members].

17     (b) Except as provided by Subsection (d), the presiding

18 judge and the alternate presiding judge are [is] appointed in the

19 same manner as a presiding election judge and alternate presiding

20 election judge, respectively. Except as provided by Subsection

21 (c), each [the] other member is [members are] appointed by the

22 presiding judge in the same manner as the precinct election clerks.

23     (c) In the general election for state and county officers,

24 each county chair of a political party with nominees on the general

25 election ballot shall submit to the county election board a list of

26 names of persons eligible to serve on the early voting ballot board

27 in order of the county chair's preference. The county election

1  board shall appoint at least one person from each list to serve as a

2  member of the early voting ballot board.  The same number of members

3  must be appointed from each list.  The county election board shall

4  appoint persons as members of the early voting ballot board in the

5  order of preference indicated on each list.

6      (d)  In addition to the members appointed under Subsection

7  (c), the county election board shall appoint as the presiding judge

8  the highest-ranked person on [from] the list provided under that

9  subsection by the political party whose nominee for governor

10  received the most votes in the county in the most recent

11  gubernatorial general election and as the alternate presiding judge

12  the highest-ranked person on the list provided under that

13  subsection by the political party whose nominee for governor

14  received the second most votes in the county in the most recent

15  gubernatorial general election.

16      SECTION 3.15.  Section 124.002, Election Code, is amended by

17  adding Subsection (c) to read as follows:

18      (c)  Voting system ballots may not be arranged in a manner

19  that allows a political party's candidates to be selected in one

20  motion or gesture.

21      SECTION 3.16.  Sections 127.006(a) and (c), Election Code,

22  are amended to read as follows:

23      (a)  The [Both the] manager, [and] the presiding judge, and

24  the alternate presiding judge may appoint clerks to serve at the

25  central counting station.

26      (c)  A clerk appointed by the manager serves under the

27  manager and shall perform the functions directed by the manager.  A

S.B. No. 1

1  clerk appointed by the presiding judge <u>or the alternate presiding</u>

2  <u>judge</u> serves under the presiding judge and shall perform the

3  functions directed by the presiding judge.

4     SECTION 3.17.  Subchapter A, Chapter 127, Election Code, is

5  amended by adding Section 127.009 to read as follows:

6     <u>Sec. 127.009.  ELECTRONIC  DEVICES  IN  CENTRAL  COUNTING</u>

7  <u>STATION.  (a)  A counting station manager and the presiding judge of</u>

8  <u>the counting station shall develop a protocol under which any</u>

9  <u>electronic device inside a central counting station that is</u>

10 <u>necessary to count votes is equipped with software that tracks all</u>

11 <u>input and activity on the electronic device.</u>

12    <u>(b)  The counting station manager and the presiding judge of</u>

13 <u>the counting station shall ensure that the input and activity</u>

14 <u>tracked by the software is delivered to the secretary of state not</u>

15 <u>later than the fifth day after vote counting is complete.</u>

16    <u>(c)  This section applies only to a central counting station</u>

17 <u>located in a county with a population of 250,000 or more.</u>

18    SECTION 3.18.  Section 127.1232, Election Code, is amended

19 to read as follows:

20    Sec. 127.1232.  SECURITY OF VOTED BALLOTS.  <u>(a)</u>  The general

21 custodian of election records shall post a <u>licensed peace officer</u>

22 [<s>guard</s>] to ensure the security of ballot boxes containing voted

23 ballots throughout the period of tabulation at the central counting

24 station.

25    <u>(b)  The general custodian of election records in a county</u>

26 <u>with a population of 100,000 or more shall implement a video</u>

27 <u>surveillance system that retains a record of all areas containing</u>

22

S.B. No. 1

1   voted ballots:

2          (1)   from the time the voted ballots are delivered to
3   the central counting station until the canvass of precinct election
4   returns; and

5          (2)   from the time the voted ballots are delivered to
6   the signature verification committee or early voting ballot board
7   until the canvass of precinct election returns.

8      (c)   A video from a system implemented under Subsection (b)
9   shall be made available to the public by a livestream.

10     (d)   The video recorded is an election record under Section
11  1.012 and shall be retained by the general custodian of election
12  records until the end of the calendar year in which an election is
13  held or until an election contest filed in the county has been
14  resolved, whichever is later.

15     SECTION 3.19.  Chapter 127, Election Code, as effective
16  September 1, 2021, is amended by adding Subchapter J to read as
17  follows:

18              SUBCHAPTER J.  RANDOMIZED AUDITS

19     Sec. 127.351.  RANDOMIZED COUNTY AUDITS.  (a)  Immediately
20  after the uniform election date in November of an even-numbered
21  year, the secretary of state shall conduct an audit of the elections
22  held in four counties during the previous two years.

23     (b)   The secretary of state shall select the counties to be
24  audited under Subsection (a) at random, except that:

25          (1)   two of the counties selected must have a total
26  population of less than 300,000;

27          (2)   two of the counties selected must have a total

23

S.B. No. 1

1  population of 300,000 or more; and

2          (3)  a county selected in the most recent audit cycle

3  may not be selected in the current audit cycle.

4     (c)  A county selected to be audited may not pay the cost of

5  performing an audit under this section.

6     (d)  The secretary of state shall adopt rules as necessary to

7  implement this section.

8          ARTICLE 4.  ELECTION OFFICERS AND OBSERVERS

9     SECTION 4.01.  Section 32.075, Election Code, is amended by

10  adding Subsections (g) and (h) to read as follows:

11     (g)  A presiding judge may not have a watcher duly accepted

12  for service under Subchapter A, Chapter 33, removed from the

13  polling place for violating a provision of this code or any other

14  provision of law relating to the conduct of elections, other than a

15  violation of the Penal Code, unless the violation was observed by an

16  election judge or clerk.

17     (h)  Notwithstanding Subsection (g), a presiding judge may

18  call a law enforcement officer to request that a poll watcher be

19  removed if the poll watcher commits a breach of the peace or a

20  violation of law.

21     SECTION 4.02.  Subchapter A, Chapter 33, Election Code, is

22  amended by adding Section 33.0015 to read as follows:

23     Sec. 33.0015.  CHAPTER PURPOSE AND WATCHER DUTY.  The

24  purpose of this chapter is to preserve the integrity of the ballot

25  box in accordance with Section 4, Article VI, Texas Constitution,

26  by providing for the appointment of watchers.  It is the intent of

27  the legislature that watchers duly accepted for service under this

S.B. No. 1

1 chapter be allowed to observe and report on irregularities in the

2 conduct of any election, but may not interfere in the orderly

3 conduct of an election. To effect that purpose, a watcher appointed

4 under this chapter shall observe without obstructing the conduct of

5 an election and call to the attention of an election officer any

6 observed or suspected irregularity or violation of law in the

7 conduct of the election.

8     SECTION 4.03. Subchapter A, Chapter 33, Election Code, is

9 amended by adding Section 33.0016 to read as follows:

10     Sec. 33.0016. REFERENCES TO EARLY VOTING BALLOT BOARD IN

11 THIS CHAPTER. A reference in this chapter to an early voting ballot

12 board includes a signature verification committee.

13     SECTION 4.04. Subchapter A, Chapter 33, Election Code, is

14 amended by adding Section 33.008 to read as follows:

15     Sec. 33.008. TRAINING PROGRAM. The secretary of state

16 shall develop and maintain a training program for watchers. The

17 training program must:

18         (1) be available:

19             (A) entirely via the Internet; and

20             (B) at any time, without a requirement for prior

21 registration; and

22         (2) provide a watcher who completes the training with

23 a certificate of completion.

24     SECTION 4.05. Section 33.031, Election Code, is amended by

25 adding Subsection (b) to read as follows:

26     (b) In addition to the requirements of Subsection (a), to be

27 eligible to serve as a watcher, a person must complete training

1  under Section 33.008.

2      SECTION 4.06.  Section 33.051, Election Code, is amended by

3  amending Subsections (a), (b), (d), and (e) and adding Subsections

4  (a-1), (g), and (h) to read as follows:

5      (a)  A watcher appointed to serve at a precinct polling

6  place, a meeting place for an early voting ballot board, or a

7  central counting station must deliver the following materials [a

8  certificate of appointment] to the presiding judge at the time the

9  watcher reports for service:

10          (1)  a certificate of appointment; and

11          (2)  a  certificate  of  completion  from  training

12  completed by the watcher under Section 33.008.

13      (a-1)  A watcher appointed to serve at an early voting

14  polling place must deliver the certificates under Subsection (a) [a

15  certificate of appointment] to the early voting clerk or deputy

16  clerk in charge of the polling place when the watcher first reports

17  for service.

18      (b)  The officer presented with a watcher's certificates

19  [certificate of appointment] shall require the watcher to

20  countersign the certificate of appointment to ensure that the

21  watcher is the same person who signed the certificate of

22  appointment.  Except as provided by Subsection (c), a watcher who

23  presents himself or herself at the proper time with the

24  certificates required under Subsection (a) [a certificate of

25  appointment] shall be accepted for service unless the person is

26  ineligible to serve or the number of appointees to which the

27  appointing authority is entitled have already been accepted.

S.B. No. 1

1    (d)  The certificates [certificate] of a watcher serving at

2    an early voting polling place shall be retained at the polling place

3    until voting at the polling place is concluded.  At each subsequent

4    time that the watcher reports for service, the watcher shall inform

5    the clerk or deputy in charge.  The officer may require the watcher

6    to sign the watcher's name in the officer's presence, for comparison

7    with the signature on the certificate of appointment, if the

8    officer is uncertain of the watcher's identity.

9    (e)  If a watcher is not accepted for service, the

10    certificates [certificate of appointment] shall be returned to the

11    watcher with a signed statement of the reason for the rejection.

12    (g)  An election officer commits an offense if the officer

13    intentionally or knowingly refuses to accept a watcher for service

14    when acceptance of the watcher is required by this section.  An

15    offense under this subsection is a Class A misdemeanor.

16    (h)  Before accepting a watcher, the officer presented with a

17    watcher's certificate of appointment shall require the watcher to

18    take the following oath, administered by the officer: "I swear (or

19    affirm) that I will not disrupt the voting process or harass voters

20    in the discharge of my duties."

21    SECTION 4.07.  Section 33.056, Election Code, is amended by

22    amending Subsection (a) and adding Subsections (e) and (f) to read

23    as follows:

24    (a)  Except as provided by Section 33.057, a watcher is

25    entitled to observe any activity conducted at the location at which

26    the watcher is serving.  A watcher is entitled to sit or stand

27    [conveniently] near enough to see and hear the election officers

27

S.B. No. 1

1  conducting the observed activity, except as otherwise prohibited by

2  this chapter.

3      (e)  Except as provided by Section 33.057(b), a watcher may

4  not be denied free movement where election activity is occurring

5  within the location at which the watcher is serving.

6      (f)  In this code, a watcher who is entitled to "observe" an

7  election activity is entitled to sit or stand near enough to see and

8  hear the activity.

9      SECTION 4.08.  Subchapter C, Chapter 33, Election Code, is

10  amended by adding Section 33.0605 to read as follows:

11      Sec. 33.0605.  OBSERVING DATA STORAGE SEALING AND TRANSFER.

12  (a) A watcher appointed to serve at a polling place in an election

13  who is available at the time of the action may observe all election

14  activities relating to closing the polling place, including the

15  sealing and transfer of a memory card, flash drive, hard drive, data

16  storage device, or other medium now existing or later developed

17  used by the voting system equipment.

18      (b)  Notwithstanding any other provision of this code, a

19  watcher duly accepted for service at a polling location is entitled

20  to follow the transfer of election materials from the polling place

21  at which the watcher was accepted to a regional tabulating center,

22  the central counting station, or any other location designated to

23  process election materials.  The authority responsible for

24  administering a regional tabulating center or another location

25  where election materials are processed must accept duly appointed

26  watchers for service in the same manner a watcher is accepted for

27  service under Section 33.051 and must accept the same number of

1 watchers that may serve under Section 33.007(a).

2     SECTION 4.09.  Section 33.061(a), Election Code, is amended

3 to read as follows:

4     (a)  A person commits an offense if the person serves in an

5 official capacity at a location at which the presence of watchers is

6 authorized and knowingly prevents a watcher from observing an

7 activity or procedure the person knows the watcher is entitled to

8 observe, including by taking any action to obstruct the view of a

9 watcher or distance the watcher from the activity or procedure to be

10 observed in a manner that would make observation not reasonably

11 effective.

12     SECTION 4.10.  Subchapter C, Chapter 33, Election Code, is

13 amended by adding Section 33.063 to read as follows:

14     Sec. 33.063.  RELIEF.   The appointing authority for a

15 watcher who believes that the watcher was unlawfully prevented or

16 obstructed from the performance of the watcher's duties may seek:

17     (1)  injunctive relief under Section 273.081,

18 including issuance of temporary orders;

19     (2)  a writ of mandamus under Section 161.009 or

20 273.061; and

21     (3)  any other remedy available under law.

22     SECTION 4.11.  Section 34.005, Election Code, is amended to

23 read as follows:

24     Sec. 34.005.  ACTION BY SECRETARY OF STATE.   (a)  The

25 secretary of state may refer a reported violation of law for

26 appropriate action to the attorney general, if the attorney general

27 has jurisdiction, or to a prosecuting attorney having jurisdiction.

S.B. No. 1

1    (b) If the secretary of state believes that a state

2 inspector was unlawfully prevented or obstructed from the

3 performance of the inspector's duties, the secretary of state may

4 seek:

5    (1) injunctive relief under Section 273.081,

6 including issuance of temporary orders;

7    (2) a writ of mandamus under Section 161.009 or

8 273.061; and

9    (3) any other remedy available under law.

10    SECTION 4.12.  Section 86.006, Election Code, is amended by

11 amending Subsection (a) and adding Subsection (a-2) to read as

12 follows:

13    (a) A marked ballot voted under this chapter must be

14 returned to the early voting clerk in the official carrier

15 envelope.  The carrier envelope may be delivered in another

16 envelope and must be transported and delivered only by:

17    (1) mail;

18    (2) common or contract carrier; or

19    (3) subject to Subsections [Subsection] (a-1) and

20 (a-2), in-person delivery by the voter who voted the ballot.

21    (a-2) An in-person delivery of a marked ballot voted under

22 this chapter must be received by an election official at the time of

23 delivery.  The receiving official shall record the voter's name,

24 signature, and type of identification provided under Section

25 63.0101 on a roster prescribed by the secretary of state.  The

26 receiving official shall attest on the roster that the delivery

27 complies with this section.

1    SECTION 4.13.  Chapter 121, Election Code, is amended by

2    adding Section 121.004 to read as follows:

3    Sec. 121.004.  COMMUNICATIONS WITH VOTING SYSTEMS VENDOR

4    PUBLIC INFORMATION.  (a) Except as provided by Subsection (b), a

5    written letter, e-mail, or other communication, including a

6    communication made confidential by other law, between a public

7    official and a voting systems vendor:

8              (1)  is not confidential;

9              (2)  is public information for purposes of Chapter 552,

10    Government Code; and

11             (3)  is not subject to an exception to disclosure

12    provided by Chapter 552, Government Code, other than Sections

13    552.110 and 552.1101, Government Code.

14    (b)  A written letter, e-mail, or other communication

15    between a public official and a voting systems vendor is excepted

16    from disclosure under Chapter 552, Government Code, if the

17    communication discloses information, data, or records relating to

18    the security of elections critical infrastructure.

19    SECTION 4.14.  Section 127.1301, Election Code, is amended

20    to read as follows:

21    Sec. 127.1301.  [TALLYING, TABULATING, AND REPORTING]

22    CENTRALLY COUNTED OPTICAL SCAN BALLOTS [BALLOT UNDERVOTES AND

23    OVERVOTES].  (a)  In an election using centrally counted optical

24    scan ballots, the undervotes and overvotes on those ballots shall

25    be tallied, tabulated, and reported by race and by election

26    precinct in the form and manner prescribed by the secretary of

27    state.

S.B. No. 1

1    (b)  An authority operating a central counting station under
2    this chapter may not purchase or use a centrally counted optical
3    ballot scan system that uses a data storage disc on which
4    information, once written, is capable of being modified.

5    (c)  An authority that purchases system components in order
6    to comply with this section is eligible to have 100 percent of the
7    cost of those system components reimbursed.

8    (d)  Subsection (b) applies starting on the earlier of:

9        (1)  the date on which the state certifies the first
10   centrally counted optical ballot scan system under this section; or

11       (2)  September 1, 2026.

12   (e)  This subsection and Subsection (d) expire October 1,
13   2026.

14   SECTION 4.15.  Section 127.131, Election Code, is amended by
15   adding Subsection (f) to read as follows:

16   (f)  The presiding judge of the central counting station
17   shall provide and attest to a written reconciliation of votes and
18   voters at the close of tabulation for election day and again after
19   the central counting station meets for the last time to process
20   late-arriving ballots by mail and provisional ballots.  The
21   secretary of state shall create and promulgate rules and a form to
22   facilitate compliance with this subsection.  The form shall be
23   posted on a website maintained by the county along with election
24   returns and results.

25   SECTION 4.16.  Section 129.023, Election Code, is amended by
26   adding Subsections (b-2) and (c-1) to read as follows:

27   (b-2)  If the test is being conducted for an election in

32

S.B. No. 1

1 which a county election board has been established under Section

2 51.002, the general custodian of election records shall notify each

3 member of the board of the test at least 48 hours before the date of

4 the test. If the county election board chooses to witness the test,

5 each member shall sign the statement required by Subsection (e)(1).

6      (c-1)  A test conducted under this section must also require

7 the general custodian of election records to demonstrate, using a

8 representative sample of voting system equipment, that the source

9 code of the equipment has not been altered.

10                ARTICLE 5.  VOTING BY MAIL

11      SECTION 5.01.  Section 84.001(b), Election Code, is amended

12 to read as follows:

13      (b)  Subject to Section 1.011, an [An] application must be

14 submitted in writing and signed by the applicant using ink on paper.

15 An electronic signature or photocopied signature is not permitted.

16      SECTION 5.02.  Section 84.002, Election Code, as effective

17 September 1, 2021, is amended by amending Subsection (a) and adding

18 Subsection (b-1) to read as follows:

19      (a)  An early voting ballot application must include:

20           (1)  the applicant's name and the address at which the

21 applicant is registered to vote;

22           (1-a)  the following information:

23                (A)  the number of the applicant's driver's

24 license, election identification certificate, or personal

25 identification card issued by the Department of Public Safety;

26                (B)  if the applicant has not been issued a number

27 described by Paragraph (A), the last four digits of the applicant's

S.B. No. 1

1  social security number; or

2         (C) a statement by the applicant that the

3  applicant has not been issued a number described by Paragraph (A) or

4  (B);

5         (2)  for an application for a ballot to be voted by mail

6  on the ground of absence from the county of residence, the address

7  outside the applicant's county of residence to which the ballot is

8  to be mailed;

9         (3)  for an application for a ballot to be voted by mail

10 on the ground of age or disability, the address of the hospital,

11 nursing home or other long-term care facility, or retirement

12 center, or of a person related to the applicant within the second

13 degree by affinity or the third degree by consanguinity, as

14 determined under Chapter 573, Government Code, if the applicant is

15 living at that address and that address is different from the

16 address at which the applicant is registered to vote;

17        (4)  for an application for a ballot to be voted by mail

18 on the ground of confinement in jail, the address of the jail or of a

19 person related to the applicant within the degree described by

20 Subdivision (3);

21        (5)  for an application for a ballot to be voted by mail

22 on any ground, an indication of each election for which the

23 applicant is applying for a ballot;

24        (6)  an indication of the ground of eligibility for

25 early voting; and

26        (7)  for an application for a ballot to be voted by mail

27 on the ground of involuntary civil commitment, the address of the

S.B. No. 1

1 facility operated by or under contract with the Texas Civil
2 Commitment Office or of a person related to the applicant within the
3 degree of consanguinity described by Subdivision (3).

4    (b-1) A person may use the number of a driver's license,
5 election identification certificate, or personal identification
6 card that has expired for the purpose of fulfilling the requirement
7 under Subsection (a)(1-a) if the license or identification is
8 otherwise valid.

9    SECTION 5.03. Section 84.011(a), Election Code, as
10 effective September 1, 2021, is amended to read as follows:

11    (a) The officially prescribed application form for an early
12 voting ballot must include:

13    (1) immediately preceding the signature space the
14 statement: "I certify that the information given in this
15 application is true, and I understand that giving false information
16 in this application is a crime.";

17    (2) a statement informing the applicant of the
18 offenses prescribed by Sections 84.003 and 84.004;

19    (3) spaces for entering an applicant's voter
20 registration number and county election precinct of registration,
21 with a statement informing the applicant that failure to furnish
22 that information does not invalidate the application;

23    (3-a) a space for entering the information required
24 under Section 84.002(a)(1-a); and

25    (4) on an application for a ballot to be voted by mail:

26    (A) a space for an applicant applying on the
27 ground of absence from the county of residence to indicate the date

35

1  on or after which the applicant can receive mail at the address

2  outside the county;

3           (B)  a space for indicating the fact that an

4  applicant whose application is signed by a witness cannot make the

5  applicant's mark and a space for indicating the relationship or

6  lack of relationship of the witness to the applicant;

7           (C)  a space for entering an applicant's telephone

8  number, with a statement informing the applicant that failure to

9  furnish that information does not invalidate the application;

10          (D)  a space or box for an applicant applying on

11 the ground of age or disability to indicate that the address to

12 which the ballot is to be mailed is the address of a facility or

13 relative described by Section 84.002(a)(3), if applicable;

14          (E)  a space or box for an applicant applying on

15 the ground of confinement in jail or involuntary civil commitment

16 to indicate that the address to which the ballot is to be mailed is

17 the address of a relative described by Section 84.002(a)(4) or (7),

18 if applicable;

19          (F)  a space for an applicant applying on the

20 ground of age or disability to indicate if the application is an

21 application under Section 86.0015;

22          (G)  spaces for entering the signature, printed

23 name, and residence address of any person assisting the applicant;

24          (H)  a statement informing the applicant of the

25 condition prescribed by Section 81.005; and

26          (I)  a statement informing the applicant of the

27 requirement prescribed by Section 86.003(c).

S.B. No. 1

1    SECTION 5.04.  Subchapter A, Chapter 84, Election Code, is

2  amended by adding Section 84.0111 to read as follows:

3    Sec. 84.0111.  DISTRIBUTION OF APPLICATION FORM.  (a)

4  Except as provided by Subsection (c) or as otherwise authorized by

5  this code, an officer or employee of this state or of a political

6  subdivision of this state may not distribute an application form

7  for an early voting ballot to a person who did not request an

8  application under Section 84.001.

9    (b)  An officer or employee of this state or of a political

10  subdivision of this state may not use public funds to facilitate the

11  distribution by another person of an application form for an early

12  voting ballot to a person who did not request an application under

13  Section 84.001.

14    (c)  A political party or a candidate for office may

15  distribute an application form for an early voting ballot to a

16  person who did not request an application under Section 84.001.

17    SECTION 5.05.  Section 84.032(c), Election Code, is amended

18  to read as follows:

19    (c)  An applicant may submit a request after the close of

20  early voting by personal appearance by appearing in person and:

21        (1)  returning the ballot to be voted by mail to the

22  early voting clerk; or

23        (2)  executing an affidavit that the applicant:

24            (A)  has not received the ballot to be voted by

25  mail; [or]

26            (B)  never requested a ballot to be voted by mail;

27  or

S.B. No. 1

1          (C)  received notice of a defect under Section

2 87.0271(b) or (c) or 87.0411(b) or (c).

3     SECTION 5.06.  Section 84.035, Election Code, is amended to

4 read as follows:

5     Sec. 84.035.  BALLOT SENT TO APPLICANT.  (a)  If the early

6 voting clerk cancels an application by an applicant to whom an early

7 voting ballot has been sent, the clerk shall:

8          (1)  remove the applicant's name from the early voting

9 roster; and

10          (2)  make any other entries in the records and take any

11 other action necessary to prevent the ballot from being counted if

12 returned.

13     (b)  An election judge may permit a person to whom an early

14 voting ballot has been sent who cancels the person's application

15 for a ballot to be voted by mail in accordance with Section 84.032

16 but fails to return the ballot to be voted by mail to the early

17 voting clerk, deputy early voting clerk, or presiding judge as

18 provided by that section to vote only a provisional ballot under

19 Section 63.011.

20     SECTION 5.07.  Section 86.001, Election Code, is amended by

21 adding Subsections (f), (f-1), and (f-2) to read as follows:

22     (f)  If  the  information  required  under  Section

23 84.002(a)(1-a) included on the application does not identify the

24 same voter identified on the applicant's application for voter

25 registration under Section 13.002(c)(8), the clerk shall reject the

26 application.

27     (f-1)  If an application is rejected under Subsection (f),

S.B. No. 1

1  the clerk shall provide notice of the rejection in accordance with

2  Subsection (c).  The notice must include information regarding the

3  ability to correct or add information required under Section

4  84.002(a)(1-a) through the online tool described by Section

5  86.015(c).

6      (f-2)  If an applicant corrects an application for a ballot

7  to be voted by mail online and that application subsequently

8  identifies the same voter identified on the applicant's application

9  for voter registration, the clerk shall provide a ballot to the

10  applicant as provided by this chapter.

11      SECTION 5.08.  Section 86.002, Election Code, is amended by

12  adding Subsections (g), (h), and (i) to read as follows:

13      (g)  The carrier envelope must include a space that is hidden

14  from view when the envelope is sealed for the voter to enter the

15  following information:

16          (1)  the number of the voter's driver's license,

17  election identification certificate, or personal identification

18  card issued by the Department of Public Safety;

19          (2)  if the voter has not been issued a number described

20  by Subdivision (1), the last four digits of the voter's social

21  security number; or

22          (3)  a statement by the applicant that the applicant

23  has not been issued a number described by Subdivision (1) or (2).

24      (h)  A person may use the number of a driver's license,

25  election identification certificate, or personal identification

26  card that has expired for purposes of Subsection (g) if the license

27  or identification is otherwise valid.

S.B. No. 1

1    (i)  No record associating an individual voter with a ballot

2    may be created.

3    SECTION 5.09.  Section 86.011(c), Election Code, is amended

4    to read as follows:

5    (c)  If the return is not timely, the clerk shall enter the

6    time of receipt on the carrier envelope and retain it in a locked

7    container for the period for preserving the precinct election

8    records.  The clerk shall destroy the unopened envelope and its

9    contents after the preservation period.

10    SECTION 5.10.  Section  86.015(c),  Election  Code,  as

11    effective September 1, 2021, is amended to read as follows:

12    (c)  An online tool used under this section must:

13    (1)  for each election, record:

14    (A)  each application for a ballot to be voted by

15    mail received by the clerk; and

16    (B)  each carrier envelope sent to a voter by the

17    clerk;

18    (2)  for each carrier envelope, record or assign a

19    serially numbered and sequentially issued barcode or tracking

20    number that is unique to each envelope; [and]

21    (3)  update the applicable Internet website as soon as

22    practicable after each of the following events occurs:

23    (A)  receipt by the early voting clerk of the

24    person's application for a ballot to be voted by mail;

25    (B)  acceptance or rejection by the early voting

26    clerk of the person's application for a ballot to be voted by mail;

27    (C)  placement in the mail by the early voting

<u>S.B. No. 1</u>

1  clerk of the person's official ballot;

2          (D)  receipt by the early voting clerk of the

3  person's marked ballot; and

4          (E)  acceptance or rejection by the early voting

5  ballot board of a person's marked ballot<u>; and</u>

6          <u>(4)  allow a voter to add or correct information</u>

7  <u>required under Section 84.002(a)(1-a) or Section 86.002(g)</u>.

8          SECTION 5.11.  Sections 87.027(d), (e), and (i), Election

9  Code, are amended to read as follows:

10          (d)  The early voting clerk shall determine the number of

11  members who are to compose the signature verification committee and

12  shall state that number in the order calling for the committee's

13  appointment.  A committee must consist of not fewer than five

14  members.  In an election in which party alignment is indicated on

15  the ballot, each county chair of a political party with a nominee or

16  aligned candidate on the ballot shall submit to the appointing

17  authority a list of names of persons eligible to serve on the

18  signature verification committee <u>in order of the  county chair's</u>

19  <u>preference</u>.  The authority shall appoint at least two persons from

20  each list <u>in the order of preference indicated on each list</u> to serve

21  as members of the committee.  The same number of members must be

22  appointed from each list.  The authority shall appoint <u>as</u> [the]

23  chair of the committee <u>the highest-ranked person on</u> [from] the list

24  provided by the political party whose nominee for governor received

25  the most votes in the county in the most recent gubernatorial

26  general election.  <u>The authority shall appoint as vice chair of the</u>

27  <u>committee the highest-ranked person on the list provided by the</u>

<u>41</u>

S.B. No. 1

1  political party whose nominee for governor received the second most

2  votes in the county in the most recent gubernatorial general

3  election.  A vacancy on the committee shall be filled by appointment

4  from the original list or from a new list submitted by the

5  appropriate county chair.

6      (e)  To be eligible to serve on a signature verification

7  committee, a person must be eligible under Subchapter C, Chapter

8  32, for service as a presiding election judge, except that the

9  person must be a qualified voter:

10         (1)  of the county, in a countywide election ordered by

11  the governor or a county authority or in a primary election;

12         (2)  of the part of the county in which the election is

13  held, for an election ordered by the governor or a county authority

14  that does not cover the entire county of the person's residence; or

15         (3)  of the political subdivision, in an election

16  ordered by an authority of a political subdivision other than a

17  county.

18      (i)  The signature verification committee shall compare the

19  signature on each carrier envelope certificate, except those signed

20  for a voter by a witness, with the signature on the voter's ballot

21  application to determine whether the signatures are those of the

22  voter.  The committee may also compare the signatures with any

23  known signature [two or more signatures] of the voter [made within

24  the preceding six years and] on file with the county clerk or voter

25  registrar to determine whether the signatures are those of the

26  voter.  Except as provided by Subsection (l), a determination under

27  this subsection that the signatures are not those of the voter must

42

S.B. No. 1

1  be made by a majority vote of the committee's membership.  The

2  committee shall place the jacket envelopes, carrier envelopes, and

3  applications of voters whose signatures are not those of the voter

4  in separate containers from those of voters whose signatures are

5  those of the voter.  The committee chair shall deliver the sorted

6  materials to the early voting ballot board at the time specified by

7  the board's presiding judge.

8        SECTION 5.12.  Subchapter B, Chapter 87, Election Code, is

9  amended by adding Section 87.0271 to read as follows:

10       Sec. 87.0271.  OPPORTUNITY TO CORRECT DEFECT:  SIGNATURE

11  VERIFICATION COMMITTEE.  (a)  This section applies to an early

12  voting ballot voted by mail:

13            (1)  for which the voter did not sign the carrier

14  envelope certificate;

15            (2)  for which it cannot immediately be determined

16  whether the signature on the carrier envelope certificate is that

17  of the voter;

18            (3)  missing any required statement of residence;

19            (4)  missing information or containing incorrect

20  information required under Section 84.002(a)(1-a) or Section

21  86.002; or

22            (5)  containing incomplete information with respect to

23  a witness.

24       (b)  Not later than the second business day after a signature

25  verification committee discovers a defect described by Subsection

26  (a) and before the committee decides whether to accept or reject a

27  timely delivered ballot under Section 87.027, the committee shall:

43

S.B. No. 1

1          (1)  determine if it would be possible for the voter to

2  correct the defect and return the carrier envelope before the time

3  the polls are required to close on election day; and

4          (2)  return the carrier envelope to the voter by mail,

5  if the committee determines that it would be possible for the voter

6  to correct the defect and return the carrier envelope before the

7  time the polls are required to close on election day.

8      (c)  If the signature verification committee determines

9  under Subsection (b)(1) that it would not be possible for the voter

10  to correct the defect and return the carrier envelope before the

11  time the polls are required to close on election day, the committee

12  may notify the voter of the defect by telephone or e-mail and inform

13  the voter that the voter may request to have the voter's application

14  to vote by mail canceled in the manner described by Section 84.032

15  or come to the early voting clerk's office in person not later than

16  the sixth day after election day to correct the defect.

17      (d)  If the signature verification committee takes an action

18  described by Subsection (b) or (c), the committee must take either

19  action described by that subsection with respect to each ballot in

20  the election to which this section applies.

21      (e)  A poll watcher is entitled to observe an action taken

22  under Subsection (b) or (c).

23      (f)  The secretary of state may prescribe any procedures

24  necessary to implement this section.

25      (g)  Notwithstanding any other law, a ballot may not be

26  finally rejected for a reason listed in Section 87.041(b)(1), (2),

27  or (6) before the seventh day after election day.

44

1    SECTION 5.13.  Section 87.041, Election Code, is amended by

2  amending Subsections (b) and (e) and adding Subsection (d-1) to

3  read as follows:

4    (b)  A ballot may be accepted only if:

5        (1)  the carrier envelope certificate is properly

6  executed;

7        (2)  neither the voter's signature on the ballot

8  application nor the signature on the carrier envelope certificate

9  is determined to have been executed by a person other than the

10  voter, unless signed by a witness;

11        (3)  the voter's ballot application states a legal

12  ground for early voting by mail;

13        (4)  the voter is registered to vote, if registration

14  is required by law;

15        (5)  the address to which the ballot was mailed to the

16  voter, as indicated by the application, was outside the voter's

17  county of residence, if the ground for early voting is absence from

18  the county of residence;

19        (6)  for a voter to whom a statement of residence form

20  was required to be sent under Section 86.002(a), the statement of

21  residence is returned in the carrier envelope and indicates that

22  the voter satisfies the residence requirements prescribed by

23  Section 63.0011; [and]

24        (7)  the address to which the ballot was mailed to the

25  voter is an address that is otherwise required by Sections 84.002

26  and 86.003; and

27        (8)  the information required under Section 86.002(q)

1  provided by the voter identifies the same voter identified on the

2  voter's application for voter registration under Section

3  13.002(c)(8).

4      (d-1)  If a voter provides the information required under

5  Section 86.002(g) and it identifies the same voter identified on

6  the voter's application for voter registration under Section

7  13.002(c)(8), the signature on the ballot application and on the

8  carrier envelope certificate  shall be rebuttably presumed to be

9  the signatures of the voter.

10     (e)  In making the determination under Subsection (b)(2), to

11  determine whether the signatures are those of the voter, the board

12  may also compare the signatures with any known signature [two or

13  more signatures] of the voter [made within the preceding six years

14  and] on file with the county clerk or voter registrar [to determine

15  whether the signatures are those of the voter].

16     SECTION 5.14.  Subchapter C, Chapter 87, Election Code, is

17  amended by adding Section 87.0411 to read as follows:

18     Sec. 87.0411.  OPPORTUNITY TO CORRECT DEFECT:  EARLY VOTING

19  BALLOT BOARD.  (a)  This section applies to an early voting ballot

20  voted by mail:

21          (1)  for which the voter did not sign the carrier

22  envelope certificate;

23          (2)  for which it cannot immediately be determined

24  whether the signature on the carrier envelope certificate is that

25  of the voter;

26          (3)  missing any required statement of residence;

27          (4)  missing information or containing incorrect

S.B. No. 1

1  information required under Section 84.002(a)(1-a) or Section

2  86.002; or

3          (5)  containing incomplete information with respect to

4  a witness.

5          (b)  Not later than the second business day after an early

6  voting ballot board discovers a defect described by Subsection (a)

7  and before the board decides whether to accept or reject a timely

8  delivered ballot under Section 87.041, the board shall:

9          (1)  determine if it would be possible for the voter to

10  correct the defect and return the carrier envelope before the time

11  the polls are required to close on election day; and

12          (2)  return the carrier envelope to the voter by mail,

13  if the board determines that it would be possible for the voter to

14  correct the defect and return the carrier envelope before the time

15  the polls are required to close on election day.

16          (c)  If the early voting ballot board determines under

17  Subsection (b)(1) that it would not be possible for the voter to

18  correct the defect and return the carrier envelope before the time

19  the polls are required to close on election day, the board may

20  notify the voter of the defect by telephone or e-mail and inform the

21  voter that the voter may request to have the voter's application to

22  vote by mail canceled in the manner described by Section 84.032 or

23  come to the early voting clerk's office in person not later than the

24  sixth day after election day to correct the defect.

25          (d)  If the early voting ballot board takes an action

26  described by Subsection (b) or (c), the board must take either

27  action described by that subsection with respect to each ballot in

47

S.B. No. 1

1  the election to which this section applies.

2      (e)  A poll watcher is entitled to observe an action taken

3  under Subsection (b) or (c).

4      (f)  The secretary of state may prescribe any procedures

5  necessary to implement this section.

6      (g)  Notwithstanding any other law, a ballot may not be

7  finally rejected for a reason listed in Section 87.041(b)(1), (2),

8  or (6) before the seventh day after election day.

9      SECTION 5.15.  Section 87.0431(b), Election Code, is amended

10 to read as follows:

11     (b)  The early voting clerk shall, not later than the 30th

12 day after election day, deliver notice to the attorney general,

13 including  certified  copies  of  the  carrier  envelope  and

14 corresponding ballot application, of any ballot rejected because:

15         (1)  the voter was deceased;

16         (2)  the voter already voted in person in the same

17 election;

18         (3)  the signatures on the carrier envelope and ballot

19 application were not executed by the same person;

20         (4)  the carrier envelope certificate lacked a witness

21 signature; [or]

22         (5)  the carrier envelope certificate was improperly

23 executed by an assistant; or

24         (6)  the early voting ballot board or the signature

25 verification committee determined that another violation of the

26 Election Code occurred.

27     SECTION 5.16.  Sections 87.062(a) and (c), Election Code,

1 are amended to read as follows:

2      (a)  On the direction of the presiding judge, the early

3 voting ballot board, in accordance with Section 85.032(b), shall

4 open the containers [container] for the early voting ballots that

5 are to be counted by the board, remove the contents from each [the]

6 container, and remove any ballots enclosed in ballot envelopes from

7 their envelopes.

8      (c)  Ballots voted by mail shall be tabulated and stored

9 separately from the ballots voted by personal appearance and shall

10 be separately reported on the returns [The results of all early

11 voting ballots counted by the board under this subchapter shall be

12 included in the same return].

13      SECTION 5.17.  Section 87.103, Election Code, is amended to

14 read as follows:

15      Sec. 87.103.  COUNTING BALLOTS AND PREPARING RETURNS.  (a)

16 The early voting electronic system ballots counted at a central

17 counting station, the ballots cast at precinct polling places, and

18 the ballots voted by mail shall be tabulated separately [from the

19 ballots cast at precinct polling places] and shall be separately

20 reported on the returns.

21      (b)  The early voting returns prepared at the central

22 counting station must include any early voting results obtained by

23 the early voting ballot board under Subchapter [Subchapters] D [and

24 E].

25      SECTION 5.18.  Section 87.126, Election Code, is amended by

26 adding Subsection (a-1) to read as follows:

27      (a-1)  Electronic records made under this section shall

S.B. No. 1

1  record both sides of any application, envelope, or ballot recorded,

2  and all such records shall be provided to the early voting ballot

3  board, the signature verification committee, or both.

4      SECTION 5.19.  Subchapter G, Chapter 87, Election Code, is

5  amended by adding Section 87.128 to read as follows:

6      Sec. 87.128.  NOTES.  (a)  Each member of an early voting

7  ballot board and each member of a signature verification committee

8  is entitled to take any notes reasonably necessary to perform the

9  member's duties under this chapter.

10     (b)  Notes taken under this section may not contain

11  personally identifiable information.

12     (c)  Each member who takes notes under this section shall

13  sign the notes and deliver them to the presiding judge or committee

14  chair, as applicable, for delivery to the custodian of election

15  records.

16     (d)  Notes collected under this section shall be preserved in

17  the same manner as precinct election records under Section 66.058.

18          ARTICLE 6.  ASSISTANCE OF VOTERS

19     SECTION 6.01.  Section 64.009, Election Code, is amended by

20  amending Subsection (b) and adding Subsections (e), (f), (f-1),

21  (g), and (h) to read as follows:

22     (b)  The regular voting procedures, except those in

23  Subchapter B, may be modified by the election officer to the extent

24  necessary to conduct voting under this section.

25     (e)  Except as provided by Section 33.057, a poll watcher is

26  entitled to observe any activity conducted under this section.

27     (f)  A person who simultaneously assists seven or more voters

1  voting under this section by providing the voters with
2  transportation to the polling place must complete and sign a form,
3  provided by an election officer, that contains the person's name
4  and address and whether the person is providing assistance solely
5  under this section or under both this section and Subchapter B.

6  (f-1)  Subsection (f) does not apply if the person is related
7  to each voter within the second degree by affinity or the third
8  degree by consanguinity, as determined under Subchapter B, Chapter
9  573, Government Code.

10  (g)  A form completed under Subsection (f) shall be delivered
11  to the secretary of state as soon as practicable.  The secretary
12  shall retain a form delivered under this section for the period for
13  preserving the precinct election records and shall make the form
14  available to the attorney general for inspection upon request.

15  (h)  The secretary of state shall prescribe the form
16  described by Subsection (f).

17  SECTION 6.02.  Section 64.031, Election Code, is amended to
18  read as follows:

19  Sec. 64.031.  ELIGIBILITY FOR ASSISTANCE.  A voter is
20  eligible to receive assistance in marking or reading the ballot, as
21  provided by this subchapter, if the voter cannot prepare or read the
22  ballot because of:

23  (1)  a physical disability that renders the voter
24  unable to write or see; or

25  (2)  an inability to read the language in which the
26  ballot is written.

27  SECTION 6.03.  Subchapter B, Chapter 64, Election Code, is

S.B. No. 1

1  amended by adding Section 64.0322 to read as follows:

2      Sec. 64.0322.  SUBMISSION OF FORM BY ASSISTANT.  (a)  A

3  person, other than an election officer, who assists a voter in

4  accordance with this chapter is required to complete a form

5  stating:

6          (1)  the name and address of the person assisting the

7  voter;

8          (2)  the relationship to the voter of the person

9  assisting the voter; and

10         (3)  whether the person assisting the voter received or

11 accepted any form of compensation or other benefit from a

12 candidate, campaign, or political committee.

13     (b)  The secretary of state shall prescribe the form required

14 by this section.  The form must be incorporated into the official

15 carrier envelope if the voter is voting an early voting ballot by

16 mail and receives assistance under Section 86.010, or must be

17 submitted to an election officer at the time the voter casts a

18 ballot if the voter is voting at a polling place or under Section

19 64.009.

20     SECTION 6.04.  Section 64.034, Election Code, is amended to

21 read as follows:

22     Sec. 64.034.  OATH.  A person, other than an election

23 officer, selected to provide assistance to a voter must take the

24 following oath, administered by an election officer at the polling

25 place, before providing assistance:

26     "I swear (or affirm) under penalty of perjury that the voter I

27 am assisting represented to me they are eligible to receive

1  assistance; I will not suggest, by word, sign, or gesture, how the

2  voter should vote; I will confine my assistance to reading the

3  ballot to the voter, directing the voter to read the ballot, marking

4  the voter's ballot, or directing the voter to mark the ballot;

5  [answering the voter's questions, to stating propositions on the

6  ballot, and to naming candidates and, if listed, their political

7  parties;] I will prepare the voter's ballot as the voter directs; I

8  did not pressure or coerce the voter into choosing me to provide

9  assistance; [and] I am not the voter's employer, an agent of the

10  voter's employer, or an officer or agent of a labor union to which

11  the voter belongs; I will not communicate information about how the

12  voter has voted to another person; and I understand that if

13  assistance is provided to a voter who is not eligible for

14  assistance, the voter's ballot may not be counted."

15      SECTION 6.05.  Sections 86.010(e), (h), and (i), Election

16  Code, are amended to read as follows:

17      (e)  A person who assists a voter to prepare a ballot to be

18  voted by mail shall enter on the official carrier envelope of the

19  voter:

20          (1)  the person's signature, printed name, and

21  residence address;

22          (2)  the relationship of the person providing the

23  assistance to the voter; and

24          (3)  whether the person received or accepted any form

25  of compensation or other benefit from a candidate, campaign, or

26  political committee in exchange for providing assistance [on the

27  official carrier envelope of the voter].

S.B. No. 1

1    (h)  Subsection (f) does not apply:

2         (1)  to a violation of Subsection (c), if the person is

3    related to the voter within the second degree by affinity or the

4    third degree by consanguinity, as determined under Subchapter B,

5    Chapter 573, Government Code, or was physically living in the same

6    dwelling as the voter at the time of the event; or

7         (2)  to a violation of Subsection (e), if the person is

8    related to the voter within the second degree by affinity or the

9    third degree by consanguinity, as determined under Subchapter B,

10   Chapter 573, Government Code.

11   (i)  An offense under this section for a violation of

12   Subsection (c) is increased to the next higher category of offense

13   if it is shown on the trial of an offense under this section that:

14        (1)  the defendant was previously convicted of an

15   offense under this code;

16        (2)  the offense involved a voter 65 years of age or

17   older; or

18        (3)  the defendant committed another offense under this

19   section in the same election.

20   SECTION 6.06.  Section 86.0105, Election Code, is amended by

21   amending Subsections (a), (c), and (e) and adding Subsection (f) to

22   read as follows:

23        (a)  A person commits an offense if the person:

24             (1)  compensates or offers to compensate another person

25   for assisting voters as provided by Section 86.010[, as part of any

26   performance-based compensation scheme based on the number of voters

27   assisted or in which another person is presented with a quota of

54

S.B. No. 1

1    ~~voters to be assisted as provided by Section 86.010~~]; or

2             (2)   solicits,   receives,   or   [~~engages   in   another~~

3    ~~practice that causes another person's compensation from or~~

4    ~~employment status with the person to be dependent on the number of~~

5    ~~voters assisted as provided by Section 86.010, or~~

6             [~~(3)   with knowledge that accepting compensation for~~

7    ~~such activity is illegal,~~] accepts compensation for an activity

8    described by Subdivision (1) [~~or (2)~~].

9        (c)   An offense under this section is a state jail felony [~~if~~

10   ~~it is shown on the trial of an offense under this section that the~~

11   ~~defendant was previously convicted two or more times under this~~

12   ~~section~~].

13       (e)   For purposes of this section, compensation means an

14   economic benefit as defined by Section 38.01, Penal Code [~~any form~~

15   ~~of monetary payment, goods, services, benefits, or promises or~~

16   ~~offers of employment, or any other form of consideration offered to~~

17   ~~another person in exchange for assisting voters~~].

18       (f)   This section does not apply if the person assisting a

19   voter is an attendant or caregiver previously known to the voter.

20       SECTION 6.07.   Section 86.013(b), Election Code, is amended

21   to read as follows:

22       (b)   Spaces must appear on the reverse side of the official

23   carrier envelope for:

24             (1)   indicating the identity and date of the election;

25   [~~and~~]

26             (2)   entering   the   signature,   printed   name,   and

27   residence address of a person other than the voter who deposits the

55

1  carrier envelope in the mail or with a common or contract carrier;

2  and

3          (3)  indicating the relationship of that person to the

4  voter.

5          SECTION 6.08.  (a)  The secretary of state shall conduct a

6  study  regarding  the  implementation  of  educational  programs,

7  including  the  production  and  publication  on  the  secretary  of

8  state's  Internet  website  of  instructional  videos,  to  help  voters

9  with disabilities understand how to use voting systems used in this

10  state.

11          (b)  Not later than December 1, 2022, the secretary of state

12  shall  submit  to  the  standing  committees  of  the  legislature  with

13  jurisdiction over elections a report on the study required by this

14  section.

15          (c)  The  secretary  of  state,  using  existing  resources,  may

16  contract with a qualified vendor to conduct the study required by

17  this section.

18          (d)  This section expires December 1, 2023.

19          ARTICLE 7.  FRAUD AND OTHER UNLAWFUL PRACTICES

20          SECTION 7.01.  Chapter  63,  Election  Code,  is  amended  by

21  adding Section 63.0111 to read as follows:

22          Sec. 63.0111.  OFFENSES RELATED TO PROVISIONAL VOTING.  (a)

23  An  election  judge  commits  an  offense  if  the  judge  knowingly

24  provides a voter with a form for an affidavit required by Section

25  63.001 if the form contains information that the judge entered on

26  the form knowing it was false.

27          (b)  An offense under this section is a state jail felony.

1    SECTION 7.02.  Sections 276.004(a) and (b), Election Code,
2  are amended to read as follows:

3    (a)  A person commits an offense if, with respect to another
4  person over whom the person has authority in the scope of
5  employment, the person knowingly:

6        (1)  refuses to permit the other person to be absent
7  from work on election day or while early voting is in progress for
8  the purpose of attending the polls to vote; or

9        (2)  subjects or threatens to subject the other person
10  to a penalty for attending the polls on election day or while early
11  voting is in progress to vote.

12    (b)  It is an exception to the application of this section
13  that the person's conduct occurs in connection with an election in
14  which the polls are open on election day or while early voting is in
15  progress for voting for two consecutive hours outside of the
16  voter's working hours.

17    SECTION 7.03.  Sections 276.013(a) and (b), Election Code,
18  are amended to read as follows:

19    (a)  A person commits an offense if the person knowingly or
20  intentionally makes any effort to:

21        (1)  influence the independent exercise of the vote of
22  another in the presence of the ballot or during the voting process,
23  including by altering the ballot of another or by otherwise causing
24  a ballot to not reflect the intent of the voter;

25        (2)  cause a voter to become registered, a ballot to be
26  obtained, or a vote to be cast under false pretenses; [or]

27        (3)  cause any false or intentionally misleading

S.B. No. 1

1    statement, representation, or information to be provided:

2                    (A)    to an election official; or

3                    (B)    on an application for ballot by mail, carrier

4    envelope, or any other official election-related form or document;

5                    (4)    prevent a voter from casting a legal ballot in an

6    election in which the voter is eligible to vote;

7                    (5)    provide false information to a voter with the

8    intent of preventing the voter from voting in an election in which

9    the voter is eligible to vote;

10                   (6)    cause the ballot not to reflect the intent of the

11   voter;

12                   (7)    cause a ballot to be voted for another person that

13   the person knows to be deceased or otherwise knows not to be a

14   qualified or registered voter;

15                   (8)    cause or enable a vote to be cast more than once in

16   the same election; or

17                   (9)    discard or destroy a voter's completed ballot

18   without the voter's consent.

19        (b)    An offense under this section is a Class A misdemeanor,

20   unless:

21                   (1)    the person committed the offense while acting in

22   the person's capacity as an elected official, in which case the

23   offense is a state jail felony; or

24                   (2)    the person is convicted of an attempt, in which

25   case the offense is a Class B [A] misdemeanor.

26        SECTION 7.04.    Chapter 276, Election Code, is amended by

27   adding Sections 276.015, 276.016, 276.017, 276.018, and 276.019 to

S.B. No. 1

1  read as follows:

2      Sec. 276.015.  VOTE HARVESTING.  (a)  In this section:

3          (1)  "Benefit" means anything reasonably regarded as a

4  gain or advantage, including a promise or offer of employment, a

5  political favor, or an official act of discretion, whether to a

6  person or another party whose welfare is of interest to the person.

7          (2)  "Vote   harvesting   services"   means   in-person

8  interaction with one or more voters, in the physical presence of an

9  official ballot or a ballot voted by mail, intended to deliver votes

10  for a specific candidate or measure.

11      (b)  A person commits an offense if the person, directly or

12  through a third party, knowingly provides or offers to provide vote

13  harvesting services in exchange for compensation or other benefit.

14      (c)  A person commits an offense if the person, directly or

15  through a third party, knowingly provides or offers to provide

16  compensation or other benefit to another person in exchange for

17  vote harvesting services.

18      (d)  A person commits an offense if the person knowingly

19  collects or possesses a mail ballot or official carrier envelope in

20  connection with vote harvesting services.

21      (e)  This section does not apply to:

22          (1)  an  activity  not  performed  in  exchange  for

23  compensation or a benefit;

24          (2)  interactions that do not occur in the presence of

25  the ballot or during the voting process;

26          (3)  interactions that do not directly involve an

27  official ballot or ballot by mail;

S.B. No. 1

1    (4)  interactions that are not conducted in-person with
2    a voter; or
3    (5)  activity that is not designed to deliver votes for
4    or against a specific candidate or measure.
5    (f)  An offense under this section is a felony of the third
6    degree.
7    (g)  If conduct that constitutes an offense under this
8    section also constitutes an offense under any other law, the actor
9    may be prosecuted under this section, the other law, or both.
10   (h)  Records necessary to investigate an offense under this
11   section or any other section of this code shall be provided by an
12   election officer in an unredacted form to a law enforcement officer
13   upon request.  Records obtained under this subsection are not
14   subject to public disclosure.
15   Sec. 276.016.  UNLAWFUL SOLICITATION AND DISTRIBUTION  OF
16   APPLICATION TO VOTE BY MAIL.  (a)  A public official or election
17   official commits an offense if the official, while acting in an
18   official capacity, knowingly:
19   (1)  solicits the submission of an application to vote
20   by mail from a person who did not request an application;
21   (2)  distributes an application to vote by mail to a
22   person who did not request the application unless the distribution
23   is expressly authorized by another provision of this code;
24   (3)  authorizes or approves the expenditure of public
25   funds to facilitate third-party distribution of an application to
26   vote by mail to a person who did not request the application; or
27   (4)  completes any portion of an application to vote by

1  mail and distributes the application to an applicant.

2      (b)  An offense under this section is a state jail felony.

3      (c)  Subsection (a)(2) does not apply if the public official

4  or election official engaged in the conduct described by Subsection

5  (a)(2) by providing access to an application to vote by mail from a

6  publicly accessible Internet website.

7      (d)  Subsection (a)(4) does not apply if the public official

8  or election official engaged in the conduct described by Subsection

9  (a)(4) while lawfully assisting the applicant under Section 84.003.

10     (e)  Subsection (a) does not apply if the public official or

11  election official:

12          (1)  provided general information about voting by mail,

13  the vote by mail process, or the timelines associated with voting to

14  a person or the public; or

15          (2)  engaged in the conduct described by Subsection (a)

16  while acting in the official's capacity as a candidate for a public

17  elective office.

18     (f)  The remedy provided under this chapter is cumulative,

19  and does not restrict any other remedies provided by this code or by

20  law.  A violation of this section is subject to injunctive relief or

21  mandamus as provided by this code.

22     Sec. 276.017.  UNLAWFUL DISTRIBUTION OF EARLY VOTING BALLOTS

23  AND BALLOTING MATERIALS.  (a)  The early voting clerk or other

24  election official commits an offense if the clerk or official

25  knowingly mails or otherwise provides an early voting ballot by

26  mail or other early voting by mail ballot materials to a person who

27  the clerk or official knows did not submit an application for a

1  ballot to be voted by mail under Section 84.001.

2     (b)  An offense under this section is a Class A misdemeanor.

3     Sec. 276.018.  PERJURY IN CONNECTION WITH CERTAIN ELECTION

4  PROCEDURES.  (a) A person commits an offense if, with the intent to

5  deceive, the person knowingly or intentionally makes a false

6  statement or swears to the truth of a false statement:

7     (1)  on a voter registration application; or

8     (2)  previously made while making an oath, declaration,

9  or affidavit described by this code.

10     (b)  An offense under this section is a state jail felony.

11     Sec. 276.019.  UNLAWFUL ALTERING OF ELECTION PROCEDURES.  A

12  public official or election official may not create, alter, modify,

13  waive, or suspend any election standard, practice, or procedure

14  mandated by law or rule in a manner not expressly authorized by this

15  code.

16              ARTICLE 8.  ENFORCEMENT

17     SECTION 8.01.  Subchapter E, Chapter 31, Election Code, is

18  amended by adding Sections 31.128, 31.129, and 31.130 to read as

19  follows:

20     Sec. 31.128.  RESTRICTION ON ELIGIBILITY.  (a)  In this

21  section, "election official" does not include a chair of a county

22  political party holding a primary election or a runoff primary

23  election.

24     (b)  A person may not serve as an election official if the

25  person has been finally convicted of an offense under this code.

26     Sec. 31.129.  CIVIL PENALTY.  (a)  In this section, "election

27  official" has the meaning assigned by Section 31.128.

1    (b)  An election official may be liable to this state for a

2  civil penalty if the official:

3        (1)  is employed by or is an officer of this state or a

4  political subdivision of this state; and

5        (2)  violates a provision of this code.

6    (c)  A civil penalty imposed under this section may include

7  termination of the person's employment and loss of the person's

8  employment benefits.

9    Sec. 31.130.  SUIT AGAINST ELECTION OFFICER.  An action,

10  including an action for a writ of mandamus, alleging that an

11  election officer violated a provision of this code while acting in

12  the officer's official capacity may only be brought against the

13  officer in the officer's official capacity.

14    SECTION 8.02.  Sections 232.008(b), (c), and (d), Election

15  Code, are amended to read as follows:

16    (b)  Except as provided by Subsection (c), a contestant must

17  file the petition not later than the later of the 45th [30th] day

18  after the date the election records are publicly available under

19  Section 1.012 or the official result of the contested election is

20  determined.

21    (c)  A contestant must file the petition not later than the

22  later of the 15th [10th] day after the date the election records are

23  publicly available under Section 1.012 or the official result is

24  determined in a contest of:

25        (1)  a primary or runoff primary election; or

26        (2)  a general or special election for which a runoff is

27  necessary according to the official result or will be necessary if

S.B. No. 1

1  the contestant prevails.

2      (d)  A contestant must deliver, electronically or otherwise,

3  a copy of the petition to the secretary of state by the same

4  deadline prescribed for the filing of the petition.

5      SECTION 8.03.  Title 14, Election Code, is amended by adding

6  Subtitle D to read as follows:

7          SUBTITLE D.  OTHER ELECTION LAWSUITS

8      CHAPTER 247.  LAWSUIT ALLEGING IMPROPER ELECTION ACTIVITIES

9      Sec. 247.001.  PETITION ALLEGING FRAUD.  This chapter

10  applies to a civil suit in which a candidate in an election alleges

11  in the petition that an opposing candidate, an agent of the opposing

12  candidate, or a person acting on behalf of the opposing candidate

13  with the candidate's knowledge violated any of the following

14  sections of this code:

15          (1)  Section 13.007;

16          (2)  Section 64.012;

17          (3)  Section 64.036;

18          (4)  Section 84.003;

19          (5)  Section 84.0041;

20          (6)  Section 86.0051;

21          (7)  Section 86.006;

22          (8)  Section 86.010;

23          (9)  Section 276.013; and

24          (10)  Section 276.015.

25      Sec. 247.002.  PROCEDURE.  A candidate in an election may

26  file a petition for an action under this chapter in any county where

27  a defendant resided at the time of the election.  If the election is

S.B. No. 1

1   for a statewide office, the candidate may also file the petition in

2   a district court in Travis County.

3       Sec. 247.003.  FILING PERIOD FOR PETITION.  A candidate in an

4   election may file a petition for an action under this chapter not

5   earlier than the day after the date the election is certified and

6   not later than the 45th day after the later of that date or the date

7   election records are made publicly available under Section 1.012.

8       Sec. 247.004.  DAMAGES.    (a)    If  it  is  shown  by  a

9   preponderance of the evidence that a defendant, an agent of the

10  defendant, or a person acting on behalf of the defendant with the

11  defendant's knowledge committed one or more violations of a section

12  described by Section 247.001, the defendant is liable to the

13  plaintiff for damages in an amount of $1,000 for each violation.

14      (b)  Notwithstanding  Section  41.004,  Civil  Practice  and

15  Remedies Code, a court shall award damages under Subsection (a) to

16  the plaintiff irrespective of whether the plaintiff is awarded

17  actual damages.

18      Sec. 247.005.  ATTORNEY'S FEES.   In an action under this

19  chapter, the court may award reasonable attorney's fees to the

20  prevailing party.

21      SECTION 8.04.  Section 273.061, Election Code, is amended to

22  read as follows:

23      Sec. 273.061.  JURISDICTION.   (a)  The supreme court or a

24  court of appeals may issue a writ of mandamus to compel the

25  performance of any duty imposed by law in connection with the

26  holding of an election or a political party convention, regardless

27  of whether the person responsible for performing the duty is a

1  public officer.

2      (b)  The court of criminal appeals may issue a writ of

3  mandamus to compel the performance of any duty imposed by law in

4  connection with the provision, sequestration, transfer, or

5  impoundment of evidence in or records relating to a criminal

6  investigation conducted under this code or conducted in connection

7  with the conduct of an election or political party convention. If a

8  writ of mandamus is issued under this subsection, it shall include

9  an order requiring the provision, sequestration, transfer, or

10  impoundment of the evidence or record.

11      SECTION 8.05.  Subchapter D, Chapter 22, Government Code, is

12  amended by adding Sections 22.304 and 22.305 to read as follows:

13      Sec. 22.304.  COURT SITTING IN PANELS FOR CERTAIN ELECTION

14  PROCEEDINGS; CRIMINAL OFFENSE.  (a)  In this section, "public

15  official" means any person elected, selected, appointed, employed,

16  or otherwise designated as an officer, employee, or agent of this

17  state, a government agency, a political subdivision, or any other

18  public body established by state law.

19      (b)  Notwithstanding any other law or rule, a court

20  proceeding entitled to priority under Section 22.305 and filed in a

21  court of appeals shall be docketed by the clerk of the court and

22  assigned to a panel of three justices determined using an automated

23  assignment system.

24      (c)  A person, including a public official, commits an

25  offense if the person communicates with a court clerk with the

26  intention of influencing or attempting to influence the composition

27  of a three-justice panel assigned a specific proceeding under this

66

S.B. No. 1

1  section.

2      (d)  An offense under this section is a Class A misdemeanor.

3      Sec. 22.305.  PRIORITY OF CERTAIN ELECTION PROCEEDINGS.  (a)

4  The supreme court or a court of appeals shall prioritize over any

5  other proceeding pending or filed in the court a proceeding for

6  injunctive relief or for a writ of mandamus under Chapter 273,

7  Election Code, pending or filed in the court on or after the 70th

8  day before a general or special election.

9      (b)  If granted, oral argument for a proceeding described by

10  Subsection (a) may be given in person or through electronic means.

11      SECTION 8.06.  Section 23.101, Government Code, is amended

12  by amending Subsection (a) and adding Subsections (b-1) and (b-2)

13  to read as follows:

14      (a)  Except as provided by Subsection (b-1), the [The] trial

15  courts of this state shall regularly and frequently set hearings

16  and trials of pending matters, giving preference to hearings and

17  trials of the following:

18          (1)  temporary injunctions;

19          (2)  criminal actions, with the following actions given

20  preference over other criminal actions:

21              (A)  criminal actions against defendants who are

22  detained in jail pending trial;

23              (B)  criminal actions involving a charge that a

24  person committed an act of family violence, as defined by Section

25  71.004, Family Code;

26              (C)  an offense under:

27                  (i)  Section 21.02 or 21.11, Penal Code;

1          (ii)  Chapter 22, Penal Code, if the victim

2  of the alleged offense is younger than 17 years of age;

3          (iii)  Section 25.02, Penal Code, if the

4  victim of the alleged offense is younger than 17 years of age;

5          (iv)  Section 25.06, Penal Code;

6          (v)  Section 43.25, Penal Code; or

7          (vi)  Section 20A.02(a)(7), 20A.02(a)(8),

8  or 20A.03, Penal Code;

9          (D)  an offense described by Article 62.001(6)(C)

10  or (D), Code of Criminal Procedure; and

11          (E)  criminal actions against persons who are

12  detained as provided by Section 51.12, Family Code, after transfer

13  for prosecution in criminal court under Section 54.02, Family Code;

14          (3)  election contests and suits under the Election

15  Code;

16          (4)  orders for the protection of the family under

17  Subtitle B, Title 4, Family Code;

18          (5)  appeals of final rulings and decisions of the

19  division of workers' compensation of the Texas Department of

20  Insurance regarding workers' compensation claims and claims under

21  the Federal Employers' Liability Act and the Jones Act;

22          (6)  appeals of final orders of the commissioner of the

23  General Land Office under Section 51.3021, Natural Resources Code;

24          (7)  actions in which the claimant has been diagnosed

25  with malignant mesothelioma, other malignant asbestos-related

26  cancer, malignant silica-related cancer, or acute silicosis; and

27          (8)  appeals brought under Section 42.01 or 42.015, Tax

1  Code, of orders of appraisal review boards of appraisal districts

2  established for counties with a population of less than 175,000.

3  (b-1)  Except for a criminal case in which the death penalty

4  has been or may be assessed or when it would otherwise interfere

5  with a constitutional right, the trial courts of this state shall

6  prioritize over any other proceeding pending or filed in the court a

7  proceeding for injunctive relief under Chapter 273, Election Code,

8  pending or filed in the court on or after the 70th day before a

9  general or special election.

10  (b-2)  A hearing in a proceeding described by Subsection

11  (b-1) may be held in person or through electronic means, as

12  determined by the court.

13  SECTION 8.07.  Chapter 23, Government Code, is amended by

14  adding Subchapter D to read as follows:

15  SUBCHAPTER D.  GENERAL PROVISIONS

16  Sec. 23.301.  ASSIGNMENT OF CERTAIN ELECTION PROCEEDINGS;

17  CRIMINAL OFFENSE.  (a)  Notwithstanding any other law or rule, the

18  clerk of a district court in which a proceeding entitled to priority

19  under Section 23.101(b-1) is filed shall docket the proceeding and,

20  if more than one district court in the county has jurisdiction over

21  the proceeding, randomly assign the proceeding to a district court

22  using an automated assignment system.

23  (b)  Notwithstanding any other law or rule, the clerk of a

24  county court or statutory county court in which a proceeding

25  entitled to priority under Section 23.101(b-1) is filed shall

26  docket the proceeding and, if more than one court in the county has

27  jurisdiction over the proceeding, randomly assign the proceeding to

S.B. No. 1

1  a court using an automated assignment system.

2      (c) A person, including a public official, commits an

3  offense if the person communicates with a county or district clerk

4  with the intention of influencing or attempting to influence the

5  court or judge assigned to a proceeding under this section.

6      (d) An offense under this section is a Class A misdemeanor,

7  except that the offense is a state jail felony if it is shown on the

8  trial of the offense that the person committed the offense while

9  acting in the person's official capacity as an election official.

10      (e) If a district or county clerk does not comply with this

11  section, a person may seek from the supreme court or a court of

12  appeals a writ of mandamus as provided by Section 273.061, Election

13  Code, to compel compliance with this section.

14      Sec. 23.302.  DEADLINES IN CERTAIN ELECTION PROCEEDINGS.

15  (a) Not later than 24 hours after the proceeding is filed, a judge

16  to whom a case is assigned under Section 23.301(b) who wishes to be

17  recused from the proceeding must, before recusal:

18          (1) hear an application for any emergency temporary

19  relief sought;

20          (2) grant or deny any emergency temporary relief

21  sought; and

22          (3) set a scheduling order that provides:

23              (A) a date for a hearing on any injunction sought

24  not later than five days after the date on which the proceeding was

25  filed; and

26              (B) discovery and deposition deadlines before

27  the expiration of any emergency relief order entered.

70

S.B. No. 1

1    (b)  The presiding judge of an administrative region shall
2    assign a new judge to a proceeding assigned under Section 23.301(b)
3    not later than 12 hours after the original judge assigned to the
4    proceeding is recused under Subsection (a).
5    (c)  A final order in a proceeding filed under Section
6    273.081, Election Code, shall be submitted in writing to the
7    parties not later than 24 hours after the judge makes a final
8    determination in the proceeding.
9    (d)  If a district judge does not comply with this section, a
10    person may seek from the supreme court, the court of criminal
11    appeals, or a court of appeals a writ of mandamus as provided by
12    Section 273.061, Election Code, to compel compliance with this
13    section.
14    (e)  Notwithstanding Section 23.101(b-1), a proceeding
15    relating to a permanent injunction being sought in connection to a
16    challenge under Section 141.034, Election Code, may be heard after
17    the primary election has been canvassed.
18        ARTICLE 9.  INELIGIBLE VOTERS AND RELATED REFORMS
19        SECTION 9.01.  Chapter 42, Code of Criminal Procedure, is
20    amended by adding Article 42.0194 to read as follows:
21    Art. 42.0194.  FINDING REGARDING FELONY CONVICTION.  In the
22    trial of a felony offense, if the defendant is adjudged guilty of
23    the offense, the court shall:
24        (1)  make an affirmative finding that the person has
25    been found guilty of a felony and enter the affirmative finding in
26    the judgment of the case; and
27        (2)  instruct the defendant regarding how the felony

1  conviction will impact the defendant's right to vote in this state.

2  SECTION 9.02.  Article 42.01, Code of Criminal Procedure, as

3  effective September 1, 2021, is amended by adding Section 16 to read

4  as follows:

5  Sec. 16.  In addition to the information described by

6  Section 1, the judgment should reflect the affirmative finding and

7  instruction entered pursuant to Article 42.0194.

8  SECTION 9.03.  Section 64.012, Election Code, is amended by

9  amending Subsections (a) and (b) and adding Subsections (c) and (d)

10  to read as follows:

11  (a)  A person commits an offense if the person knowingly or

12  intentionally:

13  (1)  votes or attempts to vote in an election in which

14  the person knows the person is not eligible to vote;

15  (2)  [knowingly] votes or attempts to vote more than

16  once in an election;

17  (3)  [knowingly] votes or attempts to vote a ballot

18  belonging to another person, or by impersonating another person;

19  [or]

20  (4)  [knowingly] marks or attempts to mark any portion

21  of another person's ballot without the consent of that person, or

22  without specific direction from that person how to mark the ballot;

23  or

24  (5)  votes or attempts to vote in an election in this

25  state after voting in another state in an election in which a

26  federal office appears on the ballot and the election day for both

27  states is the same day.

1    (b)  An offense under this section is a Class A misdemeanor

2    [felony of the second degree unless the person is convicted of an

3    attempt. In that case, the offense is a state jail felony].

4    (c)  A person may not be convicted solely upon the fact that

5    the person signed a provisional ballot affidavit under Section

6    63.011 unless corroborated by other evidence that the person

7    knowingly committed the offense.

8    (d)  If conduct that constitutes an offense under this

9    section also constitutes an offense under any other law, the actor

10   may be prosecuted under this section, the other law, or both.

11       SECTION 9.04.  The change in law made by this article in

12   adding Section 64.012(c), Election Code, applies to an offense

13   committed before, on, or after the effective date of this Act,

14   except that a final conviction for an offense under that section

15   that exists on the effective date of this Act remains unaffected by

16   this article.

17       ARTICLE 10.  REPEALER; SEVERABILITY; TRANSITION; EFFECTIVE DATE

18       SECTION 10.01.  The following provisions of the Election

19   Code are repealed:

20           (1)  Section 85.062(e);

21           (2)  Section 86.0105(b); and

22           (3)  Section 127.201(f).

23       SECTION 10.02.  If any provision of this Act or its

24   application to any person or circumstance is held invalid, the

25   invalidity does not affect other provisions or applications of this

26   Act that can be given effect without the invalid provision or

27   application, and to this end the provisions of this Act are declared

73

S.B. No. 1

1  to be severable.

2      SECTION 10.03.  (a)   Except as otherwise provided by this

3  Act, the changes in law made by this Act apply only to an offense

4  committed on or after the effective date of this Act.   An offense

5  committed before the effective date of this Act is governed by the

6  law in effect when the offense was committed, and the former law is

7  continued in effect for that purpose.  For purposes of this section,

8  an offense was committed before the effective date of this Act if

9  any element of the offense occurred before that date.

10     (b)   The changes in law made by this Act apply only to an

11  election ordered on or after the effective date of this Act.   An

12  election ordered before the effective date of this Act is governed

13  by the law in effect when the election was ordered, and the former

14  law is continued in effect for that purpose.

15     (c)   The changes in law made by this Act apply only to an

16  application to vote an early voting ballot by mail submitted on or

17  after the effective date of this Act.   An application to vote an

18  early voting ballot by mail submitted before the effective date of

19  this Act is governed by the law in effect when the application was

20  submitted, and the former law is continued in effect for that

21  purpose.

22     (d)   The changes in law made by this Act apply only to an

23  application for voter registration submitted on or after the

24  effective date of this Act.

25     (e)   Chapter 247, Election Code, as added by this Act,

26  applies only to a cause of action for which the associated election

27  occurred after the effective date of this Act.

74

1      SECTION 10.04.  This Act takes effect on the 91st day after

2  the last day of the legislative session.

S.B. No. 1

_____    _____
    President of the Senate            Speaker of the House

I hereby certify that S.B. No. 1 passed the Senate on August 12, 2021, by the following vote: Yeas 18, Nays 11; August 27, 2021, Senate refused to concur in House amendments and requested appointment of Conference Committee; August 29, 2021, House granted request of the Senate; August 31, 2021, Senate adopted Conference Committee Report by the following vote: Yeas 18, Nays 13.

_____
    Secretary of the Senate

I hereby certify that S.B. No. 1 passed the House, with amendments, on August 27, 2021, by the following vote: Yeas 80, Nays 41, one present not voting; August 29, 2021, House granted request of the Senate for appointment of Conference Committee; August 31, 2021, House adopted Conference Committee Report by the following vote: Yeas 80, Nays 41, one present not voting.

_____
    Chief Clerk of the House

Approved:

_____
    Date

_____
    Governor

76