IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNION DEL PUEBLO ENTERO, *et al.*, <br> *Plaintiffs,* <br> <br> v. <br> <br> STATE OF TEXAS, *et al.*, <br> *Defendants.* | § <br> § <br> §    Case No. 5:21-cv-844-XR <br> §    (Lead Case) <br> § <br> § <br> § <br> § |

**STATE DEFENDANTS' MOTION FOR STAY PENDING APPEAL OR, IN THE ALTERNATIVE, FOR ADMINISTRATIVE STAY PENDING APPEAL AND REQUEST FOR EXPEDITED CONSIDERATION**

Defendants Jane Nelson, in her official capacity as Texas Secretary of State; Warren "Ken" Paxton, in his official capacity as Attorney General of Texas;[1] and the State of Texas (collectively "State Defendants") file this Motion to Stay the Court's Order on Cross-Motions for Summary Judgment, Final Judgment, ECF Nos. 820–821, and the Court's permanent injunction included therein, pending appeal. Alternatively, should the Court deny State Defendants' Motion to Stay, State Defendants request that the Court enter an order granting a seven-day administrative stay to allow the State Defendants to seek further relief at the appellate level.

Just over a week before the December 9, 2023, City of Houston Runoff Election, the Court rewrites the Texas Election Code's provisions regarding the mail ballot identification requirement for the Harris County portion of Houston. The Court must stay its injunction to avoid application of unequal ballot rejection standards, and unequal ballot application and acceptance standards, in upcoming elections.

---

[1] In its order, the Court defined State Defendants as including the Texas Attorney General. *See* ECF No. 21 at 11–12. However, neither the United States nor the OCA Plaintiffs named the Attorney General as a party in their materiality claim. *See* ECF 145; ECF 192-1 at 45. Furthermore, any injury resulting from Section 5.07 and 5.13 is not traceable to the Attorney General, as the Attorney General plays no role in accepting or rejecting mail ballots. Relief against the Attorney General is therefore improper.

1

The ruling implicates novel and serious legal questions, which State Defendants respectfully assert have been wrongly decided but on which State Defendants have also raised substantial arguments on the merits. A stay pending appeal is warranted to permit the Fifth Circuit to assess the merits of this Court's novel ruling, and a stay is supported by the widely recognized principle that enjoining a constitutional state election law inflicts irreparable harm on the State and that the public's interest is aligned with the State's interest and harm. A stay pending appeal is further warranted to avoid the non-uniform application of mail ballot rules across the state during an ongoing election—specifically in the City of Houston—and the inevitable confusion that would result. Plaintiffs, in contrast, will not be irreparably harmed if a stay is granted, and the balance of equities weighs against disrupting election procedures in Texas counties and causing voter confusion that would arise from the non-uniform application of mail ballot rules in Texas. For all these reasons, as further set forth below, a stay while the Fifth Circuit considers the merits of this Court's order is warranted.

## BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Multiple lawsuits soon followed, which were ultimately consolidated into the present action. On May 26, 2023, the United States and OCA Plaintiffs moved for summary judgment, arguing that various provisions of S.B. 1 were violative of the 1964 Civil Rights Act, 52 U. S. C § 10101(a)(2)(B) (the "Materiality Provision"). On November 29, 2023, this Court entered an order that granted the United States' motion for summary judgment (ECF No. 609); granted in part and denied in part the OCA Plaintiffs' motion for summary judgment (ECF No. 611); and enjoined State Defendants, the Harris County Elections Administrator, and the Travis County Clerk from enforcing the requirements of Sections 5.07 and 5.13 of S.B. 1.

On December 1, 2023, State Defendants filed a notice of appeal. ECF No. 823. State Defendants now respectfully request that the Court stay its injunction pending appeal since the Court issued its order in the midst of the December 9, 2023, runoff election. In light of the disruption and confusion that the Court's injunction will cause to Texas' election processes, State Defendants request that the Court issue a ruling on this motion as expeditiously as possible, and no later than December 4, 2023, so that in the event of a denial, State Defendants may file an appropriate motion for relief in the Fifth Circuit.

**ARGUMENT**

Before seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal or for "an order suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Federal Rule of Civil Procedure 62(d) similarly authorizes a court to suspend an injunction during the pendency of an appeal from a final judgment. Fed. R. Civ. P. 62(d). As the Supreme Court has repeatedly explained, there is a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

These factors are not applied in "a rigid, mechanical fashion," but rather "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir.

1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)). A stay is particularly appropriate when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *See Texas v. Ysleta Del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 5589051, at *1–2 (W.D. Tex. March 28, 2019) (granting stay given serious legal question raised and lack of clarity from existing precedent). A stay pending appeal "simply suspend[s] judicial alteration of the status quo," which allows "appellate court[s] to act responsibly," "bring considered judgment" to the matter, and faithfully "fulfill their role in the judicial process." *Nken*, 556 U.S. at 427, 429 (internal quotation marks omitted). Indeed, the Supreme Court has held:

> It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held, ... that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.*, at 9–10, 62 S.Ct. 875 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

*Id.* at 421.

More relevant, here, this Court must weigh "considerations specific to election cases"—namely, that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). The Supreme Court therefore has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," and that when they do so, defenders of the status quo have necessarily "made a strong showing that [they are] likely to succeed on the merits of [their] appeal." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566–68 (5th Cir. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (2020)). The "timing of the decisions rather than merits" of the legal questions raised "seems to be the key." *Veasey v. Perry*,

4

769 F.3d 890, 895 (5th Cir. 2014); *see, e.g., Husted v. Ohio State Conf. of NAACP.*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election).

Based on these considerations, (1) Defendants are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of a stay; (3) plaintiff will not be substantially harmed by a stay; and (4) the public interest favors a stay. Accordingly, all four factors relevant to a stay pending appeal are met here.

**I.       State Defendants Are Likely to Succeed on the Merits.**

State Defendants are likely to succeed on the merits for two reasons. *First*, State Defendants have no constitutional authority to implement the Court's permanent injunction. *Second*, Plaintiffs are unlikely to succeed on their claims under the Materiality Provision.

**A. State Defendants have no constitutional authority to require counties to implement the Court's permanent injunction.**

County early voting clerks, not the Secretary of State, enforce the ballot-application requirements. Tex. Elec. Code § 86.001(c). Likewise, county early voting ballot boards are responsible for enforcing mail ballot requirements. Tex. Elec. Code § 87.041(a). The Secretary of State is not the early voting clerk of any Texas county. The Secretary of State also does not serve on the early voting ballot board of any Texas county. Tex. Elec. Code § 87.002.

Plaintiffs have not identified any acts that the Secretary of State could or would take to reject mail ballot materials. While the Secretary of State issues election advisories to county election officials, these documents are persuasive, not coercive. To the extent Sections 5.07 or 5.13 of S.B. 1 require local election officials to reject mail ballot materials, they do so independently of any actions the Secretary does or does not take. The Secretary of State cannot coerce local officials into accepting or rejecting mail ballot materials. All determinations on whether to accept mail ballot materials lies with local officials. The Office of the Attorney General also does not determine whether mail ballot materials are rejected—for an ID number mismatch or any other reason.

5

### B. Plaintiffs are unlikely to prevail on their claims under the Materiality Provision.

Through motions to dismiss and motions for summary judgment, State Defendants presented a substantial case on the merits regarding serious legal questions relating to standing, constitutional rights, federal voting rights, and the proper interpretation of a democratically enacted state law.

State Defendants demonstrated a substantial likelihood of success on the merits regarding Plaintiffs' Materiality Provision claims. This Court, of course, has rejected State Defendants' arguments on these points, but it was largely deciding issues of first impression by means of an *Erie* guess. Given the new issues raised by this case and the substantial support for State Defendants' arguments, the Court should give the Fifth Circuit an opportunity to review these issues before the injunction is implemented.

Indeed, S.B. 1's ID number requirement is material to determining whether voters are qualified to vote by mail under Texas law, and if Plaintiffs' position was taken to its logical conclusion, it would invalidate "virtually every electoral regulation" that confirms the voters' eligibility, no matter how basic, thereby "hamper[ing] the ability of States to run efficient and equitable elections, and compel[ling] federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). For example, if a Texas voter is on the suspense list, if the residence on the voter's ABBM does not match the residence on file, the voter must submit a statement of residence before her mail-ballot can be accepted. Their position could even invalidate something as simple as a postmark during the vote by mail process. And to top it off, State Defendants have repeated—and undisputed Texas law has confirmed—that the rejection of an application or even a mail ballot is not the end of the voting process. Rather, it is merely one pathway to engage in the voting system in Texas.

For these reasons and those more fully set out in prior briefing, the Court erred in its analysis of Plaintiffs' Materiality claims. State Defendants presented a substantial case that S.B. 1's ID number

requirement satisfies the Materiality Provision and, therefore, respectfully seek a stay of the Court's order so that the Fifth Circuit may decide the proper application of the Materiality Provision here.

## II.     State Defendants and the Public Interest Will Be Irreparably Injured Absent a Stay.

Enjoining officials from carrying out validly enacted, constitutional laws governing elections imposes irreparable harm. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). And it is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974). The permanent injunction undermines those crucial interests as the election draws near, whereas "[a] temporary stay will, at a minimum, minimize confusion among voters and county registrars by making voter registration law uniform throughout the state in the crucial months leading up to the voter registration deadline." *Vote.Org*, 39 F.4th at 309. If there is one principle that can be drawn from the Supreme Court's recent voting cases, it is this: "court changes of election laws close in time to the election are strongly disfavored." *Tex. All. for Retired Ams.*, 976 F.3d at 567. And notably, when a State is the moving or appealing party, "its interest and harm merge with the public." *Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022) (quoting *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).

Here, the Court's order upsets those crucial interests. Enjoining the challenged provisions risks sowing confusion amongst county election officials and voters in the days before an important election. The City of Houston falls over three Texas counties: Harris, Fort Bend, and Montgomery.[2]

---

[2]   *See Houston*, Wikepedia, available at https://en.wikipedia.org/wiki/Houston#:~:text=Though%20primarily%20in%20Harris%20County,Sugar%20Land%20and%20The%20Woodlands (last visited Dec. 2, 2023); cf. *Houston, Texas*, U.S. Census Bureau, available at

7

County election officials review mail ballot materials to determine whether they comply with State law. The Court's injunction applies to the Harris County Elections Administrator, but not to election officials in Fort Bend County or Montgomery County. ECF No. 821 at 52. Election officials in Fort Bend County and Montgomery County are applying State law that requires the matching of ID numbers on mail ballots as prescribed in Sections 5.07 and 5.13 of S.B. 1, while Harris County will cease doing so following ECF Nos. 820-821. Mail ballots between the three counties will therefore be treated differently, which will cause confusion among voters and among the election officials who might have to explain the discrepancy to voters. And because Title I of the Texas Election Code requires the Office of the Texas Secretary of State to ensure uniform and consistent elections, a failure to stay this injunction will irreparably harm that agency. Accordingly, the second *Nken* factor is met.

### III.     Plaintiffs Will Not Be Substantially Injury by a Stay.

The Court must also consider whether issuance of a stay will substantially injure plaintiff. In considering that factor, "the maintenance of the status quo is an important consideration in granting a stay." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021). Here, a stay would maintain the status quo that has existed in Texas since September 7, 2021, when S.B. 1 was signed into law. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). In contrast, this Court's injunction would incite a state of confusion (1) in voters who are voting in the same election under different standards and (2) in county election officials who are attempting to determine which standard to apply to which voter at which point in time. This danger of confusion is heightened because counties would have started reviewing mail ballots before the Court's order was issued and, in some cases, would have already contacted voters to initiate the cure process.

---

https://data.census.gov/profile?q=Houston%20city,%20Texas&g=160XX00US4835000 (last visited Dec. 2, 2023); *Harris County, Texas*, Google Maps, available at https://www.google.com/maps/place/Harris+County,+TX/@29.8339515,-95.4346125,10z/data=!3m1!4b1!4m6!3m5!1s0x8640cc8afd7f30f5:0x2eaf5277b2bbd2da!8m2!3d29.7751825!4d-95.3102505!16zL20vMG1yaHE?entry=ttu (last visited Dec. 2, 2023).

The Court's order also guarantees the non-uniform application of the ID number requirement during an election since Harris County and Travis County election officials will change standards following the issuance of the injunction, while non-party counties will continue to abide by the rules stipulated in S.B. 1. For jurisdictions like the City of Houston, which reside in multiple counties, only one of which is party to this order, this means that mail ballots cast in the same race could be governed by different rules depending on where the voter lives. Uniform election laws advance confidence public confidence in elections. Having varying standards could cause voters to view the process as unfair and question election results. Whatever plaintiff's interest, it must give way to the irreparable harm the injunction inflicts on the public interest in the integrity of the ballot. *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (when the State seeks a stay pending appeal, "its interest and harm merge with that of the public").

### IV. The *Purcell* Principle Further Warrants a Stay.

In addition to the traditional stay factors, the *Purcell* principle further warrants a stay because this Court's ruling creates confusion and undue harm on election administrators for the December 9, 2023, runoff election. Generally, "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring in grant of application for stays). That is because "[l]ate judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Id.* at 881. After all, "[i]t is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election," *id.*, especially when voting has already started.

Hence, "time and time again over the past several years, the Supreme Court has stayed lower court orders that change election rules on the eve of an election." *Hughs*, 976 F.3d at 566. This practice of staying court orders that attempt to change elections laws on the heels of an election stems from

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), which is the case credited with the creation of the doctrine colloquially known as the *Purcell* principle. There, the Supreme Court determined that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 5–6. And "[a]s an election draws closer, that risk will increase." *Id.* at 5. Thus, the Court stayed the lower court's order that changed the election laws at issue twenty-nine days before the election. *See id.* at 2–6.

Following the path paved by the *Purcell* principle, the Supreme Court has stayed lower court orders that have changed election laws days or even months before an election.[3] In like manner, the Fifth Circuit has routinely stayed court orders that confuse voters, unduly burden election administrators, or otherwise create chaos rather than clarity in the electoral process.[4]

The Court should follow the same principle here and stay the order that would change election laws when elections are already underway. One such election is the upcoming December 9, 2023, Joint Runoff Election in the City of Houston, which covers one of the counties subject to the Court's permanent injunction. The deadline to apply for a ballot by mail for this election was on November 28, 2023,[5] which is a day before this Court entered its order. S*ee* ECF Nos. 820–21. In other words, county election officials completed their review of ABBMS before this Court ordered injunctive relief.

---

[3] *See, e.g.*, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying a lower court order that changed election laws thirty-three days before the election); *Husted v. Ohio State Conference of N.A.A.C.P.*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election); *Veasey v. Perry*, 574 U.S. 951 (2014) (denying application to vacate court of appeals' stay of district court injunction that changed election laws on eve of election); *see also Moore v. Harper*, 142 S. Ct. 1089 (2022) (Kavanaugh, J., concurring); *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring in grant of application for stays); *Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *Andino v. Middleton*, 141 S. Ct. 9, (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 190 (2020); *Clarno v. People Not Politicians*, 141 S. Ct. 206 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020); *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205 (2020) (per curiam); *Democratic National Committee v. Wisconsin State Legislature*, 141 S. Ct. 28 (2020) (declining to vacate stay); *Benisek v. Lamone*, 138 S. Ct. 1942 (2018) (per curiam).

[4] *See, e.g.*, *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566–67 (5th Cir. 2020) (staying a preliminary injunction that would change election laws eighteen days before early voting begins); *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (staying an injunction entered nine days before the start of early voting); *Texas Democratic Party v. Abbott*, 961 F.3d 389, 411 (5th Cir. 2020) (staying an injunction that changes elections laws when in-person begins "in a matter of weeks").

[5] *See December 9, 2023 - Joint Runoff Election*, Harris Votes, available at https://www.harrisvotes.com/Voter/View-information-for-upcoming-Elections (last visited Dec. 1, 2023).

In addition, mail ballots are generally sent to voters by a county's Early Voting Clerk thirty-five to forty-five days before an election. Once a voter receives their mail ballot, they may submit their mail ballot any time before the ballot receipt deadline. In accordance with the Election Code, the early voting clerk may remove the flap on the carrier envelope to determine whether the voter complied with the applicable requirements, such as inserting a matching ID number. Early Voting Ballot Boards are also entitled to begin meeting as soon as the county starts receiving mail ballots. This means that the Harris County Elections Department has already accepted or rejected voters' ABBMs based on the ID number requirement and was in the midst of reviewing, rejecting, and curing mail ballots under S.B. 1 prior to the issuance of this Court's order. Now, in light of this Court's order, it must change course and apply a different standard. Hence, the implementation of this injunction will not only cause different standards to be applied to the three counties in Houston, but different standards would also be applied in Harris County—one standard for mail ballots processed before the issuance of this Court's order, and another for those processed afterwards.[6] That squarely falls within *Purcell*'s principles.[7] Accordingly, a stay is warranted.

## CONCLUSION & RELIEF REQUESTED

Therefore, the Fifth Circuit should have the opportunity to review this Court's decision before Texas's law is permanently enjoined and the State—and corresponding public interest—is irreparably harmed. State Defendants respectfully request that the Court grant this motion by 5:00 p.m., December 4, 2023.

---

[6] Mail ballots are likely to be processed after this Court's order because such mail ballots may be considered up to six days after Election Day.

[7] Moreover, while this Court stated that "the 2024 primaries are months away," ECF No. 821 at 51, the voting-by-mail process is not. In fact, voters in Texas may begin filing applications for ballot by mail as soon as January 1, 2024. *See Important 2024 Election Dates*, Office of the Texas Secretary of State, available at sos.state.tx.us/elections/voter/important-election-dates.shtml (last visited Dec. 1, 2023).

| | |
|---|---|
| Date: December 2, 2023 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ *Ryan G. Kercher*<br>RYAN G. KERCHER<br>Deputy Chief, Special Litigation Division<br>Tex. State Bar No. 24060998 |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| | KATHLEEN T. HUNKER<br>Special Counsel |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | Tex. State Bar No. 24118415 |
| RALPH MOLINA<br>Deputy Attorney General for Legal Strategy | WILLIAM D. WASSDORF<br>Assistant Attorney General<br>Tex. State Bar No. 24103022 |
| JAMES LLOYD<br>Deputy Attorney General for Civil Litigation | ZACHARY W. BERG<br>Special Counsel<br>Tex. State Bar No. 24107706 |
| | ETHAN Q. SZUMANSKI<br>Special Counsel<br>Tex. State Bar No. 24123966 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>ryan.kercher@oag.texas.gov<br>kathleen.hunker@oag.texas.gov<br>will.wassdorf@oag.texas.gov<br>zachary.berg@oag.texas.gov<br>ethan.szumanski@oag.texas.gov |
| | **COUNSEL FOR STATE DEFENDANTS** |

**CERTIFICATE OF CONFERENCE**

I certify that State Defendants reached out to counsel for the United States and OCA Plaintiffs via email during the evening of December 2, 2023. Counsel for OCA Plaintiffs indicated that they were opposed to this motion, but counsel for the United States has not yet responded as to whether they oppose this motion.

/s/ *Ryan G. Kercher*
RYAN G. KERCHER

12

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 2, 2023, and that all counsel of record were served by CM/ECF.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER