**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 5:21-CV-0844-XR |
| | § | [Consolidated Cases] |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

## <u>ORDER ON MOTION FOR STAY PENDING APPEAL</u>

On this date, the Court considered the State Defendants' motion to stay pending appeal of the Court's order enjoining the enforcement of Sections 5.07 and 5.13 of S.B. 1 (ECF No. 824)–joined by the Intervenor-Defendants (ECF No. 828)–and the United States' and OCA Plaintiffs' responses in opposition (ECF Nos. 825, 826). After careful consideration, the Court issues the following order.

## BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Multiple lawsuits soon followed, which were ultimately consolidated into the present action. On May 26, 2023, the United States and OCA Plaintiffs moved for summary judgment, arguing that various provisions of S.B. 1 were violative of the 1964 Civil Rights Act, 52 U. S. C § 10101(a)(2)(B) (the "Materiality Provision"). *See* ECF Nos. 609, 611.

On November 29, 2023, this Court entered an order that granted the United States' motion for summary judgment (ECF No. 609); granted in part and denied in part the OCA Plaintiffs'

motion for summary judgment (ECF No. 611); and enjoined the State of Texas, the Texas Secretary of State (the "Secretary" and, together with the State of Texas, the "State Defendants"),[1] the Harris County Elections Administrator, and the Travis County Clerk from enforcing the requirements of Sections 5.07 and 5.13 of S.B. 1. *See* ECF No. 821.

The State Defendants filed a Notice of Appeal of the Court's order, followed by a motion to stay the order pending appeal (ECF No. 824), which the Court now considers. The State Defendants seek to stay the Court's order pending appeal in light of the upcoming December 9, 2023, Joint Runoff Election in the City of Houston, which will be administered in part by Defendant Harris County Elections Administrator. The deadline to apply for a ballot by mail for this election was on November 28, 2023—a day before this Court entered its order on Plaintiffs' motions for summary judgment. *See* ECF No. 821. The State Defendants also assert that a stay is warranted because, although the 2024 primaries are "months away," voters in Texas may begin filing applications for ballot by mail as soon as January 1, 2024. ECF No. 824 at 11 n.7.

For the reasons stated herein, the State Defendants' motion (ECF No. 824) is **DENIED**.

## DISCUSSION

In determining whether to grant a motion for stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

---

[1] The State Defendants correctly observe that the Texas Attorney General was inadvertently included as a "State Defendant" as that term was defined in its summary judgment. *See* ECF No. 821 at 11–12. In the interest of clarity and accuracy, the Court intends to issue an amended and restated order removing the Attorney General from the definition of the term.

1.      **Likelihood of Success on the Merits**

The State Defendants are unlikely to prevail on the merits of their appeal. As the Court noted in its summary judgment order, the undisputed evidence establishes that Texas election officials do not use DPS numbers and SSN4s to determine whether those who submit applications to vote by mail ("ABBMs") or mail ballots are in fact eligible to vote—or to vote by mail—in the state of Texas. *See* ECF No. 821 at 31 (citing statement by then-Director of the Elections Division of the Texas SOS, Keith Ingram, acknowledging that "individual eligibility criteria ha[ve] nothing to [d]o with the number"). On these facts, the State Defendants have failed to present even a "substantial case on the merits." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam).

The State Defendants argue that the Court's Order will prevent Harris, Fort Bend, and Montgomery Counties—the three counties running the Houston election—from uniformly implementing state law because (1) the Court's Order is only binding on Harris County, the only county of the three that is a named defendant here, and (2) the injunction was issued after election officials had started processing absentee ballots for that election. *See* ECF No. 824 at 7–9. But these concerns rest on incorrect premises.

To begin, this argument rests on the State Defendants' previously rejected argument that the Secretary is not a proper defendant to this action:

> While the Secretary of State issues election advisories to county election officials, these documents are persuasive, not coercive. To the extent Sections 5.07 or 5.13 of S.B. 1 require local election officials to reject mail ballot materials, they do so independently of any actions the Secretary does or does not take. The Secretary of State cannot coerce local officials into accepting or rejecting mail ballot materials.

ECF No. 824 at 5; *but see* S.B. 1 § 7.04 (codified as TEX. ELEC. CODE ("TEC") § 276.019) (prohibiting election officials from creating, altering, modifying, waiving or suspending any

election standard, practice, or procedure in a manner not expressly authorized by code). The Court already considered and rejected this argument. *See La Union del Pueblo Entero v. Abbott ("LUPE (USA)")*, 604 F. Supp. 3d 512, 542–43 (W.D. Tex. 2022) (concluding that the SOS is a proper defendant because "the Secretary is responsible for maintaining uniform application, operation, and interpretation of S.B. 1.") (citing TEC § 31.003); *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (applying § 31.003 to vote-by-mail rules).[2]

With respect to the City of Houston's runoff election, the State Defendants' repeat arguments concerning the Secretary's role in election administration is simply a red herring—the United States sought and obtained relief against the entire *State of Texas*. *See* ECF No. 821 at 12, 52–53 (granting relief against "State Defendants," including the State of Texas). Thus, the injunction applies to *all* counties in the State of Texas, not just the individual counties named in the OCA Plaintiffs' Second Amended Complaint. Texas counties are legal subdivisions of the State of Texas, *see* Tex. Const. art. 11, § 1 & art. 9, § 1. Accordingly, as the United States correctly points out, no voter will be subject to different standards because of where they reside.

## 2.    Balance of the Equities

The injury to Plaintiffs and voters in Texas in the absence of injunctive relief—the denial of otherwise valid ABBMs and mail ballots—would be great: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as

---

[2] The State Defendants take the self-contradictory position that the Secretary is not a proper defendant to this action because her Office has no authority to coerce counties into following its election advisories *and* that failure to stay the injunction of Sections 5.07 and 5.13 of S.B. 1 would "irreparably harm that agency" because "Title I of the [TEC] requires the [Secretary] to ensure uniform and consistent elections." *See* ECF No. 824 at 5, 8. It is not clear to the Court how the SOS can "ensure uniform[ity]" without any authority to direct counties' election administration. Nor is it clear to the Court how the Secretary would be harmed by an injunction it has no authority to enforce.

Assuming that the Secretary is correct that her Office has no authority to enforce Sections 5.07 and 5.13 of S.B. 1 because county officials are responsible for enforcing ballot application and mail ballot requirements, *see* ECF No. 824 at 5, the Court observes that the Harris County Election Administrator has not filed a notice of appeal, requested a stay of the injunction in advance of the December 9, 2023 run-off, or even joined in the State Defendants' motion.

good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

As the Court pointed out in its summary judgment order, the injunctive relief at issue in this case imposes at most a *de minimis* burden on the State Defendants and election officials, including in the City of Houston's December 9, 2023 runoff election.

The injunction does not direct the State Defendants to change the *process* for applying to vote by mail or the deadline or eligibility requirements for doing so. Texas election officials can continue to use the form ABBM and carrier envelopes prescribed by the Secretary in administering elections, and can even follow the same cure process outlined under Texas law (in an effort to correct outstanding TEAM errors). Thus, it is immaterial to this Court's analysis that the deadline to apply to vote by mail in the December 9, 2023 runoff has expired. To the extent that election officials rejected otherwise valid ABBMs based on S.B. 1's number-matching requirement, election officials can now mail ballots to those applicants. Even if applicants have already initiated the cure process with respect to those ABBMs, the Court's injunction does not prevent the operation of the cure process. Rather, the injunction merely requires officials to accept otherwise valid ABBMs and mail ballots that failed to satisfy S.B. 1's number matching requirements.

Thus, election officials administering the City of Houston runoff election should now mail ballots to applicants whose otherwise valid ABBMs were rejected for failure to satisfy S.B. 1's number-matching requirement. Of course, not all voters will receive or submit those ballots in time to have their votes counted in the election. But, again, the Court's injunction is limited to the rejection of mail voting materials for failure to satisfy S.B. 1's number-matching requirements only. Nothing in the Court's order requires election officials to accept untimely voting materials.

### 3. Public Interest

The Court considered the impact of the injunction on the public interest in its summary judgment order. *See* ECF No. 821 at 49–52 (citing *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (protecting the right to vote is of particular public importance because it is "preservative of all rights"); *Owens v. State*, 64 Tex. 500, 502 (1885) ("All statutes tending to limit the citizen in his exercise of this right should be liberally construed in [the voter's] favor.")). Counting valid votes is always in the public interest. Excluding them because of immaterial paperwork errors is not.

## CONCLUSION

For the forgoing reasons, the State Defendants' motion for a stay (ECF No. 824) of this Court's order enjoining the enforcement of Sections 5.07 and 5.13 of S.B. 1, joined by the Intervenor-Defendants (ECF No. 828), is **DENIED** in all respects.

It is so **ORDERED**.

**SIGNED** this 4th day of December, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE