# United States Court of Appeals
# for the Fifth Circuit

*FILED*

*DEC 15 2023*

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

---

No. 23-50885

---

UNITED STATES OF AMERICA; OCA-GREATER HOUSTON,
LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS,

*Plaintiffs—Appellees,*

*versus*

KEN PAXTON, *Attorney General, State of Texas*; JANE NELSON, *in her official capacity as Texas Secretary of State*; STATE OF TEXAS; HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,

*Defendants—Appellants,*

REPUBLICAN NATIONAL COMMITTEE,

*Movant—Appellant.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844

---

## ORDER GRANTING STAY PENDING APPEAL

Before CLEMENT, ENGELHARDT, and OLDHAM, *Circuit Judges.*

No. 23-50885

PER CURIAM:*

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Texas Legislature enacted the Election Protection and Integrity Act ("S.B.1") in 2021 in response to the myriad difficulties experienced by election officials concerning mail-in ballots during the 2020 election cycle. *See* An Act Relating to Election Integrity and Security, 2021 Tex. Sess. Law Serv. 2nd Called Sess. Ch. 1 (West). S.B.1 requires voters to, among other things, provide the number from a government-issued ID on any application for a ballot by mail ("ABBM"), as well as on the envelope containing the completed ballot. TEX. ELEC. CODE §§ 84.002, 86.002. Thus, a qualified voter seeking to vote by mail must submit a signed ABBM to her county's early-voting clerk, and the ABBM must include a number from a government issued ID, a partial social security number, or a statement that the applicant lacks such ID numbers. *Id.* § 84.002. The early-voting clerk then evaluates the ABBM to determine whether it complies with S.B.1's requirements. § 86.001. When the qualified voter sends in her mail-in ballot, the S.B.1-required ID number must also appear on the ballot envelope. *Id.* § 87.041. Early Voting Ballot Boards ("EVBBs") open and evaluate mail-in ballots to determine whether they should be accepted, in part by verifying that the ballot meets the ID number requirement. *Id.* § 87.041(b). Election officials must notify the voter whether her ABBM or mail-in ballot was flagged for rejection and must provide an opportunity for the voter to add or correct the information. *Id.* §§ 86.008, 87.0411.

The case before us involves two consolidated lawsuits. The United States sued the State of Texas and Texas Secretary of State Jane Nelson (in

---

* JUDGE CLEMENT does not join the order. She would have extended the administrative stay and expedited the case to the next available merits panel.

No. 23-50885

her official capacity). It argues S.B.1 §§ 5.07 and 5.13, which require election officials to reject ABBMs and mail-in ballots if the ID number provided does not match an ID number included with that voter's registration records, violate the Materiality Provision of § 1971 of the Civil Rights Act of 1964, *see* 52 U.S.C. § 10101(a)(2)(B), by requiring election officials to reject ABBMs and mail-in ballots based on immaterial informational errors. Separately, a group of private plaintiffs sued Secretary Nelson (in her official capacity), Texas Attorney General Ken Paxton (in his official capacity), and several county-level election officials (in their official capacities). The private plaintiffs argue the entirety of S.B.1's number matching framework violates the Materiality Provision for reasons similar to those espoused by the United States.

Both the United States and the private plaintiffs moved for summary judgment. The district court granted both motions and entered an order permanently enjoining "the State Defendants, the Harris County Elections Administrator, and the Travis County Clerk, their agents and successors in office, and all persons acting in concert with them" from enforcing "the requirements of Section 5.07 and 5.13 of Senate Bill 1 that violate Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B)." The scope of the injunction is unclear, but it appears the district court's order precludes any Texas official from enforcing the number-matching requirements of S.B.1 §§ 5.07 and 5.13. *See* District Court Order on Motion for Stay Pending Appeal at 4 (explaining "the United States sought and obtained relief against the entire State of Texas.").

Appellants sought a stay pending appeal in the district court. The district court denied their application, so Appellants filed an emergency motion for a stay pending appeal in this court. Because the district court entered its order after EVBBs began processing ballots for local runoff

No. 23-50885

elections, we administratively stayed the order. We now address Appellants' motion for a full stay pending appeal.

## II. DISCUSSION

Our "power to hold an order in abeyance" while we assess its legality is "inherent." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). *Nken*'s four-factor standard guides our analysis and requires us to consider the following: "(1) whether [Appellants] ha[ve] made a strong showing that [they are] likely to succeed on the merits; (2) whether [they] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Vote.Org v. Callanen*, 39 F.4th 297, 302 (5th Cir. 2022). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434. "The proponent[s] of a stay bear[] the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

We conclude that the Appellants' motion should be GRANTED, so we exercise our discretion to STAY the district court's order and injunction pending appeal.

## A. Appellants are Likely to Succeed on Appeal.

At the outset, it is not even clear that § 10101 contains a private right of action. *See McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) ("Section 1971 is enforceable by the Attorney General, not by private citizens."); *see also McKay v. Altobello*, 1996 WL 635987, at *2 (E.D. La. Oct. 31, 1996) ("[42 U.S.C. § 1971] is . . . enforceable only by the Attorney General, not impliedly, by private persons.") (citing *Good v. Roy*, 459 F. Supp. 403 (D. Kan. 1978)); *Gilmore v. Amityville Union Free School Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004) ("[The] provisions [of § 1971] are only enforceable by the United States of America in an action brought by the

No. 23-50885

Attorney General and may not be enforced by private citizens.") (citation omitted). *But see Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (holding § 1971 can be enforced by private parties through § 1983). If that is true, the private plaintiffs' suit obviously fails. Nevertheless, the Attorney General of the United States unquestionably has authority to enforce § 10101, *see* 52 U.S.C. § 10101(c), so we must proceed to the merits of the parties' arguments.

We conclude Appellants are likely to prevail on appeal for at least three reasons. First, the Materiality Provision precludes state officials only from "deny[ing] the right of any individual to vote..." *See id.* § 10101(b). S.B.1's identification requirements do not deny anyone the right to vote because they only affect the ability of some individuals to vote by mail. We have held voting by mail is a privilege that can be limited without infringing the right to vote. *See, e.g., Tex. Democratic Party v. Abbott*, 961 F.3d 389, 403–05 (5th Cir. 2020) (citing *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–11 (1969)). So we think it is unlikely S.B.1 implicates the Materiality Provision at all.

Second, even assuming vote-by-mail restrictions implicate the Materiality Provision, we have said only racially motivated deprivations of rights are actionable under § 10101. *See Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) (citing *Kirksey v. City of Jackson*, 663 F.2d 659, 664–65 (5th Cir. 1981)), *aff'd*, 381 F. App'x 370 (5th Cir. 2010) (per curiam)); *see also United States v. Mississippi*, 380 U.S. 128, 138 (1965) ("Section 1971 was passed by Congress under the authority of the Fifteenth Amendment to enforce that Amendment's guarantee..."); *Veasey v. Abbott*, 830 F.3d 216, 315 (5th Cir. 2016) (Jones, J., concurring in part and dissenting in part) ("The Fifteenth Amendment secures the right to vote from denial or abridgment by intentional discrimination on account of race or color.") (citing *City of Mobile v. Bolden*, 446 U.S. 55, 61–66 (1980)); *Ind. Democratic Party v. Rokita*, 458 F.

No. 23-50885

Supp. 2d 775, 839 (S.D. Ind. 2006) (dismissing § 1971 suit because plaintiffs did "not allege[], much less prove[], any discrimination based on race"), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). Neither the United States nor the private plaintiffs allege Texas enacted S.B.1 with a discriminatory purpose, *see* Appellee United States's Opposition to Appellants' Emergency Motion to Stay at 11–13 (arguing the Materiality Provision is not limited to racially motivated state action but not contending S.B.1 was racially motivated), so we think it unlikely plaintiffs could establish that S.B.1 violates the Materiality Provision.

Lastly (and relatedly), S.B.1's provisions merely require election officials to confirm the identity of persons seeking to vote by mail by matching their identification numbers with identification numbers in Texas's database of registered voters. Texans are required to present identification to vote in person, *see* Appellants' Emergency Motion to Stay at 10, and plaintiffs are not arguing those requirements violate the Materiality Provision. There is no reason why identification requirements in the context of vote-by-mail should be subject to any greater scrutiny. In fact, our cases suggest precisely the opposite. *See supra.* Moreover, since 2004, Congress itself has required voters to include identification numbers on voter registration applications. *See* 52 U.S.C. § 20901 *et seq.* So the same legislative body that enacted the Materiality Provision clearly thinks voter identification numbers are "material to determining eligibility to register and to vote." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008) (citation omitted). We do not think a law requiring voters to include the same information on mail-in voting materials that Congress itself asks voters to include on their voter registration applications violates the Materiality Provision.

No. 23-50885

At times, Plaintiffs seem to suggest the real problem with S.B.1 is that Texas's voter registration database is riddled with errors that will result in the rejection of ABBMs and mail-in ballots for otherwise qualified Texas voters. *See* Appellee United States's Opposition to Appellants' Emergency Motion to Stay at 21. But that is not what the district court held. The district court held S.B.1's requirements are immaterial as a matter of law because they do not affect a voter's eligibility to vote. *See* District Court Opinion at 27. It may be that the State's execution of S.B.1 is so flawed it unlawfully abridges the voting rights of Texas citizens. But that seems to us a factual question, and the State points to testimonial evidence suggesting ballot rejection rates have not changed much—if at all—since S.B.1 was enacted. *See* Appellants' Reply in Support of Emergency Motion to Stay at 4. Because there appears to be a genuine dispute of material fact about the practical effect of S.B.1, it is not clear the district court have properly held at summary judgment that the State's execution of S.B.1 violates the Materiality Provision.

Thus, even if mail-in voting restrictions implicate the Materiality Provision, and even if election rules untinged by racial motivations can violate the Materiality Provision, we still think Appellants are likely to succeed on the merits. We therefore conclude Appellants have carried their burden on the first *Nken* factor.[†]

## B. The Remaining *Nken* Factors Support the Issuance of a Stay.

The other *Nken* factors also favor granting the application for a stay. First, Appellants carried their burden of demonstrating they will be

---

[†] Of course, our evaluation of Appellants' *likelihood* of success on the merits does not bind a later merits panel's evaluation of the *actual* merits. *See, e.g., Texas Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020) (so noting).

No. 23-50885

irreparably injured absent a stay. *See Nken*, 556 U.S. at 434. That is because "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers)); *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). Moreover, the district court's order will significantly disrupt the State's administration of current and upcoming elections. Mail-in balloting has already begun ahead of the January 30, 2024 runoff in Texas House District 2. *See* Appellants' Reply in Support of Emergency Motion to Stay at 3. And election officials across the state are undoubtedly preparing for January 1, when voters may submit an ABBM for the March 5, 2024 primaries. *See Important Election Dates 2023–2024*, TEXAS SECRETARY OF STATE (last accessed Dec. 12, 2023), https://perma.cc/5A8R-KTRV. Allowing the district court's order would thus render substantial administrative chaos during an election or "in the period close to an election." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 30–31 (2020) (mem.) (Kavanaugh, J., concurring).

Nor will a stay substantially injure the United States or the private plaintiffs. *See Nken*, 556 U.S. at 434. The United States cannot claim to be substantially injured by a stay of an order that likely misapplied federal law. *See supra*. And a stay of the district court's order merely maintains the status quo that prevailed for over two years prior to the district court's summary judgment order. There is no reason to believe "maintenance of the status quo" would substantially injure the private plaintiffs. *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (quotation omitted).

Lastly, the public interest weighs in favor of a stay. *See Nken*, 556 U.S. at 434. When "[a] State"—here Texas—"is [an] appealing party, its interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391 (citing *Nken*,

No. 23-50885

556 U.S. at 435). Since we conclude the state would be irreparably injured absent a stay, *see supra*, we also conclude a stay would serve the public interest.

### III. Conclusion

We GRANT Appellants' motion for the reasons discussed above and exercise our discretion to STAY the district court's order and injunction pending appeal.