IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| | § | |
| *Defendants*. | § | |

**HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S**
**<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

## PROPOSED FINDINGS OF FACT

### I. Elections in Harris County

1.    The Harris County District Attorney's Office is not involved in the administration of the elections process in Harris County or in any other Texas county.  Instead, that process has been administered in Harris County through the Harris County Clerk's Office from the November 2023 elections forward.  Prior to November 2023, the Harris County Elections Administrator's Office was responsible for the administration of elections until the office was eliminated by state statute.  9/19/2023 Tr. 1145:23-1146:23; Tex. Elec. Code § 31.031(a); *Harris County v. Texas*, No. D-1-GN-23-003523 (345th Dist. Ct., Travis County, Tex. Nov. 27, 2023) (nonsuiting Harris County's challenge to the law).

2.    Harris County elections administrators have adopted practices and policies to support the county's voting systems and increase voter turnout—including turnout among minority voters.  9/20/23 Tr. 1273:10-18 (quoting HAUL Ex. 273); 9/19/23 Tr. 1156:5-8, 1158:10-13; HAUL Ex. 332 at ¶¶ 161, 166, 168, 169; 10/4/23 Tr. 2642:24-2643:21.

### II. Defendant Harris County District Attorney Kim Ogg

3.    Harris County District Attorney Kim Ogg ("District Attorney Ogg") is the elected district attorney of Harris County.  The jurisdiction of the office in which District Attorney Ogg serves is limited to prosecuting criminal matters in the name and under the authority of the State of Texas within the territorial boundaries of Harris County.  OCA Ex. 416 at Response No. 1; *see also* Tex. Gov't Code § 43.180(b)-(c).  The Harris County District Attorney's Office ("HCDAO") has no jurisdiction over civil matters affecting the county.  Civil matters affecting Harris County are within the jurisdiction of the Office of the Harris County Attorney.  Tex. Gov't Code § 45.201.

4.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO had any involvement in the drafting or passage of S.B. 1.

5.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO ever expressed support for S.B. 1 or ever expressed an intent to prosecute cases under criminal provisions included in that legislation if it passed.

6.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO ever demonstrated a willingness to prosecute anyone under any provision of S.B. 1, including S.B. 1 provisions that provide criminal penalties.   The available evidence proves otherwise.  9/14/23 Tr. 960:21-23; 9/21/23 Tr. 1623:11-20; 9/21/23 Tr. 1677:6-1678:9; 9/21/23 Tr. 1744:1-7; OCA Ex. 416 at Response No. 1.

7.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO ever took any actions with respect to S.B. 1, much less with intent to discriminate against any Harris County voter based on race or disability.

8.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO ever took any actions with respect to S.B. 1, much less in a manner that had a discriminatory effect on Harris County voters belonging to any racial group or who had disabilities.

9.      There is no evidence in the record that District Attorney Ogg or any employee of the HCDAO has ever received a request for a disability accommodation in connection with one or more provisions of S.B. 1 or otherwise.

## III.    Enforcement and Interpretation of S.B. 1

10.      There is no evidence in the record of any criminal prosecutions in Harris County, or anywhere else in Texas, under any additions or amendments by S.B. 1 to existing criminal laws.

9/14/23 Tr. 961:7-9; 9/21/23 Tr. 1624:1-4; 9/21/23 Tr. 1678:14-1679:2; 9/22/23 Tr. 1781:12-14; 9/22/23 Tr. 1807:13-15; OCA Ex. 416 at Response No. 5.

11.     There is no evidence in the record of any criminal investigations in Harris County, or anywhere else in Texas, concerning any of the additions or amendments to existing criminal laws made by S.B. 1.  9/14/23 Tr. 961:3-6; 9/21/23 Tr. 1623:21-25; 9/21/23 Tr. 1678:10-13; 9/21 Tr. 1744:14-17; 9/22/23 Tr. 1781:9-11; OCA Ex. 416 at Response No. 5.

12.     There is no evidence in the record of any criminal complaints in Harris County, or anywhere in Texas, concerning any of the additions or amendments to existing criminal laws made by S.B. 1.  OCA Ex. 416 at Response No. 5.

13.     S.B. 1 Section 4.06 attaches criminal penalties to conduct that was already prohibited by the Texas Election Code before S.B. 1 was passed.  TEX. ELEC. CODE § 33.051(g).

14.     Before S.B. 1 was passed and enacted into law, it was already a crime in Texas to obstruct a poll watcher, and S.B. 1 Section 4.09 merely added additional "redundant" language to Texas Election Code § 33.061(a).  9/14/23 Tr. 912:21-913:10.

15.     There is no evidence in the record of any report, investigation, or prosecution of an alleged act of perjury involving the in-person assistor oath in Harris County, or anywhere else in Texas, under Texas Election Code § 64.034.

16.     There is no evidence in the record of any report, investigation, or prosecution of an alleged failure to comply with the disclosure requirements for mail-in ballot assistors in Harris County, or anywhere else in Texas, under Texas Election Code § 86.010(e) as amended by S.B. 1 Section 6.05.

17.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted the provision of food, drinks, parking, gasoline, clothing,

stickers, pins, pens, or raffle prizes to be "compensation" or a "benefit" under S.B. 1 Sections 6.06 or 7.04.

18.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted S.B. 1 Section 6.06 as prohibiting anyone from giving someone a ride to the polls, notwithstanding Section 6.06's explicit application only to situations involving mail-in voting.

19.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted S.B. 1 Section 7.04 as prohibiting anyone from giving someone a ride to the polls, notwithstanding Section 7.04's categorical exclusion of: (1) "interactions that do not directly involve an official ballot or ballot by mail"; and (2) an "activity that is not designed to deliver votes for or against a specific candidate or measure." TEX. ELEC. CODE § 276.015(e)(2), (5).

20.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted S.B. 1 Section 6.06 to make it illegal for a paid attendant or caregiver of a voter to assist that voter with casting mail-in ballots in accordance with the voter's wishes, notwithstanding Section 6.06's categorical exclusion of assistance provided by an "attendant or caregiver previously known to the voter." TEX. ELEC. CODE § 86.0105(f).

21.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted S.B. 1 Section 7.04 to apply to a person who unknowingly interacts with someone in the presence of a mail-in ballot, notwithstanding Section 7.04's explicit application only to individuals who engage in prohibited conduct "knowingly." TEX. ELEC. CODE § 276.015(b), (c), (d); TEX. PENAL CODE § 6.03(b) (defining "knowingly" as being "aware of the nature of his conduct or that the circumstances exist").

22.     There is no evidence in the record that any government official, much less District Attorney Ogg, has ever interpreted the hosting of a candidate forum to be "intended" or "designed" to "deliver votes for a specific candidate or measure" within the meaning of S.B. 1 Section 7.04. TEX. ELEC. CODE § 276.015(a)(2), (e)(5).

23.     There is no evidence in the record that any plaintiff before the Court is an election official, poll watcher, or voter in Harris County, except for Marla Lopez and Marlon Lopez, who are Harris County voters who do not challenge any of S.B. 1's criminal provisions other than Section 7.02.

24.     After District Attorney Ogg was added as a defendant in this case, District Attorney Ogg proposed a stipulation under which she would not prosecute any alleged violations of S.B. 1 pending the resolution of the case, including any appeals.  Plaintiffs through counsel refused to accept the stipulation.  Dkt. 781.

## PROPOSED CONCLUSIONS OF LAW

## I.    Legal Standards

### A.    Standing

25.     Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.  *Id.*

26.     To establish Article III standing, the plaintiff must have suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.  *Clapper*, 568 U.S. at 409 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

27.     The "imminence" requirement "is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).  A "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of possible future injury" are not sufficient.  *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

28.     A plaintiff's failure "to offer any evidence" of enforcement practices "undermines" that plaintiff's theory of standing.  *Clapper*, 568 U.S. at 411.  Plaintiffs who "merely speculate and make assumptions" about the government's enforcement practices fail to establish standing.  *Id.*

29.     That a plaintiff made expenditures or changed certain practices based on a fear of enforcement does not eliminate the requirement that the plaintiff show an "imminent" threat of enforcement that is "certainly impending."  *Clapper*, 568 U.S. at 416.  A plaintiff's "subjective fear" of enforcement is insufficient to establish standing if the plaintiff has not established a threat of enforcement that is "certainly impending."  *Id.*

30.     A theory of organizational standing requires the plaintiff organization to show a "perceptible impairment" of its ability to carry out its mission.  *See Louisiana Fair Housing Action Ctr., Inc. v. Azalea Garden Properties, LLC*, 82 F.4th 345, 353-55 (5th Cir. 2023).

31.     The Supreme Court's "decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973); *see also, e.g.*, *Bailey v. Patterson*, 369 U.S. 31, 32 (1962) ("Appellants lack standing to enjoin criminal prosecutions . . . since they do not allege that they have been prosecuted or threatened with prosecution under them."); *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021) ("Supreme

Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution.").

32.    "To ensure that standing is not dispensed in gross, the district court must analyze Plaintiffs' standing to challenge each provision of law at issue." *In re Gee*, 941 F.3d 153, 162 (5th Cir. 2019) (per curiam).  Each plaintiff must "demonstrate all of the elements of standing for each provision they seek to challenge" and may not avoid this requirement by purporting to assert a "cumulative effects" challenge to a multitude of legal provisions.  *Id.* at 162 n.4.  Even though "analyzing standing at this level of granularity can be tedious in a sweeping challenge" to a multitude of legal provisions, such granularity is "what Article III requires."  *Id.* at 165.

33.    Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 560.  Thus, even if the Court has denied a motion to dismiss or motion for summary judgment challenging standing, the Court must examine whether the plaintiffs have satisfied their burden to prove standing through competent evidence adduced at trial.

34.    District Attorney Ogg filed a motion to dismiss the case in part on standing grounds, which the Court granted in part and denied in part.  Dkt. 450.  District Attorney Ogg filed a motion for summary judgment in part on standing grounds, Dkt. 614, which the Court has carried with the case.  District Attorney Ogg made a motion for judgment at the close of the plaintiffs' evidence under Federal Rule of Civil Procedure 52(c), Dkt. 804, which the Court has carried with the case.

### B.    State Sovereign Immunity

35.    Texas district attorneys and assistant district attorneys act as state officials when enforcing state criminal laws and are entitled to state sovereign immunity.  *Esteves v. Brock*, 106

F.3d 674, 677 n.8 (5th Cir. 1997) (holding that as a "state officer acting in her official capacity, however, [assistant district attorney] Brock is protected by the eleventh amendment from suit under section 1983");[1] *see also Moreno v. Donna Indep. Sch. Dist.*, 589 F. App'x 677, 680 (5th Cir. 2014) ("We agree with the district court that the Eleventh Amendment shields [the district attorney] from official-capacity liability."); *Quinn v. Roach*, 326 F. App'x 280, 292-93 (5th Cir. 2009) ("The District Attorney Defendants are protected by Eleventh Amendment immunity with respect to their actions in handling the criminal case against Quinn."); *Gokey v. Economidy*, No. SA-CV-00987-XR, 2022 WL 395970, at *6 (W.D. Tex. Feb. 8, 2022) (Rodriguez, J.) ("The Fifth Circuit has stated on numerous occasions that district attorneys and assistant district attorneys in

---

[1] *Esteves* recognized that *Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985), treated a Texas district attorney as a county official in a challenge to a county's unlawful policy of issuing misdemeanor capias without probable cause, but distinguished *Crane* because *Esteves* involved a prosecutor being sued for "acting in the prosecutorial capacity to enforce state penal law." *Esteves*, 106 F.3d at 678. When acting in that capacity, "Texas law makes clear" that "a district attorney is an agent of the state." *Id.* A Texas district attorney acts on behalf of the State of Texas in enforcing the State's criminal laws within the territorial confines of her district. *E.g.*, TEX. CODE CRIM. P. art. 2.01. A recent Fifth Circuit panel, in *National Press Photographers Association v. McCraw*, No. 22-50337, 2024 WL 105019 (5th Cir. Jan. 10, 2024) (revised panel opinion, petition for rehearing en banc pending), concluded that the Texas district attorney who was a defendant in that case was not entitled to state sovereign immunity. In reaching that conclusion, the *National Press Photographers* panel opinion relied on a case involving a Louisiana district attorney, *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999). Having reviewed the applicable precedents, the Court follows *Esteves* pursuant to the rule of orderliness and holds that District Attorney Ogg may assert state sovereign immunity. *See PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 842 n.3 (5th Cir. 2023) (explaining that the rule of orderliness means "one panel of our court may not overturn another panel's decision"). This holding is in accord with *Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022) (en banc), which held that reliance on *Hudson* in a Section 1983 claim can be "misleading" and that Dallas County Judges—who act as officers of the state judicial system within the territorial confines of Dallas County—could assert state sovereign immunity. *Daves*, 22 F.4th at 533 ("For purposes of Section 1983 personhood, it is state law that determines whether an official with final policymaking authority as to the specific function involved in the litigation is acting for a local governmental unit or the state."). Like county judges, district attorneys are also members of the judicial department under Texas law. *See State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021) ("The offices of county and district attorney . . . are in the judicial branch of government. Tex. Const. art. V, § 21."). Here, as in *Daves*, the plaintiffs seek to enjoin a state official from engaging in functions on behalf of the State of Texas within her district.

Texas are agents of the state when acting in their prosecutorial capacities."); Dkt. 450 at 7 (recognizing that District Attorney Ogg is a "state official").

36.     In a suit against an official-capacity defendant seeking prospective injunctive relief, the exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), applies only when the defendant has both a "particular duty to enforce the statute in question" and "a demonstrated willingness to exercise that duty." *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023); *see also, e.g.*, *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). This analysis must occur "provision-by-provision." *Tex. All. for Retired Ams.*, 28 F4th at 672.

37.     The *Ex parte Young* analysis has "significant overlap" with Article III standing and turns "on the specific details" of the case. *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Division of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017). A "case-by-case approach to the *Young* doctrine has been evident from the start." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 21, 280 (5th Cir. 1997)).

### C.     Claims Remaining for Resolution as to District Attorney Ogg

38.     The Court has previously granted a motion to dismiss in part, limiting the plaintiffs' claims against District Attorney Ogg.  The Court previously held that the only claims against District Attorney Ogg that could proceed past the motion-to-dismiss stage were those challenging S.B. 1 Sections 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04.  Dkt. 450 at 17.  Following the parties' claims as pled, Dkts. 199, 200, 207; the Court's partial grant of the motion to dismiss filed by District Attorney Ogg, Dkt. 450; the filing of a joint pretrial order, Dkt. 753; and the statements of counsel at trial, 10/3/23 Tr. 2180:16-21, 2181:1-5, only the following claims against District Attorney Ogg regarding the listed S.B. 1 provisions remain open for resolution by the Court following trial:

**SECTION 4.06**

<u>Houston Area Urban League</u> (Dkt. 199 at ¶¶ 276, 295; Dkt. 753 at 6-7)

- Challenging under 14th and 15th Amendments

**SECTION 4.09**

<u>Houston Area Urban League</u> (Dkt. 199 at ¶¶ 276, 295; Dkt. 753 at 6-7)

- Challenging under 14th and 15th Amendments

**SECTION 6.04**

<u>Houston Area Urban League</u> (Dkt. 199 at ¶¶ 276, 295, 311; Dkt. 753 at 6-7)

- Challenging under 14th and 15th Amendments and Section 2 of the Voting Rights Act (VRA)

<u>Arc of Texas</u> (Dkt. 199 at ¶¶ 324, 339, 355; Dkt. 753 at 7)

- Challenging under Section 208 of the VRA, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act

<u>REVUP-Texas</u> (Dkt. 753 at 5)

- Challenging under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act

**SECTION 6.05**

<u>Houston Area Urban League</u> (Dkt. 199 at ¶¶ 276, 295, 311; Dkt. 753 at 6-7)

- Challenging under 14th and 15th Amendments and Section 2 of the VRA

<u>Delta Sigma Theta Sorority</u> (Dkt. 199 at ¶¶ 276, 295, 311, 324; Dkt. 753 at 6-7; 10/3/23 Tr. 2180:16-21, 2181:1-5)

- Challenging under 14th and 15th Amendments, Section 2 of the VRA, and Section 208 of the VRA

<u>Arc of Texas</u> (Dkt. 199 at ¶¶ 324, 339, 355; Dkt. 753 at 7)

- Challenging under Section 208 of the VRA, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act

<u>Mi Familia Vota</u> (Dkt. 199 at ¶¶ 260, 277, 296, 309, 323)

- Challenging under 1st, 14th, and 15th Amendments, Section 2 of the VRA, and Section 208 of the VRA

**SECTION 6.06**

<u>OCA Greater Houston</u> (Dkt. 753 at 5)

- Challenging under Section 208 of the VRA

<u>League of Women Voters of Texas</u> (Dkt. 753 at 5)

- Challenging under Section 208 of the VRA

**SECTION 7.02**

<u>Mi Familia Vota</u> (Dkt. 199 at ¶¶ 260, 277, 296, 309)

- Challenging under 1st, 14th, and 15th Amendments and Section 2 of the VRA

<u>Marla Lopez</u> (Dkt. 199 at ¶ 261)

- Challenging under 1st and 14th Amendments

<u>Marlon Lopez</u> (Dkt. 199 at ¶ 261)

- Challenging under 1st and 14th Amendments

<u>Paul Rutledge</u> (Dkt. 199 at ¶ 261)

- Challenging under 1st and 14th Amendments

**SECTION 7.04**

<u>Mi Familia Vota</u> (Dkt. 199 at ¶¶ 260, 277, 296, 309)

- Challenging under 1st, 14th, and 15th Amendments and Section 2 of the VRA

<u>OCA Greater Houston</u> (Dkt. 753 at 5)

- Challenging under 1st and 14th Amendments

<u>League of Women Voters of Texas</u> (Dkt. 753 at 5)

- Challenging under 1st and 14th Amendments

LULAC Texas (Dkt. 753 at 8)

- Challenging under 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA

Voto Latino (Dkt. 753 at 8)

- Challenging under 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA

Texas ATF (Dkt. 753 at 8)

- Challenging under 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA

Texas Alliance for Retired Americans (Dkt. 753 at 8)

- Challenging under 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA

**D.    Section 2 of the Voting Rights Act**

39.    Section 2 of the Voting Rights Act states that no "voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).

40.    The essence of a Section 2 claim "is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities" of minority and non-minority voters to elect their preferred representatives.  *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)).

41.    Section 2 is violated only where, based on the totality of the circumstances, "the political processes leading to nomination or election" are not "equally open to participation" by members of the relevant protected group "in that its members have less opportunity than other

members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b); *see Brnovich*, 141 S. Ct. at 2332.

### E.    Section 208 of the Voting Rights Act

42.    Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  52 U.S.C. § 10508.

43.    Texas law specifically guarantees the right secured by Section 208, stating that a "voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs."  TEX. ELEC. CODE § 64.032(c).

### F.    Title II of the Americans with Disabilities Act

44.    To make "a prima facie case of discrimination under the Americans with Disabilities Act ("ADA")," a plaintiff must demonstrate:  "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."  *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020).

45.    Title II of the ADA "does not define discrimination in terms of a prospective risk to qualified disabled individuals."  *United States v. Mississippi*, 82 F.4th 387, 392 (5th Cir. 2023). "In stating that no individual shall be 'excluded,' 'denied,' or 'subjected to discrimination,' the statute refers to the actual, not hypothetical administration of a public program."  *Id.* (quoting 42

U.S.C. § 12132). Thus, in order for there to be a violation, there must be evidence of "individual instances" of discrimination. *Id.* at 400 ("Indeed, individual instances of discrimination were not proven here.").

46.     State sovereign immunity bars a plaintiff's claim under Title II of the ADA unless the plaintiff has "stated a plausible Title II claim" and either a "violation of the Fourteenth Amendment" or "prohibited conduct that is congruent and proportional to a pattern of Fourteenth Amendment violations that Congress sought to remedy." *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

## G.    Rehabilitation Act, Section 504

47.     The Rehabilitation Act prohibits discrimination based on disability in federally funded programs. The statute reads: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 28 U.S.C. § 794.

48.     The "rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). "The only material difference between the two provisions lies in their respective causation requirements." *Id.* The Rehabilitation Act contains the language "*solely by reason of her or his disability*," whereas under Title II of the ADA, discrimination need not be the sole reason for the exclusion or denial of benefits to the plaintiff. *Id.*

49.     Only when a state government entity accepts federal funds does it waive state sovereign immunity from suit under the Rehabilitation Act. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 451 (5th Cir. 2005); *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 349 (5th Cir. 2005).

## II.    HAUL Plaintiffs

### A.    Houston Area Urban League

50.     Houston Area Urban League ("HAUL") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 4.06 as violating the 14th and 15th Amendments.  Dkt. 199 at ¶¶ 276, 295; Dkt. 753 at 6-7.

51.     In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 4.06, against an "election officer" (much less a HAUL member) or otherwise, HAUL has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

52.     Furthermore, HAUL has failed to adduce evidence of any "election officer" who is a member of HAUL and who is the subject of prosecution or a threat of prosecution in Harris County, and thus has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

53.     Furthermore, in light of the fact that S.B. 1 Section 4.06 attaches criminal penalties to conduct that was already unlawful under the Texas Election Code, there is insufficient evidence in the record for a conclusion that any hypothetical enforcement of the Section 4.06 criminal law provisions by District Attorney Ogg has impaired or would impair HAUL's ability to carry out its mission objectives in the areas of voter education and assistance.

54.    Furthermore, because there is no competent evidence in the record that any HAUL employee or member is an election officer who intends to refuse to accept a poll watcher whose acceptance is required by law, HAUL has not established an imminent or impending threat of injury by any hypothetical enforcement of the criminal provisions of S.B. 1 Section 4.06 by District Attorney Ogg.

55.    HAUL lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 4.06.

56.    Because HAUL has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 4.06 and a demonstrated willingness to exercise that duty, its constitutional claims against District Attorney Ogg challenging Section 4.06 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

57.    HAUL has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 4.09 as violating the 14th and 15th Amendments.  Dkt. 199 at ¶¶ 276, 295; Dkt. 753 at 6-7.

58.    Prior to the enactment of S.B. 1 Section 4.09, it was already illegal for an election official to prevent poll watchers from observing activities they were legally entitled to observe. Section 4.09 added clarifying language stating that "taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective" constitutes illegal prevention of observation. There is no competent evidence in the record that would support a finding that any hypothetical enforcement of the additional language regarding poll watcher obstruction in Section 4.09, much

less enforcement by District Attorney Ogg, has impaired or would impair HAUL's ability to carry out its mission objectives in the areas of voter education and assistance.

59.     In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 4.09 against an "election officer" (much less a HAUL member) or otherwise, HAUL has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

60.     Furthermore, because there is no competent evidence in the record that any HAUL employee or member is an election officer who will be exposed to criminal liability under the clarifying language added by S.B. 1 Section 4.09, HAUL has not established an imminent, certainly impending threat of injury by any hypothetical enforcement of the criminal provisions of Section 4.09 by District Attorney Ogg.

61.     Furthermore, in light of the fact that S.B. 1 Section 4.09 attaches criminal penalties to conduct that was already unlawful under the Texas Election Code, there is insufficient evidence in the record for a conclusion that any hypothetical enforcement of Section 4.09 by District Attorney Ogg has impaired or would impair HAUL's ability to carry out its mission objectives in the areas of voter education and assistance.

62.     HAUL lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 4.09.

63.     Because HAUL has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 4.09 and a demonstrated willingness to exercise that duty, its constitutional claims against District Attorney Ogg challenging Section 4.09 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

64.     HAUL has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.04 as violating the 14th and 15th Amendments and Section 2 of the VRA.  Dkt. 199 at ¶¶ 276, 295, 311; Dkt. 753 at 6-7.

65.     Because the revised oath as specified in S.B. 1 Section 6.04 is administered by election officials at polling places and is not implemented by the HCDAO, HAUL has not established an injury traceable to any hypothetical action that could be taken by District Attorney Ogg for its claims challenging Section 6.04.

66.     Furthermore, because S.B. 1 Section 6.04 does not contain a substantive criminal provision enforceable by the HCDAO, HAUL has failed to demonstrate an injury traceable to District Attorney Ogg for its claims challenging Section 6.04.

67.     Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.04, against any person assisting a person with in-person voting (much less a HAUL member) or otherwise, HAUL has not proved that it has standing to sue District Attorney Ogg with respect to S.B. 1 Section 6.04.

68.     Furthermore, because there is no competent evidence in the record that anyone (much less a HAUL member) has ever been reported, investigated, or prosecuted for perjury in Harris County in connection with the in-person assistor oath under Texas Election Code § 64.034, HAUL has not established an imminent, certainly impending threat of injury through any hypothetical criminal law enforcement that could be taken by District Attorney Ogg under S.B. 1 Section 6.04.

69.     HAUL lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.04.

70.     Because HAUL has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 6.04 and a demonstrated willingness to exercise that duty, its constitutional claims against District Attorney Ogg challenging Section 6.04 are barred by sovereign immunity. *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

71.     HAUL has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.05 as violating the 14th and 15th Amendments and Section 2 of the VRA. Dkt. 199 at ¶¶ 276, 295, 311; Dkt. 753 at 6-7.

72.     Because the disclosure requirements added by S.B. 1 Section 6.05 are implemented by governmental officials involved in creating, mailing out, and receiving carrier envelopes for mail ballots and are not implemented by the HCDAO, HAUL has not established an injury traceable to District Attorney Ogg for its claims challenging Section 6.05.

73.     Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.05, against any person assisting a person with mail-in ballot voting (much less a HAUL member) or otherwise, HAUL has not proved that it has standing to sue District Attorney Ogg with respect to Section 6.05.

74.     Furthermore, because there is no competent evidence in the record that anyone (much less a HAUL member) has ever been reported, investigated, or prosecuted in Harris County in connection with the disclosures required of assistors on the carrier envelope for mail-in ballots in S.B. 1 Section 6.05, HAUL has not established an imminent, certainly impending threat of injury by any hypothetical criminal law enforcement of Section 6.05 by District Attorney Ogg.

75.     HAUL lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.05.

76.     Because HAUL has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 6.05 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure HAUL, its constitutional claims against District Attorney Ogg challenging Section 6.05 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

**B.      Delta Sigma Theta Sorority**

77.     Delta Sigma Theta Sorority ("DST") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.05 as violating the 14th and 15th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 199 at ¶¶ 276, 295, 311, 324; 10/3/23 Tr. 2180:16-21, 2181:1-5 (statement of counsel that DST was challenging only Section 6.05).

78.     Because the disclosure requirements added by S.B. 1 Section 6.05 are implemented by governmental officials involved in creating, mailing out, and receiving carrier envelopes for mail ballots and are not implemented by the HCDAO, DST has not established an injury traceable to District Attorney Ogg for its claims challenging Section 6.05.

79.     Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.05, against any person assisting a person with mail-in ballot voting (much less a DST member) or otherwise, DST has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

80.     Furthermore, because there is no competent evidence in the record that anyone (much less a DST member) has ever been reported, investigated, or prosecuted in Harris County in connection with the disclosures required of assistors on the carrier envelope for mail-in ballots

in S.B. 1 Section 6.05, DST has not established an imminent, certainly impending threat of injury by any hypothetical criminal law enforcement of Section 6.05 by District Attorney Ogg.

81.    DST lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.05.

82.    Because DST has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 6.05 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injury DST, its constitutional claims against District Attorney Ogg challenging Section 6.05 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### C.    Arc of Texas

83.    Arc of Texas has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.04 as violating Section 208 of the VRA, Title II of the ADA, and Section 504 of the Rehabilitation Act.  Dkt. 199 at ¶¶ 324, 339, 355; Dkt. 753 at 7.

84.    Because the revised oath as specified in S.B. 1 Section 6.04 is administered by election officials at polling places and is not implemented by the HCDAO, Arc of Texas has not established an injury traceable to any hypothetical action that could be taken by District Attorney Ogg for its claims challenging Section 6.04.

85.    Furthermore, because S.B. 1 Section 6.04 does not contain a substantive criminal provision enforceable by the HCDAO, Arc of Texas has failed to demonstrate an injury traceable to District Attorney Ogg.

86.    Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.04, against a person assisting a person with in-person

voting (much less an Arc of Texas member) or otherwise, Arc of Texas has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

87.    Furthermore, because there is no competent evidence in the record that anyone (much less an Arc of Texas member) has ever been reported, investigated, or prosecuted for perjury in Harris County in connection with the in-person assistor oath under Texas Election Code § 64.034, Arc of Texas has not established an imminent, certainly impending threat of injury through any hypothetical criminal law enforcement by District Attorney Ogg under S.B. 1 Section 6.04.

88.    Arc of Texas lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.04.

89.    Because there is no competent evidence in the record that District Attorney Ogg has ever taken any enforcement action against anyone (much less an Arc of Texas member) involving the changes in law enacted in S.B. 1 Section 6.04, and Title II of the ADA establishes liability for only proven individual instances of discrimination rather than prospective risks, *United States v. Mississippi*, 82 F.4th at 392, there is insufficient evidence in the record to support Arc of Texas's claim under Title II of the ADA against District Attorney Ogg with respect to Section 6.04.

90.    Because Arc of Texas has failed to establish that S.B. 1 Section 6.04 constitutes a violation of Title II of the ADA, a violation of the Fourteenth Amendment, or could be prohibited under the Fourteenth Amendment, it has failed to allege a claim for which Congress has abrogated state sovereign immunity.  *See Pickett*, 37 F.4th at 1019 (citing *United States v. Georgia*, 546 U.S. at 159).

91.     Because Section 504 of the Rehabilitation Act is co-extensive with Title II of the ADA except for its stricter causation requirement, *Bennett-Nelson*, 431 F.3d at 454, there is likewise insufficient evidence in the record to support Arc of Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to S.B. 1 Section 6.04.

92.     Because there is no competent evidence in the record that District Attorney Ogg ever administered a federally funded program or activity that involved the enforcement of S.B. 1 Section 6.04, there is likewise insufficient evidence in the record to support Arc of Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to Section 6.04.  For the same reason, Arc of Texas's claim challenging Section 6.04 under Section 504 of the Rehabilitation Act is barred by state sovereign immunity.  *See Bennett-Nelson*, 431 F.3d at 451; *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d at 349.

93.     Arc of Texas has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.05 as violating Section 208 of the VRA, Title II of the ADA, and Section 504 of the Rehabilitation Act.  Dkt. 199 at ¶¶ 324, 339, 355; Dkt. 753 at 7.

94.     Because the disclosure requirements added by S.B. 1 Section 6.05 are implemented by governmental officials involved in creating, mailing out, and receiving carrier envelopes for mail-in ballots and are not implemented by the HCDAO, Arc of Texas has not established an injury traceable to District Attorney Ogg for its claims challenging Section 6.05.

95.     Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.05, against a person assisting a person with in-person voting (much less an Arc of Texas member) or otherwise, Arc of Texas has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

96.     Furthermore, because there is no competent evidence in the record that anyone (much less an Arc of Texas member) has ever been reported, investigated, or prosecuted in Harris County in connection with the disclosures required of assistors on the carrier envelope for mail-in ballots in S.B. 1 Section 6.05, Arc of Texas has not established an imminent, certainly impending threat of injury by any hypothetical criminal law enforcement of Section 6.05 by District Attorney Ogg.

97.     Arc of Texas lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.05.

98.     Because there is no evidence in the record that District Attorney Ogg has ever taken any enforcement action against anyone (much less an Arc of Texas member) involving the changes in law enacted in S.B. 1 Section 6.05, and Title II of the ADA establishes liability for only proven individual instances of discrimination rather than prospective risks, *United States v. Mississippi*, 82 F.4th at 392, there is insufficient evidence in the record to support Arc of Texas's claim under Title II of the ADA against District Attorney Ogg with respect to Section 6.05.

99.     Because Arc of Texas has failed to establish that S.B. 1 Section 6.05 constitutes a violation of Title II of the ADA, a violation of the Fourteenth Amendment, or could be prohibited under the Fourteenth Amendment, it has failed to allege a claim for which Congress has abrogated state sovereign immunity. *See Pickett*, 37 F.4th at 1019 (citing *United States v. Georgia*, 546 U.S. at 159).

100.    Because Section 504 of the Rehabilitation Act is coextensive with Title II of the ADA except for its stricter causation requirement, *Bennett-Nelson*, 431 F.3d at 454, there is likewise insufficient evidence in the record to support Arc of Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to S.B. 1 Section 6.05.

101.    Because there is no competent evidence in the record that District Attorney Ogg ever administered a federally funded program or activity that involved the enforcement of S.B. 1 Section 6.05, there is likewise insufficient evidence in the record to support Arc of Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to Section 6.05.  For the same reason, Arc of Texas's claim challenging Section 6.05 under Section 504 of the Rehabilitation Act is barred by state sovereign immunity.  *See Bennett-Nelson*, 431 F.3d at 451; *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d at 349.

**D.    Jeffrey Lamar Clemmons**

102.    The HAUL Plaintiffs' Second Amended Complaint states that Jeffrey Lamar Clemmons ("Clemmons") has not asserted any claims against District Attorney Ogg.  Dkt. 199 at ¶ 327.  The joint pretrial order states that Clemmons brings claims against only "Nelson, Garza, Colmenero, Tatum, and Callanen" and not District Attorney Ogg.  Dkt. 753 at 7.

103.    Even if Clemmons did have claims pending against District Attorney Ogg, it is undisputed that he resides and votes in Travis County, Dkt. 753 at 22, which is outside the jurisdiction of the HCDAO.

104.    Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of any provisions of S.B. 1, against Clemmons or otherwise, Clemmons has not proved that he has standing to sue District Attorney Ogg with respect to any S.B. 1 provisions.

105.    Furthermore, Clemmons has not established any imminent, certainly impending threat of injury by District Attorney Ogg based on any changes in law enacted in S.B. 1.

106.    Clemmons lack standing to sue District Attorney Ogg in a challenge to any of the provisions of S.B. 1.

107.    Because Clemmons has not established that District Attorney Ogg has both a particular duty to enforce any provision of S.B. 1 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure Clemmons, any constitutional claims brought by Clemmons against District Attorney Ogg challenging S.B. 1 are barred by sovereign immunity. *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

## III.    MFV Plaintiffs

### A.    Mi Familia Vota

108.    Mi Familia Vota ("MFV") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.05 as violating the 1st, 14th, and 15th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 199 at ¶¶ 260, 277, 296, 309, 323.

109.    Because the disclosure requirements added by S.B. 1 Section 6.05 are implemented by governmental officials involved in creating, mailing out, and receiving carrier envelopes for mail-in ballots and are not implemented by the HCDAO, MFV has not established an injury traceable to District Attorney Ogg for its claims challenging Section 6.05.

110.    Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.05, against a person assisting a person with in-person voting (much less an MFV member) or otherwise, MFV has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

111.    Furthermore, because there is no evidence in the record that anyone (much less an MFV member) has ever been reported, investigated, or prosecuted in connection with the disclosures required of assistors on the carrier envelope for mail-in ballots in S.B. 1 Section 6.05,

MFV has not established an imminent, certainly impending threat of injury by any hypothetical criminal law enforcement of Section 6.05 by District Attorney Ogg.

112.    MFV lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.05.

113.    Because MFV has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 6.05 and a demonstrated willingness to exercise that duty, its constitutional claims against District Attorney Ogg challenging Section 6.05 are barred by sovereign immunity. *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

114.    MFV has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.02 as violating the 1st, 14th, and 15th Amendments and Section 2 of the VRA.  Dkt. 199 at ¶¶ 260, 277, 296, 309.

115.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.02, against any person or entity (much less an Arc of Texas member) or otherwise, MFV has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

116.    Furthermore, because there is no evidence in the record that MFV has refused or intends to refuse to permit a person over whom it has authority in the scope of employment to vote during early voting, MFV has not established an imminent, certainly impending threat of injury by District Attorney Ogg based on the changes in law enacted in S.B. 1 Section 7.02.

117.    Furthermore, the changes in law enacted in S.B. 1 Section 7.02, on a plain reading, serve to increase opportunities for employees in Texas to vote.  Thus, even if it had established standing as an employer that might hypothetically be impacted by those changes, MFV would not

be able to establish an imminent, certainly impending threat of injury by District Attorney Ogg based on the changes in law enacted in Section 7.02.

118.    MFV lacks standing to challenge S.B. 1 Section 7.02.

119.    Because MFV has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.02 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure MFV, its constitutional claims against District Attorney Ogg challenging Section 7.02 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

120.    MFV has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as violating the 1st, 14th, and 15th Amendments and Section 2 of the VRA.  Dkt. 199 at ¶¶ 260, 277, 296, 309.

121.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

122.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less an MFV member), MFV has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

123.    Furthermore, because there is no competent evidence in the record sufficient to support a finding that MFV has engaged or intends to engage in conduct in Harris County that violates any provision of law enacted through S.B. 1 Section 7.04, MFV has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

124.    MFV lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

125.     Because MFV has not established that District Attorney Ogg has both a particular

duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all,

much less in a manner that would injure MFV, its constitutional claims against District Attorney

Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85

F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### B.    Marla Lopez

126.     Marla Lopez has asserted claims against a number of defendants, including District

Attorney Ogg, challenging S.B. 1 Section 7.02 as violating the 1st and 14th Amendments.  Dkt.

199 at ¶ 261.

127.     In light of the fact that no evidence exists of any enforcement by District Attorney

Ogg of S.B. 1 Section 7.02 against any person (much less Marla Lopez), Marla Lopez has not

proved that she has standing to sue District Attorney Ogg with respect to that provision.

128.     Furthermore, because there is no competent evidence in the record that Marla Lopez

has had or will have authority in the scope of employment over another person's working hours,

Marla Lopez has not established an imminent, certainly impending threat of injury by any

hypothetical action by District Attorney Ogg with respect to S.B. 1 Section 7.02.

129.     Furthermore, because there is no competent evidence in the record that Marla Lopez

has refused or intends to refuse to permit a person to vote, Marla Lopez has not established an

imminent, certainly impending threat of injury by District Attorney Ogg by any hypothetical action

by District Attorney Ogg with respect to S.B. 1 Section 7.02.

130.     Furthermore, the changes in law enacted in S.B. 1 Section 7.02, based on a plain

reading, serve to increase opportunities for employees in Texas to vote.  Thus, even if she had

established standing as an employer who might hypothetically be impacted by those changes,

Marla Lopez would not be able to establish an imminent, certainly impending threat of injury by District Attorney Ogg based on the changes in law enacted in Section 7.02.

131.    Marla Lopez lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.02.

132.    Because Marla Lopez has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.02 and a demonstrated willingness to exercise that duty, her constitutional claims against District Attorney Ogg challenging Section 7.02 are barred by sovereign immunity. *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

## C.    Marlon Lopez

133.    Marlon Lopez has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.02 as violating the 1st and 14th Amendments. Dkt. 199 at ¶ 261.

134.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.02 against any person (much less Marlon Lopez), Marlon Lopez has not proved that he has standing to sue District Attorney Ogg with respect to that provision.

135.    Furthermore, because there is no competent evidence in the record that Marlon Lopez has had or will have authority in the scope of employment over another person's working hours, Marlon Lopez has not established an imminent, certainly impending threat of injury by any hypothetical action by District Attorney Ogg with respect to S.B. 1 Section 7.02.

136.    Furthermore, because there is no competent evidence in the record that Marlon Lopez has refused or intends to refuse to permit a person to vote, Marlon Lopez has not established

an imminent, certainly impending threat of injury by any hypothetical action by District Attorney Ogg with respect to S.B. 1 Section 7.02.

137.    Furthermore, the changes in law enacted in S.B. 1 Section 7.02, based on a plain reading, serve to increase opportunities for employees in Texas to vote.  Thus, even if he had established standing as an employer who might hypothetically be impacted by those changes, Marlon Lopez would not be able to establish an imminent, certainly impending threat of injury by District Attorney Ogg based on the changes in law enacted in Section 7.02.

138.    Marlon Lopez lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.02.

139.    Because Marlon Lopez has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.02 and a demonstrated willingness to exercise that duty, his constitutional claims against District Attorney Ogg challenging Section 7.02 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### D.    Paul Rutledge

140.    Paul Rutledge ("Rutledge") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.02 as violating the 1st and 14th Amendments.  Dkt. 199 at ¶ 261.

141.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.02 against any person (much less Rutledge), Rutledge has not proved that he has standing to sue District Attorney Ogg with respect to that provision.

142.    Furthermore, because there is no competent evidence in the record that Rutledge has had or will have authority in the scope of employment over another person's working hours,

Rutledge has not established an imminent, certainly impending threat of injury by any hypothetical action by District Attorney Ogg with respect to S.B. 1 Section 7.02.

143.    Furthermore, because there is no competent evidence in the record that Rutledge has refused or intends to refuse to permit a person to vote, Rutledge has not established an imminent, certainly impending threat of injury by any hypothetical action by District Attorney Ogg with respect to S.B. 1 Section 7.02.

144.    Furthermore, Rutledge resides and votes in Montgomery County, Dkt. 753 at 23, which is outside of the jurisdiction of the HCDAO.  For this additional reason, Rutledge has not established an imminent, certainly impending threat of injury by District Attorney Ogg based on any changes in law enacted through S.B. 1.

145.    Furthermore, the changes in law enacted in S.B. 1 Section 7.02, based on a plain reading, serve to increase opportunities for employees in Texas to vote.  Thus, even if he had established standing as an employer who might hypothetically be impacted by those changes, Rutledge would not be able to establish an imminent, certainly impending threat of injury by District Attorney Ogg based on the changes in law enacted in Section 7.02.

146.    Rutledge lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.02.

147.    Because Rutledge has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.02 and a demonstrated willingness to exercise that duty, his constitutional claims against District Attorney Ogg challenging Section 7.02 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

IV.    **OCA Plaintiffs**

A.    **OCA-Greater Houston**

148.    OCA-Greater Houston ("OCA") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.06 as being preempted by Section 208 of the VRA.  Dkt. 753 at 5.

149.    S.B. 1 Section 6.06 "does not apply if the person assisting the voter is an attendant or caregiver previously known to the voter."  TEX. ELEC. CODE § 86.0105(f).

150.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.06 against any person (much less a member of OCA), OCA has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

151.    Furthermore, there is no competent evidence in the record that OCA is restricted by virtue of S.B. 1 Section 6.06 from continuing to assist voters by requesting voters to designate an OCA worker as an attendant previously known to the voter.  OCA has failed to show that any hypothetical action taken by District Attorney Ogg with respect to Section 6.06 would perceptibly impair OCA's ability to carry out its mission objectives on in-person voting assistance.

152.    Furthermore, OCA's failure "to offer any evidence" of enforcement practices "undermines" its theory of standing, as plaintiffs who "merely speculate and make assumptions" about the government's enforcement practices fail to establish standing.  *Clapper*, 568 U.S. at 411.  Even if OCA made expenditures or changed certain practices based on a fear of enforcement, that does not eliminate its requirement to show an "imminent" threat of enforcement that is "certainly impending."  *Id.* at 416.  A plaintiff's "subjective fear" of enforcement is insufficient to establish standing if the plaintiff has not established a threat of enforcement that is "certainly impending."  *Id.*

153.    OCA lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.06.

154.    OCA has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as unconstitutional under the 1st and 14th Amendments.  Dkt. 753 at 5.

155.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

156.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of OCA), OCA has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

157.    Furthermore, because there is no competent evidence in the record that OCA (or any OCA member) has engaged or intends to engage in conduct in Harris County that violates any provisions of law enacted through S.B. 1 Section 7.04, OCA has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

158.    OCA lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

159.    Because OCA has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

B.    **League of Women Voters of Texas**

160.    The League of Women Voters of Texas ("LWV") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.06 as being preempted by Section 208 of the VRA.  Dkt. 753 at 5.

161.    S.B. 1 Section 6.06 "does not apply if the person assisting the voter is an attendant or caregiver previously known to the voter."  Tex. Elec. Code § 86.0105(f).

162.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.06 against any person (much less a member of LWV), LWV has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

163.    Furthermore, there is no competent evidence in the record that LWV is restricted by virtue of S.B. 1 Section 6.06 from continuing to assist voters by requesting voters to designate a LWV worker as an attendant previously known to the voter.  LWV has failed to show that any hypothetical action taken by District Attorney Ogg with respect to Section 6.06 would perceptibly impair LWV's ability to carry out its mission objectives on in-person voting assistance.

164.    Furthermore, LWV's failure "to offer any evidence" of enforcement practices "undermines" its theory of standing, as plaintiffs who "merely speculate and make assumptions" about the government's enforcement practices fail to establish standing.  *Clapper*, 568 U.S. at 411. Even if LWV made expenditures or changed certain practices based on a fear of enforcement, that does not eliminate its requirement to show an "imminent" threat of enforcement that is "certainly impending."  *Id.* at 416.  A plaintiff's "subjective fear" of enforcement is insufficient to establish standing if the plaintiff has not established a threat of enforcement that is "certainly impending." *Id.*

165.    LWV lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.06.

166.    LWV has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as unconstitutional under the 1st and 14th Amendments.  Dkt. 753 at 5.

167.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

168.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of LWV), LWV has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

169.    Furthermore, because there is no evidence in the record that LWV (or any of its members) has engaged or intends to engage in conduct in Harris County that violates any provision of law enacted through S.B. 1 Section 7.04, LWV has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

170.    LWV lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

171.    Because LWV has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure LWV, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### C.    REVUP-Texas

172.    REVUP-Texas has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 6.04 as violating Title II of the ADA and Section 504 of the Rehabilitation Act.  Dkt. 753 at 5.

173.    Because the revised oath as specified in S.B. 1 Section 6.04 is administered by election officials at polling places and is not implemented by the HCDAO, REVUP-Texas has not established an injury traceable to any hypothetical action that could be taken by District Attorney Ogg for its claims challenging Section 6.04.

174.    Furthermore, because S.B. 1 Section 6.04 does not contain a substantive criminal provision enforceable by the HCDAO, REVUP-Texas has failed to demonstrate an injury traceable to District Attorney Ogg.

175.    Furthermore, in light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 6.04 against any person (much less a member of REVUP-Texas), REVUP-Texas has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

176.    Furthermore, because there is no competent evidence in the record that anyone has ever been reported, investigated, or prosecuted for perjury in Harris County in connection with the in-person assistor oath under Texas Election Code § 64.034, REVUP-Texas has not established an imminent, certainly impending threat of injury by any hypothetical criminal law enforcement by District Attorney Ogg under S.B. 1 Section 6.04.

177.    REVUP-Texas lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 6.04.

178.    Because there is no competent evidence in the record that District Attorney Ogg has ever taken any enforcement action against anyone (much less a member of REVUP-Texas) involving the changes in law enacted in S.B. 1 Section 6.04, and Title II of the ADA establishes liability for only proven individual instances of discrimination rather than prospective risks, *United States v. Mississippi*, 82 F.4th at 392, there is insufficient evidence in the record to support REVUP-Texas's claim under Title II of the ADA against District Attorney Ogg with respect to Section 6.04.

179.    Because REVUP-Texas has failed to establish that S.B. 1 Section 6.04 constitutes a violation of Title II of the ADA, a violation of the Fourteenth Amendment, or could be prohibited under the Fourteenth Amendment, it has failed to allege a claim for which Congress has abrogated state sovereign immunity. *See Pickett*, 37 F.4th at 1019 (citing *United States v. Georgia*, 546 U.S. at 159).

180.    Because Section 504 of the Rehabilitation Act is coextensive with Title II of the ADA except for its stricter causation requirement, *Bennett-Nelson*, 431 F.3d at 454, there is likewise insufficient evidence in the record to support REVUP-Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to S.B. 1 Section 6.04.

181.    Because there is no competent evidence in the record that District Attorney Ogg ever administered a federally funded program or activity that involved the enforcement of S.B. 1 Section 6.04, there is likewise insufficient evidence in the record to support REVUP-Texas's claim under Section 504 of the Rehabilitation Act against District Attorney Ogg with respect to Section 6.04.  For the same reason, REVUP-Texas's claim challenging Section 6.04 under Section 504 of the Rehabilitation Act is barred by state sovereign immunity.  *See Bennett-Nelson*, 431 F.3d at 451; *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d at 349.

**V.      LULAC Plaintiffs**

**A.      LULAC Texas**

182.    LULAC Texas ("LULAC") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as violating the 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 753 at 8.

183.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

184.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of LULAC), LULAC has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

185.    Because there is no evidence in the record that LULAC (or any of its members) has engaged or intends to engage in conduct in Harris County that violates any provision of law enacted through S.B. 1 Section 7.04, LULAC has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

186.    LULAC lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

187.    Because LULAC has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure LULAC, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### B.    Voto Latino

188.    Voto Latino has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as violating the 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 753 at 8.

189.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

190.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of Voto Latino), Voto Latino has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

191.    Furthermore, because there is no evidence in the record that Voto Latino (or any of its members) has engaged or intends to engage in conduct in Harris County that violates any provision of law enacted through S.B. 1 Section 7.04, Voto Latino has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

192.    Voto Latino lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

193.    Because Voto Latino has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injury Voto Latino, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### C.    Texas AFT

194.    Texas AFT has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as violating the 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 753 at 8.

195.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

196.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of Texas AFT), Texas AFT has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

197.    Furthermore, because there is no evidence in the record that Texas AFT (or any of its members) has engaged or intends to engage in conduct in Harris County that violates any provision of law enacted through S.B. 1 Section 7.04, Texas AFT has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

198.    Texas AFT lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

199.    Because Texas AFT has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure Texas AFT, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

### D.    Texas Alliance for Retired Americans

200.    The Texas Alliance for Retired Americans ("TARA") has asserted claims against a number of defendants, including District Attorney Ogg, challenging S.B. 1 Section 7.04 as violating the 1st and 14th Amendments, Section 2 of the VRA, and Section 208 of the VRA.  Dkt. 753 at 8.

201.    S.B. 1 Section 7.04 applies only to conduct undertaken "knowingly."  TEX. ELEC. CODE § 276.015(b), (c), (d).

202.    In light of the fact that no evidence exists of any enforcement by District Attorney Ogg of S.B. 1 Section 7.04 against any person (much less a member of TARA), TARA has not proved that it has standing to sue District Attorney Ogg with respect to that provision.

203.    Furthermore, because there is no evidence in the record that TARA (or any of its members) engaged or intends to engage in conduct in Harris County that violations any provisions of law enacted through S.B. 1 Section 7.04, TARA has not established an imminent, certainly impending threat of injury traceable to District Attorney Ogg involving the changes in law enacted in Section 7.04.

204.    TARA lacks standing to sue District Attorney Ogg in a challenge to S.B. 1 Section 7.04.

205.    Because TARA has not established that District Attorney Ogg has both a particular duty to enforce S.B. 1 Section 7.04 and a demonstrated willingness to exercise that duty at all, much less in a manner that would injure TARA, its constitutional claims against District Attorney Ogg challenging Section 7.04 are barred by sovereign immunity.  *See United States v. Abbott*, 85 F.4th at 334; *Tex. All. for Retired Ams.*, 28 F.4th at 672.

## VI.    LUPE Plaintiffs

206.    La Union Del Pueblo Entero has not asserted any claims against District Attorney Ogg.  Dkt. 208.

207.    Southwest Voter Registration Education Project has not asserted any claims against District Attorney Ogg.  Dkt. 208.

208.    Mexican American Bar Association of Texas has not asserted any claims against District Attorney Ogg.  Dkt. 208.

209.    Texas Hispanics Organized for Political Education has not asserted any claims against District Attorney Ogg.  Dkt. 208.

210.    JOLT Action has not asserted any claims against District Attorney Ogg.  Dkt. 208.

211.    William C. Velasquez Institute has not asserted any claims against District Attorney Ogg.  Dkt. 208.

212.    FIEL Houston, Inc. has not asserted any claims against District Attorney Ogg.  Dkt. 208.

213.    Friendship-West Baptist Church has not asserted any claims against District Attorney Ogg.  Dkt. 208.

214.    Texas Impact has not asserted any claims against District Attorney Ogg.  Dkt. 208.

215.    James Lewin has not asserted any claims against District Attorney Ogg.  Dkt. 208.

## VII.    United States

216.    The United States has not asserted any claims against District Attorney Ogg.  Dkt. 131.

**VIII.   Summary and Disposition of Claims as to District Attorney Ogg**

217.   Any finding of fact that may be more properly considered a conclusion of law is made as such, and any conclusion of law that may be more properly considered a finding of fact is made as such.

218.   Based on the foregoing findings and conclusions, the Court grants District Attorney Ogg's motion for summary judgment.  Dkt. 614.

219.   Based on the foregoing findings and conclusions, the Court grants District Attorney Ogg's motion for judgment under Federal Rule of Civil Procedure 52(c).  Dkt. 804.

220.   The Court hereby orders that plaintiffs take nothing on all claims made against District Attorney Ogg.

221.   With respect to claims made by plaintiffs against District Attorney Ogg, the Court's findings and conclusions on those claims represent a final judgment.

Respectfully submitted,

**BUTLER SNOW LLP**

By: _/s/ Eric J.R. Nichols_
  Eric J.R. Nichols
  State Bar No. 14994900
  eric.nichols@butlersnow.com
  Cory R. Liu
  State Bar No. 24098003
  cory.liu@butlersnow.com
  Victoria A. Giese
  State Bar No. 24126391
  victoria.giese@butlersnow.com
  1400 Lavaca Street, Suite 1000
  Austin, Texas 78701
  Tel: (737) 802-1800
  Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT DISTRICT ATTORNEY KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

    I hereby certify that on January 19, 2024, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

                          _/s/ Eric J.R. Nichols_
                          Eric J.R. Nichols