**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| La Unión del Pueblo Entero, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 5:21-cv-00844-XR |
| State of Texas, *et al.*, | § | [Lead Case] |
| | § | |
| *Defendants,* | § | **PLAINTIFFS' JOINT PROPOSED** |
| | § | **FINDINGS OF FACT** |
| Harris County Republican Party, *et al.*, | § | **ON THE LEGAL FRAMEWORK OF** |
| | § | **PLAINTIFFS' CLAIMS** |
| *Intervenor-Defendants.* | § | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

I.    INTRODUCTION ........................................................................................................ 1

II.   THE LEGAL FRAMEWORK ..................................................................................... 2

    A.    Standing .................................................................................................................. 2

        1.    Injury-in-fact ................................................................................................ 3

            a.    Organizational Standing...................................................................... 4

            b.    Associational Standing........................................................................ 5

        2.    Causation and traceability............................................................................ 6

        3.    Redressability................................................................................................ 7

    B.    Undue Burden (1st and 14th Amendment) ............................................................ 8

    C.    Discriminatory Results on the Basis of Race (Voting Rights Act § 2)...................... 12

        1.    Section 2 of the VRA Establishes a Private Right of Action............................... 12

        2.    Legal Standard .............................................................................................. 14

    D.    Void for Vagueness (14th Amendment) ................................................................ 18

        1.    A Stringent Vagueness Standard Applies to Criminal and Quasi-Criminal Statutes.......................................................................................................... 20

        2.    Plaintiffs' Vagueness Challenge Is Not Premature................................................ 22

    E.    Violation of Right to Free Speech (1st and 14th Amendment) ................................ 23

    F.    Interference With Voter Assistance (Voting Rights Act § 208)................................ 28

        1.    Section 208 of the federal Voting Rights Act Prohibits States from Limiting Voters' Right to Assistance ................................................................................ 28

        2.    Section 208 Preempts Conflicting State Laws...................................................... 30

        3.    The Legislative History of Section 208 Evidences the Intent of Congress to Afford Disabled, Low-literate and Limited English Proficient Voters the Right to Choose Their Assister. .......................................................................... 32

# TABLE OF AUTHORITIES

**Page**

**Cases**

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021) ..................................................................6

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023)...................................................................................6

*Allen v. State Bd. of Elections,*
  393 U.S. 544 (1969)..................................................................................15

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983)............................................................................8, 9, 11

*Arizona v. United States,*
  567 U.S. 387 (2012)..................................................................................30

*Ark. United v. Thurston,*
  517 F. Supp. 3d 777 (W.D. Ark. 2021)....................................................30

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,*
  627 F.3d 547 (5th Cir. 2010) .....................................................................6

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
  178 F.3d 350 (5th Cir. 1999) .................................................................2, 3

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979)...............................................................................22, 23

*Bennett v. Spear,*
  520 U.S. 154 (1997)....................................................................................7

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
  70 F.4th 914 (5th Cir. 2023) ......................................................................6

*Brnovich v. Democratic Nat'l Comm.,*
  141 S. Ct. 2321 (2021)................................................................14, 16, 17, 18

*Buckley v. Am. Const. L. Found., Inc.,*
  525 U.S. 182 (1999) (Thomas, J., concurring) .......................................25

*Burdick v. Takushi,*
  504 U.S. 428 (1992)................................................................................8, 9

*Campbell v. Buckley,*
  203 F.3d 738 (10th Cir. 2000) ..................................................................27

122114392.1 0099831-00001

*Caractor v. City of New York Dep't of Homeless Servs.*,
No. 11 CIV. 2990 DLC, 2013 WL 2922436 (S.D.N.Y. June 14, 2013)....................................6

*Carey v. Wisconsin Elections Comm'n*,
624 F. Supp. 3d 1020 (W.D. Wis. 2022) ...............................................................................32

*Chisom v. Roemer*,
501 U.S. 380 (1991)...............................................................................................................14

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)....................................................................................................................7

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010).................................................................................................24, 26, 28

*City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*,
96 U.S. 61 (2022)...................................................................................................................24

*Clingman v. Beaver*,
544 U.S. 581 (2005) (O'Connor, J., concurring) ...................................................................17

*Coca v. City of Dodge City*,
No. 22-1274-EFM, 2023 WL 2987708, at *5-6 (D. Kan. Apr. 18, 2023),
*motion to certify appeal denied*, No. 22012740EFM, 2023 WL 3948472 (D.
Kan. June 12, 2023) ...............................................................................................................13

*Cotham v. Garza*,
905 F. Supp. 389 (S.D. Tex. 1995) .......................................................................................25

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)................................................................................................8, 9, 10, 11

*Ctr. for Individual Freedom v. Carmouche*,
449 F.3d 655 (5th Cir. 2006) ................................................................................................23

*Democracy North Carolina v. North Carolina State Board of Elections*,
476 F. Supp. 3d 158 (M.D.N.C. 2020) .............................................................................29, 31

*Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*,
760 F.3d 427 (5th Cir. 2014) .............................................................................................24, 28

*Disability Rts. of Miss. v. Fitch*,
No. 3-23CV-350-HTW-LGI, 2023 WL 4748788 (S.D. Miss. July 25, 2023)..................31, 32

*Disability Rts. N. Carolina v. N. Carolina State Bd. of Elections*,
No. 5:21-CV-361-BO, 2022 WL 2678884 (E.D.N.C. July 11, 2022)....................................29

*Doe I v. Landry*,
    909 F.3d 99 (5th Cir. 2018) ........................................................................19

*Dream Defs. v. DeSantis*,
    559 F. Supp. 3d 1238 (N.D. Fla. 2021).....................................................22

*DSCC v. Simon*,
    950 N.W.2d 280 (Minn. 2020)...................................................................31

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989)...................................................................................25

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2020) ................................................................12

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963)...................................................................................30

*Fla. State Conf. of NAACP v. Lee*,
    576 F. Supp. 3d 974 (N.D. Fla. 2021)........................................................31

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) ......................................................................3

*Fusaro v. Cogan*,
    930 F.3d 241 (4th Cir. 2019) ....................................................................27

*Gitlow v. New York*,
    268 U.S. 652 (1925)...................................................................................24

*Grosjean v. Am. Press Co.*,
    297 U.S. 233 (1936).....................................................................................6

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).............................................................................2, 4, 5

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023)...................................................................................13

*Hill v. Colorado*,
    530 U.S. 703 (2000)...................................................................................19

*Hillman v. Maretta*,
    569 U.S. 483 (2013)...................................................................................33

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)....................................................................................30

*Holder v. Humanitarian L. Project*,
    561 U.S. 1 (2010)............................................................................................20, 23

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v.
    Brock*,
    477 U.S. 274 (1986)..............................................................................................5

*James v. Hegar*,
    86 F.4th 1076 (5th Cir. 2023) ..............................................................................8

*Johnson v. United States*,
    576 U.S. 591 (2015)......................................................................................19, 22

*Kolender v. Lawson*,
    461 U.S. 352 (1983)......................................................................................19, 20

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*,
    82 F.4th 345 (5th Cir. 2023) ................................................................................5

*Larson v. Valente*,
    456 U.S. 228 (1982)..............................................................................................7

*League of United Latin Am. Citizens v. Abbott*,
    No. EP-21-CV-00259, 2021 WL 5762035 (W.D. Tex. Dec. 3, 2021) ...................13

*League of Women Voters of Fla., Inc. v. Detzner*,
    314 F. Supp. 3d 1205 (N.D. Fla. 2018)................................................................10

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
    66 F.4th 905 (11th Cir. 2023) .......................................................................22, 23

*Lerman v. Bd. of Elections in City of New York*,
    232 F.3d 135 (2d Cir. 2000)................................................................................12

*Lewis v. Hughs*,
    475 F. Supp. 3d 597 (W.D. Tex. 2020).................................................................4

*Lichtenstein v. Hargett*,
    83 F.4th 575 (6th Cir. 2023) ..............................................................................27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................2

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007)..............................................................................................7

*Mazo v. New Jersey Sec'y of State*,
　54 F.4th 124 (3d Cir. 2022), *cert. denied sub nom. Mazo v. Way*, 144 S. Ct. 76
　(2023) .................................................................................................................27

*McAllen Grace Brethren Church v. Salazar*,
　764 F.3d 465 (5th Cir. 2014) ..............................................................................3

*McIntyre v. Ohio Elections Comm'n*,
　514 U.S. 334 (1995).................................................................................25, 26, 27

*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007)...........................................................................................22

*Meyer v. Grant*,
　486 U.S. 414 (1988)....................................................................................25, 26

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*,
　932 F.2d 400 (5th Cir. 1991) ............................................................................15

*Monitor Patriot Co. v. Roy*,
　401 U.S. 265 (1971)...........................................................................................25

*Moore v. Brown*,
　868 F.3d 398 (5th Cir. 2017) ............................................................................19

*Morse v. Republican Party of Va.*,
　517 U.S. 186 (1996) (plurality opinion) ...........................................................13

*N.C. State Conf. of NAACP v. McCrory*,
　831 F.3d 204 (4th Cir. 2016) .......................................................................17, 18

*NAACP v. Button*,
　371 U.S. 415 (1963)...........................................................................................25

*Nat'l Press Photographers Ass'n v. McCraw*,
　No. 22-50337, 2024 WL 105019 (5th Cir. Jan. 10, 2024)....................................8

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
　719 F.3d 338 (5th Cir. 2013) ............................................................................22

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
　508 U.S. 656 (1993).............................................................................................7

*Netsphere, Inc. v. Baron*,
　703 F.3d 296 (5th Cir. 2012) ..............................................................................7

*New Ga. Project v. Raffensperger,*
    484 F. Supp. 3d 1265 (N.D. Ga. 2020) ...................................................................30

*Nick v. Bethel,*
    No. 3:07-CV-0098 TMB, 2008 WL 11456134 (D. Alaska July 30, 2008) ...........................30

*Norman v. Reed,*
    502 U.S. 279 (1992) ................................................................................................9, 24

*OCA-Greater Houston v. Texas,*
    867 F.3d 604 (5th Cir. 2017) *aff'd and remanded,* No. 20-50654, 2020 WL
    5511881 (5th Cir. Sept. 4, 2020), *order withdrawn,* No. 20-50654, 2020 WL
    6066178 (5th Cir. Oct. 2, 2020), and *rev'd and remanded sub nom. Lewis v.*
    *Scott,* 28 F.4th 659 (5th Cir. 2022) ................................................................. passim

*Ohio State Conf. of N.A.A.C.P. v. Husted,*
    768 F.3d 524 (6th Cir. 2014), *vacated on other grounds*, No. 14-3877, 2014
    WL 10384647 (6th Cir. Oct. 1, 2014) ...................................................................11

*Police Dept. of Chicago v. Mosley,*
    408 U.S. 92 (1972) ...............................................................................................24

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ..............................................................................................28

*Reed v. Town of Gilbert, Ariz.,*
    576 U.S. 155 (2015) ..........................................................................................24, 26

*Republic of Argentina v. NML Cap., Ltd.,*
    573 U.S. 134 (2014) ..............................................................................................34

*Republican Pty. of Minn. v. White,*
    416 F.3d 738 (8th Cir. 2005) (en banc) ...................................................................28

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ....................................................................19, 20, 22

*Robinson v. Ardoin,*
    86 F.4th 574 (5th Cir. 2023), *pet. for rehr'g en banc denied*, No. 22-30333
    (5th Cir. Dec. 15, 2023) ....................................................................................12, 13

*Rost v. United States,*
    No. 1:19-CV-0607-RP, 2021 WL 5190875 (W.D. Tex. Sept. 22, 2021), *aff'd,*
    44 F.4th 294 (5th Cir. 2022), *reh'g denied*, No. 21-51064, 2022 WL 16569594
    (5th Cir. Oct. 11, 2022) .........................................................................................20

*Serafine v. Branaman,*
    810 F.3d 354 (5th Cir. 2016) ................................................................................26

-vii-

*Serv. Emps. Int'l Union, Loc. 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) ....................................................................24, 28

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) (Gorsuch, J., concurring) ...................................21

*Shelby Cnty., Ala. v. Holder*,
    570 U.S. 529 (2013) ...................................................................................12

*Smith v. Goguen*,
    415 U.S. 566 (1974) ...................................................................................19

*Soc'y of Separationists, Inc. v. Herman*,
    959 F.2d 1283 (5th Cir. 1992) .....................................................................8

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) .....................................................................12

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) .....................................................................23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................2, 3

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ...................................................................................22

*Storer v. Brown*,
    415 U.S. 724 (1974) .........................................................................9, 11, 12

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................4, 6, 8, 22

*Tashjian v. Republican Pty. of Conn.*,
    479 U.S. 208 (1986) ...................................................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .....................................................................................2

*Texas Indep. Party v. Kirk*,
    84 F.3d 178 (5th Cir. 1996) .........................................................................8

*Thornburg v. Gingles*,
    478 U.S. 30 (1986)........................................................................14, 16, 17

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)......................................................................................3

*Turner Broadcasting Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994) ................................................................................................12

*Turtle Mountain Band of Chippewa Indians v. Jaeger*,
    No. 3:22-CV-22, 2022 WL 2528256 (D.N.D. July 7, 2022), *stay denied*,
    *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655 (8th Cir.
    Dec. 15, 2023) ........................................................................................................13

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) ..................................................................................................3

*United States v. Berks Cnty., Pa.*,
    277 F. Supp. 2d 570 (E.D. Pa. 2003) ....................................................................30

*United States v. Brazos Cnty.*,
    No. H-06-2165 (S.D. Tex. June 29, 2006) ..............................................................30

*United States v. Brooks*,
    681 F.3d 678 (5th Cir. 2012) .................................................................................20

*United States v. City of Philadelphia*,
    No. 2:06cv4592 (E.D. Pa. June 4, 2007) ...............................................................30

*United States v. City of Springfield*,
    No. 06-301- 23-MAP (D. Mass. Sept. 15, 2006) ...................................................30

*United States v. Clinical Leasing Serv., Inc.*,
    925 F.2d 120 (5th Cir. 1991) .................................................................................21

*United States v. Davis*,
    139 S. Ct. 2319 (2019) ...........................................................................................18

*United States v. Fort Bend Cnty.*,
    No. 4:09-cv-01058 (S.D. Tex. Apr. 13, 2009) ........................................................30

*United States v. Kane Cnty.*,
    No. 07 C 5451 (N.D. Ill. Nov. 7, 2007) .................................................................30

*United States v. L. Cohen Grocery Co.*,
    255 U.S. 81 (1921) ..................................................................................................21

*United States v. Marengo Cnty. Comm'n*,
    731 F.2d 1546 (11th Cir. 1984) .........................................................................14, 15

*United States v. Orange Cnty.*,
    No. 6:02-cv-737-ORL-22JGG (M.D. Fla. Oct. 8, 2002) .......................................30

122114392.1 0099831-00001

*United States v. Palmer*,
    356 F.2d 951 (5th Cir. 1966) ........................................................................15

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)................................................................................26, 28

*United States v. Smith*,
    499 U.S. 160 (1991)........................................................................................34

*Uzuegbunam v. Preczewski*,
    592 U.S. 279, 141 S. Ct. 792 (2021) ..............................................................7

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) (en banc) .................................................. passim

*Veasey v. Perry*,
    29 F. Supp. 3d 896 (S.D. Tex. 2014) ............................................................13

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982)................................................................................20, 21

*Vote.Org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023) ................................................................5, 10, 14

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013) ............................................................8, 26, 27

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)........................................................................................19

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................................5, 6

*Women's Med. Ctr. of Nw. Houston v. Bell*,
    248 F.3d 411 (5th Cir. 2001) ....................................................................19, 21

*Zimmerman v. City of Austin, Tex.*
    881 F.3d 378 (5th Cir. 2018) ..................................................................3, 24, 26

**Statutes**

42 U.S.C. § 1983 .................................................................................................13

52 U.S.C. § 10301(a) ..........................................................................................14

52 U.S.C. § 10301(b) ..........................................................................................15

52 U.S.C. § 10303(f)(1) ......................................................................................35

52 U.S.C. § 10303(f)(2) ...........................................................................................14

52 U.S.C. § 10303(f)(3) ...........................................................................................35

52 U.S.C. § 10310 ...................................................................................................29

52 U.S.C. § 10508 ..........................................................................................1, 29, 35

Americans with Disabilities Act ................................................................................2

Rehabilitation Act .....................................................................................................2

Voting Rights Act .............................................................................................. passim

**Constitutional Provisions**

First Amendment ............................................................................................... passim

Second Amendment .................................................................................................23

Fourteenth Amendment ..................................................................................... passim

Fifteenth Amendment ..............................................................................................34

U.S. Constitution.......................................................................................................1

**Other Authorities**

Bills to Amend the Voting Rights Act of 1965: Hearings Before the Subcomm. on
  the Const. of the S. Comm. on the Judiciary, 97th Cong. 63 (May 4, 1982)..........................32

H.R. 3112 Hearing Before Subcomm. on the Constitution of the S. Comm. on the
  Judiciary, Volume 2, 97th Cong. at 89-90 (1982) ..................................................35

H.R. Rep. No. 227, 97th Cong., 1st Sess. 14 (1981) ................................................32

S. Rep. No. 97-417 (1982).......................................................................................33

S. Rep. No. 97-417 (1982).......................................................................................34

Voting Rights Act: Hearing on S. 54, S. 1761, S. 1975, S. 1992 ................................35

## I.    INTRODUCTION

1.    Private plaintiffs are voting and civil rights organizations and individual plaintiffs who
challenge a number of provisions of SB 1 under the U.S. Constitution and federal
statutes. This submission is joined by all private plaintiffs.

2.    Although plaintiffs' challenges do not perfectly overlap, they raise claims under the same
set of constitutional and statutory provisions, specifically by asserting in relevant part that
various provisions of SB 1 violate:

    a.    The First and Fourteenth Amendments of the U.S. Constitution by imposing an
undue burden on the right to vote.

    b.    Section 2 of the Voting Rights Act by establishing voting standards, practices, or
procedures that result in the denial or abridgement of the right of any citizen to
vote on account of race, color, or membership in a language minority group.

    c.    The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution
because the challenged provisions are unlawfully vague.

    d.    The First and Fourteenth Amendment by violating plaintiffs' right to free speech.

    e.    Section 208 of the Voting Rights Act by depriving voters who require assistance
to vote by reason of blindness, disability, or inability to read or write of assistance
by a person of the voter's choice, other than the voter's employer or agent of that
employer or officer or agent of the voter's union. 52 U.S.C. § 10508.

3.     This Joint Proposed Finding of Fact sets forth the legal frameworks under which

plaintiffs' standing and their legal challenges should be assessed.[1]  Plaintiffs separately

submit proposed findings of fact to support their specific challenges to SB 1.

## II.     THE LEGAL FRAMEWORK

### A.  Standing

4.     In order to establish standing, an individual must satisfy three requirements: "The

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant[s], and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To meet these elements, Plaintiffs need only

to "demonstrate that it is more likely than not that" they have suffered an injury-in-fact,

that the injury is traceable to Defendants, and that a favorable decision likely will redress

the injury. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328–29 (2007)

(emphasis omitted).

5.     An organization may establish standing in its own name if it meets the same test

applicable to individuals—meaning that the organization has suffered an injury that is

traceable to the defendants and redressable by a favorable decision. *Ass'n of Cmty. Orgs.*

*for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999) (citing *Havens Realty*

*Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).

6.     An organization also has standing to sue on behalf of its members—associational

standing—when: (1) its members "have standing to sue in their own right," (2) the

---

[1] HAUL, LUPE, and OCA plaintiffs also assert that provisions of SB 1 violate the Americans
with Disabilities Act and Section 504 of the Rehabilitation Act; these legal standards are set forth
in a separately filed Proposed Findings of Fact and Conclusions of Law. HAUL, MFV, LUPE,
and LULAC also assert intentional discrimination claims that have not yet been tried.

interests the plaintiff seeks to protect "are germane to the organization's purpose," and (3) the claim does not require the "participation of individual members in the lawsuit." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (quoting *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)).

7.  For any given claim, only one plaintiff needs standing to obtain relief. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). "It is well settled that once we determine that at least one plaintiff has standing, [the court] need not consider whether the remaining plaintiffs have standing to maintain the suit." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).

    1.  *Injury-in-fact*

8.  To establish injury, a plaintiff must show they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339 (internal quotation marks and citation omitted).

9.  "[T]he injury alleged as an Article III injury-in-fact need not be substantial; 'it need not measure more than an "identifiable trifle."'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (quoting *Fowler*, 178 F.3d at 358).

10. As such, "changing one's . . . plans . . . in response to an allegedly injurious law can itself be a sufficient injury to confer standing" if the change is "in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin, Tex.* 881 F.3d 378, 390 (5th Cir. 2018).

11. Injury in fact can be shown where an individual intends to engage in future conduct "affected with a constitutional interest" that is "arguably proscribed" by law, and where

"the threat of future enforcement…is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-64 (2014).

12.    Organizations can establish standing in one of two ways: by making a showing of organizational or associational standing. *OCA-Greater Houston*, 867 F.3d at 610.

       a.  *Organizational Standing*

13.    An organization suffers an injury in its own name where a challenged law imposes a "concrete and demonstrable injury to the organization's activities," with a "consequent drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

14.    For an organization to show injury-in-fact under an organizational standing theory, it must show a "concrete and demonstrable injury" to its activities. The Supreme Court has held that "there can be no question" such a showing is made where a defendant's behavior has "perceptibly impaired" an organization's ability to fulfill its mission. *Id.* at 379.

15.    Accordingly, "[a]n entity can show an organizational injury by alleging that it must divert resources from its usual activities in order to lessen the challenged restriction's harm to its mission." *Lewis v. Hughs*, 475 F. Supp. 3d 597, 612 (W.D. Tex. 2020) (citing *Havens*, 455 U.S. at 379); *see also OCA-Greater Houston*, 867 F.3d at 612 *aff'd and remanded,* No. 20-50654, 2020 WL 5511881 (5th Cir. Sept. 4, 2020), *order withdrawn,* No. 20-50654, 2020 WL 6066178 (5th Cir. Oct. 2, 2020), and *rev'd and remanded sub* nom; *Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022),

16.    In the Fifth Circuit, spending money or resources on litigation itself, or on activities that are "routine," does not constitute injury-in-fact. But a demonstration "that diversion of resources ... concretely and 'perceptibly impair[s]' the [organization's] ability to carry out

its purpose" is sufficient. *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 351, 353 (5th Cir. 2023) (alterations in original) (citation omitted). And that diversion need not be significant; an organization need only show that "it had to expend additional time beyond … routine activities" and to "divert resources away from particular projects." *Vote.Org v. Callanen*, 89 F.4th 459, 471 (5th Cir. 2023) (internal quotation marks and cite omitted).

17.     Where an organization whose mission is to promote civic engagement and voter turnout is able to reach fewer voters because of defendant's behavior, this impact on the group's mission is sufficient to constitute injury in fact. *Id.* at 354. Similarly, an organization whose mission is to "provide counseling and referral services for low-and moderate-income homeseekers" has been perceptibly impaired where a defendant's racial steering practices drained the organization's resources, thus allowing it to provide services to fewer community members. *Havens*, 455 U.S. at 379.

> b.  *Associational Standing*

18.     The test for associational standing requires the group to show its individual members have standing, and that "the interests the association seeks to protect [are] germane to its purpose." *OCA-Greater Houston*, 867 F.3d at 610.

19.      "Even in the absence of injury to itself" an organization "may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). When asserting associational standing, an organization does not need to show that all of its members have been injured. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 284–85 (1986). Rather, the organization may show that "any one of [its members]" is suffering the type of injury "that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511.

20.  Individual members also do not need to participate in the proceedings so "long as resolution of the claims benefits the association's members and the claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010). Indeed, the participation of any individual member is only required to the extent that "whatever injury may have been suffered is peculiar to the individual member." *Warth*, 422 U.S. at 515.

21.  "Organizations, like individuals, [also] enjoy rights to free speech, free exercise, and equal protection of the laws." *Caractor v. City of New York Dep't of Homeless Servs.*, No. 11 CIV. 2990 DLC, 2013 WL 2922436, at *3 (S.D.N.Y. June 14, 2013) (citing *Grosjean v. Am. Press Co.*, 297 U.S. 233, 244 (1936)). Like individuals, an organization does not need to affirmatively violate a law to have standing to challenge it. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 579–82 (2023) (considering company's First Amendment pre-enforcement challenge). Instead, the plaintiff need only "aver[] that it intend[s] to do so in the future." *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 927 n.23 (5th Cir. 2023) (citing *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021)). In the First Amendment context, the injury prong is established where either an organization or an individual demonstrates "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (citation omitted).

    2.  *Causation and traceability*

22.  To establish causation and traceability for standing, Plaintiffs need to show that there is "a causal relationship between the injury and the challenged conduct," meaning the injury

can be fairly traced to Defendants' challenged conduct and did not result "from the independent action of some third party not before the [C]ourt." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663 (1993) (internal quotation marks and citation omitted). Injuries are fairly traceable where the defendant's conduct *contributes* to a plaintiff's injuries, *even if it is not the sole cause of those injuries. Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007).

23.    Similarly, the traceability requirement is not a proximate cause standard; it can be satisfied with a showing that the alleged injury was only indirectly caused by the defendant. *Bennett v. Spear*, 520 U.S. 154, 168 (1997).

   3.    *Redressability*

24.    An injury is redressable when it is "likely" as opposed to merely "speculative" that a decision in a plaintiff's favor would grant the plaintiff relief. *OCA-Greater Houston*, 867 F.3d at 610.

25.    A plaintiff does not need to demonstrate that a favorable decision will "relieve [their] every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Instead, they only need to show that a decision in their favor will "relieve a discrete injury to [them]self." *Id.* Even "the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 801 (2021) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 314 (5th Cir. 2012) (explaining so long as "there is some means by which [the court] can effectuate a partial remedy, [there] remains a live controversy" (citation omitted)).

26.    Plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement by "demonstrat[ing] 'continuing harm or a real and immediate threat of

repeated injury in the future.'" *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023)

(quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)). A

threatened future injury suffices for standing so long as "there is a substantial risk that the

harm will occur." *Nat'l Press Photographers Ass'n v. McCraw*, No. 22-50337, 2024 WL

105019, at *5 (5th Cir. Jan. 10, 2024) (quoting *Susan B. Anthony List*, 573 U.S. at 158).

**B. Undue Burden (1st and 14th Amendment)**

27.    Where a state election rule restricts or burdens the right to vote, as protected by the First

Amendment or Fourteenth Amendments, "courts apply a balancing test derived from two

Supreme Court decisions." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir.

2013) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504

U.S. 428 (1992)); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190-91

(2008) (controlling op.).

28.    *Anderson-Burdick* is a "flexible standard" under which a challenge to a state election

practice is evaluated by balancing the character and magnitude of the burden the practice

imposes on the right to vote against the justifications offered by the state in support of it.

*Burdick*, 504 U.S. at 434; *Texas Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996).

29.    Under the *Anderson-Burdick* framework, courts must "weigh the 'character and

magnitude of the asserted injury' . . . against 'the precise interests put forward by the

State . . . ,' taking into consideration 'the extent to which those interests make it

necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*,

460 U.S. at 789).

30.    Because it is a "flexible standard," the *Anderson-Burdick* framework "cannot be resolved

by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson*,

460 U.S. at 789 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *Crawford*, 553 U.S.

at 191 (controlling op.) (recognizing there is no "litmus test for measuring the severity of a burden that a state law imposes"). Rather, "the rigorousness of [the] inquiry . . . depends upon the extent to which a challenged regulation burdens" the right to vote. *Burdick*, 504 U.S. at 434. If the challenged law imposes a severe burden, it "must be narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But even when a law imposes only a slight burden on the right to vote, "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (controlling op.) (quoting *Norman*, 502 U.S. at 288-89); *see Veasey v. Abbott*, 830 F.3d 216, 248 & n.19 (5th Cir. 2016) (en banc) (rejecting "argument that *Crawford* mandates upholding [the challenged law] simply because the State expressed legitimate justifications for passing the law"); *see also id.* at 274–75 (Higginson and Costa, JJ., concurring). Thus *any* burden imposed by the challenged restriction must be supported by "interest[s] sufficiently weighty to justify the limitation." *Norman*, 502 U.S. at 288-89.

31.     When evaluating the character and magnitude of the burdens under *Anderson-Burdick*, courts may also consider the challenged law's impact on subgroups for whom the burden is more severe, even if that involves a "limited number of persons." *Crawford*, 553 U.S. at 198-203 (controlling op.). In *Crawford*, for example, the "relevant" burdens were "those imposed on persons who are eligible to vote but do not possess a current photo identification." *Id.* at 201. The Supreme Court explained that "[t]he fact that most voters already possess a valid driver's license . . . would not save the statute." *Id.* at 202 (controlling op.). Six justices in *Crawford* agreed with this proposition.  *Id.* at 199-203 (controlling op.); *id.* at 212-23, 237 (Souter, J., dissenting); *id.* at 237 (Breyer, J.,

dissenting); *see also Veasey*, 830 F.3d at 249 n.40 (en banc) ("The right to vote is personal and is not defeated by the fact that 99% of other people can secure the necessary credentials easily." (citation omitted)).[2]

32.     "Disparate impact matters under *Anderson-Burdick*." *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1217 (N.D. Fla. 2018). When evaluating a practice that imposes disparate burdens, the *Anderson-Burdick* analysis must account for the heightened burdens encountered by identified subgroups. *Crawford*, 553 U.S. at 198 (evaluating "burdens that are relevant to the issue before [the Court,] . . . those imposed on persons who are eligible to vote but do not possess a [compliant] photo identification").

33.     Furthermore, when evaluating burdens imposed by the Challenged Provisions, that the Texas Election Code may include some unchallenged provisions that are easier for voters to satisfy is irrelevant. *Id.* ("the fact that [one] requirement was easy would not validate the second").

34.     The court should consider the cumulative impact of the Challenged Provisions in determining the burdens they impose. A number of facially valid provisions of the election laws may operate in tandem to produce "impermissible barriers to constitutional rights." *Storer*, 415 U.S. at 737. Because "[s]everal requirements of an election code may

---

[2] While the Fifth Circuit has recently noted that the burden analysis cannot rely *exclusively* upon the impact on a small number of voters, *see Vote.org v. Callanen*, 89 F.4th 459, 490 (5th Cir. 2023), it does not foreclose consideration of the burdens on subgroups as a component of *Anderson-Burdick* analysis.

combine to make ballot access excessively burdensome," the court must evaluate the cumulative burden of the Challenged Provisions together. *Id.*

35.  *Anderson-Burdick* requires an individualized assessment of the specific state's laws in question and the burdens they impose.  That other states may employ similar laws in their election schemes cannot sufficiently justify any law at issue here.  Consistent with the Supreme Court's directive that challenges to laws under this framework "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions," *Anderson*, 460 U.S. at 789 (citation omitted), courts recognize that states' election laws are not fungible.  State voter identification laws, for example, are not universally constitutional or unconstitutional—rather, an individual assessment of each state's law and the burdens it imposes is required.  *See, e.g., Ohio State Conf. of N.A.A.C.P. v. Husted*, 768 F.3d 524, 547 n.7 (6th Cir. 2014) (explaining, "we do not find that other states' electoral laws and practices are relevant to our assessment of the constitutionality or legality" of Ohio law), *vacated on other grounds*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

36.  To pass constitutional scrutiny, the state must explain what "interests make it necessary to burden a plaintiff's rights" to begin with. *Anderson*, 460 U.S. at 789; *Crawford*, 553 U.S. at 191 (controlling op.). And the interest asserted by the state must be legitimate. *See Anderson*, 460 U.S. at 801 (holding insufficient asserted interest in "political stability" and contrasting with "interest in avoiding political fragmentation" upheld in *Storer*, 415 U.S. 724); *Tashjian v. Republican Pty. of Conn.*, 479 U.S. 208, 217-18, 222–24 (1986) (holding insufficient asserted interests in administrability and in protecting the integrity of the two-party system).

37.     Moreover, even if a state interest is legitimate in the abstract, the state must put forward

"concrete evidence" proving that "such an interest made it necessary to burden voters'

rights." *Fish v. Schwab*, 957 F.3d 1105, 1132-33 (10th Cir. 2020). Thus, when a

challenged practice does not actually advance the state's purported goals, those asserted

interests cannot justify even a slight burden on the right to vote. *See Tashjian*, 479 U.S. at

219–22 (holding inapplicable "legitimate interest[s]" in preventing party raiding and in

avoiding voter confusion); *see also Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018)

(holding that even "important government interest" could not justify burden because the

court "struggled to understand how [the challenged] regime . . . advance[d] that goal");

*Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 149 (2d Cir. 2000) ("the

fact that the defendants['] asserted interests are 'important in the abstract' does not

necessarily mean that its chosen means of regulation 'will in fact advance those

interests'" (quoting *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994))).

### C. Discriminatory Results on the Basis of Race (Voting Rights Act § 2)

38.     Section 2 of the VRA imposes a "permanent, nationwide ban on racial discrimination in

voting," *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 557 (2013), under which private

parties are empowered to sue.

#### 1. *Section 2 of the VRA Establishes a Private Right of Action*

39.     Binding Fifth Circuit precedent dictates that private parties have a right of action under

Section 2 of the Act.  In *Robinson v. Ardoin*, this Circuit directly considered "whether

Section 2 can be enforced by private parties" and concluded that private parties are

"aggrieved persons" entitled to bring a claim under Section 2. 86 F.4th 574, 587-88 (5th

Cir. 2023), *pet. for rehr'g en banc denied*, No. 22-30333 (5th Cir. Dec. 15, 2023). The

Court in *Robinson* relied on the Supreme Court's statement that "the existence of the

private right of action under Section 2 . . . has been clearly intended by Congress since 1965," *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (plurality opinion) (citations omitted); *id*. at 240 (Breyer, J., concurring), and a prior decision in which the Circuit recognized that the VRA validly abrogated sovereign immunity, *OCA-Greater Houston*, 867 F.3d at 614. The *Robinson* panel reasoned that "Congress should not be accused of abrogating sovereign immunity without some purpose" and that the purpose was to allow for a state to be sued by an "aggrieved person." *Robinson*, 86 F.4th at 587-88. Accordingly, courts within this Circuit routinely adjudicate Section 2 claims brought by private litigants. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259, 2021 WL 5762035, at * 1 (W.D. Tex. Dec. 3, 2021) (three-judge court) (declining "to break new ground" and holding that Section 2 contains a private right of action); *Veasey v. Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) (same).

40.    Federal laws are also privately enforceable under 42 U.S.C. § 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 184-86 (2023). Section 2 is also enforceable by private parties through § 1983 to redress violations of the statute committed by persons acting under color of state law. *See Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 2987708, at *5-6 (D. Kan. Apr. 18, 2023), *motion to certify appeal denied*, No. 22012740EFM, 2023 WL 3948472 (D. Kan. June 12, 2023) ("Plaintiffs may alternatively assert a Section 2 claim under § 1983); *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-CV-22, 2022 WL 2528256, at *3 (D.N.D. July 7, 2022) ("[Section] 1983 provides a private remedy for violations of Section 2 of the VRA"), *stay denied*, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655 (8th Cir. Dec. 15, 2023); *see also Vote.Org v. Callanen*, 89 F.4th 459, 478 (5th Cir.

2023) (concluding that a voting rights provision within the Civil Rights Act of 1964 is privately enforceable under § 1983).

2. *Legal Standard*

41.  Section 2 of the VRA prohibits voting qualifications, prerequisites to voting, and voting standards, practices, or procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color or membership in a language minority group. 52 U.S.C. § 10301(a); 52 U.S.C. § 10303(f)(2). Plaintiffs need not prove discriminatory intent to prevail on this claim. *Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991) (to prevail on a Section 2 claim, Plaintiffs can "either prove [discriminatory] intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process").

42.  "'The essence of a § 2 claim . . . is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities' of minority and non-minority voters to elect their preferred representatives." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986)). "[E]ven a consistently applied practice premised on a racially neutral policy would not negate a plaintiff's showing through other factors that the challenged practice denies minorities fair access to the process." *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1571 (11th Cir. 1984) (citation omitted). The VRA "was aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race." *Allen v. State Bd. of Elections*, 393 U.S. 544, 565 (1969); *see, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 251, 259 (5th Cir. 2016) (affirming that a state voter photo ID law violated Section 2, in part

because minority voters were poorer and less likely to own cars needed to travel long distances to the limited locations that offer the required photo ID); *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 403, 409 (5th Cir. 1991) (affirming that a state law, which limited the hours and locations for registration, violated Section 2 because a "significant percentage of Mississippi's black citizens" lacked access to transportation and the "type of jobs that would allow them to leave work during business hours to register to vote," resulting in Black citizens registering to vote at lower rates than white citizens); *Marengo*, 731 F.2d at 1570 (noting that a county registrar's limited hours and single, inconvenient location discriminated against Black voters, who were more likely to be unregistered and live in rural areas, by impairing their ability to register to vote); *United States v. Palmer*, 356 F.2d 951, 952 (5th Cir. 1966) (same).

43.    A violation of Section 2 is established if "based on the totality of the circumstances," it is shown that the political processes leading to election in the state "are not equally open to participation" by members of a protected class listed above "in that its members have less opportunity . . . to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b). The Supreme Court has instructed that "the question whether the political processes are equally open depends upon a searching practical evaluation of the past and present reality, and on a functional view of the political process." *Gingles*, 478 U.S. at 45 (internal quotation marks and citation omitted). Even if elections are "equally open," Section 2's "equal opportunity" principle indicates that a court's analysis must "include consideration of a person's ability to use the means that are equally open." *Brnovich*, 141 S. Ct. at 2337-38.

44.     The Senate Judiciary Committee report accompanying the 1982 amendments to the

Voting Rights Act provided a non-exclusive list of factors that a court may consider as

part of the totality of the circumstances analysis (the "Senate Factors"):

1.   The extent of any history of official discrimination in the state or political

subdivision affecting the right of a member of a minority group to register, vote, or

participate in the democratic process;

2.   The extent to which voting in government elections is racially polarized;

3.   The extent to which the state or political subdivision has used voting practices

or procedures that tend to enhance the opportunity for discrimination against the minority

group;

4.   Exclusion of minorities from a candidate slating process;

5.   The extent to which minority group members in the state or political subdivision

bear the effects of past discrimination in areas such as education, employment, and health,

which hinder their ability to participate effectively in the political process;

6.   The use of overt or subtle racial appeals in political campaigns;

7.    The extent to which minorities have been elected to public office in the

jurisdiction;

8.   Whether there is a significant lack of responsiveness on the part of elected

officials to the particularized needs of the minority group;

9.   Whether the policy underlying the use of such voting qualification, prerequisite

to voting, or standard, practice or procedure is tenuous.

*Gingles*, 478 U.S. at 36-37; *Veasey*, 830 F.3d at 245.

45.     In a vote denial case, some Senate Factors are less relevant than others, such as the racial

appeals, but the Supreme Court "d[id] not suggest that these factors should be

disregarded." *Brnovich*, 141 S. Ct. at 2340. The Supreme Court recognized, for example,

that Senate Factors One and Five remain relevant to show that "minority group members

suffered discrimination in the past (factor one) and that effects of that discrimination

persist (factor five)" in a manner that might make it more difficult for minority voters to

participate in elections. *Id.*

46.     In addition, "any circumstance that has a logical bearing on whether voting is 'equally

open' and affords equal 'opportunity' may be considered." *Id.* at 2338. Other potentially

relevant considerations recognized by the Supreme Court include the "size of the burden

imposed by the challenged voting rule," the "degree to which a voting rule departs from"

standard practice, the "size of any disparities in a rule's impact on members of different

racial or ethnic groups," the "opportunities provided by a State's entire system of voting,"

and the "strength of the state interests served by the challenged voting rule." *Id.* at 2338-

40.

47.     Finally, under a totality of the circumstances analysis, a court should not ignore the

"*cumulative impact* of the challenged provisions." *N.C. State Conf. of NAACP v.*

*McCrory*, 831 F.3d 204, 231 (4th Cir. 2016) (emphasis added) (citing *Clingman v.*

*Beaver*, 544 U.S. 581, 607-08 (2005) (O'Connor, J., concurring) ("A panoply of

regulations, each apparently defensible when considered alone, may nevertheless have

the combined effect of severely restricting participation and competition.")). Each voting

restriction should not be evaluated in isolation, but rather in the context of the "entire

system of voting." *Brnovich*, 141 S. Ct. at 2339; *see also McCrory*, 831 F.3d at 214 ("In

holding that the legislature did not enact the challenged provisions with discriminatory intent, the court seems to have missed the forest in carefully surveying the many trees.").

48. In *Veasey v. Abbott*, the Fifth Circuit set forth a two-part framework to evaluate Section 2 results claims that allege the right to vote has been denied or abridged (as opposed to a vote dilution claim). 830 F.3d at 244. First, "[t]he challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id*. (citation omitted). Second, "[t]hat burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *Id.* (citation omitted). The Senate Factors should be evaluated to determine whether there is "a sufficient causal link between the disparate burden imposed and social and historical conditions produced by discrimination." *Id.* at 245. Because *Brnovich* "decline[d] . . . to announce a test" for Section 2 vote denial claims, 141 S. Ct. at 2336, the Fifth Circuit's two-part framework adopted in *Veasey* remains the proper framework for this Court to apply when assessing Plaintiffs' Section 2 discriminatory results claim.

   **D. Void for Vagueness (14th Amendment)**

49. "Vague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (internal quotation marks and citation omitted). "A statute can be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). First, a law is unconstitutionally vague if "it fails to provide those targeted by the statute a reasonable opportunity to know what

conduct is prohibited." *Moore v. Brown*, 868 F.3d 398, 406 (5th Cir. 2017) (citation omitted); *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Although "'perfect clarity and precise guidance' are not required," *Doe I v. Landry*, 909 F.3d 99, 117 (5th Cir. 2018) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)), the law must provide "*sufficient definiteness* that ordinary people can understand what conduct is prohibited," *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  Thus, the Fifth Circuit has recognized that a law is "unconstitutionally vague on its face [when] it impermissibly subjects [people] to sanctions based not on their own objective behavior, but on the subjective viewpoints of others." *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001).

50.    Second, a law is vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732; *Johnson*, 576 U.S. at 595.  "A state's legislative enactment is void for vagueness under the due process clause of the fourteenth amendment if it is inherently standardless, enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state." *Women's Med. Ctr. of Nw. Houston*, 248 F.3d at 421 (internal quotation marks and citation omitted).  Without "such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).  For example, in *Kolender*, the Supreme Court held that a statute requiring persons who loiter or wander on the streets to provide "credible and reliable" identification was unconstitutionally vague because it "encourage[d] arbitrary enforcement by failing to describe with

sufficient particularity what a suspect must do in order to satisfy the statute." 461 U.S. at 361.

    1.  *A Stringent Vagueness Standard Applies to Criminal and Quasi-Criminal Statutes*

51.    Statutes with criminal enforcement components are generally subject to a more stringent standard than civil statutes. *Roark & Hardee LP*, 522 F.3d at 552.  Likewise, a more stringent vagueness test applies when "a law 'threatens to inhibit the exercise of constitutionally protected rights.'" *Id.* (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)); *see, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (stricter vagueness test applies when a statute interferes with First Amendment rights of free speech or free association). Under the more stringent standard, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Brooks*, 681 F.3d 678, 696 (5th Cir. 2012) (quoting *Kolender*, 461 U.S. at 357).

52.    Though the standard is generally more stringent for criminal cases and cases involving constitutionally protected conduct, courts have held civil laws to the same stringent vagueness standard as criminal laws. *See, e.g.*, *Rost v. United States*, No. 1:19-CV-0607-RP, 2021 WL 5190875, at *6 (W.D. Tex. Sept. 22, 2021) (applying vagueness standard to IRS disclosure requirements enforced by civil penalties), *aff'd*, 44 F.4th 294 (5th Cir. 2022), *reh'g denied*, No. 21-51064, 2022 WL 16569594 (5th Cir. Oct. 11, 2022); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1228 (2018) (Gorsuch, J., concurring) ("[I]n the criminal context this Court has generally insisted that the law must afford ordinary people fair notice of the conduct it punishes. And I cannot see how the Due Process Clause

might often require any less than that in the civil context either." (cleaned up) (citation

omitted)).  This is especially true where the law in question has a quasi-criminal

dimension. *Women's Med. Ctr. of Nw. Houston*, 248 F.3d at 422 (applying the stricter

criminal standard for vagueness to quasi-criminal regulations that carry "significant civil

and administrative penalties"). In *Hoffman*, the Supreme Court ultimately applied the

more exacting standard to the civil ordinance at issue. 455 U.S. at 499–500. The Court

reasoned that a prohibition on the sale without a license of paraphernalia or other items

marketed for use with illegal drugs was "quasi-criminal," and its "prohibitory and

stigmatizing effect" warranted the stricter vagueness test. *Id.*; *see also Dimaya*, 138 S. Ct.

at 1212-13 (applying the most exacting vagueness standard to a provision governing civil

removal of an alien because of the severity of the penalty and the intimate relationship

between removal proceedings and the criminal process); *United States v. Clinical Leasing

Serv., Inc.*, 925 F.2d 120, 122-23 (5th Cir. 1991) (applying strict vagueness test to federal

statute imposing civil penalties for distribution of controlled substances without

registration because "its prohibitory effect is quasi-criminal").

53.  Undefined, standardless terms in economic regulations and laws enforced by civil

penalties can still be challenged as unconstitutionally vague under the Due Process

Clause even if a provision is not subject to the more stringent standard for vagueness

applicable to criminal statutes, quasi-criminal statutes, and cases involving

constitutionally protected conduct. *See, e.g.*, *United States v. L. Cohen Grocery Co.*, 255

U.S. 81, 89-93, (1921) (holding that a law prohibiting grocers from charging an "unjust

or unreasonable rate" was unconstitutionally vague). In such cases, a plaintiff will prevail

in a facial vagueness challenge "if the enactment is impermissibly vague in all of its

applications," *Roark*, 522 F.3d at 548, but the Supreme Court has squarely rejected the argument that "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 576 U.S. at 602.

      2.   *Plaintiffs' Vagueness Challenge Is Not Premature*

54.    A plaintiff need not wait for an actual arrest, prosecution, or enforcement action to challenge a vague law. *See, e.g.*, *Susan B. Anthony List*, 573 U.S. at 158-61 (collecting cases); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]e do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."). Rather, a pre-enforcement suit is appropriate when the plaintiff intends to engage in activity that is arguably covered by the statute and there is a credible threat of enforcement. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

55.    Courts frequently adjudicate pre-enforcement vagueness challenges. *See, e.g.*, *Babbitt*, 442 U.S. at 298-303; *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 944-48 (11th Cir. 2023) (hereinafter "*Lee*"); *Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1264-65 (N.D. Fla. 2021). "When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *Babbitt*, 442 U.S. at 298 (alteration in original) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)); *see also Susan B. Anthony List*, 573 U.S. at 159-61 (collecting pre-enforcement cases); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (allowing pre-enforcement Second Amendment challenge to a criminal statute).

56.     The *Babbitt* Court rejected the assertion that a pre-enforcement challenge to a criminal penalty provision was not justiciable even though "the criminal penalty provision has not yet been applied and may never be applied[.]" 442 U.S. at 302 ("when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute'"); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020) ("[A] lack of past enforcement does not alone doom a claim.").

57.     And for good reason: "the mere existence of an allegedly vague . . . statute" can cause "sufficient" pre-enforcement injury, especially if it chills participation in the electoral process. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006). Laws that curb associative conduct and political activity are properly challenged before they are enforced. *Cf. Speech First*, 979 F.3d at 330–31 (Fifth Circuit "has repeatedly held, in the pre-enforcement context, that chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." (internal quotation marks and citation omitted)). A regulated party should not have to choose between abstaining from the desired conduct and the hope that a later court will adopt a limiting construction in an enforcement proceeding. *Humanitarian L. Project*, 561 U.S. at 15 ("Plaintiffs . . . 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" (quoting *Babbitt*, 442 U.S. at 302); *Lee*, 66 F.4th at 948 ("[T]he promise of due process later on does not obliterate the vagueness doctrine altogether.").

## E. Violation of Right to Free Speech (1st and 14th Amendment)

58.     The First Amendment to the U.S. Constitution protects against laws "abridging the freedom of speech." Free speech is protected both "from abridgment by Congress" and "from impairment by the States." *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

Accordingly, under the First Amendment, states have "no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972)).

59.    Content-based restrictions on speech "single[] out specific subject matter for differential treatment." *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 96 U.S. 61, 69 (2022) (quoting *Reed*, 576 U.S. at 169). They distinguish between "favored" and "disfavored speech." *Serv. Emps. Int'l Union*, *Loc. 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010). "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *City of Austin*, 596 U.S. at 71 (citation omitted).

60.    Courts apply "strict scrutiny" to content-based restrictions on speech. Such laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163–64.

61.    Like content-based regulations, laws "that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (internal quotation marks and citation omitted); *see also Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 438-39 (5th Cir. 2014) (same).

62.    Such scrutiny is required because the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (quoting *Monitor*

*Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)). Efforts to encourage and assist voters constitute "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). That is because "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." *NAACP v. Button*, 371 U.S. 415, 437 (1963).

63.     The Supreme Court has made clear that while *Anderson-Burdick* applies to laws and regulations that "control the mechanics of the electoral process," it does not apply to "a regulation of pure speech," even in the election context. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995); *see also Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring) ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest."). Thus, when "a law burdens core political speech," courts "apply 'exacting scrutiny'" and "uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre*, 514 U.S. at 347; *see also Cotham v. Garza*, 905 F. Supp. 389, 396 (S.D. Tex. 1995) (holding that provisions governing the mechanics of voting are subject to *Anderson-Burdick* while a "content-based restriction on core political speech" is subject to strict scrutiny).

64.     Indeed, it makes little sense that a content-based restriction of core political speech should receive *lesser* scrutiny because it happens to regulate speech during elections, when "the importance of First Amendment protections" is at its "zenith." *Meyer*, 486 U.S. at 425; *see also McIntyre*, 514 U.S. at 346–47 (noting political speech "occupies the

core of the protection afforded by the First Amendment" and that "[n]o form of speech is entitled to greater constitutional protection"). Indeed, "it can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Serafine v. Branaman*, 810 F.3d 354, 361 (5th Cir. 2016) (holding content-based restriction in election context was subject to "exacting scrutiny" (citing *McIntyre*, 514 U.S. at 347)).[3]

65.    The Fifth Circuit's decision in *Voting for America Inc. v. Steen*, 732 F.3d 382, is not to the contrary. That case concerned provisions that "regulate[d] the appointment and activities of volunteer deputy registrars ('VDRs')," who are "individuals trained and empowered" by the State of Texas to collect "and deliver completed voter registration applications." *Steen*, 732 F.3d at 385. VDRs play a "carefully regulated" role in the administration of elections in Texas, and act *on behalf of the state* "to serve the citizens who register to vote as well as the public interest in the integrity of the electoral body." *Id.* at 393. The Court expressly distinguished regulations governing such state-sponsored actors from laws governing speech meant to "further[] [the speaker's] own or the[ir] sponsor's advocacy." *Id.* The state-sanctioned speech at issue in *Steen* was therefore "qualitatively different from the political speech restricted by" laws restricting speakers

---

[3] Although the Supreme Court at times has used the terms "strict" and "exacting" scrutiny interchangeably when describing the relevant standard of review for content-based restrictions, more recent Supreme Court precedent has clarified that both content-based regulations and laws that restrict political speech are subject to strict scrutiny. *See, e.g.*; *City of Austin*, 596 U.S. at 68-69 (content-based regulations warrant application of strict scrutiny); *Reed*, 576 U.S. at 164 (content-based regulations must satisfy strict scrutiny); *Citizens United*, 558 U.S. at 340 (laws burdening political speech are subject to strict scrutiny); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812–13 (2000) (subjecting content-based restriction to strict scrutiny).

"trying to persuade the voting public." *Id.* (recognizing the latter as presumably "core political speech").

66.    Misreading *Steen* to lessen the scrutiny applied to content-based restrictions on core political speech would not only violate clear Supreme Court precedent, but also would put this Court squarely at odds with the law of other circuits. As the Third Circuit recently held, for *Anderson-Burdick* to apply, "the law must primarily regulate the mechanics of the electoral process, as opposed to core political speech." *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 138 (3d Cir. 2022), *cert. denied sub nom. Mazo v. Way*, 144 S. Ct. 76 (2023). The "*Anderson-Burdick* test does not apply to laws that are primarily directed at regulating 'pure speech.'" *Id.*, 54 F.4th at 142 (quoting *McIntyre*, 514 U.S. at 345); *see also Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023) (explaining the Supreme Court has "applied strict scrutiny—not *Anderson-Burdick* balancing—to many election laws" implicating core political speech) (collecting cases); *Fusaro v. Cogan*, 930 F.3d 241, 258 (4th Cir. 2019) (observing the Supreme Court has "distinguished between laws that . . . regulate 'pure speech,'" and those subject to *Anderson-Burdick*); *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000) (recognizing "strict scrutiny," rather than *Anderson-Burdick*, "is applied where the government restricts the overall quantum of speech available to the election or voting process").

67.    Because the voter interaction ban is subject to strict scrutiny, Defendants are required "to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Dep't of Tex., Veterans of Foreign Wars*, 760 F.3d at 438 (quoting *Citizens United*, 558 U.S. at 340).

68.     Speech restrictions should not "sweep too broadly" if they are to be considered "narrowly

tailored." *Id.* at 440 (en banc) (quoting *Republican Pty. of Minn. v. White*, 416 F.3d 738,

751 (8th Cir. 2005) (en banc)). The government must identify an "actual problem" in

need of solving, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000), and

demonstrate that restricting free speech is necessary to the solution, *see R.A.V. v. City of

St. Paul*, 505 U.S. 377, 395 (1992). In other words, "if a less restrictive alternative would

serve the Government's purpose, the legislature must use that alternative." *Playboy*, 529

U.S. at 813; *see also Serv. Emps. Int'l Union*, 595 F.3d at 603-04 (holding that Houston's

broad restriction on the timing of parades was not narrowly tailored because the city

could have advanced its interests with less restrictive alternatives); *see generally Citizens

United*, 558 U.S. at 340.

**F.   Interference With Voter Assistance (Voting Rights Act § 208)**

69.     For voters who have disabilities, are low-literate and/or are limited English proficient

("LEP"), Section 208 ensures meaningful access to the franchise by permitting these

voters to use the help of assisters when they vote.

    1.   *Section 208 of the federal Voting Rights Act Prohibits States from Limiting
        Voters' Right to Assistance.*

70.     Section 208 of the federal Voting Rights Act of 1965 ("VRA") provides that "[a]ny voter

who requires assistance to vote by reason of blindness, disability, or inability to read or

write may be given assistance by a person of the voter's choice, other than the voter's

employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C.

§ 10508.

71.     The VRA defines the terms "vote" and "voting" to include:

    [A]ll action necessary to make a vote effective in any primary, special, or general
    election, including, but not limited to, registration, listing pursuant to this chapter,

or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

52 U.S.C. § 10310.

72.    States or localities that limit the ability of disabled, low-literate or LEP voters to receive assistance from persons of their choice violate Section 208 of the VRA.

73.    For example, in *Democracy North Carolina v. North Carolina State Board of Elections*, a district court held that plaintiffs were likely to succeed on the merits of their claim that North Carolina violated Section 208 by restricting who may assist voters in hospitals, clinics, nursing homes, or rest homes. 476 F. Supp. 3d 158, 235 (M.D.N.C. 2020) (preliminarily enjoining state law that required a voter needing assistance to "rely on either a near relative, a legal guardian, or a [multipartisan assistance team] if they are available before they may choose any other person to assist them").[4]

74.    The court reasoned that the challenged state statute's limitation on assistance "<u>does not allow Plaintiff Hutchins to choose the person who will assist him</u>" and thus "these regulations impermissibly narrow Section 208's dictate that a voter may be assisted 'by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.'" *Id.* (emphasis in original); *see also United States v. Berks Cnty., Pa.*, 277 F. Supp. 2d 570 (E.D. Pa. 2003) (denying Spanish-speaking voters assistance by the person of their choice is a violation of Section 208); *Nick v. Bethel*, No. 3:07-CV-0098 TMB, 2008 WL 11456134 (D. Alaska July 30, 2008)

---

[4] The challenged assistance restrictions were later permanently enjoined by a different district court. *Disability Rts. N. Carolina v. N. Carolina State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *5 (E.D.N.C. July 11, 2022) ("The plain language of North Carolina's provisions impermissibly narrows a Section 208 voter's choice of assistant from the federally authorized right to 'a person of the voter's choice[.]'").

(plaintiffs demonstrated a likelihood of success on their claim where state violated Section 208 by restricting LEP voters from receiving assistance from a person of their choice).[5]

2. *Section 208 Preempts Conflicting State Laws.*

75. States may not enact laws that interfere with the guarantees of 208. "State laws are preempted when they conflict with federal law. . . . This includes cases where 'compliance with both federal and state regulations is a physical impossibility,' . . . and those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). First, a state law is preempted when it renders compliance with both state and federal law an "impossibility[.]" *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963). Second, a state law is preempted when it "creates a conflict with the plan Congress put in place." *Arizona v. United States*, 567 U.S. at 403.[6]

76. In the context of a voter's right to assistance under Section 208, state laws are preempted when they infringe upon a voter's ability to vote with his or her chosen assister. The Fifth Circuit, in striking down a Texas limitation on voting assistance as preempted by Section

---

[5] *See also* Consent Decree, Judgment, and Order, *United States v. Fort Bend Cnty.*, No. 4:09-cv-01058 (S.D. Tex. Apr. 13, 2009); Memorandum of Agreement, *United States v. Kane Cnty.*, No. 07 C 5451 (N.D. Ill. Nov. 7, 2007); Consent Decree, Judgment, and Order, *United States v. Brazos Cnty.*, No. H-06-2165 (S.D. Tex. June 29, 2006); Consent Decree, *United States v. Orange Cnty.*, No. 6:02-cv-737-ORL-22JGG (M.D. Fla. Oct. 8, 2002); Settlement Agreement, *United States v. City of Philadelphia*, No. 2:06cv4592 (E.D. Pa. June 4, 2007); Revised Agreed Settlement Order, *United States v. City of Springfield*, No. 06-301- 23-MAP (D. Mass. Sept. 15, 2006).
[6] Section 208 permits private enforcement. *See, e.g.*, *OCA-Greater Houston*, 867 F.3d at 609-14; *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 790, 798 (W.D. Ark. 2021); *New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1301 (N.D. Ga. 2020); *Democracy N.C.*, 476 F. Supp. 3d at 233–36; *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 988-90 (N.D. Fla. 2021).

208, compared the "unambiguous language" of Section 208 to the challenged provision in the Texas Election Code and concluded that "[Texas's] limitation on voter choice impermissibly narrows the right guaranteed by Section 208 of the VRA." *OCA-Greater Houston*, 867 F.3d at 614-15 (invalidating state law requirement that an interpreter chosen by the voter must be registered to vote in the same county as the voter).

77.    In *DSCC v. Simon*, 950 N.W.2d 280, 287-88 (Minn. 2020), the Minnesota Supreme Court concluded that Minnesota's voter assistance restriction was preempted by Section 208 of the VRA because it limited the number of voters an assister was permitted to help. *Id.* The Court explained, "[a] plain-language comparison leads to the conclusion that Minnesota's three-voter limit on marking assistance can be read to stand as an obstacle to the objectives and purpose of section 208 because it could disqualify a person from voting if the assistant of choice is, by reason of other completed assistance, no longer eligible." *Id.* at 289.

78.    Recently, a federal district court in Mississippi enjoined, as preempted by Section 208 of the VRA, a state law criminalizing third party mail ballot collection and regulating the "identity of allowable assistors" in the mail-in voting context. *Disability Rts. of Miss. v. Fitch*, No. 3-23CV-350-HTW-LGI, 2023 WL 4748788 (S.D. Miss. July 25, 2023). The court concluded that the law's ill-defined categories of exempted assistors and broad impact on the state's voting population—one in five adults lives with a disability and over 100,000 Mississippians voted by mail in 2020—"promise to deter otherwise lawful assistors from providing necessary aid to a vulnerable population." *Id*. at *1, *3; *see also Carey v. Wisconsin Elections Comm'n*, 624 F. Supp. 3d 1020, 1033 (W.D. Wis. 2022)

(holding VRA § 208 preempts state law "prohibit[ing] third-party ballot-return assistance to disabled voters who require such assistance").

3.  *The Legislative History of Section 208 Evidences the Intent of Congress to Afford Disabled, Low-literate and Limited English Proficient Voters the Right to Choose Their Assister.*

79.  The legislative history of the federal Voting Rights Act generally, and Section 208 specifically, evinces Congress's objective to protect the ability of certain groups of voters, including disabled, low-literate and limited English proficient voters, to cast a ballot with the help of their chosen assister and without interference or coercion by election workers. *See* Bills to Amend the Voting Rights Act of 1965: Hearings Before the Subcomm. on the Const. of the S. Comm. on the Judiciary, 97th Cong. 63 (May 4, 1982) (Senator DeConcini, in an Executive Session considering the Voting Rights Act in the Senate Judiciary Committee, stated "We made some additional minor changes such as . . . a provision to insure that blind, handicapped, and illiterate voters can receive assistance from persons of their choice in the voting booth so that such individuals will not be subject to undue influence or harassment from voting officials."); *see also* H.R. Rep. No. 227, 97th Cong., 1st Sess. 14 (1981) (discussing need to deter coercion of voters by election officials).

80.  Congress considered that the need for assistance may render such groups more susceptible to discrimination or undue influence. *Carey*, 624 F.Supp.3d at 1033. Congress responded by providing the opportunity for these potentially vulnerable voters to turn to those whom they trust for assistance:

> Clearly, the manner of providing assistance has a significant effect on the free exercise of the right to vote by such people who need assistance.  Specifically, it is only natural that many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled

by, someone other than a person of their own choice.  As a result, people requiring assistance in some jurisdictions are forced to choose between casting a ballot under the adverse circumstances of not being able to choose their own assistance or forfeiting their right to vote.  The Committee is concerned that some people in this situation do in fact elect to forfeit their right to vote.  Others may have their actual preference overborne by the influence of those assisting them or be misled into voting for someone other than the candidate of their choice.

The Committee has concluded that the only kind of assistance that will make fully 'meaningful' the vote of the blind, disabled, or those who are unable to read or write, is to permit them to bring into the voting booth a person whom the voter trusts and who cannot intimidate him.

S. Rep. No. 97-417, at 62 (1982). "To limit the risks of discrimination" and "avoid denial or infringement of the right to vote," Congress mandated that such voters "be permitted to have the assistance of a person of their own choice" during the voting process, including within the voting booth. *Id.*

81.    Congress also considered whether to restrict who could serve as an assister and chose to exclude two categories of persons: employers and union representatives. In creating these two categories of excluded individuals, Congress chose to allow all others to serve as assisters.

82.    Generally, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (citation omitted). Thus, Section 208 should not be read to imply restrictions beyond those enumerated. The Supreme Court has repeatedly cautioned against creating right-limiting exceptions beyond the ones Congress created. *See, e.g., Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 144-46 (2014); *United States v. Smith*, 499 U.S. 160, 166–67 (1991).

83.     After the provision was originally spearheaded by the National Association for the Blind,

        Congress decided to include other disabled voters and voters with low literacy and

        limited English proficiency in the protections of Section 208. *See* S. Rep. No. 97-417, at

        62 n.207 (1982) (citing the National Federation of the Blind's concern that voting

        "assistance provided by election officials . . . infringes upon their right to a secret

        ballot"). In this way, Section 208 works in tandem with the other provisions of the Voting

        Rights Act, particularly with respect to providing access to the ballot for limited English

        proficient voters.

84.     Seven years earlier, in the 1975 amendments to the Voting Rights Act, Congress

        connected the need to protect Latino, Asian American and Native American voters with

        the need to enforce the voting rights of those who were unable to read or write in English:

> The Congress finds that voting discrimination against citizens of language
> minorities is pervasive and national in scope. Such minority citizens are
> from environments in which the dominant language is other than English.
> In addition they have been denied equal educational opportunities by State
> and local governments, resulting in severe disabilities and continuing
> illiteracy in the English language. The Congress further finds that, where
> State and local officials conduct elections only in English, language
> minority citizens are excluded from participating in the electoral process.
> In many areas of the country, this exclusion is aggravated by acts of
> physical, economic, and political intimidation. The Congress declares that,
> in order to enforce the guarantees of the fourteenth and fifteenth
> amendments to the United States Constitution, it is necessary to eliminate
> such discrimination by prohibiting English-only elections, and by
> prescribing other remedial devices.

        52 U.S.C. § 10303(f)(1).[7]

---

[7] Congress also acted to protect limited English proficient voters when it expanded federal
review of new voting laws to include jurisdictions that had conducted English-only elections. 52
U.S.C. § 10303(f)(3).

85.    In 1982, Congress again amended the Voting Rights Act and added Section 208 to

protect the rights of limited English proficient voters as well as other voters who require

assistance to cast their ballots because of disability or an inability to read the language on

the ballot. 52 U.S.C. § 10508.

86.    The legislative history of Section 208 demonstrates that "inability to read or write"

includes the inability to read or write because of limited English proficiency. The

colloquy between Senator Denton and then-Senator Biden demonstrates lawmakers'

intent to protect limited English proficient voters with Section 208:

> Senator DENTON: I just have a question here, Mr. Chairman, for
> those who are advocating this language, "inability to read or write." It
> is my understanding that the voting booths have a multilingual kind of
> aspect. In fact, it is my understanding that Spanish, even the Aleutian
> tongue is used in some of the booths, and I wonder what language is
> referred to when one states "inability to read or write"? I just am
> confused by the intent.
>
> Senator BIDEN: The answer is any language, any language
> whatsoever, if the person cannot understand for whom they are voting,
> and they just state they cannot understand that, whether it is Aleutian,
> or Portuguese or Swahili. If they say they cannot understand it, they
> cannot read or write or understand what is going on in the booth, and
> they need help, that is what we are talking about.  It is clear on its face
> what we are talking about. That is what read or write means. Read or
> write, whatever the language is, that is in the language that the person
> is required to vote.

Voting Rights Act: Hearing on S. 54, S. 1761, S. 1975, S. 1992 and H.R. 3112 Hearing

Before Subcomm. on the Constitution of the S. Comm. on the Judiciary, Volume 2, 97th

Cong. at 89-90 (1982).

DATED: January 19, 2024                    **STOEL RIVES LLP**


/s/ Wendy J. Olson
Wendy J. Olson (*admitted pro hac vice*)
wendy.olson@stoel.com
Elijah M. Watkins (*admitted pro hac vice*)
elijah.watkins@stoel.com
Mark L. Bieter (*admitted pro hac vice*)
mark.bieter@stoel.com
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

Bradley R. Prowant (*admitted pro hac vice*)
bradley.prowant@stoel.com
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: 612.373.8800
Facsimile: 612.373.8881

Laura E. Rosenbaum (*admitted pro hac vice*)
laura.rosenbaum@stoel.com
760 SW Ninth Avenue., Suite 3000
Portland, OR  97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

**FREE SPEECH FOR PEOPLE**
Courtney Hostetler (*admitted pro hac vice*)
chostetler@freespeechforpeople.org
Ben Clements (*admitted pro hac vice*)
bclements@freespeechforpeople.org
John Bonifaz (*admitted pro hac vice*)
jbonifaz@freespeechforpeople.org
Ronald A. Fein (*admitted pro hac vice*)
rfein@freespeechforpeople.org
Amira Mattar (*admitted pro hac vice*)
amira@freespeechforpeople.org
1320 Centre St., #405
Newton, MA  02459
Telephone: 617.249.3015

**LYONS & LYONS, PC**
Sean M. Lyons
sean@lyonsandlyons.com
Clem Lyons
clem@lyonsandlyons.com
237 W. Travis St., Suite 100
San Antonio, TX  78205

*Attorneys for Mi Familia Vota Plaintiffs*


*/s/  Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Christopher D. Dodge*
Michael B. Jones*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Marcos Mocine-McQueen*
Marisa A. O'Gara*
Omeed Alerasool*

**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elais.law
mjones@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
mmcqueen@elias.law
mogara@elias.law
oalerasool@elias.law
 *Attorneys for LULAC Plaintiffs*
*Admitted *Pro Hac Vice*

*/s/ Jennifer Holmes*

Jennifer A. Holmes*
**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
Facsimile: (202) 682-1312
jholmes@naacpldf.org

Amir Badat*
Victor Genecin*
Breanna Williams*
**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
abadat@naacpldf.org
vgenecin@naacpldf.org
bwilliams@naacpldf.org
Shira Wakschlag*
**THE ARC OF THE UNITED STATES, INC.**
1825 K Street, NW, Suite 1200
Washington, DC 20006
Telephone: (202) 534-3708
Facsimile: (202) 534-3731
Wakschlag@thearc.org

Kenneth E. Broughton
Texas Bar No. 03087250
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
kbroughton@reedsmith.com
kpippin@reedsmith.com

Sarah Cummings Stewart
Texas Bar No. 24094609
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200

Facsimile: (469) 680-4299
sarah.stewart@reedsmith.com

J. Michael Showalter*
**ARENTFOX SCHIFF LLP**
South Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: (312) 258-5561
j.michael.showalter@afslaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Houston Area Urban League; Delta Sigma Theta Sorority, Inc.; The Arc of Texas; and Jeffrey Lamar Clemmons*

/s/ *Nina Perales*
Nina Perales (TX Bar No. 24005046)
Julia R. Longoria (TX Bar No. 24070166)
Fátima L. Menéndez (TX Bar No. 24090260)
Kenneth Parreno (MA BBO No. 705747)
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476; Fax: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org
fmenendez@maldef.org
kparreno@maldef.org

Michael C. Keats*
Rebecca L. Martin*
Jason S. Kanterman*
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
Tel: (212) 859-8000; Fax: (212) 859-4000
michael.keats@friedfrank.com
rebecca.martin@friedfrank.com
jason.kanterman@friedfrank.com

Attorneys for Plaintiffs

**LA UNIÓN DEL PUEBLO ENTERO, SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT, MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS, TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION, JOLT ACTION, WILLIAM C. VELASQUEZ INSTITUTE, FIEL HOUSTON INC.**

*Admitted pro hac vice*

/s/ *Leah J. Tulin*
Leah J. Tulin*
**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**
1140 Connecticut Avenue NW, Suite 1150
Washington, DC 20036
(202) 650-6397
tulinl@brennan.law.nyu.edu

Sean Morales-Doyle
Jasleen K. Singh*
Patrick A. Berry*
Robyn N. Sanders*
**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**
120 Broadway, Suite 1750
New York, NY 10271
Tel: (646) 292-8310; Fax: (212) 463-7308
sean.morales-doyle@nyu.edu
jasleen.singh@nyu.edu
patrick.berry@nyu.edu
rs8592@nyu.edu

Elizabeth Y. Ryan (TX Bar No. 24067758)
**WEIL, GOTSHAL & MANGES LLP**
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-8158
Facsimile: (214)746-7777
liz.ryan@weil.com

*Attorneys for Plaintiffs*

**FRIENDSHIP-WEST BAPTIST CHURCH, TEXAS IMPACT, JAMES LEWIN**

*Admitted pro hac vice*


/s/ Dayton Campbell-Harriss
Dayton Campbell-Harris**
Washington State Bar No. 59692
Adriel I. Cepeda Derieux*
New York State Bar No. 4919163
Ari Savitzky*
New York State Bar No. 5060181
Sophia Lin Lakin*
New York State Bar No. 5182076
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334 (phone)
(212) 607-3318 (fax)
dcampbell-harris@aclu.org
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org

Zachary Dolling
Texas Bar No. 24105809
Hani Mirza
Texas Bar No. 24083512
Sarah X. Chen*
California Bar No. 325327
Veronikah Warms*
Texas Bar No. 24132682
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Thomas Buser-Clancy

Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238

**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
915 15th St. NW
Washington, D.C. 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

Lucia Romano
Texas State Bar No. 24033013
Peter Hofer
Texas Bar No. 09777275
Christopher McGreal
Texas State Bar No. 24051774
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org

phofer@drtx.org
cmcgreal@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
Alex S. Trepp*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com
atrepp@jenner.com

*Attorneys for Oca-Greater Houston Plaintiffs*

*admitted *pro hac vice*
**practice is limited to federal court

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2024, the foregoing document was filed electronically through CM/ECF and that all counsel of record were served by CM/ECF.


/s/ Wendy J. Olson
Wendy J. Olson