1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
2                SAN ANTONIO DIVISION

3
LA UNION DEL PUEBLO ENTERO,       .
4 ET AL,                           .
                                  .
5          PLAINTIFFS,             .
       vs.                         . DOCKET NO. 5:21-CV-844-XR
6                                  .
GREGORY W. ABBOTT, ET AL,          .
7                                  .
          DEFENDANTS.              .
8

9

10             TRANSCRIPT OF BENCH TRIAL
       BEFORE THE HONORABLE XAVIER RODRIGUEZ
11          UNITED STATES DISTRICT JUDGE
                OCTOBER 20, 2023
12

13

14

15

16 APPEARANCES:
FOR THE PLAINTIFFS:     NINA PERALES, ESQUIRE
17                      FATIMA MENENDEZ, ESQUIRE
                        JULIA LONGORIA, ESQUIRE
18                      MALDEF
                        110 BROADWAY
19                      SUITE 300
                        SAN ANTONIO TX 78205
20

21                      VICTOR GENECIN, ESQUIRE
                        NAACP LEGAL DEFENSE & EDUCATIONAL
22                       FUND INC
                        40 RECTOR STREET, FIFTH FLOOR
23                      NEW YORK NY 10006

24

25

4909

```
 1

 2                             ELENA ARMENTA RODRIGUEZ, ESQUIRE
                               ELIAS LAW GROUP LLP
 3                             250 MASSACHUSETTS AVENUE NW
                               SUITE 400
 4                             WASHINGTON DC 20001

 5

 6

 7  FOR THE DEFENDANTS:      RYAN G. KERCHER, ESQUIRE
                            KATHLEEN HUNKER, ESQUIRE
 8                          WILLIAM WASSDORF, ESQUIRE
                            TEXAS ATTORNEY GENERAL
 9                          P.O. BOX 12548
                            MC 009
10                          AUSTIN TX 78711

11

12

13

14

15  REPORTED BY:           GIGI SIMCOX, RMR, CRR
                            OFFICIAL COURT REPORTER
16                          UNITED STATES DISTRICT COURT
                            SAN ANTONIO, TEXAS
17

18

19

20

21

22

23

24

25
```

1    *(San Antonio, Texas; October 20, 2023, at 11:00 a.m., in*
2    *open court.)*
3          THE COURT:  Where are we at?
4          MR. WASSDORF:  We've got a couple exhibits here that
5    I think we can go ahead and move into evidence.  These are the
6    Dan Smith Reliance documents for the March 2022 and
7    November 2022 elections that I've already talked to Victor
8    about.
9          I don't assume anyone else has a problem with them?
10          Okay.  So we can go ahead and move into evidence
11    State's 445 through 451.
12          THE COURT:  Any objections?
13          MR. GENECIN:  Your Honor, we have no objection to
14    those, assuming, because we have not had a chance to look at
15    them, that they are what they -- what the State has described
16    them as being.  I believe they are, but if it should come to
17    pass during the briefing on the proposed findings and
18    conclusions that any of them are not, we will, of course,
19    protest.  I doubt we will need to.
20          So they are offered as the Dan Smith Reliance
21    materials in the State's -- the versions the State has; and,
22    as I say, I have no reason to believe that they are not what
23    the State tells us, but we haven't gotten to review them.
24          THE COURT:  445 through 451 are admitted.
25          MR. WASSDORF:  Okay.  I think we've got about 18 last

1  exhibits that need the objections resolved.  The first one is

2  State's Exhibit 88.

3          MISS PERALES:  Yes.  The plaintiffs —

4          THE COURT:  Can you put that on the screen for me?

5          MISS PERALES:  Are we objecting at this moment, or do

6  you want to describe it and then I can get up and make an

7  objection?  How would you like to do this?

8          MR. WASSDORF:  Brian is getting ready to pull it up.

9          MISS PERALES:  Okay.

10         THE COURT:  There we go.

11         So what's the objection to this?

12         MISS PERALES:  The objection, Your Honor, is that the

13  document includes a table that purports to set out statistics

14  on election fraud cases undertaken by the Attorney General's

15  Office.  We have no idea whether these numbers are valid.

16  There's no foundation to this document and it's hearsay.

17         THE COURT:  Your response.

18         MISS HUNKER:  Your Honor, we're simply bringing this

19  in to show, again, additional documentation that was sent to

20  the legislature.  If you notice that the recipient is Jessica

21  Hart [phonetic] at Texas.Gov, and this is information that's

22  public.  The Attorney General's Office has sent other types of

23  requests that we've received, public information requests,

24  which is why it was not privileged.  Because of that, we're

25  again just showing part of what was in front of the

1   legislature during that period of time.

2           MISS PERALES:  Your Honor, if it's being offered in

3   that way, we would ask for the same limiting instruction or

4   limited interpretation of this, simply that this was sent to

5   the legislature but can't be cited to prove legislative

6   intent.

7           THE COURT:  Well, if you are willing to admit it that

8   way, that's fine with me; although, I'm more concerned with

9   the sword and shield with the selective, we let some stuff get

10  in when we want to and then we refuse to provide discovery

11  when we don't.  How do we tackle that issue?

12          MISS HUNKER:  Your Honor, the privilege doesn't cover

13  public information.  This is information that —

14          THE COURT:  How do I know that this is public?

15          MISS HUNKER:  Well, it's communications from — it's

16  an email from our communications office.  I'm going by the

17  representation that was given to me.  I can't — I don't know

18  the full details behind this.  It's not my particular email,

19  but the communication that was given to us in the course of

20  litigation is that this information was public, it's been

21  released to multiple occasions, because of that we do not deem

22  it privileged because it didn't fall under a privilege.

23          MISS PERALES:  Your Honor, that fact could only be

24  established through counsel's testimony.  We would reassert

25  our foundation objection.  It is, in fact, on its face a

1  communication between the Office of the Attorney General and

2  somebody with a Texas House email address, so it's not public

3  in that sense.

4          THE COURT:  Remind me again who Ryan Fisher is.

5          MISS HUNKER:  He was at the time the head of the

6  communications office within the Attorney General.

7          MR. WASSDORF:  Government Relations.

8          MISS HUNKER:  Government relations.  My apologies.

9          MR. GENECIN:  I would note our objection, Your Honor,

10  on the sword-and-shield ground.  Your Honor has already

11  indicated and said that this is material that should have been

12  presented by witnesses, if there were witnesses to present it;

13  otherwise, it's rank hearsay.

14          THE COURT:  88 is not admitted.

15          MR. WASSDORF:  The next exhibit is State's Exhibit

16  118.  These are the United States' responses to Texas' first

17  set of request for production, the privilege log to those.

18          MISS PERALES:  Your Honor, this is the Department of

19  Justice's privilege log showing that the United States

20  withheld documents about complaints of voter fraud in Texas.

21  It should not be admitted.

22          There's been no testimony that this document is what

23  it purports to be or how it was prepared.  There's also no

24  substance to the description so it's impossible to tell what

25  the complaints were about, and, thus, whether they are even

1   relevant to this litigation.  There's also just no connection

2   between this litigation document and any issue regarding the

3   legislature.

4        MISS HUNKER:  Your Honor, we're going to withdraw

5   that exhibit.  It was originally with the expectation that the

6   Department of Justice was going to be a party to the

7   litigation.

8        THE COURT:  118 is withdrawn.

9        MISS HUNKER:  The next exhibit, Your Honor, is

10  State's Exhibit 123.  As you can see, Your Honor, this is a

11  House journal from 2007.  The reason we are including it in is

12  because it does have representations made by legislators

13  regarding voting fraud and the belief -- and mail voting

14  fraud.

15        Now, we are not bringing this in for the truth of the

16  matter asserted but rather to show there has been a

17  long-standing concern raised on the legislative floor by

18  members of both parties that voting fraud, particularly mail

19  voting fraud, exists and is prevalent.

20        THE COURT:  Any objection?

21        MR. GENECIN:  Yes, Your Honor.  It's from 2007.  It's

22  a document that hardly is recent and whatever legislators

23  might have thought in 2007, it cannot really be probative of

24  what they were thinking in 2021.  Beyond that, there is,

25  again, a sword-and-shield issue.  The State is letting -- is

1  offering what it feels that helps it but is keeping us from

2  examining legislators about matters it wants to protect.

3          THE COURT:  Thank you for drawing my attention to the

4  date.  I was ready to have it admitted, but how do you get

5  around the date?

6          MISS HUNKER:  Well, that goes towards weight, not

7  towards relevance.  Representative Anchia, the comment

8  specifically, is to acquire legislature, and was deposed

9  during this litigation.

10         MR. GENECIN:  Your Honor, whatever any of the

11 legislators may have done or said, whatever their involvement

12 in these issues might have been in 2007, just does not have

13 the recency that is needed.  In addition, what we're talking

14 about here is a journal of proceedings summaries.  It's

15 hearsay within hearsay.

16         THE COURT:  So, yeah.  It's 2007, not the legislature

17 at issue in this case, whatever Anchia might have said at that

18 point, the sword—and—shield problem still exists now

19 because —

20         MISS HUNKER:  But, Your Honor, can I just sort of

21 push back on the sword—and—shield argument, because this is a

22 document that is available on Texas Legislative online, which

23 is where I got it from.

24         THE COURT:  Oh, no.  So my point is with regard to

25 Anchia now, you—all didn't let the plaintiffs see Anchia's

 1  current communications on this legislature that voted in SB 1.

 2  You're shaking your head no, so correct me if I'm wrong.

 3          MISS HUNKER:  I am, Your Honor, only because the

 4  Texas Attorney General's Office did not represent

 5  Representative Anchia and I don't believe he asserted

 6  legislative privilege through the course of the litigation.

 7          THE COURT:  So did you produce those excerpts of

 8  communications to the plaintiffs?

 9          MISS HUNKER:  You mean this particular House journal?

10          THE COURT:  No.  No.  No.  No.  No.  I'm worried

11  about what Anchia and other legislators said in the

12  legislative session that passed SB 1.

13          MISS HUNKER:  I'm a little uncertain as to —

14          MR. KERCHER:  So when we have a case like this that

15  may involve multiple legislators we may represent some of

16  them.  Some of them may decline our representation.  We did

17  not represent Representative Anchia and so his documents were

18  not ours to produce.

19          He was deposed and he made his decision about whether

20  he was going to invoke the legislative privilege.  I don't

21  believe that he did, and so, although I disagree that a public

22  record of to which the privilege, legislative privilege could

23  never extend, would create a sword-and-shield problem, it's

24  not the case that Representative Anchia I think has invoked

25  that privilege and so this would not create that

1  sword—and—shield problem.

2       These are his comments from 2007 that bear on the

3  duration of these concerns across party.  I take your point

4  that may not be dispositive of what happened in 2021, but it

5  is probative evidence and the Court can give it the

6  appropriate weight.

7       THE COURT:  Are you asking me to admit 123 just for

8  the sole purpose of Anchia's remarks, or how do you want me to

9  interpret 123?

10      MISS HUNKER:  Yes, Your Honor.  He has a statement

11 towards a vote that he presented into the House journal; he

12 had submitted.  That's an option all legislators have when

13 there's a vote.  It's that particular section.  I believe this

14 House journal was cropped so really the pages below, if we go

15 down, are only going to have Representative Anchia's

16 statements.

17      MR. GENECIN:  Your Honor, let me suggest that we have

18 pending and not yet scheduled, of course, a phase two of these

19 proceedings that will concern what legislatures — what the

20 legislators knew and did, and that that would be the

21 appropriate time for the State to seek to admit this exhibit

22 for whatever purposes they may want to seek to admit it, but

23 that at this point it really is not appropriate.

24      I also have not had the opportunity to review

25 Representative Anchia's deposition or to know exactly what

1  position the State took.  I know that the State did purport to

2  represent other legislators who were opposed to SB 1.  So I

3  think we've got either a sword or a shield hanging over this

4  and we should not admit this exhibit at this time.

5          THE COURT:  So let me ask the question this way.

6  123, why do we need to have that before me now when we're

7  talking about HB 1 which was passed years after 2007?  What's

8  the necessity of this document to the allegations before me in

9  this phase one?

10          MISS HUNKER:  It goes to how plaintiffs have argued

11  their Anderson—Burdick claim, and also, to a lesser extent,

12  their ADA claim.  They argue pretext, and that, while not a

13  full intent claim, does have intent elements and so we would

14  be very reluctant not to include at least some documents that

15  speak towards intent when plaintiffs are planning on including

16  findings of fact and conclusions of law that incorporate some

17  intent analysis to their findings and proposed conclusions.

18          MR. KERCHER:  And the Court has also heard testimony

19  on Senate factors and other totality of the circumstances

20  tests to evaluate discriminatory intent and some of that is a

21  recent historical analysis.

22          As the Court knows, we've heard from Dr. Kousser and

23  Dr. Lichtman about a history of discrimination.  The history

24  of sort of the partisan tennis ball where there is election

25  integrity and how that has shifted back and forth along

1  partisan lines and from both parties and even from minority

2  members from the State House is probative to the degree that

3  some of the other history that we got from some of the experts

4  in this case was probative.

5           MISS HUNKER:  I would also add, Your Honor, that

6  Representative Anchia was deposed in 2022.

7           THE COURT:  I was just going to ask that.  So is any

8  of Anchia's deposition testimony before me by way of other

9  exhibits in this case?

10          MISS HUNKER:  Yes, through deposition designations.

11 He was originally disclosed by plaintiffs and originally he

12 had deposition designations from plaintiffs.  I know the State

13 defendants yesterday admitted counterdesignations and so this

14 also speaks towards the designations as well that were filed

15 in this case.

16          THE COURT:  123 is admitted and I'll give it whatever

17 weight it deserves.

18          MISS HUNKER:  Your Honor, the next exhibit is 125 and

19 this is Select Committee on election security.  It was an

20 interim committee held in December of 2020 -- sorry -- in

21 2018.

22          This is letters that were submitted to Senator Hughes

23 expressing the concerns of various legislators.  It includes

24 within it a letter from Senator Zaffirini expressing concern

25 about voter fraud as well as a desire to include certain

1  reforms with ID numbers back in 2018.

2          Again, this is going towards showing the bipartisan

3  concern.  It goes towards intent that is a very similar

4  argument to the exhibit we had just discussed.

5          THE COURT:  Any response?

6          MR. GENECIN:  Yes, Your Honor.

7          This is a whole document.  It's not simply a letter

8  from Representative Zaffirini.  If it were, it would be

9  irrelevant.  It's from 2018.  But it's a whole package of

10  letters and a report and there is sort of a shield problem.

11          It's not the same legislature that passed this.

12  There is no evidence with this that any of this material was

13  before the legislature in 2021, and, again, all of this

14  material may have some relevance to phase two but at this

15  point it's premature.

16          MISS HUNKER:  Your Honor, again, the plaintiffs have

17  continuously argued pretext and have incorporated that through

18  multiple stages of this trial.  This goes towards that, both

19  towards the fact that legislators have expressed this concern,

20  but also that Senator Hughes, that was the author of Senate

21  Bill 1, was receiving these concerns from members of both

22  parties.

23          So we do think it speaks towards intent, towards some

24  of the claims that will be decided by this Court in phase one.

25  We do recognize that the Court may not find it dispositive but

1 this was not information that we think should be excluded,

2 given the fact that it does touch upon the various claims

3 being considered in phase one.

4          Now, with regard to the sword-and-shield problem, we

5 do not represent Senator Zaffirini, so to the extent that

6 counsel had wished to seek additional documents or had wished

7 to depose Senator Zaffirini, they had ample time throughout

8 discovery.  That was not something they had pursued or

9 expressed an interest.

10          MR. WASSDORF:  And I think it's important to

11 remember, Your Honor, that both of these legislators were in

12 the legislature in 2018 and they are in the legislature today.

13 Their memories do not reset on each legislative session.

14          THE COURT:  I'm not sure about that.

15          125 is admitted.

16          MISS HUNKER:  Next is State Exhibit 126.

17          THE COURT:  Now, this is obviously hearsay, so...

18          MISS PERALES:  Yes, Your Honor.  It is hearsay and --

19 yes.  I'm just going to stick with that.

20          MISS HUNKER:  Your Honor, again, this is not being

21 offered for the truth of the matter but rather to show

22 additional documents that were part of legislative record.  If

23 you look on the bottom, you will see that there is a Bates

24 number.  That Bates number is Texas Leg.  This was part of the

25 documentations that was produced by the legislators and was in

1  their possession during the 2021 legislative session.

2        MISS PERALES:  Your Honor, this raises the

3  sword-and-shield problem that we were discussing earlier.

4  This is, you know, selective offering of materials that

5  legislators, if this is where they are going, claim they saw

6  or claim this was part of their consideration, and that's

7  exactly where we've had trouble getting discovery.

8        THE COURT:  Sustained.  Not admitted.

9        MISS HUNKER:  The next one is Exhibit 191, if you can

10  give me a moment, Your Honor ——

11        *(Off the record discussion)*

12        MISS HUNKER:  —— which we are going to withdraw.

13        THE COURT:  91 is withdrawn.

14        MISS HUNKER:  The next is State Exhibit 219.

15        This is an email regarding Joyce LeBombard from Texas

16  League of Women Voters, Secretary of State's Office, authored

17  by Keith Ingram.  This was, I believe, discussed during the

18  examination of Mr. Ingram.  I had forgot to move it into

19  evidence and so I am moving it into evidence now.

20        THE COURT:  Any objection?

21        MISS PERALES:  This is yours, Victor.

22        MR. GENECIN:  Your Honor, I don't recall this exhibit

23  being discussed during the deposition of Mr. Ingram, but, in

24  any event, the statements by Mr. Ingram are clearly hearsay if

25  they are admitted for the truth.

```
 1              THE COURT:  Is League of Women Voters, they are a
 2    party, right?
 3              MISS HUNKER:  They are, Your Honor.  They are a
 4    plaintiff.
 5              THE COURT:  219 is admitted.
 6              MISS HUNKER:  Your Honor, I am going to withdraw 220.
 7              THE COURT:  220 is withdrawn.
 8              MISS HUNKER:  The same with 221.
 9              THE COURT:  221 is withdrawn.
10              MISS HUNKER:  We are going to bring up State Exhibit
11    258.
12              MISS PERALES:  No objection, Your Honor, to 258.
13              THE COURT:  258 is admitted.
14              MISS HUNKER:  Your Honor, we're going to bring up
15    284.
16              MISS PERALES:  Oh, 283?  You already had a ruling on
17    that.
18              MISS HUNKER:  Oh, I'm sorry.
19         (Off the record discussion)
20              MISS HUNKER:  State Exhibit 284.
21              MISS PERALES:  Your Honor, Exhibits 284 and 285 are
22    both briefs filed by other people in other cases so we have
23    the same objection to 284 and 285, hearsay and relevance.
24              MISS HUNKER:  Your Honor, this is going with respect
25    to the drop box and in-person delivery dispute that was going
```

1   on in 2020, regarding the interpretation of that.  We have

2   been showing the fact that there has been legal disputes over

3   some of these innovations that were proposed in 2020 as sort

4   of the reasons behind a lot of Senate Bill 1, and so this goes

5   towards establishing the fact that this conflict existed.

6         It's not being offered for the truth of the matter.

7   We have direct testimony from the Secretary of State's Office

8   that goes to the facts within these briefs.  Rather, just the

9   fact that we were having this dispute and how certain terms

10   should be interpreted throughout the election code.

11         THE COURT:  But this is your briefs, right?

12         MISS HUNKER:  Yes, Your Honor.  I believe I had

13   brought up the response brief as well.  Was that 283?

14         MISS PERALES:  Yes.

15         THE COURT:  No, I'm just saying on the screen I'm

16   seeing two appellants briefs and you-all are the appellant.

17         MISS HUNKER:  That's correct, Your Honor.

18         THE COURT:  So, I mean, why should I let this in so

19   you can put in your own version of what you think the statute

20   is interpreted.  I don't understand that.

21         MISS HUNKER:  Your Honor, in this case we did not

22   initiate the litigation.  This is just briefs, again, showing

23   certain points that were being under dispute.

24         THE COURT:  But aren't you going to do that in your

25   findings of fact and conclusions of law?  Aren't you going to

1    make your arguments to me that way?

2            MISS HUNKER:  Principally, yes.  We don't plan on

3    referencing this with respect to the actual argument itself,

4    more showing that the argument existed in 2020, which goes

5    towards State interest and towards legislative intent.

6            To the extent that the plaintiffs are arguing that

7    the reasons behind SB 1 are pretext and we are showing that

8    there was an ongoing legal dispute that went through multiple

9    rounds of litigation, all the way up to the Fifth Circuit, we

10   think is relevant in that regard.

11           Now, Your Honor, you may not find that dispositive,

12   you may give it little weight, but we do think it is relevant

13   in light of the type of claims that plaintiffs raised.

14           MISS PERALES:  Your Honor, first of all, I'd like to

15   apologize to opposing counsel on 283.  I sent you a message

16   that we thought it had been resolved, but now we cannot find

17   the transcript cite so we would like to discuss 283, 284, and

18   285 together.

19           283 is the court reporter transcript from a hearing,

20   either in this matter or a similar — just another case and

21   not this case.  And as to all three they are not this

22   litigation, they are out-of-court statements by counsel and

23   should not come in because they are hearsay.

24           MR. GENECIN:  And, Your Honor, if I can make a

25   suggestion.  We're all lawyers here.  It strikes me that the

1    way for counsel to show, if what they want to show is that

2    there were disputes about interpretation of law, that they

3    could cite the decisions in those cases and those decisions

4    would lay out exactly how the courts in those cases saw those

5    disputes and Your Honor would have a case to cite rather than

6    a record that is burdened with all this material.

7              THE COURT:  Yeah.  So 283, 284, and 285, the

8    objections are sustained; not admitted.

9              In your findings of fact and conclusions of law if

10   you want to raise the fact because that's a matter of public

11   record you can indicate the lawsuit and the date and the

12   opinion that way, but this is not relevant and is hearsay.

13             MISS HUNKER:  Yes, Your Honor.  One moment.

14   *(Off the record discussion)*

15             MISS HUNKER:  Your Honor, we're going to withdraw

16   State Exhibit 287.

17             THE COURT:  Withdrawn.

18             MISS HUNKER:  288.

19             THE COURT:  Withdrawn.

20             MISS HUNKER:  And 289.

21             THE COURT:  Withdrawn.

22             MISS HUNKER:  Our next exhibit is 292.

23             This is a report that was issued by the Commission on

24   Federal Election Reform and it speaks, again, to concerns of

25   mail-in voting fraud being -- or mail voting being of specific

1  vulnerabilities within Texas elections, as well as discussion

2  of voter rolls and how that plays into vulnerabilities for

3  fraud as well.

4          We think this is very relevant in respect to

5  establishing long concerns over the type of forums that SB 1

6  addresses.  We think it's in similar vein as other reports

7  that have been admitted in through the course of this trial,

8  such as the Election Administration Commission and the EAVS

9  report, which also analyzes type of elections.  And it goes to

10 competence and the results.

11         THE COURT:  Any response?

12         MISS LORENZO:  Yes, Your Honor.

13         We would object on the basis of relevance.  This is a

14 report from September of 2005.  It was not prepared by anyone

15 within Texas, and we would also object to hearsay because we

16 cannot verify any of the statements within it or bring anyone

17 in to ask them any questions, to verify the validity of the

18 places where they do talk about Texas elections.

19         MISS HUNKER:  Your Honor, with respect to hearsay,

20 this is a public record.  It was produced and published by a

21 federal commission.

22         THE COURT:  I was wondering about that.  I looked

23 at — where was this published?

24         MISS LORENZO:  It appears the American University,

25 Your Honor.

1          MISS HARRIS:  Your Honor, it's a private

2    organization.  It's the only report that they published.

3          MISS LORENZO:  It says it was prepared by the Center

4    for Democracy and Election Management, which is part of

5    American University.

6          THE COURT:  Well, that was who organized it, yeah,

7    but, I mean, was this —

8          MISS HUNKER:  It was run by Former President Jimmy

9    Carter.

10         MISS LORENZO:  That does not make it federal.

11         MISS HUNKER:  No, I'm not saying — I'm just — it's

12   not — it's the Carter-Baker Commission.

13         THE COURT:  Don't talk bad about Jimmy Carter.

14         292 is hearsay; not admitted.

15         MISS LORENZO:  Thank you, Your Honor.

16         MISS HUNKER:  Your Honor, I could understand that

17   ruling with respect to being considered on the truth of the

18   matter asserted; however, there is a second component to it,

19   which is, again, establishing the long concern that certain

20   points in election administration may have had with respect to

21   fraud and how to respond to it and we do think with that

22   respect there is relevancy and would not be a violation of

23   hearsay.

24         THE COURT:  So I might be answering my own question,

25   but did anybody in the Texas Legislature addressing SB 1 cite

1    to Jimmy Carter and this report?

2              MISS HUNKER:  I would have to look at the record

3    again.

4              THE COURT:  The answer is probably not, and, so,

5    yeah, not admitted.

6              MISS HUNKER:  Our last exhibit is State 315, and if

7    you can give me one moment, Your Honor.

8              *(Off the record discussion)*

9              MISS HUNKER:  And we are going to withdraw State

10   Exhibit 315.

11             THE COURT:  Thank you.  Withdrawn.

12             MISS HUNKER:  Your Honor, just a few housekeeping

13   matters, because that was the end of our exhibit list, we are

14   filing a motion for judicial notice.  We got earlier this

15   morning a final sign-off from plaintiffs, and so this will be

16   an unopposed request for judicial notice.  You should be

17   seeing it sometime the next half-hour to an hour on the

18   docket.

19             THE COURT:  Okay.  That's unopposed and it will be

20   granted.

21             MISS HUNKER:  Thank you, Your Honor.

22             In addition, we've discussed with plaintiffs

23   regarding how to make it easier for the Court to read and

24   review deposition designations, and so you may have noticed,

25   Your Honor, that we had submitted yesterday our designations

1  for 13 different witnesses.

2          After speaking with counsel, they are going to

3  basically add additional citations so this way you have one

4  whole deposition with the highlights.  So in a couple of days

5  we're going to be resubmitting that -- those exhibits, and the

6  revised documents will have the fuller transcript with all the

7  highlights in a single place for Your Honor to review.

8          THE COURT:  Thank you.  So are we going to withdraw

9  the previous ones and then sub in those, or is this just going

10  to be submitted to me as an aid?

11          MR. WASSDORF:  I think we were planning on just

12  filing it as an amended filing.  We can withdraw it and file

13  it anew again.

14          MISS HUNKER:  It's up to Your Honor's convenience.

15          THE COURT:  I don't care.  I'm just wondering.  I

16  don't want to see it twice on the record.  So either we

17  withdraw the previous ones and use this in lieu of the

18  previous, or you can skip the whole filing mechanism and just

19  submit it to chambers just as an aid and leave the record as

20  is.

21          MISS HUNKER:  Would that be all right?

22          MISS RODRIGUEZ:  We are totally fine with that.

23          THE COURT:  Why don't we do it that way?

24          MISS HUNKER:  We will do it that way, Your Honor.  I

25  think that will be the easiest.

1      *(Off the record discussion)*

2          MISS HUNKER:  Your Honor, with that, State defendants

3   and intervenor defendants rest with respect to phase one.

4          THE COURT:  Thank you.

5          MISS RODRIGUEZ:  We have a tiny housekeeping matter.

6          Your Honor, as part of the housekeeping efforts,

7   LULAC plaintiffs will be moving to admit LULAC Plaintiff's

8   Exhibit 107, which is, as we previewed for counsel, our

9   previously noted deposition designations for one deponent.  We

10  submitted those to chambers via email.  We'll be getting you a

11  paper copy.  I can read the transcript into the record, if you

12  like, but -- great.  Thank you, Your Honor.

13         THE COURT:  Any objection to 107?

14         MISS HUNKER:  No, Your Honor.

15         THE COURT:  LULAC 107 is admitted.

16     MR. NICHOLS:  May I be heard?

17         Your Honor, I want to close the loop on the grand

18  total of four exhibits that were tendered to the Court in

19  connection with the defense of District Attorney Kim Ogg.

20         Brian, if you can just pull up Exhibit 1, please.

21         Your Honor, the first exhibit that DA Ogg tendered to

22  the Court was the agreed stipulation.

23         Brian, if you could just flip through that real

24  quick.

25         This was the draft stipulation that's been the

 1  subject of some discussion during the proceedings.

 2          And then if you can put up Exhibit 2.

 3          Exhibit 2 is the email correspondence through which

 4  this requested stipulation or suggested stipulation was

 5  rejected.  Here, you see at the top, by counsel for the OCA

 6  plaintiffs.

 7          And then if you could go to the Docket 781, the Ogg

 8  stipulation, please, Brian.

 9          So, Your Honor, this is of record in the case.  This

10  is the stipulation that I addressed during the motion for

11  judgment on findings.  And, as you see —

12          If we flip down, Brian, to the very end.

13          — there's an Exhibit A that's attached to this.

14          Go right behind exhibit — next page, please.

15          You see that's the same email correspondence of

16  rejection.

17          And if you go further; go all the way down.

18          You see the actual proposed stipulation as part of

19  that stipulation as well.  For some inextricable reason, there

20  was an objection to admission of Exhibits 1 and 2, even in

21  light of the stipulation, but, Your Honor, in light of the

22  stipulations before the Court, so we would instead of having

23  the Court having to make a ruling, we would withdraw Ogg

24  Exhibits 1 and 2.

25          THE COURT:  Withdrawn.

1        MR. NICHOLS:  Then, Brian, if you could please put up
2    Ogg Exhibit 4.
3        Your Honor, I just want to clean up the record on
4    this.  Ogg Exhibit 4 is the one that you heard some discussion
5    about.  Some, you know, we — there was an effort to withdraw
6    what was in evidence as OCA PX 416.  I can represent two
7    things to the Court.
8        Number one, Ogg Exhibit Number 4 that was tendered to
9    the Court is the same document that is represented in OCA PX
10   416.  That's representation number one.
11       Representation number two, despite the back and forth
12   that was happening in court the other day, these are the most
13   recently updated interrogatory responses to the request that
14   had been made by the LULAC plaintiffs.
15       So just want to make sure the record is crystal clear
16   that what is admitted before the Court is OCA PX 416 is the
17   most recently amended responses to the LULAC plaintiffs'
18   discovery requests.
19       And the reason why that's important, Your Honor, is
20   because as part of that stipulation that you saw which is in
21   the record before the Court under Docket 781, that stipulation
22   provides that — excuse me, Your Honor.
23       The stipulation provides in paragraph 3, and I'm
24   quoting, "that any party may use the HCDAO's most recently
25   amended responses to interrogatories in the trial as evidence

*Gigi Simcox, RMR, CRR*

4934

```
 1   with respect to any claim or defense made in the case and can
 2   argue from other discovery responses made by the HCDAO in the
 3   case."
 4           The reason why that's important, Judge, is obvious.
 5   These discovery responses that you have before you as OCA PX
 6   416 represent the evidence, we respectfully contend, of the
 7   lack of investigation or prosecution efforts at the DA's
 8   Office with respect to any of the altered provisions of SB 1
 9   that are the subject of the plaintiffs' claims.
10           So with that background, Your Honor, we would
11   likewise, since it's already before the Court, we would
12   withdraw District Attorney Ogg's Exhibit 4.
13           THE COURT:  That's withdrawn.
14           MR. NICHOLS:  And then, finally, Your Honor, DA Ogg's
15   tendered Exhibit 3 was a set of discovery responses that were
16   made to the OCA plaintiff discovery.  I'll represent to the
17   Court that the OCA plaintiff discovery was not limited to the
18   provisions, changed provisions of SB 1 that relate to the
19   criminal justice system as found by the Court and that are
20   challenged by the plaintiffs.
21           So, Your Honor, given the fact that we believe the
22   discovery responses that are before the Court is OCA PX 416,
23   are those that are directly relevant to the issues before the
24   Court, we likewise withdraw Ogg Proposed Exhibit Number 3.
25           THE COURT:  That's withdrawn.
```

1          MISS RODRIGUEZ:  Your Honor, may I respond briefly,

2    assuming Mr. Nichols is done.

3          THE COURT:  What's there to respond to?  All the

4    exhibits are withdrawn.

5          MISS RODRIGUEZ:  Respectfully, he spoke at length

6    about the contents and the, I guess —

7          THE COURT:  I'll figure it out myself.

8          MISS RODRIGUEZ:  All right.  Thank you, Your Honor.

9          MR. NICHOLS:  Thank you, Judge.

10          THE COURT:  What else have we got?

11          MISS PERALES:  Your Honor, we'd like to thank the

12    Court and the court staff, Miss Fernandez, Miss Gigi, and all

13    of the other long-suffering court reporters.  We are deeply

14    grateful for your patience, your tolerance, and just would

15    like to conclude with that note of thank you.

16          THE COURT:  Anything else from your side?

17          MR. KERCHER:  State defendants, likewise, thank the

18    Court and wonderful staff.  We appreciate your time and

19    attention, and all the effort and vigorous typing that's taken

20    place over the last several weeks.

21          Thank you, Your Honor.

22          THE COURT:  We'll see you back in January.

23

24

25

1                                     –oOo–

2        I certify that the foregoing is a correct transcript from

3   the record of proceedings in the above-entitled matter.  I

4   further certify that the transcript fees and format comply

5   with those prescribed by the Court and the Judicial Conference

6   of the United States.

7

8   Date:  11/10/23            /s/  *Gigi Simcox*
                               United States Court Reporter
9                              262 West Nueve Street
                               San Antonio TX 78207
10                             Telephone:  (210)244-5037

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Gigi Simcox, RMR, CRR*