# EXHIBIT K

Jonathan White                                    May 05, 2022

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3    LA UNION DEL PUEBLO                )
      ENTERO, et al,                     )
 4                                       )
                    Plaintiffs,          )
 5                                       )  CIVIL ACTION
      VS.                                )
 6                                       )  NO.: 5:21-cv-844(XR)
      STATE OF TEXAS, et al,             )  (Consolidated Cases)
 7                                       )
                    Defendants.          )
 8                                       )

 9          ---------------------------------

10                  ORAL DEPOSITION OF

11                   JONATHAN WHITE

12    Designated Representative for the Office of the Texas

13                  Attorney General

14                    MAY 5, 2022

15          ---------------------------------

16        ORAL DEPOSITION OF JONATHAN WHITE, produced as a

17    witness at the instance of the DEFENDANTS, and duly

18    sworn, was taken in the above-styled and numbered cause

19    on May 5, 2022, from 10:02 a.m. to 4:06 p.m. before Miah

20    Parson, CSR in and for the State of Texas, reported by

21    oral stenography, at the Offices of the Attorney General

22    300 W. 15th Street Austin, Texas 78701, pursuant to the

23    Federal Rules of Civil Procedure and the provisions

24    stated on the record or attached hereto.

25
```

```
 1                A P P E A R A N C E S

 2   FOR THE PLAINTIFFS:

 3        ZACHARY DOLLING
          TEXAS CIVIL RIGHTS PROJECT
 4        1405 Montopolis Drive
          Austin, Texas 78741
 5        Phone:  512-474-5073
          Fax:  512-474-0726
 6        zachary@texascivilrightsproject.
          org
 7

 8   FOR THE PLAINTIFFS:

 9        WENDY J.  OLSON
          STOEL RIVES LLP
10        760 SW Ninth Avenue, Suite 3000
          Portland, Oregon 97205
11        Phone:  208-387-4291
          Wendy.olson@stoel.com
12

13   FOR THE DEFENDANTS GREGORY W. ABBOTT, et al:

14        ERIC A. HUDSON
          Office of the Attorney General
15        P.O. BOX 12548 (MC-009)
          Austin, Texas 78711
16        Phone:  512-463-2100
          Fax:  512-457-4410
17        eric.hudson@oag.texas.gov

18

19   ALSO PRESENT:

20   Erin Barnes-OAG
     Hani Mirza-OCA
21

22

23

24

25
```

Jonathan White
May 05, 2022
Page 10

1   documents with you to the deposition today?

2       A.   I did not.

3       Q.   Okay.   Great.   Thank you.   So let's get

4   started.   I understand that you are the chief of the

5   Election Integrity Division at the OAG; is that correct?

6       A.   That's correct.

7       Q.   What is the Election Integrity Division?

8       A.   It's a Division with the attorney general

9   that's tasked with the prosecution of offenses under the

10  election code or election offenses under Texas law.

11      Q.   When was it -- the -- the division established?

12      A.   I believe it was around 2018.   Well, actually

13  let me -- let me take that -- let me walk that back.

14  The Election Integrity Section would have been -- begun

15  in 2018.   The division was popped out approximately a

16  year ago.

17      Q.   That's gonna be something I'm gonna be asking

18  about because there's a lot of nomenclature sort of

19  floating around and I just want to get all of that

20  straight.

21      A.   Yes, sir.   Understood.

22      Q.   For the Election Integrity Division, what was

23  the impetus for that formation as an independent pop out

24  division?

25           MR. HUDSON:   I object to that to the extent

Jonathan White

1   that it would encroach on deliberative process,

2   attorney/client or attorney work product, to the extent

3   that you can respond without encroaching on those, feel

4   free to do so.  Otherwise I'm gonna instruct you not to

5   answer.

6        A.   Yeah, without going into any deliberative

7   process, I think probably the same reason as the

8   Election Integrity Section was formed within the Special

9   Prosecutions Division which is to further focus

10  dedicated resources toward election and integrity issues

11  because they are so complex.

12       Q.   (BY MR. DOLLING)  Does the Election Integrity

13  Division have a specific budget that you know?

14       A.   I'm aware of a budget allocation that is

15  tracked by -- by our Budget Division for Election

16  Integrity.  It was a cost center that was created in

17  2019, but that includes both the investigation unit

18  which is housed actually under a separate division and

19  the Election Integrity Prosecution Division, EID.

20       Q.   When I say Election Integrity Division, are you

21  understanding it to include the investigators and the

22  attorneys?

23       A.   It does not.

24       Q.   It does not?

25       A.   I can explain.

Jonathan White

May 05, 2022
Page 28

1          A.   Insofar as they comprise another category of

2     common offenses we're responsive to those.

3          Q.   Okay.  Are there any suspected offenses under

4     the election code that the OAG simply does not

5     investigate even when there is credible evidence of that

6     offense?

7          A.   I -- I would say not that I'm aware of although

8     there are certain types of offenses that present a

9     particular problems for prosecution.

10         Q.   Can you elaborate?

11              MR. HUDSON:   I'm gonna object to the extent

12    that that will encroach on attorney/client, attorney

13    work product privileges or investigative privileges to

14    the extent that you can respond without encroaching on

15    those privileges you're free to do so.  Otherwise I'm

16    instructing you not to answer.

17         A.   Without going into mental impressions or any

18    deliberative process I can say that the elements of

19    campaign-finance offenses are particularly complex and

20    problematic in the way that the laws are drafted.

21         Q.   (BY MR. DOLLING)  Okay.  So is it fair to say

22    that the OAG has a policy of investigating all credible

23    allegations of an offense under the election code?

24         A.   I think that's probably accurate it's hard to

25    elaborate or nuance that answer without getting into

1   deliberative process.

2         Q.   Okay.   And a sort of same question with respect

3   to prosecutions.   Are there any suspected offenses under

4   the election code that the OAG just does not prosecute?

5             MR. HUDSON:   Same objection.   Same

6   instructions.

7         A.   We do not have any blanket policies about

8   offenses that we don't prosecute.   We evaluate each case

9   based on legal and factual issues and proceed

10  accordingly.

11        Q.   (BY MR. DOLLING)   Is it fair to say that the

12  OAG has a policy of prosecuting offenses under the

13  election code for which it believes there is sufficient

14  evidence to convict?

15        A.   Yes, I think so.

16        Q.   Okay.   And so back to this -- what are we on

17  No. 3, I think.   Back to Exhibit No. 3, you mentioned

18  that it was created for training local election

19  officials, I believe?

20        A.   I don't think I described the purpose exactly,

21  but the purpose is primarily to familiarize elections

22  officials with who we are, what we do, some of the signs

23  for activity that they might recognize and look into to

24  determine whether they feel there is -- are possible

25  offenses that require investigating.   And instruct them

```
 1   administrators sporadically, but those are the type and
 2   quality of referrals that we would like to see.
 3        Q.   Okay.  So we can just put this one aside for a
 4   moment.  So I'm handing you what I marked as Exhibit
 5   No. 4.  This is the Texas Court of Criminal Appeals'
 6   opinion majority opinion and Zena Stephens are you
 7   familiar with the decision in Zena Stephens.
 8                  (Exhibit No. 4 marked.)
 9        A.   Yes, sir.
10        Q.   (BY MR. DOLLING)  And if we can just turn --
11   oh, I might have had an extra page in there.  I'm not
12   sure if your copy has an extra page, but there might be
13   a random extra page.  And if we turn to the last page
14   here, I'm gonna read the holding out here.  We hold that
15   the grant of prosecutorial authority in Section 273.021
16   of the Texas election code violates article 2 Section 1
17   of the Texas Constitution the separation of powers
18   clause; is that correct?
19        A.   Correct.
20        Q.   Could you please summarize the OAG's
21   interpretation of the holding in Stephens?
22                  MR. HUDSON:  Object to the extent that it
23   will call for attorney/client privilege or attorney work
24   product, if you can answer without encroaching on
25   attorney work product or attorney/client privilege
```

1    you're free to do so.  Otherwise I'm gonna instruct you

2    not to answer.

3        A.   I think that's probably beyond this scope of

4    what I prepared to present an interpretation on -- on

5    behalf of the agency, but I do think that I can refer

6    you to our public filings in the case before the CCA and

7    our motion for rehearing which is still currently under

8    consideration.

9        Q.   (BY MR. DOLLING)  So I was gonna ask are you

10   aware that the OAG has moved for reconsideration in

11   Stephens and it sounds like you have -- you are.

12       A.   Yes, sir.

13       Q.   And the motion has not being decided?

14       A.   Correct.

15       Q.   Does the OAG considers Stephens to be

16   controlling law despite the pending motion to

17   reconsider?

18            MR. HUDSON:  Same objection.  Same

19   instructions.

20       A.   Yeah, without getting into I guess deliberative

21   process, I'm -- I'm not sure how to answer your

22   question.

23       Q.   (BY MR. DOLLING)  Okay.  That's fine.  I'm

24   handing you what I've marked as Exhibit No. 5.  This is

25   Chapter 273 of the Texas Election Code.  Please take a

1   moment to look over it and when you're ready turn to

2   section 273.021.

3                    (Exhibit No. 5 marked.)

4        A.  Yes, sir.

5        Q.  (BY MR. DOLLING)  So Section 273.021 reads,

6   Prosecution by the Attorney General Authorized.  The

7   attorney -- Subsection A, the attorney general may

8   prosecute a criminal offense prescribed by the election

9   laws of this state.  And Subsection B, the attorney

10  general may appear before a grand jury in connection

11  with an offense.  The attorney general is authorized to

12  prosecute under Subsection a and Subsection c.  The

13  authority to prosecute prescribed by this subchapter

14  does not affect the authority to arrive from other law

15  to prosecute the same offenses.  Did I read that all

16  correctly?

17       A.  I believe you did.

18       Q.  So does the OAG agree that after Stephens the

19  Attorney General no longer has the authority to

20  independently prosecute offenses under the election code

21  pursuant to section 273.021?

22                    MR. HUDSON:  Same objections concerning

23  privilege, attorney/client, attorney work product,

24  investigative, and deliberative process.  Same

25  instructions.

1        A.  I -- I didn't prepare in terms of the topics in

2   the deposition presented to give an agency wide opinion

3   or interpretation of the Stephens' opinion.

4        Q.  (BY MR. DOLLING)  What is your personal

5   interpretation of the Stephens' opinion?

6             MR. HUDSON:  Same objection, same

7   instructions.

8        A.  I think that would probably be testifying on my

9   own work product or mental impressions about the case

10  and our position.  So I -- I think I may be in the same

11  position.

12       Q.  (BY MR. DOLLING)  Okay.  Does the OAG claim the

13  Attorney General has authority to independently

14  prosecute offenses under the election code pursuant to

15  any other provision of Texas law other than

16  Section 273.021 of the election code?

17            MR. HUDSON:  Same objection, same

18  instruction.  And at the risk of being accused of being

19  a speaking objection I'll just tell you if there's

20  something in the public record concerning the AG's

21  position you're free to comment on that.

22       A.  Yeah, in terms of public record I'm not aware

23  of any authority other than the statutory authority

24  granted in 273.021 that has now been challenged by

25  Stephens to give the Attorney General independent

1    prosecution authority over election offenses.

2        Q.  (BY MR. DOLLING)  Okay.

3        A.  I hope that answers your question.

4        Q.  Thank you.  So going forward I'd like to use

5    the term county prosecutors to refer to a county

6    prosecutor in charge of a county in which an election

7    code offense occurs which I understand could be the

8    county attorney, it could be the district attorney, it

9    could be the criminal district attorney.  So if I use

10   the term county prosecutor, will you understand what

11   I --

12       A.  Yes, sir.

13       Q.  Okay.  Is it accurate to say that after

14   Stephens the OAG needs a county prosecutor's consent to

15   prosecute an offense under the election code that

16   occurred in that prosecutor's county?

17            MR. HUDSON:  Objection.  Same instruction.

18       A.  Yeah, I think we're still in the area where I'm

19   being asked to present an interpretation of the

20   Stephen's opinion in our pending litigation on behalf of

21   the agency which I didn't prepare to do.  I think

22   there's probably a way that I could answer your

23   questions, but I don't think I can answer these specific

24   line of questions.

25       Q.  (BY MR. DOLLING)  Okay.  I think we -- we'll

1  OAG cannot maintain the prosecution because the OAG was

2  independently prosecuting the case?

3       A.  More or less those would take the form of

4  pretrial writ of habeas corpus or a motion to dismiss

5  the indictment and generally the remedy that's being

6  sought by the Defendants is for the entire case to be

7  thrown out.

8       Q.  And that's on the basis of the prosecution

9  being carried out by the OAG's alone?

10      A.  In most cases, yes.

11      Q.  What is -- what is the not most cases?

12      A.  We've gotten challenges based on the fact that

13  we've had anything to do with the case, even if the

14  local district attorneys office consented to the

15  prosecution or was even involved in the investigation

16  and perhaps prosecution as well.  So it opens a door to

17  a whole lot of challenges.

18      Q.  Has the OAG been forced to drop any of those

19  pending prosecutions after Stephens or has it maintained

20  them?

21      A.  I believe that we have maintained those

22  prosecutions pending final resolution of Stephens.  I

23  don't think there are any cases that have been dropped.

24      Q.  And that would encompass, I guess any case that

25  was not -- on Exhibit 6 that was not resolved prior to

Jonathan White

May 05, 2022
Page 39

1     the decisions in Stephens?

2          A.  I think that's correct if I'm understanding

3     your question correctly and -- and what I -- the cases

4     I'm talking about would probably be found on the

5     prosecutions pending list.

6          Q.  Yeah, but there have not been any challenges to

7     resolved cases on the basis of Stephens?

8          A.  Not yet.

9          Q.  Okay.  Does the OAG anticipate that there will

10    be?

11               MR. HUDSON:  Object to the extent that that

12    would encroach on attorney/client privilege or attorney

13    work product.  To the extent you can answer without

14    encroaching on those privileges your free to do so.

15    Otherwise I'm gonna instruct you not to answer.

16          A.  I think I'll need to follow the advice of

17    counsel on that.

18          Q.  (BY MR. DOLLING)  Does the OAG intend to

19    continue to prosecute election code offenses after

20    Stephens?

21               MR. HUDSON:  I object to the extent that

22    that will encroach on attorney/client privilege or

23    attorney work products.  To the extent that you can

24    answer without encroaching on those privileges you're

25    free to do so.  Otherwise I'm instructing you not to

1    answer.

2        A.  I think you could technically say that we're

3    still prosecuting the cases that are pending, certainly

4    even the ones that have been challenged on the basis of

5    Stephens.  Those prosecutions are still pending.  We're

6    still on the position of representing the State of Texas

7    on those offenses and we have a large number of other

8    prosecutions where we are still involved in the

9    prosecution where we're working jointly with district

10   attorneys offices.

11       Q.  (BY MR. DOLLING) Okay.  Has the OAG brought any

12   new prosecutions after Stephens where the prosecution

13   began after Stephens?

14       A.  Let me refresh my memory with the bottom of the

15   list of resolved cases.  I believe the answer to that I

16   believe is no.

17       Q.  Okay.  Thank you.

18           MR. HUDSON:  For purposes of the record

19   Mr. White, can you identify the page that you reviewed

20   to refresh your recollection?

21       A.  Page -- Pages 16 and 17 of Exhibit 6.

22           MR. HUDSON:  Could you identify that by

23   Bates stamp please?

24       A.  States 087338 and 339.

25           MR. HUDSON:  My apologies.

1  know, that sort of thing.

2      Q.  Is it the policy of the OAG to always loop in

3  the county prosecutor?

4      A.  We don't have a hard and fast guideline on

5  that, but it's been a best practice for our group

6  because of resources and looking to leverage local

7  resources wherever possible, wherever we have a DA or I

8  say DA because most circumstances it's a district

9  attorney, but local prosecutor, county prosecutor.  We

10  would try to loop them in to leverage resources and see

11  if they have any willingness to get involved with the

12  case.

13      Q.  Does the OAG ever sort of investigate

14  circumstances, decide that they should be prosecuted and

15  then try to hand it off to the county prosecutor and not

16  take part in the prosecution?

17      A.  I don't think so as such, but, you know, there

18  would be an evaluation of that county's willingness to

19  be involved, available resources to take on an election

20  fraud prosecution, prosecutors with knowledge that the

21  election laws, whether the DA actually has any local

22  political conflict or difficulty with being involved in

23  the case.  And it's, I mean it's a sliding scale with

24  many different parts that would determine how involved a

25  DA could be, but, you know, if a DA told us that he

1   wanted to take lead on the case or wanted to have the

2   case completely and not have us involved then that's

3   what we would do.

4        Q.  Has that ever happened?

5              MR. HUDSON:  Object to the extent that that

6   will encroach on attorney/client privilege and attorney

7   work product doctrine.  To the extent you can answer

8   without encroaching on those privileges you're free to

9   answer.  Otherwise I'm instructing you not to.

10       A.  Limiting my answer to cases that have

11  information in the public record.  I don't recall a

12  case -- well, it would be very rare.  I think that a --

13  think about if I remember your question correctly I may

14  have dumped it.

15       Q.  (BY MR. DOLLING) I can repeat the gist of it.

16  I'm not sure --

17       A.  Yeah, that'd be great.

18       Q.  But basically does -- has the OAG ever decided

19  that circumstances warrant prosecution and then sort of

20  just handed it off to a county prosecutor or the county

21  prosecutor has done it independent of the OAG from that

22  point forward?

23             MR. HUDSON:  Same objection, same

24  instructions.  Go ahead.

25       A.  I can't -- I can't think of a case that is in

1    the public record where that has happened, but I don't

2    think there's anything wrong with that scenario.  I

3    don't think there's anything wrong with us investigating

4    a case and handing it off to a district attorneys office

5    to do what they see fit with the case.

6        Q.  (BY MR. DOLLING)  Would the OAG ever hand it

7    off in that way absent the county prosecutor asking you

8    to hand it off in that way?

9            MR. HUDSON:  Same objection, same

10   instructions.

11       A.  I don't think I can answer that without getting

12   into deliberative process.

13       Q.  (BY MR. DOLLING) Okay.  Has the OAG had any

14   communication with Harris County regarding concerns

15   about fraud related to drive through voting?

16           MR. HUDSON:  I'll object to the extent that

17   that will encroach on attorney/client, attorney work

18   product, investigative privilege, to the extent that you

19   can answer without encroaching on those you're free to

20   do so.  Otherwise I'm instruct you not to answer.

21       A.  Can I clarify by what you mean by Harris

22   County?

23       Q.  (BY MR. DOLLING) Any election official or

24   county prosecutor employee I guess.

25           MR. HUDSON:  Same objection, same

1    instruction.

2        A.   I'm -- I'm not aware of, I guess I don't think

3    I'm prepared to answer that question in terms of any

4    conversations about drive through voting with election

5    officials in Harris County with regard to prosecutors

6    I'm not aware.

7        Q.   (BY MR. DOLLING)   Does the OAG have concerns

8    regarding fraud related to drive through voting?

9            MR. HUDSON:   Same objection.   Same

10   instructions.

11       A.   Follow the advice of counsel.

12       Q.   (BY MR. DOLLING)   Has the OAG had any

13   communications with any election officials including

14   county prosecutors regarding concerns about fraud

15   related to drive through voting?

16           MR. HUDSON:   Same objection, same

17   instruction.

18       A.   Yeah, without going into deliberative process

19   and work product, I don't -- I don't know of anything I

20   can answer to that.

21       Q.   (BY MR. DOLLING)   Has the OAG had any

22   communications with Harris County election officials or

23   county prosecutors regarding concerns about fraud

24   related to 24 hour voting?

25           MR. HUDSON:   Same objections, same

Jonathan White                                    May 05, 2022
                                                       Page 49

1    instructions.

2         A.   I think my answer would be the same on that

3    one.

4         Q.   (BY MR. DOLLING)   Okay.   And then has the OAG

5    had any communications with any election officials or

6    county prosecutors regarding concerns about fraud

7    related to 24-hour voting?

8              MR. HUDSON:   Same objection, same

9    instructions.

10        A.   I think same answer.

11        Q.   (BY MR. DOLLING)   Okay.   Is it accurate to say

12   that the OAG hears about most suspected offenses of the

13   election code from outside referrals, outside of the

14   OAG's office?

15        A.   Absolutely.

16        Q.   Earlier, I think you said that the majority of

17   them come from the Secretary of States office; is that

18   correct?

19        A.   Strong majority.

20        Q.   What is -- how -- if you could, could you put a

21   number on that or percentage wise?

22        A.   I --

23             MR. HUDSON:   Object to form.   Speculation.

24        A.   Yeah, I could put a wide range on it.   I'm ball

25   parking, but certainly over half and it could be as much

```
 1              So to that extent and to the extent that
 2   vote harvesting operations are complex, wide spread,
 3   touch a large number of individuals, focus on soft
 4   targets, elderly voters, sometimes voters with
 5   disabilities.  They could -- it could be challenging to
 6   go in and find out what happened after the fact, as well
 7   as the fact that if vote harvesting is done correctly
 8   the process can be invisible to the voter.
 9        Q.  So the complexity mostly comes from
10   difficulties in the investigative process because of the
11   protections around voting, would you say?
12        A.  I would say that those complexities extend into
13   the prosecution as well.
14        Q.  Okay.  You mentioned that I think it was vote
15   harvesting is wide spread.  Do you mind just elaborating
16   on that?  What do you mean by wide spread?
17        A.  In that context, I was referring to the fact
18   that vote harvesting touches a large number of voters or
19   ballots typically.
20        Q.  Can you clarify what -- maybe put a number or
21   range on what large means in this context?
22             MR. HUDSON:  So I'll object to the extent
23   that that would encroach upon attorney/client, attorney
24   work product, or investigative privileges.  To the
25   extent you can answer without encroaching on those
```

Jonathan White

1    you're free to do so.  Otherwise I'm gonna instruct you

2    not to.

3         A.  From the standpoint of past investigations.  A

4    voter harvester can touch or control anywhere from 50

5    votes to several hundred votes depending on the

6    industriousness and experience of the harvester.

7         Q.  (BY MR. DOLLING)  Has the OAG taken through to

8    conviction a case in which hundreds of votes were

9    touched by a vote harvester?

10        A.  Probably so, although that does not mean that

11   we were able to prove hundreds of votes, bring hundreds

12   of voters on the stand who were able to explain what

13   happened to them, knew what happened to them, positively

14   identified the person that came by.  So typically what

15   we end up litigating in court is a fraction of the

16   activity of a vote harvester.

17        Q.  So that's what you have attempted to prove, but

18   you have not carried through to final verdict on those

19   facts?

20             MR. HUDSON:  Objection; form.

21        A.  I'd say what we attempted to prove is typically

22   what's pled in the indictment, however many counts of

23   offenses were charged that would be a fraction of the

24   total activity that occurred.  And then from there we

25   may reach a plea agreement, which may involve one

1  OAG, well, I suppose you sort of answered this, but how

2  often would the OAG decide to initiate a prosecution

3  after completing an investigation based on a referral?

4       A.  Whenever we made a determination that an

5  offense occurred and that there was sufficient evidence

6  for prosecution.

7       Q.  Does the source of the referral make a

8  difference in deciding to open an investigation?

9              MR. HUDSON:  Object to the extent that that

10  would encroach on attorney/client privilege or attorney

11  work product.  To the extent you can answer that without

12  encroaching on those, you're free to do so.  Otherwise

13  I'm going to instruct you not to answer I'll also

14  include on that investigative privilege.

15       A.  We make decisions based on the strength of the

16  evidence and not the source of referral, but as I said,

17  most of our cases come through SOS, but they do come

18  from varying sources prior to them.

19       Q.  (BY MR. DOLLING)  Currently or after Stephens

20  if the OAG investigates, you know, on the basis of a

21  referral and determines that a prosecution is warranted,

22  how does it go about making that happen?

23       A.  We would now present the case to a district

24  attorneys office and allow them to decide whether to

25  accept the case, reject the case, they would have the

1    option of appointing us as a prosecutor.  If they desire

2    to do that, but the decision ultimately rests entirely

3    currently on under our current policy with local

4    prosecutors.

5         Q.  And with respect to the pending -- you remember

6    we talked about how there are a number of challenges

7    right now post Stephens about pending prosecutions based

8    on Stephens?

9         A.  Yes.

10        Q.  Did the -- has the OAG continued to prosecute

11   those cases independently while awaiting the mandate or

12   has the OAG reached out to the county -- the relevant

13   county prosecutor for each one of those cases and

14   obtained that county prosecutor's consent?

15             MR. HUDSON:  Object to the extent that it

16   would encroach on attorney/client, attorney work

17   product, investigative privileges.  To the extent you

18   can answer that without encroaching on those privileges

19   you're free to do so.  Otherwise, I would instruct you

20   not to answer.

21        A.  The public record in some of these cases will

22   indicate that we have obtained an appointment from local

23   prosecutors in certain cases.

24        Q.  (BY MR. DOLLING)  And that appointment came

25   after Stephens in a case that existed before Stephens?

Jonathan White

May 05, 2022
Page 60

1          MR. HUDSON:  Same objection.  Same

2    instructions.

3       A.  In certain cases, yes.

4       Q.  (BY MR. DOLLING)  Is there a policy at the OAG

5    to reach out to obtain consent in these cases post

6    Stephens?

7       A.  We haven't formulated an official policy on

8    that, but our practice has been where there's an

9    opportunity to obtain appointment or obtain a

10   prosecution from a local prosecutor that we would seek

11   that.

12      Q.  Can you put a number -- out of the pending

13   prosecutions in which the OAG has reached out to a

14   county prosecutor or I guess in how many of the pending

15   prosecutions has the OAG reached out to a county

16   prosecutor to obtain consent?

17          MR. HUDSON:  Object again based on the same

18   privileges to the extent you can answer you can do so

19   otherwise I'm gonna instruct you not to.

20      A.  There are probably only a handful of cases

21   where the public record would indicate that we have

22   taken those actions to the extent that we have had

23   conversations with other prosecutors about proceeding in

24   the case I will follow the advice of counsel.

25      Q.  (BY MR. DOLLING)  In how many of the pending

1    prosecutions reflected on this chart has the OAG been

2    appointed by a county prosecutor to work on a

3    prosecution?

4         A.  Having refreshed my memory States 087336

5    through 339, I'm seeing five cases where I believe a

6    formal order appointing is on file in the public record.

7         Q.  What is a formal appointment?  Is it a

8    document?  Is it reflected in a document?

9         A.  It is.

10        Q.  Are there any county prosecutors in Texas with

11   whom the OAG has a particularly good relationship?

12             MR. HUDSON:  Object to the extent that that

13   would encroach on attorney work product or

14   attorney/client privilege or investigative privilege to

15   the extent that you can respond to that without

16   encroaching on these privileges you're free to do so.

17   Otherwise, I'm gonna instruct you not to.

18        A.  I don't think I can characterize relationships

19   without getting into privilege materials, but if you do

20   look at our prosecutions spreadsheets so the majority of

21   counties where we have prosecuted cases indicate a

22   working relationship with local prosecutors.

23        Q.  (BY MR. DOLLING)  Are there any county

24   prosecutors with whom the OAG works more frequently

25   beyond what you just mentioned as reflected in Exhibit

1    No. 6?

2              MR. HUDSON:   Same objection, same

3    instructions.

4         A.   No, I don't think the records indicate that.   I

5    don't think you'll see an indication of that in the

6    records, no.

7         Q.   (BY MR. DOLLING)   Would your answer be the same

8    to whether there are any county prosecutors who reach

9    out to the OAG for advice about election code offenses?

10             MR. HUDSON:   Same objection, same

11   instructions.

12        A.   I don't know that you'd be able to ascertain

13   that from the records they would be included in counties

14   probably that we have had prosecutions, but they would

15   be a subset.

16        Q.   (BY MR. DOLLING)   Okay.   Can you elaborate on

17   that at all?

18             MR. HUDSON:   Same objection, same

19   construction.

20        A.   Trying to stick with what's public record

21   without going into privilege material.   I think I can

22   just say that what I've already said that an attorney,

23   if a district attorney reaches out to us and a

24   prosecution results in that case that would be indicated

25   on the spreadsheet and in the sense that that case would

Jonathan White                                          May 05, 2022
                                                        Page 63

 1   be present.  But again, that would probably be a subset
 2   of cases and there wouldn't be an indicator indicating
 3   what type of communication we had or relationship we
 4   might have had with a district attorney on this list.
 5        Q.  (BY MR. DOLLING)  Okay.  Before the Court of
 6   Criminal Appeals decision in Stephens, did the OAG ever
 7   investigate suspected offenses under the election code
 8   on the basis of its own information as opposed to based
 9   on a referral from one of the sources we talked about
10   earlier?
11               MR. HUDSON:  Objection based on attorney/
12   client privilege, work product investigative privilege.
13   To the extent that you can answer without encroaching on
14   these privileges, you're free to do so.  Otherwise, I'm
15   instructing you not to.
16        A.  I can't think of any non-privileged answer to
17   that question.  I have to follow the advice of counsel,
18   but I have said previously and I have testified before
19   the legislature that the vast majority of our
20   prosecutions, most if not all, have resulted from
21   referrals to our office and that we are generally a
22   proactive, not a proactive a reactive unit in terms of
23   investigating complaints that come to us.
24        Q.  (BY MR. DOLLING)  Okay.
25        A.  There is, you know, to the extent that fraud

1  takes place and it's not referred to our agency, you

2  know, it may well go not investigated and a referral

3  typically needs to be made to us for us to look into a

4  case.

5       Q.  And so to the extent that the OAG operates

6  proactively in this context you feel like you cannot

7  answer that question.

8       A.  I can say this, there is nothing to preclude us

9  from being proactive in attempting to detect and

10 investigate crimes except for the limitations that we

11 have with bandwidth and the fact that we have our hands

12 full with the cases that come in to us and we've always

13 been a responsive unit.

14      Q.  Does the OAG engage in any sort of

15 communications that for lack of a better word solicit

16 cases from county prosecutors that say we're, like we're

17 here to help you prosecute cases?

18           MR. HUDSON:  Object to the basis.  To the

19 extent that that would encroach on attorney/client

20 privilege, attorney work product, investigative

21 privilege, joint prosecution privilege or any other

22 applicable privilege, I instruct you not to answer.  To

23 the extent that you can answer without encroaching on

24 those you're free to do so.

25      A.  It is not been our general practice to do so.

Jonathan White

May 05, 2022
Page 65

1          Q.   (BY MR. DOLLING)   Okay.   Thank you.   And then

2    sort of same questions.   After Stephens, has the OAG

3    ever investigated a suspected offense under the election

4    code on the basis of its own information?

5               MR. HUDSON:   Same objection, same

6    instruction.

7          A.   I'm not aware of any.

8          Q.   (BY MR. DOLLING)   Okay.   Thank you.   Okay if we

9    could turn back to Exhibit No. 5 which was Chapter 273.

10   Can we go to 273.001b which is right at the top?

11         A.   Yes, sir.

12         Q.   Okay.   So Section 273.001 is entitled,

13   Investigation of Criminal Conduct; is that correct?

14         A.   Yes, sir.

15         Q.   I'd like to go to Subsection b which reads, a

16   district or county attorney having jurisdiction or the

17   attorney general may conduct an investigation on the

18   officers own initiative to determine if criminal conduct

19   occurred in connection with an election; is that

20   correct?

21         A.   That's correct.

22         Q.   Does the OAG interpret election code 273.001b

23   to permit it to conduct investigations of suspected

24   offenses under the election code independent of any

25   request from a county prosecutor?

Jonathan White

May 05, 2022
Page 66

1           MR. HUDSON:  Object to the extent that

2   encroach upon attorney/client attorney work product

3   investigative privilege.  To the extent you can answer

4   without addressing that without encroaching on those

5   privileges, you're free to do so.

6           A.  I didn't prepare to give a position of the OAG

7   on an interpretation of that provision.  However, I just

8   testified that well nothing would preclude our office

9   from investigating on our own initiative.  It's not our

10  practice to do so generally and we -- we prefer

11  referrals to come in through our established referral

12  process that's how we prefer to approach a case.

13          Q.  (BY MR. DOLLING)  Okay.  I think you might have

14  said this earlier, but is it the OAG's policy typically

15  to loop in the county prosecutor for the county in which

16  the suspected offense occurred if the OAG is undertaking

17  an investigation in that county?

18          A.  That's been our practice more and more over

19  recent years and particularly now since Stephens that's

20  been a practice.

21          Q.  Before Stephens would be the OAG, I -- you sort

22  of implicitly said it just there.  Would the OAG ever

23  carry out an investigation on its own initiative without

24  the involvement of the relevant county prosecutor?

25          A.  Well, I understand 273.001 to be deferring to

1  the referral process for an investigation Subsection a

2  covers the method that two or more registered voters per

3  territory can present affidavits alleging violations to

4  either the county or district attorney or us.

5  Subsection b covers an officers own initiative should he

6  learn of an election offense under some different

7  circumstances.  Subsection d covers our most common and

8  preferred method which is referral from the Secretary of

9  State under Section 31.006.  We've always relied on them

10  to sort of perform that in take process for us and so

11  that's -- that is our preferred method and if I didn't

12  answer a portion of your question, please feel free to

13  repeat that.

14      Q.  No, I think you -- you answered me.  Before

15  Stephens, had the OAG ever carried out an investigation

16  despite the relative county prosecutor opposing the

17  investigation?

18      A.  I -- I don't have any recollection of a county

19  prosecutor opposing a prosecution.

20      Q.  Has the OAG modified its policies and practices

21  after Stephens with respect to how it conducts

22  investigations into suspected offenses under the

23  election code?

24          MR. HUDSON:  Object to the extent that that

25  would encroach on the investigative privilege sources

Jonathan White

May 05, 2022
Page 68

1   methods etc. To the extent and also attorney product and

2   attorney/client privilege, to the extent that you can

3   respond to that without encroaching on those privileges

4   you're free to do so.  Otherwise, I'm gonna instruct you

5   not to answer.

6        A.  We have not hammered out concrete policies, but

7   a best practice now is to involve a district attorney

8   early on in an investigation when we can give him a

9   picture or her, I'm sorry, a picture of the activity

10  that -- that may have occurred and gauge interest in

11  prosecution and this is something that DPS and Texas

12  Rangers generally institute and it's a conservation of

13  resources policy to where if there is no avenue for

14  prosecution that you generally don't want to invest a

15  tremendous amount of resources in that case when you

16  have other cases to be investigating.

17       Q.  (BY MR. DOLLING)  Has the OAG initiated any

18  investigations after Stephens?

19       A.  I believe so. Yes.

20       Q.  And have any of those investigations been

21  initiated without looping in the relevant county

22  prosecutor?

23            MR. HUDSON:  Object to the extent that that

24  would encroach on investigative privilege, attorney work

25  product, attorney/client privilege.  To the extent you

Jonathan White                                              May 05, 2022
                                                            Page 69

1    can answer without encroaching on those privileges

2    you're free to do.

3         A.   I'm not aware, but again I'll refer to my

4    answer previously which is that at some point in the

5    investigation our best practice would be to take what we

6    know to a local prosecutor at some point and gauge

7    prosecutability [sic] and that would be at a -- that

8    would be at a -- there's no defined point in an

9    investigation where that conversation would take place.

10        Q.   (BY MR. DOLLING)  Are there -- is there -- are

11   there any reasons that the OAG would choose to delay

12   taking investigation to the relevant county prosecutor

13   rather than looping them in earlier?

14             MR. HUDSON:  Same objection, same

15   instruction.

16        A.   I think that would be deal directly with our

17   deliberative process so I'll follow the advice of

18   counsel.

19        Q.   (BY MR. DOLLING)  For example, if a county

20   prosecutor was known to not be enthusiastic about

21   prosecuting election code offenses, would that impact

22   your decision to loop the county prosecutor into the

23   process?

24             MR. HUDSON:  Objection to the extent that

25   would encroach on attorney/client, attorney work product

Jonathan White

May 05, 2022
Page 70

1   investigative privilege.  I instruct you not to answer.
2   Since you can answer without encroaching on the
3   privilege you are free to do so.  I also object based on
4   form, foundation, and incomplete hypothetical.
5       A.  I think I'd have to refer back to my previous
6   answer which without getting into our deliberative
7   process I could only say another privileged information
8   I can probably just say that if it becomes evident at
9   some point in an investigation that there is no path to
10  prosecution should we be able to establish the elements
11  of offense that our best practice would be to keep that
12  in mind as we make decisions based on expenditures
13  investigative resources in that matter.
14      Q.  (BY MR. DOLLING)  After Stephens, does the fact
15  that a county prosecutor does not consent to the
16  prosecution qualify as no path to prosecution?
17          MR. HUDSON:  Same objection, same
18  instruction.  Additionally objection; form.  Foundation.
19  Objection; form and incomplete hypothetical.
20      A.  I would say because the Stephens' decision is
21  not yet final there's still certain amount of that that
22  is influx and that we're waiting to find out.
23      Q.  (BY MR. DOLLING)  Okay.  Have OAG investigators
24  used warrants in carrying out investigations on the
25  OAG's own initiative?

Jonathan White                                                    May 05, 2022
                                                                  Page 71

1           MR. HUDSON:  Objection to the extent that

2    it would encroach upon investigative privilege

3    attorney/client privilege and attorney work product

4    privilege.  I instruct you not to answer to the extent

5    you can answer without encroaching on those privileges

6    you're free to do so.

7           Q.  (BY MR. DOLLING)  I'm not looking for any

8    specific ongoing criminal investigatory details, just in

9    general.

10          A.  Sure.  I'm -- I'm concerned about the use of

11   the phrase, on the OAG's own initiative being a context

12   from what we see in the election code which is

13   pertaining to the type of referral that we get.  And so

14   we consider that when we receive a referral that we are

15   investigating that based on that referral and not on our

16   own initiative.  So we don't consider any of the

17   investigations that we do that are responsive to an

18   election complaint to be on our own initiative.

19          Q.  Well, let me clarify by saying, does the --

20   have OAG investigators used warrants in carrying out

21   investigations when not in cooperation with the county

22   prosecutor?

23          MR. HUDSON:  Same objection, same

24   instruction and just to be clear I understand that

25   counsel has clarified the question to me generally not

```
 1    in a specific instance.
 2        Q.  (BY MR. DOLLING)  Yeah.
 3        A.  I'm still a little iffy about your
 4    characterization of not with a local district attorney's
 5    cooperation or involvement or whatever the word that you
 6    used was.  I can say that we have used search warrants
 7    in investigations that were opened in connection with a
 8    complaint that we received under Chapter 273.001.
 9        Q.  Okay.  Is the same true of using raids in
10    carrying out investigations?
11            MR. HUDSON:  Same objection, same
12    instruction.
13        A.  We've never used what has been characterized by
14    us or anyone else to my knowledge as a raid and I'm not
15    sure what that would entail on the context of an
16    election investigation.
17        Q.  (BY MR. DOLLING)  I suppose an example might be
18    after obtaining a warrant, law enforcement officers go
19    to a location and collect evidence on the basis of that.
20        A.  We wouldn't consider executing a search warrant
21    to obtain evidence or an arrest warrant for that matter
22    to be a raid.
23        Q.  Okay.  But has the OAG utilized that sort of
24    procedure in investigations?
25        A.  If we've -- yes, if we executed a search
```

1   warrant or if we have obtained a search warrant, we do

2   that with the intention of executing the search warrant

3   whether that's for data or whether that's to collect

4   evidence.

5        Q.  Have OAG investigators interviewed witnesses in

6   carrying out investigations?

7        A.  Of course.

8        Q.  Have OAG investigators interviewed suspects in

9   carry out investigations?

10        A.  Yes, to the extent that those suspects are

11   willing to talk which --

12        Q.  Understood.  Okay.  So can we now go back to

13   Exhibit 5 and turn to 273.002.

14        A.  Sure.

15        Q.  And for some reason it starts subsections with

16   numbers instead of letters this time, but if we look at

17   Section 273.0021 it says, reading the -- the preliminary

18   language.  For an election in which the attorney general

19   is conducting an investigation the attorney general may

20   direct the county or district attorneys serving a county

21   in the territory covered by the election to conduct or

22   assist the attorney general in conducting the

23   investigation; is that correct?

24        A.  Yes, sir.

25        Q.  Has the OAG ever used this authority to direct

1   a county prosecutor to conduct an investigation without

2   the OAG's involvement?

3              MR. HUDSON:  Renewed the privilege

4   objection, same instruction.

5      A.  To the extent that there may be a public record

6   of this request I -- we have never to my knowledge

7   directed a county or district attorney to conduct or

8   assist an investigation or prosecution.  However, it's

9   possible that we have used, referenced this provision,

10  not use the provision, but referenced the provision in a

11  request that was clearly a request and not a direction

12  for a local district attorney to assist in an

13  investigation.

14     Q.  (BY MR. DOLLING)  Could you put a number on how

15  often that happens?

16     A.  Almost never.

17     Q.  Okay.  And when it has happened, have the

18  county attorneys complied or have you had resistance?

19             MR. HUDSON:  Objection; form.

20  Argumentative.

21     A.  I don't recall ever having resistance because

22  probably the way that we approach it with a soft touch.

23     Q.  (BY MR. DOLLING)  I think you've already

24  answered this, but I just want to be sure.  Has the OAG

25  ever used the authority in 273.0021 to direct a county

1    prosecutor to assist the OAG in conducting an

2    investigation?

3         A.   My answer would be the same.

4         Q.   Soft touch, but not directing?

5         A.   Correct and I'll also refer back to a previous

6    answer that I gave.  District attorney's offices have

7    very limited ability and resources in the investigation

8    department.  So that's another reason that this section

9    has not been frequently used.

10        Q.   Okay.  Does the OAG interpret any other

11   provision of Texas law to give it similar authority to

12   direct a county prosecutor to take actions regarding

13   suspected offenses under the election code?

14             MR. HUDSON:  Objection to the extent that

15   that would encroach upon attorney/client privilege,

16   attorney work product doctrine, investigative privilege,

17   or any other applicable privileges.  I instruct you not

18   to answer.  To the extent you can answer without

19   encroaching on those you're free to do so.

20        A.   I'll follow that advice and say that I am not

21   aware of any other authority in Texas law that

22   authorizes the attorney general to direct local

23   prosecutors to investigate or prosecute.

24        Q.   (BY MR. DOLLING)  Okay.  Thanks.  That reminds

25   me I'd like to just step back very quickly to our

1    discussion about the OAG investigating suspected

2    offenses and, you know, we talked about how best

3    practice is to loop the county prosecutor in earlier

4    rather than later.  Does the OAG consider any Texas law

5    other than Chapter 273 to give it authority to

6    independently investigate suspected offenses under the

7    election code?

8              MR. HUDSON:  Same objection, same

9    instruction.

10       A.  I think I answered that question earlier that,

11   again, while I'm not prepared to enter law on behalf of

12   the Attorney General's office I'm not aware of any other

13   authority under Texas law to independently prosecute

14   election offenses.

15       Q.  (BY MR. DOLLING)  Or investigate election

16   offenses?

17       A.  Oh, I'm sorry.  Our officers are state police

18   with statewide jurisdiction to investigate crimes and as

19   state police officers, we have many other divisions

20   within the criminal investigation division that that

21   prosecute a variety of different crimes and they do so

22   under the same type of authority as DPS has as state

23   wide peace officers.  So I'm not familiar with the exact

24   provisions of law that they grant that authority to

25   state police, but there would be independent authority

1   for investigations of general crimes under other law.

2        Q.   Okay.  And we talked about this earlier, but I

3   just like to, you know, clarify.  The majority of

4   investigations are carried out in -- to some degree with

5   cooperation from the county prosecutor; is that correct?

6        A.   Could you repeat the first part of your

7   question?

8        Q.   The -- would you say that the majority of

9   investigations into election code offenses are carried

10  out with the cooperation of a county prosecutor?

11       A.   I think to some degree that's probably true and

12  just to present a case to a grand jury requires the

13  permission of a local prosecutor to get time before his

14  grand jury and present that case and actually the grand

15  jury doesn't belong to the prosecutor, but access to the

16  grand jury is for practical purposes controlled by that

17  District Attorney's Office.  So the grand jury is its

18  own entity that's appointed by a district judge, but

19  yes, in answer to your question I would say that we

20  generally have some form of cooperation in every case

21  that we prosecute from the local prosecutor's office.

22       Q.   And similar series of question from before.

23  When carrying out these sort of joint investigations, do

24  the OAG and county prosecutors utilize warrants during

25  that process of investigation?

1   general may appear before a grand jury in connection

2   with an offense the attorney general is authorized to

3   prosecute under Subsection a.   Subsection d -- c, the

4   authority to prosecute prescribed by the subchapter does

5   not affect the authority to arrive from other law to

6   prosecute the same offenses.   Did I read that correctly?

7        A.   I believe you did, sir.

8        Q.   I don't want to ask too many redundant

9   questions.   So just give me a moment here.

10       A.   No problem.

11       Q.   Prior to Stephens, did the OAG ever prosecute a

12  suspected offense under the election code within a

13  county despite that county's prosecutors office knowing

14  about it and opposing the prosecution?

15            MR. HUDSON:   Objection; form.   Asked and

16  answered.   Objection.   Same objections concerning

17  privilege, same instructions.

18       A.   My answer to that question before is, as far as

19  I'm aware, I don't know of any instance where a local

20  district attorney has opposed our prosecution.

21       Q.   (BY MR. DOLLING)   I know that we spoke about

22  how the OAG's office is waiting for the mandate to issue

23  in Stephens, but outside of Section 273.021, do you know

24  or what provision of Texas law allows the OAG to work

25  with county prosecutors to prosecute an offense?

Jonathan White

May 05, 2022
Page 80

1              MR. HUDSON:  I'll object to the extent that

2    that would encroach upon attorney/client privilege,

3    attorney work product doctrine, deliberative process

4    privileges.  To the extent you can answer without

5    encroaching on those you're free to do so.  I will also

6    instruct you not to.

7         A.  Yeah, I don't believe that was a topic that I'm

8    prepared to answer on behalf of the attorney general,

9    but from my knowledge of the law, I'm just trying to

10   recall your question specifically.  Could you help me

11   with it?  I'm sorry, just the gist of the question.

12        Q.  (BY MR. DOLLING)  I'm just curious, it doesn't

13   I mean like, I'm just curious if you know what provision

14   of law allows the office of the attorney general to

15   work --

16        A.  Yes, I'm sorry.  Recalling your previous

17   question.

18              MR. HUDSON:  Objection.  Same instruction.

19        A.  Subject to those, I believe it's Article 2.07

20   of the Code of Criminal Procedure describes the process

21   for us to be appointed as a district attorney pro tem.

22   When a district attorney has a conflict or other reason

23   that he or she cannot be involved in a case, that

24   district attorney can recuse, we may be appointed by a

25   district judge to serve as district attorney pro tem.

1   We step into the shoes of the district attorney and

2   prosecute under a district attorney's authority.

3        Q.   (BY MR. DOLLING)   So have situations in which

4   the OAG -- so do you interpret the law to require that

5   the county prosecutor has to be unavailable for some

6   reason before the OAG can do that?

7             MR. HUDSON:   Same objection, same

8   instruction.

9        A.   Again, that's one, just one route under Article

10  2.07, but the ways that you can get there are the

11  attorney -- if the district attorney has a conflict that

12  they need to recuse from the case, there might be

13  another element, and then the final element was

14  unavailable.  We typically don't see the unavailability

15  as much as we see the personal conflict, political

16  conflict come into play with the district attorney and

17  that's typically the process that happens under those

18  circumstances which we normally see which is a motion to

19  recuse filed by the district attorney with the district

20  court, the district court then signing an order

21  appointing a DA pro tem, and appointing us or it could

22  be another local prosecutor as the district attorney pro

23  tem in that matter.

24       Q.   (BY MR. DOLLING)   Earlier -- earlier when we

25  were talking about how in a number of these pending

1    prosecutions the OAG had been appointed by a county

2    prosecutor, were you referring to this sort of

3    situation?

4         A.   In the cases that I identified off of

5    Exhibit 6, I was referring in those cases.  I believe

6    all of those were yes, an order appointing a district

7    attorney pro tem for the reason of a district attorney

8    having to recuse due to a local conflict.

9         Q.   When you say political conflict, a local

10   conflict, can you give me an example?

11             MR. HUDSON:  Objection to the extent that

12   that would encroach on attorney/client privilege,

13   attorney work product, or investigator privilege.

14   Instruct you not to answer to the extent you can answer

15   without encroaching on those privileges you may do so.

16        A.   I can give you an example without identifying

17   any particular case in order to preserve any privileges

18   and that might be where a local district attorney

19   would -- would be in a position where the, you know, the

20   target of the investigation is another political

21   official or elected official in the county.  A person

22   who he may have some sort of relationship with or a

23   politically connected person in the county that would

24   cause a significant conflict for the district attorney

25   or the district attorney's office to be involved in the

1    case.

2        Q.   (BY MR. DOLLING)   Has this process ever been

3    used where the basis for the recusal was political

4    unpopularity of the -- the prosecution?

5            MR. HUDSON:   Same objection, same

6    instruction.

7        A.   From -- right, with -- with limiting myself to

8    the public record no, I'm not aware of unpopularity of

9    prosecuting election fraud offenses being used

10   previously as a basis for a DA's recusal.

11       Q.   (BY MR. DOLLING)   Okay.   I'm gonna hand you

12   what I'm marking as, I think, are we on 7?   And this is

13   Texas government code Section 402.028 entitled

14   assistance to prosecuting attorneys; is that correct?

15           (Exhibit No. 7 marked.)

16       A.   Yes, sir.

17       Q.   (BY MR. DOLLING)   So I'm just gonna read it out

18   quickly.   Subsection a says, at the request of a

19   district attorney, criminal district attorney, or county

20   attorney, the attorney general may provide assistance in

21   the prosecution of all manner of criminal cases,

22   including participation by an assistant attorney

23   general, as an assistant prosecutor when so appointed by

24   the district attorney, criminal district attorney, or

25   county attorney.   Subsection b, a district attorney,

```
 1  criminal district attorney, or county attorney, may
 2  appoint and deputize an assistant attorney general, as
 3  assistant prosecutor to provide assistance in the
 4  prosecution of criminal cases including the performance
 5  of any duty imposed by law on the district attorney,
 6  criminal district attorney, or county attorney.
 7  Subsection c, nothing in this section shall prohibit an
 8  assistant attorney general from appointment as attorney
 9  pro tem under the provisions of article 2.07 code of
10  criminal procedures; is that correct?
11       A.  Yes, sir.
12       Q.  And so --
13            MR. HUDSON:  I might just put out on the
14  record for you.  I think the court reporter's losing her
15  mind a little bit trying to keep up with you.
16       Q.  (BY MR. DOLLING)  I can slow down.
17            MR. HUDSON:  Yeah, I'm not trying to step
18  on you, she's having some problems.
19       Q.  (BY MR. DOLLING) Just want to try to get
20  through as quickly as possible.  I will slow down in the
21  future.  I apologize.  So Subsection c is what we were
22  just talking about, the attorney pro tem.
23       A.  Yes, sir.
24       Q.  (BY MR. DOLLING) I'd like to talk about
25  Subsection a and b.  Does the OAG interpret the Texas
```

Jonathan White

May 05, 2022
Page 85

1  government code 402.028 to give it authority to

2  prosecute a suspected offense under the Texas election

3  code when requested to do so by a county prosecutor?

4       MR. HUDSON:  Object to the extent that that

5  would encroach on attorney/client privilege, attorney

6  work product doctrine, or investigative privilege.  To

7  the extent you can respond without encroaching on these

8  privileges you're free to do so.  Otherwise, I'm

9  instructing you not to answer.

10      A.  Right.  And without -- to remain consistent,

11  this isn't one of the areas I'm prepared to give an

12  interpretation of -- of the office of the attorney

13  general on a specific law, but my understanding of the

14  law is I believe that is correct.

15      Q.  (BY MR. DOLLING)  Has the office of the

16  attorney general, after Stephens been appointed to

17  prosecute an election code related offense under

18  Subsection a or b as opposed to c which is what we were

19  talking about earlier the pro tem provision?

20      A.  I don't know that we have any such agreements

21  on the public record.  And without giving the impression

22  that there aren't any agreements to proceed corporately

23  in cases, I want to remain consistent and stick with

24  what is publicly available and I don't believe that we

25  have any filed deputization's on the record in any of

1    assistant attorney general as an assistant prosecutor.

2         Q.  And we sort of covered this before, but has --

3    are any assistant attorney general's currently appointed

4    under Subsection A or B to assist in the prosecution of

5    a pending prosecution by a county prosecutor?

6         A.  I don't believe we have deputization on file.

7    I believe that the situations where we have been

8    formally appointed have been under a code of criminal

9    procedure Article 2.07 as district attorney pro tem.

10        Q.  Would it be accurate to say that the list of

11   pending prosecutions on Exhibit 6 include cases in which

12   the OAG has been formally appointed pro tem and

13   informally appointed via some sort of operation of

14   402.028 Subsection A or B?

15        MR. HUDSON:  Object to the extent that it

16   calls for attorney/client privileged, attorney work

17   product, or investigative privilege.  To the extent you

18   can answer without encroaching on these privileges

19   you're free to do so.  Otherwise, I instruct you not to

20   answer.

21        A.  I wouldn't want to characterize the -- the

22   communications or -- or understanding in any specific

23   way, but we are working cooperatively with district

24   attorneys in a number of these cases.

25        Q.  (BY MR. DOLLING)  Are there any of these cases