# EXHIBIT T



# In The Matter Of

**La Union Del Pueblo Entero, et al.,**

**Plaintiffs**

**v**

**State Of Texas, et al.,**

**Defendants**

## CASE

**5:21-cv-844**

## Date

**4-28-2022**

## Witness

**Brian Keith Ingram, J.D.**

**Certified Copy Transcript**

National Court Reporters Inc.  ·  888.800.9656  ·
NationalCourtReporters.com
NCRNetwork@nationalcourtreporters.com
Serving Legal Professionals From Coast To Coast and Internationally

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 3 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 1 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 1 |

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                         SAN ANTONIO DIVISION

   LA UNION DEL PUEBLO         §
   ENTERO, ET AL.,             §
          Plaintiffs,          §  Civil Action No.
                               §  5:21-cv-844 (XR)
   VS.                         §  (Consolidated Cases)
                               §
   STATE OF TEXAS, ET AL.      §
          Defendants.          §
   ****************************************************

                       ORAL DEPOSITION OF
                     BRIAN KEITH INGRAM, J.D.
                  CORPORATE REPRESENTATIVE FOR THE
                   TEXAS SECRETARY OF STATE OFFICE
                          APRIL 28, 2022

   ****************************************************
```

     ORAL DEPOSITION OF BRIAN KEITH INGRAM, J.D.,

CORPORATE REPRESENTATIVE FOR THE TEXAS SECRETARY OF

STATE OFFICE produced as a witness at the instance of

the Plaintiffs and Plaintiff-Intervenors, and duly

sworn, was taken in the above-styled and numbered cause

on the 28th day of April 2022, from 9:03 a.m. to

3:18 p.m., before Caroline Chapman, CSR in and for the

State of Texas, reported by Computerized Stenotype

Machine, Computer-Assisted Transcription, held at the

rice Daniel Sr State Office Building, 209 West 14th

Street, Austin, Texas, and via web-based conference

pursuant to the Federal Rules of Civil Procedure.

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 4 of 18

5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 147

147

1              MS. HUNKER:  Objection.  Asked and

2     answered.

3          A.   No.

4          Q.   Are you aware of any investigation into illegal

5     voting, election fraud, or other criminal activity in

6     connection with voting with the use of an assister in

7     Texas?

8              MS. HUNKER:  Objection, form.

9          A.   Yes.

10         Q.   How many instances are you aware of?

11         A.   Well, most of the complaints that come to our

12    office that we refer to the Attorney General have to do

13    with the mail voting process and a lot of those are

14    charges of illegal assistance, so I don't know precisely

15    how many and I can't talk about particulars because they

16    are over with the Attorney General and they are not

17    public record under 31.006, but it would -- I would say

18    at least 10 or 15 illegal assistance complaints have

19    been referred over there, maybe only 10, maybe 11, I

20    don't know.  It is somewhere in that neighborhood.  And

21    then, of course, we have had a few complaints along the

22    way in the last 10 years of persons who complain that

23    the assistance that was given in-person was illegal.

24         Q.   And so you say at least or somewhere between 10

25    and 15 that you have referred to the Attorney General's

Entero v Texas 5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

147 Brian Keith Ingram JD

Page: 147

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 5 of 18

5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 148  
148

1  Office -- or your office has referred to the AG's
2  Office; is that correct?
3      A.  Right.  In the last couple years.  This is not
4  just in one election.
5      Q.  And when say, "over the last couple of years,"
6  can you give me a more precise time frame?
7      A.  Well, I don't know.  I would have to go look at
8  the complaint log.  But I would say at least since 2020,
9  election, general election in 2020 that we have had
10  probably a good 10 or 15.
11      Q.  And so it is your testimony that, since
12  approximately 2020 through present, your office is
13  referred approximately between 10 and 15 complaints
14  about unlawful assistance with vote by mail to the
15  Attorney General's Office for further investigation; is
16  that right?
17      A.  I agree that that's the number that I have got
18  in my head.  I would have to look at the complaint log
19  and confirm it.
20      Q.  And so you use the term "complaint log," can
21  you tell me what that is?
22      A.  It is a log of complaints that we get, election
23  log complaints.
24      Q.  And is that a formal written document that your
25  office keeps?

Entero v Texas 5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

148 Brian Keith Ingram JD  
Page: 148

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 6 of 18

5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 149  
149

1   A.   Yes.

2   Q.   Is that a document that, to your knowledge, has

3   been produced to the plaintiffs in discovery in this

4   case?

5   A.   I would be surprised if it had.  It has

6   confidential information in it, but it might.

7   Q.   So if I were to use the term "complaint log"

8   would that have a specific meaning to the folks in your

9   office?

10   A.   It would.

11   Q.   And is there only one complaint log that is

12   kept by your office?

13   A.   Should be.

14   Q.   How is that document updated?

15   A.   By my assistant when the complaints come in.

16   Q.   And so walk me through that process if you

17   would, please.

18   A.   A complaint comes in, it is recorded in the

19   complaint log, it is scanned and emailed to me for

20   review.

21   Q.   And do you review every complaint that does

22   come in?

23   A.   I do.

24   Q.   What happens after you conduct that review?

25   A.   Either a disposition letter will be put

Entero v Texas 5:21-cv-844 (XR)  
4/28/2022

Entero v Texas  
National Court Reporters Inc. 888.800.9656

149 Brian Keith Ingram JD  
Page: 149

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 7 of 18

| | | |
|---|---|---|
| 5:21-cv-844 (XR) <br> 4/28/2022 | **Entero v Texas** <br> NATIONAL COURT REPORTERS INC 888.800.9656 | Brian Keith Ingram JD 150 <br> 150 |

1   together by my assistant and mailed to the complainant
2   or it will be assigned to an attorney for either
3   referral to the Attorney General or for a letter back to
4   the complainant.
5       Q.  Who makes the decision, the ultimate decision
6   about whether it is issued a -- whether a disposition
7   letter is issued or if it is referred it an attorney for
8   further follow-up?
9       A.  Me.
10      Q.  Anybody else?
11      A.  No.
12      Q.  What type of information would appear on the
13  complaint log for each complaint that is sent in to your
14  office?
15      A.  I am not sure.  I haven't ever seen the
16  document myself, so I don't know all of the boxes that
17  it has, but it will have -- generally, it will have the
18  date the complaint was received, the nat -- the broad
19  general nature description of the complaint.  The person
20  bringing the complaint and I think usually the person
21  complained of.  It will also have --
22      Q.  Any others?
23      A.  -- a column for attorney assigned and then
24  disposition.
25      Q.  Thank you.  And forgive me, please, for

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 8 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 151 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 151 |

1    speaking over you.
2              Any other information that you could think
3    of that might be captured on that document?
4         A.   Like I said, I don't know.  I haven't seen the
5    document myself.  I think those are the categories.
6         Q.   Having never seen the document, do you have any
7    information about whether it is in fact complete with
8    every complaint that has come in or not?
9              MS. HUNKER:  Objection, form.
10        A.   I believe it to be complete at least for the
11   last several years.  It has in the past been the
12   responsibility of the legal -- paralegal, legal
13   assistant to keep up with that document.  Our legal
14   assistant recently left us and so it's -- my assistant
15   has been doing it.  And I am pretty confident that the
16   legal assistants that we have had in the last four or
17   five years have done a good job of documenting every
18   complaint, so that's what I would say about that.
19        Q.   And so sitting here today, you have reason to
20   believe that if a complaint is submitted to your office
21   about some unlawful voting activity, the -- that
22   complaint has been recorded on the complaint log and a
23   scan of it has been saved to your system; is that fair?
24             MS. HUNKER:  Objection, form.
25        A.   I believe so.

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 9 of 18

5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
NATIONAL COURT REPORTERS INC 888.800.9656

Brian Keith Ingram JD 152
152

1   Q.  Ms. Hunker, a this point, I do believe the
2   witness testified he would be surprised if it were
3   produced in discovery.  I will make a formal request
4   that we do obtain a copy of that and your office try to
5   produce it to us.  I recognize that there might be,
6   based on the witness' testimony, some material that will
7   require redaction.  But we, obviously, take no position
8   until we have seen it.  But if you have to produce it in
9   a redacted form of the privilege log, please do so.
10          MS. HUNKER:  I will note your request and
11  do inquiries into the matter.  However, to the extent
12  that it has confidential information, particularly, if
13  that information cannot be redacted without comprising
14  the document or can't be redacted at all, we would be
15  alleging privilege.
16          MR. KANTERMAN:  Noted and certainly happy
17  to follow-up after the deposition.  I certainly
18  appreciate the courtesy of taking a look though.  Thank
19  you.
20     Q.  (By Mr. Kanterman)  Mr. Ingram, moving on to my
21  next lines of questions if we could.
22          Did you or your office have any
23  communications with the Texas Governor and/or the Office
24  of the Texas Governor regarding any incidents of illegal
25  voting?

Entero v Texas 5:21-cv-844 (XR)
4/28/2022

**Entero v Texas**
National Court Reporters Inc. 888.800.9656

152 Brian Keith Ingram JD
Page: 152

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 10 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 154 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 154 |

1  for the other candidate by some margin.  But because of

2  the overwhelming number of mail ballots that went

3  overwhelmingly for the one candidate, he ended up

4  winning the race by a few votes, and that has been the

5  subject of investigation by the Attorney General and it

6  has been the subject of indictments by the Attorney

7  General.

8      Q.  And do you have any recollection sitting here

9  today the particulars of the conversations you had with

10 the Governor's office about that situation?

11     A.  Just what we are talking about here today that

12 it happened and it was investigated.

13     Q.  You mentioned you had thousands of hours of

14 communications with the Governor's office over your --

15 the course of your time with the Secretary of State's

16 Office; is that right?

17     A.  That's right.

18     Q.  Are those conversations generally in written

19 form in some other form?

20     A.  No.  We talk.

21     Q.  When you say "talk," are those in-person

22 communications, telephone communications or something

23 else?

24     A.  Both.  Mostly on the phone but we do talk

25 in-person.

1   Q.  Did you have any additional communications with
2  the Texas Governor or his office about violations of
3  Texas election laws besides those we have already
4  discussed?
5         MS. HUNKER:  Objection, form.  Asked and
6  answered.
7   **A.  Yeah.  Again, I -- I can't remember any**
8  **specific conversations, but we talk a lot and we talk**
9  **about violations of the law a lot.  We talk about all**
10 **kinds of things.**
11  Q.  Have you had any communications with the Texas
12 Attorney General or his office regarding incident of or
13 investigation into illegal voting in the State of Texas?
14        MS. HUNKER:  I am going to object to the
15 extent this calls for investigative privilege and
16 instruct my witness not to reveal any information
17 concerning complaints that have been referred to the OAG
18 but have yet to be resolved through a final matter.
19  **A.  Yes.  I talk to the Attorney General's**
20 **investigative team on a regular basis.**
21  Q.  And, sir, I am not asking you for specifics of
22 any individual circumstances at the moment, generally,
23 what are those conversations about?
24        MS. HUNKER:  Same objection with the same
25 advice that my witness not communicate anything specific

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 12 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 156 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 156 |

1  with respect to a complaint that has been referred to

2  the Attorney General but has yet to be resolved through

3  every conviction or dismissal.

4      A.  **Yeah.  We talk about a lot of stuff.  I mean,**

5  **we talk about complaints that we have sent over.  We**

6  **talk about the language of the statute and what we think**

7  **it means versus what they think it means.  We talk about**

8  **bills that get filed in the legislative process, so I**

9  **mean, we talk to them about a variety of things.**

10     Q.  But two of those items that you just mentioned

11 I wanted to discuss a little bit further.  If I heard

12 you correctly, first, that you discussed with the

13 Attorney General's Office your interpretation and their

14 interpretation of certain provisions of the law; is that

15 right?

16     A.  **That's right.**

17     Q.  Have you discussed with the Attorney General's

18 Office your interpretation and their interpretation of

19 provisions of SB 1.

20         MS. HUNKER:  Objection to the extent it

21 calls for investigative privilege as well as

22 attorney-client privilege, specifically where the

23 Secretary of State's Office is requesting advice from

24 the Attorney General, I would advise my client to

25 refrain from any of those type of communications.

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 13 of 18

| | | |
|---|---|---|
| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 157 |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 157 |

1   A.   No.

2   Q.   Sir, when you are discussing -- when you are

3   having these conversations with the Attorney General's

4   Office that you mentioned, those in which they are

5   seeking your input on the interpretation of statutory

6   language and you are discussing their interpretation,

7   are you doing so in furtherance of seeking their legal

8   advice?

9   **A.   No.  The one instance I can think of, it was**

10  **them explaining to me their interpretation of the Penal**

11  **Code 36.02 so that I would quit sending them complaints**

12  **that they didn't think warranted investigation.**

13  Q.   And in your view was that conversation in

14  furtherance of seeking or receiving legal advice from

15  them?

16  **A.   No.**

17  Q.   Let's talk about -- let's talk about the scope

18  of that conversation then.  And can you repeat for me,

19  please, the code section you just referred to, 38?

20  **A.   36.02 of the Penal Code.**

21  Q.   And was it just a single conversation that you

22  can recall at the Attorney General's Office in which you

23  discuss their interpretation of Section 36.02 of the

24  Penal Code?

25  **A.   That's right.**

1　　Q.  And when was that conversation?

2　　**A.  Several years ago.**

3　　Q.  Do you have a more specific approximation of a
4　date?

5　　**A.  No.**

6　　Q.  Would it be before or after 2020?

7　　**A.  It would be before '20.  Several years ago, it**
8　**was before '20.**

9　　Q.  Do you think it was before 2018?

10　　**A.  Don't know.**

11　　Q.  Was this a conversation you had in-person, over
12　the telephone, by email or some other -- through some
13　other media?

14　　**A.  It was a phone call.**

15　　Q.  And approximately how long did that phone call
16　last?

17　　**A.  Five, 10 minutes.**

18　　Q.  And who attended that phone call, if you
19　recall?

20　　**A.  Jonathan White and myself.**

21　　　THE REPORTER:  And excuse me, we had
22　someone come in the room.

23　　Q.  Anybody else?

24　　　THE REPORTER:  Excuse me just a moment,
25　Mr. Kanterman.  May I get your name?

1　　Q.　And tell me what it was, please.

2　　**A.　So 36.02 is the anti-bribery statute, and it**

3　**says that -- that the crime consists of giving anything**

4　**of value to, in part, there is a lot of categories, but**

5　**one of the categories is a voter for that -- that you**

6　**anticipate influencing the voter's discretion in any**

7　**way, right.  So to us at the Secretary of State's**

8　**Office, that means the decision whether to vote or not**

9　**is part of the discretion of a voter.  And if somebody**

10　**gives, you know, like Free Blue Jean Day on Friday, if**

11　**we all have 100 percent turn out and vote, that to us**

12　**would be a violation of 36.02 because you're influencing**

13　**the discretion of a voter to turn out to actually vote**

14　**or not.**

15　　　　**Jonathan says that the way that they -- or**

16　**said that the way that they interpret that statute is,**

17　**it has to be influencing the voter's discretion in the**

18　**booth in a particular way, so to vote for or against a**

19　**measure, for or against a candidate, and that the meer**

20　**enticement of voting by an offer of a free beer with**

21　**your out voted sticker, or whatever, is not sufficient**

22　**to constitute the crime; that there has been to be an**

23　**actual influencing of the voter's vote itself not their**

24　**decision to vote or not.  I still think he is --**

25　　Q.　Beyond --

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 16 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 208 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 208 |

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   LA UNION DEL PUEBLO         §
     ENTERO, ET AL.,             §
 4          Plaintiffs,          §  Civil Action No.
                                 §  5:21-cv-844 (XR)
 5   VS.                         §  (Consolidated Cases)
                                 §
 6   STATE OF TEXAS, ET AL.      §
            Defendants.          §
 7   *********************************************

 8              REPORTER'S CERTIFICATION

 9                 ORAL DEPOSITION OF

10              BRIAN KEITH INGRAM, J.D.

11                  APRIL 28, 2022

12   *********************************************
```

13           I, CAROLINE CHAPMAN, Certified Shorthand

14   Reporter in and for the State of Texas, hereby certify

15   to the following:

16           That the witness, BRIAN KEITH INGRAM, J.D.

17   was duly sworn by the officer and that the transcript of

18   the oral deposition is a true record of the testimony

19   given by the witness;

20           That the deposition transcript was

21   submitted on May 2, 2022, to the witness or to the

22   attorney for the witness for examination, signature, and

23   return to me within 20 days;

24           That the amount of time used by each party

25   at the deposition is as follows:

Case 5:21-cv-00844-XR   Document 992-21   Filed 02/20/24   Page 17 of 18

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 209 |
| --- | --- | --- |
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 209 |

```
 1          Mr. Freeman - Two hours and fifty-five
 2  minutes.
 3          Mr. Kanterman - One hour and twenty-two
 4  minutes.
 5          That pursuant to information given to the
 6  deposition officer at the time said testimony was taken,
 7  the appearance page includes all parties of record.
 8          I further certify that I am neither
 9  counsel for, related to, nor employed by any of the
10  parties or attorneys in the action in which this
11  proceeding was taken, and further that I am not
12  financially or otherwise interested in the outcome of
13  the action.
14          Certified to by me on May 2, 2022.
15
16          _____
            CAROLINE CHAPMAN, Texas CSR 467
17          Expiration Date:  03/31/2023
            Firm Registration No. 223
18          WORLDWIDE COURT REPORTERS
            3000 Weslayan, Suite 235
19          Houston, Texas 77027
            (713) 572-2000
20
21
22
23
24
25
```

| 5:21-cv-844 (XR) | Entero v Texas | Brian Keith Ingram JD 210 |
|---|---|---|
| 4/28/2022 | NATIONAL COURT REPORTERS INC 888.800.9656 | 210 |

**Transcript Errata Sheet For**

**Date:**

**Case Number:**

**Case Name:**

**Deponent:**

_____

| Page | Line | Now Reads | Should Read | Remove Therefore |
|---|---|---|---|---|
| | | | | |

_____

_____

_____

_____

_____

_____

_____

_____

**Date:** _____

**Signature of the Deponent:**

_____

**Please return via email within 30days to:**
**NCRNETWORK@NationalCourtReporters.com**