# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GREGORY W. ABBOTT, et al., <br><br> Defendants. | NO. 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN SCOTT, et al., <br><br> Defendants. | NO. 1:21-cv-780-XR |
| HOUSTON JUSTICE, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> GREGORY WAYNE ABBOTT, et al. <br><br> Defendants. | NO. 5:21-cv-848-XR |
| LULAC TEXAS, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN SCOTT, et al. <br><br> Defendants. | NO. 1:21-cv-786-XR |

| | |
|---|---|
| MI FAMILIA VOTA, et al.<br><br>   Plaintiffs,<br><br>vs.<br><br>GREG ABBOTT, et al.<br><br>   Defendants. | NO. 5:21-cv-0920-XR |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>THE STATE OF TEXAS, et al.<br><br>   Defendants. | NO. 5:21-cv-1085-XR |

**PLAINTIFF MI FAMILIA VOTA'S SUPPLEMENTAL BRIEF REGARDING ORGANIZATIONAL STANDING**

  Pursuant to this Court's June 17, 2024, order (Dkt. 1136), Plaintiff Mi Familia Vota ("MFV") submits its supplemental briefing regarding the impact of *Food and Drug Administration. v. Alliance for Hippocratic Medicine*, on MFV's standing in this case. 602 U.S. 367, 144 S. Ct. 1540 (2024) ("*Alliance*"). MFV's injuries resulting from enforcement of SB1, as set out in MFV's proposed findings of fact and conclusions of law, remain sufficient for organizational standing following the Supreme Court's decision. MFV introduced evidence beyond diversion of resources, including evidence of SB1's disruption of MFV's core voter support and education activities. Because of those injuries, MFV continues to have organizational standing after *Alliance*.

- 2 -

In *Alliance*, the Supreme Court addressed whether the plaintiffs had organizational standing to sue under Article III of the Constitution. The plaintiffs brought a claim against the Food and Drug Administration ("FDA") because they objected to the FDA's relaxing of requirements for Mifeprex and generic mifepristone, a drug taken orally for terminating pregnancies up to ten weeks. *Id.*, 602 U.S. at 376, 144 S. Ct. at 1553. The Supreme Court held that the plaintiffs lacked standing because they failed to establish that they have suffered or may suffer an injury in fact. *Id.*, 602 U.S. at 396, 144 S. Ct. at 1565.

To have standing, a plaintiff must establish that (1) the plaintiff has suffered or likely will suffer an injury in fact, (2) the defendant caused the injury, and (3) the injury is redressable by the requested relief. *Id.*, 602 U.S. at 380, 144 S. Ct. at 1555 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). An organization has standing in its own name if it establishes the same three elements that an individual must prove. *Id.*, 602 U.S. at 393-94, 144 S. Ct. at 1563.

However, an organization "must show far more than simply a setback to the organization's abstract social interests." *Id.*, 602 U.S. at 394, 144 S. Ct. at 1563 (quotation and citation omitted). An organization that has not suffered an injury in fact "cannot spend its way into standing" by funding efforts "to gather information and advocate against the defendant's action." *Id*. 602 U.S. at 394, 144 S. Ct. at 1563-64. The Court clarified prior jurisprudence: standing is not established when an organization "diverts its resources" to resist a defendant's actions. *Id.* (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)). An organizational plaintiff has standing if a defendant directly interferes with the plaintiff's "core business activities." *Id*. 602 U.S. at 395, 102 S. Ct. at 1564.

123860334.1 0099831-00001

The plaintiffs in *Alliance* lacked standing because they did not meet the first element: injury in fact. *Id.*, 602 U.S. at 396, 144 S. Ct. at 1565 . The injury in fact requirement is not met when a plaintiff merely asserts "a general legal, moral, ideological, or policy objection to a particular government action." *Id.*, 602 U.S. at 381, 144 S. Ct. at 1556. For example, having a belief that the government is acting in an illegal manner does not constitute standing. *Id*. Similarly, having "a strong moral, ideological, or policy objection to a government action" does not establish standing. *Id*. The plaintiffs in *Alliance* lacked standing because their injury amounted to a moral objection. *Id*., 602 U.S. at 396, 144 S. Ct. at 1565.

## ARGUMENT

**1) This Court's Interpretation of Organizational Standing Remains Unchanged by *Alliance*.**

Unlike the plaintiffs in *Alliance*, Defendants' actions directly impact MFV's "core business activities" *and* caused MFV to divert resources to *respond* to the new unconstitutional law. This Court previously discussed how an organization can establish organizational standing, explaining that, like any other party in a suit, an organization must satisfy all requirements of the standing test. (Dkt. 820 at 21).

An organization's injury can be satisfied by demonstrating financial harm or a perceptible impairment to the organization's ability to pursue its mission because it has "diverted significant resources to counteract the defendant's conduct." (*Id*. at 22 (citing *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020)).) Diverting resources does not automatically equal cognizable injury, *El Paso Cnty. v. Trump*, 982 F.3d 332, 343 (5th Cir. 2020); rather, the injury comes when an organization is "perceptibly impaired" from carrying out its purpose. *See La. Fair House Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 353 (5th Cir. 2023); *see also, Havens*, 455 U.S. at 379.

*Alliance* aligns with this Court's prior ruling. In *Alliance*, the plaintiffs did not have organizational standing because their claimed injuries were the expenditure of "time, energy, and resources" and an inability to "provide services and achieve their organizational missions"—i.e., a moral objection. *Alliance*, 602 U.S. at 396, 144 S. Ct. at 1565. However, "those kinds of objections alone do not establish a justiciable case or controversy." *Id*.

**2) MFV's Conduct is Different than the Plaintiffs' Conduct in *Alliance*.**

The plaintiffs in *Alliance* were attempting to establish standing without showing any concrete injury sustained due to the FDA's removal of certain requirements for the manner and method in which Mifeprex and generic mifepristone could be prescribed. The plaintiffs consisted of doctors who "research, teach, and advocate for ethical medical practices." *All. For Hippocratic Med. v. Food and Drug Admin.*, 78 F.4th 210, 222 (5th Cir. 2023). The plaintiffs sought prospective relief on behalf of their members, mainly physicians. *Id*.

The plaintiffs' purported injuries were recalibrated outreach efforts due to the FDA's removal of safeguards. *Alliance*, 602 U.S. at 394, 144 S. Ct. at 1563-64. This resulted in extra time and money spent educating members, which impaired the plaintiffs from counselling pregnant women regarding chemical abortion and considerable resources spent challenging the FDA's changes by having to file a 26-page petition. *Id*.

But the Supreme Court found that the plaintiffs were relying on actions they *chose* to take due to their "moral, ideological, and policy objections." *Alliance*, 602 U.S. at 386, 144 S. Ct. at 1559. This was insufficient because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing." *Id*., 602 U.S. at 394, 144 S. Ct. at 1563–64.

123860334.1 0099831-00001

MFV is distinguishable from the plaintiffs in *Alliance* in two distinct ways. First, the FDA's relaxed 2021 policies regarding Mifeprex, and generic mifepristone did not impair the plaintiffs' ability to continue their counselling work with pregnant women. The 2021 change removed the requirement for in-person dispensing. *All. for Hippocratic Med..*, 78 F.4th at 226. It neither stops pregnant women from choosing to see a doctor before taking Mifeprex or generic mifepristone nor prevents doctors from offering chemical abortion counselling. In other words, although the FDA regulation *allowed* the *Alliance* organizations to change their practices, it did not *require* that they do so. Here, SB1 caused MFV to change certain of its core voter education and involvement activities.

Second, the *Alliance* plaintiffs argued that they diverted their resources in response to defendant's actions. But "[a]n organization cannot manufacture its own standing in that way." *Alliance*, 602 U.S. at 394, 144 S. Ct. at 1564. ("[T]hat theory would mean that all the organizations in America would have standing … provided they spend a single dollar opposing those policies."). Here, MFV did much more than divert resources.

Indeed, MFV's injuries from SB1 go beyond reallocation of resources—although such reallocation has been significant in MFV's case. MFV's mission is to increase political representation and power of the Latino community, and SB1 required the organization to divert resources in a manner that "perceptibly impaired" its ability to fulfill its mission. Dkt. 856, Findings of Fact ¶ 41. The passage of SB1 required MFV to change its fundraising practices, because it needed to divert resources to the organization's election work. *Id.* ¶ 44. But the effects of SB1 on MFV extend far beyond financial matters and reach to MFV's day-to-day activities:

- Because of SB1, MFV had to end its efforts with county officials to implement voting options that facilitated voting by members of communities MFV served, including drive-thru and 24-hour voting. *Id*. ¶¶ 45, 1017.

- Because of SB1's poll watcher provisions, MFV determined it could no longer recruit poll workers, out of concern for individuals who serve as poll watchers. *Id.* ¶¶ 704, 1020. MFV did not want to put the young Latino community members it was encouraging to volunteer in elections in a situation in which they could be accused of wrongdoing. *Id.* ¶ 704.

- For MFV, going door-to-door and being present in places where community members live are important means to reach out to voters. *Id.* ¶ 826. Since SB1 was passed, MFV cannot conduct door-to-door canvassing to encourage and solicit eligible voters to complete applications for mail-in ballots. *Id*. ¶¶ 837-38. The organization is concerned that its canvassers will be accused of vote harvesting. *Id.* ¶ 831.

- Because of the small number of permanent employees and the limited annual budget, MFV will have to limit its non-election-related projects to focus its resources on the SB1-related issues. *Id*. ¶ 49. Thus, it will have to forego providing other substantive services to the communities it serves.

- SB1 has also changed how MFV interacts with its elderly voters. *Id*. ¶ 1018. As a result of SB1, MFV has to spend more time preparing eligible voters to vote without assistance. *Id.* ¶ 1026.

Taken together, the Defendants' actions have "directly affected and interfered with [MFV's] core business activities"—similar to the injuries suffered by HOME[1] in *Havens*. 455 U.S. at 379. The Supreme Court in *Alliance* specifically explained the difference between the plaintiffs and HOME, the plaintiff in *Havens*. Unlike the *Alliance* plaintiffs, HOME was directly affected by the interference of Havens in its "core business activities." *Alliance*, 602 U.S. at 395, 144 S. Ct. at 1564. The Supreme Court made clear the *Alliance* plaintiffs had not suffered "any similar impediment to [their] advocacy businesses." *Id*. But MFV, as explained above, *has* suffered impediments to its business activities due to SB1.

Additionally, MFV's injuries fulfill Article III's standing requirement because those injuries are "actual or imminent, not speculative." *Id.*, 602 U.S. at 381, 144 S. Ct. at 1556 , (citing *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)). For example, in November 2020, the Secretary of State received accusations that MFV was influencing or harvesting voters. Dkt. 856, Findings of Fact ¶ 834. Likewise, Travis County Clerk Dana DeBeauvoir said she also received complaints from third parties of "interfer[ence] in another voter's vote" *Id.* ¶ 835. MFV accordingly has discontinued its poll worker program for fear of causing the young community members it recruited for this position to be subjected to accusations and investigations due to the vagueness of the SB1 provisions geared to poll watchers. *Id.* ¶ 646. There is nothing "speculative" about the risks MFV faces from SB1.

---

[1] "HOME not only was an issue-advocacy organization, but also operated a housing counselling service. When Havens gave HOME's employees false information about apartment availability, HOME sued Havens because Havens 'perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers. In other words, Havens's actions directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Alliance*, 602 U.S. at 395, 144 S. Ct. at 1564. HOME is similar to MFV. Like HOME, MFV is a not only an advocacy organization, but it provides a service to its community members.

## CONCLUSION

SB1 does not simply impact MFV's "abstract social interests." *Havens*, 455 U.S. at 379. SB1 causes MFV to suffer an injury in fact through a disruption, interference, and halt to various MFV business initiatives as well as diverting resources to retraining community members on the laws and requirements to voting in Texas. Therefore, this Court should continue to find that MFV has organizational standing.

DATED: July 11, 2024.                                            Respectfully submitted,


/s/ *Wendy J. Olson*
Wendy J. Olson, Bar No. 7634
Mark L. Bieter, Bar No. 11859
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

Attorneys for Mi Familia Vota Plaintiffs

123860334.1 0099831-00001

## CERTIFICATE OF SERVICE

      I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 11, 2024, and that all counsel of record were served by CM/ECF.

/s/ *Wendy J. Olson*
Wendy J. Olson

123860334.1 0099831-00001