**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| La Unión Del Pueblo Entero, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 5:21-cv-00844-XR |
| | § | |
| Gregory W. Abbott, *et. al.*, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**STATE DEFENDANTS' AND INTERVENOR-DEFENDANTS' SUPPLEMENTAL
BRIEF ON *FDA V. ALLIANCE FOR HIPPOCRATIC MEDICINE***

In at least two ways, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), confirms that the organizational Plaintiffs have failed "to establish standing." ECF No. 1136 at 1. *First*, throughout this case, the organizational Plaintiffs have attempted to ground their standing on an alleged "diversion of resources" to educating third parties about S.B. 1, *id.*, but that is precisely the theory of standing that *Alliance for Hippocratic Medicine* forecloses. *Second*, even if Plaintiffs' diversion-of-resources standing theory remained viable, *Alliance for Hippocratic Medicine* independently forecloses their attempt to trace their alleged injuries to S.B. 1 as a whole rather than to the specific provisions they challenge.

The Court therefore should hold that the organizational Plaintiffs lack standing and dismiss them from this case. The organizational Plaintiffs are the only parties who purport to bring challenges to numerous sections of S.B. 1: sections 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.12, and 7.02. Therefore, dismissing the organizational Plaintiffs will eliminate those challenges and significantly narrow the issues remaining for the Court's resolution.

I.    *FDA v. ALLIANCE FOR HIPPOCRATIC MEDICINE* CLARIFIES THE LAW OF ORGANIZATIONAL STANDING.

*Alliance for Hippocratic Medicine* clarifies the law of organizational standing in two main respects. *First*, it holds that "diversion of resources in response to a defendant's actions is insufficient to establish standing" and, thus, forecloses the so-called "resource-diversion" theory of standing. ECF No. 1136 at 1.

*Alliance for Hippocratic Medicine* addressed medical associations' asserted organizational standing to challenge several FDA policy decisions. 602 U.S. at 375-76. The plaintiffs alleged that, in response to the FDA's actions, they "expend[ed] considerable time, energy, and resources" to "inform[ing] their members and the public about," and "engaging in public advocacy and public education" around, those actions. *Id.* at 394. The plaintiffs further alleged that these expenditures

required them to divert resources "to the detriment of other spending priorities" and, thus, "impaired their ability to provide services and achieve their organizational missions." *Id.* To support this theory of standing, the plaintiffs pointed to the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), as well as the Fifth Circuit's decision in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017). *See id.* at 395; Brief for Respondents, *FDA v. Alliance for Hippocratic Medicine*, 2024 WL 811351, at *44 (Feb 22, 2024) (citing *OCA-Greater Houston* as leading example of "lower court caselaw" supporting their theory of standing).

The Supreme Court unanimously rejected this theory. *See Alliance for Hippocratic Medicine*, 602 U.S. at 394–95. As the Supreme Court reasoned, holding that resource diversion is sufficient to confer standing would effectively allow *any* organization displeased by a law to "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394. Such an "expansive theory of standing" is incompatible with Article III. *Id.* And that is true even when the organization can show that its diversion of resources came at the expense of, and impaired its ability to carry out, other aspects of its organizational mission. *See id.* In other words, for an organization to establish standing based upon impairment of its organizational mission, it must point to something other than its diversion of resources to advocating against, or educating third parties regarding, the challenged action. *See id.*

The Supreme Court thus expressly clarified that *Havens Realty* does not countenance a resource-diversion theory standing. *See id.* at 395. It specifically cautioned federal courts that *Havens Realty* is "an unusual case" that they must be "careful" "not to extend." *Id.* It further explained that the *Havens Realty* plaintiff had standing not because it was an "issue-advocacy organization" which diverted resources in response to the defendant's actions, but instead because

the defendant's actions *themselves* directly interfered with the plaintiff's operation as a housing counseling service provider.  *Id.*  In particular, "when [the defendant] gave [the plaintiff] false information about apartment availability, … [the defendant] perceptibly impaired [the plaintiff's] ability to provide counseling and referral services" to individuals looking for apartments.  *Id.* Those "actions directly affected and interfered with [the plaintiff's] core business activities," similar "to a retailer who sues a manufacturer for selling defective goods to the retailer."  *Id.*  And it was this direct injury to the plaintiff's core business activity—not the plaintiff's voluntary diversion of resources away from its other activities and toward advocating against the defendant's actions—that established standing.  *See id.*

Applying this rule, the Supreme Court held that the *Alliance for Hippocratic Medicine* plaintiffs lacked standing.  *See id.*  The challenged FDA actions had simply resulted in the plaintiffs changing their spending priorities across their various activities—a classic diversion of resources that does not satisfy Article III.  *See id.*  Those actions had not "imposed any similar impediment" on any of the plaintiffs' "core business activities," which they remained free to carry out on the same terms as they had done prior to the challenged actions.  *Id.*  Indeed, the challenged actions had not changed *anything* about how the plaintiffs operated or inhibited their ability to carry out their core business activities.  *See id.*

*Second*, in addition to foreclosing resource-diversion standing, the Supreme Court reaffirmed that the "causation requirement is central to Article III standing."  *Id.* at 383.  "Without the causation requirement, courts would be virtually continuing monitors of the wisdom and soundness of government action."  *Id* at 383–84*.*  Accordingly, federal courts must robustly enforce the causation requirement of Article III standing.  *See id.*

3

A few weeks after *Alliance for Hippocratic Medicine*, the Supreme Court again confirmed that "standing is not dispensed in gross" and that "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief they seek." *Murthy v. Missouri*, __S. Ct.__, 2024 WL 3165801, at *9 (June 26, 2024) (cleaned up). Accordingly, Article III is not satisfied by a plaintiff's contention that it was injured by the challenged law as a whole. *See id.* Instead, where the plaintiff seeks an injunction or declaratory relief against a particular part of a challenged law, the plaintiff must show an injury from that *part* of the law, not the law as a whole. *See id.*; *see also In re Gee*, 941 F.3d 153, 161–62 (5th Cir. 2019).

Since *Alliance for Hippocratic Medicine*, at least two district courts have concluded that organizations lacked standing based on their alleged diversion of resources. *See Citizens Project v. Colorado Springs*, No. 1:22-cv-01365, 2024 WL 3345229 (D. Colo. July 9, 2024); *Plant Based Food Ass'n v. Stitt*, No. 20-938, 2024 WL 3106901, at *3–4 (W.D. Okl. June 24, 2024). In *Citizens Project*, for example, voting-rights organizations alleged they diverted resources to turning out voters because of a municipality's decision to host elections in years when other major elections were not happening. *Citizens Project,* 2024 WL 3345229, at *3–4. The court held that those allegations were insufficient to establish standing because *Alliance for Hippocratic Medicine* "suss[ed] out" the "diversion-of-resources injury claimed by plaintiffs." *Id.* at *14–15. And the "fact that Plaintiffs [were] dedicated to serving voters [was] not enough to confer organizational standing," even if the plaintiffs had to divert resources to continue engaging in that work because of the challenged law. *Id.* at *15.

II.   **THE ORGANIZATIONAL PLAINTIFFS LACK STANDING UNDER *ALLIANCE FOR HIPPOCRATIC MEDICINE.***

The organizational Plaintiffs' suit cannot survive *Alliance for Hippocratic Medicine*.

*First*, the organizational Plaintiffs attempt to ground their standing on their diversion of resources to educate the public regarding, and to advocate against, S.B. 1—but that is the very resource-diversion theory of standing that *Alliance for Hippocratic Medicine* rejected.  *Compare* 602 U.S. at 394–95; *Citizens Project*, 2024 WL 3345229, at *14–15; *Plant Based Food Ass'n*, 2024 WL 3106901, at *3–4, *with* ECF 849 at 64 ("The resources redirected to LULAC's voter education campaign were diverted from LULAC's education, scholarship, voter registration, and naturalization and citizenship programs and events."); ECF No. 855 at 22–27 (asserting diversions of resources by LUPE Plaintiffs); ECF No. 856 at 236 (asserting MFV "saw how great the need was to divert resources to MFV's election work to address the impacts of SB 1."); *id.* at 246 ("HAUL has demonstrated injury in fact by showing that SB 1 has required the organization to divert resources in a manner that concretely and perceptibly impaired its ability to fulfill its mission." (cleaned up)); *id.* at 248 ("SB1 has forced [Delta] to divert resources away from voter mobilization and towards educating more voters about SB1's provisions . . . ."); ECF No. 852 at 5 ("The Arc of Texas had to divert staff time and resources to ensure that its members understood SB 1 changes and, as a result, did not have the resources to dedicate to its other policy priorities." (cleaned up)).

Nor can the organizational Plaintiffs' suit be salvaged by their contention that their diversion of resources impaired their organizational mission or core business activities—as *Alliance for Hippocratic Medicine* also makes clear.  *Compare* 602 U.S. at 394-95; *Citizens Project*, 2024 WL 3345229, at *15, *with* ECF No. 849 at 59 (LULAC linking diversion of

resources to impairment); ECF No. 855 at 33 (LUPE linking diversion of resources to impairment); ECF No. 856 at 220 (MFV linking diversion of resources to impairment).

Indeed, the organizational Plaintiffs do not identify any injuries S.B. 1 *directly* imposed on their core business activities, much less any injury remotely similar to the injury suffered by a retailer sold "defective goods" by a manufacturer. *Alliance for Hippocratic Medicine*, 602 U.S. at 395. Instead, they rely upon a misreading of *Havens Realty* that the Supreme Court rejected, *see id* at 394-95, and the pre-*Alliance for Hippocratic Medicine* Fifth Circuit cases adopting that same misreading, such as *OCA-Greater Houston*, *see, e.g.*, ECF No. 849 at 59; ECF No. 852 at 106 (citing *OCA-Greater Houston*, 82 F.4th at 610–12; *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., LLC*, 82 F.4th 345, 351, 353 (5th Cir. 2023), and *Vote.org v. Callanen*, 89 F.4th 459, 471 (5th Cir. 2023)). But Article III standing cannot be "extend[]ed" "beyond [the] context" of "direct[] . . . interfere[ence]" with an organization's "core business activities" to reach an organization's voluntary diversion of resources across its activities. *Alliance for Hippocratic Medicine*, 602 U.S. at 395. The organizational Plaintiffs' attempt to "spend [their] way into standing" therefore fails. *Id.* at 394.

*Second*, even if the organizational Plaintiffs' resource-diversion theory somehow survived *Alliance Hippocratic Medicine*, they still fail to satisfy the causation requirement of Article III standing. *See Alliance for Hippocratic Medicine*, 602 U.S. at 383. The organizational Plaintiffs attempt to trace their alleged-resource diversion injuries to S.B. 1 as a whole rather than to any of the challenged provisions. *See* ECF No. 862 at 30, 35–80; *see also, e.g.*, ECF No. 849 at 68 ("AFT's diversion of resources, which includes both financial resources and staff and volunteer time, is sufficient to establish that it has suffered an injury-in-fact because of SB 1."); ECF No. 856 at 247 ("HAUL's injuries are traceable to the Defendants' implementation and enforcement

of SB1, which is the direct cause of the organization's resource drain . . .").  Indeed, Plaintiffs have never really tried to trace their alleged injuries to specific challenged provisions.  Although the record is full of witness assertions that organizations diverted resources in response to S.B. 1 as a whole, there is virtually no evidence about how resources were diverted in response to specific provisions.  No one, for example, has explained how (or why) an organization diverted resources in response to section 6.01's requirement that an individual transporting seven or more voters to vote curbside fill out a form.  *See* ECF No. 862 at 30, 35–80.

This problem was obvious even before *Alliance for Hippocratic Medicine*.  *See, e.g.*, *Gee*, 941 F.3d at 161–62.  Defendants and Intervenor-Defendants prominently highlighted this problem in their conclusions of law and at closing argument, *see* ECF No. 862 at 30, 35–80; Closing Argument Standing Slideshow at 7–10.  Yet neither in their briefs nor in the rebuttal portion of their closing arguments did Plaintiffs identify record evidence linking alleged resource-diversions to most of the specific provisions they challenge.

*Alliance for Hippocratic Medicine* only confirms that Plaintiffs' failure to identify any such evidence is fatal.  After all, as explained, that decision underscores Plaintiffs' burden to prove that the specific S.B. 1 provisions they challenge "directly affected and interfered with [the organizational plaintiffs'] core business activities."  *Alliance for Hippocratic Medicine*, 602 U.S. at 395; *see supra* at 6.  Plaintiffs, however, have failed to adduce any such evidence for numerous of the challenged provisions.

## III.    THE COURT SHOULD DISMISS THE ORGANIZATIONAL PLAINTIFFS AND NUMEROUS CHALLENGES TO S.B. 1.

The organizational Plaintiffs' failures to prove standing under *Alliance for Hippocratic Medicine* warrant dismissal of several Plaintiffs and numerous challenges to S.B. 1.  Indeed,

*Alliance for Hippocratic Medicine* alone has significantly narrowed the issues remaining for the Court's resolution.

*First*, the Court should dismiss from the case the three Plaintiffs that assert only resource-diversion standing: Mi Familia Vota, HAUL, and Voto Latino.  *See* ECF No. 1136 at 1 (recognizing this problem for those Plaintiffs): *accord* ECF No. 862 at 45 (discussing Voto Latino), 48 (discussing HAUL), 60 (discussing MFV); Oct. 3, 2023 Tr. at 2264:15–19 (confirmation that HAUL has no members); Oct. 10, 2023 Tr. at 3467:3–5 (confirming MFV has no members); Oct. 11, 2023 Tr. at 115:19–23 (confirmation Voto Latino has no members); *see also Alliance for Hippocratic Medicine*, 602 U.S. 394–95.  Because those Plaintiffs are the only parties challenging sections 2.05, 2.06, 2.07, 5.11, and 7.02, *see* ECF No. 862 at 32, 35; Closing Argument Standing Slideshow at 2, those challenges should be dismissed as well.

*Second*, the Court should hold that the remaining organizational Plaintiffs also failed to establish standing.  That holding would result in dismissal of Plaintiffs' challenges to S.B. 1's provisions related to drive thru voting (sections 3.04, 3.12, and 3.13), 24-hour voting (3.09 and 3.10), section 3.15's implementation of a straight-ticket voting ban, section 4.12's in-person delivery requirement, and section 6.01's form-completion requirement for individuals who transport seven or more voters to the polling place.  Mi Familia Vota, HAUL, and Voto Latino assert resource-diversion standing to challenge those provisions, as do Delta Sigma Theta, LULAC Texas, Texas AFT, and TARA.  *See* ECF No. 862 at 31.  That assertion is no longer viable and should be rejected.  *See Alliance for Hippocratic Medicine*, 602 U.S. 394–95.

Those latter four Plaintiffs also assert associational standing.  *Id.* at 36–37 (discussing LULAC), 41 (discussing Texas AFT), 43–44 (discussing TARA) 52 (discussing Delta).  But they lack associational standing to challenge sections 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, and 4.12

because they could not identify a single "specific member" harmed by any of those provisions. *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also* ECF No. 862 at 36–37 (discussing LULAC), 41 (discussing Texas AFT), 43–44 (discussing TARA) 52 (discussing Delta).  As a result of that failure, no Plaintiff remains to challenge sections 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, and 4.12, *see* ECF No. 862 at 32–35; Closing Argument Standing Slideshow at 2, and the challenges to those provisions should be dismissed as well.

*Third*, as Defendants already have explained, the Court should dismiss a variety of other challenges for lack of standing even under pre-*Alliance for Hippocratic Oath* law.  *See* ECF No. 862 at 28–80.

## CONCLUSION

The Court should reject the organizational Plaintiffs' theories of standing, dismiss them from this case, and dismiss the numerous challenges to S.B. 1 that they alone assert.

Date: July 11, 2024

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov
zachary.berg@oag.texas.gov
ethan.szumanski@oag.texas.gov

Respectfully submitted.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Tex. State Bar No. 24060998

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

WILLIAM D. WASSDORF
Assistant Attorney General
Tex. State Bar No. 24103022

ZACHARY W. BERG
Special Counsel
Tex. State Bar No. 24107706

ETHAN SZUMANSKI
Special Counsel
Tex. State Bar No. 24123966

**COUNSEL FOR STATE DEFENDANTS**


John M. Gore
E. Stewart Crosland
Louis J. Capozzi, III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

**COUNSEL FOR INTERVENOR-DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER