IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al., | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 5:21-CV-00844-XR |
| v. | § | (Consolidated Cases) |
| | § | |
| GREGORY W. ABBOTT, et al., | § | |
| | § | |
| *Defendants.* | § | |

**HARRIS COUNTY DISTRICT ATTORNEY KIM OGG'S**
**SUPPLEMENTAL BRIEFING ON STANDING**

On June 17, 2024, this Court issued an order directing the parties to submit supplemental briefing concerning the Plaintiffs' standing to sue after *FDA v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540 (2024). Dkt. 1136.

On a related matter, as the Court and the parties are aware, on June 20, 2024 the Fifth Circuit issued its published opinion in *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024). In that opinion the Fifth Circuit ordered the dismissal of "the Plaintiffs' constitutional claims [against District Attorney Ogg] as barred by sovereign immunity." *Id.* at 317. It also observed that Plaintiffs' remaining non-constitutional claims against District Attorney Ogg—brought under statutes that have been held to waive sovereign immunity—were premised on a "diversion-of-resources theory" of standing, but "[n]either the Plaintiffs' amended complaints nor their briefs provide a clear delineation of how their injuries are attributable to their statutory claims independent of their constitutional claims." *Id.* at 333. The Fifth Circuit concluded by noting: "Now that their constitutional claims can no longer be asserted against Ogg, a new determination on standing may be needed." *Id.*

In light of the Fifth Circuit's decision in *Mi Familia Vota v. Ogg*, this supplemental brief analyzes the issue of standing only with respect to Plaintiffs' statutory claims that remain pending after that decision.

**ARGUMENT**

In this Court's order on District Attorney Ogg's motion to dismiss for lack of standing, the Court allowed the Plaintiffs to proceed on some of their claims for which they had alleged an "organizational injury based on a diversion of resources theory." Dkt. 450 at 15. As the Fifth Circuit recently observed, that was the sole basis on which this Court found that the Plaintiffs had standing to sue District Attorney Ogg. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 334 (5th Cir. 2024) ("The district court relied on a diversion-of-resources theory to find the Plaintiffs had organizational standing against Ogg.").

The Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, 144 S. Ct. 1540 (2024), forecloses the viability of that theory of standing for the Plaintiffs. In *Hippocratic Medicine*, the Court rejected the argument that medical associations were "forced" to "expend considerable time, energy, and resources" engaging "engaging in public advocacy and public education" to "the detriment of other spending priorities." 144 S. Ct. at 1563. As the Court explained, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendants' action." *Id.* at 1563–64. "An organization cannot manufacture its own standing in that way." *Id.* at 1564. The medical associations cited *Havens Realty Corp v. Coleman*, 455 U.S. 363 (1982), for the proposition that "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* But the Court rejected that argument, stating:

"That is incorrect. Indeed, that theory would mean that all of the organizations in America would have standing . . . provided they spend a single dollar . . . ." *Id.*

This case is an example of precisely the sort of problematic diversion-of-resources litigation that the Supreme Court sought to curb in *Hippocratic Medicine*. Plaintiffs appear to have been conducting themselves by the same incorrect playbook post-S.B. 1: as long as they spent some resources in response to S.B. 1—such as holding training sessions or creating educational materials—they could be a Plaintiff in this lawsuit. That the testimony of the Plaintiffs' organizational representatives all sounded virtually identical is reflective of the problem of allowing any organization to "manufacture its own standing" by spending "a single dollar." *Id.* at 1564. Such a diversion-of-resources theory of standing cannot be squared with the Supreme Court's decision in *Hippocratic Medicine*.

Turning to the statutory claims that survive the Fifth Circuit's dismissal of the Plaintiffs' constitutional claims, the Plaintiffs also lack standing for the following reasons.

## I. Plaintiffs Lack Standing to Bring Claims Under Section 2 or Section 208 of the Voting Rights Act Against District Attorney Ogg

Section 2 of the Voting Rights Act prohibits any voting practice that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301. Section 208 of the Voting Rights Act protects the right of voters to receive assistance from a person of the voter's choice. 52 U.S.C. § 10508. These two statutes protect the rights of citizens to vote and receive assistance with voting, and Plaintiffs must show concrete injuries along those lines to establish standing to sue under those statutes. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

**A. Section 6.04 of S.B. 1**

Various Plaintiffs challenge Section 6.04 of S.B. 1 under Section 2 and Section 208 of the Voting Rights Act.

Section 6.04 of S.B. 1 amends the language of the oath that must be "administered by an election officer at the polling place" to a person who assists an in-person voter and is not a substantive criminal law enforceable by a district attorney. TEX. ELEC. CODE § 64.034. There is no evidence—nor could there ever be given the structure of Texas election operations on which the Court has assiduously taken evidence and studied—that the Harris County District Attorney's Office plays a role in the administration of oaths by election officers at polling places. There is no possible injury caused by Section 6.04 that any Plaintiff could raise on the administration of the oath that could be traced to District Attorney Ogg and redressed by this Court. *See Spokeo*, 578 U.S. at 338.

**B. Section 6.05 of S.B. 1**

Various Plaintiffs challenge Section 6.05 of S.B. 1 under Section 2 and Section 208 of the Voting Rights Act.

Section 6.05 of S.B. 1 adds to the information that a person who assists a voter to prepare a mail ballot must enter on the carrier envelope and is not a substantive criminal law enforceable by a district attorney. Again, there is no evidence (nor could there be) that the Harris County District Attorney's Office plays a role in producing carrier envelopes or writing the instructions accompanying them. There is no possible injury caused by Section 6.05 that could be traced to District Attorney Ogg and redressed by this Court. *See Spokeo*, 578 U.S. at 338.

**C. Section 6.06 of S.B. 1**

OCA-Greater Houston and League of Women Voters of Texas bring claims against District Attorney Ogg under Section 208 of the Voting Rights Act challenging Section 6.06 of S.B. 1.

Section 6.06 allows an attendant or caregiver previously known to a voter to receive compensation for assisting voters. TEX. ELEC. CODE § 86.0105. There was no evidence elicited at trial that any person who wished to assist a voter could not do so by simply making him or herself known to the voter and asking to be designated as an attendant before providing assistance. Furthermore, there was no evidence that the Harris County District Attorney's Office has ever interpreted Section 6.06 to cover any of the activities engaged in by OCA-Greater Houston and League of Women Voters of Texas, including for example, the provision of food or drinks to volunteers. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (requiring a plaintiff to show an injury that is "concrete, particularized, and actual or imminent"); *see also id.* (stating that the "imminence" requirement "is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending"). Accordingly, OCA-Greater Houston and League of Women Voters of Texas have failed to meet their burden to show that Section 6.06 causes an injury to them that is cognizable under Section 208 of the Voting Rights Act and that is traceable to District Attorney Ogg. *See Spokeo*, 578 U.S. at 338.

**D. Section 7.04 of S.B. 1**

The LULAC Plaintiffs (LULAC Texas, Voto Latino, Texas AFT, and Texas Alliance for Retired Americans) bring claims against District Attorney Ogg under Section 2 and Section 208 of the Voting Rights Act challenging Section 7.04 of S.B. 1.

Section 7.04 does not limit the ability of voters to cast their votes or receive assistance (*i.e.*, to exercise rights protected by Section 2 or Section 208 of the Voting Rights Act). Instead, it

regulates compensated "in-person interactions with one or more voters" in the "physical presence of a ballot" intended to "deliver votes for a specific candidate or measure." This statutory text deals with the conduct of paid advocates for political candidates and measures, and it does not limit anyone's ability to vote. Accordingly, the LULAC Plaintiffs have not shown that Section 7.04 causes an injury to them of the sort that is cognizable under Section 2 or Section 208 of the Voting Rights Act and that is traceable to District Attorney Ogg. *See Spokeo*, 578 U.S. at 338.

## II. Plaintiffs Lack Standing to Bring Claims Under Title II of the Americans with Disabilities Act Against District Attorney Ogg

Title II of the Americans with Disabilities Act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

REVUP-Texas and the Arc of Texas named District Attorney Ogg as a defendant in their claims under Title II of the Americans with Disabilities Act challenging Section 6.04 of S.B. 1.

The Arc of Texas also challenges Section 6.05 under Title II.

In addition to the standing problems identified earlier concerning Section 6.04 and Section 6.05 which are incorporated here by reference, *supra* Part I.A–B, there are additional standing problems for the claims brought under Title II of the Americans with Disabilities Act.

This Court already ruled at the motion-to-dismiss stage that the Plaintiffs could not sue the Texas Attorney General under the Americans with Disabilities Act because a "*prima facie* case for discrimination under Title II requires a showing that the defendant public entity in some way provides the service or benefit at issue." *LUPE v. Abbott*, 618 F. Supp. 3d 388, 420 (W.D. Tex. 2022) (REVUP-Texas). "Although the Attorney General has authority to enforce criminal offenses under the Election Code . . . it is unclear whether and how he provides the service or

benefit at issue in this case, namely voting and voting by mail." *Id.* Accordingly, this Court concluded "that, in this case, the Attorney General does not provide the service or benefit at issue" and "dismiss[ed] the Attorney General as a defendant" to the Plaintiffs' Title II claims. *Id.*; *see also LUPE v. Abbott*, 618 F. Supp. 3d 449, 489 (W.D. Tex. 2022) (Arc of Texas).

The same analysis applies here. District Attorney Ogg by law has authority to enforce criminal statutes within the jurisdictional confines of Harris County, but there is no evidence—nor could there be—that her office provides the "service or benefit" at issue in this case, *i.e.*, voting and voting by mail. REVUP-Texas and the Arc of Texas cannot establish an injury cognizable under Title II of the Americans Disabilities Act that is traceable to District Attorney Ogg.

## III. Plaintiffs Lack Standing to Bring Claims Under Section 504 of the Rehabilitation Act Against District Attorney Ogg

Section 504 of the Rehabilitation Act states no person with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Section 504 of the Rehabilitation Act formed the basis of Title II of the Americans with Disabilities Act, which "tracks the language of section 504 of the Rehabilitation Act" and expanded federal protections against disability discrimination to "cover all programs of state or local governments." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 (5th Cir. 2004). The main difference between the text of the two statutes is that Section 504 of the Rehabilitation Act requires a plaintiff to "prove that the defendant discriminated against him or her *solely* on the basis of disability." *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015). If a right does not exist under Title II of the Americans with Disabilities Act, then it likewise does not exist under Section 504 of the Rehabilitation Act. *Melton*, 391 F.3d at 676 ("We decline

to find that a right . . . is created by the Rehabilitation Act when an identical right does not exist under the ADA.”).

Plaintiffs REVUP-Texas and the Arc of Texas named District Attorney Ogg as a defendant in their claims under Section 504 of the Rehabilitation Act challenging Section 6.04 of S.B. 1.

The Arc of Texas also challenges Section 6.05 of S.B. 1 under Section 504 of the Rehabilitation Act.

Section 6.04 of S.B. 1 amends the language of the oath that must be “administered by an election officer at the polling place” to a person who assists an in-person voter and is not a substantive criminal law enforceable by a district attorney. TEX. ELEC. CODE § 64.034. Section 6.05 of S.B. 1 adds to the information that a person who assists a voter to prepare a mail ballot must enter on the carrier envelope and is not a substantive criminal law enforceable by a district attorney. As discussed previously, neither of these provisions involve laws that are enforced by a district attorney or other prosecutor in the State of Texas, and thus there is no injury caused by Section 6.04 or Section 6.05 that can be traced to District Attorney Ogg and redressed by this Court. *See supra* Part I.A–B. Furthermore, the same reasons why the Plaintiffs’ claims under Title II of the Americans with Disabilities Act fail apply with equal force to the claims raised under Section 504 of the Rehabilitation Act. *See supra* Part II (quoting *LUPE v. Abbott*, 618 F. Supp. 3d at 420); *Melton*, 391 F.3d at 676. Finally, there is also no evidence that the Harris County District Attorney’s Office has discriminated against anyone, much less “*solely* on the basis of disability.” *Taylor*, 798 F.3d at 284. For these reasons, REVUP-Texas and the Arc of Texas cannot establish an injury cognizable under Section 504 of the Rehabilitation Act that is traceable to District Attorney Ogg.

**CONCLUSION**

The remaining statutory claims that are pending against District Attorney Ogg should be dismissed for lack of standing, and District Attorney Ogg respectfully requests that the Court dismiss her as a defendant to the claims that remain pending against her following *Mi Familia Vota v. Ogg*.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*

Eric J.R. Nichols
State Bar No. 14994900
eric.nichols@butlersnow.com
Cory R. Liu
State Bar No. 24098003
cory.liu@butlersnow.com
Victoria A. Giese
State Bar No. 24126391
victoria.giese@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Tel: (737) 802-1800
Fax: (737) 802-1801

**ATTORNEYS FOR DEFENDANT DISTRICT ATTORNEY KIM OGG, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY DISTRICT ATTORNEY**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2024, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols