IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br><br><br>GREGORY W. ABBOTT, et al.,<br><br>*Defendants.* | 5:21-cv-844-XR |
| OCA-GREATER HOUSTON, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br><br><br>JANE NELSON, et al.,<br><br>*Defendants.* | 1:21-CV-0780-XR |

## OCA PLAINTIFFS' BRIEFING ON SUPPLEMENTAL AUTHORITY

On June 21, 2024, this Court ordered the parties to file supplemental briefing addressing any impact that the Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) (*AHM*) might have on the Organizational Plaintiffs' standing in this case. Doc. 1136. The Court additionally ordered the Organizational Plaintiffs to state whether they intend to waive their arguments as to organizational standing and to rely exclusively on associational standing.[1] OCA-Greater Houston (OCA-GH), League of Women Voters of Texas (LWVTX), and REVUP-Texas (REVUP) (together, OCA Plaintiffs) therefore file this supplemental briefing addressing the Court's questions.

---

[1] The Court additionally ordered Plaintiffs HAUL, Mi Familia Vota, and Voto Latino—which rely "on organizational standing *only*"—to show how SB 1 has "'directly affected and interfered with' their 'core' organizational activities apart from any diversion of resources." Doc. 1136 (quoting *AHM*, 602 U.S. at 395).

1

The Supreme Court's *AHM* decision does not affect OCA Plaintiffs' organizational standing because their injuries satisfy the test set out therein. OCA-GH and LWVTX have also proven standing to assert their claims against SB 1's criminal provisions based on a fear of prosecution. OCA Plaintiffs therefore do not waive their arguments as to organizational standing.

## ARGUMENT

At trial, OCA-GH and LWVTX challenged SB 1 Sections 6.06 and 7.04, while REVUP challenged SB 1 Section 6.04 and numerous sections of SB 1 Article 5 (together, "the challenged provisions").[2] Sections 6.04, 6.06, and 7.04 involve potential criminal penalties, while Article 5 does not. As set out in their proposed findings of fact and conclusions of law, OCA Plaintiffs proved their organizational standing to challenge these provisions because they directly affect and interfere with their core activities. OCA-GH and LWVTX *also* proved their organizational standing to bring their challenges to SB 1 Sections 6.06 and 7.04 under a fear-of-prosecution theory. The Supreme Court's reasoning in *AHM* does not affect these findings.

### A. The challenged provisions directly affect and interfere with OCA Plaintiffs' core activities.

In *AHM* the Supreme Court rejected the premise that an organization can "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. at 394. Instead, it is when a defendant's actions have "directly affected and interfered with [the plaintiff organization's] core business activities" that an organization suffers a cognizable injury. *Id.* at 395 (citing *Havens Realty Corp. v. Coleman*, 455

---

[2] Section 6.06 sets out criminal restrictions on mail ballot assistance. Section 7.04 criminalizes so-called "vote harvesting." Section 6.04 amends the Oath of voter assistance and also requires it to explicitly include that it is taken under threat of perjury. SB 1 Article 5 contains the mail ballot ID matching-number requirement and related provisions. *See* Doc. 753 at 5 (Joint Pretrial Order); *see generally* Docs. 848, 852 (OCA Plaintiffs' Proposed Findings of Fact and Conclusions of Law).

U.S. 363 (1982)). This holding directly referenced and reaffirmed the standing framework that the Supreme Court previously outlined in *Havens*. *AHM*, 602 U.S. at 395–96.

In *Havens*, the Court held that a plaintiff-organization that offered housing-counseling services had standing to sue an apartment-complex owner engaged in "racial steering"—providing Black individuals with false information about the availability of rental units. 455 U.S. at 366–68, 378–79. There, the plaintiff ("HOME") had alleged as follows: "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices." *Id.* at 379. The Court concluded that, if "petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers," "there can be no question that the organization has suffered injury in fact," because "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Id.*

The plaintiff-organizations in *AHM* fell short of the *Havens* standard for proving an injury in fact because they failed to show that the defendant's actions caused any "impediment" to their core activities. *AHM*, 602 U.S. at 395. Instead, they claimed only that that they chose to expend resources "engaging in public advocacy and public education" to "oppose [the defendant's] actions." *Id.* at 394.

In contrast, OCA Plaintiffs are "not only . . . issue-advocacy organization[s]," *AHM*, 602 U.S. at 395, but instead engage in a wide variety of core activities like voter-assistance, Get-Out-

3

the-Vote (GOTV), voter-registration, and voter-education services.[3] These voter engagement services require spending time and resources to communicate directly with voters and to hold voter outreach events,[4] both of which are intended to help OCA Plaintiffs' members and other Texans *understand and comply with* the challenged provisions, not merely to advocate for their repeal. *See, e.g.*, *OCA-Greater Houston v. Tex.*, 867 F.3d 604, 612 (5th Cir. 2017). The resources that OCA Plaintiffs divert to provide these services are not aimed at "oppos[ing]" the provisions through "gather[ing] information and advocat[ing] against the defendant's action," as was the case in *AHM*, *see* 602 U.S. at 394, but instead at "mitigating [the provisions'] real-world impact on [their] members and the public," *see OCA-Greater Houston*, 867 F.3d at 612.[5] It is the challenged provisions that act upon—directly affect and interfere with—OCA Plaintiffs' core activities, not the other way around.

Nor do OCA Plaintiffs claim they are "forced" to expend their resources in the sense at issue in *AHM*, where the plaintiff-organizations' expenditures advocating against the FDA's decisions were motivated by "moral" and "ideological" objections. *See* 602 U.S. at 394, 396. OCA Plaintiffs' core activities include both responding to incoming questions and affirmatively engaging with their members and the public. Thus, to avoid the challenged provisions interfering with their core activities, including core voter-assistance and voter-education services, OCA Plaintiffs would have to intentionally refuse to answer incoming questions from voters,[6] as well as nonsensically ignore the provisions during voter outreach, in contravention of their missions to ensure voter access for their members and constituents. OCA Plaintiffs can no more 'choose' to

---

[3]    Doc. 848 ¶¶ 2–9 (LWVTX mission and activities), ¶¶ 14–22 (same, for OCA-GH); Doc. 852 at 9, ¶¶ 24–29 (same, for REVUP).
[4]    *See supra* note 3.
[5]    Doc. 848 ¶¶ 9–13 (listing LWVTX efforts to mitigate impact of challenged provisions), ¶¶ 23–27, 79–85 (same, for OCA-GH); Doc. 852 at 9–10 ¶¶ 30–35 & 107 ¶ 42 (same, for REVUP).
[6]    *See, e.g.*, Doc. 852 at 10 ¶ 33 (REVUP representative explaining that REVUP continually receives phone calls and emails about Section 6.04's "criminalization of the attendant").

4

abandon their core work in the face of the challenged provisions than the plaintiff-organization in *Havens* could have 'chosen' to no longer engage in housing counseling when faced with the defendant's provision of false information. *See Havens*, 455 U.S. at 379; *Tenn. Conference of the NAACP v. Lee*, --- F.3th ----, 2024 WL 3219054, at *14 (6th Cir. June 28, 2024) (recognizing that state chapter of NAACP could potentially establish injury per *AHM* by showing that policy interfered with its "business of registering voters" through its "own choice" to make "expenditure[s] for its voter-registration efforts").[7] Thus, unlike in *AHM*, where the "FDA's actions relaxing regulation of mifepristone" imposed no "impediment" to the plaintiff-organizations' "advocacy businesses," the challenged provisions here "directly affect[] and interfer[e] with" OCA Plaintiffs' "core business activities." *See AHM*, 602 U.S. at 395.[8]

The challenged provisions also directly affect and interfere with many of OCA-GH and LWVTX's core activities even where a diversion of resources may not be as obvious. For example, OCA-GH has discontinued many of its voter outreach events and communications due to the fear of violating SB 1 Sections 6.06 and 7.04,[9] has stopped recruiting and had trouble retaining

---

[7]     That Article 5 of SB 1 (the ID matching-number requirement provisions) does not *directly regulate* REVUP itself does not render its expenditures aimed at mitigating Article 5's effects any less cognizable as injury. *See Lee*, 2024 WL 3219054, at *14 (recognizing that *AHM* "did not question—and indeed, approvingly cited—many other cases in which the [Supreme] Court has allowed 'unregulated' parties to sue a defendant even though the defendant's conduct harmed those parties indirectly" (citing *AHM*, 602 U.S. at 384)).

[8]     Defendants may cite to *Citizens Project v. Colorado Springs*, in which a district court relied in part on *AHM* in finding that several GOTV and voter-participation plaintiff-organizations had "manufacture[d] their standing" to challenge the defendant-city's holding of April off-year elections. *See* 2024 WL 3345229, at *5 (D. Colo. July 9, 2024). But that court failed entirely to assess whether the challenged actions directly affected and interfered with the plaintiffs' core activities, *see id.*, at *4–5, and thought the fact that the plaintiffs had not sued on behalf of any of their members suggested their claimed injuries were "abstract." *Id.* Here, as set out above, OCA Plaintiffs have shown that the challenged provisions directly affect and interfere with their core activities. OCA Plaintiffs have also sued on behalf of their individual members, adducing testimony at trial as to how the challenged provisions have affected those members. There can be no argument that the injuries at issue in this lawsuit are "abstract."

[9]     Doc. 848 ¶¶ 22–27, 79–85, 126–127 (among other changes, OCA-GH now trains volunteers to avoid assisting mail voters; has stopped recruiting voter assistants; no longer provides meaningful voting assistance at candidate forums, instead limiting itself to administrative co-hosting tasks; no longer holds AAPI meet-and-greets in person, only virtually, which has resulted in community attendance plummeting; no longer offers seniors rides to the polls; and no longer provides voting assistance at early voting centers or community centers).

volunteers,[10] and has not provided voting assistance, including language assistance, to *any* voter since these provisions came into effect.[11] Taken together, the challenged provisions have made OCA-GH's work "nearly impossible."[12] Similarly, LWVTX no longer sends volunteer mail ballot assistors to certain assisted care centers because of concerns relating to Section 6.06, and has become increasingly frustrated with how to host candidate forums, and whether it can endorse ballot measures, without running afoul of Section 7.04.[13] In these contexts the challenged provisions directly regulate OCA-GH's and LWVTX's core activities and their choice to divert their resources elsewhere in order to mitigate the provisions' impact constitutes injury in fact. *See AHM*, 602 U.S. at 382 ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements.").[14]

### B. OCA-GH and LWVTX have also established organizational injury based on a fear of prosecution.

In addition to injury in fact based on interference with core activities, an organizational plaintiff may demonstrate injury in fact if it shows "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (cleaned up).[15] This remains unchanged by *AHM*, which had nothing to say about organizational standing based on a fear of prosecution. *See AHM*, 602 U.S. at 393–96. *AHM*

---

[10]   Doc. 848 ¶ 25; Tr. 1725:10–16.
[11]   Doc. 848 ¶ 27; Tr. 1726:21–1727:9.
[12]   Doc. 848 ¶ 27.
[13]   Doc. 848 ¶ 11 (assisted care centers), ¶¶ 75–78 (candidate forums and ballot measures).
[14]   Many of these facts demonstrate OCA-GH's and LWVTX's injuries under both diversion-of-resources and fear-of-prosecution theories of standing, in that the ceasing of their core activities may be characterized as a diversion of resources away from those core activities and as a chilling of their activities due to a fear of prosecution.
[15]   This is true for both organizational standing, *see Susan B. Anthony List*, 573 U.S. at 166–67, as well as associational standing, *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020); *see also* Doc. 846 at 6 (Plaintiffs' Joint Proposed Findings of Fact on the Legal Framework of Plaintiffs' Claims). OCA-GH and LWVTX's desired conduct is indisputably affected with constitutional interests in the right to vote, the right to equal protection of the laws, the right to free speech and association, the due process right to notice of prohibited conduct, and the supremacy of federal law.

6

therefore has no impact on OCA-GH's and LWVTX's organizational standing to challenge SB 1 Sections 6.06 and 7.04 on this basis.[16]

## CONCLUSION

The Supreme Court's decision in *AHM* does not impact OCA Plaintiffs' organizational standing in this case.

Dated: July 11, 2024.                                  Respectfully submitted,

                                                       */s/ Zachary Dolling*

---

[16] *See supra* notes 9–14.

Zachary Dolling
Texas Bar No. 24105809
Sarah Chen*
California Bar No. 325327
Veronikah Warms*
Texas Bar No. 24132682
**TEXAS CIVIL RIGHTS PROJECT**
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Adriana Pinon
Texas Bar No. 24089768
Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Savannah Kumar
Texas Bar No. 24120098
Ashley Harris
Texas Bar No. 24123238
**ACLU FOUNDATION OF TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
skumar@aclutx.org
aharris@aclutx.org

Adriel I. Cepeda Derieux*
Ari Savitzky*
Sophia Lin Lakin*
Dayton Campbell-Harris
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org
asavitzky@aclu.org
slakin@aclu.org
dcampbell-harris@aclu.org

Susan Mizner*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)
smizner@aclu.org

Brian Dimmick*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)
bdimmick@aclu.org

LUCIA ROMANO
Texas State Bar No. 24033013
PETER HOFER
Texas State Bar No. 09777275
CHRISTOPHER MCGREAL
Texas State Bar No. 24051774
**DISABILITY RIGHTS TEXAS**
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lromano@drtx.org
phofer@drtx.org
cmcgreal@drtx.org

Jerry Vattamala*
Susana Lorenzo-Giguere*
Patrick Stegemoeller*
**ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Jessica Ring Amunson*
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

***COUNSEL FOR OCA-GREATER HOUSTON PLAINTIFFS.***
*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on July 11, 2024, through the Electronic Case File System of the Western District of Texas.

*/s/ Zachary Dolling*