**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, <br>     Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, et al., <br>     Defendants. | § § § § § § § § § § | Civil Action No. 5:21-cv-0844-XR <br> (Consolidated Cases) |

**LUPE PLAINTIFFS' BRIEF ON SUPPLEMENTAL AUTHORITY**

## INTRODUCTION

The Court directed the parties to submit supplemental briefing addressing the Supreme Court's recent decision in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). *See* ECF No. 1136. At trial, LUPE Organizational Plaintiffs demonstrated that they have standing to challenge the unconstitutional and unlawful provisions of S.B. 1 because those provisions "directly affect[] and interfere[] with [LUPE Organizational Plaintiffs'] core business activities[.]" *Alliance for Hippocratic Medicine*, 602 U.S. at 395. In addition to directly regulating LUPE Organizational Plaintiffs, S.B. 1 also affects their volunteers and members in ways that make it more difficult for LUPE Organizational Plaintiffs to assist and mobilize voters, thus impairing LUPE Organizational Plaintiffs' ability to carry out their core business activities and fulfill their missions.[1] LUPE Organizational Plaintiffs have suffered and will continue to suffer concrete injuries as a direct result of S.B. 1, and thus have organizational standing to bring this action challenging it.

Nothing in *Alliance for Hippocratic Medicine* changes that. Unlike here, in *Alliance for Hippocratic Medicine*, the challenged governmental action (the FDA's reduced regulation of mifepristone) did *not* regulate the conduct of either the organization or its members. The Supreme Court's ruling clarified the difficulty of obtaining organizational standing in such circumstances, but it did not change the bedrock principle that organizations may "sue on their own behalf for injuries they have sustained." 602 U.S. at 393 (citation omitted). LUPE Organizational Plaintiffs

---

[1] The LUPE Plaintiffs are La Unión del Pueblo Entero, Friendship-West Baptist Church, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, William C. Velasquez Institute, FIEL Houston Inc., and James Lewin. James Lewin is an individual; the remaining LUPE Plaintiffs are referred to throughout this filing as LUPE Organizational Plaintiffs.

1

are doing just that—suing on their own behalf for injuries they have sustained. Accordingly, *Alliance for Hippocratic Medicine* does not disturb their standing to bring any of their claims.

**ARGUMENT**

As a threshold matter, Plaintiffs need to prove only that a single plaintiff has standing to maintain each of their claims in the suit. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Horne v. Flores*, 557 U.S. 433, 446 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so."); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit."). "If at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023). The LUPE Plaintiffs have demonstrated that they have standing to bring each of their claims.[2]

    **A.**    **LUPE Plaintiffs' organizational standing remains unchanged after the decision in *Alliance for Hippocratic Medicine*.**

As the Supreme Court explained in *Alliance for Hippocratic Medicine*, "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." 602 U.S. at 382. That is precisely the situation here: LUPE Organizational Plaintiffs have standing

---

[2] In addition to highlighting examples of the evidence adduced at trial that supports LUPE Organizational Plaintiffs' organizational standing, attached as Appendix A is a chart that sets forth a more comprehensive list of citations to their proposed Findings of Fact that support LUPE Organizational Plaintiffs' standing for each of their claims.

because S.B. 1 forbids them from engaging in activities that they previously conducted and would conduct absent S.B. 1.

For example, S.B. 1 has "perceptibly impaired" LUPE's "ability to provide [get-out-the-vote and voter assistance] services" to its members and constituencies. *Alliance for Hippocratic Medicine*, 602 U.S. at 395 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). LUPE's mission includes voter outreach, civic engagement, and advocacy for nonpartisan ballot measures that benefit the communities it serves. *See, e.g.*, ECF No. 855 ¶ 57. LUPE historically carried out that mission by conducting voter assistance, voter registration and get-out-the-vote efforts. ECF No. 855 ¶¶ 58–65. S.B. 1 directly interferes with those efforts by preventing LUPE from engaging in core activity that it otherwise would engage in.

Before S.B. 1's passage, LUPE staff regularly helped its members with their mail ballots when they came to the LUPE offices requesting assistance, but LUPE now turns members away because Section 6.06 of S.B. 1 exposes LUPE staff to criminal penalties if they provide one-on-one assistance with mail ballots. ECF No. 855 ¶¶ 14–15, 73–74. Because of S.B. 1, LUPE now provides more limited voter assistance—group presentations about mail ballots without any individualized assistance—that is less effective than LUPE's prior activities, which it would resume absent the threat of violating S.B. 1. ECF No. 855 ¶¶ 14–15. Moreover, many LUPE members need one-one-one assistance with their mail ballots because they are visually impaired or low-literate, but S.B. 1 prevents LUPE from providing one-on-one assistance to those members. ECF No. 855 ¶ 73. S.B. 1 thus directly regulates LUPE in ways that undermine the organization's ability to carry out core business activities that it performed before Texas enacted S.B. 1.

In addition, because LUPE does not know if its members will have mail ballots with them during LUPE's in-person advocacy, S.B. 1 has chilled LUPE from engaging in advocacy efforts that it performed before S.B. 1. ECF No. 855 ¶ 118-119. "A plaintiff suffers an Article III injury if the credible threat of a law's enforcement chills his speech or causes self-censorship." *Texas State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022). Jonathan White, who prosecuted election code offenses for the Office of the Attorney General, testified that it would be possible for a community organization, including a non-partisan organization like LUPE, to violate Section 7.04 by paying an organizer to persuade voters in person in the presence of a mail ballot to vote for a ballot measure. ECF No. 854 ¶¶ 390–91. LUPE's Executive Director, Ms. Tania Chavez Camacho, testified that she is "most definitely worried" that LUPE could be investigated or prosecuted for violating Section 7.04's "vote harvesting" provisions based on the provision's plain language and the interactions LUPE had with voters before S.B. 1 was enacted. ECF No. 855 at p. 36 (citing Tr. 92:17–24 (Chavez); Tr. 83:9–12 (Chavez); Tr. 90:21–24 (Chavez)). As she explained, whenever LUPE "cannot do advocacy in the presence of the ballot by mail, it will prohibit the ability to freely do Get Out the Vote efforts," and thus, the law has "inhibit[ed] our ability to be able to advocate for a ballot measure in the presence of a ballot by mail." ECF No. 855 ¶¶ 117–18.

Friendship-West, Texas Impact, FIEL, MABA Texas, and Texas HOPE similarly testified that S.B. 1 prevents their organizations from conducting their core activities of civic engagement and voter assistance. *See, e.g.*, ECF No. 854 ¶¶ 35, 67; ECF 855 ¶¶ 9, 17–18, 22–23, 32, 35–36, 37, 44–52, 53–55, 76–86, 89–91.

*Alliance for Hippocratic Medicine* did not disturb the standing of an organization where it and its members are regulated by the challenged government action. Rather, it dealt with a very different set of facts. That case involved an organization of doctors who sought to challenge FDA's

4

"relaxed . . . regulatory requirements for mifepristone," even though the FDA's more relaxed regulation of that drug did "not requir[e] them to do or refrain from doing anything." *All. for Hippocratic Med.*, 602 U.S. at 373–74. The plaintiffs wanted "FDA to make mifepristone more difficult for other doctors to prescribe and for pregnant women to obtain." *Id.* at 374. The Supreme Court held that the doctors and organization lacked standing, emphasizing that "a plaintiff's desire to make a drug less available *for others* does not establish standing to sue." *Id.*

Furthermore, the resource expenditures made by LUPE Organizational Plaintiffs to try to remedy their direct injuries also support their standing. For example, LUPE's efforts to comply with S.B. 1's regulation of its activities have imposed additional costs on the organization. Unlike the plaintiffs in *Alliance for Hippocratic Medicine*, LUPE is thus not attempting to "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. at 394. Rather, S.B. 1 has "interfered with [LUPE's] core business activities" by making it more expensive and time-consuming for the organization to carry out the *same activities* it carried out before the law was passed. *Id.* at 395. Ms. Chavez testified that S.B. 1 forced LUPE to spend two to three times as much as it used to spend on get-out-the-vote efforts. ECF No. 855 ¶¶ 96–97. LUPE spent additional resources to train canvassers, staff, and others on the limitations the law imposes on their work, precisely because S.B. 1 regulates that work. ECF No. 855 ¶ 97. Moreover, for the November 2023 General Election, S.B. 1 caused LUPE to begin its canvassing efforts much later than it ordinarily would, because the organization was forced to conduct additional staff training to ensure that they would not violate S.B. 1. ECF No. 855 ¶ 87. Canvassing is important to LUPE's mission because it ensures its members receive information about what is on the ballot, and voter turnout declines when LUPE is able to contact fewer voters. ECF No. 855 ¶ 88.

As Ms. Chavez testified, because of S.B. 1, LUPE "will be able to reach fewer voters in the state of Texas for voter advocacy" and will have "less contacts or touch points which will prevent us in being able to inform as many voters as we would like about policies and candidates." Tr. 3598:18–3599:6 (Chavez). Thus, the harm from S.B. 1 is not merely that LUPE has "divert[ed] its resources in response to a defendant's actions." *All. for Hippocratic Med.*, 602 U.S. at 395. To the contrary, S.B. 1 regulates LUPE's conduct, "directly affect[ing] and interfer[ing] with" [LUPE's] core business activities," including voter education. *Id.*

Similarly, FIEL's mission includes voter outreach, voter education, and civil engagement, and it promotes its mission by holding community forums and facilitating voter assistance. ECF No. 855 ¶¶ 49–51, 76–77. S.B. 1 has significantly impeded FIEL's ability to carry out its mission. Despite extensive conversations and training, FIEL staff and members are still uncertain about how to comply with S.B. 1, particularly the provisions requiring assisters to take an oath. ECF No. 855 ¶ 79. FIEL staff have spent double or even triple the amount of time in conversations with voters, including at community forums where FIEL staff have sought to address requirements regarding voter assistance and the oath of assistance. ECF No. 855 ¶¶ 78–79.

In *Alliance for Hippocratic Medicine*, the Supreme Court also emphasized that, even when an organization is not directly regulated, the organization still has standing when third party behavior causes it injury. *Id.* at 383. That is the case here, where LUPE Organizational Plaintiffs also demonstrated that their volunteers and members have "react[ed] in predictable ways" to S.B. 1's regulations "that in turn [has] injure[d] the plaintiffs." *Id.* For example, in response to S.B. 1's regulation of their activities, some LUPE members have stopped volunteering as assisters at the polls, or limit their assistance, and this loss of labor injures LUPE in conducting its core activities of voter assistance and mobilization. ECF No. 855 ¶¶ 10-13. FIEL was forced to discontinue its

6

usual in-person voter assistance efforts and caravans to the polls because volunteer numbers plummeted due to concerns and confusion about complying with S.B. 1. ECF No. 855 ¶¶ 82–84. As a result, FIEL has been unable to reach as many people through its voter outreach and education efforts as it did before S.B. 1. ECF No. 855 ¶¶ 81, 85. FIEL has similarly experienced a decrease in the number of its members willing to be recruited and trained to serve as poll workers, which impairs FIEL's work to promote and increase civic participation. ECF No. 855 ¶ 86.

Similarly, after S.B. 1, MABA Texas's volunteer member participation in voter education activities decreased. MABA Texas has difficulty recruiting volunteers to participate in these activities because of members' concerns about violating S.B. 1, effectively diminishing the organization's voter outreach and injuring MABA Texas's ability to engage in its core activities of outreach to Latino voters on issues that are important to the Latino community and get-out-the-vote efforts. ECF No. 855 ¶ ¶23, 32.

S.B. 1 similarly limits the core activities of Friendship West, Texas Impact, and Texas HOPE. *See* Appendix A.

Therefore, LUPE Organizational Plaintiffs continue to have organizational standing following the Supreme Court's decision in *Alliance for Hippocratic Medicine*, and they do not intend to waive their organizational standing arguments.

### B. *Alliance for Hippocratic Medicine* did not affect the LUPE Plaintiffs' associational and individual standing.

In addition to establishing organizational standing, the LUPE Plaintiffs also demonstrated at trial that they have associational and individual standing to bring their claims. The Supreme Court's decision in *Alliance for Hippocratic Medicine* did not change the standards for assessing the existence of associational or individual standing.

First, LUPE Organizational Plaintiffs have associational standing. At trial, LUPE Organizational Plaintiffs described the many ways in which their members have been harmed and will continue to be harmed by S.B. 1. *See, e.g.*, ECF No. 854 ¶¶ 37–42, 75–81; ECF No. 855 ¶¶ 3–20, 26–28, 32, 35–37. For example, before S.B. 1, FIEL members often assisted other FIEL members with voting. ECF No. 855 ¶ 17. But many FIEL members no longer have access to the assistance they received before S.B. 1 because the FIEL members who previously provided that assistance are now afraid to volunteer at the polls. ECF No. 855 ¶¶ 17–18. Similarly, because LUPE staff and volunteers are either prohibited, deterred, or impeded from providing voter assistance to LUPE members by the challenged provisions of S.B. 1, LUPE member voters have been forced to vote without assistance. ECF No. 855 ¶¶ 10–16; *see also id.* ¶ 8 (MABA Texas members include voters who require assistance to vote and have relied on paid assistors for such assistance). Because their members "have standing to sue in their own right" and the interests at stake "are germane to the organization[s'] purpose[s]," LUPE Organizational Plaintiffs have standing to sue on behalf of their members. *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). That was not true in *Alliance for Hippocratic Medicine*, where the groups' members (doctors) themselves lacked standing.

Second, Plaintiff James Lewin has individual standing to challenge Sections 4.09 and 8.01 of S.B. 1 and described the ways in which those provisions directly regulate his work as an election judge, make his work more burdensome and stressful, create confusion about what he can and cannot do, and interfere with his ability to perform his duties at the polls. ECF No. 854 ¶¶ 85–99. Mr. Lewin fears that he could be criminally prosecuted for violating Section 4.09 because he does not know how to adjust his behavior to adhere to the law or how to adjust the instructions he gives

to his team of poll workers each election. ECF No. 854 ¶ 97. Indeed, Mr. Lewin faces a real threat that he will have to respond to unruly poll watchers and be prosecuted for his response. During the 2020 General Election in Travis County—the same county where Mr. Lewin works as an election judge—a poll watcher became so disruptive, "screaming and yelling, and pounding her hands on the glass windows, that her fellow poll watchers turned her in to the police." ECF No. 854 ¶¶ 197–203; *see also* ECF No. 854 ¶¶ 196–208. This was just one example of poll watchers' disorderly conduct at the polls in recent elections. *See* ECF No. 854 ¶¶ 156–64. In light of these types of incidents, Mr. Lewin has a credible fear that he will have to deal with similarly disruptive poll watchers in Travis County and will violate Section 4.09 while doing so. ECF No. 854 ¶¶ 95–99. As a result, Mr. Lewin faces "a sufficient likelihood of future injury" and has standing to pursue his claims in this case. *All. for Hippocratic Med.*, 602 U.S. at 381.

## CONCLUSION

For these reasons and those stated in previous submissions, the LUPE Plaintiffs have organizational, associational, and individual standing to bring this action. The Court should adjudicate all of the LUPE Plaintiffs' claims.

Dated: July 11, 2024

Respectfully submitted,

| | |
|---|---|
| */s/* Sean Morales-Doyle<br>Sean Morales-Doyle<br>Jasleen K. Singh*<br>Patrick A. Berry*<br>*BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW*<br>120 Broadway, Suite 1750<br>New York, NY 10271<br>Telephone: (646) 292-8310<br>Facsimile: (212) 463-7308<br>sean.morales-doyle@nyu.edu<br>singhj@brennan.law.nyu.edu<br>patrick.berry@nyu.edu<br><br>Leah J. Tulin*<br>*BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW*<br>1140 Connecticut Avenue NW, Suite 1150<br>Washington, DC 20036<br>(202) 650-6397<br>tulinl@brennan.law.nyu.edu<br><br>Elizabeth Y. Ryan<br>(TX Bar No. 24067758)<br>*WEIL, GOTSHAL & MANGES LLP*<br>200 Crescent Court, Suite 300<br>Dallas, Texas 75201<br>(214) 746-7700<br>liz.ryan@weil.com<br><br>Aaron J. Curtis*<br>*WEIL, GOTSHAL & MANGES LLP*<br>767 Fifth Avenue<br>New York, NY 10153<br>aaron.curtis@weil.com<br><br>**Attorneys for Plaintiffs Friendship-West Baptist Church, Texas Impact, and James Lewin** | */s/* Nina Perales<br>Nina Perales (TX Bar No. 24005046)<br>Julia R. Longoria (TX Bar No. 24070166)<br>Fátima L. Menéndez (TX Bar No. 24090260)<br>*MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND*<br>110 Broadway, Suite 300<br>San Antonio, TX 78205<br>Telephone: (210) 224-5476<br>Facsimile: (210) 224-5382<br>nperales@maldef.org<br>jlongoria@maldef.org<br>fmenendez@maldef.org<br><br>Michael C. Keats*<br>Rebecca L. Martin*<br>Jason S. Kanterman*<br>*FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP*<br>One New York Plaza<br>New York, New York 10004<br>Telephone:  (212) 859-8000<br>Facsimile: (212) 859-4000<br>michael.keats@friedfrank.com<br>rebecca.martin@friedfrank.com<br>jason.kanterman@friedfrank.com<br><br>**Attorneys for Plaintiffs La Unión del Pueblo Entero, Southwest Voter Registration Education Project, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, William C. Velasquez Institute, and FIEL Houston Inc**. |

\* Admitted pro hac vice

10

## CERTIFICATE OF SERVICE

I hereby certify that I electronically submitted a true and correct copy of the foregoing via the Court's electronic filing system on the 11th day of July 2024.

*/s /*Nina Perales  
Nina Perales
