IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNIÓN DEL PUEBLO ENTERO, *ET AL.*,

　　　*PLAINTIFFS,*

V.

GREGORY W. ABBOTT, *ET AL.*,

　　　*DEFENDANTS.*

CASE NO. 5:21-CV-00844-XR

**STATE DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTION FOR STAY
PENDING APPEAL OR, IN THE ALTERNATIVE, FOR ADMINISTRATIVE STAY
PENDING APPEAL AND REQUEST FOR EXPEDITED CONSIDERATION**

Defendants Greg Abbott, in his official capacity as Texas Governor; Warren "Ken" Paxton, in his official capacity as Attorney General of Texas; Jane Nelson, in her official capacity as Secretary of State; and the State of Texas (collectively "State Defendants") and Intervenor-Defendants file this Motion to Stay the Court's Findings of Fact and Conclusions of Law on Overbreadth, Vagueness, and Free Speech Challenges to S.B. 1 § 7.04, ECF No. 1157, and the Court's permanent injunction included therein, pending appeal. Alternatively, should the Court deny Defendants' Motion to Stay, State and Intervenor-Defendants request that the Court enter an order granting a seven-day administrative stay to allow the State and Intervenor-Defendants to seek further relief at the appellate level.

The Court should stay its injunction because its ruling involves a serious legal question in which the balance of equities weighs heavily in favor of a stay. State Defendants respectfully urge that the Court's ruling is incorrect for the reasons explained below. Of particular note, the Court's reading of *Purcell* as it applies to this case is incorrect: ballots have been sent to Texas voters, making this the only time in which ballot harvesting can occur. That singular truth lends urgency to this motion because the Court's injunction prevents law enforcement from swift investigatory action based on real-time information concerning vote harvesting. In short, *now* is the only time

when § 7.04 affords law enforcement the opportunity to *prevent* ballot harvesting from interrupting the legal conduct of elections, as opposed to conducting a purely retroactive investigation.

For all these reasons, as further set forth below, a stay while the Fifth Circuit considers the merits of this Court's order is warranted.

### BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Multiple lawsuits soon followed, which were ultimately consolidated into the present action.

This motion stems from Plaintiffs' challenge to S.B. 1 § 7.04 on First and Fourteenth Amendment grounds.  Section 7.04 adds a provision to the Election Code prohibiting vote harvesting, whether directly or through a third party, which it defines as "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015. The prohibition does not apply to activities not performed for compensation or benefit and interactions that do not occur in the presence of a ballot or during the voting process, that do not directly involve an official ballot or ballot by mail, that are not conducted in person with a voter, and activities that are not designed to deliver votes for or against a specific candidate or measure. Tex. Elec. Code § 276.015.

The Court conducted a bench trial beginning on September 11, 2023, and lasting 20 trial days spread across six weeks. Trial consisted of evidence regarding Plaintiffs' multifarious claims against some three dozen provisions of SB 1. The Parties submitted their proposed findings of fact and conclusions of law to the Court on January 19, 2024, and the Court heard closing arguments on February 13, 2024. The Court issued its opinion regarding § 7.04 on Saturday, September 28, 2024—only 38 days before the next general election.

ARGUMENT

Before seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal or for "an order suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Federal Rule of Civil Procedure 62(d) similarly authorizes a court to suspend an injunction during the pendency of an appeal from a final judgment. Fed. R. Civ. P. 62(d). As the Supreme Court has repeatedly explained, there is a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,* 734 F.3d 406, 410 (5th Cir. 2013).

These factors are not applied in "a rigid, mechanical fashion," but rather "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)). A stay is particularly appropriate when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *See Texas v. Ysleta Del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 5589051, at *1–2 (W.D. Tex. March 28, 2019) (granting stay given serious legal question raised and lack of clarity from existing precedent). A stay pending appeal "simply suspend[s] judicial alteration of the status quo," which allows "appellate court[s] to act responsibly," "bring considered judgment" to the matter, and faithfully "fulfill their role in the judicial process." *Nken*, 556 U.S. at 427, 429 (internal quotation marks omitted). Indeed, the Supreme Court has held:

It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held, ... that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.*, at 9–10, 62 S.Ct. 875 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

*Id.* at 421.

More relevant, here, this Court must weigh "considerations specific to election cases"—namely, that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). The Supreme Court therefore has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," and that when they do so, defenders of the status quo have necessarily "made a strong showing that [they are] likely to succeed on the merits of [their] appeal." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566–68 (5th Cir. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (2020)). The "timing of the decisions rather than merits" of the legal questions raised "seems to be the key." *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014); *see, e.g., Husted v. Ohio State Conf. of NAACP.*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election).

Based on these considerations, (1) Defendants are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of a stay; (3) Plaintiffs will not be substantially harmed by a stay; and (4) the public interest favors a stay. Accordingly, all four factors relevant to a stay pending appeal are met here.

## I.  The Court Misapplied the *Purcell* Principle by Focusing Too Narrowly on Procedural Election Processes.

This Court fundamentally misapplied the *Purcell* principle by narrowly limiting its scope to "mechanics and procedures of election law applicable to voting." ECF No. 1157 at 76. But this

cramped analysis misses the broader rationale of *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which extends beyond mere election mechanics to encompass any judicial intervention that risks confusion or disruption as an election approaches. Simply put, *Purcell* places an emphasis on stability and certainty in the lead-up to an election. This principle applies not only to procedural rules but to any changes that could affect the election process, whether they involve procedures, voter eligibility, or the enforcement of laws. This Court's ruling—issued after ballots had already been mailed—embodies the kind of last-minute disruption that *Purcell* was designed to prevent.

Indeed, *Purcell* stands for the proposition that, as an election nears, the status quo should remain undisturbed to avoid creating confusion among voters and overburdening election administrators. The Court's decision to intervene at such a late stage, when the election is mere weeks away and ballots have already gone out, exemplifies the kind of disruptive judicial action *Purcell* guards against. By ordering changes after the electoral machinery was already in motion, the Court's ruling introduces instability into a system that relies on certainty, thereby exacerbating the very confusion *Purcell* seeks to avoid. This late-breaking ruling does not just affect election administrators—it also risks unsettling voters who, having already received their ballots, now face the prospect of changing rules and heightened uncertainty.

As Justice Kavanaugh recently emphasized in *Merrill v. Milligan*, "[w]hen an election is close at hand, the rules of the road must be clear and settled." 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring). This principle is not limited to procedural changes but encompasses any judicial action that risks creating confusion or logistical difficulties as an election approaches. *Purcell* recognizes that even well-intentioned judicial interventions can wreak havoc on the smooth administration of elections when they come too late in the process. In this case, the Court's decision disrupts well-established expectations for election administrators and voters alike, forcing officials to scramble to adjust their procedures while voters are left uncertain about the rules governing their participation.

The Supreme Court has repeatedly applied *Purcell* to stop judicial orders that impose new election rules close to an election—regardless of whether those rules concern voter eligibility,

ballot collection, or election administration. *See, e.g.*, *RNC v. DNC*, 589 U.S. 423 (2020); *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020). In none of these cases did the Court distinguish between procedural and substantive rules or "enforcement proceedings." ECF No. 1157 at 76. Instead, the unifying thread is the recognition that last-minute judicial tinkering with election laws creates unacceptable risks of confusion and disruption. The Court's intervention here falls squarely within this forbidden territory, upending established processes mere weeks before Election Day and undermining the integrity of the electoral process.

Even accepting the Court's overly narrow interpretation of *Purcell*, the reality is that Section 7.04 directly impacts election procedures. Section 7.04 regulates in-person interactions with voters in the presence of ballots, prohibiting paid canvassers from attempting to influence votes when a ballot is physically present. This is not some abstract, theoretical issue—it is a procedural safeguard that governs interactions during the voting process itself and safeguards the integrity of elections. Now that ballots have been mailed, the application of Section 7.04 is at its peak, making the Court's late-breaking decision even more disruptive.

To that end, the timing of this ruling could not be worse. The trial concluded nearly a year ago, and closing arguments were presented eight months ago. Yet the Court waited until after ballots were mailed to issue its opinion, compounding confusion, and creating a logistical nightmare for election officials. Texas election law mandates that ballots be mailed 45 days before the election for vote-by-mail voters, Tex. Elec. Code § 86.004(b); *see also* 52 U.S.C. § 20302(a)(8), and those ballots are now in circulation. To impose a change at this stage not only strains election administrators but also undermines voter confidence in the electoral process. As *Purcell* warns, such last-minute judicial action "can result in voter confusion" and be an "incentive to remain away from the polls." 549 U.S. 1 at 4–5. That risk is even greater here, as multiple Plaintiff Organizations have complained about training and educating Texans about Section 7.04, *see, e.g.*, Tr. 1620:2–6, 1628:2–15, Tr. 1723:14–19 (Sept. 21, 2024), but now do not have the time to communicate the Court's changes given the immediacy of the election.

In sum, the Court's narrow focus on procedural election processes is inconsistent with the broad application of the *Purcell* principle. *Purcell* and its progeny make clear that any judicial intervention near an election risks disrupting the election process, period. As Justice Kavanaugh aptly noted, "[i]t is one thing for a State. . . to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Merrill*, 142 S. Ct. at 881. The Court's late intervention introduces exactly the kind of confusion and logistical hurdles that *Purcell* seeks to prevent, forcing election administrators to reconfigure their operations mid-election cycle, and leaving voters uncertain about the rules governing their participation. For these reasons, the Court's ruling should be stayed pending appeal to preserve the integrity of the upcoming election and prevent the disruption that *Purcell* and its progeny are designed to avoid.

## II.    State Defendants Are Likely to Succeed on the Merits.

State Defendants are likely to succeed on the merits for three reasons. ***First***, sovereign immunity bars Plaintiffs' claims. ***Second,*** Plaintiffs lack standing. ***Third,*** Plaintiffs are unlikely to succeed on the merits of their claims under the First and Fourteenth Amendments.

### A.  Sovereign immunity bars Plaintiffs' claims.

This Court erred in concluding that sovereign immunity does not protect the State Defendants from Plaintiffs' claims. *See* ECF No. 1157 at 27–33. Sovereign immunity, as established in the Eleventh Amendment and reaffirmed by centuries of jurisprudence, protects states from suits by private individuals in federal courts unless an exception applies. *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022). As the Supreme Court explained, sovereign immunity preserves the "residual sovereignty" of the states. *Alden v. Maine*, 527 U.S. 706, 715 (1999). Here, no exception to sovereign immunity applies, and the Court's reliance on *Ex parte Young* is misplaced and improperly stretches the exception beyond its intended scope.

The Court's analysis largely disregards the strict limitations that sovereign immunity imposes on federal court jurisdiction over state officials. It is well-settled law that individuals may not sue a state or state officials unless the state consents to the suit or Congress unequivocally

abrogates immunity in the specific context. Neither occurred here. By allowing Plaintiffs to proceed against the State Defendants, the Court's ruling undermines the core principles of state sovereignty and exceeds the boundaries established by precedent.

### 1.   The *Ex parte Young* exception does not apply to the Secretary of State.

The Court's application of the *Ex parte Young* exception to the Secretary of State is flawed. ECF No. 1157 at 27–34. Under *Ex parte Young*, state officials may be sued in their official capacity only if they have a direct connection to the enforcement of the challenged law. This connection must be more than a general duty to enforce the law—it must involve a "particular duty" to enforce the specific provision being challenged, and the official must demonstrate a willingness to do so. *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)).

The Court failed to properly analyze the Secretary of State's limited role in the enforcement of S.B. 1. *Texas Alliance for Retired Americans*, 28 F.4th at 672. The Secretary's role is largely administrative and informational, not enforcement focused. The Court, however, glossed over this distinction and incorrectly extended the *Ex parte Young* exception to the Secretary of State based on a general duty to oversee elections—a position squarely rejected by the Fifth Circuit in *TDP II* and *City of Austin*.

For instance, Article II of S.B. 1 involves voter registration and the maintenance of voter rolls, functions handled by local officials. The Secretary's role is limited to sharing information, which does not constitute enforcement through "compulsion or constraint" as required by *Ex parte Young*. Similarly, Articles III and IV, which govern election procedures and security, assign enforcement duties to local election officials, not the Secretary of State. The court improperly ignored this clear delineation of responsibilities in reaching its conclusion.

Moreover, the Court did not address the critical distinction that mere oversight of elections does not equate to the enforcement of specific statutory provisions. The Fifth Circuit has consistently rejected attempts to impose *Ex parte Young* liability on state officials who are not directly responsible for enforcing the challenged law. *City of Austin v. Paxton*, 943 F.3d 993, 1000

(5th Cir. 2019). The Secretary of State's role is administrative and does not involve compelling or constraining anyone to comply with S.B. 1. By misapplying the *Ex parte Young* exception, the Court undermined established sovereign immunity protections.

### 2. The Attorney General lacks the requisite enforcement connection under *Ex parte Young*.

The Court also erred in applying the *Ex parte Young* exception to the Attorney General. Like the Secretary of State, the Attorney General lacks a sufficient enforcement connection to S.B. 1 to fall within the exception. The Court failed to appreciate that simply being the state's chief legal officer does not automatically make the Attorney General a proper defendant under *Ex parte Young*. As the Fifth Circuit held in *City of Austin*, the Attorney General's "habit" of enforcing state law does not satisfy the requirement for a specific enforcement connection to the challenged provisions. *City of Austin*, 943 F.3d at 1000–02.

More critically, the Texas Court of Criminal Appeals has ruled that the Attorney General does not have the unilateral authority to prosecute criminal violations of election law. *State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021). This ruling fundamentally undercuts the Court's analysis. The Court did not meaningfully grapple with this significant limitation on the Attorney General's enforcement powers and incorrectly presumed that the Attorney General has the authority to enforce S.B. 1's provisions, when such enforcement falls to local prosecutors. ECF No. 1157 at 17.

Additionally, the Court speculated that the Attorney General might assist local prosecutors in enforcing S.B. 1, ECF No. 1157 at 44, but this conjecture is insufficient to satisfy the strict requirements of *Ex parte Young*. As the Fifth Circuit held in *In re Abbott*, "speculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing" criminal laws is inadequate to support an *Ex parte Young* action. *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020). The Court's reliance on this speculative possibility is legally insufficient and undermines the proper application of sovereign immunity.

### 3. This Court failed to adequately address the limits of the *Ex parte Young* exception.

The Court's analysis also faltered by failing to recognize the inherent limitations of the *Ex parte Young* exception. The Fifth Circuit has made clear that the *Ex parte Young* exception applies only when state officials have a direct and specific enforcement role. It is not enough that an official is responsible for the general administration of a statute or that they might, at some point, be called upon to enforce it.

In this case, the court should have adhered to the Fifth Circuit's precedent in *City of Austin*, which emphasizes the narrow application of the *Ex parte Young* exception. The Court disregarded this precedent, instead applying an overly broad interpretation of *Ex parte Young* that contravenes established sovereign immunity protections. By failing to properly assess the enforcement roles of the Secretary of State and Attorney General, the court misapplied the exception and allowed Plaintiffs' claims to proceed against state officials who are immune from suit.

### 4. Plaintiffs have shown no other basis for overcoming sovereign immunity.

Besides misapplying the *Ex parte Young* doctrine, the Court failed to address the fact that Plaintiffs did not establish any alternative basis for overcoming sovereign immunity. Sovereign immunity bars suits unless Congress has unequivocally abrogated it or the state has expressly waived it. *City of Austin*, 943 F.3d at 997. Plaintiffs made no showing that Congress has abrogated Texas's sovereign immunity for their claims or that Texas has consented to be sued in this context. Without such a showing, the Court should have dismissed the claims against the State Defendants on sovereign immunity grounds.

In conclusion, Court's rejection of the State Defendants' sovereign immunity defense was legally flawed. By misapplying the *Ex parte Young* exception and failing to adhere to controlling Fifth Circuit precedent, the court improperly allowed Plaintiffs' claims to proceed against state officials who are immune from suit.

### B. Plaintiffs lack standing.

The Court's reasoning that plaintiffs have standing to challenge Section 7.04 of S.B. 1 is fundamentally flawed. ECF No. 1157 at 34–45. Plaintiffs assert an organizational injury to their speech based on a speculative overbreadth argument, but this rests on far-fetched hypothetical scenarios that have no basis. *See also infra* I(C)(2)(a). To satisfy standing requirements, this type of self-censorship must arise from a fear of prosecution that is not "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979). A fear of prosecution is "imaginary or wholly speculative" where plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

For example, Plaintiffs claim a paid canvasser could unknowingly violate Section 7.04 simply because a ballot might be hidden somewhere in the room or in a voter's purse. These scenarios lack any factual support; Plaintiffs presented no real evidence that such a situation has ever occurred or would plausibly occur. Texas prosecutors have neither investigated nor prosecuted anyone under such circumstances.

The statute also includes a scienter requirement, which ensures that accidental or inadvertent conduct is not criminalized. *See Infra* I(C)(1). The law specifically targets intentional and knowing acts of delivering votes for compensation, thus undermining plaintiffs' fears of prosecution for innocent conduct. This speculative fear does not meet the requirement for standing under established Supreme Court precedent, including *Babbitt*, 442 U.S. 289 and *Younger v. Harris*, which require plaintiffs to demonstrate a credible, not speculative, fear of prosecution.

For these same reasons, the Court's reliance on *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), is misplaced. ECF No. 1157 at 42. Plaintiffs fail to show they face as daunting a threat of enforcement as Lorie Smith did in *303 Creative*. *See* 600 U.S. at 580 (Smith was required to show 'a *credible* threat' existed that Colorado would, in fact, seek to compel speech from her that she did not wish to produce.") (emphasis added) (citation omitted). Indeed, Smith pointed to a recent, concrete example of a prosecution under similar circumstances to substantiate that "credible threat," *id*. at 581-82, whereas Plaintiffs indisputably lack such evidence here.

Similarly, Plaintiffs' attempt to argue that Section 7.04 chills their speech also falls short. The Texas Secretary of State and the Attorney General do not possess enforcement authority under this provision. *Supra* at I(A)(1)–(2). Enforcement lies with local district attorneys, and Plaintiffs have failed to show a credible threat of enforcement from any district attorney. As a result, their standing argument lacks the constitutional foundation required for them to proceed with this claim.

### C.  Plaintiffs are unlikely to succeed on the merits of their Claims under the First and Fourteenth Amendments.

Section 7.04 is neither facially overbroad, unconstitutional as applied to Plaintiffs, nor vague. ***First***, Plaintiffs' facial overbreadth challenge fails as they do not demonstrate that a substantial number of the statute's applications are unconstitutional compared to its legitimate scope. Their hypotheticals are far-fetched and lack real-world evidence. The scienter requirement ensures that only intentional vote-buying is penalized, further narrowing its scope. ***Second***, Section 7.04 withstands scrutiny under the *Anderson/Burdick* framework as it imposes only a minimal burden on speech, narrowly targeting paid canvassers who influence voters in the presence of a ballot. The statute's limited application serves the State' compelling interest in protecting voters from undue influence, making it constitutional even under strict scrutiny. ***Finally***, Section 7.04 is not impermissibly vague. It clearly defines prohibited conduct, such as in-person interactions aimed at influencing a voter for compensation, and includes a scienter requirement to address any concerns. Plaintiffs' challenge is premature, speculative, and does not establish that the statute is vague in all applications.

### 1.  The prohibition on vote harvesting is not facially overbroad.

To prevail on a facial overbreadth challenge, Plaintiffs bear the burden of proving that "a substantial number of [Section 7.04's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). But the Court erred in accepting

Plaintiffs' facial challenge without properly applying this stringent standard. ECF No. 1157 at 53–59.

For starters, Plaintiffs' hypothetical examples used to argue overbreadth are far-fetched and implausible. Their scenarios include situations such as a paid canvasser unknowingly advocating for a particular vote while a ballot is hidden somewhere in the room or even in a voter's purse. *See*, *e.g.*, ECF No. 208 ¶ 294; Tr. 1780:17–1781:4 (Sept. 22, 2023). However, Plaintiffs presented no real evidence—neither at trial nor in their pleadings—that such a scenario has ever occurred or would realistically occur under Section 7.04. Indeed, no evidence was provided that Texas prosecutors have investigated, much less prosecuted, individuals under such circumstances.

In fact, Section 7.04 is explicitly limited by its scienter requirement, which requires knowledge and intent to deliver votes in exchange for compensation. *See* SB 1 §§ 7.04(b)-(d); Tex. Penal Code § 6.02(c); ECF No. 1157 at 65–66. The statute does not penalize accidental or inadvertent conduct, a fact that further undermines the Plaintiffs' hypothetical fears of prosecution for innocent or unwitting acts. As a result, Plaintiffs' overbreadth argument relies on speculative, rather than real-world, applications of the statute.

Further, the Court must analyze overbreadth claims by considering real-world conduct, not improbable hypotheticals. *See United States v. Williams*, 553 U.S. 285, 301 (2008) ("[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."). Here, the Court wrongly credited Plaintiffs' fanciful hypotheticals rather than focusing on concrete evidence. The record shows that Section 7.04 has not been enforced against unwitting canvassers or anyone engaged in the innocent scenarios Plaintiffs describe.

Moreover, Section 7.04 serves a legitimate state interest in protecting voters from undue influence during the voting process. *Contra* ECF No. 1157 at 59–62. As explained at trial by former Secretary of State Keith Ingram, Section 7.04 allows organizations to pay canvassers for legitimate voter outreach while ensuring that voters are not harassed or pressured while completing their mail-in ballots. Tr. 1915:17–19 (Sept. 22, 2023). This purpose mirrors the State's protections for

in-person voters, who benefit from laws requiring canvassers to remain 100 feet from polling places. *See* Tex. Elec. Code Ann. § 61.003, 85.036. The U.S. Supreme Court has upheld such distance restrictions as constitutional and necessary to maintain the integrity of the voting process. *Burson v. Freeman*, 504 U.S. 191, 210 (1992).

The Court also erred in failing to recognize Section 7.04's "plainly legitimate sweep." *Stevens*, 559 U.S. at 473. ECF No. 1157 at 53–59. By enacting Section 7.04, Texas has extended valid protections to mail-in voters that are analogous to those afforded to in-person voters. The statute prevents paid partisans from haranguing citizens while they complete their ballots, a restriction that is entirely reasonable and constitutional. Given the clear state interest in preventing voter intimidation and ensuring the sanctity of the ballot, Section 7.04's protections fall squarely within its legitimate scope.

Finally, Plaintiffs' facial challenge is premature. As the Supreme Court has noted, courts must give states the opportunity to implement laws in a manner consistent with the Constitution. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008). Texas has not had the opportunity to enforce Section 7.04 in the unreasonable ways that Plaintiffs hypothesize, and it is wrong to assume that state prosecutors will interpret the law in an unconstitutional manner.

For these reasons, the Court erred in concluding that Section 7.04 is facially overbroad. Plaintiffs failed to meet their burden of demonstrating that a substantial number of the statute's applications are unconstitutional in relation to its plainly legitimate sweep.

### 2. The prohibition on vote harvesting is not unconstitutionally vague.

#### a. The Court erred in entertaining Plaintiffs' pre-enforcement facial challenges.

The Court prematurely entertained Plaintiffs' facial vagueness challenge to Section 7.04. ECF No. 1157 at 66–72. Pre-enforcement vagueness challenges should generally be disfavored, particularly when the law has not yet been enforced, and factual contexts are lacking. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008) (explaining that assessing facial

vagueness in a pre-enforcement context is often "difficult, perhaps impossible, because facts are generally scarce"). A vagueness challenge is most appropriate as a defense to prosecution, where the facts can be properly evaluated. *Burson v. Freeman*, 504 U.S. 191, 210 n.13 (1992); *Schirmer v. Edwards*, 2 F.3d 117, 124 (5th Cir. 1993).

This case exemplifies why pre-enforcement challenges are improper. During the trial, no witness testified that they had been prosecuted, threatened with prosecution, or received a civil penalty under Section 7.04. *See* Tr. 581:2–9, 633:4–19 (Sept. 13, 2023). Plaintiffs' arguments were based solely on speculation as to how Texas prosecutors and courts might enforce the law. For example, Plaintiffs hypothesized that unwitting canvassers would be prosecuted for advocating in the presence of a hidden mail ballot. *See* Tr. 1780:17–1781:4 (Sept. 22, 2023). However, as explained by former Director of Elections Keith Ingram, the statute does not reach such conduct. Tr. 1915:17–19 (Sept. 22, 2023); Tr. 4434:20–4435:18 (Oct. 18, 2023).

Because there is no real-world application of the law to evaluate, Plaintiffs' challenge is speculative. Under these circumstances, the proper course is to allow Texas courts to interpret and apply Section 7.04 in actual cases. If enforcement actions arise, Texas courts may limit the application of the statute as necessary, rather than facially invalidating it based on hypothetical scenarios. *Burson*, 504 U.S. at 210 n.13.

**b.   In any event, the Court erred in finding Section 7.04 void for vagueness.**

The Due Process Clause requires that laws provide "fair notice" of what conduct is proscribed, but it does not demand impossible clarity or perfection. *Sessions v. Dimaya*, 584 U.S. 148 (2018). Many constitutional statutes necessarily contain imprecise language, and vagueness challenges succeed only when a statute is "impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). This standard is highly deferential to legislatures, and Plaintiffs have not met this high bar. Section 7.04 provides clear and specific standards for prohibited conduct. It criminalizes instances where a person engages in an "in-person interaction" with a voter, in the physical presence of a ballot, with the intent to influence the voter's choice, while receiving compensation. Tex. Elec. Code Ann. § 276.015. The

language of Section 7.04 is straightforward, and each element of the crime is clearly defined. There is no genuine ambiguity in the statute's application to the archetypal scenario it is designed to address—paid canvassers attempting to influence voters while in the immediate presence of a ballot.

The Court's finding that the term "physical presence" is vague is wrong. ECF No. 1157 at 68–70. Similar language is found in numerous statutes and does not pose constitutional vagueness concerns. *See*, *e.g.,* 42 U.S.C. § 3030s(a) (referring to "in-person interaction"). Further, the law does not demand that legislatures draft statutes with mathematical precision, nor must they eliminate every potential scenario in which terms could be stretched. *Roark & Hardee LP*, 522 F.3d at 548.

Moreover, Texas law requires that prosecutors prove scienter for every element of a criminal offense. *Contra* ECF No. 1157 at 65–66. This requirement addresses any concerns about vagueness in Section 7.04. To secure a conviction, prosecutors must demonstrate that the defendant was at least reckless in disregarding the risk that they were engaging in proscribed conduct, including the risk that they were in the presence of a ballot. Tex. Penal Code §§ 6.02(c), 6.03(c). The inclusion of a scienter requirement mitigates any potential vagueness issues. *See Village of Hoffman Estates*, 455 U.S. at 499 & n.14.

This Court also found that the term "compensation or other benefit" is vague. ECF No. 1157 at 68–70. But the statutory definition of "benefit" as anything reasonably regarded as a gain or advantage is clear. TEC § 276.015(a)(1). Plaintiffs' objection here is not one of vagueness but of policy disagreement with the legislature's decision to regulate paid vote-harvesting activities.

Finally, Section 7.04 is not vague in all its applications. The statute clearly applies to the prototypical scenario in which a paid canvasser pressures a voter to fill out a mail ballot in the canvasser's presence. Tr. 1912:22–1913:13, 1915:3–25, 1917:23–1918:3 (Sept. 22, 2023). There is nothing ambiguous about this core application of the law, which squarely fits within the statute's plain language.

In conclusion, the Court's holding that Section 7.04 is void for vagueness was erroneous. The Plaintiffs' pre-enforcement challenge was speculative and premature, and even if considered, Section 7.04 is clear, provides fair notice, and withstands constitutional scrutiny.

### 3. The prohibition on vote harvesting is not unconstitutional as applied to Plaintiffs' speech.

#### a. The Court applied strict scrutiny when it should have applied the *Anderson/Burdick* test.

The Court erred in finding Section 7.04 unconstitutional as applied to the Plaintiffs. ECF No. 1157 at 72–74. The correct analytical framework for determining the constitutionality of election laws with incidental effects on speech is the *Anderson/Burdick* test, rather than strict scrutiny. *Voting for America, Inc.*, 732 F.3d at 387–88. *Contra* ECF No. 1157 at 49. Under this framework, courts first determine whether the election rule imposes a "severe" burden on protected speech. If the burden is severe, the rule must be "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). However, if the burden is less than severe, the rule is justified by "important regulatory interests." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

Section 7.04 withstands scrutiny under the *Anderson/Burdick* framework because it imposes only an incidental and modest burden on speech. The statute is narrowly tailored and applies only to highly specific situations: namely, when paid canvassers engage with voters in the physical presence of a ballot and attempt to influence how those voters cast their votes. Tr. 1912:22–1913:13, 1915:3–25, 1917:23–1918:3 (Sept. 22, 2023). It does not broadly restrict canvassing activities outside these narrowly defined parameters. Tr. 1915:17–19 (Sept. 22, 2023).

Further, Section 7.04 only applies when the canvasser knowingly interacts with a voter in the presence of a ballot. This limitation ensures that the statute applies only to a narrow range of scenarios. The statute also explicitly exempts activities that are not compensated or that do not occur in the presence of a ballot, thereby further limiting its reach. Tex. Elec. Code Ann. § 276.015(e). Consequently, paid canvassers remain free to engage in advocacy so long as

they are not in the immediate presence of a ballot—a situation that will constitute most interactions. Tr. 4434:20–4436:14 (Oct. 18, 2023).

This approach mirrors constitutionally permissible restrictions on solicitation near polling places, which the Supreme Court has upheld as necessary to prevent undue influence and protect voters from harassment. *Burson v. Freeman*, 504 U.S. 191, 210 (1992). Section 7.04's modest restrictions serve the same compelling interest: ensuring that voters are free from undue influence while completing their ballots. This concern is particularly acute in the context of mail-in voting, where voters may be more vulnerable to pressure from paid partisans, especially elderly voters. *See Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016). The State's compelling interest in preventing such influence justifies the statute's modest and narrowly tailored burden on speech.

### b. Even under strict scrutiny, Section 7.04 is not unconstitutional.

All 50 states have laws requiring secret ballots and limiting access to polling places to prevent voter coercion. *See Burson*, 504 U.S. at 206. These laws reflect the widely accepted notion that protecting voters from undue pressure while they are voting is a compelling state interest. *Id.* at 199. The same concerns that justify protecting in-person voters apply even more forcefully to mail-in voters, who lack the protections of in-person voting overseen by election officials. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021). Section 7.04 simply extends these legitimate protections to mail-in voting.

Beyond that, the statute is narrowly tailored to address the State's interest in preventing undue influence. *Contra* ECF No. 1157 at 60–62. It only restricts paid canvassers from advocating while physically in the presence of a ballot—a moment when the risk of pressure is highest. Tr. 1912:22–1913:13, 1915:3–25, 1917:23–1918:3 (Sept. 22, 2023). The statute thus respects voters' ability to make free and independent choices without undue interference during the voting process. As the Supreme Court noted in *Minnesota Voters All. v. Mansky*, 585 U.S. 1 (2018), "voting is a weighty civic act," and states are entitled to ensure that voters can contemplate their choices in an environment free from pressure. *Id.* at 15.

The Court's reliance on *Meyer v. Grant*, 486 U.S. 414 (1988), is misplaced. ECF No. 1157 at 49, 51, 73. Unlike the Colorado law struck down in *Meyer*, which prohibited campaigns from paying canvassers to solicit votes under any circumstances, Section 7.04 leaves a wide range of canvassing activities untouched. Paid canvassers remain free to advocate for their preferred candidates or issues outside the narrow context of being in the presence of a voter's ballot. Tex. Elec. Code § 276.015(e). The statute merely imposes a modest restriction on timing—allowing paid canvassing to take place at any time and location except when the voter is actively filling out their ballot in the canvasser's presence. This tailored limitation ensures that voters are shielded from undue influence without unduly burdening canvassers' free speech rights.

In sum, Section 7.04's limited, as-applied restriction on paid canvassing while in the presence of a ballot does not impose an unconstitutional burden on Plaintiffs' rights. The statute's clear boundaries and narrow tailoring advance Texas's compelling interest in protecting the integrity of its elections and preventing undue influence on voters. Thus, the Court's finding of unconstitutionality as applied to Plaintiffs was wrong.

### III.    State Defendants and the Public Interest Will Be Irreparably Injured Absent a Stay

Enjoining officials from carrying out validly enacted, constitutional laws governing elections imposes irreparable harm. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). And it is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974). The permanent injunction undermines those crucial interests as the election draws near, whereas "[a] temporary stay will, at a minimum, minimize confusion among voters and county registrars by making voter registration law uniform throughout the state in the crucial months leading up to the voter

registration deadline." *Vote.Org*, 39 F.4th at 309. If there is one principle that can be drawn from the Supreme Court's recent voting cases, it is this: "court changes of election laws close in time to the election are strongly disfavored." *Tex. All. for Retired Ams.*, 976 F.3d at 567. And notably, when a State is the moving or appealing party, "its interest and harm merge with the public." *Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022) (quoting *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).

Here, the Court's order upsets those crucial interests. Enjoining the challenged provisions risks sowing confusion amongst county election officials and voters in the weeks before an important election.

## IV.    Plaintiffs Will Not Be Substantially Injured by a Stay.

The Court must also consider whether issuance of a stay will substantially injure Plaintiffs. In considering that factor, "the maintenance of the status quo is an important consideration in granting a stay." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021). Here, a stay would maintain the status quo that has existed in Texas since September 7, 2021, when S.B. 1 was signed into law. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). In contrast, this Court's injunction would incite a state of confusion (1) in voters who are voting in the same election under different standards and (2) in county election officials who are attempting to determine which standard to apply to which voter at which point in time. This danger of confusion is heightened because counties would have started mailing out ballots before the Court's order was rendered.

### CONCLUSION & RELIEF REQUESTED

Therefore, the Fifth Circuit should have the opportunity to review this Court's decision before Texas's law is permanently enjoined and the State—and corresponding public interest—is irreparably harmed. State Defendants respectfully request that the Court grant this motion by 5:00 p.m. CST on October 2, 2024.

Date: September 30, 2024                        Respectfully submitted.

KEN PAXTON                                      */s/ Ryan G. Kercher*
Attorney General of Texas                       RYAN G. KERCHER
                                                Deputy Chief, Special Litigation Division
BRENT WEBSTER                                   Tex. State Bar No. 24060998
First Assistant Attorney General

                                                KATHLEEN T. HUNKER
RALPH MOLINA                                    Special Counsel
Deputy First Assistant Attorney General         Tex. State Bar No. 24118415

AUSTIN KINGHORN                                 WILLIAM D. WASSDORF
Deputy Attorney General for Legal               Assistant Attorney General
Strategy                                        Tex. State Bar No. 24103022

JAMES LLOYD                                     ZACHARY W. BERG
Deputy Attorney General for Civil               Special Counsel
Litigation                                      Tex. State Bar No. 24107706

                                                OFFICE OF THE ATTORNEY GENERAL
                                                P.O. Box 12548 (MC-009)
                                                Austin, Texas 78711-2548
                                                Tel.: (512) 463-2100
                                                ryan.kercher@oag.texas.gov
                                                kathleen.hunker@oag.texas.gov
                                                will.wassdorf@oag.texas.gov
                                                zachary.berg@oag.texas.gov

                                                COUNSEL FOR STATE DEFENDANTS

JOHN M. GORE
E. STEWART CROSLAND
LOUIS J. CAPOZZI, III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

**COUNSEL FOR INTERVENOR-DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I certify that State Defendants reached out to counsel via email during the evening of September 30, 2024. Counsel for OCA Plaintiffs, LUPE Plaintiffs, HAUL Plaintiffs, and LULAC Plaintiffs indicated that they were opposed to this motion; counsel for the United States and Dallas County Defendants indicated that their clients take no position on the motion. Counsel for Intervenor-Defendants consent to the motion. Counsel for the remaining parties, including MFV Plaintiffs, have not yet responded as to whether they oppose this motion.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 30, 2024, and that all counsel of record were served by CM/ECF.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER