IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 5:21-CV-0844-XR |
| | § | [Consolidated Cases] |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

**ORDER DENYING MOTION FOR STAY PENDING APPEAL OF THE COURT'S PERMANENT INJUNCTION AS TO TEX. ELEC. CODE § 276.015**

On this date, the Court considered the State Defendants' opposed motion to stay pending appeal (ECF No. 1159) of the Court's order enjoining the enforcement of TEX. ELEC. CODE § 276.015 (the "Canvassing Restriction"). After careful consideration, the motion is **DENIED**.

## BACKGROUND

In September 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Tex. Leg., An Act Relating to Election Integrity and Security, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Multiple lawsuits soon followed, which were ultimately consolidated into this action. The cases were tried to the bench in September and October 2023.

On September 28, 2024, this Court issued its Findings of Fact and Conclusions of Law (the "Order") as to Plaintiffs' free speech and due process challenges to TEX. ELEC. CODE ("TEC") § 276.015, concluding that the Canvassing Restriction is unconstitutional under the First and Fourteenth Amendments, both facially and as applied to Plaintiffs' voter outreach activities. *See* ECF No. 1157.

The Canvassing Restriction creates three new, third-degree felonies under the Election Code, each imposing up to ten years in prison and a fine of up to $10,000 on anyone who gives,

offers, or receives some "compensation or other benefit" for an "in-person interaction" with a voter in the "physical presence" of an official ballot or a ballot voted by mail, "intended to deliver votes for a specific candidate or measure." TEC § 276.015(a)(2). [1] The Canvassing Restriction does not define "compensation" or "physical presence" and nothing in its text limits its application to instances of voter fraud, coercion, or harassment, or speech that occurs while a voter is actively completing their ballot.

Plaintiffs are membership-driven, non-partisan civil rights and social advocacy groups in Texas that regularly conduct in-person voter outreach and engagement activities, such as block-walking and candidate forums. Plaintiffs have endorsed ballot measures (and some have supported candidates) aligned with their organizational missions and deployed staff, independent contractors and volunteers to engage with voters in person to increase turnout and electoral support for their causes. Plaintiffs' volunteers often receive refreshments, t-shirts, pens, gas cards, and other tokens of appreciation for their canvassing and assistance efforts. Plaintiffs' voter engagement activities generally occur in the weeks before elections (when they are most effective), when voters are likely to have received their mail ballots. During some outreach events, voters have taken out their mail ballots while speaking with Plaintiffs' organizers to ask questions about their ballots or request voting assistance.

Plaintiffs fear that the Canvassing Restriction will subject their organizations, staff, and volunteers—and even the voters the provision purportedly protects—to criminal liability for engaging in ordinary and routine in-person interactions during elections. To avoid putting staff members and volunteers in legal jeopardy under the Canvassing Restriction, Plaintiffs and their

---

[1] Section 7.04 of S.B. 1 also added TEC provisions addressing the solicitation of applications to vote by mail (TEC § 276.016), the distribution of early voting ballots and balloting materials (TEC § 276.017), and unauthorized alterations to election procedures (TEC § 276.019). For the purposes of this order, however, "Section 7.04" refers only to the Canvassing Restriction, codified at TEC § 276.015.

members have limited their in-person interactions with voters in the weeks before elections, when voters are most likely to have mail ballots in their possession—and when Plaintiffs' speech is most critical. Some organizations have stopped hosting in-person events when mail ballots are sent out and have resorted to alternative means of communication with voters (e.g., text messages) that have turned out to be much less effective. Other organizations have trained their staff to stop speaking in support of a ballot measure if they notice that they are in the presence of a mail ballot.

Trial testimony demonstrated widespread confusion about the meaning of the Canvassing Restriction. Witnesses were particularly uncertain about how to interpret the terms "compensation" and "physical presence"—neither of which is defined in the statute—and how the Canvassing Restriction impacts organizers' ability to provide voting assistance. Despite this confusion, state officials have not offered any definitive answers about the scope of the Canvassing Restriction. The Secretary of State has not provided any guidance. Tr. at 1914:7–14, 1924:7–18. Nor has the OAG. Tr. at 1924:24–1925:3. And the answers provided by the State Defendants' witnesses conflicted with one another and with the State Defendants' positions in their post-trial briefing.[2]

The Court permanently enjoined the Texas Attorney General (the "AG"), the Texas Secretary of State (the "Secretary," and together with, the AG, the "State Defendants") and the

---

[2] For example, former Election Division Director Keith Ingram opined that providing volunteers with bus fare was not "compensation" because "[t]hey can get their expenses reimbursed. That's not payment." Tr. at 1904:1–2. The State's chief voter fraud prosecutor, Jonathan White, on the other hand, testified that he would need to perform *legal research* to determine what kinds of economic benefits would violate the provision. Tr. at 3992:20–3993:21 (conceding that he would need to "review[] the case law" to determine whether a meal, bus fare, or a gift bag containing a t-shirt constitute prohibited compensation).

Similarly, Jonathan White, former Chief of the OAG Election Integrity Division, testified that if his office encountered a GOTV group that paid its organizers to provide mail ballot assistance as a public service while canvassing, he would be concerned that this activity is a subterfuge for voter fraud. Tr. at 3995:11–24. The State Defendants, on the other hand, assert that such assistance falls outside the purview of the Canvassing Restriction because it is not "designed to deliver votes for or against a specific candidate or measure." ECF No. 862 ¶ 479

3

District Attorneys of Travis County, Dallas County, Hidalgo County, and the 34th Judicial District (the "County DAs") from enforcing the Canvassing Restriction. *See* ECF No. 1157 (the "Order").

The State Defendants filed a Notice of Appeal of the Court's Order, followed by a motion to stay the order pending appeal (ECF No. 1159), which the Court now considers. The State Defendants seek to stay the Court's order pending appeal in light of the upcoming general election in November.

For the reasons stated herein, the State Defendants' motion (ECF No. 1159) is **DENIED**.

## DISCUSSION

In determining whether to grant a motion for stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

**1.     The State Defendants are unlikely to prevail on the merits.**

The State Defendants are unlikely to prevail on the merits of their appeal, for three reasons.

First, their briefing applied an incorrect legal standard, seeking to superimpose the *Anderson-Burdick* balancing test on a content-based regulation of core political speech that is, without question, subject to strict scrutiny. *See* ECF No. 862 at 80–83. The Supreme Court has made clear that while *Anderson-Burdick* applies to laws and regulations that "control the mechanics of the electoral process," it does not apply to "a regulation of pure speech," even in the election context. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995). Burdens on core political speech during elections, like *all* burdens on core political speech, are subject to strict

4

scrutiny. *Id.* at 347.[3] And with good reason: it would defy logic to subject a content-based restriction of core political speech to *lesser* scrutiny because it happens to regulate speech during elections, when "the importance of First Amendment protections" is at its "zenith." *Meyer*, 486 U.S. at 425.

**Second, the State Defendants'** *Purcell* **argument is directly at odds with their** *Ex parte Young* **argument.** They insist that "now is the only time when § 7.04 affords law enforcement the opportunity to prevent ballot harvesting from interrupting the legal conduct of elections, as opposed to conducting a purely retroactive investigation." ECF No. 1159 at 1–2. They fail to define "law enforcement," however, in an apparent attempt to obfuscate which officials are responsible for enforcing the Canvassing Restriction (and when) and leave open the possibility that election administrators will somehow be affected by the injunctive relief. The State Defendants insist that, because mail ballots have been sent out, "impos[ing] a change at this stage not only strains election administrators but also undermines voter confidence in the electoral process." ECF No. 1159 at 1–2. They offer no hint as to how the injunction "strains" election administrators. The injunction facially does not apply to election administrators. Indeed, it is unclear to the Court how it could

---

[3] *See also Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring) ("When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest."); *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138, 142 (3d Cir. 2022), *cert. denied sub nom. Mazo v. Way*, 144 S. Ct. 76 (2023) (concluding that *Anderson-Burdick* applies only to laws that "primarily regulate the mechanics of the electoral process, as opposed to core political speech," not to laws "that are primarily directed at regulating 'pure speech'") (quoting *McIntyre*, 514 U.S. at 345); *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023) (explaining the Supreme Court has "applied strict scrutiny—not *Anderson-Burdick* balancing—to many election laws" implicating core political speech) (collecting cases); *Fusaro v. Cogan*, 930 F.3d 241, 258 (4th Cir. 2019) (observing the Supreme Court has "distinguished between laws that . . . regulate 'pure speech,'" and those subject to *Anderson-Burdick*); *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000) (recognizing "strict scrutiny," rather than *Anderson-Burdick*, "is applied where the government restricts the overall quantum of speech available to the election or voting process"); *Cotham v. Garza*, 905 F. Supp. 389, 396 (S.D. Tex. 1995) (holding that provisions governing the mechanics of voting are subject to *Anderson-Burdick* while a "content-based restriction on core political speech" is subject to strict scrutiny).

have crafted injunctive relief against election administrators, who have no enforcement connection with the Canvassing Restriction.

The State Defendants have a sufficient enforcement connection to fall within the *Ex parte Young* exception to sovereign immunity. The OAG continues to operate the Criminal Prosecutions Division unit that prosecutes election-related allegations, known as the Election Integrity Division. Tr. at 3903:23–3905:4, 3905:11–15, 4039:14–19. As of March 17, 2023, the OAG had identified at least one investigation of a possible violation of the Canvassing Restriction. There may very well be additional investigations that the AG failed to produce during discovery because, despite their insistence that he has "no enforcement connection" to election crimes, both of the State Defendants have throughout this litigation, withheld documents discussing "actual or alleged illegal voting, election fraud, or other criminal conduct in connection with" voting and voter assistance, invoking the investigative privilege. *See* ECF No. 992-3; ECF No. 992-16.

Although the AG may no longer unilaterally prosecute allegations of election-related crimes, *State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021), the OAG enforces criminal election offenses through other mechanisms. After OAG investigations conclude, the OAG refers cases to local prosecuting attorneys[4] and often seeks opportunities to partner with DAs to prosecute such allegations through deputization by a DA or appointment *pro tem* by a district judge or the DA. Tr. at 3908:21–3909:17, 3909:1–12; 4043:21–4045:21; 4051:2–10. The OAG has specifically identified previous prosecutions in which it participated, including prosecutions for "vote harvesting" and prosecutions conducted by or with the assistance of local DAs in several counties.

---

[4] For example, after the prosecution of Hervis Rogers was dismissed in Montgomery County, the OAG referred the case to the Harris County DA, who brought charges against Mr. Rogers before a grand jury. Tr. at 4058:17–4059:24, 4062:7–12. The same procedure was used in the prosecution of Ignacio González Beltrán, whose case was dismissed in Montgomery County and referred by the OAG to Harris County, where it was presented to a grand jury. Tr. at 4063:3–4064:6.

Even after *Stephens*, Jonathan White, former Chief of the OAG Election Integrity Division, testified that the "vote harvesting" schemes (purportedly targeted by the Canvassing Restriction) remain among the three most common elections-related allegations that the OAG pursues. Tr. at 3915:3–8. For the November 2022 elections, the OAG established a 2022 General Election Integrity Team and publicly stated it was "prepared to take action against unlawful conduct where appropriate," highlighting offenses related to "vote harvesting." OCA-383.

Without citation, the State Defendants accuse the Court of "gloss[ing] over" the Secretary's role by extending *Ex parte Young* based on her "general duty to oversee elections." ECF No. 1159 at 8 (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)).[5] Not so. The Court specifically based its *Ex parte Young* analysis on the Secretary's specific and mandatory duty under the Election Code to evaluate information she "receiv[es] or discover[s]" about *potential election crimes* (including alleged violations of the Canvassing Restriction). TEC § 31.006 (emphasis added). If she "determines that there is probable cause to suspect that criminal conduct occurred, the [S]ecretary *shall* promptly refer the information to the attorney general" and provide all pertinent documents and information in her possession to the AG. *Id.* (emphasis added).

Indeed, in trying to prove that the Secretary lacks an enforcement connection with respect to the Canvassing Restriction, the State Defendants commit the precise logical error they attribute to the Court, generalizing that "the Secretary's role is *largely* administrative and informational,

---

[5] Further, it is worth noting that the provision at issue in *Texas Democratic Party II*, section 82.003 of the Election Code, did not explicitly refer to the Secretary either. In its entirety, section 82.003 states: "A qualified voter is eligible for early voting by mail if the voter is 65 years of age or older on election day." TEC § 82.003. Despite the absence of a specific reference to the Secretary in section 82.003, the Fifth Circuit located the Secretary's duties to enforce the provision in another section of the Election Code: "[T]he Secretary's specific duties regarding the application form under Section 31.002 are enough for us to conclude that the Secretary has at least a scintilla of enforcement authority for Section 82.003." *Tex. Democratic Party II*, 978 F.3d at 180. In short, the State Defendants' suggestion that the *Ex parte Young* analysis requires the Court to read each provision in a vacuum, without reference to any other Election Code provision—no matter how relevant to the enforcement question at hand—is entirely divorced from Fifth Circuit precedent, and from the fundamental precepts of statutory interpretation

7

not enforcement focused." ECF No. 1159 at 8 (emphasis added). That is not the question before the Court—the question is whether the State Defendants have a particular duty to enforce the statute in question and demonstrated their willingness to do so.

Here, the State Defendants have shown a desire to enforce the statute. Critically, neither the AG nor the Secretary has disavowed enforcement. Beyond the AG's refusal to disavow, the trial record makes clear that he *does* intend to enforce the Canvassing Restriction. Jonathan White, former Chief of the OAG Election Integrity Division, testified that the "vote harvesting" schemes (purportedly targeted by the Canvassing Restriction) remain among the three most common elections-related allegations that the OAG pursues. Tr. at 3915:3–8; *see also* LULAC-86 at 6 (identifying at least one OAG investigation of a possible violation of the Canvassing Restriction as of March 17, 2023). The OAG has specifically identified previous prosecutions in which it participated, including prosecutions for "vote harvesting" and prosecutions conducted by or with the assistance of local DAs in multiple counties. *See* OCA-377. The Secretary, for her part, has received allegations related to mail ballot "vote harvesting," which she has referred to the OAG both before and after the passage of S.B. 1. Tr. at 1914:1–6.

**Finally, Plaintiffs have standing to challenge the Canvassing Restriction—and succeed on the merits of their challenge because it has chilled their core political speech.** The Canvassing Restriction is "an outright ban" on certain core political speech, "backed by criminal sanctions" of up to ten years in prison. *Citizens United*, 558 U.S. at 337. By Plaintiffs' banning in-person interactions with voters, the Canvassing Restriction 7.04 "restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication. *Meyer*, 486 U.S. at 414.

On these facts, the State Defendants have failed to present a "substantial case on the merits." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam).

**2.      The State Defendants will not suffer irreparable harm absent a stay.**

Defendants have not produced "powerful evidence of harm to [their] interests" to tip the equities in their favor. *Opulent Life Church*, 697 F.3d at 297. Again, the injunction does not direct Defendants to change any election procedures before the election. They insist that law enforcement officials must be afforded the opportunity to "prevent ballot harvesting" now that mail ballots have been sent out.

Here again, the State Defendants have a definitional problem. States cannot circumvent strict scrutiny by simply asserting a compelling interest in enforcing the regulation being challenged. Under the State Defendants' theory, the Supreme Court should have upheld the ban on independent corporate expenditures in *Citizens United* based on the government's interest in "preventing independent corporate expenditures." *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010) (concluding that the ban on independent corporate expenditures was not narrowly tailored to the government's purported anti-corruption and shareholder-protection interests). That is not how strict scrutiny operates.

Instead, a state must identify an "actual problem" in need of solving, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000), and demonstrate that restricting free speech is *necessary* to the solution, *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992). The Court concluded that the Canvassing Restriction does not serve Texas' proffered interest in "prevent[ing] paid partisans from haranguing Texas citizens while they fill out their mail ballots." ECF No. 862 ¶ 1023. But nothing in the text of the Canvassing Restriction limits its application to "haranguing"

conduct "while [voters] fill out their mail ballots." Instead, it criminalizes any "interaction" in the "physical presence" of a mail ballot." TEC § 276.015(a)(2).

States, to be sure, have an "important state interest" in "[e]nsuring that every vote is cast freely," *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2341 (2021). But the Election Code already imposes criminal penalties against "effort[s] to influence the independent exercise of the vote of another in the presence of the ballot or during the voting process," TEC § 276.013, or voting (or attempting to vote) a ballot belonging to another person, or attempting to mark another person's ballot without their consent or specific direction, TEC § 64.012. Similarly, it is already a crime for a voting assistor to "suggest[] by word, sign, or gesture how the voter should vote" while providing such assistance or "prepare[] the voter's ballot in a way other than the way the voter directs or without direction from the voter." TEC § 64.036. At trial, the State Defendants failed to offer even *hypothetical* scenarios in which the Canvassing Restriction would serve the government's interest in ways that are not already accomplished by other criminal provisions of the Election Code, let alone identified an "actual problem" in need of solving. *United Playboy Ent. Grp., Inc.*, 529 U.S. at 813.

Because the State Defendants have not shown that the Canvassing Restriction serves a compelling government interest, they cannot establish that being prevented from enforcing the provision will cause any harm to their interests.

**3.      Plaintiffs will suffer irreparable harm in the event of a stay.**

The injury to Plaintiffs in the absence of injunctive relief—the chill on their core political speech in the weeks before an election—would be great. As the Supreme Court has long recognized, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Political

speech, moreover, "occupies the core of the protection afforded by the First Amendment" and that "[n]o form of speech is entitled to greater constitutional protection." *McIntyre*, 514 U.S. at 346–47.

**4.     The public interest lies in enjoining the Canvassing Restriction.**

The Court considered the impact of the injunction on the public interest in its Order. *See* ECF No. 1157 at 74–77 (citing *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012) ("[I]njunctions protecting First Amendment freedoms are always in the public interest.")). Despite the State Defendants' insistence that the injunction will "confuse" voters, it is the overbreadth and vagueness of the Canvassing Restriction itself that confused organizers and voters—and apparently the State Defendants themselves—and has chilled Plaintiffs' speech.

The injunction thus serves the twin public interests of restoring clarity and vindicating the right to free speech. The only prospective interest that the State Defendants can plausibly allege would be impaired by injunctive relief is the deterrent effect of the Canvassing Restriction. Given that its chilling effect on speech is the very feature that renders the Canvassing Restriction constitutionally infirm, however, deterring violations is unlikely to serve the public interest. *See Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (where an enactment is unconstitutional, "the public interest [is] not disserved by an injunction preventing its implementation").

## CONCLUSION

For the forgoing reasons, the State Defendants' motion for a stay (ECF No. 1159) of this Court's order enjoining enforcement of the Canvassing Restriction, codified at TEX. ELEC. CODE § 276.015, is **DENIED** in all respects.

It is so **ORDERED**.

**SIGNED** this 1st day of October, 2024.

                                                XAVIER RODRIGUEZ
                                                UNITED STATES DISTRICT JUDGE