IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LA UNIÓN DEL PUEBLO ENTERO, *et al.*,

     *PLAINTIFFS,*

v.

                               CASE NO. 5:21-CV-00844-XR

GREGORY W. ABBOTT, *et al.*,

     *DEFENDANTS.*

---

**STATE DEFENDANTS' AND INTERVENOR-DEFENDANTS' OPPOSED MOTION FOR STAY PENDING APPEAL OR, IN THE ALTERNATIVE, FOR ADMINISTRATIVE STAY PENDING APPEAL AND REQUEST FOR EXPEDITED CONSIDERATION**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................... ii

Table of Authorities ................................................................................................................ iii

Background ............................................................................................................................... 1

Argument .................................................................................................................................. 3

    I.    *Purcell* Bars this Court's Injunctions Against Sections 6.04, 6.05, 6.06, 6.07 and 7.04. .................. 3

    II.   Defendants Are Likely to Succeed on the Merits. ............................................................. 6

        A.  Plaintiffs lack standing. ..................................................................................... 6

        B.  Plaintiffs are unlikely to succeed on the merits of their Section 208 claims. ............................ 9

    III.  State Defendants and the Public Interest Will Be Irreparably Injured Absent a Stay, but Plaintiffs Will Not Be. ...................................................................................... 19

Conclusion & Relief Requested ............................................................................................ 19

Certificate of Conference ...................................................................................................... 21

Certificate of Service............................................................................................................. 21

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aldridge v. Miss. Dep't of Corr.*,
   990 F.3d 868 (5th Cir. 2021) .................................................................. 14

*Barrosse v. Huntington Ingalls, Inc.*,
   70 F.4th 315 (5th Cir. 2023) .................................................... 14, 16, 17

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ............................................................................... 19

*Burson v. Freeman*,
   504 U.S. 191 (1992) ............................................................................... 18

*California v. Texas*,
   593 U.S. 659 (2021) ................................................................................. 7

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) ................................................................... 7

*Crawford v. Marion Cnty. Election Bd.*,
   553 U.S. 181 (2008) ................................................................................. 7

*Democracy N. C. v. N. C. State Bd. of Elections*,
   476 F. Supp. 3d 158 (M.D.N.C. 2020) .............................................. 11, 12

*DNC v. Wisc. State Leg.*, 141 S. Ct. 28 (2020) ......................................... 4

*E.T. v. Paxton*,
   19 F.4th 760 (5th Cir. 2021) .................................................................. 19

*Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) ............................................................................... 10

*Ill. Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173 (1979) ............................................................................... 19

*LUPE v. Abbott*, No. 24-50783 (5th Cir. Oct. 15, 2024) ....................... 3, 4, 7

*Marshall v. Goodyear Tire & Rubber Co.*,
   554 F.2d 730 (5th Cir. 1978) ................................................................. 18

*Maryland v. King*,
   567 U.S. 1301 (2012) (Roberts, C.J., in chambers) .............................. 19

*Merrill v. Milligan*,
　142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) ................................................... 4

*Mi Familia Vota v. Ogg*,
　105 F.4th 313 (5th Cir. 2024) ....................................................................................... 4

*Milliken v. Bradley*,
　418 U.S. 717 (1974) ..................................................................................................... 18

*Nken v. Holder*,
　556 U.S. 418 (2009) ....................................................................................................... 3

*OCA Greater Houston v. Texas*,
　No. 1:15-cv-679, 2022 WL 2019295, at *1 (W.D. Tex. June 6, 2022) ..................... 2

*OCA-Greater Houston v. Texas*,
　867 F.3d 604 (5th Cir. 2017) ..................................................................................... 12

*Ostrewich v. Tatum*,
　72 F.4th 94 (5th Cir. 2023) .................................................................................... 4, 7

*Priorities USA v. Nessel*,
　487 F. Supp. 3d 599 (E.D. Mich. 2020) ........................................................... 10, 18

*Purcell v. Gonzalez*,
　549 U.S. 1 (2006) .................................................................................................... 4, 5, 6

*Ray v. Texas*,
　No. CIV.A.2-06-CV-385TJW, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ........ 11

*Republican Nat'l Comm. v. Mi Familia Vota*,
　No. 24A164, 2024 WL 3893996, at *1 (Aug. 22, 2024) ........................................... 5

*Reynolds v. Sims*,
　377 U.S. 533 (1964) ....................................................................................................... 6

*Rice v. Santa Fe Elevator Corp.*,
　331 U.S. 218 (1947) ........................................................................................ 11, 12, 13

*Richardson v. Flores*,
　28 F.4th 649 (5th Cir. 2022) ....................................................................................... 4

*Robinson v. Ardoin*,
　37 F.4th 208 (5th Cir. 2022) ....................................................................................... 4

*Robinson v. Ardoin*,
　86 F.4th 574 (5th Cir. 2023) ....................................................................................... 6

*Salazar v. Mamon,*
    750 F.3d 514 (5th Cir. 2014) ................................................................................ 12

*Storer v. Brown,*
    415 U.S. 724 (1974) ................................................................................ 11, 19

*Teltech Sys. v. Bryant,*
    702 F.3d 232 (5th Cir. 2012) ................................................................................ 11

*Tex. State LULAC v. Elfant,*
    52 F.4th 248 (5th Cir. 2022) ................................................................................ 8, 9

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................ 7, 8

*United States v. Baylor Univ. Med. Ctr.,*
    711 F.2d 38 (5th Cir. 1983) (per curiam) ................................................................................ 3

*VanDerStok v. Garland,*
    86 F.4th 179 (5th Cir. 2023) ................................................................................ 10

*Veasey v. Abbott,*
    870 F.3d 387 (5th Cir. 2017) (per curiam) ................................................................................ 19

*Veasey v. Perry,*
    574 U.S. 951 (Oct. 14, 2018) (Ginsburg, J., dissenting) ................................................................................ 6

*Veasey v. Perry,*
    769 F.3d 890 (5th Cir. 2014) ................................................................................ 6, 19

*Vote.Org v. Callanen,*
    39 F.4th 297 (5th Cir. 2022) ................................................................................ 19

*Vote.Org v. Callanen,*
    89 F.4th 459 (5th Cir. 2023) ................................................................................ 11

*Yates v. Collier,*
    868 F.3d 354 (5th Cir. 2017) ................................................................................ 13

*Young Conservatives of Tex. Found. v. Smatresk,*
    73 F.4th 304 (5th Cir. 2023) ................................................................................ 11

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018) ................................................................................ 8, 9

**Statutes**

52 U.S.C. § 10508 ....................................................................................... 10, 12, 14

An Act Relating to Election Integrity and Security, 87th Leg., 2d C.S., ch. 1,
    2021 Tex. Gen. Laws 3873 ....................................................................... 1, 17

Minn. Stat. § 204C.15 (2023) ...................................................................... 17

Tex. Elec Code
    § 276.015 ................................................................................................. 2

    § 64.034 ................................................................................................... 2

    § 86.010(e) ............................................................................................... 1

    § 86.0105 ................................................................................................. 2

    § 86.013(b) ............................................................................................... 2

    § 64.0322(a) ............................................................................................. 1

    § 64.036(a)(1) .......................................................................................... 16

    § 64.036(a)(4) .......................................................................................... 16

     § 64.037 .................................................................................................. 16

    § 86.004(b) ............................................................................................... 5

Tex. Penal Code § 37.02 ............................................................................. 2, 9

**Rules**

Fed. R. Civ. P. 62(d) ................................................................................... 3

**Other Authorities**

S. REP. No. 97-417 (1982) ........................................................................ 12, 13, 15, 18

Defendants Greg Abbott, in his official capacity as Texas Governor; Warren "Ken" Paxton, in his official capacity as Attorney General of Texas; Jane Nelson, in her official capacity as Secretary of State; the State of Texas; and Intervenor-Defendants (collectively "Defendants") file this Opposed Motion to Stay the Court's Findings of Fact and Conclusions of Law on Plaintiffs' challenges under Section 208 of the Voting Rights Act ("VRA"). Alternatively, should the Court deny Defendants' Motion to Stay, Defendants seek a seven-day administrative stay to allow Defendants to seek relief from the Fifth Circuit.

A stay is warranted for several reasons. *First*, *Purcell* prohibits the Court's injunctions against enforcement of sections 6.04, 6.05, 6.06, 6.07, and 7.04. *Second*, Plaintiffs lack standing to challenge sections 6.03, 6.04, 6.05, and 6.07. *Third*, the Court erred in holding Section 208 preempts reasonable regulations of voter assistance. *Finally*, the equities heavily favor a stay.

**BACKGROUND**

In September 2021, Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* An Act Relating to Election Integrity and Security, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Gen. Laws 3873. Multiple lawsuits soon followed, which were ultimately consolidated into the present action.

Plaintiffs challenged various provisions of S.B. 1 under Section 208 of the VRA. *First*, they challenged several S.B. 1 provisions requiring assistors to provide information. Section 6.03 requires assistors (other than election officers) to "complete a form stating: (1) the name and address of the person assisting the voter; (2) the relationship to the voter of the person assisting the voter; and (3) whether the person assisting the voter received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee." Tex. Elec. Code § 64.0322(a). Section 6.05 requires those providing assistance to individuals voting by mail to disclose their relationship with the voter and whether they received compensation from a political entity. Tex. Elec Code § 86.010(e). Section 6.07 amends the disclosures on the mail-ballot

carrier envelopes so that assistors can provide the information required by section 6.05. Tex. Elec Code § 86.013(b).

*Second*, Plaintiffs challenged section 6.04, which, as relevant to this motion, adds two mandatory representations to the voter assistance oath.[1] Assistors must state that (1) the assisted voter represented they were eligible for assistance and (2) they did not "pressure or coerce the voter into choosing [them] to provide assistance." Tex. Elec Code § 64.034. Section 6.04 also informs assistors that the oath is under penalty of perjury—something which has been true since 1974. *See* Tex. Penal Code § 37.02.

*Third*, Plaintiffs challenged section 6.06, which makes it a felony to compensate someone, offer to compensate someone, or solicit, receive, or accept compensation for assisting voters. Tex. Elec Code § 86.0105. The provision does not apply if the assistor is an "attendant" or "caregiver" previously known to the voter. *Id.*

*Fourth*, Plaintiffs challenged section 7.04's prohibition on vote harvesting, which is defined as "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." Tex. Elec Code § 276.015. To be guilty, an individual must have knowledge as to each element. *Id.*

After a bench trial, the Court enjoined enforcement of each of the foregoing challenged provisions. It stayed its injunction against all defendants with respect to section 6.03, and against the Secretary of State and the county election officials regarding sections 6.04, 6.05, and 6.07. ECF No. 1173 at 106–111. The Court, however, immediately enjoined enforcement proceedings under sections 6.04, 6.05, 6.06, and 7.04. *Id.* The Court issued its opinion on October 11, 2024—weeks after ballots were sent out and in the middle of the ongoing 2024 General Election.

---

[1] A different court already enjoined enforcement of part of the oath. *OCA Greater Houston v. Texas*, No. 1:15-cv-679, 2022 WL 2019295, at *1 (W.D. Tex. June 6, 2022). This Court also rejected Plaintiffs' challenge to the part requiring assistors to represent that they will not "communicate information about how the voter has voted to another person." ECF No. 1173 at 107.

**ARGUMENT**

The Court can and should stay its injunctions pending appeal. Fed. R. Civ. P. 62(d). A four-factor test governs the Court's consideration of a motion for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). The movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (cleaned up). Defendants easily satisfy this standard—for several reasons.

## I.   *Purcell* Bars this Court's Injunctions Against Sections 6.04, 6.05, 6.06, 6.07 and 7.04.

Today, the Fifth Circuit granted a stay pending the appeal of this Court's previous Findings of Fact and Conclusions of Law regarding certain challenges to S.B. 1 Section 7.04 (at ECF No. 1157). Order Granting Stay, Dkt. 112-1, *LUPE v. Abbott*, No. 24-50783 (5th Cir. Oct. 15, 2024). There, a unanimous panel concluded *Purcell* forecloses this Court's efforts to enjoin three-year-old voting laws just weeks before the 2024 presidential election. *Id*. at 3, 7.

The Fifth Circuit rejected this Court's attempt to limit *Purcell* to the "mechanics and procedures of the act of voting," describing it as unsupported and contrary to established law. *Id*. at 4. The Fifth Circuit further held that "S.B. 1 does regulate the mechanics of voting," because Section 7.04 protects the privacy of mail voting. So too here. *First*, Section 7.04 is at issue in the Court's latest opinion, just as it was in the previous, and exerts an equal impact on the privacy of mail voting. *Second*, the additional provisions subject to the Court's latest injunction all protect the integrity of ballots cast by voters in need of assistance. The only time such assistance is necessary is *during voting*—which starts in six days on October 21, 2024.

Finally, the Fifth Circuit noted that because neither the Attorney General nor the Secretary of State enforces S.B. 1, "the practical effect" of this Court's previous injunction was "to prevent

3

enforcement of S.B. 1, but only in certain counties in Texas." *Id.* at 5 (citing *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022); *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023); and *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024) (additional citations omitted)). The confusion arising from the uneven application of S.B. 1 under the Court's previous injunction is compounded by the Court's latest injunction. The Court has again issued an injunction that will only apply to certain counties, but this injunction covers several election regulations instead of just one, and stays parts of the multifarious injunction but not others. Whether to stay an injunction of election regulations under *Purcell* requires weighing "considerations specific to election cases." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). "Chief amongst those considerations is the potential for an injunction issued close to an election 'to confuse voters, unduly burden election administrators, or otherwise sow chaos or distrust in the electoral process.'" *LUPE*, No. 24-50783, Dkt. 112-1 at 4 (citing *Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022)). An eve-of-the-election injunction against multiple election regulations that can only apply during voting, and that may or may not apply to a voter depending on time or place, is precisely the "chaos" *Purcell* forbids.

This Court misapplied the *Purcell* principle by limiting its scope to "mechanics and procedures of the act of voting." ECF No. 1173 at 100. Not only has the Fifth Circuit now explicitly rejected that approach, but the Supreme Court has never articulated—much less adopted—such a narrow conception of *Purcell*. *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road must be clear and settled."). After all, when courts change election rules close to an election, it creates the perception that judges are trying to influence election results. *See Purcell*, 549 U.S. at 4–5 ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls."); *DNC v. Wisc. State Leg.*, 141 S. Ct. 28, 30 (2020) ("Last-minute change . . . invit[e] confusion and chaos and erod[e] public confidence in electoral outcomes.").

This Court failed to adhere to that rule here. Trial in this case concluded nearly a year ago, and closing arguments were presented eight months ago. Yet the Court waited until after ballots were mailed to issue its opinion, thus compounding confusion and creating a logistical nightmare

for election officials. *See* Tex. Elec. Code § 86.004(b) (ballots in circulation 45 days before November 5). To change *five* election rules and to proscribe their enforcement amidst voting "result[s] in voter confusion," undermines confidence in the integrity of Texas's elections, and creates an "incentive to remain away from the polls." *Purcell*, 549 U.S. 1 at 4–5. That risk is even greater here, as multiple Plaintiff Organizations have claimed they are training Texans about the enjoined provisions, *see, e.g.*, Tr. 1620:2–6, 1628:2–15, Tr. 1723:14–19 (Sept. 21, 2024), but now do not have the time to communicate the Court's changes given the immediacy of the election.

Moreover, as the Fifth Circuit observed concerning Section 7.04, the newly-enjoined S.B. 1 provisions *do* directly impact election procedures. Section 6.03's form requirement, 6.04's revised voter assistance oath, and section 6.06's limit on compensated voter assistance regulate assistance and protect voters *during voting*. The form requirements of sections 6.05 and 6.07 perform the same function during mail voting. Section 7.04 does not apply to ordinary voter assistance at all. But it does regulate in-person interactions with voters in the presence of ballots, prohibiting paid canvassers from attempting to influence votes when a ballot is physically present. All of these rules are procedural safeguards that govern interactions during the voting process itself and safeguard the integrity of elections.

The Court's attempt to carve out from *Purcell*'s domain enforcement of the challenged provisions—by criminal investigations or civil actions to compel compliance by election officials— fails. ECF No. 1173 at 105-06, 108. Neither the Supreme Court nor the Fifth Circuit has ever adopted such a carve-out. In fact, just a few months ago, the Supreme Court stayed an injunction against an Arizona election rule backed up by criminal penalties. *See Republican Nat'l Comm. v. Mi Familia Vota*, No. 24A164, 2024 WL 3893996, at *1 (Aug. 22, 2024) (permitting enforcement of Ariz. Rev. Stat. Ann. § 16-121.01(C)). The Court's immediate prohibition of civil actions to compel election officials to comply with the enjoined provisions is also barred by *Purcell*. After all, enjoining *enforcement* of a challenged rule is functionally equivalent to enjoining *application* of the rule: Thus, even an injunction against enforcement of the challenged rule violates *Purcell* because it "den[ies] the public interest in *enforcement* of the [State's] laws." *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir.

2014) (emphasis added); *see also Veasey v. Perry*, 574 U.S. 951 (Oct. 14, 2018) (Ginsburg, J., dissenting) (dissenting from majority's upholding of Fifth Circuit stay "of the District Court's final judgment enjoining the *enforcement* of Senate Bill 14") (emphasis added).

Here as well, the Court's injunction against enforcement of sections 6.04, 6.05, 6.06, 6.07, and 7.04 will leave individuals free to violate those provisions with impunity, thus wrecking the protections the Texas Legislature judged essential to safeguard voter integrity during the 2024 Elections. The Court recognized this point, but answered it by doubling down on the merits. *See* ECF No. 1173 at 106. *Purcell* prohibits precisely that move because it applies *regardless* of the Court's view of the merits. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (approving stay pending appeal "where an impending election [was] imminent" even though Supreme Court agreed challenged rule was unlawful); *Purcell*, 549 U.S. at 4-5; *see also Veasey*, 769 F.3d at 895 (explaining that the Supreme Court and courts of appeals have granted *Purcell* stays in decisions that "have both upheld and struck down state statutes and affirmed and reversed district court decisions, so the timing of the decisions rather than their merits seems to be the key"). The Court should stay its order in full pending appeal.

## II.    Defendants Are Likely to Succeed on the Merits.

Defendants are also likely to succeed on the merits. To start, Plaintiffs clearly lack standing to challenge sections 6.03, 6.04, 6.05, and 6.07. Plaintiffs' Section 208 claims are also meritless because Section 208 preserves States' prerogative to adopt reasonable regulations of voter assistance to protect voters, which is all S.B. 1 does.[2]

### A.  **Plaintiffs lack standing.**

Plaintiffs lack standing to challenge several of the provisions enjoined by the Court.

---

[2] Defendants preserve two additional merits arguments. *First*, the State Defendants have sovereign immunity because Congress did not clearly abrogate it in Section 208. *See* ECF No. 862 at 29-30. The Fifth Circuit erred in rejecting that argument in *OCA Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017). *Second*, Plaintiffs lack a private right of action to sue under Section 208. ECF No. 862 at 165; *but see Robinson v. Ardoin*, 86 F.4th 574, 587-88 (5th Cir. 2023) (holding that Section 2 of the VRA confers a private right of action).

*First*, as noted by the Fifth Circuit, neither the Secretary of State nor the Attorney General enforce S.B. 1. *LUPE*, No. 24-50783, Dkt. 112-1 at 5. This non-enforcement demonstrates that the Secretary of State and Attorney General have sovereign immunity to Plaintiffs' claims. *See Osterwich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023). This non-enforcement also demonstrates that Plaintiffs can show neither traceability nor redressability under the traditional standing analysis. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (acknowledging "significant overlap between the *Ex parte Young* analysis and Article III standing); *California v. Texas*, 593 U.S. 659, 669–70 (2021) (where standing is premised on enforcement authority, Plaintiffs cannot show traceability absent an injury resulting from the defendant's actual or threatened *enforcement*") (emphasis original).

*Second*, all Plaintiffs lack standing to challenge sections 6.03, 6.05, and 6.07. These provisions merely require would-be assistors to provide a few pieces of information on a form. The obligation to provide such information is not a cognizable injury because it has no "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (cleaned up). Although violations of constitutional rights can satisfy *TransUnion*, *see id.* at 424–25, the obligation of an assistor to provide a few pieces of information on a form obviously does not violate any right to vote. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (explaining that "usual burdens of voting" do not impose constitutional injury).

The Court did not rely on individual or associational standing, but held instead that Delta Sigma Theta ("Delta") and the LUPE Plaintiffs have organizational standing to challenge these provisions. ECF No. 1173 at 71–73. That is multiply erroneous. Most obviously, neither Delta nor the LUPE Plaintiffs actually *challenged* section 6.07; only HAUL and the Arc of Texas ("Arc") challenged that section. *See id.* at 67 ("Section 6.07 is challenged only by the HAUL Plaintiffs."); ECF No. 862 at 51-61, 64–77 (documenting claims of these litigants). And the Court did not analyze the standing of HAUL or Arc to challenge section 6.07, so the Court should (at minimum) stay its ruling as to section 6.07.

The Court's standing analysis is also incorrect with respect to the supposed organizational injuries caused by sections 6.03 and 6.05. The Court claimed that these disclosure requirements caused a decreased willingness of people to provide assistance, ECF No. 1173 at 71–72, but that assertion does not hold. The trial evidence cited by the Court deals almost entirely with supposed fears of perjury charges traceable to the voter assistance oath. *Id.* Not a single witness said the form requirements alone would prevent them from providing voter assistance; nor could they, because such a claim would be incredible. Any such claim depends on the premise that potential assistors will not fill out the forms (and thus not provide assistance) because of a fear of prosecution. But Plaintiffs' fear of prosecution is *far too speculative* to confer standing. *See, e.g.*, *Tex. State LULAC v. Elfant*, 52 F.4th 248, 256–57 (5th Cir. 2022). Crediting a fear of prosecution—which would render the refusal of assistors to fill out the forms actually traceable to sections 6.03, 6.05, and 6.07—requires finding that (1) a potential assistor would violate the voter assistance laws, (2) someone would discover the violation and report the violation to a prosecutor, and (3) that the prosecutor would exercise his discretion to bring charges. *Cf. id.* Not a single witness testified they will do anything arguably prohibited by the voter assistance laws, and crediting a fear of prosecution is impermissibly "depend[ent] . . . on the actions of third-part[ies]." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018).

The Court also suggested Plaintiffs have suffered an organizational injury because form requirements result in delays in providing voting assistance. ECF No. 1173 at 71-72. The Court, however, did not say *what kind of delays*, and no witness quantified the delays attributable to the disclosure requirements. Moreover, common sense suggests any delays would be *de minimis*. It does not take long to write one's name and relationship to the voter on a paper and check a box about whether one received compensation. Such *de minimis* delays have no "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (cleaned up).

*Third*, Plaintiffs lack standing to challenge section 6.04's revisions to the voter-assistance oath. The Court found standing on the premises that (1) the revisions will cause fears of

prosecution and (2) those fears will cause individuals to refuse to provide voter assistance to Arc members or cause Arc members to refuse assistance to avoid exposing assistors to criminal liability. ECF No. 1173 at 67-71. But the first premise fails as a matter of law.  Fears of prosecution under section 6.04 are far too "speculative" to confer standing. *Tex. State LULAC*, 52 F.4th at 256-57. No Plaintiff has alleged any intent to engage in conduct "arguably proscribed" by this provision. *Id.* at 256. For example, there is no testimony that any Plaintiff or would-be assistor intends to pressure someone to accept voter assistance in violation of section 6.04, so no prosecution for violating the oath could occur. Even if a Plaintiff did violate the oath, several more unlikely things would need to happen for anyone to be prosecuted: (1) someone would discover that violation, (2) someone would report the violation to a prosecutor, and (3) the prosecutor would have to exercise discretion to bring charges. *Cf. id.* at 256-57. Any fear of prosecution is under section 6.04 is far too "speculative" and "depend[ent] . . . on the actions of third-part[ies]" to confer standing. *Zimmerman*, 881 F.3d at 390.

Moreover, any fear of perjury charges by Plaintiffs and assistors is not *caused* by section 6.04 because the voter-assistance oath has been subject to penalty of perjury since 1974. *See* Tex. Penal Code § 37.02. Section 6.04 merely tells the public what was already true under Texas law. Plaintiffs therefore lack standing to challenge section 6.04.[3]

**B. Plaintiffs are unlikely to succeed on the merits of their Section 208 claims.**

Defendants are also likely to succeed on appeal because the Court's analysis of the merits is erroneous as a matter of law. Under the Court's reading, Section 208 allows voters who require assistance to choose *any* person, under *any* conditions, to be their assistor. ECF No. 1173 at 78, 91. That interpretation would result in Section 208 effectively preempting all state regulations of voter assistance.

---

[3] Defendants also maintain, and preserve their position, that Plaintiffs lack standing to challenge sections 6.06 and 7.04.

Section 208, however, does not sweep nearly so broadly. To the contrary, Section 208 allows States to enact reasonable regulations of voter assistance, and all enjoined provisions satisfy any applicable standard.

          **1.  Section 208 permits reasonable state regulations of voter assistance.**

Section 208 provides:

"Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."

52 U.S.C. § 10508.

The "proper starting point" for this Court "lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). And here, Congress said that a voter who requires assistance may be given assistance by "*a* person of the voter's choice," 52 U.S.C. § 10508 (emphasis added)—not *the* or *any* person of the voter's choice.

That distinction is critical and intentional. In the very same sentence, Congress stipulated that "*any* voter who requires assistance" has a right under Section 208. Congress could have also said "*any* person of the voter's choice," but it declined to do so. *Cf. VanDerStok v. Garland,* 86 F.4th 179, 203 n.5 (5th Cir. 2023) (noting that "textual distinction" was "particularly powerful" because Congress knew how to use another term when it wanted). Thus, Section 208 "does not say that a voter is entitled to assistance from *the* person of his or her choice or *any* person of his or her choice," and thus allows for reasonable "state law limitations on the identity of persons who may assist voters." *Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 619 (E.D. Mich. 2020).

Congress's decision makes sense. Consider what it would mean if any voter in need of assistance could receive assistance from *any* person of the voter's choice. Texas would not be able to ban convicted felons from providing voter assistance because a voter in need of assistance may well choose such a person to be her assistor. And, if the voter makes that choice, Texas would presumably have to make that person available—even if he were incarcerated and serving a life

sentence—because otherwise it would be impeding a voter from receiving assistance from *any* "person of the voter's choice." The absurdities from reading language into the statute which Congress purposefully omitted are endless. That is not "common sense," ECF No. 1173 at 79, but a clear sign the Court's sweeping interpretation of Section 208 as conferring on those needing assistance a right to be assisted by *any* person they choose, *id.* at 78, 91, is incorrect.

Moreover, to the extent Section 208 is unclear or ambiguous, it must be interpreted *not* to preempt state law. Courts "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023). This presumption "applies with particular force when Congress legislates in a field traditionally occupied by state law." *See Teltech Sys. v. Bryant*, 702 F.3d 232, 236 (5th Cir. 2012) (internal quotation marks omitted). That is the case here, where regulation of state and federal elections is a heartland duty of the state legislature. *See Storer v. Brown*, 415 U.S. 724, 730 (1974); *see also Teltech Sys.*, 702 F.3d at 236 (applying presumption even in an area of "significant federal presence" because it was also a traditional area of State regulation).

From Section 208's plain text and the presumption against preemption, it follows that States retain authority to adopt reasonable regulations of voter assistance. The relevant question is whether voters retain a real choice in who helps them navigate the electoral process. *See Ray v. Texas*, No. CIV.A.2-06-CV-385TJW, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) (upholding Texas statute that made it a criminal offense if a person signed multiple mail-ballot applications as a witness); *Democracy N. C. v. N. C. State Bd. of Elections*, 476 F. Supp. 3d 158, 233–36 (M.D.N.C. 2020) (enjoining a statute that limited assistance to a voter's near relative or legal guardian when requesting an absentee ballot.). In conducting this inquiry, courts must respect the "State's considerably authority to set its electoral rules and the considerable deference to be given to election procedures so long as they do not constitute invidious discrimination." *Vote.Org v. Callanen*, 89 F.4th 459, 481 (5th Cir. 2023).

The Court's contrary reasoning fails. *First*, the Court suggested that, because Section 208 specifies that "a person of the voter's choice" *cannot* include "the voter's employer or agent of that employer or officer or agent of the voter's union," 52 U.S.C. § 10508, those are the *only* limitations on the voter's ability to choose whoever she wishes to assist her. ECF No. 1173 at 77–78. But that language merely provides a *cap* on the Section 208 right. It does not purport to provide a floor that prohibits all State regulation at all—let alone in a "clear and manifest" manner. *Rice*, 331 U.S. at 230.

*Second*, the Court believed *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), already decided that Section 208 bans regulations on voter assistance. ECF No. 1173 at 78, 81-83. But that case "at bottom" concerned "how broadly to read the term 'to vote' in Section 208," *OCA-Greater Houston*, 867 F.3d at 614, not whether "a person of the voter's choice" means "*any* person of the voter's choice." Thus, the portion of that opinion briefly mentioning a voter's "right to choose any person they want" for assistance invoked by this Court is dictum.

*Third*, the Court suggested Defendants' proposed test would "eviscerate Section 208." ECF No. 1173 at 83. The Court even suggested Defendants believe that the State could limit individuals from choosing between two potential assistors. That is obviously not what Defendants believe, and no challenged provision does anything close to that. Defendants *agree* with other cases adopting and enforcing a more reasonable construction of Section 208. *See, e.g.*, *Democracy N. C.*, 476 F. Supp. 3d at 233–36.

*Fourth*, the Court relied on cherry-picked legislative history. ECF No. 1173 at 77–78. To start, the statute unambiguously does not preempt reasonable state regulations, rendering reliance on legislative history unnecessary. *Salazar v. Mamon*, 750 F.3d 514, 518 (5th Cir. 2014). In all events, the legislative history *disproves* the Court's thesis. Even in the language the Court identified, Congress was clear that voters must be allowed assistance only "from *a* person of their own choosing." S. REP. No. 97-417, at 2 (1982) (emphasis added). Moreover, the Senate Judiciary Committee emphasized that Section 208 preempts state election laws "only to the extent that they *unduly* burden the right recognized in [Section 208], with that determination being a practical one

dependent upon the facts." *Id.* at 63 (emphasis added). In fact, that committee acknowledged that voters who need assistance "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id.* Thus, the committee recognized that Section 208 did not interfere with "the legitimate right of any State to establish necessary election procedures" so long as they are "designed to protect the rights of voters." *Id.* at 63.

The Senate Judiciary Committee Report confirms what Section 208's plain text makes clear: Congress did not ban States from adopting reasonable regulations of voter assistance. And it certainly did not do so in a "clear and manifest" manner. *Rice*, 331 U.S. at 230. If Congress had wanted to ban States from regulating voting assistance entirely, it would have said so expressly; it would not have sought "to effect such a fundamental change in law through circuitous means." *Yates v. Collier*, 868 F.3d 354, 369 (5th Cir. 2017). The Court's contrary holding was error, and it infected the Court's entire preemption analysis.

### 2.   Properly Understood, Section 208 Does Not Preempt S.B. 1.

When properly construed, Section 208 does not preempt sections 6.03, 6.04, 6.05, 6.06, 6.07, and 7.04. The Court erred in holding otherwise.

#### a.   S.B. 1 §§ 6.03, 6.05, and 6.07.

The Court held that Section 208 preempts the assistor disclosures required by sections 6.03, 6.05, and 6.07 because "[t]he requirements that assistors complete an additional form disclosing duplicative information at the polls and disclosed their relationships with the voters they assist have deterred voters from requesting assistance and narrowed the universe of willing assistors." ECF No. 1173 at 91. Thus, the Court concluded those requirements "interfere[] with and frustrate[] the substantive right Congress created under Section 208." *Id.* (cleaned up).

There is, however, no direct conflict between S.B. 1's disclosure requirements and Section 208. The disclosure requirements do not limit the scope of assistance voters may receive; once the assistor satisfies the procedural prerequisites of sections 6.03 and 6.05, the assistor may perform any action necessary to make a vote effective. And section 6.07—far from limiting the action of any

potential assistor—merely requires the creation of a space on the carrier envelope for information to be provided.

Thus, under S.B. 1, a voter who requires assistance "may be given assistance by a person of the voter's choice." 52 U.S.C. § 10508. That person must simply disclose his relationship to the voter and whether he received compensation for his assistance. And S.B. 1 is not brought into conflict with Section 208 merely because an assistor might refuse to comply with § 6.03 or § 6.05. If anything, Section 208 acknowledges that the person the voter selects may refuse to provide assistance. 52 U.S.C. § 10508 (stating the voter "*may* be given assistance by *a person* of the voter's choice" (emphasis added)). An assistor's refusal to aid a voter because of S.B. 1 is no more in conflict with Section 208 than an assistor's refusal to aid a voter because delivering a ballot to the election office or waiting in line is too inconvenient for the would-be assistor.

Neither do S.B. 1's disclosure requirements "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 875 (5th Cir. 2021) (citation omitted). "For a state law to be conflict preempted, a high threshold must be met." *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023) (internal quotation marks omitted). "Courts may not conduct a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," because such an inquiry "would undercut the principle that it is Congress rather than the courts that preempts state law." *Id.* (internal quotation marks omitted).

S.B. 1's disclosure requirements fall far below that threshold. Indeed, rather than impede federal policy, those requirements help *enforce* it by having assistors articulate their relationship to the voter, which lets county election officials flag violations of both state *and* federal law. As all agree, federal law precludes the "voter's employer or agent of that employer or officer of agent of the voter's union" from the pool of potential assistors. 52 U.S.C. § 10508. Requiring assistors to provide information about themselves and their relationship to the voter helps ensure prohibited parties are not providing assistance. Nor does the Court's suggestion that the disclosure requirements are redundant because assistors must already swear or affirm that they are not

prohibited from aiding the voter change things. ECF No. 1173 at 92. There is no reason the Texas Legislature needs to trust the assistors' unelaborated assurances they are eligible; the information required by sections 6.03 and 6.05 helps the State ensure compliance with federal law and verify that voters are not taken advantage of, which was Congress's policy in enacting Section 208 in the first place. *See* S. REP. No. 97-417, at 240 (1982) (Section 208 was enacted "to avoid possible intimidation or manipulation of the voter"). Section 208 does not preclude a policy of "trust but verify."

Regardless, the supposed burden of complying with S.B. 1's disclosure requirements is *de minimis*. All they require is that an individual who assists a voter provide basic information about themselves and the assistance they provided. Plaintiffs have not provided—and the District Court has not identified—any examples of voters who could not obtain assistance because their chosen assistors did not want to write down their name or whether they were compensated. Indeed, the corporate representatives of Delta and FIEL Houston testified that they were aware of no member who had refused to provide voter assistance because of the relevant requirements. *See* Oct. 2, 2023 Tr. at 2124:8–19, 2124:25–2125:7; Oct. 4, 2023 Tr. at 2465:5–7. And even if Plaintiffs could find isolated examples of individuals deterred from providing assistance because of S.B. 1's disclosure requirements, it cannot be that a State regulation's validity depends on a fishing expedition for people weary of following simple, commonsense rules.

Sections 6.03, 6.05, and 6.07 therefore do not pose an obstacle to Congress's objectives in Section 208 and are not preempted by it.

### b.  **S.B. 1 § 6.04.**

The Court also held that Section 208 preempts section 6.04's additions to the Oath of Assistance. *First*, the Court said that section 6.04's clarification that the Oath is "under penalty of perjury" has "deterred assistors from providing qualified voters with assistance and deterred voters from requesting assistance," and has thus "frustrat[ed] Section 208's purpose." ECF No. 1173 at 87. *Second*, the Court held that the required affirmation that the voter "represented [that]

they are eligible to receive assistance" and the clarification that ballots voted with unauthorized assistance "may not be counted" are impermissible "additional eligibility requirement[s]." *Id.* at 87-89. *And third*, the addition that the assistor must affirm that he "did not pressure or coerce the voter into choosing [him] to provide assistance" is, according to the Court, preempted because it is too vague and thus chills assistors from aiding voters.  *Id.* at 89-91.

Each conclusion is wrong. Again, it is not "impossible" to "comply[] with both federal law and state law." *Barrosse*, 70 F.4th at 320 (citation omitted). Far from it. A voter can be assisted by "a person of the voter's choice" under S.B. 1; all that the assistor must do is sign a simple declaration. If an assistor is too busy to aid a voter until Wednesday, that does not mean the state law setting the election for Tuesday conflicts with Section 208. Neither does S.B. 1 conflict with Section 208 merely because an assistor would prefer not to comply with a simple state rule.

And, just like the disclosure requirements, section 6.04 does not "frustrate" Section 208's purpose but, in fact, furthers it. The additions to the Oath of Assistance serve to implement already-existing obligations under state law, which were all designed to ensure that voters who need assistance are not manipulated or coerced and that voter assistance procedures are reserved for those who need it. Tex. Elec. Code § 64.036(a)(1), (4) (making it an offense to "provid[e] assistance to a voter who is not eligible for assistance" or "to a voter who has not requested assistance or selected the person to assist the voter"); § 64.037 (stipulating that "[i]f assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted"). And those policies align perfectly with Congress's various policies for enacting Section 208, which, as explained above, were to protect qualified voters who need assistance.

There is also no indication that section 6.04 is any obstacle at all to *anyone* seeking assistance to vote. Indeed, the lack of burden involved in signing the Oath is underscored by the fact that no Plaintiff challenged the pre-existing state laws which *already* made it an offense to provide assistance to ineligible voters and the like and to complete the Oath under penalty of perjury. The Court relied upon speculative concerns that the Oath might have a "chilling effect" on assistors.  ECF No. 1173 at 90. But in the almost two years since S.B. 1 took effect, Plaintiffs

could not identify a single person who was prosecuted under section 6.04—let alone wrongly prosecuted. *See, e.g.*, Oct. 4, 2023 Tr. at 2467:16-19, 2496:14-2497:4.

The Court thus erred when it held that § 6.04 met the "high threshold" required before a state law is found to be conflict-preempted. *Barrosse*, 70 F.4th at 320.

### c.  **S.B. 1 § 6.06 and § 7.04**

The Court held that "[t]he prohibitions on compensated assistance" in sections 6.06 and § 7.04 "conflict with the text of Section 208" because "they facially restrict the class of people who are eligible to provide voting assistance beyond the categories of prohibited individuals identified in the text of the statute." ECF No. 1173 at 95.

Neither provision conflicts with Section 208.  Section 6.06 does not prevent *any* person in the universe from providing assistance; it merely requires that the assistor not accept compensation for providing assistance unless the assistor was previously known to the voter. As former Elections Division Director Keith Ingram confirmed at trial, this is not a demanding standard; it merely prevents *complete strangers* from seeking people out and providing voter assistance while being compensated *specifically* to provide voter assistance. *See* Sept. 22, 2023 Tr. at 1902:4–8. It does not prevent individuals from being reimbursed for their expenses, *id.* at 1903:10–1904:2, and it does not prevent individuals with paid jobs, such as canvassing, from assisting the voter in due course. *See*, *e.g.*, Oct. 16, 2023 Tr. at 3994:14–23.

For its part, section 7.04 does not apply to voter assistance at all. Merely providing voter assistance is not an act "designed to deliver votes for or against a specific candidate or measure" under section 7.04. S.B. 1 § 7.04. Political canvassers would cross the line only if they attempted to persuade the assisted individual to vote in a particular way—an action that is *not* part of voter assistance under Texas law or Section 208. Indeed, other states also prohibit such advocacy by those providing voter assistance. *See, e.g.*, Minn. Stat. § 204C.15 (2023). As is true of section 6.06, section 7.04 does not limit a single person in the universe from providing voter assistance; it merely

prevents would-be assistors paid by political entities from *simultaneously* urging support for candidates and measures while providing assistance.

Moreover, both sections 6.06 and 7.04 are precisely the type of reasonable state regulation of voter assistance that Congress intended to preserve in Section 208. *See Priorities USA*, 487 F. Supp. 3d at 619. Congress recognized that voters who need assistance "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." S. REP. No. 97-417, at 62 (1982). To that end, both sections 6.06 and 7.04 are designed to protect voters from incentive structures that increase the likelihood of assistors applying pressure on the voter in pursuit of partisan or ideological ends. And the only burden the Court or Plaintiffs have identified is that some potential assistors might have an abstract or idiosyncratic fear that prosecutors will overzealously stretch the words of S.B. 1 beyond even their farthest limit. ECF No. 1173 at 95-98. Yet neither Plaintiffs nor the Court have identified a *single example* of a prosecution under either provision, and it is not appropriate to strike down state laws based on speculation that Texas's prosecutors and judges will enforce the challenged provisions unreasonably—all before a single state court has even had the chance to interpret these provisions. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 210 n.13 (1992).

Finally, Plaintiffs are unlikely to succeed in defending this Court's injunction against section 7.04 because it is overbroad. An injunction must be "narrowly tailored" to redress the injury of the relevant plaintiff. *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1978); *see also Milliken v. Bradley*, 418 U.S. 717, 744 (1974) (the "scope" of a federal-court "remedy is determined by the nature and extent of the … violation" it redresses). Here, the Court found that section 7.04 improperly prohibits compensated individuals from providing voter assistance. ECF No. 1173 at 95–98. Even if that holding is right, it does not justify enjoining all of section 7.04, which applies in *many* situations beyond voter assistants pushing people to support a candidate or measure. At minimum, the Court must narrowly tailor its injunction to only apply in that specific situation.

III.    **State Defendants and the Public Interest Will Be Irreparably Injured Absent a Stay, but Plaintiffs Will Not Be.**

Enjoining officials from carrying out validly enacted, constitutional laws governing elections imposes irreparable harm. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). And it is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer*, 415 U.S. at 730. The Court's injunctions undermine those crucial interests.

The public interest is also undermined for the same reasons. After all, when a State is the moving or appealing party, "its interest and harm merge with the public." *Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022) (quoting *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam)). Moreover, as noted, the Court's injunctions "necessarily" impose "irreparable harm" on the State and the public by "denying the public interest in enforcement of" the State's laws. *Veasey*, 769 F.3d at 895.

At the same time, Plaintiffs will not be irreparably harmed absent a stay. In considering whether a plaintiff is irreparably harmed absence a stay, "the maintenance of the status quo is an important consideration." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021). Here, a stay would maintain the status quo that has existed in Texas since September 7, 2021, when S.B. 1 was signed into law. Several elections—including at least six primary, general, and constitutional amendment elections administered statewide—have successfully taken place under S.B. 1's rules. There is no reason to change the status quo until this litigation concludes in an orderly manner.

### CONCLUSION & RELIEF REQUESTED

For the foregoing reasons, the Fifth Circuit should have the opportunity to review this Court's decision before Texas's law is permanently enjoined and the State—and corresponding

public interest—is irreparably harmed.  Given that the ongoing 2024 General Election has already commenced, Defendants respectfully request that the Court grant this motion by 5:00 p.m. CST on October 17, 2024.

Date: October 15, 2024

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Tex. State Bar No. 24060998

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

ZACHARY W. BERG
Special Counsel
Tex. State Bar No. 24107706

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division
Tex. State Bar No. 24103022

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
zachary.berg@oag.texas.gov
will.wassdorf@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

JOHN M. GORE
E. STEWART CROSLAND
LOUIS J. CAPOZZI, III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

**COUNSEL FOR INTERVENOR-DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I certify that State Defendants reached out to counsel via email on October 14, 2024. Counsel for OCA Plaintiffs, LUPE Plaintiffs, HAUL Plaintiffs, MFV Plaintiffs, and LULAC Plaintiffs indicated that they were opposed to this motion; counsel for the United States, El Paso County, and Dallas County Defendants indicated that their clients take no position on the motion. Counsel for Intervenor-Defendants consent to the motion. Counsel for the remaining parties, have not yet responded as to whether they oppose this motion.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 15, 2024, and that all counsel of record were served by CM/ECF.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER