# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| La Unión del Pueblo Entero, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>Gregory W. Abbott, *et al.*,<br><br>*Defendants.* | Case No. 5:21-cv-00844-XR |

### UNOPPOSED EMERGENCY MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, MOTION FOR STAY PENDING APPEAL

State Defendants, Gregory W. Abbott, in his official capacity as the Texas Governor, Jane Nelson, in her official capacity as the Texas Secretary of State, and Ken Paxton, in his official capacity as the Texas Attorney General, urgently request that the Court clarify its Findings of Fact and Conclusions of Law, Dkt. 1206, with respect to the effect of (1) its injunction against the implementation of Tex. Election Code §§ 84.002, 84.011(a), 86.001, which includes but is not coextensive with Sections 5.02, 5.03, and 5.07 of S.B. 1, and (2) its injunction against the implementation of Tex. Election Code § 86.0105, Section 6.06 of S.B. 1. The Court ordered both injunctive relief and a *Purcell*-inspired stay of much of that relief. However, the text of the Court's orders could be construed to (a) enjoin large portions of the Texas's Election Code that Plaintiffs did not challenge, (b) stay relief unequally between state-level and county-level election officials, belying the intent of the Court's *Purcell* reprieve, and (c) exclude from its stay Section 6.06, despite no indication in the Court's reasoning that this section deserved singular treatment.

State Defendants' request for clarification, or in the alternative a broader stay, is pressing because the functionality of its mail ballot application process is at stake ahead of an election that will be held in less than two months. Sections 84.002, 84.011(a), 86.001 set out the general requirements for applications to vote by mail. An injunction that runs against the entirety of those sections would effectively shut down new applications for mail voting—a change sure to harm all

Texans' access to the franchise. Moreover, a stay that pauses the Court's injunction of the number matching identification requirements contained in S.B. 1's Sections 5.02, 5.03, and 5.07 will not preserve the status quo unless it applies equally to county officials who are responsible for its on-the-ground implementation as to the Secretary. State Defendants therefore urge the Court to clarify that its injunction of the challenged provisions does not take effect until after the May 3, 2025, local election.

## BACKGROUND

On March 14, 2025, the Court issued Finding of Fact and Conclusions of Law concerning claims and issues arising under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *See generally*, Dkt. 1206. The Court concluded that "Sections 5.02, 5.03, 5.07, 6.06, and 7.04 of S.B. 1" and "portions of Sections 6.03, 6.04, 6.05, and 6.07 of S.B. 1 violate the ADA and Section 504." *Id.* at 107. Consequently, the Court then issued declaratory and injunctive relief against applicable Defendants that would restrain them "from implementing, enforcing, or giving any effect to" those provisions. *Id.* at 110.

However, the Court balanced its merits-related conclusions with a *Purcell* analysis and decided to mitigate its orders by staying its injunctions until after the May 3, 2025, election. *Id.* at 105-07. The Court specified that its stay applies to "any injunction applicable to the Secretary's forms," to injunctions against "County Election Officials from using any of the forms prescribed by the Secretary of State," and to injunctions against "officials" to prevent them "implementing the requirements of Sections 6.03, 6.04, and 6.05 of S.B. 1." *Id.* at 105-06. Finally, the Court also stayed its injunction of Section 7.04 pending the Fifth Circuit's resolution of *La Union del Pueblo Entero v. Abbott*, No. 24-50783. *Id.* at 107.

## LEGAL STANDARD

A district court has authority to clarify the scope of its orders and to modify the scope of its stays. *Edwards v. Cass County, Texas*, 919 F.2d 273, 275 (5th Cir. 1990); *see also Enlow v. Tishomingo County, Mississippi*, 962 F.2d 501, 507 (5th Cir. 1992); *Lavespere v. Niagara Mach. & Tool Works,*

*Inc.*, 910 F.2d 167, 185 (5th Cir.1990). Further, "any order or other decision . . . that adjudicates fewer than all the claims…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

"[F]ederal courts ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)) (Kavanaugh, J., concurring). "That principle—known as the *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled." *Id.* at 880-81. That is because "[l]ate judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Id.* at 881. Thus, even if not absolute, *see La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024), the principal strongly counsels in favor of staying injunctions of state election law until after voting has closed.

## ARGUMENT

**I.   State Defendants' request that this Court clarify the scope of its injunction as well as the stay it issued for the upcoming election.**

State Defendants are uncertain whether the Court's order (a) enjoins the entirety of §§ 84.002, 84.011(a), 86.001, or only the language in those chapters introduced by S.B. 1, (b) stays its injunction of Sections 5.02, 5.03, and 5.07 with respect to the Secretary of State alone, or with respect to both the Secretary and county election officials, and (c) excludes Section 6.06 from its stay, or includes it. State Defendants respectfully ask the Court to dispel their uncertainty by resolving each of these ambiguities.

<u>Sections 5.02, 5.03, and 5.07:</u> State Defendants request clarity regarding the Court's injunction of S.B. 1's Sections 5.02, 5.03, and 5.07, relating to applications for mail-in ballots. The Court's order appears to equate these sections with Tex. Election Code §§ 84.002, 84.011(a), and 86.001, *see id.* at 107-08, even though those code citations include enactments that both predate and postdate S.B. 1 and were not challenged by Plaintiffs. For example, § 84.002 sets out general

requirements for the contents of mail ballot applications. Enjoining these provisions *in toto* would prevent officials from creating or processing applications for mail ballots, leaving Texas without a functional option to vote by mail.

Plaintiffs only addressed their disability-related claims to the "number matching requirements" that S.B. 1 introduced and not to §§ 84.002, 84.011(a), or 86.001 generally. Dkt. 1206 at 77-76; *see also* Dkt. 137 at 44-46 (addressing OCA Plaintiffs' claims to S.B. 1 amendments); Dkt. 199 at 126, 129 (same for Mi Familia Vota Plaintiffs). To those broader sections of the Election Code, S.B. 1 only added §§ 84.002(a)(1-a), 84.002(b-1), 84.011(a)(3-a), 86.001(f), 86.001(f-1), and 86.001(f-2). Accordingly, State Defendants respectfully request the Court clarify the scope of its injunction concerning §§ 84.002, 84.011(a), and 86.001 to specify whether its injunction applies to these entire sections of the Election Code or only to the amendments that S.B. 1 introduced and that Plaintiffs challenge—i.e. Texas Election Code §§ 84.002(a)(1-a), 84.002(b-1), 84.011(a)(3-a), 86.001(f), 86.001(f-1), and 86.001(f-2).

State Defendants request clarity for one other aspect of the Court's injunction of Sections 5.02, 5.03, and 5.07. The Court stayed its injunction of these provisions against the Secretary of State but did not unmistakably stay the same injunction against county election officials. Although the Court stated that it "will not enjoin the County Election Officials from using any of the forms prescribed by the Secretary of State in administering the May 2025 election for the same reasons set forth above," Dkt. 1206 at 106, it did not expressly articulate a stay covering local officials who implement 5.02, 5.03, and 5.07. Nonetheless, the Court's rationale for staying its injunction with respect to the Secretary would apply with equal force to county election officials, as "it is not feasible" for them to reject S.B. 1-compliant materials authorized by the Secretary, especially when the Court's stay allows the Secretary to issue them. Accordingly, State Defendants respectfully ask the Court to clarify whether it has stayed its injunction of Sections 5.02, 5.03, and 5.07 for both the Secretary of State and county officials or only for the former.

**Section 6.06:** Additionally, State Defendants respectfully ask the Court to clarify whether its stay covers its injunction of Section 6.06, prohibiting compensated mail ballot assistance. The

Court did not single out Section 6.06 as presenting unique *Purcell* issues. Defendants, for their part, believe the Court's rationale for staying its injunctions of Sections 6.03, 6.04, 6.05, and 6.07 applies with equal force to the injunction it has ordered to stop implementation of Section 6.06. Nonetheless, the Court did not expressly state that its stay covers Section 6.06. *See id*. at 106. Accordingly, State Defendants move the Court to clarify whether its injunction against Defendants "from implementing, enforcing or giving any effect to TEC § 86.0105" is stayed until after the May 2025 election.

## II. Alternatively, the Court should curtail its injunction of §§ 84.002, 84.011(a), and 86.001 and widen the scope of its temporary stay.

In the alternative, this Court should modify its injunction so that it does not restructure voting by mail. By roping in all of §§ 84.002 and 84.011(a), the Court's injunction requires officials to remove virtually all content from ballot application forms, including the applicant's name and address, the election he seeks to vote in, the ground of early voting eligibility, and disability information if applicable—in short all the essentials. *See generally*, Tex. Election Code §§ 84.002, 84.011(a); *see also* Ex. A (copies of relevant legislation). Enjoining the name and address requirement, in particular, would frustrate the very possibility of applying to vote by mail— nameless, address-less applications cannot be processed. And if the Court's injunction of § 86.001 is not pared back, early voting clerks will not be allowed to review applications they receive. Tex. Election Code § 86.001(a). Nor will they be allowed to send ballots to voters entitled to vote by mail, *see id*. at § 86.001(b), (g), or reject or cure invalid applications, *id.* at § 86.001(c), (d), (e).

The practical effect of broadly enjoining these provisions will be to prevent Texas voters from applying for mail-in ballots going forward. This means that anyone who is entitled to vote receive a mail ballot but has not already been approved will not be able to vote by mail in the May 2025 election or indeed any subsequent elections that take place while the Court's injunction is in effect. The Election Code's mail voting option is designed to help disabled Texans, among others, exercise their right to vote. *See* Tex. Election Code § 82.002(a). By upending mail voting, the Court's order severely burdens this class of voter.

Furthermore, courts may not grant "unrequested relief when it operates to the prejudice of the opposing party," *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) (citing Fed. R. Civ. P. 54) (cleaned up). The only exception to that rule applies when "a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Id*. Here, the scope of the Court's current injunction is far broader than the relief sought by any plaintiff, and State Defendants have had neither notice nor opportunity to contest it. A broad injunction against §§ 84.002, 84.011(a), and 86.001 would severely prejudice State Defendants by frustrating their ability to administer new mail ballot applications.

This Court should also broaden the scope of its temporary stay so that it applies to all Defendants and covers each of the challenged provisions. Federal courts "have applied *Purcell* to stay injunctions that threaten to confuse voters, unduly burden election administrators, or otherwise sow chaos or distrust in the electoral process." *Robinson*, 37 F.4th at 228. "As an election draws closer," the "risk will increase" that "[c]ourt orders affecting elections" disrupt the orderly conduct of elections. *Purcell*, 549 U.S. at 4-5. This Court rightly recognized that with the May 2025 election on the horizon its injunction of the challenged provisions "plainly implicate Purcell," *see e.g.*, Dkt. 1206 at 106, and suggested that the Purcell principle counsels a stay where "implementing any injunctive relief before the [] election" is impossible "without significant cost, confusion, or hardship." *Id*. at 105 (citing *Milligan*, 142 S. Ct. at 881).

To prevent disrupting the May 2025 election, the scope of the Court's stay needs to be widened—so that it extends to county officials in connection to Sections 5.02, 5.03, and 5.07 and also applies to the Court's injunction of Section 6.06.

*First*, unless county officials are covered by the Court's stay of Sections 5.02, 5.03, and 5.07, "the practical effect" of the Court's injunction will be "to prevent enforcement of S.B. 1, but only in certain counties in Texas." *LUPE v. Abbott*, 119 F.4th at 409. County Defendants will be unable to implement S.B. 1's number matching requirements, while the same requirements will be followed in all other counties, creating an unwieldy patchwork of contrary election rules. This lack

of uniformity will confuse election administrators and voters alike who will both struggle to understand whether a matching ID number is required for early voting approval or not. Election officials working for County Defendants will be compelled to change their standards for approving applications to drop number matching while in the midst of preparing for the May election—precisely the sort of "[l]ate judicial tinkering" that *Purcell* seeks to avoid. *Milligan*, 142 S. Ct. at 881. Furthermore, this effect is compounded by the asymmetrical nature of the Court's stay. The Secretary will be required to issue forms and instructions pursuant to Sections 5.02, 5.03, and 5.07 to county officials and to voters. Presumably, voters will use the forms the Secretary publishes but county officials will not be allowed to process them, compounding confusion.

*Second*, enjoining Section 6.06's prohibition on compensated mail ballot assistance so close to the May election likewise creates unclarity for mail ballot voters, assistors, and election administrators. Voters and assistors will be uncertain as to whether they can receive or provide paid assistance without hazarding criminal liability. *See* Tex. Election Code § 86.0105. Election administrators will not know if compensated assistance is a crime they should report when they see it done or how they should inform the public about the legality of compensated assistance. This confusion will be especially acute when the Court's stay permits the vast majority of S.B. 1 to govern the May election.

## CONCLUSION

The May 2025 election is weeks away. "Given the imminence of the election…[the Court's] action today shall of necessity allow the election to proceed without an injunction suspending the voter identification rules." *Purcell*, 549 U.S. at 5-6. To ensure that its relief does not throw the election into disarray the Court must either clarify or modify its order so that (a) its injunction does not apply to all of Tex. Election Code §§ 84.002, 84.011(a), 86.001, (b) its stay related to Sections 5.02, 5.03, and 5.07 of S.B. 1 extends to county election officials, and (c) its injunction of Section 6.06 of S.B. 1 is stayed until after the May 2025 election.

| | |
|---|---|
| Date: March 21, 2025 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | RYAN G. KERCHER<br>Chief, Special Litigation Division<br>Texas State Bar No. 24060998 |
| BRENT WEBSTER<br>First Assistant Attorney General | */s/ Kathleen T. Hunker*<br>KATHLEEN T. HUNKER |
| RALPH MOLINA<br>Deputy First Assistant Attorney General | Deputy Chief, Special Litigation Division<br>Texas State Bar No. 24118415 |
| RYAN WALTERS<br>Deputy Attorney General for Legal Strategy | Office of the Attorney General<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>ryan.kercher@oag.texas.gov<br>kathleen.hunker@oag.texas.gov |
| | **COUNSEL FOR STATE DEFENDANTS** |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF on March 21, 2025, and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
Kathleen T. Hunker

### CERTIFICATE OF CONFERENCE

I certify that on March 21, 2025, prior to filing this Motion, I conferred with counsel for Plaintiffs regarding this Motion, and that counsel for LUPE Plaintiffs, OCA Plaintiffs, and Mi Familia Plaintiffs indicated they were unopposed to the relief sought herein and that counsel for HAUL Plaintiffs and LULAC Plaintiffs indicated they took no position towards the relief sought herein.

*/s/ Kathleen T. Hunker*
Kathleen T. Hunker